Scott M. Hendler, Esq.
shendler@hendlerlaw.com
**HENDLER FLORES LAW, PLLC**
901 S. MoPac Expressway
Bldg. 1, Suite #300
Austin, Texas 78746
Telephone: (512) 439-3202
Facsimile: (512) 439-3201
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 2741 |
| | Master Docket Case No. 16-md-02741-VC |
| **THIS DOCUMENT RELATES TO:** | Honorable Vince Chhabria |
| | Case No. 3:20-cv-03074-VC |
| *Bradley Koen* | **PLAINTIFF BRADLEY KOEN'S RESPONSE IN OPPOSITION TO MONSANTO COMPANY'S MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS PRESUMPTION OF NO LIABILITY** |
| *v.* | |
| *Monsanto, Co.* | |

### INTRODUCTION

Plaintiff Bradley Koen has sued Defendant Monsanto Company for the "injuries he sustained by exposure to Roundup containing the active ingredient glyphosate and the surfactant POEA." Declaration of Jed White ("White Decl."), Ex. 1, ¶ 3. Mr. Koen maintains that Defendant "negligent[ly] and wrongful[ly] conduct[ed]" itself "in connection with the design development, manufacture testing, packaging, promoting, marketing, advertising, distribution labeling, and/or sale of the herbicide Roundup®, containing the active ingredient glyphosate." White Decl., Ex. 1, ¶ 17. Specifically, Mr. Koen asserts four causes of action based on Texas products liability law: (1) negligence, White Decl., Ex. 1, ¶¶ 116-127; (2) strict liability—design defect, White Decl., Ex.

1, ¶¶ 128-150; (3) strict liability—failure to warn, White Decl., Ex. 1, ¶¶ 151-172; and (4) breach of implied warranties, White Decl., Ex. 1, ¶¶ 173-183.

Defendant has filed a motion for summary judgment, in which it argues that all four of Mr. Koen's causes of action are barred by Texas Civil Practice and Remedies Code § 82.008. *See* ECF No. 17 ("Def.'s MSJ"). That provision, "establishes a rebuttable presumption that a manufacturer is not liable . . . for a claimant's injuries" stemming from a product's formulation, labeling, design, "if the product complies with certain applicable federal safety standards." *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 868 (Tex. 2014). This Court should deny Defendant's motion for summary judgment because, as the moving party, it has not met its burden of establishing that § 82.008's statutory presumption applies for four reasons.

First, § 82.008 is inapplicable because the governing federal framework—the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.*, and its implementing regulations—does not constitute a "safety standard." Simply put, "the registration of a pesticide under FIFRA does not guarantee that ordinary usage is safe." Terrence J. Centner, *Pesticide Registration Fails to Protect Human Health: Damages from Exposure to Glyphosate-Based Herbicides*, 36 J. ENV'T. L. & LITIG. 69, 123 (2021).

Second, § 82.008 is inapplicable because FIFRA's framework focuses on a pesticide's active ingredients. It, therefore, does not govern the particular risk of harm at issue — the risk of cancer from using Roundup in its whole formulation (active ingredients *plus* inert ingredients and adjuvants).

Third, to the extent § 82.008 does apply, its ambit is narrow: by its express terms, it covers only claims relating to the "formulation, labeling, or design of a product." Tex. Civ. Prac. & Rem. Code § 82.008(a). In his complaint, Mr. Koen has raised four causes of action that extend far beyond Roundup's "formulation, labeling, or design." *Id.* Section 82.008 is powerless to indemnify Defendant against claims unrelated to Roundup's formulation, labeling, or design.

Fourth, assuming § 82.008 applies to some or all of Mr. Koen's claims, summary judgment is still unwarranted because there is sufficient evidence to rebut the presumption of nonliability. In particular, Mr. Koen raises genuine issues of material fact that FIFRA's framework is

"inadequate to protect the public from unreasonable risks of injury or damage." Tex. Civ. Prac. & Rem. Code § 82.008(b)(1).

For these four reasons, all of Mr. Koen's claims survive summary judgment.

## LEGAL STANDARD

Mr. Koen's case is part of the multi-district litigation ("MDL") alleging that the carcinogenic qualities of the glyphosate-based herbicide Roundup caused non-Hodgkin's lymphoma. An MDL transferee court must apply its own interpretations of federal law when it comes to questions of procedure. *See Bahn v. Korean Airlines Co.*, 642 F.3d 685, 699 n.12 (9th Cir. 2011). That means this Court must apply the procedural law of the Ninth Circuit. As a result, the Court should "view[] the evidence in the light most favorable to the nonmoving party" (here, Mr. Koen) and "determine whether there are any genuine issues of material fact." *JL Bev. Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1104 (9th Cir. 2016); Fed. R. Civ. P. 56(a).

As explained below, § 82.008's statutory presumption does not apply; but even if it does, viewing the evidence in the light most favorable to Mr. Koen shows there is a genuine issue of material fact sufficient to rebut the presumption.

## ARGUMENT

**I.    Summary judgment is improper because Defendant has not met—and cannot meet—its burden of establishing several critical elements of the presumption.**

Defendant has moved for summary judgment under Texas Civil Practice and Remedies Code § 82.008. That provision provides a rebuttable statutory presumption of nonliability for particular claims:

> (a) In a products liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the product's formula, labeling, or design complied with mandatory safety standards or regulations adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm.

3

Tex. Civ. Prac. & Rem. Code § 82.008(a). The provision, in turn, provides two avenues for a claimant to rebut the statutory presumption:

> (b)  The claimant may rebut the presumption in Subsection (a) by establishing that: (1) the mandatory federal safety standards or regulations applicable to the product were inadequate to protect the public from unreasonable risks of injury or damage; or
>
> (2) the manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action.

*Id*. § 82.008(b)(1)-(2).

Construing this provision, the Texas Supreme Court has made clear that "a manufacturer is entitled to a presumption of nonliability for its product's design" only if "the manufacturer establishes that (1) the product complied with mandatory federal safety standards or regulations, (2) the standards or regulations were applicable to the product at the time of manufacture, and (3) the standards or regulations governed the product risk that allegedly caused the harm." *Kia Motors Corp.*, 432 S.W.3d at 870. In other words, a manufacturer must prove all three elements for the presumption to attach.

Defendant's motion fails on the first and third elements. That is, Defendant cannot establish that FIFRA and its implementing regulations are a *safety* standard or that FIFRA governed the risk of developing cancer from using Roundup in its whole formulation. Additionally, even if the presumption applies, Defendant cannot use it to defeat Mr. Koen's claims that have nothing to do with Roundup's "formulation, labeling, or design." Tex. Civ. Prac. & Rem. Code § 82.008(a).

## A. The presumption does not apply because FIFRA's registration process is not a safety standard.

Defendant may only rely on § 82.008(a)'s presumption of nonliability by establishing that Roundup's formulation, labeling, and design "compl[ied] with mandatory federal *safety* standards or regulations." *Kia Motors Corp.*, 432 S.W.3d at 872 (emphasis in original). When a defendant points to a federal statutory/regulatory scheme that does not focus on safety, "[s]ection 82.008(a) is inapplicable." *Lewis v. Johnson & Johnson*, 991 F. Supp. 2d 748, 752, 761 (S.D.W. Va. 2014)

("[s]ection 82.008(a) i[s] inapplicable in this case" because "the 510(k) process is focused on equivalence with a preexisting device rather than safety.").

Defendant highlights FIFRA and its implementing regulations as the governing federal standard. Def.'s MSJ at 4. Specifically, Defendant contends it is entitled to § 82.008(a)'s presumption because "Roundup's design, formulation, and labeling have been, at all times, subject to mandatory standards promulgated by the U.S. Environmental Protection Agency ('EPA')." Def.'s MSJ at 4. Defendant, however, ignores § 82.008(a)'s requirement that the applicable federal law *relate to safety*. Just because "all pesticide formulation and labeling must be reviewed and approved by the EPA," Def.'s MSJ at 4, does not mean the agency's approval relates to safety. It does not.

"FIFRA regulates pesticide (including herbicide) use, sales, and labeling. 7 U.S.C. §§ 136-136y." *Nat'l Fam. Farm Coal. v. EPA*, 960 F.3d 1120, 1133 (9th Cir. 2020). One of the primary mechanisms FIFRA employs to further this aim is registration:

> An herbicide must first be "registered" by the EPA before it can be distributed or sold in the United States. 7 U.S.C. §§ 136a(a),136j(a)(2)(F). The EPA registration process starts with the herbicide manufacturer providing the EPA with information about the herbicide. *Id*. § 136a(c)(1)(C), (F). The agency then evaluates the effectiveness of the herbicide and the adverse effects it will have on humans and the environment. *See id*. § 136a(c)(5); *Headwaters, Inc. v. Talent Irrigation Dist*., 243 F.3d 526, 530 (9th Cir. 2001). On the basis of this evaluation, the EPA then determines if it will permit the herbicide's use on a given plant, and, if so, how much.

*Ctr. for Food Safety v. Vilsack*, 718 F.3d 829, 833 (9th Cir. 2013). In making a registration decision, the EPA must consider whether the pesticide "will perform its intended function without unreasonable adverse effects on the environment" and whether the pesticide, "when used in accordance with widespread and commonly recognized practice[,] . . . will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(C)-(D); *see also* 40 C.F.R. § 152.112(e) (implementing regulations likewise incorporate the "unreasonable adverse effects on the environment" standard). In other words, the "unreasonable adverse effects on the environment" standard is central to the FIFRA framework.

That standard "is defined, in relevant part, as 'any unreasonable risk to man or the

environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide.' 7 U.S.C. § 136(bb)." *Nat'l Fam. Farm Coal. v. EPA*, 966 F.3d 893, 913 (9th Cir. 2020). FIFRA thus calls for what courts have alternatively characterized as "'a cost-benefit analysis,'" "a compromise," and a "strik[ing] [of a] balance in each case." *Headwaters, Inc. v. Talent Irrigation Dist.*, 243 F.3d 526, 532 (9th Cir. 2001) (quoting *Save Our Ecosystems v. Clark*, 747 F.2d 1240, 1248 (9th Cir. 1984)); *Merrell v. Thomas*, 807 F.2d 776, 781 (9th Cir. 1986); *Defenders of Wildlife v. EPA*, 882 F.2d 1294, 1299 (8th Cir. 1989).

Because FIFRA focuses on and relies on cost-benefit analysis in its determinations, it follows that the EPA's decision to register a pesticide does not translate into a finding that the pesticide is safe. On the contrary, the cost-benefit analysis "explicitly accommodates agriculture's need for pesticides—even environmentally risky pesticides." *Merrell*, 807 F.2d at 780. A given pesticide may pass muster under FIFRA's "cost-benefit standard" but still carry "significant risk." *Ferebee v. Chevron Chem. Co.*, 736 F.2d 1529, 1540 (D.C. Cir. 1984). The Ninth Circuit has thus explained that "[t]he licensing of a pesticide . . . does not 'reflect a conclusion that a pesticide is safe under any conditions[.]'" *Oregon Env't Council v. Kunzman*, 714 F.2d 901, 905 (9th Cir. 1983).

Furthermore, on the benefits side of the scale, FIFRA allows the EPA to waive data requirements for efficacy, which the EPA has done by rule, essentially creating an assumption that a particular pesticide carries economic or social benefits. *See Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 440 (2005) ("In 1979, EPA . . . issued a general waiver of efficacy review"; "in 1996, EPA confirmed that it had 'stopped evaluating pesticide efficacy for routine label approvals almost two decades ago.'"). The EPA has "clarified that '[its] approval of a pesticide label does not reflect any determination on the part of EPA that the pesticide will be efficacious or will not damage crops or cause other property damage.'" *Bates*, 544 U.S. at 540; *id*. at 450 ("Congress amended FIFRA to allow EPA to waive efficacy review of newly registered pesticides"). This data waiver skews, even more, the EPA's approval of a pesticide's formulation and labeling as not carrying "unreasonable adverse effects on the environment."

Because the EPA's finding under the FIFRA standards "does not relate to [Roundup's]

1  safety," § 82.008(a) is "inapplicable in this case." *Lewis*, 991 F. Supp. 2d at 761.

2  **B.    The presumption does not apply because FIFRA's registration process does not govern the product risk— the risk of cancer from using Roundup in its entire formulation—that caused Mr. Koen harm.**

Beyond not qualifying as a safety standard, FIFRA does not trigger § 82.008(a)'s presumption of nonliability because it does not "govern[] the product risk that allegedly caused the harm." Tex. Civ. Prac. & Rem. Code § 82.008(a).  As the Texas Supreme Court explained in *Kia Motors Corp*., when a manufacturer identifies "a standard that simply does not contemplate the risk at issue," that standard does not satisfy § 82.008(a). 432 S.W.3d at 874. That is precisely the case here.

Defendant seeks immunity under FIFRA by focusing on the EPA's review and approval of the active ingredient glyphosate. *See* Def.'s MSJ at 5 (noting that the "EPA was fully informed of the supposed evidence that glyphosate is carcinogenic" and "reject[ed] that glyphosate is carcinogenic."); Def.'s MSJ at 6 (referring to the EPA's regulation of "glyphosate formulation and labeling."); White Decl., Ex. 4, page 1 ("[T]he Environmental Protection Agency (the 'Agency') has completed its reregistration eligibility decision on the pesticide active ingredient glyphosate."). Even so, FIFRA's review and approval of the active ingredient *glyphosate alone* "does not contemplate the risk at issue," namely, the risk of developing cancer from using *Roundup in its whole formulation* (active ingredients plus inert ingredients plus adjuvants). *Kia Motors Corp.*, 432 S.W.3d at 874.

In enacting FIFRA, Congress understood that pesticides generally consist of active ingredients and inert ingredients. *See* 40 C.F.R. § 158.300 (defining "formulation" to mean mixing active and inert ingredients to create a final product); 7 U.S.C. § 136(a) (definition of "[a]ctive ingredient"); *Id*. § 136(m) (definition of "[i]nert ingredient"); *id*. § 136(u) (definition of "[p]esticide"). Even so, the EPA's review of a pesticide focuses on its active ingredients and thereby overlooks inert ingredients, adjuvants, and whole formulations. For example, the agency's regulations only require toxicological data on a pesticide's active ingredients but not whole formulas. *See* 40 C.F.R. § 158.130(e) (hazards to non-target organisms); § 158.500 (toxicology

7

data requirements); § 158.630 (data requirements for terrestrial and aquatic non-target organisms); *see generally* 40 C.F.R. § 158.320. These regulations include tables showing the potentially required tests, when they are required, and what substance must be tested. In any event, the tests only pertain to "technical grade active ingredients," which does not capture the whole pesticide formulation.

This has led the National Research Council's Committee on Ecological Risk Assessment under FIFRA to conclude that "[f]or pesticide risk assessments, EPA typically focuses its assessments on the active ingredients." National Research Council, Committee on Ecological Risk Assessment under FIFRA and ESA, *Assessing Risks to Endangered and Threatened Species from Pesticides* 66 (2013) (attached as Exhibit A); *see also* Caroline Cox & Michael Surgan, *Unidentified Inert Ingredients in Pesticides: Implications for Human and Environmental Health* 114 ENV'T. HEALTH PERSP. 1803, 1804 (2006) (attached as Exhibit B) ("[M]ost of the tests required to register a pesticide are performed with the active ingredient alone, not the full pesticide formulation."); *Nw. Coal. for Alternatives to Pesticides v. Browner*, 941 F. Supp. 197, 199 (D.D.C. 1996) ("More than two thousand inert ingredients are used in pesticides, however, and most of them have not been tested by EPA or evaluated for toxicity."). The EPA itself is candid about this: "[u]nlike active ingredients, inert ingredients do not have a specific 'required' data set in 40 CFR Part 158." United States Environmental Protection Agency, *Inert Ingredient Frequently Asked Question 4* (2015), https://www.epa.gov/sites/default/files/2015-12/documents/faqs.pdf.

The EPA's circumscribed scope of testing, review, and approval—limited to active ingredients alone—is fatal to Defendant's claim that FIFRA governs the product risk here. As Mr. Koen outlined in his complaint, many studies support the hypothesis that glyphosate formulations found in Roundup are more dangerous and toxic than glyphosate standing alone. White Decl., Ex. 1, ¶¶ 45-54 & n.5 (citing Martinez et al. 2007; Benachour 2009; Gasnier et al. 2010; Peixoto 2005; Marc 2004); *see also* George Kimbrell, Sylvia Wu & Audrey Leonard, *Will Regulators Catch the Drift? NFFC v. EPA and Breathing New Life into Pesticide Regul.*, 51 ENV'T L. REV. 667, 685 (2021) ("A growing body of research indicates that a pesticide's active ingredients in combination with its inert and adjuvant ingredients can increase pesticide toxicity,

ecotoxicity, and exposure, both independently and through synergistic effects"); Terrence J. Centner, *Pesticide Registration Fails to Protect Human Health: Damages from Exposure to Glyphosate-Based Herbicides*, 36 J. ENV'T. L. & LITIG. 69, 123 (2021) ("Research shows that damages from pesticide use are not simply related to active ingredients."). For that reason, the EPA's stamp of approval on glyphosate in isolation says nothing about the risk to Mr. Koen (or any other person) of developing cancer from using Roundup, which contains glyphosate *along with* adjuvants, inert ingredients, and the surfactant POEA. In short, FIFRA "does not 'govern[] the product risk that allegedly caused the harm' in this case," and "the presumption d[oes] not apply." *Kia Motors Corp.*, 432 S.W.3d at 874.

### C.   Assuming the presumption does apply, its narrow scope—formulation, labeling, and design—does not encompass Mr. Koen's claims based on Defendant's manufacturing, producing, promoting, and failing to test Roundup.

As Mr. Koen explained above, § 82.008(a)'s presumption of nonliability has no place here. Assuming that the presumption does attach, the presumption still does not defeat Mr. Koen's claims. Defendant argues otherwise, claiming that all of Mr. Koen's "claims . . . regardless of theory, are squarely within the ambit of § 82.008(a) because the claims relate to 'some aspect of the formulation, labeling, or deign' of Roundup." Def.'s MSJ at 3. Defendant is mistaken: a plain reading of Mr. Koen's complaint shows his claims extend well beyond Roundup's formulation, labeling, and design.

For example, in his first cause of action for negligence, Mr. Koen alleges that Defendant violated its duties of reasonable care in researching, testing, manufacturing, producing, promoting, marketing, supplying, sale, quality assurance/quality control, and distribution. White Decl., Ex. 1, ¶¶ 116-127. These actions and inactions on Defendant's part do not relate to Roundup's "formulation, labeling, or design." Tex. Civ. Prac. & Rem. Code § 82.008(a); *id*. § 82.008(d) (expressly exempting manufacturing flaws and defects from the reach of the statute); *cf. Bates*, 544 U.S. at 444 ("Rules that require manufacturers . . . to use due care in conducting appropriate testing of their products, [and] to market products free of manufacturing defects . . . plainly do not qualify as requirements for 'labeling or packaging.'"). Similarly, Mr. Koen's fourth cause of action

for breach of implied warranties, White Decl., Ex. 1, ¶¶ 173-183, does not hinge on any aspect of Roundup's formulation, labeling, or design. *Bates*, 544 U.S. at 444 ("Rules that require manufacturers to . . . honor their express warranties or other contractual commitments plainly do not qualify as requirements for 'labeling or packaging.'"). Thus, even if the presumption applies here, most of Mr. Koen's claims, which have nothing to do with Roundup's formulation, labeling, or design, survive summary judgment.

## II. Summary judgment is improper because Mr. Koen has raised genuine issues of material fact about FIFRA's inadequacy that are sufficient to rebut the presumption.

If the Court finds that § 82.008(a) applies to some or all of Mr. Koen's claims, summary judgment is still unwarranted. That is because Mr. Koen raises genuine issues of material fact that FIFRA's standards "[a]re inadequate to protect the public from unreasonable risks of injury or damage." Tex. Civ. Prac. & Rem. Code § 82.008(b)(1). "The presence of a genuine issue of material fact" is, in turn, sufficient to "rebut the presumption" and "preclude[] summary judgment." *Id*.; *Cartwright v. Am. Honda Motor Co.*, No. 9:09CV205, 2012 U.S. Dist. LEXIS 19113, at *8 (E.D. Tex. Jan. 18, 2012) (denying summary judgment because "Plaintiff has produced sufficient rebuttal evidence . . . concerning whether FMVSS 205 is inadequate to protect the public from unreasonable risks of injury or damage."). FIFRA's standards are inadequate to protect the public for two reasons.

First, FIFRA's labeling requirements do not consider that the average user is often unable to comply with the label's directions. "FIFRA regulates by product label rather than direct-use restrictions." George Kimbrell, Sylvia Wu & Audrey Leonard, *Will Regulators Catch the Drift? NFFC v. EPA and Breathing New Life into Pesticide Regul.*, 51 Env't L. Rev. 667, 678 (2021). In other words, "'the label is the law' and EPA's ability to regulate pesticide *use* through FIFRA is limited to establishing label restrictions, such as application instructions or restrictions for use on only certain types of crops." *Id*. (emphasis in original). "Generic label warnings may be difficult to translate into real-world application practices, while complex label restrictions put the onus on the applicator rather than on the registrant to prove that the pesticide is safe." *Id*.

For these reasons, the Ninth Circuit has recognized that the label mandated by FIFRA is

"hardly a 'label' as that term is usually understood." *Nat'l Family Farm Coal.*, 960 F.3d at 1140. The labels are often exceedingly "long, with myriad instructions and restrictions." *Id.*; *see id.* ("many industry professionals had been dismayed by the difficulty in complying with the complex and onerous label requirements" and that "even conscientious applicators had not been able to consistently adhere to the label requirements."). FIFRA's complex and burdensome labels make human compliance nearly impossible and are therefore "inadequate to protect the public from unreasonable risks of injury or damage." Tex. Civ. Prac. & Rem. Code § 82.008(b)(1).

<u>Second</u>, FIFRA's framework is not protective enough of human health because the EPA's process for review and approval myopically focuses on a pesticide's active ingredients rather than on the whole formulation. *See* supra at Part I.B. As explained above, "a growing body of research indicates that a pesticide's active ingredients in combination with its inert and adjuvant ingredients can increase pesticide toxicity, ecotoxicity, and exposure, both independently and through synergistic effects." George Kimbrell, Sylvia Wu & Audrey Leonard, *Will Regulators Catch the Drift? NFFC v. EPA and Breathing New Life into Pesticide Regul.*, 51 ENV'T L. REV. 667, 685 (2021). Because "damages from pesticide use are not simply related to active ingredients," "registration of a pesticide under FIFRA does not guarantee that ordinary usage is safe." Terrence J. Centner, *Pesticide Registration Fails to Protect Human Health: Damages from Exposure to Glyphosate-Based Herbicides*, 36 J. ENV'T. L. & LITIG. 69, 123 (2021). The insufficiently narrow scope of FIFRA's framework—limited to active ingredients alone—raises "a genuine issue of material fact concerning whether [FIFRA] is inadequate to protect the public from unreasonable risks of injury or damage" and consequently "precludes summary judgment." *Cartwright*, 2012 U.S. Dist. LEXIS 19113, at *8.

CONCLUSION

This Court should deny Defendant's motion for summary judgment because it has failed to establish the applicability of § 82.008(a)'s presumption of nonliability. Suppose the Court finds the presumption does apply. In that case, it should still deny Defendant's motion for summary judgment because Mr. Koen has raised genuine issues of material fact sufficient to rebut the presumption.

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: October 26, 2021

Respectfully submitted,

**HENDLER FLORES LAW, PLLC**

/s/ *Scott M. Hendler*
Scott M. Hendler
Texas Bar No. 09445500
shendler@hendlerlaw.com
901 S. MoPac Expressway
Bldg. 1, Suite #300
Austin, Texas 78746
Telephone: (512) 439-3202
Facsimile: (512) 439-3201
*Attorney for Plaintiff Bradley Koen*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2021, I electronically filed this document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.


                                                  */s/ Scott M. Hendler*
                                                  Scott M. Hendler