**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:     202-847-4030
Fax:    202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>*Bradley Koen v. Monsanto Company*<br>Case No. 3:20-cv-03074-VC | MDL No. 2741<br><br>**DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF EXPERTS MICHAEL FREEMAN AND MICHAEL SCOLA UNDER RULE 702**<br><br>Hearing date: 12/13/21<br>Time: 9:00 AM |

1

MONSANTO'S REPLY ISO ITS MOT. TO EXCLUDE TESTIMONY OF DRS. MICHAEL FREEMAN AND MICHAEL SCOLA

Plaintiff's Opposition confirms that the Court should exclude Dr. Scola's and Dr. Freeman's causation opinions because they are not based on reliable methodologies. Plaintiff's attempt to fashion Dr. Scola into an expert—when he was utterly unfamiliar with the issue at the heart of his testimony until days before he issued his expert report—is insufficient. Not only is he unqualified to opine on specific causation, but Plaintiff ignores Dr. Scola's admission that his opinion is premised upon what he called "beyond a reasonable doubt *speculation*."[1] Unsurprisingly, that speculation was based upon a non-scientific method. Dr. Scola's failure to consider other causes of the Plaintiff's NHL provides a further fatal defect in his testimony.

Plaintiff's attempts to salvage Dr. Freeman's causation testimony fare no better. His general causation opinion suffers from numerous failings including an attempt to import a legal standard—more likely than not—into the realm of science and his reliance upon unreliable data that is either not statistically significant or only has significance prior to adjustment for confounders. As for specific causation, Dr. Freeman abandoned his typical methodology for determining etiology and instead of ruling out other possible causes of Plaintiff's NHL, he admitted that he would always opine that glyphosate was a substantial factor unless there was "an [alternative] exposure that always causes [NHL] or causes [NHL] more than 50 percent of the time."[2] This is not a scientific methodology. Dr. Freeman's opinion is nothing more than a conclusion that glyphosate will almost always be causal when an exposed individual develops NHL; essentially any lay person could offer such a non-scientific (and baseless) opinion. His causation opinions are inadmissible as well.

---

[1] Def. Monsanto Co.'s Mot. to Exclude Test. of Pl. Experts Michael Freeman and Michael Scola Under Rule 702, ECF No. 13787 ("Opening Br.") at Lasker Decl. Ex. 1, Deposition of Michael Scola at 166:3-20, 166:22-167:1 ("Scola Dep.").

[2] Opening Br. at Lasker Decl. Ex. 2, Deposition of Michael D. Freeman at 268:16-269:2 ("Freeman Dep.").

**I.     Dr. Scola**

**A.     Dr. Scola Is Not Qualified To Opine on the Etiology of NHL.**

As Dr. Scola's testimony makes readily apparent, he is not an expert on determining the cause of an individual's NHL. Plaintiff's suggestion that he reviewed sufficient literature to form his conclusions[3] is undermined by the record. Dr. Scola conceded that he knew essentially nothing about glyphosate and its alleged relationship with NHL until plaintiff's counsel attempted to educate him just days before he issued his report. *See* Opening Br. at Lasker Decl. Ex. 1, Scola Dep. at 26:23-28:3. Less than a week before serving that report, Dr. Scola had never even looked at *any* scientific literature related to glyphosate and was unaware of the IARC monograph. *Id*. at 27:11-21, 52:12-15, 98:3-6. His subsequent review was, by his own admission, cursory – consisting of only a few pages of the IARC report, *id.* at 208:19-209:8, and summaries (and primary documents) of some EPA papers regarding glyphosate, *id.* at 206:14-21. Not surprisingly, he has never published anything on glyphosate or pesticides (nor for that matter on NHL or its risk factors). *Id.* at 93:10-22.

Plaintiff's attempt to rely on Dr. Scola's "clinical experience" is unavailing. *See* Pl.'s. Opp'n at 10. He admitted that because etiology "doesn't tend to influence the way we think about treatment . . . , we don't tend to spend a lot of time necessarily dissecting, dissecting that aspect of the patient's case." Opening Br. at Lasker Decl. Ex. 1, Scola Dep. at 110:5-111:22. As Dr. Scola was essentially unaware of the science on glyphosate and NHL until days before he issued his report, he obviously had not used his clinical experience to conclude that any of his

---

[3] Pl. Bradley Koen's Resp. in Opp'n to Def. Monsanto Co.'s Mot. to Exclude Test. of Pl. Experts Michael Freeman and Michael Scola Under Rule 702, ECF No. 14072 ("Pl.'s. Opp'n") at 12.

3

MONSANTO'S REPLY ISO ITS MOT. TO EXCLUDE TESTIMONY OF DRS. MICHAEL FREEMAN AND MICHAEL SCOLA

patients had developed NHL due to glyphosate exposure.  He is not qualified to do so for the first time here.

### B. Dr. Scola Failed To Employ A Reliable Methodology.

Beyond his lack of qualifications to opine on this subject, Dr. Scola, by his own admission, failed to employ any scientific methodology in reaching his specific causation opinion:

> Q. So there was no scientific method that you followed to reach [your causation] opinion?
>
> A. No.

*Id*. at 166:22-167:1.  Regardless of the context that Plaintiff tries to provide for this testimony, Pl.'s. Opp'n at 12, Dr. Scola's failure to apply any methodology—let alone a reliable one—is fatal to his opinion.  *Hardeman v. Monsanto Co*., 997 F.3d 941, 963, 965 (9th Cir. 2021) ("[E]xpert evidence is inadmissible where the analysis is the result of a faulty methodology or theory." (quotation marks omitted)).

Unsurprisingly, Dr. Scola admitted that "there's no way that I can conclude that Roundup caused [Plaintiff's] lymphoma."  Opening Br. at Lasker Decl. Ex. 1, Scola Dep. at 166:3-20.  Once again, Plaintiff attempts to point to "context," Pl.'s. Opp'n at 13, but concedes that "Dr. Scola acknowledged there were no lab values, test results, clinical features, histological subtypes, or pathological or genetic markers to pinpoint glyphosate exposure as the cause of Mr. Koen's NHL," *id.*  This "context" does not excuse Dr. Scola for failing to follow a scientific method.  Instead, it only further highlights the incurable defects in Dr. Scola's specific causation opinions.

Plaintiff further claims that Dr. Scola ruled out other risk factors based on the "contemporary literature" and "unique aspects" of Plaintiff's case.  *See* Pl.'s. Opp'n at 14.  Dr.

4

Scola was not, in fact, aware of the "unique aspects" of Plaintiff's case. He admitted not knowing significant details about Plaintiff, including "his social behaviors, smoking history, other chemical and toxin exposure." Opening Br. at Lasker Decl. Ex. 1, Scola Dep. at 108:23-109:24. He did not read any of the depositions in this case, including Plaintiff's deposition, *id.* at 38:23-39:13, and read only a summary of Plaintiff's exposure to glyphosate prepared by counsel, *id.* at 40:5-41:1. He was even unaware that Plaintiff's treating doctors had been deposed. *Id.* at 115:8-15,

With the limited information with which he was provided, it is unsurprising that the only risk factor Dr. Scola considered was Plaintiff's use of glyphosate:

> Q. Did you consider any other risk factors for Mr. Koen beyond his exposure to Roundup?
>
> A. No, again, I'm not, I'm not his treating doctor, so I didn't – I'm not able to interview him and obtain that sort of historical information.[4]

*Id.* at 169:5-18; *see also id.* at 169:19-173:5 (stating that his normal practice would include obtaining a detailed medical history to identify other risk factors, which he did not do in regard to Plaintiff). Dr. Scola's failure to even consider any other risk factors, let alone rule them out, is fatal to his testimony.[5]

---

[4] Dr. Scola's contention that he could not interview Plaintiff lacks any factual basis.

[5] *See, e.g.*, *Claar v. Burlington Northern R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (affirming exclusion of expert testimony based in part on experts' failure to have "made any effort to rule out other possible causes for the injuries plaintiffs complain of"); *see also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (affirming district court's exclusion of toxicologist where toxicologist "did not exclude confounding factors, which 'leaves open the possibility of competing causes of the disease' and raises questions about the competency of expert testimony") (quoting Reference Manual on Scientific Evidence at 428-29); *In re Aredia & Zometa Prods. Liab. Litig.*, 483 F. App'x 182, 188 (6th Cir. 2012) (noting that expert must "reliably rule in the possible causes of [the disease], and reliably rule out the rejected causes").

Regardless of what plaintiff claims, Dr. Scola did not undertake the process necessary to reach a reliable specific causation opinion, i.e., rule out other possible causes of Plaintiff's NHL. As noted, he admits that the "only variable" he "explored in detail" was Plaintiff's exposure to Roundup. Opening Br. at Lasker Decl. Ex. 1, Scola Dep. at 110:1-4. Despite plaintiff's efforts to mischaracterize Monsanto's arguments, Pl.'s. Opp'n at 13, Monsanto is not arguing that Dr. Scola had to identify glyphosate as a cause of Plaintiff's lymphoma with 100% certainty. Instead, Monsanto is arguing–based on well-established law–that Dr. Scola needed to employ a reliable methodology to reach his conclusion based on a reasonable degree of medical certainty, which he admittedly failed to do. His failure to do so renders his testimony inadmissible.

## II. Dr. Freeman

### A. Dr. Freeman's General Causation Opinions Are Inadmissible.

Although plaintiff argues that Dr. Freeman's use of what he calls "forensic epidemiology" is a sound methodology, Pl.'s. Opp'n at 5, his deposition made clear that it is an improper mixing of scientific standards with the legal burden of proof. Nowhere is that made clearer than in his testimony regarding the standard he used regarding "reasonable degree of scientific certainty." Although Plaintiff claims that Dr. Freeman did not import the preponderance of the evidence standard into his scientific analysis of causation, Pl.'s. Opp'n at 6, this is belied by his testimony on this subject:

> Q. Do you hold an opinion, to a reasonable degree of scientific certainty, that glyphosate can cause NHL?
>
> A. I interpret the term "reasonable degree of scientific certainty" *being more than 50 percent*, which is the exact same thing as more probable than not, to my ear.

Opening Br. at Lasker Decl. Ex. 2, Freeman Dep. at 232:20-24 (emphasis added); *see also id.* at 32:12-34:9. But scientists do not use a legal standard ("more than 50 percent"; "more probable

than not"), they use a scientific one. *See, e.g.*, *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) ("Law lags science; it does not lead it.").

Even if Dr. Freeman's testimony has been admitted elsewhere, *see* Pl.'s. Opp'n at 4 (citing cases), the question here is whether Dr. Freeman's methodology was reliable in forming his causation opinion *in this case*. As in *Porter v. Smithkline Beecham Corp.,* No. 03275, 2015 WL 5970639, at *8 (Pa. C.P. Oct. 5, 2015), Dr. Freeman's testimony is inadmissible here because, among other things, it failed to properly account for confounding.

Critically, Dr. Freeman could not identify a single study with a dose-response metric that shows a statistically significant relationship for glyphosate after controlling for other exposures:

> Q. Is there a dose response relationship you've observed in the epidemiology data that remains statistically significant for glyphosate after controlling for other pesticide use?
>
> A. I'd have to look back in at the data to tell you that for sure.
>
> Q. Okay. Can you think of one right now?
>
> A. No. I'd have to go back to my last answer.

Opening Br. at Lasker Decl. Ex. 2, Freeman Dep. at 166:22-167:6. Plaintiff attempts to rehabilitate Dr. Freeman on this critical issue, but it is undisputed that he repeatedly relied upon studies which had issues with statistical significance, lack of adjustment, or confounding. *Id.* at 239:18-241:22 (McDuffie), 242:1-243:23 (Eriksson), 257:19-258:7 (admitting that results in McDuffie may be confounded by another pesticide and that he cannot state that the results would remain statistically significant if controlled).[6] Plaintiff attempts to point to the De Roos (2003) study, Pl.'s. Opp'n at 6, but this Court has previously recognized that when its results were reported using the hierarchical regression model, then "the odds ratio was 1.6 (0.9, 2.8), no longer a statistically

---

[6] Plaintiff claims Dr. Freeman appropriately discounted the Donato study due to its reliance on the Andreotti study, Pl.'s. Opp'n at 7-8, but when pressed on what his purported issue was with the latter study, he testified, "I cannot tell you what the problem is with the data." Freeman Dep. 155:1-4, 156:5-22.

7

MONSANTO'S REPLY ISO ITS MOT. TO EXCLUDE TESTIMONY OF DRS. MICHAEL
FREEMAN AND MICHAEL SCOLA

significant result." *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1118 (N.D. Cal. 2018).

This Court has held, "[t]he experts must also show that the analytical leaps required to reach their ultimate conclusions regarding glyphosate's ability to cause NHL in humans are supportable, in light of the evidence on which they relied." *Id.* at 1131 (citing *see General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Dr. Freeman has failed to do so.

Dr. Freeman's attempt to overcome the confounding issue by claiming that "if you break these data into too many small pieces it loses meaning" is unavailing. Opening Br. at Lasker Decl. Ex. 2, Freeman Dep. at 173:11-14; Pl.'s. Opp'n at 7. Dr. Freeman's reliance on unadjusted studies is not good science that has been rejected by numerous courts; his statement stands in stark contrast to the rulings of multiple courts recognizing the importance of accounting for confounding when trying to establish general causation:

> Where the study ***properly accounts for potential confounding factors*** and concludes that exposure to the agent is what increases the probability of contracting the disease, the study has demonstrated *general* causation—that exposure to the agent "is capable of causing [the illness at issue] in the general population."

*In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 893 (C.D. Cal. 2004) (emphasis added) (citing *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1134 (9th Cir. 2002)). This Court has reached the same conclusion: "When assessing whether an epidemiological study can form a reliable basis for an expert's opinion, a court ***must determine*** whether the study ***adequately considered confounding variables*** and possible sources of bias." *In re Roundup*, 390 F. Supp. 3d at 1117 (emphasis added; citation omitted).

Plaintiff's reliance on *Matrixx Initiatives v. Siracusano*, 563 U.S. 27, 40 (2011), Pl.'s. Opp'n at 7, is misplaced. There, the Supreme Court considered that statistically significant data is sometimes unavailable and that in some instances, ethical considerations may hinder an ability

8

MONSANTO'S REPLY ISO ITS MOT. TO EXCLUDE TESTIMONY OF DRS. MICHAEL FREEMAN AND MICHAEL SCOLA

to obtain such a result. *Matrixx*, 563 U.S. at 40. Here, no claim has been made that it is impossible or unethical to obtain such data. Dr. Freeman claims to rely on the "best epidemiology" studies and admits that to establish general causation, "one needs to properly account for confounding, bias, and chance." Opening Br. at Lasker Decl. Ex. 2, Freeman Dep. at 37:25-38:3, 40:13-17. However, Dr. Freeman admits he cannot identify a study that properly accounted for these factors and produced a statistically significant result. *Id.* at 166:22-167:6. And even though this Court noted that non-statistically significant "data *may* well be informative," it then explained that "one would expect a *more cautious assessment* regarding the strength of association in light of these numbers, particularly when one remembers that the case-control studies have vulnerabilities of their own." *In re Roundup*, 390 F. Supp. 3d at 1133 (emphasis added). Dr. Freeman displayed no such caution.

### B. Dr. Freeman's Specific Causation Opinions are Inadmissible.

Plaintiff asserts that in opining on specific causation, Dr. Freeman followed his usual methodology, Pl.'s. Opp'n at 8, but once again this is belied by his own testimony. Although his usual methodology involves calculating a comparative risk ratio, he did not do that in this case. Opening Br. at Lasker Decl. Ex. 2, Freeman Dep. at 41:6-42:17. That alone renders his testimony inadmissible. *See Kumho Tire Co., LTD. v. Carmichael*, 526 U.S. 137, 152 (1999) (holding that court's role as gatekeeper is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"); *see also Brown v. Burlington N. Santa Fe Ry.*, 765 F.3d 765, 776 (7th Cir. 2014) (affirming

exclusion of proffered expert because "if [he] failed to follow his own stated methods, the [district] court could reasonably conclude that he had failed to follow any reliable method.").

Dr. Freeman's failure to rule out other causes of Plaintiff's cancer is an additional basis to exclude his opinion. Recognizing this fatal flaw, Plaintiff's Opposition makes a half-hearted assertion that Dr. Freeman in fact ruled out alternative explanations, Pl.'s. Opp'n at 9, but fails to cite anything supporting such a contention. Nothing in Dr. Freeman's deposition or report shows that he ruled out other possible causes. Further, Dr. Freeman's contention that NHL is "rare" so "you have to put everything together" for an individual to contract it, Pl.'s. Opp'n at 9, Opening Br. at Lasker Decl. Ex. 2, Freeman Dep. at 263:12-25, is contradicted by Dr. Scola's testimony that NHL "is a common type of cancer." Opening Br. at Lasker Decl. Ex. 1, Scola Dep. at 126:1-6. (Dr. Scola is, as a practicing oncologist, *Id*. at 81:10-13, qualified to opine on the frequency of NHL; Dr. Freeman is not a licensed medical physician. Opening Br. at Lasker Decl. Ex. 2, Freeman Dep. at 10:18-20.). The record is clear that Dr. Freeman did not consider or rule out any other potential causes for Plaintiff's NHL.

Plaintiff's reliance on *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014), Pl.'s. Opp'n at 9, to cure Dr. Freeman's failure is misplaced. As the language Plaintiff quotes indicates, *Messick* considered whether an expert must identify the "sole cause" of a disease. *See* 747 F.3d at 1199. But Monsanto does not argue that Dr. Freeman had to identify glyphosate as the "sole cause," but that he had to consider all potential causes and rule them in or out. *See Hardema*n, 997 F.3d at 965-66. Instead, Dr. Freeman admitted that he would *always* claim that glyphosate was a substantial factor unless there was "an [alternative] exposure that *always* causes [NHL] or causes [NHL] more than 50 percent of the time." Opening Br. Lasker Decl. Ex. 2,

Freeman Dep. at 268:16-269:2. This is neither good science nor admissible under Rule 702. *See Hardeman*, 997 F.3d at 965-66 ("To establish specific causation, experts needed to show that Hardeman's NHL was caused by glyphosate, rather than some other factor."). Plaintiff's attempt to justify Dr. Freeman's failure to rule out other risk factors is thus both factually unsupported and woefully insufficient as a legal matter. This failure provides a further basis to exclude his testimony.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude the testimony of Drs. Michael Freeman and Michael Scola on Rule 702 and *Daubert* grounds and grant summary judgment in Monsanto's favor because Plaintiff has failed to present at least one admissible expert opinion to support general and specific causation in this case.

DATED: November 3, 2021

Respectfully submitted,

/s/ Eric G. Lasker
Eric G. Lasker
HOLLINGSWORTH LLP
1350 I Street, NW
Washington, DC 20005
Tel:   202-898-5843
elasker@hollingsworthllp.com

*Attorneys for Defendant Monsanto Company*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of November, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Eric G. Lasker*
Eric G. Lasker
HOLLINGSWORTH LLP