## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

IN RE: ROUNDUP PRODUCTS LIABILITY
LITIGATION

Case No. 16-MD-2741-VC

THIS DOCUMENT RELATES TO

Bundy v. Monsanto, 20-cv-06345-VC

_____/

### PLAINTIFF, ROBERT BUNDY'S SECOND MOTION FOR LEAVE TO AMEND COMPLAINT TO JOIN ADDITIONAL PARTY DEFENDANT, <u>FOR REMAND DUE TO A LACK OF DIVERSITY</u>

COMES NOW, Plaintiff, Robert Bundy, by and through his undersigned counsel, and files this Second Motion for Leave to Amend Complaint to Join Additional Party Defendant, and for Remand Due to a Lack of Diversity, and Incorporated Memorandum of Law in Support, and would state:

### MOTION

1.    This case involves literally thousands of individual lawsuits by individuals who used the "Roundup" weed killing product manufactured by Defendant, Monsanto Co. The claimants have suffered from lymphoma as a result of contact with the "Roundup" product.

2.    Plaintiff, Robert Bundy, owned a landscaping business. Every day for over 6 years, he sprayed Roundup as part of his business. Like many, if not all, of the other claimants in the Roundup litigation, he was diagnosed with lymphoma.

3.    Robert Bundy filed suit in the Circuit Court in and for Sarasota County, Florida. The lawsuit was removed to Federal Court based on diversity jurisdiction. Thereafter,

01427598-1   01427598-1

1

the case was consolidated with the other Roundup cases, and was joined as part of the Court's "multidistrict lawsuit."

4.  On April 28, 2021, Plaintiff filed his Motion for Leave to Amend the Complaint, Join Additional Party Defendant and to Remand Due to Lack of Diversity based on the fact that Plaintiff had identified M&W Supply, Inc., a Florida based company as the party responsible for selling Roundup to Plaintiff.

5.  On September 10, 2021, this Court denied Plaintiff's Motion for Leave to Amend the Complaint, Join Additional Party Defendant and to Remand Due to Lack of Diversity based, in part, on the fact that M&W is a dissolved corporation (though the court noted this was not the only dispositive issue.)

6.  Seemingly left with no alternative but to pursue its claims against M&W concurrently in state court the Plaintiff began preparing a lawsuit directly against M&W. In the course of this preparation the Plaintiff discovered new evidence which shows that M&W Supply, Inc. continues to operate under a new corporate entity name, NKC Enterprises, Inc.

7.  NKC Enterprises is a mere continuation of M&W; *see Lab. Corp. of America v. Prof'l Recovery Network,* 813 So.2d 266, 269 (Fla. 5th DCA 2002).

8.  Plaintiff was unaware that M&W continued to operate under a different corporate name until after this Court's Order denying Plaintiff's Motion for Leave to Amend the Complaint, Join Additional Party Defendant and to Remand Due to Lack of Diversity and the Plaintiff began to pursue a separate state court action against M&W.

01427598-1   01427598-1

9.      On October 29, 2021, Plaintiff filed his lawsuit in the Circuit Court in and for Sarasota County, Florida, case number: 2021 CA 005137 against NKC Enterprises, Inc. d/b/a M & W Supply Co., and M & W Supply, Inc (collectively "M&W"). This Compliant is attached hereto as Exhibit "B".

10.     In this motion, the Plaintiff seeks leave of the Court to amend his Complaint to 1) join M&W Supply, Inc. and NKC Enterprises, Inc., as a party defendants, and 2) raise claims for strict liability against M&W, for distributing/selling an inherently dangerous product. The proposed Amended Complaint is attached hereto as Exhibit "A".

11.     Upon the joinder of M&W, a Florida for profit corporation, as a party Defendant, diversity jurisdiction will no longer exist, such that the case must be remanded back to the Circuit Court in and for Sarasota County, Florida at which time the concurrent state action (2021 CA 005137) can be consolidated into the subject case.

## MEMORANDUM OF LAW

**A.      The Plaintiff requires leave to amend to join M&W Supply, Inc. as an additional party Defendant, and to raise claims against it.**

Rule 20 of the Federal Rules of Civil Procedure, entitled and governing "Permissive Joinder of Parties," provides, in relevant part, as follows:

> (a)     Persons Who May Join or Be Joined.
> * * *
> > (2)     Defendants. Persons—as well as a vessel, cargo, or other property subject to admiralty process in rem—may be joined in one action as defendants if:
> > > (A)     any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

01427598-1    01427598-1

3

> (B)   any question of law or fact common to all defendants will arise in the action.

The requirements of Rule 20(a) are construed liberally in order to promote broadest scope of action consistent with fairness to parties.  See e.g., Cordero v. AT&T, 190 F.R.D. 26, 1999 U.S. Dist. LEXIS 17650 (D.P.R. 1999).

As the Court correctly pointed out in its September 10, 2021 Order, once a case has been removed, the court must look at additional factors in determining whether or not a Plaintiff can "join additional defendants whose joinder would destroy subject matter jurisdiction." 28 U.S.C. § 1447(e).  Pursuant to San Jose Neurospine v. Cigna Health & Life Insurance Co., 2016 WL 7242139, at *6 (N.D. Cal. Dec. 15, 2016), those factors include:

> 1) whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a);
> 2) whether the statute of limitations would preclude an original action against the new defendants in state court;
> 3) whether there has been unexplained delay in requesting joinder;
> 4) whether joinder is intended solely to defeat federal jurisdiction;
> 5) whether the claims against the new defendant appear valid; and
> 6) whether denial of joinder will prejudice the plaintiff.

Each of the factors are discussed below:

### 1.   Whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a)

"Federal Rule of Civil Procedure 19 requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would imped their ability to protect their interests or would subject any of the parties to the danger of inconsistent obligations." Boon v. Allstate Ins. Co., 229 F. Supp. 2d 1016, 1022 (C.D. Cal. 2002) citing Clinco v. Roberts, 41 F. Supp. 2d 1080, 1082 (C.D. Cal. 1999); Fed.R.Civ.P. 19(a).

01427598-1   01427598-1

Furthermore, "The standard is met **when failure to join will lead to separate and redundant actions**, but it is not met when defendants are only tangentially related to the cause of action or would not prevent complete relief." [Emphasis added] Id. citing IBC Aviation Services, Inc. v. Compania Mexicana de Aviacion, S.A. de C.V., 125 F. Supp. 2d 1008, 1011-1012 (N.D. Cal. 2000). Lastly, Gallahar v. George A. Rheman Co., 50 F. Supp. 655, 1943 U.S. Dist. LEXIS 2460 (D. Ga. 1943) held that the philosophy of the Federal Rules of Civil Procedure is to discourage separate actions which make for multiplicity of suits and wherever possible to permit, and sometimes require, combining in one litigation all cross-claims of parties, particularly where they arise out of same transaction; amendments are more liberally allowed under Federal Rules than before.

In the matter at hand, Plaintiff seeks to avoid potential inconsistent verdicts or redundant actions if the case against Monsanto and the case against M&W are tried separately. Here, the Plaintiff is the same, the injuries to the Plaintiff are the same and the product at issue is the same. Further, it is all but certain that M&W will file a third party action against Monsanto in the state case which has the potential to create abhorrent inconsistent verdicts. There is no question that Florida law provides that manufacturers **and** sellers/retailers of dangerous products are strictly liable for the damages caused by products they sell. In fact, the substantive merit to the Plaintiff's claim against the distributor of the inherently dangerous "Roundup" product has already been established in other courts. By way of example only, the court in Johnson v. Monsanto Co., No. 16-cv-01244-MMC, 2016 U.S. Dist. LEXIS 58309, at *5-7 (N.D. Cal. May 2, 2016), held as follows:

> In its Notice of Removal, Monsanto initially argues that Wilbur-Ellis Co. has been fraudulently joined, for the asserted reason that the complaint lacks "specific factual allegations of liability" on the part of Wilbur-Ellis Co. (See Notice of Removal ¶ 16.)

01427598-1   01427598-1

5

The Court is not persuaded. As noted, plaintiff alleges Roundup is a defective product due to the presence therein of glyphosate (see Compl. PP 22, 56-62, 64, 81-82); plaintiff further alleges Wilbur-Ellis was "one of the distributors providing Roundup and other glyphosate-containing products actually used by [p]laintiff" (see Compl. ¶ 71). Under California law, an entity that places a "defective product into the stream of commerce" can be held strictly liable for injuries caused by that product. See Bell v. Industrial Vangas, Inc., 30 Cal. 3d 268, 271 n.1, 279, 179 Cal. Rptr. 30, 637 P.2d 266 (1981). To the extent Monsanto is contending plaintiff's allegations as to the nature of the defect or Wilbur-Ellis Co.'s role as a distributor are not sufficiently detailed, such argument is unavailing, as Monsanto has not shown the state court would preclude amendment.

In keeping with this holding, the court in Taylor v. Costco Wholesale Corp., No. 2:20-cv-00655-KJM-DMC, 2020 U.S. Dist. LEXIS 187348, at *1-2 (E.D. Cal. Oct. 7, 2020), observed as follows regarding a claim against the retailer Costco for selling Roundup:

In this putative class action, plaintiff sues Costco, a retailer, for selling Roundup, a weed killer containing an allegedly cancer-causing chemical, glyphosate. Compl. ¶¶ 1-2, ECF No. 1. Monsanto, the manufacturer of Roundup, is not a party to the case. Plaintiff purchased Roundup twice from a Costco store in Shasta County. Id. ¶ 79. Defendant did not provide any information that Roundup was carcinogenic. Id. ¶ 80. Plaintiff asserts he would not have purchased Roundup if he had known of its carcinogenic properties. Id. ¶ 82.

\* \* \*

A court should give leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). Rule 15 of the Federal Rules of Civil Procedure evinces a preference for leave to amend that is "to be applied with extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). It may be an abuse of discretion to dismiss with prejudice unless it is clear that the complaint could not be saved by amendment. Id. at 1052.

Because the court cannot conclude no facts exist that could support Costco's personal participation in the scheme, the court grants leave to amend.

As is seen in the above-cited authorities, Roundup has been determined to be inherently dangerous, and **retailers** of Roundup have been held liable for participating in the chain of commerce leading to injuries from its use. The substantive merit to the Plaintiff's requested amendment is clear. Therefore, it is proper to allow the Plaintiff to join M&W as the

01427598-1   01427598-1

6

supplier of the product at issue so that this matter can be remanded and consolidated with the state action against M&W only (2021 CA 005137).

### 2. Whether the statute of limitations would preclude an original action against the new defendants in state court

In previous filings, most particularly Plaintiff's reply to Monsanto's memorandum in opposition to the Plaintiff's original motion for leave to amend its complaint, the Plaintiff outlined that the statute of limitations would not preclude an original action against M&W Supply, Inc. and Plaintiff will incorporate those arguments here. The primary arguments which illustrate that the statute of limitations would not preclude an original action against M&W Supply, Inc. are that the Second Amended Complaint does expressly allege, in paragraph 25, that the Plaintiff "first had notice that Roundup was the cause of his Lymphoma on or about April 2, 2020 when he was provided a report by Dr. Tony S. Quang" and that under the facts of the instant case Florida law would allow the suit to proceed against the dissolved corporation.

> Substantively, §607.1407(2) provides:
> (2) If the dissolved corporation complies with paragraph (1)(a) or paragraph (1)(b), unless sooner barred by another statute limiting actions, the claim of each of the following claimants with known or other claims is barred unless the claimant commences a proceeding to enforce the claim against the dissolved corporation within 4 years after the date of filing the notice with the department or the date of the second consecutive weekly publication, as applicable:
> (a) A claimant who did not receive written notice under s. 607.1406.
> (b) A claimant whose claim was timely sent to the dissolved corporation but on which no action was taken by the dissolved corporation.
> (c) A claimant whose claim is not a known claim under s. 607.1406(5).

As the Plaintiff first had notice that Roundup was the cause of his Lymphoma on or about April 2, 2020 (and M&W Supply, Inc. was dissolved over seven years ago) he indisputably would fall under the exception of someone who whose claim was not a known claim under §607.1407(2)(c) and there would be no issue with pursuing the claims against M&W Supply,

01427598-1   01427598-1

7

Inc. Further, the recently identified information supporting that that M&W Supply, Inc. continues to operate under a new corporate entity name, NKC Enterprises, Inc. and the claim in the proposed Second Amended Complaint against NKC Enterprises, Inc. which is an active Florida corporations pushes this factor squarely in favor of granting amendment.

### 3.   Whether there has been unexplained delay in requesting joinder

The Plaintiff is entitled to constantly evaluate its claims and to bring valid causes of action against those persons and entities it has legally recognizable claims. After this matter was removed to Federal Court and around the time it was transferred to the multi district litigation, a representative from Monsanto raised the issue with counsel for Plaintiff that it believed the Plaintiff's lymphoma was more accurately characterized as Hodgkin's Lymphoma as compared to the more common Non-Hodgkin's Lymphoma. Further, Monsanto took the position that this difference was fatal or potentially fatal to any potential causation analysis as it relates to Roundup causing the Plaintiff's lymphoma. Rather than pursue additional claims in light of this contention, the Plaintiff sought additional expert opinion from Dr. Claire E. Murphy who confirmed that Monsanto's contention in this regard was incorrect. Having resolved this issue the Plaintiff immediately attempted to amend its complaint on April 27, 2021. The Court denied the Plaintiff's initial motion to amend on or about September 10, 2021. The Plaintiff subsequently discovered the M&W business was ongoing in late October and shortly thereafter filed its state action against the M&W entities and has just as quickly filed the instant motion. The timing prejudices no one and is no basis for denying the ability to seek a judgment against the party that sold him Monsanto's deadly product as Florida law clearly recognizes this claim. On this point, the Plaintiff

01427598-1   01427598-1

would note the decision in Mudra Int'l, Ltd. Liab. Co. v. Kellwood Co., No. CV 08-03642

DDP (JCx), 2008 U.S. Dist. LEXIS 126103, at *14-17 (C.D. Cal. Sep. 16, 2008), as follows:

> 3. Unexplained Delay in Requesting Joinder
>
> Courts also consider whether the delay between the filing of the initial complaint and the filing of the amended complaint was reasonable. In judging this factor, the court will consider the amount of time between filings, as well as the reason for any delay. See Bakshi v. Bayer Healthcare, LLC, 2007 U.S. Dist. LEXIS 33801, 2007 WL 1232019 *4 (N.D. Cal. 2007). For example, courts have found an amendment timely when a plaintiff received new information as a result of discovery responses, see Palestini, 193 F.R.D. at 658; when a plaintiff sought amendment after a particular action by a defendant, see City of Perth Amboy v. Safeco Ins. Co. of Am., 539 F. Supp. 2d 742, 747 (D.N.J. 2008) (plaintiff sought leave to amend after the defendant counterclaimed); IBC, 125 F. Supp. 2d at 1012 (plaintiff sought leave to amend after defendants refused to stipulate); *__when a plaintiff sought to add both new relief and a new defendant__*, see City of Perth Amboy, 539 F. Supp. 2d at 747; and when a plaintiff had substituted counsel, see Boon, 229 F. Supp. 2d at 1023.
> * * *
> Kellwood attempts to give this court "reason to doubt [Mudra's] explanation" for the delay. Palestini, 193 F.R.D. at 658. Incorporating by reference its arguments opposing Mudra's first motion for leave to amend, Kellwood first argues that an eight month delay between filing the complaint and first attempting to join these defendants is too long. Additionally, and perhaps more persuasively, Kellwood argues that Mudra's attempt to shift the blame to Kellwood is inappropriate because the Mudra's allegations are based   entirely on documents it has had in its possession the entire time.
>
> The Court did not comment on this factor in its March Order apart from the factor's relationship to the issue of motive, discussed immediately above. The March Order, however, suggested that the Court found Mudra's reason for waiting eight months persuasive. March Order at 6 *__("It is often reasonable, both as a matter of strategy and to promote judicial economy, for a plaintiff to conduct further discovery before seeking to amend its claims or join additional parties."). The Court's analysis has not changed. Accordingly, to the extent Kellwood re-asserts its arguments regarding the timeliness of the first amended complaint, the Court rejects Kellwood's arguments.__* (Emphasis added).

The delay in filing the case against M&W is reasonable under Mudra.  See also, Gutierrez-

Aniceto v. United Van Lines, 2003 Cal. Super. LEXIS 7375 (Superior Court of California

2003)(concluding that "[t]hus, a delay similar to that in Lopez has occurred in the present

01427598-1   01427598-1

action. In this case, a delay of approximately four months has occurred between removal (on April 26, 2002) and the motion to amend (on September 3, 2002) by adding non-diverse parties. In <u>Lopez</u>, the comparable delay was six months. Id. As the defendants aptly note, plaintiff has had time and opportunity to add CCSF as a party. Plaintiff's unexplained delay favors denying plaintiff's motions to amend and remand, ***<u>but the delay is not so unreasonable as to compel denial of plaintiff's motion to remand</u>***." (Emphasis added)); <u>See also</u>, <u>Camacho v. JLG Indus., Inc.</u>, No. SA CV 17-1188-DOC (KESx), 2017 U.S. Dist. LEXIS 189286, at *14 (C.D. Cal. Nov. 15, 2017)(finding a seven month delay to be reasonable).  In the end, even assuming that this Court finds the delay to be "unreasonable," this, standing alone, is insufficient to defeat the joinder and remand.  <u>See e.g.</u>, <u>Camacho v. JLG Indus., Inc.</u>, No. SA CV 17-1188-DOC (KESx), 2017 U.S. Dist. LEXIS 189286, at *5 (C.D. Cal. Nov. 15, 2017)("The Ninth Circuit holds that these factors are not of equal weight; specifically, 'delay alone no matter how lengthy is an insufficient ground for denial of leave to amend.'").

### 4.   Whether joinder is intended solely to defeat federal jurisdiction

As discussed above, Plaintiff's claims against the M&W Defendants are fully valid under Florida law and are not barred by any statute of limitations or due to the fact that one of the M&W Defendants was dissolved.  The motive has nothing to do with defeating jurisdiction and is purely an attempt to get all the actionable Defendants in the same case. The less than one year delay in attempting to join the M&W Supply, Inc. was primarily a factor of Plaintiff prudently evaluating his causation evidence.  There has been virtually no delay between the Plaintiff's discovery of evidence which would support a claim against, NKC Enterprises, Inc. and the instant motion.   Having multiple Defendants provides

01427598-1   01427598-1

multiple sources to try to reach a settlement.  In the instant situation this is even more vital as Monsanto has thousands of potential claims to settle or defend while the M&W Defendants likely would only have the Plaintiff.  Roundup caused the Plaintiff to develop cancer along with all the horrible things that accompany that diagnosis.  The Plaintiff rightfully wants this full constitutional access to the courts to provide the full Civil redress against all the legally responsible parties.  What the Plaintiff does not want to do is to have to litigate this matter twice and expose himself to potentially inconsistent verdicts.

### 5.   Whether the claims against the new defendant appear valid

As outlined above, the claims against the new defendants are completely valid.

### 6.   Whether denial of joinder will prejudice the plaintiff

As outlined above, denial of joinder will create an extreme prejudice to the Plaintiff.  As this Court is aware, the time, cost, energy and emotional toll it takes to prosecute these claims is immense.  Should the Court deny the joinder of the legitimate M&W Defendants the Plaintiff will have to litigate his claims twice for the same set of damages.

**B.   Upon joinder of M&W Supply, Inc., diversity jurisdiction is lost, and the case must be remanded to the Circuit Court in and for Sarasota County, Florida.**

The joinder of M&W Supply, Inc., destroys diversity jurisdiction in this case both M&W defendants were formed and operate in the State of Florida.  The court in <u>Johnson v. Monsanto Co.</u>, No. 16-cv-01244-MMC, 2016 U.S. Dist. LEXIS 58309, at *5-7 (N.D. Cal. May 2, 2016), specifically analyzed this issue.  In doing so, the <u>Johnson</u> court rejected Monsanto's attempt to claim that the joinder of the retailer of Roundup was improper as it

01427598-1   01427598-1

11

was "fraudulently" directed at destroying diversity.  In rejecting this argument, the <u>Johnson</u>

court engaged in the following analysis:

> Plaintiff seeks remand on the ground that diversity of citizenship does not exist. Specifically, plaintiff argues that Monsanto has failed to show Gould, Wilbur-Ellis Co. and Wilbur-Ellis Feed are fraudulently joined as defendants.

> A district court has diversity jurisdiction where an action is between citizens of different states and the amount in controversy exceeds the sum of $75,000. See 28 U.S.C. § 1332(a). As noted above, Monsanto acknowledges that each defendant other than itself is a citizen of California, as is plaintiff, but contends the citizenship of each defendant other than itself should be disregarded. As discussed below, the Court finds Monsanto has failed to show Wilbur-Ellis Co. has been fraudulently joined.

> "Fraudulent joinder is a term of art." <u>See</u> <u>McCabe v. General Foods Corp.</u>, 811 F. 2d 1336, 1339 (9th Cir. 1987). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." <u>See id.</u> In seeking to establish a non-diverse defendant has been fraudulently joined, the removing defendant "is entitled to present the facts showing the joinder to be fraudulent." <u>See id.</u> Thus, in determining whether a defendant has been fraudulently joined, the district court may look beyond the pleadings and consider evidence submitted by the parties. <u>See</u> <u>Morris v. Princess Cruises, Inc.</u>, 236 F. 3d 1061, 1068 (9th Cir. 2001) (holding "fraudulent joinder claims may be resolved by piercing the pleadings and considering summary judgment-type evidence such as affidavits") (internal quotation and citation omitted). The burden is on the removing defendant to prove "by clear and convincing evidence" that the plaintiff cannot prevail against the non-diverse defendant. <u>See</u> <u>Hamilton Materials, Inc. v. Dow Chemical Corp.</u>, 494 F. 3d 1203, 1206 (9th Cir. 2007) (holding removing defendant's burden is to show it is "not possible" for plaintiff to prevail against non-diverse defendant).

> In its Notice of Removal, Monsanto initially argues that Wilbur-Ellis Co. has been fraudulently joined, for the asserted reason that the complaint lacks "specific factual allegations of liability" on the part of Wilbur-Ellis Co. (See Notice of Removal ¶ 16.) The Court is not persuaded. As noted, plaintiff alleges Roundup is a defective product due to the presence therein of glyphosate (see Compl. PP 22, 56-62, 64, 81-82); plaintiff further alleges Wilbur-Ellis was "one of the distributors providing Roundup and other glyphosate-containing products actually used by [p]laintiff" (see Compl. ¶ 71). Under California law, an entity that places a "defective product into the stream of commerce" can be held strictly liable for injuries caused by that product. <u>See</u> <u>Bell v. Industrial Vangas, Inc.</u>, 30 Cal. 3d 268, 271 n.1, 279, 179 Cal. Rptr. 30, 637 P.2d 266 (1981). To the extent Monsanto is contending plaintiff's allegations as to the nature of the defect or Wilbur-Ellis Co.'s role as a distributor are not sufficiently detailed, such argument is unavailing, as Monsanto has not shown

the state court would preclude amendment. See Albi v. Street & Smith Publications, Inc., 140 F.2d 310, 312 & n.4 (9th Cir. 1944) (holding "[a] merely defective statement of the plaintiff's action does not warrant removal"; explaining, "[t]he plaintiff's right to retain the action in state court should not be defeated by a mere failure, through inadvertence or want of skill, perfectly to state the facts constituting the cause of action"); see also, e.g., Padilla v. AT&T Corp., 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (holding, where removing defendant bases fraudulent joinder argument on pleading deficiency, "[r]emand must be granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure the purported deficiency") (internal quotation, citation, and alteration omitted).

Monsanto also relies on a declaration by Scott M. Hushbeck ("Hushbeck"), a Vice-President of Wilbur-Ellis Co., which declaration, Monsanto argues, "contradicts the [c]omplaint." (See Monsanto's Opp. to Pl.'s Mot. to Remand at 1:11.) In his declaration, Hushbeck states that Wilbur-Ellis Co. "has not sold Roundup, RangerPro, or any other glyphosate-containing products to the Benicia Unified School District (CA) or the City of Benicia (CA)" (see Hushbeck Decl. ¶ 5), and that, "[p]rior to 2015, Wilbur-Ellis [Co.] did not have any knowledge of any potential risk of cancer, including non-Hodgkin lymphoma, from Roundup, RangerPro, or any other glyphosate-containing products" (see id. ¶ 7). Assuming the truth of the statements made therein, Hushbeck's declaration nonetheless is insufficient to support a finding of fraudulent joinder. In particular, Monsanto has not thereby shown plaintiff's inability to establish, as against Wilbur-Ellis Co., a claim for strict products liability. See, e.g., Hamilton Materials, 494 F.3d at 1206 (requiring defendant to show, "by clear and convincing evidence," it is "not possible" for plaintiff to prevail against non-diverse defendant). First, nothing in the declaration forecloses plaintiff from establishing his employer purchased Roundup from a retailer or other provider which, in turn, had obtained Roundup from Wilbur-Ellis Co. Second, Wilbur-Ellis Co.'s asserted lack of knowledge of the defect at the time plaintiff used Roundup does not foreclose a claim of strict liability based on a theory of design defect, as knowledge of the alleged defect is not an element of such claim. See Brown v. Superior Court, 44 Cal. 3d 1049, 1056-57, 245 Cal. Rptr. 412, 751 P.2d 470 (1988) (explaining that strict liability "focuses not on the conduct of the [defendant] but on the product itself, and holds the [defendant] liable if the product was defective" and the product "proximately caused injury").

Accordingly, as Monsanto has not shown Wilbur-Ellis Co. is fraudulently joined as a defendant, the Court lacks diversity jurisdiction over the above-titled action, and the motion to remand will be granted.

The *exact* same situation exists in this case, and the eminently proper joinder of M&W Supply, Inc., as a party Defendant destroys diversity jurisdiction as a matter of law. As

01427598-1   01427598-1

13

such, the result in <u>Johnson</u> applies here and mandates remand of this case to the Circuit Court in and for Sarasota County, Florida.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests this Court to grant its Second Motion for Leave to Amend its Complaint to join the M&W defendants as party Defendants and raise claims against them. The proposed Second Amended Complaint is attached hereto as Exhibit "A" and the Plaintiff requests that it be deemed filed upon this Court's granting of the Motion for Leave to Amend. Moreover, upon granting the Motion for Leave to Amend, diversity jurisdiction is lost, such that the Plaintiff moves for this Court to remand the case back to the Circuit Court in and for Sarasota County, Florida so that it can be consolidated with Case number 2021 CA 005137.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on November 5, 2021, and was provided via email to Anthony N. Upshaw, Esq. and Melissa R. Alvarez, Esq., McDermott Will & Emery, LLP 333 SE 2nd Avenue, Suite 4500, Miami, FL 33131 (aupshaw@mwe.com) and (malvarez@mwe.com) and Joe G. Hollingsworth, Esq., Hollingsworth LLP, 1350 I Street N.W., Washington, D.C. 20005 (jhollingsworth@hollingsworthllp.com).

**ICARD, MERRILL, CULLIS, TIMM,
FUREN & GINSBURG, P.A.**
2033 Main Street, Suite 600
Postal Drawer 4195
Sarasota, Florida 34230
(941) 366-8100 - Phone
*(941) 366-6384 - Fax*

ANTHONY J. MANGANIELLO, III, ESQ.
Florida Bar No. 0052307
Attorneys for Plaintiff, BUNDY

01427598-1   01427598-1

14

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

IN RE: ROUNDUP PRODUCTS LIABILITY
LITIGATION

Case No. 16-MD-2741-VC

THIS DOCUMENT RELATES TO

Bundy v. Monsanto, et al. 20-cv-06345-VC

_____/

## SECOND AMENDED COMPLAINT & DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, ROB BUNDY, by and through his undersigned attorneys, and sues the Defendants, BAYER CORPORATION, MONSANTO COMPANY, NKC ENTERPRISES, INC., a Florida corporation, d/b/a M & W Supply Co., as successor-in-interest to M & W SUPPLY, INC., a dissolved Florida corporation and M & W SUPPLY, INC., a dissolved Florida corporation, and states as follows:

## GENERAL ALLEGATIONS

1.   This is an action for damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of costs and interests.  This Court has subject matter jurisdiction pursuant to section 26.012, Florida Statutes.

2.   Venue is appropriate before the Twelfth Judicial Circuit as the cause of action accrued in Sarasota County, Florida.

3.   At all times material herein, Plaintiff, ROB BUNDY, (hereinafter "BUNDY), was a resident of Sarasota County, Florida.

4.   At all times material hereto, the Defendants, BAYER CORPORATION and MONSANTO COMPANY, (hereinafter "BAYER/MONSANTO"), were licensed to conduct business and distribute their products within the State of Florida and Sarasota

01427642-1      01427642-1



1

County, Florida and, in fact, did conduct significant business within the State of Florida generally and specifically within Sarasota County. This business included, but is not limited to the marketing, distribution and sale of Roundup, a herbicide which has been linked to causing Lymphoma.

5.    At all times material hereto, Defendant, M & W SUPPLY, INC., (hereinafter "M&W"), was a Florida corporation identifying its principal place of business at 7750 Fruitville Rd., Sarasota, FL 34240. M&W was a retailer of Roundup, and sold Roundup to Plaintiff, BUNDY numerous times during the years at issue in this Complaint.

6.    Defendant, NKC ENTERPRISES, INC., d/b/a M & W Supply, Inc., is a Florida corporation whose principal place of business is 7750 Fruitville Rd., Sarasota, FL, 34240. NKC ENTERPRISES, INC. is the successor-in-interest to M & W SUPPLY, INC., a dissolved Florida corporation.

7.    NKC ENTERPRISES, INC. and M & W SUPPLY, INC. are collectively referred to as "the M&W Defendants." M & W SUPPLY, INC. was originally formed in 2002 and was voluntarily dissolved on January 13, 2014.

8.    A copy of a corporate search result for M & W SUPPLY, INC. through the State of Florida Division of Corporations ("Sunbiz") is attached hereto as Exhibit "A."

9.    NKC ENTERPRISES, INC. was formed on June 5, 2013 and is still active. A copy of the corporate search result for NKC ENTERPRISES, INC. through the State of Florida Division of Corporations ("Sunbiz") is attached hereto as Exhibit "B."

10.    At all times relevant to this proceeding, the M&W Defendants have operated as a wholesale landscape supply company at the same address and have common officers and directors. NKC ENTERPRISES, INC.'s website currently states that the company was

01427642-1    01427642-1

2

formed in 2002, the same year M & W SUPPLY, INC. was formed. A copy of NKC ENTERPRISES, INC.'s website is attached hereto as Exhibit "C."

11.   NKC ENTERPRISES, INC. is a mere a continuation of M & W SUPPLY, INC., pursuant to *Lab. Corp. of America v. Prof'l Recovery Network*, 813 So.2d 266, 269 (Fla. 5th DCA 2002).

12.   At all times material hereto, the M&W Defendants are retailers of Roundup, and sold Roundup to Plaintiff, BUNDY numerous times during the years at issue in this Complaint.

13.   Plaintiff, BUNDY was exposed to, and harmed by, Defendants, BAYER/MONSANTO's product Roundup for a seven year period from 2005 to 2012 as a consequence of his ownership of a lawncare business in Sarasota County, Florida and his use of and exposure to the Roundup product.

14.   Monsanto, is a wholly owned subsidiary of the Bayer Corporation, having been purchased by Bayer Corporation in June 2018 with Bayer assuming all assets and liabilities of Monsanto Company, Bayer Corporation and Monsanto Company are jointly and severally liable for any and all injuries and harm proximately caused by use of the product Roundup to Plaintiff, BUNDY.

15.   At all times material hereto, the M&W Defendants were retailers of Roundup.

16.   Plaintiff, BUNDY purchased Roundup on a regular basis from the M&W Defendants during the years at issue in this case. True and correct copies of receipts showing BUNDY'S purchase of Roundup from M&W are attached hereto as Exhibit "D."

01427642-1     01427642-1

3

17. Plaintiff, BUNDY used Roundup purchased at the M&W Defendants on a regular basis, and as a result was exposed to and harmed by Roundup, within his lawncare business for the seven years prior to his diagnosis of Lymphoma in 2012.

18. Plaintiff, BUNDY was regularly exposed to the ingredient glysophate, which was a major ingredient in the manufacturing of Defendants, BAYER/MONSANTO product Roundup.

19. Defendants, BAYER/MONSANTO were aware, as early as 1981, that the ingredient glysophate was a known carcinogen and that the product Roundup which contained glysophate as a major ingredient was therefore not reasonably safe as designed and distributed.

20. Defendants, BAYER/MONSANTO having knowledge of the design defect within its product Roundup, failed to warn of glysophate's causal relation to cancer and that the product was not reasonably safe.

21. In fact, Defendants, BAYER/MONSANTO distributed scientific papers proclaiming the safety of its products while having constructive knowledge of the carcinogenic characteristics of glysophate. The Defendants, BAYER/MONSANTO went so far as to "ghost write" scientific papers falsely proclaiming the safety of its herbicides all the while knowing of the carcinogenic properties of glysophate. Defendants, BAYER/MONSANTO also intervened within government review of glysophate toxicity and engineered efforts to discredit critics of their products.

22. The actions were done for a singular purpose: to protect Defendants, BAYER/MONSANTO's profits by concealing the known cancer risk of Roundup to the public and to its consumers.

01427642-1    01427642-1

4

23.   As a direct and proximate cause of his exposure to Roundup the Plaintiff, BUNDY developed Lymphoma and was forced to undergo extensive and painful treatments including but not limited to chemotherapy.   The very nature of this disease, and the nature of the exposure, is such that the Plaintiff, BUNDY will suffer increased cancer risk the rest of his life and therefore the Plaintiff, BUNDY must undergo continuing monitoring to guard against the cancer's recurrence.   The stress and anxiety associated with same has caused a dramatic impact on the Plaintiff, BUNDY's ability to enjoy his life and has caused extreme and ongoing mental anguish.

24.   This disease devastated the Plaintiff, BUNDY's family, and his business.   The disabilities associated with Lymphoma has negatively effected the Plaintiff, BUNDY's ability to work and his earning capacity.

25.   The Plaintiff, BUNDY first had notice that Roundup was the cause of his Lymphoma on or about April 2, 2020 when he was provided a report by Dr. Tony S. Quang.

### COUNT I – NEGLIGENCE AGAINST BAYER/MONSANTO

26.   The Plaintiff re-alleges and incorporates by reference hereto the allegations contained in paragraphs 1 through 26 of the General Allegations, as if fully set forth herein.

27.   As outlined above, Defendants, BAYER/MONSANTO knew that their product, Roundup was unreasonably dangerous and likely to cause Lymphoma to the consumers of this product.

28.   Despite this knowledge, Defendants, BAYER/MONSANTO continued to negligently keep glysophate as part of the design of its Roundup product.   Despite this knowledge, Defendants, BAYER/MONSANTO continued to negligently manufacture Roundup with glysophate as a major ingredient.   And, despite this knowledge, Defendants,

01427642-1        01427642-1

BAYER/MONSANTO never warned its consumers of the inherently dangerous properties of glysophate in any of the packaging or materials associated with its product Roundup during the years relevant to this action.

29.    These actions were each blatant breaches of the duty Defendants, BAYER/MONSANTO owed to its consumer/consumer Plaintiff, BUNDY.

30.    As a direct and proximate result of the above described negligent conduct of the Defendants, BAYER/MONSANTO, and the Plaintiff, BUNDY's exposure to Defendant's product, Roundup, the Plaintiff, BUNDY, incurred Lymphoma and has sustained extensive damages which include but are not limited to:

(a)    Medical expenses in the past and continuing indefinitely into the future;
(b)    Devastation to his business and family life in the past and continuing indefinitely into the future;
(c)    Significant and permanent loss of important bodily functions;
(d)    His ability to work and loss of earning in the past and continuing indefinitely into the future;
(e)    Pain and suffering, emotional distress, loss of enjoyment of life in the past and continuing indefinitely into the future; and
(f)    Entitlement to Punitive damages, which will be separately alleged through amendment pursuant to Florida law.

31.    The aforementioned losses/damages are either permanent or continuing in nature and the Plaintiff, BUNDY, will continue to suffer such losses in the future.

WHEREFORE, Plaintiff, BUNDY, by and through his undersigned attorneys demands judgement against Defendants, BAYER/MONSANTO, jointly and severally for damages in an amount within the jurisdictional limits of this Court, to wit: more than Thirty Thousand Dollars ($30,000.00) plus costs and for such other relief to which the Plaintiff, BUNDY, may be justly entitled.

## COUNT II – STRICT LIABILITY AGAINST ALL DEFENDANTS

01427642-1        01427642-1

32.   The Plaintiff re-alleges and incorporates by reference hereto the allegations contained in paragraphs 1 through 26 of the General Allegations, as if fully set forth herein.

33.   At all times relevant to this matter, the Defendants, BAYER, MONSANTO, and the M&W Defendants were all a manufacturer, wholesaler, distributor and/or retailer of the product Roundup.

34.   Plaintiff, BUNDY was an actual and intended consumer of the product Roundup. Plaintiff, BUNDY utilized this product without any substantial change in its condition from the time it was manufactured and/or sold by the Defendants, BAYER, MONSANTO, and the M&W Defendants, and utilized this product in the manner in which it was intended and/or reasonably foreseen by the Defendants, BAYER, MONSANTO, and the M&W Defendants.

35.   Based on their actions above, the Defendants, BAYER/MONSANTO the M&W Defendants are wholly, jointly and severally liable for the acts and actions of BAYER/MONSANTO, as a consequence of the purchases in whole of all assets and liabilities outlined above and by the actions of the M&W Defendants outlined above.

36.   At all times relevant Roundup was inherently and unreasonably dangerous as it contained the known carcinogen glysophate.

37.   Defendants, BAYER, MONSANTO, and the M&W Defendants are strictly liable to Plaintiff, BUNDY under Restatement of Torts § 402A and Florida Law, making Defendants strictly liable for their product which was not reasonably safe as designed, manufactured and/or not reasonably safe because adequate warnings or instructions were not provided. See e.g., Johnson v. Monsanto Co., No. 16-cv-01244-MMC, 2016 U.S. Dist. LEXIS 58309, at *5-7 (N.D. Cal. May 2, 2016); Taylor v. Costco Wholesale Corp.,

01427642-1     01427642-1

No. 2:20-cv-00655-KJM-DMC, 2020 U.S. Dist. LEXIS 187348, at *1-2 (E.D. Cal. Oct. 7, 2020).

38. As a direct and proximate result of the above described conduct and the above described activities by the Defendants, BAYER, MONSANTO, the M&W Defendants, and the Plaintiff, BUNDY's exposure to Defendants' product, Roundup, the Plaintiff, BUNDY, incurred Lymphoma and has sustained extensive damages which include but are not limited to:

    (a)    Medical expenses in the past and continuing indefinitely into the future;
    (b)    Devastation to his business and family life in the past and continuing indefinitely into the future;
    (c)    Significant and permanent loss of important bodily functions;
    (d)    His ability to work and loss of earning in the past and continuing indefinitely into the future;
    (e)    Pain and suffering, emotional distress, loss of enjoyment of life in the past and continuing indefinitely into the future; and
    (f)    Entitlement to punitive damages, which will be separately alleged through amendment pursuant to Florida law.

WHEREFORE, Plaintiff, BUNDY, by and through his undersigned attorneys demands judgement against Defendants, BAYER, MONSANTO, and the M&W Defendants jointly and severally for damages in an amount within the jurisdictional limits of this Court, to wit: more than Thirty Thousand Dollars ($30,000.00) plus costs and for such other relief to which the Plaintiff, BUNDY, may be justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury concerning all issues contained in the above styled cause of action.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on November 3, 2021, and was provided via email to Anthony N. Upshaw, Esq. and Melissa R. Alvarez, Esq., McDermott Will

01427642-1    01427642-1

8

& Emery, LLP 333 SE 2nd Avenue, Suite 4500, Miami, FL 33131 (aupshaw@mwe.com) and (malvarez@mwe.com) and Joe G. Hollingsworth, Esq., Hollingsworth LLP, 1350 I Street N.W., Washington, D.C. 20005 (jhollingsworth@hollingsworthllp.com).

**ICARD, MERRILL, CULLIS, TIMM,
FUREN & GINSBURG, P.A.**
2033 Main Street, Suite 600
Postal Drawer 4195
Sarasota, Florida 34230
(941) 366-8100 - Phone
*(941) 366-6384 - Fax*


_____

ANTHONY J. MANGANIELLO, III, ESQ.
Florida Bar No. 0052307
Attorneys for Plaintiff, BUNDY

01427642-1     01427642-1

9

IN THE CIRCUIT COURT FOR THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA
CIVIL DIVISION

ROB BUNDY, a single person,

     Plaintiff,

vs.                              Case No.:

NKC ENTERPRISES, INC., a Florida
corporation, d/b/a M & W Supply Co., and
M & W SUPPLY, INC., a
dissolved Florida corporation

     Defendants.

_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, ROB BUNDY, by and through his undersigned attorneys, and sues the Defendants, NKC ENTERPRISES, INC., a Florida corporation, d/b/a M & W Supply Co., as successor-in-interest to M & W SUPPLY, INC., a dissolved Florida corporation, and M & W SUPPLY, INC., a dissolved Florida corporation, and states as follows:

## GENERAL ALLEGATIONS

1.    This is an action for damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of costs and interests. This Court has subject matter jurisdiction pursuant to section 26.012, Florida Statutes.

2.    Venue is appropriate before the Twelfth Judicial Circuit as the cause of action accrued in Sarasota County, Florida.

01424392-1     01424392-1

1



EXHIBIT

B

tabbies®

3.     At all times material herein, Plaintiff, ROB BUNDY, (hereinafter "BUNDY), was a resident of Sarasota County, Florida.

4.     Defendant, M & W SUPPLY, INC., is a dissolved Florida corporation whose principal place of business was 7750 Fruitville Rd., Sarasota, FL, 34240.

5.     Defendant, NKC ENTERPRISES, INC., d/b/a M & W Supply, Inc., is a Florida corporation whose principal place of business is 7750 Fruitville Rd., Sarasota, FL, 34240. NKC ENTERPRISES, INC. is the successor-in-interest to M & W SUPPLY, INC., a dissolved Florida corporation. NKC ENTERPRISES, INC. and M & W SUPPLY, INC. are collectively referred to as "the M&W Defendants."

6.     M & W SUPPLY, INC. was originally formed in 2002 and was voluntarily dissolved on January 13, 2014.  A copy of a corporate search result for M & W SUPPLY, INC. through the State of Florida Division of Corporations ("Sunbiz") is attached hereto as Exhibit "A."

7.     NKC ENTERPRISES, INC. was formed on June 5, 2013 and is still active.  A copy of the corporate search result for NKC ENTERPRISES, INC. through the State of Florida Division of Corporations ("Sunbiz") is attached hereto as Exhibit "B."

8.     At all times relevant to this proceeding, the M&W Defendants have operated as a wholesale landscape supply company at the same address and have common officers and directors.  NKC ENTERPRISES, INC.'s website currently states that the company was formed in 2002, the same year M & W SUPPLY, INC. was formed.  A copy of NKC ENTERPRISES, INC.'s website is attached hereto as Exhibit "C."

01424392-1     01424392-1

2

9.    NKC ENTERPRISES, INC. is a mere a continuation of M & W SUPPLY, INC., pursuant to *Lab. Corp. of America v. Prof'l Recovery Network*, 813 So.2d 266, 269 (Fla. 5th DCA 2002).

10.   At all times material hereto, the M&W Defendants are retailers of Roundup, and sold Roundup to Plaintiff, BUNDY numerous times during the years at issue in this Complaint.

11.   Plaintiff, BUNDY was exposed to, and harmed by Roundup a product manufactured by Monsanto Company ("Monsanto") for a seven-year period from 2005 to 2012 as a consequence of his ownership of a lawncare business in Sarasota County, Florida and his use of and exposure to the Roundup product.

12.   Plaintiff, BUNDY purchased Roundup on a regular basis from the M&W Defendants during the years at issue in this case.   True and correct copies of receipts showing BUNDY'S purchase of Roundup from the M&W Defendants are attached hereto as Exhibit "D."

13.   Plaintiff, BUNDY used Roundup purchased through the M&W Defendants on a regular basis, and as a result was exposed to and harmed by Roundup, within his lawncare business for the seven years prior to his diagnosis of Lymphoma in 2012.

14.   Plaintiff, BUNDY was regularly exposed to the ingredient glysophate, which was a major ingredient in the manufacturing of Roundup.

15.   Monsanto was aware, as early as 1981, that the ingredient glysophate was a known carcinogen and that the product Roundup which contained glysophate as a major ingredient was therefore not reasonably safe as designed and distributed.

01424392-1      01424392-1

3

16.    Monsanto had knowledge of the design defect within its product Roundup, failed to warn of glysophate's causal relation to cancer and that the product was not reasonably safe.

17.    Monsanto distributed scientific papers proclaiming the safety of its products while having constructive knowledge of the carcinogenic characteristics of glysophate.   Monsanto went so far as to "ghost write" scientific papers falsely proclaiming the safety of its herbicides all the while knowing of the carcinogenic properties of glysophate.   Monsanto also intervened within government review of glysophate toxicity and engineered efforts to discredit critics of their products.

18.    The actions were done for a singular purpose: to protect Monsanto's profits by concealing the known cancer risk of Roundup to the public and to its consumers.

19.    As a direct and proximate cause of his exposure to Roundup the Plaintiff, BUNDY developed Lymphoma and was forced to undergo extensive and painful treatments including but not limited to chemotherapy.   The very nature of this disease, and the nature of the exposure, is such that the Plaintiff, BUNDY will suffer increased cancer risk the rest of his life and therefore the Plaintiff, BUNDY must undergo continuing monitoring to guard against the cancer's recurrence.   The stress and anxiety associated with same has caused a dramatic impact on the Plaintiff, BUNDY's ability to enjoy his life and has caused extreme and ongoing mental anguish.

20.    This disease devastated the Plaintiff, BUNDY's family, and his business. The disabilities associated with Lymphoma has negatively affected the Plaintiff, BUNDY's ability to work and his earning capacity.

21.    The Plaintiff, BUNDY first had notice that Roundup was the cause of his Lymphoma on or about April 2, 2020 when he was provided a report by Dr. Tony S. Quang.

01424392-1    01424392-1

## COUNT I – STRICT LIABILITY AGAINST THE M&W DEFENDANTS

22. The Plaintiff re-alleges and incorporates by reference hereto the allegations contained in paragraphs 1 through 21 of the General Allegations, as if fully set forth herein.

23. At all times relevant, the M&W Defendants were distributors and/or retailers of the product Roundup.

24. Plaintiff, BUNDY was an actual and intended consumer of the product Roundup. Plaintiff, BUNDY utilized this product without any substantial change in its condition from the time it was sold by the M&W Defendants and utilized this product in the manner in which it was intended and/or reasonably foreseen by the M&W Defendants.

25. At all times relevant Roundup was inherently and unreasonably dangerous as it contained the known carcinogen glysophate.

26. The M&W Defendants are strictly liable to Plaintiff, BUNDY under Restatement of Torts § 402A and Florida Law, making Defendant strictly liable for the sale of Roundup which was not reasonably safe as designed, manufactured and/or not reasonably safe because adequate warnings or instructions were not provided. See e.g., Johnson v. Monsanto Co., No. 16-cv-01244-MMC, 2016 U.S. Dist. LEXIS 58309, at *5-7 (N.D. Cal. May 2, 2016); Taylor v. Costco Wholesale Corp., No. 2:20-cv-00655-KJM-DMC, 2020 U.S. Dist. LEXIS 187348, at *1-2 (E.D. Cal. Oct. 7, 2020).

27. As a direct and proximate result of the above-described conduct and the above described activities by the M&W Defendants, and the Plaintiff, BUNDY's exposure to Monsanto's product, Roundup, the Plaintiff, BUNDY, incurred Lymphoma and has sustained extensive damages which include but are not limited to:

    (a)     Medical expenses in the past and continuing indefinitely into the future;

01424392-1     01424392-1

5

(b)   Devastation to his business and family life in the past and continuing indefinitely into the future;

(c)   Significant and permanent loss of important bodily functions;

(d)   His ability to work and loss of earning in the past and continuing indefinitely into the future;

(e)   Pain and suffering, emotional distress, loss of enjoyment of life in the past and continuing indefinitely into the future; and

(f)   Entitlement to punitive damages, which will be separately alleged through amendment pursuant to Florida law.

WHEREFORE, Plaintiff, BUNDY, by and through his undersigned attorneys demands judgement against the M&W Defendants for damages in an amount within the jurisdictional limits of this Court, to wit: more than Thirty Thousand Dollars ($30,000.00) plus costs and for such other relief to which the Plaintiff, BUNDY, may be justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury concerning all issues contained in the above styled cause of action.

## DESIGNATION OF EMAIL ADDRESSES FOR SERVICE OF DOCUMENTS

Pursuant to Florida Rule of Judicial Administration 2.516(b)(1)(A), the undersigned counsel gives notice of the following primary and secondary e-mail addresses for service of pleadings in this matter:

Primary Email Address: Amangnaiello@icardmerrill.com

Secondary Email Address: Rgrek@icardmerrill.com

DATED this _____ day of November, 2021.

01424392-1      01424392-1

6

**ICARD, MERRILL, CULLIS, TIMM,**
**FUREN & GINSBURG, P.A.**
2033 Main Street, Suite 600
Postal Drawer 4195
Sarasota, Florida 34230
(941) 366-8100 - Phone
*(941) 366-6384 - Fax*

ANTHONY J. MANGANIELLO, III, ESQ.
Florida Bar No. 0052307
Attorneys for Plaintiff, BUNDY
*amanganiello@icardmerrill.com*
*rgrek@icardmerrill.com*

Florida Department of State                                              Division of Corporations



Department of State  /  Division of Corporations  /  Search Records  /  Search by Entity Name  /

## Detail by Entity Name

Florida Profit Corporation
M & W SUPPLY, INC.

### Filing Information

| | |
|---|---|
| **Document Number** | P02000017120 |
| **FEI/EIN Number** | 03-0402009 |
| **Date Filed** | 02/11/2002 |
| **State** | FL |
| **Status** | INACTIVE |
| **Last Event** | VOLUNTARY DISSOLUTION |
| **Event Date Filed** | 01/13/2014 |
| **Event Effective Date** | NONE |

### Principal Address

7750 FRUITVILLE RD
SARASOTA, FL 34240

Changed: 01/08/2003

### Mailing Address

7750 FRUITVILLE RD
SARASOTA, FL 34240

### Registered Agent Name & Address

MILLER, DOREEN
7750 FRUITVILLE RD.
SARASOTA, FL 34240

Name Changed: 01/08/2003

Address Changed: 01/08/2003

### Officer/Director Detail

Name & Address

Title PS

MILLER, DOREEN
30631 BETTS RD
MYAKKA CITY, FL 34251

Title VT



EXHIBIT

WEILER, NOAH
55 TATUM RD
SARASOTA, FL 34232

**Annual Reports**

| Report Year | Filed Date |
|---|---|
| 2011 | 01/06/2011 |
| 2012 | 01/05/2012 |
| 2013 | 01/09/2013 |

**Document Images**

| | |
|---|---|
| 01/13/2014 -- Voluntary Dissolution | View image in PDF format |
| 01/09/2013 -- ANNUAL REPORT | View image in PDF format |
| 01/05/2012 -- ANNUAL REPORT | View image in PDF format |
| 01/06/2011 -- ANNUAL REPORT | View image in PDF format |
| 01/15/2010 -- ANNUAL REPORT | View image in PDF format |
| 02/05/2009 -- ANNUAL REPORT | View image in PDF format |
| 01/18/2008 -- ANNUAL REPORT | View image in PDF format |
| 01/03/2007 -- ANNUAL REPORT | View image in PDF format |
| 01/04/2006 -- ANNUAL REPORT | View image in PDF format |
| 01/03/2005 -- ANNUAL REPORT | View image in PDF format |
| 01/05/2004 -- ANNUAL REPORT | View image in PDF format |
| 01/08/2003 -- ANNUAL REPORT | View image in PDF format |
| 02/11/2002 -- Domestic Profit | View image in PDF format |

Florida Department of State, Division of Corporations

Florida Department of State

DIVISION OF CORPORATIONS



Department of State / Division of Corporations / Search Records / Search by Entity Name /

## Detail by Entity Name

Florida Profit Corporation
NKC ENTERPRISES, INC.

### Filing Information

| | |
|---|---|
| Document Number | P13000048998 |
| FEI/EIN Number | 46-2968033 |
| Date Filed | 06/05/2013 |
| State | FL |
| Status | ACTIVE |

### Principal Address

7750 FRUITVILLE RD
SARASOTA, FL 34240

Changed: 12/06/2013

### Mailing Address

7750 FRUITVILLE RD
SARASOTA, FL 34240

### Registered Agent Name & Address

BRUGLER, DOUGLAS G
13611 BLYTHEFIELD TERRACE
LAKEWOOD RANCH, FL 34202

### Officer/Director Detail

Name & Address

Title D

BRUGLER, DOUGLAS
7750 FRUITVILLE RD
SARASOTA, FL 34240

Title Secretary

Brugler, Nancy
7750 FRUITVILLE RD
SARASOTA, FL 34240

### Annual Reports

| Report Year | Filed Date |
|---|---|
| 2019 | 03/11/2019 |



EXHIBIT

| 2020 | 03/24/2020 |
| 2021 | 02/03/2021 |

**Document Images**

| | |
|---|---|
| 02/03/2021 -- ANNUAL REPORT | View image in PDF format |
| 03/24/2020 -- ANNUAL REPORT | View image in PDF format |
| 03/11/2019 -- ANNUAL REPORT | View image in PDF format |
| 03/27/2018 -- ANNUAL REPORT | View image in PDF format |
| 03/13/2017 -- ANNUAL REPORT | View image in PDF format |
| 03/14/2016 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2015 -- ANNUAL REPORT | View image in PDF format |
| 04/16/2014 -- ANNUAL REPORT | View image in PDF format |

Florida Department of State, Division of Corporations

(941) 343-9954

We Deliver

Contact Us Now!

HOME     ABOUT     PRODUCTS     DO-IT-YOURSELF     CONTACT US

# About

## A Sarasota Area Landscape Supply Company

M & W Supply Co. is a wholesale landscape supply company operating in Sarasota, Florida. We cater to professional contractors, as well as homeowners who want to take the do-it-yourself approach. Since 2002, we have been offering customers throughout the area the largest selection of the highest-quality landscape products at great prices. Come to see us today. We have all the products you need to fulfill your landscaping needs.





About our landscape supply, Sarasota, FL | M & W Supply Co.                    https://mw-supply.com/about/

(941) 343-9954

**We Deliver**

**Contact Us Now!**

HOME      ABOUT      **PRODUCTS**      DO-IT-YOURSELF      CONTACT US

# Large-Scale Product Selection

We feature mulch, sod, plants, rocks, pavers, chemicals, and many more products to accommodate all sizes of landscaping projects. We even have multiple trucks to deliver your products to you. Whether you have a professional job coming up or you want to spruce up your yard with an innovative DIY approach, we have everything you need to get the job done.

# Look for the "Green Shirts"

Not only do we provide high-quality products at fantastic prices, we also provide service with a smile. All of our staff are trained, experienced, and ready to serve you. The next time you need products or service for your next landscaping project, give us a call or visit our warehouse and see all the products that we have in store.

(941) 343-9954

10/28/2021, 4:11 PM

(941) 343-9954

**We Deliver**

Contact Us Now!

**HOME    ABOUT    PRODUCTS    DO-IT-YOURSELF    CONTACT US**

Map data ©2021 INEGI

## Hours

**Monday – Friday:** 7:00 am – 5:00 pm
**Saturday:** 7:00 am – 12:00 pm
**Sundays:** Closed

## Material Calculator

Enter your dimensions
Enter Length (Ft)

Enter Width (Ft)

Enter Depth (In)

Total
Total yards needed

*Estimate only not an exact measurement*

About our landscape supply, Sarasota, FL | M & W Supply Co.                    https://mw-supply.com/about/

(941) 343-9954

**We Deliver**

Contact Us Now!

**HOME**     **ABOUT**     **PRODUCTS**     **DO-IT-YOURSELF**     **CONTACT US**

Doreen Miller

President

Aaron Hochstetler

Salesman

Douglas Brugler

Owner

## View additional contacts with D&B Hoovers.

Start Your Free Trial! (/products/marketing-sales/dnb-hoovers/free-trial.html)

# Industry Information

See trends, challenges and opportunities with similar companies in these industries.

Services to Buildings and Dwellings (/business-directory/industry-analysis.services_to_buildings_and_dwellings.html)
This industry group comprises establishments primarily engaged in one of the following: (1) exterminating...

Administrative and Support Services (/business-directory/industry-analysis.administrative_and_support_services.html)
"Industries in the Administrative and Support Services subsector group establishments engaged in activities...

Administrative and Support and Waste Management and Remediation Services (/business-directory/industry-analysis.administrative_and_support_and_waste_management_and_remediation_services.htm
The Administrative and Support and Waste Management and Remediation Services sector comprises establishments...

M&W Supply

Website

www.mw-supply.com (http://www.mw-supply.com)

Address

7750 Fruitville Rd Sarasota , FL , 34240-9255 United States

Phone

(941) 343-9954

Company Description

M&W Supply Inc is located in Sarasota, FL, United States and is part of the Services to Buildings and Dwellings Industry. M&W Supply Inc has 15 total employees across all of its locations and generates $652,625 in sales (USD). (Sales figure is modelled).

Key Principal

Doreen Miller                                                                          See more contacts

Industry

Services to Buildings and Dwellings (/business-directory/industry-analysis.services_to_buildings_and_dwellings.html)
Administrative and Support Services (/business-directory/industry-analysis.administrative_and_support_services.html)
Administrative and Support and Waste Management and Remediation Services (/business-directory/industry-analysis.administrative_and_support_and_waste_management_and_remediation_services.html)
Landscape contractors

For dynamic search and list-building capabilities, real-time trigger alerts, comprehensive company profiles, and valuable research and technology reports try D&B Hoovers for free!

Get a D&B Hoovers Free Trial            (/products/marketing-sales/dnb-hoovers/free-trial.html)

# RECEIPTS





**Supply, Inc.**
*Wholesale*

7750 Fruitville Rd.
Sarasota, FL 34240
Phone: 941-343-9954
Fax:    941-343-9964
Email:  mandwsupply@myway.com

| SALES PERS. | ORDER DATE | P/U DATE | CUST. PO# |
|---|---|---|---|
|  |  |  |  |

| QUAN. | DESCRIPTION | PRICE |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | SUBTOTAL |  |
|  | 7% TAX |  |
|  |  |  |
|  | DELIVERY CHARGE |  |
|  | TOTAL |  |

SIGNATURE _____

M
&
W

**Supply, Inc.**
*Wholesale*

7750 Fruitville Rd.
Sarasota, FL 34240
Phone: 941-343-9954
Fax:   941-343-9964
Email: mandwsupply@myway.com

| SALES PERS. | ORDER DATE | P/U DATE | CUST. PO# |
|---|---|---|---|
| | 12-15 | 12-12 | |

| QUAN. | DESCRIPTION | PRICE |
|---|---|---|
| 30 | | |
| 3 | | 5.57 |
| | | |
| | SUBTOTAL | |
| | 7% TAX | |
| | DELIVERY CHARGE | |
| | TOTAL | |

SIGNATURE _____

**M & W Supply, Inc.**
*Wholesale*

7750 Fruitville Rd.
Sarasota, Fl. 34240
Phone: 941-343-9954
Fax: 941-343-9964
Email: mandwsupply@myway.com

| SALES PERS. | ORDER DATE | P/U DATE | CUST. PO#. |
|---|---|---|---|
| | | | |

| QUAN. | DESCRIPTION | PRICE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | SUBTOTAL | |
| | 7% TAX | |
| | DELIVERY CHARGE | |
| | TOTAL | |

SIGNATURE _____

**M & W Supply, Inc.**
*Wholesale*

7750 Fruitville Rd.
Sarasota, FL 34240
Phone: 941-343-9954
Fax:   941-343-9964
Email: mandwsupply@myway.com

| SALES PERS. | ORDER DATE | P/U DATE | CUST. PO# |
|---|---|---|---|
|  |  |  |  |

| QUAN. | DESCRIPTION | PRICE |
|---|---|---|
|  |  | |
|  |  | |
|  |  | |
|  |  | |
|  |  | |
|  |  | |
|  |  | |
|  |  | |
|  | SUBTOTAL | |
|  | 7% TAX | |
|  | DELIVERY CHARGE | |
|  | TOTAL | |

SIGNATURE _____

# M & W Supply, Inc.
### Wholesale

7750 Fruitville Rd.
Sarasota, FL 34240
Phone: 941-343-9954
Fax:    941-343-9964
Email: mandwsupply@myway.com

| SALES PERS. | ORDER DATE | P/U DATE | CUST. PO# |
|---|---|---|---|
| | | | |

| QUAN. | DESCRIPTION | PRICE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | SUBTOTAL | |
| | 7% TAX | |
| | | |
| | DELIVERY CHARGE | |
| | TOTAL | |

SIGNATURE _____

# M & W Supply, Inc.
## *Wholesale*

7750 Fruitville Rd.
Sarasota, FL 34240
Phone: 941-343-9954
Fax:    941-343-9964
Email: mandwsupply@myway.com

| SALES PERS. | ORDER DATE | P/U DATE | CUST. PO# |
|---|---|---|---|

| QUAN | DESCRIPTION | PRICE | |
|---|---|---|---|
| | | SUBTOTAL | |
| | | 7% TAX | |
| | | DELIVERY CHARGE | |
| | | TOTAL | |

SIGNATURE

**M & W Supply, Inc.**
*Wholesale*

7750 Fruitville Rd.
Sarasota, FL 34240
Phone: 941-343-9954
Fax:   941-343-9964
Email: mandwsupply@myway.com

| SALES PERS. | ORDER DATE | P/U DATE | CUST. PO# |
|---|---|---|---|
|  |  |  |  |

| QUAN. | DESCRIPTION | PRICE |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | SUBTOTAL |  |
|  | 7% TAX |  |
|  |  |  |
|  | DELIVERY CHARGE |  |
|  | TOTAL |  |

SIGNATURE



**M & W Supply, Inc.**
*Wholesale*

7750 Fruitville Rd.
Sarasota, FL 34240
Phone: 941-343-9954
Fax:   941-343-9964
Email: mandwsupply@myway.com

| SALES PERS. | ORDER DATE | P/U DATE | CUST. PO# |
|---|---|---|---|
| D.A | 10 11 0P | 10 11 1 | |

| QUAN. | DESCRIPTION | PRICE |
|---|---|---|
| 15 | bca 2 | 24 |
| | | |
| 1 | Quack liw | 171 |
| | | 4 5 |
| | | 138 |
| | | |
| | | |
| | SUBTOTAL | 24 7 |
| | 7% TAX | 1 7 |
| | DELIVERY CHARGE | |
| | TOTAL | 26 79 |

SIGNATURE _____
164 52

**M & W Supply, Inc.**
*Wholesale*

7750 Fruitville Rd.
Sarasota, FL 34240
Phone: 941-343-9954
Fax:   941-343-9964
Email: mandwsupply@myway.com

| SALES PERS. | ORDER DATE | P/U DATE | CUST. PO# |
|---|---|---|---|
|  |  |  |  |

| QUAN. | DESCRIPTION | PRICE |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | SUBTOTAL |  |
|  | 7% TAX |  |
|  |  |  |
|  | DELIVERY CHARGE |  |
|  | TOTAL |  |

SIGNATURE _____

**M & W Supply, Inc.**
*Wholesale*

7750 Fruitville Rd
Sarasota, FL 34240
Phone: 941-343-9954
Fax:   941-343-9964
Email: mandw.supply@myway.com

| SALES PERS. | ORDER DATE | P/U DATE | CUST. PO# |
|---|---|---|---|

| QUAN. | DESCRIPTION | PRICE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | SUBTOTAL | |
| | 7% TAX | |
| | DELIVERY CHARGE | |
| | TOTAL | |

SIGNATURE

**M & W Supply, Inc.**
*Wholesale*

7750 Fruitville Rd.
Sarasota, FL 34240
Phone: 941-343-9954
Fax:   941-363-9964
Email: mandwsupply@myway.com

| SALES PERS. | ORDER DATE | P/U DATE | CUST. PO# |
|---|---|---|---|
| | | | |

| QUAN. | DESCRIPTION | PRICE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | SUBTOTAL | |
| | 7% TAX | |
| | | |
| | DELIVERY CHARGE | |
| | TOTAL | |

SIGNATURE _____

M & W Supply, Inc.
*Wholesale*

7750 Fruitville Rd.
Sarasota, FL 34240
Phone: 941-343-9954
Fax:   941-343-9964
Email: mandwsupply@myway.com

| SALES PERS. | ORDER DATE | P/U DATE | CUST. PO# |
|---|---|---|---|
| | | | |

| QUAN. | DESCRIPTION | PRICE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | SUBTOTAL | |
| | 7% TAX | |
| | DELIVERY CHARGE | |
| | TOTAL | |

SIGNATURE _____

**M & W** **Supply, Inc.**
*Wholesale*

7750 Frunville Rd.
Sarasota, FL 34240
Phone: 941-343-0954
Fax.   941-343-9964
Email: manfwsupply@myway.com.

| SALES PERS. | ORDER DATE | P/U DATE | CUST. PO# |
|---|---|---|---|
|  |  |  |  |

| QUAN. | DESCRIPTION | PRICE |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | SUBTOTAL |  |
|  | 7% TAX |  |
|  | DELIVERY CHARGE |  |
|  | TOTAL |  |

SIGNATURE