**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| *Koen v. Monsanto Co.,* 3:20-cv-03074-VC | **MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS PRESUMPTION OF NO LIABILITY** |

Plaintiff fails to refute the applicability of the presumption of no liability afforded to product manufacturers under Tex. Civ. Prac. & Rem. Code § 82.008(a). Plaintiff also fails to establish rebuttal of the presumption under § 82.008(b)(1) or (2). Because the presumption applies and is unrebutted, summary judgment is required. *See e.g., Shaw v. Trinity Highway Prods, LLC,* 329 S.W.3d 914, 918 (Tex. App. 2010).

### I.   Monsanto Is Entitled to the Presumption of No Liability Under § 82.008(a).

Plaintiff does not dispute the force and effect of the presumption of no liability provided by Tex. Civ. Prac. & Rem. Code § 82.008(a). Neither does Plaintiff dispute EPA's extensive regulation of Roundup, that Roundup's compliance with EPA's regulatory framework is mandatory, or that Roundup has, at all relevant times, been registered by EPA and otherwise compliant with EPA's regulatory requirements. Monsanto set out this regulatory framework in detail in its Motion (*see* Mot. at pp. 4-6). Plaintiff, however, takes the surprising position – not that the presumption is clearly rebutted – but that it does not apply in the first instance, because EPA's regulatory framework and registration of pesticides in general, and Roundup in particular, do not consider human health risks. Plaintiff's understanding of EPA's regulatory framework is demonstrably wrong.

Plaintiff first argues that the relevant EPA regulatory framework as set forth by Monsanto does not "relate[] to safety," (Opp. p. 5), rendering § 82.008 inapplicable. A cursory review of FIRFRA's definitions alone defeats this argument, which state that "[u]nreasonable adverse effects on the environment," the governing standard for registration, means "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb). Moreover, as part of the registration and re-registration process, EPA requires registrants to submit information regarding allegations of a pesticide's unreasonable adverse effects on the environment, 40 C.F.R. § 159.152, and details the several categories of such information that it will consider, including toxicological studies (40 C.F.R. § 159.165), human epidemiological and exposure studies (40 C.F.R. § 159.170) and toxic or adverse effect incident reports (40 C.F.R. § 159.184). EPA's specific registration framework clearly considers human health risks. Plaintiff ignores the EPA authority and regulatory action under

FIFRA as it pertains to Roundup, which required EPA to consider risk to human health in its approval of pesticides and, in fact, that EPA extensively considered Roundup's risk of harm including its carcinogenicity. This was detailed for the Court in Monsanto's Motion at pp. 4-6.

Plaintiff instead devotes a great portion of his Opposition to an argument that EPA's registration process is not concerned with safety because it constitutes a cost-benefit analysis weighing the benefits of a pesticide versus attendant risks and, accordingly, EPA approval "does not translate into a finding that the pesticide is safe." (Opp. p. 6). While Monsanto disputes Plaintiff's characterization of EPA's regulatory framework, more critical here is that Plaintiff's characterization of what § 82.008 requires is nowhere to be found in the statute. As Plaintiff states elsewhere, the requirement of § 82.008 in this regard is that the applicable regulations "relate to safety." (Opp. p. 5). Indeed, the presumption applies where, as here, "the product's formula, labeling, or design complied with mandatory . . . regulations adopted and promulgated by the federal government," so long as they were applicable at the time of manufacture and governed the relevant product risk. § 82.008(a). Nothing more is required and Plaintiff's scattered attempt to read supplemental language into § 82.008 should be ignored. EPA's regulatory approval process of Roundup more than relates to safety, and Plaintiff cannot credibly suggest otherwise.[1]

Plaintiff's argument that EPA's regulatory framework does not qualify under § 82.008 because it does not "govern the product risk" fares no better. Plaintiff's opposition attempts to recast his Complaint allegations to purely focus on Roundup's surfactant, polyethoxylated tallow amine

---

[1] Plaintiff cites cases involving Federal Motor Vehicle Safety Standards ("FMVSS") as well as authority applying § 82.008 in the context of the FDA's 510(k) clearance process for medical devices. Neither comparison is of any use here. EPA's specific approval of formulated Roundup and its consideration of human health risks including cancer is wholly different in kind than FMVSS minimum performance requirements for automobile airbags or brakes, and the suggestion that the presumption could adhere in the case of a solitary FMVSS minimum performance standard but <u>not</u> in the case of significantly more comprehensive, exclusive, and specific regulation by EPA in an extensively-regulated industry cannot be squared with any fair reading of § 82.008(a). Moreover, authority applying § 82.008 to the FDA's 510(k) process is categorically irrelevant, as that clearance process merely refers to FDA's determination that medical devices which are "substantially equivalent" to preexisting devices, "can be marketed without further regulatory analysis," and, as such, are not safety regulations within the meaning of § 82.008. *Lewis v. Johnson & Johnson*, 991 F.Supp.2d 748, 751 (S.D. W. Va. 2014). That simply is not at all the case with EPA's regulatory framework which undoubtedly considers human health risk.

("POEA"), rather than glyphosate in an attempt to circumvent EPA regulations altogether. In support, Plaintiff cites, without discussion, two studies purporting to support his assertion that "EPA's circumscribed scope of testing, review, and approval—limited to active ingredients alone—is fatal to Defendant's claim that FIFRA governs the product risk here." (Opp. p. 8). This is demonstratively false, and EPA's regulatory approval of Roundup, which considered human carcinogenicity, was of Roundup as formulated, including its inert ingredients such as the surfactant POEA. As EPA's Pesticide Registration Manual explains, "[t]he registration of pesticide product formulation meets the registration standard under FIFRA section 3 . . . . The entire formulation, including the *inert ingredients*, must meet this standard." EPA, PESTICIDE REGISTRATION MANUAL, Chapter 8 – Inert Ingredients (emphasis added).[2] Moreover, just last year, EPA issued a response to public comments on its 2019 Interim Registration Review Decision re-registering Roundup. In those responses, EPA addressed comments about "the toxicity of different formulations, including the technical grade active ingredient, toxicity of inert compounds, and surfactants":

> Most pesticide products contain substances in addition to the active ingredient (known as inert ingredients) which aid in the performance and effectiveness of the pesticide product. All active and inert ingredients must be approved by the agency when a product is first registered. The agency has evaluated the hazard potential (i.e., toxicity) of glyphosate and any inert ingredients with a battery of toxicity data from a multitude of studies throughout the risk assessment process. For more detailed responses to comments regarding EPA's evaluation of the glyphosate technical grade active ingredient and the toxicity of inert compounds including surfactants, see the *Glyphosate Proposed Interim Registration Review Decision Case 0178, Response to Public Comments on the Preliminary Ecological Risk Assessment for Glyphosate and Glyphosate: Response to Comments on the Human Health Draft Risk Assessment*, which are available on the public docket.

Supplemental Declaration of Jed White ("White Supp. Decl.") ¶ 2, Ex. 1, p. 6. *See also* White Decl.[3] ¶ 11, Ex. 10, p. 10. Further, in addition to EPA's toxicity evaluation of Roundup's inert ingredients, EPA's registration review considered all publicly available epidemiology, which by definition was

---

[2] *Available at* https://www.epa.gov/pesticide-registration/pesticide-registration-manual-chapter-8-inert-ingredients#regulation (last visited November 8, 2021).

[3] References to "White Decl.," as opposed to "White Supp. Decl.," are to the Declaration of Jed White submitted in support of Monsanto's underlying brief in support of this motion.

a review of formulated glyphosate herbicides in humans.  White Decl. ¶ 10, Ex. 9, p. 143-144; White Supp. Decl. ¶ 3, Ex. 2, p. 8.

Accordingly, it is simply not true that EPA's regulatory framework did not govern the risk at issue for purposes of § 82.008(a) – formulated Roundup's risk of cancer.  Accordingly, Monsanto is entitled to the presumption afforded by § 82.008(a).

## II.     All of Plaintiff's Claims Are Subject to § 82.008

Plaintiff argues that even if the § 82.008(a) presumption applies, his Complaint extends "well beyond Roundup's formulation, labeling, and design" and thus certain of his claims are exempt from the scope of § 82.008.  That is not supportable by a fair reading of Plaintiff's Complaint.  In particular, Plaintiff points to his breach of implied warranty claim, asserting that it "does not hinge on any aspect of Roundup's formulation, labeling, or design." (Opp. p. 10).  The Court can reject such a contention, as Plaintiff's implied warranty claim is nothing more than a repackaged version of his failure to warn claim, which relates to formulated Roundup's lack of a cancer warning.  This is precisely why the Texas Product Liability Act includes breach of implied warranty in the definition of a product liability claim, Tex. Civ. Prac. & Rem. Code § 82.001(2), and neither Plaintiff's Complaint nor Opposition offers any allegation, much less evidence, that his implied warranty claim is distinct from his other claims.

Further, Plaintiff's assertion that negligence allegations related to breach of the duty to research, test, produce, promote, market, supply, sell, or distribute (Opp. p. 9) mean he can survive summary judgment is wrong, as Plaintiff has pursued no such theories and offered no evidence to support such claims.  The same is also true with Plaintiff's reliance on allegation of a manufacturing defect, which is specifically excluded from the scope of the § 82.008 presumption.  § 82.008(d). Plaintiff has not offered any evidence in support of such theories of product defect, and reliance on complaint allegations is not sufficient.  *See Edwards v. Leaders in Comm. Alternatives, Inc.*, 850 Fed.Appx. 503, 506 (9th Cir. 2021) (party opposing summary judgment "may not rest upon mere allegations or denials" in a pleading).  Thus, there is no evidence of any kind to support such theories, and summary judgment is proper on that basis as well.

**III.     Plaintiff Fails to Rebut the Presumption Under § 82.008(b)(1) or (2)**

The § 82.008(a) presumption can be rebutted in only two ways – by establishing: (1) that the applicable regulations are inadequate to protect the public from unreasonable risk of injury, or (2) establishing fraud on the regulator.  § 82.008(b).  Plaintiff makes no real attempt to invoke, much less *establish*, either basis for rebuttal, as required under the statute.  *See Wright v. Ford Mot. Co.*, 508 F.3d 263, 270 (5th Cir. 2007) (in context of § 82.008(b) rebuttal, "[e]stablish connotes something more than simply introducing *some* evidence from which a factfinder might—*or might not*—find that which is to be 'established.'").

As to the first rebuttal provision under § 82.008(b)(1), Plaintiff argues that EPA's regulatory framework is inadequate because "the average user is often unable to comply with the label's directions." (Opp. p. 10).  It is unclear how argument about a pesticide's instructions for use, and whether an average user could understand them, relate to the adequacy of EPA's determination that Roundup does not cause cancer.  Plaintiff makes no attempt to explain this further.  Plaintiff also argues – again without evidence – that EPA's regulatory approval process is inadequate to protect human health because it "focuses on a pesticide's active ingredients rather than on the whole formulation." (Opp. p. 11).  Again, as detailed above, this is false, as EPA extensively considered Roundup's inert ingredients including the surfactant, as well as Roundup's entire formulation in its risk assessment and multiple registration decisions.  Accordingly, Plaintiff has offered nothing to establish that EPA's regulation of Roundup is inadequate to protect human health.

Plaintiff does not address the second rebuttal provision under § 82.008(b)(2), which requires a showing of fraud on the EPA.  Because Plaintiff has not offered any evidence in support of rebuttal under § 82.008(b)(2), that provision is not invoked here as a matter of law.

Because Plaintiff has failed to defeat the applicability of the § 82.008(a) presumption and has not rebutted it under § 82.008(b)(1) or (2), Monsanto is entitled to summary judgment.

///

///

///

**CONCLUSION**

For the foregoing reasons, Monsanto is entitled to summary judgment on Plaintiff's claims.

Dated: November 8, 2021                    Respectfully submitted,

                                           /s/ Jed P. White
                                           Attorney for Defendant Monsanto Company