1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10ᵗʰ Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, <br><br> *Otis and Kim Chapman v. Monsanto Co.,* Case No. 3:20-cv-01277-VC | MDL No. 2741 <br><br> Case No.: 3:16-md-02741-VC <br><br> **DEFENDANT MONSANTO COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS' SPECIFIC CAUSATION EXPERT DR. CLAYTON SMITH ON RULE 702 GROUNDS** <br><br> Hearing date: December 13, 2021 <br> Time: TBD |

1

2

## **TABLE OF CONTENTS**

3    INTRODUCTION ..................................................................................................................1

4    ARGUMENT ......................................................................................................................1

5    I.      Dr. Smith Has No Reliable Basis To "Rule In" Roundup As A Cause of SLL.......................1

6    II.     Dr. Smith Failed To Properly Assess Known Alternative Causes Of Mr.
        Chapman's SLL. .............................................................................................................2

7

8    III.    Dr.  Smith Has Not Reliably Ruled Out Unknown Causes Of Mr. Chapman's SLL
        And Instead Always Points To Roundup. .................................................................5

9    CONCLUSION....................................................................................................................6

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Clausen v. M/V New Carissa*,
5
    339 F.3d 1049 (9th Cir. 2003)................................................................................. 3

6

*Daubert v. Merrell Dow Pharms., Inc.*,
7
    43 F.3d 1311 (9th Cir. 1995)............................................................................. 2, 6

8

*Hardeman v. Monsanto Co.*,
    997 F.3d 941 (9th Cir. 2021).................................................................................. 5

9

*Heller v. Shaw Indus., Inc.*,
10
    167 F.3d 146 (3d Cir. 1999)................................................................................... 4

11

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*,
    892 F.3d 624 (4th Cir. 2018)................................................................................. 4

12

*McClain v. Metabolife Int'l, Inc.*,
13
    401 F.3d 1233 (11th Cir. 2005)............................................................................ 4

14

*Wilson v. Taser Int'l, Inc.*,
15
    303 F. App'x 708 (11th Cir. 2008) ...................................................................... 4

16

**Other Authorities**

17

Fed. R. Evid. 702 ........................................................................................................ 2, 5, 6

18

PTO 85 ............................................................................................................................. 1, 4, 5

19

PTO 225 .......................................................................................................................... 4

20

21

22

23

24

25

26

27

28

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. CLAYTON SMITH
3:20-CV-01277-VC

1

**INTRODUCTION**

Plaintiffs' Response Brief confirms that their specific causation expert Dr. Clayton Smith falls far short of the admissibility standard this Court established in Pretrial Order 85 ("PTO 85") (MDL ECF No. 2799).  Contrary to what Plaintiffs claim, Dr. Smith has not followed the same methodology as the experts previously admitted in the initial federal trial.  Even in that case, the Court characterized the admissibility of the experts as a "close question."  Yet despite the clear roadmap the Court provided in PTO 85, Plaintiffs and Dr. Smith have strayed far from the methodology the Court previously held "barely" admissible.

Unlike the specific causation opinions the Court previously admitted, Dr. Smith lacks a reliable basis to "rule in" Roundup as a potential cause of Plaintiff Otis Chapman's specific sub-type of non-Hodgkin's lymphoma ("NHL"), small lymphocytic lymphoma ("SLL"), given the lack of data linking Roundup to SLL specifically, as opposed to NHL generally.  At the same time, Dr. Smith does not even purport to rule out Mr. Chapman's most glaring SLL risk factors.  Instead, for him, the only relevant question is whether Mr. Chapman was exposed to some threshold amount of Roundup-branded products ("Roundup") and later developed NHL.  Dr. Smith openly admits that a genetic predisposition or immune system decline due to age or other factors—rather than Roundup—could explain why Mr. Chapman developed NHL, multiple basal cell carcinomas, and melanoma.  Yet Dr. Smith offers no scientific reason to conclude that Roundup, rather than a genetic predisposition or an immune system decline, is the most likely cause of Mr. Chapman's NHL.  Nor does Dr. Smith have any means to address idiopathy—*i.e.*, "differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless," PTO 85 at 4— which the Court previously held is required for admissibility.

Dr. Smith's methodology is not a reliable differential diagnosis/etiology.  It falls below the standard set by the Court's prior rulings.  The Court should exclude Dr. Smith's opinions.

**ARGUMENT**

**I.    Dr. Smith Has No Reliable Basis To "Rule In" Roundup As A Cause of SLL.**

In its Motion, Monsanto established that Dr. Smith is aware of no data showing a statistically

significant association between exposure to Roundup and SLL, the subtype of NHL with which Mr. Chapman was diagnosed.  *See* Mot. at 5-6 (citing White Decl., Ex. 1, Smith (*Chapman*) Dep. at 105:5-108:14).  Having no reliable supportive data and in view of his testimony that he presumes different NHL subtypes have different causes, Dr. Smith lacks a sufficient basis to "rule in" Roundup as a potential cause of Mr. Chapman's SLL.  *Id.* (citing White Decl., Ex. 1, Smith (*Chapman*) Dep. at 57:11-16, 132:2-4).

In response, Plaintiffs just argue that Dr. Smith does not believe that statistical significance is necessary to establish causation.  *See* Resp. Br. at 6-7.  Plaintiffs cite to Dr. Smith's deposition testimony in which he recognized that the studies he relied on are each "flawed in many ways," but stated he still believes they support causation because "the chances that all of them would be on the side of a positive impact on the rate and the odds of developing lymphoma *I think* seem quite small." *Id.* (quoting Ex.1, Smith Dep. at 142:24-143:14) (emphasis added).  Yet Plaintiffs concede that statistical significance is an important criteria for distinguishing between a "true association" and one "resulting from mere chance."  *See* Mot. at 6 (citing two cases).  And while the lack of statistical significance might not be dispositive if Dr. Smith had a scientific reason to "rule in" Roundup, he does not.  He just relied on his own speculation, unsupported by any scientific analysis or reasoning, which is insufficient under Federal Rule of Evidence 702.  *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315-16 (9th Cir. 1995) ("something doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive").

## II.   Dr. Smith Failed To Properly Assess Known Alternative Causes Of Mr. Chapman's SLL.

In its Motion, Monsanto established that Mr. Chapman has other risk factors, namely genetic predisposition to cancers and immune system decline, that could explain Mr. Chapman's history of SLL, basal cell carcinomas, and melanoma, which Dr. Smith lacks any scientific reason to rule out. *See* Mot. at 2-3, 7-8.  As a result, Dr. Smith has not performed a reliable differential etiology/diagnosis, and he lacks a foundation to conclude that Roundup is the "most likely cause" of

1    Mr. Chapman's NHL.  *Id.* at 3 (quoting *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir.
2    2003)).

3         In response, Plaintiffs argue that that Mr. Chapman's first basal cell cancer diagnosis was five
4    years *after* he was diagnosed with NHL.  Resp. Br. at 2.  The problem with this argument is that Dr.
5    Smith testified that "immunosenescence" (age-related immune system decline) or an "inborn genetic
6    defect" could explain all of the cancers Mr. Chapman has developed, *see* Mot. at 3 (citing White
7    Decl., Ex. 1, Smith (*Chapman*) Dep. at 47:7-38:5), in which case it would not matter in what order
8    Mr. Chapman was diagnosed with the cancers.  No matter the order, Mr. Chapman's genetic
9    predisposition or immune system decline—not Roundup—would be the cause of Mr. Chapman's
10   NHL.  Timing is therefore an inadequate reason to rule out Mr. Chapman's other risk factors.
11   *See Clausen*, 339 F.3d at 1058 ("The expert must provide reasons for rejecting alternative hypotheses
12   '*using scientific methods and procedures*' and the elimination of those hypotheses must be founded
13   on more than 'subjective beliefs or unsupported speculation'") (emphasis added; quotation omitted).[1]

14        Plaintiffs next argue that Dr. Smith was not asked to opine on the cause of Mr. Chapman's
15   basal cell carcinomas.  Resp. Br. at 2-3.  This misses the point of Monsanto's argument.  Monsanto
16   is arguing that, as Dr. Smith acknowledged in his deposition, there very well could be a common
17   cause of Mr. Chapman's NHL and other cancers, yet Dr. Smith failed to address the plausible
18   alternative hypothesis that Mr. Chapman's cancers all have a common cause (which is not Roundup).
19   *See* Mot. at 7 (citing White Decl., Smith Report at 5-6).

20        Plaintiffs also point out that Dr. Smith had a section in his report, in which he purported to
21   rule out ten potential alternative causes, such as whether Mr. Chapman has a history of NHL in the
22   family, radiation exposure, breast implants, and a number of other possible causes.  Resp. Br. at 6

23

24   ─────────────────
     [1] Plaintiffs emphasize that Dr. Smith testified: "*It could be that you have inborn genetic changes that
25   predispose you to multiple cancers*, but it could also be that CLL/SLL affects the immune system and
     the immune system keeps these kind of skin cancers in check and when the immune system isn't
26   working or some combination of those *or any number of other explanations*."  Resp. Br. at 2 (quoting
     Exhibit 1, Smith Dep. at 37:16-22) (emphasis added).  This testimony only underscores the fatal flaw
27   with Dr. Smith's analysis.  He hypothesizes that *either* an "inborn genetic change" caused all of Mr.
     Chapman's cancers, *or* his SLL contributed to his other cancers, *or* some other explanation might
28   exist.  But he has no scientific basis to conclude that one hypothesis is more likely than any other.

─────────────────
- 3 -

(citing White Decl., Smith Report at 6).  This, however, does not refute Monsanto's arguments. It does not matter if Dr. Smith purported to "rule out" *some* alternative risk factors because he focused on remote risk factors (*e.g.*, radiation exposure and breast implants) while ignoring the important risk factors he acknowledged might explain all of Mr. Chapman's cancers.  Dr. Smith's failure to confront *plausible* alternative causes warrants exclusion of his opinions.  *See, e.g., Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 714 (11th Cir. 2008) ("expert opinion testimony is properly excluded as unreliable . . . if 'the defendants pointed to some likely cause of the plaintiff's illness other than the defendants' action and [the doctor] offered no reasonable explanation as to why he or she still believed that the defendants' actions were a substantial factor in bringing about that illness.") (quotation omitted); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 156 (3d Cir. 1999) ("where a defendant points to a plausible alternative cause and the doctor offers *no* explanation for why he or she has concluded that was not the sole cause, that doctor's methodology is unreliable") (quotation omitted; emphasis in original).

Finally, Plaintiffs claim that Dr. Smith's differential diagnosis/etiology methodology was already upheld by the Court in PTO 85 and in the *Alvarez Calderon* case (Pre-Trial Order 225).  Resp. Br. at 2-3.  But merely invoking the term "differential diagnosis/etiology" does not automatically make Dr. Smith's opinions admissible.  The Court made clear in PTO 85 that specific causation experts must "adequately assess[] all of the potential causes of the plaintiffs' NHL" and "properly rule[] out factors other than glyphosate, while at the same time declining to rule out glyphosate itself." PTO 85 at 4 & 6.  This Court found that the first round of experts met this standard because, among other reasons, the plaintiffs "had no other significant risk factors."  *Id.* at 6.  By contrast, where, as here, a specific causation expert fails to rigorously analyze a plaintiff's other risk factors, courts exclude differential diagnosis/etiology analyses as unreliable and inadmissible.  *See, e.g., In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 892 F.3d 624, 642–45 (4th Cir. 2018) ("simply calling an analysis a differential diagnosis doesn't make it so"); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1253 (11th Cir. 2005) ("[A]n expert does not establish the reliability of his techniques or the validity of his conclusions simply by claiming that he performed a differential diagnosis on a patient.").

Overall, Plaintiffs take the position that any acknowledgment of a potential risk factor, no matter how casual or cursory, is sufficient to insulate Dr. Smith from scrutiny.  That is not the law, and is not consistent with this Court's rulings in PTO 85. The Court should reject Plaintiffs' attempt to turn the Rule 702 analysis into a box-checking exercise devoid of serious scrutiny.

### III.   Dr. Smith Has Not Reliably Ruled Out Unknown Causes Of Mr. Chapman's SLL And Instead Always Points To Roundup.

Plaintiffs do not meaningfully defend Dr. Smith's failure to address the undisputed fact that the vast majority of NHL cases have no known cause.  *See* Mot at 8-9.  Rather than discuss Dr. Smith's actual analysis in this case, Plaintiffs just cite to the first wave of plaintiffs' response brief.  *See* Resp. Br. at 1 (citing ECF No. 8012).  But Plaintiffs concede that Dr. Smith's report ignored idiopathy altogether, and that he admits that he has no reliable means to determine what frequency of Roundup users developed NHL due to Roundup, rather than for other reasons.  *See* Mot. at 11 (citing White Decl., Ex. 2, Smith (*Alvarez*) Dep. at 205:24-206:17, Ex. 3, Boyd Report).

The Court's clear instruction in PTO 85 is that "an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless."  *See* PTO 85 at 4. Plaintiffs and Dr. Smith ignore this directive. But Plaintiffs cannot ignore idiopathy simply because the court has previously found different opinions from different experts regarding different plaintiffs to be admissible. It is true that the Court concluded the first round of experts had "provided a basis for their conclusions that the [prior] plaintiffs f[e]ll into the category of Roundup users who developed NHL" because they used the product.  PTO 85 at 6.  Plaintiffs apparently believe this finding means that the issue of idiopathy is resolved for all future plaintiffs in this MDL, even if they offer different experts who have failed to address idiopathy entirely. That is not the case.  *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 976 (9th Cir. 2021) ("Different Roundup cases may present different considerations, leading to different results. . . . much of this expert testimony was unique to Hardeman's specific case. Thus, it would not be unreasonable for the district court to revisit the admissibility of expert testimony based upon the facts raised in future cases.").  Dr. Smith's failure to address the strong possibility that Mr. Chapman's

SLL was caused by unknown factors renders his opinions unreliable and inadmissible.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Plaintiffs' specific causation expert, Dr. Clayton Smith, on Rule 702 and *Daubert* grounds and grant summary judgment in Monsanto's favor because Plaintiffs have failed to present an admissible expert opinion to support specific causation in this case.


Dated:  November 10, 2021                    Respectfully submitted,

                                             */s/ Jed P. White*_____
                                               Jed P. White
                                             Attorneys for Defendant Monsanto Company

MONSANTO'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. CLAYTON SMITH
3:20-CV-01277-VC

1

**CERTIFICATE OF SERVICE**

2          I HEREBY CERTIFY that on this 10th day of November, 2021, a copy of the foregoing was

3    filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all

4    appearing parties of record.

5

6                                        */s/ Jed P. White*
                                         Jed P. White

7                                        Attorneys for Defendant Monsanto Company

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28