**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| *Chapman et al. v. Monsanto Co.*, 3:20-cv-01277-VC | **MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS PRESUMPTION OF NO LIABILITY** |

## I.    Introduction

Plaintiffs, after being granted an extension of time to respond to this Motion, request the Court to incorporate by reference Opposition Briefs filed by other plaintiffs responding to Monsanto's summary judgment motions in the *Denkins*, *Blair*, *Garza*, *Koen* cases, as well as "any other Plaintiffs' Responses to Monsanto's Texas Presumption Motion not specifically listed." (Opp. p. 1-2).   Monsanto disputes that this constitutes an opposition to its Motion, but nonetheless incorporates by references its replies in support of those motions by reference.[1]  As explained below, Plaintiffs submitted no evidence to defeat Monsanto's Motion, and nothing contained in the opposition briefs Plaintiffs reference refutes the applicability of the § 82.008 presumption or rebuts it under either statutory basis.   Summary judgment is required.   *See e.g.*, *Shaw v. Trinity Highway Prods, LLC*, 329 S.W.3d 914, 918 (Tex. App. 2010).

## II.    Monsanto is Entitled to the Presumption of No Liability Under § 82.008(a)

Plaintiffs do not dispute the force and effect of the presumption of no liability provided by Tex. Civ. Prac. & Rem. Code § 82.008(a), nor do Plaintiffs dispute EPA's extensive regulation of Roundup, that Roundup's compliance with EPA's regulatory framework is mandatory, or that Roundup has, at all relevant times, been registered by EPA and otherwise compliant with EPA's regulatory requirements.   Monsanto set out this regulatory framework in detail in its Motion (*see* Mot. at pp. 3-6).

Monsanto specifically identified the mandatory federal regulations that are applicable to Roundup, promulgated under FIFRA, which require specific EPA approval of Roundup's complete formula, labeling, and instructions, and determinations that Roundup would not pose "unreasonable risk to man or the environment." (Mot. at pp. 3-6).   Further, and contrary to the position taken by other plaintiffs in response to Monsanto's motions, this regulatory framework relates to safety and specifically human health risk.   FIRFRA's definitions state that "[u]nreasonable adverse effects on the environment," the governing standard for registration, means "any unreasonable risk to man or

---

[1] *See Denkins*, No. 3:20-cv-03301 (Dkt. 22); *Blair*, No. 3:19-cv-07984 (Dkt. 29); *Garza*, No. 3:20-cv-06988 (Dkt. 23); *Koen*, No. 3:20-cv-03074 (Dkt. 29).

the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb).  As part of the registration and re-registration process, EPA requires registrants to submit information regarding allegations of a pesticide's unreasonable adverse effects on the environment, 40 C.F.R. § 159.152, and details the several categories of such information that it will consider, including toxicological studies (40 C.F.R. § 159.165), human epidemiological and exposure studies (40 C.F.R. § 159.170) and toxic or adverse effect incident reports (40 C.F.R. § 159.184).  EPA's specific registration framework clearly considers human health risks.  Plaintiffs ignore the EPA authority and regulatory action under FIFRA as it pertains to Roundup, which required EPA to consider risk to human health in its approval of pesticides and, in fact, that EPA extensively considered Roundup's risk of harm including its carcinogenicity.

Additionally, EPA's specific regulatory approval framework "governed the product risk," § 82.008(a), because it encompassed a determination of carcinogenicity, and EPA, operating under its specific regulatory authority, has repeatedly determined that Roundup does not pose a cancer risk. (Mot. at pp. 3-6).  Certain plaintiffs have incorrectly argued that this regulatory framework does not "govern the product risk" for purposes of § 82.008 because EPA regulations consider glyphosate only rather than formulated Roundup including inert ingredients such as the surfactant.  Not only do Plaintiffs offer no evidence in support of any theory of defect based on Roundup's surfactant, they are demonstratively wrong about EPA's registration process.  EPA's regulatory approval of Roundup, which considered human carcinogenicity, was of Roundup as formulated, including its inert ingredients such as the surfactant POEA.  As EPA's Pesticide Registration Manual explains, "[t]he registration of pesticide product formulation meets the registration standard under FIFRA section 3 . . . . The entire formulation, including the *inert ingredients*, must meet this standard." EPA, PESTICIDE REGISTRATION MANUAL, Chapter 8 – Inert Ingredients (emphasis added).[2] Moreover, just last year, EPA issued a response to public comments on its 2019 Interim Registration Review Decision re-registering Roundup.  In those responses, EPA addressed comments about "the

---

[2] *Available at* https://www.epa.gov/pesticide-registration/pesticide-registration-manual-chapter-8-inert-ingredients#regulation (last visited November 8, 2021).

toxicity of different formulations, including the technical grade active ingredient, toxicity of inert compounds, and surfactants":

> Most pesticide products contain substances in addition to the active ingredient (known as inert ingredients) which aid in the performance and effectiveness of the pesticide product. All active and inert ingredients must be approved by the agency when a product is first registered. The agency has evaluated the hazard potential (i.e., toxicity) of glyphosate and any inert ingredients with a battery of toxicity data from a multitude of studies throughout the risk assessment process. For more detailed responses to comments regarding EPA's evaluation of the glyphosate technical grade active ingredient and the toxicity of inert compounds including surfactants, see the *Glyphosate Proposed Interim Registration Review Decision Case 0178, Response to Public Comments on the Preliminary Ecological Risk Assessment for Glyphosate and Glyphosate: Response to Comments on the Human Health Draft Risk Assessment*, which are available on the public docket.

Supplemental Declaration of Jed White ("White Supp. Decl.") ¶ 2, Ex. 1, p. 6.  *See also* White Decl.[3] ¶ 11, Ex. 10, p. 10.  Further, in addition to EPA's toxicity evaluation of Roundup's inert ingredients, EPA's registration review considered all publicly available epidemiology, which by definition was a review of formulated glyphosate herbicides in humans.  White Decl. ¶ 10, Ex. 9, p. 143-144; White Supp. Decl. ¶ 3, Ex. 2, p. 8.  Accordingly, EPA's regulatory framework governed the risk at issue for purposes of § 82.008(a) – formulated Roundup's risk of cancer.

Finally, Roundup has unequivocally complied with EPA's regulations as evidenced by its registration and repeated re-registration, constituting specific approval of the formulation and labeling, and Plaintiffs do not argue otherwise.  Accordingly, the § 82.008(a) presumption applies.

### III.    Plaintiffs Fail to Rebut the Presumption Under § 82.008(b)(1) or (2)

The § 82.008(a) presumption can be rebutted in only two ways – by establishing: (1) that the applicable regulations are inadequate to protect the public from unreasonable risk of injury, or (2) establishing fraud on the regulator.  § 82.008(b).  At the summary judgment stage, Plaintiffs were required to come forward with evidence to rebut the § 82.008(a) presumption, and they offered none. Moreover they do not even sufficiently invoke, much less *establish*, either basis for rebuttal.  *See*

---

[3] References to "White Decl.," as opposed to "White Supp. Decl.," are to the Declaration of Jed White submitted in support of Monsanto's underlying brief in support of this motion.

MONSANTO'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS PRESUMPTION OF NO LIABILITY

*Wright v. Ford Mot. Co.*, 508 F.3d 263, 270 (5th Cir. 2007) (in context of § 82.008(b) rebuttal, "[e]stablish connotes something more than simply introducing *some* evidence from which a factfinder might—*or might not*—find that which is to be 'established.'").

As to the first rebuttal provision, Plaintiffs were required to offer some evidence of the inadequacy of EPA's regulations.  They failed to do so, and legal argument does not rebut the presumption.  Plaintiffs certainly cannot overcome the § 82.008(a) presumption by bootstrapping a rebuttal argument based on no more than allegation of product defect – *i.e.*, that EPA's regulations disallowing a cancer warning are inadequate because Roundup's label does not have a cancer warning.  Nor does argument that an average user may be unable to understand a pesticide's instructions for use have anything to do with the adequacy of EPA's regulatory approval process as it pertains to the determination that Roundup does not cause cancer.  And, as explained above, Plaintiffs are wrong that EPA's regulatory approval process failed to consider inert ingredients like Roundup's surfactant, and so this does nothing to rebut the presumption under § 82.008(b)(1).

The second rebuttal provision under § 82.008(b)(2) requires a showing of fraud on the EPA.  Plaintiffs have suggested, with no discussion, that FIFRA allows state law tort actions because FIFRA contains misbranding provisions, contemplating that properly registered pesticides may nonetheless be unlawfully misbranded.  Presumably this is in response to Monsanto's argument that fraud on the EPA claims are preempted by federal law, but Plaintiffs do not say.  Regardless, rebuttal under § 82.008(b)(2) is only established if "the manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action."  Although § 82.008(b)(2), in this context, is clearly a fraud on the EPA provision and thus preempted under *Buckman* and *Garcia* as applied by the 5th Circuit Court of Appeals, *see Lofton v. McNeil Consumer & Spec. Pharms*, 672 F.3d 372 (5th Cir. 2012), the Court need not address preemption.  Plaintiffs were required to point to evidence that Monsanto committed fraud on the EPA, and they offered none.  Citation of FIFRA's misbranding provisions certainly does not support or establish fraud on the EPA by Monsanto, and this Court has already made a finding that Monsanto did <u>not</u> mislead the

---

MONSANTO'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS PRESUMPTION OF NO LIABILITY

1  EPA.   (Mot. p. 9).   Accordingly, Plaintiffs have offered nothing to invoke rebuttal under §
2  82.008(b)(2).

3  **IV.     The Unrebutted § 82.008 Presumption Defeats All of Plaintiffs' Claims**

4         Plaintiffs fail to avoid summary judgment by attempting to rely on Complaint allegations
5  which they claim are not within the scope of § 82.008(a) because they do not relate to Roundup's
6  formulation, labeling, or design.   That is not supportable by a fair reading of their Complaint.
7  Plaintiffs' implied warranty claim is nothing more than a repackaged version of their failure to warn
8  claim, which relates to formulated Roundup's lack of a cancer warning.   This is precisely why the
9  Texas Product Liability Act includes breach of implied warranty in the definition of a product
10 liability claim, Tex. Civ. Prac. & Rem. Code § 82.001(2), and Plaintiffs offer no allegation or
11 evidence that their implied warranty claim is distinct from their other claims.   Moreover, allegations
12 of manufacturing defect or breach of the duty to research, test, produce, promote, market, supply,
13 sell, or distribute do not avoid summary judgment.   Plaintiffs have not offered any evidence in
14 support of such theories of product defect, and reliance on complaint allegations is not sufficient.
15 *See Edwards v. Leaders in Comm. Alternatives, Inc.*, 850 Fed.Appx. 503, 506 (9th Cir. 2021) (party
16 opposing summary judgment "may not rest upon mere allegations or denials" in a pleading).   Thus,
17 there is no evidence of any kind to support such theories, and summary judgment is proper on that
18 basis as well.

19        By the same token, allegations of supposed voluntary misrepresentations by Monsanto about
20 Roundup's safety which they argue Monsanto was not required to make are irrelevant.   The alleged
21 misrepresentations set out in the Oppositions to which Plaintiffs refer were quoted verbatim from
22 the Complaints in those cases.   Plaintiffs cannot defeat summary judgment merely by resting on
23 allegations in the complaint.   *Edwards*, 850 Fed.Appx. at 506.   Second, Plaintiffs offer no connection
24 between the misrepresentation allegations and any of their claims, nor do they offer any evidence to
25 support such a connection.   They do not offer evidence or allege they saw Roundup advertisements
26 which made such claims, or that they relied on such representations in purchasing and using
27 Roundup.   Accordingly, Monsanto's supposed voluntary misrepresentations as set out in the
28

MONSANTO'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS
PRESUMPTION OF NO LIABILITY

referenced Oppositions are unadorned allegations with no factual enhancement, and cannot operate to defeat summary judgment as a matter of law.

Accordingly, the § 82.008 presumption applies to all of Plaintiffs' claims because they relate to "some aspect of the formulation, labeling, or design" of Roundup.  § 82.008(a).

## V.    Conclusion

For the foregoing reasons, Monsanto is entitled to summary judgment on Plaintiffs' claims.

Dated:  November 10, 2021                 Respectfully submitted,


                                          */s/ Jed P. White*
                                          Attorney for Defendant Monsanto Company

MONSANTO'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS PRESUMPTION OF NO LIABILITY