**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No.: 3:16-md-02741-VC |
| *Chapman v. Monsanto Co.*, 3:20-cv-01277-VC | **DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE APPLICATION OF ISSUE PRECLUSION/ COLLATERAL ESTOPPEL TO THE ISSUE OF GENERAL CAUSATION** |
| | Hearing date: December 13, 2021 Time: TBD |

1

## TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................................1

II.     APPLICABLE LAW: CALIFORNIA LAW APPLIES ................................................3

III.    ARGUMENT ...................................................................................................................4

        A.      The Causation Issue "Actually Litigated" in *Hardeman* is not "Identical"
                to the Causation Issue Here. ...............................................................................5

                1.      New Scientific Evidence Post-Dating Hardeman Precludes
                        Collateral Estoppel ...............................................................................5

                2.      The Distinct Factual Circumstances Impacting the Causation
                        Inquiries in Hardeman and in this Case Preclude Collateral
                        Estoppel. ................................................................................................9

        B.      The *Hardeman* Verdict is Not "Final" Until All Appeals Are Exhausted. ...............11

        C.      Nonmutual Offensive Collateral Estoppel is Not Appropriate in Mass Tort,
                Multi-District Litigation and Would Be Especially Unfair to Monsanto
                Here. ..................................................................................................................11

IV.     CONCLUSION ...............................................................................................................15

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Appling v. State Farm Mut. Auto. Ins. Co.*,
5
    340 F.3d 769 (9th Cir. 2003) .................................................................................... 12

6

*Arnold v. Garlock, Inc.*,
    278 F.3d 426 (5th Cir. 2001) .................................................................................... 13

7

*Bartel v. Tokyo Elec. Power Co., Inc.*,
8
    371 F. Supp. 3d 769 (S.D. Cal. 2014) ....................................................................... 3

9

*Boblitt v. Boblitt*,
    190 Cal. App. 4th 603 (2010) ................................................................................... 11

10

*In re Bridgestone/Firestone, Inc.*,
11
    288 F.3d 1012 (7th Cir. 2002) .................................................................................. 13

12

*Burlington Northern R. Co. v. Hyundai Merchant Marine Co., Ltd.*,
13
    63 F.3d 1227 (3d Cir. 1995) ....................................................................................... 4

14

*People v. Carmony*,
    99 Cal. App. 4th 317 (2002) ....................................................................................... 5

15

*In re Chevron U.S.A., Inc.*,
16
    109 F.3d 1016 (5th Cir. 1997) .................................................................................. 13

17

*Clark v. SmithKline Beecham*,
18
    No. 7:06-cv-30, 2006 WL 3329141 (M.D. Ga. Nov. 15, 2006) ............................. 14

19

*Coburn v. Smithkline Beecham Corp.*,
    174 F. Supp. 2d 1235 (D. Utah 2001) ..................................................................... 14

20

*Daewoo Electronics Am. Inc. v. Opta Corp.*,
21
    875 F.3d 1241 (9th Cir. 2017) .................................................................................... 3

22

*Diocese of San Joaquin v. Gunner*,
23
    246 Cal. App. 4th 254 (2016) ..................................................................................... 5

24

*Eureka Fed. Sav. & Loan Ass'n v. Am. Ca. Co. of Reading, PA*,
    873 F.2d 229 (9th Cir. 1989) ...................................................................................... 4

25

*Franklin & Franklin v. 7-Eleven Owners for Fair Franchising*,
26
    85 Cal. App. 4th 1168 (2000) ................................................................................... 11

27

*In re Hanford Nuclear Reservation Litig.*,
28
    497 F.3d 1005 (9th Cir. 2007) .................................................................................. 13

*In re Hanford Nuclear Reservation Litig.*,
    534 F.3d 986 (9th Cir. 2008) ............................................................................ 13

*Hernandez v. City of Pomona*,
    46 Cal. 4th 501 (Cal. 2009) ........................................................................... 5, 9

*Jack Faucett Associates, Inc. v. Am. Tel. & Tel. Co.*,
    744 F.2d 118 (D.C. Cir. 1984) ........................................................................... 4

*Kramer v. Showa Denko K.K.*,
    929 F. Supp. 733 (S.D.N.Y. 1996) .................................................................... 13

*Long Beach Unified Sch. Dist. v. State of Cal.*,
    225 Cal. App. 3d 155 (1990) ........................................................................... 11

*Lucido v. Superior Court*,
    51 Cal. 3d 335 (Cal. 1990) ........................................................................ 4, 5, 13

*Nations v. Sun Oil Co.*,
    705 F.2d 742 (5th Cir. 1983) ............................................................................. 4

*NTCH-WA, Inc. v. ZTE Corp.*,
    921 F.3d 1175 (9th Cir. 2019) ........................................................................... 3

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) .................................................................................... 4, 11

*Pooshs v. Philip Morris USA, Inc.*,
    904 F. Supp. 2d 1009 (N.D. Cal. 2012) ............................................................. 4

*Matter of Rhone-Poulenc Rorer, Inc.*,
    51 F.3d 1293 (7th Cir. 1995) ........................................................................... 13

*Richards v. Marshall*,
    No. 2009-23, 2013 WL 1901637 (D.V.I. May 8, 2013) ...................................... 14

*Rogers v. Ford Motor Co.*,
    925 F. Supp. 1413 (N.D. Ind. 1996) ................................................................... 9

*Sandoval v. Super. Ct.*,
    140 Cal. App. 3d 932 (1983) ........................................................................ 4, 12

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) .......................................................................................... 3

*State Farm Fire & Cas. Co. v. Century Home Compon., Inc.*,
    550 P.2d 1185 (Or. 1976) ............................................................................... 12

*Syverson v. Int'l Bus. Machs. Corp.*,
    472 F.3d 1072 (9th Cir. 2007) ........................................................................... 4

*Taylor v Sturgell,*
    553 U.S. 880 (2008) ................................................................................................... 3

*In re TMI Litig.,*
    193 F.3d 613 (3d Cir. 1999)...................................................................................... 14

*Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.,*
    231 Cal. App. 4th 134 (2014).................................................................................. 5, 7

*United States Golf Assn. v. Arroyo Software Corp.,*
    69 Cal. App. 4th 607 (1999)................................................................................... 5, 9

*Estate of Van Dyke by Van Dyke v. GlaxoSmithKline,*
    No. 05-CV-153-J, 2006 WL 8430904 (D. Wyo. Nov. 1, 2006) ............................. 14

*White Motor Corp. v. Teresinski,*
    214 Cal. App. 3d 754 (1989)..................................................................................... 4

**Statutes**

7 U.S.C. § 136(q)(1)(A) ................................................................................................. 8

**Other Authorities**

https://www.supremecourt.gov/docket/docketfiles/html/public/21-241.html ............................. 11

1  **I.      INTRODUCTION**

2        Plaintiff seeks to use the 2019 jury verdict in the *Hardeman* trial in this MDL to strip Monsanto

3  Company ("Monsanto") of its defense that Roundup does not cause Non-Hodgkin's Lymphoma

4  ("NHL").   In so doing, Plaintiff conveniently ignores the most recent jury verdict in the Roundup

5  litigation, whereby a jury in Los Angeles County found *in favor* of Monsanto and concluded that a

6  plaintiff's exposure to Roundup *did not cause* the plaintiff's NHL.  *See* Declaration of Jed P. White

7  ("White Decl."), Ex. 1, 10/5/21 Trial Tr. in *Clark v. Monsanto* at 2027:3-9; Ex. 2, Judgment in *Clark*

8  *v. Monsanto* (11/3/21).

9        Plaintiff's request does not meet the requirements for collateral estoppel and is fundamentally

10  incompatible with an effective trial and resolution process in nationwide mass tort litigation.  Moreover,

11  application of the doctrine here to prevent Monsanto from asserting its causation defense would be

12  patently unfair because it would ignore a more recent conflicting verdict as well as new scientific

13  evidence that has been published since the *Hardeman* verdict.  At least one other court in the Roundup

14  litigation has already considered this argument and has soundly rejected it, finding it to be "without

15  merit."   *See* White Decl., Ex. 3, Order on Plaintiff's Motion for Application of the Doctrine of

16  Collateral Estoppel on the Issue of General Causation, in *Adams, et al., v. Monsanto Co.*, 17SL-

17  CC02721 (S.L. Cnty. Cir. Ct. July 26, 2019).  This Court should likewise reject Plaintiff's misguided

18  attempt to preclude Monsanto from fully defending itself in this case and deny Plaintiff's Motion for

19  Partial Summary Judgment on the Application of Issue Preclusion/Collateral Estoppel to the Issue of

20  General Causation (the "Motion") for multiple reasons.

21        **First**, the *Hardeman* verdict (or any other Roundup verdict, for that matter) does not preclude

22  Monsanto from litigating general causation in this case because the causation issue in *Hardeman* is not

23  "identical" to the causation issue here.  A significant amount of new scientific and regulatory evidence

24  concerning glyphosate has become available since the *Hardeman* verdict, making the jury's verdict in

25  that case outdated and out of line with the most up-to-date science on the subject.

26        **Second**, the *Hardeman* verdict does not preclude Monsanto from litigating general causation

27  because as this Court specifically observed "the [Hardeman] jury [was] not being called upon to decide

28  whether [Roundup] is capable of causing NHL," and that finding would have been "an advisory

verdict" even if it were made.  *See* White Decl., Ex. 4, 1/28/19 Tr. of Proceedings, In re: Roundup Prods. Liab. Lit., 16-md-02741-VC at 93:4-19.  Additionally, Mr. Hardeman and Mr. Chapman have substantially different medical histories and exposures and distinct subtypes of cancer, thus rendering the causation inquiry actually litigated in *Hardeman* materially distinct from (and therefore not "identical" to) the inquiry here.  Indeed, whether a given exposure is capable of causing a certain subtype of NHL is not the same issue "actually litigated" in the two cases.

**Third**, the *Hardeman* verdict is not a "final" judgment with preclusive effect because Monsanto has not exhausted all of its appellate remedies in that case.  Monsanto has petitioned the Supreme Court to hear the *Hardeman* case.  *See* White Decl., Ex. 5, Petition for a Writ of Certiorari, *Monsanto Co. v. Hardeman*, Case No. 21-241 (Aug. 16, 2021).  That petition is still pending; thus, Monsanto's appellate remedies are not yet exhausted and the *Hardeman* verdict is not "final" for purposes of collateral estoppel.

**Fourth**, Plaintiff's attempt to use offensive collateral estoppel to deprive Monsanto of its causation defense would be patently unfair to Monsanto for a variety of reasons.  Not only is the science on glyphosate constantly evolving, but, as discussed above and in more detail below, the *Hardeman* verdict (on which Plaintiff relies to establish collateral estoppel) is not consistent with the most recent jury verdict handed down in the Roundup litigation.  Just over one month ago, a Los Angeles County jury reached the exact opposite conclusion as the jury in *Hardeman*, finding that Roundup did not cause a plaintiff's cancer.  Permitting Plaintiff to rely on one favorable jury verdict from two-and-a-half years ago and to ignore the most recent jury verdict in this litigation (which was informed by the most up-to-date science on glyphosate) would be remarkably unfair to Monsanto.  Additionally, Plaintiff's attempt to use offensive collateral estoppel on the issue of general causation would be antithetical to the very purpose of the process of trying multiple cases in mass tort proceedings, which is to provide the parties data points from numerous trials upon which to assess the litigation as a whole.  In recognition of this important policy interest, courts have repeatedly avoided offensive collateral estoppel in the mass tort setting.  The Court should not reach the opposite conclusion and preclude Monsanto from mounting one of its primary defenses in this case and potentially in thousands of others currently pending in this MDL.

## II.     APPLICABLE LAW: CALIFORNIA LAW APPLIES

Plaintiff's motion is premised on the incorrect assertion that federal preclusion rules apply to determine the issue preclusive effect of the *Hardeman* verdict.  Dispositive precedent from the Supreme Court and the Ninth Circuit, however, confirms that California law governs the preclusive effect (if any) of the *Hardeman* verdict because the corresponding judgment was issued by this Court with diversity jurisdiction sitting in California.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-509 (2001); *see also Taylor v Sturgell,* 553 U.S. 880, 891 n.4 (2008) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."); *NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1180 (9th Cir. 2019) ("[W]e determine the preclusive effect of a prior federal diversity judgment by reference to the law of the state where the rendering court sat[.]"); *Daewoo Electronics Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1244 (9th Cir. 2017) ("When it is necessary for a federal district court with diversity jurisdiction to determine the preclusive effect of a prior decision by a different federal district court sitting in diversity, the second court must apply preclusion principles according to the law of the initial court's state.").[1]

The *Hardeman* judgment was issued by this Court, a federal district court sitting in California and exercising diversity jurisdiction.  As a result, federal common law controls the preclusive effect of that judgment in subsequent proceedings, including in this case.  *Semtek*, 531 U.S. at 507 ("[W]e have long held that States cannot give [federal] judgments merely whatever effect they would give their own judgments, but must accord them the effect that this Court prescribes.").  For judgments issued by federal courts sitting in diversity jurisdiction, as in *Hardeman*, federal common law provides that the law of the state in which the judgment-rendering court sits determines the preclusive effect of those judgments.  *Id.* at 509; *NTCH-WA, Inc.*, 921 F.3d at 1180; *Daewoo Electronics Am. Inc. v.*, 875 F.3d at 1244.  Accordingly, this Court should apply California law when determining the preclusive effect (if any) of the *Hardeman* judgment in this case.

---

[1] *See also Bartel v. Tokyo Elec. Power Co., Inc.*, 371 F. Supp. 3d 769, 780 (S.D. Cal. 2014) ("As a federal district court located in California sitting in diversity and determining the preclusive effect of its own prior decision, this Court will apply California's law of issue preclusion.").

## III.   ARGUMENT

Under California law, collateral estoppel applies when (1) the issue sought to be precluded from re-litigation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought is the same as, or in privity with, the party to the former proceeding.  *See Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (Cal. 1990).[2]  If any of these conditions is not satisfied, collateral estoppel does not apply.

Additionally, even where the above-listed prerequisites are present, offensive nonmutual issue preclusion still does not apply where application would be unfair to the defendant.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979) ("The general rule should be that in cases where . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel."); *Sandoval v. Super. Ct.*, 140 Cal. App. 3d 932, 941 (1983) (same).[3]  This is because "[c]ollateral estoppel is an equitable concept," *Sandoval*, 140 Cal. App. 3d at 941, and "raises additional policy concerns," *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1034 (N.D. Cal. 2012); *see also Jack Faucett Associates, Inc. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 124-25 (D.C. Cir. 1984) (noting that application of the doctrine is "detailed, difficult, and potentially dangerous," and that "[w]here offensive estoppel is involved, the element of 'fairness' gains special importance" and is a "critical finding necessary for the application of offensive estoppel.").  "Moreover, the offensive use of collateral estoppel is more closely scrutinized than the defensive use of the doctrine."  *White Motor Corp. v. Teresinski*, 214 Cal. App. 3d 754, 763 (1989).

---

[2] The Ninth Circuit's approach to offensive nonmutual issue preclusion is similar.  *See Syverson v. Int'l Bus. Machs. Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (holding that application of offensive nonmutual  issue preclusion is appropriate only if the following elements are established: (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action).

[3] *See also, e.g., Eureka Fed. Sav. & Loan Ass'n v. Am. Ca. Co. of Reading, PA*, 873 F.2d 229, 234 (9th Cir. 1989) ("[I]t is inappropriate to apply collateral estoppel when its effect would be unfair."); *Burlington Northern R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1232 (3d Cir. 1995) (holding that the use of offensive collateral estoppel is "subject to an overriding fairness determination by the trial judge."); *Nations v. Sun Oil Co.*, 705 F.2d 742, 745 (5th Cir. 1983) ("[F]airness to both parties must be considered when [the doctrine of offensive nonmutual collateral estoppel] is applied.").

Plaintiff's Motion should be denied for multiple reasons.  Plaintiff has not established several of the necessary elements for application of the doctrine of offensive nonmutual collateral estoppel as to the issue of general causation, and application of the doctrine here would be fundamentally unfair to Monsanto.

### A.   The Causation Issue "Actually Litigated" in *Hardeman* is not "Identical" to the Causation Issue Here.

Plaintiff's Motion should be denied because the general causation issue that needs to be decided in this case is not "identical" to the causation issue that was "actually litigated" in *Hardeman*.  *See Diocese of San Joaquin v. Gunner*, 246 Cal. App. 4th 254, 266 (2016) ("The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." (quoting *Lucido*, 51 Cal. 3d at 342)); *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511 (Cal. 2009) ("For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding.").

#### 1.   New Scientific Evidence Post-Dating Hardeman Precludes Collateral Estoppel

It is well-settled that "[c]ollateral estoppel does not apply where there are changed conditions or new facts which did not exist at the time of the prior judgment."  *United States Golf Assn. v. Arroyo Software Corp.*, 69 Cal. App. 4th 607, 616 (1999).  As the California Court of Appeal has noted "[s]ome issues are not static, that is, they are not fixed and permanent in their nature."  *People v. Carmony*, 99 Cal. App. 4th 317, 322 (2002).  "When a fact, condition, status, right, or title is not fixed and permanent in nature, then an adjudication is conclusive as to the issue at the time of its rendition, *but is not conclusive as to that issue at some later time*."  *Id.* (emphasis added).  Once the facts and circumstances surrounding an issue have changed and new evidence is discovered, the issue itself changes and is no longer "identical" for purposes of collateral estoppel.  *See Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.*, 231 Cal. App. 4th 134, 181 (2014) ("It is clear that if facts and circumstances change after the first case is final, they are no longer identical by the time the second case rolls along.").

Several important new pieces of scientific and regulatory evidence concerning glyphosate have been published since the *Hardeman* verdict, which will alter how Monsanto and Plaintiff Chapman

will present the scientific evidence concerning glyphosate and show that the issue litigated in *Hardeman* is not identical to the causation issue in this case.

**First**, a number of additional scientific papers on glyphosate have been published in the past few years; these papers were unavailable prior to the *Hardeman* causation verdict and alter the general causation analysis.  For instance, Leon (2019) was published on March 18, 2019 in the International Journal of Epidemiology.  *See* White Decl., Ex. 6, Leon (2019).  This study evaluates data from three large cohort studies.  *Id.* at 1-2.  It found no association between the use of Roundup and NHL overall. *Id.* at 11-12.  The paper supports that Roundup exposure is not a cause of NHL.

Later in 2019, the authors of the North American Pooled Project ("NAAP") published the results of their pooled analysis of several case-control studies looking at Roundup and NHL.  *See* White Decl., Ex. 7, Pahwa (2019).  The results of that study show no association between the use of Roundup and NHL when properly adjusted for confounding variables.  *Id.* at Table 2.  NAAP incorporates the data from, and supersedes, two of the studies relied on extensively by plaintiff's experts in the *Hardeman* trial—McDuffie 2001 and De Roos 2003.  The *Hardeman* jury heard about evolving, unpublished NAAP data presented at three poster presentations in 2015 and 2016.  *See* White Decl., Ex. 8, Weisenburger Tr. Testimony, Hardeman, at 1252-1254.  In this case, however, the parties will be able to introduce the most recent and formal NAAP results now published in a peer-reviewed journal.

In 2020, a new paper was published analyzing the potential biases affecting the five case-control epidemiology studies on which IARC based its classification of glyphosate.  *See* White Decl., Ex. 9, Crump (2020).  Plaintiff Hardeman also relied on several of these studies in significant detail during his trial.  The results of the Crump (2020) paper show that "[t]he case-control studies are at risk of recall bias resulting from information on exposure to pesticides being collected from cases and controls based on their memories" and that "two of the case-control studies are additionally at risk of a form of selection bias that can exacerbate the effect of recall bias."  *Id.* at 696.  The paper concludes that "[t]his suggests that the case control studies of glyphosate are not reliable for determining whether glyphosate is carcinogenic."  *Id.* at 703.

Finally, earlier this year, a new meta-analysis was published on exposure to glyphosate and the risk of NHL in humans.  *See* White Decl., Ex. 10, Kabat (2021).  The authors of that new meta-analysis described several weaknesses present in another meta-analysis published on glyphosate in 2019, the Zhang (2019) meta-analysis.  To address the weaknesses of Zhang (2019), the authors of Kabat (2021) "undertook sensitivity analyses based on the five case-control studies and one cohort study included in the Zhang et al. meta-analysis to investigate how substitution of various risk estimates would affect the meta-estimate."  *Id.* at 2.  The authors then conducted their own meta-analysis "incorporating the most updated results from the case-control studies."  *Id.*  The Kabat (2021) meta-analysis provides additional support that Roundup exposure is not a cause of NHL.

These represent just some of the many new scientific papers that have been published since the *Hardeman* verdict.  This new scientific evidence, which was unavailable in *Hardeman*, demonstrates that the science concerning glyphosate is evolving continuously.  As such, the causation issues resolved in the *Hardeman* case are markedly different from (and are not "identical" to) the causation issues that will need to be resolved in this case and in future cases.  It is thus not appropriate to give preclusive effect to the *Hardeman* causation verdict because the glyphosate science is "not fixed and permanent in nature."  *Union Pac. R.R. Co.*, 231 Cal. App. 4th at 181.

***Second***, the EPA has issued new data and conclusions regarding glyphosate:

- On April 23, 2019, EPA issued its Proposed Interim Registration Review Decision on glyphosate, which reiterated through formal agency action that it still has "not identif[ied] any human health risks from exposure to any use of glyphosate."  *See* White Decl., Ex. 11, EPA, Glyphosate Proposed Interim Registration Review Decision, Case Number 0178, April 2019, at 35.  This EPA report also expressly repudiated public comments questioning the correctness of EPA's prior determinations that glyphosate is not a human carcinogen.  *Id.* at 7-8.  EPA further stated expressly for the first time that its cancer evaluation "is more robust" and "more transparent" than IARC's evaluation, which was relied upon by Mr. Hardeman.  *Id.*

- In a letter issued in August 2019, EPA again re-confirmed its determination that glyphosate is "not likely to be carcinogenic to humans." *See* White Decl., Ex. 12, EPA Office of Pesticide Programs, Letter to Glyphosate Registrants Regarding Labeling Requirements (Aug. 7, 2019). EPA's letter addressed a California state-law requirement to include cancer warnings on labels of glyphosate products based on the 2015 determination by IARC. EPA explained to glyphosate registrants that it "disagrees with IARC's assessment," because "EPA scientists have performed an independent evaluation of the available data since the IARC classification" and have concluded that glyphosate is not carcinogenic. *Id.* Because of that conclusion, EPA explained that a statement on glyphosate-based products warning that glyphosate does present a risk of cancer would be "false and misleading," and would render any product so labeled "misbranded pursuant to section 2(q)(1)(A) [7 U.S.C. § 136(q)(1)(A)] of FIRA." *Id.*

- On January 22, 2020, EPA issued a final Interim Registration Review Decision for glyphosate. *See* White Decl., Ex. 13, EPA, Glyphosate Interim Registration Review Decision, Case Number 0178, January 2020. In so doing, EPA again confirmed that it had "thoroughly evaluated potential human health risk associated with exposure to glyphosate and determined that there are no risks to human health from the current registered uses of glyphosate and that glyphosate is not likely to be carcinogenic to humans." *Id.* at 10. As a result, while EPA initiated certain interim ecological risk mitigation measures, it did not find that any mitigation measures were necessary to protect human health.

- Earlier this year, following the change of presidential administration, President Biden's EPA reaffirmed in at least two different court filings the view espoused by every prior Administration's EPA with respect to glyphosate. *See* White Decl., Ex. 14, Mot. For Partial Remand Without Vacatur at 17, *NRDC v. EPA,* Dkt. No. 82-1 (9th Cir. May 18, 2021) ("As to human health risks, EPA has reviewed the Interim Decision and believes that this component of its analysis should be sustained."); Ex.

15, *NRDC* EPA Br. at 1 (endorsing the "conclu[sion] that glyphosate is not likely to be a human carcinogen and poses no human-health risks of concern" and explaining that "[t]he record underlying these conclusions is robust, reflecting more than a decade of analysis and thorough review of the scientific literature.")

This type of new, post-judgment regulatory evidence makes it inappropriate to give *Hardeman* preclusive effect under California law. *See United States Golf Assn.*, 69 Cal. App. 4th at 616; *cf. Rogers v. Ford Motor Co.*, 925 F. Supp. 1413, 1419 (N.D. Ind. 1996) (finding "it would be unfair under the circumstances to permit the use of collateral estoppel" where after the first trial the "NHTSA announced that an exhaustive investigation" into the alleged seat belt defect revealed "no basis for the allegation" because "confidence in the [prior] verdict is undermined by the existence of additional evidence on the [alleged defect]—evidence that was unavailable during the [first] trial—which conceivably could lead to a different result").

### 2. The Distinct Factual Circumstances Impacting the Causation Inquiries in Hardeman and in this Case Preclude Collateral Estoppel.

The causation issue actually litigated in *Hardeman* also is not identical to the causation issue in this case because the facts and circumstances affecting causation in the two cases are distinct. Indeed, a careful review of the pre-trial hearing, final causation jury instructions, and final verdict form in *Hardeman* demonstrates that general causation was not "actually litigated" in *Hardeman* because that issue was not "submitted for determination[] and determined in that proceeding." *See Hernandez*, 46 Cal. 4th at 511. At a pre-trial hearing in *Hardeman*, this Court rejected plaintiff's counsel's request to include a separate general causation question on the verdict form because "the jury is not being called upon to decide whether [Roundup] is capable of causing NHL at all." *See* White Decl., Ex. 4, 1/28/19 Tr. of Proceedings, In re: Roundup Prods. Liab. Lit., 16-md-02741-VC, at 93:4-11, 97:23-98:1. In so doing, this Court characterized plaintiff's counsel's request as seeking "almost like an advisory verdict" on general causation, which it deemed to be inappropriate. *Id.*

Consistent with its pre-trial ruling, this Court instructed the jury on causation without reference to general causation:

> To prevail on the question of medical causation, Mr. Hardeman must prove by a preponderance of the evidence that Roundup was a substantial factor in causing his non-Hodgkin's lymphoma. A substantial factor is a factor that a reasonable person would

- 9 -

consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. Subject to the additional instructions below, conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

The following additional instructions apply if you believe that two or more NHL-causing factors operated independently on Mr. Hardeman:

If you conclude that Mr. Hardeman has proven that his exposure to Roundup was sufficient on its own to cause his NHL, then you must find for Mr. Hardeman even if you believe that other factors were also sufficient on their own to cause his NHL. On the other hand, if you conclude that Mr. Hardeman has not proven that his exposure to Roundup was sufficient on its own to cause his NHL, then you must find for Monsanto.

White Decl., Ex. 16, Hardeman, Phase 1 Jury Instruction No. 9: Causation. The verdict form likewise only required the jury to decide whether Mr. Hardeman's "exposure to Roundup was a substantial factor in causing his non-Hodgkin's lymphoma." White Decl., Ex. 17, Hardeman, Phase 1 Verdict Form. As such, the only issue "actually litigated" in the *Hardeman* litigation was whether Roundup was a substantial factor in causing Mr. Hardeman's cancer under the specific circumstances of his alleged exposure.

The jury's finding that Mr. Hardeman's "exposure to Roundup was a substantial factor in causing his non-Hodgkin's lymphoma" is not "identical" to the causation question at issue in this case—whether Roundup is capable of causing Mr. Chapman's distinct subtype of cancer based on Mr. Chapman's unique medical and exposure history. NHL is an umbrella term used to describe more than 60 different subtypes of cancer that have different clinical and prognostic characteristics. Mr. Hardeman claimed he used approximately 5,900 gallons of Roundup over 26 years before being diagnosed with diffuse large B-cell lymphoma ("DLBCL"). *See* White Decl., Ex. 8, Weisenburger Tr. Testimony, Hardeman, at 1153:9-21. In contrast to Mr. Hardeman, Mr. Chapman claims to have used far less Roundup over the course of 17 years prior to his diagnosis with a different cancer, small lymphocytic lymphoma. *See* White Decl., Ex. 18, Sawyer *Chapman* Rpt. at 9-11, 21-22. Mr. Hardeman and Mr. Chapman also had distinct risk factors that may have uniquely contributed to their individual cancer risks and the possibility that Roundup may have contributed to their cancers. Due to the differences in their cancer histories and alleged exposures, the causation issue in *Hardeman* is not "identical" for purposes of collateral estoppel to the causation issue here. It is not possible to

extrapolate any findings regarding Mr. Hardeman's exposure and whether it was capable of causing his particular cancer to Mr. Chapman's unique exposure and medical histories.

**B.     The *Hardeman* Verdict is Not "Final" Until All Appeals Are Exhausted.**

The *Hardeman* verdict also does not have preclusive effect because it is not "final" under California's collateral estoppel test.  Under California law, a judicial decision is not "final" for purposes of collateral estoppel until the final resolution of any appeal or the expiration of the time for an appeal. *Franklin & Franklin v. 7-Eleven Owners for Fair Franchising*, 85 Cal. App. 4th 1168, 1174 (2000) ("Unlike the federal rule and that of several states, in California the rule is that the finality required to invoke the preclusive bar of res judicata is not achieved until an appeal from the trial court judgment has been exhausted or the time to appeal has expired."); *Long Beach Unified Sch. Dist. v. State of Cal.*, 225 Cal. App. 3d 155, 169 (1990) ("A decision will not be given collateral estoppel effect if such appeal has been taken or if the time for such appeal has not lapsed."); *Boblitt v. Boblitt*, 190 Cal. App. 4th 603, 606 (2010) ("[A] judgment that is on appeal is not final for purposes of applying the doctrines of claim and issue preclusion.").  In *Hardeman*, Monsanto filed a timely petition for a writ of certiorari in the Supreme Court on August 16, 2021.  *See* White Decl., Ex. 5, Petition for a Writ of Certiorari, *Monsanto Co. v. Hardeman*, Case No. 21-241 (Aug. 16, 2021).  That petition remains pending, *see* Docket in Supreme Court Case No. 21-241[4]; thus, Monsanto has not yet exhausted all of its appellate rights and *Hardeman* is not yet "final" for purposes of collateral estoppel under California law.

**C.     Nonmutual Offensive Collateral Estoppel is Not Appropriate in Mass Tort, Multi-District Litigation and Would Be Especially Unfair to Monsanto Here.**

As discussed above, and as Plaintiff expressly acknowledges, offensive collateral estoppel is not appropriate even if the above-referenced criteria are satisfied, "in cases where . . . the application of offensive estoppel would be unfair to a defendant . . . ."  Motion at 13 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).  Application of collateral estoppel against Monsanto in this case on the issue of general causation would be decidedly unfair to Monsanto for a number of reasons. Thus, Plaintiff's Motion also should be denied on this independent basis.

---

[4] *See* https://www.supremecourt.gov/docket/docketfiles/html/public/21-241.html.

*First*, it would be unfair to Monsanto to apply collateral estoppel in this case on the issue of general causation based on the *Hardeman* verdict because the jury in the most recent Roundup trial to reach a verdict—*Clark v. Monsanto Co.*, Case No. 20STCV46616 (L.A. Cnty.)—came to the opposite conclusion and found that Monsanto was not liable.  Indeed, the jury in *Clark* was asked the same question on causation that the jury in *Hardeman* was asked and reached the opposite conclusion. *Compare* White Decl., Ex. 17, Hardeman, Phase 1 Verdict Form (jury responding affirmatively to the question whether "exposure to Roundup was a substantial factor in causing [Plaintiff Hardeman's] non-Hodgkin's lymphoma") *with* White Decl., Ex. 1, 10/5/21 Trial Tr. in *Clark v. Monsanto* at 2027:3-9 ("We the jury answer the question submitted to us as follows: 1). Was Ezra Clark's exposure to Roundup a substantial factor in causing his Burkitt's lymphoma?  'No.'").  Permitting Plaintiff to cherry-pick a favorable jury finding and import that finding into this case to preclude Monsanto from asserting its causation defense would be fundamentally unfair to Monsanto in light of the much more recent jury verdict in favor of Monsanto (in which the jury had the benefit of hearing some of the more recent and updated science regarding glyphosate).  *See, e.g., Sandoval v. Super. Ct.*, 140 Cal. App. 3d 932, 943-44 (1983) ("We agree with the commentators to the extent at least that, where there are extant determinations that are inconsistent on the matter in issue, it is a strong indication that the application of collateral estoppel would work an injustice.  There seems to be something fundamentally offensive about depriving a party of the opportunity to litigate the issue again when he has shown beyond a doubt that on another day he prevailed.") (quoting *State Farm Fire & Cas. Co. v. Century Home Compon., Inc.*, 550 P.2d 1185, 1191 (Or. 1976)); *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 776-77 (9th Cir. 2003) ("Because of the inconsistent judgments and therefore potential unfairness to [defendant], we hold that the district court correctly exercised its discretion here by refusing to apply offensive non-mutual collateral estoppel and deciding the issue on the merits.").

*Second*, the use of offensive collateral estoppel in mass tort litigation to preclude a defendant like Monsanto from raising a defense based on a verdict in an early trial undermines the sound judicial policy associated with the mass tort trial process.  There are currently thousands of cases pending nationwide in which individuals allege that exposure to Roundup caused their cancer.  Allowing offensive use of the *Hardeman* verdict here would undermine the central purpose trials serve in mass

tort litigation, which is to gather representative information necessary to facilitate resolution of the broader universe of cases:

> The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar . . . . The reasons for acceptance by bench and bar are apparent. If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts.

*In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997); *see also In re Hanford Nuclear Reservation Litig.*, 497 F.3d 1005, 1014 (9th Cir. 2007) ("The [bellwether] trial . . . focused on six plaintiffs ... who were representative of the larger group. The purpose of the trial was to promote settlement and bring long-overdue resolution to this litigation.").

These concerns have led courts to repeatedly avoid offensive collateral estoppel in the mass tort setting.  As one court stated, "only 'a decentralized process of multiple trials, involving different juries, and different standards of liability, in different jurisdictions' will yield the information needed for accurate evaluation of mass tort claims."  *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1020 (7th Cir. 2002) (quoting *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299 (7th Cir. 1995)); *see also In re Hanford Nuclear Reservation Litig.,* 534 F.3d 986, 1008 (9th Cir. 2008) ("We recognize that the results of the Hanford bellwether trial are not binding on the remaining plaintiffs."); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 443 (5th Cir. 2001) ("[N]o matter how creative the procedural avenue, and in spite of the fact that this litigation would benefit from a uniform approach, at almost every turn this circuit has rejected attempts at aggregation and issue preclusion in asbestos cases."); *Kramer v. Showa Denko K.K.*, 929 F. Supp. 733, 750-71 (S.D.N.Y. 1996) (refusing to apply collateral estoppel based on a pharmaceutical products liability verdict because such a case "typically involves individualized circumstances peculiar to that case alone . . . . Such factual idiosyncrasies necessarily prevent a single finding from one such case to be applied to all other cases in cookie-cutter fashion.").  Offensive use of the *Hardeman* verdict in this case would frustrate the maturation of this mass tort litigation, would be unfair to Monsanto, and would not "constitute[] sound judicial policy."  *Lucido*, 51 Cal. 3d at 343.

**Finally**, as discussed above, it would be unfair to apply collateral estoppel in this case on the issue of general causation because the science on glyphosate is constantly evolving.  Faced with a

virtually identical motion for partial summary judgment on the issue of general causation in a products liability case involving a different product, the Middle District of Georgia refused to apply the doctrine because doing so would "freeze science in place . . . without taking into account subsequent advances." *Clark v. SmithKline Beecham*, No. 7:06-cv-30, 2006 WL 3329141, at *3 (M.D. Ga. Nov. 15, 2006) (Rejecting motion for partial summary judgment as to issue preclusion of general causation and noting that the question of "whether it would be wise for this Court to freeze science in place from a 2001 verdict without taking into account subsequent advances" was "[p]articularly troubling to the Court."). The District of Utah likewise rejected a very similar argument, noting that "it is contrary to public policy to allow a single jury verdict to brand an entire product defective throughout the country, particularly when there exists a significant and ongoing debate in the scientific and medical community about the issues involved in this and other [related] cases." *Coburn v. Smithkline Beecham Corp.*, 174 F. Supp. 2d 1235, 1241 (D. Utah 2001); *see also Estate of Van Dyke by Van Dyke v. GlaxoSmithKline*, No. 05-CV-153-J, 2006 WL 8430904, at *3-5 (D. Wyo. Nov. 1, 2006) (refusing to apply collateral estoppel on the issue of general causation).

The same exact thing can be said about the science surrounding the safety of glyphosate and Roundup. As discussed above, several new regulatory and scientific papers have been issued in recent years, altering the scientific and legal landscape of the causation inquiry in this litigation. Moreover, as the plaintiff's causation experts acknowledged in September of this year in a Roundup trial that is currently ongoing, there is still "not a consensus within the medical community that Roundup causes lymphoma" and critically that "not many scientists agree with [the view espoused by Plaintiff] that [Roundup] is a cause" of NHL. *See* White Decl., Ex. 19, 9/9/21 Trial Tr. in *Stephens v. Monsanto* at 60:1-61:21 (Dr. Boyd testifying for the plaintiff). In situations such as this, where there clearly is no scientific consensus that Roundup is capable of causing cancer and where Plaintiff's view is admittedly a minority one amongst scientists, it would be remarkably unfair to Monsanto to preclude it from asserting its causation defense in this case. *See, e.g., In re TMI Litig.*, 193 F.3d 613, 726-27 (3d Cir. 1999) (holding it was error for the district court to apply collateral estoppel to claims of illness arising from radiation exposure when there was not yet any scientific consensus on precise dose levels necessary to cause illness); *Richards v. Marshall*, No. 2009-23, 2013 WL 1901637, at *5 (D.V.I. May

8, 2013) (declining to apply collateral estoppel to issue of general causation where "there is not as yet a clear consensus in the scientific community" on the relevant issue).

## IV.    CONCLUSION

Offensive use of the *Hardeman* causation verdict (or any other Roundup trial verdict) to deprive Monsanto of its complete causation defense in this case or future cases in the MDL is improper under California collateral estoppel law and would undermine the progression of this nationwide mass tort litigation.  For the foregoing reasons, Monsanto respectfully requests that this Court deny Plaintiff's meritless collateral estoppel motion.

Dated:  November 10, 2021                    Respectfully submitted,

                                             /s/ *Jed P. White*
                                             Jed P. White
                                             Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of November, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Jed P. White*
Jed P. White

MONSANTO'S OPPOSITION TO PLAINTIFF'S MSJ RE: ISSUE PRECLUSION AND GENERAL CAUSATION