UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION

Case No. 16-MD-2741-VC

THIS DOCUMENT RELATES TO

Bundy v. Monsanto, 20-cv-06345-VC
_____/

**PLAINTIFF, ROBERT BUNDY'S REPLY TO MONSANTO'S MEMORANDUM IN OPPOSITION TO ROBERT BUNDY'S SECOND MOTION FOR LEAVE TO AMEND COMPLAINT TO JOIN ADDITIONAL PARTY DEFENDANT, AND FOR REMAND DUE TO A LACK OF DIVERSITY**

COMES NOW, Plaintiff, Robert Bundy, by and through his undersigned counsel, and files this Reply to Monsanto's Memorandum in Opposition to Robert Bundy's Motion for Leave to Amend Complaint to Join Additional Party Defendant, and for Remand Due to a Lack of Diversity, and would state:

I.  **Introduction and brief facts.**

On or about November 5, 2021 Plaintiff filed his second motion for leave to amend complaint and add party defendant and for remand. In the proposed amended complaint Plaintiff identifies M&W Supply, Inc. ("M&W Supply") as the party responsible for selling to Plaintiff much if not most of the Roundup Plaintiff was exposed to. Plaintiff further identifies NKC Enterprises, Inc. ("NKC") as the party responsible for Plaintiff's damages against M&W Supply as successor in interest to M&W Supply. Plaintiff sought leave of the Court to amend his Complaint to 1) join M&W Supply and NKC as a party defendants, and 2) raise claims for strict liability against M&W Supply for distributing/selling an inherently dangerous product and against NKC as successor in interest to M&W Supply. The Plaintiff further argued that, upon the joinder of M&W Supply and NKC, both Florida for profit corporations, as a party Defendants, diversity jurisdiction will no longer exist, such that the case must be remanded back

to the Circuit Court in and for Sarasota County, Florida.

Monsanto has filed its Memorandum in Opposition to Plaintiff's Motion for Leave to Amend Complaint to Join Additional Party Defendant, and for Remand Due to a Lack of Diversity. In it, Monsanto claims that joinder of M&W Supply and NKC is improper. As will be discussed below, Monsanto has simply ignored or misapplied the federal caselaw authority and the facts which give rise to the challenged motion.

## II.   Discussion.

Monsanto's substantive argument against Plaintiff's motion can be boiled down to the following arguments: Monsanto contends the Plaintiff has not overcome the Court's prior concern of unexplained delay in requesting joinder, Monsanto contends the Plaintiff has not overcome the Court's prior concern that joinder was intended solely to defeat federal jurisdiction and Monsanto contends the Plaintiff's arguments regarding the other factors at issue in a Section 1447(e) analysis lack merit. As will be discussed below, each of these arguments ignores or misunderstands the import of the facts which give rise to the motion for leave to amend.

> 1. **The Plaintiff has overcome the Court's prior concern of unexplained delay in requesting joinder. (Factor 3)**

Monsanto states in its opposition that Plaintiff's discussion regarding the delay in requesting joinder resulting as a result of Plaintiff's exploration of the medical causation issue outlined in its second motion for leave to amend "misses the mark". Monsanto contends that Plaintiff should have had a good faith basis prior to filing suit and that whatever conclusion Plaintiff reached regarding medical causation would apply to any retailer defendant. While this is true, Monsanto's argument engages in a faulty analysis. Monsanto would have the Court hold that a plaintiff attempting to amend after removal may only do so against those the plaintiff was unaware of at the filing of the initial compliant. This is simply not the standard. The Plaintiff's

arguments in its second motion for leave to amend overcome any legitimate concern regarding the delay when initially moving to add M&W Supply. Yes, the Plaintiff knew of M&W Supply's existence when it filed its initial complaint. Without revealing work product or in depth case strategy, certainly one of the reasons a plaintiff, including this Plaintiff, may elect to sue only Monsanto in these cases would be to attempt to simplify the litigation and seek a reasonable early resolution or settlement. As explained in the second motion for leave to amend, not only was this early resolution not reached but Monsanto also raised a new medical causation issue. These events occurred shortly after the Plaintiff filed his initial Complaint. It was at this point that Plaintiff had reason to believe it was unlikely to obtain a reasonable early resolution in this matter and began to consider what, if any, additional parties would be needed. It was also not until this point in time, again after the initial Complaint was filed, that Plaintiff was made aware of this medical causation issue. Plaintiff elected, in a decision that was both responsible and ethical, to make sure that the newly discovered medical causation issue was not a problem with the Plaintiff's medical causation in this case prior to moving to add M&W Supply. Plaintiff immediately went out and obtained additional expert opinion to address this issue and then immediately went forward with attempting to add M&W Supply. As Monsanto points out in its opposition, whatever conclusion he reached regarding medical causation would also apply to any retailer defendant. Once this medical causation issue was resolved, Plaintiff wasted no time in moving to add M&W Supply. In short, there is nothing suspicious about the timing. Section 1447(e) analysis was never designed to punish plaintiffs for not suing everyone in their initial complaint. The Defendant has suffered no prejudice regarding the delay and the vast majority of the delay was caused by the Plaintiff responsibly ensuring they have sufficient causation evidence before electing to bring in a defendant.

Monsanto's arguments are even more displaced as it relates to NKC. The Plaintiff was completely unaware of the existence of NKC until October 2021. The Plaintiff was completely

unaware of the facts which give rise to Plaintiff's cause of action against NKC until October 2021. Monsanto states that Plaintiff had time to conduct a pre-suit investigation and could have theoretically discovered NKC prior to filing suit. Whether true or not, this is irrelevant as this is not the standard Plaintiff is held to under Section 1447(e). Counsel for Plaintiff had no reason to suspect the existence of NKC or the facts which form the basis for NKC's liability to the Plaintiff and therefore no reason to search for the existence of NKC. It was only by chance, when happening upon an active webpage for "M&W Supply", that this information was suspected. Thereafter, it was immediately investigated and the subsequent motions were filed. The Plaintiff's second motion for leave to amend was filed within weeks of the information which forms the basis of its claims against NKC becoming known to the Plaintiff which explains the delay in suing NKC. This factor weighs in favor of allowing amendment.

2. **Plaintiff has overcome the Court's prior concern that joinder was intended solely to defeat federal jurisdiction. (Factor 4)**

Monsanto invites the Court to engage in conjecture and ascribe bad motives to Plaintiff's second motion to amend. The Plaintiff has explained the timeline behind its actions and objectively demonstrated, by filing the state court action against M&W Supply and NKC, that these claims are not brought just to defeat jurisdiction. Plaintiff is obviously motivated to avoid the inefficiency and expense of multiple actions.[1] Monsanto states that because the claims raised in the proposed Second Amended Compliant could have been brought in the original complaint there must be improper motive behind the requested amendment. This is, again, not in and of itself the proper standard for the Court's analysis. While this is a factor for the Court to consider, Monsanto argues as if it dispositive. This argument also ignores the fact that

---

[1] "On this record, the Court cannot conclude that Plaintiffs motives are anything other than avoidance of the inefficiency and expense of multiple actions." Palestini v. Gen. Dynamics Corp., 193 F.R.D. 654, 658 (S.D. Cal. 2000)

Plaintiff could not have sued NKC as Plaintiff did not know of NKC's existence, or the facts which give rise to NKS's liability to the Plaintiff, when the initial complaint was filed.

"[C]ourts have found that the plaintiffs did not have an improper motive when the plaintiffs' explanations rested on concerns such as efficiency or recently discovered involvement in the case. See, e.g., Palestini, 193 F.R.D. at 658 (efficiency concerns); Walsh, 2006 WL 2884411 at *4. Additionally, where a plaintiff alleged that an additional defendant had a role in the underlying actions at issue in the case, the court "decline[d] to impute an improper motive." IBC, 125 F. Supp. 2d at 1012." Mudra Int'l, LLC v. Kellwood Co., Inc., No. CV0803642DDPJCX, 2008 WL 11336465, at *4 (C.D. Cal. Sept. 16, 2008). As explained above, that is exactly what occurred in the instant matter. The initial decision to not include M&W Supply was a result of an attempted efficient early resolution, the vast majority of the delay was due to Plaintiff responsibly investigating a newly discovered medical causation issue and there was no real delay in Plaintiff attempting to sue NKC. M&W Supply and NKC had direct roles in the underlying issues in the case and there is nothing improper about Plaintiff suing them.

Monsanto's argument places far too much emphasis on attempting to have the Court engage in supposition regarding Plaintiff's motives. "Suspicion of diversity destroying amendments is not as important now that § 1447(e) gives courts more flexibility in dealing with the addition of such defendants. See Trotman, 1996 WL 428333 at *1 ("The legislative history to § 1447(e) ... suggests that it was intended to undermine the doctrine employed by some courts that amendments which destroyed diversity were to be viewed with suspicion."); see also HR Rep No 889, 100th Cong, 2d Sess 72, reprinted in 1988 U.S.C.C.A.N. 6033 (stating purpose of § 1447(e) is to "take advantage of the opportunity opened by removal from a state court to permit remand if a plaintiff seeks to join a diversity-destroying defendant after removal")" IBC

Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V., 125 F. Supp. 2d 1008, 1012 (N.D. Cal. 2000). Plaintiff has articulated its reasons, which clearly demonstrate that its motives are not purely to defeat federal jurisdiction. This factor weighs in favor of allowing amendment.

    3.    **The Plaintiff's arguments regarding the other factors at issue in a Section 1447(e) also weigh in favor of granting amendment.**

As this Court is aware, "Under §1447(e), courts consider several factors in determining whether joinder should be permitted, including: (1) whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would preclude an original action against the new defendants in state court; (3) whether there has been unexplained delay in requesting joinder; (4) whether joinder is intended solely to defeat federal jurisdiction; (5) whether the claims against the new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff." San Jose Neurospine v. Cigna Health & Life Ins. Co., No. 16-CV-05061-LHK, 2016 WL 7242139, at *7 (N.D. Cal. Dec. 15, 2016).

Sections 1 and 2 of this reply address factors 3 and 4. Monsanto essentially attempts to have the Court ignore Plaintiff's further arguments regarding the other factors because Monsanto believes the "predicament about which the Plaintiff complains is one of his own making because he could have, but failed to sued M&W and NKC when he filed this lawsuit in state court." [Document 14321]. This argument is simply irrelevant as it relates to the Court's analysis of the remaining factors (1,2,5, and 6) and ignores the fact that the Plaintiff could not sue NKC as he was not aware of NKC's existance.

    a.    **M&W Supply and NKC are needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a). (Factor 1)**

The first factor, whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a), heavily favors allowing amendment.

"In other words, a necessary party is one who has an interest in the controversy and who "ought to be made a party in order that the court may act on the rule which requires it to decide and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." CP Nat'l Corp. v. Bonneville Power Admin., 928 F.2d 905, 912 (9th Cir. 1991) (internal quotation marks and citation omitted). In general, the rule is "designed to protect" parties from multiple litigation and inconsistent obligations. Id. at 912."Mudra Int'l, LLC v. Kellwood Co., Inc., No. CV0803642DDPJCX, 2008 WL 11336465, at *3 (C.D. Cal. Sept. 16, 2008) "Federal Rule of Civil Procedure 19 requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests or would subject any of the parties to the danger of inconsistent obligations." Clinco v. Roberts, 41 F.Supp.2d 1080, 1082 (C.D. Cal. 1999); Fed. R. Civ. P. 19(a). However, while courts consider the standard set forth under Rule 19 in determining whether to permit joinder under section 1447(e), **amendment under § 1447(e) is a less restrictive standard than for joinder under [Rule 19]**." IBC Aviation Services, Inc. v. Compania mexicana de Aviacion, S.A. de C.V., 125 F.Supp.2d 1008, 1011–12 (N.D. Cal. 2000). "**The standard is met when failure to join will lead to separate and redundant actions**," but it is not met when "defendants are only tangentially related to the cause of action or would not prevent complete relief." Id. at 1012." Marin v. FCA US LLC, No. 2:21-CV-04067-AB-PDX, 2021 WL 5232652, at *2 (C.D. Cal. Nov. 9, 2021). (*Emphasis added*)

The facts in <u>Marin v. FCA</u> were very similar to the instant case. There, Marin filed an initial lawsuit against the manufacturer and, five months later and four months after removal to

federal court, sought to amend to add claims against the dealership which would defeat the federal court's diversity jurisdiction. In Marin v. FCA the court found the claims against the dealership and manufacturer involved the same vehicle and same defects and were both related to Marin's claimed injuries. Likewise, Plaintiff's claims against Monsanto and M&W Supply and NKC involve the same unreasonably dangerous substance, the same medical causation analysis, and the same claimed injuries. Like in Marin v. FCA, the resolution of the lawsuit against Monsanto and M&W Supply and NKC "would require many of the same documents and witnesses and implicate many of the same factual and legal issues." Id. Significantly the court found, "were joinder denied and Plaintiff required to pursue his claim against BCDJR in a separate action in state court, that action would be redundant to this action. This factor weighs in favor of granting the amendment." Again, should Plaintiff be denied he would be forced to pursue his claims in the separate state action which would be redundant to this action. Even more than being merely redundant, there would be the very real risk of inconsistent verdicts as the fundamental issue, whether or not Roundup caused Plaintiff's cancer, will have to be tried twice. This factor weighs in favor of granting the amendment.

      b.    **The statute of limitations would not preclude an original action against the new defendants in state court. (Factor 2)**

The analysis regarding statute of limitations in Plaintiff's motion for leave to amend admittedly relates more directly towards the fifth factor, whether the claims against the new defendants appear valid. In analyzing the second factor, the "[c]ourts also look to whether the statute of limitations would preclude an action against the new defendants in state court. Where the statue of limitations has expired before the federal court has determined it will relinquish jurisdiction, the jurisprudence counsels in favor of amendment and remand rather than forcing the plaintiffs to abandon their claims altogether. Mudra Int'l, LLC v. Kellwood Co., Inc., No.

CV0803642DDPJCX, 2008 WL 11336465, at *6 (C.D. Cal. Sept. 16, 2008). The intent of this factor is primarily to weigh in favor of allowing amendments in situations where denial would force a plaintiff to abandon their claims all together and not necessarily influence the Court to deny amendment simply because a statute of limitations had not run. While this factor technically weighs against amendment, like in Mudra Int'l, LLC v. Kellwood Co., Inc., "the other factors more helpful in exercising its discretion pursuant to § 1447(e). See March Order at 7 ("Although the statute of limitations from bringing fraud claims against Yelverton and Wong in state court has not run ... the Court finds that requiring Plaintiff to bring a separate suit against Yelverton and Wong would unnecessarily duplicate litigation and risk inconsistent results."). *Id. See also* "Second, even though a state court action against Mr. Connolly might be possible,2 requiring IBC to litigate essentially the same issues in two forums would be a waste of judicial resources and risks inconsistent results." IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V., 125 F. Supp. 2d 1008, 1012 (N.D. Cal. 2000)

  c. **The claims against the new Defendants are valid. (Factor 5)**

As discussed in Plaintiff's second motion for leave to amend, the claims against M&W Supply and NKC are valid. The relevant law unquestionably allows the Plaintiff to hold the retailers participating in the chain of commerce liable for his injuries. This includes dissolved corporations (M&W Supply) and their successors in interest (NKC). Plaintiff's claims against these defendants are not barred by any statute of limitations and are otherwise completely valid. Monsanto does not appear to challenge that and this factor weighs in favor of granting amendment.

  d. **Whether denial of joinder will prejudice the Plaintiff.**

Denial of joinder would unquestionably prejudice the Plaintiff. Like in IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V., "denying the amendment would require Plaintiff to choose between redundant litigation arising out of the same facts and

involving the same legal issues or foregoing its potential claims against Mr. Connolly, while allowing amendment will not prejudice the Defendants as discovery has not yet begun." IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V., 125 F. Supp. 2d 1008, 1013 (N.D. Cal. 2000).[2]

Monsanto argues that because they remain in the case and are a potential source of payment that there is no prejudice against Plaintiff. Assuming the continued solvency of Monsanto, even including sums set aside for Roundup verdicts, as a potential source of payment in light of the thousands of people killed or seriously injured by Monsanto's choosing to protect its profits over the lives of its consumers (and the thousands of existing and potential lawsuits Monsanto is facing as a result) may soon become a bad assumption. However, even assuming Monsanto is around to be a source of payment this ignores the other sources of prejudice against the Plaintiff. As discussed above, forcing a Plaintiff to pursue two separate lawsuits in virtually any circumstance is prejudicial. In cases like these involving rich powerful defendants, extremely complex medical causation issues, redundancy of evidence and issues, and the emotionally tolling damages involving facing death from cancer, the prejudice is amplified to extreme levels. This factor clearly weighs in favor of granting amendment.

### III. Conclusion.

In sum, Monanto's argument against allowing amendment amounts to little more that their contention that M&W Supply and NKC could have been sued in the original complaint and a request for the Court to impugn improper motives against the Plaintiff as a result. This argument ignores the fact that Plaintiff could not have sued NKC because the Plaintiff was unaware of the existence of NKC and was unaware of the facts that give rise to NKC's liability

---

[2] The first, and to date only, discovery specific to this Plaintiff requested by Monsanto is the requested deposition of the Plaintiff which will not occur until January 7, 2022.

to the Plaintiff when the original compliant was filed. Indeed, Plaintiff was unaware of NKC until just weeks before he filed his second request to amend. This argument also ignores the totality of the analysis of the relevant factors weigh in favor of granting amendment.

The First factor, which is a less restrictive standard than for joinder under [Rule 19][3], weighs in favor of granting amendment. This standard is met when failure to join will lead to separate and redundant actions - as would unquestionably occur in this case should joinder be denied. The Second factor, while slightly weighing against amendment, is less the helpful than the other factors in the Court's analysis of the instant case. The Third factor also weighs in favor of amendment. The delay in joining M&W Supply was due to a reasonable attempt to resolve the matter expeditiously and a reasonable investigation into a newly discovered medical causation issue. Significantly, there was no real delay in attempting to join NKC. The Fourth factor also weighs in favor of granting amendment. This factor requests the Court to determine if joinder is intended to **solely** defeat federal jurisdiction. Plaintiff's motives in avoiding having to pursue multiple lawsuits in different jurisdictions over the same facts, to have all liable parties held accountable and to have additional parties participate in settlement discussions all establish the Fourth factor in favor of allowing amendment. The Fifth factor is in favor of amendment. While Monsanto does not appear to argue strenuously against this factor, that should not undermine the importance this factor must play in the Court's analysis. These claims are completely valid and the Court should allow the Plaintiff to pursue them in the same case. Finally, the Sixth factor strongly weighs in favor of amendment. Litigating any case twice,

---

[3] "Although courts consider whether a party would meet Fed. R. Civ. Proc. 19's standard for a necessary party, amendment under § 1447(e) is a less restrictive standard than for joinder under Fed. R. Civ. Proc. 19. See Trotman v. United Parcel Service, 1996 WL 428333, *1 (N.D.Cal.1996)" IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V., 125 F. Supp. 2d 1008, 1011–12 (N.D. Cal. 2000)

simultaneously, in multiple forums, would usually create prejudice against a plaintiff. Here, where the Plaintiff would have to litigate extensively the same issues, against powerful defendants, face the possibility of inconsistent verdicts, incur significant additional costs, face extremely challenging and complex medical causation issues, and face the emotional toll of a case involving his cancer and facing death - the prejudice would be extreme. For these reasons Plaintiff requests the Court grant his Second Motion for Leave to Amend Complaint to Join Additional Party Defendant and for Remand Due to a Lack of Diversity.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on November, 23, 2021, and was provided via email to Anthony N. Upshaw, Esq. and Melissa R. Alvarez, Esq., McDermott Will & Emery, LLP 333 SE 2nd Avenue, Suite 4500, Miami, FL 33131 (aupshaw@mwe.com) and (malvarez@mwe.com) and Joe G. Hollingsworth, Esq., Hollingsworth LLP, 1350 I Street N.W., Washington, D.C. 20005 (jhollingsworth@hollingsworthllp.com).

**ICARD, MERRILL, CULLIS, TIMM,
FUREN & GINSBURG, P.A.**
2033 Main Street, Suite 600
Postal Drawer 4195
Sarasota, Florida 34230
(941) 366-8100 - Phone
(941) 366-6384 - Fax

_____
ANTHONY J. MANGANIELLO, III, ESQ.
Florida Bar No. 0052307
*Attorneys for Plaintiff, BUNDY*