GILLIAN L. WADE (State Bar No. 229124)
MARC A. CASTANEDA (State Bar No. 299001)
Milstein, Jackson Fairchild & Wade, LLP
gwade@mjfwlaw.com
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, CA 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

*Attorneys for Plaintiffs* (*additional counsel listed on signature page*)

JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036
Tel:  (202) 282-5000
Fax:  (202) 282-5100

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4030
Fax: (202) 847-4005

*Attorneys for Defendant* (*additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT GILMORE, et al.,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>MONSANTO COMPANY,<br><br>　　　　Defendant. | MDL No. 2741<br><br>Case No. 3:21-cv-08159<br><br>**NOTICE OF MOTION AND JOINT MOTION FOR SUGGESTION OF REMAND TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**<br><br>Date:　　January 6, 2022<br>Time:　　10:00 a.m.<br>Place:　　Via Zoom Webinar<br>Judge:　　Hon. Vince G. Chhabria |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on January 6, 2022, at 10:00 a.m., via Zoom Webinar ID: 161 285 7657, Password: 547298, Plaintiffs Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kristy Williams ("Plaintiffs") and Defendant Monsanto Company ("Defendant") (collectively, the "Parties") jointly move this Court for an order suggesting remand of this action to the transferor court, the United States District Court for the District of Delaware. The Motion will be based on this Notice and Motion, the Memorandum of Points and Authorities below, and the [Proposed] Order submitted herewith.

Dated: November 30, 2021

          By:   /s/ Gillian L. Wade

          GILLIAN L. WADE
          MARC A. CASTANEDA
          Milstein, Jackson Fairchild & Wade, LLP
          gwade@mjfwlaw.com
          mcastaneda@mjfwlaw.com
          10990 Wilshire Blvd., 8th Floor
          Los Angeles, CA 90024

          *Counsel for Plaintiffs*

          /s/ John J. Rosenthal

          JOHN J. ROSENTHAL
          Winston & Strawn LLP
          jrosenthal@winston.com
          1901 L Street NW
          Washington, DC 20036

          *Counsel for Monsanto Company*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

      A.      The Formation of This MDL ............................................................................ 2

      B.      This Action (and Its Predecessors) Were Litigated Outside This MDL. ........ 3

LEGAL STANDARDS ........................................................................................................ 6

ARGUMENT ......................................................................................................................... 7

I.      The Proposed Settlement Will Not Release the Personal-Injury Claims in This MDL ................................................................................................................... 8

II.     Given the Differences Between This Case and The Other Cases in the MDL, and This Case's Procedural Posture, Remand is More Efficient. ............................ 10

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re: Am. Home Realty Network, Inc., Multiple Listing Serv. Copyright Infringement Litig.*,
939 F. Supp. 2d 1372 (J.P.M.L. 2013) ..................................................................................12

*Biddle v. Lowe's Home Ctrs. LLC*,
No. 50-2019-CC-011405 (filed Aug. 27, 2019) ......................................................................3

*Boyette et al. v. Lowe's Cos., Inc.*,
No. 4:19-cv-04119 (W.D. Ark.) (filed Sept. 13, 2019) ...........................................................4

*Ezcurra v. Monsanto Co.*,
No. 20-13341 (11th Cir., Sept. 3, 2021) ..................................................................................9

*Fagundes v. The Home Depot*,
No. 0:20-cv-61035 (S.D. Fla.) (filed Mar. 21, 2020) ..............................................................3

*Gregorio et al. v. Home Depot U.S.A., Inc.*,
No. CACE-21-002428 (filed Feb. 4, 2021) .............................................................................4

*Hanna et al. v. Walmart, Inc.*,
CIV SB 2100789 (Super. Ct. Cal. for San Bernardino) (filed Jan. 12, 2021) .........................4

*Hanna et al. v. Walmart Inc.*,
No. 5:20-cv-01075 (C.D. Cal.) (filed May 22, 2020) ..............................................................4

*Harnish v. Widener Univ. Sch. Of Law*,
833 F.3d 298 (3d Cir. 2016) ..................................................................................................10

*In re Holiday Magic Sec. & Antitrust Litig.*,
433 F. Supp. 1125 (J.P.M.L. 1977) .........................................................................................7

*In re IBM Peripheral EDP Devices Antitrust Litig.*,
407 F. Supp. 254 (J.P.M.L. 1976) ...........................................................................................7

*Jewell et al. v. Walmart, Inc.*,
No. 4:19-cv-04088 (W.D. Ark.) (filed Aug. 12, 2019) ...........................................................4

*Lamerson v. Walmart Stores, Inc.*,
No. 50-2019-CC-009139 (filed July 15, 2019) .......................................................................3

*Morley v. Ace Hardware Corp.*,
No. CONO-19-010648 (filed Sept. 6, 2019) ...........................................................................3

*In re: Moroccanoil Trademark Litig.*,
   777 F. Supp. 2d 1340 (J.P.M.L. 2011)..................................................................................12

*In re Ocwen Loan Servicing, LLC, Fair Debt Collection Pracs. Act (FDCPA) Litig.*,
   988 F. Supp. 2d 1367 (J.P.M.L. 2013)..................................................................................13

*In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*,
   2012 WL 1899798 (S.D. Cal. May 24, 2012).........................................................................7

*In re Roundup Prods. Liab. Litig.*,
   214 F. Supp. 3d 1346 (J.P.M.L. 2016)....................................................................................2

*In re Roundup Prods. Liab. Litig.*,
   MDL No. 2741 (J.P.M.L. Jul. 15, 2021)............................................................................5, 6

*Shelly v. Target Corp.*,
   No. 50-2019-CC-010718 (filed Aug. 14, 2019) .....................................................................3

*Taylor et al. v. Costco Wholesale Corp.*,
   No. 20-cv-00655 (E.D. Cal.) (filed Mar. 27, 2020) ................................................................4

*In re Teamster Car Hauler Prod. Liab. Litig.*,
   856 F. Supp. 2d 1343 (J.P.M.L. 2012)..................................................................................11

*Tomlinson v. Monsanto Co.*,
   No. 1916-CV22788 (Jackson Cty, Mo. Jul. 20, 2021) .......................................................4, 8

*In re Toyota Motor Corp. Prius HID Headlamp Prod. Liab. Litig.*,
   754 F. Supp. 2d 1380 (J.P.M.L. 2010)..................................................................................13

*In re United Healthcare Servs., Inc. Harvoni (Ledipasvir & Sofosbuvir) Health Ins. Litig.*,
   222 F. Supp. 3d 1339 (J.P.M.L. 2016)..................................................................................12

*Waters v. Home Depot USA, Inc.*,
   No. 50-2019-CC009140 (filed July 15, 2019) ........................................................................3

*Webb v. Monsanto Co.*,
   No. 3:20-cv-05624-VC ...........................................................................................................5

*Weeks et al. v. Lowe's Home Ctrs.*,
   LLC, No. 2:19-cv-06828 (C.D. Cal.) (filed Aug. 6, 2019)......................................................4

*Weeks v. Home Depot*,
   2:19-cv-06780 (C.D. Cal.) (filed Aug. 8, 2019) .....................................................................4

*Weeks v. Home Depot USA, Inc.*,
  No. 2:1-cv-06780-JWH-AS (9th Cir. Jun. 29, 2021) .................................................................. 9

*Williams et al. v. Lowe's Home Ctrs., LLC*,
  No. 5:20-cv-01356 (C.D. Cal.) (filed July 6, 2020) .................................................................. 4

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................................................ 11, 13

Panel Rule 10.1(b) ............................................................................................................................ 6

Panel Rule 10.2(a) ............................................................................................................................ 6

Panel Rule 10.2(b) ............................................................................................................................ 6

Panel Rule 10.3(a)(i-ii) ..................................................................................................................... 7

## INTRODUCTION

In transferring this consumer-protection action to this Court, the Judicial Panel on Multidistrict Litigation ("JPML") concluded that whether transfer was appropriate was a "close call," but found that this Court was in the best position to assess whether the proposed settlement would interfere with these proceedings and whether consolidation would yield efficiency gains. To that end, and as expressly noted by the JPML, this Court has the authority to suggest remand of this action to the transferor court is appropriate.

The Parties have reached a nationwide settlement of claims that purchasers of Monsanto's consumer glyphosate-based products allegedly suffered economic loses (i.e., paid more for the products than they otherwise would have) because of the failure to disclose the products' alleged link to cancer, or, at the very least, the ongoing controversy surrounding the products' alleged health risks. While there is some factual overlap with the issues presented in this MDL, this matter has been settled and a motion for preliminary approval is fully briefed in the District of Delaware and awaiting decision. As a result, while the Parties do not believe the JPML should have transferred this case, they agree this Court has ample information to determine that remand is appropriate.

Litigating this action here will not net any efficiency gains. Plaintiffs have already moved for preliminary approval before the transferor court, under Third Circuit law, and their motion is ripe for decision if this Court determines remand is appropriate. The settlement does not address issues such as whether the products in fact cause cancer, nor does it impact issues of liability or causation central to this MDL. The transferor court would be considering only whether the proposed settlement is fair, reasonable, and adequate based on the alleged product overcharges—an issue not otherwise being litigated in this MDL. Litigating the proposed settlement in this forum

would thus only further complicate these MDL proceedings, increase expenses, and delay settlement-approval proceedings and payments to the settlement class.

The proponents of transfer incorrectly contended before the JPML that transfer is necessary to protect the interests of plaintiffs in the personal injury actions currently before the MDL. But as the Parties have repeatedly clarified by word and action, the proposed settlement would *not* interfere with, impact, or release the personal injury claims consolidated in this MDL.[1] The Court should therefore suggest that the JPML remand this case to the transferor court.

## BACKGROUND

### A.    The Formation of This MDL

In 2016, the JPML created this MDL, consolidating twenty-one actions alleging personal injury, specifically Non-Hodgkin Lymphoma ("NHL"), allegedly caused by Monsanto's glyphosate-based Roundup® products.  Transfer Order, *In re Roundup Prods. Liab. Litig.*, 214 F. Supp. 3d 1346 (J.P.M.L. 2016).  Among the common factual allegations identified by the JPML were contentions that plaintiffs "developed [NHL] after using Roundup over the course of several or more years." *Id.* at 1348.

Since then, the JPML has transferred over three thousand more personal injury cases to this MDL for pretrial proceedings.  *See* JPML Dkt. No. 2396.  Before this case, the JPML had only slightly broadened the criteria for inclusion in this MDL, to include personal injury cases alleging that plaintiffs had developed certain haematopoietic cancers similar to NHL.  *See generally* JPML

---

[1] Tomlinson, one of the two proposed intervenors and a proponent of transfer, is not a party in federal court because his case was filed in Missouri state court. Thus, regardless of whether the Court retains or transfers this action, the *Tomlinson* matter will remain in state court in Missouri. Tomlinson argued before the transferor court that there are "indicia of collusion" and that the settlement was reached as result of a "reverse auction."  But those allegations are entirely unsupported, as the Parties already explained in their respective briefing to the transferor court. Dkt. Nos. 46-47.

Dkt. No. 757. Like the original actions transferred to this MDL, however, those cases alleged that plaintiffs or their decedents "developed [cancer] as a result of exposure to Monsanto's glyphosate-based herbicides." JPML Dkt. No. 2027; *see also* JPML Dkt. No. 2741 (transferring case alleging medical monitoring damages because of alleged increased risk of developing NHL).

### B. This Action (and Its Predecessors) Were Litigated Outside This MDL.

In August 2020, Scott Gilmore filed this action in the District of Delaware, alleging economic harm under the Delaware Consumer Fraud Act on behalf of himself and a putative nationwide class of purchasers of Monsanto's consumer glyphosate-based Roundup® products. Dkt. No. 1. Unlike the cases composing this MDL, Plaintiffs have never alleged personal injuries. *See generally* Dkt. No. 22. Plaintiffs do not claim they contracted NHL, or any other type of cancer or illness, from exposure to those products. Nor do they seek damages deriving from current or future personal injuries. Instead, this is one of several cases filed in state and federal courts around the country alleging violations of state consumer-protection, breach of warranty, and false advertising laws related to the marketing and sale of Monsanto's Roundup® products. All assert solely economic loss resulting from plaintiffs' purchases, claiming that plaintiffs did not receive the benefits of their bargains. Since July 2019, plaintiffs have brought more than a dozen similar actions against Monsanto and various large retailers of glyphosate-containing Roundup® products, all of which have been litigated outside this Court.[2]

---

[2] *Lamerson v. Walmart Stores, Inc.*, No. 50-2019-CC-009139 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.) (filed July 15, 2019); *Shelly v. Target Corp.*, No. 50-2019-CC-010718 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.) (filed Aug. 14, 2019); *Biddle v. Lowe's Home Ctrs. LLC*, No. 50-2019-CC-011405 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.) (filed Aug. 27, 2019); *Morley v. Ace Hardware Corp.*, No. CONO-19-010648 (Cnty. Ct. 17th Cir. in and for Broward Cnty., Fla.) (filed Sept. 6, 2019); *Waters v. Home Depot USA, Inc.*, No. 50-2019-CC009140 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.) (filed July 15, 2019); *Fagundes v. The Home Depot*, No. 0:20-cv-61035 (S.D. Fla.) (filed Mar. 21, 2020); *Hanna et al. v. Walmart, Inc.*, CIV SB 2100789 (Super. Ct. Cal. for San Bernardino) (filed Jan. 12, 2021) ("Hanna II");

In June 2021, following years of litigation, the Parties executed a proposed nationwide settlement. Plaintiffs then moved for Preliminary Approval with the transferor court. Dkt. No. 24. The proposed settlement would create a fund between $23 million and $45 million against which Class Members can submit claims for around 20 percent of the average retail prices for Monsanto-manufactured glyphosate-based consumer products they bought during the Class Period. Dkt. No. 59-1 §§ D-E. As noted above, Plaintiffs did *not* bring claims for personal injury or for medical monitoring in this action, or any of the related actions that preceded it. The proposed settlement therefore expressly excludes such claims from the scope of its release. *See id.* §§ (A)(32), (A)(41), (L)(1).

After the proposed settlement was filed with the transferor court, Ryan Tomlinson and Carol Richardson ("*Tomlinson* Plaintiffs"), represented by counsel in a Missouri state class action asserting claims that partially overlap with this action, filed a letter with the transferor court stating that they would oppose settlement approval and were also considering asking the JPML to transfer this action to this Court. Dkt. No. 34. They then moved to intervene to oppose preliminary approval, and the matter is fully briefed. Dkt. Nos. 39, 41. The transferor court did not rule on the intervention motion before the JPML transferred this case.

Soon after the *Tomlinson* Plaintiffs moved to intervene, Jason Rinehart—the named plaintiff in a different class action pending in Missouri state court asserting medical monitoring

---

*Gregorio et al. v. Home Depot U.S.A., Inc.*, No. CACE-21-002428 (Cnty. Ct. 17th Cir. in and for Broward Cnty., Fla.) (filed Feb. 4, 2021); *Weeks et al. v. Lowe's Home Ctrs.*, LLC, No. 2:19-cv-06828 (C.D. Cal.) (filed Aug. 6, 2019); *Weeks v. Home Depot*, 2:19-cv-06780 (C.D. Cal.) (filed Aug. 8, 2019); *Jewell et al. v. Walmart, Inc.*, No. 4:19-cv-04088 (W.D. Ark.) (filed Aug. 12, 2019); *Boyette et al. v. Lowe's Cos., Inc.*, No. 4:19-cv-04119 (W.D. Ark.) (filed Sept. 13, 2019); *Taylor et al. v. Costco Wholesale Corp.*, No. 20-cv-00655 (E.D. Cal.) (filed Mar. 27, 2020); *Hanna et al. v. Walmart Inc.*, No. 5:20-cv-01075 (C.D. Cal.) (filed May 22, 2020) ("Hanna I"); *Williams et al. v. Lowe's Home Ctrs., LLC*, No. 5:20-cv-01356 (C.D. Cal.) (filed July 6, 2020); *Tomlinson v. Monsanto Co.*, No. 1916-CV22788 (Jackson Cty., Mo.) (filed Aug. 19, 2019).

4

claims—filed a purported opposition to preliminary approval, asserting that the proposed settlement improperly seeks to release medical monitoring claims. Dkt. No. 37. On July 14, 2021, Monsanto submitted a letter to the transferor court explaining, among other things, that the Parties did not intend the proposed settlement to release such claims. Dkt. No. 49. Monsanto's letter noted that it was working with Plaintiffs to revise the settlement to make this clearer in the proposed release, and that it had spoken with Rinehart's counsel, who agreed this amendment would address his concerns. *Id.* On July 26, 2021, Rinehart moved to intervene "in an abundance of caution," but stated his motion would be moot once the Parties amended the settlement to make clear that medical monitoring claims were not within the scope of the release. Dkt. No. 53 at 2.

In July 2021, Brian Webb (represented by the Fears Nachawati firm), the plaintiff not in this case but in the separate case of *Webb v. Monsanto Co.*, No. 3:20-cv-05624-VC, filed a notice of potential tagalong action with the JPML seeking to transfer this matter into the MDL. *In re Roundup Prods. Liab. Litig.*, MDL No. 2741 (J.P.M.L. Jul. 15, 2021), JPML Dkt. No. 2381. Webb then moved to transfer. Despite clear language in the proposed settlement agreement excluding "Personal Injury Claims" from the scope of the release, Webb asserted that the settlement would result in a "release of claims by almost all MDL plaintiffs." JPML Dkt. No. 2400.

In August 2021, Plaintiffs' counsel filed a supplemental memorandum with the transferor court attaching an amended proposed settlement agreement. Dkt. 59. The amendments made it absolutely clear the release excludes medical monitoring claims. Dkt. 59-1 §§ A(32), L(1). And although the proposed settlement had always expressly stated it did not release personal injury claims, the amendments also included revised language further clarifying that the release excludes claims alleging personal injury or any damages (economic or otherwise) arising from personal injury. *Id.* §§ A(41), L(1).

5

In October 2021, the JPML issued an order transferring this case to this Court. JPML Dkt. No. 2488. The Panel stated the transfer motion presented a "close question" and that transfer would "introduce[] new types of claims" to the MDL, but determined transfer was still warranted. *Id.* at 2-3. The Panel based its ruling in large part on the contention by proponents of transfer that the proposed settlement "will directly impact plaintiffs and claims in MDL No. 2741" and "operates to release a significant portion of claims in the MDL actions." *Id.* at 1. The Panel also noted that proponents of transfer "characterize the proposed settlement in *Gilmore* as an 'end run' around the transferee judge, who recently denied a proposed class settlement of future personal injury claims." *Id.* at 2-3. The Panel did not address the merits of these arguments; instead, it observed that "[t]he transferee judge is best placed to determine whether the proposed *Gilmore* class settlement will affect the actions and claims in the MDL." *Id.* at 3. The Panel also noted that "should the transferee judge determine that the continued inclusion of *Gilmore* is not warranted, ***he can suggest remand with a minimum of delay***." *Id.* (citing Panel Rules 10.1–10.3) (emphasis added).

## LEGAL STANDARDS

Panel Rule 10.1(b) allows the Panel to remand a consolidated action "upon [] the transferee court's suggestion of remand." Panel Rule 10.2(a) provides that "[u]pon the suggestion of the transferee judge or the Panel's own initiative, the Clerk of the Panel shall enter a conditional order remanding ['CRO'] the action or actions to the transferor district court," which is delivered to the clerk of the transferee court if no party to the litigation objects within seven days. If a party does object, the Clerk of the Panel sets a briefing schedule before the Panel. Panel Rule 10.2(b). If the Clerk of the Panel does not enter a CRO, the parties seeking remand are directed to file with the Panel a motion including "[a]n affidavit reciting whether the movant has requested a suggestion

6

of remand and the judge's response. . ." and "[a] copy of the transferee district court's final pretrial order, if entered." Panel Rule 10.3(a)(i-ii).

The Panel places "great weight on the transferee judge's determination that remand of a particular action at a particular time was proper." *In re IBM Peripheral EDP Devices Antitrust Litig.*, 407 F. Supp. 254, 256 (J.P.M.L. 1976). This is "because the transferee judge. . . supervises the day-to-day pretrial proceedings." *In re Holiday Magic Sec. & Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977). "In determining whether to issue a suggestion for remand to the MDL Panel," district courts are "guided by the standards for remand employed by the MDL Panel." *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, 2012 WL 1899798, at *1 (S.D. Cal. May 24, 2012). "[W]hether remand is appropriate is left to the court's discretion and generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL." *Id*. (citations omitted). This is the case, "for example, when everything that remains to be done is case-specific." *Id*.

## ARGUMENT

Remand here is appropriate. The proposed settlement specifically carves out the personal injury claims at the core of the MDL, including those brought in the *Webb* case pending in this Court, and so the only issue currently being litigated (and likely the only issue ever to be litigated) in this action—whether the proposed nationwide settlement of false advertising cases is fair, reasonable, and adequate—is highly case-specific. Remand also creates efficiencies in this case. If this Court does not suggest remand, the Parties would need to re-brief under Ninth Circuit law issues already briefed in the transferor court. And even if the transferor court ultimately does not approve the proposed settlement (or any other iteration of the settlement) and the Parties return to

7

litigation on the merits, the bulk of pretrial proceedings would still differ significantly from the other cases in this MDL, requiring separate tracks and undermining any potential efficiency gains.

**I.      The Proposed Settlement Will Not Release the Personal-Injury Claims in This MDL.**

The proposed settlement's plain language contradicts Webb's contention that the proposed settlement will interfere with or release the claims in other cases in this MDL.  This is a consumer-protection class action that seeks purely economic damages related to the purchase of certain glyphosate-based Roundup® products based on allegations that class members were harmed *at the point of purchase* because they did not receive the benefits of their bargains.  Dkt. No. 22 ¶¶ 134-35.  To be a member of the proposed settlement class, one needs only to have bought the product. *Id.* ¶ 137.  The post-purchase use, exposure, and manifestation of personal injuries allegedly caused by the products are not elements of Plaintiffs' claims, and the named Plaintiffs do not allege that they have suffered any personal injury.  This case thus differs significantly from the personal injury claims at the core of this MDL.

Because of these differences, the proposed settlement has always expressly carved out personal injury claims.[3]  While some plaintiffs in the MDL may fall within this Settlement Class,

---

[3] After the Parties explained in their filings with the JPML that the proposed settlement would not release personal-injury claims, the proponents of transfer changed tack in reply, arguing that the Parties, even if they were not trying to *release* personal injury cases, are trying to *stay* such claims, including in this MDL.  That too is incorrect.  The Parties are not seeking a stay of any personal injury claims.  *E.g.*, Dkt. No. 64 at 1 & n.2 ("[A]s the Parties have repeatedly made clear … they are *not* seeking a stay of personal-injury claims, including Movants' claims…. Movants' reading of the Settlement Agreement and the Parties' requested stay is especially untenable because … it would mean that thousands of cases in the Roundup Products Liability MDL No. 2741 would also be surreptitiously stayed.  That is *not* what the Parties have asked for and it is not their intent.") (emphasis in original).  In fact, all active, related cases regarding similar claims of economic loss related to the marketing and sale of Monsanto's consumer Roundup® products of which the Parties are aware have already been stayed by the courts in which they are venued.  Order for Stay, *Tomlinson v. Monsanto Co.*, No. 1916-CV22788 (Jackson Cty, Mo. Jul. 20, 2021) (staying proceedings pending settlement proceedings in this matter); Order, *Ezcurra v. Monsanto Co.*, No. 20-13341 (11th Cir., Sept. 3, 2021) (*same*); *Weeks v. Home Depot USA, Inc.*, No. 2:1-cv-06780-

the release extends *only* to false advertising cases, breach of contract and breach of warranty cases, and claims (other than personal injury and medical monitoring claims) seeking to recover for economic loss or injury. *Id.* § (L)(1). The release specifically provides that it does *not* include any claims for personal injury or any alleged losses, economic or otherwise, flowing therefrom. *See* Dkt. No. 59-1 §§ (A)(32), (A)(41), (L)(1). Specifically, the proposed settlement defines "Personal Injury Claims" as:

> Claims that assert a right to recover damages for the actual physical injury or illness of a natural person or that seek to recover compensatory, punitive, or exemplary damages, or attorney's fees, allegedly resulting or arising from the actual physical injury or illness of a natural person, including, for example, claims for mental or physical pain or suffering; emotional or mental harm; loss of enjoyment of life; loss of wages, income, earnings, or earning capacity; medical expenses; doctor, hospital, nursing, or drug bills; loss of support, services, consortium, companionship, society, or affection; damage to familial relations; and wrongful death and survival actions.

*Id.* § (A)(41). The proposed settlement also separately defines "Medical Monitoring Claims" as "Claims that seek to require, or recover damages amounting to the costs of, medical monitoring or screening for potential physical injury or illness of a natural person." *Id.* § (A)(32).

The proposed settlement states repeatedly that the release of claims excludes such "Personal Injury Claims" or "Medical Monitoring Claims":

> ***[T]his release does not release any Personal Injury Claims or Medical Monitoring Claims.*** To the extent that any action or proceeding includes both Personal Injury Claims or Medical Monitoring Claims and Claims that would otherwise be released by this Agreement, ***the Personal Injury Claims and/or Medical Monitoring Claims will not be deemed released***, but the other Claims will be released. By way of example, if a Class Member brought an action asserting that he or she bought and used Roundup® products that failed to warn of an alleged risk of Non-Hodgkin Lymphoma and that this caused them to develop Non-Hodgkin Lymphoma, and sought to recover damages for their physical injury, for lost wages, and for medical bills, ***neither that Personal Injury Claim nor the related damages (including economic damages such as lost wages or medical bills) would be released by this Settlement.*** For further avoidance of doubt, this release shall apply to

---

JWH-AS (9th Cir. Jun. 29, 2021), Dkt. No. 19 (temporarily closing the docket for administrative purposes to facilitate settlement).

> Claims (***other than Personal Injury Claims and Medical Monitoring Claims***) arising from, resulting from, or in any way relating to or in connection with a Class Member's purchase or use of the Products in the past, present, or future.

*Id.* § (L)(1).  The proposed settlement does not affect personal injury claims in the MDL (or otherwise).[4]

## II. Given the Differences Between This Case and The Other Cases in the MDL, and This Case's Procedural Posture, Remand is More Efficient.

Understanding the differences between this case and the other actions in the MDL, and the folly in the argument that the proposed settlement would release personal injury claims, any potential efficiencies from proceeding in this Court fall away.

Before the JPML, Webb argued transfer was appropriate because this case arises from similar factual issues as the cases in the MDL.  But this case involves significantly different questions of causation and injury.  While there is some factual overlap regarding Monsanto's marketing, labeling, and sale of glyphosate-based Roundup® products, the common issues end there.  Plaintiffs here propose only to prove that Monsanto caused them to suffer an *economic* injury by inducing them to purchase the Products, which they allege are worth less than the economic benefits for which they bargained.  *See Harnish v. Widener Univ. Sch. Of Law*, 833 F.3d 298, 308 (3d Cir. 2016) (economic damages under "benefit-of-the-bargain" theory is available

---

[4] The *Tomlinson* Plaintiffs, as part of their attempt to convince the transferor court to permit them to intervene because the settlement is allegedly "collusive," argued without support that the proposed settlement is an effort to "get around" this Court's denial of the proposed settlement in *Ramirez*. Dkt. Nos. 39, 41.  That makes no sense.  First, the Parties mediated and reached a preliminary agreement on terms *before* this Court had expressed any view on the amended *Ramirez* settlement.  *Compare* Dkt. No. 25 at 11 (Parties reached an agreement in principle in the early-morning hours of February 17, 2021) *with* MDL Dkt. No. 13069 (May 18, 2021 Order from this Court laying out its "big picture concerns" with the proposed *Ramirez* settlement).  The settlement thus *could not* have aimed to avoid this Court's ruling in *Ramirez*—that ruling had not yet happened.  Secondly, the scope and effect of the proposed settlement and the settlement proposed in *Ramirez* are dramatically different.  Unlike *Ramirez*, this case does not release any claim for personal injury or medical monitoring (nor any punitive damages related to them).

under the DCFA). Plaintiffs in the MDL, on the other hand, must prove that their use or exposure to glyphosate caused them to develop cancer. Those injuries are not based on any damage at the point of purchase, but each plaintiff's use of the products and exposure to Monsanto's products *after* purchase. In prior cases, the JPML has refused to centralize proceedings where the "injuries suffered vary among the actions." *In re Teamster Car Hauler Prod. Liab. Litig.*, 856 F. Supp. 2d 1343, 1343 (J.P.M.L. 2012).

To the extent that there is factual overlap between this case and the other cases in the MDL, remand is still warranted given the procedural posture of this case. Before transfer, the transferor court had already been presented with a motion for preliminary approval, three motions to intervene along with the Parties' responses, and an amended settlement agreement. The *only* substantive question currently at issue is whether the proposed settlement satisfies Rule 23's requirements. The transferor court need not—and was never asked to—adjudicate whether Monsanto's glyphosate-based Roundup® products in fact pose the health risks alleged in the complaint.

Given this procedural posture, there is little to be gained (other than delay) from this case proceeding in this MDL. The adequacy of the settlement based on the Delaware consumer-protection statute and Delaware common law raises issues that have not been litigated in this MDL. This case was settled after years of litigating related matters, extensive negotiations (with the case pending in Delaware and in the shadow of Third Circuit law), and the filing of a motion for preliminary approval. There simply is nothing "efficient" about re-briefing under Ninth Circuit law and familiarizing this Court with these issues when the parties have already extensively briefed the issues before the transferor court.

Even if the transferor court were to not approve the settlement (the Parties of course believe it should) or any subsequent iteration of the settlement and litigation thus proceeded on the merits, much of the necessary discovery and relevant issues would not overlap with the other MDL actions. Issues of causation, materiality, injury, and damages are all significantly different here than in a personal injury action. Separate pretrial tracks would be needed, and further delays would be likely. *See In re United Healthcare Servs., Inc. Harvoni (Ledipasvir & Sofosbuvir) Health Ins. Litig.,* 222 F. Supp. 3d 1339, 1340–41 (J.P.M.L. 2016) ("[C]ase-specific issues are likely to undermine the alleged efficiencies that could be gained from centralizing. . . ."); *In re: Moroccanoil Trademark Litig.,* 777 F. Supp. 2d 1340, 1341 (J.P.M.L. 2011) (despite "existence of some factual overlap among the actions," unique and individualized factual issues including as to "extent of damages" rendered "centralization particularly inconvenient and unattractive").

Finally, the Panel often finds that where alternatives to transfer are feasible, consolidation is unnecessary. That is the case here. If, after remand, issues arise that require coordination between the MDL and this action, there is no reason the parties cannot (and indeed they have in the past) informally coordinate to avoid any duplication or inefficiency. There is a common Defendant, and plaintiff firms in each proceeding are and have been in communication. And even if this were not the case, the utility of transfer and consolidation could be revisited later. *See In re: Am. Home Realty Network, Inc., Multiple Listing Serv. Copyright Infringement Litig.,* 939 F. Supp. 2d 1372, 1373 (J.P.M.L. 2013) (if "voluntary coordination is unsuccessful, the parties may file another Section 1407 motion, and the Panel may revisit the question of centralization at that time").

In sum, because the Parties have designed the proposed settlement to carve out personal injury claims, the issues remaining for litigation are specific to this case and remand is appropriate.

Given the limited overlap between this case and the personal injury cases, any potential efficiency gains, even if the settlement were not approved, are both speculative and likely outweighed by the other complications, delay, and expense that keeping this case in the MDL would cause—particularly when alternatives to consolidation are available.[5]  While transfer was only recently granted, this Court is adequately positioned to "determine that the continued inclusion of *Gilmore* is not warranted," and should "suggest remand with a minimum of delay" before any further briefing or other unnecessary effort and expense occurs.  JPML Dkt. No. 2488.

## CONCLUSION

For these reasons, this Court should grant this motion requesting a suggestion of remand of this action to the United States District Court for the District of Delaware.

Dated:  November 30, 2021

---

[5] Plaintiffs in this MDL will not be prejudiced by remand.  Even if they are members of the proposed Settlement Class, they can object to or opt out of the proposed settlement before the transferor court under Rule 23's normal procedures.  *See In re Ocwen Loan Servicing, LLC, Fair Debt Collection Pracs. Act (FDCPA) Litig.*, 988 F. Supp. 2d 1367, 1368 (J.P.M.L. 2013). ("If plaintiffs who have not participated in settlement discussions wish to object to or opt out of the proposed settlement, there are suitable mechanisms in place by which they may do so without the need for centralization."); *In re Toyota Motor Corp. Prius HID Headlamp Prod. Liab. Litig.*, 754 F. Supp. 2d 1380, 1381 (J.P.M.L. 2010) (transferring an action because of Movant's objection to a settlement "does not advance the purposes of Section 1407[, because] [t]here are more suitable mechanisms in place by which class members can object to or opt out of a class settlement").

By: /s/ Gillian L. Wade

GILLIAN L. WADE
MARC A. CASTANEDA
Milstein, Jackson Fairchild & Wade, LLP
gwade@mjfwlaw.com
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, CA 90024

JOEL OSTER
Oster Law Firm
Of Counsel to the Law Offices of Howard Rubinstein
joel@osterlaw.com
22052 W. 66th St. #192
Shawnee, Kansas 66226

*Attorneys for Plaintiffs Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kristy Williams*

/s/ John J. Rosenthal

JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036

RAKESH KILARU
Wilkinson Stekloff LLP
rkilaru@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036

*Counsel for Monsanto Company*

14