John W. Raggio (SBN: 338261)
**FEARS NACHAWATI, PLLC**
5473 Blair Road
Dallas, Texas 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712

*Counsel for Interested Party Brian Webb*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Gilmore v. Monsanto Company,*<br><br>Case No. 3:21-cv-08159 | MDL No. 2741<br>Case No. 3:16-md-02741-VC<br><br>**BRIEF IN OPPOSITION TO JOINT MOTION FOR SUGGESTION OF REMAND**<br><br>Re: Dkt. No. 14261<br><br>Date: January 6, 2022<br>Time: 10:00 AM<br>Place: Via Zoom Webinar<br>Judge: Honorable Vince Chhabria |

## TABLE OF CONTENTS

I.   FACTUAL AND PROCEDURAL BACKGROUND ............................................................ 1

II.  LEGAL STANDARD ........................................................................................................... 3

III. ANALYSIS ............................................................................................................................ 4

   a.  The Joint-Stay Request Necessitates Consolidation. ............................................................ 5

   b.  The Factual and Legal Overlap Necessitates Consolidation................................................ 6

   c.  Convenience of the Parties and Ability to Monitor. ............................................................ 8

IV. CONCLUSION ..................................................................................................................... 8

Brief In Opposition to Joint Motion for Suggestion of Remand
Case No. 16-md-02741-VC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aqueous Film-Forming Prods. Liab. Litig.*,
    MDL No. 2873, 2021 WL 755083 (J.P.M.L. Feb. 4, 2021) ......................................................3

*In re Ins. Brokerage Antitrust Litig.*,
    360 F.Supp.2d 1371 (J.P.M.L. 2005)........................................................................................3

*In re Midland Credit Mgmt. Inc., Tel. Consumer Prot. Act Litig.*,
    No. 11-md-2286-MMA, 2020 WL 7687866 (S.D. Cal. Nov. 20, 2020) .............................4, 5

*In re Multi-Piece Rim Prods. Liab. Litig.*,
    464 F. Supp. 969 (J.P.M.L. 1979)............................................................................................4

*In re Proton-Pump Inhibitor Prods. Liab. Litig. (No. II)*,
    261 F. Supp. 3d 1351 (J.P.M.L. 2017).....................................................................................5

*In re Roundup Prods. Liab. Litig.*,
    MDL No. 2741 (J.P.M.L. Oct. 8, 2021).............................................................................3, 4, 6

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab.
    Litig.*,
    363 F. Supp. 3d 1378 (J.P.M.L. 2019).....................................................................................5

**Statutes & Rules**

Del. Code Ann. tit. 6, §§ 2511 *et seq.* .............................................................................................1

J.P.M.L. R. 7.1(a)...............................................................................................................................3

J.P.M.L. R. 10.3(a).............................................................................................................................3

On November 30, 2021, Plaintiffs Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kirsty Williams (collectively "the Gilmore Plaintiffs"), together with Defendant the Monsanto Company jointly moved the Court for an order suggesting remand of this action to the United States District Court for the District of Delaware.  Dkt. # 14261.  Because this Court is in the best position to determine issues of class certification, class settlement preliminary approval, and stays of all related litigation—in a putative class action centered upon the toxicity of Monsanto's Roundup products—the Court respectfully should deny the joint request for suggestion of remand.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Mr. Gilmore commenced his putative class-action against Monsanto on August 19, 2020, in the United States District Court for the District of Delaware.  Dkt. # 1 in case 1:20-cv-01085.  Even though the Gilmore Plaintiffs only assert a single claim for violation of the Delaware Consumer Fraud Act ("DCFA") Del. Code Ann. tit. 6, §§ 2511 et seq., there is substantial factual overlap between *Gilmore* and this MDL.

According to the very first paragraph of the Gilmore Plaintiffs' complaint, "[t]his case arises from Monsanto's wrongful conduct in connection with its manufacture, promotion, marketing, advertising, distribution, labeling, and sale of the Lawn and Garden herbicide Roundup®, which contains the active ingredient glyphosate and other chemicals, including the surfactant polyethoxylated tallow amine ("POEA")."  Dkt. # 1 in case 1:20-cv-01085 at ¶ 1.  Thus, the central factual issue presented in *Gilmore* is identical to that presented in this MDL.

The Gilmore Plaintiffs' complaint goes on to recite that "[a]t all relevant times, Monsanto was and is aware Roundup® has the potential to cause users to develop cancer. Monsanto is aware glyphosate is a Class 2A herbicide, meaning the World Health Organization's ("WHO")

Brief In Opposition to Joint Motion for Suggestion of Remand
Case No. 16-md-02741-VC

International Agency for Research on Cancer ("IARC") has determined it is probably carcinogenic to humans." *Id*. at ¶ 2.  Finally, the Gilmore Plaintiffs' complaint notes that "Monsanto is also aware California has classified glyphosate as a chemical known to cause cancer, such as Non-Hodgkin's lymphoma ("NHL")." *Id*. at ¶ 3.

The following allegations are central to the Gilmore Plaintiffs' consumer fraud action, which are premised on the same factual questions as those presented in this MDL.  "Specifically, Defendant failed to disclose—on the Roundup label, on its webpages, on in-store advertisements, and through other means of disclosure—Roundup's potential to cause cancer including, at the very least, the existence of an ongoing scientific debate as to whether exposure to Roundup can cause NHL in humans." *Id*. at ¶ 132.  "Plaintiff did not know exposure to Roundup has the potential to cause cancer at the time he purchased it. Plaintiff would not have purchased Roundup had he known it had the potential to cause cancer, or that there has been an ongoing scientific debate as to whether exposure to Roundup can cause NHL in humans." *Id*. at ¶ 136.

This factual overlap between *Gilmore* and the MDL is further reflected in Monsanto's simultaneous settlement efforts.  In their settlement papers, Monsanto and the Gilmore Plaintiffs noted that they held their single settlement mediation on February 16, 2021.  Dkt. # 27 at ¶ 6 in case 1:20-cv-01085.  Thus, they were actively negotiating this settlement at the same time that the proposed *Ramirez* class action was being negotiated and subsequently brought before this court for approval.  *See* Dkt. # 12531 (second motion for preliminary approval in *Ramirez* filed on February 4, 2021); # 13115 (second motion for preliminary approval in *Ramirez* denied on May 26, 2021).  Despite these overlapping attempts at global settlements, Monsanto never brought this action to this Court's attention, even though it involved many of the same allegations, including Monsanto's continued ability to use its current label.

Brief In Opposition to Joint Motion for Suggestion of Remand
Case No. 16-md-02741-VC

Thus, both *Gilmore* and this MDL turn on the same factual issues of whether Roundup has the potential to cause non-Hodgkin's lymphoma, whether Monsanto was aware of this fact but nevertheless continued to sell Roundup without an adequate warning, and the deficiencies in Monsanto's product labeling.  Despite this clear factual overlap, Monsanto failed to abide by its obligation under Joint Panel on Multidistrict Litigation ("JPML") Rule 7.1(a) to alert the Clerk of the Panel of the existence of this related action.  On October 8, 2021, the JPML granted movant Brian Webb's motion to transfer *Gilmore* to this MDL.  *In re Roundup Prods. Liab. Litig.*, MDL No. 2741 (J.P.M.L. Oct. 8, 2021).  In its order transferring *Gilmore* to this MDL, the JPML directed Monsanto to tag all actions related to *Gilmore* for potential inclusion in this MDL.  *Id*. at *3.

In order to promote judicial efficiency and avoid duplicative and potentially inconsistent proceedings, the Court respectfully should deny the joint request to suggest remand of *Gilmore* to the Delaware District Court, and instead should keep *Gilmore* in MDL 2741 for centralized pretrial proceedings as correctly ordered by the JPML.

## II.    LEGAL STANDARD

"Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer."  *In re Ins. Brokerage Antitrust Litig.*, 360 F.Supp.2d 1371, 1272 (J.P.M.L. 2005).  Furthermore, because the factual issues underpinning *Gilmore* and this MDL are the same, transfer was appropriate.  *See In re Aqueous Film-Forming Prods. Liab. Litig.*, MDL No. 2873, 2021 WL 755083 at *3 (J.P.M.L. Feb. 4, 2021) ("The critical issue under Section 1407 is whether [the to-be-included action] shares common questions of fact with the actions in the MDL.").

The JPML is reluctant to order remand absent a suggestion of remand from the transferee court.  J.P.M.L. Rules 10.3(a), 10.1(b).  A transferee court may suggest remand when it determines

that "any action or claim is, in fact, ready for trial, or otherwise ready for remand because the common pretrial proceedings pertaining to that action or claim have been completed and the action or claim would no longer benefit from inclusion in the coordinated or consolidated pretrial proceedings." *In re Multi-Piece Rim Prods. Liab. Litig.*, 464 F.Supp. 969, 975 (J.P.M.L. 1979).

"Remand is inappropriate ... when continued consolidation will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Midland Credit Mgmt. Inc., Tel. Consumer Prot. Act Litig.*, No. 11-md-2286-MMA, 2020 WL 7687866 at *4 (S.D. Cal. Nov. 20, 2020) (quotations omitted).

## III.   ANALYSIS

In their joint request for suggestion of remand, the Gilmore Plaintiffs and Monsanto largely revisit issues already decided by the JPML.  In its order transferring *Gilmore* to this MDL, the JPML found that "*Gilmore* involves many of the same factual questions regarding the alleged toxicity of Roundup, its potential to cause NHL, and Monsanto's failure to disclose this in its marketing." *In re Roundup Prods. Liab. Litig.*, MDL No. 2741 at *2 (J.P.M.L. Oct. 8, 2021).  The Panel noted that the Gilmore Plaintiffs and Monsanto's argument that there was no factual and legal overlap "presupposes that the proposed class settlement will be approved," with the Panel stating that it is not "in a position to predict the outcome of the *Gilmore* parties' motion for preliminary approval of the settlement. The complaint, on its face, raises common factual questions regarding the safety of Roundup and falls within the MDL's ambit." *Id*.

As regards the parties' motion for preliminary settlement approval, the JPML found that "[t]ransfer in this instance likely will result in significant added efficiencies. The transferee judge is best placed to determine whether the proposed *Gilmore* class settlement will affect the actions and claims in the MDL." *Id*. at *3.  Unlike this Court, who has overseen all aspects of federal

4

Roundup litigation since the MDL's inception, "[t]he Delaware court, in contrast, lacks this experience and would have to invest significant time and resources to decide the pending motion for preliminary approval of the *Gilmore* settlement. While transfer may entail some initial delay, the overall interests of justice and efficiency will be enhanced." *Id*. In fact, the Delaware court lacks any real experience in this litigation.

Finally, the Panel acknowledged that while including *Gilmore* will introduce additional claims into the MDL,

> we often have centralized personal injury actions with consumer class actions. *See, e.g., In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 363 F. Supp. 3d 1378, 1381– 82 (J.P.M.L. 2019) (centralizing consumer claims for economic damages with personal injury claims). The transferee judge has the discretion to employ separate tracks or other appropriate pretrial management techniques to address the unique issues presented by *Gilmore*. *See In re Proton-Pump Inhibitor Prods. Liab. Litig. (No. II)*, 261 F. Supp. 3d 1351, 1354– 55 (J.P.M.L. 2017).

*Id*. The Gilmore Plaintiffs and Monsanto's attempt to relitigate these issues already decided by the JPML should not be given credence.

The Panel has already correctly decided that *Gilmore* and this MDL involve significant factual overlap; the Delaware District Court lacks the benefit of this Court's vast experience with the Roundup litigation to decide the issue of preliminary-class-settlement approval; and overall judicial efficiency will be promoted if *Gilmore* remains within this MDL. For these reasons, and the additional two specific issues relating to the potential impact of the proposed class settlement on this MDL set forth below, the Court respectfully should decline the Gilmore Plaintiffs and Monsanto's joint request to suggest remand to the Delaware District Court.

### a. The Joint-Stay Request Necessitates Consolidation.

Relegated to a footnote in the Gilmore Plaintiffs and Monsanto's moving brief is the important issue of their previously-requested stay of all related litigation. In their joint motion

Brief In Opposition to Joint Motion for Suggestion of Remand
Case No. 16-md-02741-VC

previously filed with the Delaware District Court, both the Gilmore Plaintiffs and Monsanto seek

an order staying "all pending or future state and federal proceedings asserting Released claims."

Dkt. # 32 in case 1:20-cv-01085-MN.

By the Gilmore Plaintiffs and Monsanto's own admission in their moving brief, "there is

some factual overlap with the issues presented in this MDL." Dkt. # 14261 at p. 1. Furthermore,

they acknowledge that "[w]hile some plaintiffs in the MDL may fall within the Settlement Class,

the release extends only to false advertising cases, breach of contract and breach of warranty cases,

and claims (other than personal injury and medical monitoring claims) seeking to recover for

economic loss or injury." *Id*. at p. 9. Thus, by the Gilmore Plaintiffs and Monsanto's own

admission, plaintiffs in this MDL may fall within the settlement's release of claims for false

advertising, breach of contract, and breach of warranty to the extent they assert economic loss. In

that event, any case in this MDL asserting a potentially-released claim would be subject to at least

a partial litigation stay.

Retention of *Gilmore* in this MDL is therefore appropriate because any stay motion should

respectfully be considered by this Court, not the Delaware District Court in which no substantive

litigation has occurred.

### b.  The Factual and Legal Overlap Necessitates Consolidation.

The Gilmore Plaintiffs and Monsanto spend a significant portion of their briefing arguing

that the proposed settlement agreement's definition of "personal injury claims" means there is

insufficient factual and legal overlap between Gilmore and this MDL. First, as discussed above,

the JPML already found that sufficient factual overlap exists to warrant consolidation of *Gilmore*

with this MDL. *In re Roundup Prods. Liab. Litig.*, MDL No. 2741 at *2 (J.P.M.L. Oct. 8, 2021).

Second, in light of the collusive nature of the settlement reached between the Gilmore Plaintiffs

Brief In Opposition to Joint Motion for Suggestion of Remand
Case No. 16-md-02741-VC

and Monsanto—which occurred after a single mediation session without any motion practice or other litigation in the Delaware District Court—there is no reason to defer to the Gilmore Plaintiffs and Monsanto's proposed interpretation of the settlement agreement's release clauses.

Despite the Gilmore Plaintiffs and Monsanto's repeated assertions that *Gilmore* is solely a case involving economic loss related to the purchase price of Roundup, the proposed settlement agreement includes Paragraph L(1)(a), which broadly releases all claims related to Monsanto's false or misleading statements regarding the toxicity of Roundup,  Paragraph L(1)(b), which broadly releases all claims related to breach of contract or breach of warranty due to the health effects of Roundup, and Paragraph L(1)(c), which broadly releases all other economic losses or injuries—besides personal injuries and medical monitoring—related to Roundup's toxicity.  Dkt. # 59-1 at p. 23 in case 1:20-cv-01085-MN.

At a minimum, an ambiguity exists between the settlement agreement's definitional and substantive-release provisions.  This ambiguity is further complicated by the agreement's definition of "Personal Injury Claim" itself.  According to Paragraph A(41) of the proposed settlement agreement, "[i]t is expressly contemplated that a cause of action could include both Claims that are Personal Injury Claims and Claims that are not Personal Injury Claims."[1]  *Id*. at p. 7.  Thus, even if Monsanto and the Gilmore Plaintiff's interpretation of the contractual ambiguity is the correct one—a point Mr. Webb does not concede—then portions of a given claim could be wiped out by the broad settlement releases of Paragraphs L(1)(a)-(c) while portions of those claims could also be preserved under the definitions of "personal injury claim" and "medical monitoring claim."

---

[1] The definition of "Medical Monitoring Claim" contains the same language: "It is expressly contemplated that a cause of action could include both Claims that are Medical Monitoring Claims and Claims that are not Medical Monitoring Claims." Dkt. # 59-1 at ¶ A(32) in Case 1:20-cv-01085-MN.

Brief In Opposition to Joint Motion for Suggestion of Remand
Case No. 16-md-02741-VC

This splitting of causes of action into released and non-released portions would only further complicate the factual overlap between *Gilmore* and this MDL.  This necessitates retention of *Gilmore* in this MDL so the Court can take a universal approach to settlement issues affecting litigation involving all purchasers of Roundup products.  This is precisely why MDL consolidation exits in the first place.

### c.   Convenience of the Parties and Ability to Monitor.

Finally, there is also the issue of the convenience of the Parties and the ability to monitor the certification and settlement process.  By keeping *Gilmore* in the MDL, counsel for the personal injury plaintiffs, as well as counsel for the other class cases transferred to the MDL by the JPML, will all be able to weigh in on the motions for certification and approval without having to move to intervene in the action in Delaware, obtain local counsel, move for *pro hac vice*, etc., and will also allow them to monitor any proposed changes to the settlement agreement, class definition, and releases without substantial additional time and costs.

Further, as evidenced by the changes made in the proposed settlement to date, there is no assurance that the language of the releases, carve outs, etc. will remain the same as currently proposed.  It is very possible that through the preliminary approval process, changes may be made that might negatively affect personal injury plaintiffs' claims, particularly where even the currently proposed language contains ambiguities and contradictions. By keeping *Gilmore* in the MDL, not only the parties, but the Court, can monitor the approval process.

### IV.   CONCLUSION

As stated by the JMPL, this Court, with its vast experience, is best positioned to determine not only the issues of class certification and preliminary settlement approval, but also how those issues affect all other plaintiffs with cases currently pending in this MDL.  This is especially true

Brief In Opposition to Joint Motion for Suggestion of Remand
Case No. 16-md-02741-VC

when contrasted with the Delaware District Court, which has yet to issue any substantive rulings in this matter. Therefore, this Court respectfully should decline the Gilmore Plaintiffs and Monsanto's joint request to suggest remand of *Gilmore* to the Delaware District Court.


Dated: December 14, 2021                    Respectfully Submitted,

                                            */s/ John Raggio*
                                            John W. Raggio (SBN: 338261)
                                            jraggio@fnlawfirm.com
                                            N. Majed Nachawati (TX SBN: 24038319)
                                            mn@fnlawfirm.com
                                            S. Ann Saucer (LA SBN: 21368; TX: 00797885)
                                            asaucer@fnlawfirm.com
                                            Michael Gorwitz (MN SBN: 0400362)
                                            mgorwitz@fnlawfirm.com
                                            **FEARS NACHAWATI, PLLC**
                                            5473 Blair Road
                                            Dallas, Texas 75231
                                            Telephone: (214) 890-0711
                                            Facsimile: (214) 890-0712

                                            *Fears Nachawati, PLLC is counsel of record for Interested Party Brian Webb*