JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4030
Fax: (202) 847-4005

*Attorneys for Defendant*

(*Additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT GILMORE, et al., | MDL No. 2741 |
| Plaintiffs, | Case No. 3:21-cv-08159 |
| vs. | **DEFENDANT MONSANTO COMPANY'S REPLY TO BRIAN WEBB'S PURPORTED OPPOSITION TO THE JOINT MOTION FOR SUGGESTION OF REMAND TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE** |
| MONSANTO COMPANY, | |
| Defendant. | |
| | Date: January 6, 2022<br>Time: 10:00 a.m.<br>Place: Via Zoom Webinar<br>Judge: Hon. Vince G. Chhabria |

# INTRODUCTION

Non-party Brian Webb's purported "opposition" to suggestion of remand is both procedurally improper and substantively unpersuasive.

*First*, Webb's purported opposition is procedurally improper because he is not a party to this action and has not moved to intervene. For that reason alone, his "opposition" should be disregarded.

*Second*, Webb overstates the common issues between this case (seeking economic damages based on alleged overcharges) and the other cases in this MDL (asserting personal-injury claims). Webb also overstates the efficiencies of consolidation given the procedural posture of this case and its unique, case-specific issues of injury, causation, and damages.

*Third*, Webb's repeated suggestions that this case threatens the interests of plaintiffs in personal-injury cases ignores the plain text of the proposed settlement and the Parties' repeated, on-the-record assurances that neither the release nor a previously sought stay of related proceedings affects personal-injury claims in this MDL.

*Fourth*, Webb's suggestion that keeping this case in the MDL will serve the convenience of personal-injury plaintiffs lacks legal support. The convenience of non-parties who may wish to object to a class-action settlement is not a proper consideration under 28 U.S.C. § 1407. The Parties have *already addressed* legitimate concerns raised by plaintiffs with personal-injury claims by amending the proposed settlement, and, in any event, Rule 23 provides parties like Webb with procedural protections, including the ability to object or opt out—protections to which they will be equally entitled regardless of the venue in which this case proceeds.

The Judicial Panel on Multidistrict Litigation ("JPML") left to this Court the determination whether the proposed settlement would interfere with the MDL proceedings and whether continued consolidation would yield efficiency gains. It would not, and the Court should therefore suggest remand to the transferor court.

# ARGUMENT

**I.   WEBB'S "OPPOSITION" IS PROCEDURALLY IMPROPER BECAUSE WEBB IS NOT A PARTY AND DID NOT MOVE TO INTERVENE.**

Consolidation into an MDL does not eliminate the separate identities of the constituent cases. *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015). Parties in one case consolidated in an MDL are thus not automatically considered parties in all cases in that MDL. Likewise, prior to certification, putative class members are not parties to a class-action case. *See Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 297 (D.C. Cir. 2020) ("[P]utative class members … are *always* treated as nonparties.") (emphasis in original); *see also In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 169, n.3 (3d Cir. 2013) (holding that absent class members are not "parties to the underlying action"); *Rescigno v. Statoil USA Onshore Props., Inc.*, 2020 WL 3830931, at *6 & n.5 (M.D. Pa. Jul. 8, 2020) (finding that unnamed class members who have not intervened are "nonparties"). As such, a motion to intervene under Federal Rule of Civil Procedure 24 is the typical mechanism for such non-parties who believe their interests are affected by an action to be heard. *See U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 933 (2009) ("[I]ntervention is the requisite method for a nonparty to become a party to a lawsuit.").

Webb is not a party to or an intervenor in this action. At most, he suggests—in briefing before the JPML, but *not* in his "opposition" or anywhere else in this matter—that he is a member of the proposed settlement class. *See* Dkt. No. 2452 at 16 & n.37, *In re Roundup Prods. Liab. Litig.*, MDL No. 2741 (J.P.M.L. Aug. 26, 2021) [hereinafter "JPML Dkt. No."]. Moreover, Webb has not moved to intervene, and, therefore, his "opposition" should not be considered. Nor should this Court consider his brief a motion to intervene for purposes of opposing remand. Webb is identified only as an "interested party" (and only in his counsel's signature blocks). His brief generally references the purported interests of other plaintiffs in the MDL but conspicuously contains no description of *his claim* against Monsanto or how *his interests* could be affected by remand.[1] And assuming *arguendo* this Court were to consider his brief a request to intervene,

---

[1] Webb has no articulable basis to claim that his interests are uniquely affected—the only economic damages alleged in Webb's complaint derive from his personal injuries allegedly caused by

Webb has provided no basis for intervention under Rule 24. *See Glover v. Ferrero USA, Inc.*, 2011 WL 5007805, at *6 (D.N.J. Oct. 20, 2011) (denying motion to intervene by "non-parties to an action whose only interest in the action is its transfer or dismissal").

## II. WEBB OVERSTATES THE COMMON ISSUES BETWEEN THE MDL CASES AND *GILMORE* AND OVERLOOKS THE KEY CASE-SPECIFIC ISSUES THAT SUPPORT REMAND.

Even if this Court considered Webb's brief on the merits, it is unpersuasive. Webb first argues that the Motion tries to relitigate issues decided by the JPML (Opp'n at 4-5), but the JPML expressly recognized that *this Court* "is best placed to determine whether the proposed … settlement will affect the actions and claims in the MDL" and may "suggest remand with a minimum of delay" if it "determine[s] that the continued inclusion of *Gilmore* is not warranted." Dkt. No. 65 at 3. The JPML's order contemplated that this Court could examine the propriety of remand with fresh eyes, noting that transfer was a "close question." *Id.* at 2.

On the merits, as the opening brief explained, this case presents unique issues that are not present in other cases in this MDL and stands in a unique procedural posture, the combination of which eliminates any perceived efficiencies from consolidation. Webb all but ignores these differences in his brief.

*First*, Webb ignores the significant differences between this case and the personal-injury cases with regard to questions of injury, causation, and damages. To succeed on the merits here, Plaintiffs must prove that Monsanto caused them to suffer an economic injury by inducing them to purchase the Roundup® Products and that those products are worth less than the economic benefits for which they bargained. *See* Dkt. No. 22 ¶¶ 134, 161; *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 308 (3d Cir. 2016). That requires proof, on a classwide basis, that class

---

glyphosate and are therefore excluded from the release in the proposed settlement. *See* JPML Dkt. No. 2400-5 ¶ 197 (Webb Compl.) ("As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff developed NHL and suffered injuries that are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as economic hardship, including financial expenses for medical care and treatment.").

3

members paid more for the products than they would have had they known of the Roundup® Products' alleged cancer risks. Such proof typically entails economic evidence such as conjoint analyses or hedonic regressions that attempt to value a labeling or marketing claim or lack thereof—which is what Plaintiffs used here. *See* Dkt. No. 25 at 5 (describing Plaintiffs' expert's use of hedonic-regression analysis to estimate alleged price impact of alleged failure to warn). The plaintiffs in personal-injury cases in this MDL, on the other hand, must prove that their use or exposure to glyphosate caused them to develop cancer. Establishing injury and causation in those cases is largely a matter of scientific and medical evidence. Thus, while there is some factual overlap regarding the alleged health risks of the products, the common issues end there.

*Second*, Webb's argument that the Parties "presuppose[] that the proposed class settlement will be approved" (Opp'n at 4) misconstrues the Parties' arguments and the reality of this case. The *only* substantive question currently at issue is whether the proposed settlement satisfies Rule 23's requirements. Either this Court or the Delaware court will address that issue. If the settlement is approved (as it should be), there will be *no* common issues on the merits to be decided. But even if the proposed settlement is not approved (and assuming that any theoretical concerns with the settlement were not addressed by amendment), Webb overstates the common issues, which would yield few efficiency gains due to the unique issues of injury, causation, and damages described above and the need to re-brief the approval motion under Ninth Circuit law. *See In re United Healthcare Servs., Inc. Harvoni (Ledipasvir & Sofosbuvir) Health Ins. Litig.*, 222 F. Supp. 3d 1339, 1340-41 (J.P.M.L. 2016) ("[C]ase-specific issues are likely to undermine the alleged efficiencies that could be gained from centralizing…."); *In re Moroccanoil Trademark Litig.*, 777 F. Supp. 2d 1340, 1341 (J.P.M.L. 2011) (holding that despite "existence of some factual overlap among the actions," unique and individualized factual issues including as to "extent of damages" rendered "centralization particularly inconvenient and unattractive"). As a result, consolidation will not introduce significant efficiencies regardless of whether the settlement is approved.

### III. THE PROPOSED SETTLEMENT WILL NOT INTERFERE WITH OR RELEASE PERSONAL-INJURY CLAIMS.

#### A. The proposed settlement's release unambiguously excludes personal-injury claims and, thus, has no meaningful impact on the MDL plaintiffs.

Webb's argument that the proposed settlement's release requires continued consolidation because it impacts personal-injury claims in the MDL (Opp'n at 6-7) is contrary to the plain language of the proposed settlement and the Parties' repeated, on-the-record assurances that the agreement carves out personal-injury claims.

Webb first suggests that there is some "ambiguity" in the proposed settlement's release provisions that could "wipe[] out" "portions" of certain personal-injury claims[2] Opp'n at 7. But any purported ambiguity is not supported by the plain language of the Settlement. Webb, in fact, concedes that the release expressly carves out "Personal Injury Claims." *Id*. Webb claims that there is nonetheless ambiguity because Sections L(1)(a)-(c) "broadly release" certain categories of claims. *Id.* But Section L(1), which of course encompasses all of Sections L(1)(a)-(c), states that *all* of the release provisions exclude "Personal Injury Claims and Medical Monitoring Claims." Dkt. No. 59-1 § L(1). It then goes on, immediately after the subsections that Webb claims create ambiguity, to state, "For avoidance of doubt, this release *does not* release any Personal Injury Claims or Medical Monitoring Claims." *Id.* (emphasis added). This is not ambiguity. It is an express exclusion of personal-injury claims in the plainest terms possible.

Webb argues that there is further "ambiguity" because the proposed settlement recognizes that an action could include both released claims and unreleased claims. But that is only a

---

[2] Webb also suggests that the Court should not "defer to" the Parties' "proposed interpretation of the settlement agreement's release clauses" because "of the collusive nature of the settlement" they reached. Opp'n at 6-7. Such baseless suggestions are irrelevant to the motion before the Court and, in any event, could not impact the proposed settlement's plain language. Moreover, as Monsanto has previously explained, allegations that the Parties engaged in collusive negotiations are meritless and stem from the *Tomlinson* Plaintiffs' counsel's efforts to disrupt the proposed settlement and protect their own request for attorneys' fees in the Missouri state-court action. *E.g.*, Dkt. No. 47 at 1, 10-15.

*recognition* of the limitations of the proposed release. And, if there were any doubt, the settlement goes on to explain precisely what would happen in such a circumstance:

> To the extent that any action or proceeding includes both Personal Injury Claims or Medical Monitoring Claims and Claims that would otherwise be released by this Agreement, the Personal Injury Claims and/or Medical Monitoring Claims will not be deemed released, but the other Claims will be released. By way of example, if a Class Member brought an action asserting that he or she bought and used Roundup® products that failed to warn of an alleged risk of Non-Hodgkin Lymphoma and that this caused them to develop Non-Hodgkin Lymphoma, and sought to recover damages for their physical injury, for lost wages, and for medical bills, neither that Personal Injury Claim nor the related damages (including economic damages such as lost wages or medical bills) would be released by this Settlement.

*Id.*

As the Parties have explained *repeatedly*—and amended the agreement to dispel any confusion—the agreement *always* intended to and *does* carve out personal-injury claims. *See, e.g.*, Dkt. No. 59 at 2-3; Dkt. No. 64 at 2-3; Mov. Br. at 8-10. Webb is apparently unable to take "yes" for an answer.

To the extent that Webb has some other concern about the release, he fails to explain how that concern is relevant to the *remand* inquiry. He vaguely suggests that retaining this case would allow the Court to "take a universal approach to settlement issues affecting litigation involving all purchasers of Roundup products" (Opp'n at 8), but he does not explain what such an approach entails or why retaining this case would further that goal. To the extent federal cases assert Personal Injury Claims, those cases are *already* consolidated before this Court in the MDL. And to the extent any court must rule on the impact of the release on particular claims in any such cases (assuming the plaintiffs do not simply opt out of the settlement), it will be this Court, which can take a "universal approach" to interpreting the scope of the release in those cases. That does not require retaining this case.

B.  **The Parties have not sought and do not seek a stay of any personal-injury claims.**

Webb argues that the Parties previously requested that the transferor court stay related cases, that this stay would encompass personal-injury cases included in the MDL, and that "any stay motion" should therefore be decided by this Court. Opp'n at 5-6. This is wrong at every turn. In the first place, as the Parties have previously explained, they do not seek a stay from this Court because (1) they recognize this Court's preference that the assigned judge determine whether to stay related cases, and (2) all pending, related cases of which they are aware have already been stayed by the courts in which they are venued. *See* Dkt. No. 68 at 2 n.2; Order for Stay, *Tomlinson v. Monsanto Co.*, No. 1916-CV22788 (Jackson Cty, Mo. Jul. 20, 2021); Order, *Ezcurra v. Monsanto Co.*, No. 20-13341 (11th Cir., Sept. 3, 2021); *Weeks v. Home Depot USA, Inc.*, No. 2:1-cv-06780-JWH-AS (9th Cir. June 29, 2021), Dkt. No. 19.

But even focusing only on the stay the Parties previously sought from the transferor court, Webb ignores the Parties' subsequent filings (in response to arguments by Webb's own counsel). Those pleadings make abundantly clear that the Parties did not seek to stay personal-injury cases in this MDL. In fact, the Parties affirmed that they did not intend the requested stay to cover *any* personal-injury claims. *See* Dkt. No. 63 at 3 ("[S]hould the Settlement be preliminarily approved and the Motion to Stay granted, any action asserting both a Personal Injury Claim or Medical Monitoring Claim *and* a Released Claim … would *not* be stayed….") (emphases added); Dkt. No. 64 at 1 n.1 (noting that proposed intervenor Godsey's argument "would mean that thousands of cases in the Roundup Products Liability MDL No. 2741 would also be surreptitiously stayed. That is *not* what the Parties have asked for and it is not their intent.") (emphasis in original).

IV.  **CONSOLIDATION FOR NON-PARTIES' "CONVENIENCE" AND "ABILITY TO MONITOR" IS NEITHER SUPPORTED BY THE LAW NOR NECESSARY.**

Webb cites no legal support or practical need for his final suggestion that continued consolidation is necessary for "the convenience of the Parties and the ability to monitor the certification and settlement process." Opp'n at 8. He argues that "counsel for the personal injury

plaintiffs" and "other class cases transferred to the MDL"—*non-parties* in this lawsuit—can "monitor the certification and settlement process" if this action remains in the MDL. *Id.* But any such non-parties who claim to be members of the proposed class have well-established procedural protections in the context of a damages class-action settlement regardless of venue—they may opt out or, at the appropriate time, object to the terms of the settlement. Fed. R. Civ. P. 23(C)(2)(b), (e)(5). And, to the extent Webb is referring to the ability of plaintiffs' *counsel* to monitor the proceedings, he provides no explanation as to why counsel—who are presumably familiar with Pacer—could not easily monitor the docket in this case if it were remanded to the transferor court.[3]

Moreover, the Parties have already addressed—by amending the proposed settlement agreement—all legitimate concerns raised by plaintiffs asserting personal injury claims. As described in their moving brief, the Parties amended the agreement in August 2021 in response to concerns raised by *Webb himself* before the JPML that the settlement would result in a "release of claims by almost all MDL plaintiffs." Mov. Br. at 5 (quoting JPML Dkt. No. 2400). Those amendments also clarified that the release excludes medical monitoring claims in response to concerns raised by Jason Rinehart, a named plaintiff in a class action pending in Missouri state court asserting medical monitoring claims. *Id.* at 4-5. To the extent MDL or other personal-injury plaintiffs have additional concerns, they can raise those issues informally with the Parties, move to intervene,[4] object at the appropriate time as contemplated by Rule 23, or simply opt out. Regardless, keeping this case in the MDL does not improve their ability to raise concerns about the proposed settlement.

---

[3] It is unclear why personal-injury plaintiffs who are *not* members of the proposed settlement class would have any interest in this action, but if they nevertheless wish to monitor the proceedings, they can do so via Pacer just as easily if the case is remanded to the transferor court as they could if it remained in the MDL.

[4] Contrary to Webb's suggestion, plaintiffs in other cases consolidated in this MDL are *not* parties in this case. It remains a separate action. Despite Webb's disregard of Rule 24, plaintiffs in other cases in this MDL must move to intervene or file a notice of objection to challenge the proposed settlement even if it remains in this Court.

Finally, it bears noting that Webb cites no authority for the notion that the convenience of non-parties should dictate where a lawsuit is heard. To the contrary, consolidation under 28 U.S.C. § 1407 is based on the "convenience of *parties* and witnesses," not *non-parties* who may wish to object to a class-action settlement.

## CONCLUSION

For all these reasons, and those stated in the Parties' moving brief, this Court should grant the motion requesting a suggestion of remand of this action to the United States District Court for the District of Delaware.

Dated: December 21, 2021

By: /s/ John J. Rosenthal

JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202

SHAWN R. OBI
Winston & Strawn LLP
sobi@winston.com
222 S. Grand Ave, 38th Floor
Los Angeles, CA 90071

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036

RAKESH KILARU
Wilkinson Stekloff LLP
rkilaru@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036

*Counsel for Monsanto Company*