JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4030
Fax: (202) 847-4005

*Attorneys for Defendant* (*additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT GILMORE, et al.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>MONSANTO COMPANY,<br><br>　　　　Defendant. | MDL No. 2741<br><br>Case No. 3:21-cv-08159<br><br>**MONSANTO'S OPPOSITION TO TOMLINSON AND RICHARDSON'S MOTION TO INTERVENE** |

## TABLE OF CONTENTS

**Page**

LEGAL STANDARD .................................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.     Proposed Intervenors Misstate The Facts And There Are No "Signs of Collusion" .......... 2

II.    Intervention As of Right Should Be Denied ....................................................................... 7

        A.     Proposed Intervenors Have No Protected Interest at Stake. ................................... 7

        B.     Proposed Intervenors' Interests Are Adequately Represented ............................. 10

        C.     The Motion Is Not Timely ..................................................................................... 11

III.   Permissive Intervention Should Be Denied ....................................................................... 12

CONCLUSION ............................................................................................................................. 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Baby Prod. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ...................................................................................................7

*In re Bayshore Ford Trucks Sales, Inc.*,
    471 F.3d 1233 (11th Cir. 2006) ..............................................................................................8

*Berman v. Gen. Motors LLC*,
    2019 WL 6163798 (S.D. Fla. Nov. 18, 2019) ......................................................................6, 7

*Friant Water Auth. v. Jewell*,
    2014 WL 5325352 (E.D. Cal. Oct. 17, 2014) .........................................................................8

*Galluci v. Gonzales*,
    603 F. App'x 533 (9th Cir. 20115) ......................................................................................4, 5

*Garibay v. Archstone Cmtys. LLC*,
    539 F. App'x 763 (9th Cir. 2013) ............................................................................................6

*Glover v. Ferrero USA, Inc.*,
    2011 WL 5007805 (D.N.J. Oct. 20, 2011) .............................................................................8

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ................................................................................................5

*Hibler v. Santander Consumer USA, Inc.*,
    2013 WL 12137716 (C.D. Cal. Nov. 21, 2013) ....................................................................10

*In re Isidoro Rodriguez Litig.*,
    829 F. Supp. 2d 1379 (J.P.M.L. 2011) ....................................................................................9

*Jabbari v. Farmer*,
    813 F. App'x 259 (9th Cir. 2020) ............................................................................................7

*Jabbari v. Wells Fargo & Co.*,
    2017 WL 5157608 (N.D. Cal. Jul. 8, 2017) ............................................................................8

*Jones v. Monsanto Co.*,
    2021 WL 2426126 (W.D. Mo. May 13, 2021) .......................................................................6

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir.1998) ..................................................................................................5

*California ex rel. Lockyer v. United States*,
    450 F.3d 436 (9th Cir. 2006) ................................................................................................7

*Nazomi Commc'ns, Inc. v. Nokia Corp.*,
    2010 WL 11508956 (C.D. Cal. June 21, 2010) ....................................................................9

*Negrete v. Allianz Life Ins. Co.*,
    523 F.3d 1091, 1100 (9th Cir. 2008) ....................................................................................4

*O'Brien v. Barin Rsch. Labs., LLC*,
    2012 WL 3242365 (D.N.J. Aug. 9, 2012) .............................................................................6

*Ogg v. Mediacom, LLC*,
    382 S.W.3d 108 (Mo. Ct. App. 2012) ...................................................................................3

*In re Oracle Sec. Litig.*,
    852 F. Supp. 1437 (N.D. Cal. 1994) .....................................................................................6

*In re Pet Food Prod. Liab. Litig.*,
    629 F.3d 333 (3d Cir. 2010) ................................................................................................11

*Raquedan v. Centerplate of Del. Inc.*,
    376 F. Supp. 3d 1038 (N.D. Cal. 2019) ..............................................................................10

*Rawa v. Monsanto Co.*,
    2018 WL 2389040 (E.D. Mo. May 25, 2018), *aff'd*, 934 F.3d 862 (8th Cir.
    2019) .....................................................................................................................................6

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ............................................................................................4

*Salmolson v. Bed Bath & Beyond, Inc.*,
    2012 WL 12919187 (C.D. Cal. Apr. 27, 2012) ....................................................................5

*Smith v. CRST Van Expedited, Inc.*,
    2012 WL 5873701 (S.D. Cal. Nov. 20, 2012) ......................................................................3

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ..................................................................................................5

*Swinton v. SquareTrade, Inc.*,
    960 F.3d 1001 (8th Cir. 2020) ..............................................................................................3

*Tobin v. Conopco, Inc.*,
    2013 WL 1729845 (N.D. Cal. Apr. 22, 2013) ....................................................................12

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ................................................................................................1

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ................................................................................................ 2

*Valle v. Singer*,
    2011 WL 13186681 (M.D. Fla. Dec. 7, 2011) ...................................................................... 8

*Viet Bui v. Sprint Corp.*,
    2015 WL 3828424 (E.D. Cal. June 19, 2015) ................................................................ 2, 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
    MDL No. 2672, 2016 WL 4376623 (N.D. Cal. Aug. 17, 2016), *aff'd*, 894 F.3d
    1030 (9th Cir. 2018) .............................................................................................................. 7

*Zamora v. Ryder Integrated Logistics, Inc.*,
    2014 WL 9872803 (S.D. Cal. Dec. 23, 2014) ........................................................... 9, 11, 12

**Statutes**

Mo. Rev. Stat. 407.025.1(1) ............................................................................................................ 3

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................................... 10, 11, 12

Fed. R. Civ. P. 24 ....................................................................................................................... 8, 12

Mo. R. Civ. P. 52.08(c)(1) .............................................................................................................. 4

Ryan Tomlinson and Carol Richardson ("Proposed Intervenors") move to intervene to oppose a procedural motion for a suggestion of remand, but they have no legitimate interest in the forum in which settlement-approval proceedings move forward, and they address that issue only briefly. They spend most of their brief repeating the same unsubstantiated allegations of collusion and self-dealing they concocted to try to convince the transferor court they needed to intervene to oppose settlement approval. *See* Dkt. Nos. 39, 41. Monsanto has previously explained at length why these accusations are both unsupported and wrong, and will do so again herein, but most importantly, they are irrelevant to the question at hand. The issue presently before this Court is not whether the settlement should be approved, preliminarily or otherwise, but whether this case should remain consolidated with the MDL or remanded back to the transferor court.

Put simply, Proposed Intervenors are unhappy that Monsanto reached a global settlement that is likely to be approved and viewed favorably by class members, in Missouri and elsewhere. If approved, the settlement would resolve almost all of Proposed Intervenors' potentially viable Missouri state-court claims and, thus, dramatically reduce their potential attorneys' fees. Disrupting and delaying that settlement, therefore, is the real objective here. Their tiresome efforts to cast this as concern for class members, particularly those outside of Missouri, are increasing costs and delaying compensation to the class. Because they lack any legitimate interest in which court decides settlement approval, let alone any interest that is inadequately protected, their motion to intervene should be denied.[1]

## LEGAL STANDARD

An applicant to intervene as of right bears the burden of showing that each of the requirements for intervention as of right have been met. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). Those requirements include that (1) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the

---

[1] To avoid any further delay or any claim of waiver in the event this Court grants the motion to intervene, Monsanto is filing concurrently with this opposition brief a conditional reply to Proposed Intervenors' proposed opposition to the pending motion for suggestion of remand.

disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest. *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002). Permissive intervention is granted at the court's discretion, but it is generally denied if intervention of right is not appropriate. *Viet Bui v. Sprint Corp.*, 2015 WL 3828424, at *3 (E.D. Cal. June 19, 2015) (collecting cases).

## ARGUMENT

**I.     PROPOSED INTERVENORS MISSTATE THE FACTS AND THERE ARE NO "SIGNS OF COLLUSION"**

At the outset, Proposed Intervenors' argument that there was "collusion" in negotiating the proposed settlement is properly addressed as part of settlement-approval proceedings—by whichever court ultimately takes that issue up—rather than in the context of a procedural motion related to venue. Whichever court addresses settlement approval will then have the benefit of full briefing on the settlement, its negotiation, its terms, and its benefits to the proposed settlement class.

With that said, Proposed Intervenors' allegations of collusion are meritless, and Monsanto will not allow such allegations to go without answer. Proposed Intervenors' repeated allusions to "red flags of reverse auction and inadequate representation" are nothing more than a collection of distorted facts and unsupported inferences.

Proposed Intervenors' suggestion that Monsanto engineered a "reverse auction" settlement with Plaintiffs because it was terrified of the *Tomlinson* action and wanted to avoid its force ignores far more plausible explanations for why Monsanto settled with Plaintiffs rather than the Proposed Intervenors. Monsanto had been in expensive and ongoing litigation with Plaintiffs' counsel for years before settlement was reached. Plaintiffs' counsel was pursuing cases not just against Monsanto, but also against the largest retailers of its consumer products—threatening the company not only with monetary liability but with reputational risk and damage to its customer relationships. And this action in particular was brought in federal court in Monsanto's state of incorporation and

2

sought a nationwide class—in short, it was an appropriate vehicle for a nationwide settlement capable of providing global peace.

Proposed Intervenors, on the other hand, are proceeding with a state class in state court. It is unlikely that their case could even be a vehicle for a global settlement (so, ironically, they could not even be qualified "bidders" in the supposed reverse auction they posit). Moreover, Proposed Intervenors' case seeks recovery for a massively overbroad class, purporting to include purchasers of *all* glyphosate-based Roundup® products in Missouri—not just consumer products—despite Missouri law limiting recovery for alleged false and deceptive advertising to purchases "primarily for personal, family, or household purposes." *See* Mo. Rev. Stat. 407.025.1(1). Non-consumer purchases make up the vast majority of Roundup® purchases in Missouri, and such purchasers have *no* potential of recovery under a law that expressly excludes their purchases. By pursuing a class including such purchasers, Proposed Intervenors thus made meaningful settlement negotiations extraordinarily difficult—no reasonable settlement could provide any recovery to such purchasers.[2]

Contrary to Proposed Intervenors' suggestion, it is not evidence of a reverse auction that objecting counsel were not included in the negotiations or believe they were better positioned for settlement. *See Swinton v. SquareTrade, Inc.*, 960 F.3d 1001, 1005-06 (8th Cir. 2020). Nor is it evidence of a reverse auction that the Proposed Intervenors are "unhappy that [their class] was not the class [Monsanto] chose to settle with." *Smith v. CRST Van Expedited, Inc.*, 2012 WL 5873701, at *4 (S.D. Cal. Nov. 20, 2012).[3] Inferring a reverse auction based solely on the fact that a

---

[2] This context helps explain Proposed Intervenors' actions here—little more than an effort to salvage their broader state-court case. Without the consumer claims (which would be resolved by the proposed settlement), Proposed Intervenors' class would be gutted of nearly all class members with potentially viable claims under the Missouri statute, likely resulting in either de-certification and/or summary judgment in Monsanto's favor. Only by attempting to blow up this settlement—to the detriment of the consumers they purport to represent—can Proposed Intervenors realistically preserve their broader Missouri action and, thus, their counsel's request for fees.

[3] Moreover, for all their talk of having a certified class, Proposed Intervenors neglect to mention that class certification in Missouri is preliminary and subject to modification or decertification. *Ogg v. Mediacom, LLC*, 382 S.W.3d 108, 116 (Mo. Ct. App. 2012) ("Missouri courts consistently

competing case exists and was not included in settlement negotiations would "lead to the conclusion that that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle without being accused by another of participating in a 'collusive reverse auction.'" *Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091, 1100 (9th Cir. 2008) (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002); *see also Galluci v. Gonzales*, 603 F. App'x 533, 535 (9th Cir. 20115) (rejecting suggestion of reverse auction where there is "no evidence suggesting that a bidding war between the various potential class counsel actually occurred").

Proposed Intervenors also falsely suggest that Monsanto settled with *Gilmore* because of weaknesses in their case, spending five paragraphs between their two motions arguing that much of the litigation in related cases preceding the settlement were "failed cases" against retailers. Dkt. No. 78 at 3-4, Dkt. No. 78-1 at 3-5. Yet they admit that discovery occurred in these related actions that was available in *Gilmore*, and that while some were dismissed, this was either voluntarily (mostly after the *Gilmore* parties had reached an agreement in principle) or "for defenses specific to California and Florida law." Dkt. No. 78-1 at 3.

Proposed Intervenors then suggest there was a rush to settlement, where additional non-Delaware plaintiffs were added "by post-settlement amendment to which Monsanto stipulated" and no discovery occurred. Dkt. No. 78 at 3-4, Dkt. No. 78-1 at 3. Again, this misconstrues a record of years of litigation between Monsanto and *Gilmore* counsel, discovery and motion practice in related actions, informal discovery before mediation,[4] motion practice, and arms'-

---

recognize a certified class may subsequently be modified or decertified later before a decision on the merits.") (quoting *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 79 (Mo. Ct. App. 2011)); Mo. R. Civ. P. 52.08(c)(1). The Proposed Intervenors obtained class certification without disclosing *any* experts to describe how they intended to prove their case with classwide evidence, and they succeeded only by promising to obtain affidavits from class members to prove certain elements of their case—an extraordinarily difficult promise to keep. *See* Mar. 22, 2021 Order at 3-4, 7, *Tomlinson*, No. 1916-CV22788 (relying on possibility of "self-identification affidavits" to set aside feasibility and predominance issues).

[4] For example, Monsanto produced nationwide sales data for its Roundup® products to facilitate settlement discussions, and Plaintiffs relied on an extensive regulatory record and company

length negotiation and mediation.[5]  There is nothing nefarious about the addition of non-Delaware plaintiffs to the complaint, which is consistent with the well-accepted class-action practice of settling similar claims together as part of nationwide settlement.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998) ("[A]lthough some class members may possess slightly differing remedies based on state statute or common law …. to the extent distinct remedies exist, they are local variants of a generally homogenous collection of causes."); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 302, 310 (3d Cir. 2011) ("As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of applicable laws will not foreclose class certification," because it would prevent parties from "achiev[ing] 'global peace'").[6]

Proposed Intervenor's assertion that the settlement is a "bargain" that benefits only the *Gilmore* parties is also incorrect.  Dkts. 78 at 4-6, 78-1 at 7-8.  Their unsubstantiated claim that the settlement fund's ceiling of $45 million is a "small fraction of potential liability to a nationwide class" ignores that the floor and ceiling were negotiated based on expert opinions and predicted

---

documents and depositions that are publicly available.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.1998) ("[F]ormal discovery is not a necessary ticket to the bargaining table.").

[5] Judge Welsh submitted a declaration swearing that "the parties engaged in extensive adversarial negotiations on virtually every issue in the cases"; that she "observed nothing that suggested any collusion or untoward behavior by counsel for either party"; and that, in her opinion, "the outcome of the mediated negotiations is the result of a fair, thorough, and fully informed arms-length process between highly capable, experienced, and informed parties and counsel."  Dkt. No. 27, ¶¶ 9-10; *see also* Dkt. No. 48 ¶¶ 5-8 (describing mediation and negotiations).

[6] Proposed Intervenors also complain that they were not immediately informed when an agreement in principle was reached.  But if Monsanto had immediately approached Proposed Intervenors' counsel before the proposed settlement was finalized, they would surely be calling *that* evidence of an attempt to "reverse auction" the settlement and manipulate negotiations with them.  *See Salmolson v. Bed Bath & Beyond, Inc.*, 2012 WL 12919187, at *5 (C.D. Cal. Apr. 27, 2012) (rejecting argument that informing objectors of a competing settlement offer is evidence of a reverse auction, and noting that, if objectors had not been informed, they would argue that was evidence of a reverse auction).  In fact, it is precisely the "bidding war" created by simultaneous negotiations with multiple sets of plaintiffs' counsel that courts have found is the primary *marker* of a "reverse auction."  *Gallucci*, 604 F. App'x at 535.  Monsanto did not engage in any such auction process, and no one suggests otherwise.

claims rates—and both amounts compare favorably to other nationwide settlements related to alleged false advertising of Roundup® Lawn & Garden products recently approved by federal courts. *See Rawa v. Monsanto Co.*, 2018 WL 2389040 (E.D. Mo. May 25, 2018) (approving nationwide settlement of complaint asserting consumer fraud related to Roundup® consumer products creating $21.5 million settlement fund), *aff'd*, 934 F.3d 862 (8th Cir. 2019); *Jones v. Monsanto Co.*, 2021 WL 2426126 (W.D. Mo. May 13, 2021) (approving nationwide settlement of false-advertising complaint related to Roundup® Lawn & Garden products under, inter alia, the MMPA and creating $39.55 million settlement fund). Either way, the Proposed Intervenors' dissatisfaction with the terms of the proposed settlement is not evidence of collusion. *See Berman v. Gen. Motors LLC*, 2019 WL 6163798, at *4 (S.D. Fla. Nov. 18, 2019) (rejecting claim of collusion when objector provided nothing other than "dissatisfaction with the Settlement").[7]

Proposed Intervenors also twist the proposed settlement's attorneys' fees provision to imply that Plaintiff's counsel's interests were not aligned with those of the class. That provision provides that plaintiffs may seek—subject to court approval, and with the outcome having no impact on the validity and enforceability of the settlement—25% of the available settlement fund. Twenty-five percent is the "the 'benchmark' level for reasonable attorney's fees in class action cases." *Garibay v. Archstone Cmtys. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). And seeking fees as a percentage of the fund ensures that class counsels' incentive is to negotiate the largest possible benefit for the class. *See In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1454–55 (N.D. Cal. 1994) ("[P]ercentage of the fund fee compensation [is] 'vastly superior' [to other options] … because percentage of the fund better 'align[s] the interest of lawyer and client[, as] [t]he lawyer gains only to the extent his client gains'") (citations omitted).

Proposed Intervenors argue that if the ceiling is not reached, *Gilmore* plaintiffs might request an amount greater than 25% of the total payout to the class, but (1) this does not alter

---

[7] Arguments that a settlement could be more favorable are not a valid basis to object to fairness, let alone evidence of improper collusion. *See O'Brien v. Barin Rsch. Labs., LLC*, 2012 WL 3242365, at *15 (D.N.J. Aug. 9, 2012).

6

Plaintiffs' counsel's incentive to negotiate the highest possible floor and ceiling; (2) courts in the Third Circuit have found that an award of fees based on the amount available to the class is appropriate, even when the ultimate claims rate is low;[8] and (3) assuming that in fact happens, fees are left to the sole discretion of the court and the settlement expressly provides that it does not depend on the award of any particular amount of fees.[9]

## II. INTERVENTION AS OF RIGHT SHOULD BE DENIED

### A. Proposed Intervenors Have No Protected Interest at Stake.

Proposed Intervenors primarily assert that they have a "protectable interest" because they are members of the proposed settlement class. Dkt. No. 78 at 8. But no settlement approval motion is currently pending with this Court, and Proposed Intervenors have *not* moved to intervene for purposes of addressing settlement approval. Even if a motion for preliminary approval were pending, it would not threaten Proposed Intervenors' purported interests, because they could object to, opt out of, or appeal the settlement at the appropriate times *without* intervention. *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) (a putative intervenor's interests are not impaired "if they have other means to protect them"); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, MDL No. 2672, 2016 WL 4376623, at *4 (N.D. Cal. Aug. 17, 2016) (denying intervention because the putative intervenor could "opt of the Settlement and litigate his claims independently, or he may instead object to it"), *aff'd*, 894 F.3d

---

[8] *See, e.g.*, *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013) ("Class counsel should not be penalized for these or other legitimate reasons [for a low claims rate] unrelated to the quality of representation they provided."). To be clear, Monsanto does not take a position at this point on any request for fees that Plaintiffs' counsel may ultimately make. But it makes little sense to suggest that a settlement is collusive because it permits Plaintiffs to *request* fees based on the circuit law that governed at the time the settlement was negotiated.

[9] There is also no reversion of unawarded attorneys' fees to Monsanto. The Settlement provides up to $45 million from which both Authorized Claimants and Class Counsels' fees are to be paid. *Id.* § D(1). That means that if Class Counsel is awarded $11 million in fees, $34 million (less the costs of administration) is available for the class to claim. If those fees are reduced, the amount available to Class Members increases. In short, the settlement structure aligns Class Counsels' interests with those of the class and "exhibit[s] none of the telltale signs of collusion." *Jabbari v. Farmer*, 813 F. App'x 259, 260 (9th Cir. 2020).

1030 (9th Cir. 2018); *Jabbari v. Wells Fargo & Co.*, 2017 WL 5157608, at *8 (N.D. Cal. Jul. 8, 2017) (Chhabria, J.) ("As the proposed intervenors have offered no reason to believe the ordinary objection process is an inappropriate or inconvenient means of making themselves heard through the remainder of this case, the motions to intervene are denied.").

More important, Proposed Intervenors purported interest in settlement approval is neither relevant to nor threatened by the pending motion for suggestion of remand.[10] Proposed Intervenors' assertion that this Court has previously addressed issues of preemption and adequacy of representation in other cases in this MDL is a non-sequitur. Dkt. No. 78-1 at 11. That suggests only that this Court has experience deciding settlement-approval motions in other cases in this MDL, a proposition that no one contests. The relevant question for this motion, however, is not whether this Court is capable of addressing the relevant issues if it retains jurisdiction—it surely is. The question is whether Proposed Intervenors' interests will be impaired or impeded as a practical matter by a *remand* decision—and they surely will not.

Perhaps self-conscious of the disconnect between their asserted interest and the purpose for which they seek intervention, Proposed Intervenors add: "Even were the focus narrowed to the

---

[10] Proposed Intervenors rely on *Friant Water Auth. v. Jewell*, describing it as finding a "legitimate interest in connection with motion to transfer as movant would be presenting argument to a court with less experience in subject matter of action." Dkt. 78 at 8 (citing 2014 WL 5325352, (E.D. Cal. Oct. 17, 2014)). But *Friant Water* is materially distinguishable. There, two non-parties (who were previously named defendants) were accused of unlawful behavior and would "be required to present arguments" related to "the complex workings" of a California water supply project. *Friant Water*, 2014 WL 5325352, at *5. The court held those non-parties could intervene to oppose transfer of the case from a California court to the Court of Federal Claims. *Id*. Proposed Intervenors are in a significantly different situation. They are not being accused of or required to defend themselves from anything, and unlike the intervenors in *Friant Water*, Proposed Intervenors can simply opt out of the settlement to avoid the force of any ruling on remand, preliminary approval, or any other issue. Moreover, *Friant Water*'s holding is contrary to cases that have found intervention improper to challenge an ancillary or procedural matter such as transfer. *See, e.g.*, *Glover v. Ferrero USA, Inc*., 2011 WL 5007805, at *6 (D.N.J. Oct. 20, 2011) (denying motion to intervene by "non-parties to an action whose only interest in the action is its transfer or dismissal"); *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1247 (11th Cir. 2006) (intervention to litigate a "collateral issue" rather than merits of underlying dispute is inappropriate under Rule 24); *Valle v. Singer*, 2011 WL 13186681, at *5 (M.D. Fla. Dec. 7, 2011) (Rule 24 intervention must be "anchor[ed] … in the dispute giving rise to the pending lawsuit.").

8

motion for suggestion of remand, Proposed Intervenors' protectable interest remains as this Court has greatest familiarity with Roundup litigation and related matters bearing on whether the settlement is fair, reasonable and adequate." *Id.* at 8.  But Proposed Intervenors cannot and do not really believe it is in class members' best interest to have their cases proceed in this MDL, because they pleaded their *own case* based on state law, in a state court, and with a class limited to in-state residents—ensuring that their own case will never make its way to this MDL.  And in any event, they lack standing to intervene to assert some general interest in venue on behalf of the settlement class.  *Zamora v. Ryder Integrated Logistics, Inc.*, 2014 WL 9872803, at *2 n.2 (S.D. Cal. Dec. 23, 2014) ("[The] impact on [the proposed intervenor's] *individual* claims … is the only relevant interest.  [The proposed intervenor] has no standing to intervene here simply because the settlement may impact the size or composition of the class he purports to represent.").

Monsanto does not doubt that Proposed Intervenors care which court decides preliminary approval.  They certainly have gone out of their way in seeking to have this case proceed before this Court.  But as explained above, they lack any legitimate reason to assert that remand will impair their interests in a fair settlement.  That leaves only forum shopping, which is not legitimate interest.  *See In re Isidoro Rodriguez Litig.*, 829 F. Supp. 2d 1379, 1380 (J.P.M.L. 2011) ("'[T]he prospect … that another district judge may be more favorably disposed to a litigant's contention is clearly not a factor considered by the Panel in exercising its discretion under Section 1407'") (quoting *In re Glenn W. Turner Enters. Litig.*, 368 F. Supp. 805, 806 (J.P.M.L. 1973)); *Nazomi Commc'ns, Inc. v. Nokia Corp.*, 2010 WL 11508956, at *3 (C.D. Cal. June 21, 2010) ("A mere economic interest in the outcome of the lawsuit is itself insufficient to give rise to a right to intervene.").

Monsanto fully expects that the proposed settlement, which provides significant monetary benefits to the class, will ultimately be approved regardless of which court decides the issues.  That is precisely, Monsanto believes, why Proposed Intervenors have done their utmost to delay and disrupt approval proceedings.  The question of whether to remand, however, focuses on efficiency and case management, not on the merits of the proposed settlement.  Proposed Intervenors have

identified no legally protected interest in the forum in which this case proceeds, and their motion to intervene to address that procedural issue should therefore be denied.

### B.   Proposed Intervenors' Interests Are Adequately Represented

Proposed Intervenors claim that because Plaintiffs support the settlement and believe it is fair and reasonable, they are adverse to Proposed Intervenors and their interests are therefore not adequately represented. Dkt. No. 78 at 9. But this presents the same problem as Proposed Intervenors' framing of their supposed "protectable interest": Disputes over the fairness and adequacy of a settlement are meant to be resolved during the approval, objection, and appeal processes, and their existence does not mean that intervention is necessary. *Hibler v. Santander Consumer USA, Inc.*, 2013 WL 12137716, at *5 (C.D. Cal. Nov. 21, 2013) (argument by intervening class member with related action that he "could secure a larger settlement for the class" "is meritless because Intervenor is arguing over an actual settlement by Plaintiff, as compared to a hypothetical settlement by Intervenor" and "Intervenor may properly raise any issues with the fairness, reasonableness, or adequacy of the settlement at the fairness hearing or Intervenor may opt-out."). Proposed Intervenors have not articulated, and cannot, any reason why the procedures of Rule 23 are insufficient to protect their interests as class members in a fair and reasonable settlement. *See Raquedan v. Centerplate of Del. Inc.*, 376 F. Supp. 3d 1038, 1041-42 (N.D. Cal. 2019) ("The Ninth Circuit recognizes in the class action settlement context, a putative intervenor's concerns may 'largely be addressed through the normal objection process.'") (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015)).

Proposed Intervenors summarily suggest that their interests are inadequately protected because "*Gilmore* plaintiffs and counsel stand to disproportionately benefit from the proposed settlement." Dkt. No. 78 at 9. This claim is apparently based on the settlement's term providing that Monsanto will not oppose Plaintiffs' counsel's fee award if it seeks no more than 25% of the available fund. *See id.* at 4-5. But as discussed above, this fails to suggest any conflict between *Gilmore* plaintiffs and the class, including because (1) the percentage-of-the fund structure ensures that Plaintiffs' counsel were incentivized to increase the amount available to the class; (2) 25% of

10

a fund made available to the class is the benchmark fee award in such cases; and (3) the settlement expressly provides that the amount of fees to be awarded is in the approving court's discretion and will have no impact on the validity of the settlement. And, again, this is just another attack on the settlement that would be properly addressed during the approval process and class objection period—it has nothing to do with which court decides settlement approval.

### C. The Motion Is Not Timely

"Courts weigh three factors in determining whether a motion to intervene is timely: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Zamora*, 2014 WL 9872803, at *2. Length of delay is judged by when Proposed Intervenors *should* have known their interest was not adequately protected, and prejudice is the most important factor. Dkt. No. 78 at 7.

Here, Proposed Intervenors first invented their allegations of collusion and evil motives to tar Monsanto's legitimate and logical decision to negotiate a nationwide settlement in June 2021.[11] Dkt. No. 41. Now before this Court, ostensibly only to seek intervention on the procedural issue of remand, they repeat those same accusations.

Proposed Intervenors' suggestion that they could not have made such a motion earlier cannot withstand scrutiny. They should have known they would need to intervene to oppose remand after the November 10, 2021 case management conference they reference in their motion, when the issue was raised by the Court. *See* Dkt. No. 78 at 7. And they certainly knew by November 12, when the Parties publicly confirmed that they would be seeking remand. Dkt. No. 69. If Proposed Intervenors thought, as they now claim, that remand would impair their interests, they could have quickly moved to intervene. *See Zamora*, 2014 WL 9872803, at *2 ("[T]he timeliness inquiry … does not allow a potential intervenor to wait until a potential harm 'crystallizes' or becomes 'certain.'") (citations omitted). Instead, they waited until the deadline to

---

[11] They did this because in the Third Circuit, where this case was then pending, the law is relatively well-established that class members must make a showing of collusion to establish inadequate representation and justify intervention prior to the objection period contemplated by Rule 23. *See In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010).

oppose the remand motion, requiring them to request a two-week exception to the Local Rules and forcing additional last-minute briefing in the midst of the holidays. *See id.* at 2 n.3 (motion to intervene was untimely where it was filed at the last possible moment and would have to be heard on the same date as the settlement-approval motion the proposed intervenor sought to oppose). For that reason alone, their motion should be denied.

### III. PERMISSIVE INTERVENTION SHOULD BE DENIED

Proposed Intervenors' arguments in favor of permissive intervention fare no better than their arguments for intervention as a matter of right. Courts in the Ninth Circuit generally deny permissive intervention where proposed intervenors cannot meet the requirements of intervention by right, particularly where intervention may cause some prejudice or delay. *Viet Bui*, 2015 WL 3828424, at *3 (collecting cases); *Tobin v. Conopco, Inc.*, 2013 WL 1729845, at *2 (N.D. Cal. Apr. 22, 2013) (denying permissive intervention for the "same reasons" under Rule 24(a) and 24(b), i.e., there was no impairment of interest by a proposed settlement to class member who could not know her interests were not adequately represented or impaired because she could "opt out or object"); *Zamora*, 2014 WL 9872803, at *2 ("[The] same three factors apply to determine timeliness of intervention as of right and permissive intervention.") (citation omitted).

While permissive intervention rests in this Court's sound discretion, Monsanto respectfully submits that this Court's discretion is best exercised by denying intervention at this juncture. Proposed Intervenors' ultimate complaints are with the terms of the settlement agreement. Those complaints are ill-founded and based on unsupported accusations of collusion. But most important, they are irrelevant to the issue of remand. They can be raised under Rule 23's normal objection procedures or, if they insist, Proposed Intervenors can move to intervene to oppose settlement approval.[12] But those concerns are fundamentally distinct from the procedural issue presently before this Court.

---

[12] Of course, for the reasons discussed herein, Monsanto does not concede that such a motion would be appropriate.

12

## CONCLUSION

For the foregoing reasons, this Court should deny Proposed Intervenors' motion to intervene.

Dated: December 21, 2021

By:    /s/ John J. Rosenthal

JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202

SHAWN R. OBI
Winston & Strawn LLP
sobi@winston.com
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036

RAKESH KILARU
Wilkinson Stekloff LLP
rkilaru@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036

*Counsel for Monsanto Company*