JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4030
Fax: (202) 847-4005

*Attorneys for Defendant* (*additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT GILMORE, et al.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>MONSANTO COMPANY,<br><br>　　　　Defendant. | MDL No. 2741<br><br>Case No. 3:21-cv-08159<br><br>**MONSANTO'S CONDITIONAL REPLY TO PROPOSED INTERVENORS' PROPOSED OPPOSITION TO SUGGESTION OF REMAND TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**<br><br>Date:　　January 6, 2021<br>Time:　　10:00 a.m.<br>Place:　　Via Zoom Webinar<br>Judge:　　Hon. Vince G. Chhabria |

i

# INTRODUCTION[1]

The Parties have reached a nationwide settlement of claims that purchasers of Monsanto's consumer glyphosate-based products paid more for the products than they would have based on alleged false advertising of the products. A fully briefed motion for preliminary approval of the Parties' settlement agreement was pending in the District Court for the District of Delaware when the Judicial Panel on Multidistrict Litigation ("JPML") transferred the case to this Court. The JPML concluded that whether transfer was appropriate was a "close question" and that this Court could best assess whether the Parties' proposed settlement would affect the actions and claims in the MDL. It also expressly noted this Court's ability to "suggest remand with a minimum of delay."

Meanwhile, Ryan Tomlinson and Carol Richardson ("Proposed Intervenors"), named plaintiffs in a Missouri class action proceeding in state court, seek to intervene to oppose the suggestion of remand. Proposed Intervenors' own case is not part of the MDL. It will *never* be part of the MDL because the Proposed Intervenors—who now suggest that all Roundup® litigation should proceed in this Court—pleaded their own case on state-law grounds, filed it in Missouri-state court, and limited the class to purchasers in Missouri, evading federal-court jurisdiction. Proposed Intervenors have no legitimate interest in which federal court determines whether the proposed settlement meets the requirements of Rule 23—only a worry that a settlement approval would damage their counsels' ability to pursue their own case in Missouri state court and endanger their separate claim for attorneys' fees.[2]

---

[1] This brief is filed conditionally to provide a reply to the proposed opposition brief filed by Proposed Intervenors in the event this Court grants their pending motion to intervene. Monsanto is concurrently filing an opposition to the motion to intervene.

[2] While Monsanto is certain this Court can more than capably assess the fairness and reasonableness of the proposed settlement, the Parties negotiated the agreement in the shadow of Third Circuit law, and there is little doubt that Proposed Intervenors hope that a change in applicable law will introduce new challenges and perhaps upend the settlement.

Proposed Intervenors make incorrect assertions of fact and level naked, unfounded accusations of collusion and reverse auction. But peering behind the rhetoric, this is only an effort to disguise poor arguments against remand, which is appropriate because (1) the *primary* issues in this case—and in the current procedural posture—differ substantially from the key issues in this MDL; (2) litigating the action before this Court will not net any efficiency gains; and (3) the proposed settlement does *not* impact the personal-injury claims consolidated in this MDL. The Court should therefore suggest that the JPML remand this case to the transferor court.

## ARGUMENT

### I. PROPOSED INTERVENORS' BASELESS ACCUSATIONS OF COLLUSION ARE IRRELEVANT TO THE ISSUES CURRENTLY BEFORE THIS COURT.

In a "Statement of Facts" spanning a third of their proposed opposition, Proposed Intervenors claim that the settlement was the result of collusion between the Parties. Dkt. No. 78-1 at 2-8. While those allegations are not relevant to the issue presently before the Court (whether to suggest remand to the transferor court), Monsanto will not let such baseless claims go without response.

### A. Proposed Intervenors' Collusion Accusations Are Baseless.

The proposed settlement is neither collusive nor the product of a reverse auction. It was reached after arms-length negotiation before an experienced and independent mediator and federal magistrate judge, and only after years of costly litigation. *See* Dkt. No. 27 (declaration from Judge Welsh describing mediation). Proposed Intervenors point to "failed cases" filed before *Gilmore*. But those cases asserted allegations and legal theories highly similar to those in both *Gilmore* <u>and</u> in Proposed Intervenors' own case, and they entailed years of motions practice and written discovery in multiple jurisdictions, expert discovery, and a fully briefed appeal before the Eleventh Circuit. *See* Dkt. No. 25 at 2-11. *Gilmore* itself included two rounds of

dispositive briefing before the Parties entered mediation. *Id*. at 8-10. The Parties' settlement is far from some quick negotiation meant to avoid meaningful litigation.[3]

Proposed Intervenors' belief that their case is stronger, besides being incorrect, is no more evidence of a reverse auction than is their sour grapes that theirs "was not the class [Monsanto] chose to settle with." *See, e.g.*, *Harvey v. Morgan Stanley Smith Barney LLC,* 2019 WL 4462653, at *1-2 (N.D. Cal. Sept. 5, 2019) (quoting *Smith v. CRST Van Expedited, Inc.*, 2012 WL 5873701, at *4 (S.D. Cal. Nov. 20, 2012)). To the contrary, that Monsanto was not concurrently negotiating with Proposed Intervenors is strong evidence *against* a reverse auction, because it precludes the possibility of a "bidding war," the hallmark of a reverse auction.[4] *See Gallucci v. Gonzalez*, 604 F. App'x 533, 535 (9th Cir. 2015). An auction with

---

[3] Plaintiffs begin their brief with a half-page non-sequitur about this Court's denial of preliminary approval for a proposed settlement in the separate *Ramirez* case. Proposed Intervenors appear to suggest that this case is a follow-on effort to settle where *Ramirez* failed. That suggestion cannot withstand scrutiny. In the first place, the settlement proposed in *Ramirez*, even if approved, would *not* have resulted in a release of all class members' false-advertising or consumer fraud claims—Proposed Intervenors' suggestion to the contrary is simply wrong. Second, as the Proposed Intervenors well know, the Parties in this case mediated and reached a preliminary agreement on terms before this Court had expressed any view on the amended *Ramirez* settlement. Compare Dkt. No. 25 at 11 (the Parties in this case reached an agreement in principle in the early-morning hours of February 17, 2021) with MDL Dkt. No. 13069 (May 18, 2021 Order from this Court laying out its "big picture concerns" with the proposed Ramirez settlement). That timing would make no sense if, as Proposed Intervenors suggest, the goal were to avoid this Court's ruling in *Ramirez*.

[4] Proposed Intervenors were an improbable bargaining partner from the start. They pursued a Missouri-state class in Missouri-state court, making it much harder to negotiate a nationwide settlement. Equally important, they seek recovery for a massively overbroad class, purporting to include purchasers of *all* glyphosate-based Roundup® products in Missouri—not just consumer products—despite Missouri law limiting recovery for alleged false and deceptive advertising to purchases "primarily for personal, family, or household purposes." *See* Mo. Rev. Stat. 407.025.1(1). Non-consumer purchases make up the vast majority of Roundup® purchases in Missouri, and such purchasers have *no* potential of recovery under a law that expressly excludes their purchases. By seeking a class including such purchasers, Proposed Intervenors thus made meaningful settlement negotiations extraordinarily difficult—no reasonable settlement could provide any recovery to such purchasers. This context helps explain Proposed Intervenors' actions here—little more than an effort to salvage their broader state-court case. Without the consumer claims (which would be resolved by the proposed settlement), Proposed Intervenors'

only one "bidder" is no auction at all. Nor does the fact that Monsanto did not tag *Gilmore* and earlier related cases to the MDL, as Proposed Intervenors suggest, indicate collusion. To the contrary, the JPML itself noted that whether this case should be transferred to the MDL was a "close question," and the JPML's clerk at first marked this case as not appropriate for transfer to the MDL.[5]  JPML Dkt. No. 1.

### B. Proposed Intervenors' "Collusion" Accusations Do Not Counsel Against Remand.

Aside from being unfounded, Proposed Intervenors' collusion allegations are only a distraction at this point. Those issues will be addressed by whichever court ultimately decides whether to approve the settlement. The question presently before this Court is whether to suggest remand of this case to the transferor court. This is a question that the JPML found this Court "best placed" to answer. Dkt. No. 65 at 2-3. And its answer does not hinge on whether the *Tomlinson* Plaintiffs think they have the stronger case (they do not) or whether the settlement stemmed from a reverse auction (it did not). It turns instead on "whether the case will benefit from further coordinated proceedings as part of the MDL." *In re Conseco Life Ins. Co.*

---

class would be gutted of nearly all class members with potentially viable claims under the Missouri statute, likely resulting in either de-certification and/or summary judgment in Monsanto's favor. Only by attempting to blow up this settlement—to the detriment of the consumers they purport to represent—can Proposed Intervenors realistically preserve their broader Missouri action and, thus, their counsel's request for fees.

[5] Moreover, as noted above and described extensively in earlier briefing, there is a long history of Roundup®-based false advertising cases raising claims for economic damages that have proceeded outside the MDL since 2015, some of which were pursued by plaintiffs' counsel that served as leadership in this MDL. *See, e.g.*, Class Action Complaint & Demand for Jury Trial, *Jones et al. v. Monsanto Company*, No. 4:19-cv-00102-BP (W.D. Mo. Feb. 13, 2019), Dkt. No. 1; Class Action Complaint & Demand for Jury Trial, *Rawa et al. v. Monsanto Company*, No. 4:17-cv-01252-AGF (E.D. Mo. Apr. 05, 2017), Dkt. No. 1. Monsanto has always viewed this case and related cases as a continuation of those false-advertising cases. Proceeding with litigating those cases outside this MDL suggests no more than a good-faith, reasonable (and continuing) belief that Roundup® false-advertising cases raising claims for economic damages are meaningfully distinct from the personal-injury claims consolidated in this MDL—the same conclusion reached by the JPML's own clerk.

*LifeTrend Ins. Sales & Mktg. Litig.*, 2017 WL 3599521, at *3 (N.D. Cal. Aug. 22, 2017). As explained in the opening brief and further below, this case presents unique issues not present in the MDL—none of which need to be decided now because the Parties have reached a settlement. Thus, this case will not benefit from further coordinated proceedings, and remand is appropriate.

**II.  PROPOSED INTERVENORS UNDERSTATE THE EFFICIENCY BENEFITS OF REMAND AND IGNORE THE CASE-SPECIFIC ISSUES DOMINATING THE REMAND QUESTION CURRENTLY BEFORE THIS COURT.**

Proposed Intervenors claim it is "of no moment" that this case involves consumer-fraud claims implicating different issues of causation, materiality, and damages, because the JPML "was aware of such arguments and rejected them." Dkt. No. 78-1 at 9-10. But the JPML expressly recognized that *this Court* "is best placed to determine whether the proposed [] settlement will affect the actions and claims in the MDL" and may "suggest remand with a minimum of delay" if it "determine[s] that the continued inclusion of *Gilmore* is not warranted." Dkt. No. 65 at 3.

While there is no dispute that there are *some* issues common to these cases, those common issues are outweighed by the case-specific issues at play in this case, which Proposed Intervenors do not meaningfully address. Plaintiffs need not prove that they were diagnosed with cancer or any other kind of physical injury or that their alleged physical injury was attributable to Roundup® products, unlike the plaintiffs in the MDL. And unlike the personal-injury plaintiffs, they must prove that they paid more for Roundup® products than they would have had they known of the products' alleged health risks. The JPML itself recognized that these would be "new types of claims" for the MDL, "which heretofore has involved predominantly personal injury claims." Dkt. No. 65 at 3. These differences are significant and cannot be simply ignored.

The procedural posture also warrants a suggestion of remand. The only question before the transferor court at the time of transfer was whether the proposed settlement met the requirements of Rule 23—that is, whether it is fair, reasonable, and adequate. These issues have

5

not been previously litigated in this MDL, but they have been fully briefed in the transferor court. Moreover, the transferor court has considered briefings on motions to dismiss, amended complaints, and motions to certify the class. Dkt. Nos. 10, 14-19, 22-25.

Proposed Intervenors' contrary arguments rely primarily on this Court's prior experience with settlement approval in other cases. But that shows only that this Court is *able* to address whether the proposed settlement is fair, reasonable, and adequate under Rule 23. That is certainly true—Monsanto has no doubt that this Court is familiar with the "application of correct standards,"[6] is well-equipped to conduct a Rule 23 analysis of the settlement and, moreover, would ultimately approve this settlement. But what matters for purposes of remand is whether it is efficient for *this* Court to do so—and specifically whether it is "efficient" for the Parties to re-brief a fully briefed motion for preliminary settlement approval under the law of a different circuit before a court that has not had the benefit of the extensive briefing so far in the case. For the reasons explained in the opening brief (Dkt. No. 70 at 7-13), it is not, and this Court should therefore suggest remand to the JPML.

Finally, Proposed Intervenors argue that the Parties "presuppose that settlement approval will be granted." Dkt. 78-1 at 10-11. That is incorrect. Although Monsanto believes that the proposed settlement should and ultimately will be approved, the moving brief acknowledged the possibility that no settlement would be approved and this case would move forward on the merits. Dkt. No. 70 at 12. But no matter what, this Court or the transferor court must determine whether the proposed settlement satisfies Rule 23. If the settlement is approved, there will be no

---

[6] Proposed Intervenors suggest that Plaintiffs' counsel previously cited an "incorrect standard" for preliminary approval. Dkt. No. 78-1 at 11 n.21 (citing Dkt. No. 25 at 18). But this argument only exposes Proposed Intervenors' opposition for the forum-shopping exercise it is. The standard cited by Plaintiffs before the transferor court was drawn from in-circuit case law. *See, e.g.*, *McRobie v. Credit Prot. Ass'n*, 2020 WL 6822970, at *3 (E.D. Penn. Nov. 20, 2020) ("Preliminary approval … is generally granted unless a proposed settlement is obviously deficient."); *Udeen v. Subaru of Am., Inc.*, 2019 WL 4894568, at *3 (D.N.J. Oct. 4, 2019) (same) (collecting cases). Proposed Intervenors' hope that this Court will apply a different standard under Ninth Circuit law is not a legitimate reason to deny remand.

common issues with the MDL because the litigation will be over. If the settlement is denied, the same case-specific issues described above would dominate, and any potential efficiency gains would likely be outweighed by those issues, leading to a less-efficient action. *See In re United Healthcare Servs., Inc. Harvoni (Ledipasvir & Sofosbuvir) Health Ins. Litig.*, 222 F. Supp. 3d 1339, 1340–41 (J.P.M.L. 2016) ("[C]ase-specific issues are likely to undermine the alleged efficiencies that could be gained from centralizing. . . ."). This Court is adequately positioned to "determine that the continued inclusion of *Gilmore* is not warranted," and should "suggest remand with a minimum of delay" before any further briefing or other unnecessary effort and expense occurs. Dkt. No. 65 at 3.

### III. THE PROPOSED SETTLEMENT DOES NOT RELEASE THE PERSONAL-INJURY CLAIMS IN THIS MDL.

Perhaps finally accepting that the proposed settlement, by its plain language, does not release personal-injury claims, Proposed Intervenors now complain that the proposed settlement nevertheless may affect cases in the MDL because "it releases tort, warranty, and consumer act claims," citing a handful of cases in the MDL alleging that plaintiffs "paid substantial sums for the Roundup® . . . that [they] would not have paid had Defendant not engaged in unfair and deceptive conduct." Dkt. No. 78-1 at 19-20 (quoting *Bertelson v. Monsanto*, No. 3:21-cv-05616-VC, Dkt. No. 1 ¶ 236). But Proposed Intervenors fail to see the forest for their own distracting trees.

In each of the cases Proposed Intervenors cite, the plaintiffs pleaded *personal-injury* claims, just like the rest of the cases in this MDL.[7] Specifically, each plaintiff alleged that he or she was diagnosed with cancer after repeated exposure to glyphosate-based Roundup® products. Each plaintiff raised many causes of action—including design defect, failure to warn,

---

[7] Setting aside why Proposed Intervenors, who are pursuing a state-court case that is not and never will be part of this MDL, are concerned about whether cases in this MDL will be affected by the settlement's release, two of the three cases Proposed Intervenors cite were filed *after* the motion to approve the proposed settlement was publicly filed.

7

negligence, loss of consortium, and breach of express and implied warranties—and sought damages for their pain, anguish, and medical care, among other things related to their *personal injuries*. That these plaintiffs *also* pleaded claims for purely economic harm does not overshadow their core claims of cancer-related personal injury—that is the thread binding the other cases consolidated in this MDL.

Proposed Intervenors are correct, of course, that settlement of a nationwide consumer-protection class action seeking economic damages unrelated to personal injury will release all class members' claims for economic damages **_unrelated_** to personal injury. That is an uncontroversial, almost axiomatic feature of any class-action settlement. But like much of the Proposed Intervenors' arguments, it is beside the point. What matters is whether the personal-injury claims at the core of this MDL are impacted, and the answer is emphatically, "No." The settlement release makes abundantly clear that it excludes precisely the kind of personal-injury claims raised in the cases cited by the *Tomlinson* Plaintiffs. *See* Dkt. No. 59-1 § (A)(41) (defining "Personal Injury Claims" to include claims asserting a right to recover damages for actual physical injury as well as compensatory damages resulting from the physical injury or illness, such as physical pain, medical expenses, and loss of consortium, among many others); *id*. § (L)(1) (explicitly stating that the release does not include any claims for personal injury or any alleged damages, including economic losses, arising from the personal injury). And to the extent any plaintiffs in this MDL (or not, in Proposed Intervenors' case) assert claims that *are* released, they can object to the settlement or opt out entirely. *See* Dkt. No. 59-1 §§ J-K (describing opt-out and objection processes); *see also Embry v. Acer Am. Corp.*, 2012 WL 13059908, at *1 (N.D. Cal. Jan. 27, 2012) ("Thus, the Court finds that the ability to object as members of the class, in combination with the ability to opt out of the settlement, adequately protects the interests of Objectors."). This Court should therefore "suggest remand with a minimum of delay." Dkt. No. 65 at 3.

## CONCLUSION

Proposed Intervenors' allegations of collusion are unfounded and irrelevant to the issue of remand. Their arguments against remand itself overstate the common issues between this case and other cases in the MDL and understate the inefficiencies of proceeding in this Court. This Court should grant the motion and suggest remand to the transferor court.

Dated: December 21, 2021

By: /s/ John J. Rosenthal

JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202

SHAWN R. OBI
Winston & Strawn LLP
sobi@winston.com
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036

RAKESH KILARU
Wilkinson Stekloff LLP
rkilaru@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036

*Counsel for Monsanto Company*