GILLIAN L. WADE (State Bar No. 229124)
MARC A. CASTANEDA (State Bar No. 299001)
Milstein, Jackson Fairchild & Wade, LLP
gwade@mjfwlaw.com
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, CA 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

JOEL OSTER
Oster Law Firm
Of Counsel to the Law Offices of Howard Rubinstein
joel@osterlaw.com
22052 W. 66th St. #192
Shawnee, Kansas 66226

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 3:21-cv-08159 |
| This document relates to:<br><br>*Gilmore v. Monsanto Company,*<br><br>Case No. 3:21-cv-08159 | **PLAINTIFFS' CONDITIONAL REPLY TO PROPOSED INTERVENORS' PROPOSED OPPOSITION TO JOINT MOTION FOR SUGGESTION OF REMAND**<br><br>Date:   January 6, 2021<br>Time:  10:00 a.m.<br>Place:  Via Zoom Webinar<br>Judge: Hon. Vince G. Chhabria |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

ARGUMENT.......................................................................................................................2

    I.    Proposed Intervenors' Allegations of Collusion are Unfounded and Unsupported by the Facts .................................................................................................2

        A.    The Related Actions Contributed to the Settlement..............................................2

        1.    The *Ezcurra* Matter. ...............................................................................2

        2.    The Retailer Actions ................................................................................3

        B.    Gilmore's Meritorious Delaware Suit .................................................................4

        C.    The Parties' Mediated Negotiations Were Conducted at Arm's-Length and Resulted in a Settlement that is Fair, Reasonable, and Adequate .........................5

    II.    The Court Should Suggest That Remand to the Delaware District Court is Appropriate ................................................................................................7

        A.    Legal Standard ....................................................................................................7

        B.    The Common Questions Gilmore Shares with Other MDL Cases is Minimal .......8

        C.    The Issue of Whether the Proposed Settlement Should be Approved is Case-Specific and Best Left to Decision of the Delaware District Court in the Interest of Efficiency..........................................................................9

        D.    The Proposed Settlement Does Not Release the Personal Injury Claims in the MDL ..........................................................................................9

    III.    Conclusion ........................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Page*

*Bristol-Myers Squibb Co. v. Superior Court* (2017)
  137 S. Ct. 17734

*Cherry v. Dometic Corp.* (11th Cir. 2021)
  986 F.3d 1296...........................................................................................................................3

*Garibay v. Archstone Cmtys. LLC* (9th Cir. 2013)
  539 F. App'x 763.......................................................................................................................6

*Hanna v. Walmart Inc.* (C.D. Cal.)
  No. 5:20-cv-01075....................................................................................................................4

*Harnish v. Widener Univ. Sch. of L.* (3d Cir. 2016)
  833 F.3d 298..........................................................................................................................5, 8

*In re Airline "Age of Employee" Emp't Practices Litig.* (J.P.M.L. 1980) (
  483 F. Supp. 814......................................................................................................................8

*In re Baby Prod. Antitrust Litig.* (3d Cir. 2013)
  708 F.3d 163.............................................................................................................................6

*In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig. (MDL 2391)* (N.D. Ind. Sept. 6, 2018).
  2018 U.S. Dist. LEXIS 226693 ...............................................................................................7

*In re IBM Peripheral EDP Devices Antitrust Litig.* (J.P.M.L. 1976)
  407 F. Supp. 254......................................................................................................................7

*In re Oracle Sec. Litig.* (N.D. Cal. 1994)
  852 F. Supp. 1437....................................................................................................................6

*In re United Healthcare Servs., Inc. Harvoni (Ledipasvir & Sofosbuvir) Health Ins. Litig.* (J.P.M.L. 2016)
  222 F. Supp. 3d 1339...............................................................................................................9

*Moore v. Verizon Comms. Inc.* (N.D. Cal. Aug. 28, 2013)
  2013 U.S. Dist. LEXIS 122901 ...............................................................................................5

*Moreno v. Capital Bldg. Maint. & Cleaning Servs.* (N.D. Cal. May 5, 2021)
  2021 U.S. Dist. LEXIS 87268 ..................................................................................................6

*Scoy v. Kasal* (Del. Super. Ct. Apr. 9, 1999)
  1999 Del. Super. LEXIS 240....................................................................................................5

*Taylor v. Costco Wholesale Corporation* (E.D. Cal.)
    No. 2:20-cv-00655-KJM-DMC ................................................................................................ 4

*Tomlinson v. Monsanto Co.* (Jackson Cty, Mo. Jul. 20, 2021)
    No. 1916-CV22788 ..................................................................................................................... 7

*Weeks v. Home Depot USA, Inc.* (C.D. Cal.)
    2:19-cv-06780 FMO (ASx) .................................................................................................... 3, 4

## INTRODUCTION

Plaintiffs Scott Gilmore, Julio Ezcurra, James Weeks, Amanda Boyette, Anthony Jewell, Paul Taylor, Sherry Hanna, and Kristy Williams (the "*Gilmore* Plaintiffs") hereby submit this Conditional Reply to Ryan Tomlinson and Carol Richardson's ("Proposed Intervenors") proposed Opposition to the Joint Motion for Suggestion of Remand, Dkt. No. 78-1.[1]

The central issue before the Court is whether remand is appropriate. The Judicial Panel on Multidistrict Litigation ("JPML") originally transferred this action to the MDL, finding it shared common questions of fact with the cases in the MDL and that transfer served the convenience of the Parties and provided an efficiency benefit. Dkt. No. 65 at 2. However, it also noted this was "close question," and that ultimately, this Court "is best placed to determine whether the proposed [] settlement will affect the actions and claims in the MDL." *Id.* at 3. The Parties now move the Court to determine that the continued inclusion of *Gilmore* in the MDL is no longer warranted and that remand is appropriate.

Proposed Intervenors, rather than simply addressing the relevant issues, devote much of their opposition brief leveling a series of accusations that the Parties' proposed settlement is the result of collusion and reverse auction. These assertions are baseless (as discussed herein), completely irrelevant to the issues at hand, and serve merely to distract the Court from the weakness of their arguments pertaining to remand. Indeed, Proposed Intervenors ultimately fail to demonstrate this case will benefit from furthered coordinated proceedings, because it is clear (1) this matter presents different issues than those present in the MDL, (2) there is no efficiency in keeping this matter in the MDL, (3) the proposed settlement does not release the personal injury claims pending in this MDL. For these reasons, the Court should suggest remand.

---

[1] This brief is filed conditionally to provide a reply to the proposed opposition brief filed by Proposed Intervenors in the event this Court grants their pending motion to intervene. Monsanto is concurrently filing an opposition to the motion to intervene.

1

**ARGUMENT**

I. **Proposed Intervenors' Allegations of Collusion are Unfounded and Unsupported by the Facts.**

Contrary to Proposed Intervenors' specious rendition of the facts, the proposed settlement constitutes an excellent result to Class Members and follows over two years of hard-fought litigation, including more than a dozen actions prosecuted by Class Counsel[2] and Plaintiffs' Counsel[3] in federal and state courts around the country, against both Monsanto and large retailers of Roundup (the "Related Actions"). As discussed in the moving papers, the Parties agreed to a claims-made settlement pursuant to which Monsanto will establish a fund between $23 million (the "Floor Amount") and $45 million (the "Ceiling Amount") against which Class Members can submit claims for approximately 20 percent of the average retail price of Roundup® Lawn & Garden Products ("Roundup")—representing *two-thirds* of Plaintiffs' estimated best-case damages at trial. *Compare* Dkt. No. 59-1 at (D)-(E) *with* Sharp Supp. Decl., Dkt. No. 35, the "Sharp Report," at ¶ 13. Class Counsel and Plaintiffs' Counsel's arduous efforts, as described below, have led to a proposed settlement that is fair, reasonable, and adequate.

A. **The Related Actions Contributed to the Settlement.**

Proposed Intervenors' dismissive and misleading characterization of the Related Actions fails to recognize or understand the significant impact the Related Actions had on the proposed settlement. The Related Actions, targeting both Monsanto *and* the retailers that sold the Products, involved novel legal theories that were vigorously litigated and contributed significantly to the settlement in this matter.

1. **The *Ezcurra* Matter**

---

[2] Class Counsel means the following attorneys of record in this action: Gillian L. Wade, Sara D. Avila, and Marc A. Castaneda of Milstein, Jackson, Fairchild & Wade, LLP. *See* Dkt. No. 59-1 at (A)(16).
[3] Plaintiffs' Counsel means the following additional counsel for Plaintiffs: (1) Rhodunda Williams & Kondraschow, LLC; (2) The Law Offices of Howard Rubinstein; (3) Southern Atlantic Law Group, PLLC; (4) The Casey Law Firm, LLC; (5) Sheehan & Associates, P.C.; and Harrelson Law Firm, P.A. *See* Dkt. No. 59-1 at (A)(43).

2

Proposed Intervenors downplay the significant role *Ezcurra v. Monsanto Co.*, No. 9:20-cv-80524-DMM (S.D. Fla.) (filed Feb. 19, 2020) ("*Ezcurra*") played in bringing about the Settlement.[4] Dkt. No. 78-1 at 3-4. As discussed in Plaintiffs' preliminary approval motion filed in the Delaware District Court (the "MPA"), the parties in *Ezcurra* promptly engaged in discovery following their Rule 26(f) conference, with Monsanto producing thousands of pages of documents (including sales data), and Ezcurra producing his Rule 26(a)(2) expert report measuring class-wide damages under a price premium model. *See* Dkt. No. 25 (MPA); Dkt. No. 35, Sharp Report. Although the court ultimately granted Monsanto's motion to dismiss, Ezcurra filed an appeal that is fully briefed and pending before the Eleventh Circuit.

In reaching the Settlement, the parties had the benefit of the discovery record developed in *Ezcurra,* and briefing the complex issues raised in a similar consumer case.

### 2. The Retailer Actions

The Related Actions[5] targeting major retailers of the Products also played a significant role in reaching the Settlement. Although these cases do not name Monsanto directly, they share the common goal of seeking accountability for the lack of disclosure of Roundup's potential carcinogenicity and are based on virtually the same allegations. Proposed Intervenors fail to recognize the tremendous risk this coordinated litigation strategy created for Monsanto by seeking to hold the retailers that sell Roundup liable for selling it to consumers.

Class Counsel and Plaintiffs' Counsel performed substantial work in these cases. In *Weeks v. Home Depot*, 2:19-cv-06780 FMO (ASx) (C.D. Cal.) (filed Aug. 8, 2019) ("*Weeks*"), the parties engaged in discovery, including Home Depot's production of tens of thousands of pages of

---

[4] Ezcurra sought to represent a Florida class of debit and credit card purchasers of the subject Roundup® products. Ezcurra did *not* limit the class to persons who purchased Roundup® from Home Depot. And the class was limited to debit and credit card purchasers because of the specific ascertainability standard in the Eleventh Circuit. *See Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021) ("a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination").
[5] A summary of the other Related Actions is set forth in Appendix A to the *Gilmore* Plaintiffs' preliminary approval motion filed in Delaware. *See* Dkt. No. 25 at App'x A.

3

documents in its rolling production, Weeks's responses to Home Depot's lengthy written discovery, and many conferences of counsel regarding discovery disputes. Weeks prevailed on certain issues on Home Depot's second motion to dismiss, with the court finding the case was not expressly or impliedly preempted and that *a retailer could be liable under the Unfair Competition Law for knowingly selling a dangerous product without informing consumers of the dangers*. *Weeks,* 2020 U.S. Dist. LEXIS 188369, at *5-21 (C.D. Cal. Sept. 18, 2020) (allowing Weeks to "conduct discovery with respect to the scope and extent of defendant's knowledge regarding the health risks to consumers posed by Roundup"). Although the case was later dismissed with prejudice, Weeks has appealed and the matter is pending before the Ninth Circuit.

Proposed Intervenors criticize the work done in *Taylor v. Costco Wholesale Corporation*, No. 2:20-cv-00655-KJM-DMC) (E.D. Cal.) (filed Mar. 27, 2020) and *Hanna v. Walmart Inc.*, No. 5:20-cv-01075 (C.D. Cal.) (filed May 22, 2020) because both were also dismissed. Dkt. No. 78-1 at 4-5. However, in both cases, plaintiffs were given leave to amend after substantial briefing. Taylor and Hanna thereafter strengthened their allegations and continued litigating until Plaintiffs and Monsanto reached an agreement in principle to settle the case.

**B.   Gilmore's Meritorious Delaware Suit.**

Proposed Intervenors fault Class Counsel's litigation strategy in pursuing Gilmore's claims against Monsanto and belittle the merits of his action in Delaware. Dkt. No. 78-1 at 4-6. Although Gilmore did originally file in Oregon (where he purchased Roundup®) and voluntarily dismissed his suit, the ultimate objective was a forum to pursue nationwide class certification. Indeed, Delaware is a more suitable forum for purposes of certifying a nationwide class because Monsanto is incorporated in Delaware, and the Court has jurisdiction over non-resident class members' claims. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1783 (2017) ("out-of-state plaintiffs [not prevented] from joining together in a consolidated action in the States that have general jurisdiction over [defendant]"). If anything, the pursuit of his claims in Delaware shows Gilmore's dedication to the case and willingness to pursue the claims he genuinely believes in a jurisdiction where nationwide certification is viable. Additionally, Proposed Intervenors'

4

suggestion the DCFA does not apply to Plaintiffs' claims because Plaintiffs purchased Roundup® in states other than Delaware is wrong. The DCFA applies to conduct in Delaware, and Plaintiffs clearly allege Monsanto is incorporated and transacts business in Delaware, and that the material omissions giving rise to Plaintiffs' claims arose, at least in part, in Delaware. Dkt. No. 22 at ¶¶ 11, 12, 22, 24, 25, 27.

Proposed Intervenors further criticize Gilmore's failure to seek a full refund and punitive damages in the Delaware action, although he had in Oregon. Dkt. No. 78-1 at 6. However, Plaintiffs' Counsel and Class Counsel's litigation strategy, in the course of pursuing this action and the Related Actions, has adjusted according to certain legal realities. For example, full-refund damages are generally not recoverable under Plaintiffs' DCFA and breach of warranty claims. *See Harnish v. Widener Univ. Sch. of L.*, 833 F.3d 298, 307 (3d Cir. 2016) (explaining that measures of damages under DCFA are "benefit of the bargain" or "out of pocket" damages, in which damages are the difference between either represented value or price paid and actual value of product); *Scoy v. Kasal*, 1999 Del. Super. LEXIS 240, at *12-13 (Del. Super. Ct. Apr. 9, 1999) (similar for breach of warranty). With respect to punitive damages, had the *Gilmore* Plaintiffs not reached a settlement with Monsanto and the matter proceeded to trial, they were not precluded from amending their complaint to seek punitive damages. The fact that they did not seek punitive damages prior to settling this matter is irrelevant, considering a nationwide settlement need not account for the speculative possibility that a fraction of class members could potentially recover punitive damages under certain states' laws. *See Moore v. Verizon Comms. Inc.*, 2013 U.S. Dist. LEXIS 122901, at *36 (N.D. Cal. Aug. 28, 2013) (a settlement need not provide for punitive damages and such awards are "inherently speculative and discretionary").

      **C.    The Parties' Mediated Negotiations Were Conducted at Arm's-Length and Resulted in a Settlement that is Fair, Reasonable, and Adequate.**

On February 16, 2021, while Monsanto's motion to dismiss the FAC was pending and the Related Cases had been ongoing for years, the parties conducted a joint mediation before the Honorable Diane M. Welsh of JAMS, a former United States Magistrate Judge and an experienced

5

mediator nationally recognized for her work in complex class actions. ECF No. 27 ¶¶ 2-3.[6] The twelve-hour mediation was at times contentious but ultimately successful, and there can be no question it was conducted at "arm's length". *See id.* at ¶¶ 9, 10. (the "outcome of the mediated negotiations is the result of a fair, thorough, and fully informed arms-length process between highly capable, experienced, and informed parties and counsel" and Judge Welsh "observed nothing that suggested any collusion or other untoward behavior by counsel for either party.").

Proposed Intervenors claim the proposed settlement largely benefits Monsanto, the *Gilmore* Plaintiffs and their counsel, at the expense of the class. Dkt. No. 78-1 at 7-8. This is an astonishing argument considering Class Members stand to receive cash payments equal to approximately 20% of the average retail price for each unit purchased. Dkt. No. 59-1 at (E)(1). This amounts to roughly *two-thirds* of Plaintiffs' estimated best-case damages at trial. *See* Sharp Report at ¶ 13 ("product prices would have been approximately 31% lower but for the defendant's alleged omissions"). Such recovery is fair and reasonable on its face. *See Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, 2021 U.S. Dist. LEXIS 87268, at *24 (N.D. Cal. May 5, 2021) ("a settlement that accounts for over a third of the total possible recovery is reasonable").

Proposed Intervenors disapprove of the *Gilmore* Plaintiffs' attorneys' fees request, which *will not exceed* 25% of the Ceiling Amount of $45 million, Dkt. No. 78-1 at 7 (*citing* Dkt. No. 59-1 at (F)(1))—however, twenty-five percent is the "the 'benchmark' level for reasonable attorney's fees in class action cases." *Garibay v. Archstone Cmtys. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Moreover, a percentage-of-the-fund fee structure "'align[s] the interest of lawyer and client[, as] [t]he lawyer gains only to the extent his client gains.'" *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1454–55 (N.D. Cal. 1994) (citations omitted). Proposed Intervenors maintain Plaintiffs' attorneys' fees might ultimately represent a higher percentage of the claimants' total recovery. Dkt. No. 78-1 at 7. This argument however is premature, as the claims rate is unknown

---

[6] Class Counsel and counsel for Monsanto had previously designated Judge Welsh as a private mediator in Ezcurra in May 2020 pursuant to the Southern District of Florida's Local Rules and the court's Pretrial Scheduling Order. See Notice of Mediator Selection (Ezcurra, ECF. No. 25).

at this stage in the settlement, and in any event, the fee award is ultimately left within the discretion of the court. But assuming that does occur, some courts, including the Third Circuit, have held a fee award based on the funds made available to the class is permissible, even with a low claims rate. *See In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013) ("Class counsel should not be penalized for these or other legitimate reasons [for a low claims rate] unrelated to the quality of representation they provided."). Proposed Intervenors further criticize the *Gilmore* Plaintiffs' service awards, but again, whether to award these amounts is in the Court's discretion and does not impact the validity of the proposed settlement. Lastly, they attack the scope of the release (which *does not* include personal injury and medical monitoring claims) and the Motion to Stay. Notably, the *Tomlinson* matter is already stayed. Order for Stay, *Tomlinson v. Monsanto Co.*, No. 1916-CV22788 (Jackson Cty, Mo. Jul. 20, 2021) (staying proceedings pending settlement proceedings in this matter).

Proposed Intervenors' disparaging depiction of the *Gilmore* Plaintiffs' litigation efforts and the adequacy of the proposed settlement is woefully inaccurate and misleading. The facts demonstrate the proposed settlement was the result of a fair, thorough, and fully informed arms-length mediation following over two years of vigorous litigation.

**II.     The Court Should Suggest That Remand to the Delaware District Court is Appropriate.**

    **A.     Legal Standard**

As discussed in the moving papers, the Panel may remand a consolidated action "upon [] the transferee court's suggestion of remand," Panel Rule 10.1(b), placing "great weight on the transferee judge's determination that remand of a particular action at a particular time was proper." *In re IBM Peripheral EDP Devices Antitrust Litig.*, 407 F. Supp. 254, 256 (J.P.M.L. 1976). Generally, courts find remand is appropriate where the action will no longer "benefit from inclusion in the coordinated or consolidated pretrial proceedings [] and the remaining case-specific issues are best

left to decision by the courts that will try the cases." *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig. (MDL 2391)*, 2018 U.S. Dist. LEXIS 226693, at *3 (N.D. Ind. Sept. 6, 2018).

**B.      The Common Questions *Gilmore* Shares with Other MDL Cases is Minimal.**

Remand is appropriate because individual, rather than common, factual questions predominate as to the issues of causation and injury. *See In re Airline "Age of Employee" Emp't Practices Litig.*, 483 F. Supp. 814, 817 (J.P.M.L. 1980) (consolidation and transfer are not justified where individual, rather than common, factual questions predominate). The *Gilmore* Plaintiffs do not dispute the existence of certain overlapping issues pertaining to Monsanto's marketing, labeling, and sale of Roundup without any disclosures as to its health risks. But the MDL plaintiffs allege that they were physically harmed by the products, and must prove their use of Roundup and related exposure to glyphosate caused them to develop cancer and/or other personal injuries. The *Gilmore* Plaintiffs, on the other hand, disclaim any physical harm and allege only that they paid more for a product than they would have but for Monsanto's omissions. Dkt. No. 22 at ¶¶ 134-35; *see also Harnish v. Widener Univ. Sch. Of Law*, 833 F.3d 298, 308 (3d Cir. 2016) (economic damages under "benefit-of-the-bargain" theory is available under the DCFA). Proving such overpayment requires economic evidence like the hedonic-regression damages model used by the *Gilmore* Plaintiffs in briefing their preliminary approval motion before the Delaware District Court*. See generally* Sharp Supp. Decl., Dkt. No. 35, the "Sharp Report."  As stated in the moving papers, the *Gilmore* Plaintiffs' injuries are related to the injury incurred at the point of purchase (by the purchaser), as opposed to any injury stemming from exposure to Roundup *after* purchase (regardless of who purchased it).

Plaintiffs acknowledge the JPML has, in some instances, centralized economic loss with personal injury claims. But given the procedural advancement in *Gilmore* (namely, that it has settled and Plaintiffs have moved for preliminary approval), remand is warranted. Whether the proposed settlement satisfies Rule 23's requirements has already been briefed in the Delaware District Court and is an issue that does not overlap with the proceedings in the MDL.

8

### C. The Issue of Whether the Proposed Settlement Should be Approved is Case-Specific and Best Left to Decision of the Delaware District Court in the Interest of Efficiency.

Proposed Intervenors argue the issue of whether the proposed settlement is fair, reasonable, and adequate is *not* case-specific and that this Court is capable of evaluating certain issues relevant to preliminary approval, including preemption and adequacy of representation. Dkt. No. 78-1 at 11-12. But the degree of economic loss (i.e., how much more plaintiffs paid for the products than they otherwise would have paid but for Monsanto's omissions) suffered by the *Gilmore* Plaintiffs and members of the Settlement Class is indeed case-specific, in that it is an issue that has never been addressed in MDL. This issue alone is likely to "likely to undermine the alleged efficiencies that could be gained from centralizing." *In re United Healthcare Servs., Inc. Harvoni (Ledipasvir & Sofosbuvir) Health Ins. Litig.*, 222 F. Supp. 3d 1339, 1340–41 (J.P.M.L. 2016). While this Court is certainly equipped to address this issue and the other issues raised by Proposed Intervenors, the primary question for remand is whether continued consolidation would yield efficiency gains. Here, it is inefficient for the Parties to re-brief a fully briefed motion for preliminary settlement approval under Ninth Circuit law, especially where the Delaware District Court has already considered briefings on motions to dismiss, amended complaints, and motions to certify the class. Dkt. Nos. 10, 14-19, 22-25.

### D. The Proposed Settlement Does Not Release the Personal Injury Claims in the MDL.

Proposed Intervenors complain the proposed settlement will impact the cases in the MDL, citing several cases where plaintiffs asserted more than physical injury. Dkt. No. 78-1 at 14-15. Misreading the unambiguous settlement language, they claim the proposed settlement would operate to foreclose these plaintiffs from seeking damages *for all* of their harm. *Id.* Although the proposed settlement would release claims for economic loss pertaining to the purchase price of

9

Roundup, Personal Injury Claims,[7] Medical Monitoring Claims,[8] and other claims for economic loss flowing therefrom are unaffected. Dkt. No. 59-1 at ¶ (L)(1). Thus, any action asserting both a Personal Injury Claim or Medical Monitoring Claim *and* a Released Claim—i.e., a claim for economic damages arising from the purchase of the Product—would be released only as to the Released Claim and the other claims would be allowed to proceed. It is worth noting the vast majority of the MDL claims will not be impacted by the proposed settlement. But to the extent any plaintiffs in this MDL assert claims that *are* released, they can object to the settlement or opt out entirely.  *See* Dkt. No. 59-1 at (J)-(K). Proposed Intervenors' concerns regarding the consequences of the proposed settlement on the MDL cases are overblown and do not preclude the Court from suggesting remand.

### III. Conclusion

For all these reasons and those set out in Plaintiffs' opening brief, this Court should grant this motion requesting a suggestion of remand of this action to the United States District Court for the District of Delaware.

---

[7] Defined as "Claims that assert a right to recover damages for the actual physical injury or illness of a natural person or that seek to recover compensatory, punitive, or exemplary damages, or attorney's fees, allegedly resulting or arising from the actual physical injury or illness of a natural person, including, for example, claims for mental or physical pain or suffering; emotional or mental harm; loss of enjoyment of life; loss of wages, income, earnings, or earning capacity; medical expenses; doctor, hospital, nursing, or drug bills; loss of support, services, consortium, companionship, society, or affection; damage to familial relations; and wrongful death and survival actions. It is expressly contemplated that a cause of action could include both Claims that are Personal Injury Claims and Claims that are not Personal Injury Claims." Dkt. No. 59-1 in case 1:20-cv-01085-MN, at ¶ (A)(41).

[8] Defined as "Claims that seek to require, or recover damages amounting to the costs of, medical monitoring or screening for potential physical injury or illness of a natural person. It is expressly contemplated that a cause of action could include both Claims that are Medical Monitoring Claims and Claims that are not Medical Monitoring Claims." Dkt. No. 59-1 in case 1:20-cv-01085-MN, at ¶ (A)(32).

Dated:  November 21, 2021

By:       /s/ Gillian L. Wade

GILLIAN L. WADE
MARC A. CASTANEDA
Milstein, Jackson Fairchild & Wade, LLP
gwade@mjfwlaw.com
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, CA 90024

JOEL OSTER
Oster Law Firm
Of Counsel to the Law Offices of Howard Rubinstein
joel@osterlaw.com
22052 W. 66th St. #192
Shawnee, Kansas 66226

*Attorneys for Plaintiffs Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kristy Williams*

11