UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | **PRETRIAL ORDER NO. 259: DENYING MOTIONS FOR SUMMARY JUDGMENT BASED ON TEXAS PRESUMPTION OF NO LIABILITY** |
| *Blair v. Monsanto*, Case No. 19-cv-07984 | |
| *Chapman v. Monsanto*, Case No. 20-cv-01277 | |
| *Denkins v. Monsanto*, Case No. 20-cv-03301 | |
| *Garza v. Monsanto*, Case No. 20-cv-06988 | |
| *Koen v. Monsanto*, Case No. 20-cv-03074 | |
| *Solis v. Monsanto*, Case No. 20-cv-07391 | |

Six of the remaining eight Wave 3 cases involve plaintiffs who assert claims under Texas state law. Monsanto moves for summary judgment against each of these plaintiffs, contending that it is entitled to a presumption of no liability under Texas' Product Liability Act (TPLA) and that plaintiffs fail to rebut the presumption. But the section of the TPLA that Monsanto invokes does not apply here, and so the motions for summary judgment are denied.

I.

Under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), a company that wants to sell or distribute a pesticide in the United States must go through the EPA registration process. One of the main criteria that the EPA uses to determine whether to register a pesticide

is whether "it will perform its intended function without unreasonable adverse effects on the environment." 7 U.S.C.A. § 136a(c)(5)(C). To this end, applicants submit studies and data relating to the safety of their pesticide for the EPA's review. The EPA considers these along with other independent studies to assess the safety of the pesticide and to determine whether it should be registered. If the EPA approves the pesticide for registration, the pesticide is subject to a periodic re-registration process, where the EPA reviews the pesticide at least every 15 years to ensure that it continues to carry out its intended function without unreasonably adverse effects on the environment.

## II.

Roundup was subject to the EPA registration process. The EPA registered Roundup in 1974, and the EPA has since re-registered Roundup multiple times.

Based on the registration and repeated re-registration of Roundup, Monsanto contends that it is entitled to a presumption of no liability under section (a) of the TPLA. Section (a) of the TPLA states:

> there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the product's formula, labeling, or design complied with mandatory safety standards or regulations adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm.

Tex. Civ. Prac. & Rem. Code Ann. § 82.008(a).

For purposes here, the key language of section (a) is "mandatory safety standards or regulations." Monsanto does not analyze this language in any depth, and instead it appears to assume that the EPA registration and re-registration processes qualify as "mandatory safety standards or regulations" within the meaning of the TPLA.

Monsanto's reading of section (a) may seem reasonable at first blush, but it does not square with section (c) of the statute. *Bexar Metro. Water Dist. v. City of San Antonio*, 228

S.W.3d 887, 898 (Tex. App. 2007) ("we look at the entire act as a whole, rather than isolated portions"). Section (c) states:

> there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant allegedly caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the product was subject to pre-market licensing or approval by the federal government, or an agency of the federal government, that the manufacturer complied with all of the government's or agency's procedures and requirements with respect to pre-market licensing or approval, and that after full consideration of the product's risks and benefits the product was approved or licensed for sale by the government or agency.

Tex. Civ. Prac. & Rem. Code Ann. § 82.008(c).

Based on the language in section (c), there is no reasonable way to interpret "mandatory safety standards or regulations" as encompassing the EPA registration and re-registration processes. The Texas legislature has codified a presumption that "the entire statute is intended to be effective[.]" Tex. Gov't Code Ann. § 311.021(2). This presumption dictates that "[w]hen possible, we must not interpret one portion of a statute so as to render another portion of the statute meaningless." *Saade v. Villarreal*, 280 S.W.3d 511, 522 (Tex. App. 2009); *Bexar*, 228 S.W.3d at 898 ("we must presume that the legislature would not perform a meaningless or useless act"). And here, interpreting section (a) as encompassing approval by a regulatory agency would render section (c) meaningless. It would make no sense for "mandatory safety standards and regulations" to include an agency approval process when the statute contains a separate section that explicitly creates a presumption for products that go through such a process. Thus, under a commonsense reading of the statute's plain language, the EPA registration and re-registration process cannot be "mandatory safety standards or regulations" that would entitle Monsanto to a presumption of no liability.[1]

---

[1] While the TPLA does not define "safety standards or regulations," the case law that Monsanto relies on suggests that these are typically standards or regulations that prescribe specific—and often quantitative—criteria that can be objectively measured. *See, e.g.*, *Toyota Motor Sales, U.S.A., Inc. v. Reavis*, 627 S.W.3d 713, 728 (Tex. App. 2021) ("FMVSS 207 requires a seatback strength of 3,300 inch-pounds"); *Trenado v. Cooper Tire & Rubber Co.*, 465 F. App'x 375, 379

Moreover, section (c) fits much more tightly with the EPA registration and re-registration process than section (a). Section (c) contemplates a presumption of no liability for products where a government agency has approved the product "after full consideration of the product's risks and benefits." And the EPA registration and re-registration processes reflect this type of cost-benefit analysis. Before a pesticide can be sold in the United States, the EPA must determine whether it "will perform its intended function without unreasonable adverse effects on the environment." The process involves review and approval by an agency of the federal government, not mandatory safety standards or regulations that a product is measured against.

### III.

While Monsanto may have been able to establish that it was entitled to a presumption of no liability under section (c), it does not make that argument in its briefs and instead relies solely on section (a). Because Monsanto is not entitled a presumption of no liability under section (a), the Court denies its motions for summary judgment based on TPLA preemption.

**IT IS SO ORDERED.**

Dated: December 28, 2021

_____
VINCE CHHABRIA
United States District Judge

---

(5th Cir. 2012) (FMVSS 109 "specifies tire dimensions and laboratory test requirements for bead unseating resistance, strength, endurance, and high speed performance").