**SHOOK, HARDY & BACON L.L.P.**
Jennise W. Stubbs
600 Travis Street, Suite 3400
Houston, TX 77002-2026
Telephone:    (713) 227-8008
Facsimile:     (713) 227-9508
Email:        jstubbs@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | |
| *Jeffrey T. Jobman, et al. v. Monsanto Co.,* Case No. 3:22-cv-00093-VC | |

## MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' PETITION

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiffs Jeffrey T. Jobman and Christy L. Jobman's Complaint and Jury Demand ("the Complaint"), except as set forth below. As defined in the Complaint and as used in this answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies. Silence as to any allegations shall constitute a denial.

1.      In response to the allegations in the first sentence of paragraph 1, Monsanto admits that plaintiffs purport to bring an action for damages allegedly related to exposure to Roundup®-branded products. Monsanto denies the remaining allegations in the first sentence of paragraph 1. In response to the remaining allegations in paragraph 1, Monsanto admits that glyphosate repeatedly has been found safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by

- 1 -

regulatory bodies consistent with those findings.  Monsanto also admits that the United States Environmental Protection Agency ("EPA") repeatedly has concluded, pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), that glyphosate based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  Monsanto denies the remaining allegations in paragraph 1.

2.     Monsanto denies the allegations in the first five sentences of paragraph 2.  In response to the allegations in the last sentence of paragraph 2, Monsanto admits that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling and states that all labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

3.     For purposes of this answer, Monsanto accepts the allegations regarding Nebraska residency in paragraph 3.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 3 and therefore denies those allegations.

4.     In response to the allegations in paragraph 4, Monsanto admits that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding plaintiff's use history and reliance in paragraph 4 and therefore denies those allegations.  The remaining allegations in paragraph 4 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

5.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5 and therefore denies those allegations.

6.     In response to the allegations in the first sentence of paragraph 6, Monsanto states that all labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 6 and therefore denies those allegations.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second and last

sentences of paragraph 6 and therefore denies those allegations.  In response to the allegations in the third sentence of paragraph 6, Monsanto refers to the labels for Roundup®-branded products, which are the best evidence of their contents, and denies any allegation inconsistent with their terms. In response to the allegations in the fourth sentence of paragraph 6, Monsanto denies that Roundup®-branded products have carcinogenic properties. In response to the remaining allegations in paragraph 6, Monsanto states that the document cited and quoted in paragraph 6 speaks for itself and does not require a response.

7.      In response to the allegations in the first and second sentences of paragraph 7, Monsanto admits that plaintiffs have sued for damages but denies liability to plaintiffs.  The remaining allegations in paragraph 7 set forth conclusions of law for which no response is required.

8.      In response to the allegations in paragraph 8, Monsanto denies that it has caused tortious injury to plaintiffs.  The remaining allegations in paragraph 8 set forth conclusions of law for which no response is required.

9.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 9 and therefore denies those allegations.

10.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 10 and therefore denies those allegations.  The allegations in the second sentence of paragraph 10 are vague and ambiguous and Monsanto therefore denies those allegations.  Monsanto states that all labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.  In response to the allegations in the third and last sentences of paragraph 10, Monsanto admits that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling.  Monsanto admits the allegations in the fourth sentence of paragraph 10.

11.      In response to the allegations in the first sentence of paragraph 11, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The

remaining allegations in the first sentence of paragraph 11 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 11 and therefore denies those allegations. Monsanto admits the allegations in the second sentence of paragraph 11. Monsanto denies the allegations in the third sentence of paragraph 11 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the final sentence of paragraph 11 to the extent that it suggests that glyphosate is present in any plants at anything other than de minimis amounts well within regulatory safety levels, as determined by the EPA.

12.     In response to the allegations in the first sentence of paragraph 12, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds and that glyphosate is the active ingredient in Roundup®-branded herbicides. Monsanto admits the allegations in the second sentence of paragraph 12. Monsanto denies the allegations in the third sentence of paragraph 12 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the fourth sentence of paragraph 12 to the extent that it suggests that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by the EPA. Monsanto denies the remaining allegations in paragraph 12.

13.     In response to the allegations in paragraph 13, Monsanto admits that, at certain times, glyphosate has been the most commonly used herbicide but notes that Monsanto has not been the only manufacturer of glyphosate-based herbicides. Monsanto denies the allegations in the first sentence of paragraph 13. In response to the allegations in the last sentence of paragraph 13, Monsanto admits that the EPA repeatedly has concluded, pursuant to the FIFRA, that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label. To the extent that the allegations in the last sentence of paragraph 13 suggest that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval,

Monsanto denies such allegations.  The remaining allegations in paragraph 13 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

14.     Monsanto denies the allegations in paragraph 14.

15.     Monsanto denies the allegations in paragraph 15.

16.     In response to the allegations in paragraph 16, Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.  Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015. The remaining allegations in paragraph 16 are vague and ambiguous and set forth attorney characterizations and are accordingly denied.

17.     In response to the allegations in paragraph 17 and each of its subparts, Monsanto states as follows: Monsanto denies that glyphosate or Roundup®-branded products cause cancer. The allegations in paragraph 17 and its subparts take statements out of context; are vague, misleading, incomplete, and conclusory; and/or comprise attorney characterizations – and are accordingly denied.  Monsanto admits that it has stated that Roundup®-branded products are safe when used in accordance with the products' labeling.   To the extent that the allegations in paragraph 17 or its subparts purport to quote a document, the document speaks for itself and does not require a response.   To the extent that the allegations in paragraph 17 or its subparts characterize the meaning of a document, Monsanto denies those allegations.   Monsanto denies the remaining allegations in paragraph 17, including each of its subparts.

18.     In response to the allegations in paragraph 18, Monsanto admits that it has stated that Roundup®-branded products are safe when used in accordance with the products' labeling. To the extent that the allegations in paragraph 18 purport to quote a document, the document speaks for itself and does not require a response.

19.     In response to the allegations in paragraph 19, Monsanto admits that the IARC issued a monograph relating to glyphosate in 2015 and that an IARC working group classified glyphosate under Group 2A, but denies that the IARC Monograph is the authoritative standard

for cancer hazard assessment around the world or that IARC based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate. Monsanto states that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015. Monsanto denies the remaining allegations in paragraph 19.

20. The allegations in paragraph 20 set forth conclusions of law for which no response is required.

21. Monsanto admits the allegations in the first sentence of paragraph 21. Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 21 set forth conclusions of law for which no response is required.

22. In response to the allegations in paragraph 22, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 22 set forth conclusions of law for which no response is required.

23. The allegations in paragraph 23 set forth conclusions of law for which no response is required.

24. In response to the allegations in paragraph 24, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA for product safety. The remaining allegations in paragraph 24 set forth conclusions of law for which no response is required.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC  & 3:22-cv-00093-VC

25.     Monsanto denies the allegations in paragraph 25 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration.  The remaining allegations in the first, second, third, fourth and fifth sentences of paragraph 25 set forth conclusions of law for which no response is required.  In response to the remaining allegations in paragraph 25, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.  Monsanto admits that three managers in IBT's toxicology department were convicted of the charge of fraud, but denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.  Monsanto denies the remaining allegations in paragraph 25.

26.     In response to the allegations in paragraph 26, Monsanto admits that EPA posted the EPA CARC Final Report on EPA's website in late April 2016 and took the report off the website in early May 2016.  Monsanto further states that, in September 2016, EPA posted the EPA CARC Final Report that endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 26 and therefore denies those allegations.

27.     Monsanto denies the allegations in paragraph 27.

28.     In response to the allegations in paragraph 28, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that

glyphosate does not pose any cancer risk to humans. In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies." EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity." Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20 ("EPA 2015 Desk Statement").

Monsanto admits that it has stated that Roundup®-branded products are safe when used in accordance with the products' labeling. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto denies the remaining allegations in paragraph 28.

29.     In response to the allegations in paragraph 29, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate. Monsanto states that only one of these laboratories was hired to conduct

toxicity tests of glyphosate.  Monsanto admits that Industrial Bio-Test Laboratories ("IBT") was hired to conduct studies in connection with the registration of a Roundup®-branded product. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

30.    Monsanto denies the allegations in paragraph 30 to the extent they suggest that FDA performed an inspection of IBT laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results. The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 30 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies such allegations. Monsanto admits that three managers in IBT's toxicology department were convicted of the charge of fraud, but denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

31.    In response to the allegations in the first and second sentences of paragraph 31, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in the first and second sentences of paragraph 31 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies such allegations.  Monsanto admits that it has stated that Roundup®-branded products are safe when

used in accordance with the products' labeling.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto denies the remaining allegations in paragraph 31.

32.    The allegations in the first, second, and third sentences of paragraph 32 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 32 and therefore denies those allegations.

33.    Monsanto denies the allegations in paragraph 33.

34.    The allegations in the first sentence of paragraph 34 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 34 and therefore denies those allegations.

35.    The allegations in paragraph 35 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

36.    In response to the allegations in paragraph 36, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used Roundup®-branded products and therefore denies those allegations.  Monsanto admits that, following the development of Roundup® Ready seeds, it began to sell them in the 1990's and that such seeds are now widely used by farmers in the United States and worldwide.  The remaining allegations in the first-numbered paragraph 36 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

37.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used Roundup®-branded products in the first sentence of paragraph 37 and therefore denies those allegations.  Monsanto denies the allegations in the last sentence of paragraph 37.  The remaining allegations in paragraph 37 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

38.    Monsanto denies the allegations in paragraph 38.

39.     In response to the allegations in paragraph 39, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup® products. This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto. Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer. Monsanto denies the remaining allegations in paragraph 39.

40.     Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer. Monsanto denies the allegations in first sentence paragraph 40. In response to the remaining allegations in paragraph 40, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General. The assurance speaks for itself and thus does not require any further answer. To the extent the subparts to paragraph 40 purport to quote a document, the document speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 40 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

41.     Monsanto denies the allegations in paragraph 41. To the extent that allegations in footnote 15 of paragraph 41 cite and/or summarize information about legal proceedings from a Department of Justice website, the statements on that website speak for themselves and do not require a response. To the extent that allegations in footnote 15 of paragraph 41 incorrectly characterize those legal proceedings, Monsanto denies those allegations.

42.     Monsanto denies the allegations in the first sentence of paragraph 42. Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 42 to the extent they suggest that this ruling was in any way related to plaintiff's claims here that glyphosate can cause cancer. The remaining allegations in paragraph 42 are vague, ambiguous, and conclusory and comprise attorney characterizations and are accordingly denied.

43.     Monsanto denies the allegations in the first sentence of paragraph 43. In response to the allegations in the second sentence of paragraph 43, Monsanto admits that IARC is a

subgroup of the WHO.  The remaining  allegations  in paragraph 43 are vague and conclusory and comprise  attorney characterizations,  and are accordingly  denied.

44.   In response to the allegations  in paragraph 44, Monsanto states that the cited document  speaks for itself and does not require a response.

45.   In response to the allegations  in the first sentence of paragraph 45, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow  in its carcinogenicity  evaluations.   Monsanto denies the allegations in the second and third sentences of paragraph 45.  In response to the allegations  in the fourth sentence of paragraph 45, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking  at the safety of glyphosate  and glyphosate-containing herbicides  in human populations  or that it reliably  considered the studies that it purports  to have reviewed, which frequently  reach conclusions  directly  contrary to those espoused by the IARC working  group.  To the extent the allegations  purport to characterize statements made in the IARC monograph  for glyphosate,  the statements in that document speak for themselves, but Monsanto lacks information  or knowledge  sufficient to form a belief as to the accuracy of the source of said information  and accordingly  denies the allegations.

46.   Monsanto denies the allegations  in paragraph 46 to the extent that they suggest that IARC had previously  assessed glyphosate.   Monsanto admits that IARC classified glyphosate  as a Group 2A agent in March 2015.

47.   In response to the allegations  in the first and second sentences of paragraph 47, Monsanto admits that the IARC working  group identified  a number of case control studies of populations  with exposures to glyphosate,  but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.   In response to the remaining allegations  in paragraph 47, Monsanto denies that the IARC working  group considered all of the data in the numerous studies that have been conducted looking  at the safety of glyphosate and glyphosate-containing  herbicides  in human populations  or that it reliably  considered the studies that it purports to have reviewed, which frequently  reach conclusions  directly  contrary

to those espoused by the IARC working group.  To the extent that the remaining allegations in paragraph 47 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves.

48.    In response to the allegations in paragraph 48, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances.  Monsanto denies the allegation that all members of the working group are "experts."  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 48 and therefore denies those allegations.

49.    In response to the allegations in paragraph 49, Monsanto denies the IARC working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 49 and therefore denies those allegations.

50.    To the extent that the allegations in paragraph 50 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.  To the extent that the allegations in the last sentence of paragraph 50 mean that more than *de minimis* amounts of glyphosate exposure occur, Monsanto denies those allegations.

51.    In response to the allegations in paragraph 51, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

52.    In response to the allegations in paragraph 52, Monsanto admits that the IARC working group purported to make these findings but denies that the cited studies provide any

reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persist in human blood or urine.

53.   In response to the allegations in paragraph 53, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers. The AHS cohort study did not find a positive association between glyphosate and any type of cancer. Monsanto denies all other allegations in paragraph 53.

54.   In response to the allegations in paragraph 54, Monsanto admits that the referenced studies were published, but denies that the studies show any scientifically reliable findings.

55.   In response to the allegations in the first and second sentences of paragraph 55, Monsanto denies that the cited study provides any reliable basis for a finding that any meaningful levels of glyphosate are present or persist in human blood or urine. Monsanto denies the remaining allegations in the first and second sentences of paragraph 55. Monsanto admits that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. The allegations in the fifth sentence of paragraph 55 are vague and conclusory and comprise attorney characterizations, and are accordingly denied. In response to the allegations in the sixth and seventh sentences of paragraph 55, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that allegations in the sixth and seventh sentences of paragraph 55 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited study supports the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in the sixth and seventh sentences of paragraph 55.

- 14 -

56.     In response to the allegations in paragraph 56, Monsanto denies that any exposure to Roundup®-branded products can cause cancer and other serious illnesses and therefore denies the allegations in the first and fourth sentences of paragraph 56. Monsanto admits that certain Roundup®-branded herbicides contain adjuvants and that EPA has classified such adjuvants as inert. Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health. The remaining allegations in paragraph 56 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

57.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 57 and therefore denies those allegations.

58.     Monsanto denies the allegations in paragraph 58 and each of its subparts.

59.     Monsanto denies the allegations in paragraph 59 and each of its subparts.

60.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 60. Monsanto denies the allegations in the third and fifth sentences of paragraph 60. The remaining allegations in paragraph 60 set forth conclusions of law for which no response is required.

61.     In response to the allegations in paragraph 61, Monsanto denies that Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") or other serious illnesses and denies that any exposure to Roundup®-branded products was injurious to plaintiff's health or the health of others. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 61 and therefore denies those allegations.

62.     The allegations in the first sentence of paragraph 62 set forth conclusions of law for which no response is required. Monsanto denies the allegations in the second sentence of paragraph 62.

63.     Monsanto denies the allegations in the first sentence of paragraph 63. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 63 and therefore denies those allegations.

64.     In response to the allegations in paragraph 64, Monsanto denies that it violated Nebraska or federal law and states that it complied with all applicable law regarding Roundup®-branded products. The remaining allegations in paragraph 64 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto denies all such allegations.

65.     In response to the allegations in paragraph 65, Monsanto denies that it violated Nebraska, or federal laws or regulations; denies that it was negligent; denies the allegation that Roundup®-branded products were misbranded; and states that it complied with all applicable law regarding Roundup®-branded products. Monsanto denies the allegations in the last sentence of paragraph 65. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding where plaintiff was exposed to Roundup®-branded products and where his injuries occurred and therefore denies those allegations. The remaining allegations in paragraph 65 set forth conclusions of law for which no response is required.

66.     Monsanto incorporates by reference its responses to paragraphs 1 through 65 in response to paragraph 66 of plaintiffs' Complaint.

67.     Monsanto denies the allegations in paragraph 67.

68.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 68 that plaintiff used Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 68.

69.     Monsanto denies the allegations in the first sentence of paragraph 69. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 69.

70.     Monsanto denies the allegations in paragraph 70.

71.     Monsanto denies the allegations in paragraph 71 and each of its subparts.

72.     Monsanto denies the allegations in paragraph 72.

73.     Monsanto denies the allegations in paragraph 73.

74.     Monsanto denies the allegations in paragraph 74.

75.     Monsanto denies the allegations in paragraph 75.

76.     Monsanto denies the allegations in paragraph 76.

77.     Monsanto denies the allegations in paragraph 77.

78.     Monsanto denies the allegations in paragraph 78.

79.     Monsanto incorporates by reference its responses to paragraphs 1 through 78 in response to paragraph 79 of plaintiffs' Complaint.

80.     In response to the allegations in paragraph 80, Monsanto denies the allegations that Roundup®-branded products are defective and unreasonably dangerous to consumers. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 80 and therefore denies those allegations. The remaining allegations in paragraph 80 set forth conclusions of law for which no response is required.

81.     In response to the allegations in paragraph 81, Monsanto admits that its principal place of business is in St. Louis County, Missouri. Monsanto denies the remaining allegations in paragraph 81.

82.     Monsanto denies the allegations in the last sentence of paragraph 82. In response to the remaining allegations in paragraph 82, Monsanto admits that it has manufactured and sold Roundup®-branded products, and that that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling.

83.     The allegations in the first and second sentences of paragraph 83 set forth conclusions of law for which no response is required. Monsanto denies the allegations in the last sentence of paragraph 83.

84.     Monsanto denies the allegations in paragraph 84. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

85.     Monsanto denies the allegations in paragraph 85. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

86.     Monsanto denies the allegations in paragraph 86.

87.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 87.

88.     In response to the allegations in paragraph 88, Monsanto denies that Roundup®-branded products have "dangerous characteristics." Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 88 and therefore denies those allegations.

89.     In response to the allegations in paragraph 89, Monsanto denies that there is any risk of serious injury associated with the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 89 regarding plaintiff's knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 89. The remaining allegations set forth conclusions of law for which no response is required.

90.     Monsanto denies the allegations in paragraph 90. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

91.     Monsanto denies the allegations in paragraph 91.

92.     Monsanto denies the allegations in paragraph 92, including the allegations that it failed to comply with federal or Nebraska law.

93.     Monsanto denies the allegations in the first, second, and seventh sentences of paragraph 93. The allegations in the last sentence of paragraph 93 set forth conclusions of law for which no response is required. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 93 and therefore denies the allegations.

94.     Monsanto incorporates by reference its responses to paragraphs 1 through 93 in response to paragraph 94 of plaintiffs' Complaint.

95.     Monsanto denies the allegations in paragraph 95.

96.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 96 and therefore denies those allegations.

97.     The allegations in paragraph 97, including subparts, set forth conclusions of law for which no response is required.

98.     Monsanto denies the allegations in paragraph 98 and each of its subparts.

99.     Monsanto denies the allegations in paragraph 99.

100.    Monsanto denies the allegations in the first sentence of paragraph 100. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 100 and therefore denies those allegations.

101.    Monsanto denies the allegations in paragraph 101.

102.    Monsanto denies the allegations in the first and last sentences of paragraph 102. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 102 and therefore denies those allegations.

103.    Monsanto incorporates by reference its responses to paragraphs 1 through 102 in response to paragraph 103 of plaintiffs' Complaint.

104.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 104 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 104.

105.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 105 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 105 set forth conclusions of law for which no response is required.

106.    Monsanto denies the allegations in the first sentence of paragraph 106. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto lacks information or knowledge sufficient to form

- 19 -

a belief as to the truth of the allegations in paragraph 106 concerning plaintiff's claimed purchase of Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 106 set forth a conclusion of law for which no response is required.

107. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 107 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. The allegation in paragraph 107 regarding Monsanto's implied warranty sets forth a conclusion of law for which no response is required.

108. In response to the allegations in paragraph 108, Monsanto denies that there is any risk of serious injury associated with the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 108 regarding plaintiffs' knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 108. Monsanto denies the remaining allegations in paragraph 108.

109. Monsanto denies the allegations in paragraph 109.

110. Monsanto denies the allegations in paragraph 110.

111. Monsanto denies the allegations in paragraph 111.

112. Monsanto incorporates by reference its responses to paragraphs 1 through 111 in response to paragraph 112 of plaintiffs' Complaint.

113. In response to the allegations in paragraph 113, Monsanto denies that there is any risk of serious injury associated with the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 113 regarding plaintiff's exposure to, use of, and/or knowledge about Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 113 set forth conclusions of law for which no response is required.

114.   Monsanto denies the allegations in the first sentence of paragraph 114 to the extent it encompasses all herbicides as vague and ambiguous, but Monsanto admits the allegations in this sentence to the extent it refers to glyphosate-based herbicides.   Monsanto denies the allegations that Roundup®-branded products are defective and unreasonably dangerous to consumers and therefore denies the remaining allegations in paragraph 114.

115.   In response to the allegations in paragraph 115, Monsanto admits that it has sold glyphosate-based herbicides in accordance with their EPA-approved labeling.   Monsanto further states that paragraph 115, sets forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 115.

116.   The allegations in the first and second sentences of paragraph 116 set forth conclusions of law for which no response is required.   Monsanto denies the remaining allegations in paragraph 116.

117.   Monsanto denies the allegations in paragraph 117.

118.   Monsanto denies the allegations in paragraph 118.

119.   Monsanto denies the allegations in paragraph 119.

120.   Monsanto incorporates by reference its responses to paragraphs 1 through 119 in response to paragraph 120 of plaintiffs' Complaint.

121.   Monsanto denies the allegations in paragraph 121.

122.   Monsanto denies the allegations in paragraph 122.

123.   Monsanto incorporates by reference its responses to paragraphs 1 through 122 in response to paragraph 123 of plaintiffs' Complaint.

124.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 124 and therefore denies those allegations.

125.   In response to the allegations in paragraph 125, Monsanto admits that plaintiffs have sued for damages but denies liability to plaintiffs.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 125 and therefore denies those allegations.

126.  Monsanto incorporates by reference its responses to paragraphs 1 through 125 in response to paragraph 126 of plaintiffs' Complaint.  The allegations in the second sentence of paragraph 126 set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 126.

127.  Certain allegations in paragraph 127 set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 127.

128.  In response to the allegations in paragraph 128, Monsanto denies that plaintiffs are entitled to an award of punitive damages.  The remaining allegations in paragraph 128 set forth conclusions of law for which no response is required.

In response to the allegations in the section entitled "Requests for Relief," Monsanto denies that plaintiffs are entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever.  Monsanto demands that judgment be entered in its favor and against plaintiffs and that the Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

The allegations in the section entitled "Jury Demand & Trial Location Designation" set forth conclusions of law for which no response is required.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

Discovery and investigation may reveal that one or more of the following separate and affirmative defenses should be available to Monsanto in this matter.  Monsanto accordingly preserves the right to assert these affirmative defenses.  As discovery proceeds, if the facts warrant, Monsanto reserves the right to amend its answer and affirmative defenses, and to assert additional defenses.

Further answering, and by way of additional defense, Monsanto states as follows:

1. The Complaint, in whole or part, fails to state claims or causes of action upon which relief can be granted.

2. Plaintiffs' claims are barred because plaintiffs cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3. Plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

4. The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiffs' claims in whole or in part.

5. Applicable statutes of limitations bar plaintiffs' claims in whole or in part.

6. Applicable periods or statutes of repose bar plaintiffs' claims in whole or in part.

7. Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar the plaintiffs' claims in whole or in part.

8. Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiffs' alleged injuries.

9. Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g., Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

10. Plaintiffs' claims are barred in whole or in part pursuant to Neb. Rev. Stat. § 25-21,182 because the design, testing, or labeling of the products at issue was in conformity with the generally recognized and prevailing state of the art in the industry at the time the specific products involved in this action were first sold to any person not engaged in the business of selling such product.

11.     Plaintiffs' claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

12.     Plaintiffs' claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded and/or glyphosate-containing products.

13.     Plaintiffs' claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

14.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including the authority delegated by Congress to the U.S. EPA.

15.     Plaintiffs' claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

16.     If plaintiffs suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiffs' alleged injuries or damages.

17.     Monsanto has no current or former legal relationship or privity with plaintiffs and owes no duty to plaintiffs by which liability could be attributed to it.

18.     Plaintiffs' claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

19.     Plaintiffs' claims for punitive and/or exemplary damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Nebraska Constitution, and/or other applicable state constitutions.

20.     Plaintiffs' claims for punitive and/or exemplary damages are barred because plaintiffs have failed to allege conduct warranting imposition of such damages under Nebraska law and/or other applicable state laws.

21.     Plaintiffs' claims for punitive and/or exemplary damages are barred and/or limited by operation of state and/or federal law.

22.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiffs. If any such warranties were made, which Monsanto specifically denies, then plaintiffs failed to give notice of any breach thereof.

23.     Plaintiffs' negligence proximately caused or contributed to any injuries or damages of plaintiffs. Therefore, plaintiffs' recovery should be reduced in proportion to plaintiffs' negligence and any recovery by plaintiffs should be barred if the plaintiffs' negligence is equal to or greater than the total negligence of all persons against whom recovery is sought. In the event Monsanto is found jointly or severally liable with any other tortfeasor or with multiple tortfeasors, Monsanto reserves its right of contribution to the extent that it has to pay more than Monsanto's pro rata share of the common liability consistent with the provisions set forth in the Nebraska Comparative Negligence Act, Neb. Rev. Stat. § 25-21,185.10 and other applicable law.

24.     Plaintiffs' causes of action are barred in whole or in part by plaintiffs' own failure to mitigate damages.

25.     Plaintiffs' causes of action are barred in whole or in part by the sophisticated user doctrine.

26.     Plaintiffs' recovery, if any, shall be reduced by those payments that plaintiffs receive from collateral sources.

27.     If plaintiffs have been injured or damaged, no injuries or damages being admitted, such injuries were not caused by a Monsanto product.

28.     Plaintiffs' claims are barred to the extent that plaintiffs seek relief under the laws of states that do not govern plaintiffs' claims.

29.     Plaintiffs' claims are barred or limited to the extent that plaintiffs assert claims that are governed by the laws of a state that does not recognize, or limits, such claims.

30.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiffs, dismissing plaintiffs' Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.

DATED: January 12, 2022

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

BY: */s/ Jennise W. Stubbs*
Jennise W. Stubbs
600 Travis Street, Suite 3400
Houston, TX 77002-2926
Telephone:   (713) 227-8008
Facsimile:    (713) 227-9508
Email:        jstubbs@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC  & 3:22-cv-00093-VC

## CERTIFICATE OF SERVICE

I certify that on the 12ᵗʰ day of January 2022, I electronically transmitted the foregoing **MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT** to the Clerk of the court using the ECF system for filing and transmittal of a true and correct copy of the foregoing document was served electronically or by another manner as authorized by FED. R. CIV. P. 5.

*/s/Jennise W. Stubbs*
Jennise W. Stubbs

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC  & 3:22-cv-00093-VC