**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

|  |  |  |
|---|---|---|
| SCOTT GILMORE, JAMES WEEKS, | ) | |
| PAUL TAYLOR, SHERRY HANNA, | ) | |
| AMANDA BOYETTE, JULIO EZCURRA, | ) | |
| ANTHONY JEWELL, and KRISTY | ) | |
| WILLIAMS | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:21-cv-8159 |
| | ) | |
| v. | ) | |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF BRANDON SCHWARTZ**
**REGARDING PROPOSED NOTICE PLAN**

I, Brandon Schwartz, declare:

1.      I am the Director of Notice for Postlethwaite & Netterville, APAC ("P&N"), a full-service administration firm providing legal administration services, including the design, development, and implementation of unbiased complex legal notification programs. P&N was asked by Counsel to develop and execute the proposed Notice Plan and to administer the claims process in the above-referenced matter (the "Action").[1] The following statements are based on my personal knowledge as well as information provided by other experienced P&N employees working under my supervision.

2.      P&N routinely develops and executes notice plans and administers a wide variety of class action and mass action settlements, with subject matters including, but not limited to, products liability, consumer, mass tort, antitrust, labor and employment, insurance, and healthcare. P&N team members have extensive experience designing and implementing notice and settlement programs. More information about P&N can be found on our website at www.pnclassaction.com.

## EXPERIENCE

3.      With more than 15 years of class action, marketing, advertising, and media experience, I have developed noticing solutions for all aspects of class action certification and settlement and have an in-depth knowledge of generating media, conducting demographic research, designing media plans, developing and buying media, creating commercial/video productions, and utilizing best practices for social media outreach through platforms such as Instagram and Facebook.

4.      I have designed, implemented, and managed notice campaigns for more than 100

---

[1] All capitalized terms not otherwise defined in this document shall have the meaning ascribed to them in the Settlement Agreement.

cases. Some of my media plans include: *Krommenhock v. Post Foods, LLC; Hadley v. Kellogg Sales Company; Jones v. Monsanto Company; In Re: Sonic Corp. Customer Data Breach Litigation*; *In re: Interior Molded Doors Indirect Purchaser Antitrust Litigation; Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*; and the *Indian Residential Schools Settlement*.

5.     A sample of court opinions on the adequacy of our notice efforts are included in P&N's curriculum vitae as **Exhibit A.** A description of my experience is attached as **Exhibit B.**

## <u>OVERVIEW</u>

6.     We understand the proposed Settlement Class will be defined as:

> All Persons in the United States, who, during the Class Period, purchased Products[2] in the United States other than for resale or distribution. Excluded from the Settlement Class are (i) judicial officers and associated court staff assigned to this case, and their immediate family members; (ii) past and present (as of the Effective Date) officer, directors, and employees of Monsanto; (iii) all those otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class pursuant to this Agreement and in the manner approved by the Court and set forth in the Class Notice.

7.     This Declaration describes the Notice Plan proposed in this Action (the "Notice Plan"), which has been designed using a method accepted by courts, and within the advertising industry, to understand the Target Audience (inclusive of Class Members) by examining their demography and media consumption habits. In order to do so here, P&N utilized the syndicated

---

[2] *See* Exhibit A of the Settlement Agreement.

research bureau MRI-Simmons (formerly GfK Mediamark Research, Inc.)[3] and comScore[4].

8.  Using these media research tools, P&N is able to measure and report to the Court what percentage of the Target Audience is estimated to be reached by the Notice Plan and how many times the Target Audience will have the opportunity to see the notice. In advertising, this is commonly referred to as a "reach and frequency" analysis. Reach refers to the estimated percentage of the unduplicated audience exposed to the notice. Frequency, in turn, refers to how many times, on average, the target audience had the opportunity to view the notice. Reach and frequency calculations are used by advertising and communications firms worldwide and have become a critical element to help provide the basis for determining adequacy of notice in class action cases. The design of the proposed Notice Plan is consistent with the U.S. Supreme Court's guidance in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

9.  Using the nationally syndicated media research data, the proposed Notice Plan is designed to provide the best notice practicable to the Settlement Class. Utilizing both MRI-Simmons and comScore (or other accrediting media research tools) to account for online and offline patterns is necessary when defining a target audience and, as is common in many notice plans, a target audience exactly matching a defined class is rarely available in the research tools.

---

[3] MRI-Simmons is a nationally-syndicated research tool. It is the leading supplier of multi-media audience research, and provides comprehensive reports on demographic, lifestyle, product usage and media exposure. MRI-Simmons conducts more than 30,000 personal interviews annually to gather their information and is used by more than 450 advertising agencies as the basis for the majority of media and marketing campaigns.

[4] comScore is a global internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and internet usage data. comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. comScore panelists also participate in survey research that captures and integrates their attitudes.

Taking into account the proposed Settlement Class defined above, the best qualitative target for this case is "Adults 18 years old and older in the United States that have purchased garden supplies" (the "Target Audience"). Sample demographics of the Target Audience include:

- 48% male / 52% female
- Age Demographics
  - 9% Pre-Boomers (before 1946)
  - 32% Boomers (b. 1946-1964)
  - 20% GenXers (b.1965-1976)
  - 31% Millennials (b. 1977-1996)
  - 8% Gen Z (after 1996)
- 79% own a home
- Mean individual earned income of $66,600
- 47% work full time / 41% are not working

## ESTIMATED CLAIMS ANALYSIS

10.     There is no formula to project response rates with certainty even when class members are exposed to a notice plan designed to give notice to the class in the best practicable manner possible. Furthermore, a class size baseline to measure claim volume against, for the determination of a claims rate reflected as a percentage, is often impossible to precisely calculate.[5]

---

[5] For example, in *Pappas v. Naked Juice Co.*, the notice expert estimated the class to be 8.5 million with marketing research, while defendant Naked Juice reported that its estimate of the class size was approximately 16.5 million, based on sales data and purchase habits. *Pappas v. Naked Juice Co.*, No. 2:11-cv-08276 (C.D. Cal. July 2, 2013), Decl. of Alan Vasquez, ¶ 14, ECF 118-9. There were ultimately 758,930 claims submitted, meaning the claims rate could be calculated as 8.93% or 4.60%, respectively. *Pappas v. Naked Juice Co.*, No. 2:11-cv-08276 (C.D. Cal. December 20, 2013), Decl. of Marksham Sherwood, ¶ 4, ECF 183.

11.    Based on my experience, the experience of P&N's team, and the Parties' experience, consumer class actions involving low-value retail items similar to the Products typically have claims rates in the range of 1% - 5%. Settlements from the Northern District of California support these ranges.[6] Nevertheless, there is always the potential for outliers as seen in *Hendricks v. Starkist Tuna*[7] or *Careathers v. Red Bull North America, Inc.*[8]

12.    It is also instructive to look to comparable settlements with Monsanto related to Roundup® products, such as the *Rawa* and *Jones* settlements. The reported claims filed in *Rawa* totaled 93,702 and the valid claims filed in *Jones* totaled 242,312.[9] Given that this case shares similar class products and likely purchasers as *Rawa* and *Jones*, it is reasonable to expect that claims volumes in this case may fall within this range, though it is possible that there could be an

---

[6] *Pettit v. Proctor & Gamble,* No. 3:15-cv-02150 (N.D. Cal. July 17, 2019), Decl. of Jonathan Shaffer, ¶ 10, ECF 139 (4.84% of an estimated class of 3,884,00); *Bayol et al. v. Health-Ade LLC,* No. 3:18-cv-01462 (N.D. Cal. February 21, 2020), Post-Distribution Accounting, ECF 61 (1.08% of approximately 12,000,000 class members).

[7] The Motion for Preliminary Approval noted that the parties informed the administrator they calculated it would take 80,000 Voucher Claims to exhaust the Voucher Settlement Fund and 120,000 Cash Claims to exhaust the Cash Settlement Fund. *Hendricks v. Starkist Tuna,* No. 4:13-cv-00729 (N.D. Cal. May 19, 2015), Decl. of Scott A. Bursor, ¶ 2, ECF 187-1. The valid claim volume ended up being at least 2,353,086, more than 10 times that amount (1,498,172 cash claims and 854,914 vouchers, a ratio of 1.75:1). *Hendricks v. Starkist Tuna*, No. 4:13-cv-00729 (N.D. Cal. October 30, 2015), Decl. of Scott A. Bursor, ¶ 65-67, ECF 262-1.

[8] The claim volume resulted in 2,010,043 valid claims (1,294,481 valid Cash Option claims and 715,562 valid Product Option claims, as of April 5, 2015, a ratio of 1.81:1). *Careathers v. Red Bull North America, Inc*., No. 1:13-cv-08008 (S.D.N.Y. April 8, 2015), Decl. of Jennifer M. Keough, ¶ 14, ECF 51-1.

[9] *Rawa et al. v. Monsanto Company*, No. 4:17-cv-01252, 2018 WL 2389040, at *3 (E.D. Mo. May 25, 2018) (settlement involved purchasers of Roundup Concentrate products and approximately 94,000 claims were filed as of the date of the Final Approval Motion) and *Jones et al. v. Monsanto Company*, No. 4:19-cv-00102, 2021 WL 2426126, at *3 (W.D. Mo. May 13, 2021) (settlement involved purchasers of Roundup products for personal use and approximately 240,000 valid claims filed).

increased claims volume in light of factors such as the level of press coverage of this matter and the nature of Plaintiffs' allegations.

## NOTICE AND ADMINISTRATION COSTS

13.     P&N's estimated costs to implement the Notice Plan (including CAFA notice) and to administer the Settlement are summarized in the table below.[10]

| Category | Claims Volume | | | |
| --- | --- | --- | --- | --- |
|  | 100,000 | 200,000 | 300,000 | 900,000 |
| Estimated Notice Costs | $ 518,884 | $ 518,884 | $ 518,884 | $ 518,884 |
| Estimated Claims Administration Costs | $ 164,975 | $ 248,646 | $ 321,274 | $ 722,053 |
| Total Estimated Costs: | $ 683,859 | $ 767,530 | $ 840,158 | $ 1,240,937 |

## PLAIN LANGUAGE

14.     The proposed Publication Notice and Notice of Class Action Settlement (collectively, the "Class Notice" or "Notices") are attached as **Exhibit C and D**, respectively.

15.     The Notices will be translated into Spanish and available on the Settlement Website. They have been designed to inform potential Class Members about the Settlement, are presented in plain language, are designed to be noticed by members of the Settlement Class, and conform to the standards set forth in the Federal Judicial Center's 2010 *Judges Class Action Notice and Claim Process Checklist and Plain Language Guide*, which is available at www.fjc.org.

---

[10] Cost estimates include categories of fees and costs such as: website with an online claims filing module; claimant support and communications; claims administration; distributions and reporting; planning, administration, and project management; and estimated postage costs. The detailed costs within these categories are based on assumptions such as claim volume, volume of claims by type (e.g. hard copy or online); and distribution selection mix (e.g. 70% selecting digital payments). Actual costs may be less or more than the estimates if the assumptions are not exact and/or the scope of work materially changes during the course of the notice and administration for any reason.

16.     The body of the Notices are in an easy-to-understand question and answer format so Class Members can easily digest the information and determine whether they qualify as Class Members, identify important information and key dates, and obtain information about the Action. Important dates and deadlines are featured in bold font, contact information for the Parties and Settlement Administrator are provided in easy-to-read tables, where appropriate, and details about how to be excluded or object from the Action are easy to identify in the question and answer format.

## PROPOSED NOTICE PLAN

17.     P&N has designed the proposed Notice Plan to provide notice to Class Members and ensure they will be exposed to, see, review, and understand the Notices. Accordingly, P&N determined the most reasonable and practicable way to reach and communicate with Class Members is through a multifaceted approach, employing a combination of (1) print media, (2) online display, (3) social media, (4) online video, (5) connected TV/OTT[11], (6) digital newsletters, (7) search advertising, (8) third-party class action websites, (9) email notice to a purchased list of individuals that have an interest in lawn and garden maintenance, (10) a national press release, (11) a toll-free settlement hotline, and (12) a Settlement Website.

18.     The proposed Notice Plan as outlined above is estimated to have a measurable reach of a minimum of 80% of the Target Audience and, by inclusion, the proposed Class, with a 2.52 average frequency. The total reach is calculated utilizing a formula that accounts for potential duplication across media titles and vehicles rather than by adding the individual reach figures together. The inclusion within the proposed Notice Plan of third-party class action websites,

---

[11] Connected TV/OTT is a television that connects to the internet to support streaming video content. Connected TV/OTT's include Smart TV's, Apple TV, Amazon Fire TV, or devices like Roku and gaming consoles, etc.

connected TV/OTT, direct emails to the purchased list of email addresses, search advertising, and a national press release will also meaningfully strengthen the reach and frequency of the Notice Plan, although the exact increase in reach and frequency from these components of the Notice Plan are not calculable. Accordingly, it is my opinion that the Notice Plan satisfies due process standards, adheres to the recommendations in the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, and follows the Supreme Court's guidance set forth in *Daubert* and *Kumho Tire Co*.

### A.  <u>Print Notice</u>

19.     The proposed Notice Plan includes a half-page version of the Publication Notice in *Better Homes & Gardens* magazine. *Better Homes & Gardens* has a broad national audience with a readership of 30.7 million with an average of 3.74 readers per printed copy.[12] The Publication Notice will appear in the print and digital editions of *Better Homes & Gardens*.

| Publication | Circulation | Frequency | Ad Size | Insertions |
|---|---|---|---|---|
| *Better Homes & Gardens* Magazine | 7,623,753 | Monthly | 1/2 page | 1 |

20.     *Better Homes & Gardens* has a circulation of more than 7.6 million.[13] Sixty-five percent of its readers have a household income larger than $50,000 and 46% have a household income larger than $75,000. The publication readership has a median age of 54 years old.[14] This audience subsection compliments the Target Audience demographic data: 43% are 55 years old or older, have a median age of 51 years old, and 45% have a household income between $60,000 - $150,000.

---

[12] *Better Homes & Gardens* Magazine 2021 Media Kit. MRI Doublebase 2020.
[13] AAM, June 30, 2021.
[14] *Better Homes & Gardens* Magazine 2021 Media Kit. MRI Doublebase 2020.

21.     *Better Homes & Gardens* is a monthly publication requiring advertisers to reserve space and submit artwork 30 to 60 days prior to the monthly issue date. If the lead time is not conducive to the Notice Plan schedule determined by the Court, P&N will suggest a publication that shares similar demographic data to *Better Homes & Gardens* but requires less lead time to reserve space and submit artwork. Any supplemental suggestion will not have an adverse effect on the reach and frequency analysis.

**B.   Digital Banner Notice**

22.     Internet advertising is a standard component in legal notice plans and has proven to be an efficient and cost-effective way to target and provide measurable reach to persons in proposed classes. According to MRI-Simmons research, 96% of the Target Audience has used the internet in the last 30 days and 59% are medium-to-heavy users of the internet.[15] Accordingly, P&N will run digital notices on select websites Class Members are likely to regularly visit and use ad networks based on their cost efficiency, real-time targeting, and their broad network of partner websites that contribute to the overall reach of the Target Audience and social advertising on Facebook, Instagram, & Pinterest. Additionally, video ads will run on YouTube and search advertising on Google.com will be incorporated.

23.     MRI-Simmons reveals that 14% of the Target Audience are of Spanish, Hispanic or Latino origin or descent and that 15% speak Spanish most often at home. Therefore, digital notices will appear in Spanish and English where appropriate.

24.     Banner advertisements are image and text-based graphic displays that are commonly used in legal noticing. The text of the banner and social advertisements will allow users to identify themselves as Class Members and directly link them to the Settlement Website

---

[15] 2021 GfK MRI-Simmons Spring Doublebase.

for more information.

25.     P&N will employ artificial intelligence (AI) to locate and serve ads to Class Members in real-time. The AI self-learning platform will continue to monitor website content, user behavior, browsing habits, and clicks to continually improve performance through the life cycle of the Notice Plan. Furthermore, we will include a mix of segments that will target Class Members based on user's habits. Segment targeting will include:

- *Demography* – target users based on age, income, home ownership, etc.;

- *Behavioral* – individuals who previously viewed or searched for information related to Roundup®, other weed killer products, or lawn and garden maintenance, among others;

- *Contextual* – individuals who are accessing and reading content or watching videos related to Roundup®, other weed killer products, or lawn and garden maintenance, among others;

- *Interest-based* – individuals who have "liked" social media account(s) for Roundup® products or lawn and garden maintenance, among others;

- *Engagement* – individuals who have shared or commented on Roundup® product social media account(s) or lawn and garden maintenance, among others;

- *Language* – individuals who utilize English and Hispanic websites;

- *Geo-Targeting* – National, Puerto Rico and U.S. territories;

- *Look-alike* – individuals that share similar characteristics to our purchased contact list;

- *Customer Match* – individuals on our purchased contact list;

- *Remarketing* – individuals who have visited the Settlement website but did not submit a claim will be served notice across display and social media channels;

▪ *Device* – individuals on both desktop and mobile devices; and

▪ *Select Placement* – high traffic premier websites in the shopping, sports, weather, entertainment, and local sites.

26.     The digital notices will have the opportunity to run on thousands of websites through Google and Verizon (Yahoo!) Ad Networks, and the programmatic demand side platform Centro, allowing the notices to appear on websites that are relevant to the user. For example, 43% of the Target Audience visited Weather.com, 28% visited WebMD.com, 18% visited FoxNews.com, and 16% visited ESPN.com.[16] Ad placement targeting websites that are more likely to be visited by the Target Audience ensures Class Members will have a better opportunity to see a digital notice while reading content relevant to them.

27.     In addition to the digital notices described above, banner notifications will run on the top-visited social media sites: Facebook; Instagram; and Pinterest. Facebook and Instagram represent the leading group of social networking sites covering more than 200 million active users in the United States.[17] Pinterest is forecasted to have over 88 million active United States users in 2021.[18] Social media encourages users to share information, which organically raises the reach of a notice plan when users share banner notices with friends, family, and followers. Digital notices on Facebook will appear in a user's newsfeed and along the right-side rail, Instagram ads will appear in a user's feed, Pinterest ads will appear on a user's board, and video ads will be included across Facebook and appear in a user's newsfeed.

28.     The digital notices will utilize standard Interactive Advertising Bureau ("IAB") ad

---

[16] 2021 GfK MRI-Simmons Spring Doublebase.
[17] "Number of Facebook users in United States from 2017 to 2025" (Statista July 2020), and "Number of Instagram users in the United States from 2019 to 2023" (eMarketer; January 2020).
[18] eMarketer; January 2020.

sizes (350x250, 728x90, 370x250, 300x600) and custom ad sizes according to Facebook, Instagram, and Pinterest advertising guidelines.

29.     A summary of the digital banner notice campaign is as follows:

| Network/Property | Banner Size | Length | Est. Impressions[19] |
|---|---|---|---|
| Google Sites & Verizon (Yahoo!) Ad Network | IAB | 8 weeks | 264,852,840 |
| Centro DSP | IAB | 8 weeks | 48,547,240 |
| Facebook & Instagram | Custom | 8 weeks | 56,168,700 |
| Pinterest | Custom | 8 weeks | 1,693,440 |
| Total: | | | 371,262,220 |

30.     Examples of the proposed display and social media banners are attached as **Exhibit E**.

### C.  YouTube

31.     A 30-second, skippable video notice will be created and targeted to users who search for, or watch videos related to, Roundup® products, lawn care maintenance or gardening, for example. A viewer will have the option to skip the video after 5 seconds. This format provides an opportunity to gain a large amount of impressions (defined here as the number of times the video notice will run) while maintaining an efficient budget. An estimated 8.4 million impressions will be served over eight weeks.

### D.  Outbrain

32.     P&N will place notice across the web using Outbrain technology. A leader in native advertising, Outbrain layers ads within content that look, feel, and function like the media format in which they appear. Often found in social media feeds or as recommended content, they

---

[19] An impression is defined as the single display of an ad on a web page.

appear as part of the editorial flow of the page. Ads can be targeted to age, gender, income, interest and many other segments. A short attention grabbing message along with a relevant image and call-to-action generate interest and drive traffic to the Settlement Website. An estimated 3.9 million impressions will be served over eight weeks targeted at users with an interest in Roundup® products, lawn care maintenance or gardening, for example.

### E. Connected TV ("CTV")/Over-the-Top ("OTT")

33.    An OTT device consists of CTVs (also known as smart TVs), Google Chromecast, Amazon Fire Stick, Roku, Apple TV, etc., which connect to the internet and allow viewers to watch content on streaming platforms such as Hulu, Crackle, Netflix, Amazon Prime, etc. According to MRI-Simmons, our Target Audience is 16% more likely to own an Apple TV, 14% more likely to own a Roku device, and 11% more likely to own a Google Chromecast than adults 18+. Additionally, 51% own a CTV and they are 16% more likely to own CTV than adults 18+. Therefore, P&N will place video notices across CTV/OTT devices.

34.    In this instance, we propose targeting audiences that are lawn care enthusiasts, individuals that purchased fertilizer and weed killer, visited garden and nursey centers, individuals that have an interest in weed control, landscaping, gardening, homeowners, and the like. Using the :30-second video notice created for YouTube, the video notice will appear as a commercial within content, pre, mid, and/or post. The notice will appear on CTV/OTT platforms and apps/stations where target audience members are likely to watch programming. Example stations/apps where the notice could be seen include A&E, ABC, AMC, BET, MLB.tv, and FOX, among others, and apps that aggregate content such as AT&T TV, Xfinity, Crackle, and fuboTV, among others. OTT notices also appear on mobile phones, tablets, and CTV, depending on how a user accesses their "cord-cutting" content.

35.     Once a user is exposed to a video notice, they will be retargeted across their devices and served a digital banner ad encouraging them to visit the Settlement Website. An estimated 980,000 impressions will run over four to eight weeks.

## F.  Digital Newsletters

36.     P&N will run the Publication Notice in an estimated three to six digital newsletters/email blasts targeting individuals that share similar characteristics to our Target Audience. Newsletters/email blasts may run daily or weekly, depending on the publisher's distribution schedule. Digital newsletters/email blasts provide an opportunity to engage with an audience that is actively reading content they have requested from a trusted source. The notice will appear in substantially similar form as the Publication Notice or in the form of a digital banner notice, depending on each publications specifications and guidelines, and will direct users to the Settlement Website.

## G.  Search Advertising

37.     Search-based advertising places a notice in front of users that are actively researching a topic. Utilizing Google Ads, a select list of keywords will be developed that are relevant to the litigation, Roundup® Weed & Grass Killer products, and other weed killer products, for example. When a user enters those keywords into the Google search bar, a short descriptive notice may appear above the results that would direct users to the Settlement Website.

## H.  Third-Party Class Action Websites

38.     P&N will coordinate with third-party class action websites such as Top Class Actions (www.topclassactions.com) and ClassAction.org (www.classaction.org) to list and promote the Settlement on their website and in their opt-in e-newsletter. These sites are known for aggregating cases and pending settlements, providing a central resource for consumers to

obtain news about the settlement and click-thru to the dedicated Settlement Website.

39.     Content promoted on Top Class Actions includes language substantially similar to the Publication Notice with links directing readers to the Settlement Website. Content promoted on ClassAction.org consists of a short paragraph, also derived from language substantially similar to the Publication Notice, and links through to the Settlement Website.

40.     The e-newsletter from each site is distributed via email to opt-in subscribers and includes a short headline and description that links the user to the third-party settlement website where they can click-thru to the Court-approved Settlement Website.

41.     In addition to the e-newsletter and content promoted on their respective websites, Top Class Actions and ClassAction.org operate their own social media channels that will promote the Settlement to their followers

42.     Although these sites cannot be included in the reach and frequency analysis, they nonetheless stimulate interest in the Settlement and enhance the reach and frequency of the Notice Plan.

### I.   **Email Notice**

43.     P&N will email ("Email Notice") the Publication Notice to a purchased list of approximately 3,500,000 email addresses of individuals that have an interest in lawn and garden maintenance. The Email Notice will be created using embedded html text format to provide an easy to read format without tables, graphs or other content that may increase the likelihood of the email landing in SPAM folders and/or being blocked by Internet Service Providers (ISPs). Additionally, P&N includes "unsubscribe" links and the Settlement Administrator contact information which follows standard email best practices. Prior to sending, emails are put through a hygiene and verification process to protect the integrity of the email campaign and maximize

deliverability. Steps included deduplication, syntax validation, misspelled domain detection and correction, domain validation, and risk validation. Emails that pass the hygiene and verification process will be batched into small groups and sent over multiple days to decrease the likely of being erroneously flagged as bulk junk email.

44.     P&N will track and report to the court all email delivery attempts. If an item is returned as undeliverable, commonly referred to as a "bounce," the reason is noted. If the email address is noted as non-existent as attempted, this is referred to as a "hard bounce," and no additional attempts to deliver the Email Notice to that email address will be made. Responses where the inbox is full, the attempt is initially blocked or deferred by the ISP, or any other circumstances that prevents delivery are referred to as "soft" bounces. To limit the number of undelivered emails as a result of soft bounces, P&N will continue to attempt to re-send to emails receiving a soft-bounce for period of 72 hours. If the email is not able to be delivered after 72 hours, the email will be deemed undeliverable and no additional attempts will be made to that email address.

45.     Although the Email Notice cannot be included in the reach and frequency analysis, it will nonetheless stimulate interest in the Settlement and enhance the reach and frequency of the Notice Plan.

**J.   <u>Press Release</u>**

46.     A press release will be distributed over PRNewswire's US1 and Hispanic Newslines in substantially the same form as the Publication Notice. The press release will be issued broadly to media outlets, including newspapers, magazines, wire services, television, radio, and online media nationally. Combined, the Newslines distributes to more than 20,000 media outlets in the United States.

### K.  **Settlement Website**

47.     P&N will create and maintain a website, www.WeedKillerAdSettlement.com, dedicated to this Settlement. The website address will be included in the Class Notice and all digital banners will link directly to the Settlement Website. The Class Notice and Claim Form (attached hereto as **Exhibit F**), along with other relevant documents, will be posted on the Settlement Website, so Class Members may review and download them. The Settlement Website will also provide the ability to file an online Claim Form and will include relevant dates, answers to frequently asked questions, instructions for how Settlement Class Members may opt-out (request exclusion) from or object to the Settlement Agreement, contact information for the Claims Administrator, and other case-related information.

### L.  **Dedicated Toll-Free Hotline**

48.     A dedicated toll-free informational hotline will be available 24 hours per day, seven days per week. The hotline will use an interactive voice response ("IVR") system where Class Members can obtain essential information regarding the Settlement and be provided responses to frequently asked questions. Class Members will also have the option to leave a voicemail and receive a call back from the Claims Administrator.

### **REQUESTS FOR EXCLUSION**

49.     Class Members that want to exclude themselves may download an Opt-Out form from the Settlement Website or request that P&N send them a paper copy, and may then submit their request for exclusion by mail to a dedicated Post Office Box that P&N will maintain. P&N will monitor and track all exclusion requests received, which will be provided to the Parties.

### **CONCLUSION**

50.     The methods of focused notice dissemination described herein are a measured and

targeted approach to provide effective notice in this case. The Notice Plan is estimated to reach at least 80% of Class Members with an estimated average frequency of 2.52. In 2010, the Federal Judicial Center issued a *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. This guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%."

51.     It is my opinion that the Notice Plan is fully compliant with Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, will provide the best notice practicable, follows the guidance set forth in the Manual for Complex Litigation 4th Ed. and FJC guidance, complies with the Northern District of California's guidelines related to class action settlements, and exceeds the requirements of due process, including a "desire to actually inform"[20].


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Executed this 20th day of January 2022 in Portland, Oregon.


_____
Brandon Schwartz


---

[20] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).



# Exhibit A: CV of P&N



assurance  –  consulting  –  tax  –  technology

pnclassaction.com

# Introduction

Postlethwaite & Netterville, APAC, (P&N) offers technical experience and diverse resources that are unique to the class action settlement administration space.

**Experience**: Since 1999, P&N has successfully administered numerous class action settlements in state court and federal court (including multidistrict litigation). Our team has processed and reviewed claims and managed distributions for settlements involving billions of dollars in settlement funds.

**Breadth, Depth and Flexibility of Resources**: Our approach to settlement administration provides a dedicated core team that is able to draw upon numerous specialized resources across diverse service areas within our firm of over 400 employees as needs arise.

We leverage the knowledge and experience of professionals holding the following designations, among others:

- Juris Doctor (JD)
- Project Management Professional (PMP)
- Certified Public Accountant (CPA)
- Certified Internal Auditor (CIA)
- Certified Information Systems Auditor (CISA)
- Certified Fraud Examiner (CFE)
- Certified in Financial Forensics (CFF)
- Certified Information Systems Security Professional (CISSP)
- Certified Security Engineer (CSE)
- Certified Information Security Manager
- Certified in Risk and Information Systems Control

**Capabilities and Experience Rooted in Quality and Objectivity**: As a 65+ year old accounting and business advisory firm, objectivity, integrity, and quality have been the cornerstones of our sustained success. These principles drive our work product, our decision-making, and our interactions with clients and team members. ***Our teams are well-versed in the development of and adherence to stringent quality assurance and quality control standards across a variety of disciplines.***



assurance – consulting – tax – technology

pnclassaction.com

# Notable Claims Administration Experience and Testimonials

The cornerstones of P&N's success as a firm translate well to the administration of large settlement programs, and our quality of work is particularly apparent in matters involving complex claims. P&N receives consistent positive feedback from clients related to our attention to detail and responsiveness:

> **"P&N did an outstanding job.  Key factors that separated them from the pack were attention to detail and responsiveness.  In the fluid process of administering a class settlement P&N was there for us at every step of the way responding to most requests within minutes."**
>
> *Mark Greenstone, Plaintiff's Co-Lead Counsel*

Our team has significant experience in complex settlement matters, including the following subset of our overall experience:

## In Re: Cathode Ray Tube (CRT) Antitrust Litigation (MDL 1917)

**Nature of Work:** In cooperation with our project partner, The Notice Company, Inc., P&N performs claims administration services for indirect purchaser class action settlements in this multidistrict litigation totaling over $547,750,000 to date. The scope of P&N's services includes (1) custom website and database application development and maintenance, (2) claim data acquisition and management, (3) claims processing and validation, (4) claims deficiency and audit processing, (5) quality control and fraud, waste, and abuse monitoring, (6) custom reporting, (7) call center support and claimant communications, (8) claim allocation determination and distribution, and (9) project management services.

## In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico (MDL 2179)

**Nature of Work:** P&N was approved by the United States District Court for the Eastern District of Louisiana to process business economic loss and seafood harvester claims within the Deepwater Horizon Economic and Property Damages Settlement. P&N participated in determining over $1 billion in eligible claims within the first six months of the program and approximately $10 billion to date. P&N committed a significant multi-city team of 400+ accounting and finance professionals to the ongoing effort, providing claim eligibility review, economic damages calculations, and claimant communications for over 100,000 businesses and seafood harvesters with representation from 2,000+ law and accounting firms.



assurance  –  consulting  –  tax  –  technology

pnclassaction.com

## In Re: Testosterone Replacement Therapy Products Liability Litigation (MDL 2545)

**Nature of Work:** P&N provides claims administration services related to custom technology development, project management, and attorney communications support. In coordination with the Court-appointed Special Master, Randi S. Ellis, P&N has developed secure, customized, web-based technology applications that are the framework for claim filing and document management efforts for over 130 participating law firms. Our claims platform also serves as both the central repository for personal injury claims adjudication and allocation functions of the Special Master.

> "I have worked with P&N on multiple large settlement projects in my role as Special Master. We are currently working together to administer a mass tort settlement where their technology platform has been able to streamline the claims process and securely manage sensitive claimant data. They are always willing to brainstorm with me when I need assistance which is why they have become a trusted partner and my first call! "
>
> *Randi Ellis, Court-Appointed Special Master*

## In Re: E.I. du Pont de Nemours and Company C8 Personal Injury Litigation (MDL 2433)

**Nature of Work:** P&N developed a secure, customized, web-based database application that served as the framework for claim filing and document management efforts for approximately 3,700 personal injury claims. In cooperation with the Special Master, Daniel J. Balhoff, P&N also provided project management services to facilitate the logistics of the claims process life cycle. Our claims database technology also served as both the central repository for claims determinations and allocation reporting to the Plaintiff Steering Committee and Lien Resolution Administrator.

> "P&N was tasked with building out a user friendly settlement submission web-based platform, training the law firms on how it would be used, coordinating with the Special Master and Claims Administrator reviewers, exchanging information with the third party lien resolution group, and providing responsive updates and reporting to the litigation lead counsel and individual participating law firms. P&N did a phenomenal job in all respects.
>
> Throughout the process, P&N provided personalized and immediately responsive service. Reporting was routinely updated and modified based upon new requests from lead counsel and the individual submitting firms were provided one-on-one service when needed. Based on my experiences with P&N, I would certainly recommend them and will actively seek to include project bids from them in any future resolution programs in which I have a part."
>
> *Jon C. Conlin, Plaintiffs' Co-Lead Counsel*



assurance – consulting – tax – technology

pnclassaction.com

## In Re: FEMA Trailer Formaldehyde Products Liability Litigation (MDL 1873)

**Nature of Work:** P&N provided full scale notice and claims administration services for this multi-settlement MDL involving over $45,000,000 in settlement funds. The scope of P&N's services includes (1) notice administration, (2) custom website and database application development and maintenance, (3) claim data acquisition and management, (4) claims processing and deficiency curing, (5) call center support and claimant communications, (6) claim allocation determination and distribution, and (7) quality control and project management services.

> **"In serving as a Court-appointed Special Master, I have worked with P&N's claims administration team on several occasions. I have always found them to be extremely attentive to detail, responsive, and committed to a high quality work product. Furthermore, they are proactive – once I tell them my goals, they come up with creative solutions to get there. The bottom line is that I can trust them to do the job right in a timely and efficient manner."**
>
> *Daniel J. Balhoff, Court-Appointed Special Master*



# P&N Claims Administration Experience

## SAMPLE JUDICIAL COMMENTS

- ***Siddle, et al v. The Duracell Company, et al.,*** No. 4:19-cv-00568 (N.D. Cal.) Judge James Donato on April 19, 2021:

    *The Court finds that the Class Notice and Claims Administration procedures set forth in the Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided due and sufficient individual notice to all persons in the Settlement Class who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Agreement and this Final Approval Order.*

- ***Fabricant v. Amerisave Mortgage Corporation,*** No. 19-cv-04659-AB-AS (C.D. Cal.) Judge Andre Birotte, Jr. on November 25, 2020:

    *The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The notice fully satisfied the requirements of Due Process. No Settlement Class Members have objected to the terms of the Settlement.*

- ***Snyder, et al. v. U.S. Bank, N.A., et al.,*** No. 1:16-CV-11675 (N.D. Ill), Judge Matthew F. Kennelly on June 18, 2020:

    *The Court makes the following findings and conclusions regarding notice to the Settlement Class:*

    *a. The Class Notice was disseminated to persons in the Settlement Class in accordance with the terms of the Settlement Agreement and the Class Notice and its dissemination were in compliance with the Court's Preliminary Approval Order; b. The Class Notice:(i) constituted the best practicable notice under the circumstances to potential Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Consolidated Litigation, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient individual notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*



assurance  –  consulting  –  tax  –  technology

pnclassaction.com

- **Edward Makaron et al. v. Enagic USA, Inc.**, 2:15-cv-05145 (C.D. Cal.), Judge Dean D. Pregerson on January 16, 2020:

  *The Court makes the following findings and conclusions regarding notice to the Class:*

  *a. The Class Notice was disseminated to persons in the Class in accordance with the terms of the Settlement Agreement and the Class Notice and its dissemination were in compliance with the Court's Preliminary Approval Order;*

  *b. The Class Notice: (i) constituted the best practicable notice under the circumstances to potential Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient individual notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*

- **Kimberly Miller et al. v. P.S.C, Inc., d/b/a Puget Sound Collections**, 3:17-cv-05864 (W. D. Wash.), Judge Ronald B. Leighton on January 10, 2020:

  *The Court finds that the notice given to Class Members pursuant to the terms of the Agreement fully and accurately informed Class Members of all material elements of the settlement and constituted valid, sufficient, and due notice to all Class Members. The notice fully complied with due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law.*

- **John Karpilovsky and Jimmie Criollo, Jr. et al v. All Web Leads, Inc.**, 1:17-cv-01307 (N.D. Ill), Judge Harry D. Leinenweber on August 8, 2019:

  *The Court hereby finds and concludes that Class Notice was disseminated to members of the Settlement Class in accordance with the terms set forth in the Settlement Agreement and that Class Notice and its dissemination were in compliance with this Court's Preliminary Approval Order.*

  *The Court further finds and concludes that the Class Notice and claims submission procedures set forth in the Settlement Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement and this Order.*

- **Paul Story v. Mammoth Mountain Ski Area, LLC,** No. 2:14-cv-02422 (E.D. Cal.), Judge John A. Mendez on March 13, 2018:

  *The Court finds that the Settlement Administrator delivered the Class Notice to the Class following the procedures set forth in the Settlement Agreement; that the Class Notice*



*and the procedures followed by the Settlement Administrator constituted the best notice practicable under the circumstances; and that the Class Notice and the procedures contemplated by the Settlement Agreement were in full compliance with the laws of the United States and the requirements of due process. These findings support final approval of the Settlement Agreement.*

- ***John Burford, et al v. Cargill, Incorporated,*** No. 05-0283 (W.D. La.), Judge S. Maurice Hicks, Jr. on November 8, 2012:

    *Considering the aforementioned Declarations of Carpenter and Mire as well as the additional arguments made in the Joint Motion and during the Fairness Hearing, the Court finds that the notice procedures employed in this case satisfied all of the Rule 23 requirements and due process.*

- ***In RE: FEMA Trailer Formaldehyde Product Liability Litigation,*** MDL No. 1873, (E.D La.), Judge Kurt D. Engelhardt on September 27, 2012:

    *After completing the necessary rigorous analysis, including careful consideration of Mr. Henderson's Declaration and Mr. Balhoff's Declaration, along with the Declaration of Justin I. Woods, the Court finds that the first-class mail notice to the List of Potential Class Members (or to their attorneys, if known by the PSC), Publication Notice and distribution of the notice in accordance with the Settlement Notice Plan, the terms of the Settlement Agreement, and this Court's Preliminary Approval Order:*

    *(a) constituted the best practicable notice to Class Members under the circumstances;*

    *(b) provided Class Members with adequate instructions and a variety of means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to Class Members and all other persons wishing to be heard;*

    *(c) was reasonably calculated, under the circumstances, to apprise Class Members of: (i) the pendency of this proposed class action settlement, (ii) their right to exclude themselves from the Class and the proposed settlement, (iii) their right to object to any aspect of the proposed settlement (including final certification of the settlement class, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of representation by Plaintiffs or the PSC, and/or the award of attorneys' fees), (iv) their right to appear at the Fairness Hearing - either on their own or through counsel hired at their own expense - if they did not exclude themselves from the Class, and (v) the binding effect of the Preliminary Approval Order and Final Order and Judgment in this action, whether favorable or unfavorable, on all persons who do not timely request exclusion from the Class;*

    *(d) was calculated to reach a large number of Class Members, and the prepared notice documents adequately informed Class Members of the class action, properly described their rights, and clearly conformed to the high standards for modern notice programs;*

    *(e) focused on the effective communication of information about the class action. The notices prepared were couched in plain and easily understood language and were written and designed to the highest communication standards;*



assurance – consulting – tax – technology

pnclassaction.com

*(f) afforded sufficient notice and time to Class Members to receive notice and decide whether to request exclusion or to object to the settlement.;*

*(g) was reasonable and constituted due, adequate, effective, and sufficient notice to all persons entitled to be provided with notice; and*

*(h) fully satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, including the Due Process Clause, and any other applicable law.*



assurance – *consulting* – tax – technology

# Class Action & Mass Tort Settlement Administration

P&N provides pre-settlement consulting and post-settlement administration services in connection with lawsuits pending in state and federal courts nationwide.  Since 1999, P&N has processed billions of dollars in settlement claims. Our innovative team successfully administers a wide variety of settlements, and our industry-leading technology enables us to develop customizable administration solutions for class action and mass tort litigations.

## SAMPLE CASE EXPERIENCE

 **ENVIRONMENTAL/TOXIC TORTS**
- In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico (MDL 2179)
- Sanchez et al v. Texas Brine, LLC et al.
- In Re: FEMA Trailer Formaldehyde Products Liability Litigation (MDL 1873)
- Burmaster et al. v. Plaquemines Parish Government, et al.
- Cajuns for Clean Water, LLC et al. v. Cecilia Water Corporation, et al.
- Cooper, et al. v. Louisiana Department of Public Works
- Howard, et al. v. Union Carbide Corporation

 **CONSUMER**
- Jones et al. v. Monsanto Co.
- Siddle et al. v. The Duracell Co. et al.
- Hughes et al. v. AutoZone Parts Inc. et al.
- Strong v. Numerica Credit Union
- Schexnayder Jr, et al. v. Entergy Louisiana, Inc., et al.
- Winters v. Two Towns Ciderhouse, Inc.
- Burford et al. v. Cargill, Incorporated
- Duhe, Jr., et al. v. Texaco, Inc., et al.
- Martinez, et al. v. Sun West Mortgage Company, Inc.

 **TCPA**
- Fabricant v. AmeriSave Mortgage Corp.
- Snyder, et al. v. U.S. Bank, N.A., et al. (Deutsche Bank Settlement and Wilmington Trust Settlement)
- Makaron v. Enagic USA, Inc.
- Story v. Mammoth Mountain Ski Area, LLC

 **MASS TORTS**
- In Re: E.I. du Pont de Nemours and Company C8 Personal Injury Litigation (MDL 2433)[†]
- In Re: Testosterone Replacement Therapy Products Liability Litigation (MDL 2545)[†]
- Chevron Richmond Refinery Fire Settlement
- DePuy ASR Inventory Settlement[¥]
- Essure Product Liability Inventory Settlement[¥]

 **ANTITRUST**
- In Re: Cathode Ray Tube (CRT) Antitrust Litigation (MDL 1917)[*]
- In Re: Interior Molded Doors Antitrust Litigation (Indirect)

 **DATA BREACH**
- Bailey, et al. v. Grays Harbor County Public Hospital No. 2
- Jackson-Battle, et al. v. Navicent Health, Inc.

[*]*Services provided in cooperation with The Notice Company, Inc.*

[†]*Services provided in cooperation with the Court-Appointed Special Master*

[¥]*Inventory settlement*



assurance – consulting – tax – technology

pncpa.com

## Exhibit B: CV of Brandon Schwartz



**Class Action – Mass Tort – Claims Administration – Disbursement**

pnclassaction.com

# Brandon Schwartz



Brandon Schwartz is the Director of Notice for P&N Consulting Services Group.  He is responsible for developing customized legal notice solutions for clients related to class action notice and claims administration programs.

Brandon has more than 10 years of experience designing and implementing complex notice programs. His knowledge of demographic research, reach and frequency methodology, digital and social media strategies, and Fed R. Civ 23(c)(2) compliance keep clients informed of the best practices in legal notice design. He is the author of several articles pertaining to Rule 23 changes and notice design and implementation.

Brandon has designed and implemented notice campaigns for hundreds of cases in his career.  Prior to joining P&N, Brandon was the Director of Notice and Media for a large claims administrator where he was responsible for overseeing cases such as: *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litigation*; *In re Sony PS3 "Other OS" Litigation*; *Gordon v. The Hain Celestial Group et al*; and *Smith, et al. v. Floor & Decor Outlets of America, Inc.*

## EDUCATION & CREDENTIALS
- Bachelor of Science, Marketing, University of Illinois at Chicago
- Bachelor of Science, Management, University of Illinois at Chicago
- Legal Notice Expert

## ARTICLES
- Legal Notice and Social Media: How to Win the Internet
- Rule 23 Changes: Avoid Delays in Class Settlement Approval
- Rule 23 Changes: How Electronic Notice Can Save Money
- Tackling Digital Class Notice with Rule 23 Changes
- What to Expect: California's Northern District Procedural Guidance Changes

## SPEAKING ENGAGEMENTS
- Class Action Law Forum: Consumer Class Actions, San Diego, CA, March 5, 2020
- Class Action Mastery: Best Practices in Claims Settlement Administration, HB Litigation Conference, San Diego, CA, January 17, 2019
- Class Action Mastery: Communication with the Class, HB Litigation Conference, New York, NY, May 10, 2018



## SAMPLE JUDICIAL COMMENTS

- ***Lisa Jones et al. v. Monsanto Company, et al.***, No. 4:19-cv-00102-BP (W.D. Mo.) Chief Judge Beth Phillips, May 13, 2021:

  *The Court also notes that there has been only one objection filed, and even the Objector has not suggested that the amount of the settlement is inadequate or that the notice or the method of disseminating the notice was inadequate to satisfy the requirements of the Due Process Clause or was otherwise infirm…However, with respect to the Rule 23(e) factors, the Court finds that the process used to identify and pay class members and the amount paid to class members are fair and reasonable for settlement purposes.*

- ***Winters et al. v. Two Towns Ciderhouse Inc.***, No. 3:20-cv-00468-BAS-BGS (C.D. Cal.) Judge Cynthia Bashant, May 11, 2021:

  *The settlement administrator, Postlethwaite and Netterville, APAC ("P&N") completed notice as directed by the Court in its Order Granting Preliminary Approval of the Class Action Settlement. (Decl. of Brandon Schwartz Re: Notice Plan Implementation and Settlement Administration ("Schwartz Decl.") ¶¶ 4–14, ECF No. 24-5.)….Notice via social media resulted in 30,633,610 impressions. (Schwartz Decl. ¶4.) Radio notice via Spotify resulted in 394,054 impressions. (Id. ¶ 5.) The settlement website received 155,636 hits, and the toll-free number received 51 calls. (Id. ¶¶ 9, 14.). Thus, the Court finds the Notice complies with due process.*

- ***Fabricant v. Amerisave Mortgage Corporation***, No. 19-cv-04659-AB-AS (C.D. Cal.) Judge Andre Birotte, Jr., November 25, 2020:

  *The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The notice fully satisfied the requirements of Due Process. No Settlement Class Members have objected to the terms of the Settlement.*

- ***Edward Makaron et al. v. Enagic USA, Inc.***, 2:15-cv-05145 (C.D. Cal.), Judge Dean D. Pregerson, January 16, 2020:

  *The Court makes the following findings and conclusions regarding notice to the Class:*

  *a. The Class Notice was disseminated to persons in the Class in accordance with the terms of the Settlement Agreement and the Class Notice and its dissemination were in compliance with the Court's Preliminary Approval Order;*
  *b. The Class Notice: (i) constituted the best practicable notice under the circumstances to potential Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their*



*right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient individual notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*

- ***John Karpilovsky and Jimmie Criollo, Jr. et al v. All Web Leads, Inc.***, 1:17-cv-01307 (N.D. Ill), Judge Harry D. Leinenweber, August 8, 2019:

    *The Court hereby finds and concludes that Class Notice was disseminated to members of the Settlement Class in accordance with the terms set forth in the Settlement Agreement and that Class Notice and its dissemination were in compliance with this Court's Preliminary Approval Order.*

    *The Court further finds and concludes that the Class Notice and claims submission procedures set forth in the Settlement Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement and this Order.*

- ***Hartig Drug Company Inc., v. Senju Pharmaceutical LTD., and Allergan, Inc.,*** 1:14-cv-00719 (D. Del.), Judge Joseph F. Bataillon, May 3, 2018:

    *The Court approves the proposed notice program, including the Mail Notice and the Publication Notice, attached as Exhibits A and B to the Declaration of Brandon Schwartz of Garden City Group in support of Plaintiff's Unopposed Motion to Distribute Notice to the Settlement Class ("Schwartz Declaration"). The Court further approves the claim form attached as Exhibit C to the Schwartz Declaration. The Court finds that the manner of notice proposed constitutes the best practicable notice under the circumstances as well as valid, due, and sufficient notice to all persons entitled thereto and complies fully with the requirements of the Federal Rule of Civil Procedure 23…*

- ***Gordon v. Hain Celestial Group, et al.,*** 1:16-cv-06526 (S.D.N.Y.), Judge Katherine B. Forrest, September 22, 2017:

    *The form, content, and method of dissemination of the Class Notice given to Settlement Class Members - as previously approved by the Court in its Preliminary Approval Order – were adequate and reasonable, constituted the best notice practicable under the circumstances, and satisfied the requirements of Rule 23 (c) and (e) and Due Process.*

- ***In re: Sony PS3 "Other OS" Litigation,*** 4:10-cv-01811 (N.D. Cal.), Judge Yvonne Gonzalez Rogers, June 8, 2018:

    *The Court finds that the notice provisions set forth under the Class Action Fairness Act, 28 U.S.C. § 1715, were complied with in this Action.*



> *The Court finds that the program for disseminating notice to the Class provided for in the Settlement, and previously approved and directed by the Court (the "Notice Program"), has been implemented by the Settlement Administrator and the Parties, and that such Notice Program, including the approved forms of notice, constitutes the best notice practicable under the circumstances and fully satisfied due process, the requirements of Rule 23 of the Federal Rules of Civil Procedure and all other applicable laws.*

- ***In re: Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litigation,*** 3:12-cv-00169 (D.N.J.) Judge Anne E. Thompson, June 8, 2016:

> *Notice of the Settlement Agreements to the Settlement Classes required by Rule 23(e) of the Federal Rules of Civil Procedure, including the additional forms of notice as approved by the Court, has been provided in accordance with the Court's orders granting preliminary approval of these Settlements and notice of the Settlements, and such Notice has been given in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies Federal Rules of Civil Procedure 23(c)(2)(B) and due process.*



**Class Action – Mass Tort – Claims Administration – Disbursement**

pnclassaction.com

## LEGAL NOTICE CASES

| Case Caption | Docket Number | Court |
| --- | --- | --- |
| Hanson v. Welch Foods | 3:20-cv-02011-JSC | N.D. Cal. |
| McMorrow v. Mondelez International, Inc. | 3:17-cv-02327 | S.D. Cal. |
| Hadley v. Kellogg Sales Company | 5:16-cv-04955 | N.D. Cal. |
| Miracle-Pond, et al. v. Shutterfly, Inc. | 16-cv-10984 | Cir. Ct. Cook Cnty. |
| In Re: Sonic Corp. Customer Data Breach Litigation | 1:17-md-02807 | N.D. Ohio |
| In re: Interior Molded Doors Indirect Purchaser Antitrust Litigation | 3:18-cv-00850 | E.D. Va. |
| Krommenhock v. Post Foods, LLC | 3:16-cv-04958 | N.D. Cal. |
| Brianna Morris v. FPI Management Inc. | 2:19-CV-0128 | E.D. Wash. |
| Kirilose Mansour v. Bumble Trading Inc. | RIC1810011 | Cal. Super. |
| Lisa T. Leblanc, et al. v. Texas Brine Company, LLC, et al. | 12-2059 | E.D. La. |
| Jackson-Battle v. Navicent Health, Inc. | 2020-CV-072287 | Ga Super. |
| Fabricant v. Amerisave Mortgage Corp | 2:19-cv-04659 | C.D. Cal. |
| Jammeh v. HNN Assoc. | 2:19-cv-00620 | W.D. Wash. |
| Farruggio et al. v. 918 James Receiver, LLC et al. | 3831/2017 | N.Y. Sup Ct |
| Winters et al. v. Two Towns Ciderhouse Inc. | 3:20-cv-00468 | S.D. Cal. |
| Siddle, et al. v. The Duracell Company, et al. | 4:19-cv-00568 | N.D. Cal. |
| Lisa Jones et al. v. Monsanto Company | 4:19-cv-00102 | W.D. Mo. |
| Daley et al. v. Greystar Real Estate Partners, LLC, et al. | 2:18-CV-00381 | E.D. Wash. |
| Makaron v. Enagic USA, Inc. | 2:15-cv-05145 | C.D. Cal. |
| John Karpilovsky, et al. v. All Web Leads, Inc. | 1:17-cv-01307 | N.D. Ill. |
| Hughes et al. v. AutoZone Parts Inc. et al. | BC631080 | Cal. Super. |
| Kimberly Miller, et al. v. P.S.C., Inc. d/b/a Puget Sound Collections | 3:17-cv-0586 | W.D. Wash. |
| Aaron Van Fleet, et al. v. Trion Worlds Inc. | 535340 | Cal. Super. |
| Wilmington Trust TCPA (Snyder, et al. v. U.S. Bank, N.A., et al.) | 1:16-cv-11675 | N.D. Ill. |
| Deutsche Bank National Trust TCPA (Snyder, et al. v. U.S. Bank, N.A., et al.) | 1:16-cv-11675 | N.D. Ill. |
| Adriana Garcia, et al. v. Sun West Mortgage Company, Inc. | BC652939 | Cal. Super. |
| Cajuns for Clean Water, LLC, et al v. Cecilia Water Corporation, et al | 82253 | La. Dist. |
| In re: Sony PS3 "Other OS" Litigation | 4:10-cv-01811 | N.D. Cal. |
| In re: Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litigation | 3:12-cv-00169 | D.N.J. |
| In re: Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litigation | 3:12-cv-00711 | D.N.J. |
| Hartig Drug Company Inc., v. Senju Pharmaceutical et. al. | 1:14-cv-00719 | D. Del. |
| Gordon v. The Hain Celestial Group, et al. | 1:16-cv-06526 | S.D.N.Y. |
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico – Economic and Property Damages Settlement (MDL 2179) | 2:10-md-02179 | E.D. La. |
| In re: Google Inc. Cookie Placement Consumer Privacy Litigation (MDL 2358) | 1:12-md-02358 | D. Del. |
| In re: Pool Products Distribution Market Antitrust Litigation (MDL 2328) | 2:12-md-02328 | E.D. La. |



| Case Caption | Docket Number | Court |
|---|---|---|
| In re: Polyurethane Foam Antitrust Litigation (MDL 2196) | 1:10-md-2196 | N.D. Ohio |
| In re: Processed Egg Products Antitrust Litigation (MDL 2002) | 2:08-md-02002 | E.D. Pa. |
| In re: The Flintkote Company and Flintkote Mines Limited | 1:04-bk-11300 | Bankr. D. Del. |
| In re: Prograf (Tacrolimus) Antitrust Litigation (MDL 2242) | 1:11-cv-02242 | D. Mass. |
| Markos v. Wells Fargo Bank, N.A. | 1:15-cv-01156 | N.D. Ga. |
| Cross v. Wells Fargo Bank, N.A. | 1:15-cv-01270 | N.D. Ga. |
| Ferrick v. Spotify USA Inc. | 1:16-cv-08412 | S.D.N.Y. |
| In re: Parmalat Securities Litigation (MDL 1653) | 1:04-md-01653 | S.D.N.Y. |
| Smith v. Floor and Décor Outlets of America, Inc. | 1:15-cv-04316 | N.D. Ga. |
| Schwartz v. Intimacy in New York, LLC | 1:13-cv-05735 | S.D.N.Y. |
| In re: TRS Recovery Services, Inc., Fair Debt Collection Practices Act Litigation (MDL 2426) | 2:13-md-02426 | D. Me. |
| Young v. Wells Fargo & Co | 4:08-cv-00507 | S.D. Iowa |
| In re: Credit Default Swaps Antitrust Litigation (MDL 2476) | 1:13-md-02476 | S.D.N.Y. |
| Anthony Frank Lasseter et. al. v. Rite-Aid | 09-cv-2013-900031 | Ala. Cir. Ct. |
| Khoday v. Symantec Corp. | 0:11-cv-00180 | D. Minn. |
| MacKinnon, Jr v. IMVU | 1-11-cv-193767 | Cal. Super. |
| Ebarle et al. v. LifeLock, Inc. | 3:15-cv-00258 | N.D. Cal. |
| Sanchez v. Kambousi Restaurant Partners ("Royal Coach Diner") | 1:15-cv-05880 | S.D.N.Y. |
| Schwartz v. Avis Rent A Car System | 2:11-cv-04052 | D.N.J. |
| Klein v. Budget Rent A Car System | 2:12-cv-07300 | D.N.J. |
| Pietrantonio v. Kmart Corporation | 15-5292 | Mass. Cmmw. |
| Cox et al., v. Community Loans of America, Inc., et al. | 4:11-cv-00177 | M.D. Ga. |
| Vodenichar et al. v. Halcón Energy Properties, Inc. et al. | 2013-512 | Pa. Com. Pleas |
| State of Oregon, ex. rel. Ellen F. Rosenblum, Attorney General v. AU Optronics Corporation, et al., | 1208 10246 | Or. Cir. |
| Barr v. The Harvard Drug Group, LLC, d/b/a Expert-Med | 0:13-cv-62019 | S.D. Fla. |
| Splater et al. v. Thermal Ease Hydronic Systems, Inc. et al. | 03-2-33553-3 | Wash. Super. |
| Phillips v. Bank of America | 15-cv-00598 | Cal. Super. |
| Ziwczyn v. Regions Bank and American Security Insurance Co. | 1:15-cv-24558-FAM | S.D. Fla |
| Dorado vs. Bank of America, N.A. | 1:16-cv-21147-UU | S.D. Fla |
| Glass v. Black Warrior Electric | cv-2014-900163 | Ala. Cir. |
| Beck v. Harbor Freight Tools USA, Inc. | 15-cv-00598 | Ohio Com. Pleas |
| Ligon v. City of New York, et al. | 12-cv-2274 | S.D.N.Y. |
| Abdellahi, et a., vs. River Metals Recycling, LLC | 13-CI00095 | Ky. Cir. |
| Alegre v. XPO Last Mile, Inc. | 2:15-cv-02342 | D.N.J. |
| Jack Leach et al. v. E.I. du Pont de Nemours and Co. | 01-C-608 | W. Va. Cir. |
| Hayes , et al. v. Citizens Financial Group Inc., et al. | 1:16-cv-10671 | D. Mass. |
| In re: Foreign Exchange Benchmark Rates Antitrust Litigation | 1:13-cv-07789 | S.D.N.Y. |
| Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | 2:13-cv-05693 | C.D. Cal. |
| Cozzitorto vs. American Automobile Association of Northern California, Nevada & Utah | C13-02656 | Cal. Super. |



| Case Caption | Docket Number | Court |
|---|---|---|
| Filannino-Restifo, et al. v. TD Bank, N.A. | 0:18-cv-01159 | D.N.J. |
| United States v. Takata Corporation | 2:16-cr-20810 | E.D. Mich. |
| Free Range Content, Inc. v. Google Inc. | 5:14-cv-02329 | N.D. Cal. |
| Bautista v. Valero Marketing and Supply Company | 3:15-cv-05557 | N.D. Cal. |
| Devin Forbes and Steve Lagace -and- Toyota Canada Inc. | cv-16-70667 | Ont. Super. Ct. |
| Thierry Muraton -and- Toyota Canada Inc. | 500-06-000825-162 | Que. Super. Ct. |
| In re: Residential Schools Class Action Litigation | 00-cv-192059 | Ont. Super. Ct. |
| In re: Tricor Antitrust Litigation | 05-340 | D. Del. |
| Masztal v. City of Miami | 3D06-1259 | Fla. Dist. App. |
| In re: Tribune Company, et al. | 08-13141 | D. Del. |
| Marian Perez v. Tween Brands Inc. | 14-cv-001119 | Ohio Com. Pleas |
| Ferguson v. Safeco | DV 04-628B | Mont. Dist. |
| Williams v. Duke Energy | 1:08-cv-00046 | S.D. Ohio |
| Boone v. City of Philadelphia | 2:05-cv-01851 | E.D. Pa. |
| In re: Lehman Brothers Inc. | 08-13555, 08-01420 | Bankr. S.D.N.Y. |
| In re: Department of Veterans Affairs (VA) Data Theft Litigation (MDL No. 1796) | 1:06-md-00506 | D.D.C. |
| In re: Countrywide Customer Data Breach Litigation (MDL No. 1998) | 3:08-md-01998 | W.D. Ky. |
| In re: Checking Account Overdraft Litigation (MDL No. 2036) | 1:09-md-02036 | S.D. Fla. |
| In re: Heartland Data Security Breach Litigation (MDL No. 2046) | 4:09-md-02046 | S.D. Tex. |
| Schulte v. Fifth Third Bank | 1:09-cv-06655 | N.D. Ill. |
| Mathena v. Webster Bank, N.A. | 3:10-cv-01448 | D. Conn. |
| Delandro v. County of Allegheny | 2:06-cv-00927 | W.D. Pa. |
| Trombley v. National City Bank | 1:10-CV-00232 | D.D.C. |
| Fontaine v. Attorney General of Canada | 00-CV-192059 CP | Ont. Super. Ct. |
| Marolda v. Symantec Corp. | 3:08-cv-05701 | N.D. Cal. |



assurance – consulting – tax – technology

pncpa.com

# Exhibit C: Publication Notice

<u>LEGAL NOTICE</u>

# If You Purchased Certain Roundup®, HDX®, or Ace® Weed & Grass Killer Products, You May Be Entitled To a Cash Payment From A Proposed Class Action Settlement

*The United States District Court authorized this Notice.*
*It is not a solicitation from a lawyer. You are not being sued.*

This Settlement resolves a class action lawsuit, *Scott Gilmore et al. v. Monsanto Company, et al.* (No. 3:21-cv-8159), pending in the United States District Court for the Northern District of California (the "Court") against Monsanto Company, the manufacturer of certain Roundup®, Ace®, and HDX® weed and grass killer products (the "Products").

The lawsuit alleges that Monsanto falsely advertised and promoted the Products by failing to disclose that they, and their active ingredient, glyphosate, could potentially cause cancer or other adverse health effects. Monsanto denies these allegations and any wrongdoing. The Settlement avoids costs and risks from continuing the lawsuit, provides relief to purchasers of the Products during the relevant time period, and releases Monsanto and others from liability for related claims.

## Who's Included?

You may be a Settlement Class Member entitled to a cash payment if you purchased certain Roundup®, HDX®, or Ace® brand weed and grass killer products containing glyphosate sold by consumer retailers during the relevant time period. This case is <u>not</u> a personal-injury case. Plaintiffs do not allege that they were injured or became ill from using the Products. You do not have to have suffered personal injury to be a member of the Settlement Class or to file a claim. If you purchased any of the Products during the Class Period for purposes other than resale or distribution, you are in the Settlement Class and can file a claim.

The time period during which purchases are included in this Settlement differs from state to state, depending on each state's statutes of limitations. Visit the Settlement Website at www.WeedKillerAdSettlement.com for a complete list of the eligible Products and to determine if your purchase(s) are eligible for compensation.

## What Does The Settlement Provide?

The proposed Class Action Settlement Agreement ("Settlement" or "Agreement") will provide the Class with monetary relief in an amount not less than **$23 million** (the "Floor Amount") and not greater than **$45 million** (the "Ceiling Amount") to pay all aspects of the Settlement. Class Members will be able to make claims for payments for the qualifying Products they bought during the Class Period, equivalent to approximately 20% of their weighted average retail price during the relevant Class Period. Payments per unit range from $0.50 to $33.00, for between 2 and 11 units without proof of purchase, depending on the state of purchase (you may be able to exceed the applicable limits with valid proof of purchase). If the Court approves the Settlement and you have not excluded yourself as described below, you will be bound by the Settlement and barred from suing Monsanto and related entities for the claims released in the Settlement. The Released Claims are described in detail at www.WeedKillerAdSettlement.com.

## What Are My Rights And Options?

**Make a Claim.** You must submit a claim by going to www.WeedKillerAdSettlement.com and submitting (or mailing) a claim form. Class Members may make a claim by either an affirmation of the identity and quantity purchased or submitting proof(s) of purchase. The deadline **to postmark or submit your claim online is [Date]**.

**Other Options.** The purpose of this Notice is to inform you of this lawsuit so you can make an informed decision as to whether you should remain in or opt out of this Settlement. **Your legal rights are affected**, and you have a choice to make now. If you do not want to be legally bound by the Settlement, you must exclude yourself by **[Date]**. If you do not exclude yourself, you will release any claims you may have, as more fully described in the Settlement Agreement, available at www.WeedKillerAdSettlement.com. You may remain a Settlement Class Member and object to the Settlement by **[Date]**. You may choose to pay for and be represented by a lawyer who may send the objection for you. The Settlement Website explains how to exclude yourself or object.

The Court will hold a Final Approval Hearing on [Date] at XX:XX a.m./p.m. in Courtroom 4 – 17th Floor 450 Golden Gate Avenue, San Francisco, CA 94102 to consider whether to approve the Settlement, attorneys' fees and expenses, and Class Representative service awards. You may ask the Court to appear at the Final Approval Hearing, but you do not have to do so.

## How Can I Get More Information?

This notice summarizes the proposed Settlement. For detailed information, visit the Settlement Website below, contact the Claims Administrator at (833) 749-1489, contact Class Counsel at (310) 396-9600, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the

**833-749-1489**          **www.WeedKillerAdSettlement.com**

office of the Clerk of the Court for the United States District Court for the Northern District of California (address above), between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays..

**PLEASE DO NOT CALL OR WRITE THE COURT FOR INFORMATION OR ADVICE.**



assurance – consulting – tax – technology

pncpa.com

## Exhibit D: Class Action Settlement Notice

## <u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

*Gilmore et al. v. Monsanto Company, et al.*
No. 3:21-cv-8159 (N.D. Cal.)

*The United States District Court authorized this Notice.*
*It is not a solicitation from a lawyer. You are not being sued.*

You may be a Class Member entitled to a cash payment if you purchased certain **Roundup®**, **HDX®, or Ace®** brand glyphosate-based weed-killer products (the "Products"), including:

- **Roundup® Ready-to-Use Weed & Grass Killer;**
- **Roundup® Ready-to-Use Weed & Grass Killer Plus;**
- **Roundup® Weed & Grass Killer Concentrate Plus;**
- **Roundup® Weed & Grass Killer Super Concentrate;**
- **Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer;**
- **Roundup® Ready-to-Use Wild Blackberry Plus Vine and Brush Killer;**
- **Roundup® Concentrate Poison Ivy Plus Tough Brush Killer;**
- **Roundup® Concentrate Wild Blackberry Plus Vine and Brush Killer;**
- **Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer;**
- **Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer;**
- **Roundup® Ready-to-Use Max Control 365;**
- **Roundup® Concentrate Max Control 365;**
- **Roundup® Weed & Grass Killer Sure Shot Foam; Roundup® Precision Gel Weed & Grass Killer;**
- **Roundup® Pro Concentrate (2.5 Gal.);**
- **HDX® Weed & Grass Killer Ready-to-Use;**
- **HDX® Weed & Grass Killer Concentrate;**
- **Ace® Ready-to-Use Weed & Grass Killer;**
- **Ace® Weed & Grass Killer Concentrate**

### Examples of Covered Products:



1

**THIS NOTICE CONCERNS YOUR LEGAL RIGHTS**
**PLEASE READ IT CAREFULLY**

WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

The proposed Class Action Settlement Agreement ("Settlement" or "Agreement") will provide the Class with monetary relief in an amount not less than **$23 million** (the "Floor Amount") and not greater than **$45 million** (the "Ceiling Amount") to pay all aspects of the Settlement, including, but not limited to, all costs of Class Notice, Claims Administration Expenses, Class Member Claims, Class Representative service awards, Class Counsel's Expenses, and Class Counsel's Fees.

Class Members will be able to make claims for payments for the Roundup®, HDX®, and Ace® Products listed below, equivalent to approximately 20% of their weighted average retail price during the relevant class period. Payments per unit range from $0.50 to $33.00, depending on the price of the product(s) purchased, for between 2 and 11 units without proof of purchase, depending on the state of purchase. The amount available for each Product is shown in **Appendix 1.** With the exception of the three largest concentrated Products, claims can be made without proof of purchase, but such claims are limited to 1 unit per year within the Class Period. For example, if a Claimant purchased a 1.33 gal. container of Roundup® Ready to Use Max Control 365 in California at least once a year since 2015, the refund amount could be $42.00 without proof of purchase.

An unlimited number of bottles of the Products can be claimed if the Class Member provides valid proof of purchase for each Product purchased. Claimants may be contacted and required to also provide a declaration signed under penalty of perjury that provides additional information to confirm that the proof of purchase is genuine and sufficient.

If total claims submitted by Authorized Claimants exceed the Ceiling Amount after all other expenses are deducted, the amount refunded to Authorized Claimants will be reduced *pro rata*. On the other hand, if total claims submitted are below the Floor Amount after all other expenses are deducted, the amount refunded to Authorized Claimants will be increased *pro rata*.

If uncashed checks cause the total amount paid by Monsanto to fall below the Floor Amount, that amount will be distributed *pro rata* to Class Members if a further distribution is economically feasible. Otherwise, that amount will be donated to the National Consumer Law Center.

WHY IS THERE A NOTICE?

You have the right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. This Notice explains the lawsuit, the settlement, your legal rights, and what benefits are available and how to get them.

The court in charge of this case is the United States District Court for the Northern District of California (the "Court"), and the case is called *Scott Gilmore et al. v. Monsanto Company*, *et al.*, No. 3:21-cv-8159 (N.D. Cal.). The case is assigned to District Judge Vince Chhabria. The

individuals who sued are called the Class Representatives, and the company they sued, Monsanto Company ("Monsanto"), is called the Defendant.

If you are a Class Member, unless you exclude yourself from the Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Defendant, any Retailers of the Products, or any other Released Persons, about the claims released in this Settlement. That also means that all decisions by the Court will bind you. The Released Claims and Released Persons are defined in the Settlement Agreement and describe the legal claims that you give up (or "release") if you stay in the Settlement. The Released Claims relate to the same facts, products, and issues raised in the lawsuit (also referred to as claims arising from an "identical factual predicate"). A detailed description of the Released Claims is included in **Appendix 2.** The Settlement Agreement is available on the Settlement Website, www.WeedKillerAdSettlement.com.

WHAT IS THE LAWSUIT ABOUT?

The lawsuit seeks to obtain compensation for alleged false advertising and breach of warranty. Plaintiffs argue that Defendant falsely advertised and promoted the Products by failing to disclose that the Products, and their active ingredient, glyphosate, could potentially cause cancer or other adverse health effects. If you purchased any of the Products during the Class Period for purposes other than resale or distribution, you are in the Class.

Monsanto denies Plaintiffs' allegations and any wrongdoing and disputes the Class's right to recover anything. Nevertheless, it has agreed to settle the lawsuit for the purpose of avoiding the time and expense of further litigation.

This case is not a personal-injury case. Plaintiffs do not allege that they were injured or became ill from using the Products. You need not have suffered personal injury to be a member of the Class or to file a claim. And the release in the Settlement does not release any personal-injury claims.

WHY IS THIS A CLASS ACTION?

In a class action, one or more people called "class representatives or plaintiffs (in this case, Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kristy Williams), sue on behalf of people who have similar claims and so are all part of a "class" and called "class members." Bringing a case, such as this one, as a class action allows the adjudication of many similar claims of consumers that might be economically too small to bring in individual actions. One court resolves the issues for all class members, except for those who exclude themselves from the class.

WHY IS THERE A SETTLEMENT?

Plaintiffs and Class Counsel have evaluated the information made available during the lawsuit and have taken into account the risks and uncertainties of proceeding with this litigation, including the risks and uncertainties of class certification, prevailing on the merits, proving damages at trial, and prevailing on post-trial motions and appeal. Based upon their consideration of these factors,

Plaintiffs and Class Counsel believe it is in the best interests of the Class to settle the lawsuit and provide an opportunity for Class Members to receive a settlement payment.

Monsanto denies Plaintiffs' allegations and any wrongdoing, and the Class's right to recover anything. Nevertheless, it has agreed to settle the lawsuit for the purpose of avoiding the time and expense of further litigation.

The terms of the proposed Settlement are set forth in more detail in the Agreement filed with the Court, which is also available on the Settlement Website, at www.WeedKillerAdSettlement.com.

<u>THE CLASS</u>

The Court has certified a Settlement Class defined as:

> All Persons in the United States, who, during the Class Period, purchased Products (as defined below) in the United States other than for resale or distribution.

The "Products" are defined as:

- Roundup® Ready-to-Use Weed & Grass Killer (all sizes, applicators, and varieties)
- Roundup® Ready-to-Use Weed & Grass Killer Plus (all sizes, applicators, and varieties)
- Roundup® Weed & Grass Killer Concentrate Plus (all sizes and varieties)
- Roundup® Weed & Grass Killer Super Concentrate (all sizes and varieties)
- Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer (all sizes and varieties)
- Roundup® Ready-to-Use Wild Blackberry Plus Vine and Brush Killer (all sizes and varieties)
- Roundup® Concentrate Poison Ivy Plus Tough Brush Killer (all sizes and varieties)
- Roundup® Concentrate Wild Blackberry Plus Vine and Brush Killer (all sizes and varieties)
- Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all sizes and varieties)
- Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer (all sizes and varieties)
- Roundup® Ready-to-Use Max Control 365 (all sizes and varieties)
- Roundup® Concentrate Max Control 365 (all sizes and varieties)
- Roundup® Weed & Grass Killer Sure Shot Foam (all sizes and varieties)
- Roundup® Precision Gel Weed & Grass Killer (all sizes and varieties)
- Roundup® Pro Concentrate (2.5 gal.)
- HDX® Weed & Grass Killer Ready-to-Use (all sizes and varieties)
- HDX® Weed & Grass Killer Concentrate (all sizes and varieties)
- Ace® Ready-to-Use Weed & Grass Killer (all sizes and varieties)
- Ace® Weed & Grass Killer Concentrate (all sizes and varieties)

The "Class Period" depends on the state where each Class Member made his or her purchases. **A list of the applicable Class Periods for each State is located {HERE} and also attached to this**

**Notice as Appendix 3. You should check it carefully to ensure your purchase was made within the applicable Class Period for your state.**

The Products were sold widely at Home Depot, Lowe's, and Wal-Mart, in all 50 states and the District of Columbia, and in the United States territories, and were also available at stores including, but not limited to, Target, Ace Hardware, True Value, Orchard Supply, and Amazon.com.

<u>HOW DO I KNOW IF I AM A CLASS MEMBER?</u>

You are a member of the Class if you:

- ***Purchased a Roundup®, Ace®, or HDX® Product included in the Class definition above,***

- ***During the Class Period applicable to your state (see Appendix 3 to this Notice), and***

- ***For purposes other than distribution or resale.***

If you are not sure whether you are a Class Member, or have any other questions about the Settlement, you should visit the Settlement Website, <u>www.WeedKillerAdSettlement.com</u>, or call the Claims Administrator toll-free at 1-833-749-1489.

<u>YOUR RIGHTS TO PARTICIPATE IN, EXCLUDE YOURSELF FROM, OR OBJECT TO THE SETTLEMENT</u>

| Summary of Your Legal Rights & Options | | Deadline |
|---|---|---|
| **Submit a Claim Form** | This is the only way to get a cash payment. Claim Forms must be submitted online or mailed to the Claims Administrator by the Claims Deadline. | **Claim Deadline** |
| **Ask To Be Excluded (i.e., "Opt Out")** | **Get out of this settlement. Get no benefits from it. Keep your rights.** If you ask to be excluded (i.e., "opt out"), you will not be bound by this Settlement and will keep any right you might have to sue Monsanto separately or participate in another lawsuit about the same legal claims in this lawsuit. If there is a recovery from the proposed Settlement, you will not share in that recovery. For instructions on how to exclude yourself, see page **XX** | **Deadline** |
| **Object** | **Tell the Court why you believe the proposed Settlement is unfair, unreasonable, or inadequate.** You may file a written objection and/or appear at the Final Approval Hearing to tell the Court why you believe the proposed Settlement is unfair, unreasonable, or inadequate. You may still file a claim even if you object. If you ask to be excluded from the Class (i.e., "opt out"), you may not file an objection or a claim. For instructions on how to object, see page **XX** | **Deadline** |

| Do Nothing | **Stay in this lawsuit. Await the outcome. Give up certain rights.** By doing nothing, you will get no cash payment, but if the Settlement is approved, you will be giving up any right you may have to sue Monsanto separately about the same legal claims in this lawsuit. | No Deadline |

## HOW DO I MAKE A CLAIM?

You must submit a Claim Form to get a monetary payment. Claim Forms are simple and easy to complete, requiring (i) contact information; (ii) proof of purchase or information about the identity and quantity purchased; (iii) the retail location (including city and state) of the purchase; (iv) the approximate date of purchase; and (v) your affirmation that the information provided is true and correct. In exchange for receiving a monetary payment, under the Settlement Agreement, you will give up your rights to sue the Released Persons about the claims in the lawsuit or any other Released Claims.

Claim Forms must be submitted online or postmarked **no later than [Claim Deadline]**. Claim Forms may be filed online at the Settlement Website, www.WeedKillerAdSettlement.com. Printed Claim Forms will be mailed to Class Members upon request by calling or writing to the Claims Administrator. Printed Claim Forms should be mailed to:

Gilmore v. Monsanto Co. - Claims
c/o Postlethwaite & Netterville
P.O. Box 4208
Baton Rouge, LA 70821

## HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?

If you do not want to be bound by this Settlement, you must request to be excluded from the Class. All Class Members who purchased the Products listed above during the Class Period who do not exclude themselves from the Settlement will be bound by the orders issued by the Court regarding the Settlement.

If you request to be excluded from the Class, you will retain any individual rights you have against Monsanto and will not have "released" Monsanto or any other Released Persons from any claims. However, you will *not* receive the compensation described above. You may not object to the Settlement under this option.

If you wish to be excluded from the Class (also referred to as "opting out"), you must either download and print an Opt-Out Form from the Settlement Website (www.WeedKillerAdSettlement.com) or request that the Claims Administrator send you a paper

Opt-Out Form, fill out and sign the Opt-Out Form, and mail it to the Claims Administrator, **postmarked on or before [Opt-Out Deadline],** at the following address:

Gilmore v. Monsanto Co. - Exclusions
c/o Postlethwaite & Netterville
P.O. Box 4208
Baton Rouge, LA 70821

<u>IF I OPT OUT, CAN I STILL GET A SETTLEMENT PAYMENT?</u>

No. You will not get any money from the Settlement if you opt out and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit. If you opt out from the Settlement, do not submit a Claim Form asking for benefits.

<u>HOW DO I TELL THE COURT IF I DON'T LIKE THE SETTLEMENT?</u>

You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

If you want to express an objection to part or all of the Settlement, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If the Settlement is approved, you will still be bound by the Settlement and will receive the Settlement compensation if you file a valid and timely Claim Form.

If you wish to object, you must electronically file a written objection via the Court's Electronic Case Filing (ECF) system; deliver a written objection to the Class Action Clerk by mail, express mail, or personal delivery; or file a written objection in person at any location of the United States District Court for the Northern District of California. The written objection must (a) clearly identify the case name and number (*Gilmore v. Monsanto Co.*, Case No. 3:21-cv-8159); (b) contain information sufficient to identify and contact the objecting you or your attorney; and (c) contain a clear and concise statement of your objection, as well as any facts and law supporting the objection. You may object either on your own behalf or through an attorney hired at your own expense. If you are represented by an attorney, you must either sign the objection yourself or execute a separate declaration stating that you authorize the filing of the objection. You must substantially comply with the foregoing requirements for filing a written objection before appearing at the settlement approval hearing, but these requirements may be excused by the Court for good cause. Objections must be **filed or postmarked no later than [Objection Deadline].**

If you wish to appear at the Final Approval Hearing, you should file with the Court a notice of intention to appear, either in person or through an attorney **no later than [Objection Deadline]**

The address for the Class Action Clerk is below:

**Class Action Clerk**
United States District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

## WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND OPTING OUT?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement by opting out. Excluding yourself from the Settlement by opting out is telling the Court that you do not want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

## DO I HAVE A LAWYER IN THE CASE?

The Court has appointed, as Class Counsel in this case, Gillian L. Wade, Sara D. Avila, and Marc A. Castaneda, of Milstein, Jackson, Fairchild & Wade, LLP, Joel Oster of the Oster Law Firm, and any attorneys at those firms assisting in the representation of the Class in this Action.

The Court has determined that Class Counsel are qualified to represent you and all other Class Members. You will not be charged for these lawyers. The lawyers handling the case are experienced in handling similar cases. Nevertheless, you have the right to consult or retain an attorney of your choice at your own expense to advise you regarding the Settlement and your rights in connection with the Settlement and Final Approval Hearing described below.

## HOW WILL THE LAWYERS GET PAID?

Class Counsel intends to apply for fees of up to one-fourth of the Ceiling Amount, and Plaintiffs and Class Counsel intend to apply for service awards of up to $5,000 each for the Plaintiffs Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kristy Williams (the "named plaintiffs"). Whether to award those amounts is in the Court's discretion. If awarded, these payments will be subtracted from the amount available to pay Class Members' claims.

## WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Court has scheduled a Final Approval Hearing (also referred to as a "Fairness Hearing") to determine whether the Court should approve the Settlement as fair, reasonable, and adequate to the Class, and whether Judgment should be entered in accordance with the Agreement. The Court will also consider at the Final Approval Hearing the request of Class Counsel for an award of attorneys' fees and reimbursement of expenses, as well as the request of the named plaintiffs for service awards for services rendered on behalf of the Class.

The Final Approval Hearing will occur at [time and date] in Courtroom 4 – 17th Floor 450 Golden Gate Avenue, San Francisco, CA 94102.

8

Your attendance at the Final Approval Hearing is not required. However, you may be heard orally at the hearing in opposition to the proposed Settlement if you wish.

You may also enter an appearance through an attorney retained at your own expense. If you do not enter an appearance through an attorney, and do not object, Class Counsel will represent you at the hearing.

The Court may delay the date of the Final Approval Hearing without further notice to the members of the Settlement Class, in which case the new date of the Final Approval Hearing will be posted on the Settlement Website, www.WeedKillerAdSettlement.com.

WHAT HAPPENS IF I DO NOTHING AT ALL?

If you do nothing, you will get no money from the Settlement. Unless you exclude yourself, if the Settlement is approved, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Monsanto or any Released Persons about the claims in this case or any other Released Claims.

HOW CAN I GET MORE INFORMATION?

This Notice's description of the case and Settlement is general. If you want more detailed information about the lawsuit and proposed Settlement, or to review the Settlement documents and related pleadings, you may visit the Settlement Website at www.WeedKillerAdSettlement.com. If you have additional questions, you can visit the Settlement Website or contact the Claims Administrator:

**By Mail:** Gilmore v. Monsanto Co., c/o Postlethwaite & Netterville, P.O. Box 4208, Baton Rouge, LA 70821

**By Email:** info@WeedKillerAdSettlement.com

**By Phone (Toll Free):** 1-833-749-1489

Updates will be posted on the Settlement Website as information about the Settlement process becomes available.

If you wish to review the Court's docket in this case, you may do so at https://pacer.uscourts.gov/file-case/court-cmecf-lookup/court/CANDC, the Court's public access website.

**DO NOT TELEPHONE OR ADDRESS ANY QUESTIONS ABOUT THE CASE OR SETTLEMENT TO THE CLERK OF THE COURT OR TO THE JUDGE. THEY ARE NOT PERMITTED TO ANSWER YOUR QUESTIONS. THE COURT EXPRESSES NO VIEW AS TO THE MERITS OF ANY CLAIMS OR DEFENSES ASSERTED BY ANY PARTY TO THE ACTION.**

**For more information, visit www.WeedKillerAdSettlement.com or call 1-833-749-1489.**

**Appendix 1**

| Product | Anticipated Payment Per Unit |
|---|---|
| 16 oz. Roundup® Weed and Grass Killer Sure Shot Foam | $1.00 |
| 22 oz. Roundup® Weed and Grass Killer Sure Shot Foam | $1.00 |
| 24 oz. Roundup® Ready-to-Use Weed and Grass Killer | $1.00 |
| 30 oz. Roundup® Ready-to-Use Weed and Grass Killer | $1.00 |
| 24 oz. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $1.50 |
| 24 oz. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $2.00 |
| 1 gal. Roundup® Ready-to-Use Weed and Grass Killer (all applicator types) | $2.00 |
| 0.5 gal. (64 oz.) Roundup® Ready-to-Use Weed and Grass Killer | $2.50 |

| | |
|---|---|
| 0.5 gal. (64 oz.) Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $2.50 |
| 1.25 gal. Roundup® Ready-to-Use Weed and Grass Killer (all applicator types) | $2.50 |
| 5 oz. Roundup® Precision Gel Weed and Grass Killer | $3.00 |
| 1 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $3.00 |
| 1 gal. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $3.00 |
| 16 oz. Roundup® Weed & Grass Killer Concentrate Plus | $3.50 |
| 1.33 gal. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $3.50 |
| 1.1 gal. Roundup® Ready-to-Use Weed & Grass Killer (all applicator types) | $4.00 |

| | |
|---|---|
| 32 oz. Roundup® Weed and Grass Killer Concentrate Plus | $4.00 |
| 35.2 oz. Roundup® Weed and Grass Killer Concentrate Plus | $4.00 |
| 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer (all applicator types) | $4.00 |
| 1.33 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $5.00 |
| 1.25 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $5.00 |
| 16 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer | $5.50 |
| 3-pack – 6 oz. Roundup® Weed & Grass Killer Concentrate Plus | $5.50 |
| 32 oz. Roundup® Concentrate Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $5.50 |

| | |
|---|---|
| 1.25 gal. Roundup® Ready-to-Use Max Control 365 (all applicator types) | $6.00 |
| 36.8 oz. Roundup® Weed & Grass Killer Concentrate Plus | $6.00 |
| 40 oz. Roundup® Weed & Grass Killer Concentrate Plus | $6.00 |
| 1.1 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $6.00 |
| 1.33 gal. Roundup® Ready-to-Use Max Control 365 (all applicator types) | $7.00 |
| Combination Pack – 1.33 gal Roundup® Ready-to-Use Weed & Grass Killer and 2x7 oz. Roundup® Weed & Grass Killer Concentrate Plus | $7.50 |
| 0.5 gal. (64 oz.) Roundup® Concentrate Plus Weed & Grass Killer | $7.50 |
| 32 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer | $8.00 |

| | |
|---|---|
| 32 oz. Roundup® Concentrate Max Control 365 | $8.50 |
| Combination pack – 1.33 gal. Roundup® Ready-to-Use Max Control 365 and 8 oz. Roundup® Concentrate Max Control 365. | $9.00 |
| 80 oz. Roundup® Weed & Grass Killer Concentrate Plus | $9.50 |
| Combination Pack – 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer and 8 oz. Roundup® Weed & Grass Killer Super Concentrate | $9.50 |
| Combination pack – 1.33 gal. Roundup® Extended Control Weed & Grass Killer Plus Weed Preventer and 16 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer. | $10.50 |
| 35.2 oz. Roundup® Weed & Grass Killer Super Concentrate | $11.50 |
| 2-pack – 80 oz. Roundup® Weed & Grass Killer Concentrate Plus | $12.50 |
| 0.42 gal. Roundup® Weed & Grass Killer Super Concentrate | $14.00 |

| | |
|---|---|
| 0.5 gal. (64 oz.) Roundup® Weed & Grass Killer Super Concentrate | $15.00 |
| 1 gal. Roundup® Weed & Grass Killer Super Concentrate | $21.50 |
| 2.5 gal. Roundup® Pro Concentrate | $33.00 |
| 24 oz. Ace® Ready-to-Use Weed & Grass Killer | $0.50 |
| 1 gal. Ace® Ready-to-Use Weed & Grass Killer | $1.50 |
| 1 gal. Ace® Ready-to-Use Weed & Grass Killer with battery-operated sprayer | $3.00 |
| 32 oz. Ace® Concentrate Weed & Grass Killer | $3.00 |
| 1 gal. Ace® Concentrate Weed & Grass Killer | $5.50 |

| | |
|---|---|
| 32 oz. HDX® Concentrate Weed & Grass Killer | $1.50 |
| 0.5 gal. HDX® Concentrate Weed & Grass Killer | $3.00 |
| 2.5 gal. HDX® Concentrate Weed & Grass Killer | $12.50 |

**Appendix 2**

**RELEASE OF CLAIMS**

If the Court approves the Settlement and you have not excluded yourself as described above, you will be bound by the Settlement and will be forever barred from suing Monsanto or other entities (as detailed in the Settlement) for the claims released in the Settlement. This applies whether you currently know about the existence of such claims or not.

Here, the claims you will give up are:

Upon the Effective Date, each of the Class Members will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged, and covenanted not to sue, the Released Parties from any and all Claims (with the exception of Personal Injury Claims and Medical Monitoring Claims), whether known or unknown, matured or unmatured, asserted or unasserted, latent or patent, at law or in equity, existing under federal or state law, regardless of legal theory or relief claimed, that any Class Member has or may in the future have against any Released Party arising out of or related in any way to the same factual predicates as the Action, including:

   o   any allegedly false, misleading, incomplete, or inaccurate statement, or any alleged omission, regarding the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate (whether or not such statement or alleged omission regarding an ingredient or component thereof is made specifically with regard to the Products, with regard to the ingredient or component thereof separately, or with regard to other products), or any scientific claims or debate regarding the same;

   o   any alleged breach of contract or breach of warranty arising out of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same; or

   o   any other alleged economic loss or injury (other than those economic losses or injuries encompassed within the definitions of Personal Injury Claims or Medical Monitoring Claims) allegedly suffered by or inflicted on any Class Member because of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same.

Collectively, the foregoing are "Class Released Claims." For avoidance of doubt, this release does not release any Personal Injury Claims or Medical Monitoring Claims. To the extent that any action or proceeding includes both Personal Injury Claims or Medical Monitoring Claims and Claims that would otherwise be released by this Agreement, the Personal Injury Claims and/or Medical

17

Monitoring Claims will not be deemed released, but the other Claims will be released. By way of example, if a Class Member brought an action asserting that he or she bought and used Roundup® products that failed to warn of an alleged risk of Non-Hodgkin Lymphoma and that this caused them to develop Non-Hodgkin Lymphoma, and sought to recover damages for their physical injury, for lost wages, and for medical bills, neither that Personal Injury Claim nor the related damages (including economic damages such as lost wages or medical bills) would be released by this Settlement. For further avoidance of doubt, this release shall apply to Claims (other than Personal Injury Claims and Medical Monitoring Claims) arising from, resulting from, or in any way relating to or in connection with a Class Member's purchase or use of the Products in the past, present, or future.

"Claims" means past, present, and future claims, counterclaims, actions, rights, remedies, causes of action, liabilities, suits, demands, damages, losses, payments, judgments, verdicts, debts, dues, sums of money, liens, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, including any of the foregoing for equitable or injunctive relief, direct damages, indirect damages, consequential damages, incidental damages, punitive or exemplary damages, statutory and other multiple damages or penalties of any kind, or any other form of damages or relief whatsoever, and whether based upon breach of contract, warranty or covenant, tort, negligence, strict liability, gross negligence, recklessness, willful or wanton conduct, malice, oppression, conscious disregard, joint and several liability, guarantee, contribution, reimbursement, subrogation, indemnity, defect, failure to warn, fault, misrepresentation, common-law fraud, statutory consumer fraud, quantum meruit, breach of fiduciary duty, violation of statutes or administrative regulations, and/or any other legal (including common-law), foreign, statutory, equitable, or other theory or right of action, whether in law or in equity, fixed, contingent or noncontingent, known or unknown, discovered or undiscovered, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, ripened or unripened, perfected or unperfected, choate or inchoate, developed or undeveloped, liquidated or unliquidated, now recognized by law or that may be created or recognized in the future by statute, regulation, or judicial decision or in any other manner, and whether direct, representative, derivative, class, or individual in nature, in any forum that any Person had, has, or may have in the future.

"Medical Monitoring Claims" shall mean Claims that seek to require, or recover damages amounting to the costs of, medical monitoring or screening for potential physical injury or illness of a natural person. It is expressly contemplated that a cause of action could include both Claims that are Medical Monitoring Claims and Claims that are not Medical Monitoring Claims.

"Monsanto" means Monsanto Company and Bayer AG and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

"Personal Injury Claims" shall mean Claims that assert a right to recover damages for the actual physical injury or illness of a natural person or that seek to recover compensatory, punitive, or exemplary damages, or attorney's fees, allegedly resulting or arising from the actual physical

18

injury or illness of a natural person, including, for example, claims for mental or physical pain or suffering; emotional or mental harm; loss of enjoyment of life; loss of wages, income, earnings, or earning capacity; medical expenses; doctor, hospital, nursing, or drug bills; loss of support, services, consortium, companionship, society, or affection; damage to familial relations; and wrongful death and survival actions. It is expressly contemplated that a cause of action could include both Claims that are Personal Injury Claims and Claims that are not Personal Injury Claims.

"Related Parties" means the past, present, and future manufacturers, formulators, distributors, marketing agents, commissionaires, resellers, Retailers, clinical researchers, agents, licensees, contractors, joint ventures, joint venturers, and consultants of or with respect to the Products, and any and all past, present, or future suppliers of materials, components, and services used in the development, registration, formulation, manufacture, distribution, handling, sale, or marketing of the Products, including the labeling and packaging thereof, and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, divisions, joint ventures, and joint venturers; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

"Released Persons" means, respectively, Monsanto; Scotts; any distributors and/or Retailers of the Products; Related Parties; any Persons that are currently, may in the future be, or have in the past been, marketing, advertising, distributing, selling, or reselling the Products and any past, current, or future parent companies (including intermediate parents and ultimate parents) and subsidiaries, Affiliates, predecessors, successors, and assigns, and each of their respective past, present, or future officers, directors, employees, agents, members, franchisees, franchisors, attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors, and assigns; and any other Person acting on behalf of Monsanto, Scotts, or any other Released Person.

"Retailers" means any person or entity that has offered, is presently offering, or may in the future offer the Products for sale or resale (including, without limitation, wholesale distributors, private-label distributors, and all retailers and retail distributors), and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above. "Retailers" shall include, but is in no way limited by, Ace Hardware Corporation; Costco Wholesale Corporation; Home Depot U.S.A., Inc.; The Home Depot, Inc.; Lowe's Companies, Inc.; Lowe's Home Centers, LLC; Target Corporation; Walmart Inc.; and Wal-Mart Stores, Inc., and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

In addition, each Class Member shall be deemed to have waived and relinquished the rights and benefits available to them under California Civil Code section 1542. **Section 1542 provides**:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor."**

Notwithstanding California Civil Code section 1542 or any other federal or state statute or rule of law of similar effect, the Agreement shall be given full force and effect according to each and all of its expressed terms and provisions, including those related to any unknown or unsuspected claims, liabilities, demands, or causes of action which are based on, arise from, or are in any way connected with the Action.

**Appendix 3**

**List of Applicable Class Periods for Each State or Territory**

| State or Territory | Beginning of Class Period |
|---|---|
| Alabama | February 2017 |
| Alaska | February 2017 |
| American Samoa | February 2018 |
| Arizona | February 2017 |
| Arkansas | February 2016 |
| California | August 2015 |
| Colorado | February 2018 |
| Connecticut | February 2016 |
| Delaware | February 2017 |
| District of Columbia | February 2017 |
| Florida | February 2016 |
| Georgia | October 2016 |
| Guam | August 2016 |
| Hawaii | February 2017 |
| Idaho | February 2017 |
| Illinois | February 2017 |
| Indiana | February 2017 |
| Iowa | February 2017 |
| Kansas | December 2015 |
| Kentucky | February 2017 |
| Louisiana | February 2017 |
| Maine | February 2015 |
| Maryland | August 2016 |
| Massachusetts | October 2016 |
| Michigan | October 2014 |
| Minnesota | December 2013 |
| Mississippi | February 2015 |
| Missouri | August 2014 |
| Montana | February 2017 |
| Nebraska | February 2017 |
| Nevada | October 2016 |
| New Hampshire | February 2017 |
| New Jersey | November 2014 |
| New Mexico | February 2017 |
| New York | June 2011 |
| North Carolina | February 2017 |
| North Dakota | February 2015 |
| Northern Mariana Islands | February 2015 |

| State or Territory | Beginning of Class Period |
|---|---|
| Ohio | February 2017 |
| Oklahoma | November 2015 |
| Oregon | November 2015 |
| Pennsylvania | February 2015 |
| Puerto Rico | December 2019 |
| Rhode Island | February 2017 |
| South Carolina | February 2015 |
| South Dakota | February 2017 |
| Tennessee | February 2017 |
| Texas | March 2016 |
| Utah | February 2016 |
| Vermont | November 2013 |
| Virgin Islands | February 2015 |
| Virginia | September 2016 |
| Washington | February 2017 |
| West Virginia | February 2017 |
| Wisconsin | February 2015 |
| Wyoming | February 2017 |



assurance – consulting – tax – technology

pncpa.com

# Exhibit E: Sample Display and Social Media Banner Notices



Display Ad - A



Display Ad - B

Display Ad - C



**Class Action Settlement**
Sponsored

Purchasers of certain Roundup®, HDX®, or Ace® brand weed killer products may be eligible for a cash payment from a class action settlement.

www.WeedKillerAdSettlement.com
Purchased Weed Killer Products?     Learn More

Like     Comment     Share

Facebook - A



*Instagram*

**Class Action Settlement**
Sponsored

Learn More

Purchasers of certain Roundup®, HDX®, or Ace® brand weed killer products may be eligible for a cash payment from a class action settlement.

Instagram - A



**Class Action Settlement**
Sponsored

A false advertising class action settlement may entitle you to compensation if you bought certain Roundup®, HDX®, or Ace® brand weed killer products. This settlement is not about personal injury.

www.WeedKillerAdSettlement.com
Purchased Weed Killer Products?     Learn More

Like     Comment     Share

Facebook - B



*Instagram*

**Class Action Settlement**
Sponsored

Learn More

A false advertising class action settlement may entitle you to compensation if you bought certain Roundup®, HDX®, or Ace® brand weed killer products. This settlement is not about personal injury.

Instagram - B



**Class Action Settlement**
Sponsored

Have you purchased certain Roundup®, HDX®, or Ace® brand weed killer products? If so, you may be eligible for a payment from a false advertising class action settlement. This settlement is not about personal injury.

www.WeedKillerAdSettlement.com
Purchased Weed Killer Products?     Learn More

Like     Comment     Share

Facebook - C



*Instagram*

**Class Action Settlement**
Sponsored

Learn More

Have you purchased certain Roundup®, HDX®, or Ace® brand weed killer products? If so, you may be eligible for a payment from a false advertising class action settlement. This settlement is not about personal injury.

Instagram - C



**assurance** – **consulting** – **tax** – **technology**

pncpa.com

# Exhibit F: Claim Form

Gilmore v. Monsanto Co
c/o Postlethwaite & Netterville
PO Box 4208
Baton Rouge, LA 70821

**Your Claim Form Must Be
Submitted On or Before
MM/DD/YYYY**

## *Gilmore et al. v. Monsanto Company et al.*

### United States District Court for the Northern District of California (Case No. 3:21-cv-8159)

### <u>CLAIM FORM INSTRUCTIONS</u>

Please follow the instructions below to file a claim for any purchases you made of certain Roundup®, HDX®, or Ace® brand glyphosate based weed-killer products (the "Roundup Products"). A complete list of eligible Products is available in Appendix A of this Claim Form. **Please only include products purchased for personal use for which you did not receive a refund.**

TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE ALL OF THE REQUIRED (*) INFORMATION BELOW AND YOU MUST SIGN THIS CLAIM FORM. THIS CLAIM FORM SHOULD ONLY BE USED IF A CLAIM IS BEING MAILED IN AND IS NOT BEING FILED ONLINE. **YOU MAY ALSO FILE YOUR CLAIM ONLINE AT <u>www.WeedKillerAdSettlement.com</u>**.

### <u>Section I: Claimant Information</u>

1. **Claimant Information:** Complete all fields in Section I. Please be sure to only enter one letter/character in each box as needed.

### <u>Section II: Purchase History</u>

**General Instructions:** Before entering your purchase details in Section II, please review the product code table in **Appendix A** on page 3 of this Claim Form and the purchase location and threshold values on page 4 of this Claim Form. Detailed instructions regarding these two tables are included below.

2. **Find Your Product Code in Appendix A of this Claim Form:** A list of all eligible products is included in **Appendix A** on page 3 of this Claim Form. Review these products carefully to identify each product you purchased and use the four-digit Product Code when you enter your purchases in Section II.

3. **Determine Your Eligible Purchase (Class) Period:** To determine if your purchases were made during the eligible purchase period for this settlement, please refer to **Appendix B** on page 4 of this Claim Form. You will first need to locate the state(s) where your purchases were made, then review the Eligible Purchase Period for those states to determine if your purchases were made in the eligible purchase period. If you claim any purchases prior to the start of the eligible purchase period, those purchases will be deemed ineligible and not approved for recovery within this settlement.

4. **Enter Purchase History Details:** Once you have reviewed the eligible purchase period and Product Code(s) for your purchases, you must enter the details for each purchase you made for eligible product(s). For each purchase transaction, you must enter the name of the retail location where the purchase was made, the city and state where the retailer was located, the year the purchase was made, the quantity purchased, and the Product Code related to the product you purchased. Repeat this step for each purchase transaction you are claiming. An example has been included in Section II to assist you.

5. **Provide Supporting Documentation:** You must provide documentation showing proof of purchase if you are:
   a. claiming purchases of 1 Gal. Roundup® Weed and Grass Killer Super Concentrate, 2.5 Gal. Roundup® Pro Concentrate, and/or 2.5 Gal. HDX® Weed & Grass Killer Concentrate will require reasonable proof of purchase; OR
   b. claiming more than 1 purchase a year per household for any of the other eligible Products during the eligible class period based on the state of purchase.

   The total allowable purchases that can be claimed without providing documentation are listed in **Appendix B** on page 4 of this claim form. If you exceed the limits outlined within **Appendix B**, you must provide copies of documentation supporting each purchase claimed on this claim form. *<u>If the documentation provided does not adequately support the quantity of purchases claimed, you may be required to provide additional information or your claim may be reduced or denied by the Claims Administrator.</u>* Please include copies of the supporting documentation along with completed claim form that is mailed to the Claims Administrator.

### <u>Section III: Certification</u>

6. **Sign and Submit Your Claim Form:** Once you have completed Sections I and II of this claim form, you must sign and date the certification section of this Claim Form for your claim to be valid. After you have completed this step, you must return the completed Claim Form to the Claims Administrator at the address located at the top of this page. **Your claim must be postmarked no later than {Claim Submission Deadline}.**

*<u>Please keep a copy of your Claim Form for your records.</u>*

## Gilmore et al. v. Monsanto Company et al.

United States District Court for the Northern District of California (Case No. 3:21-cv-8159)

## CLAIM FORM
### CLAIM SUBMISSION DEADLINE: MM/DD/20YY

## Section I: Claimant Information

First Name*

Last Name*                                                                 Suffix

Mailing Address: Street Address/P.O. Box (include Apartment/Suite/Floor Number)*

City*                                                          State*      Zip Code*

Email Address*

( ___ ) ___ - ____
Current Phone Number

Were the Roundup Products you purchased primarily used at the address indicated above?
If No, please provide the address where the products were primarily used below.          ☐ Yes   ☐ No

Address Where Products Were Primarily Used

City                                                          State      Zip Code

## Section II: Purchase History

**Provide the following information regarding purchases of Roundup Products you made during the Class Period.**

**Supporting Documentation Requirements:** Absent actual proof of purchase, claims are limited to a maximum of one (1) Product for each year or partial year within the Class Period. However, all claims purchases of 1 Gal. Roundup® Weed and Grass Killer Super Concentrate, 2.5 Gal. Roundup® Pro Concentrate, and/or 2.5 Gal. HDX® Weed & Grass Killer Concentrate will require reasonable proof of purchase. There are no purchase limits for products for which Proof of Purchase is provided. See **Appendix B** on page 4 of this claim form for additional information on product purchase limits.

| | Retail Location of Purchase* | State of Purchase* | City of Purchase* | Product Code* (Appendix A) | Year of Purchase* (Appendix B) | Quantity Purchased* |
|---|---|---|---|---|---|---|
| Ex. | Home Depot | C A | Sacramento | U 0 2 4 | 2 0 1 7 | 0 2 |
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |

*If more space is necessary, you may also attach a separate sheet or complete your claim form online.*

## Section III: Certification

I declare, under penalty of perjury, that all of the information on this claim form is true and correct to the best of my knowledge. I certify that the purchases indicated above were made for personal use and I did not receive a refund for these products. I understand that my claim from may be subject to audit, verification, and Court review.

Signature*: _____

Date*: ___ / ___ / ____

**FOR MORE INFORMATION, VISIT www.WeedKillerAdSettlement.com or CALL 1-833-749-1489**

*It is your responsibility to notify the Claims Administrator of any changes to your contact information after the submission of your Claim Form.*

Appendix A
## Product Codes

| Sample Images | Product Code | Product Description |
|---|---|---|
| | G005 | 5 oz. Roundup® Precision Gel Weed and Grass Killer |
| | F016 | 16 oz. Roundup® Weed and Grass Killer Sure Shot Foam |
| | F022 | 22 oz. Roundup® Weed and Grass Killer Sure Shot Foam |
| | U024 | 24 oz. Roundup® Ready-to-Use Weed and Grass Killer |
| | U030 | 30 oz. Roundup® Ready-to-Use Weed and Grass Killer |
| | U064 | 0.5 gal. (64 oz.) Roundup® Ready-to-Use Weed and Grass Killer |
| | U128 | 1 gal. Roundup® Ready-to-Use Weed and Grass Killer (all applicator types) |
| | U140 | 1.1 gal. Roundup® Ready-to-Use Weed & Grass Killer (all applicator types) |
| | U160 | 1.25 gal. Roundup® Ready-to-Use Weed and Grass Killer (all applicator types) |
| | U170 | 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer (all applicator types) |
| | E024 | 24 oz. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer |
| | E032 | 32 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer |
| | E064 | 0.5 gal. (64 oz.) Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer |
| | E128 | 1 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer |
| | E140 | 1.1 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) |
| | E160 | 1.25 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) |
| | E170 | 1.33 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) |
| | CE16 | 16 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer |
| | CP16 | Combination pack – 1.33 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer and 16 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer. |
| | P024 | 24 oz. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer |
| | P032 | 32 oz. Roundup® Concentrate Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer |
| | P128 | 1 gal. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer |
| | P170 | 1.33 gal. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer |
| | M032 | 32 oz. Roundup® Concentrate Max Control 365 |
| | M160 | 1.25 gal. Roundup® Ready-to-Use Max Control 365 (all applicator types) |
| | M170 | 1.33 gal. Roundup® Ready-to-Use Max Control 365 (all applicator types) |
| | CP8C | Combination pack – 1.33 gal. Roundup® Ready-to-Use Max Control 365 and 8 oz. Roundup® Concentrate Max Control 365. |
| | C306 | 3-pack – 6 oz. Roundup® Weed & Grass Killer Concentrate Plus |
| | C016 | 16 oz. Roundup® Weed & Grass Killer Concentrate Plus |
| | C032 | 32 oz. Roundup® Weed and Grass Killer Concentrate Plus |
| | C035 | 35.2 oz. Roundup® Weed and Grass Killer Concentrate Plus |
| | C036 | 36.8 oz. Roundup® Weed & Grass Killer Concentrate Plus |
| | C040 | 40 oz. Roundup® Weed & Grass Killer Concentrate Plus |
| | C064 | 0.5 gal. (64 oz.) Roundup® Concentrate Plus Weed & Grass Killer |
| | C080 | 80 oz. Roundup® Weed & Grass Killer Concentrate Plus |
| | C280 | 2-pack – 80 oz. Roundup® Weed & Grass Killer Concentrate Plus |
| | CP27 | Combination Pack – 1.33 gal Roundup® Ready-to-Use Weed & Grass Killer and 2x7 oz. Roundup® Weed & Grass Killer Concentrate Plus |
| | C320 | 2.5 gal. Roundup® Pro Concentrate |
| | CP8S | Combination Pack – 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer and 8 oz. Roundup® Weed & Grass Killer Super Concentrate |
| | S035 | 35.2 oz. Roundup® Weed & Grass Killer Super Concentrate |
| | S053 | 0.42 gal. Roundup® Weed & Grass Killer Super Concentrate |
| | S064 | 0.5 gal. (64 oz.) Roundup® Weed & Grass Killer Super Concentrate |
| | S128 | 1 gal. Roundup® Weed & Grass Killer Super Concentrate |
| | A024 | 24 oz. Ace® Ready-to-Use Weed & Grass Killer |
| | A032 | 32 oz. Ace® Concentrate Weed & Grass Killer |
| | A128 | 1 gal. Ace® Ready-to-Use Weed & Grass Killer |
| | A901 | 1 gal. Ace® Ready-to-Use Weed & Grass Killer with battery-operated sprayer |
| | A800 | 1 gal. Ace® Concentrate Weed & Grass Killer |
| | H032 | 32 oz. HDX® Concentrate Weed & Grass Killer |
| | H064 | 0.5 gal. HDX® Concentrate Weed & Grass Killer |
| | H320 | 2.5 gal. HDX Concentrate Weed & Grass Killer |

**Appendix B**
**Eligible Purchase (Class) Periods and Proof of Purchase Requirements**

| State or Territory of Purchase | State Abbreviation | Eligible Purchase (Class) Period | Maximum Units Eligible without Proof of Purchase* (See Note below for list of Roundup Products that require reasonable proof of purchase) |
|---|---|---|---|
| Alabama | AL | February 2017 - Present | 6 |
| Alaska | AK | February 2017 - Present | 6 |
| American Samoa | AS | February 2018 - Present | 5 |
| Arizona | AZ | February 2017 - Present | 6 |
| Arkansas | AR | February 2016 - Present | 7 |
| California | CA | August 2015 - Present | 8 |
| Colorado | CO | February 2018 - Present | 5 |
| Connecticut | CT | February 2016 - Present | 7 |
| Delaware | DE | February 2017 - Present | 6 |
| District of Columbia | DC | February 2017 - Present | 6 |
| Florida | FL | February 2016 - Present | 7 |
| Georgia | GA | October 2016 - Present | 6 |
| Guam | GU | August 2016 - Present | 7 |
| Hawaii | HI | February 2017 - Present | 6 |
| Idaho | ID | February 2017 - Present | 6 |
| Illinois | IL | February 2017 - Present | 6 |
| Indiana | IN | February 2017 - Present | 6 |
| Iowa | IA | February 2017 - Present | 6 |
| Kansas | KS | December 2015 - Present | 7 |
| Kentucky | KY | February 2017 - Present | 6 |
| Louisiana | LA | February 2017 - Present | 6 |
| Maine | ME | February 2015 - Present | 8 |
| Maryland | MD | August 2016 - Present | 7 |
| Massachusetts | MA | October 2016 - Present | 6 |
| Michigan | MI | October 2014 - Present | 8 |
| Minnesota | MN | December 2013 - Present | 9 |
| Mississippi | MS | February 2015 - Present | 8 |
| Missouri | MO | August 2014 - Present | 9 |
| Montana | MT | February 2017 - Present | 6 |
| Nebraska | NE | February 2017 - Present | 6 |
| Nevada | NV | October 2016 - Present | 6 |
| New Hampshire | NH | February 2017 - Present | 6 |
| New Jersey | NJ | November 2014 - Present | 8 |
| New Mexico | NM | February 2017 - Present | 6 |
| New York | NY | June 2011 - Present | 12 |
| North Carolina | NC | February 2017 - Present | 6 |
| North Dakota | ND | February 2015 - Present | 8 |
| Northern Mariana Islands | MP | February 2015 - Present | 8 |
| Ohio | OH | February 2017 - Present | 6 |
| Oklahoma | OK | November 2015 - Present | 7 |
| Oregon | OR | November 2015 - Present | 7 |
| Pennsylvania | PA | February 2015 - Present | 8 |
| Puerto Rico | PR | December 2019 - Present | 3 |
| Rhode Island | RI | February 2017 - Present | 6 |
| South Carolina | SC | February 2015 - Present | 8 |
| South Dakota | SD | February 2017 - Present | 6 |
| Tennessee | TN | February 2017 - Present | 6 |
| Texas | TX | March 2016 - Present | 7 |
| Utah | UT | February 2016 - Present | 7 |
| Vermont | VT | November 2013 - Present | 9 |
| Virgin Islands | VI | February 2015 - Present | 8 |
| Virginia | VA | September 2016 - Present | 6 |
| Washington | WA | February 2017 - Present | 6 |
| West Virginia | WV | February 2017 - Present | 6 |
| Wisconsin | WI | February 2015 - Present | 8 |
| Wyoming | WY | February 2017 - Present | 6 |

* **Note** : All claimed purchases of 1 Gal. Roundup® Weed and Grass Killer Super Concentrate, 2.5 Gal. Roundup® Pro Concentrate, and/or 2.5 Gal. HDX® Weed & Grass Killer Concentrate will require reasonable proof of purchase.