Patrick J. Stueve, #37682 MO
Todd E. Hilton, #51388 MO
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
hilton@stuevesiegel.com
stueve@stuevesiegel.com

Don M. Downing, #30405 MO
Gretchen Garrison, #33963 MO
Cort A. VanOstran, #67276 MO
**GRAY, RITTER & GRAHAM, P.C.**
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone: (314) 241-5620
ddowning@grgpc.com
ggarrison@grgpc.com
cvanostran@grgpc.com

*Counsel for Proposed Intervenors*
*Ryan Tomlinson and Carol Richardson*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document related to: | **NOTICE OF MOTION AND MOTION FOR DISCOVERY** |
| *Gilmore v. Monsanto*, Case No. 21-cv-08159 | Date/Time: March 3, 2022, 2:00 p.m. Via Zoom Webinar Hon. Vince G. Chhabria |

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on March 3, 2022, at 2:00 p.m., via Zoom Webinar ID: 161

285 7657, Password: 547298, Proposed Intervenors Ryan Tomlinson and Carol Richardson

("Proposed Intervenors" or "*Tomlinson* plaintiffs") will move and does move this Court for

permission to obtain discovery currently detailed in the Request for Production of Documents attached to the motion.

     This Motion is based on this Notice and Motion, the Memorandum below, and upon such other and further evidence as the Court may be presented at the time of the hearing.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED .................................... 1

FACTUAL BACKGROUND .................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.     APPLICABLE STANDARDS ........................................................................................ 2

II.    *TOMLINSON* PLAINTIFFS SHOULD BE PERMITTED DISCOVERY. ....................... 4

       A.     Sales Data During The Class Periods. .................................................................. 4

       B.     Discovery in Related Actions ............................................................................... 7

       C.     Side Agreements .................................................................................................. 8

       D.     Lodestar Information ........................................................................................... 12

       E.     Settlement Communications ................................................................................ 12

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Abramson v. Agentra, LLC*,
2020 WL 7335897 (W.D. Pa. Dec. 14, 2020)................................................................ 6

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007) .................................................................................. 7

*Borup v. CJS Sols. Group, LLC*,
2019 WL 2137369 (D. Minn. May 16, 2019)........................................................... 13, 14

*Briseno v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ............................................................................ 12, 13, 14

*Cordy v. USS-Posco Indus.*,
2013 WL 4028627 (N.D. Cal. Aug. 1, 2013) ................................................................. 4

*Custom LED, LLC v. eBay, Inc.*,
2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) .............................................................. 4

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........................................................................... 3, 12, 13

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
2014 WL 2547543 (D. Mass. June 3, 2014) ................................................................. 6

*In re Cmty. Bank of N. Virginia*,
418 F.3d 277 (3d Cir. 2005)........................................................................................ 8

*In re General Motors Corp. Engine Interchange Litig.*,
594 F.2d 1106 (7th Cir.) ......................................................................................... 3, 13

*In re Pet Food Prods. Liab. Litig.*,
629 F.3d 333 (3d Cir. 2010)........................................................................................ 6

*In re Wachovia Corp. »Pick-A-Payment» Mortg. Mktg. & Sales Pracs. Litig.*,
2011 WL 1496342 (N.D. Cal. Apr. 20, 2011) ............................................................... 3

*Klein v. O'Neal, Inc.*,
2010 WL 234806 (N.D. Tex. Jan. 21, 2010) ............................................................... 12

*Lobatz v. U.S. W. Cellular of California, Inc.*,
222 F.3d 1142 (9th Cir. 2000) .................................................................................. 12

*Ross v. Convergent Outsourcing, Inc.*,
323 F.R.D. 656  (D. Colo. 2018) ............................................................................... 13

*Salmonson v. Bed Bath & Beyond, Inc.*,
    2012 WL 12919187 (C.D. Cal. Apr. 27, 2012) ................................................................. 6, 8

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .......................................................................................... 11

*U.S. ex rel. McCoy v. California Med. Review, Inc.*,
    133 F.R.D. 143 (N.D. Cal. 1990) .................................................................................... 3

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... passim

**Other Authorities**

Manual for Complex Litigation (4th) § 21.61 .......................................................... 11

Manual for Complex Litigation (4th) § 21.631 .......................................................... 9

## INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

Ryan Tomlinson and Carol Richardson, representatives of a class certified in Missouri ("*Tomlinson* plaintiffs") oppose preliminary approval of the proposed settlement in this case.  They previously moved for intervention to do so in Delaware and due to briefing there, have been able at this juncture to identify certain discovery relevant and needed for assessment of matters key to determining whether the proposed settlement is fair, reasonable, and adequate.  These include adequacy of the amount of settlement and adequacy of representation by *Gilmore* counsel and plaintiffs.  To avoid as much delay as possible, *Tomlinson* plaintiffs attach as Exhibit A the discovery that they believe is needed based on the information, or the lack thereof, of which they are now aware and request permission to serve additional discovery, if needed, based on settling parties' new motion for preliminary approval (any objections to which can then be addressed).  The proposed discovery requests are narrowly tailored to salient issues as addressed below and will assist the Court in evaluating the proposed settlement.  For these reasons, as further detailed below, *Tomlinson* plaintiffs should be permitted discovery.

## FACTUAL BACKGROUND

*Tomlinson* plaintiffs represent a class of purchasers in Missouri asserting violations of the Missouri Merchandising Practices Act ("MMPA").  On August 19, 2020, Mr. Gilmore filed an action in Delaware asserting a single claim under the Delaware Consumer Fraud Act.  *Gilmore v. Monsanto Co.* now Case No. 3:21-cv-08159-VC Dkt. No. 1.  Within a month, Monsanto and Gilmore's counsel hired a mediator.  *See* Dkt. No. 27 at ¶ 4.  Without any discovery in the case, mediation occurred on February 16, 2021.  Settlement in principle was reached that day.  *Id.* at ¶ 6; Dkt. No. 26 at ¶ 14.  A settlement agreement was executed on June 9, 2021.  Dkt. No. 26 at ¶ 15.  Parties thereto include Gilmore as well as seven other people, none of whom except one had

1

sued Monsanto.  They were named as plaintiffs post-settlement in an amended complaint to which Monsanto stipulated. Dkt. Nos. 21, 22.   Three days later, they moved for certification of a nationwide class and preliminary settlement approval. Dkt. Nos. 24, 25.

*Tomlinson* plaintiffs moved to intervene, attaching oppositions to the motion for preliminary approval and a motion to enjoin.  Dkt. Nos. 39–41, 41-1 & 41-2.  Monsanto and *Gilmore* counsel opposed intervention (*see* Dkt. Nos. 46, 47, 54) and *Tomlinson* plaintiffs filed a reply.  Dkt. No.  54.  While these matters were pending, Brian Webb moved to transfer *Gilmore* to this MDL.  JPML Dkt. No. 2400.  *Tomlinson* plaintiffs filed a brief in support.  JPML Dkt. No. 2436.  On October 8, 2021, the JPML ordered transfer.  Dkt. No. 65 at 2–3.  *Gilmore* counsel and Monsanto then sought a suggestion of remand back to Delaware.  Dkt. No. 70.  Tomlinson plaintiffs moved to intervene and shorten time, attaching an opposition to suggestion of remand. Dkt. Nos. 77-78. This Court rejected suggestion of remand. It denied *Tomlinson* plaintiffs' motion to intervene as moot but "with the understanding, of course, that parties affected by the proposed settlement will be able to object to the agreement."  Dkt. No. 88.  In an abundance of caution, Tomlinson plaintiffs move (contemporaneously herewith) to intervene in order to oppose certification and preliminary approval of the proposed settlement.  They also move for permission to take discovery for reasons addressed herein.

## ARGUMENT

## I.     APPLICABLE STANDARDS

Rule 23(e) directs that at the preliminary approval stage, the court is to determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Scrutiny of the proposed settlement is "as rigorous at the preliminary approval stage as at the final approval stage." Standing

Order For Civil Cases Before Judge Vince Chhabria No. 56. The court may approve a class action settlement only if it is "fair, reasonable, and adequate" taking into account factors identified in Rule 23(e)(2), including whether: "class representatives and class counsel have adequately represented the class;" the proposal was negotiated at arm's length, the relief is adequate and class members are treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D).

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) (internal quotations and citation omitted). "One inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee." *Id*. (internal quotations and citation omitted). Where, as here, settlement is negotiated before class certification, there is increased risk that named plaintiffs and class counsel will breach obligations to absent class members. "Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.*

Although objectors do not have an absolute right to discovery, it can and should be permitted under circumstances were appropriate in evaluating whether the proposed settlement is fair, reasonable, and adequate. *See, e.g*., *U.S. ex rel. McCoy v. California Med. Review, Inc*., 133 F.R.D. 143, 149 (N.D. Cal. 1990) (noting that "authority does exist for the granting of discovery … in class action settlement proceedings" and stating that "it is difficult to see how the court could properly evaluate a settlement that is 'fair, adequate, and reasonable under all the circumstances' without the opportunity for some disclosure") (citing *In re General Motors Corp. Engine Interchange Litig*., 594 F.2d 1106, 1123–24 (7th Cir.) (trial court abused its discretion when it did not permit objectors discovery concerning settlement negotiations); *In re Wachovia Corp. »Pick-*

*A-Payment» Mortg. Mktg. & Sales Pracs. Litig.*, 2011 WL 1496342, at *3 (N.D. Cal. Apr. 20, 2011) (objector's request for admission permitted because they "may aid the district judge in his determination of whether the settlement is fair, reasonable, and adequate to the class").

The discovery sought here is limited and concerns information directly relevant to the inquiries required under Rule 23(e)(2).

## II.   *TOMLINSON* PLAINTIFFS SHOULD BE PERMITTED DISCOVERY.

Monsanto and *Gilmore* plaintiffs have indicated that they will adjust the motion for preliminary approval previously filed in Delaware for "applicable Ninth Circuit law and this Court's Standing Order."  Dkt. No. 69.  Although the ways in which the motion, and perhaps supporting evidence, will be revised cannot be known until the new motion is analyzed, there are certain subjects that can now be observed as demanding fuller attention as summarized below.

### A.      Sales Data During The Class Periods.

In seeking preliminary approval, information should be provided regarding "the potential class recovery if plaintiffs had fully prevailed on each of their claims."  N.D. California Procedural Guidance for Class Action Settlements, Prelim. Approval Guideline No. (1)(e).  *See also Custom LED, LLC v. eBay, Inc.*, 2013 WL 4552789, at *9 (N.D. Cal. Aug. 27, 2013) (denying preliminary approval without information "as to the class members' potential range of recovery" or even the "number of claimants"); *Cordy v. USS-Posco Indus.*, 2013 WL 4028627, at *4 (N.D. Cal. Aug. 1, 2013) (denying preliminary approval without "information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims").  That information was not provided in Delaware.  Instead, *Gilmore* counsel relied on a report by Dr. D.C. Sharp previously prepared for another case, *Ezcurra v. Bayer AG and Monsanto*

*Co.*, asserting a Florida consumer act claim on behalf of a limited class of Florida purchasers.[1]  *See* Dkt. 25 at 12-13, 46; Dkt. No. 29 at ¶¶ 3, 6; Dkt. No. 35 at ¶ 3.  There, Dr. Sharp conducted a regression analysis to determine the price impact of failing to disclose Roundup's cancer risk.  His analysis was confined to a single Roundup product (Roundup Weed & Grass Killer III) sold in a single state (Florida).  Dkt. No. 35, Report at ¶ 3, 12.  There is no indication that he was re-engaged to conduct an analysis as to other Roundup Products listed in the Settlement (*see* Dkt. No. 59-1 at 12-18) or to determine damages on a nationwide basis.  Although cited, the report was not provided.  At *Tomlinson* counsel's request, *Gilmore* counsel eventually did so, but redacted sales data and damages estimate.  Dkt. No. 35, Report at ¶¶ 14, 28, 29, 31, 34.  *Gilmore* counsel represented that settlement might approach "approximately 20 percent of the average retail price" of products purchased.  Dkt. No. 25 at 9.  Again, no actual average retail price was provided.[2]

No discovery in this case occurred prior to settlement.  *Gilmore* Dkt. No 25 at 33.  *Gilmore* counsel represented that Monsanto informally provided "nationwide sales data for its Roundup® Products[.]" *Id.* at 19.  There was no indication, however, that any action was taken to confirm its validity or completeness.  In Missouri, Monsanto took the position that it only sells lawn-and-garden products to retailers (Dkt. No. 41-1, Guard Aff. at ¶¶ 8; 21) and "does not track … the prices that individual consumers pay" (*id.* at ¶ 23).  Monsanto also represented that it "does *not*

---

[1] The class was originally limited to purchasers at Home Depot and remained limited to those purchasing "with a credit or debit account." Case No. 9:20-cv-80524-DMM (S.D. Fla.), Dkt. No. 1–2 at ¶ 99; *see also* Dkt. No. 30 at ¶ 17 (defining "Product"); *id.* at ¶ 117 (defining class).

[2] This figure assumes that only a fraction of the millions of class members submit claims and share in the settlement (despite the fact that all release their claims). It is based on Default Payment Amounts, which may be adjusted *pro rata* depending on: administration costs; attorneys' fees and costs; incentive awards; and number and size of claims submitted. Dkt. No. 59-1 at § E.

receive complete POS [point-of-sale] data for [lawn & garden] products" sold to end users.  *Id.* at 155, John Rosenthal Letter.  This calls into question what Monsanto informally provided here.

*Tomlinson* plaintiffs assume that settlors will follow the guidelines of this Court and provide a nationwide damages estimate. At minimum, *Gilmore* counsel should provide an unredacted version of Dr. Sharp's report.  Sales data (purchase price and number of purchases during state class periods)[3] is highly relevant to assessment of a nationwide damages estimate in considering fairness and adequacy of the settlement.  *See, e.g., In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 335 (3d Cir. 2010) (settling parties failed to provide estimations of recoverable damages including sales information quantifying the amount of pet food sold to consumers; stating that such information "would have enabled the court" to generate a range of reasonableness and determine adequacy of the settlement amount).  Courts have provided such discovery even when the objector had "access to voluminous discovery." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 2014 WL 2547543, at *5 (D. Mass. June 3, 2014) (granting request for "disclosure of the sources of data that the parties used to estimate damages" and production of an expert's affidavit filed under seal).  *See also Salmonson v. Bed Bath & Beyond, Inc.*, 2012 WL 12919187, at *9 (C.D. Cal. Apr. 27, 2012) (holding that "[w]ith respect to any discovery produced by BBB to Plaintiff, Objectors are entitled to such discovery"); *Abramson v. Agentra, LLC*, 2020 WL

---

[3] Under the settlement agreement, the class period varies by state in which class members purchased Roundup.  *See* Dkt. No. 59-1 §§ A (20) (defining "Class Period" as time period based on state where each class member purchase Roundup); Dkt. No. 59-1 (52) (defining "Settlement Class" as persons who purchased products "during the Class Period"); *id.* at 39-30 (Ex. B, listing class period for each state).

7335897, at *5 (W.D. Pa. Dec. 14, 2020) (allowing modification of protective order to permit intervenor to evaluate financial documents supporting proposed class settlement).[4]

## B.   Discovery in Related Actions

"For Plaintiffs to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value. Similarly, for a court to approve a proposed settlement, '[t]he parties must ... have engaged in sufficient investigation of the facts to enable the court to 'intelligently make ... an appraisal' of the settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (citation omitted). Again, no discovery was conducted in the *Gilmore* action. *Gilmore* counsel pointed to discovery in other cases in an effort to fill that void, representing that "[s]ignificant work was performed in several of the Related Actions, and the Related Actions contributed to the settlement of the instant matter." Dkt. No. 25 at 15; *see also id.* at 33 ("while the parties did not directly conduct discovery in this action, Plaintiff has access to the discovery taken in certain of the Related Actions, including *Ezcurra* and *Weeks II*"). *Gilmore* counsel represented that in *Weeks v. Home Depot*, they "engaged in substantial discovery, exchanging over 17,000 pages of documents and data" (*id.* at 15) and in *Ezcurra*, received "a total of 34 pages of interrogatory responses and 25 pages of admissions, and produced thousands of pages of documents, including sales data." *Id.* at 12-13. They also represented that deposition of Monsanto's Global Packaging and Labeling Lead was noticed, without indication that it was actually taken. *Id.* at 13.

---

[4] When it removed the *Ezcurra* case to federal court, Monsanto itself disclosed in a public filing that sales in Florida were "over $52 million." *Ezcurra*, Case No. 9:20-cv-80524, Dkt. No. 1 (Notice of Remand) at ¶ 24. Monsanto cannot then claim that sales data should be shielded from discovery as sensitive or confidential.

No referenced discovery was provided in Delaware and there is no means by which to assess significance to settlement in this case (or whether *Gilmore* counsel was in a position to fairly or adequately negotiate a sweeping nationwide settlement) without access to at least written discovery propounded and Monsanto's responses to interrogatories, document requests, and requests for admission (and transcripts of depositions actually taken).  One can presume that discovery in *Weeks* was focused on the retailer, and that discovery in *Ezcurra* was focused on Monsanto's conduct and purchases in Florida only.  But if *Gilmore* plaintiffs are going to rely on this or discovery in other "Related Actions" in support of preliminary approval, they should provide it.  *See, e.g., In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 316-17 (3d Cir. 2005) (recognizing that "discovery may be appropriate if lead counsel has not conducted adequate discovery or if the discovery conducted by lead counsel is not made available to objectors" and directing further development of record and re-evaluation of whether limiting discovery was appropriate in light of court's duty to "employ the procedures that it perceives will best permit it to evaluate the fairness of the settlement") (citation omitted)*; Salmonson* 2012 WL 12919187, at *9 (allowing objectors discovery into discovery provided plaintiffs).

## C.    Side Agreements

Rule 23(e)(2) provides that the court must determine if the settlement proposal is fair, reasonable, and adequate after considering, among other things, "any agreement required to be identified under Rule 23(e)(3), which states that "parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(2)(C)(iv) & 23(e)(3).  This requirement is aimed "at related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others."  Fed. R. Civ. P. 23, Adv. Comm. Notes to 2003 Am.  "It is

8

intended to reach agreements … not reflected in formal settlement documents and, perhaps, not even reduced to writing.  The spirit of Rule 23(e)(2) is to compel identification of any agreement or understanding that might have affected the interests of class members by altering what they may be receiving or foregoing.  Side agreements might indicate, for example, that the settlement is not reasonable because they may reveal additional funds that might have been paid to the class that are instead paid to selected claimants or their attorneys."  Manual for Complex Litigation (4th) § 21.631.  There are at least three categories of side agreements relevant to the Court's assessment.

The first category is any understandings for preferential treatment of plaintiffs in "Related Actions" identified in the settlement agreement. Dkt. No. 59-1 § A (46).  Plaintiffs in certain of those actions (Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, and Williams) became named plaintiffs in the *Gilmore* action after settlement already had occurred.   *See* Dkt. No. 26, Wade Decl. at ¶¶ 14, 15 (settlement in principle reached on February 16, 2021; settlement agreement executed on June 9, 2021); Dkt. Nos. 21-22 (stipulation and amended complaint naming additional plaintiffs).  Nevertheless, *Gilmore* counsel "shall" seek service awards of $5,000 for each, although all but two had never sued Monsanto. Dkt. No. 59-1, § F.1.  "Related Actions" includes not only actions in which these named plaintiffs were parties (primarily against retailers), but of other persons who were or are plaintiffs in retailer actions.  Under the settlement agreement, "Class Counsel[5] shall make all reasonable and lawful efforts to ensure that plaintiffs in any pending Related Action … consent to this Agreement and agree to stay or dismiss any such actions pending

---

[5]  Class Counsel is defined as "Gillian L. Wade, Sara D. Avila, and Marc A. Castaneda of Milstein, Jackson, Fairchild & Wade, LLP, and Joel Oster of Oster Law Firm and of Counsel to the Law Offices of Howard Rubinstein, and any additional attorneys at those firms assisting in the representation of the Class in this Action."  *Id*. § A (16).

final approval of this Agreement." Dkt. No. 59-1 § B.9.[6]   Pending Related Actions include, among others: *Lamerson v. Walmart Stores, Inc.*; *Shelly v. Target Corp.*; *Biddle v. Lowe's Home Centers LLC*; and *Morley v. Ace Hardware Corp.*, all of which are in Florida state courts.  *See* Dkt. No. 25 (Appx. of Related Actions) at 50.  All these actions were filed by the Rubenstein law firm, which had a seat at the negotiating table.  Dkt. No. 27, Welsh Decl. ¶ 6.

Side understandings under which plaintiffs in any Related Action obtain benefits above rank-and-file putative class members should be disclosed.  This includes understandings with persons who became named plaintiffs in the *Gilmore* action.

Second, agreements among counsel respecting attorneys' fees should also be provided. Because the settlement is on a claims-made basis, Monsanto's exposure depends on number and amount of valid claims but is capped at a ceiling of $45 million with a floor of $23 million.  These amounts are inclusive of, *inter alia*, service awards and attorneys' fees.  Dkt. No. 59-1 § D.1.  If approved, a $11.25 million fee is taken out of settlement funds which, at floor level, represents an enormous 49% of funds otherwise available for claimants.  According to the settlement, *Gilmore* counsel will urge that failed work in other (principally retailer) cases "is appropriately considered" in assessing reasonableness of the fee.  *Id.* at § F.2.  "Class Counsel's Fees" is defined as "the

---

[6]  Related Actions pending when settlement in principle was reached include: *Ezcurra*, *Weeks II* (both on appeal); *Hanna et al. v. WalMart Inc.*, No. 5:20-cv-01075 (C.D. Cal.) (voluntarily dismissed in federal court on January 8, 2021) (Dkt. No. 47) refiled in state court and voluntarily dismissed April 14, 2021); *Williams v. Lowe's Home Ctrs.*, No. 5:20-cv-01356 (C.D. Cal.) (voluntarily dismissed February 19, 2021) (Dkt. No. 28); and *Taylor v. Costco Wholesale Corp*, No. 20-cv-00655-KJM-DMC (E.D. Cal.) (voluntarily dismissed March 1, 2021) (Dkt. No. 33).

amount awarded … to Class Counsel[7] … for Class Counsel's and Plaintiffs' Counsel's[8] prosecution of the Action and Related Actions." *Id.* at § A(18). Pursuant to applicable guidelines, class counsel "should include … their lodestar calculation in the motion for preliminary approval." N.D. California Procedural Guidance, Preliminary Approval Guideline No. 6. Presumably, *Gilmore* counsel will abide by that direction and include the lodestar of all counsel and firms who expect to share in fees. Side agreements under which counsel will do so (including date and terms) is relevant to incentives and motivations of counsel when settlement was negotiated, a key consideration in assessing adequacy of representation. *See Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003) ("district court was … obligated to assure itself that the fees awarded in the agreement were not unreasonably high, so as to ensure that the class members' interests were not compromised in favor of those of class counsel").

Third, any agreements with retailers in connection with settlement should be provided. The agreement releases claims not only against Monsanto but retailers, distributors, marketers, franchisors, and "any other Person acting on behalf of Monsanto, Scotts, or any other Released Person." Dkt. No. 59-1 § A(48). Courts should be wary of settlements that release claims "against parties who did not contribute to the class settlement." Manual for Complex Litigation (4th) § 21.61. Whether retailers agree to contribute is relevant to adequacy of amount. Any side arrangements to benefit persons in a "Related Action" is relevant to adequacy of representation.

---

[7] Originally, "Class Counsel" was defined to identify only attorneys at Milstein, Jackson, Fairchild & Wade, LLP. Dkt. No. 24-1, § A(16). When the settlement was amended, this was broadened to include Joel Oster of Oster Law Firm and of Counsel to the Law Offices of Howard Rubinstein. Dkt. No. 59-1 § A(16).

[8] "Plaintiffs' Counsel" means "(1) Rhodunda Williams & Kondraschow, LLC; (2) The Law Offices of Howard Rubinstein; (3) Southern Atlantic Law Group, PLLC; (4) The Casey Law Firm, LLC; (5) Sheehan & Associates, P.C.; and (6) Harrelson Law Firm, P.A. *Id.* at § A(43).

### D.      Lodestar Information

*Tomlinson* plaintiffs also request at least hours and summary description of work performed in "Related Action(s)" in connection with fees that will be requested under the settlement agreement. *See Klein v. O'Neal, Inc.*, 2010 WL 234806, at *2 (N.D. Tex. Jan. 21, 2010) (granting substantially all of an objector's requests "related to the attorney's fee calculations"). Given that *Gilmore* counsel openly intends to request fees based in part on work performed in other cases, mostly against retailers that failed or were abandoned, ability to assess what of such work, if any, actually contributed to settlement in this case is of critical importance.

### E.      Settlement Communications

Settlement communications are typically afforded only upon evidence of collusion, but here, there is such evidence. *See Lobatz v. U.S. W. Cellular of California, Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) but here, collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011). The Ninth Circuit has identified three such signs: (1) when counsel receives disproportionate distribution of the settlement; (2) a clear sailing provision; and (3) when fees not awarded go to defendants rather than the class. *Id*.; *see also Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (same). Each is present here.

First, it is probable that a $11.25 million fee will be disproportionate to the amount received by class members. If Monsanto's liability does not exceed $23 million (highly likely), the fee represents a staggering 49% of that amount, a "gross disparity" demanding high scrutiny. *Briseno*, 998 F.3d at 1026. Second, Monsanto agreed to not oppose a fee request of 25% of the ceiling

amount.  Dkt. No. 59-1 § F.1.  Third, the floor/ceiling structure protects attorneys' fees over class members because it does not prevent Monsanto from benefiting if a lower fee is awarded. Suppose, for example, that class members submit $17 million in valid claims under the "Default Payment Amounts."  Dkt. No. 59-1 §E.1.  If $11.25 million were awarded, Monsanto would pay $28.25 million—$5.25 million above the floor (combined Default Payment Amounts and fees (*see* § E.3). If less is awarded, say $6 million, Monsanto would pay only $23 million. *Id.*  Monsanto, not class members, would benefit from the lower award even though "there is no plausible reason why the class should not benefit from the spillover of excessive fee awards." *Briseno*, 998 F.3d at 1027. There are other red flags of reverse auction and inadequate representation (*see Tomlinson* plaintiffs' opposition to suggestion of remand, Dkt. No. 78-1  at 17 n. 22), but the circumstances here discussed are minimally present and indicative of collusion.  In addition, there was no declaration in Delaware that fees were negotiated after relief for the class.  Even when there is such a representation, the Ninth Circuit instructs that district courts should "press[] the parties to substantiate" such assertions "with corroborating evidence."  *In re Bluetooth*, 654 F.3d at 948.

Under such circumstances, courts can and do allow discovery into the conduct of settlement.  *See, e.g., In re Gen. Motors Corp. Engine Interchange Litig*., 594 F.2d 1106, 1124 (7th Cir. 1979) (conduct of negotiations was "relevant to the fairness of the settlement" and trial court's "refusal to permit discovery or examination of the negotiations constituted an abuse of discretion"); *Ross v. Convergent Outsourcing, Inc*., 323 F.R.D. 656  (D. Colo. 2018)   ("in order for the intervenors and the Court to evaluate whether there has been a reverse auction, the parties shall produce to intervenors discovery regarding meetings and communications between the parties' attorneys or representatives regarding any proposed settlement"); *Borup v. CJS Sols. Group, LLC*, 2019 WL 2137369, at *1 (D. Minn. May 16, 2019) (low settlement value, high

13

attorneys' fees, and "the fact that [defendant] took steps to cabin off these litigations from each other is at least indicative evidence of a reverse auction" and holding that "additional discovery on the reverse auction issue is needed before the settlement can be approved").

*In re Conagra Foods, Inc.* is instructive.  Case No. CV 11-05379-CJC (C.D. Cal.) Dkt. No. 750 (October 6, 2021 Order) (attached as Exhibit B).  Despite "years of investigation and litigation, including extensive mediation efforts with two separate judges," the Ninth Circuit reversed settlement approval.  *Id.* at *1-2.  "It found that the settlement agreement contained questionable provisions that could indicate collusion at the expense of class members[.]" *Id.* at *2.  After remand, the district court allowed discovery "into discussions between Plaintiffs and Conagra, and information or material shared with [the mediator] Judge McCormick." *Id.* at *4.  The settlement here "has all the hallmarks of a potentially collusive settlement." *Briseno*, 998 F.3d at 1025.

*Tomlinson* plaintiffs do not seek all communications of every kind related to settlement but endeavor to obtain targeted information pertinent to adequacy of representation.  *See* Exhibit A, Doc. Req. No. 9.   This includes: (1) When settlement negotiations began and whether there was communication regarding filing suit in Delaware as a settlement vehicle; (2) why punitive damages were not asserted in the Delaware action although Mr. Gilmore had previously sought punitive damages in Oregon; (3) what, if any, consideration was given to claims available for persons in states other than Florida, California, and Arkansas where "Related Actions" had been brought and were for the most part, lost or abandoned (on defenses specific to retailers or those state laws);[9]

---

[9]  Cases dismissed include:  *Hanna et al. v. WalMart Inc.*, No. 5:20-cv-01075 (C.D. Cal.), Dkt. No. 39 (dismissal based on California Proposition 65 and failure to sufficiently allege that retailer participated in unfair practices); *Taylor v. Costco Wholesale Corp*, No. 20-cv-00655-KJM-DMC (E.D. Cal.), Dkt. No. 22 (dismissal for lack of sufficient allegations of retailer participation in unfair practices); *Weeks v. Home Depot U.S.A., Inc.*, No. 2:19-cv-06780-FMO-AS (C.D. Cal.), Dkt. Nos. 65, 77 (dismissed based on California Proposition 65 and insufficient allegations to hold

(4) naming of additional plaintiffs in *Gilmore* after settlement already had been reached, most of whom had never before sued Monsanto; (5) service awards or other benefits to plaintiffs in "Related Actions"; and (6) attorneys' fees.

## **CONCLUSION**

*Tomlinson* plaintiffs respectfully request that they be permitted discovery.

---

retailer liable); *Ezcurra v. Bayer AG and Monsanto Company*, Case No. 9:20-cv-80524-DMM (S.D. Fla.), Dkt. No. 63 (dismissed based on a safe harbor provision in Florida consumer protection act). *Jewell et al. v. Walmart, Inc.* was voluntarily dismissed in the face of a dismissal motion by the retailer asserting, *e.g.*, that Arkansas consumer protection act contains a safe harbor and does not permit class actions. Case No. 4:19-cv-04088 (W.D. Ark.), Dkt. Nos 27, 33, 37-38. *Boyette et al v. Lowe's Cos., Inc.*, was voluntarily dismissed without a motion to dismiss pending. Case No. 4:19-cv-04119 (W.D. Ark.), Dkt. No. 29.

Dated: January 21, 2022     Respectfully submitted,

          **STUEVE SIEGEL HANSON LLP**

          /s/ *Patrick J. Stueve*
          Patrick J. Stueve, Mo. Bar #37682
          Todd E. Hilton, Mo. Bar #51388
          460 Nichols Road, Suite 200
          Kansas City, Missouri 64112
          Telephone: (816) 714-7100
          stueve@stuevesiegel.com
          hilton@stuevesiegel.com

          **GRAY, RITTER & GRAHAM, P.C.**
          Don M. Downing, #30405 MO
          Gretchen Garrison, #33963 MO
          Cort A. VanOstran, #67276 MO
          701 Market Street, Suite 800
          St. Louis, Missouri 63101
          Telephone: (314) 241-5620
          Facsimile: (314) 241-4140
          ddowning@grgpc.com
          ggarrison@grgpc.com
          cvanostran@grgpc.com

          *Attorneys for Proposed Intervenors*
          *Ryan Tomlinson and Carol Richardson*