JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036
Tel:  (202) 282-5000
Fax:  (202) 282-5100

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4030
Fax: (202) 847-4005

*Attorneys for Defendant* (*additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT GILMORE, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> MONSANTO COMPANY, <br><br> Defendant. | MDL No. 2741 <br><br> Case No. 3:21-cv-08159 <br><br> **MONSANTO COMPANY'S CONSOLIDATED OPPOSITION TO TOMLINSON AND RICHARDSON'S MOTIONS TO INTERVENE AND FOR DISCOVERY** <br><br> Date:   March 3, 2022 <br> Time:  10:00 a.m. <br> Place:  Via Zoom Webinar <br> Judge:  Hon. Vince G. Chhabria |

MONSANTO CONSOLIDATED OPPOSITION TO TOMLINSON AND
RICHARDSON'S MOTIONS TO INTERVENE AND FOR DISCOVERY
CASE NO. 3:21-CV-08159

AmericasActive:16604552.8

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND.................................................................................. 3

LEGAL STANDARD............................................................................................. 7

ARGUMENT ......................................................................................................... 8

I.      MOVANTS HAVE NOT SHOWN THEIR INTERESTS WOULD BE
IMPAIRED BY DENIAL OF INTERVENTION. ............................................. 9

II.     MOVANTS' REQUESTS FOR DISCOVERY SHOULD BE DENIED. ....................... 10

     A.     Movants' Allegations of Collusion are Unsupported by Evidence and
Discovery of Settlement Communications is Thus Improper............................. 10

     B.     Movants' Requested Discovery of Settlement Communications is
Unnecessary. ................................................................................................. 13

     C.     There Is No Need For Discovery of Nationwide Sales or the Sharp Report. ....... 16

     D.     Movants Have No Need for Discovery Taken in Related Actions. ...................... 17

     E.     There Are No "Side Agreements" to Discover..................................................... 18

     F.     Lodestar Information Has Already Been Disclosed. ............................................ 19

CONCLUSION..................................................................................................... 19

AmericasActive:16604552.8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
 2014 WL 2547543 (D. Mass. June 3, 2014) .......................................................8, 10

*In re Cmty. Bank of N. Va.*,
 418 F.3d 277 (3d Cir. 2005) ...........................................................................8

*Cupit v. Dry Basement, Inc.*,
 592 S.W.3d 417 (Mo. Ct. App. 2020).................................................................3

*In re Domestic Air Transp. Antitrust Litig.*,
 144 F.R.D. 421 (N.D. Ga. 1992).......................................................................8

*Eashoo v. Iovate Health Scis. U.S.A., Inc.*,
 2015 WL 12696036 (C.D. Cal. May 26, 2015) ....................................................14

*Garibay v. Archstone Cmtys. LLC*,
 539 F. App'x 763 (9th Cir. 2013) ...................................................................11

*Grant Thornton v. Syracuse Sav. Bank*,
 961 F.2d 1042 (2d Cir. 1992)......................................................................8, 16

*Hemphill v. San Diego Ass'n of Realtors, Inc.*,
 225 F.R.D. 616 (S.D. Cal. 2005) ........................................................7, 8, 10, 18

*In re Hyundai*,
 926 F.3d 539 (9th Cir. 2019) .......................................................................14

*In re Intuit Free File Litig.*,
 No. 3:19-cv-02546 (N.D. Cal.), Dkt. No. 188 .....................................................11

*Jabbari v. Farmer*,
 965 F.3d 1001 (9th Cir. 2020) ......................................................................14

*Jabbari v. Wells Fargo & Co.*,
 2017 WL 5157608 (N.D. Cal. Jul. 8, 2017)...........................................................9

*Lobatz v. U.S. W. Cellular of Cal., Inc.*,
 222 F.3d 1142 (9th Cir. 2000) ................................................................8, 10, 13

*U.S. ex rel. McCoy v. California Med. Review, Inc.*,
 133 F.R.D. 143 (N.D. Cal. 1990)......................................................................7

ii

*In re Oracle Sec. Litig.*,
    852 F. Supp. 1437 (N.D. Cal. 1994) ...................................................................12

*Palacios v. Penny Newman Grain, Inc.*,
    2015 WL 4078135 (E.D. Cal. July 6, 2015) ........................................................11

*Pollard v. Remington Arms Co., LLC*,
    2016 WL 9526451 (W.D. Mo. Feb. 24, 2016) ...........................................8, 17, 18

*Scott v. ZST Digital Networks, Inc.*,
    2013 WL 12126744 (C.D. Cal. Aug. 5, 2013)......................................................10

*True v. Am. Honda Motor Co.*,
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) .................................................................8

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) .................................................................................7

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) .................................................................................7

*Viet Bui v. Sprint Corp.*,
    2015 WL 3828424 (E.D. Cal. June 19, 2015) ........................................................7

*In re Volkswagen "Clean Diesel" Litig.*,
    2016 WL 5793336 (N.D. Cal. Oct. 4, 2016)..............................................7, 9, 10

*In re Wachovia Corp. »Pick A-Payment» Mortg. Mktg. & Sales Pracs. Litig.*,
    2011 WL 1496342 (N.D. Cal. Apr. 20, 2011) ........................................................7

*Zepeda v. PayPal, Inc.*
    2017 WL 1113293 (N.D. Cal. Mar. 24, 2017).......................................................14

**Statutes**

Mo. Rev. Stat. § 407.025 ...............................................................................................2, 3

AmericasActive:16604552.8

## INTRODUCTION

Ryan Tomlinson and Carol Richardson ("Movants") continue their efforts to improperly delay and disrupt these proceedings by seeking to engage in a wide-ranging search for evidence in support of their baseless allegations of "collusion" between the Parties and other irrelevant discovery.[1]  But no evidence supports their allegations of "collusion" and "reverse auction" other than unsupported inferences drawn from the Settlement's[2] terms—terms that are normal, appropriate, and fully disclosed, and in many cases mirror terms that Movants' own counsel have argued in prior cases are appropriate.  Their requested discovery of settlement communications is thus squarely foreclosed by Ninth Circuit precedent.

Movants' motion is also an about-face from their prior filings.  Movants now argue that the Court needs additional information to assess the fairness of the Settlement.  Yet they previously argued that this Court should decide preliminary approval because of its preexisting knowledge gained from extensive discovery and prior proceedings in this MDL.  Dkt. Nos. 78, 86.  Likewise, Movants shift from their position before the transferor court, where they sought to intervene for the "limited purpose" of opposing preliminary approval, with no suggestion that they needed to take discovery to support the same objections and unsupported allegations of collusion they now assert.  Dkt. No. 41.

Movants' shifting positions make sense, however, when their real goal is understood.  Movants do not truly seek to assist this Court in evaluating the fairness and adequacy of the proposed Settlement, but to engage in a search for something—anything—that they can use to try to disrupt the Settlement for their own purposes.  The reasons for this are clear:  Movants have obtained certification of a Missouri state class under the Missouri Merchandising Practices Act ("MMPA") that purports to include not only purchasers of the consumer Roundup® Products at

---

[1] Movants claim that Monsanto agreed not to oppose their motion to intervene to object to preliminary approval.  In fact, Monsanto only acknowledged that this Court would permit Movants to object *without* intervention.  *See* Dkt. No. 89 at 3 n.4.  Intervention is unnecessary in part *because* Movants need not intervene to object.

[2] Unless otherwise defined, capitalized terms in this brief have the same meaning assigned to them in the Settlement.  Dkt. No. 94-1 Ex. A.

issue in the Settlement, but also purchasers of Roundup® Agricultural ("AG") and Industrial & Professional ("I&P") products.  But it is a statutory element of Movants' case that the relevant purchases were made "primarily for personal, family, or household purposes."  Mo. Rev. Stat. § 407.025.  If the proposed Settlement is approved, consumer claims will be released (with the exception of opt-outs), leaving Movants with a class consisting entirely of AG and I&P sales.  The result will be that Movants cannot prove the "primarily for personal, family, or household purposes" element for any significant portion of their class—and will likely be subject to decertification and/or summary judgment.

Movants have thus taken every measure possible to try to disrupt these proceedings.  After lodging unfounded allegations of "collusion" and "reverse auction," Movants' counsel have repeatedly stated to Monsanto's counsel that their accusations would "go away" if the Parties would agree to carve out Missouri purchasers from the Settlement.  Likewise, they have repeatedly threatened to seek discovery against Monsanto and Plaintiffs if they refused to comply with this request.  Monsanto has been steadfast in its rejections of these "proposals," noting that there simply was no collusion or reverse auction and moreover that, having raised these baseless accusations, they would not simply "go away" by carving out Missouri from the Settlement—indeed, doing so would *itself* represent an "auctioning" of the Settlement Class's claims.  Monsanto has repeatedly stated—and repeats here—that the Settlement is fair to Class Members and should be approved, Movants' baseless accusations notwithstanding.

The Settlement was negotiated before a former judicial officer of the United States, who is also a deeply experienced and highly respected mediator of complex and class-action litigation. The Parties have been open and transparent about the Settlement's terms, how and when it was negotiated, and why it should be approved.  The Court should not sanction Movants' efforts to disrupt and delay these proceedings and obtain confidential settlement negotiations that could strategically disadvantage Monsanto in Movants' own litigation.  Movants can object to the Settlement through the normal course.  Their requested intervention and discovery, however, should be denied.

## FACTUAL BACKGROUND[3]

Movants filed their action, *Tomlinson v. Monsanto*, 1916-CV22788 (Jackson Co. Mo, 2019), in August 2019—approximately the same time that Class Counsel began filing their similar cases (the "Related Actions"). Like the Related Actions, Movants' complaint alleges that Monsanto sold Roundup®-brand glyphosate-containing products without disclosing that "Roundup is a known carcinogen," *Tomlinson* Am. Pet. ¶ 3, and that this caused them to pay more than they otherwise would have for the Products, *id.* ¶¶ 73, 93, 94. Movants sought to certify a class of Missouri purchasers of Roundup®-brand products for "personal, family, or household purposes." *Id.* ¶ 1; *see also* Mo. Rev. Stat. 407.025 (limiting recovery to such purchasers).

Unlike the plaintiffs in the other Related Actions who brought claims on behalf of purchasers of Monsanto's Lawn & Garden Roundup® products, however, and despite the statute's "personal, family, or household purposes" requirement, Movants purported to bring claims on behalf of Missouri purchasers of Monsanto's AG and I&P Roundup® products. No other plaintiffs have done this, likely because of the significant differences between these products and how they are marketed, sold, and used. Movants pled a Missouri state class that would avoid removal to federal court.

Before the Missouri court, Monsanto argued that certification of the proposed class was inappropriate because, among other reasons, it includes purchasers of AG and I&P products despite the MMPA's requirement that claims be predicated on the purchase of products "primarily for personal, family, or household purposes." *See Cupit v. Dry Basement, Inc.*, 592 S.W.3d 417, 423 (Mo. Ct. App. 2020). Movants did not put forth a single expert in support of class certification and offered no evidence for how they would prove the required "purpose" (or any other issue) with classwide evidence. Nonetheless, the state court certified a class on March 22, 2021, crediting Movants' unsupported assertion that they could provide so-called "self-identification affidavits" from individual class members that would prove the "purpose" of their purchases. Rosenthal Decl.

---

[3] The Parties' prior litigation, the terms of the Settlement, and the proposed Notice Plan are described in detail in the pending motion for preliminary approval. Dkt. No. 94. Monsanto provides here some additional factual background on its interactions with Movants.

Ex. G at 7.  Notably, Movants have not put forth any such affidavits or explained how they intend to obtain affidavits from class members.

A month *before* the Missouri court ruled on Movants' motion for class certification, however, Monsanto's years-long litigation with Plaintiffs culminated in mediation.  That mediation resulted in the proposed Settlement, and Plaintiffs filed for preliminary approval with the District of Delaware on June 14, 2021.  Dkt. No. 25.  Surely realizing that Missouri purchasers were more likely to favor prompt and substantial compensation over years of uncertainty (and potentially receiving nothing), Movants immediately began efforts to salvage their case and chance at fees.[4]

On June 21, 2021, Movants filed a letter with the transferor court stating that they intended to seek to intervene and oppose approval but provided no explanation of the basis for their objections.  Dkt. No. 34.  Three days later, on June 24, Movants filed a brief in Missouri state court opposing a stay of that case pending approval proceedings, which included unsupported accusations of "collusion" and "reverse auction."  Before filing their motion to intervene with the transferor court, however, Movants began efforts to try to force Monsanto to amend the Settlement. On June 25, Movants' counsel reached out to Monsanto's counsel and asked if Monsanto could find a way to "resolv[e] the Missouri class claims," stating that if this did not happen, Movants would proceed to move to intervene before the transferor court and object.  Rosenthal Decl. ¶ 3 & Ex. A.  Monsanto's counsel responded on June 27, stating that a nationwide settlement had been reached, that it was fair and reasonable, and that it would not be renegotiated to avoid baseless accusations of collusion.  *Id.* ¶ 4 & Ex. B.

---

[4] Importantly, approval of the proposed Settlement will *not* fully extinguish the claims in Movants' case because the Settlement does not release claims by purchasers of AG and I&P products.  It will, however, be extraordinarily difficult for Movants to maintain their claims if they are proceeding only on behalf of purchasers of AG and I&P products.  Those claims will ultimately require proof, not just unsupported promises of proof, that the relevant purchases were made *primarily* for personal, family, or household purposes—proof that will not be easy to produce for products marketed, advertised, sold, and intended for industrial, professional, and agricultural purposes.

The next day, Movants filed their motion to intervene before the transferor court, which repeated their claims of collusion—again, with no evidence. Dkt. No. 41. Concurrently, they filed a purported opposition to preliminary approval making the same collusion allegations. Dkt. No. 41-1. Notably, they did not seek any discovery.

On July 27, 2021, a party to the MDL, Webb, sought transfer of this case to this MDL. JPML Dkt. No. 2397. Webb asserted concerns that his personal injury claims in the MDL might be affected by the proposed settlement (despite clear language in the proposed release to the contrary). Movants used this opportunity to file a brief in support with the JPML on August 19, 2021, again asserting without evidence that there was "collusion" in reaching the settlement. JPML Dkt. No. 2436 at 3.

A week later, on August 26, 2021, Movants' counsel called counsel for Monsanto. Rosenthal Decl. ¶ 5. Movants' counsel stated that they wanted to have Missouri purchasers "carved out" of the Settlement and proceed with negotiating a separate settlement for such purchasers. *Id.* They stated that if Monsanto would agree to this, they would withdraw their motion to intervene and objection to settlement approval and withdraw their brief in support of transfer of this action to the MDL. *Id.* Movants' counsel stated that by withdrawing their objection and brief, the allegations of collusion and reverse auction would go away, allowing the parties to proceed with the preliminary approval without objection. *Id.* Movants' counsel further stated that if Monsanto would not agree to this, then Movants would continue to object, would also seek discovery regarding their allegations of collusion, and would delay resolution of this action for years by pursuing objections through appeal. *Id.*

Monsanto's counsel advised that Movants' allegations of collusion were baseless, that Monsanto would oppose any discovery requests based on those frivolous accusations, and that Monsanto was confident that the settlement was fair and reasonable. *Id.* Monsanto's counsel further reiterated that a settlement had been reached with putative class counsel for the Lawn & Garden products and that Monsanto would not agree to carve out the Missouri purchases. *Id.* Since that conversation, Movant's counsel has reached out on several occasions to reiterate the

offer to carve out the Missouri Lawn & Garden sales from the Settlement in exchange for withdrawing their objection and threatened requests for discovery.  *Id*.  Monsanto's counsel has made the same responses.  *Id.*

Ultimately, this case was transferred to this Court and, as the Court knows, Movants then moved to intervene to address whether the case should be remanded.  Dkt. No. 78.  When this Court mooted their efforts by denying the Parties' request for suggestion of remand and stating that Movants need not intervene to object to settlement approval, Monsanto's counsel reached out to Movants' counsel to attempt to reach an agreement on the schedule for preliminary approval filings.  *See* Dkt. No. 89 at 1 n.1.  Movants requested an additional four weeks to prepare objections, to which the Parties agreed.  *See id*.  Shortly after that motion was filed, Movants finally filed their instant, long-threatened motion for discovery.

6

**LEGAL STANDARD**

An applicant to intervene as of right bears the burden of showing that each of the requirements have been met. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). Those requirements include that (1) the motion is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002). Permissive intervention is granted at the court's discretion, but it is generally denied if intervention of right is not appropriate. *Viet Bui v. Sprint Corp.*, 2015 WL 3828424, at *3 (E.D. Cal. June 19, 2015) (collecting cases).

Objecting class members are not "automatically entitled to discovery or 'to question and debate every provision of the proposed compromise.'" *In re Volkswagen "Clean Diesel" Litig.*, 2016 WL 5793336, at *5 (N.D. Cal. Oct. 4, 2016) (quoting *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 619 (S.D. Cal. 2005)). "In other words, objectors do not have an absolute right to discovery." *Id.* (citing *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 316 (3d Cir. 2005)).[5]

When objectors request discovery, courts consider "(1) the nature and amount of previous discovery; (2) whether there is a reasonable basis for the discovery requests; and (3) the number and interests of objectors." *Hemphill*, 225 F.R.D. at 620. Courts ask whether, considering any discovery in the action, related actions, and information available in the public record (including information provided in the motion for approval), the court and the objector have sufficient

---

[5] Movants cite cases they say show that the bar for obtaining objector discovery is low, Dkt. No. 97 at 3-4, but the cases they rely on do not stand for that proposition. For example, Movants rely on *U.S. ex rel. McCoy v. California Med. Review, Inc*., 133 F.R.D. 143, 149 (N.D. Cal. 1990) and *In re Wachovia Corp. »Pick A-Payment» Mortg. Mktg. & Sales Pracs. Litig*., 2011 WL 1496342, at *3 (N.D. Cal. Apr. 20, 2011) to argue that such discovery should be generally permitted whenever it might aid the district court in assessing the settlement. But *McCoy* did not involve discovery by objectors, but rather by qui tam plaintiffs in their own case. And in *In re Wachovia*, the court permitted nine, narrowly-tailored requests for admission, but refused to permit discovery into settlement negotiations because there was no evidence of collusion.

information to assess the fairness of the settlement.  *See In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 2014 WL 2547543, at *4 (D. Mass. June 3, 2014) (denying requested discovery, with narrow exceptions, where objector "already ha[d] access to voluminous discovery and information that is available to the public"); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1081 n.31 (C.D. Cal. 2010) (denying request for discovery where plaintiffs had already provided "sufficient evidence for the Court to evaluate the value of the relief for class members in the proposed settlement"); *see also Cmty. Bank*, 418 F.3d at 316 (court was "inclined to agree" that it was appropriate to deny discovery, despite the absence of formal discovery in the settled action, because the objector had litigated "two suits involving the same fraudulent scheme in the state courts of Missouri" and thus "likely [had] sufficient facts regarding this matter and its prospective settlement value such that it would be able to present a cogent and supportable objection at the fairness hearing").[6]

Discovery of settlement negotiations is particularly disfavored and "appropriate only in rare circumstances."  *Hemphill*, 225 F.R.D. 616, 620.  Because "settlement negotiations involve sensitive matters," courts have consistently applied the principle that "discovery [of settlement communications] is proper only where the party seeking it lays a foundation by adducing *from other sources* evidence indicating that the settlement may be collusive." *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) (emphasis added) (quoting *Mars Steel Corp. v. Cont'l Ill. Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987)); *accord Grant Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir. 1992) ("This is necessary to prevent parties from learning their opponents' strategies."); *Domestic Air*, 144 F.R.D. at 425 ("[O]bjectors are not entitled to discovery of settlement negotiations.").

## ARGUMENT

---

[6] *See also In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424-25 (N.D. Ga. 1992) (denying request to compel answer to objector interrogatories where responsive information had already been provided or would be provided in connection with motion for settlement approval); *Pollard v. Remington Arms Co., LLC*, 2016 WL 9526451, at *1 (denying motion for discovery where the parties had submitted "hundreds of pages of briefing and exhibits," the plaintiffs had considered extensive document productions, and there were a "large number of previously confidential documents publicly available").

AmericasActive:16604552.8

## I.    MOVANTS HAVE NOT SHOWN THEIR INTERESTS WOULD BE IMPAIRED BY DENIAL OF INTERVENTION.

Movants argue in conclusory fashion that, because they are Class Members, they necessarily have a "significantly protectable interest" in the Settlement.  Dkt. No. 96 at 6.  But even if that is correct, it is insufficient to support their motion to intervene.  The relevant question is not just whether Movants have an interest in objecting to settlement approval, but whether that interest will be *impaired* if intervention is denied.  *See, e.g.*, *Volkswagen "Clean Diesel"*, 2016 WL 4376623, at *4 (N.D. Cal. Aug. 17, 2016) (class member's interest in settlement was adequately protected, and intervention thus inappropriate, where class member could "opt out of the Settlement and litigate his claims independently, or he may instead object to it") (collecting cases); *Jabbari v. Wells Fargo & Co.*, 2017 WL 5157608, at *8 (N.D. Cal. Jul. 8, 2017) (Chhabria, J.) ("As the proposed intervenors have offered no reason to believe the ordinary objection process is an inappropriate or inconvenient means of making themselves heard through the remainder of this case, the motions to intervene are denied.").[7]  Movants do not and cannot contest that they can opt out of the settlement and object to its approval—both at the preliminary- and final-approval stages.  Their legitimate interests thus would not be impaired if intervention is denied.

Movants' request for discovery does not change this analysis.  They cannot claim they must have discovery to object to preliminary approval—they previously submitted a proposed brief in opposition to preliminary approval to the transferor court without seeking such discovery.  Dkt. No. 41-1.  And in any event, as explained below, the requested discovery has already been made available, is irrelevant to the questions before this Court, does not exist, or is inappropriate under existing precedent, so denying intervention cannot possibly impair any interest.[8]

---

[7] Movants' counsel have explained this ably in their own prior cases.  *Keil v. Lopez*, No. 16-3159 (8th Cir.), Br. of Pls.-Appellees (Rosenthal Decl. Ex. C at 33-35) (noting that "any class member … could have opted out and 'chosen to pursue their claims separately under various state laws'") (quoting *Khoday v. Symantec Corp.*, 2016 WL 1637039, at *15 (D. Minn. Apr. 5, 2016)).

[8] Movants' motion to intervene is also untimely.  As noted above, they have been threatening to seek discovery for nearly *six months* in a futile effort to intimidate the Parties into carving Missouri purchasers out of the Settlement—and were repeatedly told that such discovery would be opposed and that their claims of collusion were baseless.  Yet they did not seek discovery before the transferor court, nor in their earlier filings with this Court.  Instead, they sought to hold the threat of delay and discovery over the Parties.  Only now that it is beyond clear that the Parties will not

## II.     MOVANTS' REQUESTS FOR DISCOVERY SHOULD BE DENIED.

Movants' requested discovery is unnecessary and improper.  Movants are not entitled to discovery "to question and debate every provision of the proposed compromise."  *In re Volkswagen "Clean Diesel" Litig.*, 2016 WL 5793336, at *5.  Instead, they must show that, despite the information already before the Court and available to Movants, the discovery they seek is relevant and necessary to the Court's determination of whether to approve the proposed settlement considering "(1) the nature and amount of previous discovery; (2) whether there is a reasonable basis for the discovery requests; and (3) the number and interests of objectors."  *Id.*; *In re Celexa*, 2014 WL 2547543, at *4.  Additionally, their requests for settlement communications require them to adduce evidence from other sources "indicating that the settlement may be collusive."  *Lobatz*, 222 F.3d at 1148.  They have made none of these showings and have adduced no evidence of their alleged "reverse auction" (because there is none).  Their requested discovery should thus be denied.

### A.     Movants' Allegations of Collusion are Unsupported by Evidence and Discovery of Settlement Communications is Thus Improper.

Movants' have taken to repeating the same claims of collusion in serially filed briefs as though they will gain plausibility through repetition.  But repeating baseless accusations does not make them any less baseless.

The record evidence is clear that there was *not* collusion.  Plaintiffs and Monsanto are represented by experienced and well-regarded counsel, who have declared that the Settlement was negotiated at arm's length.  Dkt. No. 94-3 ¶¶ 2-3, 5-9; Dkt. No. 94-1 ¶¶ 15-19, 22-36; Dkt. No. 94-2 ¶¶ 3-15; *see also Scott v. ZST Digital Networks, Inc*., 2013 WL 12126744, at *6 (C.D. Cal. Aug. 5, 2013) (noting that the court was "confident that the negotiations were conducted at arm's length … and were in no way collusive" because the case was "litigated by experienced and well-respected counsel on both sides"); *Hemphill*, 225 F.R.D at 621 ("As a general principle, 'the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'") (citation omitted).

---

be cowed by baseless threats and baseless accusations do they finally move to intervene for that purpose.

The Parties reached an agreement only after a mediation before a highly respected and experienced former United States Magistrate Judge, the Honorable Diane Welsh. This alone supports a presumption of arm's length negotiation.[9] *Palacios v. Penny Newman Grain, Inc.*, 2015 WL 4078135, at *8 (E.D. Cal. July 6, 2015) (involvement of experienced mediator "tends to support the conclusion that the settlement process was not collusive"). Judge Welsh has declared that "the parties engaged in extensive adversarial negotiations on virtually every issue in the cases"; that she "observed nothing that suggested any collusion or untoward behavior by counsel for either party"; and that, in her opinion, "the outcome of the mediated negotiations is the result of a fair, thorough, and fully informed arms-length process between highly capable, experienced, and informed parties and counsel." Dkt. No. 27, ¶¶ 9-10.

Against this, Movants offer only baseless assertions that collusion must be presumed to exist based on routine and unremarkable terms of the Settlement. Specifically, Movants point to the mere possibility that *if* the Court approves a fee of 25% of the settlement fund and *if* claims rates are low enough that only the Floor Amount is reached, then the attorneys' fees awarded would be roughly equal the payout to the class. Dkt. No. 97 at 12-13. But that can be no sign of collusion—25% is the "benchmark" for attorney's fees in class action cases, as Movants' own counsel have repeatedly argued in their own class-action settlements.[10] *Garibay v. Archstone Cmtys. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). And in any event, the amount of fees to be

---

[9] Movants' own counsel have recognized as much in prior cases (when it did not threaten their own quest for fees), arguing that the "assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Smith v. Experian Info. Sols., Inc*., No. 8:17-cv-00629-CJC-AFM (C.D. Cal.), D.I. 47-1, Mem. ISO Pls.' Mot. for Final Approval (Rosenthal Decl. Ex. E) at 20 (quoting *Williams v. Brinderson Constructors, Inc.*, 2017 WL 490901, at *2 (C.D. Cal. Feb. 6, 2017)).

[10] Movants' counsel describe such provisions as "routine and unproblematic" and fully consistent with an "arms' length negotiation process" even when claims rates are low. *In re Intuit Free File Litig.*, No. 3:19-cv-02546 (N.D. Cal.), Dkt. No. 188, Pls.' Reply ISO Mot. for Prelim. Approval at 9, 16 (Rosenthal Decl. Ex. F) (arguing claims rate between 2.5 and 7.5 percent is "consistent with the rates in settlements on behalf of millions of members" and referring to 25% of the fund fee recovery as a "benchmark"); *see also In re Syngenta Ag Mir162 Corn Litig.*, No. 2:14-mc-02591-JWL-JPO (D. Kan.), D.I. 3256, Pls.' Reply Mem. ISO Mot. for Prelim. Approval (Rosenthal Decl. Ex. D) at 22-23 ("[C]ourts have routinely awarded fees *above* 25%, even in so-called 'mega-fund' cases.") (emphasis added).

11

awarded is left in the sole discretion of this Court—not the Parties—and the Settlement expressly provides that it does *not* depend on the award of any particular amount of fees. *See* Dkt. No. 94 at 12.

Movants also argue that collusion is apparent because of the *possibility* that, under certain claims-rate scenarios, if some portion of Class Counsel's request fee award were denied, then not all of that amount would be paid to Class Members. Dkt. No. 97 at 12-13. But there is no separately negotiated fund for attorneys' fees that reverts to Monsanto if it is not approved. Rather, attorneys' fees are to be paid from the same fund as payments to Class Members. That means that Class Counsel's interests always favored a higher settlement fund. And it also means that any amount of the fund that the Court does not award in fees is available to claimants rather than automatically reverting to Monsanto. *See In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1454–55 (N.D. Cal. 1994) ("[P]ercentage of the fund fee compensation [is] 'vastly superior' [to other options] … because percentage of the fund better 'align[s] the interest of lawyer and client[, as] [t]he lawyer gains only to the extent his client gains'") (citations omitted).[11]

Movants argue that these are "questionable provisions" and "hallmarks" of collusion akin to those present in *In re Conagra Foods, Inc.*, No. CV 11-05379-CJC (C.D. Cal.), Dkt. No. 750 (October 6, 2021 Order) (Exhibit B to their motion). Dkt. 97 at 14. But Movants make no attempt to compare the facts of that case to this one—and for good reason. The *Conagra* settlement included an agreement not to challenge fees up to *seven times* what would be paid out to the class, with unapproved fees reverting automatically to the Defendant. Here, in contrast, the Parties set a Floor Amount and included provisions for a pro rata upward adjustment to ensure that even if the benchmark in fees is awarded, and even if the claims rate is low, Class Counsel's fee award will represent less than half of the total benefit to the Settlement Class. And as discussed above, unlike

---

[11] Fees not awarded to Class Counsel could only fail to go to Class Members if claims rates were insufficient to reach the Settlement's Ceiling Amount (and even then only after any necessary upward pro rata adjustment of the Default Payments to ensure that the Floor Amount was exhausted). In the event this did occur, it would not be a result of the Settlement's provisions regarding attorney's fees, but a result of the Settlement's modified claims-made structure, which Movants have not even argued is inherently inappropriate or collusive.

AmericasActive:16604552.8

in *Conagra*, there is no separate fund or automatic reversion to Monsanto—any amount of the fund the Court does not award in fees will be available for Class Members to claim.  In short, the Settlement here is designed to *obviate* the structural concerns present in cases like *Conagra*.

**B.    Movants' Requested Discovery of Settlement Communications is Unnecessary.**

Because Movants have made no evidentiary showing of collusion, their request for discovery of settlement-related communications should be denied outright.  *Lobatz*, 222 F.3d at 1148.  But an examination of the specific discovery Movants seek in this regard further confirms that it is neither relevant nor necessary to assess their fabricated claims of collusion.  *See* Dkt. 91 at 14-15.

*First*, Movants seek discovery of communications regarding the decision to file this action in Delaware, suggesting that if the Parties agreed to a Delaware filing as a settlement vehicle, that would support an inference of collusion.  Dkt. No. 97 at 14.  That argument is doubly flawed.  Initially, Movants' fundamental premise is incorrect, because parties are encouraged to seek global settlement and there is nothing inappropriate about proceeding in a forum with appropriate jurisdiction so long as the agreement reached is fair and reasonable.  More important, Movants' suggestion that the filing of this action in Delaware reflects some kind of "side agreement" or back-room deal makes no sense, because the Parties did not reach an agreement on the terms of the Settlement—or even begin substantive negotiations on the terms or amount of the Settlement— until several months *after* this action was filed.  Nor does it take much imagination to understand why Plaintiffs would file a nationwide case against Monsanto in the state of its incorporation, where there could be no question of general personal jurisdiction.

*Second*, Movants claim they need discovery of settlement communications to investigate why Plaintiffs did not assert punitive damages in their complaint in this case.  There is nothing to discover in this regard.  Monsanto knows nothing about why Plaintiffs asked for the relief they did, and it had no communications with Plaintiffs about the relief they seek before this action was filed.  Rosenthal Decl. ¶ 9.

In any event, this is just as irrelevant as where Plaintiffs chose to file. So long as the released claims are based on the same factual predicate (and they are), a settlement is not limited to the exact claims or damages sought in the complaint, and neither the parties nor the Court need do a jurisdiction-by-jurisdiction claims and damages analysis to assess settlement adequacy. *See Jabbari v. Farmer*, 965 F.3d 1001, 1007-08 (9th Cir. 2020) (courts need not "conduct[] a choice-of-law analysis, despite variations in state law" or "assess the importance of every claim a class might make. . . ."); *In re Hyundai*, 926 F.3d 539, 563 (9th Cir. 2019).[12] The goal is global peace, and Monsanto did not consider this action in a vacuum, but rather against the backdrop of the litigation as a whole. The result is a fair settlement that provides adequate compensation for the types of claims released; knowing why Plaintiffs sought the relief they did will not help the Court assess this. *See Zepeda v. PayPal, Inc.* 2017 WL 1113293, at *12 (N.D. Cal. Mar. 24, 2017) ("[Objector's] ancillary contention that Plaintiffs should have taken into account Defendants' potential exposure to punitive damages has likewise been rejected by the Circuit.").

**Third**, Movants want discovery related to consideration given to claims outside of Florida, California, and Arkansas. Dkt. No. 97 at 14. This is neither necessary nor required for the Court to assess the overall settlement or whether it was collusive. As just discussed, neither settling parties nor the Court are required to perform a state-by-state claims analysis so long as the overall compensation is fair and adequate given the types of claims being released. And as the preliminary approval papers reflect, the Parties gave due consideration to the risks of litigation, including the

---

[12] Again, Movants' counsel have repeatedly recognized this principle when it did not threaten their own financial self-interests. *See* Rosenthal Decl. Ex. D at 17 (arguing that it is "a well-accepted feature of class settlement that the parties can settle claims broader than those that justified class treatment in the first instance."); Rosenthal Decl. Ex. C at 35 (arguing that "the practical reality [is] that 'a class action settlement necessarily reflects the parties' pre-trial assessment as to the potential recovery of the entire class, with all of its class members' varying claims.").

In any event, Movants' "disagreement with Plaintiff's decision not to pursue [certain] claims . . . amounts to a general grievance regarding the existing party's litigation tactics, which courts are generally hesitant to find as a proper basis for intervention." *Eashoo v. Iovate Health Scis. U.S.A., Inc.*, 2015 WL 12696036, at *9 (C.D. Cal. May 26, 2015) (citing *Bergman v. Thelen LLP*, 2009 WL 1308019, at *3 (N.D. Cal. May 11, 2009) (proposed intervenor's disagreement with class counsel's strategic decision not to pursue a particular claim "does not justify granting intervention")).

strengths and weaknesses of the claims being settled and the fact that there may be variations by state. *See* Dkt. No. 94 at 16, 23-24, 27-30. The resulting Settlement will provide claimants with two-thirds of Plaintiffs' very liberal benefit-of-the-bargain damages estimate,[13] and potentially pro rata upward adjustments. In exchange, Class Members release only similar claims based on the same factual predicate, while retaining all Personal Injury Claims. No further discovery is needed to see that this is more than fair.

**Fourth**, Movants seek discovery of service awards or other benefits to plaintiffs in related actions and attorneys' fees. But all agreements made in connection with the settlement and the basis for requested service awards and fees have been disclosed with the preliminary approval papers, as required. *See* Dkt. No. 94 at 12, 36 n.33. There are no service awards, nor any other payments, being offered to any Plaintiffs in any action (or anyone else) beyond the service awards requested by Plaintiffs, which of course will only be awarded at the Court's discretion. *See* Dkt. Nos. 94-5-94-12.[14]

**Finally**, it cannot be forgotten that Movants are not only Class Members but also plaintiffs in ongoing litigation with Monsanto. Their requests, therefore, are not only unsupported by evidence of collusion but could provide Movants with an unfair advantage in any future

---

[13] As explained in Dr. Shampanier's declaration, a well-designed conjoint analysis suggests that there is *no* statistically significant price premium, which makes intuitive sense given that a study conducted in connection with Movants' case in Missouri showed that a supermajority of purchasers of the relevant products are *already aware* of allegations that the products can cause cancer and other health effects. *See* Dkt. No. 94-3, Ex. A (Shampanier Decl.) ¶¶ 4-12; *Tomlinson v. Monsanto Co.*, No. 1916-CV22788 (Jackson Co., Mo. Cir. Ct.), Oct. 6, 2020 Decl. Of Peter E. Rossi ¶¶ 12b, 13, 78-79 (summarizing evidence that information regarding alleged health risks of the Products was widely disseminated throughout the class period in both the popular press and industry publications and reporting that 74.5 percent of residential users surveyed indicated that they were aware of alleged health risks of the products).

[14] Movants also propound a request seeking "the naming of additional plaintiffs in *Gilmore*" (RFP 9). Monsanto is unsure what Movants are after—the identity of the named plaintiffs in this action is not a secret, and the service awards they seek are noted in public filings. To the extent that Movants are trying to determine whether Monsanto agreed not to oppose the naming of those individuals as plaintiffs, no discovery is necessary. Monsanto did agree to that. Rosenthal Decl. ¶ 11. But that is not evidence of collusion. Rather, it is a common-sense mechanism to ensure that those other individuals represented by Class Counsel and pursuing similar allegations against Monsanto or its customers in other actions were in agreement with, and indeed parties to, the attempt to globally settle this litigation.

negotiations that may occur with Monsanto. Movants have made little secret of their intent to use disruption in this case as leverage in their own parallel action. And even assuming the Settlement is ultimately approved (as it should be), it will not extinguish claims related to all, or even most, of the sales in Missouri for which Movants seek recovery. Providing Movants with sensitive settlement communications between the Parties would thus run afoul of the very reason such communications are protected in the first place—they provide information regarding parties' views of the strengths and weaknesses of their positions that an adverse third party might improperly use to its advantage. *See Grant Thornton*, 961 F.2d at 1046 (2d Cir. 1992) (protection against discovery of settlement communications is "necessary to prevent parties [in other, related cases] from learning their opponents' strategies").

### C.   There Is No Need For Discovery of Nationwide Sales or the Sharp Report.

Movants' arguments that they need discovery to assess the nationwide sales of the Products during the Class Period, and a copy of Plaintiffs' expert report (prepared by Dr. Sharp) in the *Ezcurra* case, completely ignore the information that was provided in connection with the preliminary approval motion, which moots any reasonable claim that such discovery is needed.[15] The Sharp report was attached, in unredacted form, to Class Counsel's declaration filed concurrently with the motion for preliminary approval. Dkt. No. 94-1 Ex. 2.

Similarly, as to nationwide sales data, the motion for preliminary approval includes an estimate of nationwide sales, along with a declaration explaining the nature of the data on which this estimate was based. Dkt. Nos. 94 at 29; 94-3 ¶ 12. Movants offer no reasonable reason to think that the information provided with the motion for preliminary approval is unreliable or problematic.[16]

---

[15] Movants may argue in reply that they simply refiled their original motion, which was filed before the motion for preliminary approval, and that this explains their failure to address the information filed with the motion for preliminary approval. *See* Dkt. Nos. 90-91 (prior filings of Movants' current motions), 93 (terminating prior motions for failure to comply with procedural requirements). But that is Movants' own failing. They were not compelled to refile the same motions without considering the motion for preliminary approval (though the fact that they did so speaks volumes about how concerned they really are about obtaining needed information versus simply creating delay and procedural headaches).

[16] Of course, if the Court feels that it needs additional information regarding sales, it can request

Instead, Movants vaguely suggest that the estimate is "called into question" because Monsanto has previously, and truthfully, represented to them it does not have access to data reflecting individual retail sales, and that the "point-of-sale" data it has reflecting aggregate retail sales does not include *all* retail sales. Dkt. No. 97 at 5-6. That is a red herring. The Parties have already explained as much in their submissions in connection with preliminary approval. Dkt. No. 94-3 ¶ 12 ("These numbers are necessarily estimates because Monsanto does not have, and is not aware of any way to obtain, data reporting *all* retail sales of the products. However, these estimates are well-informed, based on Monsanto's data on the number of units shipped to retailers and distributors and the available data on retail sales (so-called point of sale data) …. The point-of-sale data does not record individual purchases, but it does provide a significant dataset that can be used in combination with shipment data to estimate average retail sales prices."). The use of such estimates is not only an accepted and often necessary practice in cases involving retail products (indeed the same thing was done in *Jones*), but also the best the Parties can do because it is all the information they possess. Further discovery will not change that, and Movants do not offer anything suggesting that the estimates provided are unreliable or biased in any way.

### D.    Movants Have No Need for Discovery Taken in Related Actions.

Movants do not need additional discovery to present whatever challenges they may have to the fairness of the settlement. *See Pollard v. Remington Arms Co., LLC*, 2016 WL 9526451, at *1 (denying motion for discovery where the parties had submitted "hundreds of pages of briefing and exhibits," the plaintiffs had considered extensive document productions, and there were a "large number of previously confidential documents publicly available"). Movants themselves conducted discovery in their own action for years and received hundreds of thousands of pages of document productions (and, like Class Members and Plaintiffs, have access to the vast regulatory, scientific, and personal-injury-discovery record that is publicly available). *See* Rosenthal Decl. ¶

---

that from the Parties. But Movants offer no reason to believe that the information provided is unreliable or that additional information is necessary to assess the fairness of the Settlement.

10. If they believe the Settlement is undervalued (and it is not), then they certainly have everything they need to argue that.[17]

### E.   There Are No "Side Agreements" to Discover.

Movants argue they need discovery regarding three categories of side agreements: (1) agreements with plaintiffs in related actions who became Plaintiffs in this action that they would receive "benefits above rank-and-file putative class members," (2) agreements among counsel respecting attorneys' fees, and (3) agreements with retailers related to the settlement.

As the motion for preliminary approval and related filings have already explained, there are no such agreements to discover. *See* Dkt. No. 94-1 ¶ 44.  The only agreement of any kind regarding any kind of special benefits to named Plaintiffs is reflected in the Settlement Agreement—they may seek service awards subject to Court approval.  The same is true of attorneys' fees—the only relevant agreement with Monsanto (the Settlement) has been disclosed, and there is no secret what hours and work Plaintiffs believe should be considered in determining the appropriateness of their fee.  *See* Dkt. No. 94-1 ¶ 40.

Similarly, Monsanto can put to bed Movants' argument that they need discovery of agreements with retailers because retailers are included in the Settlement's release—there are no such agreements with retailers in connection with the Settlement.  As Monsanto's counsel has *already explained* in a sworn declaration, it was Monsanto that sought a release of retailers and others in the commercial chain, which is an essential and common-sense element of the Parties' bargain because it is the only way to provide Monsanto with meaningful protection against

---

[17] Plaintiffs have explained that their best-case valuation of this case relies on the estimated price premium and the amount of relevant sales—all of which is provided with the preliminary approval papers. *See* Dkt. No. 94 at 29-30.  Likewise, the risks of continued litigation are set forth in detail in those papers. *Id.* at 19-27.  That other or retailer-specific discovery was taken is irrelevant to whether the Settlement is fair or adequate.  And Movants (who again, are adverse plaintiffs in a separate action with access to their own discovery record) do not need full access to all discovery for the Court to assess this or to file an appropriate objection. *See Hemphill*, 225 F.R.D. at 622 (denying request for discovery of "virtually everything contained in Class Counsel's files" including all "formal discovery" in the settled case and related cases, because "[t]he district court's most important function in reviewing compromises of class actions is its consideration of the settlement terms").

monetary and reputational exposure posed by continuing litigation of claims based on the same factual predicate.  Dkt. No. 94-3 ¶ 4.

      **F.**    **Lodestar Information Has Already Been Disclosed.**

      Finally, Movants seek discovery of hours worked and work performed that will be included as part of Plaintiffs' fee request.  Dkt. 91 at 12.  But again, Movants apparently could not be bothered to review the information already disclosed before they filed their motion: Plaintiffs already included information on their current lodestar calculation, including hours billed in each of their other related actions.

**CONCLUSION**

      Movants are Class Members.  They are permitted to object—both at the preliminary approval and the final approval stages—without intervention.  And of course, they are also free to opt out.  Their interest in the Settlement is thus adequately protected without intervention.  Their request to discover sensitive settlement communications is barred by longstanding Ninth Circuit law because they have put forward no evidence of collusion, and the record in fact shows that no such collusion occurred.  And their other requests for discovery are unfounded, unneeded, and ignore the substantial information already included in the Parties' filings, available in the public record, and specially available to Movants as plaintiffs in a similar case who have access to their own discovery record.  Their motions to intervene and for discovery should be denied.

Dated: February 4, 2022

                                        By:  /s/ *John J. Rosenthal*
                                            JOHN J. ROSENTHAL
                                           Winston & Strawn LLP
                                           jrosenthal@winston.com
                                           1901 L Street NW
                                           Washington, DC 20036

                                           JEFF WILKERSON
                                         Winston & Strawn LLP
                                         jwilkerson@winston.com
                                         300 S. Tryon Street, 16th Floor
                                         Charlotte, NC 28202

19

SHAWN R. OBI
Winston & Strawn, LLP
sobi@winston.com
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036

RAKESH KILARU
Wilkinson Stekloff LLP
rkilaru@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036

*Counsel for Monsanto Company*

AmericasActive:16604552.8