# Exhibit C

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 2 of 31

2016 WL 7438118 (C.A.8) (Appellate Brief)
United States Court of Appeals, Eighth Circuit.

Alexia KEIL, et al. on Behalf of Herself and Others Similarly Situated, Plaintiffs-Appellees,

v.

BLUE BUFFALO COMPANY, LTD., Defendant-Appellee,

v.

Paul Lopez; Pamela McCoy; Caroline Nadola; and Gary W. Sibley, Objectors-Appellants.

Nos. 16-3159, 16-3164, 16-3167, 16-3169.
December 6, 2016.

Appeal from the United States District Court For the Eastern
District of Missouri, District Court MDL No. 4:14-MD-02562-RWS

**Brief of Plaintiffs-Appellees**

Don M. Downing, Gretchen Garrison, Gray, Ritter & Graham, P.C., 701 Market Street, Suite 800, St. Louis, Missouri 63101, Telephone: (314) 241-5620.

Scott A. Kamber, Deborah Kravitz, Kamberlaw LLC, 100 Wall Street 23rd Floor New York, NY 10005, Telephone: (212) 920-3072.

## *I  SUMMARY OF THE CASE

These appeals arise from an approved settlement and award of attorneys' fees in class actions centralized in the Eastern District of Missouri alleging misrepresentations respecting ingredients in pet food products sold by Blue Buffalo Company, Ltd. ("Blue Buffalo"). The Consolidated Complaint alleges nationwide as well as state-law claims. The settlement, negotiated at arms-length after substantial investigation and discovery, was overseen by a neutral mediator. It affords injunctive relief, as well as cash recovery to all Settlement Class Members timely submitting valid claims. There is no reversion to Blue Buffalo and no dedicated *cy pres* recipient. Funds unclaimed by Settlement Class Members will be distributed by *pro rata* increase to all claiming class members. Upon consideration of all factors approved in this circuit, the district court found the settlement fair, reasonable and adequate. The court awarded fees, supported by applicable factors, at a modest 24.5% of the settlement fund, cross-checked by the lodestar method. No objector demonstrates abuse of discretion.

Should the Court determine that oral argument is warranted, twenty (20) minutes per side (with that time assigned to Appellants collectively) should be adequate to address any questions this Court may have after reviewing the briefs.

## *ii  TABLE OF CONTENTS

SUMMARY OF THE CASE ............................................................................................... i
TABLE OF CONTENTS .................................................................................................. ii
TABLE OF AUTHORITIES ............................................................................................ iv
STATEMENT OF THE ISSUES ....................................................................................... 1
STATEMENT OF THE CASE ........................................................................................... 4
SUMMARY OF ARGUMENT ........................................................................................ 13
ARGUMENT .................................................................................................................. 16
I. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN APPROVING THE   16
SETTLEMENT .................................................................................................................

A. The District Court Adequately Explained Its Reasoning and the Record Contains Ample Support for Approval ................................................................................................................................... 17
B. Applicable Factors Support Settlement Approval ........................................................................ 19
C. The Settlement is Fair to the Class as a Whole ............................................................................ 25
1. Proof of purchase is a reasonable claim factor ............................................................................. 25
2. The claim rate does not indicate unfairness ................................................................................. 27
D. The District Court was Not Required to Allocate the Settlement to Account for Differences in State Consumer Protection Statutes .......................................................................................................... 31
II. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN AWARDING ATTORNEYS' FEES ............................................................................................................................. 36
*iii  A. The Award is Reasonable as a Percentage of the Fund ........................................................ 37
B. The Lodestar Cross-Check Confirms that the Fee is Reasonable ................................................. 40
C. The District Court Properly Considered Applicable Factors. ...................................................... 46
D. The District Court Appropriately Calculated the Percentage Fee on the Gross Settlement Amount ......... 49
E. Class Members had Fair Opportunity to Object to the Fee Request ............................................. 53
CONCLUSION ........................................................................................................................................... 58
CERTIFICATE OF COMPLIANCE ........................................................................................................... 61
CERTIFICATE OF SERVICE ..................................................................................................................... 62

**\*iv  TABLE OF AUTHORITIES**

**Cases**

*9-M Corp., Inc. v. Sprint Commc'ns Co. L.P.*, 11-3401 DWF/JSM, 2012 WL 5495905 (D. Minn. Nov. 12, 2012) ....   50

*Acuity v. Johnson*, 776 F.3d 588 (8th Cir. 2015) ...................   57

*Albright v. Bi-State Dev. Agency of Mo.-Ill. Metro. Dist.*, 4:11CV01691 AGF, 2013 WL 4855308 (E.D. Mo. Sept. 11, 2013) ...........................................................................................   20

*Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931 (8th Cir. 2007) ...........................................................................................   2, 46

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) .....   34

*Anthony v. Yahoo!, Inc.*, 376 F. App'x 775 (9th Cir. 2010) ...........................................................................................   52

*Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401 (8th Cir. 1985) ........................................................   57

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, C-11-2910 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012) ........   20

*Avram v. Samsung Elecs. Am., Inc.*, CIV. 2:11-6973 KM, 2013 WL 3654090 (D.N.J. July 11, 2013) ......................   19

*Barfield v. Sho-Me Power Elec. Co-op.*, 2:11-CV-4321NKL, 2015 WL 3460346 (W.D. Mo. June 1, 2015) ....................   3, 38, 39, 49

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ...........................................................................................   39

*Bezdek v. Vibram USA, Inc.*, 809 F.3d 78 (1st Cir. 2015) .......   1, 25

**\*v**  *Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980) .......   2, 30

*Brown v. Wells Fargo Bank, N.A.*, 25 F. Supp. 3d 144 (D.D.C. 2014) ...........................................................................   36

*Carson v. Am. Brands Inc.*, 450 U.S. 79 (1981) ...............   17

*Cassese v. Williams*, 503 F. App'x 55 (2d Cir. 2012) ........   3, 53, 55

*Chu v. Wells Fargo Invs., LLC*, C-05-4526-MHP, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ..........................................   44

*Claxton v. Kum & Go, L.C.*, 6:14-CV-03385-MDH, 2015 WL 3648776 (W.D. Mo. June 11, 2015) ...............................   21

*Coleman v. Commonwealth Land Title Ins. Co. Mitchell*, CV 09-679, 2016 WL 4705454 (E.D. Pa. Aug. 17, 2016) .......... 32

*Cromeans v. Morgan, Keegan & Co., Inc.,* 2:12-CV-04269-NKL, 2015 WL 5785576 (W.D. Mo. Sept. 16, 2015) .......... 39, 57

*Date v. Sony Elecs. Inc.,* 07-15474, 2009 WL 435289 (E.D. Mich. 2009) ...................................... 29

*DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171 (8th Cir. 1995) ...................................... passim

*DeLeon v. Bank of Am., N.A. (USA),* 6:09-CV-1251-ORL-28, 2012 WL 2568142 (M.D. Fla. Apr. 20, 2012) ........ 26, 27

*Eastwood v. S. Farm Bureau Cas. Ins. Co.,* 3:11-CV-03075, 2014 WL 4987421 (W.D. Ark. Oct. 7, 2014) .......... 43, 44

*Ebin v. Kangadis Food Inc.*, 13 CIV. 2311 JSR, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ...................................... 20

*vi *Elias v. Ungar's Food Products, Inc.,* 252 F.R.D. 233 (D.N.J. 2008) ...................................... 32

*Fink v. Ricoh Corp.,* 839 A.2d 942 (N.J. Super. 2003) ..... 32

*Fish v. St. Cloud State Univ.*, 295 F.3d 849 (8th Cir. 2002) ... 38

*Fox v. Vice*, 563 U.S. 826 (2011) ...................................... 40

*Friedman v. Guthy-Renker LLC*, 2:14-CV-06009-ODW, 2015 WL 857800 (C.D. Cal. Feb. 27, 2015) ................... 20

*Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969 (8th Cir. 2016) ...................................... 37

*Gehrich v. Chase Bank USA, N.A.,* 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ...................................... 52

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ...................................... 24, 35

*Hardman v. Bd. of Educ.*, 714 F.2d 823 (8th Cir. 1983) ........ 46, 47

*Hendricks v. Starkist Co*, 13-CV-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ...................................... 48

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...................... 38

*Holden v. Burlington N., Inc.*, 665 F. Supp. 1398 (D. Minn. 1987) ...................................... 22

*Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621 (S.D. Iowa 2016) ...................................... 39, 47

*vii *In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. 150 (E.D. Pa. 2015) ...................................... 19

*In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ...................................... 25, 45

*In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747 (8th Cir. 2003) ...................................... 17

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002) ...................................... 1, 22

*In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061 (E.D. Mo. 2002) ...................................... 50

*In re Bisys Sec. Litig.*, 04 CIV. 3840(JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ...................................... 54

*In re Cathode Ray Tube (Crt) Antitrust Litig.*, 3:07-CV-5944 JST, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ............. 33

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC  Document 14555-4  Filed 02/04/22  Page 5 of 31

*In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199 (E.D. Pa. 2014) ........................................................ 3, 53

In re Charter Commc'ns, Inc., Sec. Litig., 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ............ 38, 42, 49

*In re Checking Account Overdraft Litig.*, 286 F.R.D. 645 (S.D. Fla. 2012) ........................................................ 19

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........................................................ 22

In re *Chrysler Motors Corp. Overnight Eval. Prog. Litig.*, 736 F. Supp. 1007 (E.D. Mo. 1990) ........................ 38

*In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128 (8th Cir. 1984) ........................................................ 18

*viii* *In re Genetically Modified Rice Litig.*, 764 F.3d 864 (8th Cir. 2014) ........................................................ *passim*

*In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ........................................................ 39

In re Iowa Ready-Mix Concrete Antitrust Litig., No. C 10-4038-MWB 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) ........................................................ 38

In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig., MDL 08-1999, 2010 WL 4386552 (E.D. Wis. Oct. 28, 2010) ........................................................ 58

*In re LivingSocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1 (D.D.C. 2013) ........................................................ 26

In re Lucent Techs., Inc., Sec. Litig., 327 F. Supp. 2d 426 (D. N.J. 2004) ........................................................ 39

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ........................................................ 53

*In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016) ........................ 54

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, MDL 1532, 2011 WL 1398485 (D. Me. Apr. 13, 2011) ........ 33

In re NuvaRing Prods. Liab. Litig., 4:08MDL1964 RWS, 2014 WL 7271959 (E.D. Mo. Dec. 18, 2014) ................. 2, 40

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 34

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ........................................................ 50

*In re Pet Food Prods. Liab. Litig.*, MDL No. 1850, 2008 WL 4937632 (D. N.J. Nov. 18, 2008) ................. 43

*ix* *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009) ........................................................ 28

In re Pool Prods. Distribution Mkt. Antitrust Litig., MDL 2328, 2015 WL 4528880 (E.D. La. July 27, 2015) ............... 52

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) ........................................................ 32

*In re Southwest Airlines Co.*, 799 F.3d 701 (7th Cir. 2015) ........................................................ 37

*In re Toys R Us-Del.,Inc.-Fair & Accurate Credit Trans.*    31

*Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ......

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab.*    21, 30
*Litig.*, 11-MD-2247 ADM/JJK, 2012 WL 2512750 (D.
Minn. June 29, 2012) ........................................................

*In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002) .    1, 19, 39

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396    1, 16, 17
F.3d 922 (8th Cir. 2005) ....................................................

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, MDL    23, 29, 36
1559 4:03-MD-015, 2004 WL 3671053 (W.D. Mo. Apr. 20,
2004) ...................................................................................

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA"*    41, 42, 47, 49
*Litig.*, 364 F. Supp. 2d 980, 997 (D. Minn. 2005) ................

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, No.08-    1, 21, 22, 24
MDL-1958ADM/AJB, 2013 WL 716088 (D. Minn. Feb. 27,
2013) ...................................................................................

*Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687    51
(W.D. Pa. 2015) ..................................................................

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714    46
(5th Cir.1974) .....................................................................

*x *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241    2, 37, 38
(8th Cir. 1996) ....................................................................

*Ko v. Natura Pet Prods., Inc.*, C 09-02619 SBA, 2012 WL    20
3945541 (N.D. Cal. Sept. 10, 2012) ...................................

*Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564 (S.D. Iowa    22
2011) ...................................................................................

*Khoday v. Symantec Corp.*, 11-CV-180 (JRT/TNL), 2016    35, 48
WL 1637039 (D. Minn. Apr. 5, 2016) ................................

*Knutson v. Sprint Commc'ns Co., L.P.*, 4:11-CV-04041-    50
KES, 2013 WL 2490644 (D.S.D. June 10, 2013) ................

*Lee v. Ocwen Loan Servicing, LLC*, 14-CV-60649, 2015 WL    31
5449813 (S.D. Fla. Sept. 14, 2015) ...................................

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*    16
*No. 1*, 921 F.2d 1371 (8th Cir. 1990) ................................

*Lowe v. Taylor Steel Prods. Co.*, 373 F.2d 65 (8th Cir. 1967)    57
*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir.    *passim*
2015) ...................................................................................

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423    45
(2d Cir. 2007) .....................................................................

*Montoya v. PNC Bank, N.A.*, 1420474CIVGOODMAN,    31
2016 WL 1529902 (S.D. Fla. Apr. 13, 2016) .......................

*Moore v. Verizon Comm's Inc.*, C 09-1823 SBA, 2013 WL    31
4610764 (N.D. Cal. Aug. 28, 2013) ...................................

*Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063    2, 33
(8th Cir. 2016) ....................................................................

*xi *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014)    51
.............................................................................................

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla.    31
2007) ...................................................................................

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999)    *passim*
.............................................................................................

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 7 of 31

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...................................................... 39

*Pratt v. Panasonic Consumer Elecs. Co.*, L-48-05, 2006 WL 1933660 (N.J. Super. Ct. Law Div. July 12, 2006) ............... 32

*Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640 (8th Cir. 2012) ........................................ 16

*Ramsey v. Sprint Commc'ns Co., L.P.*, 4:11-CV-3211, 2012 WL 6018154 (D. Neb. Dec. 3, 2012) ................................ 20

📑 *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) ..................................................... 51, 52, 53

📑 *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) .................................................... 23

*Rhoten v. Pase*, 252 F. App'x 211 (10th Cir. 2007) ............... 4

*Ross Bros. Constr. Co. v. Int'l Steel Servs., Inc.*, 283 F.3d 867 (7th Cir. 2002) .............................................. 18

*Rotskoff v. Cooley*, 438 F.3d 852 (8th Cir. 2006) .................. 33 *Rougvie v. Ascena Retail Grp., Inc.*, CV 15-724, 2016 WL 4111320 (E.D. Pa. July 29, 2016) ...................... 34

**\*xii** 📑 *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683 (S.D. Fla. 2014) ................................. 3, 53

*Saint v. BMW of N. Am., LLC*, CIV.A. 12-6105 CCC, 2015 WL 2448846 (D.N.J. May 21, 2015) ............................ 48

*Sanderson v. Unilever Supply Chain, Inc.*, 10-CV-00775-FJG, 2011 WL 6369395 (W.D. Mo. Dec. 19, 2011) .............. 39

*Silvercreek Mgmt., Inc. v. Banc of Am. Sec., LLC*, 534 F.3d 469 (5th Cir. 2008) ......................................... 22

*Simon v. Toshiba Am.*, C 07-06202 MHP, 📑 2010 WL 1757956 (N.D. Cal. Apr. 30, 2010) ........................ 25, 43, 44

*Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665 (D. Md. 2013) .................................................... 42, 48

*Small v. Target Corp.*, 53 F. Supp. 3d 1141 (D. Minn. 2014) . 28

*Solomon v. Petray*, 795 F.3d 777 (8th Cir. 2015) ................. 28

📑 *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .......... 50, 51

📑 *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844 (5th Cir. 1998) ...................................................... 45

📑 *Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) ..... 30

*United States v. Northshore Mining Co.*, 576 F.3d 840 (8th Cir. 2009) ..................................................... 2, 32

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ............... 1, 18, 24

**\*xiii** *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ......................................... 42

📑 *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ................................................ 45, 50

*Wescott Agri-Products, Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091(8th Cir. 2012) ...................................... 37, 52

*West v. PSS World Med., Inc.*, No. 4:13 CV 574 CDP, 2014 WL 1648741 (E.D. Mo. Apr. 24, 2014) ...................... 3, 38, 39, 50

*Wiles v. Sw. Bell Tel. Co.*, 09-4236-CV-C-NKL, 2011 WL 2416291 (W.D. Mo. June 9, 2011) ............................ 39

📑 *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) ................................................ 45

*Wilson v. Airborne, Inc.*, EDCV 07-770-VAP (OPx), 📑 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) ................ 1, 25

*Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057 (D. Minn. 2010) ........................................................................ 2, 47

*Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001) .................................................. 52

**Statutes**

15 U.S.C. § 2301 ...................................................................... 19, 20

**Rules**

Fed. R. Civ. P. 23(e) .............................................................. 3, 55, 56

Fed. R. Civ. P. 23(h) .............................................................. 3, 56

Fed. R. Civ. P. 54(d)(2) ......................................................... 56

Fed. R. App. P. 28 ................................................................... 4

**\*xiv  Miscellaneous**

*Court Awarded Attorney Fees*, Report of Third Circuit Task Force 108 F.R.D. 237 (1986) ............................................... 49

Newberg on Class Actions § 14.6 (4th ed.) ......................... 39, 42

Newberg on Class Actions § 15:91 (5th ed.) ...................... 41

Manual for Complex Litigation § 14.121 (4th ed.) .............. 38

2 McLaughlin on Class Actions § 6:24 (13th ed.) ............... 45, 50

**\*1  *STATEMENT OF THE ISSUES***

I. Whether the district court acted within its discretion in approving the settlement where:

There is no indication of collusion, but rather, the settlement resulted from arms-length negotiation with the assistance of a neutral mediator;

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No.08-MDL-1958 ADM/AJB, 2013 WL 716088 (D. Minn. Feb. 27, 2013)

The district court adequately set forth its reasons for approval and the record supports approval;

*In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995); *Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988)

The district court found the settlement fair, reasonable, and adequate after considering appropriate factors;

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002)

The settlement is fair to the class as a whole, proofs of purchase are an appropriate claims factor, and any class member believing his or her claim to be of particular strength had the opportunity to opt out;

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999); *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78 (1st Cir. 2015); *Wilson v. Airborne, Inc.*, EDCV 07-770-VAP (OPx), 2008 WL 3854963(C.D. Cal. Aug. 13, 2008)

The number of objectors and opt-outs was small and the claims rate is neither an appropriate consideration nor indicative of unfairness; and

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 9 of 31

**\*2**  *Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980); *Marshall v. Nat'l Football League,* 787 F.3d 502 (8th Cir. 2015); *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171 (8th Cir. 1995)

Appellant Nadola lacks standing for her argument that the court should have required an allocation plan accounting for varying strengths of state consumer protection acts, which further is undeveloped and unsupported.

*Marshall v. Nat'l Football League,* 787 F.3d 502 (8th Cir. 2015); *Olson v. Fairview Health Services of Minnesota,* 831 F.3d 1063 (8th Cir. 2016); *United States v. Northshore Mining Co.,* 576 F.3d 840 (8th Cir. 2009)

II. Whether the district court was within its discretion in approving attorneys' fees and costs when:

The requested fee is reasonable as a percentage of the fund;

*In re Genetically Modified Rice Litig.,* 764 F.3d 864 (8th Cir. 2014); *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140 (8th Cir. 1999); *Johnston v. Comerica Mortg. Corp.,* 83 F.3d 241 (8th Cir. 1996)

The requested fee is reasonable under a lodestar cross-check;

*In re Genetically Modified Rice Litig.,* 764 F.3d 864 (8th Cir. 2014); *In re NuvaRing Products Liab. Litig.,* 4:08MDL1964 RWS, 2014 WL 7271959 (E.D. Mo. Dec. 18, 2014)

The court considered applicable factors, which support approval;

*Allen v. Tobacco Superstore, Inc.,* 475 F.3d 931 (8th Cir. 2007); *Hardman v. Bd. of Educ.,* 714 F.2d 823 (8th Cir. 1983); *Johnston v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974); *Yarrington v. Solvay Pharmaceuticals, Inc.,* 697 F. Supp. 2d 1057 (D. Minn. 2010)

The court appropriately exercised discretion in calculating the fee on the gross settlement recovery; and

**\*3**  *In re Genetically Modified Rice Litig.,* 764 F.3d 864 (8th Cir. 2014); *Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003); *Barfield v. Sho-Me Power Elec. Co-op.,* 2:11-CV-4321NKL, 2015 WL 3460346 (W.D. Mo. June 1, 2015); *West v. PSS World Med., Inc.,* No. 4:13 CV 574 CDP, 2014 WL 1648741 (E.D. Mo. Apr. 24, 2014)

Objectors had adequate opportunity to object to the fee request.

*Cassese v. Williams,* 503 F. App'x 55 (2d Cir. 2012) (unpub.); *In re CertainTeed Fiber Cement Siding Litig.,* 303 F.R.D. 199 (E.D. Pa. 2014); *Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 699 (S.D. Fla. 2014); Fed. R. Civ. P. 23(e), (h).

**\*4  STATEMENT OF THE CASE** [1]

Beginning in May 2014, consumers filed a series of class actions challenging Blue Buffalo's representations regarding ingredients in its pet foods. These actions were centralized in the Eastern District of Missouri. Pls.Appx.001-03. [2] On December

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 10 of 31

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

23, 2014, the district court appointed Plaintiffs' leadership Counsel. Pls.Appx.004-65. After extensive analysis of legal theories, including consumer protection statutes and warranty laws of all 50 states, Appx.640a, Counsel on January 30, 2015, filed a Consolidated Class Action Complaint, asserting violations of the Magnuson-Moss Warranty Act ("MMWA"), breach of express and implied warranty, unjust enrichment, and violations of consumer protection acts of seven states (Missouri, New York, California, New Jersey, Illinois, Florida, and Ohio). *See* Appx.1-53a. On December 21, 2015, the complaint was amended to add a Plaintiff and claim under the Massachusetts consumer protection act. Pls.Appx.089; Appx.159-212a. The MMWA, unjust enrichment claims, and warranty claims are asserted on behalf of a nationwide class. The consumer protection claims are asserted on behalf of eight subclasses. **\*5** Appx.177-79a, 182-209a. Plaintiffs allege that Blue Buffalo breached its "True Blue Promise" that its products contain "NO Chicken or Poultry By-Product Meals," "NO Corn, Wheat or Soy," and "NO Artificial Preservatives, Colors or Flavors" when they contained chicken/poultry by-product meal, corn, rice, grains, soy, and/ or artificial ingredients. Appx.2a, 160a. In response to the initial Consolidated Complaint, Blue Buffalo denied all material allegations and liability. Appx.213-37a. Subsequently, Blue Buffalo admitted that for a period ending in May 2014, a supplier sent mislabeled ingredients to manufacturing facilities that produce certain of its products, Appx.56-57a, and on June 12, 2015, filed a third-party complaint against Wilbur-Ellis Company ("Wilbur-Ellis") and Diversified Ingredients, Inc. ("Diversified"), seeking indemnification and/or contribution. Pls.Appx.066-74.

Class Counsel devoted significant resources and more than 7,000 hours investigating, litigating, and ultimately reaching settlement. Appx.313a, 637-50a, 658a. Counsel spent considerable time communicating with plaintiffs, investigating facts, researching the law, and preparing the Consolidated Complaint. Appx.640-41a. Counsel also engaged in substantial additional investigation, including testing Blue Buffalo product ingredient claims. Appx.638a. They also: prepared and served initial disclosures, interrogatories and two sets of document requests; responded to discovery requests; raised and resolved discovery disputes; **\*6** analyzed and coded over 157,000 documents; served third-party subpoenas; obtained, analyzed and digested transcripts of key depositions in *Nestle Purina Petcare Company v. The Blue Buffalo Company Ltd.*, No. 4:14-cv-00859-RWS; [3] and noticed and prepared for numerous depositions. Appx.313a, 642-43a. Counsel also consulted with and retained experts; commissioned testing; and researched and substantially drafted a motion for class certification (due December 18, 2015). Appx.314a, 643-46a. Counsel managed discovery, which spanned approximately seven months and accounted for much of Counsels' time, Appx.642-43a, to maximize efficiency and yield a successful litigation and settlement. Appx.644a.

Settlement talks began in October, 2016. Appx.646a. The parties held a day-long mediation with former United States District Judge Wayne A. Andersen on October 26, 2015. Appx.314a. Class Counsel entered the mediation fully informed of the merits of putative class members' claims and zealously advanced their position. Appx.314-15a. Agreement was not reached that day. After additional negotiations, with Judge Andersen's continued assistance, the parties achieved an understanding in principle. Over a period of weeks and numerous drafts, that understanding was translated into a settlement providing for substantial **\*7** relief to the Classes. *Id.* A final Stipulation of Settlement ("Settlement") was signed on December 9, 2015. Appx.55-158a.

Blue Buffalo agreed to pay $32 million into a Settlement fund. Appx.63a. The $32 million is exclusive of service awards to class representatives, which Blue Buffalo will pay in addition to the fund amount. Appx.65a. There is no reversion of funds to Blue Buffalo. Class members receive payment according to whether they have valid proofs of purchase. Under Option 1, claimants without proofs of purchase receive a baseline of $5.00 for every $50.00 of eligible purchases, for up to $100 worth of eligible purchases. Under Option 2, claimants with proofs of purchase receive a baseline of $5.00 for every $50.00 of eligible purchases, for up to $2,000 worth of eligible purchases. Appx.68-69a. Payment amounts are subject to *pro rata* adjustment to ensure that all available funds are paid to claiming class members. Appx.69a. There is no *cy pres* distribution save for moneys, if any, remaining from uncleared checks. *See* Appx.70a.

In addition to monetary relief, the Settlement requires Blue Buffalo to ensure that it no longer represents that its products do not include chicken or poultry byproduct meal unless or until: "All specifications . . . have been reviewed [to ensure] that they are

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 11 of 31

consistent with all packaging claims found on the product and representations regarding the products found on the Blue Buffalo website" and "Blue Buffalo has reviewed its supplier relationships and has instituted practices **\*8** designed to ensure that all materials provided by its suppliers comply with the applicable product specifications." Appx.64a.

On December 9, 2015, Plaintiffs moved for preliminary approval of the Settlement, certification of the Settlement Class, and permission to disseminate class notice. Pls.Appx.075-122. On December 18, 2015, the court conditionally certified a Settlement Class of: "All residents of the United States of America who, from May 7, 2008 through the Preliminary Approval Date, purchased any of the Blue Buffalo Products [listed on Ex. 1 to the Settlement Agreement]." Appx.239a.[4] It preliminarily approved the Settlement, approved the proposed claim form, media plan, publication notice, class notice and creation of the settlement website. Appx.239-41a. The court scheduled a fairness hearing for May 19, 2016. Appx.244a.

Heffler Claims Group ("HCG") was approved as settlement administrator and to accomplish notice to the class. Appx. 240-41a. Notice, commencing on January 15, 2016, entailed extensive direct and indirect campaigns. Appx.405-11a. HCG sent out nearly two million direct notices by e-mail or postcard. Appx.406-08a. A half-page advertisement was published in *People* magazine, online banner advertisements were placed on Internet networks and served across more than 5,467 websites, with additional advertising placed on popular social media **\*9** channels (Facebook and Twitter). Appx.408-09a. HCG also issued a press release and launched a settlement website. Appx.410-11a. By April 2016, there had been more than 182 news mentions and articles and more than 100,000 social media shares concerning the Settlement. Appx.410a. The notice program as a whole reached more than 87% of the class with an average frequency of four times. Appx.413a.

The Notice provided information about the Settlement, including a summary of the lawsuit, description of eligible class members, details regarding the Settlement and claims process. Appx.441-42a, 444a. The Notice explains Options 1 and 2, including the *pro rata* increase: "If the total value of claims submitted exceeds or falls short of the balance remaining in the Settlement Fund, then the compensation provided to each Settlement Class Member shall be reduced or increased pro rata." *Id.* The Notice advised that additional information could be obtained via toll-free number, writing to HCG, or visiting www.petfoodsettlement.com. The website includes specific instruction for opting out and information about valid proofs of purchase and how to obtain them. *Id.*[5]

**\*10**  As of May 9, 2016, 105,172 people had submitted claims.[6] Appx.411a. The number of claims allows *pro rata* increase in awards. As a result, claiming Settlement Class Members will receive a significant amount over the baseline. Claimants will receive their full valid claim amount (subject to the $100 and $2,000 limits) plus a *pro rata* increase of approximately 11% over the full valid claimed purchase amount. Appx.412a.[7] Only 14 claiming members timely submitted and maintained objections, 8 of them objecting to Class Counsels' proposed fee. Appx.710a. There were 8 opt-outs. Appx.729-30a, 667a, 577a. Appellants were among the objectors. *See* Appx.246-72a (Lopez objection); Pls.Appx.123-24 (McCoy objection); Nadola Addm.3 (Nadola objection); Sibley Addm.17-21 (Sibley April 14, 2016 objection); Sibley Addm.22-25 (Sibley supplemental May 18, 2016 objection).

**\*11**  Plaintiffs responded to objections, Appx.663-98a, and on May 12, 2016, moved for final approval of the Settlement, certification of the Settlement Class, and approval of service awards. Plaintiffs submitted a lengthy memorandum, with extensive supporting exhibits, including Jeanne Finegan's declaration (President and Chief Media Officer, HF Media), and Michael Pakter's affidavit, a forensic accountant engaged to opine on the proposed settlement versus possible recovery after trial. Appx.273-600a. Application for attorneys' fees and costs was submitted on May 13, 2016, supported by detailed memorandum addressing factors used in determining fee awards, the percentage sought, and lodestar information including descriptions of

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 12 of 31

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

services, hours incurred, and billing rates. Appx.601-62a. Lodestar time excluded hours overly duplicative and/or reflective of inefficiencies. *See* Appx.653-54a; Pls.Appx.135.

The court held a fairness hearing on May 19, 2016. None of the Appellant objectors appeared. *See* Pls.Appx.126. The court heard argument from Class Counsel, counsel for Blue Buffalo, counsel for third-party defendants, and two objectors. It stated:

I'm going to approve the final settlement over the objections both orally and those . . . in writing because it is my determination that the settlement agreement is fair, reasonable, and adequate under the totality of the circumstances . . . .

**\*12**  Pls.Appx.172; *see also* Pls.Appx.174-75. The court also considered the fee request reasonable, based on all relevant factors, and commended the parties "for proceeding and moving this case speedily so that the benefit to the consumers is known sooner rather than later and . . . not something we find out in the year 2018 or 2019." Pls.Appx.177-78. The court issued its Final Order and Judgment on June 16, 2016, approving the Settlement as "fair, reasonable and adequate as to all parties and in compliance with all requirements of due process and applicable law." Appx.699-705a. The court issued separate Findings of Fact, Conclusions of Law and Order Awarding Fees and Costs, approving Plaintiffs' application for attorneys' fees and expenses in the total amount of $8 million. Appx.709-12a.

Five objectors filed notices of appeal: Paul Lopez; Pamela McCoy; Caroline Nadola; Gary Sibley; and Pamela Sweeney. [8] Appx.713-15a, 732a. Plaintiffs sought an appeal bond, *see* Pls.Appx.185-728, 741-68, pointing out that most are "serial" objectors. [9]  The court issued an appeal bond order on October 3, 2016. Pls.Appx.769-78.

## *13  SUMMARY OF ARGUMENT

I. The district court properly exercised its discretion in finding the settlement fair, reasonable and adequate.

A-B. The court stated its reasons for approval and considered applicable factors, which support the settlement as the record demonstrates.

C. The Settlement is fair to the class as a whole. There is no requirement that every class member receive identical awards and proof of purchase is a reasonable factor in such awards. The number of objectors and opt-outs was very low. The claim rate is not a factor for consideration where, as here, there is no reversion, notice of the *pro rata* increase was adequate (contrary to Appellant Lopez's argument, which is not preserved for review), and all Settlement Class Members received a benefit. The claim rate otherwise is not unusual and does not indicate unfairness.

D. Appellant Nadola's argument that the court was required to allocate the settlement fund according to strength of state consumer protection claims is waived and unsupported by the cases she cites. In addition, courts in this circuit do not resolve merits issues in assessing settlements, and evaluate the case as a whole rather than on a claim-by-claim  **\*14**  basis. Any class member believing that his or her claims were of particular strength had the ability to opt out of the settlement.

II. The district court properly exercised its discretion in determining that the requested fee is fair and reasonable.

A. The fee is reasonable as a percentage of the fund, an approved method in this circuit, and well within normal range.

B. Reasonableness is confirmed through discretionary lodestar crosscheck and the multiplier is well within normal range.

C. The court considered applicable factors which support the modest fee award.

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 13 of 31

D. The court appropriately calculated the percengage fee based on the gross settlement amount, which includes administrative expense benefitting class members.

E.  Rule 23 does not by its terms require that the filing date for a fee application precede settlement objection deadline, and class members had notice that Class Counsel would request a percentage fee award not exceeding 25% of the fund and fair opportunity to object. Additional information supplied by the fee application pertains to the lodestar crosscheck, which is discretionary as to common fund settlements and does not demand detailed review of time records. Appellant Sibley objects only to **\*15** timing of the fee application and, other than a non-meritorious complaint respecting the multiplier, made no challenge to the fee application below (although he submitted a supplemental objection after the fee application was filed) or before this Court. An earlier fee application would not change the result and error, if any, was harmless.

## *16 ARGUMENT

### I. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN APPROVING THE SETTLEMENT.

"The court's role in reviewing a negotiated class settlement is to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015) (internal quotation omitted). Courts "begin with the guiding principle that a class action settlement is a private contract negotiated between the parties." *Id.* (internal quotation omitted). Such agreements are "presumptively valid."

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990). " Rule 23(e) requires the court to intrude on th [e] private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005).

"Only upon the clear showing that the district court abused its discretion will this court intervene to set aside a judicially approved class action settlement." *Prof'l Firefighters Ass'n, Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir. 2012) (internal quotation omitted). "First, great weight is accorded to the trial court's views because it is exposed to the litigants, and their strategies, positions and proofs." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (internal **\*17** quotation and alterations omitted). The trial judge "is aware of the expense and possible legal bars to success. Simply stated, he is on the firing line and can evaluate the action accordingly." *In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747, 752 (8th Cir. 2003) (internal quotation omitted). "Second, a strong public policy favors agreements, and courts should approach them with a presumption in their favor." *Petrovic*, 200 F.3d at 1148 (internal quotation and alteration omitted).

Appellant objectors do not and cannot claim collusion. Nor is there any other basis to find abuse of discretion.

### A. The District Court Adequately Explained Its Reasoning and the Record Contains Ample Support for Approval.

Assertions that the court's analysis was inadequate, or inadequately documented, are meritless. McCoy Br.5; Lopez Br.14-15. Fairness of a settlement is evaluated according to four primary factors: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Wireless Tel.*, 396 F.3d at 932. While a court should reach "well-reasoned conclusions," it "need not make a detailed investigation consonant with trying the case." *Id.* at 932-33 (internal quotation omitted); *accord Carson v. Am. Brands Inc.*, 450 U.S. 79, 88 n.14 (1981) (court should "not decide the merits of the case or resolve unsettled legal questions"); **\*18** *Marshall*, 787 F.3d at 518 (court "need not undertake the type of detailed investigation that trying the case would involve.") (internal quotation omitted).

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC  Document 14555-4  Filed 02/04/22  Page 14 of 31

Even without specific findings, this Court "assume[s] that the district court did not abuse its discretion unless the record establishes the contrary." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995); *see also Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) ("[I]f the record contains facts supporting the district court's approval of the settlement, a reviewing court would be properly reluctant to attack that action solely because the court failed adequately to set forth its reasons or the evidence on which they were based.") (internal quotation omitted); *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1136 (8th Cir. 1984) ("the record reflects that the District Court had before it the information necessary to consider the fairness of the [settlement] agreement" and its action could be reviewed "on [that] basis").

Thorough briefing of the relevant factors was submitted to the court. Appx.296-303a; *see also Ross Bros. Constr. Co. v. Int'l Steel Servs., Inc.*, 283 F.3d 867, 872 (7th Cir. 2002) ("we must presume the district court read the briefs submitted"). It also heard argument at the Fairness Hearing. Pls.Appx.125-84; Appx.699a. The court expressly stated that "[t]he factors identified in this circuit for assessing fairness of the Settlement have all been considered." Appx.704a. There is no basis to question the veracity of that statement. The court expressly **\*19** concluded that the Settlement is fair and reasonable and "thoroughly considered" and rejected objections. Appx.704-05a. In so doing, the court "adequately stated its reasons for approving the settlement agreement." *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002). Moreover, Appellants "have not shown the record establishes that the agreement was unfair." *Id*. It does not.

### B. Applicable Factors Support Settlement Approval.

Complaints by McCoy and Lopez that the court did not weigh merits of the case against terms of settlement (McCoy Br.4-9; Lopez Br.14-18, 22-23) is, as discussed, belied by the court's order. Appx.704a. And, as the record establishes, this factor supports the Settlement, as do complexity and risks of further litigation.

While Plaintiffs believe they have a strong case on the merits, they are cognizant of the considerable risks of further litigation. Blue Buffalo denied all liability and asserted nine affirmative defenses. Appx.213-37a. Risks include, without limitation, class certification,[10] uncertainty as to MMWA elements,[11] and **\*20** potential choice-of-law issues. *See Marshall*, 787 F.3d at 514-15 ("the choice-of-law inquiry [would be] extremely complex and weighs heavily against ultimate certification of the class" and "if Appellants are wrong about their likelihood of success along any step of the way, *all* plaintiffs will gain nothing") (alteration in original).[12] Risk is ever-present at summary judgment, trial, and appeal. *See, e.g., Albright v. Bi-State Development Agency of Mo.-Ill. Metro. Dist.*, 4:11CV01691 AGF, 2013 WL 4855308, at \*3 (E.D. Mo. Sept. 11, 2013) ("If the case were to proceed, the resulting motion practice, trial and appeals, could have been lengthy, involved, and expensive, presenting a substantial risk that Plaintiffs and the Settlement Classes would not ultimately prevail on their claim"); *Ramsey v. Sprint Commc'ns Co., L.P.*, 4:11-CV-3211, **\*21** 2012 WL 6018154, at \*3 (D. Neb. Dec. 3, 2012) ("[S]hould this settlement be rejected, there is no telling what it would take to get it to trial, or how the issues presented at that trial would be litigated.").

The objectors offer nothing on which to conclude that risks of further litigation were inappropriately considered. Lopez suggests that Blue Buffalo's concession respecting mislabeled ingredients rendered the case exceptionally strong, Lopez Br.6-7, but ignores Blue Buffalo's position that this was without its knowledge and in violation of procurement contracts and ingredient specifications. Appx.56-57a. Blue Buffalo's third-party complaint complicated continued litigation. Pls.Appx.066-74. Lopez also opines that the case "is not uniquely complex," Lopez Br.23, but complexity in class litigation is "well-recognized." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at \*7 (D. Minn. Feb. 27, 2013); *Claxton v. Kum & Go, L.C.*, 6:14-CV-03385-MDH, 2015 WL 3648776, at \*6 (W.D. Mo. June 11, 2015) (same); *see also Marshall*, 787 F.3d at 512 (noting generally that class actions place "enormous burden of costs and expense upon parties" and recognizing complexities including conflicts-of-law analyses). Moreover, Class Counsel are seasoned litigators experienced in complex litigation. Appx.702a. They were informed of the merits and conducted significant discovery before entering into settlement discussions. Appx.641-47a. Their judgment is entitled to weight. *DeBoer*, 64 F.3d at 1178; *In re Uponor, Inc.*,

Case 3:16-md-02741-VC  Document 14555-4  Filed 02/04/22  Page 15 of 31

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

*F1807 Plumbing Fittings Prods. Liab. Litig.*, 11-MD-2247 **\*22** ADM/JJK, 2012 WL 2512750, at \*7 (D. Minn. June 29, 2012); *Zurn Pex*, 2013 WL 716088, at \*6.

Neither McCoy nor Lopez objected below that the claims are stronger than the results obtained. Pls.Appx.123-24; Appx.246-72a. They waived that argument,[13] which, in any event, is misplaced. Plaintiffs presented evidence that the $32 million fund is approximately 27% of the present value of a best-case, maximum-possible verdict at trial. Appx.584-87a. Of course, and contrary to Lopez's refrain that this case is worth the best-case estimate, "[t]he possibility of a large monetary recovery through future litigation is highly speculative, and any such recovery would occur only after considerable additional delay." *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 (S.D. Iowa 2011). "[A] settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 708 (E.D. Mo. 2002); *see also Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) (same); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (recovery of between 9% and 45% of total potential damages was "exemplary result"). The Settlement offers cash compensation to **\*23** every Settlement Class Member timely submitting a valid claim form. The *pro rata* increase means that recovery will in many cases approach 100% of the member's total purchase price. Appx.588-89a. The injunctive relief ensures that concerns regarding Blue Buffalo's representations are appropriately addressed. Appx.64a.

The Settlement "brings real and immediate benefits to the settlement class while they may well not get anything if the case were to go forward or, if they did receive some benefits, may well not receive anything until years into the future after millions of dollars have been spent." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, MDL 1559 4:03-MD-015, 2004 WL 3671053, at \*10-11 (W.D. Mo. Apr. 20, 2004). "It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation." *Id.* at \*11 (citing *BankAmerica*, 210 F.R.D. at 701) (recognizing it is often "proper to take the bird in hand instead of a prospective flock in the bush."). The relief obtained, weighed against the complexities and uncertainties of litigation, supports approval.

Relying on *Reynolds v. Beneficial National Bank*, 288 F.3d 277 (7th Cir. 2002), McCoy proposes that the court should have required detailed calculations, including quantification of net expected value of continued litigation, with a range of possible outcomes and ascription of probability to each point along the range. McCoy Br.6. *Reynolds,* however, involved a "reverse auction" whereby the **\*24** defendant "in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Id.* at 282-85. The Seventh Circuit's admonition that the court should have made "greater effort . . . to quantify the net expected value of continued litigation to the class" was due to these "suspicious circumstances." *Id.* at 284-85. Such circumstances are not present here, and no objector, including McCoy, claims otherwise.[14]

Even if *Reynolds* stands for the proposition McCoy asserts (it does not), the law in this circuit is clear that "in approving a settlement the district court need not undertake the type of detailed investigation that trying the case would involve." *Van Horn*, 840 F.2d at 607. The "level of detail [in valuation of class claims] . . . [is left] to the sound discretion of the district court." *Marshall*, 787 F.3d at 518. Neither the lower nor reviewing court need reach conclusions on issues underlying the merits, *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975), and "[t]he very purpose of compromise is to avoid the delay and expense of such a trial." *Marshall*, 787 F.3d at 518 (alteration in original) (quoting *Grunin*, 513 F.2d at 124). McCoy's argument is meritless.

### **\*25  C. The Settlement is Fair to the Class as a Whole.**

Case 3:16-md-02741-VC Document 14555-4 Filed 02/04/22 Page 16 of 31

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

### 1. Proof of purchase is a reasonable claim factor.

Lopez and McCoy also assert unfairness to claiming members without proofs of purchase. Lopez Br.18; McCoy Br.7-8. But there is no requirement that every class member receive an identical award. *Petrovic*, 200 F.3d at 1146. Any notion that conflict or adequacy of representation issues arise therefrom (*see* McCoy Br.8-9) is "untenable." *Id.* Requirements to confirm class membership are reasonable, and class settlements in product cases frequently provide enhanced recovery for those with proof of purchase. *E.g.*, *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 81 (1st Cir. 2015); *Simon v. Toshiba Am.*, C 07-06202 MHP, 2010 WL 1757956, at *1 (N.D. Cal. Apr. 30, 2010); *Wilson v. Airborne, Inc.*, EDCV 07-770-VAP (OPx), 2008 WL 3854963, at *3 (C.D. Cal. Aug. 13, 2008). In addition, a proof-of-purchase requirement discourages fraud. *See generally* *Wilson*, 2008 WL 3854963, at *8 (requiring proof of purchase for claims filed for more than 6 boxes of product; and resolving objector's concern that fraudulent claims may be filed for less than 6 boxes, which did not require purchase receipt).

*In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013), cited by the objectors, is inapposite. There, the issue was a large *cy pres* distribution and the district court's lack of information to assess what distribution was actually **\*26** going to class members versus *cy pres* beneficiaries. *Id.* at 170, 175-76. [15] Here, the Settlement does not provide for *cy pres* distribution, but *pro rata* distribution to claimants. Appx.69-70a. The Third Circuit's concern that "direct distributions to the class are preferred over *cy pres* distributions" is not implicated. *Id.* at 173. Neither do Appellants contend that the court suffered from an information failure of the sort in *Baby Products*. They cannot. The court *did* have the information needed to assess fairness, including the number of claims submitted and distribution amounts to claimants. Appx.411-12a. Moreover, "there is a well-established remedy that any class member may elect to preserve what he believes to be a claim worth more than what he may receive under the settlement - opt out." *Marshall*, 787 F.3d at 520.

Lopez's argument that the proof-of-purchase requirement was such an "unreasonable expectation of document retention" as to "discourage[] claims to an unreasonable degree," Lopez Br.20, is unfounded. The claim requirements in the case he cites, *DeLeon v. Bank of America, N.A. (USA)*, 6:09-CV-1251-ORL-28, 2012 WL 2568142 (M.D. Fla. Apr. 20, 2012), were much afield of those here. There, class members alleging breach of a "credit upon receipt" provision in a **\*27** cardholder agreement were account-holders during a seven-month window in 2005-2006. *Id.* at *1-2. The settlement required specific details regarding those accounts "5 1/2 to 7 years [later]," which they were unlikely to recall or have documents to establish. *Id.* at *19. Here, class members could make claims pertaining to purchases at any point through the Preliminary Approval Date of December 18, 2015. *See* Appx.238-39a (class definition). Those without documentation had simply to provide information about product type, location of purchase, and purchase amount without itemization. Appx.68a. Class members *also* were advised how to obtain proof of purchase. *See supra*, note 5. Lopez himself, although a loyalty program member, never attempted to do so. Pls.Appx.333-34. [16] One thing is certain: fewer class members will have proofs of purchase a year or two hence so rejecting the settlement and sending the case to trial will not make them better off.

### 2. The claim rate does not indicate unfairness.

Lopez also contends, in various iterations, that the claim rate indicates unfairness. It does not.

A claim rate might be of concern with reversionary settlements as an indicator of potential collusion. *De Leon*, 2012 WL 2568142, at *14; *see also* **\*28** *id.* at *15 ("it is likely that a substantial portion of the settlement amount will revert to Defendant" suggesting "that the stated settlement amount was negotiated to maximize the amount of fees . . . while giving Defendant comfort that it would, in all likelihood, never pay the full $10,000,000 to settle this case."). Reversionary clauses can "leave it difficult

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC Document 14555-4 Filed 02/04/22 Page 17 of 31

to ascertain precisely what the defendant will pay in exchange for resolving the class's claims." *Small v. Target Corp.*, 53 F. Supp. 3d 1141, 1143 (D. Minn. 2014). That is not the case here as there is no reversion to Blue Buffalo.

Nor is there cause for concern over adequacy of the notice program, which was robust. Appx.405-11a. There is no basis to suggest that the Settlement, the claims procedure, or the notice were in any way designed to discourage class participation. There was no reason to do so as Blue Buffalo receives nothing back. Only Lopez questions adequacy of the notice, urging that the *pro rata* increase disclosure was "legalese." Lopez Br.8-9, 19. Given that he did not review notice documents before signing off on pre-prepared objections, *supra* note 16, it is unsurprising that Lopez did not raise this argument below. Appx.248-55a. He

may not raise it now. *Solomon v. Petray*, 795 F.3d 777, 791 (8th Cir. 2015); *Silvercreek*, 534 F.3d at 473; *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 38 (1st Cir. 2009) (objection raised at preliminary but not final approval hearing waived on appeal). Even if considered, this argument is **\*29** meritless. Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Wireless*, 2004 WL 3671053, at \*8 (quoting *Petrovic*, 200 F.3d at 115). If the *pro rata* increase language is as unenlightening as Lopez says (it is not), any objector, including Lopez, could have objected on that basis.

Lopez's contention that the settlement "provides no recovery for most of the class" (Br.2, 21) is simply wrong, as perhaps best illustrated by his own citation to *Date v. Sony Electronics Inc.*, 07-15474, 2009 WL 435289 (E.D. Mich. 2009). There, class members were television owners. Plaintiffs alleged that Sony represented that the televisions were capable of 1080p native resolution when they were not. *Id.* at \*1. The televisions remained incapable of the promised native resolution, *id.* at \*5, and the settlement offered cash to "[o]nly those very few Settlement Class members" who had complained specifically about the 1080p input. *Id.* at \*4. The other option was e-credit redeemable at Sony's on-line store. As to those who already had purchased a 1080p device (*e.g.*, Blu-ray Disc Player), the e-credit was like a coupon "to induce a consumer to buy [more] products." *Id.* at \*14. Others were required to purchase a Sony Blu-Ray Disc Player costing more than the e-credits were worth. *Id.* at \*4-5. Thus, the settlement would not compensate many class members at all. *Id.* at \*12. The relief here is not a coupon. **\*30** And there is no disconnect between injury and settlement relief. Blue Buffalo is alleged to have charged a price premium based on its misrepresented TRUE BLUE PROMISE. Appx.165a. All class members are provided cash relief addressing that injury. As Lopez tacitly concedes, availability of that relief is a benefit to all class members whether they chose to exercise their right to

claim it or not. Lopez Br.21; *see Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) (benefit to class members includes the "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it").

Lopez's argument that the claims rate "weighs against approval," Lopez Br.23, also is wrong. In considering fairness, courts look to "the amount of *opposition* to the settlement." *Marshall*, 787 F.3d at 508 (emphasis added) (quoting *In re Uponor*, 716 F.3d at 1063). A claims rate is simply not a measure of opposition, which rather, is expressed by opt-out or objection. *Id.* at 513. Here, the very small number of objectors and opt-outs favors settlement. Appx.577a, 704a, 729-30a; *see also DeBoer*, 64 F.3d at 1178 ("The fact that only a handful of class members objected to the settlement . . . weighs in its favor."); *In re Uponor*, 2012 WL 2512750, at \*8 (twenty-six objectors out of class of approximately 30,000 represented "only token" opposition to settlement).

Finally, even if the claim rate were relevant (it is not), a 3% claims rate is hardly unusual and by no means indicative of unfairness.

*See, e.g., Sullivan v. DB* **\*31** *Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (claims rates in consumer class action settlements "rarely" exceed 7% "even with the most extensive notice campaigns"); *Montoya v. PNC Bank, N.A.*, 14-20474-CIV-GOODMAN, 2016 WL 1529902, at \*22 (S.D. Fla. Apr. 13, 2016) ("class settlements featuring low claims rates are routinely approved") (citing *Poertner v. Gillette Co.*, 618 F. App'x 624, 629 (11th Cir. 2015) (approving settlement class when less than 1% filed claims); *Lee v. Ocwen Loan Servicing, LLC*, 14-CV-60649, 2015 WL 5449813, at \*22 (S.D. Fla. Sept. 14, 2015) ("there is nothing inherently unfair about a single-digit claims rate in a class settlement"), *judgment entered*, 14-CV-60649, 2015 WL 11170648 (S.D. Fla. Sept. 14, 2015); *In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 468 n.134 (C.D. Cal. 2014) ("a three percent claims filing rate appears to be appropriate"); *Moore v. Verizon Comm's Inc.*, C 09-1823 SBA, 2013 WL 4610764, at \*8, 15 (N.D. Cal. Aug. 28, 2013) (approving settlement

Case 3:16-md-02741-VC Document 14555-4 Filed 02/04/22 Page 18 of 31

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

where 3% of class members submitted claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377-78, 1384 (S.D. Fla. 2007) (approving settlement where 1.1% of class members filed claims).

### D. The District Court was Not Required to Allocate the Settlement to Account for Differences in State Consumer Protection Statutes.

Nadola complains that equal distribution among class members is unfair and the court should have "account[ed] for the varying strengths of different states' unfair trade practices statutes." Nadola Br.7. As an initial matter, Nadola makes **\*32** no attempt to demonstrate her own standing for the argument she asserts, [17] offering no analysis to establish that she is better positioned than other class members. Nadola's objection below was wholly generic. Nadola Addm.3. Only when later opposing Plaintiffs' appeal bond motion did Nadola offer information suggesting what state consumer acts might apply to her. *See* Pls.Appx.738-40 (stating she purchased products in Pennsylvania and New Jersey). Even then, Nadola provided no analysis suggesting that her own claims are comparatively stronger, entitling her to a higher relative distribution. [18] She provides no such analysis now.

Nadola's position is akin to objectors in *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005), a case she cites, in which the parties presented a distribution plan accounting for state differences respecting recognition of indirect purchaser **\*33** claims. *Id.* at 75-76. As the court observed, objectors in states not recognizing such claims had no complaint as "[t]he decision to cut them a slice of the [settlement] pie at all [wa]s borne out of [the defendant]'s unwillingness to bargain for less than a global settlement nationwide as well as the inherent vicissitudes of litigation." *Id.* at 76. The one objector in a state that did recognize such claims made "no developed argument . . . concerning how she has been actually shortchanged" and her objection was rejected. *Id*. Having similarly failed to develop her argument, Nadola has waived it. *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1075 (8th Cir. 2016) (appellant who failed to develop argument waived it); *Rotskoff v. Cooley*, 438 F.3d 852, 854 (8th Cir. 2006) (same).

Even if considered, Nadola's argument is meritless. None of the cases she cites stand for the proposition that a court must account for state law differences in assessing settlement. In each, the allocation plan was proposed by the parties. *In re Cathode Ray Tube (Crt) Antitrust Litigation*, 3:07-CV-5944 JST, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) is a Special Master Report that simply evaluates the allocation plan presented. *Id.* at \*21. The court in *In re New Motor Vehicles Canadian Export Antitrust Litigation*, MDL 1532, 2011 WL 1398485 (D. Me. Apr. 13, 2011) also considered an allocation plan proposed by the parties. *Id.* at \*1, 6. The court had issued decisions narrowing "the viable chronological period, and certain states were singled out as having no hope of recovery." *Id.* at \*4. The **\*34** proposed allocation reflected plaintiffs' earlier losses and allowed monetary compensation only to purchasers in certain states. *Id.* at \*4-6. Here, the Settlement allows cash recovery to all class members timely submitting valid claims. In *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008), the allocation, also proposed by the parties, categorized class members according to who suffered injury and who did not. *Id.* at 1039, 1045. Nadola does not suggest that any class member here was uninjured.

Nadola devotes much attention to *Rougvie v. Ascena Retail Group, Inc.*, CV 15-724, 2016 WL 4111320 (E.D. Pa. July 29, 2016), in which the parties' proposed plan tied allocation to recovery authorized by class members' home-state consumer protection statutes. *Id.* at \*4. Nadola limits discussion - and citation - to the parties' *briefing* in that case. Nadola Br.7-8. The court's actual decision does not aid her. Its first observation that the proposed allocation accounted for state-law differences was in the context of rejecting a Rule 23 objection to certification of a single nationwide class. *See id.* at \*15 n.71 (citing *Sullivan*, 667 F.3d at 327, holding that a court is not required to differentiate among class members "based on the strength or weakness of the theories of recovery."). Nadola did not and does not object "that the class could not be certified." Nadola Br.2. [19] In considering **\*35** fairness of the settlement, the *Rougvie* court, while noting that the settlement provided higher awards for residents of states allowing treble damages, recognized that "[r]ecovery of such damages is purely speculative" and "need not be taken into account when calculating the reasonable range of recovery." 2016 WL 4111320, at \*22.

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 19 of 31

In this circuit, courts do not reach merits-related conclusions when assessing settlement. *Grunin*, 513 F.2d at 123-25. In addition, the court's obligation is "to evaluate the plaintiffs' *case* in its entirety rather than on a claim-by-claim basis." *Marshall*, 787 F.3d at 517 (internal quotation omitted). "[T]he practical reality [is] that 'a class action *settlement* necessarily reflects the parties' pre-trial assessment as to the potential recovery of the entire class, with all of its class members' varying claims.'" *Id.* at 520 (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012)). Further, any class member, including Nadola, could have opted out and "chosen to pursue their claims separately under various state laws." *Khoday v. Symantec Corp.*, 11-CV-180 (JRT/TNL), 2016 WL 1637039, at *15 (D. Minn. Apr. 5, 2016) (internal quotation and alterations omitted), *report and* **\*36** *recommendation adopted*, 11-CV-0180 (JRT/TNL), 2016 WL 1626836 (D. Minn. Apr. 22, 2016); *accord Marshall*, 787 F.3d at 520.

To the extent Nadola criticizes release of state-law claims, that argument also lacks merit. "[T]o deny a nationwide class action settlement the ability to release related state law claims . . . could undermine the efficiency of class actions." *Brown v. Wells Fargo Bank, N.A.*, 25 F. Supp. 3d 144, 151 (D.D.C. 2014). "[T]he laws of different states in the area of consumer protection will always vary to some degree, but federal policy favors class actions and settlements which resolve issues with as few separate actions as practicable." *Id.*; *see also In re Wireless*, 2004 WL 3671053, at *15 ("Variations from state-to-state in the form of state law claims would always prevent a nationwide settlement, thereby defeating the efficiencies of the class action settlement mechanism."). Nadola's argument should be rejected.

## II. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN AWARDING ATTORNEYS' FEES.

The court awarded a total $8 million in fees and expenses, representing 25% of the $32 million settlement fund (the fee portion representing 24.5%). Appx.654a, 710a. The court also cross-checked the percentage under a lodestar analysis, finding the hours and rates reasonable, and the resulting multiplier of 2.7 in line with multipliers in other cases. Appx.711a.

**\*37** "The decision to award or deny attorneys' fees rests within the sound discretion of the district court." *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 871 (8th Cir. 2014). Accordingly, this Court "will not disturb the district court's decision absent a clear abuse of that discretion." *Wescott Agri-Products, Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1094 (8th Cir. 2012) (internal quotation and alteration omitted). [20] McCoy, Sibley, and Lopez challenge the fee award on various bases, none of which demonstrate an abuse of discretion.

### A. The Award is Reasonable as a Percentage of the Fund.

McCoy incorrectly asserts that the lodestar is the "starting point" for any fee award. McCoy Br.10. It is beyond dispute that the percentage-of-fund method is proper, and indeed is preferred, in common fund cases. *See Petrovic* 200 F.3d at 1157 (approving percentage method); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 245 (8th Cir. 1996) (lodestar method recommended in statutory fee-shifting cases, but percentage method recommended in common fund cases) (citing Report of Third Circuit Task Force, **\*38** *Court Awarded Attorney Fees*, 108 F.R.D. 237, 246-49 (1986)); *Barfield v. Sho-Me Power Elec. Co-op.*, 2:11-CV-4321NKL, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015) ("where attorney fees and class members' benefits are distributed from one fund, a percentage-of-the-benefit method may be preferable to the lodestar method for determining reasonable fees"); *West v. PSS World Med., Inc.*, No. 4:13 CV 574 CDP, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014) (same); *In re Chrysler Motors Corp. Overnight Eval. Prog. Litig.*, 736 F. Supp. 1007, 1008-09 (E.D. Mo. 1990) (percentage method "is a more appropriate and efficient means of calculating an attorneys' fee award" than lodestar). [21] Sibley and Lopez acknowledge propriety of the percentage method, Sibley Br.13; Lopez Br.25, but then conspicuously ignore it.

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 20 of 31

As the district court correctly noted, the percentage award here is "less than a lot of cases." Appx.388a. Indeed, "[c]ourts in this circuit . . . have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund." Appx.710a, quoting *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 WL 5547159, at *1 (N.D. Iowa Nov. 9, 2011). "Higher awards of one-third are common." Appx.711a, citing *In re Charter Commc'ns Inc., Sec. Litig.*, 4:02-CV-1186 CAS, **\*39** 2005 WL 4045741, at *21 (E.D. Mo. June 30, 2005).[22] A one-third award is consistent with prevailing contingency fee rates in private litigation. *See* *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) ("reasonable, paying clients typically pay one-third of their recoveries under private retainer agreements") (internal quotation and alterations omitted).[23]

None of the objectors actually contend that the percentage fee here (24.5%) is excessive. Instead, they focus on the resulting 2.7 lodestar multiplier, **\*40** contending for various reasons that it is too high. Sibley Br.2, 10, 12; McCoy Br.3, 11; Lopez Br.4, 24-25. These criticisms are meritless.

### B. The Lodestar Cross-Check Confirms that the Fee is Reasonable.

McCoy complains that "careful scrutiny of the affidavits and billing statements provided by class counsel could have yielded a significant fee reduction." McCoy Br.11. She proceeds from the misperception that a lodestar analysis is both mandatory and demanding of detailed review of billing records. To the contrary, a lodestar analysis is not required but *may* be used as a crosscheck. *See* *Petrovic*, 200 F.3d at 1157 (lodestar approach is "sometimes warranted to double-check the result of the 'percentage of the fund' method"). Even as a principal means of calculation in fee-shifting cases, the goal of a lodestar analysis is "not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). In common fund cases, the court may rely on summaries and declarations. *Genetically Modified Rice*, 764 F.3d at 871; *see also In re NuvaRing Prods. Liab. Litig.*, 4:08 MDL 1964 RWS, 2014 WL 7271959, at *4 (E.D. Mo. Dec. 18, 2014) (court performing lodestar cross-check "need not scrutinize each time entry; reliance on representation by class counsel as to total hours may be sufficient"). Not only is McCoy's starting premise incorrect, she gives no basis for her suggestion that the court did not carefully scrutinize the information provided. To the contrary, Class Counsel provided a detail of the work performed, hours **\*41** incurred, and billing rates. Appx.658-60a. The court found "the information submitted pertaining to lodestar hours and rates to be sufficient, [and] the hours and rates to be reasonable." Appx.711a. No objector challenges that finding.

As to the 2.7 multiplier resulting from the cross-check, Sibley complains, without analysis, that the results achieved are "not so exceptional" as to justify it, Sibley Br.2, 10, 12, while McCoy complains about the "level of success" vis-à-vis "undocumented" class members, McCoy Br. 11-12, and Lopez proposes that the multiplier be lower based on single citation to another pet food case, and the claim rate. Lopez Br.25, 26. As an initial observation, the award can and should be affirmed on the percentage method without the discretionary lodestar cross-check. *Petrovic*, 200 F.3d at 1157. The objectors appear to advocate for analysis *apropos* to statutory fee-shifting cases. *See* McCoy Br.11-12 (citing *Hensley*, 461 U.S. at 434, 436).[24] Lopez goes so far as to suggest that the award be limited to the lodestar alone, Lopez Br.24, contrary to the jurisprudence in this circuit. *See* *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 997 (D. Minn. 2005) (rejecting argument that fee be limited to hourly rate where **\*42** percentage method approved in this circuit). In any case, no objector demonstrates that the multiplier is excessive. It is not. A 2.7 multiplier is well within range of multipliers customarily approved. *See* *id.* at 999 (collecting cases and approving 4.7 multiplier); *In re Charter Communications*, 2005 WL 4045741, at *18 (multiplier of 5.61 "falls within the range of multipliers found reasonable for crosscheck purposes by courts in other similar actions"). Lopez takes issue with these and other cases Plaintiffs cited below as not "comparable," Lopez Br.27, but the lodestar cross-check is not an exercise in case-to-case precision. *See, e.g.*, *In re Xcel*, 364 F. Supp. 2d at 996-97 (observing that cases awarding more or less than 25% or below and above the 3.0 multiplier proposed by objectors "merely reflects the considerable

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 21 of 31

discretion" exercised by court in awarding fees). The multiplier "need not fall within any pre-defined range." *Id.* at 999. The court here found that applicable factors support the award and a 2.7 multiplier is well within reasonable range. *See* Newberg on Class Actions §14.6 (4th ed.) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied."). [25]

**\*43** Lopez cites *In re Pet Food Products Liability Litigation*, MDL No. 1850, 2008 WL 4937632 (D.N.J. Nov. 18, 2008), implying that the court there awarded a 25% fee only after a lodestar cross-check and finding a "multiplier of less than 1.2 reasonable." Lopez Br.27. But there was no reduction of percentage or multiplier; rather, the 1.17 multiplier approved was the one requested. *Pet Food*, 2008 WL 4937632, at \*23. The court found merely that it was within reasonable range. Indeed, it was on the low end. *See id.* (citing *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 737 n.22 (3d Cir. 2001) (collecting cases with multipliers of 1.25-3.25) and *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 497 (E.D. Pa. 2003) (multipliers range between 1 and 4)). The court otherwise held that 25% to lead counsel (and even adding 6% to other counsel for a total 31%) was reasonable. *Id.* at \*24. *Pet Food* in no way compels, or even suggests, a conclusion that the fee award here was an abuse of discretion.

Lopez's other criticisms are as hollow. He cites *Eastwood v. Southern Farm Bureau Casualty Insurance Co.*, 3:11-CV-03075, 2014 WL 4987421 (W.D. Ark. Oct. 7, 2014), and *Simon*, 2010 WL 1757956, in an effort to support an argument that the claims rate warrants a reduced fee award. Lopez Br.25. These cases are inapposite. The *Eastwood* court's concern was that "nearly half of the common fund" reverted to the defendant. 2014 WL 4987421, at \*7. As a result, it opted for the lodestar method. *Id.* The opinion does not indicate that the court considered **\*44** multiplier or claims rate in its lodestar analysis. In *Simon,* the settlement gave class members a choice between voucher or replacement motherboard, and the court similarly elected a lodestar method. 2010 WL 1757956, at \*2-3; *but see Chu v. Wells Fargo Invs., LLC*, C-05-4526-MHP, 2011 WL 672645, at \*4-5 (N.D. Cal. Feb. 16, 2011) (electing percentage method where, in contrast to *Simon*, amount of settlement was determinable and without reversion to defendant). Without analysis of any kind, the court imposed a "downward departure" to the requested lodestar based on what it considered a low 2% "response rate." *Simon*, 2010 WL 1757956, at \*4. Research reveals that *Simon* has not been cited for that proposition by any other court, and a claim rate is not among the factors approved in this circuit for fee awards in common fund cases (discussed *infra*, Section II C). [26] While there may be debate on whether a claim rate is pertinent where there is no fund (as in, for example, voucher settlements) or a reversion gives unclaimed funds back to the defendant, [27] this case does not present those scenarios.

**\*45** McCoy's citation to *Baby Products,* 708 F.3d 163, is similarly misplaced. First, unlike in *Baby Products*, the Settlement here does not entail a dedicated *cy pres* distribution; rather, unclaimed funds are distributed to class members through *pro rata* increase. Appx.69a. Second, even faced with a large *cy pres* distribution, the Third Circuit rejected *per se* elimination or discount of that distribution for purposes of a percentage fee calculation:

> There are a variety of reasons that settlement funds may remain even after an exhaustive claims process - including if the class members' individual damages are simply too small to motivate them to submit claims. Class counsel should not be penalized for these or other legitimate reasons unrelated to the quality of representation they provided.

Case 3:16-md-02741-VC  Document 14555-4  Filed 02/04/22  Page 22 of 31

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

*Baby Products*, 708 F.3d at 178. Rather, it adopted a case-by-case approach, "providing courts discretion to determine whether to decrease attorneys' fees" when there is "reason to believe that counsel has not met its responsibility to seek **\*46** an award that adequately prioritizes direct benefit to the class." *Id.* at 178-79. There is no basis for such a belief here.

### C. The District Court Properly Considered Applicable Factors.

The fee award is supported by appropriate factors. This Court has approved "the guidelines for determining attorneys' fees set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974)." *Hardman v. Bd. of Educ.*, 714 F.2d 823, 825 (8th Cir. 1983); *see also Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 944 n.3 (8th Cir. 2007) (listing the twelve *Johnson* factors). Sibley and McCoy contend the record does not adequately document the court's consideration of these factors, Sibley Br.14; McCoy Br.11, but clearly it does. Plaintiffs' briefing addressed at least eight of the twelve possible factors, pointing to the excellent results achieved, undesirability and risks involved, complexity, experience, reputation and ability of counsel, contingent nature of the fee, customary fee by percentage and hourly rate, and awards in similar cases. Appx.620-21a, 625-30a. The court explicitly stated that it "reviewed all factors relevant to the award of an attorneys' fee, including the novelty and difficulty of questions presented, the contingent nature of the action and the result obtained on behalf of the Class," and considered awards in other cases. Appx.710a; Pls.Appx.177-78. It otherwise recognized Class Counsel's "significant experience" in prosecuting class actions and complex cases, Appx.702a, and found **\*47** the *Johnson* factors "supportive of the fee requested." Appx.711a (citing *Allen* 475 F.3d at 944 n.3). The court plainly fulfilled its responsibility to "provid[e] a concise but clear explanation of its reasons for the fee award." *Hardman*, 714 F.2d at 825 (quoting *Hensley*, 461 U.S. at 437). To the extent those objectors complain that not all factors were discussed, Sibley Br.14, "[n]ot all of the factors apply in every case, and the Court has broad discretion to determine which factors are relevant and the weight to assign those factors." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 628 (S.D. Iowa 2016); *see also Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010); (some factors overlap and not all apply in every case); *In re Xcel*, 364 F. Supp. 2d at 993 (considering seven factors) (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993) ("[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation")). [28]

Lopez again disputes complexity of this case, Lopez Br.23, but his bald characterization is inaccurate. The case is certainly not simple, involving nationwide class claims, multiple state claims, liability, certification, and damages **\*48** issues, and complicating third-party claims. Lopez wholly ignores risks attendant to certification, trial, and appeal, as well as the assessment of Plaintiffs' counsel who sit in far better position to judge the merits/risks of litigation against settlement. The Settlement is a good one, securing immediate, meaningful relief. *See, e.g.*, *Khoday*, 2016 WL 1637039, at \*9 ("By itself, the cash settlement is beneficial to the class, but weighed against the inherent risks of trial . . . [it]provides a substantial and immediate benefit to the class."). And the fee award is a modest one. Even in cases considered not exceptionally complex, awards of higher than 25%, and multipliers higher than 2.7, have been approved. *E.g.*, *Hendricks v. Starkist Co.*, 13-CV-00729-HSG, 2016 WL 5462423, at \*11 (N.D. Cal. Sept. 29, 2016) (finding that case did not involve particularly complex legal issues or require exceptional skill, but approving 30% award); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) (approving multiplier of 3.0 in litigation involving technical violations and limited discovery); *see also Saint v. BMW of N. Am., LLC*, 12-6105(CCC), 2015 WL 2448846, at \*16 (D.N.J. May 21, 2015) ("The Third Circuit recently noted that it has 'approved a multiple of 2.99 in a relatively simple case.' ") (quoting *Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131, 135 (3d Cir. 2011) (while "the lodestar multiplier need not fall within any pre-defined range, we have approved a multiplier of 2.99 in a relatively simple case") (internal quotation and citations omitted).

**\*49** As to objectors who suggest that the case settled too fast, McCoy Br.7, efficiency should be rewarded, not punished. *See, e.g.*, *In re Charter Commc'ns*, 2005 WL 4045741, at \*21 (noting with approval that "[t]his is the type of complex litigation that easily could have dragged on for several more years. Instead, it had a relatively short stay . . . because counsel litigated

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 23 of 31

the case efficiently and inexpensively."). Indeed, the perception that counsel will drag out litigation to amass billable hours is one of the criticisms of the lodestar method. *Court Awarded Attorney Fees*, 108 F.R.D. at 248; *see also* In re Xcel, 364 F. Supp. 2d at 992 ("[O]ne of the primary advantages of the [percentage of recovery] is that it is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner.") (second alteration original; internal quotation omitted). Here, the fee awarded as a percentage of the fund, and cross-checked against the lodestar, is well within the court's discretion.

### D. The District Court Appropriately Calculated the Percentage Fee on the Gross Settlement Amount.

Sibley and Lopez urge that the percentage should be calculated on the settlement amount net of administrative costs paid to the claims administrator for notice and administration. Sibley Br.12; Lopez Br.28-29. Courts in this circuit routinely calculate percentage fee awards based on the gross amount. *See Barfield*, 2015 WL 3460346, at *4 ("it is appropriate to base the percentage on the gross **\*50** cash benefits available for class members to claim, plus the additional benefits conferred on the class," including defendant's payment of administrative expenses); *West*, 2014 WL 1648741, at *1 (appropriate to apply percentage to gross settlement fund); *Knutson v. Sprint Commc'ns Co., L.P.*, 4:11-cv-04041-KES, 2013 WL 2490644, at *2 (D.S.D. June 10, 2013); *9-M Corp. v. Sprint Commc'ns Co. L.P.*, 11-3401 (DWF/JSM), 2012 WL 5495905, at *2 (D. Minn. Nov. 12, 2012).[29] Ultimately, it should be within the court's discretion as to whether administrative expenses are included. *See* 2 McLaughlin on Class Actions § 6:24 (13th ed.) ("Ordinarily, it is within the trial court's discretion to make its fee calculations based on the total settlement fund figure, including notice and administrative costs, and litigation expenses."); *see also* In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 953 (9th Cir. 2015) (no abuse of discretion in calculating fee as percentage of settlement fund, including administrative costs and litigation expenses); Staton v. Boeing Co., 327 F.3d 938, 975 (9th Cir. 2003) (choice to base fee award on net or gross recovery immaterial so long as end result is reasonable); Waters, 190 F.3d at 1298 (court may base fee award on actual class recovery or gross settlement; factors vary according to circumstances).

**\*51** Sibley cites nothing in support of his contention, Sibley Br.12, and Lopez relies on distinguishable Seventh Circuit cases. Lopez Br.28-30. Redman v. RadioShack Corp., 768 F.3d 622 (7th Cir. 2014), was a coupon settlement, while Pearson v. NBTY, Inc., 772 F.3d 778 (7th Cir. 2014), was a "claims made" settlement in which the lower court based a fee percentage award on a much higher estimated payout than occurred. In the course of these decisions involving questionable fund value, the Court expressed its view that administrative costs were not a benefit to the class, *Pearson*, 772 F.3d at 781; *Redman*, 768 F.3d at 630, but that viewpoint is not prevailing and certainly is subject to disagreement.[30] As the Ninth Circuit recognized, costs such as post-settlement notice "can reasonably be considered a benefit to the class" and thus it is reasonable to include them "in a putative common fund benefiting the plaintiffs for all purposes, including the calculation of attorneys' fees." *Staton*, 327 F.3d at 975; *see also, e.g., Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 717-18 (W.D. Pa. 2015) ("What the [*Pearson*] court appears to have overlooked is that, absent some agreement by the defendant to cover such [administrative] costs, the *costs* necessarily would be subtracted from the recovery actually made available to class members. The absorption of these costs by the defendant clearly adds to the settlement's value **\*52** and this value inures to the class."); In re Pool Prods. Distribution Mkt. Antitrust Litig., MDL 2328, 2015 WL 4528880, at *17 (E.D. La. July 27, 2015) ("Without sufficient notice and successful administration, class members would be unaware of their claims and unable to collect the monetary awards to which they are entitled").[31]

Lopez's advocacy of a *per se* rule is contrary to this Court's consistent position that fee matters are committed to the district court's discretion. Genetically Modified Rice, 764 F.3d at 871; Wescott, 682 F.3d at 1094; Young v. City of Little Rock, 249 F.3d 730, 737 (8th Cir. 2001). Moreover, inclusion of administrative expenses here does not "make class counsel's proposed fee appear smaller in relation to the total settlement." Redman, 768 F.3d at 630. Indeed, if the $1.4 million administrative

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 24 of 31

expense were excluded as Lopez and Sibley advocate, fees of $7,847,946 (*see* Appx.654a) are 25.6% of the net $30,600,000 fund (or 26% if both fees and expenses totaling $8M are considered), which still is well within normal range.

**\*53   E. Class Members had Fair Opportunity to Object to the Fee Request.**

Sibley also argues that class members were denied fair opportunity to object to the fee request because the deadline for objection was before the fee application. Sibley relies on a *per se* timing rule adopted in *In re Mercury Interactive Corp. Securities Litigation,* 618 F.3d 988, 995 (9th Cir. 2010) and *Redman,* 768 F.3d at 637-38, an approach that has been rejected by other courts. *See, e.g., In re CertainTeed Fiber Cement Siding Litig.,* 303 F.R.D. 199, 222 (E.D. Pa. 2014) (although fee motion was filed after deadline for objections, class members were provided reasonable notice of class counsel's fee request sufficient to satisfy due process); *Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 699 (S.D. Fla. 2014) (*Mercury* rule is "not universal;" holding that notice sent to class members complied with Rule 23(h) and due process). The Second Circuit has rejected the *per se* ruling of *Mercury* and *Redman,* finding notice of the fee request reasonable under the circumstances and sufficient to satisfy due process. *Cassese v. Williams,* 503 F. App'x 55, 57 (2d Cir. 2012) (unpub.), *cert. denied sub nom. Komar v. Cassese,* 133 S. Ct. 2023 (2013). [32]

**\*54**   Here, notice to class members disclosed the settlement fund amount of $32 million and stated that fees of not more than $8 million (25%) would be requested. Appx.405-11a, 441-42a, 444a. Notice through the preliminary approval motion expressly stated that "Class Counsel will petition the Court for an award of attorneys' fees, costs and expenses not to exceed 25% of the total $32 million value of the Settlement Fund." Pls.Appx.094; *see also* Appx.410a. The fee/expense amount requested was disclosed. Appx.601-07a. Based on the notice, well in advance of the objection deadline and fairness hearing, objectors could, and some - including Sibley - did, object to a 25% fee. Sibley Addm.17-20. They had fair opportunity to do so. *See In re Bisys Sec. Litig.,* 04 Civ. 3840(JSR), 2007 WL 2049726, at \*1 (S.D.N.Y. July 16, 2007) (rejecting Rule 23(h) argument where "members of the class were plainly on notice that the attorneys' fees might be as much as one-third of the fund and so had every reason to raise an objection if they thought this was excessive"). [33]

**\*55**   While Sibley bemoans an inability to "critique[] . . . the specific work done by counsel," Sibley Br.18, he had that opportunity. On May 18, 2016, five days *after* the fee application and supporting materials were filed, Appx.601-62a, Sibley submitted a supplemental objection. Sibley Addm.22-24. Other than timing, he made no argument respecting the fee application. *Id.* Sibley also could have voiced concerns at the fairness hearing, which he failed to attend. Even now, aside from non-meritorious complaints about the multiplier, Sibley articulates no argument specific to the fee application, and affirmatively indicates that his sole complaint is timing. *See* Sibley Br.18 ("To be clear, Sibley is complaining of the [district court's schedule]."). Sibley does *not* suggest that he would have requested, or properly could have obtained, billing records, and while implying some hypothetical class member's interest in "conduct[ing] discovery," *id.* at 19, such is neither required nor encouraged. *See Cassese,* 503 F. App'x at 58 ("we are aware of no authority holding that class counsel must open its books to objectors for inspection"); *accord Genetically Modified Rice,* 764 F.3d at 872 ("discovery in connection with fee motions is rarely permitted").

Rule 23 does not by its terms require that a fee motion precede the objection deadline in class settlements. Rule 23(e) addresses settlements, providing that the **\*56**  "procedures [applicable] to a proposed settlement" require only "notice in a reasonable manner to all class members." Fed. R. Civ. P. 23(e)(1). Rule 23(h) applies to attorneys' fees and costs "[i]n a certified class action," providing that "[a] claim for an award must be made by motion under Rule 54(d)(2)," which is filed "no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i)-(iv). Rule 23(e) does not refer to Rule 54, or

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC  Document 14555-4  Filed 02/04/22  Page 25 of 31

call for any particular content of the notice. Rule 23(h)(1), as might apply to classes certified in final judgment combined with settlement approval, incorporates Rule 54 provisions that a fee motion "state the amount sought or provide a fair estimate of it." Fed. R. Civ. P. 54(d)(2)(B)(iii). Thus, a proposed settlement notice advising that class counsel will seek a disclosed fee, with opportunity to object, satisfies Rules 23(e) and (h).

The Advisory Committee notes contemplate that settlement might be "proposed for Rule 23(e) approval, either after certification or with request for certification," and that "notice to class members about class counsel's fee motion would ordinarily accompany the notice to the class about the settlement proposal itself." Fed. R. Civ. P. 23(h) advisory committee note to 2003 amendment. According to the Committee, provisions of Rule 23(h)(1) "control disposition of fee motions in class actions, while Rule 54(d)(2) applies to matters not addressed in this subdivision." Fed. R. Civ. P. 23(h)(1) advisory committee's note to 2003 amendment. The Committee states that the court should require filing "of at least **\*57** the *initial motion* in time for inclusion of information *about the motion* in the notice to the class." *Id.* (emphasis added). Reasonably read, this refers to the motion to preliminarily approve settlement (as, among other things, the rules do not require an "initial" and "final" fee motion). Class Counsel *did* provide information pertaining to the fee request in its preliminary approval papers, included in notice to the class. Pls.Appx.094; Appx.410a. *E.g., Cromeans*, 2015 WL 5785576, at \*2-3 ("Class Members were advised in the Notice of Class Action Settlement . . . that Class Counsel intended to move for an award of attorney's fees of up to one-third of the gross Settlement Fund . . . Class Counsel have now moved for an award of attorney's fees in the amount of one-third of the Settlement Fund").

Even if this Court agrees with *Mercury* and *Redman*, reversal is unwarranted. To be reversible, errors must affect the outcome. *Acuity v. Johnson*, 776 F.3d 588, 596 (8th Cir. 2015); *Lowe v. Taylor Steel Prods. Co.*, 373 F.2d 65, 68 (8th Cir. 1967); *see also Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 404 (8th Cir. 1985) ("A reviewing court has the duty to determine whether errors alleged are harmless"). Here, the fee award is supported by the percentage-of-fund method and lodestar cross-check. As to the lodestar, the court found the hours and rates reasonable, and the 2.7 multiplier "in line with multipliers used in other cases." Appx.711a. Sibley has identified no meritorious objection that either he or any other class member would or could have made had **\*58** the full fee application been earlier filed. Accordingly, error if any was harmless. *See In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, MDL 08-1999, 2010 WL 4386552, at \*2 (E.D. Wis. Oct. 28, 2010) (setting date for fee application after objection date, even if error, was harmless). Remand not only would not change the result but would raise potential issues including unanticipated second notice costs and reduction of the fund.

## CONCLUSION

For all these reasons, the orders below approving the settlement and awarding attorneys' fees and expenses should be affirmed.

**\*59** Respectfully Submitted,

*/s/ Gretchen Garrison*

Gray, Ritter & Graham, P.C.

Don M. Downing #30405MO

Gretchen Garrison #33963MO

701 Market Street, Suite 800

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

St. Louis, MO 63101-1826

P. (314) 241-5620

F. (314) 241-4140

ddowning@grgpc.com

ggarrison@grgpc.com

Member of Plaintiffs' Executive Committee

Scott A. Kamber (SK-5794, SDNY)

KamberLaw LLC

100 Wall Street 23rd floor

New York, NY 10005

P. (212) 920-3072

F. (212) 202-6364

skamber@kamberlaw.com

Deborah Kravitz, #275661CA

KamberLaw LLP

401 Center St., Suite 111

Healdsburg, CA

P. (707) 820-4247

F. (212) 202-6364

dkravitz@kamberlaw.com

Class Counsel and Chair of the Plaintiffs' Executive Committee

Bursor & Fisher, P.A.

Joseph I. Marchese

Frederick J. Klorczyk III

888 Seventh Ave.

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC Document 14555-4 Filed 02/04/22 Page 27 of 31

New York, NY 10019

 **\*60**  P. (646) 837-7410

F. (212) 989-9163

jmarchese@bursor.com

fklorczyk@bursor.com

Steelman, Gaunt & Horsefield

David Steelman, #27334M0

901 N Pine St

Rolla, MO 6540

P. (573) 341-8336

F. (573) 341-8548

dsteelman@steelmanandgaunt.com

Members of Plaintiffs' Executive Committee

John G. Simon, #3523 IMO

The Simon Law Firm, P.C.

800 Market Street, 17th FL

St. Louis, Missouri 63101

P. (314) 241-2929

F. (314) 241-2029

jsimon@simonlawpc.com

Liaison Counsel and Member

Plaintiffs' Executive Committee

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 28 of 31

# Footnotes

1       Appellants Nadola, Sibley and McCoy fail to provide "appropriate references to the record," as required by FRAP 28(a)(6). McCoy's reference to Appellees' memorandum in support of final approval does not fulfill the Rule 28(e) requirement. *Rhoten v. Pase*, 252 F.App'x 211, 214 (10th Cir. 2007) (unpub.).

2       "Pls.Appx." refers to the Appendix filed by Plaintiffs-Appellees. "Appx." refers to the Appendix filed by Appellant Lopez. Addendum citations appear in reference to particular appellants (*e.g.*, "Lopez Addm.5").

3       Counsel leveraged information gleaned from the *Purina* case to Plaintiffs' advantage while pursuing their own discovery and litigation. Appx.314a, 638a.

4       Those timely electing to exclude themselves from the Settlement are neither bound by nor entitled to relief thereunder. Appx.239a.

5       In the past three years, between 70-75% of the products at issue were sold through retailers with loyalty programs, which maintain purchase records. Appx.327a; *see also* Appx.670-71a (citing Blue Buffalo 10-K Report at 42). The website provided information on how to obtain loyalty program purchase information from the largest retailers. *See* Settlement Website, https://www.petfoodsettlement.com (last visited Nov. 28, 2016).

6       100,892 claims were submitted by April 14, 2016, with an additional 4,281 claims submitted through May 9, 2016. Appx.411a.

7       For example, an Option 1 claimant with $100 of eligible purchases, who would have received a baseline payment of $10, will instead receive the full $100 claim, plus an additional approximate $11 *pro rata* increase, for a total of approximately $111. An Option 2 claimant documenting $2,000 of eligible purchases, who would have received a baseline payment of $200, will instead receive the full $2,000 claim, plus an additional approximate $220 *pro rata* increase, for a total of approximately $2,220. The full amount of the $7,700,596.26 of eligible purchases claimed by Option 1 claimants and $12,529,199.72 of eligible purchases claimed by Option 2 claimants (Appx.411a; Pls.Appx.130) will be paid, plus an additional approximate 11% *pro rata* increase to exhaust the $22,600,000 available to Settlement Class Members.

8       Mrs. Sweeney's appeal has been dismissed by this Court for failure to prosecute.

9       *See* Pls.Appx.774. Lopez, McCoy, Sibley, and (now-dismissed) Sweeney all have histories of objecting to class settlements. Pls.Appx.196, 200-08. Lopez's wife, who works at the Bandas Law Firm, solicited him as an objector. Pls.Appx.203-04. His counsel, Christopher Bandas, has been recognized and soundly admonished as a professional objector. *See* Pls.Appx.205-06 (citing cases); Pls.Appx.421-25 (chart detailing objection history). Bandas and others recently were sued in an action alleging RICO claims and abuse of the court system by repeatedly asserting baseless objections to class action settlements. *Edelson PC v. The Bandas Law Firm PC*, 1:16-CV-11057 (N.D. Ill. filed Dec. 5, 2016). Sibley, an attorney, has objected in five other cases. Pls.Appx.207.

10      *Compare In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. 150, 168 (E.D. Pa. 2015) (individual issues of law predominated with regard to a nationwide unjust enrichment claim), *with In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 656 (S.D. Fla. 2012) (certifying class treatment of unjust enrichment claims; certification appropriate even if "different claims or issues are subject to different bodies of law that are not the same in functional content but nonetheless present a limited number of patterns" manageable by sub-classing).

11      For example, while implied warranty is expressly defined by reference to state law, express warranty is not. 15 U.S.C. § 2301(6), (7). However, some cases hold that state law controls both. *See Avram v. Samsung Elecs. Am., Inc.,* CIV. 2:11-6973 KM, 2013 WL 3654090, at *14 (D.N.J. July 11, 2013) (MMWA breach of warranty claims "depend upon" state law). MMWA regulations pertaining to time-period requirements create additional ambiguity. *See Friedman v. Guthy-Renker LLC*, 2:14-CV-06009-ODW, 2015 WL 857800, at *7 (C.D. Cal. Feb. 27, 2015) (discussing 16 C.F.R. §700.3(a)). The word "defect" in 15 U.S.C. §2301(6)(A) is not defined. Some cases hold that product "descriptions" are not warranties, *Astiana v. Dreyer's Grand Ice Cream, Inc.*, C-11-2910 EMC, 2012 WL 2990766, at *3 (N.D. Cal.

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 29 of 31

July 20, 2012), while others hold that representations beyond mere product description state a claim, *Friedman*, 2015 WL 857800, at \*7, as do descriptions of verifiable factual affirmation. *See Ebin v. Kangadis Food Inc.*, 13 CIV. 2311 JSR, 2013 WL 6504547, at \*4 (S.D.N.Y. Dec. 11, 2013) (representation that product was "100% Pure Olive Oil" constituted affirmation of fact and thus constitutes a written warranty).

12    *See also Ko v. Natura Pet Products, Inc.*, C 09-02619 SBA, 2012 WL 3945541, at \*4 (N.D. Cal. Sept. 10, 2012) ("choice-of-law issues may render a potential class unmanageable such that no recovery would be possible without settlement.").

13    *See Silvercreek Mgmt., Inc. v. Banc of Am. Sec., LLC*, 534 F.3d 469, 473 (5th Cir. 2008) (objectors' failure to challenge sufficiency of notice at district court level, as opposed to opt-out process, waived that argument notice on appeal).

14    To the contrary, the Settlement was negotiated at arm's length with no collusion by well-informed counsel and with the assistance of a neutral mediator. Appx.646-48a, 704a; *see, e.g., Zurn Pex*, 2013 WL 716088, at \*4 (no collusion and "settlement discussions were overseen" by magistrate).

15    *See In re LivingSocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 14 (D.D.C. 2013) (in *Baby Products*, "[t]he sheer disproportion between the awards going to claimants and the award going to *cy pres* beneficiaries clearly factored into the Third Circuit's decision," but "[m]ore significantly," its holding was based on a lack of "factual basis necessary" for assessment respecting the amount of compensation to be distributed directly to the class.).

16    Indeed, Lopez never visited the settlement website or looked at settlement notices, but simply "went off what [his] wife" (who works at the Bandas Law Firm) told him, and who also prepared objections and presented them for him to sign. Pls.Appx.360-61, 369-70.

17    Persons not "personally aggrieved" by the judgment under appeal lack standing. *United States v. Northshore Mining Co.*, 576 F.3d 840, 846 (8th Cir. 2009).

18    Plaintiffs did not assert a Pennsylvania consumer act claim, which has a reliance requirement making it "inappropriate for class treatment." *Coleman v. Commonwealth Land Title Ins. Co.*, 09-679, 09-841, 2016 WL 4705454, at \*6 (E.D. Pa. Aug. 17, 2016). New Jersey's statute does permit treble damages, N.J. Stat. §56:8-19, but that possibility assumes success. And, while New Jersey does not require reliance *per se*, it does impose a causation requirement leading courts to deny class certification. *See Fink v. Ricoh Corp.*, 839 A.2d 942, 959-60 (N.J. Super. Ct. Law Div. 2003) (denying certification because act requires individual showing of deception and causation); *Pratt v. Panasonic Consumer Elecs. Co.*, L-48-05, 2006 WL 1933660, at \*8 (N.J. Super. Ct. Law Div. July 12, 2006) (unpub.) (denying certification where plaintiff "has not demonstrated that class members relied on false representations and concealments" or demonstrated "ascertainable loss proximately caused by such alleged false representations"); *but see Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 238 (D.N.J. 2008) (applying presumption of causation).

19    Her citation to *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) is much misplaced. *Amchem* dealt with Rule 23(a)(4)'s adequacy-of-representation requirement respecting a settlement class with divergent interests: those with present asbestos injuries desiring "generous immediate payments;" and those only exposed to asbestos preferring "an ample, inflation-protected fund for the future." *Id.* at 626. The injuries "were extraordinarily various, both in terms of the harm sustained and the duration endured." *Petrovic*, 200 F.3d at 1146 (discussing *Amchem*). Here, all class members "stand[] to gain from [Blue Buffalo's] agreement to compensate [them] for damage already sustained." *Id.* at 1147-48.

20    Sibley and Lopez assert that "heightened judicial scrutiny" is warranted, citing *In re Southwest Airlines Co.*, 799 F.3d 701 (7th Cir. 2015). Sibley Br.11; *see also* Lopez Br.24. *Southwest* considered a fee award in connection with a coupon settlement under 28 U.S.C.A. §1712, whose principal focus is "to mandate more careful scrutiny of coupon settlements to ensure that the degree of success was properly evaluated." *Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969, 975 (8th Cir. 2016). This case does not involve a coupon settlement. Plaintiffs do not dispute that careful review should be given to fee requests, but there is no indication that the district court failed to do so.

Case 3:16-md-02741-VC   Document 14555-4   Filed 02/04/22   Page 30 of 31

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

21    *See also, e.g.,* Manual for Complex Litigation §14.121 (4th ed. 2010) ("[T]he vast majority of courts . . . use the percentage-fee method in common fund cases."). McCoy relies on *Fish v. St. Cloud State University*, 295 F.3d 849 (8th Cir. 2002) and ⚑ *Hensley v. Eckerhart*, 461 U.S. 424 (1983), both statutory fee-shifting cases, in which the lodestar method is preferred. ⚑ *Johnston*, 83 F.3d at 245.

22    *See also, e.g.,* ⚑ *U.S. Bancorp*, 291 F.3d at 1038 (affirming 36% award); *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016) (award of one-third "in line with other awards in [this] Circuit"); *Cromeans v. Morgan, Keegan & Co.*, 2:12-CV-04269-NKL, 2015 WL 5785576, at *3 (W.D. Mo. Sept. 16, 2015) (one-third of fund reasonable), *report and recommendation adopted*, 2:12-CV-04269-NKL, 2015 WL 5785508 (W.D. Mo. Oct. 2, 2015); *Barfield*, 2015 WL 3460346, at *4 (one-third of fund reasonable); *West*, 2014 WL 1648741, at *1 (33% reasonable); *Sanderson v. Unilever Supply Chain, Inc.*, 10-CV-00775-FJG, 2011 WL 6369395, at *2-3 (W.D. Mo. Dec. 19, 2011) (awarding 33.78% of settlement fund); *Wiles v. Sw. Bell Tel. Co*., 09-4236-CV-C-NKL, 2011 WL 2416291, at *4-5 (W.D. Mo. June 9, 2011) (one-third of fund reasonable).

23    *See also, e.g., Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007) ("In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients."); *In re Lucent Techs., Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("If this were a non-class action case, the customary contingent fee would likely range between 30% and 40% of the recovery."); ⚑ *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery"); Newberg on Class Actions §14.6 (4th ed.) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

24    "[W]hether a multiplier is permitted [in fee-shifting cases] is a question of statutory interpretation." Newberg on Class Actions § 15:91 (5th ed.). By contrast, "[i]n the common fund setting - where the closest analogy is contingent fee cases in which counsel routinely get a third of the recovery . . . with an individual client (with no lodestar cross-check) - courts are more comfortable awarding a similar percentage to class counsel, even if the lodestar cross-check reveals a multiplier." *Id.*

25    *See also, e.g.,* ⚑ *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 & n.6 (9th Cir. 2002) (3.65 was "within range of multipliers applied in common fund cases"); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 688 (D. Md. 2013) (purpose of lodestar cross-check is to determine "whether the fee is within some reasonable multiplier of the lodestar;" "Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.").

26    It bears noting that both the *Eastwood* and *Simon* courts approved the settlement despite their perceptions of the claim rate, and are thus contrary to Lopez's argument that the claim rate here is basis for disapproving the Settlement. *See* ⚑ *Eastwood*, 2014 WL 4987421, at *4 (noting that "some responsibility for class participation should be laid at the feet of the class members themselves" and while suggesting that methods of notice beyond mailing and newspaper publication might be warranted "to spark the interest of an otherwise apathetic populace," expressly declined to find "that the low response indicates that the settlement was fundamentally unfair or unreasonable.").

27    *Compare* ⚑ *Strong v. BellSouth Telecomms., Inc.,* 137 F.3d 844, 852 (5th Cir. 1998) (claims-made information properly considered where settlement did not result in common fund), *with* ⚑ *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997) (fee should be based on percentage of entire fund rather than claims against the fund), ⚑ *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1297-98 (11th Cir. 1999) (same), *and* ⚑ *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437 (2d Cir. 2007) (fee should be based on "the total funds made available, whether claimed or not."); *see also* 2 McLaughlin on Class Actions § 6:24 (13th ed.) ("Most Circuits to address the question hold that in a common fund case where there is an actual fund . . . attorneys' fees should be calculated as a percentage of the total funds made available through counsel's efforts, whether claimed or not.").

28    Sibley picks through certain *Johnson* factors in superficial critique of the court's analysis. Sibley Br.14. He is incorrect that undesirability and counsel experience were unaddressed. *See* Appx.627-29a; Pls.Appx.006-08, 020-55. Sibley

Alexia KEIL, et al. on Behalf of Herself and Others..., 2016 WL 7438118...

Case 3:16-md-02741-VC  Document 14555-4  Filed 02/04/22  Page 31 of 31

complains abstractly that "the results obtained touted [sic] by class counsel were out of line with reality," Sibley Br.14, but offers no analysis or explanation as to why the court's conclusion was an abuse of discretion. Appx.705a.

29  Lopez's contention that there is "disagreement" among district courts relies on exactly one citation to *In re BankAmerica Corp. Securities Litigation*, 228 F. Supp. 2d 1061 (E.D. Mo. 2002), in which the court, without discussion, used the net figure. *Id.* at 1064 n.4. This does not indicate "disagreement," but merely one judge's choice.

30  The Court suggested that including administrative costs might "eliminate[] the incentive of class counsel to economize on that expense," *Redman*, 768 F.3d at 630, but no objector here complains that the expense (capped at $1.4M) was too high. Appx.412a.

31  *Gehrich v. Chase Bank USA, N.A.*, 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016), also cited by Lopez, simply followed *Pearson*. *Id.* at *14. In *Anthony v. Yahoo!, Inc.*, 376 F. App'x 775 (9th Cir. 2010) (unpub.), the Court upheld the district courts' *discretion* in calculating fees on the net fund.

32  As here, the notice specified that counsel would apply for fees not exceeding an amount that ultimately was requested. *Id.* at 58. Objectors had time to "crystallize their objections and request further information before attending the fairness hearing." *Id.* Class members would not be entitled to billing records even if the objection deadline had been set after the fee motion, and "[n]o objector specifie[d] how access to class counsel's billing records would have affected her objections to the fee request. *Id.*

33  Sibley also cites *In re National Football League Players Concussion Injury Litigation*, 821 F.3d 410 (3d Cir. 2016). That case concerned the propriety of deferring class counsel's fee application until after settlement approval. The Court's statements in respect to *Mercury* and *Redman* are dicta, *id.* at 446, and pertinently, it observed that "[n]owhere does [ Rule 23(h)] require that class counsel move for its fee award at the same time that it moves for final approval of the settlement." *Id.* at 445. The field of concern then is directed not to the settlement but the fee amount. Objectors notified of counsel's intent to seek a percentage award, at least where, as here, the fund is a fixed amount, have the information needed for objection. Only lodestar information, serving as a crosscheck, comes later in the fee application.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.