GILLIAN L. WADE (State Bar No. 229124)
MARC A. CASTANEDA (State Bar No. 299001)
Milstein, Jackson Fairchild & Wade, LLP
gwade@mjfwlaw.com
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, CA 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

JOEL OSTER (admitted *pro hac vice*)
Oster Law Firm
Law Offices of Howard Rubinstein
joel@osterlaw.com
22052 W. 66th St. #192
Shawnee, Kansas 66226

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Gilmore v. Monsanto Company*, Case No. 3:21-cv-08159-VC | |

**GILMORE PLAINTIFFS' OPPOSITION TO MOTION
<u>FOR INTERVENTION AND MOTION FOR DISCOVERY</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I. INTRODUCTION ........................................................................................................ 1

II. INTERVENTION SHOULD BE DENIED ................................................................. 1

    A. Legal Standard .................................................................................................... 1

    B. Intervention Should be Denied as Proposed Intervenors Are Permitted to Object to the Preliminary Approval of the Settlement ........................................ 1

III. THE OBJECTORS ARE NOT ENTITLED TO DISCOVERY ................................... 2

    A. Legal Standard .................................................................................................... 3

    B. The *Hemphill* Factors Weigh Against Permitting Objector Discovery ............ 4

        1. The nature and amount of previous discovery ........................................... 4

        2. Reasonable basis for the evidentiary requests ............................................ 6

            a. Adequacy of the amount of settlement (Request Nos. 1-3) ............... 6

            b. Adequacy of counsel / collusive settlement (Request Nos. 4-9) ........ 7

        3. Number and interests of objectors ............................................................. 8

    C. Alternatively, even if *Hemphill* Factors Weigh in Favor of Objector Discovery, the Particular Discovery Requests at Issue Seek Information that has Already been Provided, does not Exist, or is Privileged and not Discoverable. ....................... 8

IV. CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

...

# TABLE OF AUTHORITIES

**Cases**	*Page*

*Borup v. CJS Sols. Grp.*, LLC  (D. Minn. May 16, 2019)
     2019 WL 2137369 ...............................................................................................13

*Briseño v. Henderson* (9th Cir. 2021)
     998 F.3d 1014 ..................................................................................................14, 15

*Cotton v. Hinton* (5th Cir. 1977)
     559 F.2d 1326 .....................................................................................................3

*Garibay v. Archstone Cmtys. LLC* (9th Cir. 2013)
     539 F. App'x 763 ..............................................................................................15

*Girsh v. Jepson* (3rd Cir. 1975)
     521 F.2d 153 .......................................................................................................3

*Gray v. CJS Solutions Gp.*
     No. 19-100 ........................................................................................................13

*Hemphill v. San Diego Ass'n of Realtors, Inc.* (S.D. Cal. 2005)
     225 F.R.D. 616 ..........................................................................................3, 6, 8

*Lobatz v. U.S. W. Cellular of California, Inc.* (9th Cir. 2000)
     222 F.3d 1142 .....................................................................................................8

*In re Bluetooth Headset Prods. Liab. Litig.* (9th Cir. 2011)
     654 F.3d 935 ................................................................................................14, 15

*In re Conagra Foods, Inc.* (C.D. Cal.)
     Case No. CV 11-05379-CJC ...........................................................................14

*In re Domestic Air Transp. Antitrust Litigation* (N.D. Ga. 1992)
     144 F.R.D. 421 ...................................................................................................3

*In re Gen. Motors Corp. Engine Interchange Litig.* (7th Cir. 1979)
     594 F.2d 1106 ................................................................................................4, 13

*In re General Tire & Rubber Co. Sec. Litig.* (6th Cir. 1984)
     726 F.2d 1075 .....................................................................................................3

*In re MGM Mirage Sec. Litig.* (D. Nev. Jan. 27, 2016)
     2016 WL 344503 .............................................................................................6, 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liability Litig.*
(N.D. Cal. Aug. 17, 2016)
    2016 U.S. Dist. LEXIS 109440 ................................................................................1, 5

*In re Wachovia Corp. 'Pick-A-Payment' Mortg. Mktg. & Sales Pracs. Litig.*
(N.D. Cal. Apr. 20, 2011)
    2011 WL 1496342 ..................................................................................................3, 4, 5

*Ross v. Convergent Outsourcing, Inc.* (D. Colo. 2018)
    323 F.R.D. 656.............................................................................................................13

*U.S. ex rel. McCoy v. California Med. Rev., Inc.* (N.D. Cal. 1990)
    133 F.R.D. 143..............................................................................................................4

*United States v. Alisal Water Corp.* (9th Cir. 2004)
    370 F.3d 915 ................................................................................................................1

*United States v. City of Los Angeles* (9th Cir. 2002)
    288 F.3d 391 ................................................................................................................1

*Viet Bui v. Sprint Corp.* 3 (E.D. Cal. June 19, 2015)
    2015 WL 3828424 ........................................................................................................1

*Villegas v. J.P. Morgan Chase & Co.* (N.D. Cal. Nov. 20, 2012)
    2012 U.S. Dist. LEXIS 166704 ...................................................................................7

*Wixon v. Wyndham Resort Dev. Corp.* (N.D. Cal. Aug. 8, 2011)
    2011 WL 3443650 ........................................................................................................5

**Statutes, Rules, and Regulations**

FED. R. CIV. P. 23 ...................................................................................................................10

**I.      INTRODUCTION**

On January 21, 2022, Ryan Tomlinson and Carol Richardson ("Proposed Intervenors"), named plaintiffs in a class action pending in Missouri regarding the marketing and sale of Roundup Products, filed a motion to intervene in this action to oppose Plaintiffs' Motion for Preliminary Approval. ECF No. 96 ("Mot. Int."). Proposed Intervenors also filed a motion for discovery. ECF No. 97 ("Mot. Disc."). In the interest of brevity and efficiency, Plaintiffs hereby submit the following opposition to both motions.

**II.     INTERVENTION SHOULD BE DENIED**

**A.      Legal Standard**

An applicant to intervene as of right bears the burden of showing that each of the requirements for intervention as of right have been met. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). Those requirements include that (1) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest. *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002). Permissive intervention is granted at the court's discretion, but it is generally denied if intervention of right is not appropriate. *Viet Bui v. Sprint Corp.*, 2015 WL 3828424, at *3 (E.D. Cal. June 19, 2015) (collecting cases).

**B.      Intervention Should be Denied as Proposed Intervenors Are Permitted to Object to the Preliminary Approval of the Settlement.**

Proposed Intervenors fail to show how their interests in this matter will be impaired absent intervention, given the Court has already allowed them to object to the Settlement at the preliminary approval stage. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and*

1

*Prods. Liability Litig.*, 2016 U.S. Dist. LEXIS 109440, at *609-10 (N.D. Cal. Aug. 17, 2016) (denying putative intervenor's motion because the putative intervenor could "opt of the Settlement and litigate his claims independently, or he may instead object to it"). When the Court denied their previous intervention motion, it did so "with the understanding, of course, that parties affected by the proposed settlement will be able to object to the agreement." ECF No. 88 at 2. If there were any doubt as to whether this could occur at the preliminary (as opposed to final) approval stage, the Court ordered the parties to propose "a schedule for briefing the motion for *preliminary* approval [which] shall include a deadline for filing any objections to the proposed settlement[.]" *Id.* (emphasis added). Because Proposed Intervenors' ability to protect their interests is neither impaired nor impeded in the least by their current (non-intervened) status, intervention—as of right or permissive—is not appropriate.[1] Nor does Proposed Intervenors' request for discovery justify intervention. As explained below, their requested discovery seeks information that is already part of the record, does not exist, or is privileged and not discoverable. Accordingly, there are no interests that would be impaired should intervention be denied.

### III. THE OBJECTORS ARE NOT ENTITLED TO DISCOVERY

Proposed Intervenors seek discovery based on their presumptive role as objectors to the settlement. However, as explained below, the criteria establishing the limited circumstances under which objector discovery is permitted are not met here, and Proposed Intervenor's motion should be denied. Alternatively, even if Proposed Intervenors met the threshold requirement to take *any* discovery (they have not), their particular discovery requests seek information that is already part of the record, does not exist, or is privileged and not discoverable.

---

[1] It is not accurate that "[n]either [Plaintiffs nor Monsanto] objects to intervention for purposes of opposing the settlement." Mot. Int. at 4. To clarify, Class Counsel expressed their belief intervention was not necessary to object to the settlement in light of the Court's order.

2

A. **Legal Standard**

"'While objectors are entitled to 'meaningful participation' in the settlement proceedings,…and 'leave to be heard,' they are not automatically entitled to discovery or 'to question and debate every provision of the proposed compromise.'" *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 619 (S.D. Cal. 2005) (quoting *Girsh v. Jepson*, 521 F.2d 153, 158 (3rd Cir. 1975); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n. 6 (6th Cir. 1984)). "The criteria relevant to the Court's decision whether to permit objectors to conduct discovery are 'the nature and amount of previous discovery, reasonable basis for the evidentiary requests, and number and interests of objectors.'" *Id.* (quoting *In re Domestic Air Transp. Antitrust Litigation*, 144 F.R.D. 421, 424 (N.D. Ga. 1992) (quoting NEWBERG ON CLASS ACTIONS § 11.56 at 476 (2d ed. 1985)). Further, "[w]here the evidence submitted in support of the settlement is the result of truly adversarial proceedings and where the comprehensiveness of the records developed by the proponents increases, the objector has a greater burden to show the necessity of additional evidence." *In re Wachovia Corp. 'Pick-A-Payment' Mortg. Mktg. & Sales Pracs. Litig.*, No. 09-2015, 2011 WL 1496342, at *1. (N.D. Cal. Apr. 20, 2011) (quotations omitted).

Proposed Intervenors tellingly ignore the *Hemphill* factors, suggesting instead that the bar to objector discovery is low and it is typically permitted where the items sought bear some relevance to the Court's Rule 23(e) analysis. Mot. Disc. at 3-4. This, however, is *not* the standard, and the cases cited by Proposed Intervenors suggesting otherwise are distinguishable and inapposite to the situation at hand. *McCoy*, for example, did not involve discovery by objectors but rather by qui tam plaintiffs—in a case *they initiated*—of the ultimate settlement between the defendants and in the intervening federal government. Mot. Disc. at 8 (citing *U.S. ex rel. McCoy*

3

*v. California Med. Rev., Inc.*, 133 F.R.D. 143 (N.D. Cal. 1990)). Rather than the *Hemphill* factors, the court looked toward the legislative history of the False Claims Act, finding that "it was Congress' intent that qui tam plaintiffs play an active role in settlement hearings." *Id*. at 148.

Nor does *In re Wachovia* assist Proposed Intervenors. Mot. Disc. at 3-4 (citing *In re Wachovia*, 2011 WL 1496342 (N.D. Cal. Apr. 20, 2011). Therein, the court refused to permit discovery of settlement negotiations, finding that the objector failed to lay a foundation of collusiveness. *In re Wachovia*, 2011 WL 1496342 at *3. The court permitted nine requests for admission, which were narrowly focused as to whether the settlement actually provided new benefits to class members. *Id.* Further, the parties admitted the discovery conducted in the case did not bear on that particular question. *Id*. at *2. This is a far cry from the situation at hand, where Proposed Intervenors seek a wide range of discovery requests, including settlement negotiations. There is no dispute that the Class Members are receiving new benefits (monetary compensation).[2]

### B.    The *Hemphill* Factors Weigh Against Permitting Objector Discovery

Here, all the relevant *Hemphill* factors weigh against objector discovery. Proposed Intervenors find little support for their position, and their cited authority is not only distinguishable but in some instances underscore why discovery is *not* warranted.

#### 1.    **The nature and amount of previous discovery**

The nature and amount of previous discovery weighs against permitting the discovery

---

[2] Proposed Intervenor's citation to *In re General Motors Corp*. is likewise unpersuasive. Mot. Disc. at 3 (citing *In re Gen. Motors Corp. Engine Interchange Litig*., 594 F.2d 1106 (7th Cir. 1979)). That case involved a number of consolidated cases, wherein the court created an executive committee and ordered "that the committee could conduct settlement negotiations only with the consent of all counsel for the named plaintiffs." *Id*. at 1115. However, one executive committee member engaged in settlement "negotiations without leave of the district court or other counsel for the plaintiffs in the federal class action." *Id*. at 1115. In holding that the district court should have permitted discovery, the Seventh Circuit stressed that "unauthorized settlement negotiations create the possibility of negotiation from a position of weakness by the attorney who purports to represent the class." *Id*. at 1125. None of these egregious circumstances apply here.

4

sought by the objectors. This factor breaks against objectors where they fail to show that Class Counsel did not engage in "sufficient discovery to engage in informed settlement negotiations." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL-2672, 2016 WL 5793336, at *5 (N.D. Cal. Oct. 4, 2016), aff'd sub nom. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 894 F.3d 1030 (9th Cir. 2018). Discovery is not appropriate where "the parties exchanged a significant number of documents, engaged in written discovery and depositions, and conducted expert discovery." *Wixon v. Wyndham Resort Dev. Corp.*, No. 07-2361, 2011 WL 3443650, at *2 (N.D. Cal. Aug. 8, 2011); *see also In re Wachovia*, 2011 WL 1496342, at *2 (greater burden for objector to obtain additional evidence where discovery included 15,000 pages of documents and 20 hours of audio-video materials).

Here, the parties (in a Related Action) engaged in extensive written discovery between May and July 2020, well before settlement negotiations commenced in February 2021. Declaration of Gillian Wade, ECF No. 94-1 ("Wade Decl.") at ¶¶ 5-6. Defendant responded to interrogatories, requests for admission, and requests for production, and produced thousands of documents including sales data and final product labeling. *Id*. Expert discovery also began, with Plaintiffs' damages expert (Dr. Sharp) preparing a hedonic-regression analysis which found that consumers had paid a 31% price premium due to Defendant's omissions regarding the cancer risk. *Id.* ¶ 7. This price premium calculation (as a percentage) was not Florida-specific, and thus could be scaled to apply to a nationwide class. *See* Expert Report of Dr. D.C. Sharp, ECF No. 94-1, pp. 59-100 ("Sharp Report"). In advance of mediation, Defendant provided national sales data to Plaintiffs' counsel, which was in turn analyzed by Dr. Sharp for settlement purposes. Wade Decl. ¶¶ 13-14. This national data has been submitted to this Court in a sworn declaration by Defendant. Declaration of John Rosenthal, ECF No. 94-3, pp. 1-6 ("Rosenthal Decl.") at ¶ 12.

This *Hemphill* factor weighs against granting the putative objectors additional discovery.

### 2. Reasonable basis for the evidentiary requests

Here, the Proposed Intervenors provide two bases for their evidentiary requests: (1) "adequacy of the amount of settlement" and (2) "adequacy of representation by Gilmore counsel and plaintiffs" (i.e., whether the settlement was collusive). Mot. Disc. at 1.

#### a. Adequacy of the amount of settlement (Request Nos. 1-3)

First, Proposed Intervenors contend that this Court lacks sufficient information to assess the adequacy of the amount of settlement. To this end, they seek discovery of sales data, the unredacted Sharp Report, and nationwide damage estimates. *See* ECF No. 91-1, Request Nos. 1-3.

When assessing this purported basis for discovery, "'[t]he fundamental question is whether the district judge has sufficient facts before him to intelligently approve or disapprove the settlement.'" *In re MGM Mirage Sec. Litig.*, No. 09-1558, 2016 WL 344503, at *1 (D. Nev. Jan. 27, 2016) (quoting *Hemphill*, 225 F.R.D. at 619-620). Here, Plaintiff's expert conducted a hedonic-regression analysis to conclude that consumers had paid a 31% price premium. Sharp Report ¶¶ 4-5, 28-31. Monsanto's expert, meanwhile, calculates the price premium at approximately 1.5%. Declaration of Kristina Shampanier, ECF. No. 94-3 at pp. 18-19 ("Shampanier Decl.") at ¶ 11. The Court, having access to both parties' damages calculations and the $2.66 billion estimated retail sales of the products during the Class Period (Rosenthal Decl. ¶ 12), has more than enough information to determine whether the size of the recovery—wherein claimants are eligible to receive approximately 20% of the average retail price for each unit purchased—is adequate. Settlement Agreement, ECF No. 94-1 at pp. 18-57 ("Settlement") at § E(1). The Court can see that the Settlement would provide Class Members with direct cash payments of approximately *two-thirds* of Plaintiffs' estimated best-case damages were they to succeed at trial.

There is no reasonable basis behind Plaintiff Intervenor's argument that this Court lacks sufficient information to assess the size of the recovery. Further, as noted below (§ III(C)), most of this information was provided in the Motion for Preliminary Approval, which was filed before Proposed Intervenor's Motion for Discovery.

### b.      Adequacy of counsel / collusive settlement (Request Nos. 4-9)

The second basis for Proposed Intervenor's discovery is for the Court's assessment of 'adequacy of counsel,' which in turn depends on completely unfounded accusations of collusion that are extensively belied by the record. As discussed in the Motion for Preliminary Approval (ECF No. 94), the Settlement was reached after hard-fought, arms' length negotiations between competent and well-informed counsel that were facilitated by an experienced mediator, retired United States Magistrate Judge Diane Welsh. Wade Decl., ECF No. 94-1, at ¶¶ 35-36; Declaration of Joel Oster, ECF No. 94-2 ("Oster Decl.") at ¶¶ 14-15. According to Judge Welsh, "it was clear to [] that each of the parties were represented by experienced and competent counsel, willing to litigate the matter to conclusion, if necessary." *See* Declaration of Judge Diane Welsh (Ret.), ECF No. 94-1 at pp. 102-105 ("Welsh Decl.") at ¶¶ 5-6, 8. Further, "the parties engaged in extensive adversarial negotiations on virtually every issue in the case" and there was "nothing that suggested any collusion or other untoward behavior by counsel for either party." *Id.* at ¶ 9. Judge Welsh's involvement in the mediation "tends to support the conclusion that the settlement process was not collusive," *Villegas v. J.P. Morgan Chase & Co.,* 2012 U.S. Dist. LEXIS 166704, at *15 (N.D. Cal. Nov. 20, 2012).

Nevertheless, Proposed Intervenors seek discovery of all written discovery between the parties in every Related Action, agreements between Defendant and retailers, attorney-client communications regarding Related Actions plaintiffs' potential recovery in *Gilmore*, communications between plaintiffs' attorneys regarding fees, Class Counsel's itemized time

7

records, and communications related to settlement negotiations. ECF No. 91-1, Request Nos. 5-9.

But where an objector bases its discovery requests on collusion allegations, it has the "burden of adducing evidence *from other sources* that the settlement negotiations were collusive." *Hemphill*, 225 F.R.D. at 621 (emphasis added); *see also Lobatz v. U.S. W. Cellular of California, Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) ("discovery [of settlement negotiations] is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive") (quotations omitted). Yet the only 'evidence' cited by Proposed Intervenors is that the procedural history of the case might have put Plaintiffs at a bargaining disadvantage or that attorneys' fees might be excessive.[3] Even if true (and it is not), this is not evidence of collusion, but mere speculation and conjecture about what 'might' have been happening 'behind the scenes.' Proposed Intervenors have failed to meet their burden to obtain discovery due to accusations of collusion.

This *Hemphill* factor also weighs against awarding objectors discovery in this case.

### 3. Number and interests of objectors

Since notice has not yet been issued, this factor is neutral. Although the Tomlinson plaintiffs will object, their interests (or the financial interests of their counsel) are dramatically different than the interests of other Class Members. This factor does not weigh in favor of granting objector discovery.

### C. Alternatively, even if *Hemphill* Factors Weigh in Favor of Objector Discovery, the Particular Discovery Requests at Issue Seek Information that has Already been Provided, does not Exist, or is Privileged and not Discoverable

---

[3] Proposed Intervenors mischaracterize and misunderstand the substantial work performed by Class Counsel in pursuing this matter and the Related Actions, which included multiple rounds of dispositive briefing and discovery where possible, and the significant financial and reputational pressure imposed on Monsanto by pursuing the retailer cases against its largest customers in the residential market based on the same facts asserted against Monsanto. *See* Declaration of John J. Rosenthal, ECF No. 94-3 ("Rosenthal Decl.") at ¶ 4.

As explained above, the Proposed Intervenors cannot meet their burden to obtain discovery, with both of the two relevant *Hemphill* factors weighing against them. Alternatively, even if Proposed Intervenors were entitled to some discovery, their particular requests should be denied by this Court. They seek information that has already been provided, does not exist, or is privileged and not discoverable.

> **Request No. 1**
> **Sales data, including product prices, and number of purchases of Roundup Products identified in the Settlement Agreement for class periods as defined therein under each state law (see Gilmore Dkt. No. 59-1 § A(20) & Ex. B), provided by Monsanto in connection with settlement in the Gilmore action.**

As explained *supra* § II(B)(2)(a), all of the pertinent sales data needed by the Court to assess the size of the settlement has been provided to this Court. *See also* Rosenthal Decl. ¶ 12 (providing estimated sales and number of units sold). Precise price information does not exist since Monsanto is not the retailer. *Id.* Also, insofar as Proposed Intervenors are protecting the interest of the Missouri class, they have already received information regarding sales in Missouri. *Id*. ¶ 12 fn. 2.

> **Request No. 2**
> **The unredacted report of D.C. Sharp dated July 31, 2020. Gilmore Dkt. No. 35, Report.**

This is attached in unredacted form to Plaintiffs' Motion for Preliminary Approval. *See* Sharp Report.

> **Request No. 3**
> **Damages estimates for a nationwide class prepared by or at the direction of Class Counsel: (1) prior to February 16, 2021; and (2) on or after February 16, 2021**

This request seeks attorney work product that is protected from disclosure.[4] That aside,

---

[4] Proposed Intervenors should not be permitted to obtain Plaintiffs' work product, particularly given they have a pending case against Monsanto, and have not submitted a damages analysis

9

Plaintiffs have explained that Defendant provided national sales data to Plaintiffs' counsel in advance of mediation, which was in turn analyzed by Dr. Sharp for settlement purposes. Wade Decl. ¶¶ 13-14.

> **Request No. 4**
> **Written discovery and responses (including requests for admission), and the transcript of any deposition of a Monsanto representative taken, in each "Related Action" identified in the Settlement Agreement.**

Plaintiffs have already described the extent of discovery in the Related Cases, and have provided that information relevant to this Court's Rule 23(e) analysis. Proposed Intervenors suggestion that they are entitled to all discovery produced in all cases so they can assess whether Plaintiffs were "armed with sufficient information" is absurd, and given the information that Plaintiffs *have* provided, they cannot reasonably argue that Plaintiffs lacked sufficient information to broker a settlement. *See also* Welsh Decl. ¶¶ 5, 8 (describing detailed pre-mediation submissions "which included hundreds of pages of exhibits and extensive briefing on the parties' positions on liability, defenses, and damages [and other matters]" and the skill and knowledge exhibited by counsel during negotiations).

> **Request No. 5**
> **Documents evidencing agreements or understandings (oral or written) with any Retailer of Roundup Products in connection with settlement in Gilmore.**

Rule 23 requires that the "parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). Class Counsel has done just that, with a sworn declaration that "[t]here are no 'side-agreements' made in connection with the Settlement." Wade Decl., ECF No. 94-1, at ¶ 44; *see also* Oster Decl., ECF No. 94-2, at

---

with an expert of their own in *Tomlinson*. *See* ECF No. 83, n.3 (Proposed Intervenors failed to disclose "*any* experts to describe how they intended to prove their case with classwide evidence").

10

¶ 16 (same). The objectors offer no evidence that these sworn declarations are false. Accordingly, this request should be denied.

> **Request No. 6**
> **Documents evidencing agreements or understandings (oral or written) with any plaintiff in a "Related Action" under which he / she has or will receive a benefit in connection with settlement in Gilmore other a Claim for Relief made under Section I of the proposed Settlement Agreement.**

As noted above, the parties have already provided sworn declarations that there are no 'side-agreements' made in connection with the settlement. Furthermore, each named Plaintiff submitted a sworn declaration attesting they were promised nothing in connection with the settlement. *See* Ezcurra Decl., ECF No. 94-5 at ¶ 9; Gilmore Decl., ECF No. 94-5 at ¶ 8; Boyette Decl., ECF No. 94-7 at ¶ 8; Jewell Decl., ECF No. 94-8 at ¶ 8; Weeks Decl., ECF No. 94-9 at ¶ 10; Williams Decl., ECF No. 94-10 at ¶ 8; Taylor Decl., ECF No. 94-11 at ¶ 8; Hanna Decl., ECF No. 94-12 at ¶ 8. The terms of the settlement speak for themselves. Further, even if such documents did exist (they do not), Proposed Intervenors seek documents comprising attorney-client communications which are plainly not discoverable.

> **Request No. 7**
> **Documents evidencing agreements or understandings (oral or written) with and/or between Class Counsel and any other plaintiffs' counsel for the sharing and/or allocation of attorneys' fees or expenses awarded in Gilmore.**

Proposed Intervenors seek these documents as another purported category of "side agreements." Mot. Disc. at 10. But again, Plaintiffs have already provided sworn declarations that there are no 'side-agreements' made in connection with the settlement. Further, Proposed Intervenors provide no argument as to how the allocation of fees *between Class Counsel* are even relevant to the Court's Rule 23(e) analysis. They are not, and this request should be rejected.

> **Request No. 8**
> **Documents describing work performed (including dates, task, and**

> **hours expended) of each attorney or firm in "Related Actions" that will share in any attorneys' fees awarded in Gilmore.**

The Northern District of California's Procedural Guidance for Class Action Settlements (the "Guidelines") provides class counsel "should include information about the fees they intend to request and their lodestar calculation in the motion for preliminary approval." Guidelines § 6. Counsel's lodestar calculation need only "include the total number of hours billed to date and the requested multiplier." *Id.* Further, relevant case law provides, "[c]ontemporaneous time records are not required when requesting attorney's fee awards." *In re MGM Mirage Sec. Litig.*, 2106 WL 344503, at *3 (denying objector request for contemporaneous time records) (citing *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644-45 (S.D. Cal. 2011). "'A court may review the summaries provided in declarations by counsel without reviewing contemporaneous time records.'" *Id.* (quoting *Hartless*, 273 F.R.D. at 645).

Class Counsel has fully complied with the Guidelines and have provided even *more* detail than required, breaking down the lodestar by firm and by case. Indeed, Class Counsel has provided a detailed description of the work done and costs incurred in this case and each of the Related Actions. *See generally*, Wade Decl., ECF No. 94-1. Class Counsel has also provided the costs and expert fees in each particular case, as well as the time incurred in each case and hourly rate ranges. *Id.* ¶¶ 40, 42. Additional information will be provided in Class Counsel's forthcoming fee application. Accordingly, "the court has sufficient information to perform a lodestar fee calculation" and Objectors' request should be denied. *In re MGM Mirage Sec. Litig.*, 2106 WL 344503, at *3.

> **Request No. 9**
> **Documents (including emails, term sheets, memoranda of understanding) evidencing communications between counsel for Monsanto and counsel for Mr. Gilmore or other named plaintiffs in Gilmore pertaining to settlement in the Gilmore action and in particular: (1) when settlement discussions began; (2) filing suit in**

12

> **Delaware; (3) assertion or non-assertion of punitive damages in Delaware; (4) consideration of claims available in states other than California, Florida, and Arkansas; (5) the naming of additional plaintiffs in Gilmore; (6) service awards or other benefits to plaintiffs in "Related Actions"; and (7) attorneys' fees.**

Plaintiffs have already addressed why these requests are improper and will not repeat their argument here. *See supra* § II(B)(2)(B). Further, the cases cited by Proposed Intervenors (Mot. Disc. at 13-14) are highly distinguishable. As explained *supra* fn. 2, *In re General Motors Corp.* involved one attorneys' settlement discussions with the defendant that had been expressly forbidden by the Court when it formed a consolidated executed committee.

In *Ross*, another non-Ninth Circuit case, the district court did not apply the heightened standard (applicable here) for 'collusion-based' objector discovery. *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656 (D. Colo. 2018). That case involved a series of state class actions brought under the Fair Debt Collection Practices Act ("FDCPA")—and, given FDCPA's $500,000 per-suit cap in statutory damages—the expansion of one state's class action to one nationwide settlement had a devastating impact on the class members' potential recovery, a moral hazard that is not an issue here. *Id.* at 659-660.

In *Borup*, another non-Ninth Circuit case, the plaintiff (Borup) had intervened into another case (Gray) and successfully consolidated both actions. *Borup v. CJS Sols. Grp.*, LLC, No. 18-1647, 2019 WL 2137369, at *1 (D. Minn. May 16, 2019). Borup, objecting to the settlement of the overlapping Gray action, specifically "presented the Court with several facts evidencing that a 'reverse auction' may have occurred." *Id*. Though much of Mr. Borup's filings in the Gray case were redacted, he alleged that the Defendant engaged two different mediators to negotiate with the two different plaintiffs at the same time (unbeknownst to Borup). *Gray v. CJS Solutions Gp.*, No. 19-100, Dkt. No. 39 (Proposed Intervenor's Memorandum of Law), at 5-6. The Defendant then picked the lower of the two settlement demands. *Id.* at 7. Again, this egregious situation bears no

13

relation to the conduct between the instant parties. Further, as Plaintiffs explained elsewhere, a reverse auction is not even possible in this case, since Proposed Intervenors were in no place to negotiate a nationwide settlement from state court.

Proposed Intervenors' reliance on *In re Conagra Foods, Inc.* is also unavailing. *See* Dkt. No. 97-2 (Case No. CV 11-05379-CJC (C.D. Cal.) Dkt. No. 750 (October 6, 2021 Order)). Although the court there allowed discovery into communications between the settling parties and information and/or material shared with the magistrate judge, it was only after the Ninth Circuit found the settlement "r[a]n afoul of all three *Bluetooth* factors." *Briseño v. Henderson*, 998 F.3d 1014, 1027 (9th Cir. 2021) (*citing In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). Under *Bluetooth*, courts are required to scrutinize agreements for collusion where: (1) "counsel receive[s] a disproportionate distribution of the settlement"; (2) "the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee "separate and apart from class funds"; and (3) the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class. 654 F.3d at 947. Unlike the *Briseño* settlement, the proposed settlement here comes nowhere close to meeting all the *Bluetooth* factors.

Under the *Briseño* settlement, class counsel stood to "receive *seven times* more money than the class members," a clearly disproportionate distribution of the settlement. *Id.* at 1018 (emphasis added). Here, there are *no circumstances* under the settlement agreement in which Class Counsel's recovery would exceed that of Class Members. Class Counsel has not yet filed its fee application but does not intend to seek more than 25% of the total benefit[5] available to the Settlement Class.

---

[5] Under the proposed settlement agreement, Monsanto will pay total cash consideration in the amount of no less than $23 million (the "Floor Amount") and no greater than $45 million (the "Ceiling Amount"). *See* Settlement at D. Cash consideration includes all amounts Monsanto agrees to pay in settlement of the Released Claims, including all costs of Class Notice, Claims

14

*See* Settlement at F(1); *See also Garibay v. Archstone Cmtys. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013) ("25% recovery is the "benchmark" level for reasonable attorney's fees in class action cases"). Even if only the Floor Amount is reached, and even if Class Counsel moved for and received 25% of the Ceiling Amount, that would still constitute less than half of the actual fund, while the rest (less the costs of settlement administration) will go to Class Members (and each claimant's recovery could increase to an amount higher than a 20% refund).

With respect to the second *Bluetooth* factor, the *Briseño* settlement contained a "clear sailing arrangement," in which the defendant agreed not to contest a class counsel's fee award that would be paid separately from the class settlement fund. *Briseño*, 998 F.3d at 1020. But here, no clear sailing agreement (as defined by the *Bluetooth* court) exists because "the payment of attorneys' fees [is not] separate and apart from class funds." *Bluetooth*, 654 F.3d at 947. Rather, Class Counsel's fee request is directly tied to the amount available to the Settlement Class and will be paid from the overall settlement fund.

With respect to the third *Bluetooth* factor, the *Briseño* settlement contained a "reverter" clause in which defendant, not the class members, receives the remaining funds if the court reduces the agreed-upon attorneys' fees. *Briseño*, 998 F.3d at 1027. Here, there is no provision in the proposed settlement agreement that automatically reverts unawarded fees to Monsanto such that the parties are negotiating a separate fee award that might be inflated relative to the class benefit. It is only in the narrow set of circumstances identified by Proposed Intervenors that a reduction of the fee award might not inure to the benefit of the class.

The proposed settlement agreement does not trigger each of the *Bluetooth* factors as did the *Briseño* settlement. For these reasons, *In re Conagra Foods, Inc.* is distinguishable and the

---

Administration Expenses, Class Member Claims, Class Representative service awards, Class Counsel's Expenses, and Class Counsel's fees. *Id.* at D(1).

Court should decline Proposed Intervenors' request to conduct discovery.

## IV. CONCLUSION

There is no evidence that supports Proposed Interventors' accusations of collusion, and there is no basis upon which they should be permitted to discover privileged communications on a quest for information that is either irrelevant or does not exist. Accordingly, the motions should be denied.

Dated: February 4, 2022

By: */s/ Gillian L. Wade*

GILLIAN L. WADE
MARC A. CASTANEDA
Milstein, Jackson Fairchild & Wade, LLP
gwade@mjfwlaw.com
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, CA 90024

JOEL OSTER
The Law Offices of Howard Rubinstein
joel@osterlaw.com
22052 W. 66th St. #192
Shawnee, Kansas 66226

*Attorneys for Plaintiffs Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kristy Williams*