Patrick J. Stueve, #37682 MO
Todd E. Hilton, #51388 MO
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
hilton@stuevesiegel.com
stueve@stuevesiegel.com

Don M. Downing, #30405 MO
Gretchen Garrison, #33963 MO
Cort A. VanOstran, #67276 MO
**GRAY, RITTER & GRAHAM, P.C.**
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone: (314) 241-5620
ddowning@grgpc.com
ggarrison@grgpc.com
cvanostran@grgpc.com

*Counsel for Proposed Intervenors
Ryan Tomlinson and Carol Richardson*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 16-md-02741-VC<br><br>**CONSOLIDATED REPLY TO MONSANTO COMPANY'S AND GILMORE PLAINTIFFS' OPPOSITIONS TO INTERVENTION AND DISCOVERY**<br><br>Date/Time: March 3, 2022 at 10:00 a.m.<br>Via Zoom Webinar<br>Hon. Vince G. Chhabria |
| This document related to:<br><br>*Gilmore v. Monsanto*, Case No. 21-cv-08159 | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION AND BACKGROUND ........................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.     INTERVENTION TO SEEK DISCOVERY IS APPROPRIATE. ................................... 2

II.    THE DISCOVERY SOUGHT IS APPROPRIATE. ......................................................... 4

        A.     Sales Data Should Be Provided. ................................................................. 4

        B.     Discovery in Related Actions Should Be Provided. ................................. 5

        C.     Side Agreements Should Be Provided. ...................................................... 6

        D.     Further Lodestar Information Should Be Provided. ................................ 7

        E.     Settlement Communications Should Be Provided. ................................... 8

              1.     There is evidence of collusion. ..................................................... 8

              2.     The requested discovery is appropriate. ....................................... 9

CONCLUSION ....................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ............................................................................................... 8

*Chevron v. Pennzoil*,
  974 F.2d 1156 (9th Cir. 1992) ............................................................................................... 6

*Cotter v. Lyft, Inc.*,
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) ................................................................................ 4

*Eddings v. DS Services of Am., Inc.*,
  2016 WL 3390477 (N.D. Cal. May 20, 2016) ...................................................................... 4

*Hemphill v. San Diego Ass'n of Realtors, Inc.*,
  225 F.R.D. 616 (S.D. Cal. 2005) ....................................................................................... 3, 6

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................................................ 8

*In re Roundup Prods. Liab. Litig.*,
  2020 WL 3723305 (N.D. Cal. July 6, 2020) ......................................................................... 4

*In re Wachovia Corp.*,
  2011 WL 1496342 (N.D. Cal. Apr. 20, 2011) ...................................................................... 4

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) ................................................................................................ 3

*Kim v. Allison*,
  8 F.4th 1170 (9th Cir. 2021) .............................................................................................. 6, 8

*Lobatz v. U.S. W. Cellular of California, Inc.*,
  222 F.3d 1142 (9th Cir. 2000) .............................................................................................. 8

*Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*,
  834 F.2d 677 (7th Cir. 1987) ................................................................................................ 8

*McKinney-Drobnis v. Oreshack*,
  16 F.4th 594 (9th Cir. 2021) ................................................................................................. 4

*Munoz v. PHH Corp.*,
  2013 WL 3935054 (E.D. Cal. July 29, 2013) ....................................................................... 3

*Plubell v. Merck & Co., Inc.*,
  289 S.W.3d 707 (Mo. App. W.D. 2009) .................................................................................. 2

*Radcliff v. Experian Info. Solis Inc.*,
  715 F.3d 1157 (9th Cir. 2013) ................................................................................................. 6

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................................................... 9

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) ................................................................................................. 4

*Stephenson v. Capano Dev., Inc.*,
  462 A.2d 1069 (Del. 1983) ...................................................................................................... 9

*U.S. ex rel. McCoy v. California Med. Rev., Inc.*,
  133 F.R.D. 143 (N.D. Cal. 1990) ............................................................................................. 4

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ................................................................................................. 3

*Zepeda v. PayPal, Inc.*,
  2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ......................................................................... 9

**Other Authorities**

3 William B. Rubenstein, Newberg on Class Actions § 9:34 (5th ed. 2013) ................................. 3

**INTRODUCTION AND BACKGROUND**

*Tomlinson* plaintiffs seek intervention to: (1) oppose certification and preliminary approval; and (2) take targeted discovery relevant thereto. Dkt. 97, Mot, for Discovery ("Mot."). *Gilmore* plaintiffs and Monsanto express the position, based on the Court's prior comments, that *Tomlinson* plaintiffs need not intervene to oppose preliminary approval. Dkt. No. 99, Gilmore Opp. at 5–6;[1] Dkt. No. 98, Mon. Opp. at 5 n.1; Dkt. No. 89 at 4 n.4. If correct, the motion to intervene for purposes of objecting to preliminary approval is moot. If not, neither Monsanto nor *Gilmore* plaintiffs contend that *Tomlinson* plaintiffs *should not* be permitted to object, and the motion should be granted. Both do object to discovery. Those objections are not well founded.

Monsanto otherwise seeks to discredit *Tomlinson* plaintiffs' case and motives for seeking discovery. It is quite true that they do not want any part of the class they represent to be subsumed by this settlement, which they strongly believe is unfair, unreasonable, and inadequate for multiple reasons. It is not true that they seek to "disrupt" these proceedings for nefarious purposes.

Monsanto suggests that *Tomlinson* plaintiffs are fearful that if claims of Missouri purchasers of Lawn and Garden ("L&G") products are released, other class members have no claims. Mon. Opp. at 5–6. Monsanto has not filed a dispositive motion in Missouri (*see* Dkt. No. 44, Garrison Decl. ¶10) and *Tomlinson* plaintiffs are confident in their position that Missouri's Merchandising Practices Act covers not just family but business use of a product. *See* Ex. 1, Downing Decl., Ex. A at 23–24. The implication that *Tomlinson* plaintiffs must "prove the 'purpose' of their purchases" with affidavits at trial (Mon. Opp. at 7–8 & n.4) is imaginary.[2] In

---

[1] Page citations to docket filings are to the ECF page number when available.

[2] *Tomlinson* plaintiffs urged that affidavits could be used to identify class members—at the claims administration stage—in response to the argument that class membership is unascertainable without a purchaser list. *See* Ex. 1, Downing Decl, Ex. A, Reply at 39–42. The court ruled that "self-identification affidavits may be used to identify class members (Rosenthal Decl., Ex. G,

1

addition, *Tomlinson* plaintiffs sought class certification in July 2020 (Dkt. No. 44 at ¶ 10), which was fully briefed by November 2020. Ex. 1, Downing Decl. ¶ 9. Missouri law regarding both the MMPA and class certification is favorable. *See id.*, Ex. A at 1-3; *see also* Dkt. No. 41-1 at 81–98. *Tomlinson* counsel has won significant victories under the MMPA (*Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 710 (Mo. App. W.D. 2009) (listing counsel)) and prosecuted many class actions. *Tomlinson* plaintiffs are confident in their case. Assertion that this is about fees is insulting. Dkt. No. 54 at 12 n.9.

Monsanto's theatrical aspersions on *Tomlinson* plaintiffs' motivations are also wrong. Stripped of spin and placed into proper context, discussions between counsel are benign. There is a certified class in Missouri whose interests *Tomlinson* counsel are duty-bound to protect. And there are many problems with this settlement. It is hardly nefarious to seek exclusion therefrom and apparent that if so excluded, the need to object (or take discovery) will be obviated. Ex. 1, Downing Decl. ¶¶ 11–12; *see also* Dkt. No. 44 ¶¶ 20–30. And the desire to "negotiat[e] a separate settlement" (Mon. Opp. at 5) proceeds from a certified class with strong claims squandered away by *de minimus* settlement here. Ex. 1, Downing Decl. ¶ 10.

## ARGUMENT

**I.     INTERVENTION TO SEEK DISCOVERY IS APPROPRIATE.**

*Gilmore* plaintiffs make no argument on intervention other than it is unneeded to oppose the settlement. Gilmore Opp. at 5–6. Monsanto urges only that *Tomlinson* plaintiffs' interests are not impaired because they "can opt out of the settlement and object to its approval." Mon. Opp. at

---

Order at 7) without comment on "proof" requirements at trial. And how such affidavits are "obtained" is the same as proposed here—a declaration that the claimant purchased one or more products.

13. Even were that a meritorious argument, which it is not,[3] opting out is inapplicable at this point and opposition is what *Tomlinson* plaintiffs intend to do. Monsanto also says *Tomlinson* plaintiffs have done an "about-face" because they opposed preliminary approval in Delaware without discovery and can do so again here. Mon. Opp. at 5, 13. But *Tomlinson* plaintiffs seek discovery in part ***because of*** prior Delaware briefing. To avoid delay, they submitted requests in advance of the new preliminary approval motion as informed by issues raised in Delaware.[4] Ex. 1, Downing Decl. ¶ 12. More information is now provided but, contrary to suggestion, it is still insufficient.[5]

Rule 24 is construed in favor of intervention. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011). And "[t]here is no requirement that [proposed intervenors] show 'an absolute certainty' that [their] interests will be impaired …." *Munoz v. PHH Corp.*, 2013 WL 3935054, at *12 (E.D. Cal. July 29, 2013) (citation omitted). *Tomlinson* plaintiffs do not seek a "wide range" (Gilmore Opp. at 8) but targeted discovery to assist in assessing this settlement. Settlors cite *Hemphill v. San Diego Ass'n of Realtors, Inc.*, as though *Tomlinson* plaintiffs secreted factors helpful to them. They do not. *Hemphill* criteria include "the nature and amount of previous discovery" and "reasonable basis for the evidentiary requests." 225 F.R.D. 616, 620 (S.D. Cal.

---

[3] Such arguments are routinely rejected. *See* 3 William B. Rubenstein, Newberg on Class Actions § 9:34 (5th ed. 2013) (using opt-out to defeat impairment "is surely wrong"); *see also* Dkt. No. 86, Tomlinson Reply at 8 & n.11 (citing cases). *Keil v. Lopez,* cited by Monsanto*,* did not address opting out as a defense to intervention and the referenced "expla[nation]" was in the context of final approval of a settlement involving "three federal claims in addition to the state-law claims," rendering the latter "only a fraction of the overall case." 862 F.3d 685, 700 (8th Cir. 2017).

[4] In Delaware, for example, *Tomlinson* plaintiffs argued not only that *Gilmore* plaintiffs failed to estimate potential recovery *but also* reason for questioning sales data informally provided by Monsanto. Dkt No. 41-1 at 26 n.26; *see also* Mot. at 10–11. Had *Tomlinson* plaintiffs not asked for that data, they surely would have been accused of failing to do so.

[5] Monsanto's timeliness argument (Mon. Opp. at 9, n.8) is mere variant of its "about-face" argument and just as incorrect. *Tomlinson* plaintiffs moved for discovery immediately upon receiving a scheduling motion, the formal notice of forthcoming request for preliminary approval.

3

2005) (quotations omitted).  *Hemphill* predates amendment to Rule 23, and it is clear that preliminary approval, *especially* of pre-certification settlements, demands high scrutiny.[6] Moreover, *Hemphill* involved "substantial discovery" (*Id.*), whereas *zero* occurred in this case. Dkt. No. 25 at 33. And *Tomlinson* plaintiffs believe they *have* provided sufficient basis for their requests.[7]  Respectfully, if this Court disagrees at this juncture, it should hold discovery in abeyance or deny without prejudice to renew after benefit of full briefing on preliminary approval and what settlors *have not* provided.

## II.     THE DISCOVERY SOUGHT IS APPROPRIATE.[8]

### A.     Sales Data Should Be Provided.

In assessing adequacy, "perhaps the most important factor … is plaintiffs' expected recovery balanced against the value of the settlement offer." *Eddings v. DS Services of Am., Inc.*, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016) (internal quotations omitted). *Gilmore* plaintiffs say there is "more than enough" information on expected recovery (Gilmore Opp. at 9–

---

[6] *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019); *In re Roundup Prods. Liab. Litig.*, 2020 WL 3723305, at *1 (N.D. Cal. July 6, 2020); *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016).

[7] Settlors attempt to discredit *Tomlinson* plaintiffs' authority to no avail.  Mon. Opp. at 11, n.5; Gilmore Opp. at 8.  The nature of the inquiring party is immaterial to the relevant holding in *U.S. ex rel. McCoy v. California Med. Rev., Inc.*, 133 F.R.D. 143 (N.D. Cal. 1990) that right to some discovery is "corollary to plaintiffs' right to object to the settlement." *Id.* at 149. *In re Wachovia Corp. »Pick-A-Payment» Mortg. Mktg. & Sales Pracs. Litig.*, 2011 WL 1496342 (N.D. Cal. Apr. 20, 2011) stands for a similar proposition. Settlors urge only that discovery there was more narrowly tailored.  But the requests *are* appropriately tailored and sufficient indicia of collusion exist to warrant discovery into settlement communications.

[8] *Gilmore* plaintiffs have submitted an unredacted version of Dr. Sharp's report and so **Request No. 2** is withdrawn.  They also provide declarations that there were no side agreements on fees. Based thereon and on the lodestar chart of counsel who expect to share in fees, **Request No.  7** is (at this point) withdrawn.  *Gilmore* counsel also provide a damages estimate. Bare representation that Dr. Sharp "analyzed" sales data (Gilmore Opp. at 13 & n.4) does not solve the problem. The dearth of information is itself a problem for preliminary approval.  Given that *Tomlinson* plaintiffs do now have at least an estimate to address, however, **Request No. 3** is (at this point) withdrawn.

4

10) but that is not true. The calculation was based on sales data informally provided by Monsanto. Dkt. No. 94-1, Wade Decl. ¶ 13. Monsanto gives only a total sales figure. Dkt. No. 94-3, Rosenthal Decl. ¶12.[9] And neither settlor addresses lack of indication that Gilmore counsel took adequate steps to confirm completeness or accuracy of data provided. Mot. at 10–11. *Gilmore* counsel says it was "analyzed" by Dr. Sharp,[10] which, even if he was equipped to do so, still leaves it untested and unconfirmed. There indeed is much basis "behind [*Tomlinson* plaintiffs'] argument that this Court lacks sufficient information" to assess adequacy. Gilmore Opp. at 11. If insufficiently demonstrated now, the Court can judge whether the information provided is indeed adequate after full briefing, although it makes little sense to request sales data later. *See* Mon. Opp. at 20 n.16.

## B. Discovery in Related Actions Should Be Provided.

As in Delaware (Dkt. No. 25 at 15, 33), *Gilmore* plaintiffs rely on discovery taken in "Related Actions," primarily *Weeks* and *Ezcurra*. They again represent that 17,000 pages of documents were provided in *Weeks* and unspecified "thousands" of pages in *Ezcurra*. Dkt. No. 94 at 15, 16; Dkt. No. 94-1, Wade Decl. ¶ 6. That is not "extensive." Gilmore Opp. at 9.[11] *Gilmore*

---

[9] Representation that this estimate was "well informed" (*id*.) raises as many questions as answers. As just one example, Monsanto elsewhere acknowledged access to point-of-sale data from certain retailers, including Home Depot. *Ezcurra v. Monsanto*, Case 9:20-cv-80524 (S.D. Fla.), Dkt. No. 1-3, Guard Decl. ¶ 3. How much of such data Monsanto provided (as opposed to, for example, estimates from shipping records) is unaddressed.

[10] Per the unredacted report, Sharps' analysis in *Ezcurra* was on one category of products sold in Florida. Dkt. No. 94-1, Report ¶ 3. There is no new report or even declaration that the analysis there is appropriately applied to the many *other* products covered by the settlement. And the Florida class was limited to credit or debit card purchasers. Mot. at 10 & n.1. Monsanto's expert disclaimed the very methodology she used. Dkt. No. 94-3, Shampanier Decl. ¶ 4. Representation that "[t]he Court can see that the Settlement would provide Class Members with … approximately two-thirds of Plaintiffs' estimated best-case damages" (Gilmore Opp. at 10) has its own set of issues as *Tomlinson* plaintiffs will address in their opposition.

[11] By contrast, over 635,000 pages of documents have been produced in Missouri. Dkt No. 98-1, Rosenthal Decl. ¶ 10.

5

counsel say short-lived (May-June 2020) discovery in *Ezcurra* entailed "interrogatories, requests for admission, and requests for production." *Id*. Undisclosed, neither *Tomlinson* plaintiffs nor this Court can assess its "nature[.]" *Hemphill*, 225 F.R.D. at 620. The information "Plaintiffs *have* provided" (Gilmore Opp. at 14) is very little. The mediator (*id*.) neither references nor describes discovery material. Dkt. No. 94-1 Ex. 3, Welsh Decl. ¶¶ 5, 8. And as noted (Dkt. No. 97, at 13), discovery in *Weeks* was likely focused on the retailer, and in *Ezcurra*, Monsanto's conduct and purchases in Florida only. Again, if *Gilmore* plaintiffs are going to rely on discovery in other cases, they should provide it. *Id*. at 13 (citing cases); *see also Kim v. Allison*, 8 F.4th 1170, 1178–79 (9th Cir. 2021) ("the extent of discovery completed" must be explored "comprehensively"). Otherwise, they should not be heard to complain about questionability that it was informative here.

    **C.    Side Agreements Should Be Provided.**

Likely anticipating argument under *Radcliff v. Experian Info. Solis Inc*., 715 F.3d 1157 (9th Cir. 2013) and other cases, *Gilmore* plaintiffs provide declarations. None actually attest that he or she was promised nothing in connection "with the settlement." Gilmore Opp. at 15. Rather, all disclaim promised *receipt* of an award in connection with the "lawsuit."[12] Receipt is never guaranteed, but as noted, the agreement states that counsel is to "ensure" consent and promises that an award "shall" be requested. Dkt. No. 97 at 14. The Ninth Circuit requires careful scrutiny of incentive awards. *Radcliff*, 715 F.3d at 1163–64. *Gilmore* plaintiffs raise attorney-client privilege (Dkt. No. 99 at 15) but cannot use it "both as a sword and a shield." *Chevron v. Pennzoil*, 974 F.2d 1156, 1162 (9th Cir. 1992). Each submits a declaration "in support of preliminary approval" and places communications relevant thereto into issue.

---

[12] Dkt. No. 94-5, Ezcurra Decl. ¶ 9; Dkt. No. 94-5, Gilmore Decl. ¶ 8; Dkt. No. 94-7, Boyette Decl. ¶ 8; Dkt. No. 94-8, Jewell Decl. ¶ 8; Dkt. No. 94-9, Weeks Decl. ¶ 10; Dkt. No. 94-10, Williams Decl. ¶ 8; Dkt. No. 94-11, Taylor Decl. ¶ 8; Dkt. No. 94-12, Hanna Decl. ¶ 8.

*Gilmore* plaintiffs also provide declarations from their counsel that there were no side agreements. They do not demonstrate personal knowledge as to agreements between retailers and Monsanto. Gilmore Opp. at 14; Wade Decl. ¶ 44; Oster Decl. ¶ 16. Monsanto also says there were no side agreements, Mon. Opp. at 22, but without its own supporting declaration. Monsanto's primary response is to say that *it* wanted a broad release covering retailers and others not defendants in this action because it purportedly needed protection from "monetary and reputational exposure." *Id*. at 22–23. Mr. Rosenthal's declaration does not actually support that proposition,[13] which does not address issues identified, including the release of parties who did not contribute to the settlement." Mot. at 16. As to the adequacy of representation (*id.*), the release of retailers does not benefit a class with claims based on Monsanto's *own* conduct, labels, and advertising. And *Gilmore* counsel are not proposing representation of persons asserting claims against retailers except *their own* clients. Existing clients benefit more than other class members. And if this settlement had some basis in threat of future suits by other clients, that is worthy of exploration.

D. **Further Lodestar Information Should Be Provided.**

Monsanto insists that *Gilmore* plaintiffs "already included information on their current lodestar calculation," Mon. Opp. at 23, and *Gilmore* plaintiffs insist that their lodestar "need only" include hours purportedly billed. Gilmore Opp. at 16. Even the bare information provided raises substantial concern over including work by other counsel in other cases without showing how, if at all, it either informed the settlement or benefitted a nationwide class. Once again, if *Gilmore*

---

[13] Mr. Rosenthal says there were indemnity "obligations" to retailers "named in" Related Actions. Dkt. No. 94-3 ¶ 4. He does not say which, if any, retailer might have written versus "common law" indemnity; he does not say *all* retailers have indemnity, or that Monsanto paid a dime. As to "reputational damage," he recounts that "*Plaintiffs' counsel* indicated … that [retailer] actions were intended to pressure Monsanto" ((*id*.) (emphasis added)), which not only is inadmissible hearsay but itself raises concern. And all retailer cases failed or were abandoned in short order, belying any *actual* pressure on Monsanto, which Mr. Rosenthal does not say was in truth exerted.

7

plaintiffs are going to rely on that work to support both fees and adequacy of representation, they should provide it.  If they do not, the consequence should be on their shoulders.

E.     **Settlement Communications Should Be Provided.**

1.     **There is evidence of collusion.**

*Gilmore* counsel says discovery is appropriate only upon evidence "*from other sources* that the settlement negotiations were collusive." Gilmore Opp. at 12.  But here *there is* such evidence, including "terms" of the agreement. *Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987) (cited in *Lobatz v. U.S. W. Cellular of California, Inc*., 222 F.3d 1142, 1148 (9th Cir. 2000)).  Clear-sailing provisions, over-large fees, and reversionary benefit to a defendant are indicators of collusion. *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021); *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011).  Each is present here.[14]  And there is plenty of other evidence as well. Mot. at 17–20; Dkt. No. 78-1 at 17 n.22; Dkt. No. 86 at 2–4.  Use of a mediator (Gilmore Opp. at 11; Mon. Opp. at 16, 15) is neither substitute for independent assessment, *Kim*, 8 F.4th at 1180, nor dispositive of whether the "end product" is a fair, adequate, and reasonable settlement. *In re Bluetooth*, 654 F.3d at 948.

---

[14] Neither *Bluetooth* nor *Briseño* hold that fees must be "separate and apart from class funds" (Gilmore Opp. at 18, 19) to raise concern "that a defendant agreed to pay class counsel excessive fees in exchange for … lower amount for the class members." *Briseño,* 998 F.3d at 1027.  Indeed, courts must be vigilant *even if* a defendant "agrees to pay the fees independently of" class relief and ensure that fees are fair "regardless of whether they 'come from a common fund or are otherwise paid.'" *In re Bluetooth*, 654 F.3d at 948–49 (citation omitted).  If anything, fees *that reduce* class relief make the situation worse.  Moreover, settlors' argument that 25% is a "benchmark" neglects that fees are likely to be *49%* of the floor recovery, even on a gross basis, which they do not dispute. Gilmore Opp. at 18–19; Mon. Opp. at 15. Indeed, after deducting incentive awards, fees (at 25% of a $45 million ceiling) (Dkt. No. 94-1, §§ D.1, F.1), expenses (Dkt. No. 94-1, ¶42), notice costs (Dkt. No. 94-4, ¶13), and administrative costs at the lowest estimate (*id.*), class relief (at floor level of $23 million) is only ***$10.82 million*** as compared with $11.25 million in fees.  And whether reversion is "automatic" or not (Gilmore Opp. at 19), the structure of this claims-made settlement indeed does protect fees over class members (Mot. at 18) who should be the beneficiaries. *Briseño*, 998 F.3d at 1027.

8

## 2. The requested discovery is appropriate.

Monsanto's representation that it had no communications about relief Gilmore would seek (Mon. Opp. at 17) is not actually supported by the declaration it cites.[15] No declaration from *Gilmore* counsel supports it either. Monsanto also says foregoing punitive damages is irrelevant because the Court need not "do a jurisdiction-by-jurisdiction" analysis and is unhelpful on whether the settlement "provides adequate compensation for the types of claims released." *Id.* at 18.[16] All this ignores that lack of *request* for punitive damages reduces settlement value (*see* MDL Dkt. No. 13115 at 4) and that punitive damages *are* available under the claim asserted. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1076–77 (Del. 1983). *Gilmore* plaintiffs attempt to distinguish cases cited by *Tomlinson* plaintiffs, referring to "heightened standard" for collusion-based discovery. Gilmore Opp. at 17–18. But a burden to show evidence of collusion is not equivalent to "heightened standard," and there *is* sufficient evidence to warrant discovery. If discovery is successfully resisted, *Gilmore* counsel has no one but themselves to blame for their silence.

As to the timing of settlement discussions, Monsanto says there is nothing wrong with a global settlement "so long as the agreement reached is fair and reasonable." Mon. Opp. at 17. But that depends on, among other things, the adequacy of representation. Monsanto also asserts that settlors "did not reach agreement" or "begin substantive negotiations" on terms or amount "until several months after this action was filed." *Id.* Presumably, this refers to the mediation. Dkt. No.

---

[15] Mr. Rosenthal states that *"*Monsanto did not know, nor have an agreement with Plaintiffs, that Plaintiffs would not be seeking punitive damages in this action." Rosenthal Decl. ¶ 9. He does not disclaim that "no communications" were had on this subject.

[16] In *Zepeda v. PayPal, Inc.*, the court did not fault settlors for failing to calculate potential recovery at all. 2017 WL 1113293, at *12 (N.D. Cal. Mar. 24, 2017). It did not fault them for not taking exposure to punitive damages into account (*id.*) in reliance on *Rodriguez v. W. Publ'g Corp.*, which itself addressed only quantification of expected recovery. 563 F.3d 948, 965 (9th Cir. 2009). That indeed is a consideration here (N.D. California Procedural Guideline for Class Action Settlements No. 1 (e)) but one different than choosing to not assert punitive damages in the first place.

27, ¶ 6.  Monsanto did not actually disavow that discussions took place before that.  And settlors retained the mediator within a month. Dkt. No. 1; Dkt No. 27 at ¶ 4  This, along with other indicators (*e.g.*, lack of discovery) is more than a little suspect.  So is timing.[17]  Attempt to pass off filing in Delaware as jurisdictionally safe (Mon. Opp. at 17) is unpersuasive.  And adequacy of representation is seriously questionable if this case was filed simply as a settlement vehicle for Monsanto's benefit.

Discovery on what, if any, consideration was given to claims available to purchasers outside "Related Action" states (where failed claims were asserted by *Gilmore* counsel's own clients) would assist in evaluating multiple aspects of whether to grant preliminary approval, including (among others) value of claims for a nationwide class and adequacy of representation. As discussed, class members in Missouri have strong claims but had no seat at the table.  And there is substantial doubt that *Gilmore* counsel even considered, much less advocated, the value of claims available under home-state laws other than of their own clients. Discovery on naming additional plaintiffs post-settlement also is relevant. Monsanto's effort to explain away that decision (Mon. Opp. at 19 & n. 14) does not explain, among other things, that claims of these plaintiffs had already been dismissed or abandoned (*see* Dkt. No. 41-1 at 15, 17–20), adequacy to represent a nationwide class (*see id*. at 35, 36, 51) or how service awards to them are appropriate.

## CONCLUSION

*Tomlinson* plaintiffs' requests for discovery and limited intervention should be granted.

---

[17] Gilmore abandoned his case against Monsanto in Oregon on February 6, 2020 (Case. No. 3:19-cv-01123-SB (D. Ore.) Dkt. No. 42). He filed this action shortly after rejection of the first global settlement.  Dkt No. 11182 (07/06/20). Mediation took place shortly after the second global settlement on February 3, 2021 (which, inexplicably to *Tomlinson* plaintiffs at the time, carved out this and "Related Actions" from the stay provisions). Dkt No. 12509-2, *Ramirez* Am. Sett. § 30.11.

Dated: February 11, 2022                                  Respectfully submitted,

                                                        **STUEVE SIEGEL HANSON LLP**

/s/ *Patrick J. Stueve*
Patrick J. Stueve, Mo. Bar #37682
Todd E. Hilton, Mo. Bar #51388
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
stueve@stuevesiegel.com
hilton@stuevesiegel.com


**GRAY, RITTER & GRAHAM, P.C.**
Don M. Downing, #30405 MO
Gretchen Garrison, #33963 MO
Cort A. VanOstran, #67276 MO
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone: (314) 241-5620
Facsimile: (314) 241-4140
ddowning@grgpc.com
ggarrison@grgpc.com
cvanostran@grgpc.com

*Attorneys for Proposed Intervenors*
*Ryan Tomlinson and Carol Richardson*

11