# EXHIBIT 1

Patrick J. Stueve, #37682 MO
Todd E. Hilton, #51388 MO
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
hilton@stuevesiegel.com
stueve@stuevesiegel.com

Don M. Downing, #30405 MO
Gretchen Garrison, #33963 MO
Cort A. VanOstran, #67276 MO
**GRAY, RITTER & GRAHAM, P.C.**
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone: (314) 241-5620
ddowning@grgpc.com
ggarrison@grgpc.com
cvanostran@grgpc.com

*Counsel for Proposed Intervenors*
*Ryan Tomlinson and Carol Richardson*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document related to: *Gilmore v. Monsanto*, Case No. 21-cv-08159 | **DECLARATION OF DON M. DOWNING IN SUPPORT OF CONSOLIDATED REPLY TO MONSANTO COMPANY'S AND GILMORE PLAINTIFFS' OPPOSITIONS TO INTERVENTION AND DISCOVERY**<br><br>Date/Time: March 3, 2022 at 10:00 a.m.<br>Via Zoom Webinar<br>Hon. Vince G. Chhabria |

I, DON M. DOWNING, declare:

1.      I am an attorney admitted to practice before the courts of the State of Missouri.  I am a director and shareholder at Gray Ritter Graham and I represent proposed intervenors Ryan Tomlinson and Carol Richardson as well as members of the certified class in *Tomlinson et al v. Monsanto Company*, Case No. 1916-CV22788, pending in Jackson County, Missouri.  I am competent to testify to the matters set forth in this declaration, and, if called to do so, I would and could so testify.

2.      I joined Gray Ritter Graham in July 2004.  From 2002 to 2004, I was the managing partner of the St. Louis office of Stinson Morrison Hecker LLP, a member of the firm's governing Policy Committee, and a member of the firm's commercial litigation practice group.  From 1996 to 2002, I was the managing shareholder of the St. Louis office of Stinson, Mag & Fizzell, P.C., a member at various times of the firm's Board of Directors and Executive Committee, and a member of the firm's litigation practice group.  From 1993 through 1995, I was Missouri's Chief Deputy Attorney General and actively litigated numerous cases on behalf of the State of Missouri.  From 1990 through 1992, I was a partner in the Kansas City office of Stinson, Mag & Fizzell, and a member of the firm's litigation practice group.  From 1984 through 1989, I was an associate in the Kansas City office of Stinson, Mag & Fizzell, and a member of the firm's litigation practice group. From 1982 to 1984, I was a law clerk to the Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.  I graduated from the University of Missouri School of Law in 1982.

3.      During my entire career, the focus of my practice has been on complex commercial litigation, including class actions and consumer fraud litigation.   I have been inducted into both the American College of Trial Lawyers and the International Academy of Trial Lawyers.

4.      I have defended dozens of class actions, including at least five consumer fraud class actions.  I also have defended several consumer fraud actions and civil investigative demands brought by state attorneys general.

5.      I also have filed at least twelve consumer fraud actions on behalf of plaintiffs and several consumer fraud actions on behalf of the State of Missouri.  I have extensive experience in mass tort litigation, serving as Co-Lead Counsel in *In re Syngenta AG MIR 162 Corn Litigation*, MDL No. 2591, which included a four-week bellwether trial resulting in verdict for the plaintiffs and a $1.51 billion settlement on behalf of corn farmers nationwide, and the *In re Genetically Modified Rice Litigation*, MDL No. 1811, which included three four-week bellwether trials reach resulting in verdicts for the plaintiffs and a global settlement of $750 million on behalf of rice farmers as well as numerous settlements for non-farmer plaintiffs.  I am presently chair of the Plaintiffs' Executive Committee in *In re*: Dicamba Herbicides Litigation, MDL No. 2820, which included a $400 million settlement for soybean  and other farmers after one four-week trial that resulted in a verdict for plaintiff.

6.      I submit this declaration in support of proposed intervenors Ryan Tomlinson and Carol Richardson's motion for intervention for purposes of taking discovery.

7.      Following the Court's denial of the parties' motion seeking suggestion of remand, the parties entered a Joint Administrative Motion to set a briefing schedule (Dkt. No. 89) on January 13, 2022.

8.      Several hours later on that same day, and as soon as the parties formally moved in this Court in relation to their proposed settlement, *Tomlinson* plaintiffs filed motions for intervention to oppose preliminary approval and for purposes of taking discovery, along with

proposed discovery requests.  Because of a clerical filing error, those entries were terminated, and the instant motions were refiled on January 21, 2022.

9.      *Tomlinson* plaintiffs' lawsuit was filed in mid-2019.  They filed a motion for class certification in July 2020 and full briefing was completed by November 2020 with a reply, a true and correct copy of which is attached hereto as Exhibit A. I and co-counsel strongly believed that certification would be granted and on March 22, 2021, it was.

10.     As class counsel in *Tomlinson*, it is my responsibility and that of co-counsel to protect and advance the interests of all members of that class.  I strongly believe, based upon my extensive experience in complex class action and mass tort litigation, that the proposed settlement is not in the interests of the class *Tomlinson* plaintiffs and we as counsel represent for reasons previously expressed in Delaware (and that will be set out here). That is precisely why we sought to carve out the certified Missouri class from this settlement. Desire to "negotiat[e] a separate settlement" also proceeds from our representation of a class with strong claims.

11.     Monsanto's characterization of "threats" notwithstanding, were Monsanto to carve out *Tomlinson*, there would be no need for either opposition or discovery.  I have no wish to "delay resolution of this action for years" as Mr. Rosenthal suggests and indeed sought to prevent that by proposing that Monsanto not foist this settlement on class members I have a duty to represent.

12.     Discovery requests were informed by arguments and issues that arose in prior briefing in Delaware.

    **I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on February 11, 2022, in St. Louis, Missouri.**

Don M. Downing
*Counsel for Proposed Intervenors Ryan Tomlinson and Carol Richardson*

# EXHIBIT A

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY**

| | | |
|---|---|---|
| **RYAN TOMLINSON and** | ) | |
| **CAROL RICHARDSON,** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 1916-CV22788** |
| | ) | **Division: 9** |
| **vs.** | ) | |
| | ) | |
| **MONSANTO COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT
OF MOTION FOR CLASS CERTIFICATION**

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

ARGUMENT......................................................................................................3

I.     MONSANTO'S RELIANCE-BASED ARGUMENTS IGNORE
MISSOURI LAW ........................................................................................3

II.    THE CLASS IS NOT OVERBROAD ........................................................6

      A.    Monsanto's Argument Concerning Supposed "Awareness"
          of Roundup's Safety Risk Is Contrary to Missouri Law
          and Irrelevant to Certification ................................................6

             1.    Monsanto's argument has been expressly
                 and soundly rejected ................................................6

             2.    Dr. Rossi's opinions are legally irrelevant
                 and patently flawed ................................................9

      B.    Monsanto's Argument That a Misrepresentation Must
          Affect Purchasing Decisions Is Contrary to Missouri Law.................13

      C.    Monsanto's Argument That Consumers Who Used
          Roundup Are Uninjured Is Contrary to Missouri Law .......................16

III.   COMMON ISSUES PREDOMINATE ........................................................20

      A.    There Are Numerous Common Questions to Meet
          Predominance ........................................................................20

      B.    Monsanto's Argument That Roundup Use Defeats
          Predominance Is Meritless ....................................................22

      C.    Benefit-of-the-Bargain Injury Is an Objective Standard ....................25

      D.    Although Not Required, Classwide Damages Can Be
          Demonstrated by Objective Benefit-of-the-Bargain Measure
          or "Model" of Damages ........................................................25

IV.   PLAINTIFFS ARE TYPICAL AND ADEQUATE REPRESENTATIVES.....30

      A.    Plaintiffs' Claims Are Typical of the Class ........................................30

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

|  | 1. | Plaintiffs' claims are not atypical of other class members.............................................31 |
|  | 2. | Monsanto's "standing" argument is misplaced, premature, and rejected by a majority of courts ...........................32 |
|  | 3. | Plaintiffs are not "atypical" for lack of knowledge regarding AG and I&P product features and uses....................34 |
| B. | Ms. Richardson Is an Adequate Representative ...................35 |  |
|  | 1. | Ms. Richardson has adequate knowledge and will fulfill her obligations as class representative ........................35 |
|  | 2. | Ms. Richardson is not disqualified because of "family relationship" .................................................36 |

V.   A CLASS ACTION IS A SUPERIOR FORM OF ADJUDICATION ..........37

VI.   THE CLASS IS ASCERTAINABLE ................................................38

    A.   Identification of Purchasers Is Administratively Feasible ..................39

    B.   The Class Definition Is Not "Indefinite"...................................42

    C.   The Class Definition Can Be Modified as Appropriate.......................43

CONCLUSION ........................................................................44

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

## **TABLE OF AUTHORITIES**

**State Cases**                                                                  **Page**

*Collora v. R.J. Reynolds Tobacco Co*,
  2003 WL 23139377 (Mo. Cir. Ct. Dec. 31, 2003) ...............................................30

*Comm. on Legisl. Research of Mo. Gen. Assembly v. Mitchell*,
  886 S.W.2d 662 (Mo. App. W.D. 1994)...................................................................23

*Conway v. CitiMortgage, Inc.*,
  438 S.W.3d 410 (Mo. 2014) ......................................................................3, 14, 24

*Craft v. Philip Morris Cos., Inc.*,
  2003 WL 23139381 (Mo. Cir. Ct. Dec. 31, 2003)................................................17

*Craft v. Philip Morris Cos., Inc.,*
  190 S.W.3d 368 (Mo. App. E.D. 2005) ....................................................... *passim*

*Dale v. DaimlerChrysler Corp.*,
  204 S.W.3d 151 (Mo.App. W.D. 2006) ......................................20, 22, 31, 32, 36

*Dep't of Social Srvs. v. Villa Capri Homes, Inc.*,
  684 S.W.2d 327 (Mo. 1985) ..................................................................................4

*Doyle v. Fluor Corp.*,
  199 S.W.3d 784 (Mo. App. E.D. 2006) ...........................................................20, 27

*Edmonds v. Hough*,
  344 S.W.3d 219 (Mo. App. E.D. 2011) ...............................................................4, 14

*Elsea v. U.S. Eng'g Co.*,
  463 S.W.3d 409 (Mo. App. W.D. 2015)....................................................... *passim*

*Gerken v. Sherman*,
  351 S.W.3d 1 (Mo. App. W.D. 2011).....................................................................29

*Gibbons v. J. Nuckolls, Inc.*,
  216 S.W.3d 667 (Mo. 2007) ..................................................................................24

*Hale v. Wal-Mart Stores, Inc.*,
  231 S.W.3d 215 (Mo. App. W.D. 2007)....................................................... *passim*

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

*Hess v. Chase Manhattan Bank, USA, N.A.*,
220 S.W.3d 758 (Mo. 2007) .............................................................................3

*Hope v. Nissan N. Am., Inc.*,
353 S.W.3d 68 (Mo. App. W.D. 2011)......................................... *passim*

*Huch v. Charter Comm'ns, Inc.*,
290 S.W.3d 721 (Mo. 2009) ................................................................3, 4, 24

*Lucas Subway MidMo, Inc. v. Mandatory Poster Agency, Inc.*,
524 S.W.3d 116 (Mo. App. W.D. 2017)............................................33, 38

*McGuire v. Kenoma, LLC*,
375 S.W.3d 157 (Mo. App. W.D. 2012)................................................6

*Meyer ex rel. Coplin v. Fluor Corp.*,
220 S.W.3d 712 (Mo. 2007) ....................................................................1

*Mitchell v. Resid. Funding Corp.*,
334 S.W.3d 477 (Mo. App. W.D. 2010)................................................33

*Murphy v. Stonewall Kitchen, LLC*,
503 S.W.3d 308 (Mo. App. E.D. 2016) ............................................16, 17

*Plubell v. Merck & Co., Inc.*,
289 S.W.3d 707 (Mo. App. W.D.  2009)...................................... *passim*

*Schoenlein v. Routt Homes, Inc.*,
260 S.W.3d 852 (Mo. App. E.D. 2008) ..................................................17

*Schuchmann v. Air Srvs. Heating & Air Cond., Inc.*,
199 S.W.3d 228 (Mo. App. S.D. 2006) ............................................4, 14

*State v. Mack*,
66 S.W.3d 706 (Mo. 2002) ....................................................................6

*State ex rel. Am. Fam. Mut. Ins. Co. v. Clark*,
106 S.W.3d 483 (Mo. 2003) ........................................................1, 22, 27

*State ex rel. Coca-Cola Co. v Nixon*,
249 S.W.3d 855 (Mo. 2008) ..................................................7, 8, 25, 39

*State ex rel. McKeage v. Cordonnier*,
357 S.W.3d 597 (Mo. 2012) ........................................................1, 22

iv

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

*State ex rel. Union Planters Bank v. Kendrick*,
    142 S.W.3d 729 (Mo. 2004) ...................................................................1

*Sunset Pools of St. Louis, Inc. v. Schaefer*,
    869 S.W.2d 883 (Mo. App. E.D. 1994) .......................................17, 18

*Wright v. Country Club of St. Albans*,
    269 S.W.3d 461 (Mo. App. E.D. 2008) ...............................................20

**Federal Cases**

*Ahmad v. City of St. Louis, Missouri*,
    2019 WL 2009589 (E.D. Mo. May 7, 2019) .........................................42

*Aldapa v. Fowler Pkg.Co., Inc.*,
    323 F.R.D. 316 (E.D. Cal. 2018) .........................................................39

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................20

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)......................................................................16, 20

*Bellinder v. Microsoft Corp.*,
    2001 WL 1397995 (D. Kan. Sept. 7, 2001) ........................................32

*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) ...............................................................36

*Brown v. SCI Funeral Services of Florida, Inc.*,
    212 F.R.D. 602 (S.D. Fla. 2003).........................................................41

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .............................................................39

*Bratton v. Hershey Co.*,
    2018 WL 934899 (W.D. Mo. Feb. 16, 2018) ........................................8

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)...............................................................................26

*Competitive Edge, Inc. v. Staples, Inc.*,
    763 F. Supp. 2d 997 (N.D. Ill. 2010) ..................................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..............................................................................12

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................41

*Faltermeir v. FCA US LLC*,
  899 F.3d 617 (8th Cir. 2018) ...........................................................13

*Fish v. Kobach*,
  309 F. Supp. 3d 1048 (D. Kan. 2018) ................................................11

*Fischer v. Int'l Tel. & Tel. Corp.*,
  72 F.R.D. 170 (E.D.N.Y. 1976) .........................................................36

*Forcellati v. Hyland's, Inc.*,
  2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .......................................37

*George v. Omega Flex, Inc.*,
  2020 WL 4718386 (W.D. Mo. Aug. 13, 2020).......................................9

*Grabinski v. Blue Springs Ford Sales, Inc.*,
  136 F.3d 565 (8th Cir. 1998) ...........................................................19

*Gratz v. Bollinger*,
  539 U.S. 244 (2003)........................................................................33

*Grovatt v. St. Jude Med., Inc.*,
  522 F.3d 836 (8th Cir. 2008) ...........................................................13

*Guido v. L'Oreal, USA, Inc.*,
  2014 WL 6603730 (C.D. Cal. July 24, 2014)...................................27, 40

*Halvorson v. Auto-Owners Ins. Co.*,
  718 F.3d 773 (8th Cir. 2013) ...........................................................26

*Hill v. LLR, Inc.*,
  2019 WL 2404900 (D. Mont. Mar. 8, 2019) .......................................38

*In re Barrick Gold Sec. Litig.*,
  314 F.R.D. 91 (S.D.N.Y. 2016) .........................................................26

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
  687 F. Supp. 2d 897 (W.D. Mo. 2009) ...............................................16

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
  2011 WL 6740338 (W.D. Mo. Dec. 22, 2011)...........................8, 18, 42

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
  2014 WL 108197 (D. Mass. Jan. 10, 2014) .......................................................14

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) .............................................................................26

*In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*,
  2019 WL 1418292 (W.D. Mo. Mar. 21, 2019)............................................ *passim*

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig.*,
  2014 WL 1669930 (S.D. Fla. Apr. 28, 2014) ......................................................10

*In re Linerboard Antitrust Litig.*,
  305 F.3d 145 (3d Cir. 2002)................................................................................42

*In re McCormick & Co., Inc., Pepper Prods. Mkg. & Sales Pracs. Litig.*,
  422 F. Supp. 3d 194 (D.D.C. 2019) ......................................................................8

*In re McNeil Consumer Healthcare, Mkg. and Sales Pracs. Litig.*,
  2011 WL 2802854 (E.D. Pa. July 15, 2011)........................................................18

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
  2009 WL 331426 (D.N.J. Feb. 10, 2009) ............................................................36

*In re Milk Prods. Antitrust Litig.*,
  195 F.3d 430 (8th Cir. 1999) ........................................................................31, 34

*In re Monster Worldwide, Inc. Sec. Litig.*,
  251 F.R.D. 132 (S.D.N.Y. 2008) ........................................................................36

*In re Novo Nordisk Sec. Litig.*,
  2020 WL 502176 (D.N.J. Jan. 31, 2020)..............................................................34

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013) ............................................................................27

*In re: Syngenta AG MIR 162 Corn Litig.*,
  2016 WL 5371856 (D. Kan. Sept. 26, 2016)........................................................41

*In re Teflon Prod. Liab. Litig.*,
  254 F.R.D. 354 (S.D. Iowa 2008) .......................................................................40

*Irvin E. Schermer Tr. by Kline v. Sun Equities Corp.*,
  116 F.R.D. 332 (D. Minn. 1987) .........................................................................37

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

*Johnson v. Atkins Nutritionals, Inc.*,
    2017 WL 6420199 (W.D. Mo. Mar. 29, 2017)...........................................4, 15, 16

*K.A. by & Through B.W. v. Children's Mercy Hosp.*,
    2019 WL 2144815 (W.D. Mo. May 16, 2019) ...............................................13, 16

*Kelly v. Cape Cod Potato Chip Co.*,
    81 F. Supp. 3d 754 (W.D. Mo. 2015) ....................................................................33

*Lafollette v. Liberty Mut. Fire Ins.*,
    2016 WL 4083478 (W.D. Mo. Aug. 1, 2016)........................................................38

*Lewis v. Goldsmith*,
    95 F.R.D. 15 (D.N.J. 1982) ...................................................................................36

*Martin v. Monsanto Co.*,
    2017 WL 1115167 (C.D. Cal. March 24, 2017) ....................................................37

*Malchman v. Davis*,
    588 F. Supp. 1047 (S.D.N.Y. 1984).......................................................................37

*McAllister v. St. Louis Rams, LLC*,
    2018 WL 1299553 (E.D. Mo. Mar. 13, 2018) .......................................................42

*McCall v. Monro Muffler Brake, Inc.*,
    2013 WL 1282306 (E.D. Mo. Mar. 27, 2013) .........................................................8

*McLeod v. Bank of Am., N.A.*,
    2017 WL 6373020 (N.D. Cal. Dec. 13, 2017)........................................................27

*Menocal v. GEO Group, Inc.*,
    882 F.3d 905 (10th Cir. 2018) ...............................................................................27

*Mikhlin v. Johnson & Johnson*,
    2014 WL 6084004 (E.D. Mo. Nov. 13, 2014)........................................................17

*Morgan v. United Parcel Serv. of Am., Inc.*,
    169 F.R.D. 349 (E.D. Mo. 1996) ...........................................................................20

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) .................................................................................42

*Murphy v. Gospel for Asia, Inc.*,
    327 F.R.D. 227 (W.D. Ark. 2018) .........................................................................39

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

*Myers-Armstrong v. Actavis Totowa, LLC*,
　　2009 WL 1082026 (N.D. Cal. April 22, 2009)......................................18

*Neale v. Volvo Cars of N. Am., LLC*,
　　794 F.3d 353 (3d Cir. 2015)..................................................26, 27

*New Directions Treatment Srvs. v. City of Reading*,
　　490 F.3d 293 (3d Cir. 2007)......................................................34

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*,
　　248 F.R.D. 363 (D. Mass. 2008)..................................................29

*O'Shaughnessy v. Cypress Media, L.L.C.*,
　　2015 WL 4197789 (W.D. Mo. July 13, 2015) ....................................37

*Owen v. Gen. Motors Corp.*,
　　2007 WL 1655760 (W.D. Mo. June 5, 2007) .......................................8

*Quiroz v. Rev. Prod. Mgmt., Inc.*,
　　252 F.R.D. 438 (N.D. Ill. 2008) ...............................................35

*Paxton v. Union Nat. Bank*,
　　688 F.2d 552 (8th Cir. 1982) ..................................................35

*Phillips v. Joint Legisl. Comm. on Perf. & Expenditure Review of State of Miss.*,
　　637 F.2d 1014 (5th Cir. 1981) .................................................36

*Rawa v. Monsanto Co.*,
　　2017 WL 3392090 (E.D. Mo. Aug. 7, 2017)........................................32

*Ries v. Arizona Bevs. USA LLC*,
　　287 F.R.D. 523 (N.D. Cal. 2012).................................................41

*Rivera v. Wyeth-Ayerst Labs.*,
　　283 F.3d 315 (5th Cir. 2002) ..................................................18

*Roach v. T.L. Cannon Corp.*,
　　778 F.3d 401 (2d Cir. 2015)....................................................26

*SI03, Inc. v. Musclegen Research, Inc.*,
　　2020 WL 2468412 (E.D. Mo. May 13, 2020) .........................................8

*Sabal Trail Transm., LLC v. 13.386 Acres of Land in Lake County Florida*,
　　2018 WL 8583439 (M.D. Fla. Aug. 13, 2018) .....................................11

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
    821 F.3d 992 (8th Cir. 2016) .......................................................................39

*Scanio v. Zale Delaware, Inc.*,
    2012 WL 368741 (E.D. Mo. Feb. 3, 2012)..............................................14

*Sitzer v. Nat'l Ass'n of Realtors*,
    420 F. Supp. 3d 903 (W.D. Mo. 2019) ....................................................18

*Stephens v. Arctic Cat Inc.*,
    2012 WL 628867 (E.D. Mo. Feb. 27, 2012).............................................14

*Suchanek v. Sturm Foods, Inc.*,
    2019 WL 1978342 (S.D. Ill. May 3, 2019)...............................................33

*Texas Grain Storage, Inc. v. Monsanto Co.*,
    2019 WL 4087430 (W.D. Tex. June 24, 2019) ........................................34

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)...............................................................................26

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000)......................................................................42

*White v. Just Born, Inc.*,
    2018 WL 3748405 (W.D. Mo. Aug. 7, 2018).............................................8

*Yokoyama v. Midland Nat. Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ...................................................................27

**Statutes, Regulations and Rules**

Mo. Rev. Stat. § 407.010 ....................................................................................23

Mo. Rev. Stat. § 407.020 ..............................................................................13, 14

Mo. Rev. Stat. § 407.025 ................................................................14, 19, 23, 38

15 CSR § 60-8.020..............................................................................................21

15 CSR § 60-9.020...........................................................................................4, 7

15 CSR § 60-9.050................................................................................................4

15 CSF § 60-9.060................................................................................................4

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

15 CSR § 60-9.070 ...................................................................................4, 7

15 C.S.R. § 60-9.010 ......................................................................................15

15 CSR § 60-9.110 ....................................................................................4, 15

Missouri Supreme Court Rule 52.08 .................................................................39

Federal Rule 23 .............................................................................................39

**Miscellaneous**

MAI 39.01 .......................................................................................................4

1 Newberg on Class Actions § 2:3 (5th ed.) ......................................................33

1 Newberg on Class Actions § 3:67 (5th ed.) ....................................................34

2 Newberg on Class Actions § 4:54 (5th ed.) ....................................................27

Diamond, Reference Guide on Survey Research, Fed. Jud. Ctr. (3d ed) ...................10, 12

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

**INTRODUCTION**

The standards for class certification could not be more clear.  **First,** despite Monsanto's call for "caution," Sugg. in Opp. to Mot. for Class Cert. ("Opp.") at 15, Missouri courts have never disfavored class treatment, which "promote[s] judicial economy[.]" *State ex rel. Union Planters Bank v. Kendrick*, 142 S.W.3d 729, 735 (Mo. 2004).  The Missouri Supreme Court expressly directs courts to "err in close cases in favor of certification" because it "can be modified as the case progresses." *Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 715 (Mo. 2007); *accord State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 600 (Mo. 2012) (same).

**Second**, despite (otherwise unavailing) efforts to overcome predominance, Monsanto forgets that not all issues need be common. Even one common question satisfies predominance where it is an overriding one in the litigation, *State ex rel. Am. Fam. Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 488 (Mo. 2003), and Monsanto does not contest the several core overriding common issues identified in Plaintiffs' opening brief. *Infra*, Section III.A.

**Third**, despite Monsanto's quest to litigate the merits, a court "has no authority" to determine "whether the plaintiff has stated a cause of action or will prevail on the merits." *Meyer*, 220 S.W.3d at 715; *see also Craft v. Philip Morris Cos., Inc.*, 190 S.W.3d 368, 377 (Mo. App. E.D. 2005) ("whether a proper class exists does not depend on the merits of the cause of action"); *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 222 (Mo. App. W.D. 2007) ("courts do not conduct an inquiry into the merits . . . when class certification is at issue."). In addition, "plaintiffs' allegations are accepted as true." *Hale,* 231 S.W.3d at 227; *accord Craft*, 190 S.W.3d at 377. While "some" evidence may be considered, this goes "only so far as to determine whether, given the factual setting of the case, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Elsea v. U.S. Eng'g Co.*, 463 S.W.3d 409,

1

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

416 (Mo. App. W.D. 2015) (quoting *Hale*, 231 S.W.3d at 222).  It is error to "find" common questions negated by defendant's evidence.  *Elsea*, 463 S.W.3d at 419; *see also id*, at 416 n.6 (defendants "presented improper expert witness 'merits' testimony" and the trial court "improperly relied upon such testimony in reaching its certification ruling"); *Hale*, 231 S.W.3d at 227 (arguments tending to negate allegations should be ignored because they are taken as true).[1]

Contrary to these basic rules, Monsanto even attempts to litigate whether Roundup is dangerous (*see* Opp. at 5–7) as well as a host of legal issues.  Among other things, Monsanto:

- constantly attempts to inject reliance into the MMPA when reliance is not required (*infra* Sections I, II.A–C, III.C);

- contends that a person must see or hear a misrepresentation "before his purchase" for "effect on his purchase decisions" (Opp. at 25) when the MMPA and Missouri law are clear that neither is required (*infra*, Sections I, II.B);

- ignores that under the MMPA, injury can be established under Missouri's objective benefit-of-the-bargain rule (*infra*, Sections I, III.C–D);

- claims that persons who use a product cannot be injured (Opp. at 22–24) when Missouri law is to the contrary in multiple respects (*infra* Section II.C);

- contends that purchase for "personal, family or household" use is "subjective" individual inquiry (Opp. at 33–35) when use is not subjective, and predominance is not defeated by such questions under Missouri law (*infra*, Section III.B);

- contends that business use does not qualify as "personal" use (Opp. at 33–35) when (aside from incorrectness) legal conclusions on whether the petition states a claim are inappropriate at the certification stage (*infra*, Section III.B);

- engages in debate on whether Plaintiffs can demonstrate classwide damages (Opp. at 36–39), not even required at this juncture, and mischaracterizes Plaintiffs' damages model, which is expressly approved in this state (*infra*, Section III.D);

---

[1] Fond of soundbites, Monsanto cites *Craft* for the proposition that Plaintiffs "bear[] the burden of proof." Opp. at 17.  That case, however, holds that a plaintiff ***is not*** required to prove, among other things, post-purchase behavior (irrelevant) or her damage theory at class certification.  *Craft,* 190 S.W.3d at 382–83, 386.  Oddly, Monsanto also cites *Hope v. Nissan N. Am., Inc*., 353 S.W.3d 68 (Mo. App. W.D. 2011), which held that as certification often is addressed before discovery, plaintiffs' allegations are taken as true, and "the determination of class certification is based primarily upon the allegations in the petition."  *Id.* at 74.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

- fails to adhere to standards on typicality (Opp. at 27–28; *infra* Section IV.A);

- challenges standing (Opp. at 29), premature under Missouri law and based on federal decisions contradicted by majority position (*infra*, Section IV.A.2);

- challenges superiority by suggesting that L&G customers can obtain a refund (Opp. at 39–40), an argument Missouri and other courts reject (*infra*, Section V);

- attempts to defeat ascertainability with demand for customer "list" (Opp. at 17–18) before discovery and based on one federal decision contradicted by others in and outside Missouri (*infra*, Section VI.A); and

- claims that the "use" component of a MMPA-based class definition is subjective (Opp. at 19, 33–34) when courts have rejected that argument, and Monsanto itself urges product segments divided by use categories (*infra*, Sections III.B, VI.B).

Not once in its 40-page opposition does Monsanto address the MMPA's language, cite governing regulations, or case law in this state, including *Plubell*, rejecting virtually every argument it advances.  Unable to sustain its positions under Missouri law, Monsanto cites federal decisions that, like Monsanto itself, misperceive or disregard that law. These decisions, however, have no binding effect and moreover, have been rejected by other federal courts in Missouri and elsewhere.

## ARGUMENT

## I.    MONSANTO'S RELIANCE-BASED ARGUMENTS IGNORE MISSOURI LAW.

The MMPA does not require reliance.  Sugg. in Supp. at 14. Monsanto's continuous attempts to inject reliance into the MMPA, directly and indirectly, must be rejected.

The MMPA "expand[s] the common law definition of fraud 'to preserve fundamental honesty, fair play and right dealings in public transactions.'" *Conway v. CitiMortgage, Inc*., 438 S.W.3d 410, 414 (Mo. 2014) (quoting *State ex rel. Danforth v. Indep. Dodge, Inc*., 494 S.W.2d 362, 368 (Mo. App. 1973)); *Huch v. Charter Comm'ns, Inc*., 290 S.W.3d 721, 724 (Mo. 2009) (same).  While a fraud claim requires reliance, a MMPA claim "expressly does not."  *Hess v. Chase Manhattan Bank, USA, N.A*., 220 S.W.3d 758, 774 (Mo. 2007). Regulations interpreting

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

the MMPA, which have the force of law (*Dep't of Social Servs. v. Villa Capri Homes, Inc*., 684 S.W.2d 327, 332 (Mo. 1985); *Huch*, 290 S.W.3d at 725), also make clear that reliance is not required. *E.g.,* 15 CSR § 60-9.020(2) ("Reliance, actual deception, . . . or . . . culpable mental state . . . ***are not elements*** of deception"); (emphasis added).[2]  *See also* MAI 39.01, cmt. D ("A consumer's reliance on an unlawful practice is not required under the MMPA."); *Edmonds v. Hough*, 344 S.W.3d 219, 223 (Mo. App. E.D. 2011) (plaintiff "need not establish reliance" on unlawful practice); *Schuchmann v. Air Srvs. Heating & Air Cond., Inc*., 199 S.W.3d 228, 232 (Mo. App. S.D. 2006) (referring to "plethora of case law holding that the MMPA . . . eliminates the need to prove . . . reliance"); *Johnson v. Atkins Nutritionals, Inc*., 2017 WL 6420199, at *10 (W.D. Mo. Mar. 29, 2017) ("Missouri case law is clear" that reliance on an unlawful practice is not required).

It is crystal clear that the MMPA does not require that plaintiff rely on defendant's unlawful practice. Neither does reliance reappear through the back door of causation. Just as reliance is not required, neither must the unlawful practice cause a purchase.

In *Plubell v. Merck & Co., Inc*., Merck sought to convince trial and appellate courts that a class of persons who took Vioxx could not be certified because, among other things, Vioxx was an effective pain reliever that many doctors would still prescribe, and patients would still take, notwithstanding more information on risks.[3]  The trial court rejected such arguments as based on the idea that reliance is required, which it is not.  *See* Order Granting Mot. for Class Cert., Case

---

[2] *See also* 15 CSR § 60-9.050(2) ("Reliance and injury are not elements of false pretense"); 15 CSF § 60-9.060 (2) ("Reliance and injury are not elements of false promise"); 15 CSR § 60-9.070(2) ("Reliance, knowledge that the assertion is false or misleading, intent to defraud, . . . or any other capable mental state , , , are not elements of misrepresentation"); 15 CSR 60-9.110(4) ("Reliance and intent that others rely . . . are not elements of concealment, suppression or omission").

[3] Merck's Sugg. Opp. Mot. for Class Cert., Case No.  04CV235817-01 (Cir. Ct. Jackson Cty. Mo.), attached as Ex. A, at 16–17; *see also id.* at 21 ("for many patients, Vioxx was the only anti-inflammatory pain medication that worked"); Merck's Mot. for Decert., attached as Ex. B, at 2–4; *see also* Sugg. in Supp. of Decert., attached as Ex. C, at 1–2, 5–12 (asserting no injury as to persons who would still take Vioxx).

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

No. 04CV235817-01 (June 12, 2008), attached as Ex. D, at 13–14.  It also recognized that injury under the MMPA is not based on reaction to information on safety risks.  Rather, injury occurs based on ascertainable loss under a benefit-of-the bargain rule.  *Id.* at 19–21.  Merck continued on appeal to insist that many physicians "have testified that they would still prescribe [Vioxx] today" and "many consumers have readily admitted that they would still take Vioxx," urging among other things that such persons "did not 'lose' anything as a result of Merck's alleged deception." Merck & Co. App. Br. No. WD 698088 (W.D.), attached as Ex. E, at  39, 46.

The Western District squarely rejected the notion that to prove loss, each person must show "that they would not have used Vioxx had the risks been known" because the MMPA "does not require these subjective, individualized inquiries."  *Plubell v. Merck & Co., Inc*., 289 S.W.3d 707, 714 (Mo.  App.  W.D.  2009).  First, "[b]oth our case law and the governing regulations make clear that the consumer's reliance on an unlawful practice is not required under the MMPA."  *Id.*  (citing cases and regulations).  Correspondingly, causation "does not require that an unlawful practice cause a 'purchase.'"  *Id.*  Rather, the MMPA authorizes suit by persons who purchase merchandise "and *thereby suffers an ascertainable loss* of money . . . *as a result of* [an unlawful practice]."  *Id.* (quoting Mo. Rev. Stat. § 407.025.1) (emphasis original).  The words "as a result of" modifies "ascertainable loss," not "purchases or leases."  Thus, "a plaintiff's *loss* should be a result of the defendant's unlawful practice, but the statute does not require that the *purchase* be caused by the unlawful practice."  *Id*. (emphasis original).  Hence, class members were not "required to show what they would or would not have done had the product not been misrepresented and the risks known."  *Id.*  Finally, Missouri's "benefit-of-the-bargain" rule applies "to meet the element of ascertainable loss." *Id*. at 715 (citing *Schoenlein v. Routt Homes, Inc*., 260 S.W.3d 852, 854 (Mo. App. 2008)).  Class certification was affirmed. Merck thereafter sought decertification, citing

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

testimony from three more physicians, again asserting that many would still prescribe and patients would still take Vioxx knowing its risks and hence, there was no injury. *See* Ex. C, Merck Sugg. Supp. Mot. for Decert., at 8–10. These arguments were again rejected. Order, attached as Ex. F.

Federal cases on which Monsanto relies are not binding. *State v. Mack*, 66 S.W.3d 706, 710 (Mo. 2002); *McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 167 n.9 (Mo. App. W.D. 2012). The MMPA and its regulations, however, ***are*** binding. They, *Plubell*, and other salient Missouri cases are the law in this state and they are fatal to Monsanto's arguments.

## II.     THE CLASS IS NOT OVERBROAD.

Monsanto's position that the proposed class includes "many people" aware of the Roundup controversy (Opp. at 19) relies on an expert whose (untested) opinions are reliance-based and irrelevant. Its position that misrepresentations must affect purchase decisions (Opp. at 24–26) also is wrong. The MMPA makes clear in every possible way that neither reliance nor transaction causation are required. Monsanto's argument that class members who used the Roundup got the benefit of their bargain (Opp. at 22) also is contrary to Missouri law on multiple levels.

### A.     Monsanto's Argument Concerning Supposed "Awareness" of Roundup's Safety Risk Is Contrary to Missouri Law and Irrelevant to Certification.

#### 1.     Monsanto's argument has been expressly and soundly rejected.

Similar to the physician testimony Merck advanced in *Plubell*, Monsanto cites the affidavit of Peter E. Rossi, a purported survey expert, to the effect that "many" purchasers are aware of Roundup's health risks and would purchase Roundup anyway. Opp. at 21. Such purchasers, Monsanto says, are uninjured. Opp. at 2, 19. There are patent flaws in Rossi's hastily executed surveys, *infra*, Section II.A.2, and all this is an improper attempt to litigate the merits. Even more fundamentally, however, Monsanto's argument is contrary to Missouri law and its supposed evidence irrelevant to class certification.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

In *Craft*, defendants argued that "the need to determine which individuals were deceived by the term 'light' [cigarettes] must be determined on a case-by-case basis." 190 S.W.3d at 383. Plaintiff, however, alleged a "fail[ure] to receive the qualities and economic value of a low tar, low nicotine cigarette," going not to individualized deception but rather, "condition of the product." *Id.* at 382.[4]   That is the kind of injury Plaintiffs assert here.   Am. Pet. ¶ 73.   And Monsanto's position is mere variant of the argument rejected in *Plubell*.   Simply put, loss does not require showing that the named plaintiff or class members "would not have used [the product] had the risks been known" and as recognized in *Craft*, injury occurs where the product "as is" is worth less than the product as represented.   289 S.W.3d at 714–15.   Just as in *Craft* and *Plubell*, Plaintiffs assert ascertainable loss under the benefit-of-the-bargain rule.   *See infra*, Sections III.C–D.

Monsanto cites one and only one Missouri case for its position that class members who "don't care" about safety risks are uninjured: *State ex rel. Coca-Cola Co. v Nixon*, 249 S.W.3d 855 (Mo. 2008).   Opp. at 19–20.   It lifts out those words without analysis.   In *Coca-Cola*, plaintiff asserted that she and others would not have purchased Diet Coke had they known it contained saccharin.   *Id.* at 859, 862. The court distinguished *Craft* where plaintiffs "alleged that they . . . suffered ascertainable losses because they failed to receive the qualities and economic value of a low tar, low nicotine cigarette." *Id.* at 863 (quoting *Craft*, 190 S.W.3d at 387).   Thus, the court said, "all consumers [in *Craft*] suffered an economic injury that was based on an objective characteristic."   *Id.*   By contrast, injury in *Coca-Cola* was based on "subjective preference against saccharin." *Id.*   As against *that kind* of injury, evidence that class members did "not care" if Diet

---

[4] Neither reliance nor "actual deception" are elements of a MMPA claim of deception. 15 CSR 60-9.020(2). *See also* 15 CSR 60-9.070(1) & (2) (misrepresentation focused only on whether an assertion "is not in accord with the facts"; reliance not required); *supra*, note 2.

Coke contained saccharin might be meaningful. *Id*. at 862.[5]  The court, however, expressly pointed to *Craft* as the kind of classwide injury appropriately based on failure to receive "economic value" of the product as represented.[6]  Again, that is what Plaintiffs assert here.

Monsanto otherwise cites federal cases, primarily *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig*., 2011 WL 6740338 (W.D. Mo. Dec. 22, 2011) ("*BPA II*"), which, like Monsanto, misread *Coca-Cola*. *Id*. at *1.[7]  Other courts recognize this misreading.  In *SI03, Inc. v. Musclegen Research, Inc*., 2020 WL 2468412 (E.D. Mo. May 13, 2020), the court explained:

> The Missouri Supreme Court emphasized that in *Coca-Cola* the "alleged injury was based on a subjective preference against saccharin," so a purchaser who did not have that preference could not have been injured, but that the result could be different in a case alleging an "economic injury . . . ***based on an objective characteristic,*** *such that individual preferences were irrelevant*.

*Id*. at *4 (citing *Coca-Cola*, 249 S.W.3d at 863) (emphasis added).  In *In re McCormick & Co., Inc., Pepper Prods. Mkg. & Sales Pracs. Litig*., 422 F. Supp. 3d 194 (D.D.C. 2019), the court likewise criticized *White*, also relying on *Coca-Cola*, which "does not, upon closer examination, support [that] court's conclusion." *Id*. at 263.  Consistent with *Craft*, the Missouri Supreme

---

[5] Note also that in *Coca-Cola*, it was plaintiff's own expert who indicated that only twenty percent of those who consumed Diet Coke would not continue to do so if they knew it contained saccharin.  *Id*. at 862. Here, Plaintiffs do not concede admissibility much less truth of Dr. Rossi's deficient surveys and opinions.

[6] *See also Hope*, 353 S.W.3d at 80 (distinguishing *Coca-Cola*, "where the basis of the injury was a subjective consumer preference," from case where alleged injury was diminished economic value, even if the purchaser was unaware of it).

[7] *Bratton v. Hershey Co*. and *White v. Just Born, Inc*. also cited by Monsanto, hold similarly to the *BPA* decision.  They also rely on *Coca-Cola*, and otherwise cite federal decisions including *BPA* and others Monsanto does not address. *Bratton*, 2018 WL 934899, at *2; *White*, 2018 WL 3748405, at *3.  These include *Owen v. Gen. Motors Corp*., 2007 WL 1655760 (W.D. Mo. June 5, 2007), in which plaintiff failed on summary judgment to prove that the undisclosed defect caused his vehicle wiper malfunction (*id*. at *4), sought repair cost (*id*. at *5) and was decided prior to *Plubell*.  The other, *McCall v. Monro Muffler Brake, Inc*., 2013 WL 1282306 (E.D. Mo. Mar. 27, 2013), did not involve benefit-of-the-bargain, the court granted summary judgment because it found adequate disclosure of charges in a Shop Supply Fee (*id*. at *3–4), and in dicta discussing what plaintiff saw or heard, relied on fraud cases, not MMPA cases.  *Id*. at *5.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

Court's discussion of *Craft*, and other cases (including *Hope* and *Plubell*), the Court rejected defendant's "they don't care" argument because the alleged injury was "difference in value" of pepper as represented versus as received. Thus, they alleged economic injury "based on an objective characteristic, not an injury that is dependent on class members' subjective preferences" subject to individual inquiry. *Id*. at 264. Here, the class is not overbroad for the same reason.

Aside from *BPA* and compatriot cases *White* and *Bratton*, Monsanto relies on *George v. Omega Flex, Inc*., 2020 WL 4718386 (W.D. Mo. Aug. 13, 2020), which does not hold what Monsanto suggests. Opp. at 19. There, homeowners alleged that defective piping resulted in "diminution of the value to their homes." *Id*. at *1. Home values, however, increased after purchase. *Id*. at *1–3. Monsanto cites *George* for its "did not care" language (Opp. at 19), a mere stray quote from *Bratton* and pure dicta. *Id*. at *8. The Court acknowledged that reliance is not required; its holding was based on plaintiffs' failure to prove home devaluation, that they even purchased the pipe, or that it was worth less than as represented. *Id*. at *7–8.[8] Not only are the facts different, *George* was decided on summary judgment. Here, the merits are not at issue.

## 2.    Dr. Rossi's opinions are legally irrelevant and patently flawed.

In response to Plaintiffs' motion, Monsanto engaged Dr. Rossi who, in short order, purportedly conducted two surveys[9] and produced a 56-page affidavit to support its positions. Dr. Rossi obtained his "understanding" of MMPA elements from Monsanto's lawyers. Rossi Aff. ¶¶ 57, 61, 64–65, 67. He was misinformed. Missouri law is clear: the MMPA does not require

---

[8] Save one (who acquired pipe in exchange for labor (*id*. at *7 n.8), all plaintiffs purchased homes with the pipe in them, not the pipe itself, and hence, there was no evidence that any overpaid for it. *Id*. at *7.

[9] Dr. Rossi represents that he not only conducted pretesting and focus groups but "fielded" residential and farm user surveys in September.   Rossi Aff. ¶¶ 70, 85–86.   The affidavit is dated October 6.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

reliance or transaction causation. As in *Plubell*, whether "many" people would still purchase Roundup knowing its risk is immaterial to Plaintiffs' claims and cannot defeat certification.[10]

While his surveys are irrelevant as a legal matter and the survey instruments are not provided, preventing full analysis, Plaintiffs feel compelled to point out some of the more glaring defects in Dr. Rossi's presentation.  Taking the residential-use survey as example:

(1)   Dr. Rossi does not address sampling frame or method by which the sample was selected (*e.g.*, random sample).[11] He did not obtain the sample himself, but from a third party. Rossi Aff. ¶ 71; *see also id*. at ¶ 87 (same as to farmers). How the sample was obtained and by what method are thus in question. There is little indication of population save that Rossi "surveyed U.S. adults generally." *Id*. ¶ 72.  Why exactly the survey was not targeted to relevant population (Missouri purchasers) is unexplained. Insofar as ensuring that the sample is representative of the population,[12] Rossi says he compared "demographic characteristics" to "market research" by Monsanto (Rossi Aff. ¶ 73 & Ex. 3A).  He did not compare use patterns, which obviously vary by

---

[10] In addition to irrelevant opinions on "awareness" of Roundup's risks, Dr. Rossi includes lengthy discussion about the EPA's registration and what that supposedly means in terms of safety.  Rossi Aff. ¶¶ 16–18.  He professes no expertise in regulatory matters or medical science, and moreover, all of this is a pure merits dispute. Rossi also purports to opine on education, certification, and practices of herbicide applicators (Rossi Aff. ¶¶ 49–52), also outside his area of expertise, irrelevant, and merits-based.  He also recounts hearsay about pricing (Rossi Aff. ¶ 42 & n.84), which also goes, at most, to Monsanto's arguments about damages, a subject not even properly considered at this juncture.  *Infra*, Section III.D.

[11] The target population "consists of all the individuals or units that the researcher would like to study. The sampling frame is the source (or sources) from which the sample actually is drawn." Diamond, Ref. Guide on Survey Research, Fed. Jud. Ctr. (3d ed.) at 377. In order to even be possible to scrutinize a survey, its proponent "should describe in detail" its design including "population from which the sample was selected" and "why [the] sample design was appropriate." *Id*. at 362.  Failure to draw from the population at issue or explain extrapolation from sample to population is alone reason to reject a survey.  *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig*., 2014 WL 1669930, at *14 (S.D. Fla. Apr. 28, 2014); *see also, e.g., Competitive Edge, Inc. v. Staples, Inc*., 763 F. Supp. 2d 997, 1008 (N.D. Ill. 2010) (survey relevance "greatly harmed" by "failure to focus . . . on the consumers in the market at issue in this case").

[12] "Identification of a survey population must be followed by selection of a sample that accurately represents that population." *Competitive Edge*, 763 F. Supp. 2d at 380.  Rossi admits that a sample "must be representative of the target population." Rossi Aff. ¶ 72; *see also id*. ¶ 90 (same).

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

region, and admits that Monsanto's study was "not of Midwest consumers" (Rossi Aff. ¶ 74) and "may not accurately reflect the true population of Monsanto customers."  Rossi Ex. 3A (n.5).

(2)     Survey results on which Dr. Rossi relied were from 275 people who purchased Roundup in the last year and/or intend to do so within a year. Rossi Aff. ¶ 71.[13] Plaintiffs have estimated that 88.9 million Roundup units were sold nationally and 1,778,514 in Missouri.  Sugg. in Supp. at 8.  Monsanto says approximately 25% of purchasers are in the L&G segment.  Opp. at 33.  Assuming Rossi's sample covered the entire United States, the fraction represented by 275 people is astronomically small and without assurance of representativeness or statistical import. Rossi acknowledges "many thousands" of residential purchasers in Missouri alone. Rossi Aff. ¶ 73.[14]  Survey results too small to be statistically meaningful are rejected.  *E.g. Fish v. Kobach*, 309 F. Supp. 3d 1048, 1059 (D. Kan. 2018); *Sabal Trail Transm., LLC v. 13.386 Acres of Land in Lake County Florida*, 2018 WL 8583439, at *8 (M.D. Fla. Aug. 13, 2018).[15]

(3)     The questions Rossi asked are grossly uninformative on even the irrelevant conclusions he offers. His conclusions about percentage of residential purchasers supposedly aware of Roundup safety issues (Rossi Aff. ¶¶ 75–79) are drawn from responses to two questions. *Id.* at ¶¶ 75–76.  QF3 asked respondents aware of "at least one" lawsuit "related to Roundup" to

---

[13] Rossi indicates that questions on which he relies for his opinion were asked only of those who so responded.  Rossi Aff. ¶ 71 and Ex. 4 (n. 3), Ex. 5 (n.1), Ex. 6, Ex. 7 (n.2).

[14] The Monsanto document cited for this statement (*id.* & n. 127) actually indicates hundreds of thousands of L&G Roundup units sold in Missouri during a five-year period.

[15] As to farmers, 403 completed a questionnaire. Rossi Aff. ¶ 87. It appears that 221 persons were screened out, leaving 182 respondents (from a 10-state "Midwest" population) on which to base opinion. Rossi Aff. ¶ 86 & n. 135; Rossi Ex. 10.  Unquestionably, the number of Midwestern farmers who purchase Roundup number well into the hundreds of thousands, if not millions.  As of 2016, Midwest farmers accounted for 65 percent of the nation's glyphosate use on crops.  Midwest Center For Investigative Reporting, *By The Numbers: Glyphosate Use In The Midwest For Corn, Soybeans* (May 27, 2019) (https://www.harvestpublicmedia.org/post/numbers-glyphosate-use-midwest-corn-soybeans).  Missouri alone accounts for enormous use of glyphosate.  *See* Sugg. in Supp. at 7, n.6.
.

11

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

describe it.[16]   QM4 asks about "drawbacks" of using weed killers.  Aff. ¶ 75 & Ex. 4.  Dr. Rossi

makes the quantum presumptive leap that awareness of "at least one" Roundup lawsuit (as of 2020)

involving health and safety equates to actual knowledge of Roundup's actual risks (and for an

entire 5-year period). Persons obviously can be aware of lawsuits but discount or disbelieve their

allegations. That is particularly true given Monsanto's constant representations that Roundup is

safe.   Rossi ***did not*** ask respondents about perceptions of Roundup based on Monsanto's

representations or to assume that Roundup is in fact dangerous, which Plaintiffs allege and must

be taken as true.  Am. Pet. ¶ 3.  This dearth also infects conclusions about persons intending to use

Roundup in the future.   Rossi Aff. ¶ 81; *see also id*. ¶ 96 (regarding farmers). Dr. Rossi did ask

residential users about importance of product characteristics (QM7) and states that "three product

attributes ranked as more important than either of the two health attributes."  Rossi Aff. ¶ 83.  But

this was by degrees of ***one-hundreds*** of a percentage. Rossi Ex. 8.  The responses are so close as

to actually indicate that safety is on par with other factors such as effectiveness and ease of use.

As overtly deficient as they are, Rossi's surveys fundamentally seek to support propositions

irrelevant to class certification.  Rossi did not ask whether persons would choose to purchase, much

less pay the same for, Roundup ***with*** health risks as Roundup ***without*** health risks.  His effort was

not directed to injury (ascertainable loss) under a benefit-of-the-bargain analysis as here alleged.

Surveys must be "designed to provide relevant data on the issue before the court."   Diamond,

*supra*, at 373.  Opinions that do not address the actual issue are inadmissible. *Daubert v. Merrell*

*Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (internal quotations and citation omitted).  Effort to

---

[16]   *See also* Muckerman Aff. ¶ 26 (opining generally that farmers are aware of "the allegation and litigation regarding supposed health risks of Roundup"); Rossi Ex. 15 (question asking farmers about awareness of lawsuits relating to Roundup).

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

demonstrate that some persons would still purchase Roundup aware of its risks is the same tactic specifically rejected by trial and appellate courts in *Plubell*.   It fails as a matter of law.

**B.      Monsanto's Argument That a Misrepresentation Must Affect Purchasing Decisions Is Contrary to Missouri Law.**

Monsanto also argues that a person must see a misrepresentation "before his purchase" and that the misrepresentation must affect his purchase decisions.  Opp. at 25.  But again, reliance is not required.  In language directly responsive to Monsanto's position, the Western District ruled in *Plubell* that plaintiffs were "not required to prove they or their physicians relied on Merck's alleged misrepresentations . . . and consequently, they are not required to offer individualized proof that the misrepresentation colored the decision to take Vioxx." 289 S.W.3d at 714.

Monsanto does not attempt to take on *Plubell* directly because it cannot.  Instead, it relies on *Faltermeir v. FCA US LLC*, 899 F.3d 617, 622 (8th Cir. 2018), and its proposition that the "alleged misrepresentation must have some connection with the sale." Opp. at 24.[17]  In *K.A. by & Through B.W. v. Children's Mercy Hosp.*, 2019 WL 2144815 (W.D. Mo. May 16, 2019), the defendant also cited federal cases to argue that plaintiff did not connect loss to actionable practice. *Id.* at \*5.  The court found that argument "not persuasively support[ed]" because defendant did not "discuss how ***Missouri courts*** have construed the MMPA's requirement that "an unlawful act [be] committed 'in connection with' the sale." *Id.* (emphasis added).  Neither does Monsanto.

In the first place, the MMPA manifestly does not require that unlawful practice occur before sale. It expressly provides that an unlawful practice "violates this subsection whether committed before, during ***or after*** the sale . . . ." Mo. Rev. Stat. § 407.020.1 (emphasis added). This clearly condemns unlawful practices ***even if they occur after the sales transaction has***

---

[17] Monsanto also cites *White* (Opp. at 25), to which it attributes a quote from *Grovatt v. St. Jude Medical Inc.*, 522 F.3d 836, 840 (8th Cir. 2008), addressing Minnesota, not Missouri, law.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

*already taken place*. As plainly, that is why reliance is not required and Section 407.025.1 does not require that the unlawful practice cause a purchase.  It would be incongruous indeed to at once declare a practice occurring after sale unlawful while also requiring that it induce the sale.

Missouri courts recognize that "connection" between unlawful practice and sale need not be before sale. *E.g., Schuchmann*, 199 S.W.3d at 232 (fact that refusal to honor warranty came after sale "is of no consequence").  They recognize that the unlawful practice need not induce a decision to purchase.  *Plubell*, 289 S.W.3d at 714; *see also Edmonds*, 344 S.W.3d at 222–23 (rejecting argument that purchaser did not rely on appraisal in decision to close on loan). The Missouri Supreme Court holds that the MMPA does not require privity.  *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 416 (Mo. 2014).  As made clear by Section 407.020.1, neither does it require unlawful practice before sale.   In *Conway*, plaintiffs alleged that a loan servicer wrongfully foreclosed after "sale of the mortgage loan." The Court interpreted "in connection with" to mean "relationship" and ruled that how a sale is enforced meets the criteria "because the MMPA covers alleged wrongdoing 'before, during *or after* the sale."  *Id*. at 414, 415 (emphasis added).

If Monsanto can cite federal cases to support its position, Plaintiffs can cite as many or more that disagree.  *See, e.g., Stephens v. Arctic Cat Inc.,* 2012 WL 628867, at *4 (E.D. Mo. Feb. 27, 2012) (rejecting as "without merit" argument that unlawful acts were not in connection with sale because they occurred after purchase; recognizing that an act is unlawful whether before, during, or after sale, and that "[u]nder the MMPA a plaintiff need not prove that he relied on the acts or omissions complained of or that they induced the sale or purchase"); *Scanio v. Zale Delaware, Inc.*, 2012 WL 368741, at *2 (E.D. Mo. Feb. 3, 2012) (representations after sale can be an unlawful practice); *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 2014 WL 108197, at *7 (D. Mass. Jan. 10, 2014) ("the MMPA does not require an individualized showing that . . .

14

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

alleged misrepresentations caused consumers to purchase Celexa or Lexapro"); *Johnson,* 2017 WL 6420199, at *10 (plaintiff need not demonstrate that unlawful practice caused purchase: "Missouri case law is clear" that reliance is not required).

Missouri law is abundantly clear that a purchaser need not rely on the unlawful practice, which need not induce decision to purchase. The MMPA itself compels that conclusion or it would not deem practices unlawful although occurring after a sale already has transpired. Further, unlawful practices have "connection with" a sale where they occasion loss under Missouri's benefit-of-the-bargain rule, concerned with product value, not individual decisions to purchase.

To the extent Monsanto suggests that all class members must have been exposed to the same misrepresentation from the same source (*see* Opp. at 26), it cites nothing for such a proposition. Moreover, Plaintiffs allege that Monsanto consistently misrepresented Roundup as safe, regardless of media. Am. Pet. ¶¶ 61–69. In addition, even Monsanto recognizes that all class members are "uniformly" exposed to Roundup's label at point of purchase. Opp. at 26. Plaintiffs allege not only misrepresentations but omissions. Am Pet. ¶¶ 70–71. Monsanto's argument that Plaintiffs cannot show that each class member read the label (*id.*) is at the outset illusory, as one cannot read a warning not there. Monsanto does not suggest that labels warn of the health risks alleged. The label statements it provides do not. *See* Rossi Aff. at 18; Muckerman Aff. ¶ 9 & Exs. 1–3.[18] But again, Monsanto commits a MMPA violation if it concealed, suppressed, or omitted a material fact, and reliance ***is not required***. 15 C.S.R. § 60-9.110(4).[19]

---

[18] The labels Rossi reproduces for Roundup Power Max and Roundup Pro Max are unreadable. *See id*. at 22, 30. They have been located on the internet, however, and neither contains a warning of the health hazards alleged. *See* Roundup Power Max label (https://s3-us-west-1.amazonaws.com/agrian-cg-fs1 production/pdfs/Roundup_PowerMAX1e_Herbicide_Label.pdf); Roundup Pro Max label (https://assets.greenbook.net/L90263.pdf).

[19] In addition, "material" fact is defined in terms of what "a reasonable consumer" would likely consider important or would likely induce a "reasonable consumer" to act. 15 C.S.R. § 60-9.010 (C). This states an

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

### C.    Monsanto's Argument That Consumers Who Used Roundup Are Uninjured Is Contrary to Missouri Law.

"A plaintiff adequately pleads [the ascertainable loss] element . . . if he alleges an ascertainable loss under the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction." *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 313 (Mo. App. E.D. 2016).[20] Mirroring what was alleged in *Plubell*, Plaintiffs allege that they and class members

> purchased Roundup, a product that was falsely represented . . . and thereby suffered an ascertainable loss . . . as a result of Monsanto's practices . . . because the product [they] . . . purchased was worth less than the product they thought they had purchased had Monsanto's representations been true.

Am Pet. ¶ 73; *see Plubell*, 289 S.W.3d. at 711 (quoting allegations).  This states "an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule." *Id.* at 715.

According to Monsanto, however, those who used or disposed of the Roundup product purchased "are uninjured because they received the full benefit of their bargains."   Opp. at 22.  Again, Monsanto relies primarily on the *BPA* decisions.  Again, not only is this a merits-based argument, but contrary to Missouri law as consistently set out by the courts of this state.

In *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F. Supp. 2d 897, 900 (W.D. Mo. 2009) ("*BPA I*"), the Court found on a motion to dismiss that persons using BPA-

---

objective reasonable-man standard amenable to common proof.  *See*, *e.g. Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013) ("because '[t]he question of materiality . . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor,' materiality can be proved through evidence common to the class.")  (citation omitted).

[20] *See also Children's Mercy Hosp.*, 2019 WL 2144815, at *4 ("to determine whether a plaintiff has suffered an ascertainable loss, Missouri courts apply the benefit-of-the-bargain rule . . . [under which] . . . a plaintiff can recover damages for 'the difference between the actual value of the property and what its value would have been if it had been as represented'") (citing *Plubell*, 289 S.W.3d at 715); *Johnson* , 2017 WL 6420199, at *10 ("In order to demonstrate an ascertainable loss under this rule, a plaintiff need only allege that the product "was worth less than the product as represented.") (citing *Plubell*, 289 S.W.3d at 715).

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

containing products obtained "full value" from their purchase.  *Id*. at 912–13.  It did so based on hypothesized analysis, untethered to Missouri law, to the effect that while a purchaser "may not have paid the asking price" for a product with safety risks, there is an "offset" if the product was functional.  *Id*. at 912.[21]   In  *BPA II*, the Court cited this dismissal ruling in denying class certification. 2011 WL 6740338, at *2.  When confronted with Missouri law that loss does not consider post-purchase conduct, it equated plaintiffs' position to one "claiming that their purchases, *ipso facto*, caused an economic loss." *Id.* at *3. The Court considered their claim akin to purchasers who ingested the drug Duract who were found uninjured because "Duract worked." *Id.* (quoting *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 317 (5th Cir. 2002)).

Monsanto has not moved for dismissal and such decisions disregard Missouri law in multiple respects.  **First**, benefit-of-the-bargain loss is indeed determined at time of sale. *Murphy,* 503 S.W.3d at 313; *see also Schoenlein,* 260 S.W.3d at 854 (rule measures damages "at the time of the transaction"); *Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. App. E.D. 1994) (same).[22] In *Schoenlein*, for example, plaintiffs alleged failure to provide home warranties in a timely manner.  260 S.W.3d at 853.  Defendant eventually provided the warranty and hence, argued that plaintiffs received the benefit of their bargain.   However, under the "correct" benefit-of-the-bargain measure, loss is determined "at the time of the transaction."  *Id*. at 854 (citing cases and remanding on damages only). In *Craft*, plaintiff "retained and consumed" the cigarettes.  *Craft v. Philip Morris Cos., Inc.*, 2003 WL 23139381, at *4 (Mo. Cir. Ct. Dec. 31,

---

[21] *Mikhlin v. Johnson & Johnson*, 2014 WL 6084004 (E.D. Mo. Nov. 13, 2014), also cited by Monsanto, followed this analysis on a motion to dismiss.  *See id.* at *3.

[22] This is not to say that date(s) of purchase have bearing on certification. *See Plubell*, 289 S.W.3d at 714 ("Because Plaintiffs alleged Merck misrepresented Vioxx throughout the entire class period, individualized evidence as to the company's representation at the time of each class member's purchase will not be required.").

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

2003.  Nevertheless, injury could be based on failure to receive the value of a low tar, low nicotine cigarette.  *Id.* at \*5.  The Eastern District recognized that this "goes to the condition of the product at the time of the purchase transaction" and did "not consider the consumer's manner of use . . . after purchase" such to raise individual issues.  *Craft*, 190 S.W.3d at 382.

A measure of damages that does not look to post-purchase activity in no way translates to "*ipso facto*" injury.  *BPA II*, 2011 WL 6740338, at \*3.  There still must be some difference between the value of the product as is and the value of the product as represented.

**Second**, use or consumption cannot destroy the benefit-of-the-bargain rule, which indeed is the appropriate measure when a plaintiff ***has retained*** the product rather than rescinding the transaction and returning it.  *See Sunset Pools*, 869 S.W.2d at 886 ("Courts of this state apply the benefit of the bargain rule to determine the damages in cases of fraud or deceit where the parties have not elected to rescind the contract and seek restitution.").

**Third**, loss under the MMPA does not require that a product be devoid of function.  In *Schoenlein*, plaintiffs lived in their home; in *Craft*, class members smoked the cigarettes. In *Hope*, class members drove their vehicles.  In *Plubell*, Merck argued at length that Vioxx was an effective pain reliever many class members still wanted and would use.  Just because a product can be said "to work" does not mean there is no injury.  *See also Sitzer v. Nat'l Ass'n of Realtors*, 420 F. Supp. 3d 903, 918 (W.D. Mo. 2019) (that plaintiffs received the services they contracted for does "not mean Plaintiffs fail to plead an ascertainable loss" under the MMPA).

*Rivera*, on which *BPA II* relied, addressed neither the MMPA nor Missouri law on benefit of the bargain.  *See Rivera*, 283 F.3d at 317 ("plaintiffs state their complaint under Texas law").[23]

---

[23] Other cases cited in *BPA I* also do not address the MMPA.  *Myers-Armstrong v. Actavis Totowa, LLC*, 2009 WL 1082026 (N.D. Cal. April 22, 2009) involved California purchasers with claims under California law. *In re McNeil Consumer Healthcare, Mkg. and Sales Pracs. Litig.*, 2011 WL 2802854 (E.D. Pa. July 15, 2011) involved alleged violations of several consumer fraud laws but nowhere addresses the MMPA.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

Moreover, the court was analyzing whether plaintiffs were denied their bargain under contract principles designed to "place the injured party . . . in the position that he would have occupied had the defaulting party performed the contract." *Id.* at 320 (citation omitted). Under that conception, the court found that had Wyeth "provided additional warnings or made Duract safer," plaintiffs taking the drug "would be in the same position they occupy now." *Id.* Missouri, however, ***does not follow*** that formulation of a benefit-of-the-bargain analysis. As explained in *Craft*, some states follow an "out-of-pocket" rule designed "to restore a defrauded plaintiff to . . . the same position he would have been in before the fraudulent transaction occurred." 2003 WL 23139381, at *6. Missouri, however, follows a value-comparison rule allowing compensation "for what [plaintiff] . . . might have gained if the representation had been true." *Id.* at *6–7 (citing cases). *E.g., Grabinski v. Blue Springs Ford Sales, Inc*., 136 F.3d 565, 570 (8th Cir. 1998) (testimony that vehicle was worth $2,500–$3,000 "but would have been worth $8,000 as represented" supported damages).

**Fourth**, injury under the MMPA does not require manifestation of defect. In *Hope*, the Western District rejected argument that the class definition was too broad because it included vehicle owners who did not experience the alleged dashboard bubbling. Plaintiffs' injury, however, was based on negative stigma effect on marketability and resale value; hence, whether owners experienced bubbling was immaterial. 353 S.W.3d at 78, 80. The Court also rejected Nissan's argument that a "diminished value" theory was not viable because "the merits of this theory are not properly our concern" at the class certification stage. *Id.* at 80.

Here, all Roundup products contain glyphosate, a carcinogen. That Plaintiffs do not assert personal injury (Opp. at 23) is immaterial. Injury can be economic. Mo. Rev. Stat. § 407.025.1 (ascertainable loss "of money or property"). A plaintiff ***does not*** receive the benefit of the bargain

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

if he receives something other, and of lesser value, than the product as represented.  This is so whether he uses it or not.  All of Monsanto's arguments are contrary to Missouri law.

## III.   COMMON ISSUES PREMOMINATE.

Monsanto adopts blindness to the many core common questions presented.  The arguments it does make are meritless.  Opp. at 32–39.  The first is infirm in multiple respects. The second is wrong for the same reasons as Monsanto's "overbreadth" arguments.  The third presumes that damages must be addressed at class certification, which they do not, focuses on the wrong "model" of damages, and impermissibly delves into merits of what Plaintiffs must prove.

### A.   There Are Numerous Common Questions to Meet Predominance.

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). All issues need not be common.  A "***single common issue may be the overriding one*** in the litigation" regardless of whether it "entails numerous remaining individual questions."  *Plubell*, 289 S.W.3d at 713 (emphasis added).  Common proof need not be winning proof.  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459–60 (2013).  Certification is not to "adjudicate the case" but to select the "metho[d] best suited" to fair and efficient adjudication.  *Id* at 460.  In sum, "predominance does not require that a single body of evidence satisfy the prima facie elements of an MMPA claim on behalf of every putative class member. Rather, it requires 'at least one significant fact question or issue, dispositive or not,' that is common within the class's claim." *Plubell*, 289 S.W.3d at 713.  Common questions may be "of fact ***or*** law and need not be one of each." *Elsea*, 463 S.W.3d at 418.  These standards are well recognized.[24]

---

[24] *Hope*, 353 S.W.3d at 81; *Doyle v. Fluor Corp*., 199 S.W.3d 784, 789 (Mo. App. E.D. 2006); *Dale v. DaimlerChrysler Corp*, 204 S.W.3d 151, 175 (Mo. App. W.D. 2006); *Wright v. Country Club of St. Albans*, 269 S.W.3d 461, 466 (Mo. App. E.D. 2008); *Hale*, 231 S.W.3d at 244–25; *Craft*, 190 S.W.3d at 381–82);

Here, there are several core common questions. Monsanto simply ignores them.  As Plaintiffs already have indicated, "[o]ne obvious overriding common issue is whether Monsanto's misrepresentations and omissions about Roundup constitute unfair and deceptive trade practices under the MMPA."  Sugg. in Supp. at 13.  "This and constituent issues are subject to common proof focused on Monsanto and its products; for example, the dangerous nature of Roundup, Monsanto's representations and omissions, and the false and misleading nature thereof."  *Id.* at 14. The first of these—whether Roundup is dangerous—is central and drives several others, including the misrepresentative nature of Monsanto's statements and the "product-as-is" comparator for a benefit-of-the-bargain analysis.  Proof will be the same as to all class members, entailing (undisputed) fact that all Roundup contains glyphosate and evidence of glyphosate's health risks. Monsanto's own (improperly merits-based) arguments illustrate the point.  Its arguments and "evidence" pertaining to EPA registration, and attempts to discredit the IARC publication (Opp. at 5–7), if ultimately allowed, do not vary according to class member.

Also, and because "the legality of [Monsanto's] conduct" is central and common to all class members, predominance is satisfied by that question alone.  *Plubell*, 289 S.W.3d at 713. Plaintiffs allege misrepresentations, concealment, suppression, and omissions.  All look to Monsanto's own conduct and as such, proof is common to the class.  *See id.* ("[i]t is the defendant's conduct . . . which determines whether a violation has occurred.") (citation omitted).[25]  Roundup's risks and Monsanto's conduct are common and overriding.  Predominance is satisfied.

---

*see also Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996) ("every question of law or fact does not have to be common to every member of the class.").

[25]  Plaintiff also assert that Monsanto committed an "unfair" practice (Am. Pet. ¶ 91), which is "any practice which (A) Either (1) Offends any public policy . . . established by . . . statutes or common law of this state . . . ; or (2) Is unethical, oppressive or unscrupulous; and (B) Presents a risk of, or causes, substantial injury to consumers."  15 CSR § 60-8.020(1).  As with other claims, reliance is not required. 15 CSR § 60-8.020(2).  This violation focuses on Monsanto itself, health risks, and injury to consumers generally.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

**B.**    **Monsanto's Argument That Roundup Use Defeats Predominance Is Meritless.**

Monsanto contends that whether class members purchased Roundup for "personal, family or household" use requires "subjective" individualized inquiries.  Opp. at 33.  **First**, purchase for one of the identified uses does not involve a "state of mind" such as subjective "dislike of saccharin" in *Coca-Cola* (Opp. at 34), which, moreover, was not decided on predominance. A class definition is not subjective because it includes the MMPA's "use" language.  Even if it were, and according to Monsanto's own presentation, the definition could be revised to describe class members according to products purchased.  *Infra*, Section VI.B–C.

**Second**, the question here is predominance.  The quote Monsanto lifts from *Dale* also does not address predominance but ascertainability.  *Dale*, 204 S.W.3d at 178.  And there, the Western District ***affirmed*** class certification, specifically ***rejecting*** argument "that any individualized fact-finding necessary to determine class membership renders the particular class definition in question infirm."  *Id*. at 181.  In doing so, it cited *Clark*, which holds in no uncertain terms that predominance is "not defeated simply because individual questions may remain" after common questions are determined. 106 S.W.3d at 488 (internal quotations and citation omitted). *Clark* recognized that whether defendant breached its contracts was the predominant issue, and that if established "for some or all" class members, "the trial court can proceed in the most expeditious and efficient way possible relative to any individual circumstances or issues that may exist."  *Id.* The predominant issue also "need not be dispositive of the controversy or even be determinative of the liability issues involved." *Id.* (citation omitted); *accord McKeage*, 357 S.W.3d at 600 (same); *see also Craft,* 190 S.W.3d at 383 (if defendants' conduct violates the MMPA and caused ascertainable loss to "some or all" class members, trial court can "thereafter consider" remaining

---

Whether Monsanto's behavior was unethical, oppressive or unscrupulous focuses on standards of conduct, as does offense to public policy as reflected in statutes or common law.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

individual issues); *Hale*, 231 S.W.3d at 226 ("Missouri does not require that the common issues advance resolution of the litigation in order for them to predominate").

**Third**, Monsanto's position that "personal" use does not include business use (Opp. at 33; Rossi Aff. ¶ 57) does not defeat certification.  As an initial matter, Plaintiffs strongly disagree with that position for all reasons set out in their Motion and Suggestions in Support of Motion to Compel (filed 7/20/2020) and Reply (filed 7/22/2020), which they reassert and incorporate herein.  The MMPA allows an action for "***any*** person," expressly defined to include business entities.  Mo. Rev. Stat. §§ 407.010(5), 407.025.1.  Had the Missouri legislature intended to exclude businesses as a category of "persons" with protection under the MMPA, it could have done so.  It did not.  In addition, if "personal" use were synonymous with "household' or "family" use, it would be mere surplusage, an interpretation contrary to canons of statutory construction. *See Comm. on Legisl. Research of Mo. Gen. Assembly v. Mitchell*, 886 S.W.2d 662, 664 (Mo. App. W.D. 1994) ("We must presume that every word of a statute was included for a purpose and has meaning.").  It indeed is difficult to image how a business entity would make "household" or "family" use of a product. The word "personal" is included for a reason and must be given effect.  Its plain meaning is easily broad enough to encompass a company's own use, as opposed to resale.[26]  Plaintiffs continue to assert that persons who purchase a product for his, her, or its own use is afforded a claim based on the plain language and purposes of the MMPA.  The Missouri Supreme Court has

---

[26] The plain meaning of "personal" includes activities relating to or affecting a person and done in person. Sugg. Supp. Mot. Compel at 3 (citing dictionary). Farmers use Roundup to grow their own crops and "produce and harvest as much as possible." Muckerman Aff. ¶ 3; Rossi Aff. ¶ 36. Golf courses use Roundup to manage their turf. Rossi Aff. ¶50. Landscapers and contractors use Roundup to fulfill their own customer service engagements.  Owen Aff. ¶¶ 8, 9. These and other purchasers make their own use of Roundup. They are no less consumers or "persons" than "household" users. Dr. Rossi's opinions on the subject are inadmissible legal conclusions he is not qualified to make. *See* Rossi Aff. ¶ 59.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

consistently rejected attempts to narrow the MMPA and consistently indicated that it should be construed broadly consistent with its broad language and protective purposes.[27]

In any case, Monsanto urges that business use does not qualify as "personal" use for AG and I&P purchasers (Opp. at 33–34) and in passing for L&G purchasers (Opp. at 35 n.24). Whether that is so is a legal question inappropriate at certification.  In *Craft*, for example, whether the MMPA requires "transaction causation" had not yet been addressed (as later in *Edmonds* and *Plubell*).  The Court held that whether plaintiffs stated a claim "is not properly part" of certification but "should be resolved in the context of a motion to dismiss, a motion for summary judgment, or at trial." *Craft*, 190 S.W.3d at 384.  Such conclusions go "to the merits," not properly considered. *Id.*  Questions of standing also are premature. *Infra*, Section IV.A.2.

If this Court, however, disagrees on all points, Monsanto's own presentation indicates that the class definition can be amended to limit membership to L&G purchasers. *Infra*, Section VI.C. Such an amendment removes Monsanto's arguments as to other purchasers.  Monsanto's footnote suggestion that "some [L&G] buyers surely intend to use the products for a business (Opp. at 35 n. 24) is untenable.  Just as Monsanto suggests that "it is basic common sense that virtually all [AG and I&P] purchases fall outside" household use (Opp. at 33), it is basic common sense that virtually all L&G products fall within it.  Evidence similar to what Monsanto itself presents (as tested and developed in discovery), respecting separate treatment of L&G products for home use,

---

[27] In *Huch*, the court rejected application of the voluntary payment doctrine, which prohibits recovery for a person who voluntarily pays money with full knowledge of the facts[.]" 290 S.W.3d at 726.  Describing the MMPA as "paternalistic" with "broad scope" (*id*. at 725, 727), it held that allowing a defendant to avoid liability "would nullify the protections of the act and be contrary to the intent of the legislature."  *Id*. at 727. In *Gibbons v. J. Nuckolls, Inc*., 216 S.W.3d 667 (Mo. 2007), it held that privity is not required, *id*. at 669, recognizing that "[r]elevant precedent consistently reinforces" the plain language, spirit and protective purposes of the MMPA.  In *Conway*, it construed "in connection with" to include collection practices, consistent with case law interpreting the MMPA "to provide protection . . . in a gradually increasing variety of circumstances" and the broad scope of what the MMPA prohibits. 438 S.W.3d at 416.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

is itself common proof of that use.  Monsanto's call upon this Court's observation that use is a fact question (Opp. at 33) again forgets that the merits are not at issue.  Even Monsanto concedes that "most" L&G purchasers are home-use purchasers.  Opp. at 35 n.24.  Bare possibility that some may make another use of Roundup is no reason to deny certification.

      C.      **Benefit-of-the-Bargain Injury Is an Objective Standard.**

Monsanto makes the same reliance-based arguments on predominance as it did for its over-breadth arguments, and they are just as wrong as before.  Opp. at 35.  Missouri's benefit-of-the-bargain rule is "applicable in MMPA cases to meet the element of ascertainable loss" and recognized as an ***objective*** standard not requiring individualized inquiry.  *Plubell*, 289 S.W.3d. at 714-15; *Craft*, 190 S.W.3d at 382; *Coca-Cola*, 249 S.W.3d at 863 (distinguishing *Craft*); *see also In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 2019 WL 1418292, at *20 (W.D. Mo. Mar. 21, 2019) ("this proposed model can be used to measure damages on a classwide basis").

Any suggestion that Plaintiffs are required to present their evidence at this stage is also wrong.  *See Hope*, 353 S.W.3d at 80 (rejecting argument against "stigma-loss" theory as "the merits of this theory are not properly our concern" at class certification); *id*. at 84 ("we do not know how Plaintiffs will go about attempting to show . . . that there is an 'ascertainable loss' in this case. Nevertheless, we must proceed on the assumption (yet to be determined in the trial court) that Plaintiffs can show that there is an ascertainable loss, an economic injury, from the alleged stigma."); *Plubell*, 289 S.W.3d at 715 (whether a plaintiff "is able to prove a theory is irrelevant at the class certification stage").

      D.      **Although Not Required, Classwide Damages Can Be Demonstrated by Objective Benefit-of-the-Bargain Measure or "Model" of Damages.**

Plaintiffs also are not required to present their evidence on quantum of damages.  Indeed, they are not required to demonstrate a classwide model of damages at all.  Monsanto's citation to

25

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

*Comcast* does not aid it. In *Comcast*, expert testimony on a damages model ***was*** presented and the decision neither requires such testimony nor that a classwide model be presented (there an unchallenged proposition); it simply requires that damages sought be consistent with injury claimed. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (model supporting plaintiff's damages case "must be consistent with its liability case").[28]  *See also Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) (*Comcast* "did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance");  *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014) (rejecting argument that class cannot be certified "where the class members' damages are not susceptible to a formula for classwide measurement . . . [as] a misreading of *Comcast* . . . which has already been rejected by three other circuits") (collecting cases); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 375 (3d Cir. 2015) (it is a misreading of *Comcast* to interpret it as "preclud[ing] certification under Rule 23(b)(3) in any case where the class members' damages are not susceptible to a formula for classwide measurement") (citation omitted); *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 105 (S.D.N.Y. 2016) (finding "nothing improper about plaintiffs' decision not to proffer expert damages analysis at this stage, given that plaintiffs are not required to . . . proffer a damages model . . . on class certification").

Since *Comcast* was decided, the Supreme Court has made clear that certification ***does not*** require evidence of classwide damages. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036,

---

[28] In *Comcast*, plaintiffs did not challenge whether class certification required method to prove classwide damages and thus the ruling was "good for this day and case only" as there is "well nigh universal" recognition "that individual damages calculations do not preclude class certification." 569 U.S. at 42 (Ginsburg & Breyer, JJ., dissenting).  Monsanto's reliance on *Halvorson v. Auto-Owners Ins. Co*., 718 F.3d 773 (8th Cir. 2013) also is misplaced.  That case did not deny certification based on need for damage model but perceived individual questions "necessary to determine breach of contract and bad faith" in an insurer's claims processing. *Id.* at 779; *see also id*. at 80 (concluding that the "reasonableness of any claim payment" would need to be individually analyzed).

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

1045 (2016) (certification proper although "other important" matters would need to be tried separately "such as damages"); *see also* 2 Newberg on Class Actions § 4:54 (5th ed.) ("courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations"). The Missouri Supreme Court holds that "need for inquiry as to individual damages does not preclude a finding of predominance." *Clark*, 106 S.W.3d at 488; *see also Hale*, 231 S.W.3d at 224–25 (same); *Doyle*, 199 S.W.3d at 789–90 (same).[29]  Simply put, proof of damages is not prerequisite to class certification.[30]

Even if considered, Monsanto is incorrect to say that Plaintiffs have proposed no "damage model."  Opp. at 36, 39.  Both injury *and* damages can be determined by comparing the "as is" value of Roundup (with health risk) to its "as represented" value (without health risk) under Missouri's benefit-of-the-bargain rule.[31]  Such a model is fully consistent with Plaintiffs' liability theory and expressly approved for MMPA claims alleging a misrepresented product.

---

[29] *See also Menocal v. GEO Group, Inc*., 882 F.3d 905, 922–23 (10th Cir. 2018) ("the fact that damages may have to be ascertained on an individual basis" is insufficient to defeat certification) (citation omitted); *Yokoyama v. Midland Nat. Life Ins. Co*., 594 F.3d 1087, 1094 (9th Cir. 2010) ("damage calculations alone cannot defeat certification"); *McLeod v. Bank of Am., N.A*., 2017 WL 6373020, at *17, n.24 (N.D. Cal. Dec. 13, 2017) (leaving to later determination whether aggregate damages calculation would be appropriate and recognizing discretion to shape proceedings at later stages).

[30] Monsanto also relies on *In re Rail Freight Fuel Surcharge Antitrust Litig*., 725 F.3d 244, 253 (D.C. Cir. 2013), in which, like *Comcast*, an expert did present a damages model found to be infirm.  Even before *Tyson* made the Supreme Court's view plain, courts read that case more narrowly than Monsanto or outright disagreed with it.  *See, e.g., Neale*, 794 F.3d at 375 n.10 ("One could read [*Rail Freight*] out of context as saying that all classes require a damages model; however, like *Comcast*, the analysis as to classwide damages was specific to that antitrust claim."); *Guido v. L'Oreal, USA, Inc*., 2014 WL 6603730, at *13, 14 (C.D. Cal. July 24, 2014) (*Rail Freight* "read properly, does not require plaintiffs to actually prove classwide injury as a predicate to class certification" and even if so, is inconsistent with decisions . . . "that the strength of a plaintiff's claim is not at issue when deciding whether to certify a class").

[31] Monsanto points to "refund" language in the petition (Opp. at 36) but Plaintiffs allege benefit-of-the-bargain injury and this is the damages theory on which they rely. Monsanto also points to "refund" language used by Plaintiffs at deposition, but they are neither lawyers nor damages experts. *See Craft*, 2003 WL 23139181, at *6 ("Plaintiff is only a lay person, and should not be expected answer the question at deposition of what relief she seeks by explicating a legal theory of damages.").  Monsanto indicates its understanding that a benefit-of-the-bargain theory is pled by its own attempt at improper merits-based challenge thereto.  *See* Opp. at 39; Rossi Aff. ¶¶ 99, 105, 106.

27

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

Monsanto attempts to construe the petition as conceding that Roundup "is not worthless" (Opp. at 37), when it makes no such concession, and points again to Dr. Rossi's irrelevant, reliance-based opinions.  *Id.*  Monsanto also misapplies what it calls a "*Craft* line of cases" to the effect that a "full refund" measure or "model" is available only if a plaintiff receives "nothing of value."  Opp. at 36–37.  Plaintiffs, however, are relying on a benefit-of-the-bargain "model" of damages, which of course, the *Craft* case acknowledged as appropriate.[32]  And again, what the evidence will show in terms of "as is" or "as represented" Roundup value is not now at issue or required for certification.  *Hope*, 353 S.W.3d at 80, 84;  *Plubell*, 289 S.W.3d at 715; *see also In re Dollar Gen.,* 2019 WL 1418292, at *20 (rejecting argument "regarding varying capability of recovering full-refund damages because at the class certification stage, Plaintiffs are only required to show that 'common questions to the class predominate, not that those questions will be answered in favor of the class.'") (quoting *Amgen*, 568 U.S. at 459).[33]

Monsanto also contends that a "refund model" cannot be applied because it "presupposes the ability to determine how much each class member *paid* for the products they bought," which Monsanto says cannot be done because it "has no master list of . . . prices paid" for L&G products

[32] The trial court in *Craft* was not in the position of addressing evidence on value—either "as is" or "as represented"—and that was no impediment to certification. *Craft*, 190 S.W.3d at 385–86.

[33] For all these reasons, Dr. Rossi's ruminations about a "refund measure" of damages (*see* Rossi Aff. ¶¶ 101–104) are off base.  His example interestingly admits that a "fraudulent Chiefs ticket sold on CraigsList has no value as received and therefore refund "is a valid economic measure of damages." *Id.* at ¶ 101.  He then opines that if the seat is inferior to the one promised, full refund is not justified, presumably because the purchaser still has a seat at the game.  As discussed, however, Missouri law on benefit-of-the-bargain assesses value ***at purchase***.  And of course, a Chiefs ticket is not a product with serious health risk.  His opinion that the value of Roundup is "not equal to zero" (*id.* at ¶ 102) is only his opinion and well into a merits debate.  As an aside, however, Plaintiffs note that it possible and permissible that an "as is" value be zero within a benefit-of-the bargain analysis. In addressing defendant's argument that a "diminished value" theory for correctable vehicle flaws is different than the situation in *Plubell*, the Western District itself recognized that "defective drugs, which cannot be fixed or repaired, have no value." *Hope*, 353 S.W.3d at 83–84.  That indeed was the evidence ultimately presented in *Plubell*.

28

and Plaintiffs "offer no way to obtain that information with classwide evidence." Opp. at 37–38. The latter part of this statement is nonsensical. Plaintiffs have no burden to "obtain" price information with classwide evidence. They can present such evidence via expert opinion. Pricing information can be obtained through discovery. That Monsanto itself has no "master list" of L&G pricing, even if true, is hardly an insurmountable obstacle. For example, Monsanto identifies the Scotts Company as its "exclusive agent" for L&G products. Opp. at 7–9. It does not say that Scotts lacks a price list or that pricing information cannot be had through other means. The same is true of Monsanto's other products.[34] Discovery has only begun and again, what Plaintiffs will be able to prove after full discovery in this case is not at issue.

Moreover, Monsanto's representations about pricing generally, as well as rebates and the like on net expenditure (*see* Opp. at 38) appear based on the misconception that Plaintiffs rely on an "out-of-pocket" damages model entailing expenditure by each class member for each Roundup product. A benefit-of-the-bargain analysis, however, relies on *value* assessment based on product condition ("safe" Roundup versus carcinogenic Roundup). The idea that each class member would need to be examined on the cost of Roundup he bought is misplaced and again, was rejected in *Plubell*. *See* Ex. E at 38–44 (asserting individual inquiry regarding cost of alternative therapies); *Plubell*, 289 S.W.3d at 714–15 (rejecting argument).

What each class member ultimately would recover also is not at issue. In class actions, it appropriate to calculate aggregate damages leaving method of distribution to claims process. *See Gerken v. Sherman*, 351 S.W.3d 1, 11 (Mo. App. W.D. 2011) ("aggregate proof of damages is proper" and claims process can determine distribution); *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 248 F.R.D. 363, 371 (D. Mass. 2008) (damages need not be

---

[34] For example, Monsanto does set pricing for AG and I&P products at distributor level and has information on average pricing for AG products at retail level. Muckerman Aff. ¶¶ 18, 20; Owen Aff. ¶ 24.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

calculated with "absolute precision" and may be proven by reference to the class "rather than by reference to each individual class member") (quoting Newberg on Class Actions § 10.5 (4th ed. 2002)). One of Monsanto's own cases holds that even assuming that "distribution of damages among class members" would require some form of individualized determination (*e.g.*, number of cigarette packages purchased), this is "not a sufficient reason to deny class certification." *Collora v. R.J. Reynolds Tobacco Co*, 2003 WL 23139377, at *4 (Mo. Cir. Ct. Dec. 31, 2003) (citing *Clark*, 106 S.W.3d at 488). It also acknowledged that proof can be handled through administrative claims process, "without the need for individual trials on damages." *Id.*

Monsanto's efforts to undermine a benefit-of-the-bargain analysis (Opp. at 39) also is contradicted by *Collora*, which approves that model, says nothing about how a plaintiff must go about his proof, and makes clear (contrary to Rossi's opinions about use of Roundup), that persons are injured **at point of sale** when they receive a lesser-value, misrepresented product **regardless** of "their different reasons for buying [the product] and the many different ways they intended to use it." 2003 WL 23139377 at *3. Monsanto's claim that a benefit-of-the-bargain measure "would not be viable" (Opp. at 39) is an inappropriate merits issue. *Hope*, 353 S.W.3d at 80, 84.

Monsanto will have full opportunity to test the methodologies and opinions of Plaintiffs' expert at the merits stage and can seek decertification if it chooses (as in *Plubell*). The subject of damages is not a required part of the inquiry and even if it were, benefit-of-the-bargain is a model approved for this kind of case. Monsanto's arguments are misfocused, premature, and immaterial.

## IV.    PLAINTIFFS ARE TYPICAL AND ADEQUATE REPRESENTATIVES.

### A.    Plaintiffs' Claims Are Typical of the Class.

Typicality is fairly easily met "so long as other class members have claims similar to the named plaintiff." *Hale*, 231 S.W.3d at 223 (quoting *DeBoer v. Mellon Mort. Co.*, 64 F.3d 1171,

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

1174 (8th Cir.1995)).  "If the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory, factual variations in the individual claims will not normally preclude class certification."  *Id*.  The claims of every class member need not be identical.  *See, e.g., Elsea*, 463 S.W.3d at 420 (trial court erred in finding that individual variances in asbestos exposure defeated typicality).

### 1.    Plaintiffs' claims are not atypical of other class members.

Monsanto's suggestion that Plaintiffs' claims are not typical because they bought Roundup "for home use" while other class members include "farmers, landscapers, and other professional users" (Opp. at 27) is meritless.  *All* claims in this case arise from Monsanto's course of conduct misrepresenting and concealing Roundup's health risks.  While Monsanto makes much of its own distinctions between product lines, the admitted fact remains that *all* Roundup products contain glyphosate (Opp. at 5), alleged to be carcinogenic. Monsanto misrepresented, concealed, and omitted the truth not just as to some products but all of them. And the remedial theory is the same for all purchasers—Monsanto committed practices declared unlawful by Section 407.020, and the Roundup they purchased was worth less than the Roundup Monsanto held out.

Monsanto's citation to *Dale* (Opp. at 27) hurts rather than helps it.  There, plaintiff's vehicle "was one of a relatively small subset" with a design flaw and there were "ten distinct iterations of the power window regulators" during the relevant time period.  204 S.W.3d at 170. The Court, however, *affirmed* certification, finding that plaintiff's MMPA claim was "based on the same conduct . . . giving rise to the same legal theory as the putative class members, regardless of which design of the power window regulator motor is involved."  *Id*. at 171.  The same is true here.

Monsanto cites *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430 (8th Cir. 1999) for a "unique defense" soundbite (Opp. at 27) but the only supposed "unique defense" it raises is that Mr.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

Tomlinson "fully used each Roundup® product he bought." Opp. at 29. Monsanto also puts this into categories of standing and failure to state a claim. *Id.* at 29–30. Monsanto's standing argument is misplaced generally and its substantive position both merits-based and meritless. As discussed, MMPA claims are often brought by persons who use or consume a product, Missouri's benefit-of-the-bargain rule does not consider post-purchase conduct, and *is precisely* the theory appropriate for purchasers who, for whatever reason, do not return a product and sue for rescission. *Supra*, Section II.B. Moreover, the class is not limited to persons who forwent use of the product, and Monsanto itself claims that many purchasers used or consumed the Roundup they bought. *See* Opp. at 23. Monsanto's non-defense is not unique to Mr. Tomlinson.

Finally, whether the petition states a claim is not part of Missouri's certification analysis, *Craft*, 190 S.W.3d at 384, and whether Mr. Tomlinson ultimately may recover, "depending on the various defenses that may be asserted, is irrelevant to whether his claim is typical of the claims of the class members." *Dale,* 204 S.W.3d at 172; *see also Plubell* 289 S.W.3d at 716 (contention that plaintiff did not 'purchase' Vioxx, and legal effect thereof, are "defenses that go to the merits . . . and are not properly considered in class certification;" moreover, such issues did not make plaintiff's claims atypical as "common logic would indicate that many of the class members' insurers paid for their Vioxx prescriptions"). Put succinctly, typicality and adequacy "focus[] on the plaintiff's claims, not on the defendant's defenses." *Bellinder v. Microsoft Corp.*, 2001 WL 1397995 at *3 (D. Kan. Sept. 7, 2001).

### 2.    Monsanto's "standing" argument is misplaced, premature, and rejected by a majority of courts.

Monsanto also urges that Plaintiffs lack standing to pursue claims on behalf AG and I&P purchasers because Plaintiffs purchased L&G products. Monsanto cites two federal cases—*Rawa*

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

*v. Monsanto Co.*, 2017 WL 3392090 (E.D. Mo. Aug. 7, 2017) and *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015)—for that proposition.   Opp. at 29.

**First**, Monsanto conflates standing with typicality, the latter of which is the question at hand.  Missouri courts treat class certification as antecedent to standing.  *Mitchell v. Resid. Funding Corp.*, 334 S.W.3d 477, 490 (Mo. App. W.D. 2010); *accord Lucas Subway MidMo, Inc. v. Mandatory Poster Agency, Inc.*, 524 S.W.3d 116, 131 (Mo. App. W.D. 2017) ("Only once a class has been certified are standing requirements assessed . . . We find the circuit court erred in finding that standing should be a bar to class certification at this stage.").  Neither of Monsanto's cases are to the contrary as both were decided on a motion to dismiss.

Admitting that federal standing requirements "obviously do not apply in Missouri courts," Monsanto nonetheless says this Court should apply them.  Opp. at 29, n.20.  Monsanto, however, does not actually take up federal standing requirements in class actions (which are not uniform).  Indeed, majority rule is that "the standing inquiry focuses on the class representatives" rather than unnamed class members.  1 Newberg on Class Actions § 2:3 (5th ed.).

**Second**, and aside from when it should be addressed, federal courts regularly hold that a representative plaintiff has "standing" to assert claims on behalf of others similar to his own.  *E.g.*, *Gratz v. Bollinger*, 539 U.S. 244, 265 (2003) (plaintiff had standing to challenge race-based admissions criteria for both freshmen and transfer applicants although plaintiff only applied as a freshman, where similar criteria used in both contexts).  This includes cases involving products similar to the one plaintiff purchased.  In *In re Dollar Gen.*, the Court rejected argument that a class could not be certified "because the representative Plaintiffs lack standing to assert claims on motor oil they did not purchase" as characteristics of the different motor oils and alleged misrepresentations were similar,  2019 WL 1418292, at *12*; see also Suchanek v. Sturm Foods,*

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

*Inc.*, 2019 WL 1978342, at *2 (S.D. Ill. May 3, 2019) ("The majority of courts hold "that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."") (quoting *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012)).[35]  Such an analysis is satisfied here. Plaintiffs and all other class members purchased glyphosate-containing products, all of which were marketed and sold as safe and without disclosure of carcinogenic qualities. Plaintiffs and all class members complain of the same misconduct based on the same legal theory. Standing is no bar to certification.

### 3.    Plaintiffs are not "atypical" for lack of knowledge regarding AG and I&P product features and uses.

Monsanto also claims that Plaintiffs are not "typical" of AG or I&P purchasers because they "lack understanding" of details like product formulations, tank-mixing, pricing, rebates, and the like.  Opp. at 28.  *Milk Products*, on which Monsanto relies, says nothing about how much a named plaintiff must know about other class members. 195 F.3d at 437.  And Monsanto's position is meritless.  **First**, its argument does not even speak to typicality, which asks whether plaintiffs and class members have similar grievances, not similar levels of knowledge. **Second**, even had Monsanto put its argument in proper context, "[a] class representative need only possess "a minimal degree of knowledge necessary to meet the adequacy standard." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (citation omitted); *see also In re Novo Nordisk Sec. Litig.*, 2020 WL 502176, at *6 (D.N.J. Jan. 31, 2020) (same); 1 Newberg

---

[35] *Texas Grain Storage, Inc. v. Monsanto Co.*, 2019 WL 4087430 (W.D. Tex. June 24, 2019), also cited by Monsanto (Opp. at 28) was a Sherman Act anti-trust case.  There, the court already had entered dismissal on "tying" claims (*i.e.*, that plaintiff was forced into buying Roundup in order to purchase Monsanto's genetically modified seed) because plaintiff never bought Monsanto's seed. *Id*, at *2. For the same reason, he could not assert a "bundling" claim.  *Id.*  Here, Plaintiffs themselves purchased Roundup, do have MMPA claims, and are asserting the same theories as all other class members.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

on Class Actions § 3:67 (5th ed.) ("A proposed representative's knowledge of the case need not be robust . . . while a plaintiff must have some knowledge of the litigation and facts of the case, he need only possess a minimal degree of knowledge necessary to meet the adequacy standard") (internal citation and quote marks omitted).

Both Plaintiffs clearly understand what this litigation is about. *See* Richardson Dep. excerpts, attached as Ex. G, at 209:15–19 (explaining that Monsanto "has misrepresented the fact . . . that Roundup causes cancer"); Tomlinson Dep. excerpts, attached as Ex. H, at 34:20–22, 125:15–20 (explaining that glyphosate is the active ingredient in Roundup and Monsanto failed to warn him and the class about the risks). Their claims arise from the same course of conduct and present the same legal or remedial theory as all other class members. More is not required.

**B.    Ms. Richardson Is an Adequate Representative.**

**1.    Ms. Richardson has adequate knowledge and will fulfill her obligations as class representative.**

Monsanto's challenge to Ms. Richardson's adequacy on a "knowledge-of-the litigation" basis is similarly meritless. Opp. at 31–32. Adequacy primarily tests whether "the interest of the [class] representative and that of the absent [class] members [are] compatible, not antagonistic." *Elsea*, 463 S.W.3d at 421. There is no antagonism here. Beyond that, the basic question is whether a named representative will "vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 563 (8th Cir. 1982). Monsanto does not dispute that counsel are qualified. And adequacy demands "only an understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *Quiroz v. Rev. Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008) (internal

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

quotations and citation omitted).[36]  Ms. Richardson understands not only the fundamentals of the litigation, but her obligation to "stay informed" (Richardson Dep. 167:8–9) and her role as representative of "anyone in the State of Missouri who purchased Roundup" except those with personal injury claims.  *Id.*, at 167:9–12; 170:20–24.  She is committed to making herself available to fulfill all duties of a class representative, *id.* at 174:17–20, reviewed relevant pleadings, *id.* at 176:7–9, and has demonstrated willingness to participate in discovery by sitting for deposition.

## 2.       Ms. Richardson is not disqualified because of "family relationship".

Monsanto also attempts to disqualify Ms. Richardson because of supposed "close family tie" to a lawyer at Stueve Siegel Hanson.  In fact, George Hanson (a partner with SSH not active in this case), is merely Ms. Richardson's ***former*** son-in-law. Richardson Dep. at 22:2.  Monsanto's argument again is meritless.  Preference against familial relationships "is directed at a particular ethical problem," *i.e.*, conflict that might arise when class representative stands "to gain financially from an award of attorney's fees made out of a class fund."  *Phillips v. Joint Legisl. Comm. on Perf. & Exp. Review of State of Miss.*, 637 F.2d 1014, 1023–24 (5th Cir. 1981).  Courts have little trouble finding class representatives adequate absent showing that he or she "is likely to have any interest in any fee which may be recovered by [the related lawyer] if plaintiff is successful in his case."  *Fischer v. Int'l Tel. & Tel. Corp.*, 72 F.R.D. 170, 174 (E.D.N.Y. 1976); *see also Lewis v. Goldsmith*, 95 F.R.D. 15, 20 (D.N.J. 1982) (nephew of counsel adequate representative); *Dale*, 204 S.W.3d 151, 173–74 ("class actions have built-in safeguards . . . to insure fair and adequate

---

[36] Monsanto cites *Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001), but that case stated only that adequacy had been improperly presumed.  *Id.* at 480.  In Monsanto's other cases—*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2009 WL 331426 (D.N.J. Feb. 10, 2009) and *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132 (S.D.N.Y. 2008)—classes ***were certified***, and the courts simply removed proposed representatives who, by contrast with Ms. Richardson, were ***woefully*** ignorant about their cases.  *See, e.g., Monster Worldwide* 251 F.R.D. at 135 (among other things, representative did not know if an amended complaint had been filed or whether he had ever seen any complaint in the action).

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

representation" and detect actual conflict; as such, there no need "for a per se rule, disqualifying any class representative who is related to an employee/non-lawyer of class counsel").[37]

Monsanto attempts no such a showing, and there is no reason to presume a conflict.  Ms. Richardson's family tie not only is attenuated but extinguished.  Moreover, there is another named plaintiff—Mr. Tomlinson—with "no relationship with any of plaintiffs' attorneys."  *Malchman v. Davis*, 588 F. Supp. 1047, 1057 (S.D.N.Y. 1984), *aff'd as modified*, 761 F.2d 893 (2d Cir. 1985). Monsanto's argument is meritless.

## V.      A CLASS ACTION IS A SUPERIOR FORM OF ADJUDICATION.

Class treatment in this case is superior for all the reasons set out in Plaintiffs' opening brief. Sugg. in Supp. at 14–16.  Monsanto does not challenge those reasons, but rather, suggests that customers (L&G only) can obtain "a full refund" if "unsatisfied for any reason."  Opp. at 39–40. This argument has been explicitly rejected in cases including those in which Monsanto has asserted it.  *Martin v. Monsanto Co.*, 2017 WL 1115167, at *9 (C.D. Cal. March 24, 2017).  Some courts refuse even to entertain offer of a refund because "it does not comport with the plain language of Rule 23," which, like Missouri Rule 52.08(b)(3), "directs courts to consider other available methods *of adjudication*."  *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *12 (C.D. Cal. Apr. 9, 2014) (emphasis added); *see also Martin*, 2017 WL 1115167, at *9 ("the analysis is whether the class action format is superior to other methods of adjudication, not whether a class action is superior to an out-of-court, private settlement program") (internal citation, quote mark, and

---

[37] In *Irvin E. Schermer Tr. by Kline v. Sun Equities Corp.*, 116 F.R.D. 332 (D. Minn. 1987), cited by Monsanto, the court rejected disqualification based on family tie as "defendants have not presented any evidence that the close family relationship between the class representatives is likely to create a conflict of interest.  Further, any potential conflicts that may arise during settlement can be controlled by the court's power to review settlement agreements for fairness."  *Id.* at 338.  *O'Shaughnessy v. Cypress Media, L.L.C.*, 2015 WL 4197789 (W.D. Mo. July 13, 2015) addressed an *immediate* family tie (sibling) between counsel and class representative.  *Id.* at *5.  That is not the case here.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

emended capital omitted).  Other courts willing to consider it hold that superiority is not defeated where the putative class seeks damages beyond refund amount.  *See Hill v. LLR, Inc.*, 2019 WL 2404900, at *13 (D. Mont. Mar. 8, 2019) (superiority not defeated where plaintiffs sought damages "in excess of those provided as part of a defendant-administered refund program"). Here, Plaintiffs seek punitive damages and attorney fees under Section 407.025 making refund insufficient.

Missouri courts have also rejected Monsanto's argument.  In *Lucas Subway,* the defendant, like Monsanto, argued that because refund was available, a class action suit was unnecessary and hence, not a superior form of adjudication.  524 S.W.3d at 128.  Reversing the trial court, the Western District explained that a plaintiff "should not be prevented from full recovery of the damages to which it is entitled simply because it was offered a refund of the product purchase price."  *Id*.  Because customers "cannot be forced to accept the remedy of a refund . . . and forgo their rights to an independent cause of action . . . the circuit court erred in finding that a class action was not a superior method of recovery[.]" *Id*. at 129.

## VI.    THE CLASS IS ASCERTAINABLE.

Monsanto opens its brief with ascertainability arguments (Opp. at 17–19) that are both exceedingly weak and easily answered through revision to class definition, which may be done at any time. "Missouri courts consistently recognize a certified class may subsequently be modified or decertified . . . Therefore, it would make no sense to require that the initial definition be the final definition."  *Hope*, 353 S.W.3d at 79 (citing cases). A court is "not bound by the class definition proposed in the complaint," *Lafollette v. Liberty Mut. Fire Ins*. 2016 WL 4083478, at *13 (W.D. Mo. Aug. 1, 2016) (citation omitted),  but may "redefine a proposed class in such a way as to allow the class action to be maintained."  *Id*. (citation omitted). Such authority, for example, permits subclassing, even *sua sponte*, and at such point as "the nature of the proof to be developed

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

at trial becomes clear." *Id*. (citations omitted).  Certification "may be altered or amended' at any time before decision on the merits. Mo. S. Ct. Rule 52.08(c)(1); Fed. Rule 23(c)(1).

Moreover, "ascertainability" is not generally considered a strenuous test. *See Murphy v. Gospel for Asia, Inc*., 327 F.R.D. 227, 234, 235 (W.D. Ark. 2018) ("The requirement that a class be clearly defined . . . is not designed to be a particularly stringent test," but looks to whether "general outlines of the membership of the class are determinable") (citation omitted); *Aldapa v. Fowler Pkg.Co., Inc*., 323 F.R.D. 316, 343 (E.D. Cal. 2018) (definition need only "set forth common characteristics sufficient to allow a member of that group to identify himself or herself as having a [potential] right to recover based on the description").[38]  In this state, the Missouri Supreme Court's "primary concern" is that the definition not be too "amorphous, vague, or indeterminate." *Coca-Cola*, 249 S.W.3d at 861–62 (quoting *Craft*, 190 S.W.3d at 387).  While noting that it should be "sufficiently definite so that it is administratively feasible to identify members of the class[,]" *id*. at 862, the Court did not elaborate on what administrative mechanism may accomplish that task, and otherwise made clear that not "every potential member" of a class need be identified at commencement of the action.  *Id*.

### A.    Identification of Purchasers Is Administratively Feasible.

Monsanto does not suggest that "purchase" is subjective and clearly it is not.  *E.g., Craft*, 190 S.W.3d at 388 (purchasers of "Lights [cigarettes]" not claiming personal injury was "an ascertainable defined class" that did "not depend on the consumer's subjective state of mind"). Monsanto's argument is that: (1) it has no records of, and retailers have no "comprehensive list"

---

[38] Federally, many circuits reject a test requiring administrative feasibility. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc*., 821 F.3d 992, 996 (8th Cir. 2016); *see also Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1123 (9th Cir. 2017) ("We have never interpreted Rule 23 to require [a showing of administrative feasibility], and, like the Sixth, Seventh, and Eighth Circuits, we decline to do so now.").

of, L&G purchasers (Opp. at 18; Rosenthal Aff. ¶ 18); and (2) AG and I&P products generally "are not sold directly" to end users.  *Id.* (citing Muckerman Aff. ¶ 15; Owen Aff. ¶¶ 9, 13).

Factually, Monsanto's criticisms, based on untested say-so, are unconvincing. Monsanto says retailers do not have a "comprehensive" list of L&G purchasers, not that they have no purchaser information at all.[39]  Monsanto says farmers purchase Roundup from retailers "within the AG sector" (Muckerman Aff. ¶ 16) and that it sells I&P products to distributors (*e.g.*, Helena Chemical, Nutrien, and SiteOne) and "specialty retailers" (*e.g.*, Tractor Supply Company, Rural King, Atwoods, and Bomgaars Supply).  Owen Aff. ¶¶ 9, 12.  Monsanto does not suggest that distributors or specialty retailers do not have customer lists, which they very likely do.

As much or more to the point, Monsanto produces one federal decision—*White*—to support the notion that there must be a "list" of purchasers before a class can be certified.  Opp. at 18.[40]  Such a requirement would deny certification for wide swaths of persons the MMPA was designed to protect and defeat legislative intent that class actions be allowed.  Other federal courts reject such arguments, recognizing that classes are "routinely" certified "where there are unlikely to be records of who purchased the product," *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at

---

[39] Representation that retailers have no "comprehensive list" of purchasers comes from Monsanto's own lawyer in this case, who bases it on experience with "certain retailers." Rosenthal Aff. ¶ 18.  It is questionable whether Mr. Rosenthal can ethically serve as both witness and lawyer but that aside, he neither professes knowledge as to all retailers nor even identifies the retailers on which is opinion is based.

[40] In *In re Teflon Prod. Liab. Litig.*, cited by Monsanto, the court recognized that "[d]ocumentary evidence is not necessarily crucial to granting class certification." 254 F.R.D. 354, 363 n.14 (S.D. Iowa 2008).  The problem there was specific to the case. Plaintiffs sued DuPont, manufacturer of non-stick coating. Importantly, "DuPont does not manufacturer cookware—only the coating used on other manufacturers' cookware." *Id.* at 357 n.3.  Some cookware was branded with, *e.g.*, a "Teflon" label, and some was not. *Id.*  Many pans had no visible labels, and those that did "could not be identified as containing a Teflon® coating" due to uncertainties regarding year of manufacture and/or purchase. *Id.* at 361 n.13.  Also, "many class representatives mistakenly believe[d] their product contained Teflon® coating" when it did not, or that "all non-stick coating is from DuPont," when it was not. *Id.* at 362.  In addition, there already had been "a lengthy discovery period" without opportunity for better evidence.  In marked contrast, "Roundup" products are Monsanto products, all of them contain glyphosate, and discovery here has just begun.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

*17 (C.D. Cal. July 24, 2014), and decline requirements defeating of class actions.  *See Ries v. Arizona Bevs. USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (rejecting argument that without receipts, administration would require "mini-trials" to establish whether each member had made a purchase: "This is simply not the case. If it were, there would be no such thing as a consumer class action."); *Ebin v. Kangadis Food Inc*., 297 F.R.D. 561, 567 (S.D.N.Y. 2014) (declining certification when consumers likely lack proof of purchase "would render class actions against producers almost impossible to bring.") (internal quotations and citation omitted). Federal courts in Missouri likewise reject such demands, holding that "class members are ascertainable through the use of self-identification affidavits." *In re Dollar Gen*., 2019 WL 1418292, at *16.

Missouri's Western District has held that fact-finding on class criteria (in a case involving more individualized questions than purchase) "does not necessarily render a class definition infirm" and further, that "class members are required to affirm their membership in a class by verifying satisfaction of class criteria." *Elsea*, 463 S.W.3d at 426.  It is common and acceptable to do so at claims administration through means including declaration or affidavit.  *In re Dollar Gen.*, 2019 WL 1418292, at *16; *see also In re: Syngenta AG MIR 162 Corn Litig*., 2016 WL 5371856, at *3 (D. Kan. Sept. 26, 2016) (if needed, producers "may be able to establish membership in the class properly by affidavit"); *Brown v. SCI Funeral Srvs. of Florida, Inc*., 212 F.R.D. 602, 606 (S.D. Fla. 2003) ("The mere fact that class members will have to file a claim form or affidavit stating whether and when they were provided with the pertinent disclosures does not preclude the application of class treatment.").

Monsanto's focus on perceived problem with consumer "memories" (Opp. at 17) is conceptionally unsound and plainly over-exaggerated.  **First**, affidavits are used in litigation all

41

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

the time.  *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669 (7th Cir. 2015).[41]  **Second**, there is no

reason to suspect persons' memories.  While Monsanto suggests that Plaintiffs could not identify

*every* Roundup product they purchased (Opp. at 18), class membership requires only *a single*

purchase.  That is hardly a memory challenge.[42]

> **B.      The Class Definition Is Not "Indefinite".**

Monsanto also suggests that whether a class member purchased Roundup primarily for one

of the MMPA uses renders the definition indefinite as to AG and I&P products.  Opp. at 19.

Monsanto again relies on *Coca-Cola*, involving "subjective preference" against saccharine.  Here,

use is not some amorphous state of mind.  Indeed, courts have certified classes involving far more

qualitative criteria.[43]  They have little hesitation finding definitions incorporating a MMPA "use"

component ascertainable.  *See McAllister v. St. Louis Rams, LLC*, 2018 WL 1299553, at *6 (E.D.

Mo. Mar. 13, 2018) (finding class definition in MMPA case that included being a Personal Seat

---

[41]  *BPA II*, cited by Monsanto (Opp. at 17), treated class membership as a "manageability" issue, was decided before *Sandusky,* which rejected heightened standard for ascertainability (*supra*, note 38) and is contrary to more recent federal decisions in Missouri.  *In re Dollar Gen.*, 2019 WL 1418292, at *16.  It should also be noted that by the time the court entered its ruling, the parties were two years into discovery. *See* Docket, *In Re: Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*, 4:08MD01967 (containing entries indicating discovery responses as early as 2009). Here, discovery has just begun.

[42]  Insofar as when purchase occurred, Monsanto raises the specter of a statute of limitations defense (Opp. at 18 n.15), but that is routinely rejected as impediment to certification.  *See, e.g., Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) ("As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification . . . Predominance . . . cannot be reduced to a mechanical, single-issue test."); *In re Linerboard Antitrust Litig*., 305 F.3d 145, 163 (3d Cir. 2002) ("Challenges based on the statute of limitations. . .  will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability.").

[43]  For example, in *Ahmad v. City of St. Louis, Missouri*, 2019 WL 2009589 (E.D. Mo. May 7, 2019), the court itself redefined a class to include "persons who will in the future participate in or observe non-violent public demonstrations and/or who record such public demonstrations and/or police activities at the public demonstrations for the exercise of constitutional rights of free speech and assembly in the City of St. Louis." *Id*. at *3.  This was not subjective because the terms "demonstration" and "non-violent" are "objectively determinable descriptors" that did not "depend upon the state of mind of class members."  *Id.*

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

License holder who used it for "household purposes" ascertainable); *In re Dollar Gen.,* 2019 WL 1418292, at \*16 (rejecting argument that purchase of motor oil "for use" in vehicles made after 1988 and/or 1930 is subjective).  Courts frequently certify MMPA classes notwithstanding the "use" aspect of Section 407.025.  Were that considered prohibitively subjective, both the purposes of the MMPA and its express authorization of class actions would again be severely undermined.

In addition, Monsanto's own presentation counteracts its argument.  Monsanto says that Roundup products are sold within three segments, each with its own marketing, distribution, and container types, all according to ***use*** categories.  It describes these uses within each segment:

- L&G products, which Monsanto concedes "most" purchasers buy for "home use" on grass and gardens.  Opp. at 35 n.24.

- AG products, which farmers use in clearing fields and to spray over the top of growing crops to control weeds.  Muckerman Aff. ¶¶ 3, 7, 8, 12.

- I&P products, sold for use on "turf athletic fields, golf courses, and other manicured landscapes" and to manage weeds risking infrastructures.   Owen Aff. ¶¶ 7, 8.

How consumers intend to use Roundup is not then some amorphous state of mind but well understood.  Even by Monsanto's own account, such uses are objective and observable not only according to function but product type.

## C.    The Class Definition Can Be Modified as Appropriate.

As noted, class definitions are fluid and can be revised as the case progresses.  The court is not confined to what was originally pled.

In terms of "personal" use, the class definition can be presently and easily revised to describe such use consistent with the MMPA as follows:

All Missouri residents who from August 19, 2014 to the present[44] purchased Roundup primarily for family use, household use, or for their own personal use and not for resale.

---

[44]  Monsanto concedes understanding that Plaintiffs are proposing a class of persons who purchased Roundup within the five-year statute of limitations period.   Opp. at 26 n.19.

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

If more elucidating description is needed, the definition could, after discovery, be re-defined according to product purchased, undeniably objective criteria, for example:

> All Missouri residents who from August 19, 2014 to the present purchased one or more of the following Roundup products primarily for family use, household use, or for their own personal use and not for resale: *[insert all products for sale in Missouri within last five years]*.

To the extent the Court rules that "personal" use does not include business use (and it should not for all reasons discussed), Plaintiffs (expressly without waiving and subject to all arguments herein and in connection with their motion to compel), the class could, after discovery, be re-defined as:

> All Missouri residents who, from August 19, 2014 to the present, purchased one or more of the following products primarily for personal, family or household use: [*insert L&G products sold in Missouri during last five years*].

In sum, class definitions are flexible. Monsanto's argument about relying on memories is a non-starter, and its other positions have not only been rejected by courts within and outside Missouri, but are counter to purposes of the MMPA and legislative intent that class actions be allowed.

## CONCLUSION

Most if not all Monsanto's arguments are contrary to Missouri law, which is well-articulated and clear. As set out in Plaintiffs' motion, supporting memorandum, and herein, all class certification requirements are met. Monsanto's arguments are without merit.

Date:  November 6, 2020              Respectfully Submitted,

By:  /s/ Patrick J. Stueve
STUEVE SIEGEL HANSON LLP
Patrick J. Stueve, Mo. Bar #37682
Todd E. Hilton, Mo. Bar #51388
Tanner Edwards, Mo. Bar #66208
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
hilton@stuevesiegel.com

Electronically Filed - Jackson - Kansas City - November 06, 2020 - 04:05 PM

stueve@stuevesiegel.com
tanner@stuevesiegel.com

GRAY, RITTER & GRAHAM, P.C.
Don M. Downing, Mo. Bar #30405
Gretchen Garrison, Mo. Bar #33963
Cort A. VanOstran, Mo. Bar #67276
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone: (314) 241-5620
Facsimile: (314) 241-4140
ddowning@grgpc.com
cvanostran@grgpc.com
ggarrison@grgpc.com

SPEER LAW FIRM, P.A.
Charles F. Speer, Mo. Bar #40713
104 W. 9th Street, Suite 400
Kansas City, Missouri 64105
Tel: (816) 472-3560
Fax: (816) 421-2150
cspeer@speerlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2020, the foregoing document was filed via the

Court's Case.Net system, which automatically provided electronic service to all counsel of record

who are deemed to have consented to electronic service, including the following:

SHOOK, HARDY & BACON L.L.P.
Amy M. Crouch
Brent Dwerlkotte
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Ph: 816.474.6550
Fax: 816.421.5547
amcrouch@shb.com
dbdwerlkotte@shb.com
Attorneys for Defendant Monsanto Company

By:  /s/ Patrick J. Stueve
An Attorney for Plaintiffs