GILLIAN L. WADE (State Bar No. 229124)
SARA D. AVILA (State Bar No. 263213)
MARC A. CASTANEDA (State Bar No. 299001)
Milstein, Jackson Fairchild & Wade, LLP
gwade@mjfwlaw.com
savila@mjfwlaw.com
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, CA 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

*Attorneys for Plaintiffs and the proposed Settlement Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT GILMORE, et al., | MDL No. 2741 |
| Plaintiffs, | Case No. 3:21-cv-08159 |
| vs. | **CORRECTED DECLARATION OF GILLIAN L. WADE IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF CLASS FOR PURPOSES OF SETTLEMENT** |
| MONSANTO COMPANY, | |
| Defendant. | |
| | Date:    April 14, 2022 |
| | Time:    10:00 a.m. |
| | Place:   Via Zoom Webinar |
| | Judge:   Hon. Vince G. Chhabria |

I, Gillian L. Wade, declare as follows:

1.      I am admitted to the bar of this state and am a partner at Milstein Jackson Fairchild & Wade, LLP ("MJFW"), Class Counsel and counsel of record for Plaintiffs Scott Gilmore, Julio Ezcurra, Sherry Hanna, James Weeks, Paul Taylor, Kristy Williams, Amanda Boyette, and Anthony Jewell.  I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would competently testify thereto under oath.

2.      This declaration is submitted in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement and for Certification of the Class for the Purposes of Settlement, filed concurrently herewith.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of the Second Amended Settlement Agreement[1] and exhibits thereto.

4.      This action and the Related Actions allege substantially similar claims asserting violations of state consumer-protection and false-advertising statutes related to the marketing and sale of Monsanto's Roundup® Products without warning of their alleged potential carcinogenicity and health risks.  These cases include various federal and state class actions against Monsanto and retailers that sell Monsanto's Roundup® Products, as well as individual state actions against retailers.

5.      On February 19, 2020, Julio Ezcurra filed suit in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, seeking to represent a Florida class of Roundup® purchasers of the Roundup® Products.[2]  *Ezcurra* Compl. ¶¶ 20-90. Monsanto removed the case to federal court on March 27, 2020 and moved to dismiss the complaint on April 3, 2020.  After several months of motion practice, the parties conducted a

---

[1] All capitalized terms herein have the meaning specified in the Settlement Agreement.
[2] *Ezcurra et al v. Monsanto Co.*, No. 9:20-cv-80524 (S.D. Fla.) (filed 2/19/2020), Compl. ¶¶ 20-90.

Rule 26(f) conference on May 4, 2020, filed a Joint Discovery Plan a week later, and

commenced discovery. MJFW appeared in the Ezcurra action on July 21, 2020 as counsel for

Mr. Ezcurra.

6.      Ezcurra and Monsanto exchanged Rule 26 initial disclosures on May 18, 2020

and exchanged written discovery between May and July of 2020.  On behalf of Ezcurra, we

served Monsanto with 13 interrogatories, 27 requests for admission, and 55 requests for

production.  Monsanto provided a total of 34 pages of interrogatory responses and 25 pages of

admissions, and produced thousands of pages of documents, including sales data.  Ezcurra issued

a notice of deposition to Monsanto's Global Packaging and Labeling Lead Jerry Lambert on June

5, 2020, and Monsanto issued a Notice of Deposition to plaintiff Julio Ezcurra on August 3, 2020

to take his deposition on August 10, 2020.

7.      We also retained Dr. D.C. Sharp, PhD., an economic expert and formerly tenured

Associate Professor of Economics and Business Advisory Council Research Professor at the

University of Southern Mississippi.  Following extensive research and data analysis, Dr. Sharp's

report concluded that consumers had paid a price premium of 31 percent over what they would

have been willing to pay for a similar product that disclosed a carcinogenic active ingredient.  A

true and correct copy of Dr. Sharp's report is attached hereto as Exhibit 2.

8.      While the parties were engaged in discovery in the *Ezcurra* case, Monsanto's

motion to dismiss was pending before the court.

9.      On August 6, 2020, following a lengthy hearing and supplemental briefing

requested by the Court, Monsanto's motion to dismiss was granted.  On behalf of Ezcurra, we

filed a Notice of Appeal with the U.S. Court of Appeals for the Eleventh Circuit challenging the

court's dismissal order. That appeal has been fully briefed since March 8, 2021 and was set for

oral argument in October 2021. On September 3, 2021, the appeal was stayed. While *Ezcurra* remains pending on appeal, the parties have relied, in part, on the discovery record developed in *Ezcurra* in reaching the instant Settlement.

10.     We filed the instant action on behalf of Plaintiff Gilmore and a putative class on August 19, 2020. On December 3, 2020, Monsanto moved to dismiss Gilmore's initial complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). We filed a First Amended Complaint ("FAC") on Mr. Gilmore's behalf on January 12, 2021. Monsanto moved to dismiss the FAC on January 26, 2021, and Monsanto filed its Reply on February 16, 2021.

11.     While Monsanto's motion to dismiss the FAC was pending, the parties conducted a joint mediation before the Honorable Diane M. Welsh of JAMS.  Class Counsel and counsel for Monsanto had previously designated Judge Welsh as a private mediator in *Ezcurra* in May 2020 pursuant to the Southern District of Florida's Local Rules and the court's Pretrial Scheduling Order.  *See* Notice of Mediator Selection, Dkt. No. 25, *Ezcurra v. Monsanto Co.*, Case No. 9:20-cv-80524-DMM (S.D. Fla.).  At the time, the parties anticipated that any mediation before Judge Welsh would attempt to resolve all of Class Counsel's and Plaintiff's Counsel's Related Actions pending against Monsanto and the major retailers of its Roundup® Products.

12.     We continued to prosecute the Related Actions after *Ezcurra* was dismissed, including by appealing *Ezcurra* to the Eleventh Circuit and filing the instant action.  Although Class Counsel continued to believe the merits of the Related Actions were strong, the claims against the retailers are novel and complex.  Between September 2020 and January 2021, courts dismissed complaints in three Related Actions and granted leave to amend: *Weeks v. Home Depot*, *Taylor v. Costco*, and *Hanna v. Walmart*.

13. To facilitate settlement discussions, Monsanto informally provided us with nationwide sales data for its Roundup® Products for the calendar years 2011 through 2020, including a summary of estimated total sales by U.S. State and Territory. We also relied on publicly-available information from the personal-injury litigation, the *Wheatgrowers* case, and the regulatory record.

14. Dr. Sharp analyzed nationwide sales data for settlement purposes to assist us with confirming and interpreting the sales data.

15. The parties ultimately scheduled a mediation in this matter on February 16, 2021 before Judge Welsh, a former United States Magistrate Judge and an experienced mediator nationally recognized for her work in complex class actions. The mediation took place before Judge Welsh via videoconference on February 16, 2021. I, along with Sara D. Avila, and Marc A. Castaneda from MJFW, and Joel Oster of the Law Offices of Howard Rubinstein, participated for Plaintiff. Monsanto was represented by John J. Rosenthal and Jeff Wilkerson of Winston & Strawn LLP, and Robyn D. Buck and William B. Dodero of Monsanto. The negotiations lasted more than *fourteen hours* and involved multiple rounds of shuttle diplomacy and face-to-face negotiations among counsel facilitated by Judge Welsh. Shortly after midnight EST, however, the parties reached an agreement in principle. For ease of reference, a true and correct copy of the Declaration of United States Magistrate Judge Diane Welsh (Ret.) Regarding Class Action Settlement, *Dkt.* 27, is attached hereto as Exhibit 3.

16. The high sales volume, along with counsel's collective experience litigating class actions in regards to anticipated claims rates, and the challenges to be expected in terms of overall fairness, was taken into account in determining a fair, reasonable and adequate structure for settlement and the amount of money necessary to settle the case.

17.    At all times throughout this case and the Related Cases, the best interest of the proposed class was Class Counsel's chief concern.  Indeed, in any consumer class action like this one, issues related to the value of the product versus its benefit, the amount a defendant is willing to settle the case for versus continuing to litigate, and the likelihood of success on the merits are key issues that must be taken into account.

18.    After further negotiations regarding the details of the agreement, the all parties, except for plaintiff Hanna, executed the Settlement Agreement on June 9, 2021. Ms. Hanna signed the Settlement Agreement on June 10, 2021. *See* Dkt. 26-1.

19.    Based on the information Monsanto provided for settlement purposes, we estimate that there are millions of purchasers of Roundup® Products during the class period.

20.    On June 10, 2021 MJFW filed a Second Amended Complaint, which added Plaintiffs from some of the Related Cases. Specifically, Julio Ezcurra, Sherry Hanna, James Weeks, Amanda Boyette, Anthony Jewell, Paul Taylor and Kristy Williams (collectively, "Plaintiffs") were added to this action.

21.    I am unaware of the Plaintiffs having any conflicts of interest with other putative class members. It is my understanding that Plaintiffs are committed to the vigorous prosecution of this action. The Plaintiffs were promised nothing in connection with their pursuit of claims against Monsanto and the retailers.

22.    I, along with Ms. Avila and Mr. Castaneda of MJFW, have extensive experience litigating consumer class action matters.

23.    Throughout this process, we conferred with Plaintiffs concerning the proposed settlement to ensure that it was in the best interest of the Settlement Class Members.  I believe that Plaintiffs have, and will continue to vigorously and adequately represent the interests of the

Settlement Class Members.

24.     We have litigated and negotiated vigorously on behalf of our clients, and eventually reached a settlement that provides approximately two-thirds the best-case scenario for Plaintiffs were they to prevail at trial.

25.     I have led MJFW's class action and complex litigation group for over ten years. MJFW has extensive experience in class action and complex litigation and lawyers in its class action department have served as Lead or Co-Lead Counsel in numerous class actions protecting the rights of consumers, with a particular emphasis on consumer fraud and protection matters.

26.      MJFW is capable of, and committed to, prosecuting this action vigorously on behalf of the Class.  Some of the matters in which MJFW has been appointed as lead or co-lead class counsel include:  *Imani Whitfield et al. v. Yes To, Inc.*, C.D. Cal. No. Case No. 2:20-cv-00763-AB-AS (C.D. Cal. 2021); *Elkies, et al., v. Johnson & Johnson Services, Inc., et al.*, C.D. Cal. No. Case No. 2:17-CV-7320-GW-JEM (C.D. Cal. 2019); *In re Dollar General Motor Corp. Motor Oil Marketing and Sales Practices Litigation* (MDL 2709, 2019); *Perez v. Public Storage*, LASC No. BC611584 (2018); *In re Wells Fargo Bank Wage and Hour Cases*, LASC No. JCCP4702 (2018); *Barba et al. v. Shire U.S. Inc.,* S.D. Fla. No. 1:13-cv-21158-JAL(S.D. Fla. 2016); *Eggnatz v. The Kashi Company,* S.D. Fla. No. 1:12-CV-21678-JA (S.D. Fla. 2015); *Paul v. Wine.com*, SFSC Case No. CGC13534734 (2015); *Toney v. Just Fabulous*, LASC BC533943 (2015); *Arreguin v. Telebrands Corp.*, San Bernardino County Case No. CIVRS1307798 (2015); *McCrary v. The Elations Company, LLC*, No. ED CV 13-00242 JGB (OPx) (C.D. Cal.2014); *Smith v. Intuit, Inc.,* No. 5:12-cv-00222 EJD (N.D. Cal.2013); *Solomon v. Ramona's Mexican Food Products, Inc.* (LASC No. BC 463914 (2013); *Saenz v. SEIU United Healthcare Workers West*, Alameda Superior Court Case No. RG09478973 (2013); *Griar, et al., v. Glaxosmithkline, Inc. et al.,* LASC No. BC288536, (2012); *In*

*re Budeprion XL Marketing and Sales Practices Litigation*, MDL No. 2107 (2012); *Keller v. Gaspari Nutrition, Inc.,* 2:11-cv-06158-GAF (C.D. Cal. 2011); *Weeks et al v. Kellogg, et al.,* CV-09-08102-MMM (C.D. Cal., 2011); *Williams, et al. v. Biotab Nutraceuticals, Inc.*, LASC No. BC414808 (2010); *Wally v. CCA Industries, Inc.*, SFSC Case No. BC422833, (2010); *Fallon v. E.T. Browne Drug Co., Inc.*, LASC No. BC 411117 (2009); *Oliver, et al. v. Atmos Corporation*, San Joaquin Super. Ct. Case No. CV0119362 (2009); *Salcido v. Iomedix*, LASC Case No. BC 387942 (2009); *Deist, et. al. v. Viking Industries*, San Joaquin Super Ct., Case No. CV 025771 (2009); *Ceballos v. Fuze Beverage, LLC*, LASC Case No. BC 394521 (2009); *Heath, et al. v. County of San Bernardino*, ED CV 06-411-VAP (C.D. Cal. 2008); *Klyachman, et al. v. The Vitamin Shoppe, et al.*, New Jersey Super. Ct. Case No. L-1739-07 2008); *Shaffer v. Continental Casualty Company, et al.*, 2:06-cv-02235-PSG (C.D. Cal. (2008) (class certification aff'd. at D.C. No. 2:06-cv-02235-PSG-PJW); *Klotzer, et al. v. International Windows*, Solano County Super. Ct. Case No. FCS 021196 (2007); *LaRosa v. Nutramerica Corp.*, LASC Case No. BC 309427 (2007); *Abigana, et al. v. Rylock Company Ltd.*,Alameda County Case No. 2002 076625, (2006); *Hufschmidt v. Allstate Insurance Company*, LASC No. BC291782 (2004).

27.     My practice focuses on representing plaintiffs in complex litigation and consumer class actions, with particular emphasis on class actions involving consumer fraud. I have had significant involvement in over 75 consumer class action cases during my time at MJFW, and I have been appointed lead class counsel or co-lead class counsel in several state and federal class actions throughout the United States, including: *Imani Whitfield et al. v. Yes To, Inc.*, C.D. Cal. No. Case No. 2:20-cv-00763-AB-AS (C.D. Cal. 2021); *Elkies, et al., v. Johnson & Johnson Services, Inc., et al.*, C.D. Cal. No. Case No. 2:17-CV-7320-GW-JEM (C.D. Cal. 2019); *In re Dollar General Motor Corp. Motor Oil Marketing and Sales Practices Litigation* (MDL 2709, 2019); *Perez v. Public*

*Storage,* LASC No. BC611584 (2018); *In re Wells Fargo Bank Wage and Hour Cases*, LASC No. JCCP4702 (2018), *Barba et al. v. Shire U.S. Inc.*, No. 1:13-cv-21158-JAL (S.D. Fla.); *Eggnatz v. The Kashi Company*, No. 1:12-CV-21678-JAL, (S.D. Fla.); *Toney v. Just Fabulous*, (LASC BC533943); *Paul v. Wine.com*, (SFSC CGC13534734); *Arreguin v. Telebrands Corp.* (San Bernardino County Case No. CIVRS1307798); *McCrary v. The Elations Co., LLC*, EDCV 13-00242 JGB (OPx) (C.D. Cal.); *Saenz v. SEIU United Healthcare Workers-West* (Alameda Superior Court, No. RG09478973); *Smith, et al. v. Intuit, Inc.*, 5:12-cv-00222-EJD (N.D. Cal.); *In re Budeprion XL and Marketing and Sales Practices Litigation* (MDL No. 2107) (E.D. Pa.); *Keller v. Gaspari Nutrition, Inc.* No. 2:11-cv-06158-GAF (C.D. Cal.); *Shaffer v. Continental Casualty Company*, 2:06-cv-2235-PSG (C.D. Cal.); *Weeks, et al. v. Kellogg, et al.*, CV-09-08102 (MMM)(C.D. Cal.); *Thompson, et al., v. Biotab Nutraceuticals*, Inc. (LASC No. BC414808); *Pabst v. Genesco, Inc.,* 3:11-cv-01592-SI (N.D. Cal.); *Heath, et al. v. County of San Bernardino*, 5:06-CV-00411-VAP (C.D. Cal.); *Solomon v. Ramona's Food Products,* LASC No. BC 451080; *Wike v. HCG Platinum, LLC,* LASC. No. BC451080; *Litwin v. iRenew, et al.,* LASC. No. BC447114; and *Fallon v. ET Browne Drug Corp.*, LASC No. 411117. I have also been appointed to the Plaintiffs' Executive Committees in several federal class actions centralized by the MDL Panel, including: *In re Nutramax Cosamin Marketing and Sales Practices Litigation* (MDL No. 2489)(D. Md.); *In re Pom Wonderful Marketing and Sales Practices Litigation* (MDL No. 2199)(C.D. Cal.); *In re Budeprion XL Marketing and Sales Practices Litigation* (MDL No. 2107) (E.D. Pa.); *In re Liberty Refund Anticipation Loan Litig*. (MDL No. 2334) (N.D. Ill.) and *In re H&R Block Refund Anticipation Litig.* (MDL No. 2373) (N.D. Ill.).

28.   I am a frequent lecturer on class action practice, including serving as the Plaintiff

side panelist along with Judges and neutrals in a nationwide JAMS Webinar entitled "Cutting Edge Issues In Mediating and Arbitrating Consumer Class/Mass Action Claims" in 2021. I have written articles regarding class action litigation and I was the Plaintiffs' co-chair of the 2019 and 2020 Bridgeport Consumer Class Action Litigation and Management conferences.

29.   I have participated as a panelist at numerous conferences regarding consumer class action litigation, including, "Does Compliance Matter? Class Actions Over Regulated Labels" at the 2014 American Bar Association Section of Antitrust Law Spring Meeting in Washington, D.C., the 2015, 2016, 2017 2018, 2019 and 2020 Bridgeport Consumer Class Action Litigation & Management Conferences in Los Angeles, Orange County and virtually, the 2019 and 2020 Mass Torts Made Perfect (Class Action Track) conference, and the 2017 and 2020 CLE International Food Law Conference, where I presented plaintiff perspectives on class action procedural issues affecting food litigation.

30.   In 2019, I accepted an invitation to join the Outside Advisory Board of the UCLA Resnick Center for Food & Law Policy and I am an executive member of the Cambridge Food Fraud Forum.  I have guest lectured at UCLA Law School and Pepperdine Caruso School of Law about class action litigation and was selected to be on the 2018-2019 executive committee for The Class Action Trial Lawyers Association – Top 25.

31.   In 2020, I participated as a plaintiffs-side moderator in the Complex Courts Virtual Symposium, among a panel of California complex court judges on the topic "The Lifecycle, Pitfalls and Best Practices of Class Actions."

32.   Prior to joining MJFW, I was a litigation associate at Jones Day where I defended corporations in consumer fraud class actions, ERISA cases, and actions arising under the Fair Credit Reporting Act.

33.     Sara Avila is a senior associate at MJFW and part of the firm's consumer class action practice group, and is admitted in this Court. Ms. Avila graduated from the University of California, Los Angeles with a Bachelor of Arts and received her Juris Doctorate from Pepperdine University School of Law. She has been admitted to practice law in California since 2009. She has had significant involvement in over 50 consumer class actions. Her career has been focused on representing plaintiffs in actions stemming from consumer deception, and she has been appointed class counsel in the following cases: *Imani Whitfield et al. v. Yes To, Inc.*, C.D. Cal. No. Case No. 2:20-cv-00763-AB-AS (C.D. Cal. 2021); *Elkies, et al., v. Johnson & Johnson Services, Inc., et al.*, C.D. Cal. No. Case No. 2:17-CV-7320-GW-JEM (C.D. Cal. 2019); *In re Dollar General Motor Corp. Motor Oil Marketing and Sales Practices Litigation,* MDL 2709(2019); *Perez v. Public Storage*, LASC No. BC611584 (2018); *Barba et al. v. Shire U.S. Inc.*, No. 1:13-cv-21158-JAL (S.D. Fla.); *Eggnatz v. The Kashi Company*, No. 1:12-CV-21678-JAL, (S.D. Fla.); *Toney v. Just Fabulous*, (LASC BC533943); *Paul v. Wine.com*, (SFSC CGC13534734); *Arreguin v. Telebrands Corp.* (San Bernardino County Case No. CIVRS1307798); *McCrary v. The Elations Co.*, LLC, EDCV 13-00242 JGB (OPx) (C.D. Cal.); *Saenz v. SEIU United Healthcare Workers-West* (Alameda Superior Court, No. RG09478973). Ms. Avila participated as a panelist at the 2019 and 2020 Bridgeport Consumer Class Action Litigation & Management Conferences in Orange County, California.

34.     Marc A. Castaneda is an associate at MJFW and part of the firm's consumer class action practice group, and admitted to practice in this Court *pro hac vice*. Mr. Castaneda has been admitted to practice law in California since 2014. Mr. Castaneda graduated from Columbia University with a Bachelor of Arts in 2009 and received his Juris Doctorate from Fordham University School of Law in 2014. Mr. Castaneda has worked on over 25 class actions during his time at MJFW and co-chaired a consumer fraud class action trial in 2018. He was also

appointed Class Counsel in *In re Dollar General Motor Corp. Motor Oil Marketing and Sales Practices Litigation* (MDL 2709, 2019).

35.     I, along with Ms. Avila, Mr. Castaneda, and co-counsel Joel Oster, had sufficient information to make an informed decision about the merits of this case as compared to the benefit provided by the proposed settlement. Indeed, we possessed all information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the settlement at arms' length and with the assistance of a neutral mediator. Based on our extensive experience, our investigation, and the information provided to us, we believe this Settlement constitutes an excellent recovery for Settlement Class Members, and is within the reasonable range of probable recoveries.

36.     In considering whether to enter into the Settlement, I, along with Ms. Avila, Mr. Castaneda, and Mr. Oster, weighed the risks inherent in establishing all the elements of all of the plaintiffs' claims at trial and on appeal. We also considered the expense of retaining additional experts, giving class notice if they were successful in certifying a class, and a trial (and likely duration of post-trial motions and appeals). We, on Plaintiff's behalf, agreed to settle this litigation on these terms based on our careful investigation and evaluation of the facts and law relating to Plaintiff's allegations and Monsanto's defenses.

37.     Class Counsel intend to request attorneys' fees of no more than 25% of the $45 million "Ceiling Amount."  The Settlement Agreement recognizes that it will resolve 18 other matters that were pursued by Class Counsel and Plaintiff's Counsel (the "Related Actions"), and the role the prosecution of those matters played in reaching the Settlement.

38.     Thus, Class Counsel intend to seek, and the Settlement Agreement specifically permits, Class Counsel to include the costs and attorney's fees incurred in the Related Actions.

39.     The Settlement Agreement expressly provides that it is valid and binding regardless of whether Class Counsel's request for fees is approved or reduced.  This was a term Monsanto insisted upon and that Class Counsel agreed was appropriate.

40.     To date, Class Counsel and Plaintiff's Counsel's Lodestar is  $7,694,358.75.  This is based on the time expended in Gilmore and the Related Cases as follows:

| Firm | Case Name | Hourly Rate Range | Total Hours | Total Lodestar |
|---|---|---|---|---|
| Milstein Jackson Fairchild & Wade, LLP | *Ezcurra v. Monsanto*, No. 9:20-cv-80524 (S.D. Fla.) | $195-$795 | 2,385.00 | $1,459,125.00 |
| Milstein Jackson Fairchild & Wade, LLP | *Gilmore  v. Monsanto*, No. 3:21-cv-08159 (N.D. Cal.) | $195-$795 | 3,068.25 | $1,877,313.75 |
| Milstein Jackson Fairchild & Wade, LLP | *Weeks v. Home Depot*, No. 2:19-cv-6780 (C.D. Cal.) | $195-$795 | 2,270.00 | $1,341,175.00 |
| Milstein Jackson Fairchild & Wade, LLP | *Jewell et al v. Walmart, Inc.*, No. 4:19-cv-04088 (W.D. Ark.) | $195-$795 | 88.00 | $46,070.00 |
| Milstein Jackson Fairchild & Wade, LLP | *Boyette et al v. Lowe's Companies, Inc.*, No. 4:19-cv-04119 (W.D. Ark.) | $195-$795 | 56.50 | $27,480.00 |
| Milstein Jackson Fairchild & Wade, LLP | *Taylor et al v. Costco Wholesale Corp.*, No. 20-cv-00655 (E.D. Cal.) | $195-$795 | 1,015.00 | $616,150.00 |
| Milstein Jackson Fairchild & Wade, LLP | *Hanna et al v. Walmart Inc.*, No. 5:20-cv-01075 (C.D. Cal.) | $195-$795 | 1,360.00 | $833,100.00 |
| Milstein Jackson Fairchild & Wade, LLP | *Williams et al v. Lowe's Home Centers, LLC*, No. 5:20-cv-01356 (C.D. Cal.) | $195-$795 | 810.00 | $496,125.00 |
| Milstein Jackson Fairchild & Wade, LLP | *Thomas v. Costco Wholesale Corporation*, No. 1:19-cv-05278 (E.D. New York) | $195-$795 | 249.50 | $159,200.00 |
| Rhodunda Williams & Kondraschow | *Gilmore  v. Monsanto*, No. 3:21-cv-08159 (N.D. Cal.) | $400 | 31.5 | $12,600.00 |
| The Casey Law Firm,  LLC | *Gilmore  v. Monsanto*, No. 3:21-cv-08159 (N.D. Cal.) | $700 | 260 | $182,000.00 |
| Sheehan & Associates, P.C. | *Thomas v. Costco Wholesale Corporation*, No. 1:19-cv-05278 (E.D. New York) | $350 | 86 | $30,100.00 |

| | | | | |
|---|---|---|---|---|
| Sheehan & Associates, P.C. | *Hanna et al v. Walmart Inc.*, No. 5:20-cv-01075 (C.D. Cal.) | $350 | 5 | $1,750.00 |
| Sheehan & Associates, P.C. | *Taylor et al v. Costco Wholesale Corp.*, No. 20-cv-00655 (E.D. Cal.) | $350 | 5 | $1,750.00 |
| Sheehan & Associates, P.C. | *Williams et al v. Lowe's Home Centers, LLC*, No. 5:20-cv-01356 (C.D. Cal.) | $350 | 4 | $1,400.00 |
| Law Offices of Howard Rubinstein, P.A. | *Ezcurra v. Monsanto*, No. 9:20-cv-80524 (S.D. Fla.) | $690 | 210 | $144,900.00 |
| Law Offices of Howard Rubinstein, P.A. | *Gilmore  v. Monsanto*, No. 3:21-cv-08159 (N.D. Cal.) | $690 | 126 | $86,940.00 |
| Law Offices of Howard Rubinstein, P.A. | *Weeks v. Home Depot*, No. 2:19-cv-6780 (C.D. Cal.) | $690 | 84 | $57,960.00 |
| Southern Atlantic Law Group, PLLC | *Ezcurra v. Monsanto*, No. 9:20-cv-80524 (S.D. Fla.) | $125-$400 | 390.2 | $136,830.00 |
| Southern Atlantic Law Group, PLLC | *Lamerson v. Walmart Stores, Inc.*, No. 50-2019-CC-009139 (Cty. Ct. 15th Cir. In and for Palm Beach Cty., Fla.) | $125-$400 | 31.2 | $10,280.00 |
| Southern Atlantic Law Group, PLLC | *Shelly v. Target Corp.*, No. 50-2019-CC-010718 (Cty. Ct. 15th Cir. In and for Palm Beach Cty., Fla.) | $125-$400 | 35.9 | $12,435.00 |
| Southern Atlantic Law Group, PLLC | *Biddle v. Lowe's Home Centers LLC*, No. 50-2019-CC-011405 (Cty. Ct. 15th Cir. In and for Palm Beach Cty., Fla.) | $125-$400 | 45.8 | $16,395.00 |
| Southern Atlantic Law Group, PLLC | *Morley v. Ace Hardware Corp.*, No. CONO-19-010648 (Cty. Ct. 17th Cir. In and for Broward Cty., Fla.) | $125-$400 | 37.2 | $12,405.00 |
| Southern Atlantic Law Group, PLLC | *Fagundes v. The Home Depot*, No. 0:20-cv-61035 (S.D. Fla.) | $125-$400 | 48.3 | $17,670.00 |
| Southern Atlantic Law Group, PLLC | *Waters v. Home Depot USA, Inc.*, No. 50-2019-CC-009140 (Cty. Ct. 15th Cir. In and for Palm Beach Cty., Fla.) | $125-$400 | 36.8 | $13,345.00 |
| Southern Atlantic Law Group, PLLC | *Gregorio et al v. Home Depot U.S.A., Inc.*, No. CACE-21-002428 (Cty. Ct. 17th Cir. In and for Broward Cty., Fla.) | $125-$400 | 19.4 | $6,110.00 |
| Harrelson Law Firm | *Jewell et al v. Walmart, Inc.*, No. 4:19-cv-04088 (W.D. Ark.) | $500 | 111 | $55,500.00 |

| Harrelson Law Firm | *Boyette et al v. Lowe's Companies, Inc.*, No. 4:19-cv-04119 (W.D. Ark.) | $500 | 76.5 | $38,250.00 |
|---|---|---|---|---|

41.     Twenty-five percent of the Ceiling Amount is $11.25 million, which is a multiplier of 1.46.  Given the structure of the Settlement, however, Class Counsel has not determined whether, or to what extent, they will seek a multiplier.

42.     Class Counsel and Plaintiff's Counsel's total costs incurred in Gilmore and the Related Actions are $207,618.41. A summary of the costs incurred per case, with any expert fees specified, is as follows:

| CASE NAME | COSTS | EXPERT FEES (if any) |
|---|---|---|
| *Weeks v. Home Depot* | $12,515.82 | $10,296.50 |
| *Jewell et al v. Walmart, Inc.* | $789.96 | |
| *Boyette et al v. Lowe's Companies, Inc.* | $845.00 | |
| *Thomas v. Costco Wholesale Corporation* | $850.00 | |
| *Ezcurra v. Monsanto* | $126,785.46 | $126,515.00 |
| *Taylor et al v. Costco Wholesale Corp.* | $488.13 | |
| *Hanna et al v. Walmart Inc.* | $1,506.64 | |
| *Williams et al v. Lowe's Home Centers, LLC* | $400.00 | |
| *Gilmore  v. Monsanto* | $59,913.40 | $51,750.00 |
| *Biddle v. Lowe's Home Centers LLC* | $310.00 | |
| *Ezcurra v. Monsanto* (Florida State Case) | $431.00 | |
| *Fagundes v. The Home Depot* | $411.00 | |
| *Gregorio et al v. Home Depot U.S.A., Inc.* | $822.00 | |
| *Lamerson v. Walmart Stores, Inc.* | $310.00 | |
| *Morley v. Ace Hardware Corp.* | $620.00 | |
| *Shelly v. Target Corp.* | $310.00 | |
| *Waters v. Home Depot* | $310.00 | |
| **TOTAL** | $207,618.41 | $188,561.50 |

43.     The majority of the costs incurred are expert fees in the total amount of $188,561.50.

44.     There are no "side-agreements" made in connection with the Settlement.

45.    Class Counsel considered the ways to increase notice listed in this Court's Procedural Guidance and they were incorporated into the notice program to the extent practicable.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.  Executed on February 16, 2022 in Los Angeles, California.

_____
Gillian L. Wade

# EXHIBIT 1

## SECOND AMENDED CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement and Release (the "Agreement" or "Settlement"), effective upon the date of the signatories below, is made by and between Monsanto Company and Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kristy Williams, on behalf of themselves and the Settlement Class (defined below) (collectively, the "Parties"), in the matter *Gilmore et al. v. Monsanto Company*, Case No. 1:20-cv-01085-MN (N.D. Cal.) ("the Action").

**WHEREAS**, Class Counsel commenced numerous Related Actions against Monsanto and certain retailers regarding alleged false advertising and consumer fraud in connection with Monsanto's Roundup® Products beginning in July 2019;

**WHEREAS**, Class Representative Scott Gilmore commenced the Action for violation of Delaware Consumer Fraud Act against Monsanto in the United States District Court for the District of Delaware on August 19, 2020;

**WHEREAS**, the Judicial Panel on Multidistrict Litigation subsequently transferred the Action to United Stated District Court for the Northern District of California on October 19, 2021;

**WHEREAS**, the Parties disagree on the merits and viability of the Claims alleged in the Action, Monsanto denies any and all liability or wrongdoing, and Plaintiffs believe that all Claims are viable;

**WHEREAS**, the Parties have engaged in both informal and formal discovery in various actions but have not yet briefed class certification;

**WHEREAS**, the Parties engaged in a mediation session before retired United States Magistrate Judge Diane Welsh to determine whether a settlement of the Action could be reached and, at the end of the more than 14-hour mediation session, the Parties reached an agreement in principle;

**WHEREAS**, Plaintiffs have concluded that it is in the best interest of the Class to settle the Action on the terms set forth in this Agreement in order to avoid further expense, inconvenience, and delay, and on the basis of other factors bearing on the merits of settlement;

**WHEREAS**, Monsanto enters into this Agreement in order to avoid further expense, inconvenience, delay, and interference with business operations, and to dispose of the Action and to put to rest all controversy concerning the Claims that have been or could have been asserted;

**WHEREAS**, the Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of disputed Claims. This Agreement, and all related documents, shall not be construed as any admission or concession by Monsanto or by any Party of any fault, liability, wrongdoing, or damage whatsoever. Preliminary certification of the Settlement Class shall not be deemed a concession that certification of a litigation class is appropriate, nor would Monsanto be precluded from challenging class certification in further

proceedings in the Action or in any other action if the Settlement Agreement is not finalized or finally approved.  This Agreement is inadmissible as evidence against any Party except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any Party to this Agreement.  It is the Parties' desire and intention to effect a full, complete, and final settlement and resolution of all existing disputes and Claims as set forth in the Action.

**WHEREAS**, the Settlement Class (as defined below) and Monsanto wish to resolve, on a nationwide basis, any and all past, present, and future Class Released Claims the Settlement Class has or may have against the Released Persons related to the allegations in the Action, and to that end, the Settlement Class and Monsanto intend that the United States District Court for the Northern District of California conditionally certify the Settlement Class for settlement, and that this Agreement will encompass and end all related pending, threatened, or possible litigation and/or Class Released Claims by any Class Member against the Released Persons;

**NOW, THEREFORE**, the Parties, for good and valuable consideration, the sufficiency of which is hereby acknowledged, understand and agree to the following terms and conditions:

## A.  Definitions

As used in this Agreement, the following terms enclosed within quotation marks have the meanings specified below:

1.      "Action" means the matter *Gilmore et al. v. Monsanto Company*, Case No. 1:20-cv-01085-MN (N.D. Cal.).

2.      "Affiliate" means, with respect to any Person, any other Person that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, where "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies, whether through the ownership of voting shares, by contract, or otherwise.

3.      "Agreement" means this Settlement Agreement and Release.

4.      "Second Amended Complaint" means the Second Amended Complaint in the Action.

5.      "Approved Claim" means a claim approved by the Claims Administrator, according to the terms of this Agreement.

6.      "Authorized Claimant" means any Claimant who has timely and completely submitted a Claim Form that has been reviewed and validated by the Claims Administrator.

7.      "Boyette" means the plaintiff in the Related Action *Boyette v. Lowe's Companies, Inc.* and one of the named plaintiffs in the Second Amended Complaint, Amanda Boyette.

8.      "Claims" means past, present, and future claims, counterclaims, actions, rights, remedies, causes of action, liabilities, suits, demands, damages, losses, payments, judgments, verdicts, debts, dues, sums of money, liens, costs and expenses (including, without limitation,

attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, including any of the foregoing for equitable or injunctive relief, direct damages, indirect damages, consequential damages, incidental damages, punitive or exemplary damages, statutory and other multiple damages or penalties of any kind, or any other form of damages or relief whatsoever, and whether based upon breach of contract, warranty or covenant, tort, negligence, strict liability, gross negligence, recklessness, willful or wanton conduct, malice, oppression, conscious disregard, joint and several liability, guarantee, contribution, reimbursement, subrogation, indemnity, defect, failure to warn, fault, misrepresentation, common-law fraud, statutory consumer fraud, quantum meruit, breach of fiduciary duty, violation of statutes or administrative regulations, and/or any other legal (including common-law), foreign, statutory, equitable, or other theory or right of action, whether in law or in equity, fixed, contingent or noncontingent, known or unknown, discovered or undiscovered, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, ripened or unripened, perfected or unperfected, choate or inchoate, developed or undeveloped, liquidated or unliquidated, now recognized by law or that may be created or recognized in the future by statute, regulation, or judicial decision or in any other manner, and whether direct, representative, derivative, class, or individual in nature, in any forum that any Person had, has, or may have in the future.

9.      "Claim for Relief" means a request for relief submitted by or on behalf of a Class Member on a Claim Form filed with the Claims Administrator in accordance with the terms of this Agreement.

10.      "Claimant" means any Class Member who submits a Claim for benefits as described in Section I of this Agreement.

11.      "Claim Form" means the document to be submitted by Claimants seeking benefits pursuant to this Agreement.

12.      "Claims Administrator" means the company approved by the Court to provide the Class Notice and to administer the claims process.  The parties anticipate that Postlethwaite & Netterville, APAC will be the Claims Administrator.

13.      "Claims Administration Expenses" means the fees charged and expenses incurred by the Claims Administrator in completing the Class Notice and claims administration process set forth in this Agreement.

14.      "Claims Deadline" means the date by which all Claim Forms must be postmarked or received by the Claims Administrator to be considered timely.  The Claims Deadline shall end one hundred twenty (120) days after the Preliminary Approval Date.

15.      "Class Member(s)" means all Persons that are members of the Settlement Class.

16.      "Class Counsel" means the following attorneys of record in the Action: Gillian L. Wade, Sara D. Avila, and Marc A. Castaneda of Milstein, Jackson, Fairchild & Wade, LLP, and Joel Oster, of Counsel to the Law Offices of Howard Rubinstein, and any additional attorneys at those firms assisting in the representation of the Class in this Action.

17.     "Class Counsel's Expenses" means the amount awarded by the Court for any costs or expenses, other than the Class Counsel's Fees, incurred by Class Counsel, Plaintiffs' Counsel, or Class Representatives for prosecution of the Action and Related Actions.

18.     "Class Counsel's Fees" means the amount awarded as attorneys' fees to Class Counsel by the Court for Class Counsel's and Plaintiffs' Counsel's prosecution of the Action and Related Actions.

19.     "Class Notice" means, collectively, the "Notice of Class Action Settlement" and the "Publication Notice," substantially in the forms to be agreed upon by the Parties and that will be submitted to the Court in connection with the Motion for Preliminary Approval of Settlement.

20.     "Class Period" shall mean and refer to a time period based upon the state or territory where each Class Member made his or her purchases of the Products.  A list of the applicable periods for each state, district, or territory included in this Agreement is appended hereto as Exhibit B.

21.     "Class Released Claims" means the Claims released by the Class Members via this Agreement.

22.     "Class Representatives" means the named plaintiffs in the Action—Gilmore, Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, and Williams—and any other individuals who may be added as plaintiffs to any amended pleading.

23.     "Court" means the United States District Court for the Northern District of California.

24.     "Default Payment Amounts" has the meaning set forth in Paragraph F.1.

25.     "Effective Date" means the date on which the judgment approving this Agreement becomes final.  For purposes of this definition, the Final Settlement Approval Order and Judgment shall become final at the latest date of the following dates: (i) if no appeal from the Final Settlement Approval Order and Judgment is filed, the date of expiration of the time for filing or noticing any appeal from the Final Settlement Approval Order and Judgment; or (ii) if an appeal from the Final Settlement Approval Order and Judgment is filed, and the Final Settlement Approval Order and Judgment is affirmed or the appeal dismissed (including, if necessary, after the resolution of any petition for rehearing or rehearing *en banc* and, if applicable, the conclusion of any rehearing proceedings), the date that the deadline to file a petition for certiorari has passed; or (iii) if a petition for certiorari seeking review of the appellate judgment is filed and denied, the date the petition is denied; or (iv) if a petition for writ of certiorari is filed and granted, the date of final affirmance or final dismissal of the review proceeding initiated by the petition for a writ of certiorari.

26.     "Ezcurra" means the plaintiff in the Related Action, *Ezcurra v. Monsanto Co.* and one of the named plaintiffs in the Second Amended Complaint, Julio Ezcurra.

27.     "Final Settlement Hearing" or "Final Approval Hearing" means the hearing to be conducted by the Court to determine whether to enter the Final Settlement Approval Order and Judgment.

Second Amended Settlement Agreement in *Gilmore, et al. v. Monsanto*

28.     "Final Settlement Approval Order and Judgment" or "Judgment" means the Court's final order approving the Agreement; entering judgment; dismissing the Action with prejudice; and discharging the Released Persons of and from all further liability for the Class Released Claims.

29.     "Gilmore" means the plaintiff in the Action, Scott Gilmore.

30.     "Hanna" means the plaintiff in the Related Action *Hanna v. Walmart* and one of the named plaintiffs in the Second Amended Complaint, Sherry Hanna.

31.     "Jewell" means the plaintiff in the Related Action *Jewell v. Walmart, Inc.* and one of the named plaintiffs in the Second Amended Complaint, Anthony Jewell.

32.     "Medical Monitoring Claims" shall mean Claims that seek to require, or recover damages amounting to the costs of, medical monitoring or screening for potential physical injury or illness of a natural person.  It is expressly contemplated that a cause of action could include both Claims that are Medical Monitoring Claims and Claims that are not Medical Monitoring Claims.

33.     "Monsanto" means Monsanto Company and Bayer AG and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

34.     "Notice Period" means the notice period to potential Class Members.  Class Notice shall run for a period of one hundred (100) days and shall commence within fourteen (14) days after the Preliminary Approval Date.

35.     "Notice Plan" means the plan for dissemination of the Class Notice to be designed by the Claims Administrator and agreed upon by the Parties and that will be submitted to the Court in connection with the Motion for Preliminary Approval of Settlement.

36.     "Objection Deadline" means the first business day on or after seven (7) calendar days from the filing of the Motion for Final Approval of the Settlement and Application for Fees, or such other date as the Court may order in its Preliminary Approval Order.  It is the date by which the Class Members must file with the Court (i) a written statement objecting to any terms of the Settlement or to Class Counsel's Fees and (ii) a written notice of intention to appear if they expect to present in person at the Final Approval Hearing objections to any terms of the Settlement or to Class Counsel's Fees.

37.     "Opt-Out Deadline" means one hundred twenty (120) days after the Preliminary Approval Date (to be concurrent with the Claims Deadline), or such other date as the Court may order in its Preliminary Approval Order.

38.     "Other Counsel" means any other attorney or attorneys, representing any Class Member, who are not Class Counsel or Plaintiffs' Counsel.

39.     "Party" or "Parties" means Plaintiffs, to include the Class Members, and Monsanto.

40.　　"Person" means any individual, corporation, partnership, association, or any other type of legal entity.

41.　　"Personal Injury Claims" shall mean Claims that assert a right to recover damages for the actual physical injury or illness of a natural person or that seek to recover compensatory, punitive, or exemplary damages, or attorney's fees, allegedly resulting or arising from the actual physical injury or illness of a natural person, including, for example, claims for mental or physical pain or suffering; emotional or mental harm; loss of enjoyment of life; loss of wages, income, earnings, or earning capacity; medical expenses; doctor, hospital, nursing, or drug bills; loss of support, services, consortium, companionship, society, or affection; damage to familial relations; and wrongful death and survival actions.  It is expressly contemplated that a cause of action could include both Claims that are Personal Injury Claims and Claims that are not Personal Injury Claims.

42.　　"Plaintiffs" means Gilmore, Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, Williams, and the other Class Members.

43.　　"Plaintiffs' Counsel" means the following additional counsel for Plaintiffs: (1) Rhodunda Williams & Kondraschow, LLC; (2) The Law Offices of Howard Rubinstein; (3) Southern Atlantic Law Group, PLLC; (4) The Casey Law Firm, LLC; (5) Sheehan & Associates, P.C.; and (6) Harrelson Law Firm, P.A.

44.　　"Preliminary Approval Date" means the date of entry of the Court's order granting preliminary approval of the Agreement substantially in the form of the Preliminary Approval Order that will be submitted in connection with the Motion for Preliminary Approval of Settlement.

45.　　"Products" means and includes the list of Products appended hereto as Exhibit A.

46.　　"Related Actions" include the following actions:

a.　*Gilmore v. Monsanto Co. et al.*, No. 3:19-cv-1123 (D. Or.)

b.　*Waters v. Home Depot U.S.A., Inc.*, No. 50-2019-CC-009140 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.)

c.　*Lamerson v. Walmart Stores, Inc.*, No. 50-2019-CC-009139 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.)

d.　*Weeks v. Home Depot U.S.A., Inc.*, No. 2:19-cv-6780 (C.D. Cal.)

e.　*Weeks v. Lowe's Home Centers, LLC*, No. 2:19-cv-6828 (C.D. Cal.)

f.　*Jewell v. Walmart Inc.*, No. 4:19-cv-4088 (W.D. Ark.)

g.　*Shelly v. Target Corp.*, No. 50-2019-CC-010718 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.)

    h.   *Biddle v. Lowe's Home Centers, LLC*, No. 50-2019-CC-011405 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.)

    i.   *Morley v. Ace Hardware Corp.*, No. CONO-19-01064 (Cnty. Ct. 2d Cir. in and for Broward Cnty., Fla.)

    j.   *Boyette v. Lowe's Companies, Inc.*, No. 4:19-cv-04119 (W.D. Ark.)

    k.   *Thomas v. Costco Wholesale Corp.*, No. 1:19-cv-05278 (E.D.N.Y.)

    l.   *Ezcurra v. Monsanto Co.*, No. 9:20-cv-80524 (S.D. Fla.)

    m.   *Fagundes v. The Home Depot*, No. 0:20-cv-61035 (S.D. Fla.)

    n.   *Taylor v. Costco Wholesale Corp.*, No. 20-cv-00655 (E.D. Cal.)

    o.   *Hanna v. Walmart Inc.*, No. 5:20-cv-01075 (C.D. Cal.)

    p.   *Williams v. Lowe's Home Centers, LLC*, No. 5:20-cv-01356 (C.D. Cal.)

    q.   *Hanna v. Walmart Inc.*, No. CIV SB 2100789 (Cal. Sup. Ct.)

    r.   *Gregorio v. Home Depot U.S.A., Inc.*, No CACE-21-002428 (2d Cir. in and for Broward Cnty., Fla.)

The term "Related Actions" is meant only as a shorthand to refer to these cases in the course of this Agreement and is not intended, and shall not be construed, to limit in any way the scope of the releases provided by the Agreement or the effect of this Agreement in actions other than the Related Actions. It is expressly contemplated that certain actions not included within the definition of Related Actions contain Claims that shall be released by virtue of this Agreement.

    47.   "Related Parties" means the past, present, and future manufacturers, formulators, distributors, marketing agents, commissionaires, resellers, Retailers, clinical researchers, agents, licensees, contractors, joint ventures, joint venturers, and consultants of or with respect to the Products, and any and all past, present, or future suppliers of materials, components, and services used in the development, registration, formulation, manufacture, distribution, handling, sale, or marketing of the Products, including the labeling and packaging thereof, and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, divisions, joint ventures, and joint venturers; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

    48.   "Released Persons" means, respectively, Monsanto; Scotts; any distributors and/or Retailers of the Products; Related Parties; any Persons that are currently, may in the future be, or have in the past been, marketing, advertising, distributing, selling, or reselling the Products and any past, current, or future parent companies (including intermediate parents and ultimate parents) and subsidiaries, Affiliates, predecessors, successors, and assigns, and each of their respective past, present, or future officers, directors, employees, agents, members, franchisees, franchisors,

attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors, and assigns; and any other Person acting on behalf of Monsanto, Scotts, or any other Released Person.

49.     "Releasing Persons" means Gilmore, Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, Williams, and each Class Member and any Person claiming by or through each Class Member, or on their behalf, including, but not limited to, spouses, children, wards, heirs, devisees, legatees, invitees, employees, associates, co-owners, attorneys, agents, administrators, predecessors, successors, assignees, representatives of any kind, shareholders, partners, directors, or Affiliates.

50.     "Retailers" means any person or entity that has offered, is presently offering, or may in the future offer the Products for sale or resale (including, without limitation, wholesale distributors, private-label distributors, and all retailers and retail distributors), and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above. "Retailers" shall include, but is in no way limited by, Ace Hardware Corporation; Costco Wholesale Corporation; Home Depot U.S.A., Inc.; The Home Depot, Inc.; Lowe's Companies, Inc.; Lowe's Home Centers, LLC; Target Corporation; Walmart Inc.; and Wal-Mart Stores, Inc., and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

51.     "Scotts" means The Scotts Company LLC, Monsanto's exclusive marketing and distribution agent for Roundup® consumer products, and each and all of its respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

52.     "Settlement Class" means all Persons in the United States who, during the Class Period, purchased Products (as defined above) in the United States other than for resale or distribution. Excluded from the Settlement Class are (i) judicial officers and associated court staff assigned to this case, and their immediate family members; (ii) past and present (as of the Effective Date) officers, directors, and employees of Monsanto; (iii) all those otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class pursuant to this Agreement and in the manner approved by the Court and set forth in the Class Notice.

53.     "Settlement Website" means a website maintained by the Claims Administrator to provide the Settlement Class with information relating to the Settlement.

54.     "Taylor" means the named plaintiff in the Related Action *Taylor v. Costco Wholesale Corp.* and one of the named Plaintiffs in the Second Amended Complaint, Paul Taylor.

55.     "United States" means the fifty states of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands of the United

States, the Commonwealth of the Northern Mariana Islands, any other territory or possession of the United States, and any United States military or diplomatic establishment wherever located.

56.     "Weeks" means the named plaintiff in the Related Action *Weeks v. Home Depot U.S.A., Inc.* and one of the named Plaintiffs in the Second Amended Complaint, James Weeks.

57.     "Williams" means the named plaintiff in the Related Action *Williams v. Lowe's Home Centers, LLC* and one of the named Plaintiffs in the Second Amended Complaint, Kristy Williams.

## B. Conditional Class Certification for Settlement Purposes Only

1.     For settlement purposes only, Plaintiffs agree to ask the Court to certify the Settlement Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2.     This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in, this Agreement, nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as an admission of (1) the validity of any Claim or allegation by Plaintiffs, or of any defense asserted by Monsanto, in this Action or any other actions or proceedings; (2) any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, Released Party, Class Member, or their respective counsel; or (3) the propriety of class certification in the Action, Related Actions, or any other action or proceeding.

3.     For the sole and limited purpose of settlement only, the Parties stipulate to and request that the Court conditionally certify the Settlement Class under Rule 23(b)(3), which stipulation is contingent upon the occurrence of the Effective Date.  Should the Effective Date not occur, this Agreement shall be void and will not constitute, be construed as, or be admissible in evidence as an admission of any kind or be used for any purpose in the Action or Related Actions or in any other pending or future action.  In the event that the Agreement is terminated pursuant to its terms or the Final Settlement Hearing does not occur for any reason, the certification of the Settlement Class shall be vacated, and the Action shall proceed as it existed prior to execution of this Agreement.

4.     The Court's certification of the Settlement Class shall not be deemed an adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Agreement and shall not be considered the law of the case, res judicata, or collateral estoppel in the Action, Related Actions, or any other proceeding unless and until the Court enters a Judgment.  Regardless of whether the Effective Date occurs, the Parties' agreement to class certification for settlement purposes only (and any statements or submissions made by the Parties in connection with seeking the Court's approval of this Agreement) shall not be deemed to be a stipulation as to the propriety of class certification, or any admission of fact or law regarding any request for class certification, in any other action or proceeding, whether or not involving the same or similar Claims.

5.     In the event that the Court does not enter a Judgment, or the Effective Date does not occur, or the Agreement is otherwise terminated or rendered null and void, the Parties' agreement to certification of the Settlement Class for settlement purposes shall be null and void

and the Court's certification order (if any is ordered) shall be vacated, and thereafter no new class or classes will remain certified.

6. Nothing in this Agreement shall be argued as support for, or admissible in, an effort to certify any new class in this Court or any other court if the Court does not enter a Judgment, or the Effective Date does not occur, nor shall anything herein be admissible in any proceeding to certify this or any other classes in any other court under any circumstances.

7. Subject to the Court's approval, and for settlement purposes only, Monsanto consents to the appointment of Gilmore, Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, and Williams as Class Representatives of the Settlement Class, and the appointment of Class Counsel as counsel for the Settlement Class.

8. Promptly following the filing of a motion for preliminary approval of this Agreement, Class Counsel shall make all reasonable and lawful efforts to ensure that plaintiffs in any pending Related Action or any other pending case with allegations and Claims similar to those in the Action consent to this Agreement and agree to stay or dismiss any such actions pending final approval of this Agreement. If for any reason, after Class Counsel's reasonable efforts, such other plaintiffs will not consent to this Agreement and agree to stay or dismiss any such actions, or in the event that the court before which any such action is pending will not agree to a stipulated stay or dismissal, then Class Counsel shall reasonably cooperate with Monsanto in any effort to seek a stay of such actions so that notice, administration, and approval of this Agreement may proceed in an organized and efficient manner.

9. Upon final approval of the Agreement by the Court, a Judgment substantially in the form agreed by the Parties, and conforming with the definition of Final Settlement Approval Order and Judgment above, will be entered by the Court.

## C. Benefits of the Agreement

Class Counsel and the Class Representatives believe the Agreement confers substantial benefits upon the Settlement Class, particularly as weighed against the risk associated with the inherently uncertain nature of a litigated outcome; the complex nature of the Action; and the expense of continued proceedings through the completion of fact and expert discovery, class certification briefing, summary-judgment briefing, trial, and appeals. On the basis of their evaluation of such factors, Class Counsel and Class Representatives have determined that settlement, based on the terms in this Agreement, is in the best interests of the Settlement Class.

## D. Settlement Consideration

1. The total cash consideration to be paid by Monsanto pursuant to this Agreement shall be an amount not less than **$23 million** (the "Floor Amount") and not greater than **$45 million** (the "Ceiling Amount"), which shall include all amounts that Monsanto has paid or is to pay under or in connection with this Agreement, including, but not limited to, all costs of Class Notice, Claims Administration Expenses, Class Member Claims, Class Representative service awards, Class Counsel's Expenses, and Class Counsel's Fees.

2.      Prior to the Effective Date, Monsanto's only monetary obligation shall be to pay those amounts necessary to cover the costs of Class Notice and Claims Administration Expenses. Monsanto shall pay such amounts promptly and as necessary to cover such costs.

3.      In no event shall Monsanto be required to contribute or pay an amount greater than the Ceiling Amount, when taking into account all amounts that Monsanto has paid or is to pay under or in connection with this Agreement, including, but not limited to, payments of or for Class Notice, Claims Administration Expenses, Class Member Claims, Class Representative service awards, Class Counsel's Expenses, and Class Counsel's Fees.

4.      The payment obligations set forth in this Agreement will not be subject to any interest obligation or inflation adjustment.

### E. Class Member Claims

1.      If the Ceiling Amount is sufficient to allow such payments (and subject to the further limitations and requirements set forth below) after payment of all other amounts Monsanto has paid or is to pay under or in connection with this Agreement, then for each unit of the Products purchased by an Authorized Claimant during the Class Period, that Authorized Claimant shall receive a standardized payment of the below amounts (the "Default Payment Amounts") for each Product purchased:

| Product | Default Payment Amounts Per Unit |
|---|---|
| 16 oz. Roundup® Weed and Grass Killer Sure Shot Foam | $1.00 |
| 22 oz. Roundup® Weed and Grass Killer Sure Shot Foam | $1.00 |
| 24 oz. Roundup® Ready-to-Use Weed and Grass Killer | $1.00 |
| 30 oz. Roundup® Ready-to-Use Weed and Grass Killer | $1.00 |
| 24 oz. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $1.50 |

| | |
|---|---|
| 24 oz. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $2.00 |
| 1 gal. Roundup® Ready-to-Use Weed and Grass Killer (all applicator types) | $2.00 |
| 0.5 gal. (64 oz.) Roundup® Ready-to-Use Weed and Grass Killer | $2.50 |
| 0.5 gal. (64 oz.) Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $2.50 |
| 1.25 gal. Roundup® Ready-to-Use Weed and Grass Killer (all applicator types) | $2.50 |
| 5 oz. Roundup® Precision Gel Weed and Grass Killer | $3.00 |
| 1 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $3.00 |
| 1 gal. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $3.00 |

Second Amended Settlement Agreement in *Gilmore, et al. v. Monsanto*

| | |
|---|---|
| 16 oz. Roundup® Weed & Grass Killer Concentrate Plus | $3.50 |
| 1.33 gal. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $3.50 |
| 1.1 gal. Roundup® Ready-to-Use Weed & Grass Killer (all applicator types) | $4.00 |
| 32 oz. Roundup® Weed and Grass Killer Concentrate Plus | $4.00 |
| 35.2 oz. Roundup® Weed and Grass Killer Concentrate Plus | $4.00 |
| 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer (all applicator types) | $4.00 |
| 1.33 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $5.00 |
| 1.25 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $5.00 |

| | |
|---|---|
| 16 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer | $5.50 |
| 3-pack – 6 oz. Roundup® Weed & Grass Killer Concentrate Plus | $5.50 |
| 32 oz. Roundup® Concentrate Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $5.50 |
| 1.25 gal. Roundup® Ready-to-Use Max Control 365 (all applicator types) | $6.00 |
| 36.8 oz. Roundup® Weed & Grass Killer Concentrate Plus | $6.00 |
| 40 oz. Roundup® Weed & Grass Killer Concentrate Plus | $6.00 |
| 1.1 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $6.00 |
| 1.33 gal. Roundup® Ready-to-Use Max Control 365 (all applicator types) | $7.00 |

Second Amended Settlement Agreement in *Gilmore, et al. v. Monsanto*

| | |
|---|---|
| Combination Pack – 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer and 2 × 7 oz. Roundup® Weed & Grass Killer Concentrate Plus | $7.50 |
| 0.5 gal. (64 oz.) Roundup® Concentrate Plus Weed & Grass Killer | $7.50 |
| 32 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer | $8.00 |
| 32 oz. Roundup® Concentrate Max Control 365 | $8.50 |
| Combination pack – 1.33 gal. Roundup® Ready-to-Use Max Control 365 and 8 oz. Roundup® Concentrate Max Control 365. | $9.00 |
| 80 oz. Roundup® Weed & Grass Killer Concentrate Plus | $9.50 |
| Combination Pack – 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer and 8 oz. Roundup® Weed & Grass Killer Super Concentrate | $9.50 |
| Combination pack – 1.33 gal. Roundup® Extended Control Weed & Grass Killer Plus Weed Preventer and 16 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer | $10.50 |

| | |
|---|---|
| 35.2 oz. Roundup® Weed & Grass Killer Super Concentrate | $11.50 |
| 2-pack – 80 oz. Roundup® Weed & Grass Killer Concentrate Plus | $12.50 |
| 0.42 gal. Roundup® Weed & Grass Killer Super Concentrate | $14.00 |
| 0.5 gal. (64 oz.) Roundup® Weed & Grass Killer Super Concentrate | $15.00 |
| 1 gal. Roundup® Weed & Grass Killer Super Concentrate | $21.50 |
| 2.5 gal. Roundup® Pro Concentrate | $33.00 |
| 24 oz. Ace® Ready-to-Use Weed & Grass Killer | $0.50 |
| 1 gal. Ace® Ready-to-Use Weed & Grass Killer | $1.50 |

| | |
|---|---|
| 1 gal. Ace® Ready-to-Use Weed & Grass Killer with battery-operated sprayer | $3.00 |
| 32 oz. Ace® Concentrate Weed & Grass Killer | $3.00 |
| 1 gal. Ace® Concentrate Weed & Grass Killer | $5.50 |
| 32 oz. HDX® Concentrate Weed & Grass Killer | $1.50 |
| 0.5 gal. HDX® Concentrate Weed & Grass Killer | $3.00 |
| 2.5 gal. HDX® Concentrate Weed & Grass Killer | $12.50 |

2.      If, after accounting for payment of all other amounts Monsanto has paid or is to pay under or in connection with this Agreement, the Ceiling Amount is insufficient to allow the payments to Authorized Claimants of the Default Payment Amounts, then the payments to Authorized Claimants shall be adjusted downward on a pro rata basis to the extent necessary to permit the payment of all Claims for Relief by Authorized Claimants without exceeding the Ceiling Amount.

3.      If, after accounting for payment of all other amounts Monsanto has paid or is to pay under or in connection with this Agreement, and considering the Default Payment Amounts that would otherwise be paid to Authorized Claimants, the total amount to be paid by Monsanto under or in connection with this Agreement would be less than the Floor Amount, then the payment to Authorized Claimants shall be adjusted upward on a pro rata basis to the extent necessary to exhaust the Floor Amount.

4.      If, after all Approved Claims are paid, checks sent to Authorized Claimants remain unclaimed, uncashed, or otherwise not redeemed after one hundred eighty (180) days from the date of the checks, then (1) if a reversion to Monsanto of the full amount of the unclaimed, uncashed, or otherwise unredeemed checks would not cause the total amount paid by Monsanto under or in connection with this Agreement to fall below the Floor Amount, then the full amount of those checks shall revert to Monsanto; (2) if a reversion to Monsanto of the full amount of the unclaimed, uncashed, or otherwise unredeemed checks would cause the total amount paid by Monsanto under or in connection with this Agreement to fall below the Floor Amount, then (a) whatsoever amount of unclaimed, uncashed, or otherwise unredeemed checks that can revert to Monsanto without causing the total amount paid by Monsanto under or in connection with this Agreement to fall below the Floor Amount shall revert to Monsanto; (b) as to the remaining amount of unclaimed, uncashed, or otherwise unredeemed checks, (i) if a further pro rata payment to Authorized Claimants (other than those Authorized Claimants who did not cash or redeem their checks) is economically feasible in the judgment of the Claims Administrator, then such further payments shall be made; and (ii) if a further payment as described above is not economically feasible in the judgment of the Claims Administrator, then such amount shall be donated to the National Consumer Law Center.

5.      In the event that a further pro rata distribution to Authorized Claimants (other than those Authorized Claimants who did not cash or redeem their checks) is made pursuant to the above Clause E.4(2)(b)(i), the amount of any checks from that further pro rata distribution that remain unclaimed, uncashed, or otherwise not redeemed after one hundred eighty (180) days from the date of such checks shall be donated to the National Consumer Law Center.

## F.  Attorneys' Fees, Expenses, and Costs

1.      Class Counsel and Class Representatives shall request attorneys' fees and costs, including Class Counsel's Fees, and service awards, to be paid by Monsanto.  Monsanto will not contest a request for Class Counsel's Fees that do not exceed 25% of the Ceiling Amount. Monsanto will not oppose reasonable service awards, in an amount not to exceed $5,000 each, for the Class Representatives.  Notwithstanding the foregoing, the amount of Class Counsel's Fees and service awards to Class Representatives awarded by the Court is within the Court's discretion, and the amount awarded by the Court shall have no impact on the validity of this Agreement.

2.      The Parties recognize that Class Counsel's Fees reflect the novel and complex nature of this matter, as well as the risk assumed by Class Counsel in investing years of labor and resources into gaining relief for the Settlement Class without guarantee of return. The Parties recognize also that litigation pursued in the Related Actions contributed significantly to bringing about the mediation in this matter and this Agreement and is appropriately considered by the Court in assessing the reasonableness of Class Counsel's Fees and Expenses.

3.      Monsanto shall pay to Class Counsel the amount of Class Counsel's Fees and Expenses awarded by the Court within twenty-one (21) calendar days after the Effective Date.

Second Amended Settlement Agreement in *Gilmore, et al. v. Monsanto*

### G. Retention of Claims Administrator

Monsanto shall retain the Claims Administrator to effect Class Notice and administration. The Claims Administrator shall assist with various administrative tasks, including, without limitation:

1. arranging for the dissemination of the Class Notice pursuant to the Notice Plan agreed to by the Parties and approved by the Court;

2. answering written inquiries from Class Members and/or forwarding such inquiries to Class Counsel;

3. receiving and maintaining forms of Class Members who wish to opt out of and be excluded from the Agreement;

4. establishing a Settlement Website;

5. establishing and staffing a toll-free informational telephone number for Class Members;

6. receiving and processing Claims for Relief and distributing payments to Authorized Claimants; and

7. otherwise assisting with administration of the Agreement.

### H. Timing

All Claim Forms must be postmarked or received by the Claims Administrator by the Claims Deadline to be considered timely. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order, in the Class Notice, on the Settlement Website, and on the front of the Claim Form.

### I. Procedure

1. Class Notice will be designed to meet the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and due process. Class Notice shall include print and nationwide digital publication.

2. All Claims for Relief must be submitted with a Claim Form and received by the Claims Administrator.

3. The Claim Form will be available on the Settlement Website. The Claim Form will be available to fill out and submit online, for download, or will be mailed to Class Members upon request by calling or writing to the Claims Administrator. Class Members may submit their completed and signed Claim Forms to the Claims Administrator by mail or online, postmarked or submitted online, and on or before the Claims Deadline.

4. The Claim Form must include either valid proof of purchase or, subject to the limitations set forth below, an affirmation of the identity and quantity of the Products purchased. All Claim Forms must include:

   a. Class Member name, address, email address, and telephone number;

b.   identification of the quantity and type of Product(s) the Class Member purchased;

c.   the Retailer and location (city and state) where the Products were purchased; and

d.   the approximate date(s) or date ranges on or during which the Product or Products were purchased.

5.      The Claims Administrator shall retain sole discretion in accepting or rejecting Claim Forms.

6.      Claims for Relief that are based only on an affirmation (i.e., that do not include valid proof of purchase) shall be limited to a maximum allowance (the "Maximum Allowance") of one (1) Product for each year or partial year (e.g., if the Class Period is five (5) years and three (3) months, this shall be treated as six (6) years for purposes of calculating the Maximum Allowance) of the Class Period (the number of years for each Class Member being determined by the state of that Class Member's purchases as set forth in the definition of Class Period above) with the exception of Claims for Relief for 1 gal. Roundup® Weed and Grass Killer Super Concentrate, 2.5 gal. Roundup® Pro Concentrate, and/or 2.5 gal. HDX® Weed & Grass Killer Concentrate.  Claims for Relief for 1 gal. Roundup® Weed and Grass Killer Super Concentrate, 2.5 gal. Roundup® Pro Concentrate, and/or 2.5 gal. HDX® Weed & Grass Killer Concentrate will require valid proof of purchase.

7.      Claims for Relief based on a valid proof of purchase are not subject to the Maximum Allowance, but for such Claims for Relief, it shall be in the Claims Administrator's discretion to determine whether the proof of purchase provided is genuine and sufficient.  The Claims Administrator may, at its discretion, require a declaration signed under penalty of perjury that provides additional information to confirm that the proof of purchase is genuine and sufficient.  If the Claims Administrator is not satisfied with the proof of purchase provided, it may, in its discretion, deny or reduce the Claim for Relief.

8.      Monsanto shall fund, and the Claims Administrator shall pay out, approved Claims for Relief in accordance with the terms of this Agreement commencing sixty (60) calendar days after the Effective Date or as otherwise ordered by the Court.

9.      Class Members who do not submit a Claim for Relief or opt out (i.e., do nothing) will be subject to this Agreement and all of its terms, including, but not limited to, the releases, and will receive no payment.

### J.   Opt-Out Procedure

1.      Class Members who wish to opt out of and be excluded from the Agreement must download from the Settlement Website, or request from the Claims Administrator, an Opt-Out Form, which form shall be created by the Claims Administrator, and Class Members must complete and mail the form to the Claims Administrator, at the mailing address stated on the Opt-Out Form, postmarked no later than one hundred twenty (120) days after the Preliminary Approval Date (to

be concurrent with the Claims Deadline), or such other date as the Court may order in its Preliminary Approval Order (the "Opt-Out Deadline").

2. The Opt-Out Form must be personally completed and submitted by the Class Member, and multiple-Class-Member "mass" or "class" opt-outs shall not be permitted.

3. The written request to opt out must contain the Class Member's printed name, address, telephone number, and date of birth, and it must contain the dated personal signature of the Class Member seeking to exclude himself or herself from the Agreement.

4. The Claims Administrator shall be responsible for processing opt-outs and objections, if any, including promptly providing Class Counsel and counsel for Monsanto with copies of same.

## K. Procedures for Objecting to the Settlement

Class Members have the right to appear and show cause why the Agreement should not be granted final approval, subject to each of the provisions of this paragraph:

1. *Written Objection Required*. Any objection to the Agreement must be in writing, filed with the Court by the Objection Deadline. The Court may excuse compliance with this requirement upon a showing of good cause by a putative objector.

2. *Form of Written Objection*. Any objection regarding or related to the Agreement shall contain (i) a caption or title that clearly identifies the Action and that the document is an objection, (ii) information sufficient to identify and contact the objecting Class Member and his or her attorney, and (iii) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection. The Court will require only substantial compliance with these requirements for the form of written objections.

3. *Authorization of Objections Filed by Attorneys Representing Objectors*. Class Members may object either on their own or through an attorney hired at their own expense, but a Class Member represented by an attorney must either sign the Objection himself or herself or execute a separate declaration stating that the Class Member authorizes the filing of the Objection.

4. *Effect of Both Opt-Out and Objection*. If a Class Member submits an Opt-Out Form, the Class Member will be deemed to have opted out of the Agreement, and thus to be ineligible to object. However, any objecting Class Member who has not timely submitted a completed Opt-Out Form for exclusion from the Agreement will be bound by the terms of the Agreement upon the Court's final approval of the Agreement.

## L. Release by Class Members

1. Upon the Effective Date, each of the Class Members will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged, and covenanted not to sue, the Released Parties from any and all Claims (with the exception of Personal Injury Claims and Medical Monitoring Claims), whether known or unknown, matured or unmatured, asserted or unasserted, latent or patent, at law or in equity,

existing under federal or state law, regardless of legal theory or relief claimed, that any Class Member has or may in the future have against any Released Party arising out of or related in any way to the same factual predicates as the Action, including:

    a.    any allegedly false, misleading, incomplete, or inaccurate statement, or any alleged omission, regarding the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate (whether or not such statement or alleged omission regarding an ingredient or component thereof is made specifically with regard to the Products, with regard to the ingredient or component thereof separately, or with regard to other products), or any scientific claims or debate regarding the same;

    b.    any alleged breach of contract or breach of warranty arising out of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same; or

    c.    any other alleged economic loss or injury (other than those economic losses or injuries encompassed within the definitions of Personal Injury Claims or Medical Monitoring Claims) allegedly suffered by or inflicted on any Class Member because of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same.

Collectively, the foregoing are "Class Released Claims." For avoidance of doubt, this release does not release any Personal Injury Claims or Medical Monitoring Claims. To the extent that any action or proceeding includes both Personal Injury Claims or Medical Monitoring Claims and Claims that would otherwise be released by this Agreement, the Personal Injury Claims and/or Medical Monitoring Claims will not be deemed released, but the other Claims will be released. By way of example, if a Class Member brought an action asserting that he or she bought and used Roundup® products that failed to warn of an alleged risk of Non-Hodgkin Lymphoma and that this caused them to develop Non-Hodgkin Lymphoma, and sought to recover damages for their physical injury, for lost wages, and for medical bills, neither that Personal Injury Claim nor the related damages (including economic damages such as lost wages or medical bills) would be released by this Settlement. For further avoidance of doubt, this release shall apply to Claims (other than Personal Injury Claims and Medical Monitoring Claims) arising from, resulting from, or in any way relating to or in connection with a Class Member's purchase or use of the Products in the past, present, or future.

        2.    Upon the Effective Date, each of the Class Members shall be deemed to acknowledge and agree that the releases set forth in this Agreement are irrevocable and unconditional, inure to the benefit of Monsanto and all other Released Persons (which are intended third-party beneficiaries), and are intended to be construed as broadly as reasonably possible so that the Released Persons shall never be called upon to pay any further sums or expenses or be

liable, directly or indirectly, to any person seeking contribution and/or indemnity from the Released Persons, or any of them, by reason of any legal actions brought against them pertaining in any way to, or arising from, or connected with the Class Released Claims.

3.     If any part or provision of the releases included in this Agreement is adjudicated to be invalid, illegal, or unenforceable in any jurisdiction, the relevant part or provision shall be deemed modified to the extent necessary to make it enforceable in such jurisdiction and, if it cannot be so modified, the releases shall be deemed amended to delete herefrom the invalid or unenforceable part or provision, and the releases shall be in full force and effect as so modified. Any such modification or amendment shall apply only to the operation of that part or provision in the particular jurisdiction in which such adjudication was made and shall not affect such part or provision in any other jurisdiction.  To the fullest extent permitted by applicable law, the Class Members hereby specifically and expressly waive any provision of law that renders any part or provision of the releases herein invalid, illegal, or unenforceable in any respect.

## M. Release of Plaintiffs

Upon the Effective Date, Monsanto will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, the Class, and Class Counsel from any and all Claims, demands, rights, suits, liabilities, and causes of action of every nature and description whatsoever, whether known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that Monsanto has or may have against any of them arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Action and, in connection with the filing and conduct of the Action, that have been brought, could have been brought, or are currently pending in any forum in the United States.

## N. Section 1542 Waiver

ALL PARTIES ACKNOWLEDGE SECTION 1542 OF THE CALIFORNIA CIVIL CODE.  THE CLASS MEMBERS EXPRESSLY WAIVE AND RELINQUISH ANY RIGHTS OR BENEFITS AVAILABLE TO THEM UNDER THIS STATUTE.  CALIFORNIA CIVIL CODE SECTION 1542 PROVIDES: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."  NOTWITHSTANDING CALIFORNIA CIVIL CODE SECTION 1542 OR ANY OTHER FEDERAL OR STATE STATUTE OR RULE OF LAW OF SIMILAR EFFECT, THIS AGREEMENT SHALL BE GIVEN FULL FORCE AND EFFECT ACCORDING TO EACH AND ALL OF ITS EXPRESSED TERMS AND PROVISIONS, INCLUDING THOSE RELATED TO ANY UNKNOWN OR UNSUSPECTED CLAIMS, LIABILITIES, DEMANDS, OR CAUSES OF ACTION THAT ARE BASED ON, ARISE FROM, OR ARE IN ANY WAY CONNECTED WITH THE ACTION (excluding Personal Injury Claims and Medical Monitoring Claims).

**O. Class Action Fairness Act**

1.       The Class Action Fairness Act of 2005 ("CAFA") requires Monsanto to inform certain federal and state officials about this Agreement.  *See* 28 U.S.C. § 1715.

2.       Under the provisions of CAFA, the Claims Administrator, on behalf of Monsanto, will serve notice upon the appropriate officials within ten (10) calendar days after the Parties file the proposed Agreement with the Court.  *See* 28 U.S.C. § 1715(b).

3.       The Parties agree that either the Claims Administrator or Monsanto is permitted to provide CAFA notice as required by law and that any such notice shall be done to effectuate the Agreement and shall not be considered a breach of this Agreement or any other agreement of the Parties.

4.       If any of the notified federal or state officials takes any action adversely affecting the validity or enforceability of the Agreement or seeks to impose additional terms or liability on Monsanto for the matters resolved by the Class Released Claims, Monsanto may, at its option, suspend the implementation of the Agreement pending the outcome of the action initiated by the notified federal or state official or, provided that the Court has not yet entered the Final Settlement Approval Order and Judgment, may elect to void the Agreement by written notice to Class Counsel.

**P. Court Approval**

1.       Promptly after executing this Agreement, the Parties will submit to the Court the Agreement, together with its exhibits, and will request that the Court grant preliminary approval of the proposed Agreement, issue a Preliminary Approval Order, and schedule a Final Approval Hearing to determine whether the Agreement should be granted final approval, whether an application for attorneys' fees and costs should be granted, and whether an application for service awards should be granted.  As part of the preliminary-approval motion, the Parties will request that the Court certify the Settlement Class provisionally for settlement purposes and formally to appoint Class Counsel.  The Parties intend and acknowledge that any such certification and appointment would be for purposes of the Agreement only, and not effective in continuing litigation between the Parties, if any.

2.       A Final Settlement Hearing to determine final approval of the Agreement shall be scheduled as soon as practicable, subject to the calendar of the Court, but no sooner than one hundred fifty (150) days after the Preliminary Approval Date.  Upon final approval of the Agreement by the Court at or after the Final Settlement Hearing, the Parties shall seek and obtain from the Court the Final Settlement Approval Order and Judgment.

3.       Objecting Class Members may appear at the Final Approval Hearing and be heard, subject to the provisions of paragraph K above.  The Parties shall have the right, but not the obligation, either jointly or individually, to respond to any objection.

4.       If this Agreement is not given final approval by the Court, the Parties will seek in good faith to revise the Agreement as needed to obtain Court approval.  Failing this, the Parties will be restored to their respective places in the litigation.  In such event, the terms and provisions

of this Agreement will have no further force and effect with respect to the Parties and will not be used in this or in any other proceeding for any purposes, and any judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated.

### Q.  No Public Statements and Media or Public Inquiry Plan

1.      Other than as expressly permitted below, the Parties will refrain (directly, or through counsel or third parties) from making any public statements regarding the fact of or the terms of this settlement, absent written agreement signed by both Parties.

2.      In responding to any inquiries from the public media concerning the Action and/or the Agreement, the Plaintiff and Class Counsel will limit their comments to the effect that "the matter has been settled to the satisfaction of all Parties subject to Court approval" unless a prior written agreement has been signed by both Parties.  Nothing in this paragraph shall limit Class Counsel's ability to communicate privately with a Class Member concerning this Action or the Agreement.

3.      Monsanto or the Claims Administrator may make such public disclosures about the Action and Agreement as any applicable laws require.

4.      Monsanto shall be permitted to respond to questions from media outlets to provide truthful information regarding the scope of this Agreement and the distinction between this Agreement and other class action settlements entered into by Monsanto.

5.      Prior to filing the motion for preliminary approval, the Parties shall agree on the language of a press release regarding this Agreement.

### R.  Miscellaneous Provision

1.      *Entire Agreement*.  This Agreement shall constitute the entire Agreement among the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of this Agreement.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or undertaking concerning any part or all of the subject matter of the Agreement has been made or relied upon except as expressly set forth herein.  This Agreement supersedes any prior agreement between the Parties, including the Term Sheet executed by the Parties.

2.      *Notices Under This Agreement*.  All notices or mailings required by this Agreement to be provided to or approved by Class Counsel and Monsanto, or otherwise made pursuant to this Agreement, shall be provided as follows:

| Class Counsel | Monsanto |
|---|---|
| Gillian L. Wade<br>Milstein, Jackson, Fairchild & Wade, LLP<br>10990 Wilshire Boulevard, 8th Floor<br>Los Angeles, CA 90024 | John J. Rosenthal<br>Winston & Strawn LLP<br>1901 L St. NW<br>Washington, DC 20036 |

| Telephone: (310) 396-9600 gwade@mjfwlaw.com | Telephone: (202) 282-5785 jrosenthal@winston.com |
|---|---|

4.     *Good Faith*.   The Parties acknowledge that each intends to implement the Agreement.  The Parties have at all times acted in good faith and shall continue to, in good faith, cooperate and assist with and undertake all reasonable actions and steps in order to accomplish all required events on the schedule set by the Court, and shall use reasonable efforts to implement all terms and conditions of this Agreement.

5.     *Binding on Successors*.  This Agreement shall be binding upon and inure to the benefit of the heirs, successors, assigns, executors, and legal representatives of the Parties to the Agreement and the Released Parties.

6.     *Arm's-Length Negotiations*.   The Agreement compromises Claims that are contested, and the Parties agree that the consideration provided to the Settlement Class and other terms of the Agreement were negotiated in good faith and at arm's length by the Parties, and reflect an Agreement that was reached voluntarily, after consultation with competent legal counsel, and guided in part by the Parties' earlier private mediation session with Judge Diane Welsh, an experienced mediator.  The determination of the terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel.  Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application.  All Parties agree that this Agreement was drafted by Class Counsel and Monsanto's counsel at arm's length, and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their attorneys, or the circumstances under which the Agreement was negotiated, made, or executed.

7.     *Waiver*.  The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

8.     *Modification in Writing Only*.  This Agreement and any and all parts of it may be amended, modified, changed, or waived only by an express instrument in writing signed by the Parties.

9.     *Headings*.  The descriptive headings of any paragraph or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

10.     *Governing Law*.  This Agreement shall be interpreted, construed, and enforced according to the laws of the State of Delaware, without regard to conflicts of law.

11.     *Continuing Jurisdiction*.  After entry of the Judgment, the Court shall have continuing jurisdiction over the Action solely for purposes of (i) enforcing this Agreement, (ii) addressing settlement-administration matters, and (iii) addressing such post-Judgment matters as may be appropriate under court rules or applicable law, including under the All Writs Act.

12.    *Agreement Constitutes a Complete Defense*.  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

12.    *Execution*.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies (e.g., PDF copies) shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF**, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.

_Scott Gilmore_____    Date: January 20, 2022
SCOTT GILMORE

_____    Date: January __, 2022
SHERRY HANNA

_____    Date: January __, 2022
PAUL TAYLOR

_____    Date: January __, 2022
JAMES WEEKS

_____    Date: January __, 2022
KRISTY WILLIAMS

_____    Date: January __, 2022
AMANDA BOYETTE

_____    Date: January __, 2022
JULIO EZCURRA

_____    Date: January __, 2022
ANTHONY JEWELL

12.    *Agreement Constitutes a Complete Defense.* To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

12.    *Execution.* This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies (e.g., PDF copies) shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF,** each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.

_____ Date: January __, 2022
SCOTT GILMORE

_____ Date: January 19, 2022
SHERRY HANNA

_____ Date: January __, 2022
PAUL TAYLOR

_____ Date: January __, 2022
JAMES WEEKS

_____ Date: January __, 2022
KRISTY WILLIAMS

_____ Date: January __, 2022
AMANDA BOYETTE

_____ Date: January __, 2022
JULIO EZCURRA

_____ Date: January __, 2022
ANTHONY JEWELL

12.     *Agreement Constitutes a Complete Defense.*  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

12.     *Execution.*  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies (e.g., PDF copies) shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF**, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.


_____          ___ Date: January ___, 2022
SCOTT GILMORE


_____          Date: January ___, 2022
SHERRY HANNA


_____          Date: January 19, 2022
PAUL TAYLOR


_____          _____ Date: January ___, 2022
JAMES WEEKS


_____          Date: January ___, 2022
KRISTY WILLIAMS


_____          ____ Date: January ___, 2022
AMANDA BOYETTE


_____          Date: January ___, 2022
JULIO EZCURRA


_____          Date: January ___, 2022
ANTHONY JEWELL

Second Amended Settlement Agreement in *Gilmore, et al. v. Monsanto*

12.   *Agreement Constitutes a Complete Defense.*  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

12.   *Execution.*  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument.  Photocopies and electronic copies (e.g., PDF copies) shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF**, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.

_____   Date: January ___, 2022
SCOTT GILMORE

_____   Date: January ___, 2022
SHERRY HANNA

_____   Date: January ___, 2022
PAUL TAYLOR

_____   Date: January 20, 2022
JAMES WEEKS

_____   Date: January ___, 2022
KRISTY WILLIAMS

_____   Date: January ___, 2022
AMANDA BOYETTE

_____   Date: January ___, 2022
JULIO EZCURRA

_____   Date: January ___, 2022
ANTHONY JEWELL

12.     *Agreement Constitutes a Complete Defense.*  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

12.     *Execution.*  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies (e.g., PDF copies) shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF**, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.

_____ Date: January \_\_, 2022
SCOTT GILMORE

_____ Date: January \_\_, 2022
SHERRY HANNA

_____ Date: January \_\_, 2022
PAUL TAYLOR

_____ Date: January \_\_, 2022
JAMES WEEKS

_____ Date: January 19, 2022
KRISTY WILLIAMS
(Formerly Kristy Williams)

_____ Date: January \_\_, 2022
AMANDA BOYETTE

_____ Date: January \_\_, 2022
JULIO EZCURRA

_____ Date: January \_\_, 2022
ANTHONY JEWELL

Page 27 of 31

Second Amended Settlement Agreement in *Gilmore, et al. v. Monsanto*

12.    *Agreement Constitutes a Complete Defense*.  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

12.    *Execution*.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies (e.g., PDF copies) shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF**, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.


_____ Date: January ___, 2022
SCOTT GILMORE


_____ Date: January ___, 2022
SHERRY HANNA


_____ Date: January ___, 2022
PAUL TAYLOR


_____ Date: January ___, 2022
JAMES WEEKS


_____ Date: January ___, 2022
KRISTY WILLIAMS

_____ Date: January ___, 2022
AMANDA BOYETTE


_____ Date: January ___, 2022
JULIO EZCURRA


_____ Date: January ___, 2022
ANTHONY JEWELL

Case 3:16-md-02741-VC Document 14610-1 Filed 02/16/22 Page 50 of 105

12.     *Agreement Constitutes a Complete Defense.*  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

12.     *Execution.*  This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies (e.g., PDF copies) shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF**, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.

_____  Date: January __, 2022
SCOTT GILMORE

_____  Date: January __, 2022
SHERRY HANNA

_____  Date: January __, 2022
PAUL TAYLOR

_____  Date: January __, 2022
JAMES WEEKS

_____  Date: January __, 2022
KRISTY WILLIAMS

_____  Date: January __, 2022
AMANDA BOYETTE

_____  Date: January 20, 2022
JULIO EZCURRA

_____  Date: January __, 2022
ANTHONY JEWELL

12.     *Agreement Constitutes a Complete Defense*.  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

12.     *Execution*.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies (e.g., PDF copies) shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF**, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.

_____ Date: January __, 2022
SCOTT GILMORE

_____ Date: January __, 2022
SHERRY HANNA

_____ Date: January __, 2022
PAUL TAYLOR

_____ Date: January __, 2022
JAMES WEEKS

_____ Date: January __, 2022
KRISTY WILLIAMS

_____ Date: January __, 2022
AMANDA BOYETTE

_____ Date: January __, 2022
JULIO EZCURRA

_____ Date: January __, 2022
ANTHONY JEWELL

Second Amended Settlement Agreement in *Gilmore, et al. v. Monsanto*

THE MONSANTO COMPANY

/s/ *John Rosenthal*

BY:  John Rosenthal on behalf of The Monsanto Company

TITLE:  Partner, Winston & Strawn LLP

Date:  January 20 2022

MILSTEIN, JACKSON, FAIRCHILD & WADE, LLP
Gillian L. Wade

_____ Date: January __, 2022
GILLIAN L. WADE
10990 Wilshire Boulevard, 8th Floor
Los Angeles, CA 90024

LAW OFFICES OF HOWARD RUBINSTEIN
Joel Oster

_____ Date: January __, 2022
JOEL OSTER
22052 W. 66th St. #192
Shawnee, Kansas 66226

WINSTON & STRAWN LLP
John J. Rosenthal:

*John Rosenthal*
_____ Date: January 20 2022
JOHN J. ROSENTHAL
1901 L. St. NW
Washington, DC 20036

Page **28** of **31**

THE MONSANTO COMPANY


/s/_____

BY:_____

TITLE:_____

Date:  January __, 2022


MILSTEIN, JACKSON, FAIRCHILD & WADE, LLP
Gillian L. Wade

_____ Date: January 19, 2022
GILLIAN L. WADE
10990 Wilshire Boulevard, 8th Floor
Los Angeles, CA 90024


LAW OFFICES OF HOWARD RUBINSTEIN
Joel Oster


_____ Date: January __, 2022
JOEL OSTER
22052 W. 66th St. #192
Shawnee, Kansas 66226


WINSTON & STRAWN LLP
John J. Rosenthal:


_____ Date: January __, 2022
JOHN J. ROSENTHAL
1901 L. St. NW
Washington, DC 20036

Second Amended Settlement Agreement in *Gilmore, et al. v. Monsanto*

THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date:  August __, 2021

MILSTEIN, JACKSON, FAIRCHILD & WADE, LLP
Gillian L. Wade

_____ Date: August ___, 2021
GILLIAN L. WADE
10990 Wilshire Boulevard, 8th Floor
Los Angeles, CA 90024

LAW OFFICES OF HOWARD RUBINSTEIN, P.A.

_____ Date: January 20, 2022
JOEL OSTER, of counsel
22052 W. 66th St. #192
Shawnee, Kansas 66226

WINSTON & STRAWN LLP
John J. Rosenthal:

_____ Date: August __, 2021
JOHN J. ROSENTHAL
1901 L. St. NW
Washington, DC 20036

Second Amended Settlement Agreement in *Gilmore, et al. v. Monsanto*

## EXHIBIT A

Products

Roundup® Ready-to-Use Weed & Grass Killer (all sizes, applicators, and varieties)
Roundup® Ready-to-Use Weed & Grass Killer Plus (all sizes, applicators, and varieties)
Roundup® Weed & Grass Killer Concentrate Plus (all sizes and varieties)
Roundup® Weed & Grass Killer Super Concentrate (all sizes and varieties)
Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer (all sizes and varieties)
Roundup® Ready-to-Use Wild Blackberry Plus Vine and Brush Killer (all sizes and varieties)
Roundup® Concentrate Poison Ivy Plus Tough Brush Killer (all sizes and varieties)
Roundup® Concentrate Wild Blackberry Plus Vine and Brush Killer (all sizes and varieties)
Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all sizes and varieties)
Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer (all sizes and varieties)
Roundup® Ready-to-Use Max Control 365 (all sizes and varieties)
Roundup® Concentrate Max Control 365 (all sizes and varieties)
Roundup® Weed & Grass Killer Sure Shot Foam (all sizes and varieties)
Roundup® Precision Gel Weed & Grass Killer (all sizes and varieties)
Roundup® Pro Concentrate (2.5 gal.)
HDX® Weed & Grass Killer Ready-to-Use (all sizes and varieties)
HDX® Weed & Grass Killer Concentrate (all sizes and varieties)
Ace® Ready-to-Use Weed & Grass Killer (all sizes and varieties)
Ace® Weed & Grass Killer Concentrate (all sizes and varieties)

Second Amended Settlement Agreement in *Gilmore, et al. v. Monsanto*

## **EXHIBIT B**

Class Period for Each State/Territory

| State or Territory | Beginning of Class Period |
|---|---|
| Alabama | February 2017 |
| Alaska | February 2017 |
| American Samoa | February 2018 |
| Arizona | February 2017 |
| Arkansas | February 2016 |
| California | August 2015 |
| Colorado | February 2018 |
| Connecticut | February 2016 |
| Delaware | February 2017 |
| District of Columbia | February 2017 |
| Florida | February 2016 |
| Georgia | October 2016 |
| Guam | August 2016 |
| Hawaii | February 2017 |
| Idaho | February 2017 |
| Illinois | February 2017 |
| Indiana | February 2017 |
| Iowa | February 2017 |
| Kansas | December 2015 |
| Kentucky | February 2017 |
| Louisiana | February 2017 |
| Maine | February 2015 |
| Maryland | August 2016 |
| Massachusetts | October 2016 |
| Michigan | October 2014 |
| Minnesota | December 2013 |
| Mississippi | February 2015 |
| Missouri | August 2014 |
| Montana | February 2017 |
| Nebraska | February 2017 |
| Nevada | October 2016 |
| New Hampshire | February 2017 |
| New Jersey | November 2014 |
| New Mexico | February 2017 |
| New York | June 2011 |
| North Carolina | February 2017 |
| North Dakota | February 2015 |

Second Amended Settlement Agreement in *Gilmore, et al. v. Monsanto*

| | |
|---|---|
| Northern Mariana Islands | February 2015 |
| Ohio | February 2017 |
| Oklahoma | November 2015 |
| Oregon | November 2015 |
| Pennsylvania | February 2015 |
| Puerto Rico | December 2019 |
| Rhode Island | February 2017 |
| South Carolina | February 2015 |
| South Dakota | February 2017 |
| Tennessee | February 2017 |
| Texas | March 2016 |
| Utah | February 2016 |
| Vermont | November 2013 |
| Virgin Islands | February 2015 |
| Virginia | September 2016 |
| Washington | February 2017 |
| West Virginia | February 2017 |
| Wisconsin | February 2015 |
| Wyoming | February 2017 |

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF FLORIDA**

JULIO EZCURRA,

     Plaintiff,

  vs.                                     Case No. 9:20-CV-80524-DMM

MONSANTO COMPANY

     Defendant.

**EXPERT REPORT OF D.C. SHARP, PH.D.**

**July 31, 2020**

i

# CONTENTS

I.    INTRODUCTION AND SUMMARY OF CONCLUSIONS.................................................................... 1
      A.  Allegations and Assignment ................................................................................ 1
      B.  Qualifications .......................................................................................................... 2
      C.  Information Sources ............................................................................................... 3
      D.  Summary of Conclusions ...................................................................................... 3

II.   METHODOLOGY, PRICE AND ATTRIBUTE DATA, MODEL, AND RESULTS ........................... 5
      A.  Methodology ........................................................................................................... 5
      B.  Price and Attribute Data....................................................................................... 7
      C.  Regression Equation .............................................................................................. 9
      D.  Results ...................................................................................................................... 10

III.  CLASS-WIDE DAMAGES......................................................................................................... 11
      A.  Defendant's Retail Sales Data............................................................................. 11
      B.  Preliminary Estimation of Class-wide Damages............................................. 12

IV.   CONCLUSION.......................................................................................................................... 12


APPENDIX A:  CURRICULUM VITAE OF D.C. SHARP, PH.D.

APPENDIX B:  DOCUMENTS CONSIDERED

APPENDIX C:  REGRESSION OUTPUT

## I. INTRODUCTION AND SUMMARY OF CONCLUSIONS

### A.    Allegations and Assignment

1.    Plaintiff Julio Ezcurra seeks to represent a class of Florida residents who, from February 2016 through February 2020, purchased certain Roundup® brand glyphosate-based herbicides ("Roundup" or "product") manufactured by defendant Monsanto Company ("defendant").[1]  As alleged in the Second Amended Complaint, the defendant failed to disclose to consumers Roundup's potential to cause cancer in humans, in its sale, marketing, and advertising of the product.[2]  As further alleged, consumers did not get the benefit of their bargain when purchasing Roundup because its potential carcinogenicity was not disclosed.[3]

2.    Counsel for the proposed class has asked whether there is a method available to calculate damages in this matter on a class-wide basis, with the assumption that the plaintiff's allegations are true and defendant is found liable.  Counsel further asked, if such a method does exist, that I illustrate how it may be utilized with a preliminary calculation of class-wide damages.

3.    Counsel has asked me to limit my preliminary calculation of class-wide damages to Roundup Weed & Grass Killer III ("Killer III")[4] sales in the State of Florida from February 2016 through February 2020.

---

[1] Second Amended Complaint for Injunctive and Declaratory Relief (May 13, 2020), *Julio Ezcurra v. Bayer AG and Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524) ["Second Amended Complaint" hereafter], ¶¶ 1-2, and 117.  Plaintiff voluntarily dismissed Bayer AG without prejudice.  *See*, Plaintiff's Rule 41(A)(i) Notice of Voluntary Dismissal Without Prejudice of Defendant, Bayer AG (July 8, 2020), *Julio Ezcurra v. Bayer AG and Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

[2] Second Amended Complaint, ¶¶ 27, 106-111, 135-136, 139.

[3] Second Amended Complaint, ¶¶ 112-114; *see also* Transcript of Motion Hearing (July 21, 2020), *Julio Ezcurra v. Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524), at 36:4-25.

[4] Second Amended Complaint, ¶ 88.

**B.    Qualifications**

4.    I am a Managing Director at Econ One Research, Inc. ("Econ One").  Econ One is an
economic consulting firm with offices in Lafayette, Los Angeles, and Sacramento, CA;
Denver, CO; Washington, DC; New York, and White Plains, NY; Memphis, TN; Houston, TX;
and New Delhi, India.  My areas of specialization include economics and statistics, and a
substantial portion of my work involves the analysis of economic, financial, and statistical
issues that arise in litigation.

5.    I received a Ph.D. in economics from the University of Memphis in 1997.  I am formerly a
tenured Associate Professor of Economics and Business Advisory Council (BAC) Research
Professor at the University of Southern Mississippi, where I taught graduate and
undergraduate courses in economics and statistics.  I have also taught graduate and
undergraduate courses in economics and statistics at Christian Brothers University,
American University, and the University of Memphis, where I am currently a member of
the graduate faculty.

6.    As an economic consultant, my clients have included both plaintiffs and defendants in a
variety of litigation matters involving antitrust, employment, and various commercial and
personal tort claims. I have worked as a consulting economist or econometrician on over
250 cases in federal and state courts since 1998.  In a portion of these cases I have been
called upon to testify to my analyses and conclusions concerning liability issues and
damages.

7.    A number of my litigation assignments have concerned issues of economic impact upon
multiple plaintiffs and plaintiff classes, as well as the analytical methods that can be
applied to assess damages on a class-wide basis.  I have calculated damages, or consulted
on issues pertaining to damage methodologies, on over 50 class-action matters involving
antitrust, employment, deceptive advertising, and other commercial claims.

8.    Additional information about my education, professional experience, publications, and
affiliations may be found within my curriculum vitae attached as Appendix A. Appendix A

also includes a list of the matters in which I have provided testimony during at least the last four years.

9.    Econ One is compensated for my work in this matter at the rate of $340 per hour. Compensation to Econ One is not contingent upon the outcome of this litigation.

**C.    Information Sources**

10.   The analysis herein utilizes information produced by the defendant, publicly available data, and guidance from the relevant literature.   Appendix B to this report contains a list of the specific materials considered.

11.   The opinions expressed in this report are based upon information that I have received and reviewed to date, as listed in Appendix B.  If additional information becomes available, I reserve the right to alter these conclusions if warranted by the additional information.

**D.    Summary of Conclusions**

12.   One approach to calculating class-wide damages involves calculating the price premium the proposed class of consumers paid for the product, given that its carcinogenic potential was undisclosed.  Specifically, it is possible to estimate how much lower prices for subject products would have been had the defendant disclosed Roundup had the potential to cause cancer in humans.  The difference between the average retail price consumers paid and the price consumers would have paid but for the defendant's omissions equals the price premium.

13.   To calculate the price premium, I rely upon a well-accepted econometric technique commonly referred to as "hedonic regression".  To demonstrate this approach, I rely upon publicly available herbicide retail price and attribute information.  With this data and the hedonic regression methodology, I preliminarily find that product prices would have been approximately 31% lower but for the defendant's alleged omissions.  In other words, class consumers paid a price premium of approximately 31%.

14.   To preliminarily calculate class-wide damages, I rely upon Florida retail sales data provided by the defendant.  As shown in Table 1, applying the 31% price premium to retail sales results in class-wide damages of $13,315,954.

**Table 1. Florida Roundup Weed and Grass Killer III**
Sales, Price Premium, and Class-wide Damages
February 2016 through February 2020

| Basic Product Number [a] | Product Description [b] | Retail Sales [c] | Retail Quantity [d] | Retail Price [e]=[c]/[d] | Price Premium % [f] | But-For Price [g]=[e]*(1-[f]) | Price Premium $ [h]=[e]-[g] | Damages [i]=[d]*[h] |
|---|---|---|---|---|---|---|---|---|
| 50030 | ROUNDUP RTU W&G KLR III 24OZ | $3,118,167 | 601,774 | $5.18 | 30.9% | $3.58 | $1.60 | $964,127 |
| 50034 | ROUNDUP RTU W&G KLR III 30OZ | $495,449 | 89,558 | $5.53 | 30.9% | $3.82 | $1.71 | $153,191 |
| 50031 | ROUNDUP RTU W&G KLR III 64OZ | $1,500 | 151 | $9.93 | 30.9% | $6.86 | $3.07 | $464 |
| 50026 | ROUNDUP RTU W&G KLR III 1GAL | $7,067,271 | 666,385 | $10.61 | 30.9% | $7.33 | $3.28 | $2,185,176 |
| 51004 | ROUNDUP RTU W&G KLR III RFL 1GAL/4 | $7 | 1 | $6.92 | 30.9% | $4.78 | $2.14 | $2 |
| 51003 | ROUNDUP RTU W&G KLR III WAND 1 GAL | $505 | 67 | $7.53 | 30.9% | $5.21 | $2.33 | $156 |
| 50038 | ROUNDUP RTU W&G KLR III RFL 1.25GAL | $8,423,995 | 655,708 | $12.85 | 30.9% | $8.87 | $3.97 | $2,604,671 |
| 51001 | ROUNDUP RTU W&G KLR III PNG2 1.33GAL | $7,842,612 | 434,852 | $18.04 | 30.9% | $12.46 | $5.58 | $2,424,909 |
| 52002 | ROUNDUP RTU W&G KLR III WAND 1.33GAL | $7,653,538 | 404,743 | $18.91 | 30.9% | $13.06 | $5.85 | $2,366,448 |
| 52005 | ROUNDUP RTU W&G KLR III SSWAND 1.33GAL | $8,463,258 | 381,874 | $22.16 | 30.9% | $15.31 | $6.85 | $2,616,811 |
| | Classwide | $43,066,302 | 3,235,113 | $13.31 | 30.9% | $9.20 | $4.12 | $13,315,954 |

Sources/Notes:
[a]…[d]:       MON-A00000245, MON-A00000246 and MON-A00000247.
[f]:       *See*  Appendix C, *infra*. *Price Premium %* = |exp($a_5$)-1|.

15.   The remainder of this report is organized as follows: Section II describes the methodology, price and attribute data, model, and results; Section III describes the retail sales data and the preliminary calculation of class-wide damages; and Section IV concludes with a brief summary.

## II.   Methodology, Price and Attribute Data, Model, and Results

### A.   Methodology

16.   Hedonic regression[5] analysis is based upon the principle that products are composed of various attributes valued by consumers, and it is the bundle of these attributes which defines a product's price.  This implies that product prices can be decomposed into implicit prices for individual attributes.  These implicit prices are called "hedonic" prices. Hedonic regression assesses the impact on product price associated with these various product attributes.  By analyzing the product price as a function of the various attributes, hedonic regression identifies the value of each product characteristic.

17.   For example, in real estate appraisals, to find the impact of, say, an additional bedroom on housing prices, we might identify the attributes of homes that recently sold (*e.g.*, number of bedrooms, number of bathrooms, whether or not it has a swimming pool, etc.) and then regress sales prices against those attributes in order to determine the impact of each attribute on sales price.[6] The regression coefficient associated with the number of bedrooms tells us the impact of an additional bedroom on sales price.

18.   Following Griliches' (1961) early work with hedonic prices for automobiles,[7] numerous empirical studies have estimated the hedonic prices of product attributes.  In addition to

---

[5] For information on regression, in general, *see*, *e.g.*, Rubinfeld, D.L. (2011), Reference Guide on Multiple Regression, in *Reference Manual on Scientific Evidence*, *Third Edition*, National Academies Press, pp. 179-227.

[6] Monson, M. (2009), Valuation Using Hedonic Pricing Models, *Cornell Real Estate Review, 7*, pp. 62-73 ["Monson (2009)" hereafter].

[7] Griliches, Z. (1961), Hedonic Price Indexes for Automobiles: An Econometric Analysis of Quality Change, in *The Price Statistics of the Federal Government*, General Series, No. 73 (New York: National Bureau of Economic Research), pp. 137-196 ["Griliches (1961)" hereafter].

real estate[8] and automobiles,[9] studies have examined hedonic prices for other durable goods such as refrigerators[10] and tractors,[11] as well as a vast array of non-durable goods such as milk, oatmeal,[12] various other food products,[13] and crop herbicides.[14]  The U.S. Bureau of Labor Statistics uses hedonic regression to adjust the Consumer Price Index (CPI) for quality changes in goods and services.[15]  Moreover, these examples represent a small number of the many hedonic regression examples that appear within the literature. As Griliches (1991) observed thirty years after his seminal work, "This literature has

---

[8] In addition to Monson (2009), *see, e.g.*, Bailey, M.J., Muth, R.F., & Nourse, H.D. (1963), A Regression Method for Real Estate Price Index Construction, *Journal of the American Statistical Association, 58*, pp. 933-942.  *See also*, Musgrave, J.C. (1969), The Measurement of Price Changes in Construction, *Journal of the American Statistical Association, 64*, pp. 771-786.

[9] In addition to Griliches (1961), *see, e.g.*, Fisher, F.M., Griliches, Z., & Kaysen, C. (1962), The Costs of Automobile Model Changes Since 1949, *Journal of Political Economy, 70*, pp. 433-451.  *See also*, Triplett, J.E. (1963), Automobiles and Hedonic Quality Measurement, *Journal of Political Economy, 71*, pp. 408-417; and Dhrymes, P.J. (1967), On the Measurement of Price and Quality Changes in Some Consumer Capital Goods, *The American Economic Review, 57*, pp. 501-511 ["Dhrymes (1967)" hereafter].

[10] Dhrymes (1967).

[11] Fetting, L.P. (1963), Adjusting Farm Tractor Prices for Quality Changes, 1950-1962, *Journal of Farm Economics, 45*, pp. 599-611.

[12] Xiao, J. (2012), *A Hedonic Analysis of Retail Milk and Oatmeal Attributes in Quebec*, [Thesis] Department of Agricultural Economics, McGill University.

[13] Ladd, G.W. & Suvannunt, V. (1976), A Model of Consumer Goods Characteristics, *American Journal of Agricultural Economics, 58*, pp. 504-510.  *See also*, Li, J. & Hooker, N.H. (2009), Documenting Food Safety Claims and Their Influence on Product Prices, *Agricultural and Resource Economics Review, 38*(3), pp. 311-323; *and* Satimanon, T. & Weatherspoon, D.D. (2010), Hedonic Analysis of Sustainable Food Products, *International Food and Agribusiness Management Review, 13*(4), pp. 57-74.

[14] Beach, E.D. and Carlson, G.A. (1993), A Hedonic Analysis of Herbicides: Do User Safety and Water Quality Matter?  *American Journal of Agricultural Economics, 75*(3), pp. 612-623.  *See also*, Fernandez-Cornejo, J. and Jans, S. (1995), Quality-Adjusted Price and Quantity Indices for Pesticides, *American Journal of Agricultural Economics, 77*(3), pp. 645-659; and Michael, V. and Dillon, C.R. (2010), A Hedonic Analysis of Corn and Soybean Herbicides, Paper presented at the 120th Meeting of the European Association of Agricultural Economists (EAAE), Crete, Greece (retrieved May 31, 2020 from http://ageconsearch.umn.edu/record/109419/files/Vassalos_Dillon.pdf).

[15] U.S. Bureau of Labor Statistics (2014), *Frequently Asked Questions about Hedonic Quality Adjustment in the CPI* (retrieved October 28, 2014 from http://www.bls.gov/cpi/cpihqaqanda.htm).

become too vast for one person to survey it."[16]

19. The hedonic regression methodology is ideally suited for isolating the impact, if any, that a specific product characteristic has on a product's value.  In this context, hedonic regression answers the question, "How much more, or how much less, is the product worth because of this characteristic?"

**B.    Price and Attribute Data**

20. To operationalize the hedonic regression model, my staff and I compiled a dataset containing prices and product attributes for non-selective, non-crop herbicides (*i.e.*, "weed and grass killers") sold by Home Depot, Lowe's, Ace Hardware and Tractor Supply Company.[17]  Prices to Florida consumers were gathered from these retailers' websites over a six-day period, from July 21 through July 26, 2020.[18]

21. Most product attributes, such as brand (*e.g.*, Roundup®, Spectrum®), form (*i.e.*, liquid or granular), volume (*e.g.*, 32 oz), application (*e.g.*, pump, trigger, refill), and whether or not the product is certified organic by OMRI[19] were gathered from the retailer websites along with the price data.  Coverage (in square feet), active ingredients (*e.g.*, glyphosate, triclopyr), and signal words[20] were gathered primarily from product labels and websites.[21]

---

[16] Griliches, Z. (1991), Hedonic Price Indexes and the Measurement of Capital and Productivity: Some Historical Reflections, *Fifty Years of Economic Measurement: The Jubilee of the Conference on Research in Income and Wealth* (Berndt, E.R., and Triplett, J.E., EDs), University of Chicago Press, pp. 185-206.

[17] E1-000001.

[18] E1-000002 – E1-001288.

[19] The Organic Materials Review Institute (OMRI) provides an independent review of products, such as fertilizers, pest controls, livestock health care products, and numerous other inputs that are intended for use in certified organic production and processing (website accessed July 30, 2020 at https://www.omri.org/).

[20] Signal words (Caution, Warning or Danger) describe the acute (short-term) toxicity of a formulated pesticide product.  They do not reflect effects of long-term exposure (*i.e.*, cancer, birth defects, or reproductive toxicity). *See*, National Pesticide Information Center (2008), Topic Fact Sheet: Signal Words (retrieved July 29, 2020 from http://npic.orst.edu/factsheets/signalwords.pdf).

[21] E1-001289 – E1-002122.

Information pertaining to non-selectivity[22] and emergence[23] was gathered primarily from the literature.[24]  Finally, carcinogenicity ratings for each herbicide's active ingredients were gathered from the EPA.[25]

22. The resulting dataset consists of 282 prices pertaining to 177 unique products (including different sizes and applications) marketed under 29 unique brands.

---

[22] A non-selective herbicide injures all vegetation.  *See*, *e.g.*, Glover, A.E. (1997), *Non-Selective Weed Control in Non-Crop Areas*, College of Agricultural Sciences, Pennsylvania State University (retrieved July 25, 2020 from https://plantscience.psu.edu/research/projects/vegetative-management/publications/other-publications/non-selective-weed-control-in-non-crop-areas) ["Glover (1997)" hereafter], p. 10.

[23] Herbicides are generally pre-emergent, post-emergent, or both.  Pre-emergent herbicides are applied prior to the weed's emergence.  Post-emergent herbicides control weeds after they emerge.  *See*, Glover (1997), p. 10.

[24] Glover (1997).  *See also*, Glover, A.E. (2000), *Uses and Characteristics of Herbicides for Non-Crop Weed Control*, College of Agricultural Sciences, Pennsylvania State University (retrieved July 30, 2020 from https://plantscience.psu.edu/research/projects/vegetative-management/publications/other-publications/use-and-characteristics-of-herbicides-for-non-crop-weed-control) ["Glover 2000" hereafter]; Wilen, C.A. (2011), *Natural Herbicides: Are The Effective?* Integrated Pest Management Program, University of California, Davis (retrieved July 30, 2020 from http://mgorange.ucanr.edu/files/161478.pdf) ["Wilen (2011)" hereafter]; Boyd, C. (2014), *Check Out the New Herbicide Indaziflam*, Chem Service, Inc. (retrieved July 25, 2020 from https://www.chemservice.com/news/2014/09/check-out-the-new-herbicide-indaziflam/) ["Boyd (2014)" hereafter]; Wallace, V. and Siegel-Miles, A. (2018), *Minimum Risk Herbicides for Use on School Grounds*, College of Agriculture, Health and Natural Resources, University of Connecticut (retrieved July 30, 2020 from http://ipm.uconn.edu/documents/raw2/1444/MinimumRiskHerbicidesforSchoolGroundsManagers.pdf) ["Wallace, et al. (2018)" hereafter]; and Shaffer, G. (2019), *Organic Herbicides*, South Dakota State University Extension (retrieved July 30, 2020 from https://extension.sdstate.edu/organic-herbicides) ["Shaffer (2018)" hereafter].

[25] *See*, U.S. Environmental Protection Agency, Office of Pesticide Programs (2018), *Chemicals Evaluated for Carcinogenic Potential* (retrieved June 1, 2020 from http://npic.orst.edu/chemicals_evaluated.pdf) ["EPA 2018" hereafter]; U.S. Environmental Protection Agency, Office of Safety and Pollution Prevention (2015), *Active Ingredients Eligible for Minimum Risk Pesticide Products* (retrieved July 30, 2020 from https://www.epa.gov/sites/production/files/2018-01/documents/minrisk-active-ingredients-tolerances-jan-2018.pdf) ["EPA 2015" hereafter]; U.S. Environmental Protection Agency, Office of Pesticide Programs (2001), *Acetic Acid (044001) Fact Sheet* (retrieved July 30, 2020 from https://www3.epa.gov/pesticides/chem_search/reg_actions/registration/fs_PC-044001_01-Mar-01.pdf) ["EPA Acetic Acid" hereafter]; U.S. Environmental Protection Agency, Prevention, Pesticides and Toxic Substances (2008*), Caprylic (Octanoic) Acid Final Work Plan and Proposed Registration Review Final Decision* (retrieved July 30, 2020 from https://beta.regulations.gov/document/EPA-HQ-OPP-2008-0477-0005) ["EPA Caprylic and Nonanoic Acids" hereafter]; and U.S. Environmental Protection Agency, Prevention, Pesticides and Toxic Substances (1994), R.E.D. Facts: Limonene (retrieved July 30, 2020 from https://www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/fs_PC-079701_1-Sep-94.pdf) ["EPA Limonene" hereafter].

## C.   Regression Equation

23.   The regression equation may be specified formally as

$$\ln PPS_i = a_0 + a_1(\ln Oz_i^n) + a_2(AI_i^p) + a_3(\ln Oz_i^n * AI_i^p) + a_4(AI_i^n) + a_5(C_i^n)$$

$$+ \sum_{j=1}^{5} a_{j+5}(A_{j,i}) + \sum_{k=1}^{29} a_{k+10}(B_{k,i}) + \sum_{l=1}^{3} a_{l+39}(E_{l,i}) + \sum_{m=1}^{2} a_{m+42}(F_{m,i})$$

$$+ \sum_{o=1}^{2} a_{o+44}(O_{o,i}) + \sum_{q=1}^{3} a_{q+46}(S_{q,i}) + \sum_{r=1}^{4} a_{r+49}(V_{r,i}) + \varepsilon_i$$

where the dependent variable, $\ln PPS_i$, is the price per square foot, in logarithmic form, for each herbicide product ($i$).[26] Among the explanatory variables, $\ln Oz_i^n$ is the number of ounces within the product, expressed in logarithmic form; $AI_i^p$ is the proportion of the product comprised of active ingredients; $AI_i^n$ is the product's number of unique active ingredients;[27] and $C_i^n$ is the product's number of unique active ingredients that are potentially carcinogenic.[28] $A_{j,i}$ is a collection of ($j = 5$) fixed effects indicating each product's application; $B_{k,i}$ is a collection of ($k = 29$) fixed effects indicating each product's brand; and $E_{l,i}$ is a collection of ($l = 3$) fixed effects pertaining to emergence (*i.e.*, pre, post, or pre and post). $F_{m,i}$ represents ($m = 2$) fixed effects pertaining to the product's form (*i.e.*, liquid or granular); $O_{o,i}$ represents ($o = 2$) fixed effects pertaining to whether or not the product is OMRI listed; $S_{q,i}$ is a collection of ($q = 3$) fixed effects pertaining to the product's Signal word; $V_{r,i}$ is a collection of ($r = 4$) fixed-effects identifying the vendor from which price was collected; and $\varepsilon_i$ is the error term.

---

[26] $PPS_i = P_i/Coverage_i$, where $P_i$ is the product price and $Coverage_i$ is the total square footage it covers.

[27] Among the products represented, the minimum number of active ingredients equals 1 and the maximum number of active ingredients equals 4.

[28] Among the products represented in the dataset, those with active ingredients considered to be potentially carcinogenic are categorized by the EPA as "Likely to be Carcinogenic to Humans", "Group C--Possible Human Carcinogen", "Suggestive Evidence of Carcinogenic Potential", or "Suggestive Evidence of Carcinogenicity, but not Sufficient to Assess Human Carcinogenic Potential". *See* EPA 2018. Among the products represented in the dataset, the minimum number of potentially carcinogenic active ingredients equals 0 and the maximum equals 2.

24.   Parameters $a_1$ through $a_{53}$, once estimated via ordinary least squares (OLS) regression, represent the hedonic prices corresponding to the 53 product attributes listed above (with $a_0$ as the intercept).

**D.    Results**

25.   Appendix C, attached, reports the estimated parameter values ($a_0$ through $a_{53}$) for the above equation.  As shown in Appendix C, many of the parameters are statistically significant at the $\alpha$ = 0.05 level or better, and the equation explains approximately 90% of the variability in product prices (*i.e.*, *Adj R²* = 0.8964).

26.   The estimated equation also reveals the effect of the number of potentially carcinogenic active ingredients on the price of weed and grass killers, controlling for the other product attributes.  As shown in Appendix C, the coefficient on $a_5$ equals -0.3699 and is statistically significant at the $\alpha$ = 0.001 level.  Since the dependent variable is expressed in logarithms, this means the percentage impact of one potentially carcinogenic active ingredient on product price is

$$Price\ Premium\ \% = |e^{-.3699} - 1|$$
$$\text{or}$$
$$Price\ Premium\ \% = 30.9\%.$$

27.   This price premium percentage may be applied to either the product's price per square foot ($PPS_i$) or, equivalently, to the product's price ($P_i$).  This result suggests that, had the defendant disclosed Roundup contains even just one potentially carcinogenic ingredient (*e.g.*, glyphosate), consumers would have paid approximately 31% less for the subject products.

# III.  CLASS-WIDE DAMAGES

## A.  Defendant's Retail Sales Data

28.  The defendant produced three files containing point-of-sale (POS) data in the State of Florida by month, year, and retailer.[29]  The POS data begins with the 5th period of the defendant's 2016 fiscal year (February 2016) and ends with the eighth period of the defendant's 2020 fiscal year (May 2020). Retailers represented in the POS data include Ace Hardware, Lowe's, Home Depot, Walmart, Sam's Club, and Target.

29.  After appending the data into a single file, sales were limited to Killer III sales from February 2016 through February 2020.  Table 1, below, summarizes the relevant sales. Specifically, Table 1 provides the retail sales, quantities, and average prices of Killer III products sold in Florida during the proposed class period, by (five-digit) product number[30] and product description.

**Table 1. Florida Roundup Weed and Grass Killer III**
Sales, Price Premium, and Class-wide Damages
February 2016 through February 2020

| Basic Product Number [a] | Product Description [b] | Retail Sales [c] | Retail Quantity [d] | Retail Price [e]=[c]/[d] | Price Premium % [f] | But-For Price [g]=[e]*(1-[f]) | Price Premium $ [h]=[e]-[g] | Damages [i]=[d]*[h] |
|---|---|---|---|---|---|---|---|---|
| 50030 | ROUNDUP RTU W&G KLR III 24OZ | $3,118,167 | 601,774 | $5.18 | 30.9% | $3.58 | $1.60 | $964,127 |
| 50034 | ROUNDUP RTU W&G KLR III 30OZ | $495,449 | 89,558 | $5.53 | 30.9% | $3.82 | $1.71 | $153,191 |
| 50031 | ROUNDUP RTU W&G KLR III 64OZ | $1,500 | 151 | $9.93 | 30.9% | $6.86 | $3.07 | $464 |
| 50026 | ROUNDUP RTU W&G KLR III 1GAL | $7,067,271 | 666,385 | $10.61 | 30.9% | $7.33 | $3.28 | $2,185,176 |
| 51004 | ROUNDUP RTU W&G KLR III RFL 1GAL/4 | $7 | 1 | $6.92 | 30.9% | $4.78 | $2.14 | $2 |
| 51003 | ROUNDUP RTU W&G KLR III WAND 1 GAL | $505 | 67 | $7.53 | 30.9% | $5.21 | $2.33 | $156 |
| 50038 | ROUNDUP RTU W&G KLR III RFL 1.25GAL | $8,423,995 | 655,708 | $12.85 | 30.9% | $8.87 | $3.97 | $2,604,671 |
| 51001 | ROUNDUP RTU W&G KLR III PNG2 1.33GAL | $7,842,612 | 434,852 | $18.04 | 30.9% | $12.46 | $5.58 | $2,424,909 |
| 52002 | ROUNDUP RTU W&G KLR III WAND 1.33GAL | $7,653,538 | 404,743 | $18.91 | 30.9% | $13.06 | $5.85 | $2,366,448 |
| 52005 | ROUNDUP RTU W&G KLR III SSWAND 1.33GAL | $8,463,258 | 381,874 | $22.16 | 30.9% | $15.31 | $6.85 | $2,616,811 |
| | Classwide | $43,066,302 | 3,235,113 | $13.31 | 30.9% | $9.20 | $4.12 | $13,315,954 |

Sources/Notes:
[a]…[d]:      MON-A00000245, MON-A00000246 and MON-A00000247.
[f]:      *See* Appendix C, *infra*. *Price Premium %* = |exp(a₅)-1|.

---

[29] MON-A00000245, MON-A00000246 and MON-A00000247.  The defendant also produced three additional data files (MON-A00000244, MON-A00000248, and MON-A00000249) containing wholesale dollar and quantity amounts specific to the State of Florida by month and year.

[30] Email from Wilkerson, J. to Wade, G.J. (July 21, 2020).

**B.     Preliminary Estimation of Class-wide Damages**

30.     Table 1 also provides the preliminary estimation of class-wide damages.  Specifically, for each basic product number shown in column [a], column [f] contains the price premium percentage estimated from the econometric model, column [g] calculates the but for price, column [h] calculates the price premium in dollar terms, and column [i] calculates product-level damages.

31.     As shown at the bottom of Table 1 (column [i]), preliminarily calculated class-wide damages equal $13,315,954.

## IV.  Conclusion

32.     Mr. Ezcurra seeks to represent a class of Florida residents who purchased Roundup Weed & Grass Killer III from February 2016 through February 2020.  As alleged, members of the proposed class overpaid for Roundup because the defendant did not disclose the product's potential carcinogenicity.  Counsel for the proposed class asked whether a method exists to assess the plaintiff's claim on a class-wide basis, assuming the plaintiff's allegations are true and defendant is found liable.

33.     In this report, I rely upon hedonic regression along with publicly available herbicide price and attribute data to calculate the price premium paid by members of the proposed class. With this method, I preliminarily find that members of the proposed class paid 31% more than they would have, had the product's potential carcinogenicity been disclosed.

34.     Relying upon retail sales data produced by the defendant, I preliminarily calculate class-wide damages using the 31% price premium.  As shown herein, preliminarily calculated class-wide damages equal $13,315,954.

35.     The opinions expressed in this report are based upon information that I have received and reviewed to date.  Should additional information become available, I reserve the right to alter these conclusions if warranted by the additional information.

_____          July 31, 2020
D.C. Sharp, Ph.D.                        _____
                                                     Date

APPENDIX A:

CURRICULUM VITAE OF D.C. SHARP, PH.D.

**D.C. Sharp, Ph.D.**
**Managing Director**
35 Union Avenue, Suite 104
Memphis, Tennessee 38103
(901) 725-6574
dcsharp@econone.com



**EDUCATION**

Ph.D., Economics, University of Memphis, 1997

M.A., Economics, University of Memphis, 1994

B.B.A., Economics, Memphis State University, 1991

**WORK EXPERIENCE**

**Full-Time Appointments**

Econ One Research, Inc., Memphis, TN
        Managing Director, 2017-Present
        Senior Economist, 2013-2016

Nathan Associates Inc., Memphis, TN
        Managing Economist & Director, Mid-South, 2006-2013

University of Southern Mississippi, Long Beach and Hattiesburg, MS
        Associate Professor of Economics (with tenure), 2006
        Assistant Professor of Economics and Business Advisory Council (BAC)
                Research Professor, 2004-2006
        Assistant Professor of Economics, 2000-2003

Nathan Associates Inc., Arlington, VA
        Managing Economist, 1998-2000
        Associate Economist, 1998

University of Memphis, Memphis, TN
        Research Associate, Sparks Bureau of Business and Economic Research (SBBER), 1997

**Part-Time/Adjunct Appointments**

University of Memphis, Memphis, TN
        Adjunct Member, Graduate Faculty, Department of Economics, 2018-2021
        Lecturer, Department of Economics, 2015
        Research Co-Mentor, Graduate Faculty, Department of Economics, 2008-2014

<u>Nathan Associates Inc.</u>, Arlington, VA
        Academic Affiliate, 2000-2006

<u>University of Southern Mississippi</u>, Long Beach and Hattiesburg, MS
        Forecaster, Gulf South Economic Research Center (GSERC), 2000-2004

<u>American University</u>, Washington, DC
        Lecturer, Department of Economics, 1998-1999

<u>Christian Brothers University</u>, Memphis, TN
        Lecturer of Economics, 1995-1997

<u>University of Memphis</u>, Memphis, TN
        Graduate Research Assistant, Sparks Bureau of Business and Economic Research
        (SBBER), 1994-1997

**COURSES TAUGHT**

| **Undergraduate** | **Graduate** |
|---|---|
| Principles of Macroeconomics | Advanced Microeconomic Theory |
| Principles of Microeconomics | Managerial Economics |
| Intermediate Microeconomics | Statistics |
| International Economics | |
| Labor Economics | |
| Legal Environment of Business | |
| Statistics | |

**MEMBERSHIPS**

    The Econometric Society
    American Economic Association
    National Association of Forensic Economics
    Southern Economic Association
    Economic Club of Memphis, 2008-2017

**VOLUNTARY**

    <u>University of Memphis</u>, Memphis, TN
        Advisory Board, Department of Economics

    <u>ECHO Foundation</u>, Memphis, TN
        Board Member

**PUBLICATIONS**

### Edited Book

Knowlton, D. S. & Sharp, D. C. (Eds.). (2003). *Problem-Based Learning for the Information Age*. San Francisco: Jossey-Bass.

### Book Chapters

Sharp, D.C. (2003). "Problem-Based Learning in an MBA Economics Course: Confessions of a First-Time User." In D. S. Knowlton & D. C. Sharp (Eds.), *Problem-Based Learning for the Information Age*. San Francisco: Jossey-Bass.

Knowlton, D.S. & Sharp, D.C. (2003). "Editor's Notes." D. S. Knowlton & D. C. Sharp (Eds.), *Problem-Based Learning for the Information Age*. San Francisco: Jossey-Bass.

Ciscel, D.H. & Sharp, D.C. (1999). "Household Labor in Hours by Family Type." In T. R. Ireland & T. O. Depperschmidt (Eds*.), Assessing Family Loss in Wrongful Death Litigation: The Special Roles of Lost Services and Personal Consumption* (pp. 194-204). Tucson, AZ: Lawyers and Judges Publishing Co, Inc. (Reprinted from *Journal of Forensic Economics, 8*(2), 115-123).

### Articles

Knowlton, D.S. (2015, July). "Students' Opinions of Instructional Strategies in a Graduate-Level Creativity Course." *International Journal for the Scholarship of Teaching and Learning*, *9*(2).

Sharp, D.C. (2015, January 12). "Improving Outlook Relative to Last Quarter, Especially Regarding the City." *Memphis Economic Indicator*, 2015:Q1.

Sharp, D.C. (2014, October 9). "Of Bulls, Bears and a Tepid (but significant) 2014:Q4." *Memphis Economic Indicator*, 2014:Q4.

Sharp, D.C. (2014, July 9). "Rising Small-Firm Confidence and Standard Economic Forecasts Predict Marginal Gains." *Memphis Economic Indicator*, 2014:Q3.

Sharp, D.C. (2014, April 16). "Logistics and Distribution Confidence Fuels Optimism for Regional Economy." *Memphis Economic Indicator*, 2014:Q2.

Song, C. & Sharp, D. (2012, July 19). "Rethinking the Unemployment Status of Job Applicants." *Law360*.

Knowlton, D.S. & Sharp, D.C. (2012). "Students' Journal Writing Practices and Opinions in a Music Methods Course." *Visions of Research in Music Education*, *22*, 1-28.

Sharp, D.C., Weiss, R.E. & Knowlton, D.S. (2005). "Applications of Generative Learning for the Survey of International Economics Course." *Journal of Economic Education, 36*(4), 345-357.

Sharp, D.C. & Zantow, K. (2005). "Attribution of Injury in the Shrimp Antidumping Case: A Simultaneous Equations Approach." *Economics Bulletin, 6*(5), 1-10.

Zantow, K., Knowlton, D.S & Sharp, D.C. (2005). "More Than Fun and Games: Reconsidering the Virtues of Strategic Management Simulations." *Academy of Management Learning and Education, 4*(4), 451-458.

Thomeczek, M.A., Knowlton, D.S. & Sharp, D.C. (2005). "Practical Advice for Supporting Learning Through the Use of Summary/Reaction Journals." *Across the Disciplines: Interdisciplinary Perspectives on Language, Learning and Academic Writing, 2*(1), 10-20.

Sharp, D.C. & Ciscel, D. H. (2004). "General Econometric Models of Housework for Husbands and Wives: An Amalgam of Ideas to Answer New Inquiries." *Journal of Forensic Economics, 17*(2), 203-221.

Sharp, D.C., Heath, J.A., Smith, W.T. & Knowlton, D.S. (2004). "But Can She Cook? Women's Education and Housework Productivity." *Economics of Education Review, 23*, 605-614.

Sharp, D.C., Jeffress, P.W. & Finnigan, S.M. (2003). "A Tool for Selecting Optimal Variable Time Lags in Regional Forecasting Models." *Applied Research in Economic Development, 1*(2), 3-11.

Sharp, D.C., Weiss, R.E. & Knowlton, D.S. (2003). "Generative Learning Strategies for the Survey of International Economics Course." *Social Science Research Network Electronic Library* (Economics Research Network) [http://ssrn.com/abstract=392860].

Knowlton, D.S. & Sharp, D.C. (2002). "Integrated Performance Reviews in the Cumulative Case Study: Promoting Continued Learning Among Students." *Journal on Excellence in College Teaching, 13*(2/3), 103-117.

Prusa, T.J. & Sharp, D.C. (2001). "Simultaneous Equations in Antidumping Investigations." *Journal of Forensic Economics, 14*(1), 63-78.

Ciscel, D.H., Sharp, D.C., & Heath, J.A. (2000). "Family Work Trends and Practices: 1971 to 1991." *Journal of Family and Economic Issues, 21*(1), 23-36.

Sharp, D.C., Ciscel, D.H., & Heath, J.A. (1999). "Back to Becker: Valuing Women's Economic Contribution from Housework with Household Production Functions." *Journal of Forensic Economics, 12*(1), 215-235.

Heath, J.A., Ciscel, D.H., & Sharp, D.C. (1998). "The Work of Families: The Provision of Market and Household Labor and the Role of Public Policy." *Review of Social Economy, 56*(1), 501-521.

Heath, J.A., Ciscel, D.H., & Sharp, D.C. (1998). "Too Many Hours-Too Little Pay: The Impact of Market and Household Hours on Women's Work Lives." *Journal of Economic Issues, 32*(2), 587-594.

Sharp, D.C. (1997). "What Concerns the Regional Experts: A Survey of Mid-South Economists." *Business Perspectives, 9*(4), 11-12.

Sharp(e), D.C. (1997). "Economic Forecasts by Industry Type: Comparisons and Statistical Tests." *Applied Economics Letters, 4*, 415-418.

Ciscel, D.H. & Sharp, D.C. (1995). "Household Labor in Hours by Family Type." *Journal of Forensic Economics, 8*(2), 115-123.

**Proceedings**

Sharp, D.C. & Finnigan, S.M. (2002). "The Lag-o-Matic: An Improved Method for Selecting the Lag Structure of Multiple Predictor Variables in the Absence of Theory." *SESUG 2002: The Proceedings of the Southeast SAS Users Group*, 355-359.

**Published Monographs & Reports**

Ciscel, D.H. & Sharp, D.C. (2018). "Economic Impact of Rhodes College."  Memphis, Tennessee: Rhodes College.

Sharp, D.C. (2002). "Forecasts of Employment for the Biloxi-Gulfport-Pascagoula MSA."  Long Beach, Mississippi: The University of Southern Mississippi, Gulf South Economic Research Center.

Sharp, D.C. (2000). "Personal Damage Basics: A Training Manual and Sourcebook for the Junior Litigation Staff of Nathan Associates Inc."  Arlington, Virginia: Nathan Associates Inc.

Ciscel, D.H., Cox, D., Gnuschke, J., Sharp, D.C. & Wallace, J. (1998). "The Economic Impact of Annexation" (Prepared for Memphis Area Chamber of Commerce). Memphis, Tennessee: The University of Memphis, Bureau of Business and Economic Research.

Sharp, D.C. (1997). *Estimating the Parameters of Household Production Functions: Valuation of Household Labor by Family Type and Race* (Doctoral dissertation, The University of Memphis, 1997). UMI Microform 9807178.


**PRESENTATIONS**

Sharp, D.C. (2016, October).  "Personal Damage Basics."  Continuing Legal Education (CLE) Course for Memphis Bar Association, Memphis TN.

Sharp, D.C. (2010, October).  "Economic Analysis of Cartels."  Presentation at the India/US Competition Laws Cartel Enforcement meetings for the Competition Commission of India, U.S. Chamber of Commerce, Washington, DC.

Ciscel, D.H. & Sharp, D.C. (2010, January). "The Single-Earner Income Personal Consumption Deduction and Human Capital Wealth." Paper presented at the meeting of the National Association of Forensic Economists, ASSA Annual Conference, Atlanta, GA.

Terry-Sharp, K.A., Bellamy, P.Y. & Sharp, D.C. (2008, November). "What Counts for Tenure – Preliminary Survey Results." Paper presented at the meetings of the American Anthropological Association, San Francisco, CA.

Sharp, D.C. (2008, June).  "Antirust Economics 101: Collusion."  Presentation at the meeting of the Women's Antitrust Plaintiffs' Attorneys (WAPA), New York, NY.

Ciscel, D.H., Sharp, D.C. & Cheng, P.Y. (2008, January). "Selling Fried Chicken: Issues of Combining Business Losses with Personal Injury – A Case Study." Paper presented at the meeting of the National Association of Forensic Economists, ASSA Annual Conference, New Orleans, LA.

Knowlton, D.S. & Sharp, D.C. (2005, April).  "Does Taking the Garbage Out Count?  The Masculine Response and the Effects of Education on the Reported Housework Hours of Husbands."  Paper presented at the 2005 College of Arts and Sciences Spring Colloquium, Southern Illinois University Edwardsville.

Sharp, D.C. & Zantow, K. (2004, October).  "Live or Limp?  The Case for Antidumping Duties on Imported Shrimp."  Paper presented at the conference Managing Globalization: The Role of Business and the State, Long Beach, Mississippi.

Zantow, K., Sharp, D.C., Knowlton, D.S., & Weiss, R.E. (2004, September).  "An Analysis of Generative Learning Opportunities in Computer Based Business Simulations."  Paper presented at the 2004 Annual Conference of the Academy of Management, New Orleans, Louisiana.

Sharp, D.C. & Ciscel, D.H. (2003, November).  "Forensic Interpolation of Household Production Data Using the 2001 PSID."  Paper presented at the 2003 Annual Conference of the Southern Economic Association, San Antonio, TX.

Sharp, D.C. (2003, February). "Determining Material Injury in Antidumping Investigations: A Simultaneous Equations Approach."  Paper presented at the Department of Economics Research Seminar Series, University of Memphis, TN.

Sharp, D.C. & Ciscel, D.H. (2002, November). "Household Labor in Hours by Family Type: 1999 PSID Data."  Paper presented at the 2002 Annual Conference of the Southern Economic Association, New Orleans, LA.

Sharp, D.C. & Knowlton, D.S. (2002, November). "On the Curious Role of Education and Housework Productivity: Evidence from Married Women."  Paper presented at the 2002 Annual Conference of the Southern Economic Association, New Orleans, LA.

Sharp, D.C. & Finnigan, S.M. (2002, September). "The Lag-o-Matic: An Improved Method for Selecting the Lag Structure of Multiple Predictor Variables in the Absence of Theory."  Paper presented at the 10th Annual Conference of the Southeast SAS Users Group, Savannah, GA.

Sharp, D.C. (2001, January). "Simultaneous Equations in Antidumping Investigations: An Application for International Trade Consulting." Paper presented at the meeting of the National Association of Forensic Economists, ASSA Annual Conference, New Orleans, LA.

Ciscel, D.H. & Sharp, D.C. (2000, January). "Hours and Income in Selected Occupations: The Experience of the Last Two Decades." Paper presented at the meeting of the National Association of Forensic Economists, ASSA Annual Conference, Boston, MA.

Ciscel, D.H., Sharp, D.C., & Heath, J.A. (1999, January). "Trends and Practices: Household Labor from 1971 to 1991." Paper presented at the meeting of the National Association of Forensic Economists, ASSA Annual Conference, New York, NY.

Sharp, D.C., Ciscel, D.H., & Heath, J.A. (1998, January). "Econometric Estimates of the Value of Household Production: Findings from 1992 PSID Data." Paper presented at the meetings of the National Association of Forensic Economists, ASSA Annual Conference, Chicago, IL.

Heath, J.A., Ciscel, D.H., & Sharp, D.C. (1998, January). "Too Many Hours - Too Little Pay: The Impact of Market and Household Hours on Women's Work Life." Paper presented at the meetings of the Association for Evolutionary Economics, ASSA Annual Conference, Chicago, IL.

Gnuschke, J., Ciscel, D.H., Wallace, J., Sharp, D.C., & Cox, D. (1997, November). "Economic Impact: Public Question 98." Paper presented to the Memphis-Area Chamber of Commerce, Memphis, TN.

Sharp, D.C. (1997, October). "Memphis in the Millennium: Economic Projections and the Shelby County Spiral." Paper presented to the Job Security Employment Commission, Memphis, TN.

Sharp, D.C. (1996, March). "A Comparison of Forecasts by Industry Type." Paper presented at the 32nd annual meeting of the Missouri Valley Economic Association, Memphis, TN.

## AWARDS AND HONORS

Business Advisory Council (BAC) Research Professor, 2004-2006, College of Business, University of Southern Mississippi.

Research, Scholarly & Creative Activity Award Nominee, Spring 2003, for "Determining Material Injury in Antidumping Investigations: A Simultaneous Equations Approach," Applied Research Category, University of Southern Mississippi.

Outstanding Faculty Award for 2001, Gulf Coast Division of Business, University of Southern Mississippi.

Beta Gamma Sigma

Omicron Delta Epsilon

## OTHER PROFESSIONAL ACTIVITIES

### Journal Referee

*Applied Economics*
*Applied Economics Letters*
*Economics of Education Review*
*Journal of Forensic Economics*

### Conference Session Chair

73rd Conference of the Southern Economic Association, San Antonio, November 2003. Session Title: NAFE #3, Estimating Losses in a Forensic Environment.

72nd Conference of the Southern Economic Association, New Orleans, November 2002. Session Title: NAFE #1, Unique Problems Faced by the Forensic Economist.

71st Annual Conference of the Southern Economic Association, Tampa, November *2001*.  Session Title: NAFE #3, New Evidence in Forensic Analysis.

**Media Appearances**

Sharp, D.C. (2007, April 27).  "Litigation Economists Offer Broad Range of Expertise, Not Just for Damage Calculation."  *The Memphis Business Journal*, p. 34.

Sheffield, C. (2006, November 17).  "Nathan Associates Opens Economic Consulting Office for Legal Community."  *The Memphis Business Journal*, p. 10 [Note: Newspaper story and interview regarding the expansion of Nathan Associates to Memphis].

Waton, M. (2004, November 15).  "Looking ahead: Economy."  *The Journal of South Mississippi Business*, p. 18 [Note: Newspaper interview regarding economic impacts of 2004 presidential election and local referendums].

Nelson, W. (Content Producer).  (2004, October 19).  "Calgary Today."  CHQR AM 770 Radio, Calgary, Alberta, Canada [Note: Live radio talk show interview with host Mike Blanchard regarding research paper "But can she cook?  Women's education and housework productivity"].

Anderson, L. (Content Producer).  (2004, October 13).  "Adler on Line."  CJOB Radio, Winnipeg, Manitoba, Canada [Note: Live radio talk show interview with host Charles Adler regarding research paper "But Can She Cook?  Women's Education and Housework Productivity"].

Owens, A.M. (2004, October 12).  "Educated Women Slower at Housework, Study Says."  *The National Post* (Canada), p. A1 [Note: Newspaper interview regarding research paper "But can she cook?  Women's education and housework productivity"].

Snyder, J.  (1996, August 23). "U of M Economist Tests Economic Forecasts." *Memphis Daily News* [Note: Newspaper interview regarding research paper "Economic Forecasts by Industry Type: Comparisons and Statistical Tests"].

**CONSULTING EXPERIENCE**

My consulting practice pertains primarily to economic, econometric, and statistical issues that arise in litigation.  My clients have included both plaintiffs and defendants in cases involving antidumping, antitrust, employment, misleading advertising, and various other commercial and personal tort claims. I have worked as a consulting economist/econometrician on over 280 cases in federal and state courts since 1998.

06/30/2020

**CONSULTING, 2015 to Present (by descending End Year)**

| Case/Project | Venue | Start Year | End Year | Client | Case Type | Role | Preliminary Work / Settlement Calculations | Reports | Affidavits & Declarations | Depositions | Trials/Hearings |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Written and Oral Testimony | | | | |
| Complete Medical Solutions, LLC v. Family Health Center | Arbitration (AAA Case No. 01-18-0003-1682) | 2020 | 2020 | Defendant | CD | Expert | | 1 | | 1 | |
| Kelli Davis v. Cox Media Group Northeast, LLC | Circuit Court of Shelby County Tennessee for the Thirtieth Judicial District at Memphis (CT-002480-17) | 2020 | 2020 | Plaintiff | CD | Expert | | 1 | | | |
| Bill Schepler and Adrian Garcia, et al. v. American Honda Motor Company, Inc. | U.S. District Court for the Central District of California (2:18-CV-6043-GW-AFM) | 2020 | 2020 | Plaintiff | Defective Product (Class) | Expert | | 1 | | 1 | |
| Ashley Elizabeth White v. Allison Greenstein Yow, D.O. | U.S. District Court for the Eastern District of Tennessee, at Knoxville (3:19-CV-00008) | 2020 | 2020 | Defendant | MM/PI | Expert | | 1 | | | |
| Jo Lane Larson v. Ricky A. Smith, M.D., et al. | Circuit Court of Shelby County Tennessee for the Thirtieth Judicial District at Memphis (CT-0722-19) | 2020 | 2020 | Defendant | MM/PI | Expert | | | | | |
| David and Angela Hill, et al. v. Christopher Edward Rickman, M.D., et al. | Circuit Court of Madison County, Tennessee for the 26th Judicial District at Jackson (C-18-203) | 2020 | 2020 | Defendant | MM/PI | Expert | | 2 | | | |
| Lena Rivers-Simpson, et al. v. Gwinnett Ladson, M.D., et al. | Circuit Court of Tennessee for the Twentieth Judicial District at Nashville (17C911) | 2020 | 2020 | Defendant | MM/PI | Expert | | | | | |
| Seth Robinson and Hayleigh Robinson, et al. v. Alim Khandekar, M.D., et al. | Circuit Court of Shelby County Tennessee for the Thirtieth Judicial District at Memphis (CT-002571-14) | 2020 | 2020 | Defendant | MM/WD | Expert | | 1 | | | |
| Randy Jefferson, Jr., et al. v. Nadine Davis, et al. | Circuit Court of Tennessee for the Twenty-Fift Judicial District at Covington (7555) | 2020 | 2020 | Plaintiff | WD | Expert | 1 | | | | |
| Phillip Evans v. Barclays Bank PLC and Others (In Re: FX UK) | Competition Appeal Tribunal, United Kingdom, Case No. 1336/7/7/19 | 2019 | 2020 | Plaintiff | Antitrust | Consultant | | | | | |
| Aberin, et al. v. American Honda Motor Company, Inc. | U.S. District Court for the Northern District of California (3:16-CV-04384-JST) | 2019 | 2020 | Plaintiff | Defective Product (Class) | Expert | | 2 | | | |
| Ohio State Troopers Association, Inc., et al. v. Point Blank Enterprises, Inc. and Miguel Porras, et al. v. Point Blank Enterprises, Inc. | U.S. District Court for the Southern District of Florida (18-CV-63130-RAR and 19-CV-61881-RAR) | 2019 | 2020 | Plaintiff | Defective Product (Class) | Expert | | 2 | | 1 | |
| Clara Finch Cruz v. Robert Wilkie, Secretary, U.S. Department of Veterans Affairs | U.S. District Court for the Western District of Tennessee, Western Division (2:18-CV-2483) | 2019 | 2020 | Defendant | ED | Expert | | 2 | | | |
| Cherry Davidson v. Arlington Community School District and, individual capacity, Superintendent Tamara Mason | U.S. District Court for the Western District of Tennessee, Western Division (2:19-CV-02101) | 2019 | 2020 | Plaintiff | ED | Expert | | 1 | | | |

| Case/Project | Venue | Start Year | End Year | Client | Case Type | Role | Preliminary Work / Settlement Calculations | Reports | Affidavits & Declarations | Depositions | Trials/Hearings |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Written and Oral Testimony | | | | |
| Melanie McCracken, et al. v. Riot Games, Inc., et al. | Superior Court of the State of California for the County of Los Angeles (18STCV03957) | 2019 | 2020 | Plaintiff | ED (Class) | Expert | 1 | | | | |
| Mary J. Beeler, Surviving Spouse of Darrell Wayne Beeler, Deceased | Circuit Court of Knox County, Tennessee (3-238-17) | 2019 | 2020 | Defendant | MM/WD | Expert | | 1 | | | |
| Michael Richards and Jill Richards et al. v. Donald A. Giamanco | U.S. District Court for the Western District of Tennessee, Western Division (2:19-CV-02109) | 2019 | 2020 | Plaintiff | WD | Expert | | 1 | | | |
| St. Charles Surgical Hospital, LLC and Center for Restorative Breast Surgery, LLC v. Louisiana Health Service & Indemnity Company d/b/a Blue Cross/Blue Shield of Louisiana, et al. | Civil District Court for the Parish of Orleans, State of Louisiana (17-1095) | 2018 | 2020 | Plaintiff | CD | Consultant | | | | | |
| Terry Hamm and Bryce Meeker On Behalf of Themselves and All Others Similarly Situated vs. Mercedes-Benz USA, LLC | U.S. District Court for the Northern District of California (5:16-CV-3370-EJD) | 2018 | 2020 | Plaintiff | Defective Product (Class) | Expert | | 1 | | | |
| Rony Elkies and Danielle Alfandry, individually and on behalf of all others situated v. Johnson & Johnson Services, Inc., et al. [Infant Tylenol] | U.S. District Court for the Central District of California (2:17-CV-7320-W-JEM) | 2018 | 2020 | Plaintiff | False Advertising (Class) | Expert | | 1 | 1 | 2 | |
| Tselanie Stovall-Mitchell v. James G. McDowell, M.D., et al. | Circuit Court of Tennessee for the Twentieth Judicial District at Nashville (17C2300) | 2018 | 2020 | Plaintiff | MM/PI | Expert | | 1 | | | |
| Joyce Rankin, et al. v. DMC-Memphis, LLC dba Delta Medical Center, et al. | Circuit Court of Shelby County Tennessee for the Thirtieth Judicial District at Memphis (CT-001693-17) | 2019 | 2019 | Defendant | MM/WD | Expert | 1 | | | | |
| Renee Downs, as administratrix of the Estate of Patricia Margaret Jones v. Glenn J. Williams, M.D., et al. | Circuit Court of Shelby County Tennessee for the Thirtieth Judicial District at Memphis (CT-001170-17) | 2019 | 2019 | Defendant | MM/WD | Expert | | 1 | | | |
| Barry Braden v. Julie Kuykendall, Administrator Ad Litem of The Estate of James Myers | Circuit Court for Anderson County, Tennessee (B8LA0052) | 2019 | 2019 | Defendant | PI | Expert | | 1 | | | |
| Wendy Nichols and James Nichols v. Kofi Manu and Uber Technologies, et al. | U.S. District Court for the Middle District of Tennessee, Nashville Division (3:18-CV-00629) | 2019 | 2019 | Defendant | PI | Expert | | 1 | | | |
| Taurus McCoy v. Kevin Davis Trucking, et al. | Circuit Court of Shelby County Tennessee for the Thirtieth Judicial District at Memphis (CT-001015-18) | 2019 | 2019 | Defendant | PI | Expert | | 1 | | | |
| Mavie Denise Youngson, et al. v. Bobo Transportation, et al. | U.S. District Court for the Eastern District of Tennessee, Chattanooga Division (1:17-CV-00069) | 2019 | 2019 | Plaintiff | PI | Expert | | 1 | | | |

06/30/2020

| Case/Project | Venue | Start Year | End Year | Client | Case Type | Role | Preliminary Work / Settlement Calculations | Reports | Affidavits & Declarations | Depositions | Trials/Hearings |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Samuel Jonathan Salada, et al. v. CoreCivic, Inc., et al. | U.S. District Court for the Middle District of Tennessee (3:18-CV-00455) | 2019 | 2019 | Defendant | WD | Expert | | 1 | | | |
| Nagel, et al. v. CNC Express, Inc. | | 2019 | 2019 | Plaintiff | WD | Expert | | 1 | | | |
| Malcolm Slade Edwards, et al. v. Elton Johnson | Circuit Court of Marshall County, Tennessee | 2019 | 2019 | Plaintiff | WD | Expert | | 1 | | | |
| Michael Robinson, et al. v. Crown Equipment Corporation, et al. | Second Judicial District Court of the State of Nevada in and for the County of Washoe (CV17-02384) | 2019 | 2019 | Plaintiff | WD | Expert | | | | 1 | 1 |
| Cheryl Latimer, Special Administrator of the Estate of Timothy Latimer, Deceased v. CSX Transportation, Inc. and Illinois Central Railroad Company | Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois (17-L-249) | 2019 | 2019 | Plaintiff | WD | Expert | 1 | | | | |
| Estate of Caymen Edwards | Private party settlement discussions | 2019 | 2019 | Plaintiff | WD | Expert | | 1 | | | |
| Sharon Bertroche, M.D., et al. v. Mercy Physican Associates, Inc. | U.S. District Court for the Northern District of Iowa (18-CV-59-CJW) | 2018 | 2019 | Plaintiff | ED (Class) | Expert | | 2 | | | 1 |
| George Stanley King v. Tennova Healthcare - Cleveland, et al. | | 2018 | 2019 | Defendant | MM/PI | Expert | | 4 | | | |
| Raven Edmonds as Spouse of Dante' Lamar Edmonds, et al. v. XPO Logistics Freight, Inc. | U.S. District Court for the Western District of Tennessee (2:17-CV-02267) | 2018 | 2019 | Plaintiff | WD | Expert | | 1 | | | |
| Estate of Rider Clemandot v. Foundations Recovery Network, et al. | Circuit Court of Shelby County Tennessee for the Thirtieth Judicial District at Memphis (CT-001015-18) | 2017 | 2019 | Plaintiff | MM/WD | Expert | | 2 | | | |
| Tonya Potthast, Individually, and in her capacity as Special Administrator of the Estate of Jayson Lee Potthast, deceased, v. Fort Smith HMA, LLC, et al. | Circuit Court of Sebastian County, Arkansas, Fort Smith District (CV-15-917-V) | 2016 | 2019 | Defendant | MM/WD | Expert | 1 | | | | |
| Leigha Woods, individually, and as mother of Dane Woods, deceased v. Toby Andrew Hampton, M.D., et al. | Circuit Court of Tennessee for the 24th Judicial District at Camden (12-CV-76) | 2016 | 2019 | Plaintiff | MM/WD | Expert | | 1 | | | 1 |
| Milton Rhea v. West Tennessee Violent Crime & Drug Task Force and Shelby County Government | U.S. District Court for the Western District of Tennessee (2:17-CV-02267) | 2018 | 2018 | Defendant | ED | Expert | | 1 | | | |
| David Spacone, individually, and on behalf of other members of the general public similarly situated v. Elmer's Products, Inc, et al. [Krazy Glue] | U.S. District Court for the Central District of California (2:17-CV-02419-AB (MRWx)) | 2018 | 2018 | Plaintiff | False Advertising (Class) | Expert | | 1 | | | |
| Estelle Shane, on behalf of herself and all others similarly situated v. Florida Bottling, Inc. [Lakewood Juices] | U.S. District Court for the Central District of California (2:17-CV-02197-) | 2018 | 2018 | Plaintiff | False Advertising (Class) | Expert | 1 | | | | |

| Case/Project | Venue | Start Year | End Year | Client | Case Type | Role | Written and Oral Testimony | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Preliminary Work / Settlement Calculations | Reports | Affidavits & Declarations | Depositions | Trials/Hearings |
| Nova Jones, et al. v. William Edward Smith, M.D., et al. | Circuit Court for Cumberland County, Tennessee (CCI-2016-CV-6084) | 2018 | 2018 | Defendant | MM/PI | Expert | | 1 | | | |
| Savannah Jones (now Holt) individually and as parent and next friend of the minor child, Leslie Holt v. David G. Nelson | Circuit Court of Pope County Arkansas (58CV-17-237) | 2018 | 2018 | Defendant | MM/PI | Expert | 1 | | | | |
| Martha P. Smith as Net of Kin to Natalie S. Smith, Deceased v. Campbell Clinic Surgery Center, LLC, et al. | Circuit Court of Shelby County Tennessee for the Thirtieth Judicial District at Memphis (CT-004640-15, Division VIII) | 2018 | 2018 | Defendant | MM/WD | Expert | | 1 | | | |
| Michael Moss, et al. v. Peter Ankrom, et al. | Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis (CT-000973-15) | 2018 | 2018 | Defendant | MM/WD | Expert | | 1 | | | |
| Cecelia M. Reid, et al. v. Baptist Memorial Hospital, et al. | Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis (CT-005082-16) | 2018 | 2018 | Defendant | MM/WD | Expert | | 1 | | | |
| Bryan Keith Wittscheck, et al. v. Alexander G. Nein, M.D., et al. | Circuit Court for Davidson County, Tennessee (15C-2720) | 2018 | 2018 | Defendant | MM/WD | Expert | | 1 | | | |
| Estate of Robert V. Dawson v. Baptist Memorial Hospital | Private party settlement discussions | 2018 | 2018 | Defendant | MM/WD | Expert | 1 | | | | |
| Jaontisha Fitts, et al. v. William R. Caldwell, M.D., et al. [re: TyShawn Lunsford] | Circuit Court for Sumner County, Tennessee () | 2018 | 2018 | Defendant | MM/WD | Expert | | 1 | | | |
| Armstrong v. Stansell Electric, et al. | Circuit Court for Davidson County, Tennessee (16C3359) | 2018 | 2018 | Defendant | PI | Expert | 1 | | | | |
| Ms. Christie Odom v. William A. Shipp and Midwest Logistics Systems LTD, LLC. | Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis () | 2018 | 2018 | Plaintiff | PI | Expert | | 1 | | | |
| Cassandra Carag; Joe Morlan; individually, and on behalf of other members of the general public similarly situated v. Barnes & Noble, Inc., et al. | Superior Court of the State of California for the County of Sacramento (34-2013-00155179) | 2018 | 2018 | Plaintiff | W&H (Class) | Expert | | | | | |
| Robert Klingler v. Can-Am West Carriers, et al. | U.S. District Court for the Eastern District of Missouri (4:16-CV-01790) | 2018 | 2018 | Defendant | WD | Expert | | 1 | | 1 | |
| Re: Anqavius Jamison and Wepfer Marine | Private party settlement discussions | 2018 | 2018 | Plaintiff | WD | Expert | | 1 | | | |
| Re: Reed Lowery | Private party settlement discussions | 2018 | 2018 | Plaintiff | WD | Expert | | 1 | | | |
| Estate of Joel Paavola | Private party settlement discussions | 2018 | 2018 | Plaintiff | WD | Expert | | 1 | | | |
| Angela Studdard, et al. v. Shelby County Tennessee, et al. [re: Eddie Studdard and Shelby Co. Sheriffs] | U.S. District Court for the Western District of Tennessee (2:17-cv-02517) | 2018 | 2018 | Plaintiff | WD | Expert | | 1 | | 1 | |

| Case/Project | Venue | Start Year | End Year | Client | Case Type | Role | Preliminary Work / Settlement Calculations | Reports | Affidavits & Declarations | Depositions | Trials/Hearings |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Tedd Kruse and Dawn Kruse, individually, and on behalf of the wrongful death beneficiaries of Madeline Kruse, deceased v. Mississippi Department of Public Safety, et al. | Circuit Court of Marshall County, Mississippi (CV2016-404) | 2018 | 2018 | Plaintiff | WD | Expert | | 1 | | | |
| Sajida Ahad, MD, on behalf of herself and all others similarly situated v. Southern Illinois School of Medicine, et al. | U.S. District Court for the Central District of Illinois, Springfield Division (15-cv-03308) | 2017 | 2018 | Plaintiff | ED (Class) | Expert | | 2 | | 1 | |
| Stephen Wilson, on behalf of a class of similarly situated individuals v. Odwalla, Inc.; The Coca-Cola Company, et al. | U.S. District Court for the Central District of California (2:17-CV-02763-DSF-FFM) | 2017 | 2018 | Plaintiff | False Advertising (Class) | Expert | | 1 | 1 | 1 | |
| Alicia Baxter, et al. v. Maury Regional Medical Center and Frank Chuck, M.D. | Circuit Court of Maury County, Tennessee, for the Twenty-Second Judicial District (3-446-15) | 2017 | 2018 | Defendant | MM/WD | Expert | | 1 | | | |
| Economic Impact of Rhodes College | Rhodes College | 2017 | 2018 | Non-litigation | Non-litigation | Co-author | | | | | |
| Re: Tanya Brookins | Private party settlement discussions | 2017 | 2018 | Plaintiff | WD | Expert | | 1 | | | |
| Gregory Prentice and Tammy Prentice, as parents and next friends of Morgan Annette Prentice v. Robert G. Hoehn, MD | Circuit Court of Shelby County, Tennessee, for the Thirtieth Judicial District at Memphis (CT-005176-14) | 2016 | 2018 | Plaintiff | MM/WD | Expert | | 3 | | 1 | |
| Cobalt International Energy, Inc., et al. v. Illinois National Insurance Company and Axis Insurance Company | U.S. District Court for the Southern District of Texas, Houston Division | 2017 | 2017 | Plaintiff | CD | Expert | | | | | |
| Damayanti Banerjee, Ph.D. v. The University of Tennessee | U.S. District Court for the the Eastern District of Tennessee, Chattanooga Division (3:17-CV-0004) | 2017 | 2017 | Plaintiff | ED | Expert | | 1 | | | |
| Harold Steele v. Union Pacific Railroad Company | U.S. District Court for the Central District of California (2:16-CV-4573) | 2017 | 2017 | Plaintiff | ED | Expert | | 1 | | 1 | |
| Marietta Couret v. BellSouth Telecommunications, LLC, et al. | U.S. District Court for the Southern District of Florida (1:16-CV-22702-JEM) | 2017 | 2017 | Plaintiff | ED | Expert | | 1 | | | |
| Shakima Randall v. BellSouth Telecommunications, LLC, et al. | U.S. District Court for the Southern District of Florida (1:16-CV-22148-DPG) | 2017 | 2017 | Plaintiff | ED | Expert | | 1 | | | |
| Danessa Valentine, et al. v. County of Los Angeles, et al. | Superior Court of the State of California, County of Los Angeles - Central Civil West (BC602184) | 2017 | 2017 | Plaintiff | ED (Class) | Expert | | 1 | | | |
| Lori D. Gordon, on behalf of herself and all others similarly situated, v. The Hain Celestial Group, Inc., et al. | U.S. District Court for the Southern District of New York (1:16-CV-06526-KBF) | 2017 | 2017 | Plaintiff | False Advertising (Class) | Expert | 1 | | | | |
| Dan Matthew Baker and D'Ann C. Baker v. Sujay Kumar Kannamangala Chandrashekar, M.D., et al. | Circuit Court of Jackson County, Arkansas, Civil Division (CV-14-139) | 2017 | 2017 | Defendant | MM/PI | Expert | 1 | | | | |

| Case/Project | Venue | Start Year | End Year | Client | Case Type | Role | Written and Oral Testimony | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Preliminary Work / Settlement Calculations | Reports | Affidavits & Declarations | Depositions | Trials/Hearings |
| Keela L. Bailey and Husband Robert S. Bailey v. Metro Knoxville HMA, LLC, Knoxville HMA Holdings, LLC, et al. | Circuit Court for Knox County, Tennessee (3-446-15) | 2017 | 2017 | Defendant | MM/PI | Expert | | 1 | | | |
| Tyler Chase Shadburn, et al. v. Gregory Fountain, M.D. and Atlanta Gwinett OB/GYN Associates, P.C. | State Court of Gwinnett County, Georgia (15 C-02623-5) | 2017 | 2017 | Defendant | MM/PI | Expert | 1 | | | | |
| Laure DiDomenico and Joey DiDomenico v. Terry Witt, M.D. and Women's Clinic | Circuit Court for Rutherford County, Tennessee at Murfreesboro (71897) | 2017 | 2017 | Defendant | MM/WD | Expert | | 1 | | | |
| Re: Gary A. Williams and St. Vincent Hospital | Private party settlement discussions | 2017 | 2017 | Defendant | MM/WD | Expert | 1 | | | | |
| William Michael Taylor, et al. v. Bobby D. Perry, M.D., et al. | Circuit Court of Pulaski County, Arkansas (60CV-16-3706) | 2017 | 2017 | Defendant | MM/WD | Expert | 1 | | | | |
| Estate of Stephanie Varner | Private party settlement discussions | 2017 | 2017 | Plaintiff | MM/WD | Expert | | 1 | | | |
| Re: Joe Murray Jones | Private party settlement discussions | 2017 | 2017 | Plaintiff | MM/WD | Expert | | 1 | | | |
| Re: Larry White | Private party settlement discussions | 2017 | 2017 | Plaintiff | MM/WD | Expert | | 1 | | | |
| Re: Krystal Hendrix | Private party settlement discussions | 2017 | 2017 | Plaintiff | MM/WD | Expert | | 1 | | | |
| Re: Cassidy McClellan | Private party settlement discussions | 2017 | 2017 | Defendant | PI | Expert | 1 | | | | |
| Steven J. Santore, et al. v. Cordova Concrete, Inc. | Circuit Court of Shelby County, Tennessee for the Thirtieth Judicial District at Memphis (CT-002966-14) | 2017 | 2017 | Defendant | PI | Expert | | 1 | | | |
| Antoine D. Boddie, et al. v. Durham School Services, L.P. and April L. Christopher | Circuit Court of Shelby County, Tennessee for the Thirtieth Judicial District at Memphis (CT-004446-16) | 2017 | 2017 | Defendant | WD | Expert | | 1 | | | |
| Mica Meyer, et al. v. Tapeswitch Corporation, et al. | U.S. District Court for the Middle District of Tennessee at Nashville (3:14-CV-01398) | 2017 | 2017 | Defendant | WD | Expert | 1 | | | | |
| Dennis Chadwick McGee, as Personal Representative/Administrator of the Estate of Dillon C. McGee, deceased v. Madison County, Tennessee, et al. | U.S. District Court for the Western District of Tennessee, Eastern Division (1:15-cv-01069) | 2017 | 2017 | Plaintiff | WD | Expert | | 2 | | | |
| Donna Clark, Personal Representative of the Estate of Gary Clark, Deceased, v. Union Pacific Railroad Company | Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois (16-L-78) | 2017 | 2017 | Plaintiff | WD | Expert | | 1 | | | |
| Mary Elizabeth Butler, et al., v Schwerman Trucking Co., et al. | Private party settlement discussions | 2017 | 2017 | Plaintiff | WD | Expert | | 1 | | | |

06/30/2020

| Case/Project | Venue | Start Year | End Year | Client | Case Type | Role | Preliminary Work / Settlement Calculations | Reports | Affidavits & Declarations | Depositions | Trials/Hearings |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | **Written and Oral Testimony** | | | | |
| Re: Christopher Higginbottom and Fed Ex | Private party settlement discussions | 2017 | 2017 | Plaintiff | WD | Expert | | 1 | | | |
| Re: Estate of Terrell Wilkins v. Summit Park Apartments | Private party settlement discussions | 2017 | 2017 | Plaintiff | WD | Expert | | 1 | | | |
| Re: Paisley Ann Kowalski | Private party settlement discussions | 2017 | 2017 | Plaintiff | WD | Expert | | 1 | | | |
| Re: Shantana Sanders | Private party settlement discussions | 2017 | 2017 | Plaintiff | WD | Expert | | 1 | | | |
| Sandi Dawn Cunningham, et al. (Cox and Isabell) v. Bryan Truck Line, Inc., et al. | Circuit Court for Dickson County, Tennessee at Charlotte (22CC-2017-CV-80) | 2017 | 2017 | Plaintiff | WD | Expert | | 1 | | | |
| Stephen Howard Cooper, et al. v. Randy Lee Cook, et al. [re: Sara Cooper] | U.S. District Court for the Western District of Tennessee, Eastern Division (1:17-CV-01032) | 2017 | 2017 | Plaintiff | WD | Expert | | 1 | | | |
| Merced Irrigation District, on behalf of itself and all others similarly situated v. Barclays Bank PLC | U.S. District Court for the Southern District of New York | 2016 | 2017 | Plaintiff | Antitrust | Consultant | | | | | |
| Aaron Senne, et al. Individually and on Behalf of All Those Similarly Situated v. Office of the Commissioner of Baseball, dba Major League Baseball, et al. | U.S. District Court for the Northern District of California, San Francisco Division (3:14-cv-00608-JCS) | 2016 | 2017 | Plaintiff | W&H (Class) | Consultant | | | | | |
| Re: Sara Shineflew as next of kin to Jared Shineflew v. John and Sara Nelson | Private party settlement discussions | 2016 | 2017 | Plaintiff | WD | Expert | 1 | | | | |
| Edith Momodu v. Robert McDonald, Secretary, Department of Veterans Affairs | U.S. Equal Employment Opportunity Commission, Memphis District Office (490-2015-00036X) | 2015 | 2017 | Plaintiff | ED | Expert | | 2 | | | |
| Barbara Currie, surviving spouse of Edwin R. Currie, Deceased v. Baptist Memorial Hospital | Circuit Court of Shelby County, Tennessee for the Thirtieth Judicial District at Memphis (CT-001704-12) | 2015 | 2017 | Plaintiff | MM/WD | Expert | | 2 | | | |
| Lethice Walker, in her representative capacity of the Estate of Shanta Shanae Walker, et al. v. Jackson-Madison County General Hospital District et al. | Circuit Court of Tennessee for the Twenty-Sixth Judicial District at Jackson (C-13-185 Div III) | 2015 | 2017 | Plaintiff | MM/WD | Expert | | 2 | | 1 | |
| Geneva Hill, as Special Administrator of the Estate of Cedric Hill, deceased vs. Country Club Development, LLC, et al. | Circuit Court of Pulaski County, Arkansas (60CV-12-5795) | 2015 | 2017 | Defendant | WD | Expert | | 1 | | | |
| Gillis M. DeWitt v. Yuenn-Yee Fong, D.O., et al. | Circuit Court of Shelby County, Tennessee for the Thirtieth Judicial District at Memphis (CT-003556-08) | 2009 | 2017 | Plaintiff | MM/WD | Expert | | 8 | | 2 | 2 |

| Case/Project | Venue | Start Year | End Year | Client | Case Type | Role | Preliminary Work / Settlement Calculations | Reports | Affidavits & Declarations | Depositions | Trials/Hearings |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | **Written and Oral Testimony** | | | | |
| Omega Hospital LLC v. Louisiana Health Service & Indemnity Company dba Blue Cross/Blue Shield of Louisiana, et al. | 24th Judicial District Court for the Parish of Jefferson, State of Louisiana (No. 694-501, Div C.) | 2016 | 2016 | Plaintiff | CD | Consultant | | | | | |
| Angela Hernandez v. Pacific Bell Telephone Company, et al. | Superior Court of the State of California, County of San Diego (37-2014-00014271-CU-WT-CTL) | 2016 | 2016 | Plaintiff | ED | Expert | | | 1 | 1 | 1 |
| Jinette Hidalgo, et al. v. Johnson & Johnson Consumer Companies, Inc. | U.S. District Court for the Southern District of New York (1:15-CV-05199-SAS) | 2016 | 2016 | Plaintiff | False Advertising (Class) | Expert | | | | | |
| Charles L. Russell v. McNairy Hospital Corporation, et al. | Circuit Court of McNairy County, Tennessee (2013-cv18) | 2016 | 2016 | Defendant | MM/PI | Expert | | 1 | | | |
| Teresa Barton, Mother and Administrator of the Estate of Amanda Marie Holcomb, deceased, v. State of Tennessee | Tennessee Department of Treasury, Division of Claims Administration (T20141027) | 2016 | 2016 | Claimant | MM/WD | Expert | | 1 | | | |
| Josh Long v. United States Postal Service | U.S District Court for the Western District of Tennessee, Eastern Division (1:15-cv-01296) | 2016 | 2016 | Defendant | PI | Expert | | 1 | | | |
| Paul B. Dunn, et al. v. Ashburn Freight, et al. | U.S. District Court for the Western District of Tennessee, Eastern Division (1:15-cv-01088-JDB-egb) | 2016 | 2016 | Defendant | PI | Expert | | 1 | | | |
| Vincent E. Nelson, et al. v. Ashburn Freight, et al. | U.S. District Court for the Western District of Tennessee, Eastern Division (1:15-cv-01089-JDB-egb) | 2016 | 2016 | Defendant | PI | Expert | | 1 | | | |
| Martin Medina Hernandez, et al. v. Rafael Ramirez, et al. | Circuit Court of Shelby County, Tennessee, for the Thirtieth Judicial District at Memphis (CT-004819-14, Div VI) | 2016 | 2016 | Plaintiff | PI | Expert | | 1 | | | |
| Re: Cayden Leone | Private party settlement negotiation | 2016 | 2016 | Plaintiff | PI | Expert | 1 | | | | |
| Michael J. Roberts, deceased by his widow Rhonda Roberts on his behalf and individually v. Juanita Mitchell | Circuit Court of Shelby County, Tennessee, for the Thirtieth Judicial District at Memphis (CT-004562-13) | 2016 | 2016 | Defendant | WD | Expert | | 1 | | | |
| Debbie A. Weeks individually and as Administratrix of the Estate of Charles G. Weeks, deceased, v. William Hancock and Noel Wilborn, et al. | Circuit Court of Shelby County, Tennessee, for the Thirtieth Judicial District at Memphis (CT-005385-14) | 2016 | 2016 | Plaintiff | WD | Expert | | 1 | | | |
| Re: Andrew Cicalla | Private party settlement negotiation | 2016 | 2016 | Plaintiff | WD | Expert | | 1 | | | |
| Equal Employment Opportunity Commission (EEOC) v. Resource Employment Solutions, LLC | U.S. District Court for the Northern District of Mississippi, Oxford Division (3:14-CV-217-MPM-SAA) | 2015 | 2016 | Plaintiff | ED (Class) | Expert | | 1 | 1 | 1 | |

| Case/Project | Venue | Start Year | End Year | Client | Case Type | Role | Preliminary Work / Settlement Calculations | Reports | Affidavits & Declarations | Depositions | Trials/Hearings |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *Regina Starnes and Michael Starnes v. Baptist Memorial Hospital-Tipton et al.* | Circuit Court of Tipton County, Tennessee (6373) | 2015 | 2016 | Plaintiff | MM/PI | Expert | | 1 | | 1 | |
| *Ashley Darling, et al. v. United States of America* | U.S. District Court for the Western District of Tennessee, Western Division (2:15-CV-02429) | 2015 | 2016 | Defendant | MM/WD | Expert | | 2 | | | |
| *Jacqueline Carson, Individually, and on Behalf of her Deceased Husband, Roy G. Carson, and All Other Wrongful Death Beneficiaries v. United States of America* | U.S. District Court for the Western District of Tennessee, Western Division (2:15-CV-02314) | 2015 | 2016 | Defendant | MM/WD | Expert | | | | | |
| *Gary Linfoot, Wife Mary Linfoot and Gregory Cooper v. McDonnell Douglas Helicopter Company, and DynCorp International, LLC, et al.* | U.S. District Court for the Middle District of Tennessee (3:09CV639) | 2015 | 2016 | Defendant | PI | Expert | | 1 | | 1 | |
| In Re: Rail Freight Fuel Surcharge Antitrust Litigation | U.S. District Court for the District of Columbia (1:07-mc-00489-PLF) | 2014 | 2016 | Plaintiff | Antitrust | Consultant | | | | | |
| Re: Claims of overcharge involving European MasterCard fees | Private party settlement discussions within the European Union | 2013 | 2016 | Claimant | Antitrust | Consultant | | | | | |
| *Cheryl Hall, Surviving Spouse and Next of Kin of Mark Hall, et al. v. James H. Crenshaw, MD, The Jackson Clinic, and Vanderbilt Heart and Vascular Institute, et al.* | Circuit Court of Madison County, Tennessee for the 26th Judicial District at Jackson (C-11-134) | 2013 | 2016 | Plaintiff | MM/WD | Expert | | 2 | | 1 | 1 |
| *Harold B. Davis v. Wilson County, Tennessee* | U.S. District Court for the Middle District of Tennessee, Nashville Division (3:13-0238) | 2015 | 2015 | Plaintiff | ED | Expert | | 1 | | 1 | |
| *Jerry Summers v. Baylor Regional Medical Center at Plano and Christopher Duntsch, M.D.* | U.S. District Court for the Northern District of Texas (3:14-CV-01362-D) | 2015 | 2015 | Plaintiff | MM/PI | Expert | | 1 | | | |
| *Billy Troutt, individually and as Surviving Spouse and Personal Representative/Executor of the Estate of JANIE RIKE, deceased v. McKnight Clinic, PLLC et al.* | Circuit Court of Fayette County, Tennessee (14-CV-34) | 2015 | 2015 | Plaintiff | MM/WD | Expert | | 1 | | | |
| *Christopher F. McCulley and Catherine L. McCulley, as Next Friends and Parents of Jax Christopher McCulley, et al.* | Circuit Court of Shelby County, Tennessee for the Thirtieth Judicial District at Memphis (CT-003205-15) | 2015 | 2015 | Plaintiff | MM/WD | Expert | | 1 | | | |
| *Rhonda Gladney and Thomas Gladney v. New Prospect Baptist Church, Inc., et al.* | Circuit Court of DeSoto County, Mississippi (CV2012-115GCD) | 2015 | 2015 | Plaintiff | PI | Expert | | 1 | | | |
| *Chris Warren, et al. v. JBT Aerotech, et al. [re: Chandler Warren]* | Circuit Court of Shelby County, Tennessee, for the Thirtieth Judicial District at Memphis (CT-002725-15) | 2015 | 2015 | Plaintiff | WD | Expert | | 1 | | | |
| *Gwyneth B. Kerr, surviving spouse of Ronald Walter Kerr, Deceased v. Hillard Ellis Holt and Sally D. Holt* | Circuit Court of Williamson County, Tennessee at Franklin (CT-2015-293) | 2015 | 2015 | Plaintiff | WD | Expert | | 1 | | | |

| Case/Project | Venue | Start Year | End Year | Client | Case Type | Role | Preliminary Work / Settlement Calculations | Reports | Affidavits & Declarations | Depositions | Trials/Hearings |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *Re: Michelle Sloyan* | Private party settlement discussions within Tennessee | 2015 | 2015 | Plaintiff | WD | Expert | 1 | | | | |
| *Moulham Alhinawi v. Dearman Oil Company* | Private party settlement discussions within Mississippi | 2014 | 2015 | Plaintiff | CD | Expert | | 1 | | | |
| *Equal Employment Opportunity Commission (EEOC) v. SVT, LLC., d/b/a Ultra Foods* | U.S. District Court for the Northern District of Indiana, Hammond Division (2:13-CV-00245) | 2014 | 2015 | Plaintiff | ED (Class) | Expert | | 1 | | | |
| *Garcia, Eggnatz and Martin et al v. Kashi Company* | U.S. District Court for the Southern District of Florida, Miami Division (1:12-cv-21678) | 2014 | 2015 | Plaintiff | False Advertising (Class) | Expert | | 2 | | | |
| *Robert McCrary, individually and on behalf of all others similarly situated v. The Elations Company, LLC., et al.* | U.S. District Court for the Central District of California (ED CV 13-00242 JGB (OPx)) | 2014 | 2015 | Plaintiff | False Advertising (Class) | Expert | | 2 | 1 | 2 | |
| *Amanda Kay (Laden) Webb, as Executrix of the Estate of Danny Laden, et al. v. Department of Veterans Affairs, et al.* | U.S. District Court for the Western District of Tennessee, Western Division (2:13-CV-02721) | 2014 | 2015 | Defendant | MM/WD | Expert | | 2 | | | |
| *Lucille Mack Catron and Melana Mack, et al. v. United States of America* | U.S. District Court for the Western District of Tennessee, Western Division (2:12-cv-03095) | 2014 | 2015 | Plaintiff | MM/WD | Expert | | 1 | | | |
| Memphis Economic Indicator | Dixon Hughes Goodman, LLP and The Daily News (www.memphiseconomicindicator.com) | 2014 | 2015 | Non-litigation | Non-litigation | Author, Analyst (quarterly reports) | | | | | |
| *Cooper v. Illinois Central Railroad* | Circuit Court of Stoddard County, Missouri (12SD-CC00110) | 2014 | 2015 | Plaintiff | WD | Expert | | 1 | 1 | 1 | |
| *Major Mart, Inc. v. Mitchell Distributing Company, Inc. and Mitchell Beverage, LLC* | U.S. District Court for the Southern District of Mississippi, Eastern Division (4:11cv155) | 2013 | 2015 | Plaintiff | Antitrust | Expert | | 5 | | 1 | 1 |
| *Margaret Boaz vs. FedEx Corporation and FedEx Customer Information Services, Inc.* | U.S. District Court for the Western District of Tennessee, Western Division (2:09-CV-02232) | 2009 | 2015 | Plaintiff | ED | Expert | | 2 | | 1 | |

06/30/2020

| Case/Project | Venue | Start Year | End Year | Client | Case Type | Role | Written and Oral Testimony | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Preliminary Work / Settlement Calculations | Reports | Affidavits & Declarations | Depositions | Trials/Hearings |

| | Category | Totals - Since 2015 | | Totals - Overall | |
|---|---|---|---|---|---|
| | | Number | Percentage | Number | Percentage |
| **Project Type** | Litigation | 140 | 99% | 289 | 97% |
| | Non-litigation | 2 | 1% | 9 | 3% |
| | Total Projects | 142 | 100% | 298 | 100% |
| **Litigation Type** | Antitrust | 5 | 4% | 29 | 10% |
| | ED | 17 | 12% | 40 | 14% |
| | CD | 6 | 4% | 18 | 6% |
| | MM/PI | 14 | 10% | 25 | 9% |
| | MM/WD | 33 | 24% | 59 | 20% |
| | PI | 15 | 11% | 40 | 14% |
| | WD | 36 | 26% | 53 | 18% |
| | Other | 14 | 10% | 25 | 9% |
| **Role** | Expert | 133 | 95% | 240 | 83% |
| | Other | 7 | 5% | 49 | 17% |
| **Party** | Plaintiff/Claimant | 94 | 67% | 187 | 65% |
| | Defendant/Respondent | 46 | 33% | 102 | 35% |
| **Reports & Testimony** | Litigation Reports | 140 | | 205 | |
| | Affidavits & Declarations | 6 | | 17 | |
| | Depositions | 26 | | 44 | |
| | Hearings & Trials | 7 | | 20 | |

06/30/2020

**APPENDIX B:**

**DOCUMENTS CONSIDERED**

**APPENDIX B: DOCUMENTS CONSIDERED**

2020-05-13: Second Amended Complaint for Injunctive and Declaratory Relief (May 13, 2020), *Julio Ezcurra v. Bayer AG and Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

2020-06-30: Order on Joint Motion for Entry of Stipulated Pro (June 30, 2020), *Julio Ezcurra v. Bayer AG and Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

2020-07-02: Plaintiff Julio Ezcurra's Responses and Objections to Defendant Monsanto Company's First Set of Requests for Production (July 2, 2020), *Julio Ezcurra v. Bayer AG and Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

2020-07-02: Plaintiff Julio Ezcurra's Responses and Objections to Defendant Monsanto Company's First Set of Interrogatories (July 2, 2020), *Julio Ezcurra v. Bayer AG and Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

2020-07-08, Doc 45: Plaintiff's Rule 41(A)(i) Notice of Voluntary Dismissal Without Prejudice of Defendant, Bayer AG (July 8, 2020), *Julio Ezcurra v. Bayer AG and Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

2020-07-08: Documents Responsive to Monsanto Company's First Set of Requests for Production [0000000001-0000000004] (July 8, 2020), *Julio Ezcurra v. Bayer AG and Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

2020-07-16: Defendant Monsanto Company's Objections and Answers to Plaintiff's Special Interrogatories to Defendant Monsanto Company (Set Two) (July 16, 2020), *Julio Ezcurra v. Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

2020-07-16: Defendant Monsanto Company's Objections and Responses to Plaintiff's Requests for Production to Defendant Monsanto Company (Set Two) (July 16, 2020), *Julio Ezcurra v. Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

2020-07-21: Transcript of Motion Hearing (July 21, 2020), *Julio Ezcurra v. Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

2020-07-28, Doc 56: Plaintiff's Response to the Court's Order Requiring Supplemental Briefing (July 28, 2020), *Julio Ezcurra v. Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

2020-07-28, Doc 56-1: Declaration of Gillian L. Wade in Support of Plaintiff's Response to the Court's Order Requiring Supplemental Briefing (July 28, 2020), *Julio Ezcurra v. Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

2020-07-30, Doc 58: Plaintiff's Motion for Leave to Amend Second Amended Complaint and File Third Amended Complaint (July 30, 2020), *Julio Ezcurra v. Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

B-1

2020-07-30, Doc 58-1: Declaration of Sara D. Avila in Support of Plaintiff's Motion for Leave to Amend Second Amended Complaint and File Third Amended Complaint (July 30, 2020), *Julio Ezcurra v. Monsanto Company*, U.S. District Court for the Southern District of Florida (9:20-CV-80524).

Bailey, M.J., Muth, R.F., & Nourse, H.D. (1963), A Regression Method for Real Estate Price Index Construction, *Journal of the American Statistical Association*, *58*.

Beach, E.D. and Carlson, G.A. (1993), A Hedonic Analysis of Herbicides: Do User Safety and Water Quality Matter?  *American Journal of Agricultural Economics, 75*(3).

Boyd, C. (2014), *Check Out the New Herbicide Indaziflam*, Chem Service, Inc. (retrieved July 25, 2020 from https://www.chemservice.com/news/2014/09/check-out-the-new-herbicide-indaziflam/).

Dhrymes, P.J. (1967), On the Measurement of Price and Quality Changes in Some Consumer Capital Goods, *The American Economic Review*, *57*.

E1-000001 – E1-002122.

Email from Wilkerson, J. to Wade, G.J. (July 21, 2020).

Fernandez-Cornejo, J. and Jans, S. (1995), Quality-Adjusted Price and Quantity Indices for Pesticides, *American Journal of Agricultural Economics, 77*(3).

Fetting, L.P. (1963), Adjusting Farm Tractor Prices for Quality Changes, 1950-1962, *Journal of Farm Economics*, *45*.

Fisher, F.M., Griliches, Z., & Kaysen, C. (1962), The Costs of Automobile Model Changes Since 1949, *Journal of Political Economy*, *70*.

Glover, A.E. (1997), *Non-Selective Weed Control in Non-Crop Areas*, College of Agricultural Sciences, Pennsylvania State University (retrieved July 25, 2020 from https://plantscience.psu.edu/research/projects/vegetative-management/publications/other-publications/non-selective-weed-control-in-non-crop-areas).

Glover, A.E. (2000), *Uses and Characteristics of Herbicides for Non-Crop Weed Control*, College of Agricultural Sciences, Pennsylvania State University (retrieved July 30, 2020 from https://plantscience.psu.edu/research/projects/vegetative-management/publications/other-publications/use-and-characteristics-of-herbicides-for-non-crop-weed-control).

Griliches, Z. (1961), Hedonic Price Indexes for Automobiles: An Econometric Analysis of Quality Change, in *The Price Statistics of the Federal Government*, General Series, No. 73 (New York: National Bureau of Economic Research).

Griliches, Z. (1991), Hedonic Price Indexes and the Measurement of Capital and Productivity: Some Historical Reflections, *Fifty Years of Economic Measurement: The Jubilee of the Conference on Research in Income and Wealth* (Berndt, E.R., and Triplett, J.E., EDs), University of Chicago Press.

Ladd, G.W. & Suvannunt, V. (1976), A Model of Consumer Goods Characteristics, *American Journal of Agricultural Economics*, *58*.

Li, J. & Hooker, N.H. (2009), Documenting Food Safety Claims and Their Influence on Product Prices, *Agricultural and Resource Economics Review*, *38*(3).

Michael, V. and Dillon, C.R. (2010), A Hedonic Analysis of Corn and Soybean Herbicides, Paper presented at the 120th Meeting of the European Association of Agricultural Economists (EAAE), Crete, Greece (retrieved May 31, 2020 from http://ageconsearch.umn.edu/record/109419/files /Vassalos_Dillon.pdf).

MON-A00000008 – MON-A00002141.

Monson, M. (2009), Valuation Using Hedonic Pricing Models, *Cornell Real Estate Review, 7*.

Musgrave, J.C. (1969), The Measurement of Price Changes in Construction, *Journal of the American Statistical Association, 64*.

National Pesticide Information Center (2008), Topic Fact Sheet: Signal Words (retrieved July 29, 2020 from http://npic.orst.edu/factsheets/signalwords.pdf).

Organic Materials Review Institute (OMRI) (website accessed July 30, 2020 at https://www.omri.org/).

Rubinfeld, D.L. (2011), Reference Guide on Multiple Regression, in *Reference Manual on Scientific Evidence*, *Third Edition,* National Academies Press.

Satimanon, T. & Weatherspoon, D.D. (2010), Hedonic Analysis of Sustainable Food Products, *International Food and Agribusiness Management Review*, *13*(4).

Shaffer, G. (2019), *Organic Herbicides*, South Dakota State University Extension (retrieved July 30, 2020 from https://extension.sdstate.edu/organic-herbicides).

Triplett, J.E. (1963), Automobiles and Hedonic Quality Measurement, *Journal of Political Economy*, *71.*

U.S. Bureau of Labor Statistics (2014), *Frequently Asked Questions about Hedonic Quality Adjustment in the CPI* (retrieved October 28, 2014 from http://www.bls.gov/cpi/cpihqaqanda.htm).

U.S. Environmental Protection Agency, Office of Pesticide Programs (2018), *Chemicals Evaluated for Carcinogenic Potential* (retrieved June 1, 2020 from http://npic.orst.edu/chemicals_evaluated .pdf).

U.S. Environmental Protection Agency, Office of Pesticide Programs (2001), *Acetic Acid (044001) Fact Sheet* (retrieved July 30, 2020 from https://www3.epa.gov/pesticides/chem_search/reg_actions /registration/fs_PC-044001_01-Mar-01.pdf).

U.S. Environmental Protection Agency, Office of Safety and Pollution Prevention (2015), *Active Ingredients Eligible for Minimum Risk Pesticide Products* (retrieved July 30, 2020 from https://www.epa.gov/sites /production/files/2018-01/documents/minrisk-active-ingredients-tolerances-jan-2018.pdf).

U.S. Environmental Protection Agency, Prevention, Pesticides and Toxic Substances (2008*), Caprylic (Octanoic) Acid Final Work Plan and Proposed Registration Review Final Decision* (retrieved July 30, 2020 from https://beta.regulations.gov/document/EPA-HQ-OPP-2008-0477-0005).

U.S. Environmental Protection Agency, Prevention, Pesticides and Toxic Substances (1994), R.E.D. Facts: Limonene (retrieved July 30, 2020 from https://www3.epa.gov/pesticides/chem_search /reg_actions/reregistration/fs_PC-079701_1-Sep-94.pdf).

Wallace, V. and Siegel-Miles, A. (2018), *Minimum Risk Herbicides for Use on School Grounds*, College of Agriculture, Health and Natural Resources, University of Connecticut (retrieved July 30, 2020 from http://ipm.uconn.edu/documents/raw2/1444/MinimumRiskHerbicidesforSchoolGrounds Managers.pdf).

Wilen, C.A. (2011), *Natural Herbicides: Are The Effective?* Integrated Pest Management Program, University of California, Davis (retrieved July 30, 2020 from http://mgorange.ucanr.edu/files /161478.pdf).

Xiao, J. (2012), *A Hedonic Analysis of Retail Milk and Oatmeal Attributes in Quebec*, [Thesis] Department of Agricultural Economics, McGill University.

**APPENDIX C:**

**REGRESSION OUTPUT**

**Appendix C. Hedonic Regression Results**
Dependent Variable = Price Per Square Foot (Logged)

| Variable/Label | Coefficient | Robust Standard Error | t-Value | Prob. > |t| | Significance Level |
|---|---|---|---|---|---|
| Constant | -5.6141 | 0.7726 | -7.2661 | 0.0000 | *** |
| Ounces (logged) | -0.4734 | 0.0630 | -7.5103 | 0.0000 | *** |
| Percent Active | -1.5926 | 0.9805 | -1.6244 | 0.1056 | |
| *Interaction:* | | | | | |
| *Ounces (logged) # Percent Active* | 0.4178 | 0.1751 | 2.3857 | 0.0178 | * |
| Number of Active Ingredients | 0.4263 | 0.1043 | 4.0872 | 0.0001 | *** |
| Number of Carcinogen Positive AIs | -0.3699 | 0.0976 | -3.7903 | 0.0002 | *** |
| **Application:** | | | | | |
| Needs Water Added | 0.0000 | *Reference Group* | | | |
| Power Spray | 2.3001 | 0.1189 | 19.3464 | 0.0000 | *** |
| Pump | 2.0907 | 0.1473 | 14.1902 | 0.0000 | *** |
| Refill | 1.9767 | 0.1391 | 14.2108 | 0.0000 | *** |
| Trigger | 1.9783 | 0.1137 | 17.3919 | 0.0000 | *** |
| **Brand** | | | | | |
| Ace | 0.0000 | *Reference Group* | | | |
| Avenger | 1.4386 | 0.5647 | 2.5478 | 0.0115 | * |
| BioAdvanced | -0.2325 | 0.2560 | -0.9083 | 0.3647 | |
| Bonide | 0.3605 | 0.4387 | 0.8218 | 0.4120 | |
| Brushtox | -1.8648 | 0.2798 | -6.6650 | 0.0000 | *** |
| Compare-N-Save | -1.0724 | 0.3081 | -3.4808 | 0.0006 | *** |
| Dr. Earth | 0.8272 | 0.3826 | 2.1620 | 0.0316 | * |
| Earth's Ally | 1.7118 | 0.2666 | 6.4205 | 0.0000 | *** |
| FarmWorks | -1.0282 | 0.3274 | -3.1408 | 0.0019 | ** |
| Gordon's | -0.1301 | 0.4573 | -0.2846 | 0.7762 | |
| Green Gobbler | -0.1828 | 0.3725 | -0.4907 | 0.6241 | |
| GroundWork | -0.2915 | 0.2571 | -1.1336 | 0.2581 | |
| Harris | -0.2601 | 0.3192 | -0.8149 | 0.4160 | |
| Hi-Yield | -0.2342 | 0.3083 | -0.7596 | 0.4482 | |
| Image | 0.1883 | 0.3211 | 0.5863 | 0.5583 | |
| KnockOut | -0.2563 | 0.2994 | -0.8558 | 0.3930 | |
| Martin's | -0.5214 | 0.2589 | -2.0144 | 0.0451 | * |
| Monterey | -0.1790 | 0.2554 | -0.7008 | 0.4841 | |
| Natria | 0.1970 | 0.2118 | 0.9301 | 0.3533 | |
| Ortho | 0.8969 | 0.2740 | 3.2730 | 0.0012 | ** |
| Preen | -0.0979 | 0.3286 | -0.2980 | 0.7660 | |
| Pulverize | 2.0283 | 0.3004 | 6.7517 | 0.0000 | *** |
| RM | -0.4638 | 0.2667 | -1.7390 | 0.0834 | |
| Roundup | 0.3779 | 0.2109 | 1.7918 | 0.0745 | |
| Safer | 0.4654 | 0.4237 | 1.0984 | 0.2731 | |
| Scotts | -1.1330 | 0.3272 | -3.4630 | 0.0006 | *** |
| Southern Ag | -0.3205 | 0.2692 | -1.1906 | 0.2350 | |
| Spectrum | -0.2892 | 0.2137 | -1.3533 | 0.1773 | |
| Weed Pharm | -0.2198 | 0.3583 | -0.6134 | 0.5402 | |
| **Emergence** | | | | | |
| Post | 0.0000 | *Reference Group* | | | |
| Pre | 3.8681 | 0.4980 | 7.7677 | 0.0000 | *** |
| Pre and Post | 0.2706 | 0.1708 | 1.5843 | 0.1145 | |
| **Form** | | | | | |
| Granular | 0.0000 | *Reference Group* | | | |
| Liquid | 1.4517 | 0.3874 | 3.7469 | 0.0002 | *** |
| **OMRI Listed** | | | | | |
| No | 0.0000 | *Reference Group* | | | |
| Yes | 0.3961 | 0.1973 | 2.0075 | 0.0458 | * |
| **Signal** | | | | | |
| Caution | 0.0000 | *Reference Group* | | | |
| Danger | 0.1951 | 0.2122 | 0.9197 | 0.3587 | |
| Warning | 0.0095 | 0.1358 | 0.0700 | 0.9442 | |
| **Vendor** | | | | | |
| Ace | 0.0000 | *Reference Group* | | | |
| HD | 0.0907 | 0.0772 | 1.1752 | 0.2411 | |
| Lowe's | 0.0526 | 0.0772 | 0.6808 | 0.4967 | |
| TSC | 0.1644 | 0.0868 | 1.8932 | 0.0596 | |
| **R-squared** | 0.9134 | | | | |
| **Adjusted R-squared** | 0.8964 | | | | |
| **Number of obs** | 282.0000 | | | | |

*** significant at α = 0.001; ** significant at α = 0.01; * significant at α = 0.05.

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SCOTT GILMORE, et al. )
)
          Plaintiff, )
)
   v. )      C.A. No. 20-1085-MN
)
MONSANTO COMPANY, )
)
          Defendant. )

## DECLARATION OF UNITED STATES MAGISTRATE JUDGE DIANE WELSH (RET.) REGARDING CLASS-ACTION SETTLEMENT

1.     I am a mediator affiliated with JAMS, a provider of Alternative Dispute Resolution services.

2.     I served as a United States Magistrate Judge in the United States District Court for the Eastern District of Pennsylvania from 1994 through 2005. For ten of those years, I also served on the Alternative Dispute Resolution committee for the United States District Court for the Eastern District of Pennsylvania, drafting local federal court rules for court-annexed mediation programs.

3.     I have extensive experience mediating a wide variety of class actions, including consumer and mass torts class actions. I have mediated over 5,000 cases, covering a wide variety of disputes. Among other awards and accolades for my mediation work, I was recognized as a 2016 to 2018 "ADR Champion" by the *National Law Journal*; was voted "Best ADR Individual" by the readers of ALM's *Legal Intelligencer* from 2007 to 2016; and was recognized as 2014 Mediation "Lawyer of the Year" for Philadelphia and a 2007 to 2020 Best Lawyer in the Alternative Dispute Resolution Category by *Best Lawyers in America*.

4.     The parties jointly retained me to mediate in *Gilmore v. Monsanto Co.*, 1:20-cv-01085-MN (D. Del.) on September 24, 2020.  The purpose of the mediation was to work with the parties to explore whether they could reach a settlement of the *Gilmore* matter based on a joint and separate evaluation of the risks and costs each side faced with continued litigation.  In addition to the *Gilmore* matter, the parties agreed that the mediation and pre-mediation materials would attempt to reach a nationwide settlement of all of Class Counsel's and Plaintiffs' Counsel's pending or anticipated class actions against Monsanto and retailers of Roundup® products relating to the issues set forth in the *Gilmore* Complaint.  The mediation process was confidential, but both parties have authorized me to inform the court of the matters presented in this declaration.

5.     After preliminary discussion with counsel for the parties, the parties and I agreed to a mediation schedule that included pre-mediation briefing by the parties—both confidential and non-confidential—and a video-conference mediation scheduled for February 16, 2021.  Prior to the mediation session, the parties provided me with their detailed pre-mediation submissions, some of which were shared between the parties and some of which were shared only with me, which included hundreds of pages of exhibits and extensive briefing on the parties' positions on liability, defenses, and damages; relevant case law; the likelihood of class certification; and the history of related actions that informed the course of the litigation.

6.     Following the submission of the parties' briefs and pre-mediation calls with the respective parties, I supervised a video-conference mediation session on February 16, 2021 lasting more than fourteen hours.  Plaintiff was represented by Gillian L. Wade, Sara D. Avila, and Marc A. Castaneda of Milstein, Jackson, Fairchild & Wade, LLP, and Joel Oster of the Law Offices of Howard Rubinstein.  Monsanto was represented by John J. Rosenthal and Jeff

Wilkerson of Winston & Strawn LLP. Robyn D. Buck, Senior Assistant General Counsel – Litigation for Bayer U.S. and William B. Dodero, Global Head of Litigation for Bayer U.S., also participated on behalf of Defendant.

7.     During the mediation session, we focused on issues that each side contended would be relevant to the likely outcome of the case if settlement were not reached. The mediation session involved multiple rounds of both face-to-face negotiations amongst counsel for the parties and indirect discussions via shuttle diplomacy. During these discussions, the parties exchanged proposals and counter-proposals for settlement.

8.     Throughout the mediation, it was clear to me that each of the parties were represented by experienced and competent counsel, willing to litigate the matter to conclusion, if necessary. In my opinion, based on my experience, in this matter counsel for both sides vigorously and skillfully represented the interests of their clients. The level of advocacy for both parties was informed, vigorous, engaged, ethical, and effective. The parties' positions on both liability and damages in this and the related cases were extensively briefed and were probed and discussed at length during the mediation in both joint and separate sessions, as were the risks of continued litigation.

9.     Throughout the process, the parties engaged in extensive adversarial negotiations on virtually every issue in the cases. I observed nothing that suggested any collusion or other untoward behavior by counsel for either party. Instead, the negotiations were principled, exhaustive, informed, and sometimes challenging, and ultimately resulted in a mediated agreement in principle shortly after midnight on February 17, 2021.

10.     In my opinion, the outcome of the mediated negotiations is the result of a fair, thorough, and fully informed arms-length process between highly capable, experienced, and

informed parties and counsel. The final settlement represents a compromise of the parties' initial positions that were the product of the parties' and counsels' best professional effort and judgment about a fair, reasonable, and adequate settlement after thoroughly investigating and litigating this and the related cases, taking into account the risks, strengths, and weaknesses of their respective positions on the substantive issues in the cases, the risks and costs of continued litigation, and the best interests of their clients. Moreover, it is my opinion that the settlement reached by the parties is consistent with my own judgments of the strengths and weaknesses of the parties' cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of June, 2021, at Philadelphia, Pennsylvania

Diane M. Welsh

Honorable Diane M. Welsh (Retired)

4