# EXHIBIT "A"

## <u>CONFIDENTIAL RELEASE, INDEMNITY, ASSIGNMENT,</u>
## <u>AND SETTLEMENT AGREEMENT AND COVENANT NOT TO SUE</u>

THIS CONFIDENTIAL RELEASE, INDEMNITY, ASSIGNMENT AND SETTLEMENT AGREEMENT AND COVENANT NOT TO SUE ("Confidential Release") is made and entered into by Claimants Maurice W. Wigglesworth and Naja Wigglesworth Barksdale, on Behalf of the Estate of Maurice T. Wigglesworth ("Claimant"), on the date signed below.

## I. RECITALS

WHEREAS Claimant instituted a civil action in *Maurice Wigglesworth v. Monsanto Company*, in the **Northern District of California, Cause No. 3:19-cv-07864-VC [MDL 2741]** (the "Civil Action") against Monsanto Company ("Defendant") relating to Claimant's alleged exposure to the Roundup Products (defined below) which Claimant alleges caused Claimant's alleged injuries, losses and damages ("Claims," defined below);

WHEREAS Defendant has denied and continues to deny any liability based on Claimant's Claims, allegations and assertions;

WHEREAS as used in this Confidential Release, "Roundup" or "Roundup Products" means any glyphosate-containing product developed, manufactured, distributed, sold, and/or marketed by Monsanto, or any of its direct or indirect subsidiaries, or by any person using glyphosate supplied by Monsanto, or any of its direct or indirect subsidiaries, under any name or brand ("Roundup Products");

WHEREAS Claimants and Defendant (collectively, with Counsel for Claimants, defined below, "the Parties") have agreed to resolve fully all Claims, differences, controversies, and any other transaction by and between Claimants and Defendant and the Released Persons (as defined below) that exist or have existed and that Claimant alleges arise from the Claimant's alleged exposure to Roundup Products;

WHEREAS Claimant understands that this Confidential Release releases any and all Claims against Defendant and the Released Persons (as defined below) for all damages and/or losses allegedly relating to the alleged injuries which Claimant alleges were caused by Claimant's alleged exposure to Roundup Products, whether or not those alleged injuries are apparent at the present time; and

WHEREAS Defendant (i) denies the allegations made in the Civil Action, (ii) denies any damages are payable, or that Claimant or any other person is entitled to any other relief, in the Civil Action, (iii) has not conceded or admitted, does not concede or admit and shall not be deemed to have conceded or admitted, any liability of any kind with respect to any Claim and asserts that it has defenses to all of the Claims in the Civil Action.

## II. DEFINITIONS

A.       As used in this Confidential Release, and in addition to the definitions set forth in the introduction, preamble, and recitals above, capitalized terms shall have the following definitions and meanings or such definitions and meanings as are accorded to them elsewhere in

this Confidential Release. Terms used in the singular shall be deemed to include the plural and vice versa.

**B.** Individual Definitions:

1. "Claims" means any and all rights, remedies, actions, claims, demands, causes of action, suits at law or in equity, cross-claims, counterclaims, obligations, debts, sums, accounts, controversies, verdicts, suits of judgments, judgments and/or Liens (as defined below) (including any of the foregoing) that have been brought or could be brought for wrongful death, personal injury and/or bodily injury, attorneys' fees, sickness, disease, emotional distress and/or injury, mental or physical pain and/or suffering, emotional and/or mental harm, fear of disease or injury, Non-Hodgkin's lymphoma ("NHL"), future NHL, fear of future NHL, cancer, future cancer, fear of future cancer, treatment or surgery, loss of enjoyment of life, loss of society, loss of companionship, loss of income, loss of wages, loss of consortium, past or future medical expenses, reimbursement, future cost of insured services, past cost of insured services or any other form of injury, and including any of the foregoing for direct damages, indirect damages, consequential damages, incidental damages, punitive or exemplary damages, statutory and other multiple damages or penalties of any kind, or any other form of damages whatsoever, whether past, present or future, and whether based upon contract, breach of contract, warranty or covenant, breach of warranty or covenant, tort, negligence, strict liability, gross negligence, recklessness, willful or wanton conduct, malice, oppression, conscious disregard, joint and several liability, guarantee, contribution, reimbursement, subrogation, indemnity, defect, failure to warn, fault, misrepresentation, common law fraud, statutory consumer fraud, quantum meruit, breach of fiduciary duty, violation of statutes or administrative regulations and/or any other legal (including common law), statutory, equitable or other theory or right of action, whether presently known or unknown, developed or undeveloped, discovered or undiscovered, foreseen or unforeseen, matured or unmatured, accrued or not accrued, past, present or future, contingent, derivative, personal, assigned or inchoate liabilities, or now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision or in any other manner that in any way may arise from, relate to, or are in any way connected with: (1) the purchase, use or exposure to any glyphosate-containing product developed, manufactured, distributed, sold, and/or marketed by Monsanto, or any of its direct or indirect subsidiaries, or by any Person using glyphosate supplied by Monsanto, or any of its direct or indirect subsidiaries, under any name or brand (herein referred to as "Roundup" or "Roundup Products" as defined below) and/or any injury, losses, or damages of any kind ever claimed, or may at any time in the future be claimed, to have been caused, in whole or in part, by any such use of or exposure to Roundup or from any medical treatments allegedly occurring because of the use of or exposure to Roundup; (2) claims relating to the availability of future Medicare-covered expenses, and any private cause of action any Releasing Party or assignee may have under 42 U.S.C. 1395y(b)(3)(A); and/or (3) claims arising from or related to the Lien Administrator and other administrators of the settlement.

2. "Counsel for Claimants" means Jarad Silverstein, Esq. of Wapner, Newman, Brecher and Miller, P.C.

3. "Derivative Claimant" means, in relation to Claimant herein, any Person having or asserting the right, either statutory or under applicable common law (including the laws

of descent and distribution) or otherwise, to sue Defendant or any other Released Person, independently, derivatively or otherwise:

        (a)     by reason of their personal relationship with Claimant (or the Product User with respect to Claimant); and/or

        (b)     otherwise by, through or under, or otherwise in relation to, Claimant (or the Product User with respect to such Claimant);

including a Legal Representative of a Product User or Product User's Estate, the heirs, beneficiaries, surviving spouse (including a putative or common law spouse), surviving domestic partner, executors, administrators, subrogees, successors in interest, agents, assigns and next of kin of Claimant (or the Product User with respect to Claimant).

        4.     "<u>Governmental Authority</u>" means any government or political subdivision, department, commission, board, bureau, agency, or other governmental authority, whether United States federal, state, District of Columbia, city, county, municipal, territorial, or otherwise domestic, or foreign, or supranational, or any instrumentality whether domestic, foreign, or supranational.

        5.     "<u>Legal Representative</u>" means, as to any particular natural person (including a deceased natural person), the estate, executor, administrator, guardian, conservator, or other legal representative thereof.

        6.     "<u>Lien</u>" means any actual or asserted mortgage, lien, pledge, charge, security interest, encumbrance, assignment, subrogation right, third-party interest or adverse Claim of any nature whatsoever, in each case whether statutory or otherwise.

## III.  RELEASE

### A.  <u>Complete and General Release, Covenant Not to Sue and Assignment</u>

        1.     The Claimant, individually and for the Claimant's spouse, children, family members, heirs, beneficiaries, next of kin, successors, agents, and assigns, to the maximum extent possible under applicable law, hereby RELEASES and FOREVER DISCHARGES, and agrees and covenants not to sue Defendant or the Released Persons (as defined below), or threaten suit or initiate any regulatory, administrative or other proceeding against Defendant or the Released Persons (as defined below), of and from all Released Claims and Liabilities (as defined below).

        2.     The term "Released Persons" as used herein shall mean:

        (a)     Monsanto Company and Bayer AG, and each and all of their respective past, present or future direct or indirect predecessors, successors, parents, subsidiaries, affiliates, divisions, joint ventures, and joint venturers (collectively, the "Monsanto Group");

        (b)     Any and all past, present or future manufacturers, formulators, distributors, marketing agents, commissionaires, resellers, retailers (including, without limitation, wholesale distributors, private label distributors, and all retailers and retail distributors), clinical

researchers, agents, licensees, contractors, applicators, end users and consultants of or with respect to Roundup Products, and any and all past, present, or future suppliers of materials, components, and services used in the development, registration, formulation, manufacture, distribution, handling, sale or marketing of Roundup Products, including the labeling and packaging thereof, and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, affiliates, divisions, joint ventures, and joint venturers;

        (c)    Any and all past, present or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above; and

        (d)    All health care providers, whether entities or individuals, who provided treatment for the alleged injuries allegedly resulting from Claimant's alleged exposure to Roundup Products, but Claimant does not waive any Claims he or she may have for medical malpractice against such health care providers for the care and treatment provided for the alleged injuries allegedly resulting from Claimant's alleged exposure to Roundup Products.

All Released Persons are third party beneficiaries of this Confidential Release for purposes of enforcing the release and indemnity provisions herein.

        3.    The term "Released Claims" or "Released Claims and Liabilities" shall include, without limitation, all of the Claims and counterclaims Connected With Roundup[1] Products that Claimant has, or could have, asserted against Defendant or the Released Persons based on alleged medical complications, financial, emotional or psychological harm or otherwise arising out of any alleged purchase, use of or exposure to Roundup Products, including assigned Claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, existing now or arising in the future, relating to or arising out of exposure to Roundup or their development, manufacture, formulation, testing, distribution, marketing, labeling, regulatory submissions, advertising, sale, purchase, exposure to or use of Roundup, including, without limitation, all Claims for damages or remedies of whatever kind or character, known or unknown, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision, administrative adjudication, or in any manner, including but not limited to:

      a.   personal injury and/or bodily injury, damage, death, fear of disease or injury, mental or physical pain or suffering, emotional or mental harm, or loss of enjoyment of life;

      b.   loss of wages, income, earnings or earning capacity, medical expenses, doctor, hospital, nursing and drug bills;

---

[1] "Connected With Roundup" or "Roundup-related" means to any extent, or in any way arising out of, relating to, resulting from and/or connected with the purchase, use or exposure to Roundup or Roundup Products (defined below) and/or any injuries, losses, or damages, including but not limited to wrongful death, caused or claimed to have been caused, in whole or in part, by any such purchase, use or exposure to Roundup or Roundup Products.

c. loss of support, services, consortium, companionship, society or affection, or damage to familial relations;

d. wrongful death and survival actions;

e. medical screening or monitoring, injunctive, declaratory or equitable relief;

f. consumer fraud, refunds, restitution, unfair business practices, deceptive trade practices, unjust enrichment, money had and received and other similar Claims;

g. compensatory damages, punitive or exemplary damages, statutory and other multiple damages or penalties of any kind;

h. economic or business losses, diminished value or lost benefit-of-the-bargain; attorneys' fees, costs or court or litigation expenses; and/or

i. prejudgment or post judgment interest.

4.      Without in any manner limiting the foregoing, this Confidential Release is expressly intended to include and does include any and all Claims which any spouse, child, heir, beneficiary, next of kin, agent, estate, executor, administrator, personal representative, successor and assign, or any person or entity otherwise entitled to a Claim, may now or may hereafter have or assert against Defendant or the Released Persons for the alleged injuries, losses and damages, including pain and suffering, wrongful death, punitive damages, loss of services, loss of consortium and/or companionship, society or support, mental and emotional distress, attorneys' fees and costs, or for hospital, medical, nursing or other healthcare related expenses, or funeral expenses, or lost wages, or any other losses or expenses, whether known or unknown, and any and all other Claims, whether known or unknown, arising out of or by reason of or in any manner connected with Claimant's alleged exposure to Roundup Products and the alleged injuries.

5.      The releases herein are specifically intended to operate and be applicable even if it is alleged, charged, or proven that some or all of the Claims or damages released are caused in whole or in part by the negligence, negligence per se, gross negligence, breach of warranty, violation of statute or common law, defective product, malice, or conduct of any type by Defendant or any of the Released Persons, Claimant or anyone else. While all Claims, including Claims for punitive or exemplary damages (or any type of enhanced damages), are released, no portion of any of the payments made to Claimant is paid as punitive or exemplary damages (or any type of enhanced damages), as the Defendant refuses to pay punitive or exemplary damages (or any type of enhanced damages), penalties or fines nor prejudgment or post judgment interest, or damages for non-physical injuries. All payments made to Claimant are made as compensation for personal physical injuries or physical sickness within the meaning of Section 104(a)(2) of the Internal Revenue Code, as amended.

B.      **Unknown Facts**.

1.      It is expressly understood and agreed by Claimant that this Confidential Release is intended to and does cover any and all losses, injuries, damages and Claims related to the alleged injuries, whether direct or indirect, known or unknown, and suspected or unsuspected.

5

Claimant acknowledges that he/she may hereafter discover facts different from, or in addition to, those which he/she now knows to be or believes to be true with respect to Claimant's alleged injuries, losses, damages and Claims arising from Claimant's alleged exposure to Roundup Products. Claimant acknowledges that he/she may learn of additional facts as they relate to Roundup Products and Defendant's or the Released Persons' activities as they relate to Roundup Products. Claimant agrees that this Confidential Release, and the specific releases contained herein, shall be and remain effective in all respects, notwithstanding such different or additional facts and the subsequent discovery thereof.

2. Claimant acknowledges and waives any rights that Claimant may have under any statute, rule, regulation or common law principle that would limit the effect of the Release to those Claims actually known or suspected to exist at the time the release is given, including, without limitation, California Civil Code § 1542, as amended, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PERSON.**

C.    <u>Warranty of Capacity to Execute Agreement</u>. Claimant represents and warrants and Counsel for Claimants represent and warrant upon information and belief that:

1.    Claimant has the right and authority to execute this Confidential Release and receive the Settlement Amount set forth in Subsection H, below;

2.    No person or entity other than Claimant, whether private or governmental, has any interest in the Claims, demands, obligations and causes of action referred to in this Confidential Release, with the exception of possible lienholders;

3.    No attorneys have a pecuniary interest in the settlement proceeds allocated to Claimant, other than Counsel for Claimants, and referring counsel, if any;

4.    Claimant has not sold, assigned, transferred, conveyed or otherwise disposed of any of the Claims, demands, obligations and causes of action referred to in this Confidential Release;

5.    Except as provided in Subsection E herein, there are no other persons or entities, including government entities, who now have or may hereafter acquire the rights of Claimant to proceed against Defendant or the Released Persons on any action, Claim, demand, cause of action or controversy arising out of or relating in any manner whatsoever to Claimant's alleged injuries, losses, and any of the Claims, demands, obligations and causes of action referred to in this Confidential Release;

6.      Claimant has the sole right to receive the Settlement Amount. Neither Claimant nor any Derivative Claimant has sold, assigned, transferred or otherwise disposed of, or pledged or otherwise encumbered, any of the Released Claims and Liabilities in whole or in part;

7.      If Claimant is signing as a Legal Representative, Claimant will attach to the signed Confidential Release valid proof of authority to enter into the Confidential Release;

8.      Claimant has not filed for bankruptcy and/or any previous bankruptcy filing has been discharged or to the extent a bankruptcy proceeding is pending as of the date of this Confidential Release, Claimant has notified Counsel for Claimants of the bankruptcy proceeding;

9.      To the extent any bankruptcy action is pending or has been pending, Settling Claimant will take all necessary actions to notify the Bankruptcy Court of this settlement and will fulfill all obligations to said Bankruptcy Court. Bankruptcy proceedings will be sought in compliance with the confidentiality provisions of this Release. Upon request, Settling Claimant further agrees that he or she will provide written confirmation that he or she fulfilled said Bankruptcy Court obligations;

10.     Claimant is not aware of any legal, administrative or regulatory actions, events, rights or obligations that would impede execution of this Confidential Release or the distribution of the Settlement Amount (as defined below) to the Claimant. It is understood and agreed that the Claimant will defend (with counsel selected by Monsanto), hold harmless, and indemnify the Released Persons from and against all medical Liens and any other Claims which have been or may be asserted in the future against the Released Persons arising from or relating in any way to Claimant's alleged exposure to Roundup Products and the alleged resulting injuries. Claimant's total indemnification obligations under this Release shall not exceed Claimants' net settlement amount; and

11.     Claimant and Claimant's counsel will obtain any necessary Court approvals required by applicable law with respect to this Release and the settlement of the Claims.

D.      **Indemnification.** Claimant agrees to hereby bind Claimant's spouse, family members, heirs, personal representatives, successors, and assigns to the maximum extent possible under applicable law, and to INDEMNIFY, REPAY and HOLD HARMLESS Defendant and the Released Persons from any Claim or judgment, including Claims for contribution or indemnity and including any multiple damages (including double damages), against Defendant or the Released Persons by any spouse, former spouse, parent, child or other relatives of Claimant, or any other person or entity (including heirs, any person seeking recovery by, through or under the Claimant, any actual or asserted lienholders, and/or federal or state governments, agencies thereof, or entities operating under any contract with any such federal or state government, agency, or entity), whose rights arise by or through Claimant's alleged injuries. In addition, Claimant agrees to INDEMNIFY, DEFEND, and HOLD HARMLESS Defendant and the Released Persons from any loss, Claim, expense, demand or cause of action of any kind or character, including costs and attorney's fees that result from the failure, if any, of Claimant to fulfill his or her obligations to a Bankruptcy Court. The indemnification set forth in this Subsection specifically includes, but is not limited to, the payment of all reasonable costs and expenses of investigation, defense, settlement, attorneys' fees, judgments, court costs and all other costs and expenses of defending

7

any such Claims of Defendant or the Released Persons. Claimant's total indemnification obligations under this Release shall not exceed Claimant's net settlement amount.

    **E.**     <u>**Medical Bills and Liens.**</u>

    1.     Claimant and any Derivative Claimant agree to provide the Lien Administrator and Defendant with their full name, gender, date of birth, address and Social Security Number. Claimant also agrees to indicate on this Confidential Release if Claimant is, or ever was enrolled in Medicare (defined, below) and to provide any medical payment-related documents as may be requested by the Lien Administrator to the extent Claimant has those documents in Claimant's possession. Claimant also agrees that Defendant and the Released Persons may use any personal or protected information (e.g., Social Security number, date of birth, protected health or medical information, etc.) to meet any reporting requirements that might be owed to the Centers for Medicare and Medicaid Services of the U.S. Department of Health and Human Services ("CMS" or "Medicare") or its contractors arising out of this Claim, and Clamant agrees to cooperate with the Lien Administrator to provide such information or to perform other activities reasonably necessary to meet any CMS requirements to fulfill the Lien resolution obligations of Claimant as specified in this Confidential Release.

    2.     Claimant understands and acknowledges that Liens defined herein are the sole responsibility of Claimant and any Derivative Claimant executing this Confidential Release. Furthermore, Claimant agrees that Claimant or Counsel for Claimants shall provide, or shall cause the Lien Administrator to provide, to Defendant confirmation of the satisfaction and discharge of any or all such Liens for which Claimant or any Derivative Claimant executing this Confidential Release is or are responsible for their resolution.

    3.     Claimant represents and warrants that all bills or costs resulting or arising out of or relating in any way to Claimant's alleged exposure to Roundup Products, and the allegations that form the basis of the lawsuit or Claims, have been paid or will otherwise be paid, and that any Liens based on any hospital or medical expenses incurred as a result of Claimant's alleged injuries, will be satisfied solely by the Claimant. Claimant expressly agrees and undertakes to protect, indemnify, and hold harmless Defendant and the Released Persons from all costs and expenses incurred on account of any Claims, Liens, demands, rights, or causes of action by any other individual or entity claiming:

        a.     a right on behalf of or through the Claimant as against Defendant or the Released Persons;

        b.     a Lien upon, subrogated interest in, or right or entitlement to the proceeds of this settlement, in whole or in part, for any reason, including the provision of medical and/or hospital care and/or the payment of medical and/or hospital expenses by any third party provider/payor;

        c.     a right to reimbursement or subrogation for any reason arising out of the consideration payable under this Confidential Release;

d.      A right to recovery by, or reimbursement related to Medicare Parts A & B to, The Centers for Medicare and Medicaid Services (hereinafter "Medicare" or "CMS"), including but not limited to any known Medicare Part C and Part D private carriers, for conditional payments made or to be made with respect to covered items and services (or any portion thereof), pursuant to 42 U.S.C. § 1395y(b), and corresponding regulations, including but not limited to 42 CFR § 411.22, 411.24, 422.108, and 423.462, including any amendments thereto or interpretations thereof that may be placed upon such statutes and regulations by any state or federal court (sometimes commonly known as the "Medicare Secondary Payer" laws and program). Claimant hereby expressly agrees that he or she assumes full responsibility for satisfying any and all notification, reimbursement and recovery obligations owed to Medicare, including any known Medicare Part C and Part D private carriers; or

e.      a right against Defendant or the Released Persons due to the fact that Claimant is, in fact, a party to bankruptcy proceedings at such time as to affect the rights of Defendant or Released Persons under this Confidential Release.

4.      In addition to the foregoing, Claimant represents and affirms that any and all medical Liens and/or Claims arising from medical expenses, past and/or present relating in any way to Claimant's alleged exposure to Roundup Products, and the allegations that form the basis of the lawsuit or Claims that (i) were incurred by Medicare (Parts A & B) and Medicaid (together with Medicare, "Governmental Payors"), and/or (ii) are known and properly asserted by any other public or private healthcare payer (together "Other Healthcare Payors") will be satisfied by Claimant and/or the Lien Administrator, prior to distribution of any of the settlement proceeds to Claimant or any other individual or entity.  Nothing herein shall be construed to restrict Counsel for Claimants' right to use portions of the settlement to extinguish any such Liens.

5.      In acknowledgement of the MMSEA, the Parties acknowledge and agree that they have considered the statutory interest of CMS in recovering conditional payments that may have been made for medical treatment that resulted directly from injuries allegedly caused by the use of or exposure to Roundup.

6.      Claimant understands that no payment shall be made to Claimant until all Lien and other fees and costs obligations have been resolved including, but not limited to, Claimant's combined private Liens and any governmental Liens, including Medicare and/or Medicaid.  Defendant shall review and confirm the Lien resolution amounts before the Settlement Amount is distributed.

7.      Claimant agrees to provide to Claimant's Lien Administrator and to Defendant any and all documentation or authorizations in their possession that are required to satisfy the requirements of Medicare and Medicaid, including, without limitation, all information required for compliance with the Medicare Mandatory Insurer Reporting requirement, 42 U.S.C. 1395y(b)(8).  Claimant warrants and represents that any and all information provided to Defendant and the Lien Administrator for compliance with 42 U.S.C. 1395y(b)(8) will be accurate, true and correct.

8.      Claimant understands and acknowledges that Defendant and Released Persons are not responsible for any Liens or subrogation Claims against the Settlement Amount or

the costs and expenses incurred in resolving any such Liens or subrogation Claims against the Settlement Amount.

9.      Claimants also agree to waive and indemnify Defendant and Released Persons against any and all potential or future Claims against Defendant and Released Persons arising out of any state or federal statute relating to medical care payments, including, but not limited to, any and all potential or future Claims against Defendant or Released Persons pursuant to Claimant's private cause of action or private attorney general right harbored under the Medicare Secondary Payer Statute at 42 U.S.C. 1395y(b)(3) and/or any right of action under 42 U.S.C. 1395y(b), et seq. It is the express intent of the Parties that these indemnities be construed as broadly as possible to encompass every conceivable Lien. Claimant agrees under this Confidential Release he or she is releasing Defendant and Released Persons from all future medical expenses, including but not limited to drug costs, hospital, medical, physician or health care provider expenses relating to any past, present, or future medical care or treatment arising from or in connection with Claimant's Claims.

10.      Claimant agrees to indemnify and forever hold harmless Defendant and the Released Persons from any Claim asserted by CMS, Medicare, the U.S. federal government and/or their respective agents or assignees under 42 U.S.C. § 1395y for reimbursement of conditional or future payments made by Medicare for medical treatment or alleged injuries related to Claimant's Claims against Defendant, including any attorney's fees and fines sought or assessed under 42 U.S.C. § 1395y. Claimant expressly warrants and represents that this paragraph is a material provision of this Confidential Release. If it is determined that Claimant has provided false or misleading information with respect to any payments made by Medicare for medical treatment, Claimant shall forfeit to Defendant the settlement funds in the amount of any unpaid Liens and fines, penalties, attorneys' fees, or other costs and expenses assessed by Medicare (or its agent) or the U.S. federal government (or its agent) under 42 U.S.C. § 1395y, if any.

11.      Claimant further understands and acknowledges that the Defendant may have a legal obligation under Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 ("MMSEA") to report the amount of any payments made to Claimant under this Confidential Release to the Secretary of the Department of Health and Human Services (the "Secretary") and/or Medicare. Claimant also acknowledges that the Defendant may be required under Section 111 of the MMSEA to identify the nature of Claimant's alleged injuries at issue, as well as other such information about Claimant, Counsel for Claimants, and the product involved, as specified by the Secretary to enable an appropriate determination concerning coordination of Medicare benefits, including any applicable recovery Claim.

12.      Claimant agrees to cooperate fully with Defendant and the Released Persons, their counsel and agents by executing any and all documents and providing such additional information as may be required by or on behalf of the Defendant to comply with the mandatory Medicare reporting requirements of Section 111 of the MMSEA.

13.      Further, Claimant acknowledges and agrees that the confidentiality of this Confidential Release does not bar the Defendant from reporting said information required to be disclosed to CMS or the Secretary under Section 111 of the MMSEA.

10

14.     Claimant and/or the Lien Administrator will cooperate so that Counsel for Claimants can and will provide reasonable documentation to Defendant prior to the payment to Claimant confirming the amount necessary to resolve medical Liens and/or Claims of Medicare. Upon request, Counsel for Claimants and/or the Lien Administrator shall provide Defendant with reasonable proof of satisfaction and discharge of any or all medical Liens, including, in cases involving a reimbursement Claim by Medicare, reasonable documentation confirming payment of any amounts owed to Medicare.

15.     It is understood and agreed by Claimant and Defendant that the settlement of Claimant's Claims against Defendant and Released Persons could impact Claimant's right to future Medicare benefits, including the denial by Medicare of Claims for future benefits related to the injury Claims being released in this Confidential Release. It is further understood and agreed that Claimant hereby waives any right to assert in the future any Claims Claimant may have relating to the matters referenced in this paragraph, including the denial by Medicare of Claims for future benefits related to the Claims being released in the Claimant's Confidential Release, known and unknown, including any private cause of action Claimant may have under 42 U.S.C. § 1395y(b)(3)(A) against any of the parties released under the terms of this Confidential Release, even though if such Claims were known, such knowledge would materially affect the terms of this Confidential Release.

16.     In further consideration of the foregoing, Claimant further agrees and covenants to release, discharge, forever indemnify, defend (with counsel selected by the Defendant) and hold harmless the Defendant and Released Persons from any Liens and/or Claims which may arise or may have heretofore arisen in favor of any financial institution, medical provider, doctor, hospital, chiropractor, health insurer, worker's compensation insurer, other insurers, HMO, Medicare, Medicaid, Governmental Authority third party payor/providers, any other government program or any other government entity, federal or state or local, or any other third party, by operation of contract, law or equity, for medical expenses, disability benefits or any other charge or expense, directly, indirectly, by way of assignment, or by subrogation, relating to the incidents that form the basis of this Confidential Release. Claimant specifically understands and acknowledges that this settlement encompasses all damages of any kind that are in any way related to Claimant's Released Claims and Liabilities and the alleged injuries, known or unknown, past, present, or future and that all damages, costs, expenses or fees related thereto are now the sole responsibility of the Claimant, including all outstanding or future Liens, subrogation claims, accounts, demands, or Claims of any kind whatsoever. Claimants' total indemnification obligations under this Release shall not exceed Claimants' net settlement amount.

F.     **Attorney Liens**. Claimant represents and warrants that all legal expenses, bills, costs or contingency fee agreements resulting or arising out of representation of Claimant by any attorney in relation to Claimant's alleged exposure to Roundup Products, have been paid or will be paid out of the proceeds of the settlement and are Claimant's responsibility to pay, and that any Liens based on any legal expenses, bills, costs or contingency fee agreements incurred as a result of Claimant's alleged exposure to Roundup Products will be satisfied solely by Claimant. Claimant will indemnify, repay and hold the Defendant and Released Persons harmless from any such Claims.

**G.**    **No Non-Settling Parties or Entities.**  It is the intent of this Confidential Release that the Claimant shall not recover, directly or indirectly, any sums for Released Claims and Liabilities from Defendant and/or the Released Persons other than the funds received pursuant to this Confidential Release and set forth in Subsections H & I, below.  If, despite the provisions of this paragraph, any Released Person incurs any payment or judgment due to any Claim, including a Claim for contribution or indemnity arising out of a Claim brought by the Claimant against another person, the Claimant shall indemnify, repay and hold harmless the Released Person for such amount or shall not attempt to execute or to collect any judgment or any portion of any judgment obtained against one or more of the non-Released Persons to the extent or in a manner that the execution or collection of the judgment or any portion thereof would create in the judgment debtor any right to recover from any of the Released Persons any sums based on Claims for contribution, indemnity, and/or subrogation.  Claimant's total indemnification obligations under this Release shall not exceed Claimants' net settlement amount.

**H.**    **Settlement Amount/Consideration.**    In consideration for the releases, understandings, warranties, and representations made by Claimant in this Confidential Release and after proper execution and delivery of this Confidential Release by the Claimant and receipt of any required court approvals, Defendant shall pay ███████████████████████ and other good and valuable consideration to the Claimant's counsel in trust for Claimant (the "Gross Settlement Amount"), within 30 days of the execution and submission of this Confidential Release.  Should any judicially-established or court-ordered common benefit assessment percentage be determined to be applicable to the Gross Settlement Amount or subject to order(s) of the court in *In re Roundup Prods. Liab. Litig.*, MDL No. 2741 (N.D.Cal.) or future directives of that court (including the assessment percentage), such common benefit assessment shall be paid by Counsel for Claimant out of the Gross Settlement Amount.  The payment of the Gross Settlement Amount is for settlement of the Released Claims and Liabilities and includes any court costs, expenses, and attorneys' fees incurred by the Claimant in prosecuting the Claims.  The execution and return of the Confidential Release are CONDITIONS PRECEDENT to the funding obligation of the Gross Settlement Amount.  By signing hereafter and approving the terms of this Confidential Release, Claimant agrees that payment pursuant to this Release is for monetary compensation and that the terms of the allocation process regarding any contingent fee to be paid to Counsel for Claimant have been explained to Claimant by Counsel for Claimant.

**I.**    **Payment.**

  1.    No warranty or representation of the tax consequences, if any, is made by Defendant or the Released Persons.  Claimant and Defendant and the Released Persons hereby state and acknowledge that all sums paid pursuant to this Confidential Release constitute damages on account of personal injuries or physical injuries or physical sickness within the meaning of Section 104 of the Internal Revenue Code of 1986, as amended, arising from the physical injuries alleged to have resulted from Claimant's alleged exposure to Roundup Products, and no portion of the proceeds paid under this Confidential Release represent exemplary or punitive damages, nor prejudgment or post judgment interest, nor non-physical injuries.

  2.    Claimant acknowledges and represents that he or she has had the opportunity to confer with Counsel for Claimants regarding, and to ask questions about: (i) the settlement generally; (ii) the sum to be allocated to Claimant in consideration for this Confidential

Release; (iii) the relationship of that sum to the merits of Claimant's individual Claims; and (iv) the terms of this Confidential Release, and that Counsel for Claimants has answered Claimant's questions and explained the settlement and Confidential Release to his or her satisfaction.

3.     Claimant agrees that if he/she or anyone or any entity on Claimant's behalf hereafter commences, joins in, or in any manner seeks relief through any suit, except to seek enforcement of the Confidential Release, arising from, growing out of, based upon, or relating to any of the Claims, alleged injuries or the conduct at issue released herein, or in any manner assert against Defendant or the Released Persons, or any of them, any of the Claims released hereunder, then Claimant shall pay to Defendant and the Released Persons, and each of them, in addition to any other damages caused to the Defendant or Released Persons thereby, reasonable attorneys' fees incurred by Defendant or the Released Persons in defending or otherwise responding to said suit or Claim.  Claimant's total indemnification obligations under this Release shall not exceed Claimant's net settlement amount.

4.     Claimant acknowledges that he/she is represented by counsel in connection with the negotiation and execution and this Confidential Release and represents that he/she has had the opportunity to confer with Counsel for Claimants regarding, and ask questions about, the negotiation and execution of this Confidential Release, including but not limited to: (i) the settlement generally; (ii) the Settlement Amount in consideration for this release, (iii) the relationship of the Settlement Amount to the merits of the Claimant's Claims, (iv) the terms of this Confidential Release, and that Counsel for Claimants has answered Claimant's questions and explained the settlement and the Confidential Release to Claimant's satisfaction.

J.     **Expenses and Attorneys' Fees**.  Claimant understands and acknowledges that the Parties will each pay their own expenses and attorneys' fees.  Neither Defendant nor any other Released Persons shall have any responsibility whatsoever for the payment of any of Claimant's (and/or related executing derivative claimants') attorneys' fees or expenses, including any contingency or common benefit fees, assessments or expenses (whether court-ordered or otherwise), or the fees and expenses of the administration of the settlement, including any common benefit fees, assessments or costs assessed by the MDL Court or any other court, ad litem fees, guardian fees, Liens, or Lien resolution fees.  All such fees and expenses are the responsibility of the Claimant and shall be paid from the Settlement Amount.

K.     **No Admission of Liability**.  Claimant understands and acknowledges that nothing contained in this Confidential Release, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Confidential Release, nor the documents being executed and delivered pursuant to this Confidential Release, nor any actions taken in furtherance of this Confidential Release, is intended to be or shall constitute or be deemed or construed as evidence of, or as an admission or concession by, Defendant or any Released Person of any fault, liabilities, wrongdoing, or damages of any kind whatsoever or of the truth of any allegations asserted by Claimant against them in connection with any matters relating to Claimant's alleged exposure to Roundup Products or otherwise.  Defendant and the Released Persons expressly deny any liability relating to Roundup Products on the Claims as asserted by Claimant or as may be asserted by Claimant.

Claimant shall not seek to introduce and/or offer the terms of this Confidential Release, any

statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Confidential Release, or any statements in the documents delivered in connection with this Confidential Release, or otherwise rely on the terms of this Confidential Release, in any judicial proceeding, except insofar as it is necessary to enforce the terms of this Confidential Release (or in connection with the determination of any income tax liability of a party) or any instrument executed and delivered pursuant to this Confidential Release. If a Person seeks to introduce and/or offer any of the matters described herein in any proceeding against Defendant or any Released Person, the restrictions of this Section shall not be applicable to Defendant with respect to that Person.

**L.      Litigation Material.**

In compliance with applicable Protective Orders, all deposition transcripts, documents and other discovery materials containing confidential information must be returned to Defendant's counsel or destroyed, with such destruction being certified in a writing by Claimant's counsel sent to Defendant's counsel.

**M.      Confidentiality.**

1.      Claimant and Counsel for Claimants shall not disclose the amount of funds received pursuant to this Confidential Release and set forth in Subsections H & I, above, except: (i) to appropriate persons to the extent necessary to process this Confidential Release or provide benefits under this Confidential Release, including in connection with the resolution of Liens by the Lien Administrator, and/or in relation to the processing of estate work in the surrogate courts; (ii) as otherwise expressly provided in this Confidential Release; (iii) as may be required by law, ethical requirements, normal business reporting and insurance purposes, or listing agreements; (iv) as may be reasonably necessary in order to enforce, or exercise Defendant's rights under or with respect to this Confidential Release, or Dismissal With Prejudice Stipulation or (with respect to Claimant and/or his/her executing derivative claimants or his/her Counsel); or (v) to the immediate family members, counsel, accountants, financial advisors, and/or Lienholders of Claimant, if any (each of whom shall be instructed by Claimant, upon such disclosure, to maintain and honor the confidentiality of such information).

2.      Claimant may make disclosure of settlement amounts to accountants or tax advisors or if necessary to resolve any outstanding Liens or as otherwise required by law or any court order.

3.      Claimant and Counsel for Claimants expressly agree and understand that the terms of this Confidential Release, the amounts to be paid, any addendums thereto, and any and all underlying communications and negotiations in connection with or leading to this Confidential Release, shall remain confidential and private in all respects and as part thereof agree that they shall not make and/or shall not authorize anyone else to make any statement, comment, observation or communication of any type to anyone, including but not limited to any reference made to the press or media, agents or representatives of the press or media, or to other attorneys or Claimants, which discloses generally or specifically facts, opinions or innuendos regarding the settlement including the amount of the settlement, the nature and substance of settlement negotiations, or any statement about the settlement or characterization of the settlement, its importance, meaning, value or comparative value or the negotiations leading to it. Except (i) Claimant and Counsel for

14

Claimants may state to others the fact the case was settled; (ii) Claimant and Counsel for Claimants may disclose to Claimant's financial advisors or accountants information necessary for the purposes of securing financial or tax return preparation services; (iii) Claimant and Counsel for Claimants may disclose the terms of the settlement to any co-counsel or referring attorney that are participating in this Confidential Release; (iv) Claimant and Counsel for Claimants may disclose to healthcare providers information necessary to resolve Liens; (v) Claimant may share the Settlement Amount with their spouse or significant other; and (vi) as otherwise required by specific court order, statute or other binding requirement of law.  Upon Claimant's and/or Counsel for Claimants' receipt of any order, subpoena or other compulsory process demanding production or disclosure of this Confidential Release, any of its terms, or the content of the negotiations leading thereto, Claimant and Counsel for Claimants agree to notify the Defendant in writing, within 5 days of receipt of such demand, unless the demand is subject to a return date of less than 5 days, in which case the notice to Defendant shall be provided immediately upon receipt of the demand, through its attorney of record, the reason for requested disclosure, if known, and the identity of the individual or entity requesting the disclosure.  Claimant and Counsel for Claimants agree not to oppose any action that Defendant might take with respect to any such request or demand for production or disclosure.

4.      Claimant and Counsel for Claimants acknowledge and agree that they will respond to any inquiry by anyone about this Confidential Release, its amount, meaning, interpretation or comparative value, or the negotiations that led to this Confidential Release, with a statement that conveys only that Claims were resolved and that they have no further comment and that they will not describe or otherwise characterize this settlement in any fashion.  Nothing in this paragraph shall prohibit the Defendant from disclosing the fact, existence, or terms of, and the negotiations and/or considerations leading to this agreement for business purposes including, but not limited to, government agencies, auditors, insurers, insurer regulators, and reinsurers.

5.      Claimant and Counsel for Claimants understand, acknowledge, and agree that this settlement and the terms and conditions of this Confidential Release, including the amount to be paid hereunder, the allocations to individual Eligible Claimants, the background of this settlement, the negotiations leading to this settlement, and the terms and conditions of this Confidential Release, are to be kept strictly confidential and are not to be disclosed by them, except as required by law or as hereinafter set forth, to any person, other claimant, attorney, firm, association, corporation or entity at any time, including but not limited to legal trade journals, reporting services, the press or media, and/or on any posting on the Internet.  No Party may divulge any aspect or terms of any confidential document relating to the settlement, except as otherwise agreed to by the Parties herein or permitted by the Governing Court, except that Defendant may make disclosures it deems necessary to governmental agencies, its accountants, auditors, other financial representatives, insurers, agents, and other related business, regulatory, financial or legal entities.

6.      Claimant and Counsel for Claimants further agree that they will not use any confidential information relating to this Confidential Release or the underlying lawsuit or Claims, as the basis for speeches, discussions, descriptions, conversations, interviews, lectures, press conferences, seminars, conferences, articles, books, videos, movies, or other written, computerized electronic or other publications, or educational, promotional or published materials or other communications of any type, nor shall they give any such confidential information to others or authorize others explicitly or implicitly to use such information for the above or any other

purposes, except to the extent required or authorized by court order, statute, or other binding requirement of law. Claimant and Counsel for Claimants represent that Claimant has not expressly or impliedly requested, authorized or consented to the use or disclosure of confidential information, and Claimant agrees not to authorize or consent to the use or disclosure of such information. The restrictions of this paragraph shall not apply to any information in the public domain and any information that is not confidential information.

7. To the extent this Confidential Release, and/or the terms of it require approval by a Court or Courts of competent jurisdiction, Claimant and Counsel for Claimants agree that they will make every reasonable attempt to fulfill their obligations by requesting that the Court review the Confidential Release, and/or the terms, in camera. Should the Court or Courts require the Confidential Release and/or the terms of same be filed, Claimant and Counsel for Claimants agree to request such filing be under seal. To the extent that a Court or Courts require the Confidential Release and/or the terms of same to be discussed in open Court, Claimant and Counsel for Claimants agree to seek that the discussions not be on the record, and also seek that the Court dismiss all third parties from the courtroom during discussion of this Confidential Release.

8. Claimant and Counsel for Claimants agree that they will abide by and be bound by the confidentiality and, as appropriate, other terms of this Confidential Release and that Defendant may take any and all actions necessary to enforce these terms.

9. Claimant and Counsel for Claimants agree that any disclosure of the terms of this Confidential Release, or any other confidential information as to which disclosure is barred by this Confidential Release, by them, their agents or employees shall constitute a material breach of the confidentiality provisions of this Confidential Release.

10. The Parties represent that this agreement would not have been consummated without the agreement to maintain strict confidentiality of all of its terms.

11. Claimant and Counsel for Claimants will not directly or indirectly make any negative or disparaging statements against Defendant maligning, ridiculing, defaming, or otherwise speaking ill of Defendant, Defendant's products or Defendant's business affairs, practices, policies, standards, or reputation, as related to Roundup, the Roundup litigation and the Claims made therein, provided that nothing in this Confidential Release shall be deemed to interfere with any Party's obligation to report transactions with appropriate governmental, taxing and/or registering agencies. Claimant and Counsel for Claimants will make reasonable efforts to remove or take down any previous posts on any social media site regarding Defendant which would violate this provision if made after its enactment.

12. Any other disclosure of the amount or terms and conditions of this Confidential Release by Claimant or Counsel for Claimants may be made only upon receipt of written consent from counsel for Defendant or upon receipt of an order from a court or government agency of competent jurisdiction.

N. **Use of Confidential Release.** This Confidential Release shall not be offered or received in evidence in or before any case, except only to seek Court approval of this Confidential

Release or give effect to and enforce the provisions of this Confidential Release. No portion of this Confidential Release shall be deemed or construed as an admission on the part the Defendant.

      **O.**    **Construction of Confidential Release**. The terms of this Confidential Release have been negotiated by attorneys for Defendant and Claimant and the language of the Confidential Release shall not be construed in favor of or against anyone. The headings used herein are for reference only and shall not affect the construction of this Confidential Release.

      **P.**    **Entire Agreement**. This Confidential Release constitutes the entire agreement between Claimant and Defendant and the Released Persons with respect to the subject matter of this Confidential Release, and there are no other written or oral agreements, understandings or arrangements except as set forth herein. The terms of this Confidential Release may not be modified or waived except in writing signed by the Parties hereto.

      **Q.**    **Governing Law**. This Confidential Release shall be governed by and construed in accordance with the law of the State of Missouri without regard to any choice-of-law rules that would require the application of the law of another jurisdiction. This choice-of-law provision to govern the interpretation of this Confidential Release is not intended to apply Missouri law to the contingency fee provisions in retention agreements entered into between Claimant and Counsel for Claimants.

      **R.**    **Forum Selection.** Any disputes regarding this Confidential Release are to be filed in the United States District Court for the Eastern District of Missouri in the Eastern Division in St. Louis, Missouri and any portions identifying Confidential information as defined herein shall be redacted or the filing party shall request it be filed under seal.

      **S.**    **Severability**. In the event that any provision in or obligation under this Confidential Release shall be invalid, illegal, or unenforceable in any jurisdiction as to either Claimant or the Released Persons, or both, the validity, legality, and enforceability of other provisions in or obligations under this Confidential Release shall not in any way be affected or impaired thereby.

      **T.**    **Confidential Release May Be Executed in Counterparts**. This Confidential Release may be executed in counterparts, which together shall constitute a fully executed original.

      **U.**    **Facsimile Signatures.** This Confidential Release and any amendments thereto, to the extent signed and delivered by means of a facsimile machine or electronic scan (including in the form of an Adobe Acrobat PDF file format), shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

      **V.**    **Construction.** With regard to each and every term and condition of this Confidential Release, the Parties thereto understand and agree that such terms have been mutually negotiated, prepared and drafted, and if at any time the Parties thereto desire or are required to interpret or construe any such term or condition or any agreement or instrument subject hereto, no consideration shall be given to the issue of which Party thereto actually prepared, drafted or requested any term or condition of thereof.

**W.     Counterparts.** This Confidential Release may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one and the same instrument. It shall not be necessary for any counterpart to bear the signature of all Parties hereto.

**X.     Dismissal with Prejudice:** Prejudice shall attach to the refiling of any and all Claims, damages, losses or injuries that have been released by Claimant in this Confidential Release, regardless of whether Claimant had originally asserted the Claims in a filed lawsuit or a tolled unfiled action.

**Y.     Spouse/Derivative Claimant Release.** Claimant's current spouse, current legal domestic companion, or former spouse(s) who were spouses at any time from the date of Claimant's alleged Roundup-related injury, also must execute this Confidential Release. Current or former spouses, legal domestic companions and other Derivative Claimants have no direct rights or standing under the settlement, and any recovery is totally derivative of their related Claimant. By signing this Confidential Release, Claimant's current or former spouse(s) or current legal domestic companion warrant and represent that they RELEASE and FOREVER DISCHARGE any Claims that they may have now or in the future as a result of the alleged injuries to Claimant alleged to result from exposure to Roundup Products. Such current or former spouses or current domestic companions are signatories to this Release and agree to be bound to all provisions herein.

In the case of spouses who were married to Claimant at any time during the period of Claimant's alleged injury from the use of Roundup, and who are now divorced, separated or estranged, and the former/separated/estranged spouse is therefore unable or unwilling to sign the Confidential Release, Claimant may provide a spousal indemnification agreement to Defendant and Released Persons in lieu of execution of the Confidential Release by such divorced, separated or estranged spouse.

**Z.     Acknowledgments.**

1.     Claimant declares and acknowledges that he/she has read and understands the terms of this Confidential Release, that he/she has been represented by Counsel for Claimants with regard to the execution of this Confidential Release, and that he/she executes this Confidential Release voluntarily after consultation with Counsel for Claimants and without being induced, pressured or unduly influenced by any unwritten statement or representation made by Defendant or any Released Person or any person acting on behalf of Defendant or the Released Persons, or anyone else. Claimant further declares and acknowledges that he/she fully understands the nature, sufficiency and value of the consideration in the form of the Settlement Amount set forth in Subsection H, above, and agrees to accept said consideration for the releases and other benefits granted to Defendant and the Released Persons herein.

**Signature**

CAUTION! THIS IS A FINAL RELEASE. READ BEFORE SIGNING

      IN WITNESS WHEREOF, I, Maurice W. Wigglesworth, having read the foregoing Confidential Release carefully, and knowing and understanding its contents, after the same has been read over by my counsel and any questions or concerns have been answered to my satisfaction by my counsel, Jarad Silverstein, Esq. of Wapner, Newman, Brecher and Miller, P.C., and that all provisions have been fully agreed to, understood and comprehended, and signed my name as my free act and deed this 10th day of June , 2021.

           x _Maurice W. Wigglesworth_

            _____

STATE OF PA )
               ) SS:
COUNTY OF Phila )

      BEFORE ME, a Notary Public in and for said County and State, personally appeared the above-named Maurice W. Wigglesworth, who acknowledged that he did sign the foregoing Confidential Release, understood its contents, and that the same is his own free act and duty.

      SWORN TO BEFORE ME and subscribed in my presence on this ___10___ day of _June_____, 2021.

           _Amy M Zakreski_
           NOTARY PUBLIC

Please place Seal or Stamp

> Commonwealth of Pennsylvania - Notary Seal
> AMY M. ZAKRESKI, Notary Public
> Philadelphia County
> My Commission Expires May 23, 2025
> Commission Number 1059164

**Signature**

CAUTION! THIS IS A FINAL RELEASE.  READ BEFORE SIGNING

      IN WITNESS WHEREOF, I, Naja Wigglesworth Barksdale, having read the foregoing Confidential Release carefully, and knowing and understanding its contents, after the same has been read over by my counsel and any questions or concerns have been answered to my satisfaction by my counsel, Jarad Silverstein, Esq. of Wapner, Newman, Brecher and Miller, P.C., and that all provisions have been fully agreed to, understood and comprehended, and signed my name as my free act and deed this  14th  day of  June  , 2021.

STATE OF  PA          )
                      ) SS:
COUNTY OF  Phila      )

      BEFORE ME, a Notary Public in and for said County and State, personally appeared the above-named Naja Wigglesworth Barksdale, who acknowledged that she did sign the foregoing Confidential Release, understood its contents, and that the same is her own free act and duty.

      SWORN TO BEFORE ME and subscribed in my presence on this  14th  day of  June  , 2021.

NOTARY PUBLIC

Please place Seal or Stamp

Commonwealth of Pennsylvania - Notary Seal
AMY M. ZAKRESKI, Notary Public
Philadelphia County
My Commission Expires May 23, 2025
Commission Number 1059164

## CERTIFICATION OF COUNSEL

## (COUNSEL FOR CLAIMANTS)

I, Jarad Silverstein, Esq. hereby represent and declare that Maurice W. Wigglesworth and Naja Wigglesworth Barksdale, on Behalf of the Estate of Maurice T. Wigglesworth ("Claimant") is currently represented by the undersigned counsel. I have provided Claimant with a copy of the Confidential Release to which this Certification of Counsel is attached. I, or an employee of the firm working under my direction and authority, informed Claimant of the terms and legal effect of all of the foregoing documents and Claimant's decision to execute the Confidential Release, and I, or an employee of the firm working under my direction and authority, answered any and all questions Claimant may have had. I hereby certify that Claimant, having had a full opportunity to read, understand, and inquire of counsel about the terms and conditions of the foregoing documents, does not have, and I do not have, any objection to the terms of this Confidential Release or any of the other foregoing documents. I further agree to be bound by the Confidentiality obligations as outlined in this Release, my obligations as Counsel in the "Liens" section in this Release, my obligations as outlined in this Release regarding any common benefit order issued by the Court in the MDL or any other Court, and all other terms of this Confidential Release applicable to Counsel for Claimants.

COUNSEL FOR CLAIMANT(S):

By: _____

Name: _JARAD L. SLLVERSTEN_

Title: _PARTNER_

Dated: _6/10/2021_