John W. Raggio (SBN: 338261)
**FEARS NACHAWATI, PLLC**
5489 Blair Road
Dallas, Texas 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712

*Counsel for Potential Class Members*
*George Leonard, Valentin Cervantes, and*
*Patricia Godsey*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Scott Gilmore, et al. v. Monsanto Co.,*<br><br>Case No. 3:21-cv-08159 | **OPPOSITION OF LEONARD, CERVANTES, & GODSEY TO MOTION FOR PRELIMINARY CLASS-SETTLEMENT APPROVAL**<br><br>Re: Dkt. No. 14486<br><br>Date: April 14, 2022<br>Time: 10:00am<br>Place: Via Zoom Webinar<br>Judge: Honorable Vince Chhabria |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i
TABLE OF AUTHORITIES ................................................................................................... ii
I.     FACTUAL AND PROCEDURAL BACKGROUND ................................................ 1
II.    LEGAL STANDARD .................................................................................................. 4
III.   ANALYSIS ................................................................................................................... 5
       a.   The proposed settlement does not satisfy the Rule 23(e)(2) reasonableness factors. ...... 5
       b.   Two of the three *Bluetooth* red flags of collusion are present. ..................................... 10
IV.    PROPOSED CORRECTIVE ACTION ................................................................... 12
V.     CONCLUSION .......................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................................................................................ *passim*

*Briseno v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021) ................................................................... 7, 9, 14, 15

*Caliber One Indem. Co. v. Wade Cook Financial Corp.*,
    491 F.3d 1079 (9th Cir. 2007) ......................................................................................11

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ................................................................................8, 11

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ..........................................................................11, 12, 13

*McKinney-Drobnis v. Oreshack*,
    16 F.4th 596 (9th Cir. 2021) ....................................................................................8, 9, 14

*Radcliffe v. Experian Info. Sols. Inc.*,
    715 F.3d 1157 (9th Cir. 2013) ......................................................................................7

*Roes, 1-2 v. SFBSC Management, LLC*,
    944 F.3d 1035 (9th Cir. 2019) ......................................................................................7

**Other Authorities**

Fed. R. Civ. P. 23(a) ............................................................................................................7

Fed. R. Civ. P. 23(e) ..................................................................................................7, 8, 13

Fed. R. Civ. P. 23(e)(2) .............................................................................................. *passim*

Fed. R. Civ. P. 23(e)(2)(C) ..........................................................................................13, 16

On January 20, 2022, Plaintiffs Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kirsty Williams (collectively "the Gilmore Plaintiffs") moved for preliminary approval of a proposed class-action settlement, prior to class certification. Dkt. # 14486. Because the proposed settlement provides for the potential release of claims not based on the identical factual predicate as the claims compensated by the proposed settlement, and because two of the three *Bluetooth* red flags of collusion are present, the Court respectfully should deny preliminary settlement approval.

I.      FACTUAL AND PROCEDURAL BACKGROUND

George Leonard purchased Roundup products for his personal use in Fayette, Iowa from the late 1990s until present. Valentin Cervantes purchased Roundup products for his personal use in Dallas, Texas from 1994 until present. Therefore, Mr. Leonard and Mr. Cervantes are potential class members in the present action. Patricia Godsey, a resident of Corpus Christi, Texas and a personal-injury plaintiff in this MDL, sprayed her lawn with Roundup from 1981-2016. Dkt. # 1 in case No. 2:18-cv-00266. While Ms. Godsey would contest the applicability of proposed release in this action to her claims, because she arguably falls within the settlement class she hereby appears for the sole purpose of objecting to the proposed settlement. Mr. Leonard, Mr. Cervantes, and Ms. Godsey object to the proposed settlement on behalf of themselves and all other potential class members for the reasons set forth below.

Mr. Leonard, Mr. Cervantes, and Ms. Godsey largely agree with the factual and procedural recitation set forth in the Gilmore Plaintiffs' moving brief. Dkt. # 14486 at p. 2 – 12. Accordingly, Mr. Leonard, Mr. Cervantes, and Ms. Godsey merely add the following to the factual and procedural history already provided to the Court.

While the proposed settlement attempts to carve out personal-injury and medical-monitoring from the claims released by the proposed settlement, the settlement agreement is not nearly as clear on these points as the Gilmore Plaintiffs would have the Court believe. First, the terms "personal injury claim" and "medical monitoring claim" are indeed broadly defined as asserted by the Gilmore Plaintiffs, but the final sentence of the definitions, conflating personal injury and non-personal injury claims in any single cause of action essentially makes the entire definition meaningless. The proposed agreement defines "Personal Injury Claims" as

> Claims that assert a right to recover damages for the actual physical injury or illness of a natural person or that seek to recover compensatory, punitive, or exemplary damages, or attorney's fees, allegedly resulting or arising from the actual physical injury or illness of a natural person, including, for example, claims for mental or physical pain or suffering; emotional or mental harm; loss of enjoyment of life; loss of wages; income, earnings, or earnings capacity; medical expenses; doctor, hospital, nursing, or drug bills; loss of support, services, consortium, companionship, society, or affection; damage to familial relations; and wrongful death and survival actions. It is expressly contemplated that a cause of action could include both Claims that are Personal Injury Claims and Claims that are not Personal Injury Claims.

Dkt. # 14486-1 at p. 23 ¶ 41. Similarly, "Medical Monitoring Claims" is defined as

> Claims that seek to require, or recover damages amounting to the costs of, medical monitoring or screening for potential physical injury or illness of a natural person. It is expressly contemplated that a cause of action could include both Claims that are Medical Monitoring Claims and Claims that are not Medical Monitoring Claims.

*Id.* at p. 22 ¶ 32. The ambiguous nature of these definitions is discussed in depth in the analysis section below.

Significantly, the proposed settlement agreement broadly releases three categories of claims that extend far beyond the purchase price of Roundup products. First, the proposed settlement agreement releases all claims related to the making of false statements:

> any allegedly false, misleading, incomplete, or inaccurate statement, or any alleged omission, regarding the alleged carcinogenicity, toxicity, genotoxicity, endocrine

-2-

> disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate (whether or not such statement or alleged omission regarding an ingredient or component thereof is made specifically with regard to the Products, with regard to the ingredient or component thereof separately, or with regard to other products), or any scientific claims or debates regarding the same.

*Id*. at p. 39 ¶ L(1)(a). Next, the proposed settlement agreement broadly releases all claims related to breach of contract:

> any alleged breach of contract or breach of warranty arising out of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including but not limited to, glyphosate, or any scientific claims or debate regarding the same.

*Id*. at ¶ L(1)(b). Finally, the proposed settlement agreement broadly releases any and all

> Alleged economic loss or injury (other than those economic losses or injuries encompassed within the definitions of Personal Injury Claims or Medical Monitoring Claims) allegedly suffered by or inflicted on any Class Member because of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same.

*Id*. at ¶ L(1)(c).

While all three releases are subject to the proviso that Personal Injury Claims and Medical Monitoring Claims (as defined above) are not released, that clause is inherently ambiguous and the breadth of these releases are not warranted by settlement. As set forth in the proposed settlement agreement, "'[t]o the extent that any action or proceeding includes both Personal Injury Claims or Medical Monitoring Claims and Claims that would otherwise be released by this Agreement, the Personal Injury Claims and/or Medical Monitoring Claims will not be deemed released, but other Claims will be released." *Id*. at ¶ L(1). The ambiguities created by the interplay of these sections of the agreement and the breadth of the releases will be discussed in depth below.

Mr. Leonard, Mr. Cervantes, and Ms. Godsey do not object to the adequacy of the proposed settlement under the factors set forth in Fed. R. Civ. P. 23(a) or (b). Instead, they object to the fundamental fairness of the proposed settlement under Fed. R. Civ. P. 23(e). Because the breadth of the released claims extends far beyond the purchase price of Roundup—the sole basis of class-member recovery in this action—or at minimum is unworkably ambiguous, the Court respectfully should deny preliminary approval of the proposed settlement, especially in light of the presence of two of the *Bluetooth* red flags of collusion.

## II.   LEGAL STANDARD

"[W]here, as here, the settlement agreement is negotiated prior to formal class certification . . . , there is an even greater potential for a breach of fiduciary duty owed the class." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (quotation omitted). Accordingly, this settlement "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id*.

In addition to the heightened scrutiny applied to pre-certification class settlements, there is a presumption of unfairness. "Rule 23(e)(2) assumes that a class action settlement is invalid." *Briseno v. Henderson*, 998 F.3d 1014, 1030 (9th Cir. 2021). This presumption of invalidity is based on the heightened scrutiny applied to pre-certification settlements, where courts in the Ninth Circuit "not only have never endorsed applying a broad presumption of fairness, but have actually required that courts do the opposite—by employing extra caution and more rigorous scrutiny—when it comes to settlements negotiated prior to class certification." *Roes, 1-2 v. SFBSC Management, LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

OPPOSITION OF LEONARD, CERVANTES, & GODSEY TO MOTION FOR PRELIMINARY CLASS-SETTLEMENT APPROVAL
CASE NO. 16-MD-02741-VC

### III. ANALYSIS

The Court should respectfully deny approval of the proposed pre-certification settlement for two interconnected reasons. First, the proposed settlement fails to satisfy the reasonableness factors set forth in Fed. R. Civ. P. 23(e)(2). Next, because of the presence of two of the three *Bluetooth* red flags of collusion, it is even more important that the Court deny approval of the proposed settlement in order to protect the interests of absent class members.

**a. The proposed settlement does not satisfy the Rule 23(e)(2) reasonableness factors.**

**i. The Gilmore Plaintiffs apply the incorrect legal standard.**

As an initial matter, the *Gilmore* Plaintiffs rely on the incorrect standard for addressing the reasonableness of their proposed settlement. In a footnote, the Gilmore Plaintiffs take the position that "[a]lthough . . . rule [23(e)] was amended in 2018 to identify the certain criteria [sic] to guide district courts, those criteria were not intended to displace the factors traditionally used by circuit courts," citing *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 & n.10 (9th Cir. 2020). Dkt. # 14866 at p. 18 n. 22. Based on this (mis)statement, the Gilmore Plaintiffs ignore the reasonableness factors explicitly provided by Congress in the revisions to Rule 23(e), and instead rely exclusively on the so-called *Churchill* (elsewhere, the *Hanlon* or *Staton*) factors.

The Gilmore Plaintiffs are incorrect in relying exclusively on the *Churchill* factors in light of the subsequent revisions to Rule 23(e)(2). As noted by the Ninth Circuit, "[b]efore Rule 23(e)'s 2018 amendment provided factors for courts to consider in assessing settlement approval, we filled in the gaps by instructing courts to weigh" the *Churchill* factors. *McKinney-Drobnis v. Oreshack*, 16 F.4th 596, 609 (9th Cir. 2021) (quotation and citation omitted).

The Ninth Circuit went further, stating that "many of the *Staton* factors fall within the ambit of the revised Rule 23(e). But Congress provided district courts with new instructions—

-5-

such as analyzing the 'terms of the settlement' and 'terms of any proposed award of attorney's fees' – that require them to go beyond our precedent." *Briseno*, 998 F.3d at 1026.  The Ninth Circuit then held that "[a]lthough we need not decide whether a district court always abuses its discretion by applying the judicially manufactured factors in *Staton* and *Hanlon*, we must follow the law that Congress enacted." *Id*.

Compounding the Gilmore Plaintiffs' failure to address the Rule 23(e)(2) factors is the fact that the *Churchill* factors are insufficient to support a reasonableness determination in the presence of the *Bluetooth* red flags of collusion.  Discussed in more depth in the following section, courts are directed to consider the following three warning signs of a collusive agreement to settle a case to the advantage of the attorney rather than potential class members:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds . . . (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  Relevant to this part of the fairness analysis, the Ninth Circuit has noted that "adequately considering the *Churchill* factors is insufficient if the district court failed to adequately investigate or address the *Bluetooth* factors" and where, as here, the settlement is negotiated prior to certification, "consideration of these eight *Churchill* factors alone is not enough to survive appellate review." *McKinney-Drobnis*, 16 F.4th at 609 (quotation omitted).

### ii. The proposed settlement agreement does not provide adequate compensation.

With this proper framework for the review of the fairness of the proposed settlement in place, the proposed settlement is not reasonable because it involves the release of claims not

-6-

asserted in the Gilmore Plaintiffs' complaint and not compensated by the settlement. The Gilmore Plaintiffs' second-amended complaint sets forth two causes of action: violation of the Delaware Consumer Fraud Act, and breach of warranty. Dkt. #22 at ¶¶ 148-70 in case 3:21-cv-08159. Despite the narrowness of these two claims, as fully set forth in the fact section above, the proposed settlement broadly releases all claims for breach of contract, false or misleading statements, and any claims related to economic damages. Thus, the proposed settlement releases claims that are not asserted in the second-amended complaint, let alone compensated by the settlement.

In determining whether a proposed settlement is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), courts are directed to consider:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>    (i) the costs, risks, and delay of trial and appeal;
>    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>    (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Here, the relief provided to the class is not adequate in light of the broad nature of the claims released.

The only relief provided to potential class members is approximately 20% of the retail price of the Roundup products that they purchased. Dkt. # 14486 at p. 27. While this relief is arguably commensurate with the consumer-protection and breach-of-warranty claims related to the purchase price of Roundup products pled in the second amended complaint, it is completely incommensurate with, and in fact unrelated to, the broad swath of claims released by the proposed settlement agreement. In evaluating the fairness of a proposed settlement, courts "must also

-7-

consider whether class members were required to release claims that were more meritorious than the theories Plaintiffs pursued in this litigation." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1124 (9th Cir. 2020). Here, the absent class members are required to give up more meritorious claims for false misrepresentation and breach of contract than those pursued by the Gilmore Plaintiffs in this action.

Not only are the absent class members forced to release more meritorious claims, the claims released are not based on the identical factual predicate as those in this action. This Court's standing order, and Ninth Circuit precedent, requires that "[r]elease language should make clear that the class members are releasing claims based only on the identical factual predicate. Each proposed notice should make that clear as well." Standing Civil Order at p. 14, citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

The Gilmore Plaintiffs may attempt to argue that the difference between the claims pled in their complaint and those released in the settlement agreement are irrelevant in light in the carve out for personal-injury and medical-monitoring claims, but this still ignores the value of the claims being released for all class members, and also ignores the fundamental ambiguities in the way personal-injury and medical-monitoring claims are defined. Both definitional provisions provide that "[i]t is expressly contemplated that a cause of action could include both Claims that are Personal Injury Claims and Claims that are not Personal Injury Claims."[1] Dkt. # 14486-1 at p. 23 ¶ 41. A contractual ambiguity exists "when, on its face, [a provision] is fairly susceptible to two different interpretations, both of which are reasonable." *Caliber One Indem. Co. v. Wade Cook*

---

[1] Similarly, the definition of "medical monitoring claim" provides that "It is expressly contemplated that a cause of action could include both Claims that are Medical Monitoring Claims and Claims that are not Medical Monitoring Claims." Dkt. # 14486-1 at p. 23 ¶ 32.

*Financial Corp.*, 491 F.3d 1079, 1084 (9th Cir. 2007) (applying Washington law) (quotation omitted).

On one hand, the proposed settlement agreement purports to exclude all claims sounding in personal injury and medical monitoring. On the other, it maintains that "cause[s] of action" can somehow contain both released and non-released "claims." Further adding to the ambiguity, the proposed settlement agreement includes "causes of action" within its definition of "claims." Dkt. # 14486-1 at p. 19-20 ¶ 8. Thus, an inescapable logical loop ensues. Under the settlement, a cause of action contains both released and non-released claims, but a cause of action is also defined as a claim. Therefore, despite the Gilmore Plaintiffs' attempts to provide assurances that the settlement does not release personal-injury or medical-monitoring claims, the ambiguities in the agreement undermine these representations.

More important than the contradictions contained in the language, is the unfair overreach of the scope of the releases. At its core, and how it was pled, this is a consumer-protection action initiated to recover the portion of the purchase price of Roundup products attributable to the lack of an adequate NHL warning. If the settlement only released claims based on this identical factual predicate, there would be a logic to the settlement. However, the proposed settlement agreement goes well beyond this factual predicate, releasing claims for breach of contract, false misrepresentation, and any and all claims related to economic damage.

In *Hesse*, Sprint argued that a Kansas state-court action broadly released similar, but distinct, claims brought by Washington consumers for violation of Washington law. 598 F.3d at 584-85. Both actions involved claims that Sprint impermissibly passed along government charges to consumers; the Kansas class action involved the pass through of federal regulatory fees, whereas the *Hesse* action involved the pass through of the Washington business and occupation tax. *Id*.

-9-

The settlement release in the Kansas action broadly released all claims related to allegations that Sprint "failed properly to disclose or otherwise improperly charged for surcharges, regulatory fees or excise taxes . . . ." *Id*. at 586.

The Ninth Circuit held that the Kansas action did not release the *Hesse* plaintiffs' claims because, while "[b]oth involve claims that Sprint improperly billed government taxes or fees to its customers, but they deal with different surcharges, imposed to recoup different costs, that were alleged to be improper for different reasons." *Id*. at 591. The same is true here. The Gilmore Plaintiffs initiated the present action under Delaware consumer-protection law to recoup the value of Roundup products solely attributable to the lack of an NHL warning on the label. Based on this sole allegation (to which was later added a related claim for breach of warranty), and this sole basis for compensation to class members, the Gilmore Plaintiffs and Monsanto seek to broadly release all claims class members would have for breach of contract, false misrepresentation, and any economic-loss claims (except for the ambiguously defined personal injury and medical-monitoring). These claims would all be based on factual predicates distinct from the Gilmore Plaintiffs' benefit-of-the-bargain claim.

Therefore, because the proposed settlement agreement releases claims beyond the factual predicate of this action, and because the settlement is unfair in light of Fed. R. Civ. P. 23(e)(2)(C), the Court respectfully should deny approval of the proposed settlement.

### b. Two of the three *Bluetooth* red flags of collusion are present.

Finally, while the proposed settlement is unfair in light of all the reasons set forth above, the presence of two of the three *Bluetooth* collusion factors make settlement approval particularly unwarranted. "[W]hen an objector brings a challenge to the settlement agreement under Rule 23(e), [courts] must analyze the entire agreement for fairness, looking in particular at the *Bluetooth*

warning signs when, as here, [courts] are reviewing a pre-certification settlement agreement." *McKinney-Drobnis*, 16 F.4th at 606. "District courts must apply the *Bluetooth* factors in examining pre-certification settlements to smoke out potential collusion." *Id*. at 608 (quotation omitted).

Here, two of the three *Bluetooth* factors are present. First, the proposed settlement includes a clear-sailing provision. *Bluetooth*, 654 F.3d at 947. Written directly into the proposed settlement is the provision that "Monsanto will not contest a request for Class Counsel Fees that do not exceed 25% of the Ceiling Amount." Dkt. # 14486-1 at p. 35 ¶ F(1). This clear sailing provision alone is incredibly worrisome, as "the very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Briseno*, 998 F.3d at 1027 (quotation omitted). Here, it is quite conceivable that class counsel bargained away releases for the unrelated claims of breach of contract and false misrepresentation in order to secure Monsanto's agreement not to oppose their (excessive) fee requests.

The next *Bluetooth* warning sign present in the proposed agreement is the disproportionate amount of the settlement allocated to class counsel. *Bluetooth*, 654 F.3d at 947. While Monsanto is obligated to pay up to the floor amount of $23 million, because of the clear sailing provision, Monsanto also agrees not to oppose fees measured from the ceiling of $45 million. Dkt. # 14486-1 at pp. 27 ¶ D(1), 35 ¶ F(1). As the Gilmore Plaintiffs concede in their moving brief, "well under 10 percent of Class Members will submit claims." Dkt. # 14486 at p. 40. Because the floor amount Monsanto is obligated to pay includes all amounts Monsanto is to pay under the agreement, including attorneys fees, a disproportionate amount of the settlement is allocated to class counsel.

Based on the terms set forth immediately above, Monsanto has agreed to not oppose attorneys fees totaling 25% of the ceiling, or $11,250,000. Because the settlement is unlikely to

reach the floor amount by the Gilmore Plaintiffs' own concession, that fee amount is included in the minimum that Monsanto is obligated to pay, or $23 million. Thus, the true measure of attorney fees that Monsanto has agreed to pay class counsel without opposition is $11.25 million of a total $ 23 million settlement, or 48.9 % ! "This gross disparity in distribution of funds between class members and their class counsel raises an urgent red flag demanding more attention and scrutiny." *Briseno*, 998 F.3d at 1026.

When combined with the Rule 23(e)(2) reasonableness factors discussed above, the presence of these two vivid *Bluetooth* red flags of collusion strongly militates against approval of the proposed settlement.

## IV.   PROPOSED CORRECTIVE ACTION

Without suggesting that the Court actively modify the terms of the proposed agreement, there is an easy fix to solve the issues identified herein, but which the proponents of the settlement have refused to implement. Rather than release a broad swathe of claims with an ambiguous carve-out for personal injury and medical monitoring claims, they can, instead, fashion their settlement to only release the very narrow claims that they assert are actually being settled. Rather than the release as currently structured, they could define the release as solely releasing any and all claims for restitution or damages for the purchase price of the product. This would have the mutually-beneficial effect of both broadening the scope of the causes of action covered by the release, while simultaneously clearly defining and narrowing the type of claims that are being released to what is actually compensated. That the proponents of the proposed settlement refuse to tailor the claims being released to their asserted cause of action is a clear indicator that Monsanto is attempting to back-door a broad release of claims not compensated by the proposed settlement.

## V.     CONCLUSION

Under the heightened scrutiny applied to pre-certification class action settlements, the proposed settlement should not be approved because it is unreasonable, and clear red flags of collusion are present. The proposed settlement is unreasonable under Rule 23(e)(2)(C) because the proposed relief is both inadequate and inconsistent with the broad nature of the claims released. Because of the inclusion of a clear sailing provision and the award of fees that are allocated from the ceiling but included in the floor amount Monsanto is obligated to pay, two of the three *Bluetooth* collusion red flags are present. At base, this is an action to recover the benefit of the bargain for the narrow portion of the purchase price of Roundup attributable to the lack of an NHL warning. Any release of claims beyond that narrow factual predicate is unreasonable and in violation of Ninth Circuit precedent and this Court's standing order. Therefore, the motion for preliminary approval should respectfully be denied.

Dated: March 3, 2022                                Respectfully Submitted,

*/s/ John Raggio*
John W. Raggio (SBN: 338261)
jraggio@fnlawfirm.com
N. Majed Nachawati (TX SBN: 24038319)
mn@fnlawfirm.com
S. Ann Saucer (LA SBN: 21368; TX: 00797885)
asaucer@fnlawfirm.com
Michael Gorwitz (MN SBN: 0400362)
mgorwitz@fnlawfirm.com
**FEARS NACHAWATI, PLLC**
5489 Blair Road
Dallas, Texas 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712

***Counsel for Potential Class Members George Leonard, Valentin Cervantes, and Patricia Godsey***

OPPOSITION OF LEONARD, CERVANTES, & GODSEY TO MOTION FOR PRELIMINARY CLASS-SETTLEMENT APPROVAL
CASE NO. 16-MD-02741-VC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of March 2022, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                        */s/ John Raggio*
                                        John W. Raggio (SBN: 338261)