FULLER, WILLIAMSON, NELSEN & PREHEIM, LLP
Derek A. Nelsen
Eric T. Preheim
7521 South Louise Avenue
Sioux Falls, SD 57108
(605) 333-0003
dnelsen@fullerandwilliamson.com
epreheim@fullerandwilliamson.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
STATE OF CALIFORNIA
NORTHERN DISTRICT

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 Case No. 3:16-md-02741-VC |
| This document relates to: *Deborah H. Horner, individually and as Personal Representative of the Estate of William J. Horner v. Monsanto Company, Inc.*, Case No. 3:21-cv-07744-VC. | **PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

Plaintiff Deborah H. Horner, through counsel, moves this Court for leave to file a Second

Amended Complaint as outlined in the attached **Exhibit A**.  This action was originally brought

by Dr. William Horner in the Southern District Court of South Dakota on September 1, 2021.

(Doc. 1.)  It was transferred to the Northern District of California and consolidated with other

cases as part of the *in re: Roundup Products Liability Litigation*, MDL 2741.  (Doc. 11.)  An

Amended Complaint was filed on October 26, 2021.  (Doc. 13.)  The Amended Complaint

alleges that Dr. Horner used Roundup, causing his non-Hodgkin lymphoma.  (*Id.*)  Dr. Horner

passed away from complications related to that cancer on January 27, 2022.  (Doc. 20.)  An

Estate has been formed and Plaintiff previously filed a motion to substitute the real party in

MDL No. 2741, Case No. 3:16-md-02741-VC
Case No. 3:21-cv-07744-VC
Plaintiff's Unopposed Motion for Leave to File Second Amended Complaint

interest, which was granted.  (Docs. 21, 22.)  Plaintiff now seeks leave to file a Second Amended

Complaint naming the Estate and Dr. Horner's surviving spouse, and include allegations and

claims related to Dr. Horner's death.  (See **Exhibit A**.)  Plaintiff's counsel has consulted with

Monsanto's counsel, who has no objection to this Motion.

   Dated:  March 17, 2022.

                        FULLER, WILLIAMSON, NELSEN
                        & PREHEIM, LLP

                        _/s/ Derek A. Nelsen_____
                        Derek A. Nelsen
                        Eric T. Preheim
                        7521 South Louise Avenue
                        Sioux Falls, SD 57108
                        (605) 333-0003
                        dnelsen@fullerandwilliamson.com
                        epreheim@fullerandwilliamson.com
                         *Attorneys for Plaintiff*

**Certificate of Service**

   I certify that on March 17, 2022, I e-filed via CM/ECF Filer (PACER) a true and correct copy
of Plaintiff's Unopposed Motion for Leave to File Second Amended Complaint, on:

   Jennise W. Stubbs (jstubbs@shb.com)
   Ryan S. Killian (rkillian@shb.com)
   SHOOK, HARDY & BACK L.L.P.
   *Attorneys for Monsanto Company, Inc.*

                        _/s/ Derek A. Nelsen_____
                        One of the Attorneys for Plaintiff

FULLER, WILLIAMSON, NELSEN & PREHEIM, LLP
Derek A. Nelsen
Eric T. Preheim
7521 South Louise Avenue
Sioux Falls, SD 57108
(605) 333-0003
dnelsen@fullerandwilliamson.com
epreheim@fullerandwilliamson.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
STATE OF CALIFORNIA
NORTHERN DISTRICT

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Deborah H. Horner, individually and as Personal Representative of the Estate of William J. Horner v. Monsanto Company, Inc.*, Case No. 3:21-cv-07744-VC. | **PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Deborah H. Horner, individually and as Personal Representative of the Estate of Dr. William Horner, deceased, through heris counsel, for the Second Amended Complaint and Demand for Jury Trial against Defendant Monsanto Company, Inc. and Bayer CropScience Holding, Inc., states:

**Opening Statement**

Dr. Horner was a 30-year user of Roundup, an herbicide containing glyphosate. In January 2021, Dr. William Horner was diagnosed with diffused large B-cell non-Hodgkin lymphoma, subtype S. This case is about compensating Dr. Horner for that disease and the medical

**Exhibit A**

MDL No. 2741, Case No. 3:16-md-02741-VC
Case No. 3:21-cv-07744-VC
Second Amended Complaint and Demand for Jury Trial

treatment he received as a result of the manufacturing, distributing, marketing, and selling of a

product that was known to probably be cancerous, to countless Americans, including Dr. Horner.

**Parties**

1.   At all times material hereto, Deborah Horner and Dr. Horner were married and

resided~~Plaintiff Dr. William Horner is, and at all relevant times was, a resident of~~ in Brandon,

Minnehaha County, South Dakota.

2.   Dr. Horner died on January 27, 2022.

~~1.~~3.        Plaintiff Deborah Horner is the Personal Representative of the Estate of Dr.

William Horner pursuant to Letters of Personal Representative issued on February 16, 2022, a

copy of which is attached hereto as Ex. A, and she brings this action pursuant to South Dakota

Codified Laws Ch. 21-5 (Wrongful Death) and Ch. 15-4 (Survival Actions).

~~2.~~4.        Defendant Monsanto Company, Inc. ("Monsanto") was a Missouri Corporation,

with its principal place of business in St. Louis, Missouri that was purchased by Bayer AG

("Bayer AG"), a German corporation, including its liabilities related to Roundup.

~~3.~~5.        ~~Defendant~~ Bayer CropScience Holding Inc., a wholly owned subsidiary of Bayer

AG, is a Delaware Corporation with its principal place business in Saint Louis, Missouri, that,

based upon information and belief, manufactured, labeled, marketed, and distributed Roundup

following Bayer AG's purchase of Monsanto.

**Jurisdiction and Venue**

~~4.~~6.        This Court has jurisdiction under 28 U.S.C. § 1332, diversity of citizenship.

~~5.~~7.        The damages at issue exceed $75,000.

2

**Exhibit A**

MDL No. 2741, Case No. 3:16-md-02741-VC
Case No. 3:21-cv-07744-VC
Second Amended Complaint and Demand for Jury Trial

6.8.　　　This Court is the proper venue under 28 U.S.C. § 1391(b)(2)1407 and the District Court of South Dakota, Southern Division, is the proper venue under 28 U.S.C. § 1391(b)(2).

**Background and Facts**

7.9.　　　In 1970, Monsanto discovered the herbicidal properties of glyphosate and began marketing it in products in 1974 under the brand name Roundup.

8.10.　　　Roundup is a non-selective herbicide used to kill weeds.

9.11.　　　Monsanto was the world's leading producer of glyphosate.

10.12.　　　Monsanto's glyphosate products were registered in 130 countries and approved for use on over 100 different crops.  Numerous studies establish that glyphosate is found in rivers, streams, and groundwater in agricultural areas where Roundup is used.  It has been found in food, in the urine of agricultural workers, and even in the urine of people who are not in direct contact with glyphosate.

11.13.　　　On July 29, 2015, the International Agency for Research on Cancer ("IARC"), a World Health Organization ("WHO"), issued a formal monograph that classified glyphosate as a Group 2A herbicide, which means that it is probably carcinogenic to humans.  The cancers most associated with glyphosate exposure are non-Hodgkin lymphoma and other hematopoietic cancers.

12.14.　　　The IARC's conclusions confirmed that glyphosate is toxic to humans.

13.15.　　　Glyphosate is toxic to humans.

14.16.　　　Glyphosate is carcinogenic to humans.

15.17.　　　Glyphosate causes non-Hodgkin lymphoma and other hematopoietic cancers.

3

**Exhibit A**

MDL No. 2741, Case No. 3:16-md-02741-VC
Case No. 3:21-cv-07744-VC
Second Amended Complaint and Demand for Jury Trial

16.18.　　Monsanto was purchased by Bayer AG, which included any and all of the rights associated with the manufacturing, distributing, and marketing of Roundup, after the July 29, 2015 IARC's formal monograph that classified glyphosate as a Group 2A herbicide (probably carcinogenic to humans).

17.19.　　Monsanto knew about the July 29, 2015 IARC's formal monograph that classified glyphosate as a Group 2A herbicide (probably carcinogenic to humans).

18.20.　　Monsanto knew, or should have known, that Roundup was toxic to humans before it was purchased by Bayer AG.

19.21.　　Monsanto knew, or should have known, that Roundup was carcinogenic to humans before it was purchased by Bayer AG.

20.22.　　Monsanto knew, or should have known, that Roundup causes non-Hodgkin lymphoma and other hematopoietic cancers before it was purchased by Bayer AG.

21.23.　　Monsanto, at all relevant times, represented Roundup as safe to humans and the environment, including, but not limited to, proclaiming to the world, and, particularly, to United States consumers, that glyphosate-based herbicides, including Roundup, create no unreasonable risks to human health or to the environment.

**FACTS SPECIFIC TO THIS CASE**

22.24.　　Dr. Horner has owned and lived on an acreage in South Dakota since 1983.

23.25.　　Dr. Horner sprayed Roundup regularly throughout his acreage to control weeds.

24.26.　　In January 2021, Dr. Horner was diagnosed with diffused large B-cell non-Hodgkin lymphoma, subtype S.

4

**Exhibit A**

MDL No. 2741, Case No. 3:16-md-02741-VC
Case No. 3:21-cv-07744-VC
Second Amended Complaint and Demand for Jury Trial

25.27.    Dr. Horner has endured substantial pain and suffering as a result of the non-Hodgkin lymphoma disease.

26.28.    Dr. Horner has suffered, and will continue to suffer, severe and permanent physical injuries as a result of the non-Hodgkin lymphoma disease.

27.29.    Dr. Horner underwent has undergone, and will continue to undergo, extensive medical treatments to combat the non-Hodgkin lymphoma disease.

28.30.    Dr. Horner has incurred, and will continue to incur, significant expenses for medical care and treatment as a result of the non-Hodgkin lymphoma disease.

31. Dr. Horner has suffered, and will continue to suffer, emotional distress as a result of the non-Hodgkin lymphoma disease.

32. Dr. Horner died as a result of Monsanto's conduct and his exposure to Roundup.

29.33.    As a direct and proximate result of Monsanto's actions and his exposure to Roundup, Dr. Horner experienced pain, suffering, emotional distress, and bodily injury, prior to his death, which permit recovery as survival damages, in an amount to be determined at trial.

**Count 1**
(***Manufacturer-Seller Liability (Strict)***)

30.34.    Dr. HornerPlaintiff restates the preceding paragraphs of this Second Amended Complaint as though fully set forth herein.

31.35.    Monsanto's Roundup was in a defective condition, which made it unreasonably dangerous to humans, including Dr. Horner.

32.36.    The defect existed at the time Monsanto distributed and sold Roundup.

5

**Exhibit A**

MDL No. 2741, Case No. 3:16-md-02741-VC
Case No. 3:21-cv-07744-VC
Second Amended Complaint and Demand for Jury Trial

33.37.    Roundup was expected by Monsanto to reach the general public, including

homeowners with lawns and/or acreages like Dr. Horner.

34.38.    Roundup did, in fact, reach the general public, including homeowners with lawns

and/or acreages like Dr. Horner, without substantial unforeseeable change in the condition

Roundup was in when it left Monsanto's control.

39. The defective condition of Roundup caused Dr. Horner's diffused large B-cell non-

Hodgkin lymphoma, subtype S disease.

35.40.    The defective condition of Roundup caused Dr. Horner's death.

> **Formatted:** Font: (Default) Times New Roman

### **Count 2**
**(*Failure to Warn*)**

36.41.    Dr. HornerPlaintiff restates the preceding paragraphs of this Second Amended

Complaint as though fully set forth herein.

37.42.    At all relevant times, there was a danger of causing cancer in humans with the

foreseeable use of Roundup.

38.43.    Monsanto provided an inadequate warning of the danger of Roundup causing

cancer by using Roundup.

39.44.    As a result of the inadequate warning, Roundup was rendered defective and

unreasonably dangerous.

40.45.    The defective and unreasonably dangerous condition existed at the time the

Roundup left Monsanto's control.

41.46.    Roundup was expected by Monsanto to reach the general public, including

homeowners with lawns and/or acreages like Dr. Horner.

**Exhibit A**

MDL No. 2741, Case No. 3:16-md-02741-VC
Case No. 3:21-cv-07744-VC
Second Amended Complaint and Demand for Jury Trial

42.47.    Roundup did, in fact, reach the general public, including homeowners with lawns and/or acreages like Dr. Horner, without substantial unforeseeable change in the condition Roundup was in when it left Monsanto's control.

48. The defective condition of Roundup caused Dr. Horner's diffused large B-cell non-Hodgkin lymphoma, subtype S disease.

43.49.    Dr. Horner died as a result of the failure to warn and his exposure to Roundup.

**Count 3**
*(Negligence)*

44.50.    Dr. HornerPlaintiff restates the preceding paragraphs of this Second Amended Complaint as though fully set forth herein.

45.51.    Monsanto, directly or indirectly, caused Roundup to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by homeowners with lawns and/or acreages, including Dr. Horner.

46.52.    Monsanto had a duty to use the amount of care in the manufacturing, testing, researching, marketing, advertising, promoting, packaging, distributing, and selling of Roundup that a reasonably careful manufacturer would use in similar circumstances to avoid exposing others to a foreseeable risk of harm.

47.53.    Monsanto breached that duty by continuing to manufacture, market, advertise, promote, package, distribute, and sell Roundup after it knew of the danger of Roundup causing cancer.

48.54.    Monsanto also breached that duty by failing to give adequate warning of known or reasonably anticipated dangers, such as causing cancer, with the use of Roundup because

7

MDL No. 2741, Case No. 3:16-md-02741-VC
Case No. 3:21-cv-07744-VC
Second Amended Complaint and Demand for Jury Trial

injury to a user could be reasonably anticipated if an adequate warning was not given for a

reasonably foreseeable use of the product.

49.55.    At all times relevant to this litigation, Monsanto knew, or should have known, of

the hazards and dangers of Roundup and, specifically, the carcinogenic properties of glyphosate.

50.56.    Monsanto knew or, in the exercise of reasonable care, should have known that the

use of, or exposure to, Roundup could cause or be associated with cancer and thus created a

dangerous and unreasonable risk of injury to the users of Roundup, including Dr. Horner.

51.57.    Despite the knowledge of glyphosate's carcinogenic properties, and the ability to

investigate, study, and test Roundup and to provide adequate warnings, Monsanto failed to do so.

52.58.    In fact, Monsanto wrongfully concealed information and made false and/or

misleading statements concerning the safety of Roundup.

53.59.    Monsanto's negligence included:

 a.  Manufacturing, producing, promoting, formulating, creating, developing,
designing, selling, and/or distributing Roundup without thorough and adequate
pre-and post-market testing;

 b.  Manufacturing, producing, promoting, formulating, creating, developing,
designing, selling, and/or distributing Roundup while negligently and/or
intentionally concealing and failing to disclose the results of trials, tests, and
studies of exposure to glyphosate, and the risk of serious harm to humans as a
result of the use and exposure to Roundup;

 c.  Failing to use reasonable and prudent care in the design, research, manufacture,
and development of Roundup products so as to avoid the risk of serious harm
associated with the use of Roundup;

 d.  Failing to design and manufacture Roundup so as to ensure that it was at least as
safe and effective as other herbicides in the market;

8

**Exhibit A**

MDL No. 2741, Case No. 3:16-md-02741-VC
Case No. 3:21-cv-07744-VC
Second Amended Complaint and Demand for Jury Trial

    e.   Failing to provide adequate instructions, guidelines, and safety precautions to those who Monsanto could reasonably foresee would use and be exposed to Roundup;

    f.   Failing to warn consumers, including Dr. Horner, that the use of and exposure to Roundup presented sever risks of cancer and other grave illnesses;

    g.   Failing to warn consumers, including Dr. Horner, that Roundup's risk of harm was unreasonable and that there were safe and effective alternative herbicides available;

    h.   Systematically suppressing or downplaying evidence about the risks, incidence, and prevalence of the dangers of Roundup and glyphosate;

    i.   Representing that Roundup was safe for its intended use when, in fact, Monsanto knew or should have known that Roundup was not safe for its intended purpose;

    j.   Refusing or declining to make or propose any changes to Roundup's labeling or other promotional materials that would alert consumers, including Dr. Horner, of the risks of Roundup and glyphosate;

    k.   Advertising, marketing, and recommending the use of Roundup, while concealing and failing to disclose or warn of the dangers known by Monsanto to be associated with or caused by the use of or exposure to Roundup and glyphosate; and

    l.   Continuing the manufacture and sale of Roundup with the knowledge that Roundup was unreasonably unsafe and dangerous.

54.60.    Monsanto's conduct, as described in this Amended Complaint, was reckless. Monsanto regularly risked the lives of consumers and users of Roundup, including Dr. Horner, while knowing of the dangers of glyphosate.

55.61.    Monsanto made conscious decisions not to redesign, relabel, warn, or inform the public, including homeowners with lawns and/or acreages, including Dr. Horner.

56.62.    Roundup was expected by Monsanto to reach the general public, including homeowners with lawns and/or acreages like Dr. Horner.

**Exhibit A**

MDL No. 2741, Case No. 3:16-md-02741-VC
Case No. 3:21-cv-07744-VC
Second Amended Complaint and Demand for Jury Trial

~~57.~~ 63.    Roundup did in fact reach the general public, including homeowners with lawns and/or acreages like Dr. Horner, without substantial unforeseeable change in the condition the Roundup was in when it left Monsanto's control.

64. Roundup caused Dr. Horner's diffused large B-cell non-Hodgkin lymphoma, subtype S disease.

~~58.~~ 65.    Dr. Horner died as a result of Monsanto's conduct and his exposure to Roundup.

**Count 4**
(*Punitive Damages*)

~~59.~~ 66.    ~~Dr. Horner~~ Plaintiff restates the preceding paragraphs of this Second Amended Complaint as though fully set forth herein.

~~60.~~ 67.    Monsanto acted with oppression, fraud, and/or malice, as established in this Complaint, and punitive damages are necessary and appropriate in order to punish and deter.

**Requested Relief**

~~Dr. Horner~~ Plaintiff Deborah Horner requests the following relief:

1.  Enter judgment in ~~Dr. Horner's~~ Deborah Horner's favor, individually and as Personal Representative of the Estate of Dr. William H. Horner.

2.    Award Plaintiff Deborah Horner, as Personal Representative of the Estate of Dr. William H. Horner, ~~Dr. Horner~~ compensatory damages, plus pre-judgment interest thereon.

~~2.~~ 3.    Award Plaintiff Deborah Horner, in her individual capacity, compensatory damages, plus pre-judgment interest thereon, including compensation for all damages resulting from Dr. Horner's wrongful death, including but not limited to lifetime loss of support, advice,

10

**Exhibit A**

MDL No. 2741, Case No. 3:16-md-02741-VC
Case No. 3:21-cv-07744-VC
Second Amended Complaint and Demand for Jury Trial

counsel, comfort, assistance, protection, care, guidance, services, and companionship of Dr.

Horner, and other pecuniary loss.

3.4.        Award attorneys' fees and other costs as allowed by law.

4.5.        Award punitive damages as allowed by law.

5.6.        Grant such other further relief as the Court deems appropriate.

**Demand for Jury Trial**

Plaintiff~~Dr. Horner~~ respectfully demands a trial by jury on all issues so triable.

11

**Exhibit A**

MDL No. 2741, Case No. 3:16-md-02741-VC
Case No. 3:21-cv-07744-VC
Second Amended Complaint and Demand for Jury Trial

Dated:  XXXXXXX, 2022.

FULLER, WILLIAMSON, NELSEN
& PREHEIM, LLP

_/s/ Derek A. Nelsen_
Derek A. Nelsen
Eric T. Preheim
7521 South Louise Avenue
Sioux Falls, SD 57108
(605) 333-0003
dnelsen@fullerandwilliamson.com
epreheim@fullerandwilliamson.com
*Attorneys for Plaintiff*

### Certificate of Service

I certify that on XXXXXXX, 2022, I e-filed and served via CM/ECF Filer (PACER), a true and correct copy of the Second Amended Complaint and Demand for Jury Trial, on:

Ryan S. Killian (rkillian@shb.com)
SHOOK, HARDY & BACK L.L.P.
*Attorney for Monsanto Company, Inc.*

_/s/ Derek A. Nelsen_
One of the Attorneys for Plaintiff

12

**Exhibit A**

FULLER, WILLIAMSON, NELSEN & PREHEIM, LLP
Derek A. Nelsen
Eric T. Preheim
7521 South Louise Avenue
Sioux Falls, SD 57108
(605) 333-0003
dnelsen@fullerandwilliamson.com
epreheim@fullerandwilliamson.com
 *Attorneys for Plaintiff Dr. William Horner*

UNITED STATES DISTRICT COURT
STATE OF CALIFORNIA
NORTHERN DISTRICT

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Deborah H. Horner, individually and as Personal Representative of the Estate of William J. Horner v. Monsanto Company, Inc.*, Case No. 3:21-cv-07744-VC. | **ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

Plaintiff Deborah H. Horner, individually and as Personal Representative of the Estate of William J. Horner, through counsel, filed an Unopposed Motion for Leave to File Second Amended Complaint in the above-captioned action.  Based on Plaintiff's Motion, and for good cause appearing, it is

**ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint is **GRANTED**, and Plaintiff is permitted to finalize and file the Second Amended Complaint as outlined in the draft attached to Plaintiff's Motion.

Dated:_____, 2022.

BY THE COURT

_____
The Honorable Vince Chhabria
District Court Judge