JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, D.C. 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, D.C. 20036
Tel.: (202) 847-4030
Fax: (202) 847-4005

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT GILMORE, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>MONSANTO COMPANY,<br><br>Defendant. | MDL No. 2741<br><br>Case No. 3:21-cv-08159<br><br>**MONSANTO COMPANY'S REPLY TO OPPOSITION OF LEONARD, CERVANTES, & GODSEY TO PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:  April 14, 2022<br>Time:  10:00 AM<br>Place:  Via Zoom Webinar<br>Judge:  Hon. Vince G. Chhabria |

**TABLE OF CONTENTS**

LEGAL STANDARDS ........................................................................................................... 1
ARGUMENT ......................................................................................................................... 3
   I.   THE SETTLEMENT IS NOT UNREASONABLE, UNFAIR, OR INADEQUATE ......... 3
      A.  The Settlement Does Not Release Uncompensated Claims or Claims Based on a Different Factual Predicate. ................................................................................... 3
      B.  The Release's Exclusion of Personal Injury Claims Is Not Ambiguous ......................... 5
   II.  THE SETTLEMENT IS NOT COLLUSIVE. ................................................................. 7
   III.  OBJECTORS' PROPOSED "CORRECTIVE ACTION" IS UNNECESSARY AND INAPPROPRIATE. ........................................................................................................ 9
CONCLUSION ..................................................................................................................... 10

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Baby Prod. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) ...................................................................................................8

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...............................................................................................2, 7

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ........................................................................................ passim

*Caliber One Indem. Co. v. Wade Cook Fin. Corp.*,
  491 F.3d 1079 (9th Cir. 2007) ...................................................................................................7

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ..................................................................................................2

*Chen v. Chase Bank USA, N.A.*,
  2020 WL 3432644 (N.D. Cal. June 23, 2020) ..........................................................................9

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ..................................................................................................3

*Harvey v. Morgan Stanley Smith Barney LLC*,
  2020 WL 1031801 (N.D. Cal. Mar. 3, 2020) ............................................................................7

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ...............................................................................................4, 5

*In re Hyundai*,
  926 F.3d 539 (9th Cir. 2019) ....................................................................................................4

*Jabbari v. Farmer*,
  965 F.3d 1001 (9th Cir. 2020) ..................................................................................................4

*Kim v. Allison*,
  8 F.4th 1170 (9th Cir. 2021) .....................................................................................................2

*Kudatsky v. Tyler Techs., Inc.*,
  2021 WL 5356724 (N.D. Cal. Nov. 17, 2021) .........................................................................2

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ................................................................................................5, 9

*Lembeck v. Arvest Cent. Mortg. Co.*,
   2021 WL 5494940 (N.D. Cal. Aug. 26, 2021) ........................................................................2

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) .................................................................................................1

*Smith v. CRST Van Expedited, Inc.*,
   2012 WL 5873701 (S.D. Cal. Nov. 20, 2012) .........................................................................3

*Westfall v. Ball Metal Beverage Container Corp.*,
   2021 WL 4206851 (E.D. Cal. Sept. 16, 2021) ........................................................................8

*Zepeda v. PayPal, Inc.*,
   2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ........................................................................5

**Other Authorities**

67A Am. Jur. 2d Sales § 1104 .........................................................................................................4

Dee Pridgen et al., Consumer Protection and the Law, § 6:4 (2021-2021) ....................................3

Fed. R. Civ. P. 23 ............................................................................................................................1

11 Williston on Contracts § 32:2 (4th ed.) ......................................................................................6

Objectors George Leonard, Valentin Cervantes, and Patricia Godsey's ("Objectors") argument that the proposed settlement seeks to release "more meritorious" and "uncompensated" claims not based on the same factual predicate as the underlying lawsuit is simply not correct. The Settlement, Plaintiffs' motion for preliminary approval ("Motion"), the proposed notice materials, and numerous other submissions by both Parties make this abundantly clear. And ironically, the types of claims Objectors identify as supposedly swept up in the Settlement's "overbroad" release (misrepresentation and contract claims) *do* arise from the same factual predicate and *are* the types of claims asserted in this case.

Objectors' conclusory argument that the Settlement is collusive fares no better. The supposed "red flags" of collusion identified by Objectors are common and appropriate settlement features, and Objectors offer no reason to believe they are problematic in this case. Objectors succeed only in highlighting potential dangers posed by settlements that lack the many safeguards present here. This Court should reject Objectors' arguments and grant preliminary approval.

## LEGAL STANDARDS

Objectors incorrectly argue, relying on *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021), that a proposed pre-certification settlement should face "a presumption of unfairness." Opp. at 4. It is true that *Briseño* rejected the argument that such a proposed settlement enjoys a presumption of fairness. But that does not mean, and *Briseño* did not hold, that settling parties must *rebut* a presumption of *un*fairness. Rather, the court affirmed, as has long been understood, that the proponents of a settlement bear the burden of proving that it meets Rule 23's requirements. *Briseño*, 998 F.3d. at 1029. The district court must "conduct[] its own independent analysis, and then consider" any objections. *Id*. (citing *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019)). *Briseño* reaffirmed that there "is a strong judicial policy that *favors* settlements, particularly where complex class action litigation is concerned." *Id*. at 1031 (citations omitted) (emphasis added). In any event, Plaintiffs' Motion surely did not rely on any presumption of

1

fairness—it carefully walked through the relevant requirements for certification and approval and included arguments and evidence for why each was met.  Mot. at 13-44.

Objectors' argument that the Motion applied the wrong legal standards by analyzing the "*Churchill* factors," and that Plaintiffs "(mis)stat[ed]" the law on this point (Opp. at 5-6), is also wrong.  The Ninth Circuit has *repeatedly* relied on the *Churchill* factors to guide its analysis in cases post-dating the 2018 amendments to Rule 23(e), as have courts in this district.  *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020); *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *Kudatsky v. Tyler Techs., Inc.*, 2021 WL 5356724, at *1 (N.D. Cal. Nov. 17, 2021); *Lembeck v. Arvest Cent. Mortg. Co.*, 2021 WL 5494940, at *3 (N.D. Cal. Aug. 26, 2021) (Chhabria, J.) ("Courts in the Ninth Circuit consider specific factors when approving a [class-action] settlement.") (citing *Churchill*).  Objectors' own authority notes that "many of the [*Churchill*] factors fall within the ambit of the revised Rule 23(e)."  *Briseño*, 998 F.3d at 1026.  And as both the Ninth Circuit and the advisory committee have explained, Rule 23(e)'s 2018 amendment was "'not to displace' any of the factors historically considered in assessing settlement fairness."  *Campbell*, 951 F.3d at 1121 n.10.  Objectors' suggestion that the Motion misstated the law on this point borders on frivolous.

Objectors do not argue that the Motion failed to substantively address any of Rule 23(e)'s enumerated considerations.  *Compare* Rule 23(e)(2)(A)-(D), *with* Mot. at 14-15, 19-30, 32, 36-37, 39 (discussing adequacy of class representatives and Class Counsel, arm's-length negotiation, adequacy of relief, and fairness of allocation of fund to Class Members).  Instead, they argue "the *Churchill* factors are insufficient to support a reasonableness determination in the presence of the *Bluetooth* red flags of collusion."  Opp. at 6 (referring to *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  But Plaintiffs' Motion spends nearly *six pages* discussing the *Bluetooth* factors and why they do not undermine the Settlement.  Dkt. 94 at 33-38.  The Motion critically analyzes the "terms of the settlement" and "terms of any proposed award of attorney's

2

fees"—particularly those that Objectors contend render the Settlement unfair or collusive.[1] Objectors' contentions should be rejected.

## ARGUMENT

**I.    THE SETTLEMENT IS NOT UNREASONABLE, UNFAIR, OR INADEQUATE.**

    **A.    The Settlement Does Not Release Uncompensated Claims or Claims Based on a Different Factual Predicate**.

Objectors' chief professed concern with the Settlement's fairness and adequacy is that "the proposed settlement is not reasonable because it involves the release of claims not asserted in the *Gilmore* Plaintiffs' complaint and not compensated by the settlement." Opp. at 6-7. This argument fails on several grounds.

First, the purportedly "more meritorious" claims that Objectors argue are not asserted in this case and therefore uncompensated by the Settlement are claims "for false [sic] misrepresentation and breach of contract. . . ." Opp. at 8. Yet, as Objectors elsewhere acknowledge, those are *exactly* the claims the *Gilmore* complaint asserts: a Delaware Consumer Fraud Act claim based on alleged misrepresentations and a contract claim based on breach of warranty. *Id*. at 7. In exchange for the release, Class Members receive compensation for what they allegedly overpaid because of the asserted misrepresentation and breach of warranty, which is the proper measure of damages for both types of claims. *See* Dee Pridgen et al., Consumer Protection and the Law, § 6:4 (2021–2021) (describing typical consumer-fraud damages measure as "the difference between the value of the item as represented and what the item purchased was actually worth"); 67A Am. Jur. 2d Sales § 1104 (Aug. 2021 Update) (describing similar "difference in value" measure for breach of warranty). It is therefore unclear what kinds of claims Objectors are even contending were not asserted in *Gilmore* but released by the Settlement.[2]

---

[1] Given the thorough analysis required by this Court's Class Action Guidance and Your Honor's standing order, Plaintiffs went beyond *both* the *Churchill* factors *and* the amended Rule 23(e) factors. Mot. at 38-43.

[2] To the extent Objectors are arguing that some absent class members have stronger state law contract and misrepresentation claims than others, such differences (which Objectors make no attempt to identify or analyze) are not reason to deny the proposed Settlement, which settles only

3

Objectors notably do not claim that their own claims or potential claims are somehow improperly released, but argue only that "the claims released are not based on the identical factual predicate as those in this action." Opp. at 8. They describe the factual predicate as claims based on "the lack of an adequate NHL warning" on Roundup® products, but they say the Settlement "goes well beyond this factual predicate, releasing claims for breach of contract, false misrepresentation, and any and all claims related to economic damage." *Id.* at 9. But Objectors describe the factual predicates of this case too narrowly. Plaintiffs allege not just the lack of an "adequate NHL warning," but that Monsanto (1) failed to warn more broadly about the products' carcinogenicity and other health risks; (2) failed to provide EPA with relevant information on the Products' risks; (3) inappropriately "ghostwrote" scientific literature; and (4) warranted to consumers that the only hazard posed by the Products is "moderate eye irritation." Dkt. No. 22 ¶¶ 28-108. The Settlement, in turn, only releases claims that derive from these "same factual predicates." Settlement § L(1); Dkt. 94 at 39; Dkt. 94-4 at 17. Indeed, the release is notably *narrower* than even that because it carves out Personal Injury and Medical Monitoring Claims, even if such claims are otherwise based on the same facts. Settlement § L(1).

Objectors seek to avoid this point by arguing that *Gilmore* only seeks "to recover [a] portion of the purchase price of Roundup products. . . ." Opp. at 9. But the factual predicate is not defined by the measure of damages asserted. As this Court observed in denying remand, "[t]he *Gilmore* action is based on an economic loss theory. . . the MDL claims primarily involve personal injury theories . . . [but], while the legal theories are different, the *factual* allegations are fundamentally the same. . ." Dkt. 88 at 1.[3] Courts routinely and properly approve the release of

---

low-value economic loss claims while carving out high-value personal-injury claims. *See Jabbari v. Farmer*, 965 F.3d 1001, 1007-08 (9th Cir. 2020) (holding courts need not "conduct[] a choice-of-law analysis, despite variations in state law" or "assess the importance of every claim a class might make. . ."); *In re Hyundai*, 926 F.3d 539, 563 (9th Cir. 2019); *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (collecting cases).

[3] Objectors rely on *Hesse*, 598 F.3d at 581, where the Ninth Circuit found that claims alleging Sprint improperly passed government fees on to customers did not stem from the same factual predicate because they were different types of fees from different (state and federal) agencies.

claims by absent class members with alternative damages theories. *Lane v. Facebook, Inc.*, 696 F.3d 811, 825 (9th Cir. 2012) ("It is an inherent feature of the class-action device that individual class members will often claim differing amounts of damages—that is why due process requires that individual members of a class certified under Rule 23(b)(3) be given an opportunity to opt out of the settlement class to pursue their claims separately."); *cf. Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *12 (N.D. Cal. Mar. 24, 2017) ("[Objector's] ancillary contention that Plaintiffs should have taken into account Defendants' potential exposure to punitive damages has likewise been rejected by this Circuit.").

Second, even if breach of contract and misrepresentations had not been asserted by Plaintiffs, just as with alternative damages theories, "it is well within this Court's authority to release derivative claims, even if they are not expressly asserted in the complaint." *Smith v. CRST Van Expedited, Inc.*, 2012 WL 5873701, at *3 (S.D. Cal. Nov. 20, 2012); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) ("[A] federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action."). This objection should be denied.

### B. The Release's Exclusion of Personal Injury Claims Is Not Ambiguous.

Objectors argue the Settlement is unfair or inadequate because its exclusion of personal-injury claims is "ambiguous." Opp. at 8. Specifically, they argue that the Settlement creates an "inescapable logical loop" because it "expressly contemplate[s] that a cause of action could include both Claims that are Personal Injury Claims and Claims that are not Personal Injury Claims," and yet "includes 'causes of action' within its definition of '[C]laims.'" *Id.* at 9. This argument is both textually wrong and unnecessary in light of the plain record confirming that Monsanto intends personal-injury claims to be excluded from the release.

---

Opp. at 9-10. Here, the release covers the same products manufactured by the same company with the same alleged health risks.

Textually, Objectors' "logical loop" argument presupposes that "Personal Injury Claims" includes the definition of "Claims," but that is incorrect. Each is a separately defined term. The term "Claim" necessarily includes a "cause of action"—that is one of the primary kinds of Claims that any settling defendant would be concerned about. However, the Settlement defines "Personal Injury Claims" by reference to the *type of relief sought*, not the cause of action brought. In other words, while any given cause of action would be a "Claim" as that term is defined in the Settlement, that same cause of action might be a Personal Injury Claim (i.e., seek damages for personal injuries), might not be a Personal Injury Claim (i.e., seek damages that do not stem from personal injuries), or might be a Personal Injury Claim in one relevant part and not a Personal Injury Claim in another relevant part. This is not logically inconsistent or difficult to conceptualize. A single failure-to-warn cause of action, for example, might seek both damages amounting to an alleged product overcharge and damages for alleged medical bills and pain and suffering. The Settlement is clear: Class Members release only the former.

It is also unclear as a practical matter why Objectors—particularly Leonard and Cervantes, who do not claim to have potential personal-injury claims (or any claims, for that matter)—are concerned about any supposed ambiguity. As Objectors appear to concede (*id.*), both Monsanto and Plaintiffs have *repeatedly* stated on the record—and Monsanto repeats again here—that their intent is *not* to release personal-injury or medical-monitoring claims. Dkt. No. 25 at 2 ("Class Members . . . do *not* release any claims for personal injury—which claims are expressly preserved by the Settlement.") (emphasis in original); *see also* Dkt. 98 at 15 ("Class Members release only similar claims based on the same factual predicate, while retaining all Personal Injury Claims."). Objectors' alleged "ambiguities in the agreement" cannot possibly, as Objectors suggest, "undermine these representations" because it is the intent of contracting parties that controls contractual interpretation. Opp. at 9; *see* 11 Williston on Contracts § 32:2 (4th ed.) (holding that contracting "parties' language must be construed in light of their expressed objectives and their fundamental purposes in entering the contract"). Objectors cite a standard for interpreting contractual ambiguities when such intent is not known or is in dispute, but that is not the case here

precisely *because* of the Parties' assurances. *See* Opp. at 9 (citing *Caliber One Indem. Co. v. Wade Cook Fin. Corp.*, 491 F.3d 1079, 1084 (9th Cir. 2007)). Stated otherwise, even if there were ambiguity in the wording of the release that could later be argued to defeat a personal-injury or medical-monitoring claim (and there is not), Monsanto would surely be barred from exploiting such an ambiguity based on its repeated on-the-record assurances that such is not its intent.

## II.   THE SETTLEMENT IS NOT COLLUSIVE.

Objectors argue the Settlement is "particularly unwarranted" because of "the presence of two of the three *Bluetooth* collusion factors . . . [which include] a clear-sailing provision . . . [and a] disproportionate amount of the settlement allocated to class counsel." Opp. at 10-11. But beyond concluding that the existence of such features is "incredibly worrisome" and that therefore the Settlement "demand[s] more attention and scrutiny," Objectors make no substantive arguments supporting any inference of collusion based on the facts of this case. *Id.* at 11-12 (citing *Briseño*, 998 F.3d at 1026.).

Monsanto disagrees that any such red flags are present. *See* Mot. at 33-38; Dkt. No. 98 at 10-13; Dkt. No. 83 at 2-7. But even if they were, Plaintiffs spent six pages in their Motion addressing the *Bluetooth* factors and distinguishing this case from cases where they present valid concerns—arguments that Objectors do not even address. And the mere presence of such factors, which is all Objectors assert, does not make a settlement improper or collusive. *See Harvey v. Morgan Stanley Smith Barney LLC*, 2020 WL 1031801, at *5 (N.D. Cal. Mar. 3, 2020) ("While there may be a clear sailing provision in the settlement, that is not enough to indicate signs of collusion.").

At best, Objectors speculate that it is "quite conceivable that class counsel bargained away releases for the unrelated claims of breach of contract and false misrepresentation in order to secure Monsanto's agreement not to oppose their (excessive) fee requests." Opp. at 11. But again, contract and misrepresentation claims that arise from the same factual predicates asserted in this case are not "unrelated claims"—they are the exact same kinds of claims asserted in this case.

7

Objectors also say nothing of the ways this case differs from cases like *Briseño*, upon which they again rely. As explained in the Motion, Monsanto agreed not to oppose *the benchmark* (25%) of fees in this circuit, attorneys' fees are to be paid from the same fund as the class (aligning the Settlement Class and Class Counsel's interests), and any unawarded attorneys' fees are available for Class Members to claim. Dkt. 94 at 34-35. Courts have distinguished *Briseño* on these bases, even where the defendant agreed not to oppose *an even higher* award based on the gross settlement fund. For example, in *Westfall v. Ball Metal Beverage Container Corp.*, the court explained:

> [U]nlike in *Briseño* where class counsel's fees constituted 88 percent of the settlement award, here class counsel will receive only 33 percent . . . [and] [w]hile 33 percent is on the higher side, it is a far cry from the concerning 88 percent fee in *Briseño*.

2021 WL 4206851, at *5 (E.D. Cal. Sept. 16, 2021).

Objectors argue that, if the claims rate is low, Plaintiffs' counsel could receive a disproportionate payment vis-à-vis the Settlement Class. This is speculation, and it ignores the Court's role in approving requested fee awards. The claims rate remains unknown. And while the Parties expect a claims rate consistent with other consumer cases, the Settlement was negotiated to provide an amount adequate to compensate even a claims rate on the high end (if it were not, Objectors would be arguing the gross settlement amount was inadequate based on the size of the class). Monsanto agreed not to oppose the benchmark, with the understanding that the ultimate amount of fees awarded to Plaintiffs' counsel lies within the sole discretion of this Court, and with an express agreement by Plaintiffs that this does not affect the rest of the Settlement.

Moreover, the Parties did not stop there. Objectors decry the proposed Floor Amount and the possibility that, if it is not reached (and if the Court approves the full 25% award), Class Counsel could receive roughly half the final cash value of the Settlement. But this is a safeguard *against* a disproportionate fee award that was absent in cases like *Briseño*. *See* Dkt. 94 at 34-35. Moreover, courts often approve fee awards based on the available fund. *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013) (concluding that "[c]lass counsel should not be penalized for these or other legitimate reasons [for a low claims rate] unrelated to the quality of representation

8

they provided," or "discourage[d] . . . from filing class actions in cases where few claims are likely . . . but the deterrent effect of the class action is equally valuable"); *Chen v. Chase Bank USA, N.A.*, 2020 WL 3432644 (N.D. Cal. June 23, 2020) (approving a settlement where the class payout was $180,000 and the unopposed fees were $185,000).

Finally, collusion was not actually *found* in any of the cases Objectors rely on. In those cases, the Ninth Circuit merely remanded because it did not believe the district court gave sufficient consideration to the red flags it identified. Considering the extensive briefing before this Court on the subject of collusion, this will surely be no issue here. As such, these cases are no reason to reject the Settlement.

### III. OBJECTORS' PROPOSED "CORRECTIVE ACTION" IS UNNECESSARY AND INAPPROPRIATE.

The Parties have already limited the scope of the release to claims based on the same factual predicate asserted in this lawsuit. They further limited the release to economic-loss claims, and *further still* to economic-loss claims that do not arise from alleged personal injuries. This is more than the Parties were obligated to do, yet Objectors want them to specify that released claims include only "restitution or damages for the purchase price of the product." Opp. at 12. Notably, Objectors have not identified what kinds of economic losses could flow from this factual predicate that are not related to what was paid for the product (which losses are released) or what was caused by the alleged health effects (which losses are not).

But if such claims do exist, it is appropriate to include them in the release—Monsanto is entitled to seek global peace, particularly where it is carving out higher-value claims for personal injury or medical monitoring. As Objectors' favorite case emphasizes, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Briseño*, 998 F.3d at 1031. And if Objectors, or any other Class Members, believe they have some creative, non-personal-injury economic-loss theory for which the offered compensation is inadequate, they will be "given an opportunity to opt out of the settlement class to pursue their claims separately." *Lane*, 696 F.3d at 825.

9

## CONCLUSION

The Settlement is reasonable and adequate and does not release uncompensated claims or claims based on a different factual predicate. There is no evidence of collusion—the evidence is to the contrary. The Court should reject Objectors' arguments and grant the Motion.

Dated:    March 31, 2022

By:   /s/ John J. Rosenthal

JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, D.C. 20036

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202

SHAWN R. OBI
Winston & Strawn, LLP
sobi@winston.com
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, D.C. 20036

RAKESH KILARU
Wilkinson Stekloff LLP
rkilaru@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, D.C. 20036

*Counsel for Monsanto Company*