

**assurance  –  consulting  –  tax  –  technology**

**pncpa.com**

# Exhibit A: Notice of Class Action Settlement

## <u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

*Gilmore et al. v. Monsanto Company, et al.*
No. 3:21-cv-8159 (N.D. Cal.)

*The United States District Court authorized this Notice.*
*It is not a solicitation from a lawyer. You are not being sued.*

You may be a Class Member entitled to a cash payment under a Settlement relating to false advertising and breach of warranty claims if you purchased certain **Roundup®**, **HDX®, or Ace®** brand glyphosate-based weed-killer products (the "Products").

> **CLASS MEMBERS WILL RETAIN THEIR RIGHT TO SUE OR MAINTAIN AN ACTION CLAIMING THAT THEY CURRENTLY HAVE, OR LATER DEVELOP, CANCER OR ANY OTHER PERSONAL INJURY FROM USING OR BEING EXPOSED TO THE PRODUCTS**

The Products at issue in the Settlement include:

| | |
|---|---|
| **Roundup® Ready-to-Use Weed & Grass Killer** | **Roundup® Ready-to-Use Max Control 365** |
| **Roundup® Ready-to-Use Weed & Grass Killer Plus** | **Roundup® Concentrate Max Control 365** |
| **Roundup® Weed & Grass Killer Concentrate Plus** | **Roundup® Weed & Grass Killer Sure Shot Foam** |
| **Roundup® Weed & Grass Killer Super Concentrate** | **Roundup® Precision Gel Weed & Grass Killer** |
| **Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer** | **Roundup® Pro Concentrate (2.5 Gal.)** |
| **Roundup® Ready-to-Use Wild Blackberry Plus Vine and Brush Killer** | **HDX® Weed & Grass Killer Ready-to-Use** |
| **Roundup® Concentrate Poison Ivy Plus Tough Brush Killer** | **HDX® Weed & Grass Killer Concentrate** |
| **Roundup® Concentrate Wild Blackberry Plus Vine and Brush Killer** | **Ace® Ready-to-Use Weed & Grass Killer** |
| **Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer** | **Ace® Weed & Grass Killer Concentrate** |
| **Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer** | |

### Examples of Covered Products:



**<u>THIS NOTICE CONCERNS YOUR LEGAL RIGHTS</u>**
**<u>PLEASE READ IT CAREFULLY</u>**

WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

The proposed Class Action Settlement Agreement ("Settlement" or "Agreement") will provide the Class with monetary relief in an amount not less than **$23 million** (the "Floor Amount") and not greater than **$45 million** (the "Ceiling Amount") to pay all aspects of the Settlement, including, but not limited to, all costs of Class Notice, Claims Administration Expenses, Class Member Claims, Class Representative service awards, Class Counsel's Expenses, and Class Counsel's Fees.

This is not a personal-injury settlement and does not provide relief for personal injury or sickness. **<u>CLASS MEMBERS WILL RETAIN THEIR RIGHT TO SUE OR MAINTAIN AN ACTION CLAIMING THAT THEY CURRENTLY HAVE OR LATER DEVELOP CANCER OR ANY OTHER PERSONAL INJURY FROM USING OR BEING EXPOSED TO THE PRODUCTS</u>**.

Class Members will be able to make claims for payments for the Roundup®, HDX®, and Ace® Products listed below, equivalent to approximately 20% of their weighted average retail price during the relevant class period. Payments per unit range from $0.50 to $33.00, depending on the price of the product(s) purchased, for between 2 and 11 units without proof of purchase, depending on the state of purchase. The amount available for each Product is shown in **Appendix 1.** With the exception of the three largest concentrated Products, claims can be made without proof of purchase, but such claims are limited to 1 unit per year within the Class Period. For example, if a Claimant purchased a 1.33 gal. container of Roundup® Ready to Use Max Control 365 in California at least once a year since 2015, the refund amount could be $42.00 without proof of purchase.

An unlimited number of bottles of the Products can be claimed if the Class Member provides valid proof of purchase for each Product purchased. Claimants may be contacted and required to also provide a declaration signed under penalty of perjury that provides additional information to confirm that the proof of purchase is genuine and sufficient.

If total claims submitted by Authorized Claimants exceed the Ceiling Amount after all other expenses are deducted, the amount refunded to Authorized Claimants will be reduced *pro rata*. On the other hand, if total claims submitted are below the Floor Amount after all other expenses are deducted, the amount refunded to Authorized Claimants will be increased *pro rata*.

If uncashed checks cause the total amount paid by Monsanto to fall below the Floor Amount, that amount will be distributed *pro rata* to Class Members if a further distribution is economically feasible. Otherwise, that amount will be donated to the National Consumer Law Center.

<u>WHY IS THERE A NOTICE?</u>

You have the right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. This Notice explains the lawsuit, the settlement, your legal rights, and what benefits are available and how to get them.

The court in charge of this case is the United States District Court for the Northern District of California (the "Court"), and the case is called *Scott Gilmore et al. v. Monsanto Company, et al.*, No. 3:21-cv-8159 (N.D. Cal.). The case is assigned to District Judge Vince Chhabria. The individuals who sued are called the Class Representatives, and the company they sued, Monsanto Company ("Monsanto"), is called the Defendant.

If you are a Class Member, unless you exclude yourself from the Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Defendant, any Retailers of the Products, or any other Released Persons, about the claims released in this Settlement. That also means that all decisions by the Court will bind you. The Released Claims and Released Persons are defined in the Settlement Agreement and describe the legal claims that you give up (or "release") if you stay in the Settlement. The Released Claims relate to the same facts, products, and issues raised in the lawsuit (also referred to as claims arising from an "identical factual predicate"). The Released Claims DO NOT include claims that you developed cancer, or any other personal injury, as a result of using or being exposed to the Products. A detailed description of the Released Claims is included in **Appendix 2.** The Settlement Agreement is available on the Settlement Website, www.WeedKillerAdSettlement.com.

WHAT IS THE LAWSUIT ABOUT?

The lawsuit seeks to obtain compensation for alleged false advertising and breach of warranty. Plaintiffs argue that Defendant falsely advertised and promoted the Products by failing to disclose that the Products, and their active ingredient, glyphosate, could potentially cause cancer or other adverse health effects. If you purchased any of the Products during the Class Period for purposes other than resale or distribution, you are in the Class.

Monsanto denies Plaintiffs' allegations and any wrongdoing and disputes the Class's right to recover anything. Nevertheless, it has agreed to settle the lawsuit for the purpose of avoiding the time and expense of further litigation.

This case is not a personal-injury case. Plaintiffs do not allege that they were injured or became ill from using the Products. You need not have suffered personal injury to be a member of the Class or to file a claim. And the Settlement does not release any claims you may have against Monsanto or anyone else that you developed cancer, or any other personal injury, as a result of using or being exposed to the Products.

WHY IS THIS A CLASS ACTION?

In a class action, one or more people called "class representatives or plaintiffs (in this case, Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kristy Williams), sue on behalf of people who have similar claims and so are all part of a "class" and called "class members." Bringing a case, such as this one, as a class action allows the adjudication of many similar claims of consumers that might be economically too small to bring in individual actions. One court resolves the issues for all class members, except for those who exclude themselves from the class.

WHY IS THERE A SETTLEMENT?

Plaintiffs and Class Counsel have evaluated the information made available during the lawsuit and have taken into account the risks and uncertainties of proceeding with this litigation, including the risks and uncertainties of class certification, prevailing on the merits, proving damages at trial, and prevailing on post-trial motions and appeal. Based upon their consideration of these factors, Plaintiffs and Class Counsel believe it is in the best interests of the Class to settle the lawsuit and provide an opportunity for Class Members to receive a settlement payment.

Monsanto denies Plaintiffs' allegations and any wrongdoing, and the Class's right to recover anything. Nevertheless, it has agreed to settle the lawsuit for the purpose of avoiding the time and expense of further litigation.

The terms of the proposed Settlement are set forth in more detail in the Agreement filed with the Court, which is also available on the Settlement Website, at www.WeedKillerAdSettlement.com.

THE CLASS

The Court has certified a Settlement Class defined as:

> All Persons in the United States, who, during the Class Period, purchased Products (as defined below) in the United States other than for resale or distribution.

The "Products" are defined as:

- Roundup® Ready-to-Use Weed & Grass Killer (all sizes, applicators, and varieties)
- Roundup® Ready-to-Use Weed & Grass Killer Plus (all sizes, applicators, and varieties)
- Roundup® Weed & Grass Killer Concentrate Plus (all sizes and varieties)
- Roundup® Weed & Grass Killer Super Concentrate (all sizes and varieties)
- Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer (all sizes and varieties)
- Roundup® Ready-to-Use Wild Blackberry Plus Vine and Brush Killer (all sizes and varieties)
- Roundup® Concentrate Poison Ivy Plus Tough Brush Killer (all sizes and varieties)
- Roundup® Concentrate Wild Blackberry Plus Vine and Brush Killer (all sizes and varieties)
- Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all sizes and varieties)
- Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer (all sizes and varieties)
- Roundup® Ready-to-Use Max Control 365 (all sizes and varieties)
- Roundup® Concentrate Max Control 365 (all sizes and varieties)
- Roundup® Weed & Grass Killer Sure Shot Foam (all sizes and varieties)
- Roundup® Precision Gel Weed & Grass Killer (all sizes and varieties)
- Roundup® Pro Concentrate (2.5 gal.)
- HDX® Weed & Grass Killer Ready-to-Use (all sizes and varieties)

- HDX® Weed & Grass Killer Concentrate (all sizes and varieties)
- Ace® Ready-to-Use Weed & Grass Killer (all sizes and varieties)
- Ace® Weed & Grass Killer Concentrate (all sizes and varieties)

The "Class Period" depends on the state where each Class Member made his or her purchases. **A list of the applicable Class Periods for each State is located {HERE} and also attached to this Notice as Appendix 3. You should check it carefully to ensure your purchase was made within the applicable Class Period for your state.**

The Products were sold widely at Home Depot, Lowe's, and Wal-Mart, in all 50 states and the District of Columbia, and in the United States territories, and were also available at stores including, but not limited to, Target, Ace Hardware, True Value, Orchard Supply, and Amazon.com.

HOW DO I KNOW IF I AM A CLASS MEMBER?

You are a member of the Class if you:

- *Purchased a Roundup®, Ace®, or HDX® Product included in the Class definition above,*

- *During the Class Period applicable to your state (see Appendix 3 to this Notice), and*

- *For purposes other than distribution or resale.*

If you are not sure whether you are a Class Member, or have any other questions about the Settlement, you should visit the Settlement Website, www.WeedKillerAdSettlement.com, or call the Claims Administrator toll-free at 1-833-749-1489.

WILL THE SETTLEMENT AFFECT MY RIGHT TO SUE OR MAINTAIN AN ACTION IF I CLAIM THAT I HAVE OR LATER DEVELOP CANCER OR OTHER PERSONAL INJURY FROM USING OR BEING EXPOSED TO THE PRODUCTS?

No. You can participate in the settlement without releasing any claims you may have against Monsanto or anyone else that you developed cancer, or any other personal injury, as a result of using or being exposed to the Products. This case is not a personal-injury case. Plaintiffs do not allege that they were injured or became ill from using the Products. You need not have suffered personal injury to be a member of the Class or to participate in the settlement.

<u>YOUR RIGHTS TO PARTICIPATE IN, EXCLUDE YOURSELF FROM, OR OBJECT TO THE SETTLEMENT</u>

| Summary of Your Legal Rights & Options | | Deadline |
|---|---|---|
| **Submit a Claim Form** | This is the only way to get a cash payment. Claim Forms must be submitted online or mailed to the Claims Administrator by the Claims Deadline. | Claim Deadline |
| **Ask To Be Excluded (i.e., "Opt Out")** | **Get out of this settlement. Get no benefits from it. Keep your rights.** If you ask to be excluded (i.e., "opt out"), you will not be bound by this Settlement and will keep any right you might have to sue Monsanto separately or participate in another lawsuit about the same legal claims in this lawsuit. If there is a recovery from the proposed Settlement, you will not share in that recovery. For instructions on how to exclude yourself, see page XX | Deadline |
| **Object** | **Tell the Court why you believe the proposed Settlement is unfair, unreasonable, or inadequate.** You may file a written objection and/or appear at the Final Approval Hearing to tell the Court why you believe the proposed Settlement is unfair, unreasonable, or inadequate. You may still file a claim even if you object. If you ask to be excluded from the Class (i.e., "opt out"), you may not file an objection or a claim. For instructions on how to object, see page XX | Deadline |
| **Do Nothing** | **Stay in this lawsuit. Await the outcome. Give up certain rights.** By doing nothing, you will get no cash payment, but if the Settlement is approved, you will be giving up any right you may have to sue Monsanto separately about the same legal claims in this lawsuit. | No Deadline |

<u>HOW DO I MAKE A CLAIM?</u>

You must submit a Claim Form to get a monetary payment. Claim Forms are simple and easy to complete, requiring (i) contact information; (ii) proof of purchase or information about the identity and quantity purchased; (iii) the retail location (including city and state) of the purchase; (iv) the approximate date of purchase; and (v) your affirmation that the information provided is true and correct. In exchange for receiving a monetary payment, under the Settlement Agreement, you will give up your rights to sue the Released Persons about the claims in the lawsuit or any other Released Claims.

Claim Forms must be submitted online or postmarked **no later than [Claim Deadline]**. Claim Forms may be filed online at the Settlement Website, www.WeedKillerAdSettlement.com. Printed

Claim Forms will be mailed to Class Members upon request by calling or writing to the Claims Administrator. Printed Claim Forms should be mailed to:

Gilmore v. Monsanto Co. - Claims
c/o Postlethwaite & Netterville
P.O. Box 4208
Baton Rouge, LA 70821

<u>HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?</u>

If you do not want to be bound by this Settlement, you must request to be excluded from the Class. All Class Members who purchased the Products listed above during the Class Period who do not exclude themselves from the Settlement will be bound by the orders issued by the Court regarding the Settlement.

If you request to be excluded from the Class, you will retain any individual rights you have against Monsanto and will not have "released" Monsanto or any other Released Persons from any claims. However, you will **not** receive the compensation described above. You may not object to the Settlement under this option.

If you wish to be excluded from the Class (also referred to as "opting out"), you must either download and print an Opt-Out Form from the Settlement Website (www.WeedKillerAdSettlement.com) or request that the Claims Administrator send you a paper Opt-Out Form, fill out and sign the Opt-Out Form, and mail it to the Claims Administrator, **postmarked on or before [Opt-Out Deadline],** at the following address:

Gilmore v. Monsanto Co. - Exclusions
c/o Postlethwaite & Netterville
P.O. Box 4208
Baton Rouge, LA 70821

<u>IF I OPT OUT, CAN I STILL GET A SETTLEMENT PAYMENT?</u>

No. You will not get any money from the Settlement if you opt out and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit. If you opt out from the Settlement, do not submit a Claim Form asking for benefits.

<u>HOW DO I TELL THE COURT IF I DON'T LIKE THE SETTLEMENT?</u>

You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

If you want to express an objection to part or all of the Settlement, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If the

7

Settlement is approved, you will still be bound by the Settlement and will receive the Settlement compensation if you file a valid and timely Claim Form.

If you wish to object, you must electronically file a written objection via the Court's Electronic Case Filing (ECF) system; deliver a written objection to the Class Action Clerk by mail, express mail, or personal delivery; or file a written objection in person at any location of the United States District Court for the Northern District of California. The written objection must (a) clearly identify the case name and number (*Gilmore v. Monsanto Co.*, Case No. 3:21-cv-8159); (b) contain information sufficient to identify and contact the objecting you or your attorney; and (c) contain a clear and concise statement of your objection, as well as any facts and law supporting the objection. You may object either on your own behalf or through an attorney hired at your own expense. If you are represented by an attorney, you must either sign the objection yourself or execute a separate declaration stating that you authorize the filing of the objection. You must substantially comply with the foregoing requirements for filing a written objection before appearing at the settlement approval hearing, but these requirements may be excused by the Court for good cause. Objections must be **filed or postmarked no later than [Objection Deadline]**.

If you wish to appear at the Final Approval Hearing, you should file with the Court a notice of intention to appear, either in person or through an attorney **no later than [Objection Deadline]**

The address for the Class Action Clerk is below:

**Class Action Clerk**
United States District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND OPTING OUT?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement by opting out. Excluding yourself from the Settlement by opting out is telling the Court that you do not want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

DO I HAVE A LAWYER IN THE CASE?

The Court has appointed, as Class Counsel in this case, Gillian L. Wade, Sara D. Avila, and Marc A. Castaneda, of Milstein, Jackson, Fairchild & Wade, LLP, Joel Oster of the Oster Law Firm, and any attorneys at those firms assisting in the representation of the Class in this Action.

The Court has determined that Class Counsel are qualified to represent you and all other Class Members. You will not be charged for these lawyers. The lawyers handling the case are experienced in handling similar cases. Nevertheless, you have the right to consult or retain an

attorney of your choice at your own expense to advise you regarding the Settlement and your rights in connection with the Settlement and Final Approval Hearing described below.

<u>HOW WILL THE LAWYERS GET PAID?</u>

Class Counsel intends to apply for fees of up to one-fourth of the Ceiling Amount, and Plaintiffs and Class Counsel intend to apply for service awards of up to $5,000 each for the Plaintiffs Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kristy Williams (the "named plaintiffs"). Whether to award those amounts is in the Court's discretion. If awarded, these payments will be subtracted from the amount available to pay Class Members' claims.

<u>WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?</u>

The Court has scheduled a Final Approval Hearing (also referred to as a "Fairness Hearing") to determine whether the Court should approve the Settlement as fair, reasonable, and adequate to the Class, and whether Judgment should be entered in accordance with the Agreement. The Court will also consider at the Final Approval Hearing the request of Class Counsel for an award of attorneys' fees and reimbursement of expenses, as well as the request of the named plaintiffs for service awards for services rendered on behalf of the Class.

The Final Approval Hearing will occur at [time and date] in Courtroom 4 – 17th Floor 450 Golden Gate Avenue, San Francisco, CA 94102**.**

Your attendance at the Final Approval Hearing is not required. However, you may be heard orally at the hearing in opposition to the proposed Settlement if you wish.

You may also enter an appearance through an attorney retained at your own expense. If you do not enter an appearance through an attorney, and do not object, Class Counsel will represent you at the hearing.

The Court may delay the date of the Final Approval Hearing without further notice to the members of the Settlement Class, in which case the new date of the Final Approval Hearing will be posted on the Settlement Website, www.WeedKillerAdSettlement.com.

<u>WHAT HAPPENS IF I DO NOTHING AT ALL?</u>

If you do nothing, you will get no money from the Settlement. Unless you exclude yourself, if the Settlement is approved, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Monsanto or any Released Persons about the claims in this case or any other Released Claims. However, you will retain any claim you may have against Monsanto or anyone else that you developed cancer, or any other personal injury, as a result of using or being exposed to the Products.

HOW CAN I GET MORE INFORMATION?

This Notice's description of the case and Settlement is general. If you want more detailed information about the lawsuit and proposed Settlement, or to review the Settlement documents and related pleadings, you may visit the Settlement Website at www.WeedKillerAdSettlement.com. If you have additional questions, you can visit the Settlement Website or contact the Claims Administrator:

**By Mail:** Gilmore v. Monsanto Co., c/o Postlethwaite & Netterville, P.O. Box 4208, Baton Rouge, LA 70821

**By Email:** info@WeedKillerAdSettlement.com

**By Phone (Toll Free):** 1-833-749-1489

Updates will be posted on the Settlement Website as information about the Settlement process becomes available.

If you wish to review the Court's docket in this case, you may do so at https://pacer.uscourts.gov/file-case/court-cmecf-lookup/court/CANDC, the Court's public access website.

**DO NOT TELEPHONE OR ADDRESS ANY QUESTIONS ABOUT THE CASE OR SETTLEMENT TO THE CLERK OF THE COURT OR TO THE JUDGE. THEY ARE NOT PERMITTED TO ANSWER YOUR QUESTIONS. THE COURT EXPRESSES NO VIEW AS TO THE MERITS OF ANY CLAIMS OR DEFENSES ASSERTED BY ANY PARTY TO THE ACTION.**

**For more information, visit www.WeedKillerAdSettlement.com or call 1-833-749-1489.**

**Appendix 1**

| Product | Anticipated Payment Per Unit |
|---|---|
| 16 oz. Roundup® Weed and Grass Killer Sure Shot Foam | $1.00 |
| 22 oz. Roundup® Weed and Grass Killer Sure Shot Foam | $1.00 |
| 24 oz. Roundup® Ready-to-Use Weed and Grass Killer | $1.00 |
| 30 oz. Roundup® Ready-to-Use Weed and Grass Killer | $1.00 |
| 24 oz. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $1.50 |
| 24 oz. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $2.00 |
| 1 gal. Roundup® Ready-to-Use Weed and Grass Killer (all applicator types) | $2.00 |
| 0.5 gal. (64 oz.) Roundup® Ready-to-Use Weed and Grass Killer | $2.50 |

| | |
|---|---|
| 0.5 gal. (64 oz.) Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $2.50 |
| 1.25 gal. Roundup® Ready-to-Use Weed and Grass Killer (all applicator types) | $2.50 |
| 5 oz. Roundup® Precision Gel Weed and Grass Killer | $3.00 |
| 1 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $3.00 |
| 1 gal. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $3.00 |
| 16 oz. Roundup® Weed & Grass Killer Concentrate Plus | $3.50 |
| 1.33 gal. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $3.50 |
| 1.1 gal. Roundup® Ready-to-Use Weed & Grass Killer (all applicator types) | $4.00 |

| | |
|---|---|
| 32 oz. Roundup® Weed and Grass Killer Concentrate Plus | $4.00 |
| 35.2 oz. Roundup® Weed and Grass Killer Concentrate Plus | $4.00 |
| 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer (all applicator types) | $4.00 |
| 1.33 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $5.00 |
| 1.25 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $5.00 |
| 16 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer | $5.50 |
| 3-pack – 6 oz. Roundup® Weed & Grass Killer Concentrate Plus | $5.50 |
| 32 oz. Roundup® Concentrate Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $5.50 |

| | |
|---|---|
| 1.25 gal. Roundup® Ready-to-Use Max Control 365 (all applicator types) | $6.00 |
| 36.8 oz. Roundup® Weed & Grass Killer Concentrate Plus | $6.00 |
| 40 oz. Roundup® Weed & Grass Killer Concentrate Plus | $6.00 |
| 1.1 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $6.00 |
| 1.33 gal. Roundup® Ready-to-Use Max Control 365 (all applicator types) | $7.00 |
| Combination Pack – 1.33 gal Roundup® Ready-to-Use Weed & Grass Killer and 2x7 oz. Roundup® Weed & Grass Killer Concentrate Plus | $7.50 |
| 0.5 gal. (64 oz.) Roundup® Concentrate Plus Weed & Grass Killer | $7.50 |
| 32 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer | $8.00 |

| | |
|---|---|
| 32 oz. Roundup® Concentrate Max Control 365 | $8.50 |
| Combination pack – 1.33 gal. Roundup® Ready-to-Use Max Control 365 and 8 oz. Roundup® Concentrate Max Control 365. | $9.00 |
| 80 oz. Roundup® Weed & Grass Killer Concentrate Plus | $9.50 |
| Combination Pack – 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer and 8 oz. Roundup® Weed & Grass Killer Super Concentrate | $9.50 |
| Combination pack – 1.33 gal. Roundup® Extended Control Weed & Grass Killer Plus Weed Preventer and 16 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer. | $10.50 |
| 35.2 oz. Roundup® Weed & Grass Killer Super Concentrate | $11.50 |
| 2-pack – 80 oz. Roundup® Weed & Grass Killer Concentrate Plus | $12.50 |
| 0.42 gal. Roundup® Weed & Grass Killer Super Concentrate | $14.00 |

| | |
|---|---|
| 0.5 gal. (64 oz.) Roundup® Weed & Grass Killer Super Concentrate | $15.00 |
| 1 gal. Roundup® Weed & Grass Killer Super Concentrate | $21.50 |
| 2.5 gal. Roundup® Pro Concentrate | $33.00 |
| 24 oz. Ace® Ready-to-Use Weed & Grass Killer | $0.50 |
| 1 gal. Ace® Ready-to-Use Weed & Grass Killer | $1.50 |
| 1 gal. Ace® Ready-to-Use Weed & Grass Killer with battery-operated sprayer | $3.00 |
| 32 oz. Ace® Concentrate Weed & Grass Killer | $3.00 |
| 1 gal. Ace® Concentrate Weed & Grass Killer | $5.50 |

| | |
|---|---|
| 32 oz. HDX® Concentrate Weed & Grass Killer | $1.50 |
| 0.5 gal. HDX® Concentrate Weed & Grass Killer | $3.00 |
| 2.5 gal. HDX® Concentrate Weed & Grass Killer | $12.50 |

## Appendix 2

## RELEASE OF CLAIMS

If the Court approves the Settlement and you have not excluded yourself as described above, you will be bound by the Settlement and will be forever barred from suing Monsanto or other entities (as detailed in the Settlement) for the claims released in the Settlement. This applies whether you currently know about the existence of such claims or not.

Here, the claims you will give up are:

Upon the Effective Date, each of the Class Members will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged, and covenanted not to sue, the Released Parties from any and all Claims (with the exception of Personal Injury Claims and Medical Monitoring Claims), whether known or unknown, matured or unmatured, asserted or unasserted, latent or patent, at law or in equity, existing under federal or state law, regardless of legal theory or relief claimed, that any Class Member has or may in the future have against any Released Party arising out of or related in any way to the same factual predicates as the Action, including:

- o any allegedly false, misleading, incomplete, or inaccurate statement, or any alleged omission, regarding the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate (whether or not such statement or alleged omission regarding an ingredient or component thereof is made specifically with regard to the Products, with regard to the ingredient or component thereof separately, or with regard to other products), or any scientific claims or debate regarding the same;

- o any alleged breach of contract or breach of warranty arising out of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same; or

- o any other alleged economic loss or injury (other than those economic losses or injuries encompassed within the definitions of Personal Injury Claims or Medical Monitoring Claims) allegedly suffered by or inflicted on any Class Member because of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same.

Collectively, the foregoing are "Class Released Claims." For avoidance of doubt, this release does not release any Personal Injury Claims or Medical Monitoring Claims. To the extent that any action or proceeding includes both Personal Injury Claims or Medical Monitoring Claims and Claims that would otherwise be released by this Agreement, the Personal Injury Claims and/or Medical

18

Monitoring Claims will not be deemed released, but the other Claims will be released. By way of example, if a Class Member brought an action asserting that he or she bought and used Roundup® products that failed to warn of an alleged risk of Non-Hodgkin Lymphoma and that this caused them to develop Non-Hodgkin Lymphoma, and sought to recover damages for their physical injury, for lost wages, and for medical bills, neither that Personal Injury Claim nor the related damages (including economic damages such as lost wages or medical bills) would be released by this Settlement. For further avoidance of doubt, this release shall apply to Claims (other than Personal Injury Claims and Medical Monitoring Claims) arising from, resulting from, or in any way relating to or in connection with a Class Member's purchase or use of the Products in the past, present, or future.

"Claims" means past, present, and future claims, counterclaims, actions, rights, remedies, causes of action, liabilities, suits, demands, damages, losses, payments, judgments, verdicts, debts, dues, sums of money, liens, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, including any of the foregoing for equitable or injunctive relief, direct damages, indirect damages, consequential damages, incidental damages, punitive or exemplary damages, statutory and other multiple damages or penalties of any kind, or any other form of damages or relief whatsoever, and whether based upon breach of contract, warranty or covenant, tort, negligence, strict liability, gross negligence, recklessness, willful or wanton conduct, malice, oppression, conscious disregard, joint and several liability, guarantee, contribution, reimbursement, subrogation, indemnity, defect, failure to warn, fault, misrepresentation, common-law fraud, statutory consumer fraud, quantum meruit, breach of fiduciary duty, violation of statutes or administrative regulations, and/or any other legal (including common-law), foreign, statutory, equitable, or other theory or right of action, whether in law or in equity, fixed, contingent or noncontingent, known or unknown, discovered or undiscovered, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, ripened or unripened, perfected or unperfected, choate or inchoate, developed or undeveloped, liquidated or unliquidated, now recognized by law or that may be created or recognized in the future by statute, regulation, or judicial decision or in any other manner, and whether direct, representative, derivative, class, or individual in nature, in any forum that any Person had, has, or may have in the future.

"Medical Monitoring Claims" shall mean Claims that seek to require, or recover damages amounting to the costs of, medical monitoring or screening for potential physical injury or illness of a natural person. It is expressly contemplated that a cause of action could include both Claims that are Medical Monitoring Claims and Claims that are not Medical Monitoring Claims.

"Monsanto" means Monsanto Company and Bayer AG and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

"Personal Injury Claims" shall mean Claims that assert a right to recover damages for the actual physical injury or illness of a natural person or that seek to recover compensatory, punitive, or exemplary damages, or attorney's fees, allegedly resulting or arising from the actual physical

injury or illness of a natural person, including, for example, claims for mental or physical pain or suffering; emotional or mental harm; loss of enjoyment of life; loss of wages, income, earnings, or earning capacity; medical expenses; doctor, hospital, nursing, or drug bills; loss of support, services, consortium, companionship, society, or affection; damage to familial relations; and wrongful death and survival actions. It is expressly contemplated that a cause of action could include both Claims that are Personal Injury Claims and Claims that are not Personal Injury Claims.

"Related Parties" means the past, present, and future manufacturers, formulators, distributors, marketing agents, commissionaires, resellers, Retailers, clinical researchers, agents, licensees, contractors, joint ventures, joint venturers, and consultants of or with respect to the Products, and any and all past, present, or future suppliers of materials, components, and services used in the development, registration, formulation, manufacture, distribution, handling, sale, or marketing of the Products, including the labeling and packaging thereof, and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, divisions, joint ventures, and joint venturers; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

"Released Persons" means, respectively, Monsanto; Scotts; any distributors and/or Retailers of the Products; Related Parties; any Persons that are currently, may in the future be, or have in the past been, marketing, advertising, distributing, selling, or reselling the Products and any past, current, or future parent companies (including intermediate parents and ultimate parents) and subsidiaries, Affiliates, predecessors, successors, and assigns, and each of their respective past, present, or future officers, directors, employees, agents, members, franchisees, franchisors, attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors, and assigns; and any other Person acting on behalf of Monsanto, Scotts, or any other Released Person.

"Retailers" means any person or entity that has offered, is presently offering, or may in the future offer the Products for sale or resale (including, without limitation, wholesale distributors, private-label distributors, and all retailers and retail distributors), and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above. "Retailers" shall include, but is in no way limited by, Ace Hardware Corporation; Costco Wholesale Corporation; Home Depot U.S.A., Inc.; The Home Depot, Inc.; Lowe's Companies, Inc.; Lowe's Home Centers, LLC; Target Corporation; Walmart Inc.; and Wal-Mart Stores, Inc., and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

In addition, each Class Member shall be deemed to have waived and relinquished the rights and benefits available to them under California Civil Code section 1542. **Section 1542 provides**:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor."**

Notwithstanding California Civil Code section 1542 or any other federal or state statute or rule of law of similar effect, the Agreement shall be given full force and effect according to each and all of its expressed terms and provisions, including those related to any unknown or unsuspected claims, liabilities, demands, or causes of action which are based on, arise from, or are in any way connected with the Action.

**Appendix 3**

**List of Applicable Class Periods for Each State or Territory**

| State or Territory | Beginning of Class Period |
|---|---|
| Alabama | February 2017 |
| Alaska | February 2017 |
| American Samoa | February 2018 |
| Arizona | February 2017 |
| Arkansas | February 2016 |
| California | August 2015 |
| Colorado | February 2018 |
| Connecticut | February 2016 |
| Delaware | February 2017 |
| District of Columbia | February 2017 |
| Florida | February 2016 |
| Georgia | October 2016 |
| Guam | August 2016 |
| Hawaii | February 2017 |
| Idaho | February 2017 |
| Illinois | February 2017 |
| Indiana | February 2017 |
| Iowa | February 2017 |
| Kansas | December 2015 |
| Kentucky | February 2017 |
| Louisiana | February 2017 |
| Maine | February 2015 |
| Maryland | August 2016 |
| Massachusetts | October 2016 |
| Michigan | October 2014 |
| Minnesota | December 2013 |
| Mississippi | February 2015 |
| Missouri | August 2014 |
| Montana | February 2017 |
| Nebraska | February 2017 |
| Nevada | October 2016 |
| New Hampshire | February 2017 |
| New Jersey | November 2014 |
| New Mexico | February 2017 |
| New York | June 2011 |
| North Carolina | February 2017 |
| North Dakota | February 2015 |
| Northern Mariana Islands | February 2015 |

| State or Territory | Beginning of Class Period |
|---|---|
| Ohio | February 2017 |
| Oklahoma | November 2015 |
| Oregon | November 2015 |
| Pennsylvania | February 2015 |
| Puerto Rico | December 2019 |
| Rhode Island | February 2017 |
| South Carolina | February 2015 |
| South Dakota | February 2017 |
| Tennessee | February 2017 |
| Texas | March 2016 |
| Utah | February 2016 |
| Vermont | November 2013 |
| Virgin Islands | February 2015 |
| Virginia | September 2016 |
| Washington | February 2017 |
| West Virginia | February 2017 |
| Wisconsin | February 2015 |
| Wyoming | February 2017 |