JAMES GRIFFIN O'BRIEN (Cal. 308239, Ohio 0088460)
O'Brien Law LLC
405 Madison Avenue, 10th Floor
Toledo, Ohio 43604
Phone: (419) 930-6401
Fax:    (419) 930-6403
Email: jim@obrien.law

*Counsel for Plaintiffs*

# IN THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION* | MDL No.    2741<br>MDL Case  16-MD-2741-VC<br>Judge:      Hon. Vince Chhabria |
| This document relates to:<br><br>*David Booth v. Monsanto Company*, No. 3:20-cv-4654-VC<br><br>*Estate of James Coressel v. Monsanto Company*, No. 3:20-cv-3720-VC<br><br>*Catherine Cryan v. Monsanto Company*, No. 3:17-cv-5084-VC<br><br>*Estate of Floyd Dominique v. Monsanto Company*, No. 3:21-cv-2705-VC<br><br>*Catherine Perry v. Monsanto Company*, No. 3:21-cv-5621-VC<br><br>*Jason Rhuland v. Monsanto Company*, No. 3:19-cv-5598-VC<br><br>*Dean Rowland v. Monsanto Company*, No. 3:19-cv-5310-VC<br><br>*Estate of William Setzer v. Monsanto Company*, No. 3:17-cv-3448-VC<br><br>*Robert Wistinghausen v. Monsanto Company,* No. 3:20-cv-27-VC | **NINE PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL** |

- 1 -

## NINE PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL

The above-captioned nine Plaintiffs oppose Defendant Monsanto Company's Motion to Compel. (MDL Doc. 14964.)[1]

### I. THE COURT SHOULD DENY MONSANTO'S IMPROPERLY BROUGHT MOTION

Monsanto's Motion to Compel is procedurally flawed in numerous ways. These flaws are not just hyper-technical failures; they fly in the face of the procedure for resolving discovery disputes. The Court should deny the Motion for Monsanto's failure to follow the Federal Rules and Local Rules.

#### A. MONSANTO ENTIRELY DISREGARDED THE PRE-FILING REQUIREMENTS OF LOCAL RULE 37

**Failure 1:** Local Rule 37-1(a) required Monsanto to meet and confer with Plaintiffs' counsel before filing a discovery motion. Monsanto never did. (O'Brien Decl. ¶ 12.) The company never sent an email, never called, never requested a conference, and never conducted a conference. (*Id.*) Instead, it just filed its Motion. The Court should disregard the Motion entirely because of this failure. Local Rule 37-1.

**Failure 2:** Local Rule 37-2 required Monsanto to "set forth each request in full, followed immediately by the objections and/or responses thereto." Monsanto's Motion does no such thing. It neither attached its requests nor Plaintiffs' responses. In fact, the Motion's footnote 2 instructs the reader to, "[*s*]*ee* David Booth's Responses to First Set

---

[1] Monsanto's Motion is incorrectly captioned as applying to "All Wave IV Cases." The text and footnotes of the Motion, however, appear to make it applicable only to thirteen cases, nine of which are opposing it jointly herein.

- 2 -

of Interrogatories . . . ." (Doc. 14694 at 6, n.2.) but, without having attached those interrogatories or responses, the Court cannot, in fact, "see" them.

**Failure 3:** Local Rule 37-3 forbids the filing of motions to compel more than seven days after the fact discovery cut-off. Fact discovery closed on June 9, 2022—doc. 14475—and Monsanto filed its Motion eight days later, on June 17.

### B. THE MOTION IS IMPROPERLY CAPTIONED

Monsanto's Motion is inappropriately captioned as applying to "All Wave IV Cases." This is false. A series of footnotes reveals the Motion likely applies to just 13 cases: the nine captioned above and represented by O'Brien Law LLC, plus four others.

### C. THE COURT SHOULD STRIKE OR DISREGARD THE IMPROPER MOTION

Monsanto's failures—particularly the failure to bring its Motion on time—should be fatal to the entire Motion. And, for good reason: First, any attempt to contact Plaintiffs' counsel may have resolved these issues. In any case, failure to conduct the conference is fatal to the Motion. E.g., *Center for Food Safety v. Vilsack*, No. 11-1310 (N.D. Cal. Oct. 24, 2011) (Conti, J.);[2]

Second, attaching Plaintiffs' actual responses would have allowed the Court to see that Monsanto's requests were entirely out of line and Plaintiffs' responses were more than sufficient.

---

[2] Coincidentally, in *Center for Food Safety v. Vilsack*, Monsanto Company itself intervened in place of the Defendant Vilsack and argued that the Plaintiffs' discovery motion should fail because they did not conduct a Local Rule 37-1 conference.

Third, bringing this Motion months ago would have allowed for a more timely resolution.

### D. MONSANTO'S MOTION VIOLATES THE AGREEMENT REACHED IN A PRIOR MEET-AND-CONFER

Although Monsanto filed its Motion without meeting and conferring (or communicating in any way), Plaintiffs' approach was exactly the opposite: on December 29, 2021, Plaintiffs' counsel sent a detailed, three-page letter raising concerns with the 44 sets of discovery requests propounded in these cases. (O'Brien Decl. ¶ 3, **Exhibit A**.)[3] In the email transmitting the letter, Plaintiffs suggested times for a phone call. (O'Brien Decl. ¶ 4, **Exhibit B** at *4-5.)[4]

Plaintiffs' counsel and Monsanto's counsel conducted a meet-and-confer on January 6, 2022. (O'Brien Decl. ¶ 5.) As is described in Plaintiffs' letter (**Exhibit A**), Plaintiffs' counsel expressed that the requests were onerous and exceeded what was allowable under the Federal Rules. (O'Brien Decl. ¶ 6.) Monsanto's counsel respectfully disagreed, but encouraged Plaintiffs to answer the requests as they saw appropriate, object where appropriate, and that they would discuss the matter if those answers were

---

[3] While Monsanto failed to attach the discovery requests or responses, the company *did* attach this letter. (Doc. 14964-07.) However, the company falsely labeled it as a "Declaration of Jim O'Brien." That's flatly wrong; the attachment is a letter from Plaintiffs' counsel to Monsanto's counsel, not a declaration.

[4] Similarly, Monsanto attached part of this email chain as an exhibit (doc. 14964-08), but incorrectly called it a "Declaration of Mr. John Kalas." (Doc. 14964 at *8.) It's not a declaration; it's an email chain.

- 4 -

O'BRIEN LAW LLC
405 Madison Avenue, 10th Floor
Toledo, Ohio 43604
(419) 930-6401

insufficient. (O'Brien Decl. ¶¶ 7-8.) This is reflected in the follow-up email sent the following day:

> John,
>
> Thank you for taking the time yesterday to discuss my concerns with Monsanto's discovery requests to my Wave IV clients. I think the discussion helped each of us understand the other's points better.
>
> Based on our discussion, I've decided not to start with an affirmative motion for a protective order. Instead, we will prepare responses that include objections and answers where feasible. We may need judicial intervention, but we won't start with it.

(**Exhibit B** at *1-2.)

Plaintiffs did as they promised: they submitted extremely detailed responses to Monsanto's discovery requests, but objected where necessary. (O'Brien Decl. ¶ 9; *id.* at ¶ 10, **Exhibits C**, **D**, **E**, and **F**.)

Without further communication, Monsanto filed this Motion—not only in violation of the Local Rules, but also in violation of the understanding reached during the meet-and-confer on January 6, 2022. (O'Brien Decl. ¶ 11.)

## II. IN THE ALTERNATIVE, THE COURT SHOULD DENY THE MOTION ON ITS MERITS

Monsanto's entire complaint is that Plaintiffs refused to answer more than 25 interrogatories. (Doc. 14964 at *2-5.) Plaintiffs, however, had good reason to stop answering at 25.

### A. MONSANTO'S REQUESTS WERE ABUSIVE AND WERE INTENDED TO HARASS PLAINTIFFS

Monsanto's requests were duplicative, onerous, and barely intelligible. For example, across four sets of discovery requests issued in each case, Monsanto asks each plaintiff if he or she was exposed to benzene <u>seventeen</u> separate times:

- 5 -

- RFA 1 asks about benzene four separate times. It asks about benzene in bullet two because benzene is listed on the IARC monograph, then separately asks about benzene in sub-bullet 2.1. Then it asks about benzene two more times in bullet six alone because benzene is listed both by the California EPA and the NIH National Toxicology Program.
- Then, RFA 3 asks about benzene exposure again by referencing the California EPA list again.
- Interrogatory 1 asks about benzene four more times through its incorporation of RFA 1
- Interrogatory 5 asks about benzene again through its incorporation of RFA 3.
- RFI 5 asks about benzene twice, both through the IARC monograph link in bullet 1 and directly in bullet 1.1.
- RFI 6 then asks about it again via the link to the NIH National Toxicology Program.
- RFE 5 asks about benzene via its incorporation of RFI 5 and the link to the IARC monograph.
- RFE 6 asks about benzene again via its incorporation of RFI 6 and the link to the NIH National Toxicology Program.

As another example, RFA 1 spans two pages and cross-references three requests for inspection. (**Exhibit F** at *2-3.) It also requires the plaintiffs to access three separate websites containing lists of chemicals—the IARC list of human carcinogens; the National Toxicology Program's list; and the California Prop. 65 list—and discern which chemicals the plaintiff's (or, in some cases, their late spouses) were exposed to their lifetimes. And, there are 11 more requests for admission. The first interrogatory is similarly obnoxious, cross referencing the first request for admission—including its

- 6 -

three web-based lists—and requiring the plaintiff to describe in exact detail how, when, and where they (or their late spouses) were exposed to the substances. (**Exhibit E** at *2-4.)

Not only did the various requests cross-reference each other and repeat each other, the three web-based links contain extensive duplication. Most frustratingly, Monsanto deposed every plaintiff and asks about these same exposures during their depositions. And, to the extent Monsanto did not ask during those, it could have.

### B. PLAINTIFFS FULLY ANSWERED THE INTERROGATORIES

Despite the abusiveness of the requests, Plaintiffs did their best to provide interrogatory answers where possible. (*See* **Exhibits C-F**.) However, as promised in their December 2021 letter and the phone call that followed, Plaintiffs stopped answering interrogatories after 25.

> Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or a stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects.

Fed. R. Civ. P. 33, 1993 Advisory Cmte. Note.

Monsanto's first interrogatory—"DESCRIBE YOUR use of or exposure to those products"—had <u>eight</u> subparts:

- including the name of the product,
- dates of use or exposure (or a DATE range),
- the reason for use (e.g., personal, work-related, both, other),
- the frequency of use (e.g., daily, weekly, monthly),
- the locations where YOU used the products,
- the method of applying the products,

- 7 -

- whether YOU used protective equipment, and
- what type of protective equipment was utilized (e.g., protective clothing, gloves, respirator masks).

(**Exhibit E** at *2.)

Even so, Plaintiff did not raise an objection to these eight subparts and answered them as if they were one. For that reason, Monsanto's reliance on *Synopsys Inc. v. ATopTech Inc.*, 319 F.R.D. 293 (N.D. Cal. 2016) is completely misplaced. *Synopsis* addressed whether a request for "facts, documents, and witnesses relating to a primary contention or allegation..." was a single request or three. *Id.* at 297. Plaintiffs claimed no such thing and answered the eight-subpart interrogatory as if it were one.

Instead, Plaintiffs contend that the question of whether they were ever exposed to Betel quid with tobacco (and the question's eight subparts) is a distinct interrogatory from whether they ever had Epstein-Barr virus (plus its eight subparts), ever ate "salted fish, Chinese-style" (plus its eight subparts), or ever encountered wood dust (plus its eight subparts). After answering interrogatories on 25 different substances as well as they could, Plaintiffs declined to answer further interrogatories.

"In the absence of a protective order, the responding party's best course for adequately preserving its objections to supernumerary interrogatories is to answer up to the numerical limit and object to the remainder without answering." *Capacchione v. Charlotte-Mecklenburg Schools*, 182. F.R.D. 486, 492 n.4 (W.D. N.C. 1998) (citing 7 MOORE'S FEDERAL PRACTICE § 33.30[1]).

## C. PLAINTIFFS FULLY ANSWERED THE REQUESTS FOR ADMISSIONS

Despite the burdensome nature of the requests for admissions, each Plaintiff attempted to answer them fully. Monsanto now complains about seven plaintiffs' answers to two RFAs, calling Plaintiffs' inability to admit or deny "implausible," (doc. 14964 at *7) but providing no detail on how or why it is implausible.

- 8 -

1. **RFA 3**

Monsanto's RFA 3 demands: "

Admit that YOU used products other than TOBACCO PRODUCTS that contain warnings regarding risk of cancer or Proposition 65 warnings. See https://oehha.ca.gov/media/downloads/proposition-65//p65list010320.pdf.

(**Exhibit F** at *4.)

As Plaintiffs pointed out in their letter and in their responses, this Request for Admission is nonsensical for multiple reasons. **First**, RFA 1 also asks Plaintiffs to evaluate this same Prop. 65 website and admit to using anything on it (although RFA 1 does not ask for other cancer warnings). **Second**, the magnitude of having to evaluate both the Prop. 65 list on a website and any other warnings regarding cancer is enormous. And, quite frankly, obnoxious. **Third**, the company points to a website containing a current list of Prop. 65 chemicals, but the user may have been exposed to a given chemical before it was listed. It is unclear whether Monsanto wants the user to say whether he or she was ever exposed to a chemical that is on the list today, or whether he or she was exposed *when the product contained a warning label*. **Fourth**, the items on the Prop. 65 list are usually chemical names, not the end product name so a user often does not know. **Fifth**, none of these nine plaintiffs ever lived in California. So, even though products in Ohio sometimes contain Prop. 65 warnings, they may not always. As with the first issue, it is unclear if the user is to say whether he used the product with a warning on it or whether he used a product that, whether or not it had a warning on it, is on the Prop. 65 list today. And, **sixth**, this is almost entirely unanswerable for a widow who does not know what her husband was exposed to.

With those concerns in mind, Plaintiffs answered the RFA exactly as they were required: they explained why the request could be neither admitted nor denied. (**Exhibit F** at *4.) The federal rules require exactly that. Fed. R. Civ. P. 36(a)(4)-(5).

- 9 -

Monsanto only says Plaintiffs' responses are "implausible," but provides no explanation or argument why that might be. (Doc. 14964 at *4.)

### 2. **RFA 10**

Monsanto's RFA 10 demands:

> Admit that YOU have or had kept DOCUMENTS or COMMUNICATIONS including but not limited to logs, spreadsheets, diaries, journals, calendars, schedules, or chronologies reflecting pesticides that were applied at the agricultural properties worked on/owned in Toledo, OH, Greenville, OH, and Bowling Green, OH; and any other agricultural properties worked on/owned over the past forty (40) years.

(**Exhibit F** at *6.)

RFA 10 is similarly nonsensical, redundant, and burdensome. **First**, Monsanto asked every plaintiff this question in his or her deposition (or at least had the opportunity to), so asking again, after the deposition, is redundant and intended just to harass the plaintiffs. **Second**, Monsanto copied-and-pasted this same text into every one of its requests, but most of the Plaintiffs did not work or own "agricultural properties." For instance, the late Mr. Coressel (whose responses are attached as exemplars) was the manager of several Tractor Supply Company stores and handled Roundup on the sales floor. He also used Roundup to control weeds on the grounds of a medical facility. But, Monsanto's question, specific to "agricultural properties" has no application. Moreover, Mr. Coressel's pesticide use—and whether his widow was aware of any documentation—was thoroughly covered in his widow's deposition. And, **third**, "have or had kept DOCUMENTS" is unintelligible. Since Monsanto lists "have" and "had" separately, they must mean separate things, but it is impossible to discern how " "I had kept documents about pesticides" is discernible from "I have kept documents about pesticides."[5]

---

[5] Of course, this is the perfect example of something that is easily clarified during a meet-and-confer, had Monsanto only followed the Local Rules in conducting one.

- 10 -

### III. THE COURT SHOULD IMPOSE FEES ON MONSANTO

After deciding the Motion to Compel in Plaintiffs' favor, the Court should award Plaintiffs their reasonable expenses in responding to the Motion, including attorneys' fees. Fed. R. Civ. P. 37(a)(5)(B). This fee shifting position contains two exceptions—"if the motion was substantially justified or other circumstances make an award of expenses unjust"—but neither applies here.

Monsanto's Motion was not substantially justified by any means. First, it was filed beyond the time allowed to do so. Second, it was filed in violation of the Local Rules. *See Franklin v. Allstate Corp.*, No. 06-1909, 2008 U.S. Dist. LEXIS 28214, at *3-6 (N.D. Cal. Feb. 29, 2008) (imposing fee after party failed to meet and confer). Third, the Motion was meritless, as described herein.

Moreover, no other circumstances make an award of expenses unjust. Monsanto acted with deliberate intent to harass Plaintiffs, first by delivering abusive discvoery requests, then by bringing this Motion.

In sum, this Motion, following on the heels of Monsanto's abusive discovery requests themselves, should merit a sanction.

### IV. CONCLUSION

The nine above-captioned Plaintiffs respectfully request the Court deny Monsanto's Motion to Compel and sanction Monsanto for its conduct.

July 1, 2022                    O'Brien Law LLC,

 */s/ James Griffin O'Brien*
James Griffin O'Brien (Cal. 308239, Ohio 0088460)
O'BRIEN LAW, LLC
405 Madison Ave., 10th Floor
Toledo, Ohio 43604
Tel.   (419) 930-6401
Fax   (419) 930-6403
Email jim@obrien.law

*Counsel for Plaintiffs*

O'BRIEN LAW LLC
405 Madison Avenue, 10th Floor
Toledo, Ohio 43604
(419) 930-6401

- 11 -

## CERTIFICATE OF SERVICE

I transmitted a true and accurate copy of the foregoing upon:

>Joe G. Hollingsworth
>HOLLINGSWORTH LLP
>1350 I Street, N.W.
>Washington, DC 20005
>(202) 898-5800
>Fax: (202) 682-1639
>Email: jhollingsworth@hollingsworthllp.com
>
>*Counsel for Monsanto Company*

by filing a copy on the Court's electronic filing system.

July 1, 2022               */s/ James G. O'Brien*
                           James G. O'Brien (Cal. 308239, Ohio 0088460)

O'BRIEN LAW LLC
405 Madison Avenue, 10th Floor
Toledo, Ohio 43604
(419) 930-6401