1

**SHOOK, HARDY & BACON L.L.P.**
Jennise W. Stubbs

2  600 Travis Street, Suite 3400
Houston, TX 77002-2026

3  Telephone:    (713) 227-8008
Facsimile:    (713) 227-9508

4  Email:        jstubbs@shb.com

5  *Attorneys for Defendant*
*MONSANTO COMPANY*

6

7                    **UNITED STATES DISTRICT COURT**

8                    **NORTHERN DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS | MDL No. 2741 |
| LIABILITY LITIGATION | |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | |
| *Johnny Wood v. Monsanto Co.*, | |
| Case No. 3:22-cv-03818-VC | |

14

**DEFENDANT MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**

15

        Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company

16  ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations

17  contained in plaintiff's Complaint ("the Complaint"), except as set forth below. As defined in the

18  Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States

19  based company incorporated in Delaware, and not to other Monsanto-affiliated companies.

20  Monsanto denies — and objects to — allegations by plaintiff that purports to lump Monsanto

21  together with other defendants. Monsanto responds to this Complaint only on behalf of Monsanto

22  and not on behalf of any other defendant. Silence as to any allegations shall constitute a denial.

23          1.      Monsanto admits that plaintiff purports to bring an action for damages allegedly

24  related to exposure to Roundup®-branded products but denies any liability to plaintiff. Monsanto

25  denies the remaining allegations in paragraph 1.

26          2.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth

27  of the allegations in paragraph 2 and therefore denies those allegations.

28

- 1 -

3.      In response to the allegations in paragraph 3, Monsanto admits that its principal place of business is in St. Louis County, Missouri and that it is incorporated in Delaware. The remaining allegations in paragraph 3 set forth conclusions of law for which no response is required.

4.      The allegations in paragraph 4 set forth conclusions of law for which no response is required.

5.      The allegations in paragraph 5 set forth conclusions of law for which no response is required.

6.      The allegations in paragraph 6 set forth conclusions of law for which no response is required.

7.      In response to the allegations in paragraph 7, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds. The remaining allegations in paragraph 7 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 7 and therefore denies those allegations.

8.      Monsanto admits the allegations in the first sentence of paragraph 8. Monsanto denies the allegations in the second sentence of paragraph 8 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the third sentence of paragraph 8 to the extent that it suggests that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

9.      In response to the allegations in paragraph 9, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s. Monsanto denies the remaining allegations in paragraph 9.

10.     Monsanto admits the allegations in the first two sentences of paragraph 10 and admits that it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under FIFRA. Monsanto otherwise denies the remaining allegations in paragraph 10.

11.     In response to the allegations in paragraph 11, Monsanto admits that certain Roundup®-branded herbicides contain POEA and adjuvants, that EPA has classified surfactants and adjuvants as inert, and that the specific surfactants and adjuvants used in Roundup®-branded herbicides – like those in other manufacturers' herbicide products – are protected by EPA as "trade secrets." Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health. Monsanto denies the remaining allegations in paragraph 11.

12.     The allegations in paragraph 12 set forth conclusions of law for which no response is required.

13.     In response to the allegations in paragraph 13, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 13 set forth conclusions of law for which no response is required.

14.     The allegations in paragraph 14 set forth conclusions of law for which no response is required.

15.     In response to the allegations in paragraph 15, Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale, and distribution in the United States and are registered by the State of California for sale and distribution.

16.     In response to the allegations in paragraph 16, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

1   labeling of herbicides that do not satisfy the requirements set forth in FIFRA. Monsanto states

2   that the term "the product tests" in the last sentence of paragraph 16 is vague and ambiguous, and

3   Monsanto therefore denies the same. The remaining allegations in paragraph 16 set forth

4   conclusions of law for which no response is required.

5         17.    Monsanto denies the allegations in paragraph 17 to the extent they suggest that EPA

6   only evaluates the safety of pesticide products on the date of their initial registration. Monsanto

7   admits that EPA is in the process of conducting regulatory review of various pesticide products,

8   but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

9   allegations in paragraph 17 regarding such pesticide products generally. The remaining

10   allegations in paragraph 17 set forth conclusions of law for which no response is required.

11         18.    In response to the allegations in paragraph 18, Monsanto admits that EPA has

12   undertaken a regulatory review of glyphosate and further admits that EPA has not released its

13   findings. Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide

14   Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential,

15   concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to

16   humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA

17   posted an October 2015 final report by its standing Cancer Assessment Review Committee

18   ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely

19   to be Carcinogenic to Humans."[2]

20

21

22   [1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic
     Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"),
23   https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094. The EPA OPP
     Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's
24   carcinogenic potential.

25   [2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs,
     U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the
26   Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final
     Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

27

28   MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
     3:16-md-02741-VC  & 3:22-cv-03818-VC

19.    In response to the allegations in paragraph 19, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies. Monsanto admits that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans. In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies." EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity." Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20.

- 5 -

1    Monsanto denies the remaining allegations in paragraph 19.

2         20.    In response to the allegations in paragraph 20, Monsanto admits that it – along with

3    a large number of other companies and governmental agencies – was defrauded by two chemical

4    testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on

5    glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests

6    of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based

7    herbicides is based upon any invalid Industrial Bio-Test ("IBT") studies.  To the extent that the

8    allegations in paragraph 20 are intended to suggest that Monsanto was anything other than a

9    victim of this fraud, such allegations are denied.

10        21.    In response to the allegations in paragraph 21, Monsanto admits that IBT

11   Laboratories was hired to conduct toxicity studies in connection with the registration of a

12   Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is

13   based upon any fraudulent or false IBT studies.

14        22.    Monsanto denies the allegations in paragraph 22 to the extent they suggest that EPA

15   performed an inspection of IBT Laboratories solely or specifically in connection with studies

16   conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to

17   investigate that laboratory's fraudulent and/or improper testing procedures in connection with

18   services provided to a broad number of private and governmental entities and that this inspection

19   included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide

20   manufacturers who had used IBT test results.  The audit found some toxicology studies conducted

21   with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required

22   studies in accordance with applicable EPA testing guidelines.  Monsanto denies that EPA's

23   registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT

24   studies.  To the extent that the allegations in paragraph 22 are intended to suggest that Monsanto

25   was anything other than a victim of this fraud, such allegations also are denied.

26

27

28

23.     In response to the allegations in paragraph 23, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

24.     In response to the allegations in paragraph 24, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products. Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost. To the extent that the allegations in paragraph 24 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

25.     Monsanto denies the allegations in paragraph 25.

26.     In response to the allegations in paragraph 26, Monsanto admits that Roundup®-branded products are highly valued by customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000. The remaining allegations in paragraph 26 are vague and conclusory, comprise attorney characterizations, and are accordingly denied.

27.     In response to the allegations in paragraph 27, Monsanto admits that following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 27 and accordingly denies those allegations. The remaining allegations in paragraph 27 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

28.     In response to the allegations in paragraph 28, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it has been the only company that has sold glyphosate or glyphosate-based herbicides. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

numbers cited in paragraph 28 and accordingly denies the same. The remaining allegations in paragraph 28 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

29.   In response to the allegations in paragraph 29, Monsanto admits that the New York Attorney General ("NYAG") filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products. This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto. Monsanto states that none of the NYAG's allegations related in any way to a purported or alleged risk of cancer. To the extent the subparts of paragraph 29 purport to quote a document, the document speaks for itself and thus does not require any further response. The remaining allegations in paragraph 29 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

30.   In response to the allegations in paragraph 30, Monsanto admits it entered into an assurance of discontinuance with the NYAG. The assurance speaks for itself and thus does not require any further response. The remaining allegations in paragraph 30 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

31.   Monsanto denies the allegations in paragraph 31.

32.   In response the allegations in paragraph 32, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations to the extent they suggest that this ruling was in any way related to plaintiff's claims here that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 32.

33.   In response to the allegations in paragraph 33, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 33, which are not limited as of any specified date, and accordingly denies the same.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

34.     In response to the allegations in paragraph 34, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 34.

35.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 35 and therefore denies those allegations.

36.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 36 and therefore denies those allegations.

37.     Monsanto denies the allegations in paragraph 37 to the extent that they suggest that IARC had previously assessed glyphosate. Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

38.     In response to the allegations in paragraph 38, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015, and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working groups are "experts." Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence. Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available. Monsanto denies the remaining allegations in paragraph 38.

39.     In response to the allegations in paragraph 39, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group. To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

40.     The allegations in paragraph 40 are vague and conclusory. To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

41.     In response to the allegations in paragraph 41, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, the allegations in paragraph 41 are denied.

42.     In response to the allegations in paragraph 42, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

43.     Monsanto denies the allegations in paragraph 43. The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

44.     In response to the allegations in paragraph 44, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

45.     In response to the allegations in paragraph 45, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors. Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 45.

46.     In response to the allegations in paragraph 46, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA is present or persists in human blood or urine. Monsanto denies the remaining allegations in paragraph 46.

47.     In response to the allegations in paragraph 47, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration. Regulators around the world repeatedly have concluded that glyphosate is not genotoxic. Monsanto denies the remaining allegations in paragraph 47.

48.     In response to the allegations in paragraph 48, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion. Monsanto denies the remaining allegations in paragraph 48.

49.     In response to the allegations in paragraph 49, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers. The AHS cohort study did not find a positive association between glyphosate and any type of cancer. Monsanto denies all other allegations in paragraph 49.

50.     In response to the allegations in paragraph 50, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water Regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which should be read in context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

51.     In response to the allegations in paragraph 51, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate. Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal." *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

52.     Monsanto states that the term "toxic" as used in paragraph 52 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity. Monsanto denies the allegations in paragraph 52.

53.     In response to the allegations in paragraph 53, Monsanto admits that Julie Marc published the cited study in 2002 and states that the document speaks for itself and does not require a response. To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 53.

54.     In response to the allegations in the first sentence of paragraph 54, Monsanto admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle regulation" in 2004. To the extent that the first sentence of paragraph 54 characterizes the meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph 54. In response to

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

the remaining allegations in paragraph 54, Monsanto states that the document speaks for itself and does not require a response. To the extent that a response is deemed required, Monsanto denies the remaining allegations in paragraph 54.

55. In response to the allegations in paragraph 55, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 55 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 55.

56. In response to the allegations in paragraph 56, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 56 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies support the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in paragraph 56.

57. In response to the allegations in paragraph 57, Monsanto states that the terms "at all times" and these studies are vague and ambiguous, and therefore Monsanto denies the allegations in paragraph 57.

58. In response to the allegations in paragraph 58, Monsanto denies that glyphosate or Roundup®-branded products cause cancer. The allegations in paragraph 58 take statements out of context; are vague, misleading, incomplete, and conclusory; and/or comprise attorney characterizations – and are accordingly denied.

59. Monsanto denies the allegations in paragraph 59.

60. Monsanto admits that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling. Monsanto denies the remaining allegations in paragraph 60.

61. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 61 and therefore denies those allegations. In response to the third sentence of paragraph 61 and the quotation therein, Monsanto admits that

plaintiff has accurately quoted from the cited document, but states that the cited document speaks for itself. Monsanto further states that: (a) in September 2016, EPA's OPP issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[3]; and (b) at the same time, EPA posted an October 2015 final report by its standing CARC, in which that committee endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[4] Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[5] The remaining allegations in paragraph 61 comprise attorney characterizations and are accordingly denied.

62. In response to the allegations in paragraph 62, Monsanto states that the cited report speaks for itself and does not require a response. The remaining allegations in paragraph 62 are vague, incomplete, and conclusory and/or comprise attorney characterizations – and are accordingly denied.

63. In response to the allegations in paragraph 63, Monsanto states that the cited report speaks for itself and does not require a response. The remaining allegations in paragraph 63 are

---

[3] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094. The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[4] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[5] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:22-cv-03818-VC

vague, incomplete, and conclusory and/or comprise attorney characterizations – and are accordingly denied.

64.     In response to the allegations in the first sentence of paragraph 64, Monsanto admits that EPA held a FIFRA Scientific Advisory Panel ("SAP") from December 13-16, 2016. In response to the allegations in the third sentence of paragraph 64, Monsanto states that the cited report speaks for itself and does not require a response. The remaining allegations in paragraph 64 are vague, incomplete, and conclusory and/or comprise attorney characterizations – and are accordingly denied.

65.     In response to the allegations in paragraph 65, Monsanto denies that the OPP Report is a "draft assessment." The allegations in paragraph 65 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

66.     In response to the allegations in paragraph 66, Monsanto admits that the final SAP meeting minutes and report were released and states that the cited documents speak for themselves and thus do not require any further response. The remaining allegations in paragraph 66 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

67.     In response to the allegations in paragraph 67, Monsanto admits that certain documents were recently unsealed in the federal multidistrict litigation proceedings involving Roundup®-branded products. Monsanto denies the remaining allegations in paragraph 67.

68.     Monsanto denies the allegations in paragraph 68.

69.     The allegations in paragraph 69 take statements in the cited documents out of context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

70.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 70 regarding Jess Rowland and therefore denies those allegations. The allegations in paragraph 70 take statements in the cited document out of context, are vague,

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

71.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 71 regarding Jess Rowland and the Agency for Toxic Substances and Diseases and therefore denies those allegations.  The allegations in paragraph 71 take statements in the cited document out of context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

72.    The allegations in paragraph 72 take statements in the cited documents out of context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

73.    In response to the allegations in paragraph 73, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 73.

74.    In response to the allegations in paragraph 74, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 74.

75.    Monsanto admits that, in France, the sale to and use by amateurs (i.e., non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions.  Monsanto denies the remaining allegations in paragraph 75.

76.    In response to the allegations in paragraph 76, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of

glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same. Monsanto denies the remaining allegations in paragraph 76.

77.     In response to the allegations in paragraph 77, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease. Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiffs' allegations regarding claimed carcinogenicity.   Monsanto denies the remaining allegations in paragraph 77.

78.     In response to the allegations in paragraph 78, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns. As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops. A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto denies the remaining allegations in paragraph 78.

79.     In response to the allegations in paragraph 79, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 79 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 79.

80.     In response to the allegations in paragraph 80, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent

that paragraph 80 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 80.

81.     In response to the allegations in paragraph 81, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 81 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 81.

82.     In response to the allegations in paragraph 82, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 82 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 82.

83.     In response to the allegations in paragraph 83, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 83 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 83.

84.     In response to the allegations in paragraph 84, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 84 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 84.

85.     In response to the allegations in paragraph 85, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

that paragraph 85 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 85.

86.   Monsanto denies the allegations in paragraph 86.

87.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 87 and therefore denies those allegations.

88.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first numbered paragraph 88 and therefore denies those allegations.

89.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first numbered paragraph 89 and therefore denies those allegations.

90.   Monsanto denies the allegations in paragraph 90.

91.   Monsanto denies the allegations in paragraph 91.

92.   Monsanto incorporates by reference its responses to paragraphs 1 through 91 in response to paragraph 92 of the Complaint.

93.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 93. In response to the allegations in the second sentence of paragraph 93, Monsanto denies that there is any risk of NHL or other serious illness associated with or linked to the use of and/or exposure to Roundup®-branded products and glyphosate. Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015. The remaining allegations in paragraph 93 set forth conclusions of law for which no response is required.

94.   In response to the allegations in paragraph 94, Monsanto denies that exposure to Roundup®-branded products and glyphosate is injurious to human health. Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015. The remaining allegations in paragraph 94 set forth conclusions of law for which no response is required.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

95.     In response to the allegations in paragraph 95, Monsanto denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate. Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 95 and therefore denies those allegations.

96.     Monsanto denies the allegations in paragraph 96.

97.     Monsanto denies that exposure to Roundup®-branded products and glyphosate exposed plaintiff to risk of decedent's alleged cancer and denies the remaining allegations in paragraph 97. Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

98.     Monsanto denies the allegations in the first and last sentences of paragraph 98. The remaining allegations in paragraph 98 set forth conclusions of law for which no response is required. Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

99.     In response to the allegations in paragraph 99, Monsanto denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate. The remaining allegations in paragraph 99 set forth conclusions of law for which no response is required, consist of attorney characterizations and are accordingly denied, or comprise allegations for which Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted and therefore denies those allegations. Monsanto states that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

100.    Monsanto incorporates by reference its responses to paragraphs 1 through 99 in response to paragraph 100 of the Complaint.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

101.   Monsanto lacks information  or knowledge  sufficient to form a belief  as to the truth of the allegations  in paragraph 101 and therefore denies those allegations.

102.   The allegations  in paragraph 102 set forth conclusions  of law for which no response is required.  To the extent a response is deemed required, Monsanto denies the allegations  of paragraph 102 as stated.

103.   The allegations  in paragraph 103 set forth conclusions  of law for which no response is required.  To the extent a response is deemed required, Monsanto denies the allegations  of paragraph 103 as stated.

104.   Monsanto denies the allegations  in paragraph 104.

105.   Monsanto denies the allegations  in paragraph 105.

106.   Monsanto denies the allegations  in paragraph 106.

107.   Monsanto denies the allegations  in paragraph 107.

108.   Monsanto denies the allegations  in paragraph 108.

109.   Monsanto denies the allegations  in paragraph 109.

110.   Monsanto denies the allegations  in paragraph 110.

111.   Monsanto denies the allegations  in paragraph 111 and each of its subparts.

112.   Monsanto denies the allegations  in paragraph 112.

113.   Monsanto denies the allegations  in paragraph 113.

114.   Monsanto denies the allegations  in paragraph 114.

115.   Monsanto incorporates  by reference its responses to paragraphs 1 through 114 in response to paragraph 115 of the Complaint.

116.   Monsanto lacks information  or knowledge  sufficient to form a belief  as to the truth of the allegations  in paragraph 116 and therefore denies those allegations.

117.   Monsanto lacks information  or knowledge  sufficient to form a belief  as to the truth of the allegations  in paragraph 117 and therefore denies those allegations.

118.   Monsanto denies the allegations  in paragraph 118.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

119.   Monsanto denies the allegations in paragraph 119.

120.   Monsanto denies the allegations in paragraph 120.

121.   Monsanto denies the allegations in paragraph 121.

122.   Monsanto denies the allegations in paragraph 122.

123.   Monsanto denies the allegations in paragraph 123.

124.   Monsanto denies the allegations in paragraph 124.

125.   Monsanto denies the allegations in paragraph 125.

126.   Monsanto incorporates by reference its responses to paragraphs 1 through 125 in response to paragraph 126 of the Complaint.

127.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 127 and therefore denies those allegations.

128.   Monsanto denies the allegations in paragraph 128.

129.   Monsanto denies the allegations in paragraph 129.

130.   Monsanto denies the allegations in paragraph 130.

131.   Monsanto denies the allegations in paragraph 131.

132.   Monsanto denies the allegations in paragraph 132.

133.   Monsanto denies the allegations in paragraph 133.

134.   Monsanto denies the allegations in paragraph 134.

135.   Monsanto incorporates by reference its responses to paragraphs 1 through 134 in response to paragraph 135 of the Complaint.

136.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 136 concerning plaintiff's claimed use of and exposure to Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 136 set forth conclusions of law for which no response is required.

137.   Monsanto denies the allegations in paragraph 137.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

138.   Monsanto lacks information  or knowledge  sufficient  to form a belief  as to the truth of the allegations  in paragraph 138 concerning  plaintiff's  claimed use of or exposure to Roundup®-branded  products and therefore denies those allegations. The allegation  in paragraph 138 regarding Monsanto's  express warranties sets forth conclusions  of law for which no response is required. Monsanto denies the remaining  allegations  in paragraph 138.

139.   Monsanto denies the allegations  in paragraph 139.

140.   Monsanto denies the allegations  in paragraph 140.

141.   Monsanto denies the allegations  in paragraph 141.

142.   Monsanto incorporates  by reference its responses to paragraphs 1 through  141 in response to paragraph 142 of the Complaint.

143.   Monsanto lacks information  or knowledge  sufficient  to form a belief  as to the truth of the allegations  in paragraph 143 concerning  plaintiff's  claimed use of and exposure to Roundup®-branded  products and therefore denies those allegations. The remaining  allegations  in paragraph 143 set forth conclusions  of law for which no response is required.

144.   Monsanto denies the allegations  in paragraph 144.

145.   Monsanto lacks information  or knowledge  sufficient  to form a belief  as to the truth of the allegations  in paragraph 145 concerning  plaintiff's  claimed use of or exposure to Roundup®-branded  products and therefore denies those allegations. The allegation  in paragraph 145 regarding Monsanto's  implied  warranties sets forth conclusions  of law for which no response is required. Monsanto denies the remaining  allegations  in paragraph 145.

146.   Monsanto denies the allegations  in paragraph 146.

147.   Monsanto denies the allegations  in paragraph 147.

148.   Monsanto denies the allegations  in paragraph 148.

149.   Monsanto denies the allegations  in paragraph 149.

150.   Monsanto denies the allegations  in paragraph 150.

151.   Monsanto denies the allegations  in paragraph 151.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

152.   Monsanto denies the allegations in paragraph 152.

153.   Monsanto incorporates by reference its responses to paragraphs 1 through 152 in response to paragraph 153 of the Complaint.

154.   Monsanto denies the allegations in paragraph 154.

155.   Monsanto denies the allegations in paragraph 155.

In response to the allegations in the section entitled "CONCLUSION AND PRAYER," Monsanto denies that plaintiff is entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.     The Complaint, in whole or part, fails to state a claim or cause of action upon which relief can be granted.

2.     Venue may be inconvenient for plaintiff's claims.

3.     Plaintiff's claims are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

4.     Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

5.     Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

6.     Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

7.      Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g., Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco,* 275 F.3d 1199 (9th Cir. 2002).

9.      Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

10.     Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

11.     Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

12.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims in whole or in part.

13.     Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

14.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

15.     If plaintiff suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

degree of fault of all such persons and entities;  or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed,  or manufactured by Monsanto.  Such acts or omissions  on the part of others or diseases or causes constitute an independent,  intervening and sole proximate  cause of plaintiff's alleged injuries  or damages.

16. Monsanto had no legal relationship  or privity  with plaintiff  and owed no duty to plaintiff  by which liability  could be attributed to it.

17. Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff.  If any such warranties were made, which Monsanto specifically  denies, then plaintiff  failed to give notice of any breach thereof.

18. Plaintiff's  claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

19. Plaintiff's  claims for punitive  and/or exemplary  damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution,  the Texas Constitution,  and/or other applicable  state constitutions.

20. Plaintiff's  claims for punitive,  exemplary,  and/or aggravated damages are barred and/or limited  by operation of state and/or federal law, including  Tex. Civ. Prac. & Rem. Code Ann. §§ 41.004(a), 41.008(b).

21. Plaintiff's  claims are barred in whole or in part by plaintiff's  contributory/comparative  negligence.

22. Plaintiff's  claims are barred in whole or in part by plaintiff's  failure to mitigate damages.

23. Plaintiff's  claims are barred in whole or in part by the sophisticated  user doctrine.

24. Plaintiff's  recovery, if any, shall be reduced by those payments that plaintiff  has received and/or will receive from collateral sources.

25. If plaintiff  has been injured or damaged, no injury  or damages being admitted,  such injuries  were not caused by a Monsanto product.

26.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

27.     Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

28.     Plaintiff's recovery may be barred or limited by Minn. Stat. § 604.01.

29.     Monsanto did not intentionally harm plaintiff nor did Monsanto act with a deliberate and flagrant disregard for the safety of others. In fact, Monsanto exercised reasonable care at all times alleged in the Petition, and plaintiff has failed to establish by a preponderance of the evidence any entitlement to punitive and/or exemplary, aggravated, or double damages based on their allegations.

30.     Monsanto's conduct and/or acts were not willful, wanton, malicious, reckless, fraudulent or done with a conscious disregard for the rights of plaintiff and/or the safety of the public. Nor do any of Monsanto's conduct and/or acts demonstrate that Monsanto acted with a high degree of moral culpability.   In fact, Monsanto exercised reasonable care at all times alleged in the Petition, and plaintiff has failed to clearly establish any entitlement to exemplary and/or aggravated damages based on their allegations.

31.     To the extent that plaintiff or plaintiff's decedents recovered payments for their alleged injuries from any collateral source(s) or other source(s), plaintiff's recovery in this lawsuit, if any, shall be reduced to the extent allowed by applicable law.

32.     Plaintiffs' claims are barred, in whole or in part, by application of Tex. Civ. Prac. & Rem. Code Ann. § 82.008.

33.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

**WHEREFORE,** Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.


DATED: July 7, 2022.                    Respectfully submitted,

                                                  SHOOK, HARDY & BACON L.L.P.

                                                  BY: */s/ Jennise W. Stubbs*
                                                         Jennise W. Stubbs
                                                         600 Travis Street, Suite 3400
                                                         Houston, TX 77002-2926
                                                         Telephone:   (713) 227-8008
                                                         Facsimile:   (713) 227-9508
                                                         Email:       jstubbs@shb.com

                                                  *Attorneys for Defendant*
                                                  *MONSANTO COMPANY*

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC

1

**CERTIFICATE OF SERVICE**

2    I certify that on the 7th day of July, 2022, I electronically transmitted the foregoing

3    MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT to the Clerk of the court using

4    the ECF system for filing and transmittal of a true and correct copy of the foregoing document was

5    served electronically or by another manner as authorized by FED. R. CIV. P. 5.

6

7

8    /s/Jennise W. Stubbs
     Jennise W. Stubbs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-03818-VC