# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>ALL ACTIONS | Hon. Vince Chhabria<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

Plaintiffs' leadership and Monsanto's counsel hereby provide the following updates to the Court in advance of the Case Management Conference on September 7, 2022.

## I.       Inactive Docket Overview

Pursuant to PTO 246, Monsanto is filing along with this case management statement a list of new cases that should be added to the inactive docket since the last submission (Exhibit A).  The parties also agree to meet and confer in order to provide the Court with a list of cases from the inactive docket that can be dismissed with prejudice.  The parties will consult with the Clerk's office in order to develop an efficient process for filing the requisite documentation necessary to obtain dismissals with prejudice for cases that are administratively closed on the inactive docket.

In summary, since the Court entered PTO 246 establishing the inactive docket, the parties have agreed that 3,266 cases, involving 3,327 plaintiffs, can be moved to the inactive docket and administratively closed.  765 cases remain active in the MDL.

## II.      Active Docket Overview

Of the approximately 765 cases that remain active in the MDL, there are:

- 31 cases in Wave 4

- 152 cases in Wave 5

- 249 cases in Wave 6

- 315 cases that are not currently part of any Wave order

In Wave 4, 31 cases remain active out of the original 207 cases.[1]  Below are the current statistics for Wave 4 as of August 31, 2022:

| Wave 4 Status | Case Count |
|---|---|
| Active | 31 |
|    Subject to motion to dismiss for failure to provide expert report | 3 |
| Dismissals | 14 |
|    Voluntary | 9 |
|    Failure to Provide PFS (pursuant to PTO 50 and 241) | 1 |
|    Failure to comply with PTO 270 | 4 |
| Expected Dismissals[2] | 3 |
| Moved to Wave 5 or 6 (at request of plaintiffs' counsel) | 63 |
| Resolved | 95 |
|    Feinberg Settlement Program | 77 |
|    Settlement with Monsanto | 18 |

---

[1] When the Court ordered Wave 4 to be divided into Waves 4A through D, there were 29 cases in Wave 4A, 30 cases in Wave 4B, 30 cases in Wave 4C, and 30 cases in Wave 4D.
[2] Plaintiffs' counsel has represented to Monsanto that they intend to dismiss the case.

JOINT CASE MANAGEMENT STATEMENT
16-MD-02741-VC

In Wave 5, 152 cases remain active out of the original 371 cases.  Below are the current statistics for Wave 5 as of August 31, 2022:

| Wave 5 Status | Case Count |
|---|---|
| Active | 152 |
| Added from Prior Waves | 32 |
| Wave 3 | 1 |
| Wave 4 | 31 |
| Dismissals | 40 |
| Voluntary | 29 |
| Failure to Provide PFS (pursuant to PTO 50 and 241) | 5 |
| Failure to comply with PTO 270 | 6 |
| Expected Dismissals[3] | 5 |
| Resolved | 180 |
| Feinberg Settlement Program | 55 |
| Settlement with Monsanto | 125 |

[3] Plaintiffs' counsel has represented to Monsanto that they intend to dismiss the case.

JOINT CASE MANAGEMENT STATEMENT
16-MD-02741-VC

In Wave 6, 249 cases remain active out of the original 310 active plaintiffs in Wave 6.  Below are the current statistics for Wave 6 as of August 31, 2022:

| Wave 6 Status | Case Count |
|---|---|
| Active | 249 |
| Added from Prior Waves | 57 |
| Wave 4 | 32 |
| Wave 5 | 25 |
| Dismissals | 12 |
| Voluntary | 6 |
| Failure to Provide PFS (pursuant to PTO 50 and 241) | 5 |
| Failure to comply with PTO 270 | 1 |
| Resolved | 105 |
| Feinberg Settlement Program | 77 |
| Settlement with Monsanto | 28 |

## III.    Plaintiffs' Statement

In PTO 279, the Court inquired: "Does current leadership on the plaintiffs' side of this MDL have sufficient incentive (and sufficient commitment) to continue vigorously protecting the interests of the remaining MDL plaintiffs?" The short answer:  *yes*, very much so.  Each member of Plaintiffs' Leadership has active cases and is aggressively prosecuting this litigation for the benefit of all Plaintiffs in the MDL and other courts around the country. The tens of thousands of hours Plaintiffs' Leadership put into this MDL is relevant and necessary to all existing MDL cases.

Over the last two years, Plaintiffs' Leadership gave Monsanto an opportunity to settle the Roundup cases.  And, during that time, while some settlements were reached, there are still tens of

JOINT CASE MANAGEMENT STATEMENT
16-MD-02741-VC

thousands of cases, filed in both federal and state court, that remain unresolved.  During this time, several important events have occurred.

First, following the *Johnson* (San Francisco Cnty., Cal.), *Hardeman* (N.D. Cal.), and *Pilliod* (Alameda Cnty., Cal.) verdicts, there have been four jury trials in California, Missouri, and Oregon state court (a fifth is currently ongoing in Missouri), prosecuted by attorneys that were not involved in the first three trials.  Monsanto prevailed in each one.

Second, as of June 2022, the judgments and appeals in *Hardeman* and *Pilliod* are, finally, exhausted.  The Supreme Court did not grant *certiorari* in either case, leaving this Court's ruling—and the Ninth Circuit's affirmance—on preemption and *Daubert* firmly in place.  *Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2834 (2022); *Pilliod v. Monsanto Co.*, 67 Cal. App. 5th 591 (2021), *reh'g denied* (Aug. 25, 2021), *review denied* (Nov. 17, 2021), *cert. denied*, 142 S. Ct. 2870 (2022).[4]  Importantly, while the Department of Justice ("DOJ"), representing the Environmental Protection Agency ("EPA"), originally supported Monsanto's appeal in *Hardeman*, before the Supreme Court, the Solicitor General announced a change of the DOJ/EPA's position, concluding that "[t]he court of appeals correctly held that FIFRA does not preempt respondent's claims, and that decision does not conflict with any decision of this Court or another court of appeals. The court's evidentiary ruling likewise does not conflict with the standards applied by other circuits in considering the admissibility of expert testimony."[5]

Third, in June 2022, the Ninth Circuit invalidated the EPA's carcinogenicity assessment of glyphosate, characterizing the analysis as "flawed" for not following EPA's own cancer guidelines. *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 38 F.4th 34, 45-51 (9th Cir. 2022).  The court addressed issues such as the EPA's reliance on historical data to ignore tumor findings in animal studies and the "EPA's disregard of tumor results occurring at high dosages," pointing out that these approaches contradicted the very cancer guidelines the EPA was purportedly following. *Id.* at 47-52.[6]

---

[4] Appeals were exhausted for *Hardeman* on June 21, 2022, and for *Pilliod* on June 27, 2022.
[5] *Available at* https://www.justice.gov/sites/default/files/briefs/2022/06/08/monsanto.cvsg_5.9.22_v.2.pdf
[6] These are the very same criticisms levied against the EPA's analysis by Dr. Christopher Portier during the *Hardeman* trial.

The Ninth Circuit carefully examined the EPA's assessment and its conclusion that glyphosate "is not likely to be carcinogenic to humans" and concluded that "EPA's choice of a hazard descriptor is not supported by substantial evidence. Despite EPA's repeated invocation of its Cancer Guidelines, the Interim Decision fails to abide by those Guidelines." *Id.* at 45, 51. The entire assessment was vacated, and EPA was ordered to redo its work; presumably, this time it will adhere to the very scientific principles is claims to follow.

As would be expected, Plaintiffs' Leadership was focused on appeals—resolving Monsanto's threshold defenses (preemption and general causation) was the primary obstacle for further resolution, for the benefit of all Roundup plaintiffs. And some of the Plaintiffs' Leadership continued to litigate cases and, accordingly to continue to conduct discovery and prepare pretrial motions. Now that the appellate issues are resolved, and the centerpiece of Monsanto's defense, i.e., the EPA's imprimatur of safety, has been invalidated, Monsanto should be ready to finally, once-and-for-all, resolve this litigation for everyone. And, with Monsanto' recent success at trial, albeit against non-Plaintiffs' Leadership, there should be significant appetite for resolution on the Plaintiffs' side as well.

Monsanto, however, is still not ready. It refuses to change its warning label and it refuses to make meaningful settlement offers to the remaining plaintiffs. Thus, in the face of this recalcitrance, Plaintiffs' Leadership has ramped up litigation and, here, propose a new plan for wrapping up this MDL proceeding.

### A. Current Litigation Efforts

Plaintiffs' Leadership is proceeding with following trials in state court over the next ten months. The following chart lists those upcoming trials.

| Date | Location | Case Name | Trial Counsel |
|------|----------|-----------|---------------|
| 11/7/2022 | California Superior Court (San Francisco) | Langford v. Monsanto | Baum Hedlund and the Moore Law Group |
| 11/29/2022 | Hawaii Circuit Court (Hilo, Hawai'i) | Pied v. Monsanto | The Miller Firm and Baum Hedlund |
| 1/9/2012 | Missouri Circuit Court (St. Louis City) | Griswold v Monsanto (multi-plaintiff) | Weitz & Luxenberg |
| 1/23/2023 | California Superior Court (San Francisco) | Freiwald v. Monsanto | Wagstaff Law Firm and Tracey Fox King & Walters |

| 2/27/2023 | Missouri Circuit Court (St. Louis County) | Chaplick v Monsanto (muti-plaintiff) | Weitz & Luxenberg |
| 3/3/2023 | California Superior Court (San Diego) | Weaver v. Monsanto | Wagstaff Law Firm and Tracey Fox King & Walters |
| 4/3/2023 | Arizona Superior Court (Maricopa County) | Hedges v. Monsanto | The Moore Law Group and Andrus Anderson LLP |
| 4/24/2012 | Missouri Circuit Court (St. Louis County) | Gordon v. Monsanto | Wagstaff Law Firm |
| 6/5/2023 | Florida Circuit Court (Wade County) | Lopez v. Monsanto | The Moore Law Group and Baum Hedlund |
| 6/12/2023 | Missouri County Circuit Court | Moore v. Monsanto | The Miller Firm |
| 6/26/2023 | California Superior Court (San Diego) | Johnson v. Monsanto | Baum Hedlund |

In conjunction with this these trials, Plaintiffs' Leadership is engaged in significant discovery, including updated depositions of Monsanto's company witnesses and the company itself (including a deposition of the CEO of Bayer), supplemental document productions, and new challenges to previously designated "privileged" and "confidential" company documents. This additional discovery has been the subject of numerous meet-and-confers, both in state and federal court proceedings, and is moving at pace. All of this discovery will, of course, be made available to all Plaintiffs in this MDL proceeding and will be added to the existing trial notebook.

**B. Proposed Plan for MDL**

The current "wave" approach is not a viable, long-term plan for this MDL. Putting aside the time it takes to agree-upon states and then work up cases within those states, new cases are constantly being transferred into the MDL from states that were already addressed in previous waves. This ensures that the MDL will remain open, crunching through wave after wave, indefinitely.

Fundamentally, this MDL has accomplished nearly everything that should be expected of an MDL. Important common issues, such as preemption and general causation, have been vetted. Bellwether cases have been tried. Detailed orders concerning how to think about and adjudicate specific causation are available. Most cases have settled. Overall, this MDL has been a tremendous success. It is, however, time to develop an exit plan—one that allows all the hard work that has been done to benefit cases as they are remanded back to their home jurisdictions for trial. In this vein,

Plaintiffs propose a three-phase plan to wind up the MDL.

### 1. Phase One – One Last Attempt at Global Resolution

One last attempt to forge a global settlement program for all Roundup plaintiffs nationwide— one that would give closure to those Plaintiffs that have been waiting for years to have their day in court—is prudent.  Plaintiffs propose that the Court give the Parties 60 days to see if such a program could be negotiated.  During this time, all deadlines in the MDL would be suspended and all discovery stopped in those MDL cases also suspended.  At the conclusion of the 60 days, the suspension would automatically end. This suspension would not apply to state cases, nor would it apply to cases previously part of the MDL and remanded by this Court following expert submissions and motion practice in any of the waves.  If Monsanto does not want to engage in such a process, then the Court would proceed directly to Phase Two.

### 2. Phase Two—Creation of Complete Trial Package

The Court would officially end the "wave" program. Instead, the Court would order the Plaintiffs' Leadership to update the existing trial package twice yearly.  The trial package would then travel with each Plaintiff remanded from the MDL.  This package consists of:

- An exhibit list for general causation and general liability, complete with a repository of file-stamped exhibits;
- Full transcripts and videos of each Monsanto witness, with proposed trial designations to be used at trial;
- Full transcripts and videos of each third-party witness (not including case-specific treating doctors), with proposed trial designations to be used at trial;
- Full transcripts and videos of trial depositions for each of Plaintiffs' general causation experts that can be used at trial for each remanded Plaintiff (as of now, only one of those depositions has occurred, and these depositions would be cross-noticed in each case pending in the MDL), with proposed trial designations to be used at trial;
- An outline for treating doctor depositions;
- All PowerPoints, demonstratives, animations, and examination outlines/binders used during the *Johnson*, *Hardeman*, and *Pilliod* trials;

JOINT CASE MANAGEMENT STATEMENT
16-MD-02741-VC

- A detailed memorandum from Plaintiffs' Leadership discussing important issues to consider when trying a case against Monsanto and various strategies that have yielded success;

- Instructions on how to obtain and pay-for access to the Plaintiffs' Leadership document repository containing all productions (millions of documents) by Monsanto to date;

- A repository of other documents, including:

  o All briefing, exhibits, and rulings from every *in limine* motion from every trial;

  o All briefing, exhibits, and rulings from every dispositive motion from every trial;

  o All briefing, exhibits, and rulings from every *Daubert* / state-court-equivalent ruling from every trial or proceeding;

  o All briefing, exhibits, and rulings from every appellate proceeding;

  o All briefing in and rulings from every discovery motion in every proceeding in the United States (not including case-specific discovery disputes);

  o Full transcripts and exhibits for every non-case-specific deposition taken in any Roundup proceeding in the United States;

  o Full copies of all general causation / general liability expert reports and underlying materials considered lists for experts disclosed in any proceeding, including all subsequent or supplemental reports;

  o Copies of authorized specific-causation reports and underlying materials considered lists[7];

  o A copy of each de-designated / de-classified document from Monsanto;

  o Full transcripts of all proceedings from every Roundup trial conducted do date;

  o Full transcripts from all proceedings in the MDL and California JCCP proceedings;

  o Every PTO issued by this Court and the California JCCP; and

---

[7] Because case-specific reports necessarily contain confidential medical information about specific plaintiffs, Plaintiffs' leadership would need to obtain authorization from each client to share such reports subject to the confidentiality order.

JOINT CASE MANAGEMENT STATEMENT
16-MD-02741-VC

    ○  A collection of relevant email and/or letter agreements that touch upon issues related to various depositions and compromised discovery disputes.

Although Plaintiffs' Leadership has already complied in a trial package the majority of these materials and would remain responsible for keeping the materials up to date, Monsanto would need to cooperate with Plaintiffs in collecting documents and items from cases where Plaintiffs' Leadership was and in the future is not involved.  If Plaintiffs need to serve formal discovery and file a motion to compel, they will.

Plaintiffs' Leadership will maintain this entire trial package on a cloud-based program and ensure access to the files is restricted to those counsel prosecuting cases pending in or remanded out of the MDL.

### 3.  Phase Three—Wind up the MDL

Once the Court is satisfied that a complete trial package exists, as outlined above, the Court would then remand all cases still pending in this MDL to the appropriate federal district court.  *See In re Bard IVC Filters Prods. Liab. Litig.*, 2021 WL 1616101 (D. Ariz. April 26, 2021) (remanding all remaining cases as common fact and expert discovery was completed and the court resolved Daubert motions, summary judgment motions, and motions concerning preemption); Final Pretrial Order and Suggestion of Remand*, Docket No. 1640, Exhibit A, *In re Seroquel Prods. Liab. Litig*., (Case No. 6:06-md-1769) (M.D. Fla. May 13, 2010).[8] The Parties would facilitate this process and prepare an appropriate proposed order that would give direction to the Judicial Panel on Multidistrict Litigation on where each Plaintiff's case should be remanded, along with all required documents consistent with JPML Rule 10.4(a).  Following remand of all pending cases, the MDL would be terminated.  The only cases remaining before this Court would be the individual cases that were filed directly into the Northern District of California.

---

[8] The JPML has cited favorably to the *In re Seroquel* Suggestion of Remand as a "particularly comprehensive order" chronicling the proceedings and summarizing the key evidentiary and legal rulings. Barbara J. Rothstein & Catherine R. Borden, Managing Multidistrict Litigation in Products Liability Cases: A Pocket Guide for Transferee Judges, FED. JUD. CTR. & JUD. PANEL ON MULTIDISTRICT LITIG. (2011), p. 49.  The suggestion of remand was later withdrawn after more than two-thirds of the pending Seroquel cases were settled in the months following entry of the order. *In re Seroquel*, 2010 WL 3465151 (M.D. Fl. Aug. 30, 2010).

JOINT CASE MANAGEMENT STATEMENT
16-MD-02741-VC

### C.  Plaintiffs' Response to Monsanto's Proposal

Monsanto advocates for the status quo.  However, the current process does not work.  The MDL leadership has funded the court ordered mediation process with Monsanto since its inception, which has allowed all MDL Plaintiffs access to mediator Feinberg "for free."  Now, almost 2 years later, it is evident that the current MDL mediation program is not advancing case resolution in a meaningful way.[9]  As an initial matter, because Monsanto must "approve" the mediator's offers, the offers made within the settlement program appear to be woefully inadequate. Thus, a substantial number of MDL cases remain unresolved by the settlement program, and it is highly unlikely that these cases will be settled absent global resolution or an imminent trial setting.  Further, because the mediation program is made under a cloak of secrecy, with Monsanto in the driver's seat, leadership counsel is hampered in its ability to more fully assist MDL counsel in responding to offers made in the program.   The settlement approach leadership proposes would offer transparency and consistency that is absent now.

MDL Plaintiffs also oppose any imposition of a Lone Pine order at this time. Designation of expert witnesses in MDL cases should be made once a trial date is set in the remand court, not in the MDL court.  In practice, once cases are remanded, it could be a year, and likely longer, before the remand court schedules the case for trial. Thus, by the time a remanded case is ready for trial, it might well be several years since expert designations were made in the MDL. What is more, Monsanto, under these circumstances, asks for "catch up" reports and/or depositions given the passage of time.  That means that the parties are, in essence, redoing the expert work in the remand court which adds additional cost and time to the Plaintiff's case. These inefficiencies are minimized when expert designations are made in the remand courts.

### IV.    Monsanto's Statement

Plaintiffs' submission is remarkable because it appears to ignore what is actually going on in *this proceeding*.  As the Court is aware, since this MDL's formation, 4,350 cases have been filed or transferred to the MDL, which includes 5,308 individual plaintiffs.  But as of today, over 80% of those cases have been resolved without the need for a remand.  In waves 2 and 3, only five cases were

---

[9] This is not a criticism of mediator Ken Feinberg, who is performing as well as any mediator could perform under the circumstances.

remanded in total.  The procedures in place in this MDL are directly responsible for a large number of those resolutions.  Two in particular stand out.  The Wave process has facilitated resolution discussions by eventually forcing Plaintiffs to produce evidence supporting their claims.  And Special Master Feinberg's program has helped resolve a significant number of other cases.

Nevertheless, approximately 775 cases remain active in the MDL (with many more inactive), and more may be filed in the future.  The central question posed by Plaintiffs' submission is whether it is more efficient to keep the procedures above in place, or disband the MDL and send the thousands of current and future cases to district courts throughout this country.  Both precedent and common sense dictate the answer.  Below, Monsanto respectfully offers suggestions on how to further improve the case management process in the MDL through a docket control order, but opposes Plaintiffs' efforts to bring chaos to bear.

### A.  Monsanto's Statement Regarding PTO 279

With respect to the question posed by the Court in PTO 279 regarding plaintiffs' leadership, Monsanto takes no position.

### B.  Monsanto's Statement Regarding The MDL

The MDL, including the wave structure, continues to serve an important function.  Rather than disband the MDL, Monsanto requests that the Court continue the MDL, and further strengthen the ability of the parties to focus discovery efforts on the cases that will not be voluntarily dismissed or otherwise resolved by entering the proposed docket control order described below. As stated above, the wave process is working and working well.  As waves 2 through 4 demonstrate, between settlements negotiated through Special Master Feinberg, other settlements, and dismissals, over 80% of the cases in each wave are resolved prior to remand.  By keeping the MDL intact and entering the proposed docket control order, resolutions of this magnitude can continue, which benefits the litigants and the federal court system.  If the MDL is disbanded, there will be no central mechanism for settlement through Special Master Feinberg and no organized wave process, leading to fractured litigation across the federal court system.

Plaintiffs also ignore that there is virtually no relevant precedent for disbanding an MDL at this juncture.  As the attached September 21, 2021 report from the JPML makes clear, the vast majority of

MDLs that close remand few if any cases.  *See* United States Judicial Panel on Multi-District Litigation, Multidistrict Litigation Terminated through September 30, 2021  (attached as Exhibit B).  By way of example, as of September 2021, the total cases remanded in the 9th Circuit for ***all 9th Circuit MDLs from 1968 to the present was 797 cases***.  *Id.*  Plaintiffs would have this Court remand far more.

### 1.   Proposed Docket Control Order

Consistent with the Court's inherent right to manage MDL proceedings,[10] Monsanto requests that the Court enter a docket control order directing each plaintiff in Wave 5 and Wave 6 and any plaintiff on the active docket not subject to prior Wave orders establishing Waves 1-4 to provide the basic evidence of his/her case, including (1) a plaintiff fact sheet (consistent with requirements of PTOs 50 and 241), (2) medical records in plaintiffs' possession or that can be collected from the plaintiffs' health care providers, including all records to support a diagnosis of Non-Hodgkin's Lymphoma (NHL), (3) an affidavit verifying compliance with this order, including verification of details of Roundup usage, and (4) a Rule 26(a)(2) report from a licensed physician who is qualified to render a specific causation opinion to a reasonable degree of medical probability that Roundup caused the

---

[10] As the Supreme Court of the United States has recognized, "[f]ederal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017) (internal quotations omitted); *see also Plaintiffs' Baycol Steering Committee v. Bayer Corp.,* 419 F.3d 794, 802 (8th Cir. 2005). This power extends to, for example, "controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37," "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems," and "facilitating in other ways the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c)(2)(F), (L), (P).  Case management is of the utmost importance in proceedings of this size and MDL courts have even "greater discretion to organize, coordinate and adjudicate [their] proceedings." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866-68 (8th Cir. 2007) (affirming MDL court's dismissal of claims for failure to comply with discovery orders); *see also In re Phenylpropanolamine Prod. Liab. Litig.* ("*In re PPA*"), 460 F.3d 1217, 1229, 1234 (9th Cir. 2006) ("administering cases in multidistrict litigation is different from administering cases on a routine docket . . . .") (finding no abuse of discretion in MDL court's dismissal of claims for failure to comply with discovery and product identification case management orders); *Freeman v. Wyeth*, 764 F.3d 806, 809-810 (8th Cir. 2014) (affirming MDL court's dismissal of claims for failure to provide medical authorizations). This is particularly true with respect to managing discovery and taking actions designed to move the cases "in a diligent fashion toward resolution by motion, settlement or trial." *In re PPA*, 460 F.3d at 1232

---

plaintiffs' NHL.  *See* Proposed Order Attached as Exhibit C.

As the above statistics on the inactive and active docket demonstrate, the timing for entry of such an order is appropriate in light of the significant number of cases resolved through settlements and success of the settlement program with Special Master Ken Feinberg.  Additionally, the status of Wave 4 active cases supports entry of such an order.  Specifically, a significant number of cases have settled, been dismissed, or are subject to summary judgment motions for failure to provide expert reports only after fact discovery of plaintiffs and other fact witnesses, including independent doctors, have taken place. Moreover, a large group of plaintiffs have requested movement out of a Wave after some fact discovery, but before expert reports have been served.  It is an inefficient use of resources for Monsanto to continue to depose plaintiffs and independent treating doctors only to see plaintiffs unable to meet their burden of producing a specific causation plaintiff expert report.  Entry of the docket control order would allow for more efficient use of the parties resources, without prejudicing Plaintiffs in any way.  A plaintiff would have the option of complying with the docket control order or alternatively providing more limited information and resolving her claim through the Feinberg's settlement program.  And in the event that a plaintiff satisfies the docket control order and does not reach a settlement, a schedule can be set that would allow the parties to work up the case in an efficient manner given that medical records will have been provided and a case-specific report will have been served.

MDL courts routinely use docket control orders to manage complex mass tort cases; particularly where, as here, the defendant has made significant efforts to resolve the number of cases pending against it. *See, e.g., In re Xarelto Prods. Liab. Litig.,* (*Brown*), MDL No. 2592, 2020 WL 4542988 (Case No. 2:19-cv-14669), at *3 (E.D. La. May 5, 2020); Pretrial Order # 18, Docket No. 758, *In re Fluoroquinolone Prods. Liab. Litig.*, MDL No. 2642 (Case No. 0:15-md-02642) (D. Minn. Jan. 2, 2019); Case Management Order No. 126 at 2, 6-8, Docket No. 2716, *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545 (Case No. 1:14-cv-01748) (N.D. Ill. June 11, 2018) (in settlement context, requiring non-settling plaintiffs to produce medical and pharmacy records and causation and liability expert reports and bifurcated discovery on statute of limitations and other time-

based defenses), *available at* https://ecf.ilnd.circ7.dcn/doc1/067120905246.pdf; Case Management

Order No. 78 at 5, Docket No. 519, *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, MDL

No. 2385 (Case No. 3:12-md-2385) (S.D. Il. May 29, 2014) (in settlement context, requiring non-

settling    plaintiffs    to    produce    causation    expert    reports),    *available    at*

http://www.ilsd.uscourts.gov/documents/mdl2385/CMO78.pdf; Pretrial Order #28 and #29, Docket

Nos. 12962, 12963, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. 2008), *available at*

http://www.laed.uscourts.gov/sites/default/files/vioxx/orders/vioxx.pto28.mdl.pdf                and

http://www.laed.uscourts.gov/sites/default/files/vioxx/orders/vioxx.pto29.mdl.pdf.

The Ninth Circuit and other Circuits have consistently upheld similar management orders,

including those requiring plaintiffs to provide a medical causation expert report as a threshold

requirement for proceeding further. *See, e.g.*, *In re Phenylpropanolamine Prod. Liab. Litig.* ("*In re*

*PPA*"), 460 F.3d at 1229, 1234 (9th Cir. 2006); *see also In re Taxotere (Docetaxel) Prods. Liab. Litig.*,

966 F.3d 351, 360 (5th Cir. 2020) (upholding dismissal of cases for failure to comply with MDL

discovery orders); *Iwobi v. Merck & Co.*, 509 F. App'x 383 (5th Cir. 2013) (affirming dismissal for

failure to comply with the *Lone Pine* requirement in *Vioxx* PTO 29); *Schneller v. Merck & Co.*, 452 F.

App'x 500 (5th Cir. 2011) (same); *Dier v. Merck & Co.*, 388 F. App'x 391 (5th Cir. 2010) (same); *see*

*also Chauvin v. Bayer Healthcare Pharms., Inc.*, 860 F. App'x 95 (8th Cir. 2021) (per curium) (same);

*Blansette v. Bayer Corp.*, 830 F. App'x 490 (8th Cir. 2020) (per curiam) (affirming MDL Court's

dismissal of claims for failure to comply with similar case management orders requiring timely

disclosure of key discovery and expert reports in Fluoroquinolone MDL); *Dzik v. Bayer Corp.*, 846

F.3d 211, 216 (7th Cir. 2017) (affirming MDL court's dismissal for failure to comply with discovery

order in YAZ/Yasmin MDL); *In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, 687 Fed.

Appx. 210, 2017 WL 1401285, at *214 (3d Cir. Apr. 19, 2017) (Multidistrict litigation "presents a

special situation, in which the district judge must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the legislation that created the Judicial Panel on Multidistrict Litigation.") (citation omitted) (affirming MDL court's dismissal for failure to comply with an order requiring future plaintiffs to provide an expert report); *Freeman v. Wyeth*, 764 F.3d 806, 809–10 (8th Cir. 2014) (affirming MDL court's dismissal of claims for failure to provide medical authorizations in hormone therapy MDL); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866–68 (8th Cir. 2007) (affirming MDL court's dismissal of claims for failure to comply with discovery orders in implantable defibrillators MDL).

In light of the above, Monsanto proposes that the current Wave 5 and 6 schedules entered on January 14, 2022 be vacated, and fact and expert discovery stayed in those cases, until all remaining plaintiffs comply with the proposed docket control order.  Alternatively, Monsanto proposes that all plaintiffs who have complied with PTO 240 and are (a) currently in Waves 5 and 6 and (b) any active cases not subject to a prior Wave Order be required to comply with the docket control order within 180 days of entry of that order or within 180 days of receiving an offer of settlement pursuant to PTO 240, whichever is later.  For those cases that comply with the docket control order, additional case-specific fact and expert discovery and motion practice can proceed on a schedule so ordered by the Court.[11]

## 2.  Monsanto's Responses to Plaintiffs' Other Proposals

**Trial Package.**  While Plaintiffs' leadership may seek to update any trial package as part of its duties, Monsanto disagrees with many of the components of Plaintiffs' proposed trial package.  It is not clear that Plaintiffs' leadership in the MDL is entitled to every transcript, pleading, and various other materials from state court cases in which they were not involved, and the burden of such productions should not fall on Monsanto.

Moreover, further trial preservation depositions of general causation experts are both unjustified

---

[11] To date, the sub-waves that have been introduced beginning with wave 4 have been working well in advancing the litigation.  Depending on the number of cases that comply with the docket control order, Monsanto submits that the parties would be well-positioned to recommend a schedule, including possible staggering, once the number of cases becomes clear.

and unnecessary.  While a preservation deposition of Dr. Portier has taken place in a state court case, that deposition was agreed to based on Dr. Portier's medical condition at the time, which leadership counsel represented prohibited him from traveling to the United States to testify live.[12]  Similar circumstances do not exist for plaintiffs' other general causation experts.  Indeed, Drs. Jameson, Sawyer, and Weisenburger have all been disclosed in recent cases (Dr. Sawyer in nearly every case) and Drs. Jameson and Sawyer have testified live in several of the recent trials.  *See, e.g.*, *Crumb v. Stane*, No. 1:17-CV-001471-BAM, 2019 WL 1508059, at *3 (E.D. Cal. Apr. 5, 2019) (denying trial preservation deposition request because said request "is premature because there is no indication that any of these witnesses will be unavailable for trial or that they would be unwilling or unable to comply with a trial subpoena issued pursuant to Federal Rule of Civil Procedure 45.");  *see also Lorenzano v. Sys., Inc.*, No. 617CV422ORL37DCI, 2018 WL 11344851, at *2 (M.D. Fla. Aug. 13, 2018) ( "Both judicial precedent and the Federal Rules of Civil Procedure reflect the strong preference for live testimony…[s]imply put, being busy seeing patients and earning money does not equate to being unavailable, as defined by Rule 32.").  Given the constantly-evolving science and regulatory background, preservation depositions of such experts—who are clearly available and actively engaged in the litigation—would advance no meaningful purpose.

**Factual Misrepresentations.**  Monsanto notes that Plaintiffs' statement regarding PTO 279 badly misstates the facts.  Most notably, the EPA's conclusions regarding the safety of glyphosate Roundup have never wavered.  The EPA has consistently concluded for more than four decades that glyphosate-based herbicides can be used safely and are not carcinogenic.  EPA's 2020 interim registration review decision stated that the agency "thoroughly evaluated potential human health risk associated with exposure to glyphosate and determined that there are no risks to human health from the current registered uses of glyphosate and that glyphosate is not likely to be carcinogenic to humans." January 22, 2020 EPA, "Glyphosate Interim Review Decision," Case No. 0178. This conclusion was based on a rigorous assessment of the extensive body of science spanning more than 40 years.  As recently as April 2022, EPA made clear in a letter to California's OEHHA that it "continues to stand

---

[12] That trial preservation deposition was specific to the circumstances of that case and Monsanto has reserved the right to object to it being played in other cases.  Moreover, Monsanto has more recently been informed that Dr. Portier will again be appearing live at certain trials.

behind its robust scientific evaluation" and its conclusions regarding glyphosate's non-carcinogenicity "remains consistent with many international expert panels and regulatory authorities." April 8, 2022 Letter from Michael Freedhoff, EPA to Dr. Lauren Zeise, Office of Environmental Health Hazard Assessment, California Environmental Protection Agency. In sum, while the Ninth Circuit ordered EPA to address aspects of its most recent risk assessment, it is inaccurate to suggest that EPA's imprimatur of safety has been invalidated. As Plaintiffs are well aware, Monsanto's defense extends far beyond the EPA's position on glyphosate. That multi-faceted defense has led to five consecutive defense verdicts in state courts in California, Missouri, and Oregon in favor of Monsanto; the most recent one occurring just moments before this filing.

   **Plaintiffs' Proposed Phase One.** Monsanto does not wish to engage in Plaintiffs' proposed global resolution plan and the proposed 60-day stay is unnecessary. Such a plan is unnecessary in light of the program that the Court has already put in place to resolve claims through Special Master Ken Feinberg and the other steps proposed herein by Monsanto. Monsanto intends on defending itself in the litigation and will only consider resolving outstanding current cases and claims if it is strategically advantageous to do so.

DATED: September 1, 2022                          Respectfully submitted,

                                                  /s/ David Dickens
                                                  David Dickens
                                                  ddickens@millerfirmllc.com
                                                  The Miller Firm LLC
                                                  108 Railroad Ave
                                                  Orange, VA 22960

                                                  /s/ Robin Greenwald
                                                  Robin Greenwald
                                                  rgreenwald@weitzlux.com
                                                  Weitz & Luxenberg, PC
                                                  700 Broadway
                                                  New York, NY 10003

                                                  /s/ Aimee Wagstaff
                                                  Aimee Wagstaff
                                                  awagstaff@wagstafflawfirm.com
                                                  Wagstaff Law Firm
                                                  940 Lincoln Sreet
                                                  Denver, CO 80203

/s/ Yvonne Flaherty
Yvonne Flaherty
ymflaherty@locklaw.com
Lockridge Grendal Nauen, PLLP
100 Washington Ave South, Suite 200
Minneapolis, MN 55401

/s/ Hunter Lundy
Hunter Lundy
Lundy, Lundy, Soileau & South, LLP
501 Broad Street
Lake Charles, LA 70601

/s/ R. Brent Wisner
R. Brent Wisner
rbwisner@baumhedlundlaw.com
Baum Hedlund Aristei & Goldman
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024

*Attorneys for Plaintiffs*

/s/ Brian L. Stekloff
Brian L. Stekloff (pro hac vice)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (pro hac vice)
(rkilaru@wilkinsonstekloff.com)
WILKINSON STEKLOFF LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

*Attorneys for Defendant*
*MONSANTO COMPANY*