# EXHIBIT C

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 Case No. 16-md-02741-VC |
| | Hon. Vince Chhabria |
| This document relates to: ALL ACTIONS | **PROPOSED ORDER ON DOCKET CONTROL** |

This Pretrial Order ("PTO") applies to all plaintiffs in Wave 5, Wave 6 and any active case not subject to prior Wave Orders 1-4[1] (a) alleging personal injury (and related) claim(s) against Monsanto who have cases pending against Monsanto in this Multidistrict Litigation ("MDL"), as of the date this order is entered and are not settling under an existing inventory settlement or the settlement program established by PTO 240, and (b) all plaintiffs with cases alleging personal injury (and related) claim(s) against Monsanto, relating to the alleged purchase, use of, or exposure to any glyphosate-containing product developed, manufactured, distributed, sold, and/or marketed by Monsanto, or any of its direct or indirect subsidiaries, or by any Person using glyphosate supplied by Monsanto, or any of its direct or indirect subsidiaries, under any name or brand ("Roundup Products") that are newly filed in, removed to, or transferred to this MDL after the entry of this order ("Litigating Plaintiffs").

Consistent with the Court's inherent authority to manage these judicial proceedings, and in light of the inventory settlements and settlement program established by PTO 240 after nearly 6 years of litigation, the Court will exercise its discretion to enter this docket control order in order to efficiently

---

[1] *See* June 14, 2019, PTO 150 (Wave 1 and 2 Scheduling Order); August 1, 2019, PTO 171 (extending deadlines for PTO 150); March 5, 2020, PTO 208 (extending all MDL deadlines including for Wave 2); May 19, 2020 Order, Document No. 10751 (extending deadlines for PTO 208 regarding Wave 2); May 26, 2020 Order, Document No. 10789 (granting joint request for establishment of Wave 3 and deadlines); December 9, 2020 Order, Document No. 12197 (granting joint request for revised Wave 3 schedule and adding cases to Wave 3); December 9, 2020 Order, Document No. 12198 (modifying Wave 2 schedule); August 26, 2021 Order, Document No. 13617 (granting proposed Wave 4 schedule and adding cases to Wave 4); January 14, 2022 Order, Document No. 14475 (granting motion for extending deadlines for Wave 4); April 12, 2022 Order, Document No. 14763 (extending expert deadlines for Wave 4).

manage any remaining cases against Monsanto.

This order requires all Litigating Plaintiffs to produce certain specified information regarding their claim(s) prior to any further fact and expert discovery. Litigating Plaintiffs who represent themselves *pro se* shall be bound by the requirements of this order and shall fully comply with all obligations required of counsel by this order, unless otherwise stated.

This Pretrial Order vacates the current schedule for Wave 5 and 6 (*see* January 14, 2022 docket order) and stays all fact discovery for those cases until after compliance with this PTO.

## I.   Background and Status of Proceedings

In October 2016, the United States Judicial Panel on Multidistrict Litigation ("JPML") established MDL No. 2741 to centralize cases against Monsanto alleging injuries arising from the use of Roundup. *In re Roundup Product Liab. Litig.*, 214 F. Supp. 3d 1346 (J.P.M.L. 2016). Since that time, approximately 4,350 cases against Monsanto, which includes 5,308 individual plaintiffs, have been filed in, removed to, or transferred to the MDL.

As the Supreme Court of the United States has recognized, "[f]ederal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017) (internal quotations omitted); *see also Plaintiffs' Baycol Steering Committee v. Bayer Corp.,* 419 F.3d 794, 802 (8th Cir. 2005). This power extends to, for example, "controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37," "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems," and "facilitating in other ways the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c)(2)(F), (L), (P).

Case management is of the utmost importance in proceedings of this size and MDL courts have even "greater discretion to organize, coordinate and adjudicate [their] proceedings." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866-68 (8th Cir. 2007) (affirming MDL court's dismissal of claims for failure to comply with discovery orders); *see also In re Phenylpropanolamine Prod. Liab. Litig.* ("*In re PPA*"), 460 F.3d 1217, 1229, 1234 (9th Cir. 2006)

PROPOSED ORDER ON DOCKET CONTROL; 16-MD-02741-VC

("administering cases in multidistrict litigation is different from administering cases on a routine docket . . . .") (finding no abuse of discretion in MDL court's dismissal of claims for failure to comply with discovery and product identification case management orders); *Freeman v. Wyeth*, 764 F.3d 806, 809-810 (8th Cir. 2014) (affirming MDL court's dismissal of claims for failure to provide medical authorizations). This is particularly true with respect to managing discovery and taking actions designed to move the cases "in a diligent fashion toward resolution by motion, settlement or trial." *In re PPA*, 460 F.3d at 1232.

The Court is aware that, without admission of fault or liability, Monsanto has entered into various inventory settlements to resolve cases alleging personal injury (and related) claim(s) against Monsanto related to Roundup. Additionally, pursuant to PTO 240, all plaintiffs in this MDL who had not entered into inventory settlements were ordered to provide certain information about their claims to Special Master Kenneth Feinberg to allow plaintiffs to receive an offer to settle their cases. Such plaintiffs were obligated by the Court to participate in the program but had no obligation to accept the offer of settlement.

These settlement activities come almost 6 years after the establishment of the MDL. During this time, the parties have engaged in and completed general causation *Daubert* motion practice and hearings, general liability discovery, a robust bellwether selection process, a bellwether trial, general and case-specific expert discovery and motion practice in three Waves of discovery, and continue to engage in general and case-specific discovery and motion practice in currently active Waves 4-6.

Docket control orders "have been routinely used by courts to manage mass tort cases." *In re Vioxx Prod. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008). Appellate courts regularly uphold such orders in MDL cases.[2]

---

[2] *See, e.g.*, *Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) ("District courts handling complex, multidistrict litigation must be given wide latitude with regard to case management in order to achieve efficiency.") (internal quotation marks omitted) (affirming MDL court's dismissal for failure to comply with discovery order); *In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, 687 Fed. Appx. 210, 2017 WL 1401285, at *214 (3d Cir. Apr. 19, 2017) (Multidistrict litigation "presents a special situation, in which the district judge must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the legislation that created the Judicial Panel on Multidistrict Litigation.") (citation omitted) (affirming MDL court's dismissal for failure to comply with an order requiring future plaintiffs to provide an expert report); *Acuna v. Brown & Root, Inc.*, 200

Such docket control orders may be particularly appropriate when a defendant has taken steps to settle a significant portion of the claims pending against it.[3]

## II. Litigating Plaintiffs' Requirements To Produce Certain Specified Information Regarding Their Claims

**Litigating Plaintiffs' Production Requirements:** Litigating Plaintiffs shall serve the following documents and/or information upon counsel for Monsanto:

    a. **PTO NO. 50 and PTO NO. 241 Obligations:** If not already completed, executed, and served, the Litigating Plaintiff must comply with all requirements of PTOs No. 50 and 241 which require a completed plaintiff fact sheet.

    b. **Medical Records and Record Collection Production:** The Litigating Plaintiff and his/her counsel shall affirmatively collect and produce all medical and pharmacy records relating to the Litigating Plaintiff or, the person alleging personal injury from the use of Roundup Products in the event that is not the same as the Litigating Plaintiff (the "Associated User")

---

F.3d 335, 340 (5th Cir. 2000) (Case management "orders are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation. In the federal courts, such orders are issued under the wide discretion afforded district judges over the management of discovery under Fed. R. Civ. P. 16."); *Chauvin v. Bayer Healthcare Pharms., Inc.*, 860 F. App'x 95 (8th Cir. 2021) (per curiam) (affirming dismissal for failure to comply with the *Lone Pine* requirement); *Blansette v. Bayer Corp.*, 830 F. App'x 490 (8th Cir. 2020) (per curiam) (affirming MDL court's dismissal of claims for failure to comply with similar case management orders requiring timely disclosure of key discovery and expert reports in Fluoroquinolone MDL).

[3] *See, e.g., In re Xarelto Prods. Liab. Litig.,* (*Brown*), MDL No. 2592, 2020 WL 4542988 (Case No. 2:19-cv-14669), at *3 (E.D. La. May 5, 2020); Pretrial Order # 18, Docket No. 758, *In re Fluoroquinolone Prods. Liab. Litig.*, MDL No. 2642 (Case No. 0:15-md-02642) (D. Minn. Jan. 2, 2019); Case Management Order No. 126 at 2, 6-8, Docket No. 2716, *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545 (Case No. 1:14-cv-01748) (N.D. Ill. June 11, 2018) (in settlement context, requiring non-settling plaintiffs to produce medical and pharmacy records and causation and liability expert reports and bifurcated discovery on statute of limitations and other time-based defenses), *available at* https://ecf.ilnd.circ7.dcn/doc1/067120905246.pdf; Case Management Order No. 78 at 5, Docket No. 519, *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, MDL No. 2385 (Case No. 3:12-md-2385) (S.D. Il. May 29, 2014) (in settlement context, requiring non-settling plaintiffs to produce causation expert reports), *available at* http://www.ilsd.uscourts.gov/documents/mdl2385/CMO78.pdf; Pretrial Order #28 and #29, Docket Nos. 12962, 12963, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. 2008), *available at* http://www.laed.uscourts.gov/sites/default/files/vioxx/orders/vioxx.pto28.mdl.pdf and http://www.laed.uscourts.gov/sites/default/files/vioxx/orders/vioxx.pto29.mdl.pdf; *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008); Pretrial Order # 18, Docket No. 758

PROPOSED ORDER ON DOCKET CONTROL; 16-MD-02741-VC

from health care providers for the period from 20 years prior to diagnosis of their alleged injury to present, including records establishing proof of NHL diagnosis and any subsequent treatment. Such medical records shall be produced from all available sources in the Litigating Plaintiff's possession, custody or control, which includes but is not limited to any relevant medical records that can be collected from the Litigating Plaintiff's or the Associated User's medical facilities, pharmacies and health care providers that treated the Litigating Plaintiff or the Associated User for their alleged injury. A Litigating Plaintiff and his/her counsel shall not be in compliance with this PTO by producing only records in the Litigating Plaintiff or his/her counsel's current possession, or by only producing authorizations to allow Monsanto to collect such records.[4] Any Litigating Plaintiff may be prohibited from seeking to introduce into evidence at trial, or in any opposition to summary judgment or pre- or post-trial motions, any medical of pharmacy records or information concerning Plaintiff's medical history, symptoms, injuries or damages if the Litigating Plaintiff failed in good faith to collect and produce records from the Litigating Plaintiff's or the Associated User's medical facilities and health care providers that treated the Litigating Plaintiff or the Associated User for their alleged injury.

   c. **Affidavit Verifying Compliance with this PTO, including Verification of Roundup Use, Diagnosis and Compliance with Records Requirements:** An affidavit in the form attached as Exhibit A to this PTO and signed by the Litigating Plaintiff and his/her counsel attesting that: (i) the Litigating Plaintiff has complied with all requirements of this PTO, including all production requirements in Section II; (ii) that the Litigating Plaintiff or Associated User has used Roundup, the particular Roundup product used, the type, frequency, and duration of Roundup used and specific locations of use; (iii) all medical records described in subsection b have been collected; and (iv) that the Litigating Plaintiff

---

[4] A Litigating Plaintiff does not have to comply with subsection (b) to the extent the Litigating Plaintiff is part of Wave 5 or 6 and has already provided all necessary authorizations and records have been collected or are in the process of being collected. However, to the extent any of the Litigating Plaintiff's records have not yet been collected, the Litigating Plaintiff will bear the costs of any future record collection in order to comply with this Order.

has provided records establishing proof of diagnosis of Non-Hodgkin's Lymphoma (NHL). If any of the documents or records described in subsection b do not exist, the signed affidavit by the Litigating Plaintiff and the Litigating Plaintiff's counsel shall state that fact and the reasons, if known, why such materials do not exist, and shall provide a "No Records Statement" from the medical facilities, and/or other health care provider.

d. **Expert Reports:** A Rule 26(a)(2) case-specific expert report concerning the causation of the Litigating Plaintiff's or the Associated User's alleged injury/injuries. The general and case-specific expert reports may be combined in a single report by a single expert.

**III.    Deadline for Compliance with this Order**

a. For each Litigating Plaintiff with personal injury (and related) claims pending against Monsanto as of the entry of this PTO who was eligible to participate in, complied with PTO 240, but elects not to settle under the settlement program established by PTO 240, the items required by this PTO shall be produced no later than 180 days after this order is entered, or 180 days after the Litigating Plaintiff has received an offer of settlement from Kenneth Feinberg, whichever is later.

b. For each Litigating Plaintiff with personal injury (and related) claims newly filed in, removed to, or transferred to this MDL against Monsanto after the date of this order, the items required by this docket control order shall be produced no later than 120 after the case is filed in, removed to, or transferred to this MDL.

**IV.    Failure to Comply**

The Court has established the foregoing deadlines for the purpose of ensuring that pretrial litigation against Monsanto will progress as smoothly and efficiently as possible. Accordingly, the Court expects strict adherence to these deadlines.

a. Should any Litigating Plaintiff fail to comply with the obligations of this PTO or should Monsanto deem the Litigating Plaintiff's compliance with this PTO deficient, counsel for Monsanto will inform the Litigating Plaintiff of these deficiencies by sending a Compliance Letter.

b. The Litigating Plaintiff will have 14 days from the date of the Compliance Letter in which

to fully comply with the obligations of this PTO.

c.  If a Litigating Plaintiff does not fully comply with the obligations of this PTO within 14 days from the date of the Compliance Letter, Monsanto shall notify the Court of the alleged deficiency by filing a motion for "Order To Show Cause Why the Case Should Not Be Dismissed With Prejudice."

d.  Litigating Plaintiff's counsel shall have 21 days to respond to said motion for Order To Show Cause, which includes the ability to cure the alleged discovery deficiency. There shall be no imposition of a sanction for any Litigating Plaintiff who cures a deficiency within 21 days after entry of an Order to Show Cause.

e.  If the Litigating Plaintiff fails to show cause within 21 days of entry of the Court's Order To Show Cause, the Court shall dismiss the Litigating Plaintiff's case with prejudice. *See, e.g.*, *Freeman*, 764 F.3d at 809-10; *Phenylpropanolamine*, 460 F.3d at 1232-34.

## V.  Case-Specific Discovery of Litigating Plaintiffs Who Comply

Other than the production requirements list in Section II of this PTO, all other discovery will be stayed until the Litigating Plaintiff complies with the production requirements set forth in Section II and a new Scheduling Order is entered by the Court. If a Litigating Plaintiff fully complies with the production requirements outlined in Section II of this PTO, then the parties, as applicable, shall submit a proposed Scheduling Order to the Court that: (a) grants the parties 180 days from the entry of the Scheduling Order to conduct further case-specific fact and expert discovery and (b) sets a briefing schedule that gives the parties 45 days from the close of discovery for the parties to submit summary judgment motions and *Daubert* motions, 28 days for responses, and 21 days for replies. The briefing schedule required by subsection (b) may not be changed absent agreement of the parties or prior leave granted by the Court upon a showing of good cause.[5]

During such case-specific discovery, the parties are permitted to: (a) serve written discovery related to statute of limitations, other time-based defenses and/or case-specific affirmative defenses, and causation issues specific to the Litigating Plaintiff; (b) take the depositions of the Litigating

---

[5] The parties reserve the right to propose case-specific fact and expert discovery schedules for plaintiffs in waves depending on the volume of plaintiffs who comply with this Order.

Plaintiff and Associated User, the Litigating Plaintiff's or Associated User's spouse, and any other non-party fact witness specific to the Litigating Plaintiff or Associated User identified in the Plaintiff Fact Sheet or through other discovery for up to seven hours each, with counsel for Monsanto, as applicable, questioning first at each deposition; and (c) take the depositions of each of the Litigating Plaintiff's or Associated User's prescribing and treating health care providers with the issue of priority of questioning at each deposition to be subject to a meet and confer, and if necessary, resolution by the Court; (d) take the deposition of any case-specific experts disclosed by the opposing party.

It is not the Court's intention to permit additional "generic" discovery against Monsanto, as that discovery has already been completed in the MDL. No other depositions, including depositions of current and former employees of Monsanto, will be allowed absent prior leave granted by the Court upon a showing of good cause.

DATED:  September 1, 2022                    Respectfully submitted,

/s/ William Hoffman
William Hoffman (pro hac vice)
(william.hoffman@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave NW,
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999

/s/ Brian L. Stekloff
Brian L. Stekloff (pro hac vice)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (pro hac vice)
(rkilaru@wilkinsonstekloff.com)
WILKINSON STEKLOFF LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel:     202-847-4030
Fax:    202-847-4005

*Attorneys for Defendant*
*MONSANTO COMPANY*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of September, 2022, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

By: /s/ Brian L. Stekloff

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC<br><br>Hon. Vince Chhabria |
| This document relates to:<br>ALL ACTIONS | **EXHIBIT A TO PROPOSED ORDER ON DOCKET CONTROL** |

**Affidavit Verifying Compliance, Verification of Roundup Use, Diagnosis and Compliance with Records Requirements**

<span style="color:red">**PLEASE CAREFULLY READ ALL THE INSTRUCTIONS BEFORE SUBMITTING YOUR CLAIM**</span>

**INSTRUCTIONS AND ACKNOWLEDGEMENTS**

A completed copy of this Affidavit must be submitted for all cases filed in the In re Roundup Products Liability Litigation, MDL No. 2741 Cas No. 160md-02741-VC ("Roundup MDL") subject to the PTO ("Docket Control Order").

Pursuant to Section II of the Docket Control Order, Litigating Plaintiffs shall provide certain documents and information.  This Affidavit seeks some of the information required under Section II of the Docket Control Order and includes a certification of compliance with all obligations of the Docket Control Order .

In order to fully comply with the provisions and requirements of the Docket Control Order, this form must be filled out in its entirety and signed by the Litigating Plaintiff and his or her attorney.  If you have any questions about this form, please contact your attorney.

**1.   ROUNDUP PRODUCT USER ("ASSOCIATED USER")**

Please complete the information requested below:

If the Roundup Product User ("Associated User") is deceased, incapacitated, or a minor, or is otherwise different from the Litigating Plaintiff, this section should be completed with the information pertaining to the Associated User.  In that case, the Litigating Plaintiff completing this Affidavit on behalf of the Associated User should enter the Associated User's  personal information and contact information where indicated below.

| Roundup Product User Name | Last | | First | Middle |
|---|---|---|---|---|
| Social Security Number | ☐☐☐ ■ ☐☐ ■ ☐☐☐☐ | | Date of Birth<br><br>____ / ____ / _____ (Month/Day/Year) | |
| Address | Street/P.O. Box | | | Apt./Suite |
| | City | | State | Zip |

| User's Contact Information | Phone | ☐ Work<br>☐ Mobile<br>☐ Home |
|---|---|---|
| | Alt. Phone | ☐ Work<br>☐ Mobile<br>☐ Home |
| | Email | |

| Citizenship | Are you a currently a U.S. citizen?<br>        YES ☐     NO ☐<br><br>If No, are you currently a Legal Resident of the United States?<br>        YES ☐     NO ☐<br><br>Were you a U.S. citizen at the time of exposure?<br>        YES ☐     NO ☐<br><br>If No, were you a Legal Resident of the United States at the time of exposure?<br>        YES ☐     NO ☐ |
|---|---|

### 2.   LITIGATING PLAINTIFF (if different from above)

Is the Claim being brought by a Litigating Plaintiff on behalf of the Associated User?

   YES ☐    NO ☐

If Yes, the Litigating Plaintiff who brought the claim should complete Section 2.

| Relationship to Associated User<br>(Check all that apply; attach appointment documents if applicable) | ☐ Spouse ☐ Parent ☐ Stepparent<br>☐ Adult Child ☐ Sibling<br>☐ Ex-Spouse ☐ Lawyer ☐ Guardian<br>☐ Estate Administrator<br>☐ Other (specify): |
|---|---|

| Name | Last | First | Middle |
|---|---|---|---|

| Address | Street/P.O. Box | | Apt./Suite |
|---|---|---|---|
| | City | State | Zip |

| Social Security Number | | Date of Birth<br><br>_____/_____/_____(Month/Day/Year) |
|---|---|---|

| Date of Death of Associated User (if applicable) | _____/_____/_____<br>(Month/Day/Year) | Do you claim that Roundup Products caused the Associated User's death? (if applicable)<br><br>     YES ☐   NO ☐ |
|---|---|---|

2

| Contact Information | Phone | ☐ Work<br>☐ Mobile<br>☐ Home |
|---|---|---|
| | Alt. Phone | ☐ Work<br>☐ Mobile<br>☐ Home |
| | Email | |

## 3.  RESIDENTIAL EXPOSURE TO ROUNDUP PRODUCTS

*INSTRUCTIONS*: "Residential" use refers to applications of Roundup **at home**. DO NOT include any Roundup exposure events in this section related to *occupational or agricultural exposures*.

   A.  Have you applied Roundup at one or more personal residences? ☐ YES ☐ NO

### Residential Roundup Application History

| | | | | |
|---|---|---|---|---|
| **E X A M P L E** | **Street Address:** | 326 Main St, Fairview, NY | **Date(s) of Application:** | March 2001 to July 2011 |
| | **Areas Sprayed:** | Both sides of 600 ft. fence line & long gravel driveway | **Area (approx total sq ft):** | Approx ¼ acre (<10,000 sq ft) |
| | **Times Per Month:** | 2X/month April 15 to October 15 every year | **Duration per Event (hrs):** | 45-60 min. mixing & spraying. Refilled sprayer once per job. |
| | **Protective Clothing:** | None while spraying, wore gloves during mixing. | **Equipment & Product:** | Roundup Super Concentrate, used 2-gal handheld pump sprayer |
| **1** | **Street Address:** | | **Date(s) of Application:** | |
| | **Areas Sprayed:** | | **Area (approx total sq ft):** | |
| | **Times Per Month:** | | **Duration per Event (hrs):** | |
| | **Protective Clothing:** | | **Equipment & Product:** | |
| **2** | **Street Address:** | | **Date(s) of Application:** | |
| | **Areas Sprayed:** | | **Area (approx total sq ft):** | |
| | **Times Per Month:** | | **Duration per Event (hrs):** | |
| | **Protective Clothing:** | | **Equipment & Product:** | |
| | **Street Address:** | | **Date(s) of Application:** | |

| 3 | Areas Sprayed: | | Area (approx total sq ft): | |
| | Times Per Month: | | Duration per Event (hrs): | |
| | Protective Clothing: | | Equipment & Product: | |
| | Street Address: | | Date(s) of Application: | |
| 4 | Areas Sprayed: | | Area (approx total sq ft): | |
| | Times Per Month: | | Duration per Event (hrs): | |
| | Protective Clothing: | | Equipment & Product: | |

Attach additional sheet(s) if needed. *IMPORTANT: Check if attached:* ☐ **ATTACHED**

B.  Describe in your own words all residential addresses where you have used Roundup and the corresponding years of use (refer to preceding Table).

C.  For each residential address, describe the areas where Roundup was sprayed. (e.g. fence lines, along driveway edges, entire backyard, etc.)

D.  If possible, provide size (sq. footage or acres) of areas sprayed (refer to preceding Table).

E.  For each residential address, how often did you spray Roundup? For example, during which months and how many times or sessions per month (refer to preceding Table).

F.  How long did each mixing and spraying session last? (e.g. 30-45 minutes per session)

G.  Describe clothing (shorts, long sleeves, boots, etc.) and personal protection equipment (gloves, mask, etc.) worn during Roundup mixing and application. If none state *"None."*

   1.  Personal Protective Equipment ("PPE") worn during spray applications:

   2.  Protective clothing worn during mixing (unless *"Ready-to-Use"* product was applied):

| | | | | |
|---|---|---|---|---|
| **4. OCCUPATIONAL AND/OR AGRICULTURAL EXPOSURE TO ROUNDUP PRODUCTS** | | | | |

**INSTRUCTIONS**: "Occupational" or "Agricultural" use refers to applications of Roundup performed **on a professional basis**. DO NOT include *residential* Roundup exposure events in this section.

A. Have you applied Roundup occupationally or agriculturally? ☐ **YES** ☐ **NO**

**Occupational and/or Agricultural Roundup Application History**

| | | | | |
|---|---|---|---|---|
| **E X A M P L E** | **Street Address:** | 326 Main St, Fairview, NY | **Date(s) of Application:** | March 2001 to July 2011 |
| | **Areas Sprayed:** | Both sides of 600 ft. fence line & long gravel driveway | **Area (approx total sq ft):** | Approx ¼ acre (<10,000 sq ft) |
| | **Times Per Month:** | 2X/month April 15 to October 15 every year | **Duration per Event (hrs):** | 45-60 min. mixing & spraying. Refilled sprayer once per job. |
| | **Protective Clothing:** | None while spraying, wore gloves during mixing. | **Equipment & Product:** | Roundup Super Concentrate, used 2-gal handheld pump sprayer |
| **1** | **Street Address:** | | **Date(s) of Application:** | |
| | **Areas Sprayed:** | | **Area (approx total sq ft):** | |
| | **Times Per Month:** | | **Duration per Event (hrs):** | |
| | **Protective Clothing:** | | **Equipment & Product:** | |
| **2** | **Street Address:** | | **Date(s) of Application:** | |
| | **Areas Sprayed:** | | **Area (approx total sq ft):** | |
| | **Times Per Month:** | | **Duration per Event (hrs):** | |
| | **Protective Clothing:** | | **Equipment & Product:** | |
| **3** | **Street Address:** | | **Date(s) of Application:** | |
| | **Areas Sprayed:** | | **Area (approx total sq ft):** | |
| | **Times Per Month:** | | **Duration per Event (hrs):** | |
| | **Protective Clothing:** | | **Equipment & Product:** | |
| | **Street Address:** | | **Date(s) of Application:** | |

| 4 | Areas Sprayed: | | Area (approx total sq ft): | |
|---|---|---|---|---|
| | **Times Per Month:** | | **Duration per Event (hrs):** | |
| | **Protective Clothing:** | | **Equipment & Product:** | |

Attach additional sheet(s) if needed. *IMPORTANT: Check if attached:* ☐ **ATTACHED**

B.  Describe in your own words all occupational and/or agricultural addresses where you have used Roundup and the corresponding years of use (refer to preceding Table).

C.  For each occupational and/or agricultural address, describe the areas where Roundup was sprayed. (e.g. fence lines, along road or ditch edges, entire acreage, etc.)

D.  If possible, provide size (acres) of areas sprayed (refer to preceding Table).

E.  For each occupational and/or agricultural address, how often did you spray Roundup? For example, during which months and how many times per month (refer to preceding Table).

F.  How long did each mixing and spraying session last? (e.g. 30-45 minutes per session)

G.  Describe clothing (shorts, long sleeves, boots, etc.) and personal protection equipment (gloves, mask, etc.) worn during Roundup mixing and application. If none state *"None."*

  1.  Personal Protective Equipment ("PPE") worn during spray applications:

  2.  Protective clothing worn during mixing (unless *"Ready-to-Use"* product was applied):

## 6.   DOCUMENT REQUIREMENTS [Required for all Claims]

By checking the boxes below I certify that :

| ☐ | I have collected and produced all medical and pharmacy records relating to the Litigating Plaintiff or Associated User (whichever is alleging personal injury from the use of Roundup Products) from health care providers for the period from 20 years prior to diagnosis of their alleged injury to present, including records establishing proof of Non-Hodgkin's Lymphoma diagnosis and any subsequent treatment. |
|---|---|

| ☐ | I understand that the obligation to collect medical and pharmacy records is not limited to any records that can be collected from the Litigating Plaintiff's or Associated User's (whichever is alleging personal injury from the use of Roundup Products) possession, but requires that I collect records from the medical facilities, pharmacies and health care providers that treated the Litigating Plaintiff or the Associated User for their alleged injury. |
|---|---|
| ☐ | I understand that failure to collect and produce the information and documents required under the Docket Control Order may result in sanctions that include prohibition of the use of certain evidence in my case and/or dismissal of my case. |

## 7.   LITIGATING PLAINTIFF VERIFICATION

**I certify under penalty of perjury pursuant to 28 U.S.C. Section 1746 that all statements and information submitted in support of my claim, including the information contained within this Affidavit, are true, accurate, and complete to the best of my knowledge. I understand that false statements or claims made in connection with this Affidavit, may result in fines, imprisonment, and/or any other remedy available by law.**

| Claimant / Representative's Signature | | DATE | ____/____/_____ (month) (day) (year) |
|---|---|---|---|
| Printed Name | First | MI | Last |

Electronic Signature Verification [DocuSign® or similar]

<span style="color:red">Alternative for those Claimants unable to electronically sign:</span> Attach Copy of Government Issued Photo Identification

[Driver's licenses or other state photo identity cards issued by Department of Motor Vehicles (or equivalent); U.S. passport; U.S. passport card; DHS trusted traveler cards (Global Entry, NEXUS, SENTRI, FAST); U.S. Department of Defense ID, including IDs issued to dependents; Permanent resident card; Border crossing card; State-issued Enhanced Driver's License; Federally recognized, tribal-issued photo ID; HSPD-12 PIV card; Foreign government-issued passport; Canadian provincial driver's license or Indian and Northern Affairs Canada card; Transportation worker identification credential; U.S. Citizenship and Immigration Services Employment Authorization Card (I-766);U.S. Merchant Mariner Credential]

## 8.   LITIGATING PLAINTIFF'S COUNSEL VERIFICATION (Filled out by counsel for the Litigating Plaintiff)

**I certify under penalty of perjury pursuant to 28 U.S.C. Section 1746 that all statements and information submitted in support of my claim, including the information contained within this Affidavit, are true, accurate, and complete to the best of my knowledge. I understand that false statements or claims made in connection with this Affidavit, may result in fines, imprisonment, and/or any other remedy available by law.**

| Attorney's Name | Last | First | Middle |
|---|---|---|---|
| Law Firm Name | | | |
| | | | |

| Business Address | Street/P.O. Box | | Apt./Suite |
|---|---|---|---|
| | City | State | Zip |

| Business Phone Number: | Business Email Address: |
|---|---|

| Attorney's Signature | | DATE | _____/_____/_____<br>(month) (day) (year) |
|---|---|---|---|

Electronic Signature Verification [DocuSign® or similar]

Alternative for those Claimants unable to electronically sign: Attach Copy of Government Issued Photo Identification

[Driver's licenses or other state photo identity cards issued by Department of Motor Vehicles (or equivalent); U.S. passport; U.S. passport card; DHS trusted traveler cards (Global Entry, NEXUS, SENTRI, FAST); U.S. Department of Defense ID, including IDs issued to dependents; Permanent resident card; Border crossing card; State-issued Enhanced Driver's License; Federally recognized, tribal-issued photo ID; HSPD-12 PIV card; Foreign government-issued passport; Canadian provincial driver's license or Indian and Northern Affairs Canada card; Transportation worker identification credential; U.S. Citizenship and Immigration Services Employment Authorization Card (I-766);U.S. Merchant Mariner Credential]