The Honorable Alex Tse, Magistrate Judge
United States District Court for the Northern District of California
450 Golden Gate Avenue, 15th Floor
San Francisco, CA 94102

    Re:    *Nancy Salas v. Monsanto Company, et al.*, 3:21-cv-06173-VC – Monsanto's Motion to Compel Dr. Kevin Knopf's Continued Deposition

Dear Judge Tse:

    A discovery dispute has arisen in the case of *Nancy Salas v. Monsanto Company, et al.*, 3:21-cv-06173-VC, a member case of MDL No. 2741, *In Re: Roundup Products Liability Litigation*. The parties have met and conferred in good faith via videoconference regarding the discovery dispute and are unable to resolve the dispute. In accordance with the Court's Standing Order, the parties submit their positions on the issue for judicial resolution. The parties thank the Court in advance for its attention to this matter.

**Monsanto's Position:**

    Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto") respectfully moves to compel the continued deposition of Plaintiff's expert, Dr. Kevin Knopf, wherein Dr. Knopf will answer all questions regarding the basis for his opinions, including questions regarding the various studies and reports referenced in his report.[1]

    Dr. Knopf was disclosed in this matter on June 23, 2022. *See* Nancy Salas Expert Witness Disclosures, attached as Exhibit A. Plaintiff's expert disclosures specified that Dr. Knopf would provide testimony regarding the "areas of oncology, hematology, genotoxicity and epidemiology," and on issues of "specific causation regarding whether exposure to glyphosate and/or glyphosate-based formulated products was a substantial factor contributing to" Ms. Salas's mantle cell lymphoma. Ex. A at 3. In his expert report (attached as Exhibit B), Dr. Knopf cites to findings made by the Environmental Protection Agency and the International Agency for Research on Cancer, human epidemiology studies, cell studies, and animal studies, several of which he discusses in considerable detail in his report. Ex. B at 3–12.

    During Dr. Knopf's deposition on August 5, 2022, counsel for Monsanto sought to explore the basis for Dr. Knopf's reliance on these studies and reports. However, when Dr. Knopf was questioned about the studies and reports he cites and discusses in his report, counsel for Plaintiff instructed Dr. Knopf not to answer the questions because Dr. Knopf is designated as a specific-causation expert.[2] This was improper because Dr. Knopf relied on these documents in forming his opinions in this case:

        Q: You write "it is my medical and epidemiological conclusion that Ms. Salas exposure to Roundup was not only sufficient but exceeds the risk of exposure that is reported to either

---

[1] Monsanto's expert depositions were scheduled to follow Dr. Knopf's deposition, and some have already taken place. Because the Knopf deposition was not completed, Monsanto's experts reserve the right to supplement their opinions in this case after the completion of the Dr. Knopf's deposition.

[2] Plaintiff's counsel began instructing Dr. Knopf not to answer after approximately four hours on the record.

cause and/or significantly increase one's risk of developing NHL." Did I read that correctly?

A: You read that correctly.

. . .

Q: When you say her exposure to Roundup was not only sufficient, but exceeds the risk of exposure that is reported to either cause or significantly increase, are you talking about what has been reported in the studies cited in your report?

A: Yes, I would think so. Yes.

Knopf Dep. Tr. at 204:2–8; 205:12–17, attached as Exhibit C. What is more, Plaintiff's counsel's instruction pertained not only to the details regarding these studies, but also basic questions seeking to determine whether Dr. Knopf relied on them in forming his "*case-specific opinions*":

Q. And [the McDuffie] study helped form the basis of your case-specific opinions in this case; correct?

MR. ROJAS: I'm going to instruct not to answer.

Ex. C Tr. at 207:11–208:14 (emphasis added); *see also id.* at 198:22–199:10 (instructing not to answer regarding the Hardell study); 206:5–207:5 (same regarding McDuffie study); 215:21–216:5 (same regarding Eriksson study); 217:13–19 (same regarding De Roos 2003 study); 218:8–14 (same regarding Schinasi, Zhang, Pahwa, and De Roos 2005 studies); 218:23–219:4 (same regarding Aris & Leblanc and Santovito studies); 219:19–220:1 (same regarding Bolognesi and De Roos 2005 studies); 220:16–24 (same regarding Leon study).

In sum, no matter the question, or topic, counsel for the Plaintiff refused to allow Dr. Knopf to answer questions about the information included in his expert report. Indeed, Dr. Knopf was asked about his report's reference to family history of cancer as a potential risk factor for non-Hodgkin's lymphoma, and whether he considered that risk factor in forming his opinions specific to Ms. Salas. Ex. B at 7. Monsanto's counsel further asked Dr. Knopf whether he considered the studies cited in his report that address whether family history is a risk factor for NHL in formulating opinion—a question that Plaintiff's counsel could not (and cannot) credibly claim is remotely related to only general causation. But even here, Plaintiff's counsel instructed Dr. Knopf not to answer, and he did not. Ex. C at 229:19–230:5. Counsel for Monsanto was therefore forced to suspend the deposition to seek an order compelling Dr. Knopf to answer questions regarding the basis of his opinions in this case and the materials he discussed and cited in his report.

Under Rule 26(a)(2)(B)(i), an expert witness's report must provide "*a complete statement of all opinions* the witness will express and the basis and reasons for them." *Id.* (emphasis added). Expert depositions serve the important function of allowing the other side to assess the expert's position and test whether their methodology is reliable under Rule 702. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 739 (3d Cir. 1994). It is thus only logical that an attorney may seek to explore *all* aspects of an expert's report, which, per Rule 26, the attorney can expect to contain a "complete statement of all [his] opinions."

While Monsanto's efforts to inquire into these topics were eminently reasonable, and typical of discovery in any case, Plaintiff's counsel's instruction was not. As stated in the Northern District of California Guidelines for Professional Conduct, a lawyer should not instruct a deponent not to answer "unless the question seeks privileged information, is manifestly irrelevant, or is

2

calculated to harass."[3]  And the Northern District's guidelines are in accordance with Rule 30(c) of the Federal Rules, which provides that "the examination and cross-examination of a deponent proceed *as they would at trial*," and that "a person may instruct a deponent not to answer only when necessary to *preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)*." *Id.* (emphasis added).  Rule 30(d) further provides that if any person or circumstance impedes or delays the examination, "[t]he court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent," and "may impose an appropriate sanction--including the reasonable expenses and attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent.".[4]

*Alexsam, Inc. v. Green Dot Corp.*, No. CV155742CASPLAX, 2017 WL 2676398, at *3 (C.D. Cal. June 19, 2017), applied these rules in a nearly identical situation and correctly rejected Plaintiff's position.  There, the opposing attorney instructed the expert not to answer because the questions were, according to counsel, "outside the basis of his opinions," despite being based on what was in the expert's report.  The court concluded that counsel had "impermissibly denied Green Dot an opportunity to depose one of its experts on topics within the scope of his expert report and the opinions therein." *Id.* at *5–6 (noting it is "far from clear why Green Dot's questions about Barker's Report . . . were beyond the scope of permissible questioning.").

In sum, the instances where an instruction not to answer are permitted are severely limited, and Plaintiff's counsel meets none of them.  Because it is a basic aspect of federal discovery that an expert witness will be questioned about the contents of his report and the materials that form the basis of the expert's opinion, a continued deposition, plus costs and attorneys' fees incurred in bringing this motion, and those incurred for the continued deposition, are appropriate.

**Home Depot's Position:**

Home Depot adopts and joins in the arguments made in Monsanto's Position above as if fully stated herein and as applicable to Home Depot.

**Plaintiff's Position:**

This dispute arises from the fact that during the more than six-hour deposition of Dr. Knopf, Monsanto's counsel repeatedly sought to elicit testimony regarding *general* causation, despite it being clear that Dr. Knopf will only offer opinions in this case about *specific* causation. After hours' worth of general-causation questions, Plaintiff's counsel instructed Dr. Knopf not to answer any further general-causation questions, and repeatedly invited Monsanto to ask Dr. Knopf questions regarding specific causation. Apparently having no such questions, Monsanto

---

[3]   Plaintiff's counsel cannot credibly claim that information in the expert's report and which the expert testifies supplies the basis for his opinion is "manifestly irrelevant."

[4]   There are multiple avenues for the Court to award fees and costs here.  A court may impose a sanction of reasonable expenses and attorneys' fees incurred by any party on the person who impedes, delays, or frustrates the fair examination of the deponent under Rule 30, which does not require a finding of bad faith.  *Lee v. Pep Boys-Manny Moe & Jack of California*, No. 12-CV-05064-JSC, 2015 WL 9268118, at *3 (N.D. Cal. Dec. 21, 2015).  Rule 37 likewise provides that expenses incurred in making this motion (if granted) may be awarded.  Given that Plaintiff had no rational, good faith basis to prevent Dr. Knopf from responding to questions about his report and the basis of his opinions, the Court can fairly conclude that Plaintiff acted in bad faith, and should award sanctions against Plaintiff's counsel under its inherent authority and 28 U.S.C. § 1927.  *See Lee*, 2015 WL 9268118, at *3 (describing court's inherent authority to impose sanctions and sanctions under 28 U.S.C. § 1927).

3

"suspended" the deposition. Plaintiff's position remains that Monsanto is free to question Dr. Knopf about his specific causation opinions and methodology. And to the extent that Monsanto intends to ask such questions, Plaintiff agrees that the deposition may resume. But Plaintiff submits that Dr. Knopf should not be compelled to provide deposition testimony about general causation.

*Dr. Knopf's deposition*

Dr. Knopf is an oncologist who has been retained in this case to offer opinions about specific causation *only*. He will not offer opinions about general causation, epidemiology, toxicology, or indeed any other subject. That has been clear from the moment that Dr. Knopf was first disclosed in this case—as an expert who "will testify on issues of specific causation[.]"

Even if Plaintiff's expert disclosures had left some doubt about the scope of Dr. Knopf's opinions in this case, he was clear during his deposition that his only opinions in this case concern specific causation. Indeed, early in the deposition, Monsanto's counsel briefly asked Dr. Knopf about his specific-causation methodology, and Dr. Knopf clearly answered that he had employed a methodology called differential diagnosis.

> *Q: Again, I'm just focused on the specific-cause question. And the method by which you have determined that on the specific side is a differential diagnosis? Is that fair?*
>
> *A: In the report that I wrote I performed a diagnosis excluding other risk factors for causation of her non-Hodgkin's lymphoma, yes, I think that's fair.*

Tr. at 78:14-20. But after confirming Dr. Knopf's specific-causation methodology, counsel for Monsanto did not inquire much further into it. Instead, Monsanto proceeded to devote the bulk of the deposition to *general-causation* questions. Time and again, Dr. Knopf had to explain that "I just understand that I am a specific causation expert here, not a general causation expert, and these are more general-causation expert questions[.]" *Id.* at 98:7-10. *See also*, *e.g.*, *id.* at 110:13-14 (. . . . "I'm not retained as a general causation expert . . ."); *id.* at 130:1-2 ("I was retained as a specific causation expert, not a general causation expert."). Eventually, Plaintiff's counsel objected that such questions were "not within the scope of . . . his expert opinion in this case[.]" *Id.* at 133:7-16. However, Monsanto continued to insist on eliciting general-causation testimony.

Finally, about five hours into the deposition and after several dozen general-causation questions, Plaintiff's counsel instructed Dr. Knopf not to answer any further questions intended to elicit testimony about general causation. Plaintiff's counsel was clear that this instruction would extend *only* to general-causation questions, and that Monsanto's counsel would be "of course, welcome . . . to ask any questions" about specific causation. *Id.* at 199:23-25. *See also*, *e.g.*, *id.* at 203:9-11 (explaining that Defendants' counsel would be "free to ask any specific causation questions, of course, of Dr. Knopf"); *id.* at 211:12-20 ("[T]he deposition can proceed, as I've said several times before, on the topic of specific causation, which is in his disclosure and throughout today's deposition we have been clear that is the opinion he's going to offer in this case.").

Again, however, Monsanto insisted on eliciting general-causation testimony. In some instances, Monsanto adorned its general-causation questions with the phrase "case-specific opinions," presumably under the misapprehension that this would transform a general-causation question—for example about epidemiology—into a specific-causation question. Ultimately, apparently having no further questions about Dr. Knopf's specific-causation methodology, Monsanto decided to "suspend" the deposition, anticipating a motion for relief from this Court.

*The discovery dispute*

4

The parties agree that the deposition of Dr. Knopf may continue at a mutually agreeable date. But they disagree about whether Dr. Knopf should be compelled to testify about general causation. And should there be a continuation of the deposition, to the extent necessary Plaintiff hereby moves under Rule 30(d)(3) for a protective order restricting Monsanto from eliciting testimony about topics that Dr. Knopf does not intend to address this case.[5]

Plaintiff further disagrees with Monsanto that Plaintiff "refused to allow" Dr. Knopf to answer questions "no matter the question, or topic[.]" On the contrary, the deposition of Dr. Knopf lasted over six hours, yielding a transcript spanning 238 pages. The first instruction not to answer came after 199 pages' worth of questioning. Prior to that instruction, Monsanto's counsel had extensive colloquies with Dr. Knopf about his background, his prior expert work, his clinical practice, and general causation, among other topics. Plaintiff's counsel raised no substantive objection—much less any instruction not to answer—as to the few questions that Monsanto asked about Dr. Knopf's specific-causation opinions and methodologies. The instruction not to answer was *expressly* and *narrowly* limited to general-causation questions *only*.

Plaintiff also disagrees with Monsanto that this instruction was improper. "The purpose of Rule 26(b)(4)(A) [the rule providing for depositions of testifying experts] is to ensure that parties can properly prepare for cross-examination of expert witness at trial." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 899, 904 (N.D. Ohio 2009). Consistent with this principle, federal courts limit expert witness depositions by, for example, prohibiting depositions of experts who do not intend to testify at trial. *See id. Accord*, *e.g.*, *Fed. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 2008 WL 761417, at *3 (N.D. Cal. Mar. 19, 2008). Similarly, courts have limited expert discovery to the subject matters of an expert's anticipated trial testimony. *See Inspiration Consol. Copper Co. v. Lumbermens Mut. Cas. Co.*, 60 F.R.D. 205, 210 (S.D.N.Y. 1973) (denying motion to compel certain discovery as to expert accountant regarding subject matters about which he would not testify at trial). Here, it is clear that Dr. Knopf does not intend to testify at trial about general causation. Accordingly, there is no reasonable basis for eliciting extensive testimony from Dr. Knopf about general causation.

Finally, Monsanto's request for fees and costs is entirely without merit. Indeed, even Monsanto's *own* cited authority does not support this request. In *Alexsam*, a case Monsanto describes as "nearly identical," the court *rejected* a request for sanctions in the form of fees and costs because there was no evidence to satisfy the "high threshold" of "bad faith." *See* 2017 WL 2676398, at *6 (quotation omitted). Here, other than loose accusations of "bad faith," Monsanto offers no evidence to satisfy that "high threshold." The parties have had a discovery dispute about the proper scope of Dr. Knopf's deposition and have endeavored to resolve it amicably and in good faith.

---

[5]   As explained during the deposition, if Monsanto's argument is that Dr. Knopf's expert *report* gives rise to confusion about the scope of his opinions, Plaintiff acknowledges that Dr. Knopf's report contained references to epidemiological literature by way of background. And Plaintiff's counsel is willing to explore with Dr. Knopf making amendments to that report to further clarify the scope of his opinions. *See* Tr. at 199:9-200:4. If convenient, these amendments could be completed *prior* to any continued deposition of Dr. Knopf.

Respectfully submitted,

DATED: September 8, 2022

By: */s/ Anthony R. Martinez*[6]

Anthony R. Martinez
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
amartinez@shb.com

*Attorney for Defendant,*
*MONSANTO COMPANY*

By: */s/ Caroline W. Suydam*

Caroline W. Suydam
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, GA 30326
Telephone: (404) 495-8485
Fax: (404) 365-9532
csuydam@mmmlaw.com

*Attorney for Defendant,*
*HOME DEPOT U.S.A., INC.*

By: */s/ Pablo Rojas*

Pablo Rojas
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, FL 33131
Telephone: (305) 358-2800
Fax: (305) 358-2382
projas@podhurst.com

*Attorney for Plaintiff,*
*NANCY SALAS*

---

[6] Counsel for Monsanto Company attests that counsel for Home Depot U.S.A., Inc. and Nancy Salas have concurred in the filing of this joint letter.