**SHOOK, HARDY & BACON L.L.P.**
Jennise W. Stubbs
600 Travis Street, Suite 3400
Houston, TX 77002-2026
Telephone:    (713) 227-8008
Facsimile:    (713) 227-9508
Email:        jstubbs@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Michael Teston v. Monsanto Company*,<br>Case No. 3:22-cv-04828-VC | |

### MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in Plaintiff's Complaint ("the Complaint"), except as set forth below. As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies. Silence as to any allegations shall constitute a denial.

1.      The allegations in paragraph 1 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto admits to the allegations in paragraph 1 based on the allegations in Plaintiff's Complaint.

2.      The allegations in paragraph 2 set forth conclusions of law for which no response is required.

3.      The allegations in paragraph 3 set forth conclusions of law for which no response is required.

4.      The allegations in paragraph 4 set forth conclusions of law for which no response is required.

5.      The allegations in paragraph 5 set forth conclusions of law for which no response is required.

6.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 6 and therefore denies those allegations.

7.      Monsanto admits the allegations in paragraph 7.

8.      In response to the allegations in paragraph 8, Monsanto admits that it discovered the herbicidal properties of glyphosate; that it has manufactured Roundup®-branded herbicides; that certain Roundup®-branded herbicides contain POEA and adjuvants; and that the Environmental Protection Agency ("EPA") has classified surfactants and adjuvants as inert. Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health. Monsanto denies the remaining allegations in paragraph 8.

9.      In response to the allegations in paragraph 9, Monsanto admits that its headquarters are in St. Louis County, Missouri, and that it is incorporated in Delaware. Monsanto admits that it and its affiliated companies have operations and offices in countries around the world. Monsanto admits the allegations in the second and third sentences of paragraph 9. Monsanto admits the allegations in the fourth sentence of paragraph 9. Monsanto denies the allegations in the fifth sentence of paragraph 9 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the sixth sentence of paragraph 9 to the extent that it suggests that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA. In response to the seventh sentence of paragraph 9, Monsanto admits that glyphosate was one of the

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

1    world's most widely used herbicides in 2013, but notes that Monsanto has not been the only

2    manufacturer of glyphosate-based herbicides. Monsanto lacks information or knowledge sufficient

3    to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining

4    sentences of paragraph 9 and therefore denies those allegations.

5          10.    In response to the allegations in paragraph 10, Monsanto admits that it has been a

6    producer of glyphosate-based herbicides but lacks sufficient information regarding the business of

7    other glyphosate producers to admit or deny the allegation as written in the second sentence of

8    paragraph 10. Monsanto admits that it has been the leading producer of seeds that contain the

9    Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improve a

10    farmer's ability to control weeds. Monsanto lacks information or knowledge sufficient to form a

11    belief as to the accuracy of the specific numbers and statistics provided in the remaining sentences

12    of paragraph 10 and therefore denies those allegations.

13          11.    Monsanto admits the allegations in the first sentence of paragraph 11. Monsanto

14    admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly

15    below regulatory safety limits in various locations and media. Monsanto otherwise denies the

16    remaining allegations in paragraph 11.

17          12.    Monsanto admits the allegations in the first sentence of paragraph 12. Monsanto

18    denies the allegations in the second sentence of paragraph 12 to the extent they suggest that the

19    International Agency for Research on Cancer ("IARC") based its evaluation on a complete or

20    accurate assessment of the scientific research regarding glyphosate.

21          13.    In response to the allegations in paragraph 13, Monsanto admits that the IARC

22    working group classified glyphosate under Group 2A. Monsanto denies the remaining allegations

23    in paragraph 13.

24          14.    Monsanto denies the allegations in paragraph 14.

25          15.    In response to paragraph 15, Monsanto admits that glyphosate repeatedly has been

26    found to be safe to humans and the environment by regulators in the United States and around the

27    world and further admits that it has labeled glyphosate products as approved by regulatory bodies

28

consistent with those findings.   Monsanto also admits that the EPA repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.   To the extent that paragraph 15 alleges that Monsanto has labeled glyphosate-based or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

16.   In response to the allegations in paragraph 16, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s.   Monsanto denies the remaining allegations in paragraph 16.

17.   Monsanto admits the allegations in the first two sentences of paragraph 17 and admits that it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under FIFRA. Monsanto otherwise denies the remaining allegations in paragraph 17.

18.   In response to the allegations in paragraph 18, Monsanto admits that certain Roundup®-branded herbicides contain POEA and adjuvants, that EPA has classified surfactants and adjuvants as inert, and that the specific surfactants and adjuvants used in Roundup®-branded herbicides — like those in other manufacturers' herbicide products — are protected by EPA as "trade secrets." Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health. Monsanto denies the remaining allegations in paragraph 18.

19.   The allegations in paragraph 19 set forth conclusions of law for which no response is required.

20.   In response to the allegations in paragraph 20, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 20 set forth conclusions of law for which no response is required.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC   & 3:22-cv-04828-VC

21.    The allegations in paragraph 21 set forth conclusions of law for which no response is required.

22.    In response to the allegations in paragraph 22, Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale, and distribution in the United States and are registered by the State of Florida for sale and distribution.

23.    In response to the allegations in paragraph 23, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. Monsanto states that the term "the product tests" in the last sentence of paragraph 23 is vague and ambiguous, and Monsanto therefore denies the same. The remaining allegations in paragraph 23 set forth conclusions of law for which no response is required.

24.    Monsanto denies the allegations in paragraph 24 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 24 regarding such pesticide products generally. The remaining allegations in paragraph 24 set forth conclusions of law for which no response is required.

25.    In response to the allegations in paragraph 25, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and further admits that EPA has not released its findings. Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094. The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2] Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3] Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 25 and therefore denies these allegations.

26.    In response to the allegations in paragraph 26, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies. Monsanto admits that plaintiff have accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans. In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies." EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts,* 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity." Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive

---

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document — Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry,* 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates         /watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 —56:20.

Monsanto denies the remaining allegations in paragraph 26.

27.    In response to the allegations in paragraph 27, Monsanto admits that it — along with a large number of other companies and governmental agencies — was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate. Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") studies. To the extent that the allegations in paragraph 27 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

28.    In response to the allegations in paragraph 28, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

29.    Monsanto denies the allegations in paragraph 29 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate. Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate. Monsanto was one of several pesticide manufacturers who had used IBT test results. The audit found some toxicology studies conducted

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

with the original Roundup® herbicide to be invalid. As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies. To the extent that the allegations in paragraph 29 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations also are denied.

30.    In response to the allegations in paragraph 30, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

31.    In response to the allegations in paragraph 31, Monsanto admits that it — along with numerous other private companies — hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products. Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost. To the extent that the allegations in paragraph 31 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

32.    Monsanto denies the allegations in paragraph 32.

33.    In response to the allegations in paragraph 33, Monsanto admits that Roundup®-branded products are highly valued by its customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000. The remaining allegations in paragraph 33 are vague and conclusory, comprise attorney characterizations, and are accordingly denied.

34.    In response to the allegations in paragraph 34, Monsanto admits that following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 34 and accordingly denies those allegations. The remaining allegations in paragraph 34 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

35.     In response to the allegations in paragraph 35, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 35 and accordingly denies the same. The remaining allegations in paragraph 35 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

36.     In response to the allegations in paragraph 36, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products. This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto. Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer. To the extent the subparts of paragraph 36 purport to quote a document, the document speaks for itself and thus does not require any further response. The remaining allegations in paragraph 36 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

37.     In response to the allegations in paragraph 37, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General. The assurance speaks for itself and thus does not require any further response. The remaining allegations in paragraph 37 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

38.     Monsanto denies the allegations in paragraph 38.

39.     In response the allegations in paragraph 39, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations to the extent they suggest that this ruling was in any way related to Plaintiff's claims here that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 39.

40.     In response to the allegations in paragraph 40, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent. Monsanto lacks information or

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 40, which are not limited as of any specified date, and accordingly denies the same.

41.     In response to the allegations in paragraph 41, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 41.

42.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 42 and therefore denies those allegations.

43.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 43 and therefore denies those allegations.

44.     Monsanto denies the allegations in paragraph 44 to the extent that they suggest that IARC had previously assessed glyphosate. Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

45.     In response to the allegations in paragraph 45, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015, and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working groups are "experts." Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence. Monsanto also denies that the working group considered all

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

information available in the scientific literature and all data from government reports that are publicly available. Monsanto denies the remaining allegations in paragraph 45.

46.     In response to the allegations in paragraph 46, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group. To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

47.     The allegations in paragraph 47 are vague and conclusory. To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

48.     In response to the allegations in paragraph 48, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, the allegations in paragraph 48 are denied.

49.     In response to the allegations in paragraph 49, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

50.     Monsanto denies the allegations in paragraph 50. The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

51.     In response to the allegations in paragraph 51, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

52.     In response to the allegations in paragraph 52, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors. Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 52.

53.     In response to the allegations in paragraph 53, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA is present or persists in human blood or urine. Monsanto denies the remaining allegations in paragraph 53.

54.     In response to the allegations in paragraph 54, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration. Regulators around the world repeatedly have concluded that glyphosate is not genotoxic. Monsanto denies the remaining allegations in paragraph 54.

55.     In response to the allegations in paragraph 55, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion. Monsanto denies the remaining allegations in paragraph 55.

56.     In response to the allegations in paragraph 56, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

and the specified cancers. The AHS cohort study did not find a positive association between glyphosate and any type of cancer. Monsanto denies all other allegations in paragraph 56.

57.     In response to the allegations in the first two sentences of paragraph 57, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water Regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation. In response to the allegations in paragraph 57, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water Regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, and that the Complaint accurately quotes from the identified document, which should be read in context of EPA's precautionary regulatory mandate and the EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

58.     In response to the allegations in paragraph 58, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate. Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal." *See Arias v. DynCorp,* 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

59.     Monsanto states that the term "toxic" as used in paragraph 59 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity. Monsanto denies the allegations in paragraph 59.

60.     In response to the allegations in paragraph 60, Monsanto admits that Julie Marc published the cited study in 2002 and states that the document speaks for itself and does not require a response. To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 60.

61.     In response to the allegations in the first sentence of paragraph 61, Monsanto admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle regulation" in 2004. To the extent that the first sentence of paragraph 61 characterizes the meaning of the cited

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

study, Monsanto denies the allegations in the first sentence of paragraph 61. In response to the remaining allegations in paragraph 61, Monsanto states that the document speaks for itself and does not require a response. To the extent that a response is deemed required, Monsanto denies the remaining allegations in paragraph 61.

62.     In response to the allegations in paragraph 62, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 62 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 62.

63.     In response to the allegations in paragraph 63, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 63 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies support the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in paragraph 63.

64.     In response to the allegations in paragraph 64, Monsanto states that the terms "at all times" and "these studies" are vague and ambiguous, and therefore Monsanto denies the allegations in paragraph 64. Monsanto denies the remaining allegations in paragraph 64.

65.     Monsanto admits that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling. Monsanto denies the remaining allegations in paragraph 65.

66.     In response to the allegations in paragraph 66, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification. Monsanto denies the remaining allegations in paragraph 66.

67.     In response to the allegations in paragraph 67, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the

Brazilian regulatory authorities requesting a reevaluation of glyphosate. Monsanto denies the remaining allegations in paragraph 67.

68.     Monsanto admits that, in France, the sale to and use by amateurs (*i.e.,* non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions. Monsanto denies the remaining allegations in paragraph 68.

69.     In response to the allegations in paragraph 69, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same. Monsanto denies the remaining allegations in paragraph 69.

70.     In response to the allegations in paragraph 70, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease. Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to Plaintiff's allegations regarding claimed carcinogenicity. Monsanto denies the remaining allegations in paragraph 70.

71.     In response to the allegations in paragraph 71, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate. Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns. As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops. A federal district court in the United States excluded Plaintiff's expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable. *See Arias v. DynCorp,* 928 F. Supp. 2d 10 (D.D.C. 2013). Monsanto denies the remaining allegations in paragraph 71.

72.     In response to the allegations in paragraph 72, Monsanto admits that the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was required to

add glyphosate to California's Proposition 65 list of chemicals in a process that OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC. Monsanto further states that this decision was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."[4]  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution.  On February 26, 2018, a federal district court enjoined California from requiring Proposition 65 warning labels for glyphosate as unconstitutional.  The remaining allegations in paragraph 72 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 72.

73.    The allegations in paragraph 73 set forth conclusions of law for which no response is required.  Nevertheless, Monsanto notes that, under Proposition 65, the mere presence of a listed substance in a consumer product does not require a warning.  Instead, a warning need only be provided if the exposure to the listed substance, for the average user of the product, exceeds the level at which cancer would be hypothesized to occur, based on extrapolation from animal studies, in one person in 100,000 persons exposed over a 70-year lifetime.

74.    In response to the allegations in paragraph 74, Monsanto admits that it has brought a lawsuit challenging OEHHA's notice of intent to include glyphosate on its Proposition 65 list.

75.    In response to the allegations in paragraph 75, Monsanto admits that plaintiff accurately quote from Monsanto's Complaint in the referenced lawsuit, and states that Monsanto's Complaint in that lawsuit speaks for itself.  Monsanto further admits that its lawsuit cites to OEHHA's 2007 determination based upon its own independent evaluation of the scientific evidence

---

[4] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

that glyphosate is "unlikely to pose a cancer hazard to humans."[5]   The remaining allegations in paragraph 75 comprise attorney characterizations and are accordingly denied.

76.     In response to the allegations in paragraph 76, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 76 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 76.

77.     In response to the allegations in paragraph 77, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 77 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 77.

78.     In response to the allegations in paragraph 78, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 78 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 78.

79.     In response to the allegations in paragraph 79, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 79 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 79.

80.     In response to the allegations in paragraph 80, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph

---

[5]  OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

80 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 80.

81.    In response to the allegations in paragraph 81, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 81 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 81.

82.    In response to the allegations in paragraph 82, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 82 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 82.

83.    In response to the allegations in paragraph 83, Monsanto admits that the United States Food and Drug Administration ("FDA") has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues. In response to the remaining allegations in paragraph 83, Monsanto states that the cited documents speak for themselves and do not require a response.

84.    In response to the allegations in paragraph 84, Monsanto admits that the U.S. Government Accountability Office ("GAO") issued the cited report regarding pesticide residue monitoring programs, but Monsanto denies that the GAO report was limited to glyphosate. In response to the remaining allegations in paragraph 84, Monsanto states that the cited documents speak for themselves and do not require a response. To the extent that paragraph 84 characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 84.

85.    In response to the allegations in paragraph 85, Monsanto admits that the FDA has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues. In response to the remaining allegations in paragraph 85, Monsanto states that the cited documents speak for themselves and do not require a response. To the extent

1    that paragraph 85 characterizes the meaning of the cited documents, Monsanto denies the remaining

2    allegations in paragraph 85.

3         86.    In response to the allegations in paragraph 86, Monsanto admits that the FDA has

4    authority to enforce pesticide residues and that the FDA announced it would begin testing certain

5    foods for glyphosate residues. In response to the remaining allegations in paragraph 86, Monsanto

6    states that the cited documents speak for themselves and do not require a response. To the extent

7    that paragraph 86 characterizes the meaning of the cited documents, Monsanto denies the remaining

8    allegations in paragraph 86.

9         87.    Monsanto admits the allegations in paragraph 87.  Monsanto also states that the

10   allegations are out of date and that the European Union has approved glyphosate for another five

11   years.

12        88.    In response to the allegations in paragraph 88, Monsanto states that the cited document

13   speaks for itself and does not require a response.  Monsanto also states that the allegations are out

14   of date and that the European Union has approved glyphosate for another five years.

15        89.    In response to the allegations in paragraph 89, Monsanto lacks information or

16   knowledge sufficient to form a belief as to whether each of the individuals at the referenced meeting

17   were "experts" and therefore denies that allegation.  Monsanto admits the remaining allegations in

18   paragraph 89.  Monsanto also states that the allegations are out of date and that the European Union

19   has approved glyphosate for another five years.

20        90.    In response to the allegations in paragraph 90, Monsanto states that the cited document

21   speaks for itself and does not require a response. To the extent that paragraph 90 characterizes the

22   meaning of the cited document, Monsanto denies the remaining allegations in paragraph 90.

23        91.    In response to the allegations in paragraph 91, Monsanto states that the cited document

24   speaks for itself and does not require a response. To the extent that paragraph 91 characterizes the

25   meaning of the cited document, Monsanto denies the remaining allegations in paragraph 91.

26   Monsanto also states that the allegations are out of date and that the European Union has approved

27   glyphosate for another five years.

28

92.     Monsanto admits the allegations in paragraph 92. Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

93.     Monsanto admits the allegations in paragraph 93.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

94.     Monsanto admits the allegations in paragraph 94. Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

95.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 95 and therefore denies those allegations.

96.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 96 and therefore denies those allegations.

97.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 97 and therefore denies those allegations.

98.     Monsanto denies the allegations in paragraph 98.

99.     Monsanto denies that any exposure to Roundup®-branded products can cause NHL and other serious illnesses and therefore denies those allegations in paragraph 99. Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 99 and therefore denies those allegations.

101.    Monsanto incorporates by reference its responses to paragraphs 1 through 100 in response to paragraph 101 of Plaintiff's Complaint.

102.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 102 and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 102.

103. In response to the allegations in paragraph 103, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used or was exposed to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 103.

104. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 104 and therefore denies those allegations.

105. Monsanto denies the allegations in paragraph 105.

106. Monsanto denies the allegations in paragraph 106.

107. Monsanto denies the allegations in paragraph 107 and each of its subparts.

108. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 108 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 108, including that Roundup®-branded products have "dangerous characteristics."

109. Monsanto denies the allegations in paragraph 109.

110. Monsanto denies the allegations in paragraph 110.

111. Monsanto denies the allegations in paragraph 111.

112. Monsanto denies the allegations in paragraph 112.

113. Monsanto denies the allegations in paragraph 113.

114. Monsanto denies the allegations in paragraph 114.

115. Monsanto denies the allegations in paragraph 115.

In response to the allegations in the "WHEREFORE" paragraph following paragraph 115, Monsanto demands that judgment be entered in its favor and against plaintiff; that the Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The statement in the last sentence of the "WHEREFORE" paragraph following paragraph 115 sets forth a conclusion of law for which no response is required

116.   Monsanto incorporates by reference its responses to paragraphs 1 through 115 in response to paragraph 116 of Plaintiff's Complaint.

117.   In response to the allegations in paragraph 117, Monsanto admits that plaintiff purport to bring claims for strict liability but denies any liability to plaintiff.

118.   Monsanto denies the allegations in paragraph 118.

119.   In response to the allegations in paragraph 119, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff or other persons or entities purchased Roundup®-branded products and therefore denies those allegations. The allegations in paragraph 119 also set forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 119.

120.   In response to the allegations in paragraph 120, Monsanto denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate. The remaining allegations in paragraph 120 set forth conclusions of law for which no response is required.

121.   Monsanto denies the allegations in paragraph 121. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

122.   Monsanto denies the allegations in paragraph 122.

123.   Monsanto denies the allegations in paragraph 123.

124.   Monsanto denies the allegations in paragraph 124.

125.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 125 and therefore denies those allegations.

126.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 126 regarding plaintiff's claimed use of and exposure to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 126, including that Roundup®-branded products have "dangerous characteristics."

127.   In response to the allegations in paragraph 127, Monsanto denies that Roundup®-branded products are associated with risks of NHL or other serious illness or that Roundup®-branded products have "defects." Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 127 and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 127.

128.   Monsanto denies the allegations in paragraph 128.

129.   Monsanto denies the allegations in paragraph 129.

130.   Monsanto denies the allegations in paragraph 130.

131.   Monsanto denies the allegations in paragraph 131.

132.   Monsanto denies the allegations in paragraph 132.

133.   Monsanto denies the allegations in paragraph 133.

134.   Monsanto denies the allegations in paragraph 134.

135.   Monsanto denies the allegations in paragraph 135.

In response to the allegations in the "WHEREFORE" paragraph following paragraph 135, Monsanto demands that judgment be entered in its favor and against plaintiff; that the Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The statement in the last sentence of the "WHEREFORE" paragraph following paragraph 135 sets forth a conclusion of law for which no response is required

136.   Monsanto incorporates by reference its responses to paragraph 1 through 135 in response to paragraph 136 of Plaintiff's Complaint.

137.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 137 and therefore denies those allegations.

138.   The allegations in paragraph 138 set forth conclusions of law for which no response is required.

139.   Monsanto denies the allegations in paragraph 139.

140.   Monsanto denies the allegations in paragraph 140.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

141.   Monsanto denies the allegations in paragraph 141.

142.   Monsanto denies the allegations in paragraph 142.

143.   Monsanto denies the allegations in paragraph 143. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

144.   Monsanto denies the allegations in paragraph 144.

145.   Monsanto denies the allegations in paragraph 145.

146.   Monsanto denies the allegations in paragraph 146.

147.   Monsanto denies the allegations in paragraph 147, including each of its subparts.

148.   Monsanto denies the allegations in paragraph 148.

149.   Monsanto incorporates by reference its responses to paragraph 1 through 148 in response to paragraph 149 of Plaintiff's Complaint.

150.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 150 regarding plaintiff's knowledge and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 150, including that intended use of and/or exposure to Roundup®-branded products causes any injuries.

151.   Monsanto denies the allegations in paragraph 151.

152.   Monsanto denies the allegations in paragraph 152.

153.   Monsanto denies the allegations in paragraph 153. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

In response to the allegations in the "WHEREFORE" paragraph following paragraph 153, Monsanto demands that judgment be entered in its favor and against plaintiff; that the Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The statement in the last sentence of the "WHEREFORE" paragraph following paragraph 153 sets forth a conclusion of law for which no response is required

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

154.   Monsanto incorporates by reference its responses to paragraphs 1 through 153 in response to paragraph 154 of Plaintiff's Complaint.

155.   Monsanto denies the allegations in paragraph 155.

156.   In response to the allegations in paragraph 156, Monsanto admits that it has sold glyphosate-based herbicides in accordance with their EPA-approved labeling. Monsanto further states that paragraph 156 sets forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 156.

157.   Monsanto denies the allegations in the first and second sentences of paragraph 157. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto states that the final sentence of paragraph 157 sets forth conclusions of law for which no response is required.

158.   The allegations in paragraph 158 set forth conclusions of law for which no response is required.

159.   Monsanto denies the allegations in paragraph 159.

160.   Monsanto denies the allegations in paragraph 160 and each of its subparts.

161.   The allegations in paragraph 161 set forth conclusions of law for which no response is required,

162.   Monsanto states that the allegation in paragraph 162 that Monsanto made an express warranty sets forth a conclusion of law for which no response is required. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 162 regarding plaintiff's knowledge and therefore denies those allegations.

163.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 163 and therefore denies those allegations.

164.   Monsanto denies the allegations in paragraph 164.

165.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of allegations in paragraph 165 regarding plaintiff's knowledge and therefore denies those allegation. Monsanto denies the remaining allegations in paragraph 165.

166.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 166 and therefore denies those allegations.

167.   Monsanto denies the allegations in paragraph 167.

168.   Monsanto denies the allegations in paragraph 168.

169.   Monsanto denies the allegations in paragraph 169.

In response to the allegations in the "WHEREFORE" paragraph following paragraph 169, Monsanto demands that judgment be entered in its favor and against plaintiff; that the Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The statement in the last sentence of the "WHEREFORE" paragraph following paragraph 169 sets forth a conclusion of law for which no response is required

170.   Monsanto incorporates by reference its responses to paragraphs 1 through 169 in response to paragraph 170 of the Complaint.

171.   Monsanto denies the allegations in paragraph 171.

172.   Monsanto denies the allegations in paragraph 172.

173.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 173 concerning the plaintiff's claimed use of and exposure to Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 173 set forth conclusions of law for which no response is required.

174.   Monsanto denies the allegations in paragraph 174. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

175.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 175 regarding plaintiff's reliance and therefore denies the allegations in paragraph 175. The remaining allegations in paragraph 175 set forth conclusions of law for which no response is required.

176.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 176 and therefore denies the allegations.

177.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 177 concerning plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 177 set forth conclusions of law for which no response is required.

178.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 178 concerning plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. The allegation in paragraph 178 regarding Monsanto's implied warranties sets forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 178.

179.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 179 concerning plaintiff's reliance or plaintiff's claimed use of any Roundup®-branded product and therefore denies those allegations. The remaining allegations in paragraph 179 set forth conclusions of law for which no response is required.

180.   Monsanto denies that there is any risk of serious injury associated with or linked to the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 180 concerning plaintiff's knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 180.

181.   Monsanto denies the allegations in paragraph 181.

182.   Monsanto denies the allegations in paragraph 182.

183.   Monsanto denies the allegations in paragraph 183.

In response to the allegations in the "WHEREFORE" paragraph following paragraph 183, Monsanto demands that judgment be entered in its favor and against plaintiff; that the Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

The statement in the last sentence of the "WHEREFORE" paragraph following paragraph 183 sets forth a conclusion of law for which no response is required

184.   Monsanto incorporates by reference its responses to paragraphs 1 through 183 in response to paragraph 184 of Plaintiff's Complaint.

185.   The allegations in paragraph 185 set forth conclusions of law for which no response is required.

186.   The allegations in the first sentence of paragraph 186 set forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 186, including that Roundup®-branded products are "dangerous products."

187.   Monsanto denies the allegations in paragraph 187.

188.   Monsanto denies the allegations in paragraph 188.

189.   Monsanto denies the allegations in paragraph 189.

190.   Monsanto denies the allegations in paragraph 190.

191.   Monsanto denies the allegations in paragraph 191.

192.   Monsanto denies the allegations in paragraph 192.

193.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 193 regarding plaintiff's reliance and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 193.

194.   Monsanto denies the allegations in paragraph 194.

195.   Monsanto denies the allegations in paragraph 195.

In response to the allegations in the "WHEREFORE" paragraph following paragraph 195, Monsanto demands that judgment be entered in its favor and against plaintiff; that the Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The statement in the last sentence of the "WHEREFORE" paragraph following paragraph 195 sets forth a conclusion of law for which no response is required

In response to the allegations in the section entitled PRAYER FOR RELIEF, Monsanto denies that plaintiff is entitled to the relied sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.      The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.      Plaintiff's claims are barred in whole because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of Plaintiff's alleged injuries.

4.      Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.      Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g., Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

7.      Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.      Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.      Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.     Plaintiff's claims are barred, in whole or in part, because Plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

11.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar Plaintiff's claims in whole or in part.

12.     Applicable statutes of limitations and/or repose bar Plaintiff's claims in whole or in part.

13.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar Plaintiff's claims in whole or in part.

14.     If plaintiff suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of Plaintiff's alleged injuries or damages.

15.     Monsanto had no legal relationship or privity with plaintiff and owed no duty to plaintiff by which liability could be attributed to it.

16.    Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff.  If any such warranties were made, which Monsanto specifically denies, then plaintiff failed to give notice of any breach thereof.

17.    Plaintiff's claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18.    Plaintiff's claims for punitive damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Florida Constitution, the Michigan Constitution, the Virginia Constitution, the Georgia Constitution, and/or other applicable state constitutions – and would be improper under the common law and public policies of the United States, Florida, Michigan, Virginia, Georgia, and/or other states.

19.    Plaintiff's claims for punitive damages are barred because plaintiff have failed to allege conduct warranting imposition of such damages under Florida law, Michigan law, Virginia law, Georgia law, and/or other applicable state laws.

20.    Plaintiff's claims for punitive, exemplary, and/or aggravated damages are barred and/or limited by operation of state and/or federal law, including Fla. Stat. § 768.73, Michigan law, Va. Code Ann. § 801-38.1, and/or O.C.G.A. § 51-12-5.1.

21.    Monsanto's conduct and/or acts were not willful, wanton, malicious, reckless, fraudulent or done with a conscious disregard for the rights of plaintiff and/or the safety of the public.  Nor do any of Monsanto's conduct and/or acts demonstrate that Monsanto acted with a high degree of moral culpability.  In fact, Monsanto exercised reasonable care at all times alleged in the Complaint, and plaintiff have failed to clearly establish any entitlement to punitive damages based on Plaintiff's allegations.

22.    Plaintiff's claims are barred in whole or in part by Plaintiff's contributory/comparative negligence.

23.    Plaintiff's claims are barred in whole or in part by Plaintiff's failure to mitigate damages.

24.     Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

25.     If plaintiff have been injured or damaged, no injuries or damages being admitted, such injuries or damages were not caused by a Monsanto product.

26.     Plaintiff's claims are barred or limited to the extent that plaintiff assert claims that are governed by the laws of a state that does not recognize, or limits, such claims.

27.     Plaintiff's claims are barred to the extent that plaintiff seek relief under the laws of states that do not govern Plaintiff's claims.

28.     Plaintiff have failed to allege fraud with sufficient particularity.

29.     Some or all of Plaintiff's claims should be dismissed based on the *forum non conveniens* doctrine.

30.     Monsanto did not intentionally harm plaintiff nor did Monsanto act with a deliberate and flagrant disregard for the safety of others. In fact, Monsanto exercised reasonable care at all times alleged in the Complaint, and plaintiff have failed to establish by a preponderance of the evidence any entitlement to punitive damages based on their allegations.

31.     Plaintiff's claims are barred, in whole or in part, by application of Fla. Stat. § 768.1256.

32.     To the extent that plaintiff recovered payments for his alleged injuries from any collateral source(s) or other source(s), plaintiff's recovery in this lawsuit, if any, shall be reduced to the extent allowed by applicable law, including as allowed for under Fla. Stat. § 768.76.

33.     In accordance with Fla. Stat. § 768.1257, plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

34.     Plaintiff's injuries, if any, were caused, in whole or in part, by the acts or omissions of persons other than Monsanto, whether individual, corporate, associate, or otherwise, whether named or unnamed in the Complaint, and for whose conduct Monsanto is not liable. Monsanto is not liable for damages proximately caused by non-parties, pursuant to *Fabre v. Marin*, 623 So.2d

1182 (Fla. 1993), including any other product used by plaintiff that was not manufactured, sold, or distributed by Monsanto.

35.     Plaintiff's claims are barred, in whole or part, by application of Mich. Com. Laws § 600.2946 (4).

36.     Plaintiff's strict liability claims are barred because Michigan does not recognize a cause of action for strict liability in tort.

37.     Plaintiff's strict liability claims are barred because Virginia does not recognize a cause of action for strict liability in tort.

38.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing Plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## <u>JURY TRIAL DEMAND</u>

Monsanto demands a jury trial on all issues so triable.

DATED: September 20, 2022                    Respectfully submitted,

                                             SHOOK, HARDY & BACON L.L.P.

                                             BY: */s/ Jennise W. Stubbs*
                                                  Jennise W. Stubbs
                                                  600 Travis Street, Suite 3400
                                                  Houston, TX 77002-2926
                                                  Telephone:   (713) 227-8008
                                                  Facsimile:   (713) 227-9508
                                                  Email:       jstubbs@shb.com

                                                  *Attorneys for Defendant*
                                                  *MONSANTO COMPANY*

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC

1

## CERTIFICATE OF SERVICE

2      I certify that on the 20th day of September, 2022, I electronically transmitted the foregoing

3  DEFENDANT MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT to the Clerk of the

4  court using the ECF system for filing and transmittal, and a true and correct copy of the foregoing

5  document was served electronically or by another manner as authorized by FED. R. CIV. P. 5.

6

7                              _/s/Jennise W. Stubbs_____
                               Jennise W. Stubbs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:22-cv-04828-VC