UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ]  MDL No. 2741 |
| | ]  Case No. 3:16-md-02741-VC |
| This document relates to: | ] |
| *Jeffrey Westfall et al. v. Monsanto Co.,* Case No. 3:21-cv-02909-VC | ] |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON CAUSATION GROUNDS

Now come Plaintiffs, Jeffrey and Lorraine Westfall, by and through counsel, and hereby submit this Brief in Opposition to Defendant's Motion for Summary Judgment on Causation Grounds. A memorandum in support is attached hereto and incorporated herein.

Respectfully submitted,

/s/ *Brian C. Lee*
Brian C. Lee, Esq.
The Lee Law Firm, LLC
1109 Carnegie Avenue, Floor 2
Cleveland, Ohio 44115
O: (216)699-7444
F: (216)359-1289
brian@theleelawfirmllc.com
*Attorney for Plaintiffs*

<u>MEMORANDUM IN SUPPORT</u>

I.     INTRODUCTION AND BACKGROUND

Plaintiff, Jeffrey Westfall and his wife, Lorraine, reside on an acreage in Medina, Ohio a rural setting about 45 minutes southwest of Cleveland, Ohio. Mr. Westfall regularly used and was exposed to Roundup for nearly four decades, taking care of his acreage properties. *See Westfall Affidavit, attached hereto as Exhibit A.* He was diagnosed with Cutaneous T-Cell Lymphoma (Sezary Syndrome) in 2019/2020, which is a rare fast-developing disease that will take Mr. Westfall's life.

Mr. Westfall utilized Roundup, believing the product to be safe for consumer use and application. Mr. Westfall followed the appropriate instructions and mixing ratios, as recommended by Defendant. Having two acreages that he and his wife resided on over the last near 40 years, Mr. Westfall performed all landscaping, including weed control and prevention on his properties. *Id. at paras. 1-6.* It was his hobby and outlet hours a week as Mr. Westfall worked a "desk-job" as a banker. *Id. at para. 6.* He was not a farmer or landscaper by profession and was not exposed to hazardous chemicals, pesticides or fungacides, asbestos, diesel fumes, excessive radiation, etc.; the only hazardous product Mr. Westfall was regularly exposed to thousands of times was Roundup. *Id., see also Deposition of Jeffrey Westfall at pp. 68, 83-84, 250-263, attached hereto as Exhibit B.*

After being diagnosed with the cutaneous t-cell lymphoma, and the shock of not only the diagnosis and prognosis, but the questions of "why?" or "how?" did he connect the dot of his diagnosis and his regular and consistent exposure to Roundup. Not understanding the danger, toxicity and grave risks associated with use of the product,

Mr. Westfall filed this lawsuit against Defendant Monsanto alleging several claims as a result of his use of and exposure to Defendant's product.

The claims brought forth by Plaintiffs do not require expert testimony. Indeed, courts in Ohio have stated that inadequate warning claims, claims of fraud, and product defect claims do not need expert testimony, and further, when the issue or mechanism that causes the injury lies within the common knowledge or understanding of the jury, expert testimony in not necessary. As such, Defendant's Motion for Summary Judgment should be denied as questions of material fact remain for the trier of fact to determine.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure empowers the court to render summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." see *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986); see also C*ox v. Kentucky Dept of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary' judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."' *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir.

2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original); see also *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); see also *McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### III. LAW AND ARGUMENT

#### A. Under Ohio Law, Courts Do Not Require Expert Testimony for Plaintiffs' Claims

"Under Ohio statutory law, a manufacturer is subject to liability for compensatory damages based on a product liability claim if the Plaintiffs prove, by a preponderance of the

evidence, that the label was defective due to inadequate warning or instruction and the defect was the proximate cause of [Defendant's] injury." *Rheinfrank v. Abbott Labs., Inc.,* 119 F. Supp. 3d 749, 760 (S.D. Ohio). "A claim for negligent failure to warn has three basic elements: (1) a duty to warn against reasonably foreseeable risks; (3) breach of such a duty; and (3) injury that is proximately caused by the breach." *Reece v. Astrazeneca Pharm., LP*, 500 F.Supp.2d 736, 751 (2007).

"The manufacturer must give suitable warning of a dangerous propensity that may result from use of the product." *Id.* "Because the standard for failure to warn requires that a manufacturer exercise reasonable care, the same standard applies for both strict liability and negligence claims for inadequate warning." *McConnell v. Cosco, Inc.*, 238 F.Supp.2d 970, 976 (2003) (citing *Crislip v. TCH Liquidating Co.*, 52 Ohio St.3d 251, 566 N.E.2d 1177, 1183 (1990)). **_Generally, whether a warning is sufficient in light of the known risks is a question of fact for the trier of fact_**. *Id.* (emphasis added).

"To be considered adequate, a warning [....] generally must contain a full and complete disclosure of the potential adverse reactions [....]." *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 429 (Tenn.1994). Put differently, 'a warning is 'adequate' ... where, under all the circumstances, it reasonably discloses all risks inherent in the use which the manufacturer knew or should have known to exist. *In re Meridia Prod. Liab. Litig.*, 328 F. Supp. at 812 quoting *Seley v. G.D. Searle & Co.*, 67 Ohio St.2d, 192, 198, (1981).

In addition to the product liability claims dealing inadequate warnings, product defect claims also do not need expert testimony under the consumer-expectations theory. See *Newell Rubbermaid, Inc. v. Raymond Corp.,* 676 F.3d 521 (6th Circuit 2012). "Under the consumer-expectations theory, a product may be defectively designed if "[i]t is more

dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Id*. at 530. "Ohio law generally does not require expert testimony under the consumer-expectations theory." *Id*.

Indeed, Plaintiffs claims, here, which include negligence, product liability (design defect and failure to warn), fraudulent omission, affirmative fraud, unjust enrichment and loss of consortium, do not require expert testimony in Ohio. Whether it is within the common knowledge of the jury under (i.e., that Roundup and its chemical makeup is inherently dangerous and known to cause cancer) or Ohio precedent under *Newell* or *Crislip*, Plaintiff's claims do not require expert testimony, and as such, are ripe for consideration by the trier of fact. See also *Z.H. v. Abbott Labs, Inc.* Case No. 1:14CV176 (N.D. Ohio Sep. 30, 2016), denying a drug manufacturer's motion for summary judgment based on lack of expert testimony in a product liability lawsuit for a drug that was alleged to have caused severe birth defects. The court ruled that the Plaintiffs (parents of the minor), did not need expert testimony for claims that are similar to those brought here by the Westfalls.

**B. The Only Facts in this Case and Record Establish the Causal Connection between Mr. Westfall's Non-Hodgkin's Lymphoma and Roundup, Without Expert Testimony.**

Here, the jury is required to review the facts and testimony in the record that create issues of fact for it to determine whether the warnings and disclosures by Defendant were adequate (*they were not*), whether the product was more dangerous than what a consumer could expect (*it is*), and whether it was more likely than not that Mr. Westfall's consistent and significant exposure over nearly forty years proximately caused his lymphoma (*there is no other logical explanation*).

Mr. Westfall was questioned extensively by Defendant's counsel at deposition – for

nearly nine hours. He was asked extensively about his prior exposure to hazardous materials, other herbicides, pesticides, rodenticides, asbestos, solvents, benzene – even diesel exhaust fumes – in an effort for Defendant to come up with SOME OTHER type of cause to explain his cutaneous t-cell lymphoma. *Ex. B at pp. 83-84, 250-258*. Under oath and with all candor and openness in his deposition, Mr. Westfall testified to counsel that he never had any such exposure to these other "possibilities". *Id*. Mr. Westfall never worked as a landscaper or in a profession where he was exposed to glyphosate or other hazardous materials similar to Roundup; he was a banker, and his **only** exposure was through his use of Roundup. *Id. at pp. 68; Ex. A.* And, Mr. Westfall was questioned extensively about his other medical conditions or procedures that Defendant hoped could create some sort of causal connection to Mr. Westfall's disease. Indeed, he was asked everything about his prior skin conditions (insignificant), other immune deficiency conditions (none), his family history (no cancers), to exposure to radiation (minimal) and even his dental x-rays! *Id. at pp. 258-263.* Despite lengthy effort, Defendant could find no other contributing factor or cause that could logically explain Mr. Westfall's diagnosis.

The only evidence in the record that can logically explain a diagnosis of Mr. Westfall's cutaneous t-cell lymphoma is his near forty-year history of uncontroverted use of Roundup. This is not something where a jury requires expert testimony to create a causal relation; rather, it is common sense and within the knowledge and grasp of layperson to understand. Further, it has become public record and knowledge through news coverage, publicly available articles, medical publications, and even court orders that have established that the glyphosate in Roundup causes the exact disease Mr. Westfall suffers and will die from. At a minimum, it is within the realm of the jury to decide, based on the uncontroverted facts in

this record, whether the inherently dangerous glyphosate product was defective and/or adequately warned against to the consumer.

Further adding to the record, which Roundup has not set forth any testimonial evidence or otherwise, is the inadequacy of Defendant's warnings.

> Q: Do you recall any specifics of the disclaimers that you've identified?
>
> A: No. I don't think a consumer's going to read through. I believe they're – I believe they're 20 plus pages long today.
>
> Q: Okay. Setting aside the exact language, do you have a recollection or an impression of what the disclaimers were on the Roundup products that you used over the years?
>
> A: No, I don't. I do no. I thought it was based more on the term legalese, and I – I didn't – at the time I don't recall if I had time to read all of that. You know, as a consumer you have limited time to get the job done. I didn't think that if it was sold at my local store that it would harm me. ****

*Ex. B* at pp.130-133.

Simply put, the warnings were inadequate to convey the risks to the average consumer, which Mr. Westfall was and used the product properly. At no point in this case has Defendant shown – whether in the 80's, 90's, 00's, etc., all time periods when Mr. Westfall used Roundup, that the glyphosate in their product caused, or even could cause his cancer.

There was no expectation or even thought that Roundup could cause his cancer – until it did.

> Q: When did you come to believe that your lymphoma may have been caused by Roundup?

| | |
|---|---|
| A: | Just in normal discussions with my family of no history of cancer. None. And I'm riddled with it and I'm riddled with this lymphoma and I – it's such a rare disease. Where did it come to me? I – and I utilized Roundup extensively. **** |
| Q: | Do you personally believe that Roundup caused your lymphoma? |
| A: | I do. |
| Q: | And what is your basis for that belief? |
| A: | Mr. Law, I'm a healthy individual. Healthy my entire life. Active. Still active at 66. Fighting it everyday. It came out of nowhere. Out of nowhere. I can only speculate on the use of Roundup that I encountered. |
| Q: | And in the course of your research and investigation, did you look for any data that compared the rate of non-Hodgkin's lymphoma in the population before and after Roundup was introduced into the marketplace? |
| A: | I did not. I felt I, my individual experience, I used Roundup more extensively than the general population. |

*Id.* at pp.275-277.

Mr. Westfall's injuries were the result of Defendant creating and placing a defective product into commerce that consumers could have no idea or expectation how inherently dangerous it could be. Moreover, Defendant failed to adequately warn Mr. Westfall over the course of four decades how dangerous the glyphosate ingredient in Roundup was. In Ohio, expert testimony is not required when considering the above claims.

And, the only evidence in the record is uncontroverted testimony, unequivocally establishing that the only causal connection to Mr. Westfall's cutaneous t-cell lymphoma is his extensive use and exposure to the glyphosate in Roundup. There are no other

environmental, medical or physical factors in the record that a jury, let alone an expert, could rely upon in determining proximate cause. Accordingly, no expert testimony is necessary in this matter, and Defendant's Motion for Summary Judgment should be denied.

## IV.  CONCLUSION

For the foregoing reasons, viewed in the light most favorable to the Plaintiffs, Defendant's Motion for Summary Judgment as to causation should be denied, and Plaintiffs' claims proceed for consideration by the trier of fact.

Respectfully submitted,

/s/ *Brian C. Lee*
Brian C. Lee, Esq.
The Lee Law Firm, LLC
1109 Carnegie Avenue, Floor 2
Cleveland, Ohio 44115
O: (216)699-7444
F: (216)359-1289
brian@theleelawfirmllc.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Brian C. Lee, hereby certify that on September 23, 2022, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

/s/ *Brian C. Lee*
Brian C. Lee, Esq.