John J. Rosenthal
WINSTON & STRAWN LLP
1901 L St. NW
Washington, DC 20036
Tel: (202) 282-5785
Fax: (202) 282-5100
jrosenthal@winston.com

Jeff Wilkerson (SBN 284044)
WINSTON & STRAWN LLP
300 S. Tryon St., 16th Floor
Charlotte, North Carolina 28202
Tel: (704) 350-7714
Fax: (704) 350-7800
jwilkerson@winston.com

*Attorneys for Defendants Bayer CropScience LP
and Monsanto Company*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Scott Koller, et al., v. Monsanto Company, et al.*, Case No. 3:22-cv-04260-VC | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**DEFENDANTS BAYER CROPSCIENCE LP AND MONSANTO COMPANY'S NOTICE OF AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:  December 15, 2022<br>Time:  10:00AM<br>Place:  Via Zoom Webinar<br>Judge:  Hon. Vince G. Chhabria |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on Thursday, December 15, 2022 at 10:00AM EST, via Zoom Webinar ID: 161 285 7657, Password: 547298, Defendants Bayer CropScience LP and Monsanto Company move this Court under Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss Plaintiffs' complaint with prejudice.  This Motion is based on the Memorandum below.


Dated:  September 23, 2022

*/s/ John J. Rosenthal*

John J. Rosenthal
WINSTON & STRAWN LLP
1901 L St. NW
Washington, DC 20036
Tel: (202) 282-5785
Fax: (202) 282-5100
jrosenthal@winston.com

Jeff Wilkerson (SBN 284044)
WINSTON & STRAWN LLP
300 S. Tryon St., 16th Floor
Charlotte, North Carolina 28202
Tel: (704) 350-7714
Fax: (704) 350-7800
jwilkerson@winston.com

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 2

LEGAL STANDARD .............................................................................................. 4

ARGUMENT ........................................................................................................... 5

I.  The Entire Complaint Should Be Dismissed Because Plaintiffs Do Not Plausibly Allege Violation of a Legal Right Or Duty ...................................................................... 5

    A.  Plaintiffs Do Not Plausibly Allege A Duty to Warn or Disclose .......................... 6

    B.  Plaintiffs Do Not Plausibly Allege Any Breach of Warranty .............................. 8

        1.  The Complaint does not state a breach of express warranty claim ........... 9

        2.  Plaintiffs fail to state implied warranty claims ..................................... 10

II.  Plaintiffs Do Not Plausibly Allege Fraudulent Concealment ....................................... 11

III.  Plaintiffs' MMPA And SBWA Claims (Counts I-III) Fail for Other Reasons ............... 13

IV.  Plaintiffs Do Not Allege Inadequate Remedies At Law as Required for Equitable Relief (Counts VIII-XI) ....................................................................................... 15

V.  Plaintiffs Cannot Seek Injunctive Relief (All Counts) ............................................... 16

CONCLUSION ....................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acedo v. DMAX, Ltd.*,
   2015 WL 12696176 (C.D. Cal. Nov. 13, 2015) ................................................... 8

*Allen v. Similasan Corp.*,
   2013 WL 2120825 (S.D. Cal. May 14, 2013) ..................................................... 17

*Am. Suzuki Motor Corp. v. Superior Court*,
   37 Cal. App. 4th 1291 (1995) ...................................................................10, 11

*In re Animation Workers Antitrust Litig.*,
   87 F. Supp. 3d 1195 (N.D. Cal. April 3, 2015) ................................................. 13

*In re Bextra & Celebrex Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   2007 WL 2028408 (N.D. Cal. July 10, 2007) ..................................................... 8

*Bohren v. San Jose Police Dept.*,
   2022 WL 834320 (N.D. Cal. Mar. 21, 2022) ..................................................4, 5

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001) ................................................................................. 12

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ...................................................................10, 13

*In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*,
   2021 WL 3878654 (9th Cir. Aug. 31, 2021) ...................................................... 17

*Conmar Corp. v. Mitsui & Co.*,
   858 F.2d 499 (9th Cir.1988) ........................................................................ 12

*Contreras v. Toyota Motor Sales U.S.A. Inc.*,
   484 F. App'x 116 (9th Cir. 2012) ................................................................... 8

*Contreras v. Toyota Motor Sales USA, Inc.*,
   2010 WL 2528844 (N.D. Cal. June 18, 2010) ..................................................... 8

*Corbett v. Pharmacare U.S., Inc.*,
   544 F. Supp. 3d 996 (S.D. Cal. 2021) ............................................................. 10

*Daro v. Superior Court*,
   151 Cal. App. 4th 1079 (2007) ...................................................................... 5

ii

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ........................................................................ 16

*Delarosa v. Boiron, Inc.*,
   2012 WL 8716658 (C.D. Cal. Dec. 28, 2012) ................................................ 16

*Edmonson v. LCW Auto. Corp.*,
   2008 WL 11338640 (C.D. Cal. March 10, 2008) ........................................... 14

*Figy v. Amy's Kitchen, Inc.*,
   2013 WL 6169503 (N.D. Cal. Nov. 25, 2013) .................................................. 5

*Floyd v. Am. Honda Motor Co., Inc.*,
   966 F.3d 1027 (9th Cir. 2020) ...................................................................... 15

*Friche v. Hyundai Motor, Am.*,
   2022 WL 1599868 (C.D. Cal. Jan. 28, 2022) ................................................... 9

*Garrison v. Oracle Corp.*,
   159 F. Supp. 3d 1044 (N.D. Cal. Feb. 2, 2016) ............................................. 11

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ........................................................................ 5

*Hardeman v. Monsanto*,
   216 F. Supp. 3d 1037 (N.D. Cal. 2016) ......................................................... 16

*Jenkins v. Apple, Inc.*,
   2011 WL 2619094 (N.D. Cal. July 1, 2011) ................................................... 16

*Johnson & Johnson Talcum Powder Cases*, 37 Cal. App. 5th 292, 314 (2019) ........................... 6

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................... 12

*Matic v. U.S. Nutrition, Inc.*,
   2019 WL 3084335 (C.D. Cal. Mar. 27, 2019) ................................................ 16

*Minkler v. Apple, Inc.*,
   65 F. Supp. 3d 810 (N.D. Cal. 2014) ............................................................. 11

*Mirzaie v. Monsanto Co.*,
   2016 WL 146421 (C.D. Cal. Jan. 12, 2016) ................................................... 16

*Munning v. Gap, Inc.*,
   238 F. Supp. 3d 1195 (N.D. Cal. 2017) .....................................................15, 16

*Nathan Kimmel, Inc. v. DowElanco*,
    275 F.3d 1199 (9th Cir. 2002) ........................................................................ 12

*Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*,
    9 Cal. 5th 279 (2020) .................................................................................... 15

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ........................................................................... 4

*Philips v. Ford Motor Co.*,
    2015 WL 4111448 (N.D. Cal. July 7, 2015) ............................................... 13, 15

*Philips v. Ford Motor Co.*,
    2016 WL 1745948 (N.D. Cal. May 3, 2016) ................................................... 14

*Precht v. Kia Motors Am., Inc.*,
    2014 WL 10988343 (C.D. Cal. Dec. 29, 2014) ................................................. 8

*Reynolds v. S & D Foods*,
    1993 U.S. Dist. LEXIS 3040 (D. Kan. 1993) ................................................. 14

*Rhynes v. Stryker Corp.*,
    2011 WL 2149095 (N.D. Cal. May 31, 2011) ................................................. 15

*Smith v. LG Elecs. U.S.A., Inc.*,
    2014 WL 989742 (Mar. 11, 2014) .................................................................... 9

*Stearns v. Select Comfort Retail Corp.*,
    2009 WL 1635931 (N.D. Cal. June 5, 2009) ................................................. 12

*Taragan v. Nissan N. Am., Inc.*,
    2013 WL 3157918 (N.D. Cal. June 20, 2013) ................................................. 8

*Tietsworth v. Sears, Roebuck & Co.*,
    2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ............................................ 11, 15

*Volk v. D.A. Davidson & Co.*,
    816 F.2d 1406 (9th Cir. 1987) ....................................................................... 13

*Weeks v. Home Depot U.S.A., Inc.*,
    2020 WL 13220040 (C.D. Cal. Dec. 16, 2020) ................................................ 6

*Xavier v. Philip Morris USA, Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) ......................................................... 10

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
    548 F. Supp. 3d 1225 (S.D. Fla. 2021) ....................................................... 6, 12

iv

*Zapata Fonseca v. Goya Foods Inc.*,
   2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)..................................................................... 15

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
   2022 WL 522484 (C.D. Cal. Feb. 9, 2022)....................................................................... 11

**Statutes**

7 U.S.C. § 136v(b)......................................................................................................................... 16

15 U.S.C. § 2301(1)....................................................................................................................... 14

15 U.S.C. § 2310(d)(3)(C) ............................................................................................................ 15

Cal. Bus. & Prof. Code § 17204 ..................................................................................................... 5

Cal. Civ. Code § 1791 .................................................................................................................... 14

Cal. Com. Code § 2314.................................................................................................................. 11

Cal. Food & Ag. Code § 12854 ..................................................................................................... 10

Magnusson Moss Warranty Act ..................................................................................................1, 13

Song-Beverly Consumer Warranty Act .................................................................................1, 13, 14

**Other Authorities**

CACI No. 1231 ............................................................................................................................... 11

EPA, *Guidance for the Reregistration of Pesticide Products Containing
   Glyphosate as the Active Ingredient* (June 1986), available at
   https://nepis.epa.gov/
   Exe/ZyPDF.cgi/9100AGUQ.PDF?Dockey=9100AGUQ.PDF ............................................... 3

EPA, *Reregistration Eligibility Decision: Glyphosate*, (Sept. 1993), available at
   https://www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/red_
   PC-417300_1-Sep-93.pdf....................................................................................................... 7

EPA, *Second Peer Review of Glyphosate*, (Oct. 30, 1991), available at
   https://archive.epa.gov/pesticides/chemicalsearch/chemical/foia/web/pdf/1036
   01/417300-1991-10-30a.pdf................................................................................................... 3

FAO, *FAO Specifications and Evaluations for Agricultural Pesticides*, available
   at
   https://www.fao.org/fileadmin/templates/agphome/documents/_Pesticides/Spe
   cs/Glyphosate_2016_02_10.pdf............................................................................................. 3

v

FAO Specification 284 / TC (technical glyphosate) (February 2016), available at
 https://www..org/agriculture/crops/thematic-sitemap///jmps/ps-new/en/ ............................ 4

Fed. R. Civ. P. 9 ................................................................................................................... 11, 12

Fed. R. Civ. P. 12 .................................................................................................................... 4

Defendants' Notice of and Motion to Dismiss Plaintiffs' Complaint
Case No. 4:16-MD-02741-VC

## **INTRODUCTION**

Plaintiffs claim that Monsanto Company and Bayer CropScience LP defrauded them, breached warranties, and violated consumer-protection statutes by selling certain Roundup®-brand products ("Products") without warning them that the Products could develop levels of N-Nitrosoglyphosate ("NNG") that exceed the regulatory limit of 1 part per million ("ppm").[1]

But Plaintiffs cannot plausibly allege that NNG in the Products poses a safety risk creating a duty to warn because they do not plausibly allege (1) NNG levels ever exceeding 1 ppm in Products sold to consumers; (2) NNG levels ever exceeding 1 ppm after sale to consumers; or (3) any scientific evidence that NNG is carcinogenic, much less that it poses a cancer risk at realistic exposure levels.

Plaintiffs' breach of warranty claims also fail for several reasons. They do not allege the "manifestation" required to plead a breach-of-warranty claim based on a design defect. And the express warranties that Plaintiffs rely on say *nothing* about NNG levels. Moreover, the only applicable implied warranty is that the Products are "reasonably fit" for the labeled uses as pesticides—a fact Plaintiffs do not seriously contest. For the same reasons, and several others, Plaintiffs' statutory warranty claims under the Magnusson Moss Warranty Act ("MMPA") and the Song-Beverly Consumer Warranty Act ("SBWA") also fail.

Plaintiffs' claim for fraudulent concealment—and related request to toll the statute of limitations—also cannot survive when Plaintiffs have not plausibly alleged any duty to disclose or warn. But, even putting that aside, Plaintiffs' only alleged "concealment" is the same alleged duty

---

[1] As noted in Monsanto's Corporate Disclosure Statement, Seamless Control LLC ("Seamless") merged with and into Monsanto Company on July 1, 2022, and is no longer a separate entity. Seamless therefore has not been served and, in any event, should be dismissed because it is not a party in interest.

to disclose NNG issues that underlies their other claims, which is insufficient to plead the required "active concealment." Moreover, their effort to bootstrap alleged concealment of information from the EPA into a fraud or fraudulent concealment claim is preempted under well-established Ninth Circuit law.

Plaintiffs' UCL, FAL, CLRA, and unjust enrichment claims must also be dismissed for failure to plead a cognizable duty to warn. And their requested equitable relief for these claims also fails because Plaintiffs cannot plausibly claim they lack an adequate remedy at law when they are seeking legal remedies based on the same factual allegations.

Finally, Plaintiffs lack standing to seek injunctive relief because their complaint shows that they do not face any imminent risk of future harm. But in any event, their requested injunction requiring an expiration date on the products is preempted—the EPA has exclusive authority to approve label changes—and would not redress their alleged injury in any event.

## STATEMENT OF FACTS

Plaintiffs allege that a limited subset of Roundup®-brand products with concentrations of glyphosate of 41% or more (the Products) contain (or are likely to accumulate during use) levels of NNG, a known byproduct of glyphosate, above 1ppm, which they allege is the legal limit. Compl. ¶ 97. Nearly all of these Products are part of the Roundup® industrial and professional product line, with only one formulation allegedly sold under the consumer line of products. Compl. ¶45, Ex. 1. These concentrated Products represent an extremely small portion of nationwide Roundup® sales. Plaintiffs name as Defendants Bayer CropScience LP and Monsanto Company, the manufacturers and registrants of the products; their agent for sales of consumer Lawn & Garden products, The Scotts Company; and a former subsidiary, Seamless, that has merged into Monsanto and no longer exists as a separate entity as Defendants.

NNG is a distinct member of a broad family of chemicals calls nitrosamines. While Plaintiffs allege that many nitrosamines have been found to be potential carcinogens, they do not and cannot allege that NNG has ever been found to cause cancer, nor that it has ever injured anyone.[2]

It is also well known and publicly documented that NNG may form when glyphosate is exposed to water and nitrites.[3] *Id*. ¶ 69. Nitrites can be introduced through water used during the manufacturing process or through sufficient exposure to certain nitrogen oxide gases, which can react with water in the Products to form nitrites. Compl. ¶¶ 70, 117. Monsanto therefore tests for NNG and nitrites at all stages of the manufacturing process to ensure that final Products are well under the 1 ppm limit and includes labeling directions that, among other things, require purchasers

---

[2] Monsanto's own studies of NNG found no evidence of carcinogenicity. The complaint attacks the reliability of these studies, but it offers no competing evidence.

[3] While Plaintiffs try to suggest that Monsanto has attempted to keep the existence of NNG some kind of secret, that conflicts with reality. NNG has been well known by EPA, and the public at large, for decades. *See* EPA, *Guidance for the Reregistration of Pesticide Products Containing Glyphosate as the Active Ingredient*, at 11 (June 1986), available at https://nepis.epa.gov/ Exe/ZyPDF.cgi/9100AGUQ.PDF?Dockey=9100AGUQ.PDF ("The Agency has determined that technical glyphosate contains N-nitroso-glyphosate (NNG) as a contaminant at levels of 0.1 ppm or less. The Agency has determined that oncogenicity testing of nitroso contaminants will normally be required only in those cases in which the level of nitroso compounds exceeds 1.0 ppm."); EPA, *Second Peer Review of Glyphosate*, at 16 (Oct. 30, 1991), available at https://archive.epa.gov/pesticides/chemicalsearch/chemical/foia/web/pdf/103601/417300-1991-10-30a.pdf ("The levels of NNG in technical glyphosate have been examined by [Health Effects Division] …. The overall data show that 92.6 percent of the individual glyphosate samples analyzed contain less than 1.0 ppm (1000 ppb) of NNG."); *see also* Food and Agricultural Organization ("FAO"), *FAO Specifications and Evaluations for Agricultural Pesticides*, at 16, available at https://www.fao.org/fileadmin/templates/agphome/documents/Pests_Pesticides/ Specs/Glyphosate_2016_02_10.pdf ("During the synthesis, the presence of nitrites in the process water, or the presence of [NO]x in the air or oxygen, used in the oxidation process, are the main causes of the formation of N-nitrosoglyphosate."). In the 1980s, the EPA set a ceiling of 1ppm for NNG in formulated products. Monsanto has thus implemented stringent Quality Assurance measures to test for NNG throughout the manufacturing of glyphosate products. *See* Compl. ¶¶ 9, 11, 124, 134 (referencing Monsanto's internal testing of products for NNG).

to store the products away from fertilizers and keep the "container closed to prevent spills and contamination" when not in use.  *E.g.*, Dkt. 1, Ex. 3 at 2 (Roundup® PRO Concentrate label).

Plaintiffs do not allege that any of the Products (let alone the bottles they bought) have ever been found to have NNG levels above 1ppm at the time of sale.  Instead, they allege that Monsanto concealed that the Products were "substantially likely to develop uncontrollable and unlawful levels" of NNG, "even with use and storage consistent with the label."  Compl. ¶¶ 206, 211, 216, 221.  In support, however, they allege only anecdotal instances when Monsanto's quality-assurance efforts identified and investigated glyphosate technical or glyphosate intermediate (inputs to the formulated Products)[4] *before* any Product ever left the door.  Stated otherwise, despite their conclusory allegations that NNG exceedances are "substantially likely," Plaintiffs do not produce even a *single* instance of NNG exceeding 1ppm in the Products they or anyone else purchased, either at the time of or after they were sold.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court "accepts as true all well-pled factual allegations" and determines whether they allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bohren v. San Jose Police Dept.*, 2022 WL 834320, at *1 (N.D. Cal. Mar. 21, 2022).  However, courts should not "accept as true allegations that contradict matter properly subject to judicial notice" or that "are merely conclusory,

---

[4] "Glyphosate technical" is the glyphosate acid base used as an input into the final formulated Products; "glyphosate intermediate" is ammonium salt that is processed into glyphosate technical. *See* FAO Specification 284 / TC (technical glyphosate) (February 2016), available at https://www. fao.org/agriculture/crops/thematic-sitemap/theme/pests/jmps/ps-new/en/.

unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## ARGUMENT

### I.   THE ENTIRE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT PLAUSIBLY ALLEGE VIOLATION OF A LEGAL RIGHT OR DUTY

Plaintiffs allege that Defendants violated FIFRA by failing to report to EPA that above-spec levels of NNG were found in a few instances in glyphosate technical during manufacturing, and by failing to include an expiration date on the Products (even though the expiration dates could be but are not required by EPA). Compl. ¶¶ 13, 19, 92, 123, 147, 195, 243. But FIFRA provides no private right of action. To state a claim based on any alleged omission or failure to warn about NNG, Plaintiffs must plausibly allege that Defendants breached a legal duty *to them*. Plaintiffs apparently acknowledge as much, disclaiming FIFRA as a basis for their claims.[5] *Id.* at 62. Plaintiffs instead identify two contenders for this legal duty: a tort duty to warn/disclose and a duty created by warranty. *Id.* ¶¶ 18, 39, 191, 319, 325. Neither is plausible on the facts alleged.

---

[5] The only exception is Plaintiffs UCL claim, where they claim that FIFRA violations can serve as predicate unlawful actions. But a bare regulatory violation (even if it were plausibly alleged, which it is not) is insufficient. Rather, for that UCL claim, Plaintiffs must plead that the alleged regulatory issue violated some right or duty to them and caused them injury. *See* Cal. Bus. & Prof. Code § 17204 (plaintiffs must have "suffered an injury in fact and ha[ve] lost money or property *as a result of the unfair competition*") (emphasis added); *see also Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1086 (2007) (plaintiff lacked standing under UCL because "their claimed injury does not result from the alleged violation of th[e] statutory scheme"); *Figy v. Amy's Kitchen, Inc.*, 2013 WL 6169503, at *3-4 (N.D. Cal. Nov. 25, 2013) (dismissing plaintiff's UCL claim based on violation of a statute prohibiting misbranding on product labels because plaintiffs failed to adequately plead they were misled and injured). For the reasons explained in the rest of this brief, they have not done so.

### A.    Plaintiffs Do Not Plausibly Allege A Duty to Warn or Disclose

Plaintiffs argue Defendants had a duty to warn them that NNG may be dangerous and that the Products may contain or develop unsafe levels of NNG.[6] But Plaintiffs cannot plausibly allege NNG poses any risk. *See Johnson & Johnson Talcum Powder Cases*, 37 Cal. App. 5th 292, 314 (2019) (a "manufacturer has no duty to warn of risks that are merely speculative or conjectural, or so remote and insignificant as to be negligible") (citations omitted). Plaintiffs cite no scientific evidence that NNG is carcinogenic. And Plaintiffs' speculation that a chemical *may* be dangerous does not plausibly allege actionable risk. *See Weeks v. Home Depot U.S.A., Inc.*, 2020 WL 13220040, at *3 (C.D. Cal. Dec. 16, 2020) (dismissing similar claims for failure to warn that POEA surfactants allegedly increase toxicity of glyphosate because the plaintiff "identifie[d] only two studies that find POEA to enhance glyphosate's toxicity"—two more studies than Plaintiffs here point to).

Plaintiffs also do not identify any instance in which Products have been sold with NNG levels above 1ppm—much less exceedances in any bottle they purchased. Plaintiffs point only to instances where Monsanto's quality-control efforts identified glyphosate technical exceeding the 1ppm NNG threshold that were discovered and remedied, and a 2004 study of glyphosate intermediate *designed specifically to induce NNG formation* to identify why and how that occurred. *See* Compl. ¶¶ 11, 16, 129-133.[7] Neither of these create a duty to warn.

---

[6] To the extent that Plaintiffs are relying on the failure to include an expiration date, that is akin to a failure to warn of a design defect and hence subject to the same analysis. *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, 548 F. Supp. 3d 1225, 1249 (S.D. Fla. 2021) ("[C]laims based on expiration dates are failure-to-warn claims….").

[7] Plaintiffs also make a flawed mathematical argument they claim shows that the Products were above 1ppm NNG at sale. Specifically, Plaintiffs argue that the upper limit for NNG in glyphosate technical is 2.5ppm and that this would result in NNG levels above 1ppm in Products with more than 40% glyphosate. Compl. ¶¶ 98-103. But this argument relies on an unstated (and inaccurate) premise that the certified upper limit for glyphosate technical reflects the *actual* level of NNG.

Plaintiffs say the fact that out-of-spec glyphosate technical was identified as part of Monsanto's quality-control processes shows that the Products are fundamentally defective and have or can develop unsafe NNG levels over time.   Compl. ¶¶ 157, 177, 183.   But finding exceedances in the manufacturing process, before any product was sold to consumers, does not support a reasonable inference that there were exceedances in any Products that were sold, let alone that this occurred in any Products Plaintiffs bought.   Of course, a manufacturing operation has built in quality-control processes to ensure that the products sold are within approved specifications.

Nor does the 2004 study support Plaintiffs' allegation that NNG levels are likely to develop in the Products after sale.   That study, which did not look at the final Products themselves,[8] tested extreme conditions *designed* to induce NNG formation, which Plaintiffs do not and cannot allege approximate real-world storage or handling conditions.   Even under those extreme conditions, packaging effectively prevented NNG formation.   Beyond that, the study simply confirmed what everyone had known for decades and regulated with product specifications and quality-assurance

---

Plaintiffs do not allege that, and they have no factual basis to do so.   NNG levels even in glyphosate technical are typically well below 1ppm.   EPA, *Reregistration Eligibility Decision: Glyphosate* (Sept. 1993) at 44, available at https://www3.epa.gov/pesticides/chem_search/reg_actions/ reregistration/red_PC-417300_1-Sep-93.pdf ("Analyses showed that greater than 92% of the individual technical glyphosate samples contained less than 1.0ppm NNG.   The Agency concluded that the NNG content of glyphosate was not toxicologically significant.").   And final Products have their own specifications and are regularly tested as part of Monsanto's quality-assurance efforts.

[8] The 2004 study was made up of several different tests of different substances, including glyphosate intermediate alone and combinations of ingredients similar to a dry formulated product. In some of those tests (including all those cited by Plaintiffs), the test materials were fully exposed to high levels of nitrites (well above any realistic real-world exposure) for days at a time and with no packaging.   These tests were done for the very purpose of inducing NNG formation in a non-commercial setting in order to study conditions of formation.

testing—introduction of significant quantities of nitrites to glyphosate can cause NNG formation. This is not evidence of any risk to Plaintiffs that Monsanto had a duty to disclose.[9]

### B.    Plaintiffs Do Not Plausibly Allege Any Breach of Warranty

Plaintiffs' warranty theories fail as a whole because Plaintiffs must plead manifestation of the alleged defect in the Products they bought during a relevant warranty period to state such claims under California law. *Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013) ("In asserting a warranty claim, … [i]t is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect.") (citations omitted); *Acedo v. DMAX, Ltd.*, 2015 WL 12696176, at *26 (C.D. Cal. Nov. 13, 2015) (similar); *see also In re Bextra & Celebrex Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2007 WL 2028408, at *8 (N.D. Cal. July 10, 2007) ("[A]s [plaintiffs] do not contend that they could allege the manifestation of a defect if given leave to amend, defendants' motion to dismiss the warranty claims must be granted with prejudice."); *Precht v. Kia Motors Am., Inc.*, 2014 WL 10988343, at *8–9 (C.D. Cal. Dec. 29, 2014) (dismissing warranty claims because "the FAC does not identify how long the warranty period was[, but]. . . [t]he only reasonable inference. . . is that the Defect in Plaintiff's vehicle did not manifest [during

---

[9] In addition, while Plaintiffs' theory is that there was a design defect that posed a safety risk to consumers that Monsanto was required to warn about (Compl. ¶¶ 18, 53, 121), the law in this Circuit requires *manifestation* to plausibly allege injury from failure to warn of a design defect, and a conclusory claim of product overcharge is insufficient. *See Contreras v. Toyota Motor Sales USA, Inc.*, 2010 WL 2528844, at *6 (N.D. Cal. June 18, 2010) ("Plaintiffs do not allege that their vehicles have manifested the alleged defect. . . Plaintiffs allegation that their vehicles are worth substantially less than they would be without the alleged defect is conclusory and unsupported by any facts."); *Contreras v. Toyota Motor Sales U.S.A. Inc.*, 484 F. App'x 116, 118 (9th Cir. 2012) (affirming dismissal for lack of standing because claim "that they either paid too much when they bought their vehicles because the vehicles were defective, or that they would not have purchased the vehicles had they known of the defect" is insufficient without manifestation).  Plaintiffs have not alleged and cannot allege manifestation of the defect here (exceedance of NNG specs in Products they bought).

that period].").  As explained above, Plaintiffs have not alleged that the packages of Products they purchased (or that *anyone* in their proposed classes purchased) ever exceeded 1ppm NNG.

### 1.      The Complaint does not state a breach of express warranty claim

Plaintiffs allege breach of express warranty based on two sets of representations that they allege *some* Defendants ("Warranty Defendants") gave to *some* class members.  Compl. ¶¶ 255-56.  First, Plaintiffs say, "[a]lmost all of the Products come with the express warranty that the Products 'conform[] to the chemical description on the label.'"  Compl. ¶ 255.  But the chemical descriptions on the labels have nothing to do with NNG—they state only the percentage of the active ingredient(s) and that "other ingredients" make up the rest of the Products.[10]  *See Smith v. LG Elecs. U.S.A., Inc.*, 2014 WL 989742, at *4 (Mar. 11, 2014) (only "specific and unequivocal" factual claims are actionable as an express warranty).

Second, Plaintiffs allege that "[m]any of the Products come with the express warranty that the Product 'is reasonably fit for the purposes set forth in the'" label, which they say was breached because the Products' NNG levels "made them unreasonably unsafe" and rendered them "unregistered pesticides not approved by EPA."  Compl. ¶ 256.  But as explained above, Plaintiffs have not plausibly alleged that NNG poses any safety risk.  And the suggestion that the Products would be universally "unregistered" if some unidentified portion of the Products were out of spec

---

[10] Even if the chemical descriptions did set an NNG limit (and they do not), Plaintiffs' speculation that this warranty *might* be breached with respect to *some* Products cannot sustain an express warranty claim.  *See, e.g.*, *Friche v. Hyundai Motor, Am.*, 2022 WL 1599868, at *7 (C.D. Cal. Jan. 28, 2022) ("Plaintiff has only speculated that Hyundai's recall remedy might not have been effective. He cannot predicate a breach of express warranty claim on such speculation.").  Plaintiffs may retreat to their claim that EPA did not know NNG levels could change, so the "Products' true chemical composition is not and has never been registered with EPA and is different … from what is allowed under their Confidential Statement of Formula."  Compl. ¶ 255.  But that has no relevance to Plaintiffs' warranty theories.   Defendants never expressly warranted anything to Plaintiffs about the Products' registrations, compliance with the CSF, or anything related to NNG levels or limits.

9

(which, again, Plaintiffs do not even plausibly allege) lacks support in law or logic. In any case, the warranty that the Products are "reasonably fit for the purpose set forth in the label" is simply a promise that they are suitable for their specified uses as herbicides—a point Plaintiffs do not dispute. *See Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295-96 (1995) (products are "fit for the ordinary purpose for which such goods are used" when they "provide[] for a minimum level of quality").

### 2.    Plaintiffs fail to state implied warranty claims

Plaintiffs' claim that Warranty Defendants breached the implied warranty of merchantability and fitness also fails. "[A] plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant" and "an end consumer … who buys from a retailer is not in privity with a manufacturer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).[11] Plaintiffs allege the third-party beneficiary exception should apply (Compl. ¶ 260), but "no published decision of a California court has applied this [third party beneficiary exception] in the context of a consumer claim against a product manufacturer." *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1010 (S.D. Cal. 2021) (citations omitted); *see also Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011) (same).

In any event, even if Plaintiffs could pursue an implied-warranty claim, as they concede, Defendants need only warrant that a "'pesticide is reasonably fit for use for any purpose for which *it is intended according to any printed statement of the registrant*.'" Compl. ¶ 263 (citing Cal. Food & Ag. Code § 12854) (emphasis added). The printed statements on the Products state only that they have intended uses as herbicides, and Plaintiffs do not contest that they are effective

---

[11] Plaintiffs vaguely allege "dealings" with Defendants through their "agents" (Compl. ¶ 259), but they have not tried to plead agency between Defendants and the companies, such as Tractor Supply and eBay.com, from whom they allege they bought the Products.

herbicides.  *Am. Suzuki*, 37 Cal. App. 4th at 1295-96; *see also Tietsworth v. Sears, Roebuck & Co.*, 2009 WL 3320486, at *12 (N.D. Cal. Oct. 13, 2009) ( "Plaintiffs fail to plead that their Machines are unfit for their ordinary purpose of cleaning clothes …."). [12]  All other warranties of fitness and merchantability can be and have been expressly and conspicuously disclaimed.  *See* Dkt. 1, Ex. 4 at 5 (QuickPro label) ("NO OTHER EXPRESS WARRANTY OR IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE OR MERCHANTABILITY IS MADE"); [13] *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) (under California law, "[a] company may disclaim the implied warranty of merchantability so long as the disclaimer 'mention[s] merchantability' and is 'conspicuous'").

## II.    PLAINTIFFS DO NOT PLAUSIBLY ALLEGE FRAUDULENT CONCEALMENT

Plaintiffs try to justify their lack of factual support by claiming Defendants fraudulently concealed information from them and EPA. [14]  But as explained above, Plaintiffs do not plausibly allege that Monsanto (or any other Defendant) had a duty to disclose anything *to them* about NNG. And even if Plaintiffs were correct that Defendants should have reported more information to EPA or otherwise violated FIFRA (and they are not), that would not be actionable concealment.  *See Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1073, 1075-76 (N.D. Cal. Feb. 2, 2016) (defendants do not have a "duty to disclose []allegedly illegal behavior…. In this circuit,

---

[12] Plaintiffs must plausibly allege harm caused "by the lack of expected quality." Cal. Com. Code § 2314; CACI No. 1231.  Plaintiffs do not plausibly allege any form of harm, much less any resulting from any failure of the Products to perform as advertised.

[13] This disclaimer is included on all the Products' labels.

[14] Although Plaintiffs repeatedly direct allegations of concealment to "Defendants," everything they allege was concealed they attribute to Monsanto employees with no explanation of the other Defendants' roles or knowledge.  *See* Compl. ¶¶ 123-24, 128.  Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations… and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 2022 WL 522484, at *52 (C.D. Cal. Feb. 9, 2022) (citations omitted).

'affirmative acts' must consist of more than mere passive concealment."); *Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499, 505 (9th Cir.1988) (plaintiffs must plead more than acts that are "by nature self-concealing").

Regardless, Plaintiffs' theory that they were defrauded "through" the EPA is preempted. Plaintiffs say they rely on EPA to properly approve pesticide products based on information that "[c]onsumers, including Plaintiffs, have no ability to know… because testing data is not readily available." Compl. ¶ 191. And they allege that by fraudulently concealing such information from EPA, Defendants deceived them into believing the Products were properly registered. *See, e.g.*, *id*. ¶¶ 204, 209, 214, 219. But this theory is preempted under well-established law. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1206 (9th Cir. 2002) (plaintiff's claims were preempted because "it is the alleged fraud-on-the-EPA and abuse of the labeling process which give rise to Kimmel's … proffered cause of action."); *see also In re Zantac*, 548 F. Supp. 3d at 1241 (dismissing claims that defendants failed to warn consumers by putting expiration date on products by withholding information that should have been provided to FDA as preempted under *Buckman*).

Finally, Plaintiffs fail to allege that Defendants intended to defraud them. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (citations omitted) (to plead fraud in California, a plaintiff must plead "intent to defraud, i.e., to induce reliance" and "justifiable reliance").[15] They claim a single Monsanto employee testified that Monsanto does not test post-

---

[15] It is not enough to allege that a Defendant was aware of a defect and did not do everything it could to remedy it.  "[A]llegations of this nature with respect to all prongs [of a claim of concealment] could be made about any alleged design defect in any manufactured product. The heightened pleading requirements of Rule 9(b) were designed to avoid exactly this situation." *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *10 (N.D. Cal. June 5, 2009) (citations omitted).

sale products, which Plaintiffs claim was to avoid having to perform more tests and potentially recall products. *E.g.*, Compl. ¶ 14. But that does not support an inference of intent to defraud even EPA (which Plaintiffs do not and cannot allege requires post-sale testing), let alone deceive and induce reliance from Plaintiffs.

For similar reasons, Plaintiffs' assertion that they can toll the statute of limitations is unfounded. To toll the limitations period, Plaintiffs "must plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in trying to uncover the facts." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415-16 (9th Cir. 1987). As discussed, however, Plaintiffs have failed to allege fraudulent concealment plausibly or with particularity. *See In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1215-16 (N.D. Cal. April 3, 2015) ("[P]assive concealment of information is not enough to toll the statute of limitations, unless the defendant had a fiduciary duty to disclose information.") (citations omitted).

Additionally, tolling is an equitable remedy that is unavailable because Plaintiffs cannot claim an inadequate remedy at law. *See id.*; *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) ("A plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available."). Plaintiffs do not allege that their individual claims are time-barred. They allege only that some members of their proposed classes may have time-barred claims, but nothing stops those class members from bringing claims by seeking equitable tolling. And it does not show that *Plaintiffs* have an inadequate remedy at law or otherwise can toll the limitations period for an entire class.

## III. PLAINTIFFS' MMPA AND SBWA CLAIMS (COUNTS I-III) FAIL FOR OTHER REASONS

Plaintiffs' MMWA and SBWA claims fail because, as discussed above, they allege no plausible breach of implied or express warranty. *See supra* Section I.B.; *Clemens*, 534 F.3d at

1022 (MMWA claims "stand or fall with [] express and implied warranty claims under state law.");
*Philips v. Ford Motor Co.*, 2016 WL 1745948, at *5 (N.D. Cal. May 3, 2016) (same re SBWA).

The MMWA governs only "consumer products," which are defined as those "*normally* used for personal, family, or household purposes." 15 U.S.C. § 2301(1) (emphasis added). Similarly, the SBWA reaches only "consumer goods," which are defined as "any new product or part thereof that is used, bought, or leased for use *primarily for personal, family, or household purposes*, except for clothing and consumables." Cal. Civ. Code § 1791(a) (emphasis added). Yet, other than the Roundup® Super Concentrate Product, every Product in the Complaint is marketed to professionals for commercial uses, with many sold in barrels or totes holding dozens or even hundreds of gallons. Plaintiffs argue these are still "consumer products" because their labels list uses in residential areas and they are available to consumers to purchase. Compl. ¶ 251.

But neither of those allegations shows that these are "consumer" products. *See Edmonson v. LCW Auto. Corp.*, 2008 WL 11338640 (C.D. Cal. March 10, 2008) (collecting cases); *Reynolds v. S & D Foods*, 1993 U.S. Dist. LEXIS 3040, *9–10 (D. Kan. 1993) (though *available* to private consumers, dog food marketed for kennels and breeders was not a consumer product). These Products are designed for and marketed to landscapers and other professionals, and Plaintiffs do not allege otherwise.[16] That the labels list uses in residential areas is a non sequitur—professional landscapers, of course, often work in residential areas.

---

[16] Plaintiffs' purchase allegations confirm this. The QuikPRO products were allegedly purchased from Tractor Supply (where they are sold with other commercial products) and online retail stores such as Domyown.com and Forestrydistributing.com, where Defendants' professional-grade products are sold. *See* Compl. ¶¶ 208, 213, 251. Forestryditributing.com, for example, describes itself on its home page as "North America's leading distributor of professional forestry products." Likewise, Domyown.com claims to carry "professional grade pest products and pesticides" with the "goal [of] provid[ing] [purchasers] with the. . . pest management solutions. . . that professional pest control companies and exterminators use."

Plaintiffs' MMWA claim also fails because they must name at least 100 plaintiffs in the Complaint to bring it in federal court, and they cannot bypass this requirement with CAFA or another jurisdictional hook. 15 U.S.C. § 2310(d)(3)(C); *Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1035 (9th Cir. 2020) ("CAFA may not be used to evade or override the MMWA's specific numerosity requirement."). Here, there are only four named Plaintiffs.

## IV.   PLAINTIFFS DO NOT ALLEGE INADEQUATE REMEDIES AT LAW AS REQUIRED FOR EQUITABLE RELIEF (COUNTS VIII-XI)

"[T]he UCL and FAL provide for only equitable relief." *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017); *Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 293 (2020) (same). Unjust enrichment is not a claim in California, but courts interpret such allegations as an equitable claim for restitution. *Tietsworth*, 2009 WL 3320486, at *14.[17]

Here, these claims fail because Plaintiffs plead adequate legal remedies based on the same facts in their other causes of action.[18] *See Philips*, 2015 WL 4111448, at *16; *see also Munning v. Gap, Inc.*, 238 F. Supp. 3d at 1203 ("[S]everal courts in this district have barred claims for equitable relief—including claims for violations of California consumer protection statutes—at the motion to dismiss stage where plaintiffs have alleged other claims presenting an adequate remedy at law.") (citing cases). That Plaintiffs plead these claims in the alternative is irrelevant. "[E]quitable relief is unavailable" whenever "the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law." *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *4 (N.D. Cal. May

---

[17] As such, its viability "will depend upon the viability of the Plaintiffs' other claims." *Id*. (citations omitted).

[18] This applies to CLRA as well to the extent that Plaintiffs seek injunctive relief under the statute. *See, e.g.*, *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing claims for equitable relief under the CLRA, UCL, and FAL because plaintiff pled five other claims which presented her an adequate remedy at law).

31, 2011) (emphasis in original); *see also Munning*, 238 F. Supp. 3d at 1203 ("It matters not that a plaintiff may have no remedy if her other claims fail.").

## V.     PLAINTIFFS CANNOT SEEK INJUNCTIVE RELIEF (ALL COUNTS)

As this Court acknowledged in *Hardeman*, an injunction requiring a change to a pesticide label is preempted.  While the Court and the Ninth Circuit on appeal held that the EPA's determination that a statement was not false or misleading did not have preemptive effect, EPA *does* have exclusive authority to approve pesticide labeling.  *Hardeman v. Monsanto*, 216 F. Supp. 3d 1037, 1037-38 (N.D. Cal. 2016) ("Dictating the contents of Roundup's label would usurp the EPA's exclusive authority, under 7 U.S.C. § 136v(b), to approve all pesticide labeling."); *see also Mirzaie v. Monsanto Co.,* 2016 WL 146421 (C.D. Cal. Jan. 12, 2016).

Plaintiffs also lack standing to seek injunctive relief because they face no "likelihood of future injury … that is redressable by injunctive relief."  *Delarosa v. Boiron, Inc.*, 2012 WL 8716658, at *6 (C.D. Cal. Dec. 28, 2012); *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) ("Where standing is premised entirely on the threat of repeated injury, a plaintiff must show a sufficient likelihood that he will again be wronged in a similar way.").  Here, assuming *arguendo* that Plaintiffs plausibly alleged that the Products have or are likely to develop exceedances of NNG, Plaintiffs now have all the information they allege Monsanto concealed about NNG formation in the Products at issue.  They claim to now know the Products "degrade into uncontrollable and unlawful levels of NNG, even under ordinary conditions and when used in accordance with the Products' labels." Compl. ¶ 121.  Thus, Plaintiffs face no risk of future injury. *See Matic v. U.S. Nutrition, Inc*., 2019 WL 3084335, at *8 (C.D. Cal. Mar. 27, 2019) (dismissing claim for injunctive relief where plaintiff complained that defendant's packaging misled him about weight of product, but complaint made clear that plaintiff now knew "precisely where to find"

accurate weight information); *Jenkins v. Apple, Inc.*, 2011 WL 2619094, at *2 (N.D. Cal. July 1, 2011) (citations omitted) ("[I]f a plaintiff has knowledge of a defendant's practices, that plaintiff cannot have standing to seek injunctive relief to redress injuries caused by those practices. . .").[19]

In any event, Plaintiffs' requested injunctive relief—adding an expiration date to the label—conflicts with their theory of harm (and in fact only highlights the inconsistencies and implausibility of Plaintiffs' entire case). An expiration date would tell Plaintiffs *nothing* about NNG levels in the Products, any risks associated with those levels, or what they should or should not do to avoid causing those levels to rise. Moreover, Plaintiffs allege that some unknown quantity of Products are sold with unlawful NNG levels *at the point of sale*. This conclusory allegation is unsupported by facts, but taken as true, an expiration date on such Products would be inaccurate because, according to Plaintiffs, the Products would "expire" before they are even sold. Thus, accepting Plaintiffs' allegations, an expiration date could not help any class member assess any product risks, or even whether the expiration date should apply. *See Allen v. Similasan Corp.*, 2013 WL 2120825, at *3 (S.D. Cal. May 14, 2013) (dismissing claims because plaintiff "cannot show that her alleged injury will be adequately redressed through injunctive relief").

## CONCLUSION

For all these reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

---

[19] If Plaintiffs' alleged injury is their "interest[] in purchasing [Products] with labeling that comports with regulations" (*e.g.*, Compl. ¶ 207), such allegations of "bare procedural violation[s]" and "desire for [Monsanto] to truthfully label its products" are "insufficient to demonstrate that they have suffered any particularized adverse effects" for purposes of Article III. *In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021).

Dated:  September 23, 2022

*/s/ John J. Rosenthal*

John J. Rosenthal
WINSTON & STRAWN LLP
1901 L St. NW
Washington, DC 20036
Tel: (202) 282-5785
Fax: (202) 282-5100
jrosenthal@winston.com

Jeff Wilkerson (SBN 284044)
WINSTON & STRAWN LLP
300 S. Tryon St., 16th Floor
Charlotte, North Carolina 28202
Tel: (704) 350-7714
Fax: (704) 350-7800
jwilkerson@winston.com