Stephanie Dilworth (SBN 342109)
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Tel: (415) 626-3939
Fax: (415) 875-5700
sdilworth@jonesday.com

Jeffrey J. Jones (*pro hac vice*)
JONES DAY
150 West Jefferson, Suite 2100
Detroit, Michigan 48226
Tel: (313) 733-3939
Fax: (313) 230-7997
jjjones@jonesday.com

Margaret M. Dengler (*pro hac vice*)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Tel: (614) 469-3939
Fax: (614) 461-4198
mdengler@jonesday.com

*Attorneys for Defendant The Scotts Company LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Scott Koller, et al., v. Monsanto Company, et al.*, Case No. 3:22-cv-04260-VC | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**THE SCOTTS COMPANY LLC'S NOTICE OF AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date: December 15, 2022<br>Time: 10:00 am<br>Place: Via Zoom Webinar<br>Judge: Hon. Vince G. Chhabria |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on December 15, 2022, at 10:00 am, via Zoom Webinar ID: 161 285 7657, Password: 547298, Defendant The Scotts Company LLC moves this Court pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss Plaintiffs' complaint with prejudice. This Motion is based on this Notice of Motion and Motion, the Memorandum below, and Monsanto Company's Notice of and Motion to Dismiss Plaintiffs' Complaint, which Scotts adopts and incorporates by reference.

Dated: September 23, 2022

Respectfully Submitted,

*/s/ Stephanie Dilworth*
Stephanie Dilworth (SBN 342109)
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Tel: (415) 626-3939
Fax: (415) 875-5700
sdilworth@jonesday.com

Jeffrey J. Jones (*pro hac vice*)
JONES DAY
150 West Jefferson, Suite 2100
Detroit, Michigan 48226
Tel: (313) 733-3939
Fax: (313) 230-7997
jjjones@jonesday.com

Margaret M. Dengler (*pro hac vice*)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Tel: (614) 469-3939
Fax: (614) 461-4198
mdengler@jonesday.com

*Counsel for Defendant*
*The Scotts Company LLC*

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1
FACTUAL BACKGROUND..................................................................................................2
LEGAL STANDARD...............................................................................................................3
ARGUMENT............................................................................................................................4
      I.      The Court Should Dismiss The Complaint In Its Entirety For The Reasons Set Forth In Monsanto's Motion to Dismiss...............................................................4
      II.     Plaintiffs Have Not Pled Facts Showing that Scotts Violated The UCL. ................4
           A.     Plaintiffs Do Not Plausibly Allege That Scotts Personally Participated In Or Exercised Unbridled Control Over The Allegedly Unlawful Practices ..........................................................................4
           B.     Plaintiffs Failed To Serve The Required Presuit Notice And Demand On Scotts And Thus Cannot Pursue A UCL Claim Premised On A Violation Of The CLRA......................................................7
      III.    Plaintiffs Fail to Allege Their Claims Against Scotts Plausibly Or With The Particularity Required by Rule 9(B) ..................................................................7
           A.     Plaintiffs Do Not Plausibly Allege Fraud, Deceit, Or Misrepresentation by Scotts..........................................................................8
           B.     Plaintiffs Do Not Plead Their Fraud Or Fraud-Based UCL Claims Against Scotts With Particularity................................................................9
      IV.    Plaintiffs' Unjust Enrichment Count Against Scotts Fails On Multiple Grounds....................................................................................................................11
CONCLUSION........................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Abuelhawa v. Santa Clara Univ.*
    529 F. Supp. 3d 1059 (N.D. Cal. 2021) .................................................................................11

*Brodsky v. Apple Inc.*
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ...................................................................................11

*Herron v. Best Buy Co.*
    924 F. Supp. 2d 1161 (E.D. Cal. 2013)....................................................................................9

*Hodsdon v. Mars, Inc.*
    891 F.3d 857 (9th Cir. 2018) ...............................................................................................7, 8

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009) ...............................................................................3, 8, 9, 10

*Khoja v. Orexigen Therapeutics, Inc.*
    899 F.3d 988 (9th Cir. 2018) ...................................................................................................3

*Klein v. Facebook, Inc.*
    580 F. Supp. 3d 743 (N.D. Cal. 2022) ...................................................................................11

*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001) ...................................................................................................5

*Leonov v. JPMorgan Chase Bank, No. 2:16-cv-02483-AB-AS*
    2016 U.S. Dist. LEXIS 195128 (C.D. Cal. Sep. 16, 2016)....................................................11

*Low v. LinkedIn Corp.*
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................................................11

*Nathan Kimmel, Inc. v. DowElanco*
    275 F.3d 1199 (9th Cir. 2002) .................................................................................................4

*Peacock v. 21st Amend. Brewery Cafe, LLC*
    2018 WL 452153 (N.D. Cal. Jan. 17, 2018) ...........................................................................7

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*
    494 F.3d 788 (9th Cir. 2007) ...............................................................................................4, 5

*Prudencio v. Midway Importing, Inc.*
    831 F. App'x 808 (9th Cir. 2020) ...................................................................................4, 5, 6

*Robie v. Trader Joe's Co.*
    2021 WL 2548960 (N.D. Cal. June 14, 2021) ......................................................................11

*Robinson v. HSBC Bank USA*
   732 F. Supp. 2d 976 (N.D. Cal. 2010) ...................................................................................11

*Swartz v. KPMG LLP*
   476 F.3d 756 (9th Cir. 2007) ..................................................................................................10

*Telesaurus BPC, LLC v. Power*
   623 F.3d 998 (9th Cir. 2010) ....................................................................................................3

*Tortilla Factory, LLC v. Better Booch, LLC*
   2018 WL 4378700 (C.D. Cal. Sept. 13, 2018) .........................................................................5

*Wilson v. Hewlett-Packard Co.*
   668 F.3d 1136 (9th Cir. 2012) ..................................................................................................6

**CALIFORNIA CASES**

*Berryman v. Merit Prop. Mgmt., Inc.*
   62 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007) .............................................................................11

*City of Oakland, v. Oakland Raiders*
   2022 WL 4243101 (Cal. Ct. App. Sept. 15, 2022) .................................................................11

*De Havilland v. FX Networks, LLC*
   21 Cal. App. 5th 845 (Cal. Ct. App. 2018) .............................................................................11

*Duus v. Snow*
   2021 WL 5027706 (Cal. Ct. App. Oct. 29, 2021) ..................................................................11

*Uzyel v. Kadisha*
   116 Cal. Rptr. 3d 244 (Cal. Ct. App. 2010) ...........................................................................12

**CALIFORNIA STATUTES**

Cal. Civ. Code § 1782 ....................................................................................................................7

California Consumer Legal Remedies Act .................................................................................1, 7

California Unfair Competition Law ...................................................................................... passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9 ......................................................................................... passim

Federal Rule of Civil Procedure 12 ...............................................................................................3

# **INTRODUCTION**

Plaintiffs' complaint is devoid of allegations that support, as a factual or legal matter, the four causes of action brought against The Scotts Company LLC ("Scotts"). Based on Plaintiffs' complaint, Scotts distributed only one of the ten Products[1] at issue (Roundup® Weed & Grass Killer Super Concentrate, which only Plaintiff Koller allegedly bought) under the terms of its agency agreement with Monsanto. And Plaintiffs do not allege even a *single instance* in which that Product was sold with N-Nitrosoglyphosate ("NNG") levels exceeding one part per million ("ppm") or developed such levels after sale. Nor do they allege that Scotts had any control over the registration of that Product (or any other) or that Scotts had any control over what was disclosed on the Products' labels. Instead, Plaintiffs ask the Court to infer that Scotts must have known that the Products *could* exceed one ppm NNG and therefore can be held liable for "fraudulent concealment," common law fraud, deceit, and misrepresentation, violation of the California Unfair Competition Law ("UCL"), and unjust enrichment. Such an inference is unwarranted by any of the factual allegations in the complaint, cannot state a claim for relief, and fails as a matter of law on multiple grounds as set forth below.

As set forth in Monsanto Company's Motion to Dismiss, which Scotts hereby adopts to avoid unnecessary duplication, Plaintiffs' claims against *all* Defendants should fail for several reasons. In addition to these more general failures, Plaintiffs' claims against Scotts fail for three independent reasons.

*First*, Plaintiffs' UCL claim against Scotts is not viable because Plaintiffs do not allege that Scotts personally participated in or exercised unbridled control over the allegedly unlawful practices. Additionally, to the extent Plaintiffs' UCL claim against Scotts hinges on a violation of the California Consumer Legal Remedies Act ("CLRA"), it must be dismissed because Plaintiffs failed to serve Scotts with the required presuit notice and demand.

---

[1] "Products" refers to the Roundup®-brand herbicide products identified in Paragraph 2 of and Exhibit 1 to Plaintiffs' complaint.

*Second*, Plaintiffs' claims against Scotts are grounded in alleged fraud, but Plaintiffs fail to plead these fraud-based claims plausibly or with the particularity required by Federal Rule of Civil Procedure 9(b).

*Third*, Plaintiffs' unjust enrichment should be dismissed because unjust enrichment is not a standalone cause of action in California. Even if it were, Plaintiffs' unjust enrichment count relies on the same alleged fraudulent conduct as their UCL claims, and therefore must "rise and fall" with their UCL claims. And Plaintiffs do not allege that Scotts conferred any specific measurable benefit upon them that would sustain such a claim.

## FACTUAL BACKGROUND

Plaintiffs Scott Koller, Tim Ferguson, Ruby Cornejo, and John Lysek present a new, and speculative, spin on allegations relating to Roundup®-brand products. Plaintiffs do *not* allege that they have cancer or were otherwise physically harmed by the Products. Plaintiffs instead allege that they suffered economic injury because they "would not have purchased the Products or would not have paid as much for them" had they known that concentrated Roundup® products with over 40% glyphosate designed, manufactured, and sold by Monsanto could develop NNG (an impurity) over a one ppm threshold set by the EPA. Compl. ¶¶ 320, 339. More specifically, Plaintiffs allege that NNG is created when glyphosate is exposed to nitrites, chemical compounds found in "city air, exhaust from cars, and, even in water," and that "the Products were defective because they could (and almost invariably would) degrade into higher and higher levels of NNG that would ultimately exceed" one part per million. Compl. ¶¶ 7, 18.

Yet Plaintiffs do not allege that any of the Products they bought exceeded one ppm NNG, either at the point of sale or at any time thereafter, or even that there is evidence that *any* Product in commerce ever exceeded that level. Nor do they allege that, even if this did occur, Scotts had any knowledge of it. Instead, they allege that *Monsanto* had evidence of "problems with NNG levels *during manufacture*," concealed that information from EPA and consumers, and misled consumers by failing to include an expiration date on the Products' labels or otherwise warn

consumers about alleged NNG levels above one ppm. Compl. ¶ 9 (emphasis added); *see* Compl. ¶¶ 9-22, 122-47, 148-64, 191, 244, 325, 341.

Nonetheless, Plaintiffs bring four out of their eleven causes of action against Scotts, for "fraudulent concealment"; common law fraud, deceit, and misrepresentation; violation of the UCL; and unjust enrichment. *See* Compl. ¶¶ 313-21, 322-30, 360-75, 376-81. As to Scotts, Plaintiffs allege only that Scotts was the "exclusive distributor and marketer for at least one Product, Roundup Weed & Grass Killer Super Concentrate" (Compl. ¶ 17; *see* Compl. ¶¶ 36, 45), and "performed some formulation work for Monsanto" (Compl. ¶ 36). Plaintiffs do not allege that Scotts manufactures or controls the label for the Products. To the contrary, they aver that Monsanto, Seamless, and Bayer are "the registrants . . . of the Products" (Compl. ¶ 53), who are responsible for "certify[ing] the ingredients and other substances within a pesticide," including "set[ting] an upper certified limit for impurities of toxicological significance like NNG" (Compl. ¶ 95; *see* Compl. ¶¶ 171-74). The registrants, and not Scotts, are likewise responsible for the content of the product labeling. *See* Compl. ¶¶ 5, 302-12.

## **LEGAL STANDARD**

Courts should grant Rule 12(b)(6) motions if the complaint does not "'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable." *Telesaurus BPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). In conducting this analysis, courts typically accept the complaint's allegations as true, but they should not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). Rule 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." This requires alleging "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

**ARGUMENT**

I.  **THE COURT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY FOR THE REASONS SET FORTH IN MONSANTO'S MOTION TO DISMISS.**

Plaintiffs' claims should be dismissed in their entirety for the reasons set out in Monsanto's Motion, which Scotts adopts by reference to avoid unnecessary duplication. Plaintiffs do not plausibly allege, for example, that *any* of the Products at issue are sold with NNG levels above one ppm, nor do they present even a single instance of NNG levels exceeding one ppm after sale. Instead, they point only to isolated instances of Monsanto—*not* Scotts—discovering exceedances of NNG (primarily in intermediates) during the manufacturing process, with no facts showing that these isolated issues carried over into products sold to consumers. Plaintiffs also do not present *any* scientific evidence or finding that NNG has ever harmed anyone, or even presents a safety hazard, much less that it does so at realistic exposure levels. And without any facts showing that the Products ever exceeded legal limits for NNG or that (even if they did) this would pose a safety risk, there is no factual basis for the alleged duty to disclose on which all Plaintiffs' claims rely. Likewise, their claim that Monsanto defrauded the EPA, in addition to being irrelevant to Scotts, is preempted under *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199 (9th Cir. 2002). Finally, Plaintiffs have not alleged facts showing that they lack an adequate remedy at law, which is required for their injunctive and equitable claims. In addition to those reasons, Plaintiffs' claims against Scotts should be dismissed on several independent grounds.

II.  **PLAINTIFFS HAVE NOT PLED FACTS SHOWING THAT SCOTTS VIOLATED THE UCL.**

  A.  **Plaintiffs Do Not Plausibly Allege That Scotts Personally Participated In Or Exercised Unbridled Control Over The Allegedly Unlawful Practices.**

Plaintiffs plead no facts showing that Scotts participated in or controlled the allegedly unlawful conduct. Violations of the UCL "cannot be predicated on vicarious liability." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007). "[L]iability must be based on 'personal participation . . . and unbridled control'" over the allegedly unlawful conduct. *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 811 (9th Cir. 2020) (alteration in

original) (quoting *Perfect 10*, 494 F.3d at 808).  Allegations that a retailer or distributor of a product manufactured by a third party "knew about the deceptive marketing" are not enough to hold that retailer or distributor liable.  *Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1012 (S.D. Cal. 2011) (citing *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *8 (S.D. Cal. May 22, 2009)); *Tortilla Factory, LLC v. Better Booch, LLC*, 2018 WL 4378700, at *11 (C.D. Cal. Sept. 13, 2018) ("[E]ven if plaintiff established that defendant distributors knew of Better Booch's alleged false advertising, plaintiff still fails to demonstrate the distributors' control and/or participation in the misconduct.").  Nor is a conclusory allegation that an entity "promoted and marketed" the product sufficient, particularly if that entity made no representations of its own.  *Hydroxycut*, 801 F. Supp. 2d at 1012; *see Prudencio*, 831 F. App'x at 810 (affirming dismissal of UCL claim against distributor because "[m]erely attaching that term [marketing] to a product distributor . . . and a manufacturer's foreign subsidiary . . . is insufficient to create an actionable inference that those entities played a role in product labels").

Here, Plaintiffs plead no facts establishing Scotts' participation in or control of any of the allegedly unlawful conduct.  They allege only that Scotts distributed and marketed *one* of the Products—Roundup® Weed & Grass Killer Super Concentrate.  Compl. ¶ 17.  But, regardless of who distributed which products, Plaintiffs allege that Monsanto, Seamless,[2] and Bayer are "the registrants and/or manufacturers of the Products," not Scotts.  Compl. ¶ 53.  And while Plaintiffs baldly allege that Scotts "performed some formulation work for Monsanto" (Compl. ¶ 36), they do not connect that allegation to the Products at issue in this case, much less plead that NNG levels in any Product for which Scotts performed such unspecified "formulation work" *ever*

---

[2] Plaintiffs briefly allege, without any factual support, that Scotts "also unlawfully sold and distributed unregistered, illegal and misbranded pesticides . . . through Seamless Control." Compl. ¶ 36.  But, putting aside that Plaintiffs do not plausibly allege any claims against Seamless either, Plaintiffs do not allege any facts showing that Scotts is liable for Seamless's conduct.  Seamless was a separate entity, and it has now been merged with and into Monsanto.  *See* Dkt. No. 14 at 1 n.1.  Moreover, Plaintiffs fail to set forth any specific allegations tying The Scotts Company LLC to Seamless ownership (and they in fact name the wrong Scotts entity under any scenario—SMG ITO Holdings, Inc. previously had an ownership interest in Seamless, not The Scotts Company LLC).  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (noting, on a motion to dismiss, courts may take judicial notice of "matters of public record").  And Plaintiffs make no allegations seeking to pierce the corporate veil.

exceeded one part per million NNG or, even if they did, that Scotts was ever aware of any such issue.

Nor do Plaintiffs adequately allege that Scotts participates in or has any control over the registration of the Products or the content of their labels. To the contrary, Plaintiffs concede that *Monsanto, Seamless, and Bayer* are "the registrants . . . of the Products." Compl. ¶ 53; *see also* Compl. ¶¶ 38, 42, 47. By Plaintiffs' own allegations, the "registration applicants"—not Scotts—are responsible for "provid[ing] a Confidential Statement of Formula and certify[ing] the ingredients and other substances within a pesticide," including "set[ting] an upper certified limit for impurities of toxicological significance like NNG." Compl. ¶ 95; *see also* Compl. ¶¶ 171-74. The registrants are likewise responsible for the content of the product labeling. Compl. ¶ 53 ("As the registrants and/or manufacturers of the Products, Monsanto, Seamless Control and Bayer CropScience had 'a continuing obligation to adhere to FIFRA's labeling requirements.'"); *see also* Compl. ¶¶ 302-12 (omitting Scotts from label-based warranty allegations). Plaintiffs thus concede that Scotts had no role in the registration of any Product or its labeling. And bald allegations that Scotts "marketed and distributed" one of the Products are "insufficient to create an actionable inference that" Scotts "played a role in product labels." *Prudencio*, 831 F. App'x at 811.

Assuming *arguendo* that NNG levels in Super Concentrate product exceeded one ppm and that Scotts knew about that (facts that have not been pleaded), and even if it were true that the labeling misrepresented that fact (which it does not), conclusory allegations that Scotts "knew about the deceptive marketing" are inadequate to establish its participation and control and hold it liable under the UCL. *Hydroxycut*, 801 F. Supp. 2d at 1012. California law simply does not permit "a false advertising claim to proceed against a distributor whose only alleged wrong was selling a mislabeled product." *Better Booch*, 2018 WL 4378700, at *11.[3]

---

[3] To the extent Plaintiffs contend that their UCL claims under the "unfair" and "unlawful" prongs do not require Scotts' personal participation or unbridled control, they are mistaken as a matter of law. Because Plaintiffs have not plausibly alleged Scotts failed to disclose any information it had a duty to disclose (*see infra* Section III), they do not state a viable claim under the unfair prong of the UCL. *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.5 (9th Cir. 2012)

### B. Plaintiffs Failed To Serve The Required Presuit Notice And Demand On Scotts And Thus Cannot Pursue A UCL Claim Premised On A Violation Of The CLRA.

To the extent that Plaintiffs' UCL claim against Scotts is premised on an alleged violation of the CLRA, it must be dismissed because Plaintiffs failed to serve a written presuit notice and demand on Scotts. To bring a claim for damages under the CLRA, a plaintiff must provide written notice to "the person alleged to have employed or committed methods, acts, or practices declared unlawful by" the CLRA and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services" within 30 days of commencing the action. Cal. Civ. Code § 1782(a). UCL claims predicated on violations of the CLRA are subject to dismissal for failure to provide presuit notice. *Peacock v. 21st Amend. Brewery Cafe, LLC*, 2018 WL 452153, at *8 (N.D. Cal. Jan. 17, 2018) (holding that "[a]ny of Peacock's UCL claims predicated on the CLRA claim are also dismissed" where it failed to comply with CLRA notice requirement). Because Plaintiffs admit they only served a notice and demand on Monsanto, Bayer, and Seamless (Compl. ¶¶ 58, 224), their claim that Scotts "engaged in unlawful practices [under the UCL] by . . . violating . . . the CLRA" (Compl. ¶ 362) should be dismissed.

### III. PLAINTIFFS FAIL TO ALLEGE THEIR CLAIMS AGAINST SCOTTS PLAUSIBLY OR WITH THE PARTICULARITY REQUIRED BY RULE 9(B).

The basic factual underpinnings of Plaintiffs' claims are not plausibly alleged as to any Defendant. Plaintiffs do not (1) cite a single instance of *any* of the Products at issue *ever* being sold with NNG levels above one ppm; (2) adduce any evidence that such levels have *ever* been reached post-sale in products used and stored in accordance with label directions; nor (3) provide any scientific basis to conclude that, even if NNG levels did occasionally exceed one ppm, that would pose any health risk to consumers.

---

("[T]he failure to disclose a fact that a manufacturer does not have a duty to disclose . . . does not constitute an unfair or fraudulent practice."); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867 (9th Cir. 2018) ("Mars' failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical."). Nor can Plaintiffs allege a viable claim under the unlawful prong, as they concede that Scotts is not involved in the registration or labeling of the Products and therefore had no obligation to disclose the information Plaintiffs allege was required by federal and state law. *See* Compl. ¶¶ 362-63.

But while their allegations as to all Defendants are thin, Plaintiffs' factual allegations as to Scotts are nearly *nonexistent*.

### A. Plaintiffs Do Not Plausibly Allege Fraud, Deceit, Or Misrepresentation by Scotts.

Plaintiffs' claims of fraudulent concealment (Count VI) and common-law fraud (Count VII) against Scotts are not plausible and fail as a matter of law. At a minimum, those claims require Plaintiffs to allege *some* misrepresentation by Scotts. *Kearns*, 567 F.3d at 1126. But, as shown above, Plaintiffs have not alleged that Scotts made or had a role in any alleged misrepresentation about the lone Product Plaintiffs allege it marketed and distributed.

Nor do Plaintiffs plausibly allege that Scotts had any *duty* to disclose anything to them regarding NNG. Nondisclosure or concealment only "constitute actionable fraud[] (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018) (quoting *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588 (Cal. Ct. App. 2011)). The first and last factors are easily disposed of. Plaintiffs do not allege that Scotts owes them a fiduciary duty. They likewise do not allege that Scotts made *any* representations, partial or otherwise.

Although they assert in conclusory fashion that "representations and omissions were known exclusively to, and actively concealed by, *Defendants*" (Compl. ¶ 325; *see also* Compl. ¶¶ 191, 244, 341), Plaintiffs plead no facts to support *Scotts'* supposed knowledge of any alleged instances of NNG levels exceeding one ppm—and certainly none in the lone Product they contend Scotts markets and distributes. To the contrary, Plaintiffs' allegations all pertain to *Monsanto's* alleged knowledge of products *Monsanto* allegedly manufactured. *See* Compl. ¶¶ 9-12, 122-47. The only such allegation that even mentions Scotts is to an internal *Monsanto* email

that does not suggest Scotts ever distributed or formulated any Product with NNG levels above one part per million. *See* Compl. ¶¶ 138-39.[4]

Further, Plaintiffs do not plead any facts to support their conclusory assertion that Scotts actively concealed any materials facts. Even assuming Plaintiffs had plausibly alleged that Scotts was aware of the alleged unlawful conduct (and they did not), "[m]ere nondisclosure does not constitute active concealment." *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013). "Rather," active concealment requires "affirmative acts on the part of the Defendants in hiding, concealing or covering up the matters complained of." *Id.* (quoting *Lingsch v. Savage*, 29 Cal. Rptr. 201, 204 (Cal. Ct. App. 1963)). Plaintiffs plead no facts suggesting that Scotts took affirmative steps to conceal anything. They allege only, and without any supporting facts, that "Defendants . . . actively concealed the safety hazard and defect with the Products." And they allege only that *other parties* had a duty to include an expiration date on the label. Compl. ¶ 53.

**B. Plaintiffs Do Not Plead Their Fraud Or Fraud-Based UCL Claims Against Scotts With Particularity.**

Plaintiffs also fail to plead their fraud, fraudulent concealment, and UCL claims against Scotts with particularity. Rule 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." Its heightened pleading standards apply not just to causes of action for fraud, but also to UCL claims grounded in fraud. *Kearns*, 567 F.3d at 1127. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1124. Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding

---

[4] According to the complaint, the email noted that Scotts was "faced with increasing nitrite levels in their city water supply" and Monsanto was issuing "spec waivers for nitrite" in "water it used to formulate glyphosate products nitrite levels" and that "the nitrite level is linked to NNG." Compl. ¶ 139. But the complaint does not and cannot allege that any "spec waiver" in formulation water would have caused above-spec levels of NNG in formulated products or any basis to infer, for example, that formulated product was not tested for NNG to ensure that it remained below the one ppm level.

his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (alterations in original) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)). "[A]t a minimum," the complaint must "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Id.* at 765 (alterations in original) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

Each of Plaintiffs' claims against Scotts—for fraudulent concealment (Count VI), common law fraud (Count VII) and under the UCL (Count X)—"rely entirely on [the same] course of [allegedly fraudulent] conduct" and are thus grounded in fraud. *Kearns*, 567 F.3d at 1125. Specifically, Plaintiffs aver that Defendants sold the Products "even though they knew . . . that the Products were defective because they could (and almost invariably would) degrade into higher and higher levels of NNG that would ultimately exceed regulatory limits," concealed those facts from regulators and consumers, and misled consumers into believing "the Products will remain suitable for use indefinitely." Compl. ¶¶ 18, 22; *see* Compl. ¶¶ 17-22, 360-65. Plaintiffs' claims are thus "are predicated on misrepresentations and omissions that are 'grounded in fraud'" and subject to Rule 9(b)'s heightened pleading requirements. *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JFHRL, 2009 WL 3320486, at *6 (N.D. Cal. Oct. 13, 2009).

Though Plaintiffs' allegations against *all* Defendants fall short of those heightened pleading requirements, this problem is even more pronounced for Scotts. Plaintiffs utterly fail to "identif[y] the role of [Scotts] in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 765 (quoting *Moore*, 885 F.2d at 541). As described above, Plaintiffs only allege that Scotts marketed and distributed one of the Products and did some unspecified "formulation work for Monsanto." Plaintiffs plead no facts about Scotts' alleged knowledge of any Products exceeding one part per million NNG, concealment of any such knowledge, or participation in the registration or labeling of the Products. The complaint therefore does not state the "what, when, where, or how" of the fraud charged to Scotts.

## IV. PLAINTIFFS' UNJUST ENRICHMENT COUNT AGAINST SCOTTS FAILS ON MULTIPLE GROUNDS.

Plaintiffs' unjust enrichment count fails for at least three distinct reasons. ***First***, unjust enrichment is not a standalone claim. Under California law, "[u]njust enrichment is not a cause of action . . . but rather a general principle, underlying various legal doctrines and remedies . . . synonymous with restitution." *Duus v. Snow*, 2021 WL 5027706, at *2 (Cal. Ct. App. Oct. 29, 2021) (internal quotation marks omitted); *see also City of Oakland, v. Oakland Raiders*, 2022 WL 4243101, at *10 (Cal. Ct. App. Sept. 15, 2022) ("There is no cause of action in California labeled 'unjust enrichment.'"); *Bank of New York Mellon v. Citibank*, N.A., 8 Cal. App. 5th 935, 955 (Cal. Ct. App. 2017); *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (Cal. Ct. App. 2018); *but see Leonov v. JPMorgan Chase Bank, No. 2:16-cv-02483-AB-AS*, 2016 U.S. Dist. LEXIS 195128, at *16-17 (C.D. Cal. Sep. 16, 2016) (referencing minority view that "unjust enrichment" has been recognized in certain limited circumstances). And federal courts interpreting California law hold the same: "California does not recognize a separate cause of action for unjust enrichment." *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021); *see Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 829 (N.D. Cal. 2022). As such, courts will dismiss "stand-alone claims for unjust enrichment," as this Court should do here. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020); *see e.g., Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012); *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010).

***Second***, setting aside the question whether a claim for unjust enrichment can stand alone under California law, Plaintiffs' unjust enrichment count is "entirely duplicative of" their UCL claims against Scotts because it relies on the same factual allegations. *See* Compl. ¶ 379; *Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 188 (Cal. Ct. App. 2007); *Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *7 (N.D. Cal. June 14, 2021). Because it must "rise or fall" with their UCL claims, Plaintiffs' cause of action for unjust enrichment against Scotts should also be dismissed. *Robie*, 2021 WL 2548960, at *6-7; *Berryman*, 62 Cal. Rptr. 3d at 188.

*Finally*, Plaintiffs do not plead facts sufficient to state an actionable benefit was conferred upon Scotts that would even sustain a claim for unjust enrichment. Plaintiffs must identify a benefit that is "measurable" and "properly attributable to" the alleged misconduct. *Uzyel v. Kadisha*, 116 Cal. Rptr. 3d 244, 266 (Cal. Ct. App. 2010). That benefit cannot be "unduly remote." *Id*. Here, Plaintiffs allege only that they have "conferred a benefit on the Defendants by purchasing the Products" and "Defendants have been unjustly enriched in retaining the revenues from Plaintiffs." Compl. ¶¶ 378-79. But what role did Scotts play and what specific benefit was conferred upon Scotts? Plaintiffs do not say. Plaintiffs do not plead sufficient facts to show that *Scotts* sold the Products at issue. Nor could they since Scotts acts as "distributor and marketer," not as a manufacturer or reseller. Compl. ¶ 17. Plaintiffs' failure to plead facts identifying a "measurable" alleged benefit "properly attributable" to Scotts' alleged misconduct also dooms their unjust enrichment claim.

## CONCLUSION

For the reasons stated above, and in Monsanto's concurrent Motion, the Court should dismiss Plaintiffs' claims against Scotts (Counts VI, VII, X, and XI) with prejudice.

Dated:  September 23, 2022                     Respectfully Submitted,

*/s/ Stephanie Dilworth*
Stephanie Dilworth (SBN 342109)
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Tel:  (415) 626-3939
Fax:  (415) 875-5700
sdilworth@jonesday.com

Jeffrey J. Jones (*pro hac vice*)
JONES DAY
150 West Jefferson, Suite 2100
Detroit, Michigan 48226
Tel:  (313) 733-3939
Fax:  (313) 230-7997
jjjones@jonesday.com

Margaret M. Dengler (*pro hac vice*)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Tel:  (614) 469-3939
Fax:  (614) 461-4198
mdengler@jonesday.com

*Counsel for Defendant*
*The Scotts Company LLC*

## CERTIFICATE OF SERVICE

I certify that on the September 23, 2022, I electronically filed the foregoing THE SCOTTS COMPANY LLC'S NOTICE OF AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

*/s/ Stephanie Dilworth*
Stephanie Dilworth

*Counsel for The Scotts Company LLC*