September 26, 2022

The Honorable Alex Tse, Magistrate Judge
United States District Court for the Northern District of California
450 Golden Gate Avenue, 15th Floor
San Francisco, CA 94102

      Re:    *Peter and Cathy Engilis v. Monsanto Company.*, 3:19-cv-07859-VC – Monsanto's
             Motion to Compel Production of Plaintiff Expert Dr. Ambrose Charles's Reliance
             Materials

Dear Judge Tse:

      A discovery dispute has arisen in *Peter and Cathy Engilis v. Monsanto Company*, 3:19-cv-07859-VC, a member case of *In Re: Roundup Products Liability Litigation*, related to production of Plaintiff's expert's reliance materials.  In accordance with the Court's Standing Order V.II.B., Defendant Monsanto Company ("Monsanto") and Plaintiff conducted a video meet-and-confer on September 19, 2022.  During the meet-and-confer, the parties agreed that Plaintiff would produce a copy of a settlement form reviewed by Plaintiff's expert with redactions of the dollar amounts that counsel valued the case.  However, Plaintiff continues to withhold a client info sheet, described as a medical chronology, and reviewed by Plaintiff's expert, on the grounds that the document is privileged and attorney work product.  Monsanto's position is that the document was considered by Plaintiff's expert and is therefore discoverable under Federal Rule of Civil Procedure 26. Plaintiffs' position is that the document is opinion work product and is therefore entitled to absolute protection and is not discoverable.  Alternatively, Plaintiffs propose that Your Honor conduct an *in camera* review of the medical chronology prior to ordering its disclosure to Monsanto.  Accordingly, the parties submit their positions on the issue for judicial resolution and thank the Court in advance for its attention to this matter.

**Monsanto's Position:**

      Pursuant to Rule 26(a)(2)(B) and Rule 26(b)(4)(C) of the Federal Rules of Civil Procedure, Monsanto respectfully moves to compel the production of a "Client Info Sheet," that Plaintiff's toxicologist, Dr. Ambrose Charles, admitted he considered in rendering his opinions.  Plaintiff claims that they are "clawing back" that document because it was attorney work product and inadvertently produced, but the applicable law provides that ***any*** document considered by an expert, even one inadvertently provided by counsel, must be disclosed pursuant to Federal Rule of Civil Procedure 26.

      Dr. Charles was disclosed in this matter on June 23, 2022.  *See* Peter Engilis Expert Witness Disclosures, attached as Exhibit A.  Plaintiff's expert disclosures specified that Dr. Charles would provide testimony regarding "general causation issues concerning toxicology . . . . [and] on issues of specific causation (i.e., proximate and but-for causation) regarding whether exposure to glyphosate and/or glyphosate-based formulated products was a cause or substantial factor contributing to causing the Plaintiff's development of non-Hodgkin's lymphoma and other cancers."  Ex. A at 2.  In his expert report (relevant excerpts attached as Exhibit B), Dr. Charles concludes that Plaintiff's chronic lymphocytic lymphoma was caused by Roundup®.  *See* Ex. B at 30.

In reaching that conclusion, Dr. Charles stated that he relied on "all pertinent documents[1-16] related to the Plaintiff Mr. Peter Engilis, provided to me by the Schlesinger Law Offices." *Id.* at 1. The documents provided to Dr. Charles by Plaintiff's counsel included "Document 12. Peter Engilis, Client Info Sheet, Schlesinger Law Offices, 13, pp1-63." *Id.* at 1, 31.

A week prior to Dr. Charles' deposition, on August 10, 2022, Monsanto's counsel e-mailed Plaintiff's counsel requesting the Client Info Sheet,[1] which is discoverable because Dr. Charles considered it in reaching his opinions. *See* Exhibit C, E-Mails between J. Kalas and J. Haberman, at 2. Plaintiff's counsel initially ignored that e-mail, only responding the day before the deposition after multiple follow-up attempts. *Id.* at 1-2. Then, instead of producing the Client Info Sheet, counsel claimed that: "We had made an inadvertent disclosure to our expert of privileged material. Our expert seemingly listed this material on his reliance list. We are clawing that back." *Id.* at 1.

During Dr. Charles' deposition, on August 17, 2022, Dr. Charles explained that he was careful to review **_all_** the facts in the documents provided to him by Plaintiff's counsel:

> Q. Now going back to Exhibit 3 . . . you said, "I have reviewed all pertinent documents," and then you have a—a superscript, 1 through 16—related to the plaintiff, Mr. Peter Engilis, provided to me by the Schlesinger Law Offices, Fort Lauderdale, Florida, which are considered as facts in this case. Did I read that correctly?
>
> A. That's correct.
>
> Q. Okay. And when you were putting together this report, you were careful to review all of the facts of this case from those documents that were provided to you in order to reach your opinions; right?
>
> A. Yes.

Charles Dep. Tr. at 23:8-23., attached as Exhibit D. Dr. Charles further testified that his normal practice is to "**look at everything** and then pick out relevant information that I need to make out my opinion." *Id.* at 24:2-4 (emphasis added). Dr. Charles then confirmed that the Client Info Sheet was among the "everything," i.e., the documents provided by counsel, that he considered in rendering his opinion:

> Q. Okay. And then document 12 and document 14—document 12 says it's a client info sheet. Do you see that?
>
> A. Yes.
>
> Q. **Okay. And those are documents you received from Mr. Haberman; correct?**
>
> A. **That's correct.**

*Id.* at 30:9-18 (emphasis added).

Rule 26(a)(2)(B) provides that a testifying expert must provide a written report, which includes "the facts or data considered by the witness in forming" his opinion. Moreover, Rule

---

[1] Monsanto also requested additional materials, but, as noted above, the parties have since agreed that those materials will be produced to Monsanto, with redactions for the dollar amount of Plaintiff counsel's settlement valuation.

26(b)(4)(C) specifically exempts from attorney-client privilege or the work product doctrine "facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed." The term "considered" includes "all information that an expert reviews or generates, regardless of whether the experts actually rely on those materials as a basis for their opinions." *Genentech, Inc. v. Trs. of the Univ. of Pa.*, No. C 10-2037 LHK (PSG), 2012 U.S. Dist. LEXIS 35340, at *4 (N.D. Cal. Mar. 15, 2012); *see also United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995) ("Plaintiff's objection that the documents are not discoverable because [the expert] did not consider them in reaching his opinion is without merit. Where the expert has acquired information relevant to his opinion, [a party] should not be bound by his statement that he did not consider it."). Thus, Rule 26(b)(4)(c)'s disclosure requirements "encompass any material considered by the expert, **from whatever source**, that contains factual ingredients." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 862 (9th Cir. 2014) (emphasis added).

Accordingly, under Rule 26, Monsanto is entitled to production of the Client Info Sheet because it is unquestionably information that Dr. Charles considered in rendering his opinion. Indeed, Dr. Charles (1) included the Client Info Sheet in the list of documents that he reviewed, (2) explicitly confirmed that it was provided to him by counsel, and (3) testified that he "look[s] at everything provided to him." *See infra* at 1-2; *cf. Great-West Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*, No. 2:11-cv-02082-APG-CWH, 2013 U.S. Dist. LEXIS 135750, at 52-53 (D. Nev. Sep. 23, 2013) (requiring disclosure where an expert testified that he "looked at the documents that were provided to me . . . went through all of them, and [] focused in on portions of them and not on some of the others.").

Plaintiff's argument that the Client Info Sheet is "privileged," "work product," and was "inadvertently" provided to Dr. Charles is unavailing. Tellingly, not a single case relied on by Plaintiff relates to the issue of a document disclosed—inadvertent or not—to a testifying expert. Instead, the cases relied on by Plaintiff address a different issue—waiver of the work-product doctrine and/or attorney client privilege. To be clear, "[t]e disclosure of information to an expert occurs in a different context than Fed. R. Evid. 502." *Great-West Life*, 2013 U.S. Dist. LEXIS 135750, at *48. The attorney-client privilege and word-product protections in Fed. R. Evid. 502 are irrelevant to the analysis and Monsanto's request must be evaluated "under the expert reporting requirements of Rule 26." *Id.*

Thus, the relevant question here is not waiver of a privilege or immunity, but rather whether the documents contain factual information that was considered by Dr. Charles. As multiple courts have observed, "[i]t is irrelevant whether the documents were inadvertently sent or asserted as privileged or protected work product. All documents . . . [provided by plaintiff to] her expert that are deemed to have been considered by the expert, are discoverable." *Fajardo v. Pierce Cty.*, No. C08-5136 RBL, 2009 U.S. Dist. LEXIS 58166, at *8 (W.D. Wash. June 19, 2009); *accord Great West Life*, 2013 U.S. Dist. LEXIS 135750, at *48; *Garfinkel v. Gerbaz*, No. 08-cv-02462-RPM-LTM, 2009 U.S. Dist. LEXIS 119631, at *6 (D. Colo. Dec. 2, 2009).

Accordingly, because the Client Info Sheet, a chronology of factual information, was considered by Dr. Charles in rendering his opinion, as delineated in his report and confirmed in his sworn testimony, it is discoverable and must be produced to Monsanto. Monsanto respectfully requests that the Court grant its motion to compel production of the Client Info Sheet.

**Plaintiff's Position:**

The medical chronology at issue is simply a synthesis of materials that Monsanto already has—namely, medical records and deposition testimony. Significantly, this chronology or synthesis of the medical records and deposition testimony in this case was prepared by an attorney, or in other words, is an attorneys' assessment of the case.

Under the attorney work-product doctrine, material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or in preparing for trial is immune from discovery. *Hickman v. Taylor*, 329 U.S. 495, 509–12 (1947); Fed. R. Civ. P. 26(b)(3). One of the primary purposes of the attorney work-product doctrine is to prevent the opposing party/counsel from exploiting the other party's efforts to prepare for litigation. *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 576 (9th Cir. 1992). The attorney work-product doctrine encompasses and protects from disclosure an attorneys' "interviews, statements, memoranda, correspondence [and] briefs." *Hickman,* 329 U.S. at 511.

There are two kinds of work product: ordinary work product and opinion work product. Ordinary work product, or "fact" work product includes raw factual information, while opinion work product includes mental statements, impressions, conclusions, opinions or legal theories. *See, e.g., Baker v. General Motors Corp.,* 209 F.3d 1051, 1054 (8th Cir. 2000); *Chaudhry v. Gallerizzo,* 174 F.3d 394, 403 (4th Cir. 1999); *Green v. Baca,* 226 F.R.D. 624, 652 (C.D. Cal. 2005); *Kintera, Inc. v. Convio, Inc.* 219 F.R.D. 503, 507 (S.D. Cal. 2003); *United States ex rel. Bagley v. TRW, Inc.,* 212 F.R.D. 554, 559 (C.D. Cal. 2003).

With respect to attorney opinion work product, "no showing of relevance, substantial need or undue hardship should justify compelled disclosure" of any such materials. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730, 734 (4th Cir. 1974). Fed. R. Civ. P. 26(b)(3) operates as an absolute, and not a qualified, limitation on the production of such work product materials. *Id.; see also In re Grand Jury Proceedings,* 473 F.2d 840, 848 (8th Cir. 1973) (attorney opinion work product "is absolutely, rather than conditionally, protected"); *Alexander v. Federal Bureau of Investigation,* 198 F.R.D. 306, 312–14 (D.D.C. 2000) (***documents, notes and legal memoranda prepared by attorney "is not discoverable"***) (emphasis added); *Newport Pacific Inc. v. County of San Diego,* 200 F.R.D. 628, 632–35 (S.D. Cal. 2001) (attorneys' assessment of litigation is absolutely protected from disclosure); *Schachar v. Am. Academy of Ophthalmology, Inc.,* 106 F.R.D. 187, 191 (N.D. Ill. 1985) (attorney opinion work product is entitled to absolute protection). The attorney-prepared chronology at issue here is exactly the type of opinion work product that the United States Supreme Court and Federal Rule of Civil Procedure 26 have singled out for absolute protection.

But even if the chronology at issue here were considered ordinary or non-opinion work product, Monsanto would be required to make a showing of substantial need or undue hardship of the materials. *See* Fed. R. Civ. P. 26(b)(3). Monsanto cannot even meet the burden for ordinary work product as the same materials discussed throughout the entirety of the chronology are materials which Monsanto already has—Plaintiffs' medical records and the deposition transcripts. As a result, Monsanto cannot meet the substantial need or undue hardship test.

Moreover, the attorney work product doctrine provides protection against disclosure to adversaries and is not so easily waived. *See In re Syncor ERISA Litig.,* 229 F.R.D. 636, 645 (C.D. Cal. 2005). Almost by definition, all documents prepared by Plaintiffs' attorney which relate to the "litigations" are protected from disclosure because the work product protection applies to all

materials "that would not have been generated but for the pendency or imminence of litigation." *Kelly v. City of San Jose,* 114 F.R.D. 653, 659 (N.D. Cal. 1987).   Contrary to Monsanto's bald and unsupported contentions, the work product immunity has not been 'waived' merely because the document inadvertently appears on Dr. Charles' reliance list.   While Dr. Charles may have reviewed the chronology at some point, the record and his deposition testimony make clear that he reviewed the medical records and deposition testimony himself and conducted his own analysis and interpretations.

Alternatively, should the Court be inclined to order production of the chronology to Monsanto, Plaintiffs request that the Court first conduct an *in camera* review of the document.  *See United States ex rel. Yannacopoulos v. General Dynamics*, 231 F.R.D. 378, 384 (N.D. Ill. 2005) ("[T]he more prudent means of determining if the disclosure statement, in whole or in part, is discoverable is by reviewing the disputed document *in camera* to determine what materials may be discoverable as ordinary work product as followed by the majority of courts that have addressed this issue."); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 144 F.R.D. 396, 401–02 (D. Colo. 1992) (conducting an *in camera* review prior to production of a disclosure statement).

Respectfully submitted,

/s/ John M. Kalas

John M. Kalas
Hollingsworth LLP
1350 I Street, NW
Washington, DC 20005
(202) 898-5800
jkalas@hollingsworthllp.com

*Attorneys for Monsanto Company*

/s/ Jeffrey L. Haberman

Jeffrey L. Haberman
SCHLESINGER LAW OFFICES, P.A.
1212 SE Third Avenue
Ft. Lauderdale, FL 33316
954-467-8800
jhaberman@schlesingerlaw.com

*Attorneys for Plaintiffs*