# Exhibit D

```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

 4   IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION
     MDL 2741
 5
     This document relates to:
 6   Peter Engilis v. Monsanto Company,

 7              Case No. 3:19-cv-07859-VC

 8    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

 9

10
     REMOTE VIDEOTAPED DEPOSITION OF AMBROSE CHARLES, PhD
11

12                  August 17, 2022
                9:08 a.m. to 12:45 p.m.
13
               REPORTED BY ANITA KORNBURGER
14           REGISTERED PROFESSIONAL REPORTER

15

16

17    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

18

19

20

21

22

23

24

25
```

```
 1   this in your mind.  I am not.  So I cannot just
 2   jump into you, sir.
 3        Q.   That's fine.  We'll come back to this
 4   affidavit once we're back into the -- back into the
 5   facts a bit more and --
 6        A.   Okay.
 7        Q.   -- see if we can agree to things.
 8        A.   Okay.  Thank you.
 9        Q.   Exhibit 5.  This is that updated CV;
10   right?
11        A.   Exhibit 5.  Yes.
12        Q.   Okay. And this CV lays out -- well,
13   strike that.
14             Is this the CV you use only for
15   litigation, or is it a CV you also use
16   professionally?
17        A.   I prepared this for mostly litigation.
18   Most of the material is here.
19        Q.   Okay.
20        A.   And other -- there are other experiences,
21   like leadership and management training and all not
22   included in this one, which is not relevant.
23        Q.   Okay.  Exhibit 6 and 7 are two invoices
24   that were provided to us.  One that is that
25   June 24th invoice you referred to, and the second
```

```
 1   is a July 5th invoice for your deposition time, and
 2   then I guess deposition prep and parking.
 3              And the total dollar amount for both
 4   of them -- the first one's for 28,800, and the
 5   second one is for $5,523.82.  Does that seem right
 6   to you?
 7        A.   Yes.
 8        Q.   Okay.  Now going back to Exhibit 3, you
 9   have -- if I just go to the first sentence of your
10   expert report, you said, "I have reviewed all
11   pertinent documents," and then you have a -- a
12   superscript, 1 through 16 -- "related to the
13   plaintiff, Mr. Peter Engilis, provided to me by the
14   Schlesinger Law Offices, Fort Lauderdale, Florida,
15   which are considered as facts in this case."
16              Did I read that correctly?
17        A.   That's correct.
18        Q.   Okay.  And when you were putting together
19   this report, you were careful to review all of the
20   facts of this case from those documents that were
21   provided to you in order to reach your opinions;
22   right?
23        A.   Yes.
24             MR. HABERMAN:  Objection.
25   BY MR. KALAS:
```

Case 3:16-md-02741-VC   Document 15534-4   Filed 09/26/22   Page 5 of 9

Ambrose Charles, Ph.D.

Case 3:16-md-02741-VC   Document 15534-4   Filed 09/26/22   Page 5 of 9

Ambrose Charles, Ph.D.

```
 1        Q.   Okay.
 2        A.   I normally look at everything and then
 3   pick out relevant information that I need to make
 4   out my opinion.
 5        Q.   Okay.  And the -- this report that's
 6   written here, are these your words or somebody
 7   else's words?
 8        A.   I'm the sole reviewer.  I am the one who
 9   typed it.  I write it.  I correct it.  I print it
10   and I send the report.  There is no one else
11   working for me.
12        Q.   Okay.  And just going down to Exhibits 1
13   through 16, Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10
14   are sets of medical records; right?
15        A.   Yeah, I believe so.
16        Q.   Okay.  And look through your report at
17   any time.  I'm at pages 30 to 31 looking at that.
18             And those medical records were
19   provided to you by plaintiff's counsel; right?
20        A.   Right.
21        Q.   Okay.  And you reviewed those carefully
22   in order to inform your opinions on the facts in
23   this case; right?
24        A.   Yes.
25        Q.   Okay.
```

```
 1      A.   As much as possible.
 2      Q.   Okay.  And then Exhibits 11, 12, 13, 14,
 3  15, and 16, those are litigation documents; right?
 4      A.   That's correct.
 5      Q.   Okay.  And you reviewed those carefully
 6  to inform your opinions in this case; right?
 7      A.   I look at all those things, you know, and
 8  when I -- when you say "review," I review only
 9  relevant matters pertaining to the case.  Other
10  things, no.
11      Q.   Okay.
12      A.   So I think there are documents there that
13  doesn't belong to me and I don't pay attention to
14  that.  But I list everything that I received.
15      Q.   Okay.  You said there's documents there
16  that don't belong to me and I don't pay attention
17  to that.  I guess I don't understand what you mean
18  by that.  Let's take them one at a time.
19      A.   Yeah.
20      Q.   Kathy Engilis deposition, pages 1
21  through 71, 12/13/2021.  You reviewed that document
22  in reaching your opinions; right?
23      A.   That is number 16?
24      Q.   Number 11, sir.
25      A.   Yes.  Yes, I read that.
```

 1   to the bottom, refers to three documents, documents
 2   12, 14 and 15.  Do you see that?
 3         A.   Again, back to the reference?
 4         Q.   Nope, nope.  I'm asking about the e-mail
 5   exchange.  Do you see the e-mail exchange asks
 6   about documents 12, 14 and 15?
 7         A.   E-mail exchange.  I only have
 8   to eight -- okay, let me look at further.  I only
 9   have eight here.  Eight one is Haberman e-mail
10   exchange.
11         Q.   Right.
12         A.   I don't have anything --
13         Q.   Yeah.  No, no.  Exhibit 8, that's what
14   I'm asking about.  If you go to the very bottom --
15         A.   Oh, okay.
16         Q.   An e-mail sent on Wednesday, August 10th,
17   at 10:06 a.m.  It asks for documents 14 and 15.  Do
18   you see that?
19         A.   Okay, okay.  I see "Please identify with
20   specificity provided documents 14 and 15 cited."
21   Okay.  Okay.
22         Q.   Yep.  And then if you go up one more, it
23   also says, "Please also provide document 12";
24   right?
25         A.   Oh, yes.

```
 1       Q.   Okay.  Then going back to Exhibit 3,
 2   which is your expert report --
 3       A.   Okay.
 4       Q.   -- if you go down to page 31, starting
 5   with document 15, document 15, the Roundup
 6   affidavit, is what we've marked as Exhibit 4;
 7   right?
 8       A.   Yes, yes.
 9       Q.   Okay.  And then document 12 and
10   document 14 -- document 12 says it's a client info
11   sheet.  Do you see that?
12       A.   Yes.
13       Q.   Okay.  And document 14 says it's a
14   settlement form, final.  Do you see that?
15       A.   Yes.
16       Q.   Okay.  And those are documents you
17   received from Mr. Haberman; correct?
18       A.   That's correct.
19       Q.   Okay.  If we continue on, Dr. Charles,
20   what is the dose of glyphosate that needs to enter
21   someone's body to put them at an increased risk of
22   NHL?
23            MR. HABERMAN:  Objection.  You can
24   answer.
25            THE WITNESS:  What is the dose?
```

```
 1   BY MR. KALAS:
 2       Q.   Yes, sir.
 3       A.   What is the -- I'll repeat the question
 4   just so you make sure you hear it.
 5                What is the dose of glyphosate that
 6   needs to enter someone's body to put them at an
 7   increased risk of NHL?
 8            MR. HABERMAN:  Object to form.
 9            THE WITNESS:  I don't think --
10            MR. HABERMAN:  Improper hypothetical.
11            THE WITNESS:  -- we don't have a dose.
12   It is all just speculation saying that there is a
13   dose for any chemical to cause any disease.
14   BY MR. KALAS:
15       Q.   Okay.
16       A.   There is no dose, like in a human dose,
17   for any chemical to cause any kind of disease.  It
18   is not established, you know.  I don't think that
19   we have any human experimentation on that.
20       Q.   Well, I just want to make sure I
21   understand your answer.  You said cause; right?
22       A.   Yes.
23       Q.   My question wasn't about cause, okay?  So
24   I just want to make sure you heard my question.
25                My question was, what is the dose of
```