**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to: | Hon. Vince Chhabria |
| ALL ACTIONS | **JOINT STATEMENT RE: PROPOSED PFS** |

Plaintiffs' leadership and Monsanto's counsel hereby provide the following statements regarding competing Plaintiff Fact Sheets.

## I. Monsanto's Statement

At the September 7, 2022 Case Management Conference, the Court stated that the parties should submit a new PFS that does not "impose too much more of a burden on individual plaintiffs but maybe improves the ability of the fact sheet to weed out -- fact sheet requirement to weed out frivolous cases at the beginning." Monsanto's proposed PFS (Ex. A) does exactly that by requiring plaintiffs to provide more detailed information in the PFS so that cases can be evaluated at an early stage instead of in the middle of depositions.

The new detailed information requirement to collect and produce medical records and a more robust verification (including a counsel verification) sought in Monsanto's PFS are necessary and warranted as they will allow Monsanto, and Special Master Feinberg, to more efficiently assess (1) plaintiffs' alleged use of Roundup, and (2) their relevant medical history. Providing this information upfront in the PFS will assist Monsanto and Special Master Feinberg in identifying frivolous cases, foster earlier resolutions of potentially meritorious cases, and will further conserve judicial resources.

**A. New Questions on Roundup Use and Medical History**

The litigation experience to date – in both the MDL and state court proceedings – confirms that plaintiffs are rarely able to produce records of Roundup purchases or even leftover Roundup containers. Therefore, the only evidence of Roundup use is often times just the plaintiff's own explanations and historic photographs of the property where Roundup was allegedly used, which is often not uncovered until the plaintiff is deposed and expert site inspections take place. Monsanto's proposed additions to the PFS regarding the nature of a plaintiff's alleged use of Roundup – including where they used it, how often they used it, and how they used it – have proved to be vital in assessing

plaintiffs' cases. Requiring a more fulsome explanation of alleged use and both past and current photographs of the properties where Roundup was allegedly used with the PFS will allow Monsanto to analyze cases sooner to better identify potential frivolous cases early on, and further facilitate any settlements as part of Special Master Feinberg's program.

The information requested in Monsanto's PFS regarding Roundup use and plaintiff's medical history is routinely requested in other Roundup cases where interrogatories and requests for production are issued instead of a PFS. Plaintiffs' counsel make no argument that the information requested is improper or not relevant. Instead, it appears that plaintiffs' counsel only wish to delay the production of this information (or as addressed in Section I.D, *infra*, revise the questions to include qualifiers, such as "approximately" and "to the best of your recollection," which will allow a plaintiff to respond without providing certainty as to the veracity of their responses). Monsanto should not be required to wait until a plaintiff is deposed and experts are able to perform costly site inspections to find out about the scope of a plaintiff's alleged Roundup use or, even worse, that the information provided in the PFS is incorrect, incomplete, or was not filled out by the plaintiff. Monsanto is simply making the reasonable request that information regarding Roundup use — information plaintiff's counsel does not dispute is relevant — be provided sooner in discovery so that cases can be properly analyzed early on and considered for fast tracked resolution.

**B. Plaintiff's Collection and Production of Medical Record**

Monsanto's proposed PFS includes a request to provide additional medical information and medical records in the plaintiff's possession, and for plaintiff to collect from their healthcare providers certain medical records that provide proof of an NHL diagnosis, relate to the care and treatment of their NHL, and relate to a set of identified NHL risk factors. Plaintiff does not dispute that this information (including the list of NHL risk factors) is relevant. Monsanto is simply

requesting that this relevant information, which is routinely provided later in the litigation and often not until a plaintiff's healthcare providers are deposed, be produced with the PFS to allow for early case assessment and potential resolution.

Recognizing the importance of having a plaintiff provide a complete set of relevant medical records, not just the records they happen to have in their personal possession, MDL courts routinely require plaintiffs to collect and produce their medical records from their healthcare providers as a prerequisite to inclusions in final waves of MDL case work-ups; particularly where, as here, the defendant has made significant efforts to resolve the number of cases pending against it. *See, e.g.*, *In re Xarelto Prods. Liab. Litig.*, MDL No. 2592, Case Management Order #8, at Section V and Exhibit A (E.D. La. March 7, 2019) (requiring production of medical records as a prerequisite to inclusion in final wave of MDL case workups), *available at* https://www.laed.uscourts.gov/sites/default/files/xarelto/CMO8.pdf; *see also In re Fluoroquinolone Prods. Liab. Litig.*, MDL No. 2642 , Pretrial Order # 18, Docket No. 758, (D. Minn. Jan. 2, 2019) (docket control order requiring the same); *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, Case Management Order No. 126 at 2, 6-8, Docket No. 2716, (N.D. Ill. June 11, 2018)(docket control order requiring the same), *available at* https://ecf.ilnd.circ7.dcn/doc1/067120905246.pdf.

**C. Verifications and "Wet" Signatures**

Some of the key facts in this litigation are whether plaintiffs used Roundup, to what extent they used Roundup, and what type of NHL they were diagnosed with and when. Plaintiffs, and their counsel, should be required to do the minimal investigation necessary to provide this information with some type of certainty and under penalty of perjury. Monsanto's proposed new verification is consistent with other MDL Courts that have required more robust verifications from plaintiffs and

their counsel (and wet signatures).  *See, e.g.*, *In re Xarelto Prods. Liab. Litig.*, MDL No. 2592, Case Management Order #8, at Section V and Exhibit A (E.D. La. March 7, 2019) (requiring production of medical records as a prerequisite to inclusion in final wave of MDL case workups), *available at* https://www.laed.uscourts.gov/sites/default/files/xarelto/CMO8.pdf.

Further, verification by plaintiff and plaintiff's counsel is necessary so that Monsanto knows that the plaintiff, and not counsel, provided the information.  Without this more robust and dual verification, plaintiffs may simply change their answers later on, making it impossible for Monsanto to use the information to adjudicate the merits of a case from the outset.

**D. Plaintiffs' Proposed Insertion of Qualifiers**

Plaintiffs' counsel's proposed PFS would provide less information than the current PFS by adding qualifiers such as "approximately" and "to the best of your recollection."  These qualifiers would make the PFS virtually useless.  Plaintiffs have the burden of proof to provide the information requested in Monsanto's PFS to support their claims.  But, plaintiffs' counsel want to invite plaintiffs to provide ambiguous responses in the PFS which does not help to resolve these matters at an early stage and is contrary to the PFS's purpose.  These qualifiers would allow plaintiffs to change the information in the PFS at any given time, and delay any meaningful commitment to this key information until depositions and/or trial.

PFS in the MDL should not be used as a shield to prevent Monsanto from obtaining basic information that is readily available to the plaintiff and plaintiff's counsel.  Monsanto's proposed PFS requires plaintiffs to provide clearly relevant, reasonably detailed – but not unduly onerous to collect – information regarding their Roundup use and NHL diagnosis.  If plaintiffs cannot or do not want to provide the very basic information sought in Monsanto's proposed PFS, then the purpose of using the PFS "to weed out frivolous cases at the beginning" is achieved.

## II. Plaintiff Statement

Monsanto's stated reason for requesting amendments to the Plaintiff Fact Sheet (PFS) was that they wanted to add a few fields to ferret out non-viable cases. And as Monsanto points out the Court cautioned that any amended PFS not "impose too much more of a burden on individual plaintiffs . . . ." A review of its additions illustrates that Monsanto has other intentions as well. Monsanto's additions – which lengthened the PFS by 20 pages (the current PFS is 14 pages; Monsanto's revised PFS is 34 pages) – goes well beyond the scope of additional information that would allow Monsanto to determine whether a case is viable. As this Court may recall, the current PFS was the result of extensive meet and confers between the parties and a lengthy court hearing on September 13, 2018, at which point the Court made decisions on the proper contents for a PFS in this case. That PFS has governed this case for four years. And while the Court agreed with Monsanto that it could propose certain additional fields to learn additional relevant information to evaluate the viability of a case, the Court rejected Monsanto's request for a Lone Pine order and in no way suggested that the revised PFS could essentially substitute for a plaintiff's deposition. But that is precisely what Monsanto's proposal entails.

Plaintiffs attach to this Joint Statement two documents: (1) a clean version of an amended PFS incorporating any of Monsanto's proposed edits agreed to by Plaintiffs (Ex. B); and (2) a redline version of the proposal submitted by Monsanto (Ex. C). The Court should adopt Plaintiffs' revised version of Monsanto's proposed amended PFS and reject Monsanto's proposal.

Below are highlights of some of the reasons Monsanto's PFS revision goes way too far:

1. The example regarding Roundup usage in Section VII should be stricken. The example will be confusing for some clients, and Monsanto should not be advising plaintiffs how to respond to discovery; that is a responsibility of the individual plaintiff's attorney.

2. Section VII(K) should be stricken: it is unnecessary for Monsanto to know the identity of all individuals that witnessed plaintiff apply Roundup in order to gauge the viability of a plaintiff's case. There are no grounds for Monsanto to need that information now, particularly since the existence, or lack thereof, is not dispositive of a case. Of course, such discovery is appropriate and asked when a case is in active litigation. The only purpose for which Monsanto could want such information now is to send an investigator to interview identified potential witnesses, activity in which they engage in when cases are being prepared for trial. At this juncture, such information is unnecessary.

3. Section VII,L, deletes the requirement to identify all of the weeds, grasses and plants to which the plaintiff applied Roundup: as in No. 2 above, this information is not necessary at this juncture of the litigation. Monsanto will have ample opportunity to ask plaintiff these questions at their deposition at the appropriate time.

4. Section VII,M should be stricken: the clothing that a plaintiff wore while mixing and/or applying Roundup does not impact the viability of a case. What is more, plaintiffs typically do not wear a uniform when applying Roundup and it would be impossible to state what a plaintiff wore on each spraying event over potentially decades of Roundup use.

5. Section VII,N should be stricken: the location at which the plaintiff stored his or her Roundup products is similarly irrelevant to the viability of a case.

6. Section VII,O, and the chart that follows, should be stricken: this chart should be deleted in its entirety for purposes of agricultural and occupational uses. As Monsanto well knows, agricultural workers who grew Roundup ready crops purchased Roundup in over 600 gallon totes – to provide specifics for each application, for each growing season, for

each crop, would be beyond onerous.  Practically speaking, how would a farmer be able to go back 10 years or more, provide specific addresses (besides the farm itself) where he or she applied Roundup to crops, the length of time for each such application, etc.  To respond to this section alone would take days and, even then, it would be impossible for it to be completed. What is more, plaintiffs' counsel have defended plaintiff depositions of agricultural workers, and even in depositions of cases being prepared for trial Monsanto does not ask such detailed questions for each and every application.  The same is true for landscapers.  A professional landscaper has likely had hundreds, if not thousands, of clients over time, in multiple locations. It is bordering harassment to ask a landscaper to reconstruct over the decades the addresses of each house at which he or she sprayed Roundup, how long each spraying event lasted at each such location, the areas sprayed, and so on.  Again, plaintiffs' counsel have defended plaintiff depositions of landscapers, and at those depositions of cases being prepared for trial Monsanto does not ask such detailed questions for each and every application.

7. In the Miscellaneous Section, VIII, Monsanto asks a series of questions that have nothing to do with the viability of a case, such as, *inter alia*, whether the plaintiff saw advertisements or ever visited a website containing information about Roundup. That information is irrelevant to evaluate viability of a plaintiff's case and is unnecessary at the PFS stage.

8. In the Document section, the only medical record that Monsanto needs at this juncture is proof of a NHL diagnosis. For the Court's information, in these cases the plaintiff fills out a medical authorization, which is now part of the existing PFS, and the parties then use a third-party vendor to obtain the records. That process is working and there is no basis for

Monsanto to require the plaintiff to collect medical records. To require the plaintiff to affirmatively gather all of his or her medical records when Monsanto, *every time*, seeks those same records from the vendor – oftentimes voluminous records in the tens of thousands of pages -- is an unreasonable burden on the plaintiff. Again, such a request can only be designed to harass. What is more, there is no basis for Monsanto to need Roundup purchase receipts, to the extent they exist, at the PFS stage. Whether a person has receipts or not does not impact the viability of a case. Especially regarding residential users of Roundup, history shows that the majority of plaintiffs did not save receipts from retail establishments from which they purchased Roundup years ago. Moreover, photographs of the areas where Roundup was sprayed or stored when not in use and social media posts are not relevant at the PFS stage.

9. Finally, the Plaintiff Fact Sheet Declaration in its current form is adequate; there are no grounds to change it now. And there are no grounds to add the extra burden of having the PFS notarized, especially since COVID precautions continue to make it onerous to do so. In addition, it is inappropriate to include a certification about depositions, length of depositions, paying court fees, and collecting medical records (as explained in No. 8 above). This section appears to be designed to intimidate plaintiffs and such conduct should not be sanctioned.

In sum, it is evident to the Plaintiffs that Monsanto is trying to get detailed information from the plaintiffs through the PFS process in part to intimidate plaintiffs and in the hopes that at the time of the plaintiff's deposition Monsanto can obtain contrary information from the plaintiff and call into question his or her honesty and integrity. The type of details many of Monsanto's new questions seek require substantial time with a plaintiff to explain what is being asked, the need to make best

efforts to recollect activities from decades ago, and the need to carefully answer the questions. What is more, these answers often change over time; for example, regarding personal protective equipment, a plaintiff might have early on worn gloves and protective eyewear when applying Roundup but then saw a Roundup commercial in which the person applying the Roundup is wearing shorts and no gloves or protective eyewear and then modifies her behavior to conform with the commercial. Or a plaintiff might have applied Roundup in one way and for a more limited time before Roundup Ready seeds, but after planting Roundup ready crops increased Roundup use ten-fold or more. A PFS is not the appropriate mechanism for responding to such specific and detailed information that does not directly relate to plaintiff's NHL diagnosis and the extent and duration of his or her Roundup use – facts that are at the heart of this litigation. Plaintiffs respectfully request the Court to leave the PFS as it currently exists or to replace it with Plaintiffs' version of Monsanto's proposed PFS.

DATED: September 28, 2022

Respectfully submitted,

/s/ David Dickens
David Dickens
ddickens@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave
Orange, VA 22960

/s/ Robin Greenwald
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg, PC
700 Broadway
New York, NY 10003

/s/ Aimee Wagstaff
Aimee Wagstaff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

awagstaff@wagstafflawfirm.com
Wagstaff Law Firm
940 Lincoln Sreet
Denver, CO 80203

*Attorneys for Plaintiffs*

/s/ Brian L. Stekloff
Brian L. Stekloff (pro hac vice)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (pro hac vice)
(rkilaru@wilkinsonstekloff.com)
WILKINSON STEKLOFF LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

*Attorneys for Defendant*
*MONSANTO COMPANY*