**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**SHOOK, HARDY & BACON, LLP**
Anthony Martiniz (*pro hac vice*)
(amartinez@shb.com)
2555 Grand Blvd.
Kansas City, MO 64108
Tel: 816-559-2683

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>ALL ACTIONS | Hon. Vince Chhabria<br><br>**MONSANTO COMPANY'S REPLY TO CERTAIN PLAINTIFFS' OBJECTIONS AND RESPONSE TO [PROPOSED] ORDER GRANTING JOINT REQUEST FOR REVISED SCHEDULE FOR WAVE 5-6 CASES AND ADDING WAVE 7 SCHEDULE** |

Under the pretenses of objecting to the proposed schedule for Wave 7 (and the proposed sub-waves for Waves 5 and 6), counsel for certain plaintiffs in the MDL (hereafter "Objecting Counsel") filed an Objection raising a number of issues that (1) could have been addressed at the last case management conference or (2) have already been addressed by the Court. Objecting Counsel did so without any notice to Monsanto and without any effort to meet and confer on the issues raised in its Objection. While some of the issues raised by Objecting Counsel relate to the interactions between them and the Plaintiffs' Leadership Committee, Monsanto hereby responds to the each of the issues raised where Monsanto's response is warranted.

**I.     Sub-Waves Promote A Manageable Expert-Discovery Process Without Prejudicing Any Party In Any Way**

With respect to Wave 4, Monsanto demonstrated before this Court how staggering expert deadlines into sub-waves facilitates—and indeed is necessary for—the orderly completion of expert discovery. On behalf of a few plaintiffs, Objecting Counsel now seek an order abandoning that approach for Waves 5 and 6. *See* Obj. at 2. But Objecting Counsel do not address any of the reasons for instituting sub-waves in the first place and fail to identify any way in which the sub-wave approach has proven problematic in any respect.

The Court instituted the sub-wave procedure because there were roughly 120 plaintiffs in Wave 4 and an estimated 480 expert reports and depositions to conduct, meaning "that, on average, over eleven expert depositions would need to occur each business day over the course of 43 business days." Dkt. No. 14699 at 1. Sub-waves ameliorated this problem by dividing the wave into four sub-groups and assigning each group new expert discovery deadlines at roughly 30-day intervals. *See id.* at 2. A

single deadline for Wave 4 *Daubert* and dispositive motions then synched the cases back up.[1]  *See id.*

Sub-waves are proper for Waves 5 and 6 for the precise same reasons they were appropriate for Wave 4.  Waves 5 and 6 are even larger than Wave 4; there are more than 150 plaintiffs in Wave 5 and over 250 plaintiffs in Wave 6.  And it remains true that the bulk of plaintiffs and Monsanto's experts are practicing physicians with demanding schedules and limited availability.  Accordingly, (and as the Plaintiffs' Leadership Committee has already agreed) staggered expert deadlines remain necessary to realistically complete expert discovery.

Objecting Counsel's claimed surprise regarding this procedure is misleading. Three of the firms that appear on Objecting Counsel's signature block were specifically consulted regarding Monsanto's request to divide Wave 4 into sub-waves.[2]  Each of them consented to that request.  In their filing, however, Objecting Counsel omit any mention of their prior consent to the sub-wave approach and do not make any argument that a procedure appropriate for Wave 4 is somehow inappropriate for Waves 5 and 6.  The omission is particularly notable as it relates to the objections asserted by the Terrell Hogan Yegelwel. P.A. ("Terrell Hogan") firm.  This firm apparently has no cases in Wave 6, and its purported Wave 5 cases are actually "Wave 4 cases with unopposed motions to transfer to Wave 5."  Obj. at 6-7 (signature block). Thus, Terrell Hogan lawyers specifically consented to the sub-wave procedure for

---

[1] Objecting Counsel vaguely reference "the cases of a husband and former wife, represented by the same counsel, being assigned to different sub-waves."  Obj. at 1.  Objecting Counsel do not explain why it would be prejudicial for one of the plaintiffs in these cases to have a different expert deadline than the other, or even why it is "odd" that the deadlines should not be exactly the same.  *See id.* Further, Monsanto has no objection to putting these two plaintiffs in the same sub-wave and a simple meet and confer could have remedied this issue.

[2] *See* Dkt. No. 14699 at 1 n.1 (identifying Charles Boyk Law Offices, LLC; Terrell, Hogan & Yegelwel, P.A.; and Thorton Law Firm LLP as consenting counsel), *with* Obj. at 5-7 (signature block).

the very cases at issue and can hardly complain now.[3]

Beyond their complaints regarding their own inability to communicate effectively with the Plaintiffs' Leadership Committee, Objecting Counsel's objections to the sub-wave procedure are difficult to understand. Objecting Counsel complain that staggered deadlines will result in significant lag time between the expert deadlines in some cases and the Wave 5 deadline for *Daubert* and dispositive motions. But no prejudice stems from this inherent consequence of staggered expert-discovery deadlines followed by a single common deadline for *Daubert* and dispositive motions. Indeed, Objecting Counsel are not even complaining of unnecessary delay: they affirmatively *request delay* in the form of a modification to the Wave 5 and 6 schedules that includes "an extended period of time for expert discovery." Obj. at 2. The passage of time between the first sub-waves expert deadlines and subsequent briefing deadlines is no reason to abandon the sub-wave approach this Court has already adopted.[4]

Objecting Counsel further complain that staggering expert deadlines in Waves 5 and 6 will permit Monsanto "to re-depose the same expert multiple times." Obj. at 2. The charge reveals a lack of understanding regarding Monsanto's rights to take depositions in this case. Of course Monsanto will depose a given expert multiple times if that expert is designated as a specific cause expert for

---

[3] Monsanto did not oppose Terrell Hogan's motions to transfer the listed cases from Wave 4 to Wave 5. In seeking Monsanto's consent, however, Terrell Hogan counsel did not disclose their intent to oppose the sub-wave procedure for the cases once they moved to Wave 5. The Court should not countenance this sort of gamesmanship, which penalizes parties who, like Monsanto, seek to work cooperatively with opposing counsel.

[4] In the experience of Monsanto's counsel, impending deadlines are unfortunately necessary for plaintiffs to schedule depositions and otherwise move expert-discovery forward. Staggered deadlines ensure continued progress across each Wave over a period of months, whereas a single deadline invites inaction that inevitably yields unnecessary (and potentially insurmountable) burdens for the parties, their attorneys, and the various experts—typically, practicing physicians who have little time in their schedules for depositions.

3

MONSANTO COMPANY'S REPLY TO CERTAIN PLAINTIFFS' OBJECTIONS AND RESPONSE TO [PROPOSED] ORDER GRANTING JOINT REQUEST FOR REVISED SCHEDULE FOR WAVE 5-6 CASES AND ADDING WAVE 7 SCHEDULE
16-MD-02741-VC

multiple plaintiffs. And it will do so whether expert deadlines are staggered or not. Objecting Counsel seem to believe that, but for the sub-wave system, they could unilaterally undermine Monsanto's ability to effectively depose an expert by simply designating the same specific cause expert in multiple cases, thereby (somehow) limiting to Monsanto to one deposition of each specific cause expert, regardless of the number of plaintiffs that the expert intends to address. That is simply not the case. Moreover, in prior Waves, the parties have agreed to limit previously deposed case-specific experts who do not have new general opinions to three hours, rather than the seven hours otherwise provided for in the rules. *See* Fed. R. Civ. P. 30(d). Thus, the concerns raised by Objecting Counsel have already been addressed amicably, by agreement. All Objecting Counsel have accomplished here is to highlight their own failure to act in a cooperative fashion, not only with respect to the adverse party, Monsanto, but also with respect to the Plaintiffs' Leadership Committee. The misguided objection to the sub-wave procedure should be overruled.

### II. Objecting Counsel Have Not Demonstrated Any Need For Waves 5 Through 7 To Deviate From Prior Waves With A Rebuttal-Report Deadline That Would Only Cause Delay

Objecting Counsel argue, in a back-door attempt to allow them to file rebuttal reports across the board, that (in state-court litigation) Monsanto is disclosing new experts that were not disclosed as part of the MDL. *See* Obj. at 2-3. However, if Objecting Counsel believe there is new information in these reports that must be addressed, then there is nothing preventing them from covering those topics or designating new experts in the upcoming Waves. And Objecting Counsel have sufficient time to do so given that none of the dates in the amended proposed order have yet occurred, and most of the dates are well within the year 2023. Indeed, Objecting Counsel fail to explain how Monsanto's disclosure of new experts in unidentified state-court cases over a four-year period gives rise to Objecting Counsel's purported need in the future to file rebuttal reports.

Furthermore, in addition to being unnecessary, Objecting Counsel's request to include rebuttal reports across the board in the amended proposed order would only serve to push the trial dates out even further. To that point, other scheduling orders did not provide for rebuttal reports. *See* Wave 4's Scheduling Order at Dkt. No. 13617; Wave 3 at Dkt. No. 12197; Wave 2 at Dkt. No. 12198. And Objecting Counsel have provided no compelling reason to deviate materially from previous scheduling orders now. Therefore, it is entirely unnecessary to include both the scheduling and submission of rebuttal reports in the amended proposed order and the Court should deny Objecting Counsel's request.

### III. This Court Has Denied Partial Summary Judgment On The Application of Issue Preclusion

Earlier this year, in PTO 175, the Court correctly denied a motion for partial summary judgment on the application of issue preclusion. Objecting Counsel's request to relitigate an issue that was recently decided by the Court is unwarranted. For all of the reasons set forth in PTO 175 and in Monsanto's opposition to the partial motion for summary judgment in the *Chapman* case, collateral estoppel does not apply to the *Hardeman* jury's conclusions. Indeed, Monsanto's string of five trial victories in the five most recent trials demonstrates precisely why any issue preclusion or claim preclusion does not and should not attach.

### IV. Objecting Counsel Request Updated Discovery That Is Already Occurring

Objecting Counsel argue that additional fact discovery is needed of Monsanto, including the addition/revision of search terms, custodians, and time periods. Obj. at 3. The requested supplemental corporate discovery from Monsanto has already been completed or substantially completed through discovery conducted by the Plaintiffs' Leadership Committee between July 2021 and September 2022. This updating and expanding upon prior discovery of Monsanto included, *inter alia*, searches across

dozens of custodians identified by the Plaintiffs' Leadership Committee earlier in the litigation and ten new custodians selected by the Plaintiffs' Leadership Committee, and adding more than fifty new search terms identified by the Plaintiffs' Leadership Committee relating to project/abbreviation/code names, new studies, and other matters that the Plaintiffs' Leadership Committee identified.

Monsanto's July 2021 – September 2022 productions to the Plaintiffs' Leadership Committee included seventeen document productions totaling more than 300,000 documents (consisting of more than 2.6 million additional Bates numbered pages and more than 65,000 documents produced as native files (e.g., Excel files)). As part of this effort, Monsanto made productions through the plaintiffs' leadership's shared vendor in July 2021, August 2021, September 2021, October 2021, November 2021, December 2021, February 2022, March 2022, April 2022, June 2022, July 2022, and September 2022. Between these productions and the productions made by Monsanto in 2016, 2017, 2018, 2019, and 2020, Monsanto has now produced more than 2.7 million documents (consisting of more than 18 million Bates numbered pages and more than 830,000 native files that add several if not tens of millions of additional pages of material).

Also during the period of July 2021 – present, the Plaintiffs' Leadership Committee conducted further depositions of Monsanto and current/former employees. Those depositions have, *inter alia*, used documents obtained through the 2021-2022 document productions and covered a broad range of regulatory and other issues.

This discovery has occurred as contemplated by this Court's orders in a coordinated manner across federal and state court cases in the Roundup® litigation. The Plaintiffs' Leadership Committee retained vendor Crivella Technologies Limited ("Crivella") at the outset of this MDL to manage a document depository as contemplated by PTO 4 to which Monsanto made all of the above-referenced productions regardless of whether the case in which the production originated is proceeding in federal

or state court. This is consistent with the Court's directions in PTO 7 that the MDL plaintiffs' leadership and Monsanto "shall work together to coordinate to the extent practicable the conduct of [the MDL litigation] with other personal-injury product-liability actions involving similar allegations pending in any state court." Further, Monsanto has previously confirmed to the Plaintiffs' Leadership Committee that any document production it makes to Crivella in the Roundup® litigation whether in federal or state court may be used for these MDL cases consistent with the Court's governing protective and confidentiality order (PTO 30). The cooperative discovery contemplated by the Court's procedural orders has occurred, and Objecting Counsel should raise any questions they have on these issues with the Plaintiffs' Leadership Committee as contemplated by those orders. Objecting Counsel's requests results in the inefficiencies that PTO 4 and other formative orders of this Court sought to avoid by centralizing the leadership, designating counsel to liaise with defense counsel and conduct the discovery of Monsanto. Objecting Counsel's Request should be denied.

**V.      Objecting Counsel's Criticisms Of The Trial Package Are Misguided**

Objecting Counsel criticize the current trial package, labelling it "somewhat obsolete" and then vaguely stating that the "status of" various matters "needs to be addressed so that all parties have clarity as to what is in and what is out." Obj. at 3. As Monsanto noted in its portion of the September 1 Joint Case Management Statement, "Plaintiffs' leadership may seek to update any trial package as part of its duties." Dkt. No. 15403 at 16. Thus, the claimed obsolescence of the current trial package does not plausibly support any objections to the schedule for Waves 5 through 7. Objecting Counsel's true challenge seems to be to Monsanto's right to confront plaintiffs' experts with their own sworn testimony from other proceedings. But Monsanto's right to do so is unquestionable. *See United States v. McLaughlin,* 663 F.2d 949, 952 (9th Cir.1981) ("A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness." (quoting *United States*

*v. Hale,* 422 U.S. 171, 176 (1975)); 32 C.J.S. Evidence § 980 ("Prior inconsistent testimony in an unrelated case may be used to impeach an expert witness."). Thus, the clarity Objecting Counsel seeks can be found in black-letter law.

**VI.   Individual Discovery Disputes Should Be Resolved Individually; Objecting Counsel's Demand For Sweeping Resolution Of Discrete Discovery Disputes Is Unworkable**

Objecting Counsel's contention that the amended proposed order should include a procedure to address the scope of specific-causation expert depositions (*see* Obj. at 3-4) is without merit and would again be unnecessary. The scope of an expert deposition is determined by the expert's opinions and their disclosure in accordance with the Federal Rules. *See* Fed. R. Civ. P. 26(b)(4)(A) (a party may depose an expert on their opinions that may be presented at trial). Here, depositions of case-specific experts who have not been deposed previously are limited to seven hours. *See* Fed. R. Civ. P. 30(d). And, as noted above, in prior Waves, in the interest of efficiency, the parties have agreed to limit previously deposed case-specific experts who do not have new general opinions to three hours, and there is no reason to deviate from that practice here absent good cause shown. To the extent there are specific issues that arise at any deposition, either party is certainly permitted to file the appropriate motions pertaining to those specific experts. However, individual experts and each expert deposition can present unique issues. Therefore, there is no need to attempt to predict and address these issues on an MDL-wide basis before they even arise, and Objecting Counsel provide no reason to do so.

Objecting Counsel's reference to Monsanto's motion to compel in *Salas* is a diversion. There, during a deposition, the *Salas* plaintiff's specific-causation expert, who had not previously testified in any MDL case, was instructed by counsel not to respond to questions regarding the studies and data relied on by the expert, which is a topic clearly within the bounds of Rule 26(b)(4)(A). Counsel for Monsanto suspended the deposition and filed a motion to compel his continued deposition in order to

answer questions regarding the studies and reports referenced in his report. This rarely, if ever, has happened over the course of many years and well over 100 expert depositions in this case, and the resulting motion to compel was specific to the report and deposition of the expert at issue. It is therefore impractical to address such issues on an MDL-wide basis. Any attempt to do so would be unworkable and overly complicated while pushing deadlines back even further.

### VII. Objecting Counsel's Improper Request For Confidential Settlement Information Has No Basis In Law

Finally, Objecting Counsel request that "the Court require the Special Master to provide at least the Court, but preferably also Plaintiffs' counsel, with additional data concerning the settlement program," including information on settlement values and statistics on accepted and rejected offers. *See* Obj. at 4-5. To the extent that Objecting Counsel request information on settlement values for unrelated plaintiffs, the terms and amounts of the individual settlement agreements between individual plaintiffs and Monsanto, as well as any average or range of values calculated based on those individual amounts, are confidential and cannot be shared with unrelated plaintiffs and their counsel. Likewise, any offer of settlement and whether or not it was accepted or rejected by a plaintiff is protected from disclosure pursuant to FRE 408 and likewise cannot be shared with unrelated plaintiffs and their counsel. To the extent that the Court would like a confidential report from the Special Master on value ranges accepted and rejected as part of the settlement program to date, the Court can request this information from the Special Master.

Also, Objecting Counsel insinuate that Monsanto is controlling the settlement program administered by Special Master Feinberg and has "input" into "how the program has actually operated." Obj. at 4. To the contrary, the settlement program administered by Special Master Feinberg has operated consistent with PTO 240. Under that order, Monsanto is given an "opportunity to submit its

9

MONSANTO COMPANY'S REPLY TO CERTAIN PLAINTIFFS' OBJECTIONS AND RESPONSE TO [PROPOSED] ORDER GRANTING JOINT REQUEST FOR REVISED SCHEDULE FOR WAVE 5-6 CASES AND ADDING WAVE 7 SCHEDULE
16-MD-02741-VC

own information about the plaintiff's claim" just as every active MDL plaintiff is obligated to submit its own information to the Special Master. PTO 240 at 1. Ultimately, the Special Master "consider(s) all the information submitted regarding the claims" and "make(s) a written offer to the plaintiff, based on his independent analysis of the claims." PTO 240 at 2. While Monsanto can point out errors in how the Special Master evaluates factors that go into that independent determination (e.g., by noting a failure of the Special Master to consider a family history of NHL) and must "consent" to the offer made to the plaintiff, Special Master Feinberg is fully in control of all offers. Monsanto cannot and has not controlled the manner in which the independent determination of settlement value and offer is made.

Additionally, as Monsanto noted in the recent CMC statement filed on September 1, 2022, a significant number of cases (330 cases overall) have resolved through the settlement program with Special Master Feinberg. Since that CMC statement was filed, an additional 24 cases have resolved through the settlement program, bringing the total number of resolved cases to 354 and demonstrating the continued success of the Special Master's settlement program to date.

## CONCLUSION

For the foregoing reasons, the Court should enter the previously submitted joint [Proposed] Order Granting Joint Request For Revised Schedule for Wave 5-6 Cases and Adding Wave 7 Scheduled (Dkt. No. 15506), and each of Objecting Counsel's objections should be overruled.

DATED:  October 7, 2022                             Respectfully submitted,

/s/ Brian L. Stekloff
Brian L. Stekloff (pro hac vice)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (pro hac vice)
(rkilaru@wilkinsonstekloff.com)
WILKINSON STEKLOFF LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

*Attorneys for Defendant*
*MONSANTO COMPANY*