GILLIAN L. WADE (State Bar No. 229124)
SARA D. AVILA (State Bar No. 263213)
MARC A. CASTANEDA (State Bar No. 299001)
Milstein, Jackson Fairchild & Wade, LLP
gwade@mjfwlaw.com
savila@mjfwlaw.com
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, CA 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

JOEL OSTER
Law Offices of Howard Rubinstein
joel@joelosterlaw.com
22052 W. 66th St. #192
Shawnee, Kansas 66226

*Attorneys for Plaintiffs and the Proposed Settlement Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT GILMORE, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> MONSANTO COMPANY, <br><br> Defendant. | MDL No. 2741 <br><br> Case No. 3:21-cv-08159 <br><br> **NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS** <br><br> Date: January 12, 2023 <br> Time: 2:30 <br> Place: Via Zoom Webinar <br> Judge: Hon. Vince G. Chhabria |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on January 12, 2023, at 2:30 p.m., via Zoom Webinar, Plaintiffs Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kristy Williams ("Plaintiffs") jointly move this Court for an order approving Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Incentive Awards for Class Representatives. This motion is made pursuant to the Court's June 21, 2022 Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Certification of the Class for Purposes of Settlement (Dkt. No. 14966) and Fed. R. Civ. P. Rule 23. The Motion will be based on this Notice of Motion and the Memorandum of Points and Authorities in support thereof; the Second Amended Settlement Agreement (Dkt. 102-1, Ex. 1); the Corrected Declaration of Gillian L. Wade in Support of Motion for Preliminary Approval of Class Action Settlement and Certification of Class for Purposes of Settlement filed on February 16, 2022 (Dkt. 14610-1); the Declaration of Joel Oster in Support of Motion for Preliminary Approval of Class Action Settlement and Certification of Class for Purposes of Settlement (Dkt. 14486-2); and the concurrently-filed declarations of Gillian L. Wade, Joel Oster, Lydia Zbreznj, Spencer Sheehan, Steve Harrelson, Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kristy Williams, and Brandon Schwartz; the Motion for Final Approval of Class Action Settlement due on November 28, 2022 all evidence, papers, pleadings, and argument filed or presented in support thereof; the [Proposed] Order submitted herewith; and, all papers and pleadings on file in this Action, and upon such other and further evidence as may be presented to the Court at the time of the hearing, including oral argument.

Dated: October 31, 2022          */s/ Gillian L. Wade*

GILLIAN L. WADE
SARA D. AVILA
MARC A. CASTANEDA
Milstein, Jackson Fairchild & Wade, LLP
gwade@mjfwlaw.com
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, CA 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

JOEL OSTER
The Law Offices of Howard Rubinstein
joel@osterlaw.com
22052 W. 66th St. #192
Shawnee, Kansas 66226

*Counsel for Plaintiffs and the Settlement Class*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. iii

I.     INTRODUCTION ..................................................................................................... 1

II.    STATUS OF THE SETTLEMENT AND CLAIMS PROCESS ............................. 4

       A.    Relevant Settlement Terms ........................................................................... 4

       B.    Claims Rate Assumptions in Floor / Ceiling Settlement Structure Versus
             Actual Claims Rate ........................................................................................ 5

       C.    Total Cash Consideration Paid Based on Claim Rate, Administration Expenses,
             Incentive Awards, and Attorney's Fees and Costs ....................................... 6

III.   THE REQUESTED FEE AWARD IS FAIR AND REASONABLE ...................... 7

       A.    The Court Should Apply the Percentage-of-the-Fund Method ..................... 7

       B.    The Requested Fees are Reasonable Under the Percentage-of-the-Fund Method ........ 8

             1.    The total value of the settlement fund is $45 million ........................... 9

                   (a)    The fund size is based on the total benefits made available to Class
                          Members ................................................................................... 9

                   (b)    Administrative costs, litigation expenses, incentive awards and
                          attorney's fees are benefits to the Class ................................. 9

                   (c)    The value of available benefit in claims payments assumes a
                          reasonable claims rate range ................................................. 10

             2.    Twenty-five percent of the fund is reasonable ................................. 13

                   (a)    Twenty-five percent is the Ninth Circuit's 'benchmark' ............... 13

                   (b)    The fund value does not rely on an injunctive relief component ...... 14

                   (c)    The *Vizcaino* factors support a finding of reasonableness ............. 15

                          (i)    Class counsel achieved excellent results for the Class ......... 15

                          (ii)   Plaintiffs' claims carried substantial litigation risk, and Class
                                 Counsel experienced significant burdens litigating the case ........ 17

i

(iii)  The requested fee reflects the market rate in consumer class actions .................................................................................17

(iv)  This case was handled on a contingency basis ...................................18

3.  A lodestar cross-check further ensures the fee's reasonableness ..........................18

C.  Alternatively, the Court May Grant the Requested Attorney's Fee Under the Lodestar Method.................................................................................19

1.  Counsel expended a reasonable number of hours at a reasonable hourly rate .......20

2.  The *Hanlon* factors support the reasonableness of the fee request and lodestar multiplier .................................................................................21

IV.  CLASS COUNSEL SHOULD RECOVER $210,888.10 IN REASONABLE AND NECESSARY LITIGATION EXPENSES.........................................................22

V.  THE REQUESTED SERVICE AWARDS ARE FAIR AND REASONABLE .................22

VI.  CONCLUSION.................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                      ***Page***

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) .......................................................................................11

*Blum v. Stenson*,
    465 U.S. 886 (1984).................................................................................................21

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).................................................................................................13

*Broomfield v. Craft Brew All., Inc.*,
    No. 17-1027, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ...........................................9, 10

*Caudle v. Bristow Optical Co.*,
    224 F.3d 1014 (9th Cir. 2000) .......................................................................................18

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018).................................................................................................23

*Craft v. County of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...........................................................................19

*de Mira v. Heartland Emp. Serv., LLC*,
    No. 12-4092, 2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) ...........................................14

*Edwards v. Nat'l Milk Producers Fed'n*,
    No. 11-4766, 2017 WL 3616638 (N.D. Cal. June 26, 2017) ...........................................22

*Ferrell v. Buckingham Prop. Mgmt.*,
    No. 119-332, 2022 WL 224025 (E.D. Cal. Jan. 25, 2022)...................................................8

*Galeener v. Source Refrigeration & HVAC, Inc.*,
    No. 13-4960, 2015 WL 12977077 (N.D. Cal. Aug. 21, 2015)...........................................23

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................................19, 20, 21

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994)...............................................................................................22

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).................................................................................................21

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ..................................................................14

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-2617, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018)........................................7, 13

*In re Baby Prod. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ..................................................................12

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ..................................................7, 8, 10, 11, 14, 19

*In re Capacitors Antitrust Litig.*,
    No. 17-2801, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ...............................................7

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
    333 F.R.D. 364 (E.D. Pa. 2019) ..................................................................13

*In re Coordinated Pretrial Proceedings*,
    109 F.3d 602 (9th Cir. 19979 ..................................................................7

*In re Facebook Biometric Info. Priv. Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021) ..................................................................11

*In re High-Tech Emp. Antitrust Litig.*,
    No. 11-2509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ...............................................21

*In re Myford Touch Consumer Litig.*,
    No. 13-3072, 2018 WL 10539266 (N.D. Cal. June 14, 2018)........................................11

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
    No. 14-2541, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017)........................................20

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ............................................................8, 14

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ..................................................10, 14, 15, 22, 23

*In re Optical Disk Drive Prod. Antitrust Litig.*,
    959 F.3d 922 (9th Cir. 2020) ..................................................................15, 18

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ..................................................................14

*Johnson v. Gen. Mills, Inc.*,
    No. 10-00061, 2013 WL 3213832 (C.D. Cal. June 17, 2013) .........................................17

*Jones v. Monsanto Co.*,
    No. 19-102, 2021 WL 2426126 (W.D. Mo. May 13, 2021).............................................12

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ....................................................................................20, 21

*Kim v. Allison*,
    8 F.4th 1170 (9th Cir. 2021) ........................................................................................14

*Lopez v. Youngblood*,
    No. 07-0474, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ...............................................9

*Morales v. City of San Rafeal*,
    96 F.3d 359 (9th Cir. 1996)...........................................................................................21

*Morris v. Lifescan, Inc.*,
    54 Fed. App'x 663 (9th Cir. 2003) .................................................................................14

*Patel v. Trans Union, LLC*,
    No. 14-522, 2018 WL 1258194 (N.D. Cal. Mar. 11, 2018)...............................................9

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ........................................................................................13

*Rawa v. Monsanto Co.*,
    No. 17-1252, 2018 WL 2389040 (E.D. Mo. May 25, 2018) .............................................12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009).........................................................................................22

*Singer v. Becton Dickinson & Co.*,
    2010 WL 2196104 (S.D. Cal. June 1, 2010)....................................................................14

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990)    ..................................................................13, 14

*Spann v. J.C. Penney Corp.*,
    211 F. Supp. 3d 1244 (C.D. Cal. 2016).........................................................................17

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...........................................................................8, 14, 22

*Steiner v. Am. Broad. Co., Inc.*,
    248 Fed. App'x. 780 (9th Cir. 2007) ............................................................................19

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................................................15

*Van Skike v. Dir., Off. of Workers' Comp. Programs*,
    557 F.3d 1041 (9th Cir. 2009) ....................................................................................20

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) .............................................................................23

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ................................................................................14

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .....................................................7, 14, 15, 17, 18, 20, 21

*Williams v. MGM-Pathe Communications Co.*,
    129 F.3d 1026 (9th Cir. 1997) ...............................................................................9, 14

*Yamagata v. Reckitt Benckiser LLC*,
    No. 17-3529, 2021 WL 5909206 (N.D. Cal. Oct. 28, 2021).....................................10, 17

**Other**

H. Newberg, et al.,
    NEWBERG ON CLASS ACTIONS...............................................................................9, 19, 21

Theodore Eisenberg et. al.,
    *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937 (2017) ..................8

United States District Court for the Northern District of California,
    *Procedural Guidance for Class Action Settlements*.....................................................4, 22

United States Federal Trade Commission,
    *Consumers and Class Actions: Analysis of Settlement Campaigns* (2019) ......................11

## I.      INTRODUCTION

Plaintiffs, by and through undersigned counsel, respectfully submit this memorandum of points and authorities in support of their Motion for Attorney's Fees, Costs, and Incentive Awards (the "Motion") in connection with the classwide settlement of this action. The proposed Second Amended Settlement Agreement ("Settlement"),[1] which seeks to resolve on a nationwide basis this action and other cases brought in federal and state courts around the country (the "Related Actions") against Monsanto and retailers of Roundup® Products[2] (the "Products") concerning their failure to disclose the Products' risks of cancer and other health effects. It releases only false advertising, consumer fraud, breach of warranty, and other economic-loss claims arising from Class Members' purchases[3]; it does not release or resolve any personal-injury claims (including alleged economic losses, punitive damages, or attorney's fees arising from personal injury) or medical-monitoring claims. The Settlement establishes a fund between $23 million (the "Floor Amount") and $45 million (the "Ceiling Amount") against which Class Members can claim approximately 20% of the average retail price of the Products they purchased. There is no injunctive component to the Settlement.

On June 21, 2022, the Court granted Plaintiffs' Motion for Preliminary Approval (ECF No. 14486) ("MPA"), following rigorous analysis, substantial briefing (including objections to the MPA and responses thereto), and oral argument. *See* Order Granting MPA, ECF No. 14966 ("PA Order"). The Court's assessment of the fairness, reasonableness, and adequacy of the Settlement was "as rigorous as at the final approval stage" and it found that the Settlement was "fair,

---

[1] *See* ECF No. 14610-1 at Ex. 1 (the "Settlement"). Unless otherwise specified, all capitalized terms herein have the meanings specified in the Settlement.

[2] The Products are listed as Exhibit A to the Settlement.

[3] The "Settlement Class" is defined as "all Persons in the United States who, during the Class Period, purchased Products . . .  in the United States other than for resale or distribution," excluding (i) judicial officers and associated court staff assigned to this case, and their immediate family members; (ii) past and present (as of the Effective Date) officers, directors, and employees of Monsanto; (iii) all those otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class. Settlement at § A(52).

reasonable, and adequate and merits preliminary approval." PA Order at ¶ 2. Considering various factors, including the expected participation rate in low-value consumer settlements and the many risks inherent in this litigation, the Court found that the settlement amount was fair and the "floor/ceiling settlement structure [was] reasonable." PA Order at ¶ 4.

If final approval is granted, the total cash consideration to be paid by Monsanto shall be an amount not less than the Floor Amount and not greater than the Ceiling Amount. The cash payments include all valid Class Member Claims, the costs of Class Notice and Claims Administration Expenses, Class Representative service awards, and Class Counsel's Fees and Expenses. The current amounts comprising the cash consideration are $446,449 (Class Notice costs), $380,513 (anticipated Claims Administration Expenses), an estimated range of between $14.2 million and $12.4 million (current amount of valid claims, which are pending review), $40,000 (requested Class Representative service awards), $11.25 million (requested Class Counsel's Fees), and $210,888.10 (requested Class Counsel's Expenses). *See* Schwartz Decl. at ¶ 5; Wade Decl. at ¶ 31.[4]

Following preliminary approval, the Court-appointed Claims Administrator, carried out the Notice Plan, including a successful 100-day notice period and 120 days to submit claims (the "Class Deadline"). PA Order at ¶ 21. Class Members could claim up to one Product for each year of the Class Period without proof of purchase, except for the largest and highest-priced concentrated Products, which required valid proofs of purchase. Settlement at § I(6). If a Class Member provided valid proofs of purchase, he or she could claim an unlimited number of units purchased during the Class Period. *Id.* § I(7). Depending on the Product, the Default Payment

---

[4] References herein to "Schwartz Decl." and "Wade Decl." refer, respectively, to the declarations of Brandon Schwartz and Gillian L. Wade filed concurrently herewith. Additionally, references to "Oster Decl.," "Williams Decl.," "Casey Decl.," "Sheehan Decl.," "Harrelson Decl.," and Zbrzeznj Decl." refer, respectfully, to the declarations of the concurrently-filed declarations of Joel Oster, Chandra Williams, M. Ryan Casey, Spencer Sheehan, Steve Harrelson, and Lydia Zbrzeznj. References to "Gilmore Decl.," "Weeks Decl.," "Taylor Decl.," "Hanna Decl.," "Boyette Decl.," "Ezcurra Decl.," "Jewell Decl.," and "Kristy Williams Decl." refer to the concurrently-filed declarations of the respective Plaintiffs.

Amount ranges from $0.50 and $33.00 per unit. *Id.* at § E(1).

The Claims Administrator is continuing to review the submitted claims, given the Class Deadline was October 19. As of October 28, 2022, the value of total valid claims made by Class Members ranges from $12,399,326.50 on the low end (representing 227,527 total valid claims) and $14,201,305.00 on the high end (representing 231,413 total valid claims), pending further review.[5] *See* Schwartz Decl. at ¶ 4. The estimated average payment per individual Class Member will be between $53.80 and $61.37 on the high end (again, pending further review). *Id.* All claims information will be updated in Plaintiffs' Motion for Final Approval, which is due on November 28, 2022.

Class Counsel requests that the Court approve a total of $11,250,000 in Class Counsel's Fees, which amounts to 25% of the Ceiling Amount, and $210,888.10 in Class Counsel's Expenses. As explained below, the percentage-of-the-fund method for calculating fees is appropriate given counsel's efforts have created a common fund for the benefit of the class. The total value of the settlement fund is $45 million: the total amount made available to Class Members per the Settlement's Ceiling amount. This includes the amounts allocated for Class Member Claims, Class Notice, Claims Administration Expenses, Class Representative service awards, Class Counsel's Fees, and Class Counsel's Expenses. It also includes the total amount made available for Class Members to claim, both literally (given the Ceiling Amount) and plausibly (given the reasonable claims rate projected at the time of settlement). Alternatively, Class Counsel requests approval of their fee request under the "lodestar" method with a modest 1.4 multiplier. This multiplier is within the range typically seen in the Ninth Circuit and justified by the quality of representation, the benefit obtained for the Settlement Class, the complexity and novelty of the issues presented, and

---

[5] The actual value will depend on the Claims Administrator's review of certain claims yet to be reviewed and deficient claims (claims submitted with product values exceeding the threshold [one Product for each year of the Class Period] and/or with claimed purchases of the three Products that require proof of purchase, for which the documents submitted by the claimant did not substantiate the products claimed). Schwartz Decl. at ¶ 4. All deficient claims will be sent a deficiency notice with an opportunity to cure the defect. *Id.*

the risk of nonpayment.

Finally, Plaintiffs also request that the Court award each of the eight Class Representatives a service award in the amount of $5,000 (for a total of $40,000) to account for the time and effort they invested into this litigation on behalf of the Settlement Class.

## II.   STATUS OF THE SETTLEMENT AND CLAIMS PROCESS

Pursuant to this District's Guidance, Plaintiffs incorporate in this motion the case history and background facts in Plaintiffs' forthcoming motion for final approval, and will not repeat them here.[6] However, Plaintiffs will summarize the salient features of the settlement bearing directly on the instant motion and provide statistics as to claims, fees, and costs.

### A.   Relevant Settlement Terms

Under the Settlement, Monsanto will pay total cash consideration in the amount of no less than $23 million (the "Floor") and no greater than $45 million (the "Ceiling"). Settlement § D. Cash consideration includes Class Member payments, notice costs, claims administration expenses, incentive awards, and attorney's fees and expenses. *Id*. § D(1). There is no injunctive relief component to the settlement.[7]

If the Floor is not reached, Class Members making claims would receive individual payments adjusted upward on a pro rata basis. *Id.* § D(3). If the Ceiling is exceeded, then the individual payments will be adjusted downward on a pro rata basis. *Id.* § D(2).

Regarding incentive awards and attorney's fees, Monsanto will not contest a total of $40,000 ($5,000 for each named plaintiff) in requested incentive awards or Class Counsel's request for attorney's fees not exceeding $11.25 million (25% of the $45 million ceiling). *Id.* § F(1). Whether to award the requested amounts is in the Court's discretion and does not impact the validity of the Settlement. *Id.*

---

[6] United States District Court for the Northern District of California, *Procedural Guidance for Class Action Settlements* ("Guidance"), Final Approval § 2 ("[t]he motion for attorneys' fees should refer to the history and facts set out in the motion for final approval").

[7] Unless otherwise stated, all capitalized terms refer to the terms defined in the Second Amended Class Action Settlement Agreement, ECF No. 14486-1.

**B.** **Claims Rate Assumptions in Floor / Ceiling Settlement Structure Versus Actual Claims Rate**

As explained by Monsanto, the retail sales of the Products amounted to approximately $2.66 billion during the Class Period. Declaration of John Rosenthal, ECF No. 14486-3 ("Rosenthal Decl.") at ¶ 12. Under the Settlement, each Authorized Claimant is eligible to receive cash payments equal to approximately 20% of the average retail price for each unit purchased during the applicable statute of limitations period. Settlement § E(1). Therefore, a 100% claims rate would translate to $532 million in claims.[8]

Assuming the instant motion is granted, the non-claims cash portion of the settlement totals $12,327,850.[9] Thus (in the absence of a floor), $10,672,150 in claims—reflecting a claims rate of 2%--would be needed to achieve a total cash payment of $23 million by Monsanto. To hit the $45 million Ceiling, $32,672,150 in claims would have to be paid, reflecting a claims rate of 6.14%.[10] Therefore, 2% to 6.14% is the claims rate range in which claimants would receive neither a pro-rata increase or deduction of their '20% of retail price' payment.

Thus, when fashioning the '20% of retail price' reimbursement amount, the Settlement assumes an approximate 2-6% claims rate range where claimants would expect to receive that amount (neither more nor less). As explained below, this assumed claims rate range is entirely consistent with other similar settlements in consumer class actions. *See infra* § III(B)(1)(c). This

---

[8] As explained previously and in Plaintiffs' forthcoming Motion for Final Approval, this number amounts to nearly *two-thirds* of Class Members' best-case recovery at trial ($824,600,000), based on Plaintiffs' expert's 31% price premium calculation. *See* Plaintiffs' Motion for Preliminary Approval, ECF No. 14486 ("MPA"), at 3, 23; *see also* Sharp Expert Report, ECF No. 14486-1 at Ex. 2. Notably, Dr. Sharp's analysis was not prepared in support of this Settlement, but was submitted as part of Plaintiffs' expert disclosures in the *Ezcurra* action, where Plaintiffs had every incentive to calculate the maximum potential recovery. *Id.* at 2-3.

[9] This amount derives from Monsanto's agreement not to contest of $11,250,000 in attorney's fees and $40,000 in incentive awards. The remainder of this amount consists of Monsanto's agreement to pay notice costs ($446,449), claims administrative costs (estimated $380,513) and Plaintiff's litigation expenses (currently $210,888.10 ). Schwartz Decl. at ¶ 5; Wade Decl. at ¶ 28.

[10] The claims rate is calculated by dividing $10,672,150 or $32,672,150 (the recovery in claims needed to achieve the floor or ceiling amount following deductions for non-claims payments) by $532 million (the cash value assuming no ceiling and a 100% claims rate).

range is also consistent with the *actual* claims rate ultimately achieved in this litigation. Following the close of the claims period on October 19, 2022 Class Members will receive somewhere between \$12,399,326.50 and \$14,201,305.00 in claims payments, a claims rate of 2.33% to 2.67%.[11] Schwartz Decl. at ¶ 4; Wade Decl. at ¶ 6.

Important here is the fact that Plaintiffs' fee request is based on the Ceiling – the benefits made available under the Settlement. Plaintiffs' calculation of the total benefits made available (for the purpose of determining a reasonable fee) is not based on a 100% claims rate, but rather a modest 6.14% claims rate. Though on the high end of what might be expected in typical class action settlements, it is far from 'illusory' – this amount was plausibly made available to the Class. *See infra* § III(B)(1)(c).[12]

### C. Total Cash Consideration Paid Based on Claim Rate, Administration Expenses, Incentive Awards, and Attorney's Fees and Costs

As of the date of this filing, and assuming the instant motion is granted, the cash consideration paid by Monsanto would be between \$24,727,177 and \$26,529,155, securely within the Settlement's \$23-45 million Floor / Ceiling. Wade Decl. ¶¶ 7-8. The current amounts comprising the cash consideration are between approximately \$12.4 million and \$14.2 million (payments to Class Members), \$446,449 (notice costs), \$380,513 (anticipated claims administration costs), \$40,000 (requested incentive awards), \$11.25 million (requested attorney's fees), and \$210,888.10 (sought litigation expenses). Schwartz Decl. at ¶ 5; Wade Decl. at ¶ 8.

---

[11] The range is based on claims pending review and deficient claims that may be cured. Schwartz Decl. at ¶ 4. Deficient claim submissions represent claims submitted with product values exceeding the threshold and/or with claimed purchases of the three Products that require proof of purchase, for which the documents submitted did not substantiate the Product claimed. *Id*. All deficient claims will be sent deficiency notice with an opportunity to cure the defect. *Id*.

[12] Even if the Court were to analyze the claims rate needed to achieve a \$45 million payment *before* a portion of which was to be deducted and allocated to Class Counsel in fees, this would require only an 8.26% claims rate (\$43,922,150 in paid claims).

III.    **THE REQUESTED FEE AWARD IS FAIR AND REASONABLE**

Plaintiffs' requested attorneys' fee award is fair and reasonable. To date,[13] excluding time spent on the fee application, counsel has expended 13,302.35 hours on this matter, for a total lodestar of $7,947,522.50. *See* Wade Decl. ¶¶ 12-24, 34-52 (descriptions of work done by individual attorneys, hourly rates, and firm qualifications); *see also* Oster Decl. at ¶¶ 5-26 (same); Williams Decl. at ¶¶ 7-15 (same); Casey Decl. at ¶¶ 6-17 (same); Sheehan Decl. at ¶¶ 5-17 (same); Harrelson Decl. at ¶¶ 5-11, 13, 15 (same); and, Zbrzeznj Decl. at ¶¶ 5-24 (same). The Court should award fees under the percentage-of-the-fund method and award 25% of the Ceiling Amount ($11,250,000) in reasonable attorneys' fees. Alternatively, the Court may award fees under the lodestar method, applying a modest and reasonable 1.4 multiplier.

A.    **The Court Should Apply the Percentage-of-the-Fund Method**

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). This "discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *In re Coordinated Pretrial Proceedings*, 109 F.3d 602, 607 (9th Cir. 1997)).

Between the two methods, "the percentage-of-the-fund method is preferred when counsel's efforts have created a common fund for the benefit of the class." *In re Capacitors Antitrust Litig.*, No. 17-2801, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018) (collecting cases). There are two reasons for this. First, by "tying the award to the recovery of the Class, Class Counsel's interests are aligned with the Class, and Class Counsel are incentivized to achieve the best possible result." *In re Anthem, Inc. Data Breach Litig.*, No. 15-2617, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018). Second, in contrast to cases involving calculation of the value of injunctive relief,

---

[13] Class Counsel anticipate significant additional fees that include the drafting of the final approval motion (and reply brief if necessary), attending the final approval hearing, responding to Class Member inquiries, and distribution of the Settlement. It is possible that Plaintiffs' counsel may also have to deal with an objector's appeal, which would further increase their lodestar.

"[b]ecause the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942. Thus, it is no surprise that between the two methods, the percentage-of-the-fund is "dominant" in common fund cases. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing cases).[14] The percentage method is even more appropriate where the fund's value is not in large part dependent upon the value of purported injunctive relief. *See Staton v. Boeing Co*., 327 F.3d 938, 974 (9th Cir. 2003) ("because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund").

The settlement at issue here creates a common fund, upon on which Plaintiffs' attorney fee request is based. The fund's value is not tied to a speculative valuation of injunctive relief. The policy and administrative reasons underlying the 'dominance' of the percentage-of-the-fund method are similarly present here. Further, as explained below, the percentage-of-the-fund method results in a reasonable result, resulting in a mere 1.4 multiplier when applying a lodestar cross-check.

B.     **The Requested Fees are Reasonable Under the Percentage-of-the-Fund Method**

Here, Plaintiffs seek recovery under the percentage-of-the-fund method. There is a three-step process to apply the percentage-of-the-fund method:

> First, the court will ascertain the size of the fund against which the percentage will be taxed.
>
> Second, the court will review the percentage counsel seek, ensuring that the fee resulting from application of that percentage is reasonable.
>
> Third, the court will sometimes undertake a lodestar cross-check, comparing the percentage award to the time counsel expended on the case at the prevailing hourly rates, to further ensure the fee's reasonableness.

---

[14] *See also* Theodore Eisenberg et. al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 963 (2017) ("EMG Study") (empirical study of attorneys' fees in class action settlements found that from 2009–2013, the lodestar method was rarely used, but courts frequently used the percentage method with a lodestar cross check).

*Ferrell v. Buckingham Prop. Mgmt.*, No. 119-332, 2022 WL 224025, at *2 (E.D. Cal. Jan. 25, 2022) (quoting H. Newberg, et al., NEWBERG ON CLASS ACTIONS § 15:68 (5th ed.)). As explained below, following this 'three-step process,' the Court will arrive at the conclusion that the requested fee is more than reasonable.

### 1.    The total value of the settlement fund is $45 million

The total value of the settlement fund is $45 million: the total amount made available to Class Members per the Settlement's Ceiling amount. This includes the amounts allocated for notice and claims administration, litigation expenses, incentive awards, and attorney's fees. It also includes the total amount made *available* for Class Members to claim, both literally (given the Ceiling amount) and plausibly (assuming a reasonable 6.14% claims rate). This is explained in greater detail below.

### (a)    The fund size is based on the total benefits made available to Class Members

The first step for courts applying the percentage-of-the-fund method is to ascertain the size of the fund against which the percentage will be taxed. "'Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed.'" *Broomfield v. Craft Brew All., Inc.*, No. 17-1027, 2020 WL 1972505, at *16 (N.D. Cal. Feb. 5, 2020) (quoting *Patel v. Trans Union, LLC*, No. 14-522, 2018 WL 1258194, at *6 (N.D. Cal. Mar. 11, 2018)). The Ninth Circuit has held that a "district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar." *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Thus, "[i]t is well established that, in claims made…cases where there is a maximum fund, and unclaimed funds revert to the defendant, it is appropriate to award class fund attorneys' fees based on the gross settlement fund." *Lopez v. Youngblood*, No. 07-0474, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011) (citing NEWBERG ON CLASS ACTIONS § 14.6 (4th ed.); *see also Ferrell*, 2022 WL 224025, at *2 ("[n]otwithstanding the reversionary nature of the settlement agreement, the Court must use the maximum settlement

amount in step one") (citing *Williams*, 129 F.3d at 1027).

      **(b)**    **Administrative costs, litigation expenses, incentive awards and attorney's fees are benefits to the Class**

As to what is included in the 'benefit to the Class,' the key consideration is "the total amount defendants were willing to spend to settle the case[.]" *In re Bluetooth*, 654 F.3d at 945. Thus, when calculating the total available benefit, it is typical and appropriate to include administrative costs, litigation expenses, incentive awards and attorney's fees as part of the benefit. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 940 (9th Cir. 2015) (district court did not err in awarding 25% of settlement fund in fees, where settlement fund value included "attorneys' fees and expenses, costs of notice and administration, and incentive payments to class representatives"). This is precisely what this Court did in the recent settlement, including attorney's fees, litigation expenses, incentive awards, and notice and settlement administration costs when determining the value of the fund. *Yamagata v. Reckitt Benckiser LLC*, No. 17-3529, 2021 WL 5909206, at *2 (N.D. Cal. Oct. 28, 2021) (Chhabria, J.); *see also In re Bluetooth,* 654 F.3d at 939, 945 (including costs of notice, documented case costs, incentive awards, *cy pres* award, and attorney's fees in analysis of fund value); *Broomfield.*, 2020 WL 1972505, at *16 (fund value "may include settlement administration costs, litigation expenses, and the allotment for attorneys' fees").

Here, the fund is valued at $45 million—the 'total amount Defendant was willing to spend to settle the case.' This includes $446,449 (notice costs), $380,513 (anticipated claims administration costs), $210,888.10 in litigation expenses, $40,000 in requested incentive awards, and $11,250,000 in requested attorney's fees. *See* Schwartz Decl. at ¶ 5; Wade Decl. at ¶ 28 (listing Class Counsel expenses); Oster Decl. at ¶¶ 27-34; Williams Decl. at ¶¶ 16-18; Casey Decl. at ¶¶ 18-19; and Harrelson Decl. at ¶¶ 12, 14.

      **(c)**    **The value of available benefit in claims payments assumes a reasonable claims rate range**

After the cash consideration paid by Monsanto for administrative expenses, incentive awards, and attorney's fees and costs, the remaining amount made available to the Class in claim payments totals $32,672,150. The entirety of this amount is an available benefit to be included in

the fund's valuation given the reasonable assumptions regarding claims rates. When calculating the fund size, a court should not ignore the "economic reality" regarding claims rates in similar cases. *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (citing *In re Bluetooth*, 654 F.3d at 943). To do so may result in inequitable situations where an attorney fee award dwarfs the amount actually payable to the Class. *See id.* (when examining fees in terms of 'economic reality', "the award exceeds the maximum possible amount of class monetary relief by a factor of three"). Thus, where the 'benefit to the Class' (in terms of the amount potentially payable in claims) assumes "a 100% claims rate[,]" such purported value is largely "illusory." *In re Myford Touch Consumer Litig.*, No. 13-3072, 2018 WL 10539266, at *1-2 (N.D. Cal. June 14, 2018).

Here, this is not an uncapped claims-made settlement, where class counsel are seeking 25% of a common fund value that is 'theoretically possible' with a 100% claims rate. If that were the case (and absent a cap Plaintiffs sought 25% of all theoretical payments), Plaintiffs' fees would be $133 million. [15] Rather, Plaintiffs' estimation of the total *available* benefit—reflected by the $45 million Ceiling Amount—utilizes the upper end of a reasonable estimated claims rate range: approximately 6 percent.[16] As Plaintiffs previously explained, "the Ceiling Amount will cover a claims rate on the high end of likely claims." MPA at 30. Where a modest 6% claims rate is assumed, the resulting potential payout in claims is hardly 'illusory'—it is clearly an 'available benefit' to the Class.[17]

Using a 6 percent claims rate to calculate a (plausible best-case scenario) *available* Class benefit is more than reasonable. A claims "rate of 4-9%...is typical for consumer class actions." *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 622 (N.D. Cal. 2021), aff'd, No. 21-

---

[15] This represents 25% of $532,000,000 (20% of the total retail sales figure of $2.66 billion)

[16] With a claims rate of 6.14%, $32,672,150 would be paid to the Class. When proposed fees, expenses, notice, claims administration, and incentive awards are added, the result is the $45 million cap.

[17] For example, where "claims rates are often in the range of 1 to 10%, trending towards the lower end", a court should utilize the higher end of that range. *In re Myford Touch*, 2018 WL 10536266, at *1-3 (calculating fund size based on higher end of claims rate range instead of class counsel's proposed 100% claims rate).

15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) (citing Fed. Trade Comm'n, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* (2019) at 11). This is further underscored by the testimony of the notice administrator and comparison to similar actions. As the notice administrator observed, "[t]here is no formula to project response rates with certainty[.]" Declaration of Brandon Schwartz, ECF No. 14486-4 ("MPA Schwartz Decl.") at ¶ 10. And while typical low-value retail item claims rates average between 1% and 5%, "[i]t is also instructive to look to comparable settlements with Monsanto related to Roundup® products, such as the *Rawa* and *Jones* settlements." *Id.* ¶ 12. The claims rates in those two cases were 13% and 2-3%, respectively.[18] *See Rawa v. Monsanto Co.*, No. 17-1252, 2018 WL 2389040, at *3 (E.D. Mo. May 25, 2018), aff'd, 934 F.3d 862 (8th Cir. 2019); *Jones v. Monsanto Co.*, No. 19-102, 2021 WL 2426126, at *3 (W.D. Mo. May 13, 2021), aff'd, 38 F.4th 693 (8th Cir. 2022). "Given that this case shares similar class products and likely purchasers as *Rawa* and *Jones*, it is reasonable to expect that claims volumes in this case may fall within this range, though it is possible that there could be an increased claims volume in light of factors such as the level of press coverage of this matter and the nature of Plaintiffs' allegations." MPA Schwartz Decl. ¶ 12.[19]

It is true that the actual claims rate in this action appears to be around a range of 2.33% to 2.67%. *See* Schwartz Decl. at ¶ 4; Wade Decl. at ¶ 6.[20] But this is not the measure of the total available benefit – which is $45 million based on a very realistic claims rate. "Class counsel should not be penalized for these or other legitimate reasons [for a low claims rate] unrelated to the quality

---

[18] The average of the *Rawa* and *Jones* settlement was between 7.5% and 8%, which is *above* the 'higher end' claims rate assumed by Plaintiffs, further underscoring the reasonableness of Plaintiffs' calculation of the total available benefit.

[19] This is precisely the approach mandated by this District's Guidance directing parties seeking preliminary approval to provide "an estimate of the number and/or percentage of class members who are expected to submit a claim in light of the experience of the selected claims administrator and/or counsel from other recent settlements of similar cases, the identity of the examples used for the estimate, and the reason for the selection of those examples." Guidance § (1)(g).

[20] Notably, this results in an average approximate payment of $53.80 - $61.37 per claimant. Schwartz Decl. at ¶ 4.

of representation they provided." *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013). As the Supreme Court has observed, "a lawyer who recovers a common fund for the benefit of [a class] is entitled to a reasonable attorney's fee from the fund as a whole," even if part reverts to the defendant. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 480 (1980); *see also In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 385-87 (E.D. Pa. 2019) ("it is now known that only 20,262 individuals filed claims for a total of $211,255.00 in cash payments. . .[however] the low level of distribution of benefits to the Class does not reflect a failure of Class Counsel to adequately represent the interests of the Class."); *Jones v. Monsanto Co.,* 38 F. 4th 693, 699 (8th Cir. 2022) ("But the funds that are ultimately allocated *cy pres* were available for class members to claim.  If the court affirms the adequacy of the notice to the class, then the court cannot fault plaintiff's counsel for the fact that class members, for myriad possible reasons, did not submit enough claims to exhaust the Common Fund."), *reh'g en banc denied,* No. 21-2292, 2022 U.S. App. LEXIS 22803 (8th Cir. Mo., Aug. 16, 2022).

In calculating the total available benefit, the $45 million payment ceiling is achieved where approximately 6 percent of Class Members make claims. This is a more than reasonable estimation of potential claims rate, given not only the statistics on consumer class actions generally but with respect to other Monsanto cases with similar products.

Having valued the fund at $45 million, Plaintiffs turn to the reasonableness of awarding 25% of that fund—the Ninth Circuit's benchmark—in attorney's fees.

### 2.      Twenty-five percent of the fund is reasonable

Plaintiffs now turn to the second step in the percentage-of-the-fund inquiry: the reasonableness of the percentage sought.

### (a)      Twenty-five percent is the Ninth Circuit's 'benchmark'

The Ninth Circuit has "established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (*citing Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)); *see also In re Anthem*, 2018 WL 3960068, at *4 (when applying the

percentage-of-the-fund method, "it is well established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees").

Here, 25% of the fund ($11,250,000) comports with the Ninth Circuit's benchmark and is the presumptively reasonable amount of attorneys' fees.

> **(b)      The fund value does not rely on an injunctive relief component**

However, though "a helpful 'starting point[,]'…the benchmark is not per se valid[.]" *In re Online DVD*, 779 F.3d at 955 (quoting *Vizcaino*, 290 F.3d at 1048. Thus, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (quoting *Six (6) Mexican Workers*, 904 F.2d at 1311). The fund can be adjusted up or down, and "in most common fund cases, the award exceeds the benchmark." *de Mira v. Heartland Emp. Serv., LLC*, No. 12-4092, 2014 WL 1026282, at *1 (N.D. Cal. Mar. 13, 2014) (quoting *In re Omnivision*, 559 F. Supp. 2d at 1047).[21]

The most typical 'special circumstance' warranting a downward departure from the 25% standard is where the settlement's 'benefit' to the class is largely injunctive, because "[i]njunctive relief is inherently difficult to monetize." *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021). There is a risk that the value may be manipulated "by overreaching lawyers seeking to increase the value assigned to a common fund." *Staton*, 327 F.3d at 974.

---

[21] For example, when awarding 32.8% of the settlement fund for fees and costs, one court explained: "absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%[,]" as this will "encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorneys' fee of 33% of the recovery); *Williams*, 129 F.3d at 1027 (33.33% of total fund awarded); *Morris v. Lifescan, Inc.*, 54 Fed. App'x 663 (9th Cir. 2003) (affirming fee award of 33% of the recovery); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (citing to five class actions where federal district courts approved attorney fee awards ranging from 30% to 33%); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving attorney fee award of 33.33% of the common fund and holding that award was similar to awards in three other cases where fees ranged from 33.33% to 40%).

Here, the value to the Class is not tied to a non-monetary injunctive component. Therefore, a downward adjustment from the Ninth Circuit's benchmark is not appropriate. As explained below, Plaintiffs' calculation of the fund size is entirely monetary, and further takes into account real world assumptions regarding claims rates in determining the total available benefit to Class Members. *See supra* § III(B)(1).

### (c)     The *Vizcaino* factors support a finding of reasonableness

"In *Vizcaino*, [the Ninth Circuit] identified several factors courts may consider when assessing requests for attorneys' fees calculated pursuant to the percentage-of-recovery method: (1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; (6) and whether the case was handled on a contingency basis." *In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020) (citing *Vizcaino*, 290 F.3d at 1048–50; *Online DVD-Rental*, 779 F.3d at 954–55). When assessing the *Vizcaino* factors, it is important to "take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

As explained above, 25% is the Ninth Circuit benchmark in percentage-of-the-fund cases, and the circumstances typically justifying a departure from the benchmark are not present here. Even if the Court found that that such circumstances existed, an analysis of the *Vizcaino* factors also confirms the reasonableness of the requested award. Indeed, the *Vizcaino* factors—which are typically used to justify an *upwards* departure from the 25% benchmark—would actually justify such an upwards departure in this case (which Plaintiffs do not seek).

### (i)     Class counsel achieved excellent results for the Class

The first *Vizcaino* factor supports the reasonableness of the instant fee request. Courts look at the settlement's terms on their face, and also weight the results in light of a case's particular circumstances. These circumstances include, *inter alia*: whether "counsel pursued this case in the absence of supporting precedents"; whether defendants put forth "vigorous opposition throughout

15

the litigation"; and "counsel's 'expert handling of the case.'" *Vizcaino*, 290 F.3d at 1048 (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993)).

The benefits obtained for the Class are excellent. As noted above, based on Plaintiffs' price premium expert model, Settlement would provide Class Members with direct cash payments of approximately *two-thirds* of their estimated best-case damages were they to succeed at trial, and the estimated average individual Class Member recovery is over $50.00 per person. There is no pro rata deduction of individual claims as the Ceiling Amount was not exceeded. Further, Class Members are not releasing any claims for personal injury or medical monitoring. This is an excellent result on its face, and even more so given the fact-intensive nature of Plaintiffs' claims, Monsanto's and retailers' success in several Related Actions,[22] and the other risks, costs, and uncertainties of litigating those claims. As this Court noted, on its face "the settlement amount appears to be fair. Given the low participation rate that can be expected in low-value consumer settlements such as this, the floor/ceiling settlement structure is reasonable." PA Order at ¶ 4 (language added by Court). The claims rate is such that claimants will not suffer a pro rata deduction due to either the cap being exceeded or the award of attorney's fees sought herein.

The circumstances of this case also underscore the excellent results obtained. Counsel pursued this matter in the absence of supporting precedents, and even continued to pursue the case after early setbacks. Further, based on the record and history of Related Actions, it is beyond doubt that Monsanto and the retailers put forth vigorous opposition throughout the litigation.

Counsel for Plaintiffs have also demonstrated expert handling of this case. As noted by Monsanto, Plaintiff's litigation strategy was complex and multi-faceted, with Plaintiffs filing "a series of actions in various jurisdictions against both Monsanto and key retailers in order to exert leverage over Monsanto in terms of either liability or settlement." Def. Reply to Opp. to Prelim. Approval, ECF 14710, at 2. As described previously by Plaintiffs, this settlement only occurred

---

[22] While 'Related Actions' is used in the Settlement Agreement, it is somewhat of a misnomer. The Settlement Agreement actually included and encompassed these actions, and represents a settlement of those actions as well.

after Plaintiff pressured Monsanto through more than a dozen actions in courts around the country since July 2019. MPA at 2-7.

Class Counsel achieved excellent results for the Class.

> **(ii)   Plaintiffs' claims carried substantial litigation risk, and Class Counsel experienced significant burdens litigating the case**

The second and fifth *Vizcaino* factors also support the reasonableness of the requested fee. It is beyond doubt that Plaintiffs' claims carried substantial litigation risk. As this Court observed:

> The settlement amount and compensation rates appear to be adequate given the many risks inherent in this litigation. Were this litigation to proceed, Monsanto would have colorable defenses available to it (such as preemption) that may wholly absolve it of liability. Additionally, there is a real risk that the plaintiffs would not be able to demonstrate that they are entitled to any damages as the "price premium" calculation would be heavily contested.

PA Order ¶ 5 (language added by Court). Further, Plaintiffs experienced significant burdens litigating this matter. This settlement required a nationwide strategy, with contemporaneous suits against Defendant and its retail partners in multiple jurisdictions at once. Plaintiffs also doubled down on their litigation efforts despite early setbacks. *See* MPA at 2-7; Plaintiffs' Reply in Support of MPA, ECF No. 14709 ("MPA Reply") at 2-6.

The second and fifth *Vizcaino* factors weigh in favor of approving the fee request.

> **(iii)   The requested fee reflects the market rate in consumer class actions**

The fourth *Vizcaino* factor also weighs in favor of granting the requested fee. As explained above, the Ninth Circuit has established a benchmark of 25%, and it is not uncommon for courts in this Circuit to award fees even *higher* than 25% in common fund cases. *See supra* fn. 21. The same holds true for fee awards in common fund settlements of consumer fraud actions. *See, e.g,* *Yamagata*, 2021 WL 5909206, at *4 (Chhabria, J.) (awarding 25% of common fund in action relating to misleadingly labeled glucosamine joint health dietary supplements); *Johnson v. Gen. Mills, Inc.*, No. 10-00061, 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013) (awarding 30% of an $8.5 million common fund in an action about the health benefit labeling of probiotic yogurt);

*Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016) (awarding 27% of a $50 million common fund in an action challenging deceptive advertising of "on sale" pricing of retail products). The benchmark makes even more sense in this case given that the requested fee would result in a modest 1.4 multiplier, in line with other consumer class actions. *See infra* § III(C)(2).

### (iv)    This case was handled on a contingency basis

Finally, the sixth *Vizcaino* factor supports the fee request. To date, Class Counsel and Plaintiffs' counsel have worked for 13,302.35 hours (excluding work on the fee petition) with no payment, and no guarantee of payment absent a successful outcome. Wade Decl. ¶ 19, 36-52; Oster Decl. at ¶¶ 5-26; Williams Decl. at ¶¶ 6-15; Casey Decl. at ¶¶ 8-17; Sheehan Decl. at ¶¶ 8-17; Harrelson Decl. at ¶¶ 8-11, 13, 15; and, Zbrzeznj Decl. ¶¶ 7-24. They further advanced $210,888.10 in out-of-pocket expenses, again with no guarantee of repayment. Wade Decl. ¶ 28; Oster Decl. at ¶¶ 27-34; Williams Decl. at ¶¶ 16-18; Casey Decl. at ¶¶ 18-19; Harrelson Decl. at ¶¶ 12, 14. If the case had advanced through discovery, class certification, summary judgment and trial, these expenses would have increased many-fold, and counsel would have been required to advance these expenses potentially for several years of litigation through judgment and appeals. Wade Decl. at ¶ 33.

In all, five of the six *Vizcaino* factors underscore the reasonableness of Plaintiffs' petition for attorney's fees, with the third factor being neutral (as there is no injunctive component of the settlement). The weighs heavily in favor of approving the instant motion.

### 3.    A lodestar cross-check further ensures the fee's reasonableness

While discretionary, the Ninth Circuit has "encouraged courts using the percentage-of-recovery method to perform a cross-check by applying the lodestar method to confirm that the percentage-of-recovery amount is reasonable." *In re Optical Disk Drive*, 959 F.3d at 930 (citing *In re Online DVD*, 779 F.3d at 949). The cross-check analysis is a two-step process. First, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys. *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000). Second, the Court determines the multiplier required to match the lodestar to the percentage-of-

the-fund request made by counsel, and determines whether the multiplier falls within the accepted range for such a case. Here, the lodestar cross-check confirms the reasonableness of the requested fee.

As of this filing, counsel for Plaintiffs have worked 13,302.35 hours on this matter (excluding this fee application) for a total lodestar, at current billing rates, of $7,947,522.50. Wade Decl. ¶ 19. This represents a blended hourly rate of less than $600, which is well within the bounds of reasonable hourly rates in this District. Wade Decl. ¶ 21; *see also infra* § III(C)(1) (discussing hourly rates in this District).

A fee award of 25%, or $11,250,000 would represent a modest 1.4 multiplier over the base lodestar fee. Wade Decl. ¶ 22; *see also infra* § III(C)(2) (discussing the factors supporting the application of a multiplier to Plaintiff Counsel's lodestar). This multiplier falls well within the accepted range in the Ninth Circuit, where positive multipliers are routinely awarded, and is reasonable. *See, e.g., Vizcaino*, 290 F.3d at 1051 (noting district court cases in the Ninth Circuit approving multipliers as high as 19.6); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving fee award resulting in a multiplier of 5.2, and collecting similar cases); *Steiner v. Am. Broad. Co., Inc.*, 248 Fed. App'x. 780, 783 (9th Cir. 2007) (approving multiplier of 6.85); NEWBERG ON CLASS ACTIONS § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher). The modest multiplier provided by the lodestar cross-check here demonstrates that the percentage fee sought is fair and reasonable.

### C.  Alternatively, the Court May Grant the Requested Attorney's Fee Under the Lodestar Method

Under Ninth Circuit standards, a District Court may also award attorneys' fees under the "lodestar" method. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). The lodestar figure is calculated by multiplying the hours spent on the case by reasonable hourly rates for the region and attorney experience. *See, e.g., In re Bluetooth*, 654 F.3d at 941-42; *Hanlon*, 150 F.3d at 1029. The resulting lodestar figure may be adjusted upward or downward by use of a multiplier to

account for factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment. *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Courts typically apply a multiplier or enhancement to the lodestar to account for the substantial risk that class counsel undertook by accepting a case where no payment would be received if the lawsuit did not succeed. *Vizcaino*, 290 F.3d at 1051.

1.   **Counsel expended a reasonable number of hours at a reasonable hourly rate**

Class Counsel and Plaintiffs' Counsel expended a reasonable number of hours at a reasonable hourly rate. Plaintiff counsel's declarations describe the extensive work performed in connection with this litigation since its inception. Counsel carefully coordinated its work throughout this litigation to avoid any internal duplication of effort, and was thereby able to work very efficiently. Wade Decl. ¶ 11. To support this request, Class Counsel and Plaintiffs' Counsel are separately submitting billing summaries showing what work was done and by whom. *Id.* at ¶ 36-52; *see also* Oster Decl. at ¶¶ 8-26; Williams Decl. at ¶¶ 8-15; Casey Decl. at ¶¶ 8-17; Sheehan Decl. at ¶¶ 8-17; Harrelson Decl. at ¶¶ 8-11, 13, 15; and, Zbrzeznj Decl. ¶¶ 7-24. These records confirm the efficient billing.

The number of hours expended by Class Counsel and Plaintiffs' Counsel is also extremely reasonable given the complications involved in litigating this matter. *See* Wade Decl. at ¶¶ 36-52 (summarizing hours expended litigating this matter). As the procedural history indicates, this matter was resolved only after a multi-state litigation strategy which involved, *inter alia*, bringing claims against various retailers (with which Monsanto had indemnity clauses) to exert settlement pressure on the Defendant. Plaintiffs engaged experts, had several rounds of pleadings, and participated in protracted settlement negotiations in order to achieve this result for the Class.

Plaintiff counsel's hourly rates, ranging between $350 and $795, are also within "the prevailing market rates in the relevant community." *Van Skike v. Dir., Off. of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009) (quotations omitted). *See, e.g., In re Nat'l*

*Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 14-2541, 2017 WL 6040065, at *8-9 (N.D. Cal. Dec. 6, 2017), aff'd, 768 Fed App'x 651 (9th Cir. 2019) (finding rates between $295 and $1035 are "well within the range of $200 to $1,080 charged by attorneys in California in 2015"); *see also In re High-Tech Emp. Antitrust Litig.*, No. 11-2509, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (finding attorney rates of $310 to $975 and paralegal rates of $190 to $430 were market in 2015).

### 2.   The *Hanlon* factors support the reasonableness of the fee request and lodestar multiplier

The lodestar analysis is not limited to the simple mathematical calculation of Plaintiff counsel's fee. *See Morales v. City of San Rafeal*, 96 F.3d 359, 363-64 (9th Cir. 1996). Rather, Plaintiff counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364.

Here, Plaintiff counsel is requesting an award resulting in a modest 1.4 multiplier. This is well within the range typically seen in the Ninth Circuit. In a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4.  *See Vizcaino*, 290 F.3d at 1051, n.6; *see also* Newberg on Class Actions § 14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded). In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time and labor required, the novelty and complexity of the litigation, the skill and experience of counsel, the results obtained, and awards in similar cases. *Kerr*, 526 F.2d at 70; *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984).

Further, the *Hanlon* factors overwhelmingly support the reasonableness of the requested fee and modest multiplier. With respect to the four *Hanlon* factors, rather than repeat previous argument, Plaintiffs respectfully refer the Court to its analysis of the (nearly identical) *Vizcaino* factors. *See supra* § III(B)(2)(c).

21

IV.  **CLASS COUNSEL SHOULD RECOVER $210,888.10 IN REASONABLE AND NECESSARY LITIGATION EXPENSES**

The Ninth Circuit allows recovery of litigation expenses in the context of a class action settlement. *See Staton*, 327 F.3d at 974. Class Counsel is entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily bill a fee-paying client. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). These expenses include court fees, mediation fees, printing costs, legal research costs, expert fees, and other related expenses. Wade Decl. at ¶¶ 26-27. Here, Class Counsel and Plaintiffs' Counsel incurred out-of-pocket costs and expenses in the aggregate amount of $210,888.10 in prosecuting this litigation on behalf of the Class. Wade Decl. at ¶ 28; Oster Decl. at ¶¶ 27-34; Williams Decl. at ¶¶ 16-18; Casey Decl. at ¶¶ 18-19; Harrelson Decl. at ¶¶ 12, 14. Notably, the majority of these costs incurred at expert fees totaling $188,561. Wade Decl. at ¶ 28. Each of these expenses was necessary and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for various categories of expenses incurred. *Id*. at ¶ 30.

V.  **THE REQUESTED SERVICE AWARDS ARE FAIR AND REASONABLE**

The Court should grant $40,000 in service awards to the Plaintiffs ($5,000 for each Class Representative). Plaintiffs have provided declarations supporting the service awards they intend to seek in light of their contribution to the ultimate resolution of this case. See Guidance § 7; *see also* Declarations of Class Representatives, ECF Nos. 14486-5 through 14486-12.

As the Ninth Circuit has recognized, "incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases." *In re Online DVD*, 779 F.3d at 943. Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958-59 (9th Cir. 2009); *see also Edwards v. Nat'l Milk Producers Fed'n*, No. 11-4766, 2017 WL 3616638, at *11 (N.D. Cal. June 26, 2017) ("[s]ervice awards for class representatives are provided to encourage individuals to undertake the responsibilities of representing the class and to recognize the time and effort spent

on the case."). Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, inter alia, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiffs have each devoted substantial time and effort to this action, including checking for and providing requested documents, participating in periodic telephone conferences and exchanging correspondence with Class Counsel and Plaintiffs' Counsel, and reviewing and approving pleadings, including the complaint and the Settlement Agreement. *See* Gilmore Decl. at ¶ 6 (approximately 10 hours); Weeks Decl. at ¶ 7 (approximately 22 hours); Taylor Decl. at ¶ 6 (approximately 9 hours); Hanna Decl. at ¶ 6 (approximately 11 hours); Boyette Decl. at ¶ 6 (approximately 8 hours); Ezcurra Decl. at ¶ 6 (approximately 32 hours); Jewell Decl. at ¶ 6 (approximately 10 hours); Kristy Williams Decl. at ¶ 6 (approximately 9 hours). The requested service awards also fall squarely in line with amounts awarded in comparable cases. *See, e.g., China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 n.7 (2018) (class representative may obtain incentive award of up to $25,000); *In re Online DVD*, 779 F.3d 934, 943 (9th Cir. 2015) (affirming $5,000 award); *Galeener v. Source Refrigeration & HVAC, Inc.*, No. 13-4960, 2015 WL 12977077, at *2 (N.D. Cal. Aug. 21, 2015) (Chhabria, J.) (collecting cases and holding that service awards of $27,000, $25,000, $15,000, and $2,000 were "fair and reasonable"). Accordingly, the requested Class Representative service awards should be approved.

## VI.   CONCLUSION

For all of the aforementioned reasons, Plaintiffs' Motion for Attorney's Fees, Costs, and Incentive Awards should be granted in its entirety.

Dated: October 31, 2022

*/s/ Gillian L. Wade*

GILLIAN L. WADE
SARA D. AVILA
MARC A. CASTANEDA
Milstein, Jackson Fairchild & Wade, LLP
gwade@mjfwlaw.com
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, CA 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

JOEL OSTER
The Law Offices of Howard Rubinstein
joel@osterlaw.com
22052 W. 66th St. #192
Shawnee, Kansas 66226

*Counsel for Plaintiffs and the Settlement Class*