GILLIAN L. WADE (State Bar No. 229124)
SARA D. AVILA (State Bar No. 263213)
MARC A. CASTANEDA (State Bar No. 299001)
Milstein, Jackson Fairchild & Wade, LLP
gwade@mjfwlaw.com
savila@mjfwlaw.com
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, CA 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

JOEL OSTER (*admitted pro hac vice*)
Law Offices of Howard Rubenstein, P.A.
joel@joelosterlaw.com
22052 W. 66th St. #192
Shawnee, Kansas 66226

*Attorneys for Plaintiffs and the proposed Settlement Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTT GILMORE, et al.,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>MONSANTO COMPANY,<br><br>　　　　　Defendant. | MDL No. 2741<br><br>Case No. 3:21-cv-08159<br><br>**DECLARATION OF GILLIAN L. WADE IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:　　January 12, 2023<br>Time:　　2:30 p.m.<br>Place:　　Via Zoom Webinar<br>Judge:　　Hon. Vince G. Chhabria |

I, Gillian L. Wade, declare as follows:

1. I am admitted to the bar of this state and am a partner at Milstein Jackson Fairchild & Wade, LLP ("MJFW"), Class Counsel and counsel of record for Plaintiffs Scott Gilmore, Julio Ezcurra, Sherry Hanna, James Weeks, Paul Taylor, Kristy Williams, Amanda Boyette, and Anthony Jewell (collectively, Plaintiffs). I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would competently testify thereto under oath.

2. This declaration is submitted in support of Plaintiffs' Motion for Final Approval.

3. Except for the objections presented at the preliminary approval stage, to date, I am unaware of any members of the Settlement Class who objected to or commented on the Settlement Agreement in writing, pursuant to the process for such objections set forth in the Settlement Agreement or otherwise.[1]

4. I was counsel of record for the plaintiff in *Weeks v. Home Depot U.S.A., Inc.*, No. 2:19-cv-6780 (C.D. Cal.), where there was significant motion practice and discovery, including Home Depot's production of tens of thousands of pages of documents, the plaintiff's responses to written discovery, and many Rule 37 conferences.

5. The *Weeks* opening brief on appeal has been filed, and the matter remains pending before the Ninth Circuit.

6. Sherry Hanna's state court action against Walmart was voluntarily dismissed only after the parties' successful mediation. Similarly, the motion to dismiss in *Williams v. Lowe's Home Centers, LLC*, No. 20-1356 (C.D. Cal. filed July 6, 2020) was fully briefed and voluntarily dismissed only after the Parties had reached an agreement in principle. *Jewell v. Walmart, Inc.*,

---

[1] The Second Amended Class Action Settlement Agreement (the "Settlement") is attached to ECF No. 94-1 at pages 18 to 57. Unless otherwise stated, all capitalized terms refer to the terms defined in the Settlement.

1

No. 19-4088 (W.D. Ark. filed Aug. 12, 2019) and *Boyette v. Lowe's Companies, Inc.*, No.19-4119 (W.D. Ark. filed Sept. 13, 2019) were not "abandoned," but rather, a strategic decision to pursue similar claims against Walmart and Lowes in California was made to carry on the litigation with *Hanna* and *Williams*.

7. I was also counsel of record for plaintiff in *Ezcurra v. Monsanto Co.*, No. 9:20-cv-80524 (S.D. Fla.). In the course of the briefing on Monsanto's motion to dismiss, Class Counsel filed *Fagundes v. The Home Depot*, No. 0:20-cv-61035 (S.D. Fla.) and *Taylor v. Costco Wholesale Corp.*, No. 20-cv-00655 (E.D. Cal.). Monsanto's motion to dismiss in *Ezcurra* led to several amendments to the pleadings and months of motion practice. With Monsanto's motion still pending, the Parties in May 2020 conducted a Rule 26(f) conference, filed a Joint Discovery Plan, and commenced discovery. The Parties in *Ezcurra* exchanged written discovery between May and July 2020. Monsanto responded to interrogatories, requests for admission, and requests for production, and it produced thousands of pages of documents, including sales data and final product labeling. Ezcurra responded to lengthy interrogatories and produced documents. The Parties also served notices of deposition and began negotiating the scope of those depositions. Monsanto produced thousands of pages of documents (including sales data and product labeling) and responded to interrogatories and requests for production.

8. Shortly before Monsanto's expert disclosures were due, and with depositions set to commence, the court granted Monsanto's motion to dismiss on the ground that Florida's safe-harbor provision barred Ezcurra's claims (without addressing the merits of Monsanto's other arguments). *Ezcurra* was dismissed just one business day before depositions were scheduled to begin. Although the depositions never went forward, the parties were prepared for them. Plaintiffs

had also prepared a Motion for Class Certification that was due one week after the case was dismissed. Such preparation was necessary, given that trial was set for December 7, 2020.

9. The *Ezcurra* opening brief on appeal has been filed, and the matter remains pending before the Eleventh Circuit.

10. Through discovery and extensive briefing on an array of complex issues, I was well apprised of the strengths and weaknesses of the cases before engaging in settlement talks. This was further underscored by briefing occurring during the time settlement discussions were underway, creating further risks for both parties which facilitated settlement. Also key was the expert discovery in the *Ezcurra* case.

11. The work done in the Related Cases—discovery, the expert analysis, publicly available discovery from a number of personal injury cases in litigation, and briefing on complex issues, including class certification—contributed significantly to the Settlement.

12. There was significant risk for both parties going into mediation, as informed by the Parties' dueling expert analyses and a number of pending rulings on fully briefed matters.

13. At the time of mediation, the Parties were more than able to assess the risks of continued litigation, further underscoring the Settlement's validity.

14. The claims rate can be calculated by dividing the net valid claims by $532 million (the total cash value of the Settlement assuming no ceiling and a 100% claims rate). The $532 million comes from the total sales value of the Products during the Class Period ($2.66 billion) multiplied the percentage value of the cash payments (20% of the average retail price).

15. Co-counsel and I were actively involved in discussions with the Claims Administrator to ensure that the claims process was not burdensome for Class Members.

16. As explained in Class Counsel's November 14, 2022 letter to the Court, another individual (who stated he is *not* a Class Member but was attempting to help a family member who

3

is) reached out to Class Counsel to complain that he was unable to access the online Claim Form at 10:37 p.m. PST on the last day to make claims. To date, other than the communications with this individual, Class Counsel has received no further correspondence regarding the closure. Class Counsel took the actions described in the November 14 letter to address this issue.

17. The costs of continued litigation would be significant. Although Plaintiffs and Class Counsel have confidence in their claims, a favorable outcome is not assured. For over two years and across more than a dozen Related Actions, Monsanto has raised multiple legal and factual defenses that, barring a settlement, will require additional discovery, depositions, briefing, and other costly and time-consuming pretrial efforts. Moving to trial would involve significant additional expert discovery and motion practice, implicating a decades-long scientific and regulatory record spanning hundreds of studies and millions of pages. There would likely be a vigorous dispute over class certification and potentially interlocutory appeals. It is also quite clear that there would be extensive disputes over the existence and amount of any price premium. And, because there is every reason to believe Monsanto would continue to vigorously defend against Plaintiffs' claims, a long and costly trial on the merits, followed by appeals, could ensue. Even if Plaintiffs were to certify a class and prevail at a class trial, any recovery could be delayed for years by appeal, which could have further delayed and jeopardized a class recovery. And if a class maintained its certified status through trial, any adverse judgment would bind the entire class.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed on November 28, 2022 in Los Angeles, California.

_____
Gillian L. Wade