**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION,<br><br>*Engilis v. Monsanto Company*, 3:19-cv-07859-VC | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW IN SUPPORT**<br><br>Hearing date: January 12, 2023<br>Time: 1:00 pm |

MEMORANDUM OF LAW IN SUPPORT OF MONSANTO'S MOTION FOR SUMMARY JUDGMENT

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on January 12, 2023, at 1:00 pm, in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will move this Court for an order, pursuant to Federal Rule of Civil Procedure 56(c), entering judgment in its favor and against Wave IV Plaintiff Peter Engilis on all claims, on the grounds that there is no issue of material fact for any of the claims.

Dated:  November 30, 2022             Respectfully submitted,


                                      /s/ *Jed P. White*_____
                                      Jed P. White
                                      Attorneys for Defendant Monsanto Company

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................... 1

    I.    BACKGROUND ............................................................................................................ 2

        A.    Plaintiff's Alleged Roundup Use and Claimed Injuries .................................. 2

        B.    EPA's Authority Over Pesticides and Consistent Determination
That Roundup Does Not Cause Cancer ............................................................. 3

SUMMARY JUDGMENT STANDARD ........................................................................................... 5

ARGUMENT ....................................................................................................................................... 6

    I.    Monsanto Is Entitled To Summary Judgment On Plaintiff's Breach Of
Warranty Claims ............................................................................................................. 6

        A.    Plaintiff's Breach of Warranty Claims Fail for Lack of Privity. ...................... 6

        B.    Plaintiff's Breach of Express Warranty Claims Fail Because There
Is No Evidence to Substantiate Monsanto's Alleged Warranties ..................... 6

        C.    Plaintiff's Breach of Implied Warranty Claim Fails Because He
Has No Evidence Fulfilling the Essential Elements of the Claim
under Florida Law. ............................................................................................. 8

    II.    Monsanto is Entitled to Summary Judgment on Plaintiff's Punitive
Damages Claims ............................................................................................................. 9

CONCLUSION .................................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Cyanamid Co. v. Roy*,
  498 So. 2d 859 (Fla. 1986) .................................................................................................. 10

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................................... 5

*Brown v. Hall*,
  221 So. 2d 454 (Fla. Dist. Ct. App. 1969) ............................................................................. 6

*Byrnes v. Small*,
  142 F. Supp. 3d 1262 (M.D. Fla. 2015) ................................................................................. 8

*Carter Hawley Hale Stores, Inc. v. Conley*,
  372 So. 2d 965 (Fla. Dist. Ct. App. 1979) ............................................................................. 8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................................... 5

*Celotex Corp. v. Pickett*,
  490 So. 2d 35 (Fla. 1986) .................................................................................................... 10

*Certain Underwriters at Lloyd's of London v. Black Gold Marine, Inc.*,
  2021 WL 2653819 (S.D. Fla. Feb. 8, 2021) .......................................................................... 8

*Chrysler Corp. v. Wolmer*,
  499 So. 2d 823 (Fla. 1986) .................................................................................................. 10

*Cooper v. Old Williamsburg Candle Corp.*,
  653 F. Supp. 2d 1220 (M.D. Fla. 2009) ................................................................................. 6

*Fisher v. Shenandoah Gen. Constr. Co.*,
  498 So. 2d 882 (Fla. 1986) .................................................................................................. 10

*Hardeman v. Monsanto Company*
  997 F.3d 941, 948 (9th Cir. 2021) ....................................................................................... 11

*Hardeman v. Monsanto*,
  No. 3:16-cv-00525-VC (N.D. Cal. Sept. 17, 2021) ............................................................. 11

*Hill v. Hoover Co.*,
  899 F. Supp. 2d 1259 (N.D. Fla. 2012) .................................................................................. 6

*Holland v. Abbott Lab'ys, Inc.*,
  2022 WL 4091367 (M.D. Fla. Sept. 7, 2022) ........................................................................ 6

*Hosp. Corp. of Lake Worth v. Romaguera*,
   511 So. 2d 559 (Fla. Dist. Ct. App. 1986 .............................................................................. 1, 9

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
   2021 WL 3666312 (S.D. Fla. Aug. 18, 2021) ............................................................................ 7

*Johnson v. Monsanto*,
   52 Cal. App. 5th 434 (2020) ..................................................................................................... 11

*Johnson v. Monsanto*,
   No. CGC-16-550128 (S.F. Super. Ct. Jan. 13, 2021) .............................................................. 11

*Jovine v. Abbott Labs., Inc.*,
   795 F. Supp. 2d 1331 (S.D. Fla. 2011) ...................................................................................... 7

*Owens-Corning Fiberglas Corp. v. Ballard*,
   749 So. 2d 483 (Fla. 1999) ....................................................................................................... 10

*Pilliod v. Monsanto*,
   No. RG17862702 (Alameda Super. Ct. July 5, 2022) ............................................................. 11

*Pilliod, et. al v. Monsanto Company*
   67 Cal. App. 5th 591, 641 (2021) ............................................................................................. 11

*PR Overseas Boating, Ltd. v. Talaria Co., LLC*,
   2022 WL 1238999 (S.D. Fla. Apr. 27, 2022) ............................................................................ 9

*Pye v. Fifth Gen., Inc.*,
   2015 WL 5634600 (N.D. Fla. Sept. 23, 2015) ........................................................................... 9

*Royal Typewriter Co., Div. of Litton Bus. Sys., Inc. v. Xerographic Supplies Corp.*,
   719 F.2d 1092 (11th Cir. 1983) .................................................................................................. 9

*T.W.M. v. Am. Med. Sys., Inc.*
   886 F. Supp. 842 (N.D. Fla. 1995) ............................................................................................. 6

*Toca v. Tutco, LLC*,
   430 F. Supp. 3d 1313 (S.D. Fla. 2020) .................................................................................. 6, 7

*Turner v. PCR, Inc.*,
   754 So. 2d 683 (Fla. 2000) ....................................................................................................... 10

*In re Vioxx Prods. Liab. Litig.*,
   478 F. Supp. 2d 897 (E.D. La. 2007) ......................................................................................... 3

*Wash. Mut. Bank, FA v. Sup. Ct.*,
   24 Cal. 4th 906 (Cal. 2001) ........................................................................................................ 3

*Wasser v. Sasoni*,
   652 So. 2d 411 (Fla. Dist. Ct. App. 1995) ................................................................................. 8

*Wyse v. Gerard Roof Prod., LLC*,
   2019 WL 7347179 (N.D. Fla. Nov. 12, 2019) .......................................................................... 8

**Statutes**

7 U.S.C. §136a(c)(1)(F) ................................................................................................................. 4

7 U.S.C. §136a(c)(2)(A) ................................................................................................................. 4

Fla. Stat. § 672.313(1)(a)–(c) ......................................................................................................... 7

Fla. Stat. § 672.314 ........................................................................................................................ 8

Fla. Stat. § 672.315 ..................................................................................................................... 8, 9

Fla. Stat. § 768.72(2)(a)-(b) ........................................................................................................... 1

Fla. Stat. § 768.73 ........................................................................................................................ 10

Fla. Stat. § 768.73(2)(a) .................................................................................................... 2, 10, 11

Fla. Stat. § 768.73(2)(b) ............................................................................................................... 11

Florida Uniform Commercial Code ............................................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 56(a) ...................................................................................................................... 5

*Glyphosate; Pesticide Tolerances*, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013)
   (codified at 40 C.F.R. Part 180) .............................................................................................. 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Peter Engilis asserts claims for strict liability, negligence, and breach of warranty based on Defendant Monsanto Company's ("Monsanto") design of an allegedly defective and unreasonably dangerous product and Monsanto's failure to warn of the carcinogenic risks allegedly associated with glyphosate, the active ingredient in Monsanto's Roundup-branded products. Monsanto moves for summary judgment on multiple grounds on which this Court has already ruled, including that (A) all of Plaintiff's claims are preempted by federal law, (B) Plaintiff's warning claims fail because the alleged cancer risks were not known or knowable by the scientific community at the time of distribution, and (C) Plaintiff has not met the high standard for punitive damages in this case under Florida law (and cannot do so).[1] Consistent with the Court's repeated instructions not to re-litigate issues previously ruled upon by the Court, but in order to fully preserve the appellate record, Monsanto hereby incorporates by reference the following pleadings that were filed on the MDL docket:

- Monsanto's MSJ on Non-Causation Grounds (ECF #2419)
- Monsanto's Reply in Support of MSJ on Non-Causation Grounds (ECF #2634)
- Monsanto's MSJ on Non-Causation Grounds (Wave 1) ECF # 7999)
- Monsanto's MSJ on Non-Causation Grounds (Wave 2) (ECF # 12785)
- Monsanto's MSJ on Non-Causation Grounds (Wave 3) (ECF # 13733)

By incorporating its prior filings, Monsanto is in no way waiving any of the arguments raised therein.

Monsanto also moves for summary judgment on several case-specific grounds under Florida law (which controls here). This portion of Monsanto's Motion presents issues on which this Court has not yet ruled.

First, Monsanto seeks summary judgment on Plaintiff's breach of warranty claims for multiple

---

[1] Like the laws of other states discussed in prior summary judgment briefs, Florida law sets a high bar for punitive damages. *See* Fla. Stat. § 768.72(2)(a)-(b) (requiring Plaintiff to establish "intentional misconduct" or "gross negligence"); *Hosp. Corp. of Lake Worth v. Romaguera*, 511 So. 2d 559, 564 (Fla. Dist. Ct. App. 1986) ("There appears to be little doubt that the Florida Supreme Court has severely limited the availability of punitive damages in products liability cases and those involving employer negligence."). Plaintiff Engilis cannot meet this high burden for the reasons Monsanto has identified in prior briefing. *See, e.g.,* ECF No. 2419 at 17-21; ECF No. 12785.

reasons. Plaintiff has not presented evidence that Monsanto's alleged warranties induced him to buy Roundup—a required element of any breach of warranty claim under Florida law. Here, Plaintiff cannot make such a showing because he testified at his deposition that he *never* relied on any advertisements or other alleged "warranties" with respect to Roundup. Because there was no reliance, Plaintiff cannot show that a warranty would have changed his behavior and prevented his injuries, and the Court must grant Monsanto summary judgment on Plaintiff's breach of warranty claims. Further, Plaintiff also used Roundup for its ordinary purpose and stated in his deposition that it satisfied that purpose. Thus, Plaintiff's claim for breach of implied warranties also necessarily fails. Finally, Plaintiff did not comply with the breach of express warranty notice requirements of Florida law. Under the law, to obtain relief for an alleged breach of warranty, a plaintiff must issue a written demand prior to the filing of any action. Plaintiff failed to do so; thus, his breach of express warranty claims necessarily fail for this reason as well.

Second, Monsanto moves for summary judgment on Plaintiff's request for punitive damages under Florida law. Florida Statute § 768.73(2)(a) prohibits an award of punitive damages in a civil action where punitive damages have previously been awarded against a defendant for the "same act or single course of conduct for which the claimant seeks compensatory damages." *Id.* Because Monsanto has already been subject to punitive damage awards for the conduct giving rise to this suit, including in the first and only case to go to trial in this MDL and in two cases in California state court, Plaintiff's request for repetitive punitive damages in this case is barred under Florida law.

**I. BACKGROUND**

**A. Plaintiff's Alleged Roundup Use and Claimed Injuries**

Plaintiff filed his Complaint on November 11, 2019 in the U.S. District Court for the Middle District of Florida. He alleges that he developed Chronic Lymphocytic Leukemia ("CLL") as a result of exposure to Monsanto's Roundup-branded glyphosate-based herbicides ("Roundup"). CLL is a type of non-Hodgkin's lymphoma ("NHL"). Petition ¶ 66; *see also* Declaration of Jed White ("White Decl."), Ex. A, Deposition of Peter Engilis, Jr. ("Engilis Dep."), at 128:9–13. Plaintiff alleges that he used Roundup over the course of approximately 25 years. *Id.* at 39:16-18; 43:6-10; 51:10-11. He claims he did not see advertisements for Roundup in stores. *Id.* at 53:14-54:20. He claims that he first used

Roundup after his wife purchased it for him sometime around 1990. *Id.* at 41:10-20; 43:6-10; 52:25–53:9. He used Roundup at his current residence since about 1990 to kill weeds and poison ivy. *Id.* at 43:6-10. Because it was always successful at killing weeds on his properties, he continued to purchase the product until he stopped using Roundup in 2015. *Id.* at 41:10-20; 42:9-43:10; 51:10-11; 52:25–53:9; 82:8-83:13; 106:6-25. Plaintiff stated that he has not had any communication with anyone at Monsanto regarding Roundup. *Id.* at 124:3–9 ("Q: Have you ever communicated with a salesman or sales representative from Monsanto? A: No. Q: Have you ever communicated with anyone else at Monsanto about anything? A: No.").

Plaintiff claims to have used Roundup at a number of his properties: his current residence in DeBary, Florida, from 1990 to 2015, *id.* at 39:16-18; 51:10-11; his rental home in Summerfield, Florida from 2008 to 2013, *id.* at 44:8-45:6; 60:13-61:12; and his condo in Ft. Lauderdale, Florida after 1990, *id.* at 20:7-9; 45:7-22. Although California and Florida have conflicts in their punitive damage standards, Plaintiff is a Florida resident, Plaintiff bought the product in Florida, Plaintiff's alleged use occurred in Florida, and the State of Florida has a legitimate governmental interest in ensuring its laws apply to the residents in the state. Because California has no interest in the matter besides the MDL being located in its jurisdiction, Florida law should apply to his claims. *See Wash. Mut. Bank, FA v. Sup. Ct.*, 24 Cal. 4th 906, 919-20 (Cal. 2001) (a party seeking to select a foreign state's law "must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it.") (quoting *Hurtado v. Sup. Ct.*, 11 Cal. 3d 574, 582 (Cal. 1974)). Moreover, Florida is the transferor forum. *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007) (for cases, "filed in, or removed to, federal courts across the country and transferred to the MDL court by the Judicial Panel on Multidistrict Litigation," … "the MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules") (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 524 (1990)).

**B. EPA's Authority Over Pesticides and Consistent Determination That Roundup Does Not Cause Cancer**

EPA first approved and registered glyphosate-based herbicides ("GBHs") for sale in 1974.

White Decl., Ex. B, Monsanto, *Backgrounder—History of Monsanto's Glyphosate Herbicides* at 1 (June 2005) ("Glyphosate Backgrounder"); Ex. C, EPA, OPP, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 12 (Sept. 12, 2016). Since then, Monsanto has manufactured and sold a variety of glyphosate-based products, including many under the brand name "Roundup," for use on farms, public spaces, and residential gardens. Roundup is one of the most studied herbicides in the world. White Decl., Ex. B, Glyphosate Backgrounder at 1. It has become popular due to its safety profile and effectiveness for controlling weeds. *Id.* On June 26, 1991, EPA classified glyphosate as non-carcinogenic for humans "based on a lack of convincing evidence of carcinogenicity in adequate studies." White, Decl., Ex. D, EPA Reregistration Eligibility Decision (RED) at 14. Two years later, EPA reregistered glyphosate after concluding that there was "evidence of non-carcinogenicity in humans." *Id.*

As part of its statutorily mandated registration review, *see* 7 U.S.C. §136a(c)(1)(F), (2)(A), an interdisciplinary team of thirteen EPA scientists known as the Cancer Assessment Review Committee ("CARC") unanimously classified glyphosate as "Not Likely to be Carcinogenic to Humans" in October 2015. White Decl., Ex. E, EPA, OPP, *Cancer Assessment Document–Evaluation of the Carcinogenic Potential of Glyphosate* at 7 (Oct. 1, 2015). In 2017, EPA's Office of Pesticide Programs ("OPP")—concluded that "the strongest support is for 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment." White Decl., Ex. F, EPA, OPP, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141, 143 (Dec. 12, 2017). This is EPA's lowest risk classification level with regard to cancer. *Id.*

EPA next sought review of the carcinogenicity of glyphosate by an independent team of outside scientists, called the Scientific Advisory Panel ("SAP"). White Decl., Ex. F, Revised Glyphosate Issue Paper at 13. On December 12, 2017, EPA issued another comprehensive glyphosate review that took account of the SAP's recommendations and new literature reviews released after OPP's 2016 Issue Paper. *Id.* In this December 2017 review, EPA again concluded that "[t]he strongest support is for 'not likely to be carcinogenic to humans.'" *Id.* at 144.

In April 2019, EPA issued its Proposed Interim Registration Review Decision on glyphosate, in which it affirmed that glyphosate is "not likely to be carcinogenic to humans," and that it has "not

identif[ied] any human health risks from exposure to any use of glyphosate." White, Decl., Ex. G, EPA, *Glyphosate–Proposed Interim Registration Review Decision Case Number 0178* at 7 (Apr. 23, 2019). EPA's "classification [was] based on a thorough weight-of-evidence review of all relevant data and is in accordance with the agency's 2005 Guidelines for Carcinogen Risk Assessment." *Id.*[2]

EPA's comprehensive evaluation of glyphosate and conclusion that it is not carcinogenic is consistent with the findings of other sophisticated regulatory and public health authorities in the European Union, Canada, Australia, and elsewhere, all of which have also independently reviewed the carcinogenicity of glyphosate, and, like EPA, concluded that glyphosate is "unlikely to pose a carcinogenic risk to humans." *See* White Decl., Ex. H, Joint Meeting on Pesticide Residues, *Pesticide residues in food - 2016*, Special Session of the Joint FAO/WHO Meeting on Pesticide Residues at 13, 24, 38 (May 2016).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it could affect the outcome of the case, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of "informing" the Court that there exists the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must come forward with evidence to show there is in fact a genuine issue for trial. *Id.* at 323–24. A "complete failure of proof concerning an essential element of the nonmoving party's case" warrants summary judgment and "necessarily renders all other facts immaterial." *Id.* at 323.

---

[2] EPA also conducted separate carcinogenicity assessments of glyphosate in 1991, 1997, 2002, 2004, 2008, and 2013. Each time, it concluded that glyphosate does not pose a risk of carcinogenicity in humans. *See, e.g.,* EPA, Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (codified at 40 C.F.R. Part 180).

**ARGUMENT**

**I.    MONSANTO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF WARRANTY CLAIMS**

**A. Plaintiff's Breach of Warranty Claims Fail for Lack of Privity.**

In Florida, warranties are strictly contractual in nature. *Brown v. Hall*, 221 So. 2d 454, 458 (Fla. Dist. Ct. App. 1969). Therefore, "[t]he law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant." *T.W.M. v. Am. Med. Sys., Inc*. 886 F. Supp. 842, 844 (N.D. Fla. 1995) (citing *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39–40 (Fla. 1988); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1267 (N.D. Fla. 2012) (dismissing Plaintiff's claims for breach of express and implied warranties under Florida law because she failed to plead the requisite element of privity of contract with the Defendants); *Holland v. Abbott Lab'ys, Inc*., 2022 WL 4091367, at *5 (M.D. Fla. Sept. 7, 2022) (holding privity had not been established for either warranty-based claim where plaintiff did not plead that she purchased the product directly from the manufacturer); *Cooper v. Old Williamsburg Candle Corp*., 653 F. Supp. 2d 1220, 1225–26 (M.D. Fla. 2009) (granting summary judgment on breach of implied warranty claim in favor of a manufacturer of citronella candle where plaintiff admitted she did not purchase the candle from the manufacturer).

Here, Plaintiff cannot (and does not attempt to) demonstrate privity, actual or otherwise, with Monsanto. White Decl., Ex. A, Engilis Dep., 46:8–10 ("Q: Do you always get [Roundup] at Lowe's? A: Yes, I believe so."); 124:3–9 ("Q: Have you ever communicated with a salesman or sales representative from Monsanto? A: No. Q: Have you ever communicated with anyone else at Monsanto about anything? A: No."). Accordingly, Plaintiff's breach of express *and* implied warranty claims cannot survive summary judgment.

**B. Plaintiff's Breach of Express Warranty Claims Fail Because There Is No Evidence to Substantiate Monsanto's Alleged Warranties**

In addition to the fact that no privity exists, Plaintiff's breach of express warranty claim cannot withstand summary judgment for additional reasons. Florida's Uniform Commercial Code ("Florida UCC") applies to the transactions of goods. *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1322 (S.D. Fla. 2020). To state a claim for breach of express warranties under the Florida UCC, a plaintiff must allege:

"(1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of express warranty." *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1339–40 (S.D. Fla. 2011) (internal citations omitted). "An express warranty is generally considered to arise only where the seller asserts a fact of which the buyer is ignorant prior to the beginning of the transaction, and on which the buyer justifiably relies as part of the basis of the bargain." *Toca*, 430 F. Supp. 3d at 1324–1325 (internal quotations and citations omitted); Fla. Stat. §672.313(1)(a)–(c). "Statements made in promotional materials, advertisements, and brochures may be sufficient to create an express warranty if the buyer relies on those statements in making his purchase, but mere puffery or sales talk is not sufficient to create an express warranty." *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL 3666312, at *18 (S.D. Fla. Aug. 18, 2021) (internal quotations and citations omitted).

Here, as a threshold matter, Plaintiff's express warranty claim fails because he did not notify Monsanto of the alleged breach of warranty. White Decl., Ex. A, Engilis Dep., at 123:24-124:9. This failure immediately nullifies his breach of express warranty claim, and the Court thus should enter summary judgment on that claim. *See Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1339–40 (S.D. Fla. 2011) (finding plaintiff failed to state a claim for breach of express warranty where he did not allege that he ever notified defendants of the alleged breach of a warranty).

Notwithstanding the notice requirement, however, Plaintiff also has not presented sufficient evidence to substantiate the remaining elements of an express warranty claim under Florida law. Plaintiff presented no evidence to substantiate his allegations that Monsanto created any relevant express warranties regarding Roundup, let alone that he relied upon such warranty. Plaintiff generally alleged that Monsanto expressly represented that its Roundup products were safe to use by individuals and effective as an agricultural herbicide. *See* Petition ¶¶ 126, 127. Yet Plaintiff made clear he did not see advertisements in the store while purchasing Roundup. White Decl., Ex. A, Engilis Dep., at 53:14–54:20. Moreover, Plaintiff acknowledged he has never communicated with anyone from Monsanto, *Id.* at 123:24–124:9, and that although he did read the product's label at some point, he could not definitively say that he did so before he purchased Roundup. *Id.* at 55:11–56:2 (responding "[p]robably.

I'm sorry. I can't -- I can't remember those specifics" when asked whether he read the label when he purchased Roundup). Thus, he has failed to establish that any specific warranty was made by Monsanto.

Moreover, it is undisputed that Plaintiff did not rely on any alleged warranty when purchasing Roundup. *Id.* at 41:10-20; 52:25–53:9. Plaintiff's wife bought Roundup initially, and Plaintiff continued to buy it because it worked. *Id.* While Plaintiff briefly referenced specific statements alleged to have been included in advertisements by Monsanto from the 1990s, *id.* at 54:5–20, he does not offer any evidence substantiating that he was aware of these advertisements or relied on them when purchasing Roundup. *Id.* ("Q: Do you remember what was said in that advertisement? A: No. No. I'm sorry."). Thus, Plaintiff's breach of express warranty claim fails, and Monsanto is entitled to summary judgment. *See Byrnes v. Small*, 142 F. Supp. 3d 1262, 1273–74 (M.D. Fla. 2015) (granting summary judgment where there was no evidence that the manufacturer made an express warranty upon which plaintiff relied); *Certain Underwriters at Lloyd's of London v. Black Gold Marine, Inc*., 2021 WL 2653819, at *3 (S.D. Fla. Feb. 8, 2021) (concluding that the third-party plaintiff had failed to state a claim for breach of express warranty because the "Third-Party Complaint [did] not identify what express warranties the Third-Party Defendants made, or even which warranties were breached").[3]

### C. Plaintiff's Breach of Implied Warranty Claim Fails Because He Has No Evidence Fulfilling the Essential Elements of the Claim under Florida Law.

Florida recognizes two types of implied warranties: one of merchantability and another of fitness for a particular purpose. Fla. Stat. §§ 672.314, 672.315. A claim for breach of the former requires evidence that the good was not merchantable, *i.e.,* that it was not fit for the ordinary purpose for which it is used. *See id*. § 672.314; *Wyse v. Gerard Roof Prod., LLC*, 2019 WL 7347179, at *2 (N.D. Fla. Nov. 12, 2019) (dismissing a claim for breach of implied warranty of merchantability because plaintiff did not plausibly allege that the roof was unfit for its ordinary purpose—and thus not merchantable—because the ordinary purpose of a roof is to protect a home from the elements, not to

---

[3] Further, any purported broad affirmation that a product is safe, without more, does not constitute a warranty. *See Carter Hawley Hale Stores, Inc. v. Conley*, 372 So. 2d 965, 969 (Fla. Dist. Ct. App. 1979) (finding certain affirmations "do not give rise to warranties, e.g., the 'nicest car in town.'"); *see also Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. Dist. Ct. App. 1995) (finding representations that ascribe value to a product such as "good" or "excellent" without more are "clearly statements of opinion" and not actionable).

1  be unblemished); *Pye v. Fifth Gen., Inc*., 2015 WL 5634600, at *5 (N.D. Fla. Sept. 23, 2015) (finding
2  an allegation that vodka was "not handmade or made in an old-fashioned pot" was insufficient to
3  establish that the vodka was not "of merchantable quality" and "fit for [its] ordinary purpose"). In
4  contrast, a claim for breach of fitness for a particular purpose requires proof that, at the time of
5  purchase, the seller had reason to know that the buyer had a particular (non-ordinary) purpose for
6  purchasing the goods and that the buyer is relying on the seller's skill or judgment to select or furnish
7  suitable goods for that particular purpose. *Id*. § 672.315; *see Royal Typewriter Co., Div. of Litton Bus.
8  Sys., Inc. v. Xerographic Supplies Corp*., 719 F.2d 1092, 1100 (11th Cir. 1983) (applying Florida law)
9  (concluding that an implied warranty of fitness for a particular purpose did not arise where the party
10 used the at-issue machines for their ordinary purpose, that is, as copiers); *PR Overseas Boating, Ltd. v.
11 Talaria Co., LLC*, 2022 WL 1238999, at *3 (S.D. Fla. Apr. 27, 2022) (granting summary judgment in
12 favor of defendant on plaintiff's implied warranty of fitness claim because plaintiff intended to use
13 product for its ordinary purpose).

14 Plaintiff cannot establish a claim under either theory of implied warranty. First, Plaintiff used
15 Roundup for its ordinary purpose, *i.e.*, killing weeds. White Decl., Ex. A, Engilis Dep., at 43:6-10.
16 Plaintiff has no evidence that the Roundup he used failed to satisfy that purpose. *Id.* at 42:9-43:10;
17 82:8-83:13; 106:6-25.  Indeed, Plaintiff specifically acknowledged during his deposition that Roundup
18 was successful and effective at killing weeds. *Id.* Second, Plaintiff has no evidence that he used
19 Roundup for any particular alternative purposes or that Monsanto was aware of any alternative purpose
20 for his use of Roundup. *Id.* at 123:24-124:9. As such, the Court should enter summary judgment in
21 Monsanto's favor with respect to both theories of Plaintiff's breach of implied warranty claim. *See,
22 e.g., Pye*, 2015 WL 5634600, at *5; *Xerographic Supplies Corp*., 719 F.2d at 1100.

23 **II.    MONSANTO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S**
24 **        PUNITIVE DAMAGES CLAIMS**

25 Plaintiff's claim for punitive damages is barred under Florida law.  The standard for punitive
26 damages in Florida is high and, in fact, the Florida Supreme Court has all but eliminated punitive
27 damage awards in product liability cases. *See Hosp. Corp. of Lake Worth v. Romaguera*, 511 So. 2d
28 559, 564 (Fla. Dist. Ct. App. 1986) ("There appears to be little doubt that the Florida Supreme Court

has severely limited the availability of punitive damages in products liability cases and those involving employer negligence."); *Fisher v. Shenandoah Gen. Constr. Co.*, 498 So. 2d 882 (Fla. 1986) (same) (abrogated on other grounds by *Turner v. PCR, Inc.*, 754 So. 2d 683 (Fla. 2000); *Am. Cyanamid Co. v. Roy*, 498 So. 2d 859, 861 (Fla. 1986) ("[U]rging restraint upon the courts in ensuring that the defendant's behavior represents more than even gross negligence prior to allowing the imposition of punitive damages."); *Chrysler Corp. v. Wolmer*, 499 So. 2d 823 (Fla. 1986); *Celotex Corp. v. Pickett*, 490 So. 2d 35 (Fla. 1986).

The purpose of punitive damages is "not to further compensate the plaintiff," but rather to punish the defendant and deter similar conduct by it and others. *Owens-Corning Fiberglas Corp. v. Ballard*, 749 So. 2d 483, 486 (Fla. 1999) (emphasis added). Accordingly, the Florida Legislature enacted Florida Statute Section 768.73(2)(a) to "restrict[] repetitive punitive damages claims." H.R. Comm. on Judiciary, Final Analysis, H.B. 775, ch. 99-225, at 1, 17 (Fla. June 2, 1999). Section 768.73 provides in pertinent part as follows:

> (2) (a) Except as provided in paragraph (b), punitive damages may not be awarded against a defendant in a civil action if that defendant establishes, before trial, that punitive damages have previously been awarded against that defendant in any state or federal court in any action alleging harm from the same act or single course of conduct for which the claimant seeks compensatory damages. . . .
> (b) In subsequent civil actions involving the same act or single course of conduct for which punitive damages have already been awarded, if the court determines by clear and convincing evidence that the amount of prior punitive damages awarded was insufficient to punish that defendant's behavior, the court may permit a jury to consider an award of subsequent punitive damages. . . .

Fla. Stat. § 768.73. Thus, Plaintiff cannot seek punitive damages in this lawsuit if another jury already awarded punitive damages against Monsanto in another case for the same course of conduct, unless Plaintiff demonstrates that the prior punitive award was insufficient to punish Monsanto.

There can be no dispute that the requirements of § 768.73(2)(a)—that punitive damages have been awarded against Monsanto in prior actions alleging harm from the same course of conduct for which Plaintiff seeks compensatory and punitive damages in this case—are met here. Juries in three separate Roundup NHL lawsuits awarded punitive damages against Monsanto, and Monsanto has paid

each of those judgments in full. *See* White Decl., Ex. I, Acknowledgment of Satisfaction of Judgment in *Johnson v. Monsanto*, No. CGC-16-550128 (S.F. Super. Ct. Jan. 13, 2021); White, Decl., Ex. J, Notice of Satisfaction of Judgment in *Hardeman v. Monsanto*, No. 3:16-cv-00525-VC (N.D. Cal. Sept. 17, 2021); White, Decl., Ex. K, Acknowledgement of Satisfaction of Judgment in *Pilliod v. Monsanto*, No. RG17862702 (Alameda Super. Ct. July 5, 2022). Those lawsuits all concerned the same course of conduct at issue in this lawsuit—that Monsanto failed to warn customers of the alleged potential for Roundup to cause cancer. Thus, the requirements of § 768.73(2)(a) are indisputably established.

Moreover, it cannot seriously be argued that the exception provided in § 768.73(2)(b) applies to permit a repetitive award of punitive damages in this case. As discussed above, to avoid § 768.73(2)(a)'s bar on repetitive punitive damages awards, Plaintiff must establish by clear and convincing evidence that the prior awards were insufficient to punish Monsanto's behavior. And as discussed in Monsanto's prior motions that are incorporated herein by reference, Monsanto's behavior does not even meet the high standard for imposing punitive damages under Florida law. Plaintiff has made no effort to argue that the prior punitive damages awards were insufficient to punish or deter Monsanto, nor could he as punitive damages totalling more than **$100 million dollars** have already been awarded and upheld against Monsanto in the Roundup litigation.

Furthermore, this Court and the other two courts in which punitive damages have been awarded against Monsanto in the Roundup litigation all reduced the original punitive damages awarded by the juries because the excessive nature of the original jury awards violated Monsanto's due process rights.[4]

---

[4] The jury in *Johnson v. Monsanto Company* awarded $250 million in punitive damages, later reduced to just over $10 million. *See* 52 Cal. App. 5th 434 (2020). The jury in *Hardeman v. Monsanto Company* awarded $75 million in punitive damages against Monsanto, which this Court later reduced to $20 million. *See* 997 F.3d 941, 948 (9th Cir. 2021). In upholding the reduced award, the Ninth Circuit held that $75 million punitive damage award was "grossly excessive" where Monsanto's conduct "was not 'particularly egregious' as to warrant a damages ratio above the single-digit range, especially considering the absence of evidence showing a known safety risk was intentionally concealed." *Id*. at 974-75 (citation omitted) (emphasis in original). The Ninth Circuit had "little trouble holding that the jury's 14.2 to 1 ratio violated [Monsanto's] due process." *Id*. The jury in *Pilliod, et. al v. Monsanto Company* awarded $2 billion in punitive damages, which the trial judge found to be "unconstitutionally large" and reduced to $70 million. *See* 67 Cal. App. 5th 591, 641 (2021). The California appellate court upheld the punitive award in *Pilliod* in part because, at the time, Monsanto had not paid the Johnson and *Hardeman* punitive awards and continued to sell Roundup-branded herbicides in the market without any cancer warning, thereby demonstrating that the earlier punitive awards did not sufficiently "punish and deter" Monsanto. *Id*. at 649.

1  This negates any possibility of Plaintiff demonstrating, by clear and convincing evidence, that the prior
2  awards were insufficient punishment. Put another way, having three courts already determine that each
3  punitive damage award must be reduced to the outer limits of due process would be entirely inconsistent
4  with the position that those awards were insufficient to punish Monsanto. Indeed, the prior punitive
5  awards have had their intended effect—Monsanto is discontinuing the sale of glyphosate-based
6  herbicides in the residential marketplace, not because of any concern about potential carcinogenicity,
7  but instead to "manage litigation risk" spurred by the large punitive awards. *See* White Decl., Ex. L,
8  Jul. 29, 2021 Bayer Press Release. Thus, the *Johnson*, *Hardeman*, and *Pilliod* punitive awards clearly
9  were sufficient to punish and deter Monsanto for the same course of conduct for which Plaintiff now
10  seeks successive, duplicative punitive damages in this case. The Court should grant summary judgment
11  in Monsanto's favor on Plaintiff's claim for punitive damages.

## CONCLUSION

Monsanto respectfully requests that the Court grant its Motion for Summary Judgment.

Dated:  November 30, 2022            Respectfully submitted,

/s/ *Jed P. White*_____
Jed P. White
Attorneys for Defendant Monsanto Company

- 12 -
MEMORANDUM OF LAW IN SUPPORT OF MONSANTO'S MOTION FOR SUMMARY JUDGMENT

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of November, 2022, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                         */s/ Jed P. White*
                         Jed P. White