**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION,<br><br>*Engilis v. Monsanto Company*,<br>3:19-cv-07859-VC | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF ANDREW SCHNEIDER, M.D.**<br><br>Hearing date: January 12, 2023<br>Time: 10:00 a.m. |

1 **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2 **PLEASE TAKE NOTICE THAT** beginning on January 12, 2023 at 10:00 a.m., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Andrew Schneider, M.D. Monsanto seeks an order excluding opinions of this witness under Federal Rule of Evidence 702.

Dated:  November 30, 2022               Respectfully submitted,


                                        /s/ *Jed P. White*
                                        Jed P. White
                                        Attorneys for Defendant Monsanto Company

# **TABLE OF CONTENTS**

Page

INTRODUCTION ..........................................................................................................................1

BACKGROUND ............................................................................................................................2

LEGAL STANDARD .....................................................................................................................4

ARGUMENT ..................................................................................................................................4

    I.    DR. SCHNEIDER'S OPINIONS ON GENERAL AND SPECIFIC CAUSATION ARE INADMISSIBLE. ............................................................4

        A.    Dr. Schneider Is Not Qualified To Offer Opinions On Causation. ..................4

        B.    Dr. Schneider Used No Scientifically Reliable Methodology. .......................7

        C.    Dr. Schneider's Purported "Differential Diagnosis" Was Flawed...................8

    II.    DR. SCHNEIDER IS NOT QUALIFIED TO OFFER ANY OPINIONS ON GENOTOXICITY OR ANIMAL STUDIES. ......................................................10

    III.    THE COURT SHOULD EXCLUDE DR. SCHNEIDER'S TESTIMONY BECAUSE IT DOES NOT "FIT" PLAINTIFFS' SPECIFIC DISEASES. ..............11

CONCLUSION .............................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Pa. Eng'g Corp.*,
 102 F.3d 194 (5th Cir. 1996) ............................................................................................... 12

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
 137 F Supp. 2d 147 (E.D.N.Y. 2001), *aff'd*, 303 F.3d 256 (2d Cir. 2002) ................................. 11

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
 303 F.3d 256 (2d Cir. 2002) ................................................................................................ 12

*Burleson v. Tex. Dep't of Criminal Justice*,
 393 F.3d 577 (5th Cir. 2004) ............................................................................................... 12

*Burst v. Shell Oil Co.*,
 No. 14-109, 2015 WL 3755953 (E.D. La. June 16, 2015) ...................................................... 12, 13

*Clausen v. M/V New Carissa*,
 339 F.3d 1049 (9th Cir. 2003) ............................................................................................. 8, 10

*Cooper v. Brown*,
 510 F.3d 870 (9th Cir. 2007) ............................................................................................... 4

*Daubert v. Merrell Dow Pharm., Inc.*,
 509 U.S. 579 (1993) ............................................................................................................ 4, 11

*Mancuso v. Consol. Edison Co. of New York, Inc.*,
 967 F. Supp. 1437 (S.D.N.Y. 1997) ..................................................................................... 11

*In re Roundup Prod. Liab. Litig.*,
 2018 WL 3368534 ............................................................................................................... 11

*In re Roundup Prod. Liab. Litig.*,
 3:16-md-02741-VC, ECF 2799 (Feb. 24, 2019) ................................................................... 6

*In re Roundup*,
 390 F. Supp. 3d 1102 (2018) ............................................................................................... 6

*White v. Ford Motor Co.*,
 312 F.3d 998 (9th Cir. 2002) ............................................................................................... 4

- ii -
MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF ANDREW SCHNEIDER, M.D.

**INTRODUCTION**

Plaintiffs Peter and Cathy Engilis designated Dr. Andrew Schneider, a clinical oncologist, to offer expert opinion testimony on both general and specific causation, i.e., (1) whether exposure to glyphosate and/or glyphosate-based herbicides ("GBHs") can cause cancer, specifically non-Hodgkin's lymphoma ("NHL"), and (2) whether exposure to glyphosate and/or glyphosate-based herbicides ("GBHs") such as Roundup was a cause of Mr. Engilis's chronic lymphocytic leukemia ("CLL"), a subtype of NHL, and his two other cancers. Ex. A, Plaintiffs' July 27, 2022, Amended Rule 26 Specific Causation Expert Disclosures; Ex. B, Expert Report of Andrew Schneider, MD ("Schneider *Engilis* Report"). Dr. Schneider also intends to offer opinions on the alleged genotoxicity of glyphosate and animal carcinogenicity data. Although Dr. Schneider is a professional litigation witness for plaintiffs in medical malpractice cases, he is relatively new to the Roundup cases, and the opinions he seeks to offer have never been subject to scrutiny by this Court. In the one other Roundup case where Dr. Schneider's opinions were challenged, the court excluded Dr. Schneider's opinions in their entirety. This Court should do the same, as Dr. Schneider's opinions do not meet the qualification, reliability, or fit standards for admissibility of expert testimony under Federal Rule of Evidence 702.

Dr. Schneider is not qualified to offer his opinions. He is a treating physician with little to no experience in the scientific fields relevant to assessing general causation in this case. Dr. Schneider concedes that he is not an expert in epidemiology, pathology, toxicology, chemistry, genetics or biostatistics. He is therefore unqualified to offer any opinion as to whether Roundup is capable of causing cancer, as discussed in more detail below.

In addition, Dr. Schneider's methodology is not reliable, and he has not reliably applied scientific principles to the facts of this case. For example, all he did to find scientific data (beyond what was sent to him by Plaintiffs' counsel) to support his general causation opinions was to conduct a Google search. His report in this case often references studies (generically) without citing any particular study to which he was referring. His specific causation opinion is in turn based on unfounded extrapolation from an unreliable general causation opinion, including, for example, exposure opinions based on statements such as "it's intuitive" and "how could he not have any." Ultimately, Dr. Schneider opined that because Mr. Engilis used Roundup above a certain threshold number of days, it was the

cause of the alleged cancers, while failing to consider other potential causes or risk factors or the limited amount of Roundup to which Mr. Engilis himself testified he was exposed.

For these reasons, a Missouri state court recently excluded Dr. Schneider from offering nearly identical testimony in a Roundup case, finding that Dr. Schneider "has not provided a reliable basis for his conclusion that glyphosate causes NHL" and that "[b]asing his general causation opinions on results he found on Google and what Plaintiffs' lawyers gave to him is not a reliable method upon which to form an opinion." Ex. C, *Ferro* Order Regarding Parties' Motions to Exclude Experts, at 6 (Oct. 13, 2022). The substantially identical opinions offered by Dr. Schneider in this case likewise do not meet the standards for admissibility of expert testimony and should be excluded.

## BACKGROUND

Dr. Schneider is a professional litigation witness. He has been designated as an expert in over 200 other cases, mostly medical malpractice cases and mostly for plaintiffs. Ex. D, Deposition of Dr. Andrew Schneider in *Ferro et al. v. Monsanto Co.*, Vol. 1, Cause No. 20SL-CC03678 (Cir. Ct. of St. Louis, Mo.) ("Schneider *Ferro* Dep. Vol. 1") at 14:18-15:20. He has not, however, testified in any Roundup trial, and before being hired for Roundup litigation, he had never testified about the cause of NHL. *Id.* at 16:3-5.

When not testifying as an expert witness, Dr. Schneider is a treating hematologist and oncologist who treats cancers in a clinical setting. *Id.* at 72:19-21, 74:22-24; Ex. E, August 9, 2022 Deposition of Dr. Andrew Schneider ("Schneider *Engilis* Dep.") at 51:25-52:5 ("I'm an oncologist. It's what I do all the time. And when I see patients who have either CLL or melanoma or both, my job is to treat the patients. You know, how they got there isn't all that important, unless it's [sic] something I can do about it in the future."). He is not an expert in lymphoma specifically, and only about 10% of his practice involves the treatment of NHL. Ex. D, Schneider *Ferro* Dep. Vol. 1 at 75:13-20; 78:4-6. As a clinical physician, he does not determine the cause of any particular patient's cancer. *Id.* at 73:20-22; 92:23-93:14. He does not do any independent research in the field of cancer. *Id.* at 75:21-24.

Dr. Schneider has never told any of his patients that exposure to Roundup caused that patient's cancer. *Id.* at 89:5-12. In fact, before being retained for Roundup litigation, Dr. Schneider had not reviewed any literature on Roundup and NHL. *Id.* at 49:15-18.

After being retained, Dr. Schneider conducted a basic Google search to identify relevant literature.

> Q: "[H]ow did you search for studies on melanoma and CLL? Tell me about the process you went through."
>
> A: "I did a Google search, and I said look for the association of CLL and melanoma."

Ex. E, Schneider *Engilis* Dep. at 112:16-19. Dr. Schneider did not perform any further research and did not even search the more reliable PubMed or Google Scholar databases. Ex. D, Schneider *Ferro* Dep. Vol. 1 at 50:8-51:10. Dr. Schneider's deposition testimony made clear that he was unfamiliar with his own list of materials relied on and could not remember the names of the studies he found and relied on from his Google search, let alone the details of those studies. Ex. E, Schneider *Engilis* Dep. at 19:8-14, 30:15-31:20, 36:2-16, 36:25-37:8, 78:9-14; *see also* Ex. D, Schneider *Ferro* Dep at 26:16-27:12; 46:23-47:1.

Based on his review of the handful of studies he found through his Google search and that were provided to him by plaintiffs' counsel, and on his version of Mr. Engilis's use of Roundup (which contradicts Mr. Engilis's own version), Dr. Schneider seeks to offer the following opinions in this case:

(1) Roundup is generally capable of causing CLL, Ex. E, Schneider *Engilis* Dep. at 23:13-21, Roundup is an etiologic agent that causes NHL, *id.* at 24:1-2, 24:24, and Roundup causes the NHL subtype CLL, *id.* at 24:3-5.

(2) Mr. Engilis's use of Roundup caused or contributed to his CLL, *id.* at 29:16-20, and Mr. Engilis "had 24 years of Roundup exposure which . . . was the etiologic agent which eventually caused his CLL," *id.* at 39:19-21; *see also id.* at 40:21-22 (same) & 48:3-5 (same).[1]

(3) "[P]atients with CLL have immunodysfunction and are at risk for second malignancies," *id.* at 38:22-24, and, with respect to Mr. Engilis, "decreased immunity and B-cell dysfunction of CLL probably, more likely than not, accounts for this emergence of second malignancy such as [transitional cell carcinoma, or TCC] of the bladder," *id.* at

---

[1] Dr. Schneider also opined in his first case as a Roundup expert that anyone who uses Roundup for more than two days a year or ten days in a life-time is at an increased risk of NHL. Ex. D, Schneider *Ferro* Dep. Vol. 1 at 262:17-263:6.

    39:7-10 & 21-23, and melanoma, *id.* at 40:23-24; *see also id.* at 48:8-12 ("CLL caused by the glyphosate is the reason to develop two other malignancies, that being melanoma and TCC to the bladder[.]").

 (4) Glyphosate is genotoxic and causes oxidative stress, *id.* at 67:18-20, genotoxicity and oxidative stress is a mechanism that "allows" glyphosate to cause NHL and CLL, *id.* at 67:18-25, and animal studies show glyphosate causes NHL, *id.* at 28:8-11, 31:11-13.

## LEGAL STANDARD

A proposed expert witness must possess "knowledge, skill, experience, training, or education" sufficient to qualify him as an expert on the subject to which his testimony relates. Fed. R. Evid. 702. When an expert's field of expertise is not related to the subject on which he seeks to offer testimony, such testimony is inadmissible. *See White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002). Apart from qualifications, expert testimony must be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result of applying those principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The trial judge is charged with the responsibility of acting as a gatekeeper to "ensure that any and all scientific testimony … is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The proponent of the expert bears the burden of proving that the expert's proffered testimony is admissible. *See*, *e.g.*, *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

## ARGUMENT

### I. DR. SCHNEIDER'S OPINIONS ON GENERAL AND SPECIFIC CAUSATION ARE INADMISSIBLE.

#### A. Dr. Schneider Is Not Qualified To Offer Opinions On Causation.

Monsanto does not dispute that Dr. Schneider is a clinical oncologist qualified to treat blood cancers. But the opinions he proffers in this case are not about the diagnosis or treatment of cancer, however; they are about *cancer causation*—an area beyond his expertise. As a treating physician in a clinical setting and career expert witness for medical malpractice cases, he does not do any research in the field of cancer. To form an opinion as to whether Roundup can cause cancer, Dr. Schneider would need to have expertise in epidemiology, biostatistics, genetics, genotoxicity, and/or animal bioassays.

The problem is, he is qualified in *none* of these topics.

Dr. Schneider concedes he is not an expert in epidemiology, pathology, toxicology, chemistry, genetics or biostatistics. Ex. E, Schneider *Engilis* Dep. at 26:15, 28:7-8, 79:14-15; 79:25-76:1, 83:3-6, 93:7-9. Although Plaintiffs have retained experts in some of these fields, *see* Ex. A, Dr. Schneider testified at deposition that he did not, in fact, rely on the opinions of any of those experts to form his own opinions. Ex. E, Schneider *Engilis* Dep. at 34-36. He is also not a weed scientist or an expert in glyphosate-based herbicides. Ex. D, Schneider *Ferro* Dep. Vol. 1 at 90:23-91:25; 92:1-3. With respect to the actual use of a pesticide like Roundup and the exposure levels to which a user would be subject, Dr. Schneider testified that he would need to defer to a pharmacologist, epidemiologist, statistician, or pathologist. Ex. E, Schneider *Engilis* Dep. at 79:25-80:1, 82:25-83:6. He has never evaluated the exposure levels of any chemical for any patient. Ex. D, Schneider *Ferro* Dep. Vol. 1 at 92:5-8.

Dr. Schneider testified that his opinion that glyphosate is a risk factor for NHL is based on epidemiology studies, Ex. E, Schneider *Engilis* Dep. at 36:20-24; *see also* Ex. D, Schneider *Ferro* Dep. Vol. 1 at 132:21-133:10, and that epidemiology provides the best support for Roundup's purported ability to cause NHL, *id.* at 142:22-143:1. But he readily admits that he is not an expert in epidemiology, statistics, or pathology. Ex. E, Schneider *Engilis* Dep. at 82:25-83:6 ("Q. What is the dose of glyphosate that somebody needs to enter their body to put them at increased risk of NHL?" "A. So now we're getting into dose again, and I told you that would be a question better asked to an epidemiologist, statistician, or pathologist, not a medical oncologist.").[2] In fact, his testimony made obvious that he is unfamiliar with fundamental epidemiology concepts. For example, Dr. Schneider is not familiar with the Bradford Hill criteria, nor could he list the criteria. Ex. D, Schneider *Ferro* Dep. Vol. 1 at 136:16-24. (Bradford Hill is a standard set of criteria used to determine if a reported association is causal.)[3] Indeed, he had difficulty even agreeing with one of the most fundamental

---

[2] *See also* Ex. D, Schneider *Ferro* Dep. Vol. 1 at 140:16-22 ("Q. You're not an expert in conducting those controlled analyses, correct? A. Nor am I expert in the statistical method for doing it.").

[3] For a more detailed discussion of these epidemiology principles, including Bradford Hill, and the difference between association and causation, *see* Defendant Monsanto Company's Motion to Exclude Testimony of Joel J. Gagnier, ND, MSc, PhD, filed contemporaneously with this motion. Like

concepts in epidemiology: that *association* is not the same thing as *causation*:

> Q: We can agree not all associations are causal, right?
>
> A: So I don't know what you mean by that.

*Id.* at 135:9-12 (objection omitted).

This Court excluded the general causation opinions of an oncologist, Dr. Chadi Nabhan, who was similarly unqualified in epidemiology. Dr. Nabhan had testified that, like Dr. Schneider, he was a clinician as opposed to an epidemiologist or statistician. *In re Roundup*, 390 F. Supp. 3d 1102, 1148 (2018). Dr. Nabhan "summarized many relevant studies, but offered little in the way of critical analysis of these studies . . . . [I]nstead, he deferred to the opinions of other experts, and to IARC in particular, in arriving at his conclusions." *Id.* The court found that Dr. Nabhan had not provided a reliable basis for concluding that glyphosate can cause NHL as a general matter, and thus excluded his opinion on that topic. *Id.* at 1149. *Accord* Ex. C, *Ferro* Order Regarding Parties' Motions to Exclude Experts, at 6 (Oct. 13, 2022) (excluding Dr. Schneider's testimony in its entirety upon finding that Dr. Schneider "has not provided a reliable basis for his conclusion that glyphosate causes NHL.").

Like Dr. Nabhan, Dr. Schneider is no epidemiologist or statistician, and his opinions are based entirely on his uncritical summary review of certain epidemiological studies that were either provided to him by Plaintiffs' counsel or found on Google. Accordingly, this Court should exclude Dr. Schneider's general causation opinions. And because his specific causation opinions stem entirely from his general causation opinion combined with Dr. Schneider's version of Mr. Engilis's use of Roundup, Ex. E, Schneider *Engilis* Dep. at 29:5-11, his specific causation opinions are likewise unqualified and unreliable. Importantly, Dr. Schneider testified in deposition that, in forming his opinions, he <u>did not</u> rely on the opinions of Plaintiffs' other general causation experts, *see id.* at 34-36, which differentiates his specific causation opinions from others that have previously been admitted in Roundup cases. *See In re Roundup Prod. Liab. Litig.*, 3:16-md-02741-VC, ECF 2799 at 2-3 (Feb. 24, 2019) (allowing specific-causation opinions to testify to differential diagnosis because they properly relied on other experts for general causation).

---

Dr. Gagnier, Dr. Schneider's reliance on epidemiology studies—without more to assess whether the purported associations were *causal*—is not relevant or helpful to the jury.

In sum, because Dr. Schneider lacks the requisite qualifications, he should not be allowed to testify that Roundup is capable of causing NHL or CLL and that it did in fact cause Mr. Engilis's CLL.

### B.  Dr. Schneider Used No Scientifically Reliable Methodology.

Additionally, Dr. Schneider's so-called methodology was far from scientific or reliable. To form his opinion on general causation, he conducted a regular Google search for Roundup and NHL and reviewed literature provided to him by plaintiffs' counsel. Ex. E, Schneider *Engilis* Dep. at 112:18-19 ("I did a Google search, and I said look for the association of CLL and melanoma."), Ex. D, Schneider *Ferro* Dep. Vol. 1 at 50:10-11 ("Some I found myself, and some plaintiffs' counsel suggested or gave to me.")  He did not even use a more scientifically reputable search engine like Google Scholar or PubMed.  Ex. D, Schneider *Ferro* Dep. Vol. 1 at 50-51. Then, as discussed above, he formed an opinion on general causation based on his uncritical and unqualified read of a limited number of studies.

Dr. Schneider's specific causation opinions flow entirely from his general causation opinions and have additional methodological flaws. First, for the reasons already discussed, he had no reliable reason to consider Roundup even as a potential cause of Mr. Engilis's cancer, given the inadequacies of his general causation opinions. Moreover, he never met or examined Mr. Engilis, Ex. E, Schneider *Engilis* Dep. at 37:13-14, and he concedes that there is no test that can determine whether Roundup caused NHL, Ex. D, Schneider *Ferro* Dep. Vol. 1 at 239, 288-89. Dr. Schneider simply took his opinion that Roundup theoretically *can* cause cancer and jumped to the conclusion that it *did* cause Mr. Engilis's CLL, based on nothing more than the fact that Mr. Engilis reported using Roundup:

> Q:  Can you opine to a reasonable degree of scientific certainty that one molecule of glyphosate entered Mr. Engilis's body?
>
> A:  Yes.
>
> Q:  How?
>
> A:  Because I read his deposition.

 Ex. E, Schneider *Engilis* Dep. at 83:13-20 (objection omitted); *see also id.* at 84:11-12 ("I read his deposition, and I'm aware of the literature which talks about glyphosate.").

Dr. Schneider also ignored Mr. Engilis' own testimony of his lack of physical exposure to

Roundup and failed to consider the limited amount of Roundup, if any, to which Mr. Engilis was actually exposed *id.* at 83-84, Indeed, asked whether he knows how much glyphosate may have been absorbed into Mr. Engilis's body, Dr. Schneider answered, "He used it, so how could he not have any – I have an answer. . . . His wife says he walked around barefoot, so you can ***use your imagination***." *Id.* at 126:20-21 (emphasis added). This is despite clear testimony from Mr. Engilis that (a) he does not recall ever getting Roundup on his skin and (b) that he typically wore boat shoes, sometimes with socks). Ex. F, P. Engilis Dep. at 112:6-11, 113:8-17; 123:2-5. Similarly, Dr. Schneider stated that he reached the opinion that glyphosate entered Mr. Engilis's body (in sufficient amounts to cause cancer) because "***I think that's intuitive***." Ex. E, Schneider *Engilis* Dep. at 84:1-4. Granted, Dr. Schneider is not an expert in calculating chemical exposures, *Id.* at 93:24-25 ("[D]osing questions are not my field of expertise as a clinical oncologist"), but he also did not rely on any estimation or calculation that may have been provided by other experts, *see* Ex. D, Schneider *Ferro* Dep. Vol. 1 at 269:15-21. Instead, he relied on his "intuition" and "imagination" (for which the jury does not need an expert to testify) and on the contradictory testimony of Ms. Engilis regarding whether Mr. Engilis used Roundup with bare feet (to which Dr. Schneider referred 10 times during his deposition because it is such a critical "fact" to support his exposure opinion). To the extent it can be said that Dr. Schneider had any methodology whatsoever, these blatant flaws in his process render his opinions wholly unreliable. They should not survive the Court's gatekeeping function.

**C.  Dr. Schneider's Purported "Differential Diagnosis" Was Flawed.**

With respect to his specific causation opinions, Dr. Schneider claims to have performed a "differential diagnosis," yet impermissibly formed his opinions without accounting for Mr. Engilis's particular medical history, including the presence of other cancers and other risk factors he may have for cancer, Schneider *Engilis* Dep. at 56:18-25; 99:19-100:10; 107:4-108:13; 124:5-15. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003) (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)) (expert conducting differential diagnosis "must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'"). Although he purported to rule out other possible contributing factors, *see* Ex. E, Schneider *Engilis* Dep. at 57:13-

25 & 107:4-15, his deposition testimony made clear that he did not have any reasoned basis to actually rule out other factors, and he did not even know all of the other possible contributing factors. *Id.* at 124-25 (did not consider self-reported history of sunburns, a primary risk factor for melanoma); *id.* at 56-57 (was unsure whether Mr. Engilis had undergone genetic testing prior to ruling out genetic mutation as possible cause of or contributing factor to cancers). For instance, although Dr. Schneider claimed to "have knowledge of [cellular] mutations," *id.* at 58:12, he did not—and could not— rule out random genetic mutations as a possible cause. Indeed, in his deposition in *Ferro*, he agreed that "[c]ells do not have to be exposed to anything external to the cell to have a mutation happen"). Schneider *Ferro* Dep. at 101:17-18.

As discussed above, Mr. Engilis was diagnosed with three different forms of cancer: CLL, melanoma, and, bladder cancer. Dr. Schneider contends that these cancers occurred "all in the same time frame of 2014, 2015," Ex. E, Schneider *Engilis* Dep. at 42:2-3, and admits he cannot actually ascertain whether Mr. Engilis's melanoma and bladder cancer *preceded* his CLL diagnosis. *Id.* at 39:18 (bladder cancer) & 40:1-4 (melanoma). He also acknowledged that Mr. Engilis was *first* diagnosed with bladder cancer, *then* melanoma, and *finally* with CLL. *Id.* at 38:13-19. He nevertheless concluded, without evidence, that Mr. Engilis's CLL caused his bladder cancer, *id.* at 39:7-10 & 21-23, and his melanoma, *id.* at 40:23-24, and not vice versa. This is despite the fact that Dr. Schneider states in his report that "[t]he epidemiologic correlation of melanoma with CLL/SLL and other lymphoproliferative disorders is well known and seems to be bidirectional," i.e., melanoma can cause CLL and vice versa. Ex. B, Schneider *Engilis* Report at 11.

With respect to Mr. Engilis's melanoma and bladder cancer, Dr. Schneider had no basis whatsoever to "rule in" Roundup exposure or CLL as a potential cause of those cancers. Indeed, he admitted that he was unaware of any study that shows a statistically significant increased incidence of bladder cancer in individuals who have CLL. Ex. E, Schneider *Engilis* Dep. at 49:12-19 ("I can't say that I could find a study that says bladder cancer specifically."). Even more egregious, he did not even research this question. *Id.* at 54:5-11; 68:1-6 ("Q. Okay. Does glyphosate cause any other types of cancer besides NHL? . . . So I haven't researched that topic. I was never asked to.") (objection omitted); 71:13-15 ("[I]t wasn't really my task in these depositions to look at that topic. So I'm not prepared.").

1  In short, he offered no reliable basis for his opinions regarding melanoma and bladder cancer and their
2  relationship either to NHL or to glyphosate. Rather, he simply assumes that those particular cancers
3  occurred at the same time as Mr. Engilis's NHL and they must bear some relation to Mr. Engilis's
4  glyphosate exposure. Such speculative, unsupported opinions are not admissible.

5  He also had no basis to rule out other prominent risk factors for those cancers. With respect to
6  melanoma, Dr. Schneider acknowledged that sunburns are a known risk factor for melanoma, *id.* at
7  50:18-51:1, and that Mr. Engilis reported a history of sunburns, but he did nothing to rule out sunburns
8  as a cause of or contributing factor to Mr. Engilis's melanoma. *Id.* at 124:19-21 ("I think a severe
9  sunburn is a risk factor for melanoma. A more important risk factor is the presence of glyphosate.");
10 125:5-8 ("I think there's no foundation to state that his melanoma was from a sunburn when I don't
11 know, one, how many he had; two, how severe they were; three, where they were" on his body). Indeed,
12 Dr. Schneider appears to have ignored the medical records related to Mr. Engilis's history of sunburns.
13 *Id.* at 125:16 ("A lot of records. I could have missed it."). Instead, Dr. Schneider jumped to the
14 conclusion that Mr. Engilis's melanoma must have been caused by exposure to Roundup rather than
15 his reported history of sunburns (or some other risk factor). Such a failure to reliably rule out other risk
16 factors renders Dr. Schneider's specific causation opinions wholly unreliable. *See Clausen*, 339 F.3d
17 at 1058 ("A differential diagnosis that fails to take serious account of other potential causes may be so
18 lacking that it cannot provide a reliable basis for an opinion on causation.").

19 **II.    DR. SCHNEIDER IS NOT QUALIFIED TO OFFER ANY OPINIONS ON**
20 **        GENOTOXICITY OR ANIMAL STUDIES.**

21 Dr. Schneider is even less qualified to opine about genotoxicity and animal studies, yet he seeks
22 to tell the jury that glyphosate is genotoxic, Ex. E, Schneider *Engilis* Dep. at 67:8-13, and that animal
23 data shows glyphosate causes NHL, *id.* at 28:8-11, 31:11-13. Such topics are far afield of his education
24 and clinical experience.

25 Dr. Schneider concedes that he is not a toxicologist or genotoxicity expert. Ex. D, Schneider
26 *Ferro* Dep. Vol. 1 at 55, Ex. G, Schneider *Ferro* Dep. Vol. 2 at 417:15-418:25. Although he is
27 apparently "aware" that glyphosate can cause chromosomal changes, when asked if he would offer any
28 other opinions about glyphosate's genotoxicity, he conceded: "Since [he's] not a trained toxicologist

or pathologist, that's about the extent of my understanding." Ex. D, Schneider *Ferro* Dep. Vol. 1 at 55:15-17. He also admitted he is "absolutely not" an expert on the conduct of long-term carcinogenicity studies in mice and rats, *id.* at 60:13-16, and he has no independent opinions about what the mouse and rat studies show, *id.* at 60:17-23. In Dr. Schneider's *own words*, "There's no way I can tell what a veterinary pathologist does. I'm not a veterinary pathologist nor do I deal with them." Ex. E, Schneider *Engilis* Dep. at 28:6-8; *see also* Ex. D, Schneider *Ferro* Dep. Vol. 1 at 162:3-8 ("Q. And, Dr. Schneider, would you conclude from animal studies whether a particular substance can cause cancer in humans? A. Dr. Schneider, the community clinical oncologist, is not the one you're going to ask to answer those questions."). Accordingly, his opinions merely piggyback on others'. *See id.* at 95:8-9 ("I think the IARC [International Association for Research on Cancer] supports my belief, *so I will use that to bolster my opinion*.") (emphasis added).

Put simply, because Dr. Schneider is unqualified to interpret the studies himself, he did no critical analysis of the underlying scientific data and simply parrots the opinions of others. *Id.*; *see also* Ex. E, Schneider *Engilis* Dep. at 24:18-25:1; 73:17-74:3. The testimony of other Roundup plaintiffs' experts have been excluded on exactly this basis. *See In re Roundup Prod. Liab. Litig.*, 2018 WL 3368534, at *32-33 (excluding general causation opinion of oncologist because he failed to offer his own analysis of the relevant studies and relied excessively on the conclusions of IARC and others); Ex. H, *Johnson v. Monsanto*, Jackson Co. Cir. Ct. (Oregon 2022) (6/3/22 Trial Tr. at 10-11) (excluding expert who based opinions on literature published by other scientists that was found from internet). Likewise, here, Dr. Schneider's conclusory opinions, without any qualifications to provide them—let alone any critical analysis of the underlying science—will not be helpful to the jury. Such opinions are inadmissible and should be excluded.

### III. THE COURT SHOULD EXCLUDE DR. SCHNEIDER'S TESTIMONY BECAUSE IT DOES NOT "FIT" PLAINTIFFS' SPECIFIC DISEASES.

To be admissible, the expert's opinion must be relevant or "fit" the facts of the case. *Daubert*, 509 U.S. 579, 592 (1993). "[I]n a toxic tort case, expert testimony on the issue of general causation meets *Daubert*'s 'fit' requirement only if the testimony includes an opinion that (1) exposure to the particular substance at issue, (2) in the dose to which the plaintiff was exposed, (3) for the duration in

1  which plaintiff was exposed, (4) can cause the particular condition(s) of which the plaintiff complains."
2  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 137 F Supp. 2d 147, 163 (E.D.N.Y. 2001), *aff'd*, 303 F.3d
3  256 (2d Cir. 2002); *see also Mancuso v. Consol. Edison Co. of New York, Inc.*, 967 F. Supp. 1437,
4  1445 (S.D.N.Y. 1997) (An "expert must establish 'general causation,' by demonstrating that, according
5  to scientific literature, levels of the toxin comparable to those received by the plaintiff can cause the
6  specific types of injuries he alleges.")

7  Thus, general causation testimony must address the specific injury of which the plaintiff
8  complains. *See*, *e.g.*, *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 585-86 (5th Cir. 2004)
9  (affirming exclusion of expert where "there are no epidemiological studies supporting a correlation
10 between the suggested causative agent and the type of cancer experienced by the plaintiff");
11 *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 270 (2d Cir. 2002) (affirming exclusion of
12 expert who relied on articles connecting solvent exposure to "symmetrical polyneuropathy only, not
13 . . . the asymmetrical symptoms of which [plaintiff] complained"); *Allen v. Pa. Eng'g Corp.*, 102 F.3d
14 194, 197 (5th Cir. 1996) (holding that evidence suggesting a connection between ethylene oxide and
15 lymphatic and hematopoietic cancers was "not probative on the causation of brain cancer"); *Burst v.
16 Shell Oil Co.*, No. 14-109, 2015 WL 3755953, at *8, *13 (E.D. La. June 16, 2015) (excluding general
17 causation opinions for lack of fit where "many of the studies on which [the proffered expert] relied did
18 not examine the risk for [acute myeloid leukemia] specifically, and instead examined the risk of
19 leukemia generally or other specific types of leukemia.").

20 Here, the Court should exclude the general causation opinions of Dr. Schneider because his
21 opinions do not "fit" the facts of the case.  Dr. Schneider agrees that different types of NHL are different
22 diseases. Ex. E, Schneider *Engilis* Dep. at 24:3-5 & 52:16-21; Ex. D, Schneider *Ferro* Dep. Vol. 1 at
23 103, 116. And he agrees that "[e]ven if there are data that exposure to Roundup is associated with a
24 particular cancer, you would need to see corroborating data before concluding Roundup causes another
25 kind of cancer," Ex. D, Schneider *Ferro* Dep. Vol. 1 at 176:7-12; *see also id.* at 286:15-21, 296:4-11.
26 Yet, in this case, he fails to present any opinion or conclusion linking Roundup exposure to the specific
27 subtype of NHL affecting Mr. Engilis, i.e., CLL, because has no data to support such a link. For
28 example, when asked if he had performed any research to support his opinions on genetic

predispositions to CLL, melanoma, and bladder cancer, he justified his failure to do so by responding that he relied on his "fund of knowledge as a medical oncologist." Ex. E, Schneider *Engilis* Dep. at 55:1-7.

Accordingly, Dr. Schneider's opinions are not relevant to the general cause inquiry in this case, will not be helpful to the jury, and will confuse the issues. They should be excluded. *See*, *e.g.*, *Burst v. Shell Oil Co.*, No. 14-109, 2015 WL 3755953, at *8, *13 (E.D. La. June 16, 2015).

## **CONCLUSION**

For all these reasons, the Court should grant Monsanto's motion to exclude the opinion testimony of Plaintiffs' expert witness Dr. Andrew Schneider.

Dated: November 30, 2022

Respectfully submitted,

/s/ *Jed P. White*_____
Jed P. White
Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of November, 2022, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Jed P. White*
Jed P. White