Stephanie Dilworth (SBN 342109)
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Tel:  (415) 626-3939
Fax:  (415) 875-5700
sdilworth@jonesday.com

Jeffrey J. Jones (*pro hac vice*)
JONES DAY
150 West Jefferson, Suite 2100
Detroit, Michigan 48226
Tel:  (313) 733-3939
Fax:  (313) 230-7997
jjjones@jonesday.com

Margaret M. Dengler (*pro hac vice*)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Tel:  (614) 469-3939
Fax:  (614) 461-4198
mdengler@jonesday.com

*Attorneys for Defendant The Scotts Company LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Scott Koller, et al., v. Monsanto Company, et al.*, Case No. 3:22-cv-04260-VC | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**THE SCOTTS COMPANY LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:   December 15, 2022<br>Time:  10:00 am<br>Place:  Via Zoom Webinar<br>Judge:  Hon. Vince G. Chhabria |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.   PLAINTIFFS HAVE NO MEANINGFUL RESPONSE TO MONSANTO'S
     MOTION TO DISMISS. ........................................................................................... 1

II.  PLAINTIFFS' OPPOSITION FAILS TO EXPLAIN AWAY THEIR FAILURE
     TO ALLEGE THAT SCOTTS PERSONALLY PARTICIPATED IN AND
     CONTROLLED THE ALLEGED MISCONDUCT. ................................................. 2

     A.   Plaintiffs Effectively Concede That They Have Not Alleged A Plausible Claim
          Under The UCL's Fraudulent Prong. ............................................................. 3

     B.   Plaintiffs Do Not Point To Any Facts Or Legal Authority Supporting An
          Unfair Prong Claim Against Scotts. .............................................................. 3

     C.   Plaintiffs Do Not Allege Any Plausible Violation Of State Or Federal Pesticide
          Laws That Would Support an Unlawful Prong Claim. .................................... 5

     D.   Plaintiffs Repeated References To Supposed "Joint Ventures" Are Of No
          Relevance To The Scotts Analysis. ............................................................... 8

III. PLAINTIFFS CANNOT REFRAME THEIR IMPLAUSIBLE AND
     UNPARTICULARIZED FRAUD-BASED ALLEGATIONS AGAINST SCOTTS
     TO SURVIVE DISMISSAL. ..................................................................................... 9

     A.   Plaintiffs Do Not Plausibly Allege That Scotts Made Any Misrepresentations
          Or Failed To Disclose Information It Had A Duty To Disclose. ..................... 9

     B.   Plaintiffs' Opposition Brief Does Not Cure Their Failure To Plead Their
          Allegations Against Scotts With Particularity............................................... 12

IV.  PLAINTIFFS' DEFENSE OF THEIR UNJUST ENRICHMENT COUNT IS
     UNSUPPORTED......................................................................................................... 13

CONCLUSION.................................................................................................................... 15

DEFENDANT THE SCOTTS COMPANY LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page

CASES

*Abuelhawa v. Santa Clara Univ.*,
   529 F. Supp. 3d 1059 (N.D. Cal. 2021) .................................................................14

*Allergan United States, Inc. v. Prescribers Choice, Inc.*,
   364 F. Supp. 3d 1089 (C.D. Cal. 2019) .........................................................7, 8, 10

*Antonyan v. Ford Motor Co.*,
   2022 WL 1299964 (C.D. Cal. Mar. 30, 2022) ................................................11, 12

*Berryman v. Merit Prop. Mgmt., Inc.*,
   62 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007) ............................................................14

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
   398 F. Supp. 3d 623 (N.D. Cal. 2019) .....................................................................5

*Godwin v. City of Bellflower*,
   5 Cal. App. 4th 1625, 7 Cal. Rptr. 2d 524 (1992) .................................................12

*Guido v. L'Oreal, USA, Inc.*,
   2011 WL 13152488 (C.D. Cal. June 27, 2011) .......................................................4

*Guttmann v. La Tapatia Tortilleria, Inc.*,
   2015 WL 7283024 (N.D. Cal. Nov. 18, 2015) .........................................................5

*Herron v. Best Buy Co. Inc.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013) ..............................................................2, 10

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ...................................................................................4

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011) ......................................................................3

*In re Toyota Motor Corp.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) ....................................................................5

DEFENDANT THE SCOTTS COMPANY LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

*Klein v. Facebook, Inc.*,
    580 F. Supp. 3d 743 (N.D. Cal. 2022) ..................................................................14

*Lusson v. Apple, Inc.*,
    2016 WL 10932723 (N.D. Cal. June 20, 2016) (Chhabria, J.) ..............................14

*MacDonald v. Ford Motor Co.*,
    37 F. Supp. 3d 1087 (N.D. Cal. 2014) ....................................................................5

*Patterson v. RW Direct, Inc.*,
    382 F. Supp. 3d 938 (N.D. Cal. 2019) ..................................................................10

*People ex rel. Harris v. Sarpas*,
    172 Cal. Rptr. 3d 25 (Cal. Ct. App. 2014)..........................................................8, 9

*People v. First Fed. Credit Corp.*,
    128 Cal. Rptr. 2d 542 (Cal. Ct. App. 2002) ...........................................................9

*Prudencio v. Midway Importing, Inc.*,
    831 F. App'x 808 (9th Cir. 2020) .........................................................................12

*Robie v. Trader Joe's Co.*,
    2021 WL 2548960 (N.D. Cal. June 14, 2021) .......................................................14

*Taylor v. Costco Wholesale Corp.*,
    2020 WL 5982090 (E.D. Cal. Oct. 8, 2020) .......................................................3, 4

*Tortilla Factory, LLC v. Better Booch*,
    2018 WL 4378700 (C.D. Cal. Sept. 13, 2018) .......................................................3

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ...............................................................................13

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) .............................................................................13

*Uzyel v. Kadisha*,
    116 Cal. Rptr. 3d 244 (Cal. Ct. App. 2010)..........................................................14

*Water, Inc. v. Everpure, Inc.*,
    2011 WL 13176096 (C.D. Cal. Aug. 23, 2011)......................................................10

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ...............................................................................4

DEFENDANT THE SCOTTS COMPANY LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

**STATUTES & OTHER AUTHORITIES**

7 U.S.C.
    § 136a(a) ................................................................................................6
    § 136j(a) .................................................................................................6

Cal. Food & Agric. Code
    § 12811 ..................................................................................................6
    § 12991 ..................................................................................................6
    § 12992 ..................................................................................................6
    § 12993 ..................................................................................................6

Federal Insecticide, Fungicide, and Rodenticide Act ...............................5, 8

Lanham Act .............................................................................................10

40 C.F.R. § 158.350 ..................................................................................7

Fed. R. Civ. P. 9(b) .................................................................................12

DEFENDANT THE SCOTTS COMPANY LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

## INTRODUCTION

Plaintiffs' claims against Scotts should be dismissed in their entirety.  Plaintiffs' Opposition makes clear that the basis for their claims is alleged *affirmative misrepresentations* on the Products' *labels* or purported "omissions" contrary to those alleged representations.  Yet Plaintiffs plead that the other Defendants—*not* Scotts—are responsible for the content of the labels.  This dooms Plaintiffs' UCL and fraud claims.

Presumably recognizing this weakness, Plaintiffs shift their UCL theory to focus on alleged violations of federal and state statutes regulating the sale of pesticides.  But Plaintiffs' allegations under those provisions suffer from similar, fatal flaws, unsupported by plausible allegations of Scotts' participation in or control of the alleged misconduct, and they rely on a misunderstanding of the regulatory scheme.  Plaintiffs' unjust enrichment count is based on the same substantive allegations as their UCL claims and it must also fall with those claims regardless of whether there is a standalone cause of action under California law.

At bottom, Plaintiffs seek to add Scotts to this litigation under theories that amount to vicarious liability.  If Plaintiffs' broad and ambiguous liability theories suffice here, any distributor, advertiser, retailer, partner, or agent in the country could be added as a party to this litigation—something California courts have specifically rejected in multiple decisions.

## ARGUMENT

### I.   PLAINTIFFS HAVE NO MEANINGFUL RESPONSE TO MONSANTO'S MOTION TO DISMISS.

Plaintiffs' claims against *all* Defendants should be dismissed for the reasons set out in Monsanto's Motion and concurrent Reply, both of which Scotts adopts to avoid unnecessary duplication.  By way of an example, Plaintiffs neither allege nor explain why their claims should proceed absent allegations that NNG (as opposed to other nitrosamines) is carcinogenic, that the Products were ever sold with NNG levels exceeding 1 ppm, or that NNG ever exceeded 1 ppm in a Product after it was sold at retail.  These fundamental shortcomings in Plaintiffs' Complaint doom their UCL, CLRA, and fraud claims against all Defendants.

II.   **PLAINTIFFS' OPPOSITION FAILS TO EXPLAIN AWAY THEIR FAILURE TO ALLEGE THAT SCOTTS PERSONALLY PARTICIPATED IN AND CONTROLLED THE ALLEGED MISCONDUCT.**

Plaintiffs' claims against Scotts under all three prongs of the UCL boil down to allegations that it "marketed and distributed" a lone Product—Roundup® Weed & Grass Killer Super Concentrate—with a misleading label.  The implications of this argument are extraordinary.  It would mean that every seller, distributor, agent, retailer, or reseller of a pesticide would be *strictly liable* under the UCL for any alleged flaw in the registration of the product, even without any allegation or evidence that they knew about or actively participated in any specific unlawful misconduct.

Plaintiffs say the label is misleading because it "misrepresented the 'Roundup Weed & Grass Killer Super Concentrate' as containing the herbicide that was legally permitted to be sold and distributed under that label."  Opp. at 14; *see id.* at 11.  Leaving aside the fact that the Product was registered and sold as registered, Plaintiffs concede that Scotts has no control over the content of the Product label or the data or certifications made in the registration of that Product.  *See* Compl. ¶¶ 53, 95, 171-74, 302-12.  That concession is fatal to Plaintiffs' claims against Scotts no matter what legal theory Plaintiffs try to shoehorn them into.  Plaintiffs seem to recognize as much for the "fraudulent" prong of their UCL claim, since they largely abandon that liability theory in their Opposition.  They instead reframe their allegations as directed to the "unfair" and "unlawful" prongs of the UCL.  But those claims fail for the same reasons explained in Scotts' Motion: they do not plausibly allege that Scotts engaged in any actionable conduct.

Plaintiffs are incorrect as a matter of law that personal participation and control is required only for "UCL [unlawful prong] claims arising from violations of the CLRA or FAL."  Opp. at 9.  That is the central premise to their argument and it is wrong.  Courts dismiss UCL claims alleging violations of any of the three prongs of the UCL in the absence of plausible allegations that the defendant personally participated in and controlled the alleged misconduct.  *See, e.g.*, *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1169 (E.D. Cal. 2013) ("Failure to take on the role of 'global policeman' is insufficient to support liability under the UCL.  Accordingly, Plaintiff's UCL

claims against Toshiba for unlawful, unfair, and fraudulent practices are dismissed.") (citation omitted); *Taylor v. Costco Wholesale Corp.*, 2020 WL 5982090, at *2-4 (E.D. Cal. Oct. 8, 2020) (dismissing claim against retailer of Roundup® Lawn & Garden products for lack of participation or control brought "only under the 'unfair' prong of" UCL).  Plaintiffs' suggestion that Scotts attacked only their unlawful prong claims (Opp. at 6) is likewise incorrect.  Scotts moved to dismiss Plaintiffs' UCL claims in their entirety, each of which requires plausible allegations that Scotts participated in and controlled the alleged misconduct.  *See* Mot. at 4-7, 9-10 & 6 n.3.

### A.    Plaintiffs Effectively Concede That They Have Not Alleged A Plausible Claim Under The UCL's Fraudulent Prong.

Plaintiffs concede that "UCL claims arising from violations of the CLRA or FAL"—that is, deceptive practices and false advertising claims—"do not give rise to distributor liability absent participation in or control over the deceptive advertising."  Opp. at 9.  The same is true of UCL fraudulent prong claims, and Plaintiffs do not dispute this.  Plaintiffs allege only that Scotts distributed one of the Products, and they concede that Scotts has no control over the content of that Product's label or its EPA registration.  *See* Compl. ¶¶ 53, 95, 171-74.  But conclusory allegations that Scotts knew or should have known about the allegedly deceptive marketing are inadequate to establish its participation and control.  *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1012 (S.D. Cal. 2011) (noting that allegations of knowledge are insufficient to establish participation or control); *Tortilla Factory, LLC v. Better Booch*, 2018 WL 4378700, at *11 (C.D. Cal. Sept. 13, 2018) ("[E]ven if plaintiff established that defendant distributors knew of Better Booch's alleged false advertising, plaintiff still fails to demonstrate the distributors' control and/or participation in the misconduct.").  Plaintiffs' Opposition does not contest this.

### B.    Plaintiffs Do Not Point To Any Facts Or Legal Authority Supporting An Unfair Prong Claim Against Scotts.

Plaintiffs' argument under the "balancing" or "tethering" tests of the UCL's unfair prong fares no better.  "Irrespective of which of the [two or] three formulations of the test for an unfair business practice applies, a claim may only be asserted against a proper defendant."  *Taylor*, 2020

WL 5582090, at *3.  More specifically, just like the "fraudulent" prong of the UCL, a complaint brought under the "unfair" prong "must contain some allegation of fact to show [a] defendant's 'personal participation in the unlawful practices and unbridled control' over those practices."  *Id.* at *4 (dismissing UCL unfair prong claim against retailer for sale of Roundup® Lawn & Garden products without disclosing their alleged carcinogenicity).

Plaintiffs do not even mention Scotts specifically in their argument on the unfair prong, instead referring only to "Defendants" generically.  Opp. at 9-10.  They argue that "Defendants . . . market[], sell[] and distribut[e] herbicides that could (and likely would) exceed 1 ppm, without sufficient oncogenic testing," and therefore "dupe" consumers into buying the Products and "offend[] EPA's policy against the sale and distribution of herbicides with over 1 ppm nitrosamines absent proof that the nitrosamine is not carcinogenic."  Opp. at 9-10.  But, as described in Scotts' Motion and above, Plaintiffs concede that Scotts has no control over the Product label or its EPA registration, and they do not plausibly allege that Scotts made any affirmative misrepresentations about the Product and knew them to be false.  Thus, even if Plaintiffs were right that NNG exceeds 1 ppm in the Product and that Monsanto is therefore required to submit "sufficient oncogenic testing" to EPA as part of the registration process (an allegation unsupported by fact or law), they have not alleged that Scotts participated in or controlled that registration process.  *See* Compl. ¶¶ 53, 95, 171-74.  This dooms Plaintiffs' "unfair" prong claim under either of Plaintiffs' proposed tests.[1]

All three cases Plaintiffs cite (Opp. at 10) involved allegations that *manufacturers* mislabeled or failed to warn about alleged defects in their own products—there was thus no question that those defendants participated in and controlled the allegedly unfair practices.  *Guido*

---

[1] To the extent that Plaintiffs premise their unfair prong claim on Scotts' alleged failure to disclose that NNG levels in the Product could exceed 1 ppm, their claim should also be dismissed on the additional grounds that "the failure to disclose … a defect of which [the defendant] is not aware, does not constitute an unfair or fraudulent practice."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.5 (9th Cir. 2012); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867 (9th Cir. 2018) ("Mars' failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical.").  As discussed *infra* Section II, Plaintiffs do not plausibly allege that Scotts even *knew about* the alleged defect or knew it existed in any products, let alone that Scotts had a duty to disclose any information about NNG levels in the Product.

*v. L'Oreal, USA, Inc.*, 2011 WL 13152488, at *1 (C.D. Cal. June 27, 2011) involved allegations that defendant L'Oreal made misrepresentations and omissions regarding "a hair styling product manufactured, distributed and marketed by L'Oreal." *In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145, 1155 (C.D. Cal. 2010) involved allegations related to "vehicles designed, manufactured, distributed, marketed and sold by" defendants Toyota. And *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1090 (N.D. Cal. 2014) involved allegations concerning cars "manufactured, sold, and warranted by Ford."[2] Those cases are inapplicable here. Scotts helps distribute products; it is not the manufacturer. Plaintiffs have made no allegation that Scotts controls the label or the registration process; to the contrary, the registrant of the Products at issue does so.

## C.   Plaintiffs Do Not Allege Any Plausible Violation Of State Or Federal Pesticide Laws That Would Support an Unlawful Prong Claim.

Plaintiffs disclaim their CLRA claim as a predicate violation of the UCL's unlawful prong (or as a standalone claim) (Opp. at 8) and instead argue that Scotts violated provisions of the California Food & Agricultural Code and the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") pertaining to the sale and distribution of pesticides (Opp. at 6-7). But even as to those alleged violations, Plaintiffs do not identify conduct *by Scotts* that, even if true, could make it liable. Plaintiffs again argue, in effect, that Scotts should be held vicariously liable in such circumstances without citing any cases so holding. In fact, Plaintiffs' discussion of "vicarious liability" is telling. Plaintiffs argue that they are not seeking to impose "vicarious liability" and that any such argument is a "red herring." Opp. at 8. In support of that argument, Plaintiffs state: "The Complaint . . . alleges that, at a minimum, Scotts personally participated in and had control over the acts that violated the aforementioned statutes because it was the *exclusive* distributor of

---

[2] Without context, Plaintiffs argue that "reliance is not a necessary element of a claim under the UCL's 'unfair' prong." Opp. at 10. But the case Plaintiffs cite involved allegations by a competitor and whether the competitor could "establish . . . standing based upon its customers' reliance" rather than its own. *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 646 (N.D. Cal. 2019). In the consumer context, "courts have construed an actual reliance standing requirement to claims under the unfair prong of the UCL if those claims sound in fraud"—just as Plaintiffs' claims do here. *Guttmann v. La Tapatia Tortilleria, Inc.*, 2015 WL 7283024, at *4 (N.D. Cal. Nov. 18, 2015).

the Roundup Weed & Grass Killer Super Concentrate." *Id.* at 8. But that is vicarious liability—"Scotts distributed the product and Scotts is therefore liable." That is not the law.

Several of the provisions Plaintiffs contend are predicates simply prohibit false or misleading representations or misbranding in connection with the sale or distribution of pesticides. *See* Cal. Food & Agric. Code §§ 12991(a), 12991(b), 12991(c), 12992; 7 U.S.C. § 136j(a)(1)(E). As described above, however, the only misrepresentations alleged by Plaintiffs are made *on the Product label*, over which Plaintiffs concede Scotts has no control. Plaintiffs' only rebuttal is telling. They argue that "there is no requirement . . . that Scotts have had anything to do with the formula, manufacture, or registration" of the Product to state a claim. Opp. at 7-8. But Plaintiffs must allege affirmative false representations by Scotts outside the Product label and Product registration process, which they do not do. Conspicuously absent from their Opposition is any reference to Scotts' control of the Product label, the only place in which they allege a misrepresentation was made.

Plaintiffs also cite § 12811 of the Food & Agricultural Code as an alleged predicate violation, which provision requires "[e]very manufacturer of, importer of, or dealer in any pesticide, *except* a person that sells any raw material to a manufacturer of any pesticide or a dealer or *agent that sells any pesticide that has been registered by the manufacturer or wholesaler*," to register the pesticide with the state prior to sale. (Emphasis added). But Plaintiffs allege that Monsanto is the registrant of the Product under both federal and state law. Compl. ¶ 38 & Ex. 1. They do not allege that Scotts—Monsanto's agent for the distribution of Roundup® Lawn & Garden products registered to Monsanto (Compl. ¶¶ 36, 38, 43, 45; Opp. at 11)—is required to and has not obtained a necessary registration for the Product such that it has violated § 12811.

The remaining provisions Plaintiffs rely on pertain to the delivery or distribution of allegedly unregistered pesticide products (Cal. Food & Agric. Code § 12993 and 7 U.S.C. §§ 136a(a) & 136j(a)(1)(A), 136j(a)(1)(C)) or pesticides that purportedly differ in their composition "at the time of [their] distribution or sale from [their] composition as described in the" Confidential Statement of Formula (7 U.S.C. § 136j(a)(1)(C)). Plaintiffs contend that

Defendants violated those provisions because the registration of the Products is premised on a certification that NNG levels in the Products will not exceed 1 ppm. Opp. at 4. But these alleged violations cannot form the basis for Plaintiffs' "unlawful" claim against Scotts for three reasons.

*First*, the sole Product Scotts distributes, Roundup® Weed & Grass Killer Super Concentrate, *is* registered with both EPA and the State of California. Plaintiffs argue that it should not be registered because Monsanto allegedly misrepresented to EPA that it would stay below 1 ppm NNG throughout its useful life, but that is alleged malfeasance by Monsanto, not by Scotts.

*Second*, Plaintiffs' theory that the Products are "unregistered" is based on a fundamental misunderstanding of law and fact. Specifically, Plaintiffs rely on 40 C.F.R. § 158.350, which they argue requires pesticide registrants to certify an upper limit for "impurities of toxicological significance like NNG." Compl. ¶ 95; Opp. at 4. But that provision requires certified limits for impurities only if "the product is a technical grade of active ingredient or is produced by an integrated system." 40 C.F.R. § 158.350(a)(3); *see also id.* § 158.320. It does not apply to final, formulated Roundup® Products because those are neither technical grade products nor products produced by an integrated system. Plaintiffs allege no facts to the contrary. In fact, as explained in Monsanto's concurrent Reply, the Confidential Statement of Formula for the sole product Scotts distributes make no reference to NNG or any other impurities. Thus, Plaintiffs are wrong that there is a legal requirement imposed by EPA requiring that the final formulated Products be under 1 ppm as "a fundamental condition of registration." *See* Monsanto Reply at 4-5.

*Finally*, even if there were such a requirement, the Products would not be universally "unregistered." At most, a particular bottle whose NNG levels exceeded 1 ppm might be out of specification. But Plaintiffs have not alleged that this ever occurred either or, even if it did, that Scotts knew about or had any control over that fact. Since the Products are registered, Scotts' distribution of Roundup® Weed & Grass Killer Super Concentrate cannot serve as a predicate violation for Plaintiffs' UCL unlawful claim.

To that end, the cases cited by Plaintiffs do not support their arguments. Plaintiffs first cite *Allergan United States, Inc. v. Prescribers Choice, Inc.*, 364 F. Supp. 3d 1089, 1107 (C.D. Cal.

2019) for the proposition that distributing the Product "in violation of any law or regulation[] is sufficient" to state an unlawful prong claim.  Opp. at 8.  But the predicate violation in that case was of the California Sherman Law.  *Allergan*, 364 F. Supp. 3d at 1104.  It has nothing to do with the California Food & Agricultural Code or FIFRA provisions Plaintiffs allege were violated here. Moreover, the defendants in *Allergan* were drug compounders who *admitted* that they made affirmative representations that their drugs complied with legal requirements, and who plainly had knowledge of how the drugs were compounded—not simply distributers uninvolved in the registration process.  *Id.* at 1095-99.  Nor does *People ex rel. Harris v. Sarpas*, 172 Cal. Rptr. 3d 25 (Cal. Ct. App. 2014) support Plaintiffs' assertion that distributing the Product is enough to hold Scotts liable.  That case involved an alleged loan modification scheme and correctly recognized that "[l]iability under the UCL and FAL must be based on the defendant's participation in or control over the unlawful practices found to violate section 17200."  *Id.* at 48.

### D.     Plaintiffs Repeated References To Supposed "Joint Ventures" Are Of No Relevance To The Scotts Analysis.

Presumably recognizing the weakness in their allegations against Scotts, Plaintiffs repeatedly adopt rhetoric using "joint ventures" and supposed "aiding and abetting" to double down on their unsupported theory that Scotts is responsible for Seamless Control LLC's ("Seamless") conduct with respect to the Joint Venture Products.  Opp. at 8.  But Plaintiffs allege no facts supporting this argument.  Indeed, Plaintiffs completely ignore fundamental principles of corporate separateness.  Seamless was dissolved and merged with and into *Monsanto*.  Mot. at 5 n.2.  And, even if Seamless were a separate entity, Scotts—the entity Plaintiffs sued—was not the entity that held an ownership interest in Seamless (that was an entirely different entity).  *Id.*  Nor do Plaintiffs plead any facts to pierce the corporate veil for any of these entities.  *Id.*  Plaintiffs ignore those points in their Opposition.

Rather than address these arguments, Plaintiffs vaguely assert that UCL liability "may be imposed against those who aid and abet the violation"—<u>a theory not present in Plaintiffs' Complaint</u>.  Opp. at 8.  In support, Plaintiffs cite to cases involving "joint owners of a company"—

DEFENDANT THE SCOTTS COMPANY LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

cases that have no relevance here. *Id.* Nor could this unpled theory salvage Plaintiffs' claims against Scotts. In fact, both cases Plaintiffs rely on make clear that such secondary liability is appropriate only if the defendant had *knowledge* of the unlawful conduct and *actively participated* in the wrongdoing by providing "substantial assistance" or other necessary conduct in furtherance of the unlawful conduct. *See Harris*, 172 Cal. Rptr. 3d at 48 ("[Aiding and abetting l]iability may be imposed if the defendant *knows* the other's conduct constitutes a breach and gives substantial assistance or encouragement to the other to so act.") (internal quotation marks and citations omitted); *People v. First Fed. Credit Corp.*, 128 Cal. Rptr. 2d 542, 551 (Cal. Ct. App. 2002) (affirming judgment holding principal in business liable in fraud scheme where she "was an active participant in the business" and "permitted the unlawful practices to continue *despite her knowledge thereof*."). Those cases do not, as Plaintiffs seem to suggest, stand for the proposition that a joint owner of a business has knowledge of any unlawful conduct by another owner of the business as a matter of law. And Plaintiffs do not allege that Scotts had any knowledge of the allegedly unlawful practices related to the Joint Venture Products. To the contrary, they aver that the registrations of those products "were based on Monsanto's registrations of the Products" and that a Monsanto employee "was responsible for coordinating the registration of the Joint Venture Products on behalf of Seamless Control" and "managed all aspects of the Products' registrations with EPA, which included data submission and regulatory compliance." Compl. ¶¶ 48, 50.

## III. PLAINTIFFS CANNOT REFRAME THEIR IMPLAUSIBLE AND UNPARTICULARIZED FRAUD-BASED ALLEGATIONS AGAINST SCOTTS TO SURVIVE DISMISSAL.

### A. Plaintiffs Do Not Plausibly Allege That Scotts Made Any Misrepresentations Or Failed To Disclose Information It Had A Duty To Disclose.

Plaintiffs' fraud-based claims are particularly implausible as to Scotts because Plaintiffs concede that Scotts has no control over the content of the Product label—the only place they allege a misrepresentation—and they fail to allege any grounds for an actionable omission. Nothing in Plaintiffs' Opposition brief changes this conclusion.

As discussed above, Plaintiffs cannot plausibly allege that Scotts made any misrepresentations.[3]   Plaintiffs' only answer is to repeat their conclusory allegation that "the Complaint plainly alleges that Scotts misrepresented the 'Roundup Weed & Grass Killer Super Concentrate' as containing the herbicide that was legally permitted to be sold and distributed under that label . . . through its distribution."  Opp. at 14.  But they concede that Scotts is not responsible for the content of that Product's label or the registration of that Product—it merely distributes it— and cite no authority for the proposition that distributing a product constitutes a representation.  To the contrary, courts regularly reject similar claims against even product *manufacturers* in related contexts.  *See, e.g., Water, Inc. v. Everpure, Inc.*, 2011 WL 13176096, at *4 (C.D. Cal. Aug. 23, 2011) ("[C]ourts have rejected the theory that one can falsely imply government approval by the act of selling a product alone because that 'theory is, quite simply, too great a stretch under the Lanham Act.'") (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993)).[4]

Plaintiffs' fallback argument that omissions are actionable when contrary to a representation *by the defendant* (Opp. at 14) is also of no avail.  As discussed at length, Plaintiffs identify no affirmative false representation whatsoever by Scotts, let alone allege facts showing that Scotts knew the representation to be false at the time it was made.  Without any such representation by Scotts, Plaintiffs have no claim against Scotts under this theory.  *See, e.g., Herron*, 924 F. Supp. 2d at 1176 (citation omitted) ("Toshiba argues that 'Plaintiff has not alleged particularized facts supporting a duty to disclose' by Toshiba based on a partial representation

---

[3] Plaintiffs again cite allegations related to Seamless and the Joint Venture products.  Those allegations cannot support Plaintiffs' fraud-based claims against Scotts because, as discussed above and in Scotts' Motion, Plaintiffs allege no facts demonstrating that Scotts is liable for Seamless's conduct.  *See supra* Section II.C; Mot. at 5 n.2.

[4] The cases cited by Plaintiffs do not hold otherwise.  Opp. at 14.  *Patterson v. RW Direct, Inc.*, 382 F. Supp. 3d 938, 942 (N.D. Cal. 2019) stands only for the proposition that a plaintiff need not allege a duty to disclose when his theory is based on affirmative misrepresentations.  And *Allergan* involved undisputed allegations that the distributor defendant made its own representations that the drugs were FDA-approved.  *Allergan*, 364 F.Supp.3d at 1097-98.  Those cases do not support an inference that Scotts made any representation about the Product by distributing it with a label over which Scotts has no control.

theory.  Since Plaintiff does not allege any representations made by Toshiba to Plaintiff, this portion of Toshiba's dismissal motion is granted.").

Finally, Plaintiffs argue that Scotts had a duty to disclose that the Product allegedly expires and NNG levels could exceed 1 ppm because the alleged defect is a safety hazard or goes to the central function of the Product.  Opp. at 14-16.  As explained in more detail in Monsanto's Reply, and without conceding that Plaintiffs' formulation of the legal standard for omission-based claims is correct, neither argument is availing.  Plaintiffs do not allege any facts showing that NNG—as opposed to *other nitrosamines*—is carcinogenic or, even if it was (which no facts show), that the level of exposure resulting from using the Product would pose any safety hazard.  And they do not allege that the level of NNG in the Product affects its central function as an effective herbicide.  To the contrary, Plaintiff Koller alleges that he has purchased Roundup® Weed & Grass Killer Super Concentrate for a "decade" (Compl. ¶ 203; Opp. at 5), which he presumably would not do if the Product was ineffective at controlling weeds.

Even if Plaintiffs could plausibly allege a safety hazard or defect affecting the Product's central function, they do not allege viable omissions-based claims against Scotts for the additional reason that—as they concede—those claims require plausible allegations of Scotts' *knowledge* of the alleged defect.  Opp. at 15; *e.g., Antonyan v. Ford Motor Co.*, 2022 WL 1299964, at *5 (C.D. Cal. Mar. 30, 2022) ("To have a duty to disclose, however, plaintiffs must also 'sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss.'") (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012)).  Plaintiffs contend that "[t]he Complaint alleges that Defendants, including Scotts, knew or should have known of the true nature of the Products," citing Paragraphs 36, 45-47, 59, 62, 138-39, 182-83, and 200 of the Complaint.  Opp. at 16; *see also* Opp. at 11-12.  Except for Paragraphs 62, 138-39, and 200, those paragraphs simply contain allegations that Scotts distributed and marketed certain Products.  As to the few paragraphs that purport to say more, all fall well short of supporting any claim.

- Paragraph 62 alleges in conclusory fashion that "Scotts also has been aware" of the alleged carcinogenicity of nitrosamines (*not* NNG).  Even if that were true, it says

nothing of Scotts' awareness of the alleged defect, the presence of any such defect in any Products, or a basis for liability against Scotts.

- Paragraphs 138-39 speak to *Monsanto's* purported knowledge, not Scotts'. Plaintiffs allege that *Monsanto* discussed waiving limits on nitrite (*not* NNG) levels in water used by a Scotts facility. Plaintiffs characterize the discussion about nitrite waivers as "elevating the levels of NNG in the products [Scotts] formulated on behalf of Monsanto." Opp. at 16; *see* Opp. at 12. But Plaintiffs do not allege that this resulted in NNG levels exceeding 1 ppm in the final formulated Product, much less that *Scotts* was aware that it did so.[5] *See* Mot. at 8-9 & 9 n.4.

- Paragraph 200 alleges that a 2003 Material Safety Data Sheet for the Product included a recommended shelf-life that *Monsanto* later removed. Although Plaintiffs argue that the Material Safety Data Sheet "should have alerted Scotts that [the Product] could expire" (Opp. at 12), they do not explain now how a change to the MSDS would inform Scotts that the Product allegedly contains *NNG levels* exceeding 1 ppm or provide any other basis for liability.

Even if properly pleaded, such "speculative and conclusory" allegations of knowledge "provide insufficient 'factual enhancement to cross the line between possibility and plausibility'" and do not support an omission-based fraud claim against Scotts. *Antonyan*, 2022 WL 1299964, at *5; *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 810 (9th Cir. 2020) (quoting *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014)).

### B. Plaintiffs' Opposition Brief Does Not Cure Their Failure To Plead Their Allegations Against Scotts With Particularity.

Plaintiffs have no meaningful response to Scotts' arguments that their allegations fail to identify the "who, what, where, when, and how" of the alleged fraud as required by Rule 9(b). Plaintiffs continue to identify the "who" as "Defendants" (Opp. at 11), without particularly identifying Scotts' alleged role in any plausible scheme to mislabel the lone Product it distributes or suppress information known to Scotts about alleged NNG levels in that Product.

---

[5] Plaintiffs argue in their Opposition that Scotts "certainly should have known [that "nitrites plus glyphosate creates NNG"] after Dr. Wratten explained how this works and why 'spec waivers' posed a serious danger as it relates to NNG" based on the email cited in Paragraphs 138-39. Opp. at 12. But that email chain was an *internal Monsanto* email chain that Plaintiffs do not allege Scotts saw, much less explain how it establishes Scotts' alleged knowledge that NNG levels would exceed 1 ppm in final formulated products. And any alleged knowledge on the part of Monsanto cannot be imputed to Scotts. *Godwin v. City of Bellflower*, 5 Cal. App. 4th 1625, 1631, 7 Cal. Rptr. 2d 524, 527 (1992).

Plaintiffs' argument that they "lay out each Defendant's involvement" is simply inconsistent with their Complaint.  Plaintiffs argue that they alleged that Scotts distributes the Product, knew the Product "could expire," "was directly involved with increasing NNG levels in the Products," and "was aware that NNG forms in glyphosate-based herbicides and that nitrosamines are known carcinogens."  Opp. at 11-13.  But, as described above, Plaintiffs do not plead those allegations in their Complaint.  Plaintiffs' central allegations of fraud are instead directed to Monsanto—not Scotts.  *See* Compl. ¶¶ 9-22, 122-47, 148-64, 191, 244, 325, 341.

Notably, Plaintiffs rely on authority that actually confirms that their fraud-based claims are entirely deficient with respect to Scotts.  In *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011), the court held a complaint inadequate where—just as here—"the Complaint fails to allege that the Individual Defendants had any role in making a false statement."  And in *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016), the court held that the complaint "offers only broad allegations lacking particularized supporting details" as to one group of defendants that "may be sufficient to 'give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge,' but [] are insufficient to show the allegations against these defendants have a 'factual basis.'"  *Id.* at 1182-83 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1018-19 (9th Cir. 2001)).  The same is true of Plaintiffs' fraud-based allegations against Scotts.  Likewise, according to Plaintiff's own authorities, Plaintiffs' assertion that "knowledge may be alleged generally" (Opp. at 16), does not mean Plaintiffs may "attribute[] wholesale" one defendant's purported knowledge to another.  *Corinthian Colleges*, 655 F.3d at 998.  Plaintiffs' fraud-based claims lack any particularized factual basis and should be dismissed.

## IV.   PLAINTIFFS' DEFENSE OF THEIR UNJUST ENRICHMENT COUNT IS UNSUPPORTED.

Although Plaintiffs argue that California law permits standalone unjust enrichment claims in "certain circumstances" (Opp. at 17), they neither identify those circumstances nor explain why their case is an exception.  Under California law, there is no general, standalone cause of action

for unjust enrichment.  *See, e.g.*, *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 829 (N.D. Cal. 2022); Mot. at 11.  To support their position to the contrary, Plaintiffs rely on an unpublished Ninth Circuit decision that extended a California Supreme Court decision beyond its expressly narrow scope.  *See* Opp. at 17 (citing *Bruton v. Gerber Products Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *Penikila v. Sergeant's Pet Care Prods., LLC*, 442 F. Supp. 3d 1212, 1215 (N.D. Cal. 2020) (Chhabria, J.) (citing *Bruton*)).  But that decision has been criticized as inconsistent with the California Supreme Court decision upon which it relied and subsequent California Court of Appeals decisions.  *See Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070-72 (N.D. Cal. 2021) (rejecting argument for standalone unjust enrichment claim based on *Bruton* because "this Court must follow the repeated holdings of California Courts of Appeal" confirming that unjust enrichment is not a cause of action except in narrow circumstances not relevant here).

Leaving aside the lack of legal support, Plaintiffs cannot contest that their unjust enrichment claim is based on the same alleged misconduct as their UCL claims against Scotts and must "rise and fall with the underlying, substantive [UCL] claims on which [it] rel[ies]."  *Lusson v. Apple, Inc.*, 2016 WL 10932723, at *3 (N.D. Cal. June 20, 2016) (Chhabria, J.); *see Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 188 (Cal. Ct. App. 2007); *Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *7 (N.D. Cal. June 14, 2021); Mot. at 11.  Plaintiffs' citations to cases recognizing that pleading in the alternative is permitted (Opp. at 17) are not to the contrary.  Even if an unjust enrichment claim may be pleaded in the alternative in certain circumstances, that does not mean it does not "rise and fall" with the underlying claim on which it is based.  Because Plaintiffs' UCL claims must be dismissed, their unjust enrichment count that relies on the same factual allegations (*see* Compl. ¶ 379) should be dismissed too.[6]

---

[6] Nor do Plaintiffs meaningfully confront their failure to plead a specific actionable benefit that is "identifiable" and "measurable" that was conferred upon Scotts.  Plaintiffs argue in conclusory fashion that "Defendant has been unjustly enriched in retaining the revenues from purchases of the Products."  Opp. at 18.  But Scotts serves as a marketing agent.  Plaintiffs do not articulate any specific benefit that is "measurable" and "properly attributable to" *Scotts'* alleged misconduct. *Uzyel v. Kadisha*, 116 Cal. Rptr. 3d 244, 266 (Cal. Ct. App. 2010); Mot. at 12.  In discussing the purported "unjust" retention, Plaintiffs cite only to "Defendants'" alleged conduct.  Again, under Plaintiffs' apparent theory of unjust enrichment, anyone in the supply chain for any product could

## CONCLUSION

For the reasons stated above, in Scotts' Motion, and in Monsanto's Motion and concurrent Reply, the Court should dismiss Plaintiffs' claims against Scotts (Counts VI, VII, X, and XI) with prejudice.

Dated:  December 1, 2022

Respectfully Submitted,

*/s/ Stephanie Dilworth*

Stephanie Dilworth (SBN 342109)
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Tel:  (415) 626-3939
Fax:  (415) 875-5700
sdilworth@jonesday.com

Jeffrey J. Jones (*pro hac vice*)
JONES DAY
150 West Jefferson, Suite 2100
Detroit, Michigan 48226
Tel:  (313) 733-3939
Fax:  (313) 230-7997
jjjones@jonesday.com

Margaret M. Dengler (*pro hac vice*)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Tel:  (614) 469-3939
Fax:  (614) 461-4198
mdengler@jonesday.com

*Counsel for Defendant*
*The Scotts Company LLC*

---

be sued for "unjust enrichment" even when they are simply providing value-added services to a manufacturer in conjunction with distributing a product.

DEFENDANT THE SCOTTS COMPANY LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the December 1, 2022, I electronically filed the foregoing THE SCOTTS COMPANY LLC'S NOTICE OF AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.


*/s/ Stephanie Dilworth*
Stephanie Dilworth

*Counsel for The Scotts Company LLC*