Patrick J. Stueve, Mo. Bar #37682
Todd E. Hilton, Mo. Bar #51388
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
stueve@stuevesiegel.com
hilton@stuevesiegel.com

Don M. Downing, Mo. Bar #30405
Gretchen Garrison, Mo. Bar #33963
Cort A. VanOstran, Mo. Bar #67276
GRAY, RITTER & GRAHAM, P.C.
701 Market Street, Suite 800
St. Louis, Missouri 63101
ddowning@grgpc.com
ggarrison@grgpc.com
cvanostran@grgpc.com

*Attorneys for Missouri Plaintiffs and Objectors
Ryan Tomlinson and Carol Richardson*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>*Gilmore v. Monsanto*, Case No. 21-cv-08159 | **MISSOURI PLAINTIFFS AND OBJECTORS RYAN TOMLINSON'S AND CAROL RICHARDSON'S OBJECTIONS AND OPPOSITION TO PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: January 12, 2023<br>Time: 2:30 p.m.<br>Place: Via Zoom Webinar<br>Judge: Hon. Vince G. Chhabria |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.      The *Bluetooth* signs of collusion require the court to review this settlement with heightened scrutiny. ................................................................................................... 2

      A.      Gilmore counsel's disproportionate fee is a red flag. ............................................ 3

      B.      The settlement's clear sailing provision combined with the reversionary clause is a red flag. ................................................................................................... 5

      C.      The parties' use of a mediator cannot remove the stains of collusion. ................... 6

II.     This settlement provides inadequate relief to missouri class members. ............................ 7

      A.      Missouri class members face few risks on the merits. ........................................... 8

      B.      Missouri law entitles Missouri purchasers to greater damages. ............................. 9

      C.      The Missouri class does not have uncertainty related to class certification. ........ 11

      D.      A de minimis risk of preemption does not justify a steep discount for the class of Missouri purchasers. ................................................................................. 11

      E.      The Missouri class's superior claims require the Court to deny final approval. ... 12

      F.      The Court can deny the settlement without requiring new notice for the nationwide class later. ........................................................................................... 13

III.    Gilmore is an inadequate representative. ......................................................................... 14

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Beyond Pesticides v. Monsanto Co.*,
   311 F.Supp.3d 82 (D.D.C. 2018) .................................................................................. 12

*Blitz v. Monsanto Co.*,
   317 F.Supp.3d 1042 (W.D. Wis. 2018) ........................................................................ 12

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ............................................................................... 3, 4, 5

*Carson v. Monsanto Co.*,
   51 F.4th 1358 (11th Cir. 2022) ..................................................................................... 12

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021) ........................................................................................ 12

*Hess v. Chase Manhattan Bank, USA, N.A.*,
   220 S.W.3d 758 (Mo. 2007) ........................................................................................... 8

*Holmes v. Continental Can Co.*,
   706 F.2d 1144 (11th Cir. 1983) ................................................................................... 14

*In re Airline Ticket Comm'n Antitrust Litig.*,
   953 F. Supp. 280 (D. Minn. 1997) ............................................................................... 13

*In re Bluetooth Headset Prods. Liab.*,
   654 F.3d 935 (9th Cir. 2011) ..................................................................................... 2, 5

*In re Literary Works in Elec. Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011) ........................................................................................... 8

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
   800 F. Supp. 2d 328 (D. Me. 2011) ............................................................................. 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs.& Prod. L*iab. Litig.,
   895 F.3d 597 (9th Cir. 2018) .......................................................................................... 6

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................................... 14

*Kerr v. Vatterott Educ. Ctrs. Inc.*,
   439 S.W.3d 802 (Mo. Ct. App. 2014) .......................................................................... 10

*Kim v. Allison*,
   8 F.4th 1170 (9th Cir. 2021) ............................................................................... 2, 7, 12

*Liberty Financial Mgmt. Corp. v. Beneficial Data Processing Corp.*,
   670 S.W.2d 40 (Mo. App. 1984) .................................................................................. 10

*McKinney-Drobnis v. Oreshack*,
    16 F.4th 594 (9th Cir. 2021) ................................................................................. 2, 4

*Murphy v. Stonewall Kitchen, LLC*,
    503 S.W.3d 308 (Mo. App. E.D. 2016) ..................................................................... 10

*Plubell v. Merck & Co., Inc.*,
    289 S.W.3d 707 (Mo. App. W.D. 2009) .................................................................. 8, 9

*Roes, 1-2 v. SFBSC Management, LLC*,
    944 F.3d 1035 (9th Cir. 2019) ......................................................................... 3, 4, 5, 6

*Schoenlein v. Routt Homes, Inc.*,
    260 S.W.3d 852 (Mo. App. E.D. 2008) ........................................................................ 9

*Scott v. Blue Springs Ford Sales, Inc.*,
    215 S.W.3d 145 (Mo. Ct. App. 2006) ........................................................................ 10

*Sharp Farms v. Speaks*,
    917 F.3d 276 (4th Cir. 2019) ........................................................................................ 7

*Smith v. Sprint Communications Co., L.P.*,
    387 F.3d 612 (7th Cir. 2004) ............................................................................... 12, 13

*U.S. Environmental Protection Agency*,
    38 F.4th 34 (9th Cir. 2022) ........................................................................................... 9

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ..................................................................................... 13

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................. 2

**Other Authorities**

Principles of Aggregate Litigation § 3.05 ............................................................................ 13

## **INTRODUCTION**

Ryan Tomlinson and Carol Richardson object on behalf of Missouri purchasers who are members of a certified state class proceeding under favorable state law. Fed. R. Civ. P. 23(e)(5)(A). This settlement exhibits all the *Bluetooth* signs that Gilmore counsel subordinated the class's interests in favor of their own. First, Gilmore counsel seeks almost half the available settlement funds in exchange for a trail of failed, abandoned, or ignored cases. Second, Monsanto actively supports this result despite a financial incentive for objecting to that request. The result is a settlement that provides a nationwide class with one-third of the total damages that are likely available to the Missouri class alone. And it foists this outcome on Missouri purchasers without informing them that they are already members of a certified state case. Under these circumstances, the Court should apply a heightened scrutiny that this settlement cannot survive.

By any measure, this settlement does not provide fair, adequate, or reasonable relief to Missouri class members, who have a wholly inadequate representative in Gilmore plaintiffs. Unlike Gilmore plaintiffs, Missouri purchasers were parties to a successful litigation strategy that could entitle them to full benefit of the bargain damages equal to the purchase price and punitive damages. By contrast, Gilmore plaintiffs filed a claim for which they had no standing to pursue and no realistic opportunity to certify. And for that claim, they purposely pleaded away their most valuable damages theories. So they walked into settlement negotiations with a long series of defeats, facing a likely successful motion to dismiss, after pleading themselves out of the strongest damages theories. Now, they want Missouri purchasers to pay the costs associated with their failed litigation strategy.

**ARGUMENT**

Rule 23(e) authorizes the Court to approve class settlements only when they are "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2). The Court's analysis should be guided by the eight *Churchill* factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the state of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 946 (9th Cir. 2011). But "Rule 23(e)(2) also requires the court to consider the terms of any proposed award of attorney's fees and scrutinize the settlement for evidence of collusion or conflicts of interest before approving the settlement as fair." *Kim v. Allison*, 8 F.4th 1170, 1179 (9th Cir. 2021). This settlement provides inadequate relief to the certified Missouri class of purchasers. That result may be explained by the presence of all the hallmarks of collusion and the lack of an adequate representative for the Missouri class.[1]

**I.      THE *BLUETOOTH* SIGNS OF COLLUSION REQUIRE THE COURT TO REVIEW THIS SETTLEMENT WITH HEIGHTENED SCRUTINY.**

The Court must independently consider the *Bluetooth* signs of collusion before approving a class action settlement. *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 (9th Cir. 2021) ("But we have also held that adequately considering the *Churchill* factors is insufficient if the district court failed to adequately investigate or address the *Bluetooth* factors."). And this class action

---

[1] Objectors Tomlinson and Richardson previously opposed preliminary approval of this settlement due to, *inter alia*, the indicia of collusion and lack of adequate relief for the class, including Missouri purchasers. Tomlinson and Richardson incorporate by reference any and all briefing, argument, facts and exhibits in opposition to preliminary approval as if fully set forth here. *See* Ryan Tomlinson Declaration at ¶ 5; Carol Richardson Declaration at ¶ 5; ECF 106.

settlement displays all the signs of collusion considered in this Circuit. First, because of the illusory nature of the "ceiling," Gilmore counsel receives "a disproportionate distribution of the settlement." *Roes, 1-2 v. SFBSC Management, LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). Second, despite some attorneys' fees reverting to Monsanto, the parties agreed to a "clear-sailing" arrangement. *Id*. Together, these "squadron of red flags billowing in the wind" show that this settlement served only to maximize Gilmore counsel's fees at the expense of the class's compensation. *See Briseño v. Henderson*, 998 F.3d 1014, 1019 (9th Cir. 2021). Each sign is taken in turn.

### A. Gilmore counsel's disproportionate fee is a red flag.

Gilmore counsel is this settlement's clear winner. If their motion for attorneys' fees is granted, they will receive almost as much as the entire class in fees. Indeed, under the settlement, the funds are disbursed as follows: (a) $12.7-14.2 million to class members; (b) $11.25 million in attorneys' fees; (c) $826,962 to the settlement administrator; (d) $210,888.10 in expenses; and (e) $40,000 in incentive awards. ECF 129. In other words, Gilmore counsel stands to receive between 42.4% and 44.9% of the total amount to be paid by Monsanto—almost double the Ninth Circuit's 25% benchmark. And the Ninth Circuit has often cautioned that such a disproportionate fee request should raise a red flag against final approval. *See, e.g.*, *Roes*, 944 F.3d at 1056 (the court has "an obligation to question the disproportionate cash distribution to attorneys' fees[.]").

Yet Gilmore counsel tries to justify its disproportionate fee request on two grounds: (1) the settlement's $45 million ceiling; and (2) their lodestar. Neither supports Gilmore counsel's lopsided fee request.

The $45 million ceiling was always illusory. ECF 106 at 39-40 (explaining that given the claims-made structure without direct notice there was no realistic opportunity of reaching the ceiling). And the Court must guard against the parties' ability to "inflate the perceived settlement

3

value while knowing that [the defendant] is unlikely to pay more than a fraction of that amount." *McKinney-Drobnis*, 16 F.4th at 601; *see also Briseño*, 998 F.3d at 1026 (determining proportionality of the fee request based on the actual claims rate).  Of course, Gilmore counsel should not benefit—at least without explanation—from a settlement feature that solely benefits Gilmore counsel and Monsanto (at the expense of the class).

And the Ninth Circuit already rejected a similar distribution in *Roes*. 944 F.3d at 1056. There, a group of exotic dancers sued for wage and hour violations alleging that they were misclassified as independent contractors.  *Id*. at 1040.  After the defendant moved to compel arbitration, the case settled.  *Id*.  The settlement provided: (a) $2 million in cash relief; (b) injunctive relief valued by plaintiffs at $1 million; and (c) $1 million for a Dance Fee Payment. *Id*. at 1051.  For the $2 million in cash relief, the attorneys were allocated $950,000 and the class was given $864,115.  *Id*.  Said differently, the attorneys were set to receive 47.5% of the amount to be paid by defendant (about the same as Gilmore counsel's request here).  This settlement, however, may be even worse than that rejected in *Roes*.  In *Roes*, the $1 million for Dance Fee Payments held at least some additional value for the class.  By contrast, the ceiling here has no continued value to this class.  Like the settlement in *Roes*, then, this distribution raises an urgent red flag.

Gilmore counsel also tries to justify its fees using their time spent on allegedly "related" cases.  That time dwarfs the time they spent on this case.  ECF 122-1.  But it cannot support the fee requested here.  To the contrary, each of those related cases failed, was abandoned, or languished on the docket.  ECF 106 at 40.  So those cases put the class in a *worse* settlement position for a couple of reasons.  *Briseño*, 998 F.3d at 1026 (noting that counsel may "devote tremendous hours but achieve very little for the class.") (cleaned up).  First, a collection of losses,

4

whatever the reason, will cause a mediator to discount the value of a class's claims. Second, the only way Gilmore counsel would hope to capture the many hours spent on an unsuccessful litigation strategy was by settling this case. Thus, Gilmore counsel had strong economic motivations to settle the case for whatever it could. And this settlement effectively compensates—at a premium—Gilmore counsel for its failed litigation strategy.

### B. The settlement's clear sailing provision combined with the reversionary clause is a red flag.

Despite a financial incentive to the contrary, Monsanto agreed not to object to Gilmore counsel's fee award up to $11.25 million. *See In re Bluetooth*, 654 F.3d at 948 ("very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class."). Indeed, if the Court ultimately reduces attorneys' fees, as it should here, under the settlement agreement some portion would be returned to Monsanto.[2] And so, unless the settlement is not approved, Monsanto will reap the first benefits of any reduction in attorneys' fees. *See Briseño*, 998 F.3d at 1027 ("If ConAgra is content to pay nearly $7 million to class counsel but the court finds the full amount unreasonable, there is no plausible reason why the class should not benefit from the spillover of excessive fees."). Still, Monsanto agreed to *support* Gilmore counsel's fee request by cosigning their claim that alleged the string of failed cases created leverage for the settlement. So here, this "warning sign of collusion" shines extra bright and blares extra loud. *Roes*, 944 F.3d at 1051 (cleaned up).

---

[2] Gilmore counsel expects "the cash consideration paid by Monsanto will be between $25,038,156 and $26,537,494" including attorneys' fees and costs. ECF 129 at 34. That amount less the $23 million dollar floor is how much will revert to the defendant. Here, Gilmore counsel calculates the cash consideration paid above the floor by Monsanto at between $2,038,156 and $3,537,494. This is because the total claims is sufficient when added up with attorneys' fees and costs to breach the settlement floor.

Even more, this settlement's floor/ceiling arrangement is simply a reversion by another name. That is, every dollar in claims below $45 million but more than $23 million returns to Monsanto. *Roes*, 944 F.3d at 1058 ("just because some of the settlement funds are not reversionary does not explain why [half] of the potential cash funds should be[.]"). But a settlement generally should not include a reversion *unless* it provides "articulable benefits to the class." *Roes*, 944 F.3d at 1059. And Gilmore counsel cannot articulate any benefits to the class from including this reversionary clause. *Cf. In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) ("The incentives for class members to participate in the settlement, the complementary inducement for Volkswagen to encourage them to participate, the value of the claims, and the actual trend in class member participation all indicate that the reversion clause did not, in design or *in effect*, allow VW to recoup a large fraction of the funding pool.") (emphasis added).

Rather, the reversion was likely included for the same "perverse" reason that such clauses are generally disfavored. *Roes*, 944 F.3d at 1059. To that point, both defendants and class counsel can benefit from a reversion "by (1) reducing the actual amount defendants are on the hook for, especially if the individual claims are relatively low-value; and (2) giving counsel an inflated common fund value against which to base a fee motion." *Id*. at 1059 (cleaned up). And here, Monsanto escapes future liability for its payment of little more than the floor amount. Meanwhile, Gilmore counsel gets to use the ceiling amount for its exorbitant fee request. Simply put, Gilmore counsel and Monsanto are the only beneficiaries of this reversionary clause.

C. **The parties' use of a mediator cannot remove the stains of collusion.**

The settlement negotiations spotlight, rather than cure, the signs of collusion. The parties purposely excluded the strongest plaintiffs from settlement negotiations, a decision made more baffling by the inclusion of every other potential plaintiff's counsel—even those with cases against

6

only retailers. Nor do the parties claim that the mediator had all the necessary information to evaluate the Missouri class's claims. ECF 129 at 21 ("Gilmore and Monsanto each separately prepared lengthy mediation statements, including hundreds of pages of exhibits, setting forth their respective views of the strengths and weaknesses *of their cases* on the merits, the likelihood of class certification, and estimates of damages should Plaintiffs succeed.") (emphasis added). But a mediator is only as useful as the information they are given. *Sharp Farms v. Speaks*, 917 F.3d 276, 291 (4th Cir. 2019) ("the district court's analysis erroneously assumes that the mediator had all the relevant information on the collusion allegations at the time he presided over and facilitated the mediation in May 2017."); *see id*. at 292 ("the record reveals little about the extent to which the mediator understood and evaluated the *Fisher-Lewis* class members' concerns about collusion."). And the mediator here would have only seen a landscape of weak cases brought by Gilmore counsel. There is no evidence presented to this Court that the parties explicitly conveyed to the mediator any or all of the important and relevant information about the Missouri *Tomlinson* case, its existence, its likelihood of certification, its counsel, or its claims and damages. It is no surprise then that a mediator would assign (or accept) a low value settlement when presented with an incomplete background. Accordingly, the Court should not "abdicate its independent duty to see whether these actually excessive attorneys' fees evidenced collusion in the settlement." *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (quotations and citations omitted).

## II. THIS SETTLEMENT PROVIDES INADEQUATE RELIEF TO MISSOURI CLASS MEMBERS.

The certified class of Missouri purchasers receives inadequate relief under this settlement. Unlike the nationwide class, Missouri customers do not face the same litigation risks Gilmore uses to justify a settlement that provides customers with just 1.7% of their collective damages. For example, they do not face the same risks related to: (1) prior failed litigation; (2) proof of causation;

7

(3) damages; or (4) class certification. *See* Rule 23(e)(2)(C). Nor could the risk of preemption command the substantial discount on damages negotiated by Gilmore. Just the opposite. And because the Missouri class members' claims are more valuable than the rest of the class, they are entitled to their own subclass at a minimum. *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 253 (2d Cir. 2011) ("The Supreme Court counseled in *Ortiz* that subclasses may be necessary when categories of claims have different settlement values. The rationale is simple: how can the value of any subgroup of claims be properly assessed without independent counsel pressing its most compelling case?").

    A.    **Missouri class members face few risks on the merits.**

To begin, Missouri class members do not confront the same liability risks as the rest of the class. The MMPA is among the most consumer protective statutes in the country. To prove liability, a consumer need not show either proof of reliance, *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 774 (Mo. 2007), or that the unlawful practice caused a consumer to make the purchase, *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 714 (Mo. App. W.D. 2009). It also does not have a safe harbor. Of course, Monsanto—a company headquartered in Missouri—was familiar with these features. And unlike any of Gilmore counsel's cases against Monsanto, the company never even bothered trying to dismiss any of Tomlinson's claims or damages. Gilmore, on the other hand, had no reasonable chance of prevailing on his Delaware claims. He neither resided in Delaware nor made his purchase in Delaware. And so, he lacked standing to pursue his Delaware claim. That alone proves the Missouri class—with viable claims prosecuted by proper class representatives—was in a significantly better position than the rest of this class.

Indeed, Gilmore counsel's collection of dismissed cases underscores the superiority of the Missouri class's claims. For example, *Ezcurra* was dismissed based on Florida's safe harbor for acts "required or specifically permitted by federal or state law." ECF 106 at 52. But Missouri law

does not offer Monsanto a similar safe harbor. Likewise, Gilmore counsel's dismissed cases against retailers reveal nothing about the value of the Missouri class's claims against Monsanto. Because a plaintiff must show that the retailer participated in the wrongful conduct, it is significantly harder to prove liability against a retailer. Gilmore's reliance on *Weeks*—which was "premised on Home Depot's alleged unfair conduct in selling Roundup without informing consumers of the formulation's potential carcinogenicity"—thus provides no evidence relevant to the Missouri class's claims. ECF 129 at 37.

The Missouri class also does not face significant causation risks. Gilmore highlights the recent defeats of personal injury plaintiffs at trial against Monsanto. Those cases, however, do not indicate any weakness for the MMPA claim. Unlike personal injury plaintiffs, the Missouri class's claims do not turn on proof of specific causation. That is, they need not prove that Roundup caused any class member's cancer. Instead, Tomlinson must only show that Monsanto should have disclosed the potential risk of cancer. ECF 106 at 50. Accordingly, a single jury determination that Roundup caused a plaintiff's cancer helps prove that Monsanto should have disclosed the risk. And, as this Court is aware, multiple juries have already found that Roundup, in fact, causes cancer.

Still more, Monsanto's ability to rely on the EPA's findings about Roundup has withered in recent months. The Ninth Circuit recently vacated the EPA's determination that glyphosate "is not likely to be carcinogenic to humans" and told the Agency to return to the drawing board. *Natural Res. Def. Council v. U.S. Environmental Protection Agency*, 38 F.4th 34 (9th Cir. 2022). Accordingly, another one of Monsanto's allegedly main defenses is on shaky ground at best.

### B. Missouri law entitles Missouri purchasers to greater damages.

Under the MMPA, a plaintiff can establish injury and damages by "compar[ing] the actual value of the item to the value of the item if it had been as represented at the time of the transaction." *Plubell*, 289 S.W.3d at 715 (citing *Schoenlein v. Routt Homes, Inc.*, 260 S.W.3d 852, 854 (Mo.

9

App. E.D. 2008)); *see also Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 313 (Mo. App. E.D. 2016) (same). Gilmore suggests that such benefit-of-the-bargain damages can never equal zero.[3] That may be true under Delaware law, but it is not true under Missouri law. *See Kerr v. Vatterott Educ. Ctrs. Inc.*, 439 S.W.3d 802 (Mo. Ct. App. 2014) ("Ms. Kerr's request for damages stated that the value of the education was zero; the evidence favorable to her showed that the value of the program was zero."). Even when the customer uses the product and their own expert testifies about its value, a jury can still find that the product is valueless.[4] *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 182 (Mo. Ct. App. 2006) ("As to the actual value of the Explorer at the time of purchase, Scott testified that it had no value. He based his valuation on the fact he could not reasonably expect to sell it, due to its unsafe condition, resulting from the defective repairs of the damage to the Explorer from being wrecked. As the owner of the Explorer, Scott was qualified to give an estimate of its fair market value . . ."). And here, both Tomlinson and Richardson say that Roundup had no value for them. Thus, Missouri law likely entitles the Missouri class to significantly greater damages than that calculated by either Dr. Sharp (31%) or Monsanto's expert (1.5%).

---

[3] Monsanto's expert calculated that customers overpaid by 1.5%. In other words, Monsanto was able to settle this case for almost exactly what its *own* expert calculated for its outstanding liability.
[4] *See also Liberty Financial Mgmt. Corp. v. Beneficial Data Processing Corp.*, 670 S.W.2d 40, 57 (Mo. App. 1984) ("It points out such evidence as Liberty's continued use of the Bencom system for the entire six month period and Liberty's account verification which revealed that 99.61% of the accounts were correct and that 99.97% of the information on the accounts was correct. Liberty's president, however, testified that Bencom's reports were essentially worthless. Moreover, the account verification did not occur until January, 1977, more than six months after the conversion. The issue is one upon which the evidence could be marshalled to support either Bencom's or Liberty's position. The issue is thus for the jury and not this court. Therefore, Liberty may seek a complete refund of all sums paid to Bencom during the first six months after the conversion, and the measure of its success, if any, will be governed by the jury's determination of whether Bencom performed, in whole or in part, or not at all.").

What's more, under these circumstances, the MMPA creates a reasonable expectation of punitive damages. To date, several juries have found Monsanto liable of reprehensible conduct and punitive damages. And this Court noted that the evidence "easily supports a conclusion that Monsanto was more concerned with tamping down safety inquiries and manipulating public opinion than it was with ensuring that its product is safe." *In re Roundup Prods. Liab. Litig.*, 3:16-md-02741-VC, ECF 4576 at 5 (Pretrial Order) (cleaned up).

### C. The Missouri class does not have uncertainty related to class certification.

The Missouri purchasers are already members of a certified class (which has survived attempts at appellate review through the Missouri Supreme Court). True, certification happened just after Gilmore secretly first settled this case. But because the MMPA does not require reliance and given the clarity of Missouri law on the issue, class certification was all but guaranteed. The Missouri class had a trial scheduled for October 2022 on their claims, and no Missouri purchaser signed on to the settlement, which was not presented for preliminary approval until after the Missouri class was certified. And even after the settlement was presented for preliminary approval, Monsanto sought and failed to get appellate review of the Missouri court's order granting certification. A trial in Missouri would be prosecuted by counsel that have a record of successfully prosecuting such class actions to large trial verdicts and settlements including against Monsanto's parent Bayer. ECF 106 at 30. Accordingly, the Missouri class does not face any reasonable class certification risks.

### D. A de minimis risk of preemption does not justify a steep discount for the class of Missouri purchasers.

Monsanto no longer has "any colorable defenses available to it (such as preemption) that may wholly absolve it of liability." Although Monsanto's preemption defense was always unlikely to succeed, ECF 106 at 54, two recent court actions prove that it no longer creates a reasonable

11

litigation risk. First, the Supreme Court denied certiorari on the preemption issue after asking for the views of the Solicitor General. *Monsanto Company v. Hardeman*, 21-241, Petition for certiorari denied (June 6, 2022). Second, the Eleventh Circuit reversed the only district court decision that accepted Monsanto's preemption defense. *Carson v. Monsanto Co.*, 51 F.4th 1358, 1364 (11th Cir. 2022). In other words, appellate courts have started to reach the same consensus as district courts that FIFRA does not preempt claims for damages under state law. *Id.*; *Hardeman v. Monsanto Co.*, 997 F.3d 941, 956 (9th Cir. 2021); *see also Beyond Pesticides v. Monsanto Co.*, 311 F.Supp.3d 82, 92 (D.D.C. 2018) (quoting *Blitz v. Monsanto Co.*, 317 F.Supp.3d 1042, 1050 (W.D. Wis. 2018) (collecting cases)). The only cases that Gilmore can muster are on injunctive relief and inapplicable here. ECF 129 at 38.

E.    **The Missouri class's superior claims require the Court to deny final approval.**

The Court must assess the Missouri purchasers' advantageous position relative to other class members. *Kim*, 8 F.4th at 1179 (reversing after the district court failed to appropriately consider a separate class's success in state court); *see also* Fed. Civ. R. Pro. 23(e)(2)(D). Here, that requires denying final approval.

*Smith* is instructive. There, the district court had approved a nationwide settlement class "of landowners whose property is subject to railroad rights of way, along which defendant telecommunications companies [] installed fiber-optic cables without the landowners' permission." *Smith v. Sprint Communications Co., L.P.*, 387 F.3d 612, 613 (7th Cir. 2004). The Seventh Circuit reversed, holding that the district court failed to adequately consider two certified litigation classes for Tennessee and Kansas landowners. *Id*. The court noted that the nationwide class had not and could not be certified for trial. *Id*. So too here. As Gilmore acknowledges, "the Ninth Circuit has declined to certify nationwide classes on the ground that choice-of-law principles require the court to apply the law of the state where each class member's purchases were made."

ECF 129 at 40. But that is not the end of similarities. Tennessee law likely entitled the landowner to more compensation than was available to the nationwide class and it potentially entitled them to punitive damages. *Id*. Here, Missouri law creates a similar opportunity for greater compensation (benefit of the bargain damages equal to the purchase price), attorneys' fees, and punitive damages—neither of which was even sought by Gilmore counsel.

Yet this settlement is likely worse than *Smith*. That settlement at least "provided that adjustments [would] be made to the amount of recovery available to landowners in a given state, based on an analysis of that state's law by independent property-law experts." *Id*. Not so here. Accordingly, like the intervenors in *Smith*, the certified Missouri class did not receive adequate representation for this settlement.

**F.  The Court can deny the settlement without requiring new notice for the nationwide class later.**

If the Court ultimately approves a new settlement for the rest of the nationwide class (excluding Missouri class members), and that settlement benefits the class members to at least the same extent as the prior settlement, no new notice to the class would even likely be required. *See, e.g., Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 641 (5th Cir. 2012) (affirming district court's conclusion that a change to the allocation plan would not require additional class notice); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 800 F. Supp. 2d 328, 334 n.8 (D. Me. 2011) ("Principles of Aggregate Litigation suggest new notice to 'class members who may be substantially adversely affected by a change' that modifies the terms 'in any material way,' but not where the new terms result in 'benefits not substantially less than those proposed in the original settlement.'") (citing Principles of Aggregate Litigation § 3.05(e) and (f) and cmt. e.); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D. Minn. 1997) (rejecting due

process objection to notice because the "less than one percent" reduction in the overall settlement fund was "de minimis").

## III.     GILMORE IS AN INADEQUATE REPRESENTATIVE.

Gilmore cannot and could not adequately represent the interests of Missouri purchasers for two main reasons.  First, despite pleading full refund damages and punitive damages in Oregon, he did not plead them here.  His remedy-related about-face is not only cause for concern about the fairness of this settlement but bears directly on the adequacy of representation.  He purposely placed himself in a demonstrably weaker position that put him at odds with the Missouri class members' interests.  Second, he had no leverage to prosecute his own Delaware claims—let alone advance the interests of the Missouri class members' claims.  He had not purchased Roundup in Delaware and thus lacked standing to sue for DCFA violations.  As a result, he was staring down the barrel of an almost certainly successful motion to dismiss.  Under those circumstances, Gilmore (and the other named plaintiffs) could not "fairly and adequately protect the interests of the class." Fed. R. Civ. P.  23(a)(4).  Their interests diverged from the Missouri class's interests because they could only collect their sizable incentive awards if they agreed to a quick settlement.  *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983) ("We agree that 'where representative plaintiffs obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as to the fairness of the settlement to the class.'") (citation omitted); *Karvaly v. eBay, Inc.*, 245 F.R.D.  71, 89 (E.D.N.Y. 2007) ("Here, the class representatives seek to advance their own interests by sacrificing the rights of the majority of Class Members, who stand to gain nothing of substantial value from the proposed settlement."). Therefore, none of the named representatives could serve as adequate representatives for any class, let alone the certified Missouri class.

## **CONCLUSION**

For the reasons given above, the Court should deny final approval for this settlement.

Dated: December 5, 2022

Respectfully submitted and authorized for filing by Missouri Plaintiffs and Objectors Ryan Tomlinson and Carol Richardson,

**STUEVE SIEGEL HANSON LLP**

/s/ *Patrick J. Stueve*
Patrick J. Stueve, Mo. Bar #37682
Todd E. Hilton, Mo. Bar #51388
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
stueve@stuevesiegel.com
hilton@stuevesiegel.com


**GRAY, RITTER & GRAHAM, P.C.**

Don M. Downing, #30405 MO
Gretchen Garrison, #33963 MO
Cort A. VanOstran, #67276 MO
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone: (314) 241-5620
Facsimile: (314) 241-4140
ddowning@grgpc.com
ggarrison@grgpc.com
cvanostran@grgpc.com

*Attorneys for Missouri Plaintiffs and Objectors Ryan Tomlinson and Carol Richardson*