JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4030
Fax: (202) 847-4005

*Attorneys for Defendant* (*additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT GILMORE, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> MONSANTO COMPANY, <br><br> Defendant. | MDL No. 2741 <br><br> Case No. 3:21-cv-08159 <br><br> **RESPONSE TO *TOMLINSON* PLAINTIFFS' OBJECTION AND REPLY IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF CLASS FOR PURPOSES OF SETTLEMENT** <br><br> Date: Jan. 12, 2023 <br> Time: 2:30 p.m. <br> Place: Via Zoom Webinar <br> Judge: Hon. Vince G. Chhabria |

After a notice program generating *hundreds of millions* of impressions via diverse media, *Tomlinson* plaintiffs ("Objectors") are the *sole* objectors. But as Yogi Berra would put it, their objection is little more than "déjà vu all over again."[1] Objectors reprise the same meritless arguments raised previously in their opposition to preliminary approval. Their latest objection is little more than a continuation of their effort to preserve their claim for attorney's fees in Missouri—an effort they have undertaken continually since the Settlement was reached.[2] As this Court has already found twice, Objectors' allegations of collusion lack support in the record. The Parties negotiated the Settlement at arm's length, after years of litigation, before a neutral and respected mediator. This Court should, again, reject Objectors' attempt to infer nefarious intent from terms that the Parties have been open and transparent about from the beginning.

Objectors' argument that the Settlement does not fairly compensate Class Members from Missouri is also little more than a bad rerun. Their assertions that their counsel are better lawyers who pursued a better litigation strategy are no more merited now than before. Likewise, their arguments that Missouri law is uniquely favorable is simply wrong as a matter of law —their own authority belies their assertion that Missouri has some special allowance for "full-refund" damages. Likewise, their suggestion that the Class faces no meaningful litigation risk is unfounded.

Finally, Objectors' claim that the named plaintiffs were duty-bound to seek full-refund or punitive damages, another repeat from prior briefing, also lacks legal support. And their assertion that Gilmore faced some special risk because he pleaded under Delaware law ignores the fact that he could have simply repleaded under Oregon law if necessary.

---

[1] Monsanto's prior briefing on preliminary approval and Objectors' arguments and supporting declarations and evidence, at Dkt. Nos. 98 and 109, are incorporated by reference.

[2] After the Settlement was reached, Objectors' counsel almost immediately launched accusations of collusion and threats to delay proceedings with discovery requests and appeals, even as they quietly offered to withdraw any objection if Missouri was carved out of the Settlement and their claim for fees preserved. Dkt. No. 98-1 ¶¶ 3-8.

This is a fair and reasonable Settlement. Claimants, including thousands from Missouri, will recover at least two-thirds of their *best-case* recovery at trial. No one else has objected. And Objectors' unique motivations do not align with either the Settlement Class as a whole or Class Members residing in Missouri. The Court should approve the Settlement.

## ARGUMENT

### I. OBJECTORS' ASSERTIONS OF COLLUSION ARE UNFOUNDED AND HAVE ALREADY BEEN REJECTED BY THIS COURT

Objectors assert that there are two supposed "red flags" of collusion: (i) Class Counsel stand to receive a "disproportionate" fee award; (ii) the Settlement includes a "clear-sailing" provision. Obj. 3. Neither is a meritorious objection, and both were already briefed and rejected at preliminary approval. Dkt. Nos. 94 at 33-35, 106 at 27-31, 108 at 24-32, 109 at 14-18, 110 at 7-9, 121 ("PA Order") ¶ 3.

*First*, Objectors' argument that the size of the potential fee award suggests "collusion" is baseless. Class Counsel's requested fee is 25 percent of the ceiling amount available for Class Members to claim, the *benchmark* for attorney's fees in this circuit. *Ramirez v. Benihana Nat'l Corp.*, 2019 WL 131843, at *2 (N.D. Cal. Jan. 8, 2019) (25 percent of fees is the benchmark); *Theodore Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972505, at *16 (N.D. Cal. Feb. 5, 2020) (fees should be "based on the total benefits being made available to class members" rather than the amount claimed) (collecting cases).[3] Objectors' reliance on *Roes v. SFBSC Management, LLC*, 944 F.3d 1035, 1055-56 (9th Cir. 2019) is likewise misplaced. The issue in *Roes* was that the court had not properly interrogated the valuation of an injunctive relief provision used to value attorney's fees. *Id.* ("[C]ourts must be particularly careful when ascribing value to injunctive relief …."). That is not an issue here, as the Settlement Consideration is all cash. Objectors seek to analogize by arguing that the Ceiling amount was "always illusory." Obj. 3. But as both Monsanto and Plaintiffs have already shown, the Ceiling could have been exhausted at the upper end of a

---

[3] Whether to award Class Counsel's requested fee is soundly in the Court's discretion and does not affect the rest of the Settlement. Settlement § F(1). This would not warrant denying approval even if it were disproportionate—this Court can cut the fee award without denying settlement approval.

reasonable claims rate. Dkt. No. 108 at 26-27 & n.27, 109 at 16. The Settlement's Ceiling would have been exhausted, in fact, at claims rates that are within the range that *Objectors' own counsel* have argued is reasonable and expected in consumer class actions. Dkt. No. 48-1 Ex. E at 8-9. Far from being "illusory," the Ceiling was a hard-fought protection for Monsanto in the event of less likely, but not unreasonably high, claims rates.[4]

*Second*, the Settlement does not have the type of "clear-sailing" agreement in which the defendant agrees to fees "separate from the class settlement fund." *Briseno v. Henderson*, 998 F.3d 1014, 1027 (9th Cir. 2021); Dkt. Nos. 109 at 21-22, 108 at 30-32. If Class Counsel's fee request is granted, it will be based on the size of the fund available for claims, which courts have found *aligns* Class Counsel's interests with the Class. *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1123-34 (C.D. Cal. 2008) (collecting cases). And, in any event, Monsanto has not agreed to pay any fees except those awarded by this Court in its discretion. Settlement § F(1). Again, if the Court feels that the fees sought are excessive, it can cut them.

*Finally*, Objectors' assertion that the floor/ceiling structure is "reversionary" is no more meritorious this time than it was when Objectors raised it before. As Monsanto previously explained, every dollar not awarded in fees was available for Class Members to seek in claims, and there were several realistic claims-rate scenarios in which a cut in fees would *increase* the amount paid to Class Members. Dkt. No. 109 at 16-17. That other claims-rates scenarios could lead to a reduction in total compensation if attorney's fees were reduced is an inherent feature of the floor/ceiling structure, which this Court and others have held is reasonable. PA Order ¶ 4 ("[T]he floor/ceiling settlement structure is reasonable."); *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022867, at *3, *12-13 (N.D. Cal. Mar. 17, 2021), *rev'd on other grounds*, 50 F.4th 769, 779-80 (9th Cir. 2022); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 2011 WL 31266, at *2 (N.D. Cal. Jan. 5, 2011). And even with the current claims rate, the payments to Class

---

[4] Objector also challenges Class Counsel's inclusion of fees spent on related cases. Obj. 4-5. But that is no basis to deny final approval. If the Court finds that such fees are not appropriately included in the lodestar analysis, then it can simply not include them.

3

Members will *increase* if the Court grants a fee award that takes the total consideration under the floor amount.

Even if Objectors' claim of a "reversion" were accurate (and it is not), their own authority holds that a reversion can "have perfectly benign purposes and impacts, and so are not per se forbidden." *In re Volkswagen 'Clean Diesel' Mktg., Sales Pracs. & Prods. Liab. Litig.*, 895 F.3d 597, 612 (9th Cir. 2018). Here, as previously explained, the floor/ceiling structure promoted the best interests of the class by ensuring a significant Settlement Fund even if the claims rate had been very low. *See* Dkt. Nos. 109 at 16-17. Nor is there any indication that a "perverse incentive" led to a "subpar notice process, a more tedious claims process, or restrictive claim eligibility conditions." *See Roes*, 944 F.3d at 1059. To the contrary, the Claims Administrator engaged in a robust notice process, with an easy-to-complete online claim form that did not require proof of purchase and was time-limited only by the statute of limitations, *see* Dkt. No. 129-2, as this Court approved at the preliminary-approval stage.

## II. OBJECTORS' CLAIM THAT MISSOURI CLAIMS STAND IN A DIFFERENT LIGHT IS WITHOUT FACTUAL OR LEGAL MERIT

The majority of Objectors' brief is dedicated to arguing that Class Members from Missouri are treated unfairly because their claims should be considered as standing in a separate light than those of Class Members from other states—again, a repeat of their arguments from the preliminary approval stage. *See* Dkt. No. 106 at 46. These arguments are no better supported this time and should be viewed for what they are—counsel's attempt to salvage the remainder of its case and its fees.[5]

---

[5] As Monsanto has previously explained, Objectors' counsel repeatedly offered to withdraw any objection if Monsanto would carve out Missouri and preserve their ability to claim fees. Dkt. No. 98 at 5–6. Without the Missouri Lawn & Garden purchasers, Objectors' provisionally certified class is left with business purchasers that cannot demonstrate that they purchased the products "'primarily for personal, family, or household purposes,' even if it is the purchaser himself using the product." *See* Dkt. No. 98-8.

### A. Objectors Faced Significant Litigation Risks in Missouri.

Objectors begin with the claim that they faced "few risks" in the *Tomlinson* litigation. But as Monsanto has already previously explained, Objectors' convenient, rosy assessment of their chances in Missouri is not well-founded. Dkt. Nos. 98 at 3-4, 109 at 7-9. Despite their professed confidence that they could have obtained "full-refund" damages, they sought "benefit of the bargain" damages measured by the difference between the "as is" value of the products versus their "as represented" value—the same measure of damages that Plaintiffs pursued. *See* Dkt. No. 109 at 7-8.

Objectors also faced unique risks because of their strategy to pursue claims based on professional-grade products, obtaining certification only by promising the Court that they would obtain "self-identification affidavits" from Class Members identifying the "purpose" of their purchases—a task that would likely have proved impossible, and that was not required by this Settlement. *See* Dkt. No. 98 at 3-4; Dkt. No. 98-8 at 7. More broadly, despite touting their supposed "aggressive" pursuit of their case at preliminary approval, they had not taken or even noticed any depositions, so their proclamation that they faced no litigation risk is ill-informed. *See* Dkt. Nos. 109 at 7-9 (describing litigation history of *Tomlinson*), 109-1 (supporting declaration).

Objectors' claim that they faced no "causation" risk (Obj. 9) is especially remarkable. The last *six* Roundup® personal injury cases to go to trial have all have led to defense verdicts (including three trials in Missouri, which were the first cases in Missouri to reach a verdict). *See* Dkt. No. 129 at 24 n.30. Objectors' argument that these verdicts are irrelevant because they need not prove that the products gave *them* cancer is baseless—they would still have to prove that the products cause cancer. That Objectors are in good health would likely *hurt* their chances, as they would be less sympathetic to a jury. And Objectors' note that other juries have found in favor of personal-injury plaintiffs is a *non sequitur*—the point is not that Monsanto was certain to prevail, but that there is meaningful litigation risk.[6]

---

[6] Objectors also argue that Monsanto's ability to rely on EPA's review of glyphosate, and conclusion that it is not carcinogenic, has "withered" because of the Ninth Circuit's decision

5

Objectors' assertion that there is no "reasonable risk" of preemption because of post-Settlement developments (Obj. 11-12) is also overstated. It is true, of course, that the Supreme Court denied certiorari in *Hardeman*, but the preemption issue is currently before the Eleventh and Third Circuits, and a petition for certiorari in that case is likely to follow. In any event, as the Parties previously explained at the Court's urging, the Settlement accounted for both Parties' assessment of the risk of preemption considering the unsettled nature of the law. Dkt. Nos. 115 at 1 ("Monsanto will support approval of this Settlement regardless of the Supreme Court's grant or denial of the petition for certiorari in *Hardeman* …."), 116 at 1 ("In short, the Parties are bound by the terms of the Settlement Agreement regardless of the outcome in *Hardeman*.").

**B. Missouri Has No Special Provision For Full-Refund Damages.**

Objectors assert that "Missouri law entitles Missouri purchasers to greater damages," including damages amounting to the full purchase price of the product. Obj. 9-10. That is simply wrong. As Monsanto explained at the preliminary-approval stage, and as Objectors' own authority shows, the measure of damages under Missouri law is no different than under Delaware law. *See* Dkt. No. 109 at 19-20; *compare* Dkt. No. 106 at 37 n.44 (measure of damages under Delaware law is the "difference between the actual and the represented values of the object of the transaction" (quoting *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1076 (Del. 1983)) *with* Obj. 9 (measure of damages under Missouri law is the difference between the "actual value of the item" and "the value of the item if it has been as represented") (quoting *Plubell v. Merck & Co.*, 289 S.W.3d 707 714 (Mo. App. W.D. 2009)). This same measure of damages is what Monsanto's expert examined, finding *no* statistically significant price difference associated with the alleged failure to warn. *See* Dkt. Nos. 94-3 Ex. A (Shampanier Decl.) ¶ 11 ("I determined there was no *statistically significant*

---

vacating the 2020 Interim Registration Review for glyphosate. Obj. 9 (citing *Nat. Res. Def. Council v. U.S. Environmental Prot. Agency*, 38 F.4th 34 (9th Cir. 2022)). But putting aside that that decision came after the Parties executed the Settlement, Objectors overplay their hand. The Interim Registration Review was withdrawn, but EPA's approval of the products was not, nor were its consistent scientific findings over a period of decades that glyphosate is not carcinogenic to humans.

6

price difference ….") (emphasis in original), 129 at 27-28 (detailing Parties' disputes about damages). And a court *in Missouri* found, in another alleged false labeling case related to consumer Roundup® products, that "class members' recovery was *never* going to be 100% of the purchase price." *Jones v. Monsanto Co.*, 2021 WL 2426126, at \*6 (W.D. Mo. May 13, 2021), *aff'd* 38 F.4th 693 (8th Cir. 2022). Missouri class members thus face the same risk as the rest of the Settlement Class that they would "not be able to demonstrate that they are entitled to any damages." PA Order ¶ 5.

"Full refund" simply is *not* an appropriate measure of damages under Missouri law. *Craft v. Phillip Morris Cos.*, 2003 WL 23139381, at \*3-4 (Mo. Cir. Ct. Dec. 31, 2003). And despite claiming that they could theoretically assert that the products were "valueless" so that the "benefit of the bargain" damages would be equal to the purchase price of the product, Objectors have no *evidence* that the Products are in fact valueless. All they offer is their own self-serving assertions that the Products "had no value for them" (Obj. 10), which is neither the relevant question—the issue is the "actual value" of the item, not its subjective worth to the individual—nor a viable method of proving classwide damages on behalf of Missourians. The "best case" evidence on this record for plaintiffs is *Plaintiffs'* damages analysis, and Objectors do not and cannot contest that a Settlement paying two-thirds of the damages under that analysis is unfair to Class Members, from Missouri or otherwise.

Objectors' claim that the Settlement is unfair because it does not account for punitive damages (Obj. 11) also conflicts with Ninth Circuit law. Even if there was a meaningful chance of a punitive damages award in a consumer case in which (a) there is no claim of physical injury and (b) the alleged false statements were repeatedly approved by federal regulators (and there is not), courts have repeatedly rejected the notion that punitive damages must be part of a nationwide settlement. *E.g.*, *Zepeda v. Paypal, Inc.*, 2017 WL 1113293, at \*12 (N.D. Cal. Mar. 24, 2017) (collecting cases); *Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at \*8 n.16 (N.D. Cal. Aug. 28, 2013) ("Given that any award of punitive damages is inherently speculative and discretionary courts regularly approve settlement that offer no or little compensation representing the risk of a

punitive damages award." (quoting *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 155 (E.D. La. Jan. 11, 2013)); *see also* Dkt. Nos. 108 at 6, 109 at 23, 129 at 31-32 & n.36. Moreover, as Objectors' own counsel have argued when the shoe was on the other foot, "the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable, or inadequate." Dkt. Nos. 98-4 (quoting *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 708 (E.D. Mo. 2002)); 98-7 at 18 (argument that settlement that included class members residing in "state with potential statutory penalty claims" not asserted in the settled action was baseless and did not create a conflict warranting denial of settlement approval).

Finally, even if there were some relevant nuance in Missouri's law (and there is not), it would not counsel against approval of this nationwide Settlement. Courts regulatory approve nationwide class settlements, in the consumer-protection context and otherwise. *See, e.g.*, *Yamagata v. Reckitt Benckiser LLC*, 2021 WL 5909206, at *1 (N.D. Cal. Oct. 28, 2021) (Chhabria, J.). And while it is true, as Objector notes, that the Ninth Circuit had declined to certify nationwide consumer-protection classes for *litigation* based on choice-of-law principles (Obj. 12), the Ninth Circuit has explained that this concern does not apply in the settlement context. Dkt. No. 109 at 24 n.30 (collecting cases); *Jabarri v. Farmer*, 965 F.3d 1001, 1005-06 (9th Cir. 2020) ("Settlement may obviate the need to litigate individualized issues that would make a trial unmanageable, making common questions more important in the relative analysis."). Again, Objectors' own counsel, when they have reached nationwide settlements in consumer cases, have argued that such settlements are proper and that arguments like those they advance here are baseless. Dkt. No. 98-4 ("Variations from state-to-state in the form of state law claims would always prevent nationwide settlement, thereby defeating the efficiencies of the class action settlement mechanism.") (quoting

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2004 WL 3671053, at * 15 (W.D. Mo. Apr. 20, 2004)).

### C. Objectors' Suggestion that the Court Could Strip Missouri From the Settlement is Wrong—and they Lack Standing to Even Suggest As Much.

Objectors briefly argue that this Court could approve the Settlement as to all states except Missouri without requiring renewed notice. Obj. 13-14. But no such proposed settlement is before this Court. The Parties have agreed to a *nationwide settlement*, not a settlement of all states except Missouri. Additionally, as shown above, there is no reasonable basis to sever Missouri from the Class, as the relevant law in Missouri is not meaningfully different.

Additionally, Objectors and their counsel lack standing to seek to exclude all Missouri Class Members from the Settlement. Objectors' counsel were provisionally certified class counsel for the *Tomlinson state court* matter, but they are not counsel for Missouri Class Members in this litigation—here, they represent two Missouri purchasers, not the Class. Moreover, the right to participate or opt out of a settlement "is an individual one and should not be made by the class representative or the class counsel." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); 3 Newberg & Rubenstein on Class Actions § 9:49 ("The right to opt out in a Rule 23(b)(3) class action is considered an *individual* right.") (emphasis in original).

The Notice Plan this Court approved provided Missouri Class Members, like all Class Members, with extensive notice of this Settlement. Yet *none*—not even Objectors themselves—opted out of the Settlement, and thousands filed claims worth hundreds of thousands of dollars. Objectors cannot exclude those Class Members from the Settlement to further their own quest for fees.

### III.     OBJECTORS' RECYCLED ADEQUACY ARGUMENTS FAIL

Just as they did at the preliminary approval stage, Objectors close their brief by recycling their fairness arguments as adequacy arguments. *Compare* Dkt. 106 at 47-50 *with* Obj. 14. But these arguments are no more persuasive this time around.

9

*First*, even if Monsanto had successfully argued that Gilmore lacked standing to pursue his case under the Delaware law (which Gilmore contested), he could have simply repleaded under Oregon law. *See* Dkt. No. 108 at 33. Moreover, Plaintiffs' counsel has explained that the decision to proceed in Delaware was a strategic one, aimed at allowing the pursuit of a nationwide class. Dkt. No. 129 at 6 n.11. Pursuing such a strategy is not evidence of inadequacy. *Second*, as Objectors well know, full-refund damages are not an appropriate measure under either Delaware *or* Missouri law. Dkt. No. 109 at 19-20. And, again, a Settlement need not provide for punitive damages. *Zepeda*, 2017 WL 1113293, at *12. *Finally*, Objectors' suggestion that Gilmore is an inadequate class representative because he is seeking a $5,000 service award (Obj. 14) conflicts with Ninth Circuit precedent. *See Galeener v. Source Refrigeration & HVAC, Inc.*, 2015 WL 12977077, at *2 (N.D. Cal. Aug. 21, 2015) (Chhabria, J.) (awarding class representatives up to $27,000 and collecting cases awarding between $10,000 and $55,000). And in any event, the Settlement is clear that it remains in force even if the Court denies or reduces the class representatives' requested service awards. Settlement § F(1).

## CONCLUSION

Monsanto respectfully requests that the Court reject Objectors' arguments (again) and grant final approval of this fair, reasonable, and adequate Settlement.

Dated: December 12, 2022

By:   /s/ John J. Rosenthal

JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202

10

BRIAN STEKLOFF
Wilkinson Stekloff LLP
bstekloff@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036

RAKESH KILARU
Wilkinson Stekloff LLP
rkilaru@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, DC 20036

*Counsel for Defendant*