# EXHIBIT H

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

PAUL FERRO, *et al.*,     )
        )
   Plaintiffs,     )
        )
v.         )
        )
MONSANTO COMPANY,     )
        )
   Defendant.     )

**FILED**

**NOV 0 9 2022**

Cause No. 20SL-CC03678  **JOAN M. GILMER**
**CIRCUIT CLERK, ST. LOUIS COUNTY**

Division No. 18

## ORDER REGARDING DEFENDANT MONSANTO COMPANY'S
## MOTION FOR DIRECTED VERDICT AT THE CLOSE OF PLAINTIFF'S EVIDENCE

Presently before the Court is Defendant Monsanto Company's ("Monsanto") Motion for

Directed Verdict at the Close of Plaintiff's Evidence ("Motion") filed November 3, 2022.  On

November 5, 2022, counsel for Plaintiff Stacey Moore communicated to the Court that they would

not file a written response in opposition to Monsanto's Motion but would present their oral

arguments to the Court.  On November 7, 2022, the Court conducted a hearing and heard

arguments from the parties on this Motion and other matters after which the Motion was submitted

for ruling.  After careful consideration of the legal brief, exhibits, and oral arguments, the Court

hereby makes the following ruling.

### LEGAL STANDARD

Rule 72.01(a) permits a party to "move for a directed verdict at the close of the evidence

offered by an opponent."  In deciding whether to grant a motion for directed verdict, the Court

must determine "whether the plaintiff[] made a submissible case, and a case may not be submitted

unless each and every fact essential to liability is predicated upon legal and substantial evidence."

*Aughenbaugh v. Williams*, 569 S.W.3d 514, 523 (Mo. App. E.D. 2018).  "Substantial evidence is

that which, if true, has probative force upon the issues, and from which the trier of facts can

1

reasonably decide a case." *Id.* The Court must "view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff[] and disregard all contrary evidence and inferences"; however, the Court will not "not supply missing evidence or give a plaintiff the benefit of unreasonable, speculative, or forced inferences." *Id.* (internal quotation marks omitted). Nevertheless, Missouri caselaw is clear that "[d]irecting a verdict is a drastic measure, and appellate courts have said there is a presumption in favor of reversing the grant of a motion for directed-verdict." *Id.* "If the facts are such that reasonable minds could draw differing conclusions, the issue becomes a question for the jury, and a directed verdict is improper." *Dodson v. Ferrara*, 491 S.W.3d 542, 552 (Mo. banc 2016).

## ANALYSIS

### I.    Evidence of Causation

Monsanto first argues the Court should grant a directed verdict on all of Plaintiff's remaining claims[1] because he did not present substantial evidence that Roundup is generally capable of causing Diffuse Large B-Cell Lymphoma ("DLBCL"), a subtype of non-Hodgkin's lymphoma ("NHL"), and he did not present substantial evidence that Roundup specifically caused his DLBCL.

The Court has previously explained that, generally, the plaintiff in a products liability case "must establish the causal relationship by expert testimony." Order Regarding Monsanto's Motion for Summary Judgment at 9-11 (Oct. 13, 2022) (quoting *Hagen v. Celotex Corp.*, 816 S.W.2d 667,

---

[1] The Court previously dismissed Count IV (violation of the Missouri Merchandising Practices Act), Count V (breach of express warranty), Count VI (breach of implied warranties), Count VII (violation of the consumer fraud acts), and Count VIII (negligent misrepresentation). *See* Order Regarding Monsanto's Motion for Summary Judgment at 2 & 38 (Oct. 13, 2022). Accordingly, Monsanto moves for directed verdict on Count I (failure to warn), Count II (design defect), Count III (negligence), Count IX (punitive damages), and Count X (exemplary damages).

670 (Mo. banc 1991)).  Missouri courts have noted that "expert testimony is not necessarily required to establish product defect or unreasonable danger." *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 14 (Mo. banc 1994).  However, expert testimony is necessary where "the lay jury [does] not possess the experience or knowledge of the subject matter sufficient to enable them to reach an intelligent opinion without help." *Siebern v. Missouri-Illinois Tractor & Equip. Co.*, 711 S.W.2d 935, 939 (Mo. App. E.D. 1986).  *See also Pro Serv. Auto., L.L.C. v. Lenan Corp.*, 469 F.3d 1210, 1214 (8th Cir. 2006) (applying Missouri law).

> Missouri law holds that unless the injury involves a "sudden onset, visible injury, or an injury that as a matter of common knowledge follows the act ... some expert medical testimony combined with other evidence tending to show with a reasonable certainty that the accident caused the injury is necessary [to prove causation]."

*Eppler v. Ciba-Geigy Corp.*, 860 F. Supp. 1391, 1395 n.3 (W.D. Mo. 1994) (omission and alteration in original) (quoting *Harris v. Washington*, 654 S.W.2d 303, 306 (Mo. App. E.D. 1983)).

Expert testimony is also required in negligence claims depending on the nature of the underlying injury.

> The testimony of a lay witness is sufficient to establish the nature, cause and extent of an injury "when the facts fall within the realm of lay understanding." *Griggs v. A.B. Chance Company*, 503 S.W.2d 697, 704 (Mo.App.1973). *See also Pedigo v. Roseberry*, 340 Mo. 724, 102 S.W.2d 600, 606–07 (1937); *State ex rel. Burcham v. Drainage District No. 25*, 272 S.W.2d 712, 716–17 (Mo.App.1954). However, when the injury is a "sophisticated injury, which requires surgical intervention or other highly scientific technique for diagnosis, and particularly where there is a serious question of pre-existing disability and its extent, the proof of causation is not within the realm of lay understanding...." *Griggs*, 503 S.W.2d at 704.

*Williams v. Jacobs*, 972 S.W.2d 334, 340 (Mo. App. W.D. 1998).  These court opinions are consistent with the current version of section 490.065.2(1)(a), RSMo, which provides an expert witness may testify if "[t]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."

The injury at issue in this case, Plaintiff's DLBCL, is plainly outside the realm of lay understanding. As Missouri courts recognize:

> [P]roof of causation in cases involving exposure to a toxic substance typically requires a certain degree of scientific expertise. *See Lewis*, 5 S.W.3d at 585. This is because "[t]he diagnosis of disease induced by environmental factors is essentially 'a scientific undertaking' requiring proof which 'the scientific community deems sufficient for that causal link.' " *Id.* (citation omitted). As Defendants note, the requirement for expert testimony in cases like the instant matter, coincides with the requisite proof of causation in medical injury cases, where the cause of sophisticated injuries is not within a layperson's common understanding and, therefore, the plaintiff must establish the causal relationship through expert medical testimony. *See Brickey v. Concerned Care of the Midwest, Inc.*, 988 S.W.2d 592, 596–97 (Mo.App.E.D.1999).

*Brown for Est. of Kruse v. Seven Trails Invs., LLC*, 456 S.W.3d 864, 869–70 (Mo. App. E.D. 2014). The same is true under Alabama law, which applies to Plaintiff's claims on any issue in which an actual conflict exists with the law of Missouri. *See generally Tidwell v. Upjohn Co.*, 626 So. 2d 1297, 1300 (Ala. 1993) ("The purpose of expert testimony is to aid the trier of fact where the subject matter is beyond the ken of the average juror."); Order Regarding Monsanto's Motion for Summary Judgment at 9 (Oct. 13, 2022) (citing *Thompson v. Crawford*, 833 S.W.2d 868, 870 (Mo. banc 1992); *Clair v. Monsanto Co.*, 412 S.W.2d 295, 304 (Mo. App. E.D. 2013)).

Monsanto argues Plaintiff's sole expert to testify on specific causation, Dr. Ambrose K. Charles, demonstrated during trial that he is not qualified to offer such opinions in this case. Monsanto cites to specific instances of Dr. Charles's trial testimony in which he admitted to not being an expert on Roundup, NHL, or epidemiology and that he is not a medical doctor or oncologist. Monsanto further argues that Dr. Charles's exposure assessment is unreliable, unscientific, and failed to account for the dose of Roundup actually absorbed into Plaintiff's body.

Consequently, Monsanto argues the Court should find that Plaintiff has failed to meet his burden to offer substantial expert testimony to establish specific causation.[2]

Monsanto's arguments in this instant Motion concerning Dr. Charles are essentially the same arguments it made in its pre-trial Motion to Exclude Dr. Charles's testimony filed on August 18, 2022, which the Court denied in part and granted in part.[3]  Order Regarding the Parties' Motions to Exclude Experts at 20-24, 42-43 (Oct. 13, 2022).  The Court found that Dr. Charles was qualified and could give his initial opinions on general and specific causation.  Monsanto alleged many fallacies in Dr. Charles's reasons for his opinions that could be subject to cross-examination and go to the weight as opposed to admissibility.  Immediately following Dr. Charles's trial testimony, Monsanto renewed its motion to exclude Dr. Charles and again renews that motion here.  Monsanto's Motion at 5 n.5.

Plaintiff's counsel argued that Dr. Charles properly relied on relevant medical literature related to dose response to glyphosate and concluded to a reasonable degree of scientific certainty that Plaintiff's maximum possible exposure or even a fracture thereof would have increased his risk of developing cancer.  Further, Plaintiff's counsel argued Dr. Charles used a table to determine Plaintiff's exposure and showed that table to the jury.

The Court does not change its decision regarding the admissibility of Dr. Charles's testimony.  Monsanto's arguments go to the weight of his testimony, and it addressed those claimed inadequacies during cross-examination.  For example, whether an expert sufficiently

---

[2] Monsanto notes in footnote 4 of its Motion that it only addresses specific causation but does not concede that Plaintiff has offered substantial evidence of general causation either.

[3] The Court granted the motion to exclude Dr. Charles, in part, to preclude him from testifying that Plaintiff William Pleu's alleged chronic lymphocytic leukemia ("CLL") caused his prostate cancer as Plaintiffs had failed to show such conclusion is generally accepted.  Plaintiff Pleu voluntarily dismissed his claims without prejudice on October 18, 2022.

"ruled in" or "ruled out" Roundup as a cause of NHL generally or Plaintiff's subtype specifically goes to the weight of the expert's testimony and not admissibility. *See Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 710 (Mo. App. E.D. 2020); *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 693 (8th Cir. 2001). Viewing Plaintiff's evidence and all reasonable inferences therefrom in the light most favorable to him, the Court finds that Plaintiff has presented substantial evidence of causation and denies Monsanto's Motion on these grounds.

Monsanto also argues Plaintiff has failed to meet his burden to offer substantial evidence of specific causation because the two medical doctors Plaintiff presented[4] did not offer opinions on specific causation at all. As noted above, the injury at issue in this case, Plaintiff's DLBCL, is plainly outside the realm of lay understanding and, therefore, requires expert testimony to establish a causal relationship. *See Brown for Est. of Kruse*, 456 S.W.3d at 869–70; *Tidwell*, 626 So. 2d at 1300. The cases Monsanto cites in its Motion, however, do not assert that *only* a medical doctor can offer expert testimony on specific causation.

The Missouri Court of Appeals has noted that, in a toxic tort case, "[t]he *best witness*, of course, would be a medical doctor thoroughly trained in epidemiology, because the need to integrate biology, statistics and common sense to draw proper inferences requires as broad a background as possible." *Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 194 n.74 (Mo. App. W.D. 1988) (emphasis added) (quoting Bert Black & David E. Lilienfeld, *Epidemiologic Proof in Toxic Tort Litigation*, 52 Fordham L. Rev. 732, 775 (1984)).[5] Monsanto has not cited binding Missouri or

---

[4] The two medical doctors were Dr. Alfred Neugut (an oncologist and professor of both cancer research and of medicine and epidemiology) and Dr. Daniel Schreeder (Plaintiff's treating physician).

[5] The law review article quoted in *Elam*, 765 S.W.2d at 194 n.74, more fully opined:

> [A] medical doctor could testify about toxic tort causation only if he could demonstrate knowledge of epidemiology. The preference often accorded treating

Alabama caselaw holding that a medical doctor is the *only witness* that can established specific

causation in a toxic tort case. Rather, section 490.065, RSMo, along with *Daubert v. Merrell Dow*

*Pharm., Inc.*, 509 U.S. 579 (1993) and its progeny, make clear that the Court's role as gatekeeper

requires it permit expert testimony if the expert's knowledge and sufficiently reliable methods

"will help the trier of fact to understand the evidence or to determine a fact in issue." Sec.

490.065.2(1)(a), RSMo. As the Court already concluded, Dr. Charles meets this threshold and his

trial testimony does not change that determination. The Court denies Monsanto's Motion on this

ground.

## II.    Design Defect Claim

Monsanto next argues the Court should grant a directed verdict on Plaintiff's claim for

design defect (Count II) because he has failed to meet his burden under the Alabama Extended

Manufacturers' Liability Doctrine ("AEMLD").[6]

> With regard to an AEMLD claim, [the Supreme Court of Alabama] has explained
> that a plaintiff pursuing such a claim must establish that the product alleged to have
> caused an injury "is sufficiently unsafe so as to render it defective"; that fact must
> be established "by proving that a safer, practical, alternative design was available
> to the manufacturer at the time it manufactured the allegedly defective
> product." McMahon, 95 So.3d at 772. The existence of a safer, practical, alternative
> design may, in turn, be established by showing (1) that the injuries inflicted by the
> product would have been less severe or eliminated by the use of the alternative

> physicians should not apply because a standard based on the drawing of inferences
> from populations does not require detailed knowledge of the plaintiff's individual
> case. Moreover, a medical degree would not necessarily be required because many
> epidemiologists do not have one. The best witness, of course, would be a medical
> doctor thoroughly trained in epidemiology, because the need to integrate biology,
> statistics and common sense to draw proper inferences requires as broad a
> background as possible.

Black & Lilienfeld, 52 Fordham L. Rev. at 775–76.

[6] As the Court previously decided, Alabama law applies to Plaintiff's claims on any issue in which
an actual conflict exists with the law of Missouri. Order Regarding Monsanto's Motion for
Summary Judgment at 9 (Oct. 13, 2022) (citing *Thompson*, 833 S.W.2d at 870; *Clair*, 412 S.W.3d
at 304).

design and (2) that the utility of the alternative design outweighed the utility of the design actually used.

*Hosford v. BRK Brands, Inc.*, 223 So. 3d 199, 203 (Ala. 2016) (quoting *McMahon v. Yamaha Motor Corp., U.S.A.*, 95 So. 3d 769, 772 (Ala. 2012)).

Plaintiff has argued that either Roundup with a cancer warning label or an herbicide that does not contain glyphosate or other cancer-causing agents would be a safer alternative product. Monsanto, on the other hand, argues Alabama's safer alternative design requirement is not met by proposing "a design for a different, albeit similar, product, even if it serves the same purpose" as the allegedly defective product. *Id.* at 208.

During oral argument, Plaintiff's counsel argued Roundup with a sufficient warning label would be a safer, feasible alternative product. In support, Plaintiff's counsel cited to the Restatement (Third) of Torts. In Plaintiff's Response in Opposition to Monsanto's Motion for Summary Judgment, he cited specifically to the Restatement (Third) of Torts: Products Liability § 2, comment *f* (1998) for this same argument.[7] That section of the Restatement provides, in relevant part:

> A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, *or is defective because of inadequate instructions or warnings*. A product:
>
> > (a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;
> >
> > (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;

---

[7] Plaintiff erroneously cited to the relevant section as "Restatement (Third) of Torts: Prod. Liab. § 2(f) (1998)." Plaintiff's Response in Opposition to Monsanto's Motion for Summary Judgment at 35.

(c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

*Id.* § 2 (emphasis added).  Comment *f*, which Plaintiff quoted in part in the summary judgment pleading, provides more fully:

Subsection (b) states that a product is defective in design if the omission of a reasonable alternative design renders the product not reasonably safe. *A broad range of factors may be considered in determining whether an alternative design is reasonable and whether its omission renders a product not reasonably safe.* The factors include, among others, the magnitude and probability of the foreseeable risks of harm, *the instructions and warnings accompanying the product,* and the nature and strength of consumer expectations regarding the product, including expectations arising from product portrayal and marketing.

(Emphasis added).

Although Plaintiff's counsel argued orally that the Court should apply the Restatement (Third) of Torts, Missouri courts have repeatedly declined to adopt it.  *See Rodriguez v. Suzuki Motor Corp.,* 996 S.W.2d 47, 65 (Mo. banc 1999); *Newman v. Ford Motor Co.,* 975 S.W.2d 147, 153 (Mo. banc 1998); *Uxa ex rel. Uxa v. Marconi,* 128 S.W.3d 121, 130 (Mo. App. E.D. 2003). The Court cannot find an Alabama case adopting the Restatement (Third) of Torts, and Plaintiff has not cited to one. *See generally Wyeth, Inc. v. Weeks,* 159 So. 3d 649, 694 n.28 (Ala. 2014) (Murdock, J., dissenting) (citing Restatement (Third) of Torts: Products Liability § 2(c) (1997), and *Kurns v. R.R. Friction Prod. Corp.,* 565 U.S. 625, 635 (2012)).

The Court has previously rejected Monsanto's interpretation of Alabama law about the alternative design element and its argument that Roundup without glyphosate is not an alternative product.  The Court has explained that the Alabama caselaw cited by both parties concludes a plaintiff cannot simply "identif[y] as a safer alternative another product *manufactured by the same*

*manufacturer that allegedly had sold the defective product.*" *Hosford*, 223 So. 3d at 207 (emphasis added) (citing *Brockert v. Wyeth Pharmaceuticals, Inc.*, 287 S.W.3d 760, 770–71 (Tex. App. 2009)). The Court denied granting summary judgment in favor of Monsanto because there was no evidence that it produces or markets a product similar to Roundup that differs only in the inclusion or exclusion of glyphosate.[8]  Consequently, the Court concluded whether Roundup without glyphosate is a safer, feasible alternative is a question for the jury. Order Regarding Monsanto's Motion for Summary Judgment at 28 (Oct. 13, 2022); *Hosford*, 223 So. 3d at 205 ("[T]he reasonableness of an alternative design is generally a question of fact for the jury.").

At this stage of the trial, the Court does not find it appropriate to grant a directed verdict on this ground.  Plaintiff has argued that Roundup without glyphosate is a safer, feasible alternative.  It is a close call whether such a product is truly a safer, feasible alternative product compared to Roundup as currently designed and marketed.

## III.    Failure to Warn Claims

Monsanto next argues the Court should grant a directed verdict on Plaintiff's failure to warn claims[9] because he has not offered substantial evidence that it knew or had reason to know that Roundup could cause cancer. *See King v. S.R. Smith, Inc.*, 578 So. 2d 1285, 1287 (Ala. 1991) ("Under the AEMLD, if a manufacturer or seller places goods on the market that are imminently

---

[8] In denying summary judgment, the Court stated that "*Monsanto* has not offered evidence that it produces or markets a product similar to Roundup that differs only in the inclusion or exclusion of glyphosate." Order Regarding Monsanto's Motion for Summary Judgment at 28 (Oct. 13) (emphasis added).  That statement incorrectly placed the burden on Monsanto rather than Plaintiff, which Monsanto correctly points out in its Motion at page 16.  That misstatement, however, does not change the Court's determination that summary judgment was not warranted on that ground.

[9] Count I asserts a claim for failure to warn and Count III asserts a claim for negligence. "[U]nder Alabama law, a negligence action is merged into a claim under the AEMLD; therefore no separate action for negligence will lie when a plaintiff claims he is injured by a defective and unreasonably dangerous product." *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1217 (S.D. Ala. 1998).

dangerous when put to their intended purpose and the defendant knows or should know that the goods can create danger when used in their customary manner, the defendant must exercise reasonable diligence to make such danger known to the persons likely to be injured by the product.").

Monsanto argues the evidence presented shows that every regulatory authority during the relevant period of Plaintiff's exposure (1992 until 2019) that had examined the scientific evidence and conducted a risk assessment concluded that Roundup does not pose a carcinogenic risk. Therefore, Monsanto contends any alleged cancer risk posed by Roundup was not foreseeable and it neither knew nor should have known of any such unforeseeable and scientifically unsupported risk.

At this stage of the trial, the Court does not find it appropriate to grant a directed verdict on this ground. Viewing Plaintiff's evidence and all reasonable inferences therefrom in the light most favorable to him, Plaintiff has alleged and offered substantial evidence that Monsanto had reason to know of glyphosate's alleged danger even prior to the International Agency for Research on Cancer's ("IARC") classification in 2015 and that Monsanto engaged in efforts to conceal Roundup's danger. *See generally Blanks v. Fluor Corp.*, 450 S.W.3d 308, 403 (Mo. App. E.D. 2014) (noting the plaintiffs presented evidence that "the defendants hid information from regulators, resisted regulatory changes, and never complied with industry standards for ambient air quality standards"). Furthermore, the Court finds this is an area that may also be pursued during cross-examinations of Monsanto's witnesses.

Monsanto also argues for directed verdict on Plaintiff's failure to warn claims because he failed to prove the lack of a cancer warning caused his DLBCL. Unlike other states, Alabama law does not presume that a product user would have read and heeded a warning label. *See Barnhill*

11

*v. Teva Pharmaceuticals USA, Inc.*, 819 F. Supp. 2d 1254, 1262 (S.D. Ala. 2011) ("Alabama courts have not recognized such a [heeding] presumption") (citing *Deere & Co. v. Grose*, 586 So.2d 196, 198 (Ala. 1991)).

Monsanto cites to Dr. Charles's testimony that there was no indication that Plaintiff ever read a Roundup label. It also points to evidence that Plaintiff would not follow a cancer warning in light of his failure to abide by recommended instructions on the type of clothing to wear when spraying Roundup or washing hands after use. Monsanto also notes that Plaintiff was a longtime smoker despite the presence of cancer warnings on cigarette packaging and guidance from his treating physician to quit smoking and drinking during his cancer treatment and recovery.

Monsanto is correct that, under Alabama law, "a plaintiff who does not read an allegedly inadequate warning cannot maintain a negligent-failure-to-adequately-warn action unless the nature of the alleged inadequacy is such that it prevents him from reading it." *E.R. Squibb & Sons, Inc. v. Cox*, 477 So. 2d 963, 971 (Ala. 1985). The Court, however, finds that Plaintiff has presented substantial evidence to submit the issue to the jury. The Court addressed this issue in its Order Regarding Monsanto's Motion for Summary Judgment at 25-26 (Oct. 13, 2022). Plaintiff's answers to the following questions during his deposition suggest he had read at least part of a Roundup label on recommended use:

> Q. Do you recall reading any instructions on the label about the weather conditions for using Roundup?
> A. I recall a little bit of it.
> Q. Do you recall whether it said anything about whether you should use Roundup or not use Roundup if it was windy out?
> A. It said recommended use not to but --unless you hold -- I want to say unless you hold it real close because it could spread and hit your flowers or -- I mean, that's a long time ago. And to be honest with you, *I haven't looked at one since*.

Moore Dep. 139:5-17 (emphasis added). Further, Plaintiff stated the following on whether the presence of a warning label would have impacted his decision to use Roundup:

Q. Is it your testimony that if the Roundup label came with a warning that it could
cause cancer that you would not use Roundup or would not have used Roundup?
A. In my better judgment, yes. I probably – I probably would not have.
Q. Would you say –
A. Nobody wants cancer. So, I mean, if you – you know, but it's like – it's two
different things. Like I said, I'm addicted to cigarettes. Roundup, I can do without
it, you know, if I had known it was going to cause cancer.
Q. So your testimony is that you would not have used it?
A. Correct.
Q. What would you have used instead?
A. A weedeater.
Q. Just the physical tool, the weedeater?
A. Yes, sir.

Moore Dep. 208:15-209:9. The Court has found Plaintiff's testimony is evidence he at least did a

cursory review of a Roundup container over his years of use to survive summary judgment and the

same is true now concerning Monsanto's request for directed verdict.

Reasonable minds may differ on whether Plaintiff's testimony is credible and whether, in

light his failure to follow other safety instructions or cancer warning, he would have heeded a

warning on Roundup. Accordingly, the jury should decide whether Plaintiff actually ever did so

to support his failure to warn claim. The Court denies Monsanto's Motion on this ground.

### IV. Claims for Past and Future Medical Expenses

Monsanto next argues the Court should grant a directed verdict on his request for damages

in the form of past and future medical expenses. Missouri law permits Plaintiff to introduce

evidence of his "actual cost of the medical care or treatment." Sec. 490.715.5(1), RSMo. Such

damages, however, must be proved by substantial evidence. *Wright v. Fox-Stanley Photo Prods.,*

*Inc.*, 639 S.W.2d 407, 410 (Mo. App. E.D. 1982) (quoting *Wise v. Towse*, 366 S.W.2d 506, 508

(Mo. App. W.D. 1963)) ("The general rule is that charges for medical services such as those before

us, which are items of special damage, must be supported by substantial evidence that they were

reasonable and the services reasonably necessary in order for them to be recoverable.").

"To make a submissible case for future medical damages, [a plaintiff] ha[s] the burden to prove that a future injury was reasonably certain to occur." *Ball v. Allied Physicians Grp., L.L.C.,* 548 S.W.3d 373, 384 (Mo. App. E.D. 2018) (citing *Swartz v. Gale Webb Transp. Co.,* 215 S.W.3d 127, 130–31 (Mo. banc 2007)) (holding that the trial court erred in submitting the issue of future damages to the jury because there was no evidence presented that the plaintiff "was reasonably certain to incur future medical damages" beyond speculation about "contingent or possible future injuries").

> To receive an award of future damages, the plaintiff must adduce competent medical evidence showing future physical conditions of the kind asserted as damages will result from the original injury. The degree of probability of such damages must be greater than a mere likelihood; it must be reasonably certain to ensue. Consequences which are contingent, speculative, or merely possible may not be considered. Future damages are a matter of medical opinion and generally require expert medical testimony.

*McKersie v. Barnes Hosp.,* 912 S.W.2d 562, 566 (Mo. App. E.D. 1995) (citations omitted). "In determining whether there was evidence sufficient to support the submission of a future damage instruction to a jury, [courts] view the evidence in the light most favorable to the offering party, giving that party the benefit of all favorable inferences." *Id.* (holding the trial court did not err in submitting the issue of future damages to the jury in light of both "expert testimony from Dr. Schwartz that plaintiff's capacity for conceiving another child was diminished due to the loss of her ovary and fallopian tube" and "testimony from plaintiff on the effect this loss had on her emotionally").

Even if the offered evidence of future damages is weak, a trial court may properly submit instruct the jury on future damages if there is competent evidence to support such a finding. *See generally Brenneke v. Dep't of Missouri, Veterans of Foreign Wars of U.S. of Am.,* 984 S.W.2d 134, 143 (Mo. App. W.D. 1998) ("While we agree with the trial court that [the plaintiff's] case for

future [economic] damages was not strong, we do not agree that the proper response to this situation was to allow argument of future damages but not to explicitly instruct on them. . . . The court should have given the instruction with the future damages clause included and then left it to defense counsel to argue that future damages were not merited on the evidence presented.").

Here, Monsanto argues that Plaintiff has failed to introduce *any* evidence related to any alleged medical expenses and their likelihood of occurring and that he presented no expert testimony that any future physical conditions, treatments, or consequences are reasonably certain to occur from his DLBCL.

Plaintiff's counsel did not offer any response to Monsanto's argument for directed verdict on this ground. Particularly, Plaintiff's counsel cited no evidence of future medical expenses.

The Court finds that Plaintiff has failed to introduce any evidence, let alone substantial evidence, related to any alleged medical expenses and their likelihood of occurring as consequences from his DLBCL. Accordingly, the Court grants Monsanto's motion for directed verdict on this ground those claims for relief are dismissed.

## V.    Claim for Punitive Damages

Monsanto lastly argues the Court should grant a directed verdict on Plaintiff's claim for punitive damages because he has failed to present clear and convincing evidence that Monsanto's sale of Roundup was "tantamount to intentional wrongdoing where the natural and probable consequence of the conduct is injury." *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 160 (Mo. banc 2000).

Monsanto argues that its compliance with federal regulatory requirements and what it considers to be the overwhelming scientific and regulatory consensus that glyphosate does not cause cancer precludes an award of punitive damages in this case. *Alcorn v. Union Pac. R.R. Co.*,

50 S.W.3d 226, 249 (Mo. banc 2001), *overruled on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. banc 2013) ("[C]onformity with the regulatory process does negate the conclusion that the railroad's conduct was tantamount to intentional wrongdoing."); *see also Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1059 (11th Cir. 1994) (applying Alabama law and noting "compliance with both federal regulations and industry practices is some evidence of due care" precluding a finding of wantonness for punitive damages).

The Court has already explained that compliance with governmental regulations does not necessarily defeat punitive damages *if other evidence suggests intentional wrongdoing.* Order Regarding Monsanto's Motion for Summary Judgment at 34-35 (Oct. 13, 2022); s*ee Blanks*, 450 S.W.3d at 403 (distinguishing its facts from *Alcorn*, 50 S.W.3d 226, and noting the plaintiffs presented evidence that "the defendants hid information from regulators, resisted regulatory changes, and never complied with industry standards for ambient air quality standards"); *Kirksey v. Schindler Elevator Corp.*, No. CV 15-0115-WS-N, 2016 WL 3189242, at *21 n.39 & 22 (S.D. Ala. June 7, 2016) (noting that, under Alabama law, "code compliance is never a guaranteed insulator from liability; rather, it is merely evidence of due care" and "[c]ompliance with state rules or regulations is never a guarantee of immunity from liability").

At this stage of the trial, the Court does not find it appropriate to grant a directed verdict on this ground. Viewing Plaintiff's evidence and all reasonable inferences therefrom in the light most favorable to him, he has alleged and offered substantial evidence that Monsanto had reason to know of glyphosate's alleged danger even prior to IARC's classification in 2015 and that Monsanto engaged in efforts to conceal Roundup's danger. The Court also finds this is an area that may also be pursued during cross-examinations of Monsanto's witnesses.

Additionally, Monsanto argues there is no irreconcilable conflict between Missouri and Alabama law regarding the standard for imposition of punitive damages. *See* Ala. Code § 6-11-20(a) ("Punitive damages may not be awarded . . . in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff."). However, Alabama imposes a statutory cap on punitive damages in cases involving physical injury that has no equivalent in Missouri law. *See* Ala. Code § 6-11-21(d) ("[I]n all civil actions for physical injury wherein entitlement to punitive damages shall have been established under applicable laws, no award of punitive damages shall exceed three times the compensatory damages of the party claiming punitive damages or one million five hundred thousand dollars ($1,500,000), whichever is greater."). Accordingly, Monsanto argues and the Court agrees that if the jury awards punitive damages on Plaintiff's claim in excess of the statutory cap in Ala. Code § 6-11-21(d), Monsanto will be entitled to remittitur.

## CONCLUSION

For these reasons, Monsanto's Motion is **GRANTED IN PART AND DENIED IN PART**. Monsanto's Motion as it relates to Plaintiff's claims for past and future medical expenses is **GRANTED** and those claims for relief are dismissed. On all other grounds, the Motion is **DENIED**.

**SO ORDERED:**

Hon. Ellen H. Ribaudo                    11-09-22
Circuit Judge, Division 18

17