**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Engilis v. Monsanto Company*,<br>3:19-cv-07859-VC | **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing date: January 12, 2023<br>Time: 1:00 pm |

MONSANTO'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

Plaintiff does not oppose much of Monsanto's Motion for Summary Judgment; in fact, he expressly consents to the dismissal of Counts IV and V of the Complaint, which allege breach of express warranty and breach of implied warranty. *See* Plaintiff's Opposition to Monsanto's Motion for Summary Judgment ("Opp.") at 7. Plaintiff does, however, attempt to avoid summary judgment on his punitive damage claims, incorrectly arguing that Missouri law—rather than Florida law—should apply to his claims. This argument has been soundly rejected by many courts, and should also be rejected here. Plaintiff further argues that even if Florida law applies, his punitive damages claim is not barred because it falls under the exception in Florida Statute § 768.73(2). On this point, he is again wrong. Section 768.73(2) requires that the Court examine whether Monsanto has been subject to punitive damages awards in similar cases (it has) and also whether the conduct in question has ceased (it will). The facts are undisputed and there is no evidence—let alone "clear and convincing" evidence—that the amount of prior punitive damages awarded was insufficient to punish Monsanto. Plaintiff's punitive damage claims should be dismissed.

**ARGUMENT**

**I.    Florida Law Applies to Plaintiff's Punitive Damages Claim.**

Monsanto's motion showed that it is entitled to summary judgment on Plaintiff's punitive damages claim under the applicable state law, i.e., the state where Plaintiff lives and was allegedly exposed to Roundup and injured. *See* Defendants' Motion for Summary Judgment ("Mot.") at 9–12. Thus, to avoid dismissal, Plaintiff's Opposition performs an incorrect choice-of-law analysis to argue that Missouri law applies to these claims. Opp. at 7–13. Under a proper choice-of-law analysis, however, Florida, not Missouri law, applies. Unsurprisingly, this is not the first time this issue has been raised in the Roundup litigation. Tellingly, Plaintiff refrains from detailing the many Missouri judges who, when tasked with interpreting choice-of-law in situations strikingly similar to here, have found that the Plaintiff's home state, and not Missouri, has the controlling interest.

Plaintiff purports to apply the "most significant relationship test" from Section 145 of the Restatement (Second) of Conflicts of Law.  Section 145 requires courts to consider:

    a)    the place where the injury occurred,

|   |   |   |
|---|---|---|
| 1 | b) | the place where the conduct causing the injury occurred, |
| 2 | c) | the domicile, residence, nationality, place of incorporation and place of business of the parties, and |
| 3 | d) | the place where the relationship, if any, between the parties is centered. |

In product liability and personal injury cases, courts applying this test routinely find that the substantive law of the jurisdiction where the alleged injury took place and where the plaintiff lives should govern. *See State Farm Mut. Auto. Ins. Co. v. Bishop v. Olsen*, 406 So. 2d 1109, 1111 (Fla. 1981) (holding that Illinois law controlled under the "significant relationship" test in a personal injury lawsuit, where Illinois was the site of an automobile accident involving an uninsured Illinois motorist and a fatally injured Florida resident"); *Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) ("In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties."); *Connell v. Riggins*, 944 So. 2d 1174, 1177 (Fla. Ct. App. 2006) (holding that the state where the injury occurred will be "the decisive consideration in determining the applicable choice of law"); *see also Foreman v. AO Smith Corp.*, 477 S.W.3d 649 (Mo. App. E.D. 2015) (noting trial court finding that Maryland law had most significant relationship to issues where plaintiff worked, resided, and allegedly contracted mesothelioma in Maryland); *Grosshart v. Kansas City Power & Light Co.*, 623 S.W.3d 160, 167 (Mo. App. W.D. 2021) (applying Kansas substantive law where plaintiff alleged exposure to heavy metals at power plant located in Kansas); *Skewes v. Masterchem Indus., Inc.*, 164 S.W.3d 92, 95 (Mo. App. E.D. 2005) (affirming trial court conclusion in product liability action that Canadian law governed because alleged injury occurred in Canada).

Recognizing that courts generally apply the law of the place of injury, two recent courts in the Missouri Roundup litigation have held that "the state in which each Plaintiff was allegedly exposed to Roundup would be the jurisdiction with the most significant relationship to the claims asserted." *See Alesi v. Monsanto*, No. 19SL-CC03617, 2022 WL 17224408, at *4–7 (Mo. Cir. Aug. 7, 2022) ("*Alesi* Order") (quoting *Thompson v. Crawford,* 833 S.W.2d 868, 870 (Mo. 1992) (*en banc*)); *see also* Declaration of Jed White in Support of MSJ Reply*, Ex. M, *Ferro v. Monsanto*, Case No. 20SL-

CC03678 (Cir. Ct. of St. Louis Cty. Oct. 13, 2022), Order on Defendants' Motion for Summary Judgment ("*Ferro* Order"), at 8–9.

In the *Alesi* Order, the court squarely rejected the plaintiffs' arguments—nearly identical to Plaintiff's arguments here—that punitive damages under Missouri law should be allowed. *Id*. The *Alesi* court recognized that: (1) the plaintiffs failed to cite factually analogous case law; and (2) Missouri courts in personal injury cases generally apply the law of the place of injury. *Id.* at 4–5 ("Here, the state in which each Plaintiff was allegedly exposed to Roundup would be the jurisdiction with the most significant relationship to the claims asserted herein."). The *Alesi* Court ultimately held that since the plaintiffs' injuries occurred in their home states, those state's substantive laws should apply where the home state's laws conflict with Missouri law. *Id.* at 5 ("On the issue of damages, Missouri courts are clear that a state has the "predominant interest" when deciding damages for injuries "occurring within its boundaries."). In a strikingly similar case, *Ferro v. Monsanto*, another Missouri court held the same. *See* White Decl., Ex. M, *Ferro* Order, at 8–9 (holding that Georgia and Alabama law should apply because "[o]n the issue of damages, Missouri courts are clear that a state has the predominant interest when deciding damages for injuries occurring within its boundaries") (internal quotations omitted).

The result should be the same here. Plaintiff alleges he was injured by exposure to Roundup in Florida. This is the state where Plaintiff purchased and used Roundup. Mot. at 2–3. This is also the state where Plaintiff lives. *Id*. Plaintiff has lived in Florida since 1965 and has sprayed Roundup only in Florida—he has no connection to Missouri whatsoever. *See* Mot. Ex. A, Deposition of Peter Engilis, Jr., at 10:9–14. In sum, the Court should reject Plaintiff's argument and apply the substantive law of the jurisdiction where Plaintiff claims he was injured: Florida.

II. **Florida Law Bars Plaintiff's Punitive Damages Claim**

    A. **The Prior Punitive Damages Verdicts Awarded Against Monsanto Are Sufficient to Punish Monsanto's Behavior.**

There is no dispute that the requirements of § 768.73(2)(a)—that punitive damages have been awarded against Monsanto in prior actions alleging harm from the same course of conduct for which Plaintiff seeks compensatory and punitive damages in this case—have been met. Mot. at 10–12; *see also* Opp. at 14. Plaintiff argues, however, that the $100 million already awarded in Roundup litigation

is "a relatively small sum of money to Bayer AG/Monsanto." Opp. at 14–15. On this point, Plaintiff contends the prior punitive damages awards are insufficient because 1) the proportion of punitive damages awarded to Bayer AG's ("Bayer") net worth is too small, and 2) Plaintiff's conduct has not ceased. Plaintiff is wrong on both counts. Finally, due process concerns weigh heavily against the continued accrual of repetitive punitive damages awards.

### 1. Bayer's Net Worth is Inconsequential to a Section 768.73(2) Analysis

Plaintiff cites Bayer's alleged $54 billion net worth as evidence that the damages awarded in the past Roundup cases are insufficient to punish Monsanto. But this argument is irrelevant and misguided for multiple reasons. As an initial matter, the net worth figure is based on nothing but a website that is plainly inadmissible hearsay. *See* FRE 801, et seq. Furthermore, Plaintiff's alleged $54 billion net worth figure is not Bayer AG's net worth, it is its market capitalization, which is the value of a company that is traded on the stock market, calculated by multiplying the total number of shares by the present share price. Market capitalization is not a suitable substitute for net worth because market capitalization is an amorphous and illusory number, especially prone to large swings depending on market conditions. Further, *Bayer's* financial data, whether it be market capitalization or net worth, is irrelevant to the issue before this Court for an additional reason. Bayer is not a party to this litigation. Monsanto is. And Monsanto's net worth is not before the Court.[1]

Plaintiff's reliance on *Fisher v. City of Miami*, a case that expounds on a theory "which permits evidence of the wealth of a tortfeasor as a measure of the amount of punitive damages which should be awarded," to support his argument is misplaced. 172 So. 2d 455, 457 (Fla. 1965). This case is not controlling on the punitive damages issue in this case for multiple reasons. First, the court in *Fisher* rejected the quoted language above and by Plaintiff, *see* Opp. at 14, holding that the City of Miami was "not liable for punitive damages when sued for a wrong." *Id.* Second, the *Fisher* case (and the other case cited by Plaintiff in support of this argument, *Rinaldi v. Aaron*, 314 So. 2d 762 (Fla. 1975)) was

---

[1] Additionally, nothing in § 768.73(2)(b) suggests that an analysis of a defendant's net worth is necessary or relevant in determining whether prior punitive damage awards were sufficient to punish the behavior in question. Its absence is telling. While net worth can sometimes be used in evaluating the size and structure of an initial punitive damage award, it is far less useful in determining whether a prior award was sufficient under § 768.73(2)(b).

4
MONSANTO'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

published well before the enactment of § 768.73(2), which went into effect in 1999 and specifically directs courts to examine whether (and requires plaintiffs to prove by clear and convincing evidence that) punitive damages already awarded were "insufficient to punish the defendant's behaviour." *See* Fla. Stat. § 768.73(2)(b). As Monsanto demonstrated in its opening motion, Plaintiff has not met his burden under Fla. Stat. § 768.73(2)(b) in this case, and the Court should grant summary judgment on Plaintiff's claim for punitive damages.

### 2. Monsanto Will Cease Selling Glyphosate-Based Herbicides in 2023

Section 768.73(2)(b) states that the trier of fact "may consider whether the defendant's act or course of conduct has ceased" when determining the availability of punitive damages. Fla. Stat. § 768.73(2)(b). Plaintiff argues that because Bayer did not admit culpability in its July 2022 press release announcing the cessation of all glyphosate-based herbicides in 2023, *see* Mot. Ex. L, Jul. 29, 2021 Bayer Press Release, that the withdrawal of glyphosate-based herbicides from the market should be disregarded by the Court. *See* Opp. at 15–16. But this is irrelevant. Section 768.73(2)(b) does not have a culpability requirement, only stating that the court can consider whether the behavior in question has ceased. Here, it has. Bayer is removing glyphosate-based herbicides off the market solely because of the future prospects of litigation—and particularly the threat of never ending punitive damage awards—clearly evidencing that the punitive damages awards *have* been sufficient to punish Monsanto. *See* Mot. Ex. L. When examined in its totality, the fact that Bayer incurred punitive damage judgments of $100 million, and the fact that in mid-2022 it announced the cessation of glyphosate-based herbicide sales, shows that even under a generous reading of § 768.73(2)(b), punitive damages against Monsanto should be prohibited.

Finally, Plaintiff argues that Bayer's withdrawal of glyphosate-based herbicides should be disregarded because the removal only applies to the "residential marketplace." Opp. at 16. But the residential marketplace is the only marketplace at issue in this case. Glyphosate-based herbicides used by professionals or by farmers are entirely irrelevant to this matter and to Plaintiff's punitive damages claims in this case.

MONSANTO'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### 3. Monsanto's Due Process Rights Would be Abrogated With Continuous Punitive Damage Awards Based on the Same Conduct.

The United States Supreme Court requires that review of a punitive damage award include consideration of three guideposts to determine whether the award is unconstitutionally excessive. *See State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003). Courts must consider: (1) the degree of reprehensibility of defendant's misconduct, (2) the disparity between the harm plaintiff suffered and the punitive-damages award, and (3) the difference between the punitive damages awarded by the jury and awards authorized in comparable cases. *Id.* California appellate courts have repeatedly reduced the amount of punitive damages awarded against Monsanto due to their violation of *State Farm. See* Mot. at 11 n. 4; *see also Johnson v. Monsanto*, 52 Cal. 5th. 434, 463 (Cal. Ct. App. 2020) ("[W]here, as here, there is a punitive element to the compensatory damages award, the law supports only a one to one ratio for punitive damages.") (internal quotations omitted).

Here, the prospective repeated award of punitive damages for the same act, same conduct nationwide would certainly be a violation of Monsanto's due process rights under *State Farm. See State Farm*, 538 U.S. at 418. It is also important to note that this Court and two other California courts that have awarded punitive damages have ultimately seen those results reduced on appeal with the appellate courts holding that the adjusted amount awarded was the maximum allowed under the Due Process clause. *See* Mot. at 11 n. 4. That means three different, independent courts have held that Monsanto was punished at the maximum amount available under the law. This negates any possibility of Plaintiff demonstrating, by clear and convincing evidence, that the prior awards were insufficient punishment. Put another way, having three courts already determine that each punitive damage award was excessive and must be reduced to the outer limits of due process would be entirely inconsistent with the position that those awards were "insufficient" to punish Monsanto. *See* Fla. Stat. § 768.73(2)(b). Indeed, the prior punitive awards have had their intended effect—as discussed *supra*, Monsanto is discontinuing the sale of glyphosate-based herbicides in the residential marketplace, not because of any concern about potential carcinogenicity, but instead to "manage litigation risk" spurred by the large punitive awards. These facts should weigh heavily in determining whether "the amount of prior punitive damages awarded was insufficient to punish that defendant's behavior." *Id.*

**III.     Plaintiff Lacks Evidence That Monsanto Acted with the Indifference or Conscious Disregard for the Safety of Others Necessary to Support a Punitive Damages Award.**

Finally, Plaintiff's motion makes an irrelevant state-of-mind argument that Monsanto did not address in its motion for summary judgment—primarily because that argument has been previously addressed and the Court's instructions are clear to not re-litigate issues previously ruled upon by the Court. Nevertheless, because Plaintiff makes the argument, and Monsanto's behavior does not rise to a level of egregious or wanton conduct necessary to sustain an award of punitive damages, *see* Opp. at 18, Monsanto offers the following rebuttal.

Monsanto has shown in its Motion that its alleged conduct cannot rise to the level necessary to impose punitive damages as a matter of law. Mot. at 9–12. Plaintiff asserts that nothing about Florida or Missouri law would preclude the jury from deciding punitive damages here. Opp. at 11–19. Plaintiff is wrong. In Florida, a court may award punitive damages in a product liability case only where the defendant's conduct was so "wanton and reckless . . . to the rights of others as to be equivalent to an intentional violation." *Carraway v. Revell*, 116 So. 2d 16, 21 (Fla. 1959); *see also U.S. Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1064 (Fla. 1983) ("Punitive damages cannot be assessed for mere negligent conduct, but must be based on behavior which indicates a wanton disregard for the rights of others."); *Owens–Corning Fiberglas Corp. v. Ballard*, 749 So. 2d 483, 486 (Fla. 1999) ("The character of negligence necessary to sustain an award of punitive damages must be of a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.") (quotation omitted).

Here, Monsanto cannot have acted with conscious disregard for a known risk because regulatory authorities evaluating glyphosate-based products around the world have concluded that they do not cause cancer (i.e., regulatory authorities say that the allegedly known risk *does not exist*). Plaintiff does not dispute that regulatory agencies worldwide have repeatedly determined that glyphosate is not a human carcinogen. In light of these findings, Plaintiff cannot possibly show that

7

MONSANTO'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

any of Monsanto's alleged conduct in this case—whether in terms of labeling or product formulation—constitutes sufficiently outrageous conduct or demonstrates a willful, wanton, or malicious state of mind under Florida law. *See American Cyanamid Co. v. Roy*, 498 So. 2d 859, 863 (Fla. 1986) (quashing an award of punitive damages because "[t]he facts simply do not reflect the kind of flagrant misconduct that would justify a finding of willful and wanton disregard for the safety of persons").

Finally, punitive damages cannot be levied against Monsanto because it refused to draw a causal connection, *see* Opp. at 15–19, between Roundup and NHL when EPA and other scientific regulators in the European Union, Canada, and New Zealand (among many others) have rejected the idea that glyphosate causes cancer based on a review of more data. Nor can punitive damages be levied against Monsanto for its "defense" of its scientific belief that Roundup does not cause cancer. *See id.* at 18–19. Monsanto's public statements, media engagements, and advertising reflect the company's longstanding, good faith belief in science-backed arguments about the safety of its products; they are neither outrageous nor carried out with evil motive. Monsanto's lawful lobbying efforts and public relations activities cannot be the basis of a punitive damages award. *Cf. State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("A jury must be instructed . . . that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred."); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort[.]").

## CONCLUSION[2]

Monsanto respectfully requests that the Court grant its Motion for Summary Judgment

Dated:  December 21, 2022                    Respectfully submitted,

/s/ *Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

---

[2]  Plaintiff requests an evidentiary hearing in order to determine the sufficiency of the prior punitive damage awards. Monsanto believes this is unnecessary. The Court has all the information it needs to decide this matter without wasting additional court resources on factual issues properly outlined by both parties' briefings.

8
MONSANTO'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of December, 2022, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Jed P. White
Jed P. White