**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No.: 3:16-md-02741-VC |
| *Engilis v. Monsanto Company*, 3:19-cv-07859-VC | **REPLY IN SUPPORT OF DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF JOEL J. GAGNIER** |
| | Hearing date: January 12, 2023<br>Time: 10:00 a.m. |

# INTRODUCTION

Monsanto's Motion showed that the Court should exclude the testimony of Plaintiffs' general causation expert Dr. Gagnier because his methodology is fundamentally flawed and his report contains inconsistencies that render his analyses unreliable. Plaintiffs' Opposition fails to refute this showing.

*First*, Dr. Gagnier's Report includes inconsistent risk calculations, which seem to have been arbitrarily updated from past Reports without Dr. Gagnier conducting any new analyses or explaining these changes. On this basis alone, Dr. Gagnier's opinions should be excluded as unreliable.

*Second*, Plaintiffs do not meaningfully dispute a core methodological deficiency Monsanto raised in its motion—that Dr. Gagnier did not use any reliable scientific method (or any discernable method) to analyze whether certain cherry-picked associations he purportedly found in the epidemiological data between exposure to glyphosate and non-Hodgkin's lymphoma ("NHL") were causal or simply coincidental. Plaintiffs point out that Dr. Gagnier *stated* that the association was causal, but they do not show how he reliably *analyzed* this. Because Dr. Gagnier performed only the beginning of a causation analysis—finding an association—and not the end of that analysis—determining whether that association is causal—he should not be permitted to offer a causation opinion.

*Third*, after Monsanto's motion pointed out serious methodological flaws in Dr. Gagnier's meta-analyses, Plaintiffs backed away from Dr. Gagnier's meta-analyses in their Opposition and now claim that Dr. Gagnier had already reached his causation opinion based on the literature alone, before conducting his meta-analyses. *See* Opp. at 13. Plaintiffs cannot simply brush over what they do not want the Court to see. Dr. Gagnier's meta-analyses fail to abide by principles that Dr. Gagnier himself admits a meta-analysis should follow. Dr. Gagnier's testimony must be excluded as unreliable.

For these reasons and the reasons stated in Monsanto's Motion, this Court should exclude Dr. Gagnier's testimony in its entirety.

# ARGUMENT

## I.   DR. GAGNIER'S OPINIONS ARE INCONSISTENT AND MUST BE EXCLUDED.

Plaintiffs respond to Monsanto's argument that Dr. Gagnier arbitrarily and inexplicitly altered his conclusions as to his "ever exposure" and "highest exposure" meta-analyses—*without conducting*

new analyses[1]—by noting that the "terminology in Dr. Gagnier's expert report is confusing at times." Opp. at 5. Plaintiffs seek to minimize the serious inconsistencies identified in Monsanto's motion to exclude, which undermine the reliability of Dr. Gagnier's Report. Dr. Gagnier changed his risk calculation percentiles in his conclusion paragraph as to both the "ever exposure" and "highest exposure" meta-analyses. He updated these percentiles, now concluding there is a potentially *higher risk* than previously reported in *Alesi*, despite testifying he has not conducted a new analysis. *See* Ex. B, *Ferro* Dep. at 17:5-18:18 (Dr. Gagnier testifying there were no other substantive changes in his report from his report in *Alesi*, aside from the inclusion of several additional sensitivity analyses).

First, Dr. Gagnier offered inconsistent opinions *within* his Report in this case. On page 35 of his Report, discussing the "ever exposure" analysis, he stated:

> Overall, these results from our main analyses suggest an increased risk of **15% to 25%** for NHL in those exposed to Glyphosate **at any point in their life**.

Ex. A, Report at 35 (emphasis added). Yet, on page 49 of this same report, in the conclusions section, Dr. Gagnier stated:

> The results from our main analyses suggest an increased risk of **20% to 26%** for NHL in those ever exposed to Glyphosate at **any point in their life**.

*Id.* at 49 (emphasis added). Likewise, on page 43, where Dr. Gagnier was discussing the "highest exposure" analysis, he stated:

> Overall, these results from our main analyses suggest an increased risk of **38% to 42%** for NHL in those exposed to Glyphosate at **various levels of exposure definitions used in the individual studies**.

*Id.* at 43 (emphasis added). However, in the "conclusion" section, Dr. Gagnier reported:

> The results from our main analyses suggest an increased risk of **10% to 52%** for NHL in those exposed to Glyphosate at the **various highest levels of exposure definitions used in the individual studies.**

---

[1] Dr. Gagnier conducted multiple meta-analyses in *Alesi*, the first case where he was a witness against Monsanto. He is providing general causation opinions, which are not specific to a certain plaintiff. As such, he provided testimony in *Ferro* and seeks to provide testimony in *Engilis* regarding the results of the same analyses he conducted in *Alesi*, as the information underlying his general causation opinions should not change, despite the different plaintiffs. In fact, he was not even deposed in *Engilis* for this reason. As such, it is very concerning that his results of the analyses he conducted in *Alesi* have inexplicitly been altered in the present case.

- 2 -
REPLY IN SUPPORT OF MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF JOEL J. GAGNIER

*Id.* at 49 (emphasis added).

These conclusions are inconsistent, not merely "confusing" as Plaintiffs suggest. Dr. Gagnier inexplicitly changed these numbers in the "conclusion" section of his Report, but not where these numbers were originally discussed in the body of his report. By comparing Dr. Gagnier's Reports in *Alesi*, *Ferro* and *Engilis*, it is clear that after *Alesi*, Dr. Gagnier edited his Report to increase these percentiles, but he did so only in the conclusion. *See generally* Ex. A, Report; Ex. K, Report of Dr. Joel Gagnier in *Alesi*; Ex. L, Report of Dr. Joel Gagnier in *Ferro*. These are not different analyses; they are different results from the same two analyses within this single Report. Without changing the analyses, the resulting conclusions should remain constant. *Yet, they did not.* These inconsistencies are central to Dr. Gagnier's opinions and fundamentally discredit the reliability of Dr. Gagnier's Report; they do not make the Report merely "shaky" as Plaintiffs suggest. *See* Opp. at 7. Dr. Gagnier's Report is inconsistent and represents arbitrary and unreliable results, and he should be excluded on this basis. *See Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F. 3d 252, 260 (1st Cir. 1997) (district court did not abuse its discretion in excluding expert testimony based on methodology that was "internally inconsistent and unreliable", specifically noting that a "moving target" opinion provides "ample reason" for skepticism); *Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222, 1239 (N.D. Ala. 2000), *aff'd*, 284 F.3d 1237 (11th Cir. 2002) (expert opinion excluded in part due to inconsistencies between his testimony and report).

**II.   DR. GAGNIER'S OPINIONS SHOULD BE EXCLUDED BECAUSE HIS METHODOLOGY IS UNRELIABLE.**

**A. Dr. Gagnier's Methodology is Unreliable Because He Failed to Conduct a Proper Causation Assessment.**

Plaintiffs do not meaningfully contest Monsanto's argument that Dr. Gagnier assessed only whether there is an *association* between glyphosate and NHL and not whether the purported association is *causal*. Mot. at 10-12. Plaintiffs instead maintain that an expert does not need to perform an analysis under Bradford Hill—the standard set of epidemiology criteria used to determine if a reported association is causal—to opine on general causation. Opp. at 11-13. Plaintiffs cite Judge May's order in *Alesi v. Monsanto Co.*, No. 19SLCC03617 (Mo. Cir. Ct. July 22, 2022), which in turn cites *In re Celexa & Lexapro Prod. Liab. Litig.*, 927 F. Supp. 2d 758, 766 (E.D. Mo. 2013), and *In re Viagra*

*Prods. Liab. Litig.*, 572 F. Supp. 2d 1071, 1081 (D. Minn. 2008), for the proposition that a general causation expert does not necessarily need to perform a Bradford Hill analysis.

Plaintiffs misunderstand Monsanto's position. Monsanto has not argued that an expert always needs to perform a Bradford Hill analysis to opine on general causation. Monsanto does not claim that Dr. Gagnier's failure to use Bradford Hill dooms his causation analysis. Rather, Monsanto takes issue with Dr. Gagnier's failure to perform *any* causation analysis. Courts have made clear that although "[e]vidence of an association may be sufficient for formulation of a hypothesis that can later be tested and confirmed, . . . it is not proof of causation in the courtroom or the scientific community." *Nelson v. Am. Home Prod. Corp.*, 92 F. Supp. 2d 954, 969 (W.D. Mo. 2000) (excluding causation opinions where the underlying evidence showed only an association).

Plaintiffs cite instances where Dr. Gagnier states that he reached an opinion on causation. Opp. at 13. But these conclusions lack a reliable basis. Without an underlying analysis, these statements by Dr. Gagnier amount to mere speculation. And when evaluating reliability, a court must focus "**solely on principles and methodology**, not on the conclusions of the expert" or on the expert's speculation. *See Nelson*, 92 F. Supp. 2d *at* 967 (internal citations omitted; emphasis added); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) ("speculative testimony is inherently unreliable").  The Court should not permit Dr. Gagnier to testify that there is an "association" between Roundup and Plaintiffs' alleged conditions—or to offer the *ipse dixit* opinion that this association is causal—when Dr. Gagnier has not undertaken the scientific work to determine whether that is true. *See* Mot. at 10-12; *see also Rosen v. Ciba–Geigy Corp.,* 78 F.3d 316, 319 (7th Cir.1996) ("[T]he courtroom is not the place for scientific guesswork, even of the inspired sort. Law lags science; it does not lead it.").

Nor should the Court permit Dr. Gagnier to opine about a purported causal link based on a single piece of literature and no independent analysis. Plaintiffs claim that "[a] properly qualified expert can base his or her general causation opinion on a review of the relevant peer-reviewed literature," Opp. at 12, and further claim that Dr. Gagnier reached his causation opinion before performing any analysis based on a single piece of literature: the *Zhang* article. *See id.* at 13 (admitting that Dr. Gagnier "reached his…opinion **before** he even performed his own meta-analysis" based on the literature alone);

*id.* (admitting that "[u]pon reviewing the **Zhang article**, Dr. Gagnier **concluded** that 'the evidence they discuss support[s] a strong causal link between glyphosate-based herbicide and NHL'") (emphasis added). Although literature can show an association, it cannot substitute for an expert's own reliable analysis of whether that association is causal. *See In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prod. Liab. Litig.*, 424 F. Supp. 3d 781, 797 (N.D. Cal. 2020) (finding that "while plaintiffs' causation experts would be entitled to opine that there is an association between PDE5 use and melanoma progression, they have not reliably applied a Bradford Hill analysis to make the requisite leap from correlation to causation"). Literature showing an association between Roundup and NHL is not sufficient, on its own, to implicate a causal relationship. Because Dr. Gagnier failed to conduct the required causation analysis, his general causation opinion should be excluded as unreliable.

### B.  Dr. Gagnier's Methodology Is Unreliable Due to Multiple Admitted Flaws.

Monsanto's Motion also demonstrated that Dr. Gagnier's failure to abide by analytical principles that he admits are appropriate and that would result in a different opinion renders his methodology in his meta-analyses unreliable. *See* Mot. at 7-10. Plaintiffs respond by citing Dr. Gagnier's general qualifications to perform meta-analyses. *See* Opp. at 7-8. But Monsanto does not dispute Dr. Gagnier's general qualifications to perform meta-analyses. Monsanto argues that, based on Dr. Gagnier's own admissions, he did not perform reliable meta-analyses here.

The multiple, admitted flaws in Dr. Gagnier's methodology are so clear that Plaintiffs have backed away from Dr. Gagnier's meta-analysis in their Opposition. *See* Opp. at 13 (claiming that Dr. Gagnier reached his opinion on causation "before he even performed his own meta-analysis"); *see also id.* ("even setting aside his own meta-analysis[…]"). Dr. Gagnier's own admissions about these flaws are telling. For example, he did not use data adjusted for other pesticides despite acknowledging that it would be appropriate to do so. *See* Mot. at 8.[2] The reason for this choice is clear: as Dr. Gagnier acknowledged, adjusted data would not have supported his conclusions. *See id.* at 9. As explained in Monsanto's Motion, Dr. Gagnier also failed to follow his own tenants to have a clear written protocol

---

[2] Contrary to what Plaintiffs say in their Opposition, Dr. Gagnier has repeatedly acknowledged that there was good reason to use adjusted data. *See* Ex. B, *Ferro* Dep. at 189:4-17 (explaining that using the adjusted odds ratio is "what you should do"); Ex. C, *Alesi* Dep. at 120:13–19 (when examining "the relationship between glyphosate and non-Hodgkin's lymphoma, it does look like [using an adjusted odds ratio] is an appropriate action").

laying out the planned analyses before conducting them and to justify the data he chose to input into his analyses rather than cherry-picking. *Id.*

The proper scientific procedures that Dr. Gagnier declined to follow are not simply "an attorney's interpretation of the science" as Plaintiffs claim. Opp. at 9. Monsanto bases its argument on scientific procedures Dr. Gagnier admitted were proper at his deposition. The cumulative effect of the flaws in Dr. Gagnier's meta-analyses renders his purported methodology unreliable, and the Court should exclude his testimony.

## CONCLUSION

For the reasons set forth above, the Court should grant Monsanto's Motion to Exclude Testimony of Joel J. Gagnier, ND, MSc, PhD.

Dated:  December 21, 2022  Respectfully submitted,

/s/ *Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of December, 2022, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Jed P. White*
Jed P. White