**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:     202-847-4030
Fax:    202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, <br><br> *Engilis v. Monsanto Company*, 3:19-cv-07859-VC | MDL No. 2741 <br><br> Case No.: 3:16-md-02741-VC <br><br> **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF ANDREW SCHNEIDER, M.D.** <br><br> Hearing date: January 12, 2023 <br> Time: 10:00 a.m. |

Dr. Schneider's opinions have never been admitted by any court in the Roundup litigation. In fact, the only court to consider his opinions excluded them—entirely—in a case earlier this year. The same result should follow here. As shown in Monsanto's Motion, Dr. Schneider, based on his own admissions, is not qualified to opine on general causation, secondary malignancies (specifically melanoma and bladder cancer), genotoxicity, or animal studies. In response, Plaintiffs do not dispute Dr. Schneider's admitted lack of expertise in genotoxicity or animal studies. Nor have Plaintiffs pointed to any evidence that Dr. Schneider is qualified in epidemiology. Dr. Schneider admits he is not so qualified, yet he grounds his general causation opinions on epidemiology. Because Dr. Schneider has no expertise in epidemiology or other expertise that would allow him to opine on general causation— i.e., on whether Monsanto's Roundup product can cause non-Hodgkin's lymphoma ("NHL")—the Court should exclude his general causation opinion in its entirety.

Monsanto's Motion also demonstrated that Dr. Schneider uses an unreliable methodology to form his general and specific causation opinions. Dr. Schneider opines—based on sources he found through a Google search—that Roundup can cause cancer. Then, to reach his specific causation opinion, he merely relies on Plaintiffs' own assertions regarding their Roundup use to conclude that Roundup must have caused their cancers. As if to prove the lack of a reliable methodology, Dr. Schneider testified that he relied on "intuition" and "imagination" in reaching his specific causation opinions. That is not good science, and it is not admissible.

Plaintiffs' Opposition is replete with unsupported assertions about Dr. Schneider's methodology. But the Court must look at what Dr. Schneider *actually* did—not what Plaintiffs' counsel claim he did. For instance, Plaintiffs assert that Dr. Schneider's methodology "identified each of the risk factors that are generally known to be associated with NHL." Opp. at 3. That assertion, however, is contradicted to Dr. Schneider's own testimony. *See* Ex. E to Motion, Aug. 9, 2022 Deposition of Dr. Andrew Schneider ("Schneider *Engilis* Dep.") at 124-25 (failed to consider Mr. Engilis's self-reported history of sunburns, which are a risk factor for melanoma). Nor did Dr. Schneider perform the careful review of the scientific literature that would be required to reliably reach his opinions. At his deposition, Schneider could not independently identify what articles he found in his research, and he could not speak to any article without having it in front of him to read during the deposition. Finally, Plaintiffs

fail to address Monsanto's argument that because Dr. Schneider has no reliable basis to "rule in" Roundup as a potential cause of Plaintiffs' NHL in a general causation analysis, his specific causation opinions are fatally flawed.

Just as the *Ferro* Court did earlier this year, this Court should exclude Dr. Schneider's opinions in their entirety.

## ARGUMENT

### I. DR. SCHNEIDER IS NOT QUALIFIED TO OPINE ON GENOTOXICITY OR ANIMAL STUDIES.

Monsanto's Motion demonstrated that Dr. Schneider does not possess sufficient "knowledge, skill, experience, training, or education" in the areas of genotoxicity or animal studies to qualify him as an expert in those areas. Mot. at 10. Plaintiffs do not dispute this fact. Instead, they make a non-responsive argument that genotoxicity and animal studies "support" Dr. Schneider's general causation opinions. Opp. at 19. But whether or not genotoxicity and animal studies may support Dr. Schneider's general causation opinions is beside the point if he lacks the qualifications to interpret those studies, which—by his own admissions—he does. *See, e.g.*, Mot. at 10-11; Ex. D to Motion, Deposition of Dr. Andrew Schneider in *Ferro et al. v. Monsanto Co.*, Cause No. 20SL-CC03678 (Cir. Ct. of St. Louis, Mo.) ("Schneider *Ferro* Dep. Vol. I") at 60:13-23 (admitting he is "absolutely not" an expert on long-term carcinogenicity studies in rodents); Ex. G to Motion, Deposition of Dr. Andrew Schneider in *Ferro et al. v. Monsanto Co.*, Cause No. 20SL-CC03678 (Cir. Ct. of St. Louis, Mo.) ("Schneider *Ferro* Dep. Vol. II") at 417:4-11 (when asked if he was an expert on the genotoxicity or mutagenicity of glyphosate, Dr. Schneider responded that he could not provide an "independent opinion" on those subjects). Because Dr. Schneider concedes he is not an expert in genotoxicity and animal studies, his opinions that glyphosate is genotoxic, *id.* at 416:25-417:3, and that animal data shows glyphosate causes NHL, *id.* at 492:4-8, must be excluded.

### II. DR. SCHNEIDER IS NOT QUALIFIED TO OPINE ON GENERAL CAUSATION.

Monsanto's Motion also showed that Dr. Schneider is unqualified to opine on general causation. Mot. at 4-7. In particular, Dr. Schneider grounds his general causation opinion in epidemiology, but he

admits he is not qualified in that area. *Id.* He also admits that he is not qualified in biostatistics or genetics. *Id.*

Plaintiffs make much of the fact that Monsanto has expert witnesses on causation who are oncologists like Dr. Schneider. But that misses the point. Monsanto is not arguing that an oncologist can *never* be qualified as an expert witness on cancer causation. Rather, the Court must look to the specific expert's experience to determine whether he or she has the necessary qualifications. *See* Mot. at 4 (citing cases). For example, Plaintiffs point to Dr. Reshef, who has served as an expert for Monsanto. As an initial matter, Dr. Reshef is not an expert in this case and thus Plaintiffs' comparisons to him are unavailing. Even more though, Dr. Reshef is not only a treating oncologist but also a hematologist who conducts substantial research on diagnosing and treating blood cancers including NHL, who has designed clinical trials and epidemiologic studies, who regularly considers causality in his practice, and who reliably applied a methodology here similar to that which he applies in his own research and clinical practice.[1] By contrast, Dr. Schneider has not done any research in the field of cancer causation and does not consider causality in his practice. *See* Mot. at 2. He readily admits that he is not an expert in epidemiology, statistics, or controlling for confounders. *See id.* at 5; Ex. D to Motion, Schneider *Ferro* Dep. Vol. I at 140:16-22 ("Q. You're not an expert in conducting those controlled analyses, correct? A. Nor am I expert in the statistical method for doing it.").

Plaintiffs attempt to qualify Dr. Schneider as an expert in epidemiology through their own say-so, but their unsupported assertions cannot overcome Dr. Schneider's own admission that he is not an epidemiology expert. For example, the fact that Dr. Schneider purportedly "uses" Surveillance Epidemiology and End Results ("SEER") data in his clinical practice, Opp. at 6, hardly makes him an expert in reading and interpreting epidemiology studies. Moreover, Plaintiffs neglect to say *how* Dr. Schneider uses the SEER data. As he explained at his deposition, Dr. Schneider merely looks at SEER data to determine survivability for patients. Ex. D to Motion, Schneider *Ferro* Dep. Vol. I at 114:15-

---

[1]   *See* Ex. I hereto, Reshef CV. Dr. Reshef is the Medical Director of Columbia's Cellular Immunotherapy and the Deputy Director of Columbia's Bone Marrow Transplantation and Cell Therapy, Division of Hematology/Oncology. *Id.* He also serves as Columbia University's principal investigator in translational oncology. *Id.* Dr. Reshef has extensive experience in cellular immunology and routinely uses animal models for studies in cancer. *Id.* Dr. Reshef has dedicated his research career to developing and improving treatment approaches to blood cancers, including NHL. *Id.*

MONSANTO'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF ANDREW SCHNEIDER, M.D.

18 ("So the way I use SEER data is that I use the AJCC cancer staging manuals, and in those staging manuals they usually present survival data which often, but not always, is relevant to SEER data."). Referring to data to assess survivability for patients is not the same as reading and interpreting epidemiology studies.

Similarly, the assertion that Dr. Schneider understands the basic concept of statistical significance, Opp. at 9, does not qualify him as an expert in epidemiology. Indeed, when asked if he had independently assessed to what extent particular epidemiology studies are potentially impacted by biases, he admitted that he is "not qualified to do that kind of assessment." Ex. D, Schneider *Ferro* Dep. Vol. I at 168:18-23. Tellingly, Dr. Schneider repeatedly used the fact that he is *not* a statistician to avoid answering questions about the very studies he purported to rely on. *E.g.*, Ex. E to Motion, Schneider *Engilis* Dep. at 93:4-9 ("Q. The highest dose in this study, even among those farmers where they did find detectable levels of glyphosate, was .004 mg/kg. Do you see that? A. It is. But I don't know about doses. As I told you before, that's better asked for a pharmacologist or statistician or epidemiologist."). Plaintiffs' unsubstantiated assertions that Dr. Schneider is qualified "to read, interpret and apply the epidemiological studies," Opp. at 7, cannot overcome Dr. Schneider's own admissions to the contrary.

Plaintiffs further maintain that an expert does not need to perform an analysis under Bradford Hill—the standard set of epidemiology criteria used to determine if a reported association is causal—to be qualified to testify on general causation, and they note that studies Dr. Schneider reviewed pertain to certain of the Bradford Hill criteria. Opp. at 9. But Monsanto has not argued that an expert always needs to perform a Bradford Hill analysis to opine on general causation. Nor has Monsanto argued that none of the studies Dr. Schneider considered would be relevant to a Bradford Hill analysis. Rather, Monsanto's point is that Dr. Schneider does not even know what the Bradford Hill criteria *are*, highlighting his lack of expertise in epidemiology. Ex. D, Schneider *Ferro* Dep. Vol. I at 136:16-137:9 (Q. "[Y]ou just told me you can't list the Bradford Hill criteria, right? A. Correct."). Because Dr. Schneider is not qualified in the field on which he relies for his general causation opinions—epidemiology—he should not be allowed to testify on general causation.

**III.    DR. SCHNEIDER'S METHODOLOGY IS NOT SCIENTIFICALLY RELIABLE.**

Monsanto's Motion further showed that Dr. Schneider uses an unreliable methodology to form his general and specific causation opinions. Mot. at 7-8. It is not scientifically reliable to find data simply by performing a basic Google search—yet that is what Dr. Schneider did to form his general causation opinion. *Id.* at 6. Despite Plaintiffs' claim that Dr. Schneider ultimately relied on many of the same studies as other experts in the Roundup litigation, this is *precisely* why the *Ferro* court excluded Dr. Schneider's opinions. Defs.' Mot., Ex. C, *Ferro* Order Regarding Parties' Motions to Exclude Experts, at 6 (Oct. 13, 2022) ("Basing his general causation opinions on results he found on Google and what Plaintiffs' lawyers gave to him ***is not a reliable method upon which to form an opinion***.") (emphasis added)  Further, it is not true that Dr. Schneider reviewed or relied on all the same studies as other experts in the Roundup litigation. For example, neither Dr. Schneider's original reliance list nor his amended reliance list includes the seminal cohort study of glyphosate-based herbicides and cancer conducted in tens of thousands of people published by Andreotti *et al.* in 2018—the Agricultural Health Study that Plaintiffs' epidemiology expert Dr. Gagnier described as large, well done, and with the "lowest risk of bias of any study [he] reviewed." Ex. J hereto, Gagnier *Ferro* Dep Tr. 106:13-25.[2] Moreover, the nature of the studies he found does not render Dr. Schneider's *methodology* of searching Google reliable. *See*, *e.g.*, Ex. E to Motion, Schneider *Engilis* Dep. at 112:18-19 ("I did a Google search, and I said look for the association of CLL and melanoma.") The fact that Dr. Schneider resorted to such an unsophisticated search tool betrays his lack of experience performing scientific research.

As explained in Monsanto's Motion, this Court previously excluded another expert in the Roundup litigation, Dr. Nabhan, who similarly "offered little in the way of critical analysis" of the epidemiological studies he review. *In re Roundup*, 390 F. Supp. 3d 1102, 1148 (2018).  Despite the obvious parallels to Dr. Schneider here, Plaintiffs desperately try to avoid the same result, by noting that the Court stated that "medical doctors do not need to be epidemiologists in order to testify regarding epidemiological studies, *so long as the expert is qualified by training or experience to interpret these*

---

[2] Also absent from Dr. Schneider's materials reviewed lists is a publication by Kabat et al. in 2021 that is the most recently published meta-analysis on glyphosate-based herbicides and NHL. *See* Ex. K hereto.

*studies and his opinions would be helpful to the jury.*" *Id.* at 1148 (emphasis added; citation omitted). Plaintiffs mince words about Dr. Schneider's purported qualifications to "read and interpret" the studies, but their Opposition only highlights Dr. Schneider's lack of qualifications in reading and interpreting epidemiological studies. While Dr. Schneider tersely asserted that he had been "trained to read articles like this for 33 years," Schneider *Ferro* Dep. at 134:5-6, his testimony repeatedly showed that he was unfamiliar with his own list of materials relied on, could not identify the names of the studies he purportedly found and relied on, and could not recall or discuss the details of those studies. Ex. E to Motion, Schneider *Engilis* Dep. at 19:8-14, 30:15-31:20, 36:2-16, 36:25-37:8, 78:9-14. Plaintiffs cannot cure Dr. Schneider's lack of qualifications in epidemiology through legal briefing.

Plaintiffs also attempt to rescue Dr. Schneider's general causation methodology by maintaining that Monsanto's experts reviewed the relevant literature to form their general causation opinions just like Dr. Schneider did. Opp. at 18. But unlike Monsanto's experts, it is not clear that Dr. Schneider actually *did* review or consider the literature. As discussed in Monsanto's Motion, Dr. Schneider could not independently identify what articles he found, was not familiar with his own Reliance List, and could not speak to the substance of any article without having it in front of him to read during the deposition. Mot. at 3; Ex. D to Motion, Schneider *Ferro* Dep. Vol. I at 46:23-47:1; 48:7-9; 50:12-15; Ex. G to Motion, Schneider *Ferro* Dep. Vol. II at 423:14-22; 437:5-20; 446:11-447:8.

Next, Plaintiffs assert that "Dr. Schneider's specific causation opinion is based on a robust differential diagnosis." Opp. at 14. It is true that courts have allowed experts to opine on specific causation based on proper differential diagnoses, and Monsanto does not take issue with the differential diagnosis methodology as a general matter. The problem with Dr. Schneider's opinions is that they are not based on a reliable *application* of the differential diagnosis methodology. Rather, Dr. Schneider simply took his opinion that Roundup theoretically *can* cause cancer and jumped to the conclusion that it *did* cause Mr. Engilis's cancer, based on nothing more than the fact that his self-reported using Roundup. Ex. D to Motion, Schneider *Ferro* Dep. Vol I at 287:2-15. Dr. Schneider formed this opinion without considering Mr. Engilis's medical history, including his family history and other risk factors they may have for NHL. *Id.* at 131:19-132:20; 222:20-233:20; 240:9-247:1; 291:3-292:21; 299:4-10.

Although an expert need not necessarily rule out every potential risk factor for a disease to perform a proper differential diagnosis, he or she "must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'" *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003) (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)) (outlining criteria for a reliable differential diagnosis by an expert witness under *Daubert*). Plaintiffs argue that Dr. Schneider "identified" the risk factors for NHL in his expert report. Opp. at 3 (citing Schneider Report). But as explained in Monsanto's Motion, there was no indication in Dr. Schneider's deposition that he critically evaluated these risk factors or analyzed how they applied to Plaintiffs here. Mot. at 6-7. Quite the opposite—Dr. Schneider's deposition testimony showed that he was unfamiliar with his own list of materials relied on and could not remember the names of the studies he found and relied on from his Google search. Ex. E to Motion, Schneider *Engilis* Dep. at 19:8-14, 30:15-31:20, 36:2-16, 36:25-37:8, 78:9-14;

Plaintiffs rely on *Stambolian v. Novartis Pharma. Corp.*, No. CV 12-04378 BRO FMOX, 2013 WL 6345566, at *5 (C.D. Cal. Dec. 6, 2013), to support Dr. Schneider's flawed methodology for assessing specific causation. But the facts of that case are nothing like those here. In addition to reviewing "prevailing literature, his own research, [and] personal experience," the expert in *Stambolian* performed "independent research into bisphosphonates" (the drug alleged to have caused the plaintiff's injury) *and* undertook "his own examination of Plaintiff." 2013 WL 6345566, at *5. Here, by contrast, Dr. Schneider knows hardly anything about Mr. Engilis, and he certainly never personally treated or examined Mr. Engilis for NHL (or even met Mr. Engilis, for that matter). Ex. E to Motion, Schneider *Engilis* Dep. at 37:13-14 ("Q. Have you ever spoken to Mr. Engilis? A. No."). Dr. Schneider fails to fully consider Mr. Engilis's medical history, and acknowledges that he has never independently researched the purported association between Roundup and NHL. *See* Mot. at 9, 12-13. Dr. Schneider simply opines that because Mr. Engilis was exposed to Roundup, all other factors can be ruled out and Roundup was the most likely cause of his cancers. As explained in Monsanto's motion, Dr. Schneider's complete failure to reliably rule out other risk factors renders his specific causation opinion unreliable. *Id.* at 9-10.

Rather than support Plaintiffs' position, *Stambolian* illustrates why this Court should exclude Dr. Schneider's testimony. Although the *Stambolian* court declined to exclude Dr. Kraut's testimony, it did exclude the testimony of another of the plaintiff's experts, Dr. Herford. The court found that, like Dr. Schneider here, Dr. Herford "has not published any articles or research regarding the risk of bisphosphonates," "has not done any research on bisphosphonates or any of the risk factors for ONJ [osteonecrosis of the jaw]," and "could not identify a publication that has demonstrated that 'bisphsosphonates cause ONJ.'" *Stambolian*, 2013 WL 6345566, at *6. Accordingly the court held that "Plaintiff has only shown that Dr. Herford was qualified to treat her as a patient . . . . Similar to the Court's finding in *Hill v. Novartis Pharmaceuticals Corp.*, there is not enough evidence to demonstrate that Dr. Herford is qualified to opine within a reasonable degree of medical certainty that there is a connection between bisphosphonates and Plaintiff's osteonecrosis." *Id.* (citing *Hill v. Novartis Pharmaceuticals Corp.*, No. 1:06-cv-003939-AWI, 2012 WL 5451800 at *2 (E.D. Cal. Nov.7, 2012)).

At bottom, Dr. Schneider opines based on sources he found through a Google search that Roundup can cause cancer, and he concludes that because Plaintiffs say they used Roundup, Roundup caused their cancers. This methodology cannot withstand scrutiny and must be excluded.

## CONCLUSION

For all these reasons and those stated in Monsanto's Motion, the Court should grant Monsanto's motion to exclude the opinions of Plaintiffs' expert witness Dr. Schneider.

Dated:  December 21, 2022          Respectfully submitted,

/s/ *Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of December, 2022, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Jed P. White*
Jed P. White