**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:     202-847-4030
Fax:    202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, <br><br> *Engilis v. Monsanto Company*, 3:19-cv-07859-VC | MDL No. 2741 <br><br> Case No.: 3:16-md-02741-VC <br><br> **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF AMBROSE K. CHARLES, PH.D** <br><br> Hearing Date: January 12, 2023 <br> Time: 10:00 a.m. |

**INTRODUCTION**

Plaintiff spends an inordinate amount of time in his Opposition discussing past rulings related to other experts in the Roundup litigation. But these rulings have nothing to do with Dr. Charles and do not support Plaintiff's insistence that Dr. Charles should be permitted to testify in this case. Dr. Charles is a new expert in this litigation, and this is the first case in the Roundup MDL in which Monsanto has had the opportunity to challenge his qualifications and methodology. Critically, unlike past plaintiffs' experts in this litigation, Dr. Charles candidly admitted that he is ***not an expert on either non-Hodgkin's lymphoma ("NHL") or Roundup***—the disease and product at issue in this case. He also agreed that he is not an expert on epidemiology, the backbone of his causation opinions. Thus, by his own admissions, Dr. Charles is not qualified to offer the opinions he seeks to offer here.

Dr. Charles's methodology for assessing causation also is riddled with errors, speculation, and guesswork. He admitted during his depositions (both in this case and in a prior Roundup case in Missouri state court known as *Ferro*) that he made numerous mistakes, including that he: (1) used cherry-picked data for cancer types the Plaintiff does not claim to have had; (2) ignored unfavorable testimony about the extent of Plaintiff's Roundup use and instead based his conclusions on the "worst-possible case"; and (3) "assumed" that Plaintiff had sustained a sufficient absorbed dose of Roundup to cause NHL based solely on the fact that he eventually developed NHL. Dr. Charles's backwards-looking and results-driven methodology is inherently unscientific and should be excluded as unreliable.

The Court should also exclude as unreliable Dr. Charles's opinions on other various topics. Dr. Charles bases his opinion that Roundup promotes cancer in humans solely on a flawed mouse study that Dr. Charles has not even read. Plaintiff also withdrew Dr. Charles's opinions on alleged reproductive effects allegedly caused by Roundup and his opinions with respect to the cause of Plaintiff's prior bladder and skin cancers. The Court should grant Monsanto's motion and preclude Dr. Charles from testifying in this case.

**ARGUMENT**

**I.     Dr. Charles Is Not Qualified To Opine on Causation.**

In response to Monsanto's argument that Dr. Charles is not qualified to offer causation opinions in this case, Plaintiff focuses on Dr. Charles's general toxicological expertise. *See* Opposition at 8-10.

1  Plaintiff notes that Dr. Charles has "been a scientist in the relevant field for almost 60 years," that he
2  "has a doctorate in toxicology and medical biochemistry," and that he "served [as] a toxicologist for
3  the Texas Department of Agriculture for 21 years." *Id.* at 8.  That all may be true, but that does not
4  mean he is qualified to offer the opinions he seeks to offer in this case.

5  "[I]t is the responsibility of the trial judge to determine whether a particular expert has sufficient
6  specialized knowledge to assist jurors in deciding the *specific issues in the case.*" *Wheeling Pittsburgh*
7  *Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (emphasis added).
8  And "[a] scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a
9  scientist in a different specialty." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th
10 Cir. 2002).  This case centers on Plaintiff's claim that Roundup caused his NHL, and Plaintiff has
11 designated Dr. Charles to opine on general and specific causation.  By focusing only on Dr. Charles's
12 general toxicological expertise, Plaintiff obscures that Dr. Charles specifically disclaimed any case-
13 specific expertise during his depositions.  Indeed, Dr. Charles specifically admitted that he is not an
14 expert in either NHL or Roundup, the two halves of Plaintiff's causation case here.  White Decl.,[1] Ex.
15 D, Charles *Ferro* Dep. at 180:11-13 ("Q. Dr. Charles, are you an expert in non-Hodgkin's Lymphoma?
16 A. No."); 155:1-10 (admitting he is unfamiliar with nearly all of the different subtypes of NHL); 48:25-
17 49:2; 137:5-8; 137:14-138:10 (admitting he is not an expert on Roundup or glyphosate).  Plaintiff does
18 not even attempt to counter these key admissions in his Opposition, tacitly acknowledging that Dr.
19 Charles lacks the expertise to offer expert opinions *in this case*.

20 Plaintiff also downplays Dr. Charles's specific concession that he is not an expert in human
21 epidemiology—the linchpin of Dr. Charles's opinions on both general and specific causation.
22 Although Plaintiff claims (without citation) that Dr. Charles is an expert in "interpreting
23 epidemiological studies," Opposition at 10, his deposition testimony established the opposite.  During
24 his depositions, Dr. Charles specifically agreed that he has "never had expertise in epidemiology" and
25 that he "was never trained as an epidemiologist."  *See* White Decl., Ex. D, Charles *Ferro* Dep. at 43:18-
26 44:4; 44:8-11; 173:10-12.  Because the backbone of all of Dr. Charles's causation opinions is

---

[1] The "White Declaration" referenced in this reply refers to the Declaration of Jed White, filed contemporaneously with Monsanto's opening motion.

epidemiology, his concession that he has no expertise in that field dooms his testimony. *See, e.g., In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1116 (N.D. Cal. 2018) (human epidemiology is "central to the general causation inquiry, and where such evidence exists, it must be addressed.").

## II.     Dr. Charles's Causation Opinions Are Unreliable.

Dr. Charles is not only unqualified to opine on general and specific causation, but his opinions on both subjects should also be excluded because they are not based on a reliable methodology.

### A.     Dr. Charles's General Causation Opinion is Unreliable.

With respect to general causation, Plaintiff claims that Dr. Charles "relied on the epidemiological data, the animal testing data, and the genotoxic data to opine that Roundup can cause NHL." Opposition at 10. But Plaintiff brushes past the numerous admitted errors and omissions that Dr. Charles committed with respect to each of these branches of science, the combined impact of which makes clear that Dr. Charles's general causation methodology is unsound.

For instance, Plaintiff does not attempt to address the fact that Dr. Charles based his causation opinion on an odds ratio from the McDuffie epidemiology study that does not even exist in the study. *See* White Decl., Ex. D, Charles *Ferro* Dep. at 319:15-327:14. Nor does Plaintiff defend Dr. Charles's focus on numerous epidemiological odds ratios for entirely irrelevant cancers that Plaintiff admittedly did not have. *See id.* at 335:3-336:24; 338:2-4; 363:2-5 (agreeing that "[t]he value that [he] included in [his] report from Andreotti is not for any kind of non-Hodgkin's lymphoma" and instead is for acute myeloid leukemia, a cancer Plaintiff did not have, and that this was an "error."); 353:11-360:22; 362:24-363:1; 363:12-16 (agreeing that with the Leon and Boffetta studies, he selected odds ratios for a subtype of NHL that Plaintiff does not have (DLBCL), despite agreeing that he should have used much lower odds ratios that do not show any increased risk of Plaintiff's particular subtype of NHL (CLL)). Similarly, Plaintiff does not attempt to explain Dr. Charles's failure to review the individual animal or genotoxicity studies that supposedly support his general causation opinions. *See id.* at 57:21-61:18; 63:25-67:9 (admitting he has not reviewed the relevant animal or genotoxicity studies).

In other words, Dr. Charles is a toxicologist who admits he is not an expert in epidemiology and that he did not review the animal and genotoxicity studies, yet he paradoxically seeks to opine that

Roundup is capable of causing NHL allegedly based on epidemiology, animal, and genotoxicity studies. The Court should not permit him to offer these opinions.

In an attempt to rescue Dr. Charles's flawed general causation opinions, Plaintiff contends that Dr. Charles also claims to have reviewed the IARC Monograph. *See* Opposition at 11. But that is beside the point. As this Court has previously recognized, because the "IARC inquiry is different in kind" from the general causation question a jury will be tasked with answering in this case, "expert opinions that go no further than IARC's analysis will be excluded." *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d at 1109, 1115. Dr. Charles's reliance on IARC does not save Dr. Charles's opinions and does nothing to change Dr. Charles's admission that to form his general causation opinion, he cherry-picked a fraction of the relevant data, much of which was not even relevant to Plaintiff's particular cancer. Dr. Charles's general causation opinion should be excluded as unreliable. *See, e.g.*, *Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 475 (1st Cir. 2016) (an expert's cherry-picking of certain studies and "unwillingness to engage with conflicting studies (irrespective of whether she was able to or not) made it impossible for the district court to ensure that her opinion was actually based on scientifically reliable evidence"); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No II)*, 892 F.3d 624, 634 (4th Cir. 2018) (finding the plaintiffs' statistician unreliable where he omitted statistically significant values from his calculations in a results-driven effort to reach a probability value that favored the plaintiffs).

### B.  Dr. Charles's Specific Causation Opinion is Unreliable.

Even if Dr. Charles were qualified to offer opinions on specific causation, the Court should still exclude these opinions for at least two independent reasons.

#### 1.  Dr. Charles bases his specific causation opinion on a flawed and speculative "exposure days" estimate.

Dr. Charles's methodology for calculating Plaintiff's exposure to Roundup is fundamentally flawed for two separate reasons set forth in Monsanto's motion.

*First*, Dr. Charles bases this calculation on unreliable data. According to Dr. Charles, to be at an increased risk of NHL, a person needs to use Roundup for at least two eight-hour days (*i.e.,* 16 hours) per year or ten 8-hour days (*i.e.,* 80 hours) in his or her lifetime, thresholds Dr. Charles

determined based on two Roundup epidemiology odds ratios from the McDuffie and Eriksson epidemiology studies. *See* White Decl., Ex. B, Charles *Engilis* Dep. at 141:6-142:10. As explained in Monsanto's motion, however, the odds ratios from McDuffie and Eriksson on which Dr. Charles relied are fundamentally unreliable because they were not adjusted for other pesticide use. *See* White Decl., Ex. D, Charles *Ferro* Dep. at 313:15-315:3; 319:15-327:14; 362:15-23

Plaintiff in his Opposition makes much of the fact that this Court permitted some of the plaintiff's experts in the *Hardeman* trial to discuss the unadjusted odds ratios from the McDuffie and Eriksson studies. *See* Opposition at 11, 14-15. But this Court did not permit those experts to use the unadjusted odds ratios in the manner that Dr. Charles seeks to use them in this case. In fact, although this Court has permitted some experts to discuss *McDuffie* and *Eriksson* to support their general causation opinions, *see* Haberman Decl. in Support of Plaintiff's Opposition, Ex. J at 971:5-11 ("he can say what *McDuffie* and *Eriksson* said in his general causation opinion."), it has made clear that an expert like Dr. Charles cannot "during his specific causation opinion . . . quantify the risk . . . that somebody experiences based on the amount of glyphosate that they were exposed to." *Id.* at 971:12-19; *see also* White Decl., Ex. F, Pretrial Order No. 85 at 7-8 ("it is not scientifically sound to quantify [a] risk and assign it to a particular plaintiff using the unadjusted numbers from McDuffie and Eriksson."). Accordingly, like prior experts in this MDL, Dr. Charles should be precluded from testifying that "the McDuffie and Eriksson studies stand for the proposition that if someone uses Roundup more than two days per year or more than ten days in their lifetime, their risk of developing NHL doubles." White Decl., Ex. F, Pretrial Order No. 85 at 7-8. The Court should also preclude Dr. Charles, like other plaintiffs experts in the MDL, from "testify[ing] that glyphosate is a substantial causative factor for anyone who exceeds two days per year or ten lifetime days of Roundup use, because that conclusion is . . . based on unadjusted data" and is thus scientifically unsound and unreliable. *Id.* at 8.

**Second**, unlike experts in past Roundup cases, Dr. Charles assumed the "worst-possible case" to calculate Plaintiff's exposure, meaning that when he encountered any discrepancy in the amount of time Plaintiff claimed he sprayed Roundup in a given day or given year, Dr. Charles always based his estimate on the higher number. *See, e.g.,* White Decl., Ex. B, Charles *Engilis* Dep. at 123:2-127:9

(conceding that he assumed Plaintiff sprayed for 31 years despite Plaintiff's sworn affidavit in which Plaintiff stated that he sprayed for 26 years and testifying that his assessment assumes the "worst case" scenario); Ex. D, Charles *Ferro* Dep. at 255:1-258:17 (testifying that his assessment is based on the absolute "worst-possible case"). Plaintiff emphasizes that Dr. Charles based his estimate on Plaintiff's sworn testimony. Opposition at 13 ("There is nothing unreliable about relying on Plaintiff's deposition testimony and Plaintiff's Fact Sheet—both *sworn* statements that documented Plaintiff's Roundup usage.") (emphasis in original). But the fact that Dr. Charles began his speculative journey into the "worst-possible case" with Plaintiff's testimony does not render it any less unreliable or unhelpful. Dr. Charles's methodology of assuming the "worst-possible case" when he encountered any discrepancy exaggerated Plaintiff's use and exposure and is not scientific.

Moreover, the fact that Dr. Charles claims that this "worst-case scenario" approach is how regulators assess risk in the "real world," does nothing to save his specific causation opinions. *See* Opposition at 14; *see also* White Decl., Ex. D, Charles *Ferro* Dep. at 258:3-9 ("Again, as a toxicologist, according to my training and how I see in my science in my field, we go for worst-case scenario. Okay? If there is a two-hour exposure versus a three-hour exposure, I take the three-hour. That's my training. You – you calculate – EPA also does that. The worst-case scenario, what will happen."). Dr. Charles's purpose in assessing risk in this case, unlike a regulator's, is not to set a limit to protect the general public from exposure to a chemical. Instead, Plaintiff has designated Dr. Charles to opine on Plaintiff's *specific* and *individualized* risk (*i.e.,* to offer a specific causation opinion), and an assessment of the "worst-case scenario" has no bearing on that individualized assessment. Dr. Charles's assumption of the "worst-possible case" admittedly resulted in rank overestimation of Plaintiff's exposure days, rendering his assessment of Plaintiff's risk in this case unreliable and unhelpful to the jury.

> **2. Dr. Charles did not assess Plaintiff's absorbed doses as he must to reliably opine on specific causation.**

Dr. Charles's specific causation assessment also is inherently unreliable and unhelpful to the jury because it does not actually account for dose—*i.e.,* the amount of Roundup (if any) that Plaintiff allegedly absorbed in his body. Plaintiff argues that Dr. Charles's exposure days assessment is a "dose-response analysis" that did account for dose. *See* Opposition at 13, 16-17. That characterization is

wrong. Dr. Charles did not assess dose in this case. Instead, again, he merely identified the number of days he thought, in the "worst-possible case," Plaintiff used Roundup, and he assessed whether this number was greater than two eight-hour days of Roundup use per year or ten total eight-hour days of Roundup use in Plaintiff's lifetime.

Dr. Charles adopted this simplistic approach despite acknowledging that an assessment of absorbed dose is critical in any toxicological causation analysis because a chemical cannot cause cancers like NHL unless it is absorbed through the skin and enters the blood stream. White Decl., Ex. B, Charles *Engilis* Dep. at 41:2-8 (admitting that whether "someone's exposure to glyphosate puts them at a risk of cancer is dependent on the amount and duration of the absorbed dose."); Ex. D, Charles *Ferro* Dep. at 109:17-25; 123:23-124:1 (agreeing that to have any effect on a person's body, "it is necessary to have an internal dose."). Courts and other Roundup experts agree about the importance of assessing absorbed dose in a specific causation analysis.[2] And yet, despite acknowledging the critical importance of absorbed dose, Dr. Charles admitted he does not "know the dose" of glyphosate, if any, that Plaintiff allegedly experienced in this case, and he has no opinion "about the amount of glyphosate that needs to enter someone's body to increase their risk of NHL." White Decl., Ex. B, Charles *Engilis* Dep. at 30:19-32:23; 38:22-41:8; 118:11-119:9; Ex. D, Charles *Ferro* Dep. at 29:11-30:15; 239:16-240:24; 272:25-273:19.

Plaintiff claims that Dr. Charles "considered the mode of [his] Roundup application and whether [he] used any protection." Opposition at 4. He also claims that Dr. Charles "considered the absorption, distribution, [and] metabolism of glyphosate exposure." *Id.* But Dr. Charles's specific causation opinion does not actually account for any of these factors, all of which would affect absorbed dose. Instead, again, Dr. Charles's specific causation opinion is based exclusively on the number of hours or days, in a "worst-possible case," that Plaintiff spent spraying Roundup, without any

---

[2]   White Decl., Ex. G, Portier *Hardeman* Dep. at 52:2-12 ("for a chemical to cause cancer, it has to be absorbed" and enter the bloodstream); Ex. H, Sawyer *Cervantes* Dep. at 93:22-25; 94:1-100:3 (admitting that Roundup exposure can be harmful only if it is absorbed into the body); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005) ("Dose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect."); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 770-73 (Tex. 2007) (discussing importance of dose on causation inquiry and reversing judgment in Plaintiff's favor following jury trial where Plaintiff did not establish sufficient dose to cause alleged injuries).

assessment of the conditions of Plaintiff's spraying or the amounts of Roundup (if any) that absorbed through Plaintiff's skin.

Plaintiff further asserts that it was sufficient for Dr. Charles to simply "assume" that Plaintiff received a sufficient absorbed dose of Roundup because he eventually developed NHL. *See* Opposition at 17 ("Dr. Charles clarified that based on use-data, it was reasonable to assume a systemic dose."). This is the antithesis of a reliable opinion on causation: it "assumes" an association between cause and effect without any evidence that the parties were exposed to enough of the "cause" to establish the supposed "effect." *See Claar v. Burlington N. R.R.*, 29 F.3d 499, 502-03 (9th Cir. 1994) ("Coming to a firm conclusion first and then doing research to support it is the antithesis of the [scientific] method."); *In re Zoloft Prods. Liab. Litig.*, 858 F.3d 787, 796-800 (3d Cir. 2017) (excluding "inconsistent" and "conclusion-driven" analysis). Dr. Charles's approach to specific causation is especially problematic given his concession that people can be exposed to Roundup but not receive a dose capable of causing harm, and that it is possible Plaintiff's doses were below any level capable of causing harm. *See* White Decl., Ex. B, Charles *Engilis* Dep. at 39:15-41:8; Ex. D, Charles *Ferro* Dep. at 26:7-15; 28:21-23; 29:3-6; 272:25-273:19. Dr. Charles thus agreed that it is possible that Plaintiff, despite his alleged "exposures" to Roundup (measured by Dr. Charles in "exposure days"), never received a sufficient absorbed dose to be at a significantly increased risk of cancer (assuming, as Plaintiff's wrongly contend, that Roundup is capable of causing cancer). Dr. Charles's approach to specific causation is speculative and unreliable, and it should be excluded.

### III. Dr. Charles's Opinions On Cancer "Promotion" And On The George Study Are Unreliable.

In response to Monsanto's challenge to Dr. Charles's opinion that Roundup is capable of "promoting" cancer, which is based entirely on a single mouse study known as the George study, Plaintiff primarily relies on the fact that other experts have been permitted to offer this opinion in past Roundup cases. *See* Opposition at 17-19. To that end, he claims that the courts' orders in *Johnson v. Monsanto* (California) and *Alesi v. Monsanto* (Missouri) rejected Monsanto's "identical arguments" on this point. *Id.* at 17. Not so.

For the reasons discussed in Monsanto's motion, the Court should not permit any of Plaintiff's experts (including Dr. Charles) to offer the unproven hypothesis, based on the flawed George mouse study, that Roundup is a cancer "promoter" in humans. But the Court should at least preclude Dr. Charles specifically from offering opinions on this topic because he (unlike some of the plaintiffs' experts in other Roundup cases) **has not even read the George study.** *See* White Decl., Ex. B, Charles *Engilis* Dep. at 135:14-136:1. As Dr. Charles himself agreed, to reliably "evaluate the actual study data from George 2010" and to offer reliable opinions about it, an expert would first "have to read the underlying study." White Decl., Ex. D, Charles *Ferro* Dep. at 293:18-294:1. Because Dr. Charles has not read or analyzed the George study, any opinions that he purports to offer about the study (including that Roundup is a cancer "promoter" in humans, generally, or that Roundup "promoted" Plaintiff's cancer, specifically) should be excluded based on his own admissions as unsupported, speculative, and unreliable.

**IV.  Plaintiff Withdrew Dr. Charles's Opinions On Alleged Effects On The Reproductive System And On Plaintiff's Other Cancers.**

Plaintiff concedes that he will not elicit from Dr. Charles any opinions on "male reproductive effects allegedly caused by Roundup" or the opinion that "Roundup caused or contributed to Plaintiff's bladder or skin cancers." Opposition at 7, n.3. Accordingly, Monsanto's motion on these points should be granted as unopposed.

**CONCLUSION**

For the reasons set forth above and in Monsanto's opening motion, the Court should grant Monsanto's Motion to Exclude Testimony of Ambrose K. Charles, Ph.D and exclude the opinions of this witness in their entirety.

Dated:  December 21, 2022                    Respectfully submitted,

/s/ *Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of December, 2022, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Jed P. White
Jed P. White