Stephanie Dilworth (SBN 342109)
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Tel:  (415) 626-3939
Fax:  (415) 875-5700
sdilworth@jonesday.com

Jeffrey J. Jones (*pro hac vice*)
Margaret M. Dengler (*pro hac vice*)
JONES DAY
150 West Jefferson, Suite 2100
Detroit, Michigan 48226
Tel:  (313) 733-3939
Fax:  (313) 230-7997
jjjones@jonesday.com
mdengler@jonesday.com

*Attorneys for Defendant The Scotts Company LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Paul Schrag, v. Monsanto Company, et al.*, Case No. 3:22-cv-08888-VC | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**THE SCOTTS COMPANY LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:   March 2, 2023<br>Time:  10:00 am<br>Place:  Via Zoom Webinar<br>Judge:  Hon. Vince G. Chhabria |

## <u>NOTICE OF MOTION</u>

**PLEASE TAKE NOTICE THAT** on March 2, 2023, at 10:00 am, via Zoom Webinar ID: 161 285 7657, Password: 547298, Defendant The Scotts Company LLC moves this Court pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint (Count VII) against Scotts with prejudice.  This Motion is based on this Notice of Motion and Motion and the Memorandum below.

Dated:  January 19, 2022

Respectfully Submitted,

*/s/ Jeffrey J. Jones*
Stephanie Dilworth (SBN 342109)
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Tel:  (415) 626-3939
Fax:  (415) 875-5700
sdilworth@jonesday.com

Jeffrey J. Jones (*pro hac vice*)
Margaret M. Dengler (*pro hac vice*)
JONES DAY
150 West Jefferson, Suite 2100
Detroit, Michigan 48226
Tel:  (313) 733-3939
Fax:  (313) 230-7997
jjjones@jonesday.com
mdengler@jonesday.com

*Counsel for Defendant*
*The Scotts Company LLC*

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................................ I

TABLE OF CONTENTS ........................................................................................................... II

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 1

I.    PLAINTIFF'S PLEADING FAILS TO MEET THE REQUIREMENTS OF
FEDERAL RULE OF CIVIL PROCEDURE 8 AS DIRECTED TO SCOTTS. ................. 1

II.   PLAINTIFF MUST PLEAD FACTS TO DEMONSTRATE THAT SCOTTS'
ROLE AS MARKETING AGENT QUALIFIES FOR STRICT LIABILITY
CLAIMS UNDER FLORIDA LAW. .................................................................................. 4

III.  ANY FAILURE TO WARN THEORY FAILS BECAUSE PLAINTIFF HAS NOT
ALLEGED SPECIFIC KNOWLEDGE THAT WOULD WARRANT SUCH A
CLAIM DIRECTED TO SCOTTS. ..................................................................................... 7

IV.  PLAINTIFF'S CLAIM IS PREEMPTED BY FEDERAL LAW. .................................... 10

CONCLUSION ......................................................................................................................... 13

DEFENDANT THE SCOTTS COMPANY LLC'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page

CASES

*A.B. v. Hilton Worldwide Holdings Inc.*,
    484 F. Supp. 3d 921 (D. Or. 2020) .........................................................................3

*Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*,
    407 F. Supp. 3d 1016 (D. Haw. 2019) ...................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................3

*Barmapov v. Amuial*,
    986 F.3d 1321 (11th Cir. 2021) .............................................................................3

*Barnes v. AstraZeneca Pharm. LP*,
    253 F. Supp. 3d 1168 (N.D. Ga. 2017)..................................................................4

*Bates v. Dow Agrosciences LLC*,
    544 U.S. 431 (2005).............................................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................3

*Beyond Pesticides v. Monsanto Co.*,
    311 F. Supp. 3d 82 (D.D.C. 2018) .......................................................................12

*Blitz v. Monsanto Co.*,
    317 F. Supp. 3d 1042 (W.D. Wis. 2018) .............................................................12

*Brown v. DePuy Orthopaedics, Inc.*,
    978 F. Supp. 2d 1266 (M.D. Fla. 2013)................................................................9

*Carias v. Monsanto Co.*,
    No. 15CV3677JMAGRB, 2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016)............12

*Clay v. Wyeth*,
    No. 5:04-CV-192-OC-10GRJ, 2004 WL 7330338 (M.D. Fla. Aug. 17, 2004)........5

DEFENDANT THE SCOTTS COMPANY LLC'S MOTION TO DISMISS

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) .................................................................................3

*Devore v. Howmedica Osteonics Corp.*,
    658 F. Supp. 2d 1372 (M.D. Fla. 2009)..................................................................4

*Epstein v. Gilead Scis., Inc.*,
    441 F. Supp. 3d 1277 (S.D. Fla. 2020) ..................................................................5

*Faddish v. Buffalo Pumps*,
    881 F. Supp. 2d 1361 (S.D. Fla. 2012) ..................................................................9

*Ferayorni v. Hyundai Motor Co.*,
    711 So. 2d 1167 (Fla. Dist. Ct. App. 1998) ................................................7, 8, 10

*Florio v. Manitex Skycrane, LLC*,
    6:07-CV-1700-ORL-28, 2010 WL 5137626 (M.D. Fla. Dec. 10, 2010)..................9

*Gomez v. Pfizer, Inc.*,
    675 F. Supp. 2d 1159 (S.D. Fla. 2009) ..................................................................2

*Grundberg v. Upjohn Co.*,
    813 P.2d 89 (Utah 1991) .......................................................................................9

*Hardeman v. Monsanto Co.*,
    997 F.3d 941 (9th Cir. 2021), *cert. denied*, 142 S.Ct. 2384 (2022)...................8, 12

*Hernandez v. Aurobindo Pharma USA, Inc.*,
    582 F. Supp. 3d 1192 (M.D. Fla. 2022).....................................................11, 12, 13

*In re Roundup Prod. Liab. Litig.*,
    364 F. Supp. 3d 1085 (N.D. Cal. 2019) ...............................................................12

*In re Stand. Jury Instructions in Civ. Cases--Rpt. No. 13-01 (Products Liab.)*,
    160 So. 3d 869 (Fla. 2015)......................................................................................2

*In re Zantac (Ranitidine) Products Liab. Litig.*,
    510 F. Supp. 3d 1234 (S.D. Fla. 2020) ........................................................8, 9, 12

*Keum v. Virgin Am. Inc.*,
    781 F. Supp. 2d 944 (N.D. Cal. 2011) .................................................................10

*Mason v. County of Orange*,
    251 F.R.D. 562 (C.D.Cal. 2008) .............................................................................3

*Mozingo v. Correct Mfg. Corp.*,
   752 F.2d 168 (5th Cir. 1985) ..................................................................6

*Papas v. Upjohn Co.*,
   985 F.2d 516 (11th Cir. 1993) (per curiam)..........................................11

*Plenger v. Alza Corp.*,
   13 Cal. Rptr. 2d 811 (Cal. App. 4th Dist. 1992)...................................9

*Rivera v. Baby Trend, Inc.*,
   914 So. 2d 1102 (Fla. Dist. Ct. App. 2005) .......................................5, 6

*Santidrian v. Landmark Custom Ranches, Inc.*,
   405 Fed. Appx. 381 (11th Cir. 2010) (unpublished)...............................6

*Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555 (9th Cir. 1995) ........................12

*United States v. Planes*,
   No. 8:18-CV-2726-T-23TGW, 2019 WL 3024895 (M.D. Fla. July 11, 2019) ........................8

*Vesta Const. and Design, L.L.C. v. Lotspeich & Associates, Inc.*,
   974 So. 2d 1176 (Fla. 5th Dist. App. 2008)...........................................6

*Weeks v. Home Depot U.S.A., Inc.*,
   No. CV 19-6780 FMO (ASX), 2020 WL 5947811 (C.D. Cal. Sept. 18, 2020) ....................12

*West v. Caterpillar Tractor Co.*,
   336 So.2d 80 (Fla.1976)......................................................................2, 4

*Wilssens v. Medtronic, Inc.*,
   09-60792-CIV, 2009 WL 9151079 (S.D. Fla. July 23, 2009) ..................5

## Statutes

Federal Insecticide, Fungicide, and Rodenticide Act
   7 U.S.C. § 136(q)(1)(A)........................................................................11
   7 U.S.C. § 136a(c)(5)(B)......................................................................11
   7 U.S.C. § 136v(b) ..............................................................................11

## Other Authorities

40 C.F.R. § 152.50................................................................................11

40 C.F.R. § 152.112(f)......................................................................8, 11

40 C.F.R. § 156.10(a)(5)(ii) .......................................................................................................11

Federal Rule of Civil Procedure 8 ........................................................................................1, 3, 4

Restatement (Third) of Agency, § 7.01 Comment d (2006) ............................................................6

DEFENDANT THE SCOTTS COMPANY LLC'S MOTION TO DISMISS

**INTRODUCTION**

In a few short conclusory paragraphs, Plaintiff Paul Schrag attempts to bring a new liability claim against The Scotts Company LLC ("Scotts")—embroiling Scotts in the national Roundup litigation and seeking to impose liability on Scotts for the first time.[1]   This, Plaintiff cannot do. Specifically, Plaintiff seeks to raise significant strict liability allegations against Scotts but has provided almost no supporting factual allegations directed to Scotts.   In doing so, Plaintiff's Complaint fails to meet the mandates of Federal Rule of Civil Procedure 8(a)(2).  Further, Plaintiff has failed to establish essential elements of a strict liability claim against Scotts—including facts specific to Scotts' relationship to the Roundup® products purportedly at issue (*see* Compl. ¶ 3) (hereinafter the "Products"), and any purported knowledge on the part of Scotts that would be sufficient to state a claim.  Finally, setting that aside, Plaintiff's claims against Scotts are preempted under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA).  For these reasons, Scotts respectfully requests that this Court dismiss Plaintiff's Count VII against Scotts.

**ARGUMENT**

I.   **PLAINTIFF'S PLEADING FAILS TO MEET THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 8 AS DIRECTED TO SCOTTS.**

Out of the 110 paragraphs in Plaintiff's general allegations, Scotts is mentioned in only two of them.   Plaintiff also alleges only one count against Scotts, which consists of eight conclusory allegations.  Based on those few lone deficient paragraphs, Plaintiff attempts to add Scotts to the Roundup litigation and hold Scotts liable for Monsanto's alleged actions in the

---

[1] Scotts was previously named in a few other Roundup cases but plaintiff's counsel dismissed Scotts from those cases or elected not to serve or prosecute the actions against Scotts.  Counsel for Scotts met with plaintiff's counsel here and asked them to dismiss Scotts, but counsel have not yet made a determination to do so.   Scotts is named in a separate NNG complaint, but that is a different set of claims and is not part of the Roundup MDL.  Scotts' motion to dismiss those claims is also pending.

DEFENDANT THE SCOTTS COMPANY LLC'S MOTION TO DISMISS

manufacturing and registration of the Products.  Scotts is not a defendant in any other actions currently pending in the MDL and Plaintiff's deficient Complaint cannot justify adding Scotts to it here.

Plaintiff's sole claim against Scotts is one of strict liability and is premised on Plaintiff's conclusory allegation that Scotts is engaged in the business of "marketing, selling and distributing glyphosate-based products." Compl. ¶ 196.  That summary claim is the extent of Plaintiff's theory. If such bare bones pleading can add companies to the Roundup litigation, potentially hundreds of companies could be named.  Under Florida law, however, the plaintiff must set forth something more—specific facts that establish the seller's relationship to the product in question, knowledge regarding the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages.  *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 87 (Fla. 1976).

In products liability, "[d]efective design, manufacture and failure to warn are distinct theories," and complaints are required to put defendant on notice of which is alleged. *Gomez v. Pfizer, Inc.*, 675 F. Supp. 2d 1159, 1163 (S.D. Fla. 2009). The brevity of Plaintiff's Complaint as to Scotts is especially apparent when trying to determine what type of strict liability claim is alleged against Scotts.  This is crucial because the distinctions among the families of defects provide separate rules and pleading requirements.  *See infra* Section III; *see also In re Stand. Jury Instructions in Civ. Cases--Rpt. No. 13-01 (Products Liab.)*, 160 So. 3d 869, 873-75 (Fla. 2015).

Here, Plaintiff includes no specific facts as to Scotts' relationship with the Products or Monsanto, *see infra* Section II, or what specific role Scotts served and under what terms.  The complaint repeatedly alludes to a failure to warn claim (which, as set forth below, fails on other grounds as directed to Scotts), but Plaintiff does not actually articulate a specific strict liability

DEFENDANT THE SCOTTS COMPANY LLC'S MOTION TO DISMISS

theory against Scotts.  Even in Plaintiff's apparent failure to warn theory, Plaintiff offers no specific facts regarding what statements from Scotts are purportedly at issue or from which entity.

As such, Plaintiff's Complaint offends the principles of Federal Rule of Civil Procedure 8(a)(2) under *Twombly* and *Iqbal*.  Fed. R. Civ. P. 8(a)(2);  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Complaints are deficient under these standards when they fail to connect the factual allegations to the elements comprising a plaintiff's claims, *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 943 (D. Or. 2020), or when they are comprised of "everyone did everything" allegations that fail to differentiate between defendants when alleging the elements of plaintiff's claims—as Plaintiff's Complaint does here.  *See, e.g., Destfino v. Reiswig*, 630 F.3d 952, 958-59 (9th Cir. 2011); *Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 407 F. Supp. 3d 1016, 1034-35 (D. Haw. 2019).  In the 132 general allegations, Scotts is mentioned in only two of them.  *See* Compl. ¶¶ 22-132.  The Complaint contains no well-pled factual allegations specific to Scotts.  *See infra* Section II (failing to accurately plead Scotts' relationship with Monsanto); Section III (failing to plead requisite knowledge).

Further, a complaint, like Plaintiff's here, is deficient where it "fails to inform . . . Defendants of the nature of the liability theories they face in this action" by not sufficiently separating different claims for relief into distinct counts.  *Mason v. County of Orange*, 251 F.R.D. 562, 563 (C.D.Cal. 2008*); Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (holding that a common type of shotgun pleading is "a complaint that does not separate 'each cause of action or claim for relief' into a different count") (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)).  And Courts will dismiss strict liability claims where a complaint incorporates all three different types of strict liability into a single count without any

attempt to distinguish among them. *Barnes v. AstraZeneca Pharm. LP*, 253 F. Supp. 3d 1168, 1170 (N.D. Ga. 2017) (dismissing strict liability claim as shotgun pleading); *Gomez*, 675 F. Supp. 2d 1159.

Here, Plaintiff's strict liability count against Scotts (Count VII) does not distinguish among the three families of strict liability claims. Instead, Count VII states in conclusory fashion against Scotts that the Products "were defective and unreasonable for *one or more* of the following reasons." Compl. ¶ 199. Plaintiff's Count VII is essentially unlimited as to potential strict liability theories against Scotts, does not specify whether the theories sound in manufacturing defect, design defect, or failure to warn, and contains no specific supporting factual allegations directed to Scotts for any specific liability theory. Accordingly, this Court should dismiss Plaintiff's Count VII here for failure to meet the requirements of Fed. R. Civ. P. 8(a)(2).

## II.   PLAINTIFF MUST PLEAD FACTS TO DEMONSTRATE THAT SCOTTS' ROLE AS MARKETING AGENT QUALIFIES FOR STRICT LIABILITY CLAIMS UNDER FLORIDA LAW.

A necessary precondition for any valid strict liability claim against a marketing agent or distributor is establishing the agent/distributor's relationship to the product in question. *West*, 336 So.2d at 87. Florida courts have considered numerous factors in determining whether a defendant is part of a product's distributive chain, but have consistently required that the plaintiff prove that the defendant "possessed some element of 'control over the allegedly defective product.'" *Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372, 1379 (M.D. Fla. 2009) (quoting *Rivera v. Baby Trend, Inc.*, 914 So. 2d 1102, 1104 (Fla. Dist. Ct. App. 2005)). Relevant inquiries into whether a defendant has the requisite "control" include "whether the person or entity placed the product in the stream of commerce, is in a position to control the risk of harm a product might cause once put into the stream of commerce, or either created or assumed the risk of harm for the

defective product." *Id.*  Key to this analysis is whether the defendant's "involvement had any causal relationship with the alleged defect." *Rivera*, 914 So. 2d at 1104.  Plaintiff does little or nothing to address these requirements.

Here, Plaintiff pleads no facts directed to the relevant inquiries under Florida law. Plaintiff's *only* allegation to establish a "relationship to the product" is the bald statement that Scotts is a "marketer" and "distributor."  Compl. ¶¶ 8, 19, 125, 196.  But Plaintiff has not provided a *single* supporting factual allegation for these conclusory statements.  The mere label of "distributor" is not enough without additional supporting factual allegations.  *See Wilssens v. Medtronic, Inc.*, 09-60792-CIV, 2009 WL 9151079, at *8 (S.D. Fla. July 23, 2009) (finding that defendant sales representative was not in distributive chain based on her job title and otherwise lacked requisite involvement in design, testing, and research).  Further, an entity that markets a product, without a showing of more, is not within the chain of distribution for purposes of strict liability.  *Epstein v. Gilead Scis., Inc.*, 441 F. Supp. 3d 1277, 1282 (S.D. Fla. 2020); *Clay v. Wyeth*, No. 5:04-CV-192-OC-10GRJ, 2004 WL 7330338, at *11 (M.D. Fla. Aug. 17, 2004).

In *Siemens Energy & Automation, Inc. v. Medina*, for example, the Court found that the defendant was not part of the distributive chain where that defendant provided printed specifications to the purchaser of an electric conductor and altered certain price information on the specifications form.  719 So. 2d 312, 315 (Fla. Dist. Ct. App. 1998).  There, the Court granted judgment to the defendant because the plaintiff failed to prove that the broker's "involvement" with the product "had any causal relationship with the alleged defect," since he was merely a "conduit of information" between the manufacturer and consumer.  *Id.* at 315; *compare Rivera*, 914 So. 2d at 1104-05 (finding defendant corporation to be in distributive chain because, among other things, it exercised control over the product's design, was the product's actual seller, and

marketed the product under the corporation's own name).

Here, Plaintiff does not plead that Scotts takes title to the Products in the chain of distribution (it generally does not), that Scotts purchases the Products and resells them (it generally does not), or that Scotts acquires the products and adds its own mark-up for profit (it generally does not). Nor does Plaintiff allege what specific role Scotts has in distributing or marketing the Products or under what terms. Under Florida law, it is important to distinguish between entities that may serve as a mere "conduit of information" versus those that exercise a sufficient degree of "control over the allegedly defective product" to be part of the distributive chain. *Devore*, 658 F. Supp. 2d at 1379. Plaintiff has provided next to nothing regarding Scotts' role.

This matters in the context of Scotts because of Scotts' role as Monsanto's agent and the legal protections that accompany such agents—which Plaintiff ignores. Under settled law, Scotts cannot be liable for Monsanto's purported malfeasance or breach of duty. *Vesta Const. and Design, L.L.C. v. Lotspeich & Associates, Inc.*, 974 So. 2d 1176, 1180 (Fla. 5th Dist. App. 2008); Restatement (Third) of Agency, § 7.01 cmt. d (2006) ("An agent is not subject to liability for torts committed by the agent's principal that do not implicate the agent's *own* conduct.") (emphasis added). An agent's liability cannot be predicated solely on the agent's connection with the principal; there must be some direct participation in the tort, *Vesta*, 974 So. 2d at 1180, such that the agent was the "guiding spirit" or "central figure" behind the wrongful conduct alleged. *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 173 (5th Cir. 1985). In *Santidrian*, for example, the court found a plaintiff could not hold a defendant agent liable in tort or statute because the principal was disclosed and the agent defendant did not act fraudulently or otherwise wrongly. *Santidrian v. Landmark Custom Ranches, Inc.*, 405 Fed. Appx. 381, 384 (11th Cir. 2010) (unpublished).

Nowhere does the Complaint set forth specific facts alleging that Scotts did anything independently tortious separate and apart from the alleged acts of the principal (here, Monsanto) or that Scotts was the guiding figure behind or controlled the allegedly tortious conduct.  Instead, the Complaint relies only on the allegation that Scotts "marketed, distributed, and sold Monsanto Products" and otherwise states in conclusory fashion that Scotts "knew or should have known" of the purported defects produced by Monsanto's manufacture and design of the products.  Compl. ¶¶ 8, 19, 125, 196-201.  That bare bones effort should fail here.

## III.   ANY FAILURE TO WARN THEORY FAILS BECAUSE PLAINTIFF HAS NOT ALLEGED SPECIFIC KNOWLEDGE THAT WOULD WARRANT SUCH A CLAIM DIRECTED TO SCOTTS.

Although plaintiff does not delineate among the type of strict liability claims raised against Scotts, it appears Plaintiff hopes to bring a failure to warn claim against Scotts, alleging at one point that the products sold were "defective" because "[t]hey failed to provide warnings that would alert users and persons exposed to their dangerous conditions."  Compl. ¶ 199.  But that claim fails here.  Strict liability claims grounded in failure to warn require factual allegations that Scotts knew or could have known of the product's defective condition such that it would be liable for failing to act—factual allegations entirely missing from the Complaint.

Failure to warn strict liability claims have a knowledge component.  Plaintiff must allege that Scotts knew or "could have known of the product's dangerous propensities." *Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1172 (Fla. Dist. Ct. App. 1998) (quoting *Anderson v. Owens–Corning Fiberglas Corp.*, 810 P.2d 549, 558-59 (Cal. 1991)).  Plaintiff must show that the defendant either has actual knowledge "or by the application of reasonable, developed human skill and foresight should have knowledge" of the "defect" in light of the regulatory approvals for Roundup and other information available.  *Id.*  But Plaintiff's Complaint is devoid of any factual

allegations as to Scotts' supposed knowledge or what Scotts "could have known." In fact, Plaintiff spends 42 paragraphs discussing *Monsanto's* alleged "knowledge about the" purported "toxicity of Roundup." Compl. ¶¶ 45-87. Scotts is not mentioned once in those paragraphs. And any alleged knowledge on the part of Monsanto cannot be imputed to Scotts. *United States v. Planes*, No. 8:18-CV-2726-T-23TGW, 2019 WL 3024895, at *10 (M.D. Fla. July 11, 2019) (citing Restatement (Third) of Agency § 5.03 cmt. g (2006)).

Moreover, Plaintiff fails to address their own concessions regarding the many government approvals that Roundup has received and the role such approvals play in their failure to warn claim. As Plaintiff concedes, the "EPA registered Roundup for distribution, sale, and manufacture in the United States and the state of Florida." Compl. ¶ 33. The "EPA will approve an application" for registration "only if" "[t]he Agency has determined that the product is not misbranded as that term is defined in FIFRA." 40 C.F.R. §152.112(f). In making these determinations, the EPA evaluates cancer risk. *See* EPA, Evaluating Pesticides for Carcinogenic Potential, https://perma.cc/VUH4-2G4U. And the "EPA has repeatedly approved the use of glyphosate as a pesticide, each time concluding that it is not likely to be carcinogenic to humans." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 951 (9th Cir. 2021), *cert. denied*, 142 S.Ct. 2384 (2022).

Plaintiff vaguely alleges that Scotts had "superior knowledge" to users (which is irrelevant here), *see* Compl. ¶ 126, but ignores the EPA and the long history of regulatory approvals for Roundup. Plaintiff does not and cannot allege that Scotts had "superior knowledge" to the EPA. To the contrary, Scotts had every right to rely on such regulatory approvals. Scotts is not the registrant for glyphosate. Scotts serves as an agent for Monsanto. Knowledge of a "defect" requires showing Scotts knew the EPA was wrong. *Ferayorni*, 711 So. 2d at 1172; *In re Zantac (Ranitidine) Products Liab. Litig.,* 510 F. Supp. 3d 1234, 1253 (S.D. Fla. 2020) (dismissing strict

liability claims because "Plaintiffs have not plausibly alleged that the Defendants [retailers and distributors] *knew* that the [products] were misbranded or otherwise could have detected the alleged defects" due to the FDA approvals process).  Florida courts have rejected the contention that third parties have the same duty to warn as the registrants of products with responsibility for manufacturing the products under specifications designed by the manufacturer.  *In re Zantac (Ranitidine) Products Liab. Litig.,* 510 F. Supp. 3d at 1253 (dismissing strict liability claims against retailers and distributors because they lacked knowledge of alleged labeling and design defects); *Florio v. Manitex Skycrane, LLC*, 6:07-CV-1700-ORL-28, 2010 WL 5137626, at *6-7 (M.D. Fla. Dec. 10, 2010) (holding that successor corporation did not have any duty to warn because it was not "in a position to take any safety measure"); *Faddish v. Buffalo Pumps*, 881 F. Supp. 2d 1361, 1371 (S.D. Fla. 2012) (holding that component parts manufacturer had no duty to warn of risks of finished product manufactured by another).

Absent other allegations, Scotts could rely on EPA approvals and pronouncements that the products were safe because that was the best available regulatory knowledge to determine the product's risks.  *See, e.g., Brown v. DePuy Orthopaedics, Inc.*, 978 F. Supp. 2d 1266, 1272 (M.D. Fla. 2013) (finding agency approvals favor the absence of a knowable product defect); *Grundberg v. Upjohn Co.*, 813 P.2d 89 (Utah 1991) (finding that parties in distributive chain for FDA-approved drugs are not subject to strict liability because the agency is well-suited to determine known or knowable risks); *Plenger v. Alza Corp.*, 13 Cal. Rptr. 2d 811 (Cal. App. 4th Dist. 1992) (same).

Thus, Plaintiff must plead facts to show that Scotts knew or came to believe that the EPA's regulatory determinations were wrong, that the EPA's determinations could not be supported, and that Scotts therefore "knew" the Products were "defective" notwithstanding such regulatory

approvals. Plaintiff never does so. Indeed, Plaintiff fails to allege any specific knowledge on behalf of Scotts regarding the EPA or the dangers of Roundup in light of EPA's approvals. Simply pleading Scotts had "superior" knowledge unsupported by "any other factual allegations" "is conclusory" and contradicted by Plaintiff's own allegations. *Keum v. Virgin Am. Inc.*, 781 F. Supp. 2d 944, 951 (N.D. Cal. 2011).

To the extent Plaintiff is alleging Scotts necessarily had knowledge merely because Scotts served some unspecified role as distributor or marketer, that claim fails too. Such an allegation would make any distributor "the virtual insurer of its product's safe use, a result that is not consonant with established principles underlying strict liability." *Ferayorni*, 711 So. 2d at 1172 (citing *Anderson v. Owens–Corning*, 810 P.2d at 555). Under Florida law, distributors should not be "reduced to insurers; [they] are not required to warn of every risk which might be remotely suggested by any obscure tidbit of available knowledge, but only of those risks which are discoverable in light of the 'generally recognized and prevailing best' knowledge available." *Id.* Thus, Plaintiff's claim fails under Florida law.

## IV.   PLAINTIFF'S CLAIM IS PREEMPTED BY FEDERAL LAW.

To the extent that Plaintiff's vague claim against Scotts can be discerned at all, it is, at best, premised on the supposed failure to provide additional (unspecified) warnings on the labeling and packaging of the Products. *See* Compl. ¶¶ 126, 199 (alleging that the Products Scotts sold were purportedly defective and unreasonably dangerous because they "failed to provide warnings that would alert users and persons exposed to their dangerous conditions"). But Scotts is not the registrant of the products and does not does not control the labels on the Products—a point that Plaintiff concedes. Thus, Plaintiff cannot hold Scotts liable for a strict liability claim based on the Products' labeling.

As Plaintiff acknowledges, under FIFRA, all pesticides sold in the United States must be registered with the EPA. Compl. ¶ 30 (citing 7 U.S.C. § 136a(a)). In the registration application, manufacturers submit draft label language addressing a number of different topics, including the ingredients, directions for use, and any claims they intend to make on the label. 40 C.F.R. § 152.50 (1999). Prior to registering a pesticide, the EPA must find that the pesticide's labeling complies with FIFRA's requirements. 7 U.S.C. § 136a(c)(5)(B). FIFRA's requirements include a requirement that the pesticide is not "misbranded," 40 C.F.R. § 152.112(f), meaning that it is not "false or misleading," 7 U.S.C. § 136(q)(1)(A); 40 C.F.R. § 156.10(a)(5)(ii), and the EPA reviews labels for compliance with that standard. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 438 (2005) (discussing these requirements). Further, under FIFRA, "no person in any State may distribute or sell to any person any pesticide that is not registered under this subchapter." 7 U.S.C. § 136a. And, as Plaintiff notes, the "EPA registered Roundup for distribution, sale, and manufacture in the United States and the state of Florida." Compl. ¶ 33.

Plaintiff admits that Monsanto is "the registrant" of the Products—not Scotts. *See* Compl. ¶ 34. Therefore, Monsanto—not Scotts—is responsible for the content of the product labeling. *See id.* Plaintiff does not allege that Scotts has any control over the registration of the Products or the content of their labels. FIFRA expressly prohibits states from "impos[ing] . . . any requirements for labeling or packaging in addition to or different from those required" by FIFRA. 7 U.S.C. § 136v(b). This preemption provision applies not only to claims brought under state statutes and regulations, but to state common law claims as well. *Bates*, 544 U.S. at 443; *Papas v. Upjohn Co.*, 985 F.2d 516, 520 (11th Cir. 1993) (per curiam) (applying Florida law and finding FIFRA preempted a strict liability failure to warn claim).

Here, Scotts cannot be held liable under a strict liability theory premised on the labeling of

the Products when Scotts is not the registrant of the Products and does not control the Products' labels.  Indeed, the Ninth Circuit has held that state law claims against distributors are preempted under FIFRA where there is "no evidence that [the distributor] made any warranty that varied from the [m]anufacturers' labels." *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 563 (9th Cir. 1995).  In so holding, the Ninth Circuit found that distributors cannot be required "to research the accuracy of each manufacturer's label." *Id.*; *see also All-Pure Chem. Co. v. White*, 127 Wash. 2d 1, 11, 896 P.2d 697, 702 (1995) (finding claim against non-primary registrant distributor preempted under FIFRA).  Along these same lines, "[n]umerous courts applying [a] preemption analysis have found that federal law preempted claims based upon improper labeling or defective design when the defendant lacked the ability to alter the [product's] label or design." *Hernandez v. Aurobindo Pharma USA, Inc.*, 582 F. Supp. 3d 1192, 1210 (M.D. Fla. 2022) (collecting cases in the context of FDA preemption).

Take, for example, *Hernandez*, where the court found that plaintiff's strict product liability failure to warn claim under Florida law was preempted by federal law because the defendant "was in the business of distributing and selling" and "lacked the ability" to alter the drug's label.  *Id.* at 1210; *In re Zantac (Ranitidine) Products Liab. Litig.*, 510 F. Supp. 3d at 1251 ("[C]ourts dismiss design and label-based claims against any defendant that is powerless to alter a design or alter a label.").  So too with Scotts.  Plaintiff admits that Monsanto is the "registrant" of the Products. Compl. ¶ 34.  As such, Scotts has no control over the Products' labels and Plaintiff cannot hold Scotts liable under a strict liability claim for failure to warn in the circumstances present here.

Scotts recognizes that courts, including this Court, have addressed FIFRA preemption in the context of Roundup products and have found no preemption as to some claims brought under certain state laws.  *See, e.g.*, *Hardeman*, 997 F.3d 941; *In re Roundup Prod. Liab. Litig.*, 364 F.

Supp. 3d 1085, 1089 (N.D. Cal. 2019); *Beyond Pesticides v. Monsanto Co.*, 311 F. Supp. 3d 82 (D.D.C. 2018); *Weeks v. Home Depot U.S.A., Inc.*, No. CV 19-6780 FMO (ASX), 2020 WL 5947811, at *4 (C.D. Cal. Sept. 18, 2020); *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1053 (W.D. Wis. 2018); *Carias v. Monsanto Co.*, No. 15CV3677JMAGRB, 2016 WL 6803780, at *4 (E.D.N.Y. Sept. 30, 2016).  However, those decisions do not address the issue present here where a plaintiff seeks to impose strict liability under Florida law on a distributor or marketing agent that does not control and cannot alter the product's label.  Nor do those cases address whether a failure to warn claim under Florida's strict liability common law impose requirements "in addition to or different" from those under FIFRA.  Courts across the country and courts applying Florida law have in fact addressed that question and those decisions hold that imposing common law liability in such circumstances on a distributor that cannot alter the label is preempted.  *Hernandez*, 582 F. Supp. 3d at 1210.  Plaintiff's claim against Scotts is likewise preempted here.

## CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiff's sole claim against Scotts (Count VII) with prejudice.

Dated:  January 19, 2023

Respectfully Submitted,

*/s/ Jeffrey J. Jones*

Stephanie Dilworth (SBN 342109)
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Tel:  (415) 626-3939
Fax:  (415) 875-5700
sdilworth@jonesday.com

Jeffrey J. Jones (*pro hac vice*)
Margaret M. Dengler (*pro hac vice*)
JONES DAY
150 West Jefferson, Suite 2100
Detroit, Michigan 48226
Tel:  (313) 733-3939
Fax:  (313) 230-7997
jjjones@jonesday.com
mdengler@jonesday.com

*Counsel for Defendant*
*The Scotts Company LLC*

DEFENDANT THE SCOTTS COMPANY LLC'S MOTION TO DISMISS

## **CERTIFICATE OF SERVICE**

I certify that on the January 19, 2023, I electronically filed the foregoing THE SCOTTS COMPANY LLC'S NOTICE OF AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

*/s/ Jeffrey J. Jones*
Jeffrey J. Jones

*Counsel for The Scotts Company LLC*