**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

IN RE: ROUNDUP PRODUCTS
LIABILITY LITIGATION

_____

This document relates to:

PAUL SCHRAG v. MONSANTO COMPANY;
BAYER CORPORATION; BAYER AG;
HOME DEPOT U.S.A, INC.; WALMART
INC.; and THE SCOTTS COMPANY LLC.

Member Case No.: 3:22-cv-08888-VC

_____/

MDL No. 2741
Case No.: 3:16-md-02741-VC

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE
SCOTTS COMPANY LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff, Paul Schrag, by and through undersigned counsel, files this Response to The

Scotts Company LLC ("Scotts") Motion to Dismiss Plaintiff's Complaint, and states as follows:

**INTRODUCTION AND SUMMARY**

This is a products liability case in which Mr. Schrag alleges that he was injured by his use

of Roundup, a product manufactured by Defendant Monsanto Company and distributed and sold

by Defendant Scotts. As outlined in Plaintiff's Complaint, "Defendant The Scotts Company

directly placed glyphosate-based herbicides, including Roundup products, on the market (by

selling them) for use throughout Miami-Dade County with knowledge that they would be used and

applied without inspection for defects and dangers." Compl. ¶ 198. *See also id.* ¶¶ 8, 19, 125, 126,

186.

Based on these allegations and others, the Complaint asserts a Florida common-law strict

liability claim against Scotts. As detailed below, Florida law has for decades supported such strict

liability claims against distributors of allegedly defective and dangerous products.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346     www.podhurst.com

Scotts' Motion asserts various purported grounds for dismissal, all of which lack merit. First, Scotts argues that Plaintiff's claim is not pled with sufficient specificity or particularity. *See* Mot. at 1. For example, Scotts argues that Plaintiff must explain in detail at the pleading stage which of the "families of [product] defects" he is alleging. *See id*. *See also id.* at 2-3 (contending that Plaintiff must "articulate a specific strict liability theory against Scotts"). But Plaintiff's strict liability claims are not subject to a particularity requirement or any type of heightened pleading standard.

Indeed, the specific pleading standards invoked by Scotts are directly contrary to Florida law, which undisputedly govern Plaintiff's claims here.[1] Contrary to Scotts' arguments, in Florida, a plaintiff asserting a products liability claim need not commit to a specific theory of products liability. *See*, *e.g.*, *Krywokulski v. Ethicon, Inc.*, 2010 WL 326166 at *3 (M.D. Fla. Jan. 21, 2010). This is because, as the Eleventh Circuit explained, "it would be difficult at such an early stage in the litigation for plaintiff to know whether a defect was due to a product's design or manufacture." *Bailey v. Janssen Pharmaceutical*, 288 Fed. Appx. 597, 605 (11th Cir. 2008).

Similarly, in defiance of Florida law, Scotts argues that "[u]nder Florida law . . . the plaintiff must . . . establish [specific facts including] the seller's relationship to the product in question . . ." Mot. at 2. Scotts also suggests that Plaintiff is required to plead or establish that "Scotts takes title to the Products in the chain of distribution," among other things. *Id.* at 6. But none of these purported pleading requirements find any support in Florida law.[2]

---

[1] There is no choice-of-law dispute at this stage of the case and no such dispute is asserted in Scotts' Motion. Scotts' Motion asserts that federal law preempts Plaintiff's claim to the extent the claim asserts a failure-to-warn theory of liability. But Scotts otherwise acknowledges and presumes—as it must—that Florida's substantive law of products liability applies to this case.

[2] Moreover, Scotts' Motion is littered with reference to facts that Plaintiff is supposedly required to "establish" at this stage of the litigation. But, of course, a plaintiff is not required to "establish" any ultimate facts at the pleading stage.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346    www.podhurst.com

Second, Scotts' Motion relies in significant part on *factual* assertions distinct from the allegations in Plaintiff's Complaint. These allegations are plainly premature at the pleading stage. For example, Scotts appear to assert that it is "Monsanto's agent" and therefore shielded from liability. But that is Scotts' own factual characterization of its relationship with Monsanto; Plaintiff's Complaint makes no reference to an agency relationship and Plaintiff's claim against Scotts is not premised on any type of principal-agent relationship between Monsanto and Scotts. Scotts also asserts that it "generally" does not take title to Roundup when distributing it, that it "generally" does not purchase Roundup and resell it, and so forth. *See* Mot. at 6. But these factual allegations are not cognizable at the pleading stage. And even if they were cognizable, they would *undermine* Scotts' Motion and support Scotts' potential liability here because they amount to admissions that Scotts *at least sometimes* takes title to Roundup and purchases and resells it.

Third, Scotts argues that Plaintiff fails to allege the knowledge component of a failure to warn claim. But Plaintiff's claim is plainly a viable *strict liability* claim against a distributor under Florida law. It does not turn exclusively on a failure-to-warn theory. In any event, Plaintiff has satisfied even Scotts' erroneous articulation of the applicable pleading requirements by expressly alleging that Scotts had "superior knowledge" "regarding the carcinogenic properties" of Roundup. *See* Compl. ¶ 126.

Fourth, Scotts argues that federal law preempts Plaintiff's state-law claim. *See* Mot. at 10. But the Ninth Circuit has already rejected arguments that state-law claims related to Roundup are preempted by federal law. Scotts offers no persuasive rationale—indeed, no express rationale at all—for departing from the Ninth Circuit's binding ruling.

Finally, even if Scotts' arguments had merit—and they do not—Plaintiff respectfully requests an opportunity to amend his Complaint and rectify the purported pleading deficiencies.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346                    www.podhurst.com

## BACKGROUND

For brevity, this Response brief will summarize only the essential allegations in the Complaint, as well as the essential procedural history of this case. For purposes of this section and given the procedural posture of this case, Plaintiff's allegations will be asserted as true and undisputed.

1.      This action arises from Plaintiff Mr. Schrag's diagnosis with non-Hodgkins lymphoma in September 2021 resulting from exposure to Roundup, a glyphosate-based herbicide. *See* Compl. ¶¶ 127-132.

2.      Defendant Scotts was engaged in the marketing, distribution, and sale of Roundup products to Home Depot and other retailers throughout Florida. *Id.* ¶ 197. Additionally, Scotts directly placed glyphosate-based herbicides, including Roundup products, on the market (by selling them) for use throughout Miami-Dade County.  *Id.* ¶ 198.

3.      The glyphosate-based herbicides sold and distributed by Scotts, including Roundup, were defective and unreasonably dangerous. *See id.* ¶ 199.

4.      As a direct and proximate result of his exposure to Roundup, Mr. Schrag suffered injuries. *Id.* ¶ 193.

5.      On March 2, 2023 Defendant Scotts moved to dismiss Mr. Schrag's claims Pursuant to Fed. R. Civ. P. 12(b)(6). *See* Mot. at 1.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted)).

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346      www.podhurst.com

However, "detailed factual allegations" are not required of a complaint attacked by a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 555.

Importantly, in Florida-law products liability cases, "[c]ourts in the Eleventh Circuit regularly allow plaintiffs to plead multiple theories [of liability]"—such as manufacturing defect and design defect—provided that the plaintiff "adequately allege the defect." *Kilmer v. Howmedica Osteonics Corp.*, 2015 WL 5915950, at *4 (M.D. Fla. Oct. 8, 2015). Accordingly, at the pleading stage, products liability plaintiffs are not required "to plead design defect versus manufacturing defect[.]" Rather, a "[p]laintiff's allegation of a defect alone is sufficient[.]" *Krywokulski*, 2010 WL 326166 at *3.

## ARGUMENT

Scotts' arguments for dismissal fail for several reasons. Perhaps most importantly, all of Scotts' arguments are based on fundamental misunderstandings and/or misstatements of applicable law and mischaracterizations of Plaintiff's claim.

To give just a few examples, contrary to Scotts' arguments, a plaintiff asserting a products liability claim against a distributor is not required at the pleading stage to (1) plead with particularity the specific theory of products liability being asserted, (2) plead with particularity that the distributor took title to the product, or (3) "establish" any ultimate facts.

For these reasons among others, Scotts' Motion must be denied.

**I.      Florida law expressly permits and contemplates products liability claims against distributors of allegedly defective products.**

Before addressing Scotts' arguments head-on, some clarification is in order regarding Florida's law of products liability. As Florida's Supreme Court has explained, "[t]he underlying basis for the doctrine of strict liability [in Florida] is that those entities within a product's distributive chain 'who profit from the sale of distribution of [the product] to the public, rather

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

than an innocent person injured by it, should bear the financial burden of even an undetectable product defect.'" *Samuel Friedland Family Enterprises v. Amoroso*, 630 So.2d 1067, 1068 (Fla. 1994) (quoting *North Miami Gen. Hosp., Inc. v. Goldberg*, 520 So.2d 650, 651 (Fla. 3d DCA 1988)).

"Florida courts have expanded the doctrine of strict liability to others in the distributive chain [in addition to manufacturers] including retailers, wholesalers, and distributors." *Id.* (citing cases). More specifically, Florida courts have adopted Sectoin 402A of the Restatement (Second) of Torts, which states that a seller or distributor of a defective product "is subject to liability" if "(a) the seller is engaged in the business of selling such a product, and (b) [the product] is expected to and does reach the user or consumer without a substantial change in [its] condition," notwithstanding the fact that the user or consumer may not have "bought the product in question from . . . the seller."

In Florida-law products liability cases against sellers and distributors, plaintiffs must generally establish that the defendant "was . . . in physical possession" of the subject product <u>or</u> that the defendant had "some element of control" over the subject product. *Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372, 1379 (M.D. Fla. 2009) (cleaned up). But the latter element turns in part on queries such as "whether the [defendant] placed the product in the stream of commerce[.]" *Rivera v. Baby Trend, Inc.*, 914 So.2d 1102, 1104 (Fla. 4th DCA 2005). Ultimately, an entity that marketed, sold and accepted payment for the subject product may be liable in Florida even where it "never had actual possession" of the product. *Id.*

In short, there can be no doubt—and Scotts has cited no authority to the contrary—that Florida law permits and authorizes products liability claims, including strict liability, against distributors of allegedly defective products. And there can be no doubt that distributors may be

6

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346     www.podhurst.com

subject to strict liability regardless of whether they actually took physical possession of the subject product.

## II.     Scotts' Motion misstates the applicable law.

Against the backdrop of Florida's products liability law, Scotts misstates the applicable legal standards. For example, Scotts suggests that if "Plaintiff's strict liability count . . . does not distinguish among the three families of strict liability claims," this amounts to a pleading deficiency warranting dismissal. *Mot.* at 4. However, in products liability cases, the law is clear that plaintiffs are *not* required to commit at the pleading stage to either a manufacturing defect claim or a design defect claim.

Indeed, wholly contrary to Scotts' arguments, Florida law does not apply a "rigid distinction among the various theories of recovery available to plaintiffs under strict products liability[.]" *Bailey,* 288 F. App'x at 605. Therefore, plaintiffs are not required to "expressly plead 'design defect' versus 'manufacturing defect' at the complaint stage." *Id. See also*, *e.g.*, *Brandt v. Depuy Orthopaedics, Inc.,* 2010 WL 2612037 at *3 (M.D. Fla. June 28, 2010) ("Florida law does not require that a plaintiff specifically set out the type of defect [design, manufacturing, or failure to warn] at the pleadings stage.").

Similarly, Scotts erroneously implies that it can only be liable if it "takes title to" Roundup, "purchases" Roundup, or "acquires" Roundup and adds a markup for profit. *See* Mot. at 6. But Scotts cites to <u>no authority</u> for these purported requirements, and no such authority exists. As noted above, cases including *Devore* and *Rivera*—cases on which Scotts itself relies—make clear that a distributor can be liable even where it does not take physical possession of the subject product.[3]

---

[3]     In any event, as outlined further below, Scotts' own Motion effectively admits that it sometimes *does* take title to Roundup in the chain of distribution, that it sometimes *does* purchase and resell Roundup, and that it sometimes *does* acquire Roundup and add its own markup for profit. *See* Mot. at 6 (asserting that Scotts "generally does not" do these things).

7

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346        www.podhurst.com

Moreover, Scotts' Motion completely mischaracterizes the relevant holding of *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 87 (Fla. 1976). Namely, Scotts cites to *West* for the proposition that a plaintiff is required to establish at the pleading stage a distributor/seller's knowledge of the alleged product defect. But this supposed requirement is found nowhere in *West* or any other Florida-law case. More generally, Scotts' characterization of *West* is difficult to square with the plain language and meaning of the *West* opinion. *Compare Id.* ("In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages.") *with Mot. at 2* ("Under Florida law, however, the plaintiff must set forth something more—specific facts that establish the seller's relationship to the product in question, knowledge regarding the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages.") (emphasis added).

**III.    Scotts baselessly seeks to impose on Plaintiff a heightened pleading standard.**

The legal errors in Scotts' Motion are not limited to its misreading of *West*. The Motion also cites several authorities for the erroneous proposition that Plaintiff's claims against Scotts are somehow subject to a heightened pleading standard. *See* Mot. at 4 (asserting that Plaintiff's Complaint must make "a showing of more" than that Scotts marketed or distributed Roundup).

Consider, for example, Scotts' reliance on *Wilssens v. Medtronic, Inc.*, 2009 WL 9151079, (S.D. Fla. July 23, 2009). Scotts argues that this case stands for the proposition that on a motion to dismiss, "[t]he mere label of 'distributor' is not enough without additional supporting factual allegations." *See* Mot. At 5. But this is not true; *Wilssens* did not concern "distributors" at all.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

Rather, it concerned a wholly different factual scenario in which the plaintiff sued "representative of [another defendant] who was present at the time of implanting the [defective product] into Plaintiff." 2009 WL 9151079 *1.

Scotts' other authorities are similarly distinguishable.  For example, *Siemens Energy & Automation, Inc. v. Medina*, 719 So. 2d 312, 313-14 (Fla. 3d DCA 1998) did not arise on a motion to dismiss at all, but rather concerned an appeal from a *final judgment* against a defendant who, according to the court of appeals, "acted as neither a distributor nor a retailer." But here, of course, there is no final judgment. And Plaintiff's Complaint—which must be taken as true at this stage of the litigation—alleges *precisely* that Scotts *is a distributor* and seller of the product in question.

**IV.    Plaintiff has pled sufficient facts regarding Scotts' relationship to the product in question.**

Scotts' Motion also argues that Plaintiff's Complaint "does little or nothing" to "establish" Scotts' relationship to the product in question. *See* Mot. at 5. Of course, Plaintiff has no burden at this stage of the litigation to "establish" anything. And to the extent that Plaintiff is required to allege Scotts' relationship with Roundup, Plaintiff has plainly done so.

There is no dispute that Plaintiff has alleged that Scotts is a marketer and distributor of Roundup. *See id.* Taking those allegations as true, Plaintiff has adequately asserted Scott's relationship to the subject product as a matter of Florida law. *Compare, e.g.*, *Flaherty v. E-Go Bike, LLC, No. 2:21-CV-728-SPC-MRM*, 2022 WL 445428, at *2 (M.D. Fla. Feb. 14, 2022) (denying motion to dismiss where plaintiff alleged that several defendants were each "in the business of inspecting, testing, distributing, advertising, marketing, importing, and selling a variety of electric mobility products") *with* Compl. ¶ 196 ("[Defendant] engaged in the business of marketing, selling and distributing glyphosate-based products, including Roundup, to the public . . .").

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382  •  Ft. Lauderdale 954.463.4346        www.podhurst.com

Scotts argues that Plaintiff's allegations are insufficient only by relying on inapplicable cases. Consider, for example, Scotts' reliance on *Epstein v. Gilead Sciences, Inc.*, 441 F. Supp. 3d 1277 (S.D. Fla. 2020). As relevant here, that case concerned the alleged fraudulent joinder of certain defendants who were "sales employees" of one of the defendants but who were "not retailers, wholesalers or distributors" of the product in question. *Id.* at 1282. On those facts, the court ruled that "the doctrine of strict liability d[id] not apply to th[ose] individual defendants." *Id.* But the *Epstein* court nevertheless observed that, under Florida law, strict liability extends to "retailers, wholesalers and distributors." *Id.* (citation omitted). Here, unlike in *Epstein*, Plaintiff *has* alleged that Scotts is a distributor of the allegedly defective product. Accordingly, *Epstein* is at best inapposite, and at worst *undermines* Scotts' argument for dismissal.[4]

Moreover, as noted further in the following section, Scotts' Motion effectively *confirms*—albeit through premature factual assertions that are not cognizable on a motion to dismiss—that Scotts *does* have the requisite relationship with the subject product.

### V.      Scotts' Motion makes premature factual arguments that, in some instances, support its liability and undermine its arguments for dismissal.

Scotts' Motion also relies in part on factual assertions that go beyond the allegations in the Complaint, and which are plainly improper and premature on a motion to dismiss. First, Scotts contends that it was "Monsanto's agent" and therefore subject to certain purported "legal protections that accompany such agents[.]" Mot. at 6. But the notion that Scotts was "Monsanto's agent," as opposed to simply a separate company that participates in the chain of distribution of Roundup, is *Scotts' own factual assertion*. Plaintiff's Complaint does not allege that Scotts is

---

[4]      *Epstein* is also inapposite for a different reason: due to the procedural posture of that case, the district court was able to rely on uncontroverted affidavits submitted by the sales-employee defendants. *See id.* at 1283. Here, Scotts' Motion must justify its request for dismissal taking as true the allegations in the Complaint and without the introduction of additional evidence or contrary factual assertions.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346      www.podhurst.com

Monsanto's agent or assert claims premised on an agency relationship. Scotts is free to argue that it is Monsanto's agent at summary judgment or later, but it cannot introduce this assertion as a basis for dismissal at this stage of the case.

Accordingly, Scotts' reliance on cases concerning protections for agents or relying on the Restatement (Third) of Agency is completely misplaced.  Moreover, it bears noting that none of the agency-law cases cited by Scotts as somehow barring Plaintiff's claim here arose in the products liability context. *See Vesta Const. and Design, L.L.C. v. Lotspeich & Associates, Inc*,. 974 So. 2d 1176 (Fla. 5th DCA 2008) (negligent misrepresentation claim); *Santidrian v. Landmark Custom Ranches, Inc.*, 405 Fed. App'x. 381, 384 (11th Cir. 2010) (alleged failure to comply with the Interstate Land Sales Full Disclosure Act).

Second, Scotts' Motion makes factual assertions to the effect that Scotts "generally does not" "take[ ] title to the Products [*i.e.*, Roundup] in the chain of distribution," "purchase[ ] the Products and resell[ ] them," or "acquire[ ] the products and add[ ] its own mark-up for profit[.]" Mot. at 6. Clearly, these factual assertions go beyond the Complaint and are not cognizable on a motion to dismiss.

Ironically, even if these factual assertions *were* cognizable, they would *undermine* Scotts' Motion. By definition, if Scotts is correct that it "generally" does not take title to Roundup, purchase and resell Roundup, or mark Roundup products up for profit, that means that Scotts <u>*sometimes does*</u> do these things. And this would support Scotts' liability in this case even under Scotts' erroneous and narrow reading of Florida's products liability law. At a minimum, these factual assertions establish that Scotts *does* have a relationship with the product in question that is more than sufficient to support its liability under Florida law.

11

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

### VI.   Scotts' argument for dismissal based on purportedly insufficient allegations of knowledge is unavailing.

Scotts also contends that Plaintiff's "failure to warn theory fails" because the Complaint fails to adequately allege Scotts' knowledge of Roundup's dangerous propensities. This argument is unavailing in several respects.

First, Scotts' argument rests on re-casting Plaintiff's strict liability claim as a claim alleging only a "failure to warn" and nothing more. But that is a mischaracterization of Plaintiff's claim, which is a strict-liability claim asserting more than—and distinct from—a failure to warn. *See* Compl. ¶¶ 8, 19, 125, 126, 186, 196-202. For the reasons outlined above, Plaintiff has sufficiently asserted a Florida-law strict liability claim against Scotts, a distributor of Roundup.

Second, Scotts' argument rests on the factual premise that Plaintiff has not alleged that Scotts knew or could have known about Roundup's dangerous propensities. *See* Mot. at 7. But this is not true: the Complaint squarely alleges that Scotts "had superior knowledge . . . regarding the carcinogenic properties" of Roundup. Compl. ¶ 126. And Scotts cites to no Florida-law case holding that this allegation is legally insufficient at the pleading stage.

Third, Scotts appears to argue that it *could not have* knowledge Roundup's dangerous propensities because that would require Scotts to know that "the EPA was wrong" in issuing certain approvals for Roundup. But there is no case supporting the notion that a strict liability claim is *per se* inviable unless a plaintiff alleges that the defendant "knew" that regulators were "wrong" in making certain decisions about the subject product. And the *Zantac* ruling on which Scotts relies is wholly inapposite: that ruling was based on federal preemption of the plaintiffs' claims, a wholly different issue addressed in the following section. Indeed, in *Zantac*, the court concluded that the plaintiffs were asserting a *federal-law* misbranding claim, which Plaintiff here has clearly not

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346      www.podhurst.com

done. *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, 510 F. Supp. 3d 1234, 1252 (S.D. Fla. 2020).

### VII.    Plaintiff's claims are not preempted by FIFRA.

Finally, Scotts argues that Plaintiff's claim is preempted to the extent that it is premised on a theory of failure to warn. But, once again, this argument is premised on Scotts' unilateral misconstruction of Plaintiff's strict-liability claim as a claim premised *only* on a failure to warn.[5] Scotts' preemption argument must fail for this reason alone: even if the argument had merit, it is an argument for dismissing a narrowly construed failure-to-warn claim, not a strict-liability claim against a distributor of a defective product.

In any event, courts to have considered the preemption issue in the context of state-law Roundup-related claims—including the Ninth Circuit—have ruled directly contrary to Scotts' argument. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 954 (9th Cir. 2021) (affirming this Court's rulings and holding "that . . . failure-to-warn claims . . . are consistent with FIFRA and thus are neither expressly nor impliedly preempted").

Scotts' Motion in effect invites this Court to undertake a *de novo* FIFRA preemption analysis and defy the *Hardeman* court's holding, which is of course binding on this Court. Indeed, Scotts' Motion offers no express justification for distinguishing *Hardeman*, and it does not mention *Hardeman* at all. Instead, Scotts' Motion cites to cases that are clearly inapposite. *See, e.g.*, *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555 (9th Cir. 1995) (concerning an express warranty

---

[5]      Scotts' Motion suggests that Scotts is confused by "Plaintiff's vague claim" against it and that, at best Scotts can "discern," Plaintiff's claim is "premised on the supposed failure to provide additional (unspecified) warnings on the labeling and packaging of the products." Mot. at 10. Of course, this is not true. The Complaint plainly alleges a strict liability claim against Scotts based principally on its distribution of Roundup, a claim which is viable under Florida law for the reasons outlined above.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

claim wholly distinct from Plaintiff's claim here), *Hernandez v. Aurobindo Pharma USA, Inc.*, 582 F. Supp. 3d 1192, 1210 (M.D. Fla. 2022) (concerning FDA preemption, not FIFRA preemption).

## CONCLUSION

For the foregoing reasons, Scotts' Motion should be denied. The Motion rests on faulty legal premises and does not provide a valid justification for dismissing Plaintiff's claims. Even if Scotts' arguments had merit—and they do not—Plaintiff respectfully requests an opportunity to amend his Complaint and rectify the purported pleading deficiencies.


Dated: February 2, 2023                    Respectfully submitted,

                                           **PODHURST ORSECK, P.A.**
                                           *Counsel for Plaintiff*
                                           One Southeast 3rd Avenue, Suite 2300
                                           Miami, Florida 33131
                                           (305) 358-2800 / Fax (305) 358-2382


                                           By: */s/ Steven C. Marks*
                                               STEVEN C. MARKS
                                               Fla. Bar No. 516414
                                               smarks@podhurst.com
                                               KRISTINA M. INFANTE
                                               Fla. Bar No. 112557
                                               kinfante@podhurst.com
                                               PABLO ROJAS
                                               Fla. Bar No. 1022427
                                               projas@podhurst.com

14

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on February 2, 2023, I electronically filed the foregoing document with the

Clerk for the Unites States District Court for the Northern District of California using the CM/ECF

system, which shall send electronic notification to counsel of record.

By: _/s/ Steven C. Marks_____

STEVEN C. MARKS

*Counsel for the Plaintiff*

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346     www.podhurst.com