**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC<br><br>Hon. Vince Chhabria |
| This document relates to:<br>ALL ACTIONS | **JOINT CASE MANAGEMENT STATEMENT** |

Plaintiffs' leadership and Monsanto's counsel hereby provide the following updates to the Court in advance of the Case Management Conference on Wednesday, February 15, 2023.

**I.     Plaintiffs' Statement:**

**A.   *Schaffner v. Monsanto* Third Circuit Appeal**

We wish to inform the Court about an appeal taken by Monsanto in a case this Court remanded to the Western District of Pennsylvania, *Schaffner v. Monsanto,* Civil Action No. 2:19-cv-1270-CRE. In *Schaffner*, Monsanto orchestrated an appeal via an agreement that is described, in part, in a stipulation submitted to the transferor court following remand. See Exhibit A and B.  That agreement provides that for consideration of $1, the parties agree to entry of a stipulated judgement and agree further that Monsanto has the right to appeal this Court's preemption decision. The agreement requires Monsanto to pay the plaintiff an enhanced settlement amount if the plaintiff prevails on appeal. While we believed the plaintiff must pay Monsanto liquidated damages if Monsanto prevails on appeal but the plaintiff elects not to seek a writ of certiorari to the Supreme Court based on an agreement between Monsanto and Plaintiff's counsel in another case, co-lead counsel does not have the agreement and Monsanto contends below that we are wrong. Thus, we are uncertain what, if anything, the agreement provides if Monsanto prevails on appeal.

We bring the *Schaffner v. Monsanto,* No. 22-3075, appeal to the Court's attention because it is the first appeal (to our knowledge) taken by Monsanto from an order, issued by this Court prior to

remand, that resolves an issue of federal law.[1]  The brief was filed by Monsanto on February 8, 2023. See Exhibit C.

In Pretrial Order No. 158, Your Honor made clear that "for questions of federal law . . . Ninth Circuit law will govern regardless of where a case originated," PTO 158 at 1. Although PTO 158 was styled as "*Daubert* Choice of Law" the Court's reasoning would equally apply to all federal law issues, including preemption. In its brief, Monsanto fails to inform the Third Circuit of Your Honor's Pretrial Order No. 158 regarding choice of law on remand; Monsanto also did not include PTO 158 in its appendix.  Monsanto failed to inform either the transferor court or the Third Circuit of this Court's ruling in PTO 158, which is the law of the case. To the contrary, Monsanto argues in its *Schaffner* brief that the Ninth Circuit in *Hardeman* got it wrong when it affirmed your preemption decision and that the Third Circuit should reject *Hardeman*'s holding.

Co-lead counsel believe that Monsanto should inform transferor courts and appellate courts of this Court's orders establishing the law of the case, including that this Court, in accordance with prevailing case law regarding choice of law, has ruled that Ninth Circuit law applies to questions of federal law resolved by the MDL.  But because Monsanto has not done so, co-lead counsel asks the Court to include PTO 158 in its Suggestion of Remand to Transferor Court. Co-lead counsel also respectfully requests that the Court include a statement regarding its choice of law ruling in future summary judgment orders, so that reviewing appellate courts will be presented with the law of the case. In addition, co-lead counsel requests that the Court require Monsanto to inform co-lead counsel if and when it enters into settlement agreements with plaintiffs' counsel on remand if they are conditioned upon an agreement to appeal or brief issues of federal law previously decided by the MDL court. Because these agreements are private, there is no way that co-lead counsel can know about them until the agreements are inked and the appeal is taken.  It is important that co-lead counsel know of the existence of such agreements, even if not provided the private agreement itself, early on so that we can ensure that the appellate issues regarding, *inter alia*, preemption, *Daubert* general causation, and choice of law, are adequately addressed not only for the individual plaintiff who entered into the agreement but for all cases – every one of which involves an individual whose rights could be affected by the

---

[1] Monsanto also has an appeal pending in the Eleventh Circuit Court of Appeals in *Carson v. Monsanto,* Case No. 21-10994.  While that case also involves Carson's personal injuries from exposure to Roundup, it was filed in the Southern District of Georgia and Monsanto did not tag it for transfer to the MDL.

appellate ruling. In this same vein, we also ask that the Court order Monsanto to inform co-lead counsel if there are any other appeals pending regarding preemption from cases remanded by this Court other than *Schaffner*.

### B. Preservation of General Causation Expert Testimony for benefit of Wave Cases.

On behalf of counsel with unsettled cases that are remanded and/or subject to remand in the future, co-lead counsel requests an order from the Court authorizing them to take videotaped trial depositions of some of the general causation experts that were the subject of this Court's Daubert order. Pretrial Order No. 45: Summary Judgment and *Daubert* Motions; Re: Dkt. Nos. 545, 647. This request is being made now in response to a specific request from counsel in Waves 4-7, but as explained below, general causation trial depositions will benefit all wave cases.[2] Counsel with wave cases, of course, would not be required to use the depositions -- if they prefer, they may still opt to hire their own expert to testify live at trial -- but based on numerous inquiries from wave counsel, we believe this is desired by and will benefit most plaintiffs in the MDL subject to remand.

This is not the first time co-lead counsel raised this issue with the Court, although previously it was in the context of responding to the Court's inquiry to counsel about whether the MDL should continue or be disbanded. On September 1, 2022, in a joint case management statement, co-lead counsel proposed in response to the Court's inquiry that the Court should create a three-phase plan to wind up the MDL. This included "full transcripts and videos of trial depositions for each of Plaintiffs' general causation experts that can be used at trial for each remanded Plaintiff." (Dkt. 15403 at 8) Monsanto opposed this proposal while arguing "preservation depositions of such experts—who are clearly available and actively engaged in the litigation—would advance no meaningful purpose." (Dkt. 15403 at 16-17). At the status conference on September 7, 2022 where these and other options were discussed, the Court took another direction and the issue of preservation of trial testimony for general causation experts was not discussed.

That was not the only context in which general causation trial preservation depositions was addressed. In the context of the common benefit fund, co-lead counsel suggested that such trial

---

[2] If the Court prefers that Co-Lead counsel, together with Wave counsel, file a motion seeking an order allowing for the taking of general causation expert trial depositions, counsel will file such a motion.

depositions are another benefit they might pursue. (Dkt. 15473 at 44). Nevertheless, the issue has not been addressed with the Court as a standalone request, nor has it been raised since the September 7, 2022 hearing.

Without the trial testimony of the general causation experts, Plaintiffs in the wave cases might well have to recreate much of the effort of co-lead counsel in this MDL. There are too many cases subject to remand for the original MDL general causation experts to testify in person. As the Court might recall, some of the experts have full time jobs unrelated to expert witness work. Health considerations of other experts may preclude their continuing participation. Moreover, it would be an extraordinary expense for a Plaintiff to have to hire her own general causation experts and essentially replicate the work that co-lead counsel already did. Finally, the importance of general causation expert testimony in these cases cannot be overstated; as the Court is aware, Monsanto vigorously disputes general causation and the experts amassed by co-lead Plaintiffs and the work they produced – over countless hours and at considerable expense – proved successful. Fundamentally, allowing the taking of general causation trial depositions fulfills the MDL's mission to "promote the just and efficient conduct of such actions." 28 U.S.C.A. § 1407(a).

Recently the MDL court in *In re: Taxotere (Docetaxel) Products Liability Litigation*, MDL No. 16-2740, granted a similar request, holding that "[p]reserving general expert testimony is a necessary and efficient use of party resources at this time." Exhibit D. Other courts have similarly granted requests to preserve expert trial testimony. Co-lead counsel, on behalf of counsel in wave cases, respectfully requests the Court to allow a similar benefit to MDL Plaintiffs who find themselves remanded or subject to remand and to order the parties to work on protocol for the taking of such depositions.

II. **Monsanto's Statement:**

A. *Schaffner v. Monsanto* **Third Circuit Appeal**

Throughout its brief in the Third Circuit in the *Schaffner* case, which involves an appeal on preemption, Monsanto was transparent about the case's history of proceedings in the MDL, this Court's rulings on that issue, and this Court's rulings in the *Schaffner* case specifically. In particular, Monsanto:

- Mentioned the proceedings in this Court in its jurisdictional statement, Br. 4;

- Listed this Court's summary judgment rulings on preemption in the description of issues on appeal, Br. 5;
- Described this Court's early ruling on a motion to dismiss on preemption grounds, and included that ruling in the appendix, Br. 17;
- Described Monsanto's subsequent briefing on preemption in the summary judgment context, and included those rulings in the appendix, Br. 17-18;
- Explained the procedural history of the *Schaffner* case, including the MDL, Monsanto's summary judgment motion that preserved preemption for appeal, and attached the Court's ruling in the appendix, Br. 18-19.
- Described the Ninth Circuit's decision in Hardeman, Br. 5, 39-40.

Monsanto also alerted the Third Circuit to the parties' settlement in that case, and explained why that settlement was consistent with the exercise of appellate jurisdiction under Third Circuit precedent. *See* Br. 4, 20.

Notwithstanding this history, co-lead counsel appear to be raising objections to Monsanto's appellate brief in a different court on the sole basis that it did not discuss this Court's Pretrial Order No. 158, which held that Ninth Circuit law would apply to *Daubert* proceedings *in this Court*. That criticism is based on an erroneous description of the *Schaffner* settlement, an inaccurate characterization of Pretrial Order No. 158, and a misunderstanding of basic principles of the law-of-the-case doctrine.

First, any potential issue regarding the *Schaffner* settlement would only properly be raised in the Third Circuit (the Court that currently has jurisdiction over that case); it is also important to note that co-lead counsel mischaracterize the settlement. Consistent with established case law, Monsanto reached an arms-length settlement with the Schaffner Plaintiffs under which judgment would be entered against Monsanto; Monsanto reserved its right to appeal; and the payment due to the Schaffner Plaintiffs would depend on the result of that appeal. The settlement was a classic "high-low" settlement of which courts, including the Supreme Court, have long approved. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). Indeed, in reaching this agreement, the parties relied on a decision of the Third Circuit approving a similar settlement. *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218 (3d Cir. 2000). Further, while the terms of the settlement agreement are confidential, Monsanto notes that the consideration provided for in the agreement is not $1, as co-lead counsel assert without

basis.[3] Likewise, co-lead counsel's "belief" that the agreement requires "plaintiff must pay Monsanto liquidated damages if Monsanto prevails on appeal but the plaintiff elects not to seek a writ of certiorari to the Supreme Court," is categorically false. The settlement agreement imposes no obligation on any party to seek, or not seek, Supreme Court review.

Second, co-lead counsel mischaracterize this Court's Pretrial Order No. 158 as an order "regarding choice of law on remand." Pretrial Order No. 158 concerned which circuit's law *this* Court would apply *in the MDL proceedings*, not on a subsequent appeal. *See* Pretrial Order No. 158, at 4 ("Thus, *the Court* will follow the Ninth Circuit's *Daubert* caselaw . . . for all of the cases *in the MDL*." (emphasis added)). The Court's order referred to "remand" exactly once, in order to distinguish the question of governing law *in the MDL* from governing law *on remand*. *See id.* at 3 n.1 (distinguishing a case in which "the Fifth Circuit applied the law of its own circuit after a case had been remanded from an MDL in the Seventh Circuit"). And Monsanto appended to its brief in *Schaffner* multiple rulings of this Court relying on Ninth Circuit case law, such that the source of law this Court applied would be no mystery to the Third Circuit.

Third, co-lead counsel's characterization of Pretrial Order No. 158 as "the law of the case" is beside the point in this particular context. Questions relating to the law-of-the-case doctrine might arise where a party asks the transferor *district court* to revisit rulings of the MDL *district court* on remand. *But cf. City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 630–31 (N.D. Cal. 2020) (Breyer, J.) (transferor court, on remand from MDL court sitting within the Sixth Circuit, would "independently consider Defendants' arguments to the extent that they (1) were not raised in the MDL, *or (2) rely on California or Ninth Circuit precedent*" (emphasis added)); *id.* at 649 (declining to follow Sixth Circuit precedent on cognizable RICO injury, because that "view of RICO injury conflicts with Ninth Circuit precedent, which this Court must follow"). But Monsanto did not do that here. Instead, what co-lead counsel seem to be suggesting is that PTO 158 constitutes law of the case as to the Third Circuit. Yet it is axiomatic that the law-of-the-case doctrine applies only to orders "from the same court or from a court of coordinate jurisdiction." *Fagan v. City of Vineland*, 22

---

[3] Co-lead counsel's reference to $1 appears to derive from the stipulated judgment, which was filed consistent with the Third Circuit's *Keefe* decision. There, the parties agreed to a stipulated judgment of $1 from which the losing party appealed, while their settlement agreement specified the "high" and "low" amounts to which the plaintiffs would be entitled depending on the result on appeal. *Keefe*, 203 F.3d at 223-24.

F.3d 1283, 1290 (3d Cir. 1994); *see also Rebel Oil Co. v. Atlantic Richfield Co.*, 146 F.3d 1088, 1093 (9th Cir. 1998) ("[A] court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.")  If the law-of-the-case doctrine bound courts of appeals to adhere to decisions of district courts, there would be no point in an appeal.

If co-lead counsel mean to suggest that the Third Circuit is bound by the Ninth Circuit's decision in *Hardeman* as a matter of the law of the case, that would be equally baseless.  As the Third Circuit recently confirmed, "the law of the case doctrine cannot be applied across distinct actions in [a] multidistrict proceeding," because "[c]ases centralized in an MDL 'retain their separate identities'…". *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, __ F.4th __, 2023 WL 1458892, at *1 (3d Cir. Feb. 2, 2023); *see also In re Lipitor Antitrust Litig.*, 868 F.3d 231, 268 n.18 (3d Cir. 2017) (error to rely on decision in separate MDL action by different plaintiffs as law of the case, a doctrine "that does not apply here because it only applies within a single litigation"); *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) ("law of the case" doctrine applies only if the earlier ruling was "in the identical case").  The *Hardeman* and *Schaffner* cases retained separate identities, so under governing Third Circuit precedent, the Ninth Circuit's decision is not the law of the case in the *Schaffner* appeal before the Third Circuit.

For all of these reasons, it is not apparent why co-lead counsel fault Monsanto for "fail[ing] to inform the Third Circuit of Your Honor's Pretrial Order No. 158 regarding choice of law on remand." If the Schaffner Plaintiffs—or co-lead counsel if they wish participate in the *Schaffner* appeal as *amici*—disagree with Monsanto as to that order's relevance to the Third Circuit's review, they are free to say so to the Third Circuit.

Going forward, Monsanto has no objection to including PTO 158 in the joint appendix of any appeal.  (Though it bears noting that the appendix in this case—prepared jointly by Monsanto and the Schaffner Plaintiffs' counsel, with the latter making significant additions—spans five volumes.) Monsanto likewise has no objection to the Court's including PTO 158 in suggestions of remand to transferor courts.

Monsanto opposes co-lead counsel's additional requests that Monsanto provide co-lead counsel with notice any time a settlement of a remanded case involves an appeal, or any time an appeal on remand involves preemption.  Co-lead counsel are not entitled to know the terms of confidential settlement agreements entered into by parties they do not represent.  And co-lead counsel can readily monitor the dockets of remanded cases (as they appear to have done in *Schaffner*), and participate as

*amici curiae* in any case where they believe their interests are implicated (as they remain free to do in *Schaffner*).[4]

### B. The Court should deny co-lead counsel's request for an order allowing video-taped depositions of their own general-causation experts for use at trial.

In an effort to secure trial preservation depositions of their general cause experts (Drs. Portier, Ritz, Jameson, and Weisenburger), co-lead counsel manufacture the non-existent problem that other plaintiffs' counsel "in the wave cases might well have to recreate much of the effort of co-lead counsel in this MDL .. [and] .. [t]here are too many cases subject to remand for the original MDL general causation experts to testify in person." However, in reality, this problem does not exist. At this juncture, not a single remand case has proceeded to trial and there is currently only one trial setting out of all the Wave 1-3 cases that have been remanded. In that single trial setting, plaintiffs' counsel has never requested or indicated that any of the general cause experts they intend to use at trial are unavailable.

Further, other plaintiffs' counsel have never requested a trial preservation deposition of general causation experts in the six state court cases that have gone to verdict over the last two years. In those six cases, plaintiffs' counsel have, for the most part used other general cause experts at trial.[5] And, the same is true in the many state court trials that have approached trial dates over the past two years. Only one time in those trials did plaintiffs' counsel request a trial preservation deposition of a general cause expert, and that was for Dr. Portier who could not travel to that particular trial due to health issues. In that case, led by Weitz and Luxenberg, a trial preservation deposition of Dr. Portier was agreed to and taken. Indeed, Drs. Portier and Ritz have since been disclosed in other Roundup cases as well as non-Roundup litigation led by co-lead counsel in the Roundup MDL since that trial preservation took place.

Unsurprisingly, each of the other rationales that co-lead counsel assert also fail:

---

[4] Co-lead counsel's insinuation that Monsanto "did not tag" the *Carson* case in some effort to evade the MDL is baseless. The *Carson* case does not involve an allegation of Non-Hodgkins Lymphoma and thus is not subject to transfer under the JPML's order. *See Carson v. Monsanto Co.*, 51 F. 4th 1358, 1359 (11th Cir. 2022) ("Carson was diagnosed with malignant fibrous histiocytoma"), *vacated by order granting reh'g en banc*, 2022 WL 17813843 (11th Cir. Dec. 19, 2022).

[5] Dr. Jameson has been called live in two of the six trials and Dr. Portier was called live in the first of the six trials.

- Co-lead counsel observe that "some of the experts have full time jobs unrelated to expert witness work." But that is true of nearly all of the experts in this litigation and is not unique to plaintiffs' experts. Nor does it make them unavailable to testify at trial. *See Lorenzano v. Sys., Inc.*, No. 617CV422ORL37DCI, 2018 WL 11344851, at *2 (M.D. Fla. Aug. 13, 2018) ( "Both judicial precedent and the Federal Rules of Civil Procedure reflect the strong preference for live testimony . . . . Simply put, being busy seeing patients and earning money does not equate to being unavailable, as defined by Rule 32."). Indeed, co-lead counsel have designated Drs. Ritz and Portier in other litigation outside of the Roundup litigation, including litigation involving Zantac and baby food.

- Co-lead counsel speculate that "[h]ealth considerations . . . may preclude [the experts'] continuing participation." Putting aside the curious ambiguity of the phrase "continuing participation," the Federal Rules of Civil Procedure already address scenarios where a witness is not available to appear at trial. *See* Fed. R. Civ P. 32; Fed. R. Evid. 804. Those rules are adequate to address co-lead counsel's hypothetical concern. Moreover, the situation with Dr. Portier—both in *Hardeman* and in the state court case where he was unavailable—demonstrate that solutions are available to address health considerations.

- According to co-lead counsel, "it would be an extraordinary expense for a Plaintiff to have to hire her own general causation experts and essentially replicate the work that co-lead counsel already did." Compensating retained experts for trial testimony is a cost of hiring experts. There is nothing extraordinary about it and, as explained above, plaintiffs' counsel throughout the United States have utilized other general cause experts at trial. Nothing precludes or has precluded from any wave counsel to retain general causation experts beyond those that co-lead counsel worked with nearly five years ago. The fact that some of them have not done so should not prejudice Monsanto and its right to cross-examine experts live at trial before a jury.

This Court has also made clear that plaintiffs' counsel are not limited to using general cause experts saying that it is "appropriate for specific causation experts to include in their opinions the kind of testimony given by the general causation experts during the general causation phase of the MDL, thus potentially obviating the need to call separate witnesses on general causation. *See* Pretrial Order No. 271 (Dkt. No. 14489).

The judicial system's preference for live testimony in open court is based on lifetimes of experience. *See, e.g.*, *Oshodi v. Holder*, 729 F.3d 883, 891 (9th Cir. 2013) ("The importance of live testimony to a credibility determination is well recognized and longstanding.") (and collecting cases); *Garcia-Martinez v. City & Cnty. of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004) ("The preference for a witness's attendance at trial is axiomatic."). In addition to enabling accurate credibility determinations by the trier of fact, live testimony also allows for a dynamic and up-to-date cross-examination. The Supreme Court has described cross-examination as the "greatest legal engine ever invented for the discovery of truth," *California v. Green*, 399 U.S. 149, 158 (1970) (quoting 5 J. Wigmore, Evidence § 1367 (3d ed. 1940)), and Plaintiffs' unjustified request for an order that would greatly compromise its effectiveness should be rejected.

The concerns regarding cross-examination are amplified by this particular litigation. As co-lead counsel concede, the issue of general-causation is hotly contested. The various plaintiffs allege that they have used a variety of Roundup®-branded products and contracted different hematopoietic cancers as a result of exposure to glyphosate-based herbicides, and the scientific understanding regarding glyphosate continues to evolve. At each trial, Monsanto should be able to cross-examine plaintiffs' general-causation experts with questions specific to that case and the current state of the science such as the impact of newly published studies and regulatory determinations on the purported expert's opinions. Further, Monsanto should be able to cross-examine plaintiffs' expert regarding recent developments and discoveries such as an up-to-date accounting of the amount of money the purported expert has been paid in the Roundup litigation and the nature of their ongoing relationships with plaintiffs' counsel.

Finally, the order in *Taxotere* should not guide this Court—largely for reasons already established above. If the Court were inclined to consider that approach, however, it should understand that the circumstances in that litigation are not analogous to the circumstances here. Further, the Taxotere Order is not relevant here because, unlike most MDLs, the Roundup litigation is not the product of an agency-approved label change. The Taxotere label change, later prompting litigation, occurred in 2015. In Roundup, there is no similar date of demarcation that could have a similar impact on subsequent scientific and regulatory developments.

## III. Inactive Docket Overview

Pursuant to PTO 246, Monsanto is filing along with this case management statement a list of new cases that should be added to the inactive docket since the last submission (Exhibit E). Monsanto is also filing a list of cases on the inactive docket that should be returned to active status (Exhibit F). The parties agree that 78 cases currently on the inactive docket can be dismissed with prejudice (Exhibit G).

In summary, since the Court entered PTO 246 establishing the inactive docket, the parties have agreed that 3,305 cases, involving 3,364 plaintiffs, can be moved to the inactive docket and administratively closed. 755 cases remain active in the MDL.

## IV. Active Docket Overview

Of the cases that remain active in the MDL, there are:

1. 1 case in Wave 4
2. 43 cases in Wave 5
3. 274 cases in Wave 6
4. 324 cases in Wave 7

DATED: February 10, 2023                        Respectfully submitted,

/s/ David Dickens
David Dickens
ddickens@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave
Orange, VA 22960

/s/ Robin Greenwald
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg, PC
700 Broadway
New York, NY 10003

/s/ Aimee Wagstaff
Aimee Wagstaff

awagstaff@wagstafflawfirm.com
Wagstaff Law Firm
940 Lincoln Sreet
Denver, CO 80203

*Attorneys for Plaintiffs*

/s/ Anthony R. Martinez
Anthony R. Martinez
amartinez@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547

/s/ Brian L. Stekloff
Brian L. Stekloff (pro hac vice)
bstekloff@wilkinsonstekloff.com
Rakesh Kilaru (pro hac vice)
rkilaru@wilkinsonstekloff.com
WILKINSON STEKLOFF LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

*Attorneys for Defendant*
*MONSANTO COMPANY*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of February, 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filling to all appearing parties of record.

By: /s/ Anthony R. Martinez