Stephanie Dilworth (SBN 342109)
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Tel: (415) 626-3939
Fax: (415) 875-5700
sdilworth@jonesday.com

Jeffrey J. Jones (*pro hac vice*)
Chris S. Chorzepa (*pro hac vice* forthcoming)
JONES DAY
150 West Jefferson, Suite 2100
Detroit, Michigan 48226
Tel: (313) 733-3939
Fax: (313) 230-7997
jjjones@jonesday.com
cchorzepa@jonesday.com

*Attorneys for Defendant The Scotts Company LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Paul Schrag, v. Monsanto Company, et al.*, Case No. 3:22-cv-08888-VC | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**THE SCOTTS COMPANY LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:   March 2, 2023<br>Time:  10:00 am<br>Place:  Via Zoom Webinar<br>Judge: Hon. Vince G. Chhabria |

## **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................... 1
    I.   PLAINTIFF'S VAGUE "STRICT LIABILITY" CLAIM IS INSUFFICIENT. .................. 1
    II.  PLAINTIFF MUST PLEAD FACTS, NOT CONCLUSIONS, TO SHOW SCOTTS IS A PROPER DEFENDANT. ............................................................................................. 2
    III. PLAINTIFF MUST PLEAD FACTS SUPPORTING ITS ASSERTION THAT SCOTTS HAD SUFFICIENT KNOWLEDGE OF THE ALLEGED DEFECT. ................................. 5
    IV. PREEMPTION BARS PLAINTIFF'S CLAIMS AGAINST SCOTTS. ............................. 6

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*All-Pure Chem. Co. v. White*,
   896 P.2d 697 (Wash. 1995)...................................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................................1

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431 (2005)...........................................................................................................2, 7

*Beale v. Biomet, Inc.*,
   05-22941, 2006 WL 8433264 (S.D. Fla. Aug. 21, 2006) ......................................................1

*Belkin v. Prince Lionheart, Inc.*,
   2019 WL 13217967 (S.D. Fla. Jan. 4, 2019) ........................................................................9

*Brown v. Glade and Grove Supply, Inc.*,
   647 So. 2d 1033 (Fla. 4th Dist. App. 1994).........................................................................9

*Carruthers v. Am. Honda Fin. Corp.*,
   717 F. Supp. 2d 1251 (N.D. Fla. 2010).................................................................................9

*Clay v. Wyeth*,
   5:04-CV-192-OC-10GRJ, 2004 WL 7330338 (M.D. Fla. Aug. 17, 2004) ...............................3

*Devore v. Howmedica Osteonics Corp.*,
   658 F.Supp.2d 1372 (M.D.Fla. 2009)....................................................................................3

*Ferayorni v. Hyundai Motor Co.*,
   711 So.2d 1167 (Fla.4th Dist.App. 1998).............................................................................5

*Gomez v. Pfizer, Inc.*,
   675 F. Supp. 2d 1159 (S.D. Fla. 2009) ..............................................................................2, 3

*Griffin v. Kia Motors Corp.*,
   843 So. 2d 336 (Fla. 1st Dist. App. 2003) ...........................................................................1

*Gwaltney v. Intermetro Indus. Corp.*,
   8:08-CV-1281-T-17TBM, 2009 WL 10670209 (M.D.Fla. Aug. 19, 2009) ............................5

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021) .................................................................................... passim

*Hernandez v. Aurobindo Pharma USA, Inc.*,
   582 F. Supp. 3d 1192 (M.D. Fla. 2022) ..................................................................... 9

*In re Roundup Prod. Liab. Litig.*,
   364 F. Supp. 3d 1085 (N.D. Cal. 2019) ................................................................... 8, 9

*Keum v. Virgin Am. Inc.*,
   781 F.Supp.2d 944 (N.D. Cal. 2011) ........................................................................ 6

*Klein v. Dow Chem. Co.*,
   4:05-CV-01003-HGD, 2005 WL 8157798 (N.D. Ala. Nov. 3, 2005) ....................... 9

*Koller v. Monsanto Co.*,
   Case No. 3:22-CV-04260-MMC (N.D. Cal. Feb. 10, 2023) ..................................... 2

*Liphatech, Inc.*,
   Dkt. No. FIFRA-05-2010-0016, 2014 WL 1012749 (EPA Mar. 12, 2014) ............. 8

*Mut. Pharm. Co., Inc. v. Bartlett*,
   570 U.S. 472 (2013) ................................................................................................. 10

*Papas v. Upjohn Co.*,
   985 F.2d 516 (11th Cir. 1993) (per curiam) ............................................................. 9

*Persons v. Salomon N.A., Inc.*,
   265 Cal. Rptr. 773 (Cal. App. 3d Dist. 1990) .......................................................... 9

*Petty v. Wyeth*,
   3:04-CV-82/MCR, 2005 WL 2893734 (N.D. Fla. Apr. 28, 2005) ............................ 4

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011) ................................................................................................. 10

*Rivera v. Baby Trend, Inc.*,
   914 So. 2d 1102 (Fla. 4th Dist. App. 2005) .............................................................. 4

*Siemens Energy & Automation, Inc. v. Medina*,
   719 So.2d 312 (Fla.3d Dist. App. 1998) ................................................................... 4

*Smith v. Teva Pharms. USA, Inc.*,
   437 F. Supp. 3d 1159 (S.D. Fla. 2020) ..................................................................... 9

*Stansfield v. Minute Maid Co.*,
  124 F. Supp. 3d 1226 (N.D. Fla. 2015)..................................................................................9

*Taylor AG Indus. v. Pure-Gro*,
  54 F.3d 555 (9th Cir. 1995) ................................................................................................7, 8

*Witt v. Stryker Corp. of Mich.*,
  648 Fed. Appx. 867 (11th Cir. 2016)..................................................................................5, 6

*Wyeth v. Levine*,
  555 U.S. 555 (2009)................................................................................................................10

**STATUTES**

7 U.S.C.
  § 136(p)(2) .............................................................................................................................7
  § 136a(c)(1)(C) ......................................................................................................................7
  § 136j(a)(1)(B) .......................................................................................................................7
  § 136v(a) ................................................................................................................................9
  § 136v(b) ................................................................................................................................7

**OTHER AUTHORITIES**

40 C.F.R. §§ 152.40-50................................................................................................................10

40 C.F.R. § 168.22(a)....................................................................................................................7

Federal Rule of Civil Procedure 8 ................................................................................................2

Federal Rule of Civil Procedure 12 ..............................................................................................2

**ARGUMENT**

Plaintiff's argument largely boils down to this: he labeled Scotts a "marketer and distributor of Roundup" and that conclusory declaration is enough. Plaintiff commingles his allegations into one amorphous "strict liability" claim and refuses to analyze any specific strict liability theory as to Scotts, thus prejudicing Scotts' and the Court's ability to analyze applicable defenses. Not surprisingly, the defenses differ based on the liability theory at issue. To support his amorphous claim, Plaintiff cites to the few conclusory paragraphs directed to Scotts, even though such conclusory statements do not suffice under federal law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (finding "labels and conclusions" insufficient). Plaintiff likewise has no meaningful response to federal preemption, pointing only to a single case (*Hardeman*) that decided a *different* legal issue regarding *registrants*, not third party entities like Scotts. Because FIFRA prohibits distributors from unilaterally changing the product's design or label, Plaintiff's claims against Scotts are preempted. On that issue, Plaintiff cites to nothing. In fact, a close reading of *Hardeman* supports preemption in the context of non-registrants. Thus, dismissal is warranted here.

I. **PLAINTIFF'S VAGUE "STRICT LIABILITY" CLAIM IS INSUFFICIENT.**

Plaintiff refuses to articulate with any clarity or precision his legal theories against Scotts and the underlying factual grounds supporting them. Rather, Plaintiff characterizes his Complaint as "a strict liability claim against Scotts based principally on [Scotts'] distribution of Roundup." Opp. at 13 n.5. In Florida, as in most states, defective design, manufacture, and failure to warn are distinct theories with separate standards and defenses. *See, e.g., Griffin v. Kia Motors Corp.*, 843 So. 2d 336, 339 (Fla. 1st Dist. App. 2003). Federal courts have dismissed complaints when it is "unclear as to the theory of product liability under which Plaintiffs are proceeding, be it defective warning, manufacturing defect, design defect, or otherwise." *Beale v. Biomet, Inc.*, 05-22941, 2006 WL 8433264, at *3 (S.D. Fla. Aug. 21, 2006).

Plaintiff's own authority confirms this. In *Bailey v. Janssen Pharmaceutica, Inc.*, for instance, the court separately analyzed plaintiff's design defect and failure to warn theories and *dismissed* the plaintiff's failure to warn claim under Rule 12(b)(6). 288 Fed. Appx. 597, 600-09 (11th Cir. 2008). In some instances, courts will analyze manufacturing and design defect claims together, *see* Opp. at 5, but failure-to-warn claims differ significantly and so the failure to plead facts specific to that claim can prejudice defendants. *See Gomez v. Pfizer, Inc.*, 675 F. Supp. 2d 1159 (S.D. Fla. 2009) ("Defective design, manufacture and failure to warn are distinct theories, and Defendants are prejudiced in that they cannot determine which doctrine is at issue, much less how to frame a proper response."); *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 444-45 (2005) (analyzing different claims).

In *Belkin v. Prince Lionheart, Inc.*, for example, the court dismissed tort claims against a retailer (including strict liability) on the basis that the complaint "failed to separately allege facts and claims as to each Defendant which is required by Rule 8, *Twombly*, and *Iqbal*." 18-CV-80700, 2019 WL 13217967, at *4 (S.D. Fla. Jan. 4, 2019). The court declined to "require [the retailer] to sift through facts alleged against [the manufacturer] and speculate as to whether Plaintiffs also intended to allege those facts against" the retailer. *Id.* The same result applies here.

## II. PLAINTIFF MUST PLEAD FACTS, NOT CONCLUSIONS, TO SHOW SCOTTS IS A PROPER DEFENDANT.

Plaintiff has yet to allege any meaningful facts for dragging Scotts into the Roundup litigation other than the conclusory statement that Scotts functions as a "marketer" and "distributor" of Roundup. Opp. at 9.[1] As Plaintiff's own brief concedes, however, Florida law

---

[1] Notably, the one other case in which Scotts was named as a defendant on Roundup claims was dismissed last week, so this case now stands as the only Roundup case in the United States in which Scotts is currently named as a defendant on Roundup claims. *Koller v. Monsanto Co.*, Case No. 3:22-CV-04260-MMC (N.D. Cal. Feb. 10, 2023).

requires something more. Opp. at 6. Under Florida law, it is "a necessary precursor to stating a valid strict liability claim against a distributor or retailer" that "a plaintiff must establish that it has properly identified the defendant as actually being within the distributive chain." *Devore v. Howmedica Osteonics Corp.*, 658 F.Supp.2d 1372, 1378 (M.D.Fla. 2009). Plaintiff wrongly suggests that Scotts is requiring Plaintiff to "establish" his case. Opp. at 9. That is not true. Rather, Scotts asks only that Plaintiff plead "facts establishing the elements of strict liability" as required. *Gomez*, 675 F. Supp.2d at 1163.

Plaintiff's own brief acknowledges that he carries other burdens but he then proceeds to ignore them. Plaintiff concedes that "[i]n Florida-law product liability cases against sellers and distributors, plaintiffs must generally establish that the defendant 'was ... in physical possession' of the subject product or that the defendant had 'some element of control' over the subject product." Opp. at 6. Yet, Plaintiff pleads no facts directed to Scotts to support either requirement. *See Belkin*, 2019 WL 13217967, at *2-4 (dismissing retailer claim). Plaintiff pleads no facts saying Scotts takes "physical possession" over products that the Plaintiff used and no facts saying Scotts "controls" anything of any import as to such products.[2]

Plaintiff's own cases likewise contradict his position. Plaintiff cites to *Devore*, which dismissed a party (on fraudulent joinder), reiterating that Plaintiff "must still establish that [defendant] possessed some element of control over the allegedly defective product.'" *Devore*, 658

---

[2] Contrary to Plaintiff's suggestion that strict liability for distributors is automatic, Florida courts recognize that different circumstances may require different analysis. Florida courts, for instance, have rejected the broad strict liability theories for pharmacies that Plaintiff advocates here. *Clay v. Wyeth*, 5:04-CV-192-OC-10GRJ, 2004 WL 7330338, at *11 n.95 (M.D. Fla. Aug. 17, 2004) ("Holding an entity only engaged in marketing a product would do little to advance [strict liability] policy"). Similarly, here, with decades of regulatory approvals, Scotts submits that Florida law should likewise require careful analysis before imposing liability on third parties.

F. Supp. 2d at 1379. In *Rivera*, the court inquired whether the defendant "is in a position to control the risk of harm a product might cause once put into the stream of commerce, or either created or assumed the risk of harm for the defective product." *Rivera v. Baby Trend, Inc.*, 914 So.2d 1102, 1104 (Fla.4th Dist.App. 2005). There, the court found the defendant "was responsible for placing the product in the stream of commerce and had the ability to control the design of the product." *Id.* at 1105. Where a defendant's actions played only a minimal role such that they were a mere "conduit of information," the strict liability claim fails. *Siemens Energy & Automation, Inc. v. Medina*, 719 So.2d 312, 315 (Fla.3d Dist. App. 1998) (dismissing strict liability claim against broker); *Petty v. Wyeth*, 3:04-CV-82/MCR, 2005 WL 2893734, at *4 (N.D. Fla. Apr. 28, 2005).

Plaintiff must also plead that Scotts belongs as a defendant for the specific product at issue. Here, Plaintiff vaguely lists numerous "Roundup" products in one paragraph at the outset of this Complaint, Compl. ¶ 3, but then cleverly pleads that the Plaintiff likely only used one (or "primarily" used) one unnamed Roundup product in "one gallon" sizes. *Id.* ¶ 131. *What* product did the Plaintiff actually use, what role did Scotts have in the so-called "chain" of distribution *as to that product*, and does that role *suffice* to name Scotts as a defendant to this action? Plaintiff pleads none of that. To the contrary, the majority of the Complaint describes Monsanto's alleged control over product design and labeling; the Complaint mentions Scotts in only two of the 110 main paragraphs comprising the general allegations. *Id.* ¶¶ 125-26. Such conclusory statements—unsupported by any specific factual allegations—do not set forth sufficient facts to establish that Scotts is liable for anything. Scotts is not seeking to "baselessly ... impose on Plaintiff a heightened pleading standard." Opp. at 8. Scotts simply asks Plaintiff to meet what is required.

### III. PLAINTIFF MUST PLEAD FACTS SUPPORTING ITS ASSERTION THAT SCOTTS HAD SUFFICIENT KNOWLEDGE OF THE ALLEGED DEFECT.

Although Plaintiff seems to want to ignore any pleading requirements as to Scotts' "knowledge," Florida law requires a "showing of knowledge or constructive knowledge" to impose strict liability for failure to warn, so that the defendant does not become "the virtual insurer of its product's safe use." *Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1172 (Fla.4th Dist.App. 1998); *see also Gwaltney v. Intermetro Indus. Corp.*, 8:08-CV-1281-T-17TBM, 2009 WL 10670209, at *4 (M.D.Fla. Aug. 19, 2009) (granting judgment on strict liability because there was "no evidence establishing that Defendant knew or should have known of" the products' risks). The duty to warn does not arise from "every risk which might be remotely suggested by any obscure tidbit of available knowledge, but only of those risks which are discoverable in light of the '*generally recognized* and *prevailing best*' knowledge available." *Ferayorni*, 711 So. 2d at 1172. The *Ferayorni* court found plaintiff's jury instruction did "not accurately state the law of strict liability failure to warn," because it would permit liability "without any proof that [defendant] could have known of the product's dangerous propensities." *Id.* at 1173. The same is true here.

Courts dismiss complaints that fail to plead facts showing that the defendant's knowledge of the defect was "generally recognized" or otherwise sufficient to meet Florida's requirements. In *Witt*, for instance, the Eleventh Circuit dismissed a strict liability claim because plaintiff "failed to allege a plausible set of facts" supporting the allegation that the manufacturer knew of the defect. *Witt v. Stryker Corp. of Mich.*, 648 Fed. Appx. 867, 871 (11th Cir. 2016). The complaint alleged that data regarding the product defect was available to other entities, but did not "indicate that the [defendant] had any access" to that data. *Id.* Further, in *Belkin*, the court dismissed the strict liability claim against Target because the complaint provided insufficient allegations regarding the

retailer's knowledge. *Belkin*, 2019 WL 13217967, at *4. The complaint alleged the manufacturer had knowledge of customer complaints, but not the retailer. *Id.* at *2-4.

Plaintiff's conclusory allegation that Scotts had "superior knowledge" to consumers is nothing more than a vague legal conclusion unsupported by any specific factual allegations and, in any event, is irrelevant under *Ferayorni*; superior or inferior knowledge relative to other third parties is not the standard. Opp. at 12 (quoting Compl. ¶ 126). Such a "bald allegation, asserted at the highest order of generality and unsupported by any factual claims" is "insufficient to state a claim." *Witt*, 648 Fed.Appx. at 871; *Keum v. Virgin Am. Inc.*, 781 F.Supp.2d 944, 951 (N.D. Cal. 2011). Moreover, the Complaint's paragraphs discussing Monsanto's alleged "knowledge about the" purported "toxicity of Roundup" contain no facts asserting that Scotts reviewed such information or even mention Scotts. Compl. ¶¶ 45-87; *see Witt*, 648 Fed. Appx. at 871.

Plaintiff argues there is no support for the argument that a strict liability claim "is *per se* inviable unless a plaintiff alleges that the defendant 'knew' that regulators were 'wrong.'" Opp. at 12. But Plaintiff misses the point. Scotts is not arguing that the claim is "*per se* inviable." Scotts is arguing that Plaintiff must plead facts showing Scotts had the requisite knowledge of defect for Plaintiff's failure to warn claim in light of the decades of EPA approvals, which the Complaint itself repeatedly cites. Compl. ¶¶ 33, 35, 110, 115. This, Plaintiff does not even attempt to do.

### IV. PREEMPTION BARS PLAINTIFF'S CLAIMS AGAINST SCOTTS.

Plaintiff offers no meaningful response to Scotts' argument that Plaintiff's only cause of action against Scotts is preempted. Plaintiff cites to *Hardeman*, but the holding in that case has no application here. As Scotts explained in its brief (Plaintiff wrongly claims that Scotts did not discuss *Hardeman*, Opp. at 13), *Hardeman* addressed a different issue. Mot. at 12-13. *Hardeman* decided a California failure-to-warn claim against the manufacturer, not a Florida claim against a non-registrant. *Hardeman v. Monsanto Co.*, 997 F.3d 941, 954-55 (9th Cir. 2021).

As set forth in Scotts' motion, Scotts is *not* the registrant for glyphosate. As such, Scotts cannot control (or alter) the product's labeling[3] or design; thus, holding Scotts liable for any alleged failure to warn (or Plaintiff's generic "strict liability" theories) would conflict with federal law. *See id.* at 959–60 ("FIFRA and the EPA regulatory scheme provide that pesticide *manufacturers* are responsible for drafting their own product labels […] When a label needs to be changed, the *manufacturer* has the responsibility to change the label") (emphasis added). Here, Plaintiff seeks to impose state duties on Scotts that are clearly broader and inconsistent with the distributors' duties under federal law and therefore "in addition to or different from those required" by FIFRA. 7 U.S.C. § 136v(b); *see Bates*, 544 U.S. at 444.

In fact, FIFRA *prohibits* distributors from altering product design or labeling or making claims inconsistent with the labeling. *See, e.g.,* 7 U.S.C. § 136j(a)(1)(B) (it is illegal to distribute or sell "any registered pesticide if any claims made for it as part of its distribution or sale substantially differ from any claims made for it as part of the statement required in connection with its registration under section 136a of this title").[4] Under FIFRA, Scotts had a duty to use only

---

[3] FIFRA defines "labeling" broadly to include "all labels and all other written, printed, or graphic matter [] accompanying the pesticide or device at any time." 7 U.S.C. § 136(p)(2). Therefore, distributors' responsibilities related to "labeling" encompass not only the label affixed to the product, but also other statements regarding the product. *See Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 561-63 (9th Cir. 1995) (finding preemption of claims against distributor for statements in point-of-sale signs and advertisements).

[4] *See also* 7 U.S.C. § 136j(a)(2)(A) (it is illegal to "detach, alter, deface, or destroy, in whole or in part, any labeling required under this subchapter"); *id,* § 136a(c)(1)(C) (the "statement required in connection with its registration" is the proposed product label submitted to EPA by the product manufacturer); *id.* § 136j(a)(1)(C) (it is illegal to "distribute or sell to any person any registered pesticide the composition of which differs at the time of its distribution or sale from its composition as described in the statement required in connection with its registration under section 136a of this title"); *id.* § 136l(a)-(b) (violation of requirement not to deviate from labeling submitted by manufacturer and approved by EPA can result in criminal and civil penalties); 40 C.F.R. § 168.22(a) (applying prohibition on making claims inconsistent with EPA-approved labeling to "advertisements in any advertising medium to which pesticide users or the general public have access"). The EPA also regularly enforces such provisions, penalizing distributors for statements

the labeling and design approved during the EPA registration process; plaintiff seeks to impose entirely different duties and responsibilities on Scotts.

Here, the Complaint alleges Scotts is liable for "fail[ing] to provide warnings" different from the approved labeling. Compl. ¶ 199 ("herbicides ... were defective and unreasonably dangerous [because] ... [t]hey failed to provide warnings that would alert users and persons exposed to their dangerous conditions."). Thus, Scotts' liability "would be predicated upon a duty to provide information in addition to or different from that required by FIFRA." *Taylor*, 54 F.3d at 562; *see also All-Pure Chem. Co. v. White*, 896 P.2d 697, 702 (Wash. 1995) (finding preemption where distributor could not provide additional warnings outside of label).

Moreover, unlike the registrant in *Hardeman*, it is not possible for Scotts to add warnings or change the product design, so the claim is also impliedly preempted. *See* Mot. at 12 (citing *Hernandez v. Aurobindo Pharma USA, Inc.*, 582 F. Supp. 3d 1192, 1210 (M.D. Fla. 2022)); *Hardeman*, 997 F.3d at 960 ("Considering the responsibility FIFRA places on manufacturers to update pesticide labels," among other things, "it is not *impossible* for Monsanto to add a cancer warning to Roundup's label."). Indeed, Plaintiff asks Scotts to do exactly what FIFRA prohibits—change the label and change the product. Such claims are necessarily preempted. *See* Mot. at 12.

Scotts recognizes that this Court previously found implied preemption inapplicable to certain claims against *registrants*. *In re Roundup Prod. Liab. Litig.*, 364 F. Supp. 3d 1085, 1089 (N.D. Cal. 2019). But that reasoning is inapplicable here. *First*, the Court suggested that *Bates* implicitly rejected an impossibility preemption defense, but the *Bates* Court was not analyzing this

---

inconsistent with the label or registrants' claims. *See, e.g.*, *Liphatech, Inc.*, Dkt. No. FIFRA-05-2010-0016, 2014 WL 1012749 (EPA Mar. 12, 2014) (holding registrant liable for distributing/selling the "pesticide with claims made for the product as part of those distributions or sales that substantially differed from the claims approved in the pesticide's ... accepted label" both in packaging and promotional materials).

case where non-registrants are barred from changing labeling or design. *Second*, this Court pointed to states' authority to regulate the sale or use of pesticides and "require [defendant] to seek EPA approval before selling an altered version of Roundup." *Id.* at 1088. But that authority exists "only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter." 7 U.S.C. § 136v(a). Here, FIFRA prohibits non-registrants from selling pesticides without using the EPA-approved labeling. *Finally*, the Ninth Circuit treated the impossibility framework as applicable, and only rejected its application to a *registrant* on the facts presented. *See Hardeman*, 997 F.3d at 960. That framework squarely governs here. [5]

     As set forth in Scotts' motion, courts have consistently reached the same conclusion in other regulatory contexts where distributors or retailers cannot change the label or the product's design, finding that plaintiff's product liability claims are preempted. *Hernandez*, 582 F.Supp.3d at 1210 (collecting cases in FDA context); *Smith v. Teva Pharms. USA, Inc.*, 437 F. Supp. 3d 1159, 1165 (S.D. Fla. 2020) (holding Florida law claims for defective design and failure to warn against distributor preempted because "federal law preempts state claims against parties that are unable to unilaterally effectuate label changes"); *see also PLIVA, Inc. v. Mensing*, 564 U.S. 604, 613 (2011); *Mut. Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 477 (2013).[6] To avoid preemption, the defendant

---

[5] *Hardeman* also analyzed California law, not Florida. The 11th Circuit held that FIFRA preempts Florida products liability claims relating to labeling or packaging. *Papas v. Upjohn Co.*, 985 F.2d 516, 520 (11th Cir. 1993) (per curiam). Although *Papas* preceded *Bates*, it has been cited as good law afterwards. *See, e.g., Stansfield v. Minute Maid Co.*, 124 F. Supp. 3d 1226, 1232 n.6 (N.D. Fla. 2015); *Carruthers v. Am. Honda Fin. Corp.*, 717 F. Supp. 2d 1251, 1254-55 (N.D. Fla. 2010); *Klein v. Dow Chem. Co*., 4:05-CV-01003-HGD, 2005 WL 8157798, at *4 (N.D. Ala. Nov. 3, 2005). This distinction between states is important because there are differences between Florida and California law. *Compare Brown v. Glade and Grove Supply, Inc*., 647 So.2d 1033, 1036 (Fla. 4th Dist.App.1994) *with Persons v. Salomon N.A., Inc*., 265 Cal.Rptr. 773 (Cal.App.3d Dist. 1990).
[6] Plaintiff likewise cannot avoid preemption by claiming that Scotts could have stopped distributing the product. *See Bartlett*, 570 U.S. at 488 ("We reject this 'stop-selling' rationale as incompatible with our pre-emption jurisprudence. Our pre-emption cases presume that an actor seeking to satisfy both his federal- and state-law obligations is not required to cease acting

must be able to change the product or its label to "satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency." *PLIVA*, 564 U.S. at 623–24.[7] Here, only registrants can alter the product's label or design. *See* 40 C.F.R. §§ 152.40-50; *Hardeman*, 997 F.3d at 959 (finding no implied preemption because defendant registrant was distinguishable from generic drug manufacturers, because "[g]eneric drug manufacturers do not draft their products' initial labeling and do not have the power to revise labeling."). Scotts is not the registrant and does not have the power to change the product's labeling or design. Thus, Scotts sits in the same position as the generic drug manufacturers in *PLIVA* and *Bartlett* where federal courts easily found preemption. The same result applies here.

| | |
|---|---|
| Dated: February 16, 2023 | Respectfully Submitted,<br><br>*/s/ Jeffrey J. Jones*<br>Stephanie Dilworth (SBN 342109)<br>JONES DAY<br>555 California Street, 26th Floor<br>San Francisco, California 94104<br>Tel: (415) 626-3939; Fax: (415) 875-5700<br>sdilworth@jonesday.com<br><br>Jeffrey J. Jones (*pro hac vice*)<br>Chris S. Chorzepa (*pro hac vice* forthcoming)<br>JONES DAY<br>150 West Jefferson, Suite 2100<br>Detroit, Michigan 48226<br>Tel: (313) 733-3939; Fax: (313) 230-7997<br>jjjones@jonesday.com<br>cchorzepa@jonesday.com<br><br>*Counsel for Defendant* |

---

altogether in order to avoid liability. Indeed, if the option of ceasing to act defeated a claim of impossibility, impossibility pre-emption would be 'all but meaningless.'")

[7] Brand-name drug manufacturers, for instance, could not avoid preemption because they have the legal authority to add warnings without prior FDA approval. *See Wyeth v. Levine*, 555 U.S. 555 (2009). However, generic drug manufacturers are unable to add warnings or change product design, and thus claims against them are preempted. *PLIVA*, 564 U.S. at 613; *Bartlett*, 570 U.S. at 477. Like generic drug manufacturers, FIFRA constrains non-registrants from changing product labeling or design. Therefore, preemption is proper here.

## CERTIFICATE OF SERVICE

I certify that on February 16, 2023, I electronically filed the foregoing THE SCOTTS COMPANY LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

*/s/ Jeffrey J. Jones*
Jeffrey J. Jones

*Counsel for The Scotts Company LLC*