Pages 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

IN RE: ROUNDUP PRODUCTS          )
LIABILITY LITIGATION.            )
                                 )     **NO. 16-md-02741 VC**
                                 )
_____  )

San Francisco, California
Wednesday, February 15, 2023

**TRANSCRIPT OF ZOOM WEBINAR PROCEEDINGS**

**APPEARANCES VIA ZOOM**:

For Plaintiffs:
                    ANDRUS WAGSTAFF PC
                    7171 W. Alaska Drive
                    Lakewood, Colorado  80226
               BY:  **AIMEE H. WAGSTAFF, ATTORNEY AT LAW**

                    WEITZ and LUXENBERG P.C.
                    700 Broadway
                    New York, NY 10003
               BY:  **ROBIN L. GREENWALD, ATTORNEY AT LAW**

        **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

TRANSCRIBED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
                 United States District Court-Official Reporter

```
1    APPEARANCES VIA ZOOM:   (CONTINUED)

2    For Plaintiffs:

3                         THE MILLER FIRM, LLC
                          108 Railroad Avenue
4                         Orange, Virginia  22960
                     BY:  DAVID J. DICKENS, ATTORNEY AT LAW
5

6    For Defendant Monsanto Company:

7                         WILKINSON STEKLOFF LLP
                          2001 M Street, NW - 10th Floor
8                         Washington, D.C.  20036
                     BY:  BRIAN L. STEKLOFF, ATTORNEY AT LAW
9                         RAKESH KILARU, ATTORNEY AT LAW

10                        SHOOK, HARDY and BACON LLP
                          2555 Grand Boulevard
11                        Kansas City, Missouri  64108
                     BY:  ANTHONY R. MARTINEZ, ATTORNEY AT LAW
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   Wednesday - February 15, 2023                    2:04 p.m.

 2                    P R O C E E D I N G S

 3                        ---oOo---

 4        THE CLERK:  Calling case number 16-MD-2741, In Re:

 5   Roundup Products Liability Litigation.

 6        Counsel, please state your appearances for the record

 7   starting with the Plaintiff, then Defendant.

 8        MS. GREENWALD:  Good afternoon Robin Greenwald for the

 9   Plaintiffs.

10        MS. WAGSTAFF:  Good afternoon, Your Honor, Aimee

11   Wagstaff for the Plaintiffs.

12        MR. DICKENS:  And David Dickens for the Plaintiffs.

13   Good afternoon, Your Honor.

14        THE COURT:  Hi.

15        MR. STEKLOFF:  Good afternoon, Your Honor, Brian

16   Stekloff, Rakesh Kilaru and Anthony Martinez on behalf of

17   Monsanto.

18        THE COURT:  Hi.  Okay.  So, I guess there were kind of

19   two items to discuss in the case management statement although

20   I don't know how much we need to discuss them.

21        The first issue that is raised by the Plaintiffs, it seems

22   like basically you are just complaining that the -- Monsanto is

23   kind of arranging for fake appeals to go up to the different

24   circuits, and I don't know whether they are fake or not.  I

25   don't -- it is sort of outside my area of expertise, but I also
```

1    think it's outside my area of concern.

2        I think that, you know, any complaints that, you know, you

3    have should be directed to the courts where the cases are being

4    litigated.

5        So I don't -- I don't really think there is anything I can

6    do for you that would be useful or productive on that front.

7            MS. GREENWALD:  Your Honor, can I ask one question or

8    request?

9            THE COURT:  Sure.

10           MS. GREENWALD:  So it would be -- we don't know about

11   these appeals until they are already docketed.  So if we

12   could -- we don't really have any way to know in the district

13   court when they are -- the transferor court whether these

14   agreements are happening to tell the Court about Your Honor's

15   PTO 158.  So it would be useful to know those, but even if

16   not --

17           THE COURT:  My PTO 158, I mean, what is the -- I mean,

18   all my PTO 158 said, if I recall, was that I was going to apply

19   Ninth Circuit -- to the extent that there is a difference

20   between Ninth Circuit Daubert law and other circuits Daubert

21   law, I'm going to apply Ninth Circuit Daubert law.

22           MS. GREENWALD:  Right.

23           THE COURT:  Even that statement is of less relevance

24   now, right, because if I recall correctly, the Ninth Circuit

25   said:  "There is not really -- "it might have seemed like there

1    was a big difference between Ninth Circuit Daubert law and

2    other circuits' Daubert law, but we are now clarifying that

3    that's not really true;" right.

4         So I don't really know what value that -- that order adds

5    to anything that any court will be doing, you know, after a

6    case gets transferred back to them.

7         **MS. GREENWALD:**  So, I guess, maybe just if we can have

8    a -- Monsanto can agree to let us know when there is an appeal.

9    I mean, we will try to --

10        **THE COURT:**  So few cases are being sent back to their

11   home districts.  I mean, what -- how hard is it to just set up

12   a docket alert?

13        **MS. GREENWALD:**  I mean, we do that.  We do that, and

14   we find out after the fact, and we found out in this case --

15        **THE COURT:**  But had you found out, quote-unquote,

16   before the fact, whatever that means, I mean, what would you

17   have done?

18        **MS. GREENWALD:**  I mean, maybe there is nothing; but it

19   would be good to know about these appeals when they start and

20   not at the eleventh hour.

21        We learned of this appeal when we were requested to look

22   at the -- I'm sorry -- the under -- I'm drawing a blank on what

23   it is -- the group of cases on appeal, the -- I'm sorry, I'm

24   drawing a blank, Your Honor, right now on the word.

25        **THE COURT:**  It's okay.

1          **MS. GREENWALD:**  The case -- the documents that are

2     going to appeal -- that are going to be up on appeal.  I'm

3     actually drawing a complete --

4          **THE COURT:**  The appendix?

5          **MS. GREENWALD:**  The appendix, thank you.  Oh my

6     goodness, I completely drew a blank on that.  So sorry.

7          **THE COURT:**  Okay.

8          **MS. GREENWALD:**  We were asked to look at the appendix

9     and add whatever documents we thought would be useful.

10         **THE COURT:**  I mean, you can see a notice of appeal on

11    the docket, right, and you can get an alert for that, I think,

12    and then you can spring into action and complain about

13    whatever --

14         **MS. GREENWALD:**  Okay.

15         **THE COURT:**  -- whatever you want to complain about.

16         **MS. GREENWALD:**  But --

17         **THE COURT:**  I would rather not get involved in that.

18         **MS. GREENWALD:**  Okay.

19         **THE COURT:**  So I think -- I think we will just leave

20    that one there.

21         On the -- on the issue of preservation depositions for

22    general causation experts, I thought that sounded like a good

23    idea at this stage of the litigation.

24         And obviously it would be entirely up to -- in the first

25    instance, the Plaintiffs' lawyer.  You know, when they are back

1    in their home district and getting ready for trial, it would be

2    entirely up to the Plaintiffs' lawyer whether to use the

3    deposition or the preserved trial testimony or whatever you

4    want to call it.

5         And if the Plaintiff wanted to, it would be entirely up to

6    the trial judge to determine whether that's appropriate and

7    Monsanto would have every opportunity to object.

8         And I have expressed no opinion, one way or another, on

9    whether it would be appropriate to use that in a particular

10   trial.  It would just depend on the circumstances, but it does

11   seem to me appropriate to -- to do those -- to do those

12   depositions now.  So what am I missing?

13        **MR. STEKLOFF:**  Your Honor, there are a couple points I

14   would like to make.  Thank you.

15        I mean, the first is, well, while the Plaintiffs didn't

16   specify which experts they were even talking about in the case

17   management statement -- and I did ask them.  Did not get a

18   response -- I suspect it is Portier, Ritz, Weisenburger and

19   Jameson.

20        And what I would say --

21        **THE COURT:**  But there would only be -- I mean,

22   Weisenburger or -- was it Berger or Berg -- anyway, he -- in

23   our case he testified on -- well, when -- when he took the

24   stand, he wasn't just testifying about general causation;

25   right?  He was testifying about specific causation.

1      **MR. STEKLOFF:**  Correct.  And I assume that they would

2  only have a preservation deposition about general causation.

3      **THE COURT:**  Right.

4      **MR. STEKLOFF:**  So, I'm moving forward under the

5  assumption it is those four experts.

6      **THE COURT:**  There was a fourth.  There was Ritz,

7  Portier, Weisenburger.

8      **MR. STEKLOFF:**  Weisenburger and Jameson.  Dr. Jameson

9  was the -- he was a member of the IARC panel and then also had

10  some opinions -- on animal studies.

11      **THE COURT:**  Oh.

12      **MS. WAGSTAFF:**  Your Honor, this is Aimee Wagstaff.

13      I also think that while Mr. Stekloff is right -- that we

14  would want to get a preservation depo of those four -- I don't

15  see the logic of limiting it to those four.

16      I mean, the point is that we are far enough along in the

17  litigation that the science is far enough along --

18      **THE COURT:**  Did I -- did I -- did I -- didn't I

19  exclude all of -- weren't those the only -- I can't remember

20  which general causation experts I excluded because I excluded

21  some.

22      **MS. WAGSTAFF:**  Yeah.

23      **THE COURT:**  Which ones I allowed to testify.

24      **MS. WAGSTAFF:**  Sure.  Well, I guess, Your Honor, since

25  your Daubert hearing, which your order came out in 2018, if you

1  can believe it has been five years.

2          **THE COURT:**  Oh, my God.

3          **MS. WAGSTAFF:**  So it came out in August of 2018.  So

4  state court Sargon and state court Daubert proceedings have

5  been occurring frequently since then --

6          **THE COURT:**  Right.

7          **MS. WAGSTAFF:**  -- and new experts have been generated.

8  And so to the extent, Your Honor, you know, were to have

9  another trial in your courtroom or proceed over one, I'm not

10 sure you would see the same experts just because it has been so

11 long.

12      And Monsanto, you know, is no longer using the same

13 experts either.  So, you know, experts wear out.  This is very

14 tiring, as you can imagine.  And so new experts are

15 constantly --

16         **THE COURT:**  I don't know.  Weisenburger seemed like he

17 was having a great time.  I can't imagine him burning out.

18         **MS. WAGSTAFF:**  Well --

19         **MR. STEKLOFF:**  That's sort of exactly our point,

20 Your Honor, which is that they are trying to claim that the

21 wave -- the counsel need these depositions to move forward in

22 their wave cases.

23      The wave counsel filed a supplement yesterday saying they

24 should benefit from this work that was done in 2018.  I would

25 like to finish my first point, but my second point, which I

1  will just get to quickly, is nothing has prevented a single

2  wave Plaintiff since say wave -- after say the Stevick case,

3  which you will recall, from disclosing an additional general

4  causation expert.

5          And the Plaintiffs' lawyers regularly do so in other cases

6  including Ms. Wagstaff, including Ms. Greenwald and including

7  some of the wave lawyers.

8          **THE COURT:**  Yeah.

9          **MR. STEKLOFF:**  So that the notion that we should be

10  preserving these original four experts -- when I actually every

11  time we get the disclosures -- like, we just recently got a

12  Wave 5 disclosure.  We are in the middle of expert discovery in

13  Wave 5, and we received a Wave 5 disclosure that the general

14  causation experts were the exact four.

15          And I'm taken aback that even though in other

16  jurisdictions they are moving forward with other experts, they

17  are not doing so here.  That was a choice of their own making.

18  So when they say they are unavailable --

19          **THE COURT:**  I understand the point you are making, and

20  you made it in this statement; but I think it's a little

21  question begging as to whether, you know, that it is a

22  significant burden for wave counsel, quote-unquote, to have to,

23  you know, produce new expert testimony with each case --

24          **MR. STEKLOFF:**  But --

25          **THE COURT:**  -- and -- on general causation, and it

1   might be that people have been doing it because they are --

2   they have essentially been forced to do; but it doesn't follow

3   that it's not a significant burden and a significant obstacle

4   to the -- to the Plaintiffs who are trying to bring their cases

5   to trial.

6        And I guess I say -- I make that comment against the

7   backdrop of the -- the principle that I have tried to

8   articulate throughout this proceeding, which is, yeah, we are

9   going to try to give people an opportunity to settle.  We are

10  going to create these mechanisms for them to settle if they

11  wish.

12       And, in fact, we are going to require them to participate

13  in this settlement program; but I guarantee you it's not going

14  to delay or hinder your ability to, you know, get your case to

15  trial.

16       And it seems like this is, you know, a good example of

17  something that we can do to, you know, make -- you know, sort

18  of lower an obstacle to people who are trying to get their case

19  to trial, the people who don't want to settle.

20            **MR. STEKLOFF:**  And that --

21            **MS. WAGSTAFF:**  Go ahead.

22            **MR. STEKLOFF:**  I'm fine.  You can go ahead, Aimee, and

23  then I will respond.  That's fine.

24            **MS. WAGSTAFF:**  Okay.  So another point to your point,

25  Judge, is that, you know, they are still deposing -- you

1   mentioned Dr. Weisenburger.  I have a case that was set for

2   trial on January 23rd just down across the street from you in

3   front of Judge Quinn, and they deposed Dr. Weisenburger in that

4   case like six weeks ago.

5       So the burden of actually doing a trial preservation depo

6   is not great.  I have another trial in St. Louis that they are

7   asking for a Weisenburger deposition in the next three weeks.

8       So he is being deposed.  These experts are being deposed.

9   So just allowing us to go first and do a trial preservation

10   deposition, especially when there is a common benefit tax on

11   these lawyers, I would like to give them some sort of work

12   product that they can take with them.

13       And your point I think is pretty dispositive; that it's up

14   to the trial judge and whether or not a wave can even use it.

15   So just having it would be great.

16       **MS. GREENWALD:**  And they also recently deposed

17   Dr. Jameson in a case -- at least two cases I'm aware of.

18       **MR. STEKLOFF:**  I crossed Dr. Jameson in a trial in

19   2021 -- and I guess that's part of the other point is these

20   witnesses are available.  Put aside Dr. Portier, who we all

21   know who has, I believe, continuing medical issues that

22   started, Your Honor, in the Hardeman case -- but Dr. Ritz,

23   Dr. Weisenburger and Dr. Jameson are available.

24       And the argument we are making is not one of burden but it

25   is one of prejudice because we should be entitled to

1   cross-examine these witnesses live; have credibility

2   determinations made of them live.

3        And this is unlike the tax -- I can distinct the *Taxotere*

4   litigation if I had to although it doesn't sound like that's

5   the basis for your opinion -- but there is an evolving science

6   and regulatory background here that I think -- I don't know if

7   I would call it unique but it is -- you are obviously very

8   familiar with it.  It is very ongoing.

9        So articles are published regularly that are relevant, and

10  I think to lock in testimony now for three witnesses who are

11  available does prejudice Monsanto.

12       One example of that is there are articles that have come

13  out recently that are being -- peer reviewed literature being

14  published by Plaintiffs' experts.  And Dr. Benbrook who -- you

15  have not ruled on Dr. Benbrook.  He has been excluded in some

16  cases and not in others -- is part of a nonprofit now with one

17  Plaintiff lawyer on the board of the nonprofit, and he -- the

18  purpose of the organization in part is to publish literature

19  about Roundup.

20       And we are in the process of trying to investigate

21  conflicts of interest and funding.  He has solicited for

22  donations from attorneys involved in the litigation to fund

23  research on Roundup.

24       So, I suspect that some of these experts may then rely on

25  that research, and we haven't even come full circle in being

1    able to get discovery on about all of these issues.

2        So I think the prejudice to us is not burden.  I'm not

3    suggesting that we couldn't go take -- Portier has recently

4    been done in a state court case.  And so I don't --

5            **THE COURT:**  You mean a preservation --

6            **MR. STEKLOFF:**  A preservation deposition because of

7    medical issues.  It was specific to one case but a --

8    Ms. Greenwald's firm did a full direct examination.  We did a

9    full cross.  So I suspect that Portier is sort of off the table

10   here, but the other three -- I think we would be prejudiced,

11   and we have a right to -- for a jury to observe them in person

12   based on the evolving science.

13           **THE COURT:**  And I think those are arguments that you

14   can make to the trial judge, and it may depend on whether the

15   trial is, you know, three months from now or three years from

16   now or 30 years from now.

17       You know, I -- you know, at some point, I mean, my sense

18   of the literature is it's just sort of -- the argument is just

19   sort of droning on.  Like, there is not, you know, some sort

20   of -- after the AHS study, there is not some dramatic new data

21   that is coming to go bear on the -- it is just sort of, you

22   know, the same argument droning on and on.

23       I may be wrong about that; but, you know, I think the main

24   point is that you can -- you know, you can make an argument to

25   a trial judge that it is prejudicial for this testimony to be

1   presented without full cross-examination.

2       And if there is some new paper that the -- you know, there

3   is some paper that Weisenburger is relying on that ends up

4   being -- having been, you know, ghost written by somebody on

5   the Plaintiffs' side or something like that, then the

6   Plaintiff, you know, in that trial can choose not to rely on

7   that portion of the testimony or they can choose to go with

8   another expert or something.

9       But it seems to me that this has enough of a potential to

10  save, you know, significant amount of resources for, you know,

11  lawyers who may often be solo practitioners and whatnot who are

12  trying to get these cases to trial on behalf of their clients

13  that it's worth doing.

14      I question whether I should allow a preservation

15  deposition for any general causation expert who I did not

16  allow -- who did not get past Daubert in my -- in my courtroom

17  because -- you know, I don't know.  That sounds like it could

18  be a little bit weird to say:  "Well, I haven't tested this

19  expert yet; but I'm going to authorize a preservation

20  deposition for this expert to testify at these trials around

21  the country."

22          MS. GREENWALD:  So, Your Honor, I know that -- I have

23  worked with the Wave 4 through 7 lawyers, and their request has

24  been for Dr. Portier, which we have already talked about, and

25  clearly Dr. Ritz on the epidemiological perspective and would

1    be delighted to also have Dr. Jameson and Dr. Weisenburger.

2         And so that's the focus that our letter was -- was

3    intended to address because some of those lawyers have one or

4    two Plaintiffs.  That's it.  And the amount of expenses that

5    would -- that they would incur on behalf of just two Plaintiffs

6    to have to recreate those experts would be pretty

7    extraordinary.

8         And when we did that in the MDL, it was on behalf of

9    hundreds, if not thousands, at the time; and so that cost could

10   be spread across so many different Plaintiffs.  And I do

11   believe that it would be fair and unfair not to be able to

12   provide that to those lawyers.

13        **THE COURT:**  Do you need Portier or no because he

14   already had one?

15        **MS. GREENWALD:**  I think we should talk to Monsanto

16   about that.  We did do a lengthy deposition of him before a

17   trial we were supposed to go to that ultimately settled.

18        And I think we should talk to them about that, and I don't

19   even know if Dr. Portier is healthy enough to do another one.

20        So I would ask that we have an opportunity to talk to

21   Monsanto about that if Your Honor orders that we have these

22   depositions, but I think we could use that without having to do

23   another one if Monsanto --

24        **THE COURT:**  Okay.  I'm going to order that

25   preservation depositions be taken for Weisenburger and Ritz and

1  Jameson.  And I think if -- you know, you-all can talk about --

2  I wouldn't oppose Portier either if you -- you know, if you

3  decide that it makes sense.  Obviously you shouldn't do it if

4  it is going to jeopardize his health or if you think you got

5  what you need out of the last deposition.

6      MR. STEKLOFF:  Yeah.  I mean, we will double-check and

7  we will confer with Ms. Greenwald; but I'm fairly confident

8  that the parties got what they needed and -- even independent

9  of his health, which we are sensitive to -- we agreed in that

10  instance because of his health that that should be sufficient

11  for both parties and that -- and that that can be used and that

12  would limit it to the other three.

13      THE COURT:  Okay.  I -- I had one other item I wanted

14  to raise briefly.  But before I do, was there anything else

15  that you -- that you-all wanted to talk about?

16                  (No response.)

17      MS. GREENWALD:  Not on our side, Your Honor.  Thank

18  you.

19      MR. STEKLOFF:  Not on behalf of Monsanto, Your Honor.

20      THE COURT:  Okay.  I was -- I was talking to Ken

21  Feinberg the other day, and we were talking about, you know,

22  whether it's time to, you know, look at distributing some of

23  the money from the common benefit fund.

24      And I don't know.  I mean, you know, you are talking about

25  doing these preservation depositions.  There -- the lead

 1    Plaintiffs' counsel is still doing work, kind of administering

 2    this MDL; hopefully helping individual lawyers who need help on

 3    various things.

 4         It strikes me that it may be an appropriate time to -- I

 5    don't know if it's like distribute all -- it may not make sense

 6    to distribute all the money from the common benefit fund, but

 7    it may be appropriate to allow people to apply for a

 8    distribution from the common benefit fund.

 9         You know, I don't know what you think about that; but if

10    you -- if you agree with that, if the Plaintiffs agree with

11    that -- and I'm guessing they probably will -- then the

12    question is who -- you know, we would probably want to have a

13    special master, you know, make a recommendation to me about,

14    you know, what the appropriate distribution should be.

15         My -- what I said to Ken is that -- you know, "my

16    instinct, Ken, is that your talents are better used elsewhere

17    and there are any number of people we can get to do that in

18    this case."

19         So I was sort of inclined to not burden Ken with that --

20    the task of, you know, reviewing applications for distribution

21    from the common benefit fund and making a recommendation to me

22    and that we could find somebody else to do it.

23         But anyway, those are just my initial thoughts.  So what

24    are your reactions to that?

25              MS. WAGSTAFF:  So, Your Honor, back in 2016 or '17,

1  whenever you issued your original common benefit order, part of

2  it was submitting time, right, every month.

3       That month -- that time has not been audited because we

4  haven't had something like Your Honor is suggesting now.

5       What I would propose is that, one, I agree that we need

6  some sort of a special master and Ken Feinberg would be great,

7  but I also agree he is very busy settling cases.  So, perhaps,

8  if Your Honor has someone else in mind, that would be great as

9  well.

10       **THE COURT:**  I haven't thought about it yet, but I can

11  think about it -- it should -- presumably it shouldn't be

12  anybody who is -- in the litigation -- in the litigation world,

13  right, because anybody in the litigation world is going to be

14  potentially connected to the lawyers who are seeking

15  compensation from the fund.  You want somebody sort of

16  separated out from that world; right.

17       **MS. WAGSTAFF:**  Yeah.  And surprisingly, there is -- I

18  haven't looked at -- because the submissions come to my law

19  firm.  I haven't looked at them in months, but surprisingly

20  there is less than ten law firms that have been -- unless some

21  balloon happened in the last couple of months -- that have

22  submitted time.

23       **THE COURT:**  That doesn't surprise me because you guys

24  have done most of the work.

25       **MS. WAGSTAFF:**  Yeah.  So what I would propose is allow

1   the lead law firms to -- that we find a special master.  We

2   find someone that you are talking about and allow us to make a

3   proposal to that person who can then make a proposal to you.

4       That's what I would recommend and that you let us sort of

5   internally try to see what people have submitted; look at the

6   submissions; look at the expenses; look at all of that stuff.

7   Kind of try to self organize and then submit it -- tender it to

8   the special master.  And then if people object to it, they

9   would file objections.

10      **THE COURT:**  I think that all sounds fine.  And then, I

11  don't know, like, maybe the -- is it appropriate to distribute,

12  like half of what's in the fund now and the next half at the

13  end or something like that?  I mean, you can make a proposal

14  about that too, but I'm just spit-balling.

15      **MS. WAGSTAFF:**  Yes, that would be -- that would be

16  appropriate, and we can include it in our proposal.  One thing

17  to think about it is in this particular litigation what

18  Your Honor has ordered is 8 percent from the fees go to fees.

19      And zero percent from the clients go to --

20      **THE COURT:**  8 percent of the total recovery --

21      **MS. WAGSTAFF:**  Uh-huh, comes from fees.

22      **THE COURT:**  -- goes into the fund.

23      **MS. WAGSTAFF:**  Right.

24      **THE COURT:**  But all of that comes from the attorney

25  fee portion.

 1          **MS. WAGSTAFF:**  Right.   That's what Your Honor has

 2   ordered.

 3          **THE COURT:**  And so right now one of the things that we

 4   may ask for in the first instance is that a portion of that

 5   goes into -- so we had an operating account that we were using

 6   to pay for everything that was audited by us to pay for common

 7   expenses, but that is completely empty because -- so we have

 8   just been sort of self funding that.

 9      So one thing we may ask for is that, you know, a portion

10   of that comes into this -- this common fund to pay for these

11   preservation depos or pay for whatever that can be audited by

12   the special master that Your Honor chooses.

13      If -- so that may be one portion of our request, and the

14   other portion would be to probably distribute more than

15   50 percent considering more than 50 percent of the work is

16   probably -- hopefully done in this MDL.   Hopefully.

17          **THE COURT:**  Yeah.   I mean, I will entertain whatever

18   you propose and obviously I will give it my own independent

19   review.   But, you know, whatever you -- whatever you propose,

20   we can start from there.

21      So -- so what -- you know, I have never done anything like

22   this before.   So what's the -- what should we do?

23      Should we have a further case management conference some

24   time in the near future, and then you file a proposal for --

25   you know, for how we go about this, you know, in advance of

1  that; and I can review it and we can talk about it at the next

2  case management conference?

3          MS. WAGSTAFF:  Yeah.  So, I would propose that you,

4  you know, order the co-leads to -- to start auditing the

5  submissions and that -- in the next 30 days, either you appoint

6  one on your own or you elicit suggestions on who the special

7  master could be, and then we would then -- it will probably

8  take us, you know, 30 to 60 days to audit it just because it's

9  six years of time submissions.

10         But we will at least get some sort of a rough estimate,

11  and then we could get a timetable to you and get a proposal to

12  you is what I would propose.  I don't know, Dave or Robin, if

13  that's okay.

14         MS. GREENWALD:  It also gives us time to look into the

15  account.  I will have an update on the account.  We keep the

16  account on payments, Your Honor.  We oversee it.  We don't keep

17  the account.  So, we will get a reporting from that entity that

18  holds money.

19         THE COURT:  I was curious how much was in that common

20  benefit fund.

21         MS. GREENWALD:  I'm sorry, if I had known it was going

22  to be on the agenda today, I would have been able to tell you.

23  I haven't asked for an accounting in the last month or so, so I

24  don't know.  It's -- I don't know.

25         THE COURT:  Okay.  So why don't we have a further --

```
 1   why don't we do this:  Why don't you -- by the way,

 2   Mr. Stekloff or Mr. Martinez or Mr. Kilaru, do you have any

 3   comments you want to make about this?

 4          MR. STEKLOFF:  No, Your Honor.  Before we finish, I

 5   just want to have one -- not re-litigating -- just one

 6   suggestion about the general -- the trial preservation depos.

 7          THE COURT:  Okay.

 8          MR. STEKLOFF:  But nothing on this Your Honor.

 9          THE COURT:  Okay.  Why don't we have a further case

10   management conference -- let's see, today is the 15th -- why

11   don't we have a further case management conference on the 29th

12   of March.  Do it by Zoom at 1:00 o'clock.

13       Why don't we say -- would 10:00 o'clock be easier for you

14   guys?  I know some of you are on the West Coast -- I mean, East

15   Coast.  Most of you are on the East Coast.

16          MS. GREENWALD:  They are both fine.  Whatever is

17   better for you, Your Honor, at least on our side.

18          THE COURT:  Let's do 10:00 o'clock on the 29th.  And

19   then why don't -- why don't the parties jointly file, you know,

20   a proposal, you know, by the 15th for how to -- for what -- you

21   know, setting forth the process that you want -- that you

22   believe should occur.  And if you need to submit a proposed

23   order, you can submit a proposed order at that time too on the

24   15th.

25       And if you have any people you would want to recommend to
```

1   be the special master, you are welcome to do that; but also

2   tell me, like, what type of -- like, where should I be going to

3   look for a special master if I want to appoint my own?  Like,

4   what kind of person should I be looking for?

5        I don't even know the answer to that.  Probably after this

6   status conference, I'm going to get a bunch letters in my

7   inbox; right?  That's usually how it works.

8           **MS. GREENWALD:**  A bunch of volunteers.

9           **MS. WAGSTAFF:**  Your Honor, I think it would be a Ken

10  Feinberg type person.  I think it needs to be someone involved

11  in mass torts at JAMS or, you know, like a Cathy Yanni type

12  person is who I would propose.  I don't know if you still have

13  those lists of -- when you solicited recommendations from us

14  three or four years ago but those type of people.

15          **THE COURT:**  Okay.

16          **MS. WAGSTAFF:**  Do you remember?

17          **THE COURT:**  Vaguely, yeah.

18          **MS. WAGSTAFF:**  I mean, I think it needs to be someone

19  who is intimately familiar with litigation so that they can

20  resolve sort of the value of the hours that people have done

21  and recognize the contributions people made.

22          **THE COURT:**  And somebody who has the ability to sort

23  of, yeah, understand this MDL and what went on and what was

24  important and what wasn't and stuff like that.  Okay.

25                  (Pause in proceedings.)

1          **THE COURT:**  Okay.  So why don't you include some

2   suggestions in your filing that you make on the 15th.  All

3   right.  Is there anything else -- oh, Mr. Stekloff, you said

4   you had -- you wanted to dot an I or cross a T with respect to

5   the preservation depositions.

6          **MR. STEKLOFF:**  Yeah.  I just wanted to propose if

7   Your Honor would accept it and if Plaintiffs' counsel agrees,

8   that maybe by -- give ourselves a little leeway -- maybe by

9   February 24th we submit a joint proposed order on the

10  preservation depositions.

11         So we obviously all reviewed now the *Taxotere* order.  We

12  can sort of use that as a model, but I think there might be

13  things as we discuss that could be ironed out in terms of -- I

14  don't know that we will need a discovery deposition because

15  I -- like, Dr. Ritz, for example, I don't believe in this

16  litigation she has been deposed in quite some time.  Before we

17  do a preservation deposition, we might want a limited new

18  issues discovery deposition, those type of things.  We can talk

19  through those, but we can then come to you with some sort of

20  proposal.

21         We can include in there that it will be up to the

22  transferor judge to determine whether the depositions are

23  admissible, those types of things.

24         I think we can use the *Taxotere* order.  I just thought

25  that would be easier since we are going to be having

```
 1   meet-and-confers than propose something to you.  We can send it
 2   in Word version so -- to Ms. Melen so that you are free to edit
 3   it.  I just thought that might be useful.
 4            THE COURT:  That's a good idea.  So that will be by
 5   the 24th?
 6            MR. STEKLOFF:  Yeah.  Instead of seven days, I was
 7   giving ourselves a little leeway, but we will engage on this.
 8            THE COURT:  Sorry.  What were you proposing?
 9            MR. STEKLOFF:  February 24th, which would give us nine
10   days as opposed to seven.
11            THE COURT:  Yeah, fine.
12                      (Pause in proceedings.)
13            THE COURT:  Sounds good.  All right.  Anything else?
14            MR. STEKLOFF:  No, Your Honor.  Thank you.
15            MS. WAGSTAFF:  Thank you.
16            MS. GREENWALD:  Thank you, Your Honor.
17            THE COURT:  Thank you.
18                      (Proceedings adjourned at 2:37 p.m.)
19                              ---oOo---
20
21
22
23
24
25
```

1

2                    **<u>CERTIFICATE OF REPORTER</u>**

3          I certify that the foregoing is a true and correct

4   transcript, to the best of my ability, of the official

5   electronic sound recording provided to me by the U.S. District

6   Court, Northern District of California, of the proceedings

7   taken on the date and time previously stated in the

8   above-entitled matter.

9          I further certify that I am neither counsel for, related

10  to, nor employed by any of the parties to the action in which

11  this proceeding was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15  DATE:    Thursday, February 23, 2023

16

17

18

19  _____

20              Marla F. Knox, RPR, CRR, RMR
                United States Court Reporter

21

22

23

24

25