UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No. 16-md-02741-VC |
| This document related to:<br><br>*Gilmore v. Monsanto Company*<br>Case No. 21-cv-8159 | **ORDER ON CLASS COUNSEL'S MOTION FOR ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS**<br><br>Re: Dkt. No. 122 |

      In this class action, the plaintiffs claim they paid more for Roundup products than they would have been willing to spend if they'd been warned that the product may cause NHL. The Court preliminarily approved a settlement agreement, and then class members submitted claims that would, under the formula set forth in the agreement, result in a class payout of $12.4 million to $14.2 million. Class counsel now seeks $11.25 million in attorneys' fees, $210,888.10 in litigation expenses, and $5,000 as incentive awards for each class representative, along with settlement notice and administration costs.

**I**

      Class counsel asserts that a fee award of $11.25 million reflects the "25 percent benchmark"—that is, 25 percent of the total settlement amount, which is presumptively reasonable in the Ninth Circuit. Their explanation for why $11.25 million reflects the 25 percent benchmark is as follows:

- The agreement sets a floor and a ceiling for the total amount (in claims, fees, costs, and incentive awards) that Monsanto could pay to settle the case. The floor

  amount is $23 million, and the ceiling amount is $45 million.

- The agreement provides that if the total amount of claims, costs, reasonable attorneys' fees, and incentive awards is less than $23 million, the extra money (to get up to the $23 million floor) goes to the class members—an increase in what each class member will receive beyond original formula contemplated in the settlement agreement.

- Even though the total amount Monsanto pays will not come close to $45 million (because the class members claimed only $12.4 million to $14.2 million under the agreement's formula), the 25 percent benchmark should be pegged to the $45 million ceiling amount, because $45 million was theoretically available for the settlement.

- Therefore, the 25 percent benchmark—that is, the fee award that would be presumptively reasonable—is $11.25 million.

 Except perhaps in the most unusual of circumstances, this is not how to calculate the 25 percent benchmark. In a typical class action settlement, the defendant agrees to pay a specified amount into fund that is non-reversionary, meaning that the defendant has no chance of getting any of that money back. The money is divided between payments to the plaintiff class and payments to the attorneys for fees and costs. And if the number of claims from class members is lower than expected, typically each class member will receive a larger amount than expected. In these circumstances, it's fair to assume that the total settlement amount is a real number—a number from which the 25 percent benchmark for presumptively reasonable fees can be pegged. But when the defendant has a chance of retaining or getting back a significant portion of the settlement amount, that's not a real number, and it makes no sense to peg the 25 percent benchmark to it.

 The better way to identify the 25 percent benchmark for a settlement like this is as follows:

- The settlement agreement calls for Monsanto to pay no less than $23 million.

- The claims period has passed, and it's clear that the only way the settlement amount could exceed $23 million is to award fees to class counsel that would vastly exceed 25 percent of what Monsanto pays in total.
- Therefore, total settlement amount for purposes of measuring the 25 percent benchmark is $23 million.
- Which means that the presumptively reasonable fee amount here is best understood as $5.75 million.

This is not to say, of course, that class counsel is necessarily limited to recovering $5.75 million in fees. In some class action settlements, a fee award greater than the 25 percent benchmark is perfectly appropriate. But it's important first to identify the correct benchmark, so as to avoid artificially inflating (or deflating) the presumptively reasonable level of fees. By pegging the benchmark to the $45 million ceiling amount, class counsel has artificially inflated the presumptively reasonable level of fees.

In support of the idea that the 25 percent benchmark should be pegged to the ceiling amount, class counsel relies primarily on *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997). It's true that some language in *Williams* could be read to suggest that district courts abuse their discretion whenever they decline to award fees pegged to a "settlement amount" agreed to by the parties, even if a massive portion of the "settlement amount" would revert to the defendant after going unclaimed. It's difficult to determine whether the opinion in *Williams* actually stood for this proposition, because its description of the facts was so bare and its analysis was so sparse compared to the typical published appellate opinion. But if *Williams* actually stood for that proposition, it cannot possibly be good law anymore in light of the amendments to Rule 23 and subsequent developments in the case law. *See*, *e.g., Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021) (explaining that ignoring the actual claims may be "a mechanical or formulaic approach that results in an unreasonable reward" and "shirk[s]" the district court's "independent duty to assess the value of the settlement"); *see also Stanikzy v. Progressive Direct Ins. Co.*, 2022 WL 1801671, at *5 (W.D. Wash. June 2, 2022) (explaining

3

that if *Williams* retains any relevance, it can only be to the apparently-unique facts of that case); *Lowery v. Rhapsody Int'l, Inc.*, 2021 WL 7448610, at *8 (N.D. Cal. Sept. 20, 2021). In any event, *Williams* was not about how to properly identify the 25 percent benchmark for a presumptively reasonable fee award; it was about whether the district court's actual fee reduction was proper.

Turning to the question of what the actual fee award should be in this case, there is no reasonable argument for an award higher than the properly-measured benchmark of $5.75 million. As discussed in the accompanying order approving the class action settlement, the claims asserted in this case are somewhat dubious, and subject to attack on many levels. Although counsel ended up achieving a good settlement for class members given the weakness of the claims asserted, the benefits those class members receive from the resolution of these weak claims are, in the grand scheme of things, insubstantial. A very small portion of the class will receive a relatively small amount of money. Nor has Monsanto been caused by this case to put a warning on Roundup labels or to change its behavior in any other way.

And class counsel was not required to do much work in this case to achieve this relatively meager benefit for the class members. There has been no heavy litigation in this case—it basically went straight to settlement. Class counsel notes that it filed other, similar cases around the country, and that this settlement resolves those cases. The idea of compensating class counsel for copycat cases filed around the country seems dubious. But even assuming it could be appropriate in some circumstances, it would not be appropriate here. It's not as if the other lawsuits meaningfully advanced the ball. Indeed, four federal district courts have dismissed class counsel's cases on the merits. *See Ezcurra v. Monsanto Co.*, 2020 WL 5491428, at *6 (S.D. Fla. Aug. 7, 2020) (holding no actionable claim under the Florida Deceptive and Unfair Trade Practices Act); *Weeks v. Home Depot U.S.A., Inc.*, 2020 WL 13220040, at *4 (C.D. Cal. Dec. 16, 2020) (holding the plaintiff failed to state a UCL claim); *Hanna v. Walmart Inc.*, 2020 WL 7345680, at *8 (C.D. Cal. Nov. 4, 2020) (same); *Taylor v. Costco Wholesale Corp.*, 2020 WL 5982090, at *4 (E.D. Cal. Oct. 8, 2020) (same). This class action was filed on August 19, 2020—

after *Ezcurra* was dismissed. And Monsanto wasn't even a defendant in the dismissed California cases.

In terms of a lodestar cross-check, class counsel asserts a loadstar of $7.95 million. But many of the hours were spent on the losing cases identified above. *See* Wade Decl. at 6–9 (dkt. 122-1). Thus, the lodestar offered by class counsel is as artificial as their proposed 25 percent benchmark. If the lodestar were based only on the work performed in this case, it would be roughly $2.4 million. The $5.75 million that class counsel will receive, based on the percentage-of-the-fund method, is plenty, and any larger amount would be unreasonable.[1]

## II

Class counsel also requests $210,888.10 in costs. Most of these expenses were incurred in cases that were dismissed on the merits, and class counsel provides no justification why those expenses should be reimbursed. In a few sentences, class counsel simply notes that courts generally allow for recovery of litigation expenses and summarily says all the expenses were "necessary and reasonably incurred." Dkt. No. 122 at 31. These conclusory statements don't mean much, and the Court cannot tell whether the economic expert's and consultant's work from *Ezcurra* and *Weeks* are duplicative of their work in *Gilmore*. *See* Dkt. No. 122-1 at 13. And there's no explanation, either in the motion or counsel's declaration, of what the marketing consultant actually did: counsel just lumped the marketing consultant's fees with the economic expert's even though they're very different for purpose of prosecuting a case. So even if the costs incurred in the dismissed actions benefited the class, counsel has not established that those expenses were truly necessary and reasonable here. Deducting the costs from *Ezcurra*, *Weeks*, *Hanna* and *Taylor*, class counsel is reimbursed $69,592.05.

## III

The class representatives each are awarded $2,000 rather than the requested $5,000. As discussed, the claims are insubstantial. The class representatives were not deposed or otherwise

---

[1] Even if class counsel were somehow correct that the 25 percent benchmark is $11.25 million, this Court would not award more than $5.75 million in fees for the reasons stated in this ruling.

5

made to do any heavy lifting during the litigation process. This is not the type of case (in contrast to, say, a wage and hour case) where the decision to become a plaintiff itself creates collateral career risks. And there are eight named plaintiffs, not just one or two. Under these circumstances, incentive payments exceeding $16,000 in total ($2,000 for each of the eight plaintiffs) would not be warranted.[2]

## IV

Accordingly, class counsel is awarded $5.75 million as attorney's fees. Counsel shall be immediately paid 80 percent of this amount. After filing the Post-Distribution Accounting, counsel must submit a proposed order releasing the remaining 20 percent of the fee award. Class counsel is also awarded $69,592.05 for litigation expenses, $446,449 for notice costs, and $380,513 for claims administration. The class representatives each are awarded $2,000, for a sum of $16,000.

The remainder of the $23 million fund will go to the class members.

**IT IS SO ORDERED.**

Dated: March 31, 2023

VINCE CHHABRIA
United States District Judge

---

[2] Although Plaintiff Ezcurra claims to have spent roughly 32 hours preparing for a deposition in the Florida federal case, that deposition never occurred because her case was dismissed even before *Gilmore* was filed. *See* Ezcurra Decl. ¶ 6 (Dkt. No. 122-11). Plaintiff Weeks claims to have spent 22 hours, including answering discovery requests, but again, his case against Home Depot was dismissed on the merits. *See* Weeks Decl. ¶ 7 (Dkt. No. 122-10). All other class representatives spent roughly 10 hours for this and related cases.