Thomas R. Kline, Esquire (PA #28895)
tom.kline@klinespecter.com
Tobi L. Millrood, Esquire (PA #77764)
tobi.millrood@klinespecter.com
Christopher A. Gomez, Esquire (PA #82899)
chris.gomez@klinespecter.com
Melissa A. Merk, Esquire (PA #90363)
melissa.merk@klinespecter.com
**KLINE & SPECTER, P.C.**
1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 772-1000

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Caranci, et al., v. Monsanto Co., et al.,*<br>Case No. 3:23-cv-01796-VC | MDL NO. 02741<br><br>**PLAINTIFFS' MOTION TO REMAND THE CASE TO THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COURT OF COMMON PLEAS, PURSUANT TO 28 U.S.C. § 1447(c)** |

Plaintiffs move this Court for an order remanding this case to the First Judicial District of Pennsylvania, Philadelphia Court of Common Pleas, pursuant to 28 U.S.C. § 1447(c).

In support thereof, the following documents are being filed concurrently with this motion:

1.   Memorandum in Support of Plaintiffs' Motion to Remand the Case to the First Judicial District of Pennsylvania, Pursuant to 28 U.S.C. § 1447(c); and

2.   Declaration of Tobi Millrood in Support of Plaintiffs' Motion to Remand the Case to the First Judicial District of Pennsylvania, Pursuant to 28 U.S.C. § 1447(c).

Dated: May 1, 2023

**KLINE & SPECTER, P.C.**

/s/ Christopher A. Gomez
Thomas R. Kline, Esquire (PA #28895)
tom.kline@klinespecter.com
Tobi L. Millrood, Esquire (PA #77764)
tobi.millrood@klinespecter.com
Christopher A. Gomez, Esquire (PA #82899)
chris.gomez@klinespecter.com
Melissa A. Merk, Esquire (PA #90363)
melissa.merk@klinespecter.com
**KLINE & SPECTER, P.C.**
1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 772-1000

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher A. Gomez, hereby certify that, on May 1, 2023, I electronically filed **PLAINTIFFS' MOTION TO REMAND THE CASE TO THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PURSUANT TO 28 U.S.C. § 1447(C)** with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

/s/  Christopher A. Gomez
Christopher A. Gomez

Thomas R. Kline, Esquire (PA #28895)
tom.kline@klinespecter.com
Tobi L. Millrood, Esquire (PA #77764)
tobi.millrood@klinespecter.com
Christopher A. Gomez, Esquire (PA #82899)
chris.gomez@klinespecter.com
Melissa A. Merk, Esquire (PA #90363)
melissa.merk@klinespecter.com
**KLINE & SPECTER, P.C.**
1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 772-1000

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 02741 |
| THIS DOCUMENT RELATES TO: | **NOTICE OF MOTION** |
| *Caranci, et al., v. Monsanto Co., et al.,* Case No. 3:23-cv-01796-VC | |

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 8, 2023 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Ernest Caranci, *et al.*, will move this Court for an order transferring this action to the First Judicial District of Pennsylvania, Philadelphia Court of Common Pleas, pursuant to 28 U.S.C. § 1447(c).

Dated: May 1, 2023                    **KLINE & SPECTER, P.C.**

/s/ Christopher A. Gomez
Thomas R. Kline, Esquire (PA #28895)
tom.kline@klinespecter.com
Tobi L. Millrood, Esquire (PA #77764)
tobi.millrood@klinespecter.com
Christopher A. Gomez, Esquire (PA #82899)
chris.gomez@klinespecter.com
Melissa A. Merk, Esquire (PA #90363)
melissa.merk@klinespecter.com
**KLINE & SPECTER, P.C.**
1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 772-1000

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher A. Gomez, hereby certify that, on May 1, 2023, I electronically filed **NOTICE OF MOTION** with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

/s/  Christopher A. Gomez
Christopher A. Gomez

Thomas R. Kline, Esquire (PA #28895)
tom.kline@klinespecter.com
Tobi L. Millrood, Esquire (PA #77764)
tobi.millrood@klinespecter.com
Christopher A. Gomez, Esquire (PA #82899)
chris.gomez@klinespecter.com
Melissa A. Merk, Esquire (PA #90363)
melissa.merk@klinespecter.com
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 772-1000

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Caranci, et al., v. Monsanto Co., et al.,*<br>Case No. 3:23-cv-01796-VC | MDL NO. 02741<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND THE CASE TO THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COURT OF COMMON PLEAS, PURSUANT TO 28 U.S.C. § 1447(c)** |

**Cases**                                                                                             **Pages**

*Batoff v. State Farm Ins. Co.*,
    977 F.2d 848 (3d Cir. 1992) ................................................................1, 8, 10, 11

*Bolus v. IAT Ins. Grp.*, No. 19-1712, 2019 WL 3001628
    (E.D. Pa. July 9, 2010)..................................................................................13

*Boyer v. Snap-on Tools Corp.*,
    913 F.3d 108 (3d Cir.1990)...............................................7-8, 9-10, 13

*Brown v. Jevic*,
    575 F.3d 322 (3d Cir. 2009)............................................................................9

*Campbell v. United Parcel Service, Inc.*,
    No. 1:19-cv-12211, 2019 WL 5587349 (D.N.J. Oct. 30, 2019) ........................ 13-14

*Chaborek v. Allstate Fin. Servs., LLC*,
    254 F. Supp. 3d 748 (E.D. Pa. 2017) ........................................................11, 14

*Emrich vs. Touche Ross & Co.*,
    846 F. 2d 1190 (9th Cir. 1988) ......................................................................8

*Grancare, LLC v. Thrower by and through Mills*,
    889 F.3d 543 (9th Cir. 2018) .........................................................................8

*In re Briscoe*,
    448 F.3d 201, 206 (3d Cir. 2009)................................................................8, 9

*Kleiner v. Johnson & Johnson*,
    No 21-3366, 2021 WL 3476184 (E.D. Pa. Aug. 6, 2021) ......................................13

*Lyall v. Airtran Airlines, Inc.*,
    109 F. Supp. 2d 365, (E.D. Pa. 2000) ...........................................................11

*Plaxe v. Fiegura*,
    No. 17-1055, 2018 WL 2010025, (E.D. Pa. April 27, 2018)...............................13

*Roggio v. Mcelroy*,
    415 Fed. Appx. 432 (3d Cir. 2011)...............................................................9

*Tincher v. Omega Flex, Inc.*,
    104 A.3d at 328 (Pa. 2014) ........................................................................12

**Statutes**

28 U.S.C. § 1446(c)(1)...........................................................................1, 3, 13, 15

The Court should remand this Roundup case to state court. There is no diversity of jurisdiction because the Plaintiffs and two hardware stores where Plaintiffs purchased Roundup are all citizens of Pennsylvania. Monsanto removed the case on grounds that the two Pennsylvania stores were fraudulently joined and hence their citizenship should be disregarded when assessing diversity of jurisdiction. Monsanto fails to meet its heavy burden of establishing fraudulent joinder because Plaintiffs asserted valid Pennsylvania-law claims against both defendants. Monsanto also removed this case more than one-year after it was filed, requiring Monsanto to establish that Plaintiff acted in "bad faith" to prevent removal of the case. Yet Monsanto fails to meet that burden as well given that Plaintiffs took no steps to prevent removal and Monsanto's counsel was readily able to obtain the information on which removal was based.

## I.      Issues Presented

1.      Whether Monsanto has established that Plaintiffs' claim against the non-diverse Pennsylvania retailers is "wholly insubstantial and frivolous," *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992), where those retailers are sellers within the stream of commerce and hence capable of being strictly liable for harm caused by a product under Pennsylvania law?

2.      Whether Monsanto has established that "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action," 28 U.S.C. § 1446(c)(1), so as to justify its otherwise untimely removal of this case, where Plaintiff took no steps to disrupt Monsanto's ability to remove the case, Monsanto's counsel was readily able to obtain the information on which removal was based, and if anything removal appears timed to disrupt a bellwether trial in the Philadelphia Mass Tort program where Monsanto agreed to the trial of this case?

## II.      Factual and Procedural Background

This case concerns Roundup weed killer ("Roundup"). Plaintiffs filed this case on June 29,

2021, in the Philadelphia County Court of Common Pleas. The complaint alleged that Ernest Caranci developed Non-Hodgkin's Lymphoma as a result of the negligent and wrongful conduct of Defendants Monsanto Company ("Monsanto"), Bayer AG ("Bayer"), S&H Hardware & Supply Company ("S&H"), Penn Hardware, Inc. ("Penn Hardware") and Penn Hardware Two, Inc. ("Penn Hardware Two"). *See* Millrood Decl., Ex. A, at 3. Among other things, the complaint alleged that Defendants all knew or should have known that exposure to Roundup could result in cancer and other severe illnesses and injuries to the users of these products, including Plaintiff Ernest Caranci, and that Defendants failed to warn of the dangerous risks associated with the use of Roundup products. *See, e.g., id.* at ¶¶ 167, 183, 210.

Plaintiffs' state-court complaint contains well-pleaded allegations giving rise to eight causes of action against all Defendants, including strict liability, negligence, breach of implied warranty and fraudulent concealment. Specific to Penn Hardware and Penn Hardware Two, Plaintiffs allege these Pennsylvania defendants sold Roundup in their stores in Philadelphia to Plaintiff Ernest Caranci. *See id.* ¶¶ 22-27, 37-42. Plaintiffs also allege that the conduct of all Defendants (including Penn Hardware and Penn Hardware Two) jointly and severally caused Plaintiff Mr. Caranci to suffer severe, permanent and grievous personal injuries and damages. *Id.* ¶ 142. Plaintiffs served Monsanto, S&H, Penn Hardware and Penn Hardware Two on June 29, 2021. *See* Millrood Decl., Ex. B. They served Bayer on June 30, 2021. *Id.*

On July 30, 2021, Penn Hardware Two filed Preliminary Objections in the response to these state-court actions, alleging that Plaintiffs' negligence claims against retailers are legal insufficient and that Plaintiffs failed to state a valid claim for breach of implied warranty. *See* Millrood Decl., Ex. C. Plaintiffs filed an Amended Complaint on August 19, 2021. *See* Millrood Decl., Ex. D. The amended complaint limited the claims against Penn Hardware and Penn

Hardware Two to strict liability claims. *Id.* As a result, Penn Hardware Two's Preliminary Objections were marked as moot on August 23, 2021. Millrood Decl., Ex. B. No preliminary objections were filed in response to the amended complaint. *Id.*

Plaintiffs served a Plaintiff Fact Sheet ("PFS") on the common counsel for Monsanto and Penn Hardware Two on January 10, 2022. *See* Millrood Decl., Ex. E. In that fact sheet, Plaintiffs verified that he purchased Roundup from Penn Hardware located on Frankford Avenue in Philadelphia. *Id.* at 12. Defendants did not respond to the fact sheet with a deficiency letter. They did not assert that the information in the PFS was inadequate or incomplete. They did not file a motion to dismiss the claims against Penn Hardware Two. On February 11, 2022, Plaintiffs produced additional medical records to all Defendants. *See* Millrood Decl., Ex. F. The case and discovery were well underway even before the Mass Tort Program was established.

On February 10, 2022, Plaintiffs filed a Petition to Coordinate Roundup Products Liability Cases Currently Pending in the Philadelphia Court of Common Pleas and for Mass Tort Designation ("Petition to Coordinate") in a related case. *See* Millrood Decl., Ex. G. In the Petition, Plaintiffs argued that coordination would promote judicial economy and facilitate the efficient resolution of Roundup case. *Id.* at 5. Plaintiffs did not request a stay of any pending case, including the *Caranci* or *Purnell* cases. *Id.*

In their Opposition, Defendants argued that Plaintiffs "attempted to defeat federal jurisdiction and prevent removal to federal court by naming . . . local retail stores as defendants." *See* Millrood Decl., Ex. H, at 3. Defendants highlighted this purported concern about Plaintiffs' purported effort to "defeat federal jurisdiction," eight months after the instant action was commenced. *Id.* Had they wanted to remove the case, they had four months to do so consistent with the one-year deadline for removal of cases set forth in 28 U.S.C. § 1446. Defendants did not

3

remove the case during this four-month time period. Nor did they seek to challenge the claims against the local retail stores, nor seek any additional information relevant to possible removal.

In March 2022, the parties continued to exchange authorizations and requests to obtain medical records. No requests were made regarding dates that Plaintiff purchased Roundup at Penn Hardware store. On April 20, 2022, stipulations to discontinue claims against Defendants Bayer and S&H were filed. *See* Millrood Decl., Ex. B.

On May 11, 2022, Judge Abbe Fletman, the supervising judge of Philadelphia's Mass Tort Program, granted the Petition to Coordinate and ordered that all currently filed Roundup cases be transferred to Complex Litigation for coordination. *See* Millrood Decl., Ex. I. Judge Fletman further ordered that all responsive pleadings were stayed until responsive pleading deadlines were established in future case management orders. *Id.* The order was silent as to discovery, meaning, at that point, there was no impediment to Defendants seeking additional information if they chose to do so.

One month later, on June 7, 2022, Judge Fletman entered a case management order staying all discovery for all cases (including this one) lodged within the *In Re: Roundup® Products Liability Litigation* mass tort program. *See* Millrood Decl., Ex. J.[1] Throughout the remainder of 2022, the parties worked with Judge Fletman to establish case management orders that would govern the coordinated program. In December 2022 and January 2023, the parties negotiated a protocol for identification of cases for discovery and trial selection. Plaintiffs and Defendants both agreed that *this case* would be the first Roundup case tried in Philadelphia County. In their submission to Judge Fletman, Defendants explained why *Caranci* should be the first case tried in

---

[1] Currently approximately 181 cases are coordinated in Philadelphia's *In re Roundup* mass tort program. It is anticipated that many more cases will be filed in coming months and years.

the program. They emphasized the efficiencies associated with trying *Caranci* first because of its advanced stage of discovery relative to other cases in the Roundup mass tort program:

> ***The first-filed case is in a unique position and can be tried first. This allows trials to begin while the parties implement a process to identify and work up the first trial group.*** The first case, *Caranci v. Monsanto Company, et. Al.,* June Term 2021 No. 02213, is procedurally in the best position to proceed to trial first if trials are to begin in early 2024. Plaintiffs' liaison counsel advised during the [case management conference] that they want to try *Caranci* first, and Defendants agree that would be appropriate in this unique circumstance because discovery in *Caranci* began before this program was formed. Defendants have a completed PFS, and more importantly, sufficient medical records, to begin depositions. Trying this case first ensures there will not be delay in starting trials while the necessary steps are taken to evaluate cases and select representative cases for the first trial group. It also addresses concerns raised about delaying the trial in this case in particular.

*See* Millrood Decl., Ex. K, at 2 (emphasis in original). Thus, Monsanto itself agreed that *Caranci* was the most advanced case in the program, that it was in the best position to be tried first, and that it should be tried first.

On January 31, 2023, Plaintiffs filed a Short Form Complaint, in the form agreed upon by the parties and entered by the state court. *See* Millrood Decl., Ex. L. Plaintiffs named Penn Hardware Two and set forth the bases for their claims. *Id.* Defendants did not file any responsive pleadings. *See* Millrood Decl., Ex. B. On February 3, 2023, Plaintiffs served an amended Plaintiff Fact Sheet. *See* Millrood Decl., Ex. M. Defendants did not respond with a deficiency letter or any motion practice.

On February 6, 2023, Judge Fletman entered Case Management Order No. 6 ("CMO 6"), "govern[ing] the schedule of the first round of trials and pretrial deadlines" for cases in the coordinated Roundup proceedings. *See* Millrood Decl., Ex. N. In CMO 6, Judge Fletman assigned twelve Roundup cases identical pretrial deadlines with a fact discovery deadline of April 4, 2023. *Id.* The final version of CMO 6 ordered *Caranci* to be first listed for trial, with jury selection to begin October 5, 2023. *Id.*

Importantly, CMO 6 provided for that <u>all</u> fact discovery regarding these twelve cases be completed within roughly two months after CMO 6 was entered. *Id.* With such a short time frame to conduct fact discovery in twelve cases (including this one), Plaintiffs and Plaintiffs' counsel immediately were active involved in discovery proceedings. Mr. and Mrs. Caranci presented for deposition on March 3, 2023. Several other depositions were scheduled and noticed, including Mr. Caranci's treating oncologist on March 31, 2023, his treating primary care provider on April 6, 2023, and three family members on March 28, April 3, and April 11, 2023. Between the entry of CMO 6 on February 6, 2023 and April 11, 2023 (the close of the discovery deadline), the parties were scheduled to conduct and/or did conduct depositions of seven case-specific fact witnesses.

On March 30, 2023, the day before the deposition of Mr. Caranci's treating oncologist, Monsanto filed a notice of removal on grounds that Plaintiffs fraudulently joined Penn Hardware and Penn Hardware Two (and hence that those defendants should be disregarded for purposes of assessing diversity jurisdiction) and that Defendants were not subject to the federal law's strict one-year limitation on removal of diversity cases because of Plaintiffs' purported "bad faith" in suing the hardware defendants. *See* Millrood Decl., Ex. O.

In the Notice of Removal, Monsanto alleges that Penn Hardware and Penn Hardware Two were fraudulently joined. Defendant argued that (1) although a hardware store has continuously operated at 7404 Frankford Avenue in Philadelphia for many decades, Penn Hardware stopped operating the hardware store in 1986 and Penn Hardware Two was not incorporated and did not begin to operate the hardware store until 2005; (2) hence there is a gap between 1986 and 2005 during which the hardware store was operated by another entity; and (3) Plaintiff testified that he used and purchased Roundup from the hardware store during that gap, since he started using Roundup purchased from Penn Hardware in 1989 and shopped there until 1992. *Id.* Defendant

argues that Plaintiffs' failure to name the correct jural entity proves fraudulent joinder. *Id.*

Regarding Monsanto's claim of bad faith—necessary to overcome its failure to remove this case within a year of filing—Monsanto argues that it "was not able to learn this information until the applicable case management orders permitted case-specific discovery." *Id.*, ¶ 8. This would not establish bad faith as a threshold matter. More importantly, the statement is untrue since Defendants had actual knowledge of the facts that grounded their "bad faith" argument and also enjoyed multiple opportunities within a year of filing either to file preliminary objections in the Philadelphia courts or remove the action. Instead, Defendants lay in wait for the late removal of this case—a case that Defendants themselves supported as the first bellwether trial in the Philadelphia Roundup mass tort program.

## III.    Argument

### A.    Monsanto Has Failed to Meet Its Heavy Burden of Proving Penn Hardware and Penn Hardware Two Were Fraudulently Joined.

As Plaintiffs assert no federal claims, this matter is only removeable on the basis of diversity under diversity jurisdiction. Yet Plaintiffs are citizens of Pennsylvania. And Monsanto does not contest that Penn Hardware and Penn Hardware Two are Pennsylvania citizens as well. So there is no diversity of jurisdiction as a baseline in this case. Monsanto argues Penn Hardware and Penn Hardware Two should be disregarded for purposes of assessing the existence of diversity jurisdiction on the basis that they were fraudulently joined. But this argument is wrong, as set forth below.

### 1. Requiring a heavy burden of persuasion, the Third Circuit has found fraudulent joinder only on rare occasions.

The removal statutes "'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-on Tools Corp.,* 913 F.3d 108, 111 (3d Cir.1990)

(citation omitted). As such, "'the removing party carries a heavy burden of persuasion'" in establishing fraudulent joinder. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992).

To meet this heavy burden, a removing defendant asserting fraudulent joinder must show "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Id.* Stated differently, the claim against the non-diverse or forum defendant must be "wholly insubstantial and frivolous." *Id.* at 852. This inquiry is less "searching" than the pleading standard found in 12(b)(6) – wherein the court assesses whether the plaintiff has failed to state a claim upon which relief can be granted. *See id.* In the fraudulent joinder analysis, "[i]f there is ***even a possibility*** that a state court would find that the complaint states a cause of action against one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Boyer,* 913 F.2d at 111 (quotation omitted) (emphasis added).

Under the above standard, the Third Circuit[2] has found fraudulent joinder to apply only in three cases. The first case finding fraudulent joinder was *In re Briscoe*, where the plaintiffs' claims against non-diverse defendants were "clearly time-barred" under the statute of limitations. *See In re Briscoe*, 448 F.3d 201, 206 (3d Cir. 2009). The case also came before the Third Circuit on a writ of mandamus – "'a drastic remedy that a court should grant only in extraordinary circumstances in response to an act amounting to a judicial usurpation of power.'" *Id.* at 212, 220 (citations omitted). While the Third Circuit affirmed the district court's finding of fraudulent joinder, the court was careful to contextualize its ruling in terms of the "extraordinary" nature of

---

[2] Plaintiffs invoked Third Circuit law since the case was removed to the Eastern District of Pennsylvania, which is where the remand motion ordinarily have been filed and where Plaintiffs had prepared to file the motion. The JMPL transferred the case to the Northern District of California shortly before the remand motion was filed. While the motion is argued under Third Circuit case law, Ninth Circuit law parallels the Third Circuit in this regard. *Emrich vs. Touche Ross & Co.*, 846 F. 2d 1190, 1995 (9th Cir. 1988); *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 549-550 (9th Cir. 2018).

the relief sought given that defendants based their appeal on a writ of mandamus. *Id.* at 226. The Third Circuit also stated that it would undertake only a "limited consideration of reliable evidence" such as conclusive proof the plaintiff's case was time-barred, or evidence that is properly subject to judicial notice. *Id.* at 220.

*Jevic* is the second case finding fraudulent joinder involved the claims of several workers against several entities including a bankrupt transportation facility, Jevic Transportation, Inc. ("Jevic"). *Brown v. Jevic*, 575 F.3d 322, 325 (3d Cir. 2009). Jevic was subject to an automatic stay of all claims against it due to its bankruptcy filing. *Id.* On appeal, the principal issue was whether the plaintiff fraudulently joined Jevic simply to thwart removal given federal bankruptcy law providing that a post-petition case cannot be removed until the automatic stay is lifted. *Id.* at 325-26. The Third Circuit agreed that the plaintiff had fraudulently joined Jevic given that the plaintiff knew Jevic's bankruptcy made the case not removeable and because the plaintiff "had no reasonable basis to believe that [Jevic] was amenable to suit." *Id.*

In a third, non-precedential case, the Third Circuit found fraudulent joinder applied to a defamation claim against a law firm and lawyer that was clearly "barred by New Jersey's absolute litigation privilege[.]" *Roggio v. Mcelroy*, 415 Fed. Appx. 432, 433 (3d Cir. 2011). In this case, like *Briscoe*, there was no question that the defendant was not liable under unequivocal legal principles.

The Third Circuit otherwise has found that removing defendants did not meet their burden of establishing fraudulent joinder or otherwise did not reach the doctrine. In *Boyer*, the district court found fraudulent joinder of non-diverse defendants because it reasoned they would prevail on a motion for summary judgment due to the plaintiff having signed a release with them. *Boyer*, 913 F.2d. at 110. The Third Circuit reversed, holding that a projection about how merits

9

determinations would unfold down the road does not justify a fraudulent joinder in the first instance. *Id.* at 111. *Boyer* makes clear that a district court may not convert a "threshold jurisdictional issue into a decision on the merits." *Id.* at 112.

In *Batoff*, the Third Circuit reversed the district court's finding of fraudulent joinder where the lower court employed the same standard it would have applied on a 12(b)(6) motion to a claim of fraudulent joinder. *Batoff*, 977 F.2d at 852. The plaintiff in *Batoff* was a psychologist who was assigned the right to sue State Farm Insurance Company for its failure to pay Batoff's patients' bills. *Id.* at 849. State Farm, Batoff alleged, had engaged in a civil conspiracy with another psychologist, Paul, who submitted reports that Batoff's services were not necessary or otherwise reimbursable. *Id.* The district court found that Paul was fraudulently joined because the complaint "fail[ed] to state a valid claim" against him. *Id.* at 850. Reversing the district court's decision, the Third Circuit stated that, "while the court did not characterize its analysis as being the same as it would make on a ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), that is exactly what it was." *Id.* at 852. Characterizing its own analysis, the Court emphasized that its inquiry into Pennsylvania "should not" be penetrating since otherwise the Could would decide the "diversity case on the merits, even though the parties are not diverse." *Id.* at 853.

### 2.    The Pennsylvania defendants were properly named and not fraudulently joined.

Against this jurisprudential backdrop, especially when resolving all doubts in favor of remand, Plaintiffs' claims against Penn Hardware and Penn Hardware Two were entirely appropriate when filed and were deserving of exploration and litigation. It was only in the course of discovery the parties learned that while Mr. Caranci had purchased Roundup for many years from a store called "Penn Hardware" located at 7404 Frankford Avenue in Philadelphia, he did not purchase Roundup at that location during the time the hardware store was owned by the

corporate entities known as "Penn Hardware" or "Penn Hardware Two." As Defendants concede, these corporate names are extremely similar. ECF No. 1, Not. of Rem., ¶ 27. And there is no evidence that the name of the storefront itself changed at any time before, during, or after Mr. Caranci purchased Roundup at the store. At most Plaintiffs sued the wrong legal entity. They did not file a suit that was so intrinsically meritless that it could viewed as "wholly insubstantial and frivolous" and support a finding of fraudulent joinder.

Under federal law, it is not even enough that a federal district court would grant a motion to dismiss in the defendant's favor to support a finding of fraudulent joinder. *See Batoff*, 977 F.2d at 852 (finding that the court "erred in converting its jurisdictional inquiry into a motion to dismiss" and explaining that fraudulent joinder was a more rigorous standard than a Rule 12(b)(6) motion); *Lyall v. Airtran Airlines, Inc.,* 109 F. Supp. 2d 365, 367–68 (E.D. Pa. 2000) (stating that even if the federal court "come[s] to believe that, at the end of the day, a state court would dismiss the allegations against a defendant for failure to state a cause of action[,]" that is still not enough to find fraudulent joinder). Under this principle, even if Defendants can show that the hardware defendants should be dismissed under dispositive motion practice (something that no defendant has sought in this case), Defendants still cannot show that the Plaintiffs' claims against the hardware defendants rise to the level of fraudulent joinder.

Moreover, even if Plaintiffs' purpose here in suing Penn Hardware and Penn Hardware Two was purely strategic, a "strategic purpose of avoiding federal jurisdiction is neither improper nor legally relevant." *Chaborek v. Allstate Fin. Servs., LLC*, 254 F. Supp. 3d 748, 753 (E.D. Pa. 2017). If avoiding federal jurisdiction were an improper motive, Defendants' opposition to remand would simply represent the same strategic thinking in reverse. *See id.* Taking strategic considerations off the board, the U.S. Supreme Court has held that the motive of a plaintiff joining

an additional defendant is "immaterial" so long as there is a good faith cause of action against those joined. *Id.*, citing *Mecom v. Fitzsimmons Drilling Co. Inc.* 284 U.S. 183, 189 (1931). "Even a specific intent to avoid federal jurisdiction is of no moment. 'The fact that the plaintiffs' motive for joining a [non-diverse] defendant is to defeat diversity is not considered indicative of fraudulent joinder.'" *Id.*, citing *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 32 (3d Cir. 1985). The only question is whether viable claims against the non-diverse defendant existed. They did.

Here, there can be no question that Plaintiffs' allegations against Penn Hardware and Penn Hardware Two are well-pled. In a products liability case under Pennsylvania law, every "seller" in the stream of commerce may be strictly liable to the plaintiff for harm caused by a product. *See Tincher v. Omega Flex, Inc.*, 104 A.3d at 328, 389 (Pa. 2014); *see generally* RESTATEMENT (SECOND) OF TORTS § 402A (setting forth the general rule that sellers are strictly liable for product defects). In fact, Penn Hardware Two filed preliminary objections as to certain causes of action, including negligence and breach of warranty *but not as to strict liability*. At that time, Defendants could have raised a preliminary objection under Pennsylvania law averring insufficient specificity in a pleading pursuant to Pa.R.Civ.P. 1028(a)(3). Through that objection, Defendants could have sought a more specific factual pleading as to the time period during which Plaintiff purchased Roundup from its store. Rather than doing so, the litigation continued against Penn Hardware Two and the issue was explored in discovery. Defendants' failure to explore this issue underscores that Plaintiffs' claims against the hardware defendants do not amount to fraudulent joinder.

As the hardware defendants were not fraudulently joined, their citizenship cannot be disregarded for purposes of jurisdictional analysis. Accordingly, this case suffers from incomplete diversity and is not removable on the basis of diversity of citizenship.

12

**B.** **Defendant's Notice of Removal is Untimely Because More Than a Year Has Passed Since the Complaint Was Filed and There Is No Bad Faith.**

As with its fraudulent joinder argument, Defendant has failed to carry its heavy burden that Plaintiffs have acted in bad faith to prevent removal. "A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). "'Because a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists,' and because 'all doubts should be resolved in favor of remand,' . . . a removing party who contends that the plaintiff acted in bad faith to prevent removal bears a 'heavy burden of persuasion. . .'" *Plaxe v. Fiegura*, No. 17-1055, 2018 WL 2010025, at *4 (E.D. Pa. April 27, 2018) (citing *Boyer*, 913 F.2d 108 at 111).

Courts that have considered this language have agreed that "bad faith is evidenced only by intentional conduct on behalf of the plaintiff which denies the defendant the opportunity to remove the case to federal court." *Bolus v. IAT Ins. Grp.,* No. 19-1712, 2019 WL 3001628 (E.D. Pa. July 9, 2010) (finding the defendants had not met their "heavy burden of persuasion" and remanding the matter to state court).

Under the case law, a plaintiff's legitimate efforts to litigate in state court rather than federal court does not amount to "intentional conduct" required to demonstrate bad faith. *Plaxe*, 2018 WL 2010025, at *8 (remanding to state court even where "it is undoubtedly true that the plaintiff preferred to try the case in state court for tactical reasons"). Rather, "a distinction must be drawn between legitimate strategy in high-stakes litigation as opposed to bad faith." *Kleiner v. Johnson & Johnson*, No 21-3366, 2021 WL 3476184, at *3 (E.D. Pa. Aug. 6, 2021). Moreover, it is not only the plaintiffs' actions that are relevant; courts also may consider the defendants' actions, or

indeed inactions, during the relevant period. *Chaborek*, 2019 WL 5587349, at *3 (questioning why defendants did not move to dismiss and noting instead that the parties proceeded with discovery).

Against that backdrop, the relevant facts here are straightforward and demonstrate that there was no bad faith under this stringent standard. First, Plaintiffs named the retail location where Plaintiff purchased Roundup, which caused him to develop Non-Hodgkin's Lymphoma. He had colorable claims against the retailers. That is a conventional and well-grounded cause of action under Pennsylvania law. In response, Penn Hardware Two filed preliminary objections to Plaintiffs' complaint. Obviously Penn Hardware Two knew its own corporate history and knew that it was not incorporated until 2005. Yet it never sought more specific factual averments as to when Plaintiff purchased Roundup at Penn Hardware. It did not raise the issue with Plaintiffs' counsel. It did not engage in any motion practice or discovery on this point.

Second, during the one year following the filing of the complaint, Plaintiffs provided Defendants with a fact sheet that verified that he purchased Roundup from the Penn Hardware store. Defendants never responded with inquiries about what years he purchased Roundup at Penn Hardware as opposed to another location. They never explored the issue of timing at all. Third, the parties actively litigated this matter and dozens of others pending in state court in Philadelphia. During the first year after litigation commenced, Defendants complained about Plaintiffs' filing in state court, but they did not take action to remove the matter until 21 months had passed and the case was listed for trial in just a few months as the lead bellwether trial in a major state-court mass tort program.

The facts here show Plaintiffs' compliance with the relevant case management orders and efforts to complete discovery quickly to be prepared for an October 2023 trial. Whatever the reason that the corporate entity responsible for the "Penn Hardware" store at 7404 Frankford Avenue was

not named in the complaint when it was filed in June 2021, nothing about that demonstrates "bad faith" under the standard set forth above. Defendants certainly were not deprived the opportunity to remove this case earlier when they themselves possessed the requisite information about their corporate lifespans and had the ability to investigate the timing questions through pointed questions and discovery. At most the naming of the wrong corporate entity was an oversight, followed by a strategic decision to use limited resources to obtain discovery from Monsanto rather than the sellers under the limited timeframe available to conduct discovery in this case. Had the corporate entity that was responsible for the "Penn Hardware" store at 7404 Frankford Avenue between 1989 and 1992 been named in the original and amended complaint in 2021, there would be no grounds whatsoever for removal following the depositions of Plaintiffs. Defendants had every opportunity to explore the issue within the first year following the commencement of the action. Not only did Plaintiffs do nothing to thwart access to information relevant to removal, Plaintiffs provided early discovery, before the creation of a mass tort program in Philadelphia and before any discovery requests were served in this individual case. Monsanto made no attempts to secure the additional information it now claims was necessary for removal. Any gamesmanship here is on the part of Defendants who are using removal to frustrate the mass tort protocol established by Judge Fletman in a well-established, coordinated mass tort program and avoid the bellwether trial set for October 2023 in this matter. At a minimum, there is no "bad faith" that would justify setting aside the one-year limitation on removal under 28 U.S.C. § 1446.

IV.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant their Motion and remand this case to the Philadelphia Court of Common Pleas.

Dated: May 1, 2023                    **KLINE & SPECTER, P.C.**

/s/ Christopher A. Gomez
Thomas R. Kline, Esquire (PA #28895)
tom.kline@klinespecter.com
Tobi L. Millrood, Esquire (PA #77764)
tobi.millrood@klinespecter.com
Christopher A. Gomez, Esquire (PA #82899)
chris.gomez@klinespecter.com
Melissa A. Merk, Esquire (PA #90363)
melissa.merk@klinespecter.com
**KLINE & SPECTER, P.C.**
1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 772-1000

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher A. Gomez, hereby certify that, on May 1, 2023, I electronically filed **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND THE CASE TO THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PURSUANT TO 28 U.S.C. § 1447(C)** with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

/s/  Christopher A. Gomez
Christopher A. Gomez