# EXHIBIT O

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERNEST CARANCI and CARMELA CARANCI, <br><br> Plaintiffs <br><br> v. <br><br> MONSANTO COMPANY, PENN HARDWARE, INC., and PENN HARDWARE TWO, INC., <br><br> Defendants | No. _____ |

## DEFENDANT MONSANTO COMPANY'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws), Defendant Monsanto Company ("Monsanto") hereby gives notice of removal of this action, captioned *Ernest Caranci, et al. v. Monsanto Company, et al.*, bearing case number 210602213, from the Court of Common Pleas of Philadelphia County, Pennsylvania to the United States District Court for the Eastern District of Pennsylvania.[1] Pursuant to 28 U.S.C. § 1446(a), Monsanto provides the following statement of grounds for removal.

### Introduction

1. Plaintiffs Ernest Caranci and Carmela Caranci bring this product liability lawsuit against Monsanto alleging injuries from the use of Monsanto's Roundup®-branded herbicides, which have glyphosate as their active ingredient. For decades, farmers have used glyphosate-based herbicides to increase crop yields, and home-owners, landscaping companies, and local government agencies have used these herbicides for highly effective weed control. Glyphosate is one of the most thoroughly studied herbicides in the world, and glyphosate-based herbicides have

---

[1] This caption is correct. Although Plaintiffs named other companies as defendants in the Complaint, those defendants were voluntarily dismissed (as discussed below), so they are no longer part of this lawsuit. *See* ¶ 14, *infra*.

received regulatory approval in more than 160 countries. Since 1974, when Monsanto first introduced a Roundup®-branded herbicide to the marketplace, the United States Environmental Protection Agency repeatedly has concluded that glyphosate does not cause cancer. Nevertheless, Plaintiffs allege that Mr. Caranci developed cancer—specifically, chronic lymphocytic leukemia ("CLL")—caused by exposure to Monsanto's glyphosate-based herbicides.

2. This is one of many lawsuits that have been filed against Monsanto involving Roundup®-branded herbicides. A multidistrict litigation ("MDL") proceeding is pending in the United States District Court for the Northern District of California, before the Honorable Vince G. Chhabria, pursuant to 28 U.S.C. § 1407. *See In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal.); *In re Roundup Prods. Liab. Litig.*, MDL No. 2741, 214 F. Supp. 3d 1346 (J.P.M.L. 2016). This case properly belongs in federal court—and more specifically, in the *Roundup* MDL proceeding.

3. Plaintiffs are Pennsylvania citizens and therefore of diverse citizenship from Monsanto. Plaintiffs tried to avoid complete diversity and defeat Monsanto's right to remove by asserting claims against two in-forum Pennsylvania companies—Penn Hardware, Inc. and Penn Hardware Two, Inc. (collectively, the "Retailer Defendants")—from which Plaintiffs allege Mr. Caranci purchased Roundup®-branded products. However, this strategy fails because Plaintiffs have no viable claims against these in-forum defendants, so they are fraudulently joined: One of those defendants was no longer in existence when Mr. Caranci first purchased Roundup; the other was not yet in existence when Plaintiff stopped shopping at "Penn Hardware."

4. Moreover, Plaintiffs' attempt to avoid litigating this case in federal court by naming non-diverse defendants (one of which has not been in existence for many years) while knowing all along that they have **no viable claims** against the only existing Retailer Defendant, Penn Hardware Two, Inc., constitutes bad faith. This fact was only revealed to Monsanto this month, at Plaintiff Ernest Caranci's March 3, 2023 deposition. In light of Plaintiffs' bad faith, the one-year limitation on diversity-based removals of action is inapplicable to this action. *See* 28 U.S.C. 1446 (c)(1) (providing for "bad faith" exception to one year limitation).

2

5. Specifically, Monsanto learned for the first time at Mr. Caranci's deposition on March 3, 2023 that Mr. Caranci has not shopped at any "Penn Hardware" store since 1992. However, Penn Hardware Two, Inc. (a separate entity from Penn Hardware, Inc.) was not incorporated until 2005. Accordingly, Mr. Caranci never bought a Roundup® product from Penn Hardware Two, Inc. Plaintiffs thus have no viable claims against that defendant for purchases that allegedly occurred long before it existed. The presence of this in-forum defendant must be disregarded when the Court evaluates the issue of diversity jurisdiction.

6. The only other remaining in-state defendant, Penn Hardware, Inc., has not been an existing entity since 1986, which renders Plaintiffs' claims against it baseless for two different reasons: (1) Mr. Caranci did not begin using Roundup® until 1989—three years *after* Penn Hardware, Inc. had already ceased to exist, and (2) as a long-defunct entity, Penn Hardware, Inc. cannot be sued as a matter of law. Accordingly, Penn Hardware, Inc. was also fraudulently joined. In addition, although Plaintiffs filed an affidavit of service on Penn Hardware, Inc., it is clear from the face of the affidavit of service that Penn Hardware, Inc. was not actually served. Even if there had been valid service on this defunct entity (which has never occurred), Plaintiffs never pursued a default judgment when the company did not answer.

7. Underscoring that Plaintiffs never had a good faith intent to prosecute their claims against the diversity-destroying defendants, Plaintiffs have never served any discovery on these local defendants and otherwise failed to litigate their claims against them. *See In re Roundup Products Liab. Litig. (Renteria)*, No. 16-MD-02741-VC, 2022 WL 17839995 (N.D. Cal. Aug. 30, 2022) (making Section 1446(c)(1) bad-faith finding and denying remand motion because plaintiff engaged in "removal-thwarting gamesmanship" and did not actively litigate any claims against removal-spoiling defendant in state court).

8. The timing of case-specific discovery and Mr. Caranci's deposition was governed by the case management orders applicable to all cases in the *In Re: Roundup® Products Liability Litigation* mass tort program in the Court of Common Pleas of Philadelphia County. Consequently, while Plaintiffs have known since they filed this case that they have no viable claims

3

against the Retailer Defendants, Monsanto was not able to learn this information until the applicable case management orders permitted case-specific discovery.

9. Accordingly, this Court should hold that it has subject matter jurisdiction and that removal is proper and timely here based on complete diversity of citizenship and Plaintiffs' bad faith efforts to avoid federal court and the *In re Roundup* MDL proceeding.

**Background and Procedural History**

10. Plaintiffs commenced this lawsuit in the Court of Common Pleas of Philadelphia County, Pennsylvania by filing a Complaint, captioned *Ernest Caranci, et al. v. Monsanto Company, et al.*, case number 210602213, on or about June 29, 2021 (the "State Court Action").

11. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Complaint (and other filings available from the files of the Court of Common Pleas) are collectively attached as **Exhibit A**.

12. Plaintiffs originally named five defendants in this case: Monsanto Company, Bayer AG, S&H Hardware & Supply Co., Penn Hardware, Inc., and Penn Hardware Two, Inc.

13. On August 23, 2021, S&H Hardware & Supply Co. filed a Suggestion of Bankruptcy and this case was placed on deferred status. *See* S&H Hardware & Supply Co.'s Suggestion of Bankruptcy, attached as **Exhibit B**.

14. On April 20, 2022, Plaintiffs dismissed their claims against Bayer AG and S&H Hardware & Supply Co. by stipulation of the parties. *See* Stipulation to Discontinue Claims Against Bayer AG, attached as **Exhibit C**; Stipulation to Discontinue Claims Against S&H Supply Co., attached as **Exhibit D**. Thus, the only remaining defendants are Monsanto, Penn Hardware, Inc., and Penn Hardware Two.

15. On May 11, 2022, while this case remained in deferred status, the Court of Common Pleas of Philadelphia County entered an order creating the *In Re: Roundup® Products Liability Litigation* mass tort program. *See* Order Granting Petition to Coordinate Roundup Products Liability Cases in *In Re: Roundup® Products Liability Litigation*, attached as **Exhibit E**. This case is included in the *In Re: Roundup® Products Liability Litigation* mass tort program.

4

16. On June 7, 2022, the Philadelphia Court of Common Pleas entered a case management order staying all discovery in the *In Re: Roundup® Products Liability Litigation* mass tort program cases. *See* Case Management Order 1 ("CMO 1"), attached as **Exhibit F**, at ¶ 2.

17. On February 6, 2023, the Philadelphia Court of Common Pleas entered Case Management Order 6, which identified twelve cases for case-specific discovery and trial. *See* Case Management Order 6 ("CMO 6"), attached as **Exhibit G**. This case is one of the cases identified in CMO 6. *Id.* at Ex. A.

18. On March 3, 2023, Monsanto deposed Mr. Caranci and learned for the first time facts allowing it to determine that Penn Hardware Two, Inc. is fraudulently joined. Accordingly, Monsanto now timely files this Notice of Removal. U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.").

## Basis For Removal – Diversity Jurisdiction

### I. The Substantive Requirements for Removal Are Satisfied.

#### A. There is Complete Diversity of Citizenship Between Plaintiffs and the Only Properly Joined Defendant, Monsanto.

19. Although complete diversity of citizenship usually is required for a federal court to have diversity jurisdiction, "[t]he doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity." *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006); *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). A defendant removing a lawsuit from state court based on fraudulent joinder of a co-defendant is required to show that "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Briscoe*, 448 F.3d at 217. When fraudulent joinder applies, the court can "disregard, for jurisdictional purposes, the citizenship of

5

certain nondiverse defendants." *Id.* at 216. Moreover, "a court can look to more than just the pleading allegations to identify indicia of fraudulent joinder." *Id.* at 219; *see also McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent."). Fraudulent joinder also renders the so-called "forum defendant rule" inapplicable because that statutory provision applies only to "properly joined" defendants. 28 U.S.C. § 1441(b)(2).

20. In this case, Plaintiffs sued the Retailer Defendants in the hope that adding claims against Pennsylvania companies would prevent removal due to lack of diversity jurisdiction and/or due to the forum defendant rule. However, both of those Pennsylvania defendants have been fraudulently joined.

21. Plaintiffs are, and were at the time the State Court Action was filed, citizens of Pennsylvania. Complaint ¶¶ 1-2.

22. Monsanto is, and was at the time the State Court Action was filed, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Missouri. Complaint ¶ 14. Accordingly, Monsanto is deemed to be a citizen of Delaware and Missouri for purposes of federal diversity jurisdiction.

23. Plaintiffs allege that Penn Hardware, Inc. is a Pennsylvania Corporation with its principal place of business in Pennsylvania. Complaint ¶ 22.

24. Plaintiffs allege that Penn Hardware Two, Inc. is a Pennsylvania Corporation with its principal place of business in Pennsylvania. Complaint ¶ 25.

25. Therefore, disregarding the only two remaining Pennsylvania defendants—which were fraudulently joined by Plaintiffs—means that there is complete diversity of citizenship and that the forum defendant rule does not apply.[2]

---

[2] The citizenship of S&H Hardware & Supply Co. and Bayer AG is to be disregarded because these defendants have been voluntarily dismissed. *See, e.g., Rubino v. Genuardi's Inc.*, No. CIV.A. 10-6078, 2011 WL 344081, at *6 (E.D. Pa. Jan. 31, 2011).

6

### 1. Plaintiffs fraudulently joined Penn Hardware, Inc.

26. According to Mr. Caranci's sworn Plaintiff Fact Sheet, Mr. Caranci did not use Roundup®-branded herbicides until 1989. *See* Plaintiff Fact Sheet at 11-13, attached as **Exhibit H**. But Penn Hardware, Inc. ceased to exist effective December 31, 1986. *See* December 30, 1986 Articles of Merger, attached as **Exhibit I** (identifying Penn Hardware, Inc. as a disappearing corporation following merger). Mr. Caranci has no viable claim against Penn Hardware, Inc. for the simple reason that Penn Hardware, Inc. had already ceased to exist when Mr. Caranci first purchased Roundup®-branded herbicides. The Articles of Merger are a matter of public record—accordingly, Plaintiffs should have discovered them when investigating their claims and filing this lawsuit and, as a result, known that Mr. Caranci never purchased Roundup®-branded herbicides from Penn Hardware, Inc.

27. Plaintiffs also should have known that Penn Hardware, Inc. is not an existing entity that can be sued. Although their corporate names are similar, Penn Hardware, Inc. and Penn Hardware Two, Inc. are not related entities. *See id.* (indicating that Penn Hardware, Inc., Fisher's Drexeline True Value Hardware, Inc., and Fisher's Philadelphia True Value Hardware, Inc. merged to become Fisher's True Value Hardware, Inc.); *see also* Articles of Incorporation for Penn Hardware Two, Inc., attached as **Exhibit J**. It is evident from the face of these publicly available documents that Penn Hardware, Inc. and Penn Hardware Two, Inc. are separate entities.

28. Under Pennsylvania law, a dissolved corporation may not be sued unless it has been served within two years of its dissolution. *See* 15 Pa.C.S.A. § 1979(a)(2); *see also Lanzafame v. Jamison Contractors, Inc.*, No. 04-CV-4744 ARR SMG, 2007 WL 2746910, at *1 (E.D.N.Y. Sept. 19, 2007) ("Under Pennsylvania law, a dissolved corporation may be sued only if it is served within two years of its dissolution.").

29. Here, Penn Hardware, Inc. has not been an existing entity since 1986. Plaintiffs do not have any viable claims against Penn Hardware, Inc. for this additional reason. *See* 15 Pa.C.S.A. § 1979(a)(2). Consequently, Plaintiffs also have not properly served Penn Hardware, Inc.

7

30.     For both of these independent reasons, Plaintiffs fraudulently joined Penn Hardware, Inc. and its citizenship should be disregarded when assessing whether this lawsuit has been properly removed.

### 2. Plaintiffs fraudulently joined Penn Hardware Two, Inc.

31.     Penn Hardware Two, Inc. is also fraudulently joined because Mr. Caranci never purchased Roundup®-branded herbicides from this defendant.

32.     Penn Hardware Two, Inc. was incorporated on July 28, 2005. *See* Articles of Incorporation for Penn Hardware Two, Inc., attached as **Exhibit J**. The Articles of Incorporation for Penn Hardware Two, Inc. are publicly available.

33.     At Mr. Caranci's deposition, he testified that he purchased Roundup®-branded products from a "Penn Hardware" store when he lived on Marsden Street in Philadelphia, Pennsylvania, *see* Dep. Trans. of Ernest Caranci, 137:16-138:1, attached as **Exhibit K**, and that he stopped shopping at "Penn Hardware" after he moved away from Marsden Street in Philadelphia, Pennsylvania in 1992:

> Q. So I just want to make sure I understand. So when you moved from Marsden, did you stop shopping at Penn Hardware?
>
> A. Yes.
>
> * * * * *
>
> Q. Tell me again the year you moved from Marsden?
>
> A. When I move? [sic]
>
> Q. Yeah. When you moved out of that house?
>
> A. '92.
>
> Q. Okay. So after '92, you would not have gone back to Penn Hardware?
>
> A. Oh, no.

*See id.* at 137:23-138:1.

8

34. Based on Mr. Caranci's own testimony, Plaintiffs have no viable claims against Penn Hardware Two, Inc. because it did not even exist before or in 1992—when Mr. Caranci admits that he stopped shopping at "Penn Hardware."

35. Accordingly, Plaintiffs fraudulently joined Penn Hardware Two, Inc. and its citizenship should be disregarded when assessing whether this lawsuit has been properly removed.

**B. The Amount-in-Controversy Requirement is Satisfied.**

36. The Complaint seeks compensatory and punitive damages based on the allegations that Monsanto's Roundup®-branded herbicides caused Mr. Caranci to develop cancer (CLL). It is plausible from the face of the Complaint that Plaintiffs seek damages in excess of $75,000, exclusive of interest and costs, which satisfies the jurisdictional amount-in-controversy requirement. 28 U.S.C. § 1332(a); *see Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."); *see also Strauss v. Ghuman Truck Serv.*, No. 15-0900, 2015 WL 1822576, at *2-3 (E.D. Pa. Apr. 22, 2015) (finding amount-in-controversy requirement met based "[o]n the face of the instant Complaint" where the plaintiff "claimed serious injuries, medical expenses, and present and future wage loss that clearly indicate[d] that the amount in controversy is in excess of $75,000"); *Ross v. First Family Fin. Servs., Inc.*, No. 2:01CV218-P-B, 2002 WL 31059582, at *8 (N.D. Miss. Aug. 29, 2002) ("[U]nspecified claims for punitive damage sufficiently serve to bring the amount in controversy over the requisite jurisdictional threshold set out in 28 U.S.C. § 1332."). In fact, numerous other lawsuits seeking damages for cancer allegedly caused by Roundup®-branded herbicides have been filed against Monsanto in other federal courts asserting jurisdiction under Section 1332(a) and alleging damages in excess of $75,000, exclusive of interest and costs.

37. In sum, this Court has original subject matter jurisdiction over this action based on Section 1332(a) because there is complete diversity of citizenship between Plaintiffs and Monsanto, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9

**Procedural Requirements**

I.   **The Procedural Requirements for Removal Are Satisfied**

    A.   **This Notice of Removal is Timely.**

38.  This Notice of Removal is timely in accordance with 28 U.S.C. § 1446(b)(3), which states that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

39.  When the State Court Action was commenced, the "case stated by the initial pleading [was] not removable," § 1446(b)(3), because the Complaint included claims against non-diverse, Pennsylvania defendants. Thus, based on the face of the Complaint, this lawsuit was not removable at that point due to lack of diversity of citizenship and due to the forum defendant rule, 28 U.S.C. § 1441(b)(2). Mr. Caranci's March 3, 2023 deposition was the "other paper from which it may first be ascertained that [this] case is one which is or has become removable," § 1446(b)(3), because that is when Mr. Caranci first disclosed information to Monsanto from which it could ascertain that Penn Hardware Two, Inc. is fraudulently joined and, more importantly, that the case was removable. This Notice of Removal is timely because it is being filed within 30 days of March 3, 2023.

40.  This Notice of Removal is also timely pursuant to 28 U.S.C. § 1446(c)(1), which states that a case may not be removed "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C.A. § 1446(c)(1).

10

41. "[B]ad faith is evidenced by intentional conduct on behalf of the plaintiff which denies the defendant to remove the case to federal court." *Bolus v. IAT Ins. Grp.,* No. 19-1712, 2019 WL 3001628, at *3 (E.D. Pa. July 9, 2019). Whether a plaintiff acted in bad faith can be ascertained by circumstantial evidence. *In re: Asbestos Prods. Liab. Litig. (No. VI),* No. 16-cv-02408, 2016 WL 4264193, at *2 (E.D. Pa. Aug. 11, 2016).

42. Here, Plaintiffs acted in bad faith by asserting claims against the Retailer Defendants contrary to facts establishing that neither of these defendants could be potentially liable for their claims.

43. In their Complaint, Plaintiffs alleged that Mr. Caranci "was exposed to Roundup throughout the 1990s and 2000s" and that he "purchased the Roundup he used from . . . Penn Hardware, Inc. and Penn Hardware Two, Inc.'s stores." Compl. ¶¶ 4, 6. But the evidence establishes that Mr. Caranci did not purchase Roundup®-branded products from either of these entities. Penn Hardware, Inc. had already ceased to exist by the time Mr. Caranci first *started* purchasing Roundup®-branded products, and Penn Hardware Two, Inc. did not exist until after Mr. Caranci admittedly *stopped* shopping at any "Penn Hardware" store.

44. Mr. Caranci knew or should have known four important facts: (1) when he started purchasing Roundup®-branded products; (2) when he stopped purchasing Roundup®-branded products from any "Penn Hardware" store; (3) that Penn Hardware Inc. ceased to exist in 1986 from publicly available information; and (4) that Penn Hardware Two, Inc. formed in 2005, again, from publicly available information. Indeed, based on Plaintiffs' decision to separately name the Retailer Defendants, it appears Plaintiffs consulted these very public records prior to filing suit.

45. Plaintiffs' bad faith in suing the Retailer Defendants is also evident from the fact that Plaintiffs have failed to actively litigate—indeed, have failed to litigate at all—their claims

11

against those defendants. *See, e.g.*, *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1262 (D.N.M. 2014) (stating that "[f]ailure to actively litigate against the removal spoiler will be deemed bad faith"); *Massey v. 21st Century Centennial Ins. Co.*, No. 2:17-cv-01922, 2017 WL 3261419, at *4-6 (S.D. W. Va. July 31, 2017) (relying on *Aguayo*, making Section 1446(c)(1) bad-faith finding, and denying remand motion because, *inter alia*, plaintiff did not actively litigate her case against removal-spoiling defendant in state court); *Forth v. Diversey Corp.*, No 13-CV-808-A, 2013 WL 6096528, at *3 (W.D.N.Y. Nov. 20, 2013) (making Section 1446(c)(1) bad-faith finding and denying remand motion because, *inter alia*, plaintiffs did not obtain any discovery from removal-spoiling defendant in state court).

46. In the *In re Roundup* MDL proceeding, that court explained that the "bad faith" standard involves determining whether the plaintiff has engaged in "gamesmanship" to prevent removal as opposed to "actively litigat[ing] against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera." *In re Roundup Products Liab. Litig. (Renteria)*, No. 16-MD-02741-VC, 2022 WL 17839995, at *3 (N.D. Cal. Aug. 30, 2022) (quoting *Aguayo*, 59 F. Supp. 3d at 1262 (making Section 1446(c)(1) bad-faith finding and denying remand motion because plaintiff engaged in "removal-thwarting gamesmanship" and did not actively litigate any claims against removal-spoiling defendant in state court).

47. Here, Plaintiffs have not actively litigated their claims against the Retailer Defendants—and instead engaged in the type of removal-thwarting gamesmanship that 28 U.S.C. § 1446(c)(1) is intended to prevent. Specifically:

    a. Plaintiffs failed to serve Penn Hardware, Inc. Plaintiffs should have known that Penn Hardware, Inc. no longer exists by consulting the public records—which

12

again it appears they did in fact do. Nonetheless, rather than exercising any form of diligence with regard to this entity, Plaintiffs merely purported to serve Penn Hardware, Inc. by delivering the summons and complaint to an entity that they *know* (as shown by the caption of the Complaint) to be a separate entity—Penn Hardware Two, Inc.. *See* Affidavit of Service on Penn Hardware Two, Inc., attached as **Exhibit L**. This patently ineffective service illustrates Plaintiffs' bad faith.

b. Despite claiming to have effectuated service as of June 29, 2021, Plaintiffs never pursued a default judgment against Penn Hardware, Inc. even though it has not filed an answer to this day (a fact that makes sense, given that Penn Hardware, Inc. is not an existing entity).

c. Plaintiffs never served written discovery requests on, or sought depositions of, the Retailer Defendants.

d. In sum, Plaintiffs have wholly failed to litigate their claims against the Retailer Defendants.

48. Plaintiffs' actions (and lack of actions) vis-à-vis the Retailer Defendants show Plaintiffs' bad faith in naming the Retailer Defendants solely in an effort to avoid federal court—and deprive Monsanto of its right to remove this case to federal court. Plaintiffs apparently never intended to pursue claims against the Retailer Defendants at all.

49. Plaintiffs have known all along that they have no viable claims against Penn Hardware, Inc. (based upon publicly available corporate merger documents) or Penn Hardware Two, Inc. (based upon Mr. Caranci's own knowledge of his dates of purchase and publicly available information).

13

50. Monsanto, on the other hand, was not able to discover that Penn Hardware Two, Inc. was fraudulently joined until the stay in the case was lifted, when Monsanto was permitted to seek and take Mr. Caranci's deposition, which it promptly did.

**B.    The Other Procedural Requirements of Removal Are Satisfied.**

51. The Court of Common Pleas of Philadelphia County, Pennsylvania is located within the Eastern District of Pennsylvania. Therefore, removal to this Court satisfies the venue requirement of 28 U.S.C. § 1446(a).

52. Consent to removal is not required from the only remaining defendants (Penn Hardware, Inc. and Penn Hardware Two, Inc.) because they are not "properly joined." 28 U.S.C. § 1446(b)(2)(A). Consent to removal is also not required from Penn Hardware, Inc. because it has not been "properly served." *Id.*

53. The written notice required by 28 U.S.C. § 1446(d) will be promptly filed in the Court of Common Pleas of Philadelphia County, Pennsylvania and will be promptly served on Plaintiffs.

54. Monsanto does not waive any defenses and expressly reserves its right to raise any and all legal defenses in subsequent proceedings.

55. If any question arises as to the propriety of this removal, Monsanto requests the opportunity to present written and oral argument in support of removal.

**Conclusion**

For the foregoing reasons, Monsanto removes this lawsuit to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws).

SHOOK, HARDY & BACON L.L.P.

Dated: March 30, 2023         By: */s/ Joseph H. Blum*
　　　　　　　　　　　　　　　　　Joseph H. Blum (PA Bar No. 36874)
　　　　　　　　　　　　　　　　　Erin L. Leffler (PA Bar No. 204507)
　　　　　　　　　　　　　　　　　Two Commerce Square
　　　　　　　　　　　　　　　　　2001 Market Street, Suite 3000
　　　　　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　　　　　Phone: 215-278-2555
　　　　　　　　　　　　　　　　　Fax: 215-278-2594
　　　　　　　　　　　　　　　　　jblum@shb.com
　　　　　　　　　　　　　　　　　eleffler@shb.com

　　　　　　　　　　　　　　　　　*Attorneys for Defendant Monsanto Company*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Notice of Removal has been served by e-mail and Federal Express on the following counsel of record:

>Thomas R. Kline, Esq.
>Tobi L. Millrood, Esq.
>Lorraine H. Donnelly, Esq.
>Helen A. Lawless, Esq.
>Christopher A. Gomez, Esq.
>Melissa A. Merk, Esq.
>KLINE & SPECTER, P.C.
>1525 Locust Street, 18th Floor
>Philadelphia, PA 19102
>
>*Attorneys for Plaintiffs*

Dated:  March 30, 2023        */s/ Joseph H. Blum*
                              Joseph H. Blum

                              *Attorneys for Defendant Monsanto Company*