**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:  202-942-5000
Fax: 202-942-5999

**HOLLINGSWORTHLLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, NW
Washington, DC 20005
Tel:  202-898-5800
Fax: 202-682-1639

**SHOOK, HARDY & BACON L.L.P.**
Jennise W. Stubbs (*pro hac vice*)
(jstubbs@shb.com)
Ryan S. Killian (CA Bar No. 294512)
(rkillian@shb.com)
600 Travis Street, Suite 3400
Houston, TX 77002
Tel:  713-227-8008
Fax: 713-227-9508

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Ernest Caranci et al. v. Monsanto Company et al.*, Case No. 3:23-cv-01796-VC | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND *CARANCI* CASE TO STATE COURT**<br><br>Date: June 8, 2023<br>Time: 10:00 a.m.<br>Courtroom: 4 |

# TABLE OF CONTENTS

INTRODUCTION AND ISSUES TO BE DECIDED ................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY .............................................. 2

LEGAL STANDARDS ................................................................................................................ 4

ARGUMENT ................................................................................................................................. 5

    I.     Plaintiffs Fraudulently Joined the Retailer Defendants. ......................................... 5

    II.    Monsanto's Removal Notice was Timely. .............................................................. 7

         A.     Monsanto's removal notice was timely under Section 1446(b)(3), and Plaintiffs' argument that Monsanto should have discovered the fraudulent joinder at some earlier time is foreclosed by binding Ninth Circuit precedent. ..................................................................................................... 7

         B.     Monsanto's removal was timely under Section 1446(c)(1), and Plaintiffs' contrary arguments ignore the applicable standard and relevant facts. ....... 9

CONCLUSION ........................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguayo v. AMCO Ins. Co.*,
   59 F. Supp. 3d 1225 (D.N.M. 2014) ....................................................................................10

*In re Anthem, Inc.*,
   No. 15-CV-2874-LHK, 2015 WL 5286992 (N.D. Cal. Sept. 9, 2015)....................................4

*Arias v. Follet Higher Educ. Corp.*,
   No. 8:18-cv-01965, 2019 WL 484192 (C.D. Cal. Feb. 7, 2019) ..........................................5, 6

*Grancare, LLC v. Thrower by & through Mills*,
   889 F.3d 543 (9th Cir. 2018) ...................................................................................................4

*Harris v. Bankers Life & Cas. Co.*,
   425 F.3d 689 (9th Cir. 2005) ...................................................................................................8

*Kornfeind v. New Werner Holding Co., Inc.*,
   241 A.3d 1212 (Pa. Ct. App. 2020) .........................................................................................5

*Lanzafame v. Jamison Contractors, Inc.*,
   No. 04-CV-4744 ARR SMG, 2007 WL 2746910 (E.D.N.Y. Sept. 19, 2007) .........................5

*Martinez v. McKesson Corp.*,
   No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal. Apr. 7, 2016) ................................6

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001) ............................................................................................4, 6

*Rico-Chinn v. Prudential Ins. Co. of Am.*,
   No. C-05-01975 MMC, 2005 WL 1632289 (N.D. Cal. July 12, 2005)...................................8

*Ritchey v. Upjohn Drug Co.*,
   139 F.3d 1313 (9th Cir. 1998) ............................................................................................4, 6

*In re Roundup Products Liab. Litig. (Renteria)*,
   No. 16-MD-02741-VC, 2022 WL 17839995 (N.D. Cal. Aug. 30, 2022)
   ................................................................................................................................9, 10, 11, 12

*In re Roundup Products Liab. Litig. (Roybal)*,
   No. 16-MD-02741-VC, 2021 WL 4186714 (N.D. Cal. Sept. 15, 2021) .............................6, 12

*In re Roundup Products Liab. Litig.* (*Salas*),
   2021 WL 5149862 ........................................................................................................ *passim*

**Statutes**

28 U.S.C. § 1441(b)(2) ................................................................................................................. 4

28 U.S.C. § 1446(b)(3) ............................................................................................................ 7, 8

28 U.S.C. § 1446(c)(1) ....................................................................................................... *passim*

# INTRODUCTION AND ISSUES TO BE DECIDED

In an attempt to destroy diversity and prevent Monsanto Company ("Monsanto") from exercising its right to remove this case to federal court, Plaintiffs Ernest and Carmela Caranci sued two non-diverse defendants—Penn Hardware, Inc., and Penn Hardware Two, Inc. (collectively, the "Retailer Defendants")—based on allegations that Plaintiffs had purchased Roundup®-branded herbicides from these retailers. However, these allegations were false and made in bad faith, making remand improper.

Mr. Caranci disclosed at his deposition for the first time that he purchased Roundup®-branded herbicides from "Penn Hardware" during only a brief window of time—a period when neither of the Retailer Defendants even existed. Penn Hardware, Inc. had already *ceased to exist*, and Penn Hardware Two, Inc. had *not yet begun to exist*. Plaintiffs do not contest these facts, which establish indisputably that both entities are fraudulently joined and their Pennsylvania citizenship must be disregarded for jurisdictional purposes.

Monsanto also could not have removed the case any sooner. Mr. Caranci's deposition was the first time that Monsanto learned that the Retailer Defendants were fraudulently joined in an attempt to avoid federal court, and Monsanto timely removed the case within 30 days of that deposition. Plaintiffs' late disclosure of the timing of purchase and product use is what triggered this removal—only at that time did it became unequivocally clear and certain that the Retailer Defendants were fraudulently joined.

Although more than a year passed between this case's commencement and Monsanto's removal, removal was proper because Plaintiffs acted in bad faith to prevent removal. *See* 28 U.S.C. § 1446(c)(1). That is evident from Plaintiffs' utter failure to prosecute their claims against the Retailer Defendants they fraudulently joined: (1) they never served any discovery requests on, and never sought to depose, either of these defendants; (2) they never attempted to negotiate settlements with either of the defendants; and (3) they never sought a default judgment against Penn Hardware, Inc. (which has never answered or otherwise appeared in this action). As this Court—and several other courts—have held when construing Section 1446(c)(1)—this is classic bad faith rendering Monsanto's removal timely.

1  Plaintiffs do not seriously dispute most of these issues, and their efforts to distract by claiming bad faith on *Monsanto*'s part add nothing to their arguments. Contrary to Plaintiffs' suggestion, nothing about Monsanto's proper efforts to exercise its right to removal affect the trial schedule in the Philadelphia Mass Tort program. As explained further below, multiple cases—including several by the Kline & Specter firm—remain eligible for the October 2023 trial setting and all that follow.

This Court should therefore find that the Retailer Defendants were fraudulently joined and that Monsanto's Removal Notice was timely, and deny the Motion to Remand.

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This lawsuit asserts claims against Monsanto and seeks damages for non-Hodgkin's lymphoma allegedly caused by Monsanto's Roundup®-branded herbicides. *See, e.g.*, Compl. ¶ 3 (attached to Monsanto Company's Notice of Removal of *Caranci* Lawsuit ("Removal Notice") as Ex. A, ECF No. 1-2 at 20–82). Plaintiffs filed their Complaint on June 29, 2021 and asserted claims not only against Monsanto but also against Bayer AG and three retailers that were incorporated and headquartered in Pennsylvania—S&H Hardware & Supply Co.; Penn Hardware, Inc.; and Penn Hardware Two, Inc. *Id.* ¶¶ 14-27. In the Complaint, Plaintiffs alleged that Mr. Caranci "purchased the Roundup he used from S&H Hardware & Supply Co.'s, Penn Hardware, Inc.'s, and Penn Hardware Two, Inc.'s stores."[1] *Id.* ¶ 6. Because Plaintiffs are Pennsylvania citizens, the case stated by the initial pleading was not removable.

Plaintiffs' initial Complaint alleged that Mr. Caranci's exposure to Roundup®-branded herbicides occurred "throughout the 1990s and 2000s." Compl. ¶ 4. They repeated that allegation in an Amended Complaint filed August 19, 2021. (Am. Compl. ¶ 4 attached to Removal Notice as Ex. A, ECF No. 1-3 at 8–70.) And then, on January 31, 2023, Plaintiffs filed a Short Form Complaint alleging that "Plaintiff purchased Roundup® at Defendant Penn Hardware, Inc.," that "Plaintiff purchased Roundup® at Defendant Penn Hardware Two, Inc.," and that both of these defendants

---

[1] There is no allegation that Ms. Caranci ever purchased Roundup®-branded herbicides.

"sold Roundup products to users, including Ernest Caranci." (SFC ¶ 3 attached to Removal Notice as Ex. A, ECF No. 1-4 at 224–234.) Mr. Caranci also executed a Plaintiff Fact Sheet that again specifically identified "Penn Hardware Inc." and "Penn Hardware Two Inc." and stated that he first began using glyphosate-based herbicides in 1989. (Plaintiff Fact Sheet at 11, 15, attached to Removal Notice as Ex. H, ECF No. 1-11.)

Despite making these allegations and asserting product-liability claims against the Retailer Defendants, Plaintiffs never litigated those claims. More specifically, they never served either of these defendants with discovery requests and never attempted to depose them, never attempted to negotiate settlement, and never took any other action to develop or prosecute the claims asserted against the Retailer Defendants. Even though Plaintiffs purported to serve Penn Hardware, Inc. on June 29, 2021, they never sought a default judgment despite that defendant's failure to answer or otherwise make an appearance.[2] In fact, Penn Hardware, Inc., does not exist and has not existed since 1986. (*See* Removal Notice ¶ 26 (citing Ex. I).)

Prior to removal, this case was part of the *In Re: Roundup® Products Liability Litigation* mass tort program in the Court of Common Pleas of Philadelphia County, and the timing of case-specific discovery and Mr. Caranci's deposition was dictated by the case management orders governing cases in that program. (*See, e.g.*, Case Management Order No. 1, attached to Removal Notice as Ex. F, ECF No. 1-9.) Mr. Caranci was deposed on March 3, 2023. (*See* Deposition Excerpts, attached to Removal Notice as Ex. K, ECF No. 1-14.) During this deposition, Monsanto learned for the first time that he has not shopped at any "Penn Hardware" store since 1992, when neither "Penn Hardware" entity existed; Penn Hardware Inc. ceased to exist in 1986 and Penn Hardware Two, Inc. did not come into existence until 2005. Thus, this testimony established for the first time that Plaintiffs have no viable claims against any non-diverse defendant. Monsanto removed this case to

---

[2] Plaintiffs' Motion repeats the incorrect claim that they served Penn Hardware, Inc. nearly two years ago, on June 29, 2021. Mot. at 2. Despite taking the position that service was proper, Plaintiffs do not explain why they never sought a default judgment against this defendant.

- 3 -

OPPOSITION TO MOTION TO REMAND
3:16-md-02741-VC & 3:23-cv-01796-VC

1   federal court on March 30, 2023—within 30 days of Mr. Caranci's deposition testimony. (ECF No. 1.)

Plaintiffs purported to file a motion to remand on April 20, 2023, but that motion was terminated by this Court on April 26, 2023 for failure to comply with multiple rules. (ECF Nos. 9–10.) Plaintiffs filed this Motion six days later, on May 1, 2023. (ECF No. 11.)

## LEGAL STANDARDS

"In interpreting federal law, a transferee court in a multidistrict case should look to the law of its own circuit rather than the law of the transferor courts' circuits." *In re Anthem, Inc.*, No. 15-CV-2874-LHK, 2015 WL 5286992, at *2 (N.D. Cal. Sept. 9, 2015). Thus, "Ninth Circuit precedent, rather than the transfer circuit's precedent, governs this motion." *In re Roundup Products Liab. Litig.* (*Salas*), 2021 WL 5149862, at *1 n.1.

Although complete diversity of citizenship usually is required for a federal court to have diversity jurisdiction, "one exception to the requirement of complete diversity is where a non-diverse defendant has been fraudulently joined." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). A defendant making a fraudulent-joinder argument is required to show that there is no possibility that the state court would hold the non-diverse co-defendant liable. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). When this showing is made, the fraudulently joined defendant's "presence in the lawsuit is ignored" for purposes of determining whether the court has jurisdiction based on diversity of citizenship. *Morris*, 236 F.3d at 1067. Fraudulent joinder also renders the "forum defendant rule" inapplicable because that rule applies only to "properly joined" defendants. 28 U.S.C. § 1441(b)(2).

In conducting a fraudulent-joinder analysis, a court is not limited to the allegations of the complaint and is permitted to consider declarations and other evidence presented by the removing defendant. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). Once the removing defendant pierces the pleadings by presenting evidence showing that a non-diverse defendant has been fraudulently joined, the plaintiff cannot rely on mere allegations in the complaint to seek remand. *See, e.g.*, *Arias v. Follet Higher Educ. Corp.*, No. 8:18-cv-01965 (JLC-JDE), 2019 WL

- 4 -

484192, at *3 (C.D. Cal. Feb. 7, 2019) (denying remand motion; holding that plaintiff did not state a claim against non-diverse defendant because "even assuming [p]laintiff's legal theories are viable, [p]laintiff has offered *no facts* to support these claims" and "submit[ted] no evidence to dispute [d]efendants' version of the facts" that established fraudulent joinder).

## ARGUMENT

### I.   Plaintiffs Fraudulently Joined the Retailer Defendants.

According to his deposition testimony, Mr. Caranci did not purchase Roundup®-branded herbicides at all until 1989 and never purchased Roundup®-branded herbicides from "Penn Hardware" after 1992. (*See* Removal Notice ¶¶ 26, 32–33 (citing Exs. H, K).) But Penn Hardware, Inc. ceased to exist in 1986, and Penn Hardware Two, Inc. did not begin to exist until 2005. (*See* Removal Notice ¶¶ 26, 32 (citing Exs. I–J).) Accordingly, neither of the Retailer Defendants ever sold the products in question to Plaintiffs, and they cannot possibly prevail in their product-liability claims against those defendants. *See, e.g.*, *Kornfeind v. New Werner Holding Co., Inc.*, 241 A.3d 1212, 1218 (Pa. Ct. App. 2020) (in a products liability case, finding Home Depot entitled to summary judgment where plaintiff lacked evidence that he purchased the product from Home Depot), *aff'd*, 280 A.3d 918 (Pa. 2022).[3]

The Motion does not contest any of these points and does not claim that recovery against the Retailer Defendants is somehow possible under any theory. If anything, Plaintiffs concede that recovery against the Retailer Defendants is *impossible. See* Mot. at 11 ("At most Plaintiffs sued the wrong legal entity."). The Retailer Defendants have therefore been fraudulently joined in this

---

[3] Plaintiffs, who filed this suit in 2021, cannot recover against Penn Hardware, Inc. for the additional reason that it ceased to exist in 1986. *See Lanzafame v. Jamison Contractors, Inc.*, No. 04-CV-4744 ARR SMG, 2007 WL 2746910, at *1 (E.D.N.Y. Sept. 19, 2007) ("Under Pennsylvania law, a dissolved corporation may be sued only if it is served within two years of its dissolution."). Monsanto could not remove the case, however, until it was clear that *both* Penn Hardware, Inc. and Penn Hardware Two, Inc. were fraudulently joined.  As this Court has recognized, "a case is only removable on the basis of diversity jurisdiction if all the non-diverse defendants were fraudulently joined, not just one of them." *In re Roundup Products Liab. Litig. (Salas)*, No. 16-MD-02741-VC, 2021 WL 5149862, at *1 (N.D. Cal. Nov. 5, 2021).  Here, it was the discovery that Penn Hardware Two, Inc. was fraudulently joined that "trigger[ed] section 1446(b)'s thirty-day window." *See id.*

- 5 -
OPPOSITION TO MOTION TO REMAND
3:16-md-02741-VC & 3:23-cv-01796-VC

lawsuit. *See In re Roundup Products Liab. Litig. (Roybal)*, No. 16-MD-02741-VC, 2021 WL 4186714, at *2 (N.D. Cal. Sept. 15, 2021) (finding fraudulent joinder based on evidence that [the non-diverse retailer defendant] did not market or distribute [the particular plaintiff's] Roundup"); *In re Roundup Products Liab. Litig. (Salas)*, No. 16-MD-02741-VC, 2021 WL 5149862, at *1 (N.D. Cal. Nov. 5, 2021) (finding fraudulent joinder based on evidence that the non-diverse retailer defendants did not, during the relevant time, own the store where plaintiff allegedly "purchased Roundup").

Plaintiffs' motion offers no valid basis to avoid a finding of fraudulent joinder. Plaintiffs' main argument is that that they had a good faith basis to sue the Retailer Defendants *at the time the complaint was filed*. But a facially adequate pleading does not prevent a defendant from later establishing fraudulent joinder. *See, e.g.*, *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (explaining that courts analyzing fraudulent joinder are not confined to the pleadings because "a defendant must have the opportunity to show that the individuals joined in the action cannot be liable on any theory"). Rather, "the defendant 'is entitled to present the facts showing the joinder to be fraudulent.'" *Morris*, 236 F.3d at 1067 (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). When a defendant pierces the pleadings by presenting evidence showing that a non-diverse co-defendant has been fraudulently joined (as Monsanto has done here), the plaintiff cannot rely on allegations in the complaint to seek remand. *See, e.g.*, *Arias v. Follet Higher Educ. Corp.,* No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192, at *3 (C.D. Cal. Feb. 7, 2019); *Martinez v. McKesson Corp.*, No. 3:15-cv-02903-H-JLB, 2016 WL 5930271, at *3 (S.D. Cal. Apr. 7, 2016). Thus, in other Roundup lawsuits, this Court repeatedly has denied remand motions based on evidence submitted by Monsanto that pierced the pleadings and established fraudulent joinder. *See, e.g.*, *In re Roundup Products Liab. Litig. (Salas)*, No. 16-MD-02741-VC, 2021 WL 5149862 (N.D. Cal. Nov. 5, 2021); *In re Roundup Products Liab. Litig. (Roybal)*, No. 16-MD-02741-VC, 2021 WL 4186714 (N.D. Cal. Sept. 15, 2021). Here, Monsanto likewise pierced the pleadings and established that the Retail Defendants were fraudulently joined.

1    In any case, Plaintiffs did *not* have a reasonable, good faith basis to name these defendants at the time the complaint was filed. If Plaintiffs did not know the facts about Penn Hardware, Inc.'s dissolution and Penn Hardware Two, Inc.'s formation, then they had no reasonable basis to name them as parties. And if they consulted the publicly available Pennsylvania corporate records during their pre-suit investigation, then they presumably were aware of the relevant dates and yet still named them as defendants, despite the fact that Plaintiffs' claimed usage did not correspond to the dates the entities existed. Whether intentional or due to inadequate investigation, the fact that Plaintiffs wrongly pleaded claims against the local defendants based on false information obviously cannot defeat fraudulent joinder.

Finally, Plaintiffs note that "no defendant" ever filed a motion for summary judgment in this case, Mot. at 11, but that is irrelevant. Under Section 1446(b)(3), Monsanto had only thirty days to remove after discovering the facts establishing fraudulent joinder. Accordingly, it could not wait for the filing and resolution of a motion for summary judgment. By removing this case to federal court within thirty days after Monsanto first learned that Plaintiffs never shopped at "Penn Hardware" after 1992, Monsanto proceeded in precisely the manner required by the statutory provisions that govern this removal.

## II.     Monsanto's Removal Notice was Timely.

### A.     Monsanto's removal notice was timely under Section 1446(b)(3), and Plaintiffs' argument that Monsanto should have discovered the fraudulent joinder at some earlier time is foreclosed by binding Ninth Circuit precedent.

Because the initial complaint stated claims against the Retailer Defendants, Mot. at 12, there can be no dispute that the case was not removable upon its filing, and Section 1446(b)(3) applies. And Monsanto's Removal Notice demonstrates that the removal was timely because it occurred within 30 days of Mr. Caranci's testimony establishing that Penn Hardware Two, Inc. was fraudulently joined. Removal Notice, ¶¶ 38–39 (citing 28 U.S.C. § 1446(b)(3)); *see also In re Roundup Products Liab. Litig. (Salas)*, 2021 WL 5149862, at *1. Plaintiffs do not address, let alone rebut, this argument.

Instead, Plaintiffs offer the meritless argument that Monsanto should have removed this case

- 7 -
OPPOSITION TO MOTION TO REMAND
3:16-md-02741-VC & 3:23-cv-01796-VC

earlier because it was aware of Plaintiffs' counsel's strategies for avoiding federal court. *See, e.g.*, Mot. at 3. The law regarding Section 1446(b)(3) establishes that a defendant's suspicion is not enough to support removal. If the pleading itself does not provide a clear basis for removal, then the defendant is precluded from removing the lawsuit at that time. *See Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 690-91 (9th Cir. 2005) (rejecting argument that removability is determined by "defendant's knowledge, constructive or otherwise, of the requisite jurisdictional facts" and holding that "the thirty day time period [for removal] . . . starts to run from defendant's receipt of the initial pleading ***only when that pleading affirmatively reveals on its face*** the facts necessary for federal court jurisdiction." (brackets in original; emphasis added; quotation marks omitted)); *Rico-Chinn v. Prudential Ins. Co. of Am.*, No. C-05-01975 MMC, 2005 WL 1632289, at *2 (N.D. Cal. July 12, 2005) (stating that Section 1446(b) "permits the defendant to rely ***exclusively*** on the initial pleading for information bearing on removability" and that "***unambiguous notice of removability***" is required to start first 30-day removal period because that requirement "lessens the likelihood of 'premature' removals" (emphasis added)). Here, Monsanto was not able to remove this lawsuit until "the jurisdictional facts supporting removal [became] evident." *Harris*, 425 F.3d at 698.

Nor is there any support for Plaintiffs' similar argument that the Monsanto *should have* uncovered the facts concerning Mr. Caranci's purchase history at some earlier point in this litigation. *See* Mot. at 15. In *Dietrich v. Boeing Company*, the Ninth Circuit held that "other paper must make a ground for removal unequivocally clear and certain before the removal clock begins under" Section 1446(b)(3). 14 F.4th at 1095. Under *Dietrich*, Monsanto's "removal was timely, as no ground for removal was unequivocally clear and certain," *id*., until Mr. Caranci gave his trigger deposition testimony on March 3, 2023. And Plaintiffs' attempt to engage in "collateral litigation over whether the pleadings contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry" is "exactly" what the Ninth Circuit rejected in *Dietrich*. *See id.* at 1094.

### B. Monsanto's removal was timely under Section 1446(c)(1), and Plaintiffs' contrary arguments ignore the applicable standard and relevant facts.

The removal statute usually precludes removal based on diversity jurisdiction more than one year after commencement of a case, but an exception permits removal if the "district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). This case was removed more than a year after its commencement, and therefore Monsanto's Removal Notice relied on the Section 1446(c)(1) "bad faith" exception. Notice of Removal ¶¶ 40–50.

In assessing bad faith when denying a remand motion in another Roundup lawsuit, this Court has "focused on whether the plaintiff engaged 'in strategic gamesmanship by keeping a removal-spoiling party in the case past the one-year mark in order to prevent a defendant's removal from state court.'" *See In re Roundup Products Liab. Litig. (Renteria)*, No. 16-MD-02741-VC, 2022 WL 17839995, at *3 (N.D. Cal. Aug. 30, 2022) (quoting *Weber v. Ritz-Carlton Hotel Co., L.L.C.*, No. 4:18-CV-03351-KAW, 2018 WL 4491210, at *3 (N.D. Cal. Sept. 19, 2018)). "The gamesmanship inquiry looks at whether the plaintiff 'actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera.'" *Id.* (quoting *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1262 (D.N.M. 2014)).

Here, as in *Renteria*, Plaintiffs did none of these things. Plaintiffs sought discovery from Monsanto but not from the Retailer Defendants. Plaintiffs did not serve any written discovery requests on, or seek to depose, the Retailer Defendants. Though Plaintiffs purported to effectuate service upon Penn Hardware, Inc. on June 29, 2021, (Ex. A to Notice of Removal, (ECF No. 1-2 at 86), they never sought a default judgment against this defendant, which has never filed an answer or entered an appearance in this case. *See id.* Moreover, as established above (and as Plaintiffs knew or should have known all along), Plaintiffs' claims against the Retailer Defendants are not viable. And finally, Plaintiffs never attempted to negotiate settlements with the Retailer Defendants. In short, Plaintiffs have "not actively litigated any claims against" the Retailer Defendants, and "the record overwhelmingly suggests that" these defendants were simply "named . . . to prevent

- 9 -

removal." *See Roundup Products Liab. Litig. (Renteria)*, 2022 WL 17839995, at *3; *see also Aguayo*, 59 F. Supp. 3d at 1262 ("Failure to actively litigate against the removal spoiler will be deemed bad faith . . . .").

Plaintiffs' Section 1446(c)(1) argument cites various cases from courts within the Third Circuit, *see* Mot. at 17, but these cases do not support Plaintiffs' argument. For example, *Bolus v. IAT Insurance Group* did not involve fraudulent joinder, and the district court specifically found that there was "more than a reasonable basis supporting the claims against the non-diverse defendant." *See* No. CV 19-1712, 2019 WL 3001628, at *4 (E.D. Pa. July 9, 2019). More importantly, the court further found that the plaintiffs "had a good intention to prosecute the claim against" the non-diverse defendant because it negotiated and obtained a settlement whereby the diverse defendant "made a payment to the Plaintiffs . . . in exchange for Plaintiffs' dismissal of" the non-diverse defendant. *Id.* at *1, *4. Here, by contrast, Plaintiffs never had any viable claims against the Retailer Defendants and certainly did not negotiate any settlement with respect to them.

Indeed, none of the cases cited by Plaintiffs were decided in the context of fraudulent joinder, and all of them are distinguishable for additional reasons. The court in *Kleiner v. Johnson & Johnson* did not find bad faith because the plaintiffs there actively litigated against the non-diverse defendant, Rite Aid: "Plaintiffs sought discovery from Rite Aid, engaged in disputes with Rite Aid, opposed Rite Aid's motion for summary judgment (successfully), and even prepared jury questions regarding Rite Aid's liability." No. CV 21-3366, 2021 WL 3476184, at *4 (E.D. Pa. Aug. 6, 2021). Similarly, the non-diverse defendants in *Campbell v. United Parcel Service, Inc.* endured a "year and a half of discovery" before being voluntarily dismissed. *See* No. 119CV12211NLHAMD, 2019 WL 5587349, at *3 (D.N.J. Oct. 30, 2019). Finally, in *Plaxe v. Fiegura*, the non-diverse defendant was voluntarily dismissed pursuant to a policy-limit *settlement agreement*. *See* No. CV 17-1055, 2018 WL 2010025, at *4–7 (E.D. Pa. Apr. 27, 2018). Unlike the plaintiffs in those cases, Plaintiffs here never actively litigated their claims against, and never even sought to settle with, the Retailer Defendants.

1    The question of whether "the *plaintiff has acted* in bad faith" plainly requires an examination of *the plaintiff's conduct*. 28 U.S.C. § 1446(c)(1) (emphasis added). Plaintiffs here describe their own conduct as a "strategic decision" not to litigate against the Retailer Defendants, Mot. at 15, which is practically an admission of "strategic gamesmanship" warranting a finding of bad faith, *see Roundup Products Liab. Litig. (Renteria)*, 2022 WL 17839995, at *3. Without addressing the significance of the statutory text, or even drawing on the cases cited in their Motion, Plaintiffs present this Court with a novel bad-faith argument, turning the accepted analysis on its head by attempting to fault the defendants for failing to serve discovery or initiate motion practice. *See* Mot. at 14–15. That is not relevant to the inquiry required by Section 1446(c)(1)—namely, whether Plaintiffs acted in bad faith—and it runs afoul of *Dietrich*'s prohibition of collateral litigation into "whether defendant conducted sufficient inquiry." 14 F.4th at 1094 (quoting *Harris*, 425 F.3d at 697). Plaintiffs also complain that Monsanto did not remove earlier, despite informing the state court of its suspicion that defendants in this and similar cases had been named to prevent removal. *See* Mot. at 14. But that argument is also foreclosed by *Dietrich*, where the Ninth Circuit sought to avoid "premature and protective removals." *Dietrich*, 14 F.4th at 1094 (quoting *Harris*, 425 F.3d at 698).

It is also important to note that Plaintiffs' attacks on Monsanto's conduct are ill-founded.[4] In addition to overlooking how their own nondisclosure necessitated the timing of this removal, Plaintiffs present a misleading account of the removal's impact on proceedings in the Philadelphia Mass Tort program. Contrary to Plaintiffs' suggestions, the program's trial schedule remains unaffected by this removal. Indeed, the Kline & Specter firm has two other cases in the limited

---

[4] Plaintiffs specifically suggest that, before discovery was stayed, Monsanto should have sought (and could have obtained) discovery regarding the dates on which Mr. Caranci shopped at "Penn Hardware." (Mot. at 4, 15.)  Monsanto has already shown that this argument fails under *Dietrich*. And the reality of this case's procedural background illustrates the wisdom of this rule.  Because a suggestion of bankruptcy was filed on behalf of defendant S&H Hardware & Supply Co., (Ex. A to Notice of Removal, (ECF No. 1-3 at 72), this case spent nine months in deferred status—from August 26, 2021, to until May 11, 2022, when the *In Re: Roundup® Products Liability Litigation* mass tort program was created (Removal Notice, ¶¶ 13–15).  The case was formally stayed less than a month later, meaning any claimed pre-stay opportunity to conduct discovery is illusory.

- 11 -

OPPOSITION TO MOTION TO REMAND
3:16-md-02741-VC & 3:23-cv-01796-VC

plaintiff-pick (non-bellwether) trial program that specifically earmarked their firm for the October 2023 trial setting. Likewise, four other plaintiff firms also have 2-3 trial candidates each for the remaining trial settings in November 2023 and then into 2024. Only the Plaintiffs' fraudulent joinder and ensuing non-disclosure created a situation where this case was set for trial in the first place.

Finally, without offering any real explanation, Plaintiffs claim that they sued the wrong entities due to an "oversight." Mot. at 15; *see also id.* at 14 ("Whatever the reason that the corporate entity responsible for the 'Penn Hardware' store at 7404 Frankford Avenue was not named in the complaint . . . ."). However, Plaintiffs have presented no evidence that the actual entity from which Mr. Caranci allegedly purchased Roundup®-branded herbicides is available to be sued or that Plaintiffs have any intent to sue that entity, if it can be sued. Plaintiffs' failure to identify and pursue claims against the ostensible correct retailer entity in this case further establishes that the Retailer Defendants were named without regard to the truth and without any attempt to pursue a judgment against them. Plaintiffs' (and counsel's) campaign of "removal-thwarting gamesmanship" supports a bad-faith finding. *See In re Roundup Products Liab. Litig. (Renteria)*, 2022 WL 17839995, at *3.

### CONCLUSION

In light of the experience gained throughout the course of the Roundup MDL proceedings, the Court is not required to "close its eyes to reality." *Roundup Prods. Liab. Litig. (Roybal)*, 2021 WL 4186714, at *2. For the foregoing reasons, the Court should reject Plaintiffs' arguments and deny the Motion.

| | |
|---|---|
| DATED:  May 15, 2023 | Respectfully submitted, |
| Brian L. Stekloff (*pro hac vice*)<br>bstekloff@wilkinsonstekloff.com<br>Rakesh Kilaru (*pro hac vice*)<br>rkilaru@wilkinsonstekloff.com<br>**WILKINSON STEKLOFF LLP**<br>2001 M Street, NW, 10th Floor<br>Washington, DC  20036<br>Telephone:  (202) 847-4030<br>Facsimile:  (202) 847-4005 | */s/ Jennise W. Stubbs*<br>Jennise W. Stubbs (*pro hac vice*)<br>jstubbs@shb.com<br>Ryan S. Killian (CA Bar No. 294512)<br>rkillian@shb.com<br>**SHOOK, HARDY & BACON L.L.P.**<br>600 Travis Street, Suite 3400<br>Houston, TX 77002-2926<br>Telephone:  (713) 227-8008<br>Facsimile:  (713) 227-9508 |
| William Hoffman (*pro hac vice*)<br>william.hoffman@arnoldporter.com<br>Daniel S. Pariser (*pro hac vice*)<br>daniel.pariser@arnoldporter.com<br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br>601 Massachusetts Avenue, NW<br>Washington, DC  20001<br>Telephone:  (202) 942-5000<br>Facsimile:  (202) 942-5999 | Eric G. Lasker (*pro hac vice*)<br>elasker@hollingsworthllp.com<br>Martin C. Calhoun (*pro hac vice*)<br>mcalhoun@hollingsworthllp.com<br>**HOLLINGSWORTH LLP**<br>1350 I Street, NW<br>Washington, DC  20005<br>Telephone:  (202) 898-5800<br>Facsimile:  (202) 682-1639 |

*Attorneys for Defendant MONSANTO COMPANY*