Thomas R. Kline, Esquire (PA #28895)
tom.kline@klinespecter.com
Tobi L. Millrood, Esquire (PA #77764)
tobi.millrood@klinespecter.com
Christopher A. Gomez, Esquire (PA #82899)
chris.gomez@klinespecter.com
Melissa A. Merk, Esquire (PA #90363)
melissa.merk@klinespecter.com
**KLINE & SPECTER, P.C.**
1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 772-1000

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Caranci, et al., v. Monsanto Co., et al.,*<br>Case No. 3:23-cv-01796-VC | MDL NO. 02741<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO REMAND THE CASE TO THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COURT OF COMMON PLEAS, PURSUANT TO 28 U.S.C. § 1447(c)**<br><br>Date: June 8, 2023<br>Time: 10:00 a.m.<br>Courtroom: 4 |


# TABLE OF CONTENTS

**I. Introduction** .......... 1

**II. Monsanto's Notice of Removal was untimely under 28 U.S.C. § 1446(c)(1)** .......... 2

**III. The Retailer Defendants were not fraudulently joined to this case.** .......... 7

**IV. Conclusion** .......... 9

# TABLE OF AUTHORITIES

**Cases** **Pages**

*In re Roundup Products Liab. Litig. (Renteria)*,
No. 16-MD-02741-VC, 2022 WL 178399995 (N.D. Cal. Aug. 30, 2022)............................2, 7

*Tincher v. Omega Flex, Inc.*,
104 A.3d at 328 (Pa. 2014).......................................................................................2

**Statutes**

28 U.S.C. § 1441(b)(2) ...........................................................................................1

28 U.S.C. § 1446.....................................................................................................1, 2

28 U.S.C. § 1446(b)(3) ...........................................................................................5

28 U.S.C. § 1446(c)(1)............................................................................................2

## V. Introduction

This is an urgent remand motion, given Defendants' eleventh-hour attempt to derail a trial set by the Supervising Judge of the Philadelphia Court of Common Pleas Mass Tort Complex Litigation Center. Despite Defendants' consent to the instant matter being set as the first case to go to trial in the Philadelphia Roundup program, and despite the Court's Order endorsing the parties' agreement to try this case as the first matter in less than five months from now, Defendants improperly removed this matter in an attempt to upend this trial. Their removal petition is not supported by the facts or law. It should be denied immediately to give 82-year-old Ernie Caranci the trial that all parties agreed would occur this fall.

By way of brief summary, Mr. Caranci's products liability action was filed in the Philadelphia County Court of Common Pleas on June 29, 2021, asserting claims against Monsanto Company ("Monsanto"), Bayer AG ("Bayer"), S&H Hardware & Supply Company ("S&H"), Penn Hardware, Inc. ("Penn Hardware") and Penn Hardware Two, Inc. ("Penn Hardware Two"). As these defendants were properly joined and served, removal is facially improper under the forum-defendant rule set forth in 28 U.S.C. § 1441(b)(2).

On January 18, 2023, Defendants *consented* to Ernest Caranci being the first cases set for trial in the Philadelphia County Court of Common Pleas Mass Tort Program for Roundup. On February 6, 2023, by agreement of the parties that the *Caranci* matter would be the first case tried, the Philadelphia Court's Complex Litigation Center Supervising Judge, Hon. Abbe Fletman, entered Case Management Order No. 6, setting *Caranci* as the first trial. On March 30, 2023, well after the one-year limit for removal of diversity actions imposed by 28 U.S.C. § 1446, over a year after Defendants were served with discovery that identified the necessary and relevant information on place of purchase and use, and only months before trial set for October 5, 2023 in this matter,

Monsanto filed a notice of removal asserting that Defendants Penn Hardware and Penn Hardware Two should be ignored for purposes of determining diversity jurisdiction under the doctrine of fraudulent joinder. There has been no finding by the Philadelphia trial court that these parties should be dismissed (and not even a motion seeking dismissal). Despite the passage of time, and despite being served with relevant discovery answers, Defendants nonetheless argue that federal law's strict one-year limitation on removal does not apply to them because (they say) Plaintiffs acted in bad faith by asserting claims against the hardware defendants.

Monsanto has not shown that Plaintiffs acted in bad faith under 28 U.S.C. § 1446 by suing the Retailer Defendants. It was completely appropriate to name the Retailer Defendants in this complaint. It may have turned out that Plaintiffs sued the wrong corporate entities, but otherwise Monsanto has not even a shred of evidence that Plaintiffs acted with ill-motive or any illegitimate intention wrongfully prevented removal by proceeding as they did. The matter should be remanded to Philadelphia where it can proceed to an October 2023 trial as agreed by the parties.

## II.     Monsanto's Notice of Removal was untimely under 28 U.S.C. § 1446(c)(1)

Monsanto agrees that the only way its Notice of Removal was timely is if it can establish that Plaintiffs acted in bad faith by "keeping a removal-spoiling party in the case past the one-year mark in order to prevent a defendant's removal from state court." Def.'s Oppn. at 9 (citing *In re Roundup Products Liab. Litig. (Renteria)*, No. 16-MD-02741-VC, 2022 WL 178399995, at *3 (N.D. Cal. Aug. 30, 2022)). There is no evidence that Plaintiffs kept Penn Hardware, Inc. or Penn Hardware Two in the litigation past the one-year mark in an effort to defeat diversity. As a starting point, it was completely appropriate to sue the retailers from which Mr. Caranci purchased Roundup since they are subject to strict liability under well-established principles of Pennsylvania law. *See Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014). As for the timing under which the

lawsuit unfolded, that was shaped by the establishment of the Roundup mass tort program in the Philadelphia Court of Common Pleas' Complex Litigation Center for this case and dozens others. It took time for the mass tort program to be established. It took time for case management orders to issue concerning discovery in individual cases. There was no "gamesmanship" about the fact that Mr. Caranci's deposition (during which, according to Defendant, "Mr. Caranci gave his trigger testimony") did not occur more than a year after his lawsuit was filed. This was just the product of case management on a litigation-wide level and the unfolding of discovery within the context of an individual case. Certainly Plaintiffs did not avoid or fail to comply with discovery obligations in an effort to postpone discovery past the one-year mark. They did not dismiss a resident defendant days after the one-year anniversary of commencement of the action. They employed no strategy that might credibly be construed as seeking to delay discovery or thwart removal across the one-year deadline.

Defendant argues that bad faith is established solely because "Plaintiffs sought discovery from Monsanto, but not from the Retailer Defendants." Def.'s Oppn. at 9. This statement is misleading. During the one-year period after commencement of the action, discovery in this individual case had not begun as to *any* parties. This was not the result of "gamesmanship." Rather, the action was filed on June 29, 2021. At the time, this was the first Roundup case filed in the Philadelphia Court of Common Pleas. It was subsequent to this filing that proceedings occurred in the Philadelphia courts during which the parties briefed the question of whether the courts should establish a Roundup mass tort program. After the Court created that program, Plaintiffs served initial discovery requests on Monsanto that were applicable to *all* cases in the Philadelphia coordinated mass tort program on October 22, 2022. Defendants did not serve any requests on Plaintiffs until February 24, 2023. No depositions in this individual case took place before March

3, 2023. So it was by virtue of the unfolding of case management within the Philadelphia mass tort program—not by any "gamesmanship" or act of bad faith by the Plaintiffs—that no deposition occurred in this case until well after a year beyond the commencement of the action.

Several things did occur during the one year following commencement of the action that underscore Plaintiffs' good faith, not bad faith, regarding the claims against the Retailer Defendants. Penn Hardware Two engaged in motion practice regarding the negligence and implied warranty claims asserted by Plaintiffs in the original complaint. *See* Gomez Decl., Ex. C. Plaintiffs responded by amending the complaint on August 19, 2021. *See* Gomez Decl., Ex. D. Plaintiffs then voluntarily served a Plaintiff Fact Sheet on the counsel who represented both Monsanto and Penn Hardware Two on January 10, 2022, verifying that he purchased Roundup from Penn Hardware located on Frankford Avenue in Philadelphia. *See* Gomez Decl., Ex. E. (To be clear, the same counsel who filed the notice of removal on Monsanto's behalf also represented the Retailer Defendants during all relevant times.) On February 11, 2022, Plaintiffs voluntarily produced additional medical records to all Defendants. *See* Gomez Decl., Ex. F. These actions were taken despite there being no formal discovery requests pending. Plaintiffs' engagement with defense counsel who represented both Monsanto and the Retailer Defendants, and Plaintiffs' engagement on the motion practice filed by the Retailer Defendants, further illustrate that Plaintiffs did not act in bad faith by commencement this lawsuit or naming the Retailer Defendants.

Defendant argues that there was a stay in place between August 26, 2021 to May 11, 2022 due to a suggestion of bankruptcy filed on behalf of defendant S&H Hardware & Supply Co. *See* Def.'s Oppn. at 11, fn. 4. This stay had no impact on the parties' ability to voluntarily exchange information. Indeed, the parties were doing that despite the stay, as described above. In any event, Defendant Penn Hardware Two was certainly aware that it was not incorporated until 2005. It had

every opportunity during the first year following the filing of the complaint to raise its hand and ask when Mr. Caranci purchased Roundup from its store. No "gamesmanship" or bad faith by Plaintiffs to prevented Penn Hardware Two from doing this.[1]

During the first year following commencement of the action, on February 10, 2022, Plaintiffs filed a Petition to Coordinate Roundup Products Liability Cases Currently Pending in the Philadelphia Court of Common Pleas and for Mass Tort Designation ("Petition to Coordinate") to facilitate the efficient resolution of Roundup cases. *See* Gomez Decl., Ex. G. Plaintiffs did not request a stay of any pending case, including this one. *Id.* In this regard, Plaintiffs were moving the litigation forward in *all* cases so that they could seek their day in court. Plaintiffs were not delaying the litigation to defeat diversity in this case in particular (or in any case).

On May 11, 2022, Judge Abbe Fletman, the supervising judge of Philadelphia's Mass Tort Program, granted the Petition to Coordinate and ordered that all currently filed Roundup cases be transferred to Complex Litigation for coordination. *See* Gomez Decl., Ex. I. Consistent with case management orders, Plaintiffs filed a Complaint applicable to all cases in the program on August 5, 2022. *See* Millrood Reply Decl., Ex. A. On October 18, 2022, Plaintiffs served discovery requests on Monsanto in the mass tort program, where Monsanto is a defendant in all cases. *See* Millrood Reply Decl., Ex. B.

As of this date, the *Caranci* case had not yet been identified for individual case discovery. Defendant's suggestion that discovery requests were served on Monsanto (as a defendant in all cases pending in the mass tort program) but not on the Retailer Defendants (who are defendants in

---

[1] To be clear, Plaintiffs do not suggest that Defendants' failure to take affirmative steps to determine the timing of Mr. Caranci's purchase of Roundup *per se* means the Notice of Removal was untimely under Section 1446(b)(3). Plaintiffs suggest only that Defendants' failures bear on Monsanto's claim that Plaintiffs acted in bad faith. Surely the actions of all parties are relevant in assessing whether Monsanto meets its heavy burden of establishing that Plaintiffs alone acted in bad faith. Defendants should not be permitted to place blame on Plaintiffs when they were not actively participating in their own defense.

an individual action not yet listed for discovery) is evidence of Plaintiffs' bad faith cannot stand. If anything, serving discovery requests on Monsanto was evidence of participation in a mass tort setting in a program that was actively marching through the natural steps of a coordinated litigation.

Defendants' own words show that this particular case was in the "best position" to be listed as the first trial in the mass tort program because of its "unique circumstance" of having started discovery before the mass tort program was formed. *See* Gomez Decl., Ex. K, at 2. Indeed, Monsanto specifically agreed that *Caranci* was the most advanced case in the program, that it was in the best position to be tried first, and that it should be tried first. Monsanto should not now be heard to complain that Plaintiffs acted in bad faith when commencing this case mere months after representing to the Philadelphia court that this exact case was uniquely positioned to proceed to trial because Plaintiffs had actively participated in discovery before being required to do so.

The timing of case-specific discovery underscores that Plaintiffs did not act in bad faith. Case-specific discovery in the *Caranci* case opened when CMO 6 was entered on February 6, 2023, setting a fact discovery deadline of April 4, 2023. It was at this time that depositions were scheduled, and it was at this time that Plaintiffs had to make a decision on how to focus their efforts during the short two-month window of discovery—deciding to focus on Monsanto rather than the Retailer Defendants. Monsanto argues that Plaintiffs' statement in the opening brief that there was a "strategic decision" to focus efforts on obtaining discovery from Monsanto was an admission of "'strategic gamesmanship' warranting a finding of bad faith." Def.'s Oppn. at 11 (citing Mot. at 15). Again, the only "gamesmanship" here is on behalf of Monsanto. The full sentence in Plaintiffs' opening brief makes clear that this was a decision made nineteen months after commencement of the action. That decision was not made in bad faith to prevent removal; it was

a practical decision made to comply with the court-ordered deadlines. And the decision was made fully seven months after the one-year deadline for removal had passed.

Defendants misplace their reliance on *In re Roundup Products Liab. Litig. (Renteria)*, No. 16-MD-02741-VC, 2022 WL 17839995 (N.D. Cal. Aug. 30, 2022). *Renteria* involved a case filed by an individual plaintiff in state court in New Mexico. *Id.* at *1. There is no coordinated Roundup mass tort program in New Mexico state court as there is in Philadelphia. As a result, there could have been no delay in litigating the claims during the pendency of a petition to coordinate. There could have been no time period during which general discovery against Monsanto was open, but case-specific discovery against the defendants in an individual case were not. It is unlikely that case-specific discovery there was limited to only two months, as it was here. This Court also noted that "the timing of Rentaria's amended complaint is further evidence of gamesmanship" because, shortly after the removal deadline passed, the plaintiff there abandoned previously pled claims and asserted a single claim against the resident defendant that was not viable under New Mexico law. *Id.* at *3. This was not the case in *Caranci.* Here, discovery against the Retailer Defendants was not open until January 2023 – not as a result of bad faith on the part of Plaintiffs, but because that was the process for litigating matters in the Philadelphia mass tort program.

Accordingly, Monsanto has not met its heavy burden of establishing that Plaintiffs engaged in any bad faith to prevente removal. Monsanto's removal was untimely and the matter should be remanded to state court in Philadelphia.

**III. The Retailer Defendants were not fraudulently joined to this case.**

In the absence of a showing of bad faith to prevent to prevent removal, Monsanto's removal was untimely and the Court should not further consider this threshold jurisdictional issue. Even so, Monsanto cannot establish that the Retailer Defendants were fraudulently joined. Plaintiffs

asserted valid claims that were supported by Pennsylvania law.

Monsanto argues without support that Plaintiffs did not have a reasonable, good faith basis to name the Retailer Defendants at the time the complaint was filed. Def.'s Oppn. at 6. This is untrue. Mr. Caranci verified in his Plaintiff Fact Sheet, produced to Defendants Monsanto and Penn Hardware Two on January 10, 2022, that he in fact purchased Roundup from the Penn Hardware store. *See* Gomez Decl., Ex. E. He also testified that he purchased Roundup from the Penn Hardware store. *See* Millrood Reply Decl., Ex. C, at 107-109, 122-123, 179-180. In an errata sheet served April 21, 2023, Mr. Caranci again confirmed in his own handwriting that he purchased Roundup at Penn Hardware.

> Q. Serota Place, at your house, where did you buy the Roundup that you used on Serota Place?
>
> A. [corrected] Penn Hardware – Home Dep. – SH

*See* Millrood Reply Decl., Ex. C and D. Contrary to his deposition testimony that he never purchased Roundup at Penn Hardware after he moved to Serota Place in 1992, his errata sheet confirms that he did. The allegations in the complaint were made in good faith.

Throughout this litigation, Mr. Caranci has testified and verified that he purchased Roundup at Penn Hardware. It was only during the course of discovery, and indeed more than a year after the commencement of the action, that it was determined that the legal name of the defendant was incorrect. This does not change the fact that the claims were brought in good faith and pursued in good faith. During that time, Defendants had every opportunity to explore the timing and did not. Instead, they consented to the *Caranci* case being the first case to be tried in Philadelphia for the very reason that they had early disclosures on a Plaintiff Fact Sheet and an early production of medical records. The Retailer Defendants were properly named and Monsanto has not met the heavy burden of establishing fraudulent joinder.

## IV. Conclusion

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant their Motion and remand this case to the Philadelphia Court of Common Pleas.

Dated: May 22, 2023                                   **KLINE & SPECTER, P.C.**

/s/ Tobi L. Millrood
Thomas R. Kline, Esquire (PA #28895)
tom.kline@klinespecter.com
Tobi L. Millrood, Esquire (PA #77764)
tobi.millrood@klinespecter.com
Christopher A. Gomez, Esquire (PA #82899)
chris.gomez@klinespecter.com
Melissa A. Merk, Esquire (PA #90363)
melissa.merk@klinespecter.com
**KLINE & SPECTER, P.C.**
1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 772-1000

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Christopher A. Gomez, hereby certify that, on May 22, 2023, I electronically filed **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO REMAND THE CASE TO THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PURSUANT TO 28 U.S.C. § 1447(C)** with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

/s/ Tobi Millrood
Tobi L. Millrood