# EXHIBIT B

**KLINE & SPECTER, P.C.**
By:    THOMAS R. KLINE, ESQUIRE
       TOBI L. MILLROOD, ESQUIRE
       CHRISTOPHER A. GOMEZ, ESQUIRE
Attorney I.D. Nos. 28895/77764/82899
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000

**FELDMAN & PINTO**
By:    ROSEMARY PINTO, ESQUIRE
Attorney I.D. No, 53114
30 South 15th Street, 15th Floor
Philadelphia, PA 19102
(215) 546-2604

ATTORNEYS FOR PLAINTIFFS

_____

| | |
|---|---|
| PLAINTIFFS, | § COURT OF COMMON PLEAS FOR |
| | § PHILADELPHIA COUNTY, CIVIL |
| | § DIVISION |
| | § |
| v. | § MAY TERM 2022 |
| | § NO: 00550 |
| NOURYON SURFACE CHEMISTRY | § |
| LLC, a domestic corporation, | § JURY TRIAL DEMANDED |
| NOURYON CHEMICALS LLC, a | § |
| domestic corporation, NOURYON USA | § |
| LLC, a domestic corporation, and | § |
| MONSANTO COMPANY, a foreign | § |
| corporation | § |
| | § |
| _Defendants,_ | § |

**PLAINTIFFS' FIRST SET OF**
**REQUESTS FOR PRODUCTION TO THE DEFENDANT**
**MONSANTO COMPANY**

TO:    The Defendant, Monsanto Company, by and through its attorneys of record, Joseph H.
       Blum, Shook Hardy & Bacon L.L.P., 2001 Market Street, Suite 3000, Philadelphia,

1

Pennsylvania 19103.

Plaintiffs, by and through counsel, serve this First Set of Requests for Production on the Defendants, the Nouryon Defendants.

## I.      DEFINITIONS

As used herein, the following definitions shall apply:

1.      **POSSESSION, CUSTODY and CONTROL**

DOCUMENTS that are in the POSSESSION, CUSTODY or CONTROL of YOU or in the POSSESSION, CUSTODY or CONTROL of any attorney for YOU. This includes DOCUMENTS in the POSSESSION, CUSTODY or CONTROL of YOUR attorneys, agents, employees, investigators, consultants, and EXPERTS, as well as any firm, subsidiary, parent, affiliated, or related ENTITY, and any other ENTITY or business in which YOU own a controlling interest or over which YOU exercise CONTROL. YOU are required to use reasonable diligence to locate the DOCUMENTS, including those that are not in YOUR immediate POSSESSION. Without limiting the term "CONTROL," a DOCUMENT is deemed to be within YOUR CONTROL if YOU have ownership, POSSESSION or CUSTODY of the DOCUMENT, or the right to secure the DOCUMENT or copy thereof from any PERSON or public or private ENTITY having physical POSSESSION thereof.

2.      **YOU** or **ANYONE ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

3.      **Electronically Stored Information (ESI)**

Responsive ELECTRONICALLY STORED INFORMATION (ESI) shall be produced in its native form; that is, in the form in which the INFORMATION was customarily created, used and stored by the native application employed by YOU in the ordinary course of business.

a.      If it is infeasible or unduly burdensome to produce an item of responsive ESI in its native form, YOU may produce in a near-native form; that is, in a form in which the item can be imported into the native application without a material loss of content, structure or functionality as compared to the native form.  Static image production formats serve as near-native alternatives only for DOCUMENTS that are natively static images (i.e., photographs and scans).

b.      The table below supplies examples of native or near-native forms in which specific types of ESI should be produced:

| Source ESI | Native or Near Native Form or Forms Sought |
|---|---|
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel Spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint Presentations | .PPT, .PPTX |
| Microsoft Access Databases | .MDB, .ACCDB |
| WordPerfect documents | .WPD |
| Adobe Acrobat Documents | .PDF |
| Photographs | .JPG, .PDF |

| E-mail | Messages should be produced in a form or forms that readily support import into standard e-mail client programs; that is, the form of production should adhere to the conventions set out in RFC 5322 (the internet e-mail standard). For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and produced. For Lotus Notes mail, furnish .NSF files or convert to .PST. If YOUR workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced in a delimited text file. |
|---|---|

c.      YOU need only produce reports from databases that can be generated in the ordinary course of business (i.e., without specialized programming skills), and these shall be produced in a delimited electronic format preserving field and record structures and names. The parties will meet and confer regarding programmatic database productions as necessary.

d.      Individual DOCUMENTS requiring redaction shall (as feasible) be redacted natively or produced in.PDF format and redacted using the Adobe Acrobat redaction feature. Redactions shall not be accomplished in a manner that serves to downgrade the ability to electronically search the unredacted portions of the item.

e.      YOU need not produce identical DOCUMENTS in more than one form and shall globally de-duplicate identical items across custodians using each DOCUMENT's unique MD5 hash value. The content, metadata and utility of a DOCUMENT must all be considered in determining whether DOCUMENTS are identical, and items reflecting different INFORMATION shall not be deemed identical.

f.      Production should be made using appropriate electronic media of YOUR choosing provided that the production media chosen not impose an undue burden or expense upon a recipient. YOU must, contemporaneously with production, supply decryption credentials and passwords to the receiving party for all items produced in an encrypted or password-protected form.

g.      Each DOCUMENT produced shall be uniquely identified by naming the item to correspond to a Bates identifier according to the following protocol:

4

      i.      The first fourteen (14) characters of the filename will reflect a unique alphanumeric designation IDENTIFYING the party making production and the case;

      ii.     The next ten (10) characters, beginning with an underscore, will be a unique, consecutive numeric value assigned to the item by the producing party. This value shall be padded with leading zeroes as needed to preserve its length;

      iii.    The final five (5) characters are reserved to a sequence beginning with a dash (-) followed by a four-digit number reflecting pagination of the item when printed to paper or converted to an image format for use in proceedings or when attached as exhibits to pleadings.

      iv.    By way of example, a Microsoft Word document produced by Acme Corporation in its native format might be named: ACME_VMESHSDCA_000000123.docx. Were the document printed out for use in deposition, page six of the printed item must be embossed with the unique identifier ACME_VMESHSDCA_000000123-0006.

h.    DOCUMENTS designated Confidential may, at YOUR option:

      i.      Be separately produced on electronic production media prominently labeled to IDENTIFY the contents as confidential; or, alternatively,

      ii.     Each such designated DOCUMENT shall have appended to the file's name (immediately following its Bates identifier) the following protective legend:

      ~CONFIDENTIAL-

i.    YOU shall furnish a delimited load file supplying the metadata field values listed below for each DOCUMENT produced (to the extent the values exist and as applicable):

| **Field** |
| --- |
| Begin Bates |
| End Bates |
| Begin Attach |
| End Attach |
| Custodian/Source |
| Source File Name |
| Source File Path |
| From/Author |
| To |
| CC |
| BCC |

| |
|---|
| Date Sent |
| Time Sent |
| Subject/Title |
| Last Modified Date |
| Last Modified Time |
| DOCUMENT Type |
| Redacted Flag (yes/no) |
| Hidden Content/Embedded Objects Flag (yes/no) |
| Confidential flag (yes/no) |
| MD5 Hash value |
| Hash De-Duplicated Instances (by full path) |

j.     Each production should include a cross-reference load file that correlates the various files, images, metadata field values and searchable text produced.

k.     Respond to each request for production by listing the unique identifier (Bates-style) numbers/ranges of responsive DOCUMENTS produced.

l.     If any DOCUMENT to be produced has been lost, discarded, transferred to another PERSON or ENTITY, destroyed, or otherwise disposed of, please set forth in writing: (1) the date, name and subject matter of the DOCUMENT; (2) the name, employment and title of each PERSON who prepared, received, reviewed, or had CUSTODY, POSSESSION, or CONTROL of the DOCUMENTS; (3) all PERSONS with knowledge of the contents or any portion of the contents of the DOCUMENTS; (4) the previous location of the DOCUMENTS; (5) the date of disposal or transfer of the DOCUMENTS; (6) the reason for disposal or transfer of the DOCUMENTS; and, if applicable, (7) the manner of disposal of the DOCUMENTS; or, if applicable, (8) the names and addresses of the transferees of the DOCUMENTS.

m.     It is required that all DOCUMENTS and/or other data compilations which might impact on the subject matter of this litigation be preserved and that any ongoing process of DOCUMENTS destruction involving such DOCUMENTS cease. In those instances where DOCUMENTS destruction has already taken place, it is requested that the DOCUMENTS that would have been relevant to the following discovery request be identified as well as the date of destruction and the individual authorizing, ordering and/or carrying out the destruction.

n.     If YOU believe that a complete response to any request would require the disclosure of confidential health INFORMATION, the disclosure of which YOU believe is prohibited by the Health Insurance Portability and Accountability Act (HIPAA) or other law, Plaintiff(s) will accept responses that are redacted to comply with such law but that are otherwise complete. Plaintiff(s) expressly reserve the right to challenge any such redaction.

6

o.     YOUR response to each Request for Production should include the unique identifier numbers/ranges that IDENTIFY the DOCUMENTS responsive to that particular request.  For instance, if, in response to Request for Production No. 3, YOU are producing 50 DOCUMENTS, YOUR response should IDENTIFY the unique identifier numbers for those 50 DOCUMENTS.

4.     **Hard Copy or Paper Production**

a.     All duplicates or copies of DOCUMENTS are to be provided to the extent they have handwriting, additions, or deletions of any kind different from the original DOCUMENTS being produced.

5.     **"DEFENDANT" or "DEFENDANTS"** shall mean, unless otherwise specified in a particular request, DEFENDANT named in this lawsuit and/or any agent or representative of DEFENDANT named in this lawsuit during all times relevant to this action.

6.     **"IDENTIFY", "IDENTITY,",** or **"IDENTIFICATION"** means:

a.     With respect to a <u>natural person,</u> all that YOU know or that YOU can determine about his or her full name or names, title, present or last known employer or job description, and present or last known home and business addresses.

b.     With respect to an <u>ENTITY which is not a natural person,</u> all that YOU know or that YOU can determine about its full name or names, dates and places of formation, principal places of business, and business addresses.

c.     With respect to <u>DOCUMENTS,</u> all that YOU know or that YOU can determine about title, type of DOCUMENTS, date, author, addressee, recipients, any IDENTIFYING numbers on such DOCUMENTS, substance of its contents, subject matter, present location, present custodian, and each PERSON who has CUSTODY, POSSESSION, or CONTROL over each copy of each DOCUMENTS.

d.     With respect to a <u>physical object,</u> all that YOU know or that YOU can determine about its common name, IDENTIFYING number(s), manufacturer and date of manufacture of the object.

e.     With respect to an event, all that YOU know or can determine about the date, time, place, participants, actions taken, and results obtained.

7.     **"DESCRIBE"** includes, when used in reference to any DOCUMENTS(s) or tangible evidence, stating the title or name, date, time, author of DOCUMENTS, the common name, IDENTIFYING number, manufacturer and date of manufacture of any object and the name and address of the PERSON(s) having POSSESSION of such at the present time.

8.     **"PERSON"** or **"PERSONS"** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

9.     **"ENTITY"** or **"ENTITIES"** shall mean any corporation, corporate form (such as a limited partnership, limited liability partnership, or limited liability company), parent company, affiliate, subsidiary, partner, member, venture, partnership, or any other structure (or a chain of successive ENTITIES) that conducts business, has conducted business, or anticipates conducting business.

10.     **"DOCUMENTS"** as used here encompass individual DOCUMENTS and records (including associated metadata) whether on paper or film, as discrete "files" stored electronically, optically, or magnetically or as a record within a database, archive, or container file. The term should be read broadly to include e-mail, messaging, word processed documents, digital presentations, and spreadsheets.

11.     **"COMMUNICATION(S)"** includes, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer, or exchange of INFORMATION of any nature whatsoever, by or to whomever, whether oral, written, or face-to-face, by telephone, mail, personal delivery, electronic mail, computer, or otherwise, specifically including, without limitation, correspondence, conversations, dialogue, discussions, interviews, consultations, agreements, and other understandings.

12.     **"NOTIFICATION(S)"** refers any COMMUNICATION in any form (written, mail, electronic, etc.) from the DEFENDANT to any other PERSON or ENTITY containing recommendations or advice concerning the usage, safety, instructions, indications, contraindication, or other INFORMATION related to ROUNDUP, GLYPHOSATE-BASED HERBICIDE(S), GBH, GLYPHOSATE-BASED FORUMULATION(S), or GBF.

13.     **"INFORMATION"** should be construed in the broadest possible sense. It is intended reference both facts and applicable principles. This term should not be construed to be limited by any method of acquisition or compilation and should, therefore, be construed to include oral INFORMATION as well as documents.

14.     "**DAMAGES**" shall mean all claims for relief alleged by Plaintiff(s) in the latest Petition.

15.     **"FDA"** refers to the United States Food & Drug Administration, any committee, subcommittee or advisory committee thereto, and any PERSON, employee or agent of the FDA.

16.     **"EPA"** refers to the United States Environmental Protection Agency, any committee, subcommittee or advisory committee thereto, and any PERSON, employee or agent of the EPA.

17.     **"GLYPHOSATE-BASED HERBICIDE(S)", "GBH", "GLYPHOSATE-BASED FORUMULATION(S)",** or **"GBF"** refers to the chemical glyphosate and all formulations of Monsanto's Roundup products that contain glyphosate, surfactants, adjuvants, and inert ingredients, including, but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Custom Herbicide, Roundup D-Pak herbicide, Roundup Dry Concentrate, Roundup Export Herbicide, Roundup Fence & Hard Edger 1, Roundup Garden Foam Weed & Grass Killer, Roundup Grass and Weed Killer, Roundup Herbicide, Roundup Original 2k herbicide, Roundup Original II Herbicide, Roundup Pro Concentrate, Roundup Prodry Herbicide, Roundup Promax, Roundup Quik Stik Grass and Weed Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate Weed & Grass Killer, Roundup Rainfast Super Concentrate Weed & Grass Killer, Roundup Ready-to- Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup

Ready-to-Use Weed & Grass Killer, Roundup Ready-to-Use Weed and Grass Killer 2, Roundup Ultra Dry, Roundup Ultra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed & Grass Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass killer Ready-to-Use Plus, Roundup Weed & Grass Killer Super Concentrate, Roundup Weed & Grass Killer1 Ready-to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other glyphosate based formulations developed, designed, distributed, licensed, manufactured, marketed or sold by Monsanto Company.

18.     **"ROUNDUP"** refers to all formulations of Monsanto's Roundup products that contain glyphosate, surfactants, adjuvants, and inert ingredients, including, but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Custom Herbicide, Roundup D-Pak herbicide, Roundup Dry Concentrate, Roundup Export Herbicide, Roundup Fence & Hard Edger 1, Roundup Garden Foam Weed & Grass Killer, Roundup Grass and Weed Killer, Roundup Herbicide, Roundup Original 2k herbicide, Roundup Original II Herbicide, Roundup Pro Concentrate, Roundup Prodry Herbicide, Roundup Promax, Roundup Quik Stik Grass and Weed Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate Weed & Grass Killer, Roundup Rainfast Super Concentrate Weed & Grass Killer, Roundup Ready-to- Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup Ready-to-Use Weed & Grass Killer, Roundup Ready-to-Use Weed and Grass Killer, Roundup Ultra Dry, Roundup Ultra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed & Grass Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass killer Ready-to-Use Plus, Roundup Weed & Grass Killer Super Concentrate, Roundup Weed & Grass Killer1 Ready-to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other glyphosate-based formulations developed, designed, distributed, licensed, manufactured, marketed or sold by Monsanto Company.

19.     **"POLYOXYETHOXYLENEALKYLAMINE"** or **"POEA"** shall be defined the same way Monsanto defines and explains **POLYOXYETHOXYLENEALKYLAMINE** or **POEA** for consumers on Monsanto's website, available at: https://monsanto.com/innovations/research-development/q/monsantos-product-uses-poea-how-can-this-be-safe/.

20.     **"FOREIGN GOVERNMENT AGENCY"** means any agency, committee, subcommittee or advisory committee of any government other than the United States of America, which bears responsibility or exercises authority over the manufacture, distribution, LABELING, sale and/or marketing of medical devices or human health in any jurisdiction, and any employee or agent of that FOREIGN GOVERNMENT AGENCY.

21.     **"STUDY"** or **"STUDIES"** shall mean and refer to any kind of research, inquiry, analysis or test as the terms are understood and defined, shall be construed broadly, and include, without limitation, any investigation or other activity in which data and information are gathered for analysis, reporting or understanding, regardless of the original intention of the study. The term shall include any study, including, without limitation, studies which are completed, ongoing or still in progress, and shall include all responsive studies, whether the activity took place in the United States or not.

22.     **"MEDICAL LITERATURE"** shall mean the commonsense definition and shall include all abstracts, summaries, articles, literature, letters to the author or other written commentary, whether peer reviewed or not.

23.     **"SIDE EFFECT"** refers to any ADVERSE effect that is associated with the use of ROUNDUP, GLYPHOSATE-BASED HERBICIDE(S), GBH, GLYPHOSATE-BASED FORUMULATION(S), or GBF. "ADVERSE" means unfavorable.

24.     **"LABELING"** includes all final and draft written, printed, or graphic matter accompanying ROUNDUP, GLYPHOSATE-BASED HERBICIDE(S), GBH, GLYPHOSATE-BASED FORUMULATION(S), or GBF at any time.

25.     **"CUSTODIAL DOCUMENTS"** are all "DOCUMENTS" maintained by YOUR current employees and past employees (while they were employed). For instance, "CUSTODIAL DOCUMENTS" include each "DOCUMENT" on an individual employee's computer, voice mail, office desk, office filing cabinet or storage system, file storage maintained by that PERSON outside of his/her office, and any other location in which that employee keeps or kept DOCUMENTS.

26.     **"EXPERT(s)"** or **"EXPERT WITNESS(ES)"** refers to any PERSON who may be called upon as an EXPERT WITNESS at trial and any EXPERT used for consultation who is not expected to be called as a witness at trial, but whose opinions and/or mental impressions have been reviewed or relied upon by a testifying EXPERT.

27.     **"AS-IS"** shall mean without modification of the noted product from the time the product came into Your possession to the time said product was purchased by a consumer.

28.     **"Plaintiff"** means the plaintiff named in the caption above.

## II.    REQUESTS FOR PRODUCTION

**FORM OF PRODUCTION:  All ESI is requested in the form set forth in Definition No. 3.**

1.    All DOCUMENTS,[1] ELECTRONICALLY STORED INFORMATION, and TANGIBLE THINGS you have produced as part of discovery in the following litigations:

    a.    *In re: Roundup Products Liability Litigation*, MDL No. 2741, No. 16-md-2741-VC (N.D. Cal. 2016).

    b.    *James Dublino v. Monsanto Company, et al., No. CGC-20-585761 (Cal. Super. Ct. San Francisco Cty.).*

    c.    *Hardeman v. Monsanto Co.*, No. 16-cv-00525 (N.D. Cal.).

    d.    *Carson v. Monsanto Co.*, No. 4:17-cv-237 (S.D. Ga.).

    e.    *In re: Roundup Prods. Cases*, JCCP No. 4953 (Cal. Super. Ct. Alameda Cty. 2017).

    f.    *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. San Francisco Cty.).

    g.    *Pilliod v. Monsanto Co.*, No. RG17862702, JCCP No. 4953 (Cal. Super. Ct. Alameda Cty.).

    h.    *Stephens v.* Monsanto Co., No. CGC-20-58576411 (CIVSB-2104801), (Cal. Super. Ct., San Bernardino Cty.).

    i.    *Clark v.* Monsanto Co., No. 20STCV46616 (Cal. Super. Ct., Los Angeles Cty.)

    j.    *Shelton v.* Monsanto Co., 1816-cv-17026 (Cir. Ct. Jackson Cty., Missouri)

    k.    *Johnson v.* Monsanto Co., No. 21-cv-10291 (Jackson Cty. Cir. Ct., Oregon).

    l.    *Alesi, et al. v. Monsanto Co.*, No. 19SL-CC03617 (St. Louis County, Missouri).

2.    All DISCOVERY RESPONSES in your possession served as part of discovery in the following litigations:

    a.    *In re: Roundup Products Liability Litigation*, MDL No. 2741, No. 16-md-2741-VC (N.D. Cal. 2016).

---

[1] "DOCUMENTS" in this request includes but is not limited to Monsanto's EPA registration and correspondence files related to glyphosate-based herbicides ("GBH") or glyphosate-based formulations ("GBF"), Monsanto's files of scientific studies and literature related to the safety of GBH or GBF to people and other mammals, material safety data sheets regarding Monsanto GBH or GBF, labels for Monsanto GBH or GBF, and public communications by Monsanto regarding the safety of its GBH or GBF.

      b.     *James Dublino v. Monsanto Company, et al., No. CGC-20-585761 (Cal. Super. Ct. San Francisco Cty.).*

      c.     *Hardeman v. Monsanto Co.*, No. 16-cv-00525 (N.D. Cal.).

      d.     *Carson v. Monsanto Co.*, No. 4:17-cv-237 (S.D. Ga.).

      e.     *In re: Roundup Prods. Cases*, JCCP No. 4953 (Cal. Super. Ct. Alameda Cty. 2017).

      f.     *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. San Francisco Cty.).

      g.     *Pilliod v. Monsanto Co.*, No. RG17862702, JCCP No. 4953 (Cal. Super. Ct. Alameda Cty.).

      h.     *Stephens v.* Monsanto Co., No. CGC-20-58576411 (CIVSB-2104801), (Cal. Super. Ct., San Bernardino Cty.).

      i.     *Clark v.* Monsanto Co., No. 20STCV46616 (Cal. Super. Ct., Los Angeles Cty.)

      j.     *Shelton v.* Monsanto Co., 1816-cv-17026 (Cir. Ct. Jackson Cty., Missouri)

      k.     *Johnson v.* Monsanto Co., No. 21-cv-10291 (Jackson Cty. Cir. Ct., Oregon).

      l.     *Alesi, et al. v. Monsanto Co.*, No. 19SL-CC03617 (St. Louis County, Missouri).

3.     All DEPOSITION TRANSCRIPTS, DEPOSITION VIDEOS, and DEPOSITION EXHIBITS, whether the depositions were noticed by you or any other party, taken in the following litigations:

      a.     *In re: Roundup Products Liability Litigation*, MDL No. 2741, No. 16-md-2741-VC (N.D. Cal. 2016).

      b.     *James Dublino v. Monsanto Company, et al., No. CGC-20-585761 (Cal. Super. Ct. San Francisco Cty.).*

      c.     *Hardeman v. Monsanto Co.*, No. 16-cv-00525 (N.D. Cal.).

      d.     *Carson v. Monsanto Co.*, No. 4:17-cv-237 (S.D. Ga.).

      e.     *In re: Roundup Prods. Cases*, JCCP No. 4953 (Cal. Super. Ct. Alameda Cty. 2017).

      f.     *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. San Francisco Cty.).

      g.     *Pilliod v. Monsanto Co.*, No. RG17862702, JCCP No. 4953 (Cal. Super. Ct. Alameda Cty.).

      h.     *Stephens v.* Monsanto Co., No. CGC-20-58576411 (CIVSB-2104801), (Cal. Super. Ct., San Bernardino Cty.).

      i.      *Clark v.* Monsanto Co., No. 20STCV46616 (Cal. Super. Ct., Los Angeles Cty.)

      j.      *Shelton v.* Monsanto Co., 1816-cv-17026 (Cir. Ct. Jackson Cty., Missouri)

      k.     *Johnson v.* Monsanto Co., No. 21-cv-10291 (Jackson Cty. Cir. Ct., Oregon).

      l.      *Alesi, et al. v. Monsanto Co.*, No. 19SL-CC03617 (St. Louis County, Missouri).

4.     All EXPERT REPORTS in your possession, whether served by you or any other party, in the following litigations:

      a.     *In re: Roundup Products Liability Litigation*, MDL No. 2741, No. 16-md-2741-VC (N.D. Cal. 2016).

      b.     *James Dublino v. Monsanto Company, et al., No. CGC-20-585761 (Cal. Super. Ct. San Francisco Cty.).*

      c.     *Hardeman v. Monsanto Co.*, No. 16-cv-00525 (N.D. Cal.).

      d.     *Carson v. Monsanto Co.*, No. 4:17-cv-237 (S.D. Ga.).

      e.     *In re: Roundup Prods. Cases*, JCCP No. 4953 (Cal. Super. Ct. Alameda Cty. 2017).

      f.      *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. San Francisco Cty.).

      g.     *Pilliod v. Monsanto Co.*, No. RG17862702, JCCP No. 4953 (Cal. Super. Ct. Alameda Cty.).

      h.     *Stephens v.* Monsanto Co., No. CGC-20-58576411 (CIVSB-2104801), (Cal. Super. Ct., San Bernardino Cty.).

      i.      *Clark v.* Monsanto Co., No. 20STCV46616 (Cal. Super. Ct., Los Angeles Cty.)

      j.      *Shelton v.* Monsanto Co., 1816-cv-17026 (Cir. Ct. Jackson Cty., Missouri)

      k.     *Johnson v.* Monsanto Co., No. 21-cv-10291 (Jackson Cty. Cir. Ct., Oregon).

      l.      *Alesi, et al. v. Monsanto Co.*, No. 19SL-CC03617 (St. Louis County, Missouri).

5.     All TRIAL TRANSCRIPTS in the following litigations:

      a.     *In re: Roundup Products Liability Litigation*, MDL No. 2741, No. 16-md-2741-VC (N.D. Cal. 2016).

  b. *James Dublino v. Monsanto Company, et al., No. CGC-20-585761 (Cal. Super. Ct. San Francisco Cty.).*

  c. *Hardeman v. Monsanto Co.*, No. 16-cv-00525 (N.D. Cal.).

  d. *Carson v. Monsanto Co.*, No. 4:17-cv-237 (S.D. Ga.).

  e. *In re: Roundup Prods. Cases*, JCCP No. 4953 (Cal. Super. Ct. Alameda Cty. 2017).

  f. *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. San Francisco Cty.).

  g. *Pilliod v. Monsanto Co.*, No. RG17862702, JCCP No. 4953 (Cal. Super. Ct. Alameda Cty.).

  h. *Stephens v.* Monsanto Co., No. CGC-20-58576411 (CIVSB-2104801), (Cal. Super. Ct., San Bernardino Cty.).

  i. *Clark v.* Monsanto Co., No. 20STCV46616 (Cal. Super. Ct., Los Angeles Cty.)

  j. *Shelton v.* Monsanto Co., 1816-cv-17026 (Cir. Ct. Jackson Cty., Missouri)

  k. *Johnson v.* Monsanto Co., No. 21-cv-10291 (Jackson Cty. Cir. Ct., Oregon).

  l. *Alesi, et al. v. Monsanto Co.*, No. 19SL-CC03617 (St. Louis County, Missouri).

6. Produce any and all documents, communications, e-mails, and correspondence with Monsanto relating to Roundup, GBHs, or GBFs.

7. Produce any and all documents, communications, e-mails, and correspondence with Bayer relating to Roundup, GBHs, or GBFs.

8. Produce any and all purchase agreements or contracts with Monsanto for the sale of Roundup, GBHs, or GBFs.

9. Produce any and all purchase agreements or contracts with Bayer for the sale of Roundup, GBHs, or GBFs.

10. Produce any and all purchase agreements or contracts with any distributors relating to the sale of Roundup, GBHs, or GBFs.

11. Produce all documents, communications, e-mails, and correspondence relating to the display of Roundup, GBHs, or GBFs in your stores.

12. Produce all documents, communications, e-mails, and correspondence relating to any promotional items regarding Roundup, GBHs, or GBFs.

13. Produce all documents, communications, e-mails, and correspondence relating to any payments from Monsanto for the sale of Roundup, GBHs, or GBFs.

14

14. Produce all documents, communications, e-mails, and correspondence relating to any payments from any distributors for the sale of Roundup, GBHs, or GBFs.

15. Produce any and all documents relating to any communications from or to any employee or representative of this Defendant that were sent to or received from any employee or representative of Monsanto concerning Roundup, GBHs, or GBFs.

16. Produce any and all documents relating to any communications from or to any employee or representative of this Defendant that were sent to or received from any employee or representative of Monsanto concerning glyphosate.

17. Produce any and all documents relating to any communications from or to any employee or representative of this Defendant that were sent to or received from any employee or representative of any distributors of Roundup, GBHs, or GBFs concerning Roundup, GBHs, or GBFs.

18. Produce any and all documents relating to any communications from or to any employee or representative of this Defendant that were sent to or received from any employee or representative of any distributors of Roundup, GBHs, or GBFs concerning glyphosate.

19. Produce all documents evidencing revenue you made from the sale of Roundup, GBHs, or GBFs.

20. Produce all reports prepared regarding Plaintiff's injuries.

21. Produce copies of all disability records obtained by you pertaining to referencing Plaintiff.

22. Produce all records referring to Plaintiff concerning the criminal justice system.

23. Produce all written or recorded statements of Plaintiff taken by you or others.

24. Produce a current copy of the curriculum vitae or resume of any person whom you may call as an expert witness in the trial of this case.

25. Produce a current curriculum vitae or resume of each person whose opinions or impressions have been reviewed or relied upon by any person who may be called to testify in the trial of this case.

26. Produce a current list of the cases, including the cause number, of all trial and deposition testimony given in the past five (5) years by each person whom you may call as an expert witness in the trial of this case in which such expert discussed or described mental impressions or conclusions that relate to the subject matter of this lawsuit.

27. Produce a current list of the cases, including the cause number, of all trial and deposition testimony given in the past five (5) years by each person whose opinions or impressions have been reviewed or relied upon by any expert who may be called to testify in the trial of this case in which such person discussed or described mental impressions or conclusions that relate to the subject matter of this lawsuit.

28.     Produce all transcripts and video recordings of deposition or trial testimony given in the past five (5) years by each person whom you may call as an expert witness in the trial of this case in which such expert witness discussed or described mental impressions or conclusions that relate to the subject matter of this lawsuit.

29.     Produce all transcripts and video recordings of deposition or trial testimony given in the past five (5) years by each person whose opinions or impressions may have been reviewed or relied upon by any expert who may be called to testify in the trial of this cause in which such person discussed or described mental impressions or conclusions that relate to the subject matter of this lawsuit.

30.     Produce a current list of works written or published by each person whom you may call as an expert witness in a trial of this case.

31.     Produce copies of any document that any expert witness you may call to testify at trial of this case has reviewed and/or will utilize to aid testimony.

32.     Produce copies of any document or other item an expert witness you may call to testify at trial of this case has reviewed or relied upon which relates to or in any way concerns the Plaintiff's damages or injuries suffered by Plaintiff.

33.     Produce copies of any document that any expert witness you may call to testify at trial of this case has reviewed or relied upon in formulating his/her opinions that relates to or concerns this litigation in any way.

34.     Produce all documents which you have been asked to identify and/or to which you have made reference or identified in your responses to Plaintiff's Interrogatories to you.

35.     Produce all settlement agreements or other documents setting forth the terms and conditions of any settlement entered into by you or your insurer(s) with any party to this suit.

36.     Produce copies of any documents reflecting settlements, compromises, agreements, deals, and/or understandings between any Defendants to this suit and any other party concerning the lawsuit.

37.     Produce all documents, contracts, correspondence and/or notes which concerns, refers to, or reflect potential parties to this action and persons with knowledge of relevant facts.

38.     Produce a copy of your code of ethics, and all prior versions of your code of ethics that were in effect between 1990 and today.

39.     Produce a copy of your document retention policy.

40.     Produce all documents you have produced to other named defendants as it relates to this incident and/or lawsuit.

41.     Produce all ROUNDUP print advertisements that were circulated at any time between 2001

and today in Pennsylvania.

42.    Produce all ROUNDUP internet advertisements that were circulated at any time between 2001 and today in Pennsylvania.

43.    Produce all ROUNDUP television advertisements that were circulated at any time between 2001 and today in Pennsylvania.

44.    Produce all ROUNDUP radio advertisements that were circulated at any time between 2001 and today in Pennsylvania.

45.    Produce any and all documents, communications, e-mails, and correspondence relating to the IARC articles that relate to Roundup, GBH, or GBF.

46.    Provide all documents, communications, e-mails, and correspondence relating to any peer view articles regarding Roundup, GBHs, or GBFs.

47.    Provide all documents, communications, e-mails, and correspondence relating to the ghost writing of articles regarding Roundup, GBHs, or GBFs.

48.    Produce all documents, communications, e-mails, and correspondence concerning Proposition 65 as it relates to GBHs, GBFs, or Roundup.

49.    Produce all results from testing you performed on Roundup, GBHs, or GBFs.

50.    Produce all documents, communications, e-mails, and correspondence relating to the carcinogenicity & testing of Roundup, GBHs, or GBFs.

51.    Produce all documents, communications, e-mails, and correspondence relating to any laboratories that you performed tests in including, but not limited to, the IBT laboratory.

52.    Produce all documents, communications, e-mails, and correspondence relating to the human body absorbing Roundup, GBHs, or GBFs.

53.    Produce all documents, communications, e-mails, and correspondence relating to the elements of Roundup, GBHs, or GBFs.

54.    Produce any and all purchase agreements or contracts with any sellers, distributors, and/or retailers that are involved in the sale or distribution of Roundup, GBHs, or GBFs.

55.    Produce all documents, communications, e-mails, and correspondence relating to the display of Roundup, GBHs, or GBFs in stores.

56.    Produce all documents, communications, e-mails, and correspondence relating to any promotional items sent to any sellers, distributors, and/or retailers of Roundup, GBHs, or GBFs.

57.    Produce all documents, communications, e-mails, and correspondence relating to payments to any sellers, distributors, and/or retailers of Roundup, GBHs, or GBFs.

17

58.   Produce any and all documents relating to any communications from or to any employee or representative of this Defendant that were sent to or received from any employee or representative of Bayer concerning Roundup, GBHs, or GBFs.

59.   Produce any and all documents relating to any communications from or to any employee or representative of this Defendant that were sent to or received from any employee or representative of Bayer concerning Roundup, GBHs, or GBFs.

60.   Produce any and all documents relating to any communications from or to any employee or representative of this Defendant that were sent to or received from any employee or representative of any manufacturer of Roundup, GBHs, or GBFs concerning Roundup, GBHs, or GBFs.

61.   Produce any and all documents relating to any communications from or to any employee or representative of this Defendant that were sent to or received from any employee or representative of any manufacturer of Roundup, GBHs, or GBFs concerning Roundup, GBHs, or GBFs.

62.   Produce all summaries, reports, and files reviewed by each person who may testify as an expert witness at trial.

63.   Produce all documents prepared by each expert witness who has been consulted by you and whose opinions have been reviewed by an expert witness who may testify at trial.

64.   Produce copies of all publications which any expert witness obtained or consulted by you has contributed to or on which he or she will rely, which relate in any way to the subject matter or opinions of the expert witness.

65.   All records referring to Plaintiff concerning the criminal justice system.

66.   All of Plaintiff's medical records obtained by YOU in this litigation or that are in YOUR POSSESSION.

67.   All of Plaintiff's medical billing records obtained by YOU in this litigation or that are in YOUR POSSESSION.

68.   All marketing materials concerning or referencing Roundup, GBH, or GBF products that were drafted and/or designed to be distributed to consumers or retailers.

69.   All DOCUMENTS concerning comparisons of Roundup products to other GBH or GBF products.

70.   All board of director meeting minutes concerning the Roundup, GBH, or GBF products.

71.   All COMMUNICATIONS between YOU and the distributor of the Roundup, GBH, or GBF products concerning the safety, efficacy, and/or use of the Roundup, GBH, or GBF products.

72.     All DOCUMENTS pertaining to the Roundup, GBH, or GBF products that relate in any way to the distribution of the Roundup, GBH, or GBF products.

73.     For each year YOU marketed and/or sold the Roundup, GBH, or GBF products, all DOCUMENTS concerning:

a.      General corporate organizational charts;

b.      Sales department organizational charts;

c.      Marketing department organizational charts;

d.      Research and development organizational charts; and

e.      Organizational charts reflecting YOUR relationship to any third parties or consultants regarding Roundup, GBH, or GBF products.

74.     All DOCUMENTS concerning any STUDIES related to or involving Roundup, GBH, or GBF products including:

a.      Protocols;

b.      Technical Report Approval Sheets;

c.      Informed consents;

d.      Contracts;

e.      Funding vouchers;

f.      Reports;

g.      Progress notes;

h.      Meeting notes and minutes;

i.      Internal COMMUNICATIONS; and

j.      COMMUNICATIONS YOU had with third parties.

75.     All safety trials and safety trial study files related to Roundup, GBH, or GBF products, whether published or not, that collected or analyzed safety outcomes.

76.     All DOCUMENTS concerning ongoing STUDIES that are collecting or analyzing safety outcomes for Roundup, GBH, or GBF products.

77.     All STUDIES related to Roundup, GBH, or GBF products YOU conducted, sponsored or funded, published or not, with an endpoint of safety.

19

78.     All DOCUMENTS and COMMUNICATIONS concerning the potential of conducting a STUDY with safety as an endpoint.

79.     All DOCUMENTS relating or referring to, or embodying, completed, pending, proposed, and/or proposed but never begun clinical investigations, STUDIES, or tests concerning the possible or actual SIDE EFFECTS associated with the use of the Roundup, GBH, or GBF products, including without limitation the following:

   a.     Any contracts or agreements between YOU and any PERSON or other legal ENTITY who participated in any such clinical investigations, tests, or STUDIES;

   b.     Any correspondence or DOCUMENTS reflecting COMMUNICATIONS between YOU and any PERSON or other legal ENTITY who participated in any such clinical investigations;

   c.     Any test protocols pertaining to any such clinical investigations, including drafts thereof;

   d.     Any summaries of results;

   e.     Any internal memoranda concerning the STUDY or its results;

   f.     Drafts of reports and final reports;

   g.     Published results of the STUDY;

   h.     Submission of the STUDY'S results to any regulatory authority;

   i.     Investigators' manual and drafts thereof; and

   j.     Any forms or DOCUMENTS given to or signed by patients or other PERSONS participating in any such clinical investigations.

80.     All DOCUMENTS concerning COMMUNICATIONS by YOU with any publisher, editor, author, reporter, employee or contractor of any medical or news publication concerning a mesh STUDY or proposed STUDY (irrespective of whether the STUDY involves Roundup products or other GBH or GBF products.

81.     All DOCUMENTS concerning any federal or state criminal investigation or EPA, FDA, or state regulatory investigation of Roundup, GBH, or GBF products.

82.     All DOCUMENTS concerning minutes or notes of YOUR Board of Directors meetings, or other applicable team meetings, including:

   a.     Acquisition of the Roundup, GBH, or GBF products from other ENTITIES;

   b.     Adverse event reports;

   c.     Modifications;

d.      Decisions to recall or withdraw;

e.      Decisions to expand any recall;

f.      Decisions to modify;

g.      Decisions to cease production.


83.    All DOCUMENTS pertaining to the Roundup, GBH, or GBF products that relate in any way to the testing of the Roundup, GBH, or GBF products.

84.    All DOCUMENTS pertaining to Roundup, GBH, or GBF products that relate in any way to the safety of the Roundup, GBH, or GBF products, including but not limited to all safety STUDIES performed during its development in any country through the present.

85.    All DOCUMENTS related to any and all animal STUDIES ever performed in the United States with Roundup, GBH, or GBF products.

86.    All DOCUMENTS related to any and all animal STUDIES ever performed outside the United States with Roundup, GBH, or GBF products.

87.    All internal DOCUMENTS and COMMUNICATIONS related to the safety of Roundup, GBH, or GBF products.

88.    All internal DOCUMENTS and COMMUNICATIONS related to the testing of Roundup, GBH, or GBF products.

89.    All internal DOCUMENTS that disclose what YOU knew about Roundup, GBH, or GBF products risks and the date YOU first learned of the risks.

90.    All DOCUMENTS that relate or refer to potential risks and/or adverse reactions or side effects of Roundup, GBH, or GBF products.

91.    All DOCUMENTS, records or reports of any kind showing or evincing a connection between Roundup, GBH, or GBF products and any health problems.

92.    All DOCUMENTS purportedly disproving a connection between Roundup, GBH, or GBF products and any health problems.

93.    All DOCUMENTS relating to sponsorship, financial support, contribution of product, consultation agreements, or other items of value provided to any PERSON studying the risks associated with the use of Roundup, GBH, or GBF products.

94.    All STUDIES, articles, manuscripts or other published literature YOU ever funded, ghost wrote, or helped draft in any respect that discussed or describe the risks associated with Roundup, GBH, or GBF products.

95.     All DOCUMENTS (e/g Organizational Charts, employee lists, job description lists, etc.) reflecting the identities of employees in YOUR safety departments from 1990 through present who had specific responsibilities for the follow-up investigation of adverse event reports relating to Roundup, GBH, or GBF products.

96.     All CUSTODIAL DOCUMENTS for the head of the safety department for Roundup, GBH, or GBF products.

97.     All datasets and/or database, including all back-up documentation, containing adverse event reports for Roundup, GBH, or GBF products.

98.     All adverse event reports concerning the use of Roundup, GBH, or GBF products (This request specifically includes all back-up documentation, medical records, analysis, etc., on each adverse reaction report); all summaries (including but not limited to computerized data) analysis or interpretation of any such adverse event report(s); and all DOCUMENTS which discuss or refer to any adverse event report, or any summary, analysis or interpretation thereof.

99.     All DOCUMENTS relating or referring to adverse events or alleged adverse events to Roundup, GBH, or GBF products which occurred in any country other than the United States; all DOCUMENTS relating or referring to, or embodying, summaries, computerized data, analysis, or interpretation of said reports; all DOCUMENTS relating or referring to, or embodying, the submission of said reports to any government regulatory authority, whether EPA, FDA or foreign; and all DOCUMENTS relating or referring to YOUR failure to submit such reports to any government regulatory authority, whether EPA, FDA or foreign.

100.    All STUDIES, reports, or research conducted by YOU, on YOUR behalf, which compare Roundup, GBH, or GBF products to other products.

101.    All DOCUMENTS relating to any animal, human, or chemical STUDY of Roundup, GBH, or GBF products and/or its component parts.

102.    All DOCUMENTS regarding Roundup, GBH, or GBF products sent by YOU to, or received by YOU from, any PERSON at any other medical facility, research laboratory, academic institutions, or testing facility.

103.    All DOCUMENTS relating, referring to or embodying any attempt by YOU to retain, engage, or otherwise provide financial support or item of value to any PERSON engaged in scientific or medical STUDY of Roundup, GBH, or GBF products.

104.    All DOCUMENTS reflecting COMMUNICATIONS with authors and/or investigators of Roundup, GBH, or GBF products scientific STUDIES 1) in which ADVERSE events occurred; and 2) that were designed to investigate the safety of Roundup, GBH, or GBF products.

105.    All DOCUMENTS relating or referring to, or embodying any opinion by a HEALTH CARE PROVIDER, scientist, or a medical or scientific EXPERT, regarding the safety or

efficacy of Roundup, GBH, or GBF products, including but not limited to reports prepared in legal proceedings, opinions expressed at medical conferences, and opinions provided as testimony, reports or statements to the EPA, FDA, or any Foreign Government Regulatory Authority, or any advisory committee thereof.

106.     All DOCUMENTS received by YOU from the EPA regarding Roundup, GBH, or GBF products.

107.     All DOCUMENTS relating or referring to, or embodying, any COMMUNICATION between YOU (or another PERSON or ENTITY acting on YOUR behalf) and any employee or representative of any other federal or state agency pertaining to Roundup, GBHs, or GBFs.

108.     All DOCUMENTS related to any governmental or regulatory agency investigation of any type in which YOU have been involved (including but not limited to investigations by the Justice Department, HHS, the U.S. Senate, the EPA, the FDA, etc.).

109.     All COMMUNICATIONS and DOCUMENTS sent to, from, or by the United States Department of Health and Human Services, or any agent thereof concerning Roundup, GBH, or GBF.

110.     All DOCUMENTS pertaining to Roundup, GBH, or GBF that relate in any way to the regulatory compliance of the Roundup, GBH, or GBF.

111.     All DOCUMENTS concerning any United States Justice Department actions, investigations, or inquiries relating to Roundup, GBHs, or GBFs.

112.     All DOCUMENTS concerning any United States Congressional actions, investigations, or inquiries relating to Roundup, GBHs, or GBFs.

113.     All DOCUMENTS concerning actions or lawsuits brought against YOU by any United States governmental agency pertaining to Roundup, GBHs, or GBFs.

114.     All DOCUMENTS evincing or relating to any fines, citations, or reprimands issues by any governmental or regulatory agency outside the United States which related in any way to Roundup, GBHs, or GBFs.

115.     All DOCUMENTS related in any way to any citations or fines issued to YOU or the facilities in which any of Roundup, GBHs, or GBFs are manufactured and/or packaged.

116.     All DOCUMENTS relating, referring to or embodying materials provided upon purchase of Roundup, GBHs, or GBFs, such as package inserts, instructions or warnings included within the packaging; and produce all DOCUMENTS relating, referring to or embodying drafts of said DOCUMENTS, discussions of said DOCUMENTS, or revisions or alterations thereto.

117.     All DOCUMENTS concerning sales training materials utilized by YOU to train YOUR employees to sell Roundup, GBHs, or GBFs.

118.   All sales tools and aids utilized by YOUR employees to sell Roundup, GBHs, or GBFs

119.   All websites YOU sponsored or maintained regarding Roundup, GBHs, or GBFs.

120.   All DOCUMENTS concerning product launch for Roundup, GBHs, or GBFs.

121.   All DOCUMENTS showing the bonus and compensation structure for Roundup, GBHs, or GBFs sales force.

122.   All agreements with third parties concerning marketing, advertising or promotion of Roundup, GBHs, or GBFs.

123.   All DOCUMENTS concerning annual gross sales amounts or gross revenues for Roundup, GBHs, or GBFs, in dollars and unit numbers.

124.   All DOCUMENTS that reflect sales by domestic region and globally of Roundup, GBHs, or GBFs for each fiscal year the product has been on the market.

125.   All DOCUMENTS that show YOUR annual marketing budgets for each of Roundup, GBHs, or GBFs.

126.   All DOCUMENTS that show YOUR annual marketing budgets by domestic region for each of Roundup, GBHs, or GBFs.

127.   All DOCUMENTS that relate to Roundup, GBHs, or GBFs's market share domestically and globally for each year Roundup, GBHs, or GBFs has been on the market.

128.   All DOCUMENTS which IDENTIFY the names, identities, budgets, and duties of any and all third party consultants YOU have retained for marketing and advertising of Roundup, GBHs, or GBFs.

129.   All DOCUMENTS given to or received from SALES REPRESENTATIVES regarding Roundup, GBHs, or GBFs.

130.   All COMMUNICATIONS between YOU and any SALES REPRESENTATIVES (whether employed by YOU or independent contractor) who were responsible for selling, marketing and/or distributing Roundup, GBHs, or GBFs.

131.   All call note databases reflecting INFORMATION recorded by or communicated among SALES REPRESENTATIVES regarding Roundup, GBHs, or GBFs.

132.   For each current and past SALES REPRESENTATIVE who worked in any way on marketing or selling Roundup, GBHs, or GBFs in the United States, please produce his/her CUSTODIAL DOCUMENTS that relate Roundup, GBHs, or GBFs.

133.   For each past SALES REPRESENTATIVE who has ever worked in any way on marketing or selling Roundup, GBHs, or GBFs in the United States, please produce DOCUMENTS that contain his/her most recent and/or last known contact INFORMATION.

134. All DOCUMENTS (e/g Organizational Charts, employee lists, job description lists, etc.) reflecting the identities of employees in YOUR promotional, sales, or other departments who had specific responsibilities for educating SALES REPRESENTATIVES about Roundup, GBHs, or GBFs.

135. All CUSTODIAL DOCUMENTS for the people responsible for educating SALES REPRESENTATIVES about Roundup, GBHs, or GBFs.

136. All organizational charts that show YOUR executives, managers, and/or supervisors involved in any way in marketing or selling Roundup, GBHs, or GBFs.

137. All organizational charts that show how the employees, ENTITY, department, or division that marketed Roundup, GBHs, or GBFs fits into YOUR corporate structure.

138. All DOCUMENTS related to any third party consulting company, advertising agency, or other third party ENTITY that has ever assisted YOU in marketing Roundup, GBHs, or GBFs in any way. YOUR response should include all DOCUMENTS, correspondence, and COMMUNICATIONS exchanged between YOU and each third party ENTITY.

139. All training manuals (and all DOCUMENTS related thereto) ever developed for YOUR SALES REPRESENTATIVES that relate in any way to Roundup, GBHs, or GBFs.

140. All educational or informational material (and all DOCUMENTS related thereto) ever developed for YOUR SALES REPRESENTATIVES that relate in any way to Roundup, GBHs, or GBFs.

141. All presentations, such as PowerPoint, brochures, DVDs, etc., (and all DOCUMENTS related thereto) of any type given to YOUR SALES REPRESENTATIVES that relate in any way to Roundup, GBHs, or GBFs.

142. All itineraries ever given to YOUR SALES REPRESENTATIVES that relate in any way to training sessions, conference calls, or any other type of meetings related to Roundup, GBHs, or GBFs.

143. All calendars developed for YOUR SALES REPRESENTATIVES that relate in any way to Roundup, GBHs, or GBFs that contain dates for training sessions or seminars, informational meetings, or award ceremonies related to the marketing or selling of Roundup, GBHs, or GBFs.

144. All DOCUMENTS containing YOUR policies and procedures related to how YOUR SALES REPRESENTATIVES market and/or sell Roundup, GBHs, or GBFs.

145. All COMMUNICATIONS distributed to YOUR SALES REPRESENTATIVES that relate in any way to Roundup, GBHs, or GBFs.

146. All DOCUMENTS (including any electronically stored clips, outtakes, pilots, etc.) related in any way to any TV advertising for Roundup, GBHs, or GBFs.

25

147.   All DOCUMENTS related in any way to any newspaper advertising for Roundup, GBHs, or GBFs.

148.   All DOCUMENTS related in any way to any magazine advertising for Roundup, GBHs, or GBFs.

149.   All DOCUMENTS related in any way to any internet advertising for Roundup, GBHs, or GBFs.

150.   All DOCUMENTS related in any way to any radio advertising for Roundup, GBHs, or GBFs.

151.   All DOCUMENTS related in any way to any billboard advertising for Roundup, GBHs, or GBFs.

152.   All DOCUMENTS related in any way to any event YOU sponsored, or in which YOU participated or distributed marketing material related to Roundup, GBHs, or GBFs. (*e.g.*, sporting events, lectures, etc.).

153.   All DOCUMENTS related in any way to any celebrity, actor, TV personality, athlete, or other public figure to whom YOU hired or otherwise paid to promote Roundup, GBHs, or GBFs in any way.

154.   All DOCUMENTS relating to any press releases or public relations material for Roundup, GBHs, or GBFs that relate or refer to the risks associated with the use of Roundup, GBHs, or GBFs and all DOCUMENTS relating to any drafts, discussions, EPA approvals, or revisions of said INFORMATION.

155.   All DOCUMENTS relating or referring to the issue of whether a warning about the risks associated with the use of Roundup, GBHs, or GBFs should be mentioned in any marketing materials or advertisements associated with Roundup, GBHs, or GBFs.

156.   For each current and past employee (other than SALES REPRESENTATIVES) who has ever worked in any way on marketing Roundup, GBHs, or GBFs in the United States, please produce his/her CUSTODIAL DOCUMENTS that relate to Roundup, GBHs, or GBFs.

157.   For each current and past employee (other than SALES REPRESENTATIVES) who has ever worked in any way on marketing Roundup, GBHs, or GBFs outside the United States, please produce his/her CUSTODIAL DOCUMENTS that relate to Roundup, GBHs, or GBFs.

158.   All DOCUMENTS related to any assessment made by YOUR risk management department regarding the marketing or advertising of Roundup, GBHs, or GBFs.

159.   All items used to market or advertise Roundup, GBHs, or GBFs that are not included in the definition of DOCUMENTS or CUSTODIAL DOCUMENTS, including but not limited to, pens, magnets, stationery, t-shirts, golf tees, etc.

26

160.    All DOCUMENTS that celebrate, commend, mention, or otherwise relate to Roundup, GBHs, or GBFs reaching particular sales levels.

161.    All DOCUMENTS related to any seminars, lectures, conventions, or other similar events in the United States sponsored by YOU, or in which YOU participated, in which Roundup, GBHs, or GBFs was marketed or discussed.

162.    All DOCUMENTS relating, referring to or embodying any minutes, agendas, brochures, memoranda or correspondence relating to meetings of any trade group or of any other group or association regarding the risk and benefits of Roundup, GBHs, or GBFs which were attended, supported or sponsored by YOU.

163.    All COMMUNICATIONS and DOCUMENTS exchanged between YOU and any scientist who was paid, or otherwise retained, by YOU to speak about Roundup, GBHs, or GBFs.

164.    All DOCUMENTS regarding Roundup, GBHs, or GBFs sent to or received by any third-party company paid by YOU to promote and/or assist in developing promotional materials and/or promoting and/or developing strategies for promoting Roundup, GBHs, or GBFs.

165.    All DOCUMENTS related to any focus groups performed on the marketing of Roundup, GBHs, or GBFs.

166.    All DOCUMENTS, presentations, recordings, speeches, or other data or INFORMATION provided to any focus groups related to Roundup, GBHs, or GBFs.

167.    All feedback forms from any focus groups performed on the marketing of Roundup, GBHs, or GBFs.

168.    All analyses from any focus groups performed on the marketing of Roundup, GBHs, or GBFs.

169.    All DOCUMENTS related to the manner in which feedback from any focus groups performed on the marketing of Roundup, GBHs, or GBFs has been put into action.

170.    All videos of discussions by participants in focus groups performed on the marketing of Roundup, GBHs, or GBFs.

171.    All raw data from any focus groups performed on the marketing of Roundup, GBHs, or GBFs.

172.    All documents relating or referring to profit/loss statements from 2018 to the present date.

173.    All documents relating or referring to federal and state tax returns for 2018 to the present date.

Respectfully submitted,

**KLINE & SPECTER, P.C.**


By:      */s/ Thomas R. Kline*
         **KLINE & SPECTER, P.C.**
         THOMAS R. KLINE, ESQUIRE
         TOBI L. MILLROOD, ESQUIRE
         CHRISTOPHER A. GOMEZ, ESQUIRE
         1525 Locust Street
         Philadelphia, PA 19102

By:      */s/ Rosemary Pinto*
         **FELDMAN & PINTO, P.C.**
         ROSEMARY PINTO, ESQUIRE
         30 South 15th Street, 15th floor
         Philadelphia, PA 19102


         *Attorneys for Plaintiffs*

Dated: 10/18/2022

**KLINE & SPECTER, P.C.**
By:   THOMAS R. KLINE, ESQUIRE
        TOBI L. MILLROOD, ESQUIRE
        CHRISTOPHER A. GOMEZ, ESQUIRE
Attorney I.D. Nos. 28895/77764/82899
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000

**FELDMAN & PINTO**
By:   ROSEMARY PINTO, ESQUIRE
Attorney I.D. No, 53114
30 South 15th Street, 15th Floor
Philadelphia, PA 19102
(215) 546-2604

ATTORNEYS FOR PLAINTIFFS

| | |
|---|---|
| PLAINTIFFS, | § COURT OF COMMON PLEAS FOR |
| | § PHILADELPHIA COUNTY, CIVIL |
| | § DIVISION |
| | § |
| v. | § MAY TERM 2022 |
| | § NO: 00550 |
| NOURYON SURFACE CHEMISTRY | § |
| LLC, a domestic corporation, | § JURY TRIAL DEMANDED |
| NOURYON CHEMICALS LLC, a | § |
| domestic corporation, NOURYON USA | § |
| LLC, a domestic corporation, and | § |
| MONSANTO COMPANY, a foreign | § |
| corporation | § |
| | § |
| *Defendants,* | § |
| | § |
| | § |
| | § |
| | § |
| | § |
| | § |
| | § |

## PLAINTIFFS' FIRST SET OF
## INTERROGATORIES TO DEFENDANT MONSANTO COMPANY

TO:   The Defendant, Monsanto Company, by and through its attorneys of record, Joseph H.
        Blum, Shook Hardy & Bacon L.L.P., 2001 Market Street, Suite 3000, Philadelphia,
        Pennsylvania 19103.

Plaintiffs, by and through counsel, serve this First Set of Requests for Production on the Defendants, the Nouryon Defendants.

# I.    DEFINITIONS

As used herein, the following definitions shall apply:

1.    **POSSESSION, CUSTODY and CONTROL**

DOCUMENTS that are in the POSSESSION, CUSTODY or CONTROL of YOU or in the POSSESSION, CUSTODY or CONTROL of any attorney for YOU. This includes DOCUMENTS in the POSSESSION, CUSTODY or CONTROL of YOUR attorneys, agents, employees, investigators, consultants, and EXPERTS, as well as any firm, subsidiary, parent, affiliated, or related ENTITY, and any other ENTITY or business in which YOU own a controlling interest or over which YOU exercise CONTROL. YOU are required to use reasonable diligence to locate the DOCUMENTS, including those that are not in YOUR immediate POSSESSION. Without limiting the term "CONTROL," a DOCUMENT is deemed to be within YOUR CONTROL if YOU have ownership, POSSESSION or CUSTODY of the DOCUMENT, or the right to secure the DOCUMENT or copy thereof from any PERSON or public or private ENTITY having physical POSSESSION thereof.

2.    **YOU** or **ANYONE ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

3.    **Electronically Stored Information (ESI)**

Responsive ELECTRONICALLY STORED INFORMATION (ESI) shall be produced in its native form; that is, in the form in which the INFORMATION was customarily created, used and stored by the native application employed by YOU in the ordinary course of business.

a.    If it is infeasible or unduly burdensome to produce an item of responsive ESI in its native form, YOU may produce in a near-native form; that is, in a form in which the item can be imported into the native application without a material loss of content, structure or functionality as compared to the native form.  Static image production formats serve as near-native alternatives only for DOCUMENTS that are natively static images (i.e., photographs and scans).

b.    The table below supplies examples of native or near-native forms in which specific types of ESI should be produced:

| Source ESI | Native or Near Native Form or Forms Sought |
|---|---|
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel Spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint Presentations | .PPT, .PPTX |
| Microsoft Access Databases | .MDB, .ACCDB |
| WordPerfect documents | .WPD |
| Adobe Acrobat Documents | .PDF |
| Photographs | .JPG, .PDF |
| E-mail | Messages should be produced in a form or forms that readily support import into |

3

| | standard e-mail client programs; that is, the form of production should adhere to the conventions set out in RFC 5322 (the internet e-mail standard).  For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and produced.  For Lotus Notes mail, furnish .NSF files or convert to .PST.  If YOUR workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced in a delimited text file. |
|---|---|

c.     YOU need only produce reports from databases that can be generated in the ordinary course of business (i.e., without specialized programming skills), and these shall be produced in a delimited electronic format preserving field and record structures and names.  The parties will meet and confer regarding programmatic database productions as necessary.

d.     Individual DOCUMENTS requiring redaction shall (as feasible) be redacted natively or produced in .PDF format and redacted using the Adobe Acrobat redaction feature.  Redactions shall not be accomplished in a manner that serves to downgrade the ability to electronically search the unredacted portions of the item.

e.     YOU need not produce identical DOCUMENTS in more than one form and shall globally de-duplicate identical items across custodians using each DOCUMENT's unique MD5 hash value.  The content, metadata and utility of a DOCUMENT must all be considered in determining whether DOCUMENTS are identical, and items reflecting different INFORMATION shall not be deemed identical.

f.     Production should be made using appropriate electronic media of YOUR choosing provided that the production media chosen not impose an undue burden or expense upon a recipient. YOU must, contemporaneously with production, supply decryption credentials and passwords to the receiving party for all items produced in an encrypted or password-protected form.

g.     Each DOCUMENT produced shall be uniquely identified by naming the item to correspond to a Bates identifier according to the following protocol:

i.     The first fourteen (14) characters of the filename will reflect a unique alphanumeric designation IDENTIFYING the party making production and the case;

ii.     The next ten (10) characters, beginning with an underscore, will be a unique, consecutive numeric value assigned to the item by the producing party. This value shall be padded with leading zeroes as needed to preserve its length;

iii.    The final five (5) characters are reserved to a sequence beginning with a dash (-) followed by a four-digit number reflecting pagination of the item when printed to paper or converted to an image format for use in proceedings or when attached as exhibits to pleadings.

iv.     By way of example, a Microsoft Word document produced by Acme Corporation in its native format might be named: ACME_VMESHSDCA_000000123.docx. Were the document printed out for use in deposition, page six of the printed item must be embossed with the unique identifier ACME_VMESHSDCA_000000123-0006.

h.     DOCUMENTS designated Confidential may, at YOUR option:

i.     Be separately produced on electronic production media prominently labeled to IDENTIFY the contents as confidential; or, alternatively,

ii.     Each such designated DOCUMENT shall have appended to the file's name (immediately following its Bates identifier) the following protective legend:

~CONFIDENTIAL-

i.     YOU shall furnish a delimited load file supplying the metadata field values listed below for each DOCUMENT produced (to the extent the values exist and as applicable):

| **Field** |
| --- |
| Begin Bates |
| End Bates |
| Begin Attach |
| End Attach |
| Custodian/Source |
| Source File Name |
| Source File Path |
| From/Author |
| To |
| CC |
| BCC |
| Date Sent |
| Time Sent |
| Subject/Title |
| Last Modified Date |

| |
|---|
| Last Modified Time |
| DOCUMENT Type |
| Redacted Flag (yes/no) |
| Hidden Content/Embedded Objects Flag (yes/no) |
| Confidential flag (yes/no) |
| MD5 Hash value |
| Hash De-Duplicated Instances (by full path) |

j.   Each production should include a cross-reference load file that correlates the various files, images, metadata field values and searchable text produced.

k.   Respond to each request for production by listing the unique identifier (Bates-style) numbers/ranges of responsive DOCUMENTS produced.

l.   If any DOCUMENT to be produced has been lost, discarded, transferred to another PERSON or ENTITY, destroyed, or otherwise disposed of, please set forth in writing: (1) the date, name and subject matter of the DOCUMENT; (2) the name, employment and title of each PERSON who prepared, received, reviewed, or had CUSTODY, POSSESSION, or CONTROL of the DOCUMENTS; (3) all PERSONS with knowledge of the contents or any portion of the contents of the DOCUMENTS; (4) the previous location of the DOCUMENTS; (5) the date of disposal or transfer of the DOCUMENTS; (6) the reason for disposal or transfer of the DOCUMENTS; and, if applicable, (7) the manner of disposal of the DOCUMENTS; or, if applicable, (8) the names and addresses of the transferees of the DOCUMENTS.

m.   It is required that all DOCUMENTS and/or other data compilations which might impact on the subject matter of this litigation be preserved and that any ongoing process of DOCUMENTS destruction involving such DOCUMENTS cease. In those instances where DOCUMENTS destruction has already taken place, it is requested that the DOCUMENTS that would have been relevant to the following discovery request be identified as well as the date of destruction and the individual authorizing, ordering and/or carrying out the destruction.

n.   If YOU believe that a complete response to any request would require the disclosure of confidential health INFORMATION, the disclosure of which YOU believe is prohibited by the Health Insurance Portability and Accountability Act (HIPAA) or other law, Plaintiff(s) will accept responses that are redacted to comply with such law but that are otherwise complete.  Plaintiff(s) expressly reserve the right to challenge any such redaction.

o.   YOUR response to each Request for Production should include the unique identifier numbers/ranges that IDENTIFY the DOCUMENTS responsive to that particular request.  For instance, if, in response to Request for Production No. 3, YOU are producing 50 DOCUMENTS, YOUR response should IDENTIFY the unique identifier numbers for those 50 DOCUMENTS.

4.      **Hard Copy or Paper Production**

      a.      All duplicates or copies of DOCUMENTS are to be provided to the extent they have handwriting, additions, or deletions of any kind different from the original DOCUMENTS being produced.

5. **"DEFENDANT" or "DEFENDANTS"** shall mean, unless otherwise specified in a particular request, DEFENDANT named in this lawsuit and/or any agent or representative of DEFENDANT named in this lawsuit during all times relevant to this action.

6. **"IDENTIFY", "IDENTITY,"**, or **"IDENTIFICATION"** means:

      a.      With respect to a <u>natural person,</u> all that YOU know or that YOU can determine about his or her full name or names, title, present or last known employer or job description, and present or last known home and business addresses.

      b.      With respect to an <u>ENTITY which is not a natural person,</u> all that YOU know or that YOU can determine about its full name or names, dates and places of formation, principal places of business, and business addresses.

      c.      With respect to <u>DOCUMENTS,</u> all that YOU know or that YOU can determine about title, type of DOCUMENTS, date, author, addressee, recipients, any IDENTIFYING numbers on such DOCUMENTS, substance of its contents, subject matter, present location, present custodian, and each PERSON who has CUSTODY, POSSESSION, or CONTROL over each copy of each DOCUMENTS.

      d.      With respect to a <u>physical object,</u> all that YOU know or that YOU can determine about its common name, IDENTIFYING number(s), manufacturer and date of manufacture of the object.

      e.      With respect to an event, all that YOU know or can determine about the date, time, place, participants, actions taken, and results obtained.

7.      **"DESCRIBE"** includes, when used in reference to any DOCUMENTS(s) or tangible evidence, stating the title or name, date, time, author of DOCUMENTS, the common name, IDENTIFYING number, manufacturer and date of manufacture of any object and the name and address of the PERSON(s) having POSSESSION of such at the present time.

8.      **"PERSON"** or **"PERSONS"** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

9.      **"ENTITY"** or **"ENTITIES"** shall mean any corporation, corporate form (such as a limited partnership, limited liability partnership, or limited liability company), parent company, affiliate, subsidiary, partner, member, venture, partnership, or any other structure (or a chain of successive ENTITIES) that conducts business, has conducted business, or anticipates conducting business.

10.     **"DOCUMENTS"** as used here encompass individual DOCUMENTS and records (including associated metadata) whether on paper or film, as discrete "files" stored electronically, optically, or magnetically or as a record within a database, archive or container file. The term

7

should be read broadly to include e-mail, messaging, word processed documents, digital presentations and spreadsheets.

11.     **"COMMUNICATION(S)"** includes, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer, or exchange of INFORMATION of any nature whatsoever, by or to whomever, whether oral, written, or face-to-face, by telephone, mail, personal delivery, electronic mail, computer, or otherwise, specifically including, without limitation, correspondence, conversations, dialogue, discussions, interviews, consultations, agreements, and other understandings.

12.     **"NOTIFICATION(S)"** refers any COMMUNICATION in any form (written, mail, electronic, etc.) from the DEFENDANT to any other PERSON or ENTITY containing recommendations or advice concerning the usage, safety, instructions, indications, contraindication, or other INFORMATION related to ROUNDUP, GLYPHOSATE-BASED HERBICIDE(S), GBH, GLYPHOSATE-BASED FORUMULATION(S), or GBF.

13.     **"INFORMATION"** should be construed in the broadest possible sense. It is intended reference both facts and applicable principles. This term should not be construed to be limited by any method of acquisition or compilation and should, therefore, be construed to include oral INFORMATION as well as documents.

14.     **"DAMAGES"** shall mean all claims for relief alleged by Plaintiff(s) in the latest Petition.

15.     **"FDA"** refers to the United States Food & Drug Administration, any committee, subcommittee or advisory committee thereto, and any PERSON, employee or agent of the FDA.

16.     **"EPA"** refers to the United States Environmental Protection Agency, any committee, subcommittee or advisory committee thereto, and any PERSON, employee or agent of the EPA.

17.     **"GLYPHOSATE-BASED HERBICIDE(S)", "GBH", "GLYPHOSATE-BASED FORUMULATION(S)",** or **"GBF"** refers to the chemical glyphosate and all formulations of Monsanto's Roundup products that contain glyphosate, surfactants, adjuvants, and inert ingredients, including, but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Custom Herbicide, Roundup D-Pak herbicide, Roundup Dry Concentrate, Roundup Export Herbicide, Roundup Fence & Hard Edger 1, Roundup Garden Foam Weed & Grass Killer, Roundup Grass and Weed Killer, Roundup Herbicide, Roundup Original 2k herbicide, Roundup Original II Herbicide, Roundup Pro Concentrate, Roundup Prodry Herbicide, Roundup Promax, Roundup Quik Stik Grass and Weed Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate Weed & Grass Killer, Roundup Rainfast Super Concentrate Weed & Grass Killer, Roundup Ready-to- Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup Ready-to-Use Weed & Grass Killer, Roundup Ready-to-Use Weed and Grass Killer 2, Roundup Ultra Dry, Roundup Ultra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed & Grass Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass killer Ready-to-Use Plus, Roundup Weed & Grass Killer Super Concentrate, Roundup Weed & Grass Killer1 Ready-to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other glyphosate based formulations developed, designed, distributed, licensed, manufactured, marketed or sold by Monsanto Company.

18.     **"ROUNDUP"** refers to all formulations of Monsanto's Roundup products that contain glyphosate, surfactants, adjuvants, and inert ingredients, including, but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Custom Herbicide, Roundup D-Pak herbicide, Roundup Dry Concentrate, Roundup Export Herbicide, Roundup Fence & Hard Edger 1, Roundup Garden Foam Weed & Grass Killer, Roundup Grass and Weed Killer, Roundup Herbicide, Roundup Original 2k herbicide, Roundup Original II Herbicide, Roundup Pro Concentrate, Roundup Prodry Herbicide, Roundup Promax, Roundup Quik Stik Grass and Weed Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate Weed & Grass Killer, Roundup Rainfast Super Concentrate Weed & Grass Killer, Roundup Ready-to- Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup Ready-to-Use Weed & Grass Killer, Roundup Ready-to-Use Weed and Grass Killer, Roundup Ultra Dry, Roundup Ultra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed & Grass Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass killer Ready-to-Use Plus, Roundup Weed & Grass Killer Super Concentrate, Roundup Weed & Grass Killer1 Ready-to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other glyphosate-based formulations developed, designed, distributed, licensed, manufactured, marketed or sold by Monsanto Company.

19.     **"POLYOXYETHOXYLENEALKYLAMINE"** or **"POEA"** shall be defined the same way Monsanto defines and explains **POLYOXYETHOXYLENEALKYLAMINE** or **POEA** for consumers on Monsanto's website, available at: https://monsanto.com/innovations/research-development/q/monsantos-product-uses-poea-how-can-this-be-safe/.

20.     **"FOREIGN GOVERNMENT AGENCY"** means any agency, committee, subcommittee or advisory committee of any government other than the United States of America, which bears responsibility or exercises authority over the manufacture, distribution, LABELING, sale and/or marketing of medical devices or human health in any jurisdiction, and any employee or agent of that FOREIGN GOVERNMENT AGENCY.

21.     **"STUDY"** or **"STUDIES"** shall mean and refer to any kind of research, inquiry, analysis or test as the terms are understood and defined, shall be construed broadly, and include, without limitation, any investigation or other activity in which data and information are gathered for analysis, reporting or understanding, regardless of the original intention of the study. The term shall include any study, including, without limitation, studies which are completed, ongoing or still in progress, and shall include all responsive studies, whether the activity took place in the United States or not.

22.     **"MEDICAL LITERATURE"** shall mean the commonsense definition and shall include all abstracts, summaries, articles, literature, letters to the author or other written commentary, whether peer reviewed or not.

23.     **"SIDE EFFECT"** refers to any ADVERSE effect that is associated with the use of ROUNDUP, GLYPHOSATE-BASED HERBICIDE(S), GBH, GLYPHOSATE-BASED FORUMULATION(S), or GBF. "ADVERSE" means unfavorable.

24.     **"LABELING"** includes all final and draft written, printed, or graphic matter accompanying ROUNDUP, GLYPHOSATE-BASED HERBICIDE(S), GBH, GLYPHOSATE-BASED FORUMULATION(S), or GBF at any time.

**25.**   **"CUSTODIAL DOCUMENTS"** are all "DOCUMENTS" maintained by YOUR current employees and past employees (while they were employed). For instance, "CUSTODIAL DOCUMENTS" include each "DOCUMENT" on an individual employee's computer, voice mail, office desk, office filing cabinet or storage system, file storage maintained by that PERSON outside of his/her office, and any other location in which that employee keeps or kept DOCUMENTS.

**26.**   **"EXPERT(s)"** or **"EXPERT WITNESS(ES)"** refers to any PERSON who may be called upon as an EXPERT WITNESS at trial and any EXPERT used for consultation who is not expected to be called as a witness at trial, but whose opinions and/or mental impressions have been reviewed or relied upon by a testifying EXPERT.

**27.**   **"AS-IS"** shall mean without modification of the noted product from the time the product came into Your possession to the time said product was purchased by a consumer.

28.   **"Plaintiff"** means the plaintiff named in the caption above.

## II. <u>INTERROGATORIES</u>

1.    IDENTIFY all persons who will or may provide testimony in this lawsuit. For each person identified, STATE his or her name, address, phone number, occupation, place of employment, relationship to YOU, the general nature of the subject matter upon which each witness will testify, and, if such person is an expert, their qualifications.

2.    Identify the dates in which you sold Roundup, GBH, or GBF products in your stores.

3.    If you contend that anything other than Roundup, GBH, or GBF products caused or contributed to the Plaintiff's injuries, identify the other causes or contributing factors and the factual basis for each contention.

4.    Do YOU contend that the Plaintiff's injuries, as set forth in the pleadings were caused in whole or in part by the actions, omissions, or negligence of a person, persons, entity, or entities other than YOURSELF, whether named as a Defendant in this action or not?

5.    If YOUR answer to Special Interrogatory No. 4 is in the affirmative, please IDENTIFY all persons or entities that YOU allege caused or contributed to the Plaintiff's injuries in whole or in part.

6.    Identify and describe any contracts or agreements you had with Monsanto or Bayer which relate in any way to the purchase, sale, or marketing of Roundup, GBH, or GBF products.

7.    IDENTIFY any safety trial, study, publication, scientific literature, or medical literature related to Roundup, GBF, and GBH products that YOU have sponsored, conducted, funded, participated in, or otherwise contributed to.

8.    IDENTIFY all GBH or GBF products manufactured, marketed or sold by YOU in the United States from 1974 to present. For each, give any names that it was sold or marketed under, the relevant years it was sold, and the proportion of both glyphosate and surfactants contained in the overall volume.

9.    STATE the annual dollar amount that YOU have spent on advertising, promoting, and/or marketing Roundup, GBH, or GBF products from 1974 to the present in the United States.

10.   STATE the annual dollar amount that YOU have spent on advertising, promoting, and/or marketing Roundup, GBH, or GBF products from 1974 to the present in Pennsylvania.

11.   STATE the annual dollar amount of gross sales of Roundup, GBH, or GBF products from 1974 to the present in the United States.

12.   STATE the annual dollar amount of net profits from the sale of Roundup, GBH, or GBF products from 1974 to the present outside the United States.

13.   STATE the annual dollar amount of gross sales of Roundup, GBH, or GBF products from 1974 to the present in Pennsylvania.

14.    STATE the annual dollar amount of net profits from the sale of Roundup, GBH, or GBF products from 1974 to the present in Pennsylvania.

15.    STATE the annual gross income from licensing Roundup, GBH, or GBF products to other companies from 1994 to the present in the United States.

16.    STATE the net worth of Monsanto at the time it was acquired by Bayer in 2018.

17.    STATE the current net worth of Monsanto, if any.

18.    STATE the current net worth of Bayer Crop Science.

<div style="margin-left: 40%;">

Respectfully submitted,

**KLINE & SPECTER, P.C.**


By:     _/s/ Thomas R. Kline_
        **KLINE & SPECTER, P.C.**
        THOMAS R. KLINE, ESQUIRE
        TOBI L. MILLROOD, ESQUIRE
        CHRISTOPHER A. GOMEZ, ESQUIRE
        1525 Locust Street
        Philadelphia, PA 19102

By:     _/s/ Rosemary Pinto_
        **FELDMAN & PINTO, P.C.**
        ROSEMARY PINTO, ESQUIRE
        30 South 15th Street, 15th floor
        Philadelphia, PA 19102


        _Attorneys for Plaintiffs_

</div>

Dated: 10/18/2022