**PODHURST ORSECK, P.A.**
Steven C. Marks
(smarks@podhurst.com)
Kristina M. Infante
(kinfante@podhurst.com)
Pablo Rojas
(projas@podhurst.com)
One Southeast 3rd Avenue, Suite 2300
Miami, FL 33131
Tel: (305) 358-2800
Fax: (305) 358-2382
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE : ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Nancy Salas v. Monsanto Company, et al.*<br>Member Case No. 3:21-cv-06173-VC | MDL No. 2741<br><br>Case No. 3:16-md-2741-VC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE DR. JOSHUA SCHAEFFER'S TESTIMONY**<br><br>Hearing:<br>Date:  July 27, 2023<br>Time: 10:00 A.M.<br>Place: San Francisco Courthouse<br>          Courtroom 4 – 17th Floor |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 27, 2023 at 10:00 A.M., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Plaintiff Nancy Salas will present her Motion to Exclude Dr. Joshua Schaeffer's Testimony. Plaintiff seeks an order excluding opinions of this witness under Federal Rule of Evidence 702.

Dated: June 15, 2023                                                                 Respectfully Submitted,

                                                               **PODHURST ORSECK, P.A.**

                                                               */s/ Steven C. Marks*
                                                               Steven C. Marks
                                                               Attorney for Plaintiff Nancy Salas

## **PLAINTIFF'S MOTION TO EXCLUDE DR. JOSHUA SCHAEFFER'S TESTIMONY**

Plaintiff, Nancy Salas, respectfully moves to preclude the testimony of Defendant Monsanto Company's expert, Dr. Joshua Schaeffer, and in support thereof states as follows:

### **INTRODUCTION**

This is a personal injury case in which the Plaintiff, Ms. Salas, alleges that she was diagnosed with non-Hodgkin lymphoma (NHL) and that her use of Roundup and herbicides manufactured by Monsanto Company was a substantial contributing factor. *See* Complaint ¶¶ 140, 150. The Defendant, Monsanto Company ("Monsanto"), has retained Dr. Schaeffer as an expert to "provide an expert opinion on the exposure and dose and how that compares to the literature and regulatory thresholds." *See* Dr. Schaeffer's Deposition Transcript (attached as Exhibit 1 at 48:21-23) (referred to throughout as Schaeffer Dep. Tr.). He admits he is not "here to provide an opinion, expert opinion on [whether Roundup caused Ms. Salas's cancer]." *Id.* at 48:15-20. Dr. Schaeffer's opinions should be excluded for several independent reasons.

First, Dr. Schaeffer is unqualified to provide any medical opinions or any opinion about causation or cancer epidemiology because he has no medical training or licensing; he is not an oncologist or epidemiologist and he has no direct experience and limited academic experience in glyphosate, the active ingredient in Roundup. *See* Schaeffer Dep. Tr. at 16:10-14, 32:2-21. Put differently, Dr. Schaeffer intends to testify about "exposure and dose," however, the only question that is relevant in this litigation is the risk of being diagnosed with NHL, and Dr. Schaeffer is not qualified to opine about such a risk.

Second, Dr. Schaeffer's methodology is fatally flawed. The core of Dr. Schaeffer's methodology is a calculation of Ms. Salas' glyphosate absorption. But critically, this type of calculation has never been used in any human study concerning the risk of NHL. Compounding the problem, Dr. Schaeffer compares his calculated dose to regulatory daily allowance limits for

glyphosate that either (a) were developed without reference to cancer risk, or (b) were developed without reference to NHL, Ms. Salas' cancer. In other words, Dr. Schaeffer intends to provide expert testimony not in an NHL case, but his testimony based on a method that has *never* been employed in assessing the risk of NHL in human beings.

Finally, Dr. Schaeffer's opinions would not help the trier of fact as his opinions are wholly irrelevant to any triable issue to be decided by the jury. Dr. Schaeffer intends to provide only a dose calculation, but he concededly will not opine about the risk of the cancer that Ms. Salas contracted and which is the subject of this litigation. By offering such an extraneous "expert" opinion, Dr. Schaeffer's testimony can, at best, only mislead the jury or confusingly duplicate the opinions of Monsanto's other experts. Thus, Plaintiff respectfully requests that the Court exclude Dr. Schaeffer's opinions in their entirety.

**BACKGROUND**

**I.    Monsanto's Disclosures**

Monsanto Company disclosed four retained experts and two treating physicians. *See* Monsanto Company's Rule 26 Designation and Disclosure of Specific Causation Expert Testimony (attached as Exhibit 2 at 3-5). As part of that disclosure, Dr. Schaeffer was deposed to provide "an expert report; materials considered list; list of prior testimony and CV." *Id.* at 4.

**II.   Dr. Schaeffer's Qualifications**

Dr. Schaeffer has a Ph.D. in Environmental Health, specializing in Industrial Hygiene and an M.S. in Environmental Health, specializing in Toxicology. *See* Expert Report (attached as Exhibit 3 at Exhibit A). He is the principal industrial hygienist at Schaeffer Occupational Health Associates. *Id.* at 20:22-23. Schaeffer Occupational Health Associates currently does litigation work only. *See* Schaeffer Dep. Tr. at 24:10-11. He is also faculty at Colorado State University and affiliate faculty at Colorado School of Public Health. *Id.* at 15:3-5. He does most of his

teaching at Colorado State University where he teaches intro environmental public health to undergraduates. *Id.* at 15:23-24. Dr. Schaeffer is a certified Industrial Hygienist for the American Board of Industrial Hygiene. *Id.* at 14:1-5. Importantly, Dr. Schaeffer has limited professional experience working with glyphosate and has never testified at trial. *Id.* at 32:11-21; *see also* Dr. Schaeffer's Prior Sworn Expert Testimony (attached as Exhibit 4 at 1). And as noted above, Dr. Schaeffer is admittedly not an epidemiologist, oncologist, or medical doctor of any kind.

### III. Dr. Schaeffer's Methodology

Dr. Schaeffer's methodology is—in essence—a quantitative absorption estimate. Namely, Dr. Schaeffer purports to have estimated the amount of glyphosate absorbed on an average daily basis by Ms. Salas' body. This estimate is focused only on *dermal* absorption and is based in part on variables such as Ms. Salas' reported use of glyphosate, an estimate of her surface area of skin exposed, an estimate of the concentration of glyphosate, and so forth. *See* Exhibit 3 at 25-27. As Dr. Schaeffer also explained, this type of absorption assessment is used in the field of industrial hygiene to estimate the dermal absorption of various chemicals, however, this type of absorption method is <u>not</u> used to assess the risk of NHL from Roundup. For instance, Dr. Schaeffer contended that "the Andreotti study is . . . pretty much the gold standard when you're thinking about exposures and outcomes." *See* Schaeffer Dep. Tr. at 68:8-10. But, Dr. Schaeffer**'s** methodology is completely different from the methodology used to assess glyphosate exposure in the Andreotti study. *See* Schaeffer Dep. Tr. at 57:2-4. More broadly, looking beyond the Andreotti study, the type of methodology employed by Dr. Schaeffer has <u>*never*</u> been employed in any of the epidemiological literature to date analyzing the potential link between glyphosate and cancer. *See* Exhibit 3 at 37.

In addition to estimating Ms. Salas' daily absorption of glyphosate, Dr. Schaeffer also intends to offer the opinion that this estimated daily absorption is lower than the daily intake

limits for glyphosate set by the EPA and the state of California. However, as will be detailed further below, these limits are unrelated to NHL, the type of cancer Ms. Salas has and the injury at issue in this case. The EPA's daily intake limit is expressly as <u>non-cancer</u> assessment and California's daily intake limit was based solely on a dietary rodent study from 17 years ago which addressed hemangiosarcoma, which is a different cancer from Ms. Salas' NHL.

### IV. Dr. Schaeffer's Opinions in the Context of this Case

Because this is a personal injury case concerning an alleged injury caused by Roundup, whose active ingredient is glyphosate, the jury in this case will be tasked with assessing issues of general causation and specific causation, i.e., whether Roundup and glyphosate cause NHL as a general matter, and whether they caused Ms. Salas' NHL specifically.

By his own admission, Dr. Schaeffer does not intend to testify about these causation issues. Indeed, he is <u>not qualified</u> to render any such opinions. Instead, Dr. Schaeffer intends to testify about a tangential issue—Ms. Salas' purported daily absorption of glyphosate—based on a flawed methodology that is wholly without support in the available epidemiological literature. Dr. Schaeffer disclaims any opinion about medical causation, but medical causation is the only conceivable, triable issue that the jury will be asked to assess in this case. Therefore, as will be argued below, Dr. Schaeffer's opinion will only serve to confuse or mislead the jury.

### LEGAL STANDARD

*Daubert* "*…*affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony.*" See* Advisory Committee Notes to Fed. R. Evid. 702. Under the *Daubert* standard, a witness may testify as an expert if: (1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. *Id.* Several factors to consider in determining

whether the *Daubert* requirements are fulfilled include: (1) whether the expert's theory can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate; and (4) whether the technique has widespread acceptance within the relevant scientific community. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 580 (1993). The defendant in this case has the burden to show, by a preponderance of the evidence, that their expert's testimony meets the *Daubert* requirements. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).

## ARGUMENT

Dr. Schaeffer's testimony should be excluded for several reasons. First, Dr. Schaeffer is unqualified to offer his opinions intended for the jury. Namely, he has no credentials whatsoever in oncology or epidemiology. *See* Schaeffer Dep. Tr. at 28:23-24, 29:23. Although he has some toxicology training, he is not a regularly practicing toxicologist and his methodology has never been published in the literature. To the extent that Dr. Schaeffer intends to testify about subject matters *related* to medical causation and matters related to cancer risks with glyphosate, he has no pertinent training or qualifications. *See* Schaeffer Dep. Tr. at 42:22-43:5. Equally troublingly, other than his expert witness work on behalf of Monsanto, Dr. Schaeffer has scarce prior professional experience with glyphosate, the active ingredient in Roundup.

Second, Dr. Schaeffer's methodology is fatally flawed. For one thing, Dr. Schaeffer's absorption calculation methodology has *never* been used in a human epidemiological study of the risks of NHL associated with glyphosate. Whatever the merits of this absorption calculation as a general matter for other purposes, Dr. Schaeffer's application of it to assess the risk of NHL in humans is wholly novel and untested.

To make matters worse, Dr. Schaeffer's comparison of his daily absorption estimate with the EPA and California daily intake limits is *per se* inapposite and misleading, because those EPA and California limits were developed *without reference to* the risk of NHL. The referenced EPA allowable limit for glyphosate was expressly a non-cancer assessment. *See* Glyphosate PDF from EPA website (attached as Exhibit 5 at 1). The referenced California NSRL allowable limit was based on a *rodent* study of the risks of a *different* cancer from *dietary* (as opposed to dermal) exposure to glyphosate. *See* Glyphosate NSRL Final Statement of Reasons (attached as Exhibit 6 at 10).

Finally, Dr. Schaeffer's opinions would not help the trier of fact as his opinions are wholly irrelevant to any triable claim or defense and can only mislead the jury or duplicate the opinions of Monsanto's other experts. Thus, Plaintiff respectfully requests that the Court exclude Dr. Schaeffer's opinions in their entirety.

**I.  Dr. Schaeffer's testimony should be excluded because he lacks the relevant qualifications to provide the opinions formed in this case.**

   **A.  Dr. Schaeffer has no medical training or licensing and is not an oncologist or epidemiologist.**

It is undisputed in this case that Dr. Schaeffer is not an epidemiologist and that he has no medical training, physician certificate, or licensing. *See* Schaeffer Dep. Tr. at 16:10-14, 32:2-21. Although Dr. Schaeffer has extensive epidemiological literature in his report, he has only taken "one official course in epidemiology" and only has "an understanding of epidemiology" *See* Schaeffer Dep. Tr. at 31:18-19, 29:6-7. He is, put simply, not an expert in epidemiology or oncology.

Dr. Schaeffer's admitted lack of medical, epidemiological, or oncological expertise is fatal to the admissibility of his opinions. Given Dr. Schaeffer's lack of qualifications, there are only two possibilities for how he intends to testify at trial. One possibility is that Dr. Schaeffer

will testify about medical causation despite being unqualified to do so. That is clearly improper. When courts assess *Daubert* motions related to causation experts, they "must assess the reliability of the expert's opinion on general, as well as specific, causation." *See Hendrix ex rel. G.P. v. Evenflo Co.,* 609 F.3d 1183, 1193 (11th Cir. 2010) (district court did not abuse its discretion in excluding expert testimony with insufficient reliability on the cause of the brain injury). The other possibility is that Monsanto will offer Dr. Schaeffer's testimony *not* to address medical causation *directly* (which Dr. Schaeffer cannot do) but rather to *indirectly* support some notion that, according to Monsanto, Ms. Salas did not absorb enough glyphosate to cause cancer. But among many other problems with this proposed approach, it is inherently misleading and based on a fatally flawed methodology. If Monsanto intends for Dr. Schaeffer to confusingly *suggest* or *insinuate* to the jury that glyphosate did not cause Ms. Salas' cancer, that would be a clearly improper effort to introduce medical causation testimony through the backdoor, and from the mouth of a witness without the relevant qualifications.

  **B.**  **Dr. Schaeffer plans to testify about glyphosate despite having scarce experience with the chemical other than working for Monsanto as an expert witness.**

  Dr. Schaeffer is not just unqualified in terms of his relevant training and credentials—or rather lack thereof. He is also unqualified because his previous work with glyphosate, the active ingredient in Roundup and the focus of this litigation, is wholly irrelevant. The question of whether glyphosate causes cancer is one of the central questions for the jury to decide, and although Dr. Schaeffer has held several positions over the years, he has never worked with glyphosate directly nor has he ever given any lectures on glyphosate. *See* Schaeffer Dep. Tr. at 16:13-14. He merely conducted a study *once* looking at *inhalation* exposures as potential contributors for *kidney* injuries, where *one* of the compounds looked at was glyphosate. *Id*. at

32:11-21. In other words, Dr. Schaeffer's first professional experience with glyphosate has been serving as a witness for Monsanto in this case. This is anathema to the *Daubert* standard.

**II.     Dr. Schaeffer's testimony should be excluded because his methodology is fatally flawed and has never been used or tested in assessing the cancer risk of glyphosate in human beings.**

The *Daubert* Court outlined several factors for judges to consider in assessing the reliability of an expert's methodology, including: (1) whether the theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) "in the case of a particular scientific technique, ... the known or potential rate of error," and (4) whether the theory or technique is generally accepted by the relevant scientific community. *See Daubert*, 509 U.S. at 580. For the reasons that follow, Dr. Schaeffer's methodology fails this standard.

**A.     Dr. Schaeffer's methodology involved a novel calculation and irrelevant regulatory daily allowance limits.**

Dr. Schaeffer's methodology in this case largely centers on a mathematical equation which he used to estimate that Ms. Salas' skin absorbed 0.089 mg/day of glyphosate. *See* Exhibit 3 at 37. This absorption calculation to assess the risk of NHL in humans is wholly novel and untested. *See* Exhibit 3 at 20-22. Dr. Schaeffer opined that this dosage is below the allowable daily intake referenced by the EPA. *Id*. at 37-38. As outlined further below, however, the EPA allowable daily dose has nothing to do with cancer.

Dr. Schaeffer further opined that Ms. Salas' dosage is below the allowable daily intake under California's Proposition 65 law. *Id.* at 37. As it happens, California's allowable daily intake limit (sometimes referred to as a NSRL) for glyphosate was developed without reference to NHL, the type of cancer at issue in this case. *See* Exhibit 6 at 1. To the extent the NSRL considered cancer risk, it considered a single study that found an increased risk of hemangiosarcoma in rodents exposed to glyphosate in their diets. *Id.* In other words, the NSRL was not based on any

studies relating to the *human* risk of cancer from glyphosate exposure, any studies related to *dermal* exposure (the only type of exposure considered in Dr. Schaeffer's estimate of Ms. Salas' absorption of glyphosate), or any studies of NHL.

Accordingly, Dr. Schaeffer's conclusion that Ms. Salas' exposure is "lower than" the limits established by the EPA and the California authorities is, at best, a red herring. "[T]he methodology by which he arrived at his ultimate conclusion is fundamentally flawed because it is not based on … sufficiently reliable data or facts." *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1290 (11th Cir. 2005) (holding no abuse of discretion when the expert's testimony was excluded because the hard data was arrived at by unassailable methods).

### B. Dr. Schaeffer's methodology has never been tested or applied to assess the cancer risks of glyphosate in human beings.

There are no human epidemiological studies based on an absorption dose calculation of the type Dr. Schaeffer used here. Therefore, unsurprisingly, Dr. Schaeffer cited to no human epidemiological study that uses his method and did not consider any such study. To the best of Plaintiff's knowledge, no such study exists. Accordingly, Dr. Schaeffer's absorption method is completely untested for the purpose of assessing a human being's risk of cancer from glyphosate. Whatever the merits of this absorption calculation for purposes of other chemicals and Dr. Schaeffer's field of industrial hygiene, this methodology has no pedigree in the study of the carcinogenicity of glyphosate.

### C. Dr. Schaeffer's methodology inexplicably fails to include additional routes of exposure.

Dr. Schaeffer's methodology is based in part on Ms. Salas' self-reported use of Roundup detailed in her testimony. *See* Schaeffer Dep. Tr. at 43:1-5. As Ms. Salas explained, she was exposed to the product in a number of ways, including when a 'wind gust hit.'" *See* Exhibit 3 at 26.

Oddly, however, Dr. Schaeffer's methodology wholly omits consideration of Ms. Salas's inhalation exposure to glyphosate. As detailed in other studies, inhalation is one route by which glyphosate can enter the body. The UK's Institute for Occupational Medicine notes that "[i]nhalation exposure is invariably singled out as the most important route in terms of potential to cause toxicity." *See* Inadvertent ingestion exposure in the workplace (attached as Exhibit 7 at 1). Indeed, the study also shows that glyphosate can be absorbed through dietary sources such as "inadvertent ingestion exposure [which] highlights the role of hand-to-mouth and object-to-mouth events as the primary exposure processes." *Id.* Despite this, Dr. Schaeffer's methodology inexplicably fails to include these routes and is limited to dermal exposure. His reported decision to exclude inhalation for glyphosate exposure is based on irrelevant studies such as a study from 1991 which "measured exposures to airborne glyphosate in forest workers in *Finland* across *one* week." *See* Exhibit 3 at 19. Dr. Schaeffer's decisions for this methodology are not only scientifically unsound, but they also have the necessary effect of artificially downplaying Ms. Salas' exposure.

### III. Dr. Schaeffer's testimony should be excluded because his theories would not assist the trier of fact.

As noted above, Dr. Schaeffer *himself* disclaims any opinion about medical causation. For this reason alone, his testimony would not assist the jury: medical causation is the only conceivable, triable, issue that the jury will be asked to assess that has any bearing on Dr. Schaeffer's opinions. Put differently, Monsanto appears to want to use Dr. Schaeffer to sway the jury on matters of causation even though he has no causation opinion and could not have such an opinion based on his lack of qualifications and the nature of his methodology. At best, Dr. Schaeffer's opinions are extraneous and irrelevant to issues decided by the jury. At worst, his opinions present a clear risk of confusing the jury and prejudice its evaluation of this case.

Expert testimony "may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the []courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *See United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (holding no abuse of discretion when the court excluded testimony because of a failure to establish the opinions were methodologically reliable or sound). An expert's, like Dr. Schaeffer's, "imprecise opinion easily could serve to confuse the jury and … misle[a]d it" and therefore, must be excluded. *Id.* at 1266.

### A. Dr. Schaeffer's opinions are wholly irrelevant to any triable claim or defense.

Under Florida law, "[w]hether the situation is a proper one for the use of expert testimony is to be determined on the basis of whether it will assist the trier of fact." Fla. Stat. § 90.702 (Law Revision Council Note (1976)). The central issues susceptible to expert testimony in this case are whether Roundup causes cancer and whether Roundup was a substantial cause of Ms. Salas' lymphoma. And to reiterate, Dr. Schaeffer explained clearly at his deposition that he has no opinion about causation. *See* Schaeffer Dep. Tr. at 48:19-20. He also has no expertise in anything that could inform the central questions in this case of causation as he is not an epidemiologist. He merely has an "understanding of epidemiology" from "collaborating with epidemiologists." *See* Schaeffer Dep. Tr. at 29:4-6. Instead, what he proposes to testify about are tangentially related conclusions about the absorption of glyphosate into Ms. Salas' body. Even if those conclusions were legitimate, they cannot assist the jury as they are unrelated to the central questions.

### B. Dr. Schaeffer's opinions will only confuse the jury or duplicate the opinions of the other experts.

Monsanto has retained and disclosed four experts, including experts who intend to testify about specific causation. *See* Exhibit 2. Therefore, at best, Dr. Schaeffer's opinions would duplicate the opinions of Monsanto's other experts. If expert testimony is "cumulative or needlessly time consuming," exclusion is appropriate. *See Frazier*, 387 F.3d at 1263. At worst,

they will confuse the jury as Dr. Schaeffer is not an epidemiologist and his methodology is wholly different from assessments in epidemiological literature. This Court should exclude Dr. Schaeffer as his "potential probative value" is "substantially outweighed by the risk of prejudice … or misleading the jury." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1106 (11th Cir. 2005) (holding that the trial court did not abuse its discretion in excluding a suicide expert's opinion on suicide patterns as they would mislead the jury and are not relevant).

### IV. Even if this Court does not exclude Dr. Schaeffer's opinions in their entirety, portions of his opinions must clearly be excluded.

Certain aspects of Dr. Schaeffer's opinions must clearly be excluded under *Daubert* even if this Court finds that Dr. Schaeffer's testimony meets the *Daubert* standard as a general matter, which it does not. The Court should exclude the following specific aspects of his opinions as they are irrelevant, will likely confuse the jury, and serve no discernable purpose other than to mislead and confuse the jury.

First, Dr. Schaeffer's opinion that Ms. Sala's absorption level was below the EPA's allowable daily intake level should be excluded as the EPA's reference dose is unrelated to cancer. It is explicitly a non-cancer assessment that focuses on developmental, urinary concerns.

Second, Dr. Schaeffer's finding that Ms. Salas' absorption level was below the California NSRSL allowable intake level should be excluded. Their daily limit was determined without reference (1) human studies of cancer, (2) any studies at all of the type of cancer that Ms. Salas contracted, and (3) any studies of dermal glyphosate exposure. Rather, the California NSRL was expressly based on a single 2006 study concerning rodents' dietary exposure to glyphosate and their risk of a different cancer, hemangiosarcoma.

Dr. Schaeffer's references to these daily allowance limits would likely confuse the jury into believing that there is no human cancer risk below these exposure levels. Indeed, that is the *only* discernable purpose of Dr. Schaeffer presenting this to the jury. Dr. Schaeffer's opinions are

14

clearly prejudicial and fail the *Daubert* standard. These opinions should be excluded even if Dr. Schaeffer's other opinions are not.

## CONCLUSION

The central issues in this case are generally whether Roundup causes cancer and specifically, whether Roundup was a substantial cause of Ms. Salas' NHL. Dr. Schaeffer's testimony should be excluded because he lacks the relevant qualifications to provide opinions on glyphosate and he lacks the relevant qualifications to provide opinions on the causation of Ms. Salas' cancer. Dr. Schaeffer intends to provide expert testimony based on a method that has never been employed in assessing the risk of NHL in human beings. Further, his theories would not assist the trier of fact and are likely to mislead them because they will not be assessing what amount of glyphosate entered Ms. Salas' body, but rather if glyphosate caused Ms. Salas' cancer, a question Dr. Schaeffer is unqualified to give opinions about. For the above stated reasons, Dr. Schaeffer's deposition testimony should be excluded under the *Daubert* standard. Thus, Plaintiff respectfully requests this Court to grant Plaintiff's Daubert motion against Dr. Schaeffer's testimony.

Respectfully submitted,

**PODHURST ORSECK, P.A.**

*/s/ Steven C. Marks*
Steven C. Marks
(smarks@podhurst.com)
Kristina M. Infante
(kinfante@podhurst.com)
Pablo Rojas
(projas@podhurst.com)
One Southeast 3rd Avenue, Suite 2300
Miami, FL 33131
Tel: (305) 358-2800
Fax: (305) 358-2382
*Counsel for the Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on June 15, 2023, I electronically filed the foregoing document with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

By: /s/ Steven C. Marks
STEVEN C. MARKS
*Counsel for the Plaintiff*

PLAINTIFF'S MOTION TO EXCLUDE DR. SCHAEFFER'S TESTIMONY