| | |
|---|---|
| 1 | **Garmer & Prather, PLLC** |
| | Jerome P. Prather, Esq. (*pro hac vice*) |
| 2 | 141 North Broadway |
| | Lexington, Kentucky 40507 |
| 3 | Telephone: (859) 254-9351 |
| | Facsimile: (859) 233-9769 |
| 4 | Email: jprather@garmerprather.com |

5  UNITED STATES DISTRICT COURT
   NORTHERN DISTRICT OF CALIFORNIA
6  **_ELECTRONICALLY FILED_**

| | | |
|---|---|---|
| 7 | | |
| 8 | IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 2741 |
| | | Case No. 3:16-md-02741-VC |
| 9 | This document relates to: | |
| 10 | *Estate of Kenzie Elizabeth Murdock, Kyle A. Murdock, Adm'r, Kyle A. Murdock, individually, and Mandi L. Murdock v. Monsanto Co.,* | **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF DR. THOMAS R. BUTTS** |
| 11 | Case No. 3:20-cv-01363-VC | |
| 12 | | |
| 13 | | Hearing: |
| | | Date:  July 27, 2023 |
| | | Time:  10:00 A.M. |
| 14 | | Place: San Francisco Courthouse |
| | | Courtroom 4 – 17th Floor |

15
## NOTICE
16
PLEASE take notice that on July 27, 2023, at 10:00 A.M., in Courtroom 4, 17th Floor, of

17 the United States District Court for the Northern District of California, located at 450 Golden

18 Gate Avenue, San Francisco, CA 94102, or as otherwise ordered by the Court, Plaintiffs will

19 present her motion and seek an order excluding the testimony and opinions of Dr. Thomas R.

20 Butts under Daubert and Fed. R. Evid. 702

21

22

23

24

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

## MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF DR. THOMAS R. BUTTS

COME the Plaintiffs, the Estate of Kenzie Elizabeth Murdock, Kyle A. Murdock, Administrator; and Kyle A. Murdock, individually, by counsel, and for their motion to exclude the opinions and testimony of Dr. Thomas R. Butts pursuant to Daubert v. Merrell Dow Pharm., Inc., hereby state as follows.

## INTRODUCTION

Thomas R Butts, Ph.D., Defendant's weed science expert, offers no opinions or testimony relevant to specific causation or any other part of Plaintiffs' claims. His opinions and testimony were focused on the importance of weed control in modern agriculture and the efficacy of Roundup® in achieving that purpose, which, of course, has nothing to do with the central issue in this case – whether exposure to Roundup® caused Kenzie Murdock's cancer – or any other issue to be tried. Because his opinions are not relevant, Dr. Butts' testimony and opinions fail to meet the requirements of Fed. R. Evid. 702 and Daubert; and, thus, should be excluded.

## BACKGROUND

Kenzie Murdock was exposed to glyphosate for the entirety of her life on her family's farmland near Murray, Kentucky, which, by the time of her death totaled approximately 4,000 acres. Before her 18th birthday, Kenzie became seriously ill and was eventually diagnosed with T-cell non-Hodgkin's lymphoblastic lymphoma at Vanderbilt Children's Hospital. Second Amended Complaint, ECF No. 13796, at ¶ 19. Kenzie underwent multiple rounds of extensive and arduous treatment at Saint Jude research hospital in Memphis, Tennessee. Although briefly

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 2 of 14

declared in remission, her cancer quickly returned, and was untreatable. She died only ten months after her initial diagnoses, on July 28, 2019.

The Murdocks' farm comprised approximately 2,500 acres when Kenzie was born, and included various tracts totaling 4,000 acres by the time she was diagnosed with NHL. For her entire life Kenzie lived in one of two houses that were located on the farm, immediately adjacent to the fields. Various Roundup® products were routinely used to control weed growth on all of the farmland and in the yard around the residence where Kenzie lived. Kyle Murdock Depo., Exh. A, at 136-37, 286. From the time she could walk, Kenzie played and worked in the fields almost daily. She played hide-and-seek in the fields. She rode four-wheelers around the property and edges of the cropland. Id. at 25. She loved being outside and spent most of her time as an adolescent playing outside. Id.

From the time she was a toddler until she died in 2019 at the age of 18, Kenzie was directly involved in applying RoundUp products on the Murdocks' farmland. RoundUp products were used to manage weed growth on the farmland and non-crop areas on the Murdocks' property for the entirety of Kenzie's life. Id. at 136-37, 286. They used a variety of different spraying apparatuses. Kenzie personally applied RoundUp using handheld spraying wands attached to four-wheelers. Id. at 178. RoundUp was applied to the Murdocks' crops using enclosed tractors (a John Deere and a Spra-Coupe) with self-propelled spraying arms attached. Id. at 117-18, 159. Kenzie rode with her father in the tractor during these applications from the time she was approximately two years old. Id. at 160-61.

The Murdocks used RoundUp frequently and in large quantities to manage weed growth on their properties. In fact, in one month—July 2015—the Murdocks purchased 265 gallons of glyphosate products from a local distributor. This is representative of the amount of RoundUp

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

routinely used on the Murdocks' land. RoundUp was applied approximately 15-20 times per year on the row crops and 10-12 times per year on the non-crop areas. Id. at 156, 202. Kenzie rode with her father during applications using the self-propelled sprayers approximately 15-20 times each year. Id. at 156. During the same time, Kyle Murdock applied RoundUp products in the same frequency using pull-behind sprayers and spot-sprayers. Some of these tanks were mounted on the back of four-wheelers, the same ones Kenzie used to travel around the property while playing with friends. Id. at 25. Kenzie rode along during these applications—and, more importantly, sometimes operated the spraying wand herself—approximately 10-12 times per year. Id. at 202.

Defendant disclosed Thomas R. Butts, Ph.D., as a specific causation expert in this case. Dr. Butts is an extension weed scientist with the University of Arkansas. He holds no other credentials and his profession has no board certification. Dr. Butts is not a medical doctor, not an epidemiologist, not a toxicologist, not an industrial hygienist, and not a statistician. Butts Depo., Exh. B, at 29. He has not performed any independent analysis on the carcinogenicity of RoundUp or glyphosate. Id. at 127. He has not studied the effects of glyphosate on human health. Id. at 33. He testified that his study of glyphosate has been from the perspective of its "effectiveness on controlling weeds in the field." Id. at 31. He testified that his professional experience with glyphosate involves "application procedures, . . . drift mitigation strategies and then the effectiveness of it in row crops. Id. at 33.

Dr. Butts was disclosed as case-specific expert to provide specific causation opinions. His report, attached as Exhibit C, is divided into two sections: general opinions and case-specific opinions. The general opinions, which comprise more than half of the report (16 of the 25 pages) generically discuss the impact of weeds on agriculture, the history of herbicides to effectively

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 4 of 14

manage weeds, and the effectiveness of glyphosate in managing weed growth, and how glyphosate is applied. Butts Report, Exh. C, at 1-16. None of these opinions are related in any way to Kenzie Murdock's exposure to RoundUp or the development of her NHL. For instance, Dr. Butts discusses tillage as a weed management technique at-length throughout his report, id. at 6, 9-11, 14-15, 16, but tillage was never used as a weed management technique on any of the Murdocks' property, id. at 76. Likewise, Dr. Butts noted that glyphosate is applied on some farms by airplane, id. at 12, but aircraft were never used to apply RoundUp products on the Murdocks' properties. The major themes of Dr. Butts' deposition testimony were: (1) weeds are a major problem for agriculture; (2) agricultural producers need effective weed management; and (3) glyphosate is a cost-effective option to manage weeds.

His case-specific opinions, which comprise only the last four pages of his report, suggest that the amount, consistency, and frequency of glyphosate application is consistent with what would effectively manage weed growth on the Murdocks' property. This case, however, is not how RoundUp was applied or whether it was effective in mitigating weeds. That is not in dispute. Dr. Butts' report includes opinions about Kenzie's exposure to RoundUp, the application of RoundUp in non-crop areas, and was critical of exposure calculations by Plaintiffs' expert, Dr. William Sawyer, too. However, Dr. Butts' testimony failed to establish how Kenzie applied RoundUp or how her application techniques impacted her chances of developing NHL. Moreover, Dr. Butts was critical of the calculations of Kenzie's exposure, but performed no independent calculation and testified that he was not capable of performing those calculations. Butts Depo., Exh. B, at 111-12. Despite being disclosed as a specific causation expert, Dr. Butts cannot opine on whether the application of glyphosate on the Murdocks' farms was a substantial factor in causing Kenzie's illness and death. Therefore, his testimony and

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 5 of 14

opinions fail to meet Daubert muster or satisfy the requirements of Fed. R. Evid. 702, and, thus, should be excluded.

## ARGUMENT

**I.     Standard of Review**

Admissibility of expert testimony is governed by Fed. R. Evid. 702. Newell Rubbermaid, Inc. v. Raymond Corp., 676 F.3d 521, 527 (6th Cir. 2012). That rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on <u>sufficient facts or data</u>;
> (c) the testimony is the product of <u>reliable principles and methods</u>; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added).

In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), the United States Supreme Court established a framework for interpreting and applying Rule 702.[1] Most notably, the Court held that all scientific testimony or evidence admitted must be relevant and reliable.[2] Id. at 589. The Court extended this holding to testimony based on technical and other specialized knowledge in Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). In Daubert, the Court

---

[1] Fed. R. Evid. 702 was amended effective December 2011, but those amendments were only stylistic changes and were not intended to alter the substance of the rule. *See* Advisory Notes to 2011 Amendments ("These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.") Thus, the analysis contained in Daubert is still applicable.

[2] The relevance prong of the Daubert decision is simply a specific application of Rule 402 of the Federal Rules of Evidence which states, "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402.

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 6 of 14

determined that the condition in Rule 702 requiring the evidence or testimony to "assist the trier of fact" is primarily related to relevance and inextricably linked to the third requirement found in Rule 702—that "the witness has applied the principles and methods reliably to the facts of the case." 509 U.S. at 591. The Court held that relevance is determined by evaluating "whether expert testimony proffered in the case is sufficiently tied to the facts of the case," id. (citing United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)), which involves "a preliminary assessment of whether the reasoning or methodology … properly can be applied to the facts in issue," id. at 592. Put another way, the objective of Daubert "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152.

In the Sixth Circuit, where this case will be returned for trial, the Court of Appeals has stated "[r]ed flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." Newell Rubbermaid, Inc. v. Raymond Corp., 676 F.3d 521, 527 (6th Cir. 2012) (citing Best v. Lowe's Home Ctrs., Inc., 563 F.3d 171, 177 (6th Cir.2009); Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426, 434 (6th Cir.2007)).

In making its determination as to the admissibility of Dr. Butts' opinions, the Court "is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." City of Pomona v. SQM N.A. Corp., 750 F.3d 1036, 1044 (9th Cir. 2014) (internal citation omitted). "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 594.

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 7 of 14

**II. Dr. Butts' testimony and opinions are not relevant to any claims brought by Plaintiffs in this case.**

Dr. Butts was disclosed as a specific causation expert, ostensibly in rebuttal to the opinions of Plaintiff's toxicologist, William Sawyer, although Dr. Butts' testified that he was not qualified to make the type of calculations Dr. Sawyer makes. Instead, the gist of Dr. Butts' testimony was that weed control is an important part of modern agriculture. Even if one concedes that is true, it still has no bearing on the true issue here—whether Roundup caused Kenzie Murdock's NHL—and therefore his testimony would not be helpful to the jury.

The condition of Rule 702(a) requiring expert testimony to aid in the trier of fact's determination of a fact in issue goes primarily to relevance. Daubert, 509 U.S. at 591. Kumho Tire notes that a court has a "special obligation" to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." 526 U.S. at 147 (quoting Daubert, 509 U.S. at 589). A qualified expert's testimony must be, *inter alia*, "'relevant,' meaning that it will assist 'the trier of fact to understand the evidence or to determine a fact in issue.'" Blount v. Stanley Eng'g Fastening, 55 F.4th 504, 516 (6th Cir. 2022).

Dr. Butt's opinions can be distilled into three main points: (1) weeds are a major problem for agriculture; (2) agricultural producers need effective weed management; and (3) glyphosate is a cost-effective option to manage weeds. None of those opinions bear any relevance to the claims being pursued by Plaintiffs in this case; and, therefore, his testimony and opinions should be excluded.

Dr. Butts' testimony in this case is not relevant to the Plaintiffs' claims. In his deposition, Dr. Butts explained the nature of his work, weed science, as "the control of weed species affecting multitude [sic] of different areas"; "weedocology and biology, understanding how they

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 8 of 14

grow [and] reproduce"; and "the application technology world. So it's understanding the sprayer equipment, nozzles, adjuvants, . . . how that affects – or could impact drift mitigation; those kind of things." Butts Depo., Exh. B, at 34-35. When asked to define a weed in the context of his opinions and discipline, Dr. Butts testified that "[a] weed can be a lot of things; but in general, it's a plant out of place." Id. at 83. He went on to state that "chemical weed control herbicides are definitely a very important part of successfully managing weeds . . . and glyphosate is a big piece of that puzzle. It is very effective." Id. at 87. Nowhere in his opinion did Dr. Butts relate any of his opinions to Kenzie Murdock's specific exposure to Roundup or how that exposure would affect her chances of developing NHL. In fact, he testified that he would not be qualified to make that determination *See* id. at 33, 111-12.

      Dr. Butts' opinions fail to relate specifically to Kenzie Murdock or the cause of her NHL. Plaintiff has made claims in this action for negligence, strict products liability and failure to warn, breach of warranties, and fraud. As a specific causation expert, Dr. Butts was not disclosed to opine on the standard of care or existence of product defects, but only on specific causation. However, Dr. Butts' opinions are generalized and lack any specific connection to Kenzie Murdock's exposure to glyphosate. Most of Dr. Butts' report and testimony was in the form of generalizations: his discussion about tillage examples "tend to be . . . generalized statements," id. at 85, the discussion of application techniques "apply generally across the board," id. at 85, and even the specific opinions about the Murdock property "may be more generalized." Id. at 86. Even though he testified that "there are things in [his report] that do directly apply to the Murdock case," id. at 85, he failed to make meaningful connections to Kenzie's exposure to RoundUp or the effect it had on her developing NHL. Dr. Butts' generalized testimony lacks any meaningful connection to Kenzie's case specifically; and, therefore, is irrelevant to this case.

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 9 of 14

**III. Dr. Butts failed to rely on sufficient facts and data and failed to apply reliable methods and principles; and, therefore, fails to meet the requirements of Fed. R. Evid. 702.**

Dr. Butts lacks either the requisite scientific, technical, or specialized knowledge to render opinions as to certain topics or categories or has failed to reliably apply principles and methods to the facts of this case for certain topics. Pursuant to Fed. R. Evid. 702, this would bar him from offering expert testimony. His lack of qualifications, coupled with his failure to rely on sufficient facts and data in forming his opinions for this case, underscore the complete irrelevance of his opinions. Nothing in Dr. Butts' testimony or opinions can assist the trier of fact to understand the evidence or determine a fact in issue. Accordingly, he fails to meet the requirements for expert testimony and should be excluded.

**A. Dr. Butts did not rely on sufficient facts or data to form his opinions.**

Dr. Butts' testimony and opinions are the product of incomplete or insufficient review of necessary facts and data. Dr. Butts testified that he read Kenzie's parents' depositions for information about her exposure. Id. at 64. Dr. Butts also read only the portions of Plaintiffs' experts' reports pertaining to Kenzie Murdock's contact with glyphosate, id. at 55, but "didn't really investigate the calculations themselves." Id. at 64. In fact, Dr. Butts "did no mathematical calculations on the exposure." Id. at 111. He testified that he does not "follow those calculations precisely" in order to reach his opinions. Id. at 113. He did not discuss with anyone the facts of this case. Id. at 82. He only skimmed the Plaintiff's Fact Sheet pertaining to this case, id. at 60, never asked specifically for any photos of the Murdock's farm, id. at 67, never reviewed any of Kenzie Murdock's medical records, id. at 80-81, and never visited the property where Kenzie was exposed to glyphosate, id. at 52. He relied only on aerial images from Google Earth to

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 10 of 14

formulate his opinions. Id. at 66-67. These are insufficient bases for drawing the conclusions he did about Kenzie's exposure and specific causation of her NHL.

### B. Dr. Butts is not qualified to render opinions as to Kenzie's exposure to glyphosate or the cause of her diagnosis of NHL.

Dr. Butts is not a medical doctor, not an epidemiologist, not a toxicologist, not an industrial hygienist, and not a statistician. Butts Depo., Exh. B, at 29. He has not performed studies of the effects of glyphosate on human health. Id. at 33. He has not performed any independent analysis on the carcinogenicity of glyphosate and only relies on the EPA's classification, despite IARC's conclusion that glyphosate causes cancer. Id. at 127. Based on all of the above, he would not be qualified to testify on whether glyphosate is a carcinogen. His experience with glyphosate has focused on "its effectiveness in controlling weeds in the field." Id. at 31, 33. Dr. Butts testified that his "opinions and [his] expertise in this case was dealing with the weed science herbicide related aspects, not the human health aspect." Id. at 82. But, as already explained, this case is not about weed science. The parties are not arguing about whether weeds need to be controlled in an agricultural setting. The question is whether Monsanto's product was defective because it was unreasonably dangerous, and whether it caused Kenzie Murdock's specific disease.

Dr. Butts conducted no independent analysis or calculation of Kenzie's exposure to glyphosate. Id. at 111. In fact, he testified that he could not have even quantified Kenzie's exposure. Id. at 112. He was not aware which subtype of lymphoma Kenzie had. Id. at 82. Dr. Butts also opined about LD-50s, or the lethal dose of a substance required to kill 50% of the test population. In his report, he noted the toxicity rate of glyphosate compared to other herbicides. Butts Report, Exh. C, at 9. However, he later testified that in order to calculate the LD-50 of

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 11 of 14

glyphosate, it would be necessary to know the concentration of the active ingredient. Butts Depo., Exh. B, at 110-11. He did not know the concentration for any product exposed to Kenzie. Id. He performed no such calculation for Kenzie's exposure to glyphosate and stated that he could not. Id. at 111-12.

Nevertheless, Dr. Butts opined that Kenzie Murdock's potential contact with glyphosate was "extremely minimal," despite performing no calculations to quantify her exposure and admitting he was not qualified to do so. Id. at 111-13. Dr. Butts reviewed calculations made by Plaintiffs' expert, Dr. Sawyer, but "didn't really investigate the calculations themselves." Id. He testified that he does not "follow those calculations precisely" in order to reach his opinions. Id. at 113. Yet Dr. Butts was critical of Dr. Sawyer's calculations; specifically, he was critical about the date of Kenzie's exposure to RoundUp. Id. at 58, 125. Dr. Butts baselessly criticizes Dr. Sawyer's calculation, but admitted that he was "not familiar with, you know, where those [calculations] are generated from." Id. at 113. His opinions as to Kenzie's exposure relate only to the "potential for contact" with glyphosate given the various apparatuses used to apply glyphosate on the Murdocks' farms. Id. These opinions, are based on estimates, not specific calculations. Id. Consequently, Dr. Butts lacks the requisite qualifications to render expert opinions about the quantification of Kenzie's exposure to glyphosate or the cause of her NHL and his "estimated" opinions lack the requisite indicia of reliability required under Daubert. Therefore, any testimony or opinions related thereto should be excluded.

**C. Dr. Butts is not qualified to render opinions as to the dangers of glyphosate as a skin irritant.**

Most of Kenzie Murdock's direct exposure to glyphosate came from handheld applications of RoundUp from the back of ATVs or other farm implements. Sawyer Depo., Exh.

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 12 of 14

D, at 64, 71. It is undisputed that Kenzie ordinarily did not wear PPE when applying RoundUp, but Dr. Butts' testimony suggests that the purpose for which RoundUp labels included PPE instructions was because RoundUp could be a skin irritant, not because it causes cancer. Butts Depo., Exh. C, at 116-17. Although Dr. Butts asserted that Kenzie likely had "minimal contact" with RoundUp while riding in enclosed cabins for row-crop RoundUp application, that opinion does not account for Kenzie's exposure in non-crop areas around the Murdocks' house and farmlands. Butts Report, Exh. C, at 7. Dr. Butts testified that this was "not factored into th[e] calculations." Butts Depo., Exh. B, at 115. Dr. Butts then testified about the specific PPE suggested for use when applying RoundUp products, id. at 116, stating that "[t]here's a variety of reasons outside absorption to wear PPE, one of which is just a lot of different herbicides and chemicals can be skin irritants." Id. at 116-17. His testimony implies that the PPE instructions on RoundUp labels were to limit skin irritation, and not because it causes more serious diseases like NHL. But, Dr. Butts then admitted that he was "unsure" whether glyphosate was a skin irritant and said he was "not familiar with those aspects of the chemistries." Id. at 117. His lack of expertise about glyphosate being a skin irritant was underscored by this testimony that "[he is] not aware of, you know, what's a skin irritant or what's not a skin irritant." Id. Dr. Butts is not qualified to opine on whether glyphosate is a skin irritant. To the extent Dr. Butts has testified or offered opinions that glyphosate is a skin irritant, that it is or is not absorbed through skin, or that PPE should be worn, those opinions and testimony should be excluded because they are outside Dr. Butts' expertise.

### D. Dr. Butts is not qualified to render opinions as to tillage.

In the report Dr. Butts prepared for this case, he opines extensively about the effects of tillage on weed management and the interplay of glyphosate in tillage techniques. *See* Butts

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 13 of 14

Report, Exh. C, at 6, 9, 11, 14-16. He testified about the effects of not using tillage in his deposition as well. Butts Depo., Exh. B, at 76, 83. However, these opinions and this testimony were generalized and not case-specific to the agricultural operations on any of the Murdocks' farms. That is, he did not connect any of his generalized opinions about tillage to Kenzie's exposure or her NHL. Dr. Butts was aware that the Murdocks did not use tillage techniques on their farmland, id. at 76, 85, and he tried to make a causal connection to RoundUp effectiveness when tillage is not used, id. at 76, but could not recall any specific text upon which he relied for his tillage opinions, and never specifically tied the presence or absence of tillage on the Murdocks' farmland to Kenzie's NHL. Id. at 76, 85. Because Dr. Butts could not base his testimony on reliable methods or principles, nor could he directly apply them to this case because tillage was not used in this agricultural setting, these opinions are not relevant, cannot assist the trier of fact, and fail to meet the requirements of Fed. R. Evid. 702. Accordingly, any such opinion or testimony about tillage should be excluded.

## CONCLUSION

For all of the reasons stated herein, Plaintiffs' motion should be granted and Dr. Butts should be excluded as an expert witness pursuant to Fed. R. Evid. 702 and Daubert.

Respectfully submitted,

ATTORNEYS FOR PLAINTIFF

BY:   /s/ Jerome P. Prather
Jerome P. Prather, Esq. (*pro hac vice*)
141 North Broadway
Lexington, Kentucky  40507
Telephone:   (859) 254-9352
Facsimile:   (859) 233-9769
Email: jprather@garmerprather.com

Plaintiffs' Motion to Exclude Opinions and Testimony of Dr. Thomas Butts
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 14 of 14