# EXHIBIT K

```
 1              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
 2                    MDL. No. 2741

 3    IN RE:  ROUNDUP PRODUCTS LIABILITY
      LITIGATION
 4    _____

 5    This document relates to:

 6    Michele Glavanovits  v. Monsanto Company
      Case No. 3:20-cv-01016
 7
      _____
 8
           WITNESS:  RON SCHIFF, M.D., Ph.D.
 9    _____

10         The remotely held videotaped

11    deposition of Ron Schiff, M.D., Ph.D. was taken

12    before Janine Leroux, Stenographic Court Reporter

13    and Notary Public on Friday, March 17th, 2023

14    commencing at the approximate hour of 10:06 a.m.

15    Said deposition was taken pursuant to Notice and for

16    all purposes as permitted by Rule 30 of the Federal

17    Rules of Civil Procedure.

18

19

20

21

22

23

24

25
```

**Exhibit K Page 1**

```
 1      APPEARANCES:

 2
        KYLE KASMARICK, ESQUIRE
 3      SYREGELAS & KASMARICK, LLC
        19 North Green Street
 4      Chicago, Illinois 60607
        kk@syregelaslaw.com
 5
        APPEARING REMOTELY ON BEHALF OF THE PLAINTIFF
 6

 7      DEVARTI DAS, ESQUIRE
        HOLLINGSWORTH LLP
 8      1350 I Street Northwest
        Washington, DC 20005
 9      ddas@hollingsworthllp.com

10      APPEARING REMOTELY ON BEHALF OF THE DEFENDANT

11
        ALSO APPEARING REMOTELY
12
        JEFF FLEMING, VIDEOGRAPHER
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1      an increased risk of developing non-Hodgkin
 2      lymphoma from a relatively modest exposure
 3      frequency duration or a cumulative level, and she
 4      was way, way, way higher than any of those
 5      documented cut points.
 6              So this is not just me looking at how
 7      much exposure she had and saying, gee, that's a
 8      lot.  It's looking at the exposure thresholds
 9      associated with an increased lymphoma which is in
10      the literature.  And that's -- that's spelled out
11      in detail.  I don't know how I can make that any
12      clearer or more comprehensive than what I did in
13      my report, but I'm happy to answer questions about
14      it.
15          Q.  Sure.  And Dr. Schiff, if I'm not
16      misunderstanding, so your assessment is based on
17      the fact that Plaintiff's exposure days of 812, as
18      you calculated them, to Roundup at -- over the
19      course of 29 years of exposure, was -- exceeded
20      the thresholds as indicated in the literature that
21      you reviewed, is that accurate?
22          A.  Greatly exceeded.
23          Q.  And --
24          A.  Exceeded orders of magnitude, but yes.
25          Q.  And Dr. Schiff, just to clarify,
```

Ron Schiff, M.D., Ph.D.

```
 1     exposure to Roundup isn't necessarily the same
 2     thing as dose of Roundup, correct?
 3          A.    That's correct.
 4          Q.    Okay.  And so the Plaintiff's exposure
 5     to 812 days of Roundup doesn't necessarily tell us
 6     anything about the dose of Roundup that was
 7     internalized by Ms. Glavanovits, correct?
 8          A.    We don't have, for the most part,
 9     bio-specimen data available in glyphosate or
10     Roundup.  But simple calculations of her
11     cumulative number of exposures, if you want to
12     divide it down into -- the duration speaks for
13     itself, that was 29 years.  I had given you
14     cumulative as 812 exposures.  And frequency would
15     simply be 812 divided by 29, which is 28 exposures
16     per year, which matches up with weekly exposure
17     for the seven month -- seven months of the growing
18     season in the Chicago area which, by the way, I
19     know to be generous.
20               So the deal with that is that even if
21     you say that each exposure was just 15 minutes,
22     that's still over 200 hours of lifetime exposure
23     over a period of 29 years.  If it was 30 minutes,
24     it would be over 400.  If it was a full hour, it
25     would be over 800.
```

Exhibit K Page 4

1                I did not really see, when I wrote my
2    report, any need to make those calculations to
3    break it down like that.  But it's very obvious
4    from the data that we do have and from looking at
5    the numbers that were, you know, consistently and
6    accurately reported in the complaint in the
7    Plaintiff Fact Sheet.  So this was a tremendous
8    amount of exposure over a prolonged period of
9    time.
10       Q.   Again, going back to my question, it
11   doesn't actually still tell us -- the exposure
12   hours or exposure timeframe doesn't tell us the
13   internalized dose that Ms. Glavanovits
14   experienced, is that correct?
15       A.   It doesn't matter because the exposure
16   thresholds in the literature that are associated
17   with the increased risk are also not expressed by
18   measurements of serum or urine or tissue
19   concentrations.
20               I've made my comparison to data that
21   are supported in the literature and documented and
22   in fact reviewed by others in the context of old
23   analysis, meta-analysis and so on.
24               And I also want to make another point,
25   and this is extremely important.  In coming to

1    there were, those would at most have been other

2    candidate causes.  The involvement of glyphosate

3    Roundup is well documented and well established.

4    Q.   Have you determined -- or did you make

5    any effort to determine the other candidate

6    exposures that she may have had?

7    A.   No, because a complete listing is

8    impossible.  And because even a determination of

9    any would not be relevant or affect my opinion.

10   The glyphosate exposure is factual.  It's

11   extensive by quantitative numerical criteria and

12   the outcome of developing follicular lymphoma

13   diagnosed at age 53 is also substantiated.

14   Q.   So there is -- so is your opinion -- is

15   it -- or is it your opinion that there is no

16   amount of exposure to a carcinogen other than

17   Roundup in Ms. Glavanovits' exposure that would

18   possibly change your opinion regarding the

19   evaluation you've conducted here as to Roundup and

20   her follicular lymphoma?

21   A.   That's correct.  The exposure to

22   another lymphoma carcinogen would not have

23   mitigated, negated or neutralized her extensive

24   exposure to Roundup by quantitative criteria, nor

25   its effect on her risk of developing non-Hodgkin

```
 1     lymphoma.
 2              So, you know, I mean there is this
 3     principle of multifactorial causation of disease
 4     that has been accepted by epidemiologists,
 5     oncologists, pathologists for many, many years.
 6     And the finding of more than one potential cause,
 7     and in this case there hasn't been one in terms of
 8     an environmental or occupational carcinogen, would
 9     not override the role of a documented lymphoma
10     carcinogen in the causation of an individual
11     patient's or plaintiff's lymphoma.
12         Q.    If Ms. --
13         A.    I hope I've explained that clearly
14     enough.
15         Q.    If Ms. Glavanovits had had exposure --
16     extensive exposure to a carcinogen -- a documented
17     carcinogen equal to or greater than that of her
18     exposure to Roundup, would that change your
19     opinion regarding whether or not Roundup caused or
20     contributed to her non-Hodgkin's lymphoma?
21         A.    Of course not.  She still had the
22     extensive glyphosate exposure, Roundup exposure,
23     by quantitative as well as qualitative criteria,
24     and she still developed a follicular lymphoma.  So
25     you're asking me the hypothetical of what if
```

```
 1    STATE OF KENTUCKY    )
                           )
 2    COUNTY OF MONTGOMERY )

 3

 4              I, JANINE N. LEROUX, Court Reporter, the

 5    undersigned Notary Public in and for the State of

 6    Kentucky at Large, certify that the facts stated in

 7    the caption hereto are true; that at the time and

 8    place stated in said caption, the witness named in

 9    the caption hereto remotely appeared before me, and

10    that after being by me duly sworn, was examined by

11    counsel for the parties; that said testimony was

12    taken by me in stenotype and later reduced to

13    computer-aided transcription, and the foregoing is a

14    true record of the testimony given by said witness.

15

16              No party to said action nor counsel for

17    said parties requested in writing that said

18    deposition be signed by the testifying witness.

19

20

21           [signature]

22           JANINE LEROUX - COURT REPORTER
             NOTARY PUBLIC STATE-AT-LARGE
23           MY COMMISSION EXPIRES: NOVEMBER 26, 2023
             NOTARY ID KYNP1406
24

25
```