1 | **WILKINSON STEKLOFF LLP** | **COVINGTON & BURLING LLP**

**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax:  202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax:  415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax:  310-576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No.:  3:16-md-02741-VC |
| *Salas v. Monsanto Company, et al.*, 3:21-cv-06173-VC | **DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. KEVIN KNOPF** |
| | Hearing: Date:     July 27, 2023 Time:     10:00 a.m. Place:     San Francisco Courthouse, Courtroom 4 – 17th Floor |

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. KEVIN KNOPF

1    **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2    **PLEASE TAKE NOTICE THAT** on July 27, 2023 at 10:00 a.m., in Courtroom 4 of the

3    United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San

4    Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will

5    present its Motion to Exclude Testimony of Dr. Kevin Knopf.  Monsanto seeks an order excluding

6    opinions of this witness under Federal Rule of Evidence 702.

7

8    Dated:  June 16, 2023                          Respectfully submitted,

9

10                                                  /s/ *Jed P. White*
                                                    Jed P. White
11                                                  Attorneys for Defendant Monsanto Company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

**Page**

3 INTRODUCTION ...................................................................................................................... 1

4 BACKGROUND ....................................................................................................................... 1

5 LEGAL STANDARD ............................................................................................................... 3

6 ARGUMENT ............................................................................................................................. 3

7     A.  DR. KNOPF FAILS TO RELIABLY "RULE IN" ROUNDUP AS A
POTENTIAL CAUSE OF PLAINTIFF'S NHL.................................................................. 4

8

9     B.  Dr. KNOPF FAILS TO RELIABLY "RULE OUT" OTHER POTENTIAL
ALTERNATIVE CAUSES OF PLAINTIFF'S NHL............................................................ 7

10 CONCLUSION .......................................................................................................................... 9

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. KEVIN KNOPF

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Allen v. Pa. Eng'g Corp.*,
   102 F.3d 194 (5th Cir. 1996)....................................................................................................... 7

5

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
6
   303 F.3d 256 (2d Cir. 2002)...................................................................................................... 7

7

*Borg-Warner Corp. v. Flores*,
   232 S.W.3d 765 (Tex. 2007) ..................................................................................................... 5

8

*Burleson v. Tex. Dep't of Crim. Just.*,
9
   393 F.3d 577 (5th Cir. 2004) ..................................................................................................... 6

10

*Burst v. Shell Oil Co.*,
   C.A. No. 14–109, 2015 WL 3755953 (E.D. La. June 16, 2015)............................................... 7

11

*Clausen v. M/V NEW CARISSA*,
12
   339 F.3d 1049 (9th Cir. 2003)........................................................................................ 2, 4, 5, 7

13

*Cooper v. Brown*,
   510 F.3d 870 (9th Cir. 2007) ..................................................................................................... 3

14

*Daubert v. Merrell Dow Pharm., Inc.*,
15
   509 U.S. 579 (1993) ................................................................................................................... 3

16

*G v. Fay Sch., Inc.*,
   282 F. Supp. 3d 381 (D. Mass. 2017) ....................................................................................... 8

17

*Glasetter v. Novartis Pharm. Corp.*,
18
   252 F.3d 986 (8th Cir. 2001)................................................................................................... 4, 5

19

*Hall v. Baxter Healthcare Corp.*,
   947 F. Supp. 1387 (D. Or. 1996)............................................................................................... 5

20

*Hall v. Conoco Inc.*,
21
   886 F.3d 1308 (10th Cir. 2018).................................................................................................. 8

22

*In re Lipitor Mktg., Sales Practices & Prods. Liab. Litig.*,
   892 F.3d 624 (4th Cir. 2018).............................................................................................. 1, 7, 9

23

*Luttrell v. Novartis Pharms. Corp.*,
24
   894 F. Supp. 2d 1324 (E.D. Wash. 2012), *aff'd*, 555 Fed. App'x 710 (9th Cir. 2014).................... 4

25

*McClain v. Metabolife Int'l, Inc.*,
   401 F.3d 1233 (11th Cir. 2005).................................................................................................. 5

26

*Pluck v. BP Oil Pipeline Co.*,
27
   640 F.3d 671 (6th Cir. 2011)..................................................................................................... 5

28

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. KEVIN KNOPF

*Poust v. Huntleigh Healthcare*,
  998 F. Supp. 478 (D.N.J. 1998) ................................................................................. 4

*Pritchard v. Dow Agro Sciences*,
  705 F. Supp. 2d 471 (W.D. Pa. 2010), *aff'd*, 430 Fed. App'x 102 (3rd Cir. 2011) ........................ 8

*Westberry v. Gislaved Gummi AB*,
  178 F.3d 257 (4th Cir. 1999).................................................................................... 2, 7

*White v. Ford Motor Co.*,
  312 F.3d 998 (9th Cir. 2002).................................................................................... 3

**Other Authorities**

National Research Council, Reference Manual on Scientific Evidence (3d ed. 2011)........................ 4

**Rules**

Fed. R. Evid. 702 ............................................................................................. 3

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. KEVIN KNOPF

1

**INTRODUCTION**

2       Plaintiff Nancy Salas alleges that her exposure to Monsanto's Roundup product caused her to

3   develop mantle cell lymphoma ("MCL"), a subtype of Non-Hodgkin's Lymphoma ("NHL").  Ms. Salas

4   designated Dr. Kevin Knopf, a clinical oncologist, to opine on specific causation—specifically whether

5   Roundup or its active ingredient, glyphosate, was a substantial factor contributing to Ms. Salas's

6   development of MCL.  *See* Ex. 1, Plaintiff Nancy Salas's Specific Causation Expert Disclosures, at

7   3–4.[1]  To date, Monsanto has not had an opportunity to challenge Dr. Knopf's opinions in the MDL.

8       Dr. Knopf's specific causation opinion is inadmissible because it is not the product of a reliable

9   methodology.  Dr. Knopf fails to account for Ms. Salas's actual disease, MCL, which has distinct

10  causes and risk factors compared to other NHL subtypes.  Dr. Knopf also fails to reliably consider and

11  rule out potential alternative causes of Ms. Salas's cancer, including naturally occurring random

12  mutations, which are widely believed to account for approximately 95% of NHL cases.  These failures

13  are even more striking because Dr. Knopf acknowledges that these alternative factors *could* account

14  for Ms. Salas's MCL.  Yet he excludes them without serious investigation based solely on the fact that

15  Ms. Salas was exposed to Roundup.  Dr. Knopf lacks a reliable basis for his conclusion that Roundup

16  is the most likely cause of Ms. Salas's MCL.

17      Dr. Knopf's "always Roundup" opinion is precisely the type courts reject as pure *ipse dixit*.

18  *See, e.g.*, *In re Lipitor Mktg., Sales Practices & Prods. Liab. Litig.*, 892 F.3d 624, 644–45 (4th Cir.

19  2018) (affirming exclusion of specific causation expert who "appeared to simply conclude that 'so long

20  as the patient took Lipitor and developed diabetes, then Lipitor was a substantial contributing factor'").

21  His opinions do not meet the FRE's admissibility standards and should be excluded.

22

**BACKGROUND**

23      According to Plaintiff's Third Amended Expert Designations, if allowed, Dr. Knopf plans to

24  opine "on issues of specific causation regarding whether exposure to glyphosate and/or glyphosate-

25  based formulated products was a substantial factor contributing to Plaintiff Nancy Salas developing

26  [NHL], specifically [MCL]."  *See* Ex. 1, Plaintiff Nancy Salas's Specific Causation Expert Disclosures,

27  at 3–4.

28

---

[1]     All exhibits are attached to the concurrently filed declaration of Jed White.

- 1 -

1    Dr. Knopf is an oncologist who has been designated as an expert in multiple Roundup cases

2    across the country.  Ex. 2, 8/5/22 Knopf Dep. at 13:22–14:11; Ex. 3, 1/20/23 Knopf Dep. at 266:17–21

3    (stating he is currently working on "about 12" other Roundup cases); Ex. 4, Knopf Expert Report at 1.

4    Before being retained in these cases, Dr. Knopf had never conducted scientific research or published

5    peer-reviewed articles relating to Roundup, glyphosate, or any other herbicide or pesticide.  Ex. 2

6    8/5/22 Knopf Dep. at 50:15–17; 51:6–24.  He has never presented on Roundup and NHL.  *Id.* at 52:7–9.

7    In clinical practice, Dr. Knopf does not consider or ask about his patients' Roundup use.  *Id.* at 56:13–17

8    ("I don't think I would say, have you been exposed to Roundup?"), 68:16–22 (stating that he cannot

9    recall for certain whether any of his patients have used Roundup).  Nonetheless, he reaches the

10   conclusion that Roundup was the cause of Ms. Salas's MCL.

11          "Non-Hodgkin's lymphoma" is an umbrella term that describes many different subtypes of

12   cancer involving the lymphocytes, a type of white blood cell.  The different subtypes of NHL can have

13   different presentation, treatments, etiologies, and risk factors.  Ex. 2, 8/5/22 Knopf Dep. at 92:1–5; Ex.

14   4, Knopf Expert Report at 6.  As Dr. Knopf acknowledges, different subtypes of NHL result from

15   different genetic mutations that happen at different phases of lymphoma growth.  Ex. 4, Knopf Expert

16   Report at 6.  In July 2020, Ms. Salas was diagnosed with MCL, a rare subtype of NHL.  Ex. 3, 1/20/23

17   Knopf Dep. at 343:25–344:2.  According to Dr. Knopf, MCL represents only approximately 3–5% of

18   NHL cases.  Ex. 2, 8/5/22 Knopf Dep. at 65:15–17; Ex. 4, Knopf Expert Report at 6.

19          Dr. Knopf purports to engage in a differential diagnosis (also known as a "differential etiology")

20   in reaching his specific causation opinion, which ordinarily requires an expert to determine possible

21   causes of a plaintiff's injury and then eliminating, or "ruling out," potential causes to reach the most

22   likely cause.  *See Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057 (9th Cir. 2003) (citing

23   *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999)).

24          The analysis Dr. Knopf performed, however, is fundamentally different from any differential

25   diagnosis that courts have admitted as a reliable specific causation analysis.  In contrast to an accepted

26   differential diagnosis, Dr. Knopf lacks a reliable basis to "rule in" Roundup and fails to reckon with

27   the other possible causes of Ms. Salas's MCL in a non-conclusory manner.  Dr. Knopf concludes that

28   Roundup is the most likely cause of Ms. Salas's MCL by blindly relying on the same flawed studies

1  the general causation experts rely on and information from Plaintiff's counsel.

2  　　　After "ruling in" Roundup based on this flawed and conclusory reasoning, Dr. Knopf then

3  applies a results-oriented approach, which largely ignores other known NHL risk factors, despite his

4  acknowledgement of other potential causes of NHL.  Rather than analyzing which of these risk factors

5  is the most likely cause using scientific principles, Dr. Knopf rules out every other possible cause of

6  Ms. Salas's MCL based solely on the fact that she was exposed to Roundup.  *See* Ex. 4, Knopf Expert

7  Report at 11–13.  As Dr. Knopf explained during his deposition, he "went through all the associations"

8  between possible causes and simply decided he "thought Roundup was more likely than not a

9  substantial cause" of Ms. Salas's MCL without any other scientific analysis.  Ex. 3, 1/20/23 Knopf

10  Dep. at 379:23–380:5.  According to Dr. Knopf, if a plaintiff is exposed to Roundup, that fact alone

11  automatically excludes the possibility of any other alternative cause.  This is not science and does not

12  constitute an admissible specific causation methodology under Ninth Circuit law.

**LEGAL STANDARD**

14  　　　A proposed expert witness must possess "knowledge, skill, experience, training, or education"

15  sufficient to qualify him as an expert on the subject to which his testimony relates.  Fed. R. Evid. 702.

16  When an expert's field of expertise is not related to the subject on which he seeks to offer testimony,

17  such testimony is inadmissible.  *See White v. Ford Motor Co.*, 312 F.3d 998, 1008–09 (9th Cir. 2002).

18  Apart from qualifications, expert testimony must be (1) based upon sufficient facts or data, (2) the

19  product of reliable principles and methods, and (3) the result of applying those principles and methods

20  reliably to the facts of the case.  Fed. R. Evid. 702.  The trial judge is charged with the responsibility

21  of acting as a gatekeeper to "ensure that any and all scientific testimony … is not only relevant, but

22  reliable."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  The proponent of the

23  expert bears the burden of proving that the expert's proffered testimony is admissible.  *See, e.g., Cooper*

24  *v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

**ARGUMENT**

26  　　　Dr. Knopf's specific causation opinion is inadmissible because it is based on a results-

27  oriented analysis, not a reliable or principled differential diagnosis.  While a differential diagnosis may

28  be admissible methodology for determining the most likely cause of a plaintiff's disease, courts exclude

1   the opinions of experts who, like Knopf here, perform "diagnoses that are scientifically invalid."

2   *Glasetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001).   In the first step of a

3   differential diagnosis, a physician compiles "a comprehensive list" of potential causes of the plaintiff's

4   injury (often referred to as "ruling in").  *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1058 (9th Cir.

5   2003).  The physician then engages "in a process of elimination, eliminating hypotheses on the basis

6   of a continuing examination of the evidence so as to reach a conclusion as to the most likely cause" of

7   the plaintiff's injury (often referred to as "ruling out").  *Id.*

8            Trial courts must "delve into the particular witness's method of performing a differential

9   diagnosis to determine if his or her ultimate conclusions are reliable."  *Poust v. Huntleigh Healthcare*,

10  998 F. Supp. 478, 496 (D.N.J. 1998).  For a differential diagnosis to be reliable, "the expert must

11  explain why alternative hypotheses as to causation are ruled out using scientific methods and

12  procedures.  *Luttrell v. Novartis Pharms. Corp.*, 894 F. Supp. 2d 1324, 1338 (E.D. Wash. 2012), *aff'd*,

13  555 Fed. App'x 710 (9th Cir. 2014).

14           Dr. Knopf did not perform a reliable differential diagnosis, and thus lacks a reliable

15  basis for his conclusion that Roundup was a significant factor in causing Ms. Salas's MCL.  He lacks

16  a reliable basis to rule in Roundup and pays only lip service to alternative causes of Ms. Salas's MCL

17  before quickly dismissing them without applying any reasoning to rule them out.  He also does not

18  consider whether Ms. Salas's MCL might have been caused due to random replicative errors, which is

19  by far the most common cause of all NHL diagnoses.  This scientifically invalid "methodology"

20  dictates that Dr. Knopf's testimony must be excluded.

21  **A.  DR. KNOPF FAILS TO RELIABLY "RULE IN" ROUNDUP AS A POTENTIAL
        CAUSE OF PLAINTIFF'S NHL.**

22

23      Dr. Knopf has no reliable basis to "rule in" Roundup exposure as a potential cause of Ms.

24  Salas's MCL, making his testimony inadmissible.  *Clausen*, 339 F.3d at 1057–58.  "[B]efore a

25  competing cause should be considered relevant to a differential diagnosis, there must be adequate

26  evidence that it *is* a cause of the disease."  National Research Council, Reference Manual on Scientific

27  Evidence (3d ed. 2011) at 618 n.213 (citations omitted).  Put differently, the first step in a differential

28  diagnosis is about general causation—a possible cause can only be ruled in if it is "actually … capable

1   of causing the injury." *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1413 (D. Or. 1996)

2   (quotation and emphasis omitted). "[T]estimony that rules in a potential cause that is *not* so capable is

3   unreliable." *Clausen*, 339 F.3d at 1058 (citation omitted); *Glasetter*, 252 F.3d at 989 (affirming district

4   court's exclusion of plaintiff's expert witness because data witness relied upon "[did] not demonstrate

5   to an acceptable degree of medical certainty" that the product at caused plaintiff's injury, and therefore

6   the witness "lacked the proper basis for 'ruling in'" the product as a potential cause of plaintiff's injury).

7     Dr. Knopf cannot reliably rule in glyphosate as a cause of Ms. Salas's MCL because he has no

8   quantitative understanding of her absorbed dose of glyphosate—*i.e.*, the amount of glyphosate to which

9   she was exposed that was actually absorbed into her skin. Dr. Knopf made no attempt to quantify Ms.

10  Salas's Roundup exposure. He instead bases his exposure conclusions, and therefore his causation

11  conclusions, solely on an "estimate" given to him by Plaintiff's counsel. Ex. 3, 1/20/23 Knopf Dep. at

12  330:18–21. Indeed, he admits that in forming his opinions, he had simply "convinced [him]self that

13  [Ms. Salas] had a substantial terminal exposure to Roundup." *Id.* at 336:4–6.

14    Dr. Knopf acknowledged that knowing the absorbed amount of Roundup would be helpful in

15  determining whether Roundup was a substantial contributing factor to a patient's NHL. *Id.* at

16  327:22–328:14. Courts from around the country have ruled that assessing the amount of a substance

17  actually absorbed into the body is critical when performing a specific causation analysis. *See McClain*

18  *v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005) ("Dose is the single most important

19  factor to consider in evaluating whether an alleged exposure caused a specific adverse effect."); *Pluck*

20  *v. BP Oil Pipeline Co.*, 640 F.3d 671 (6th Cir. 2011) (excluding an expert for failing to reliably rule in

21  benzene exposure as a possible cause because the expert "formulated his opinion on dose without any

22  exposure data, only having been told that [Pluck] had been 'heavily' exposed to benzene in her water");

23  *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 770–73 (Tex. 2007) (discussing importance of dose on

24  causation inquiry and reversing judgment in Plaintiff's favor following jury trial where Plaintiff did

25  not establish sufficient dose to cause alleged injuries).

26    Despite this, Dr. Knopf made no attempt to calculate Ms. Salas's actual absorbed dose of

27  Roundup. He did not speak with Ms. Salas, her doctors, or any member of her in reaching his

28  conclusions. Ex. 3, 1/20/23 Knopf Dep. at 328:15–329:8. Instead, his analysis rests on an "estimate"

1   of Ms. Salas's exposure from Plaintiff's counsel and nebulous recollections of cherry picked studies—

2   McDuffie 2001 and Eriksson 2008—purporting to show an increased risk of NHL among individuals

3   exposed to glyphosate more than two days per year or more than 10 days in their lifetime.  *Id.* at

4   330:18–21 (acknowledging that he did not interview Ms. Salas about her days of exposure and relied

5   instead on an "estimate" he received from Plaintiff's counsel); Ex. 4, Knopf Expert Report at 10.  This

6   lack of reliable calculations and use of selectively chosen studies is unreliable.

7          Dr. Knopf further lacks a reliable basis to conclude that Roundup is capable of causing MCL.

8   Dr. Knopf relies only on Plaintiff's general causation experts' opinions, which are unreliable for the

9   reasons explained in Monsanto's motion to exclude Plaintiff's general causation experts.  *See* Ex. 2,

10  8/5/22 Knopf Dep. at 102:11–103:11 (explaining that, because he was a specific causation expert, not

11  a general causation expert, he relied on the conclusions of the general causation experts and did not

12  review the materials they cited as closely as he would have if he were retained as a general causation

13  expert); *see generally* Monsanto's Motion to Exclude General Causation Experts.  For the reasons

14  explained in Monsanto's motion to exclude Plaintiffs' general causation experts, and incorporated here

15  by reference, Dr. Knopf lacks a sufficient basis to conclude that NHL is capable of causing NHL, and

16  thus he lacks grounds to "rule in" Roundup at the first step of his analysis.

17         In addition, Dr. Knopf's "ruling in" of Roundup is unreliable for another reason—he fails to

18  account for Ms. Salas's actual disease, MCL.  Dr. Knopf relies exclusively on generic studies about

19  NHL, not specific studies about MCL, despite the fact he acknowledges that different subtypes of NHL

20  can have different etiologies and risk factors and that MCL is rare.  *See* Ex. 2, 8/5/22 Knopf Dep. at

21  92:1–19, 198:22–199:4; Ex. 4, Knopf Expert Report at 6 ("[MCL] is a rarer subtype of B cell NHL

22  representing 3% of all B-cell NHL.").  Dr. Knopf did not rely on any studies that show a relationship

23  between Roundup and MCL specifically, and he stated that he had to "impute" causation "in proportion

24  to the frequency of non-Hodgkin's lymphomas" because MCL is a "less common subtype."  Ex. 2,

25  8/5/22 Knopf Dep. at 115:11–20.  Dr. Knopf's failure to account for Ms. Salas's specific disease is

26  grounds for exclusion.  *See, e.g.*, *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 585–86 (5th Cir.

27  2004) (affirming exclusion of expert where "there are no epidemiological studies supporting a

28  correlation between the suggested causative agent and the type of cancer experienced by the plaintiff");

1   *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 270 (2d Cir. 2002) (affirming exclusion of

2   expert who relied on articles connecting solvent exposure to "symmetrical polyneuropathy only, not .

3   . . the asymmetrical symptoms of which [plaintiff] complained"); *Allen v. Pa. Eng'g Corp.*, 102 F.3d

4   194, 197 (5th Cir. 1996) (holding that evidence suggesting a connection between ethylene oxide and

5   lymphatic and hematopoietic cancers was "not probative on the causation of brain cancer"); *Burst v.*

6   *Shell Oil Co.*, C.A. No. 14–109, 2015 WL 3755953, at \*8, \*13 (E.D. La. June 16, 2015) (excluding

7   general causation opinions for lack of fit where "many of the studies on which [the proffered expert]

8   relied did not examine the risk for AML specifically, and instead examined the risk of leukemia

9   generally or other specific types of leukemia.").

10          In all, the Court should exclude Dr. Knopf's specific-causation opinions because he failed to

11   reliably rule in glyphosate as a cause of Plaintiff's NHL as required by a differential etiology

12   methodology.

13   **B.   DR. KNOPF FAILS TO RELIABLY "RULE OUT" OTHER POTENTIAL**
         **ALTERNATIVE CAUSES OF PLAINTIFF'S NHL.**
14

15          Dr. Knopf also fails to complete the necessary second step of the differential etiology

16   methodology:  even if he had properly "ruled in" glyphosate exposure as a cause of Ms. Salas's NHL,

17   he did not attempt to "rule out"—or even consider—numerous potential causes of Ms. Salas's MCL

18   other than Roundup, which renders his opinions unreliable. *See Clausen*, 339 F.3d at 1057; *Lipitor*,

19   892 F.3d at 645 ("*Daubert* requires more" than an export "dismiss[ing] other possible causes in favor

20   of [the product at issue] in a cursory fashion."); *Westberry*, 178 F.3d at 265 ("A differential diagnosis

21   that fails to take serious account of other potential causes may be so lacking that it cannot provide a

22   reliable basis for an opinion on causation.").

23          In contravention of this case law and accepted medical and scientific principles, Dr. Knopf

24   failed to address potential causes of Ms. Salas's MCL other than Roundup.  To the contrary, Dr.

25   Knopf's analysis fails to actually rule anything out at all.  Instead, Dr. Knopf explained that he "went

26   through all the associations between" Ms. Salas's other risk factors and simply concluded that he

27   "thought" Roundup was more likely than not the substantial cause from the full list of possibilities.  Ex.

28   3, 1/20/23 Knopf Dep. at 379:23–380:13.  According to Dr. Knopf, one cannot identify a single cause

1    of a patient's cancer, so instead he looked at the full scope of potential causes and selected the one that,

2    according to him, had the strongest association. *Id.*

3         This analysis does not comport with sound differential diagnoses.  He skips the second step

4    entirely, failing to consider and rule out competing causes, instead pursuing a wholly results-oriented

5    approach to select Roundup out of the lineup of potential explanations for Ms. Salas's MCL, all of

6    which Dr. Knopf lacked a valid scientific reason to "rule out."  For example, Dr. Knopf admits that

7    Ms. Salas has a history of smoking, but states that the relationship between smoking and NHL is not

8    well established, despite having included smoking as a risk factor for NHL in previous expert reports.

9    Ex. 3, 1/20/23 Knopf Dep. at 359:19–360:3.  Similarly, Dr. Knopf admits that Ms. Salas was obese and

10   that there is a "mild" association between obesity and NHL.  *Id.* at 361:10–17.  When asked how he

11   ruled out obesity as a factor, he simply stated that "in [his] head [he has] not really considered obesity

12   a huge risk for [NHL]."  *Id.* at 361:18–362:11.

13        And just as he fails to engage with Ms. Salas's known alternative risk factors, Dr. Knopf takes

14   an equally unscientific and dismissive approach to the random genetic mutations responsible for most

15   NHL cases:  he simply ignores the prospect.  Dr. Knopf admits cell replication errors naturally occur

16   when cells divide, which can lead to genetic mutations and ultimately, in some cases, cancer.  Ex. 2,

17   8/5/22 Knopf Dep. at 117:15–25, 119:3–10.  He also admits that cancers can occur without any

18   environmental input and that a patient in the same situation as Ms. Salas who had never been exposed

19   to Roundup might have developed NHL.  Ex. 2, 8/5/22 Knopf Dep. at 117:22–25, 120:10–13; Ex. 3,

20   1/20/23 Knopf Dep. at 389:2–6.  Yet, his testimony does not indicate that he seriously considered

21   random replicative DNA errors as a cause of Ms. Salas's MCL.  The Court should exclude his opinions

22   as inconsistent with accepted science.  *See Hall v. Conoco Inc.*, 886 F.3d 1308, 1314 (10th Cir. 2018)

23   (affirming exclusion of expert's differential diagnosis due to the expert's "failure to rule out idiopathic

24   causes," a "fatal error tainting the differential diagnosis"); *G v. Fay Sch., Inc.*, 282 F. Supp. 3d 381,

25   391 (D. Mass. 2017) (excluding expert opinions on causation because, among other reasons, the expert

26   "neglect[ed] to account for the possibility of an idiopathic etiology"); *Pritchard v. Dow Agro Sciences*,

27   705 F. Supp. 2d 471, 492 (W.D. Pa. 2010) (excluding specific causation opinion because "the presence

28   of a known risk factor" for NHL was an insufficient basis "for ruling out idiopathic origin"), *aff'd*, 430

1  Fed. App'x 102 (3rd Cir. 2011).

2      Dr. Knopf is unable to offer any reliable method for placing Ms. Salas in the category of cases

3  for which the cause of his NHL is known versus the much larger category of NHL cases where the

4  idiopathy is unknown.  Thus, any such testimony cannot possibly be helpful to a jury tasked with that

5  very assessment.

6      Taken as a whole, Dr. Knopf's reasoning closely tracks that of the experts excluded in *Lipitor*,

7  whose conclusions "focused almost exclusively on the fact that [the plaintiff] took the drug and later

8  developed the disease, rather than explaining what led her to believe that it was a substantial

9  contributing factor as compared to other possible causes."  892 F.3d at 645.  Here, as in *Lipitor*, Dr.

10  Knopf's expert report simply "dismiss[es] other possible causes in favor of [Roundup] in a cursory

11  fashion that appeared closer to an *ipse dixit* than a reasoned scientific analysis."  *Id.*  Ultimately, Dr.

12  Knopf engages in an "always Roundup" methodology that determines Roundup to be the cause no

13  matter the exposure.  But exposure alone is not enough, and Dr. Knopf is not able to explain with any

14  coherent scientific methodology why this is enough evidence for him to conclude that Roundup is the

15  cause of Ms. Salas's MCL.

16  **CONCLUSION**

17      For the reasons set forth above, the Court should grant Monsanto's Motion to Exclude

18  Testimony of Dr. Kevin Knopf.

19  Dated:  June 16, 2023        Respectfully submitted,

20                  /s/ *Jed P. White*

                Jed P. White

21                  Attorneys for Defendant Monsanto Company

22

23  **CERTIFICATE OF SERVICE**

24      I HEREBY CERTIFY that on this 16th day of June, 2023, a copy of the foregoing was filed

25  with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing

26  parties of record.

27                  /s/ *Jed P. White*

                Jed P. White

28                  Attorneys for Defendant Monsanto Company

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. KEVIN KNOPF