Kyle R. Kasmarick, Attorney No. 6296887
Syregelas & Kasmarick, LLC
19 North Green Street
Chicago, Illinois 60607
(312) 243-0900
kkasmarick@syregelaslaw.com
Counsel for Plaintiff Michele Glavanovits

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | Hearing Date: July 27, 2023 |
| *Michele Glavanovits v. Monsanto, Co.,* Case No. 3:20-cv-01016-VC | Time: 10:00 A.M. |

**PLAINTIFF MICHELE GLAVANOVITS' RESPONSE IN OPPOSITION TO DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF**

## TABLE OF CONTENTS

I. INTRODUCTION ……………………………………………………...............1

II. BACKGROUND ……………………………………………………………….1

III. LEGAL STANDARD …………………………………………………………..2

IV. ARGUMENT……………………………………………………………………...4

    A. Monsanto's Arguments Are Foreclosed By PTO 85 And Applicable Ninth Circuit Decisions ……………………………………………………………4

    B. Dr. Schiff Properly Assessed Glyphosate As A Possible Cause Of Plaintiff's Follicular Non-Hodgkin Lymphoma ………………………….5

    C. Dr. Schiff Properly Assessed Potential Alternative Causes For Plaintiff's Follicular Non-Hodgkin Lymphoma …………………………………….7

V. CONCLUSION …………………………………………………………………10

# TABLE OF AUTHORITIES

**Cases:**

Cooper v. Takeda Pharm. Am., Inc., 239 Cal. App. 4th 555 (Ca. Ct. App. 2015)………………..3

Hardeman v. Monsanto Co., 997 F.3d 941 (9th Cir. 2021) ………………………………………4

In re: Products Liability Litigation, MDL No. 2741……………………………………..Passim

Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557 (8th Cir. 2014) …………………………...3

Messick v. Novartis Pharm. Corp., 747 F.3d 1193 (9th Cir. 2014) …………………………2, 3, 5

Schultz v. Akzo Nobel Paints, LLC, 721 F.3d 426 (7th Cir. 2013) ………………………………3

Wendell v. GlaxoSmithKline, LLC, 858 F.3d 1227 (9th Cir. 2017) …………………………..2, 5

**RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF**

## I. INTRODUCTION

Plaintiff Michele Glavanovits ("Plaintiff"), by and through her undersigned counsel, Syregelas & Kasmarick, LLC, respectfully submits this Response in Opposition to Defendant Monsanto Company's ("Defendant") Motion to Exclude the Testimony of Dr. Ron Schiff. As set forth more fully below, Dr. Schiff is qualified to render an expert opinion regarding the specific cause of Plaintiff's follicular non-Hodgkin lymphoma. Monsanto's Motion mischaracterizes Dr. Schiff's written report and deposition testimony, and disregards and/or misapplies applicable and controlling decisions by this Court and the U.S. Court of Appeals for the Ninth Circuit. As such, Defendant's Motion should be denied.

## II. BACKGROUND

Plaintiff has proffered the expert opinion of Dr. Ron Schiff for purposes of specific causation in her case. Dr. Schiff is Board Certified in internal medicine, medical oncology, and hematology. He graduated from St. Louis University with a Ph.D. in molecular and cellular biology in 1979 and an M.D. in 1980. He also completed a one-year post-doctoral fellowship in molecular and cellular biology, as well as a sub-specialty fellowship in medical oncology and hematology at Memorial Sloan-Kettering Cancer Center from 1983 through 1986. He served as a faculty member in the Department of Medicine, Division of Hematology/Oncology at the Medical University of South Carolina in Charleston from 1986 through 1992, and was in private practice in medical oncology from 1992 until his retirement from active practice in May 2015. He served as the Chair of the Cancer Committee at University Community Hospital and its successor, Florida Hospital Tampa, from January 1985 through April 2014. He began reviewing

1

**RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF**

cases as an expert witness almost 30 years ago in 1990. Kasmarick Declaration, Exhibit 1, Dr. Schiff Report, at 1-3;[1] Exhibit 3, Dr. Schiff Curriculum Vitae.

Dr. Schiff prepared an extensive and detailed report for Plaintiff Michele Glavanovits which reviews in great detail her medical history and then provides comprehensive opinions on diagnosis and staging, treatment, disease status and prognosis, complications, psychological effects, lymphoma caused by Roundup, evaluation of other risk factors, and a conclusion. Dr. Schiff reached his opinions after reviewing Plaintiff's Complaint, Fact Sheet, Deficiency Response and comprehensive medical records from Northwestern Medicine and DuPage Medical Group. Kasmarick Declaration, Exhibit 1, Dr. Schiff Report, at 3.

### III.   LEGAL STANDARD

The Ninth Circuit has mandated that "Rule 702 should be applied with a 'liberal thrust' favoring admission." Wendell v. GlaxoSmithKline, LLC, 858 F.3d 1227, 1232 (2017) (quoting Messick v. Novartis Pharm. Corp., 747 F.3d 1193, 1196 (9th Cir. 2014)). Expert testimony is admissible under Rule 702 when based on a reliable differential diagnosis. Id., at 1235 ("Nothing in *Daubert*, or its progeny, properly understood, suggests that the most experienced and credentialed doctors in a given field should be barred from testifying based on a differential diagnosis."). In conducting a differential diagnosis,[2] an expert considers the "pertinence of all potential causes, then rules out the ones as to which there is no plausible evidence of causation, and then determines the most likely cause among those that cannot be excluded." Id., at 1234.

---

[1] All referenced exhibits are supported by the attached Declaration of Kyle R. Kasmarick.
[2] See Wendell, 858 F.3d at 1234 ("When performing a differential diagnosis, [the expert witness] first assumes the pertinence of all potential causes, then rules out the ones as to which there is no plausible evidence of causation, and then determines the most likely cause among those that cannot be excluded. We have recognized that this method of conducting a differential diagnosis is scientifically sound." (internal citations omitted)

2

**RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF**

The Ninth Circuit also "consistently recognize[s] the difficulties in establishing certainty in the medical sciences." Messick v. Novertis Pharm Corp., 747 F.3d at 1197-98 (internal citations omitted). Therefore, it is not necessary that "an expert be able to identify the sole cause of a medical condition in order for his or her testimony to be reliable. It is enough that medical condition be a substantial causative factor." Id., at 1199; See also, Schultz v. Akzo Nobel Paints, LLC, 721 F.3d 426, 434 (7th Cir. 2013) ("[A] reliable expert should consider alternative causes, they do not require an expert to rule out every alternative cause."); Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557, 563 (8th Cir. 2014) ("However, we have consistently ruled that experts are not required to rule to all possible causes when performing the differential etiology analysis.") (internal citations omitted).

The relevancy of an expert opinion is governed by California law. Messick, 747 F.3d at 1196-97. Under California law, "[t]he plaintiff must offer an expert opinion that contains a reasoned explanation illuminating why the facts have convinced the expert, and therefore convince the jury, that its more probable than not the negligent act was a cause-in-fact of the plaintiffs injury." Cooper v. Takeda Pharm. Am., Inc., 239 Cal. App. 4th 555, 578 (Ca. Ct. App. 2015) (internal citations omitted). "Under the applicable substantial factor test, it is not necessary for a plaintiff to establish the negligence of the defendant as the proximate cause of injury with absolute certainty so as to exclude every other possible cause of a plaintiff's illness, even if the expert's opinion was reached by performance of a differential diagnosis." Id. "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm." Id., at 595.

3

**RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF**

## IV. ARGUMENT

### A. Monsanto's Arguments Are Foreclosed By PTO 85 And Applicable Ninth Circuit Decisions

The Court has already recognized that Plaintiffs in the Roundup litigation are entitled to call qualified expert witnesses to testify with respect to the issue of specific causation.[3] PTO 85. Dr. Schiff is Board Certified in Internal Medicine, Medical Oncology and Hematology, and completed a three-year fellowship at Memorial Sloan-Kettering Institute before continuing his career in both private and academic medicine with a focus on lymphoma. Kasmarick Declaration, Exhibit 1, Dr. Schiff Report, at 1-3.  Under the standards articulated by this Court, Dr. Schiff is qualified "in reliance on his clinical experience, review of plaintiffs' medical records, and evaluation of the general causation evidence, to conclude that an 'obvious and known risk factor' is the cause of that plaintiff's disease." PTO 85, at 5.

In the specific context of a product liability claim against Monsanto seeking damages for non-Hodgkin lymphoma caused by Roundup, the Ninth Circuit recently upheld this Court's decision to admit expert testimony opining that Roundup was a "substantial factor" in the development of the plaintiff's non-Hodgkin lymphoma. Hardeman v. Monsanto Co., 997 F.3d 941, 966 (9th Cir. 2021).  The Appellate Court noted the admission of such testimony was not an "outlier" position, but instead represented a mainstream application of the Federal Rules of Evidence in relation to expert witnesses. Id., at 961.

Dr. Schiff has offered an opinion in Plaintiff's case that is materially identical to the specific causation testimony admitted into evidence in Hardeman (both at the trial court level and

---

[3] Consistent with this Court's direction not to re-litigate issues previously ruled upon by the Court, but in order to fully preserve the appellate record, Plaintiff hereby incorporates by reference any and all responses to Defendant's motions and the Court's Pre-Trial Orders on same.

**RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF**

as reviewed on appeal) and deemed to be admissible in both <u>Wendell</u> and <u>Messick</u>. Based on his review of the factual record, coupled with his knowledge of the general causation research regarding non-Hodgkin lymphoma and Roundup, Dr. Schiff concluded "to a reasonable degree of scientific and medical certainty, exposure to Roundup caused or contributed to cause Ms. Glavanovits' non-Hodgkin lymphoma." Kasmarick Declaration, Exhibit 1, Dr. Schiff Report, at 35. Dr. Schiff ruled-in Roundup as a probable substantial factor in causing Plaintiff's follicular non-Hodgkin lymphoma given her exposure history, medical record, and the general causation studies that have attributed non-Hodgkin lymphoma to Roundup exposure. He also ruled-out other potential causes that could be gleaned from the evidentiary record and discussed a number of other conceivable risk factors, ultimately concluding that none were the cause of Ms. Glavanovits follicular non-Hodgkin lymphoma.

In short, Dr. Schiff followed the guidelines set forth in pretrial order No. 85 and the Ninth Circuit in arriving at his opinion. As such, Defendant's effort to recharacterize issues and circumvent these binding decisions should be rejected.

> **B.    Dr. Schiff Properly Assessed Glyphosate As A Possible Cause Of Plaintiff's Follicular Non-Hodgkin Lymphoma**

In its Motion, Defendant attempts to belittle Dr. Schiff's analysis of Plaintiff's glyphosate exposure, claiming he did not conduct an individualized analysis of her Roundup use. Contrary to Defendant's suggestion, the evidentiary record is replete with specifics from Dr. Schiff regarding Plaintiff's "extensive" glyphosate exposure.

Dr. Schiff's report describes the following in relation to Plaintiff's exposure to Roundup:

> "Ms. Glavanovits sprayed Roundup Grass and Weed Killer to control weeds on her residential property once per week during the spring, summer, and fall, between March and October, from 1991 until 2019…She discontinued using Roundup only when she was

**RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF**

diagnosed with her non-Hodgkin lymphoma.  With a total of 29 years of exposure through spraying once weekly for seven months, from March until October, each year at her residence, for a total of 812 Roundup exposures, it is therefore my opinion that Ms. Glavanovits' exposure to Roundup has been extensive."

Kasmarick Declaration, Exhibit 1, Dr. Schiff Report, at 25.

Similarly, during his deposition, Dr. Schiff offered the following testimony regarding Plaintiff's exposure levels:

> "I had given you cumulative as 812 exposures.  And as frequency would simply be 812 divided by 29, which is 28 exposures per year, which matches up with weekly exposure for the seven month—seven months of the growing season in the Chicago area which, by the way, I know to be generous.  So the deal with that is that even if you say that each exposure was just 15 minutes, that's still over 200 hours of lifetime exposure over a period of 29 years…So this was a tremendous amount of exposure over a prolonged period of time."

Exhibit 2, Dr. Schiff Deposition, at 104:13-105:9.

Furthermore, Dr. Schiff's report and deposition testimony note the linkage as documented in the general causation literature between Plaintiff's particular type of follicular non-Hodgkin lymphoma and Roundup exposure:

> "The three large studies which presented subtype-specific risk data have focused on diffuse large B-cell lymphoma, follicular lymphoma, and chronic lymphocytic leukemia/small lymphocytic lymphoma.  One of these studies has in fact identified a statistically significant association between glyphosate exposure and follicular lymphoma, the specific non-Hodgkin lymphoma subtype in Ms. Glavanovits' case."

Kasmarick Declaration, Exhibit 1, Dr. Schiff Report, at 27.

> "[I] compared [Plaintiff's] exposure with the threshold exposure levels in the literature, Roundup exposure levels that are associated with a statistically significant increased risk of developing non-Hodgkin lymphoma over all or one or more of its subtypes…But the relevant point is that you get an increased risk of developing non-Hodgkin lymphoma from a relatively modest exposure frequency duration or a cumulative level, and she was way, way, way higher than any of those document cut points.  So this is not just me looking at how much exposure she had and saying, gee, that's a lot.  It's looking at the exposure thresholds associated with an increased lymphoma which is in the literature."

**RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF**

Exhibit 2, Dr. Schiff Deposition, at 102:15-103:10.

Lastly, Dr. Schiff directly addressed the issue of Plaintiff's absorbed dosage of glyphosate during his deposition:

> "[Internalized dosage] doesn't matter because the exposure thresholds in the literature that are associated with the increased risk are also not expressed by measurements of serum or urine or tissue concentrations.
>
> I've made my comparison to data that are supported in the literature and documented and in fact reviewed by others in the context of old analysis, meta-analysis and so on.
>
> And I also want to make another point, and this is extremely important. In coming to IARC's conclusion that glyphosate is a Group 2A probable human carcinogen, they did not put an exposure threshold qualification on their opinion. They did not say you have to have this and this amount of exposure or more in order for us to consider this drug probably carcinogenic to humans. Their opinion was broader than that, and that cannot be separated out from the concept of how important the quantitative aspects of [Plaintiff's] exposure are."

Kasmarick Declaration, Exhibit 1, Dr. Schiff Report, at 105:15-106:10.

Dr. Schiff's opinions do not lack foundation – Dr. Schiff carefully assessed Plaintiff's glyphosate exposure and determined it was a substantial factor in causing her follicular non-Hodgkin lymphoma. While his opinions and testimony may be the subject of cross-examination at trial, they do not rise to the level of disqualifying Dr. Schiff as an expert witness.

### C. Dr. Schiff Properly Assessed Potential Alternative Causes For Plaintiff's Follicular Non-Hodgkin Lymphoma

Defendant's Motion erroneously asserts Dr. Schiff did not "even consider" potential alternative causes of Plaintiff's follicular non-Hodgkin lymphoma – this not only misrepresents the record but completely warps the testimony of Dr. Schiff. In addition to properly assessing Plaintiff's glyphosate exposure, Dr. Schiff properly assessed other risk factors, including

potential idiopathic causes, for Plaintiff's follicular non-Hodgkin lymphoma as required under the differential diagnosis methodology.

Specifically, Dr. Schiff examined Plaintiff's family history, which includes a sister that developed Hodgkin lymphoma at 18. Dr. Schiff found that although family history is a risk factor it is not a causative one in the case of Plaintiff's follicular non-Hodgkin lymphoma, as the family history is negative for hematologic malignancies:

> "A family history of any hematologic malignancy, non-Hodgkin lymphoma, multiple myeloma, or Hodgkin lymphoma in a first-degree relative is associated with an increased risk of developing non-Hodgkin lymphoma overall, and a family history of any hematologic malignancy, non-Hodgkin lymphoma, or multiple myeloma in a first-degree relative is associated with an increased risk of developing follicular lymphoma. However, the occurrence of Hodgkin lymphoma in a first-degree relative, female or male, does not appear to be a risk factor for the development of follicular lymphoma."

Kasmarick Declaration, Exhibit 1, Dr. Schiff Report, at 29.

Dr. Schiff further explained during his deposition why Plaintiff's family history is not directly causative:

> "[T]here are many hematologic malignancies…But if you separate out Hodgkin lymphoma, that is not a risk factor for the development of follicular lymphoma. In other words, if a first-degree relative has Hodgkin, it doesn't predispose a plaintiff like Ms. Glavanovits or another individual who is a first-degree relative to develop follicular lymphoma…So when you break out Hodgkin lymphoma, that's not a risk factor by itself, and that's documented by InterLymph."

Exhibit 2, Schiff Deposition, at 126:4-23.

Likewise, Dr. Schiff examined and assessed additional risk factors as potential causes of Plaintiff's follicular non-Hodgkin lymphoma, including Plaintiff's age, gender, lack of occupational carcinogenic exposures, lack of smoking history, hypogammaglobulinemia, absolute CD4 count and body mass index. Kasmarick Declaration, Exhibit 1, Dr. Schiff Report,

at 29-31. After working through, and finding no substance to, the aforementioned risk factors, Dr. Schiff ultimately concluded the following:

> "Other than Roundup exposure and possibly hypogammaglobulinemia, no potential risk factors for the development of follicular lymphoma, such as predisposing medical conditions (including established immunodeficiency states, autoimmune disorders, and specific infections); family history of malignancies of the blood, bone marrow, or lymphatic system; smoking, or other candidate carcinogenic exposures, are identified in Ms. Glavanovits' medical records or other available documentation."

Kasmarick Declaration, Exhibit 1, Dr. Schiff Report, at 29.

Finally, Dr. Schiff relied on medical literature and epidemiological studies to support his findings that other risk factors are not as much of a significant contributing factor as Roundup is to causing NHL. Dr. Schiff's testimony in this regard, which Defendant did not quote, is as follows:

> "The exposure to another lymphoma carcinogen would not have mitigated, negated or neutralized her extensive exposure to Roundup by quantitative criteria, nor its effect on her risk of developing non-Hodgkin lymphoma. So, you know, I mean there is this principle of multifactorial causation of diseases that has been accepted by epidemiologists, oncologists, pathologists for many, many years. And the finding of more than one potential cause, and in this case there hasn't been one in terms of environmental or occupational carcinogen, would not override the role of a documented lymphoma carcinogen in the causation of an individual patient's or plaintiff's lymphoma…
>
> [Plaintiff had] extensive glyphosate exposure, Roundup exposure, by quantitative as well as qualitative criteria, and she still developed a follicular lymphoma. So you're asking me the hypothetical of what if another candidate lymphoma carcinogen was identified. That would be fine, but that would not take the causative role of Roundup out of consideration."

Exhibit 2, Schiff Deposition, at 133:21-135:4.

The position taken by Dr. Schiff as to the (undocumented) possibility that some other factor may have contributed to Plaintiff's follicular non-Hodgkin lymphoma is not a basis for excluding his testimony but instead underscores its useful and credible nature. Moreover, the

9

**RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF**

opinions expressed by Dr. Schiff are wholly consistent with the repeated rulings of the Ninth Circuit. Thus, Defendant's Motion should be denied.

## V. CONCLUSION

The arguments set forth by Defendant for excluding the testimony of Dr. Schiff go to the weight of Dr. Schiff's opinions as opposed to admissibility under Rule 702. Based on the foregoing, the Court should deny Defendant Monsanto Company's Motion to Exclude Testimony of Dr. Ron Schiff.

DATED:    June 29, 2023                    Respectfully submitted,

                                           */s/ Kyle Kasmarick*

                                           Kyle R. Kasmarick, Attorney No. 6296887
                                           Syregelas & Kasmarick, LLC
                                           19 North Green Street
                                           Chicago, Illinois 60607
                                           (312) 243-0900
                                           kkasmarick@syregelaslaw.com
                                           Counsel for Plaintiff Michele Glavanovits

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June 2023, a copy of the foregoing was filed with the Clerk of the Court through CM/ECF system, which sent notice of the filing to all appearing parties of record.

                                           */s/ Kyle Kasmarick*

                                           Kyle R. Kasmarick, Attorney No. 6296887
                                           Syregelas & Kasmarick, LLC
                                           19 North Green Street
                                           Chicago, Illinois 60607
                                           (312) 243-0900
                                           kkasmarick@syregelaslaw.com
                                           Counsel for Plaintiff Michele Glavanovits