**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 <br><br> Case No.: 3:16-md-02741-VC |
| *Estate of Kenzie Elizabeth Murdock, et al. v. Monsanto Co.*, <br> Case No. 5:20-cv-00023 | **DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF THOMAS R. BUTTS, PH.D.** <br><br> Hearing: <br> Date:    July 27, 2023 <br> Time:   10:00 a.m. <br> Place:   San Francisco Courthouse, <br>             Courtroom 4 – 17th Floor |

OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DR. THOMAS BUTTS

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on July 27, 2023 at 10:00 a.m., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Opposition to Plaintiffs' Motion to Exclude Testimony of Dr. Thomas Butts.

Dated:  June 29, 2023             Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

**TABLE OF CONTENTS**

**Page**

I. Introduction ..............................................................................................................1

II. Dr. Butts' Background and Opinions ......................................................................3

III. Legal Standard ........................................................................................................4

IV. Argument ................................................................................................................4

    A. Dr. Butts is Qualified to Offer Expert Testimony in this Case ............................4

    B. Dr. Butts' Opinions Are the Product of Reliable Principles and Methods ............7

    C. Dr. Butts' Testimony is Relevant, Proper, and Will Aid the Jury .........................9

V. Conclusion ............................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Caballero v. Monsanto*,
  Order on Pretrial Matters Including Summary Judgment, Sargon Challenges,
  Motions in Limine, Requests for Judicial Notice ............................................11

*D. Johnson v. Monsanto*,
  5/17/18 Order on Monsanto's Omnibus Sargon Motion ................................11

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)................................................................................1, 4, 7

*Elosu v. Middlefork Ranch Inc.*,
  26 F.4th 1017 (9th Cir. 2022) ...........................................................................6

*Ferro et al., v. Monsanto Company*,
  Order Regarding the Parties Motions to Exclude Experts...............................11

*L. Johnson v. Monsanto*,
  6/9/22 Trial Tr. at 12:5-20:3 .............................................................................11

*Moses v. Payne*,
  555 F.3d 742 (9th Cir. 2009) ...........................................................................10

*Neal v. Monsanto*,
  3/22/22 Hearing Tr. at 190:22-192:18 .............................................................11

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) .............................................................................6

*Stevens v. Keller Ladders*,
  1 Fed. Appx. 452 (6th Cir. 2001).....................................................................11

*Wyzik v. Monsanto Co.*,
  10/27/22 Trial Tr. at 220:10-221:19, 224:4-12................................................11

**Court Rules**

Fed. R. Evid. 702, 2000 ........................................................................................4

Rule 702 ...............................................................................................2, 4, 9, 10

## I. INTRODUCTION

Monsanto has designated Dr. Thomas R. Butts, an accomplished weed scientist, to opine on, among other things, (1) the impact and control of weeds and invasive plants and the use of herbicides, including glyphosate-based herbicides, in agricultural, urban, industrial, and residential settings, and (2) the extent of Ms. Murdock's alleged exposure to Roundup. **Ex. 1**, Monsanto's Specific Causation Expert Disclosure, at 3-4; **Ex. 2**, Dr. Butts' Expert Report. Dr. Butts' expertise and experience include extensive knowledge regarding application techniques for herbicides, including glyphosate-based products, herbicide spray equipment, the ecology of weed growth, and herbicides' physical and chemical properties. Nonetheless, Plaintiffs' Motion to Exclude Dr. Butts ("Mot.") takes the remarkable position that Dr. Butts is not qualified and will not offer helpful expert testimony in a trial that will center on Ms. Murdock's use of Roundup, a glyphosate-based herbicide. Plaintiffs' Motion is little more than an intentional mischaracterization of Dr. Butts' background and opinions to manufacture a *Daubert* challenge. It should be denied.

*First*, Plaintiffs assert that Dr. Butts is not qualified to offer opinions in four general areas: (1) Ms. Murdock's exposure to glyphosate; (2) the cause of Ms. Murdock's cancer diagnosis; (3) the dangers of glyphosate as a skin irritant; and (4) the effects of tillage on weed management. Mot. at 11-14. But Plaintiffs mischaracterize Dr. Butts' opinions. Dr. Butts is not offering causation opinions on the alleged carcinogenicity of Roundup. Rather, he will offer opinions on the duration and frequency of the Murdock's alleged use and application of Roundup on their farm and Ms. Murdock's purported contact with Roundup during these applications[1]—opinions he unquestionably is qualified to offer given his extensive expertise in weed science and herbicide application. Plaintiffs erroneously discount Dr. Butts' education, training, and experience as a weed scientist. Through this specialized training and experience, Dr. Butts is well qualified to offer expert testimony on all the areas included in his expert report.

---

[1] Because Ms. Murdock was never deposed, the allegations are made by her father, who was responsible for most of the spraying.

- 1 -
OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. THOMAS BUTTS

1     *Second*, Plaintiffs argue that Dr. Butts' opinions are otherwise unreliable because they lack scientifically applied methodology. This argument entirely ignores that Dr. Butts' opinions are grounded in extensive, case-specific preparation and careful, scientific-based analysis derived from his years of experience with weed science. Plaintiffs' position—that Dr. Butts needed to perform specific mathematical calculations, review Ms. Murdock's medical records, and personally visit the Murdock's farm—is mistaken and ignores the robust review Dr. Butts performed to form his opinions, which is more than sufficient to render his opinions admissible under Rule 702.

    *Third*, Plaintiffs contend that Dr. Butts—who holds a Ph.D. in Agronomy/Weed Science and has extensive expertise concerning the use of glyphosate-based herbicides—will not offer opinions that will be helpful to the jury, despite the fact that this trial will center on the Murdock's use of Roundup, a glyphosate-based herbicide. Mot. at 8-9. Weed science involves many technical and scientific considerations, such as the types of herbicides available and commonly used in settings like the Murdocks' farm, how herbicides work, the amount of time it takes to treat various types of properties with herbicides, rates of weed growth and other aspects of weed biology, standard practices for the use of Roundup with other weed control techniques, availability and mechanics of various application methods or equipment, how Roundup affects seasonal weed growth in the relevant geographic area, and the principle of "drift" and how that principle applies to herbicide applications, to name a few. Plaintiffs' contention also disregards that the benefits of herbicides are squarely at issue in this case. Dr. Butts' testimony on the history and benefits of herbicides, like Roundup, is relevant to many of the material issues in this case, including the jury's assessment of Plaintiffs' design-defect claims, negligence claims, and contention that Monsanto employees acted with improper motives. Indeed, courts in the Roundup litigation routinely reject similar challenges to the testimony of weed scientists, and this Court should do so again here.

    Dr. Butts will offer testimony about Roundup's herbicidal properties, registered uses, and use in weed management in light of the growth patterns of weeds in the environments where

1    Ms. Murdock reportedly was exposed to it. Those topics go to the heart of his qualifications, are
2    beyond the common knowledge of jurors, and are directly relevant to the claims in this case.

3    **II.     DR. BUTTS' BACKGROUND AND OPINIONS**

4    Dr. Butts is an experienced weed scientist who presently serves as an assistant professor
5    with the University of Arkansas System Division of Agriculture. **Ex. 2**, Dr. Butts' Expert Report
6    at Ex. A (Dr. Butts' CV). His position is focused on research and extension, emphasizing
7    herbicide application knowledge, safety, and effectiveness. **Ex. 2**, Dr. Butts' Expert Report, at
8    1. He explained that his research involves conducting trials, investigating problems, collecting
9    data, and publishing the results. **Ex. 3**, Dr. Butts' Dep., at 40:8-15. To that end, he has authored
10   or co-authored over 50 peer-reviewed publications and more than 60 research series reports. **Ex.
11   2**, Dr. Butts' Expert Report, at 1. For the extension part of his appointment, Dr. Butts takes his
12   research and makes it available to the general public, like the Murdock family. **Ex. 3**, Dr. Butts'
13   Dep., at 40:16-25. Dr. Butts has authored or co-authored over 50 extension and outreach
14   publications and more than 40 scientific meeting abstracts. **Ex. 2**, Dr. Butts' Expert Report, at
15   1. Additionally, he has "given over 190 extension and invited speaker presentations, produced
16   videos and podcasts, and been mentioned in, quoted in, or authored at least 140 popular press
17   articles." *Id.* Dr. Butts further explained that this outreach allows him "to connect with
18   approximately 20,000 growers, agronomists, consultants, applicators, and homeowners per year
19   regarding weed control and herbicide usage." *Id.* Dr. Butts provides "a handful of guest
20   lectures," and a big part of his position is helping teach graduate students. **Ex. 3**, Dr. Butts' Dep.,
21   at 39:9-21. Dr. Butts has received numerous awards and distinctions for contributions to weed
22   science. **Ex. 2**, Dr. Butts' Expert Report, at 2.

23   Dr. Butts is prepared to opine on the impact of weeds and invasive plants, control
24   methods employed to manage weeds and invasive plants, and the use of herbicides, including
25   glyphosate-based formulated products, in weed management; he will also testify to appropriate
26   application methods and the use and benefits of herbicides in a variety of settings. **Ex. 2**, Dr.
27   Butts' Expert Report, at 2-16. In addition, he has formed opinions about the application methods
28   of herbicides, herbicide spray equipment, herbicides' physical and chemical properties,

- 3 -

1  herbicide drift, and how these concepts apply specifically to Ms. Murdock's alleged use of
2  Roundup. *Id*. at 17-25. His years of research, training, education, experience, and knowledge
3  have prepared him to offer specialized testimony on these specific topics. Contrary to Plaintiffs'
4  contention, these opinions are relevant to Plaintiffs' claims, and the average juror does not
5  possess similar credentials or expertise necessary to understand and evaluate these complex
6  scientific topics.

7  **III.   LEGAL STANDARD**

8  An expert who is qualified "by knowledge, skill, experience, training, or education" may
9  testify in the form of an opinion if their opinion (1) is "based upon sufficient facts or data," (2)
10  is "the product of reliable principles and methods," and (3) the witness has reliably applied their
11  principles and methods to the facts of the case. Fed. R. Evid. 702. The trial judge is charged with
12  the responsibility of acting as a gatekeeper to "ensure that any and all scientific testimony . . . is
13  not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).
14  "Rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a
15  'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended
16  to serve as a replacement for the adversary system.'" Fed. R. Evid. 702, 2000 Advisory Comm.'s
17  Notes (quoting *United States v. 14.38 Acres of Land Situated in Leflore Cty., Mississippi*, 80
18  F.3d 1074, 1078 (5th Cir. 1996)). Instead, "[v]igorous cross-examination, presentation of
19  contrary evidence, and careful instruction on the burden of proof are the traditional and
20  appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596.

21  **IV.   ARGUMENT**

22      **A.   <u>Dr. Butts is Qualified to Offer Expert Testimony in this Case.</u>**

23  Plaintiffs' suggestion that Dr. Butts is unqualified to offer opinions in this case because
24  he is not a medical doctor, epidemiologist, toxicologist, industrial hygienist, or statistician is a
25  red herring. Mot. at 11. Indeed, this challenge grossly misunderstands the multitude of complex
26  issues the jury will be asked to address, which are not all directed to the carcinogenicity of
27  Roundup. As Plaintiffs concede, Dr. Butts made clear in his deposition that his area of expertise
28  and opinions do not pertain to human health. *See, e.g.*, **Ex. 3**, Dr. Butts' Dep., at 82:13-16;

- 4 -
OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. THOMAS BUTTS

123:25-124:2. Instead, Dr. Butts' expertise concerns the properties and uses of herbicides, including the way herbicide users like Ms. Murdock may come into physical contact with Roundup while using it in particular contexts. **Ex. 2**, Dr. Butts' Expert Report, at 12-13, 23-24. His opinions on herbicide application, including herbicide drift, are based on his research, education, and professional experience evaluating herbicide applications as a weed scientist.

Specifically, Dr. Butts opines that (1) several factors (*e.g.*, Mr. Murdock's reports of his best application practices used, including reduced boom heights, not spraying with winds above 15 mph, use of drift reduction adjuvants, and the use of enclosed cab self-propelled sprayers with air filtration systems) indicate there was minimal opportunity for Ms. Murdock to come into contact with Roundup while her father was spraying it on crop land; (2) it is unlikely that Ms. Murdock had any significant contact with Roundup either when she applied it or when she accompanied her father while he was applying Roundup with the non-crop spot sprayers because these sprayers deliver the herbicide at low pressure and there is minimal drift potential[2]; (3) there was minimal potential for contact with Roundup from washing equipment due to dilution of the product; (4) the equipment and hoses used for mixing herbicides on the field crop sprayers described by Mr. Murdock are designed not to leak, so any contact with Roundup when mixing would be negligible; and (5) contact with Roundup from driving through a sprayed area would have required entering a field the same time as a sprayer or immediately following its departure, which would be highly unlikely. **Ex. 2**, Dr. Butts' Expert Report, at 23-24. Plaintiffs' claim that Dr. Butts should be precluded from offering this opinion because he did not perform mathematical calculations for Ms. Murdock's exposure to glyphosate (Mot. at 11-12) misunderstands Dr. Butts' opinions.[3] Dr. Butts' acquired knowledge of application methods of

---

[2] Despite Plaintiffs' baseless contention (Mot. at 13), Dr. Butts' opinions clearly account for Ms. Murdock's exposure in non-crop areas. *See* **Ex. 2**, Dr. Butts' Expert Report, at 24 (explaining why the mechanics of the spray equipment and application practices used in non-crop areas lead to the conclusion that it is unlikely Ms. Murdock had any significant contact with Roundup)

[3] Plaintiffs' reference to Dr. Butts' testimony about the LD50 (Mot. at 11) is misplaced. Dr. Butts' analysis of the LD50 for glyphosate is specifically related to his opinions regarding the benefits of glyphosate-based herbicides. Additionally, Dr. Butts explained in great detail that the LD50 is based on the amount of active ingredient (dose) required to kill 50% of test animals,

- 5 -
OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. THOMAS BUTTS

1 herbicides, herbicide spray equipment, the physical and chemical properties of herbicides, and
2 herbicide drift—which he has gained in his experience as a weed scientist—renders him
3 qualified to opine that Ms. Murdock likely came into minimal contact with Roundup.

4 Additionally, Plaintiffs' assertion that Dr. Butts somehow implied he is poised to testify
5 that the personal protective equipment ("PPE") instructions on Roundup labels are to limit skin
6 irritation and not because it allegedly causes more serious diseases like NHL, Mot. at 13, is
7 plainly untrue. While Dr. Butts agreed that the surfactant adjuvant in glyphosate-based
8 herbicides allows for spray droplets to spread on and adhere to the leaf surface and aid in
9 absorption to enhance its activity, **Ex. 3**, Dr. Butts' Dep., at 102:12-103:6, he made clear that
10 how droplets interact with human skin is outside his area of expertise, *id.* at 103:7-14. In
11 response to being further questioned about why it would be necessary to wear PPE if Roundup
12 does not absorb through the skin, Dr. Butts testified that "[t]here's a variety of reasons outside
13 of absorption to wear PPE, one of which is just a lot of different herbicides and chemicals can
14 be skin irritants, so just trying to avoid that aspect of irritating the skin." *Id.* at 116:19-117:4.
15 Dr. Butts explicitly explained to Plaintiffs' counsel: "[M]y opinions and my expertise in this
16 case [is] dealing with the weed science herbicide related aspects, not the human health aspect."
17 *Id.* at 82:13-16; *see also id.* at 123:25-124:2.

18 As to opinions he *does* intend to offer, Dr. Butts is more than qualified. He has a breadth
19 of knowledge and professional experience in the field of weed science that is directly relevant
20 to herbicide use and application techniques. *See, e.g.*, *Primiano v. Cook*, 598 F.3d 558, 565 (9th
21 Cir. 2010) (Expert opinion testimony "is reliable if the knowledge underlying it has a reliable
22 basis in the knowledge and experience of the relevant discipline."); *see also Elosu v. Middlefork*
23 *Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) ("An expert's specialized knowledge and
24 experience can serve as the requisite 'facts or data' on which they render an opinion."). Dr.
25 Butts' distinct perspective on herbicide application is critical for the jury to hear when evaluating
26 the evidence in this case. Dr. Butts holds a Ph.D. in Agronomy/Weed Science and has extensive

27 ---
and, by comparison, glyphosate requires a significantly higher dose than other herbicides. **Ex.**
28 **3**, Dr. Butts' Dep., at 103:15-111:14.

1  knowledge concerning the use of glyphosate-based herbicides. **Ex. 2**, Dr. Butts' Expert Report
2  at Ex. A (Dr. Butts' CV). He has extensive experience in weed science as an assistant professor
3  with the University of Arkansas System Division of Agriculture. *Id.* He has dedicated his career
4  to the in-depth study of weed science, and he actively contributes to the scholarly literature on
5  many weed science topics, including herbicide application, through his authorship of peer-
6  reviewed publications. *Id.* Furthermore, Dr. Butts has extensive professional experience putting
7  his specialized knowledge into practice through his extension work with community
8  stakeholders like the Murdock family. **Ex. 3**, Dr. Butts' Dep., at 40:16-41:2. Dr. Butts is
9  qualified and can properly testify about the impact of Roundup on weed management and the
10 nature and circumstances of Ms. Murdock's application of Roundup.

### B. Dr. Butts' Opinions Are the Product of Reliable Principles and Methods.

12  Plaintiffs also assert that Dr. Butts' opinions are unreliable and inadmissible because he
13 did not rely on sufficient facts or data to form his opinions. Mot. at 10. Plaintiffs take issue with
14 the fact that Dr. Butts did not perform specific mathematical calculations on exposure, never
15 reviewed Ms. Murdock's medical records, and never personally visited the Murdock's farm.
16 Mot. at 10. These criticisms mischaracterize and discount the extensive work Dr. Butts
17 performed to reach his opinions. But regardless, while they may be appropriate subjects for
18 cross-examination, they do not render Dr. Butts' opinions inadmissible under *Daubert*.

19  First, Plaintiffs claim that Dr. Butts should be excluded because he did not perform
20 mathematical calculations of Ms. Murdock's alleged exposure to Roundup. Mot. at 11-12. This
21 is a fundamental misunderstanding of Dr. Butts' testimony and opinions. Dr. Butts is not
22 disclosed to offer a quantitative exposure assessment in this case, and thus the fact that he does
23 not offer one is irrelevant. Instead, Dr. Butts will offer opinions about the physical and chemical
24 properties of Roundup, its effectiveness, proper application methods, as well as the spraying
25 equipment and specific application circumstances and conditions at issue in this case. Dr. Butts'
26 testimony on these concepts is beyond the knowledge of common jurors and will assist the fact
27 finder in evaluating Plaintiffs' uses of Roundup, including Ms. Murdock's alleged contact with
28 Roundup while spraying. These opinions are properly within Dr. Butts' expertise, and are

1  supported adequately by his experience, knowledge, training, and review of the facts in issue.
2  Accordingly, Plaintiffs' focus on a mathematical quantitative assessment of Ms. Murdock's
3  exposure simply misses the point.

4  Likewise, Plaintiffs discussion of Dr. Butts' comments about Dr. Sawyer's
5  "calculations" are irrelevant. Mot. at 12. Dr. Butts' minimal discussion of Dr. Sawyer's opinions
6  in his report made clear that his "critique" of Dr. Sawyer's calculations was simply that an
7  "exposure days" methodology—which by nature considers only time spent spraying a product—
8  improperly assumes that contact with glyphosate occurs 100% of the time during application
9  and fails to consider individualized application circumstances and factors. **Ex. 2**, Dr. Butts'
10 Expert Report at 8-9. Dr. Butts' reaffirmed his limited opinion on Dr. Sawyer's assessment in
11 response to Plaintiffs' counsel's questioning at his deposition. **Ex. 3**, Dr. Butts' Dep., at 114:17-
12 115:6. Dr. Butts' testimony about Dr. Sawyer's opinions are not central to the testimony Dr.
13 Butts will offer in this case, and Plaintiffs' attempt to link them as a basis to exclude Dr. Butts
14 should be rejected. However, the opinions Dr. Butts will offer in this case demonstrate why the
15 jury should be allowed to hear his testimony. Dr. Sawyer's "calculations" answer the irrelevant
16 question of how much *time* Ms. Murdock sprayed Roundup, an answer which tells the jury
17 nothing about how much actual exposure occurred, much less what absorbed dose, if any, Ms.
18 Murdock received.  Dr. Butts, by contrast, will bring his experience to bear on the highly relevant
19 question of Roundup's proper application, uses, and effectiveness—and how those impact Ms.
20 Murdock's potential for contact under the specific circumstances at issue in this case.

21 Next, Plaintiffs mistakenly argue that Dr. Butts needed to review Ms. Murdock's medical
22 records. As described above, Dr. Butts made abundantly clear that his opinions are related to the
23 weed science aspects of herbicides, not the human health aspect. **Ex. 3**, Dr. Butts' Dep., at 82:13-
24 16; *see also id.* at 123:25-124:2. Thus, Ms. Murdock's medical records have no bearing on Dr.
25 Butts' opinions. Finally, Plaintiffs' argument proffers an inappropriate and unsupported
26 standard, claiming—with no authority—that to form opinions based on sufficient facts and data,
27 an expert witness must have personally visited the property in question. But that is not the
28 standard for the admission of expert testimony of the type Dr. Butts is offering here, and it

1  ignores the comprehensive review he performed to form his opinions. Plaintiffs fail to explain
2  with any specificity what parts of Dr. Butts' opinions he is unable to reach without visiting the
3  property or why not doing so allegedly renders his opinions inadmissible.

4  Dr. Butts reviewed sufficient data to form his opinions in this case, including reviewing
5  the complaint, discovery responses, Plaintiffs' Fact Sheet, the depositions of Kyle and Mandi
6  Murdock and all accompanying exhibits, Google Earth images of the farm, photographs taken
7  during a site inspection of the farm, and the report prepared by Plaintiffs' expert, Dr. Sawyer.
8  **Ex. 2**, Dr. Butts' Expert Report, at 17. Dr. Butts also produced a list of 124 materials he
9  considered in forming his opinions in this case. **Ex. 2**, Dr. Butts' Expert Report, at Ex. B (Dr.
10 Butts' Materials Considered List). This is more than sufficient to render his opinions admissible
11 under Rule 702. Put simply, Dr. Butts' opinions in this case are the product of extensive, case-
12 specific preparation and careful, scientific-based analysis derived from Dr. Butts' years of
13 experience with weed science. Plaintiffs may seek to cross-examine Dr. Butts about these
14 matters, but none of the "challenges" to Dr. Butts' methodology and factual basis underlying
15 his opinions come close to requiring exclusion.

16         **C.       Dr. Butts' Testimony is Relevant, Proper, and Will Aid the Jury.**

17 Finally, Plaintiffs argue that Dr. Butts' testimony is irrelevant and will not assist the jury.
18 Dr. Butts' testimony, however, concerns weed management topics on which the jury is likely to
19 have little knowledge. Plaintiffs' challenge mischaracterizes Dr. Butts' opinions. In reality, Dr.
20 Butts' testimony will cover appropriate herbicide application methods, spray equipment, and
21 the benefits of herbicides (to name a few)—topics unquestionably at issue in a case that centers
22 on Ms. Murdock's purported exposure to Roundup, a glyphosate-based herbicide, in both crop
23 and non-crop settings. Dr. Butts offers opinions on each of these topics as well as helpful
24 background on the function and uses of glyphosate-based herbicides to provide important
25 context with which the jury is likely unfamiliar. In short, contrary to Plaintiffs' assertions, Dr.
26 Butts will offer extensive scientific testimony on these topics, based on his years of experience,
27 which is necessary for the jury to understand the claims and issues in this case. Indeed, there
28 can be no question that such topics are not of such common knowledge that the average juror's

- 9 -
OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. THOMAS BUTTS

1  knowledge is no better than Dr. Butts. *See, e.g.*, *Moses v. Payne*, 555 F.3d 742, 756 (9th Cir.
2  2009) ("Under Rule 702, expert testimony is helpful to the jury if it concerns matters beyond
3  the common knowledge of the average layperson and is not misleading.").

4  Although Plaintiffs claim that "[n]owhere in his opinion did Dr. Butts relate any of his
5  opinions to [Ms.] Murdock's specific exposure to Roundup," Mot. at 9, Dr. Butts made clear in
6  his deposition that *all* his opinions, including those outlined in his expert report, are specifically
7  related to Ms. Murdock's alleged exposure to Roundup. **Ex. 3**, Dr. Butts' Dep., at 84:16-93:4.
8  In his expert report, Dr. Butts first explains his opinions about weed science principles and
9  approaches. **Ex. 2**, Dr. Butts' Expert Report, at 2-16. He then outlines the facts relevant to Ms.
10 Murdock's use and application of Roundup. *Id.* at 17-22. Lastly, Dr. Butts directly applied his
11 expertise in weed science and the facts *specifically related* to Ms. Murdock to opine on the
12 duration and frequency of Ms. Murdock's alleged use and application of Roundup on the
13 property and Ms. Murdock's purported contact with Roundup during these applications.

14 During his deposition, Dr. Butts also explained in detail why his general opinions about
15 weed science principles and approaches are related explicitly to Ms. Murdock's alleged
16 exposure to Roundup. For example, Dr. Butts explained that while Tamarisk might not have
17 been present at the Murdocks' farm, it "provides an example of the impact that weeds have on
18 water allocation," which he then compared to Palmer Amaranth and Pigweed, both of which
19 Mr. Murdock testified were on the farm. **Ex. 3**, Dr. Butts' Dep., at 89:9-91:20. In addition, as
20 Plaintiffs' Motion concedes (Mot. at 14), Dr. Butts further testified that the example of
21 Roundup's effectiveness when tillage is not used directly applies to this case. **Ex. 3**, Dr. Butts'
22 Dep., at 76:3-13; 85:3-6. Despite Plaintiffs' contention, Dr. Butts' inability to recall which of
23 the seven publications on tillage cited in his MCL specifically supported that principle is
24 inconsequential.

25 Dr. Butts will provide a detailed analysis of standard weed control practices using his
26 specialized knowledge and experience. Jurors can adequately rely on this testimony to help
27 evaluate and assess Plaintiffs' allegations, including Ms. Murdock's alleged use of and exposure
28 to Roundup. Dr. Butts' testimony provides the proper context to consider Plaintiffs' allegations

1  and allow the jury to make a more informed decision regarding the competing evidence. Neither
2  Monsanto nor the jury is obligated to accept Plaintiffs' allegations regarding Ms. Murdock's
3  claimed use of and exposure to Roundup without challenge. There is scientific evidence that
4  undermines these claims, and the proper mechanism to present this scientific evidence to the
5  jury is through a qualified expert, such as Dr. Butts.[4]

6  Plaintiffs also assert that none of Dr. Butts' "opinions bear any relevance to the claims
7  being pursued by Plaintiffs in this case." Mot. at 8. Not so. Indeed, Plaintiffs ignore that Dr.
8  Butts' opinions about Roundup's benefits are relevant to many of the material issues in this case,
9  including the jury's assessment of Plaintiff's design-defect claims, which in part are based on
10 the allegation that the risks in Roundup's design outweigh the benefits; negligence claims; and
11 contention that Monsanto failed to undertake a sufficient study of and warnings about the alleged
12 dangers of Roundup. *See, e.g.*, *Stevens v. Keller Ladders*, 1 Fed. Appx. 452, 462 (6th Cir. 2001)
13 (noting that, under Kentucky law, the relative risks and benefits of a particular design are proper
14 factors to consider in determining whether an ordinarily prudent manufacturer would put the
15 product on the market). Plaintiff's Motion seeks to give the jury a skewed, incomplete, and
16 illogical view of Roundup as a product with alleged risks but no benefits. It also seeks to hide

---

[4] Weed scientists like Dr. Butts have been permitted to testify in numerous prior Roundup trials on the same general and case-specific topics that Dr. Butts will opine about here, over objections similar to those raised here. *See, e.g.*, **Ex. 4,** *Ferro et al., v. Monsanto Company*, Order Regarding the Parties Motions to Exclude Experts, at p. 35-36 (denying motion to exclude Dr. Joseph DiTomaso); **Ex. 5**, *Neal v. Monsanto*, 3/22/22 Hearing Tr. at 190:22-192:18 (same); **Ex. 6**, *Caballero v. Monsanto*, Order on Pretrial Matters Including Summary Judgment, Sargon Challenges, Motions in Limine, Requests for Judicial Notice at p. 30-32 (same); **Ex. 7**, *L. Johnson v. Monsanto*, 6/9/22 Trial Tr. at 12:5-20:3 (denying motion to exclude Dr. Carol Mallory-Smith); **Ex. 8**, *D. Johnson v. Monsanto*, 5/17/18 Order on Monsanto's Omnibus Sargon Motion; Monsanto's Motion for Summary Judgment; Plaintiff's Omnibus Sargon Motion; Plaintiff's Motion for Summary Adjudication at p. 37 (denying motion to exclude Dr. Kassim Al-Khatib); **Ex. 9**, *Wyzik v. Monsanto Co.*, 10/27/22 Trial Tr. at 220:10-221:19, 224:4-12 (plaintiffs did not challenge during oral argument whether Dr. McElroy could testify regarding matters of duration and application of Roundup, Roundup's health benefits, or how Roundup labeling impacts its application).

from the jury the significant history of the development of the product. Such an approach would unfairly prejudice Monsanto.

## V. CONCLUSION

For the reasons stated herein, the Court should deny Plaintiffs' Motion to Exclude Dr. Butts.

Dated:  June 29, 2023                                              Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29 day of June 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system, which sent notice of the filing to all appearing parties of record.

*/s/ Jed P. White*
Jed P. White