1   **Garmer & Prather, PLLC**
    Jerome P. Prather, Esq. (*pro hac vice*)
2   141 North Broadway
    Lexington, Kentucky 40507
3   Telephone:  (859) 254-9351
    Facsimile:   (859) 233-9769
4   Email: jprather@garmerprather.com

5                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
6                    ***ELECTRONICALLY FILED***

7
    IN RE: ROUNDUP PRODUCTS                      MDL NO. 2741
8   LIABILITY LITIGATION
                                                 Case No. 3:16-md-02741-VC
9   This document relates to:

10  *Estate of Kenzie Elizabeth Murdock, Kyle A. Murdock,*    **PLAINTIFFS' RESPONSE TO**
    *Adm'r, Kyle A. Murdock, individually, and Mandi L.*      **DEFENDANT'S MOTION TO**
11  *Murdock v. Monsanto Co.,*                                **EXCLUDE TESTIMONY OF**
    Case No. 3:20-cv-01363-VC                                 **DR. WILLIAM SAWYER**
12

13
            COME the Plaintiffs, the Estate of Kenzie Elizabeth Murdock, Kyle A. Murdock,
14
    Administrator; and Kyle A. Murdock, individually, by counsel, and for their response to
15
    Defendant's motion to exclude the opinions and testimony of Dr. William Sawyer, hereby state
16
    as follows.
17

18

19

20

21

22

23

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................5

ARGUMENT .........................................................................................................6-16

I.    Legal Standard ...........................................................................................6-7

II.   This Court has previously denied motions to exclude Dr. Sawyer on similar grounds and should do the same in this case. .........................................................7

III.  Dr. Sawyer is not offering any general causation opinions. ....................................7-8

IV.  Dr. Sawyer's case specific opinions are reliable and admissible...........................8-16

    A.  Dr. Sawyer used proper methodology in assessing specific causation. ...........................8-9

    B.  Dr. Sawyer makes proper use of epidemiology studies to form his opinion. .................10

    C.  Dr. Sawyer's dose calculation is sufficiently reliable....................................................10-12

    D.  Dr. Sawyer considered other potential causes of Kenzie Murdock's NHL. ...................12

    E.  Dr. Sawyer may rely on and explain technical details contained in internal Monsanto documents. ................................................................................13-14

    F.  Dr. Sawyer's testimony regarding other carcinogens is admissible. ..............................14-15

    G.  Dr. Sawyer may rely on the George study....................................................................15-16

CONCLUSION.....................................................................................................16

Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 2 of 16

1

**<u>TABLE OF AUTHORITIES</u>**

2

<u>Avila v. Willits Envtl. Remediation Tr.</u>, 633 F.3d 828 (9th Cir. 2011)............................................8

3

<u>Beck v. Koppers</u>, Case No. 3:03 CV 60 P D, 2006 WL 270260 (N.D. Miss. Feb. 2, 2006)............6-7, 10

4

<u>Claussen v. M/V New Carissa</u>, 339 F.3d 1049 (9th Cir. 2003) ......................................................8

5

<u>DePaepe v. Gen. Motors Corp.</u>, 141 F.3d 715 (7th Cir. 1998).....................................................13

6

Fed. R. Evid. 702 ...................................................................................................................6

7

<u>Johnson v. Monsanto Co.</u>, No. CGC-16-550128, 2018 WL 2324413 (Cal. Super. May 17, 2018) ................................................................................................................................5, 10

8

<u>Johnson v. Monsanto Co.</u>, 2018 WL 4904750 (Cal. Super. Sept. 18, 2018).....................................15

9

<u>Johnson v. Monsanto Co.</u>, 2018 WL 5246323 (Cal. Super. Oct. 22, 2018) .......................................5

10

<u>Hernandez v. Amcord, Inc.</u>, 156 Cal. Rptr. 3d 90, 101 (Cal. Ct. App. 2013) ....................................6

11

<u>In re Seroquel Prods. Liab. Litig.</u>, No. 6:06-MD-1769-ORL-22D, 2009 WL 3806436 (M.D. Fla. July 20, 2009)...............................................................................................................13

12

<u>In re Roundup Prods. Liab. Litig.</u>, 390 F. Supp. 3d 1102 (N.D. Cal. 2018).....................................6, 8-9

13

<u>In re Roundup Prods. Liab. Litig.</u>, No. 16-MD-02741-VC, 2018 WL 3368534 (N.D. Cal. July 10, 2018).......................................................................................................................7

14

<u>In re Roundup Prods. Liab. Litig.</u>, 358 F. Supp. 3d 956 (N.D. Cal. 2019).......................................6, 10

15

<u>In re Roundup Prods. Liab. Litig.</u>, 2019 WL 6133745 (N.D. Cal. Nov. 19, 2019).........................9

16

<u>In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.</u>, 2011 WL 6302287 (S.D. Ill. Dec. 16, 2011)............................................................................................13

17

<u>Messick v. Novartis Pharms. Corp.</u>, 747 F.3d 1193 (9th Cir. 2014) ................................................6

18

<u>Nw. Coal. for Alternatives to Pesticides v. EPA</u>, 544 F.3d 1043 (9th Cir. 2008) ............................10-11

19

<u>Pilliod v. Monsanto Co.</u>, 2019 WL 2158266 (Cal. Super. Mar. 18, 2019).......................................5

20

<u>Primiano v. Cook</u>, 598 F.3d 558 (9th Cir. 2010) ........................................................................6

21

<u>Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.</u>, 752 F.3d 807 (9th Cir. 2014).................................6

22

23

24

Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

1

United Food & Commercial Workers Local 1776 v. Teikoku Pharma USA, Case No. 14-md-02521-WHO, 2017 WL 5068533 (N.D. Cal. Nov. 3, 2017) ........................................................13

Whitlock v. Pepsi Ams., 527 F. App'x 660 (9th Cir. 2013) .............................................................6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

1

## **INTRODUCTION**

2      William Sawyer, Ph.D., is a well-qualified toxicologist who this Court has previously

3  found qualified to render specific causation opinions in this litigation. In this case, Dr. Sawyer

4  offers case-specific specific causation opinions as to Kenzie Murdock's exposure and diagnosis

5  of non-Hodgkin's lymphoma ("NHL"). Dr. Sawyer has more than 34 years of experience in

6  public health and forensic toxicology and is board certified in forensic medicine, toxicology, and

7  pharmacology, and is well published. Exh. A, Sawyer CV. He has a Ph.D. in toxicology and a

8  master's degree in cellular and molecular biology. Id.

9      To date, Dr. Sawyer has given many dozens of hours of testimony in the RoundUp

10  litigation. This Court is familiar with Dr. Sawyer and his involvement in this litigation. In

11  addition to this MDL, Dr. Sawyer testified in the *Johnson* and *Pilliod* trials. He has spent

12  hundreds of hours reviewing published studies, medical records, and internal Monsanto

13  documents. Pilliod v. Monsanto Co., 2019 WL 2158266 (Cal. Super. Mar. 18, 2019); Johnson v.

14  Monsanto Co., 2018 WL 2324413 (Cal. Super. May 17, 2018); Johnson v. Monsanto Co., 2018

15  WL 5246323 (Cal. Super. Oct. 22, 2018).

16      Dr. Sawyer will offer case specific opinions that Kenzie Murdock's RoundUp exposure

17  was sufficient to cause her NHL. This testimony is admissible and will be helpful to the jury in

18  understanding the evidence and/or determining facts in issue, consistent with the requirements of

19  Fed. R. Evid. 702. Monsanto's motion should be denied in full and the jury should be able to

20  consider Dr. Sawyer's testimony before reaching its conclusions in this case, just as prior waves'

21  cases and in the *Johnson* and *Pilliod* trials.

22

23

24
Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 5 of 16

1

<u>ARGUMENT</u>

2

**I.      Legal Standard**

3

Reliable expert testimony must "'assist the trier of fact' either to 'understand the

4

evidence' or 'to determine a fact in issue.'" Fed. R. Evid. 702. The "witness has to be sufficiently

5

qualified to render the opinion." *See* <u>id.</u>; <u>Primiano v. Cook</u>, 598 F.3d 558, 563 (9th Cir. 2010) (as

6

amended Apr. 27, 2010). However, "[r]eliable expert testimony need only be relevant, and need

7

not establish every element that the plaintiff must prove, in order to be admissible." <u>Primiano</u>,

8

598 F.3d at 563; <u>Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.</u>, 752 F.3d 807, 816 (9th Cir.

9

2014); <u>Whitlock v. Pepsi Ams.</u>, 527 F. App'x 660, 661-62 (9th Cir. 2013) ("Because Dr.

10

Sawyer's opinion rests on a reliable foundation and is relevant to the task at hand it is admissible.

11

Whether it proves causation is not a question of admissibility.").

12

Furthermore, the "relevancy bar is low, demanding only that the evidence 'logically

13

advances a material aspect of the proposing party's case." <u>Messick v. Novartis Pharms. Corp.</u>,

14

747 F.3d 1193, 1196 (9th Cir. 2014); <u>*In re* Roundup Prods. Liab. Litig.</u>, 390 F. Supp. 3d 1102,

15

1152 (N.D. Cal. 2018). Under California law, one expert is not required to "expressly link

16

together the evidence of substantial factor causation." <u>Hernandez v. Amcord, Inc.</u>, 156 Cal. Rptr.

17

3d 90, 101 (Cal. Ct. App. 2013).

18

This Court has ruled in this litigation that it is proper for experts to rely on reports and

19

opinions of other experts, including qualified experts such as Dr. Ritz, Dr. Weisenburger, and Dr.

20

Portier. <u>*In re* Roundup Prods. Liab. Litig.</u>, 358 F. Supp. 3d 956, 959 (N.D. Cal. 2019) ([T]he

21

important point is that these experts will not be repeating the analysis of the general causation

22

experts, but rather relying on them to rule in glyphosate."); *see also* <u>Beck v. Koppers, Inc.</u>, Case

23

No. 3:03 CV 60 P D, 2006 WL 270260, at *10 (N.D. Miss. Feb. 2, 2006) ("[Dr.] Sawyer's

24

Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 6 of 16

dosage and risk assessment testimony (as long as the latter is based on [the expert's] general causation testimony) meets the threshold requirements of Rule 702. It is undisputed that Sawyer is qualified by his knowledge and education to render his dosage and risk assessment testimony.").

## II.     This Court has previously denied motions to exclude Dr. Sawyer on similar grounds and should do the same in this case.

Dr. Sawyer has been challenged in several prior waves of this litigation and the Court has repeatedly allowed his testimony and has advised the parties not to relitigate issues previously ruled upon. Amended Pretrial Order No. 201 (ECF No. 9142); Pretrial Order No. 260 (ECF No. 14417). Nevertheless, Monsanto continues to raise these issues in the case *sub judice* and incorporates by reference its prior arguments without any additional argument. For the same reason this Court has previously ruled on these issues and has upheld the testimony of Dr. Sawyer, the same should be done in this case.

## III.     Dr. Sawyer is not offering any general causation opinions.

This Court held during the general causation phase of this litigation that "plaintiffs need not establish any particular level of exposure." *In re* Roundup Prods. Liab. Litig., No. 16-MD-02741-VC, 2018 WL 3368534, at *5 (N.D. Cal. July 10, 2018). Now that plaintiffs have gotten past the general causation phase, it will be helpful for the jury to understand how various factors such as lack of protective gear, the spraying equipment and type of surfactant in Plaintiffs' specific formulation affect the exposure rates of glyphosate in the body.

Even without a general causation opinion, Dr. Sawyer's exposure testimony is proper. Rule 702 provides that "expert testimony is admissible '[i]f scientific, technical, or other

Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 7 of 16

1   specialized knowledge will assist the trier of fact to understand the evidence or to determine a

2   fact in issue.'" Avila v. Willits Envtl. Remediation Tr., 633 F.3d 828, 836 (9th Cir. 2011).

3         The absorption of glyphosate is a fact in issue. Dr. Sawyer will assist the jury in

4   understanding how glyphosate based formulations ("GBFs") are absorbed through the skin, how

5   much glyphosate is absorbed through the skin, how protective clothing can limit exposure to

6   GBFs, and how different equipment can affect exposure. Exh B, Sawyer Report, at 27-89, 124-

7   38, 220-24, 246; Exh. C, Sawyer Depo., at 61, 64-65, 73-76, 112-13. This information is useful

8   and relevant for the jury to determine how GBFs are absorbed by the body and how exposure is

9   affected by various factors.

10  **IV.    Dr. Sawyer's case specific opinions are reliable and admissible.**

11        **A.    Dr. Sawyer used proper methodology in assessing specific causation.**

12        The words "differential diagnosis" are not magic words. Claussen v. M/V New Carissa,

13  339 F.3d 1049, 1057 (9th Cir. 2003), *amended after reh'g denied* (Sept. 25, 2003). What is

14  important is the scientific technique applied to form an opinion. Id. at 1058. While Dr. Sawyer

15  did not use the words "differential diagnosis" in his report, he did confirm that he utilized the

16  differential diagnosis methodology in forming his specific opinions as to Kenzie's exposure.

17  Exh. C, Sawyer Depo., at 39, 53; Exh. B, Sawyer Report, at 249-62.

18        It is anticipated that Dr. Sawyer's testimony in this case will generally follow his

19  testimony in the *Johnson* and *Pilliod* trials. Pilliod Tr. at 3104-3252 (ECF No. 8692-4); Johnson

20  Tr. at 3587-3679 (ECF No. 8692-3). Dr. Sawyer's testimony will further explain and clarify the

21  testimony of general causation experts by explaining how RoundUp travels from the bottle

22  through the skin, into the body, and ultimately is distributed through the bloodstream. *See, e.g.*,

23  In Re Roundup Prods. Liab. Litig., 390 F. Supp. 3d 1102, 1152 (N.D. Cal. 2018) (holding that

24        Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
          MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Drs. Ritz, Weisenburger, and Portier's "opinions may be bolstered by Dr. Jameson's narrower opinions regarding glyphosate's ability to cause cancer in animals"). A jury's understanding of how certain factors increase or decrease exposure to RoundUp is relevant to their consideration of whether RoundUp was a substantial factor in causing Kenzie's NHL and whether Monsanto is responsible for the increased exposure. *See, e.g.*, *In re* Roundup Prods. Liab. Litig., 2019 WL 6133745, at *1 (N.D. Cal. Nov. 19, 2019) ("[A] state court might find that 3M Cattle's provision of a defective sprayer foreseeably caused [the plaintiff's] cancer by increasing the amount of Roundup he absorbed through his skin."). Jurors will benefit from understanding how RoundUp can penetrate the skin and circulate into the cellular makeup and bloodstream in deciding whether RoundUp causes NHL, and specifically whether it caused Kenzie's NHL.

In this case, Dr. Sawyer evaluated several other known and potential risk factors. Exh. B, Sawyer Report, at 249. He states that "if exposure to a certain substance is generally recognized to increase the individual risk for diagnosis of a clinical condition (such as NHL), then dose becomes a *primary line of toxicological inquiry*." Id. Among the possible carcinogens considered were benzene, smoking, smokeless tobacco, alcohol, and obesity and body mass index. Id. at 249-61. Kenzie was not known to have been exposed to significant levels of benzene, id. at 255, she never smoked, id. at 258, she never used smokeless tobacco, id. at 260, and never used alcohol, id. at 261. Kenzie's body mass index at the time of her death could be categorized as "obesity class II," but it is uncertain what Kenzie's BMI was throughout the period of her RoundUp exposure. Id. at 261. After thoroughly considering other risk factors of NHL, Dr. Sawyer ruled out these risk factors as other potential causes of Kenzie's NHL.

Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 9 of 16

**B.      Dr. Sawyer makes proper use of epidemiology studies to form his opinion.**

Dr. Sawyer has been trained in epidemiology and uses epidemiology daily in his practice. Exh. C, Sawyer Depo., at 52. In addition, Dr. Sawyer has been deemed qualified to offer epidemiology opinions in the *Johnson* case and in others cases. In *Johnson*, the court stated that "Dr. Sawyer's conclusion was based on Johnson's exposure to glyphosate, the absence of other risks in his medical history, animal studies pertaining to glyphosate, and **human epidemiological studies pertaining to glyphosate**." Johnson v. Monsanto Co., No. CGC-16-550128, 2018 WL 2324413, at *15 (Cal. Super. Ct. May 17, 2018) (emphasis added). In this case, Dr. Sawyer will apply epidemiological studies as a means of comparing Kenzie's exposure to the dose in the epidemiology studies. Exh. C, Sawyer Depo., at 93-94; Exh. B, Sawyer Report at 247.

This Court has ruled in this litigation that it is proper for experts to rely on reports and opinions of other experts, including qualified experts such as Dr. Ritz, Dr. Weisenburger, and Dr. Portier. In re Roundup Prods. Liab. Litig., 358 F. Supp. 3d 956, 959 (N.D. Cal. 2019) ([T]he important point is that these experts will not be repeating the analysis of the general causation experts, but rather relying on them to rule in glyphosate."); *see also* Amended Pretrial Order No. 201; Beck v. Koppers, Inc., Case No. 3:03 CV 60 P D, 2006 WL 270260, at *10 (N.D. Miss. Feb. 2, 2006) ("[Dr.] Sawyer's dosage and risk assessment testimony (as long as the latter is based on [the expert's] general causation testimony) meets the threshold requirements of Rule 702.").

**C.      Dr. Sawyer's dose calculation is sufficiently reliable.**

Dr. Sawyer is expected to base his dose calculations at trial on a generally accepted, passive dosimetry methodology published by Machado-Neto. Defendant fails to present any

Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 10 of 16

1    evidence that this model does not yield reliable data. *See, e.g.*, <u>Nw. Coal. for Alternatives to</u>

2    <u>Pesticides v. EPA</u>, 544 F.3d 1043, 1048-49 (9th Cir. 2008) (rejecting argument that [a different]

3    pesticide exposure modeling is unreliable where "[p]etitioners have presented no evidence that

4    modeling does not yield reliable data. There is nothing inherently unreliable about the use of

5    models.").

6        In many other cases in this litigation, Dr. Sawyer applied UK POEM methodology, which

7    is a peer-reviewed, generally accepted, internationally used, and has been tested with a known

8    rate of error. Exh. B, Sawyer Report, at 3-4. However, in this case, because some of the required

9    variables for the UK POEM methodology were not available, Dr. Sawyer could not use UK

10   POEM calculations to assess Kenzie's systemic dose. <u>Id.</u> at 4. Dr. Sawyer reliably applies

11   generally accepted guidelines from the OECD that "[t]he current default approach taken by

12   nearly all regulatory agencies is to determine the dermal absorption value by adding the absorbed

13   dose and the chemical remaining in the skin, following washing." Exh. B, Sawyer Report, at 68.

14       In this case, instead of applying the UK POEM methodology, Dr. Sawyer used the

15   Machado-Neto study to calculate Kenzie's systemically absorbed dose. <u>Id.</u> at 3, 128-30.[1] The

16   Machado-Neto methodology uses units in mg/kg/day, which Dr. Sawyer then compared to those

17   of glyphosate applicators in peer-reviewed studies. <u>Id.</u> Then, Dr. Sawyer assessed Kenzie's

18   exposure, spray practices, and clothing and PPE worn to compare to those of glyphosate

19   applicators in the Machado-Neto study to calculate Kenzie's exposure dose. <u>Id.</u> at 3, 235.-36

20   Calculating the systemic dosage this way uses passive dosimetry data. <u>Id.</u> at 108. The Machado-

21   Neto study is not "novel," but has a known rate of error, standard deviation, and number of

22

23

24
Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 11 of 16

1  subjects in a generally accepted study. Exh. C, Sawyer Depo., at 85-86. In fact, Monsanto has

2  used passive diffusion studies to calculative systemic dose using studies similar to Machado-

3  Neto. Id. at 88. Dr. Sawyer also testified that, by using the Machado-Neto study, his calculation

4  of Kenzie's systemically absorbed dose is very conservative. Id. at 64-65, 82, 91

5           **D.    Dr. Sawyer considered other potential causes of Kenzie Murdock's NHL.**

6           With respect to other carcinogens, Dr. Sawyer properly "ruled in" and "ruled out" these

7  factors. Dr. Sawyer conducted a thorough review of Kenzie's family history, medical history,

8  and home hazards. Exh. B, Sawyer Report, at 208-24. Kenzie had never used alcohol, tobacco, or

9  drugs, so these were not factors. Id. at 211. Dr. Sawyer reviewed all relevant medical records. Id.

10 at 208-09. Dr. Sawyer conducted a telephone interview with Kenzie's father Kyle Murdock, to

11 obtain additional details on Kenzie's exposure to RoundUp. Id. at 1. Dr. Sawyer also read the

12 deposition testimony of Kyle and Mandi Murdock. Exh. C, Sawyer Depo., at 7. Dr. Sawyer then

13 compared Kenzie's exposure to GBFs to the exposure of subjects in the epidemiological studies

14 of glyphosate.

15          After "ruling in" the totality of the evidence, Dr. Sawyer then "ruled out" on a differential

16 basis all other non-trivial possible causes of Kenzie's NHL. After considering these other

17 potential chemical and environmental exposures, he dismissed them as without merit. Exh. B,

18 Sawyer Report, at 249-69.

19

20

21

---

22 [1] J.G. Machado-Neto, A.J. Bassini & L.C. Aguiar, *Safety of Working Conditions of Glyphosate Applicators on Eucalyptus Forests using Knapsack and Tractor Powered Sprayers*, 64 Bull.
23 Envtl. Contamination & Toxicology 309-15 (2000).

Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
24                      MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

**E.    Dr. Sawyer may rely on and explain technical details contained in internal Monsanto documents.**

Dr. Sawyer will not testify about the intent or state of mind of Defendant, but Dr. Sawyer may rely on and discuss scientific findings, opinions, and data contained in internal Monsanto documents. Experts may rely upon and discuss corporate documents if relevant to their opinions. _In re_ Seroquel Prods. Liab. Litig., No. 6:06-MD-1769-ORL-22D, 2009 WL 3806436, at *4 (M.D. Fla. July 20, 2009) ("The Court determines that [experts] may appropriately rely on and discuss [manufacturer's] internal corporate documents for the specific purpose identified by [p]laintiffs in their response to the motion."). Also, there is "nothing particularly unusual, or incorrect, in a procedure of letting a witness relate pertinent information in a narrative form as long as it stays within the bounds of pertinency and materiality." _In re_ Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig., 2011 WL 6302287, at *18 (S.D. Ill. Dec. 16, 2011) (rejecting argument that regulatory experts review of corporate emails "does not require the 'specialized knowledge' contemplated by Rule 702, but rather is mere advocacy on the plaintiff's behalf."). It is also entirely proper to apply one's expertise in a field to provide proper context to corporate emails and memoranda. DePaepe v. Gen. Motors Corp., 141 F.3d 715, 720 (7th Cir. 1998); _see also, e.g._, United Food & Commercial Workers Local 1776 v. Teikoku Pharma USA, Case No. 14-md-02521-WHO, 2017 WL 5068533, at *25 (N.D. Cal. Nov. 3, 2017) (ruling that expert could opine as to a reasonable company in defendant's position would have done based on understanding facts and in light of record evidence reviewed).

As Defendant has a corporate policy not to publish or publicize unfavorable data or scientific opinions on glyphosate, much of the scientific data and opinions of Monsanto scientists and consultants are contained only in internal Monsanto documents and emails. The emails cited

Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

by Dr. Sawyer are filled with technical information that would not easily be comprehended by a lay juror. Exh. B, Sawyer Report, at 42, 44, 77, 98, 286, 298. Dr. Sawyer will not offer regulatory opinions or opine about labeling requirements. However, Dr. Sawyer may testify how instructions on the label for protective gear increase or decrease exposure. *See* LaBletta Decl. Ex. 3, Pilliod Tr. at 3093-3104. As noted by the court in *Pilliod*, Dr. Sawyer's reference to the RoundUp label was relevant and admissible because "to the extent that the label is an issue, it's that it did not tell them to wear protective gear and they didn't wear protective gear . . . And therefore they were exposed to the Roundup when they were spraying and they absorbed here, there, and other." Id. at 3093-94. Accordingly, Dr. Sawyer should be permitted to testify as to Monsanto's internal, technical, corporate documents.

**F.     Dr. Sawyer's testimony regarding other carcinogens is admissible.**

Monsanto asks this Court to exclude Dr. Sawyer's testimony about "trace" chemicals in RoundUp that may have contributed to Kenzie's NHL. Dr. Sawyer's consideration of RoundUp and other GBHs' entire chemical makeup is not only appropriate, but necessary in evaluating whether Kenzie was exposed to known or suspected carcinogens. Such an analysis may also explain the greater carcinogenicity shown in studies of the completed RoundUp product than in studies of glyphosate alone. Dr. Sawyer lists and describes the chemicals known to be present in RoundUp in various years of use. Exh. B, Sawyer Report, at 11. Kenzie's exposure from the time she was approximately two years old is also a factor because her exposure began when she was so young, especially in light of multiple studies and the EPA document on early-life exposures. Exh. C, Sawyer Depo., at 67-68; *see also* Exh. B, Sawyer Report at 273 n.16. Dr. Sawyer will testify that these carcinogens may not be—on their own—sufficient to cause cancer, "the rule in

Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

Page 14 of 16

1    toxicology and even under the EPA policy that regardless of the concentration of the carcinogen,

2    they are all additive in terms of their effect." LaBletta Decl., Exh. 3, Pilliod Tr. at 3133:3-11.

3            The presence of known carcinogens in RoundUp—despite Monsanto's failure to list

4    these substances in its labeling—requires toxicological consideration. Dr. Sawyer's

5    consideration of trace chemicals follows the EPA's guidance on the matter in which additive

6    effects are required to be assessed, which, far from being a novel theory, falls well within a

7    standard toxicological method. Dr. Sawyer's analysis is relevant, reliable, and will assist the jury

8    in evaluating causation. Therefore, his testimony should not be excluded.

9            **G.      Dr. Sawyer may rely on the George study.**

10           By incorporating their prior motions by reference, Monsanto seeks to preclude Dr.

11   Sawyer from testifying about the George tumor promotion study. Monsanto made identical

12   arguments in *Johnson* when seeking to overturn the jury's verdict and secure a new trial, to no

13   avail. *See* Johnson v. Monsanto Co., 2018 WL 4904750, at *15 (Cal. Super. Sept. 18, 2018).

14           In his report, Dr. Sawyer explains the relevance of the George study. He states that:

15                   In the George et al. (2010) carcinogenicity study, glyphosate was
                     demonstrated to have strong tumor-promoting activity. The study
16                   documented carcinogenic effects of glyphosate using a 2-stage
                     mouse skin carcinogenesis model and proteomic (protein) analysis.
17                   The commercial formulation of Roundup Original (glyphosate
                     41%, POEA = 5%, Monsanto Company, St. Louis, MO, USA) was
18                   topically applied to the skin of mice with a body weight of 12-15 g.
                     The glyphosate dose was 25 mg/kg body weight and was applied
19                   either two or three times per week . . . The study documented, to
                     within 95% certainty, the carcinogenic potential of glyphosate as a
20                   powerful promoter in a 2-stage promotion model. The authors
                     concluded in their results section that "[t]hese results clearly
21                   indicate significant tumor promoting potential of glyphosate in
                     mouse skin model of carcinogenesis."

22

23

24       Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
                    MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC

1    Exh. B, Sawyer Report, at 139-40. Because this issue has been raised and rejected by this Court

2    previously, Dr. Sawyer should be permitted to rely on and testify about the George study.

3                                              **<u>CONCLUSION</u>**

4            For all of the reasons stated herein, Defendant's motion to exclude the testimony of Dr.

5    Sawyer should be denied.

6                                      Respectfully submitted,

7                                      ATTORNEYS FOR PLAINTIFF

8                              BY:    /s/ Jerome P. Prather
                                     Jerome P. Prather, Esq. (*pro hac vice*)
9                                    141 North Broadway
                                     Lexington, Kentucky 40507
10                                   Telephone:   (859) 254-9352
                                     Facsimile:    (859) 233-9769
11                                   Email: jprather@garmerprather.com

12

13

14

15

16

17

18

19

20

21

22

23

24         Plaintiffs' Response to Defendant's Motion to Exclude Testimony of Dr. William Sawyer
                        MDL No. 3:16-Md-02741 and Case No. 3:20-Cv-01363-VC