**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10ᵗʰ Floor
Washington, DC 20036
Tel:  202-847-4030
Fax:  202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax:  202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax:  415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE:  ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No.:  3:16-md-02741-VC |
| *Salas v. Monsanto Company, et al.*, 3:21-cv-06173-VC | **DEFENDANT MONSANTO COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. JOSHUA SCHAEFFER'S TESTIMONY** |
| | Hearing: Date:    July 27, 2023 Time:    10:00 a.m. Place:    San Francisco Courthouse, Courtroom 4 – 17th Floor |

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

DR. SCHAEFFER'S OPINIONS AND METHODOLOGY ................................................ 3

LEGAL STANDARD.......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.      Dr. Schaeffer is Qualified to Opine on Plaintiff's Exposure and Dose of
        Glyphosate. ........................................................................................................... 5

II.     Dr. Schaeffer Employed a Reliable Methodology and Reliably Applied his Dose
        Assessment to Relevant Regulatory Thresholds. ................................................. 8

        A.      Dr. Schaeffer's Calculation of Plaintiff's Dose of Glyphosate is Reliable............. 8

        B.      Dr. Schaeffer Reliably Applied His Dose Assessment to Relevant
                Regulatory Thresholds. ........................................................................... 11

III.    Dr. Schaeffer's Opinions Will Assist the Trier of Fact....................................... 13

IV.     Dr. Schaeffer's Opinions Should Not Be Partially Excluded. ............................ 14

CONCLUSION ................................................................................................................ 15

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. JOSHUA
SCHAEFFER'S TESTIMONY

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Bitton v. Int'l Transp., Inc.*,
    437 F.2d 817 (9th Cir. 1970)..................................................................................... 10

6

7

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014)................................................................................... 13

8

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ................................... *passim*

9

10

*In re Deepwater Horizon Belo Cases*,
    No. 3:19CV963-MCR-HTC, 2022 WL 17721595 (N.D. Fla. Dec. 15, 2022) ...................... 18

11

*Elosu v. Middlefork Ranch Inc.*,
    26 F.4th 1017 (9th Cir. 2022)................................................................................... 13

12

13

*Hangarter v. Provident Life & Acc. Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004)...................................................................................... 9

14

15

*Kennedy v. Collagen Corp.*,
    161 F.3d 1226 (9th Cir. 1998)................................................................................... 11

16

*Lazy S. Ranch Properties, LLC v. Valero Terminaling & Distribution Co.*,
    No. 19-CV-425-JWB, 2022 WL 17553001 (E.D. Okla. Dec. 7, 2022)................................ 15

17

18

*McClain v. Metabolife Int'l, Inc.*,
    401 F.3d 1233 (11th Cir. 2005).................................................................................. 18

19

20

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010), *as amended* (Apr. 27, 2010)..................................... 17

21

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
    752 F.3d 807 (9th Cir. 2014)..................................................................................... 16

22

23

*In re Roundup Prod. Liab. Litig.*,
    390 F. Supp. 3d 1102 (N.D. Cal. 2018) ................................................................. 9, 18

24

25

*San Francisco Baykeeper v. City of Sunnyvale*,
    627 F. Supp. 3d 1085 (N.D. Cal. 2022) .................................................................... 11

26

*In re Silicone Gel Breast Implants Prod. Liab. Litig.*,
    318 F. Supp. 2d 879 (C.D. Cal. 2004)....................................................................... 11

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

- ii -

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    978 F. Supp. 2d 1053 (C.D. Cal. 2013)................................................................. 9, 17

*Wendell v. GlaxoSmithKline LLC*,
    858 F.3d 1227 (9th Cir. 2017)...................................................................... 9, 14, 16

**Other Authorities**

Federal Rules of Evidence Rule 702............................................................ 8, 9, 10, 11

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. JOSHUA SCHAEFFER'S TESTIMONY

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

## INTRODUCTION

Plaintiff Nancy Salas ("Plaintiff") seeks to exclude Monsanto's expert industrial hygienist, Dr. Joshua Schaeffer, based on arguments that misunderstand and misrepresent his qualifications and opinions, as well as Roundup's regulatory landscape.

*First*, Plaintiff challenges Dr. Schaeffer's qualifications to opine on Plaintiff's exposure and dose of glyphosate. Plaintiff's qualifications challenge is based on the faulty premise that Dr. Schaeffer is offering opinions about the cause of Plaintiff's cancer. But as Plaintiff acknowledges several times in her Motion, he is not. Rather, Dr. Schaeffer will opine on Plaintiff's *exposure and dose of glyphosate*, which he is more than qualified to do based on his training, education, and experience in industrial hygiene and environmental and occupational health.

*Second*, Plaintiff challenges the methodology Dr. Schaeffer used to calculate Plaintiff's absorbed dose of glyphosate. But Dr. Schaeffer used a methodology that is generally accepted in the scientific community to assess absorbed dose, and Plaintiff's arguments to the contrary are misplaced. Plaintiff also criticizes Dr. Schaeffer's comparisons of Plaintiff's calculated absorbed doses to regulatory thresholds from the U.S. Environmental Protection Agency ("EPA") and from a California agency. But these comparisons are highly relevant, and courts routinely permit qualified experts to make these exact types of comparisons at trial. Moreover, Plaintiff misrepresents the nature of the regulatory thresholds that Dr. Schaeffer uses, arguing that the thresholds are not relevant to cancer. Both contentions are baseless.

*Third*, Plaintiff argues that Dr. Schaeffer's testimony will be unhelpful to the jury, claiming it is both "irrelevant" and "cumulative" of Monsanto's specific causation experts. Again, however, Dr. Schaeffer will not opine on causation in this case, so his opinions will not be cumulative of other experts who do so. And his opinions are plainly relevant to Plaintiff's claims for strict liability and negligence, because the dose at which she was allegedly exposed is relevant to the specific causation analysis (which other experts will testify to). Dr. Schaeffer's testimony will assist the jury in deciding this issue. Plaintiff cites no authority for this baseless argument, nor could she. Taken to its logical conclusion, no regulatory, exposure, or damages opinions would be admissible if relevance were defined so narrowly to include only medical causation.

Bryan Cave Leighton Paisner LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

*Fourth*, Plaintiff argues that, if the Court does not exclude Dr. Schaeffer's opinions entirely, it should prohibit Dr. Schaeffer from comparing Plaintiff's calculated absorbed doses to the EPA and California's regulatory thresholds.  Plaintiff provides no valid reason why these opinions should be excluded as irrelevant.  Again, routinely permit qualified experts to make these exact types of comparisons at trial.  Because Dr. Schaeffer is qualified to offer these opinions, which are relevant and reliable, Plaintiff's request to partially exclude Dr. Schaeffer's testimony must be denied.

In short, and as further explained below, Dr. Schaeffer is well qualified to opine on Plaintiff's exposure and dose of glyphosate, and the methodologies that he employed are generally accepted in the scientific community, reliable, and admissible under the *Daubert* standard. Plaintiff's critiques seem to be with Dr. Schaeffer's choice to use these reliable methodologies instead of other supposedly reliable methodologies.  Conspicuously absent from Plaintiff's motion is any legal authority suggesting that such critiques go to the admissibility, rather than the weight, of an expert's opinion.  They do not.  The Court should deny Plaintiff's motion.

## BACKGROUND

Monsanto has designated Dr. Schaeffer, an industrial hygienist, to offer opinions on Plaintiff's exposure and internal dose (i.e., absorption) of glyphosate.  *See* Declaration of Jed P. White in Support of Defendant Monsanto Company's Response in Opposition to Plaintiff's Motion to Exclude Dr. Joshua Schaeffer's Testimony ("White Decl."), Ex. 1, at 4; White Decl., Ex. 2, at 2; White Decl., Ex. 3, at 48:21-23.  He also offers opinions comparing his assessment of Plaintiff's internal dose to the established regulatory risk levels.  White Decl., Ex. 2, at 37-38; White Decl., Ex. 3, at 48:21-23.

Dr. Schaeffer has over twenty years of experience in environmental and occupational health. White Decl., Ex. 2, at 2-5; 40-41.  He holds a master's degree in environmental health with a specialization in toxicology and a Ph.D. in environmental health with a specialization in industrial hygiene from Colorado State University.  *Id.* at 40.  Industrial hygienists, like Dr. Schaeffer, "look[] to anticipate, recognize, evaluate and control exposures to hazards in the work place and

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. JOSHUA SCHAEFFER'S TESTIMONY

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

1   community." White Decl., Ex. 3, at 14:6-13.  Dr. Schaeffer has been a certified industrial hygienist

2   since 2017.  White Decl., Ex. 2, at 40; White Decl., Ex. 3, at 13:25-14:5.

3          Dr. Schaeffer has been an Associate Professor of Occupational and Environmental Health

4   at Colorado State University since 2022, and before that he was an Assistant Professor of

5   Occupational and Environmental Health since 2015.  White Decl., Ex. 2, at 40-41.  At Colorado

6   State University, Dr. Schaeffer teaches courses on environmental public health and occupational

7   safety and health, and guest lectures in industrial hygiene graduate courses and toxicology

8   undergraduate courses.  White Decl., Ex. 3, at 15:21-16:6.  He is affiliate faculty at the Colorado

9   School of Public Health, where he has taught several courses on agricultural health, safety, and

10  exposures.  *Id.* at 15:13-20.  He has served as a lab director analyzing the human body's absorption

11  of substances.  *Id.* at 17:3-8.  He has attended conferences on dermal exposure as part of his

12  continuing education.  *Id.* at 17:9-16.  He has been published in over twenty peer-reviewed

13  publications in his field and has given numerous presentations on exposures and environmental

14  health.  White Decl., Ex. 2, at 51-56.  Dr. Schaeffer is currently the principal industrial hygienist at

15  Schaeffer Occupational Health Associates, LLC, where he frequently conducts exposure

16  assessments involving indoor air quality, air contaminants, and dermal exposures.  *Id.* at 2; White

17  Decl., Ex. 3, at 19:6-15; 21:12-23.

18                      **DR. SCHAEFFER'S OPINIONS AND METHODOLOGY**

19         Dr. Schaeffer's extensive analysis in this case is detailed in his expert report and in his

20  deposition transcript.   Before reaching his conclusions, Dr. Schaeffer reviewed Plaintiff's

21  deposition testimony and Plaintiff's fact sheet to understand the nature of Plaintiff's family and

22  medical history, occupational history, and claimed exposures to Roundup.  *See* White Decl., Ex. 2,

23  at 22-26, 29 (detailing Plaintiff's claimed exposure).  He then reconstructed the duration, amount,

24  and circumstances of Plaintiff's claimed exposures, as well as the likely concentrations of the

25  glyphosate-based herbicides to which she was exposed.  *Id.* at 26-37. Dr. Schaeffer's model

26  "build[s] in" and "assumes that Ms. Salas's exposure was greater than what she probably likely

27  encountered."  White Decl., Ex. 3, at 38:23-39:4; *id.* at 64:16-25.

28

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. JOSHUA
SCHAEFFER'S TESTIMONY

Dr. Schaeffer then used this data to calculate Plaintiff's average daily absorbed dose of glyphosate, as well as her maximum daily dose in mg/kg-day.  White Decl., Ex. 2, at 26-37.  Importantly, while Dr. Schaeffer estimated the amount of glyphosate that might have landed on Plaintiff's skin, that was not his key measurement.  That is because, as Dr. Schaeffer explains in his report, due to glyphosate's unique properties, very little that lands on a person's skin is actually absorbed into the body.  *Id.* at 11 ("Skin studies (e.g., *in vitro* and *in vivo*) illustrate that glyphosate and glyphosate formulations have a low flux (mass of glyphosate/cm$^2$ of skin/time) and small fractional absorption").  Thus, after Dr. Schaeffer estimated Plaintiff's likely daily *exposure* to glyphosate (*i.e.*, the amount that *landed* on her skin), he took the additional step of determining the *dose* actually *absorbed* into the skin.  *Id.* at 29-37.  To do that, Dr. Schaeffer used a quantitative model adapted from the *Mathematical Models for Estimating Occupational Exposure to Chemicals* published by the American Industrial Hygiene Association ("AIHA") that "integrates [P]laintiff's frequency and duration…of glyphosate use," Plaintiff's bodyweight, the maximum surface area of Plaintiff's skin that was potentially exposed, the experimentally-derived permeability coefficient, and the concentration of glyphosate.  *Id.* at 29-30.

After making these average and maximum daily dose estimates, Dr. Schaeffer noted at the end of his report that Plaintiff's worst-case daily absorbed dose of glyphosate was "three orders of magnitude" below the threshold the EPA has set for safe limits of exposure to glyphosate (the EPA's Reference Dose ("EPA's RfD")), and that her average daily dose was "12x lower" than the California Code of Regulations' (the No Significant Risk Levels ("California NSRL")) threshold for maximum daily intake of glyphosate.  *Id.* at 37; *see id.* at 38 ("While my report does not provide an opinion as to the causes of NHL, my estimate of the plaintiff's average daily dose indicates that plaintiff's dose did not exceed the EPA RfD or the California NSRL for glyphosate").

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on

- 4 -

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

1   sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5)

2   the expert has reliably applied the relevant principles and methods to the facts of the case.  Fed. R.

3   Evid. 702.  "The [Rule 702] inquiry is 'flexible,' and … should be applied with a 'liberal thrust'

4   favoring admission."  *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017)

5   (citations omitted) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588, 113 S.Ct.

6   2786, 125 L.Ed.2d 469 (1993) and *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th

7   Cir. 2014)).

8       "Rule 702 'contemplates a broad conception of expert qualifications.'"  *Hangarter v.*

9   *Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l*

10  *Enters.*, 42  F.3d 1266, 1269 (9th Cir.1994)) (alterations omitted).  "So long as the expert's

11  testimony is within the reasonable confines of his subject area, a lack of particularized expertise

12  generally goes to the weight of the testimony, not its admissibility."  *In re Roundup Prod. Liab.*

13  *Litig.*, 390 F. Supp. 3d 1102, 1111 (N.D. Cal. 2018) (quotations omitted).  "The trial court has broad

14  latitude in deciding how to determine the reliability of an expert's testimony and whether the

15  testimony is in fact reliable."  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*

16  *Pracs., & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013) (quotations omitted).

17  Ultimately, "the interests of justice favor leaving difficult issues in the hands of the jury and relying

18  on the safeguards of the adversary system . . . to attack shaky but admissible evidence."  *Wendell*,

19  858 F.3d at 1237 (quoting *Daubert*, 509 U.S. at 596) (alterations omitted).

20                                    **ARGUMENT**

21  **I.    Dr. Schaeffer is Qualified to Opine on Plaintiff's Exposure and Dose of Glyphosate.**

22       Plaintiff first challenges Dr. Schaeffer's qualifications to offer opinions on Plaintiff's

23  exposure and dose of glyphosate.  Plaintiff contends that Dr. Schaeffer's testimony amounts to

24  opinions on "medical causation" for which Dr. Schaeffer has no medical or epidemiology training

25  or expertise. Pls.' Mtn. at 8-9.  Plaintiff's argument misses the mark.  As Plaintiff herself recounts

26  at length in her motion, Dr. Schaeffer repeatedly testified that he is not providing any causation

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

opinions in this case.  *Id.* at 3, 6, 1-12-13.[1]  Instead, Dr. Schaeffer is "an expert in exposures and looking at those exposures and estimating and modeling those exposures to calculate a dose" and then comparing that dose to the regulatory thresholds.  White Decl., Ex. 3, at 17:25-18:7; *id.* at 40:13-21; *id.* at 40:23-41:6; *id.* at 41:8-42:1; *id.* at 42:22-43:5; *id.* at 48:8-23 ("Q…..do you just personally have a view one way or the other about whether glyphosate or Roundup caused Ms. Salas's cancer? A.…I'm not here to really provide an opinion, expert opinion on that…").  Plaintiff is thus asking the Court to find Dr. Schaeffer is not qualified to testify on a topic that Dr. Schaeffer himself has disclaimed providing.  Pl. Mtn. at 6 (acknowledging "Dr. Schaeffer disclaims any opinion about medical causation"); *id.* at 12 ("Dr. Schaeffer himself disclaims any opinion about medical causation") (alterations omitted).[2]  Because Dr. Schaeffer will not be providing any causation opinion at trial, this aspect of Plaintiff's Motion can be quickly dismissed.

Plaintiff also contends that Dr. Schaeffer is unqualified to offer opinions on Plaintiff's exposure and dose of glyphosate because, in her view, he has "scarce experience with the chemical."  *Id.* at 9-10.  Yet, as Plaintiff acknowledges, Dr. Schaeffer has conducted a study that specifically examined *glyphosate* exposures amongst a vulnerable population of sugar cane workers in Central America and the connection to chronic kidney disease of unknown etiology.  *Id.*  Plaintiff wrongly dismisses this professional experience and makes hairsplitting attempts to convince this Court that it is "wholly irrelevant."  *Id.* at 9.  Her arguments are unconvincing.  Dr. Schaeffer does have specific experience studying glyphosate, as evidenced by his past work.  White Decl., Ex. 3, at 32:2-21.

More importantly, Dr. Schaeffer has extensive training and experience studying human exposure to and absorption of various substances, including chemicals and alleged toxins.  White

---

[1] *See e.g.*, White Decl., Ex. 3, at 40:13-21 ("I'm not here to provide expert testimony on NHL or the causes"); *id.* at 40:23-41:6 ("I'm not providing a causation of NHL"); *id.* at 41:8-42:1 ("I'm not here to provide an expert opinion on the causation of cancer"); *id.* at 42:22-43:5 ("I'm not here to provide an expert opinion on the causation of NHL").

[2] Dr. Schaeffer included in his report background information about studies and regulatory conclusions on the carcinogenicity of glyphosate. *See* White Decl., Ex. 2, at 8-10, 20-22.  This information was provided as background, and does not reflect any of Dr. Schaeffer's actual opinions.

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. JOSHUA SCHAEFFER'S TESTIMONY

Bryan Cave Leighton Paisner LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

Decl., Ex. 2, at 2-5; *see generally id.* at 40-57.  This general experience renders Dr. Schaeffer sufficiently qualified to offer expert opinions on Plaintiff's exposure and dose of glyphosate.  Even if an expert "lack[s] training and experience in the particulars mentioned," he remains qualified as an expert under Rule 702 where "there [is] reason to believe that his general scientific skills and techniques [are] sufficient to enable him to reach reliable conclusions." *Bitton v. Int'l Transp., Inc.*, 437 F.2d 817, 822 (9th Cir. 1970) (an expert was qualified to testify regarding the characteristics of asphalt, determine the effect of asphalt of objects moving across it, and make a chemical analysis of asphalt samples, despite the fact that he "had no experience with, or particular knowledge of, asphalt").

In other words, Plaintiff argues that Dr. Schaeffer's education, training, and experience must be specifically tailored to a single chemical: glyphosate.  But this is not the standard for determining whether an expert is qualified under Rule 702.  An expert's perceived "lack of specialization in a particular field goes to the weight of the expert's opinion, not admissibility." *San Francisco Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1085 (N.D. Cal. 2022) (citing *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011)).  Indeed, "[a] court abuses its discretion when it excludes expert testimony solely on the ground that the witness's qualifications are not sufficiently specific if the witness is generally qualified." *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004); *see also Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) ("Disputes as to the strength of [an expert's] credentials…go to the weight, not the admissibility of his testimony").

In sum, Dr. Schaeffer is more than qualified to opine on Plaintiff's exposure and dose.  He has over two decades of experience in the environmental and occupational health field, and more than six years of experience as a certified industrial hygienist.  White Decl., Ex. 2, at 2-5; *id.* at 40-41.  He teaches several classes at the Colorado School of Public Health at Colorado State University on environmental health and exposure topics, and he owns and operates Schaeffer Occupational Health Associates, LLC, where he routinely provides exposure assessments to clients in a variety of settings.  *Id.* at 2, 40-41; *see also* White Decl., Ex. 3, at 15:13-16:6; *id.* at 19:6-15; 21:12-23.  Dr. Schaeffer is qualified to opine on Plaintiff's exposure and dose of glyphosate by his training,

Bryan Cave Leighton Paisner LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

education, and professional experience as an industrial hygienist and environmental and occupational health scientist.

**II.      Dr. Schaeffer Employed a Reliable Methodology and Reliably Applied his Dose Assessment to Relevant Regulatory Thresholds.**

**A.      Dr. Schaeffer's Calculation of Plaintiff's Dose of Glyphosate is Reliable.**

Dr. Schaeffer specifically used a mathematical model to calculate the amount of glyphosate that actually penetrated and was absorbed through Plaintiff's skin.  *See* White Decl., Ex. 2, at 29-37.  As discussed *supra*, the methodology Dr. Schaeffer employed involves examining "[P]laintiff's frequency and duration…of glyphosate use" and Plaintiff's bodyweight, the maximum surface area of Plaintiff's skin that was potentially exposed, the experimentally-derived permeability coefficient, and the concentration of glyphosate to determine the amount of glyphosate that penetrated her skin per unit of time.  *Id.* at 29-30.  The calculation Dr. Schaeffer used was based on a published and well-recognized AIHA dermal exposure model ("AIHA model").  White Decl., Ex. 3, at 36:6-37:1 ("The AIHA model that I used…is [a] recognized and respected model"); *id.* at 56:2-5 (Q…. You told me that you used an AIHA exposure assessment model in assessing Ms. Salas's exposure, right? A. I used a model to estimate the exposure, yes").  Despite its widespread acceptance, Plaintiff challenges this methodology. Pl. Mtn. at 10-12.

There is no question that the AIHA model is a reliable and accepted methodology for measuring absorbed dose.  This methodology has been "presented in *Mathematical Models for Estimating Occupational Exposure to Chemicals*, which is a publication by the American Industrial Hygiene Association," as an acceptable way to evaluate the amount of contaminant that penetrates the skin per unit time.  White Decl., Ex. 2, at 29, 37; White Decl., Ex. 4, Keil, C. et al., Mathematical Models for Estimating Occupational Exposure to Chemicals (2nd ed. 2009) (13.3.2) (textbook that compiles accepted mathematical models for estimating occupational exposures). While other mathematical models for measuring absorbed dose exist, Dr. Schaeffer explains that he used the AIHA model because of its recognition in the industrial hygiene industry for assessing dermal dose. White Decl., Ex. 3, at 37:22-38:5 ("I employed this route, this AIHA dermal exposure model as opposed to other models…[b]ecause that's the model that is recognized in American

Bryan Cave Leighton Paisner LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

Industrial Hygiene Association. It's a resource. It's respected…."); *id.* at 49:15-50:5 ("…the American Industrial Hygiene Association, and that's a professional organization and they have different resources available and that's a model that is included in one of the resources").

That Dr. Schaeffer's AIHA model methodology is generally accepted in the scientific community for determining the dose of an absorbed substance is dispositive of Plaintiff's motion, even if Plaintiff believes it's not the ***most*** reliable or appropriate methodology.  Expert testimony is reliable if it "is based on sufficient facts or data," and "is the product of reliable principles and methods" that have been "reliably applied…to the facts of the case." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1023 (9th Cir. 2022) (quoting *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014)); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 59-94 (1993) (expert testimony is reliable if it is based on methods or techniques generally accepted in the scientific community).  Disagreements about ***which*** generally accepted methodology should have been employed do not render an expert opinion inadmissible.  *See Elosu*, 26 F.4th at 1027 (holding expert opinion was based on sufficient facts and data; "A court cannot exclude expert testimony for lacking "sufficient facts or data" while openly disregarding the foundation of the expert's opinion"); *City of Pomona*, 750 F.3d at 1044 (trial court abused its discretion in excluding expert testimony on the basis that the expert's methodology had not yet been certified by the EPA, were not subject to retesting, and was too limited).

Plaintiff makes a meek (and mistaken) attempt to argue that the AIHA model is not an accepted scientific methodology for assessing the dose of a substance absorbed into the skin.  First, Plaintiff argues the AIHA model "is wholly novel and untested." Pl. Mtn. at 10.  Not so.  As described above, the mathematical equation employed by Dr. Schaeffer is widely recognized by AIHA, a highly respected resource within the industrial hygiene practice.  White Decl., Ex. 3, at 36:6-37:1; *id.* at 37:22-38:5; *id.* at 49:15-50:5. Far from "novel," this equation is routinely used to calculate dermal exposure to pesticides such as glyphosate.  *See id.*

Plaintiff further complains that the AIHA model is unreliable because it "has never been tested or applied to assess the cancer risks of glyphosate in human beings."  Pl. Mtn. at 11.  She criticizes that although "Dr. Schaeffer contended that the [Andreotti et al. (2018)] study is … pretty

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

much the gold standard when you're thinking about exposures and outcomes," his "methodology is completely different from the methodology used to assess glyphosate exposure in the Andreotti study." *Id.* at 5 (quotations omitted). But as Dr. Schaeffer explained during his deposition, the Andreotti study was "an epidemiological study where they looked at [exposure] in terms of longitudinal prospective cohort," whereas "[his] approach was trying to reconstruct an exposure and estimate dose based on that exposure." White Decl., Ex. 3, at 56:11-21. Thus, the fact the Andreotti study employed a different model—for a different purpose—does not render Dr. Schaeffer's methodology per se unreliable.

Finally, Plaintiff argues the AIHA model "inexplicably fails to include additional routes of exposure" to glyphosate through routes such as inhalation and digestion, which had "the necessary effect of artificially downplaying [Plaintiff's] exposure." Pl. Mtn. at 11-12. In support of her argument, she cites a United Kingdom Institute for Occupational Medicine study that mentions generally that "inhalation exposure is invariably singled out as the most important route in terms of potential to cause toxicity," and that "glyphosate can be absorbed through dietary sources such as inadvertent ingestion" *Id.* at 12 (quotation omitted). Dr. Schaeffer testified that although he considered inhalation exposure, he did not include it in his dose calculations because, based on the literature, inhalation exposure would not "materially add to the exposure" when "thinking about the way that Ms. Salas applied the product as a spot treatment, targeted treatment of the weed." White Decl., Ex. 3, at 46:16-47:15. And even Plaintiff's own exposure and dose expert, Dr. William Sawyer, reaches his pre-determined conclusions regarding Plaintiff's exposure-days and systemic dose relying exclusively on dermal exposure studies, not inhalation or digestion studies. *See* White Decl., Ex. 5, at 232-33.

To the extent Plaintiff takes issue with Dr. Schaeffer's decision to employ the AIHA model over some other reliable method, or his application of the AIHA model to her case, those questions can be addressed during cross-examination at trial, as they go to the weight—not admissibility— of his testimony. *Wendell*, 858 F.3d at 1237.

**B.      Dr. Schaeffer Reliably Applied His Dose Assessment to Relevant Regulatory Thresholds.**

Next, Plaintiff broadly contends that Dr. Schaeffer wrongly used the EPA RfD and the California NSRL as comparison points for Plaintiff's daily and maximum doses. Pl. Mtn. at 10-11. But these regulatory thresholds are plainly relevant to Dr. Schaeffer's opinion that Plaintiff was exposed to a safe dosage of glyphosate. And Dr. Schaeffer's reliance on the regulatory thresholds does not render his methodology unreliable. Courts routinely conclude that expert testimony that relies upon such regulations is proper under *Daubert*. *See, e.g.*, *Lazy S. Ranch Properties, LLC v. Valero Terminaling & Distribution Co.*, No. 19-CV-425-JWB, 2022 WL 17553001, at *9 (E.D. Okla. Dec. 7, 2022) (citing cases). Plaintiff essentially argues that Dr. Schaeffer's use of the regulatory thresholds fails the federal standard for admissibility because the EPA RfD and the California NSRL are themselves not relevant or reliable, Pl. Mtn. at 10-11, but that is for the jury to consider.

Plaintiff's specific critiques of Dr. Schaeffer's use of these reference points also do not warrant exclusion of his opinions.

***EPA***.   Plaintiff argues that the EPA reference point for glyphosate absorption of 1.0 mg/kg/day (White Decl., Ex. 2, at 37) is not relevant because this reference point "has nothing to do with cancer" and "is explicitly a non-cancer assessment that focuses on developmental, urinary concerns." Pl. Mtn. at 10, 14. Plaintiff is wrong.

To begin, the 1.0 mg/kg/day reference dose originates from the EPA's December 12, 2017 Draft Human Health Risk Assessment in Support of Registration Review ("2017 Assessment"). *See* White Decl., Ex. 6, at 16; White Decl., Ex. 7, at Table 7-1. The 2017 Assessment ***did*** incorporate a cancer analysis into its dosage conclusion—indeed the 1.0 mg/kg/day reference point is effectively inclusive of all human health risks, including cancer. *See* White Decl., Ex. 6, at 21. Dr. Schaeffer testified as much at his deposition. White Decl., Ex. 3, at 43:7-44:6 ("The EPA reference dose references – is based on a no observable adverse effect level...."); *id.* at 45:4-12 ("Q. …. What about EPA, RFD? Do you think that's a reliable threshold for understanding the cancer risk of glyphosate? A. The RFD, my understanding is the RFD is based on the no observable

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

adverse effect level, so no adverse effects occur at or below that level"). The EPA explained that while the reference point is specifically a product of analysis of non-cancer endpoints, this is because "[a]cute and cancer dietary risk assessments were not conducted *since an appropriate endpoint attributable to a single dose was not identified for the general U.S. population or any population subgroup*." White Decl., Ex. 6, at 21 (emphasis added). Put differently, the 1.0 mg/kg/day reference point is necessarily inclusive of carcinogenic risk because the EPA concluded that there is no carcinogenic risk from even a *single dose* of glyphosate. *Id.* The reference point is thus relevant to a determination of whether Plaintiff's absorbed dose was within the regulatory thresholds.

*NSRL*. Plaintiff argues that the California NSRL reference point for glyphosate absorption of 1.1 mg/day (White Decl., Ex. 2, at 37) is not relevant because this reference point "was developed without reference to NHL" and "was not based on any studies relating to the human risk of cancer from glyphosate exposure [or] any studies related to dermal exposure (the only type of exposure considered in Dr. Schaeffer's estimate of [Plaintiff's] absorption of glyphosate)." Pl. Mtn. at 10-11, 14. Again, Plaintiff is wrong. As Dr. Schaeffer testified, the California NSRL is based on "a no significant risk level for cancer." White Decl., Ex. 3, at 43:7-44:6; *id.* at 45:19-46:1 ("Q. What about the CAL NSRL? Does that – do you find that to be a reliable threshold for understanding the cancer risks of glyphosate? A. The CAL NSRL is based on risk and so thinking about it in terms of excess of one, thinking about the risk of cancer and exposure and – so it is set as a no significant risk level for developing cancer based on exposure"). Plaintiff cites no case law supporting her contention that the fact the California NSRL was based in part on an animal study assessing cancer but not specifically NHL is a basis for excluding an expert's opinion, (Pl. Mtn. at 6), because it is not. As discussed above, experts are routinely permitted to use regulatory thresholds as comparison points in their expert testimony under the *Daubert* standard. *See supra.* Whether plaintiff believes that the basis for the NSRL threshold is sound is a matter for cross-examination, because it speaks to the weight of Dr. Schaeffer's testimony, not its admissibility. *See Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

exclusion"); *Wendell*, 858 F.3d at 1237.

**III.     Dr. Schaeffer's Opinions Will Assist the Trier of Fact.**

Plaintiff next argues that Dr. Schaeffer's opinions should be excluded because they "would not assist the trier of fact" because they are irrelevant and cumulative of Monsanto's specific causation experts.  Pl. Mtn. at 12.  Again, Plaintiff's entire argument relies on the faulty premise that Dr. Schaeffer's opinions are causation opinions.  *See id.* ("medical causation is the only conceivable, triable, issue that the jury will be asked to assess that has any bearing on Dr. Schaeffer's opinions").  As argued *supra* Part I, Dr. Schaeffer is not providing any ultimate causation opinions in this case.  Because he will not opine on specific causation, his opinions do not and cannot "duplicate the opinions of Monsanto's other experts" on specific causation.  *Id.* at 13-14.

Even more remarkably, Plaintiff posits that Dr. Schaeffer's opinions on exposure and dose "are tangentially related to conclusions about the absorption of glyphosate into Ms. Salas' body" that are "unrelated to the central questions" in this case.  *Id.* at 13.  Plaintiff is mistaken.  "The 'will assist' requirement, under *Daubert*, 'goes primarily to relevance.'"  *Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (quoting *Daubert*, 509 U.S. at 591, 113 S. Ct. 2786) (trial court's exclusion of expert testimony was an abuse of discretion).  "Where state law provides the substantive law, relevance is necessarily determined by reference to what must be proven pursuant to the state-law claims asserted." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 978 F. Supp. 2d at 1065.

As a threshold issue, Plaintiff must prove she was in fact exposed to glyphosate-based Roundup to recover on her claims for strict liability and negligence under Florida law, and that she was exposed to enough of it to have caused her NHL.  *See generally* Complaint ¶ 144 ("Monsanto…designed, developed, [and] manufactured…Roundup products, which are defective and unreasonably dangerous, ***and to which Plaintiff was exposed***") (emphasis added); ¶ 154 ("Monsanto…had a duty to use reasonable care in the design…manufacture, labeling, marketing, advertisement, promotion, sale, and distribution of its Roundup products in order to avoid ***persons exposed to Roundup products*** to unnecessary and unreasonable risks [sic]") (emphasis added).

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

There is nothing "tangential" about this issue.  The dose of glyphosate Plaintiff allegedly absorbed based on that exposure is directly relevant to whether Roundup is capable of causing her NHL.  *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005) ("Dose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect"); *In re Deepwater Horizon Belo Cases*, No. 3:19CV963-MCR-HTC, 2022 WL 17721595, at *7 (N.D. Fla. Dec. 15, 2022) ("to say that a chemical agent is capable of causing a disease—i.e., that plaintiffs' burden on general causation is satisfied—without some reference to a particular dose, would be incoherent" because "the dose makes the poison"); *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d at 1113 ("The distinction between glyphosate's capacity to cause NHL at any hypothetical dose and its capacity to cause NHL at a human-relevant dose is important here . . ."). Dr. Schaeffer's well-qualified and reliable testimony will surely assist the jury in determining these issues.

**IV.     Dr. Schaeffer's Opinions Should Not Be Partially Excluded.**

Alternatively, Plaintiff argues that "if this Court does not exclude Dr. Schaeffer's opinions in their entirety," it should exclude the portions of his opinions involving comparing Plaintiff's calculated absorbed doses to the regulatory thresholds in the EPA RfD and the California NSRL. Pl. Mtn. at 14-15.  She makes no new arguments as to why these opinions should be excluded but rather repeats the same baseless criticisms of the regulatory thresholds that she advances in her methodologies challenge.  *See id.* 10-11, 14-15.  As argued *supra* Part II.B, the EPA RfD is inclusive of carcinogenic risk.  *See* White Decl., Ex. 6, at 21.  And, as Plaintiff concedes, the California NSRL also incorporated a cancer analysis into its dosage conclusion.  Pl. Mtn. at 10-11, 14; White Decl., Ex. 3, at 43:7-44:6; *id.* at 45:19-46:1. These regulatory thresholds are relevant evidence that the jury must be able to consider when determining whether Plaintiff was exposed to a safe dosage of glyphosate. Dr. Schaeffer should be permitted to offer opinions comparing Plaintiff's calculated dose to the established regulatory risk levels.

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

## **CONCLUSION**

For the reasons set forth above, the Court should deny Plaintiffs' Motion to Exclude Dr. Joshua Schaeffer's Testimony.

Dated:  June 29, 2023                                   Respectfully submitted,

                                                                     /s/ *Jed P. White*
                                                                     Jed P. White
                                                                     Attorneys for Defendant Monsanto Company

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of June, 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                                                     /s/ *Jed P. White*
                                                                     Jed P. White
                                                                     Attorneys for Defendant Monsanto Company

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

- 15 -

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. JOSHUA SCHAEFFER'S TESTIMONY