**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION,

*Salas v. Monsanto Company, et al.*, 3:21-cv-06173-VC

MDL No. 2741

Case No.: 3:16-md-02741-VC

**DEFENDANT MONSANTO COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. REID SMEDA'S TESTIMONY**

Hearing:
Date: July 27, 2023
Time: 10:00 a.m.
Place: San Francisco Courthouse, Courtroom 4 – 17th Floor

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .......... 5

BACKGROUND .......... 6

LEGAL STANDARD .......... 8

ARGUMENT .......... 9

I. Dr. Smeda Is Qualified To Offer His Opinions. .......... 9

II. Dr. Smeda's Opinions Are Based on Sufficient Facts and Data. .......... 10

A. It Does Not Matter that Dr. Smeda Did Not Visit Plaintiff's Properties. .......... 10

B. Dr. Smeda Did Not Need To Perform "Quantitative Calculations." .......... 12

III. Dr. Smeda Does Not Comment On Plaintiff's Credibility and His Opinions Will Assist the Trier of Fact. .......... 13

CONCLUSION .......... 14

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bryant v. 3M Co.*,
78 F. Supp. 3d 626 (S.D. Miss. 2015) ..... 14

*Cskios v. S.M. Constr. & Contr., Inc.*,
No. 18-CV9598, 2022 WL 3211462 (S.D.N.Y. Aug. 9, 2022) ..... 13

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ..... 8

*Hangarter v. Provident Life & Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ..... 8

*Lennar Ne. Props., Inc. v. Barton Partners Architects Planners, Inc.*,
No, 16-cv-12330, 2021 WL 534806 (D. Mass. Feb. 12, 2021) ..... 11

*Messick v. Novartis Pharms. Corp.*,
747 F.3d 1193 (9th Cir. 2014) ..... 8

*Nazarian v. City of Beverly Hills*,
No. CV-19-4391, 2021 WL 2638993 (C.D. Cal. Feb. 8, 2021) ..... 12

*Quilez-Velar v. Ox Bodies, Inc.*,
No. 12-1780, 2015 WL 418151 (D.P.R. Feb. 1, 2015) ..... 11, 12

*In Re Roundup Prod. Liab. Litig.*,
390 F. Supp. 3d 1102 (N.D. Cal. 2018) ..... 8

*Thomas v. Newton Int'l Enters.*,
42 F.3d 1266 (9th Cir.1994) ..... 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*,
978 F. Supp. 2d 1053 (C.D. Cal. 2013) ..... 8

*Varga v. Rent-A-Center East, Inc.*,
No., 10-cv-559, 2012 WL 2178866 (N.D.N.Y. June 13, 2012) ..... 14

*Wendell v. GlaxoSmithKline LLC*,
858 F.3d 1227 (9th Cir. 2017) ..... 8

**Other Authorities**

Federal Rule of Evidence 702 ........................................................................................ 8, 9

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

**INTRODUCTION**

Plaintiff Nancy Salas seeks to exclude Monsanto's expert, Dr. Reid Smeda. Dr. Smeda is a weed scientist. He will testify about the impact of weeds, control methods employed to manage weeds, and the use of glyphosate-based formulated herbicides (like Roundup) in weed management. Dr. Smeda will testify about whether Plaintiff's use of Roundup comports with Roundup's registered uses and logical weed-management practices.

Plaintiff makes three basic arguments in support of excluding Dr. Smeda's testimony. *First*, Plaintiff argues that Dr. Smeda is unqualified to offer expert opinions because he is not a toxicologist or a medical doctor. But Plaintiff misunderstands Dr. Smeda's role in this case. He has no opinion about, and will not testify about, whether Roundup caused Plaintiff's cancer. Rather, Dr. Smeda will offer expert testimony on Plaintiff's use of Roundup, including but not limited to her potential for contact with Roundup—a key issue in this case.

*Second*, Plaintiff argues that Dr. Smeda's opinions should be excluded because he did not rely on sufficient facts and data. Plaintiff mostly points to the fact that Dr. Smeda never physically inspected or collected weeds from Plaintiff's properties. But Plaintiff never cites any authority for why those steps are required for Dr. Smeda's opinion to be reliable. Nor does Plaintiff cite any authority for why the steps Dr. Smeda did take—examining climate data for Plaintiff's region, reviewing satellite photos of Plaintiff's properties, reviewing property records, reviewing the testimony of Plaintiff and her experts regarding her alleged use of Roundup, and relying on academic papers and his own extensive experience in weed science—were insufficient. In fact, the steps Plaintiff points to as necessary are unnecessary, as both Dr. Smeda himself and the law confirm. Moreover, Plaintiff's argument omits critical facts, most notably that the reason Plaintiff did not visit Plaintiff's properties in person is because *Plaintiff no longer owns those properties*. And anyway, Plaintiff's own expert, Dr. Sawyer, *never visited Plaintiff's properties, either*.

Plaintiff also faults Dr. Smeda for not performing "quantitative calculations" about how much Roundup Plaintiff was exposed to. But Dr. Smeda was not disclosed to testify about Plaintiff's quantitative exposure to Roundup—he was disclosed to testify about whether Plaintiff's alleged use of Roundup comports with logical weed management practices based on the geological





BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

and climate properties of her location, and Plaintiff's potential for contact with Roundup based on her testimony, application practices, the physical and chemical properties of Roundup, and the manner in which Roundup products are applied. Plaintiff's argument in this regard misses the point.

*Third*, Plaintiff argues that Dr. Smeda's testimony will be unhelpful to the jury because, according to Plaintiff, Dr. Smeda is impermissibly calling Plaintiff's credibility into question when it comes to her story about her Roundup spraying habits. But Dr. Smeda has no opinion about whether Plaintiff was telling the truth about her spraying habits. Dr. Smeda simply offers opinions about standard practices for controlling weeds—including the proper use of Roundup—and whether Plaintiff's own testimony squares with those standards. Dr. Smeda has no opinion about whether Plaintiff's testimony is true—that is for the jury to decide.

At bottom, none of Plaintiff's arguments has merit. Her motion is nothing more than an attempt to deprive the jury of critical context about whether Plaintiff's use of Roundup fits with how Roundup should be used. The Court should deny the motion.

## BACKGROUND

Dr. Reid Smeda is a renowned weed scientist who holds advanced degrees in horticulture, plant physiology, and crop and soil science. *See* Declaration of Jed P. White in Support of Defendant Monsanto's Company's Response in Opposition to Plaintiff's Motion to Exclude Dr. Reid Smeda's Testimony ("White Decl.), Ex. 1 at 1. Dr. Smeda is currently a Professor in the Division of Plant Sciences at the University of Missouri and has over 30 years of experience researching and teaching in the field of weed science. *Id.* Dr. Smeda has published extensively in the area of weed management and control (*id.* at 4-11) and, over the course of his career, has won numerous awards for his research. *Id.* at 1-2. He has extensive knowledge of and experience with glyphosate and glyphosate-based herbicides, having conducted numerous research projects, including in various contexts.

Monsanto disclosed Dr. Smeda as an expert in the area of weed science who will opine on the impact of weeds and invasive plants, control methods employed to manage weeds and invasive plants, and the use of glyphosate-based formulated herbicides in weed management. *See* White

Decl. Ex. 1 at 10-35. Dr. Smeda will explain how glyphosate-based herbicides work, herbicide application methods, calibration of herbicides, herbicide formulations, herbicide spray equipment, physical and chemical properties of herbicides, herbicide labels, and the concept of herbicide "drift." *Id.* Dr. Smeda will also opine on Plaintiff's use of Roundup. *Id*. at 40-46. As part of his preparation for this case, Dr. Smeda reviewed the deposition Plaintiff gave in this case, Google Earth images and property records of the properties where Plaintiff testified that she sprayed Roundup, and dozens of scientific papers concerning weed science and the use of glyphosate-based herbicides such as Roundup. *Id*. at Attachment B, pp. 1-12.

As part of his evaluation, Dr. Smeda reviewed Plaintiff's claimed application practices. Dr. Smeda found aspects of Plaintiff's testimony about her claimed application of Roundup inconsistent with proper weed management practices and with the proper use of Roundup. For example, Dr. Smeda opines that Plaintiff overestimates the areas of her properties that required treatment with Roundup because those properties were mostly cement or stone—and therefore would not have required the extensive amount of spraying Plaintiff alleges. White Decl. Ex. 1 at 40; White Decl. Ex. 2 at 46:20-48:3. Additionally, Dr. Smeda opines that Plaintiff did not "need to spray Roundup as frequently as she claims" she did because the weather patterns and soil composition in her part of the country—South Florida—"preclude[s] the need to spray 3-4 times per month year round." White Decl. Ex. 1 at 44, 41. Rather, as Dr. Smeda testified, "two to three applications per year would have been more than adequate to manage the weeds in her properties." White Decl. Ex. 2 at 70:11-13.

Dr. Smeda also has "extensive experience" with Roundup and the type of application equipment Plaintiff said she used to apply Roundup. White Decl. Ex. 2 at 66:24-68:18; 87:11-25. Based on his experience and Plaintiff's testimony, Dr. Smeda opines that Plaintiff would have had only minimal contact with Roundup while spraying because "the type of equipment that she used … would have been putting glyphosate in a downward direction" towards the ground. *Id*. at 67:1-5. Plus, Dr. Smeda opines, droplets that are released from the type of equipment Plaintiff used are "large" and "coarse" and come out at "minimal pressure"—meaning those droplets "quickly fall to the ground." White Decl. Ex. 1 at 45; *see also* White Decl. Ex. 2. These opinions are directly

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

within Dr. Smeda's expertise on the concept of herbicide "drift." Dr. Smeda's testimony on a Roundup user's possible contact with the product based on application method and environmental factors is central to the case, beyond the knowledge of ordinary jurors, and squarely within Dr. Smeda's expertise, contrary to what Plaintiff incorrectly argues.

**LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. Fed. R. Evid. 702. "The [Rule 702] inquiry is 'flexible,' and … should be applied with a 'liberal thrust' favoring admission." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citations omitted) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014)).

"Rule 702 'contemplates a broad conception of expert qualifications.'" *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir.1994)) (alterations omitted). "So long as the expert's testimony is within the reasonable confines of his subject area, a lack of particularized expertise generally goes to the weight of the testimony, not its admissibility." *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1111 (N.D. Cal. 2018) (quotations omitted). "The trial court has broad latitude in deciding how to determine the reliability of an expert's testimony and whether the testimony is in fact reliable." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013) (quotations omitted). Ultimately, "the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system . . . to attack shaky but admissible evidence." *Wendell*, 858 F.3d at 1237 (quoting *Daubert*, 509 U.S. at 596) (alterations omitted).



BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

## ARGUMENT

### I. Dr. Smeda Is Qualified To Offer His Opinions.

Plaintiff argues that Dr. Smeda should not be permitted to testify because he is not a toxicologist or a medical doctor. Pl. Mot. at 9. But Dr. Smeda never claimed to be either. He is a weed scientist, and his extensive qualifications in the field of weed science, including his experience with glyphosate-based herbicides, are not seriously in question. Indeed, Plaintiff's Motion does not directly challenge them.

Plaintiff's argument fundamentally misunderstands Dr. Smeda's role in this case. Plaintiff appears to mistakenly argue that because Dr. Smeda's report discusses glyphosate's relative toxicity, Dr. Smeda must be offering opinions about whether glyphosate exposure caused Plaintiff's cancer. Not so. Dr. Smeda has not been retained to opine on medical causation. Dr. Smeda confirmed at his deposition that he is "not qualified to offer expert opinions on human toxicology" and he will not offer any such opinions at trial. White Decl. Ex. 2 at 30:24-31:3. As a weed scientist, however, Dr. Smeda is familiar with the acute toxicity of glyphosate and how it compares to other herbicides and products, as set forth in his report. Indeed, Dr. Smeda confirmed at his deposition that his expert report's discussions of glyphosate's toxicity "was to compare glyphosate to other commonly used herbicides," a topic about which he is undoubtedly an expert. White Dec. Ex. 2 at 32:21-24; *id.* at 37:23-38:1 ("I'm not a cancer expert. Again this [table in his report] is just to compare acute toxicity of glyphosate versus other commonly used herbicides, and it has a low acute toxicity.").

Plaintiff's motion also misses the mark by taking an overly narrow view of the questions at issue in this case. Central to this case are Plaintiff's allegations regarding the frequency, duration, and contact with the herbicide. In order to evaluate these claims, the jury needs to understand how weeds grow, how glyphosate works in plants, and how glyphosate products like Roundup are applied. In this regard, Dr. Smeda's testimony will directly "help the trier of fact to understand the evidence" and "determine a fact at issue" in this case. Fed. R. Evid. 702(a). And an expert "may educate the factfinder about general principles" relevant to the case "without ever attempting to apply these principles to the specific facts of the case." Fed. R. Evid. 702, advisory committee note

to 2000 amendment. So Dr. Smeda's opinions would be admissible as relevant background to educate the jury in any event.[1]

On these opinions, Plaintiff says nothing. The reason is simple: Dr. Smeda is undeniably qualified to offer his opinions. He should be permitted to testify.

## II. Dr. Smeda's Opinions Are Based on Sufficient Facts and Data.

### A. It Does Not Matter that Dr. Smeda Did Not Visit Plaintiff's Properties.

Plaintiff makes much of the fact that Dr. Smeda did not conduct a site visit to Plaintiff's properties, did not collect soil samples from Plaintiff's properties, did not have knowledge of which specific weed species were present on Plaintiff's property, and has otherwise never been to the Key Largo area. Pl. Mot. 9-11; 12; 13. According to Plaintiff, these facts render Dr. Smeda's opinions inadmissible. Plaintiff is wrong.

Dr. Smeda addressed all of this at his deposition—which Plaintiff never mentions. Initially, there is a good reason that Dr. Smeda did not visit Plaintiff's properties: *Plaintiff no longer owns them*. Dr. Smeda testified that this is the "reason [he] couldn't go." White Decl. Ex. 2 at 97:11-19. It would, perhaps obviously, have been highly inconvenient and unduly burdensome to the current property owners—who are not parties to this case—to have Dr. Smeda conduct an intrusive site visit. That is especially so considering that Dr. Smeda himself testified that such a site visit was unnecessary to form his opinions: he testified that that "despite not being able to visit" Plaintiff's properties he was nonetheless "able to gather enough information and resources to reach [his] opinions in this case" based on "all the different documents that [he] was provided and [the] research" he did. White Decl. Ex. 2 at 97:22-98:2.

Plaintiff omits from her Motion the fact that her own expert, Dr. Sawyer, *also never visited Plaintiff's properties*. White Decl. Ex. 3 at 33:17-19 ("[Q:] Did you do a site visit in this case? A: No."). Plaintiff urges this Court to exclude Monsanto's expert for making the same decision as her own expert. The Court should reject Plaintiff's hypocritical argument.

---

[1] For these reasons, the Court should reject Plaintiff's argument that Dr. Smeda should be prohibited from testifying about "his general report on the history of weed control and the benefits of herbicides." PL. Mot. 13-15. Those opinions are not only useful background for the jury, they bear directly on the issues to be litigated in this case.



BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

Nor does it matter that Dr. Smeda did not "conduct an inventory of the weed species on the property [*sic*]." Pl. Mot. 12. Plaintiff asserts that the specific species of weeds on Plaintiff's properties matters because "different species of weeds grow at different rates." *Id*. But, again, Dr. Smeda addressed this at his deposition, explaining: "[E]ven though there could be a specific species that I'm not aware of, these weeds are all going to follow those same types of weeds biology patterns; emergence, time for development, and with [Plaintiff's] description of this frequency of glyphosate application, again, it's an excellent herbicide. It would have taken some time for any species to grow back." White Decl. Ex. 2 at 72:20-73:1. Put another way, Dr. Smeda testified that determining the specific type of weed species on the property would not have changed his opinions given weed biology, emergence patterns, and the effectiveness of Roundup. Pl. Mot. 12.

The Court should also reject Plaintiff's argument that Dr. Smeda's opinions are unreliable because he relied on average—as opposed to year-by-year—weather patterns when determining the needed frequency of Roundup application in southern Florida. Pl. Mot. 12. By definition, averages capture the year-over-year data to which Plaintiff alludes. Dr. Smeda did not testify in absolutes. He stated "two to three applications per year would have been more than adequate to be able to manage weeds in her properties." White Decl. Ex. 2 at 70:11-13. This accounts for any yearly variation in rainfall patterns.

It is telling that Plaintiff cites no authority whatsoever—legal or otherwise—in support of her argument that Dr. Smeda was required to physically go to Florida, inspect Plaintiff's properties, and take a "weed inventory" in order for his opinion to be reliable. She just asserts that he did not take those steps. But as one federal court observed, when an argument in favor of an expert's exclusion "boils down to complaints that [the expert] did not perform specific tests or calculations in the course of his analysis" and where the proponent of exclusion "do[es] not show that these specific tests must have been carried out to provide a foundation for [the expert's] opinion," the expert's opinion should not be excluded. *Quilez-Velar v. Ox Bodies, Inc.*, No. 12-1780, 2015 WL 418151 at *7 (D.P.R. Feb. 1, 2015); *see also, e.g.*, *Lennar Ne. Props., Inc. v. Barton Partners Architects Planners, Inc.*, No, 16-cv-12330, 2021 WL 534806 at *1-2 (D. Mass. Feb. 12, 2021) (rejecting the defendant's argument that the plaintiff's experts should be excluded "because they

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

did not conduct a site visit" during the time period relevant to the case but instead reviewed only documents and photos of the site; reasoning that the mere fact that the experts "did not personally observe the building conditions does not prevent them from offering expert opinions based on those conditions as long as they have been made aware of them"); *Nazarian v. City of Beverly Hills*, No. CV-19-4391, 2021 WL 2638993 at *4 (C.D. Cal. Feb. 8, 2021) (rejecting an argument that an orthopedic expert's opinions were not based on sufficient facts and data because he did not conduct specific tests that the plaintiff said he should have and concluding that such questions were appropriate for cross-examination). There is absolutely no evidence or argument that any of these alleged deficiencies in Dr. Smeda's review were necessary to forming his opinions. To the contrary, as discussed above, Dr. Smeda addressed these question at his deposition, a fact which Plaintiff ignores.

Plaintiff also ignores what Dr. Smeda did rely on, which was extensive. He reviewed satellite photos and property records of Plaintiff's properties, which clearly show how much of her property is covered in cement or stone (and thus not conducive to weed growth). White Decl. Ex. 1 at 38-39. He reviewed reliable weather data from the federal government to determine typical seasonal weather patterns in Plaintiff's region (because weather impacts weed growth). *Id*. at 41-42. And, of course, he relied on dozens of academic and scientific articles in the fields of weed science and glyphosate-based herbicide use, *id*. at Attachment B, pp. 1-12, and his own "extensive experience with herbicides over the last 30 years." White Decl. Ex. 2 at 43:19-22. Plaintiff's argument is meritless.

**B. Dr. Smeda Did Not Need To Perform "Quantitative Calculations."**

Plaintiff faults Dr. Smeda for not performing "quantitative calculations" of "how much Roundup [Plaintiff] sprayed, how many sprays [Plaintiff] performed, how many feet [Plainitff] covered while spraying, or any other metric of [Plaintiff's] spraying." Pl. Mot. 11. Plaintiff is wrong.

For one thing, Plaintiff again fails to cite any authority for why such calculations would be necessary in the first place for Dr. Smeda's opinions to be reliable—so Plaintiff has failed to establish that the absence of these calculations warrants Dr. Smeda's exclusion. *Quilez-Velar*, 2015

WL 418151 at *7. For another, this argument again represents a fundamental misunderstanding by Plaintiff about Dr. Smeda's testimony and opinions. Dr. Smeda has not been disclosed to testify about, and will not testify about, any quantitative measure of exposure to Roundup. So the fact that Dr. Smeda offers no quantitative exposure assessment in this case is irrelevant. Instead, and as described above, Dr. Smeda will offer opinions about the potential for a Roundup user to come into contact with Roundup based on the physical and chemical properties of the herbicide, the types of equipment used to mix and apply Roundup, the manner of application, and the Plaintiff's own stated use of Roundup . Dr. Smeda's testimony on these topics is beyond the knowledge of common jurors and will assist the fact finder in evaluating Plaintiffs' uses of Roundup, including Plaintiff's alleged contact with Roundup while spraying. These opinions are properly within Dr. Smeda's expertise. Plaintiffs' focus on a "quantitative calculation" simply misses the point.

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

**III. Dr. Smeda Does Not Comment On Plaintiff's Credibility and His Opinions Will Assist the Trier of Fact.**

Finally, Plaintiff argues that Dr. Smeda's opinions would be unhelpful to the jury because all Dr. Smeda is really doing is commenting on "the credibility of [Plaintiff's] testimony" with regard to how frequently she sprayed Roundup and the technique she used to spray Roundup. Pl. Mot. 15. But Dr. Smeda simply offers no opinions about the truthfulness of the Plaintiff's testimony about Plaintiff's applications. For example, Dr. Smeda opines, *based on Plaintiff's own testimony*, that Plaintiff "did not follow proper weed management practices" in her use of Roundup. White Decl. Ex. 1 at 44. He opines, *based on Plaintiff's own testimony*, that Plaintiff's "potential for contact" with Roundup "is minimal." *Id*. at 45. And he opines, *based on Plaintiff's own testimony*, that Plaintiff "overestimates the frequency of spraying needed to achieve her weed control objective." *Id*. at 40.

Dr. Smeda never opines about whether Plaintiff's testimony about any of these topics is true or false—that is for the jury to decide. Rather, based on his experience and knowledge in the field, he offers testimony that many aspects of Plaintiff's alleged uses of Roundup do not square with standard practices or uses for applying Roundup. Courts regularly admit expert testimony of this type. *See, e.g., Cskios v. S.M. Constr. & Contr., Inc.*, No. 18-CV9598, 2022 WL 3211462 at *5

(S.D.N.Y. Aug. 9, 2022) (denying a motion to exclude an expert on the proper use of ladders at a construction site, reasoning that the testimony "may help the jury decide whether the ladder Plaintiff was using at the time was safe, which is a central issue in this case"); *Varga v. Rent-A-Center East, Inc.*, No., 10-cv-559, 2012 WL 2178866 at *4-6 (N.D.N.Y. June 13, 2012) (denying a motion to exclude two experts who opined about whether the plaintiff was properly using a seatbelt at the time of her accident); *Bryant v. 3M Co*., 78 F. Supp. 3d 626, 631-32 (S.D. Miss. 2015) (denying a motion to exclude an expert on the proper use of respirators). This Court should do the same.

Plaintiff also suggests (in her conclusion) that "no aspect of Dr. Smeda's opinions would assist the jury in determining" the "central issue in this case" which is whether Roundup caused Plaintiff's cancer. Pl. Mot. 16. Plaintiff is, again, incorrect. Dr. Smeda's testimony about proper Roundup usage bears directly on the issue of Plaintiff's exposure to Roundup—which in turn is critical to the issue of causation in this case.[2]

**CONCLUSION**

For the reasons set forth above, the Court should deny Plaintiffs' Motion to Exclude Dr. Reid Smeda's Testimony.

---

[2] Weed scientists like Dr. Smeda have been permitted to testify in numerous prior Roundup trials on the same general and case-specific topics that Dr. Smedawill opine about here, over objections similar to those raised here. *See, e.g.*, White Decl. Ex. 4, *Ferro et al., v. Monsanto Company*, Order Regarding the Parties Motions to Exclude Experts, at p. 35-36 (denying motion to exclude Dr. Joseph DiTomaso); White Decl. Ex. 5, *Neal v. Monsanto*, 3/22/22 Hearing Tr. at 190:22-192:18 (same); White Decl. Ex. 6, *Caballero v. Monsanto*, Order on Pretrial Matters Including Summary Judgment, Sargon Challenges, Motions in Limine, Requests for Judicial Notice at p. 30-32 (same); White Decl. Ex. 7, *L. Johnson v. Monsanto*, 6/9/22 Trial Tr. at 12:5-20:3 (denying motion to exclude Dr. Carol Mallory-Smith); White Decl. Ex. 8, *D. Johnson v. Monsanto*, 5/17/18 Order on Monsanto's Omnibus Sargon Motion; Monsanto's Motion for Summary Judgment; Plaintiff's Omnibus Sargon Motion; Plaintiff's Motion for Summary Adjudication at p. 37 (denying motion to exclude Dr. Kassim Al-Khatib); White Decl. Ex. 9, *Wyzik v. Monsanto Co.*, 10/27/22 Trial Tr. at 220:10-221:19, 224:4-12 (plaintiffs did not challenge during oral argument whether Dr. McElroy could testify regarding matters of duration and application of Roundup, Roundup's health benefits, or how Roundup labeling impacts its application).



BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

Dated: June 29, 2023

Respectfully submitted,

/s/ *Jed P. White*

Jed P. White

Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of June, 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726