# EXHIBIT 4

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

PAUL FERRO, *et al.*,  )
                                                               )
      Plaintiffs,  )
                                                               )   Cause No. 20SL-CC03678
v.  )
                                                                 )   Division No. 18
MONSANTO COMPANY,  )
                                                                 )
     Defendant.  )

**FILED**
**OCT 13 2022**
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

## ORDER REGARDING THE PARTIES' MOTIONS TO EXCLUDE EXPERTS

Presently before the Court are motions to exclude experts filed by Defendant Monsanto Company ("Monsanto") and Plaintiffs. Monsanto has filed the following seven motions to exclude and accompanying exhibits directed at Plaintiffs' expert witnesses:

1. Monsanto's Motion to Exclude the Opinions of Dr. Andrew Schneider and Memorandum of Law in Support;
2. Monsanto's Motion to Exclude the Testimony of Dr. William R. Sawyer;
3. Monsanto's Motion to Exclude the Testimony of Dr. Alfred Neugut;
4. Monsanto's Motion to Exclude the Testimony of Dr. Joel Joseph Gagnier;
5. Monsanto's Motion to Exclude the Testimony of Dr. Ambrose K. Charles and its Brief in Support;
6. Monsanto's Motion to Exclude the Testimony of Dr. Christopher Portier; and
7. Monsanto's Motion to Exclude the Testimony of Charles Benbrook.

Plaintiffs have filed the following three motions to exclude and accompanying exhibits directed at Monsanto's expert witnesses:

1. Plaintiffs' *Daubert* Motion to Exclude the Opinions and Testimony of Defense Expert, Cristian Tomasetti, Ph.D.;
2. Plaintiffs' *Daubert* Motion to Exclude the Opinions and Testimony of Defendant's Expert, Joseph DiTomaso, Ph.D.; and
3. Plaintiffs' *Daubert* Motion to Exclude the Opinions and Testimony of Case-Specific Defense Experts, Lauren Smith, M.D. and Ran Reshef, M.D.

The motions are fully briefed.

1

On October 12, 2022, the Court conducted a pretrial conference and heard arguments from counsel on these motions to exclude and other matters. After careful consideration of the legal briefs, exhibits, and oral arguments, the motions were submitted for ruling. The Court hereby makes the following rulings.

## I. LEGAL STANDARD

Section 490.065, RSMo, governs admissibility of expert testimony:

(1) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
    (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) The testimony is based on sufficient facts or data;
    (c) The testimony is the product of reliable principles and methods; and
    (d) The expert has reliably applied the principles and methods to the facts of the case . . . .

Sec. 490.065.2, RSMo.

Expert testimony is therefore admissible only if the expert's knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." *Id.* The testimony must also be the product of reliable methods that are reliably applied to the case's facts.

"Under section 490.065.2, trial courts must act as gatekeepers to ensure that the testimony sought to be admitted ... is not only relevant, but reliable." *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 700 (Mo. App. E.D. 2020) (internal quotation marks omitted) (quoting *State ex rel. Gardner v. Wright*, 562 S.W.3d 311, 317 (Mo. App. E.D. 2018); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). Since this amended version of section 490.065 came into effect in 2017, Missouri courts have used a three-part standard to determine the admissibility of expert opinion testimony: "(1) whether the expert is qualified, (2) whether the testimony is relevant, and (3) whether the testimony is reliable." *State v. Suttles*, 581 S.W.3d 137, 147 (Mo. App. E.D. 2019)

2

with an emphasis on biostatistics and his experience in research and academia. *See* sec. 490.065.2(1), RSMo. His general causation opinions are based on reliable methodologies demonstrated by his own substantial research, which has been published in numerous peer-reviewed journals and presented in other litigation. Plaintiffs' other arguments, including their critique that Dr. Tomasetti did not sufficiently consider environmental factors, relate to the weight the jury should give to his opinions rather than their admissibility. *See Lauzon*, 270 F.3d at 693 (whether an expert "failed to rule out *every* possible alternative cause" goes to weight and not admissibility) (emphasis in original) (quoting *Westberry*, 178 F.3d at 265); *Larson*, 414 F.3d at 941 (quoting *Hose*, 70 F.3d at 974). *See also Alcorn*, 50 S.W.3d at 246 (Mo. banc 2001) ("Any weakness in the factual underpinnings of the expert's opinion or in the expert's knowledge goes to the weight that testimony should be given and not its admissibility.").

For these reasons, the Court denies Plaintiffs' motion to exclude Dr. Tomasetti.

### I. Plaintiffs' Motion to Exclude Dr. Joseph DiTomaso

Dr. DiTomaso is a weed scientist who has been designated by Monsanto to offer opinions on "the impact of weeds and invasive plants, control methods employed to manage weeds and invasive plants, and the use of herbicides, including glyphosate-based formulated products, in weed management." Monsanto's Amended Disclosure of Expert Testimony at 4. Additionally, he has been designated to offer opinions on how herbicides work, appropriate application methods, herbicide labels, the use and benefits of herbicides in residential, urban, and industrial settings.

Plaintiffs move to exclude Dr. DiTomaso's opinions in their entirety. Plaintiffs do not question his expertise in the field of weed management; however, they argue his proffered testimony in this case invades the province of the jury. In addition to the topics listed above, Dr. DiTomaso was designated to "opine on the particular glyphosate-based formulated products

33

applied, and the nature and circumstances of these applications, by Plaintiffs Stacey Moore and William Pleu." *Id.* Plaintiffs assert he intends to testify to the jury that Plaintiffs' descriptions of their Roundup exposures are not credible and that, even if they were credible, any exposures they experienced would have been negligible, if any. Plaintiffs characterize such testimony as attacking Plaintiffs' credibility, which is not a proper subject for expert testimony. *See State v. Churchill*, 98 S.W.3d 536, 538–39 (Mo. banc 2003) ("When determining the admissibility of opinion testimony, expert witnesses should not be allowed to give their opinion as to the veracity of another witness's statement, because in so doing, they invade the province of the jury."). Plaintiffs also object to Dr. DiTomaso's report criticizing Plaintiffs' expert Dr. Charles's opinions that were based, in part, on Plaintiffs' deposition testimony.

Plaintiffs also argue Dr. DiTomaso's opinions lack foundation. He is not a medical doctor, toxicologist, or industrial hygienist. Rather, Plaintiffs contend he disregards Plaintiffs' sworn testimony about their exposure to Roundup based solely on his belief that the amount of exposure claimed was unlikely based on his and other's anecdotal experiences using Roundup and other herbicides.

Lastly, Plaintiffs contend Dr. DiTomaso's only other topics of testimony concern how herbicides work and the alleged benefits of using them. Plaintiffs agree such topics would be within Dr. DiTomaso's area of expertise as a weed scientist, but they argue such topics are irrelevant to any issues in this case and should be excluded.

Monsanto opposes Plaintiffs' motion to exclude Dr. DiTomaso. Monsanto argues he is qualified to give expert opinions on topics beyond the understanding of an ordinary juror.

> These topics include: (1) the types of herbicides available to consumers; (2) the types of spray systems and spray system parts that are commercially available; (3) the amount of time it takes to treat an area with Roundup; (4) standard practices for the use of Roundup with other weed control techniques; (5) the standard uses for

34

>Roundup; (6) how Roundup affects plants that are not grown from genetically-modified "Roundup Ready" seeds; and (7) the principle of "drift" and how that principle applies to herbicide applications.

Monsanto's response memorandum at 5. Monsanto contends each of these topics relate directly to a key issue in the case: Plaintiffs' actual amount of exposure to Roundup through their use of the product.

Monsanto also asserts Dr. DiTomaso has no intent of opining on Plaintiffs' credibility; rather, he intends to educate the jury about weed management and testify that the way Plaintiffs claimed to have used Roundup is inconsistent with Roundup's registered uses and what he considers to be logical weed management practices. Monsanto argues the fact that Dr. DiTomaso's testimony may cause the jurors themselves to question the accuracy or reliability of Plaintiffs' testimony does not turn his expert opinions into impermissible opinions on witness credibility.

Lastly, Monsanto states Dr. DiTomaso is qualified despite his lack of medical credentials to testify about Plaintiffs' dermal *contact* with Roundup as compared to dermal *absorption*. According to Monsanto, such dermal contact falls squarely within his expertise in weed management practices.

The Court finds that Monsanto has met the threshold requirements under section 490.065.2, RSMo, to present Dr. DiTomaso's testimony to the jury in this case. He is "qualified as an expert by knowledge, skill, experience, training, or education" based on his Ph.D. in botany and weed science and work in academia. *See* sec. 490.065.2(1), RSMo.

Plaintiff is correct that "the general rule is that expert testimony is inadmissible if it relates to the credibility of witnesses because it invades the province of the jury." *State v. Link*, 25 S.W.3d 136, 143 (Mo. banc 2000). "However, it is proper for a witness to testify to specific facts that discredit the testimony of another witness, as long as the witness does not comment directly

35

on the truthfulness of another witness." *Id.* ("[I]t did not invade the province of the jury for Officer Maher to explain the general concept of false sightings. . . . Nor was it improper for him to state specific facts that tended to discredit Ms. Burke's sighting. . . . But it was improper for him to go one step further and say that the police classified the information from Ms. Burke as a false sighting."). Here, Dr. DiTomaso may properly testify about standard uses of Roundup that might contradict Plaintiffs' purported uses so long as he does not "go one step further" and say Plaintiffs' testimony about their use and exposure to Roundup is untruthful.

Plaintiffs' other argument that Dr. DiTomaso's proposed testimony concerning the uses and benefits of herbicides like Roundup is irrelevant to issues in this case fails. "The litigants [in a design defect case] are certainly entitled to assist the jury in defining the term 'unreasonably dangerous' by presenting evidence 'that the utility of a design outweighs its risks, or that consumer expectations were violated, or any other theory of unreasonable dangerousness supported by the evidence.'" *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 90 (Mo. App. W.D. 2006) (quoting *Newman v. Ford Motor Co.*, 975 S.W.2d 147, 154 (Mo. banc 1998)).

For these reasons, the Court denies Plaintiffs' motion to exclude Dr. Tomasetti.

### J. Plaintiffs' Motion to Exclude Dr. Lauren Smith and Dr. Ran Reshef

Dr. Smith is a pathologist and professor of pathology, and Dr. Reshef is an associate professor of medicine. Both of them have been designated by Monsanto to offer opinions on general and specific causation.

Plaintiffs move to preclude Dr. Smith from testifying as to the following topics:

> (1) her personal usage of Roundup products; (2) opinions and testimony regarding the truthfulness or credibility of descriptions of their exposures to Roundup; (3) that "bad luck" and/or "random replication error" caused the Plaintiffs' non-Hodgkin's lymphoma ("NHL"); and (4) a number of "other risk factors" for NHL that Dr. Smith does not attribute to causing the Plaintiffs' NHL.

While the Court will permit Dr. Benbrook to read what EPA rules say, he may not offer any narration or his opinion on whether Monsanto followed the EPA rules. If the Court finds this testimony has no value, it may stop Dr. Benbrook at any time.

8. Plaintiffs' *Daubert* Motion to Exclude the Opinions and Testimony of Defense Expert, Cristian Tomasetti, Ph.D. is **DENIED**.

9. Plaintiffs' *Daubert* Motion to Exclude the Opinions and Testimony of Defendant's Expert, Joseph DiTomaso, Ph.D. is **DENIED**.

10. Plaintiffs' *Daubert* Motion to Exclude the Opinions and Testimony of Case-Specific Defense Experts, Lauren Smith, M.D. and Ran Reshef, M.D. is **GRANTED IN PART** to preclude them from testifying about their personal use of Roundup or Plaintiffs' use of Roundup, which Monsanto recognizes as moot on pages 17-18 of its response memorandum. In all other respects, Plaintiffs' motion to exclude directed at Dr. Smith and Dr. Reshef is **DENIED IN PART**.

**SO ORDERED:**

_____   10-13-22
Hon. Ellen H. Ribaudo
Circuit Judge, Division 18

45