# EXHIBIT 7






IN THE CIRCUIT COURT OF THE STATE OF
OREGON FOR JACKSON COUNTY

LARRY JOHNSON and GAYLE JOHNSON,

    Plaintiffs,

v.

MONSANTO COMPANY, a corporation; EAGLE POINT HARDWARE, LLC, a corporation,

    Defendants.

_____

**TRANSCRIPT OF**

**JURY TRIAL - DAY TWELVE**

**HELD ON**
**THURSDAY, JUNE 9, 2022**

**BEFORE**
**THE HONORABLE CHARLES KOCHLACS**

**JACKSON COUNTY CIRCUIT COURTHOUSE**
**100 SOUTH OAKDALE AVENUE**
**MEDFORD, OREGON 97501**

```
 1                        APPEARANCES
 2
 3   For the Plaintiffs:
 4   Charles Miller, Esquire
 5   Eric Pearson, Esquire
 6   HEYGOOD ORR & PEARSON
 7   6363 North State Highway 161, Suite 450
 8   Irving, TX 75038
 9   (214) 237-9001
10   (214) 237-9902 Fax
11   charles@hop-law.com
12
13   David Linthorst, Esquire
14   ANDERSEN MORSE & LINTHORST
15   1730 East McAndrews, Suite A
16   Medford, OR 97504
17   (541) 773-7000
18   (541) 608-0535 Fax
19   david@andersenlaw.com
20
21
22
23
24
25
```

```
 1                  APPEARANCES CONTINUED
 2
 3  Kimberly Loutey, Esquire
 4  KIRKENDALL DWYER
 5  4343 Sigma Road, Suite 200
 6  Dallas, TX 75244
 7  (877) 503-1595
 8
 9  For the Defendants:
10  Frederic Norris, Esquire
11  HUSCH BLACKWELL, LLP
12  1999 Harrison Street, Suite 700
13  Oakland, CA 94612
14  (510) 768-0650
15  (510) 768-0651 Fax
16  rick.norris@huschblackwell.com
17
18
19
20
21
22
23
24
25
```

**APPEARANCES CONTINUED**

Dominic Campanella, Esquire
**BROPHY SCHMOR, LLP**
201 West Main Street, 5th Floor
Medford, OR 97501
(541) 772-7123
(541) 772-7249 Fax
dcampanella@brophylegal.com
rbennett@brophylegal.com

Kurt Mathas, Esquire
George Lombardi, Esquire
Karalena Guerrieri, Esquire
**WINSTON & STRAWN, LLP**
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
(312) 558-5700 Fax
kmathas@winston.com

**APPEARANCES CONTINUED**

Alexandra Whitworth

**BRYAN CAVE LEIGHTON PAISNER LLP**

120 Broadway, Suite 300

Santa Monica, CA 90401

(310) 576-2100

(310) 576-2200 Fax

alex.whitworth@bryancave.com

```
 1  I've raised, your Honor.  So we'd just like some
 2  guidance.  And, frankly, we don't think this witness
 3  should be allowed to testify at all.
 4            THE COURT:  Okay.
 5            MR. NORRIS:  Yes, your Honor.  I know you
 6  like guidance from other courts.  Weed scientists
 7  have testified in two other prior trials.  It's
 8  never been excluded on a weed science basis.
 9            And I am not going to suggest that -- she
10  is not going to talk about "feed the world."  I want
11  to be very clear about that.  Your Honor, in the
12  motion in limine on that, allowed us to introduce
13  evidence as to the utility around the home, and
14  that's all she's going to talk about and how it
15  works around the home.
16            She's going to talk about how Roundup
17  works and how over time, when you reduce the weed
18  burden on the property, the number of weeds go down
19  and the amount of spraying would need to go down
20  over time.  And it -- and which goes slightly to the
21  weight and credibility of whether or not they were
22  spraying as much as they say that they were spraying
23  on this property. That is perfectly proper to call
24  some -- into question the amount of use or the
25  amount of bottles that were used on the property.
```

```
 1  That is solely within the province of an expert
 2  witness to talk about and to address why that might
 3  not be needed, and also the times of year that
 4  sprays would be needed based on her experience here
 5  in Oregon with weeds and when they grow, where they
 6  grow, how they grow.
 7           And -- but, no, she's not -- she's not a
 8  medical doctor.  She's not going to talk about Mr.
 9  Johnson and whether his cancer was caused by
10  Roundup.  She's not going to talk about dermal
11  absorption issues, which I think they raised. She's
12  going to talk about weeds, how they work, how
13  Roundup works on those weeds, how it works with --
14  operates with a shikimate pathway to kill those
15  weeds.  And how -- and to the extent she's talking
16  about labels, she's going to talk about as a weed
17  scientist how they rely upon the EPA for what's on
18  the label and that guides the way that they work
19  with not just Roundup but other herbicides that they
20  use in their job.
21           Her testimony is not likely to last more
22  than, you know -- this is not a -- this is a
23  component of our case, but it's a -- it's likely to
24  be maybe 45 minutes to an hour at most on direct
25  examination, just hitting on the topics within her
```

1  area of expertise.  Is there anything else?
2           **THE COURT:**  Here's --
3           **MS. LEE:**  Go ahead.
4           **THE COURT:**  The utility around the house,
5  that's fine.  How it works is fine.  Weeds go down
6  over time is fine. But I just don't see the
7  testimony about he shouldn't have used so much.
8  Like that's not -- is that on the label?  Like --
9           **MR. NORRIS:**  She's not going to say that.
10 She's absolutely not going to say that.
11          **THE COURT:**  My notes say "shouldn't have
12 used so much."
13          **MR. NORRIS:**  No.  She's not going to use
14 those words in any way, shape, or form.  She's just
15 going to say that the way he described using it was
16 proper.  Most likely, wouldn't have needed six or
17 more bottles per year.  That seems a little bit
18 high.  But otherwise, the way he used it was
19 consistent.
20          She's also going to talk about the fact
21 that she went on the site inspection, she saw the
22 property, she took photographs of the weeds at the
23 property.  As it relates to other chemicals, she's
24 not going to talk about the other chemicals in the
25 shed.

1           **MS. LEE:**  Yeah.

2           **MR. NORRIS:**  But she took, you know,
3    photographs when she was there.

4           **THE COURT:**  So six or more bottles seeming
5    high, that almost seems like that would benefit you,
6    because he sprayed all that lawn.

7           **MR. PEARSON:**  But what they're doing,
8    Judge -- and I mean, they basically said this.
9    They're trying to bring in someone who's a weed
10   science expert with all the credibility that
11   entails.  She's highly educated.  She's highly
12   qualified as a weed scientist.  And they're trying
13   to, in a sort of backhanded way, attack Mr.
14   Johnson's credibility about his usage.  Counsel even
15   admitted that.

16          But unless they're going to concede the
17   connection between -- between Roundup and cancer,
18   whether he used a lot or a little, you know, again,
19   the jury -- the jury is the judge of Mr. Johnson's
20   credibility.  They're trying to get her to say, "He
21   didn't need to use this much.  Therefore, I don't
22   think he really told the truth about what he did
23   use."

24          Because let's say she proves he used too
25   much Roundup.  That has no relevance.  The only

```
 1  relevance could be if she's implying -- and counsel
 2  just said that's exactly what they're doing -- that,
 3  "No reasonable person would have used as much
 4  Roundup as Mr. Johnson said he did, and here's why,
 5  as a weed scientist, he didn't need to do that.
 6  Therefore, what I'm telling you, jury, is Mr.
 7  Johnson was lying.  And you shouldn't believe what
 8  he said."
 9          THE COURT:  Okay.  So that's improper if
10  that's --
11          MR. PEARSON:  That's exactly.
12          THE COURT:  If they're saying six or more
13  bottles seems high, or seems like a lot --
14          MR. PEARSON:  For 40 -- over 40 years?
15          MR. NORRIS:  No.  Per year.
16          MS. LEE:  The testimony is per year.
17          MR. PEARSON:  Again, Judge.  Let's say --
18          THE COURT:  Are they trying to say, well,
19  he's lying about that?
20          MR. PEARSON:  Yes.
21          THE COURT:  Or that's the amount he used
22  and that seems high?  There's a difference.
23          MR. PEARSON:  The only utility of that
24  argument, again, they're not conceding Roundup
25  causes cancer.  So more use means more likely to
```

```
 1  have cancer, they're not making that argument.
 2  They've dropped the misuse defense.  They've agreed
 3  they're not going to allege Mr. Johnson misused the
 4  product. They don't have any kind of comparative or
 5  contributory argument.
 6            So if the argument is Mr. Johnson used too
 7  much Roundup, that's not relevant to any issue in
 8  trial.  The only relevance -- and counsel admitted -
 9  - is they're trying to say, "Look, jury, wink, wink,
10  nod, nod, Mr. Johnson lied to you. There's no way he
11  used this much, because if he used that much, that
12  was way more than he needed to use."
13            And they're doing it in the guise of an
14  expert, whose testimony will have greater weight
15  with the jury.  And they shouldn't be allowed to
16  bring in an expert to try to attack Mr. Johnson's
17  credibility.  The jury is the judge of his
18  credibility.  If they can explain some other
19  relevance of this allegation that it shouldn't have
20  taken that much Roundup to control his weeds, then,
21  fine.  But the only reason to do that is to try to
22  impugn Mr. Johnson's credibility.  And that's
23  improper use of an expert.
24            THE COURT:  Okay.  So we've got -- okay.
25            Mr. Norris, anything?
```

1          **MR. LOMBARDI:**  Your Honor, if I may, we --
2  Mr. Johnson's credibility is at issue in this case,
3  obviously. And we are entitled -- we don't have to
4  accept that he actually used six to eight bottles.
5  One way to establish that is for a weed scientist to
6  go on the property, as she did, review the property,
7  and make determinations of her own as to what would
8  be necessary to actually get rid of weeds.
9          And she is entitled to testify that once
10 you use Roundup, it's an effective herbicide and
11 weeds don't just continually come back.  And she's
12 entitled to talk about what the climate's like
13 around here and whether it's -- we've heard that he
14 sprayed from March through October.  We're entitled
15 to introduce evidence that calls into question that.
16         And so she's not going to -- she's not
17 going to specifically say Mr. Johnson did or did not
18 tell the truth. She's going to say objectively, as
19 an expert, how -- how Roundup works, how it gets rid
20 of weeds, and what would be necessary on a property
21 like this.  And so it's totally appropriate.
22         **THE COURT:**  So she's going to come in and
23 say how much she thinks is necessary for this
24 property based on --
25         **MR. LOMBARDI:**  Her -- she's been to the

1  property, and you know, she's looked at all the
2  places that he says he sprayed and so forth.  And
3  also taking into account the weather around here,
4  which we've heard about from Plaintiffs.
5          **THE COURT:**  Nonetheless, he still could be
6  telling the truth and just using a lot of Roundup.
7  It could go either way.
8          **MS. LEE:**  Absolutely.
9          **MR. LOMBARDI:**  Yeah.  He could.  And that
10 will be for the jury to decide.
11         **THE COURT:**  Okay.  I'm going to allow this
12 testimony.
13         **MR. PEARSON:**  What about the labels, your
14 Honor? That was the last thing I wanted to mention.
15 They said that weed scientists rely on the EPA for
16 labels.  I guess they're going to try to argue that
17 only the EPA can control the label; Monsanto can't
18 control the label.  Those are issues that are way
19 outside of her purview.  I don't know what she could
20 add to the labels.  They're black and white and
21 there's --
22         **THE COURT:**  She relies on the labels?
23         **MR. NORRIS:**  That's it.
24         **MR. PEARSON:**  Weed scientist.
25         **MS. LEE:**  That's all she's going to say.

```
 1              MR. PEARSON:  So what?
 2              THE COURT:  I think she can testify.  That
 3    -- that's fine with me.
 4              MR. PEARSON:  Okay.
 5              THE COURT:  Thank you.
 6              MR. MATHAS:  Your Honor, very briefly.
 7    One more issue before you bring in the jury, and I
 8    know you want to get them in here.  We've talked
 9    about some exhibit issues, and yesterday there was a
10    discussion of getting us the remaining exhibits that
11    Plaintiffs were likely to use in cross-examination.
12    We did get an amended exhibit list yesterday.  We
13    didn't get additional exhibits with it.
14              But there is one exhibit that was on the
15    exhibit list that we have concerns about, your
16    Honor.  It's Exhibit-414. We've prepared a bench
17    brief that I would like to hand up to your Honor.
18    And we'd be happy to take up any issues with
19    Exhibit-414 at sidebar before it's offered, but we
20    just don't want the document being put up.
21              THE COURT:  When will it be offered?
22              MR. ORR:  It's not going to be offered
23    today.
24              THE COURT:  Okay.  So can you brief -- get
25    me the bench brief?
```

NAEGELI DEPOSITION & TRIAL    CELEBRATING 40 YEARS IN BUSINESS    (800)528-3335    NAEGELIUSA.COM

|    |    |
|----|----|
| 1  | <u>REPORTER CERTIFICATION</u> |
| 2  | I, PHOEBE S. MOORHEAD, Registered Professional |
| 3  | Reporter, do hereby certify: |
| 4  | That the foregoing proceedings were taken before me |
| 5  | at the time and place set forth herein and were taken down by |
| 6  | me in shorthand and thereafter transcribed into typewriting |
| 7  | under my direction and supervision; |
| 8  | That the foregoing pages contain a true and |
| 9  | correct transcription of my said shorthand notes so taken. |
| 10 | I FURTHER CERTIFY that I am neither counsel for nor |
| 11 | related to any party to said action nor in anywise interested |
| 12 | in the outcome thereof. |
| 13 | Certified and dated this 10th day of June, 2022. |
| 14 |  |
| 15 |  |
| 16 | *Phoebe Moorhead* |
| 17 | _____ |
| 18 | PHOEBE S. MOORHEAD, RPR, CRR<br>Certified Shorthand Reporter<br>for the State of Utah |
| 19 |  |
| 20 |  |
| 21 |  |
| 22 |  |
| 23 |  |
| 24 |  |
| 25 |  |