Robin Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | **PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE OPINIONS OF PLAINTIFF'S EXPERT DR. ROBERT CONRY, M.D.** |
| *Karen Delorme-Barton v. Monsanto,* 3:18-cv-01427-VC | |
| | Hearing: Date:  July 27, 2023 Time: 10:00a.m. PDT Place: Courtroom 4, 450 Golden Gate Ave. San Francisco, CA 94102 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on July 27, 2023, at 10:00a.m., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the court, before District Judge Vince Chhabria, Plaintiff will and hereby opposes Monsanto Company's Daubert Motion to Exclude the Testimony of Plaintiff's Expert Dr. Robert Conry, M.D.

This opposition to Defendant's motion to exclude the testimony of Dr. Robert Conry is based on this supporting memorandum, all pleadings and papers on file in this matter, and such

further oral and documentary evidence and papers as the Court may consider at the time of the

hearing.

Dated June 30, 2023                         Respectfully submitted,

                                   By:   */s/ Robin L. Greenwald*
                                         Robin L. Greenwald (*Pro Hac Vice*)
                                         **WEITZ & LUXENBERG, P.C.**
                                         700 Broadway, Fifth Floor
                                         New York, NY 10003
                                         Telephone: 212-558-5802
                                         Facsimile: (212) 344-5461
                                         rgreenwald@weitzlux.com

                                         *Attorney for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................- 1 -

FACTUAL BACKGROUND ................................................................................- 2 -

LEGAL STANDARD............................................................................................- 3 -

ARGUMENT .........................................................................................................- 4 -

    I.   The Court Should Admit Plaintiff's Oncology Expert, Dr. Robert Conry, Because Dr. Conry Provides Reliable Opinions Founded Upon Extensive Knowledge, Experience, and a Systematic Evaluation of Plaintiff Delorme-Barton ........................................................- 4 -

    II. Dr. Conry Appropriately Relied on Scientific Literature for Purposes of Ruling In Roundup and Conducting His Specific Causation Analysis ........................................................- 6 -

    III. Dr. Conry Reliably Ruled Out Alternative Causes and Appropriately Considered Each Risk Factor .................................................................................................- 11 -

    IV. Dr. Conry Does Not Have to Rule Out Idiopathic Causes When Other Risk Factors are Present................................................................................................- 14 -

CONCLUSION....................................................................................................- 15 -

**TABLE OF AUTHORITIES**

## CASES

*Clausen v. M/V New Carissa,*

   339 F.3d 1049, 1056 (9th Cir. 2003) ........................................................ 2, 3, 10, 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*

   509 U.S. 579 (1993) .............................................................................................. 1, 3

*Hardeman v. Monsanto Co.,*

   997 F.3d 941, 963, 965 (9th Cir. 2021) ................................................................ 1, 3

*In re E.I. du Pont,*

   342 F.Supp.3d 773, 785 (S.D. Ohio 2016) ............................................................ 14

*In re Nuvaring Prod. Liab. Litig.,* Case No. 4:08-MD-1964, 2013 WL 12435800 at *5 (E.D. Mo.

   Apr. 10, 2013) ....................................................................................................... 13

*In re Roundup Prods. Liab. Litig.,*

   390 F. Supp. 3d 1102, 1131 (N.D. Cal. 2018) .............................................. passim

*Johnson v. Mead Johnson & Co.,*

   *LLC*, 754 F.3d at 563-64 ....................................................................................... 13

*Kirk v. Schaeffler Group USA, Inc.,*

   887 F.3d 376, 392 (8th Cir. 2018) ........................................................................ 13

*Lauzon v. Merrell Dow PharMs., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001) .................... 13

*Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.,*

   892 F.3d 624, 639 (4th Cir. 2018) .......................................................................... 9

*Miller v. Bayer Healthcare Pharmaceuticals Inc.,*

   Case No.: 4:14-cv-00652, 2016 WL 9047152 ....................................................... 13

*Schultz v. Akzo Nobel Paints, LLC,*

   721 F.3d 426, 432-33 (7th Cir. 2013) ..................................................................... 9

*TV Interactive Data Corp. v. Sony Corp.,*

   929 F. Supp. 2d 1006, 1028 (N.D. Cal. 2013) ...................................................... 10

*Walters v. McCormick,*

   122 F.3d 1172 (9th Cir. 1997) .............................................................................. 10

PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANT MONSANTO
COMPANY'S MOTION TO EXCLUDE OPINIONS OF PLAINTIFF'S EXPERT DR. ROBERT CONRY, M.D.

*Wendell v. GlaxoSmithKline LLC*,

  858 F.3d 1227, 1237 (9th Cir. 2017) ................................................................... 3, 14, 15

*Westberry v. Gislaved Gummi AB*,

  178 F.3d 257, 265 (4th Cir. 1999) ............................................................................ 9, 13

## OTHER AUTHORITIES

Reference Manual on Sci. Evid. 549, 2011 WL 772426 ................................................. 9

Restatement (Third) of Torts: Phys. & Emot. Harm § 28, cmt. c(4) rprts. note (2010) .............. 10

## RULES

Fed. R. Evid. 702 ....................................................................................................... 1, 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

After Plaintiff Karen Delorme-Barton ("Plaintiff") "used Roundup personally to control weeds…during 35 years [which] included over 3,000 application sessions, many of which lasted over an hour and were associated with considerable post-dermal application exposure, since she seldom washed or changed clothes for many hours after each application [and] did not use any personal protective equipment when she applied Roundup," she developed "Follicular B cell lymphoma [which] is considered incurable." Def. White Decl.[1], Exhibit B, at 14, 18; Expert Report of Dr. Robert Conry, M.D. in Support of Specific Causation ("Report"). Ms. Delorme-Barton intends to call Dr. Conry, an oncologist with nearly thirty years of experience diagnosing and treating non-Hodgkin lymphoma (NHL) patients, to opine that her "NHL was caused by glyphosate, rather than some other factor." *Hardeman v. Monsanto Co*., 997 F.3d 941, 963, 965 (9th Cir. 2021).

Defendant Monsanto Company ("Monsanto") seeks to exclude Dr. Conry under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). ECF No. 19 ("Motion"). In doing so, however, Monsanto recycles many arguments the Ninth Circuit and this Court have already rejected in the bellwether and Multi-District Litigation (MDL) Wave briefing. *See Hardeman*, 997 F.3d at 960-67; *In re Roundup Prods. Liab. Litig*., 390 F. Supp. 3d 1102, 1131 (N.D. Cal. 2018) (Pretrial Order No. (PTO) 45 denying Defendant's motion to exclude certain experts opining about general causation); *In re Roundup Prods. Liab. Litig*., 358 F. Supp. 3d 956 (N.D. Cal. 2019) (PTO 85 denying Monsanto's motion for summary judgment on specific

---

[1] Refers to  Defendant's Declaration of Jed P. White in Support of Monsanto Company's Motion to Exclude Testimony of Robert Conry, M.D., ECF No. 16856, and the exhibits referenced therein as to avoid repetition before the Court.

causation). Dr. Conry is qualified to opine on specific causation given his knowledge, skill, experience, training, and education, and deploys "principles and methodology . . . grounded in the methods of science." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003). While Monsanto can probe Dr. Conry's opinions "at trial, through cross-examination or testimony by opposing experts," *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d at 1109, excluding his testimony is unwarranted and contrary to Ninth Circuit law. This Court should deny the motion.

## FACTUAL BACKGROUND

Dr. Robert Conry currently serves as a medical oncologist and hematologist at the Clearview Cancer Institute in Anniston, Alabama. He earned his medical degree in Internal Medicine in 1987, graduating *cum laude* from The University of Alabama at Birmingham (UAB). Dr. Conry stayed at UAB for his internship, and residency. He also completed a Fellowship with the Division of Hematology/Oncology at the same institution in 1993. Dr. Conry has been a Board Certified Diplomate in Medical Oncology since 1997. He has also been Board Certified in internal medicine and hematology. *See generally* Greenwald Decl.[2], Exhibit A; Curriculum Vitae of Dr. Robert Conry ("Dr. Conry CV"). As a full-time medical oncologist for nearly three decades, Dr. Conry has diagnosed and treated roughly between 1,500 to 2,000 patients with lymphoma. *See* Greenwald Decl., Exhibit B, at 56:2-5, Dr. Robert Conry Dep. Tr. (Apr. 14, 2023); *see also* Def. White Decl., Exhibit B, at 4-10 (which highlights his qualifications, methodology, and risk factors associated with NHL). Further delineated in his Report, Dr. Conry has published approximately 150 peer-reviewed journal articles, abstracts, and/ or book chapters; he also served as an investigator in over 60 Phase I-III clinical trials as part of his practice. *Id* at 4.

---

[2] Refers to Declaration of Robin L. Greenwald in Support of Plaintiff's Response and Memorandum in Opposition to Defendant Monsanto Company's Motion to Exclude Opinions of Plaintiff's Expert Dr. Robert Conry, M.D., attached hereto.

## LEGAL STANDARD

Ms. Delorme-Barton's case is part of the MDL alleging that the carcinogenic qualities of the glyphosate-based herbicide (GBH) Roundup cause NHL. In this MDL, the Court has held that "for questions of federal law, such as the admissibility of expert testimony under *Daubert*, Ninth Circuit law will govern regardless of where a case originated." *In re Roundup Prods. Liab. Litig*., MDL No. 2741, 2019 U.S. Dist. LEXIS 114855, at *66 (N.D. Cal. July 10, 2019) (PTO 158: *Daubert* Choice of Law). Consistent with this pretrial order, Plaintiff focuses her response on relevant Ninth Circuit precedent. *See id*. at *69.

In the Ninth Circuit (and throughout the federal courts), Federal Rule of Evidence 702 supplies the standard for the admissibility of scientific evidence. *See Clausen*, 339 F.3d at 1055. And in *Daubert*, the Supreme Court charged district courts with a gatekeeping role to ensure that such scientific evidence is relevant and reliable. *See id*. The inquiry under Rule 702 and *Daubert* "is flexible and should be applied with a liberal thrust favoring admission." *Hardeman*, 997 F.3d at 960 (cleaned up). Ultimately, "the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system . . . to 'attack[] shaky but admissible evidence.'" *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017) (quoting *Daubert*, 509 U.S. at 596 (alteration in original)).

A key principle of Rule 702 and *Daubert* is that they were intended to relax traditional barriers to admission of expert opinion testimony. *Daubert*, 509 U.S. at 588. Courts are accordingly in agreement that Rule 702 mandates a liberal standard for the admissibility of expert testimony. As the Advisory Committee to the 2000 amendments to Rule 702 note, with apparent approval, "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee note (2000).

## ARGUMENT

I.    **The Court Should Admit Plaintiff's Oncology Expert, Dr. Robert Conry, Because Dr. Conry Provides Reliable Opinions Founded Upon Extensive Knowledge, Experience, and a Systematic Evaluation of Plaintiff Delorme-Barton**

.

Dr. Conry used a differential diagnosis/etiology to rule in and out risk factors and to conclude that exposure to Roundup was a substantial contributing cause of Ms. Delorme-Barton's NHL. As this Court noted, this is a proper analysis:

> A differential diagnosis is simply a framework for identifying the most probable cause of a disease. [FN Omitted] *See Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1234 (9th Cir. 2017). To conduct a differential diagnosis, a physician "rules in" all potential causes of a disease, "rules out" those for "which there is no plausible evidence of causation, and then determines the most likely cause among those that cannot be excluded." *Id.* The Ninth Circuit has repeatedly approved the use of a differential diagnosis under Daubert, provided, of course, that it is applied reliably. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003).

PTO 85 at 1-2. This is exactly what Dr. Conry did.

As more fully detailed in his Report, Dr. Conry described his methodology and performed a differential etiology by (1) compiling a "list of recognized demographic and risk factors"; (2) carefully "evaluat[ing] whether each risk factor applies"; and (3) determining "whether the specific risk factor, was, more likely than not, a substantial contributing factor in the development of the individual's cancer." Def. White Decl., Exhibit B, at 5-6. He specifically addressed Ms. Delorme-Barton's medical history, her exposure to Roundup, and other NHL risk factors that potentially could apply to Ms. Delorme-Barton's NHL diagnosis, ultimately excluding other potential causes for her NHL. After doing so, he concluded:

> It is my expert opinion to a reasonable degree of medical certainty that the following risk factors **were not substantial contributing factors** to Ms. Delorme-Barton's development of lymphoma: gender, race, family history, immunodeficiency, autoimmunity, chronic inflammation, infection, chemotherapy or radiation, chemical exposure aside from Roundup/glyphosate, smoking, obesity, physical activity, nor diet. Ms. Delorme-Barton's risk for development of follicular NHL was perhaps reduced by her low to moderate alcohol consumption and mildly increased based upon her age of 63 years at diagnosis. It is also my expert opinion to a reasonable degree of medical certainty that her Roundup

exposure **was a substantial contributing factor** to her development of follicular B cell lymphoma.

Def. White Decl., Exhibit B, at 18 (emphasis in original). Based upon the evidence, Dr. Conry concluded to a reasonable degree of medical certainty that Roundup was a substantial factor in causing Ms. Delorme-Barton's NHL. In sum, he reliably applied the principals and methods to the facts.

> In PTO 85, this Court wrote:

> It is sufficient for a qualified expert, in reliance on his clinical experience, review of a plaintiff's medical records, and evaluation of the general causation evidence, to conclude that an 'obvious known risk factor[]' is the cause of that plaintiff's disease. *See Wendell*, 858 F.3d at 1235. Here, the specific causation experts did that. Relying on the plaintiffs' admissible general causation opinions – which assert a robust connection between glyphosate and NHL – the experts concluded that glyphosate was a substantial factor in causing the plaintiffs' NHL.

PTO 85 at 5-6.

Dr. Conry formed his opinions based upon his extensive education, training, experience, knowledge, and expertise, as well as literature review and widely accepted medical and scientific principles, applying Bradford-Hill causation considerations. He reviewed extensive medical records, including pathology, operative and imaging reports relating to Ms. Delorme-Barton. *See generally* Greenwald Decl., Exhibit C, Materials Considered List; Greenwald Decl., Exhibit D, Supplemental Materials Considered List. He also interviewed Ms. Delorme-Barton; reviewed the deposition testimony of Ms. Delorme-Barton; reviewed the deposition testimony of Ms. Delorme-Barton's Spouse, William Barton; reviewed the deposition testimony of Ms. Delorme-Barton's treating physician, Dr. Jennifer Yannucci; and reviewed Ms. Delorme-Barton's Plaintiff Fact Sheet (PFS) to have a comprehensive understanding of Plaintiff's medical history and Roundup use. Greenwald Decl., Exhibit B, at 27:11-23, 26:14-21. Dr. Conry appreciated that Plaintiff's Roundup exposure arose from over 3,000 Roundup exposure events between the years of 1976 to 2014,

multiple times per week during the Spring to Fall seasons with significant dermal contact. Def. White Decl., Exhibit B, at 12. He evaluated those facts and medical information to compare Plaintiff's Roundup exposure and circumstances to the epidemiological literature and provided the detail-intensive methodology he used to reach his opinions. *Id.* at 5-6; Greenwald Decl., Exhibit B, at 55:20-56:25, 85:6-13.

## II.     Dr. Conry Appropriately Relied on Scientific Literature for Purposes of Ruling In Roundup and Conducting His Specific Causation Analysis

Scientific research establishes the link between NHL and human exposure to glyphosate. Monsanto does not dispute that Dr. Conry conducted an extensive review of the scientific literature specific to glyphosate and NHL. *See generally* Greenwald Decl., Exhibits C and D.  However, Monsanto argues that since Dr. Conry was not listed by Plaintiff as a general causation expert in this matter that he should somehow be precluded all together from relying on the body of scientific literature that he has cited, personally reviewed, and also come across as a full-time medical oncologist having treated over a thousand patients with NHL. Motion at 4-5. That position is nonsensical for several reasons.

First, it is wholly appropriate to rule in Roundup as a cause of any individual's NHL where use and exposure conform to the epidemiological literature evincing increased risk. Dr. Conry testified that "I think the weight of evidence for the Roundup glyphosate indicates that someone like Karen who used it for 35 years extensively, half the year repeated applications every week or two for six months out of the year for 35 years, it's a substantial contributing factor, substantial risk factor or cause." Def. White Decl., Exhibit C, at 154:18-25, Dr. Robert Conry Dep. Tr. (Apr. 14, 2023). Defense counsel continued:

Q.     What do you mean by weight of evidence, Doctor?

A.      I would say that's the collective consideration of all the available scientific and medical evidence to link an agent like glyphosate Roundup with a disease like NHL. And that can be uses of incidence, oxidative stress, heat conduction, and epidemiology studies  especially related to the multiple metanalyses on the topic.

Q.      Now Doctor, in fairness, what you've described may help answer the question of general causation whether a substance is capable of causing a disease; right?

A.      It speaks to that, as well as specific causation as to whether that substance belongs on the list [of risk factors] and how **heavily weighed** it is on the list.

*Id*. at 156:6-23 (emphasis added).

In the *Griswold* matter pending in St. Louis City Circuit Court, a case cited by Monsanto several times in its motion, Dr. Conry testified that "genotoxicity is central to the practice of medical oncology and something that I, as a medical oncologist, thoroughly understand or have extensive experience with." Greenwald Decl., Exhibit E, at 96:5-10, Dr. Robert Conry Dep. Tr. (Oct. 6, 2022). He further testified that "I understand one element of [Bradford Hill criteria] is identifying the scientific mechanism whereby the agent could cause the studied health outcome. So the genotoxicity studies are a piece of that puzzle that is supportive of glyphosate Roundup being a significant factor to non-Hodgkin's lymphoma. So I will describe that at trial when asked." *Id*. at 95:10-20.

His Report demonstrates that he drew his conclusions upon "available scientific knowledge and a continuing evaluation to determine whether the specific risk factor was, more likely than not, a substantial contributing factor in the development of the individual's cancer." Def. White Decl., Exhibit B, at 5-10. Similarly, he testified he had conducted his own literature search using search engines he utilizes as an oncologist[3] as follows:

I've spent 100 hours looking at epidemiology studies, animal model studies pertaining to glyphosate and glyphosate Roundup and NHL risk. And despite the fact you pull single

[3] In his first deposition in the *Griswold* matter, Dr. Conry testified that he identified an article he relied on through his research ("A. No. I identified [Weisenburger's article] on my own through a PubMed literature search.") Decl. Greenwald, Exhibit E, at 19:12-13.

sentences out but may call it into question, the overarching theme that I come away with is that there have been 10 meta-analyses by career epidemiologists. Most of those meta-analyses have seven to 10 authors each. And they reached the conclusions that there is a statistically significant association between glyphosate Roundup and NHL in all but one case, all by one meta-analysis by Donato. And that has been called into question by Zhang's analysis, which I find a convincing analysis in the fact that the data couldn't be reproduced and that they overweighed a certain study. So as a medical oncologist with 29 years [of] experience treating lymphoma patients, I think nine out of 10 meta-analyses showing statistically significant association between NHL or NHL subtypes in Roundup use tremendously outweighs pulling out any single sentence here or there from an individual article.

Greenwald Decl., Exhibit B, at 67:21-68:13.

What has become par for the course, Monsanto continues to manufacture admissions from Dr. Conry by "pulling out any single sentence here or there." For example, Monsanto argues that Dr. Conry's ruling-in of Roundup is "further unreliable because he has no quantitative understanding of Plaintiff's *absorbed dose* of glyphosate" Motion at 6-7 (emphasis in original), and that he "is not assessing actual exposure." *Id*. at 9. As an initial matter, no Roundup Court has ruled that a medical oncologist offering a specific causation opinion needs to calculate Plaintiff's actual *absorbed* micro dose of glyphosate to conduct a differential diagnosis. Monsanto then makes the inferential leap that Dr. Conry himself has made an admission that his "opinion alone cannot get Plaintiff across the causation threshold." *Id*. His Report and full deposition transcript disprove this assertion, and Monsanto's distortion of his testimony is so egregious as to cast doubt on all its representations.

Dr. Conry's Report is in fact replete with specific details about Plaintiff's Roundup usage and exposure, including her lack of protective clothing or other equipment, her dermal exposure with Roundup, the locations she sprayed, and the type of Roundup and quantities she purchased. Def. White Decl., Exhibit B, at 12 ("She frequently had Roundup concentrate and diluted product contact her hands, arms, and legs, but simply wiped the affected skin with her clothing."), at 17-

18 ("Thus, her personal use occurred during 35 . . . and were associated with considerable post-dermal application exposure").  *See also* Greenwald Decl., Exhibit B, at 157:7-18 ("the weight of evidence linking NHL with Roundup usage and the extent of Roundup usage in terms of numbers of use, years of use, lag time of use – which Karen meets very well having [] she's something 20 years of Roundup use predating her follicular lymphoma, if not more, which provides plenty of lag time to put her in a higher risk groups based on several metanalyses.").

Second, this Court held in PTO 85 that specific causation experts noted the "plaintiffs' exposure levels in drawing their conclusions. All three experts noted the plaintiffs' extensive Roundup usage, and further explained – as did the plaintiffs' general causation opinions – that both the McDuffie (2001) and Eriksson (2008) studies showed a dose-response relationship between glyphosate…Thus, consistent with Ninth Circuit caselaw, the experts provided a basis for their conclusion that these plaintiffs fall into the category of Roundup users who developed NHL." PTO 85 at 6. *See also Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc*., 892 F.3d 624, 639 (4th Cir. 2018) ("Nevertheless, we recognized that 'only rarely are humans exposed to chemicals in a manner that permits a quantitative determination of adverse outcomes,' and that it is often 'difficult, if not impossible, to quantify the amount of exposure.'" "Thus, in *Westberry*, it was sufficient for the plaintiff to introduce evidence of 'substantial exposure'").

Like the bellwether specific causation experts, Dr. Conry determined that Ms. Delorme-Barton's use and exposure to Roundup placed her in the high-risk category for the development of NHL. This type of analysis of "relative risk" is an appropriate means of establishing specific causation. *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 432-33 (7th Cir. 2013); *see generally* Reference Manual on Sci. Evid. 549, 2011 WL 772426, at 611–612 (discussing propriety of using

magnitude of relative risk to establish specific causation); Restatement (Third) of Torts: Phys. & Emot. Harm § 28, cmt. c(4) rprts. note (2010).

Even if Dr. Conry's calculations about Plaintiff's extensive Roundup usage and exposure were inaccurate, which they are not, such inconsistencies go to the weight, rather than the admissibility, of his testimony. *See Walters v. McCormick*, 122 F.3d 1172 (9th Cir. 1997) (inconsistencies in testimony of victim went to weight that trier of fact should accord testimony, and not its admissibility.); *TV Interactive Data Corp. v. Sony Corp*., 929 F. Supp. 2d 1006, 1028 (N.D. Cal. 2013) (Inaccurate calculations go to weight of testimony rather than admissibility). It is well-recognized that "[w]hile 'precise information concerning the exposure necessary to cause specific harm [is] beneficial, such evidence is not always available, or necessary, to demonstrate that a substance is toxic...and need not invariably provide the basis for an expert's opinion on causation.'" *Clausen v. M/V NEW CARISSA*, (9th Cir. 2003) 339 F.3d 1049, 1060.

Indeed, Monsanto fails to cite any case-control epidemiological study indicating that Plaintiff's exposure falls below levels otherwise correlated with an increased risk of NHL following exposure to GBHs; to the contrary, Plaintiff's exposure greatly exceeds the exposure of the participants in the epidemiology studies. For example, in Andreotti, *et al.,* (2018), the median exposure to glyphosate was only 48 lifetime days, or eight years. Greenwald Decl., Exhibit F, at 3.

Monsanto's own study, Acquavella, *et al.,* (2004), shows that the single most important factor in reducing glyphosate exposure is wearing "rubber gloves when handling the pesticide formulation." Greenwald Decl., Exhibit G at 324. Ms. Delorme-Barton never wore gloves for the spraying of Roundup due to Monsanto's failure to warn. Greenwald Decl., Exhibit H, at 172:3-5, Plaintiff Karen Delorme-Barton Dep. Tr. (Jan. 14, 2020). It is entirely appropriate to rule in

Roundup as a possible cause of any individual's NHL where use and exposure conform to the epidemiological literature evincing increased risk. As noted above, ruling in Roundup as a possible or potential cause of NHL is simply a step in any reliable differential diagnosis. *Clausen*, 339 F.3d at 1057 ("The first step [of a differential diagnosis] is to compile a comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration.").

Furthermore, while the McDuffie, *et al.*, (2001) and Eriksson, *et al.*, (2008) studies buttress Dr. Conry's exposure opinions, Motion at 6, they do not provide the sole basis for ruling in Roundup as a cause of Plaintiff's NHL. Dr. Conry also relies on the other epidemiology studies, the mechanistic and animal studies, and a differential diagnosis in concluding that Roundup was a substantial factor in causing Plaintiff's NHL.

III. **Dr. Conry Reliably Ruled Out Alternative Causes and Appropriately Considered Each Risk Factor**

Monsanto errs in suggesting that Dr. Conry disregarded alternative causes for NHL. Motion at 7-9. Again, Monsanto's distortions about Dr. Conry's opinions are undermined by his Report. The only alleged risk factor Monsanto raised in its Motion was Ms. Delorme-Barton's age, and Monsanto conceded that Dr. Conry did not disregard Ms. Delorme-Barton's age. Motion at 8. He is well aware that she was in her 60s at the time of diagnosis but did not believe her age is a substantial contributing factor because "Ms. Delorme-Barton was diagnosed with lymphoma at the age of 63, which is 2 years younger than the median age and more than a decade younger than the peak age of incidence, thus this risk factor makes a small contribution to her risk." Def. White Decl., Exhibit B, at 15-16. Dr. Conry also testified it was rare for a person at Plaintiff's age to be diagnosed with NHL. Def. White Decl., Exhibit C, at 145:14-16 ("A. And, yes, she's 63, but, you know, that puts her at .01 percent risk per year of getting NHL.").

Further, Monsanto asserts that Dr. Conry failed in his evaluation because he did not "address whether or to what extent Plaintiff's NHL may be the result of random genetic mutations." Motion at 9. This assertion is fallible and Dr. Conry debunked Monsanto's theory of "random genetic mutation" as risk factor by explaining: (1) "…spontaneous mutations resulting from [] replication errors… [were] contained within the aging category"; (2) this theory is "not widely agreed upon across the medical and scientific community" and what is "widely agreed upon is that the majority of cancers require five or six, something in that ballpark, of driver mutations to make a normal cell convert all the way to being a cancer cell"; and (3) "…even if half or two-thirds of the mutations occur due to replication errors, you still wouldn't have a cancer if you didn't get the other third of the mutation or the other half of the mutations caused by the environmental source such a Roundup". Greenwald Decl., Exhibit B, at 149:16-20, 150:13-151:12.

In other words, Monsanto's stretch-theory that Plaintiff's NHL is caused "random genetic mutations" completely discounts the fact that environmental exposures like Roundup can initiate or promote replication error from one step to the next step in eventually becoming malignant.

Moreover, contrary to Monsanto's characterization, Dr. Conry's opinion does not mean glyphosate will always be the cause of a person's NHL. In fact, Dr. Conry dedicated an entire section of his report to considering — and ultimately ruling out -- alternative explanations. Def. White Decl., Exhibit B, at 15-18. And in reaching his conclusion, he considered Ms. Delorme-Barton's constellation of unique circumstances, including but not limited to the particular type of NHL she presented with (Follicular B-Cell); her age at onset ("2 years younger than the media age and more than a decade younger than the peak of incidence") (Def. White Decl., Exhibit B, at 15-16); and her substantial exposure for the "35 years pre-dating her NHL diagnosis." *Id.* at 17-18; *see also* Def. White Decl., Exhibit C, at 155:19-23 ("But she used it, I think I calculated roughly,

3,000 times in the span of 35 years. So you know, that's kind of like somebody smoking two cigarettes a day versus two packs a day.")[4]; Greenwald Decl., Exhibit B, at 157:8-9 ("the weight of evidence link[s] NHL with Roundup usage . . . ."). Thus, Dr. Conry "ha[d] a way to differentiate" Ms. Delorme-Barton "from Roundup users who would have developed NHL regardless." *In re Roundup Prods. Liab. Litig*., 358 F. Supp. 3d at 959. What is more, the Ninth Circuit, as well as many other circuits, makes clear that an expert should not be excluded because s/he fails to rule out every possible alternative cause. *See, e.g*., *Miller v. Bayer Healthcare Pharmaceuticals Inc.,* Case No.: 4:14-cv-00652, 2016 WL 9047152 at *2 (W.D. Mo. Dec. 5, 2016) (quoting *Lauzon v. Merrell Dow PharMs., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001); *In re Nuvaring Prod. Liab. Litig.,* Case No. 4:08-MD-1964, 2013 WL 12435800 at *5 (E.D. Mo. Apr. 10, 2013) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999)). "The alternative causes suggested by a defendant 'affect the weight that the jury should give the expert's testimony and not the admissibility of that testimony,' unless the expert can offer '*no* explanation for why she has concluded [an alternative cause offered by the opposing party] was not the sole cause.'" *Id*. Differential etiologies are appropriate and admissible even when experts do not rule out all causes; "experts are not required to rule out all possible causes when performing the differential etiology analysis …. Instead, such considerations go to the weight to be given the testimony by the factfinder, not its admissibility." *Kirk v. Schaeffler Group USA, Inc.*, 887 F.3d 376, 392 (8th Cir. 2018); *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d at 563-64 (observing that "we have consistently ruled that experts are not required to rule out all possible causes when performing the differential etiology analysis").

[4] Plaintiff is cognizant that this Court in PTO 85 limited bellwether plaintiffs' specific causation expert Dr. Chadhi Nabhan regarding glyphosate and smoking risks. PTO 85 at 9. That said, Dr. Conry's testimony cited above is illustrative for purposes of describing the magnitude of Plaintiff's exposure.

It is important to also note that Monsanto does not name an alternative cause, other than the idea of "naturally occurring genetic mutations," that it believes Dr. Conry failed to consider. And even then, Monsanto is unable to identify what these supposedly malignant 'genetic mutations' are or how they would be identifiable—the only detail it provides is that "…most cases of a disease arise as a part of the body's natural internal processes." Motion at 9. This over-simplification of the body's processes is directly in opposition to the accepted understanding of how cancers develop in the wider scientific community.  What is more, Monsanto does not provide a single citation in its Motion to support this theory of random genetic mutation as a risk factor— something which Dr. Conry plainly explains as "I didn't put being human as a risk factor". Def. White Decl., Exhibit C, at 152:16-17. Even withstanding Dr. Conry's disagreement with Monsanto's theory of spontaneous mutations, he still considered it in his methodology under the category of 'age.'

## IV.  Dr. Conry Does Not Have to Rule Out Idiopathic Causes When Other Risk Factors are Present

Contrary to Monsanto's assertions, Motion at 7, differential etiologies are appropriate even when there is a high rate of unknown causes (idiopathic) for a disease and where the expert cannot completely rule out "idiopathic causes." The fact a cause is not identified in most cases does not mean a cause cannot be identified in any cases. *In re E.I. du Pont,* 342 F.Supp.3d 773, 785 (S.D. Ohio 2016) ("while Dr. Bahnson recognized that the majority of cases of testicular cancer are of unknown origin, in 15% of his patients he *can determine* a cause of the testicular cancer") (emphasis in original).  "It is enough that the proposed cause 'be a substantial causative factor.' This is true in patients with multiple risk factors, and analogously, in cases where there is a high rate of idiopathy." *Wendell v. Glaxosmithkline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017). Here, in

- 14 -

contrast, glyphosate is a probable carcinogen with exposure causing an increased risk of NHL, as detailed by the IARC 2015 monograph and as confirmed by Plaintiff's general causation experts. Dr. Conry was well within bounds to rely on these sources.

Monsanto fails to cite any case that would suggest a differential etiology cannot be used in cases where there are also unknown causes of a disease. Indeed, such a finding would conflict with the substantial factor test, the same test applied in *Wendell supra*. This Court directly addressed and rejected Monsanto's idiopathic argument when "the exposure for [ ] plaintiffs was so significant that their NHL should not be considered idiopathic." *See In re Roundup Products Liability Litigation,* 358 F. Supp.3d 956, 961 (N.D. Cal. 2019).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Monsanto's motion in its entirety.

Dated June 30, 2023                                   Respectfully submitted,

                                                      **WEITZ & LUXENBERG, PC**
                                        By:     */s/ Robin L. Greenwald*
                                                      Robin L. Greenwald
                                                      700 Broadway, Fifth Floor
                                                      New York, NY 10003
                                                      212-558-5802 phone
                                                      rgreenwald@weitzlux.com

                                                      *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of June 2023, a copy of the foregoing was filed with the Clerk of the Court through CM/ ECF system which sent notice of the filing to all appearing parties of record.

                                                      */s/ Robin Greenwald*

PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE OPINIONS OF PLAINTIFF'S EXPERT DR. ROBERT CONRY, M.D.