Robin Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Karen Delorme-Barton v. Monsanto,*<br>3:18-cv-01427-VC | **PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. JOHN MURPHY, PH.D.**<br><br>Hearing:<br>Date:  July 27, 2023<br>Time: 10:00a.m. PDT<br>Place: Courtroom 4, 450 Golden Gate Ave.<br>          San Francisco, CA 94102 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on July 27, 2023, at 10:00a.m., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the court, before District Judge Vince Chhabria, Plaintiff will and hereby moves to Exclude the Opinions and Testimony of Monsanto Company's Proposed Expert Dr. John Murphy, Ph.D.

This motion to exclude the testimony of Dr. John Murphy is based on this supporting memorandum, all pleadings and papers on file in this matter, and such further oral and documentary evidence and papers as the Court may consider at the time of the hearing.

Dated June 30, 2023                                               Respectfully submitted,

By:   */s/ Robin L. Greenwald*
Robin L. Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

PLAINTIFF'S DAUBERT MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. JOHN MURPHY, PH.D.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Karen Delorme-Barton ("Plaintiff") respectfully moves for an Order precluding the testimony of Defendant Monsanto Company's ("Monsanto's") specific causation expert Dr. John Murphy, Ph.D. pursuant to Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I)*, 509 U.S. 579 (1993). For the reasons discussed herein, Dr. Murphy proffered testimony is unscientific and unreliable, and must be excluded to prevent confusing the jury.

### LEGAL STANDARD

"Experts may not automatically testify before a jury." *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1111 (N.D. Cal. 2018) (Chhabria, J.). Rather, the District Court acts as a "gatekeeper" and Defendant carries the burden of establishing the admissibility of its experts' testimony. *Id.* (citing *Building Industry Association of Washington v. Washington State Building Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012)). To establish the admissibility of its experts' testimony, Defendant must satisfy the standards set forth in Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I)*, 509 U.S. 579 (1993). *In re Roundup*, 390 F. Supp. 3d at 1111.

In addition to the qualification requirement, the Court must also determine the testimony to be both relevant and reliable for it to be admissible. *Id.* at 1112 (citing *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014)). "'Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry,'" *id.* (citing *City of Pomona*, 750 F.3d at 1044), meaning that the "testimony must 'fit' the question the jury must answer." *Id.* (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II)*, 43 F.3d 1311,

1321 n.17 (9th Cir. 1995)). "This bar is cleared where the evidence 'logically advances a material aspect of the proposing party's case.'" *Id.* (quoting *Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014)).

For expert testimony to be reliable, the knowledge underlying it must have "'a reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* (quoting *City of Pomona*, 750 F.3d at 1044). The Court must "'determin[e] whether the analysis undergirding the experts' testimony falls within the range of accepted standards governing how scientists conduct their research and reach their conclusions.'" *Id.* (quoting *Daubert II*, 43 F.3d at 1317). "Among the factors courts consider in making this determination are (1) whether the expert's theory or method is generally accepted in the scientific community; (2) whether the expert's methodology can be or has been tested; (3) the known or potential error rate of the technique; and (4) whether the method has been subjected to peer review and publication." *Id.* (citing *Daubert II*, 43 F.3d at 1316). "The focus of the reliability inquiry is on the principles and methodology an expert uses in forming her opinions rather than the expert's conclusions. But in conducting the reliability analysis, the Court must also consider whether, for a given conclusion, 'there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "Both unsound methods and unjustified extrapolations from existing data can require the Court to exclude an expert." *Id.*

## ARGUMENT

**I.    Dr. Murphy's Specific Causation Opinions Are Scientifically and Methodologically Unsound.**

Dr. Murphy testified that the basis for his opinion that Plaintiff's modes of Roundup application did not produce droplets or drift was testing that he personally conducted. Greenwald

Decl., Exhibit A, at 105:23-108:2; 111:16-22, Dr. John Murphy Dep. Tr. (Apr. 24, 2023) (" Q: Okay. Aside from the single observation outside of that rural property, do you have any other basis for the assertion that neither of the modes of discharge from the Dial N' Sprayer would produce driftable droplets? A: No, apart from my examination of it and the test, no."). Dr. Murphy testified that he personally purchased the same type of sprayer that Plaintiff used and tested it to determine drops, drift, and exposure. *Id.* Dr. Murphy did not take any measurements or record his results, but rather collected the results through "observation." *Id.* Moreover, he did not perform the testing underpinning his analysis in either a controlled environment or laboratory setting, but instead in a field without any measurement tools or other mechanism to capture the data. *Id.* at 110:4-25. Nor did he use ultraviolet light or a microscope to examine any droplets or drift.

> Q: Is the question of whether or not a nozzle produces driftable droplets something that is amenable to being tested with any kind of technology that would sense whether or not driftable droplets are actually produced?
>
> A: Yes, it can be tested.
>
> Q: Okay. How would that -- how would that work?
>
> A: Well, with this particular device, probably the best way to do it would be to add a fluorescent dye to the liquid and then discharge. And determine whether, in fact, driftable droplets are detected as a result of the discharge. So you'd basically design a little experiment, and you'd shoot out the liquid and you would -- you would shroud the discharge area. And then you would determine afterward by way of ultraviolet light whether you're actually getting -- ultraviolet light and a microscope as to whether you're actually getting driftable droplets.
>
> Q: Okay. And I assume you can do that in a controlled environment in a -- in a lab; is that right?
>
> A: You could, yes.
>
> Q: Yeah. And I'm sure that the lab could also reproduce different wind conditions that might affect the drift of a -- of a spray nozzle?
>
> A: Presumably, it could be done.

> Q: Yeah. Okay. And that type of experiment would give you a -- you know, a more accurate answer as to whether or not the nozzle actually produces driftable droplets; is that right? (Mr. Murner: Objection, form.)
>
> A: It would -- it would be a more quantitative answer.
>
> Q: Okay. Is it desirable to have a more quantitative answer in a -- from a scientific perspective?
>
> A: More information is always better.

*Id.* 108:3-109:16.

Dr. Murphy did not perform the tests that he admits would provide reliable answers to the opinions he intends to offer. Dr. Murphy's "testing" is scientifically unsound and must be excluded. *See, e.g.*, *Haynes ex rel. Haynes v. Nat'l R.R. Passenger Corp.*, 319 F. App'x 541, 543 (9th Cir. 2009) (quoting Fed. R. Evid. 702) (expert's "opinion was also properly excluded because his opinion was not 'based upon sufficient facts or data' or otherwise 'the product of reliable principles and methods.'").

**II.     Dr. Murphy's Opinions Lack Foundation.**

Dr. Murphy's testimony should be "excluded because his opinion was not 'based upon sufficient facts or data; or otherwise 'the product of reliable principles and methods.'" *Haynes ex rel. Haynes v. Nat'l R.R. Passenger Corp.*, 319 F. App'x 541, 543 (9th Cir. 2009) (quoting Fed. R. Evid. 702). Much of Dr. Murphy's analysis and opinions are based on his use of Google Earth to find photographs of Plaintiff's properties. *See, e.g.*, Greenwald Decl., Exhibit A, 41:6-12. But, for example, Dr. Murphy doesn't know whether the photographs he obtained through Google accurately depict the landscaping of Plaintiff's properties at the time she sprayed Roundup decades prior. *See, e.g.*, Greenwald Decl., Exhibit A, 61:3-71:2. Nevertheless, Dr. Murphy predicated

dose estimates and application rates set forth in his report in his analysis of the Google Earth photographs he found online.  *Id.* 71:6-74:13, 77:15-10.

Courts routinely exclude testimony that is unscientific and unduly speculative, including when it is predicated on Google searches.  Order on Monsanto's Motions to Exclude Expert Testimony, *Engilis v. Monsanto Co.*, No. 19-7859 (N.D. Cal. June 1, 2023), ECF No. 45 (Chhabria, J.) (granting motion to exclude expert because "Dr. Schneider cannot base his opinions 'on results he found on Google and what [] lawyers gave to him' because that 'is not a reliable method upon which to form an opinion.'") (quoting Order Regarding Parties' Motions to Exclude Experts, at 6-7, *Ferro v. Monsanto*, No. 20SL-CC03678 (Mo. Cir. Ct. Oct. 13, 2022)); *Dep't of Toxic Substances Control v. Technichem, Inc.*, No. 12-05845, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016) (Chhabria, J.) (excluding expert testimony as unreliable because the expert's "investigation [] appears to have been cursory and unscientific," as exemplified by using information he "Googled" to form his conclusions); *Haynes ex rel. Haynes v. Nat'l R.R. Passenger Corp.*, 319 F. App'x 541, 543 (9th Cir. 2009) (excluding expert, explaining, *inter alia*, "[t]he Google search [], which would [] ordinarily be a basis for little more than lay speculation, do[es] not provide an appropriate basis for expert opinion").

### III.  Dr. Murphy's Opinion on Plaintiff's Credibility is Improper and Invades the Province of the Jury.

Dr. Murphy intends to urge the jury to disbelieve Ms. Delorme-Barton by implying that her descriptions of her Roundup use and exposures are not credible.  Dr. Murphy's opinion regarding Plaintiff's credibility is not the proper subject of expert testimony, is without any scientific basis, would not aid the jury, and is highly prejudicial.  Accordingly, the Court should preclude him from offering a credibility assessment at trial.

During Dr. Murphy's deposition, he summarized his opinions about Plaintiff's Roundup exposure history, often expressing skepticism and disbelief about the plausibility of her described use. *See, e.g.*, Greenwald Decl., Exhibit A, at 83:11-17 ("Q: . . . . would [you] agree that Ms. Delorme-Barton is in a better position than you personally to know how much Roundup she sprayed at the Palos Heights address between 1976 and 1986; isn't that right? A: I don't know that I would agree with that, no."); *id.* at 88:1-19 ("people's recollections are very, very poor, and they tend to overstate their exposures").

Dr. Murphy denies that he is commenting on Plaintiff's credibility. Yet, that is exactly what he is doing. The substance of the statement matters, not its format. It is clear Dr. Murphy's intended testimony is designed to inform the jury that Plaintiff is either mistaken and/or lying about her Roundup use and exposure. This testimony is a textbook weighing of witnesses' credibility, which invades the province of the jury and is not the proper subject of an expert opinion. *See, e.g.*, *Nash-Perry v. City of Bakersfield*, No. 18-1512, 2022 WL 3357516, at *13 (E.D. Cal. Aug. 15, 2022) ("Weighing the credibility of witnesses and resolving factual matters is not within the purview of an expert but are instead the precise roles assigned to the jury.") (citing *U.S. v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985)).

Moreover, Dr. Murphy's testimony should be excluded because Dr. Murphy's opinion on Plaintiff's credibility does not "require[] specialized knowledge" and will *not* "help the jury 'to understand the evidence or to determine a fact in issue.'" *In re Roundup*, 390 F. Supp. 3d at 1111 (quoting Fed. R. Evid. 702). Not only is Dr. Murphy's opinion an impermissible attack on Plaintiff's credibility, but it also invades the role of the jurors who are perfectly capable of applying everyday logic and experiences when weighing the credibility of witnesses, including Plaintiff's testimony regarding her use and exposure. Dr. Murphy's testimony would offer the jury no help,

and it would bring no expertise, knowledge, skill, or understanding beyond that of the average juror. His credibility attacks are accordingly inadmissible and should be precluded.

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiff's motion and exclude Dr. Murphy's opinions.

Dated June 30, 2023

Respectfully submitted,

By: */s/ Robin L. Greenwald*
Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of June 2023, a copy of the foregoing was filed with the Clerk of the Court through CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Robin Greenwald*

PLAINTIFF'S DAUBERT MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. JOHN MURPHY, PH.D.