Robin Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 Case No. 3:16-md-02741-VC |
| This document relates to: *Karen Delorme-Barton v. Monsanto,* 3:18-cv-01427-VC | **PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. WILLIAM JOHNSON, PH.D., M.S.** Hearing: Date:  July 27, 2023 Time: 10:00a.m. PDT Place: Courtroom 4, 450 Golden Gate Ave. San Francisco, CA 94102 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on July 27, 2023, at 10:00a.m., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the court, before District Judge Vince Chhabria, Plaintiff will and hereby moves to Exclude the Opinions and Testimony of Monsanto Company's Proposed Expert Dr. William Johnson, Ph.D., M.S.

This motion to exclude the testimony of Dr. William Johnson is based on this supporting memorandum, all pleadings and papers on file in this matter, and such further oral and documentary evidence and papers as the Court may consider at the time of the hearing.

Dated June 30, 2023                    Respectfully submitted,

                              By:    */s/ Robin L. Greenwald*
                                     Robin L. Greenwald (*Pro Hac Vice*)
                                     **WEITZ & LUXENBERG, P.C.**
                                     700 Broadway, Fifth Floor
                                     New York, NY 10003
                                     Telephone: 212-558-5802
                                     Facsimile: (212) 344-5461
                                     rgreenwald@weitzlux.com

                                     *Attorney for Plaintiff*

PLAINTIFF'S DAUBERT MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO
COMPANY'S PROPOSED EXPERT DR. WILLIAM JOHNSON, PH.D., M.S.

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................- 1 -

LEGAL STANDARD..........................................................................................................- 2 -

ARGUMENT .......................................................................................................................- 4 -

    I.    Dr. Johnson's Opinion on the Witness Credibility is Improper and Invades the Province of the Jury ...........................................................................................- 4 -

    II.   Dr. Johnson's Opinions Lack Foundation .....................................................- 6 -

    III.  Dr. Johnson's General Opinions Are Irrelevant, However, Even if Relevance is Established, Those Opinions are More Prejudicial than Probative...........................- 10 -

CONCLUSION ...................................................................................................................- 14 -

# TABLE OF AUTHORITIES

## CASES

*Building Industry Association of Washington v. Washington State Building Code Council,*
    683 F.3d 1144, 1154 (9th Cir. 2012) ................................................................................. 2

*City of Pomona v. SQM North America Corp.,*
    750 F.3d 1036, 1043 (9th Cir. 2014) ............................................................................... 3

*D.F. ex rel. Amador v. Sikorsky Aircraft Corp.,*
    No. 13-331, 2017 WL 4922814, at *14 (S.D. Cal. Oct. 30, 2017) ........................................ 3

*Daubert I,*
    509 U.S. at 595 .................................................................................................................... 11

*Daubert II,*
    43 F.3d at 1321 n. 17) ........................................................................................................ 12

*Greenawalt v. Sun City W. Fire Dist.,*
    23 F. App'x 650, 652 (9th Cir. 2001) ............................................................................... 10

*Guidroz–Brault v. Missouri Pac. R.R. Co.,*
    254 F.3d 825, 829 (9th Cir. 2001) ................................................................................... 10

*In re Hanford Nuclear Rsrv. Litig.,*
    534 F.3d 986, 1016 (9th Cir. 2008) ................................................................................. 11

*In re Roundup Prod. Liab. Litig.,*
    390 F. Supp. 3d 1102, 1111 (N.D. Cal. 2018) ............................................................... 2, 3

*Salem v. U.S. Lines Co.,*
    370 U.S. 31, 35 (1962) ..................................................................................................... 3, 6

*Stevenson v. Holland,*
    504 F. Supp. 3d 1107, 1117 (E.D. Cal. 2020) ................................................................. 12

*United States Smelting Co. v. Parry,*
    166 F. 407, 415 (8th Cir. 1909) ....................................................................................... 3, 6

*United States v. Awkard,*
    597 F.2d 667, 671 (9th Cir. 1979) ................................................................................... 3, 6

*United States v. Barnard,*
    490 F.2d 907, 912 (9th Cir. 1973) ....................................................................................... 3

## OTHER AUTHORITIES

*In re* Investigation of Bayer CropScience LP and Monsanto Company, No. 23-025 (June 14, 2023)
    ........................................................................................................................................... 7

## RULES

Fed. R. Evid. 401 ..................................................................................................................... 11

Fed. R. Evid. 403. ................................................................................................................. 3, 11

Fed. R. Evid. 702 ..................................................................................................................... 2, 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Karen Delorme-Barton ("Plaintiff") respectfully moves for an order precluding Defendant Monsanto Company's proposed expert, William G. Johnson, Ph.D., M.S., from testifying at trial. Dr. Johnson is a weed scientist currently employed at Purdue University ("Purdue") as a professor in its Department of Botany and Plant Pathology and has been since 2002. Greenwald Decl.[1], Exhibit A, at 138:24-139:12, Dr. William Johnson Dep. Tr. (May 22, 2023). Purdue does not provide enough funding for the research program that Dr. Johnson is a part of and he is thus reliant on seeking external funding in order to be "successful."[2] Between the years 2010 and 2020, Dr. Johnson was named in at least 54 Purdue University Sponsored Program Award Publications from which Plaintiff's counsel calculates to be over one million dollars in awards from Monsanto Company ("Monsanto") and/or Bayer AG ("Bayer") to Dr. Johnson's Department at Purdue University.[3] In his own words, Dr. Johnson testified, ". . . I have done work for all of the major chemical companies . . . as part of contract with the university . . . We have to - - to solicit external funding to – to do that sort of thing and the funding comes from a number of

---

[1] Refers to Declaration of Robin L. Greenwald in Support of Plaintiff's *Daubert* Motion To Exclude the Opinions and Testimony of Monsanto Company's Proposed Expert Dr. William Johnson, Ph.D., attached hereto.

[2] Greenwald Decl., Exhibit A, at 56:11–20 (A: "Purdue doesn't provide enough funding to maintain a long-term, sustainable research program. When faculty members such as myself are hired, we get a startup package that gives us enough money to operate for a couple of years, but then it states very clearly in the job announcement, in our job description, that we must develop a sustainable, externally funded research program in order to be successful -- or in order to be -- well, I guess successful is the -- best term.").

[3] *See, e.g*., Greenwald Decl., Exhibit B, 2 at 5, Purdue University Sponsored Program Awards April 2010 (award "from Monsanto Company, $9,000"). Upon request, Plaintiff's counsel can provide the Court with the full range of publicly available documents from Purdue University relating Program Sponsored Awards, which are too voluminous to attach to this filing. The actual amount of funding received by Purdue from Monsanto and/or Bayer is likely much more than the conservative $1 million estimate, which only accounts for the years 2010-2020.

different sources.") Greenwald Decl., Exhibit A, at 47:8–20.

Despite the fact he is biased – being reliant on chemical companies like Monsanto for funding – if allowed to testify, Dr. Johnson intends to tell the jury that Plaintiff's and her husband's descriptions of her Roundup use and exposure are not credible. This testimony would invade the province of the jury and is thus inadmissible. Dr. Johnson further intends to testify that Plaintiff's Roundup exposures were minimal. His exposure assessment is outside the scope of his expertise, is pure speculation with no basis in evidence, and has no basis in data or science. Finally, while Dr. Johnson's general opinion on other areas of weed science *is* within his expertise, it is irrelevant, substantially more prejudicial than probative, and will only lead to confuse the jury and waste the Court's time, as Plaintiff is not contesting the efficacy of Roundup, how Roundup works on weeds, or how weeds grow. Accordingly, none of Dr. Johnson's anticipated testimony is admissible, and he should be wholly precluded from testifying at trial.

## LEGAL STANDARD

The District Court acts as a "gatekeeper" for expert testimony and Defendant carries the burden of establishing admissibility. *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1111 (N.D. Cal. 2018) (Chhabria, J.) (citing *Building Industry Association of Washington v. Washington State Building Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012)). Federal Rule of Evidence 702 "provides that expert opinion testimony is admissible if: (1) the witness is qualified to testify about the topics she intends to address; (2) the expert's specialized knowledge will help the jury 'to understand the evidence or to determine a fact in issue'; (3) 'the testimony is based on sufficient facts or data'; (4) 'the testimony is the product of reliable principles and methods'; and (5) 'the expert has reliably applied the principles and methods to the facts of the case.'" Fed. R. Evid. 702. "To be qualified, the expert must have sufficient 'knowledge, skill, experience, training, or

education' to offer the opinion." Fed. R. Evid. 702. Likewise, the expert's testimony must be "'within the reasonable confines of his subject area[.]'" *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d. at 1111-12 (quoting *D.F. ex rel. Amador v. Sikorsky Aircraft Corp.*, No. 13-331, 2017 WL 4922814, at *14 (S.D. Cal. Oct. 30, 2017)).

In addition to the qualification requirement, the Court must also determine the testimony to be both relevant and reliable for it to be admissible. *Id.* at 1112 (citing *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014)). Even if testimony is relevant, the court may exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Additionally, "expert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation.'" *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962) (quoting *United States Smelting Co. v. Parry*, 166 F. 407, 415 (8th Cir. 1909)).

Finally, "[u]nder the Federal Rules, opinion testimony on credibility is limited to character; all other opinions on credibility are for the jurors themselves to form." *United States v. Awkard*, 597 F.2d 667, 671 (9th Cir. 1979). The jury serves as "the lie detector in the courtroom" and thus, expert opinion that speaks to the credibility of another witness improperly invades the province of the jury. *Id.* at 671 (quoting *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973)).

<u>**ARGUMENT**</u>

**I.     Dr. Johnson's Opinion on the Witness Credibility is Improper and Invades the Province of the Jury**

Dr. Johnson is, in his own words, a "weed scientist." *See* Greenwald Decl., Exhibit A, at 36:15–20 ("A: I am retained…to provide comments on…documents that they provide, in addition to utilize my training and expertise…as a practicing weed scientist to provide expert opinions…on this particular case."). Plaintiffs do not question his expertise in the field of weed management. However, that is not the true purpose of his testimony, as Roundup's efficacy as a weed killer is not in dispute. But Dr. Johnson does intend to tell the jury to disbelieve the testimony of the Plaintiff and her husband by implying that their description of Plaintiff's Roundup exposure is not credible. In that same vein, Dr. Johnson also seeks to opine on the credibility of Plaintiff's Expert, Dr. Robert Conry, M.D., as his opinions were based on, *inter alia*, the testimony of Plaintiff and her husband. Dr. Johnson's opinion regarding the credibility of Plaintiff, her husband and other witnesses is not the proper subject of expert testimony, is without any scientific basis, would not aid the jury, and is highly prejudicial. Accordingly, the Court should preclude him from offering his credibility assessment at trial.

During Dr. Johnson's deposition and in his report, he summarized his opinions on Plaintiff Delorme-Barton's exposure history. In doing so, he interjected his belief about the plausibility of her Roundup usage and exposure based on the deposition testimony of Plaintiff and her husband. *See, e.g.,* Greenwald Decl., Exhibit C, at 61, Expert Report of William G. Johnson, Ph.D., M.S. ("Report") ("KDB's claimed applications far exceed what would have been necessary to control weeds on these properties.") (referring to Plaintiff Karen Delorme-Barton as "KDB"); *id.* at 63 ("The volume of glyphosate KDB claims to have used exceeds what would have been necessary to control weeds on the properties."); *id.* at 64 (A: "Ms. Delorme-Barton likely had minimal contact

PLAINTIFF'S DAUBERT MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. WILLIAM JOHNSON, PH.D., M.S.

with glyphosate."); Greenwald Decl., Exhibit A, at 262:17–19 (A: "…the number of applications are in excess of what would have been needed."); *id.* at 264:2–5 (A: "I'm just questioning that…the number of times that the property was treated exceeds what would have been necessary."); *id.* at 264:22–265:2 (A: "I'm just stating that the amount of glyphosate and the number of times that were sprayed are more than -- than what would have been needed to have a -- a -- a nice, prim and proper looking property."); *id.* at 269:2–5 (A: "Well, I think it -- it states pretty clearly here that -- that she would not have needed to spray for as long as -- as was mentioned in the deposition testimony."); *id.* at 269:7–8, 12–13 (Q: "Is it possible that she was -- that she sprayed as much she testified during her deposition?" A: "I mean, it's possible, but there is -- there would be nothing to spray."); *id.* at 276:20–22, 277:2–7.

Similarly, Dr. Johnson seeks to opine on the credibility of Plaintiff's expert, Dr. Conry, by stating that Dr. Conry's expert opinions regarding Plaintiff's exposure are based on Plaintiff's and her husband's deposition testimony. Greenwald Decl., Exhibit C, at 64 ("Dr. Conry's opinions are based on claims that exceed what would be needed to control weeds on these properties."); Greenwald Decl., Exhibit A, at 276:8–9, 12–18 (Q: "So you don't dispute that his opinions are based on plaintiff's reported usage, correct?" A: "Yeah, I -- I don't dispute that he took the -- the data that was provided in Ms. Delorme-Barton's deposition, but as I stated earlier, the -- the amount of times that Ms. Delorme-Barton claimed the properties were sprayed and -- and the amount of glyphosate used are in excess of -- of what would have been needed.")

Despite these citations from his testimony, Dr. Johnson nevertheless denies he is commenting on the credibility of Plaintiff, her husband, and Dr. Conry. But a plain reading of his testimony shows that is exactly what he is doing. One cannot change a credibility opinion by stating that the opinion magically does not, in fact, say anything about credibility. The substance

of the statement matters, not its format. It is indisputable that Dr. Johnson's testimony is being offered, in part, to tell the jury that Ms. Delorme-Barton and her husband are either *mistaken* and/or *lying* about their Roundup use and exposure and that Dr. Conry, whose opinions are based, in part, upon those very accounts, therefore lacks credibility. This testimony is a textbook weighing of witnesses' credibility and, as "opinion testimony on credibility is limited to character [and] all other opinions on credibility are for the jurors themselves to form," Dr. Johnson's testimony will only serve to invade the province of the jury and is not the proper subject of an expert opinion. *United States v. Awkard*, 597 F.2d 667, 671 (9th Cir. 1979).

Dr. Johnson's "expert" opinion is an impermissible attack on the credibility of Plaintiff and her experts, which invades the role of the trier of fact. The Supreme Court has stated that "expert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation.'" *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962) (quoting *United States Smelting Co. v. Parry*, 166 F. 407, 415 (8th Cir. 1909)). Jurors are perfectly capable of applying everyday logic and experiences when weighing the credibility of witnesses and of deciding whether there are inconsistencies in Plaintiff's allegations. Dr. Johnson's testimony would offer the jury no help, and it would bring no expertise, knowledge, skill, or understanding above that of the average juror. His credibility attacks are accordingly inadmissible and should be precluded in their entirety.

## II.     Dr. Johnson's Opinions Lack Foundation

Dr. Johnson's credibility testimony is improper for another reason: he is not qualified to

testify about exposure patterns, intensities, dose, or any other exposure-related matters. He is a weed expert, not an industrial hygienist or toxicologist. *See* Greenwald Decl., Exhibit A, at 20:18–20 (Q: "And you are not an industrial hygienist, correct?" A. "That is correct."); *id.* at 213:3–6 (A: "…I am not a human toxicologist, a causation expert, a hematologist or any type of a human [toxicity] expert.").[4] He cannot say what amount of Roundup absorbed into Plaintiff's skin during any given contact or whether any such quantity of Roundup is negligible. Greenwald Decl., Exhibit A, at 217:4–6 (A: "…in terms of being an exposure expert, that's -- that's an area outside my area of expertise.") Nor is Dr. Johnson a medical doctor, yet he is testifying that Plaintiff's Roundup contact would have been "minimal" is the functional equivalent of telling the jury that Plaintiff's exposures did *not* substantially contribute to her illnesses – or, at the least, the distinction would be difficult for most jurors to parse, thus making Dr. Johnson's testimony more confusing than helpful.

What is more, Dr. Johnson's expertise is in weed science as it relates to agricultural endeavors, not residential herbicide applications:

Q:     And your primary research focus is on weed science with an emphasis on

---

[4] Despite admitting that he is not an expert in toxicology, Dr. Johnson includes toxicological conclusions regarding glyphosate in his report, including, but not limited to, an explanation of LD50 values, "the amount of chemical required to provide a 'lethal dose' to 50% of the test population." Greenwald Decl., Exhibit C, at 29. In particular, Johnson makes conclusory statements that "glyphosate is extremely safe for human use" and "is less acutely toxic than common chemicals such as table salt and aspirin." *Id.* at 32. Those opinions are also without basis as he lacks the qualifications to make them. And as to his comment about Roundup being less toxic than table salt and aspirin, that statement violates the consumer protection laws of many states, evidenced by the recent lawsuit by the New York Attorney General against Monsanto for making these very representations to the people of New York, in which Monsanto settled for a $6.9 million penalty. *See* Greenwald Decl., Exhibit D, Assurance of Discontinuance, *In re* Investigation of Bayer CropScience LP and Monsanto Company, No. 23-025 (June 14, 2023); Letitia James, *Attorney General James Secures $6.9 Million from Bayer and Monsanto for False Advertising of Roundup Weedkillers*, N.Y. STATE ATTORNEY GEN. PRESS RELEASES (June 15, 2023), https://ag.ny.gov/press-release/2023/attorney-general-james-secures-69-million-bayer-and-monsanto-false-advertising.

> agronomic crops, correct?
>
> A:    Yes, that's correct. I also have extension responsibilities and some minor teaching responsibilities as well.
>
> Q:    What do you mean by "extension responsibilities"?
>
> A:    The way I would characterize extension responsibilities is that's the adult -- that's the education of the adult learners that our -- **our clientele farmers**, custom applicators, ag retail employees, certified crop advisers, the people that serve the -- the crop protection industry, the farmers and the other folks that serve the crop protection industry.

Greenwald Decl., Exhibit A, at 22:4–18 (emphasis added). Despite having never done a calculation for residential glyphosate usage in his professional experience, Dr. Johnson opines that Ms. Delorme-Barton's residential usage was more than necessary. *Id.* at 283:1–4 (A: "No, because [calculations about the amount that residential users have spent on an herbicide are] not part of my job responsibility, but that -- again, those are -- those are very simple calculations. They are elementary school-type calculations.") If, in fact, such calculations are better suited for elementary schoolers, the jury undoubtedly is able to evaluate Ms. Delorme-Barton's claims without needing to rely upon the testimony of an "expert", particularly one whose expertise is in agricultural herbicide use.

Even if he were qualified to testify about the intensity of Roundup exposures – and he is not – Dr. Johnson 's opinion would remain inadmissible, as it lacks any foundation in the facts of this case. Indeed, he openly ignores Plaintiff's allegations of her own exposure. Dr. Johnson in particular ignores Plaintiff's and her husband's testimony that she would be visibly wet after spraying Roundup:

> Q:    And do you recall her testimony in her deposition stating that she was wet as a result of spraying Roundup and that it was all over her legs, arms, stomach, feet, clothes and shoes?
>
> [objection omitted]

A.      So, yes, she indicated that those parts of her body were wet, but the definition of "wet" can mean different things to different people. Wet could be a couple of spray drops, all right.

…

Q.      Did you read Ms. Delorme-Barton's husband's deposition?

A.      Yes.

Q.      Okay. And do you recall that he testified under oath that he saw that her legs were wet from Roundup usage?

A.      Yes, I saw that, but, again, "wet" means different things to different people. You are putting on these spray applications in summer weather, the wetness could be due to sweat, and may -- it may not -- it may not be due to spray -- spray particles.

*Id.* at 271:14–23; 273:22–274:5. Dr. Johnson finds himself grasping at straws to find a justification for not taking certain sworn witness testimony into account for his opinions – testimony which directly contradicts his opinion that Ms. Delorme-Barton's contact with glyphosate was "minimal" – and settles on declaring that a statement about getting wet from spraying a liquid herbicide is inherently ambiguous.

Dr. Johnson also claims that Ms. Delorme-Barton's frequency of applications, duration of application, and volume of Roundup products used far exceeds what would have been necessary to control the weeds on her property. *See generally* Greenwald Decl., Exhibit C, at 61–64. However, he does not refer to any studies or data detailing how long it takes to spray a certain size bottle of herbicide over a certain area of land. Even if he had, not every person can or does move and spray at the same rate and in the same amount as is "typical." He offers no scientific basis for that opinion either.

Additionally, Dr. Johnson never personally inspected the properties where Ms. Delorme-Barton sprayed Roundup. He solely looked at property records to get a sense of the property size

and used Google Earth overhead images to estimate the size of the spraying area. *Id.* at 53. Dr. Johnson did not seek to discover the soil type or weed species present at each property yet opines on how much spraying would have been necessary to control such weeds. Nor did he consider the full extent to which the weeds on Plaintiff's property were resistant to glyphosate – his only basis that "herbicide resistance is not a major problem --- for the—residential users of glyphosate" is that "my testimony was it hasn't been a problem expressed by **the clientele that I serve**. And that – what that implies then, when we don't get samples sent in for testing, we don't get phone calls or things like that, that it isn't a problem for that audience because if that audience had a problem, they are – **they are an audience that's not bashful** about calling County-Level Extension." Greenwald Decl., Exhibit A, at 297:15-17, 298:11-18 (emphasis added). Despite not having residential users as his "clientele" he makes the claim that residential users are "not bashful" about calling Indian County-Level Extension regarding weeds.

Dr. Johnson's opinions are nothing more than conjecture created to sow doubt in the minds of the jury as to the credibility of Plaintiff and other witnesses and are not based in scientific fact or on facts in evidence. His sole foundation for his opinion is well within the capabilities of an average juror to reach without expert testimony. As expert testimony "may not include unsupported speculation and subjective beliefs", it is therefore inadmissible and should be precluded. *Greenawalt v. Sun City W. Fire Dist.*, 23 F. App'x 650, 652 (9th Cir. 2001) (citing *Guidroz–Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001)).

### III.   Dr. Johnson's General Opinions Are Irrelevant, However, Even if Relevance is Established, Those Opinions are More Prejudicial than Probative

As shown above, Dr. Johnson's should be precluded from testifying either that (1) Plaintiff, her husband, and Dr. Conry are not credible and (2) because they are not credible, Plaintiff's actual contact with glyphosate would have been minimal. Without those two core components of his

- 10 -

anticipated testimony, all that is left is his general opinion as a weed expert. Weed science, as defined by the Weed Science Society of America, is the "study of weeds, how they grow, and their impact on natural and managed ecosystems." *Weed Science Career Information*, WEED SCIENCE SOCIETY OF AMERICA, https://wssa.net/careers/weed-science-career-information. While Dr. Johnson's opinions on these topics are clearly within his expertise as a "weed scientist," they are in no way probative on any issues in controversy, nor are they legally material.

Plaintiff is *not* disputing the way weeds grow, how they are eradicated, or their impact on natural and managed ecosystems. Nor is plaintiff disputing the difficulties that weeds pose, the efficacy of Roundup in killing weeds, the way herbicides work, or the use and benefits of herbicides. Regardless, Dr. Johnson dedicates the vast majority of his report to these topics. *See generally Greenwald Decl.,* Exhibit C. Dr. Johnson's explanation of these concepts to the jurors would not aid their resolution of this case in any way – at most, it would lead to confusion. Without his impermissible credibility and exposure assessments, Dr. Johnson's general testimony on weed science does not tend to make "more or less probable than it would be without the evidence…[any fact] of consequence in determining the action." Fed. R. Evid. 401. It is thus irrelevant and inadmissible.

Assuming, *arguendo* that any of Dr. Johnson's general opinions were actually relevant, they would certainly violate Fed. R. Evid. 403. Rule 403 provides that "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury,… [or] wasting time." *Id.* The district court has the discretion to exclude such evidence, including expert opinion. *In re Hanford Nuclear Rsrv. Litig.,* 534 F.3d 986, 1016 (9th Cir. 2008). In fact, "this is especially true with respect to expert witnesses." *Id.* (citing *Daubert I*, 509 U.S. at 595; *Daubert II*, 43 F.3d at

- 11 -

1321 n. 17). The Court's gatekeeping obligation "requires an examination of whether the testimony [meets the requirements of Rule 403]." *Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1117 (E.D. Cal. 2020).

Here, Dr. Johnson's intended testimony is highly prejudicial and substantially outweighs its probative value (as noted *supra* there is none). First, his intended testimony about glyphosate's efficacy as an herbicide and its benefits to agricultural and residential users can only serve to prejudice the jury. *See, e.g.* Greenwald Decl., Exhibit C, at 31 ("Glyphosate-based herbicides are the safest, most effective, and most environmentally friendly herbicides in use and have allowed humans to finally gain an edge in our battle against weeds."). Much like Monsanto's claim that Roundup "feeds the world," this testimony has the intended effect of encouraging jurors to decide against Plaintiff solely because of their approval over glyphosate's efficacy and alleged benefits to food production and the subsequent fear that ruling against Monsanto would jeopardize those benefits. This testimony has no probative value to any fact at issue in this case.

Dr. Johnson also intends to testify that his opinions about Plaintiff's Roundup exposure were, in part, reliant upon his personal use of Roundup on his own properties in Missouri and Indiana. *See, e.g.,* Greenwald Decl., Exhibit A at 35:7-10; 262:13-19; 264:5-14 ("And, again, that's based on 30 years of experience and doing that on -- on my own personal properties, properties that -- that were these size and properties as large as 10 acres that I lived on in Missouri and then two-and-a-half acres that I live on now. I also lived in -- on a quarter-acre size lot when I -- when I lived in -- in town when I lived in Missouri. And also spraying, you know, around the farmstead, at my dad's farmstead, and also on our Purdue farms.") Testimony on his personal use is an improper basis for expert testimony and is highly prejudicial in that jurors may infer from it that Dr. Johnson's personal use should be weighted more heavily in deciding the facts of Ms. Delorme-

Barton's Roundup exposure than her own sworn testimony as to her usage because he is an "expert."

Dr. Johnson's "expert opinion" about the history of weeds and herbicides, their use in agricultural settings, and their historical benefits in society – all of which he spends nearly 52 pages of his 65-page report explaining in painstaking detail – is also improper, not only because it is irrelevant and prejudicial, but also because Dr. Johnson is not a historian and thus cannot properly offer expert opinions on these topics either.

Dr. Johnson heavily relies on the EPA's view that glyphosate does not cause cancer throughout his deposition. *See, e.g., id.* at 228:22–229:7:

> Q:     Would you say that the EPA always gets everything right?
>
> [objection omitted]
>
> A:     I would say that the EPA is a regulatory agency that -- that I rely on to make the determination of whether or not a product is safe and effective to use. So it's a regulatory agency that I rely on and -- and I trust that they make the right decisions.

However, Dr. Johnson has no basis to testify about the EPA's evaluation of glyphosate. Dr. Johnson has never testified before the EPA. Greenwald Decl., Exhibit A, at 30:3–4 (A: "I've never gone to Washington, DC to testify in front of EPA."). He has never been retained by EPA as a consultant. *Id.* at 31:1-3 (Q: "Have you ever been retained by the EPA as a consultant on any subject?" A: "No."). He has admitted that he does not know what epidemiology and toxicology studies the EPA reviewed (and did not review) for their glyphosate assessment and has not been directly involved in the registration of any pesticides by the EPA. *See id.* at 206:20–207:6; 227:16–228:5; 228:7–21. Simply relying on the EPA's view without any sort of critical analysis or research is not scientific methodology and thus is not proper expert testimony, especially in light of the EPA's 2022 Withdrawal of the *Glyphosate Interim Registration Review Decision* (Sept 21, 2022)

regarding its prior position on the carcinogenicity of glyphosate. *See* Greenwald Decl., Exhibit E. Such testimony is highly prejudicial as it would encourage the jury to weigh Dr. Johnson's regurgitations of his view of the EPA's process on glyphosate as the proper opinion of an expert on the EPA procedures for registering a pesticide.

As his proffered opinions contain no admissible testimony, Dr. Johnson should be precluded from testifying at trial.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order precluding William G. Johnson, Ph.D., M.S. from testifying at trial, and for such other relief as the Court deems proper.

Dated June 30, 2023                          Respectfully submitted,

                              By:    */s/ Robin L. Greenwald*
                                     Robin L. Greenwald
                                     **WEITZ & LUXENBERG, P.C.**
                                     700 Broadway, Fifth Floor
                                     New York, NY 10003
                                     Telephone: 212-558-5802
                                     Facsimile: (212) 344-5461
                                     rgreenwald@weitzlux.com

                                     *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of June 2023, a copy of the foregoing was filed with the Clerk of the Court through CM/ ECF system which sent notice of the filing to all appearing parties of record.

                                     */s/ Robin Greenwald*