Robin Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Karen Delorme-Barton v. Monsanto,*<br>3:18-cv-01427-VC | **PLAINTIFF'S *DAUBERT* MOTION TO PRECLUDE TESTIMONY FROM MONSANTO COMPANY'S PROPOSED EXPERT DR. WILLIS NAVARRO, M.D.**<br><br>Hearing:<br>Date:  July 27, 2023<br>Time: 10:00a.m. PDT<br>Place: Courtroom 4, 450 Golden Gate Ave.<br>        San Francisco, CA 94102 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on July 27, 2023, at 10:00a.m., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the court, before District Judge Vince Chhabria, Plaintiff will and hereby moves to Preclude Testimony of Monsanto Company's Proposed Expert Dr. Willis Navarro, M.D.

This motion to exclude the testimony of Dr. Willis Navarro is based on this supporting memorandum, all pleadings and papers on file in this matter, and such further oral and documentary evidence and papers as the Court may consider at the time of the hearing.

Dated June 30, 2023                          Respectfully submitted,

                          By:     */s/ Robin L. Greenwald*
                                  Robin L. Greenwald (*Pro Hac Vice*)
                                  **WEITZ & LUXENBERG, P.C.**
                                  700 Broadway, Fifth Floor
                                  New York, NY 10003
                                  Telephone: 212-558-5802
                                  Facsimile: (212) 344-5461
                                  rgreenwald@weitzlux.com

                                  *Attorney for Plaintiff*

PLAINTIFF'S DAUBERT MOTION TO PRECLUDE TESTIMONY FROM MONSANTO COMPANY'S
PROPOSED EXPERT DR. WILLIS NAVARRO, M.D.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................- 1 -

LEGAL STANDARD.........................................................................................- 2 -

ARGUMENT ......................................................................................................- 3 -

   I.   Dr. Navarro's Opinions Are Improperly Predicated Upon His "Clinical Experience" and Scientifically and Methodologically Unsound Theories of Dr. Tomasetti, Which are in Direct Conflict With Each Other. ...................................................................................- 3 -

   II.   The Tomasetti Articles Relied Upon by Dr. Navarro for His Specific Causation Opinion are Population Based Statistical Studies that Cannot Be Relied Upon to Prove Specific Causation as to Ms. Delorme-Barton.................................................................................- 10 -

   III.   Dr. Navarro is Not Qualified to Opine that "Bad Luck" or Random Genetic Mutations are the Cause of Ms. Delorme-Barton's Follicular Lymphoma. ...........................................- 13 -

   IV.   Dr. Navarro Should Be Precluded From Discussing "Risk Factors" for Ms. Delorme-Barton's NHL.........................................................................................- 14 -

CONCLUSION....................................................................................................- 14 -

PLAINTIFF'S DAUBERT MOTION TO PRECLUDE TESTIMONY FROM MONSANTO COMPANY'S
PROPOSED EXPERT DR. WILLIS NAVARRO, M.D.

**TABLE OF AUTHORITIES**

**Cases**

*Avila v. Willits Env't Remediation Tr.*,

633 F.3d 828, 836 (9th Cir. 2011) ............................................. 3

*Building Industry Association of Washington v. Washington State Building Code Council*,

683 F.3d 1144, 1154 (9th Cir. 2012) ........................................... 2

*City of Pomona v. SQM North America Corp.*,

750 F.3d 1036, 1043 (9th Cir. 2014) ....................................... 2, 3

*D.F. ex rel. Amador v. Sikorsky Aircraft Corp.*,

No. 13-331, 2017 WL 4922814, at *14 (S.D. Cal. Oct. 30, 2017) ........................................... 2

*Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I)*,

509 U.S. 579 (1993) ........................................... 2

*Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II)*,

43 F.3d 1311, 1321 n.17 (9th Cir. 1995) ................................. 2, 3

*Dep't of Toxic Substances Control v. Technichem, Inc.*,

No. 12-05845, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016) ........................................... 3

*General Electric Co. v. Joiner*,

522 U.S. at 146 (1997) ........................................... 6

*Griswold, et al., v. Monsanto*,

Case No. 1922-CC1126 (Cir. Ct. Cty. St Louis) ........................................... 9

*In re Incretin-Based Therapies Prod. Liab. Litig.*,

524 F. Supp. 3d 1007, 1049 (S.D. Cal. 2021) ........................................... 6

*In re Roundup Prod. Liab. Litig.*,

390 F. Supp. 3d 1102, 1111 (N.D. Cal. 2018) ....................................... 2, 3

*Messick v. Novartis Pharmaceuticals Corp.*,

747 F.3d 1193, 1196 (9th Cir. 2014) ........................................... 2

*U.S. v. Mejia*,

545 F.3d 179, 198 (2d Cir. 2008) ........................................... 3

**Rules**

Fed. R. Evid. 702 ........................................................................................................................... 2

PLAINTIFF'S DAUBERT MOTION TO PRECLUDE TESTIMONY FROM MONSANTO COMPANY'S
PROPOSED EXPERT DR. WILLIS NAVARRO, M.D.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Karen Delorme-Barton ("Plaintiff") respectfully moves for an order precluding the testimony of Defendant Monsanto Company's proposed expert, Willis Navarro, M.D. Dr. Navarro is a hematologist and oncologist as well as a drug developer and clinical scientist in biotechnology. Dr. Navarro relies on the heavily criticized articles of Monsanto's mathematician "expert", Dr. Cristian Tomasetti ("Tomasetti"),[1] in addition to his limited clinical experience, to arrive at the conclusion that "any exposure to glyphosate that Ms. Delorme-Barton may have experienced was not a significant risk factor for and did not cause or contribute to the development of her lymphoma." Greenwald Decl.[2], Exhibit C, at 1, Expert Report of Dr. Willis Navarro. He improperly uses Tomasetti's statistical research, a population-wide study, to arrive at his opinion regarding the specific cause of Plaintiff's non-Hodgkin lymphoma (NHL).   Because the conclusions reached in Dr. Tomasetti's studies lack reliable methodology, are incapable of being tested, and are premised on insufficient and unreliable data, Dr. Navarro's specific causation opinions should be precluded.

---

[1] Plaintiff also moves to exclude the testimony of Dr. Tomasetti and incorporates by reference the arguments set forth in that motion in support of the instant motion. As more fully explained in that motion, Dr. Tomasetti's study purports to show that most (over 95%) genetic mutations in NHL are caused by "bad luck," *i.e.*, random or "sporadic" chance, rather than environmental exposures or other environmental factors. *See generally* Greenwald Decl., Exhibit A, Tomasetti C. *et al., Stem cell divisions, somatic mutations, cancer etiology, and cancer prevention*, Science (2017), 335(6331): 1330-1334; Greenwald Decl., Exhibit B, Tomasetti *et al.*, *Cancer etiology. Variation in cancer risk among tissues can be explained by the number of stem cell divisions*, Science (2015), 347(6217): 78-81.

[2] Refers to Declaration of Robin L. Greenwald in Support of Plaintiff's *Daubert* Motion To Preclude Testimony From Monsanto Company's Proposed Expert D. Willis Navarro, M.D., attached hereto.

**LEGAL STANDARD**

"Experts may not automatically testify before a jury." *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1111 (N.D. Cal. 2018) (Chhabria, J.). Rather, the district court acts as a "gatekeeper" and Defendant carries the burden of establishing the admissibility of its experts' testimony. *Id.* (citing *Building Industry Association of Washington v. Washington State Building Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012)). To establish the admissibility of its experts' testimony, Monsanto must satisfy the standards set forth in Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I)*, 509 U.S. 579 (1993). *In re Roundup*, 390 F. Supp. 3d at 1111.

Rule 702 provides that to be qualified to testify, "the expert must have sufficient 'knowledge, skill, experience, training, or education' to offer the opinion." *Id.* (citing Fed. R. Evid. 702). Likewise, the expert's testimony must be "'within the reasonable confines of his subject area[.]'" *Id.* at 1111-12 (quoting *D.F. ex rel. Amador v. Sikorsky Aircraft Corp.*, No. 13-331, 2017 WL 4922814, at *14 (S.D. Cal. Oct. 30, 2017)).

The Court must also determine the testimony to be both relevant and reliable for it to be admissible. *Id.* at 1112 (citing *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014)). "'Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry,'" *id.* (citing *City of Pomona*, 750 F.3d at 1044), meaning that the "testimony must 'fit' the question the jury must answer." *Id.* (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II)*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995)). "This bar is cleared where the evidence 'logically advances a material aspect of the proposing party's case.'" *Id.* (quoting *Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014)).

For expert testimony to be reliable, the knowledge underlying it must have "'a reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* (quoting *City of Pomona*, 750 F.3d at 1044). The Court must "'determin[e] whether the analysis undergirding the experts' testimony falls within the range of accepted standards governing how scientists conduct their research and reach their conclusions.'" *Id.* (quoting *Daubert II*, 43 F.3d at 1317). "Both unsound methods and unjustified extrapolations from existing data" can result in exclusion of an expert. *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1112 (N.D. Cal. 2018). See also *Dep't of Toxic Substances Control v. Technichem, Inc.*, No. 12-05845, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016). Likewise, testimony is insufficiently reliable when the expert merely "'regurgitate[s] information" from source materials without further analysis. *Id.* (quoting *U.S. v. Mejia*, 545 F.3d 179, 198 (2d Cir. 2008)).

In toxic tort litigation, general causation examines whether "the substance at issue was capable of causing the injury alleged," whereas specific causation examines whether "the substance caused, or was a substantial factor in causing, the specific plaintiff's injury." *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 836 (9th Cir. 2011).

## ARGUMENT

I.   **Dr. Navarro's Opinions Are Improperly Predicated Upon His "Clinical Experience" and Scientifically and Methodologically Unsound Theories of Dr. Tomasetti, Which are in Direct Conflict With Each Other.**

Dr. Navarro claims that, besides his "clinical experience" he relied "primarily" on Dr. Tomasetti's work, specifically the 2017 article "Stem cell divisions, somatic mutations, cancer etiology, and cancer prevention" to form his opinion that "Ms. Delorme-Barton's FL (follicular lymphoma) was most likely caused by the accumulation of random and unrepaired genetic events

over time." *See* Greenwald Decl., Exhibit D, at 88:15-25-90:13, Dr. Willis Navarro Dep. Tr. (Apr. 26, 2023); Greenwald Decl., Exhibit A; Greenwald Decl., Exhibit C, at 17.

Dr. Navarro is a hematologist as well as a drug developer and clinical scientist in biotechnology. Greenwald Decl., Exhibit D, 14:21-15:1. He has been involved with drug development and biotechnology since 2005; since that time, only 10% of his time has been spent in clinical practice. *Id*. at 35:9-14. Of the 10% of patients he has treated since 2005, only between 2.5% and 5% are NHL patients. *Id*. at 63:18-23 (Q:…So of that 10 percent, how much, what percentage of your time would have been spent treating patients with Non-Hodgkin's lymphoma? A: I see. So probably 25 to 50 percent of that 10 percent, so that would be two and a half to five percent."). Unfortunately for Dr. Navarro, the opinions he has reached through his limited clinical experience in treating NHL patients, conflict with Dr. Tomasetti's "bad luck" "random genetic errors" theory as the cause of NHL.

On the one hand, Dr. Navarro testified that, through his clinical experience, people "who are older tend to be the ones who develop malignancies." Greenwald Decl., Exhibit D, at 88:15-23.  He does not, however, rule out environmental risk factors for the older patients he has treated, *id*. at 92:15-93:10; including, of course, he does not ask his older patients whether they had exposure to glyphosate and/or glyphosate-based herbicides (GBHs), i*d*. at 92:8-14. His opinion related to age and cancer is not specific to NHL and/or follicular lymphoma, but to cancer "generally." *Id.* at 90:4-13. Essentially, Dr. Navarro automatically assumes that his older patients, "[b]y virtue of being alive on the planet," have had "ubiquitous" environmental exposures that cause genetic errors that result in cancer as they age. *Id.* at 95:7-18. Specifically, as to Ms. Delorme-Barton, Dr. Navarro testified that her NHL was not caused randomly; rather it was "[b]y virtue to the fact that we're all exposed to background radiation just from everywhere, we're

exposed to environmental carcinogens, barbecued meats; you name it. There are multiple genetic stressors, if you will, things that can potentially impact DNA. They're everywhere; flying in an airplane at altitude increases your exposure to cosmic rays. That constitutes a nontrivial amount of radiation from, from that kind -- those types of exposures are ubiquitous, and over time, we, we all experience those as we grow older and multiple hits take place." *Id*. 51:17-52:19. Of course, Dr. Navarro does not have the knowledge to determine whether glyphosate is a "ubiquitous" environmental factor to which people are regularly exposed since he failed to investigate that issue and because "I'm not a toxicologist, so that's certainly not my area of expertise," *id*. at 57:7-15; 58:8-14, yet he somehow feels qualified to tell the jury that low levels of radiation from naturally occurring rocks as well as "barbequed meats" were capable of causing Ms. Delorme-Barton's NHL. *Id*. at 57:16-58:2; 51:17-52:19.

On the other hand, Dr. Navarro also attempts to argue that most NHLs are caused by random replicative mutations, relying on the studies of Tomasetti, and appears to apply that to Plaintiff's case. Dr. Navarro's opinions related to "ubiquitous" environmental stressors causing cancer in older patients directly conflict with Dr. Tomasetti's theory that it is "random" spontaneous genetic errors (***not*** caused by the environment) that cause the vast majority of cancers in general, including NHL. Thus, considered together, it would follow that Dr. Navarro believes there can be no true "random" replication error because we are all exposed to "ubiquitous" environment exposures, which he believes are factors in the development of cancer. Indeed, as Dr. Navarro explained, "…there are replication errors and then there are environmental factors, and they're, they're, they both are at play in any cancer that occurs in anybody as they grow older." *Id*. at 56:16-19. Yet his reliance on Tomasetti belies that opinion and he is unable to specifically rule out glyphosate as an environmental factor in the development of Ms. Delorme-Barton's NHL.

Despite the conflict in Dr. Navarro's opinions, he nevertheless claims to rely upon Dr. Tomasetti's population-based statistical analysis related to cancers caused by random errors versus environmental factors. Dr. Tomasetti is a mathematician and economist who received his Ph.D. in applied mathematics. *See* Greenwald Decl., Exhibit E, Tomasetti Curriculum Vitae at 2. He is not a medical doctor, pathologist, geneticist, epidemiologist, or toxicologist, *see* Greenwald Decl., Exhibit F, at 6:22-7:5; 13:19-22, Dr. Cristian Tomasetti Dep. Tr. (Jan. 4, 2022), and his methodology is unreliable, based on insufficient data, speculative, incapable of being tested, and not widely supported. Monsanto cannot bootstrap unqualified specific causation opinions through the guise of a medical expert who cannot confirm Tomasetti's findings with any medical evidence as it relates to Ms. Delorme-Barton and the cause of her NHL.

The court should preclude any expert testimony relying on the "random" "bad luck" theory developed by Dr. Tomasetti, as the methodology used in his study itself is unreliable, incapable of being tested, and premised on insufficient and unreliable data.  What is more, the methodology underlying his mathematical theory is not reliable or capable of testing to determine *the cause of a particular person's cancer*.  See *In re Incretin-Based Therapies Prod. Liab. Litig.*, 524 F. Supp. 3d 1007, 1049 (S.D. Cal. 2021), *aff'd*, No. 21-55342, 2022 WL 898595 (9th Cir. Mar. 28, 2022)("'Trained experts commonly extrapolate from existing data. *Daubert* and the Federal Rules of Evidence prohibit the admission of opinion evidence that is connected to existing data only by the ipse dixit of the expert.'") (quoting *General Electric Co. v. Joiner*, 522 U.S. at 146 (1997)).

Unsurprisingly, the theory underlying Dr. Tomasetti's causation methodology—that over 95% of mutations in NHL are random—is controversial and has been heavily criticized. Plaintiff

has thus far been able to locate 54 published articles[3] criticizing Dr. Tomasetti's "random bad luck" theory. By way of example, several scientists in a 2019 article in the European Journal of Epidemiology criticized Tomasetti's "bad luck" theory because "the claim that cancer is mostly explained by intrinsic random factors is unsupported by data and theoretical models." *See* Greenwald Decl., Exhibit H, Perduca, V., *et al.*, *Stem Cell Replication, Somatic Mutations and Role of Randomness in the Development of Cancer*, Eur. J. of Epidemiology (2019) 34:439-445 ("Perduca 2019"), at 439. The authors conclude that "this is a purely statistical analysis," and cannot be used to assess attribution in an individual case: "nothing can be inferred about the probability for an individual to develop cancer in a given tissue given his/her LSCD [lifetime stem cell divisions]." *Id.* at 440. Moreover, "it is not possible to give a straightforward interpretation of such a correlation [between cancer risk and lifetime stem cell divisions] in terms of fraction of risk attributable to some etiological factor." *Id.* at 441. The article further demonstrates that Dr. Tomasetti's theory finds little support in the data and is a far cry from general acceptance in the scientific community. Other scientists explain that "for [Tomasetti's] argument to hold, one must have reliable measurements of the number of stem cells in the tissue and their division rates and assume that cancers are unlikely to arise from mutations occurring in non-stem cells;" however, "these critical parameters and assumptions lack experimental substantiation." *See* Greenwald Decl., Exhibit I, Rozhok, A, *et al.*, *A Critical Examination of the "Bad Luck" Explanation of Cancer Risk*, Cancer Prev. Res. (2015) 8)9: 762-764, at 762. "The reality is that we do not currently have a good understanding of SC [stem cell] numbers, their division frequencies for most human tissues, and the diversity of cell types or environmental perturbations that can initiate cancer and

---

[3] Plaintiff has included a bibliography of these citations as Greenwald Decl., Exhibit G, attached hereto.

lead to progression." *Id.* Adding to that foundation of doubt, "[f]or multiple tissues, Tomasetti and Vogelstein use mouse data to derive human stem cell [] division rates, but these rates for human SC have not been verified experimentally and may be off by orders of magnitude." *Id.* The authors challenge the entire premise of Tomasetti's novel theory—that the incidence of cancer is linearly correlated with the number of stem cell mutations—by giving examples and showing that "cell divisions and mutation accumulation frequently do not correlate with cancer occurrence, arguing against a simple relationship between the two." *Id.* at 763.

In addition, the International Agency for Research on Cancer's 2020 World Cancer Report cautioned that "[t]he terminology 'sporadic cancers' reflects a currently dynamic but incomplete knowledge of the etiology and pathogenesis of a biologically and morphologically heterogeneous class of diseases," *see* Greenwald Decl., Exhibit J, at 152, IARC World Cancer Report (2020), and summarizes the ample body of research contradicting the Tomasetti theory. *See id.* at 152 (citing papers showing that between 20% and 80% of cancers and cancer deaths resulted from avoidable environmental factors). Ultimately, the IARC report warned that the Tomasetti "sporadic cancer" theory "does not adequately address the complexity of interactions already established in epidemiological and experimental studies that describe the burden of cancers that may be attributable to avoidable or remediable risk factors." *Id.* at 153.

Here, even Monsanto's own expert, Dr. Navarro, admits that follicular lymphoma does not originate with the stem cell division rate on which Dr. Tomasetti bases his "bad luck" theory:

Q:     So let me ask you with regard to follicular lymphoma, do you believe follicular lymphomas originate with stem cells?

A:     I don't think so because the follicular lymphomas are farther along in the development pathway for B cell development, so not, they're not stem cell like, no.

Greenwald Decl., Exhibit D, at 76:11-16. He further testified that he could not state that Ms. Delorme-Barton's chromosomal translocation was related to stem cell divisions. Specifically, he testified:

> "…well, it's a translocation 8 between chromosomes, so it, directly related to stem cell division, I, I don't know that we can say, but it's certainly that in the course of that cell's life that was the first cell to develop this mutation, there was a switch in chromosomal material between the two chromosomes that the IgH and the BCL2 chromosomes…"

*Id*. at 77:7-14.

Another of Monsanto's own medical causation experts in another Roundup case, *Griswold, et al., v. Monsanto,* criticized Dr. Tomasetti's "bad luck" theory. Case No. 1922-CC1126 (Cir. Ct. Cty. St Louis). Dr. David Grinblatt, an oncologist/hematologist at Northshore University Health System in Chicago and clinical associate professor at the University of Chicago Pritzker School of Medicine, testified that Dr. Tomasetti's "bad luck" article is "not like the best paper on lymphagenesis" and/or specific to "lymphagenesis," including the development of NHL. Greenwald Decl., Exhibit K, at 205:15-206:23, Dr. David Grinblatt Dep. Tr. (Nov. 15, 2022). He admitted that Dr. Tomasetti's "bad luck" theory is not related—in any way—to the development of NHL. *Id*. at 48:20-23, 71:10-12, 225:13-16:

> Q:    It sounds like you don't believe random genetic mutations relate to non-Hodgkin's lymphoma at all, correct?
>
> A:    Correct.

*Id*. at 225:13-16. Dr. Grinblatt further explained:

> "The word 'gene mutation' is a very, you know—it's really, in lymphoma, there is a mutation, which is like a specific location on the DNA that's damaged, is different than a translocation where there is not a damage. So, gene mutation is very different than genetic alterations. There's genetic alterations and mutations. In lymphoma usually we're looking at alterations rather than mutations."

*Id*. at 125:3-12.

In sum, Dr. Navarro's opinions that there are "ubiquitous" environmental factors related to all cancers only further raises more issues of unreliability for Dr. Tomasetti's "bad luck" theory, since there is no evidence that Dr. Tomasetti's "bad luck" theory has accounted for (and/or can account for) "ubiquitous" environmental factors that Dr. Navarro believes are capable of causing, and do cause, cancer generally, including Ms. Delorme-Barton's NHL. Dr. Tomasetti's "bad luck" theory is not generally accepted in the scientific community, *and **not even accepted by some of Monsanto's own experts,*** and because Dr. Navarro relies on Dr. Tomasetti's studies (as well as other, contradictory theories), his testimony should be excluded for that reason as well.

## II. The Tomasetti Articles Relied Upon by Dr. Navarro for His Specific Causation Opinion are Population Based Statistical Studies that Cannot Be Relied Upon to Prove Specific Causation as to Ms. Delorme-Barton.

Dr. Tomasetti's articles pertain to cancer generally and are not related to the specific cause of an individual's cancer. Dr. Tomasetti admits that his 2015 and 2017 co-authored papers on the prevalence of sporadic mutations in the general population[4] (which were met with great controversy) are only applicable to population groups, not individuals. He stood by his statement that he's "not aware of any way, as of today, not aware of any scientific way to attribute a specific mutation to a specific cause." Greenwald Decl., Exhibit F, at 47:12-48:19.[5]

In *Metcalf v. Barretts Minerals, Inc., et al.*, Case No. 22STCV21416, Superior Court of the State of California for the County of Los Angeles, a cosmetic talc case involving a plaintiff with mesothelioma, the medical expert for the defense, Dr. Brian Taylor, M.D., (Greenwald Decl., Exhibit L, at 27:20-22, Dr. Brian Taylor Dep. Tr. (June 2, 2023)), who was relying on one of the

---

[4] *See generally* Greenwald Decl., Exhibits A & B.
[5] The only exception Dr. Tomasetti offered was "a BRCA mutation inherited from parents," Greenwald Decl., Exhibit F, at 48:9-12, which is not relevant here.

PLAINTIFF'S DAUBERT MOTION TO PRECLUDE TESTIMONY FROM MONSANTO COMPANY'S
PROPOSED EXPERT DR. WILLIS NAVARRO, M.D.

Tomasetti articles, testified that neither of Tomasetti's articles pertain to specific causation of "any" cancer:

> Q:     Right, because the Tomasetti articles, 2015 and the follow-up, they aren't articles that would pertain to specific causation, correct?
>
> A:     Well, I agree. They do not pertain to specific causation.
>
> Q:     As it relates to any cancer, right?
>
> A:     I would agree with that as well.
>
> Q:     Okay. Why? Why?
>
> A:     Because they don't provide the detail that is able to relate to specific causation. For example, any cancers have multiple potential environmental causes. They lump them all together in that as to whether mutations are potentially caused by environmental factors. So how could you apply that to specific causation for individual carcinogens in a type of cancer? That's not what the purpose of the article was.

*Id.* at 80:22-81:12.

Based upon the fact that Dr. Tomasetti only studied populations (which did not consider glyphosate and/or glyphosate-based herbicide exposure as a control group) but did not study individuals, and since Dr. Tomasetti admits that there is no "scientific way to attribute a specific mutation to a specific cause", it would be impermissible to allow Dr. Navarro to rely upon Dr. Tomasetti's articles as his sole basis for his specific causation opinions related to Ms. Delorme Barton's NHL.

Dr. Navarro cannot, through any medical evidence, link Plaintiff's NHL to Tomasetti's "bad luck" theory. He did not see anything in the diagnostic images or the medical records relevant to that inquiry, other than Ms. Delorme-Barton's age, that would support any opinion that random replicative errors caused her NHL. Greenwald Decl., Exhibit D, at 100:15-102:11. Navarro's opinions boil down to his reliance on an inadmissible opinion by another Monsanto expert, Dr.

Tomasetti. He has not, from a medical causation perspective, independently interpreted and/or analyzed the data from the Tomasetti article, testifying: "A: I have not reviewed the raw data, no." *Id.* at 103:16-18.  At its core, Dr. Navarro's specific causation opinions relating to Dr. Tomasetti's articles are not his own.

That Dr. Navarro's opinions rely on Dr. Tomasetti's mathematical formula is further belied by the fact that Dr. Navarro has never once, in his role as a practicing hematologist/oncologist, consulted a mathematician to determine the cause of his patients' cancers, including NHL:

> Q:    Have you ever consulted a, a non-physician mathematician to determine the cause of any of your patient's Non-Hodgkin's lymphoma?
>
> A:    I've never consulted a mathematician about a diagnosis of lymphoma, no.
>       …
>
> Q:    All right. But as it relates to cancer causation related to a patient, you would never consult with a non-physician mathematician. Correct?
>
> A:    In the course of clinical care, no.

*Id.* at 70:6-25.

As stated above, Plaintiff also seeks to preclude Dr. Tomasetti's opinions because his methodology is unreliable, is based on insufficient data that is speculative, and is incapable of being tested. Those same grounds preclude Dr. Navarro from relying on those same opinions for his specific causation opinion. Monsanto cannot bootstrap otherwise inadmissible evidence through its medical causation expert, who has not performed his own assessment of the underlying raw data utilized by Dr. Tomasetti. Accordingly, Dr. Navarro should be precluded from opining that Ms. Delorme-Barton's NHL was caused by "bad luck" or random spontaneous genetic mutations.

III.    **Dr. Navarro is Not Qualified to Opine that "Bad Luck" or Random Genetic Mutations are the Cause of Ms. Delorme-Barton's Follicular Lymphoma.**

Dr. Navarro is a hematologist as well as a drug developer and clinical scientist in biotechnology. Greenwald Decl., Exhibit D, at 14:21-15:1. He has been predominantly involved with drug development and biotechnology since 2005, spending only 10% of his time in clinical practice. *Id.* at 35:9-14, with less than half of that clinical practice time seeing patients with lymphomas. Thus, the overwhelming majority of his time is spent in drug development and biotechnology.

He is not a geneticist, does not work in any genetics department at any hospital and/or university, does not perform genetic sequencing, and has never issued any reports on genetic sequencing. *Id.* at 44:1-45:10. He was unfamiliar with the term genetic signature: (Q: …Have you ever heard the term genetic signature ever used as it relates in anything you've ever done? A: Not really. I mean, not, not that terminology, exactly, no.) *Id.* at 46:9-14. He was "obviously not" familiar with the National Cancer Institute's definition for "gene signature". *Id.* at 47:16-19; *see* Greenwald Decl., Exhibit M, NCI website setting forth the definition of "gene signature" ("Information about the activity of a specific group of genes in a cell or tissue. In cancer, gene signatures can show how likely certain types of cancer are to grow and spread in the body or how likely they are to recur (come back). A gene signature may be used to help diagnose diseases, such as cancer, plan treatment, find out how well treatment is working, and make a prognosis.).

Furthermore, Dr. Navarro's inability to understand the difference between "ubiquitous" environmental factors that he believes we are all exposed to versus the "random" replicative genetic mutations that Dr. Tomasetti believes are separate from environmental factors is further support for his lack of qualifications to offer opinions in this matter.  Accordingly, even if this Court were to accept Dr. Tomasetti's "bad luck" theory (which is should not), Dr. Navarro lacks

the qualifications to conclude that Ms. Delorme-Barton's follicular lymphoma was caused by "bad luck" and/or random genetic mutations.

## IV.     Dr. Navarro Should Be Precluded From Discussing "Risk Factors" for Ms. Delorme-Barton's NHL.

Dr. Navarro testified he could only point to Ms. Delorme-Barton's age as a risk factor for NHL: "The fact that there are no other clear defining risk factors for her follicular lymphoma other than her age, to me points to the fact that there were random replication errors that led to her disease."  Greenwald Decl., Exhibit D, 102:12-18. His opinion related to age and cancer is not specific to NHL and/or follicular lymphoma, but to cancer "generally." *Id.* at 90:4-13. What is more, since he doesn't ask his older patients whether they had exposure to glyphosate and/or glyphosate-based herbicides, *id.* at 92:8-14, he has not ruled out every possible environmental factor for the older patients he has treated, *id.* at 92:15-93:10, he should be precluded from opining that Ms. Delorme-Barton's age was a risk factor for her follicular lymphoma.  Any reference to her age, without properly ruling out environmental factors, is not relevant and would be confusing and misleading to the jury.  Accordingly, Dr. Navarro should be precluded from discussing Ms. Delorme-Barton's age as a possible risk factor for her NHL.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant Plaintiff's Motion and exclude the opinions of Dr. Navarro.

Dated June 30, 2023                         Respectfully submitted,

                    By:     */s/ Robin L. Greenwald*
                            Robin L. Greenwald
                            **WEITZ & LUXENBERG, P.C.**
                            700 Broadway, Fifth Floor
                            New York, NY 10003
                            Telephone: 212-558-5802
                            Facsimile: (212) 344-5461
                            rgreenwald@weitzlux.com

                            *Attorney for Plaintiff*


<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 30th day of June 2023, a copy of the foregoing was

filed with the Clerk of the Court through CM/ ECF system which sent notice of the filing to all

appearing parties of record.

                            */s/ Robin Greenwald*

PLAINTIFF'S DAUBERT MOTION TO PRECLUDE TESTIMONY FROM MONSANTO COMPANY'S
PROPOSED EXPERT DR. WILLIS NAVARRO, M.D.