Robin Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: *Karen Delorme-Barton v. Monsanto,* 3:18-cv-01427-VC | **PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED NON-RETAINED EXPERT DR. ROBERT TARONE, PH.D.**<br><br>Hearing:<br>Date: July 27, 2023<br>Time: 10:00a.m. PDT<br>Place: Courtroom 4, 450 Golden Gate Ave.<br>    San Francisco, CA 94102 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on July 27, 2023, at 10:00a.m., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the court, before District Judge Vince Chhabria, Plaintiff will and hereby moves to Exclude the Opinions and Testimony of Monsanto Company's Proposed Non-Retained Expert Dr. Robert Tarone, Ph.D.

This motion to exclude the testimony of Dr. Robert Tarone is based on this supporting memorandum, all pleadings and papers on file in this matter, and such further oral and documentary evidence and papers as the Court may consider at the time of the hearing.

Dated June 30, 2023                                        Respectfully submitted,

By:     */s/ Robin L. Greenwald*
        Robin L. Greenwald (*Pro Hac Vice*)
        **WEITZ & LUXENBERG, P.C.**
        700 Broadway, Fifth Floor
        New York, NY 10003
        Telephone: 212-558-5802
        Facsimile: (212) 344-5461

        rgreenwald@weitzlux.com

        *Attorney for Plaintiff*

PLAINTIFF'S DAUBERT MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO
COMPANY'S PROPOSED NON-RETAINED EXPERT DR. ROBERT TARONE, PH.D.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................- 1 -

FACTUAL BACKGROUND ...............................................................................- 2 -

I.    Prior to Consulting with Monsanto's Litigation Counsel, Dr. Tarone Was Not Involved in the Circumstances Underlying the Roundup Litigation. .......................................................- 2 -

II.    In September 2015, Dr. Tarone Begins a Consulting Relationship with Monsanto and its Litigation Counsel that Continues to the Present. .................................................................- 4 -

III.    In 2019, Monsanto's Litigation Counsel and Dr. Tarone Collectively Agreed that Monsanto Would Depose Tarone So That His Opinions Could be Used in the Roundup Litigation. ..........................................................................................- 5 -

IV.    Dr. Tarone Continued Consulting with Monsanto's Counsel After His Deposition. ..- 6 -

V.    Monsanto Discloses Dr. Tarone as a "Non-Retained" Expert in Wave 5 Cases. ............- 6 -

ARGUMENT ......................................................................................................- 7 -

I.    Dr. Tarone is a Retained or Specially Employed Expert, Not a "Non-Retained" Expert, as Monsanto Claims....................................................................................- 8 -

II.    Monsanto's Designation of Dr. Tarone as a "Non-Retained" Expert Has No Bearing on the Court's Assessment. ......................................................................- 10 -

IV.    Even if the Court Finds that Dr. Tarone is "Non-Retained," Monsanto Has Failed to Satisfy Rule 26(a)(2)(C)'s Disclosure Requirement. ..........................................................- 14 -

CONCLUSION ..................................................................................................- 15 -

PLAINTIFF'S DAUBERT MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED NON-RETAINED EXPERT DR. ROBERT TARONE, PH.D.

# TABLE OF AUTHORITIES

**Cases**

*Downey v. Bob's Disc. Furniture Holdings, Inc.*,

  633 F.3d 1, 6 (1st Cir. 2011) ...................................................... 9

*Funai Elec. Co. v. Daewoo Elec. Corp.*,

  No. C 04-1830 CRB (JL), 2007 WL 1089702, at *5 (N.D. Cal. Apr. 11, 2007)...................... 10

*Goodman v. Staples the Office Superstore*,

  *LLC*, 644 F.3d 817, 825-26 (9th Cir. 2011) ............................................... 9

*Hardin v. Wal-Mart Stores, Inc.*,

  No. 1:08-CV-00617AWIGSA, 2010 WL 3341897, at *5 (E.D. Cal. Aug. 25, 2010) .... 8, 10, 14

*In re Application of Rep. of Ecuador*,

  280 F.R.D. 506, 511 (N.D. Cal. 2012) ....................................................... 8

*Mann v. Cnty. of San Diego*,

  Civ. No. 11-CV-708-GPC (BGS), 2014 WL 12729300, at *3 (S.D. Cal. Feb. 12, 2014).......... 9

*Monster Energy Co. v. Integrated Supply Network*,

  *LLC*, No. ED CV 17-548-CBM-RAO, 2018 WL 6136781 (C.D. Cal. Aug. 23, 2018)............ 15

*Montera v. Premier Nutrition Corp.*,

  No. 16-CV-06980-RS, 2022 WL 1225031, at *12 (N.D. Cal. Apr. 26, 2022) ...................... 15

Rule 26(a)(2)(B)............................................................................. 10

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,

  259 F.3d 1101, 1106 (9t1h Cir. 2001).................................................. 2, 7

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ............................................................... passim

Fed. R. Civ. P. 26(a)(2)(C) .............................................................. 14, 15

Fed. R. Civ. P. 37(c)(1)) ............................................................. 2, 7, 14, 15

## INTRODUCTION

In September 2015, six months after the International Agency for Research on Cancer ("IARC") concluded that glyphosate was a probable human carcinogen, and after litigation related to these multidistrict proceedings had commenced, Hollingsworth LLP attorney Eric Lasker met with Dr. Robert Tarone to discuss IARC's glyphosate classification. Monsanto Company ("Monsanto"), through Hollingsworth, paid Dr. Tarone's consulting company $1500 for the three-hour meeting. Following this initial discussion, Dr. Tarone had subsequent meetings with Hollingsworth's attorneys and began regular correspondence with Monsanto in-house scientist, David Saltmiras. Dr. Tarone ultimately published two papers criticizing IARC's glyphosate determination, but, by his own admission, those papers were largely ignored by the scientific community. In 2019, Dr. Tarone and another Monsanto attorney, John Vales, collectively decided that Monsanto would subpoena Tarone's deposition testimony in a state-court proceeding so that Tarone's opinions could "come into the – into the court cases," and thereby stop being ignored. Declaration of Robin L. Greenwald,[1] Ex. A at 76:12-77:4; *see also id.* at 107:7-10 (acknowledging that "the purpose of [the deposition] was so that [Tarone's] opinions could be used in court").

Although Dr. Tarone clearly became involved with Monsanto and its outside counsel for the purpose of consulting and providing expert opinions pertinent to the Roundup litigation, Monsanto now claims that Dr. Tarone is a "non-retained expert." Greenwald Decl., Ex. B at 14. As such, neither Monsanto nor Dr. Tarone has served a written expert report pursuant to Rule 26(a)(2)(B). Instead, Monsanto provided a general disclosure stating that it may elicit testimony

---

[1] Refers to Declaration of Robin L. Greenwald in Support of Plaintiff's *Daubert* Motion To Exclude the Opinions and Testimony of Monsanto Company's Proposed Non-Retained Expert Dr. Robert Tarone, Ph.D., attached hereto.

from Dr. Tarone "regarding the facts and opinions testified to previously in the Roundup litigation." *Id.* This disclosure is inadequate and is a transparent attempt to skirt the requirements of the Federal Rules for strategic advantage. What is more, this effort has prejudiced Plaintiff in this case; in a March 2023 Wave 5 deposition, Dr. Tarone offered new opinions he had never before articulated, opinions he admits he is unqualified to provide, and opinions that have changed since he was previously deposed in 2019. Moreover, Dr. Tarone failed to produce any reliance materials—including materials that show his frequent communications with both Monsanto's counsel and its in-house scientists—until the morning of his deposition, hampering Plaintiff's efforts at effective cross examination and trial preparation.

The Federal Rules require a "self-executing" and "automatic" sanction for a party's refusal to adhere to the Rule 26 disclosure requirements: preclusion of the expert's testimony at trial. *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9t1h Cir. 2001) (referring to Fed. R. Civ. P. 37(c)(1)). Such a sanction is warranted here. Accordingly, Plaintiff respectfully requests that the Court preclude Monsanto from using Dr. Tarone's testimony in any Wave 5 proceedings.

## FACTUAL BACKGROUND

I.    **Prior to Consulting with Monsanto's Litigation Counsel, Dr. Tarone Was Not Involved in the Circumstances Underlying the Roundup Litigation.**

Dr. Tarone is a statistician who was employed by the National Cancer Institute from 1974 to 2002. Greenwald Decl., Ex. C at 32:7-33:10. He acknowledges he has no expertise in toxicology, oncology, hematology, cell biology, or pathology. *Id.* at 187:21-189:10. In 2002, Dr. Tarone left the government and began working for the International Epidemiology Institute ("IEI"), a biomedical research consultancy that advises private industry. *Id.* at 48:21-49:11; 197:2-8. Dr. Tarone served as Biostatistics Director at IEI until 2016, when he retired. *Id.* 49:12-21.

PLAINTIFF'S DAUBERT MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED NON-RETAINED EXPERT DR. ROBERT TARONE, PH.D.

Dr. Tarone has never worked with IARC; he has never been a member, invited specialist, or observer of any IARC Working Group. Greenwald Decl., Ex. A at 41:24-42:13. Aside from drafting part of a book chapter on rodent carcinogen assays for IARC over 35 years ago, Dr. Tarone has had "no involvement in developing or implementing any of IARC's policies or procedures," and has "had no experience with IARC whatsoever." Greenwald Decl., Ex. C at 35:19-37:9; 75:9-15; Greenwald Decl., Ex. A at 44:5-9. Dr. Tarone acknowledged, "I'm not an IARC scholar," and "I'm not an IARC expert." Greenwald Decl, Ex. A 166:15; 167:2-3.

Prior to meeting with Monsanto's outside counsel in September 2015, Dr. Tarone also had no familiarity with IARC Working Group 112, which ultimately produced IARC's glyphosate assessment. Dr. Tarone testified that he (i) was not present for any of the Working Group's discussions on glyphosate, (ii) was not consulted by any member of the Working Group, (iii) did not personally contribute any data, studies, or other pertinent information reviewed or relied upon by the Working Group, and (iv) has not spoken with any Working Group members who participated in the glyphosate deliberations. *Id.* at 44:15-45:16. He further acknowledged that he did not even know IARC had evaluated glyphosate until the meeting with Monsanto's counsel was arranged. Greenwald Decl., Ex. C at 193:14-194:10. Dr. Tarone also admitted that he "was basically ignorant of the glyphosate scientific literature" before consulting with Hollingsworth. Greenwald Decl., Ex. A at 45:3-5. In short, prior to his meeting with Mr. Lasker, Dr. Tarone had never applied his expertise to glyphosate's toxicology or IARC's assessment of glyphosate:

> Q:    Until Monsanto's lawyer's came to your office in September of 2015 and paid your company money for your advice as to Monograph 112, you had not reviewed or analyzed Monograph 112?
>
> A:    I had not.

*Id.* at 47:22-48:3.

II.    **In September 2015, Dr. Tarone Begins a Consulting Relationship with Monsanto and its Litigation Counsel that Continues to the Present.**

In September 2015, Eric Lasker, Monsanto's counsel in this MDL, approached Dr. Tarone's consulting company, IEI, and requested to confer regarding IARC's "glyphosate classification." Greenwald Decl., Ex. C at 206:20-207:15; 229:5-230:5. Dr. Tarone and IEI's CEO, Bill Blot, accepted the invitation, and participated in "a three-hour in-person meeting in which Monsanto paid [IEI] for opinions about the IARC process." Greenwald Decl, Ex. A at 105:6-9; *see also* Greenwald Decl., Ex. C at 53:21-54:17 (stating IEI was paid a total of $1500 for the three-hour meeting). According to Dr. Tarone, Mr. Lasker was "trying to understand how it was [that IARC] came to their opinion," and "it was clear" that the meeting was "because of the glyphosate opinion." Greenwald Decl., Ex. A at 49:10-17. Several weeks later, Mr. Lasker returned with two more attorneys for a two-hour meeting with Dr. Tarone. Greenwald Decl., Ex. C at 57:16-58:14. Dr. Tarone understood that when he sat in on meetings like this, IEI was providing consulting services to the company seeking its advice. Greenwald Decl., Ex. A at 23:9-24:9.

Immediately after the September 2015 meeting, Dr. Tarone began exchanging regular email communications with David Saltmiras, a Monsanto in-house scientist. *Id.* at 60:1-5. Dr. Saltmiras took this opportunity to convey Monsanto's criticisms of IARC's glyphosate assessment; many of these criticisms appeared in Dr. Tarone's later publications. *See* Greenwald Decl., Ex. D. In addition, Dr. Saltmiras invited Dr. Tarone to Helsinki "to defend glyphosate" before European regulators. Greenwald Decl., Ex. A at 62:6-20. Dr. Tarone accepted a separate invitation from Saltmiras to present a critique of IARC at a Washington, D.C. conference hosted by CropLife America, which Dr. Tarone understood to be a "lobbyist group" for pesticide

- 4 -

producers. *Id.* at 68:4-15. In sum, Dr. Tarone agreed with the following overview of his involvement with Monsanto and the Roundup litigation in the fall of 2015:

> Q:     So Monsanto's lawyers come down to your office. They pay your company money for advice. They come back down a few weeks later. One of their employees invites you to Finland to defend glyphosate. And then they offer you to come down to CropLife America, which is a trade organization defending pesticide companies, right?
>
> A:     Yes.

*Id.* at 65:11-19.

### III.   In 2019, Monsanto's Litigation Counsel and Dr. Tarone Collectively Agreed that Monsanto Would Depose Tarone So That His Opinions Could be Used in the Roundup Litigation.

In the three years following his meeting with Monsanto, while he continued communicating with its employees and outside counsel, Dr. Tarone published two articles—an editorial and an opinion piece—criticizing IARC's glyphosate assessment. *See* Greenwald Decl., Ex. E. By his own admission, however, Dr. Tarone's papers were "largely ignored" by the scientific community. Greenwald Decl., Ex. A at 88:14-20; 192:4-19; 420:17-422:3. To rectify this, Dr. Tarone met with another of Monsanto's outside litigation counsel, John Vales, and they "decide[d] collectively that a deposition needs to happen." *Id.* at 107:4-10. Dr. Tarone explained,

> Q:     So then did Monsanto call you and say, hey, do you want me to depose you so you can defend your papers? . . .
>
> A:     I was curious because my papers were not playing a role, didn't seem to be playing a role in the litigation, and I guess it was suggested to me that – because I would not and I did not want to be paid to be a witness. So that was what was proposed is to be deposed and then maybe, you know, the papers *can come into the – into the court cases*.

*Id.* at 76:12-77:4 (emphasis added). In an email to a colleague, Dr. Tarone further explained, "[t]he purpose of the deposition was to defend my published papers on the IARC glyphosate

classification *so they could be cited by defense lawyers in the trials*." Greenwald Decl., Ex. F (emphasis added); *see also* Greenwald Decl., Ex. A at 82:13-15 (describing "the purpose of [the deposition] was so that [his] opinions could be used in court").

According to this collective plan, Monsanto subpoenaed Dr. Tarone in 2019 to sit for a deposition in a case pending in California state court. In advance of the deposition, Dr. Tarone met with Mr. Vales for several hours to prepare his testimony and engaged in multiple preparatory telephone calls. *Id.* at 107:11-15. During the deposition, Dr. Tarone summarized the criticisms of IARC set forth in his papers. And, true to purpose, Monsanto subsequently presented Dr. Tarone's videotaped deposition testimony in California and Missouri trials, ensuring that Dr. Tarone's papers would become part of the Roundup litigation, just as Mr. Vales and Dr. Tarone had planned.

## IV.    Dr. Tarone Continued Consulting with Monsanto's Counsel After His Deposition.

Dr. Tarone acknowledges that he has "been speaking with Monsanto's lawyers since the [2019] deposition." Greenwald Decl., Ex. A at 31:2-6. Indeed, Dr. Tarone and Mr. Vales have exchanged regular text messages since January 2020 in which the two discuss, *inter alia*, strategies for presenting Dr. Tarone's expert testimony in litigation and the press. *See* Greenwald Decl., Ex. G; *see also* Greenwald Decl., Ex. A at 83:6-19. Dr. Tarone and Vales also exchanged emails and telephone communications from 2020 to 2023. *See* Greenwald Decl., Ex. H; Greenwald Decl., Ex. A at 91:5-7. Among other things, these communications were a means for Dr. Tarone to keep Vales informed of his continuing work on glyphosate. *See* Greenwald Decl., Ex. A at 83:23-84:7.

## V.    Monsanto Discloses Dr. Tarone as a "Non-Retained" Expert in Wave 5 Cases.

On January 24, 2023, Monsanto disclosed its experts in Wave 5 cases, designating Dr. Tarone as a "non-retained" expert. Greenwald Decl., Ex. B at 14. According to its disclosure, Dr.

Tarone will potentially provide testimony "regarding the facts and opinions testified to previously in the Roundup litigation" on the following topics:

> (i) the IARC Monographs Program, including its purposes and procedures; (ii) the IARC Working Group 112 deliberations and analysis and the resulting IARC Monograph 112; (iii) the relevant scientific evidence with respect to glyphosate; (iv) the Agricultural Health Study's data and findings, including unpublished, updated data from 2013 regarding glyphosate and non-Hodgkin's lymphoma; (v) animal toxicology, including his analysis of the glyphosate rodent bioassay data; and (vi) biostatistics.

*Id.* Monsanto did not serve a written expert report as required under Rule 26(a)(2)(B).

Following this disclosure, counsel for the MDL plaintiffs subpoenaed Dr. Tarone for a March 2023 deposition and demanded that he produce responsive documents prior to his testimony. When Dr. Tarone received the subpoena, he immediately sent a text message to Mr. Vales, followed by at least three telephone calls in which they "discussed the substance of the deposition." Greenwald Decl., Ex. A at 96:22-97:2; 108:14-23. Dr. Tarone did not comply with the subpoena to produce documents in advance of the deposition, but instead brought "about four inches of documents in a couple different binders" to the deposition. *Id.* at 39:3-9. During this questioning, Dr. Tarone offered opinions that (i) he had never before expressed, (ii) were outside his admitted area of expertise, and (iii) differed from opinions he previously offered.

## ARGUMENT

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert testimony, requiring that an expert who is "retained or specially employed to provide expert testimony in the case," disclose "a written report." Fed. R. Civ. P. 26(a)(2)(B). Failure to satisfy this mandate triggers "self-executing" and "automatic" sanctions under Rule 37(c)(1), which "gives teeth to [the requirement] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd.*, 259 F.3d at 1106.

Monsanto has violated Rule 26(a)(2)(B) because (i) its outside litigation counsel paid to consult with Dr. Tarone on the scientific veracity of IARC's glyphosate evaluation; (ii) enlisted Dr. Tarone's participation in its public defense of glyphosate; (iii) regularly communicated with Dr. Tarone through both its in-house scientists and outside counsel on substantive matters and litigation strategy; and (iv) jointly agreed with Dr. Tarone to subpoena his deposition testimony to make Tarone's opinions available to state and federal juries. These are precisely the actions that parties retain experts to perform, and Monsanto cannot evade the requirements of the Federal Rules by simply calling Dr. Tarone "non-retained." Because Dr. Tarone had no firsthand involvement in the circumstances underlying the Roundup litigation, and instead was sought out after litigation commenced as a consultant to provide advice and expert opinions, he is a retained or specially employed expert for purposes of the Federal Rules. And, as court in this Circuit have explained, a party "cannot have it both ways, [e]ither an expert will testify and provide a report, or will act as a consultant to counsel and not testify at trial." *Hardin v. Wal-Mart Stores, Inc.*, No. 1:08-CV-00617AWIGSA, 2010 WL 3341897, at *5 (E.D. Cal. Aug. 25, 2010), *report and recommendation adopted*, No. 1:08-CV-00617 AWI GS, 2010 WL 3745197 (E.D. Cal. Sept. 16, 2010).

## I.      Dr. Tarone is a Retained or Specially Employed Expert, Not a "Non-Retained" Expert, as Monsanto Claims.

A witness may testify as a non-retained expert, and thus is relieved of the Rule 26(a)(2)(B) written report requirement, when they have personal knowledge of or participated in the facts or circumstances underlying the litigation. *See In re Application of Rep. of Ecuador*, 280 F.R.D. 506, 511 (N.D. Cal. 2012) ("The distinguishing characteristic between expert opinion that requires a report and those that do not is whether the opinion is based on information the expert witness acquired through percipient observations or whether, as in the case of retained experts, the opinion

is based on information [acquired] in a manner other than by being a percipient witness to the events in issue."). This situation arises most often with treating physicians who participate in the underlying events of the case but may also be qualified to render medical opinions. *See Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011) (explaining that the difference between retained and non-retained experts is "most aptly illustrated by the distinction that courts have drawn between treating physicians and physicians recruited for the purpose of giving expert opinion testimony").

Courts in this Circuit have consistently made clear that an expert is exempt from Rule 26(a)(2)(B)'s disclosure requirement only where their opinions are based on percipient observations or participation in the circumstances underlying the litigation, as is often the case with treating physicians. *See, e.g.*, *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 825-26 (9th Cir. 2011) (explaining "that a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during . . . treatment"). Thus, where an expert has no personal knowledge of the specific events underlying the litigation, they must disclose a written report pursuant to Rule 26(a)(2)(B). *See, e.g.*, *Trulove v. D'Amico*, No. 16-CV-050-YGR, 2018 WL 1090248, at *3 (N.D. Cal. Feb. 27, 2018) (finding that "neither [expert] ***had any personal knowledge about the events giving rise to the litigation***, but were only given information later and asked to form opinions, 'solely for the purposes' of the litigation," which triggered Rule 26(a)(2)(B)'s reporting requirement) (emphasis added); *Mann v. Cnty. of San Diego*, Civ. No. 11-CV-708-GPC (BGS), 2014 WL 12729300, at *3 (S.D. Cal. Feb. 12, 2014) ("to the extent [the experts'] testimony was formulated on-the-scene . . . and premised on their personal knowledge and observations, their testimony is exempted from Rule 26's written report requirement. However, ***if their testimony goes beyond such on-the-scene knowledge and***

- 9 -

*observations*, they will be considered 'retained or specially employed' under Rule 26(a)(2)(B)") (emphasis added); *Funai Elec. Co. v. Daewoo Elec. Corp.*, No. C 04-1830 CRB (JL), 2007 WL 1089702, at \*5 (N.D. Cal. Apr. 11, 2007) ("courts impose the report requirement" on witnesses "who provide technical evaluations of evidence reviewed solely in preparation for trial, who provide opinion testimony on the merits of the case, *or who have no direct and personal knowledge of the facts to which they are testifying*") (emphasis added).

Here, Dr. Tarone has acknowledged he had no involvement with or personal knowledge of any of events underlying this litigation and did not even know of IARC's glyphosate classification until the Roundup litigation was underway. Dr. Tarone testified that he had no interaction or communication with Working Group 112 and, prior to his consult with Monsanto's litigation counsel, was "basically ignorant of the toxicological literature of glyphosate." Greenwald Decl., Ex. A at 44:23-45:5. Dr. Tarone only learned about Monograph 112 and the relevant literature *after* his initial paid consult with Monsanto's counsel. *Id.* at 46:12-18. This, in turn, led Dr. Tarone to connect with Monsanto scientist Dr. Saltmiras, who supplied "supplementary material" for studies discussed in IARC's monograph and conveyed Monsanto's criticism of IARC's analysis. Greenwald Decl., Ex. C at 60:19-62:10; Ex. D. Through these communications with Monsanto's lawyers and employees, Dr. Tarone developed the opinions he would ultimately, with John Vales' assistance, intentionally inject into the litigation for Monsanto's strategic benefit.

## II.    Monsanto's Designation of Dr. Tarone as a "Non-Retained" Expert Has No Bearing on the Court's Assessment.

"It is not a party's label assigned to a witness, e.g., non-retained, that controls. Rather, the testimony to be offered controls the retention designation." *Hardin*, 2010 WL 3341897, at \*4. In *Hardin*, the plaintiff attempted to circumvent Rule 26(a)(2)(B)'s reporting requirement by

designating several experts as "non-retained," insisting that they were not "specially employed" because they were not being paid and their testimony was voluntary. *Id.* at \*4-5. The court rejected this contention, looking instead to the expert's involvement in the case; where the witness has "no connection to specific events involved in an action, or . . . ha[s] reviewed information or documents in preparation of litigation, expert reports must be produced." *Id.* at \*4. In other words, the producing party's designation is not dispositive; the witness's actual experience controls.

In this case, Monsanto's designation of Dr. Tarone as "non-retained" should be ignored. Dr. Tarone's obligations are governed not by Monsanto's characterization but by his relationship to the litigation and the testimony he intends to offer. Again, Dr. Tarone's involvement in this case commenced ***after*** participating in a paid meeting with Monsanto's outside counsel. He has no relevant percipient knowledge. And he was deposed after a decision made with Mr. Vales to subpoena his testimony so that his opinion could be used by Monsanto in the litigation. This is precisely what retained experts do and Dr. Tarone must be treated as such.

## III.   Monsanto's Failure to Adhere to Rule 26(a)(2)(B)'s Disclosure Requirement Has Prejudiced Plaintiff by Impairing Her Right to Disclosure and a Full and Fair Cross Examination.

Monsanto's expert disclosure states that it "may elicit testimony from Dr. Tarone regarding the facts and opinions testified to previously in the Roundup litigation," Greenwald Decl., Ex. B at 14, but when he was deposed in Wave 5 in March 2023, Dr. Tarone offered new opinions, opined on matters he admitted he was not qualified to opine upon, and revised testimony he had previously offered. Further, although MDL plaintiffs' counsel subpoenaed Dr. Tarone and demanded pre-deposition production of responsive reliance materials, he untimely responded to this subpoena, producing "four inches of documents" on the morning of his deposition. Greenwald Decl., Ex. A at 39:3-9. These tactics further underscore the necessity of a written expert report

PLAINTIFF'S DAUBERT MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED NON-RETAINED EXPERT DR. ROBERT TARONE, PH.D.

with identified reliance materials, just like every other non-percipient expert in this litigation is required to produce. Monsanto's gamesmanship has prejudiced Wave 5 plaintiffs, and Dr. Tarone should not be exempt from the responsibilities every other expert has adhered to in this case.

*New Opinions*. Because Dr. Tarone provided no written report, significant deposition time was consumed attempting to define the scope of his opinions. As became clear, however, Dr. Tarone's opinions had enlarged since his 2019 deposition. For example, Dr. Tarone criticized IARC's conclusion that there was sufficient evidence of carcinogenicity in animal studies because it relied, in part, on studies showing an increase in benign tumors. *See* Greenwald Decl., Ex. A at 539:11-542:12. Dr. Tarone acknowledged this was "a new opinion" that was never included in any of his papers but insisted on offering the opinion anyway. *See id.* at 700:19-702:17. Dr. Tarone also explained that his concerns about IARC's assessment of the epidemiology studies "are greater now" than when he published his glyphosate papers. *Id.* at 119 at 1-9.

In addition, although Dr. Tarone acknowledged that he has never included "in [his] papers" any criticism of IARC's assessment of the mechanistic data, he now claims that IARC "overstated the mechanisms;" opines that IARC is "starting to put too much weight on mechanisms to make up for weak animal and epidemiology data;" and contends that IARC's conclusion that there was strong evidence that glyphosate caused genotoxicity is "an overstatement." *Id.* at 140:21-141:17; 177:18-21; 179:8-13. Dr. Tarone caveats this testimony by stating he is "not an expert" on mechanistic data, all the while offering his expert opinions on the mechanistic data for the first time in March 2023. *Id.* at 140:21-141:17.

*Unfounded Opinions*. Dr. Tarone claims that it was scientifically unsound for IARC not to compare tumor data in male and female rats. When asked to provide a reference or scientific

principle supporting his view—something he would likely be compelled to do in a written and sourced expert report—Dr. Tarone testified that the concept is too obvious to require a citation:

> Q:      Can you cite to me any reference at all – because I haven't seen it in any of your papers – that requires [sic] that even says it's a scientifically sound method that if you look at the male, you have to look at the female?
>
> A:      Yeah, I mean, that's just science. I'm sorry.
>
> Q:      Can you cite anything to me?
>
> A:      No one should even need a citation for that.

*Id.* at 295:1-10. Similarly, Dr. Tarone claims IARC should have combined data from different animal studies. When asked to provide a citation for the proposition that scientists can reliably combine such data, Dr. Tarone replied simply, "It's done all the time." *Id.* at 295:11-24.

       ***Changed Opinions***. In his 2019 deposition, Dr. Tarone harshly criticized IARC for purportedly not considering data contained in supplemental tables to the 2015 Greim publication. For example, Dr. Tarone testified (without evidence) that the supplemental tables "apparently were" available to IARC but were not used; claimed the Working Group "should have had access" to the data when it reported it did not in fact have such access; and asserted (again, without evidence) that Aaron Blair, chair of the Working Group, "certainly would have known" about the supplemental data even though Blair testified to the contrary. Greenwald Decl., Ex. C at 93:17-94:3; 137:17-21; 151:8-13. Dr. Tarone's 2019 testimony thus fit his chosen narrative that IARC "selectively report[ed] results," "picked the most extreme value[s]" to achieve its desired result, and was "really working hard to try to provide evidence that glyphosate caused these tumors." *Id.* at 91:4-6; 129:19; 132:5-6. Dr. Tarone backed away from this speculative testimony in his Wave 5 deposition, admitting that he has "no idea" whether IARC had access to the supplemental tables from Greim when it conducted its analysis. Greenwald Decl., Ex. A at 186:19-187:14. This is but

one example of how Dr. Tarone's opinions are a moving target, and yet another reason Wave 5 plaintiffs were prejudiced by Monsanto's failure to provide a written report.

      ***Untimely Production***. Dr. Tarone's untimely production of documents further hampered Wave 5 plaintiffs' cross examination. On the morning of his testimony, Dr. Tarone not only produced a four-inch stack of responsive documents, but provided for the first time extensive text and email communications with Monsanto's litigation counsel. *See* Greenwald Decl., Exs. G, H. This sandbagging simply compounds the prejudice caused by Dr. Tarone's failure to adhere to the requirements of Rule 26(a)(2)(B). Rather than preparing to cross examine Dr. Tarone in advance, plaintiffs' counsel was forced to review documents and question him in real time while, at the same time, attempting to define the scope of his shifting opinion testimony. The purpose of Rule 26(a)(2)'s disclosure requirements "is to permit a reasonable opportunity to prepare for effective cross examination and . . . arrange for expert testimony from other witnesses.'" *Hardin*, 2010 WL 3341897, at *3 (quoting Fed. R. Civ. P. 26(a)(2) Advisory Committee's Notes)). Monsanto's gamesmanship has clearly caused prejudice to Wave 5 plaintiffs and Rule 37(c)(1) requires that Dr. Tarone's testimony be excluded.

## IV.    Even if the Court Finds that Dr. Tarone is "Non-Retained," Monsanto Has Failed to Satisfy Rule 26(a)(2)(C)'s Disclosure Requirement.

      Rule 26(a)(2)(C) compels expert witnesses who are not required to provide a written report to state "the subject matter on which the witness is expected to present evidence" and to provide a "summary of the facts and opinions to which the witness is expected to testify." This disclosure requirement is not satisfied by simply providing "general categories of topics," but must sufficiently describe the "facts on which [the expert] will rely," as well as "the opinions to which [the expert is] expected to testify." *Montera v. Premier Nutrition Corp.*, No. 16-CV-06980-RS,

2022 WL 1225031, at *12 (N.D. Cal. Apr. 26, 2022); *see also Christensen v. Goodman Distrib., Inc.*, No. 2:18-CV-2776-MCE-KJN, 2021 WL 71799 (E.D. Cal. Jan. 8, 2021) (excluding non-retained expert because disclosures "fail[ed] to summarize the experts' actual opinions"). Further, a party's failure to comply with Rule 26(a)(2)(C) is not excused if the witness is deposed because a deposition does not necessarily put the opposing party "on notice of the specific opinions [the expert] seeks to provide at trial." *Monster Energy Co. v. Integrated Supply Network, LLC*, No. ED CV 17-548-CBM-RAO, 2018 WL 6136781 (C.D. Cal. Aug. 23, 2018).

Monsanto's disclosure for Dr. Tarone does not comply with Rule 26(a)(2)(C). The disclosure identifies no specific facts or opinions, instead stating that "Monsanto may elicit testimony from Dr. Tarone regarding the facts and opinions testified to previously," and listing several general categories of potential testimony. Greenwald Decl., Ex. B at 14. But as set forth above, Dr. Tarone's testimony has changed since his 2019 deposition and thus this general, non-descriptive reference to previous testimony is insufficient, as are the "general category[ies] of topics" set forth in the disclosure. *Montera*, 2022 WL 1225031, at *12. The disclosure requirements of Rule 26 are intended to prevent litigation by surprise and to permit a party to properly prepare for trial; Monsanto's disclosures are woefully inadequate and, as such, it should not be permitted to rely on the testimony of Dr. Tarone in any Wave 5 proceeding.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court rule that Monsanto's expert disclosure for Dr. Robert Tarone was inadequate and that Dr. Tarone's testimony is excluded in Wave 5 MDL cases pursuant to Federal Rule of Civil Procedure 37(c)(1).

Dated June 30, 2023

Respectfully submitted,

By:    */s/ Robin L. Greenwald*
Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of June 2023, a copy of the foregoing was filed with the Clerk of the Court through CM/ ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Robin Greenwald*