Robin Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | **PLAINTIFF'S *DAUBERT* MOTION TO PRECLUDE TESTIMONY FROM MONSANTO COMPANY'S PROPOSED EXPERT DR. CRISTIAN TOMASETTI, PH.D.** |
| *Karen Delorme-Barton v. Monsanto,* 3:18-cv-01427-VC | |
| | Hearing: Date:  July 27, 2023 Time: 10:00a.m. PDT Place: Courtroom 4, 450 Golden Gate Ave.     San Francisco, CA 94102 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on July 27, 2023, at 10:00a.m., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the court, before District Judge Vince Chhabria, Plaintiff will and hereby moves to Preclude Testimony of Monsanto Company's Proposed Expert Dr. Cristian Tomasetti, Ph.D.

This motion to exclude the testimony of Dr. Cristian Tomasetti is based on this supporting memorandum, all pleadings and papers on file in this matter, and such further oral and documentary evidence and papers as the Court may consider at the time of the hearing.

Dated June 30, 2023

Respectfully submitted,

By: */s/ Robin L. Greenwald*
   Robin L. Greenwald (*Pro Hac Vice*)
   **WEITZ & LUXENBERG, P.C.**
   700 Broadway, Fifth Floor
   New York, NY 10003
   Telephone: 212-558-5802
   Facsimile: (212) 344-5461
   rgreenwald@weitzlux.com

   *Attorney for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................- 1 -

LEGAL STANDARD...........................................................................................- 2 -

ARGUMENT ........................................................................................................- 3 -

   I.   Dr. Tomasetti's Opinions Are Widely Criticized and Improperly Predicated Upon Scientifically and Methodologically Unsound Theories.......................................................- 3 -

   II.   Dr. Tomasetti is not qualified to testify regarding the genetic causes of NHL and should be precluded from offering any opinions regarding the general or specific causes of NHL.......- 6 -

   III.   Dr. Tomasetti should be precluded from offering any testimony regarding the percentage or number of mutations caused by natural replication errors or environmental exposures that lead to cancer generally or NHL specifically. ......................................................................- 8 -

   IV.   The Tomasetti Theory is a Population-Based Statistical Analysis that Cannot Be Relied Upon to Establish or Even Suggest Specific Causation as to an Individual Person, including Ms. Delorme-Barton. ............................................................................................................- 13 -

CONCLUSION....................................................................................................- 15 -

PLAINTIFF'S DAUBERT MOTION TO PRECLUDE TESTIMONY FROM MONSANTO COMPANY'S
PROPOSED EXPERT DR. CRISTIAN TOMASETTI, PH.D.

# TABLE OF AUTHORITIES

## Cases

*Building Industry Association of Washington v. Washington State Building Code Council*,

    683 F.3d 1144, 1154 (9th Cir. 2012) ........................................................................ 2

*City of Pomona v. SQM North America Corp.*,

    750 F.3d 1036, 1043 (9th Cir. 2014) ..................................................................... 2, 3

*D.F. ex rel. Amador v. Sikorsky Aircraft Corp.*,

    No. 13-331, 2017 WL 4922814, at *14 (S.D. Cal. Oct. 30, 2017) ........................... 2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*

    *(Daubert I)*, 509 U.S. 579 (1993) ...................................................................... 2, 13

*Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II)*,

    43 F.3d 1311, 1321 n.17 (9th Cir. 1995) ............................................................ 2, 3

*Dep't of Toxic Substances Control v. Technichem, Inc.*,

    No. 12-05845, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016) ........................ 3

*General Electric Co. v. Joiner*,

    522 U.S. at 146 (1997) ......................................................................................... 13

*Griswold v. Monsanto*,

    Case No. 1922-CC1126 (Cir. Ct. Cty St Louis) ............................................... 6, 11

*Holley v. Pambianco*,

    270 Va. 180, 185 (2005) ...................................................................................... 12

*In re Conagra Foods, Inc.*,

    302 F.R.D. 537, 556 (C.D. Cal. 2014) ................................................................. 15

*In re Incretin-Based Therapies Prod. Liab. Litig.*,

    524 F. Supp. 3d 1007, 1049 (S.D. Cal. 2021), *aff'd*, No. 21-55342, 2022 WL 898595 (9th Cir.

    Mar. 28, 2022) ............................................................................................... 13, 15

*In re Roundup Prod. Liab. Litig.*,

    390 F. Supp. 3d 1102, 1111 (N.D. Cal. 2018) .................................................... 2, 3

*Messick v. Novartis Pharmaceuticals Corp.*,

    747 F.3d 1193, 1196 (9th Cir. 2014) ....................................................................... 3

*Metcalf v. Barretts Minerals, Inc., et al.*,

    Case No. 22STCV21416 ....................................................................................... 14

*Timblin v. Kent Gen. Hosp. Inc.*,

    640 A.2d 1021, 1025-1026 (Del. 1994) .................................................................................. 12

**Rules**

Fed.R. of Evid. 702 ......................................................................................................................... 2

PLAINTIFF'S DAUBERT MOTION TO PRECLUDE TESTIMONY FROM MONSANTO COMPANY'S
PROPOSED EXPERT DR. CRISTIAN TOMASETTI, PH.D.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Karen Delorme-Barton respectfully moves for an order precluding the testimony of Defendant Monsanto Company's ("Monsanto's") proposed expert, Christian Tomasetti, Ph.D. Dr. Tomasetti is a mathematician who seeks to opine about the causes of cancer, including non-Hodgkin lymphoma (NHL), based on his mathematical formula. The formula is derived from a population-based study from which Dr. Tomasetti concludes that over 95% of NHL cases are the result of "bad luck" and not environmental or hereditary factors. His research is controversial and widely criticized, and it lacks reliable methodology, is incapable of being tested, and is premised on insufficient and unreliable data.  His "bad luck" mathematical theory would mislead the jury into believing, wrongly, that less than 3% of NHL cases are caused by environmental factors, a theory lacking scientific basis.

Monsanto's expert disclosure also states that Dr. Tomasetti will testify about the etiology, evolution, detection, and risk protection related to NHL, yet as is explained below he has not done any studies relating specifically to NHL. Greenwald Decl.[1], Ex. A, at 12, Monsanto Company's Rule 26 Designation and Disclosure of General Causation Expert Testimony. Finally, Monsanto's disclosure states that Dr. Tomasetti will testify about the epidemiology, toxicology, and genotoxicity of glyphosate,[2] even though he has no education or training in any of those fields.  As explained below, Dr. Tomasetti's opinions should be excluded.

---

[1] Refers to Declaration of Robin L. Greenwald in Support of Plaintiff's *Daubert* Motion To Preclude Testimony from Monsanto Company's Proposed Expert Dr. Cristian Tomasetti, Ph.D., attached hereto.
[2] "Dr. Tomasetti is designated in the area of whether glyphosate and/or glyphosate-based formulations have been shown to cause NHL in humans, including as it relates to his analysis of the epidemiological data and . . . is also designated to testify about animal and genotoxicity studies

## LEGAL STANDARD

"Experts may not automatically testify before a jury." *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1111 (N.D. Cal. 2018) (Chhabria, J.).  Rather, the district court acts as a "gatekeeper" and Defendant carries the burden of establishing the admissibility of its experts' testimony.  *Id.* (citing *Building Industry Association of Washington v. Washington State Building Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012)).  To establish the admissibility of its experts' testimony, Monsanto must satisfy the standards set forth in Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I)*, 509 U.S. 579 (1993).  *In re Roundup*, 390 F. Supp. 3d at 1111.

Rule 702 provides that to be qualified to testify, "the expert must have sufficient 'knowledge, skill, experience, training, or education' to offer the opinion." *Id.* (citing Fed. R. Evid. 702).  Likewise, the expert's testimony must be "'within the reasonable confines of his subject area[.]'" *Id.* at 1111-12 (quoting *D.F. ex rel. Amador v. Sikorsky Aircraft Corp.*, No. 13-331, 2017 WL 4922814, at *14 (S.D. Cal. Oct. 30, 2017)).

The Court must also determine the testimony to be both relevant and reliable for it to be admissible.  *Id.* at 1112 (citing *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014)).  "'Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry,'" *id.* (citing *City of Pomona*, 750 F.3d at 1044), meaning that the "testimony must 'fit' the question the jury must answer." *Id.* (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II)*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995)).  "This bar is cleared

---

and their relevance to the question of whether glyphosate and/or glyphosate-based formulated products cause NHL."  Greenwald Decl., Ex. A, at 12.

where the evidence 'logically advances a material aspect of the proposing party's case.'" *Id.* (quoting *Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014)).

For expert testimony to be reliable, the knowledge underlying it must have "'a reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* (quoting *City of Pomona*, 750 F.3d at 1044). The Court must "'determin[e] whether the analysis undergirding the experts' testimony falls within the range of accepted standards governing how scientists conduct their research and reach their conclusions.'" *Id.* (quoting *Daubert II*, 43 F.3d at 1317). "Both unsound methods and unjustified extrapolations from existing data" can result in exclusion of an expert. *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1112 (N.D. Cal. 2018); *See also Dep't of Toxic Substances Control v. Technichem, Inc.*, No. 12-05845, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016) (emphasizing that speculative testimony is inherently unreliable).

## <u>ARGUMENT</u>

### I.    Dr. Tomasetti's Opinions Are Widely Criticized and Improperly Predicated Upon Scientifically and Methodologically Unsound Theories.

Dr. Tomasetti is a mathematician and economist. *See* Greenwald Decl., Ex. B, Tomasetti Curriculum Vitae at 2. He is not a medical doctor, pathologist, geneticist, epidemiologist, or toxicologist, s*ee* Greenwald Decl., Ex. C, 6:22-7:5; 13:19-22., Dr. Tomasetti Dep. Tr. (Jan. 4, 2022). He admits that his "bad luck" theory, standing alone, does not apply to a determination of the cause of an individual's cancer.

The court should preclude Dr. Tomasetti's "bad luck" theory testimony, as his methodology is unreliable, incapable of being tested, and premised on insufficient and unreliable data. Dr. Tomasetti's study purports to show that most (over 95%) genetic mutations in NHL are caused by "bad luck," *i.e.*, random or "sporadic" mutations, rather than environmental exposures or other human factors. *See generally* Greenwald Decl., Ex. D, Tomasetti C. et al., *Stem cell*

*divisions, somatic mutations, cancer etiology, and cancer prevention*, Science (2017), 335(6331):

1330-1334; Greenwald Decl., Ex. E, Tomasetti et al., *Cancer etiology. Variation in cancer risk*

*among tissues can be explained by the number of stem cell divisions*, Science (2015), 347(6217):

78-81.[3] Unsurprisingly, his theory – that over 95% of mutations in NHL are random – is widely

criticized and scientifically unsound. What is more, it is not capable of testing to determine *the*

*cause of a particular person's cancer,* a fact with which even Dr. Tomasetti agrees. See *infra* at

Point IV.

Plaintiffs have located 54 published articles[4] criticizing Dr. Tomasetti's "random bad luck"

theory.[5] By way of example, several scientists in a 2019 article in the European Journal of

Epidemiology, criticized Tomasetti's "bad luck" theory because "the claim that cancer is mostly

explained by intrinsic random factors is unsupported by data and theoretical models." *See*

Greenwald Decl., Exhibit J, Perduca, V., *et al.*, *Stem Cell Replication, Somatic Mutations and Role*

*of Randomness in the Development of Cancer*, Eur. J. of Epidemiology (2019) 34:439-445

("Perduca 2019"), at 439. They conclude that ***"this is a purely statistical analysis," and cannot***

***be used to assess attribution in an individual case: "nothing can be inferred about the***

***probability for an individual to develop cancer in a given tissue given his/her LSCD [lifetime***

***stem cell divisions]." Id.*** at 440. Moreover, "it is not possible to give a straightforward

---

[3]   In his expert report, Dr. Tomasetti states that his two Science papers received high Altmetric scores. Greenwald Decl., Ex. F, at 1. Those scores, however, are undoubtedly due to the controversy the papers stirred, and the unprecedent number of papers published afterwards by scientists criticizing Tomasetti's theory.

[4]   A list of those articles is attached as Ex. G. While the articles themselves are not attached as exhibits, Plaintiff's counsel will make them available upon the Court's request.

[5] *See, e.g.*, Greenwald Decl., Ex. H, Plutynski, *Is cancer a matter of luck?*, Biology & Philosophy 36(1):1-28 (2021); Greenwald Decl., Exhibit I, Sornette et al., *Debunking mathematically the logical fallacy that cancer risk is just "bad luck,"* EPJ Nonlinear Biomedical Physics 3(10) (2015). Plaintiffs cite here only to two of many examples of published articles that criticize Dr. Tomasetti's "bad luck" theory.

interpretation of such a correlation [between cancer risk and lifetime stem cell divisions] in terms of fraction of risk attributable to some etiological factor." *Id.* at 441. The article further demonstrates that Dr. Tomasetti's theory finds little support in the data and is a far cry from general acceptance in the scientific community. And other scientists explain that "for [Tomasetti's] argument to hold, one must have reliable measurements of the number of stem cells in the tissue and their division rates and assume that cancers are unlikely to arise from mutations occurring in non-stem cells;" however, "these critical parameters and assumptions lack experimental substantiation." *See* Greenwald Decl., Ex. K, Rozhok, A, *et al.*, *A Critical Examination of the "Bad Luck" Explanation of Cancer Risk*, Cancer Prev. Res. (2015) 8)9: 762-764, at 762. "The reality is that we do not currently have a good understanding of SC [stem cell] numbers, their division frequencies for most human tissues, and the diversity of cell types or environmental perturbations that can initiate cancer and lead to progression." *Id.* Adding to that foundation of doubt, "[f]or multiple tissues, Tomasetti and Vogelstein use mouse data to derive human stem cell [] division rates, but these rates for human SC have not been verified experimentally and may be off by orders of magnitude." *Id.* The authors challenge the entire premise of Tomasetti's novel theory—that the incidence of cancer is linearly correlated with the number of stem cell mutations—by giving examples and showing that "cell divisions and mutation accumulation frequently do not correlate with cancer occurrence, arguing against a simple relationship between the two." *Id.* at 763.

In addition, the International Agency for Research on Cancer's 2020 World Cancer Report cautioned that "[t]he terminology 'sporadic cancers' reflects a currently dynamic but incomplete knowledge of the etiology and pathogenesis of a biologically and morphologically heterogeneous class of diseases," *see* Greenwald Decl., Ex. L, IARC World Cancer Report at 152, and summarizes the body of research contradicting Tomasetti's theory. *See id.* at 152 (citing papers

showing that from 20% to 80% of cancers and cancer deaths result from avoidable environmental factors). The IARC report warned that the Tomasetti "sporadic cancer" theory "does not adequately address the complexity of interactions already established in epidemiological and experimental studies that describe the burden of cancers that may be attributable to avoidable or remediable risk factors." *Id.* at 153.

Even Monsanto's own medical causation expert in another Roundup case, *Griswold v. Monsanto,* Case No. 1922-CC1126 (Cir. Ct. Cty St Louis), is critical of Dr. Tomasetti's "bad luck" theory. Dr. David Grinblatt, an oncologist/hematologist at Northshore University Health System in Chicago and clinical associate professor at the University of Chicago Pritzker School of Medicine, testified that Dr. Tomasetti's "bad luck" article is "not like the best paper on lymphagenesis" and/or specific to "lymphagenesis," including the development of NHL. Greenwald Decl., Ex. M, Dr. David Grinblatt Dep. Tr., at 205:15-206:23, (Nov. 15, 2022). He further stated that Dr. Tomasetti's "bad luck" theory is not related to the development of NHL:

> Q:   It sounds like you don't believe random genetic mutations relate to non-Hodgkin's lymphoma at all, correct?
> A:   Correct.

*Id.* at 48:20-23, 71:10-12, 225:13-16.

## II.   Dr. Tomasetti is not qualified to testify regarding the genetic causes of NHL and should be precluded from offering any opinions regarding the general or specific causes of NHL.

Dr. Tomasetti has a Ph.D. in Applied Mathematics; he does not hold any degrees or professional licenses in medicine, toxicology, or epidemiology. *See* Greenwald Decl., Ex. B, at 2. In fact, by his own admission, he is not an expert in NHL,[6] and is "not 100 percent sure" whether

---

[6] Greenwald Decl., Ex. N, at 182, *Larry Johnson & Gayle Johnson v. Monsanto Co.* Trial Tr. (June 10, 2022) (emphasis added).

lymphoma is even a cancer of the lymph system.[7] He also is "not a hematologist,"[8] and that much was clear during his testimony at the *Johnson v. Monsanto* trial, where he was unable to distinguish actual subtypes of NHL from made-up names for non-existent conditions.[9] Dr. Tomasetti's understanding of NHL is so weak that he was unaware that a B-Cell could be the source of cancer:

> Q:      So a B cell, that cannot be the source of NHL?
> A:      Differentiated B cell? No way, no. At least based on current understanding.[10]

In this case, there is no dispute among the oncologists that Ms. Delorme-Barton has follicular lymphoma, a subtype of NHL that is, unquestionably, a B-cell lymphoma.[11] Dr. Tomasetti's fundamental lack of knowledge about NHL generally and follicular lymphoma specifically is not unexpected -- he has no medical training or professional experience whatsoever. By extension, he lacks the education, training or experience that would qualify him to opine on the causes of NHL generally or the specific cause(s) of an individual's NHL.[12] And while Monsanto discloses him as a general causation expert who will provide expert opinions in the areas of the epidemiology, toxicology and genotoxicity of glyphosate, he again lacks qualifications to testify on any of those subjects as he is neither an epidemiologist, a toxicologist, nor a genotoxicologist.

---

[7] Greenwald Decl., Ex. N, at 88.

[8] Greenwald Decl., Ex. N, at 89

[9] Greenwald Decl., Ex. N, at 89-90.

[10] Greenwald Decl., Ex. N, at 134.

[11] "Follicular lymphoma is a type of non-Hodgkin lymphoma (NHL). ***NHL is a cancer of the lymphatic system.*** Follicular lymphoma develops when the body makes abnormal B lymphocytes. These lymphocytes are a type of white blood cell that normally helps us fight infections. . . . Follicular lymphoma ***affects the B cells*** and so is called a B cell lymphoma." https://www.cancerresearchuk.org/about-cancer/non-hodgkin-lymphoma/types/follicular-lymphoma#:~:text=Follicular%20lymphoma%20is%20a%20type,normally%20helps%20us%20f ight%20infections.  This organization also happens to be the source of the data that Tomasetti uses for his "bad luck" research. See *infra* at p. 8.

[12] Greenwald Decl., Ex. B, at 29.

Regardless of Monsanto's disclosure, Dr. Tomasetti is not qualified to testify about causation in any shape or form.

### III.   Dr. Tomasetti should be precluded from offering any testimony regarding the percentage or number of mutations caused by natural replication errors or environmental exposures that lead to cancer generally or NHL specifically.

While Dr. Tomasetti claims that only 3.9% of NHL cases are due to environmental exposure to carcinogens,[13] he has never provided his underlying calculations or formula— including the numbers he used—in support of his conclusion.[14] Without that information, his opinion regarding the percentage of mutations caused by environmental exposure is merely conclusory *ipse dixit*. Critically, Dr. Tomasetti concedes that the results of his calculations depend on the cancer causation conclusions already found in his underlying data—from the UK Cancer data--and that this data did not include glyphosate-based herbicides (GBHs"), and presumably many other carcinogens.[15] Therefore, his assessment presupposed that GBHs do not cause NHL, and his conclusions were bound to mirror the data pulled from the UK Cancer data, which considered only "occupation" and "infection" as potential "environmental factors"[16] for NHL. This is equivalent to an expert excluding all smokers when determining environmental versus non-environmental factors underlying lung cancer cases and then, when there are no cases (since they were excluded) concluding that the vast majority of lung cancers are caused by "bad luck." That is not science.

---

[13] Greenwald Decl., Ex. N, at 142-143.

[14] Greenwald Decl., Ex. N, at 109-116.

[15] Greenwald Decl., Ex. N, at 117-119.

[16] Dr. Tomasetti explained these terms as follows: "So what I can tell you certainly is that glyphosate was not included as an occupational exposure in NHL, according to Cancer Research UK and Parkin, et al., if this is what you are asking. And then, [regarding infection], as I said, there are things, like HIV and some viruses, and basically things that either suppress the immune system or put the immune system in a state of chronic inflammation or activation." Greenwald Decl., Ex. O at 15:7-16:6, Dr. Tomasetti Dep. Tr. (Feb. 13, 2020).

Even more troubling than Tomasetti making these improper assumptions based on biased data is that his calculations and resulting opinions are irrelevant and unreliable as applied to Plaintiff's case. Dr. Tomasetti's theory—that most NHL cases are caused by random genetic mutations—necessarily requires accurate data on an estimated mutation rate, *i.e.*, the number of mutations that may occur "per cell division."[17] However, different cells divide at different rates, and, as Dr. Tomasetti admitted at a Roundup trial in June 2022, that rate "really depends on the type of cells"[18] and can range from "every four days" to ten years.[19] Therefore, using the correct rate of cell division is a critical starting point for a reliable conclusion. But this is what makes Dr. Tomasetti's theory spurious: as applied to the facts of this case, Dr. Tomasetti's calculations are based on (a) the rate of cell division for the wrong cell; and (b) the wrong rate of mutation.

As Dr. Tomasetti admits, in reaching his opinion about causes of NHL, he only used estimated rates for division and mutation of *hematopoietic stem cells*—cells which divide and replicate frequently, and which can later become B-cells.[20] However, the estimated rate of division in a *hematopoietic stem cell* is irrelevant in this case; Plaintiff's cancer did not originate from any mutations in her *hematopoietic stem cells*, but rather, her cancer resulted from "chromosomal translocation" in her B-cells. At no point did Dr. Tomasetti estimate a cell division rate for B cells.

That may be due in part to the fact that both Dr. Tomasetti and Monsanto's other experts know that B cells, unlike the *hematopoietic stem cells* upon which Tomasetti based his research, do not spontaneously divide and replicate: "*Q: So B cells don't clone themselves? A: Definitely*

---

[17] Greenwald Decl., Ex. N, at 119.
[18] Greenwald Decl., Ex. N, at 23-24.
[19] Greenwald Decl., Ex. N, at 23-24.
[20] Greenwald Decl., Ex. N, at 45-46, 50-51.

*not in general, no.*"[21] In fact, B-cells divide **only when made to do so by exposure to an antigen**, like an carcinogen.[22] In Dr. Tomasetti's own words, with "cells that have a lower replication rate, . . . there is, obviously, less of a chance to accumulate these naturally occurring mutations."[23] "If you have fewer cell divisions, then you expect fewer of these mutations and so less cancer" that can be attributed to "naturally occurring mutations."[24] Dr. Tomasetti offers no scientific support to suggest any scientific validity for extrapolating the rate of division in *hematopoietic stem cells* to B cells. His conclusion, therefore, is unreliable as to Plaintiff's type of NHL in that it greatly overstates the number of divisions and mutations. At its core, it is particularly misleading as applied to B-cell lymphoma.

But it gets even worse, because Dr. Tomasetti also used the incorrect estimated rate of mutation per division—this "mutation rate" refers to point mutations, which is when substitutions or changes occur at a single location along a chromosome.[25] Dr. Tomasetti posits that after enough mutations are replicated through spontaneous cell division, the significant majority of NHL cases occur. However, the inapplicability of that theory is that Plaintiff's NHL was not caused by *point*

---

[21] Greenwald Decl., Ex. N, at 152 (emphasis added); Greenwald Decl., Ex. P, at 74, Goldberg Dep. ("Q: And our cells are replicating constantly, correct? A: Correct, but on the side of the lymphocytes, they don't replicate. Lymphocytes [i.e., B-Cells] do not replicate.") (emphasis added).

[22] Specific causation experts for Monsanto have testified to this fact. *See, e.g.,* Greenwald Decl., Ex. Q, Mooney Dep. at 79-88; Greenwald Decl., Ex. P, at 74, *id.* at 106-108 (Goldberg: "[T]he cancer cell that's involved in lymphoma is a lymphocyte [i.e., B-cell], and these lymphocytes do not divide. So there is no translocation that occurs regularly in them because they don't divide. They begin their division or expansion when they are induced by an agent. [...] [W]hen a DNA event occurs in a B-cell or a T-cell, it's when they interact with their environment."); 179 (Q: And just like other cells in our body, lymphocytes divide throughout our lives as well, correct? A: They do not. As I mentioned, lymphocytes, T-cells and B-cell lymphocytes do not divide. They're dormant. They divide in response to an antigen.") (emphasis added).

[23] Greenwald Decl., Ex. N, at 44.

[24] Greenwald Decl., Ex. N, at 46.

[25] Greenwald Decl., Ex. N, at 33-34, 91-93.

*mutations*; rather, it was caused by *chromosomal translocation;* that is, when part of the chromosome breaks off and the fragmented pieces re-attach to different chromosomes.[26] This distinction, as Dr. Tomasetti admits, is significant:

> Q:   What is a translocation?
> A:   Translocation is when, say, a piece of one chromosome and a piece of another chromosome get switched and attached in places where they originally shouldn't be.
> Q:   And that's different than a point mutation, right?
> A:   Yes.
> Q:   Can you explain how its different from a point mutation?
> A:   As I said, the point mutation involves just one letter change, that – like what we show. In the case of a translocation, you are taking like a big, long piece of, you know, many, many letters and just taking it from where it's supposed to be and moving it somewhere else.[27]

Dr. Tomasetti never estimated how often a B-cell is exposed to an antigen that causes it to divide, how often *chromosomal translocations* occur when a B-cell does divide, nor how often such a *chromosomal translocation* leads to NHL. Instead, he bases his conclusions on a type and rate of mutation that is irrelevant to the facts of this case. In fact, one of Monsanto's own medical causation experts, Dr. Grinblatt, in another Roundup case, *Griswold v. Monsanto*, Case No. 1922-CC1126 (Cir. Ct. Cty St Louis), agreed that Dr. Tomasetti's conclusion is irrelevant, stating that Dr. Tomasetti's "bad luck"/random genetic mutations theory is not related—in any way—to the development of NHL:[28] See *supra* at 6.

And an oncology expert witness who Monsanto disclosed in another Roundup case, Dr. David Grinblatt, debunking application of Dr. Tomasetti's theory to NHL cases, explained that:

> "The word 'gene mutation' is a very, you know—it's really, in lymphoma, there is a mutation, which is like a specific location on the DNA that's damaged, is different than a translocation where there is not a damage. So, gene mutation is very different than genetic

---

[26] Greenwald Decl., Ex. R, at 123:7-17; 124:18-125:5, Dr. Graham Slack Dep. Tr. (Apr. 25, 2023).
[27] Greenwald Decl., Ex. N, at 92-93; *see also* Greenwald Decl., Ex. S, at 165, Dr. Tomasetti Dep. Tr. (Jun. 24, 2022).
[28] Greenwald Decl., Ex. M, at 48:20-23, 71:10-12, 225:13-16:

PLAINTIFF'S DAUBERT MOTION TO PRECLUDE TESTIMONY FROM MONSANTO COMPANY'S
PROPOSED EXPERT DR. CRISTIAN TOMASETTI, PH.D.

alterations. There's genetic alterations and mutations. In lymphoma usually we're looking at alterations rather than mutations.

*Id.* at 125:3-12.

Finally, even if Tomasetti's population-based statistics about cancer were correct (which they are not), the probative value of that testimony would be substantially outweighed by a danger of confusing and misleading the jury when deciding the actual causation issues in this case. While Dr. Tomasetti's theory attempts to offer generalized, population-level conclusions about NHL, he arrives at his conclusion by improperly extrapolating from data about a different type of stem cell, plagued with a different type of cancer, developed at a different point in the life of that stem cell, which was formed in a different way, and has different rates of cell division and mutation. Simply put, Tomasetti's theory answers entirely different questions than this jury will be asked; it does *not* show either 1) that Roundup can or cannot cause NHL, or 2) that Roundup did or did not cause the plaintiff's follicular B-cell lymphoma.

This is why state Supreme Courts around the country have routinely upheld the wholesale exclusion of these improper attempts to extrapolate general, population-level statistical opinions to individual cases because "statistical evidence [has] little, if any, relevance to the issue of causation[.]"[29] The same applies here: Dr. Tomasetti's opinions regarding population-based mutational rates are irrelevant to the causation issues presented in this case and should be excluded.

---

[29] *See, e.g., Holley v. Pambianco*, 270 Va. 180, 185 (2005) (holding that statistical, population probabilities are inadmissible to case-specific issues and emphasizing that the statistical frequency of colon perforations during a colonoscopy were completely irrelevant and misleading to the issue of whether a specific gastroenterologist ultimately breached the standard of care); *Timblin v. Kent Gen. Hosp. Inc.*, 640 A.2d 1021, 1025-1026 (Del. 1994) (holding that even '[i]f it is a fact that 80 percent of cardiac arrest victims die or suffer brain damage, that fact is not relevant to the issue of whether Kent General deviated from the applicable standard of care in trying to resuscitate Mr. Timblin . . . Here, the statistical evidence provided the jury with an improper basis for speculation about the cause of Mr. Timblin's ultimate condition. The statistics invited an inference that, because the majority of patients who experience a cardiac arrest die or suffer brain damage, Mr.

**IV.    The Tomasetti Theory is a Population-Based Statistical Analysis that Cannot Be Relied Upon to Establish or Even Suggest Specific Causation as to an Individual Person, including Ms. Delorme-Barton.**

Dr. Tomasetti's articles pertain to cancer generally; they do not relate to the specific cause of an individual's cancer.  Dr. Tomasetti admits that his 2015 and 2017 co-authored papers on the prevalence of sporadic mutations in the general population[30] are only applicable to population groups, not individuals, testifying that he is "not aware of any way, as of today, ***not aware of any scientific way to attribute a specific mutation to a specific cause.***" Greenwald Decl., Ex. C, at 47:12-48:19.[31] He stood by his statement that he's "not aware of any way, as of today, not aware of any scientific way to attribute a specific mutation to a specific cause." Greenwald Decl., Ex. C, at 47:12-48:19. *See In re Incretin-Based Therapies Prod. Liab. Litig.*, 524 F. Supp. 3d 1007, 1049 (S.D. Cal. 2021), *aff'd*, No. 21-55342, 2022 WL 898595 (9th Cir. Mar. 28, 2022)("'Trained experts commonly extrapolate from existing data. *Daubert* and the Federal Rules of Evidence prohibit the admission of opinion evidence that is connected to existing data only by the ipse dixit of the expert.'") (quoting *General Electric Co. v. Joiner*, 522 U.S. at 146 (1997)).

As stated earlier, even Monsanto's own medical causation expert Dr. David Grinblatt, designated in another Roundup case, believes that Dr. Tomasetti's "bad luck" theory cannot be applied to specific causation in NHL cases because random genetic mutations are irrelevant to NHL disease.  Greenwald Decl., Ex. M, at 225:13-16. See also *supra* at 6 and 11.

Similarly, in *Metcalf v. Barretts Minerals, Inc., et al.*, Case No. 22STCV21416, Superior Court of the State of California for the County of Los Angeles, a cosmetic talc case involving a

---

Timblin was expected to suffer brain damage. Such an inference is not based upon the facts of the case at hand, but rather on impermissible speculation based on inapplicable statistics).
[30] *See* Greenwald Decl., Exs. D & E.
[31] The only exception Dr. Tomasetti offered was "a BRCA mutation inherited from parents," Ex. C, at 48:9-12, which is not relevant here.

plaintiff with mesothelioma, the medical expert for the defense, Dr. Brian Taylor, who was relying

upon one of the Tomasetti articles, (Greenwald Decl., Ex. T,  at 27:20-22, Dr. Brian Taylor Dep.

Tr. ( June 2, 2023), testified that neither of Tomasetti's articles pertain to specific causation of

"any" cancer:

> Q:    Right, because the Tomasetti articles, 2015 and the follow-up, they aren't articles
>        that would pertain to specific causation, correct?
> A:    Well, I agree. They do not pertain to specific causation.
> Q:    As it relates to any cancer, right?
> A:    I would agree with that as well.
> Q:    Okay. Why? Why?
> A:    Because they don't provide the detail that is able to relate to specific causation. For
>        example, any cancers have multiple potential environmental causes. They lump
>        them all together in that as to whether mutations are potentially caused by
>        environmental factors. So how could you apply that to specific causation for
>        individual carcinogens in a type of cancer? That's not what the purpose of the article
>        was.

*Id*. at 80:22-81:12.

Based upon the fact that Dr. Tomasetti only studied populations (which did not consider

glyphosate and/or glyphosate-based Roundup populations as a control group),[32] and did not study

individuals, and since Dr. Tomasetti admits that there is no "scientific way to attribute a specific

mutation to a specific cause," it would be impermissible to allow that data to be used at trial as a

basis to determine the cause of Plaintiffs' NHL.

Neither Dr. Tomasetti, nor Monsanto's disclosed specific causation experts Drs. Navarro

and Slack,[33] can, through any medical evidence, link Ms. Delorme-Barton's NHL to Tomasetti's

"bad luck" theory. Indeed, Dr. Slack also testified that he cannot point to any evidence in any of

Ms. Delorme-Barton's medical records, other than the fact that she had a T14 T18 chromosomal

---

[32] Greenwald Decl., Ex. O, at 15:7-16:6.

[33] Plaintiff has moved to exclude their testimony as well on similar grounds in separate *Daubert* motions.

PLAINTIFF'S DAUBERT MOTION TO PRECLUDE TESTIMONY FROM MONSANTO COMPANY'S
PROPOSED EXPERT DR. CRISTIAN TOMASETTI, PH.D.

translocation (which he does not know the cause of) that affirmatively supported his opinion that her NHL was specifically caused by "bad luck" (even though he concludes that is the cause of her NHL). Greenwald Decl., Ex. R, at 154:20-166:14. And when asked whether there was anything in Plaintiff's diagnostic images (x-rays, CT scans, MRIs) that affirmatively prove that her NHL was caused by random replicative errors, he testified:

> Q:  What words actually affirmatively prove? I want you to give me a sentence, a line, any words that you believe affirmatively prove your opinion that Karen Delorme-Barton's follicular lymphoma was caused by random replicative errors. Go ahead. …
>
> A:  There will be no words...

*Id.* at 163:12-21. As it related to whether Ms. Delorme-Barton's medical records could affirmatively prove that "bad luck" caused her NHL, he testified: "I'm trying to prove a negative here so there's not going to be much to point to." *Id.* at 165:22-166:14.

In sum, neither Dr. Tomasetti's testimony, nor reliance on his "bad luck theory by other experts, should be admissible in the instant case. *See, e.g., In re Incretin-Based Therapies Prod. Liab. Litig.*, 524 F. Supp. 3d 1007, 1043 (S.D. Cal. 2021), *aff'd*, No. 21-55342, 2022 WL 898595 (9th Cir. Mar. 28, 2022) ("Dr. Gale therefore cannot blindly rely on the statistician's reports in forming his medical causation opinion. Rather, prior to relying on other's opinions, he must have first 'conducted an independent evaluation of that evidence.'") (quoting *In re Conagra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014))) (excluding expert's testimony).

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant Plaintiff's Motion and exclude the opinions of Dr. Tomasetti.

Dated June 30, 2023                      Respectfully submitted,

                                 By:     */s/ Robin L. Greenwald*
                                        Robin L. Greenwald

**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of June 2023, a copy of the foregoing was filed with the Clerk of the Court through CM/ ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Robin Greenwald*

PLAINTIFF'S DAUBERT MOTION TO PRECLUDE TESTIMONY FROM MONSANTO COMPANY'S
PROPOSED EXPERT DR. CRISTIAN TOMASETTI, PH.D.