**PODHURST ORSECK, P.A.**
Steven C. Marks
(smarks@podhurst.com)
Kristina M. Infante
(kinfante@podhurst.com)
Pablo Rojas
(projas@podhurst.com)
One Southeast 3rd Avenue, Suite 2300
Miami, FL 33131
Tel: (305) 358-2800
Fax: (305) 358-2382
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE : ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Nancy Salas v. Monsanto Company, et al.*<br>Member Case No. 3:21-cv-06173-VC | MDL No. 2741<br><br>Case No. 3:16-md-2741-VC<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF DR. KEVIN KNOPF**<br><br>Hearing:<br>Date: July 27, 2023<br>Time: 10:00 A.M.<br>Place: San Francisco Courthouse<br>       Courtroom 4 – 17th Floor |

PLAINTIFF'S RESPONSE TO MONSANTO'S MOTION TO EXCLUDE DR. KNOPF

1    Plaintiff, Nancy Salas, respectfully opposes the motion of Monsanto Company
2    ("Monsanto") to exclude the expert testimony of Dr. Kevin Knopf, under the standards set forth
3    in *Daubert v. Merrell Dow Pharmaceutical,* 509 U.S. 579 (1993).

**INTRODUCTION**

This is a personal injury case in which the Plaintiff, Ms. Salas, alleges that she was diagnosed with non-Hodgkin lymphoma ("NHL") and that her use of Roundup, an herbicide manufactured by Monsanto Company, was a substantial contributing factor. *See* Complaint ¶¶ 140, 150. The Plaintiff has retained Dr. Kevin Knopf as a case-specific expert. *See* Plaintiff's Rule 26 Specific Causation Expert Disclosures at 3 (attached as Exhibit 1). Dr. Knopf intends to testify "…on issues of specific causation regarding whether exposure to glyphosate and/or glyphosate-based formulated products was a substantial factor contributing to Ms. Salas developing NHL, specifically, Mantle Cell Non-Hodgkin's Lymphoma." *See* Exhibit 1 at 3.

Defendant, Monsanto, argues that Dr. Knopf's expert testimony should be excluded. However, Dr. Knopf (1) is a highly experienced and distinguished oncologist who is qualified to offer a specific causation opinion, (2) reliably "rules in" Roundup as a potential cause of Plaintiff's NHL in part by relying on the opinions of Plaintiffs' general causation experts whose testimony this Court has consistently ruled is admissible, and (3) reliably rules out other potential alternative causes of Plaintiff's NHL through differential diagnosis, a widely accepted methodology.

**BACKGROUND**

**I.    Dr. Knopf's Qualifications**

Dr. Knopf is a practicing hematologist and oncologist who earned his M.D. from the University of California, San Francisco School of Medicine. *See* Dr. Knopf's CV at 1 (attached as Exhibit 2). Dr. Knopf works in "…the Division Chief of Hematology and Oncology at

Alameda Health Systems in Oakland, California where [he is] responsible for supervising the Hematology and Oncology Division, treating patients, and teaching residents and medical students." *See* Dr. Knopf's Redacted Expert Report (attached as Exhibit 3). Before serving as Division Chief, Dr. Knopf saw about 80 to 100 cancer patients a day. Now, he sees about that many cancer patients on a weekly basis. *See* Knopf Dep. Tr. Vol. I. at 56:19-23 (attached as Exhibit 4) (referred to throughout as "Knopf Dep. Tr."). He has treated patients with NHL, including Ms. Salas' specific subtype of NHL, Mantle Cell Lymphoma. *Id.* at 65:7-8. Dr. Knopf is also an "Assistant Clinical Professor of Medicine at the University of California, San Francisco School of Medicine where [he is] a member of the Institute for Health Policy." *See* Exhibit 3 at 1. Furthermore, Dr. Knopf is "…an Associate Professor at the University of South Carolina School of Pharmacy where [he] conduct[s] research in Pharmaco-epidemiology." Dr. Knopf is also "…an active member of the American Society for Hematology and the American Society for Clinical Oncology." *See* Exhibit 3 at 1. Dr. Knopf has given numerous presentations at the hospital for the internal medicine program specific to the causes and risk factors of NHL and continues to do so to this day. *See* Knopf Dep. Tr. Vol. I. at 42:14-23, 43:11-13.

In short, Dr. Knopf is a thoroughly experienced oncologist who has treated hundreds of patients, including NHL patients. In addition to his extensive academic and clinical experience with oncology, he also has extensive experience in hematology—the science of blood—and epidemiology.

**II.  Dr. Knopf's Methodology**

Dr. Knopf was disclosed as an expert witness who will testify about specific causation in this case. Accordingly, Dr. Knopf expressly relies on the opinions of the general causation experts disclosed by the Plaintiffs in this MDL, experts with whom this Court is extensively familiar and whose testimony this Court has repeatedly ruled is admissible. However, as Dr. Knopf also

explained, he is "not completely reliant on" on these general causation experts. *See* Knopf Dep. Tr. Vol. I. at 76:17-24.  Namely, in addition to relying on, deferring to, and incorporating the opinions of these qualified general causation experts, Dr. Knopf also separately considered available epidemiological literature regarding the association between glyphosate and cancer, using both his oncological expertise and his experience studying and working in the field of epidemiology. In this assessment, he observed and relied upon "high-quality reports" such as a meta-analysis by Zhang et al., which "details their literature search quite well, how they used a filter to come up with the most important articles, case-control studies and cohort studies." *Id.* at 41:3-9.

     Having relied on and incorporating the general causation experts' opinion about general causation, and having conducted his own review of the epidemiological literature, Dr. Knopf then applied the core of his methodology in this case: differential diagnosis. As this Court is surely aware, differential diagnosis is a widely recognized tool for arriving at the likely source of a disease or symptoms. Here, as Dr. Knopf explained, he conducted a "differential diagnosis, by excluding other things that cause it and applying Bradford Hill criteria," a widely recognized set of criteria used for assessing causality in medical and epidemiological settings. *Id.* at 78:7-9. For example, as "temporality is one of the classic key features of the Bradford Hill criteria on causality", Dr. Knopf considered the amount of time Ms. Salas had been using Roundup and found the duration and latency indicative of her NHL. *Id.* at 111:1-112:3. Based on this methodology, Dr. Knopf concluded that "it was more likely that not that Roundup was a substantial factor in the causing of [Ms. Salas'] mantle cell non-Hodgkin's lymphoma." *Id.* at 94:21-24.

## LEGAL STANDARD

Under the *Daubert* standard, a witness may testify as an expert if: (1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. *Id.* Several factors to consider in determining whether the *Daubert* requirements are fulfilled include: (1) whether the expert's theory can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate and the existence and maintenance of standards controlling its operation; and (4) whether the technique has widespread acceptance within the relevant scientific community. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 580 (1993).

## ARGUMENT

**A. Monsanto's argument that Dr. Knopf has not reliably "ruled in" Roundup is without merit both because "ruling in" Roundup is a matter of general causation beyond the scope of Dr. Knopf's opinions and because, even if he had to "rule in" Roundup, he did so reliably.**

Despite Dr. Knopf's role as a specific causation expert, Monsanto argues that Dr. Knopf should be excluded because he has made no reliable basis to "rule in" Roundup exposure as a potential cause of Ms. Salas' NHL. *See* Mot. at 4. This argument is without merit in several respects.

First, the issue of whether Roundup can be "ruled in" as a potential cause of Ms. Salas' NHL is largely a question of general causation. And as noted above, Dr. Knopf has not been disclosed as a general causation expert, only as a specific causation expert. For matters of general causation, he relied on Plaintiffs' disclosed general causation experts and, for good measure, conducted his own review of the epidemiological literature.

Tellingly, Monsanto's argument relies on case law concerning the steps that *general* causation experts must do to rule in Roundup as "a cause of the disease." Mot. at 9-10. Whatever

5

PLAINTIFF'S RESPONSE TO MONSANTO'S MOTION TO EXCLUDE DR. KNOPF

the merits of these cases as a general matter, they are inapposite to the instant Motion because they describe purported requirements for *general causation* testimony to be admissible, and that is not Dr. Knopf's testimony here. Further, this Court has already ruled on this matter in a different Roundup case. In that case, as in ours, Monsanto argued that the specific causation expert "cherry-picked" favorable epidemiological studies. *See* Mot. at 6; *see also In re Roundup Prod. Liab. Litig.,* 358 F. Supp. 3d 956, 958 (N.D. Cal. 2019). The Court held that this argument "is off point." *Id.* "As this Court has previously ruled, the specific causation experts are permitted to build from the plaintiffs' admissible general causation opinions. And the admissible general causation opinions grappled with the full body of evidence. Thus, it does not matter that the specific causation experts mentioned only a subset of the epidemiological studies in their reports; at trial, their basis for ruling in glyphosate will be the general causation opinions." *Id.*

Second, even if Dr. Knopf were somehow required to expressly "rule in" Roundup, he has done so. As noted above, he relied expressly on general causation experts who concluded that Roundup and glyphosate are carcinogens, as well as his own review of epidemiological studies reaching the same conclusion. To the extent that Monsanto's gripe is that Dr. Knopf cannot "rule in" Roundup without first concluding that Ms. Salas was actually *exposed* to the product, Dr. Knopf of course is relying on Ms. Salas' sworn testimony that she did, in fact, use Roundup. Monsanto's Motion does not squarely fault Dr. Knopf for relying on Ms. Salas' testimony, nor can it. Of course, there is nothing wrong or unreliable about Dr. Knopf relying on Ms. Salas' testimony that she used Roundup.

Third, much of Monsanto's argument that Dr. Knopf cannot reliably rule in glyphosate as a cause of Ms. Salas' NHL centers on the assertion that he did not evaluate her absorbed dose of glyphosate. *See* Mot. at 5. This argument is entirely without merit. The "absorbed dose" methodology that Monsanto posits as an apparent *requirement* that Dr. Knopf failed is essentially

the opposite: it is a methodology that has *never* been used to assess the human cancer risks of glyphosate or Roundup. To the limited extent that Monsanto's Motion cites cases for the general proposition that some dose or exposure assessment is warranted in toxic torts cases, the widely recognized exposure assessment methodology for *glyphosate* is *not* Monsanto's proposed "absorbed dose" method. Instead, across the epidemiological literature regarding glyphosate and cancer—including the studies that Monsanto and its experts most frequently cite—scholars have measured glyphosate exposure in terms of exposure days, not "absorbed dose." And Dr. Knopf correctly observed that Ms. Salas' exposure in terms of exposure days was substantial. Monsanto's cites simply do not support their argument that an "absorbed dose" methodology is appropriate—much less *required*—in the glyphosate context. Among other things, the cases are not glyphosate-related.

Indeed, Dr. Knopf would almost certainly fail the *Daubert* standard if he *did* rely exclusively on "absorption dose" to assess Ms. Salas's cancer risk from glyphosate or Roundup. That is why Ms. Salas has moved to exclude the testimony of Monsanto's expert Dr. Schaeffer, whose "methodology" was exclusively based on an inapposite "absorbed dose" calculation. *See* D.E. [ECF # 16850].

Monsanto's Motion also mischaracterizes Dr. Knopf's testimony in arguing that "Dr. Knopf acknowledged that knowing the absorption amount of Roundup would be helpful." Mot. at 10. In fact, Dr. Knopf explained that as far as he knew, it would not be possible to learn how much Roundup or glyphosate any given patient had in fact "absorbed," despite repeated questions from Monsanto's counsel attempting to elicit a soundbite suggesting that Dr. Knopf agreed with a novel and untested "absorbed dose" methodology. *See* Knopf Dep. Tr. Vol. II at 327:6-11 (Monsanto's counsel, having failed to secure the soundbite, beginning a question with "So I'm

correct . . .," resulting in a form objection from Plaintiff's counsel) (attached as Exhibit 5).

Monsanto also argues that Dr. Knopf "…fails to account for Ms. Salas' actual disease, Mantle Cell Lymphoma ("MCL"), and relies exclusively on generic studies about NHL…" *See* Mot. at 6. This is a red herring. Monsanto does not and cannot cite to *any* study showing that the cancer risk caused by glyphosate or Roundup is somehow *different* for MCL than for other types of NHL. Accordingly, Dr. Knopf cannot be faulted for relying on studies regarding NHL, a cancer type that admittedly *includes* MCL. If Monsanto's argument held water, then Monsanto's *own* experts must be precluded from testifying about any studies regarding NHL, as well, since they would—in Monsanto's words—have "failed" to account for the specific association between glyphosate and MCL.

Moreover, Dr. Knopf explained in his deposition testimony why relying on studies regarding NHL in general was appropriate in a case involving a specific NHL subtype such as MCL. For instance, he explained that the different subtypes of NHL "…have a lot in common." *See* Knopf Dep. Tr. Vol. I. at 92:1-13. He stated that "…we certainly use similar drugs in some of them and similar approaches in some of them. So they're not… totally distinct… it's not like the difference between lymphoma and colon cancer." *Id.* at 92:1-11.

**B. Monsanto's argument that Dr. Knopf fails to reliably rule out other potential alternative causes of Plaintiff's NHL is without merit.**

Monsanto bafflingly contends that Dr. Knopf failed to rule out or "even consider" other potential causes of Ms. Salas' NHL. *See* Mot. at 7. This is simply not true. Whatever Monsanto's gripes about Dr. Knopf's conclusions, it is beyond reasonable dispute that he employed a methodology—differential diagnosis—that *necessarily* included considering and ruling out other potential risk factors for NHL. Moreover, as courts have previously explained, "a reliable differential diagnosis need not rule out all possible alternatives." *Guinn v. AstraZeneca Pharms.*

*LP,* 602 F.3d 1245, 1253 (11th Cir. 2010). Rather, it must "consider other factors that could have been the *sole* cause of plaintiff's injury." *Id.* (emphasis added). Here, Dr. Knopf's methodology therefore required him only to rule out other potential risk factors as the *sole* cause of Ms. Salas' NHL. And his methodology reliably supports his conclusion that Roundup was more likely than not a contributing factor to Ms. Salas' disease.

Monsanto's Motion mischaracterizes Dr. Knopf's actual methodology—or, worse, disregards it altogether—and posits that Dr. Knopf used a phantom "always Roundup" methodology. *See* Mot. at 9. This is simply untrue. And it is unsupported by anything other than selective and misleading quotations and generic smears against Dr. Knopf. In fact, as outlined above, Dr. Knopf performed a differential diagnosis, a widely recognized method that "is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.'" *Guinn,* 602 F.3d at 1253 (citing *Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 262 (4th Cir.1999)).

Contrary to Monsanto's mischaracterizations, Dr. Knopf expressly considered potential risk exposures such as proximity to major environmental hazards or rehabilitation sites. He also considered known risk factors for NHL such as viral infections, including hepatitis and HIV, with which Ms. Salas has *never* been diagnosed. He considered whether Ms. Salas has a family history of NHL, another known risk factor which she does *not* have. And he considered and ruled out whether her past smoking history could be the sole cause of her NHL, including by considering scientific literature indicating that smoking history is *not* a well-established risk factor for NHL. *See* Knopf Dep. Tr. Vol II. at 360:6-361:9; *see also* Exhibit 3 at 7-15. Finally, although Monsanto faults Dr. Knopf for purportedly failing to consider "random genetic mutations," of course "random" mutations are not themselves a risk factor. And to the extent that the risk of such

mutations increases with age, Dr. Knopf expressly considered Ms. Salas' age and observed that she was diagnosed at a younger age than the median NHL patient.

In short, Monsanto's purported criticisms of Dr. Knopf's methodology are largely straw-man arguments for excluding an "always Roundup" methodology that Dr. Knopf *did not* employ. Most if not all of the things that Monsanto claims Dr. Knopf *should have done*, he in fact *did*. Namely, he employed a differential diagnosis methodology and "consider[ed] other factors that could have been the *sole* cause of plaintiff's injury." *Guinn,* 602 F.3d at 1253 (11th Cir. 2010).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that this Court should deny Defendant's Motion to Exclude Testimony of Dr. Kevin Knopf.

Dated: June 30, 2023

Respectfully submitted,

**PODHURST ORSECK, P.A.**

/s/ *Steven C. Marks*
Steven C. Marks
(smarks@podhurst.com)
Kristina M. Infante
(kinfante@podhurst.com)
Pablo Rojas
(projas@podhurst.com)
One Southeast 3rd Avenue, Suite 2300
Miami, FL 33131
Tel: (305) 358-2800
Fax: (305) 358-2382
*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on June 30, 2023, I electronically filed the foregoing document with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

By: */s/ Steven C. Marks*
   STEVEN C. MARKS
   *Counsel for the Plaintiff*