| | |
|---|---|
| **WILKINSON STEKLOFF LLP**<br>Brian L. Stekloff (*pro hac vice*)<br>(bstekloff@wilkinsonstekloff.com)<br>Rakesh Kilaru (*pro hac vice*)<br>(rkilaru@wilkinsonstekloff.com)<br>2001 M St. NW<br>10th Floor<br>Washington, DC 20036<br>Tel:  202-847-4030<br>Fax: 202-847-4005<br><br>**HOLLINGSWORTH LLP**<br>Eric G. Lasker (*pro hac vice*)<br>(elasker@hollingsworthllp.com)<br>1350 I St. NW<br>Washington, DC 20005<br>Tel:  202-898-5843<br>Fax: 202-682-1639 | **COVINGTON & BURLING LLP**<br>Michael X. Imbroscio (*pro hac vice*)<br>(mimbroscio@cov.com)<br>One City Center<br>850 10th St. NW<br>Washington, DC 20001<br>Tel:  202-662-6000<br><br>**BRYAN CAVE LEIGHTON PAISNER LLP**<br>K. Lee Marshall (CA Bar No. 277092)<br>(klmarshall@bclplaw.com)<br>Three Embarcadero Center, 7th Floor<br>San Francisco, CA 94111<br>Tel:  415-675-3400<br>Fax: 415-675-3434<br><br>Jed P. White (CA Bar No. 232339)<br>(jed.white@bclplaw.com)<br>120 Broadway, Suite 300<br>Santa Monica, CA 90401<br>Tel:  310-576-2100<br>Fax: 310-576-2200 |

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>*Michele Glavanovits v. Monsanto, Co.*, 3:20-cv-01016-VC | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF**<br><br>Hearing:<br>Date:    July 27, 2023<br>Time:   10:00 a.m.<br>Place:   San Francisco Courthouse,<br>             Courtroom 4 – 17th Floor |

**INTRODUCTION**

Dr. Ron Schiff's specific causation opinions should be excluded for the reasons explained in Monsanto's opening brief ("Mot."). Specifically, Dr. Schiff fails to reliably "rule in" glyphosate as a potential cause of Ms. Glavanovits' NHL, and fails to "rule out" all potential alternative causes because he relies on an inadmissible theory of causation that merely assumes that any glyphosate exposure is a substantial cause of a plaintiff's disease. Ms. Glavanovits' opposition ("Opp.") largely ignores the core points of Monsanto's brief, or else reaffirms the aspects of Dr. Schiff's opinions that render them unreliable. Ms. Glavanovits also argues that this Court has "already recognized" that Dr. Schiff can present his unique causation theories in her case because the Court previously ruled that *other* experts presenting *different* specific causation opinions could testify at trial. *See* Opp. at 4-5. This Court's prior *Daubert* rulings do not amount to a blank check permitting any purported expert to opine on specific causation regardless of methodology, provided he has some limited medical clinical experience, as Plaintiff asserts. Indeed, the Court has previously deemed aspects of causation opinions inadmissible in the Roundup MDL when they rely on unreliable methodologies. *See, e.g.*, *In re Roundup Prod. Liab. Litig.*, 358 F. Supp. 3d 956, 960-61 (N.D. Cal. 2019). Such is the case here. Dr. Schiff employs a distorted differential etiology that is fundamentally unreliable, and his specific causation opinion must be excluded.

**ARGUMENT**

**I.  Dr. Schiff Does Not Reliably Rule In Glyphosate As A Possible Cause Of Plaintiff's NHL Because He Ignores Ms. Glavanovits' Actual Absorbed Dose.**

In order to rule in glyphosate as a potential cause of Ms. Glavanovits' NHL, Dr. Schiff must include in his analysis the amount of glyphosate actually absorbed into her skin, and then provide a reliable basis to conclude that that absorbed amount is sufficient to cause NHL under real-world conditions. Dr. Schiff must be able to opine on the amount of glyphosate actually absorbed into Ms. Glavanovits' skin—as opposed to merely the amount of glyphosate to which her skin was exposed—because in a toxic torts case it is the dosage of the substance that actually enters a plaintiff's body that permits a finding of specific causation. *See McClain v. Metabolife*

1  *Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005) ("Dose is the single most important factor to
2  consider in evaluating whether an alleged exposure caused a specific adverse effect."); *Pluck v.*
3  *BP Oil Pipeline Co.*, 640 F.3d 671 (6th Cir. 2011) (excluding an expert for failing to reliably
4  rule in benzene exposure as a possible cause because the expert "formulated his opinion on dose
5  without any exposure data, only having been told that [Pluck] had been 'heavily' exposed to
6  benzene in her water"); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 770-73 (Tex. 2007)
7  (discussing importance of dose on causation inquiry and reversing judgment in Plaintiff's favor
8  following jury trial where Plaintiff did not establish sufficient dose to cause alleged injuries).
9  Indeed, Dr. Schiff has previously conceded that absorbed dosage is critical to determining
10 specific causation in a case like this.  *See* Ex. J, Schiff (*Moore*) Dep. at 121:20-24, 122:13-24.[1]

11  Here, Ms. Glavanovits does not proffer an expert to opine on the amount or dose of
12 glyphosate that actually entered her body.  And Dr. Schiff disclaimed any need to determine the
13 dosage of Ms. Glavanovits' exposure.  He instead testified that the data he was provided supports
14 a finding that Ms. Glavanovits was exposed to some glyphosate amount for a sufficient number
15 of days over her lifetime.  Ex. K, Schiff (*Glavanovits*) Dep. at 103:15-105:19, 103:15-104:25.
16 Dr. Schiff's finding is backed only by cherry-picked studies—primarily Eriksson 2008 and
17 Zhang 2019—purporting to show an increased risk of NHL among individuals exposed to
18 glyphosate more than two days per year or more than 10 days in their lifetime.  Ex. I, Schiff
19 (*Glavanovits*) Report at 26-27.  His use of these selectively-chosen studies is unreliable for
20 reasons explained in Monsanto's opening brief.  *See* Mot. at 4-5.  In her opposition, Ms.
21 Glavanovits provides no rebuttal to Monsanto's argument that these studies are unreliable.

22  Ms. Glavanovits largely ignores Monsanto's argument as to the deficiencies in Dr.
23 Schiff's analysis, and instead points to his testimony and opinions regarding the amount and
24 circumstances of her exposure—*i.e.*, how much glyphosate may or may not have landed on her
25 skin—in an attempt to rebut Monsanto's argument.  *See* Opp. at 5-6.  Again, this testimony is

---

[1] All citations to "Ex." are to the exhibits attached to Monsanto's opening brief.  All citations to "Reply Ex." are to the exhibits attached to this reply.  And all citations to "Pl. Ex." are to the exhibits attached to Ms. Glavanovits' opposition.

irrelevant here because the key deficiency in Dr. Schiff's analysis is what *dosage* of this purported exposure to glyphosate was actually absorbed into Ms. Glavanovits' skin.  Only at the very end of Ms. Glavanovits' argument does she address this issue—with a single cite to Dr. Schiff's deposition testimony where he states that Ms. Glavanovits' internalized dose "doesn't matter because the exposure thresholds in the literature that are associated with the increased risk [of NHL] are also not expressed by measurements of serum or urine or tissue concentrations."  Opp. at 7.  But the epidemiological studies on which Dr. Schiff purports to rely (*see* Ex. K, Schiff (*Glavanovits*) Dep. at 103:15-104:25; Ex. I, Schiff (*Glavanovits*) Report at 26-28) do not save Dr. Schiff's specific causation opinion, even if those studies were not fundamentally flawed for the reasons Monsanto has already raised.

The arbitrary *exposure* units Dr. Schiff plucks from those epidemiology studies were not being tested or studied for the purposes of *dose*, and are thus irrelevant for the purposes of a specific causation argument—*i.e.*, that one individual's disease can be attributed to a substance.  And even if the studies were relevant here, Dr. Schiff's reliance on them would not render his methodology reliable and admissible, because he does not even assess whether Ms. Glavanovits' exposures to Roundup were at all comparable to the exposures of the participants in those epidemiology studies.  This is problematic because the applicators in those epidemiological studies were—unlike Ms. Glavanovits—professional applicators spraying large amounts of glyphosate over large expanses of farmland.  Epidemiological studies are valuable in an assessment of causation only if a plaintiff shows that he is similarly situated to the participants in those studies.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997) (courts should exclude expert opinions where "there is simply too great an analytical gap between the data and the opinion offered").  Indeed, as the Texas Supreme Court put it:

> To raise a fact issue on causation and thus to survive legal sufficiency review, a claimant must do more than simply introduce into evidence epidemiological studies that show a substantially elevated risk.  A claimant must show that he or she is similar to those in the studies.  This would include proof that the injured person was exposed to the same substance, that the exposure or dose levels were comparable

1
2
3

> to or greater than those in the studies, that the exposure occurred before the onset of injury, and that the timing of the onset of injury was consistent with that experienced by those in the study.

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997); *see also McManaway v. KBR, Inc.*, 852 F.3d 444, 453-55 (5th Cir. 2017) (citing *Havner* with approval and granting summary judgment on causation where plaintiff did not adduce sufficient expert testimony on causation).

Ms. Glavanovits has presented no such evidence. Thus, Dr. Schiff's comparison of her "exposure days" to the flawed data points he cherry picked from a subset of the relevant epidemiology studies do not render his specific opinion reliable, and the Court should exclude it.

**II.    Dr. Schiff Did Not Reliably Rule Out Potential Alternative Causes Because He Employs An Unprecedented Theory That Assumes Any Glyphosate Exposure Should Be Presumed A Substantial Cause Of NHL.**

Dr. Schiff's specific causation opinions should be excluded for the additional reason that he fails to comply with the "ruling out" step of his purported differential etiology. Dr. Schiff conceded at his deposition that Ms. Glavanovits may have had other alternate exposures to substances known to cause NHL, but that detailing and excluding those alternative causes was "not possible" (for some undisclosed reason) *and* "<u>unnecessary</u>." Reply Ex. 1, Schiff (*Glavanovits*) Dep. at 129:9-130:16. Dr. Schiff does not believe that it is necessary to engage in the "ruling out" step of his methodology because he believes in "multifactorial causation" when it comes to glyphosate exposure, meaning that other exposures "do not diminish the known effect of extensive glyphosate or Roundup exposure on increasing the risk of developing [NHL]." Ex. D, Schiff (*Murdock*) Dep. at 147:11-148:2. Put differently, Dr. Schiff brazenly dismisses the very concept of "ruling out" alternative causes—a step that is required in the differential etiology he purports to use. Dr. Schiff's failure to actually apply this step of the analysis renders his specific causation unreliable and inadmissible. *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig. (No. II) MDL 2502*, 892 F.3d 624, 645 (4th Cir. 2018) ("*Daubert* requires more" than an export "dismiss[ing] other

possible causes in favor of [the product at issue] in a cursory fashion."); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999) ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.").

As Monsanto noted in its opening brief, Dr. Schiff's failure to engage with this required step highlights that he failed to rule out the possibility that natural random genetic mutations—which are not the same thing as idiopathic causes (*see* Mot. at 7 n.3)—caused Ms. Glavanovits' cancer. *See id.* at 7-8.

Ms. Glavanovits' main response to this argument is to point out the limited number of alternative causes that Dr. Schiff did passingly refer to in his report (*e.g.*, family history, age, gender, occupation, smoking history, and body mass index). *See* Opp. at 7-9. But this response again misses the point. Dr. Schiff directly conceded at his deposition that there "may have been other [environmental] exposures" for Ms. Glavanovits that could have contributed to her NHL, but that he did not pursue that line of inquiry because any such exposures "would [not] have changed [his] opinion about the role of glyphosate in the causation of [Ms. Glavanovits'] lymphoma." *See* Reply Ex. 1, Schiff (*Glavanovits*) Dep. at 130:10-16. Dr. Schiff's abdication of any responsibility for "ruling out" alternative environmental exposures renders his opinion inadmissible.

Ms. Glavanovits next twists Dr. Schiff's "multifactorial causation of diseases" theory into somehow rendering Dr. Schiff's methodology more "credible." Opp. at 9. It does the opposite. Dr. Schiff's theory, at bottom, is that any alternative environmental exposures to substances known to cause NHL cannot override his opinion that glyphosate is a substantial cause of Ms. Glavanovits' NHL. This opinion is inherently circular—it simply assumes that Ms. Glavanovits' alleged glyphosate exposure is a "substantial cause." But Dr. Schiff's differential etiology—which means both "ruling in" glyphosate and "ruling out" alternative causes—*is supposed to be the methodology from which he draws the conclusion that glyphosate is a substantial cause of Ms. Glavanovits' disease*. In other words, through his "multifactorial causation" theory Dr. Schiff jettisons the "ruling out" requirement of a differential etiology.

What's left is simply his *ipse dixit* that exposure to glyphosate is a substantial cause of Ms. Glavanovits' disease, and such an opinion is not admissible. *Joiner*, 522 U.S. at 144 ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Dr. Schiff's specific causation must therefore be excluded.

## CONCLUSION

Monsanto Company respectfully requests that the Court exclude Dr. Schiff's specific-causation opinions.

Dated: July 6, 2023

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of July 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system, which sent notice of the filing to all appearing parties of record.

*/s/ Jed P. White*
Jed P. White