# REPLY EXHIBIT 1

```
 1              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
 2                    MDL. No. 2741

 3   IN RE:  ROUNDUP PRODUCTS LIABILITY
     LITIGATION
 4   _____

 5   This document relates to:

 6   Michele Glavanovits  v. Monsanto Company
     Case No. 3:20-cv-01016
 7
     _____
 8
            WITNESS:  RON SCHIFF, M.D., Ph.D.
 9   _____

10        The remotely held videotaped

11   deposition of Ron Schiff, M.D., Ph.D. was taken

12   before Janine Leroux, Stenographic Court Reporter

13   and Notary Public on Friday, March 17th, 2023

14   commencing at the approximate hour of 10:06 a.m.

15   Said deposition was taken pursuant to Notice and for

16   all purposes as permitted by Rule 30 of the Federal

17   Rules of Civil Procedure.

18

19

20

21

22

23

24

25
```

```
 1     APPEARANCES:

 2
       KYLE KASMARICK, ESQUIRE
 3     SYREGELAS & KASMARICK, LLC
       19 North Green Street
 4     Chicago, Illinois 60607
       kk@syregelaslaw.com
 5
       APPEARING REMOTELY ON BEHALF OF THE PLAINTIFF
 6

 7     DEVARTI DAS, ESQUIRE
       HOLLINGSWORTH LLP
 8     1350 I Street Northwest
       Washington, DC 20005
 9     ddas@hollingsworthllp.com

10     APPEARING REMOTELY ON BEHALF OF THE DEFENDANT

11
       ALSO APPEARING REMOTELY
12
       JEFF FLEMING, VIDEOGRAPHER
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      A.     Well, in terms of her employment as a
2    realtor and for a window manufacturer where --
3    as -- you know, she was involved in retail sales,
4    not manufacturing, I'm not aware of any other
5    occupational exposures.
6      Q.     Do you know of any other environmental
7    exposures -- let -- let me backtrack.
8             Ms. Glavanovits did not use Roundup in
9    the course of her occupational work, correct?
10     A.     Correct.  Not that I'm aware of.  I've
11   never seen anything about that.
12     Q.     And so Ms. Glavanovits' Roundup
13   exposure was through the course of residential
14   use, is that correct?
15     A.     Also correct.
16     Q.     Do you know of any other environmental
17   exposures the Plaintiff may have had -- may have
18   experienced throughout the course of her life?
19     A.     It is never possible to catalog all of
20   the possible exposure hazards to which an
21   individual has been exposed.  I am not aware of
22   any others, and I have dealt with other candidate
23   risk factors as objectively as I could throughout
24   my rather lengthy differential etiology section.
25            So, you know, I mean, I don't know the

```
1    answer to that.  I don't have documentation of any
2    other occupational or environmental carcinogenic
3    exposures.  But by the same token, for me that
4    would not matter because we know that she has had
5    29 years and over 800 days of exposure to
6    glyphosate and she did develop follicular
7    lymphoma.  That's all that really matters in the
8    causation assessment.
9         Q.    But as you're not making that causation
10   assessment, you're making an exposure
11   assessment -- you're conducting an exposure
12   assessment of Ms. Glavanovits' alternate
13   exposures --
14        A.    Well, that's still a specific --
15        Q.    -- did you take any -- did you take --
16   make any effort to determine what other alternate
17   exposures Ms. Glavanovits may have had?
18        A.    Okay.  The answer to that is this is a
19   specific causation assessment which includes an
20   exposure assessment that was central to my report
21   and to my opinions today.  But the situation about
22   a global evaluation of potentially carcinogenic
23   exposures is not possible and it's unnecessary
24   because we do have the documentation of the
25   glyphosate exposure and we do have the
```

1   documentation of her development of follicular
2   lymphoma.
3           So there may have been other exposures
4   throughout her life, none of which I have seen
5   documentation of, but my -- the language in my
6   report is that -- I concluded that to a reasonable
7   degree of scientific and medical certainty,
8   exposure to Roundup caused or contributed to cause
9   Ms. Glavanovits' non-Hodgkin lymphoma.  So --
10      Q.   Is it poss -- I apologize.  Continue.
11      A.   So there may have been other exposures.
12  There are none that are documented in the
13  materials that I've looked at.  And there would
14  have been none that would have changed my opinion
15  about the role of glyphosate in the causation of
16  her lymphoma.
17      Q.   So is it your opinion that despite
18  possibly being exposed to other carcinogens,
19  Roundup caused her -- her follicular lymphoma?
20      A.   Caused or contributed to cause, yes.
21  It is known to do that.  She had the exposure and
22  plenty of it and she developed a follicular
23  lymphoma.  So there were no other obvious
24  environmental or occupational exposures documented
25  in the records that I have seen.  But even if

1  there were, those would at most have been other
2  candidate causes.  The involvement of glyphosate
3  Roundup is well documented and well established.
4       Q.   Have you determined -- or did you make
5  any effort to determine the other candidate
6  exposures that she may have had?
7       A.   No, because a complete listing is
8  impossible.  And because even a determination of
9  any would not be relevant or affect my opinion.
10 The glyphosate exposure is factual.  It's
11 extensive by quantitative numerical criteria and
12 the outcome of developing follicular lymphoma
13 diagnosed at age 53 is also substantiated.
14      Q.   So there is -- so is your opinion -- is
15 it -- or is it your opinion that there is no
16 amount of exposure to a carcinogen other than
17 Roundup in Ms. Glavanovits' exposure that would
18 possibly change your opinion regarding the
19 evaluation you've conducted here as to Roundup and
20 her follicular lymphoma?
21      A.   That's correct.  The exposure to
22 another lymphoma carcinogen would not have
23 mitigated, negated or neutralized her extensive
24 exposure to Roundup by quantitative criteria, nor
25 its effect on her risk of developing non-Hodgkin

1      STATE OF KENTUCKY     )
                             )
2      COUNTY OF MONTGOMERY  )

3

4              I, JANINE N. LEROUX, Court Reporter, the

5      undersigned Notary Public in and for the State of

6      Kentucky at Large, certify that the facts stated in

7      the caption hereto are true; that at the time and

8      place stated in said caption, the witness named in

9      the caption hereto remotely appeared before me, and

10     that after being by me duly sworn, was examined by

11     counsel for the parties; that said testimony was

12     taken by me in stenotype and later reduced to

13     computer-aided transcription, and the foregoing is a

14     true record of the testimony given by said witness.

15

16              No party to said action nor counsel for

17     said parties requested in writing that said

18     deposition be signed by the testifying witness.

19

20

21

22          JANINE LEROUX - COURT REPORTER
            NOTARY PUBLIC STATE-AT-LARGE
23          MY COMMISSION EXPIRES: NOVEMBER 26, 2023
            NOTARY ID KYNP1406
24

25