| | |
|---|---|
| **WILKINSON STEKLOFF LLP**<br>Brian L. Stekloff (*pro hac vice*)<br>(bstekloff@wilkinsonstekloff.com)<br>Rakesh Kilaru (*pro hac vice*)<br>(rkilaru@wilkinsonstekloff.com)<br>2001 M St. NW<br>10th Floor<br>Washington, DC 20036<br>Tel: 202-847-4030<br>Fax: 202-847-4005<br><br>**HOLLINGSWORTH LLP**<br>Eric G. Lasker (*pro hac vice*)<br>(elasker@hollingsworthllp.com)<br>1350 I St. NW<br>Washington, DC 20005<br>Tel: 202-898-5843<br>Fax: 202-682-1639 | **COVINGTON & BURLING LLP**<br>Michael X. Imbroscio (*pro hac vice*)<br>(mimbroscio@cov.com)<br>One City Center<br>850 10th St. NW<br>Washington, DC 20001<br>Tel: 202-662-6000<br><br>**BRYAN CAVE LEIGHTON PAISNER LLP**<br>K. Lee Marshall (CA Bar No. 277092)<br>(klmarshall@bclplaw.com)<br>Three Embarcadero Center, 7th Floor<br>San Francisco, CA 94111<br>Tel: 415-675-3400<br>Fax: 415-675-3434<br><br>Jed P. White (CA Bar No. 232339)<br>(jed.white@bclplaw.com)<br>120 Broadway, Suite 300<br>Santa Monica, CA 90401<br>Tel: 310-576-2100<br>Fax: 310-576-2200 |

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Delorme-Barton v. Monsanto Company*,<br>3:18-cv-01427-VC | **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF ROBERT CONRY, M.D.**<br><br>Hearing:<br>Date: July 27, 2023<br>Time: 10:00 a.m.<br>Place: San Francisco Courthouse,<br>Courtroom 4 – 17th Floor |

**INTRODUCTION**

Dr. Conry's specific causation opinions should be excluded for the reasons explained in Monsanto's opening brief ("Mot."). Specifically, Dr. Conry fails to reliably "rule in" glyphosate as a potential cause of Plaintiff's NHL, and fails to "rule out" potential alternative causes because he relies on an inadmissible theory of causation that merely assumes that any glyphosate exposure is a substantial cause of a plaintiff's disease. Plaintiff's opposition ("Opp.") largely ignores the core points of Monsanto's brief, or else reaffirms the aspects of Dr. Conry's opinions that render them unreliable. Plaintiff also suggests that this Court has already recognized that Dr. Conry can present his causation theories in this case because the Court previously ruled that *other* experts presenting *different* specific causation opinions could testify at trial. But this Court's prior *Daubert* rulings do not amount to a blank check permitting any purported expert to opine on specific causation regardless of methodology, as Plaintiff asserts. Indeed, the Court has previously deemed aspects of causation opinions inadmissible in the Roundup MDL when they rely on unreliable methodologies. *See, e.g.*, *In re Roundup Prod. Liab. Litig.*, 358 F. Supp. 3d 956, 960-61 (N.D. Cal. 2019). Such is the case here. Dr. Conry employs a differential etiology that is fundamentally unreliable, and his specific causation opinion should be excluded.

**ARGUMENT**

**I.    Dr. Conry Does Not Reliably Rule in Glyphosate as a Possible Cause of Plaintiff's NHL.**

As Monsanto explained in its motion, Dr. Conry does not reliably "rule in" Roundup as a possible cause of Plaintiff's NHL because he undertook absolutely no analysis of Plaintiff's alleged *absorbed dose* of glyphosate, or her actual exposure to glyphosate. Instead, he concluded that because Plaintiff allegedly used Roundup over multiple years, her use was consistent with Dr. Conry's cherry-picked data from unreliable studies. *See* Mot. at 4-7. Because Dr. Conry's analysis not only fails to take into account the amount of glyphosate that might have actually been absorbed into Plaintiff's skin (*i.e.*, dose), but also the amount of glyphosate that contacted her skin while spraying (*i.e.*, exposure), the first step of his differential etiology is unreliable. *See id.*; *Pinares v. Raytheon Techs. Corp.*, No. 19-14831, 2023 WL 2661521, at *4 (11th Cir. Mar. 28, 2023) (district court properly excluded expert who failed to assert a "dose-response relationship" between the substance and cancer).

Despite Plaintiff's attempt to buttress Dr. Conry's opinions by generic references to other epidemiology studies, mechanistic studies, and animal studies as a basis for ruling in Roundup as a cause of Plaintiff's NHL (Opp. at 11), it is clear from Dr. Conry's deposition that he relied on data points from a small subset of epidemiological studies (ignoring dozens of others), primarily McDuffie 2001 and Eriksson 2008. Dr. Conry relies on these select data points to conclude that a person with more than two uses of Roundup per year, or ten uses in a lifetime, is always at an increased risk of developing NHL. He then concludes, based on this assessment, that Plaintiff's claimed uses of Roundup exceed those metrics sufficient for him to conclude that Roundup caused her NHL. Motion **Ex. C**, Conry *Delorme-Barton* Dep. at 155:14-21 ("And then I think level of exposure plays into it. I think, you know, Karen doesn't just meet the definitions of Roundup risk based on the McDuffie and Eriksson papers that just require two uses per year and/or ten uses lifetime. But she used it, I think I calculated roughly, 3,000 times in the span of 35 years.").

Plaintiff's Opposition claims this is sufficient, "where use and exposure conform to the epidemiological literature evincing increased risk." Opp. at 6. Yet, as a proffered expert purporting to testify that Plaintiff's use of Roundup specifically caused her NHL, Dr. Conry is required to do more than simply superficially regurgitate select epidemiological data points and conclude that, because Plaintiff used a lot of Roundup, it caused her NHL. Indeed, the jury hardly needs an expert witness to summarize discovery materials about Plaintiff's claimed uses of Roundup, add up days of use, then look at data points from select epidemiological studies and assess whether Plaintiff's use was higher or lower. Instead, there are gaps between what the epidemiological studies Dr. Conry relies on considered and were designed to do, and a specific causation opinion in this case. Dr. Conry must offer something to bridge those gaps using a reliable methodology, but he fails to do so.

For one thing, the exposure units Dr. Conry plucks from those studies were not being tested or studied for purposes of <u>dose</u> (*i.e.*, the amount of Roundup an individual actually absorbs into their body). Dr. Conry, in fact, has nothing at all to say about an absorbed dose of Roundup that is capable of causing NHL, much less what Plaintiff's absorbed dose in this case was or might have been. And that is because Dr. Conry's ultimate opinion in this case ruling in Roundup is based on days of use, a concept that analyzes only *time spent spraying the product*. But whether measured in days, minutes,

hours, or years, the amount of time a person spends using a product, in the abstract, says nothing about that person's risk. For a chemical like Roundup to cause cancer, it must be absorbed through the skin and enter the bloodstream. This pivotal toxicological concept is known as "dose," and it is the "single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2004); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 770-73 (Tex. 2007) (discussing the importance of dose on causation inquiry and reversing judgment in Plaintiff's favor following a jury trial where plaintiff did not establish sufficient dose to cause alleged injuries). The reason dose matters is simple: "all chemical agents are intrinsically hazardous," and "whether they cause harm is only a question of dose." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 892 F.3d 624, 639 (4th Cir. 2018). Dr. Conry's exposure-days assessment eschews the concept of dose altogether.

Plaintiff's Opposition acknowledges this, dismissing altogether the concept that a quantitative understanding of absorbed dose might be relevant in a toxic exposure case like this. Opp. at 8. Plaintiff, and Dr. Conry, instead purport to focus on exposure as a proxy for dose. But in reality, Dr. Conry is not assessing Plaintiff's actual exposure either. Plaintiff claims that Dr. Conry's report is "replete with specific details about Plaintiff's Roundup usage and exposure, including her lack of protective clothing or other equipment, her dermal exposure with Roundup, the locations she sprayed, and the type of Roundup and quantities she purchased." Opp. at 8. This, however, is a red herring with respect to Dr. Conry's opinion. Because while Dr. Conry discusses the claimed circumstances of Plaintiff's Roundup spraying briefly in his report (Motion **Ex. B**, Conry Rpt. at 12), his days of exposure opinion, by nature, uses time as a proxy for actual exposure (*i.e.*, the amount of Roundup that actually contacted Plaintiff's skin while spraying). And contrary to Plaintiff's assertions, Dr. Conry admitted in this case that the level of actual exposure was an important factor in ruling in Roundup, and suggested that other individuals would address Plaintiff's exposure in this case. *See* Motion **Ex. C**, Conry *Delorme-Barton* Dep. at 155:14-21, 92:22-24 (testifying that "other individuals involved in this case and in cases like this that try to assess Karen's Roundup use.") Accordingly, even Dr. Conry acknowledges that he is not really assessing actual exposure, evidently deferring to another expert who would. But as Monsanto

argued in its Motion, Plaintiff did not disclose any other expert who would provide case-specific opinions. Thus, Plaintiff is without any expert who can provide any assessment of her actual exposure.

And Dr. Conry's superficial recitation of epidemiological data points without any connection to actual exposure, much less dose, is not sufficient. For example, Dr. Conry has made no showing that Plaintiff's actual exposure to Roundup was comparable to the exposure of the participants in the McDuffie or Eriksson studies – or, as Plaintiff puts it in her Opposition, "conform[ing] to the epidemiological literature evincing increased risk." Indeed, Plaintiff has offered no evidence that her spraying habits were similar to those of the primarily professional applicators and farmers in those studies. Epidemiological studies are only valuable in an assessment of causation if a plaintiff shows that she is similarly situated to the participants in those studies. Indeed, as the Texas Supreme Court aptly put it:

> To raise a fact issue on causation and thus to survive legal sufficiency review, a claimant must do more than simply introduce into evidence epidemiological studies that show a substantially elevated risk. A claimant must show that he or she is similar to those in the studies. This would include proof that the injured person was exposed to the same substance, that the exposure or dose levels were comparable to or greater than those in the studies, that the exposure occurred before the onset of injury, and that the timing of the onset of injury was consistent with that experienced by those in the study.

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997); *see also McManaway v. KBR, Inc.*, 852 F.3d 444, 453-55 (5th Cir. 2017) (citing *Havner* with approval and granting summary judgment on causation where plaintiff did not adduce sufficient expert testimony on causation). Plaintiff has presented no such evidence; thus, Dr. Conry's comparisons of Plaintiff's "exposures days" to the epidemiological data points he cherry-picked are inappropriate.

Simply put, there are too many analytical gaps between the human epidemiology studies Dr. Conry references and reliably ruling in Roundup for Plaintiff specifically, as is required for an admissible specific causation opinion. Dr. Conry cannot bridge those gaps, and his opinion should be excluded.

II.   **Dr. Conry Fails to Reliably Rule Out Alternative Causes of Plaintiff's NHL.**

Plaintiff's Opposition fundamentally misstates the differential diagnosis methodology and the circumstances under which such methodology is admissible. According to Plaintiff, even the barest acknowledgment of a potential cause is sufficient to immunize an expert's opinion from judicial

scrutiny. *Id*. That is not the law—nor is it good science. The question is not whether the expert merely "considered" other risk factors; it is whether they considered ***and reliably ruled out*** other potential causes as a reliable differential diagnosis requires. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057-58 (9th Cir. 2003) (holding that an expert conducting a differential diagnosis "must provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation") (internal quotations omitted). Dr. Conry has not done so and, in fact, essentially disclaimed the need to do so because in his view, "you rule out some and you acknowledge that some others may exist," then you do your best to "draw, you know, what conclusions you can about which one predominates . . . ." Motion **Ex. C**, Conry *Delorme-Barton* Dep. at 146:19-23.

This is best exemplified by Dr. Conry's discussion of naturally occurring genetic mutations, which are not the same thing as idiopathic causes (Opp. at 14-15). As Plaintiff's Opposition acknowledges, Dr. Conry has confirmed that naturally occurring genetic mutations are often a contributing factor in the development of NHL. *See* Motion **Ex. D**, Conry *Jacobs* Dep. at 53:10-21 (testifying that "random DNA replication errors" are "something that just happens in the natural course of being human, which is correct. That as our DNA replicates over and over during our lifetimes, there can be and generally are replication errors that occur that can make a contribution to our future development of cancer."). And in this case, Dr. Conry admitted that it has been published in the scientific community that these genetic mutations can result in cancers even in the absence of exposure to environmental risk factors like Roundup exposure, and that this premise seemed "plausible." Motion **Ex. C**, Conry *Delorme-Barton* Dep. at 149:10-15. Yet Dr. Conry testified that this independently sufficient force was merely a factor encompassed by his discussion of Plaintiff's age, and he made no serious attempt to rule it out as a cause of Plaintiff's NHL.

Plaintiff's casual treatment of Dr. Conry's failure to address alternative causes meaningfully betrays her mistaken position, which Dr. Conry also adopts, that alternative causes simply do not matter. Contrary to Plaintiff's argument, Monsanto's position is not that Plaintiff's expert must conclude that Roundup was the *sole* cause of Plaintiff's NHL. Rather, Rule 702 and *Daubert* require experts purporting to conduct a differential diagnosis to systematically and scientifically consider and

weigh each potential risk factor when determining the cause of an individual's disease, even if there is more than one cause. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003) ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.") (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999)); *see also In re Roundup Prod. Liab. Litig.*, 358 F. Supp. 3d at 959 ("The next question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL, and properly ruled out factors other than glyphosate, while at the same time declining to rule out glyphosate itself.").

In short, it is clear that Dr. Conry's opinion, for any plaintiff who claims Roundup use, is that Roundup was the substantial cause of their NHL regardless of any other alternative causes, exposures, or risk factors because for Dr. Conry, NHL is a "multi hit process" and therefore ruling out these other potential causes or contributors is not possible or even necessary. Motion **Ex. C**, Conry *Delorme-Barton* Dep. at 146:19-147:9. That is not a proper differential etiology, but instead is an inadmissible "always-Roundup" opinion that is the very definition of *ipse dixit*. *See, e.g., In re Lipitor (Atorvastatin Calcium) Mktg. Sales Practices & Prod. Liab. Litig. (No. II) MDL 2502*, 892 F.3d 624, 645 (4th Cir. 2018) (excluding expert testimony where the expert "dismiss[ed] other possible causes . . . in a cursory fashion that appeared closer to an *ipse dixit* than a reasoned scientific analysis . . . [and] focused almost exclusively on the fact that [plaintiff] took the drug and later developed the disease, rather than explaining what led him to believe that it was a substantial contributing factor as compared to other possible causes.").

## CONCLUSION

For all these reasons, the Court should grant Monsanto's motion to exclude the opinion testimony of Plaintiff's expert witness Dr. Conry.

Dated: July 7, 2023

Respectfully submitted,

/s/ *Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of July, 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Jed P. White
Jed P. White