**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax:  202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax:  202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax:  415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax:  310-576-2200

*Attorneys for Defendant Monsanto Company*

# IN THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, <br><br> *Karen Delorme-Barton v. Monsanto Company*, 3:18-cv-01427-VC | MDL No. 2741 <br><br> Case No.: 3:16-md-02741-VC <br><br> **DEFENDANT MONSANTO COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. WILLIS NAVARRO'S TESTIMONY** <br><br> Hearing: <br> Date: July 27, 2023 <br> Time: 10:00 a.m. <br> Place: San Francisco Courthouse, Courtroom 4 – 17th Floor |

# TABLE OF CONTENTS

Introduction .................................................................................................................................... 1

Background .................................................................................................................................... 2

Legal Standard ............................................................................................................................... 5

Argument ....................................................................................................................................... 5

I.    Dr. Navarro's Specific Causation Opinions Are Consistent With The Proposition Dr. Tomasetti Advances In The 2017 Article Dr. Navarro Cites For Support .................... 5

II.   Plaintiff's Criticisms of Dr. Tomasetti's Methods Are Not A Valid Basis For The Court To Exclude The Opinions Of Dr. Navarro ................................................................ 8

III.  Dr. Navarro Is Fully Qualified To Provide Specific Causation Testimony And Opine That Glyphosate Exposure Is Not The Cause Of Plaintiff's NHL ........................... 9

IV.  Dr. Navarro Is Qualified, And Uses Generally Accepted And Reliable Methods, To Opine On Risk Factors Relevant To Plaintiff's NHL/FL Condition ........................... 10

Conclusion ................................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Avila v. Willits Env't Remediation Tr.*,
　633 F.3d 828 (9th Cir. 2011) ................................................................................................... 2

*Daubert v. Merrell Dow Pharms., Inc.*,
　43 F.3d 1311 (9th Cir. 1995) ................................................................................................... 5

*Daubert v. Merrell Dow Pharms., Inc.*,
　509 U.S. 579 (1993) ............................................................................................................ 1, 4

*Hardeman v. Monsanto Co.*,
　997 F.3d 941 (9th Cir. 2021) ................................................................................................... 5

*United States SEC v. Vali Mgmt. Partners*,
　No. 21-453, 2022 WL 2155094 (2d Cir. June 15, 2022) ..................................................... 7, 8

*Viera v. City of El Monte*,
　No. CV 04-06082 MMM, 2006 WL 6626761 (C.D. Cal. May 2, 2006), *aff'd in
　relevant part*, 267 F. App'x 568 (9th Cir. 2008) ...................................................................... 6

**Rules**

Rule 702 .................................................................................................................................... 1, 5

**INTRODUCTION**

The Court should deny Plaintiff's motion to exclude the expert opinions of Dr. Willis Navarro. Defendant disclosed Dr. Navarro as an expert on general and specific causation: that is, (1) whether glyphosate causes cancer, namely the form of non-Hodgkins lymphoma ("NHL") known as follicular lymphoma ("FL") in humans generally (it does not) and (2) whether exposure to glyphosate through Roundup use is the specific cause or a substantial contributing cause of the FL condition that Plaintiff Karen Delorme-Barton was diagnosed with and successfully treated for (it is not). For the most part, Plaintiff's motion consists of a series of misdirected attacks on the methodologies and conclusions of a ***different*** expert, Dr. Christian Tomasetti, not anything specific to Dr. Navarro's methods or opinions. Dr. Navarro cites two of Dr. Tomasetti's articles on relevant issues for certain points, among the voluminous other authoritative studies, articles, regulatory findings, and other sources Dr. Navarro cites and discusses that further support his conclusions. Plaintiff's critiques of Dr. Tomasetti lack merit, but even if they did not, attacks on a single source among the numerous others Dr. Navarro cites to support his opinions is at most fodder for cross exam, not reason to exclude Dr. Navarro's testimony under Rule 702 or *Daubert*. Of the remaining arguments in Plaintiff's motion which actually address the methods and conclusions of Dr. Navarro himself, each is readily revealed to rest on a misstatement of the facts or plain logical fallacy.

First, Plaintiff argues that some inconsistency exists between Dr. Navarro's opinions and those of Dr. Tomasetti's as to whether cancer is caused exclusively by random mutations or, instead, exclusively by environmental influences. In reality, both experts opine (consistently with one another) that both factors contribute to human cancer; they also both agree that aging and the accumulation of naturally occurring (as opposed to environmentally induced) DNA replication errors is the main driver of NHL. Most importantly, they both agree that no credible evidence exists in the scientific literature suggesting that glyphosate exposure is a factor in causing NHL.

Second, as noted, Plaintiff levels criticisms against the methodologies of Dr. Tomasetti and the merits of his conclusions, which Plaintiff dubs his "bad luck" theory of cancer causation. Defendant responds to these attacks in relation to Plaintiffs' *Daubert* motion against Dr. Tomasetti.

Third, Plaintiff impugns Dr. Navarro's qualifications based on the proportion of his time (about 10%, half of which devoted to NHL patients specifically) he spends treating cancer patients in his clinical practice as opposed to his other hematological and oncological professional work. But Plaintiff fails to show that the amount of clinical practice Dr. Navarro does is insufficient to give him expertise in diagnosing NHL/FL and ruling out alleged causes, particular an alleged cause like the non-carcinogenic substance glyphosate. Plaintiff also overlooks that Dr. Navarro's other professional work, in oncological drug development and biotechnology, further add to his relevant expertise and qualifications to opine on general and specific causation here.

Finally, Plaintiff asserts several purported reasons why Dr. Navarro should be precluded from "discussing risk factors" relevant to Plaintiff's diagnosis of NHL. This is an impermissible effort to arbitrarily block Dr. Navarro from stating his well-supported, medical opinion that the mostly likely cause of Plaintiff's NHL/FL is her age—as natural aging processes and the accumulation of DNA replication errors over time is the most common cause of this form of cancer. None of the specific faults Plaintiff claims to find in Dr. Navarro's basis for that opinion has merit.

## BACKGROUND

Willis Navarro, M.D., is a board-certified hematologist and licensed medical oncologist. Ex. C at 1.[1] He received his medical degree from the University of California at San Francisco (UCSF) in 1990 and has both taught medicine and maintained a clinical practice since the early 1990s through the present. *Id.* In addition, since 2005, when he joined Genentech as an Assistant Medical Director in BioOncology, he has held positions in several private biotechnology firms, while maintaining his academic affiliations and active clinical practices as well as this role in drug development. *Id.* at 2. In this case, Monsanto retained and disclosed Dr. Navarro as a testifying expert on general and specific causation issues regarding glyphosate and Plaintiff's claimed NHL.[2]

---

[1] As used herein, "Ex. __," with numbered exhibits, refers to the exhibits appended to the Declaration of Jed P. White in Support of Defendants' Opposition to Motion to Dismiss, dated July 14, 2023, filed herewith. "Ex. __" with lettered exhibits refers to the exhibits to Plaintiff's opening.

[2] As Plaintiff notes in her opening memorandum (Mot. 3), general causation examines whether "the substance at issue was capable of causing the injury alleged," whereas specific causation examines whether "the substance caused, or was a substantial factor in causing, the specific plaintiff's injury." *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 836 (9th Cir. 2011).

2

With respect to general causation (whether glyphosate causes NHL in humans generally), Dr. Navarro surveyed the U.S. EPA's series of regulatory reviews of the potential carcinogenicity of glyphosate at various times from its first use in a pesticide in 1974 through the agency's 2017's finding that the "strongest support" among scientific literature showed that glyphosate was "not likely to be carcinogenic to humans." *Id.* at 7-8. Dr. Navarro also reviewed in detail the EPA's 2019 and 2020 Interim Registration Review Decision findings, based on solicitations of all available scientific viewpoints and convening a scientific advisory panel subject to public review and comment, that glyphosate is not a human carcinogen. *Id.* at 8. Noting that the agency's "stepwise, transparent process led to a scientifically valid decision about the lack of carcinogenicity of glyphosate" in multiple re-evaluations since the pesticide's original registration, Dr. Navarro concludes that he "concur[s] with the conclusions arrived at by the US EPA regarding the safety of glyphosate and hold the opinion to a reasonable degree of medical and scientific certainty that glyphosate is not a human carcinogen." *Id.* at 9. Dr. Navarro also provides an overview of the numerous other regulatory agencies worldwide that have reached the same conclusion, and the determination of such public health watchdogs that the isolated, anomalous position of the International Agency for Research on Cancer ("IARC") that glyphosate is a "probable carcinogen" is "incongruous with the totality of the available data and otherwise global consensus." *Id.* at 11.

With respect to specific causation (whether glyphosate caused Plaintiff's own case of NHL/FL), Dr. Navarro reviewed and analyzed Ms. Delorme-Barton's medical history, including cancer history, as relevant to her claimed injury of NHL. *Id.* at 15-16. He explained that, in 2016, Plaintiff "had a left axillary lymph node biopsy that diagnosed Grade 1 follicular lymphoma (FL), a low grade lymphoma." *Id.* at 16. He described her subsequent cancer treatment addressing that FL, which resulted in a "complete response," such that "Plaintiff has been observed since that time and has remained well with no clinical evidence of recurrence as of January 2023." *Id.* Dr. Navarro opines that "Plaintiff's presentation, evaluation, treatment, and response to treatment were all typical for FL," which "is the second most common type of NHL and occurs more frequently in older adults." *Id.* at 16. Given that "the scientific data, both from the prospective AHS study and from numerous case-control studies, does not find any association between NHL generally or FL

3

specifically and glyphosate exposure," Dr. Navarro opines that he "do[es] not consider any glyphosate exposure to have been a FL risk factor for Ms. Delorme-Barton." *Id.* He explained, "[i]n clinical practice, the vast majority of NHL/FL cases have no identifiable cause other than advancing age, which correlates with the accumulation of random DNA replication errors over time. Such is the case for Ms. Delorme-Barton." *Id.* at 17. He added that Plaintiff's "long-term prognosis is … favorable…." *Id.*

Concluding his report with an overview of his analysis of both general and specific causation, Dr. Navarro summarized his proffered expert opinions in this case as follows.

> [B]ased on my education, training, clinical experience, scientific research experience, and review and evaluation of the published medical and scientific literature, it is my opinion to a reasonable degree of medical and scientific certainty that glyphosate is not a human carcinogen and does not increase the risk of or cause or substantially contribute to causing NHL, including FL. Accordingly, with regard to Ms. Delorme-Barton's exposure to glyphosate, it my opinion to a reasonable degree of medical and scientific certainty that such exposure did not increase her risk of FL and did not cause or substantially contribute to causing her FL. Further, it is my opinion that Ms. Delorme-Barton's FL was most likely caused by the accumulation of random and unrepaired genetic events overtime….

*Id.* In reaching these conclusions, and in addition to the dozens of other scientific articles, findings of federal and other public health agencies, medical background and clinical experience, and other sources Dr. Navarro draws on in forming these conclusions, he also cites, once, to a single article of Defendant's expert Dr. Christian Tomasetti, for a single proposition:

> Environmental factors may be particularly relevant for lung cancer (mostly cigarette smoking, but also air pollution and other exposures). But most other cancers are likely driven primarily by replication cycles and consequent accumulation of DNA replication errors (Tomasetti 2017).

*Id.* at 6. Dr. Navarro nowhere opines that environmental factors ***never*** can be a contributing cause of human cancer, nor does Dr. Navarro characterize Dr. Tomasetti's views as supporting a rule that human cancer (NHL, FL, or any other form) is exclusively caused by random genetic errors.

On June 30, 2023, Plaintiffs moved to exclude Dr. Navarro's specific and general causation opinions, challenging his qualifications and methodologies under *Daubert* principles.

4

## LEGAL STANDARD

"Under Federal Rule of Evidence 702, expert testimony must be reliable to be admissible." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 580 (1993)). "Scientific evidence is reliable when 'the principles and methodology used by an expert are grounded in the methods of science.'" *Id.* (quoting *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003)). When determining reliability, district court judges can consider the following non-exclusive factors: (1) "whether the theory or technique employed by the expert is generally accepted in the scientific community;" (2) "whether it's been subjected to peer review and publication;" (3) "whether it can be and has been tested;" and (4) "whether the known or potential rate of error is acceptable." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (citing *Daubert*, 509 U.S. at 593-95). "This inquiry is flexible and should be applied with a liberal thrust favoring admission." *Hardeman*, 997 F.3d at 960 (internal citations, quotation marks, and alterations omitted).

## ARGUMENT

Plaintiff's motion seeks to depict Dr. Navarro's proffered opinions as inconsistent with those of Dr. Tomasetti, or as unreliable insofar as they draw on scholarship by Dr. Tomasetti that Plaintiff contends is not itself scientifically sound. Plaintiff also attacks Dr. Navarro's qualifications and methods for identifying NHL risk factors. None of these arguments has merit.

**I.  Dr. Navarro's Specific Causation Opinions Are Consistent With The Proposition Dr. Tomasetti Advances In The 2017 Article Dr. Navarro Cites For Support**

Plaintiff challenges (Mot. 3-10) Dr. Navarro's specific-causation opinions—that "Ms. Delorme-Barton's FL (follicular lymphoma) was most likely caused by the accumulation of random and unrepaired genetic events over time" and to the extent she has experience glyphosate exposure in her life, "such exposure did not increase her risk of FL and did not cause or substantially contribute to causing her FL," Ex. C, at 17—on the ground that they "conflict with Dr. Tomasetti's 'bad luck' 'random genetic errors' theory as the cause of NHL." Mot. 4. Not so.

But before reaching this alleged inconsistency (there is none), the Court should dismiss Plaintiff's argument at the outset because it is not an argument capable of supporting exclusion.

5

1    Such alleged "conflicting testimony amounts to a disagreement between experts," and where a party
2    attacks an expert's conclusions on the basis that another expert advances different opinions, those
3    "challenges go to the weight the jury should give [an expert's] opinions rather than to their
4    admissibility." *Viera v. City of El Monte*, No. CV 04-06082 MMM, 2006 WL 6626761, at *10
5    (C.D. Cal. May 2, 2006), *aff'd in relevant part*, 267 F. App'x 568 (9th Cir. 2008).  If, as Plaintiff
6    argues, Dr. Navarro and Dr. Tomasetti disagree about whether random replication errors or
7    environmental exposures are the predominant source of NHL or FL, Plaintiff may draw out that
8    purported inconsistency between their views on cross examination.  Nothing about that supposed
9    conflict, however, detracts from the general acceptance or reliability of Dr. Navarro's opinion that,
10   both generally and in Plaintiff's case, glyphosate does not cause NHL/FL by either mechanism.

11         Reaching the alleged inconsistency itself, as a factual matter, there is no conflict between
12   the views of Dr. Navarro and those of Dr. Tomasetti.  Plaintiff's brief states that "Dr. Navarro
13   believes there can be no true 'random' replication error because we are all exposed to 'ubiquitous'
14   environment exposures, which he believes are factors in the development of cancer," and that this
15   belief "conflict[s] with Dr. Tomasetti's theory that it is 'random' spontaneous genetic errors (not
16   caused by the environment) that cause the vast majority of cancer." Mot. 5.  That, however, is not
17   a belief that Dr. Navarro states in his report or testified to in his deposition; nor does Dr. Navarro
18   ever assign to Dr. Tomasetti the view that "random spontaneous genetic errors," and not
19   environmental factors, are the exclusive cause of most cancers.  As Plaintiff observes (quoting
20   deposition testimony), Dr. Navarro's expert opinion includes the fact that "FL is the second most
21   common type of NHL and occurs more frequently in older adults," and that Plaintiff herself was
22   diagnosed with the condition at age 63, "near the peak incidence of FL," meaning that her age "was
23   her most significant risk factor for FL." Ex. C at 16.  He explains that "the vast majority of NHL/FL
24   cases have no identifiable cause other than advancing age." *Id.* at 17.  The reason Plaintiff's age—
25   not exposure to glyphosate, which as Dr. Navarro explains, has repeatedly been found by nearly
26   every competent authority in the world ***not*** to be a human carcinogen—is her largest risk factor that
27   age "correlates with the accumulation of random DNA replication errors over time." *Id.*  This all
28   is entirely consistent with the principle for which Dr. Navarro cites Dr. Tomasetti's 2017 article as

6

support: that the development of "other cancers"—that is, those other than lung cancer, include NHL/FL—"are likely driven primarily by replication cycles and consequent accumulation of DNA replication errors." *Id.* at 6. There is thus no contradiction between these two experts' views.

In attempting to depict these fully consistent views as somehow contradictory, Plaintiff also impugns Dr. Navarro's reliance on his own clinical experience in assessing the likely cause of Plaintiff's NHL/FL, but the critique is similarly without merit. Plaintiff faults Dr. Navarro's conclusion that glyphosate was not a cause of Plaintiff's NHL/FL on the ground that he "does not … rule out environmental risk factors for the older patients he has treated" such as by "ask[ing] his older patients whether they had exposure to glyphosate…." Plaintiff has no evidentiary or other basis for the speculative assertion that Dr. Navarro "does not … ask" older patients about environmental exposures—Dr. Navarro never said anything of the sort in his report or deposition. Of course, it would be unsurprising, and of no consequence, if Dr. Navarro does not generally ask NHL patients about glyphosate, because his well-supported opinion, with which virtually all authorities concur, "that there is no evidence that glyphosate causes cancer of any type." *Id.* at 10. That suffices to "rule out" glyphosate as a potential cause of Plaintiff's own NHL, regardless what questions Dr. Navarro asks his clinical patients about their environmental exposures generally.

Plaintiff devotes a substantial portion of her motion to assailing the methodologies of Dr. Tomasetti, not Dr. Navarro. *See, e.g.*, Mot. 6 ("The court should preclude any expert testimony relying on the 'random' 'bad luck' theory as the methodology used in his study itself is unreliable, incapable of being tested, and premised on insufficient and unreliable data."); *see also id.* ("[T]he theory underlying Dr. Tomasetti's causation methodology—that over 95% of mutations in NHL are random—is controversial and has been heavily criticized."). These are arguments for the exclusion of Dr. Tomasetti's proffered opinions, not those of Dr. Navarro. *See Vali Mgmt. Partners*, 2022 WL 2155094, at *2. They are addressed and revealed as meritless in the opposition to Plaintiff's motion to exclude Dr. Tomasetti's proffered expert opinions in this case. Those

arguments, in any event, do not establish any inconsistency between Dr. Navarro and Dr. Tomasetti's positions as to the roles of random mutation and environmental factors in cancer.[3]

In sum, even if there were some inconsistency or arguably false premise for Dr. Navarro's opinions, neither would not support the relief of exclusion that Plaintiff seeks in this motion. That is because "[c]ontentions that an expert's assumptions are unfounded" or that "gaps or inconsistencies [exists] in the reasoning leading to the expert's opinion go to the weight of the evidence, not to its admissibility." *United States SEC v. Vali Mgmt. Partners*, No. 21-453, 2022 WL 2155094, at *2 (2d Cir. June 15, 2022). Plaintiff may pursue the first set of arguments in her motion as the subject matter of cross examination, but not as a basis for exclusion.

## II. Plaintiff's Criticisms of Dr. Tomasetti's Methods Are Not A Valid Basis For The Court To Exclude The Opinions Of Dr. Navarro

Plaintiff next argues (Mot. 10-12) that Dr. Navarro's conclusion that glyphosate did not cause Plaintiff's NHL is flawed insofar as it relies on Dr. Tomasetti, because the latter's views are "only applicable to population groups, not individuals," and he is "not aware of any scientific way to attribute a specific mutation to a specific cause." Mot. 10. This argument is an utter red herring, and fails as a critique of Dr. Navarro's specific causation opinions, because it is not Dr. Navarro's expert assignment, nor Defendant's burden in this litigation, to "attribute[] a specific mutation to a specific cause." Defendant's position, to which Dr. Navarro lends his expert support, is that Plaintiff cannot meet her burden to show glyphosate is the cause of her NHL—regardless of what is the specific cause of any specific mutation in her system—because as a matter of scientific consensus and his own clinical experience, Dr. Navarro knows that glyphosate is not a carcinogen.

---

[3] Nor is there any merit to Plaintiffs suggesting (Mot. 6-7) that Dr. Tomasetti's articles or theories are insufficiently reliable to yield support for Dr. Navarro's own medical opinions. Those articles have been published in the world's leading peer-reviewed medical and scientific journal and co-authored by top scientists in the field. *See id.*; *see also* Ex. 1 M. Song, B. Vogelstein, E. L. Giovannucci, W. C. Willet, and C. Tomasetti, *Cancer prevention: Molecular and epidemiologic consensus*, 361 SCIENCE 6409, Sep. 28, 2018 (explaining that the "consensus" view among experts in cancer causation is that random mutations play a major role). The esteemed journals that establish Dr. Tomasetti's views as generally accepted include *Science*, *Nature*, the *New England Journal of Medicine*, and the *Proceedings of the National Academy of Sciences*.


Case 3:16-md-02741-VC   Document 16993   Filed 07/14/23   Page 12 of 14

### III. Dr. Navarro Is Fully Qualified To Provide Specific Causation Testimony And Opine That Glyphosate Exposure Is Not The Cause Of Plaintiff's NHL

Plaintiff next suggests (Mot. 13-14) Dr. Navarro's clinical practice does not include a large enough number of patients to qualify him to opine that glyphosate was not the cause of Plaintiff's FL/NL. Plaintiffs emphasize that of Dr. Navarro's professional work, "only 10% of his time has been spent in clinical practice," and "25 to 50 percent of that 10 percent" on patients with NHL. Mot. 4. Plaintiff does not, however, quantify the number of patents that percentage represents, nor show why the volume of NHL patients Dr. Navarro has treated—whether counted as an absolute value or a percentage of his working hours—is inadequate for him to hold an informed view on the issues of general or specific causation raised by Plaintiff's claim that glyphosate caused her NHL. Nor does Plaintiff provide any justification for discounting all of Dr. Navarro's *other* professional experience—in drug development, biotechnology, academic teaching and research, or otherwise—in the field of oncology, all of which supports his credentials for opining on causation issues here.

Equally unsupported and inconsequential is Plaintiff's critique that Dr. Navarro "is not a geneticist, does not work in any genetics department at any hospital and/or university, and has never issued any reports on genetic sequencing." Mot. 13. First off, Plaintiff does not cite any scientific, medical, legal, or other authority for the assumption underlying this critique, that active participation in genetic sequencing is somehow a prerequisite for performing a medical diagnostic analysis to evaluating the likely cause of Plaintiff's NHL/FL. Plaintiff does not, and cannot fairly, impugn Dr. Navarro's credentials as an oncologist and practicing medical clinician capable of evaluating patient's cancer conditions, including NHL and FL. Secondly, Plaintiff's critique overlooks that Dr. Navarro has professional experience with, and is knowledgeable, about genetic issues. At deposition, Dr. Navarro specifically confirmed his familiarity with genetic sequencing both in his drug development work and in his clinical practice's methods for diagnosing illness:

> Q. … In what ways, in what ways do you work with genetic sequencing?
>
> A. So in my current role at Aadi, one of the components of our clinical trial is to find patients who have particular mutations that are determined by next generation sequencing, and then in my clinical practice, I see patients with hematologic malignancies and order next generation sequencing and other similar kinds of

9

genetic tests like Fluorescence in situ hybridization or -- I think that's the majority of it -- and in, in terms of trying to understand the aspects of their disease.

Ex. 2 (Navarro Depo. Tr.) 45:11-21. Plaintiff does not come close to refuting what this deposition exchange makes plain: that Dr. Navarro's familiarity with genetics matches the needs of his professional and clinical work and fully supports his qualifications to give NHL diagnostic views.

### IV. Dr. Navarro Is Qualified, And Uses Generally Accepted And Reliable Methods, To Opine On Risk Factors Relevant To Plaintiff's NHL/FL Condition

Plaintiffs' final challenge to Dr. Navarro's opinions (Mot. 14), which seeks preclusion of his discussion of Plaintiff's NHL risk factors, relies on a series of misstatements of fact or logic.

First, Plaintiff states that Dr. Navarro's "opinion related to age and cancer is not specific to NHL and or [FL], but to cancer 'generally.'" Mot. 14. Not true: Dr. Navarro connects age as a risk factor for FL specifically. *See* Ex. C at 17 ("The reason that age is so important as a risk factor for FL relates to the fact that with increasing age, there is a progressive opportunity for a higher number of DNA repair errors that are not appropriately corrected and accumulate over time….").

Second, Plaintiff argues that because Dr. Navarro "doesn't ask his older patients whether they had exposure to glyphosate …., he has not ruled out every possible environmental factor for the older patients he has treated." Mot. 14. Dr. Navarro ***does rule out*** glyphosate as a risk factor for NHL and FL—for his own patients, for Plaintiff, and for anyone else—because he opines "to a reasonable degree of medical and scientific certainty that glyphosate is not a human carcinogen…." Ex. C at 17. Whether Dr. Navarro rules out other environmental exposures as risk factors in his clinical practice is of no moment here, where the only environmental exposure that Plaintiff claims should give rise to liability for her contracting NHL/FL is glyphosate exposure.

There is accordingly no basis in Plaintiff's arguments for this Court to preclude Dr. Navarro from testifying to his assessment of Plaintiff's relevant risk factors.

### CONCLUSION

In light of the reasons set forth above, Defendants respectfully request that the Court deny Plaintiffs' motion to exclude the expert opinions of Dr. Navarro.

Dated: July 14, 2023                         Respectfully submitted,

                                             /s/ *Jed P. White*
                                             Attorneys for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of July, 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                             /s/ *Jed. P. White*
                                             Attorneys for Defendant Monsanto Company