**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Karen Delorme-Barton v. Monsanto Co.*,<br>Case No. 3:18-cv-01427-VC | **DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF WILLIAM JOHNSON, PH.D.**<br><br>Hearing:<br>Date:  July 27, 2023<br>Time:  10:00 a.m.<br>Place: San Francisco Courthouse,<br>        Courtroom 4 – 17th Floor |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on July 27, 2023 at 10:00 a.m., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Opposition to Plaintiff's Motion to Exclude Testimony of Dr. William Johnson.

Dated:  July 14, 2023                    Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

# **TABLE OF CONTENTS**

Page

I. Introduction ................................................................................................................. 1

II. Dr. Johnson's Background and Opinions ................................................................... 3

III. Legal Standard ............................................................................................................ 4

IV. Argument .................................................................................................................... 4

    A. Dr. Johnson Will Not Opine on Plaintiff's Credibility. ................................... 4

    B. Dr. Johnson is Qualified to Offer Expert Testimony in this Case. .................. 6

    C. Dr. Johnson's Opinions Are the Product of Reliable Principles and Methods. ...... 8

    D. Dr. Johnson's Testimony is Relevant, Proper, and Will Aid the Jury. ................ 10

V. Conclusion ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ................................................................................................ 1, 4, 9

*Elosu v. Middlefork Ranch Inc.*,
  26 F.4th 1017 (9th Cir. 2022) ............................................................................................ 8

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................................ 7

*Lindsey v. Navistar Intern. Transp. Corp.*,
  150 F.3d 1307 (11th Cir. 1998) ....................................................................................... 12

*Moses v. Payne*,
  555 F.3d 742 (9th Cir. 2009) ............................................................................................ 10

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) .............................................................................................. 8

*Reed v. Lieurance*,
  863 F.3d 1196 (9th Cir. 2017) ............................................................................................ 6

*United States v. 14.38 Acres of Land Situated in Leflore Cty., Mississippi*,
  80 F.3d 1074 (5th Cir. 1996) .............................................................................................. 4

**Rules**

Fed R. Evid. 702 ............................................................................................... 2, 4, 7, 10

## I. INTRODUCTION

Monsanto has designated Dr. William Johnson, an accomplished weed scientist, to opine on, among other things, (1) the impact and control of weeds and invasive plants and the use of herbicides, including glyphosate-based herbicides, in agricultural, urban, industrial, and residential settings, and (2) the extent of Ms. Delorme-Barton's alleged exposure to Roundup. **Ex. 1**, Monsanto's Specific Causation Expert Disclosure, at 4; **Ex. 2**, Dr. Johnson's Expert Report.[1] Dr. Johnson's expertise and experience include extensive knowledge regarding application techniques for herbicides, including glyphosate-based products, herbicide spray equipment, the ecology of weed growth, and herbicides' physical and chemical properties. Nonetheless, Plaintiff's Motion to Exclude Dr. Johnson ("Mot.") takes the remarkable position that Dr. Johnson is not qualified and will not offer helpful expert testimony in a trial that will center on her use of Roundup, a glyphosate-based herbicide. Plaintiff's Motion is little more than an intentional mischaracterization of Dr. Johnson's background and opinions to manufacture a *Daubert* challenge. It should be denied.

*First*, Plaintiff intentionally mischaracterizes Dr. Johnson's proposed testimony to allege that he will invade the province of the jury by challenging the credibility and truthfulness of Plaintiff's testimony regarding her Roundup use. That is simply incorrect. In reality, Plaintiff's Motion seeks to prevent the jury from learning, through Dr. Johnson's testimony, that Plaintiff's claims about how often and how much she applied Roundup, and the manner of her application, are inconsistent with logical and necessary weed management practices.

*Second*, Plaintiff asserts that Dr. Johnson is not qualified to offer opinions in two general areas: (1) Ms. Delorme-Barton's exposure to glyphosate; and (2) the history and benefits of herbicides, like Roundup. Mot. at 6-8, 13. But Plaintiff mischaracterizes the nature of Dr. Johnson's opinions. Dr. Johnson is not offering causation opinions on the alleged carcinogenicity of Roundup. Rather, he will offer opinions on the duration and frequency of Plaintiff's alleged use and application of Roundup and her purported contact with Roundup

---

[1] All exhibits are attached to the concurrently filed Declaration of Jed White.

- 1 -

OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. WILLIAM JOHNSON

during these applications—opinions he unquestionably is qualified to offer given his extensive expertise in weed science and herbicide application. Plaintiff erroneously discounts Dr. Johnson's education, training, and experience as a weed scientist. Through this specialized training and experience, Dr. Johnson is well qualified to offer expert testimony on all the areas included in his expert report.

**Third**, Plaintiff argues that Dr. Johonson's opinions are otherwise unreliable because they lack foundation. This argument entirely ignores that Dr. Johnson's opinions are grounded in extensive, case-specific preparation and careful, scientific-based analysis derived from his years of experience with weed science. Plaintiff's position—that Dr. Johnson needed to accept her alleged exposure without question and personally visit the properties Ms. Delorme-Barton sprayed Roundup—is mistaken and ignores the robust review Dr. Johnson performed to form his opinions, which is more than sufficient to render his opinions admissible under Rule 702.

**Fourth**, Plaintiff contends that Dr. Johnson—who holds a Ph.D. in Agronomy and has extensive expertise concerning the use of glyphosate-based herbicides—will not offer opinions that will be helpful to the jury, despite the fact that this trial will center on Ms. Delorme-Barton's use of Roundup, a glyphosate-based herbicide. Mot. at 10-14. Weed science involves many technical and scientific considerations, such as the types of herbicides available and commonly used in settings like those where Ms. Delorme-Barton sprayed Roundup, how herbicides work, the amount of time it takes to treat various types of properties with herbicides, rates of weed growth and other aspects of weed biology, standard practices for the use of Roundup with other weed control techniques, availability and mechanics of various application methods or equipment, how Roundup affects seasonal weed growth in the relevant geographic area, and the principle of "drift" and how that principle applies to herbicide applications, to name a few. Plaintiff's contention also disregards that the benefits of herbicides are squarely at issue in this case. Dr. Johnson's testimony on the history and benefits of herbicides, like Roundup, is relevant to many of the material issues in this case, including the jury's assessment of Plaintiff's design-defect claims, negligence claims, and contention that Monsanto employees acted with improper

motives. Indeed, courts in the Roundup litigation routinely reject similar challenges to the testimony of weed scientists, and this Court should do so again here.

Dr. Johnson will offer testimony about Roundup's herbicidal properties, registered uses, and use in weed management in light of the growth patterns of weeds in the environments where Ms. Delorme-Barton reportedly was exposed to it. Those topics go to the heart of his qualifications, are beyond the common knowledge of jurors, and are directly relevant to the claims in this case.

## II.   DR. JOHNSON'S BACKGROUND AND OPINIONS

Dr. Johnson is an experienced weed scientist who presently serves as a professor of weed science in the department of botany and plant pathology at Purdue University. **Ex. 2**, Dr. Johnson's Expert Report at 1. His position is focused on research and extension. *Id.* His research focuses on (1) the development of weed management systems that are safe, and economically and environmentally sound; (2) integrating cultural practices with judicious herbicide use; (3) improving efficiency of production; and (4) minimizing selection pressure for herbicide-resistant weeds. *Id.* For the extension part of his position, Dr. Johnson takes his research and makes it available to the general public. **Ex. 3**, Dr. Johnson's Dep., at 22:9-18. In addition to his research and extension responsibilities, Dr. Johnson also teaches two on-campus courses, including Botany 505 (Advance Weed Science), which encompasses the study of the biological characteristics of weeds and their impact on crop yields and other human activities. *Id.* Dr. Johnson also guest lectures a number of other courses on various methods (chemical and non-chemical) of weed control for agronomic crops, proper herbicide use, herbicide resistance, and interactions between weeds and other plant pests. *Id.* Dr. Johnson has received numerous awards and distinctions for contributions to weed science, served in a number of administrative roles, and has authored or co-authored numerous peer-reviewed publications. **Ex. 2**, Dr. Johnson's Expert Report at Ex. A (Dr. Johnson's CV).

Dr. Johnson is prepared to opine on the impact of weeds and invasive plants, control methods employed to manage weeds and invasive plants, and the use of herbicides, including glyphosate-based formulated products, in weed management; he will also testify to appropriate

application methods and the use and benefits of herbicides in a variety of settings. **Ex. 2**, Dr. Johnson's Expert Report, at 5-46. In addition, he has formed opinions about the application methods of herbicides, herbicide spray equipment, herbicides' physical and chemical properties, herbicide drift, and how these concepts apply specifically to Ms. Delorme-Barton's alleged use of Roundup. *Id*. at 46-65. His years of research, training, education, experience, and knowledge have prepared him to offer specialized testimony on these specific topics. Contrary to Plaintiff's contentions, these opinions are relevant to her claims, and the average juror does not possess similar credentials or expertise necessary to understand and evaluate these complex scientific topics.

### III.  LEGAL STANDARD

An expert who is qualified "by knowledge, skill, experience, training, or education" may testify in the form of an opinion if their opinion (1) is "based upon sufficient facts or data," (2) is "the product of reliable principles and methods," and (3) the witness has reliably applied their principles and methods to the facts of the case. Fed. R. Evid. 702. The trial judge is charged with the responsibility of acting as a gatekeeper to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "Rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" Fed. R. Evid. 702, 2000 Advisory Comm.'s Notes (quoting *United States v. 14.38 Acres of Land Situated in Leflore Cty., Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596.

### IV.  ARGUMENT

#### A.  Dr. Johnson Will Not Opine on Plaintiff's Credibility.

Plaintiff's claim that Dr. Johnson seeks to comment on her credibility or instruct the jury on how to weigh her testimony is simply not true. Dr. Johnson's assessment is not a commentary on his views on Plaintiff's credibility. Rather, he will provide a detailed analysis of standard and

- 4 -

workable residential weed control practices using his specialized knowledge and experience. Jurors can properly rely on this testimony to help evaluate and assess Plaintiff's allegations in this case, including Plaintiff's alleged use of Roundup.[2] Dr. Johnson's testimony provides the suitable context to assess Plaintiff's allegations and allow the jury to make a more informed decision regarding the competing evidence.

As Plaintiff concedes (Mot. at 5), Dr. Johnson made clear at his deposition that he will not testify as to whether Plaintiff's testimony is truthful; rather, he will testify that, based on his experience and knowledge in weed science and weed management practices, certain aspects of Plaintiff's alleged uses of Roundup would have deviated from standard practice, actual application, and label instructions or otherwise would not have resulted in Plaintiff coming into contact with significant amounts of Roundup. *See* **Ex. 2**, Dr. Johnson's Expert Report, at 53-65. Similarly, Dr. Johnson directly applied his expertise in weed ecology to compare the frequency of Plaintiff's alleged application of Roundup with how often weeds actually appear in the respective environment and the number of applications of Roundup it would have taken to completely eradicate those weeds. *See, e.g.*, *id.* at 61-62. These are matters beyond the knowledge of common jurors.

Plaintiff's underlying premise is that an expert's testimony should be excluded if his or her opinion contradicts any aspect of the plaintiff's testimony because the opinion, if credited by the jury, would diminish the "credibility" of a plaintiff. This argument finds no support in the law and has been routinely rejected by courts in other Roundup cases. For example, in *Ferro et al. v. Monsanto Company*, Case No. 20SL-CC03678 (St. Louis County) (Ribaudo, J.), the court rejected a very similar argument seeking to exclude Monsanto's weed science expert there, noting that, "it is proper for a witness to testify to specific facts that discredit the testimony of another witness, as long as the witness does not comment directly on the truthfulness of another

---

[2] Likewise, Dr. Johnson's opinions are not an attack on Dr. Conry's credibility. Instead, Dr. Johnson simply points out the weaknesses in the data Dr. Conry relied on to reach his conclusions—something experts regularly do.

witness." **Ex. 4**, 10/13/2022 Ferro Order Regarding the Parties' Motions to Exclude Experts at 35-36.

Neither Monsanto nor the jury is obligated to accept Plaintiff's claimed use of Roundup without challenge. There is scientific evidence that undermines these claims, and the proper mechanism to present this scientific evidence to the jury is through a qualified expert, such as Dr. Johnson. The added context Dr. Johnson can provide will aid, not interfere with, the jury's role. *See Reed v. Lieurance*, 863 F.3d 1196, 1290 (9th Cir. 2017) ("While an expert witness is not permitted to testify specifically to a witness' credibility, we know of no rule barring expert testimony because it might indirectly impeach the credibility of an opposing party's testimony.") (alterations, internal quotations, and citations omitted).

### B. Dr. Johnson is Qualified to Offer Expert Testimony in this Case.

Plaintiff's suggestion that Dr. Johnson is unqualified to offer opinions in this case because he is not a medical doctor, epidemiologist, toxicologist, industrial hygienist, or historian is a red herring. Mot. at 7 & 13. Indeed, this challenge grossly misunderstands the multitude of complex issues the jury will be asked to address, which are not all directed to the carcinogenicity of Roundup. Dr. Johnson made clear in his deposition that his area of expertise and opinions do not pertain to human health. *See, e.g.*, **Ex. 3**, Dr. Johnson's Dep., at 202:2-22. Instead, Dr. Johnson's expertise concerns the properties and uses of herbicides, including the way herbicide users like Ms. Delorme-Barton may come into physical contact with Roundup while using it in particular contexts. *See generally* **Ex. 2**, Dr. Johnson's Expert Report. Ironically, Plaintiff admits that Dr. Johnson's general opinions about weed science principles and approaches "***are clearly within his expertise*** as a 'weed scientist.'" Mot. at 11 (emphasis added); *see also* Mot. at 4 ("Plaintiffs do not question [Dr. Johnson's] expertise in the field of weed management."). Yet Plaintiff takes the position that despite being unquestionably qualified to testify about weed science principles and approaches, he is somehow not qualified to apply that expertise to the allegations surrounding Ms. Delorme-Barton's alleged contact with Roundup.

Dr. Johnson's opinions on herbicide application, including herbicide drift, are based on his research, education, and professional experience evaluating herbicide applications as a weed

scientist. Drawing from his extensive education and more than 30 years of experience as a weed scientist, Dr. Johnson specifically opines that (1) Plaintiff's claimed applications of Roundup far exceed what would have been necessary to control weed on the relevant properties; (2) the volume of glyphosate Plaintiff claims to have used exceeds what would have been necessary to control weeds on the relevant properties; (3) Plaintiff likely had minimal contact with glyphosate; and (4) Dr. Conry's opinions are based on claims that exceed what would be needed to control weeds on the relevant properties. **Ex. 2**, Dr. Johnson's Expert Report, at 61-65. Through this specialized training and experience, Dr. Johnson is well qualified to offer expert testimony on *all* the areas included in his expert report. Indeed, the Supreme Court clearly stated that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999); *see also* Fed. R. Evid. 702, advisory committee's note ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony.").

Plaintiff next claims that Dr. Johnson should be precluded from offering this opinion because his expertise in weed science relates to agricultural endeavors, not residential herbicide applications (Mot. at 7). But, as Dr. Johnson makes abundantly clear in his report, his acquired knowledge of application methods of herbicides, herbicide spray equipment, the physical and chemical properties of herbicides, and herbicide drift—which he has gained in his experience as a weed scientist—applies in both residential and agricultural settings. *See, e.g.*, **Ex. 2**, Dr. Johnson's Expert Report, at 13 (explaining that his report outlines "the history of how weeds were controlled and the evolution of weed control tactics leading up to the current strategies used in both *residential* and agricultural settings") (emphasis added). Plaintiff attempts to support this flawed argument by asserting that Dr. Johnson is not qualified because he has not performed mathematical calculations for residential glyphosate usage. Mot. at 8. This is a fundamental misunderstanding of Dr. Johnson's testimony and opinions. Dr. Johnson is not disclosed to offer a quantitative exposure assessment in this case, and thus the fact that he does not offer one, or has not offered one, is irrelevant. Instead, Dr. Johnson will offer opinions about

1    the physical and chemical properties of Roundup, its effectiveness, proper application methods,
2    spraying equipment, and specific application circumstances and conditions at issue in this case.
3    Dr. Johnson's testimony on these concepts is beyond the knowledge of common jurors and will
4    assist the fact finder in evaluating Plaintiff's use of Roundup, including Ms. Delorme-Barton's
5    alleged contact with Roundup while spraying. These opinions are properly within Dr. Johnson's
6    expertise and are supported adequately by his experience, knowledge, training, and review of
7    the facts in issue. Accordingly, Plaintiff's focus on a mathematical quantitative assessment of
8    residential sprayers' exposure simply misses the point.

9    As to the opinions he *does* intend to offer, Dr. Johnson is more than qualified. He has a
10   breadth of knowledge and professional experience in the field of weed science that is directly
11   relevant to herbicide use and application techniques. *See, e.g.*, *Primiano v. Cook*, 598 F.3d 558,
12   565 (9th Cir. 2010) (Expert opinion testimony "is reliable if the knowledge underlying it has a
13   reliable basis in the knowledge and experience of the relevant discipline."); *see also Elosu v.
14   Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) ("An expert's specialized
15   knowledge and experience can serve as the requisite 'facts or data' on which they render an
16   opinion."). Dr. Johnson's distinct perspective on herbicide application is critical for the jury to
17   hear when evaluating the evidence in this case. Dr. Johnson holds a Ph.D. in Agronomy and has
18   extensive knowledge concerning the use of glyphosate-based herbicides. **Ex. 2**, Dr. Johnson's
19   Expert Report at Ex. A (Dr. Johnson's CV). He has extensive experience as a professor of weed
20   science at Purdue. *Id.* He has dedicated his career to the in-depth study of weed science, and he
21   actively contributes to the scholarly literature on many weed science topics, including herbicide
22   application, through his authorship of peer-reviewed publications. *Id.* Dr. Johnson is qualified
23   and can properly testify about the impact of Roundup on weed management and the nature and
24   circumstances of Ms. Delorme-Barton's application of Roundup. *See, e.g.*, **Ex. 3**, Dr. Johnson's
25   Dep., at 287:12-20 (emphasizing that his opinions regarding the nature and circumstances of
26   Ms. Delorme-Barton's application of Roundup are based on his 30 years of experience).

27   **C.    Dr. Johnson's Opinions Rest on Reliable Foundation.**
28   Plaintiff also asserts that Dr. Johnson's opinions are unreliable and inadmissible because

- 8 -
OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF DR. WILLIAM JOHNSON

they lack any foundation in the facts of this case. Mot. at 8-10. Plaintiff takes issue with the fact that Dr. Johnson "ignor[ed] Plaintiff's allegations of her own exposure" and never personally visited the properties where she sprayed Roundup. Mot. at 8-9. These criticisms mischaracterize Dr. Johnson's experience, discount the extensive work he performed to reach those opinions, and misapply the *Daubert* standard. While these criticisms may be appropriate subjects for cross-examination, they do not render Dr. Johnson's opinions inadmissible.

Plaintiff mistakenly argues that Dr. Johnson ignores her exposure allegations. Mot. at 8. Dr. Johnson made clear at his deposition that he formed his opinions in this case by reviewing the case-specific facts, including the deposition testimony of Ms. Delmore-Barton and her husband, and utilizing his specialized knowledge and experience as a weed scientist. **Ex. 3**, Dr. Johnson Dep., at 273:7-18.[3] As described above, both Monsanto and the jury have the right to question the Plaintiff's alleged use of Roundup and are not obligated to accept it without scrutiny. And Dr. Johnson's opinions provide scientific evidence that bears on the highly relevant question of Roundup's proper application, uses, and effectiveness—and how those impact Ms. Delmore-Barton's potential for contact under the specific circumstances at issue in this case.

Next, Plaintiff's argument proffers an inappropriate and unsupported standard, claiming—with no authority—that to form opinions based on proper foundation, an expert witness must have personally visited the properties in question. But that is not the standard for the admission of expert testimony of the type Dr. Johnson is offering here, and it ignores the comprehensive review he performed to form his opinions. Plaintiff fails to explain with any specificity what parts of Dr. Johnson's opinions he is unable to reach without visiting the properties or why not doing so allegedly renders his opinions inadmissible.

Dr. Johnson reviewed sufficient data to form his opinions in this case, including

---

[3] Plaintiff also wrongly claims that Dr. Johnson did not consider "the full extent to which the weeds in Plaintiff's property were resistant to glyphosate. Mot. at 10. In reality, Dr. Johnson explained in detail why herbicide resistance is not a major problem for residential users. **Ex. 3**, Dr. Johnson Dep., at 297:9-300:9. Moreover, this is not reason for exclusion and can easily be addressed on cross-examination.

reviewing the complaint, discovery responses, Plaintiff's Fact Sheet, the deposition testimony of Ms. Delorme-Barton and her husband, Google Earth images, photographs of the properties Plaintiff applied Roundup, and the report prepared by Plaintiff's expert, Dr. Conry. **Ex. 2**, Dr. Johnson's Expert Report at Ex. B (Dr. Johnson's Matericals Considered List). In fact, Dr. Johnson produced a list of 157 materials he considered in forming his opinions in this case. *Id.* This is more than sufficient to render his opinions admissible under Rule 702. Put simply, Dr. Johnson's opinions in this case are the product of extensive, case-specific preparation and careful, scientific-based analysis derived from Dr. Johnson's years of experience with weed science. Plaintiff may seek to cross-examine Dr. Johnson about these matters, but none of the "challenges" to Dr. Johnson's factual basis underlying his opinions come close to requiring exclusion.

### D. Dr. Johnson's Testimony is Relevant, Proper, and Will Aid the Jury.

Finally, Plaintiff argues that Dr. Johnson's testimony is irrelevant and will not assist the jury. Dr. Johnson's testimony, however, concerns weed management topics on which the jury is likely to have little knowledge. Plaintiff's challenge mischaracterizes Dr. Johnson's opinions. In reality, Dr. Johnson's testimony will cover appropriate herbicide application methods, spray equipment, and the benefits of herbicides (to name a few)—topics unquestionably at issue in a case that centers on Ms. Delorme-Barton's purported exposure to Roundup, a glyphosate-based herbicide. Dr. Johnson offers opinions on each of these topics as well as helpful background on the function and uses of glyphosate-based herbicides to provide important context with which the jury is likely unfamiliar. In short, contrary to Plaintiff's assertions, Dr. Johnson will offer extensive scientific testimony on these topics based on his years of experience, which is necessary for the jury to understand the claims and issues in this case. Indeed, there can be no question that such topics are not of such common knowledge that the average juror's knowledge is no better than Dr. Johnson. *See, e.g., Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009) ("Under Rule 702, expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading.").

In his expert report, Dr. Johnson first explains his opinions about weed science principles and approaches. **Ex. 2**, Dr. Johnson's Expert Report, at 2-52. He then outlines the facts relevant to Ms. Delorme-Barton's use and application of Roundup. *Id.* at 53-61. Lastly, Dr. Johnson directly applied his expertise in weed science and the facts *specifically related* to Plaintiff to opine on the duration and frequency of her alleged use and application of Roundup and Plaintiff's purported contact with Roundup during these applications. *Id.* at 61-65. During his deposition, Dr. Johnson explained in detail how his general opinions about weed science principles and approaches are related explicitly to Ms. Delorme-Barton's alleged exposure to Roundup. *See, e.g.*, **Ex. 3**, Dr. Johnson's Dep., at 273:7-18. Jurors can adequately rely on this testimony to help evaluate and assess Plaintiff's allegations, including Ms. Delorme-Barton's alleged use of and exposure to Roundup.[4]

Plaintiff also asserts that Dr. Johnson's opinions "are in no way probative of any issues in controversy." Mot. at 11. Not so. Indeed, Plaintiff ignores that Dr. Johnson's opinions about Roundup's benefits are relevant to many of the material issues in this case, including the jury's assessment of Plaintiff's design-defect claims, which in part are based on the allegation that the risks in Roundup's design outweigh the benefits; negligence claims; and contention that Monsanto failed to undertake a sufficient study of and warnings about the alleged dangers of Roundup. *See, e.g.*, *Lindsey v. Navistar Intern. Transp. Corp.*, 150 F.3d 1307 (11th Cir. 1998)

---

[4] Weed scientists like Dr. Johnson have been permitted to testify in numerous prior Roundup trials on the same general and case-specific topics that Dr. Johnson will opine about here, over objections similar to those raised here. *See, e.g.*, **Ex. 4,** *Ferro et al., v. Monsanto Company*, Order Regarding the Parties Motions to Exclude Experts, at p. 35-36 (denying motion to exclude Dr. Joseph DiTomaso); **Ex. 5**, *Neal v. Monsanto*, 3/22/22 Hearing Tr. at 190:22-192:18 (same); **Ex. 6**, *Caballero v. Monsanto*, Order on Pretrial Matters Including Summary Judgment, Sargon Challenges, Motions in Limine, Requests for Judicial Notice at p. 30-32 (same); **Ex. 7**, *L. Johnson v. Monsanto*, 6/9/22 Trial Tr. at 12:5-20:3 (denying motion to exclude Dr. Carol Mallory-Smith); **Ex. 8**, *D. Johnson v. Monsanto*, 5/17/18 Order on Monsanto's Omnibus Sargon Motion; Monsanto's Motion for Summary Judgment; Plaintiff's Omnibus Sargon Motion; Plaintiff's Motion for Summary Adjudication at p. 37 (denying motion to exclude Dr. Kassim Al-Khatib); **Ex. 9**, *Wyzik v. Monsanto Co.*, 10/27/22 Trial Tr. at 220:10-221:19, 224:4-12 (plaintiffs did not challenge during oral argument whether Dr. McElroy could testify regarding matters of duration and application of Roundup, Roundup's health benefits, or how Roundup labeling impacts its application).

(noting that, under Georgia law, the relative risks and benefits of a particular design must be consider in determining whether an ordinarily prudent manufacturer would put the product on the market). Plaintiff's Motion seeks to give the jury a skewed, incomplete, and illogical view of Roundup as a product with alleged risks but no benefits. It also seeks to hide from the jury the significant history of the development of the product. Such an approach would unfairly prejudice Monsanto, not Plaintiff.

## V. CONCLUSION

For the reasons stated herein, the Court should deny Plaintiff's Motion to Exclude Dr. Johnson.

Dated:  July 14, 2023                    Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of July 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system, which sent notice of the filing to all appearing parties of record.

*/s/ Jed P. White*
Jed P. White