# EXHIBIT 6

ELECTRONICALLY
FILED
1/24/2020
K. BIEKER, CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA - MARTINEZ
T.Ciardella, DEPUTY CLERK

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**CONTRA COSTA COUNTY**

Case No. MSC19-01821

KATHLEEN CABALLERO,

               Plaintiff

V.

MONSANTO COMPANY,

               Defendant

**ORDER ON PRETRIAL MATTERS
INCLUDING SUMMARY JUDGMENT,
*SARGON* CHALLENGES,
MOTIONS IN LIMINE, REQUESTS
FOR JUDICIAL NOTICE**

Part I  Pages 1-30

    The Court held pre-trial hearings over the course of several days.  In that time, it heard argument on Monsanto's motion for summary judgment, thirteen requests to exclude expert testimony (largely based on *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal. 4th 747 ("*Sargon*"), forty-three motions in limine, eighty-four requests for judicial notice, and several ancillary matters.  It also conducted its usual pretrial conference resulting in additional rulings.

    This Order addresses those matters.  Any pre-trial ruling not included in this Order is evidenced in the daily transcripts.

**I.      Introduction**

    Ms. Caballero's case was originally filed in San Francisco Superior Court.  It was then transferred to the Alameda Superior Court and included with the Judicial Council Coordination Proceedings in docket no. 4953.  There, Ms. Caballero moved for a preference in setting.  The motion was granted and the case transferred to Contra Costa County for trial.  Thus, this court

1

Exhibit 6 Page 1

exercises "jurisdiction over the action in accordance with the orders and directions of the coordination trial judge." Cal. Rules of Court, Rule 3.543(e).

To that end, the Court has carefully considered the "Order on Applicability of JCCP and *Pilliod* Orders in Individual Trials" filed November 25, 2019 by the Coordination Trial Judge, the Honorable Winifred Y. Smith. In that order, the Coordination Court held,

> "Plaintiffs' request that the court's orders on the admission and exclusion of evidence and on general causation in the JCCP and in *Pilliod v. Monsanto*...should be extended to all the cases in the JCCP is denied." *Id.* at p.1.

It further ordered, "on a JCCP-wide basis...there is good cause for any trial judge to reconsider the court's prior orders on the admission of evidence and general causation." *Id.* at p.10.

However, the Coordination Trial Judge then cautioned,

> "Principles of consistency and judicial efficiency suggest that trial judges who hear evidence motions in future Roundup cases might want to consider the orders of this court just as this court considered the orders in *Johnson* and in the federal MDL for their persuasive value. (Order of 3/18/19 at 3:10-4:24.) (See also CCP 404.1 [coordination is to avoid "the disadvantages of duplicate and inconsistent rulings"].) This court will not order other trial judges to use a wheel that was designed based on the evidence in the JCCP and in *Pilliod* in the summer of 2019. Other trial judges might, however, independently decide to consider or follow this court's orders as a way to avoid the effort of reinventing the wheel." Order on Applicability of JCCP and *Pilliod* Orders in Individual Trials, filed November 25, 2019 at p.10-11.

Exhibit 6 Page 2

8) Dr. Benbrook may not offer an opinion about whether Monsanto misled the EPA. He has insufficient basis to do so.

9) Dr. Benbrook may not testify on Monsanto's motive, intent or state of mind. He has adduced no basis for doing so other than reading and narrating documents. See points 4 and 5 immediately above.

10) Counsel said he wants Dr. Benbrook to testify about "the entire history of glyphosate." That is excluded. To a considerable extent, this relies on matters that violate *People v. Sanchez.*

If, by the time Dr. Benbrook testifies, plaintiff seeks to expand his testimony by allowing him to testify about hearsay statements that have been proven by competent evidence or that are covered by a hearsay exception, plaintiff shall make an offer of proof, outside the presence of the jury, no less than two days before he testifies. Plaintiff may amend that offer to include any additional competent evidence that was adduced on the day before Dr. Benbrook testifies.

One last caution. The Court has read the prior transcripts carefully. In some instances, either counsel or Dr. Benbrook did not take sufficient care to follow the rules that had been given in limine. E.g. *Pilliod* transcript, compare p. 3475 (no testimony about political affiliation) with p. 3501 (discussing Democrats and Republicans); see also p. 3521 (alluding to criminal prosecution re IBT which had apparently been excluded). The Court orders plaintiff's counsel to review this order carefully with Dr. Benbrook so there are no violations.

**G. Plaintiff's Motions**

**1. Joseph DiTomaso**

Plaintiff moves to exclude the testimony of Dr. Joseph DiTomaso, a weed scientist at the University of California at Davis. Essentially, plaintiff argues that Dr. DiTomaso is going to usurp the function of the jury by urging it to accept Mr. Caballero's testimony over Ms. Caballero's.

30

**Exhibit 6 Page 3**

1   As Monsanto explains, that is not what Dr. DiTomaso will do.   He is a distinguished

2   scientist who teaches "weed science." That work includes, among other things, weed control

3   options. He is also a Cooperative Extension Specialist and provides practical information to the

4   general public about weed control.  Monsanto offers him to discuss how Roundup is used.  His

5   subjects include, "the types of herbicide available to farmers, the types of sprayers that are

6   commercially available, the amount of time it takes to treat a plot of land with Roundup, how

7   much and how often Roundup is typically used, standard practices for the use of Roundup with

8   other weed control techniques, the standard uses for Roundup in nurseries and small farms, and

9   the principle of "drift" and how that principle applies to herbicide applications." Monsanto's

10   Opposition to *Sargon* Motion to Exclude Joseph M. DiTomaso, Ph.D. at 4:24-28.

11   Dr. DiTomaso has reviewed the deposition testimony of plaintiff and of her former

12   husband.  He is prepared to opine that Ms. Caballero's description of her use of Roundup is

13   unrealistic.  For example, he observes that she testified that she sprayed Roundup between rows

14   of sugarcane.  But, he observes, Roundup is not recommended for use once the crop emerges

15   aboveground.  Plaintiff says that Mr. Caballero testified that they never sprayed the sugarcane,

16   and therefore fears that Dr. DiTomaso will instruct the jury to believe Mr. Caballero rather than

17   Ms. Caballero.  That is not a fair import of the testimony he has given so far, and the court will

18   be alert to any appropriate objections should he seek to do that.

19   Similarly, Dr. DiTomaso will testify that it is unlikely that plaintiff used an eight to ten

20   gallon backpack sprayer to apply Roundup, because such a backpack sprayer does not exist, and

21   if it did, would weigh approximately 100 pounds. *Id.* at 2:10-11.

22   Plaintiff's reply brief quotes two short excerpts in which her counsel asked if the witness

23   found Ms. Caballero's testimony credible. Plaintiff Kathleen Caballero's Reply in Support of

24   Plaintiff's Sargon Motion to Exclude the Opinions and Testimony of Dr. Joseph M. DiTomaso,

25   Ph.D. at 2:15-23.  But Dr. DiTomaso did not appear to offer any such opinion in his report or his

31

**Exhibit 6 Page 4**

own statement of his opinions.  That was cross-examination by plaintiff's counsel.  If counsel does not wish to have such a statement in evidence he need not ask the question.

Plaintiff then argues that if Dr. DiTomaso testifies, it should be allowed to impeach that testimony with evidence of Mr. Caballero's "prior acts of moral turpitude." Plaintiff's *Sargon* Motion to Exclude the Opinions and Testimony of Joseph M. DiTomaso, Ph.D. at 8:1-2.  That is the subject of a separate motion in limine and is dealt with below.

Plaintiff's motion to exclude or limit the testimony of Dr. DiTomaso is denied.

Plaintiff makes an allied argument: if Dr. DiTomaso is allowed to testify as to the benefits of Roundup, then plaintiff should be able to introduce all evidence about the negative effects of Roundup, including the development of genetically modified organisms ("GMO"), Monsanto's sale of patented seed, its destruction of non-GMO agriculture and a further parade of horribles.

Obviously this raises concerns under Ev. C. § 352.  This trial is about whether Roundup caused Ms. Caballero's NHL.  It is also about whether punitive damages should be awarded.  However, all that requires a careful balancing.  Not everything that plaintiff considers a bad act by Monsanto is relevant to punitive damages in *this* case.

Dr. DiTomaso may discuss the eight points that were listed on pages 1 and 2 in his expert report in the *Giglio* case. Hoke Declaration, Exhibit 8, p.32-33; Exhibit 3 to Exhibit 8, the expert report, pages 1 and 2.  He may describe the history of the development of Roundup, what properties Monsanto was seeking in an herbicide, and how Roundup met those objectives.   But the more he opines generally on the benefits of Roundup in the history of world agriculture, the more he opens the door to wider cross-examination.  At the conclusion of his direct testimony the parties and the court will discuss, outside the presence of the jury, the extent to which plaintiff seeks to cross-examine.  The general rule to be applied is that the cross-examination must be within the scope of the direct examination.

32

Exhibit 6 Page 5

1   or otherwise satisfies a condition of admissibility, it must file and serve a pleading specifying

2   what it believes to be the result of the ruling and identifying the further action it seeks from the

3   court.

4   **VI.     The Deferred Prosecution Agreement**

5          At oral argument, plaintiff provide the court and defense counsel with a set of papers that

6   were filed on November 21, 2019 in the United States District Court for the District of Hawaii.

7   The first pleading is entitled "Deferred Prosecution Agreement for Defendant Monsanto

8   Company."

9          Plaintiff says he wishes to use it, but was unable to articulate how he wishes to do so.

10  Monsanto objects.

11         No reference will be made in opening statements to this filing, the events discussed in

12  this set of papers, or Monsanto's plea to Count 3 (a misdemeanor violation of 7 U.S.C.

13  136j(a)(2)(K) of an Information included in this set of papers.  Should plaintiff wish to refer to

14  these matters or put the set of papers (or some part of them) in evidence, she must first seek

15  permission outside the presence of the jury.

16

Date: January 24, 2020

17

18

19

20

21

22                                                              Barry P. Goode
                                                                Judge, Superior Court
23

24

25

84

**Exhibit 6 Page 6**