# EXHIBIT 7

**IN THE CIRCUIT COURT OF THE STATE OF**
**OREGON FOR JACKSON COUNTY**

LARRY JOHNSON and GAYLE JOHNSON,

       Plaintiffs,

v.

MONSANTO COMPANY, a
corporation; EAGLE POINT
HARDWARE, LLC, a
corporation,

       Defendants.

_____



COURT REPORTING

LEGAL VIDEOGRAPHY

VIDEOCONFERENCING

TRIAL PRESENTATION

MOCK JURY SERVICES

LEGAL TRANSCRIPTION

COPYING AND SCANNING

LANGUAGE INTERPRETERS



THE PIONEER COURTHOUSE



NAEGELI
DEPOSITION & TRIAL



CELEBRATING
40
YEARS IN BUSINESS

(800) 528-3335
NAEGELIUSA.COM

**TRANSCRIPT OF**

**JURY TRIAL – DAY TWELVE**

**HELD ON**
**THURSDAY, JUNE 9, 2022**

**BEFORE**
**THE HONORABLE CHARLES KOCHLACS**

**JACKSON COUNTY CIRCUIT COURTHOUSE**
**100 SOUTH OAKDALE AVENUE**
**MEDFORD, OREGON 97501**

Exhibit 7 Page 1

1                        **APPEARANCES**

2

3  **For the Plaintiffs:**

4  Charles Miller, Esquire

5  Eric Pearson, Esquire

6  **HEYGOOD ORR & PEARSON**

7  6363 North State Highway 161, Suite 450

8  Irving, TX 75038

9  (214) 237-9001

10  (214) 237-9902 Fax

11  charles@hop-law.com

12

13  David Linthorst, Esquire

14  **ANDERSEN MORSE & LINTHORST**

15  1730 East McAndrews, Suite A

16  Medford, OR 97504

17  (541) 773-7000

18  (541) 608-0535 Fax

19  david@andersenlaw.com

20

21

22

23

24

25

**NAEGELI**
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

**(800)528-3335**
NAEGELIUSA.COM

**Exhibit 7 Page 2**

**APPEARANCES CONTINUED**

1

2

3   Kimberly Loutey,Esquire

4   **KIRKENDALL DWYER**

5   4343 Sigma Road, Suite 200

6   Dallas, TX 75244

7   (877) 503-1595

8

9   **For the Defendants:**

10  Frederic Norris, Esquire

11  **HUSCH BLACKWELL, LLP**

12  1999 Harrison Street, Suite 700

13  Oakland, CA 94612

14  (510) 768-0650

15  (510) 768-0651 Fax

16  rick.norris@huschblackwell.com

17

18

19

20

21

22

23

24

25

NAEGELI
DEPOSITION & TRIAL

CELEBRATING
40
YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

**Exhibit 7 Page 3**

**APPEARANCES CONTINUED**

1

2

3  Dominic Campanella, Esquire

4  **BROPHY SCHMOR, LLP**

5  201 West Main Street, 5th Floor

6  Medford, OR 97501

7  (541) 772-7123

8  (541) 772-7249 Fax

9  dcampanella@brophylegal.com

10 rbennett@brophylegal.com

11

12 Kurt Mathas, Esquire

13 George Lombardi, Esquire

14 Karalena Guerrieri, Esquire

15 **WINSTON & STRAWN, LLP**

16 35 West Wacker Drive

17 Chicago, IL 60601

18 (312) 558-5600

19 (312) 558-5700 Fax

20 kmathas@winston.com

21

22

23

24

25

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

Exhibit 7 Page 4

**APPEARANCES CONTINUED**

3 | Alexandra Whitworth

4 | **BRYAN CAVE LEIGHTON PAISNER LLP**

5 | 120 Broadway, Suite 300

6 | Santa Monica, CA 90401

7 | (310) 576-2100

8 | (310) 576-2200 Fax

9 | alex.whitworth@bryancave.com

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

**Exhibit 7 Page 5**

 1 I've raised, your Honor.  So we'd just like some

 2 guidance.  And, frankly, we don't think this witness

 3 should be allowed to testify at all.

 4          **THE COURT:**  Okay.

 5          **MR. NORRIS:**  Yes, your Honor.  I know you

 6 like guidance from other courts.  Weed scientists

 7 have testified in two other prior trials.  It's

 8 never been excluded on a weed science basis.

 9          And I am not going to suggest that -- she

10 is not going to talk about "feed the world."  I want

11 to be very clear about that.  Your Honor, in the

12 motion in limine on that, allowed us to introduce

13 evidence as to the utility around the home, and

14 that's all she's going to talk about and how it

15 works around the home.

16          She's going to talk about how Roundup

17 works and how over time, when you reduce the weed

18 burden on the property, the number of weeds go down

19 and the amount of spraying would need to go down

20 over time.  And it -- and which goes slightly to the

21 weight and credibility of whether or not they were

22 spraying as much as they say that they were spraying

23 on this property. That is perfectly proper to call

24 some -- into question the amount of use or the

25 amount of bottles that were used on the property.

NAEGELI
DEPOSITION & TRIAL

(800)528-3335
NAEGELIUSA.COM

**Exhibit 7 Page 6**

1  That is solely within the province of an expert

2  witness to talk about and to address why that might

3  not be needed, and also the times of year that

4  sprays would be needed based on her experience here

5  in Oregon with weeds and when they grow, where they

6  grow, how they grow.

7           And -- but, no, she's not -- she's not a

8  medical doctor.  She's not going to talk about Mr.

9  Johnson and whether his cancer was caused by

10 Roundup.  She's not going to talk about dermal

11 absorption issues, which I think they raised. She's

12 going to talk about weeds, how they work, how

13 Roundup works on those weeds, how it works with --

14 operates with a shikimate pathway to kill those

15 weeds.  And how -- and to the extent she's talking

16 about labels, she's going to talk about as a weed

17 scientist how they rely upon the EPA for what's on

18 the label and that guides the way that they work

19 with not just Roundup but other herbicides that they

20 use in their job.

21          Her testimony is not likely to last more

22 than, you know -- this is not a -- this is a

23 component of our case, but it's a -- it's likely to

24 be maybe 45 minutes to an hour at most on direct

25 examination, just hitting on the topics within her

NAEGELI
DEPOSITION & TRIAL

CELEBRATING
40
YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

Exhibit 7 Page 7

1 area of expertise.  Is there anything else?

2          THE COURT:  Here's --

3          MS. LEE:  Go ahead.

4          THE COURT:  The utility around the house,

5 that's fine.  How it works is fine.  Weeds go down

6 over time is fine. But I just don't see the

7 testimony about he shouldn't have used so much.

8 Like that's not -- is that on the label?  Like --

9          MR. NORRIS:  She's not going to say that.

10 She's absolutely not going to say that.

11          THE COURT:  My notes say "shouldn't have

12 used so much."

13          MR. NORRIS:  No.  She's not going to use

14 those words in any way, shape, or form.  She's just

15 going to say that the way he described using it was

16 proper.  Most likely, wouldn't have needed six or

17 more bottles per year.  That seems a little bit

18 high.  But otherwise, the way he used it was

19 consistent.

20          She's also going to talk about the fact

21 that she went on the site inspection, she saw the

22 property, she took photographs of the weeds at the

23 property.  As it relates to other chemicals, she's

24 not going to talk about the other chemicals in the

25 shed.

NAEGELI
DEPOSITION & TRIAL

CELEBRATING
40
YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

Exhibit 7 Page 8

 1          **MS. LEE:**  Yeah.

 2          **MR. NORRIS:**  But she took, you know,

 3  photographs when she was there.

 4          **THE COURT:**  So six or more bottles seeming

 5  high, that almost seems like that would benefit you,

 6  because he sprayed all that lawn.

 7          **MR. PEARSON:**  But what they're doing,

 8  Judge -- and I mean, they basically said this.

 9  They're trying to bring in someone who's a weed

10  science expert with all the credibility that

11  entails.  She's highly educated.  She's highly

12  qualified as a weed scientist.  And they're trying

13  to, in a sort of backhanded way, attack Mr.

14  Johnson's credibility about his usage.  Counsel even

15  admitted that.

16          But unless they're going to concede the

17  connection between -- between Roundup and cancer,

18  whether he used a lot or a little, you know, again,

19  the jury -- the jury is the judge of Mr. Johnson's

20  credibility.  They're trying to get her to say, "He

21  didn't need to use this much.  Therefore, I don't

22  think he really told the truth about what he did

23  use."

24          Because let's say she proves he used too

25  much Roundup.  That has no relevance.  The only

1 relevance could be if she's implying -- and counsel

2 just said that's exactly what they're doing -- that,

3 "No reasonable person would have used as much

4 Roundup as Mr. Johnson said he did, and here's why,

5 as a weed scientist, he didn't need to do that.

6 Therefore, what I'm telling you, jury, is Mr.

7 Johnson was lying.  And you shouldn't believe what

8 he said."

9          THE COURT:  Okay.  So that's improper if

10 that's --

11          MR. PEARSON:  That's exactly.

12          THE COURT:  If they're saying six or more

13 bottles seems high, or seems like a lot --

14          MR. PEARSON:  For 40 -- over 40 years?

15          MR. NORRIS:  No.  Per year.

16          MS. LEE:  The testimony is per year.

17          MR. PEARSON:  Again, Judge.  Let's say --

18          THE COURT:  Are they trying to say, well,

19 he's lying about that?

20          MR. PEARSON:  Yes.

21          THE COURT:  Or that's the amount he used

22 and that seems high?  There's a difference.

23          MR. PEARSON:  The only utility of that

24 argument, again, they're not conceding Roundup

25 causes cancer.  So more use means more likely to

 1  have cancer, they're not making that argument.

 2  They've dropped the misuse defense.  They've agreed

 3  they're not going to allege Mr. Johnson misused the

 4  product. They don't have any kind of comparative or

 5  contributory argument.

 6          So if the argument is Mr. Johnson used too

 7  much Roundup, that's not relevant to any issue in

 8  trial.  The only relevance -- and counsel admitted -

 9  - is they're trying to say, "Look, jury, wink, wink,

10  nod, nod, Mr. Johnson lied to you. There's no way he

11  used this much, because if he used that much, that

12  was way more than he needed to use."

13          And they're doing it in the guise of an

14  expert, whose testimony will have greater weight

15  with the jury.  And they shouldn't be allowed to

16  bring in an expert to try to attack Mr. Johnson's

17  credibility.  The jury is the judge of his

18  credibility.  If they can explain some other

19  relevance of this allegation that it shouldn't have

20  taken that much Roundup to control his weeds, then,

21  fine.  But the only reason to do that is to try to

22  impugn Mr. Johnson's credibility.  And that's

23  improper use of an expert.

24          **THE COURT:**  Okay.  So we've got -- okay.

25          Mr. Norris, anything?

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

**Exhibit 7 Page 11**

1        **MR. LOMBARDI:**  Your Honor, if I may, we --

2  Mr. Johnson's credibility is at issue in this case,

3  obviously. And we are entitled -- we don't have to

4  accept that he actually used six to eight bottles.

5  One way to establish that is for a weed scientist to

6  go on the property, as she did, review the property,

7  and make determinations of her own as to what would

8  be necessary to actually get rid of weeds.

9            And she is entitled to testify that once

10  you use Roundup, it's an effective herbicide and

11  weeds don't just continually come back.  And she's

12  entitled to talk about what the climate's like

13  around here and whether it's -- we've heard that he

14  sprayed from March through October.  We're entitled

15  to introduce evidence that calls into question that.

16            And so she's not going to -- she's not

17  going to specifically say Mr. Johnson did or did not

18  tell the truth. She's going to say objectively, as

19  an expert, how -- how Roundup works, how it gets rid

20  of weeds, and what would be necessary on a property

21  like this.  And so it's totally appropriate.

22        **THE COURT:**  So she's going to come in and

23  say how much she thinks is necessary for this

24  property based on --

25        **MR. LOMBARDI:**  Her -- she's been to the

NAEGELI
DEPOSITION & TRIAL

(800)528-3335
NAEGELIUSA.COM

**Exhibit 7 Page 12**

1  property, and you know, she's looked at all the

2  places that he says he sprayed and so forth.  And

3  also taking into account the weather around here,

4  which we've heard about from Plaintiffs.

5         **THE COURT:**  Nonetheless, he still could be

6  telling the truth and just using a lot of Roundup.

7  It could go either way.

8         **MS. LEE:**  Absolutely.

9         **MR. LOMBARDI:**  Yeah.  He could.  And that

10 will be for the jury to decide.

11        **THE COURT:**  Okay.  I'm going to allow this

12 testimony.

13        **MR. PEARSON:**  What about the labels, your

14 Honor? That was the last thing I wanted to mention.

15 They said that weed scientists rely on the EPA for

16 labels.  I guess they're going to try to argue that

17 only the EPA can control the label; Monsanto can't

18 control the label.  Those are issues that are way

19 outside of her purview.  I don't know what she could

20 add to the labels.  They're black and white and

21 there's --

22        **THE COURT:**  She relies on the labels?

23        **MR. NORRIS:**  That's it.

24        **MR. PEARSON:**  Weed scientist.

25        **MS. LEE:**  That's all she's going to say.

1              MR. PEARSON:  So what?

2              THE COURT:  I think she can testify.  That

3  -- that's fine with me.

4              MR. PEARSON:  Okay.

5              THE COURT:  Thank you.

6              MR. MATHAS:  Your Honor, very briefly.

7  One more issue before you bring in the jury, and I

8  know you want to get them in here.  We've talked

9  about some exhibit issues, and yesterday there was a

10 discussion of getting us the remaining exhibits that

11 Plaintiffs were likely to use in cross-examination.

12 We did get an amended exhibit list yesterday.  We

13 didn't get additional exhibits with it.

14          But there is one exhibit that was on the

15 exhibit list that we have concerns about, your

16 Honor.  It's Exhibit-414. We've prepared a bench

17 brief that I would like to hand up to your Honor.

18 And we'd be happy to take up any issues with

19 Exhibit-414 at sidebar before it's offered, but we

20 just don't want the document being put up.

21             THE COURT:  When will it be offered?

22             MR. ORR:  It's not going to be offered

23 today.

24             THE COURT:  Okay.  So can you brief -- get

25 me the bench brief?

NAEGELI
DEPOSITION & TRIAL

CELEBRATING
40
YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

**Exhibit 7 Page 14**

```
 1                    REPORTER CERTIFICATION

 2            I, PHOEBE S. MOORHEAD, Registered Professional

 3    Reporter, do hereby certify:

 4            That the foregoing proceedings were taken before me

 5    at the time and place set forth herein and were taken down by

 6    me in shorthand and thereafter transcribed into typewriting

 7    under my direction and supervision;

 8            That the foregoing pages contain a true and

 9    correct transcription of my said shorthand notes so taken.

10            I FURTHER CERTIFY that I am neither counsel for nor

11    related to any party to said action nor in anywise interested

12    in the outcome thereof.

13            Certified and dated this 10th day of June, 2022.

14

15

16

17    _____
      PHOEBE S. MOORHEAD, RPR, CRR
18     Certified Shorthand Reporter
       for the State of Utah
19

20

21

22

23

24

25
```

**Exhibit 7 Page 15**