# EXHIBIT 2

Karen Delorme-Barton

```
 1             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2

      IN RE:  ROUNDUP PRODUCTS LIABILITY    MDL No. 2741
 3    LITIGATION                            Case No. MDL No.
 4                                          3:16-md-02741-VC
 5
 6    KAREN DELORME-BARTON,    )
                               )
 7             Plaintiff,      )
                               )
 8    vs.                      )
                               ) Case No. 3:18-cv-01427
 9    MONSANTO COMPANY,        )
                               )
10             Defendant.      )
      _____)
11
12
13
14             Videotaped Deposition of KAREN
15    DELORME-BARTON, taken by counsel for the Plaintiff,
16    pursuant to notice and by agreement of counsel, under
17    the Federal Rules of Civil Procedure, reported by
18    Tamela G. Sheeler, RPR, CLR, CCR-6537-8261-3701-4272,
19    at McKee Court Reporting, 106 Montgomery Street,
20    Savannah, Georgia, on Tuesday, January 14, 2020,
21    commencing at 10:05 a.m.
22
23
24
25
```

```
 1                    APPEARANCES OF COUNSEL
 2
    FOR THE PLAINTIFF:
 3
                KATHERINE L. HANSSON, ESQUIRE
 4              Weitz & Luxenberg
                700 Broadway
 5              New York, New York  10003
                   212-558-5991
 6                 khansson@weitzlux.com
 7
    FOR THE DEFENDANT:
 8
                JASON SCOTT, ESQUIRE
 9              Shook, Hardy & Bacon, LLP
                2555 Grand Boulevard
10              Kansas City, Missouri  64108
                   816-474-6550
11                 jscott@shp.com
12
    ALSO PRESENT:
13
                DENNIS DORSEY, VIDEOGRAPHER
14
                WILLIAM F. BARTON
15
16
17
18
19
20
21
22
23
24
25
```

```
 1        Q.    You said you remember the concentrate?
 2        A.    I know it was a concentrate, because I
 3   mixed it.
 4        Q.    Do you remember what the specific amount of
 5   glyphosate in that concentrate was?
 6        A.    No.
 7        Q.    Okay.  How did you know it was a Roundup
 8   product?
 9        A.    It, curiously enough, you're probably too
10   young to know this, Rawhide, did you -- there was a TV
11   program called Rawhide, and -- well before your time.
12   And I would laugh when I started doing it, because I'd
13   sing the theme song and butcher all of the lyrics.  But
14   it had, you know, essentially round them up, move them
15   out, Rawhide and a whipping sound.  And it was kind of a
16   standing family joke.
17        Q.    Okay.
18        A.    So I know it was Roundup.  And it was
19   pretty ubiquitous, Roundup was everywhere.
20        Q.    Is there anything about the container
21   itself that you remember that would indicate it was
22   Roundup?
23              I mean, I know that you had the song and --
24        A.    Right.
25        Q.    -- thing.
```

```
 1   start, stop, start, stop.  So maybe twice that, you

 2   know, depending on how quickly I move.

 3          Q.    Two times to refill it?

 4                I'm sorry, is that -- how many times would

 5   you have to refill to the tank when you were doing your

 6   treatment at your parents' house in 1976 to --

 7          A.    Okay, I was answering -- I answered the

 8   wrong question.

 9                Ten minutes, so I would say at least -- it

10   would vary, because sometimes I'd do it for an hour and

11   a half, sometimes two hours.  So four to six, four to

12   six times I'd mix it, I would say.

13          Q.    Okay.  Now, at your parents' house, were

14   there any locations that you would have to do the steady

15   state, the constant spray, other than that drainage

16   ditch area across the street for the neighbor?

17          A.    No, I could not, because I would damage

18   something.

19          Q.    Okay.

20          A.    Yeah.

21          Q.    And when you would apply it, and this is at

22   your parents' house again, and you would be spraying,

23   how would you hold the wand, the sprayer, for the tank

24   that you were holding, would it be below the waist,

25   above the waist, where would it be in kind of relation
```

```
 1   to your body?
 2          A.    Right.   It would typically, it would be
 3   lower.   But there were times when you would want to get
 4   more of an arc out of it, so you would raise it higher.
 5   Because, I guess from physics you would know if it's up
 6   higher you could squirt it further.   But typically you
 7   would walk with it lower, closer to the ground, where
 8   the weeds were.   But sometimes if I wanted to -- its
 9   distance would only go about eight or ten feet.   So if
10   you really wanted to -- if you got lazy and you really
11   wanted to shoot something further.   Sometimes I would
12   lift it up and you could get it to go further.
13          Q.    And then the spray that's coming out of it,
14   was it kind of a stream or was it a, kind of a better
15   term here, but a wider angle spray?
16          A.    That, early on, it was a stream.   It wasn't
17   until I got to Roswell that I got to what I'd call newer
18   age tanks that had more options.
19          Q.    When you were, when you would go to your
20   parents' house, or you lived at your parents' house at
21   this time?
22          A.    In Palos Heights?
23          Q.    Yes.
24          A.    Yes, on and off, yes.
25          Q.    Would you -- what would the weather be like
```

```
 1         A.    Right.  It, on average, would -- if you
 2   went full force, which I didn't, like sometimes on the
 3   hill you may go full force, you could blow out the whole
 4   tank in ten minutes.  But typically you would spray,
 5   walk, spray, walk, spray, walk.  And so I would say it
 6   would be about 20 minutes, I would think in terms of 20
 7   minutes a tank.
 8         Q.    Okay.  And so if I'm -- I can't remember my
 9   time periods for it.  It was 98 minutes to two hours,
10   was that right, in Roswell?
11         A.    Hour and a half to two, yeah.
12         Q.    Okay.  So it would roughly be, you're
13   refilling it between four and six times?
14         A.    Yes.  Yes.
15         Q.    Okay.
16         A.    And that, of course, can vary, yes.
17         Q.    And then for -- the same question as
18   Illinois.  When you're in Roswell and in Marietta using
19   the tank sprayer, did you find that you were very
20   accurate with it, meaning that you were -- was there a
21   lot of, did you find that there was a lot of unintended
22   death of plants that you did not mean to hit when you
23   would spray in those, Roswell and Marietta?
24         A.    No, I was pretty accurate in this.
25         Q.    You had gotten pretty good at focusing
```

```
 1                        CERTIFICATE

 2   GEORGIA:

 3   CHATHAM COUNTY:

 4             I, Tamela G. Sheeler, Certified Court

 5   Reporter for the State of Georgia, do hereby certify:

 6             That the foregoing deposition was taken

 7   before me on the date and at the time and location

 8   stated on Page 1 of this transcript; that the witness

 9   was duly sworn to testify to the truth, the whole

10   truth and nothing but the truth; that the testimony

11   of the witness and all objections made at the time of

12   the examination were recorded stenographically by me

13   and were thereafter transcribed by computer-aided

14   transcription; that the foregoing deposition, as

15   typed, is a true, accurate and complete record of the

16   testimony of the witness and of all objections made

17   at the time of the examination.

18             I further certify that I am neither

19   related to nor counsel for any party to the cause

20   pending or interested in the events thereof.

21             Witness my hand, I have hereunto affixed

22   my official seal this 24th day of January, 2020, at

23   Savannah, Chatham County, Georgia.

24                      ──── Tamela ────

                         TAMELA G. SHEELER, RPR, CLR,

25                       CCR-6537-8261-3701-4272
```

```
 1                COURT REPORTER DISCLOSURE
 2                Pursuant to Article 8.B. of the Rules and
     Regulations of the Board of Court Reporting of the
 3   Judicial Council of Georgia, I make the following
     disclosure:
 4
                  I am a Georgia Certified Court Reporter.
 5   I am here as an employee of McKee Court Reporting,
     Inc.
 6
                  I am not disqualified for a relationship
 7   of interest under the provisions of O.C.G.A. Section
     9-11-28 (c).
 8
                  McKee Court Reporting, Inc. was contacted
 9   by Golkow Litigation Services to provide court
     reporting services for this deposition.
10
                  McKee Court Reporting will not be taking
11   this deposition under any contract that is prohibited
     by O.C.G.A. 15-14-37(a) and (b).
12
                  McKee Court Reporting, Inc. has no
13   exclusive contract to provide reporting services with
     any party to the case, any counsel in the case, or any
14   reporter or reporting agency from whom a referral
     might have been made to cover the deposition.
15
                  McKee Court Reporting, Inc. will charge
16   its usual and customary rates to all parties in the
     case, and a financial discount will not be given to
17   any party to this litigation, except in circumstances
     as agreed on a case by case basis.
18
19
20
21
22
23   _____ Date: January 24, 2020
24   TAMELA G. SHEELER, RPR, CLR,
     CCR-6537-8261-3701-4272
25
```

```
 1                       DISCLOSURE
 2              Pursuant to Article 10.B of the Rules and
    Regulations of the Board of Court Reporting of the
 3  Judicial Council of Georgia, I make the following
    disclosure:
 4
                GOLKOW LITIGATION SERVICES, is not
 5  disqualified for a relationship of interest under the
    provisions of O.C.G.A. 9-11-28(c).
 6
                GOLKOW LITIGATION SERVICES, was contacted
 7  by the offices of Shook, Hardy & Bacon, LLP to provide
    court reporting services for this deposition.
 8
                GOLKOW LITIGATION SERVICES, will not be
 9  taking this deposition under any contract that is
    prohibited by O.C.G.A. 15-14-37 (a) and (b).
10
                GOLKOW LITIGATION SERVICES, has no
11  exclusive contract to provide reporting services with
    any party to the case, any counsel in the case, or any
12  reporter or reporting agency from whom a referral
    might have been made to cover this deposition.
13
                GOLKOW LITIGATION SERVICES, will charge
14  its usual and customary rate to all parties in the
    case and a financial discount will not be given to any
15  party to this litigation.
16
                This, the 24th day of January, 2020.
17

18

19  _____
    FIRM REPRESENTATIVE
20  GOLKOW LITIGATION SERVICES
21

22

23

24

25
```