# EXHIBIT 9

```
 1              THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                            STATE OF MISSOURI
 2

                                   - - -
 3

 4    EARL NEAL, et al.,            )
                                    )
 5             Plaintiffs,          )
                                    )
 6    v.                            )  Case No. 1722-CC10773
                                    )
 7    MONSANTO COMPANY,             )
                                    )
 8             Defendants.          )

 9

10

11                    TUESDAY, JANUARY 4, 2022

12

13

14               Remote Videotaped Deposition of

15    CRISTIAN TOMASETTI, Ph.D., taken pursuant to notice and

16    conducted at the location of the witness, commencing at

17    9:05 a.m., Eastern Standard Time, on the above date, before

18    Jennifer A. Dunn, Registered Merit Reporter, Certified

19    Realtime Reporter, Registered Professional Reporter, and

20    Certified Court Reporter.

21

                                   - - -
22

23

24                    GOLKOW LITIGATION SERVICES
              P:  877.370.DEPS  |  F:  917.591.5672
25                       deps@golkow.com
```

**Exhibit 9 Page 1**

```
 1              R E M O T E   A P P E A R A N C E S
                         (via Zoom)
 2

 3
           WEITZ & LUXENBERG, PC
 4              BY:   JERRY KRISTAL, ESQUIRE
                jkristal@weitzlux.com
 5              BY:   ROBIN L. GREENWALD, ESQUIRE
                rgreenwald@weitzlux.com
 6              700 Broadway, Floor 5
                New York, New York  10003
 7              Tel:  212.558.5864
 8              BY:   JOSH KRISTAL, ESQUIRE
                BY:   JOSEPH J. MANDIA, ESQUIRE
 9              200 Lake Drive East, Suite 210
                Cherry Hill, New Jersey  08002
10              Tel:  856.755.1115
                   Counsel for Plaintiffs
11
12
           GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP
13              BY:   EMMA C. ROSS, ESQUIRE
                eross@goldmanismail.com
14              BY:   BRIAN T. KARALUNAS
                bkaralunas@goldmanismail.com
15              200 South Wacker Drive
                22nd Floor
16              Chicago, Illinois  60606
                Tel:  312.881.5952
17                 Counsel for Defendant Monsanto Company
18
19
20      ALSO PRESENT:
21      CHRISTOPHER CLEE - Videographer
22
23
24
25
```

**Exhibit 9 Page 2**

```
 1   correct?
 2       A    Not as a Ph.D., no.
 3       Q    Well, not in any capacity, right?
 4       A    Right.  I would have to go to medical school
 5   and -- and do all of that.
 6       Q    Other than what you say a -- an oncologist coming
 7   to you for input on whether to treat a patient or not, are
 8   you ever involved in any other way with an individual cancer
 9   patient?
10       A    Yes.  There are, for example, the -- in the case
11   where what I do in terms of my analysis in algorithms, a
12   cancer is detected and we have done studies and we have
13   detected cancer in patients, which then means that that
14   patient will -- will be diagnosed with cancer and may have
15   to start treatment or undergo surgery or any of those, so
16   those are, again, related to individual patients, of course.
17       Q    Yeah, I'm not asking you -- well, let me see if I
18   understand what you just said.
19            Are you saying that if patient A is a patient of
20   an oncologist, they come to you for some algorithm, they
21   say, here's patient A, I want you to do something and advise
22   me, the doctor, as to what to do?
23       A    So, yes, that is one case.  I was mentioning
24   another case that was slightly different.  In the first
25   case -- and maybe I'll explain.
```

**Exhibit 9 Page 3**

Golkow Litigation Services                                    Page 7

```
 1                In the first case, an oncologist will come to me
 2    and will specifically say, colorectal the cancer, one study
 3    we have been conducted for at this point five years, an
 4    oncologist will come to me, after having performed surgery
 5    on a patient, and he will then the sample of this patient
 6    and after our analysis and the result of our algorithm, this
 7    result, I report this results and based on what the
 8    algorithm says, the patient will undergo said chemotherapy
 9    or not.
10                So I -- I will say -- my understanding is that
11    what you are saying in your very last question is exactly
12    this case.
13                And then I was mentioning that there is another
14    case, which is that there is no oncologist, this is a person
15    been healthy and not knowing to have any cancer and then
16    taking a test that I, let's say contributed to develop, and
17    we provide a score, and based on the result, a patient can
18    be diagnosed having cancer.
19                And so at that point there will be an oncologist
20    taking things from there.
21         Q      Okay.  So let me understand.  The first one --
22         A      Sure.
23         Q      -- you're saying that an oncologist will use an
24    algorithm that you helped develop to make a decision?
25         A      For the first one, the specifics, if we're talking
```

Exhibit 9 Page 4

Golkow Litigation Services                                    Page 8

```
 1   about, say, the colorectal study we have been conducting for
 2   five years with Australia, in that case, I developed the
 3   algorithm.  I didn't contribute to develop the algorithm.  I
 4   developed the algorithm.
 5           And what -- what the score -- what that algorithm
 6   will provide an output after the analysis of the patient's
 7   sample to sequencing, and based on the output that I
 8   provide, the patient will be put under treatment or not.
 9       Q   And that decision to put the patient under
10   treatment or not is not your decision?
11           MS. ROSS:  Object to the form.
12           THE WITNESS:  So it's a little bit delicate
13   to explain because from a -- from a formal point of view, of
14   course, the oncologist has the right to disregard my, you
15   know, the output, the number that I provide.
16           So formally, of course, the oncologist is in
17   charge.  Practically, there's a said trial, and we are, you
18   know, it's -- it's a study that's been conducted for many
19   years and practically overall what the score says is what
20   the oncologist is going to do based on that score.
21   BY MR. KRISTAL:
22       Q   What you're talking about now is in the context of
23   a clinical trial that you're involved in?
24           MS. ROSS:  Jerry.  Sorry, one second, Dr.
25   Tomasetti.
```

**Exhibit 9 Page 5**

```
 1   Hopkins as a -- as a whole, then that -- that is

 2   certainly -- we -- we have some of those patients in some of

 3   our studies.

 4           We don't -- we don't -- I don't -- I don't cover

 5   that patient population as a whole.

 6       Q   Right.  So outside of a clinical trial that may

 7   have some patients from Johns Hopkins, you are not involved

 8   in the individual treatment on a regular basis of cancer

 9   patients, are you?

10              MS. ROSS:  Object to form.

11              THE WITNESS:  So that is not correct.  As I

12   said, because you said outside of a few patients at Johns

13   Hopkins that are under clinical trial.

14              I treat -- like a decision made based on my

15   algorithms to treat is made by regularly on many patients.

16   They are -- what I was saying is that they are not -- a

17   great majority of them are not in the Hopkins population.

18   They are in other cancer centers.

19   BY MR. KRISTAL:

20       Q   Well, it would be illegal for you to be involved

21   in the treatment of a cancer patient, right?

22              MS. ROSS:  Object to form.

23   BY MR. KRISTAL:

24       Q   You're a mathematician.

25       A   No.  It -- I -- I, again, I -- I have to strongly
```

Exhibit 9 Page 6

Golkow Litigation Services                                      Page 11

 1   disagree.  I am involved, as I said, quite often, I

 2   contribute to the decision and then --

 3        Q    And you --

 4        A    -- the medicine today is the combination of --

 5   medicine today, oncology in particular, it's such an

 6   advanced field that when -- when treating a patient, there

 7   are many specialists and experts that come together to

 8   contribute to that decision.

 9             Then, of course, at the end, as I -- as I already

10   said, there is -- the formal decision is made or approved by

11   an oncologist ultimately.

12        Q    Now, in the second context, you're talking about

13   some diagnostic tests that you have contributed to the

14   development of that's used on individual patients?

15        A    Yes.  So, there are several of them that I have

16   contributed to develop and they are applied, you know, in

17   that case not to patients, just in general to help the -- to

18   help the people as a diagnostic tool.

19        Q    Right.  But you're not involved in the treatment

20   of those patients.  Somebody may be using a test you

21   developed, right, but you're not involved?

22                  MS. ROSS:  Object to the form of the

23   question.

24                  THE DEFENDANT:  It seems to me a little bit

25   confusing the way you are saying it because as I said

Exhibit 9 Page 7

Golkow Litigation Services                                Page 12

```
 1   already that I am involved in the treatment in many cases of
 2   patients, but now for this other case which is diagnostic,
 3   by definition that is not a treatment.
 4              So obviously when we are talking about
 5   oncology, it's just about detecting cancer, whether there is
 6   cancer in a person or not.  That has nothing to do with
 7   treatment, not just for me, for anyone involved in -- in
 8   that part.  But that -- that's a separate project, as I
 9   said.
10      Q    When a biopsy's taken from a cancer patient, it's
11   brought to a pathology lab, correct, at Hopkins?
12      A    Actually that, again, depends on the situation.
13   So it's -- I would that it's not -- it's correct that that
14   is the case.
15      Q    You don't get involved with the analysis of a
16   specific patient's tissue, do you?
17      A    Again, that's completely not correct.  I -- I
18   definitely do.
19      Q    Well, you're not a pathologist, are you?
20      A    Again, I think there is the confusion about --
21      Q    It's a simple question.  Are you a pathologist?
22      A    I'm not a pathologist.
23      Q    Outside of your work for Monsanto, have you ever
24   asked to give an opinion about the cause of an individual
25   patient's cancer?
```

Exhibit 9 Page 8

Golkow Litigation Services                                    Page 13

```
 1                        CERTIFICATE

 2              I, Jennifer A. Dunn, Registered Professional

 3    Reporter and Certified Court Reporter, do hereby certify

 4    that prior to the commencement of the examination,

 5    CRISTIAN TOMASETTI, Ph.D., was duly remotely sworn by me to

 6    testify to the truth, the whole truth and nothing but the

 7    truth.

 8                 I DO FURTHER CERTIFY that the foregoing is a

 9    verbatim transcript of the testimony as taken

10    stenographically by me at the time, place and on the date

11    hereinbefore set forth, to the best of my ability via remote

12    Zoom teleconference technology.

13                 I DO FURTHER CERTIFY that I am neither a

14    relative nor employee nor attorney nor counsel of any of the

15    parties to this action, and that I am neither a relative nor

16    employee of such attorney or counsel, and that I am not

17    financially interested in the action.

18

19

20                        [signature: J Dunn]

21                  "/s/JENNIFER A. DUNN"

22                   Registered Merit Reporter

23                   Certified Realtime Reporter

24

25                   Dated:  January 7, 2022
```

Exhibit 9 Page 9