**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax:  202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax:  415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No.:  3:16-md-02741-VC |
| *Karen Delorme-Barton v. Monsanto Company*, 3:18-cv-01427-VC | **DEFENDANT MONSANTO COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. GRAHAM SLACK'S TESTIMONY** |
| | Hearing: |
| | Date:    July 27, 2023 |
| | Time:    10:00 a.m. |
| | Place:   San Francisco Courthouse, Courtroom 4 – 17th Floor |

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................- 1 -

BACKGROUND .......................................................................................................- 2 -

LEGAL STANDARD ................................................................................................- 3 -

ARGUMENT ............................................................................................................- 4 -

    I.    Dr. Slack Opinions Are Sufficiently Reliable Because They Are Based on Generally Accepted Scientific Methodologies That Have Been Peer-Reviewed. .................................................................................................- 4 -

    II.    Plaintiff's Criticisms of Dr. Tomasetti's Methods Are Not A Valid Basis For The Court To Exclude The Opinions Of Dr. Slack. ...........................- 8 -

    III.    Dr. Slack Is Qualified to Opine About the Specific Cause of Plaintiff's Follicular Lymphoma. ......................................................................- 8 -

    IV.    Dr. Slack Is Permitted To Opine About The Risk Factors For Plaintiff's NHL. ...............................................................................................- 9 -

    V.    Dr. Slack Is Permitted to Testify that Glyphosate Use and NHL Incident Rates Are Not Correlated. .................................................................- 11 -

CONCLUSION .......................................................................................................- 14 -

CERTIFICATE OF SERVICE ...............................................................................- 14 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*City of Pomona v. SQM North Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014)........................................................................... 12, 13

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1995) .................................................................................. 4

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ................................................................................... 3, 5, 9

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 595 (1993) ............................................................................................... 4

*Hardeman v. Monsanto Co.*,
    997 F.3d 941 (9th Cir. 2021) ............................................................................. 3, 4

*Lopez v. Wyeth-Ayerst Laboratories*,
    1996 WL 784566 (N.D. Cal. Dec. 13, 1996), *aff'd* ............................................... 5

*Lopez v. Wyeth-Ayerst Laboratories, Inc.*,
    139 F.3d 905 (9th Cir. 1998) .................................................................................. 5

*Messick v. Novartis Pharms. Corp.*,
    747 F.3d 1193 (9th Cir. 2014)................................................................................ 5

*Metabolife Intern., Inc. v. Wornick*,
    264 F. 3d 832 (9th Cir. 2001)................................................................................. 5

*Norsworthy v. Beard*,
    87 F. Supp. 3d 1164 (N.D. Cal. 2015) ............................................................. 9, 13

*Rodriguez v. JLG Indus., Inc.*,
    2012 WL 12882925 (C.D. Cal. Oct. 29, 2012) ..................................................... 12

*U. S. v. Rahm*,
    993 F.2d 1405 (9th Cir. 1993)................................................................................ 8

*Wendell v. GlaxoSmithKline LLC*,
    858 F.3d 1227 (9th Cir. 2014)................................................................................ 8

**Other Authorities**

Federal Rule of Evidence 702 ............................................................................*passim*

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. GRAHAM
SLACK'S TESTIMONY

1

**INTRODUCTION**

2

Plaintiff Karen Delorme-Barton's ("Plaintiff") motion seeks to exclude Monsanto's expert,

3

Dr. Graham Slack, M.D. Dr. Slack, a pathologist, will testify about whether exposure to Roundup

4

specifically caused an injury to Plaintiff. For the most part, Plaintiff's motion consists of a series

5

of misdirected attacks on the methodologies and conclusions of a ***different*** expert, Dr. Cristian

6

Tomasetti. Dr. Slack cites two of Dr. Tomasetti's articles on relevant issues for certain points,

7

among the voluminous other authoritative studies, articles, regulatory findings, and other sources

8

Dr. Slack cites and discusses that further support his conclusions. Although the opinions and

9

conclusions of Dr. Slack may be informed by general studies that find no association between

10

glyphosate use and the risk of developing Non-Hodgkin Lymphoma ("NHL"), his specific opinion

11

rests on facts that are particular to Plaintiff. The methodologies relied upon by Dr. Slack are

12

generally accepted in the scientific field and have been subject to extensive peer-review. Dr. Slack

13

possesses all the necessary qualifications to opine on the subjects which he is designated.

14

Accordingly, the testimony proffered by Dr. Slack is admissible under the federal standards

15

governing expert testimony.

16

Plaintiff makes five basic arguments in support of excluding Dr. Slack's testimony. *First*,

17

Plaintiff argues that Dr. Slack's opinions are not grounded in sound scientific methodology.

18

However, the scientific methodology relied upon by Dr. Slack has been subject to extensive peer-

19

review and is recognized by prominent scientists in the field, including plaintiffs' experts in other

20

Roundup litigation, as generally accepted.

21

*Second*, Plaintiff argues that Dr. Slack cannot rely upon the scientific articles authored by

22

Dr. Cristian Tomasetti (the "Tomasetti articles") to prove specific causation. Plaintiff tries to spin

23

Dr. Slack's use of the Tomasetti articles to say that the articles themselves are based on general

24

population studies, rendering them irrelevant to the issue of specific causation. However, this

25

mischaracterizes Dr. Slack's use of the Tomasetti articles. Dr. Slack used the Tomasetti articles as

26

a basis to form his opinion about whether exposure to glyphosate specifically caused Plaintiff's

27

NHL. His specific causation analysis was based on an individualized inquiry of the particular facts

28

pertaining to Plaintiff.

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. GRAHAM
SLACK'S TESTIMONY

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

1       *Third*, Plaintiff argues that Dr. Slack is unqualified to offer an opinion about the cause of

2 Plaintiff's NHL.  Dr. Slack's background education, experience as a practicing pathologist and

3 professor, and extensive catalogue of publications are concrete proof of his superior knowledge on

4 the cause of lymphomas, like the disease Plaintiff has in this case.

5       *Fourth*, Plaintiff argues that Dr. Slack should be precluded from testifying about the risk

6 factors that contribute to the development of Plaintiff's NHL.  But Dr. Slack's opinion about risk

7 factors is based on the sufficiently reliable Tomasetti articles.  His opinion on risk factors is also

8 key because it provides support to his ultimate conclusion that random genetic mutations are most

9 likely the cause of Plaintiff's NHL.

10       *Finally*, Plaintiff argues that Dr. Slack should be precluded from testing about the inverse

11 correlation reflected by glyphosate's increased usage over the last 40 years and the decreasing

12 incidence of NHL.  However, Plaintiff has presented no legal authority that suggests Dr. Slack

13 should not be permitted to testify on this subject.

14       At bottom, none of Plaintiff's arguments has merit.  Her motion is nothing more than an

15 attempt to deprive the jury of critical context about whether Plaintiff's use of Roundup caused her

16 NHL.  The Court should deny Plaintiff's motion.

17                             **BACKGROUND**

18       Dr. Graham Slack is a practicing pathologist and a professor of pathology who holds

19 advanced degrees in his field.  *See* Declaration of Jed P. White in Support of Defendant Monsanto

20 Company's Response in Opposition to Plaintiff's Motion to Exclude Dr. Graham Slack's

21 Testimony ("White Decl."), Ex. 1, Curriculum Vitae of Dr. Graham W. Slack ("Slack CV").  Dr.

22 Slack holds his physiology degree with honors and his medical doctorate from the University of

23 British Colombia.  *Id.* at 2.  Dr. Slack is currently a Professor in the Department of Pathology and

24 Laboratory Medicine at his alma mater.  White Decl. Ex. 2, 3/28/2023 Report of Dr. Graham W.

25 Slack at 1 ("Slack Report").  He also currently serves as a fellow of the Royal College of Physicians

26 and Surgeons of Canada in General Pathology and is board certified in three different subspecialties

27 of pathology: Anatomical Pathology, Clinical Pathology, and Hematopathology.  *Id.*  Over the

28 course of his career, Dr. Slack has published extensively in the field of pathology, co-authoring

- 2 -

over 70 original research articles which have been heavily cited in peer-reviewed journals.  White Decl. Ex. 1, Slack CV at 2-11; Ex. 2, Slack Report at 1.  He has extensive knowledge of the diagnosis and pathologic assessments of lymphomas, leukemias, and lymphoproliferative disorders, having spent the last 14 years of his clinic practice exclusively studying this science. White Decl. Ex. 2, Slack Report at 1.

Monsanto disclosed Dr. Slack as a specific causation expert who will opine on the specific cause of Plaintiff's specific type of NHL, follicular lymphoma.  Dr. Slack will explain that Plaintiff's follicular lymphoma, like the vast majority of other patients with lymphomas, was most likely caused by random genetic alternations in cells that have accumulated over her lifetime.  *Id.* at 5-6.  Dr. Slack will also opine on the risk factors that are associated with the development of lymphoma, including old age, male sex, obesity, race/ethnicity, positive family history, immunodeficiency, and others.  *Id.* at 5. Dr. Slack will explain that although these risk factors may contribute to the development of lymphoma, most patients, including Plaintiff, do not have these risk factors.  *Id.* .  This supports Dr. Slack's expert opinion on specific causation in this case:

> [T]he data available regarding formulated glyphosate do not provide evidence for a compelling association with NHL overall or with follicular lymphoma in particular, or with the development of the genetic alterations that led to Ms[.] Delorme-Barton's cancer, and nothing in her presentation, clinical course, or pathology suggests that glyphosate caused her disease.  As a result and after reviewing her medical records and the medical literature, I find no evidence to support glyphosate exposure as the cause of her lymphoma.

*Id.* at 17.

### LEGAL STANDARD

"Under Federal Rule of Evidence 702, expert testimony must be reliable to be admissible." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 580 (1993)).  "Scientific evidence is reliable when 'the principles and methodology used by an expert are grounded in the methods of science.'"  *Id.* (quoting *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003)). When determining reliability, district court judges can consider the following non-exclusive factors: (1) "whether the theory or technique

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. GRAHAM SLACK'S TESTIMONY

employed by the expert is generally accepted in the scientific community;" (2) "whether it's been subjected to peer review and publication;" (3) "whether it can be and has been tested;" and (4) "whether the known or potential rate of error is acceptable." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (citing *Daubert*, 509 U.S. at 593-95). "This inquiry is flexible and should be applied with a liberal thrust favoring admission." *Hardeman*, 997 F.3d at 960 (internal citations, quotation marks, and alterations omitted).

## ARGUMENT

## I.     Dr. Slack Opinions Are Sufficiently Reliable Because They Are Based on Generally Accepted Scientific Methodologies That Have Been Peer-Reviewed.

Plaintiff argues that Dr. Slack should not be permitted to testify because some of the studies he relies on to form his opinions about whether Roundup specifically caused Plaintiff's NHL are "scientifically and methodologically unsound."  Pl. Mot. at 3.  Plaintiff also claims that the methodology underlying Dr. Slack's opinions cannot be tested as support for her argument that the methodology is unreliable.  However, Plaintiff cannot conclude that the studies relied upon by Dr. Slack are generally unreliable based on a handful of articles that criticize the methodology.  Federal Rule of Evidence 702 requires a more thorough examination of the studies underlying an expert's opinion before determining whether the opinion is based on sufficiently reliable scientific principles.  An examination of the relevant inquiry reveals Plaintiff's challenge on this basis is insufficient.[1]

Under Federal Rule of Evidence 702, a court must engage in a two part analysis to determine whether an expert's testimony is admissible: "(1) to determine reliability, the Court must decide whether the expert testimony reflects or pertains to scientific knowledge; and (2) to determine relevance, the Court must decide whether the expert testimony logically advances a material aspect

[1] Plaintiff's motion notes that "Dr. Tomasetti's conclusion—that over 95% of mutations in NHL are random—is heavily criticized."  This statement, and any other arguments pertaining to it, is irrelevant.  The pertinent inquiry is focused only on whether the methodology underlying the expert opinion is reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 595 (1993) ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").  Dr. Slack provides his own opinion on specific causation, relying on the Tomasetti articles as a basis for that opinion.  To the extent Plaintiff's seek to exclude the conclusions of Dr. Tomasetti, those arguments are irrelevant to this specific motion to exclude.

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

- - 4 - -

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

of the proposing party's case." *Lopez v. Wyeth-Ayerst Laboratories*, 1996 WL 784566, at *2 (N.D. Cal. Dec. 13, 1996), *aff'd* sub nom. *Lopez v. Wyeth-Ayerst Laboratories, Inc.*, 139 F.3d 905 (9th Cir. 1998).    In addition to the four factors provided by the Court in *Daubert* for determining reliability,[2] another key inquiry is whether the studies which form the basis for an expert's opinion were conducted independently, prior to the initiation of litigation.   *Metabolife Intern., Inc. v. Wornick*, 264 F. 3d 832, 841 (9th Cir. 2001).

Dr. Slack's opinions in this case are relevant because they support Monsanto's position on a key question in the case: whether Plaintiff's exposure to glyphosate caused her specific type of NHL.   As the Ninth Circuit has previously recognized, expert testimony is "relevant if the knowledge underlying it has a valid connection to the pertinent inquiry."   *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196–97 (9th Cir. 2014) (finding the trial court "applied too high a relevancy bar" when excluding an expert's opinion about specific causation, even though the expert only testified about a substantial factor that contributed to cause the plaintiff's injury and not the direct cause).

Plaintiff claims that Dr. Slack provides no evidence that age and race were potential risk factors for Plaintiff's development of NHL, and therefore his testimony about risk factors is irrelevant.   Pl. Mot. at 11.   Plaintiff sets the relevance bar far too high.   Dr. Slack's opinion on risk factors is that they increase the risk of a person developing lymphoma.   White Decl. Ex. 2, Slack Report at 5.   However, most patients who develop lymphoma do not have the risk factors.   *Id.*   This opinion, therefore, is relevant to his conclusion that although there was no evidence that Plaintiff's risk factors caused her follicular lymphoma, this should not come as a surprise because most cases of lymphoma are believed to be caused by random chance.   *Id.*   Dr. Slack's opinion on risk factors, that Plaintiff's older age increased her risk of a random genetic mutation causing NHL, is obviously relevant to the specific causation question in this case, and therefore Plaintiff's challenge on a relevance basis is meritless.

---

[2] The Court in *Daubert* made clear that this is a flexible inquiry, and the factors provided by the Court for determining reliability are not exhaustive nor required in all cases.   *Daubert*, 509 U.S. at 594.

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

1   Plaintiff's next argument is that Dr. Slack's opinions are not based on generally accepted,

2   reliable scientific methodologies pertains to the Tomasetti articles.  See White Decl. Ex. 3, Cristian

3   Tomasetti & Bert Vogelstein, *Variation in cancer risk among tissues can be explained by the*

4   *number of stem cell divisions*, 347 (6217) SCIENCE 78, Jan. 2, 2015 ("Tomasetti 2015"); White

5   Decl. Ex. 4, C. Tomasetti, L. Li, and B. Vogelstein, *Stem cell divisions, somatic mutations, cancer*

6   *etiology, and cancer prevention*, 355 SCIENCE 6331, Mar. 24, 2017 ("Tomasetti 2017").  First, it is

7   clear that the Tomasetti articles are generally accepted in the scientific community.  The scientific

8   community widely agrees that random genetic mutations can cause cancer, as evidenced by the

9   opinions of other plaintiffs' experts in other Roundup cases.  Dr. Dennis Weisenburger, a specific

10  causation expert previously disclosed in the MDL Roundup litigation, has testified in deposition

11  that there is "an emerging understanding that random genetic mutations accounts for a lot of non-

12  Hodgkin's lymphoma . . . without any external cause."  *See* White Decl. Ex. 5, 8/3/2021

13  Weisenburger Depo in *Bailey v. Monsanto*, at 70:18-72:7.[3]

14  This breakthrough research expands on the principle that random genetic mutations can

15  cause cancer by quantifying the prevalence of random mutations in cancer etiology across a broad

16  spectrum of cancers.  *See* White Decl. Ex. 4, Tomasetti 2017.  Because specific causation experts

17  testifying for plaintiffs in other Roundup litigation have specifically validated and accepted the

18  Tomasetti articles, there is no dispute that they are not generally accepted.

19  Second, the Tomasetti articles have been subject to peer-review, which further supports

20  their scientific reliability.  The Tomasetti articles have been published in the world's leading peer-

21  [3] In addition to Dr. Weisenburger, there are several other instances of expert witnesses who were

22  designated by plaintiffs in Roundup litigation testifying to the acceptance of random genetic
    mutations in human cells being a cause of cancer.  *See* White Decl. Ex. 6, 5/17/2021 Weisenburger
    Depo in *Stephens v. Monsanto*, at 52:10-15 (admitting that "cancer can develop rather

23  spontaneously . . . through accumulated random mutations over time"); White Decl. Ex. 7, 11/4/19
    Weisenburger Depo in *Russo v. Monsanto* at 71:1-22 (agreeing with the "generally accepted idea"

24  that there are random mutations that occur as our cells replicate on a minute, hourly, and daily basis,
    and admitting that age is a risk factor at least in part because we are exposed to genetic hits or errors

25  that occur as a result of environmental exposures, and some of us may have heritable gene mutations
    that further our risk forgetting cancer over time; White Decl. Ex. 8, 9/9/2021 *Stephens* Trial Tr. at

26  85:19-86:3 (Plaintiff's expert, Dr. Barry Boyd, testifying that cancers can result for DNA
    replication errors); White Decl. Ex. 9, 10/31/2022 Bender Depo. in *Freiwald v. Monsanto* at 22:1-

27  24 ("I don't think at this point anybody would take exception with" the "three variables" of
    "[h]eredity, environment and random events" identified by Dr. Tomasetti as three ways cancer-

28  causing mutations can occur).

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. GRAHAM
SLACK'S TESTIMONY

reviewed medical and scientific journal and co-authored by top scientists in the field, further demonstrating their general acceptance. *See id.*; *see also* White Decl. Ex. 10, M. Song, B. Vogelstein, E. L. Giovannucci, W. C. Willet, and C. Tomasetti, *Cancer prevention: Molecular and epidemiologic consensus*, 361 SCIENCE 6409, Sep. 28, 2018 (explaining that the "consensus" view among experts in cancer causation is that random mutations play a major role, as Dr. Tomasetti's research has shown). The premiere peer-reviewed journals that have featured the Tomasetti articles include *Science*, *Nature*, the *New England Journal of Medicine*, and the *Proceedings of the National Academy of Sciences*. Dr. Tomasetti himself has testified many times to the fact that his cancer research has been subject to peer-review. *E.g.*, White Decl. Ex. 11, 11/3/2022 *Ferro* Trial Tr. at 2396 (testifying that his research has bene published in peer-reviewed journals, including his research on the causes of mutations that lead to NHL); *see also* White Decl. Ex. 12, 11/4/2021 *Stephens* Trial Tr. at 41:13-42:11 (another expert for Monsanto, Dr. Ran Reshef, testified that Dr. Tomasetti's work on cell replication and cancer causation is "considered seminal work in the field of cancer research").

Finally, Monsanto had no contact with Dr. Tomasetti until well after the Roundup litigation began. Indeed, most of the substance of the Tomasetti's articles was published before the MDL litigation began on July 27, 2016. *See* White Decl. Ex. 3, Tomasetti 2015. Because Tomasetti's research was completed independently of Monsanto's use of it in this litigation, its reliability as a methodology for expert opinion is further cemented.

Plaintiff's citations to articles critical of the Tomasetti articles are insufficient to show that they are not reliable. Pl. Mot. at 4-5. The fact that Plaintiff has found criticisms of the Tomasetti articles, a normal and expected outcome of the scientific process, is not an indication that they are not scientifically reliable. In any event, Plaintiff is free to pursue such criticisms on cross-examination, as prior Roundup plaintiffs have done.

The Tomasetti articles were completed and prepared independent of this litigation, and the methodology has been generally accepted and peer reviewed by other prominent scientists in the field, including experts testifying on behalf of plaintiffs in other Roundup litigation. Accordingly,

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. GRAHAM SLACK'S TESTIMONY

Dr. Slack's reliance upon the Tomasetti articles when forming his opinions was proper because they are sufficiently reliable.

## II.     Plaintiff's Criticisms of Dr. Tomasetti's Methods Are Not A Valid Basis For The Court To Exclude The Opinions Of Dr. Slack.

Plaintiff next argues that Dr. Slack's conclusion that glyphosate did not cause Plaintiff's NHL is flawed insofar as it relies on Dr. Tomasetti, because the latter's views are "only applicable to population groups, not individuals," and he is "not aware of any scientific way to attribute a specific mutation to a specific cause." Pl. Mot. at 7-8. This argument is an utter red herring, and fails as a critique of Dr. Slack's specific causation opinions, because it is not Dr. Slack's expert assignment, nor Defendant's burden in this litigation, to "attribute[] a specific mutation to a specific cause." Pl. Mot. at 8. Defendant's position, to which Dr. Slack lends his expert support, is that Plaintiff cannot meet her burden to show glyphosate is the cause of her NHL—regardless of what is the specific cause of any specific mutation in her system—because as a matter of scientific consensus and his own clinical experience, Dr. Slack knows that glyphosate is not a carcinogen. Accordingly, Plaintiff's argument on this issue is insufficient to preclude Dr. Slack's specific causation testimony.

## III.     Dr. Slack Is Qualified to Opine About the Specific Cause of Plaintiff's Follicular Lymphoma.

Plaintiff's next argument attempts to discard Dr. Slack's robust qualifications to testify on the issue of specific causation. While a witness must be qualified according to Rule 702 to offer an expert opinion, "[t]he inquiry is 'flexible,' and . . . should be applied with a 'liberal thrust' favoring admission." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2014). Plaintiff's challenge is based on the notion that Dr. Slack "lacks the requisite specialized training, knowledge, and experience to offer expert testimony that random genetic mutations were the sole cause of Plaintiff's follicular lymphoma." Dr. Slack clearly possesses more knowledge than the average layman on this subject, and his testimony will assist the jury determine the complex causation issues involved in this case. *See U. S. v. Rahm*, 993 F.2d 1405, 1412 (9th Cir. 1993) (recognizing that "helpfulness to the jury is the central concern of [Rule] 702" and that the pertinent

- - 8 - -

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

inquiry is "whether the expert testimony improperly addresses matters within the understanding of the average juror").

Dr. Slack has clearly established that he possesses the necessary qualifications to testify on the issue of specific causation. His background highlights his expertise and training in the field of pathology. As a professor of pathology at a well renowned university in British Colombia and a practicing pathologist for the last 20 years, he has been primarily focused on the "pathological assessment of lymphomas, leukemias, and lymphoproliferative disorders." White Decl. Ex. 2, Slack Report at 1. In his own words, pathology "is the medical specialty that bridges clinical medicine and basic science and focuses on elucidating the causes and effects of disease within the human body." *Id.* at 2 (emphasis added).

Plaintiff's attempt to put a spin on what is required for an expert to be qualified under Rule 702 by proffering an argument that "Dr. Slack is not qualified to offer his conclusion that Plaintiff's follicular lymphoma was caused by random genetic mutations." Pl. Mot. at 11. However, this is not the proper inquiry. Dr. Slack is obviously qualified to offer an opinion about specific causation because of his superior knowledge on the subject–he clearly understands the complex nature of the science behind cancer causation compared to the average layman. Any argument that he has not performed a particular study or reviewed a specific type of data is only relevant to the amount of weight given to his testimony, not its admissibility. *See Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1183–84 (N.D. Cal. 2015) ("Disagreements with other experts and witnesses, or differences in the experts' amounts of experience, go to the weight of [the expert's] testimony, not its admissibility. Accordingly, Plaintiff's attempt to exclude Dr. Slack's testimony on the basis that he is not qualified fails.

## IV.    Dr. Slack Is Permitted To Opine About The Risk Factors For Plaintiff's NHL.

Plaintiff's next argument is that Dr. Slack doesn't have a sufficient understanding of or evidence for his opinion regarding certain risk factors that may have had an impact on the development of her NHL, and therefore this opinion is irrelevant. This is yet another attempt by Plaintiff to impose additional requirements on expert witness testimony that are outside the parameters of *Daubert* and Rule 702.

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

1   Plaintiff's primary argument for excluding Dr. Slack's opinion on risk factors is that Dr.

2   Slack cannot produce any evidence that Plaintiff had certain risk factors that caused her specific

3   type of NHL, rendering his testimony unreliable.  Pl. Mot. at 11-12.  As already explained, the

4   studies Dr. Slack relied upon for his opinion regarding risk factors are clearly reliable according to

5   the standards set forth in Rule 702.  *See supra* at 9–11.

6   Plaintiff bears the burden of proving glyphosate was the specific cause of her follicular

7   lymphoma in this case.  Dr. Slack's opinion is that Plaintiff's exposure to glyphosate through her

8   Roundup usage *did not* cause the development of her follicular lymphoma, which is supported by

9   his review of the pertinent scientific data on this subject, including data about risk factors.

10   Q:   Do you have an opinion as to what caused plaintiff Karen Delorme-Barton's

11        follicular lymphoma?

12   A:   I have an opinion of what didn't . . . [i]n all likelihood her lymphoma was

13        due to random chance.

14   White Decl. Ex. 13, 4/25/2023 Deposition of Dr. Graham Slack at 116:23-117:4 ("Slack Dep.").

15   According to Dr. Slack, risk factors are used to identify trends of an increased risk for developing

16   lymphoma and leukemia.  White Decl. Ex. 2, Slack Report at 5; White Decl. Ex. 13, Slack Dep. at

17   171:18-172:15.  As he specifically notes in his expert report for this case: "most patients who

18   develop lymphoma do not have most of these risk factors."  White Decl. Ex. 2, Slack Report at 5.

19   Rather, most cases of lymphoma and leukemia are "believed to be due to random chance."  *Id.*;

20   Slack Dep. at 117:1-4.   Plaintiff misunderstands the purpose of Dr. Slack's opinions on the risk

21   factors.  Rather than discussing the risk factors to highlight a specific factor that affirmatively

22   caused Plaintiff's NHL, Dr. Slack highlights the risk factors to support his conclusion regarding

23   Plaintiff's case.

24

25   Random replicative errors in DNA are most often acquired during stem cell

26   division and accumulate sequentially over the course of a lifetime, with the risk for
     developing cancer strongly correlated with the total number of divisions of the
     normal self-renewing non-cancerous stem cells that maintain the homeostasis of the

27   immune system.  They are the likely driving force behind the vast majority of the

28

- - 10 - -

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. GRAHAM
SLACK'S TESTIMONY

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

genetic mutations underlying lymphomas . . . with external/environmental factors having little to no impact.

White Decl. Ex. 2, Slack Report at 5-6.  After a careful review of the pertinent medical literature and scientific studies, Dr. Slack found no evidence of an association to support glyphosate exposure, an environmental risk factor, as the cause of Plaintiff's NHL.  *Id.* at 5-6, 17.  Dr. Slack's opinion on what specifically caused Plaintiff's NHL does not point to a particular environmental risk factor that definitively caused Plaintiff to have an increased risk of developing follicular lymphoma.  This is because the relevant scientific data relied on by Dr. Slack in forming his opinion does not reflect a precise trend of the correlation between a person's exposure to environmental risk factors, like glyphosate, and cases of lymphoma.  Ex. B to Plaintiff's Motion, *Tomasetti*, Stem Cell Divisions, Somatic Mutations, Cancer Etiology, and Cancer Prevention at 5 ("[D]ata demonstrate[s] that the correlation between cancer incidence and the number of stem cell divisions in various tissues cannot be explained by peculiarities of the U.S. population or its environment . . . as would be expected for a fundamental biological process such as stem cell divisions.")  The lack of a precise trend supports Dr. Slack's opinion that random genetic mutations are the most likely cause of Plaintiff's NHL, particularly due to the relevant risk factors that increased her risk.  *See* White Decl. Ex. 2, Slack Report at 17.

Moreover, Plaintiff presents no evidence to support her blanket assertion that such an opinion is irrelevant or risks confusing the issues or misleading the jury.  Dr. Slack's testimony about risk factors and how they relate to the cause of her NHL is consistent with and provides support to his ultimate conclusion on what specifically caused Plaintiff's follicular lymphoma—random genetic mutations.  It is clearly relevant to this case.  Contrary to Plaintiff's assertions, if prohibited from opining on this subject, Dr. Slack's testimony may run the risk of confusing the jury on the specific causation issues in this case.  Accordingly, Plaintiff's argument for excluding this testimony should be rejected.

**V.     Dr. Slack Is Permitted to Testify that Glyphosate Use and NHL Incident Rates Are Not Correlated.**

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

1    Plaintiff's final challenge to Dr. Slack's testimony attempts to exclude testimony that

2    compares Roundup usage to U.S. population rates of developing NHL because there is no

3    correlation between the increased use of Roundup over the last forty (40) years in the United States

4    and the decreasing rates of NHL, particularly in the last fifteen (15) years.  *See* White Decl. Ex. 2,

5    Slack Report at 8-9. Plaintiff claims that such testimony is based on unreliable, speculative data

6    from the Surveillance, Epidemiology and End Results ("SEER") program, the most comprehensive

7    database of cancer diagnoses in the United States population.  *See* White Decl. Ex. 3, Tomasetti

8    2015 at 79.  SEER is part of the National Cancer Institute ("NCI").

9    Plaintiff argues that Dr. Slack's opinion on the relationship between glyphosate usage rates

10   and NHL rates in the United States is not based on scientific data from all fifty (50) states.  Plaintiff

11   asserts that because only about half of the states provide cancer data to SEER, Dr. Slack must be

12   precluded from offering this opinion because it is too speculative to say that the inverse relationship

13   between glyphosate usage and NHL rates in the United States leads to the conclusion that Roundup

14   does not cause NHL.  It is important to recognize that nowhere in Dr. Slack's expert report does he

15   state that due to evidence of the increasing trend in glyphosate usage and the decreasing trend of

16   NHL in the United States, Roundup does not cause cancer, despite Plaintiff's inferences suggesting

17   otherwise.  Pl. Mot. at 12 ("Dr. Slack purports to show that Roundup does not cause NHL by

18   comparing glyphosate use in the United States to new cases of NHL in the U.S."); Pl. Mot. at 13

19   ("In essence, Dr. Slack attempts to argue that Roundup is not causative of NHL because, if it were,

20   the rate of NHL would increase as the volume of glyphosate applied increased.").  Dr. Slack merely

21   points out the two inverted trends as background information that has led to glyphosate receiving

22   "considerable attention within the scientific literature and from a variety of regulatory bodies."

23   White Decl. Ex. 2, Slack Report at 8-9.

24   Even if Dr. Slack's reference to the SEER study considered an opinion on whether

25   glyphosate generally causes NHL, Plaintiff's challenge still falls short.  As recognized by the same

26   Court cited by Plaintiff for the proposition that Dr. Slack's opinion on this issue is too speculative

27   to be admissible, "absolute certainty is not required" for an expert to offer an opinion.  *Rodriguez

28   v. JLG Indus., Inc.*, 2012 WL 12882925, at *6 (C.D. Cal. Oct. 29, 2012).  The case of *City of*

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. GRAHAM
SLACK'S TESTIMONY

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

1   *Pomona v. SQM North Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014) is particularly instructive on this

2   issue.  The Court in *City of Ponoma* recognized that the "existence of ongoing research . . . does

3   not necessarily invalidate the reliability of expert testimony." *Id.* at 1044.  A scientific methodology

4   that is subject to "further testing and refinement" may be generally accepted and sufficiently

5   reliable. *Id.*  The SEER study is ongoing, and every year it continues to gather new data on cancer,

6   as evidenced by Plaintiff's acknowledgment that the study's volume of cancer data has increased

7   from "very few states" at its inception to "just over 20 states" as of 2023.  Pl. Mot. at 14.  Plaintiff

8   provides no other evidence that the SEER data is unreliable (such as a lack of general acceptance,

9   inability to be tested, high rate of error, or lack of peer-review).  Absent any additional argument

10  that the SEER study is unreliable, Plaintiff's argument for excluding Dr. Slack's opinions on this

11  subject is a challenge to the weight that should be given to the testimony, not its admissibility.  *See*

12  *Norsworthy*, 87 F. Supp. 3d at 1183–84.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MONSANTO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DR. GRAHAM
SLACK'S TESTIMONY

## **CONCLUSION**

For the reasons set forth above, the Court should deny Plaintiffs' Motion to Exclude Dr. Graham Slack's Testimony.

Dated:  July 14, 2023                           Respectfully submitted,

                                                /s/ *Jed P. White*
                                                Jed. P. White
                                                Attorney for Defendant Monsanto Company

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of July, 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                                /s/ *Jed P. White*
                                                Attorney for Defendant Monsanto Company

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726