Robin Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: (212) 558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Karen Delorme-Barton v. Monsanto,*<br>3:18-cv-01427-VC | **PLAINTIFF'S REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. JOHN MURPHY, PH.D.** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on a date and time set by the above-captioned court, or as otherwise ordered by District Judge Vince Chhabria, Plaintiff will and hereby moves to Exclude the Opinions and Testimony of Monsanto Company's Proposed Expert Dr. John Murphy, Ph.D.

This reply in support of Plaintiff's motion to exclude the testimony of Dr. John Murphy is based on this supporting memorandum, all pleadings and papers on file in this matter, and such further oral and documentary evidence and papers as the Court may consider at the time of the hearing.

Dated July 28, 2023                                         Respectfully submitted,

                                         By:   */s/ Robin L. Greenwald*

Robin L. Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

# INTRODUCTION

In Defendant Monsanto Company's ("Monsanto's") Opposition to Plaintiff Karen Delorme-Barton's ("Plaintiff's") Motion to Exclude Testimony of John Murphy, Ph.D., ("Monsanto's Opposition") Monsanto discusses the mandate underlying Dr. Murphy's report, laying out 6 bullet points: 5 points regarding the marketing of Roundup and safety studies and guidelines applicable to Roundup and glyphosate, and a sixth final point addressing the 'exposure/doses of glyphosate potentially experienced by the Plaintiff and compare the same to limits/thresholds mentioned above.' Monsanto's Opposition at 2. While Plaintiff disagrees with Dr. Murphy's conclusions under the first 5 bullet points, Plaintiff does not intend to make these portions of Dr. Murphy's report part of the present *Daubert* motion. Instead, in Plaintiff's *Daubert* Motion to Exclude the Opinions and Testimony of Monsanto Company's Proposed Expert Dr. John Murphy, Ph.D. ("Plaintiff's Motion"), Plaintiff only seeks the exclusion of Dr. Murphy's opinion regarding the 'exposure/doses of glyphosate potentially experienced by Plaintiff.' Plaintiff's argument on this point is twofold: 1) based on the complete lack of standards, controls or any quantifiable measurements in Dr. Murphy's observation of the Dial N' Spray hose attachment, Plaintiff asks the Court to exclude Dr. Murphy's opinions and testimony regarding whether the Dial N' Spray hose attachment could produce driftable droplets; and 2) based on Dr. Murphy's arbitrary rejection of the Plaintiff's exposure testimony and his unreliable method for independently generating his own exposure data, Plaintiff asks the Court to exclude Dr. Murphy's opinion regarding the Plaintiff's exposure in its entirety.

# ARGUMENT

**I.     Dr. Murphy's Observations of the Dial N' Spray Hose Attachment Lack Standards, Controls, and any Quantifiable Measurement.**

Contrary to Monsanto's argument, Monsanto's Opposition at 5, Plaintiff is not asking this Court to reject Dr. Murphy's observations of the Dial N' Spray hose attachment in favor of a hypothetical perfect test. Instead, Plaintiff argues that Dr. Murphy's observations are deficient in that they do not incorporate any effort to produce a quantifiable answer to the question of whether the Dial N' Spray hose attachment produces driftable droplets. Dr. Murphy himself explained how he could have reliably tested the Dial N' Spray hose attachment. He could have conducted his observations in a controlled lab environment. He could have added fluorescent dye to the discharged liquid. He could have shrouded the discharge area. And he could have used ultraviolet light and a microscope to make a quantitative determination of whether the sprayer produces driftable droplets. Dr. Murphy took none of those steps in testing the Dial N' Spray hose attachment. Plaintiff's Motion at 3-4. Instead of using any of the testing protocols he described, Dr. Murphy quite literally took the Dial N' Spray outside once[1] and eyeballed it.[2] Dr. Murphy's observations and conclusions regarding the Dial N' Spray hose attachment do not fall within the range of accepted standards governing how scientists conduct their research and reach their conclusions, and as such the Court should exclude them.

## II. Dr. Murphy Rejected the Plaintiff's Testimony and Generated Unreliable Data to Produce his Exposure Estimate.

Dr. Murphy did not solely rely on the Plaintiff's testimony to calculate his estimate of her Roundup exposure, but instead used her testimony to find Google Earth images, which he then used to generate data that significantly diverged from the Plaintiff's exposure testimony. Dr.

---

[1] Dr. Murphy conducted his single set of observations outdoors "at a rural property." (Plaintiff's Motion, Exhibit A at 110:18-111:22).

[2] When asked whether he recorded any results of his observations of the Dial N' Spray hose attachment, Dr. Murphy replied, "visually only." (Plaintiff's Motion, Exhibit A at 107:1-108:2).

Murphy explained that he used Google Earth images to generate exposure data because he did not think that the Plaintiff was in a better position than he was in determining how much Roundup she sprayed. None of the above appears to be the subject of serious dispute between the parties, as Dr. Murphy's rejection of the Plaintiff's exposure testimony – as well as his rationale for doing so – is described clearly and extensively in Monsanto's Opposition. This Court should have no confidence that data Dr. Murphy generated is accurate, as Google Earth images he used to measure landscaping features were taken decades after the Plaintiff sprayed Roundup at the properties. As such, Dr. Murphy's exposure calculations are not the product of reliable principles and methods, and this Court should exclude them in their entirety.

It is undisputed that Dr. Murphy did not simply use the Plaintiff's own account of her Roundup usage, but instead used, and in fact substituted, Google Earth images to generate data that he then used as the basis for his exposure analysis. Monsanto's Opposition states, '**[t]o determine Ms. Delorme-Barton's daily dose of glyphosate**, given that she was uncertain about the volume of solution she used, **Dr. Murphy estimated the square foot area based on** Ms. Delorme-Barton's testimony and **Dr. Murphy's analysis of "photos from the exhibit set, from Google Earth Pro and from publicly available real estate sites that show the property."** Monsanto's Opposition at 6 (emphasis added). It is further undisputed that some of the data Dr. Murphy generated from Google Earth images diverges from the Plaintiff's account of her Roundup usage: Monsanto's Opposition states that "**[h]is estimates** are consistent with Ms. Delorme-Barton's testimony for the Marietta, GA and Savannah, GA properties, **but vary from her recollected testimony for the Palos Heights, IL and Roswell, GA properties.**" *Id*. (emphasis added).

As Monsanto's Opposition lays out through extensive direct quotations of Dr. Murphy's deposition, Dr. Murphy did not believe that the Plaintiff was in a better position than himself in reporting the extent of her Roundup usage, and Dr. Murphy arrived at this conclusion based on his own experience of having a faulty memory,[3] and on conclusions drawn from psychology research falling well outside of Dr. Murphy's expertise as an industrial hygienist.[4] Finally it is undisputed that several of the Google Earth images Dr. Murphy used to calculate the dosage were taken long after the Plaintiff sprayed Roundup at the property. With regards to the Palos Heights property, the Plaintiff sprayed Roundup at that address from 1976 to 1986, while the Google Earth image that Dr. Murphy used as the basis for his exposure calculation was generated in 2013. Plaintiff's Motion, Exhibit A at 68:8-69:13. Dr. Murphy had not reviewed any photograph showing the landscaping at the Palos Heights address between 1976 and 1986 and he refused to accept Plaintiff's account of it, and he did not know if the Plaintiff had reviewed the 2013 Google Earth image to determine whether it was an accurate representation of the landscaping between 1976 and 1986. *Id.* at 70:14-71:2. His testimony about Plaintiff's exposure estimates are unreliable and inadmissible.

---

[3] Dr. Murphy stated, "I'm not questioning her creditability. **I do know that people sometimes have difficulty recalling precisely how much they used**. I use Roundup myself, and **if you ask me, you know, what was the typical volume that I used last summer when I was spraying, I couldn't tell you**. And I see this all the time. So, you know, I -- I did an analysis based upon the square footage. But I do say in the report that if – if the volume that she stipulates is accurate, and, again, it's not -- it's not up to disparage her. I'm not suggesting she was untruthful, simply that **recalling these types of particulars is not that easy necessarily**." Monsanto's Opposition at 8-9 (emphasis added).

[4] Dr. Murphy stated, "Well, as a starting point, **in research involving individuals' recollections of their past uses of products and their exposures, the abundance of the literature indicates that people's recollections are very, very poor**, and they tend to overstate their exposures. Particularly when they are ill with a condition that they attribute to their exposure. So that's the starting point as a foundational idea." Monsanto's Opposition at 10 (emphasis added).

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiff's motion and exclude Dr. Murphy's opinions.

Dated July 28, 2023

Respectfully submitted,

By:   */s/ Robin L. Greenwald*
Robin L. Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of July 2023, a copy of the foregoing was filed with the Clerk of the Court through CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Robin Greenwald*

PLAINTIFF'S REPLY IN SUPPORT OF DAUBERT MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. JOHN MURPHY, PH.D.