Robin Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: (212) 558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 <br><br> Case No. 3:16-md-02741-VC <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. WILLIAM JOHNSON, PH.D., M.S.** |
| This document relates to: <br><br> *Karen Delorme-Barton v. Monsanto,* 3:18-cv-01427-VC | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on a date and time set by the above-captioned court, or as otherwise ordered by District Judge Vince Chhabria, Plaintiff will and hereby moves to Exclude the Opinions and Testimony of Monsanto Company's Proposed Expert Dr. William Johnson, Ph.D., M.S.

This reply in support of Plaintiff's motion to exclude the testimony of Dr. William Johnson, ECF No. 24 ("Motion"), is based on this supporting memorandum, all pleadings and papers on file in this matter, and such further oral and documentary evidence and papers as the Court may consider at the time of the hearing.

Dated July 28, 2023                                Respectfully submitted,

                                        By:    */s/ Robin L. Greenwald*

Robin L. Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

**INTRODUCTION**

Defendant Monsanto Company ("Monsanto") ignores a substantial number of Plaintiff Karen Delorme-Barton's ("Plaintiff's") arguments supporting the exclusion of Dr. William Johnson's opinions and testimony in its Opposition brief, ECF No. 34 ("Opposition" or "Opp."). As Monsanto does not address these arguments, it can be presumed that it admits, *inter alia*, the following: (1) Dr. Johnson is biased as the success of his department and scholarship at Purdue is dependent on funding from chemical companies, particularly Monsanto and Bayer; (2) Dr. Johnson is not qualified to and thus may not properly offer opinions based on the EPA's assessment of glyphosate and glyphosate-based herbicides (GBHs) or opinions on how the EPA performs such assessments; and (3) Dr. Johnson is not qualified to and thus may not properly offer any toxicological opinions, including but not limited to opinions on lethal dose and the safety of glyphosate.

Monsanto attempts to frame Dr. William Johnson's opinions as addressing nothing more than "logical and necessary weed management practices"; however, his own deposition testimony and report show that he intends to veer into outright credibility assessments, which invade the jury's province. Moreover, Dr. Johnson's exposure assessments constitute causation opinions that are well outside the scope of his expertise. While Monsanto tries to distinguish between dermal *contact* assessments and dermal *exposure* assessments, no such distinction practically exists, and the average juror will certainly be unable to draw a distinction. Last, Monsanto suggests that his testimony is necessary to present the benefits of herbicides, including Roundup, and is thus "squarely at issue in this case." Opp. at 2. But that testimony has no relevance here; Plaintiff neither alleges in her complaint nor stated at her deposition that Roundup did not work as it was intended

(of course, other than to cause her NHL). As to the benefits and purposes of an herbicide – *i.e.,* to kill weeds – and Roundup's ability to do that, there is no dispute.

Monsanto's Opposition is unavailing, and Dr. Johnson should be precluded from offering his opinion that Plaintiff's and her husband's accounts of her Roundup exposures were not credible, or that Plaintiff had, at most, only "minimal" exposure to Roundup. Further, as outlined in Plaintiff's Motion, the remaining opinions in Dr. Johnson's report involve topics he admittedly has no expertise in, are irrelevant, and/or are highly prejudicial.[1]

## ARGUMENT

**I.    Dr. Johnson's Credibility Assessments Invade the Province of the Jury**

Dr. Johnson clearly intends to tell the jury that Plaintiff's and her husband's descriptions of her Roundup exposure are not credible. Monsanto counters by claiming that Dr. Johnson himself made clear at his deposition that he will not be testifying that Plaintiff is lying, but that "Plaintiff's claims about how often and how much she applied Roundup, and the manner of her application, are ***inconsistent with logical and necessary weed management practices***." Opp. at 1 (emphasis added). However, such statements themselves are undoubtedly credibility assessments. Indeed, Monsanto's Opposition demonstrates the absurdity of its contention that Dr. Johnson is somehow not offering credibility assessments when Monsanto makes the following illogical claims in the same brief:

- "Jurors can properly rely on [Dr. Johnson's] testimony to help evaluate and assess Plaintiff's allegations in this case, including Plaintiff's alleged use of Roundup. Dr. Johnson's testimony provides the suitable context to assess Plaintiff's allegations…" Opp. at 5;

---

[1] For example, Monsanto claims that Dr. Johnson "made clear at his deposition that his area of expertise and opinions do not pertain to human health." Opp. at 6. However, throughout his report and deposition he kept insisting that Roundup was "safe" and "non-carcinogenic" and stated that "he relied on the EPA" to make that determination approximately 19 times, despite having no basis to testify about the EPA's evaluation of the safety of glyphosate.

- "…Dr. Johnson simply points out the weaknesses in the data Dr. Conry relied on to reach his conclusions…" (the data being Plaintiff's and her husband's sworn testimony) Opp. at 5 n.2;

- "…[Dr. Johnson] will testify that…certain aspects of Plaintiff's alleged uses of Roundup would have deviated from standard practice, actual application, and label instructions or otherwise would not have resulted in Plaintiff coming into contact with significant amounts of Roundup." Opp. at 5;

- "There is scientific evidence that undermines [Plaintiff's claimed use of Roundup], and the proper mechanism to present this scientific evidence to the jury is through a qualified expert, such as Dr. Johnson." Opp. at 6.

Dr. Johnson's testimony and report directly conflict with Plaintiff's and her husband's own accounts and cannot be taken in any other way than to indicate that they are mistaken or lying. *See, e.g.,* Reply Greenwald Decl., Ex. F, Dr. William Johnson Expert Rpt. (Mar. 28, 2023) at 64 ("[Plaintiff] also testified she got glyphosate on her hands while mixing because of the small mouth of on the loading opening of the spray equipment. However, spray equipment is typically designed with openings large enough to facilitate loading and mixing."). If Monsanto does not believe Plaintiff and her husband, its recourse is to cross examine them at trial; it cannot use a proxy, cloaked in the title of "expert," to attack the veracity of a Plaintiff's testimony. Again, it is for the jury to assess the credibility of Plaintiff's statements and not Dr. Johnson.

**II.     Dr. Johnson's Opinion that Plaintiff's Exposure Was "Minimal" is, in Essence, a Medical Causation Opinion**

Dr. Johnson intends to tell the jury that Plaintiff's exposure was "minimal," which is, for all intents and purposes, a medical causation opinion. The jury will be unable to make a distinction between "minimal" exposure and "minimal" contact or absorption —and, indeed, none exists in this context, practically speaking. Dr. Johnson himself cannot explain any difference between the terms as he is not "an exposure expert." *See* Reply Greenwald Decl., Ex. G, Dr. William Johnson

Dep. Tr. (May 22, 2023) at 216:22-217:6. Additionally, Defendant's Opposition appears to use "exposure" and "contact" interchangeably, so even Defendant cannot make such a distinction. *See, e.g.,* Opp. at 1 ("Monsanto has designated Dr. William Johnson, an accomplished weed scientist, ***to opine on***, among other things…the extent of Ms. Delorme-Barton's alleged ***exposure*** to Roundup.") (emphasis added).

Moreover, "minimal" is undefined (other than perhaps in Dr. Johnson's head), is used in an undefined qualitative assessment, and is wholly subjective with no methodologically based determination whatsoever.

Defendant admits that Dr. Johnson is not disclosed to offer and has not offered a quantitative exposure assessment. Opp. at 7. However, each of the opinions that Dr. Johnson intends to offer would, by their nature, require a quantitative analysis. He does *not* just opine that dermal contact was likely or unlikely in a binary sense, as Monsanto claims; instead, he opines that the dermal contact, if it did occur, was "minimal," which is a judgment of the degree and intensity of the exposure. In a similar vein, his opinions that Plaintiff's claimed number of applications and volume of Roundup used "far exceed what would have been necessary" inherently require a quantitative assessment as well. In other words, his intended testimony is outside the scope of his expertise as a weed scientist focused exclusively on agricultural users.

**III.    Dr. Johnson's Opinion Lacks Foundation**

Dr. Johnson's intended trial testimony has no basis in the record. While Monsanto claims that "he formed his opinions in this case by reviewing the case-specific facts, including the deposition testimony of Ms. Delorme-Barton [*sic*] and her husband," Opp. at 9, all of his case-specific opinions directly contradict the record. Dr. Johnson makes clear that he *does not believe Plaintiff's testimony*, stating that her spraying "far exceed[s] what would have been necessary."

*See, e.g.,* Motion at 4–5; Reply Greenwald Decl., Ex. G, at 271:14–23:

> Q. And do you recall her testimony in her deposition stating that she was wet as a result of spraying Roundup and that it was all over her legs, arms, stomach, feet, clothes and shoes?
>
> [objection omitted]
>
> A. So, yes, she indicated that those parts of her body were wet, but the definition of "wet" can mean different things to different people. Wet could be a couple of spray drops, all right.

Instead of basing his exposure assessments on Plaintiff's and her husband's testimony—which he disregards as unbelievable—Dr. Johnson invents a fictional character with different spraying practices and different memories to stand in the shoes of Plaintiff. He then determines that this fictional Plaintiff did not suffer any exposure to Roundup, or, if she did, her exposure was minimal. In essence, Dr. Johnson intends to act as a causation expert and answer hypotheticals *based on facts of his own creation*. This is improper and will not help—but will most certainly confuse—the jury.

In addition to disregarding Plaintiff's and her husband's testimony about Plaintiff's spraying, Dr. Johnson also failed to personally inspect the properties where she sprayed, investigate the soil type at those properties, or consider the weed species present in those areas (and their resistance to glyphosate).[2] It appears that the only property-specific information that Dr. Johnson considered in coming to his opinions were Google Earth overhead and street-view images

---

[2] Monsanto claims that "Dr. Johnson explained in detail why herbicide resistance is not a major problem for residential users" and thus that it was proper that he did not consider the herbicide resistance of weeds on the properties where Plaintiff sprayed in his opinions. Opp. at 9 n.3. However, Dr. Johnson believes that herbicide resistance is not a problem for residential users solely because his department at Purdue does not receive samples to test or calls complaining about such resistance. *See* Reply Greenwald Decl., Ex. G, at 297:9-300:9. Not only does Dr. Johnson mistakenly assume that what is true for the small geographic area in which he works is true for the properties where Plaintiff used Roundup, but he also takes his personal lack of information about a problem to mean that no such problem exists.

of the properties. *See* Reply Greenwald Decl., Ex. F, at 53–60. These images are unreliable to properly show the areas where Plaintiff sprayed at the time as many of the overhead images are blocked by tree coverage and the street-view images do not show the sides or backyards of the properties. As such, Dr. Johnson's testimony is not "based on sufficient facts or data"[3] and is not "the product of reliable principles and methods" by any means. Fed. R. Evid. 702.

In short, Dr. Johnson's case-specific opinions with respect to Plaintiff Delorme-Barton lack foundation and would invade the province of the jury. Moreover, to the extent Monsanto tries to make his testimony relevant by suggesting that he is qualified to talk about the efficacy of herbicides, including Roundup, that testimony is not at issue as Plaintiff agrees that Roundup manages weeds effectively.[4] Further, as outlined in more detail in Plaintiff's Motion, his general opinions are irrelevant, highly prejudicial, and/or will not assist the jury in any meaningful way.[5]

---

[3] Monsanto references the 154 materials considered by Dr. Johnson. However, at least 35 of these are focused on agriculture. None of these materials discuss the weed species present in the areas where Plaintiff sprayed, but many discuss other weed species located in Australia, New Zealand, Stockholm, and other irrelevant locations. Finally, a significant number of these materials are wholly irrelevant to this case, covering topics including, *inter alia*, crowds in national parks, highway maintenance, rangelands (areas used for cattle grazing), aquatic plants, traffic crashes involving deer, tree trimming for electric utilities, wildfire statistics, outdoor recreation, tourism, urban parks, railroads, plants that cause rashes, green infrastructure, and the history of the Dust Bowl.

[4] As Monsanto well knows, Plaintiff is not pursuing any claims based on the availability of a feasible alternative design to Roundup. Additionally, Plaintiff maintains that the substantive law of Illinois, *not* Georgia (as Monsanto incorrectly claims), applies. *See* Plaintiff's Opposition to Monsanto Company's Motion for Summary Judgment, ECF No. 25.

[5] Monsanto has made clear in its Opposition that Dr. Johnson, if permitted, will be offering opinions on "the **significant history** of the development of [Roundup]." Opp. at 12 (emphasis added). However, as Plaintiff pointed out in her Motion, not only is this highly prejudicial and will confuse the jury, but Dr. Johnson is clearly not a historian. In fact, he could not even recount basic details about when FIFRA was first enacted and was not aware of European Union bans with respect to Roundup ingredients. *See* Reply Greenwald Decl., Ex. G, at 250:2–19; 198:10–20. This is just one of many examples where the overbreadth of Dr. Johnson's report exceeds his actual expertise in the use herbicides in the agricultural context.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order precluding Dr. William Johnson, Ph.D., M.S. from testifying at trial, and for such other relief as the Court deems proper.

Dated July 28, 2023

Respectfully submitted,

By: */s/ Robin L. Greenwald*
Robin L. Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of July 2023, a copy of the foregoing was filed with the Clerk of the Court through CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Robin Greenwald*