Robin Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: (212) 558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Karen Delorme-Barton v. Monsanto,*<br>3:18-cv-01427-VC | **PLAINTIFF'S REPLY IN SUPPORT OF *DAUBERT* MOTION TO PRECLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. WILLIS NAVARRO, M.D.** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on a date and time set by the above-captioned court, or as otherwise ordered by District Judge Vince Chhabria, Plaintiff will and hereby moves to preclude the Opinions and Testimony of Monsanto Company's Proposed Expert Dr. Willis Navarro, M.D.

This reply in support of Plaintiff's motion to exclude the testimony of Dr. Willis Navarro, M.D. is based on this supporting memorandum, all pleadings and papers on file in this matter, and such further oral and documentary evidence and papers as the Court may consider at the time of the hearing.

Dated July 28, 2023                                                                 Respectfully submitted,

By:   */s/ Robin L. Greenwald*
          Robin L. Greenwald (*Pro Hac Vice*)
          **WEITZ & LUXENBERG, P.C.**
          700 Broadway, Fifth Floor

New York, NY 10003  
Telephone: (212) 558-5802  
Facsimile: (212) 344-5461  
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

ii

PLAINTIFF'S REPLY IN SUPPORT OF DAUBERT MOTION TO PRECLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. WILLIS NAVARRO, M.D.

**INTRODUCTION**

Plaintiff Karen Delorme-Barton ("Plaintiff") respectfully submits this reply in support of its motion for an Order precluding the testimony of Defendant Monsanto Company's ("Defendant" or "Monsanto") causation expert Willis Navarro, M.D, ECF No. 26 ("Motion" or "Mtn."). Defendant spends most of its time focusing on Dr. Navarro's conclusions that glyphosate does not cause NHL, including Plaintiff's NHL, rather than addressing the conflict between his opinion that age and exposure to other environmental factors such as radioactive rocks that are ubiquitous in the environment are causes of Plaintiff's NHL with his conclusion that Plaintiff's NHL is caused by random genetic mutations, relying on Monsanto's general causation expert Dr. Tomasetti. For the reasons set forth below, Plaintiff seeks to preclude Dr. Navarro from offering any specific causation opinions, including his opinions that Plaintiff's NHL was caused by exclusively "bad luck" and/or random genetic mutations, rather than environmental factors, as well as his opinion that Plaintiff's NHL was attributable to age.

**ARGUMENT**

I. **Dr. Navarro's Specific Causation Opinion is Inherently Inconsistent with Dr. Tomasetti's Articles Related to "Bad Luck" as a Cause of NHL, Despite Dr. Navarro's Misplaced Reliance on Them, and is Unreliable.**

Dr. Navarro's testimony should be excluded because the "medical and scientific articles, upon which he relies. . . do not support his conclusion." *Cloud v. Pfizer, Inc.*, 198 F. Supp. 2d 1118, 1132 (D. Ariz. 2001) (excluding expert psychiatrist's testimony). Defendant claims that inconsistencies between Dr. Navarro's testimony and Dr. Tomasetti's theory is simply a "disagreement between experts," which should "go to the weight the jury should give [an expert's] opinions rather than to their admissibility." Defendant Monsanto Company's Response to Plaintiff's Daubert Motion to Preclude Testimony From Monsanto's Expert Dr. Willis Navarro,

- 1 -

PLAINTIFF'S REPLY IN SUPPORT OF DAUBERT MOTION TO PRECLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. WILLIS NAVARRO, M.D.

ECF No. 33 ("Opp.") at 6. To support this argument, Defendant cites *Viera v. City of El Monte*; however, that case involves conflicting testimony between an expert's ***factual*** assumptions and the deposition testimony of a *witness*, not discrepancies between two experts. No. 04-06082, 2006 WL 6626761 (C.D. Cal. May 2, 2006), *aff'd in part* 267 F. App'x 568 (9th Cir. 2008).[1] Furthermore, cases where courts have held that "weighing the credibility of conflicting expert testimony is the province of the jury," typically involve conflicts in the testimony of opposing parties' experts. *See, e.g., Wyler Summit P'ship v. Turner Broad. Sys., Inc.,* 235 F.3d 1184, 1192 (9th Cir. 2000). Here, not only are these conflicting experts both testifying for Monsanto, but Dr. Navarro also purports to "primarily" *rely* on Dr. Tomasetti's studies to reach his own conclusions.

More importantly, the crux of the disagreement between Dr. Navarro and Dr. Tomasetti goes to the foundation of both of their opinions. Dr. Tomasetti divides cancer-causing cell mutations into three categories: environmental (E), hereditary (H), and random replicative (R) factors. Specifically, Dr. Tomasetti's "bad luck" theory finds that 95% of NHL are caused by "random" genetic mutations (without environmental (E) or hereditary (H) causes), while Dr. Navarro, would attribute 100% of NHLs to "ubiquitous" environmental factors (E). Specific to Ms. Delorme-Barton, it is Dr. Navarro's opinions that she had "ubiquitous" environmental factors that resulted in her NHL. Greenwald Decl. in support of Motion, Exhibit D, ECF No. 26-5, at 51:17-52:19. The two theories of causation (Navarro's and Tomasetti's) are inapposite and not supportive of each other. Dr. Tomasetti's theories do not support Dr. Navarro's opinions, and vice versa – despite Dr. Navarro's purported reliance on Tomasetti.

---

[1] It is unclear where the first portion of the quotation cited by Defendant, "conflicting testimony amounts to disagreement between experts" comes from, as the *Vieja* court never makes such a statement. That case does not involve the discrepancy between two experts' testimony.

Monsanto would like to direct this Court's attention to Dr. Navarro's report, which seems to correctly restate the premise of Dr. Tomasetti's research: "most other cancers are likely driven primarily by replication cycles and consequent accumulation of DNA replication errors (Tomasetti 2017). This explains, in part, why humans spontaneously develop cancer with or without a known inciting exposure or significant risk factor, *irrespective of geography or environmental exposures*. It also helps to explain why there is an increase in incidence of all cancers observed with increasing age*, irrespective of geography and environment*." Navarro Rep. at 6 (emphasis added). But it is clear from Dr. Navarro's subsequent testimony that he has a distinct opinion from that of Dr. Tomasetti. In his deposition, Dr. Navarro unequivocally testified to the following:

> Q. Do you have an opinion as to what the cause of the, the accumulation of genetic hits [that caused Ms. Delorme-Barton's NHL] was?
>
> A. Yes, summarizing it, I guess you could say living. By virtue of the fact that we're all exposed to background radiation just from everywhere, we're exposed to environmental carcinogens, barbecued meats; you name it. There are multiple genetic stressors, if you will, things that can potentially impact DNA. They're everywhere; . . . those types of exposures are ubiquitous, and over time, we, we all experience those as we grow older and multiple hits take place.

Greenwald Decl., Exhibit D, at 51:25-52:13. If we were to accept Dr. Tomasetti's population-based mathematic theory as true as well as Dr. Navarro's opinions that "ubiquitous" environmental factors caused Plaintiff's NHL (which Plaintiff does not), Ms. Delorme-Barton would be categorized as part of the 3.9 percent of NHL cases that Dr. Tomasetti believes are caused by environmental factors, and not those caused by random replicative errors or "bad luck," which Dr. Tomasetti attributes as the sole cause of 95 percent of NHL cases. Dr. Navarro wants to testify as to both – that Plaintiff's NHL was caused by "ubiquitous" environmental factors while at the same time claiming that Tomasetti's "bad luck" theory (which excludes environmental factors) caused

her NHL. But, according to Dr. Tomasetti's research framework, these two causation theories are necessarily mutually exclusive. As such, Dr. Navarro cannot have it both ways.

Monsanto would have this court believe that the disagreement between the two experts would go to the weight of each of their opinions, which can be addressed through cross-examination; however, since the issue relates to the heart of both Dr. Navarro's and Dr. Tomasetti's opinions, their testimony would confuse the jury. It also goes to the reliability of Dr. Navarro's causation opinion. Based upon the foregoing, the Court should preclude Dr. Navarro's specific causation opinions that "bad luck" and/or random genetic mutations caused Plaintiff's NHL.

**II.     Dr. Tomasetti's "Bad Luck" Theory is Reliant Upon the Stem Cell Division Rate and Dr. Navarro Admits that Follicular Lymphoma Does Not Originate with Stem Cells.**

Dr. Navarro's specific causation opinion, which he claims is reliant upon Dr. Tomasetti's "bad luck" theory, is further unreliable because Dr. Tomasetti's theory is based upon the stem cell division rates, which according to Dr. Navarro are not applicable to Plaintiff's NHL. This argument, raised in Plaintiff's original motion papers to exclude Dr. Navarro, has gone unaddressed by Monsanto in its opposition papers.

By way of additional argument, Dr. Navarro opines that Plaintiff's follicular lymphoma originated at a stage "farther along the development pathway for B cell development" and admits that the cells in which this mutation occurred are "not stem cell like." Greenwald Decl., Exhibit D, at 76:15-16. However, Dr. Tomasetti's entire theory is based on the division rate of hematopoietic stem cells, which divide and replicate frequently. According to Dr. Navarro's opinion, the estimated rate of division in hematopoietic stem cells is irrelevant and/or inapplicable in this case, thus making the Tomasetti "bad luck" theory inapplicable to Dr. Navarro's opinions.[2]

---

[2] In the matter of *Griswold v. Monsanto*, Monsanto's own medical expert, Dr. David Grinblatt, stated that Dr. Tomasetti's "bad luck" theory is not related in any way to the development of NHL.

Additionally, Dr. Tomasetti's mutation rate is based on how often *point mutations* occur in these hematopoetic stem cells, which is a different type of mutation than the *chromosomal translocation* that Dr. Navarro believes is a likely cause and/or marker of Ms. Delorme-Barton's NHL. Reply Greenwald Decl., Exhibit N, at 75:5-10. Point mutations involve substitutions or changes that occur at a single location along a chromosome; by contrast, chromosomal translocations involve a situation where fragments of chromosomes break off and reattach to different chromosomes. While Dr. Navarro "can rely on the published research of others to support [his] findings;" in such scenarios, district courts are permitted to "plumb the depths of the precise relationship between the materials cited and the conclusions drawn." *Cloud,* 198 F. Supp. 2d at 1132 (excluding expert psychiatrist's testimony) (internal citations omitted). In this instance, the relationship between Dr. Tomasetti's study and Dr. Navarro's conclusions is simply too tenuous. Because Dr. Navarro's reliance on Dr. Tomasetti's study contradicts his own statements regarding the development and etiology of Plaintiff's cancer, the Court should exclude his testimony. *See Davis v. McKesson Corp.,* No. 18-1157, 2019 WL 3532179, at *17 (D. Ariz. Aug. 2, 2019) (excluding the plaintiff's experts because "[p]laintiff's experts cite some studies without acknowledging that the studies' results or the authors conclusions are inconsistent with the expert's opinions."); *Jones v. U.S.*, 933 F. Supp. 894, 898 (N.D. Cal. 1996) (excluding experts who relied on studies that yielded inapposite conclusions to what the experts were proposing) ("This tactic does not qualify as good science."). Plaintiff further adopts her Reply to Monsanto's opposition to Plaintiff's Motion to Preclude Dr. Tomasetti on this point. Based upon the foregoing, the Court

---

Greenwald Decl., Exhibit K, ECF No. 26-12, at 125:3-12, 205:15-206:23, 48:20-23, 71:10-12, 225:13-16.

should preclude Dr. Navarro's specific causation opinions that "bad luck" and/or random genetic mutations caused Plaintiff's NHL.

**III.   The Tomasetti Articles Relied Upon by Dr. Navarro for His Specific Causation Opinion are Population Based Statistical Studies that Cannot Be Relied Upon to Prove Specific Causation as to Ms. Delorme-Barton.**

Monsanto, in its opposition brief, further fails to provide an evidentiary medical nexus that would connect the "bad luck" theory to the Plaintiff as it would relate to the medical cause of her NHL. Dr. Navarro cannot, through any medical evidence, link Plaintiff's NHL to Tomasetti's "bad luck" theory. Yet he not only had no evidence of bad luck from diagnostic images or the medical records, he also attributed Ms. Delorme-Barton's age and "ubiquitous" environmental factors – not random replicative errors – to her NHL. Greenwald Decl., Exhibit D, at 100:15-102:11. Dr. Navarro's opinions boil down to his reliance on an inadmissible opinion by another Monsanto expert, Dr. Tomasetti, which, at the heart of it, are in direct conflict with his testimony about Plaintiff's supposed environmental exposures (*see* Subsection I *supra*). Dr. Navarro did not, from a medical causation perspective, independently interpret or analyze the data from Dr. Tomasetti's article to conclude whether random mutations are the cause of Plaintiff's NHL. As he conceded, "I have not reviewed the raw data, no." *Id.* at 103:16-18. Courts routinely exclude expert testimony that parrots another's opinions without independent analysis. *See also, e.g.*, *Gunaratna v. Dennis Gross Cosmetology LLC*, No. 21-55342, 2023 WL 2628620, at *9-10 (C.D. Cal. Mar. 15, 2023) (an expert may rely upon the opinions of others "only if 'the record demonstrates that the expert conducted an independent evaluation of that evidence.'" (quoting *In re Conagra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014))) (collecting cases); *Nelson v. Matrixx Initiatives*, No. 09-02904, 2012 WL 3627399, at *12 (N.D. Cal. Aug. 21, 2012), *aff'd sub nom. Nelson v. Matrixx Initiatives, Inc.*, 592 F. App'x 591 (9th Cir. 2015) ("Hwang is an otolaryngologist, and diagnoses ear, nose,

and throat conditions. He has no specialized epidemiological or toxicological training or credentials. []He has performed no independent scientific research on the issue of Zicam's ability to produce smell loss. He has never studied zinc gluconate, the active ingredient in Zicam or Zicam itself.").

Based upon the foregoing, the Court should at a minimum preclude Dr. Navarro's specific causation opinions that "bad luck" and/or random genetic mutations caused Plaintiff's NHL. As Dr. Navarro offers an alternative cause of Plaintiff's NHL, he must perform a differential diagnosis to support his opinions, an undertaking he failed to do here. *See, e.g., Allphin v. Peter K. Fitness, LLC*, 78 F. Supp. 3d 987, 997 (N.D. Cal. 2015) ("the Court similarly must hold a defendant to that same standard when attempting to prove an affirmative defense") (collecting cases).

## CONCLUSION

For the reasons set forth in Plaintiff's moving papers and above, the Court should grant Plaintiff's Motion and exclude the opinions of Dr. Navarro.

Dated July 28, 2023　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　By:　*/s/ Robin L. Greenwald*
　　　　　　　　　　　　　　　　　　Robin L. Greenwald
　　　　　　　　　　　　　　　　　　**WEITZ & LUXENBERG, P.C.**
　　　　　　　　　　　　　　　　　　700 Broadway, Fifth Floor
　　　　　　　　　　　　　　　　　　New York, NY 10003
　　　　　　　　　　　　　　　　　　Telephone: (212) 558-5802
　　　　　　　　　　　　　　　　　　Facsimile: (212) 344-5461
　　　　　　　　　　　　　　　　　　rgreenwald@weitzlux.com

　　　　　　　　　　　　　　　　　　*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of July 2023, a copy of the foregoing was filed with the Clerk of the Court through CM/ ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Robin Greenwald*