Robin Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: (212) 558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | **PLAINTIFF'S REPLY IN SUPPORT OF** ***DAUBERT*** **MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED NON-RETAINED EXPERT DR. ROBERT TARONE, PH.D.** |
| *Karen Delorme-Barton v. Monsanto,* 3:18-cv-01427-VC | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on a date and time set by the above-captioned court, or as otherwise ordered by District Judge Vince Chhabria, Plaintiff will and hereby moves to Exclude the Opinions and Testimony of Monsanto Company's Proposed Non-Retained Expert Dr. Robert Tarone, Ph.D.

This reply in support of Plaintiff's motion to exclude the testimony of Dr. Robert Tarone, Ph.D. is based on this supporting memorandum, all pleadings and papers on file in this matter, and such further oral and documentary evidence and papers as the Court may consider at the time of the hearing.

Dated July 28, 2023                    Respectfully submitted,

                                        By:    */s/ Robin L. Greenwald*

Robin L. Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

PLAINTIFF'S REPLY IN SUPPORT OF DAUBERT MOTION TO EXCLUDE THE OPINIONS AND
TESTIMONY OF MONSANTO COMPANY'S PROPOSED NON-RETAINED EXPERT DR. ROBERT
TARONE, PH.D.

## INTRODUCTION

Defendant Monsanto Company ("Defendant" or "Monsanto") admits that months after Roundup litigation commenced, its outside litigation counsel paid Dr. Robert Tarone's consulting company for a three-hour conference to discuss IARC's decision-making process. That meeting, contrary to what Monsanto now contends, focused on the very issues contested in this litigation—namely, IARC's analysis of glyphosate's carcinogenicity and strategies Monsanto could employ to undermine that analysis. Following this initial consult, Dr. Tarone met with Hollingsworth lawyers on at least one other occasion and began regular communication with Monsanto in-house scientist, David Saltmiras, who shared source material and discussed Monsanto's view on key causation evidence in this case. And, three years later, Dr. Tarone and Monsanto's litigation counsel "decide[d] collectively that a deposition needs to happen" so that Dr. Tarone's opinions could, as he described it, "*be cited by defense lawyers in the trials*." Declaration of Robin L. Greenwald,[1] Ex. A at 107:4–10; Ex. F (emphasis added).

In other words, Monsanto and its litigation counsel paid to consult with Dr. Tarone for purposes of litigation, educated him about IARC Monograph 112, and then strategized with Dr. Tarone to arrange for his deposition.[2] This is precisely how parties use experts in litigation, and Monsanto cannot evade the requirements of Rule 26 simply because it chose to call Dr. Tarone

---

[1] Refers to Declaration of Robin L. Greenwald in Support of Plaintiff's *Daubert* Motion to Exclude the Opinions and Testimony of Monsanto Company's Proposed Non-Retained Expert Dr. Robert Tarone, Ph.D., ECF No. 28-1.

[2] Monsanto states that Dr. Tarone "has been deposed twice, on three separate days," Opposition Brief, ECF NO. 32, at 3, ("Opposition" or "Opp.") but neglects to make clear that Dr. Tarone's first deposition was pursuant to Monsanto's subpoena and two of these three deposition days consisted of friendly Monsanto questioning. Further, Monsanto's brief ignores Dr. Tarone's admission, revealed for the first time at his March 2023 deposition, that he jointly strategized with Monsanto's outside counsel to have his deposition taken so that his opinions could be used by defense lawyers in Roundup trials.

PLAINTIFF'S REPLY IN SUPPORT OF DAUBERT MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED NON-RETAINED EXPERT DR. ROBERT TARONE, PH.D.

"non-retained." Indeed, as courts in this Circuit have made clear, a party "cannot have it both ways, [e]ither an expert will testify and provide a report, or will act as a consultant to counsel and not testify at trial." *Hardin v. Wal-Mart Stores, Inc.*, No. 1:08-CV-00617AWIGSA, 2010 WL 3341897, at *5 (E.D. Cal. Aug. 25, 2010), *report and recommendation adopted*, No. 1:08-CV-00617 AWG GS, 2010 WL 3745197 (E.D. Cal. Sept. 16, 2010). Dr. Tarone provided no report, failed to timely produce reliance materials, and, when he was deposed in Wave 5, testified to new opinions. This is patently unfair and contrary to the Federal Rules; even Monsanto concedes that "Dr. Tarone did offer a handful of opinions in his second deposition that he did not offer during his first." Opp. Br. at 13 n.4. Plaintiff Karen Delorme-Barton ("Plaintiff") is entitled to know the scope of, and support for, an expert's testimony so she can conduct an effective deposition followed by cross examination at trial.

To date, no Roundup plaintiff has moved to exclude Dr. Tarone's testimony because Monsanto failed to comply with the disclosure requirements of Rule 26.[3] And while Monsanto claims that courts have "unanimously rejected plaintiffs' arguments" regarding Dr. Tarone, Opp. Br. at 1, every decision it cites is one considering a challenge to Dr. Tarone's expertise under the *Daubert* (or state equivalent) standard and not Rule 26's disclosure requirements. Plaintiff does not move to exclude Dr. Tarone on *Daubert* grounds here. Rather, Monsanto has flouted its Rule 26 disclosure requirements for strategic advantage, which has in turn prejudiced Plaintiff's ability to prepare her case. This is improper and if Monsanto wishes to use Dr. Tarone's testimony offensively, it should be required to adhere to the disclosure requirements with which every other

---

[3] This is perhaps because Monsanto has primarily relied upon Dr. Tarone's testimony in state-court proceedings with different disclosure requirements than those imposed by the Federal Rules.

PLAINTIFF'S REPLY IN SUPPORT OF DAUBERT MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED NON-RETAINED EXPERT DR. ROBERT TARONE, PH.D.

expert in this litigation has complied. For the reasons set forth below, and in her opening brief,

Plaintiff respectfully moves for exclusion of Dr. Tarone's testimony.

## ARGUMENT

Dr. Tarone is "retained or specially employed to provide expert testimony" under Rule

26(a)(2)(B) because he has no percipient knowledge of the litigation's underlying facts, all of his

opinions were formed after he began consulting with Monsanto's litigation counsel and in-house

scientists, and Monsanto arranged for his deposition so that his opinions "could be cited by defense

lawyers in the trials." Greenwald Decl., Ex. F. In its opposition, Monsanto argues that Dr. Tarone

is a "non-retained" expert because (i) it has not paid Dr. Tarone, (ii) it did not discuss IARC's

glyphosate analysis with Dr. Tarone, and (iii) Dr. Tarone has percipient knowledge of the

"scientific debate" surrounding glyphosate. Each contention is legally and factually meritless.

### I.      Monsanto Paid Dr. Tarone's Employer to Consult with its Litigation Counsel.

Monsanto admits that it paid Dr. Tarone's consulting company, International

Epidemiology Institute ("IEI"), to consult with Eric Lasker, Monsanto's litigation counsel. Despite

this admission, Monsanto contends that it "has never paid Dr. Tarone a single dollar." Opp. Br. at

1. This is absurd hair-splitting; payments made to an expert's employer are payments made to an

expert for purposes of Rule 26. Indeed, several experts disclosed by both parties in this case were

paid through the companies that employ them.[4] Further, Dr. Tarone himself disagrees with

Monsanto's characterization that he was not paid a single dollar, as he disclosed Monsanto's

payment as a "conflict of interest" in his published glyphosate papers and explained that IEI was

---

[4] For example, Monsanto disclosed as retained experts Lisa Bailey, who is employed by Gradient, Adam Love, who is employed by Roux Associates, Inc., and Connie Welch-DuJardin, who is employed by toXcel, LLC. *See* Greenwald Decl., Ex. B. It would be disingenuous to claim that payments Monsanto made to these companies were not payments made to each expert witness.

paid "for the author's participation in a September 2015 meeting with a Monsanto lawyer." Greenwald Decl., Ex. E at "Conflict of Interest" Acknowledgement. Authorities in this Circuit also make clear that even a witness whose testimony is voluntary may be "specially employed" under Rule 26 where the witness has "no connection to specific events involved in an action" and has "reviewed information or documents in preparation of litigation." *Hardin*, 2010 WL 3341897, at *4. Here, Dr. Tarone has no percipient knowledge of the underlying facts and formulated his opinions only after he consulted with Monsanto for purposes of litigation.

## II.     Monsanto's Litigation Counsel Consulted with Dr. Tarone for the Express Purpose of Strategizing How to Refute IARC's Glyphosate Analysis.

Monsanto attempts to minimize the consult between its litigation counsel and Dr. Tarone, contending that "there was no discussion of anything strictly related to glyphosate" at that meeting, but there was instead "a more generalized discussion about IARC's approach to hazard identification." Opp. Br. at 11. The private emails Dr. Tarone exchanged with Dr. Saltmiras one day after the consult prove otherwise. On September 10, 2015, Dr. Tarone wrote:

> The CEO of IEI and I met with a lawyer representing Monsanto yesterday to talk about how to deal with the IARC process, *so whatever information I have has been passed on to the legal team*. *As I told the lawyer,* the way IARC dealt with the mouse studies in their report was, in my opinion, fraudulent. They emphasize the questionably small increase in renal tubule adenomas in male mice, and say that no data was given for females. Obviously they had the opportunity to get the female data, which showed (as you know) that there was no renal tubule tumors in females. Even worse, they totally ignore the renal tubule results in the second study they cite (instead emphasizing the sarcoma results).

Reply Declaration of Robin L. Greenwald,[5] Ex. I (emphasis added). As this contemporaneous writing makes clear, Dr. Tarone's consult with Mr. Lasker was very much related to glyphosate

---

[5] Refers to the Reply Declaration of Robin L. Greenwald in Support of Plaintiff's *Daubert* Motion to Exclude the Opinions and Testimony of Monsanto Company's Proposed Non-Retained Expert Dr. Robert Tarone, Ph.D., which is submitted herewith.

and what Dr. Tarone characterized as the "fraudulent" shortcomings in IARC's monograph 112 analysis. For Monsanto to now claim otherwise is belied by the evidence.

Further, although Monsanto now claims in its opposition brief that its in-house scientist, Dr. Saltmiras, "did not provide Dr. Tarone with anything" relating to glyphosate before Dr. Tarone published his articles, Opp. Br. at 4, that too is contradicted by the record. In private emails sent the day of Dr. Tarone's meeting with Monsanto's counsel, Dr. Saltmiras supplied information about manuscripts submitted to IARC's glyphosate panel, data from "mouse study 11," and an article titled, "Spontaneous lesions in CD-1 mice," which set forth data from the "historical control report" for certain animal subjects. Reply Greenwald Decl., Ex. J. In another email—again, on the same day that Dr. Tarone met with Monsanto's counsel—Dr. Saltmiras told Tarone that Monsanto "concur[s] with your overview on the epidemiology studies with each of their strengths & weaknesses. We also agree with you that there is not sufficient evidence in animals." Reply Greenwald Decl., Ex. K. Dr. Saltmiras then requested Dr. Tarone's "opinion" on an "epidemiology meta-analysis" published by IARC scientists in April 2014. *Id.* Dr. Tarone replied that he had passed along his opinions "to the legal team," presumably at his meeting with Mr. Lasker. *Id.*

Dr. Tarone testified that he had no familiarity with IARC Working Group 112 before meeting with Monsanto's counsel and stated that he "was basically ignorant of the glyphosate scientific literature" when he met with Mr. Lasker. Greenwald Decl., Ex. A at 44:15–45:16. In spite of that professed ignorance, Dr. Tarone told Mr. Lasker in that first meeting that IARC dealt with "the mouse studies in their report" in a way that was "fraudulent," he provided in-depth criticism of IARC's evaluation of mouse data, and exchanged multiple emails with Dr. Saltmiras directly after the meeting describing "[t]he epidemiologic evidence" as "very weak." Reply Greenwald Decl., Exs. I–K. In other words, Dr. Tarone transformed in the span of a few hours

- 5 -

from (in his own words) "basically ignorant of the glyphosate scientific literature" before he met with Monsanto's counsel, into a well-informed IARC Monograph 112 critic so versed in the literature that he could exchange multiple emails with Monsanto's top in-house scientist discussing the relevant underlying studies and their purported weaknesses. It simply strains credulity that Monsanto's counsel did not discuss the company's criticism of Monograph 112 or its litigation strategy during this initial meeting. Indeed, the private email exchanges clearly demonstrate that this is precisely what was discussed. Accordingly, because Monsanto consulted with Dr. Tarone to discuss litigation strategies to undermine IARC's glyphosate conclusion, and Dr. Tarone later adopted those very opinions in his published papers, Dr. Tarone was "retained or specially employed to provide expert testimony" for purposes of Rule 26 during this initial consult.

### III.    Dr. Tarone Has No Relevant Percipient Knowledge of the Underlying Facts.

In this Circuit, an "expert witness is exempt from Rule 26(a)(2)(B)'s disclosure requirement only where their opinions are based on percipient observations or participation in the circumstances underlying the litigation." *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 825–26 (9th Cir. 2011). Monsanto concedes, as it must, that Dr. Tarone was not "a percipient witness to what happened behind closed doors in Lyon, France in 2015 when IARC reached its conclusion on glyphosate," Opp. Br. at 13; Dr. Tarone further testified that he was "not an IARC expert," and did not even know IARC had evaluated glyphosate until well after the Roundup litigation commenced. Greenwald Decl., Ex. A at 167:2–3; Ex. C at 193:14–194:10. Dr. Tarone, in short, is nothing like the treating physician who is sometimes considered a non-retained expert because they possess firsthand knowledge of the litigation's underlying facts and circumstances.

Monsanto nonetheless claims that Dr. Tarone is akin to the non-retained treating physician because "he is a percipient witness to the scientific debate sparked" by IARC's determination.

Opp. Br. at 10. The sole case Monsanto cites in support of this theory, *Doe 1 v. Manhattan Beach Unified School District*, No. CV 19-06962-DDP (RAOx), 2020 WL 7931596 (C.D. Cal. Dec. 22, 2020), is entirely inapposite.[6] There, the proposed expert witness worked for the defendant school district when a sexual assault allegedly occurred and personally completed a Title IX report months before litigation commenced; this report summarized an investigation the expert conducted into the plaintiff's underlying sexual assault claims. *Id.* at *1. The court found that this expert "did not need to provide a written report" because "she was akin to an employee expert" whose "testimony will be based on her knowledge from when she was [a school district] employee." *Id.* at *3. The expert in *Doe 1* therefore had percipient knowledge of the facts and circumstances underlying the litigation. Dr. Tarone has no such knowledge; he had no involvement in the case at all until after litigation commenced and he discussed litigation strategy with Monsanto's counsel.

There is simply no authority supporting Monsanto's characterization of an expert as "non-retained" when that witness participates in a "scientific debate" months after litigation has commenced. Several experts for both parties, including Chris Portier and William Jameson, have participated in the scientific debate following commencement of Roundup litigation but have

---

[6] Monsanto fails to seriously engage the authority from this Circuit set forth in Plaintiff's opening brief. Indeed, Monsanto ignores the Ninth Circuit's holding in *Goodman* as well as the decision in *Mann v. County of San Diego*, Civ. No. 11-CV-708-GPC (BGS), 2014 WL 1279300, at *3 (S.D. Cal. Feb. 12, 2014), explaining that experts may also be percipient witnesses when their "testimony was formulated on-the-scene" or "premised on their personal knowledge and observations." These decisions make clear that Dr. Tarone is not a percipient witness and is not exempt from Rule 26(a)(2)(B)'s disclosure requirement because he has no personal knowledge of the events underlying the litigation. Even where Monsanto attempts to distinguish the cases cited in Plaintiff's opening brief, such as *Trulove v. D'Amico*, No. 16-CV-050-YGR, 2018 WL 1090248 (N.D. Cal. Feb. 27, 2018), or *Funai Elec. Co. v. Daewoo Elec. Corp.*, No. C 04-1830 CRB (JL), 2007 WL 1089702 (N.D. Cal. Apr. 11, 2007), it does so ineffectively, arguing that the experts in these cases commenced involvement "solely for the purposes of the litigation." Opp. Br. at 10. But this is exactly how Dr. Tarone become involved in this case, meeting with Monsanto's litigation counsel and strategizing how to rebut IARC's glyphosate determination.

appropriately provided written reports as required by Rule 26. Dr. Portier, for example, submitted extensive comments to the EPA's Science Advisory Board when it undertook an evaluation of glyphosate's carcinogenicity beginning in 2016, as well as to the European Food Safety Authority. Under Monsanto's logic, plaintiffs in this litigation could have paid to consult with someone like Dr. Portier, communicated with him throughout the course of the litigation about the ongoing "scientific debate," jointly agreed with Dr. Portier to subpoena his testimony so that his opinions could be used by lawyers in trial, but disclosed Dr. Portier as a non-retained, percipient expert because he was a participant in the "scientific debate." Monsanto would have strenuously objected to such a tactic. It should likewise be precluded from a similar tactic now. Dr. Tarone is not a percipient witness, and the only reason his opinions have been presented to juries is because Monsanto arranged with Dr. Tarone for his deposition to be conducted for this precise purpose.

## IV.    Monsanto's Disclosure is Deficient Under Rule 26(a)(2)(C).

Monsanto's disclosure under Rule 26(a)(2)(C) is also deficient. That provision requires certain experts to disclose "the subject matter on which the witness is expected to present evidence" and to provide a "summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Monsanto's disclosure states that it "may elicit testimony from Dr. Tarone regarding the facts and opinions testified to previously in the Roundup litigation." Greenwald Decl., Ex. B at 14. But even this is deficient, as Dr. Tarone, by his own admission, offered new opinions at his second deposition and changed opinions that he testified to before. *See, e.g.*, Opp. Br. at 13 n.4 (admitting "Dr. Tarone did offer a handful of opinions at his second deposition that he did not offer during his first"). Again, Monsanto's gamesmanship has subverted the purpose of even the general disclosure required by Rule 26(a)(2)(C). Monsanto's failure to comply with its disclosure requirements is not excused merely by deposing the witness, especially

where, as here, Monsanto has no intention to bring Dr. Tarone to trial for cross examination. *See Montera v. Premier Nutrition Corp.*, No. 16-CV-06980-RS, 2022 WL 1225031, at *12 (N.D. Cal. Apr. 26, 2022) (deposition does not cure failure to follow disclosure obligations under Rule 26(a)(2)(C)). The Court should therefore preclude Dr. Tarone's testimony.

## V.      Plaintiff Has Been Prejudiced by Monsanto's Failure to Comply with Rule 26.

As set forth in Plaintiff's opening brief, Dr. Tarone testified to new opinions in his March 2023 deposition, changed other opinions previously expressed, and untimely produced "four inches" of documents on the day of his deposition, some of which revealed for the first time the scope of his years-long communications with Monsanto's counsel. This sandbagging hampered Plaintiff's ability to properly depose Dr. Tarone. Monsanto brushes these legitimate concerns aside, arguing that Plaintiff had "ample notice" of "the vast majority" of Dr. Tarone's opinions, even if some of those opinions were new or had changed.[7] Opp. Br. at 12. The purpose of the Rule 26 disclosure requirements, however, is to ensure a party understands the full scope of an expert's opinions in advance of a deposition, as well as what those opinions are based upon, and whether the potential expert has any obvious biases. The deposition then permits a party to efficiently explore an expert's disclosed opinions and foundation in order to properly prepare for cross examination at trial. But here, Monsanto has no intention to bring Dr. Tarone to trial and will instead present his testimony via videotape. Accordingly, Monsanto's gamesmanship hamstrung Plaintiff's sole opportunity to question Dr. Tarone before trial. This is patently unfair and Monsanto's solution—to address any concerns during the deposition designation process—is

---

[7] Monsanto does not address Dr. Tarone's untimely production of responsive documents.

inadequate, as that process may only exclude objectionable testimony from the deposition but is no substitute for a proper cross examination at trial.[8]

Monsanto also argues that the Court should not order the self-executing sanction contained in Rule 37 because Monsanto will be prejudiced if it cannot present Dr. Tarone's testimony. First, this is a position of Monsanto's own making. It has consulted with Dr. Tarone since 2015, collaborated with Dr. Tarone to subpoena his deposition so that his opinions could "be cited by defense lawyers in the trials," Greenwald Decl., Ex. F, chose to designate Dr. Tarone as "non-retained," and flouted the written report requirements of Rule 26. Monsanto should not be heard to complain about prejudice now. Further, Monsanto has designated 19 expert witnesses in total, at least 7 of whom are epidemiologists or toxicologists who will likely testify to the glyphosate scientific literature and IARC's evaluation of that literature. *See* Greenwald Decl., Ex. B. Dr. Tarone's testimony is entirely cumulative of the testimony of these 7 expert witnesses disclosed by Monsanto. Thus, striking Dr. Tarone's testimony will not impair Monsanto's case.

## CONCLUSION

For the foregoing reasons, and those set forth in Plaintiff's opening brief, Plaintiff respectfully requests that the Court preclude the testimony of Dr. Robert Tarone.

---

[8] If the Court does not exclude Dr. Tarone's testimony, it should rule that Monsanto may not present this testimony unless it calls Dr. Tarone live so that Plaintiff may conduct a cross examination, just as every other expert will be subjected to. The fact that Monsanto is attempting to cure any prejudice through the deposition designation process rather than an opportunity to cross examine at trial distinguishes the two authorities cited in Monsanto's brief, *TriMed v. Stryker Corp.*, No. CV 06-1918-SVW-SHx, 2010 WL 11002258 (C.D. Cal. Oct. 21, 2010), and *F.D.I.C. v. Anderson*, No. 2:11-cv-01061-GEB-EFB, 2012 WL 3728160 (E.D. Cal. Aug. 27, 2012). In both cases, the court found there was no prejudice that warranted exclusion, but that the producing party would be required to present the contested expert at trial, for cross examination. If the Court is not inclined to exclude Dr. Tarone's testimony, the only adequate way to address the prejudice caused by Monsanto's gamesmanship is to require an in-person examination.

Dated July 28, 2023                              Respectfully submitted,

                                      By:    */s/ Robin L. Greenwald*
                                             Robin L. Greenwald (*Pro Hac Vice*)
                                             **WEITZ & LUXENBERG, P.C.**
                                             700 Broadway, Fifth Floor
                                             New York, NY 10003
                                             Telephone: 212-558-5802
                                             Facsimile: (212) 344-5461
                                             rgreenwald@weitzlux.com

                                             *Attorney for Plaintiff*


                          **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 28th day of July 2023, a copy of the foregoing was

filed with the Clerk of the Court through CM/ ECF system which sent notice of the filing to all

appearing parties of record.

                                             */s/ Robin Greenwald*