Robin Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: (212) 558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | **PLAINTIFF'S REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. CRISTIAN TOMASETTI, PH.D.** |
| *Karen Delorme-Barton v. Monsanto,* 3:18-cv-01427-VC | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on a date and time set by the above-captioned court, or as otherwise ordered by District Judge Vince Chhabria, Plaintiff will and hereby moves to Exclude the Opinions and Testimony of Monsanto Company's Proposed Expert Dr. Cristian Tomasetti, Ph.D.

This reply in support of Plaintiff's motion to exclude the testimony of Dr. Cristian Tomasetti is based on this supporting memorandum, all pleadings and papers on file in this matter, and such further oral and documentary evidence and papers as the Court may consider at the time of the hearing.

Dated July 28, 2023

Respectfully submitted,

By:    */s/ Robin L. Greenwald*
Robin L. Greenwald (*Pro Hac Vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com

*Attorney for Plaintiff*

PLAINTIFF'S REPLY IN SUPPORT OF DAUBERT MOTION TO EXCLUDE THE OPINIONS AND
TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. CRISTIAN TOMASETTI, PH.D.

# INTRODUCTION

Monsanto Company's ("Monsanto's") "new" general causation opinion, presented through the testimony of Dr. Tomasetti, is a radical departure from its general causation scientific evidence that it presented to the Court at the outset of this litigation. From the inception of this litigation in 2016, Plaintiffs have argued that Roundup caused their cancer while Monsanto argued that the cause of the vast majority of people diagnosed with NHL, including most Plaintiffs, was unknown, or idiopathic. What is more, in negotiations regarding the Plaintiff Fact Sheet, Monsanto told the Court that it had to ask numerous questions about Plaintiffs' past because there are numerous causes of NHL.[1] Now, through Dr. Tomasetti, Monsanto shifts gears and argues the cause of over 95% of NHL is ***known***, and that cause is naturally occurring replication errors in DNA, or as Tomasetti's theory posits, "bad luck." This dramatic shift, predicated upon a novel theory which has not been replicated by any other scientist, warrants the same scrutiny by way of a hearing, which the Court required for all of Plaintiffs' core general causation scientific theories in 2018.[2]

# ARGUMENT

## I.    The Data Underlying Tomasetti's Bad Luck Theory Is Inapplicable to the Cause of Person's Non-Hodgkin Lymphoma ("NHL").

Monsanto's explanation of the methodology behind Tomasetti's "Bad Luck Theory" ("BLT") confirms the flaws that mandate its exclusion. Monsanto explains that BLT begins with

---

[1] Alleged risk factors that Monsanto asks about in the Plaintiff Fact Sheet include, *inter alia*, exposure to fission products, jet propellant, solvents, and/or radiation; work experience in cleaning services, metalworking, electrician services, mechanics, extermination, woodworking, and/or school teaching; and medical history of diabetes, obesity, autoimmune diseases, Epstein Barr Virus, lupus, and/or rheumatoid arthritis.

[2] Dr. Tomasetti testified that he intends to offer opinions beyond those contained in his expert report. Thus, in addition to exclusion under Fed. R. Evid. 702, Rule 26 presents an independent basis to exclude Dr. Tomasetti. Reply Greenwald Decl., Ex. U, *Allegrezza v. Monsanto* Tomasetti Dep Tr. (June 30, 2023), 50:6-8, 52:12-25, 53:1-5.

a hypothesis that the number of lifetime stem cell divisions within tissue types is correlated to cancer prevalence generally. Monsanto's Opposition to Plaintiff's Motion To Exclude Dr. Christian Tomasetti, PhD., ECF No. 37 ("Opp") at 2. Next, through gene sequencing, Tomasetti examined the total number of mutations by tissue type, observing that tissues with high replication rates generally contain more mutations.

Tomasetti then attempts to ascertain the percentage of mutations attributable to environmental factors ("E"), hereditary factors ("H"), and naturally occurring "random" errors ("R"). To do this, Tomasetti examined data from Cancer Research UK ("CRUK"), which calculated the population attributable fraction ("PAF") of a set of environmental factors limited only to those classified by the International Agency for Research on Cancer ("IARC") as category 1 with respect to causes of NHL. By only considering IARC category 1 NHL causes, both CRUK and Tomasetti do not consider Roundup exposure or a host of other Category 2A probable human carcinogens to be E factors; thus, *all probable causes* of NHL were not included as E and were counted as R, thereby artificially skewing the calculation towards a greater percent attributed to R. Thus, NHL *caused or contributed to by Roundup will necessarily be included within the percentage of cancers Tomasetti ascribes to R.* The R calculation for NHL is not truly the percentage of NHL actually attributable to random mutations, but rather the percent of cancers not attributable to the E by CRUK, as defined by CRUK. Tomasetti does not calculate, nor does he offer any opinion on, the rates of R, E, and H factor mutations assuming Roundup or other environmental exposures not within CRUK's strict and limited definition do cause NHL.

## II.   Rule 702 Does Not Permit the Admission of Unreliable Exclusionary Logic

Although BLT presents a new scientific question for the Court, its logical underpinnings, as well as the principles requiring its exclusion, are well known. At its core, BLT is a differential

etiology, analogous to the "differential diagnosis" that specific causation experts use. Both are predicated upon exclusionary logic. Unlike a true differential diagnosis, however, Tomasetti "rules in" only a very limited subset of selected E factors, thereby artificially inflating what he **presumes** must be caused by R; just "bad luck". But to be reliable, methodologies dependent upon exclusionary logic must consider (*i.e.* "rule in") all probable causes of a disease. *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232, 1234 (9th Cir. 2017) ("When performing a differential diagnosis, [the specific causation expert] first assumes the pertinence of all potential causes, then rules out the ones as to which there is no plausible evidence of causation, and then determines the most likely cause among those that cannot be excluded. We have recognized that this method of conducting a differential diagnosis is scientifically sound. *See* Clausen, 339 F.3d at 1057–58."); *Hardeman v. Monsanto*, 997 F.3d 941, 961 (9th Cir. 2021), *cert. denied*, 142 S.Ct. 2834. A Court abuses its discretion when it admits expert testimony that violates this principle. *Tamraz v. Lincoln Elec. Co.,* 620 F.3d 665, 674 (6th Cir. 2010) (district court abused discretion by admitting causation expert's testimony whose "efforts to 'rule in' manganese exposure as a possible cause or to 'rule out' other possible causes turned on speculation, not a valid methodology."). Here, unlike a reliable differential diagnosis, Tomasetti fails to rule in anything other than a few causes of NHL. He did not account for the other known probable E factors not considered by CRUK. Indeed, Tomasetti concedes that he "cannot exclude that other E and H factors will be discovered in the future" and that discovery will "decreas[e] the proportion attributable to R." Greenwald Decl., Ex. F, ECF No. 16947-7, at 10-11. What he neglects is currently known probable causes of NHL.

Further, BLT cannot say whether the rates of cell division merely make tissues more susceptible to carcinogenesis or whether cell division itself is causal.[3] This theory also ignores carcinogens that increase the rate of cell division itself. In his 2017 Article, Tomasetti acknowledges this possibility, admitting "the larger the tissue, the more divisions and the more opportunities for environmental factors to increase cancer risk." Reply Greenwald Decl., Ex. V, Tomasetti, et al., Supplementary Materials for *Stem Cell divisions, Somatic Mutations, Cancer Etiology, and Cancer Prevention* (March 24, 2017), at 4. By not including a probable causes of NHL (*e.g.,* confounding variables that permeate the epidemiological literature surrounding Roundup and NHL), Tomasetti's opinions are no different from a specific causation expert who does not consider potential causes or an epidemiologist who does not consider data adjusted for confounders.[4] *In re Roundup*, 390 F. Supp. 3d at 1140 ("exclusive consideration of numbers unadjusted for other pesticides, when adjusted numbers are available, would be disqualifying.").

### III. Even if Monsanto Could Show BLT Was Reliable for Cancer *Generally*, Which it is not, it Cannot Be Reliably Applied to NHL and Fails *Daubert's* "Fit" Requirement

---

[3] Intuitively it makes sense that cell division rates are correlated with cancer incidence. Imagine a cancerous mutation in a tissue type with a low cell division rate, *e.g.,* bone tissue, which divides about once per year. Even if the mutation doubled the mitosis rate, it would take decades for a clinically relevant cancer to develop. By contrast, a similar mutation in a tissue type that divides daily (*e.g.,* colon tissue) would cause cancer to manifest more quickly. However, this hardly means cell division itself is causal. Buried in his supplemental materials, Tomasetti concedes that all his theory may show is that frequent cell division may merely increase the chances of an environmental exposure contributing to cancer. 2017 Article at 4 ("...the larger the tissue, the more divisions and the more opportunities for environmental factors to increase cancer risk.").

[4] Monsanto makes a misguided comparison between Drs. Ritz and Portier and Dr. Tomasetti. Opp. at 10. Unlike Dr. Tomasetti's work, the epidemiology Drs. Ritz and Portier rely upon looked at NHL specifically rather than cancer generally. More importantly, it accounted for and considered confounding. *See* PTO 45 ("When assessing whether an epidemiological study can form a reliable basis for an expert's opinion, a court must determine whether the study adequately considered confounding variables and possible sources of bias."

Even if Tomasetti's "bad luck" theory is relevant to cancer *generally*, it is irrelevant to NHL specifically.

***First***, Monsanto confirms that Tomasetti failed to examine certain DNA damage relevant to NHL—chromosomal translocations. Opp. at 12. In the context of NHL, Tomasetti's calculations do not include chromosomal translocations (such as those which cause NHL) as opposed to what he did consider, point mutations. In fact, Tomasetti acknowledges that his 2017 paper was focused *only* on point mutations, and that he never analyzed the rates of chromosomal translocations. Greenwald Decl., Ex. A, ECF No. 29-2, at 82:1-83:17. Nor does Monsanto's Opposition dispute that chromosomal translocations play an important role in NHL causation, highlighting an opinion from one of its own experts "that translocations are what cause lymphoma." Plaintiff's Motion to Exclude Dr. Cristian Tomasetti, ECF No. 29 ("Motion"), at 15.

It is obvious why calculations inclusive of only certain mutations, *i.e.* "point mutations" types are unreliable. Tomasetti readily acknowledges that "[t]he frequencies are different between point mutations and chromosomal translocations…" Greenwald Decl., Ex. A, at 83:25-84:2. Thus, while Monsanto is correct that Tomasetti's calculations in his 2015 paper (which did not include NHL) looked at mutations generally—*i.e.,* he calculated the total number of all mutations—he did not single out chromosomal translocations relevant to NHL.

***Second***, Tomasetti's calculations are based solely on stem cells and ignores mature cells that are capable of replication, particularly in the context of hematopoetic cells. For example, mature B-cells are capable of replication and can also do so more rapidly than hematopoietic stem cells. *See e.g.,* Reply Greenwald Decl., Exhibit W, Macallan, et al. *B-cell kinetics in humans: rapid turnover of peripheral blood memory cells* (May 1, 2005), ("Thus, in adults the mature circulating B-cell pool is maintained from 2 sources, continued output of cells from bone marrow ***and division***

*of lymphocytes in the periphery*.") (emphasis added). Accordingly, in the B-cell replication context, stem cells are not unique in their ability to self-replicate. And if mature B-cells are capable of copying themselves, there is no reason to believe they are not capable of passing along cancerous mutations to their progeny. In any event, these gaps in Tomasetti's analysis make his opinions unreliable in this case.

## IV.     Dr. Tomasetti's BLT is an Improper Diversion and Unduly Prejudicial

Although Tomasetti's BLT does not relate either to general or specific causation in this case, Monsanto tries to shoehorn its relevance by claiming it shows that NHL is caused by something, *i.e.* random bad luck. But as to general causation, testimony that 96% of NHL is due simply to "bad luck," does not address whether and to what extent Roundup, in general, can cause cancer. For example, Tomasetti does not contend that *all* NHL is caused by random mutations. He acknowledges that NHL can be caused by environmental factors. Thus, his bad luck hypothesis does not purport to answer whether Roundup can cause NHL at all.–As to specific causation, Tomasetti did not attempt to perform a "bad luck" calculation assuming Roundup does cause cancer for a specific plaintiff, nor would Tomasetti, who is not a medical doctor or toxicologist, be permitted to weigh in on the specific cause of an individual person's cancer. Thus, BLT has no relevance to specific causation: while Monsanto states repeatedly that Tomasetti is a general causation expert, the fact remains that Monsanto's specific causation experts rely exclusively on Tomasetti's BLT. At its root, Monsanto uses Tomasetti as a specific causation expert, an arena in which he is not qualified to testify.[5]

---

[5] See Motions to Exclude Drs. Navarro and Slack, ECF Nos. 26, 27. To put this argument context, it would not be enough for a Plaintiff's specific causation expert to opine that since plaintiff used Roundup, and the general causation experts conclude that Roundup causes NHL, by extension the

PLAINTIFF'S REPLY IN SUPPORT OF DAUBERT MOTION TO EXCLUDE THE OPINIONS AND
TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. CRISTIAN TOMASETTI, PH.D.

Monsanto suggests *Timblin v. Kent Gen. Hospital,* 640 A.2d 1021, 1024 (Del. 1993),
upheld expert opinions that extrapolate causation from population-wide statistics. In fact, *Timblin*
held admission of such evidence was improper when "the statistical probability evidence. . . had
minimal probative value and created substantial risk of confusion and prejudice" and "had little, if
any, relevance to this issue of causation in this case." *Id.* at 1023, 1025. Further, the court stated
that even when the exception for admission is present, "the evidence must be carefully scrutinized
to ensure its relevance and to guard against unfair prejudice." *Id.* at 1024.

## V.      Tomasetti intends to present methodologically unsound opinions

At its core, Tomasetti's testimony is designed to confuse and to obfuscate the causation
issues the jury must decide.  As set forth above, his greater than 96% bad luck theory lacks
scientific underpinnings. But even if Tomasetti is right that 96% of NHL in the population as a
whole is caused by bad luck, it does not follow that there is a 96% chance that the individual
*Plaintiff's* NHL was caused by bad luck. Yet, Tomasetti testified he will offer this precise opinion:

> If we're talking about a patient that does not have viral or bacterial
> exposures that are associated, you know, to NHL, or autoimmune disease,
> or as being exposed to, say, very strong amounts of radiation, basically if
> it's not on the list of the recognized risk factors, that I would say that the—
> based on the data that we have, I would say that, you know, with 97 percent
> probability, this patient's cancer was caused by just normal replication
> errors.

---

plaintiff's Roundup exposure caused or contributed to her NHL. And while a defendant typically
does not have to perform a differential diagnosis to oppose causation, that legal principle does not
hold true if a defendant offers opinions about what caused plaintiff's disease, as Monsanto intends
to do here through Tomasetti's BLT. *See, e.g., Allphin v. Peter K. Fitness, LLC*, 78 F. Supp. 3d
987, 997 (N.D. Cal. 2015) ("the Court similarly must hold a defendant to that same standard when
attempting to prove an affirmative defense") (collecting cases). As such, Monsanto must comply
with Ninth Circuit law and present experts who perform an appropriate differential diagnosis,
which it did not do. And presumably it cannot do such an analysis as Tomasetti himself admits
that his BLT is **not** intended for a specific causation analysis. See Greenwald Decl., Ex. C, ECF
No. 29-4, at 47:12-48:19.

PLAINTIFF'S REPLY IN SUPPORT OF DAUBERT MOTION TO EXCLUDE THE OPINIONS AND
TESTIMONY OF MONSANTO COMPANY'S PROPOSED EXPERT DR. CRISTIAN TOMASETTI, PH.D.

Greenwald Decl., Ex. A at 130:19-131:2. He does not explain further the methodology he uses to render such an opinion. What is more, that is a specific causation opinion.

## VI.   Monsanto Cannot Shift its Burden of Proving its Defense to the Plaintiff

Monsanto does not actually provide critical calculations of the R factor, or for that matter for H and E, but merely suggests that the necessary calculations are contained somewhere in his supplemental materials to his papers. To make Tomasetti's opinion anything other than *ipse dixit*, it is necessary to have the underlying cell division rate for his calculations, which does not appear to be included in the supplemental materials. Both Tomasetti and Monsanto essentially say "go find it yourself." Opp. at 12-13.  But FRE 702 demands more; it requires that Monsanto -- not Plaintiff -- prove by a preponderance of evidence that Tomasetti's opinions are reliable. Monsanto cannot shift its burden by handing the Plaintiff or the Court a stack of papers containing thousands of ill-defined calculations and say "what you're looking for is in there somewhere – go find it." And despite Plaintiffs' attempts to obtain that information from Tomasetti at depositions, Tomasetti was either unwilling or unable to provide the hematopoietic stem cell division rates, mutation rates, or other critical calculations that underlie his BLT. Even at Roundup trials, Tomasetti has refused to answer these critical questions, stating that "I have to look at the tables for the paper. It's there." Reply Greenwald Decl., Ex. X, *Johnson v. Monsanto* Co. Tomasetti Dep. Tr. (June 10, 2022), at 1760-62.[6]

---

[6] Dr. Tomasetti's obfuscation continued: "Q: Okay. So you put in a number for RR to do this calculation? A: I put a number for R, I put a number for N, I put a number for X, and that will tell me what is the C that solves this equation. Q: And what number did you put in for RR for NHL? A: So for every exposure that was listed as an environmental exposure for NHL. . . there is a relative risk, which is estimated by SEER dataset or -- actually, in this case, maybe it was UK Cancer Research database. . . So it depends on which paper. It gets to be confusing, yeah. . . Q: And so what -- what number did you get from Cancer Research UK? A: I have to look at the tables for the paper. It's there."

## VII.   Tomasetti Overstates His Opinion: Joiner v. General Electric and "Fit" Jurisprudence on 702/Daubert

When evaluating the admissibility of scientific evidence, courts must look not only at methodology but also must evaluate whether the conclusions are supported by sufficient facts and data. What is generally accepted is a concept that was well established long before Tomasetti's BLT -- that some random errors are responsible for some cancers. But there is little support for Tomasetti's BLT that 96% of NHL cases are due to random mutations. Indeed, while Monsanto cites to Plaintiffs' experts' agreement that cancers can be caused from random errors, neither Tomasetti nor Monsanto cites to a single Plaintiff's expert nor to any peer reviewed study, other than Tomasetti himself, that endorses the conclusions that Tomasetti reaches – that 96% of all NHL cases -- are caused by bad luck. What is more, Monsanto's citations to Plaintiff's expert Dr. Conry related to questions it asked Conry about cancer generally -- not in relation to NHL and whether the BLT would be equally applicable to NHL. Like all good scientists, he agreed to the obvious – that of course some *cancers* can be and are caused by random mutations. Regardless of growing acceptance of the general principles underlying BLT, the manner in which Tomasetti intends to present his conclusions as applied in this case are unreliable.

## VIII.   Monsanto Does Not Support its Arguments with Credible Evidence

Contrary to Plaintiff's Motion, which cites to Tomasetti's deposition testimony, Monsanto's Opposition relies on unsupported, ad hominem attacks designed to confuse the issues and would undoubtedly confuse and mislead a jury. In fact, while Monsanto claims that "Plaintiff repeatedly mischaracterizes Dr. Tomasetti's work in an effort to make it sound unreliable," Opp. at 11, and hypothesizes about what Dr. Tomasetti ideally "will testify" to, *id*. at 12, it systematically fails to cite anything that Dr. Tomasetti *has testified* to or reference the

inconsistencies between those two positions. In fact, the only proposition that is supported—that hematopoietic stem cells precipitate more differentiated B-lymphocytes—is not a controversial statement, a matter of scientific debate, nor one which any expert in this case disputes. *Id*.

However, that's where Tomasetti's testimony ends and Monsanto's begins. While Monsanto's opposition claims that "driver mutations" must originate in "hematopoietic stem cells," and that NHL "'originating' in mature B cells" is a "misnomer," Tomasetti has testified that "NHL certainly ***derives*** from B cells" and that B cells "are the type of cells in which non-Hodgkin's lymphoma ***can arise from***." *Id*.; Reply Greenwald Decl., Ex. Y, *Seitz v. Monsanto Co.* Tomasetti Dep. Tr. (Feb. 13, 2020), at 177:10-179:3. Tomasetti's actual testimony is a far cry from Monsanto's claim that "mutations that cause the cancer, by necessity, *had* to originally come from the hematopoietic stem cells from which all lymphocytes derive." *Id*. Rather, Tomasetti has testified that "I want to make clear this is – I'm talking about stem cells because I think that's the most natural place where to think in terms of where the damage occurs, ***but of course this can happen at the progenitor level too. It doesn't have to be necessarily a stem cell***." Reply Greenwald Decl., Exhibit Z, *Jimenez v. Monsanto Co.* Tomasetti Dep. Tr. (Sept. 13, 2021), at 113:24-116:14 (emphasis added).

Further, Monsanto's challenge regarding the rate of mutation Tomasetti uses is particularly confusing given Tomasetti's changing testimony on this issue. While in May 2023, Dr. Tomasetti testified in trial that his conclusions rest on the "proportions of mutations that are found in this cancer[]," which he "calculated,", Reply Greenwald Decl., Ex. AA, *Gordon v. Monsanto,* Tomasetti Trial Tr. (May 16, 2023), at 4630:16-4361:2, the prior year he repeatedly stated he "didn't actually use the mutation rate in the calculation." Reply Greenwald Declaration, Ex. X, at 1770:9-1771:2. Monsanto cannot change Dr. Tomasetti's testimony for its own convenience.

## CONCLUSION

For the reasons set forth above, the Court should exclude Dr. Tomasetti.


Dated July 28, 2023                                    Respectfully submitted,

                                        By:    */s/ Robin L. Greenwald*
                                               Robin L. Greenwald (*Pro Hac Vice*)
                                               **WEITZ & LUXENBERG, P.C.**
                                               700 Broadway, Fifth Floor
                                               New York, NY 10003
                                               Telephone: 212-558-5802
                                               Facsimile: (212) 344-5461
                                               rgreenwald@weitzlux.com

                                               *Attorney for Plaintiff*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of July 2023, a copy of the foregoing was

filed with the Clerk of the Court through CM/ ECF system which sent notice of the filing to all

appearing parties of record.

                                               */s/ Robin Greenwald*