# EXHIBIT U



# PohlmanUSA®
## Court Reporting and Litigation Services

Cristian Tomasetti, Ph.D.

June 30, 2023

Barbara Allegrezza, et al.

vs.

Monsanto Company

## Page 1

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

BARBARA ALLEGREZZA, et al.,  )
                             )
        Plaintiffs,           )
                             )
vs.             ) No. 19SL-CC03421
                             )
MONSANTO COMPANY,            )
                             )
        Defendant.            )

VIDEOTAPED DEPOSITION OF CRISTIAN TOMASETTI, Ph.D.
VIA ZOOM

Taken on behalf of Plaintiffs
June 30, 2023

Kathy Heeb, CCR #1361

PohlmanUSA Court Reporting (877) 421-0099

## Page 2

INDEX OF EXAMINATION
QUESTIONS BY MR. WOOL. . . . . . . . . . . . . 5

INDEX OF EXHIBITS
| NUMBER | DESCRIPTION | PAGE |
| --- | --- | --- |
| 1 | Expert report of Dr. Tomasetti | 55 |
| 2 | Expert report without highlights | 55 |
| 3 | Report from Monsanto's expert | 77 |
| 4 | Asfari document | 121 |

## Page 3

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

BARBARA ALLEGREZZA, et al.,  )
                             )
        Plaintiffs,           )
                             )
vs.             ) No. 19SL-CC03421
                             )
MONSANTO COMPANY,            )
                             )
        Defendant.            )

VIDEOTAPED DEPOSITION OF CRISTIAN TOMASETTI, Ph.D., produced, sworn, and examined on behalf of Plaintiffs, June 30, 2023, commencing at 9:00 a.m. and concluding at 1:20 p.m. Pacific Time, via Zoom, before Kathy Heeb, a Certified Shorthand Reporter for the State of Missouri.

REMOTE APPEARANCES

For Plaintiffs:
    Wool Trial Law, LLC
    By: David Wool, Esq.
    1001 Bannock Street, Suite 410
    Denver, CO 80204

For Monsanto Company:
    Goldman, Ismail, Tomaselli,
    Brennan & Baum, LLP
    By: Sarah Kinter, Esq.
    200 South Wacker Drive, 22nd Floor
    Chicago, IL 60606

Also Present Remotely:
    Frank Holmes, Videographer

## Page 4

        IT IS HEREBY STIPULATED AND AGREED by and between Counsel for the Plaintiff and Counsel for the Defendants, that this deposition may be taken in shorthand by Kathy Heeb, a Certified Shorthand Reporter, and afterwards transcribed into typewriting.
                    O-O-O
        THE VIDEOGRAPHER:  We are on the record. This is the videotaped deposition of Cristian Tomasetti, Ph.D.  Today's date is June 30, 2023, and the time is 9:00 a.m. Pacific Time.
        This is the case of Barbara Allegrezza, et al., versus Monsanto Company.  Case number is 19SL-CC03421, pending in the Circuit Court of St. Louis County, State of Missouri.  This deposition is being held remotely via Zoom.
        My name is Frank Holmes, the videographer associated with PohlmanUSA Court Reporting, located at 10 South Broadway, Suite 1400, St. Louis, Missouri. The court reporter is Kathy Heeb, also with PohlmanUSA Court Reporting.
        Counselors, will you please state your appearance for the record.
        MR. WOOL:  David Wool for the plaintiff.
        MS. KINTER:  Sarah Kinter for defendant.
        THE VIDEOGRAPHER:  Will the court reporter

```
 1   blood test, which is not what Cologuard does
 2   currently.  So I don't know that if that technology is
 3   in the future but --
 4        Q.  And I'm not trying to interrupt you.  You
 5   said that the technology is used for finding what in
 6   the --
 7        A.  Advanced adenomas.  These are big polyps
 8   basically.  They are not cancer, but you may want to
 9   know that you have in order to, you know, decrease
10   your risk of colorectal cancer, remove them.
11        Q.  Okay.  And let's take a break in just a
12   minute because we've been going a little over an hour.
13   But just before we do, and I just want to ask you,
14   Exhibit 1, which I believe you downloaded, is your
15   current expert report, correct?
16        A.  Let me just see.  I mean, it looks from
17   what I can see.
18        Q.  Let me just ask it like this.  You wrote an
19   expert report or updated an existing expert report and
20   signed it May 3, 2023, correct?
21        A.  Probably.  You have this information down
22   better than me.  I don't remember.  I know that this
23   year in the spring at some point I signed -- you know,
24   and I produced and signed the most current version of
25   the expert report.  And so if this is -- if what you
                                                        49
```

```
 1   tell me is that, then that will be the most current
 2   version, yes.
 3        Q.  Okay.  And the most current version of the
 4   expert report that you updated and signed in the
 5   spring of 2023 contains a complete set of the opinions
 6   that you intend to offer in this Roundup case or --
 7   and the federal Roundup cases?
 8        A.  No.
 9        MS. KINTER:  Object to form.  I'm sorry to
10   interrupt.  I don't believe that Dr. Tomasetti served
11   a report in this case so I'm just wondering where this
12   report -- which case this report comes from.
13        MR. WOOL:  I think the MDL, if I'm not
14   mistaken.
15        MS. KINTER:  And is that how you obtained
16   it, through the MDL?
17        MR. WOOL:  I can't remember how I got it,
18   to be honest.  I mean, somebody might have sent it to
19   me.  But, I mean, I didn't write it and, you know, so
20   I've got this report.
21        MS. KINTER:  Okay.  I will just note an
22   objection for the record about using a report that was
23   not served in this litigation.
24        MR. WOOL:  What's your objection?
25        MS. KINTER:  It's just asking questions
                                                        50
```

```
 1   about a report that was not actually served in this
 2   particular case.  I just want to note that objection
 3   for the record.
 4        MR. WOOL:  Okay.  I'm not clear on why that
 5   would be an objection, but the objection is noted.
 6        Q.  But, Dr. Tomasetti, I think I was just
 7   asking you if the most recent version of your expert
 8   report that you updated and signed in the spring of
 9   2023 contains the complete opinions that you intend to
10   offer in, let's say, the MDL?
11        A.  No, I think there is some confusion.  The
12   expert report was written at that time for whatever
13   was needed at that time.  The -- I -- I didn't -- I
14   didn't rely on any expert report for -- if you're
15   asking me for this deposition today.  I don't know if
16   in the future I will be asked for an expert report.
17        But I also don't know, having heard what
18   you just said, if you don't even know where this
19   document is coming, not to confirm what you're showing
20   me is actually my expert report, then I would have to
21   have my expert report from this other -- you know,
22   from May, if the date that you're mentioning is
23   correct, and check page by page that it is correct.
24   At this point I will never say yes before
25   double-checking that that is actually the case.  So...
                                                        51
```

```
 1        Q.  So my question, though, is specific -- was
 2   not about this document, right?  It was about the
 3   report that you updated and signed in the spring of
 4   this year.  That's what you --
 5        A.  Yeah, and I already answered, that was the
 6   first part of my question -- of my answer to you was
 7   that I'm here and I'm not relying on the expert
 8   report.
 9        Q.  Okay.
10        A.  Expert report has a different purpose.
11   Today we are here, I'm ready to answer your questions.
12        Q.  No, no, I understand.  But my question,
13   though, is about the -- as it pertains to the report
14   that was updated in the spring of 2023, right?  The
15   one that you signed.  Does that report contain a
16   complete set of the opinions that you currently intend
17   to offer in any federal Roundup case?
18        A.  I -- I already told you, no.  I'm here.
19   And I'm -- my -- I'm here to, you know, to be deposed
20   by you.  And I'm -- I have my set of opinions.  You
21   know, those documents are not living documents.  So if
22   I'm asked tomorrow by the lawyers here to produce a
23   report, I expect that may have changes -- every time
24   I've -- you know, that's been the purpose, I think
25   there have been several versions, the reports is
                                                        52
```

13 (Pages 49 to 52)

```
 1   updated.  That report has nothing to do with my
 2   deposition.  Except obviously being a report on the
 3   same topic.  But, you know, I don't like when you say
 4   this represent your complete set of -- you know,
 5   again, I'm a mathematician.  That's -- that's wrong.
 6        Q.  Okay.  So not this case but the federal
 7   cases, it would be inaccurate to say that that report
 8   contains a complete set of the opinions that you
 9   intend to offer, correct?
10        A.  I answered that question by saying that as
11   of today, I would have to review the report, because
12   at this point it's a month or two old and so on.  I
13   would have to review -- I would have to know exactly
14   what is the purpose of the new updated version of the
15   report, and then I would be able to answer your
16   question.  But that's certainly -- does not contain --
17   or I cannot say it contains the complete set of my
18   opinions on -- on everything that's about Roundup.
19        Q.  Let's take a quick break.  And if you would
20   just indulge me to just glance over Exhibit 1, it's
21   not a gotcha, you know.  I remarked to your counsel
22   that I couldn't remember whether I got it from another
23   lawyer or where, but I will represent that, you know,
24   other than maybe highlighting something here or there,
25   I certainly didn't edit or change anything, so just
                                                          53
```

```
 1   take a look at that over the break because I'm just
 2   going to ask if that is the report that you authored.
 3        A.  I will, but just -- I can tell you already
 4   now that if you asked me that question, I will not
 5   answer yes or no to you because unless I have a copy
 6   of my actual report, and I can compare it word by
 7   word, I have enough experience with how some of this
 8   lawyering-works works, that to know that, you know, it
 9   may look almost identical, but then it's not, and then
10   I make -- I testify or make statements that are not
11   correct.
12            So just so you know, as long -- what I can
13   see possible is that as long as you're willing to ask
14   me questions where I will start every sentence by
15   saying assuming that, you know, this is indeed an
16   identical copy of my most recent report, blah blah
17   blah, then we are fine.  We can do that.  But I will
18   not be able to testify today to the court reporter
19   that that is indeed, I can confirm it's my report.  I
20   don't have anything with me except these three
21   documents.  I don't have my computer.  I don't have
22   any way to really check.
23        Q.  Do you have your cell phone?
24        A.  That's only thing I have.  I have cell
25   phone and car keys and these documents --
                                                          54
```

```
 1        Q.  So if I put you on your cell phone, and
 2   your lawyer could probably just kind of cut through
 3   all of this, all I'm trying to look for is just if you
 4   can tell me the date that you signed the most recent
 5   version of your expert report.  I think that's a fair
 6   question.
 7        A.  In the break, I'm happy to check if that's
 8   possible, if that's, you know, if Sarah can do that.
 9   As I said, I don't have any -- obviously any problem
10   with that.  I signed it.  I think it's --
11            MR. WOOL:  Yeah, that's all that I'm
12   asking.  So let's go off the record and take a quick
13   break.
14            THE VIDEOGRAPHER:  This is the
15   videographer.  We are going off the record.  The time
16   is 10:24 a.m.
17            (Recess taken.)
18            (Exhibit 1 is deemed marked.)
19            THE VIDEOGRAPHER:  We are back on the
20   record at 10:38 a.m.
21            (Exhibit 2 is deemed marked.)
22        Q.  (BY MR. WOOL)  Okay, Dr. Tomasetti, I
23   marked as Exhibit 2, a copy of the same document that
24   is Exhibit 1, only Exhibit 2 does not contain any
25   highlights.  It is the original document as I received
                                                          55
```

```
 1   it.
 2            Do you have Exhibit 2 in the chat?
 3        A.  I see it.  I don't know if we download the
 4   second version, but if you said -- I believe you said
 5   it's just the same, identical, just without
 6   highlighting.
 7        Q.  Correct.
 8        A.  Then it doesn't make a difference to me.
 9        Q.  Okay.
10        A.  The one with the highlighting is the same
11   thing.
12        Q.  Okay.  And I believe you had a chance to at
13   least peruse over Exhibit 1.  Assuming Exhibit 2 is
14   identical in content, minus the highlights, is Exhibit
15   2 a copy of the expert report that you authored this
16   spring for Roundup non-Hodgkin's lymphoma cases in the
17   federal court?
18        A.  As I already told you before we stopped for
19   the break, I cannot tell you that for sure because I
20   don't have the original document with me, and I would
21   have to check.
22            I'm happy to answer questions assuming that
23   in fact what you're showing me is the original
24   document.  I don't have any reason to think that it's
25   not.  But I cannot tell you for sure, I would have to
                                                          56
```

14 (Pages 53 to 56)

```
 1   what is the evidence about the science.
 2         And so when, you know -- for example, just
 3   to give you an example, when I say that there was a
 4   point A correlation in my Figure 1 of the paper 2015,
 5   I'm -- you know, I stand by that analysis to a
 6   reasonable degree of scientific certainty because I
 7   know that I put those numbers together.  I know I did
 8   that analysis, so I'm pretty certain that that is the
 9   correct analysis.
10      Q.  Okay.  But just for my specific question,
11   you can't quantify it, you can't put a percentage on
12   it, even if it's at least this percent.  Or can you?
13      A.  It's -- I don't know that anyone can.  I
14   mean, I would love for you to tell me anyone in the
15   world that can do that.
16         MR. WOOL:  Okay.  Fair enough.  I was just
17   trying to get an answer to that.
18         That's it --
19         THE WITNESS:  I would be the first person
20   saying yes to you.  You would have to, you know --
21         MR. WOOL:  You'd be surprised.  I think
22   some others have said yes and put a percentage.
23         But that's the last question, so unless
24   your counsel has questions, that's it for me.
25         MS. KINTER:  I have no questions.
                                                     145
```

```
 1         MR. WOOL:  Okay.  We can go off the record.
 2         THE VIDEOGRAPHER:  This is the
 3   videographer.  This ends the deposition.  We're going
 4   off the record at 1:20 p.m.
 5
 6
 7         (Whereupon the deposition concluded at
 8         1:20 p.m.)
                                                     146
```

```
 1                 REPORTER CERTIFICATE
 2
 3         I, KATHY HEEB, a Certified Shorthand
 4   Reporter, do hereby certify that there came before me
 5   via Zoom,
 6             CRISTIAN TOMASETTI, Ph.D.
 7   who was by me first duly sworn; that the witness was
 8   carefully examined, that said examination was reported
 9   by myself, translated and proofread using
10   computer-aided transcription, and the above transcript
11   of proceedings is a true and accurate transcript of my
12   notes as taken at the time of the examination of this
13   witness.
14         I further certify that I am neither
15   attorney nor counsel for nor related nor employed by
16   any of the parties to the action in which this
17   examination is taken; further, that I am not a
18   relative or employee of any attorney or counsel
19   employed by the parties hereto or financially
20   interested in this action.
21         Dated this 10th day of July 2023
22         _____
23         Kathy Heeb, CSR, CLR
24
25
                                                     147
```