**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Engilis v. Monsanto Company*,<br>3:19-cv-07859-VC | **DEFENDANT MONSANTO COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S *DAUBERT* ORDER EXCLUDING THE TESTIMONY AND OPINIONS OF ANDREW SCHNEIDER, M.D.**<br><br>Hearing date: September 11, 2023<br>Time: 10:00 a.m. |

The Court's ruling on Monsanto's *Daubert* motion to exclude the testimony and opinions of Andrew Schneider, M.D. was correctly decided and should not be reconsidered. Dr. Schneider's opinions have never been admitted by any court in the Roundup litigation. Plaintiffs' motion merely rehashes the same arguments made in opposition to the *Daubert* motion, which this and other courts have rejected on the grounds that Dr. Schneider's methodology is unreliable and therefore does not meet the well-established standards for admissibility of expert testimony. The Court should stand by its decision and deny Plaintiffs' motion for reconsideration.

**FACTUAL BACKGROUND**

The Court is intimately familiar with the facts. Monsanto incorporates by references its prior *Daubert* briefings in this case, including those specifically concerning Dr. Schneider. (See ECF Nos. 29 & 40.) By way of response to Plaintiffs' recitation of facts in its motion to reconsider (at 5), there is no dispute here that Dr. Schneider is a clinical hematologist and oncologist who treats NHL patients. It is also well known that he is also a professional litigation witness who has been designated as an expert in over 200 other cases, mostly medical malpractice cases and mostly for plaintiffs. Despite Plaintiffs' attempt to save Dr. Schneider's flawed methodology by suggesting the he has "stayed atop of the oncology literature" (Mot. at 5), the uncontroverted facts underlying the Court's decision remain the same. *First*, in arriving at his opinions in this case, Dr. Schneider "did a Google search, and . . . said look for the association of CLL and melanoma." Ex. A hereto, ("Schneider *Engilis* Dep.") at 112:16-19. He did not perform any further research and did not even search more reliable databases such as PubMed or Google Scholar. Ex. B hereto, Deposition of Dr. Andrew Schneider in *Ferro et al. v. Monsanto Co.*, Cause No. 20SL-CC03678 (Cir. Ct. of St. Louis, Mo.) ("Schneider *Ferro* Dep. Vol. 1") at 50:8-51:10. *Second*, based on his review of the handful of studies he found through this unreliable methodology, together with other studies that were provided to him by Plaintiffs' counsel, Dr. Schneider arrived at four, sweeping opinions in this case, which bear repeating here in view of the scant and unreliable research he carried out.

If permitted to testify, Dr. Schneider would opine, on the basis of little more than a simple Google search and cherry-picked studies provided to him by Plaintiffs' counsel, that:

(1) Roundup is generally capable of causing CLL, Ex. A, Schneider *Engilis* Dep. at 23:13-21, Roundup is an etiologic agent that causes NHL, *id.* at 24:1-2, 24:24, and Roundup causes the NHL subtype CLL, *id.* at 24:3-5.

(2) Mr. Engilis's use of Roundup caused or contributed to his CLL, *id.* at 29:16-20, and Mr. Engilis "had 24 years of Roundup exposure which . . . was the etiologic agent which eventually caused his CLL," *id.* at 39:19-21; *see also id.* at 40:21-22 (same) & 48:3-5 (same).[1]

(3) "[P]atients with CLL have immunodysfunction and are at risk for second malignancies," *id.* at 38:22-24, and, with respect to Mr. Engilis, "decreased immunity and B-cell dysfunction of CLL probably, more likely than not, accounts for this emergence of second malignancy such as [transitional cell carcinoma, or TCC] of the bladder," *id.* at 39:7-10 & 21-23, and melanoma, *id.* at 40:23-24; *see also id.* at 48:8-12 ("CLL caused by the glyphosate is the reason to develop two other malignancies, that being melanoma and TCC to the bladder[.]").

(4) Glyphosate is genotoxic and causes oxidative stress, *id.* at 67:18-20, genotoxicity and oxidative stress is a mechanism that "allows" glyphosate to cause NHL and CLL, *id.* at 67:18-25, and animal studies show glyphosate causes NHL, *id.* at 28:8-11, 31:11-13.

Even if he were qualified to give these opinions, which he is not, Plaintiffs' motion is devoid of any rationale that would support permitting Dr. Schneider to testify at trial or at a *Daubert* hearing, let alone any factual or legal basis for the Court to reconsider its Order excluding Dr. Schneider's opinions in this case. The Court should deny the motion.

## LEGAL STANDARD

A motion for "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if

---

[1] Dr. Schneider also opined in his first case as a Roundup expert that anyone who uses Roundup for more than two days a year or ten days in a life-time is at an increased risk of NHL. Ex. B, Schneider *Ferro* Dep. Vol. 1 at 262:17-263:6.

- 2 -

there is an intervening change in controlling law." Sienze v. Cnty. of Lake, No. 19-CV-04279-JSW, 2021 WL 6332776, at *1 (N.D. Cal. Apr. 6, 2021) (quoting *School Dist. No. 1J, Multnomah Cty. Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). *See also* N.D. Civ. L.R. 7-9(b)(1)-(2) (permitting motion for reconsideration when, *inter alia*, there is "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought" or "new material facts" emerged after the order).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 935 (9th Cir. 2003). "Motions for reconsideration are disfavored and are rarely granted." *Grigoryan v. Experian Info. Solutions, Inc.*, 2015 WL 1909584, at *1 (C.D. Cal. Apr. 27, 2015). "[W]hether there exists a showing of inadvertence of excusable neglect is purely a matter of discretion with the trial court." *Smith v. Stone*, 308 F.2d 15, 17-18 (9th Cir. 1962).

## ARGUMENT

As an initial matter, Plaintiffs' motion should be denied because it presents neither "new material facts" nor "a material difference in fact or law from that which was presented to the Court" when the parties briefed Monsanto's *Daubert* motion to exclude Dr. Schneider. *See* N.D. Civ. L.R. 7-9(b)(1)-(2). Even a cursory comparison of Plaintiffs' Motion for Reconsideration to his Opposition makes clear that the former is simply a repackaging of the latter.  For example, Plaintiffs' Opposition argued that Dr. Schneider understands various epidemiological terms; that Dr. Schneider's Google search generated the medical literature he relies upon; and that Dr. Schneider's differential diagnosis is presumptively reliable. *See* Pls.' Opp. to Monsanto's Mot. to Exclude Dr. Schneider at 6 (epidemiological terms), 13 (Google), and 14-15 (differential diagnosis). Plaintiff's motion for reconsideration repeats these same arguments. *See* Pls.' Mot. for Reconsideration at 6 (epidemiological terms), 10 (Google), and 14-16 (differential diagnosis). It also cites much of the same case law. Plaintiffs' arguments were unpersuasive then and remain unpersuasive now.  This Court should exercise its broad discretion and deny Plaintiffs' attempt at a do over.

## I. THERE IS NO BASIS FOR THE COURT TO VACATE ITS ORDER EXCLUDING DR. SCHEIDER.

Plaintiffs point to three reasons that, in their view, the Court should vacate its prior order. *First*, Plaintiffs attack the Court's reasoning as inconsistent with the Ninth Circuit's general, "liberal" approach to *Daubert* motions because the Court "erred by focusing solely on the choice of search engine used by Dr. Schneider." (Mot. at 8). *Second*, Plaintiffs contend that the case law relied upon by Monsanto (and the Court) does not support the decision to exclude Dr. Schneider, because "the materials which underlie the expert's opinion are sufficiently reliable to support that opinion." (Mot. at 11.) This argument merely rehashes the same points made in Plaintiffs' opposition to Monsanto's *Daubert* motion. (*See* ECF No. 32.) While Plaintiffs may disagree with those cases – all of which resulted in experts similar to Dr. Schneider being excluded – they offer no explanation as to why the Court should view these cases any differently now than before. *Third* and finally, Plaintiffs assert that this Court should permit Dr. Schneider to testify because he produced a "detailed and comprehensive" expert report in this case. This argument is also unavailing; whether Dr. Schneider produced a report – even if it were "detailed and comprehensive" – says nothing about the flawed methodology he described using when he was deposed in this and other Roundup cases. Under the Federal Rules, every expert is required to produce a report, and simply doing so does not render the expert's opinions admissible.

### A. The Court's Order Excluding Dr. Schneider is Consistent with *Daubert*.

With respect to the Court's order excluding Dr. Schneider, Plaintiffs complain that the Court failed to conduct its analysis of Monsanto's *Daubert* motion with "a liberal thrust favoring admission," citing the Court's own prior *Daubert* Order in this case. (Mot. at 7.) At the outset, this is belied by the fact that the Court denied Monsanto's motions to exclude six of Plaintiffs' other experts in the very same Order. (ECF No. 45.) Further, Plaintiffs mischaracterize the Order to suggest that the Court's sole focus was Dr. Schneider's "choice of search engine." (Mot. at 8.) That is not what the Order said. In excluding Dr. Schneider, the Court explained:

Monsanto's motion to exclude the testimony of Dr. Schneider is granted. As a Missouri

- 4 -
MONSANTO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S *DAUBERT* ORDER EXCLUDING THE TESTIMONY AND OPINIONS OF ANDREW SCHNEIDER, M.D.

court held in another Roundup case, Dr. Schneider cannot base his opinions "on results he found on Google and what Plaintiffs' lawyers gave to him" because that "is not a reliable method upon which to form an opinion." *Ferro v. Monsanto*, Cause No. 20SL-CC03678, Order Regarding Parties' Motions to Exclude Experts, at 6-7 (Mo. Cir. Ct. Oct. 13, 2022).

Thus, the Court's finding was multifaceted. The Court noted that another court had excluded Dr. Schneider because his methodology was not reliable. Importantly, as was discussed in the parties' *Daubert* briefs concerning Dr. Schneider, the Missouri *Ferro* case involves the exact same issues as this case, and Dr. Schneider sought to offer essentially identical opinions. In addition, while the Court rightly criticized Dr. Schneider's methodology, the Court also expressly observed that Dr. Schneider ***cannot base*** his far-reaching opinions on a combination of a simple Google search plus a number of self-selected studies given to him by Plaintiffs' counsel in this case. The Court's finding thus does not appear to be based solely on the fact that Dr. Schneider used Google. Rather, the Court found that the specific opinions Dr. Schneider seeks to offer here could not reliably be based on the methodology he described using in both this case and the *Ferro* case. The Court thus correctly found that Dr. Schneider's opinions lacked the indicia of reliability that are necessary for expert testimony even under the "liberal thrust" of *Daubert*.

### B.      Courts Have Rejected the Same Google Search Methodology as Unreliable.

Plaintiffs also complain that the "case law cited by Monsanto all stands for the proposition that an expert should not rely on Google for the substance of the expert's opinion—not that an expert can't employ Google as a means of obtaining the relevant literature that supports the opinion." (Mot. at 9.) Here, Plaintiff points to two cases – *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 289 (4th Cir. 2021), and *Madison v. Courtney*, No. 4:18-cv-00671, 2019 WL 8263428, at *3 (N.D. Tex. Jan. 26, 2019) – purportedly cited by Monsanto in its *Daubert* motion to exclude Dr. Schneider. As an initial matter, Monsanto cited those cases in its motion to exclude Dr. Schneider in the Missouri *Ferro* case, not here. Both cases are, however, instructive. In *Sardis*, the Fourth Circuit held that an expert's testimony should have been excluded where the expert "pointed the district court and the jury to 'Google' for standards he could not identify," which is exactly what Dr. Schneider did here. Similarly, in *Madison*, a federal district court found an expert witness's testimony unreliable where "it appears [the witness],

- 5 -

instead of turning to medical or dental publications, merely ran a Google search". Notwithstanding Plaintiffs' protestations that Dr. Schneider did not rely on Google for the "substance" of his opinions, the records shows that he methodology was similar to those described—and rejected—in *Sardis* and *Madison*. By way of example, and as explained in Monsanto's *Daubert* motion in this case, Dr. Schneider's deposition testimony made clear that he was unfamiliar with his own list of materials relied on, and he could not remember the names of the studies he found and relied on from his Google search, let alone the details of those studies. Ex. A, Schneider *Engilis* Dep. at 19:8-14, 30:15-31:20, 36:2-16, 36:25-37:8, 78:9-14; *see also* Ex. B, Schneider *Ferro* Dep. Vol. 1 at 26:16-27:12; 46:23-47:1. The Court should not permit Plaintiffs' attempt to save Dr. Schneider from his flawed methodology by arguing after the fact that his opinions were not "based on" his inadequate Google search methodology. They were. That is precisely why both this and the *Ferro* court excluded him.

### C. Dr. Schneider's Expert Report Does Not Save His Flawed Methodology.

Plaintiffs also attempt to shore up Dr. Schneider's flawed methodology by suggesting that this case is different than the *Ferro* case because Dr. Schneider prepared what Plaintiffs self-servingly describe as a "detailed and comprehensive" expert report. Plaintiffs go to great lengths in their Motion to Reconsider (at 12) to describe Dr. Schneider's methodology as it is stated in his expert report. This argument is unavailing, however, because Dr. Schneider's description of his methodology in the report also comes nowhere close to satisfying *Daubert*. He states, for example (and as relevant here), that he "relied upon general causation experts of other experts in this litigation" and "review[ed] . . . the literature and materials considered in this case[.]" (Mot. at 12.) If anything, this summary of Dr. Schneider's "methodology," in his own words, *confirms* that he did nothing more than run a Google search and review the documents that were provided to him by Plaintiffs' counsel. That is not a sound methodology, and the fact that Dr. Schneider prepared a report for this case does nothing to change the inherent weaknesses in his method for arriving at his opinions in this case.


## II. DR. SCHNEDIER SHOULD NOT BE PERMITTED TO TESTIFY AS TO SPECIFIC CAUSATION.

As a final plea, Plaintiffs ask the Court to allow Dr. Schneider to testify as to specific causation even if he is precluded from testifying about general causation. But that is not possible, as Dr. Schneider's specific causation opinion is largely if not entirely dependent upon his general causation opinion.

As has already been briefed in Monsanto's *Daubert* motion as it relates to specific causation, Dr. Schneider is neither an epidemiologist nor a statistician, and his opinions are based entirely on his uncritical summary review of certain epidemiological studies that were either provided to him by Plaintiffs' counsel or found on Google. Dr. Schneider purports to apply a differential diagnosis to reach his specific causation opinion. By definition, a differential diagnosis first requires that the expert "rule in" Roundup as a potential cause of Mr. Engilis's NHL *before* "ruling out" other potential causes. To "rule in" Roundup, Dr. Schneider must rely on a general causation opinion—but, contrary to Plaintiffs contention (at 14) that he "relied upon the general causation opinions of other experts in this litigation," Dr. Schneider explicitly testified in deposition that he **did not** rely on the opinions of Plaintiffs' other general causation experts, *see* Ex. A, Schneider *Engilis* Dep. at 34-36. This differentiates his specific causation opinions from others that have previously been admitted in Roundup cases. *See In re Roundup Prod. Liab. Litig.*, 3:16-md-02741-VC, ECF 2799 at 2-3 (Feb. 24, 2019) (allowing specific-causation opinions to testify to differential diagnosis where they properly relied on other experts for general causation). Plaintiffs' lengthy rehash of Dr. Schneider's differential diagnosis (at 14-16) does nothing to overcome his flawed methodology. His *specific* causation opinion thus lives and dies with his own *general* causation opinion.

Here, since Dr. Schneider specifically disclaimed relying on other experts, his specific causation depends entirely on his general causation opinion, and the Court correctly excluded it.

## CONCLUSION

For all these reasons, the Court should deny Plaintiffs' motion for reconsideration of the Court's *Daubert* order excluding the testimony and opinions of Plaintiffs' expert witness Dr. Schneider.

MONSANTO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S *DAUBERT* ORDER EXCLUDING THE TESTIMONY AND OPINIONS OF ANDREW SCHNEIDER, M.D.

Dated:  August 4, 2023

Respectfully submitted,

/s/ *Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of August, 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Jed P. White*
Jed P. White