**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
|---|---|
| | Case No.: 3:16-md-02741-VC |
| *Estate of Kenzie Elizabeth Murdock, et al. v. Monsanto Co.*, 3:20-cv-01363-VC | **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF** |
| | Date:  August 24, 2023<br>Time:  10:00 a.m.<br>Place:  San Francisco Courthouse, Courtroom 4 – 17th Floor |

REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF

**INTRODUCTION**

Dr. Schiff failed to perform either of the two essential steps for a reliable differential diagnosis: (1) the "ruling in" of Roundup as a potential cause of Kenzie Murdock's NHL; and (2) the "ruling out" of potential alternative causes for Ms. Murdock's illness, including naturally occurring cell replication errors—a known cause of NHL. Plaintiff's opposition largely ignores the core points of Monsanto's motion, or else reaffirms the aspects of Dr. Schiff's opinions that render them unreliable.

Plaintiff asserts that Dr. Schiff sufficiently "ruled in" Roundup as a potential cause by relying on unreliable studies. Those unreliable studies are not a substitute for specific information about what dose (if any) of glyphosate was absorbed into Ms. Murdock's skin. Nor do those studies address the specific subtype of NHL Ms. Murdock developed. Plaintiff also relies on the alternative causes that Dr. Schiff did passingly refer to in his report to suggest that Dr. Schiff "ruled out" alternative causes for Ms. Murdock's illness. But this misses the point. Dr. Schiff *admitted* that he did not need to *reliably rule out* risk factors—contrary to the law in this Circuit. His opinion is therefore unreliable.[1]

In short, because Dr. Schiff employs a distorted differential etiology that is fundamentally unreliable, his specific causation opinion must be excluded.

**ARGUMENT**

I. **Dr. Schiff Did Not Reliably Rule In Glyphosate as a Possible Cause of Ms. Murdock's NHL.**

In order to rule in glyphosate as a potential cause of Ms. Murdock's NHL, Dr. Schiff should have included in his analysis the amount, or even an estimate, of glyphosate actually absorbed into her skin, and then provided a reliable basis to conclude that that absorbed amount is sufficient to cause NHL under real-world conditions. *See McClain v. Metabolife Int'l, Inc.*,

---

[1] Plaintiff argues that Dr. Schiff's opinions are admissible because he has been permitted to testify in prior Roundup cases. Opp. at 6-7. But as a purported specific causation expert, the mere fact that Dr. Schiff has offered case-specific opinions in other cases involving different plaintiffs and different factual circumstances does not immunize his purported opinions from scrutiny in this case.

1  401 F.3d 1233, 1242 (11th Cir. 2005) ("Dose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect."); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671 (6th Cir. 2011) (excluding an expert for failing to reliably rule in benzene exposure as a possible cause because the expert "formulated his opinion on dose without any exposure data, only having been told that [Pluck] had been 'heavily' exposed to benzene in her water").  Dr. Schiff has conceded that this is a requirement for determining specific causation in a case like this.  *See* Ex. J, Schiff (*Moore*) Dep. at 121:20-24, 122:13-24.[2]  Nevertheless, he did not do that.  Instead, he relies only on his finding that Ms. Murdock was exposed to an undetermined amount of glyphosate for an undetermined, but purportedly sufficient number of days throughout her life. Ex. H, Schiff (*Murdock*) Report at 84-85.

Plaintiff argues that Dr. Schiff's conclusions pass muster because he reviewed Ms. Murdock's "lifelong exposure to Roundup." Opp. at 9.  But all Dr. Schiff did is simply assume that Ms. Murdock's "exposure days" were sufficient to rule glyphosate in as a substantial cause of her NHL.  Ex. H Schiff (*Murdock*) Report at 84-85.  Dr. Schiff offers no opinion on the amount of glyphosate ***actually absorbed*** into Ms. Murdock's skin because he did not determine that amount.  His superficial approach to specific causation is all the more unreliable because, as explained in Monsanto's motion, the studies that Dr. Schiff refers to do not address the internal absorbed dose necessary to consider glyphosate a substantial contributing factor to the development of cancer.

Moreover—and just as concerning—the arbitrary exposure units Dr. Schiff plucked from his favored epidemiology studies were not being tested or studied for the purposes of dose.  As a result, those studies do not support Dr. Schiff's specific causation conclusions.  And even if the studies were relevant here, Dr. Schiff's reliance on them would not bolster his methodology.  Epidemiological studies are valuable in an assessment of causation only if a plaintiff shows that he is similarly situated to the participants in those studies. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997) (courts should exclude expert opinions where "there is

---

[2] All citations to "Ex." are to the exhibits attached to Monsanto's opening brief.

simply too great an analytical gap between the data and the opinion offered"). In that regard Dr. Schiff makes no attempt to assess whether Ms. Murdock's exposures to Roundup were remotely comparable to the exposures of the applicators in those epidemiology studies. As the Texas Supreme Court put it:

> To raise a fact issue on causation and thus to survive legal sufficiency review, a claimant must do more than simply introduce into evidence epidemiological studies that show a substantially elevated risk. A claimant must show that he or she is similar to those in the studies. This would include proof that the injured person was exposed to the same substance, that the exposure or dose levels were comparable to or greater than those in the studies, that the exposure occurred before the onset of injury, and that the timing of the onset of injury was consistent with that experienced by those in the study.

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997); *see also McManaway v. KBR, Inc.*, 852 F.3d 444, 453-55 (5th Cir. 2017) (citing *Havner* with approval and granting summary judgment on causation where plaintiff did not adduce sufficient expert testimony on causation). Without similar evidence here, Dr. Schiff's analysis is incomplete and insufficient.

Furthermore, the studies on which Dr. Schiff relies do not address Plaintiff's specific subtype of NHL. *See* Mot. at 4-5. The fact that Ms. Murdock's NHL subtype is less common does not change that fact. *Id.* Plaintiff argues that this is irrelevant because, for example, the IARC monograph was not specific to a particular sub-type of NHL either. Opp. at 11. But IARC's conclusion is wholly different from, and not a substitute for, an admissible specific causation opinion in this case. Plaintiff's and Dr. Schiff's reliance on IARC's analysis in this regard demonstrates the unhelpfulness of Dr. Schiff's superficial analysis.

The Court should exclude Dr. Schiff's specific causation opinions because he failed to adequately rule in glyphosate a cause of Ms. Murdock's NHL.

### II. Dr. Schiff Did Not Reliably Rule Out Potential Alternative Causes of Ms. Murdock's NHL.

Dr. Schiff also failed to reliably rule out potential alternative causes for Ms. Murdock's NHL. He acknowledged at his deposition that Ms. Murdock was exposed to multiple known risk factors for developing NHL, but insisted that he did not need to reliably rule out those risk factors because of his "always glyphosate" theory of causation. *See* Mot. 6-7. Dr. Schiff does

not believe that it is necessary to engage in the "ruling out" step of a differential diagnosis because he believes in "multifactorial causation" when it comes to glyphosate exposure, meaning that other exposures "do not diminish the known effect of extensive glyphosate or Roundup exposure on increasing the risk of developing [NHL]." Ex. D, Schiff (*Murdock*) Dep. at 147:11-148:2.  Put differently, Dr. Schiff dismisses the very concept of "ruling out" alternative causes—a step that is required in the differential etiology he purports to use.  Dr. Schiff's failure to actually apply this step of the analysis renders his specific causation unreliable and inadmissible.  *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig. (No. II) MDL 2502*, 892 F.3d 624, 645 (4th Cir. 2018) ("*Daubert* requires more" than an expert "dismiss[ing] other possible causes in favor of [the product at issue] in a cursory fashion."); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999) ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.").  And, as Monsanto noted in its motion, Dr. Schiff's failure to engage with this required step means that he failed to rule out the possibility that naturally occurring genetic mutations caused Ms. Murdock's cancer.  *See* Mot. 7-8.  Plaintiff's Opposition does not respond to this point.

Plaintiff points to the limited number of alternative causes that Dr. Schiff briefly referred to in his report (*e.g.*, family and medical history, occupational history, chemical exposure, smoking history, and body mass index).  *See* Opp. at 12-15.  But this response does not address Dr. Schiff's failure to consider and rule out naturally occurring cell mutations—the genesis of most cases of NHL.  *See* Mot. 7-8.  Nor does that response explain why Dr. Schiff's "multifactorial causation" is not a functional bypass of the "ruling out" requirement of a differential etiology.  *See* Mot. 5-7.

"Simply claiming that an expert used the differential diagnosis method is not some incantation that opens the *Daubert* gate." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir. 2010) (internal quotation marks omitted).  The Court should exclude Dr. Schiff's specific causation opinions because he failed to adequately out alternative causes of Ms. Murdock's NHL.

# CONCLUSION

Monsanto Company respectfully requests that the Court exclude Dr. Schiff's specific-causation opinions.

Dated: August 8, 2023

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of August 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system, which sent notice of the filing to all appearing parties of record.

*/s/ Jed P. White*
Jed P. White