1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DUKE HOLZMAN PHOTIADIS & GRESENS LLP
Christopher M. Berloth, Esq.
Thomas D. Lyons, Esq.
*Attorneys For Third-Parties in Interest*
*Cellino & Barnes, P.C. and*
*Cellino Law LLP*
701 Seneca Street, Suite 750
Buffalo, New York 14210
(716) 855-1111
cberloth@dhpglaw.com
tlyons@dhpglaw.com

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS | MDL No. 2741 |
| LIABILITY LITIGATION | Civ. Action No.:  3:16-md-02741-VC |

**MEMORANDUM OF LAW
IN SUPPORT OF CELLINO & BARNES, P.C.'S AND CELLINO LAW LLP'S
MOTION TO DISMISS
THE VERIFIED PETITION/MOTION TO SETTLE ATTORNEYS' FEES**

Buffalo, New York
August 11, 2023

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

ISSUES PRESENTED .................................................................................................. 1

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND .......................................................................................................... 2

ARGUMENT ............................................................................................................... 3

   LEGAL STANDARDS ............................................................................................ 3

      A.  Federal Procedure for Filing a Motion .......................................................... 3

      B.  Motion to Dismiss Standard ........................................................................... 4

      C.  Motion to Stay Standard ................................................................................. 4

POINT I:
THE COURT LACKS JURISDICTION TO HEAR THE INSTANT FEE DISPUTES ..................... 5

POINT II:
EVEN IF THE COURT HAS ANCILLARY JURISDICTION, THE COURT SHOULD ABSTAIN FROM
EXERCISING JURISDICTION PURSUANT TO *WILTON* AND *COLORADO RIVER* .................................. 9

     A.  The instant proceeding is one of multiple parallel federal and state suits
         involving the same legal issues ...................................................................... 11

     B.  The Court should abstain from exercising jurisdiction pursuant to *Wilton* ................ 13

        1.  The instant proceeding seeks declaratory relief ...................................... 13

        2.  The *Brillhart* factors balance in favor of the Court exercising its
           discretion to abstain from these proceedings pursuant to *Wilton* .......................... 13

             i.  Avoiding Needless Determination of State Law Issues ......................... 14

             ii. Discouraging Forum Shopping ................................................................ 16

             iii. Avoiding Duplicative Litigation ............................................................. 18

     C.  The Court should abstain from exercising jurisdiction pursuant to *Colorado
        River* ............................................................................................................... 19

CONCLUSION ............................................................................................................ 25

- i -

# TABLE OF AUTHORITIES

STATUTES/RULES/REGULATIONS:

28 U.S.C. § 1367 ...................................................................................................... 5

28 U.S.C. § 2201 ...................................................................................................... 13

FEDERAL RULE OF CIVIL PROCEDURE 7(b)(1) ........................................................ 3

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) .................................................. 1, 4

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) .................................................... 1

LOCAL RULE OF CIVIL PROCEDURE 7-2 ............................................................... 3

CASES:

*Adams v. Allied Chem. Corp.*,
    503 F. Supp. 253 (E.D. Va. 1980) ...................................................... 6, 9

*Allstate Ins. Co. v. Tucknott Elec. Co.*,
    2014 U.S. Dist. LEXIS 151249, *13 (N.D. Cal. Oct. 24, 2014) .................... *passim*

*Am. Int'l Underwriters v. Continental Ins. Co.*,
    843 F.2d 1253, 1256-57 (9th Cir. 1988) .................................................. 20

*A–Z Int'l v. Phillips*,
    503 F. Supp. 253 (E.D. Va. 1980) ........................................................ 4

*Barrera v. Gamestop Corp.*,
    2012 U.S. Dist. LEXIS 59298 (C.D. Cal. Apr. 27, 2012) ...................... 6, 7

*Brettschneider v. City of New York*,
    2020 U.S. Dist. LEXIS 188647 (E.D.N.Y. Aug. 25, 2020) .................... 5, 7

*Brillhart v. Excess Ins. Co. of Am.*,
    316 U.S. 491 (1942) ...................................................................... *passim*

*Burrell v. Sperry Rand Corp.*,
    534 F. Supp. 680 (D. Mass. 1982) ........................................................ 7

*Cal. Chamber of Commerce v. Becerra*,
    2020 U.S. Dist. LEXIS 36687 (E.D. Cal. Mar. 3, 2020) .................. 13, 14, 18, 19

*Clinton v. Jones*,
    520 U.S. 681 (1997) ........................................................................ 4

- ii -

(CASES CONT.):

*CMAX, Inc. v. Hall,*
    300 F.2d 265, 268 (9th Cir. 1962) ........................................................................... 4

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976).................................................................................................. *passim*

*Continental Cas. Co. v. Robsac Indus.,*
    947 F.2d 1367, 1371 (9th Cir. 1991) ..................................................................... 15

*Cotton v. City of Eureka,*
    2012 U.S. Dist. LEXIS 197751 (N.D. Cal. Aug. 10, 2012)...................................... 7

*Evanger's Dog & Cat Food Co. v. Env't Democracy Proj.,*
    2022 U.S. Dist. LEXIS 90781, *10-11 (C.D. Cal. May 18, 2022) ................................... *passim*

*Exxon Mobil Corp. v. Allapattah Servs.,*
    545 U.S. 546 (2005)................................................................................................... 5

*Gen. Star Indem. Co. v. Jrk Prop. Holdings,*
    2021 U.S. Dist. LEXIS 251565 (C.D. Cal. Dec. 28, 2021) ............................... 14, 19

*Goodin v. Vendley,*
    356 F. Supp. 3d 935, 946 (N.D. Cal. 2018) ....................................................... 21, 24

*Gov't Emples. Ins. Co. v. Dizol,*
    133 F.3d 1220, 1225-26 (9th Cir. 1998) ............................................ 10, 11, 14, 18

*Great Am. Ins. Co. v. Gross,*
    468 F.3d 199 (4th Cir. 2006) ................................................................................ 16

*Hartford Cas. Ins. Co. v. Teed,*
    2019 U.S. Dist. LEXIS 226600, *9 (N.D. Cal. May 10, 2019) ............................... 21

*Huth v. Hartford Ins. Co. of the Midwest,*
    298 F.3d 800 (9th Cir. 2002) ............................................................................... 14

*In re Community Bank of N. Va. Mtg. Lending Practices Litig.,*
    911 F.3d 666 (3d Cir. 2018) ............................................................................ 7, 8, 9

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.,*
    140 F.3d 442 (2d Cir. 1998)........................................................................... 15, 23

*Jolly v. Intuit Inc.,*
    485 F. Supp. 3d 1191, 1203 (N.D. Cal. 2020) ............................................... 20, 24

- iii -

(CASES CONT.):

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994).........................................................................................4, 5, 9

*Landis v. N. Am. Co.*,
   299 U.S. 248, 249-50, 254-55 (1936) ...................................................................4

*Lippincott v. PNC Bank, N.A.*,
   2012 U.S. Dist. LEXIS 71825 (D. Md. May 22, 2012) .......................................17

*Lockyer v. Mirant Corp*,
   398 F.3d 1098, 1110 (9th Cir. 2005) ....................................................................4

*Montanore Minerals Corp. v. Bakie*,
   867 F.3d 1160, 1165-66 (9th Cir. 2017) ...........................................20, 21, 22, 24

*Monaco v. Bear Stearns Cos.*,
   2015 U.S. Dist. LEXIS 186084 (C.D. Cal. Sep. 18, 2015)............................6, 7, 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).........................................................................................10, 22

*McClyskey v. Henry*,
   2021 U.S. Dist. LEXIS 266805 (C.D. Cal. Oct. 21, 2021) .............................14, 19

*Nakash v. Marciano*,
   882 F.2d 1411, 1415-16 (9th Cir. 1989) .............................................................20

*Nat'l Union Fire Ins. Co. v. Rudolph & Sletten, Inc.*,
   2020 U.S. Dist. LEXIS 126510 (N.D. Cal. July 17, 2020)..................................14

*Owen Equipment & Erection Co. v. Kroger*,
   437 U.S. 365 (1978)............................................................................................4, 5

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996) ............................................................................................10

*R.R. Street & Co. Inc. v. Transport Ins. Co.*,
   656 F.3d 966, 974-75 (9th Cir. 2011) ...........................................................*passim*

*Ralston v. Mortgage Investors Grp., Inc.*,
   2015 U.S. Dist. LEXIS 112623 (N.D. Cal. Aug. 25, 2015).................................7, 8

*Replogle v. Borrego*,
   2008 U.S. Dist. LEXIS 129595 (N.D. Cal. June, 4, 2008) .................................6, 7

(CASES CONT.):

*Riley v. Dozier Internet Law, P.C.,*
   371 F. App'x 399 (4th Cir. 2010) ........................................................ 17

*RLS Assocs., LLC v. United Bank of Kuwait PLC,*
   464 F. Supp. 2d 206 (S.D.N.Y. 2006) ............................................. 15, 23

*St. Paul Fire & Marine Ins. Co. v. Nonprofits United,*
   91 Fed. Appx. 537 (9th Cir. 2003) ...................................................... 14

*Snodgrass v. Provident Life & Acc. Ins. Co.,*
   147 F.3d 1163, 1167-68 (9th Cir. 1998) ............................................. 13

*Stein v. KPMG, LLP,*
   486 F.3d 753 (2d Cir. 2007) ................................................................. 5

*Taylor v. Kelsey,*
   666 F.2d 53 (4th Cir. 1981) ...................................................... 6, 7, 8, 9

*Travelers Indem. Co. v. Newlin,*
   2020 U.S. Dist. LEXIS 167738, *23 (S.D. Cal. Sep. 14, 2020) ................. 13, 14, 18

*United States v. Boyajian,*
   2016 U.S. Dist. LEXIS 15755 (C.D. Cal. Feb. 2, 2016) ...................... 6, 7

*United States v. Oregon,*
   503 Fed. Appx. 525, 527-28 (9th Cir. 2012) ...................................... 11

*Vulcan Chem. Techs., Inc. v. Barker,*
   297 F.3d 332 (4th Cir. 2002) .............................................................. 24

*W. Am. Life Ins. Co. v. Dye,*
   2022 U.S. Dist. LEXIS 114027 (C.D. Cal. Mar. 9, 2022) ................... 14

*Wilton v. Seven Falls Co.,*
   515 U.S. 277 (1995) ....................................................................*passim*

## ISSUES PRESENTED

(1)     Does this Court have ancillary jurisdiction to hear the instant Petition?

(2)     If the Court does have ancillary jurisdiction, should the Court abstain from exercising that jurisdiction pursuant to either *Wilton* or *Colorado River* abstention?

## PRELIMINARY STATEMENT

Cellino & Barnes, P.C. ("Cellino & Barnes") and Cellino Law LLP ("Cellino Law") are not parties to the underlying litigation this Court presides over. Rather, Cellino & Barnes and Cellino Law are prior counsel to certain underlying plaintiffs for whom Goldstein Greco, P.C. ("Goldstein Greco") currently serves as counsel. Goldstein Greco, whose principals are former attorneys of Cellino & Barnes and Cellino Law, left their employment and improperly solicited those underlying plaintiffs in this case. Goldstein Greco now files the instant application to settle attorneys' fees, seeking declaratory relief that Cellino & Barnes and Cellino Law's attorneys' lien(s) are invalid. Cellino & Barnes and Cellino Law move to dismiss that application pursuant to Rule 12(b)(1) & (6).[1]

Goldstein Greco's application is procedurally defective by its very filing and should not be examined on its substantive merit. While these proceedings are styled as a "Verified Petition/Motion to Settle Attorneys' Fees," the filing in no way complies with the Federal Rules nor this Court's Local Rules for filing a motion. Thus, Cellino & Barnes and Cellino Law treat the Goldstein Greco filing as a petition and move to dismiss it. If the Court hears this application as a motion, Cellino & Barnes and Cellino Law request to oppose to the application's susbtance in addition to this motion to dismiss.

Cellino & Barnes and Cellino Law's motion to dismiss should be granted because (i) the Court lacks jurisdiction over the instant dispute; and (ii) even if the Court were to exercise ancillary

---

[1]     The Federal Rules of Civil Procedure are hereinafter defined, in text, each as a "Rule" and collectively as the "Rules". This Court's Local Rules of Civil Procedure are hereinafter defined, in text and citation, each as a "Local Rule" and collectively as the "Local Rules".

MEMORANDUM OF LAW
3:16-md-02741-VC

jurisdiction over this dispute, the Court should abstain from exercising jurisdiction under the *Wilton* and/or *Colorado River* federal abstention doctrines.

The instant matter presents a dispute between New York law firms involving exclusively New York law. Furthermore, there currently exists pending litigation in New York State Supreme Court (hereinafter defined as the "New York Actions"), initiated by Cellino & Barnes and Cellino Law that involve the same issues presented by this case. Specifically, Cellino & Barnes and Cellino Law commenced litigation to set and validate their charging lien for a litany of clients impermissibly solicited and poached by Goldstein Greco. Thus, while the New York Actions involve numerous issues, claims, and allegations, they wholly encompass the legal issues presented by Goldstein Greco's instant application. Accordingly, the Court should determine it lacks jurisdiction to hear the instant matter and/or abstain from hearing this matter due to the pending New York Actions.

In the alternative, the Court should stay the instant proceedings pending resolution of the contemporaneous New York Actions. In the further alternative, if Cellino & Barnes and Cellino Law's motion to dismiss is denied, the Court should set a schedule for Cellino & Barnes and Cellino Law to answer the Petition and oppose it on substantive grounds.

## **BACKGROUND**

For a full recitation of the pertinent factual background and procedural history, including that of the New York Actions, Cellino & Barnes and Cellino Law respectfully refer the Court to the documents filed herewith in support of the motion to dismiss, including: the Declaration of Christopher M. Berloth, Esq., dated August 11, 2023, with exhibits; and the Declaration of Ross M. Cellino, Jr., Esq., dated August 11, 2023, with exhibits. For the reasons set forth therein and discussed below, Cellino & Barnes and Cellino Law's motion to dismiss should be granted.

# ARGUMENT

## LEGAL STANDARDS

### A.   Federal Procedure for Filing a Motion

Goldstein Greco filed the instant application and styled it as a "Verified Petition/Motion to Settle Attorneys' Fees." (Doc. 16895, *Petition*). However, the filing does not comply with the Federal Rules of Civil Procedure or the Local Rules governing the filing of a motion. It is a petition.

A motion must: (1) be in writing; (2) state with particularity the grounds for seeking the order; and (3) state the relief sought. FED. R. CIV. P. 7(b)(1). This requirement is expanded by Local Rule 7-2, which provides that motions must contain: (1) on the first page in the space opposite the caption and below the case number, the noticed hearing date and time; (2) in the first paragraph, notice of the motion including date and time of hearing; (3) in the second paragraph, a concise statement of what relief or Court action the movant seeks; and (4) in the succeeding paragraphs, the points and authorities in support of the motion. LOCAL RULE 7-2(b). Furthermore, each motion must be accompanied by a proposed order and affidavits or declarations. *Id.* at (c)-(d). Goldstein Greco's filing fails to comport with Rule 7 and Local Rule 7-2. The application is improper because (i) no notice of motion was filed identifying the Rule(s) under which it seeks relief or which it is filed pursuant to, (ii) no supporting memorandum was filed, (iii) no proposed order was filed; and (iv) most telling, Goldstein Greco refers to the document as a Petition and itself as Petitioner repeatedly throughout the filing. (*See* Doc. 16895, *Petition*, at Heading, Intro, and ¶¶ 1, 2, & 48).

Accordingly, Cellino & Barnes and Cellino Law treat the Goldstein Greco filing as a petition and move to dismiss it, which under Rule 12, extends/stays the time to answer the petition on its merits. To the extent the Court determines the instant application to be a motion, Cellino & Barnes and Cellino Law respectfully request the right to submit further filings in opposition to the application on substantive grounds in addition to this motion to dismiss for lack of jurisdiction.

**B.** **Motion to Dismiss Standard**

A motion to dismiss for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is a challenge to the Court's authority to hear the case. "It is a fundamental precept that federal courts are courts of limited jurisdiction[,]" *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978), and a district court may not grant relief "absent a constitutional or valid statutory grant of jurisdiction." *A–Z Int'l v. Phillips,* 323 F.3d 1141, 1145 (9th Cir.2003). "It is presumed that a cause lies outside this limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

When deciding a motion to dismiss pursuant to Rule 12(b)(1), the Court "regard[s] the pleadings as mere evidence on the issue[ ] and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id*. Thus, where Goldstein Greco fails to allege facts upon which the court may base jurisdiction, the Court should grant a motion to dismiss for lack of subject-matter jurisdiction.

**C.** **Motion to Stay Standard**

While Cellino & Barnes and Cellino Law contend the instant Petition/Motion should be dismissed/denied, at the very least, these proceedings should be stayed. "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 249-50, 254-55 (1936). The following factors are examined:

> (1) the possible damage that may result from the stay; (2) the hardship or inequity a party may suffer if required to continue absent the stay; and (3) the orderly course of justice.

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55); *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

**POINT I**

**THE COURT LACKS JURISDICTION TO HEAR THE INSTANT FEE DISPUTES.**

"It is a fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Congress has most commonly conferred jurisdiction on the district courts in federal question cases or "for what have come to be known as diversity cases[.]" *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005). "[O]nce a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." *Id*.

However, supplemental jurisdiction, which is codified in 28 U.S.C. § 1367, should not be confused with ancillary jurisdiction, which is a separate and distinct jurisdictional concept. *See Kokkonen*, 511 U.S. at 378; *see also Brettschneider v. City of New York*, 2020 U.S. Dist. LEXIS 188647, *15-16 (E.D.N.Y. Aug. 25, 2020). Ancillary jurisdiction is a relatively limited source of jurisdiction that is generally only asserted for two separate, though sometimes related, purposes:

> (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

*Kokkonen*, 511 U.S. at 379-80 (citations omitted).

The Second Circuit explained "[t]he most common exercise of ancillary jurisdiction is, probably, to resolve fee disputes between a party and its attorney arising in litigation in which the attorney represented the party." *Stein v. KPMG, LLP*, 486 F.3d 753, 760 (2d Cir. 2007). However, only certain fee disputes are "factually interdependent" and involve claims over which a district court may exercise jurisdiction or are otherwise necessary "to manage its proceedings, vindicate its authority, and effectuate its decrees." *See Kokkonen*, 511 U.S. at 379-80.

There is a crucial distinction between exercising ancillary jurisdiction over a fee dispute between (i) a party and its attorney and (ii) between two attorneys or sets of counsel. *See Taylor v. Kelsey*, 666 F.2d 53 (4th Cir. 1981) (*affirming sub. nom. Adams v. Allied Chem. Corp.*, 503 F. Supp. 253, 255 (E.D. Va. 1980)); *see Replogle v. Borrego*, 2008 U.S. Dist. LEXIS 129595 (N.D. Cal. June, 4, 2008); *see also United States v. Boyajian*, 2016 U.S. Dist. LEXIS 15755 (C.D. Cal. Feb. 2, 2016); *Monaco v. Bear Stearns Cos.*, 2015 U.S. Dist. LEXIS 186084 (C.D. Cal. Sep. 18, 2015); *Barrera v. Gamestop Corp.*, 2012 U.S. Dist. LEXIS 59298 (C.D. Cal. Apr. 27, 2012). The Fourth Circuit's decision in *Taylor* remains one of the primary Court of Appeals cases addressing the issue of whether federal courts have jurisdiction over a fee dispute between attorneys that does not involve the party.

The Fourth Circuit affirmed the district court's denial of a motion to intervene brought by a lawyer to litigate a fee arrangement between his firm and former co-counsel. *Taylor*, 666 F.2d at 54. The issue before the district court was "a dispute over attorney's fees, which arose in the course of a diversity lawsuit." *Adams*, 503 F. Supp. at 254. The court explained:

> There is no diversity, federal question, or other independent basis for jurisdiction over the instant controversy. Involving as it does persons who were not parties to the original action, a controversy such as this may be decided by a federal court only, if at all, under the doctrine of ancillary jurisdiction.

*Id.* The court acknowledged "in certain circumstances a federal court may assume ancillary jurisdiction over a claim for attorney's fees arising out of a matter properly before the court." *Id.* at 255. Indeed, the court even distinguished one prior Fourth Circuit decision on the basis that it, unlike the case at hand, presented circumstances where "one of the parties to the fee dispute was a party to the underlying litigation." *Id.*

However, "[o]n the other hand, as in the instant case, where there is no nexus between the main matter and the fee dispute, apart from the fortuity that the latter arose during the course of the former, the fee dispute is not ancillary." *Id.* The court concluded there was no reason why the fee

MEMORANDUM OF LAW
3:16-md-02741-VC

dispute "involving Virginia law, between Virginia attorneys, cannot or should not be decided in a Virginia state court." *Id*.

In affirming the decision, the Fourth Circuit explained that "the controversy arose purely from a private contract dispute between two Virginia residents. Under these circumstances, we see no basis for ancillary jurisdiction." *Taylor*, 666 F.2d at 54.

The Fourth Circuit's decision in *Taylor* is not an outlier. For instance, the Third Circuit was "asked to decide 'whether ancillary jurisdiction [nevertheless] extends to the resolution of a post settlement fee dispute between two attorneys, only one of whom was attorney of record[.]" *See In re Community Bank of N. Va. Mtg. Lending Practices Litig.*, 911 F.3d 666 (3d Cir. 2018). The Third Circuit reversed the district court's decision to exercise ancillary jurisdiction over a fee dispute between lawyers. *Id.* The court explained that the dispute was between two Pennsylvania residents and did not arise as a result of any rulings in the underlying matter. *Id.* "Moreover, the resolution of the fee-splitting case will have no impact on the class or the fee award." *Id.*

There does not appear to be any Ninth Circuit Court of Appeals decisions that are directly on point to the instant factual circumstances. However, there are numerous district court decisions within the Ninth Circuit, including this Court, as well as district court decisions from other circuits, that strongly infer that the Ninth Circuit would rule similarly to the *Taylor* and *Community Bank* courts. *See Replogle*, 2008 U.S. Dist. LEXIS 129595; *Monaco*, 2015 U.S. Dist. LEXIS 186084; *Barrera*, 2012 U.S. Dist. LEXIS 59298; *see also Ralston v. Mortgage Investors Grp., Inc.*, 2015 U.S. Dist. LEXIS 112623 (N.D. Cal. Aug. 25, 2015); *Cotton v. City of Eureka*, 2012 U.S. Dist. LEXIS 197751, n. 2 (N.D. Cal. Aug. 10, 2012); *Boyajian*, 2016 U.S. Dist. LEXIS 15755; *Brettschneider*, 2020 U.S. Dist. LEXIS 188647 at *15-16; *Burrell v. Sperry Rand Corp.*, 534 F. Supp. 680 (D. Mass. 1982).

For instance, in *Replogle*, this Court examined this precise issue and explained: "In light of the distribution of the attorney's fees to counsel, the Court doubts whether it could properly exercise

- 7 -

ancillary jurisdiction over the remaining [fee] dispute." 2008 U.S. Dist. LEXIS 129595 at *3. This Court made a similar decision in *Cotton* where it held "there is no ancillary jurisdiction over this post-settlement dispute among the lawyers about their respective shares of the . . . fees and costs." 2012 U.S. Dist. LEXIS 197751, n. 2.

This Court also ruled similarly in *Ralston*. However, in *Ralston*, the Court's decision focused on a key component in determining ancillary jurisdiction, which is whether exercising jurisdiction would "permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent." *Ralston*, 2015 U.S. Dist. LEXIS 112623 at *26. Similar to the instant case, as further discussed below with respect to federal abstention, there were numerous cases pending that would not and could not be disposed of by a single federal court. *Id.* at *27-28. For a variety of reasons, including that the policy of "fairness to litigants" was not furthered by assumption of jurisdiction, the Court declined to exercise jurisdiction. *Id.* at *31-35.

The decisions from this Court are in line with district court decisions throughout the circuit. In *Monaco*, the Central District of California determined it "lack[ed] ancillary jurisdiction over the allocation of attorney's fees in [the underlying litigation] because th[e] dispute is not factually interdependent with the underlying litigation." 2015 U.S. Dist. LEXIS 186084 at *6-7 Rather, the dispute was exclusively between the attorneys and did "not concern whether attorney's fees ought to have been awarded after settlement . . . but rather the division of attorney's fees between counsel for the prevailing parties." *Id.* at *7. The Court's decision was largely based on the fact that "[t]he adverse parties in this Motion are not Plaintiffs and Defendants, but co-counsel for Plaintiffs." *Id.*

In short, the case law throughout this Circuit demonstrates a clear trajectory following the decisions in *Taylor* and *Community Bank*.

In the instant dispute, the controversy arose purely from a private dispute between Goldstein Greco, Cellino & Barnes, and Cellino Law—all of which are New York entities—and as such, there

- 8 -

is "no basis for ancillary jurisdiction." *Taylor*, 666 F.2d at 54. Indeed, each relevant principal of Goldstein Greco, Cellino & Barnes, and Cellino Law are New York residents. (Cellino Decl. ¶¶ 15-17). There is no reason why the fee dispute "involving [New York] law, between [New York] attorneys, cannot or should not be decided in a [New York] state court." *Adams*, 503 F. Supp. at 255.

"Moreover, the resolution of the fee-splitting case will have no impact on the class or the fee award." *Community Bank*, 911 F.3d at 673. Simply put, the cases at issue have already settled, the amount of the award and fee has been settled, and the only remaining issue is the allocation of the fee amongst the clients' various counsel. This dispute will not alter the clients' recovery and hinges exclusively on the conduct and dealings between Goldstein Greco on one hand and Cellino & Barnes and Cellino Law on the other.

Particularly where the presumption is that a dispute lies outside a federal court's limited jurisdiction and the burden to demonstrate jurisdiction is on the party asserting it, *Kokkonen*, 511 U.S. at 377, the Court should refuse to exercise ancillary jurisdiction here. "[T]he controversy arose purely from a private [] dispute between two [New York] residents. Under these circumstances, [there is] no basis for ancillary jurisdiction." *Taylor*, 666 F.2d at 54.  As such, the Petition to Settle Attorneys' Lien should be dismissed.

### POINT II

**EVEN IF THE COURT HAS ANCILLARY JURISDICTION, THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION PURSUANT TO *WILTON* AND *COLORADO RIVER.***

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "[C]ourts usually avoid duplicative litigation when similar cases are pending in two different *federal* courts[.]" *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 974-75 (9th Cir. 2011) (emphasis in original). However, "[g]enerally as between state and federal courts, the rule is that the pendency

- 9 -

of an action in the *state* court is no bar to proceedings concerning the same matter in a federal court."
*Id.* at 975 (quoting *Colorado River*, 424 U.S. at 817). Thus "[a]bstention from the exercise of federal
jurisdiction is the exception, not the rule," *Colorado River*, 424 U.S. at 813; however, the Supreme
Court has identified some situations in which, for principles of federalism and comity and "reasons
of wise judicial administration" federal courts may abstain from exercising jurisdiction. *See R.R.
Street*, 656 F.3d at 974-78; *Gov't Emples. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225-26 (9th Cir. 1998).

    In *Colorado River*, the Supreme Court held that when there are parallel federal and state suits
but no traditional grounds for abstention apply, a stringent "exceptional circumstances" standard
ordinarily governs a federal court's decision whether to abstain from exercising its jurisdiction.
*Colorado River*, 424 U.S. at 817; *see R.R. Street*, 656 F.3d at 977-78 (analyzing *Colorado River*). The
Supreme Court reaffirmed the *Colorado River* abstention doctrine in *Moses H. Cone Mem'l Hosp. v.
Mercury Constr. Corp.*, 460 U.S. 1 (1983).

    However, the Supreme Court has also found situations where district courts have "greater
discretion" to abstain from exercising jurisdiction "in declaratory judgment actions than permitted
under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone*." *Wilton v. Seven
Falls Co.*, 515 U.S. 277, 286 (1995) (reaffirming *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491
(1942)). Thus, when a proceeding before a federal court seeks only discretionary declaratory relief,
and there is a proceeding regarding the same issues pending in state court, "federal courts not only
have the power to stay the action based on abstention principles, but can also, in otherwise appropriate
circumstances, decline to exercise jurisdiction altogether by either dismissing the suit . . ." or issuing
a stay. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996); *see R.R. Street*, 656 F.3d at 978.

    Here, the Court should not exercise its jurisdiction due to both *Colorado River* abstention and
*Wilton* abstention. However, this memorandum first addresses the *Wilton* standard as it ends the
abstention analysis. Since *Wilton* abstention is a substantially lower discretionary standard that

- 10 -

applies with regard to declaratory actions, *see R.R. Street*, 656 F.3d at 974-78, a court need not apply the more stringent *Colorado River* 'exceptional circumstances' test if *Wilton* abstention applies. *See United States v. Oregon*, 503 Fed. Appx. 525, 527-28 (9th Cir. 2012); *see, e.g.*, *Evanger's Dog & Cat Food Co. v. Env't Democracy Proj.*, 2022 U.S. Dist. LEXIS 90781, *10-11 (C.D. Cal. May 18, 2022).

A.      **The instant proceeding is one of multiple parallel federal and state suits involving the same legal issues.**

The first step in analyzing whether the Court should abstain from exercising its jurisdiction, even before discussing *Wilton* and *Colorado River*, is establishing that one or more parallel actions exist. "If there are parallel state proceedings involving the same issues and parties pending at the same time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Dizol*, 133 F.3d at 1225.

However, perfect parallelism is not required, despite that it exists here. The *Wilton* decision "explains the holding in *Brillhart* that '*at least* where another suit involving the same parties and presenting an opportunity for ventilation of the same state law issues is pending in state court,' the district court should consider abstention." *Allstate Ins. Co. v. Tucknott Elec. Co.*, 2014 U.S. Dist. LEXIS 151249, *13 (N.D. Cal. Oct. 24, 2014) (emphasis in original). At a minimum, the instant case satisfies the *Wilton* standard for parallelism where there currently exist multiple federal and state parallel suits involving the same legal issues presented by the instant dispute over attorneys' fees.

*First*, on March 31, 2023, Cellino Law and Cellino & Barnes commenced litigation against Goldstein Greco and its principals in the New York Supreme Court, County of Erie, Commercial Division, captioned *Cellino Law LLP, et al. v. Goldstein Greco, P.C., et al.*, Index No. 804192/2023 (the "First New York Action"). (Berloth Decl. Ex 1). The First New York Action was commenced as a fee dispute on one case. *See id.* However, on June 28, 2023, upon directive from the court, Cellino Law and Cellino & Barnes filed an amended complaint that expanded the scope of the First New York Action to cover hundreds of, if not over a thousand, cases. (Berloth Decl. ¶¶ 17-19 & Ex. 4).

- 11 -

*Second*, on July 7, 2023, also upon prior directive from the court in the First New York Action, The Barnes Firm commenced litigation against Goldstein Greco and its principals in the New York Supreme Court, County of Erie, Commercial Division, captioned *The Barnes Firm, P.C. v. Goldstein Greco, P.C., et al.*, Index No. 808360/2023 (the "Second New York Action"). (Berloth Decl. Ex 5). The Second New York Action was, upon direction and consent of the court, filed as a related case to the First New York Action (collectively the "New York Actions"). (Berloth Decl. ¶ 23).

To be clear, the New York Actions both involve the exact same allegations regarding fee disputes; the only relevant distinction between the two is that The Barnes Firm is the named plaintiff in the Second New York Action due to a contractual assignment it obtained from Cellino & Barnes and Cellino Law. (Berloth Decl. ¶ 25). Otherwise, the New York Actions both involve disputes over attorneys' fees resulting from Goldstein Greco's pre-resignation surreptitious solicitation of Cellino & Barnes's and Cellino Law's clients. (Berloth Decl. ¶ 26). Each and every underlying party, to whose matter the instant application to this Court pertains, is encapsulated by the pending New York Actions. (*See* Berloth Decl. Exs. 4 & 5).

*Third*, Goldstein Greco filed the same "Verified Petition/Motion to Settle Attorneys' Fees" at issue in this case with three other federal district courts appointed to oversee MDLs. (Berloth Decl. ¶ 27). As such, in addition to the New York Actions, the following four federal actions, including this one, are also currently pending: (1) *In re: Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation*, MDL No. 2782; (2) *In re: Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Products Liability Litigation*, MDL No. 2775; (3) *In re: Roundup Products Liability Litigation*, MDL No. 2741; and (4) *In re: Atrium Medical Corp., C-Qur Mesh Products Liability Litigation*, MDL No. 2753 (collectively the "MDL Actions"). (Berloth Decl. Exs. 6 through 8). Each and every underlying party, to whose matter the various applications to the MDLs pertains, are encapsulated by the pending New York Actions. (*See* Berloth Decl. Exs. 4 & 5).

MEMORANDUM OF LAW
3:16-md-02741-VC

Accordingly, there exist multiple federal and state parallel suits involving the same legal issues, such that the *Wilton* and/or *Colorado River* abstention analyses are necessary.

**B.**     **The Court should abstain from exercising jurisdiction pursuant to *Wilton*.**

*Wilton* abstention only applies to declaratory actions. Once the determination is made that the instant proceeding is a declaratory action, the analysis turns to the secondary question of whether the Court should exercise its discretion in abstaining pursuant to the *Wilton* standard. *See Travelers Indem. Co. v. Newlin*, 2020 U.S. Dist. LEXIS 167738, *23 (S.D. Cal. Sep. 14, 2020); *Cal. Chamber of Commerce v. Becerra*, 2020 U.S. Dist. LEXIS 36687 (E.D. Cal. Mar. 3, 2020).

1.     The instant proceeding seeks declaratory relief.

The Declaratory Judgment Act, codified in 28 U.S.C. § 2201(a), provides a district court discretion to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

> The appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case.

*Snodgrass v. Provident Life & Acc. Ins. Co.*, 147 F.3d 1163, 1167-68 (9th Cir. 1998). Here, Goldstein Greco seeks relief from the Court such that the Court declare any and all attorneys' liens held by Cellino & Barnes and/or Cellino law invalid. (*See generally* Doc 280, *Petition*). Goldstein Greco allege no other claims that are independent from the attorneys' fee dispute, which is simultaneously pending in state court. Thus, the Court should proceed to analyze the *Brillhart* factors to determine if *Wilton* abstention is appropriate.

2.     The *Brillhart* factors balance in favor of the Court exercising its discretion to abstain from these proceedings pursuant to *Wilton*.

To make the discretionary determination set forth under *Wilton*/*Brillhart*, the Ninth Circuit examines several factors to guide district courts, including three known as the "*Brillhart*" factors:

- 13 -

(i) avoiding needless determination of state law issues; (ii) discouraging forum shopping; and

(iii) avoiding duplicative litigation *See, e.g.*, *R.R. Street*, 656 F.3d at 975; *Dizol*, 133 F.3d at 1225.

The Ninth Circuit also detailed other factors that may be considered, which include:

> whether the declaratory action will settle all aspects of the controversy;
> whether the declaratory action will serve a useful purpose in clarifying
> the legal relations at issue; whether the declaratory action is being
> sought merely for the purposes of procedural fencing or to obtain a 'res
> judicata' advantage; or whether the use of a declaratory action will
> result in entanglement between the federal and state court systems. In
> addition, the district court might also consider the convenience of the
> parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225, n. 5. "None of these factors is dispositive, and district courts have broad

discretion in declining to hear declaratory judgment actions 'as long as it furthers the Declaratory

Judgment Act's purpose of enhancing judicial economy and cooperative federalism." *Tucknott Elec.*,

2014 U.S. Dist. LEXIS 151249 at *4 (quoting *Dizol*, 133 F.3d at 1224).

There are a litany of decisions from the Ninth Circuit, this Court, and its sister district courts

that are directly analogous to the instant case and instructive on the application of the *Brillhart* factors.

*Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800 (9th Cir. 2002); *Tucknott Elec.*, 2014 U.S.

Dist. LEXIS 151249 at *7; *Nat'l Union Fire Ins. Co. v. Rudolph & Sletten, Inc.*, 2020 U.S. Dist.

LEXIS 126510 (N.D. Cal. July 17, 2020); *Evanger's Dog & Cat Food*, 2022 U.S. Dist. LEXIS 90781;

*W. Am. Life Ins. Co. v. Dye*, 2022 U.S. Dist. LEXIS 114027 (C.D. Cal. Mar. 9, 2022); *Gen. Star*

*Indem. Co. v. Jrk Prop. Holdings*, 2021 U.S. Dist. LEXIS 251565 (C.D. Cal. Dec. 28, 2021);

*McClyskey v. Henry*, 2021 U.S. Dist. LEXIS 266805 (C.D. Cal. Oct. 21, 2021); *Newlin*, 2020 U.S.

Dist. LEXIS 167738; *Becerra*, 2020 U.S. Dist. LEXIS 36687; *see St. Paul Fire & Marine Ins. Co. v.*

*Nonprofits United*, 91 Fed. Appx. 537 (9th Cir. 2003).

    i.    *Avoiding Needless Determination of State Law Issues*

"The first factor under *Brillhart* focuses on whether exercising jurisdiction over the

declaratory judgment action will result in the needless determination of issues of state law."

- 14 -

*Elec.*, 2014 U.S. Dist. LEXIS 151249 at *7. "Abstention under *Brillhart* is appropriate when the Court is asked to adjudicate a 'purely state law issue.'" *Evanger's Dog & Cat Food*, 2022 U.S. Dist. LEXIS 90781 at *12 (quoting *Huth*, 298 F.3d at 804)).

Here, it is undisputed, and in fact admitted by Goldstein Greco in its filing, that "Attorneys' fees are considered substantive under the *Erie* doctrine and New York law is properly applied here." (Doc. 16895, *Petition* ¶49 (citing *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 213 (S.D.N.Y. 2006); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448-49 (2d Cir. 1998)). There are no constitutional or federal issues present in either the instant application, the identical applications to the other MDL Actions, or the New York Actions.

Moreover, New York has a strong interest in having these issues decided in its courts. All parties to the instant proceeding are New York residents: Goldstein Greco and Cellino & Barnes are law firms incorporated as New York professional corporations, Cellino Law is a law firm organized as a New York limited liability partnership, and all the principals of those entities, whose conduct is at issue, are residents of New York. (Doc. 16895, *Petition* ¶2; Cellino Decl. ¶¶ 12-17). Lastly, any and all conduct alleged to have occurred—whether it is in Goldstein Greco's application here (Doc. 16895, *Petition* ¶49) or Cellino & Barnes and Cellino Law's New York Actions (Berloth Decl. Exs. 4 & 5)—took place exclusively within the state of New York. These proceedings require a determination of the liability of New York residents and law firms and involves the substantive law of the application of New York Judiciary Law regarding charging liens and attorneys' fees.

Importantly, this Court previously explained that "because jurisdiction here is solely premised on diversity of citizenship, 'the federal interest is at its nadir.'" *Tucknott Elec.*, 2014 U.S. Dist. LEXIS 151249 at *7 (quoting *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991)). Here, if the Court even reaches the analysis of federal abstention, it is not due to diversity of citizenship, but rather ancillary jurisdiction from a diversity case. Thus, if there ever were a case to

- 15 -

present an even lower federal interest than *Tucknott Elec.*, it is this one. As such, the first *Brillhart* factor favors abstention.

         ii.     *Discouraging Forum Shopping*

"The second factor under *Brillhart* focuses on discouraging forum-shopping." *Tucknott Elec.*, 2014 U.S. Dist. LEXIS 151249 at *8.

> Federal courts should generally decline to entertain reactive declaratory actions. A declaratory action is reactive where a defendant sued in state court then files a declaratory relief action in federal court in hopes of having the state law claims brought against it heard in a potentially more favorable federal forum. However, [t]iming is only one consideration in determining whether a federal plaintiff is forum shopping. An action may also be deemed reactive when the federal plaintiff anticipates that [the federal defendant] intends to file a non-removable state court action, and rush[es] to file a federal action before [the federal defendant] does so in state court. Courts look to the 'sequence of events' leading to a federal action to determine if a party has engaged in forum shopping.

*Evanger's Dog & Cat Food*, 2022 U.S. Dist. LEXIS 90781 at *14-15 (quotations and citations omitted). While courts in the Ninth Circuit refers to this conduct as forum shopping, some courts refer to it as "procedural fencing." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199 (4th Cir. 2006). Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Id.* at 212. Call it what you will, courts across the country are unified against the conduct.

       Here, the New York Actions have priority and Goldstein Greco's filings in the MDL Actions have all the indicia of forum shopping and procedural fencing.

       Cellino Law and Cellino & Barnes commenced litigation against Goldstein Greco in the First New York Action on March 31, 2023. (Berloth Decl. Ex 1). Admittedly, the First New York Action was commenced as a fee dispute on one case. *See id.* However, on June 1, 2023, the parties attended a court conference before the Honorable Timothy J. Walker, A.J.S.C. (Berloth Decl. ¶ 16). At the conference, counsel for Cellino & Barnes and Cellino Law expressly stated that they would be

amending the complaint to expand the scope of the First New York Action to cover hundreds of cases, if not over a thousand cases. (Berloth Decl. ¶ 17). Counsel for Cellino & Barnes and Cellino Law also expressly stated that a new lawsuit would be commenced by The Barnes Firm against Goldstein Greco for the same allegations on a smaller contingent of cases—the sole difference being that The Barnes Firm commenced litigation separately due to a contractual assignment it obtained from Cellino & Barnes and Cellino Law as to those cases. (Berloth Decl. ¶ 17).

Judge Walker directed counsel for Cellino & Barnes and Cellino Law to file the amended complaint by June 30, 2023, and to file The Barnes Firm complaint by July 31, 2023. Pursuant to the directive from the court, Cellino Law and Cellino & Barnes filed the amended complaint on June 28, 2023 (Berloth Decl. ¶¶ 18-19 & Ex. 4) and The Barnes Firm filed the Second New York Action, as assignee, on July 7, 2023 (Berloth Decl. ¶ 21 & Ex. 5).

In the meantime, Goldstein Greco raced to file the four MDL Actions, including the one at issue before this Court, on June 26, 2023. In other words, Goldstein Greco filed the applications in the MDL Actions a mere four days before the amended complaint was directed to be filed in the First New York Action. The timing "is suggestive of forum shopping and intentional, tactical claim-splitting." *Lippincott v. PNC Bank, N.A.*, 2012 U.S. Dist. LEXIS 71825, *29 (D. Md. May 22, 2012).

What is more, before filing the MDL Actions, Goldstein Greco first tried filing a motion to change venue in the First New York Action, which was denied. (Berloth Decl. Exs. 2-3). Goldstein Greco's "conduct is the sort of forum-shopping against which abstention seeks to guard." *Riley v. Dozier Internet Law, P.C.*, 371 F. App'x 399, 403 (4th Cir. 2010).

If courts routinely tried to leapfrog one another, it would produce inefficiencies by needlessly duplicating efforts, generating piecemeal litigation, and expending limited judicial resources. Because Goldstein Greco's conduct constitutes "reactive declaratory judgment action" and was filed in this Court "in an effort at forum-shopping," this second *Brillhart* factor "weighs in favor of abstention."

1  *Tucknott Elec.*, 2014 U.S. Dist. LEXIS 151249 at *11.

2              iii.    *Avoiding Duplicative Litigation*

3          "The final *Brillhart* factor considers whether exercising or abstaining from jurisdiction in a

4  federal action would pose a risk of duplicative litigation." *Newlin*, 2020 U.S. Dist. LEXIS 167738 at

5  *42. "If there are parallel state proceedings involving the same issues and parties pending at the time

6  [a] federal declaratory action is filed, there is a presumption that the entire [matter] should be heard

7  in state court." *Tucknott Elec.*, 2014 U.S. Dist. LEXIS 151249 at *11 (quoting *Dizol*, 133 F.3d at

8  1225). "It is in the interest of judicial economy to avoid unnecessarily deciding questions that are

9  being raised before the state courts." *Becerra*, 2020 U.S. Dist. LEXIS 36687 at *8.

10         In *Tucknott*, this Court held that this *Brillhart* factor favored abstention because "the state

11 court in the Underlying Action is better equipped to resolve this declaratory judgment action."

12 *Tucknott Elec.*, 2014 U.S. Dist. LEXIS 151249 at *16-17. The Court determined (1) there was a

13 "potential for several overlapping factual issues and (2) the state court was more familiar with he

14 parties and the state law issues likely to arise. *Id.* at *17.

15         "Here, this Action and the State Case involve identical issues." *Evanger's Dog & Cat Food*,

16 2022 U.S. Dist. LEXIS 90781 at *17. The presence of overlapping issues of fact and law creates

17 unnecessary entanglement between the New York court and the federal courts presiding over the

18 MDL Actions. The substantial risk of contradicting, piecemeal decisions favors abstention.

19         The allegations contained in the MDL Actions are the same issues that are being litigated in

20 the New York Actions. Goldstein Greco cannot credibly argue that these plaintiff-clients are different

21 from those that are the subject of the New York Actions because the New York Actions involve each

22 and every client Brian Goldstein and Alex Greco surreptitiously solicited prior to their resignation

23 from Cellino Law—including every client in these MDL Actions. (*See* Berloth Decl. Exs. 4 & 5;

24 Cellino Decl. ¶ 23).

The New York Actions and the proceedings filed in the MDL Actions center on an identical core question: are Cellino & Barnes and Cellino Law entitled to their attorneys' liens for the cases they served as counsel prior to Goldstein Greco's surreptitious solicitation? While the New York Actions also involve allegations seeking damages against Goldstein Greco and its principals for their wrongful conduct, each and every issue to be presented in the proceedings filed in the MDL Actions are already wholly encompassed by the pending New York Actions.

"Instead of seeking federal court intervention, [Goldstein Greco] could present [its] arguments to the state court that has already exercised jurisdiction over this dispute." *McClyskey*, 2021 U.S. Dist. LEXIS 266805 at *12. "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Nat'l Union Fire Ins.*, 2020 U.S. Dist. LEXIS 126510 at *20 (quoting *Brillhart*, 316 U.S. at 495).

"If this action is allowed to proceed, then duplicative parallel cases would proceed in [multiple] fora." *Gen. Star Indem. Co.*, 2021 U.S. Dist. LEXIS 251565 at *15. Contrarily, if abstention is exercised, all issues could be resolved efficiently in a single action. The "court's interest" in discouraging and "avoiding duplicative litigation weighs in favor of" abstention. *Becerra*, 2020 U.S. Dist. LEXIS 36687 at *8.

Therefore, each of the *Brillhart* factors weigh in favor of abstention. The Court should abstain from hearing the issues presented pursuant to *Wilton* and dismiss the instant proceeding in its entirety. In the alternative, the Court should stay this matter pending the outcome of the New York Actions.

## C.   The Court should abstain from exercising jurisdiction pursuant to *Colorado River*.

If the Court were to determine that *Wilton* abstention for a declaratory action is inappropriate, abstention is still warranted under the more stringent *Colorado River* standard. It is true, as a general rule, when it comes to "non-discretionary actions" federal courts "possess a 'virtually unflagging

- 19 -

obligation . . . to exercise the jurisdiction given them.'" *R.R. Street*, 656 F.3d at 977 (quoting *Colorado River*, 424 U.S. at 817). At the same time, the Ninth Circuit has acknowledged that this obligation is not infinite and particular cases exist that present "the exceptional circumstances that warrant a *Colorado River* stay or dismissal[.]" *Id.* at 978; *see Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1165-66 (9th Cir. 2017); *Nakash v. Marciano*, 882 F.2d 1411, 1415-16 (9th Cir. 1989); *Am. Int'l Underwriters v. Continental Ins. Co.*, 843 F.2d 1253, 1256-57 (9th Cir. 1988).

The resulting analysis is not a "hard-and-fast" rule, but rather an exercise of discretion based on the balance of certain factors, set forth below, which the Ninth Circuit expanded beyond the original six *Colorado River* factors:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. Street*, 656 F.3d at 978-79. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818-19.

Despite the prior *Wilton* abstention analysis, the *Colorado River* factors still need be discussed herein, albeit in an abbreviated fashion where duplicative, because (i) there are additional factors in the *Colorado River* analysis and (ii) the Court would only reach the *Colorado River* analysis is if the instant matter sought more than declaratory relief, in which case the Court would not analyze the *Brillhart* factors. No matter the standard applied, abstention is warranted.

*First*, the first factor regarding property is inapplicable given the subject matter of the litigation. *See Jolly v. Intuit Inc.*, 485 F. Supp. 3d 1191, 1203 (N.D. Cal. 2020).

MEMORANDUM OF LAW
3:16-md-02741-VC

*Second*, the inconvenience of the federal forum in this case supports abstention. In *Colorado River*, the Supreme Court examined this factor with respect to the 300-mile distance between the forum and home jurisdiction. *See Colorado River*, 424 U.S. at 820; *Montanore Minerals*, 867 F.3d at 1167. While it would be inconvenient logistically for Cellino & Barnes and Cellino Law as New York entities to litigate in the Northern District of California, *see Am. Int'l Underwriters*, 843 F.2d at 1258, the inconvenience of this forum cannot be viewed in isolation. Goldstein Greco is seeking to have Cellino & Barnes and Cellino Law simultaneously litigate these same issues in the District of Maryland, Northern District of Georgia, and District of New Hampshire all contemporaneous with the New York Actions. This factor weighs even heavier towards abstention where Goldstein Greco has offered no explanation that this Court (or indeed the other district courts presiding over the MDL Actions) has personal jurisdiction over Cellino & Barnes and Cellino Law. Under these circumstances, this factor weighs in favor of abstention along the same lines as the next.

*Third*, the desirability of avoiding piecemeal litigation favors abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *R.R. Street*, 656 F.3d at 979. This is a flexible test, albeit one that requires a "special concern" that "can be remedied by staying or dismissing the federal proceding[.]" *Id.*

There is no doubt that this Court would be adjudicating the same factual assertions and claims as the state court. However, in addition to the New York Actions, this case presents even greater risk of piecemeal litigation due to the four concurrent federal MDL Actions that also deal with the same issues. The Supreme Court explained that "between federal district courts," while "no precise rule has evolved, the general principle is to avoid duplicative litigation." *Colorado River*, 424 U.S. at 817. Abstention would avoid piecemeal litigation within sister federal courts and with New York courts.

*Fourth*, the fact that the New York Actions predate this litigation also favors abstention. *See Hartford Cas. Ins. Co. v. Teed*, 2019 U.S. Dist. LEXIS 226600, *9 (N.D. Cal. May 10, 2019);

*v. Vendley*, 356 F. Supp. 3d 935, 946 (N.D. Cal. 2018). "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. This requires a pragmatic, flexible manner, with a view to the realities of the case at hand. *Id.*; *Montanore Minerals*, 867 F.3d at 1168.

As discussed with respect to the *Brillhart* factors under *Wilton* abstention, the state court exercised jurisdiction over the New York Actions as early as March 31, 2023—when the First New York Action was commenced—but no later than June 1, 2023—when the state court directed the filing of the amended complaint and Second New York Action. Goldstein Greco's race to file the MDL Actions does not eliminate that exercise of jurisdiction.

The stage of development of the New York litigation also weighs heavily in favor of abstention. Undoubtedly, Goldstein Greco will point to the fact that the New York Actions are facially in their infancy. At first glance that is true. However, Goldstein Greco's allegations make clear that the underlying Cellino & Barnes dissolution proceeding is fundamental to, if not at the very heart of, many of the crucial disputes in this case.

The dissolution proceeding has been litigated for years in Buffalo, New York, both (i) during public litigation in front of the same Court presiding over the New York Actions and (ii) during post-settlement, out-of-court matters heard by a court-appointed referee who is located in Buffalo, New York. (Berloth Decl. ¶ 55). Of particular import here, some of the very legal issues presented to this Court and the other district courts presiding over these MDL Actions—*to wit* whether Cellino & Barnes, at least, is entitled to a charging lien—has already been decided by the New York Supreme Court. For instance, on June 18, 2020, the New York court Ordered, in pertinent part: "That Cellino & Barnes *will be entitled to assert attorneys charging liens on cases that transfer to other firms* . . . ." (Berloth Decl. ¶¶ 48-49, Ex. 10 (emphasis added)).

MEMORANDUM OF LAW
3:16-md-02741-VC

Additionally, the New York court and its appointed referee have already dealt with years of factual issues and disputes that are relevant, if not directly at issue, here. For instance, the referee conducted an in-depth examination into the conduct of Goldstein Greco's principals after they were alleged to have engaged in solicitation of a large amount of cases when they first left Cellino & Barnes employment, post-dissolution in 2020, for Cellino Law—the same conduct engaged in again here during their departure from Cellino Law. (Berloth Decl. ¶ 56).

The referee conducted depositions of the Goldstein Greco principals with respect to that investigation and found that impermissible solicitation occurred. (Berloth Decl. ¶ 57, Exs. 11). While those instances of solicitation were resolved through agreements between Cellino & Barnes and its successor firms, Cellino Law and The Barnes Firm, P.C., the instant proceedings also implicate the Goldstein Greco principals engaging in surreptitious pre-resignation solicitation of Cellino Law clients. Many of the clients at issue are former Cellino & Barnes clients and the solicitation interferes with the very agreements entered into to resolve the prior solicitation.

Furthermore, as of August 1, 2023, both New York Actions were reassigned to the same judge who presided over the dissolution proceeding and who appointed the referee. (Berloth Decl. ¶¶ 64-66, Ex. 12). Accordingly, the advanced stage of the Cellino & Barnes dissolution proceedings, the related post-dissolution referee examinations, disputes, and resolutions, and the first-in-time New York Actions weigh heavily in favor of abstention.

*Fifth*, the instant matter requires application of New York law. Goldstein Greco admits: "Attorneys' fees are considered substantive under the *Erie* doctrine and New York law is properly applied here." (Doc. 1352, *Petition* ¶48 (citing *RLS Assocs.*, 464 F. Supp. 2d at 213; *Itar-Tass*, 140 F.3d at 448-49). Thus, the lack of a question of federal law points toward abstention.

*Sixth*, there is no reason to think that the state forum will prove an inadequate forum to resolve a state-law action, protect the rights of the parties, or resolving the rights of the parties under state

- 23 -

law. *See Jolly*, 485 F. Supp. 3d at 1205; *Goodin*, 356 F. Supp. 3d at 946-47. Quite to the contrary, this litigation involves only New York claims and only New York residents, which are distinctly tied to the State of New York. Moreover, the state court, including its court-appointed referee, has become familiar with these particular parties, claims, and issues over the past several years. Indeed, the presiding judge issued an Order entitling Cellino & Barnes to assert charging liens on the cases at issue. (Berloth Decl. Ex. 10). This factor too favors abstention.

*Seventh*, the Ninth Circuit recognized this additional factor of "forum shopping" under a *Colorado River* analysis. *R.R. Street*, 656 F.3d at 979; *Montanore Minerals*, 867 F.3d at 1168. As previously discussed, Goldstein Greco filed the applications in the MDL Actions a mere four days before the amended complaint was directed to be filed in the First New York Action. Before that, Goldstein Greco tried filing a motion to change venue in the First New York Action, which was denied. (Berloth Decl. Exs. 2-3). The desire to avoid forum shopping favors abstention.

*Eighth*, "[t]he state court proceedings will resolve every issue presented by this case. As explained above, the same issues raised here are implicated there." *Jolly*, 485 F. Supp. 3d at 1205.

As eloquently put by the Fourth Circuit, "[n]otwithstanding our analysis of the six *Colorado River* abstention factors, it is important to note that a factor-by-factor analysis does not fully convey the synergistic effect of all the circumstances." *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 343 (4th Cir. 2002). The circumstances taken as a whole paint a picture even more heavily favoring abstention. Indeed, the worst that can be said about any of the *Colorado River* factors is that they are neutral; although, the vast majority favor abstention. Simply put, the proper forum is in New York.

Therefore, Cellino & Barnes and Cellino Law respectfully request that their motion to dismiss, or in the alternative their motion to stay, is granted such that the instant disputes are permitted to be litigated in the New York Actions.

1

## <u>CONCLUSION</u>

2      For all of the reasons set forth in the foregoing arguments, Cellino & Barnes and Cellino

3  Law respectfully requests that this Court enter an Order:

4
        (i)      Granting their Motion to Dismiss in its entirety;

5

6
        (ii)     In the first alternative, staying the instant proceedings pending the results of the New York Actions; or

7

8
        (iii)    In the second alternative, setting a schedule for Cellino & Barnes and Cellino Law to answer and oppose the Petition on its substantive merits; and

9

10
        (iv)     Enter an Order for all such other and further relief as the Court deems just and proper.

11  Dated: Buffalo, New York

12        August 11, 2023

13                            DUKE HOLZMAN PHOTIADIS & GRESENS LLP

14

15                  By:  /s/ *Christopher M. Berloth*

16                      Christopher M. Berloth
                    Thomas D. Lyons

17                      *Attorneys For Third-Parties in Interest Cellino & Barnes, P.C. and Cellino Law LLP*

18                      701 Seneca Street, Suite 750
                    Buffalo, New York 14210

19                      cberloth@dhpglaw.com

20                      tlyons@dhpglaw.com

21

22

23

24

25

26

27

28

- 25 -