# EXHIBIT 4

Case 3.16-md-02741-VC Document 17115-6 Filed 08/11/23 Page 2 of 121

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

———————————————————

CELLINO LAW LLP, and
CELLINO & BARNES, P.C.,

                              Plaintiff,

-v-

GOLDSTEIN GRECO, P.C.,
BRIAN GOLDSTEIN, ESQ., and
ALEXANDER GRECO, ESQ.,

                              Defendants.

———————————————————

**AMENDED COMPLAINT**

Index No.: 804192/2023

*Hon. Timothy J. Walker,
Presiding*

Plaintiffs Cellino Law LLP ("Cellino Law") and Cellino & Barnes, P.C. ("C&B") (each a "Plaintiff" and collectively "Plaintiffs"), by and through their undersigned counsel, for their amended complaint against Defendants Goldstein Greco, P.C., Brian Goldstein, Esq., and Alexander Greco, Esq. (each a "Defendant" and collectively "Defendants"), state and allege:

INTRODUCTION

1.      The instant matter arises from: (a) Defendants' improper and illicit solicitation and pirating of Plaintiffs' clients upon leaving the employ of Cellino Law (the "Solicited Cases"); (b) Defendants' tortious conduct, including breach of contract, in pirating the Solicited Cases; (c) the settlement of one or more of the Solicited Cases—including one captioned *Terah Jackson, as Administrator of the Estate of Ronald Winans, Deceased v. Newfane Rehabilitation & Health Center*, Niagara County Index No. E169868/2019 (the "Winans Matter"); (d) Defendants' erroneous attempt to discharge the valid charging liens held by Cellino Law and C&B for work performed on the Winans Matter; and (e) Plaintiffs' right for said charging liens to be established pursuant to Judiciary Law § 475.

Case 3.16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 3 of 121

2.     Simply put, Defendants have engaged in a pattern of tortious conduct intended to deprive Plaintiffs of legal fees and costs rightly due and owing to Cellino Law and C&B and siphon those funds for their own gain.

<u>PARTIES</u>

3.     Plaintiff Cellino Law is, and at all relevant times has been, a law firm and limited liability partnership organized and existing under the laws of the State of New York with a principal office maintained for the purpose of transacting business at 800 Delaware Avenue, Buffalo, New York 14209.

4.     Plaintiff C&B is, and at all relevant times has been, a law firm and professional corporation organized and existing under the laws of the State of New York with a prior principal office maintained for the purpose of transacting business in the State of New York.

5.     Cellino Law is a successor to C&B and has obtained the right to enforce liens or claims to attorney's fees that belonged to C&B including as to certain of the Solicited Cases, including, but not limited to, the Winans Matter.

6.     Upon information and belief, Defendant Goldstein Greco, P.C., is, and at all relevant times has been, a law firm and professional corporation organized and existing under the laws of the State of New York with a principal office maintained for the purpose of transacting business at 2354 Wehrle Drive, Buffalo, New York 14221.

7.     Upon information and belief, Defendant Brian Goldstein, Esq., is, and at all relevant times has been, an attorney admitted to practice law in the State of New York and is a principal of Goldstein Greco, P.C.

8.    Upon information and belief, Defendant Alexander Greco, Esq., is, and at all relevant times has been, an attorney admitted to practice law in the State of New York and is a principal of Defendant Goldstein Greco, P.C.

9.    Brian Goldstein, Esq. was previously employed as an attorney by Cellino Law and C&B.

10.   Alexander Greco, Esq., was previously employed as an attorney by Cellino Law and C&B.

JURISDICTION & VENUE

11.   Venue is proper in Erie County pursuant to CPLR § 503, including, but not limited to, pursuant to Section 503(c) as the parties are New York domestic corporations, authorized to transact business within the State of New York, and maintain offices for the purpose of transacting business within Erie County.

12.   This litigation seeks both declaratory judgment and damages exceeding the jurisdictional limits of all lower courts.

13.   This Court has jurisdiction over Defendants pursuant to Article 3 of the CPLR.

FACTS

I.    Overview of C&B and the C&B dissolution.

14.   C&B was a personal injury law firm performing legal services in the State of New York, among other states.

15.   Defendants Goldstein and Greco were employees of C&B.

16.   Defendant Goldstein entered into an employment agreement with C&B, a copy of which is annexed hereto as *Exhibit 1*.

- 3 -

Case 3.16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 5 of 121

17. Defendants Goldstein and Greco remained employed with C&B until it ceased operating as a law firm on or around October 17, 2020.

18. C&B ceased operating as a law firm after a special proceeding was commenced in 2017 seeking the dissolution of C&B, captioned *Cellino v. Cellino & Barnes, P.C., et al.*, Erie County Commercial Division Index No. 806178/2017 (the "Dissolution Proceeding").

19. After years of substantial litigation, on January 28, 2020, one of two Stipulated Orders of Dissolution was entered and filed by the Honorable Deborah A. Chimes, J.S.C., a copy of which is annexed hereto as *Exhibit 2* (the "First Order of Dissolution"), Ordering, among other things:

> that Cellino & Barnes, P.C. shall be dissolved voluntarily and its business affairs wound up in accordance with Article 10 of the New York Business Corporation Law . . .

Ex. 3 (also available via NYSCEF, Dissolution Proceeding Doc. 327).

20. Rather self-evidently, the First Order of Dissolution did not equate to a legal dissolution of C&B as an entity, but rather an Order that C&B would be dissolved in the future pursuant to a winding down process. *See id.*

21. This is particularly true as C&B is still an entity existing pursuant to the laws of the State of New York for the purposes of winding up the corporation's affairs.

22. Indeed, C&B continued to operate as a fully operational law firm for months after the First Dissolution Order was entered. The parties to the Dissolution Proceeding engaged in substantial, and confidential, settlement negotiations to effectuate the winding down process, which occurred contemporaneously with C&B's continued operations.

23. Part of the winding-up process includes ensuring that the two successor firms of C&B—Cellino Law and The Barnes Firm, P.C. ("The Barnes Firm")—will properly compensate C&B for the work it performed on behalf of its clients.

24. One of the crucial components of winding down C&B is ensuring the fair and equitable split of fees that results from any liens C&B is entitled to for cases for which it was counsel of record prior to dissolution.

25. The parties to the Dissolution Proceeding were able to agree to terms, which ultimately resulted in the Court entering a second Stipulated Order of Dissolution, a copy of which is annexed hereto as *Exhibit 3* (the "Second Dissolution Order").

26. The Second Dissolution Order, entered June 18, 2020, Ordered, in pertinent part:

> That Cellino & Barnes will be entitled to assert attorneys charging liens on cases that transfer to other firms, and that as to cases that transfer to either the new Cellino firm [Cellino Law] or the new Barnes firm [The Barnes Firm], Cellino & Barnes shall be entitled to a lien determined pursuant to the following "Quantum Meruit Calculation," namely that as to any transferred case, Cellino & Barnes will be entitled to a percentage of the attorneys' fee equivalent to the ratio of time the new firm retained the case compared to Cellino & Barnes. . . . This court specifically approves the "Quantum Meruit Calculation" as a fair and equitable way to determine the appropriate attorney's lien amount pursuant to Judiciary Law section 475.

Ex. 4 (also available via NYSCEF, Dissolution Proceeding Doc. 342).

27. Accordingly, while C&B ceased operating as a law firm in October 2020, it still exists as a corporate entity, with a right to liens on its cases, as evidenced by Court Order.

28. Furthermore, C&B's successor firms, Cellino Law and The Barnes Firm, continue to represent the C&B clients' interests pursuant to the terms of the dissolution.

29.     The C&B clients were properly informed of their right to choose counsel and subsequently elected new counsel after C&B ceased operating as a law firm—most of whom elected to select either Cellino Law or The Barnes Firm as their new counsel.

30.     As such, as of October 17, 2020, Cellino Law began serving as counsel for a large percentage of former C&B clients.

II.     Defendants' Employment Post Dissolution

31.     Cellino Law began operating as a personal injury law firm in October 2020. Most of its attorneys and staff were formerly employed by C&B, having elected to proceed with Cellino Law after C&B ceased operating as a law firm (the other C&B employees having largely selected to be employed by The Barnes Firm).

32.     Two of the attorneys who elected to proceed with Cellino Law were Defendants Goldstein and Greco.

33.     On June 27, 2020, Defendant Greco entered into an employment agreement with Cellino Law, a copy of which is annexed hereto as *Exhibit 4*.

34.     On June 30, 2020, Defendant Goldstein entered into an employment agreement with Cellino Law, which was subsequently amended, in part, on June 27, 2021, a copy of which is annexed hereto as *Exhibit 5*.

35.     Also on June 30, 2020, Cellino Law agreed to provide Defendant Goldstein with a demand loan in the amount of $300,000 (the "Loan") with simple interest equal to the short-term Applicable Federal Rate, such that the rate was the lowest rate permitted by the Internal Revenue Code without imputation of interest.

Case 3:16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 8 of 121

36.     Defendant Goldstein executed a Demand Note ("Note") for the Loan, promising to repay to Cellino Law the principal sum of $300,000 and interest on the unpaid portion of the principal sum, a copy of which is annexed hereto as *Exhibit 6*.

37.     As set forth in Goldstein's employment agreement, Cellino Law agreed to forgive one-third of the original amount of the Note, as taxable compensation to Goldstein, on each anniversary of the Effective Date of the employment agreement. *See* Ex. 6. Defendant Goldstein was required to pay any outstanding balance due under the Loan within 30 days of any termination of his employment at Cellino Law. *See id.*

38.     Pursuant to the Note, Defendant Goldstein further agreed to pay to Cellino Law on demand all reasonable costs and expenses (including, but not limited to, the reasonable fees and disbursements of counsel, whether retained for advice or litigation) incurred by Cellino Law in endeavoring to: (1) collect any amount owing pursuant to the Note in the event of a default; or (2) preserve or exercise any right or remedy pursuant to the Note. *See* Ex. 7.

39.     On December 24, 2020, Cellino Law forgave $100,000.00 of the Loan balance, leaving a principal balance of $200,000.00.

40.     No further payment was made on the Loan's principal.

41.     Despite his contractual obligation to do so, Defendant Goldstein did not pay the outstanding balance due under the Loan within thirty (30) days of the end of his employment at Cellino Law.

42.     As a result of Defendant Goldstein's failure to pay the outstanding balance due under the Loan, Cellino Law has been, and continues to be, damaged, in an amount to be proven at trial, but no less than the outstanding principal balance of $200,000.00, plus interest, attorney's fees, costs, and disbursements.

III.   <u>Overview of Cellino Law Post Dissolution</u>

43.   Initially, most, if not all, of Defendant Goldstein's and Defendant Greco's caseloads at Cellino Law were prior C&B cases.

44.   However, during their tenure with Cellino Law, Defendants Goldstein and Greco were also assigned to work on cases that Cellino Law retained after C&B ceased its operations (the "Cellino Law Exclusive Cases").

45.   Defendants Goldstein and Greco worked for Cellino Law for nearly two years.

46.   In that time, Defendants Goldstein and Greco were made privy to and obtained certain of Plaintiffs' confidential and proprietary information, business secrets, and work product (collectively "Confidential Information") by exploiting the confidential, trusting, and loyal relationship with Plaintiffs. Such information was provided to Defendants Goldstein and Greco in confidence pursuant to that confidential relationship.

47.   The confidential and proprietary information, business secrets, and work product obtained by Defendants Goldstein and Greco (and subsequently misappropriated by Defendants, as further alleged below) belonged to both Cellino Law and C&B.

48.   As a successor to C&B, Cellino Law was provided certain rights to C&B's confidential and proprietary information, business secrets, and work product (the remainder of such rights being provided to The Barnes Firm as the other successor to C&B).

49.   Unbeknownst to Plaintiffs at the time, Defendants Goldstein and Greco were misappropriating Plaintiffs' resources, property, and Confidential Information in a duplicitous plot to create a competing firm, including planning and executing a campaign of illicit solicitation of Plaintiffs' clients (consisting of both C&B clients and Cellino Law clients).

IV.     Defendants' pre-resignation surreptitious soliciting of C&B and Cellino Law Cases.

50.     On or around August 26, 2022, a client of Cellino Law hand delivered a signed retainer agreement to Cellino Law's office; the retainer agreement was on the letterhead of and for "Goldstein Greco, P.C."

51.     This retainer demonstrated that Defendants had started their own law firm and evidently intended to leave Cellino Law.

52.     After investigating the new firm, Cellino Law learned that Defendants formed Goldstein Greco, P.C., by filing with the Department of State over a month prior, on July 19, 2022. A copy of the Department of State filing is annexed hereto as *Exhibit 7.*

53.     Defendant Goldstein's and Defendant Greco's employment with Cellino Law terminated no later than September 30, 2022.

54.     Ultimately, Plaintiffs learned that prior to that termination, Defendants Goldstein and Greco had been: (i) engaging in pre-resignation surreptitious solicitation and pirating of Plaintiffs' clients for personal gain; (ii) misappropriating Plaintiffs' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) misrepresenting to Plaintiffs and their shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Plaintiffs on short notice and taking the client files; (vi) failing to maintain and spoliating Plaintiffs' records in the process; (vii) absconding with Plaintiffs' Confidential Information, as well as using that Confidential Information in competition with, and to the detriment of, Plaintiffs; (viii) engaging in self-interested transactions to the injury of Plaintiffs; (ix) failing to advance the interest of Plaintiffs while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from

Plaintiffs' employ; (x) mismanaging Plaintiffs' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from Plaintiffs' employ as well as their solicitation and pirating of clients.

55.     For instance, prior to notifying Cellino Law of their impending resignation, Defendants drafted and circulated a letter to certain of Plaintiffs' clients that was sent on Goldstein Greco, P.C. letterhead (the "Pre-Resignation Solicitation").

56.     In addition to being an improper pre-resignation surreptitious solicitation, the Pre-Resignation Solicitation was improper for a variety of other reasons, including:

a.     Defendants misrepresented their status, equating themselves to Cellino Law;

b.     Defendants misrepresented that they were moving the entire Cellino Law Mass Tort department to the newly established Goldstein Greco, P.C. firm;

c.     Defendants misappropriated the goodwill and business reputation of Plaintiffs as their own; and

d.     Defendants misappropriated and infringed upon valid trademarks owned and paid for by Plaintiffs.

57.     The August 26, 2022, hand delivery by a then-client of Cellino Law of an executed Goldstein Greco, P.C., engagement agreement was only further demonstrative of Defendants' pre-resignation surreptitious solicitation.

58.     Upon information and belief, Defendants had been secretly planning their separation from Cellino Law for months, during which time Defendants:

a.     Continued to be appointed to Cellino Law's intake schedule for new clients, which Defendants intentionally did to pirate new clients to their to-be-formed firm and which Cellino Law would not have permitted to continue had it known about Defendants' wrongful conduct and plans to depart;

     b.     Took, copied, and/or misappropriated Plaintiffs' work product to be used at Goldstein Greco, P.C.;

     c.     Degraded and disparaged Cellino Law, its attorneys, and its leadership;

     d.     Misrepresented the status of Cellino Law to current employees in an attempt to convince them to leave Cellino Law's employment;

     e.     Directed client calls that came to Cellino Law's office to their personal and/or new firm contact information in an attempt to maintain secrecy of their pirating scheme;

     f.     Ostensibly rejected cases on behalf of Cellino Law only to subsequently represent the client(s) so that Cellino Law had no purported claim to the file; and

     g.     Took Cellino Law office supplies to set up Goldstein Greco, P.C.

59.    Shortly after confronting Defendants about their improper conduct, Plaintiffs became aware of an estimated 150 to 200 retainer agreements that had been obtained by Defendants of Plaintiffs' former clients.

60.    Upon information and belief, Defendants first targeted those of Plaintiffs' clients whom they believed to be the most valuable clients—in other words those whose cases had the highest estimated settlement/resolution value.

61.    It also became clear that Defendants delayed settling cases while employed at Cellino Law in an apparent attempt to gain entitlement to legal fees for which Goldstein Greco, P.C., had and has no right—one of which being the Winans Matter.

62.    Upon information and belief, Defendants have also attempted to settle matters without putting them into suit for the purpose of avoiding filing fees and common benefit fees associated with Mass Tort cases.

- 11 -

Case 3.16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 13 of 121

63.     As a result, many of the Solicited Cases are not publicly filed permitting Plaintiffs to monitor the same in order to pursue fees.

64.     Moreover, upon information and belief, Defendants redirected clients who contacted Cellino Law seeking representation by declining to commence representation on behalf of those clients with the intent to later sign those clients up for representation with Goldstein Greco.

V.      The Winans Matter.

65.     Terah Jackson, as administrator of the estate of Ronald Winans, initially retained C&B to represent her for Ronald Winans' wrongful death and/or conscious pain and suffering caused by the negligence of another.

66.     On September 18, 2018, Terah Jackson, as administrator of the estate of Ronald Winans, entered into a written retainer agreement with C&B, which set forth the terms of C&B's representation and professional relationship with Terah Jackson (hereinafter the "C&B Retainer").

67.     A true and accurate copy of the C&B Retainer is annexed hereto as *Exhibit 8*.

68.     The C&B Retainer provided, among other things, that C&B would be entitled to a contingency attorney's fee of one-third (1/3) of any settlement amount or recovery for the Winans Matter, before the subtraction of disbursements and/or expenses, as compensation for C&B's services on her behalf.

69.     On or around October 25, 2020, after the Order of dissolution of C&B and the creation of Cellino Law as one of the successors to C&B, Terah Jackson, as administrator of the estate of Ronald Winans, entered into a written retainer agreement with Cellino Law for representation in the Winans Matter, which set forth the terms of Cellino Law's representation and professional relationship with Terah Jackson (hereinafter the "Cellino Law Retainer"; the C&B

- 12 -

Retainer and Cellino Law Retainer hereinafter collectively referred to as the "Retainer Agreements").

70.     A true and accurate copy of the Cellino Law Retainer is annexed hereto as *Exhibit 9*.

71.     The Cellino Law Retainer provided, among other things, that Cellino Law would be entitled to a contingency attorney's fee of one-third (1/3) of any settlement amount or recovery for the Winans Matter, before the subtraction of disbursements and/or expenses, as compensation for Cellino Law's services on Ms. Jackson's behalf.

72.     Consistent with the retainer agreement and Cellino Law's and/or C&B's professional relationship with Terah Jackson, as administrator of the estate of Ronald Winans, Plaintiffs performed substantial services on Ms. Jackson's behalf, including but not limited to:

a.      conducting an initial interview with the administrator;

b.      investigating the circumstances of the accident;

c.      identifying responsible parties;

d.      investigating the nature and extent of injuries experienced by the decedent;

e.      identifying and notifying insurance carriers that might provide coverage for the loss;

f.      obtaining and analyzing relevant medical records;

g.      extensively communicating with the administrator;

h.      communicating with insurance carriers;

i.      analyzing viable causes of action;

j.      drafting and filing a summons and complaint;

k.      completing discovery demands, including bills of particulars and supplementing bills of particulars;

l.      conducting depositions;

m.    completing any necessary motion practice, expert consideration, and retention; and

n.    attending preliminary conferences, compliance conferences, and settlement conferences.

73.    On or about August 2, 2022, while the retained attorney/attorney of record was Cellino Law, the Winans Matter was settled in principle.

74.    The court of jurisdiction over the underlying litigation for the Winans Matter was advised of the settlement.

75.    Subsequently, Cellino Law was advised that it was discharged and that Terah Jackson had retained the Defendants.

76.    Defendants filed a consent to change attorney form on October 5, 2022.

77.    Both Cellino Law and C&B asserted a claim and lien to the attorney's fees received on the case and elected to be compensated on a percentage basis, based on the proportionate share of the work performed by each firm that had been retained.

78.    Upon information and belief, the Winans Matter has resolved and the settlement agreed to in August 2022 formally received court approval on November 16, 2022, with $137,500.00 in attorney's fees approved.

79.    Plaintiffs and Defendants have not agreed on the allocation of the attorney's fees received for the Winans Matter, including the repayment of disbursements incurred by Plaintiffs.

<u>FIRST CAUSE OF ACTION</u>
DECLARATION AND ESTABLISHMENT OF PLAINTIFFS' CHARGING LIEN
BY ALL PLAINTIFFS FOR THE WINANS MATTER

80.    Plaintiffs have a common law right and/or a statutory lien pursuant to Judiciary Law § 475 to recover their due and owing attorneys' fees and legal costs.

81.    With respect to the statutory lien, New York Judiciary Law § 475 provides:

From the commencement of an action . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

82.     C&B commenced, appeared in, and engaged in substantial litigation in the Winans Matter.

83.     For instance, C&B:

    a.     retained the client in the first instance in September 2018;

    b.     commenced the Winans Matter on August 14, 2019, *see* Winans Matter Doc. 1;

    c.     filed the certificate of merit;

    d.     engaged in discussions and litigation practices on the matter, including stipulations to extend time to answer, and filing RJIs;

    e.     litigated a motion to strike, *see* Winans Matter Doc. 5;

    f.     served demands for a verified bill of particulars, omnibus discovery demands, and cross notices of examination before trial to defense;

    g.     responded to discovery demands served by the defense, including issuing supplemental responses;

    h.     attended preliminary conferences with the court; and

    i.     defended the plaintiff's deposition.

84.     C&B therefore has a valid and enforceable charging lien pursuant to New York Judiciary Law § 475 and New York common law.

85.     After the Order of dissolution of C&B, Cellino Law was retained for, appeared in, and engaged in substantial litigation in the Winans Matter.

86.     For instance, Cellino Law:

   a.   served good faith letters and sought the correction or production of deficient and/or supplemental discovery responses;

   b.   engaged in motion practice;

   c.   served supplemental discovery demands upon the defense;

   d.   attended preliminary conferences;

   e.   conducted depositions of witnesses;

   f.   served a third, fourth, fifth, and sixth round of discovery demands to the defense;

   g.   attended a virtual hearing with the court; and

   h.   negotiated the settlement of the dispute, including agreeing to terms in principle pending court approval.

87.     Cellino Law therefore has a valid and enforceable charging lien pursuant to New York Judiciary Law § 475 and New York common law.

88.     After Defendant Goldstein and Defendant Greco terminated their employment, Cellino Law received notification that Terah Jackson had retained Defendant Goldstein Greco, P.C. to substitute as counsel for the Winans Matter.

89.     However, that transfer of representation does nothing to diminish or alter Plaintiffs' charging lien.

90.     Plaintiffs' charging lien came "into existence, without notice or filing, upon commencement of the action or proceeding." *LMWT Realty Corp. v. Davis Agency*, 85 N.Y.2d 462, 467-68 (1995).

91.     Upon information and belief, the Winans Matter was resolved, and the settlement that had been agreed to in August 2022 was formally received, with court approval, on November 16, 2022, with $137,500.00 in attorney's fees approved.

92.     Plaintiffs have a common law right and/or a statutory lien pursuant to Judiciary Law § 475 to obtain the value of their services based on the proportionate share of the work performed by each of them and the Defendants, meaning that each firm should obtain a percentage of the attorney's fee representing its proportionate share of the work performed by each firm on the whole case.

93.     C&B is entitled to recover a percentage of the $137,500.00 that represents its proportionate share of the work performed while it was counsel of record (the "C&B Winans Share").

94.     Cellino Law is entitled to recover a percentage of the $137,500.00 that represents its proportionate share of the work performed while it was counsel of record (the "Cellino Law Winans Share").

95.     Defendants are not entitled to receive any portion of fees.

96.     Plaintiffs are also entitled to recover the total amount of disbursements incurred during their respective representation in the Winans Matter.

97.     Plaintiffs have incurred a combined total of outstanding disbursements due and owing in the amount of $11,671.92 in the Winans Matter, which should be reimbursed to Plaintiffs out of the settlement approved by the court (the "Winans Disbursements").

98.     Due to the amount of work performed by Plaintiffs on the Winans Matter, compared to the minimal work performed by Defendants, as well as the bad-faith conduct engaged in by Defendants, the Court should apportion the entire $137,500.00 to Plaintiffs to represent the C&B

Winans Share, Cellino Law Winans Share, and Winans Disbursements, with no portion of the fees being paid to the Defendants (to the extent there remains any amount apportioned to Defendants, said amount is hereinafter referred to as the "Defendants' Share").

99.     Therefore, Plaintiffs are entitled to judgment declaring and establishing a valid and enforceable charging lien for both C&B and Cellino Law, in accordance with Judiciary Law § 475: (i) for the full $137,500.00 attorneys' fees recovered in the Winans Matter; or (ii) in the alternative, an amount of $11,671.92 for disbursements plus an amount to be apportioned quantum meruit to each Plaintiff for past and current attorneys' fees due and owing for the Winans Matter.

<u>SECOND CAUSE OF ACTION</u>
DECLARATION AND ESTABLISHMENT OF PLAINTIFFS' CHARGING LIEN
BY ALL PLAINTIFFS FOR THE SOLICITED CASES

100.     Plaintiffs have a common law right and/or a statutory lien pursuant to Judiciary Law § 475 to recover their due and owing attorneys' fees and legal costs.

101.     C&B commenced, appeared in, and engaged in substantial litigation in certain of the Solicited Cases.

102.     C&B therefore has a valid and enforceable charging lien pursuant to New York Judiciary Law § 475 and New York common law for certain of the Solicited Cases.

103.     After the Order of dissolution of C&B, Cellino Law was retained for, appeared in, and engaged in substantial litigation in the Solicited Cases. In some cases, Cellino Law also commenced certain of the Solicited Cases.

104.     Cellino Law therefore has a valid and enforceable charging lien pursuant to New York Judiciary Law § 475 and New York common law for each and every Solicited Case.

105.     In or around August 2022, Cellino Law received notification that Defendants had engaged in an illicit campaign of soliciting and poaching Plaintiffs' cases and that the clients

represented in the Solicited Cases had retained Defendant Goldstein Greco, P.C., to substitute as counsel.

106.    However, that transfer of representation does nothing to diminish or alter Plaintiffs' charging liens for any of the Solicited Cases.

107.    Plaintiffs' charging liens came "into existence, without notice or filing, upon commencement of the action or proceeding." *LMWT Realty*, 85 N.Y.2d at 467-68.

108.    Upon information and belief, many, if not all of, the Solicited Cases (with the exception of the Winans Matter) have not been resolved to date.

109.    However, even prior to resolution, Plaintiffs have a common law right and/or a statutory lien pursuant to Judiciary Law § 475 to obtain the value of their services based on the proportionate share of the work performed by each of them and the Defendants, meaning that each firm should obtain a percentage of the attorney's fee representing its proportionate share of the work performed by each firm on the whole case.

110.    C&B is entitled to recover a percentage of the ultimate award in each Solicited Case that represents its proportionate share of the work performed while it was counsel of record (the "C&B SC-Share").

111.    Cellino Law is entitled to recover a percentage of the ultimate award in each Solicited Case that represents its proportionate share of the work performed while it was counsel of record (the "Cellino Law SC-Share").

112.    Plaintiffs are also entitled to recover the total amount of disbursements incurred during their respective representation in the Solicited Cases.

113.     Plaintiffs have incurred a combined total of outstanding disbursements due and owing in the Solicited Cases in an amount exceeding $400,000.00, which should be reimbursed to Plaintiffs by Defendants (the "SC-Disbursements").

114.     Therefore, Plaintiffs are entitled to judgment declaring and establishing a valid and enforceable charging lien for both C&B and Cellino Law, in accordance with Judiciary Law § 475: (i) for the SC-Disbursements and (ii) an additional amount to be apportioned to each Plaintiff for past and current attorneys' fees due and owing for each Solicited Case, to be determined upon the resolution of each case.

THIRD CAUSE OF ACTION<br>
BREACH OF CONTRACT – EMPLOYMENT AGREEMENT<br>
BY CELLINO LAW AGAINST ALL DEFENDANTS

115.     Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

116.     Defendants Goldstein and Greco entered into employment agreements with Cellino Law to serve as employee-attorneys and provide legal services to Cellino Law's clients (the "Cellino Law Employment Agreements") and, in return for which, Cellino Law was required to compensate Defendants Goldstein and Greco pursuant to the terms set forth therein.

117.     The Cellino Law Employment Agreements were and are valid and binding contracts.

118.     Defendants breached the express and implied terms of the Cellino Law Employment Agreements by, among other things, (i) engaging in pre-resignation surreptitious solicitation and pirating of Plaintiffs' clients for personal gain; (ii) misappropriating Plaintiffs' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights

with respect to choice of counsel; (iv) misrepresenting to Plaintiffs' shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Plaintiffs on short notice and taking the client files; (vi) failing to maintain and spoliating Plaintiffs' records in the process; (vii) absconding with Plaintiffs' Confidential Information, as well as using that Confidential Information in competition with and to the detriment of Plaintiffs; (viii) engaging in self-interested transactions to the injury of Plaintiffs; (ix) failing to advance the interest of Plaintiffs while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from Plaintiffs' employ; (x) mismanaging Plaintiffs' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from Plaintiffs' employ as well as their solicitation and pirating of clients.

119.    As a direct and proximate cause of Defendant Goldstein's and Defendant Greco's conduct, Cellino Law has suffered and will continue to suffer substantial monetary damages.

120.    Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

121.    Plaintiffs' damages also include, but are not limited to, any portion of the attorneys' fees that may be apportioned to Defendant Goldstein Greco, P.C., on any cases that Defendants intentionally declined to sign up at Cellino Law for the purpose of signing those cases up at Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have resulted in recovery by Plaintiffs.

Case 3.16-md-02741-VC Document 17115-6 Filed 08/11/23 Page 23 of 121

122.     Defendant Goldstein's and Defendant Greco's wrongful conduct is imputed upon Defendant Goldstein Greco, P.C.—the law firm they created to aid them in breaching their contract and to compete with Cellino Law.

123.     Accordingly, Plaintiff Cellino Law is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

FOURTH CAUSE OF ACTION

BREACH OF CONTRACT – EMPLOYMENT AGREEMENT, RESTRICTIVE COVENANTS BY C&B AGAINST ALL DEFENDANTS

124.     Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

125.     Defendants Goldstein and Greco entered into employment agreements with C&B to serve as employee-attorneys and provide legal services to C&B clients (the "C&B Employment Agreements") and, in return for which, C&B was required to compensate Defendants Goldstein and Greco pursuant to the terms set forth therein.

126.     The C&B Employment Agreements were and are valid and binding contracts.

127.     Plaintiff C&B performed under the C&B Employment Agreements.

128.     Defendant Goldstein's written C&B Employment Agreement contains express and implied terms which remain in full force and effect to date, despite the Dissolution Proceeding and subsequent employment of Defendant Goldstein by Cellino Law.

129.     Defendant Greco's C&B Employment Agreement contains implied terms which remain in full force and effect to date, despite the Dissolution Proceeding and subsequent employment of Defendant Greco by Cellino Law.

130. Specifically, C&B remains a legal entity and the contracts it interred into remain in full force and effect except to the extent the contracting party was intentionally released by C&B, which Defendants Goldstein and Greco were not.

131. Defendants breached the express and implied terms of the C&B Employment Agreements by, among other things, (i) engaging in pre-resignation surreptitious solicitation and pirating of certain of C&B's clients for personal gain; (ii) misappropriating Plaintiffs' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) abandoning C&B's contracted partner, Cellino Law, on short notice and taking the client files; (v) failing to maintain and spoliating Plaintiffs' records in the process; (vi) absconding with and misappropriating Plaintiffs' Confidential Information, as well as using that Confidential Information in competition with and to the detriment of Plaintiffs; trading off of and misappropriating C&B's name, likeness, and good business reputation; (viii) engaging in self-interested transactions to the injury of Plaintiffs; and (ix) engaging in, upon information and belief, improprieties during the departure from Plaintiffs' employ as well as their solicitation and pirating of clients.

132. As a direct and proximate cause of Defendant Goldstein's and Defendant Greco's conduct, C&B has suffered and will continue to suffer substantial monetary damages.

133. Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

134. Plaintiffs' damages also include, but are not limited to, any portion of the attorneys' fees that may be apportioned to Defendant Goldstein Greco, P.C., on any cases that Defendants intentionally declined to sign up at Cellino Law for the purpose of signing those cases up at Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have resulted in recovery by Plaintiffs.

135. Defendant Goldstein's and Defendant Greco's wrongful conduct is imputed upon Defendant Goldstein Greco, P.C.

136. Accordingly, Plaintiff C&B is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

## FIFTH CAUSE OF ACTION
### BREACH OF CONTRACT – THIRD-PARTY BENEFICIARY
### BY C&B AGAINST ALL DEFENDANTS

137. Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

138. At all relevant times, Defendants Goldstein and Greco had valid and binding contracts with Cellino Law—the Cellino Law Employment Agreements.

139. The Cellino Law Employment Agreements have both express and implied terms for the intended benefit of third parties, including C&B.

140. Among such intended benefits was the performance of legal work for clients (at a level and standard, and pursuant to certain ethical considerations, as C&B felt would benefit its clients), for which C&B would receive a portion of any legal fee compensation procured.

141. The intended benefit to C&B, both express and implied, demonstrates that the contracting parties assumed a duty to compensate C&B if its benefit was lost.

142.   For instance, C&B and Cellino Law entered a separate contract to ensure the continued representation of legal clients in the aftermath of the Dissolution Proceeding in an effective and ethical fashion and to ensure the best overall result on behalf of the clients.

143.   This contract contained specific compensation terms and a waterfall provision to ensure the fair remuneration to C&B for Cellino Law's right to seek retention by certain of C&B's clients.

144.   Defendants, having been employed by C&B and Cellino Law, were made aware of these contracts and had specialized knowledge thereof as a result of both their confidential status and relationship with Plaintiffs and their unique involvement in the disputes that arose during the Dissolution Proceeding.

145.   Moreover, Defendants had actual and specialized knowledge of C&B's status as an intended third-party beneficiary under the Cellino Law Employment Agreements.

146.   Notwithstanding, Defendants solicited various clients to breach their contract with Cellino Law so that Defendants could obtain the clients' legal work for Defendants' own personal gain.

147.   Defendants breached the express and implied terms of the employment contracts with Cellino Law by, among other things, (i) engaging in pre-resignation surreptitious solicitation and pirating of Plaintiffs' clients for personal gain; (ii) misappropriating Plaintiffs' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) misrepresenting to Plaintiffs' shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Plaintiffs on short notice and taking the client files; (vi) failing to maintain and spoliating Plaintiffs' records in the process; (vii) absconding with

Plaintiffs' Confidential Information, as well as using that Confidential Information in competition with and to the detriment of Plaintiffs; (viii) engaging in self-interested transactions to the injury of Plaintiffs; (ix) failing to advance the interest of Plaintiffs while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from Plaintiffs' employ; (x) mismanaging Plaintiffs' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from Plaintiffs' employ as well as their solicitation and pirating of clients.

148.    As an intended third-party beneficiary to the Cellino Law Employment Agreements, C&B has the right to enforce the Cellino Law Employment Agreements and to seek full benefits as provided thereunder or otherwise seek redress as necessary for Defendants' breaches.

149.    As a direct and proximate cause of Defendant Goldstein's and Defendant Greco's conduct, C&B has suffered and will continue to suffer substantial monetary damages.

150.    Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

151.    Defendant Goldstein's and Defendant Greco's wrongful conduct is imputed upon Defendant Goldstein Greco, P.C.—the law firm they created to aid them in breaching their contract and to compete with Cellino Law.

152.    Accordingly, Plaintiff C&B is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

Case 3.16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 28 of 121

SIXTH CAUSE OF ACTION
BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING –
EMPLOYMENT AGREEMENTS
BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

153.     Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

154.     New York law provides that every contract contains an implied covenant of good faith and fair dealing.

155.     Both the Cellino Law Employment Agreements and the C&B Employment Agreements contain an implied covenant of good faith and fair dealing.

156.     Pursuant to the implied covenant of good faith and fair dealing, even if not specifically stated in the contract(s), it is implied or understood that each party to the contract(s) must act in good faith and deal fairly with the other party in performing or enforcing the terms of the contract(s).

157.     To act in good faith and deal fairly, a party must act in a way that is honest and faithful to the agreed purposes of the contract and consistent with the reasonable expectations of the parties.

158.     A party must not act in bad faith, dishonestly, or with improper motive to destroy or injure the right of the other party to receive the benefits of the contract(s).

159.     Defendants aforesaid conduct, as fully set forth in this Amended Complaint as a whole, breached the implied covenant of good faith and fair dealing in the Cellino Law Employment Agreements and C&B Employment Agreements.

160.     As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered, and will continue to suffer, substantial monetary damages.

- 27 -

161.     Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

162.     Plaintiffs' damages also include, but are not limited to, any portion of the attorneys' fees that may be apportioned to Defendant Goldstein Greco, P.C., on any cases that Defendants intentionally declined to sign up at Cellino Law for the purpose of signing those cases up at Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have resulted in recovery by Plaintiffs.

163.     Defendant Goldstein's and Defendant Greco's wrongful conduct is imputed upon Defendant Goldstein Greco, P.C.—the law firm they created to aid them in breaching their contract and to compete with Cellino Law.

164.     Accordingly, Plaintiffs are entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

<u>SEVENTH CAUSE OF ACTION</u>
BREACH OF DUTY OF LOYALTY (FAITHLESS SERVANT DOCTRINE)
BY CELLINO LAW AGAINST ALL DEFENDANTS

165.     Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

166.     As employees, agents, and representatives of Plaintiffs, Defendants Goldstein and Greco each had a duty of loyalty to Plaintiffs Cellino Law and C&B.

167.     The duty of loyalty required Defendants to exercise the utmost good faith and loyalty in the performance of their duties for Plaintiffs.

168.    Defendant Goldstein's and Defendant Greco's duty of loyalty required them to dedicate all of their professional time, labor, skill, attention, and ability to the success and wellbeing of Plaintiffs and to not take actions inconsistent with Plaintiffs' interests.

169.    Defendants Goldstein and Greco breached their duty of loyalty by using time, efforts, facilities, and resources while employees, agents, and representatives of Plaintiffs, and drawing salaries from Plaintiffs, to discuss, negotiate, plan, conspire, and start a competitive business as well as to surreptitiously solicit Plaintiffs' clients pre-resignation.

170.    Defendants Goldstein and Greco breached said duty of loyalty to Plaintiffs by, among other things: (i) engaging in pre-resignation surreptitious solicitation and pirating of Plaintiffs' clients for personal gain; (ii) misappropriating Plaintiffs' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) misrepresenting to Plaintiffs' shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Plaintiffs on short notice and taking the client files; (vi) failing to maintain and spoliating Plaintiffs' records in the process; (vii) absconding with Plaintiffs' Confidential Information, as well as using that Confidential Information in competition with and to the detriment of Plaintiffs; (viii) engaging in self-interested transactions to the injury of Plaintiffs; (ix) failing to advance the interest of Plaintiffs while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from Plaintiffs' employ; (x) mismanaging Plaintiffs' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from Plaintiffs' employ as well as their solicitation and pirating of clients.

171.     As a direct and proximate result of Defendants' breaches, Plaintiffs have suffered, and will continue to suffer, substantial monetary damages.

172.     Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

173.     Plaintiffs' damages also include, but are not limited to, any portion of the attorneys' fees that may be apportioned to Defendant Goldstein Greco, P.C., on any cases that Defendants intentionally declined to sign up at Cellino Law for the purpose of signing those cases up at Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have resulted in recovery by Plaintiffs.

174.     Defendants' improper activities have also caused and will continue to cause irreparable harm to Plaintiffs by, among other things, causing them to lose and damaging client relationships that they spent substantial time and resources developing and by diminishing Plaintiffs' goodwill and reputation in the legal industry.

175.     Therefore, Plaintiffs seek judgment against Defendants for all damages caused by their breach of the duty of loyalty including (i) directing Defendants, any of their agents, representatives, affiliates, employees, and anyone acting in concert with them or under their control to return any of Plaintiffs' Confidential Information or property they possess; (ii) enjoining Defendants from using Plaintiffs' Confidential Information or property; and (iii) awarding judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

EIGHTH CAUSE OF ACTION
BREACH OF FIDUCIARY DUTIES
BY CELLINO LAW AGAINST ALL DEFENDANTS

176.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

177.    As an attorney with Plaintiffs, Defendants Goldstein and Greco owed a fiduciary duty to Plaintiffs Cellino Law and C&B.

178.    Defendants Goldstein and Greco breached said fiduciary duty to Plaintiffs by, among other things: (i) engaging in pre-resignation surreptitious solicitation and pirating of Plaintiffs' clients for personal gain; (ii) misappropriating Plaintiffs' assets, including its time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) misrepresenting to Plaintiffs' shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Plaintiffs on short notice and taking the client files; (vi) failing to maintain and spoliating Plaintiffs' records in the process; (vii) absconding with Plaintiffs' Confidential Information, as well as using that Confidential Information in competition with and to the detriment of Plaintiffs; (viii) engaging in self-interested transactions to the injury of Plaintiffs; (ix) failing to advance the interest of Plaintiffs while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from Plaintiffs' employ; (x) mismanaging Plaintiffs' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from Plaintiffs' employ as well as their solicitation and pirating of clients.

179.    Defendants' breach of their fiduciary duties to Plaintiffs caused the Plaintiffs to be injured, including, but not limited to monetary damages as well as equitable relief.

- 31 -

180.    Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

181.    Plaintiffs' damages also include, but are not limited to, any portion of the attorneys' fees that may be apportioned to Defendant Goldstein Greco, P.C., on any cases that Defendants intentionally declined to sign up at Cellino Law for the purpose of signing those cases up at Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have resulted in recovery by Plaintiffs.

182.    Therefore, Plaintiffs seek judgment against Defendants for all damages caused by their breach of their fiduciary duties including (i) directing Defendants, any of their agents, representatives, affiliates, employees, and anyone acting in concert with them or under their control to return any of Plaintiffs' Confidential Information or property they possess; (ii) enjoining Defendants from using Plaintiffs' Confidential Information or property; and (iii) awarding judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

<u>NINTH CAUSE OF ACTION</u>
TORTIOUS INTERFERENCE WITH CONTRACT
BY CELLINO LAW AGAINST ALL DEFENDANTS

183.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

184.    Cellino Law has had and continues to have contracts with various legal clients throughout New York and the United States.

185.    In many instances, these contracts first arose between C&B and the client; however, C&B and Cellino Law entered into an agreement whereby Cellino Law would have the right to pursue and seek to enter into contracts with certain of C&B's clients.

186.    Cellino Law did, in fact, enter into contracts with certain of C&B's clients as well as certain of its own clients.

187.    Defendants had knowledge of the contracts Cellino Law entered into with its and C&B's clients.

188.    Defendants, having been employed by C&B and Cellino Law, were made aware of these contracts as a result of both their confidential status and relationship with Plaintiffs and their unique involvement in the disputes that arose during the Dissolution Proceeding.

189.    Defendants solicited various clients to breach their contract with Cellino Law so that Defendants could obtain the clients' legal work for Defendants' own personal gain.

190.    Defendants intentionally interfered with the contracts between Cellino Law and its clients.

191.    As a direct and proximate result of Defendants' tortious interference with contract, Cellino Law has suffered and will continue to suffer substantial monetary damages.

192.    Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

193.    Accordingly, Plaintiff Cellino Law is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

Case 3.16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 35 of 121

TENTH CAUSE OF ACTION
TORTIOUS INTERFERENCE WITH CONTRACT
BY C&B AGAINST ALL DEFENDANTS

194.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

195.    C&B and Cellino Law entered into a contract to ensure the continued representation of legal clients in the aftermath of the Dissolution Proceeding in an effective and ethical fashion and to ensure the best overall result on behalf of the clients.

196.    Since these contracts first arose between C&B and the client, C&B and Cellino Law entered into an agreement whereby Cellino Law would have the right to pursue and seek to enter into contracts with certain of C&B's clients.

197.    The contract entered into between C&B and Cellino Law provided inherent benefit to C&B, both in terms of monetary value and assurances of proper handling of clients' matters.

198.    Defendants had knowledge of the contract entered between C&B and Cellino Law, including the terms, details, and specifications set forth therein.

199.    Defendants, having been employed by C&B and Cellino Law, were made aware of these contracts as a result of both their confidential status and relationship with Plaintiffs and their unique involvement in the disputes that arose during the Dissolution Proceeding.

200.    Defendants engaged in tortious conduct, including, but not limited to, (i) soliciting various clients to terminate their relationship with Cellino Law, (ii) breaching Defendants' own contracts with Cellino Law, and (iii) misrepresenting information and facts to various clients so that Defendants could obtain the clients' legal work for Defendants' own personal gain.

201.    Defendants intentionally interfered with the contract between C&B and Cellino Law.

- 34 -

202.   As a direct and proximate result of Defendants' tortious interference with contract, C&B has suffered and will continue to suffer substantial monetary damages.

203.   Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

204.   Accordingly, Plaintiff C&B is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

ELEVENTH CAUSE OF ACTION
UNFAIR COMPETITION AND MISAPPROPRIATION
BY PLAINTIFFS AGAINST ALL DEFENDANTS

205.   Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

206.   Defendants converted Plaintiffs' Confidential Information and property unlawfully and without authorization while employed at Cellino Law.

207.   Defendants have retained that Confidential Information and property after their employment was terminated and in their business operations of Goldstein & Greco P.C.

208.   Defendants interfered with Plaintiffs' right to their Confidential Information and property.

209.   Moreover, Defendants misappropriated the fruits of Plaintiffs' labors, skills, and expenditures through deceptive acts and/or abuse of Defendants' fiduciary and confidential relationship with Plaintiffs by obtaining and using Plaintiffs' Confidential Information and property that was developed over the course of many years.

210.    Defendants obtained Plaintiffs' Confidential Information and property by
exploiting the confidential, trusting, and loyal relationship with Plaintiffs while Defendants
Goldstein and Greco were employees, agents, and representatives of Plaintiffs, and when such
information was provided to Defendants in confidence pursuant to that confidential relationship.

211.    As a direct result of Defendants' actions, Plaintiffs have suffered, and will continue
to suffer, damage to their business, in an amount to be determined at trial, including consequential
damages, harm to their reputation and goodwill, costs, expenses, and other losses. This irreparable
injury includes, but is not limited to, irreversible disruption of attorney-client relationships

212.    Defendants' pre-resignation surreptitious solicitation and pirating of Plaintiffs'
clients, along with all conduct engaged in to effectuate the same, constitutes a deceptive act or
practice in the conduct of Defendants' business, trade, or commerce and in the furnishing of
services to consumers and therefore a violation of New York Law.

213.    Likewise, Defendants' pre-resignation surreptitious solicitation and pirating of
Plaintiffs' potential clients, along with all conduct engaged in to effectuate the same, constitutes a
deceptive act or practice in the conduct of Defendants' business, trade, or commerce and in the
furnishing of services to consumers and therefore a violation of New York Law.

214.    Upon information and belief, Defendants' acts were done with knowledge of this
violation of law and were done in bad faith.

215.    It would be unjust and inequitable for Defendants to retain the benefit of such
misappropriation and unfair competition without making restitution to Plaintiffs.

216.    Therefore, Plaintiffs seek judgment against Defendants for all damages caused by
their unfair competition and misappropriation including (i) directing Defendants, any of their
agents, representatives, affiliates, employees, and anyone acting in concert with them or under

their control to return any of Plaintiffs' Confidential Information or property they possess; (ii) enjoining Defendants from using Plaintiffs' Confidential Information or property; and (iii) awarding judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

TWELFTH CAUSE OF ACTION
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP
BY CELLINO LAW AGAINST ALL DEFENDANTS

217.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

218.    Cellino Law has had and continues to have business relationships with various legal clients throughout New York and the United States.

219.    In many instances, these business relationships first arose between C&B and the client; however, C&B and Cellino Law entered into an agreement whereby Cellino Law would have the right to assume certain of C&B's business relationships.

220.    Defendants, having been employed by C&B and Cellino Law were made aware of these business relationships as a result of both their confidential status and relationship with Plaintiffs and their unique involvement in the disputes that arose during the Dissolution Proceeding.

221.    Defendants misappropriated the information obtained in and through these confidential relationships with Plaintiffs and improperly solicited clients to terminate their business relationships with Cellino Law for Defendants' own personal gain.

222.    Defendants used confidential information, trade secrets, and proprietary business practices, learned exclusively from Plaintiffs and as a result of their confidential relationship with

Case 3.16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 39 of 121

Plaintiffs, to induce clients to terminate their business relationship with Cellino Law for Defendants' own personal gain.

223.    Defendants also used confidential information, trade secrets, and proprietary business practices, learned exclusively from Plaintiffs and as a result of their confidential relationship with Plaintiffs, to induce potential clients to forego a business relationship with Cellino Law for Defendants' own personal gain.

224.    Defendants used improper means that amount to independent torts to interfere with Cellino Law's aforementioned business relationships.

225.    Defendants' interference with Cellino Law's aforementioned business relationships was also conducted through means and methods that, at a minimum, misrepresented information to clients in order to induce them to terminate their business relationship with Cellino Law.

226.    Defendants' interference with Cellino Law's aforementioned business relationships caused injury to Plaintiffs, including to Cellino Law's relationship with those clients.

227.    Accordingly, Plaintiff Cellino Law is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

<u>THIRTEENTH CAUSE OF ACTION</u>
COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

228.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

229.    C&B owns valid and enforceable trademark rights in certain trademarks, including, but not limited to, "Cellino & Barnes" and "Cellino and Barnes" (the "C&B Marks") and enjoys common law rights in the State of New York and through the United States.

230.    Cellino Law owns valid and enforceable trademark rights in certain trademarks, including, but not limited to, "Cellino Law" and "Car Crash Call Cellino" trademarks (the "Cellino Marks") and enjoys common law rights in the State of New York and throughout the United States.

231.    The C&B Marks and Cellino Marks (collectively "Plaintiffs' Marks") are the result of extensive costs expended to advertise and create public recognition in the trademarks.

232.    Plaintiffs' Marks are inherently distinctive as it pertains to legal services.

233.    Plaintiffs' Marks have also acquired distinctiveness and secondary meaning.

234.    Plaintiffs' Marks are famous as they relate to personal injury legal services—especially in Western New York.

235.    Defendants improperly, illicitly, and without authorization utilized Plaintiffs' Marks in soliciting clients, including, without limitation, Plaintiffs' existing clients.

236.    This illicit solicitation occurred, at a minimum, in Defendants' Pre-Resignation Solicitation.

237.    Plaintiffs' Marks were used in commerce in connection with personal injury legal services, and Defendants' use of Plaintiffs' Marks is likely to cause confusion, mistake, or an association in the minds of the public and prospective clients.

238.    Defendants' use of Plaintiffs' Marks in commerce in connection with personal injury legal services is likely to lead the public and prospective clients to believe that Defendants' services are those of Plaintiffs or are endorsed, sponsored, or otherwise affiliated or connected with Plaintiffs.

239.    Defendants' activities as stated herein constitute unfair competition and trademark infringement of Plaintiffs' common law trademark rights in Plaintiffs' Marks.

240.     Plaintiffs each have the exclusive right to use their respective Plaintiffs' Marks in commerce in connection with legal services, including, without limitation, personal injury legal services and related services.

241.     Upon information and belief, actual confusion exists on behalf of clients as a result of Defendants' marketing and use of Plaintiffs' Marks in Defendants' solicitations.

242.     Defendants, without Plaintiffs' consent, used, and upon information and belief, will use and intend to continue to use Plaintiffs' Marks in connection with the sale, offering for sale, distribution, solicitation, and/or advertising of identical legal services, which is likely to cause confusion or mistake or otherwise deceive consumers in violation of New York law.

243.     Upon information and belief, Defendants' acts were done with knowledge of their violation of law and were done in bad faith.

244.     As a result of Defendants' infringement, Plaintiffs suffered and will continue to suffer damages, including lost sales, profits, and goodwill.

245.     Defendants' unauthorized use of Plaintiffs' Marks caused irreparable injury to Plaintiffs' reputation and goodwill. Upon information and belief, unless restrained and enjoined, Defendants will continue to infringe on Plaintiffs' rights and Plaintiffs lack a remedy at law adequate to redress the harm Defendants have caused and will continue to cause until their conduct is restrained.

246.     Defendants' actions are willful, intentional and constitute an exceptional case.

247.     Accordingly, Plaintiffs are entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

Case 3.16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 42 of 121

### FOURTEENTH CAUSE OF ACTION
### USE OF NAME WITH INTENT TO DECEIVE UNDER N.Y. GEN. BUS. LAW § 133
### BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

248.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

249.    Defendants, with intent to deceive or mislead the public, have used for advertising, soliciting, and trade purposes, Plaintiffs' names, or simulation or part thereof, which may deceive or mislead the public as to the identity of the persons comprising of Defendants and their association with Plaintiffs.

250.    Accordingly, Plaintiffs are entitled to judgment against Defendants in an amount to be determined at trial, plus interest and costs, and if Defendants' conduct is allowed to continue and is not enjoined, Plaintiffs and their goodwill and reputation will continue to suffer immediate, substantial, ongoing, and irreparable injury that cannot be adequately calculated and compensated in monetary damages.

### FIFTEENTH CAUSE OF ACTION
### UNFAIR BUSINESS PRACTICES UNDER N.Y. GEN. BUS. LAW § 349
### BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

251.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

252.    Defendants' use of Plaintiffs' Marks to promote, market, solicit, or sell services, including, upon information and belief, via written correspondence, constitutes a deceptive act or practice in the conduct of Defendants' business, trade, or commerce and in the furnishing of services to consumers and is therefore a violation of N.Y. Gen. Bus. Law § 349.

Case 3:16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 43 of 121

253.    Defendants, through their unlawful conduct, have caused a likelihood of confusion as to the source, sponsorship, affiliation, connection, association, or approval of Plaintiffs by or with Defendants and their conduct and/or representation.

254.    Plaintiffs have been damaged by Defendants' acts complained of in an amount to be determined at trial, and if Defendants' conduct is allowed to continue, Plaintiffs and their goodwill and reputation will continue to suffer immediate, substantial, and irreparable injury that cannot be adequately calculated and compensated in monetary damages.

255.    Defendants' materially misleading practice of using Plaintiffs' Marks to identify services provided by Defendants is likely to cause the consuming public at large to be misled as to the true source, sponsorship, affiliation, or approval of the services offered by Defendants and is likely to deceive the public and/or cause confusion or mistake to consumers.

256.    Plaintiffs are entitled to judgment against Defendants in an amount to be proven at trial, plus interests and costs, and injunctive relief prohibiting Defendants from using Plaintiffs' Marks or any other trade name, trademark, service mark or domain name that is identical or substantially similar to Plaintiffs' Marks, a mark that is otherwise likely to be confused with Plaintiffs' Marks or otherwise unfairly competing with Plaintiffs. Without preliminary and permanent injunctive relief, Plaintiffs have no means by which to control the continuing injury to the reputation and goodwill associated with Plaintiffs Marks. No amount of money damages can adequately compensate Plaintiffs if they suffer damage to their reputations and associated goodwill through the false and unauthorized use by Defendants of Plaintiffs' Marks.

## SIXTEENTH CAUSE OF ACTION
UNJUST ENRICHMENT
BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

257.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

258.    Defendants engaged in unjust and inequitable conduct whereby Defendants have been enriched to the detriment of Plaintiffs.

259.    Defendants have been enriched under circumstances which were unjust and inequitable.

260.    It would be unjust and inequitable for Defendants to retain the benefit of such enrichment without making restitution to Plaintiffs.

261.    Defendants' unjust enrichment includes, but is not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

262.    Defendants' unjust enrichment also includes, but is not limited to, any portion of the attorneys' fees that may be apportioned to Defendant Goldstein Greco, P.C., on any cases that Defendants intentionally declined to sign up at Cellino Law for the purpose of signing those cases up at Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have resulted in recovery by Plaintiffs.

263.    Accordingly, Plaintiffs are entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

<u>SEVENTEENTH CAUSE OF ACTION</u>
BREACH OF THE DEMAND NOTE
BY CELLINO LAW AGAINST DEFENDANT GOLDSTEIN

264.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

265.    The Demand Note is a valid, binding, and enforceable contract between Cellino Law and Defendant Goldstein, satisfying the elements of offer, acceptance, consideration, mutual assent, and intent to be bound, under which Cellino Law materially performed its obligations.

266.    Pursuant to the Note, Defendant Goldstein agreed to repay to Cellino Law the principal sum of $300,000 and interest on the unpaid portion of the principal sum on demand by Cellino Law.

267.    Defendant Goldstein breached the Note by failing to pay the outstanding balance due on the Loan after his resignation from Cellino Law.

268.    As a result of the foregoing breach of contract, Cellino Law is entitled to damages, in an amount to be proven at trial, but no less than the outstanding balance of $200,000, plus interest, attorney's fees, costs, and disbursements.

<u>EIGHTEENTH CAUSE OF ACTION</u>
BREACH OF THE CELLINO LAW EMPLOYMENT AGREEMENT
BY CELLINO LAW AGAINST DEFENDANT GOLDSTEIN

269.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

270.    The Employment Agreement is a valid, binding, and enforceable contract between Cellino Law and Defendant Goldstein, satisfying the elements of offer, acceptance, consideration, mutual assent, and intent to be bound, under which Cellino Law materially performed its obligations.

271.     Pursuant to the Employment Agreement, Defendant Goldstein agreed to pay Cellino Law any outstanding balance due on the Loan within 30 (thirty) days of his resignation from Cellino Law or the termination of his employment with Cellino Law.

272.     Defendant Goldstein breached the Employment Agreement by failing to pay the outstanding balance due on the Loan after his resignation from Cellino Law.

273.     As a result of the foregoing breach of contract, Cellino Law is entitled to damages, in an amount to be proven at trial, but no less than the outstanding balance of $200,000, plus interest, attorney's fees, costs, and disbursements.

<u>NINETEENTH CAUSE OF ACTION</u>
UNJUST ENRICHMENT
BY CELLINO LAW AGAINST DEFENDANT GOLDSTEIN

274.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

275.     The Loan constitutes a benefit conferred upon Defendant Goldstein by Cellino Law.

276.     Defendant Goldstein realized this benefit by accepting the Loan.

277.     By failing to repay the outstanding balance due on the Loan upon his resignation from Cellino Law or the termination of his employment with Cellino Law, Defendant Goldstein has retained the benefit of the Loan at Cellino Law's expense, and without just compensation to Cellino Law.

278.     As a result of the foregoing, Defendant Goldstein has been enriched at Cellino Law's expense, and it would be unjust and inequitable to permit Defendant Goldstein to retain the benefit of the Loan without repayment.

279.     As a result of Defendant Goldstein's unjust enrichment, Cellino Law is entitled to damages in an amount to be proven at trial, but no less than the outstanding principal balance of $200,000, plus interest, attorney's fees, costs, and disbursements.

## CONCLUSION

WHEREFORE, Plaintiffs Cellino Law LLP and Cellino & Barnes, P.C., demand judgment against Defendants Goldstein Greco, P.C., Brian Goldstein, Esq., and Alexander Greco, Esq., following a judicial (non-jury) hearing to be held, as follows:

(1)     On the First Cause of Action, judgment declaring and establishing a valid and enforceable charging lien for both C&B and Cellino Law, in accordance with Judiciary Law § 475: (i) for the full $137,500.00 attorneys' fees recovered in the Winans Matter; or (ii) in the alternative, an amount of $11,671.92 for disbursements plus an amount to be apportioned quantum meruit to each Plaintiff for past and current attorneys' fees due and owing for the Winans Matter;

(2)     On the Second Cause of Action, judgment declaring and establishing a valid and enforceable charging lien for both C&B and Cellino Law, in accordance with Judiciary Law § 475: (i) for the SC-Disbursements and (ii) an amount to be apportioned quantum meruit to each Plaintiff for past and current attorneys' fees due and owing for each Solicited Case, to be determined upon the resolution of each case

(3)     On the Third Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(4)     On the Fourth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(5)     On the Fifth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(6)     On the Sixth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(7)     On the Seventh Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(8)     On the Eighth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(9)     On the Ninth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(10)    On the Tenth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(11)    On the Eleventh Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(12)    On the Twelfth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(13)    On the Thirteenth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(14)    On the Fourteenth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(15)    On the Fifteenth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(16)    On the Sixteenth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(17)    On the Seventeenth Cause of Action, judgment against Defendant Goldstein in an amount to be proven at trial but in no event less than $200,000.00, plus interest, attorney's fees, costs, and disbursements;

(18)    On the Eighteenth Cause of Action, judgment against Defendant Goldstein in an amount to be proven at trial but in

no event less than $200,000.00, plus interest, attorney's fees, costs, and disbursements;

(19)     On the Nineteenth Cause of Action, judgment against Defendant Goldstein in an amount to be proven at trial but in no event less than $200,000.00, plus interest, attorney's fees, costs, and disbursements; and

(20)     The costs and disbursements associated with this action together with all such other and further relief as this Court finds just and proper.


Dated:     Buffalo, New York
           June 28, 2023

                              DUKE HOLZMAN PHOTIADIS & GRESENS LLP

                     By:      s/ *Christopher M. Berloth*
                              Christopher M. Berloth
                              *Attorneys for Plaintiff*
                              *Cellino & Barnes, P.C.*
                              701 Seneca Street, Suite 750
                              Buffalo, New York 14210
                              Tel: (716) 855-1111
                              cberloth@dhpglaw.com


                              HODGSON RUSS LLP

                              Julia Hilliker
                              *Attorneys for Plaintiff*
                              *Cellino Law LLP*
                              140 Pearl St. #100
                              Buffalo, New York 14202
                              Tel: (716) 848-1547
                              jhillike@hodgsonruss.com

# EXHIBIT 1

## EMPLOYMENT AND SEPARATION AGREEMENT

**DATE:**　　　　September 27, 2012

**PARTIES:**　　CELLINO & BARNES, P.C., a New York Professional Corporation with its principal place of business at 2500 Main Place Tower, 350 Main Street, Buffalo, New York, its successors, heirs and/or assigns ("Employer") and BRIAN A. GOLDSTEIN, his/her successors, heirs and/or assigns ("Employee").

## RECITALS

**WHEREAS,** Employer is a law firm primarily engaged in the representation of personal injury plaintiffs; and

**WHEREAS,** the overwhelming majority of Employer's personal injury clients are obtained by marketing, advertising and otherwise by Employer expending "case acquisition costs," as hereafter defined; and

**WHEREAS,** Employer and Employee would like to enter into an employment relationship wherein, rather than a traditional salary-only arrangement, Employee's wages and compensation are based on (i) salary and (ii) incentive compensation in addition to salary and/or other advances, which incentive compensation will be calculated as a percentage of the net attorney's fees received by Employer on Employer's cases, assigned by Employer to Employee and thereafter successfully resolved by Employee, all as herein defined; and

**WHEREAS,** all the terms of this Employment Agreement are intended to be binding as of the date hereof, and shall be applicable to all cases/files on which Employee will be assigned.

 Initials

SEB Initials

INDEX NO. 804192/2023
RECEIVED NYSCEF: 06/28/2023

Case 3.16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 52 of 121

**NOW, THEREFORE,** in consideration of Employee's employment with Employer, the benefits to Employee resulting from Employer's expenditure of "case acquisition costs," as hereafter defined, Employer's employment of Employee and assignment of Employer's cases to Employee hereunder, the wages and compensation arrangement set forth herein, additional compensation/benefits hereunder, the covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each of the parties hereto, it is agreed as follows:

<u>**ACKNOWLEDGMENTS AND AGREEMENTS**</u>

1.   <u>**EMPLOYER CLIENT AND CASE ACQUISITION COSTS**</u>

Employee recognizes acknowledges, and agrees that:

A.   Employer has expended substantial amounts of time, experience, expertise, money and other expenditures for marketing and advertising to solicit and obtain clients and referrals of clients of Employer (the "case acquisition costs"). Employee also acknowledges that but for the expenditure by Employer of the case acquisition costs it is unlikely that Employer will have been, or will be, able to generate the volume and/or quality of its clients and cases, including but not limited to the clients and cases assigned by Employer to Employee hereunder.   Employee further recognizes, acknowledges, and agrees that but for Employer's expending substantial monies on case acquisition costs, neither Employer nor Employee would have been introduced to the clients, and there would be no cases available for Employer to assign to Employee to work on to earn the wages and compensation hereunder.

2

 Initials

SEB Initials

     B.     A current list of Employer's total case acquisition costs, other expenses, and percentages is attached hereto and incorporated herein as Exhibit "A".  The parties agree that Employee has been given ample opportunity to review and analyze Exhibit "A" prior to executing this agreement.  By executing this agreement, Employee agrees that he or she has waived any objection to the contents and validity of Exhibit "A" as it exists at the time of execution and also agrees not to contest such contents or validity in any action, proceeding, or otherwise.  Employer will review Exhibit "A" at least once each calendar year to confirm the accuracy of the information it contains and will make any adjustments to ensure its accuracy.  Any such adjustments will be made on or about April 30 of each year.  Employee shall have reasonable access to Exhibit "A" for purposes of further review upon request made to Employer.  Should Employee question the accuracy of any adjustments to Exhibit "A" made by Employer in any particular year, Employee shall advise the President of Employer of such issue in writing no later than May 15 of that year, in which case Employer and Employee will seek to resolve such issue.  If no such notice is provided by May 15 of that year, Employee will be deemed to have waived any objection to the adjustments and specifically agrees not to contest such adjustments in any action, proceeding or otherwise.  The parties further agree that for Employer firm confidentiality reasons, Exhibit "A" and any copies thereof shall be maintained only by Employer at Employer's principal place of business and that Employee shall not copy or remove same from such premises.  Employee further agrees that the information in Exhibit "A" includes trade secrets and material otherwise confidential and proprietary in nature and further agrees not to disclose the contents of

Initials

SEB Initials

Exhibit "A" to any third party.

C.     Employer's continuing success in soliciting and obtaining clients and cases and referrals of clients and cases, and Employer's continued ability to assign clients and cases to Employee hereunder, will, in large part, depend on Employer continuing to expend these substantial case acquisition costs.

D.     Employee's ability to obtain the case and client assignments hereunder, and to obtain the compensation available hereunder, is dependent on Employer's obtaining clients through the expenditure of monies for case acquisition costs.

## 2.     EMPLOYMENT; DUTIES OF EMPLOYEE

Employer hereby employs Employee as an attorney.  Employee's duties shall include, but shall not be limited to:

A.     Rendering professional legal services on behalf of Employer to Employer's clients and performing such other services as are assigned by Employer to Employee.

B.     Keeping and maintaining (or causing to be kept and maintained) appropriate, necessary and required files and records relating to all cases and clients assigned by Employer to Employee and all professional legal services rendered by Employee to Employer's clients, all of which files and records shall belong to Employer.

C.     Devoting Employee's best efforts to promote the interests of Employer, including doing Employee's utmost to promote Employer's relationships with clients and referring counsel.

D.     Devoting all of Employee's professional time and endeavors to his or her professional services to Employer hereunder, and in no way engaging, directly or

4

_____ Initials

SEB _____ Initials

indirectly, alone or as a member of a partnership, or as an officer, director, stockholder, employee, agent or other representative of any other corporation or entity, in any other commercial or professional duties, responsibilities or pursuits, which are or may be in competition with Employer's services or which could interfere with the performance of Employee's duties hereunder.

E.     Acting in all ways in accordance with Employee's duty of loyalty and/or all other duties owed by Employee to Employer, such duties to include Employee's obligation to refrain from engaging in legal work other than legal work assigned by Employer without the express, written consent of Employer.

F.     Performance of all things reasonable and desirable to maintain and improve Employee's professional skills.

G.     Sending an e-mail to Employer's Managing Attorney, no later than the 7th day of each month, that provides an accurate list of Employee's cases approaching the Statute of Limitations, and in the form prescribed by Employer's policies.

H.     All other duties assigned by Employer to Employee.

3.     **TERM; AT WILL EMPLOYEE; COMPENSATION**

A.     Term and at Will Employment.   The employment relationship between Employer and Employee shall continue until terminated by either party pursuant to ¶7. In particular, Employee acknowledges and agrees that Employee is an at-will employee of Employer, whose employment with Employer may be terminated by Employer at any time, with or without cause, and with or without advance or written notice.

B.     Compensation.   Employee's compensation and wages pursuant to this

Initials

SEB   Initials

Employment Agreement shall consist of salary pursuant to ¶ 4 below and (ii) Net Incentive Compensation **in addition to salary**, pursuant to ¶ 5 below. Employee specifically agrees that the calculation of Net Incentive Compensation due hereunder (i) does not violate §193 of the NYS Labor Law and, does not constitute a deduction from wages. Employee further agrees that, the calculation of Net Incentive Compensation due to Employee hereunder is specifically hereby authorized by Employee, whether pursuant to Labor Law §193(1)(b) or otherwise. Employee further agrees that as a bona fide professional employee whose earnings are in excess of $900/per week, he or she is exempt from provisions of the Labor Law.

## 4. <u>SALARY</u>

Employee shall receive $200,000 per year in salary, which shall be paid in weekly installments.

## 5. <u>NET INCENTIVE COMPENSATION AND RELATED ACKNOWLEDGMENTS AND AGREEMENTS</u>

A. Subject to ¶5(D) below, Employee is eligible to receive "Net Incentive Compensation", as hereafter defined, for each case assigned to Employee by Employer and "successfully resolved" by Employee while an employee of Employer. A case shall be "successfully resolved" **on the latest** event of: (i) when, a settlement having been reached (whether before or after verdict), Employer's client(s) sign(s) a release of the defendant(s), or (ii) when, a judgment having been entered against defendant(s), all appeals are exhausted **and**, in the instances of both ¶5(A)(i) and (ii), Employer actually

 Initials

SEB Initials

receives the fees to which it is entitled pursuant to its retainer agreement with its client(s), or (iii) where the settlement of a case requires court approval by law, the date on which the court's order of approval is filed. A case resolved in accordance with ¶¶5 (i), (ii) or (iii) will hereafter be referred to as a "resolved case." Employee is not entitled to any Net or other Incentive Compensation for any case not actually assigned to Employee by Employer or for any case which becomes a resolved case after Employee's termination date, as defined herein, even if the case was assigned to Employee while an employee of Employer. Employee shall not be entitled to assert any lien, and specifically hereby waives any and all rights, if any, to assert any lien, based upon *quantum meruit* or otherwise, on any case on which Employee performed work for Employer and the contractual provisions hereof shall be Employee's sole rights. Employee acknowledges that all work performed by him or her as Employee on any case/file is attributable, for fee allocation purposes, to Employer as the retained attorney and/or attorney of record and that Employee is not entitled to any credit or lien for same. The parties agree that nothing contained in this Agreement shall be deemed to restrict Employee's right to practice law or otherwise implicate DR 2-108 upon the termination of Employee's employment.

B.      To determine the amount of "Net Incentive Compensation", all or a portion of which Employee may be eligible to receive hereunder, Employee's "Gross Incentive Compensation" figure must first be calculated for each resolved case. The "Gross Incentive Compensation" for Employee on a resolved case shall be calculated by multiplying (i) ten percent (10%) by (ii) the "Net Legal Fee" received by Employer on a



Initials

SEB

Initials

resolved case. "Net Legal Fee", as used herein, shall mean the total legal fees (NOT reimbursement of disbursements, if any) actually received by Employer on a resolved case, reduced by the amount of referral fees to referring counsel, if any. Disbursements reimbursed to Employer shall not constitute either Net Legal Fees or any part of Gross Incentive Compensation received by Employer. Gross Incentive Compensation shall be calculated monthly for all resolved cases assigned to and resolved by Employee during the immediately preceding calendar month.

C.      An Employee's "Net Incentive Compensation" hereunder for a given month shall equal (i) Employee's Gross Incentive Compensation for that month and for all prior months after the last month for which Employee's Net Incentive Compensation was calculated (and paid, if applicable) (the "prior months"), (ii) plus the Employee's monthly salary. Examples showing the calculation of Gross Incentive Compensation and Net Incentive Compensation are as follows:

## Gross Incentive Compensation for a resolved case in January

| | |
|---|---|
| Total resolved case recovery | $310,000.00 |
| Disbursements | $10,000.00 |
| Total Recovery subject to attorney fees pursuant to retainer (Assuming no referral fees) | $300,000.00 |
| Net Legal Fee received by Employer | $100,000.00 |
| Employee's Gross Incentive Compensation (10% of Net Legal Fee): | $ 10,000.00 |

D.      Notwithstanding anything to the contrary in this agreement, Employee

8

 Initials

SEB Initials

shall not have earned "Net Incentive Compensation", and no "Net Incentive Compensation" shall have vested in respect to Employee, for any month unless and until Employee is current with the e-mail requirement described in ¶2(G) *supra*.

E.      Employee and Employer acknowledge and agree that, to the best of their knowledge, Employer's compensation system is unique in New York State, and that Employee's opportunity to participate in Employer's compensation system arises as a result of Employer's expending case acquisition costs and Employer's assigning some of the resulting cases and clients to Employee hereunder.

F.      Employer believes that this Net Incentive Compensation arrangement will provide Employee with greater incentive for the timely and zealous representation of Employer's clients that would exist in a traditional salary-only arrangement.

G.      Employee believes that this Net Incentive Compensation arrangement will provide Employee with greater control over Employee's financial success and will, in all likelihood, allow Employee to earn more money than under a traditional salary-only arrangement.

H.      Employer acknowledges and agrees that Employee is not making a commitment to work until retirement for Employer and that Employer's clients have the right to follow Employee in the event Employee's employment hereunder is terminated by either party.

I.      Employee acknowledges and agrees both (i) that the Net Incentive Compensation hereunder would not be offered or available to Employee if Employee did not acknowledge and contractually agree to the provisions hereof, especially the

9

 Initials

SEB Initials

Case 3:16-md-02741-VC Document 17115-6 Filed 08/11/23 Page 60 of 121

provisions of ¶8 and the fee allocation provisions of ¶9, and (ii) that the availability and/or payment of the Net Incentive Compensation, when and if earned and vested, is separate and additional consideration in exchange for Employee's agreement to the provisions of ¶¶ 8 and 9 hereof.

J.     Employee acknowledges and agrees both (i) that Employer would not assign cases to Employee under the above-stated Net Incentive Compensation arrangement if Employee did not acknowledge and contractually agree to the provisions hereof, especially the provisions of ¶8 and the fee allocation provisions of ¶9, and (ii) that the assignment of such case(s) and client(s) and the availability and payment of the Net Incentive Compensation, when and if earned and vested, is separate and additional consideration for said ¶¶ 8 and 9 hereof.

## 6.     BUSINESS & OTHER EXPENSES; MALPRACTICE

A.     <u>Employer Expenses and Malpractice</u>.  Employer shall be responsible for rent, secretarial, office supplies and malpractice insurance premiums. In the event of potential or actual attorney malpractice, and in the further event that the underlying claimed malpractice is attributable to Employee's actions or failure to act, Employee agrees that Employee will be personally responsible for paying the deductible amount on each such claim. Currently, Employer's malpractice policy carries a $25,000 deductible, which deductible is subject to change in Employer's sole discretion. At the time that the malpractice claim is reported to the carrier, Employee agrees to place in escrow the applicable deductible amount, and Employee consents to Employer's use of those escrowed monies to pay claims and/or defense costs.

10

 Initials

SEB  Initials

Case 3.16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 61 of 121

      B.      <u>Employee Expenses</u>.  All other expenses, including, but not limited to, medical insurance, continuing legal education, Bar Association and other dues, fees, costs and licensing fees shall be the sole responsibility of Employee.

**7.**     <u>**TERMINATION OF EMPLOYMENT**</u>

Employer may terminate Employee's employment with Employer at any time, with or without cause, and with or without advance or written notice.  Employee may terminate his or her employment with Employer on fifteen (15) days prior written notice (the "notice period") personally delivered to the President of Employer.  The "termination date" of Employee's employment for all purposes hereunder shall be the earliest of (i) 11:59 p.m. on the date on which Employer terminates Employee, or (ii) 11:59 p.m. on the last day of the notice period following Employee's termination of his or her employment, unless Employee's employment is earlier terminated by Employer after receiving Employee's notice, in which case it will be 11:59 p.m. on the date on which Employer so terminates Employee.  No notice by Employee to terminate his or her employment shall be effective until said notice is actually received by President of Employer and for all purposes hereunder, unless earlier terminated by Employer, Employee shall remain an Employee until the termination date as set forth above, after receipt of the notice.  Employee shall continue to be employed by Employer until the termination date.

**8.**     <u>**OBLIGATIONS OF EMPLOYEE**</u>

      A.      While employed by Employer, Employee shall not, directly or indirectly, (i) contact any client(s) of Employer, or (ii) contact any prospective client(s) of Employer,

11

 Initials

SEB Initials

or (iii) take any other action, for the purpose of attempting to obtain or obtaining any such client or prospective client of Employer as a future client of Employee or as a client of any other lawyer or law firm. Employee acknowledges that any such contact or action would constitute a breach of Employee's duty of loyalty, and/or his or her other duties and obligations owed by Employee to Employer hereunder and/or pursuant to law, and that it would cause losses, damages and harm to Employer.

B.     Employee agrees to refer potential personal injury clients to Employer, and to refrain from referring any client of Employer, or any prospective client of Employer, to another lawyer or law firm, except in the instance of a conflict of interest or other reason of professional ethics, and then only with the prior written consent of the President of Employer.  In the event that Employee believes it is necessary to refer any such client or prospective client to another lawyer or law firm, Employee shall so notify the President of Employer in writing at least 5 business days before any such referral is made.   Employee acknowledges and agrees that failure to comply with these agreements would constitute a breach of Employee's duty of loyalty, and/or his or her other duties and obligations owed by Employee to Employer hereunder and/or pursuant to law, and that such failure would cause losses, damages and harm to Employer.

C.     Employee and Employer acknowledge and agree that in connection with any withdrawal by Employee from his or her employment with Employer, reasonable measures should be taken to assure that the withdrawal is accomplished without material adverse effect on the interests of Employer's clients on whose matters Employee actively may be working.  Employee and Employer agree that if Employee

12

_____ Initials

SEB Initials

decides to withdraw from employment, all such clients will be notified of Employee's anticipated withdrawal as far in advance of the termination date as is practicable. Employee and Employer further agree that such notification will be made jointly by Employee and Employer and that this will be accomplished solely by way of the letter attached hereto as Exhibit "B." Employee and Employer agree to the verbiage of this letter and further agree to sign it and send it to the clients jointly. Copies of any such letters (with addresses redacted) will be provided to Employee at or about the time they are mailed. Employee agrees that the letter will be the sole means of notifying such clients about the withdrawal and that Employee remains bound by the provisions in paragraph 8(A) above until the termination date, whereupon the provisions in paragraph 8(E) below will apply. Nothing in this paragraph shall prevent Employee or Employer from providing truthful information in response to a communication initiated by a client who has received such a letter and discussing with the client whatever the client wishes to discuss. Employee and Employer agree that during any such discussion, Employer and Employee will clearly explain to the client that the client has the right to choose whether Employer, Employee, or some other lawyer or law firm will continue the representation.

D.   Employee and Employer agree that in the event Employer terminates Employee's employment, Employer will, no later than ten (10) business days after the termination date, send a letter, in the form attached hereto as Exhibit "C", to all clients of Employer on whose matters Employee actively was working immediately prior to the termination. Employee agrees to the verbiage of this letter. Copies of all such letters



Initials

SEB  Initials

Case 3:16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 64 of 121

(with addresses redacted) will be sent to Employee.

E.      Employee agrees that after his or her employment with Employer is terminated by either party, he or she shall not, directly or indirectly, initiate contact with any client of Employer, including but not limited to clients of Employer previously assigned to and served by Employee while employed by Employer, or directly or indirectly solicit such client in any way to reconsider or change his/her/their representation and/or to become a client of Employee or some other attorney or firm. Nothing in this paragraph shall prevent Employee from providing truthful information in response to a communication initiated by a client of Employer and discussing with the client whatever the client wishes to discuss.  Employee agrees that during any such discussion, Employee will clearly explain to the client that the client has the right to choose whether Employer, Employee, or some other lawyer or law firm will continue the representation.

Notwithstanding any other provision of this agreement to the contrary, Employee shall, in the event of the termination of his or her employment with Employer, have the right to send printed announcements concerning his or her new practice information to whomever he or she wishes, subject to his or her individual ethical obligations.

F.      Employee acknowledges that he or she has reviewed American Bar Association Formal Opinion 99-414 (1999) prior to executing this Agreement and agrees that the terms in this paragraph 8 are fully consistent with that opinion.

14



Initials

Initials

9.   **RIGHTS RELATIVE TO CLIENT FEES AND FILES UPON  TERMINATION OF EMPLOYMENT AND RELATED ACKNOWLEDGMENTS**

Upon the termination of Employee's employment with Employer and as of his or her termination date:

A.     Employee shall not be entitled to any severance pay, but shall be entitled to earned and vested Net Incentive Compensation in excess of salary for any resolved case that was so resolved prior to Employee's termination date.

B.     Employer shall be entitled to retain all client files for all cases assigned to Employee, unless a client of Employer requests, in writing addressed to Employer, that a different disposition be made of his or her file.   Employee agrees that, after Employee's  termination date, or immediately upon Employee's giving notice of his or her intent to terminate and before the expiration of the notice period, Employee (i) shall not, without the express prior written consent of Employer, remove from Employer's office any client contact information, client files, lists of clients, computer printouts, status reports, case evaluations or other confidential documents (except Employee's personal documents), and (ii) immediately shall return to Employer all client contact information, client files, lists of clients, computer printouts, status reports, case evaluations and other confidential information or documents (except Employee's personal documents) removed from Employer's office prior to his or her termination date or his or her giving notice and before the expiration of the notice period.  If a client of Employer requests in writing that his or her file be transferred to Employee, or any law firm where Employee is a partner, shareholder, member, employee, associate, counsel

15

 Initials

SEB  Initials

or with which Employee holds any other position ("Employee's new law firm"), Employer shall do so, subject to its lien on such file, as set forth herein and/or by law, and provided that disbursements are reimbursed immediately to Employer in accordance with ¶9(J) below.   Said disbursements must be paid in full before any files are transferred.

C.      Except as otherwise provided in this ¶9, if a client of Employer requests a transfer of his or her case and file to Employee or Employee's new law firm, then as to each such case and file:

(i)      Employee hereby agrees that Employer has a valid existing lien on such case file and the proceeds thereof, and that in satisfaction of Employer's lien on such case(s) and file(s), including the recognition of the case acquisition costs, and otherwise, (a) the "total combined legal fees" payable on the case (meaning the actual legal fees payable, after reimbursement of disbursements), shall be divided between Employer and Employee (and/or Employee's new law firm) as set forth below in ¶9(C)(iii), or, if applicable, ¶9(E), below, (b) neither Employee nor Employee's new law firm shall challenge, in any action, proceeding, or otherwise, the reasonableness, validity, or any component of or the division of such legal fees as set forth in said ¶9(C)(iii), or, if applicable, ¶9(E), below, (c) to the extent appropriate and necessary, such payments/division shall be intended and deemed to be in compliance with DR 2-107 or otherwise, and (d) such division and allocation of fees is fair and reasonable and reasonably reflects Employer's contribution to and work on the case/file.

(ii)      Employer shall notify the client that (a) his or her case is being transferred

16

 Initials

Initials

to Employee or Employee's new law firm and, (b) there will be a division of legal fees on the case between Employer and Employee (and/or Employee's new law firm) that is intended and deemed to be in compliance with DR 2-107 or otherwise.

(iii)    Employer and Employee agree to the following division of the "total combined legal fees" relating to the case, computed as of the date the settlement or the judgment in the case is final and paid:

a.    If, at the time the case was transferred from Employer, the case was not in suit, and fewer than twenty-four months had passed since the date of the subject incident/accident, the attorneys' fee shall be treated as follows:

(x)    Employer's case acquisition costs attributable to the case (which is agreed to be a percentage of the total combined legal fee equal to the percentage derived from dividing Employer's total case acquisition costs by Employer's total operating expenses exclusive of attorney bonuses [total case acquisition costs and total operating expenses exclusive of attorney bonuses are to be determined by reference to the version of Exhibit A on file with Employer on the date the client originally signed a retainer agreement with Employer]) shall be repaid to Employer;

(y)    Of the remaining fee, Employer shall receive 40% and Employee (and/or Employee's new law firm) shall receive 60%.

An example of the fee disposition under this subparagraph, assuming a case acquisition cost percentage of 43.56, is as follows:

| | |
|---|---|
| Total combined legal fee | $100,000.00 |
| Case acquisition costs to be repaid to Employer | 43,560.00 |



_____ Initials

_____ Initials

| Remaining Fee | 56,440.00 |
|---|---|
| Amount of remaining fee to be paid to Employer | 22,576.00 |
| Amount of remaining fee to be paid to Employee and/or Employee's new law firm | 33,864.00 |

¶9(C)(iii)(c), not ¶9(C)(iii)(a), shall apply for <u>all</u> cases where more than twenty-four months have passed since the date of the subject accident, whether or not the case is in suit at the time of transfer.

b.    If, at the time the case was transferred from Employer, the case was in suit, but no note of issue or other statement of trial readiness had yet been filed, <u>and</u> fewer than twenty-four months had passed since the date of the subject incident/accident, the attorneys' fee shall be treated as follows:

(x)    Employer's case acquisition costs attributable to the case (which is agreed to be a percentage of the total combined legal fee equal to the percentage derived from dividing Employer's total case acquisition costs by Employer's total operating expenses exclusive of attorney bonuses [total case acquisition costs and total operating expenses exclusive of attorney bonuses are to be determined by reference to the version of Exhibit A on file with Employer on the date the client originally signed a retainer agreement with Employer]) shall be repaid to Employer.

(y)    Of the remaining fee, Employer shall receive 60% and Employee (and/or Employee's new law firm) shall receive 40%.

An example of the fee disposition under this subparagraph, assuming a case acquisition cost percentage of 43.56, is as follows:

Total combined legal fee                                   $100,000.00

18

 Initials

SEB  Initials

| Case acquisition costs to be repaid to Employer | 43,560.00 |
| Remaining Fee | 56,440.00 |
| Amount of remaining fee to be paid to Employer | 33,864.00 |
| Amount of remaining fee to be paid to Employee and/or Employee's new law firm | 22,576.00 |

      c.     If, at the time the case was transferred from Employer, the case was in suit and a note of issue or other statement of trial readiness had been filed, or if more than twenty-four months had passed since the date of the subject incident/accident, the attorneys' fee shall be treated as follows:

      (x)     Employer's case acquisition costs attributable to the case (which is agreed to be a percentage of the total combined legal fee equal to the percentage derived from dividing Employer's total case acquisition costs by Employer's total operating expenses exclusive of attorney bonuses [total case acquisition costs and total operating expenses exclusive of attorney bonuses are to be determined by reference to the version of Exhibit A on file with Employer on the date the client originally signed a retainer agreement with Employer]) shall be repaid to Employer.

      (y)     Of the remaining fee, Employer shall receive 70% and Employee (and/or Employee's new law firm) shall receive 30%.

An example of the fee disposition under this subparagraph, assuming a case acquisition cost percentage of 43.56, is as follows:

| Total combined legal fee | $100,000.00 |
| Case acquisition costs to be repaid to Employer | 43,560.00 |
| Remaining Fee | 56,440.00 |
| Amount of remaining fee to be paid to Employer | 39,508.00 |
| Amount of remaining fee to be paid to Employee and/or Employee's new law firm | 16,932.00 |

 Initials

SEB Initials

D.      In the event that Employee violates any of the provisions of ¶8, then the provisions of ¶9(C)(iii) shall not apply.   Employee recognizes that the fee division provisions set forth in ¶9(C)(iii) shall apply only if Employee has not violated any of the provisions of ¶8.

E.      In the event that a client of Employer requests a transfer of his or her case and file to Employee or Employee's new law firm when or after Employee has violated any of the provisions of ¶8, the attorneys' fee shall be treated as follows:

(x)      Employer's case acquisition costs attributable to the case (which is agreed to be a percentage of the total combined legal fee equal to the percentage derived from dividing Employer's total case acquisition costs by Employer's total operating expenses exclusive of attorney bonuses [total case acquisition costs and total operating expenses exclusive of attorney bonuses are to be determined by reference to the version of Exhibit A on file with Employer on the date the client originally signed  a retainer agreement with Employer]) shall be repaid to Employer.

(y)      Of the remaining fee, Employer shall receive 80% and Employee (and/or Employee's new law firm) shall receive 20%.

An example of the fee disposition under this subparagraph, assuming a case acquisition cost percentage of 43.56, is as follows:

| | |
|---|---|
| Total combined legal fee | $100,000.00 |
| Case acquisition costs to be repaid to Employer | 43,560.00 |
| Remaining Fee | 56,440.00 |
| Amount of remaining fee to be paid to Employer | 45,152.00 |

20

_____ Initials

SEB   Initials

| | |
|---|---|
| Amount of remaining fee to be paid to Employee and/or Employee's new law firm | 11,288.00 |

Employee acknowledges and agrees that Employee shall not be entitled to violate any of the provisions of ¶8, and then receive the benefit of the provisions of ¶9(C)(iii).  The provisions of ¶9(C)(iii) shall apply **ONLY** in the event that a client of Employer requests a transfer of his or her case and file to Employee or Employee's new law firm AND where there has not been any violation of any of the provisions of ¶8.  Employee agrees that the reduction of fees to be paid to Employee and/or Employee's new law firm as set forth in this ¶9(E) relative to cases involving any violation of the provisions of ¶8 is as and for the actual damages suffered by Employer as of result of Employee's violation of the provisions of ¶8, and that such is fair and reasonable compensation for such actual damages and not a penalty.

F.       Employee acknowledges and agrees that the division of total combined legal fees set forth above in ¶9(C)(iii) (applicable only in cases where no violation of ¶8 has occurred), and ¶9(E) (applicable in cases where a violation of ¶8 has occurred), fairly compensates Employer for its reasonable value of services rendered, as *quantum meruit* and/or its proportionate share of the contingency fee, or otherwise, including, without limitation, the case acquisition costs for the case(s), which are agreed to have actual and real value.

G.       If, with respect to any case transferred to Employee or Employee's new law firm, any provision of this ¶9 is held to be invalid or unenforceable, Employer shall have the following claims/liens on such file and case:  Employee and/or Employee's

21

_____ Initials

SEB  Initials

new law firm agrees to repay to Employer Employer's case acquisition costs attributable to the case (which is agreed to be a percentage of the total combined legal fee equal to the percentage derived from dividing Employer's total case acquisition costs by Employer's total operating expenses exclusive of attorney bonuses [total case acquisition costs and total operating expenses exclusive of attorney bonuses are to be determined by reference to the version of Exhibit A on file with Employer on the date the client originally signed a retainer agreement with Employer]) and then of the remaining fee, Employer shall be entitled to a sum equal to **the greater of** (i) *a quantum meruit* claim, or (ii) a contingent percentage fee claim based on its proportionate share of the work performed by Employer on the case/file. For all purposes hereunder, all services performed or rendered by Employee while Employee was employed by Employer and until Employee termination date shall be deemed to be services performed or rendered by Employer.

H.      If the client in a case transferred to Employee or Employee's new law firm was a personal friend or family member of Employee when Employer commenced its representation of the client (a "friends and family case"), provided the case was so identified as a friends and family case at the time Employer commenced its representation of the client, Employer shall have only a contingent percentage fee based upon its proportionate share of the professional services rendered by Employer (including the value of the professional services rendered by Employee while an employee of Employer) prior to the transfer of the case to Employee or Employee's new law firm, compared to the whole of the professional services rendered during the entire

22

_____ Initials

SEB Initials

case.  The percentage of the total fee to be paid to Employer shall be determined at the conclusion of the case. Attached as Exhibit "D" is a list of all friends and family cases as of the date hereof, signed by Employer and Employee.  If there is no signed Exhibit "D," there shall be a conclusive and unrebuttable presumption that there are no friends and family cases as of the date hereof.  If in the future any case is claimed by Employee to be a friends and family case, Employee agrees to provide a memorandum to the President of Employer specifying the reasons why the case is a friends and family case. The President of Employer shall either approve or disapprove of the friends and family designation by counter-signing the memorandum.  If such memorandum is not counter-signed by the President of Employer, the friends and family designation shall not apply. The decision whether to approve or disapprove a friends and family designation is within the exclusive discretion of the President of Employer.  Copies of all such memoranda shall be provided to Employee, and a copy shall be maintained in Employee's employment file.  For all purposes hereunder, all services performed or rendered by Employee while Employee was employed by Employer and until Employee termination date shall be deemed to be services performed or rendered by Employer.

I.      Before a client's case is transferred to Employee or Employee's new law firm, the client, Employee and/or Employee's new law firm, shall reimburse Employer for all disbursements on the case previously paid by Employer.  Notwithstanding the foregoing, before a friends and family case is transferred to Employee or Employee's new law firm, the client, Employee, and/or Employee's new law firm shall reimburse Employer for all disbursements on the case previously paid by Employer.

 Initials

SEB Initials

J.      For any case transferred to Employee or Employee's new law firm at the request of the client:

(i)      Promptly after the settlement of or judgment on the case is paid, Employee and/or Employee's new law firm shall pay to Employer, Employer's share of the total combined legal fees in accordance herewith, and Employee (and/or Employee's new law firm) shall send to Employer a copy of both the front and back sides of the settlement check(s) or the check(s) paying the judgment. Employee shall take this action within five (5) business days of receipt by Employee (or Employee's new law firm) of the settlement check(s) or check(s) paying the judgment.

(ii)      Until any transferred case is resolved and the fees payable hereunder have been paid to Employer, Employee shall send to Employer a semi-annual report on the status of the case and shall keep Employer apprised, in writing, of major developments in the case and the status of the case in each such semi-annual period.

K.      If Employee's new law firm does not honor the division of legal fees set forth in this ¶9 or elsewhere herein, on a case transferred to Employee or to Employee's new law firm by Employer, Employee shall be personally obligated to pay Employer the share of the total combined legal fees payable to Employer hereunder or pursuant to law.

## 10.    <u>EMPLOYEE'S ACKNOWLEDGMENTS AND REPRESENTATIONS</u>

Employee specifically acknowledges and agrees that the provisions of this Employment Agreement, including especially <u>but not limited to</u>, the provisions of ¶¶8 and 9, do not

_____ Initials

SEB Initials

and will not, in any way, interfere with or limit Employee's ability to practice law and earn a living. Employee also acknowledges and agrees that the provisions hereof likewise will not limit the client's choice of counsel as the provisions merely determine, by mutual agreement, the manner of Employee's contact and solicitation, not the practice of law and in no way limit the actions or decisions of the client. Employee further acknowledges and agrees that the provisions of ¶8 are consistent with governing ethical rules, are reasonable and protect Employer's legitimate and protectable interests. In addition, Employee acknowledges and agrees that the provisions of ¶9 are reasonable and do not impose any sort of penalty in that they, too, protect Employer's legitimate and protectable interests. Employee specifically agrees that the fee allocation provisions in ¶9 bear a relationship to Employer's actual anticipated damages and expenses and that Employee has had, and will have, the opportunity to verify this through inspection and analysis of Exhibit "A".

## 11.   SPECIFIC ENFORCEMENT

This Agreement shall be specifically enforceable, shall be binding upon Employer, its successors and assigns, upon Employee and Employee's heirs, executors, successors and assigns, and shall inure to the benefit of Employer, its successors and assigns and Employee and Employee's heirs, executors, successors and assigns.

## 12.   COSTS AND ATTORNEYS' FEES

Employee agrees to pay Employer's reasonable costs, reasonable attorneys' fees and reasonable expert's fees associated with any lawsuit or dispute arising out of or related



Initials

SEB Initials

to this Employment Agreement wherein Employer seeks to enforce any provision of this Employment Agreement and it is determined that Employee (or Employee's new law firm) was in breach of the Employment Agreement. Employer agrees to pay Employee's reasonable costs, reasonable attorneys' fees and reasonable expert's fees associated with any lawsuit or dispute arising out of or related to this Employment Agreement wherein Employee seeks to enforce any provision of this Employment Agreement and it is determined that Employer was in breach of the Employment Agreement. The parties also agree that, during the pendency of any lawsuit or dispute arising pursuant to this Employment Agreement, the parties shall have the right to make an application to the Court for interim attorneys' fees and injunctive relief, if needed.

**13. ENTIRE AGREEMENT SHALL NOT BE DEEMED TO BE VOID OR UNENFORCEABLE IF ONE OR MORE PROVISIONS OF THE AGREEMENT ARE DEEMED TO BE VOID OR UNENFORCEABLE**

If any provision or provisions of this Employment Agreement, or any part of any provision, is/are held or determined to be void or unenforceable, that holding or determination shall not in any way affect the enforceability of the remaining provisions of this Employment Agreement.

**14. ENTIRE AGREEMENT; SUPERSEDING OF PRIOR MATTERS; APPLICATION; MODIFICATION; REFORMATION**

A.    This Employment Agreement sets forth the entire understanding of the parties, and supersedes and supplants any prior agreements, arrangements and communications, whether oral or written, pertaining to the subject matter hereof,

26

 Initials

SEB Initials

including specifically any prior Employment Agreement(s).

B.      This Employment Agreement and its terms shall be applicable and binding as of the date hereof and shall be applicable to all cases/files on which Employee is currently working and/or on which Employee will work in the future, regardless of date of original assignment, and Employee specifically agrees to the terms and conditions hereof, being applicable to all his or her currently assigned and existing cases and all cases assigned to him or her in the future.

C.      This Employment Agreement shall be modified or amended only by written agreement between Employer and Employee.

D.      Both Employer and Employee knowingly and voluntarily request that any court or arbiter before whom this Employment Agreement is in controversy, reform the respective covenants herein, if such reformation is necessary to make any of them enforceable, to the maximum level of enforcement permissible to Employer and equitable under the circumstances.   This provision is a material inducement for Employer to enter into this Employment Agreement.

## 15.  __NOTICE__

All notices to be given hereunder shall be given (i) to Employer by personal delivery to the President of Employer, and (ii) to Employee by personal delivery or sent by Certified Mail and regular mail addressed to Employee at his or her last known home address. All notices shall be effective only upon receipt.

_____ Initials

_____ SEB Initials

**16.    CONFIDENTIALITY OF THIS AGREEMENT**

Employee acknowledges and agrees that the contents of the Employment Agreement constitute trade secrets and are otherwise confidential and proprietary in nature. Employee agrees not to divulge this Employment Agreement or any of its contents to any third party.

**IN WITNESS WHEREOF,** the parties have executed this Employment Agreement as of the day and year first above written.

CELLINO & BARNES, P.C.

By: _____

Stephen E. Barnes
President of the Firm

_____

Brian A. Goldstein

_____ Initials

SEB _____ Initials

Case 3.16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 79 of 121

## EXHIBIT LIST

A =    Case Acquisition Costs (to be retained by Employer)

B =    Letter to clients in anticipation of withdrawal by Employee

C =    Letter to clients when employment has been terminated by Employer

D =    List of all friends and family cases

_____ Initials

_SEB_ Initials

EXHIBIT A

EXHIBIT ON FILE WITH EMPLOYER

EMPLOYEE HEREBY ACKNOWLEDGES

THAT HE/SHE HAS INSPECTED AND ANALYZED EXHIBIT A

_____
Employee's Signature

30

_Initials_

SEB _Initials_

**EXHIBIT B**
**(Letter to clients in anticipation**
**of withdrawal by Employee)**


[Address of Client]

Dear [Client]:

      We write to notify you that as of [Date], [Employee] no longer will be employed by Cellino & Barnes. You retained Cellino & Barnes following your accident of [Date of Accident], and Cellino & Barnes has represented your interests since that time. A new attorney from Cellino & Barnes will be assigned to continue representing your interests should you wish to continue being represented by Cellino & Barnes. You have the right to continue to be represented by Cellino & Barnes, or you may choose to be represented by [Employee] in his/her new practice, or you may choose to be represented by other counsel. This is entirely your decision.

      Please feel free to contact us should you have any questions or concerns.


      Very truly yours,


[President of Firm]                 [Employee]

31

 Initials

SEB Initials

## EXHIBIT C
### (Letter to clients when Employment
### has been terminated by Employer)

[Address of Client]

Dear [Client]:

Please be advised that [Employee], who was previously assigned by this firm to provide legal services to you as per your retainer agreement with our firm, is no longer employed by Cellino & Barnes.  You retained Cellino & Barnes following your accident of [date of accident], and Cellino & Barnes has represented your interests since that time.   A new attorney from Cellino & Barnes will be assigned to continue representing your interests should you wish to continue being represented by Cellino & Barnes.  You have the right to continue to be represented by Cellino & Barnes, or you may choose to be represented by [Employee] in his/her new practice, or you may choose to be represented by other counsel.  This is entirely your decision.

Please feel free to contact me should you have any questions or concerns.

Very truly yours,

[President of Firm]

 Initials

SEB  Initials

FILED: ERIE COUNTY CLERK 06/28/2023 05:06 PM
INDEX NO. 804192/2023
NYSCEF DOC. NO. 15
RECEIVED NYSCEF: 06/28/2023

**EXHIBIT D**
**(List of all Friends and Family Cases)**



Initials

SEB Initials

# EXHIBIT 2

STATE OF NEW YORK
SUPREME COURT  :  COUNTY OF ERIE

ROSS M. CELLINO, JR.,

                       Petitioner,

  v.

CELLINO & BARNES, P.C. and
STEPHEN E. BARNES,

                    Respondents.

**STIPULATED ORDER OF
DISSOLUTION**

Index No. 806178/2017

The Court enters this Order of Dissolution upon the request and stipulation of all parties, Petitioner Ross Mr. Cellino, Jr. ("Petitioner"), Respondents Cellino & Barnes, P.C. ("C&B") and Stephen E. Barnes (collectively "Respondents"). It is hereby

ORDERED, that Cellino & Barnes, P.C. shall be dissolved voluntarily and its business affairs wound up in accordance with Article 10 of the New York Business Corporation Law; it is further

ORDERED, the Court shall retain jurisdiction of this proceeding for the issues that may arise in connection with C&B's winding-up; it is further

ORDERED, that the parties shall report to the Court the winding-up issues upon which they agree, and those upon which they cannot reach agreement, by January 24, 2020; it is further

1

ORDERED, that the parties shall meet with the Court on January 28, 2020 at 9:30 am, at which time the Court will determine how the winding-up issues will be addressed; it is further

ORDERED, that subject to subsequent Order of this Court, the parties shall meet with the Court on February 25, 2020 at 10:00 a.m., at which time the Court will establish a time table for the parties to open their own separate firms, and address the issue of whether the Court's Status Quo Order of May 15, 2017 will be vacated or modified.

The above Order is stipulated to by the parties via their undersigned respective counsel.

DUKE HOLZMAN PHOTIADIS & GRESSENS LLP

Gregory P. Photiadis, Esq.
Christopher M. Berloth, Esq.
*Attorneys for Respondents*
*Cellino & Barnes, P.C. and Stephen E. Barnes*
701 Seneca Street, Suite 750
Buffalo, New York 14210

Dated:   Buffalo, New York
         January 22, 2020

CONNORS LLP

Terrence M. Connors, Esq.
Vincent E. Doyle III, Esq.
*Attorneys for Petitioner*
*Ross M. Cellino, Jr., Esq.*
1000 Liberty Building
Buffalo, New York 14202

Dated:   Buffalo, New York
         January 22, 2020

SO ORDERED.

1/28/2020

Hon. Deborah A. Chimes, J.S.C.

ENTER:

2

# EXHIBIT 3

FILED: ERIE COUNTY CLERK 06/28/2020 05:00 PM
NYSCEF DOC. NO. 442

INDEX NO. 806198/2023
INDEX NO. 806178/2017
RECEIVED NYSCEF: 06/28/2020

Case 3:16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 88 of 121

STATE OF NEW YORK
SUPREME COURT  :  COUNTY OF ERIE

ROSS M. CELLINO, JR.,

               Petitioner,

    v.                                       Index No. 806178/2017

CELLINO & BARNES, P.C. and
STEPHEN E. BARNES,

               Respondents.

## SECOND STIPULATED ORDER OF DISSOLUTION

        The Court enters this Order to supplement its prior Order, entered on January 28, 2020 (Dkt. No. 327), granting Dissolution upon the request and stipulation of all parties, Petitioner Ross M. Cellino, Jr. ("Petitioner"), Respondents Cellino & Barnes, P.C. ("C&B") and Stephen E. Barnes (collectively "Respondents"). Between January 28 and March 12, 2020, the Parties met with the Court on several occasions to discuss the winding-up issues upon which they agree, and those upon which they cannot reach agreement. It is hereby,

        ORDERED, that John Schmidt, Esq., previously appointed by this Court as a temporary receiver on February 6, 2018 (Dkt. No 241), is hereby appointed to continue as Referee for the duration of Cellino & Barnes, P.C.'s voluntary dissolution and winding up of business affairs; it is further,

        ORDERED, that John Schmidt, Esq. in his role as Referee is permitted to use the same lawyers and accountants that he has utilized to date; and, the Referee will be paid at the same hourly rate previously approved by this Court; it is further,

ORDERED, that to the extent the Parties cannot agree among themselves on any actions necessary to facilitate the winding up of Cellino & Barnes, P.C., the Referee is vested with the authority to make a binding final determination as is necessary to effectuate the winding up of Cellino & Barnes, P.C.; it is further,

ORDERED, the Referee shall be vested with the authority as agreed to by the Parties, to the extent the Parties' confidential Settlement Agreement provides for authority to be vested in the Referee; and, any such authority shall result in a binding final determination as is necessary to effectuate the winding up of Cellino & Barnes, P.C.; it is further,

ORDERED, that this Court's Status Quo Order of May 15, 2017 is modified to allow any conduct agreed to in the confidential Settlement Agreement reached between the Parties; and, vacated as of the Closing Date as defined by the confidential Settlement Agreement; it is further,

ORDERED, that Cellino & Barnes will be entitled to assert attorneys charging liens on cases that transfer to other firms, and that as to cases that transfer to either the new Cellino firm or the new Barnes firm, Cellino & Barnes shall be entitled to a lien determined pursuant to the following "Quantum Meruit Calculation," namely that as to any transferred case, Cellino & Barnes will be entitled to a percentage of the attorneys' fee equivalent to the ratio of time the new firm retained the case compared to Cellino & Barnes. The "Quantum Meruit Calculation" is further described in a confidential Settlement Agreement between the parties. This court specifically approves the "Quantum Meruit Calculation" as a fair and equitable way to determine the appropriate attorney's lien amount pursuant to Judiciary Law section 475.

- 2 -

Case 3.16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 90 of 121

The above Order is stipulated to by the parties via their undersigned respective

counsel.

Dated: **6 - 16**          , 2020

**DUKE HOLZMAN PHOTIADIS & GRESENS LLP**
*Attorneys for Respondents*
*Cellino & Barnes, P.C. and Stephen E. Barnes*

By: _____
    Gregory P. Photiadis, Esq.
    Christopher M. Berloth, Esq.
701 Seneca Street, Suite 750
Buffalo, New York 14210

**CONNORS LLP**
*Attorneys for Petitioner*
*Ross M. Cellino, Jr., Esq.*

By: _____
    Terrence M. Connors, Esq.
    Vincent E. Doyle III, Esq.
1000 Liberty Building
Buffalo, New York 14202

**SO ORDERED:**

_____
    Hon. Deborah A. Chimes, J.S.C.

Dated: June 18, 2020 _____

082368.00000 Business 19501180v5

# EXHIBIT 4



**CellinoLaw**
**888-2020**

## EMPLOYMENT AGREEMENT

**THIS EMPLOYMENT AGREEMENT** (this "Agreement") is entered into this _6/27/2020_, by and between **CELLINO LAW LLP** ("Firm") and **ALEX GRECO** ("Employee"). This Agreement will be effective on the date the Employee becomes officially employed by the Firm ("Effective Date") upon the following terms:

SALARY:                               $85,000 annual salary paid weekly.

SIGNING BONUS:                   $10,000

MASS TORT CASE-SPECIFIC BONUS:      1% of the Firm's net legal fee earned for each New York mass tort case resolved by firm.

CASE-SPECIFIC BONUS:      While Employee's primary duties are to assist the Firm's mass tort department, Employee may also be assigned up to 50 single-event personal injury cases through which Employee will earn 5% of the Firm's net legal fee earned for each such single-event personal injury case resolved by Employee, which 5% will not be decreased on any "team-up" cases.

REFERRAL POLICY:      Employee will be entitled to 50% of the net legal fee earned by the Firm for any personal referrals the Employee directly generates ("Personal Referral"). A Personal Referral is limited to referrals that the Employee receives directly from personal contacts, family, friends, and other attorneys, but not from cases generated from the Firm's general marketing. For clarification and for practical purposes, Firm clients often become the "Employee's client" and any referrals from Firm clients continue to be Firm clients, and NOT Personal Referrals. The Firm expects the Employee to do an excellent job with all of his/her clients, and therefore clients that are generated from the Employee's good work and which originally came from the Firm's marketing efforts, will continue to be treated as Firm clients.

HEALTH INSURANCE:      The Firm will pay single medical insurance coverage for the Employee. If the Employee chooses to carry insurance covering other dependents, the Firm will contribute an amount equal to the single coverage premium.

401(k):      The Firm will contribute 3% of the Employee's earnings to the Employee's Firm-sponsored 401(k) account up to the maximum amount allowed by law.

MALPRACTICE:      If it is determined that the Employee committed malpractice (in the Firm's sole discretion), Employee will contribute the first $10,000 towards the settlement of the malpractice claim or towards the Firm's malpractice insurance deductible. In the event a client brings a malpractice claim that is not meritorious, but nevertheless requires the Firm to report the claim to its malpractice carrier to defend, Employee will not be liable for any contribution towards such claim.

<u>CONFIDENTIALITY</u>: Employee expressly understands and agrees that the terms and existence of this Agreement are confidential, and must be treated accordingly by Employee. Employee shall not disclose the terms or existence of this Agreement to any third party. Employee acknowledges and agrees that any breach or threatened breach by him/her of this confidentiality provision may cause the Firm irreparable injury. Therefore, in the event of any breach or threatened breach hereof, the Firm will be entitled, in addition to any other remedies available at law or in equity, to $100,000 in liquidated damages.

<u>MISCELLANEOUS BENEFITS</u>: The Firm will pay Employee's (i) monthly parking expense in the City of Buffalo, (ii) biennial New York State attorney registration fees, and (iii) annual county bar association membership fee.

<u>MISCELLANEOUS</u>: This Agreement will be governed by the laws of the State of New York, without regard to its conflicts of law provisions. No failure of a party to exercise, and no delay by a party in exercising, any right or remedy under this Agreement will constitute a waiver of such right or remedy by such party. No waiver by a party of any right or remedy under this Agreement will be effective unless made in writing. Employee expressly understands and agrees that this is an "at will" employment agreement. Nothing in the Firm's policies, actions, or this Agreement shall be construed to alter the "at will" nature of Employee's status with the Firm, and Employee understands that the Firm may terminate his/her employment at any time for any reason or for no reason, provided it is not terminated in violation of state or federal law.

The parties hereto have executed this Agreement as of the date first set forth above.

**CELLINO LAW LLP**

By: _____
Ross M. Cellino, Jr., Partner

Alex Greco



2 | Page









# This document was signed by:

## Alexander Greco

| | |
|---|---|
| **Date** | 6/27/2020 4:46 PM UTC |
| **Phone** | 7164640172 |
| **IP Address** | 98.11.170.105 |
| **Confirmation** | DA2A16A2E5BAD1BF16223F26F1AE49B6 |



**VINESIGN.COM**



## NON-DISCLOSURE AGREEMENT

This Non-Disclosure Agreement (this "Agreement"), dated as of ___6/22/2020___ (the "Effective Date"), is entered into by ___Alexander Greco___ (the "Recipient"), in connection with his/her discussions regarding a potential employment relationship and the terms of said relationship (the "Proposed Employment") with CELLINO LAW LLP (the "Discloser").

1.  _Confidential Information_.  "Confidential Information" means all information (regardless of whether in oral or in a tangible medium and regardless of whether marked as confidential) of the Discloser that is not readily available to the public, including, but not limited to:  strategic plans; salaries; employment benefits; financial reports and related information; cost and price planning data; and customer and vendor databases.  Unless otherwise agreed to in writing, the fact that the parties are having discussions regarding the Proposed Employment and the terms and existence of this Agreement are deemed to be "Confidential Information."

2.  _Exceptions_.  "Confidential Information" does not include information:  (a) already known by the Recipient, without an obligation to Discloser to keep it confidential, at the time of its receipt directly from Discloser, as evidenced by written records; (b) received by Recipient in good faith on a non-confidential basis from a third party; or (c) publicly known at the time of its receipt by Recipient or that becomes publicly known, other than by a breach of this Agreement.

3.  _Obligations_.  Recipient must:  (a) treat all Confidential Information with the same degree of care as it uses to protect its own confidential information of like importance, but in no event less than a reasonable degree of care; (b) not disclose the Confidential Information to any third party without the prior written consent of Discloser; (c) not use the Confidential Information other than in connection with the Proposed Employment; and (d) notify Discloser immediately upon its discovery of any unauthorized use or disclosure of the Confidential Information or any breach of this Agreement and reasonably cooperate with Discloser to regain possession of the Confidential Information and prevent its further unauthorized use or disclosure. Notwithstanding the foregoing, Recipient may disclose Confidential Information to the extent the disclosure is required by applicable law, a valid order of a court or other governmental body having jurisdiction, but only if Recipient provides Discloser with reasonable prior written notice of the proposed disclosure, reasonably cooperates with Discloser in obtaining a protective order or otherwise preventing such disclosure, and furnishes only that portion of such Confidential Information that is legally required.

4.  _Term and Termination_.  The term of this Agreement will commence on the Effective Date and continue for a period of two (2) years, unless either party gives written notice to the other of its desire to terminate this Agreement.  All obligations under this Agreement will survive for a period of five (5) years from the date of the expiration or termination of this Agreement.

5.  _Equitable Relief; Liquidated Damages_.  Each party acknowledges and agrees that any breach or threatened breach by it, its employees or its authorized representatives of this Agreement may cause the other party irreparable injury.  **_Therefore, in the event of any breach or threatened breach hereof, the Firm will be entitled, in addition to any other remedies available at law or in equity, to $100,000 in liquidated damages._**

6.  _Waiver_.  No failure of a party to require, and no delay by a party in requiring, the other party to comply with any provision of this Agreement will constitute a waiver of the right to require such compliance.  No failure of a party to exercise, and no delay by a party in exercising, any right or remedy under this Agreement will constitute a waiver of such right or remedy by such party. No waiver by a party of any right or remedy under this Agreement will be effective unless made in writing.

7.  _Assignment_.  Recipient may not assign this Agreement or otherwise transfer any rights or obligations under this Agreement without the prior written consent of the other party.

8.  _Governing Law_. This Agreement will be governed by the laws of the State of New York, without regard to its conflicts of law provisions.



Alexander Greco

# This document was signed by:

## Alexander Greco



| | |
|---|---|
| **Date** | 6/22/2020 4:19 PM UTC |
| **Phone** | (716) 863-5096 |
| **IP Address** | 174.224.136.39 |
| **Confirmation** | FE0CEAF780D48D3BCED6173AEA D89CBA |



**VINESIGN.COM**

# EXHIBIT 5



## EMPLOYMENT AGREEMENT

   **THIS EMPLOYMENT AGREEMENT** (this "Agreement") is entered into ___6/30/2020___, by and between **CELLINO LAW LLP** ("Firm") and **BRIAN A. GOLDSTEIN** ("Employee"). This Agreement will be effective on the date the Employee becomes officially employed by the Firm ("Effective Date") upon the following terms:

SALARY:                              $250,000 annual salary paid weekly.

CASE-SPECIFIC BONUS:          10% of the Firm's net legal fee earned for each case resolved by Employee, which 10% will not be decreased on any "team-up" cases. Employee understands that he is not to, and agrees he will not, solicit mass tort cases away from The Barnes Firm, but that the Firm will pay Employee his original 10% that he would have earned ("Departed Fees") on those certain 225 Barnes Firm mass tort cases ("BFMT Cases") that were transferred back to The Barnes Firm. The Departed Fees will be calculated by averaging the fees that the Firm actually recovers per category of mass tort case and applying that average to the number of Barnes Firm cases per category that the Employee relinquished by joining the Firm. In the event The Barnes Firm decides to transfer the BFMT Cases back to the Firm, Employee will earn 15% of the total attorney's fees on said BFMT Cases.

TALENT RETENTION FEE SPLIT:   5% of the Firm's net legal fee earned for each case resolved by younger attorneys to whom Employee is assigned as mentor. Employee will initially be assigned as mentor to Alex Greco. In addition to his role as an assistant to Employee's mass tort department, Alex Greco will be limited to a maximum of 50 single-event personal injury cases.

FIRM LOAN:                      The Firm agrees to provide Employee a demand loan in the amount of $300,000.00 (the "Loan") with simple interest equal to the short-term Applicable Federal Rate, such that the rate is the lowest rate permitted by the Internal Revenue Code without imputation of interest, a copy of which Demand Note is attached hereto. Employee may repay the Loan at any time, but must repay it within thirty (30) days of his/her resignation or termination of employment with the Firm. On each anniversary of the Effective Date that the Employee remains employed at the Firm, the Firm will forgive 1/3 of the outstanding principal balance of the Demand Note, which forgiveness amount(s) will be treated as taxable compensation to the Employee.

REFERRAL POLICY:              Employee will be entitled to 50% of the net legal fee earned by the Firm for any personal referrals the Employee directly generates ("Personal Referral"). A Personal Referral is limited to referrals that the Employee receives directly from personal contacts, family, friends, and other attorneys, but not from cases generated from the Firm's general marketing. For clarification and for practical purposes, Firm clients often become the "Employee's client" and any referrals from Firm clients continue to be Firm clients, and NOT Personal Referrals. The Firm expects the Employee to do an excellent job with all of his/her clients, and therefore clients that are generated from the Employee's good work and which originally came from the Firm's marketing efforts, will continue to be treated as Firm clients.

HEALTH INSURANCE:            The Firm will pay single medical insurance coverage for the Employee. If the Employee chooses to carry insurance covering other dependents, the Firm will contribute an amount equal to the single coverage premium.

<u>401(k)</u>:                              The Firm will contribute 3% of the Employee's earnings to the Employee's Firm-sponsored 401(k) account up to the maximum amount allowed by law.

<u>MISCELLANEOUS BENEFITS</u>:      The Firm will pay Employee's (i) monthly parking expense in the City of Buffalo, (ii) biennial New York State attorney registration fees, and (iii) annual county bar association membership fee.

<u>MALPRACTICE</u>:                        If it is determined that the Employee committed malpractice (in the Firm's sole discretion), Employee will contribute the first $10,000 towards the settlement of the malpractice claim or towards the Firm's malpractice insurance deductible.  In the event a client brings a malpractice claim that is not meritorious, but nevertheless requires the Firm to report the claim to its malpractice carrier to defend, Employee will not be liable for any contribution towards such claim.

<u>CONFIDENTIALITY</u>:                  Employee expressly understands and agrees that the terms and existence of this Agreement are confidential, and must be treated accordingly by Employee.  Employee shall not disclose the terms or existence of this Agreement to any third party.  Employee acknowledges and agrees that any breach or threatened breach by him/her of this confidentiality provision may cause the Firm irreparable injury.  Therefore, in the event of any breach or threatened breach hereof, the Firm will be entitled, in addition to any other remedies available at law or in equity, to $100,000 in liquidated damages.

<u>MISCELLANEOUS</u>:                    This Agreement will be governed by the laws of the State of New York, without regard to its conflicts of law provisions.  No failure of a party to exercise, and no delay by a party in exercising, any right or remedy under this Agreement will constitute a waiver of such right or remedy by such party.  No waiver by a party of any right or remedy under this Agreement will be effective unless made in writing.  Employee may only be terminated by the Firm "for cause" while any principal indebtedness remains outstanding under the Loan.  Once all principal indebtedness under the Loan has been paid in full or otherwise forgiven, Employee expressly understands and agrees that (i) this is an "at will" employment agreement; (ii) nothing in the Firm's policies, actions, or this Agreement shall be construed to alter the "at will" nature of Employee's status with the Firm; and (iii) the Firm may terminate his/her employment at any time for any reason or for no reason, provided it is not terminated in violation of state or federal law.

The parties hereto have executed this Agreement as of the date first set forth above.

**CELLINO LAW LLP**


By: _____        _____
     Ross M. Cellino, Jr., Partner                                        Brian A. Goldstein

# DEMAND NOTE

6/30/2020

$300,000.00

For value received, **BRIAN GOLDSTEIN** (the "Debtor") promises to pay to the order of **CELLINO LAW LLP** (the "Holder"), in lawful money of the United States of America, the principal sum of **THREE HUNDRED THOUSAND AND 00/100 DOLLARS ($300,000.00)** and interest on the unpaid portion of the principal sum ("Outstanding Principal Amount") in the following manner:

The Debtor shall pay to the Holder in lawful money of the United States and immediately available funds on demand by the Holder:

1. The Outstanding Principal Amount; and

2. Simple interest equal to the short-term Applicable Federal Rate, such that the rate is the lowest rate permitted by the Internal Revenue Code without imputation of interest computed per annum on the Outstanding Principal Amount from and after the date of this Demand Note to, but not including, the date the Outstanding Principal Amount is paid in full.

The current short-term Applicable Federal Rate is 18/100ths percent **(0.18%)**.
See:  https://apps.irs.gov/app/picklist/list/federalRates.html

The Debtor shall pay to Holder on demand all reasonable costs and expenses (including, but not limited to, the reasonable fees and disbursements of counsel, whether retained for advice or litigation) incurred by Holder in endeavoring to (1) collect any amount owing pursuant to this Demand Note due to an event of default, or (2) preserve or exercise any right or remedy of Holder pursuant to this Demand Note.

The Demand Note shall be governed by and construed, interpreted and enforced in accordance with the internal law of the State of New York, without regard to principles of conflict of laws.

This Demand Note shall not be extended or modified orally.  The Holder shall have the right to transfer/assign this Demand Note.

**<u>DEBTOR:</u>**

_____
BRIAN GOLDSTEIN










# This document was signed by:

## Brian Goldstein

| Date | 6/30/2020 1:36 AM UTC |
|---|---|
| Phone | 7162384597 |
| IP Address | 172.100.29.250 |
| Confirmation | C16AB6304A2081226E38726726CC AA61 |



VINESIGN.COM

**CellinoLaw**
**888-2020**

## NON-DISCLOSURE AGREEMENT

This Non-Disclosure Agreement (this "Agreement"), dated as of ___6/22/2020___ (the "Effective Date"), is entered into by ___Brian Goldstein___ (the "Recipient"), in connection with his/her discussions regarding a potential employment relationship and the terms of said relationship (the "Proposed Employment") with CELLINO LAW LLP (the "Discloser").

1.     <u>Confidential Information</u>.  "Confidential Information" means all information (regardless of whether in oral or in a tangible medium and regardless of whether marked as confidential) of the Discloser that is not readily available to the public, including, but not limited to:  strategic plans; salaries; employment benefits; financial reports and related information; cost and price planning data; and customer and vendor databases.  Unless otherwise agreed to in writing, the fact that the parties are having discussions regarding the Proposed Employment and the terms and existence of this Agreement are deemed to be "Confidential Information."

2.     <u>Exceptions</u>.  "Confidential Information" does not include information:  (a) already known by the Recipient, without an obligation to Discloser to keep it confidential, at the time of its receipt directly from Discloser, as evidenced by written records; (b) received by Recipient in good faith on a non-confidential basis from a third party; or (c) publicly known at the time of its receipt by Recipient or that becomes publicly known, other than by a breach of this Agreement.

3.     <u>Obligations</u>.  Recipient must:   (a) treat all Confidential Information with the same degree of care as it uses to protect its own confidential information of like importance, but in no event less than a reasonable degree of care; (b) not disclose the Confidential Information to any third party without the prior written consent of Discloser; (c) not use the Confidential Information other than in connection with the Proposed Employment; and (d) notify Discloser immediately upon its discovery of any unauthorized use or disclosure of the Confidential Information or any breach of this Agreement and reasonably cooperate with Discloser to regain possession of the Confidential Information and prevent its further unauthorized use or disclosure.  Notwithstanding the foregoing, Recipient may disclose Confidential Information to the extent the disclosure is required by applicable law, a valid order of a court or other governmental body having jurisdiction, but only if Recipient provides Discloser with reasonable prior written notice of the proposed disclosure, reasonably cooperates with Discloser in obtaining a protective order or otherwise preventing such disclosure, and furnishes only that portion of such Confidential Information that is legally required.

4.     <u>Term and Termination</u>.  The term of this Agreement will commence on the Effective Date and continue for a period of two (2) years, unless either party gives written notice to the other of its desire to terminate this Agreement.  All obligations under this Agreement will survive for a period of five (5) years from the date of the expiration or termination of this Agreement.

5.     <u>Equitable Relief; Liquidated Damages</u>.  Each party acknowledges and agrees that any breach or threatened breach by it, its employees or its authorized representatives of this Agreement may cause the other party irreparable injury. *Therefore, in the event of any breach or threatened breach hereof, the Firm will be entitled, in addition to any other remedies available at law or in equity, to $20,000 in liquidated damages.*

6.     <u>Waiver</u>.  No failure of a party to require, and no delay by a party in requiring, the other party to comply with any provision of this Agreement will constitute a waiver of the right to require such compliance.  No failure of a party to exercise, and no delay by a party in exercising, any right or remedy under this Agreement will constitute a waiver of such right or remedy by such party.  No waiver by a party of any right or remedy under this Agreement will be effective unless made in writing.

7.     <u>Assignment</u>.  Recipient may not assign this Agreement or otherwise transfer any rights or obligations under this Agreement without the prior written consent of the other party.

8.     <u>Governing Law</u>.  This Agreement will be governed by the laws of the State of New York, without regard to its conflicts of law provisions.

___Brian Goldstein___









# This document was signed by:

## Brian Goldstein

| | |
|---|---|
| **Date** | 6/22/2020 1:11 PM UTC |
| **Phone** | 7162384597 |
| **IP Address** | 173.240.6.36 |
| **Confirmation** | DD0380B71F9B8449951EA8BE9A3D AC1D |



**VINESIGN.COM**

# EXHIBIT 6

# DEMAND NOTE

6/30/2020

$300,000.00

For value received, **BRIAN GOLDSTEIN** (the "Debtor") promises to pay to the order of **CELLINO LAW LLP** (the "Holder"), in lawful money of the United States of America, the principal sum of **THREE HUNDRED THOUSAND AND 00/100 DOLLARS ($300,000.00)** and interest on the unpaid portion of the principal sum ("Outstanding Principal Amount") in the following manner:

The Debtor shall pay to the Holder in lawful money of the United States and immediately available funds on demand by the Holder:

1. The Outstanding Principal Amount; and

2. Simple interest equal to the short-term Applicable Federal Rate, such that the rate is the lowest rate permitted by the Internal Revenue Code without imputation of interest computed per annum on the Outstanding Principal Amount from and after the date of this Demand Note to, but not including, the date the Outstanding Principal Amount is paid in full.

The current short-term Applicable Federal Rate is 18/100ths percent **(0.18%)**.
See: https://apps.irs.gov/app/picklist/list/federalRates.html

The Debtor shall pay to Holder on demand all reasonable costs and expenses (including, but not limited to, the reasonable fees and disbursements of counsel, whether retained for advice or litigation) incurred by Holder in endeavoring to (1) collect any amount owing pursuant to this Demand Note due to an event of default, or (2) preserve or exercise any right or remedy of Holder pursuant to this Demand Note.

The Demand Note shall be governed by and construed, interpreted and enforced in accordance with the internal law of the State of New York, without regard to principles of conflict of laws.

This Demand Note shall not be extended or modified orally. The Holder shall have the right to transfer/assign this Demand Note.

**DEBTOR:**

BRIAN GOLDSTEIN



# EXHIBIT 7

# Department of State
## Division of Corporations

## Entity Information

Return to Results    Return to Search

**Entity Details**

**ENTITY NAME:** GOLDSTEIN GRECO, P.C.

**FOREIGN LEGAL NAME:**

**ENTITY TYPE:** DOMESTIC PROFESSIONAL SERVICE CORPORATION

**SECTIONOF LAW:** PROFESSIONAL - 1503 BUSINESS CORPORATION LAW - BUSINESS CORPORATION LAW

**DATE OF INITIAL DOS FILING:** 07/19/2022

**EFFECTIVE DATE INITIAL FILING:** 07/19/2022

**FOREIGN FORMATION DATE:**

**COUNTY:** ERIE

**JURISDICTION:** NEW YORK, UNITED STATES

**DOS ID:** 6558942

**FICTITIOUS NAME:**

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**ENTITY STATUS:** ACTIVE

**REASON FOR STATUS:**

**INACTIVE DATE:**

**STATEMENT STATUS:** CURRENT

**NEXT STATEMENT DUE DATE:** 07/31/2024

**NFP CATEGORY:**

ENTITY DISPLAY | NAME HISTORY | FILING HISTORY | MERGER HISTORY | ASSUMED NAME HISTORY

Service of Process on the Secretary of State as Agent

**The Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery:**

**Name:** BRIAN A. GOLDSTEIN, GOLDSTEIN GRECO P.C.

**Address:** 200 LAKEFRONT BOULEVARD, #1103, BUFFALO, NY, UNITED STATES, 14202 - 4355

**Electronic Service of Process on the Secretary of State as agent: Not Permitted**

Chief Executive Officer's Name and Address

**Name:**

**Address:**

Principal Executive Office Address

**Address:**

Registered Agent Name and Address

**Name:**

**Address:**

Entity Primary Location Name and Address

**Name:**

**Address:**

Farmcorpflag

**Is The Entity A Farm Corporation:** NO

Stock Information

| Share Value | Number Of Shares | Value Per Share |
|---|---|---|
| NO PAR VALUE | 200 | $0.00000 |

FILED: ERIE COUNTY CLERK 06/28/2023 05:06 PM
INDEX NO. 804192/2023
NYSCEF DOC. NO. 22
RECEIVED NYSCEF: 06/28/2023

# EXHIBIT 8

## CELLINO & BARNES, P.C. CONTINGENCY FEE AGREEMENT
## NURSING FACILITY

THIS IS AN AGREEMENT between **TERAH JACKSON and PATRICIA WINANS** hereafter referred to as "Client," and CELLINO & BARNES, P.C., hereafter referred to as "Attorney."

1.    Matter Covered:

Client retains Attorney to represent Client in connection with a claim for personal injury arising out of the care and treatment rendered to Decedent **RONALD WINANS** at: **NEWFANE REHABILITATION & HEALTH CARE CENTER CORP.**   Client agrees that Attorney shall be compensated for representing Client in accordance with the Laws and Rules of the New York State Appellate Division and the Rules and Orders of any overseeing consolidated or multi-district court. This Agreement is solely limited to all steps necessary to bring the action to trial, verdict or settlement and does *not* include appellate practice, surrogate's, probate, estate, bankruptcy, support, maintenance, medical and/or pharmaceutical malpractice, tax, workers' compensation, non-recourse lending/funding work; legal work pertaining to Medicare/Medicaid and private healthcare lien and subrogation issues including but not limited to future Set Aside funds or legal work pertaining to health care lien evaluation, satisfaction and resolution.   Client understands that in the event an Estate representative is or becomes necessary, it is Client's responsibility to obtain appointment of the representative and that delay in the appointment of an Estate representative may have very serious and potentially fatal consequences for the rights, claims, notices and/or lawsuit.   Client understands there is no guarantee of recovery and that Medicare/Medicaid, social services, health insurance companies, medical providers and institutions and others may assert liens or rights against any recovery and that recovery may affect entitlement to such services. Client understands that Attorney, in their discretion, may hire outside assistance in evaluating, negotiating and resolving any Medicare, Medicaid, private health insurance or other liens, which will be a cost deducted from Client's recovery.

2.       Services to be Performed by Attorney:

Client understands that Attorney is investigating and potentially pursuing a claim only against the facility and Attorney is not retained, offering legal advice, or investigating or pursuing any claim(s) against others such as non-employee contract physicians, non-employee physician groups, non-employee nurses, non-employee nursing groups, hospitals, pharmacies or others unless specifically identified above and/or listed in any Complaint filed. Client understands if Client wishes to have such other potential claims investigated and potentially pursued, Client must retain alternative counsel.

Client understands that nursing facility cases require obtaining and review of relevant medical, nursing, and facility records and that Attorney cannot initiate any proceeding until the records are obtained and reviewed.   Client understands that until Attorney obtains and reviews sufficient records the time limits for filing a claim or lawsuit continue to run and may expire during the record gathering and investigation phase.

Attorney agrees to perform the legal services reasonably required to investigate and potentially prosecute Client's personal injury claim to settlement or judgment in a trial court; and if the judgment is in Client's favor, to oppose any motion for new trial.   The scope of legal services to be provided includes: initial and ongoing investigation of this incident; securing potential witnesses and evidence; gathering appropriate medical and pharmacy records, employment records, wage records, educational records and other records as appropriate; drafting, filing and responding to appropriate court documents; selection and retention of experts, consultants and investigators as necessary; appearance at court proceedings, depositions and arbitrations; conducting settlement negotiations; preparing for and conducting trial as appropriate and necessary; and maintaining appropriate contact

with Client throughout. Client understands that initial and ongoing work includes investigating the claim and that if it is determined that it is not valid, feasible, reasonable or practical to prosecute or if an impasse or irreconcilable disagreement develops as to the value of the claim or how the claim should further be prosecuted, Cellino & Barnes, P.C. shall have the right to withdraw from further representation.

To aid in the preparation, prosecution and resolution of Client's case, it may become necessary to hire expert witnesses, consultants, medical lien resolution services, and others. Client authorizes Attorney to incur all reasonable costs and to hire investigators, consultants, expert witnesses, medical lien resolution services, and others as necessary. Client understands that the cost for experts, consultants and lien resolution services, if any, would be costs (disbursements) deducted from Client's recovery.

3.      Limitation of Representation:

Attorney is representing Client only on the matter described in Paragraphs 1. and 2. Attorney's representation does not include independent or related matters that may arise, including, among other things, claims for property damage, claims regarding the necessity and/or cost of services rendered, placement of resident, retention of resident at the facility, transfer or discharge of resident out of facility, disputes with health care providers, hospitals and others about the amount owed for their services, or claims of a lien or a right for reimbursement (subrogation) by any benefit program, insurance company or social services agency for benefits paid, eligibility, or future benefits.

This Agreement also does not include defending Client against, or representing Client in any claims that may be asserted against Client as a cross-claim or counter-claim in Client's case. This Agreement does not apply to any other legal matters. If any such matters arise later, Attorney and Client will either negotiate a separate agreement if Client and Attorney agree that Attorney will perform such additional legal work or Client will engage separate counsel with respect to the cross-claim or counter-claim or additional legal work.

Client and Spouse (if any) understand that nursing facility claims and lawsuits may or may not include recovery for spousal (derivative) damages. Client and Spouse agree that Attorney has discretion to pursue or not to pursue a spousal/derivative/consortium cause of action and that if attorney chooses not to pursue such a cause of action; Client and Spouse will have waived that cause of action.

4.      Approval Necessary for Settlement:

Attorney will not make any settlement or compromise of any nature of any of Client's claims without Client's prior approval. Client retains the absolute right to accept or reject any settlement. Client agrees to seriously consider any settlement offer Attorney recommends before making a decision to accept or reject such offer. Client agrees not to make any settlement or compromise of any nature of any of Client's claims without prior notice to Attorney.

5.      Contingency Fee to Attorney and Litigation Costs and Expenses:

Attorneys' fees are to be charged in accordance with New York State Law. The attorneys' fee shall be one-third of any recovery and may be calculated, at the client's choosing, in one of two ways: (a) the costs, disbursements and litigation expenses, as described below, could be paid by the client on an on-going basis during the life of the case, in which case the one-third attorneys' fee would be calculated on the net sum recovered after deducting from the amount recovered the costs, disbursements, and litigation expenses; or (b) if the client chooses to have the law firm pay the costs,

disbursements and litigation expenses during the life of the case pursuant to Judiciary Law Section 488(2)(d), then the one-third attorneys' fee shall be calculated on the gross sum recovered before deducting costs, disbursements, and litigation expenses.

Per client's choice, litigation expenses such as those expended for filing, transcripts, copies, postage, delivery services, computerized legal research charges, miscellaneous file materials, records, experts, consultants, lien resolution services, and other expenses will either be billed to the Client (Option a) or advanced by the Law Firm (Option b). Expenses will be set forth in a settlement statement provided to the client and reimbursed to the attorney. Interest charges charged to the law firm by M&T Bank, Bank of America or other federally licensed financial institution for out-of-pocket expenses may be added where applicable. The client will not be responsible for any interest charges other than those charged by M&T Bank, Bank of America or other federally licensed financial institutions for out of pocket case expenses. Any interest charged will be at a reasonable market rate on the day that each advance is made. The client upon request is entitled to receive notice at any time of interest rates, statements and pre-payment payoff figures, and at client's request, the client is entitled to be billed for each disbursement promptly after they have been incurred so the client may decide whether to pay the disbursement or incur the interest charge. The client expressly waives this right, but will advise the law firm if the client wants to receive notice of disbursement (cost) payments. The client agrees to reimburse the law firm for all principal, interest and costs related to such advances at the conclusion of the case, and interest charges to the client will not exceed interest charges actually incurred by the law firm. The client may also, at any time, reimburse the firm for any advance made on the client's behalf; and in that case, interest no longer will accrue on the reimbursed amount. The client also may modify these arrangements by electing to receive bills for litigation expenses as they are incurred so that the client may decide whether to pay the expenses directly or to incur an interest charge.

The client agrees to cooperate with the law firm and to promptly advise the law firm of any bankruptcies, maintenance obligations, support obligations, tax obligations, liens or the assertion of any claims or rights of recovery against the potential recovery and to update contact information. The client understands that any recovery may impact rights and eligibility for certain governmental, social services, and other benefits. The client agrees to comply with the notification requirements of any governmental, social services, or other agency prior to receiving any settlement funds. The client understands that any recovery may or may not have tax consequences and that Attorney provides no tax advice to the client.

Client understands that any liens will be deducted from the amount of the settlement after the contingency fee along with the costs and expenses of the litigation. Attorney will not pay medical, insurance, or other bills other than specifically identified liens out of the settlement unless instructed by Client in writing. Any such unpaid medical or other bills will be Client's sole responsibility and Client will indemnify and will not hold Attorney responsible for payment of any such unpaid medical, insurance, or other bills.

Client chooses the following (Option a *or* Option b):

**Option (a)**____ (initials).     **Client wishes to pay** all costs, disbursements and litigation expenses upfront throughout the case.
                                                          ***or***

**Option (b)** _(initials)._     **Client wishes the law firm to pay** all costs, disbursements and litigation expenses during the case.

6.      Form of Recovery as Affecting Contingency Fee:

In the event the recovery consists of periodic payments over a period of time (such as a structured settlement), or any other form of property which is not cash or cash-equivalent, the contingency fee shall be based on the present cash value of the recovery and shall be payable out of the first funds or property received.

7.      Change of Counsel:

Client understands that Attorney has been retained for any and all claims or causes of action that are the subject of Attorney's representation under this Agreement.  If Client has previously retained other counsel for any or all of the claims or causes of action Client has or immediately will advise prior counsel of the change in representation to Attorney.  Client understands that Client may not retain more than one counsel for the same claims or causes of action at the same time but may change counsel and discharge Attorney at any time upon written notice to Attorney.  Attorney may withdraw from representation of Client (a) with Client's consent, (b) upon court approval, or (c) if no court action has been filed, for good cause and upon reasonable notice to Client.  Good cause includes Client's breach of this contract, Client's refusal to cooperate with Attorney or to follow Attorney's advice on a material matter, Attorney's determination that the matter is not practicable or viable, or any other fact or circumstance that would render Attorney's continuing representation impractical, unlawful or unethical.

Notwithstanding Attorney's withdrawal or Client's notice of discharge, and without regard to the reasons for the withdrawal or discharge, Client will remain obligated to pay Attorney for all costs incurred and work performed prior to the termination.  The Client understands and agrees if there is a change of counsel, Cellino & Barnes, P.C. will have an attorney's lien on the file for costs and attorneys fees and that Client will receive no monies until Cellino & Barnes, P.C. is paid in full.

8.      Conclusion of Services:

When Attorney's services conclude, all unpaid charges will immediately become due and payable.  Attorney is authorized to use any funds held in Attorney's trust account as a deposit against costs to apply to such unpaid charges.

9.      Lien:

Client hereby grants Attorney a lien and a security interest on any and all proceeds arising out of the claims or causes of action that are the subject of Attorney's representation under this Agreement.  Attorney's lien will be for any sums owing to Attorney for any unpaid costs and attorneys' fees.  The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement, annuity or otherwise.  The effect of such a lien is that Attorney may be able to compel payment of fees and costs from any such funds recovered on behalf of Client even if Client has changed counsel before the end of the case.  Client agrees Client will receive no monies until Cellino & Barnes, P.C. is paid in full.

10.     Receipt of Proceeds:

All proceeds of Client's case shall be deposited into Attorney's trust account for disbursement in accordance with the provisions of this Agreement.  Client understands that resolution of liens and rights of subrogation (repayment) such as Medicare, Medicaid, private health insurance companies and others may take a significant period of time during which Client's net settlement proceeds cannot be paid to Client.

11.     Disclaimer of Guarantee:

Nothing in this Agreement and nothing in Attorney's statements to Client will be construed as a promise or guarantee about the outcome of this matter. Attorney makes no such promises or guarantees. There can be no assurance that Client will recover any sum or sums in this matter. There can be no assurance of the length of time this matter will take. Attorney's comments about the value, timing, or outcome of this matter, if any, are expressions of opinion only. Client acknowledges that Attorney has made no promise or guarantees about the value, timing or outcome of this matter.

12.     Entire Agreement:

This Agreement contains the entire agreement of the parties. No other agreement, statement or promise made on or before the effective date of this Agreement will be binding on the parties.

13.     Severability in Event of Partial Invalidity:

If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

14.     Modification by Subsequent Agreement:

This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them or an oral agreement only to the extent that the parties carry it out.

15.     Client Acknowledgment:

Client acknowledges having read all of the terms and conditions set forth in this Agreement that all questions regarding this Agreement have been answered, and that he/she fully understands and agrees to same. Client acknowledges he/she has had sufficient time to read, review, and consider this Agreement.

16.     Arbitration and Adjudication of any Fee Dispute:

Client may have the right to arbitrate any fee dispute under the New York State Fee Dispute Resolution Program. Client understands that this Agreement is entered into in Erie County, New York and affirmatively agrees and consents to personal jurisdiction in Erie County, New York. Client agrees that any disputes, claim or litigation arising out of this Agreement or of Attorney's representation of Client in this matter shall be brought, heard, venued and adjudicated either through the New York State Fee Dispute Resolution Program or in Supreme or Civil Court in Erie County, New York.

17.     Copy Received by Client:

Client acknowledges receipt of a copy of this Agreement concurrently with Client's execution thereof.

**NO ATTORNEY FEES WILL BE OWED UNLESS A RECOVERY IS OBTAINED.**

**Under Option (b) NO COSTS WILL BE OWED UNLESS A RECOVERY IS OBTAINED.**

**NO SETTLEMENT WILL BE MADE WITHOUT FULL KNOWLEDGE AND CONSENT OF BOTH THE ATTORNEY AND THE CLIENT.**

I fully understand the above information and agreement and have had any questions explained to my satisfaction. I have had ample time to reflect upon my choice of counsel in this matter.

X _____

TERAH JACKSON

Date 9/14/18

X _____

for PATRICIA WINANS

Date 9/18/18

X _____

BRIAN A. GOLDSTEIN, ESQ.

Date 10-05-2018

# EXHIBIT 9

## RETAINER AGREEMENT - NURSING FACILITY

THIS IS AN AGREEMENT between Terah Jackson "Client," and **CELLINO LAW LLP** "Attorney."

1.  Matter Covered:

Client retains Attorney in connection with a claim for personal injury arising out of the care and treatment rendered to RONALD WINANS at NEWFANE REHABILITATION & HEALTH CARE CENTER CORP. Client agrees that Attorney shall be compensated for representing Client in accordance with the Laws and Rules of the New York State Appellate Division. This Agreement is solely limited to all steps necessary to bring the action to trial, verdict or settlement and does *not* include appellate practice, surrogate's, probate, estate, bankruptcy, support, maintenance, medical and/or pharmaceutical malpractice, tax, workers' compensation, non-recourse lending/funding work; legal work pertaining to Medicare/Medicaid and private healthcare lien and subrogation issues including but not limited to future Set Aside funds or legal work pertaining to health care lien evaluation, satisfaction and resolution. Client understands that in the event an Estate representative is or becomes necessary, it is Client's responsibility to obtain appointment of the representative and that delay in the appointment of an Estate representative may have very serious and potentially fatal consequences for the rights, claims, notices and/or lawsuit. Client understands there is no guarantee of recovery and that Medicare/Medicaid, social services, health insurance companies, medical providers and institutions and others may assert liens or rights against any recovery and that recovery may affect entitlement to such services. Client understands that Attorney, in their discretion, may hire outside assistance in evaluating, negotiating and resolving any Medicare, Medicaid, private health insurance or other liens, which will be a cost deducted from Client's recovery.

2.  Services to be Performed by Attorney:

Client understands that Attorney is investigating and potentially pursuing a claim only against the facility and Attorney is not retained, offering legal advice, or investigating or pursuing any claim(s) against others such as non-employee contract physicians, non-employee physician groups, non-employee nurses, non-employee nursing groups, hospitals, pharmacies or others unless specifically identified above and/or listed in any Complaint filed. Client understands if Client wishes to have such other potential claims investigated and potentially pursued, Client must retain alternative counsel.

Client understands that nursing facility cases require obtaining and review of relevant medical, nursing, and facility records and that Attorney cannot initiate any proceeding until the records are obtained and reviewed. Client understands that until Attorney obtains and reviews sufficient records the time limits for filing a claim or lawsuit continue to run and may expire during the record gathering and investigation phase.

Attorney agrees to perform the legal services reasonably required to investigate and potentially prosecute Client's personal injury claim to settlement or judgment in a trial court; and if the judgment is in Client's favor, to oppose any motion for new trial. The scope of legal services to be provided includes: initial and ongoing investigation of this incident; securing potential witnesses and evidence; gathering appropriate medical and pharmacy records, employment records, wage records, educational records and other records as appropriate; drafting, filing and responding to appropriate court documents; selection and retention of experts, consultants and investigators as necessary; appearance at court proceedings, depositions and arbitrations; conducting settlement negotiations; preparing for and conducting trial as appropriate and necessary; and maintaining appropriate contact with Client throughout. Client understands that initial and ongoing work includes investigating the claim and that if it is determined that it is not valid, feasible, reasonable or practical to prosecute or if

an impasse or irreconcilable disagreement develops as to the value of the claim or how the claim should further be prosecuted, Cellino Law LLP. shall have the right to withdraw from further representation.

To aid in the preparation, prosecution and resolution of Client's case, it may become necessary to hire expert witnesses, consultants, medical lien resolution services, and others. Client authorizes Attorney to incur all reasonable costs and to hire investigators, consultants, expert witnesses, medical lien resolution services, and others as necessary. Client understands that the cost for experts, consultants and lien resolution services, if any, would be costs (disbursements) deducted from Client's recovery.

3.      Limitation of Representation:

Attorney is representing Client only on the matter described in Paragraphs 1. and 2. Attorney's representation does not include independent or related matters that may arise, including, among other things claims for unpaid billing, property damage, claims regarding the necessity and/or cost of services rendered, placement of resident, retention of resident at the facility, transfer or discharge of resident out of facility, disputes with health care providers, hospitals and others about the amount owed for their services, or claims of a lien or a right for reimbursement (subrogation) by any benefit program, insurance company or social services agency for benefits paid, eligibility, or future benefits.

This Agreement also does not include defending Client against, or representing Client in any claims that may be asserted against Client as a cross-claim or counter-claim in Client's case. This Agreement does not apply to any other legal matters. If any such matters arise later, Attorney and Client will either negotiate a separate agreement if Client and Attorney agree that Attorney will perform such additional legal work or Client will engage separate counsel with respect to the cross-claim or counter-claim or additional legal work.

Client and Spouse (if any) understand that nursing facility claims and lawsuits may or may not include recovery for spousal (derivative) damages. Client and Spouse agree that Attorney has discretion to pursue or not to pursue a spousal/derivative/consortium cause of action and that if attorney chooses not to pursue such a cause of action; Client and Spouse will have waived that cause of action.

4.      Approval Necessary for Settlement:

Attorney will not make any settlement or compromise of any nature of any of Client's claims without Client's prior approval. Client retains the absolute right to accept or reject any settlement. Client agrees to seriously consider any settlement offer Attorney recommends before making a decision to accept or reject such offer. Client agrees not to make any settlement or compromise of any nature of any of Client's claims without prior notice to Attorney.

5.      Contingency Fee to Attorney and Litigation Costs and Expenses:

Attorneys' fees are to be charged in accordance with New York State Law. The attorneys' fee shall be **one-third** of any recovery and may be calculated, at the client's choosing, in one of two ways: (a) the costs, disbursements and litigation expenses, as described below, could be paid by the client on an on-going basis during the life of the case, in which case the one-third attorneys' fee would be calculated on the net sum recovered after deducting from the amount recovered the costs, disbursements, and litigation expenses; or (b) if the client chooses to have the law firm pay the costs, disbursements and litigation expenses during the life of the case pursuant to Judiciary Law Section

Case 3:16-md-02741-VC   Document 17115-6   Filed 08/11/23   Page 119 of 121

488(2)(d), then the one-third attorneys' fee shall be calculated on the gross sum recovered before deducting costs, disbursements, and litigation expenses.

Client chooses the following (Option a _or_ Option b):

**Option (a)____ (initials).**   **Client wishes to pay** all costs, disbursements and litigation expenses upfront throughout the case.

*or*

**Option (b)____ (initials).**   **Client wishes the law firm to pay** all costs, disbursements and litigation expenses during the case.

Client agrees to cooperate with the law firm and to promptly advise the law firm of any bankruptcies, maintenance obligations, support obligations, tax obligations, liens or the assertion of any claims or rights of recovery against the potential recovery and to update contact information. The client understands that any recovery may impact rights and eligibility for certain governmental, social services, and other benefits. The client agrees to comply with the notification requirements of any governmental, social services, or other agency prior to receiving any settlement funds.  The client understands that any recovery may or may not have tax consequences and that Attorney provides no tax advice to the client.

Client understands that any liens will be deducted from the amount of the settlement after the contingency fee along with the costs and expenses of the litigation. Attorney will not pay medical, insurance, or other bills other than specifically identified liens out of the settlement unless instructed by Client in writing. Any such unpaid medical or other bills will be Client's sole responsibility and Client will indemnify and will not hold Attorney responsible for payment of any such unpaid medical, insurance, or other bills.

6.        Form of Recovery as Affecting Contingency Fee:

In the event the recovery consists of periodic payments over a period of time (such as a structured settlement), or any other form of property which is not cash or cash-equivalent, the contingency fee shall be based on the present cash value of the recovery and shall be payable out of the first funds or property received.

7.        Change of Counsel:

Client understands that Attorney has been retained for any and all claims or causes of action that are the subject of Attorney's representation under this Agreement.  If Client has previously retained other counsel for any or all of the claims or causes of action Client has or immediately will advise prior counsel of the change in representation to Attorney.  Client understands that Client may not retain more than one counsel for the same claims or causes of action at the same time but may change counsel and discharge Attorney at any time upon written notice to Attorney.  Attorney may withdraw from representation of Client (a) with Client's consent, (b) upon court approval, or (c) if no court action has been filed, for good cause and upon reasonable notice to Client.  Good cause includes Client's breach of this contract, Client's refusal to cooperate with Attorney or to follow Attorney's advice on a material matter, Attorney's determination that the matter is not practicable or viable, or any other fact or circumstance that would render Attorney's continuing representation impractical, unlawful or unethical.

Notwithstanding Attorney's withdrawal or Client's notice of discharge, and without regard to the reasons for the withdrawal or discharge, Client will remain obligated to pay Attorney for all costs

incurred and work performed prior to the termination. The Client understands and agrees if there is a change of counsel, Cellino Law LLP will have an attorney's lien on the file for costs and attorneys fees and that Client will receive no monies until Cellino Law LLP is paid in full.

8.    Conclusion of Services:

When Attorney's services conclude, all unpaid charges will immediately become due and payable. Attorney is authorized to use any funds held in Attorney's trust account as a deposit against costs to apply to such unpaid charges.

9.    Lien:

Client hereby grants Attorney a lien and a security interest on any and all proceeds arising out of the claims or causes of action that are the subject of Attorney's representation under this Agreement. Attorney's lien will be for any sums owing to Attorney for any unpaid costs and attorneys' fees. The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement, annuity or otherwise.  The effect of such a lien is that Attorney may be able to compel payment of fees and costs from any such funds recovered on behalf of Client even if Client has changed counsel before the end of the case.  Client agrees Client will receive no monies until Cellino Law LLP. is paid in full.

10.    Receipt of Proceeds:

All proceeds of Client's case shall be deposited into Attorney's trust account for disbursement in accordance with the provisions of this Agreement.  Client understands that resolution of liens and rights of subrogation (repayment) such as Medicare, Medicaid, private health insurance companies and others may take a significant period of time during which Client's net settlement proceeds cannot be paid to Client.

11.    Disclaimer of Guarantee:

Nothing in this Agreement and nothing in Attorney's statements to Client will be construed as a promise or guarantee about the outcome of this matter.  Attorney makes no such promises or guarantees.  There can be no assurance that Client will recover any sum or sums in this matter. There can be no assurance of the length of time this matter will take. Attorney's comments about the value, timing, or outcome of this matter, if any, are expressions of opinion only.  Client acknowledges that Attorney has made no promise or guarantees about the value, timing or outcome of this matter.

12.    Entire Agreement:

This Agreement contains the entire agreement of the parties.  No other agreement, statement or promise made on or before the effective date of this Agreement will be binding on the parties.

13.    Severability in Event of Partial Invalidity:

If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

14.    Modification by Subsequent Agreement:

This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them or an oral agreement only to the extent that the parties carry it out.

15.     Client Acknowledgment:

Client acknowledges having read all of the terms and conditions set forth in this Agreement that all questions regarding this Agreement have been answered, and that he/she fully understands and agrees to same.  Client acknowledges he/she has had sufficient time to read, review, and consider this Agreement.

16.     Arbitration and Adjudication of any Fee Dispute:

Client may have the right to arbitrate any fee dispute under the New York State Fee Dispute Resolution Program.  Client understands that this Agreement is entered into in Erie County, New York and affirmatively agrees and consents to personal jurisdiction in Erie County, New York.  Client agrees that any disputes, claim or litigation arising out of this Agreement or of Attorney's representation of Client in this matter shall be brought, heard, venued and adjudicated either through the New York State Fee Dispute Resolution Program or in Supreme or Civil Court in Erie County, New York.

17.     Copy Received by Client:

Client acknowledges receipt of a copy of this Agreement concurrently with Client's execution thereof.

**NO ATTORNEY FEES WILL BE OWED UNLESS A RECOVERY IS OBTAINED.**

**Under Option (b) NO COSTS WILL BE OWED UNLESS A RECOVERY IS OBTAINED.**

I fully understand the above information and agreement and have had any questions explained to my satisfaction.  I have had ample time to review this agreement and to reflect upon my choice of counsel.

X _____     10|25|20
**CLIENT SIGNATURE**     Date

X _____     _____
**CLIENT SIGNATURE**     Date

X _____     10-29-202_
**ATTORNEY SIGNATURE**     Date