# EXHIBIT 5

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

_____
                                          |
THE BARNES FIRM, P.C.,                    |
     500 Pearl Street, Suite 700        |          **SUMMONS**
     Buffalo, New York 14202             |
                  Plaintiff,  |
                                          |     Index No.: _____
-v-                                       |
                                          |
GOLDSTEIN GRECO, P.C.,                    |     *Presiding judge to be determined*
     200 Lakefront Blvd., #1103          |      *upon judicial assignment*
     Buffalo, New York 14202             |
BRIAN GOLDSTEIN, ESQ., and                |
     200 Lakefront Blvd., #1103          |
     Buffalo, New York 14202             |
ALEXANDER GRECO, ESQ.,                    |
     200 Lakefront Blvd., #1103          |
     Buffalo, New York 14202             |
                 Defendants. |
_____|

**TO THE ABOVE NAMED DEFENDANT(S):**

     YOU ARE HEREBY SUMMONED AND REQUIRED to appear in this action and to serve upon Plaintiff's attorney, at the address stated below, a written Answer to the attached Complaint. If this Summons is served upon you within New York State by personal service, you must respond within TWENTY (20) days after service, not including the day of service. If this Summons is not personally delivered to you within New York State, you must respond within THIRTY (30) days after service is completed, as provided by law. If you do not respond to the attached Complaint within the applicable time limitation stated above, a judgment will be entered against you by default for the relief demanded in the Complaint, together with the costs and disbursements of this action, without further notice to you.

Plaintiff designates the County of Erie as the place of trial because of the location of Plaintiff's principal place of business.

Dated:    Buffalo, New York
           July 7, 2023

DUKE HOLZMAN PHOTIADIS & GRESENS LLP

By:    s/ *Christopher M. Berloth*

Christopher M. Berloth
*Attorneys for Plaintiff*
*The Barnes Firm, P.C.*
*on its own behalf and as assignee of*
*Cellino & Barnes, P.C. and*
*Cellino Law LLP*
701 Seneca Street, Suite 750
Buffalo, New York 14210
Tel: (716) 855-1111
cberloth@dhpglaw.com

- 2 -

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

_____

|

THE BARNES FIRM, P.C.,

                              Plaintiff,

-v-

GOLDSTEIN GRECO, P.C.,
BRIAN GOLDSTEIN, ESQ., and
ALEXANDER GRECO, ESQ.,

                              Defendants.

_____

**COMPLAINT**

Index No.: _____

*Presiding judge to be determined
upon judicial assignment*

Plaintiff The Barnes Firm, P.C. ("The Barnes Firm" or "Plaintiff"), by and through its undersigned counsel, for its complaint against Defendants Goldstein Greco, P.C., Brian Goldstein, Esq., and Alexander Greco, Esq. (each a "Defendant" and collectively "Defendants"), states and alleges:

## INTRODUCTION

1.     The Barnes Firm commences and maintains this lawsuit as assignee of Cellino Law LLP ("Cellino Law") and Cellino & Barnes, P.C. ("C&B") (The Barnes Firm, C&B, and Cellino Law hereinafter collectively referred to as the "Plaintiff Firms").

2.     The instant matter arises from: (a) Defendants' improper and illicit solicitation and pirating of certain clients upon leaving the employ of Cellino Law (the "Solicited Cases"); (b) Defendants' tortious conduct, including breach of contract, in pirating the Solicited Cases; (c) the settlement of one or more of the Solicited Cases; and (d) the Plaintiff Firms' right for charging liens to be established on the Solicited Cases pursuant to Judiciary Law § 475.

3.     The instant matter is related to currently pending litigation, captioned *Cellino Law LLP, et al. v. Goldstein Greco, P.C., et al.*, Erie County Index No. 804192/2023 (the "Related

Litigation"). Thus, Plaintiff hereby refers to and incorporates all facts and exhibits set forth therein as if fully set forth herein.

4.      Cellino Law and C&B assigned The Barnes Firm all rights, whether contractual, equitable, by law, or otherwise, to handle, litigate, and/or otherwise resolve fee disputes with Defendants for the Solicited Cases at issue in this case.

5.      Thus, The Barnes Firm possesses standing, contractual, and legal right to maintain and pursue the instant litigation against Defendants on behalf of the Plaintiff Firms.

6.      For the sake of clarity, the "Solicited Cases" as defined and used in this case differ from the same term as it is defined and used in the Related Litigation. Here, Plaintiff seeks recovery only for those Solicited Cases for which it was assigned rights to pursue by Cellino Law and C&B.

7.      However, both this case and the Related Litigation clearly demonstrate and revolve around Defendants pattern of tortious conduct intended to deprive the Plaintiff Firms of legal fees and costs rightly due and owing to The Barnes Firm, Cellino Law, and C&B, respectively, and siphon those funds for their own gain.

<u>PARTIES</u>

8.      The Barnes Firm is, and at all relevant times has been, a law firm and professional corporation organized and existing under the laws of the State of New York with an office maintained for the purpose of transacting business at 500 Pearl Street, Suite 700, Buffalo, New York 14202.

9.      Cellino Law is, and at all relevant times has been, a law firm and limited liability partnership organized and existing under the laws of the State of New York with a principal

- 2 -

office maintained for the purpose of transacting business at 800 Delaware Avenue, Buffalo, New York 14209.

10.     C&B is, and at all relevant times has been, a law firm and professional corporation organized and existing under the laws of the State of New York with a prior principal office maintained for the purpose of transacting business in the State of New York.

11.     Cellino Law is a successor to C&B and obtained the right to enforce liens or claims to attorney's fees that belonged to C&B including as to certain of the Solicited Cases.

12.     The Barnes Firm is a successor to C&B and obtained the right to enforce liens or claims to attorney's fees that belonged to C&B including as to certain of the Solicited Cases.

13.     Any right that existed to enforce liens or claims to attorney's fees that belonged to C&B for the Solicited Cases at issue in this litigation has been obtained and now owned by The Barnes Firm.

14.     Upon information and belief, Defendant Goldstein Greco, P.C., is, and at all relevant times has been, a law firm and professional corporation organized and existing under the laws of the State of New York with a principal office maintained for the purpose of transacting business at 2354 Wehrle Drive, Buffalo, New York 14221.

15.     Upon information and belief, Defendant Brian Goldstein, Esq., is, and at all relevant times has been, an attorney admitted to practice law in the State of New York and is a principal of Goldstein Greco, P.C.

16.     Upon information and belief, Defendant Alexander Greco, Esq., is, and at all relevant times has been, an attorney admitted to practice law in the State of New York and is a principal of Defendant Goldstein Greco, P.C.

17.     Brian Goldstein, Esq. was previously employed as an attorney by Cellino Law and C&B.

18.     Alexander Greco, Esq., was previously employed as an attorney by Cellino Law and C&B.

### JURISDICTION & VENUE

19.     Venue is proper in Erie County pursuant to CPLR § 503, including, but not limited to, pursuant to Section 503(c) as the parties are New York domestic corporations, authorized to transact business within the State of New York, and maintain offices for the purpose of transacting business within Erie County.

20.     This litigation seeks both declaratory judgment and damages exceeding the jurisdictional limits of all lower courts.

21.     This Court has jurisdiction over Defendants pursuant to Article 3 of the CPLR.

### FACTS

I.     Overview of C&B and the C&B dissolution.

22.     C&B was a personal injury law firm performing legal services in the State of New York, among other states.

23.     Defendants Goldstein and Greco were employees of C&B.

24.     Defendant Goldstein entered into an employment agreement with C&B.

25.     Defendants Goldstein and Greco remained employed with C&B until it ceased operating as a law firm on or around October 17, 2020.

26.     C&B ceased operating as a law firm after a special proceeding was commenced in 2017 seeking the dissolution of C&B, captioned *Cellino v. Cellino & Barnes, P.C., et al.*, Erie County Commercial Division Index No. 806178/2017 (the "Dissolution Proceeding").

- 4 -

27.      After years of substantial litigation, on January 28, 2020, one of two Stipulated Orders of Dissolution was entered and filed by the Honorable Deborah A. Chimes, J.S.C. (the "First Order of Dissolution"), Ordering, among other things:

> that Cellino & Barnes, P.C. shall be dissolved voluntarily and its business affairs wound up in accordance with Article 10 of the New York Business Corporation Law . . .

(Available via NYSCEF, Dissolution Proceeding Doc. 327).

28.      Rather self-evidently, the First Order of Dissolution did not equate to a legal dissolution of C&B as an entity, but rather an Order that C&B would be dissolved in the future pursuant to a winding down process. *See id.*

29.      This is particularly true as C&B is still an entity existing pursuant to the laws of the State of New York for the purposes of winding up the corporation's affairs.

30.      Indeed, C&B continued to operate as a fully operational law firm for months after the First Dissolution Order was entered. The parties to the Dissolution Proceeding engaged in substantial, and confidential, settlement negotiations to effectuate the winding down process, which occurred contemporaneously with C&B's continued operations.

31.      Part of the winding-up process includes ensuring that the two successor firms of C&B—Cellino Law and The Barnes Firm —will properly compensate C&B for the work it performed on behalf of its clients.

32.      One of the crucial components of winding down C&B is ensuring the fair and equitable split of fees that results from any liens C&B is entitled to for cases for which it was counsel of record prior to dissolution.

33.      The parties were able to agree to terms, which ultimately resulted in the Court entering a second Stipulated Order of Dissolution (the "Second Dissolution Order").

34. The Second Dissolution Order, entered June 18, 2020, Ordered, in pertinent part:

> That Cellino & Barnes will be entitled to assert attorneys charging liens on cases that transfer to other firms, and that as to cases that transfer to either the new Cellino firm [Cellino Law] or the new Barnes firm [The Barnes Firm], Cellino & Barnes shall be entitled to a lien determined pursuant to the following "Quantum Meruit Calculation," namely that as to any transferred case, Cellino & Barnes will be entitled to a percentage of the attorneys' fee equivalent to the ratio of time the new firm retained the case compared to Cellino & Barnes. . . . This court specifically approves the "Quantum Meruit Calculation" as a fair and equitable way to determine the appropriate attorney's lien amount pursuant to Judiciary Law section 475.

(Available via NYSCEF, Dissolution Proceeding Doc. 342).

35. Accordingly, while C&B ceased operating as a law firm in October 2020, it still exists as a corporate entity, with a right to liens on its cases, as evidenced by Court Order.

36. Furthermore, C&B's successor firms, Cellino Law and The Barnes Firm, continue to represent the C&B clients' interests pursuant to the terms of the Dissolution Orders and settlement agreement.

37. The C&B clients were properly informed of their right to choose counsel and subsequently elected new counsel after C&B ceased operating as a law firm—most of whom elected to select either Cellino Law or The Barnes Firm as their new counsel.

38. As such, as of October 17, 2020, Cellino Law began serving as counsel for a large percentage of former C&B clients.

II. Defendants' Employment Post Dissolution

39. Cellino Law began operating as a personal injury law firm in October 2020. Most of its attorneys and staff were formerly employed by C&B, having elected to proceed with Cellino Law after C&B ceased operating as a law firm (the other C&B employees having largely selected to be employed by The Barnes Firm).

Case 3:16-md-02741-VC   Document 17115-7   Filed 08/11/23   Page 10 of 35

40. Two of the attorneys who elected to proceed with Cellino Law were Defendants Goldstein and Greco.

41. On June 27, 2020, Defendant Greco entered into an employment agreement with Cellino Law.

42. On June 30, 2020, Defendant Goldstein entered into an employment agreement with Cellino Law, which was subsequently amended, in part, on June 27, 2021.

III.     Overview of Cellino Law Post Dissolution

43. Initially, most, if not all, of Defendant Goldstein's and Defendant Greco's caseloads at Cellino Law were prior C&B cases.

44. Defendants Goldstein and Greco worked for Cellino Law for nearly two years.

45. In that time, Defendants Goldstein and Greco were made privy to and obtained certain of the Plaintiff Firms' confidential and proprietary information, business secrets, and work product (collectively "Confidential Information") by exploiting the confidential, trusting, and loyal relationship with Cellino Law and C&B. Such information was provided to Defendants Goldstein and Greco in confidence pursuant to that confidential relationship.

46. The confidential and proprietary information, business secrets, and work product obtained by Defendants Goldstein and Greco (and subsequently misappropriated by Defendants, as further alleged below) belonged to both Cellino Law and C&B.

47. As a successor to C&B, Cellino Law was provided certain rights to C&B's confidential and proprietary information, business secrets, and work product (the remainder of such rights being provided to The Barnes Firm as the other successor to C&B).

48. Unbeknownst to the Plaintiff Firms at the time, Defendants Goldstein and Greco were misappropriating the Plaintiff Firms' resources, property, and Confidential Information in a

- 7 -

duplicitous plot to create a competing firm, including planning and executing a campaign of illicit solicitation of the Plaintiff Firms' clients (consisting of both C&B clients and Cellino Law clients).

IV.     Defendants' pre-resignation surreptitious soliciting of C&B and Cellino Law Cases.

49.     On or around August 26, 2022, a client of Cellino Law hand delivered a signed retainer agreement to Cellino Law's office; the retainer agreement was on the letterhead of and for "Goldstein Greco, P.C."

50.     This retainer demonstrated that Defendants had started their own law firm and evidently intended to leave Cellino Law.

51.     After investigating the new firm, Cellino Law learned that Defendants formed Goldstein Greco, P.C., by filing with the Department of State over a month prior, on July 19, 2022.

52.     Defendant Goldstein's and Defendant Greco's employment with Cellino Law terminated no later than September 30, 2022.

53.     Ultimately, the Plaintiff Firms learned that prior to that termination, Defendants Goldstein and Greco had been: (i) engaging in pre-resignation surreptitious solicitation and pirating of the Plaintiff Firms' clients for personal gain; (ii) misappropriating the Plaintiff Firms' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) misrepresenting to Cellino Law and its shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Cellino Law on short notice and taking the client files; (vi) failing to maintain and spoliating the Plaintiff Firms' records in the process; (vii) absconding with the Plaintiff Firms' Confidential Information, as

well as using that Confidential Information in competition with, and to the detriment of, the Plaintiff Firms; (viii) engaging in self-interested transactions to the injury of the Plaintiff Firms; (ix) failing to advance the interest of Cellino Law while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from Cellino Law's employ; (x) mismanaging the Plaintiff Firms' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from Cellino Law's employ as well as their solicitation and pirating of clients.

54.     For instance, prior to notifying Cellino Law of their pending resignation, Defendants drafted and circulated a letter to certain clients that was sent on Goldstein Greco, P.C. letterhead (the "Pre-Resignation Solicitation").

55.     In addition to being an improper pre-resignation surreptitious solicitation, the Pre-Resignation Solicitation was improper for a variety of other reasons, including:

    a.    Defendants misrepresented their status, equating themselves to Cellino Law;

    b.    Defendants misrepresented that they were moving the entire Cellino Law Mass Tort department to the newly established Goldstein Greco, P.C. firm;

    c.    Defendants misappropriated the goodwill and business reputation of the Plaintiff Firms as their own; and

    d.    Defendants misappropriated and infringed upon valid trademarks owned and paid for by the Plaintiff Firms.

56.     The August 26, 2022, hand delivery by a then-client of Cellino Law of an executed Goldstein Greco, P.C., engagement agreement was only further demonstrative of Defendants' pre-resignation surreptitious solicitation.

57.     Upon information and belief, Defendants had been secretly planning their separation from Cellino Law for months, during which time Defendants:

a.   Continued to be appointed to Cellino Law's intake schedule for new clients, which Defendants intentionally did to pirate new clients to their to-be-formed firm and which Cellino Law would not have permitted to continue had it known about Defendants' wrongful conduct and plans to depart;

b.   Took, copied, and/or misappropriated the Plaintiff Firms' work product to be used at Goldstein Greco, P.C.;

c.   Degraded and disparaged Cellino Law, its attorneys, and its leadership;

d.   Misrepresented the status of Cellino Law to current employees in an attempt to convince them to leave Cellino Law's employment;

e.   Directed client calls that came to Cellino Law's office to their personal and/or new firm contact information in an attempt to maintain secrecy of their pirating scheme;

f.   Ostensibly rejected cases on behalf of Cellino Law only to subsequently represent the client(s) so that Cellino Law had no purported claim to the file; and

g.   Took Cellino Law office supplies to set up Goldstein Greco, P.C.

58.   Additionally, Defendant Goldstein executed certain consent to change attorney forms on behalf of both Goldstein Greco, P.C. and Cellino Law.

59.   Shortly after confronting Defendants about their improper conduct, Cellino Law became aware of an estimated 150 to 200 retainer agreements that had been obtained by Defendants of the Plaintiff Firms' former clients.

60.   Upon information and belief, Defendants first targeted those of the Plaintiff Firms' clients whom they believed to be the most valuable clients—in other words those whose cases had the highest estimated settlement/resolution value.

61.    It also became clear that Defendants delayed settling cases while employed at Cellino Law in an apparent attempt to gain entitlement to legal fees for which Goldstein Greco, P.C., had and has no right.

62.    Upon information and belief, Defendants have also attempted to settle matters without putting them into suit for the purpose of avoiding filing fees and common benefit fees associated with Mass Tort cases.

63.    As a result, many of the Solicited Cases are not publicly filed permitting the Plaintiff Firms to monitor the same in order to pursue fees.

V.    <u>The Solicited Cases</u>

64.    The clients for each Solicited Case retained C&B to represent their interests in the personal injury lawsuits that underly this litigation.

65.    The C&B Retainer provided, among other things, that C&B would be entitled to a contingency attorney's fee of any settlement amount or recovery for each Solicited Case, before the subtraction of disbursements and/or expenses, as compensation for C&B's services on the clients' behalf.

66.    On or around October 25, 2020, after the Order of dissolution of C&B there was an agreement between Cellino Law and The Barnes Firm as to which cases each firm would have a right to pursue and engage—subject to the client's choice of counsel—and which cases each firm agreed not to solicit.

67.    Defendants were aware of these restrictions and agreements.

68.    Notably, even then, in October 2020, Defendant Goldstein violated his obligations not to solicit cases, and solicited certain Mass Tort cases away from The Barnes Firm.

- 11 -

69.     While The Barnes Firm and Cellino Law were able to resolve the disputes that arose from Goldstein's transgressions of soliciting cases, there were separate fee-splitting arrangements agreed to between The Barnes Firm and Cellino Law as a result.

70.     Thus, of the Solicited Cases at issue in this case, there are two categories of such cases: (1) those cases C&B, The Barnes Firm, and Cellino Law agreed that Cellino Law, as one of the successors to C&B, would retain the rights to represent, subject to client approval (the "Cellino Law Cases"); and (2) those cases C&B, The Barnes Firm, and Cellino Law agreed that The Barnes Firm, as one of the successors to C&B, would retain the rights to represent, subject to client approval, but for which Defendant Goldstein improperly solicited (the "TBF Mass Tort Cases").

71.     Defendants were and are aware of the agreements between Cellino Law, The Barnes Firm, and C&B regarding the TBF Mass Tort Cases, the resolution of Defendant Goldstein's solicitation, and the agreement to distribute attorneys fees between the parties for those cases.

72.     With respect to the Cellino Law Cases, on or around October 25, 2020, after the Second Order of Dissolution and the creation of Cellino Law as one of the successors to C&B, Cellino Law entered into a written retainer agreement with each respective client, which set forth the terms of Cellino Law's representation and professional relationship with each client (hereinafter Cellino Law's retainer agreement being referred to as the "Cellino Law Retainer"; the C&B Retainer and Cellino Law Retainer hereinafter collectively referred to as the "Retainer Agreements").

73.     With respect to the TBF Mass Tort Cases, after resolution of the disputes that arose from Goldstein's improper solicitation, Cellino Law also entered into Cellino Law Retainer with each respective client.

74.     The Cellino Law Retainer provided, among other things, that Cellino Law would be entitled to a contingency attorney's fee of any settlement amount or recovery for the Solicited Cases, as compensation for Cellino Law's services on the clients' behalf.

## VI.     The Plaintiff Firms' Charging Liens

75.     Consistent with the Retainer Agreements and Cellino Law's and/or C&B's professional relationship with the clients, the Plaintiff Firms performed substantial services on the clients' behalf, including, but not limited to, as the case may be:

a.      conducting initial interviews;

b.      investigating the circumstances of the accident/injury;

c.      identifying responsible parties;

d.      investigating the nature and extent of injuries experienced;

e.      identifying and notifying insurance carriers that might provide coverage;

f.      obtaining and analyzing relevant medical records;

g.      extensively communicating with the administrator;

h.      communicating with insurance carriers;

i.      analyzing viable causes of action;

j.      drafting and filing a summons and complaint;

k.      completing discovery demands, including bills of particulars and supplementing bills of particulars;

l.      conducting depositions;

m.      completing any necessary motion practice, expert consideration, and retention; and

- 13 -

      n.     attending     preliminary     conferences,     compliance conferences, and settlement conferences.

76.     Both Cellino Law and C&B assert a claim and lien to the attorney's fees received or to be received on each and every Solicited Case and elect to be compensated on a percentage basis, based on the proportionate share of the work performed by each firm that had been retained.

77.     There is a subcategory of the TBF Mass Tort Cases that The Barnes Firm also asserts a claim and lien to the attorney's fees received or to be received, and elect to be compensated on a percentage basis, based on the proportionate share of the work performed by each firm that had been retained.

78.     More specifically, prior to the Dissolution Proceeding, certain of the TBF Mass Tort Cases were engaged, retained, and services performed by The Barnes Firm (the "TBF Originated Cases").

79.     During the Dissolution Proceeding, as a result of certain disputes raised therein and attempts at resolving the same, those TBF Originated Cases were, upon client consent, transferred to C&B.

80.     Therefore, The Barnes Firm maintains its claim for a lien to the attorney's fees received or to be received on the TBF Originated Cases.

81.     Irrespective of whether the Solicited Cases are deemed a Cellino Law Case, TBF Mass Tort Case, and/or TBF Originated Case, the Plaintiff Firms and Defendants have not agreed on the allocation of the attorney's fees received for any of the Solicited Cases, including the repayment of disbursements incurred by the Plaintiff Firms.

## FIRST CAUSE OF ACTION
## DECLARATION AND ESTABLISHMENT OF THE PLAINTIFF FIRMS' CHARGING LIEN FOR THE SOLICITED CASES

82.     The Plaintiff Firms have a common law right and/or a statutory lien pursuant to Judiciary Law § 475 to recover their due and owing attorneys' fees and legal costs.

83.     With respect to the statutory lien, New York Judiciary Law § 475 provides:

> From the commencement of an action . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

84.     The Barnes Firm commenced, appeared in, and engaged in litigation for certain of the Solicited Cases, more specifically the TBF Originated Cases.

85.     The Barnes Firm therefore has a valid and enforceable charging lien pursuant to New York Judiciary Law § 475 and New York common law for those TBF Originated Cases.

86.     During the Dissolution Proceeding, the TBF Originated Cases were transitioned to engagement and retention by C&B.

87.     Thus, C&B commenced, appeared in, and engaged in substantial litigation in all the Solicited Cases.

88.     C&B therefore has a valid and enforceable charging lien pursuant to New York Judiciary Law § 475 and New York common law for each and every Solicited Case.

89.     After the Second Order of Dissolution of C&B, Cellino Law was retained for, appeared in, and engaged in substantial litigation in the Solicited Cases.

Case 3:16-md-02741-VC   Document 17115-7   Filed 08/11/23   Page 19 of 35

90.     Cellino Law therefore has a valid and enforceable charging lien pursuant to New York Judiciary Law § 475 and New York common law for each and every Solicited Case.

91.     In or around August 2022, Cellino Law received notification that Defendants had engaged in an illicit campaign of soliciting and poaching the Plaintiff Firms' cases and that the clients represented in the Solicited Cases had retained Defendant Goldstein Greco, P.C., to substitute as counsel.

92.     However, that transfer of representation does nothing to diminish or alter the Plaintiff Firms' pre-existing charging liens for any of the Solicited Cases.

93.     The Plaintiff Firms' charging liens came "into existence, without notice or filing, upon commencement of the action or proceeding." *LMWT Realty*, 85 N.Y.2d at 467-68.

94.     Upon information and belief, many of the Solicited Cases have not been resolved to date.

95.     Upon information and belief, some of the Solicited Cases have been resolved, and the settlement funds have already been determined and/or remitted to Defendants.

96.     However, even prior to resolution, the Plaintiff Firms have a common law right and/or a statutory lien pursuant to Judiciary Law § 475 to obtain the value of their services based on the proportionate share of the work performed by each of them and the Defendants, meaning that each firm should obtain a percentage of the attorney's fee representing its proportionate share of the work performed by each firm on the whole case.

97.     C&B is entitled to recover a percentage of the ultimate award in each Solicited Case that represents its proportionate share of the work performed while it was counsel of record (the "C&B SC-Share").

98.     Cellino Law is entitled to recover a percentage of the ultimate award in each Solicited Case that represents its proportionate share of the work performed while it was counsel of record (the "Cellino Law SC-Share").

99.     The Barnes Firm is entitled to recover a percentage of the ultimate award in each TBF Originated Case that represents its proportionate share of the work performed while it was counsel of record (the "TBF Share")

100.    The Plaintiff Firms are also entitled to recover the total amount of disbursements incurred during their respective representation in the Solicited Cases.

101.    The Plaintiff Firms have incurred a combined total of outstanding disbursements due and owing in the Solicited Cases, which should be reimbursed to the Plaintiff Firms by Defendants (the "SC-Disbursements").

102.    Therefore, the Plaintiff Firms are entitled to judgment declaring and establishing a valid and enforceable charging lien for C&B, Cellino Law, and The Barnes Firm, as applicable, in accordance with Judiciary Law § 475: (i) for the SC-Disbursements and (ii) an additional amount to be apportioned to each Plaintiff Firm for past and current attorneys' fees due and owing for each Solicited Case, to be issued upon the resolution of each case.

<u>SECOND CAUSE OF ACTION</u>
BREACH OF CONTRACT
CELLINO LAW EMPLOYMENT AGREEMENT

103.    The Plaintiff Firms repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

104.    Defendants Goldstein and Greco entered into employment agreements with Cellino Law to serve as employee-attorneys and provide legal services to Cellino Law's clients

(the "Cellino Law Employment Agreements") and, in return for which, Cellino Law was required to compensate Defendants Goldstein and Greco pursuant to the terms set forth therein.

105.    The Cellino Law Employment Agreements were and are valid and binding contracts.

106.    Defendants breached the express and implied terms of the Cellino Law Employment Agreements by, among other things, (i) engaging in pre-resignation surreptitious solicitation and pirating of the Plaintiff Firms' clients for personal gain; (ii) misappropriating the Plaintiff Firms' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) misrepresenting to Cellino Law's shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Cellino Law on short notice and taking the client files; (vi) failing to maintain and spoliating the Plaintiff Firms' records in the process; (vii) absconding with the Plaintiff Firms' Confidential Information, as well as using that Confidential Information in competition with and to the detriment of the Plaintiff Firms; (viii) engaging in self-interested transactions to the injury of the Plaintiff Firms; (ix) failing to advance the interest of Cellino Law while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from Cellino Law's employ; (x) mismanaging the Plaintiff Firms' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from the Plaintiff Firms' employ as well as their solicitation and pirating of clients.

107.    As a direct and proximate cause of Defendant Goldstein's and Defendant Greco's conduct, Cellino Law has suffered and will continue to suffer substantial monetary damages.

108.     The Plaintiff Firms' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by the Plaintiff Firms.

109.     Defendant Goldstein's and Defendant Greco's wrongful conduct is imputed upon Defendant Goldstein Greco, P.C.—the law firm they created to aid them in breaching their contract and to compete with Cellino Law.

110.     Accordingly, Plaintiff is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

<u>THIRD CAUSE OF ACTION</u>
BREACH OF CONTRACT
C&B EMPLOYMENT AGREEMENT, RESTRICTIVE COVENANTS

111.     The Plaintiff Firms repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

112.     Defendants Goldstein and Greco entered into employment agreements with C&B to serve as employee-attorneys and provide legal services to C&B clients (the "C&B Employment Agreements") and, in return for which, C&B was required to compensate Defendants Goldstein and Greco pursuant to the terms set forth therein.

113.     The C&B Employment Agreements were and are valid and binding contracts.

114.     Plaintiff C&B performed under the C&B Employment Agreements.

115.     The C&B Employment Agreements contain express and implied terms which remain in full force and effect to date, despite the Dissolution Proceeding and subsequent employment of Defendants Goldstein and Greco by Cellino Law.

116.     Specifically, C&B remains a legal entity and the contracts it interred into remain in full force and effect except to the extent the contracting party was intentionally released by C&B, which Defendants Goldstein and Greco were not.

117.     Defendants breached the express and implied terms of the C&B Employment Agreements by, among other things, (i) engaging in pre-resignation surreptitious solicitation and pirating of the Plaintiff Firms' clients for personal gain; (ii) misappropriating the Plaintiff Firms' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) misrepresenting to Cellino Law's shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Cellino Law on short notice and taking the client files; (vi) failing to maintain and spoliating the Plaintiff Firms' records in the process; (vii) absconding with the Plaintiff Firms' Confidential Information, as well as using that Confidential Information in competition with and to the detriment of the Plaintiff Firms; (viii) engaging in self-interested transactions to the injury of the Plaintiff Firms; (ix) failing to advance the interest of Cellino Law while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from Cellino Law's employ; (x) mismanaging the Plaintiff Firms' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from the Plaintiff Firms' employ as well as their solicitation and pirating of clients.

118.     As a direct and proximate cause of Defendant Goldstein's and Defendant Greco's conduct, C&B has suffered and will continue to suffer substantial monetary damages.

119.     The Plaintiff Firms' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to

- 20 -

Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by the Plaintiff Firms.

120.    Defendant Goldstein's and Defendant Greco's wrongful conduct is imputed upon Defendant Goldstein Greco, P.C.

121.    Accordingly, Plaintiff is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

FOURTH CAUSE OF ACTION
BREACH OF CONTRACT
THIRD-PARTY BENEFICIARY

122.     The Plaintiff Firms repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

123.    At all relevant times, Defendants Goldstein and Greco had valid and binding contracts with Cellino Law—the Cellino Law Employment Agreements.

124.    The Cellino Law Employment Agreements have both express and implied terms for the intended benefit of third parties, including C&B and The Barnes Firm.

125.    Among such intended benefits was the performance of legal work for clients (at a level and standard, and pursuant to certain ethical considerations, as the Plaintiff Firms felt would benefit their clients), for which C&B and The Barnes Firm would receive a portion of any legal fee compensation procured.

126.    The intended benefit to C&B and The Barnes Firm, both express and implied, demonstrates that the contracting parties assumed a duty to compensate C&B and/or The Barnes Firm, as applicable on a case by case basis, if its benefit was lost.

- 21 -

127.    For instance, C&B and Cellino Law entered a separate contract to ensure the continued representation of legal clients in the aftermath of the Dissolution Proceeding in an effective and ethical fashion and to ensure the best overall result on behalf of the clients.

128.    This contract contained specific compensation terms and a waterfall provision to ensure the fair remuneration to C&B for Cellino Law's right to seek retention by certain of C&B's clients.

129.    Additionally, The Barnes Firm and Cellino Law entered a separate agreement to ensure the continued representation of legal clients for the TBF Mass Tort Cases (including the TBF Originated Cases), in the aftermath of Defendant Goldstein's improper solicitation, in an effective and ethical fashion and to ensure the best overall result on behalf of the clients.

130.    This contract contained specific compensation terms and an amended waterfall provision to ensure the fair remuneration to The Barnes Firm for Cellino Law's right to seek retention by certain of The Barnes Firm's clients.

131.    Defendants, having been employed by C&B and Cellino Law, were made aware of these contracts and had specialized knowledge thereof as a result of both their confidential status and relationship with the Plaintiff Firms and their unique involvement in the disputes that arose during the Dissolution Proceeding.

132.    Moreover, Defendants had actual and specialized knowledge of C&B's and The Barnes Firm's status as an intended third-party beneficiary under the Cellino Law Employment Agreements.

133.    Indeed, Defendant Goldstein entered into specific compensation terms intended to benefit him monetarily for work done on the TBF Mass Tort Cases.

134.    Notwithstanding, Defendants solicited various clients to breach their contract with Cellino Law so that they could obtain the clients' legal work for Defendants' own personal gain.

135.    This breach was to the detriment of each of the Plaintiff Firms.

136.    Defendants breached the express and implied terms of the employment contracts with Cellino Law by, among other things, (i) engaging in pre-resignation surreptitious solicitation and pirating of the Plaintiff Firms' clients for personal gain; (ii) misappropriating the Plaintiff Firms' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) misrepresenting to Cellino Law's shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Cellino Law on short notice and taking the client files; (vi) failing to maintain and spoliating the Plaintiff Firms' records in the process; (vii) absconding with the Plaintiff Firms' Confidential Information, as well as using that Confidential Information in competition with and to the detriment of the Plaintiff Firms; (viii) engaging in self-interested transactions to the injury of the Plaintiff Firms; (ix) failing to advance the interest of Cellino Law while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from Cellino Law's employ; (x) mismanaging the Plaintiff Firms' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from the Plaintiff Firms' employ as well as their solicitation and pirating of clients.

137.    As the intended third-party beneficiaries to the Cellino Law Employment Agreements, C&B and The Barnes Firm have the right to enforce the Cellino Law Employment Agreements and to seek full benefits as provided thereunder or otherwise seek redress as necessary for Defendants' breaches.

- 23 -

138.   As a direct and proximate cause of Defendant Goldstein's and Defendant Greco's conduct, C&B and The Barnes Firm have suffered and will continue to suffer substantial monetary damages.

139.   The Plaintiff Firms' damages include, but are not limited to, any portion of the attorneys' fees awarded for Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by the Plaintiff Firms.

140.   Defendant Goldstein's and Defendant Greco's wrongful conduct is imputed upon Defendant Goldstein Greco, P.C.—the law firm they created to aid them in breaching their contract and to compete with Cellino Law.

141.   Accordingly, Plaintiff is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

<u>FIFTH CAUSE OF ACTION</u>
BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
EMPLOYMENT AGREEMENTS

142.   The Plaintiff Firms repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

143.   New York law provides that every contract contains an implied covenant of good faith and fair dealing.

144.   Both the Cellino Law Employment Agreements and the C&B Employment Agreements contain an implied covenant of good faith and fair dealing.

145.   Pursuant to the implied covenant of good faith and fair dealing, even if not specifically stated in the contract(s), it is implied or understood that each party to the contract

Case 3:16-md-02741-VC   Document 17115-7   Filed 08/11/23   Page 28 of 35

must act in good faith and deal fairly with the other party in performing or enforcing the terms of the contract(s).

146.    To act in good faith and deal fairly, a party must act in a way that is honest and faithful to the agreed purposes of the contract and consistent with the reasonable expectations of the parties.

147.    A party must not act in bad faith, dishonestly, or with improper motive to destroy or injure the right of the other party to receive the benefits of the contract(s).

148.    Defendants aforesaid conduct, as fully set forth in this Complaint as a whole, breached the implied covenant of good faith and fair dealing in the Cellino Law Employment Agreements and C&B Employment Agreements.

149.    As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, the Plaintiff Firms have suffered, and will continue to suffer, substantial monetary damages.

150.    The Plaintiff Firms' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by the Plaintiff Firms.

151.    Defendant Goldstein's and Defendant Greco's wrongful conduct is imputed upon Defendant Goldstein Greco, P.C.—the law firm they created to aid them in breaching their contract and to compete with Cellino Law.

152.    Accordingly, Plaintiff is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

<u>SIXTH CAUSE OF ACTION</u>
TORTIOUS INTERFERENCE WITH CELLINO LAW'S CONTRACT

153.    The Plaintiff Firms repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

154.    Cellino Law has had and continues to have contracts with various legal clients throughout New York and the United States.

155.    In many instances, these contracts first arose between C&B and the client; however, C&B and Cellino Law entered into an agreement whereby Cellino Law would have the right to pursue and seek to enter into contracts with certain of C&B's clients.

156.    Cellino Law did, in fact, enter into contracts with certain of C&B's clients as well as certain of its own clients.

157.    Defendants had knowledge of the contracts Cellino Law entered into with its and C&B's clients.

158.    Defendants, having been employed by C&B and Cellino Law, were made aware of these contracts as a result of both their confidential status and relationship with the Plaintiff Firms and their unique involvement in the disputes that arose during the Dissolution Proceeding.

159.    Defendants solicited various clients to breach their contract with Cellino Law so that they could obtain the clients' legal work for Defendants' own personal gain.

160.    Defendants intentionally interfered with the contract between Cellino Law and its clients.

161.    As a direct and proximate result of Defendants' tortious interference with contract, Cellino Law has suffered and will continue to suffer substantial monetary damages.

162.    The Plaintiff Firms' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Solicited Cases that may be apportioned to Defendant Goldstein

- 26 -

Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by the Plaintiff Firms.

163.   Accordingly, Plaintiff is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

<u>SEVENTH CAUSE OF ACTION</u>
TORTIOUS INTERFERENCE WITH C&B'S AND THE BARNES FIRM'S CONTRACTS

164.   The Plaintiff Firms repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

165.   C&B and Cellino Law entered into a contract to ensure the continued representation of legal clients, in the aftermath of the Dissolution Proceeding, in an effective and ethical fashion and to ensure the best overall result on behalf of the clients.

166.   The Barnes Firm and Cellino Law also entered into a contract to ensure the continued representation of legal clients, in the aftermath of Defendant Goldstein's solicitation of the TBF Mass Tort Clients, in an effective and ethical fashion and to ensure the best overall result on behalf of the clients

167.   Since these contracts first arose between C&B and the client and/or The Barnes Firm and the Client, as applicable, Cellino Law entered into an agreement with C&B and The Barnes Firm, as applicable, whereby Cellino Law would have the right to pursue and seek to enter into contracts with certain of C&B's and/or The Barnes Firm's clients.

168.   The contract entered into between C&B and Cellino Law provided inherent benefit to C&B, both in terms of monetary value and assurances of proper handling of clients' matters.

169.    The contract entered into between The Barnes Firm and Cellino Law provided inherent benefit to The Barnes Firm, both in terms of monetary value and assurances of proper handling of clients' matters.

170.    Defendants had knowledge of the contracts entered between Cellino Law and C&B and The Barnes Firm, respectively, including the terms, details, and specifications set forth therein.

171.    Defendants, having been employed by C&B and Cellino Law, were made aware of these contracts as a result of both their confidential status and relationship with the Plaintiff Firms and their unique involvement in the disputes that arose during the Dissolution Proceeding.

172.    Defendants engaged in tortious conduct, including, but not limited to, (i) soliciting various clients to terminate their relationship with Cellino Law, (ii) breaching Defendants' own contracts with Cellino Law, and (iii) misrepresenting information and facts to various clients so that Defendants could obtain the clients' legal work for Defendants' own personal gain.

173.    Defendants intentionally interfered with the contract between C&B and Cellino Law.

174.    Defendants intentionally interfered with the contract between The Barnes Firm and Cellino Law.

175.    As a direct and proximate result of Defendants' tortious interference with contract, C&B has suffered and will continue to suffer substantial monetary damages.

176.    As a direct and proximate result of Defendants' tortious interference with contract, The Barnes Firm has suffered and will continue to suffer substantial monetary damages

177.    The Plaintiff Firms' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Solicited Cases that may be apportioned to Defendant Goldstein

Case 3:16-md-02741-VC   Document 17115-7   Filed 08/11/23   Page 32 of 35

Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by the Plaintiff Firms.

178.    Accordingly, Plaintiff is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

EIGHTH CAUSE OF ACTION
UNFAIR COMPETITION AND MISAPPROPRIATION

179.    The Plaintiff Firms repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

180.    Defendants converted the Plaintiff Firms' Confidential Information and property unlawfully and without authorization while employed at Cellino Law.

181.    Defendants have retained that Confidential Information and property after their employment was terminated and in their business operations of Goldstein & Greco P.C.

182.    Defendants interfered with the Plaintiff Firms' right to their Confidential Information and property.

183.    Moreover, Defendants misappropriated the fruits of the Plaintiff Firms' labors, skills, and expenditures through deceptive acts and/or abuse of Defendants' fiduciary and confidential relationship with the Plaintiff Firms by obtaining and using the Plaintiff Firms' Confidential Information and property that was developed over the course of many years.

184.    Defendants obtained the Plaintiff Firms' Confidential Information and property by exploiting the confidential, trusting, and loyal relationship with the Plaintiff Firms while Defendants Goldstein and Greco were employees, agents, and representatives of Cellino Law and/or C&B, and when such information was provided to Defendants in confidence pursuant to that confidential relationship.

- 29 -

185.    As a direct result of Defendants' actions, the Plaintiff Firms have suffered, and will continue to suffer, damage to their business, in an amount to be determined at trial, including consequential damages, harm to their reputation and goodwill, costs, expenses, and other losses. This irreparable injury includes, but is not limited to, irreversible disruption of attorney-client relationships

186.    Defendants' pre-resignation surreptitious solicitation and pirating of the Plaintiff Firms' clients, along with all conduct engaged in to effectuate the same, constitutes a deceptive act or practice in the conduct of Defendants' business, trade, or commerce and in the furnishing of services to consumers and therefore a violation of New York Law.

187.    Upon information and belief, Defendants' acts were done with knowledge of this violation of law and were done in bad faith.

188.    It would be unjust and inequitable for Defendants to retain the benefit of such misappropriation and unfair competition without making restitution to the Plaintiff Firms.

189.    Therefore, Plaintiff seeks judgment against Defendants for all damages caused by their unfair competition and misappropriation including (i) directing Defendants, any of their agents, representatives, affiliates, employees, and anyone acting in concert with them or under their control to return any of the Plaintiff Firms' Confidential Information or property they possess; (ii) enjoining Defendants from using the Plaintiff Firms' Confidential Information or property; and (iii) awarding judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

NINTH CAUSE OF ACTION
UNJUST ENRICHMENT

190.    The Plaintiff Firms repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

- 30 -

191.     Defendants engaged in unjust and inequitable conduct whereby Defendants have been enriched to the detriment of the Plaintiff Firms.

192.     Defendants have been enriched under circumstances which were unjust and inequitable.

193.     It would be unjust and inequitable for Defendants to retain the benefit of such enrichment without making restitution to the Plaintiff Firms.

194.     Defendants' unjust enrichment includes, but is not limited to, any portion of the attorneys' fees awarded for the Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by the Plaintiff Firms.

195.     Accordingly, Plaintiff is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

<u>CONCLUSION</u>

WHEREFORE,  Plaintiff demands judgment against Defendants following a judicial (non-jury) hearing to be held, as follows:

(1)     On the First Cause of Action, judgment declaring and establishing a valid and enforceable charging lien for the Plaintiff Firms, in accordance with Judiciary Law § 475: (i) for the SC-Disbursements and (ii) an amount to be apportioned quantum meruit to each Plaintiff Firm for past and current attorneys' fees due and owing for each Solicited Case, to be determined upon the resolution of each case

(2)     On the Second Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(3)     On the Third Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

- 31 -

(4) On the Fourth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(5) On the Fifth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(6) On the Sixth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(7) On the Seventh Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(8) On the Eighth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(9) On the Ninth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest; and

(10) The costs and disbursements associated with this action together with all such other and further relief as this Court finds just and proper.

Dated:   Buffalo, New York
         July 7, 2023

DUKE HOLZMAN PHOTIADIS & GRESENS LLP

By:   s/ *Christopher M. Berloth*
      Christopher M. Berloth
      *Attorneys for Plaintiff*
      *The Barnes Firm, P.C.*
      *on its own behalf and as assignee of*
      *Cellino & Barnes, P.C. and*
      *Cellino Law LLP*
      701 Seneca Street, Suite 750
      Buffalo, New York 14210
      Tel: (716) 855-1111
      cberloth@dhpglaw.com

- 32 -