# EXHIBIT 6

UNITED STATES DIDTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE: ETHICON PHYSIOMESH      MDL DOCKET NO. 2782
FLEXIBLE COMPOSITE      1:17-MD-02782-RWS
HERNIA MESH PRODUCTS
LIABILITY LITIGATION

This document relates to:

| | |
|---|---|
| Daniel C. Jasinski and Jean M. Jasinski | Civil Action No.: 1:20-cv-00593-RWS |
| Charles Malci and Theresa Malci | Civil Action No.: 1:20-cv-00659-RWS |
| Abraham Miles | Civil Action No.: 1:20-cv-04915-RWS |
| Eric D. Mussinan and Daniella Mussinan | Civil Action No.: 1:20-cv-00599-RWS |
| Alice K. Rothenberger | Civil Action No.: 1:20-cv-01877-RWS |
| Jedword Williams | Civil Action No.: 1:20-cv-00600-RWS |

## **VERIFIED PETITION/MOTION TO SETTLE ATTORNEYS' FEES**

Petitioner BRIAN A. GOLDSTEIN individually and on behalf of GOLDSTEIN GRECO, P.C., respectfully petitions this Court to settle attorneys' fees in the above captioned matters and respectfully states the following upon information and belief:

### **HISTORY**

1. Petitioner BRIAN A. GOLDSTEIN, was and remains the attorney of record in each of the above captioned matters from inception to the present.

2. Petitioner GOLDSTEIN GRECO, P.C., is a law firm and professional corporation organized and existing under the laws of the State of New York with a principal office located at 2354 Wehrle Drive, Buffalo, New York 14221.

3. ROSS M. CELLINO, is an attorney admitted to practice law in the State of New York, a former principal of CELLINO & BARNES, PC and a principal of CELLINO LAW, LLP.

4. CELLINO & BARNES, PC (hereinafter CELLINO & BARNES) was a law firm and professional corporation that, pursuant to dissolution proceedings brought by ROSS M. CELLINO, was dissolved on or about October 9, 2021.

5. CELLINO LAW, LLP (hereinafter CELLINO LAW) is a law firm and professional corporation organized and existing under the laws of the State of New York with a principal office located at 800 Delaware Avenue, Buffalo, New York 14209.

6. BRIAN A. GOLDSTEIN established the Mass Tort department at CELLINO & BARNES in 2002. For the next *nineteen* (19) *years* he managed that department.

7. Upon the dissolution of CELLINO & BARNES in 2021, BRIAN A. GOLDSTEIN brought his clients with him and established and managed the Mass Tort department at CELLINO LAW.

**8. BRIAN A. GOLDSTEIN <u>personally paid and contributed</u> a *pro rata* share of the salary of the CELLINO & BARNES' associate attorney in the Mass Tort Department.**

**9. BRIAN A. GOLDSTEIN <u>personally paid and contributed</u> a *pro rata* share of staff salaries, supplies, and advertising at CELLINO & BARNES for the Mass Tort Department.**

10. CELLINO & BARNES and CELLINO LAW extensively capitalized on BRIAN A. GOLDSTEIN's quality of representation, results, credentials, and skills in contribution to their practice overall as well as in advertising for personal injury and Mass Tort cases (Exhibit J).

11. In addition to web advertising BRIAN A. GOLDSTEIN was the only attorney other than ROSS M. CELLINO and STEPHEN E. BARNES themselves (principals of CELLINO & BARNES) to ever appear in TV commercials advertising for Mass Tort cases at CELLINO & BARNES.

12. In addition to web advertising BRIAN A. GOLDSTEIN was the only attorney other than ROSS M. CELLINO and STEPHEN E. BARNES themselves (principals of CELLINO & BARNES) to ever appear in firm brochure at CELLINO & BARNES (Exhibit J).

13. BRIAN A. GOLDSTEIN was the *only* attorney at CELLINO & BARNES and the *only* attorney at CELLINO LAW admitted to practice before this Court (MDL. No. 2782).

14. BRIAN A. GOLDSTEIN was and remains the only attorney of record for these claimants.

15. Each of the at-issue claimants throughout their Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation was represented solely by BRIAN A. GOLDSTEIN at CELLINO & BARNES and/or at CELLINO LAW and at GOLDSTEIN GRECO, P.C.

16. Retainer dates for each claimant are as follows (CELLINO & BARNES, Exhibit G; CELLINO LAW, Exhibit H; GOLDSTEN GRECO, Exhibit I):

| Claimant | Cellino & Barnes, PC | Cellino Law, LLP | Goldstein Greco, PC |
|---|---|---|---|
| Jasinski, Daniel | 10/04/2018 | 10/27/2020 | 10/03/2022 |
| Macli, Charles | 10/21/2017 | 11/02/2020 | 10/03/2022 |
| Miles, Abraham | 10/27/2017 | 12/07/2020 | 10/03/2022 |
| Mussinan, Eric | 09/30/2019 | 11/16/2020 | 10/03/2022 |
| Rothenberger, Alice | 06/13/2017 | 10/30/2020 | 10/03/2022 |
| Williams, Jedword | 12/24/2018 | 10/28/2020 | 10/03/2022 |

## CELLINO & BARNES

17. CELLINO & BARNES was a personal injury firm with no Mass Tort department. BRIAN A. GOLDSTEIN established, developed, and managed the Mass Tort department beginning in 2002 through 2021. **BRIAN A. GOLDSTEIN personally paid a *pro rata* portion of salaries, advertising and supplies for the Mass Tort department.**

18. On May 10, 2017 ROSS M. CELLINO instituted proceedings against his law firm CELLINO & BARNES and his partner of 20+ years STEPHEN E. BARNES aimed at disolution. The acrimonious litigation spanned years and ultimately resulted in the dissolution of CELLINO & BARNES on or about October 9, 2021 when CELLINO LAW became operational.

19. Four and one half (4 1/2) years of very public toxic proceedings were extensively reported nationally and regionally which understandably raised severe client concerns, a lack of confidence in the Firm, and questions regarding the viability of the Firm.

20. Attorneys were repeatedly urged to directly reassure each client that **their individual lawyer was their lawyer** and that their individual lawyer would continue to be **their lawyer** regardless of what happened to the firm.

21. Attorneys were repeatedly required "to contact **your clients** to reassure them that **YOU** will continue to represent them…."(empasis provided); to "call **your clients** to blunt the affect of this negative publicity"; to assuage **your clients'** "concern and consternation" from the "further negative publicity" and to "again contact **your clients** to put them at ease and assure them… that the client's cases will not be affected" (empasis provided). (Exhibit A).

22. When ROSS M. CELLINO purportedly was "*forced* to file for full receivership" the spectre of bankruptcy became paramount in clients' minds. ROSS M. CELLINO directed the lawyers to "do your best to keep **your** **clients** happy" (empasis provided). (Exhibit A).

23. Accordingly, each at-issue claimant was personally contacted and repetedly reassured by BRIAN A. GOLDSTEIN by letters and by phone calls that he (not any law firm) was their individual lawyer and that he (not any law firm) would remain their individual lawyer.

24. BRIAN A. GOLDSTEIN's assurances maintained each at-issue claimant as his client.

25. Neither BRIAN A. GOLDSTEIN nor the at-issue claimants were involved in the negotiations that ultimately dissolved CELLINO & BARNES.

26. Neither BRIAN A. GOLDSTEIN nor the at-issue claimants were made aware of the terms of the confidential settlement agreement. Neither BRIAN A. GOLDSTEIN nor the at-issue claimants agreed to the terms of the confidential settlement agreement.

27. BRIAN A. GOLDSTEIN brought his clients to CELLINO LAW.

CELLINO LAW

28. Within weeks of his opening his new firm in October 2021, ROSS M. CELLINO began claiming "cash flow" problems following his purchase and renovation of a 48,000 square foot mansion built in 1918 by the Knox family in Buffalo, New York (The Knox Mansion).

29. ROSS M. CELLINO campaigned directly and in thinly veiled writing telling the lawyers to "adjust the low value for your cases" and pressuring lawyers including BRIAN A. GOLDSTEIN to settle as many cases as possible as quickly as possible regardless of value because "we are in need of as many settlements as possible." (Exhibit B)(Exhibit C with permission).

30.	ROSS M. CELLINO further advised that he was unilaterally rescinding and would no longer abide by portions of attorney's contracts, including salaries, including BRIAN A. GOLDSTEIN.

31.	ROSS M. CELLINO terminated lawyers, wholesale terminated staff, restricted disbursements, delayed payment of disbursements, delayed payment to clients, restricted and eliminated supplies, and directly interfered with the individual lawyer's judgement and ability to properly manage their cases; including BRIAN A. GOLDSTEIN.

32.	ROSS M. CELLINO subsequently advised BRIAN A. GOLDSTEIN that he was not going to abide by yet additional provisions in his contract.

## THE AT-ISSUE MASS TORT CLAIMANTS

33.	At the dissolution of CELLINO & BARNES, BRIAN A. GOLDSTEIN brought his approximately 1,000 clients to CELLINO LAW.

34.	At inception; the Mass Tort department at CELLINO LAW had three (3) lawyers, four (4) legal assistants/paralegals and one (1) secretary.

35.	In the short period between October, 2021 and September, 2022; ROSS M. CELLINO gutted the Mass Tort lawyers and staff to two (2) lawyers (Goldstein and Greco) and (2) legal assistants/paralegals.  ROSS M. CELLINO advised that one of the two remaining legal assistants would shorlty be reassigned and would not be replaced.

36.	ROSS M. CELLINO advised  that

- he would not honor additional portions of BRIAN A. GOLDSTEIN's contract
- he would no longer pay "overhead" to prosecute the Mass Tort cases
- BRIAN A. GOLDSTEIN should take every one of his cases
- **CELLINO LAW would <u>withdraw</u> on any case left by BRIAN A. GOLDSTEIN**
- **CELLINO LAW would have "[no further] obligation to continue representing the client(s)"**

 (Exhibit D)

37. ROSS M. CELLINO insisted that BRIAN A. GOLDSTEIN take every single one of his cases including the at-issue claimants (Exhibit D).

38. ROSS M. CELLINO told BRIAN A. GOLDSTEIN that CELLINO LAW would no longer handle Mass Tort cases and did not and would not have anyone else who could handle the Mass Tort cases (Exhibit D).

39. ROSS M. CELLINO told BRIAN A. GOLDSTEIN that it was in each Mass Tort **client's "best interest to <u>continue</u> to be represented by Goldstein"** elsewhere (Exhibit D).

40. ROSS M. CELLINO had CELLINO LAW personnel box up the Mass Tort physical files, the electronic files, and help transport all of the files to GOLDSTEN GRECO, P.C.

41. Goldstein and Greco were the *Eighteenth (18th)* and *Ninteenth (19th)* of 32 lawyers (to date) no longer at CELLINO LAW in the short time since its inception (Exhibit E).

42. ROSS M. CELLINO unilaterally terminated BRIAN A. GOLDSTEIN's contract effective September 1, 2022 (Exhibit D).

43. These clients were told to leave. The clients could not stay at CELLINO LAW. ***CELLINO LAW would no longer represent them*** and ***CELLINO LAW would <u>withdraw</u> on any client that did not leave*** (Exhibit D).

44. BRIAN A. GOLDSTEIN did not sneak out with cases. BRIAN A. GOLDSTEIN did not steal files.

45. BRIAN A. GOLDSTEIN, attorney for his clients, necessarily continued his clients' cases at GOLDSTEIN GRECO, P.C.

46. *Seven (7) months later*, CELLINO LAW bulk e-mailed a form letter to every counsel name it could find listed on the public MDL website claiming "a lien for attorney's fees" and a demand it "be named as an additional payee on any settlement check that may be issued" (Exhibit F).

47. The instant Petition is necessarily filed.

## ATTORNEYS' FEES

48. This Court has ancillary jurisdiction to address attorneys' fees arising out of litigation pending before it. *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2nd Cir. 1988). Attorneys' fees are considered substantive under the *Erie* doctrine and New York law is properly applied here. *RLS Assocs., LLC v. United Bank of Kuwait, PLC*, 464 F. Supp. 2d 206, 213 (SDNY 2006); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 228 (2nd Cir. 1998).

49. Here, CELLINO & BARNES dissolved. The at-issue claimants (and BRIAN A. GOLDSTEIN) had no knowledge of - and no agreement with - any of the terms of the dissolution.

50. Whatever obligations may or may not exist in the confidential dissolution settlement agreement innur to the parties to that agreement themselves. The at-issue claimants (and BRIAN A. GOLDSTEIN) have no privity with the dissolved CELLINO & BARNES or with The BARNES FIRM which also arose out of the dissolution.

The Discharge

51. The at-issue claimants were discharged <u>by</u> CELLINO LAW.

52. Moreover, it is axiomatic that a discharge is <u>for cause</u> when:

- **When the law firm <u>no longer wishes to provide services</u> to the client "given the nature of their respective cases"**

- **When "<u>it is in the best interest of the client… to continue to be represented by Goldstein</u>" elsewhere**

- **When the law firm wants <u>no further "legal obligation to continue to represent the client"</u>**

- **When the law firm will *WITHDRAW* from any client that does not leave (Exhibit D)**

53. Under New York law, discharge for cause forefits entitlement to a fee. *Campagnola v. Mulholland*, 76 NY2d 38 (1990); *Teichner v, A&J Holsteins*, 64 NY2d (1985); *Sprole v. Sprole*, 151 AD3d 1405 (3rd Dept 2015); *Doviak v. Lowes*, 134 AD3d 1324 (3rd Dept. 20915); *Schulz v. Hughes*, 109 AD3d 8995 (2nd Dept. 2013): *Oreendick v. Chiodo*, 272 AD2d 901 (4th Dept. 2000).

54. New York law recognizes that an attorney discharged *without cause* may recover for pre-discharge efforts: (a) through a retaining lien on files, papers and other materials in her posession; (b) through a charging lien under Judiciary Law §475; or (c) in *quantum meruit* "even where the attorney discharged without fault was employed under a contingent fee contract" *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004).

## CELLINO LAW IS NOT ENTITLED TO A CONTINGENT FEE

55. Outgoing counsel discharged *without cause* "may elect to take compensation based upon *quantum meruit*… or, in lieu thereof, the outgiong attorney has the right to elect a contingent precentage fee based upn the proportionate share of the work performed on the whole case."*Cheng v. Modansky Leasing Co.*, 73 NY2d 454 (1989) (emphasis provided); *Jones v. Birnie Bus*, 15 AD3d 951 (4th Dept. 2005).

56. Where a client discharges an attorney *wihtout cause* "… he or she may recover either (1) in *quantum meruit*… or (2) a contingent portionn of the former client;'s ultimate recovery, but only if both of the parties have so agreed." *Universal Acupuncture v Quadrono & Schwartz*, 370 F.3d 259 (2nd Cir. 2004)(emphasis provided).

57. "A contingent portion of the former client's ultimate recovery [is not available unless] both parties [the client and the outgoing attorney discharged *without cause*] have so agreed" *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004).

58. A contingent fee after discharge *without cause* is only available if "the client and [outgoing] attorney… reach a new agreement that, in lieu of a fixed dollar amount for the *quantum meruit* value of services rendered, the discharged attorney shall receive as compensation a contingent percentage of the recovery." *Nabi v. Sells*, 70 AD3d 2522 (1st Dept. 2009) (emphasis provided). However, a "[contingent percentage] arrangement of payment cannot be compelled by the attorney; it can only be reached with the consent of the client." *Nabi v. Sells*, 70 A.D.3d 252, 253, (1st Dept. 2009) (emphasis provided).

59. Here the at-issue claimants did not reach a contingent fee agreement with CELLINO LAW and CELLINO LAW has no claim to a contingent fee.

## CELLINO LAW IS NOT ENTITLED TO A RETAINING LIEN

60. An attorney discharged *without cause* may "possess a common-law retainng lien on the client's file in his or her possession…" *D'Ambrosio v. Racanelli*, 129 AD3d 900 (2nd Dept. 2015)(quoting *Sterling, L.P. v. Youngblood Senior Hous. Asssoc*, 115 AD3d (2nd Dept. 2014)(discharged attorney not entitled to contingency fee).

61. A retaining lien "applies only to papers and property of the client which are in an attorney's possession and is extinguished when that posession terminates other than by court order." *Kaplan v. Reuss*, 113 AD2d 184 (2nd Dept. 1985)(citing *IN re Cooper*, 291 NY 255 (1943).

62. A retaining lien must be "founded upon physical possession, and an attorney may forfeit its retaining lien by voluntarily giving away any of the items to which it may have attached." *Schneider v. City of New York*, 302 A.D.2d at 186 (1st Dept. 2002); *see also Bretillot v. Burrow*, No. 14CV7633 JGK MHD, 2015 WL 5306224, at *8 (S.D.N.Y. June 30, 2015). Here, Cellino not only voluntarily relinquished the file, but insisted Goldstein take possession of the file and directed Cellino personnel to assist in transferring of all the physical and the electronic files. Cellino forfeited any retaining lien. *Cf. Cheng*, 73 N.Y.2d at 459, (outgoing attorney surrendered rights to retaining lien at time that file was turned over to new counsel).

63. Moreover, an attorney asserting a retaining lein must seek a prompt hearing for a judicial determinition regarding pre-discharge services which CELLINO LAW failed to do. *Mosiello v. Velenzula*, 84 AD3d 1188 (2nd Dept. 2011).

CELLINO LAW IS NOT ENTITLED TO A CHARGING LIEN

64. Charging liens "provided for by New York Judiciary Law Section 475 is for the benefit of an 'attorney of record' only" *Weg & Myers v. Banesto Banking Corp.*, 175 AD2d 65 (1st Dept. 1991).

65. Judiciary Law §475 'grants a charging lien to an attorney [discharged *without cause*] only when there has been an appearance by that attorney in an action" *Weg & Myers v. Banesto Banking Corp.*, 175 AD2d 65 (1st Dept. 1991).

66. "[B]efore an attorney can be granted a lien pursuant to Judiciary Law § 475, he or she must have appeared for the client <u>by participating in a legal proceeding</u>…" *Picciolo v. State*, 287 A.D.2d 721,(2nd Dept. 2001)(emphasis provided).

67. Simply having the name "Cellino" on a pleading does not confer a Judiciary Law lien. *Bretillot*, 2015 WL 5306224 (discharged attorney who did work "amending plaintiff's initial [filed] Complaint, advising on matters of strategy, corresponding regarding various matters, drafting responses to filings by opposing counsel, resolving copyright issues pending before the Copyright Office, and revising the [ultimately unfiled] Amended Complaint" was not entitled to a Section 475 charging lien because he had never appeared on behalf of the party in the litigation).

68. Although CELLINO LAW may attempt to claim it "appeared;" it is undisputed that only BRIAN A. GOLDSTEIN was admitted to appear before this Court.  No one else at CELLINO & BARNES or CELLINO LAW *could have* appeared in the cases; that BRIAN A. GOLDSTEIN was the only attorney who ever appeared in the cases; that BRIAN A. GOLDSTEIN was the only attorney of record for the at-issue claimants from inception to the present day; and that "Cellino" never appeared at any proceeding.

69. Further CELLINO LAW failed to require compensation from the client be fixed at the time it was discharged. CELLINO LAW failed to seek agreement from the client as to a contingent percentage at the time of discharge. *Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454 (1989).

CELLINO LAW'S ATTORNEYS' FEE CLAIM MONTHS AFTER DISCHARGE

70. As set forth above, in these circumstances, CELLINO LAW forfeited entitlement to attorneys' fees given the nature of the discharge.

71. Clients were forced to leave under threat that **CELLINO LAW would withdraw on any client that did not leave**.

72. CELLINO LAW, of course, forfeits all fees and all costs when withdrawing from clients who would not leave.

73. Assuming *arguendo* that CELLINO LAW is permitted to try to claim a recovery sounding in *quantum meruit* **for clients who had to leave or CELLINO LAW would withdraw from their case**; New York considers "a number of variables" inlcuding (a) the time each attorney spent working on the case, (b) the nature of the work performed, (c) the relative contributions of counsel, (d) the quality of service, and € the effectiveness in ultimately resolving he matter. *Schneider, Kleinick, Weitz, Damashek & Shoot v. City of NY* 302 AD2d 183, 189, 754 NYS 2d 220 (1st Dept. 2002); *Lai Ling Cheng v. Modansky Leasing Co.*, 73 NY 2d 454 (1989).

74. Again, assuming *arguendo* that CELLINO LAW is permitted to try to claim a recovery sounding in *quantum meruit* **after it told the clients to leave or CELLINO LAW would withdraw**; New York Courts including the New York Appellate Division, Fourth Department emphasize that where an attorney departs a firm, equity mandates the most significant weight attaches to the efforts that produce the final result for the plaintiff. *Janes v. 2630 Attica Rd., Inc.*, 93 NYS 3d 626 (2016), *aff'd* 159 AD3d 1427 (4th Dept. 2018); *Lai Ling Cheng, supra*.

75. Further, New York Courts

"*recognize the efforts of [incoming counsel] <u>at both firms</u> … despite the length of time the file was at the [outgoing] firm*"
*Janes, supra.* (emphasis provided).

76. The at-issue claimants were BRIAN A. GOLDSTEIN's clients.

77. **BRIAN A. GOLDSTEIN <u>brought</u> <u>his</u> clients to CELLINO LAW**.

78. When ROSS M. CELLINO unilaterally changed and later terminated BRIAN A. GOLDSTEIN's contract; decided to stop all services to all Mass Tort clients; demanded every single Mass Tort client leave CELLINO LAW or CELLINO LAW would withdraw; and insisted CELLINO LAW wanted no "legal obligation to continue to represent the client[s]"; BRIAN A. GOLDSTEIN necessarily continued to represent his clients elsewhere.

79. **CELLINO LAW now tries a grab of "a lien for attorney's fees" for clients it <u>refused to serve</u>, <u>no longer wanted</u>, and <u>insisted leave the Firm</u> under threat that if they did not leave, <u>CELLINO LAW would withdraw from their case leaving them without representation</u>.**

80. The work done by BRIAN A. GOLDSTEIN prior to GOLDSTEIN GRECO, P.C. included client intake, the gathering and review of hernia mesh medical records, the completion and filing of the Court approved Short Form Complaint, the completion of the on-line fill in the blank Plaintiff Profile Form, review of proposed settlement program, and maintaining client contact – including advising each client of the proposed settlement program *and of ROSS M. CELLINO's decision to end representing Mass Tort clients*.

81. As the Court is aware, the Ethicon/Physiomesh releases DID NOT INCLUDE ANY SETTLEMENT DOLLAR AMOUNT. The Releases secured the client a place in the proposed settlement program pending qualification and pending reaching of the required participation threshold.

82. As the Court is also aware, the required participation threshold for the proposed settlement program was not reached until October, 2023.

83. In 2023 at GOLDSTEIN GRECO these claimants were counseled regarding the overall litigation, the strengths and weaknesses of plaintiffs' claims, the strength and aviaibility of expert opinion, FDA status of the product, the plusses and minuses and relative costs of settlement vs. litigation, liens and lien resolution, and overall liability and damages.

84. In 2023 at GOLDSTEIN GRECO these claimants' initial settlement offers were reviewed when available, their individual medical histories, status, and co-morbidities including alternative causation issues were assessed, each claimant was counseled regarding their individual initial settlement offers. Potential liens were verified. Recommendation was provided. All claimants' questions were answered.

85. Synopsis of the timeline and ongoing work include:

| Claimant | Short Form Complaint Filed | Release (without settlement amount) Returned | Subsequent/ongoing work at Goldstein Greco, PC includes but is not limited to: |
|---|---|---|---|
| Jasinski, Daniel | 02/10/2020 | 05/19/2022 | Counseled client regarding settlement values and recommendation/option/ plusses and minuses of instituting an appeal. Lien identification, verification and resolution is not complete and is still continuing. Ongoing lien verification and resolution. Communication with PSC 9/26/2022; 11/1/2022; 11/3/2022; 11/17/2022; and 4/21/2023. Communication with Lien Resolution Administrator |

| | | | | |
|---|---|---|---|---|
| | | | | (Archer Systems). Verification, completion and submission of private healthcare, Medicare and Medicaid information and lien resolution spreadsheet. Review of lien resolution holdbacks and lien resolution cost amounts. Spoke with client/client's representative 3/7/2023; and 5/2/2023. |
| | Macli, Charles | 02/07/2019 | 05/19/2022 | Counseled client regarding settlement values and recommendation/option/ plusses and minuses of instituting an appeal. Lien verification and resolution. Communication with PSC 9/26/2022; 11/1/2022; 11/3/2022; 11/17/2022; and 4/21/2023. Communication with Lien Resolution Administrator (Archer Systems). Verification, completion and submission of private healthcare, Medicare and Medicaid information and lien resolution spreadsheet. Review of lien resolution holdbacks and lien resolution cost amounts. Preparation of settlement documents. Spoke with client/client's representative 11/22/2022; 1/13/2023; 2/28/2023; 3/20/2023; 4/19/2023; 5/23/2023 and 6/21/2023. |
| | Miles, Abraham | 10/24/2018 | 10/06/2022 | Receipt and review of Release. Counseled |

| | | | | |
|---|---|---|---|---|
| | | | | client regarding settlement values and recommendation/option/ plusses and minuses of instituting an appeal. Obtained and reviewed updated medical records (revision surgery 11/15/2022). Counseled client by phone and by e-mail.  Perfected client's appeal to the Special Master on 11/16/2022 resulting in award increase from $10,000 to $40,000 on 2/6/2023. Communication with PSC 9/26/2022; 11/1/2022; 11/3/2022; 11/17/2022; and 4/21/2023. Ongoing lien verification and resolution. Verification, completion and submission of private healthcare, Medicare and Medicaid information and lien resolution spreadsheet. Communication with Lien Resolution Administrator (Archer Systems). Review of lien resolution holdbacks and lien resolution cost amounts. Spoke with client/client's representative 11/16/2022; 11/30/2022; 11/30/2022; 2/24/2023; 3/24/2023; 4/6/2023; and 5/23/2023. |
| | Mussinan, Eric | 02/10/2020 | 05/17/2022 | Counseled client regarding settlement values and recommendation/option/ plusses and minuses of instituting an appeal. Ongoing lien verification and resolution. |

| | | | Communication with PSC 9/26/2022; 11/1/2022; 11/3/2022; 11/17/2022; and 4/21/2023. Communication with Lien Resolution Administrator (Archer Systems). Verification, completion and submission of private healthcare, Medicare and Medicaid information and lien resolution spreadsheet. Review of lien resolution holdbacks and lien resolution cost amounts. Initial settlement check (portion of recovery) disbursed 3/31/2023; Continuing lien verification and resolution to enable release of remaining net funds. Spoke with client/client's representative 12/12/2022; 3/6/2023; 3/9/2023; 3/15/2023; 3/29/2023; 4/3/2023; and 6/21/23. |
|---|---|---|---|
| Rothenberger, Alice | 02/26/2019 | 05/20/2022 | Counseled client regarding settlement values and recommendation/option/ plusses and minuses of instituting an appeal. Ongoing lien verification and resolution. Communication with PSC 9/26/2022; 11/1/2022; 11/3/2022; 11/17/2022; and 4/21/2023. Communication with Lien Resolution Administrator (Archer Systems). Verification, completion and submission of private healthcare, Medicare and |

| | | | | |
|---|---|---|---|---|
| | | | | Medicaid information and lien resolution spreadsheet. Review of lien resolution holdbacks and lien resolution cost amounts. Spoke with client/client's representative 10/14/2022; 1/19/2023; 3/3/2023; 3/28/2023; 4/12/20235/2/2023; 5/30/2023; 5/31/2023; and 6/20/2023. |
| | Williams, Jedword | 02/10/2020 | 05/17/2022 | Counseled client regarding settlement values and recommendation/option/ plusses and minuses of instituting an appeal. Ongoing lien verification and resolution. Communication with PSC 9/26/2022; 11/1/2022; 11/3/2022; 11/17/2022; and 4/21/2023. Communication with Lien Resolution Administrator (Archer Systems). Verification, completion and submission of private healthcare, Medicare and Medicaid information and lien resolution spreadsheet. Review of lien resolution holdbacks and lien resolution cost amounts. Spoke with client/client's representative 12/29/2022; 2/14/2023; 3/20/2023; 3/30/2023; 4/19/2023; 4/27/2023; 5/15/2023 and 6/5/2023. |

86. Your affiant respectfully suggests that CELLINO LAW's belated claim of "a lien for attorney's fees" in these circumstances should be rejected.

87. Alternativley, your affiant respectfully requests the Court determine the manner of discharge and appropritely settle CELLINO LAW's belated claim of "a lien for attorney's fees" together with such other and further relief as deemed proper.

_____
BRIAN A. GOLDSTEIN

Sworn to before me this 26th
day of June, 2023.

_____
Notary Public / Commissioner of Deeds

ALEXANDER J GRECO
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Erie County
02GR6445934
MY COMMISSION EXPIRES 01/03/2027

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send the notification of such filing to all attorneys of record.

/s/ Brian A. Goldstein