# EXHIBIT 7

UNITED STATES DIDTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: SMITH & NEPHEW                              MDL DOCKET NO. 2775
BIRMINGHAM HIP                                     17-md-2775-CCB
RESURFACING (BHR) HIP
IMPLANT PRODUCTS LIABILITY
LITIGATION

This document relates to:

Celeste Ballzeigler-Thompson and Wayne Thompson    Civil Action No.: 1:18-cv-03480-CCB
Rebecca Conlin and David Conlin                    Civil Action No.: 1:18-cv-03638-CCB
Colleen DeJohn                                     Civil Action No.: 1:18-cv-00275-CCB
Charles Dunn and Renee Dunn                        Civil Action No.: 1:18-cv-01394-CCB
Sandra Hansen and Estate of Stanley Hansen         Civil Action No.: 1:18-cv-02560-CCB
Daniel Kelley and Susan Kelley                     Civil Action No.: 1:18-cv-01053-CCB
William Ryan                                       Civil Action No.: 1:18-cv-00279-CCB
Chris VanLeuwen                                    Civil Action No.: 1:18-cv-01211-CCB
Jess Whelan                                        Civil Action No.: 1:18-cv-00251-CCB

## VERIFIED PETITION/MOTION TO SETTLE ATTORNEYS' FEES

Petitioner BRIAN A. GOLDSTEIN individually and on behalf of GOLDSTEIN GRECO,

P.C., respectfully petitions this Court to settle attorneys' fees in the above captioned matters

and respectfully states the following upon information and belief:

### HISTORY

1.      Petitioner BRIAN A. GOLDSTEIN, was and remains the attorney of

record in each of the above captioned matters from inception to the present.

2.      Petitioner GOLDSTEIN GRECO, P.C., is a law firm and professional

corporation organized and existing under the laws of the State of New York with a

principal office located at 2354 Wehrle Drive, Buffalo, New York 14221.

3.      ROSS M. CELLINO, is an attorney admitted to practice law in the State of

New York, a former principal of CELLINO & BARNES, PC and a principal of CELLINO

LAW, LLP.

4.      CELLINO & BARNES, PC (hereinafter CELLINO & BARNES) was a law

firm and professional corporation that, pursuant to dissolution proceedings brought by

ROSS M. CELLINO, was dissolved on or about October 9, 2021.  Upon dissolution, the

individual attorney's cases "followed" their attorney to either CELLINO LAW or THE

BARNES FIRM.

5.     CELLINO LAW, LLP (hereinafter CELLINO LAW)  is a law firm and professional corporation organized and existing under the laws of the State of New York with a principal office located at 800 Delaware Avenue, Buffalo, New York 14209.

6.     THE BARNES FIRM is a law firm and professional corporation organized and existing under the laws of the State of New York with a principal office located at 500 Pearl Street, Suite 700, Buffalo, New York 14202.

7.     BRIAN A. GOLDSTEIN established the Mass Tort department at CELLINO & BARNES in 2002.  For the next *nineteen* (19) *years* he managed that department.

8.     Upon the dissolution of CELLINO & BARNES in 2021, BRIAN A. GOLDSTEIN brought his clients with him and established and managed the Mass Tort department at CELLINO LAW.

**9.     BRIAN A. GOLDSTEIN personally paid and contributed a *pro rata* share of the salary of the CELLINO & BARNES' associate attorney in the Mass Tort Department.**

**10.     BRIAN A. GOLDSTEIN personally paid and contributed a *pro rata* share of staff salaries, supplies, and advertising at CELLINO & BARNES for the Mass Tort Department.**

11.     CELLINO & BARNES and CELLINO LAW  extensively capitalized on BRIAN A. GOLDSTEIN's quality of representation, results, credentials, and skills in contribution to their practice overall as well as in advertising for personal injury and Mass Tort cases (Exhibit J).

12.     In addition to web advertising BRIAN A. GOLDSTEIN was the only attorney other than ROSS M. CELLINO and STEPHEN E. BARNES themselves (principals of CELLINO & BARNES) to ever appear in TV commercials at CELLINO & BARNES.

13.     In addition to web advertising BRIAN A. GOLDSTEIN was the only attorney other than ROSS M. CELLINO and STEPHEN E. BARNES themselves (principals of CELLINO & BARNES) to ever appear in firm brochure at CELLINO & BARNES (Exhibit J).

14.     BRIAN A. GOLDSTEIN was the *only* attorney at CELLINO & BARNES and the *only* attorney at CELLINO LAW ever admitted to practice before this Court (MDL. No. 2775).

15.     Each of the at-issue claimants throughout their Smith & Nephew Birmingham Hip Resurfacing Products Liability Litigation was represented solely by BRIAN A. GOLDSTEIN at CELLINO & BARNES and/or at CELLINO LAW and at GOLDSTEIN GRECO, P.C.

16.     As to claimant Chris VanLeuwen; septuagenarian Mr. VanLeuwen retained GOLDSTEIN GRECO on September 13, 2022.  On May 15, 2023 all settlement documents were e-mailed to him.  Mr. VanLeuwen called CELLINO LAW with a question regarding the Release.  CELLINO LAW did not direct him to his lawyers at GOLDSTEIN GRECO despite knowing he was represented and knowing who he was represented by. CELLINO LAW instead sent Mr. VanLeuwen to The Barnes Firm (the lawyers Mr. Cellino spent 4 ½ years litigating to break away from) which accepted the case already in the release stage (Exhibit K).

17.     Retainer dates for each claimant are as follows (CELLINO & BARNES, Exhibit G; CELLINO LAW, Exhibit H; GOLDSTEN GRECO, Exhibit I):

| Claimant | Cellino & Barnes, PC | Cellino Law, LLP | Goldstein Greco, PC |
|---|---|---|---|
| Ballziegler-Thompson | 03/13/2017 | 11/09/2020 | 10/03/2022 |
| Conlin | 03/06/2017 | 11/05/2020 | 10/03/2022 |
| DeJohn | 01/25/2017 | 10/26/2020 | 10/03/2022 |
| Dunn | 11/06/2017 | 11/09/2020 | 10/03/2022 |
| Hansen | 05/08/2018 | 10/27/2020 | 10/03/2022 |
| Kelley | 05/08/2018 | 12/23/2020 | 10/03/2022 |
| Ryan | 02/23/2017 | 11/05/2020 | 10/03/2022 |
| VanLeuwen | 06/19/2018 | 12/07/2020 | 10/03/2022 |
| Whelan | 04/09/2018 | 11/02/2020 | 10/03/2022 |

CELLINO & BARNES

18.     CELLINO & BARNES was a personal injury firm with no Mass Tort department.  BRIAN A. GOLDSTEIN established, developed, and managed the Mass Tort department beginning in 2002 through 2021.  **BRIAN A. GOLDSTEIN personally paid a *pro rata* portion of salaries, advertising and supplies for the Mass Tort department.**

19.     On May 10, 2017 ROSS M. CELLINO instituted proceedings against his law firm CELLINO & BARNES and his partner of 20+ years STEPHEN E. BARNES aimed

at disolution. The acrimonious litigation spanned years and ultimately resulted in the dissolution of CELLINO & BARNES on or about October 9, 2021 when CELLINO LAW became operational.

20.     Four and one half (4 1/2) years of very public toxic proceedings were extensively reported nationally and regionally which understandably raised severe client concerns, a lack of confidence in the Firm, and questions regarding the viability of the Firm.

21.     Attorneys were repeatedly urged to directly reassure each client that **their individual lawyer was their lawyer** and that their individual lawyer would continue to be **their lawyer** *regardless of what happened to the firm.*

22.     Attorneys were repeatedly required "to contact **your clients** to reassure them that **YOU** will continue to represent them…."(empasis provided); to "call **your clients** to blunt the affect of this negative publicity"; to assuage **your clients'** "concern and consternation" from the "further negative publicity" and to "again contact **your clients** to put them at ease and assure them… that the client's cases will not be affected" (empasis provided). (Exhibit A).

23.     When ROSS M. CELLINO purportedly was "*forced* to file for full receivership" the spectre of bankruptcy became paramount in clients' minds. ROSS M. CELLINO directed the lawyers to "do your best to keep **your clients** happy" (empasis provided). (Exhibit A).

24.     Accordingly, each of BRIAN A. GOLDSTEIN's at-issue claimants was personally contacted and repetedly reassured by  him by letters and by phone calls that he (not any law firm) was their individual lawyer and that he (not any law firm) would remain their individual lawyer.

25.    BRIAN A. GOLDSTEIN's assurances maintained each at-issue claimant as his client.

26.    Neither BRIAN A. GOLDSTEIN nor the at-issue claimants were involved in the negotiations that ultimately dissolved CELLINO & BARNES.

27.    Neither BRIAN A. GOLDSTEIN nor the at-issue claimants were made aware of the terms of the confidential settlement agreement. Neither BRIAN A. GOLDSTEIN nor the at-issue claimants agreed to whatever terms were contaained in the confidential settlement agreement.

28.    BRIAN A. GOLDSTEIN brought his clients to CELLINO LAW.

CELLINO LAW

29.    Within weeks of opening his new firm  in October 2021, ROSS M. CELLINO began claiming "cash flow" problems following his purchase and renovation of a 48,000 square foot mansion built in 1918 by the Knox family in Buffalo, New York (The Knox Mansion).

30.    ROSS M. CELLINO relentlessly campaigned directly and in thinly veiled writing telling the lawyers to "adjust the low value for your cases" and pressuring lawyers including BRIAN A. GOLDSTEIN to settle as many cases as possible as quickly as possible regardless of value because "we are in need of as many settlements as possible." (Exhibit B)(Exhibit C with permission).

31.    ROSS M. CELLINO further advised that he was unilaterally rescinding and would no longer abide by portions of attorney's contracts, including salaries, including BRIAN A. GOLDSTEIN.

32.    ROSS M. CELLINO terminated lawyers, wholesale terminated staff, restricted disbursements, delayed payment of disbursements, <u>delayed settlement</u>

<u>payments to clients</u>, restricted and eliminated supplies, and increasingly directly interfered with the individual lawyer's judgement and ability to properly manage their cases; including BRIAN A. GOLDSTEIN.

33.     ROSS M. CELLINO subsequently advised BRIAN A. GOLDSTEIN that he was not going to abide by yet additional provisions in his contract.

THE AT-ISSUE MASS TORT CLAIMANTS

34.     At the dissolution of CELLINO & BARNES, BRIAN A. GOLDSTEIN brought his approximately 1,000 clients to CELLINO LAW.

35.     At inception; the Mass Tort department at CELLINO LAW had three (3) lawyers, four (4) legal assistants/paralegals and one (1) secretary.

36.     In the short period between October, 2021 and September, 2022; ROSS M. CELLINO gutted the Mass Tort lawyers and staff to two (2) lawyers (Goldstein and Greco) and (2) legal assistants/paralegals.  ROSS M. CELLINO advised that one of the two remaining legal assistants would shorlty be reassigned and would not be replaced.

37.     ROSS M. CELLINO advised  that

- he would not honor additional portions of BRIAN A. GOLDSTEIN's contract
- he would no longer pay "overhead" to prosecute the Mass Tort cases
- BRIAN A. GOLDSTEIN should take every one of his cases
- **CELLINO LAW would <u>withdraw</u> on any case left by BRIAN A. GOLDSTEIN**
- **CELLINO LAW would have "[no further] obligation to continue representing the client(s)"**

 (Exhibit D)

38.     ROSS M. CELLINO insisted that BRIAN A. GOLDSTEIN take every single one of his cases including the at-issue claimants (Exhibit D).

39.     ROSS M. CELLINO told BRIAN A. GOLDSTEIN that CELLINO LAW would no longer handle Mass Tort cases and did not and would not have anyone else who could handle the Mass Tort cases (Exhibit D).

40.     ROSS M. CELLINO told BRIAN A. GOLDSTEIN that it was in each Mass Tort **client's "best interest to <u>continue</u> to be represented by Goldstein**" elsewhere (Exhibit D).

41.     ROSS M. CELLINO had CELLINO LAW personnel box up the Mass Tort physical files, the electronic files, and help transport all of the files to GOLDSTEN GRECO, P.C.

42.     Goldstein and Alex Greco were the *Eighteenth (18th)* and *Ninteenth (19th)* of 32 lawyers (to date) no longer at CELLINO LAW in the short time since its inception (Exhibit E).

43.     ROSS M. CELLINO unilaterally terminated BRIAN A. GOLDSTEIN's contract effective September 1, 2022 (Exhibit D).

44.     These clients were told to leave. The clients could not stay at CELLINO LAW. ***CELLINO LAW would no longer represent them*** and ***CELLINO LAW would <u>withdraw</u> from any client that did not leave*** (Exhibit D).

45.     BRIAN A. GOLDSTEIN and Alex Greco did not sneak out with cases. BRIAN A. GOLDSTEIN and Alex Greco did not steal files.

46.     BRIAN A. GOLDSTEIN, attorney for his clients, necessarily continued his clients' cases at GOLDSTEIN GRECO, P.C.

47.     *Seven (7) months later*, CELLINO LAW bulk e-mailed a form letter to every counsel name it could find listed on the public MDL website claiming "a lien for attorney's

fees" and a demand it "be named as an additional payee on any settlement check that may be issued" (Exhibit F).

48.    Additionally, as noted above, after the discharge CELLINO LAW referred claimant VanLeuwen to The Barnes Firm after the claimant mistakenly called CELLINO LAW instead of GOLDSTEIN GRECO with a question about his release (Exhibit K).

49.    The instant Petition is necessarily filed.

## ATTORNEYS' FEES

50.    This Court has ancillary jurisdiction to address attorneys' fees arising out of litigation pending before it.  *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2nd Cir. 1988).  Attorneys' fees are considered substantive under the *Erie* doctrine and New York law is properly applied here.  *RLS Assocs., LLC v. United Bank of Kuwait, PLC*, 464 F. Supp. 2d 206, 213 (SDNY 2006); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 228 (2nd Cir. 1998).

51.    Here, CELLINO & BARNES dissolved.  The at-issue claimants (and BRIAN A. GOLDSTEIN) had no knowledge of - and no agreement with  - any of the terms of the dissolution.

52.    Whatever obligations may or may not exist in the confidential dissolution settlement agreement innur to the parties to that agreement themselves.  The at-issue claimants (and BRIAN A. GOLDSTEIN) have no privity with the dissolved CELLINO & BARNES or with The BARNES FIRM which also arose out of the dissolution.

The Discharge

53.    The at-issue claimants were discharged <u>by</u> CELLINO LAW.

54.    Moreover, it is axiomatic that a discharge is <u>for cause</u> when:

- **When the law firm <u>no longer wishes to provide services</u> to the client "given the nature of their respective cases"**

- **When "it is in the best interest of the client… to continue to be represented by Goldstein" elsewhere**

- **When the law firm wants no further "legal obligation to continue to represent the client"**

- **When the law firm will *WITHDRAW* from any client that does not leave (Exhibit D)**

55.     Under New York law, discharge for cause forefits entitlement to a fee. *Campagnola v. Mulholland*, 76 NY2d 38 (1990); *Teichner v, A&J Holsteins*, 64 NY2d (1985); *Sprole v. Sprole*, 151 AD3d 1405 (3rd Dept 2015); *Doviak v. Lowes*, 134 AD3d 1324 (3rd Dept. 20915); *Schulz v. Hughes*, 109 AD3d 8995 (2nd Dept. 2013): *Oreendick v. Chiodo*, 272 AD2d 901 (4th Dept. 2000).

56.     New York law recognizes that an attorney discharged *without cause* may recover for pre-discharge efforts: (a) through a retaining lien on files, papers and other materials in her posession; (b) through a charging lien under Judiciary Law §475; or (c) in *quantum meruit* "even where the attorney discharged without fault was employed under a contingent fee contract" *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.* , 370 F.3d 259, 263 (2d Cir. 2004).

CELLINO LAW IS NOT ENTITLED TO A CONTINGENT FEE

57.     Outgoing counsel discharged *without cause* "may elect to take compensation based upon *quantum meruit*… or, in lieu thereof, the outgoing attorney has the right to elect a contingent precentage fee based upn the proportionate share of the work performed on the whole case."*Cheng v. Modansky Leasing Co.*, 73 NY2d 454 (1989) (emphasis provided); *Jones v. Birnie Bus*, 15 AD3d 951 (4th Dept. 2005).

58.     Where a client discharges an attorney *wihtout cause* "… he or she may recover either (1) in *quantum meruit*… or (2) a contingent portionn of the former client;'s

ultimate recovery, but only if both of the parties have so agreed." *Universal Acupuncture v Quadrono & Schwartz*, 370 F.3d 259 (2nd Cir. 2004)(emphasis provided).

59.     "A contingent portion of the former client's ultimate recovery [is not available unless] both  parties [the client and the outgoing attorney discharged *without cause*] have so agreed" *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.* , 370 F.3d 259, 263 (2d Cir. 2004).

60.     A contingent fee after discharge *without cause* is only available if "the client and [outgoing] attorney… reach a new agreement that, in lieu of a fixed dollar amount for the *quantum meruit* value of services rendered, the discharged attorney shall receive as compensation a contingent percentage of the recovery." *Nabi v. Sells*, 70 AD3d 2522 (1st Dept. 2009) (emphasis provided). However, a "[contingent percentage] arrangement of payment cannot be compelled by the attorney; it can only be reached with the consent of the client." *Nabi v. Sells*, 70 A.D.3d 252, 253, (1st Dept. 2009) (emphasis provided).

61.     Here the at-issue claimants did not reach a contingent fee agreement with CELLINO LAW and CELLINO LAW has no claim to a contingent fee.

### CELLINO LAW IS NOT ENTITLED TO A RETAINING LIEN

62.     An attorney discharged *without cause* may "possess a common-law retainng lien on the client's file in his or her possession…" *D'Ambrosio v. Racanelli*, 129 AD3d 900 (2nd Dept. 2015)(*quoting Sterling, L.P. v. Youngblood Senior Hous. Asssoc*, 115 AD3d (2nd Dept. 2014)(discharged attorney not entitled to contingency fee).

63.     A retaining lien "applies only to papers and property of the client which are in an attorney's possession and is extinguished when that posession terminates other than by court order." *Kaplan v. Reuss*, 113 AD2d 184 (2nd Dept. 1985)(*citing IN re Cooper*, 291 NY 255 (1943).

64.     A retaining lien must be "founded upon physical possession, and an attorney may forfeit its retaining lien by voluntarily giving away any of the items to which it may have attached." *Schneider v. City of New York*, 302 A.D.2d at 186 (1st Dept. 2002); *see also Bretillot v. Burrow*, No. 14CV7633 JGK MHD, 2015 WL 5306224, at *8 (S.D.N.Y. June 30, 2015). Here, Cellino not only voluntarily relinquished the files, but insisted Goldstein take possession of the files and directed Cellino personnel to assist in transferring of all the physical and the electronic files.  Cellino forfeited any retaining lien. *Cf. Cheng*, 73 N.Y.2d at 459,  (outgoing attorney surrendered rights to retaining lien at time that file was turned over to new counsel).

65.     Moreover, an attorney asserting a retaining lein must seek a prompt hearing for a judicial determinition regarding pre-discharge services which CELLINO LAW failed to do.  *Mosiello v. Velenzula*, 84 AD3d 1188 (2nd Dept. 2011).

CELLINO LAW IS NOT ENTITLED TO A CHARGING LIEN

66.     Charging liens "provided for by New York Judiciary Law Section 475 is for the benefit of an 'attorney of record' only"  *Weg & Myers v. Banesto Banking Corp.*, 175 AD2d 65 (1st Dept. 1991).

67.     Judiciary Law §475 'grants a charging lien to an attorney [discharged *without cause*] only when there has been an appearance by that attorney in an action" *Weg & Myers v. Banesto Banking Corp.*, 175 AD2d 65 (1st Dept. 1991).

68.      "[B]efore an attorney can be granted a lien pursuant to Judiciary Law § 475, he or she must have appeared for the client by participating in a legal proceeding…" *Picciolo v. State*, 287 A.D.2d 721,(2nd Dept. 2001)(emphasis provided).

69.      Simply having the name "Cellino" on a pleading does not confer a Judiciary Law lien. *Bretillot*, 2015 WL 5306224 (discharged attorney who did work "amending plaintiff's initial [filed] Complaint, advising on matters of strategy, corresponding regarding

various matters, drafting responses to filings by opposing counsel, resolving copyright issues pending before the Copyright Office, and revising the [ultimately unfiled] Amended Complaint" was not entitled to a Section 475 charging lien because he had never appeared on behalf of the party in the litigation).

70.     Although CELLINO LAW may attempt to claim it "appeared;" it is undisputed that *only* BRIAN A. GOLDSTEIN was admitted to appear before this Court. No one else at CELLINO & BARNES or CELLINO LAW *could have* appeared in the cases; that BRIAN A. GOLDSTEIN was the only attorney who ever appeared in the cases; that BRIAN A. GOLDSTEIN was the only attorney of record for the at-issue claimants from inception to the present day; and that "Cellino" never appeared at any proceeding.

71.     Further CELLINO LAW failed to require compensation from the client be fixed at the time it was discharged.  CELLINO LAW failed to seek agreement  from the client as to a contingent percentage at the time of discharge. *Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454 (1989).

CELLINO LAW'S ATTORNEYS' FEE CLAIM MONTHS AFTER DISCHARGE

72.     As set forth above, in these circumstances, CELLINO LAW forfeited entitlement to attorneys' fees given the nature of the discharge.

73.     Clients were forced to leave under threat that **CELLINO LAW would withdraw on any client that did not leave**.

74.     CELLINO LAW, of course, forfeits all fees and all costs when withdrawing from clients who would not leave.

75.     Assuming *arguendo* that CELLINO LAW is permitted to try to claim a recovery sounding in *quantum meruit* **for clients who had to leave or CELLINO LAW would withdraw from their case**; New York considers "a number of variables" inlcuding (a) the time each attorney spent working on the case, (b) the nature of the work performed,

(c) the relative contributions of counsel, (d) the quality of service, and € the effectiveness in ultimately resolving he matter. *Schneider, Kleinick, Weitz, Damashek & Shoot v. City of NY* 302 AD2d 183, 189, 754 NYS 2d 220 (1st Dept. 2002); *Lai Ling Cheng v. Modansky Leasing Co.*, 73 NY 2d 454 (1989).

76.　　Again, assuming *arguendo* that CELLINO LAW is permitted to try to claim a recovery sounding in *quantum meruit* **after it told the clients to leave or CELLINO LAW would withdraw**; New York Courts including the New York Appellate Division, Fourth Department emphasize that where an attorney departs a firm, equity mandates the most significant weight attaches to the efforts that produce the final result for the plaintiff. *Janes v. 2630 Attica Rd., Inc.,* 93 NYS 3d 626 (2016), *aff'd* 159 AD3d 1427 (4th Dept. 2018); *Lai Ling Cheng, supra*.

77.　　Further, New York Courts

"***recognize the efforts of [incoming counsel] at both firms … despite the length of time the file was at the [outgoing] firm***"
*Janes, supra.* (emphasis provided).

78.　　The at-issue claimants were and are BRIAN A. GOLDSTEIN's clients.

79.　　**BRIAN A. GOLDSTEIN brought his clients to CELLINO LAW**.

80.　　When  ROSS M. CELLINO unilaterally changed, then changed again, then terminated BRIAN A. GOLDSTEIN's contract; decided to stop all services to all Mass Tort clients; demanded every single Mass Tort client leave CELLINO LAW or CELLINO LAW would withdraw; and insisted CELLINO LAW wanted no "legal obligation to continue to represent the client[s]"; BRIAN A. GOLDSTEIN necessarily continued to represent his clients elsewhere.

**81.　　Months later CELLINO LAW now tries a grab of "a lien for attorney's fees" for clients it refused to serve, no longer wanted, and insisted leave the Firm**

**under threat that if they did not leave, <u>CELLINO LAW would withdraw from their</u> <u>case leaving them without representation</u>.**

82.     The work done by BRIAN A. GOLDSTEIN prior to GOLDSTEIN GRECO, P.C. included client intake, the gathering and review of hip implant medical records, the completion and filing of the Court approved Short Form Complaint, the completion of the Plaintiff Fact Sheet and maintaining client contact – including advising each client of *ROSS M. CELLINO's decision to end representing Mass Tort clients*.

83.     In 2023 at GOLDSTEIN GRECO these claimants were the subject of direct communication with defense on their behalves, advised of the terms of the proposed settlement program, counseled regarding the overall litigation and the strengths and weaknesses of their individual case, and counseled regarding lien resolution.

84.     In 2023 at  GOLDSTEIN GRECO releases were obtained.  Releases were reviewed including the initial settlement allocation for each claimant.  Each claimant's medical was reviewed to assess the allocated settlement value.

85.      In 2023 at  GOLDSTEIN GRECO each claimant was counseled regarding their indidual initial settlement allocation.  Discussed Cobalt and Chromium levels, head sizes, results of litigations in various head sizes, expert opinions and availability refarding defect and head size, FDA, pseudotumors, co-morbidities.  Discussed the plusses and minuses of acceptance, appeal, and rejection, liens and lien resolution (inlcuding timing and cost), disbursements and provided recommendation based upon the totality of factors.

86.     For those claimants agreeing to accept their initial award, all settlment documents were prepared, forwarded to the claimant, reviewed upon return and submitted or are in the process of being submitted.

87.     Five of the at-issue claimants were counseled to appeal their initial awards and elected to accept the recommendation.  Permission was obtained to appeal for each.

Appeals were timely initiated, submissions were prepared and submitted. Where appropriate, hearings were scheduled with the Special Master, claimant's and their families were prepared for testimoney, claimants and family members were produced at hearings,and their testomonies given, claimants' cases were argued.

88.     All appeals sucessfully increased each appealing claimants' awards.

89.     As of this date, one claimant has yet to decide regarding acceptance, appeal, or rejection.

90.     Synopsis of the timeline and ongong work include:

| CLAIMANT | SHORT FORM COMPLAINT FILED | RELEASE OBTAINED BY GOLDSTEIN GRECO | SUBSEQUENT/ONGOING WORK AT GOLDSTEIN GRECO, P.C. |
|---|---|---|---|
| Ballzeigler-Thompson | 11/12/2018 | 05/11/2023 | Updated and counseled claimant regarding the overall litigation. Counseled claimant regarding the terms of the proposed settlement program once available including options and plusses and minuses of acceptance, rejection (continuing litigation), and appeal. Obtained release and initial allocation amount. Reviewed initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal  vs. accepting settlement vs. continuing litigation. Reviewed potential liens and lien resolution, including timing and cost.<br>Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation.<br>Preparation of initial settlement documents. Reviewed returned release and settlement documents. |

| | | | Spoke with client 10/17/2022, 1/9/2023, 3/13/2023, 4/11/2023, 4/26/2023, 5/2/2023, 5/5/2023, 5/12/2023, 5/22/2023, 6/15/2023. |
|---|---|---|---|
| Conlin | 12/07/2017 | **APPEALED 5/17/2023**<br><br>**Successfully increased award** | Updated and counseled claimant regarding the overall litigation.  Counseled claimant regarding the terms of the proposed settlement program once available including options and plusses and minuses of acceptance, rejection (continuing litigation), and appeal.  Obtained release and initial allocation amount.  Reviewed initial offer including review of claimant's medical records, medical history, and current status.  Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Discussed and reviewed claimants Chromium/cobalt levels with her and her husband.  Verified metallosis levels.  Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal vs. accepting settlement vs. continuing litigation. Reviewed potential liens and lien resolution, including timing and cost. **Obtained permission to appeal.  Filed appeal. Prepared appeal submission.  Coordinated with Special Master.** Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. Spoke with client 11/29/2022, 5/12/2023, 5/15/2023, 5/16/2023, 5/17/2023, 6/20/2023. **Appeal successfully increased claimant's award $25,000.00** |
| DeJohn | 01/29/2018 | CLAIMANT DECISION PENDING RE ACCEPTANCE, APPEAL, REJECTION | Updated and counseled claimant regarding the overall litigation.  Counseled claimant regarding the terms of the proposed settlement program once available including options and plusses and minuses of acceptance, rejection (continuing litigation), and appeal.  Obtained release and initial allocation amount.  Reviewed initial offer including review of claimant's medical records, medical history, and current status.  Assessed settlement offer vs. case value and counseled client regarding overall litigation and case |

| | | | |
|---|---|---|---|
| | | | specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal  vs. accepting settlement vs. continuing litigation. Reviewed potential liens and lien resolution, including timing and cost. Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. Spoke with client 5/15/2023, 5/18/2023, 6/20/2023, 6/22/2023. |
| Dunn | 05/14/2018 | 05/15/2023 | Updated and counseled claimant regarding the overall litigation.  Counseled claimant regarding the terms of the proposed settlement program once available including options and plusses and minuses of acceptance, rejection (continuing litigation), and appeal.  Obtained release and initial allocation amount.  Reviewed initial offer including review of claimant's medical records, medical history, and current status.  Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal  vs. accepting settlement vs. continuing litigation. Reviewed potential liens and lien resolution, including timing and cost. Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. Reviewed returned settlement documents. Spoke with client 10/03/2023, 1/5/2023, 4/18/2023, 5/9/2023, 5/12/2023, 5/15/2023. |
| Hansen | 09/04/2019 | **APPEALED 5/18/2023**<br><br>**Successfully increased award** | Updated and counseled claimant regarding the overall litigation.  Counseled claimant regarding the terms of the proposed settlement program once available including options and plusses and minuses of acceptance, rejection (continuing litigation), and appeal.  Obtained release and initial |

| | | | |
|---|---|---|---|
| | | | allocation amount.  Reviewed initial offer including review of claimant's medical records, medical history, and current status.  Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal  vs. accepting settlement vs. continuing litigation. Reviewed potential liens and lien resolution, including timing and cost. **Obtained permission to appeal.  Filed appeal.  Coordinated with Special Master.** Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. Spoke with client 10/03/2022, 2/27/2023, 5/12/2023, 5/15/2023, 5/18/2023, 5/26/2023. **Appeal successfully increased claimants award $500.** |
| Kelley | 04/24/2020 | **APPEALED 5/17/2023** **HEARING HELD 6/6/2023** **Successfully increased award** | Updated and counseled claimant regarding the overall litigation.  Counseled claimant regarding the terms of the proposed settlement program once available including options and plusses and minuses of acceptance, rejection (continuing litigation), and appeal.  Obtained release and initial allocation amount.  Reviewed initial offer including review of claimant's medical records, medical history, and current status.  Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal  vs. accepting settlement vs. continuing litigation. Discussed Cobalt/Chromium levels, discussed pseudotumor, discussed head size.  Reviewed potential liens and lien resolution, including timing and cost. **Obtained permission to appeal.  Filed appeal.  Prepared appeal submission.  Coordinated hearing with Special Master. Prepared claimant and family for** |

| | | | |
|---|---|---|---|
| | | | **hearing. Attended hearing, argued case, produced claimant and family members 6/6/2023.**<br>Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation.<br>Preparation of initial settlement documents.<br>Spoke with client 10/03/2022, 5/12/2023, 5/15/2023, 5/16/2023, 5/17/2023, 6/1/2023, 6/5/2023, 6/6/2023, 6/8/2023.<br>**Appeal successfully increased claimant's award $10,000.00** |
| Ryan | 01/29/2018 | **APPEAL FILED 5/17/2023**<br><br>**HEARING HELD 6/6/2023**<br><br>**Successfully increased award** | Updated and counseled claimant regarding the overall litigation. Counseled claimant regarding the terms of the proposed settlement program once available including options and plusses and minuses of acceptance, rejection (continuing litigation), and appeal. Obtained release and initial allocation amount. Reviewed initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal vs. accepting settlement vs. continuing litigation. Reviewed potential liens and lien resolution, including timing and cost. **Obtained permission to appeal. Filed appeal. Prepared appeal submission. Coordinated hearing with Special Master. Prepared claimant and family for hearing. Attended hearing, argued case, produced claimant and family members 6/6/2023.**<br>Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation.<br>Preparation of initial settlement documents.<br>Spoke with client 10/03/2022, 5/18/2023, 5/19/2023, 6/1/2023, 6/5/2023, 6/6/2023, 6/8/2023.<br>**Appeal successfully increased claimant's award $15,000.00** |

| VanLeuwen | 1/25/2018 | COMPLETE SETTLEMENT DOCUMENTS EMAILED TO CLAIMANT 5/17/2023

Client called Cellino Law regarding the release documents and was sent by Cellino Law to the Barnes firm. | Updated and counseled claimant regarding the overall litigation.  Counseled claimant regarding the terms of the proposed settlement program once available including options and plusses and minuses of acceptance, rejection (continuing litigation), and appeal.  Obtained release and initial allocation amount.  Reviewed initial offer including review of claimant's medical records, medical history, and current status.  Assessed settlement offer vs. case value.
Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation.
Preparation of initial settlement documents. Spoke with client 09/09/2022, 10/5/2022. Called without answer 5/15/2023 and 5/16/2023.  Settlement documents emailed 5/17/2023 with cover letter to call with questions/concerns after review. |
| Whelan | 4/25/2019 | **APPEAL FILED 5/17/2023**

**HEARING HELD 6/6/2023**

**Successfully increased award** | Updated and counseled claimant regarding the overall litigation.  Counseled claimant regarding the terms of the proposed settlement program once available including options and plusses and minuses of acceptance, rejection (continuing litigation), and appeal.  Obtained release and initial allocation amount.  Reviewed initial offer including review of claimant's medical records, medical history, and current status.  Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal  vs. accepting settlement vs. continuing litigation. Reviewed potential liens and lien resolution, including timing and cost.  **Obtained permission to appeal.  Filed appeal.  Prepared appeal submission.  Coordinated hearing with Special Master. Prepared claimant and family for hearing. Attended hearing 6/6/2023.**
Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation.
Preparation of initial settlement documents. |

| | | | Spoke with client 10/04/2022, 1/5/2022, 5/17/2023, 5/26/2023, 6/1/2023, 6/2/2023, 6/5/2023, 6/6/2023, 6/8/2023, 6/16/2023. **Appeal successfully increased claimant's award $25,000.00** |
|---|---|---|---|

91.     Your affiant respectfully suggests that CELLINO LAW's belated claim of "a lien for attorney's fees" and demand "to be on the settlement check" in these circumstances should be rejected.

92.     Alternativley, your affiant respectfully requests the Court determine the manner of discharge and appropritely settle CELLINO LAW's belated claim of "a lien for attorney's fees" together with such other and further relief as deemed proper.

**BRIAN A. GOLDSTEIN**

Sworn to before me this 26th
day of June, 2023.

Notary Public / Commissioner of Deeds

ALEXANDER J GRECO
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Erie County
02GR6445934
MY COMMISSION EXPIRES 01/03/2027

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26th, 2023 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send the notification of such filing to all attorneys of record.


/s/ Brian A. Goldstein