# EXHIBIT 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

IN RE: ATRIUM MEDICAL CORP.,                    MDL DOCKET NO. 2753
C-Qur                                           1:16-MD-02753-LM
MESH PRODUCTS
LIABILITY LITIGATION

This document relates to:

| | |
|---|---|
| Jalila Ali | Civil Action No.: 1:20-cv-00079-LM |
| Lori A. Carrow | Civil Action No.: 1:20-cv-00077-LM |
| Debra K. Corey and James D. Corey | Civil Action No.: 1:20-cv-00080-LM |
| Michael Crawford | Civil Action No.: 1:20-cv-00289-LM |
| Timothy Fitzsimmons | Civil Action No.: 1:20-cv-00084-LM |
| Sean Foster | Civil Action No.: 1:20-cv-00082-LM |
| Dorothy Hill | Civil Action No.: 1:20-cv-00078-LM |
| Dean Knauss | Civil Action No.: 1:20-cv-01187-LM |
| Angeline Kroll | Civil Action No.: 1:20-cv-00075-LM |
| Bonnie Shelly | Civil Action No.: 1:20-cv-00073-LM |
| Diane Shipley | Civil Action No.: 1:20-cv-00296-LM |
| Elizabeth Walker | Civil Action No.: 1:20-cv-00210-LM |
| Cindy Winslow | Civil Action No.: 1:20-cv-01217-LM |

## <u>VERIFIED PETITION/MOTION TO SETTLE ATTORNEYS' FEES</u>

Petitioner BRIAN A. GOLDSTEIN individually and on behalf of GOLDSTEIN GRECO, P.C., respectfully petitions this Court to settle attorneys' fees in the above captioned matters and respectfully states the following upon information and belief:

## <u>HISTORY</u>

1.      Petitioner BRIAN A. GOLDSTEIN, was and remains the attorney of record in each of the above captioned matters from inception to the present.

2.      Petitioner GOLDSTEIN GRECO, P.C., is a law firm and professional corporation organized and existing under the laws of the State of New York with a principal office located at 2354 Wehrle Drive, Buffalo, New York 14221.

3.      ROSS M. CELLINO, is an attorney admitted to practice law in the State of New York, a former principal of CELLINO & BARNES, PC and a principal of CELLINO LAW, LLP.

4.     CELLINO & BARNES, PC (hereinafter CELLINO & BARNES) was a law firm and professional corporation that, pursuant to dissolution proceedings brought by ROSS M. CELLINO, was dissolved on or about October 9, 2021.

5.     CELLINO LAW, LLP (hereinafter CELLINO LAW)  is a law firm and professional corporation organized and existing under the laws of the State of New York with a principal office located at 800 Delaware Avenue, Buffalo, New York 14209.

6.     BRIAN A. GOLDSTEIN established the Mass Tort department at CELLINO & BARNES in 2002.  For the next *nineteen* (19) *years* he managed that department.

7.     Upon the dissolution of CELLINO & BARNES in 2021, BRIAN A. GOLDSTEIN brought his clients with him and established and managed the Mass Tort department at CELLINO LAW.

**8.     BRIAN A. GOLDSTEIN personally paid and contributed a *pro rata* share of the salary of the CELLINO & BARNES' associate attorney in the Mass Tort Department.**

**9.     BRIAN A. GOLDSTEIN personally paid and contributed a *pro rata* share of staff salaries, supplies, and advertising at CELLINO & BARNES for the Mass Tort Department.**

10.     CELLINO & BARNES and CELLINO LAW  extensively capitalized on BRIAN A. GOLDSTEIN's quality of representation, results, credentials, and skills in contribution to their practice overall as well as in advertising for personal injury and Mass Tort cases (Exhibit J).

11.     In addition to web advertising BRIAN A. GOLDSTEIN was the only attorney other than ROSS M. CELLINO and STEPHEN E. BARNES themselves (principals of CELLINO & BARNES) to ever appear in TV commercials at CELLINO & BARNES.

12.     In addition to web advertising BRIAN A. GOLDSTEIN was the only attorney other than ROSS M. CELLINO and STEPHEN E. BARNES themselves (principals of CELLINO & BARNES) to ever appear in firm brochure at CELLINO & BARNES (Exhibit J).

13.     BRIAN A. GOLDSTEIN was the *only* attorney at CELLINO & BARNES and the *only* attorney at CELLINO LAW ever admitted to practice before this Court (MDL. No. 2753).

14.     BRIAN A. GOLDSTEIN was and remains the only attorney of record for these claimants.

15.     Each of the at-issue claimants throughout their Atrium Medical Corp., C-Qur Hernia Mesh Products Liability Litigation was represented solely by BRIAN A. GOLDSTEIN at CELLINO & BARNES and/or at CELLINO LAW and at GOLDSTEIN GRECO, P.C.

16.     Retainer dates for each claimant are as follows (CELLINO & BARNES, Exhibit G; CELLINO LAW, Exhibit H; GOLDSTEN GRECO, Exhibit I):

| Claimant | Cellino & Barnes, PC | Cellino Law, LLP | Goldstein Greco, PC |
|---|---|---|---|
| Ali, Jalila | 08/04/2019 | 10/27/2020 | 10/03/2022 |
| Carrow, Lori | 03/15/2019 | 11/16/2020 | 10/03/2022 |
| Corey, Debra | 07/10/2019 | 10/28/2020 | 10/03/2022 |
| Crawford, Michael | 02/14/2020 | 12/30/2020 | 10/03/2022 |
| Fitzsimmons, Timothy | 07/13/2018 | 10/30/2020 | 01/12/2023 |
| Foster, Sean | 04/05/2019 | 11/02/2020 | 01/10/2023 |
| Hill, Dorothy | 06/19/2018 | 12/07/2020 | 10/03/2022 |
| Knauss, Dean | 05/16/2017 | 11/10/2020 | 10/14/2022 |
| Kroll, Angeline | 08/12/2019 | 10/26/2020 | 10/03/2022 |
| Shelley, Bonnie | 04/16/2019 | 10/30/2020 | 10/03/2022 |
| Shipley, Diane | 11/16/2018 | 11/17/2020 | 10/03/2022 |
| Walker, Elizabeth | 07/30/2019 | 11/17/2020 | 10/03/2022 |
| Winslow, Cindy | 06/12/2017 | 10/27/2020 | 10/03/2022 |

CELLINO & BARNES

17.     CELLINO & BARNES was a personal injury firm with no Mass Tort department.  BRIAN A. GOLDSTEIN established, developed, and managed the Mass Tort department beginning in 2002 through 2021.  **BRIAN A. GOLDSTEIN personally paid a *pro rata* portion of salaries, advertising and supplies for the Mass Tort department.**

18.     On May 10, 2017 ROSS M. CELLINO instituted proceedings against his law firm CELLINO & BARNES and his partner of 20+ years STEPHEN E. BARNES aimed at disolution. The acrimonious litigation spanned years and ultimately resulted in the dissolution of CELLINO & BARNES on or about October 9, 2021 when CELLINO LAW became operational.

19.     Four and one half (4 1/2) years of very public toxic proceedings were extensively reported nationally and regionally which understandably raised severe client concerns, a lack of confidence in the Firm, and questions regarding the viability of the Firm.

20.     Attorneys were repeatedly urged to directly reassure each client that **their individual lawyer was their lawyer** and that <u>their individual lawyer would continue to be</u> **their lawyer** *regardless of what happened to the firm.*

21.     Attorneys were repeatedly required "to contact **your clients** to reassure them that **YOU** will continue to represent them…."(empasis provided); to "call **your clients** to blunt the affect of this negative publicity"; to assuage **your clients'** "concern and consternation" from the "further negative publicity" and to "again contact **your clients** to put them at ease and assure them… that the client's cases will not be affected" (empasis provided). (Exhibit A).

22.     When ROSS M. CELLINO purportedly was "*forced* to file for full receivership" the spectre of bankruptcy became paramount in clients' minds. ROSS M. CELLINO directed the lawyers to "do your best to keep **your clients** happy" (empasis provided). (Exhibit A).

23.     Accordingly, each of BRIAN A. GOLDSTEIN's at-issue claimants was personally contacted and repetedly reassured by him by letters and by phone calls that <u>he</u> (not any law firm) was their individual lawyer and that <u>he</u> (not any law firm) would remain their individual lawyer.

24.     BRIAN A. GOLDSTEIN's assurances maintained each at-issue claimant as his client.

25.     Neither BRIAN A. GOLDSTEIN nor the at-issue claimants were involved in the negotiations that ultimately dissolved CELLINO & BARNES.

26.    Neither BRIAN A. GOLDSTEIN nor the at-issue claimants were made aware of the terms of the confidential settlement agreement. Neither BRIAN A. GOLDSTEIN nor the at-issue claimants agreed to whatever terms were contaained in the confidential settlement agreement.

27.    BRIAN A. GOLDSTEIN brought his clients to CELLINO LAW.

CELLINO LAW

28.    Within weeks of opening his new firm  in October 2021, ROSS M. CELLINO began claiming "cash flow" problems following his purchase and renovation of a 48,000 square foot mansion built in 1918 by the Knox family in Buffalo, New York (The Knox Mansion).

29.    ROSS M. CELLINO relentlessly campaigned directly and in thinly veiled writing telling the lawyers to "adjust the low value for your cases" and pressuring lawyers including BRIAN A. GOLDSTEIN to settle as many cases as possible as quickly as possible regardless of value because "we are in need of as many settlements as possible." (Exhibit B)(Exhibit C with permission).

30.    ROSS M. CELLINO further advised that he was unilaterally rescinding and would no longer abide by portions of attorney's contracts, including salaries, including BRIAN A. GOLDSTEIN.

31.    ROSS M. CELLINO terminated lawyers, wholesale terminated staff, restricted disbursements, delayed payment of disbursements, delayed settlement payments to clients, restricted and eliminated supplies, and increasingly directly interfered with the individual lawyer's judgement and ability to properly manage their cases; including BRIAN A. GOLDSTEIN.

32.    ROSS M. CELLINO subsequently advised BRIAN A. GOLDSTEIN that he was not going to abide by yet additional provisions in his contract.

THE AT-ISSUE MASS TORT CLAIMANTS

33.     At the dissolution of CELLINO & BARNES, BRIAN A. GOLDSTEIN brought his approximately 1,000 clients to CELLINO LAW.

34.     At inception; the Mass Tort department at CELLINO LAW had three (3) lawyers, four (4) legal assistants/paralegals and one (1) secretary.

35.     In the short period between October, 2021 and September, 2022; ROSS M. CELLINO gutted the Mass Tort lawyers and staff to two (2) lawyers (Goldstein and Greco) and (2) legal assistants/paralegals.  ROSS M. CELLINO advised that one of the two remaining legal assistants would shorlty be reassigned and would not be replaced.

36.     ROSS M. CELLINO advised  that

- he would not honor additional portions of BRIAN A. GOLDSTEIN's contract
- he would no longer pay "overhead" to prosecute the Mass Tort cases
- BRIAN A. GOLDSTEIN should take every one of his cases
- **CELLINO LAW would <u>withdraw</u> on any case left by BRIAN A. GOLDSTEIN**
- **CELLINO LAW would have "[no further] obligation to continue representing the client(s)"**
  (Exhibit D)

37.     ROSS M. CELLINO insisted that BRIAN A. GOLDSTEIN take every single one of his cases including the at-issue claimants (Exhibit D).

38.     ROSS M. CELLINO told BRIAN A. GOLDSTEIN that CELLINO LAW would no longer handle Mass Tort cases and did not and would not have anyone else who could handle the Mass Tort cases (Exhibit D).

39.     ROSS M. CELLINO told BRIAN A. GOLDSTEIN that it was in each Mass Tort **client's "best interest to <u>continue</u> to be represented by Goldstein**" elsewhere (Exhibit D).

40.     ROSS M. CELLINO had CELLINO LAW personnel box up the Mass Tort physical files, the electronic files, and help transport all of the files to GOLDSTEN GRECO, P.C.

41.     Goldstein and Alex Greco were the *Eighteenth (18th)* and *Ninteenth (19th)* of 32 lawyers (to date) no longer at CELLINO LAW in the short time since its inception (Exhibit E).

42.     ROSS M. CELLINO unilaterally terminated BRIAN A. GOLDSTEIN's contract effective September 1, 2022 (Exhibit D).

43.     These clients were told to leave. The clients could not stay at CELLINO LAW. ***CELLINO LAW would no longer represent them*** and ***CELLINO LAW would <u>withdraw</u> from any client that did not leave*** (Exhibit D).

44.     BRIAN A. GOLDSTEIN and Alex Greco did not sneak out with cases. BRIAN A. GOLDSTEIN and Alex Greco did not steal files.

45.     BRIAN A. GOLDSTEIN, attorney for his clients, necessarily continued his clients' cases at GOLDSTEIN GRECO, P.C.

46.     *Seven (7) months later*, CELLINO LAW bulk e-mailed a form letter to every counsel name it could find listed on the public MDL website claiming "a lien for attorney's fees" and a demand it "be named as an additional payee on any settlement check that may be issued" (Exhibit F).

47.     The instant Petition is necessarily filed.

## **ATTORNEYS' FEES**

48.     This Court has ancillary jurisdiction to address attorneys' fees arising out of litigation pending before it.  *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2nd Cir. 1988).  Attorneys' fees are considered substantive under the *Erie* doctrine and New York law is properly applied here.  *RLS Assocs., LLC v. United Bank of Kuwait, PLC*, 464 F. Supp. 2d 206, 213 (SDNY 2006); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 228 (2nd Cir. 1998).

49.     Here, CELLINO & BARNES dissolved.  The at-issue claimants (and BRIAN A. GOLDSTEIN) had no knowledge of - and no agreement with  - any of the terms of the dissolution.

50.     Whatever obligations may or may not exist in the confidential dissolution settlement agreement innur to the parties to that agreement themselves.  The at-issue claimants (and BRIAN A. GOLDSTEIN) have no privity with the dissolved CELLINO & BARNES or with The BARNES FIRM which also arose out of the dissolution.

The Discharge

51.     The at-issue claimants were discharged <u>by</u> CELLINO LAW.

52.     Moreover, it is axiomatic that a discharge is <u>for cause</u> when:

- **When the law firm <u>no longer wishes to provide services</u> to the client "given the nature of their respective cases"**

- **When "<u>it is in the best interest of the client… to continue to be represented by Goldstein</u>" elsewhere**

- **When the law firm wants <u>no further "legal obligation to continue to represent the client</u>"**

- **<u>When the law firm will *WITHDRAW* from any client that does not leave</u> (Exhibit D)**

53.     Under New York law, discharge for cause forefits entitlement to a fee. *Campagnola v. Mulholland*, 76 NY2d 38 (1990); *Teichner v, A&J Holsteins*, 64 NY2d (1985); *Sprole v. Sprole*, 151 AD3d 1405 (3rd Dept 2015); *Doviak v. Lowes*, 134 AD3d 1324 (3rd Dept. 20915); *Schulz v. Hughes*, 109 AD3d 8995 (2nd Dept. 2013): *Oreendick v. Chiodo*, 272 AD2d 901 (4th Dept. 2000).

54.     New York law recognizes that an attorney discharged *without cause* may recover for pre-discharge efforts: (a) through a retaining lien on files, papers and other materials in her posession; (b) through a charging lien under Judiciary Law §475; or (c) in *quantum meruit* "even where the attorney discharged without fault was employed under a contingent fee contract" *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.* , 370 F.3d 259, 263 (2d Cir. 2004).

## CELLINO LAW IS NOT ENTITLED TO A CONTINGENT FEE

55.     Outgoing counsel discharged *without cause* "may elect to take compensation based upon *quantum meruit*… or, in lieu thereof, the outgiong attorney has the right to elect a contingent precentage fee based upn the proportionate share of the work performed on the whole case."*Cheng v. Modansky Leasing Co.*, 73 NY2d 454 (1989) (emphasis provided); *Jones v. Birnie Bus*, 15 AD3d 951 (4th Dept. 2005).

56.     Where a client discharges an attorney *wihtout cause* "… he or she may recover either (1) in *quantum meruit*… or (2) a contingent portionn of the former client;'s ultimate recovery, but only if both of the parties have so agreed." *Universal Acupuncture v Quadrono & Schwartz*, 370 F.3d 259 (2nd Cir. 2004)(emphasis provided).

57.     "A contingent portion of the former client's ultimate recovery [is not available unless] both  parties [the client and the outgoing attorney discharged *without cause*] have so agreed" *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.* , 370 F.3d 259, 263 (2d Cir. 2004).

58. <u>A contingent fee after discharge *without cause* is only available if "the client</u> <u>and [outgoing] attorney… reach a new agreement</u> that, in lieu of a fixed dollar amount for the *quantum meruit* value of services rendered, the discharged attorney shall receive as compensation a contingent percentage of the recovery." *Nabi v. Sells*, 70 AD3d 2522 (1st Dept. 2009) (emphasis provided). However, a "<u>[contingent percentage] arrangement of</u> <u>payment cannot be compelled by the attorney; it can only be reached with the consent of</u> <u>the client</u>." *Nabi v. Sells*, 70 A.D.3d 252, 253, (1st Dept. 2009) (emphasis provided).

59. Here the at-issue claimants did not reach a contingent fee agreement with CELLINO LAW and CELLINO LAW has no claim to a contingent fee.

## CELLINO LAW IS NOT ENTITLED TO A RETAINING LIEN

60. An attorney discharged *without cause* may "possess a common-law retainng lien on the client's file <u>in his or her possession</u>…" *D'Ambrosio v. Racanelli*, 129 AD3d 900 (2nd Dept. 2015)(*quoting Sterling, L.P. v. Youngblood Senior Hous. Asssoc*, 115 AD3d (2nd Dept. 2014)(discharged attorney not entitled to contingency fee).

61. A retaining lien "<u>applies only to papers and property of the client which are</u> <u>in an attorney's possession</u> and is extinguished when that posession terminates other than by court order." *Kaplan v. Reuss*, 113 AD2d 184 (2nd Dept. 1985)(*citing IN re Cooper*, 291 NY 255 (1943).

62. A retaining lien must be "founded upon physical possession, and an attorney may forfeit its retaining lien by voluntarily giving away any of the items to which it may have attached." *Schneider v. City of New York*, 302 A.D.2d at 186 (1st Dept. 2002); *see also Bretillot v. Burrow*, No. 14CV7633 JGK MHD, 2015 WL 5306224, at *8 (S.D.N.Y. June 30, 2015). Here, Cellino not only voluntarily relinquished the files, but insisted Goldstein take possession of the files and directed Cellino personnel to assist in transferring of all the physical and the electronic files. Cellino forfeited any retaining

lien. *Cf. Cheng*, 73 N.Y.2d at 459, (outgoing attorney surrendered rights to retaining lien at time that file was turned over to new counsel).

63. Moreover, an attorney asserting a retaining lein must seek a prompt hearing for a judicial determinition regarding pre-discharge services which CELLINO LAW failed to do. *Mosiello v. Velenzula*, 84 AD3d 1188 (2nd Dept. 2011).

## CELLINO LAW IS NOT ENTITLED TO A CHARGING LIEN

64. Charging liens "provided for by New York Judiciary Law Section 475 is for the benefit of an 'attorney of record' only" *Weg & Myers v. Banesto Banking Corp.*, 175 AD2d 65 (1st Dept. 1991).

65. Judiciary Law §475 'grants a charging lien to an attorney [discharged *without cause*] only when there has been an appearance by that attorney in an action" *Weg & Myers v. Banesto Banking Corp.*, 175 AD2d 65 (1st Dept. 1991).

66. "[B]efore an attorney can be granted a lien pursuant to Judiciary Law § 475, he or she must have appeared for the client by participating in a legal proceeding…" *Picciolo v. State*, 287 A.D.2d 721,(2nd Dept. 2001)(emphasis provided).

67. Simply having the name "Cellino" on a pleading does not confer a Judiciary Law lien. *Bretillot*, 2015 WL 5306224 (discharged attorney who did work "amending plaintiff's initial [filed] Complaint, advising on matters of strategy, corresponding regarding various matters, drafting responses to filings by opposing counsel, resolving copyright issues pending before the Copyright Office, and revising the [ultimately unfiled] Amended Complaint" was not entitled to a Section 475 charging lien because he had never appeared on behalf of the party in the litigation).

68. Although CELLINO LAW may attempt to claim it "appeared;" it is undisputed that *only* BRIAN A. GOLDSTEIN was admitted to appear before this Court. No one else at CELLINO & BARNES or CELLINO LAW *could have* appeared in the cases;

that BRIAN A. GOLDSTEIN was the only attorney who ever appeared in the cases; that BRIAN A. GOLDSTEIN was the only attorney of record for the at-issue claimants from inception to the present day; and that "Cellino" never appeared at any proceeding.

69. Further CELLINO LAW failed to require compensation from the client be fixed at the time it was discharged. CELLINO LAW failed to seek agreement from the client as to a contingent percentage at the time of discharge. *Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454 (1989).

CELLINO LAW'S ATTORNEYS' FEE CLAIM MONTHS AFTER DISCHARGE

70. As set forth above, in these circumstances, CELLINO LAW forfeited entitlement to attorneys' fees given the nature of the discharge.

71. Clients were forced to leave under threat that **CELLINO LAW would withdraw on any client that did not leave**.

72. CELLINO LAW, of course, forfeits all fees and all costs when withdrawing from clients who would not leave.

73. Assuming *arguendo* that CELLINO LAW is permitted to try to claim a recovery sounding in *quantum meruit* **for clients who had to leave or CELLINO LAW would withdraw from their case**; New York considers "a number of variables" inlcuding (a) the time each attorney spent working on the case, (b) the nature of the work performed, (c) the relative contributions of counsel, (d) the quality of service, and € the effectiveness in ultimately resolving he matter. *Schneider, Kleinick, Weitz, Damashek & Shoot v. City of NY* 302 AD2d 183, 189, 754 NYS 2d 220 (1st Dept. 2002); *Lai Ling Cheng v. Modansky Leasing Co.*, 73 NY 2d 454 (1989).

74. Again, assuming *arguendo* that CELLINO LAW is permitted to try to claim a recovery sounding in *quantum meruit* **after it told the clients to leave or CELLINO LAW would withdraw**; New York Courts including the New York Appellate Division,

Fourth Department emphasize that where an attorney departs a firm, equity mandates the most significant weight attaches to the efforts that produce the final result for the plaintiff. *Janes v. 2630 Attica Rd., Inc.,* 93 NYS 3d 626 (2016), *aff'd* 159 AD3d 1427 (4th Dept. 2018); *Lai Ling Cheng, supra.*

75. Further, New York Courts

"***recognize the efforts of [incoming counsel] <u>at both firms</u> … despite the length of time the file was at the [outgoing] firm***"
*Janes, supra.* (emphasis provided).

76. The at-issue claimants were and are BRIAN A. GOLDSTEIN's clients.

77. **BRIAN A. GOLDSTEIN <u>brought</u> <u>his</u> clients to CELLINO LAW**.

78. When ROSS M. CELLINO unilaterally changed, then changed again, then terminated BRIAN A. GOLDSTEIN's contract; decided to stop all services to all Mass Tort clients; demanded every single Mass Tort client leave CELLINO LAW or CELLINO LAW would withdraw; and insisted CELLINO LAW wanted no "legal obligation to continue to represent the client[s]"; BRIAN A. GOLDSTEIN necessarily continued to represent his clients elsewhere.

**79. Months later CELLINO LAW now tries a grab of "a lien for attorney's fees" for clients it <u>refused to serve</u>, <u>no longer wanted</u>, and <u>insisted leave the Firm</u> under threat that if they did not leave, <u>CELLINO LAW would withdraw from their case leaving them without representation</u>.**

80. The work done by BRIAN A. GOLDSTEIN prior to GOLDSTEIN GRECO, P.C. included client intake, the gathering and review of hernia mesh medical records, the completion and filing of the Court approved Short Form Complaint, the completion of the Plaintiff Profile Form, review of proposed settlement program, and maintaining client

contact – including advising each client of the proposed settlement program *and of ROSS M. CELLINO's decision to end representing Mass Tort clients*.

81.     As the Court is aware, the C-Qur releases DID NOT INCLUDE ANY SETTLEMENT DOLLAR AMOUNT.  The Releases secured the client a place in the proposed settlement program pending qualification and pending reaching of the required participation threshold.

82.     Conferences were had with the Special Master, Claims Administrator and PSC on 01/17/2023, 05/18/2023, 06/06/2023 and 06/14/2023.

83.     As the Court is also aware, Special Master findings were not issued until 2023 and settlement values were not assigned to any of these cliamants until May, 2023.

84.     Special Master findings were reviewed.

85.     Each claimant was advised and counseled regarding Special Master findings.  Whre approprite the finding were contested, updated records obtained, and additional submissions were made.

86.     Initial values were assigned.

87.     Initial vlaues were reviewed.

88.     Each claimannt was advised and counseled regarding their initial award. Where appripriate, appeals/EIF claims were prepared and brought.

89.     At GOLDSTEIN GRECO these claimants were counseled regarding the overall litigation, the strengeths and weaknesses of plaintiffs' claims, the strength and aviaibility of expert opinion, FDA status of the product, the plusses and minuses and relative costs of settlement vs. litigation, liens and lien resolution, and overall liability and damages.

90.     At GOLDSTEIN GRECO these claimants' initial settlement offers were reviewed when available, their individual medical histories, status, and co-morbidities including alternative causation issues were assessed, each claimant was counseled regarding their individual initial settlement offers.  Potential liens were verified. Recommendation was provided.  All claimants' questions were answered.

91.     Claimants identified as defecient secondary to Estate and Bankruptcy issues (and both) as well as additional defeciencies were and are in the process of being addressed.

92.     EIF hearings are in the process of being scheduled.

93.     Synopsis of the timeline and ongong work include:

| CLAIMANT | SHORT FORM COMPLAINT FILED | RELEASE WITHOUT SETTLEMENT AMOUNT RETURNED | SUBSEQUENT/ONGOING WORK AT GOLDSTEIN GRECO, P.C. |
|---|---|---|---|
| Ali, Jalila | 01/10/2020 | 06/13/2022 | Obtained Special Master findings.  Reviewed Special Master findings with client's medical. Obtained initial settlement offer.  Reviewed initial offer including review of claimant's medical records, medical history, and current status.  Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value.  Counseled client and family and provided recommendation/option/ plusses and minuses of instituting an appeal/Extraordinary Injury (EIF) claim vs. accepting settlement vs. continuing litigation. Discussed Special Master findings. **Instituted Appeal/Extraordinary Injury (EIF) Claim.   Preparing and preparing client for EIF hearing; scheduling underway with Special Master.** Communication with PSC and Claims Administrator specifically regarding Mr. Ali |

| | | | regarding deficiencies and EIF hearing were on 4/10/2023, 6/15/2023 and 6/22/2023. Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. Spoke with client/client's representative 10/17/2022, 10/26/2022, 11/16/2022. 11/23/2022. 11/28/2022, 12/19/2022, 12/26/2022, 1/3/2023, 2/9/2023, 2/14/2023, 2/14/2023, 2/20/2023, 3/1/2023, 3/13/2023, 2/24/2023, 3/30/2023, 4/5/2023, 4/18/2023, 4/26/2023, 5/4/2023, 5/15/2023, 5/19/2023, 5/24/2023, 6/15/2023. |
|---|---|---|---|
| Carrow, Lori | 01/10/2020 | 03/27/2023 | Obtained Special Master findings. Reviewed Special Master findings with client's medical. Obtained initial settlement offer. Reviewed initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and family and provided recommendation/option/ plusses and minuses of instituting an appeal/Extraordinary Injury (EIF) claim vs. accepting settlement vs. continuing litigation. Discussed Special Master findings. Addressed initial deficiency in settlement packet, cured with client and resubmitted. Additional Bankruptcy and Estate deficiency raised by defense. In the process of addressing both the Bankruptcy and Estate deficiencies. **Instituted Appeal re Special Master findings regarding a second surgery.** Communication with the Special Master, PSC and Claims Administrator specifically regarding Ms. Carrow regarding deficiencies, further submissions, claims rejection, and estate issues were on 3/1/2023, 4/10/2023, 4/24/2023 and 6/7/2023. **Additional submission prepared and submitted to Special Master**. Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. |

| | | | Spoke with client/client's representative 01/12/2023, 03/01/2023, 3/17/2023, 3/22/2023, 3/27/2023, 5/5/2023, 5/9/2023, 5/10/2023 |
|---|---|---|---|
| Corey, Debra | 01/10/2020 | 06/13/2023 | Obtained Special Master findings. Reviewed Special Master findings with client's medical. Obtained initial settlement offer. Reviewed initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and family and provided recommendation/option/ plusses and minuses of instituting an appeal/Extraordinary Injury (EIF) claim vs. accepting settlement vs. continuing litigation. Addressed initial deficiency in settlement packet, cured with client and resubmitted. Additional Bankruptcy and Estate deficiency raised by defense. In the process of addressing both the Bankruptcy and Estate deficiencies. Discussed Special Master findings. **Instituted Appeal re Special Master determination a second surgery was unrelated to the mesh.** Communication with the Special Master, PSC and Claims Administrator specifically regarding Ms. Cory regarding deficiencies and claim rejection were on 4/10/2023 and 4/24/2023. **Additional submission prepared and submitted to Special Master.** Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. Spoke with client/client's representative 10/01/2022, 5/10/2023, 6/10/2023. |
| Crawford, Michael | 01/10/2020 | 06/14/2022 | Obtained Special Master findings. Reviewed Special Master findings with client's medical. Obtained initial settlement offer. Reviewed initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific |

| | | | |
|---|---|---|---|
| | | | value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal/Extraordinary Injury (EIF) claim vs. accepting settlement vs. continuing litigation. Discussed Special Master findings.<br>Communication with PSC and Claims Administrator specifically regarding Mr. Crawford regarding deficiencies and claim rejection were on 4/3/2023 and 4/24/2023.<br>**Additional submission prepared and submitted to Special Master**.<br>Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation.<br>Preparation of initial settlement documents.<br>Spoke with client/client's representative 11/3/2022, 11/9/2022, 1/4/2023, 1/30/2023, 2/7/2023, 2/21/2023, 2/28/2023, 3/28/2023, 4/12/2023, 4/26/2023, 5/3/2023, 5/10/2023, 5/15/2023, 5/18/2023, 5/19/2023, 5/25/2023, 6/15/2023. |
| Fitzsimmons, Timothy | 01/10/2020 | 06/23/2022 | Obtained Special Master findings. Reviewed Special Master findings with client's medical. Obtained initial settlement offer. Reviewed initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client's family regarding overall litigation and case specifics; counselled client's family regarding overall settlement values and case specific value. Counseled client's family and provided recommendation/option/ plusses and minuses of instituting an appeal/Extraordinary Injury (EIF) claim vs. accepting settlement vs. continuing litigation. Discussed Special Master findings.<br>Advised of Estate deficiency raised by defense. In the process of addressing the Estate deficiencies.<br>Communication with PSC specifically regarding Mr. Fitzsimmons regarding deficiencies and estate issues on 06/07/2023.<br>Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation.<br>Preparation of initial settlement documents. |

| | | | |
|---|---|---|---|
| | | | Spoke with client/client's representative 1/10/2023, 1/12/2023, 5/2/2023, 6/19/2023. |
| Foster, Sean | 01/10/2020 | 02/15/2023 | Obtained Special Master findings. Reviewed Special Master findings with client's medical. Obtained initial settlement offer. Reviewed initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal/Extraordinary Injury (EIF) claim vs. accepting settlement vs. continuing litigation. Discussed Special Master findings including denial of 12/21/2018 procedure as not attributable to C-Qur mesh. Communication with PSC regarding deficiencies on 02/14/2023 and 03/14/2023. Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. Cured deficiency in settlement packet 2/14/2023 – 2/16/2023). Spoke with client/client's representative 10/28/2022, 11/7/2022, 12/9/2022, 1/9/2023, 1/10/2023, 1/24/2023, 2/14/2023, 2/15/2023, 3/5/2023, 3/15/20234/18/2023, 4/28/2023, 5/24/2023. |
| Hill, Dorothy | 01/10/2020 | | Obtained Special Master findings. Reviewed Special Master findings with client's medical. Obtained initial settlement offer. Reviewed initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal/Extraordinary Injury (EIF) claim vs. accepting settlement vs. continuing litigation. Communication with PSC and Claims Administrator specifically regarding Ms. Hill regarding deficiencies and amendment of claim |

| | | | were on 1/11/2023, 1/13/2023, 1/18/2023, 1/23/2023, 1/30/2023, 1/31/2023 and 2/28/2023. Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. **Updated client's medical history. Obtained additional medical records. Successfully amended claim. Prepared new certification page and medical submission to include client's new and additional 10/2022 surgery.** Spoke with client 10/7/2022, 11/22/2022, 1/11/2023, 2/1/2023, 2/27/2023, 4/11/2023, 5/8/2023, 5/10/2023, 6/12/2023, 6/19/2023. |
|---|---|---|---|
| Knauss, Dean | 01/10/2020 | | Obtained Special Master findings. Reviewed Special Master findings with client's medical. . Obtained initial settlement offer. Reviewed initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal/Extraordinary Injury (EIF) claim vs. accepting settlement vs. continuing litigation. Discussed Special Master findings. Communication with PSC and Claims Administrator specifically regarding Mr. Knauss regarding deficiencies was on 03/23/2023. Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. Spoke with Client/Client's representative 10/13/2022, 4/20/2023, 4/24/2023, 6/15/2023. |
| Kroll, Angeline | 01/10/2020 | | Obtained Special Master findings. Reviewed Special Master findings with client's medical. Obtained initial settlement offer. Reviewed initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and family and |

| | | | |
|---|---|---|---|
| | | | provided recommendation/option/ plusses and minuses of instituting an appeal/Extraordinary Injury (EIF) claim vs. accepting settlement vs. continuing litigation. Discussed Special Master findings. **Instituted Appeal/Extraordinary Injury (EIF) Claim. Preparing and preparing client for EIF hearing; scheduling underway with Special Master.** Communication with PSC and Claims Administrator specifically regarding Ms. Kroll regarding deficiencies, late amendment of claim, claim and EIF claim were on 04/10/2023, 06/15/2023 and 06/22/2023. Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. Spoke with client/client's representative 10/7/2022, 10/13/2022, 12/6/2022, 12/20/2022, 4/19/2023, 4/21/2023, 6/7/2023, 6/15/2023. |
| Shelley, Bonnie | 01/10/2020 | | Obtained Special Master findings. Reviewed Special Master findings with client's medical. Obtained initial settlement offer. Reviewed initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal/Extraordinary Injury (EIF) claim vs. accepting settlement vs. continuing litigation. Discussed Special Master findings. Communication with PSC XXXXXX. Communication with referring attorney. Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. Spoke with Client/Client's representative 10/10/2023, 3/15/2023, 6/20/2023. |
| Shipley, Diane | 01/10/2020 | | Obtained Special Master findings. Reviewed Special Master findings with client's medical. Obtained initial settlement offer. Reviewed |

| | | | |
|---|---|---|---|
| | | | initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal/Extraordinary Injury (EIF) claim vs. accepting settlement vs. continuing litigation. Discussed Special Master findings. **Updated client's medical history. Obtained additional medical records. Prepared new certification page and medical submission to include client's new and additional 2023 surgery.** Communication with PSC and Claims Administrator specifically regarding Ms. Shipley regarding deficiencies, late amendment of claim, and claim were on 01/11/2023, 01/13/2023, 01/18/2023, 01/23/2023, 01/30/2023, 01/31/2023 and 02/06/2023. Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. Spoke with Client representative 12/6/2022, 12/28/2022, 1/10/2023, 1/11/2023, 1/12/2023, 1/18/2023, 1/20/2023, 1/24/2023, 1/30/2023, 2/2/2023, 2/5/20232/9/2023, 3/7/2023, 4/11/2023, 5/15/2023, 6/7/2023, 6/20/2023. |
| Walker, Elizabeth | 01/10/2020 | | Obtained Special Master findings. Reviewed Special Master findings with client's medical. Obtained initial settlement offer. Reviewed initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal/Extraordinary Injury (EIF) claim vs. accepting settlement vs. continuing litigation. Discussed Special Master findings. |

| | | | |
|---|---|---|---|
| | | | Communication with PSC specifically regarding Ms. Walker regarding deficiencies and claim rejection on 04/10/2023 and 04/24/2023. Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. Spoke with Client/Client's representative 10/3/2022, 3/15/2023, 4/20/2023, 6/19/2023. |
| Winslow, Cindy | 01/10/2020 | | Obtained Special Master findings. Reviewed Special Master findings with client's medical. Obtained initial settlement offer. Reviewed initial offer including review of claimant's medical records, medical history, and current status. Assessed settlement offer vs. case value and counseled client regarding overall litigation and case specifics; counselled client regarding overall settlement values and case specific value. Counseled client and provided recommendation/option/ plusses and minuses of instituting an appeal/Extraordinary Injury (EIF) claim vs. accepting settlement vs. continuing litigation. Discussed Special Master findings. Cured release/settlement document deficiency (2/14/2023). Communication with PSC specifically regarding Ms. Winslow regarding deficiencies on 02/14/2023. **Additional submission prepared and submitted to Special Master**. Verified private healthcare, Medicare and Medicaid information and other potential liens and rights of subrogation. Preparation of initial settlement documents. Spoke with Client/Client's representative 10/4/2022, 2/14/2023, 2/16/2023, 3/22/2023, 5/22/2023. |

94.     Your affiant respectfully suggests that CELLINO LAW's belated claim of "a lien for attorney's fees" and demand "to be on the settlement check" in these circumstances should be rejected.

95. Alternativley, your affiant respectfully requests the Court determine the manner of discharge and appropritely settle CELLINO LAW's belated claim of "a lien for attorney's fees" together with such other and further relief as deemed proper.

_____
**BRIAN A. GOLDSTEIN**

Sworn to before me this 26th
day of June, 2023.

_____
Notary Public / Commissioner of Deeds



## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26th, 2023 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send the notification of such filing to all attorneys of record.


/s/ Brian A. Goldstein