DUKE HOLZMAN PHOTIADIS & GRESENS LLP
Christopher M. Berloth, Esq.
*Attorneys For Third-Parties in Interest*
*Cellino & Barnes, P.C. and*
*Cellino Law LLP*
701 Seneca Street, Suite 750
Buffalo, New York 14210
(716) 855-1111
cberloth@dhpglaw.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Civ. Action No.: 3:16-md-02741-VC |

**DECLARATION**

Ross M. Cellino, Jr., declares under the penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

**OVERVIEW**

1. I am an attorney admitted to practice law in the State of New York and a principal of the two third parties in interest in this matter—Respondents Cellino & Barnes, P.C. ("Cellino & Barnes") and Cellino Law LLP ("Cellino Law") (collectively, "Respondents"). As such I have personal knowledge of the facts and circumstances in this matter.

2. I submit this Declaration in support of Cellino & Barnes and Cellino Law's motion to dismiss the "Verified Petition/Motion to Settle Attorneys' Fees" filed by Petitioner Goldstein Greco, P.C.'s ("Goldstein Greco"). (Doc. 16895).

3. The instant proceeding arises from a dispute over the allocation of attorneys' fees amongst the various firms who represented certain plaintiffs in the instant Multi-District Litigation

1  (MDL 2741). Specifically, throughout the underlying litigation, Cellino & Barnes, Cellino Law, and
2  Goldstein Greco represented the following plaintiffs in this matter:

    a.    Daniel Badzinksi;
    b.    Cynthia Vavara;
    c.    Todd Faut;
    d.    Francine Hillpot;
    e.    Bruce Lasko;
    f.    Phillip Lee;
    g.    David Leys;
    h.    John Nesbitt;
    i.    David Pietrzak;
    j.    Aaron Potter;
    k.    Norman Bauman;
    l.    Margaret Chrisman;
    m.    Leon Komm;
    n.    Richard Hammett;
    o.    Mary Ann Liesinger;
    p.    Richard Nusbaum;
    q.    Gerald Pasternak;
    r.    Paul Pierce;
    s.    Ray Duff;
    t.    George LoBianco;
    u.    Edward Struzik;
    v.    Mark Estruch;
    w.    Kelli Suchan;
    x.    Deborah Brown;
    y.    Irene Proctor;
    z.    William Frueh;
    aa.    Alphonso Faso; and
    bb.    Thomas Hill.

4. On June 26, 2023, Goldstein Greco initiated the instant proceeding in an attempt to obtain declaratory relief to "settle the attorneys' fees" for these respective matters, but in actuality to have the Court declare Cellino & Barnes and Cellino Law's attorneys' liens invalid.

5. Cellino & Barnes and Cellino Law oppose Goldstein Greco's application on both procedural grounds (which are the subject of this motion) and substantive grounds (which are not the subject of this motion, as the time for that opposition is not yet ripe—however, this declaration contains some substantive discussion in an abundance of caution and to demonstrate to the Court the numerous factual issues and disputes that exist with respect to this matter).

6. Cellino & Barnes and Cellino Law LLP are not parties to the underlying litigation this Court presides over.

7. Rather, Cellino & Barnes and Cellino Law are prior counsel to certain underlying plaintiffs for whom Goldstein Greco currently serves as counsel of record.

8. Cellino & Barnes previously served as counsel of record for all of the underlying plaintiffs to which the petition applies:

    a. Daniel Badzinksi;
    b. Cynthia Vavara;
    c. Todd Faut;
    d. Francine Hillpot;
    e. Bruce Lasko;
    f. Phillip Lee;
    g. David Leys;
    h. John Nesbitt;
    i. David Pietrzak;
    j. Aaron Potter;
    k. Norman Bauman;
    l. Margaret Chrisman;
    m. Leon Komm;
    n. Richard Hammett;
    o. Mary Ann Liesinger;
    p. Richard Nusbaum;
    q. Gerald Pasternak;
    r. Paul Pierce;
    s. Ray Duff;
    t. George LoBianco;
    u. Edward Struzik;
    v. Mark Estruch;
    w. Kelli Suchan;
    x. Deborah Brown;
    y. Irene Proctor;
    z. William Frueh;
    aa. Alphonso Faso; and
    bb. Thomas Hill.

9. Cellino Law previously served as counsel of record for all of the underlying plaintiffs to which the petition applies:

    a. Daniel Badzinksi;
    b. Cynthia Vavara;
    c. Todd Faut;

      d.        Francine Hillpot;
      e.        Bruce Lasko;
      f.        Phillip Lee;
      g.        David Leys;
      h.        John Nesbitt;
      i.        David Pietrzak;
      j.        Aaron Potter;
      k.        Norman Bauman;
      l.        Margaret Chrisman;
      m.        Leon Komm;
      n.        Richard Hammett;
      o.        Mary Ann Liesinger;
      p.        Richard Nusbaum;
      q.        Gerald Pasternak;
      r.        Paul Pierce;
      s.        Ray Duff;
      t.        George LoBianco;
      u.        Edward Struzik;
      v.        Mark Estruch;
      w.        Kelli Suchan;
      x.        Deborah Brown;
      y.        Irene Proctor;
      z.        William Frueh;
      aa.        Alphonso Faso; and
      bb.        Thomas Hill.

10. Cellino & Barnes and Cellino Law move to dismiss the petition on the basis that (i) the Court lacks jurisdiction over the instant dispute; and (ii) even if the Court were to exercise ancillary jurisdiction over this dispute, the Court should abstain from exercising jurisdiction under the *Wilton* and/or *Colorado River* federal abstention doctrines.

11. Form a jurisdictional standpoint, The instant matter presents a dispute exclusively between New York law firms.

12. According to the Petition, Goldstein Greco is a law firm and professional corporation organized and existing under the laws of the State of New York with a principal office located at 2354 Wherle Drive, Buffalo, New York 14221.

13. Cellino & Barnes is also a law firm incorporated as a New York professional corporation. Cellino & Barnes is still incorporated as a legal New York corporation and, despite being

subject to dissolution proceedings, has not been formally or legally dissolved.

14. Cellino Law is a law firm organized as a New York limited liability partnership.

15. Each relevant principal of Goldstein Greco, Cellino & Barnes, and Cellino Law is a New York resident.

16. Brian Goldstein and Alex Greco are New York residents.

17. I am a New York resident and a principal of both Cellino & Barnes and Cellino Law.

18. From an abstention standpoint, there currently exists pending litigation in New York State Supreme Court (hereinafter defined as the "New York Actions" and discussed further below), initiated by Cellino & Barnes and Cellino Law, that involves the same issues presented by this case. Specifically, Cellino & Barnes and Cellino Law commenced litigation to set and validate their charging lien for a litany of clients impermissibly solicited and poached by Goldstein Greco. Thus, while the New York Actions involve numerous issues, claims, and allegations, they wholly encompass the legal issues presented by Goldstein Greco's instant application.

## BACKGROUND

### I. The Parallel New York Actions

19. On March 31, 2023, Cellino Law and Cellino & Barnes commenced litigation against Goldstein Greco and its principals in the New York Supreme Court, County of Erie, Commercial Division, captioned *Cellino Law LLP, et al. v. Goldstein Greco, P.C., et al.*, Index No. 804192/2023 (the "First New York Action"). *See Ex. 1*. An Amended Complaint was subsequently filed in that action. *See Ex. 4*.

20. On July 7, 2023, The Barnes Firm, P.C. ("The Barnes Firm") commenced litigation against Goldstein Greco and its principals in the New York Supreme Court, County of Erie, Commercial Division, captioned *The Barnes Firm, P.C. v. Goldstein Greco, P.C., et al.*, Index No. 808360/2023 (the "Second New York Action") (the First New York Action and Second New York

Action hereinafter collectively referred to as the "New York Actions"). *See Ex. 5*.

21. To be clear, the New York Actions both involve the exact same allegations regarding fee disputes; the only relevant distinction between the two is that The Barnes Firm is the named plaintiff in the Second New York Action due to a contractual assignment it obtained from Cellino & Barnes and Cellino Law.

22. Otherwise, the New York Actions both involve disputes over attorneys' fees resulting from allegations of Goldstein Greco's pre-resignation surreptitious solicitation of Cellino & Barnes's and Cellino Law's clients.

23. As previously established, Cellino & Barnes and Cellino Law were previously counsel of record for each underlying plaintiff whose case is at issue herein. The New York Actions were commenced with respect to each and every client and case Goldstein Greco improperly solicited away from Cellino Law and Cellino & Barnes.

24. As such, each and every underlying party, and their respective matter to which the instant application to this Court pertains, is already encapsulated by the pending New York Actions. The same is true for each of the parallel MDL Actions, as hereinafter defined and discussed.

II. **The Parallel Federal MDL Actions**

25. Goldstein Greco filed the same "Verified Petition/Motion to Settle Attorneys' Fees" at issue in this case with three other federal district courts appointed to oversee MDLs. Each of these petitions were filed on the same day in four different district courts across the country: this Court, the Northern District of Georgia, the District of Maryland, and the District of New Hampshire.

26. As such, in addition to the New York Actions, the following four federal actions, including this one, are also currently pending: (1) *In re: Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation*, MDL No. 2782 (N.D. Ga.); (2) *In re: Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Products Liability Litigation*, MDL No. 2775 (D.

- 6 -
DECLARATION
3:16-md-02741-VC

Md.); (3) *In re: Roundup Products Liability Litigation*, MDL No. 2741 (N.D. Cal.); and (4) *In re: Atrium Medical Corp., C-Qur Mesh Products Liability Litigation*, MDL No. 2753 (D.N.H.) (collectively the "MDL Actions").

27. Each and every underlying party, and their respective matters to which the various applications to the MDLs pertain, are subjects of, and at issue in, the pending New York Actions.

### III.   The Cellino & Barnes Dissolution Proceeding

28. In the petition, Goldstein Greco placed at issue certain litigation that took place in New York Supreme Court, Commercial Division, surrounding the dissolution of Cellino & Barnes (the "C&B Dissolution").

29. Cellino & Barnes was a personal injury law firm performing legal services in the State of New York, among other states.

30. Goldstein and Greco were employees of Cellino & Barnes.

31. In 2017, a special proceeding was commenced in New York Supreme Court, Commercial Division, seeking the dissolution of Cellino & Barnes, captioned *Cellino v. Cellino & Barnes, P.C., et al.*, Erie County Commercial Division Index No. 806178/2017 (the "Dissolution Proceeding").

32. The Dissolution Proceeding lasted over three years in Buffalo, New York, during which time the public litigation was in front of the same court that now presides over the New York Actions.

33. After years of substantial litigation, on January 28, 2020, one of two Stipulated Orders of Dissolution was entered and filed (the "First Order of Dissolution"), Ordering, among other things:

> that Cellino & Barnes, P.C. shall be dissolved voluntarily and its business affairs wound up in accordance with Article 10 of the New York Business Corporation Law . . .

*Ex. 9*.

34. The First Order of Dissolution did not equate to a legal dissolution of Cellino & Barnes as an entity, but rather an Order that Cellino & Barnes would be dissolved in the future pursuant to a winding down process. *See Ex. 9*.

35. This is particularly true as Cellino & Barnes is still an entity existing pursuant to the laws of the State of New York for the purposes of winding up the corporation's affairs.

36. Cellino & Barnes continued to operate as a fully operational law firm for months after the First Dissolution Order was entered. The parties to the Dissolution Proceeding engaged in substantial, and confidential, settlement negotiations to effectuate the winding down process, which began and continued contemporaneously with Cellino & Barnes' continued operations.

37. Part of the winding-up process includes ensuring that the two successor firms of Cellino & Barnes—Cellino Law and The Barnes Firm—will protect Cellino & Barnes' charging liens and properly compensate Cellino & Barnes for the work it performed on behalf of its clients.

38. One of the crucial components of winding down Cellino & Barnes is ensuring the fair and equitable split of fees that result from any liens to which Cellino & Barnes is entitled for cases in which it was counsel of record prior to dissolution.

39. For instance, the New York Supreme Court, Commercial Division, already determined that Cellino & Barnes is entitled to assert a charging lien on its former cases.

40. Specifically, the court entered a second Stipulated Order of Dissolution on June 18, 2020 (the "Second Dissolution Order"), which Ordered, in pertinent part: "That Cellino & Barnes will be entitled to assert attorneys charging liens on cases that transfer to other firms . . . ." *Ex. 10*.

41. The court also already approved a proposed fee allocation between the successor firms and Cellino & Barnes "as a fair and equitable way to determine the appropriate attorney's lien amount pursuant to Judiciary Law section 475."

42. Accordingly, while Cellino & Barnes ceased operating as a law firm in October 2020, it still exists as a corporate entity, with a right to liens on its cases, as evidenced by court Order.

43. Cellino & Barnes' successor firms, Cellino Law and The Barnes Firm, continue to represent the Cellino & Barnes clients' interests pursuant to the terms of the Dissolution Orders and continue to pursue and protect Cellino & Barnes' attorneys' liens.

44. During the Dissolution Proceeding, and before Cellino & Barnes stopped serving as a law firm, the Cellino & Barnes clients were properly informed of their right to choose counsel and subsequently elected who they chose as their new counsel for when Cellino & Barnes ceased operating as a law firm. Most of those clients selected either Cellino Law or The Barnes Firm as their new counsel. As such, as of October 17, 2020, Cellino Law began serving as counsel for a large percentage of former Cellino & Barnes clients.

45. Goldstein and Greco remained employed with Cellino & Barnes until it ceased operating as a law firm on or around October 17, 2020, and then chose to be employed by Cellino Law.

46. After resolution of the formal, public Dissolution Proceeding, the C&B Dissolution has continued to be litigated through out-of-court matters heard by a court-appointed referee who is located in Buffalo, New York.

47. Shortly after Cellino & Barnes ceased performing legal services, the referee conducted an in-depth examination into the conduct of Goldstein Greco's principals after they were alleged to have engaged in solicitation of a large amount of cases when they left Cellino & Barnes' employment for Cellino Law.

48. The referee conducted depositions of multiple parties, including the Goldstein Greco principals—Brian Goldstein and Alex Greco—with respect to that investigation.

49.     During the dispute over Brian Goldstein and Alex Greco's solicitation, I maintained, and still maintain, that I was unaware of the conduct engaged in by Goldstein and Greco. I expressly informed them that they were <u>not to solicit</u> the cases at issue.

50.     Notwithstanding, as principal of Cellino Law, I defended and negotiated the dispute over the solicitation of former Cellino & Barnes cases, which had been negotiated for The Barnes Firm to assume responsibility over.

51.     After investigating the matter, the Referee found that Brian Goldstein and Alex Greco impermissibly solicited certain clients. *Ex. 11*.

52.     Cellino Law and The Barnes Firm were able to negotiate terms and agreements to resolve the dispute over Goldstein and Greco's solicitation, the terms of which were made known to Goldstein and Greco.

53.     Moreover, the employment agreement Cellino Law had entered into with Brian Goldstein, who oversaw and supervised Alex Greco, expressly provided provisions pertaining to the terms agreed upon by The Barnes Firm and Cellino Law. Moreover, Goldstein and I had multiple verbal conversations about the same.

54.     Now, after departing Cellino Law, the instant proceedings also implicate solicitation—this time the Goldstein Greco principals engaging in surreptitious pre-resignation solicitation of Cellino Law clients. Moreover, many of the clients at issue are former Cellino & Barnes clients, and the solicitation interferes with the very agreements the law firms entered into to resolve the prior solicitation.

IV.     **<u>Goldstein and Greco's Employment with Cellino Law</u>**

55.     Cellino Law began operating as a personal injury law firm in October 2020. Most of its attorneys and staff were formerly employed by Cellino & Barnes, having elected to proceed with Cellino Law after Cellino & Barnes ceased operating as a law firm (the other Cellino & Barnes

- 10 -
DECLARATION
3:16-md-02741-VC

employees having largely selected to be employed by The Barnes Firm).

56. Two of the attorneys who elected to proceed with Cellino Law were Goldstein and Greco.

57. Initially, most, if not all, of Goldstein and Greco's caseloads at Cellino Law were prior Cellino & Barnes cases.

58. Goldstein and Greco worked for Cellino Law for nearly two years.

59. Unbeknownst to Cellino Law at the time, Goldstein and Greco were misappropriating resources, property, and confidential information to create a competing firm (Goldstein Greco), including, based upon information and documents subsequently obtained, planning and executing pre-resignation solicitation of clients (consisting of both former Cellino & Barnes clients and exclusive Cellino Law clients).

V. **Goldstein Greco's Pre-Resignation Solicitation**

60. On or around August 26, 2022, a client of Cellino Law hand delivered a signed retainer agreement to Cellino Law's office; the retainer agreement was on the letterhead of and for "Goldstein Greco, P.C."

61. This retainer demonstrated that Goldstein and Greco had started their own law firm and evidently intended to leave Cellino Law. After investigating the new firm, Cellino Law learned that Goldstein and Greco formed their new Goldstein Greco firm, by a filing submitted to the Department of State over a month prior, on July 19, 2022.

62. However, Goldstein and Greco were still employed by Cellino Law and had not provided any notice of their intent to terminate their employment.

63. Goldstein and Greco's employment with Cellino Law terminated no later than September 30, 2022.

64. Upon information and documents that have been obtained by Cellino Law, the evidence currently available strongly suggests that prior to termination, Goldstein and Greco had been, among other things: (i) engaging in pre-resignation surreptitious solicitation and pirating of clients, including sending out engagement/retainer agreements on Goldstein Greco letterhead; (ii) misappropriating Cellino Law assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misrepresenting to Cellino Law and its shareholders, partners, attorneys, and personnel about their plans to leave; (iv) abandoning Cellino Law on short notice and taking the client files under false pretenses.

65. For instance, prior to notifying Cellino Law of their pending resignation, Goldstein and Greco improperly solicited at least one client (the "Pre-Resignation Solicitation"), as evidenced by that client's delivery of an executed Goldstein Greco retainer on August 26, 2022.

66. Upon information and belief, Goldstein and Greco employed this surreptitious solicitation as to numerous clients—not just the one client for which they were caught.

67. Indeed, shortly after confronting Goldstein and Greco about their improper conduct, Cellino Law became aware of an estimated 150 to 200 retainer agreements that already had been obtained by Goldstein and Greco of Cellino & Barnes and/or Cellino Law's former clients.

68. In addition, prior to their departure from Cellino Law, Goldstein and Greco drafted and circulated a letter to certain clients, composed on Goldstein Greco letterhead, in which:

    a. Goldstein Greco misrepresented its status, equating itself to Cellino Law; and

    b. Goldstein and Greco misrepresented that they were moving the entire Cellino Law Mass Tort department to the newly established Goldstein Greco firm.

69. Additionally, Goldstein executed certain consent to change attorney ("CTCA") forms on behalf of both Goldstein Greco and Cellino Law.

70. Annexed hereto as *Exhibit 13* is a collection of CTCA forms demonstrating that Goldstein executed the documents on behalf of both entities.[1]

71. As such, Cellino & Barnes and Cellino Law have good reason to believe that Goldstein also executed CTCA forms on behalf of both Goldstein Greco and Cellino Law for those plaintiffs in this case and each other MDL Action.

72. Upon information and belief, Goldstein and Greco first targeted those clients whom they believed to be the most valuable clients—in other words those whose cases had the highest estimated settlement/resolution value.

73. It also became apparent that Goldstein and Greco delayed settling cases while employed at Cellino Law in an attempt to gain entitlement to legal fees for which Goldstein Greco, had and has no right.

## VI. The Substantive Allegations in the Petition are False

74. As previously indicated, this motion is focused on the procedural deficiencies of Goldstein Greco's petition. However, I would be remiss not to explain that the substantive allegations upon which Goldstein Greco's petition is based are meritless.

75. Goldstein Greco contends that Cellino Law gutted its Mass Tort department. This is a gross mischaracterization and ignores that the only Mass Tort attorney who was terminated by Cellino Law was so terminated at *the recommendation of Goldstein*.

76. Goldstein Greco also contends that part of the reason Cellino Law should not be entitled to an attorneys' lien is due to purported misrepresentations by me to him and Cellino Law's clients. Most of these allegations are simply and blatantly false. However, many of his allegations are based on a proposed, post-solicitation draft agreement that (1) was never finalized or agreed to and

---

[1] For ease of reference, all exhibits hereto continue the sequential order of the contemporaneously filed Berloth Declaration—picking up after Exhibits 1 through 12 and beginning with Exhibit 13.

(2) at any rate, was designed to resolve the solicitation dispute, at least in part and is inadmissible with no evidentiary value.

77. I also take substantial issue with any of the characterizations of Goldstein saying these clients were "his", or his characterizations of things "he" did for these clients. Goldstein was often an absentee overseer given the nature of these cases. In any event, most importantly, these clients were always clients of Cellino & Barnes or Cellino Law—both by engagement agreement and/or as acknowledged in Goldstein's employment agreements.

78. Goldstein and Greco performed work on these files, *as paid employees of Cellino & Barnes and/or Cellino Law*, while the firms assumed all costs, expenses, and risks associated with the representation of these clients.

79. Cellino & Barnes and Cellino Law dispute the substantive allegations of the petition and challenge the proposition that their attorneys' liens should in any way be waived or otherwise reduced.

**CONCLUSION**

For all of the reasons set forth in the foregoing arguments, Cellino & Barnes and Cellino Law respectfully request that this Court enter an Order:

(i) Granting their Motion to Dismiss in its entirety;

(ii) In the first alternative, staying the instant proceedings pending the results of the New York State Court Proceedings; or

(iii) In the second alternative, setting a schedule for Cellino & Barnes and Cellino Law to answer and oppose the Petition on its merits; and

(iv) Granting all such other and further relief as the Court deems just and proper.

Dated: August 11, 2023

By: /s/ Ross M. Cellino, Jr.
Ross M. Cellino, Jr.