**SHOOK, HARDY & BACON L.L.P.**
Jennise W. Stubbs
600 Travis Street, Suite 3400
Houston, TX 77002-2026
Telephone:     (713) 227-8008
Facsimile:     (713) 227-9508
Email:         jstubbs@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | |
| *Robert Jarrell v. Monsanto Co.*, Case No. 3:23-cv-04025-VC | |

### MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff's Complaint, except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies. Silence as to any allegations shall constitute a denial.

1.      Monsanto admits that plaintiff purports to bring an action for damages allegedly related to exposure to Roundup®-branded products but denies any liability to plaintiff.  Monsanto denies the remaining allegations in paragraph 1.

2.      Monsanto denies the allegations in paragraph 2.

3.      Monsanto denies the allegations in paragraph 3.

4.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 4 and therefore denies those allegations.

5.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5 and therefore denies those allegations.

6.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 6 and therefore denies those allegations.

7.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 7 and therefore denies those allegations.

8.      Monsanto denies the allegations in paragraph 8.

9.      Monsanto denies the allegations in paragraph 9.

10.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore denies those allegations.

11.     Monsanto denies that any exposure to Roundup®-branded products can cause NHL and other serious illnesses and therefore denies those allegations in paragraph 11. Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 11 and therefore denies those allegations.

12.     The allegations in paragraph 12 comprise attorney characterizations and are accordingly denied. Monsanto states that the Roundup®-branded products identified by plaintiff have a variety of separate and distinct uses and formulations.

13.     In response to the allegations in paragraph 13, Monsanto admits that it is a Delaware corporation with its headquarters and principle place of business in St. Louis County, Missouri.

14.     The allegations in paragraph 14 comprise attorney characterizations and are accordingly denied.

15.     In response to the allegations in paragraph 15, Monsanto admits that it discovered the herbicidal properties of glyphosate and that it has manufactured Roundup®-branded herbicides.

16.     In response to the allegations in paragraph 16, Monsanto admits that it has sold Roundup®-branded products in Louisiana.

17.     The allegations in paragraph 17 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

18.     The allegations in paragraph 18 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

19.     Monsanto admits the allegations in paragraph 19.

20.     Monsanto admits that it is authorized to do business in Louisiana. The remaining allegations in paragraph 20 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

21.     The allegations in paragraph 21 set forth conclusions of law for which no response is required.

22.     Monsanto denies the allegations in paragraph 22.

23.     Monsanto denies the allegations in paragraph 23.

24.     Monsanto admits the allegations in the first two sentences of paragraph 24.  In response to the last sentence of paragraph 24, Monsanto admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto has not been the only manufacturer of glyphosate-based herbicides. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 24 and therefore denies those allegations.

25.     In response to the allegations in paragraph 25, Monsanto admits that its headquarters are in St. Louis County, Missouri, and that it is incorporated in Delaware. Monsanto admits that it and affiliated companies have operations and offices in countries around the world. Monsanto admits that it has been a producer of glyphosate-based herbicides but lacks sufficient

information regarding the business of other glyphosate producers to admit or deny the allegation as written in the second sentence of paragraph 25. Monsanto admits that it has been the leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improves a farmer's ability to control weeds. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics provided in the remaining sentences of paragraph 25 and therefore denies those allegations.

26.     Monsanto admits the allegations in the first sentence of paragraph 26. Monsanto admits that certain studies have reported that glyphosate is found at de minimis levels significantly below regulatory safety limits in various locations and media. Monsanto denies the remaining allegations in paragraph 26.

27.     Monsanto admits the allegations in the first sentence of paragraph 27. Monsanto denies the allegations in the second sentence of paragraph 27 to the extent they suggest that IARC based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

28.     Monsanto admits the allegations in the first sentence of paragraph 28. Monsanto denies the allegations in the second sentence of paragraph 28.

29.     In response to the allegations in paragraph 29, Monsanto admits that the IARC working group classified glyphosate under Group 2A. Monsanto denies the remaining allegations in paragraph 29.

30.     Monsanto denies the allegations in paragraph 30.

31.     In response to the allegations in paragraph 31, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings. Monsanto also admits that the United States Environmental Protection Agency ("EPA") repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based

- 4 -

herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label. To the extent that paragraph 31 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

32.     The allegations in paragraph 32 set forth conclusions of law for which no response is required. To the extent that a response is required, Monsanto admits the allegations in paragraph 32 based upon the allegations in plaintiff's Complaint.

33.     Monsanto admits the allegations in paragraph 33.

34.     The allegations in the first sentence of paragraph 34 set forth conclusions of law for which no response is required. In response to the allegations in the second sentence of paragraph 34, Monsanto admits that it has sold, marketed, and/or distributed Roundup®-branded products within the State of Louisiana. In response to the allegations in the final sentence of paragraph 34, Monsanto denies certain events giving rise to plaintiff's claims and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding where certain other events giving rise to plaintiff's claims occurred and therefore denies those allegations.

35.     In response to the allegations in paragraph 35, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds. The remaining allegations in paragraph 35 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 35 and therefore denies those allegations.

36.     Monsanto admits the first sentence of paragraph 36. Monsanto denies the allegations in the second sentence of paragraph 36 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the third sentence of paragraph 36 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

37.     In response to the allegations in paragraph 37, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s. Monsanto denies the remaining allegations in paragraph 37.

38.     Monsanto admits the allegations in the first two sentences of paragraph 38 and admits that it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under FIFRA. Monsanto denies the remaining allegations in paragraph 38.

39.     The allegations in paragraph 39 set forth conclusions of law for which no response is required.

40.     In response to the allegations in paragraph 40, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 40 set forth conclusions of law for which no response is required.

41.     The allegations in paragraph 41 set forth conclusions of law for which no response is required.

42.     In response to the allegations in paragraph 42, Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale, and distribution in the United States.

43.     In response to the allegations in paragraph 43, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. Monsanto states that the term "the product tests" in the final sentence of paragraph 43 is vague and ambiguous, and Monsanto therefore denies the same. The remaining allegations in paragraph 43 set forth conclusions of law for which no response is required.

44.     Monsanto denies the allegations in paragraph 44 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration.

Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2] Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3] Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 44 and therefore denies those allegations.

45.     In response to the allegations in paragraph 45, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and further admits that EPA has not released its findings. Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[4]; and (b) at the same time, EPA

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094. The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document — Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

[4] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094. The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[5] Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans.'"[6] In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies." EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts,* 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity." Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry,* 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs),

---

[5] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document —Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[6] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:23-cv-04025-VC

1   http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 — 56:20 ("EPA 2015 Desk Statement").

2

3   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

remaining allegations in paragraph 45 and therefore denies those allegations.

4

5      46.     In response to the allegations in paragraph 46, Monsanto admits that an EPA

6   review committee classified glyphosate as Class C in 1985 based on limited data and that EPA

7   changed its classification of glyphosate to Group E based upon a full evaluation of the scientific

8   evidence, including but not limited to three animal carcinogenicity studies. Monsanto admits that

9   Plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the

10  designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate

11  does not pose any cancer risk to humans. In addition to the conclusions in the two EPA OPP

12  reports and the EPA CARC Final Report discussed above, specific findings of safety include:

13

14  • "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows
      evidence of non-carcinogenicity for humans—based on the lack of convincing
15    evidence of carcinogenicity in adequate studies." EPA, *Glyphosate: Reregistration
      Eligibility Decision (RED) Facts,* 2 (Sept. 1993),
16    http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

17  • "No evidence of carcinogenicity." Glyphosate; Pesticide Tolerances, 67 Fed. Reg.
      60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

18  • "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed.
19    Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

20  • "There is [an] extensive database available on glyphosate, which indicate[s] that
      glyphosate is not mutagenic, not a carcinogen, and not a developmental or
21    reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589
      (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

22  • "EPA has concluded that glyphosate does not pose a cancer risk to humans."
23    Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be
      codified at 40 C.F.R. pt. 180).

24  • "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible
25    cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of
      research does not provide evidence to show that [g]lyphosate causes cancer and does
26    not warrant any change in the EPA's cancer classification for [g]lyphosate."
      *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder
27    Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry,* 114th
      Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of

28

- 9 -

Pesticide    Programs),    http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 — 56:20.

Monsanto denies the remaining allegations in paragraph 46.

47.    In response to the allegations in paragraph 47, Monsanto admits that it — along with a large number of other companies and governmental agencies — was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate. Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies. To the extent that the allegations in paragraph 47 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

48.    In response to the allegations in paragraph 48, Monsanto admits that Industrial Bio-Test ("IBT") Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

49.    Monsanto denies the allegations in paragraph 49 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate. Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate. Monsanto was one of several pesticide manufacturers who had used IBT test results. The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid. As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies. To the extent that the allegations in paragraph 49 are

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:23-cv-04025-VC

intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations also are denied.

50.     In response to the allegations in paragraph 50, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

51.     In response to the allegations in paragraph 51, Monsanto admits that it — along with numerous other private companies — hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products. Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost. To the extent that the allegations in paragraph 51 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

52.     Monsanto denies the allegations in paragraph 52.

53.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the fourth sentence of paragraph 53 regarding alleged reliance by the public and EPA and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 53.

54.     Monsanto denies the allegations in paragraph 54.

55.     In response to the allegations in paragraph 55, Monsanto admits that in March 2015, the Joint Glyphosate Task Force issued a press release, which speaks for itself. Monsanto denies the remaining allegations in paragraph 55.

56.     Monsanto admits the allegations in the first sentence of paragraph 56. Monsanto denies the remaining allegations in paragraph 56.

57.     In response to the allegations in paragraph 57, Monsanto admits that it brought a lawsuit in California challenging the notice of intent by the California Office of Environmental Health Hazard Assessment ("OEHHA") to include glyphosate on its Proposition 65 list. Monsanto denies the remaining allegations in paragraph 57. Monsanto states that the OEHHA

decided that it was required to add glyphosate to California's Proposition 65 list of chemicals in a process that OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC. Monsanto further states that this decision was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."[7]  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution. On February 26, 2018, a federal district court enjoined California from requiring Proposition 65 warning labels for glyphosate as unconstitutional.

58.     In response to the allegations in paragraph 58, Monsanto admits that Roundup®-branded products are highly valued by customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000. The remaining allegations in paragraph 58 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

59.     In response to the allegations in paragraph 59, Monsanto admits that, following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 59 and accordingly denies those allegations. The remaining allegations in paragraph 59 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

60.     In response to the allegations in paragraph 60, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it has been the only company that has sold glyphosate or glyphosate-based herbicides. Monsanto

---

[7]  OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.

lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 60 and accordingly denies the same. The remaining allegations in paragraph 60 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

61.     In response to the allegations in paragraph 61, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products. This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto. Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer. To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 61 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

62.     In response to the allegations in paragraph 62, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General. The assurance speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 62 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

63.     Monsanto denies the allegations in paragraph 63.

64.     In response to the allegations in paragraph 64, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 64 to the extent that they suggest that this ruling was in any way related to plaintiff's claim here that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 64.

65.     In response to the allegations in paragraph 65, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 65, which are not limited as of any specified date, and accordingly denies the same.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:23-cv-04025-VC

66.     In response to the allegations in paragraph 66, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 66.

67.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 67 and therefore denies those allegations.

68.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 68 and therefore denies those allegations.

69.     Monsanto denies the allegations in paragraph 69 to the extent that they suggest that IARC had previously assessed glyphosate. Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

70.     In response to the allegations in paragraph 70, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working group are "experts." Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence. Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available. Monsanto denies the remaining allegations in paragraph 70.

71.     In response to the allegations in paragraph 71, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group. To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

72.     The allegations in paragraph 72 are vague and conclusory. To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

73.     In response to the allegations in paragraph 73, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, the allegations in paragraph 73 are denied.

74.     In response to the allegations in paragraph 74, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

75.     Monsanto denies the allegations in paragraph 75. The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

76.     In response to the allegations in paragraph 76, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

77.     In response to the allegations in paragraph 77, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors. Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 77.

78.     In response to the allegations in paragraph 78, Monsanto admits that the IARC working group purported to make these findings but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA is present or persists in human blood or urine. Monsanto denies the remaining allegations in paragraph 78.

79.     In response to the allegations in paragraph 79, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration. Regulators around the world repeatedly have concluded that glyphosate is not genotoxic. Monsanto denies the remaining allegations in paragraph 79.

80.     In response to the allegations in paragraph 80, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion. Monsanto denies the remaining allegations in paragraph 80.

81.     In response to the allegations in paragraph 81, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between

glyphosate and the specified cancers. The AHS cohort study did not find a positive association between glyphosate and any type of cancer. Monsanto denies all other allegations in paragraph 81.

82.     Monsanto denies the allegations in paragraph 82.

83.     The allegations in paragraph 83 comprise attorney characterizations and are accordingly denied.

84.     Monsanto admits the allegations in paragraph 84.

85.     In response to the allegations in paragraph 85, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 85 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 85.

86.     In response to the allegations in paragraph 86, Monsanto admits that certain studies have reported that glyphosate and glyphosate-based formulations induced oxidative stress under artificial experimental conditions. Monsanto denies that these studies provide any reliable evidence that glyphosate or glyphosate-based formulations induce oxidative stress in humans or animals under real-world exposure conditions. Monsanto denies the remaining allegations in paragraph 86.

87.     The allegations in paragraph 87 are vague and ambiguous and are accordingly denied.

88.     In response to the allegations in paragraph 88, Monsanto states that the cited document speaks for itself and does not require a response.

89.     In response to the allegations in paragraph 89, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 89 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 89.

90.     Monsanto denies the allegations in paragraph 90.

91.     In response to the allegations in paragraph 91, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto otherwise denies the allegations in paragraph 91.

92.     Monsanto admits that there is no reliable evidence that Roundup®-branded products are genotoxic, and that regulatory authorities and independent experts agree that Roundup®-branded products are not genotoxic. Monsanto otherwise denies the allegations in paragraph 92.

93.     Monsanto denies the allegations in paragraph 93.

94.     Monsanto denies the allegations in paragraph 94.

95.     Monsanto denies the allegations in paragraph 95.

96.     Monsanto admits that in 1985 EPA reviewed a regulatory study involving mice exposed to glyphosate. Monsanto denies the remaining allegations in paragraph 96.

97.     Monsanto denies the allegations in paragraph 97.

98.     Monsanto denies the allegations in paragraph 98.

99.     Monsanto admits the allegations in paragraph 99.

100.    Monsanto denies the allegations in paragraph 100.

101.    Monsanto admits the allegations in paragraph 101.

102.    Monsanto denies the allegations in paragraph 102.

103.    Monsanto denies the allegations in paragraph 103.

104.    Monsanto denies the allegations in paragraph 104.

105.    Monsanto denies the allegations in paragraph 105.

106.    Monsanto denies the allegations in paragraph 106.

107.    Monsanto denies the allegations in paragraph 107.

108.    Monsanto denies the allegations in paragraph 108.

109.    In response to the allegations in paragraph 109, Monsanto admits that independent experts and regulatory agencies agree that there is no evidence of carcinogenicity or genotoxicity

in glyphosate and Roundup®-branded products and admits that it has made statements reflecting this fact. Monsanto denies the remaining allegations in paragraph 109.

110.    In response to the allegations in paragraph 110, Monsanto admits that Roundup®-branded products are safe, non-carcinogenic and non-genotoxic when used in accordance with the product's EPA approved labeling. Monsanto otherwise denies the allegations in paragraph 110.

111.    In response to the allegations in paragraph 111, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water Regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which should be read in context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

112.    In response to the allegations in paragraph 112, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate. Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal." *See Arias v. DynCorp,* 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

113.    Monsanto states that the term "toxic" as used in paragraph 113 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity. Monsanto denies the allegations in paragraph 113.

114.    In response to the allegations in paragraph 114, Monsanto admits that Julie Marc published the cited study in 2002 and states that the document speaks for itself and does not require a response. To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 114.

115.    In response to the allegations in the first sentence of paragraph 115, Monsanto admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle regulation" in 2004. To the extent that the first sentence of paragraph 115 characterizes the meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph

- 19 -

115. In response to the remaining allegations in paragraph 115, Monsanto states that the document speaks for itself and does not require a response. To the extent that a response is deemed required, Monsanto denies the remaining allegations in paragraph 115.

116.   In response to the allegations in paragraph 116, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 116 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 116.

117.   In response to the allegations in paragraph 117, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 117 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies support the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in paragraph 117.

118.   In response to the allegations in paragraph 118, Monsanto states that the terms "at all times" and these studies are vague and ambiguous, and therefore Monsanto denies the allegations in paragraph 118.

119.   Monsanto admits that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling. Monsanto denies the remaining allegations in paragraph 119.

120.   In response to the allegations in paragraph 120, Monsanto states that the cited report speaks for itself and does not require a response. The remaining allegations in paragraph 120 are vague, incomplete, and conclusory and/or comprise attorney characterizations — and are accordingly denied.

121.   In response to the allegations in paragraph 121, Monsanto states that the cited report speaks for itself and does not require a response. The remaining allegations in paragraph 121 are vague, incomplete, and conclusory and/or comprise attorney characterizations — and are accordingly denied.

122.    In response to the allegations in the first sentence of paragraph 122, Monsanto admits that EPA held a FIFRA Scientific Advisory Panel ("SAP") from December 13-16, 2016. In response to the allegations in the third sentence of paragraph 122, Monsanto states that the cited report speaks for itself and does not require a response. The remaining allegations in paragraph 122 are vague, incomplete, and conclusory and/or comprise attorney characterizations — and are accordingly denied.

123.    In response to the allegations in paragraph 123, Monsanto denies that the OPP Report is a "draft assessment." The remaining allegations in paragraph 123 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

124.    In response to the allegations in paragraph 124, Monsanto admits that the final SAP meeting minutes and report were released and states that the cited documents speak for themselves and thus do not require any further response. The remaining allegations in paragraph 124 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

125.    In response to the allegations in paragraph 125, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification. Monsanto denies the remaining allegations in paragraph 125.

126.    In response to the allegations in paragraph 126, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate. Monsanto denies the remaining allegations in paragraph 126.

127.    Monsanto admits that, in France, the sale to and use by amateurs (*i.e.,* non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as

of January 1, 2019, with certain exceptions. Monsanto denies the remaining allegations in paragraph 127.

128.    In response to the allegations in paragraph 128, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same. Monsanto denies the remaining allegations in paragraph 128.

129.    In response to the allegations in paragraph 129, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease. Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to Plaintiff's allegations regarding claimed carcinogenicity. Monsanto denies the remaining allegations in paragraph 129.

130.    In response to the allegations in paragraph 130, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate. Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns. As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops. A federal district court in the United States excluded Plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable. *See Arias v. DynCorp,* 928 F. Supp. 2d 10 (D.D.C. 2013). Monsanto denies the remaining allegations in paragraph 130.

131.    In response to the allegations in paragraph 131, Monsanto admits that, on November 12, 2015, the European Food Safety Authority issued its Renewal Assessment Report (RAR) on glyphosate, in which it concluded that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[8] Monsanto further admits that this conclusion affirmed a similar finding by

---

[8] *See* EFSA, *Glyphosate: EFSA updates toxicological profile,* http://www.efsa.europa.eu/en/press/news/151112.

- 22 -

the German Federal Institute for Risk Management (BfR). Monsanto admits that the European scientists who reached these determinations were acting independently of Monsanto and were acting to protect the public.

132.    In response to the allegations in paragraph 132, Monsanto denies that "industry groups" were afforded any ability to review the RAR beyond that afforded to the public generally. Monsanto otherwise admits the allegations in paragraph 132.

133.    Monsanto admits the allegations in paragraph 133.

134.    In response to the allegations in paragraph 134, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies the allegations in paragraph 134 to the extent that they purport to set forth all of the distinctions identified by EFSA between its evaluation and the evaluation of the IARC working group. Monsanto states that in the same document cited by plaintiff, EFSA states that, in contrast to IARC, "the EU peer review concluded that no significant increase in tumour incidence could be observed in any of the treated groups of animals in the nine long term rat studies considered" and explains that "[a]s well as reviewing a larger number of studies [than IARC], EFSA for example considered that carcinogenic effects observed at high doses were unreliable as they could be related to general toxicity."[9] To the extent that paragraph 134 characterizes the meaning of the cited studies, Monsanto denies the remaining allegations in paragraph 134.

135.    In response to the allegations in paragraph 135, Monsanto states that the cited document speaks for itself and does not require a response.

136.    In response to the allegations in paragraph 136, Monsanto admits that EFSA set acceptable exposure thresholds for glyphosate that are orders of magnitude higher than those which occur in the ordinary use of glyphosate-based herbicides. Monsanto denies that these exposure thresholds are based upon any alleged risk of carcinogenicity.

---

[9] EFSA, *EFSA Explains Risk Assessment Glyphosate*, http://www.efsa.europa.eu/sites/default/files/comorate_publications/files/efsaexplainsglyphosate151112en.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:23-cv-04025-VC

137.     In response to the allegations in paragraph 137, Monsanto admits that certain individuals, including Dr. Christopher Portier, sent the letter identified in paragraph 137 (hereinafter, "the Portier letter"). Monsanto denies that Dr. Portier or the other signatories to his letter are "independent" and "renowned international experts in the field." Monsanto states that Dr. Portier has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto and that Monsanto lacks information or knowledge sufficient to form a belief as to whether the other signatories were aware, before they signed the Portier letter, that Dr. Portier was working as a retained expert plaintiffs' counsel. Monsanto otherwise admits that this letter urged the EU Health Commissioner to disregard the scientific findings reached by EFSA and by the BfR.

138.     In response to the allegations in paragraph 138. Monsanto admits that Dr. Portier sent the letter identified in paragraph 138. Monsanto denies that Dr. Portier or the other signatories to his letter are "renowned international experts in the field." Monsanto admits that certain members of the IARC working group assigned to glyphosate signed on to the Portier letter, but states that Monsanto lacks information or knowledge sufficient to form a belief as to whether those individuals or the other signatories were aware at the time that Dr. Portier was working as a retained expert for plaintiffs' counsel.

139.     In response to the allegations in paragraph 139, Monsanto states that the cited Portier letter speaks for itself and does not require a response. Monsanto further admits that Dr. Portier — who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto — seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[10] To the extent that paragraph 139 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 139.

---

[10] *See* EFSA, *Glyphosate: EFSA updates toxicological profile,* http://www.efsa.europa.eu/en/press/news/151112.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:23-cv-04025-VC

140.    In response to the allegations in paragraph 140, Monsanto admits that IARC concluded that the human epidemiologic data provides only "limited evidence of carcinogenicity," which IARC defines as meaning that "chance, bias, or confounding could not be ruled out with reasonable confidence."[11] Monsanto further admits that Dr. Portier — who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto — seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[12] In response to the remaining allegations in paragraph 140, Monsanto states that the cited Portier letter speaks for itself and does not require a response. To the extent that paragraph 140 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 140.

141.    In response to the allegations in paragraph 141, Monsanto states that the cited Portier letter speaks for itself and does not require a response. Monsanto further admits that Dr. Portier — who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto — seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[13] To the extent that paragraph 141 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 141.

142.    In response to the allegations in paragraph 142, Monsanto states that the cited Portier letter speaks for itself and does not require a response. Monsanto further admits that Dr. Portier — who has been disclosed as an expert witness retained by plaintiffs' counsel in the

---

[11]    http://publications.iarc.fe_publications/media/download/4566/1f986e57ea2ddd9830fec223aeabc740d0bb2eca.pdf

[12]    *See* EFSA, *Glyphosate: EFSA updates toxicological profile,* http://www.efsa.europa.eu/en/press/news/151112.

[13]    *See* EFSA, *Glyphosate: EFSA updates toxicological profile,* http://www.efsa.europa.eu/en/press/news/151112.

glyphosate cancer litigation against Monsanto — seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[14] To the extent that paragraph 142 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 142.

143.    Monsanto admits the allegations in paragraph 143.

144.    In response to the allegations in paragraph 144, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 144 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 144.

145.    In response to the allegations in paragraph 145, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 145 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 145.

146.    In response to the allegations in paragraph 146, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 146 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 146.

147.    In response to the allegations in paragraph 147, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent

---

[14] *See* EFSA, *Glyphosate: EFSA updates toxicological profile,* http://www.efsa.europa.eu/en/press/news/151112.

that paragraph 147 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 147.

148.    In response to the allegations in paragraph 148, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 148 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 148.

149.    In response to the allegations in paragraph 149, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 149 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 149.

150.    In response to the allegations in paragraph 150, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 150 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 150.

151.    Monsanto admits the allegations in paragraph 151. Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

152.    In response to the allegations in paragraph 152, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

153.    In response to the allegations in paragraph 153, Monsanto lacks information or knowledge sufficient to form a belief as to whether each of the individuals at the referenced meeting were "experts" and therefore denies that allegation. Monsanto admits the remaining

allegations in paragraph 153. Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

154.    In response to the allegations in paragraph 154, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 154 characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 154.

155.    In response to the allegations in paragraph 155, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 155 characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 155.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

156.    Monsanto admits the allegations in paragraph 156.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

157.    Monsanto admits the allegations in paragraph 157. Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

158.    Monsanto admits the allegations in paragraph 158. Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

159.    In response to the allegations in paragraph 159, Monsanto admits that the EU voted to extend the glyphosate license for five more years.

160.    Monsanto incorporates by reference its responses to paragraph 1 through 159 in response to paragraph 160 of plaintiffs' Petition.

161.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 161 and therefore denies those allegations.  In response to the allegations in the second sentence of paragraph 161, Monsanto denies that there is

any risk of NHL or other serious illness associated with or linked to the use of and/or exposure to Roundup®-branded products and glyphosate.  Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.  The remaining allegations in paragraph 161 set forth conclusions of law for which no response is required.

162.    In response to the allegations in paragraph 162, Monsanto denies that exposure to Roundup®-branded products and glyphosate is injurious to human health. Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015. The remaining allegations in paragraph 162 set forth conclusions of law for which no response is required.

163.    In response to the allegations in paragraph 163, Monsanto denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate. Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 163 and therefore denies those allegations.

164.    Monsanto denies the allegations in paragraph 164.

165.    Monsanto denies that exposure to Roundup®-branded products and glyphosate exposed plaintiff to risk of his alleged cancer and denies the remaining allegations in paragraph 165. Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

166.    Monsanto denies the allegations in the first and last sentences of paragraph 166. The remaining allegations in paragraph 166 set forth conclusions of law for which no response is required. Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

167.    Monsanto denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate. The remaining

allegations in paragraph 167 set forth conclusions of law for which no response is required, consist of attorney characterizations and are accordingly denied, or comprise allegations for which Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted and therefore denies those allegations. Monsanto states that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

168.    The allegations in paragraph 168 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 168. Monsanto states that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

169.    The allegations in paragraph 169 set forth conclusions of law for which no response is required.

170.    Monsanto denies the allegations in paragraph 170.

171.    The allegations in paragraph 171 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 171. Monsanto states that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

172.    Monsanto incorporates by reference its responses to paragraphs 1 through 171 in response to paragraph 172 of plaintiff's Petition.

173.    In response to paragraph 173, Monsanto admits that Plaintiff purports to assert a strict liability claim for defective design, Monsanto denies liability for such claim.

174.    Monsanto denies the allegations in paragraph 174.

175.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding plaintiff's use or alleged exposure and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 175.

176.     Monsanto denies the allegations in paragraph 176.

177.     Monsanto denies the allegations in paragraph 177.

178.     Monsanto denies the allegations in paragraph 178.

179.     Monsanto denies the allegations in paragraph 179.

180.     Monsanto denies the allegations in paragraph 180.

181.     Monsanto denies the allegations in paragraph 181, including each of its subparts.

182.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 182 concerning plaintiff's alleged use of Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 182, including that Roundup®-branded products have "dangerous characteristics."

183.     In response to the allegations in paragraph 183, Monsanto denies that exposure to Roundup®-branded products and glyphosate is injurious to human health. Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

184.     Monsanto denies the allegations in paragraph 184.

185.     Monsanto denies the allegations in paragraph 185.

186.     Monsanto denies the allegations in paragraph 186.

187.     Monsanto denies the allegations in paragraph 187.

188.     Monsanto denies the allegations in paragraph 188.

189.     Monsanto denies the allegations in paragraph 189.

190.     In response to the allegations in paragraph 190, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Petition be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The statement in the last sentence of paragraph 190 sets forth a conclusion of law for which no response is required.

191.     Monsanto incorporates by reference its responses to paragraphs 1 through 190 in response to paragraph 191 of plaintiff's Petition.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:23-cv-04025-VC

192.     In response to paragraph 192, Monsanto admits that plaintiff purports to assert a strict liability claim for failure to warn, Monsanto denies liability for such claim.

193.     Monsanto denies the allegations in paragraph 193.

194.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 194 concerning plaintiff's alleged use of Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 194.

195.     The allegations in paragraph 195 set forth conclusions of law for which no response is required.

196.     Monsanto denies the allegations in paragraph 196.

197.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 197 concerning plaintiff's alleged use of Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 197.

198.     The allegations in paragraph 198 set forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 198.

199.     The allegations in paragraph 199 set forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 199.

200.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 200.

201.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 201 concerning plaintiff's alleged use of Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 201, including that Roundup®-branded products have "dangerous characteristics."

202.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 202 regarding plaintiff's or the general public's knowledge and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 202.

In addition, Monsanto states that the scientific studies upon which the IARC purported to base its evaluation of glyphosate were all publicly available before March 2015. The remaining allegations in paragraph 202 set forth conclusions of law for which no response is required.

203.   Monsanto denies the allegations in paragraph 203.

204.   Monsanto denies the allegations in paragraph 204.

205.   Monsanto denies the allegations in paragraph 205.

206.   Monsanto denies the allegations in paragraph 206.

207.   Monsanto denies the allegations in paragraph 207.

208.   Monsanto denies the allegations in paragraph 208.

209.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 209. Monsanto denies the remaining allegations in paragraph 209.

210.   Monsanto denies the allegations in paragraph 210.

211.   In response to the allegations in paragraph 211, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Petition be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The statement in the last sentence of paragraph 211 sets forth a conclusion of law for which no response is required.

212.   Monsanto incorporates by reference its responses to paragraphs 1 through 211 in response to paragraph 212 of plaintiff's Petition.

213.   Monsanto denies the allegations in paragraph 213.

214.   Monsanto denies the allegations in paragraph 214.

215.   The allegations in paragraph 215 set forth conclusions of law for which no response is required.

216.   The allegations in paragraph 216 set forth conclusions of law for which no response is required.

217.   Monsanto denies the allegations in paragraph 217.

218.   Monsanto denies the allegations in paragraph 218.

219.    Monsanto denies the allegations in paragraph 219.

220.    Monsanto denies the allegations in paragraph 220.

221.    Monsanto denies the allegations in paragraph 221. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

222.    Monsanto denies the allegations in paragraph 222.

223.    Monsanto denies the allegations in paragraph 223.

224.    Monsanto denies the allegations in paragraph 224.

225.    Monsanto denies the allegations in paragraph 225, including each of its subparts.

226.    Monsanto denies the allegations in paragraph 226.

227.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 227 regarding plaintiffs' knowledge and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 227, including that intended use of and/or exposure to Roundup®-branded products causes any injuries.

228.    Monsanto denies the allegations in paragraph 228.

229.    Monsanto denies the allegations in paragraph 229.

230.    Monsanto denies the allegations in paragraph 230.

231.    In response to the allegations found in paragraph 231, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Petition be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The statement in the last sentence of paragraph 231 sets forth a conclusion of law for which no response is required.

232.    Monsanto incorporates by references its responses to paragraph 1 through 231 in response to paragraph 232 of plaintiffs' Petition.

233.    Monsanto denies the allegations in paragraph 233.

234.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 234 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 234 set forth conclusions of law for which no response is required.

235.    Monsanto denies the allegations in paragraph 235. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

236.    The allegations in paragraph 236 set forth conclusions of law for which no response is required.

237.    Monsanto denies the allegations in paragraph 237.

238.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 238 regarding plaintiffs' and/or decedent's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. Monsanto denies that Roundup®-branded products have "dangerous characteristics."

239.    Monsanto denies the allegations in paragraph 239.

240.    Monsanto denies the allegations in paragraph 240.

241.    Monsanto denies the allegations in paragraph 241.

242.    Monsanto denies the allegations in paragraph 242.

243.    In response to the allegations in paragraph 243, Monsanto demands that judgment be entered in its favor and against plaintiff and that plaintiffs' Petition be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

244.    Monsanto incorporates by references its responses to paragraph 1 through 243 in response to paragraph 244 of plaintiffs' Petition.

245.    Monsanto denies the allegations in paragraph 245.

246.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 246 regarding plaintiffs' and/or decedent's claimed use of

Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 246 set forth conclusions of law for which no response is required.

247.   Monsanto denies the allegations in paragraph 247. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

248.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 248 regarding plaintiffs' and/or decedent's claimed use of and exposure to Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 248 set forth conclusions of law for which no response is required.

249.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 249 and therefore denies those allegations.

250.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 250 and therefore denies those allegations.

251.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 251 regarding the claimed use of Roundup®-branded products by plaintiff and others and therefore denies those allegations. The remaining allegations in paragraph 251 set forth conclusions of law for which no response is required.

252.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 252 regarding claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. The allegation in paragraph 252 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 252.

253.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 253 regarding claimed use of Roundup®-branded products or plaintiffs' claimed reliance and therefore denies those allegations. The allegation in paragraph 253 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required

254.    Monsanto denies that there is any risk of serious injury associated with the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 254 regarding plaintiff's knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 254.

255.    Monsanto denies the allegations in paragraph 255.

256.    Monsanto denies the allegations in paragraph 256.

257.    Monsanto denies the allegations in paragraph 257.

258.    In response to the allegations in paragraph 258, Monsanto demands that judgment be entered in its favor and against plaintiff and that plaintiffs' Petition be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

In response to the allegations in the section entitled "PRAYER FOR RELIEF," Monsanto denies that plaintiff is entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

**SEPARATE AND AFFIRMATIVE DEFENSES**

1.    The Complaint, in whole or part, fails to state a claim or cause of action upon which relief can be granted.

2.    Plaintiff's claims are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

4.      Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.      Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g., Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco,* 275 F.3d 1199 (9th Cir. 2002).

7.      Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.      Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.      Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.      Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

11.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims in whole or in part.

12.     Applicable statutes of limitations and/or repose, or prescriptive periods, bar plaintiff's claims in whole or in part.

13.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

14.     If plaintiff suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injuries or damages.

15.     Monsanto had no legal relationship or privity with plaintiff and owed no duty to her by which liability could be attributed to it.

16.     Plaintiff's claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

17.     Plaintiff's claims for punitive damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Louisiana Constitution, and/or other applicable state constitutions.

18.     Plaintiff's claims for punitive damages are barred because plaintiff has failed to allege conduct warranting imposition of such damages under Louisiana law and/or other applicable state laws.

19.     Plaintiff's claims for punitive, exemplary, and/or aggravated damages are barred and/or limited by operation of state and/or federal law, including La. Rev. Stat. § 9:2800.52, *et seq.*

20.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff. If any such warranties were made, which Monsanto specifically denies, then plaintiff failed to give notice of any breach thereof.

21.     Plaintiff's claims are barred in whole or in part by plaintiff's contributory/comparative negligence.

22.     Plaintiff's claims are barred in whole or in part by plaintiff's failure to mitigate damages.

23.     Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

24.     Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff receives from collateral sources.

25.     If plaintiff has been injured or damaged, no injuries or damages being admitted, such injuries or damages were not caused by a Monsanto product.

26.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

27.     Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

28.     Plaintiff's common law claims are barred, in whole or part, by application of Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. Ann. § 9:2800.51 *et seq.*

29.     This case is governed by the exclusive provisions of the Louisiana Products Liability Act (La. R.S. 9:2800.51, *et seq.)* ("LPLA"). Any theories of recovery that fall outside of the LPLA's provisions are therefore subject to dismissal.

30.     Monsanto affirmatively pleads the applicability of the LPLA and specifically avers that plaintiff is not entitled to recovery under any of the exclusive theories of liability set forth in the Act.

31.     Monsanto specifically avers that the product possessed no characteristic that rendered it unreasonably dangerous in a reasonably anticipated use as defined by the LPLA (La. R.S. 9:2800.54).

32.     Monsanto asserts all allowable defenses under the LPLA, La. R.S. 9:2800.51, *et seq.*, including but not limited to the applicability of La. R.S. 9:2800.59(A)(1), (2), (3), and (B).

33.     Should plaintiff recover under any claims under the LPLA, a recovery of attorney's fees for plaintiff is barred under the provisions of that statute.

34.     Monsanto has no liability to plaintiff under any theory of redhibition to the extent that plaintiff failed to tender any product allegedly sold by Monsanto that allegedly contained a redhibitory defect and has not made an amicable demand upon Monsanto.

35.     Monsanto has no liability to plaintiff under any theory of redhibition to the extent that plaintiff has waived plaintiff's redhibition rights.

36.     Plaintiff's claims for punitive damages are barred under Louisiana Civil Code Article 3546.

37.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE,** Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.

1

DATED:  August 18, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

BY: */s/ Jennise W. Stubbs*
    Jennise W. Stubbs
    600 Travis Street, Suite 3400
    Houston, TX 77002-2926
    Telephone:   (713) 227-8008
    Facsimile:   (713) 227-9508
    Email:        jstubbs@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:23-cv-04025-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I certify that on the 18th day of August, 2023, I electronically transmitted the foregoing

**MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT** to the Clerk of the court using

the ECF system for filing and transmittal of a true and correct copy of the foregoing document

was served electronically or by another manner as authorized by FED. R. CIV. P. 5.

*/s/Jennise W. Stubbs*
Jennise W. Stubbs

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:23-cv-04025-VC