```
 1                  UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF CALIFORNIA

 3        Before The Honorable Vince Chhabria, District Judge

 4

 5  In Re:                          )
                                    )
 6  ROUNDUP PRODUCTS LIABILITY      )   Case No. 16MD02741-VC
    LITIGATION.                     )
 7                                  )
    _____)
 8
                                        San Francisco, California
 9                                      Wednesday, March 29, 2023

10
      TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
11              RECORDING 10:07 - 10:26 = 19 MINUTES

12  APPEARANCES:

13  For Plaintiff:
                                    Weitz and Luxenberg, P.C.
14                                  700 Broadway
                                    New York, New York 10003
15                          BY:     ROBIN L. GREENWALD, ESQ.

16                                  The Miller Firm, LLC.
                                    108 Railroad Avenue
17                                  The Sherman Building
                                    Orange, Virginia 22960
18                          BY:     MR. DAVID J. DICKENS, ESQ.

19                                  Andrus Anderson, LLP
                                    155 Montgomery Street
20                                  Suite 900
                                    San Francisco, California
21                                    94104
                            BY:     MS. LORI E. ANDRUS, ESQ.
22

23
                   (APPEARANCES CONTINUED ON NEXT PAGE)
24

25
```

```
 1  APPEARANCES:  (Cont'd.)

 2  For Defendant:
                              Wilkinson Stekloff, LLP
 3                            2001 M Street NW
                              Floor 10
 4                            Washington, D.C. 20036
                         BY:  BRIAN L. STEKLOFF, ESQ.
 5
                              Shook, Hardy and Bacon, LLP
 6                            2555 Grand Boulevard
                              Kansas City, Missouri 64108
 7                       BY:  MR. ANTHONY R. MARTINEZ, ESQ.

 8  ─────
    Transcribed by:           Echo Reporting, Inc.
 9                            Contracted Court Reporter/
                              Transcriber
10                            echoreporting@yahoo.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1  Wednesday, March 29, 2023                           10:07 a.m.
2                    P-R-O-C-E-E-D-I-N-G-S
3                            --oOo--
4         THE CLERK:  Now calling civil case 16-MD-2741, In
5  re Roundup Products Liability Litigation.
6      Will counsel please state your appearances for the
7  record, starting with the plaintiff?
8         MS. GREENWALD:  Sure.
9      Good morning, your Honor.  Robin Greenwald for the
10 plaintiffs.
11        THE COURT:  Good morning.
12        MS. GREENWALD:  Good morning.
13        MR. DICKENS:  Good morning, your Honor.  David
14 Dickens on behalf of plaintiffs.
15        MS. ANDRUS:  And Lori Andrus on behalf of
16 plaintiffs.  Good morning, your Honor.
17        THE COURT:  Good morning.
18        MR. STEKLOFF:  Good morning, your Honor.  Brian
19 Stekloff and Anthony Martinez on behalf of Monsanto.
20        THE COURT: Good morning.  Okay.  Not too much to
21 discuss today, I guess.  I was glad to hear that Doctor
22 Portier is doing better.  I mean, on the issue of, you know,
23 taking another deposition for him, let me just say right off
24 the bat that I do not think that the development with Judge
25 Friedland's opinion from the Ninth Circuit and the EPA sort

1  of redoing its thing in response to Judge Friedland's
2  opinion -- I don't think that -- I don't think that warrants
3  a new deposition.  There are going to be developments every
4  -- you know, every -- significant developments every six
5  months or maybe even more often than that, and you can't do
6  a new preservation deposition every time there's a
7  significant development.  So, you know, once that argument
8  for another deposition is taken away, the question is what's
9  left?  I mean, I don't -- you know, I'm not -- it's not
10 clear to me what's left and why you need to do another
11 preservation deposition for Doctor Portier.
12         MS. GREENWALD:  So if I can just briefly explain
13 that, Judge.  I mean, the recent development was an add-on
14 to the point we were making.  So at the time we took Doctor
15 Portier's deposition -- and to call it a preservation
16 deposition was only so far as I don't think he knew whether
17 he was going to live.  He was very, very sick.  And I think
18 that there's no question, even looking at the video.  He was
19 very ill.  He did the best he could.  He was just in a
20 compromised situation.  It's -- he did a great job.  I'm not
21 criticizing him.  It was just a -- it was a stressful time.
22 He couldn't come to trial.  We had never preserved his
23 deposition.  We had never taken anything that we could play
24 in Missouri.  Under Missouri law, you can only play a
25 deposition.  You can't play prior testimony of a trial.

1    And so it wasn't -- it was obviously to preserve what
2 we could, but it was at a time also when we didn't have
3 preservation depositions across the board as your Honor has
4 allowed for these various witnesses.  And so we also covered
5 areas that are really more appropriately covered, for
6 example, for Doctor Ritz or others.  Again, you can always
7 exclude things.  We can take those things out of what we
8 have on -- in the can right now.
9    But Doctor Portier is in a better place right now.  And
10 I talked to him, and I asked him how he felt about his
11 deposition versus what he feels he's up to doing now.  And
12 he said he feels stronger and better able to present
13 testimony for the long term now.
14         THE COURT:  But in terms of substance, I mean,
15 what was not done that -- was there stuff that was not done
16 that could have been done during his deposition?
17         MS. GREENWALD:  Well, no, no.  I wouldn't say
18 that.  I would say we covered as much as we could in a less
19 than perfect situation.  And since this is going to be a
20 preservation deposition that's going to go along with all of
21 these MDL cases when they're remanded, we would like to put
22 his best foot forward.  If we can't, we have a deposition.
23 I -- you're right.  We have one.  I'm not going to say we
24 don't.  But it was not ideal.  It was not an ideal
25 situation.

1           THE COURT:  Okay.  I mean, I guess, you know, if
2 -- you know, if you were to -- so the -- so I'm not going to
3 allow Doctor Portier's deposition to be taken again for
4 purposes of preservation based on what I have in front of me
5 now.  I mean, if you want to show me, you know, some
6 excerpts from his deposition that show that he was really
7 struggling to make, you know, important points such that it
8 would be, you know, prejudicial to future plaintiffs in
9 future trials to use this version of his testimony, you
10 know, I'm happy to consider that.  But my sense is that, you
11 know, what you're saying is that, you know, if we took his
12 deposition again, we could probably have better -- you know,
13 it could probably be a little better than it was.  And I
14 just don't think -- you know, to the extent that that's what
15 you are conveying, I don't think that's reason enough to do
16 it.
17          MS. GREENWALD:  Yeah.  I mean, I guess the one
18 thing I would clarify is it wasn't a preservation deposition
19 in the traditional sense.  I mean, I needed trial testimony
20 from Doctor Portier, and he physically couldn't make it to
21 my trial.
22          THE COURT:  And it was on general causation,
23 right?
24          MS. GREENWALD:  It was only on general causation,
25 absolutely.

1          THE COURT: Right.
2          MS. GREENWALD: But, you know, it didn't -- it
3 wasn't in the format that one would want to do for a
4 preservation deposition going forward for the MDL.  I
5 understand, your Honor.  I'm not --
6          THE COURT: But what does that -- what does that
7 mean?
8          MS. GREENWALD: Well, I mean, it was not as tight
9 as it would have been ideal to have.  We would have had more
10 time.  We would have made sure that we had the pieces of the
11 story that we wanted in a particular way.  We just didn't
12 have the time to do that.  Again, it's -- we do have a
13 deposition.  I do not want to mislead this Court.  We have a
14 deposition, and it's a good deposition and the best we could
15 have done under the circumstances.
16         THE COURT: Okay.  Well, yeah.  So the request is
17 denied if you -- you know, but like I said, if -- I'm happy
18 to -- if you want show me something that can sort of show
19 that it would -- you know, plaintiffs in future trials would
20 be really disadvantaged by using this version of the
21 testimony as opposed to a new version, I'm happy to -- I'm
22 happy to consider that.
23         MS. GREENWALD: If I can just make one other
24 point.  I'm sorry.  I know you ruled.  I just want to
25 clarify one other thing about the withdrawal of the interim

1 decision by EPA.  That means that the only valid
2 registration for Roundup is the 1993 registration, because
3 the 2020 interim decision was, of course, the final decision
4 from the interim of 2016 and 2017.  And the majority of the
5 cross-examination questions of Doctor Portier are about the
6 fact that EPA has always found it to be safe and continues
7 to find it safe today, and that it is not carcinogenic,
8 which is what was withdrawn.  And so I do think that for
9 purposes of that, it makes that testimony --
10          THE COURT:  But you say it was withdrawn, but it's
11 not like the company's permission to market the product was
12 withdrawn.
13          MS. GREENWALD:  A hundred-percent.  That is
14 correct.  But I don't think it's accurate that today
15 Monsanto could say that EPA's current pronouncement is that
16 Roundup, or glyphosate as they call it, is not carcinogenic.
17 They would have to say the last pronouncement from EPA was
18 in 1993 -- the last registration.
19          THE COURT:  Well, I understand what you're -- I
20 understand what you're saying, but I can only respond with
21 the same point that I made at the outset, which is that
22 there could be a statement from EPA in six months, and, you
23 know, one side is going to describe it as this, you know,
24 game changing statement.  And, you know, we're not going to
25 be doing preservation depositions of general causation

1 experts every time, you know, there's a, you know,
2 significant development or a new peer-reviewed study or
3 whatever.  It's -- I don't think -- I don't think that -- I
4 think that sort of defeats the purpose of what we were, you
5 know, trying to accomplish with these preservation
6 depositions.
7           MS. GREENWALD:  Okay.  Thank you.
8           THE COURT:  Okay.  So is there a proposed order
9 then that I need to sign?  Or did I do that already in the
10 wake of the last case management conference?
11          MS. GREENWALD:  I don't recall.  But if you want
12 us to draft an order, it would then -- we know that -- we
13 know the witnesses who are subject to the preservation
14 order.  We could draft a -- I don't remember.  Does anyone
15 remember?  I know we --
16          THE COURT:  I have a --
17          MR. STEKLOFF:  We have a -- we have a joint order,
18 your Honor.  Well, I don't -- Mr. Martinez might have the --
19 I don't know if it's been filed, but we -- I think we're --
20          MR. MARTINEZ:  It has been filed.
21          MR. STEKLOFF:  -- if it has, we'll get you the
22 docket number --
23          THE COURT:  Oh, I have it.
24          MR. STEKLOFF:  -- we were just waiting on this.
25 But it generally applied to whichever experts were going to

10

1  be deposed.
2          THE COURT: Yeah. I have it in front of me. So
3  it's just about Doctor Ritz, Jameson, and Weisenburger, I
4  think.
5          MR. STEKLOFF: That's correct, your Honor.
6          THE COURT: All right. So I can just sign that
7  then. Okay.
8          MR. STEKLOFF: That's correct.
9          THE COURT: All right. So I'll -- I will -- I'll
10 file that order.
11      And then the issue of appointing a special master to
12 review, you know, recommendation from lead counsel about,
13 you know, dispersal of common benefit funds.
14      First of all, does Monsanto care about this? Does
15 Monsanto have anything to say about it?
16         MR. STEKLOFF: No. We appreciate that Mr. Dickens
17 and Ms. Greenwald and Ms. Wagstaff sent us the draft before
18 it was filed, but we don't have a position on -- we're
19 comfortable with the process that was laid out. We don't
20 have a position on how it should go forward and where -- and
21 we defer to your Honor on the -- who should be appointed as
22 the special master, if that's the route you go down.
23         THE COURT: Okay. And for the plaintiffs, it
24 sounds like what you're saying is there's a strong
25 preference to having some -- for having somebody familiar

with the ins and outs of this particular MDL.

          MR. DICKENS:  Thank you, your Honor.  Yes, that is correct.  And I think the reason for that is it will ultimately save both time and money, to the extent that that special master is going to have to review the materials but also be familiar with what was important to the litigation and important to this MDL as a whole.  So someone already familiar and who's kind of gone through those steps would on day one already be far ahead of somebody who's coming in new.

          THE COURT:  I think that makes sense.  Although, as I said last time, you know, you propose Mr. Feinberg, and, you know, there is a question of how Mr. Feinberg's valuable and expensive time should be used.  The other person you proposed, Ms. Ellis, what can you tell me about what -- sort of what this normally costs or what Ms. Ellis would charge?  I mean, I assume you've had a discussion with her about that.

          MR. DICKENS:  We've had some preliminary discussions as to her availability and whether or not she would be able and willing and have the time in order to do this.  We have not had an in-depth conversation as to how much that that would ultimately cost --

          THE COURT:  The money presumably comes from the common benefit fund, right?

12

1            MR. DICKENS:  That would be our understanding,
2 yes.
3            THE COURT:  Yeah.  Okay.  And then -- and what do
4 you know about, you know, what her normal rate would be or
5 what the typical rate would be for this?
6            MR. DICKENS:  Frankly, your Honor, I don't recall.
7 I know we have worked with special masters in the past.  Of
8 where she kind of falls on -- you know, even the spectrum, I
9 wouldn't be able to say right now.  I'm trying to recall one
10 of the past litigations and, you know, even what we're
11 paying and continue to pay Mr. Feinberg for his role in the
12 settlement side of it.  I know we pay him.  Frankly, I can't
13 recall how much that is.
14            THE COURT:  I'm sure it's more than -- it's an
15 amount greater than I can even conceive.
16            MR. DICKENS:  It is a substantial amount, and --
17 but on kind of an hourly rate, I don't know exactly what
18 that would be for this --
19            THE COURT:  But should it be an -- should it be an
20 hourly rate, or should it be a monthly fee, or an hourly
21 rate of X not to exceed a monthly fee of Y, or, what -- how
22 do these things usually work?
23            MR. DICKENS:  Yeah.  And I think it's either/or.
24 You know, in this case, it's a little different because the
25 pot of money -- the pie that's going to be divvied up is

1 smaller than some of the other litigations and some of the
2 litigations we cite in the submission to this Court, as well
3 as those amount of firms who have submitted hours --
4          THE COURT:  Yeah, I was going to say it might be
5 less complex than other ones just because, other than lead
6 counsel, I'm guessing there's not going to be much claim for
7 money from the common benefit fund, right?
8          MR. DICKENS:  That's right, at least with respect
9 to hours submitted now.  Now, there may be other objections
10 that come in as to how that's going to be divided.  But with
11 respect to hours, I think that's correct.  And I -- our goal
12 as of right now, and that could always change, is that, you
13 know, hopefully there can be within ourselves and the other
14 leadership on the, you know, steering committee that was
15 appointed by the Court, that there would be some type of
16 joint proposal to that special master that can all be agreed
17 to.  So I do think --
18          THE COURT:  That sounds -- certainly sounds like a
19 good way to approach things.
20          MR. DICKENS:  So I do think we can kind of work
21 with the special master as to what makes sense for counsel
22 in this case, for the Court, certainly, and for the special
23 master as to how that should be structured, whether it be a
24 monthly fee, you know, get some insight from that special
25 master how long they expect this is going to take once the

1  time has been audited and we have a general sense of what
2  we're looking at, and work it out from there.
3         THE COURT:  Okay.  But, obviously, that's
4  something that needs to be worked out upfront upon -- you
5  know, upon appointment of the special master, right?
6         MR. DICKENS:  That's correct, yes.
7         THE COURT:  Okay.  I think it would be helpful to
8  get some guidance from you on that.  You know, you've
9  proposed this person.  You know, what is this person going
10 to be charging?  Can you -- you know, can you send me a
11 letter?  I mean, I'm not -- you know, I'm not 100-percent
12 sure it needs to be, you know, on the docket.  We can -- you
13 know, we can discuss that.  I know some people are -- you
14 know, are -- you know, feel that disclosing their hourly
15 rates -- you know, it's sort of akin to a trade secret.  I'm
16 not sure I've ever quite understood that.  But, you know, I
17 can think about whether it should go on the docket.  Why
18 don't you -- yeah, you know, why don't you -- why don't you
19 just file a letter on the docket by Friday letting me know
20 what the compensation structure should be for Ms. Ellis.
21        MR. DICKENS:  That's not a problem, your Honor.
22 We will make sure we get that done by Friday.
23        THE COURT:  Okay.  And I'll think about that a
24 little further and call around and stuff like that.  And I'm
25 -- you know, I am mindful of your comment that, you know, it

1 would be very helpful to have somebody familiar with the
2 MDL.  So I'll look forward to seeing what you file on
3 Friday, and we'll go from there.
4          MR. DICKENS:  Will do.  Thank you, your Honor.
5          THE COURT:  Do you have a -- well, I'm guessing
6 you have not submitted a proposed order for the appointment
7 of the special master?
8          MR. DICKENS:  We have not, your Honor.  We didn't
9 want to kind of put the cart before the horse --
10          THE COURT:  Yeah.
11          MR. DICKENS:  -- with respect to who that person
12 was going to be.
13          THE COURT:  Okay.  Because I remember when I did
14 -- I had -- when I appointed a special master in the
15 Facebook MDL, there were a bunch of i's we needed to dot and
16 t's we needed to cross in terms of complying with the
17 Federal Rules of Civil Procedure about appointment of
18 federal master -- special master, so -- I'll want to get a
19 proposed order from you that complies, and I'll edit it
20 accordingly.  But we can -- like you said, that's a little
21 cart before the horse.
22          MR. DICKENS:  Will do.
23          THE COURT:  Okay.  Is there anything else that we
24 can do for you today?  I know, by the way, that I have a
25 pending summary judgment motion from the -- I think the one

16

1  remaining wave four case.  Is that right?  Nobody?
2  Nobody --
3          MR. STEKLOFF:  I'm looking to -- hold on.  I will
4  try to see that.  I'm looking --
5          THE COURT:  I think it's -- I think it -- there's
6  one pending summary judgment motion from a wave four case,
7  and I apologize for the delay in getting to it.  I've just
8  had a few, you know, complications in other cases, and I --
9  but it's very much at the top of my list.  So I'll be
10 addressing that very soon.
11         MR. STEKLOFF:  Thank you.
12         THE COURT:  Nothing else we can do for you?
13         MR. STEKLOFF:  Oh, yeah, I think that's -- I see
14 that there is one pending case, I think in the <u>Ingles</u>
15 (phonetic) case.  So that's consistent, your Honor.
16         THE COURT:  Yeah. Okay.  And then wave five is
17 coming up when?  Like, May or something like that?
18         MR. MARTINEZ:  It's currently happening.  I think
19 we're in five D right now on expert reports.
20         MR. STEKLOFF:  It looks like Daubert and summary
21 judgment briefs are due on June 16th, oppositions on June
22 30th.  Everything will be fully briefed by end of July.  And
23 then the calendar has a Daubert hearing, if necessary, on
24 September 1st.
25         THE COURT:  Okay.

```
                                                             17
 1            MR. STEKLOFF:  And wave six is -- wave six is not
 2   far behind.  They're all staggered, so --
 3            THE COURT:  Should.  All right.  Great.  Thanks
 4   very much.
 5            MR. STEKLOFF:  Thanks, your Honor.
 6            MS. GREENWALD:  Thank you, your Honor.
 7            MR. DICKENS:  Thank you, your Honor.
 8       (Proceedings concluded at 10:26 a.m.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                                  18
 1                    CERTIFICATE OF TRANSCRIBER
 2
 3        I certify that the foregoing is a true and correct
 4   transcript, to the best of my ability, of the above pages of
 5   the official electronic sound recording provided to me by
 6   the U.S. District Court, Northern District of California, of
 7   the proceedings taken on the date and time previously stated
 8   in the above matter.
 9        I further certify that I am neither counsel for,
10   related to, nor employed by any of the parties to the action
11   in which this hearing was taken; and, further, that I am not
12   financially nor otherwise interested in the outcome of the
13   action.

                 [signature]

16              Echo Reporting, Inc., Transcriber
17                 Saturday, August 19, 2023
```