**GOLDSTEIN GRECO, P.C.**
Brian A. Goldstein, Esq.
2354 Wehrle Drive
Buffalo, NY 14221
Telephone:    (844) 716-4653
Facsimile:    (716) 568-9090
Email:  bg@goldsteingreco.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS | MDL No. 2741 |
| LIABILITY LITIGATION | Case No. 3:16-md-02741-VC |
| This document relates to: | |
| Badzinski, Daniel<br>3:19-cv-06276-VC | |
| Vavara, Cynthia<br>3:19-cv-08118-VC | |
| Faut, Todd<br>3:20-cv-01021-VC | |
| Hillpot, Francine<br>3:20-cv-02425-VC | |
| Lakso, Bruce<br>3:20-cv-01101-VC | |
| Lee, Phillip<br>3:20-cv-00576-VC | |
| Leys, David<br>3:20-cv-01099-VC | |
| Nesbitt, John<br>3:20-cv-03068-VC | |
| Pietrzak, David<br>3:20-cv-01020-VC | |
| Potter, Aaron | |

- 1 -

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

3:20-cv-01102-VC

Bauman, Norman C.
3:20-cv-01765-VC

Chrisman, Margaret
3:20-cv-06659-VC

Komm, Leon R.
3:20-cv-06196-VC

Hammett, Richard L.
3:20-cv-06236-VC

Liesinger, Mary Ann
3:21-cv-05221-VC

Nusbaum, Richard
3:21-cv-05624-VC

Pasternak, Gerald
3:21-cv-05311-VC

Pierce, Paul
3:21-cv-05623-VC

Ray, Duff
3:21-cv-06563-VC

LoBianco, George
3:21-cv-07020-VC

Struzik, Edward
3:21-cv-08443-VC

Estruch, Mark
3:22-cv-01334-VC

Suchan, Kelli
3:22-cv-00862-VC

Brown, Deborah
3:23-cv-01473-VC

Proctor, Irene
3:23-cv-01818-VC

Frueh, William
3:23-cv-01817-VC

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

1

Faso, Alphonso
3:23-cv-01751-VC

2

Hill, Thomas
3:23-cv-01928-VC

3

4

5

**AFFIDAVIT OF BRIAN A. GOLDSTEIN**
**IN OPPOSITION TO MOTION TO DISMISS**

6

7

STATE OF NEW YORK      )
                            : ss.

8

COUNTY OF ERIE         )

9

    **BRIAN A. GOLDSTEIN, ESQ.** being duly sworn, deposes and says:

10

    1.    I am an attorney duly licensed to practice in the State of New York.  I am fully

11

familiar with the facts and circumstances herein.

12

    2.    This Affidavit will focus on the issue before this Court – determination of

13

attorneys' fees for the specific actions in this Court which are ready for fee determination.

14

    3.    Cellino & Barnes, PC and Cellino Law, LLP's (hereinafter "Cellino") additional

15

allegations are addressed to the extent relevant to the relief requested – the determination of

16

attorneys' fees in these specific resolved actions in this Court which are ripe for determination.

17

**SYNOPSIS**

18

    4.    I petitioned this Court for a fee determination in this case which was brought,

19

managed, and which resolved in this Court.

20

    5.    Cellino *subsequently* rushed to file an "amendment" to a *single local county court*

21

*nursing home case* objecting to this Court's jurisdiction and demanding this Court defer to the

22

subsequently filed amendment and the local county court.  Not only in this case but in *hundreds*

23

*of other unnamed and unidentified* federal cases *in any and all stages of litigation* pending

24

before multiple *unnamed and unidentified* federal courts.

25

- 3 -

6. Cellino's typically disparaging motion to dismiss our petitions cites its *subsequent* amendment in the county court nursing home case as a "*prior*" pending case.

7. Cellino admonishes this Court, authorized by the JPML to oversee and manage this MDL and this case, that it does not have jurisdiction. But, in Cellino's view, a county court judge in a completely unrelated single nursing home case does - along with hundreds of other federal court cases in all courts and in all stages of litigation.

8. The issue properly before this Court is simply the division of fees in <u>this</u> case <u>between the law firm of Cellino Law</u> and <u>the law firm of Goldstein Greco</u>.

9. Cellino invites this Court to enter the tabloid saga of "Cellino & Barnes." Cellino & Barnes, PC was established in 1998. Between 2005 and 2007 the name was necessarily changed to the (first) Barnes Firm, PC. Then it was changed back to Cellino & Barnes, PC in 2008. In 2013 Cellino & Barnes, LC was established in California notwithstanding the fact that neither Cellino nor Barnes were admitted in California. In 2017 the name was necessarily changed to the (second) Barnes Firm, LC. But in the interval, yet another Barnes Firm, LLC (third) was established in 2016. And, after Cellino litigated against his partner and his law firm between 2017 and 2020; the law firm of Cellino & Barnes, PC was dissolved and the current Cellino Law, LLP and the current (fourth) Barnes Firm, PC emerged. Currently there is one Cellino Law, LLP, one Barnes Firm, PC, and one Barnes Firm, LC.

10. But does any of this matter?

11. Ross Cellino's years of acrimonious and very public litigation that ultimately dissolved his firm of Cellino & Barnes terminated the attorney contracts, attorney contractual obligations, client retainers, and client contractual obligations with the dissolved law firm.

12. Upon Cellino & Barnes' dissolution I entered into an employment agreement with Cellino Law, the client chose me, and the client entered into a retainer agreement with Cellino Law.

- 4 -

13.     The plain language of these agreements is devoid of any mention of any Barnes firm or Cellino & Barnes.

14.     Neither I nor the client had or have any knowledge of, or consented to, any agreement to whatever obligation Cellino has with any Barnes firm or whatever entity is now called Cellino & Barnes.

15.     Whatever confidential obligation Cellino agreed to is for Cellino to satisfy; not me, not Alex,  and not the client.

16.     Cutting through the chaff; the substantive portions of Cellino's motion seeking dismissal on Fed. R. Civ. P. Rule 12(b)(1) and 12 (b)(6) grounds are individually addressed.

17.     There is no objection to this Court "set[ting] a schedule for Cellino & Barnes and Cellino Law to answer the Petition and oppose it on substantive grounds" as sought, in part, by Cellino.

### Fed. R. Civ. P. 12(b)(1)

18.     Cellino is not entitled to dismissal pursuant to FRCP 12(b)(1).

19.     This Court has authority to adjudicate this matter.

20.     This Court comprehensively reviewed jurisdiction and the MDL court's scope of its power in "the control necessarily vested in courts to manage their own affair." This Court held "district courts must be able to redistribute attorney compensation when the situation warrants it.  And in an MDL, the situation will often warrant it…." (Exhibit A)

21.     Such is the case for all counsel performing their respective work for a plaintiff - lead counsel and primary counsel.

22.     MDL courts' authority to oversee, address, and manage primary counsel fees has been well recognized for decades.  In MDL 1657, Hon. Eldon Fallon reviewed the many longstanding foundations underlying MDL court's authority to address attorneys' fees. (Exhibit B)

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

23.    This Court next took great pains to delineate the powers of the MDL Court from state court actions; citing the Eighth Circuit's holding that "state-court cases, related or not, are not before the district court." (Exhibit A)

24.    The corollary is likewise true; MDL cases are federal cases.  They are not before a state court.

25.    Despite Cellino's attempt to circumvent this Court through a scurry of *subsequent* filings before a court with no connection whatsoever to these cases in a *single nursing home county court case;* these cases were filed, prosecuted, managed, and resolved before this Court.

26.    And each petition was properly brought in those individual cases that have resolved and are ready for fee determination in this Court.

27.    This Court; and not a multitude of local county courts which have no connection whatsoever to federal MDL cases in varying stages of litigation - "related or not," has the authority and is the proper venue to determine fees.

28.    This Court is intimately familiar with the years of litigation in this MDL, the management of these cases before it, has already considered the relative work of several classes of attorneys, and has already determined appropriate compensation for those attorneys in this litigation.

29.    Cellino's invite would not only foster but encourage the bringing of fee issues before countless local judges and disparate fee determinations by local judges with limited familiarity with the workings of the MDL, the proceedings, and the relative responsibilities and contributions of various counsel in these actions.

30.    By Cellino's logic, determination of MDL attorneys' fees, including common benefit fees and primary counsel fees, are the purview of innumerable local courts.

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

31.    This Court recognized that "in our system, lawyers regularly pick up where other lawyers left off" (Exhibit A). In the MDL system, the MDL court has the authority, the knowledge, and the best position to make determinations of attorneys' fees distribution in cases before it.

32.    Cellino instead tells this Court that presided over this federal case and this federal MDL litigation for years that it must abdicate and give way to a local county court judge with limited familiarity with federal practice, limited familiarity with MDLs, even less familiarity with the proceedings in this MDL, and no connection whatsoever to this case.

### Fed. R. Civ. P. Rule 12(b)(2)

PERSONAL JURISDICTION

33.    Cellino is not entitled to dismissal pursuant to FRCP 12(b)(2).

34.    Cellino's complaints regarding personal jurisdiction are specious.

35.    Personal jurisdiction exists.

36.    If the logic of Cellino's argument here can be followed:

- Cellino claims entitlement to attorneys' fees <u>in cases before this Court</u> while claiming (a) this Court has no jurisdiction to adjudicate fees in the cases before it and (b) that this Court has no jurisdiction over Cellino?

- Put another way: Cellino claims an interest in numerous cases before this Court, <u>claims the undersigned's work on those cases before this Court inures to Cellino</u>, but denies that it is subject to this Court's jurisdiction and denies this Court has jurisdiction to determine attorneys' fees in the cases before it?

37.    Our *prima facie* showing of personal jurisdiction has not been rebutted through Cellino's submission.

GENERAL JURISDICTION

38.    General jurisdiction exists.

- 7 -

39.     If Cellino claims entitlement to attorneys' fees arising from cases brought and managed for years in this Court; it cannot avoid general jurisdiction.  Litigation of the cases themselves constitutes "continuous and systematic activities."

40.     Either Cellino must concede it had "minimum contacts," "purposefully availed itself of the benefits and protections" of this Court, and had "continuous and systematic" activities before this Court by virtue of the very cases it now claims it is due fees; or it did not, does not, and has no such claim.

SPECIFIC JURISDICTION

41.     Specific jurisdiction exists.

42.     Applying even the most tenuous jurisdictional standard; this fee dispute alleges damages arising from - and directly related to - Cellino's contacts with this forum.

43.     Either Cellino must concede it "purposefully directed its activities" through the cases it claims fees; or it did not, does not, and has no such claim.

**Fed. R. Civ. P. 12(b)(6)**

44.     Cellino is not entitled to dismissal pursuant to Rule 12(b)(6).

45.     Our filings contain abundant factual matter directly supported by the documentary evidence provided.

46.     Our filings include ample documentary evidence - <u>the plain language of which is unambiguous and determinative</u>.

47.     Our filings state a cognizable claim of entitlement to the relief requested.

48.     Even setting aside the evidence not limited to Cellino's own writings inapposite to his sworn Declaration; for the purposes of Cellino's Motion our filings must be construed in the light most favorable to us and our factual allegations must be accepted as true.

**RESIDUAL ALLEGATIONS**

49.     The bucket of bullying tactics Cellino uses to intimidate; common to its many fee disputes, are individually addressed.

50.     The nature of Cellino's practice, but for the Mass Tort department, can be discerned through the New York database (NYSECF).

51.     Of the 108 Cellino & Barnes and Cellino Law matters listed throughout all of New York State; <u>66 are fee disputes Cellino created with dozens of other law firms</u> (**66/108**); the next <u>4 are matters of Ross Cellino suing his own partner and his law firm</u> (4/108).  There are an additional 4 are lawsuits brought by Cellino clients alleging Cellino committed legal malpractice (4/108).  Leaving matters where Cellino represents an actual client in an actual personal injury matter totaling 30/108. (Exhibit C)

52.     It is undisputed I established and ran Cellino's Mass Tort departments for over twenty years.  Contrary to Ross Cellino's representation that Cellino "assumed all costs, expenses and risks associated with the representation of these clients" (Par. 77 Declaration of Ross M. Cellino, sworn to August 11, 2023); Ross Cellino well  knows that among other things I personally contributed 10% of my income to the operation of Cellino's Mass Tort department.

53.     Ross Cellino knows that throughout the years he litigated against his partner and his own law firm; he had me repeatedly reassure my clients that <u>I</u> <u>personally</u> would continue to be their lawyer and that <u>I</u> <u>personally</u> would continue to represent them. (Exhibit A to initial filing)

54.     Ross Cellino knows that after years of litigation against his partner and his own law firm; each of my clients was required to explicitly choose their <u>individual</u> <u>attorney</u> and that each of my clients affirmatively chose <u>me</u> and provided written direction that their file be given to <u>me</u>. (Exhibit D)

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

55. Ross Cellino knows that none of these clients ever retained this "Barnes" firm. He knows that none of these clients have any knowledge of, nor did they agree to, whatever confidential arrangement he concocted with Barnes.

56. Ross Cellino knows that neither Alex nor I ever worked for this "Barnes" firm. He knows that whatever settlement agreement he arrived at with Barnes was confidential and was never shared with the attorneys.

57. Simply put, if Cellino is ultimately determined to be entitled to any fees, Ross Cellino knows it is his responsibility to satisfy whatever terms are in his private arrangement with Barnes. Not me, not Alex, and not the clients.

58. Ross Cellino knows that he personally recruited me to his new firm.

59. Ross Cellino knows that I was and am the only attorney who represented each plaintiff from inception through the present; that I was the only attorney admitted to practice in each of these actions in this MDL; that I was the only attorney of record in each case in this MDL; that Cellino "does not have any [other] attorney in [its] office experienced to handle Mass Tort cases"; and that it was and is in each Mass Tort client's "best interest to continue to be represented by [me]." (Exhibit D to initial filing)

60. Ross Cellino knows that he reduced, re-reduced, re-re reduced, and re-re-re reduced staffing and funding of the Mass Tort department and that he was eliminating one of the last two assistants despite hundreds of cases in varying stages of litigation before multiple courts.

61. Ross Cellino knows that he unilaterally "changed" (violated) the terms of attorneys' contracts, including mine, and that he refused to pay attorneys the salaries and benefits he had contracted to pay, including mine.

62. Ross Cellino knows that he restricted disbursements and delayed payments to clients.

63.    Ross Cellino knows that he repeatedly urged "we are in need of as many settlements as possible", that he directed attorneys to settle as many cases as quickly as possible, and that he explicitly ordered attorneys to "adjust the low value for your cases." (Exhibit B, C to initial filing)

64.    Ross Cellino knows that he decided to close the Mass Tort department and that over several months we negotiated an agreement which I relied upon before taking on the obligation of forming Goldstein Greco with all that it entailed.

65.    Ross Cellino knows that he demanded **"no… legal obligation to continue representing [Mass Tort] clients"**, insisted I **take "100% of the Mass Tort cases"** and "**not leave any Mass Tort cases**", directed that Cellino would "officially withdraw" on every single Mass Tort client that did not retain me, acknowledged that Cellino "does not have any attorney in [its] office experienced to handle Mass Tort cases" and that it was in each Mass Tort client's "best interest to continue to be represented by [me]." (Exhibit D to initial filing)

66.    Ross Cellino knows that *after* he no longer wanted any Mass Tort cases, and *after* we had come to agreement, I worked to ensure – as he insisted – that each of my clients came with me *rather than have Cellino withdraw on their cases.* (Exhibit I to initial filing)

67.    Ross Cellino knows that within days of my negotiated departure, he reneged on our agreement.

68.    Ross Cellino knows that it was only *after* I had filed for fee determination in this case did Cellino run to "amend" a complaint in a *single local county court nursing home case* trying to avoid this Court by adding *hundreds of unidentified and unnamed cases in multiple unidentified and unnamed federal courts.*

<u>First Discrepancy</u>

69.    While trying the upmost to keep out of the weeds; it cannot be ignored that from 2017 - 2023 Attorney Christopher Berloth represented Cellino & Barnes *against Ross Cellino.*

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

70.   Mr. Berloth *now represents Ross Cellino.*

71.   Certainly some conflicts can be waived; however, from earliest representation Mr. Berloth represented:   Ross Cellino "[has] a pretense to manufacture claims", asserts "meritless" legal theories, manufactures "allegations [that] are pretextual [and] false", induced "substantial amounts" of investment which were detrimentally relied upon, "refused to engage in good faith settlement negotiations", "engaged in acts of bad faith", engaged in improper solicitation, made "threats", "improperly attempted to terminate … valid agreement", filed "baseless" pleadings, engaged in "malicious and defamatory" conduct, had "issues [with] credibility", "violated… Court.. Order", "illicitly solicited… attorneys and employees", **"[the] mass torts division is extremely successful and efficient in its handling of the cases", "[the mass torts division] clearly optimizes the firm's resources and effectiveness",** Ross Cellino attempted to "pillage and pirate… attorneys and employees", makes allegations that are "patently false", makes allegations that are "entirely disingenuous, speculative, conclusory, and unsupported", seeks a status in which "clients will be substantially harmed", engaged in "disparaging and damaging conduct", attempted to disrupt disbursements, put forth allegations that are "disingenuous and lack credibility", and engaged in widespread "reprehensible conduct." (Exhibit E)(emphasis provided)

72.   Mr. Berloth subsequently "caught" Ross Cellino engaging in multiple surreptitious "unauthorized and improper actions", pirating "confidential and proprietary information", "improperly providing [third-parties] access" to databases for the unlawful "copying and downloading [of] confidential and proprietary information", violating of Court orders, and violating fiduciary duties. (Exhibit F)

73.   Mr. Berloth neglects to inform this Court that while advocating against Cellino and the lawyers acting under Cellino's direction; his client improperly contacted hundreds of

clients that "were handled by Mr. Goldstein and team for the past three years", misled them, and misrepresented their very representation. (Exhibit 11, Berloth Declaration)

74. Further, Mr. Berloth participated in the deposition of Ross Cellino wherein the testimony included:

A. "My philosophy has been that [attorneys] should get fifty percent of the fees that they bring in if its personal business." (p. 47, Exhibit G)

A. **"And I agree, if you file a false document with a Court you should get suspended…."** (p. 163, Exhibit G)

A. "I said to [the attorneys]… frankly you can take your cases and… start your own firm." (p. 67, Exhibit G)

A. "I informed [the attorneys] that they had options… they can start their own firm"(p. 68, Exhibit G)

A. "I told [the attorneys] what their options were; they can start their own firm."(p. 69, Exhibit G)

A. "[The attorneys] had an option to start their own firm, yes." (p. 69, Exhibit G)

Q. **Well since Goldstein joined your firm, he's settled, what, a hundred and seventy million dollars in mass tort cases?**

A. **He's done very well, for the firm and for himself and for our clients.**

Q. **So far he seems to know what he's doing?**

A. **Absolutely.**

(p. 222, Exhibit G)

75. Within weeks of soliciting me to join his firm, Cellino began violating the contract he had offered and executed.

76. Now, after deciding to shut down the mass tort department, and after negotiating departure terms, Cellino sues me for "100%" of attorneys' fees. (Exhibit 1 to Berloth Declaration)

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

77.     Now, after twenty two years of service, and after personally recruiting me to his new firm,  Cellino sues me, disparages me, and characterizes my work as negligible: "Goldstein was often an absentee overseer given the nature of these cases." (Par. 77 Declaration of Ross M. Cellino, sworn to August 11, 2023)

<u>Second Discrepancy</u>

78.     Addressing Cellino's *subsequently filed* 48 page indictment it terms an "Amended Complaint" in the *single county court nursing home case* (Exhibit 4 to the Berloth Declaration):

- August 31, 20**22**, Ross Cellino personally **confirmed** the terms of our **jointly negotiated agreement** for my departure and the transfer of "100% of the Mass Tort files" from Cellino to Goldstein Greco.   I am to act "Of Counsel" on behalf of Cellino while transferring"100% of the Mass Tort files" from Cellino to Goldstein Greco. Cellino personnel are to "copy the files" to transfer to Goldstein Greco.  Transfer of 100% of the Mass Tort files from Cellino to Goldstein Greco is to be competed "on or before 9/30/22." **There is no ambiguity.**  (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

- August 11, 20**23**, Attorney Ross M. Cellino *avers to this Court under penalty of perjury* that: (a) my departure was "unbeknownst to Cellino Law" (Par. 59); (b) that I "had not provided any notice of … intent to terminate… employment" (Par. 62); (c) that I "misrepresent[ed] to Cellino… about [my] plans to leave (Par. 64); and that "[I]… misrepresented [I was] moving the entire Cellino Law Mass Tort department to the newly established Goldstein Greco firm" (Par. 64) (Declaration of *Attorney* Ross M. Cellino, *sworn to* August 11, 2023).

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

- The sworn Declaration Attorney Ross Cellino submitted to this Court averring that Alex and I engaged in surreptitious stealing of clients of which he was blissfully unaware is false.

Third Discrepancy

79. August 31, 20**22** the plain language of Ross Cellino's email to me and Cellino administration confirms agreement to the **negotiated** separation from Cellino. It also again serves to establish the falsity of Attorney Ross M. Cellino's sworn Declaration to this Court. (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

80. August 11, 20**23** Attorney Ross Cellino *avers to this Court under penalty of perjury* that Alex and I were "caught" surreptitiously "pirating" hundreds of clients and nefariously stealing hundreds of files. (Declaration of *Attorney* Ross M. Cellino, *sworn to* August 11, 2023)

81. Ross Cellino expects this Court to believe that his response to this treachery was to keep me <u>on payroll</u>, to keep me <u>in my office</u> <u>at Cellino</u>, to <u>make me</u> "<u>Of Counsel</u>" <u>to act on behalf of Cellino</u>, to confirm his insistence <u>I retain</u> "<u>100% of the Mass Tort files</u>," to assign <u>Cellino personnel</u> to copy "600+ files" for me to take with me, to encourage me to take <u>Cellino personnel</u> with me, and for Cellino to continue to <u>pay me</u> my regular "10% <u>commission</u> on cases." (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

- The first sentence of Ross Cellino's email states, "As a follow-up to our conversation, you and Alex will continue on CL's payroll till the end of this week." This sentence establishes that Cellino and I had been negotiating the terms of my separation prior to this "follow-up" which memorialized the negotiated terms. (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

- The second sentence of Ross Cellino's email states, "Starting next week, you and Alex will be "Of Counsel" to CL till September 30, 2022." This sentence establishes that

- 15 -

Cellino had me continuing to acting for and on behalf of Cellino for weeks while transferring "100% of the Mass Tort files" from Cellino to Goldstein Greco.  October 1, 2022 was set as the date of my formal withdrawal from Cellino. (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

- The third sentence of Ross Cellino's email states, "During this time. You will work with Granit [Perzhita, "Granit"] to digitally copy the files that will be following you." This sentence establishes that Ross Cellino was well aware and assigned Cellino personnel to assist me in transferring "100% of the Mass Tort files" from Cellino to Goldstein Greco. (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

- The fourth sentence of Ross Cellino's email states, "You have agreed to take 100% of the Mass Tort files so that there will be no obligation of CL to follow up on any of Mass Tort files." This sentence establishes that Cellino and I had been actively negotiating and that Cellino wanted me to take every single Mass Tort file to avoid all further obligation on the files. Importantly, Cellino does not mention any prior cases, nor does he write "you are taking 100%"; Cellino writes "You have agreed." As simply, unequivocally, and clearly stated by Cellino; one of the conditions Cellino had asked for  - and one of the conditions I had agreed to - was the transfer 100% of the Mass Tort files from Cellino to Goldstein Greco. (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)(emphasis provided)

- The fifth sentence of Ross Cellino's email states, "There are 600+ files that need to be attended to." This sentence establishes that Cellino knew, understood, and agreed that I was working to transfer all "600+ files" from Cellino to Goldstein Greco. (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

- The sixth sentence of Ross Cellino's email states, "Granit will stay on our payroll and if he does not follow you in your practice we will have a position available for him." This sentence establishes that Cellino (a) had no objection to my soliciting Cellino employees to

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

join Goldstein Greco and (b) that Cellino was paying Cellino employees to assist me in the transfer of "100% of the Mass Tort files" from Cellino to Goldstein Greco (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

- • The seventh sentence of Ross Cellino's email states, "That CL will no longer pay for any disbursements needed for files that will be following you." This sentence evidences one of the reasons Cellino welcomed and insisted upon the transfer of "100% of the Mass Tort files" and "600+ files" from Cellino to Goldstein Greco was to relieve Cellino from paying disbursements on these files. (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

- • The eighth sentence of Ross Cellino's email states, "Arrangements need to be made by you to open your own disbursement checking account to cover any costs that may come up between now and 9/30/22." This sentence again evidences Cellino's desire to relieve Cellino from paying disbursements on these files even where it would reasonably expect to recover its disbursements from later settlement proceeds. (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

- • The ninth sentence of Ross Cellino's email states, "You will move to your new office on or before 9/30/22." This sentence, confirms Cellino was aware I had already secured a "new office" and that we had agreed for me to  remain working at Cellino (with Cellino personnel assisting, copying files, and with access to Cellino's database) for weeks while continuing the transfer all of the files from Cellino to Goldstein Greco.  This proves the negotiated departure was consensual and devoid of nefarious activities.  That Cellino would have permitted unrestricted weeks of transition with an attorney who was "caught" surreptitiously "pirating" hundreds of files more than strains credulity. (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

- The tenth sentence of Ross Cellino's email states, "For any cases that you settle through 9/30/22, you will receive your 10% commission on those cases even if the money and liens are not resolved by 9/30/22." This sentence establishes that Cellino did not believe it had any right of offset or recoupment against Alex or me by reason of our separation or the taking 600+ files. Cellino promised he would continue paying our full commissions even after separating from Cellino. Cellino sought no reduction or offset for any purported alleged damages (of which there were none). (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

- The eleventh sentence of Ross Cellino's email states, "For Mass Tort files, you are proposing a 60/40 split in your favor and for all other files, 50/50." This sentence establishes that Cellino understood and acknowledged that Goldstein Greco would be entitled to attorneys' fees – and a significant percentages of fees - on these cases. (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

- The twelfth sentence of Ross Cellino's email states, "I will need to obtain Richie [Barne's] consent on the proposed fee split." This sentence establishes that Cellino was not only aware of, but supported, the 60/40 and 50/50 divisions we had negotiated and that he intended to pursue consent to finalize that arrangement. (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

82. Ross Cellino's confirmatory email unambiguously speaks for itself.

83. The sworn Declaration Attorney Ross Cellino submitted to this Court averring that Alex and I engaged in surreptitious stealing of clients of which he was blissfully unaware is false.

<u>Fourth Discrepancy</u>

84. <u>I did not sue Ross Cellino</u>. After twenty-two years, *after* Ross Cellino decided to close the Mass Tort department, and *after* Ross Cellino and I had discussions spanning

- 18 -

months, and *after* agreeing to the terms which I relied upon before investing the time, effort and expense of establishing Goldstein Greco; <u>Ross Cellino sued me</u>.

85.   The procedural history is telling:

- The first case that resolved at Goldstein Greco was a Niagara County nursing home case that was a personal referral to me.  Per my contract with Cellino (Exhibit K to initial filing), and per Cellino's policy (Exhibit I), **I would have been entitled to 50% of attorneys' fees** *even if the case had resolved at Cellino*. In good faith and notwithstanding the substantial additional work performed at Goldstein Greco, I promptly sent Cellino copies of the release, settlement statement, insurance company check, client affidavit, a check reimbursing all expenses, and confirmation that **I would pay Cellino the full  50% of the attorneys' fees**. (Exhibit J1, J2, J3)

- Cellino's response was to **sue me** *in Erie County*, New York in the case that was venued in ***Niagara County***, New York **demanding "<u>100% of the fee</u>."** (Exhibit 1 to Berloth Declaration)

- Cellino intentionally filed in *Erie* County to avoid the *Niagara* County Judge who had presided over the underlying case and who had just awarded Cellino "only" 25% of attorneys' fees in a sister "friends and family" case the Niagara County Judge had also presided over.  (Exhibit K)

- Now apparent that Cellino had no intention of abiding by our agreement, I took the time to identify cases that had resolved and brought fee petitions in their respective underlying Courts, as here.

- *After* the instant petitions were brought in the handful of resolved cases in their proper courts; Cellino rushed to file its customarily vitriolic "Amended Complaint" *<u>in the single county court nursing home case</u>*  (Exhibit 1 to Berloth Declaration)

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

_trying to add "hundreds" and "perhaps a thousand" federal court cases to the completely unrelated local county court nursing home case_. (Exhibit 1 to Berloth Declaration)

- Cellino initially concedes "the First New York Actio**n** was commenced as a fee dispute on one case" (Berloth Declaration) (emphasis provided).

- Cellino's frenzied "amended complaint" did not even bother to identify a single case, did not bother to name a single plaintiff, did not bother to identify a single court, did not bother to determine or differentiate if the cases were even filed, did not bother determine if any of the cases were resolved or even in a posture for fee allocation. (Exhibit 1 to Berloth Declaration)

- Cellino's panic to try _anything_ to avoid appropriate fee determination by this Court generated its Hail Mary – the filing of an "amendment" in the only case it could - _a completely unrelated local county court action_.

- Continuing the gaslighting, instead of plainly stating that Cellino rushed to file _something somewhere_ only _after_ our petitions were filed; Cellino  craftily describes our petitions as having been filed "a mere four days" before the amendment. (p. 18 Berloth Declaration)

- And Cellino then represents its _subsequently filed_ "Amended Complaint" in the local nursing home case as an action "pending," "parallel," "contemporaneous," and "one of multiple parallel federal and state suits." (Berloth Declaration)

- Cellino next goes on to misrepresent to this Court that "the New York Action**s** predate this litigation." (pp. 18,21 Berloth Declaration) (emphasis provided)

- Cellino attempts to use its _subsequently filed_ "Amended Complaint" in the _single unrelated county court nursing home case_ to (a) piggy back _hundreds of unidentified federal cases in all stages of litigation in unidentified_

- 20 -

*courts* onto the single nursing home case *after* the instant petitions were properly pending in the correct courts and (b) to convince this Court to divest itself from jurisdiction. (Exhibit 1 to Berloth Declaration)

86.    And Cellino says *we* have forum shopped?

### Fifth Discrepancy

87.    October. 20**22,** Ross Cellino *again* confirms all files are to be transferred from Cellino to Goldstein Greco; that I was the only attorney "able to handle Mass Tort cases"; that it was in each "client's best interest to <u>continue</u> to be represented by Goldstein" at Goldstein Greco; and that Cellino would "officially withdraw" on any client who did not leave Cellino and go with me to Goldstien Greco. (Exhibit D of initial filing)

88.    The August 11, 20**23** sworn Declaration Attorney Ross Cellino submitted to this Court averring that Alex and I engaged in surreptitious stealing of clients of which he was blissfully unaware is false.

### Sixth Discrepancy

89.    August, 20**22** Cellino confirms transfer of 100% of the Mass Tort files from Cellino to Goldstein Greco is to be competed "on or before 9/30/22." (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

90.    <u>Dated</u> engagement agreements for each of the at-issue plaintiffs with Goldstein Greco were provided to this Court.  (Exhibit I of initial filing)

91.    Each and every Goldstein Greco retainer agreement demonstrates these clients were *not retained* until *after* Cellino and I agreed - *at Cellino's request* - "not [to] leave any Mass Tort cases for Cellino" (Exhibit O to initial filing; additional copy attached for ease of reference as Exhibit H)

92.     Now, August 11, 20**23**, Ross Cellino avers "the evidence" [none provided by Cellino] "demonstrates" "pre-resignation surreptitious solicitation and pirating of clients." (Declaration of Ross M. Cellino, sworn to August 11, 2023)

93.     The sworn Declaration Attorney Ross Cellino submitted to this Court averring that Alex and I engaged in surreptitious stealing of clients of which he was blissfully unaware is false.

<u>Seventh Discrepancy</u>

94.     The terms of my departure were negotiated over meetings spanning many months.

95.     In addition to individual meetings, or June 24, 20**21** Ross Cellino held a general attorneys' meeting wherein he advised all attorneys we should consider taking our cases and leaving and that he would leave with his cases if he were in our shoes. (Exhibit C to initial filing)

96.     Ross Cellino's August, September, October 20**22** writings confirm my negotiated separation from Cellino and  falsity of Attorney Ross M. Cellino's sworn Declaration to this Court. (Exhibit H, N, O)

97.     August 11, 20**23**, Attorney Ross M. Cellino *avers to this Court under penalty of perjury* that: (a) my departure was "**unbeknownst** to Cellino Law" (Par. 59); (b) that I "had **not provided any notice** of … intent to terminate… employment" (Par. 62); (c) that I "misrepresent[ed] to Cellino… about [my] plans to leave (Par. 64); and that "[I]… **misrepresented [I was] moving the entire Cellino Law Mass Tort department** to the newly established Goldstein Greco firm". (Par. 64) (Declaration of *Attorney* Ross M. Cellino, *sworn to* August 11, 2023)(emphasis provided)

98.     There is ample direct proof of the falsity of Ross Cellino's sworn Declaration to this Court.

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

99.     **Cellino made no effort whatsoever to keep, recover, or even contact a single one of the hundreds of clients he falsely claims were "surreptitiously" being "pirated", <u>including his relatives.</u>**

100.   All clients, including close relatives and personal friends of Ross Cellino, were transferred per our agreement and with Cellino's assistance.

101.    Among my clients are personal friends and relatives of Cellino including one of **Ross Cellino's immediate relations**.  Her mass tort case is noted as an attorney referral from AnnMarie Cellino (Ross Cellino's daughter and Cellino Law's COO).

102.   Ross Cellino's immediate relation called AnnMarie Cellino in November, 20<u>22</u> regarding the transfer of her file.  AnnMarie Cellino confirmed to her that all was in order, reassured her that all Cellino mass tort cases were cooperatively and properly transferred to Goldstein Greco, and directed her to sign and return our retainer to continue representation – which she did (Exhibit O; first name redacted)

103.   My letter to my client - cc to AnnMarie Cellino – confirms:

- "As you are aware, **Cellino Law is no longer pursuing [mass tort] cases**"

- "I am … able to offer **all Cellino Law mass tort cases**… continued seamless representation with the same attorneys"

- "Should you wish me to continue pursuit of your case without interruption **along with all other Cellino Law mass tort cases,** kindly sign and return the enclosed/attached retainer agreement"

- "**cc:  AnnMarie Cellino (<u>acellino@cellinolaw.com</u>...)**"

(Exhibit O; first name redacted)(emphasis provided)

104.   Attorney Ross M. Cellino *avers to this Court* that my departure was "**unbeknownst**" to him (Par. 59), without "**notice**"(Par. 62), and that I "**misrepresented [I was]**

**moving the entire Cellino Law Mass Tort department"** (Par. 64) (Declaration of *Attorney* Ross M. Cellino, *sworn to* August 11, 2023)(emphasis provided)

105.   Ross Cellino expects this Court to believe that he took no action whatsoever to try to stop what he now claims was the wholesale "surreptitious solicitation and pirating of clients" or to keep, or recover, or even to contact a single client – not even his immediate relatives.  (Declaration of *Attorney* Ross M. Cellino, *sworn to* August 11, 2023)

106.   The sworn Declaration Attorney Ross Cellino submitted to this Court averring that Alex and I engaged in surreptitious stealing of clients of which he was blissfully unaware is false.

<u>Eighth Discrepancy</u>

107.   July, 20**22**, Cellino filed one of his favored fee dispute actions against an attorney who had separated from Cellino with concerns over Cellino's troubling behaviors. (Exhibit C to initial filing) In that single car crash case Cellino drew a judge it liked and *affirmed under penalty of perjury* there were no related actions or proceedings. (Exhibit L)

108.   As here, Cellino then attempted to pile on a smaller but significant number (ultimately thirty-four) of unrelated cases pending before multiple different courts and multiple different judges in an unabashed effort get their fee determinations in front of their preferred judge.   Cellino's effort was understandably called out as improper and "judge shopping." (Exhibit L)

109.   Now in unprecedented brazenness, Cellino attempts to use a single case (this time a *local county court nursing home case*) to piggy back *"hundreds" or "perhaps a thousand" unidentified federal Mass Tort cases in all stages of litigation before multiple unidentified federal courts onto the single county court case.*

110.   And, with a straight face, Cellino projects *we* are forum shopping?

<u>Ninth Discrepancy</u>

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

111.   Even *before* Cellino's confirmatory August 31, 2022 email; Cellino had *already* spoken with his daughter/Cellino's COO Annmarie Cellino and Cellino's Director of IT about facilitating the transfer all files from Cellino to Goldstein Greco. (Exhibit N to initial filing; additional copy attached for ease of reference as Exhibit O)

112.   Cellino had his daughter and Cellino's Director of IT assist me in selecting the platform and software package for Goldstein Greco that would "cater to Mass Tort practices." (Exhibit N to initial filing; additional copy attached for ease of reference as Exhibit O)

113.   Ross Cellino had his daughter and Cellino's Director of IT assist and expedite the IT set up and transfer of files from Cellino to Goldstein Greco but *avers to this Court under penalty of perjury* that: (a) my departure was "unbeknownst to Cellino Law" (Par. 59); (b) that I "had not provided any notice of … intent to terminate… employment" (Par. 62); (c) that I "misrepresent[ed] to Cellino… about [his] plans to leave (Par. 64); and that "[I]… misrepresented [I was] moving the entire Cellino Law Mass Tort department to the newly established Goldstein Greco firm" (Par. 64) (Declaration of Attorney Ross M. Cellino, *sworn to* August 11, 2023).

114.   The sworn Declaration Attorney Ross Cellino submitted to this Court averring that Alex and I engaged in surreptitious stealing of clients of which he was blissfully unaware is false.

<u>Tenth Discrepancy</u>

115.   October 20, 20<u>**22**</u> Cellino confirms our negotiated division of attorneys' fees for the various categories of cases transferred from Cellino to Goldstein Greco; **<u>including this case</u>** and agrees that for any case that might fall out due to "Barnes" litigation, "each case will become a fee dispute <u>on a case by case basis</u>." (Exhibit N)(emphasis provided)

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

116.   Refuting this agreement as well,  Cellino sues me and bulk e-mails a form letter to any lawyer's name it could find on the public MDL website demanding it "be named as an additional payee on any settlement check"  (Exhibit F to initial filing)

117.   Now, August 11, 20**23**, Cellino wants to piggy back *hundreds of unidentified federal cases in all stages of litigation in unidentified MDLs before multiple judges onto a single county court nursing home case.*

<u>Eleventh Discrepancy</u>

118.   **2017 – 2020**   Cellino repeatedly directs attorneys in person and in writing to "contact <u>your</u> <u>clients</u> to reassure them that <u>you</u> will continue to represent them" to blunt the allegations Cellino publicly made against his partner and his firm and to reassure clients that Cellino's threat to "*burn [Cellino & Barnes] to the ground*" would not cause the clients to leave. (Exhibit A to initial filing)(emphasis provided)

119.   I maintained  appropriate  contact  with  my  clients  notwithstanding  Cellino's requests.  (Exhibit J2, J3)

120.   My clients stayed with me despite their justified concerns regarding Cellino's behavior. (Exhibit J2, J3).

121.   **2020** At dissolution of Cellino & Barnes each at-issue client provided unequivocal written direction that "<u>Brian A. Goldstein Esq.</u> <u>is requested to continue representing me</u> on all open matters." (Exhibit D)(emphasis provided)

122.   My clients came with me to continue to be represented by me.

123.   **October 2022** Cellino declares it is in each "client's best interest to <u>continue</u> to be represented <u>by</u> <u>Goldstein</u>" at Goldstein Greco and that Cellino would "officially withdraw" on any client who did not go with me to Goldstein Greco. (Exhibit D of initial filing)(emphasis provided)

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

124.   Now, August 11, 20**23**, Cellino "take[s] substantial issue with any…. characterizations of Goldstein saying these clients were 'his', or his characterizations of things "he" did for these clients…."(Par. 77 Declaration of Attorney Ross M. Cellino, *sworn to* August 11, 2023).

<u>Twelfth Discrepancy</u>

110.   Finally, each client is a client that <u>Cellino would have "officially withdraw[n]" on</u> (*leaving Cellino with <u>no</u> entitlement to fees* and leaving the client *<u>with</u> <u>no</u> <u>representation</u>*) unless they came with me to Goldstein Greco. (Exhibit D to initial filing)

111.   The substantial work done for each individual client at Goldstein Greco is summarized in our initial filing.

112.   Cellino advises this Court that the work performed at Cellino for these clients was minimal and/or negligible: "Goldstein was often an absentee overseer given the nature of these cases." (Par. 77 Declaration of Ross M. Cellino, sworn to August 11, 2023)

113.   Cellino's representation to this Court regarding the scope work done at Cellino in "these cases" limits fee entitlement, if any, to zero or *de minimis*.

**CONCLUSION**

For the reasons set forth in our original submission and herein, we respectfully request this Honorable Court enter an Order:

- Denying Cellino & Barnes and Cellino Law's Motion to Dismiss;
- Setting a schedule for Cellino & Barnes and Cellino Law to answer and for Goldstein Greco to reply;
- Assessing the veracity of the August 11, 2023 Declaration of Ross Cellino;
- And for such other and further relief as the Court deems proper

Brian A. Goldstein, Esq.

Sworn to before me this
31st day of August, 2023.

Victoria J. Mueller
Notary Public, State of New York
Reg. No. 01MU0005177
Qualified in Erie County
Commission Expires 04/05/2027

Notary Public

- 28 -

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC

1

## **CERTIFICATE OF SERVICE**

2

3        I certify that on the 31st day of August, 2023, I electronically transmitted the foregoing

4 **AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS**  to the Clerk of the court using the

5 ECF system for filing and transmittal, and a true and correct copy of the foregoing document

6 was served electronically or by another manner as authorized by FED. R. CIV. P. 5.

7

8                                        _/s/Brian A. Goldstein_____
                                         Brian A. Goldstein

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
3:16-md-02741-VC