# EXHIBIT G

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

-------------------------------------------------------

ROSS M. CELLINO, JR.,

                          Petitioner,

    -vs-

CELLINO & BARNES, P.C.
and STEPHEN E. BARNES,

                          Respondents.

-------------------------------------------------------

                        Sworn Examination of

ROSS MICHAEL CELLINO, JR., Petitioner, taken pursuant to

Notice under Article 63 of the Civil Practice Law and Rules,

in the law offices of DUKE, HOLZMAN, PHOTIADIS & GRESENS,

LLP, 701 Seneca Street, Suite 750, Buffalo, New York, taken

on July 23, 2018, commencing at 10:10 A.M., before SUE ANN

SIMONIN, Notary Public.

```
                                                                5

 1      APPEARANCES:

 2      CONNORS, LLP,
        By TERRENCE M. CONNORS, ESQ.,
 3      and RANDALL D. WHITE, ESQ.,
        1000 Liberty Building,
 4      424 Main Street,
        Buffalo, New York 14202,
 5      Appearing for the Petitioner.

 6      LIPSITZ GREEN SCIME CAMBRIA LLP,
        By PAUL J. CAMBRIA, JR., ESQ.,
 7      42 Delaware Avenue,
        Suite 120,
 8      Buffalo, New York 14202,
        Appearing for the Respondents.
 9
        DUKE, HOLZMAN, PHOTIADIS & GRESENS, LLP,
10      By GREGORY P. PHOTIADIS, ESQ.,
        and CHRISTOPHER M. BERLOTH, ESQ.,
11      701 Seneca Street,
        Suite 750,
12      Buffalo, New York 14210,
        Appearing for the Respondents.
13
        PRESENT:   STEPHEN E. BARNES, ESQ.
14

15

16         (The following stipulations were entered

17      into by all parties.)

18         It is hereby stipulated by and between counsel

19      for the respective parties that the oath of the

20      Referee is waived, that filing and certification

21      of the transcript are waived, and that all

22      objections, except as to the form of the

23      questions, are reserved until the time of trial.
```

```
 1    they chose to follow me -- and I made it clear
 2    that I am not soliciting them in any way, but if
 3    they chose to follow me or they chose to follow
 4    Steve -- if they did follow me, then I would use
 5    that commercial; if they didn't follow me, then I
 6    wouldn't use that commercial.
 7  Q. In your discussions with them about that, did you
 8    discuss potential financial remuneration to them?
 9  A. No, I did not.
10  Q. You didn't talk about what the splits would be or
11    anything like that on a case?
12  MR. CONNORS:  Object to the form.
13  THE WITNESS:  Well, at my initial meeting with the
14    attorneys I presented my views, which I've
15    presented to them prior to dissolution, that I
16    felt certain things ought to change in terms of
17    fees that are generated from their own personal
18    business.  My philosophy has been that they
19    should get fifty percent of the fees that they
20    bring in if it's personal business.  Steve and I
21    are deadlocked on that issue.  He believes that
22    one third is more than sufficient.
23  BY MR. CAMBRIA:
```

1  Q.  Okay.  And you didn't see that as a fiduciary
2      breach?
3  MR. CONNORS:  Object to form.
4  THE WITNESS:  No.
5  BY MR. CAMBRIA:
6  Q.  Okay.
7  A.  I saw it as something to protect the assets of
8      the PC.
9  Q.  Well, to encourage someone to leave the PC --
10 A.  I didn't encourage anybody to leave the PC.
11 Q.  All right.
12 A.  I said to them if there is a dissolution you will
13     have options, you can go to the Barnes firm if
14     there is a dissolution or you can go to the
15     Cellino firm, or frankly you can take your cases
16     and find another firm or start your own firm.
17 Q.  Well, if they took their cases and found another
18     firm, that would be detrimental to the PC, would
19     it not?
20 A.  Yes.  I wanted them to know they had an option.
21 Q.  So you advised them that they could take cases --
22     one of their options would be to take cases from
23     the PC?

1   MR. CONNORS: Object to the form.
2   THE WITNESS: These are lawyers. They know what
3       their options are.
4   BY MR. CAMBRIA:
5   Q. That's not the question.
6   A. But yeah, I did.
7   Q. The question is, so you advised them that one of
8       their options was that they could take cases from
9       the PC?
10  MR. CONNORS: Object to the form.
11  THE WITNESS: No, I didn't say that.
12  BY MR. CAMBRIA:
13  Q. I thought you just told us that you told them
14      they had options, they could join the Cellino
15      firm, they could join the Barnes firm or they
16      could take their cases and be on their own.
17      Didn't you just tell us that?
18  MR. CONNORS: Object to form.
19  THE WITNESS: I informed them, I didn't advise them,
20      I informed them that they had options; the
21      Cellino firm, the Barnes firm or they can start
22      their own firm.
23  BY MR. CAMBRIA:

NYSCEF DOC. NO. 261    Case 3:16-md-02741-VC   Document 17248-7   Filed 08/31/23   Page 7 of 9   RECEIVED NYSCEF: 10/09/2018

69

```
 1  Q.  All right.  And take clients from the PC to start
 2      their own firm?
 3  MR. CONNORS:  Object to the form.
 4  BY MR. CAMBRIA:
 5  Q.  You told them they had that option, correct?
 6  MR. CONNORS:  Form.
 7  THE WITNESS:  I did not encourage anybody to take
 8      cases from the firm.
 9  BY MR. CAMBRIA:
10  Q.  But you told them they --
11  A.  I told them what their options were; they can
12      start their own firm.
13  Q.  But you told them they could do that?
14  MR. CONNORS:  Form of the question.
15  BY MR. CAMBRIA:
16  Q.  That was one of their options, correct?
17  MR. CONNORS:  Form.
18  THE WITNESS:  They had an option to start their own
19      firm, yes.
20  BY MR. CAMBRIA:
21  Q.  And take clients from the PC?
22  MR. CONNORS:  Object to the form.
23  THE WITNESS:  I didn't advise them to take clients
```

```
 1   MR. CONNORS:  Object to the form.
 2   THE WITNESS:  The Appellate Division on my case, if
 3      you read the decision, focused on an OCA form
 4      that was sent to the Appellate Division when you
 5      would sign up a case.  They claimed that I
 6      intentionally filed a false document.  And that
 7      is not true, I did not intentionally file a false
 8      document.
 9   BY MR. CAMBRIA:
10   Q.  But that was the finding of the Appellate
11      Division, wasn't it?
12   MR. CONNORS:  Object to the form.
13   THE WITNESS:  That was the finding of a Referee that
14      the Appellate Division adopted.
15   BY MR. CAMBRIA:
16   Q.  They adopted it, correct?
17   A.  Yes.  And I agree, if you file a false document
18      with a Court you should get suspended, but I
19      didn't file a false document to the Court.  It
20      was an inadvertent mistake.
21   Q.  However, what happened as a result of that
22      suspension is that there was some publication of
23      the fact that you were suspended?
```

222

```
 1            and we could tell them what we think how the case
 2            will progress, and we can have the expertise of
 3            lead counsel helping to increase the amount of
 4            settlement.  At the end of the day I believe the
 5            firm would make more money, and I believe the
 6            client would end up with more money.
 7       Q.   And that's simply a belief, but you don't have
 8            any facts --
 9       A.   It's impossible --
10       Q.   -- to back it up?
11       A.   It's impossible to state with certainty that
12            Steve's belief would work or my belief would
13            work.
14       Q.   Okay.  Well, since Goldstein joined your firm,
15            he's settled, what, a hundred and seventy million
16            dollars in mass tort cases?
17       A.   He's done very well, for the firm and for himself
18            and for our clients.
19       Q.   So far he seems to know what he's doing?
20       A.   Absolutely.
21       Q.   And is he also a doctor?
22       A.   Yes.
23       Q.   Okay.  At any time did you attempt to partner up
```