# EXHIBIT J2

SUPREME COURT OF THE STATE OF NEW YORK
**COUNTY OF NIAGARA**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**TERAH JACKSON AS ADMINISTRATOR OF THE
ESTATE OF RONALD WINANS, DECEASED**

| | |
|---|---|
| | **AFFIDAVIT OF** |
| | **TERAH JACKSON** |
| **Plaintiffs,** | **Index No. E169868/2019** |

**v.**

**NEWFANE REHABILITATION & HEALTH CENTER,**

     **Defendant.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Terah Jackson first being duly sworn, deposes and states:

1. I am the daughter of the late Ronald Winans who was neglected and who expired due to the negligence of the Newfane Rehabilitaiton & Helath Center.

2. I was referred directly to attorney Brian Goldstein by a long-term close personal friend.

3. I agreed to meet with Mr. Goldstein only at the strong recommendation of my trusted personal friend.

4. I had very serious reservations about Cellino & Barnes due to the ongoing public lawsuit and questions about the operation and future of the firm.

5. I would not have met with or hired Cellino & Barnes or anyone at Cellino & Barnes except for the personal referral and recommendation to Mr. Goldstein individually. Following meeting with Mr. Goldstein I agreed to hire him only with the assurance that he would personally handle my case.

6. I was appointed representative of my late father's Estate and was the plaintiff in this action individually and as representative of the Estate of Ronald Winans.

7. After hiring Mr. Goldstein, the ongoing public lawsuit between Mr. Cellino and Mr. Barnes continued with disturbing personal and professional revelations, disparagements, and accusations by them and their lawyers.

8. On several occasions I was so disturbed by the information, accusations and conduct I told Mr. Goldstein that I would be changing firms.

9. It was only Mr. Goldstein's reassurance to me on each occasion that he was personally handling my case and that he would continue to personally handle my case that I agreed to continue my case with him.

10. When Mr. Goldstein advised me about opening own practice, I was given options for continuing my case. I made certain that my case would be continued by Mr. Goldstein at his firm.

11. I would not have met with or hired anyone at Cellino Law. I would have taken my case elsewhere.

12. Mr. Goldstein agreed to continue my case at his firm and did continue my case at his firm at my request. Had Mr. Goldstein not agreed to continue my case; I would have taken my case elsewhere.

13. I was kept well aware, was fully informed, and actively participated throughout the continuation of my case by Mr. Goldstein which resulted in the settlement of my case at Mr. Goldstein's firm.

14. Mr. Goldstein fully discussed and reviewed my options and alternatives, the pluses and minuses of settling or continuing to litigate, the finality of resolution, the proposed settlement, settlement terms, potential and verified liens and subrogation rights, the required

further proceedings in surrogates court, the costs/disbursements, the attorneys' fees and proposed fee division, and the anticipated gross and net proceeds with me to my complete satisfaction and answered all questions to my complete satisfaction at his firm.

15. Mr. Goldstein obtained my final agreement and consent to formally settle my case at his firm.

16. Mr. Goldstein identified and confirmed applicable liens and rights of subrogation and the significant reduction of the applicable lien and rights of subrogation at his firm.

17. Mr. Goldstein reviewed and modified the settlement documents including the indemnification agreement proposed by the defendant at his firm.

18. Mr. Goldstein drafted and received approval of his drafted release document at his firm.

19. Mr. Goldstein conducted medical evaluation and review to assess and support proper apportionment of the settlement between wrongful death and conscious pain and suffering at his firm.

20. Mr. Goldstein drafted my petition, the attorney's affidavit, all supporting materials and exhibits, filed the Motion seeking approval of settlement, approval of payment of lien/subrogation, approval of attorneys' fees, approval of disbursements/costs and apportionment between wrongful death and conscious pain and suffering at his firm.

21. Mr. Goldstein drafted the proposed order approving settlement, payment of lien/subrogation, attorneys' fees, disbursements/costs, and apportionment between wrongful death and conscious pain and suffering at his firm.

22. Upon a finding of due case shown by Mr. Goldstein at his firm; this Court entered an order approving reimbursement of all disbursements/costs (fully reimbursing all costs to Cellino & Barnes/Cellino Law and to Mr. Goldstein respectively) and approving attorneys' fees.

23. Mr. Goldstein drafted the Notice of Entry and entered the order at his firm.

24. Mr. Goldstein drafted the Stipulation of Discontinuance at his firm.

25. Mr. Goldstein remains involved and will continue to remain involved at his firm as necessary throughout the Surrogates Court proceedings required so that the net proceeds can be distributed and the case can be closed.

26. Mr. Goldstein was my only attorney throughout the entire case. I had no contact at all - ever - from any other attorney at Cellino & Barnes or Cellino Law.

27. I would not have brought my case to Cellino & Barnes or to Cellino Law; I brought my case to Mr. Goldstein and I would have removed my case from Cellino & Barnes and/or Cellino Law except for Mr. Goldstein.

28. I respectfully believe that dividing attorneys' fees 50% to Cellino Law and 50% to Mr. Goldstein is fair and equitable and I consent to same.

29. I will make myself available to the Court to provide any further information that may be necessary.

_____
TERAH A. JACKSON

Sworn to before me this 4TH
day of January, 2023.

_____
Notary Public / Commissioner of Deeds

BRIAN A. GOLDSTEIN
Notary Public, State of New York
Qualified in Ene County
My Commission Expires Jan. 13, 2024