**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, NW
Washington, DC 20005
Tel:  202-898-5800
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:  202-942-5000
Fax: 202-942-5999

**SHOOK, HARDY & BACON L.L.P.**
Jennise W. Stubbs (*pro hac vice*)
(jstubbs@shb.com)
Ryan S. Killian (CA Bar No. 294512)
(rkillian@shb.com)
600 Travis Street, Suite 3400
Houston, TX 77002
Tel:  713-227-8008
Fax: 713-227-9508

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Raymond Mistich v. Monsanto Company et al.*, Case No. 3:23-cv-04015-VC | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>Date: September 21, 2023<br>Time: 10:00 a.m.<br>Courtroom: 4 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii
INTRODUCTION AND ISSUES TO BE DECIDED ................................................................. 1
FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................ 2
LEGAL STANDARDS ................................................................................................................ 4
ARGUMENT ................................................................................................................................ 5

    I.    Plaintiffs Cannot Possibly Recover Against Harry's, Which Was Fraudulently Joined. ............................................................................................................................ 5

        A.    The *only* evidence regarding Harry's is that Mr. Mistich last purchased Roundup from Harry's in 1991. ................................................................... 7

        B.    Plaintiffs' attempt to minimize Ms. Mistich's testimony fails. ...................... 8

        C.    Plaintiffs' reliance on allegations is insufficient. ............................................. 9

    II.    Monsanto's Removal Notice was Timely. ................................................................ 11

        A.    Plaintiffs acted in bad faith to prevent removal by falsely alleging a 2019 purchase from Harry's in the Amended Petition after correctly alleging in the initial Petition that the last purchase from Harry's occurred in 1991. ........................................................................................ 12

        B.    Plaintiffs' Motion overstates the extent to which they pursued their claims against Harry's. ................................................................................ 13

        C.    Plaintiffs claim that Monsanto should have deposed Mr. Mistich while he was alive while omitting the fact that Monsanto tried to depose Mr. Mistich. ...................................................................................................... 14

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aguayo v. AMCO Ins. Co.*,
  59 F. Supp. 3d 1225 (D.N.M. 2014) ........................................................................14

*In re Anthem, Inc.*,
  No. 15-CV-2874-LHK, 2015 WL 5286992 (N.D. Cal. Sept. 9, 2015)......................4

*Arias v. Follet Higher Educ. Corp.*,
  No. 8:18-cv-01965, 2019 WL 484192 (C.D. Cal. Feb. 7, 2019) ..............................5

*Ayala v. Enerco Group, Inc.*,
  569 Fed. App'x. 241 (5th Cir. 2014) ........................................................................6

*D'Aunoy v. Monsanto Company et al.*,
  Case No. 3:20-cv-01014-VC (N.D. Cal.) ..............................................................2, 6

*Diaz v. Goodyear Tire and Rubber Co.*,
  Civil Action No. 07-353-FJP-CN, 2008 WL 4528186 (M.D. La. Oct. 1, 2008).......6

*Dietrich v. Boeing Co.*,
  14 F.4th 1089 (9th Cir. 2021) ....................................................................................5

*Grancare, LLC v. Thrower by & through Mills*,
  889 F.3d 543 (9th Cir. 2018) ..........................................................................4, 9, 10

*Hunter v. Philip Morris USA*,
  582 F.3d 1039 (9th Cir. 2009) .................................................................................10

*Kalfsbeek Charter v. FCA US, LLC*,
  540 F.Supp 3d 939, 942 (C.D. Cal. 2021) ...............................................................13

*McCown v. Samsung SDI Co., Ltd.*,
  5:22-CV-00976-SPG-KK, 2022 WL 17077492 (C.D. Cal. Nov. 17, 2022)............13

*Morris v. Princess Cruises, Inc.*,
  236 F.3d 1061 (9th Cir. 2001) ...................................................................................4

*NKD Diversified Enterprises, Inc. v. First Mercury Ins. Co.*,
  1:14-CV-00183-AWI, 2014 WL 1671659 (E.D. Cal. Apr. 28, 2014).....................14

*Ritchey v. Upjohn Drug Co.*,
  139 F.3d 1313 (9th Cir. 1998) ...............................................................................4, 9

*Sessions v. Chrysler Corp.*,
　517 F.2d 759 (9th Cir. 1975) ..................................................................................................10

**Other State Cases**

*Alexander v. Toyota Motor Sales, U.S.A.*,
　123 So. 3d 712 (La. 2013) .......................................................................................................6

*D'Aunoy vs. Monsanto Company, Et Al*, No. 2019-10100, Orleans Parish Civil
　District Court. 162 ..................................................................................................................12

*Nelton v. Astro-Lounger Mfg. Co., Inc.*,
　542 So. 2d 128 (La. App. 1st Cir. 1989)...................................................................................6

*In re Roundup Products Liab. Litig. (Caranci)*,
　16-MD-02741-VC, 2023 WL 3814773 (N.D. Cal. June 5, 2023) ..........................................13

*In re Roundup Products Liab. Litig. (Mignone)*,
　16-MD-02741-VC, 2022 WL 4281361 (N.D. Cal. Sept. 15, 2022) ...................................8, 10

*In re Roundup Products Liab. Litig. (Pike)*,
　16-MD-02741-VC, 2021 WL 4315486 .............................................................................10, 11

*In re Roundup Products Liab. Litig. (Renteria)*,
　No. 16-MD-02741-VC, 2022 WL 17839995 ........................................................................10

*In re Roundup Products Liab. Litig. (Roybal)*,
　16-MD-02741-VC, 2021 WL 5149862, at *2 (N.D. Cal. Nov. 5, 2021).................................5

*In re Roundup Products Liab. Litig. (Salas)*,
　16-MD-02741-VC, 2021 WL 5149862 (N.D. Cal. Nov. 5, 2021) ................................. passim

**Federal Statutes**

28 U.S.C.
　§ 1441(b)(2) ............................................................................................................................4

　§ 1446(b)(3) .....................................................................................................................5, 9, 11

　§ 1446(c)(1) ...........................................................................................................4, 11, 13, 14

**Other State Statutes**

Louisiana Products Liability Act ............................................................................................5, 6

**Other Authorities**

Rule 12(b)(6)...............................................................................................................................9

- iii -
OPPOSITION TO MOTION TO REMAND
3:16-md-02741-VC & 3:23-cv-04015-VC

**INTRODUCTION AND ISSUES TO BE DECIDED**

Plaintiffs Janeiece Mistich, Russel Mistich, Christine Howell, Christopher Mistich, and Jeffery Mistich have filed a motion to remand raising two issues for this Court to decide: (1) whether Harry's Hardware, Inc. ("Harry's") can possibly be held liable on a negligence theory, and (2) whether Plaintiffs acted in bad faith in order to prevent Monsanto from removing this case. The answer to both questions depends on whether the decedent (and original plaintiff) Raymond Mistich ("Mr. Mistich") ever purchased Roundup®-branded herbicides ("Roundup") from Harry's after 1991. He did not.

The decedent's widow, Janeiece Mistich ("Ms. Mistich"), testified that Mr. Mistich last purchased Roundup from Harry's in 1991, at which time the couple moved to a different town and he started shopping at a different store. This is the ***only evidence*** regarding when Mr. Mistich last purchased Roundup from Harry's. And because Mr. Mistich died without ever being deposed, the couple did not keep receipts, and discovery is closed, this is the only evidence there ever will be.

Plaintiffs cannot possibly establish a negligence claim against Harry's because Harry's did not know, in 1991, of allegations that Roundup causes cancer. Plaintiffs do not dispute this point but instead argue that their new allegation that Mr. Mistich last purchased Roundup from Harry's in 2019—when Harry's was aware of such allegations—makes 2019 the relevant time period. But this allegation is unsupported by any evidence. This Court has repeatedly ruled that speculation does not trump evidence in the fraudulent-joinder context, a ruling that applies here and dictates a finding that Harry's has been fraudulently joined.

The fact that Mr. Mistich last purchased Roundup from Harry's in 1991 is also critical to the bad-faith inquiry. In his initial Petition, Mr. Mistich alleged that he last purchased Roundup from Harry's in 1991—just as his wife would later admit in her testimony. Before Monsanto could ever respond to this petition, however, Mr. Mistich filed an amended petition introducing the false, removal-defeating allegation that he purchased Roundup from Harry's in 2019, the same year Harry's was sued in another Roundup case and thus made aware of the allegations that Roundup is carcinogenic. Ms. Mistich's testimony establishes that this allegation was false, and the initial

- 1 -

1 Petition establishes that it was knowingly false. Intentionally asserting a false allegation to prevent removal is bad faith, and the fact that Plaintiffs successfully concealed the truth for more than a year should not cut off Monsanto's right to removal.

This Court should find that the Harry's was fraudulently joined and that Monsanto's Removal Notice was timely, and should deny Plaintiffs' Motion to Remand.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This lawsuit asserts claims against Monsanto and seeks damages for non-Hodgkin's lymphoma allegedly caused by Roundup. *See, e.g.*, Pet. ¶ 6–7, 96, 117 (attached to Monsanto Company's Notice of Removal of *Mistich* Lawsuit ("Removal Notice") as Ex. 1, ECF No. 2-2 at 3–29). Mr. Mistich filed his Petition on May 28, 2021, asserting claims against both Monsanto Company and Harry's. *Id.* ¶ 2. According to that Petition, Mr. Mistich used Roundup from 1980 to 2019 but only purchased Roundup from Harry's from 1980 to **1991**. *Id.* ¶ 7. The two Harry's stores identified in the Petition are both in New Orleans.[1] *Id.*

On June 23, 2021, Mr. Mistich filed a First Supplement and Amendment to the Original Petition for Damages, ("Amended Petition"), which added a pre-LPLA Professional Vendor claim against Harry's and specifically alleged that Mr. "Mistich purchased Roundup from Harry's Hardware in 2019, which was still selling cancer causing Roundup, after Harry's Hardware was sued for this product in *Yvette D'Aunoy vs. Monsanto Company, Et Al*, Case No. 2019-10100, Orleans Parish Civil District Court." Amended Petition, ¶ 161 (attached to Removal Notice as Ex. 1, ECF No. 2-2 at 35–38. This new allegation, made before Monsanto had filed an answer to the original Petition, turned the case from one that could be immediately removed to one that could not in good faith be removed.

Monsanto and Harry's both filed answers to Mr. Mistich's pleadings. Monsanto then diligently defended the case, including by noticing Mr. Mistich's deposition for March 24, 2022—well within a year of the case's original filing. Defendant Monsanto Company's Notice of

---

[1] Algiers is a neighborhood in New Orleans.

- 2 -
OPPOSITION TO MOTION TO REMAND
3:16-md-02741-VC & 3:23-cv-04015-VC

1   Videotaped Deposition of Plaintiff Raymond Mistich, Exh. A.  Mr. Mistich's counsel informed
2   Monsanto that Mr. Mistich was unable to be deposed for health reasons.  Declaration of Gregory S.
3   Chernack, ¶ 6, Exh. B.  Monsanto subsequently withdrew the deposition notice.  *Id.*  Counsel for
4   Plaintiffs never informed Monsanto that Mr. Mistich was well enough to be deposed, and he died
5   in May 2022.  *Id.*

6   After Mr. Mistich's death, Plaintiffs filed amended petitions, substituting themselves in as
7   plaintiffs and adding wrongful death and survival action claims.  *See* Pls. 2nd Supp. and Am. to the
8   Orig. Pet. for Damages and Incorporated Mot. for Leave (attached to Removal Notice as Ex. 1, ECF
9   No. 2-2 at 86–87); Pls. 3rd Supp. and Am. to the Orig. Pet. for Damages and Incorporated Mot. for
10  Leave (attached to Removal Notice as Ex. 1, ECF No. 2-2 at 99–100).  These amendments
11  supplemented (and thus adopted) Mr. Mistich's prior pleadings and did not include any new or
12  different allegations regarding Mr. Mistich's purchases of Roundup from Harry's.

13  Ms. Mistich was deposed on May 30, 2023.  *See* Janeice Mistich, Deposition Transcript
14  Excerpts, Exh. C.   During her deposition, Ms. Mistich testified that she and her husband moved
15  from New Orleans to Mandeville in 1991.  *Id.* at 118:10–119:15.  Mandeville is across Lake
16  Pontchartrain from New Orleans, a 30-45 minute drive.  *See* Declaration of Cary Becker ¶ 6 (attached
17  to Removal Notice as Ex. 4, ECF No. 2-5).  Ms. Mistich also testified that her husband purchased
18  Roundup from Harry's while the couple lived in New Orleans but that she was "sure" he purchased
19  from a different, much closer Ace Hardware store after the move.  Mistich Depo. Tr. at 116:13–
20  117:6.  She testified that it was "[c]orrect" Mr. Mistich "would not go to New Orleans East [where
21  Harry's was located] to purchase Roundup® after" the move and, when asked when Mr. Mistich last
22  purchased Roundup from Harry's, answered:  "Probably before we moved. We moved to the
23  Northshore in 1991. So I would say 1991."  *Id.* at 119:7–15.

24  Discovery closed on July 14, 2023.  *See* May 8, 2023 Case Management Order (attached to
25  Removal Notice as Ex. 1, ECF No. 2-2 at 128–130).  Based on Ms. Mistich's testimony and a
26  declaration from the President of Harry's, Cary Becker, Monsanto removed this case to federal court
27  on July 21, 2023, within 30 days of receiving the deposition transcript.  Plaintiffs then filed the
28

- 3 -
OPPOSITION TO MOTION TO REMAND
3:16-md-02741-VC & 3:23-cv-04015-VC

1   Motion at issue, arguing that this case should be remanded to state court because (1) Plaintiffs can
2   possibly establish a negligence claim against Harry's, and (2) the removal is barred by 28 U.S.C
3   § 1446(c)(1), which forbids removals more than a year after a case's commencement "unless the
4   district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from
5   removing the action."

## LEGAL STANDARDS

7   "In interpreting federal law, a transferee court in a multidistrict case should look to the law
8   of its own circuit rather than the law of the transferor courts' circuits." *In re Anthem, Inc.*, No. 15-
9   CV-2874-LHK, 2015 WL 5286992, at *2 (N.D. Cal. Sept. 9, 2015).  Thus, "Ninth Circuit precedent,
10  rather than the transfer circuit's precedent, governs this motion."  *In re Roundup Products Liab.*
11  *Litig. (Salas)*, 16-MD-02741-VC, 2021 WL 5149862, at *1 n.1 (N.D. Cal. Nov. 5, 2021).

12  Although complete diversity of citizenship usually is required for a federal court to have
13  diversity jurisdiction, "one exception to the requirement of complete diversity is where a non-
14  diverse defendant has been fraudulently joined." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061,
15  1067 (9th Cir. 2001).  A defendant making a fraudulent-joinder argument is required to show that
16  there is no possibility that the state court would hold the non-diverse co-defendant liable. *Grancare,*
17  *LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018).  When this showing is made,
18  the fraudulently joined defendant's "presence in the lawsuit is ignored" for purposes of determining
19  whether the court has jurisdiction based on diversity of citizenship.  *Morris*, 236 F.3d at 1067.
20  Fraudulent joinder also renders the "forum defendant rule" inapplicable because that rule applies
21  only to "properly joined" defendants. 28 U.S.C. § 1441(b)(2).

22  "Where fraudulent joinder is an issue," courts "will go" beyond the pleadings: "'The
23  defendant seeking removal to the federal court is entitled to present the facts showing the joinder to
24  be fraudulent.'" *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (quoting *McCabe*
25  *v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).  This "approach is reasonable and
26  necessary" because removing defendants "must have the opportunity to show that the [non-diverse
27  defendant] cannot be liable on any theory." *Id.*  Once the removing defendant pierces the pleadings

28
- 4 -
OPPOSITION TO MOTION TO REMAND
3:16-md-02741-VC & 3:23-cv-04015-VC

by presenting evidence showing that a non-diverse defendant has been fraudulently joined, the plaintiff cannot rely on mere allegations in the complaint to seek remand. *See, e.g.*, *Arias v. Follet Higher Educ. Corp.,* No. 8:18-cv-01965 (JLC-JDE), 2019 WL 484192, at *3 (C.D. Cal. Feb. 7, 2019) (denying remand motion; holding that plaintiff did not state a claim against non-diverse defendant because "even assuming [p]laintiff's legal theories are viable, [p]laintiff has offered *no facts* to support these claims" and "submit[ted] no evidence to dispute [d]efendants' version of the facts" that established fraudulent joinder).

Consistent with the foregoing, the removal statute contemplates that even if "the case stated by the initial pleading is not removable," subsequently obtained "other paper" may establish the case's removability. 28 USC § 1446(b)(3). And the Ninth Circuit has recognized that a deposition transcript establishing a case's removability represents "other paper" within the meaning of Section 1446. *See Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021).

This Court has analyzed fraudulent joinder several times in connection with this litigation and has provided guidance based on the "experience the Court has gained throughout the course of this MDL." *In re Roundup Products Liab. Litig. (Roybal)*, 16-MD-02741-VC, 2021 WL 5149862, at *2 (N.D. Cal. Nov. 5, 2021). A plaintiff's conjectural basis for establishing liability against a non-diverse defendant is "not enough to raise a reasonable possibility" of liability, and "speculation, without any evidentiary support, is insufficient." *Id.* at 2–3; *see also Salas*, 2021 WL 5149862, at *1. Moreover, "simply declaring that there is a factual dispute does not make it so." *Salas*, 2021 WL 5149862, at *2. As this Court has observed, in determining whether a defendant is fraudulently joined, a court does not "close its eyes to reality." *Roybal*, 2021 WL 5149862, at *2.

## ARGUMENT

### I. Plaintiffs Cannot Possibly Recover Against Harry's, Which Was Fraudulently Joined.

In its Notice of Removal, Monsanto established that Plaintiffs cannot possibly prevail on any of their three claims against Harry's: (1) Plaintiff's Louisiana Products Liability Act ("LPLA")

1   claim necessarily fails because Harry's is not a "manufacturer" of Roundup;[2] (2) as established by
2   Ms. Mistich's deposition testimony, Harry's cannot possibly be found negligent because Mr.
3   Mistich last purchased Roundup from Harry's in 1991, nearly thirty years before Harry's was made
4   aware of the allegations that Roundup is carcinogenic; and (3) Plaintiffs' pre-LPLA "professional
5   vendor" claim is meritless because Harry's neither held Roundup out to the public as its own product
6   nor controlled the quality of Roundup.[3]  In their Motion, Plaintiffs argue only that they can possibly
7   establish a negligence claim, effectively conceding—as the Notice of Removal conclusively
8   established—that recovery against Harry's on the other claims is impossible.[4] Mot. 5–10. But
9   Plaintiffs also have no possibility of recovering against Harry's via their negligence claim.

10   Under Louisiana law, a non-manufacturing seller "is not liable for damages in negligence
11   unless it knew or should have known that the product sold was defective and failed to declare it."
12   *Diaz v. Goodyear Tire and Rubber Co.*, Civil Action No. 07-353-FJP-CN, 2008 WL 4528186, at *6
13   (M.D. La. Oct. 1, 2008) (citing *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408 (5th Cir. 1993)); *see
14   also Alexander v. Toyota Motor Sales, U.S.A.*, 123 So. 3d 712, 714 (La. 2013).

15   Plaintiffs contend that Harry's had the requisite knowledge as of 2019, when the company
16   was named as a defendant in a different Roundup case.[5]  Mot. at 2, 7, 10.  Without regard to whether
17   Harry's had the requisite knowledge in 2019, Monsanto has established that Harry's most assuredly

---

[2] "The LPLA does not provide a cause of action against sellers of products not falling under the LPLA's definition of 'manufacturer.'" *Ayala v. Enerco Group, Inc.*, 569 Fed. App'x. 241, 245 (5th Cir. 2014) (quoting La. R.S. § 2800.53); *see also* Becker Decl., ¶¶ 9–10.

[3] To be a "professional vendor" potentially subject to liability under this theory, a defendant must (among other things) hold "'the product out to the public as its own'" have a relationship with the product manufacturer rendering it "capable of controlling the quality of the product." *Nelton v. Astro-Lounger Mfg. Co., Inc.*, 542 So. 2d 128, 132 (La. App. 1st Cir. 1989) (quoting *Chappuis v. Sears Roebuck & Co.*, 358 So. 2d 926, 930 (La. 1978)); *see also* Becker Decl., ¶¶ 10–11.

[4] Plaintiffs state that they "have asserted several viable claims against Harry's," Mot. at 6, but the Notice of Removal conclusively establishes the failure of the two other claims asserted against Harry, Notice of Removal, ¶¶ 20–24, 35–37.  Plaintiffs do not rebut this showing.

[5] Harry's was also fraudulently joined in that case, which was removed to federal court, transferred to this MDL, and subsequently resolved.  *See D'Aunoy v. Monsanto Company et al.*, Case No. 3:20-cv-01014-VC (N.D. Cal.).

- 6 -
OPPOSITION TO MOTION TO REMAND
3:16-md-02741-VC & 3:23-cv-04015-VC

did not have the knowledge as of 1991—when Mr. Mistich last purchased Roundup from Harry's. Plaintiffs do not even contend that Harry's had the requisite knowledge as of 1991. Nor could they. Discovery had closed by the time Monsanto removed the case, and they have taken no depositions, written discovery, or developed any facts which could possibly sustain such a claim. Instead, Plaintiffs seek to establish knowledge based only on the allegation that Mr. Mistich purchased Roundup from Harry's in 2019. Thus, the discrete factual issue upon which the fraudulent-joinder determination hinges is whether Mr. Mistich last purchased Roundup from Harry's in 2019 (as Plaintiffs allege) or in 1991 (as the undisputed evidence shows).

      A.      **The *only* evidence regarding Harry's is that Mr. Mistich last purchased Roundup from Harry's in 1991.**

Ms. Mistich's testimony is the only evidence regarding whether and when Mr. Mistich actually purchased Roundup from Harry's. The Harry's stores in question were located in a part of New Orleans referred to as New Orleans East. *See* Pet. ¶ 7; Mistich Depo. Tr. at 116:13–20; Becker Decl. ¶ 4. Mr. and Ms. Mistich moved across Lake Pontchartrain from New Orleans East to Mandeville in 1991. Mistich Depo. Tr. at 118:10–119:15. Ms. Mistich testified that her husband would have purchased from Harry's while the couple lived in New Orleans because that was the local store. *Id.* at 116:13–20, 118:12–21. After the move to Mandeville, however, Ms. Mistich testified that she was "***sure***" her husband shopped at "the Ace Hardware around the corner, because . . . that was closest." *Id.* at 116:25–117:6 (emphasis added). And she specified that she was referring to the Ace Hardware store "on Florida Street," which is indeed in Mandeville and is not owned by Harry's. *Id.*; *see also* Becker Decl. ¶¶ 7–8. Moreover, when asked whether it was true that Mr. Mistich "would not go to New Orleans East to purchase Roundup® after" the couple moved to Mandeville, she answered with a categorical: "Correct." Mistich Depo. Tr. at 119:7–10. Finally, Ms. Mistich was asked when her husband would have purchased "Roundup® in New Orleans"— *i.e.*, from Harry's—for the last time, and answered: "Probably before we moved. We moved to the Northshore in 1991. **So I would say 1991**." *Id.* at 119:11–15 (emphasis added).

This is the only evidence regarding purchases from Harry's. Ms. Mistich testified that they

- 7 -
OPPOSITION TO MOTION TO REMAND
3:16-md-02741-VC & 3:23-cv-04015-VC

did not "keep receipts" or maintain any sort of documentation of Roundup purchases. *Id.* at 22:15–24. And Mr. Mistich was never deposed and never made any sort of sworn declaration or similar claim that he purchased Roundup from Harry's after 1991, let alone in 2019. Moreover, discovery closed on July 14, 2023. Thus, the evidence—the only evidence that there is or will be on this issue—negates Plaintiffs' allegation that Mr. Mistich purchased Roundup from Harry's in 2019.

### B.     Plaintiffs' attempt to minimize Ms. Mistich's testimony fails.

When confronted with evidence establishing fraudulent joinder, plaintiffs in this litigation have often responded with unsupported speculation. Thus, in finding fraudulent joinder, this Court has had to point out, multiple times, that "speculation, without any evidentiary support, is insufficient to" rebut evidence. *Roybal*, 2021 WL 4186714, at *2; *Salas*, 2021 WL 4186714, at *2; *In re Roundup Products Liab. Litig. (Mignone)*, 16-MD-02741-VC, 2022 WL 4281361, at *1 (N.D. Cal. Sept. 15, 2022).

Like plaintiffs before them, Plaintiffs here try to counter Monsanto's evidence with self-serving speculation rather than evidence. Thus, they claim that Ms. Mistich's testimony was not conclusive, and then speculate that Mr. Mistich nonetheless *could* have made the 30-45-minute drive across Lake Pontchartrain to purchase Roundup from Harry's in 2019. Mot. at 9–10. Elsewhere in the Motion, they recognize a contrary possibility—that the allegations regarding purchases from Harry's in 2019 are "mistaken." Mot. at 13. In other words, Plaintiffs' position is that maybe Mr. Mistich purchased Roundup from Harry's after 1991, and maybe he did not. And their argument is that the speculative possibility of a purchase in 2019 is sufficient to rebut Monsanto's evidence. It is not. Plaintiffs were required at this stage in the case to present evidence of a 2019 purchase, and they have failed to do so. Plaintiffs' joinder of Harry's—"based on conclusory allegations, without any evidence, in the face of Monsanto's evidence to the contrary"—was fraudulent. *Roybal*, 2021 WL 4186714, at *2.

In any event, Plaintiffs' argument also relies on a mischaracterization of Ms. Mistich's testimony. While Ms. Mistich used the word "probably" once, she also said she was "sure" that Mr. Mistich would have purchased from the Ace Hardware on Florida Street after the couple moved to

- 8 -

1   Mandeville.  Similarly, when asked if it was correct that Mr. Mistich would not have shopped for
2   Roundup in New Orleans after the move (and therefore not shopped at Harry's), her answer was
3   unequivocal: "Correct."  Ms. Mistich did not caveat and qualify her testimony the way Plaintiffs do
4   in their Motion.  They cannot rewrite it now.[6]

   **C.   Plaintiffs' reliance on allegations is insufficient.**

   Plaintiffs' primary argument is that there is no fraudulent joinder because, on its face, the Petition states a negligence claim against Harry's.  Mot. at 5–8.  If that were all that mattered, however, a defendant's right to remove based on "other paper" would be meaningless, 28 U.S.C. § 1446(b)(3), as would its entitlement to pierce the pleadings to establish fraudulent joinder, *see Ritchey*, 139 F.3d at 1318.  Both of these rules presuppose a scenario where the case is not removable based on the complaint alone.  Indeed, Section 1446(b)(3)'s "other paper" provision applies *only* when "the case stated by the initial pleading is not removable."  Plaintiffs misunderstand the law.

   Plaintiffs' confusion appears to stem from a misreading of the Ninth Circuit's statement in *Grancare* that "[i]f a plaintiff's complaint can withstand a Rule 12(b)(6) motion with respect to a particular defendant, it necessarily follows that the defendant has not been fraudulently joined." 889 F.3d at 550.  In that case, the defendants' arguments were based primarily on the sufficiency of the complaint; the defendants claimed the complaint was "'devoid of allegations that'" the non-diverse defendant "'committed any specific wrongdoing' and failed to 'ascrib[e] any particular act or omission by" that defendant.  *Id.* at 547; *see also id.* at 552 (rejecting "a series of arguments to the effect that Plaintiffs have not adequately pleaded their claims against [the non-diverse defendant], and that the district court did not accord sufficient weight to deficiencies in the complaint").  While making these arguments, the defendants conceded that plaintiffs could have amended their complaint to state a claim against the non-diverse defendant.  *Id.* at 547.  Thus, the primary issue was whether a failure to state a claim under Rule 12(b)(6) was sufficient to establish fraudulent

---

[6] Notably, Plaintiffs' counsel did not ask Ms. Mistich any questions during her deposition.

joinder.[7] *See id.* at 549. It is only when (or to the extent) that a fraudulent-joinder determination is based on the sufficiency of the pleadings that stating a claim necessarily precludes a finding of fraudulent joinder. *See id.* at 550 (discussing *Sessions v. Chrysler Corp.*, 517 F.2d 759, 760 (9th Cir. 1975).

Presiding over the Roundup MDL, this Court has not hesitated to find fraudulent joinder based on evidence even where the complaint alone stated a claim against the non-diverse defendant. *See, e.g.*, *Roybal*, 2021 WL 4186714; *Salas*, 2021 WL 5149862; *In re Roundup Products Liab. Litig. (Pike)*, 16-MD-02741-VC, 2021 WL 4315486, at *1 (N.D. Cal. Sept. 22, 2021; *In re Roundup Products Liab. Litig. (Renteria)*, No. 16-MD-02741-VC, 2022 WL 17839995 (N.D. Cal. Aug. 30, 2022. For example, in *Mignone*, there was no dispute that the plaintiff's complaint stated claims against the non-diverse Wilbur-Ellis defendants. *See* 2022 WL 4281361, at *2. *Evidence* establishing that these defendants were fraudulent joined nonetheless made the case removable. *Id.* at 2. This scenario is no different. While fraudulent joinder cannot be established by the Petition alone, Monsanto has now obtained evidence negating Plaintiffs' core allegations against Harry's and establishing fraudulent joinder. Discovery is over and the record is now closed, and yet Plaintiffs have failed to produce any evidence supporting their claims.

Further, the last date that Mr. Mistich purchased Roundup from Harry's is precisely the sort of "discrete and undisputed" fact that can be readily identified though a summary inquiry. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)). This Court has found fraudulent joinder in Roundup cases when Monsanto establishes that the last date of purchase from a store forecloses the possibility of recovery against a non-diverse retailer defendant. *See Salas*, 2021 WL 5149862, at *1. Here, the Parties do not dispute the dispositive difference between a last purchase in 1991 versus a last purchase in 2019, and the Court should undertake the minimal inquiry necessary to determine

---

[7] The only evidence the *Grancare* defendants provide was the non-diverse defendant's declaration denying the allegations against her. *Id.* at 551. The Court rejected the declaration because "a denial, even a sworn denial, of allegations does not prove their falsity." *Id.* Here, by contrast, the key evidence is a plaintiff's deposition testimony.

- 10 -
OPPOSITION TO MOTION TO REMAND
3:16-md-02741-VC & 3:23-cv-04015-VC

1  that the *only* evidence is that Mr. Mistich last purchased Roundup from Harry's in 1991.

2  Plaintiffs appear to take the position that the 1991 date of last purchase is "disputed" because (1) they allege a contrary date, and (2) they refuse to revise their position in light of the undisputed evidence. The Court rejected this argument in *Salas*. *See* 2021 WL 5149862, at *2 ("Salas additionally argues that, even in the absence of any contesting evidence, she must prevail on her motion because she 'disputes Mr. Conroy's factual assertions and characterizations.' But simply declaring that there is a factual dispute does not make it so."). Similarly, in *Pike*, where the plaintiff countered competent documentary evidence with newspaper articles, the Court found that he was "unable to dispute" the evidence. 2021 WL 4315486, at *1. The same is true here. Plaintiffs may not like the evidence, but they cannot dispute it.

These Plaintiffs are "not the first . . . to allege conclusory claims against a local . . . retailer in an effort to defeat diversity jurisdiction." *Roybal*, 2021 WL 4186714, at *2. Because Monsanto has come forward with clear and convincing evidence negating the basis of their claims against Harry's, Plaintiffs cannot rely on its allegations in opposition. *See id.*

## II.   Monsanto's Removal Notice was Timely.

In its Notice of Removal, Monsanto established that its removal was timely under both 28 U.S.C § 1446(b)(3)'s 30-day deadline and 28 U.S.C § 1446(c)(1), which allows removal more than a year after case commencement upon a showing of bad faith. Notice of Removal, ¶¶ 41–47. In their Motion, Plaintiffs contend only that the removal was untimely under Section 1446(c)(1). Accordingly, Monsanto must show that Plaintiffs "acted in bad faith in order to prevent [it] from removing the action." 28 U.S.C. § 1446(c)(1).

**A.    Plaintiffs acted in bad faith to prevent removal by falsely alleging a 2019 purchase from Harry's in the Amended Petition after correctly alleging in the initial Petition that the last purchase from Harry's occurred in 1991.**

Mr. Mistich obviously knew when he last purchased Roundup from Harry's, making the contrary allegation in the Amended Petition knowingly false.[8] But this was not a run-of-the-mill false allegation. This knowingly false allegation was part of a calculated effort to prevent removal. The initial Petition specifically, and accurately, alleged the facts relating to Mr. Mistich's purchase history:

> Mr. Mistich purchased Roundup from the Harry's Ace Hardware on General Meyer in Algiers, Louisiana between 1980-**1991**. Mr. Mistich purchased Roundup at Harry's Ace Hardware on Magazine Street in New Orleans, Louisiana on occasion between 1980-**1991**.

Pet., ¶ 9 (emphasis added).

Before Monsanto even had a chance to file a responsive-pleading to that petition, Mr. Mistich filed the Amended Petition, which supplemented the initial pleading and added allegations that Mr. "Mistich purchased Roundup from Harry's Hardware in 2019, which was still selling cancer causing Roundup, after Harry's Hardware was sued for this product in Yvette *D'Aunoy vs. Monsanto Company, Et Al*, Case No. 2019-10100, Orleans Parish Civil District Court. 162." Am. Pet., ¶ 161. Thus, it was no coincidence that the Amended Petition falsely alleged that Mr. Mistich last purchased Roundup from Harry's in 2019; that date was chosen because it corresponded with the filing of the *D'Aunoy* case and made the negligence claim apparently plausible.

In their Motion, Plaintiffs provide the following bad-faith standard:

> The defendant must show the plaintiff's "intentional actions to thwart diversity," *Bowie Lumber Assocs. v. Anadarko OGC Co*., No. 22-01195, 2023 WL 2624807, at *2 (E.D. La. Mar. 24, 2023), a "transparent attempt to circumvent federal jurisdiction," *James v. Whitney*, No. 20-0203, 2021 WL 3044149, at *2 (W.D. La. July 19, 2021), and/or "strategic gamesmanship by keeping a removal-spoiling party in the case past the one-year mark in order to prevent a defendant's removal from state court." *In re Roundup Prod. Liab. Litig*., No. 16-02741, 2022 WL 17839995, at *3 (N.D. Cal. Aug. 30, 2022).

---

[8] According to Plaintiffs, "[t]here is no evidence that Mr. Mistich knew he lacked a basis for his claims against Harry's," Mot. at 12, but he certainly knew when he last purchased Roundup from Harry's.

- 12 -

OPPOSITION TO MOTION TO REMAND
3:16-md-02741-VC & 3:23-cv-04015-VC

Mot. at 11.[9]

Monsanto has made this showing. The initial Petition establishes that that the true 1991 date of Mr. Mistich's last Roundup purchase from Harry's was known both to the original plaintiff and to counsel at the time of this case's commencement, meaning that the knowingly false, contrary allegations in the Amended Petition were intentionally included to thwart removal—a cynical ploy that became transparent with Ms. Mistich's deposition testimony. Knowingly asserting false allegations is bad faith under any standard, and because the goal was to prevent removal, the bad-faith exception applies.[10] *See* 28 U.S.C.A. § 1446(c)(1).

Plaintiffs rely on *Kalfsbeek Charter v. FCA US, LLC* for the proposition that "[t]he fact that Harry's Hardware was brought into the case as a defendant from the start (as opposed to having been added in response to a motion to dismiss or an attempt to remove the action) weighs against a finding that he sued it in bad faith." Mot. at 12 (citing 540 F. Supp. 3d 939, 942 (C.D. Cal. 2021)). But the conduct at issue—amending a petition to add a false allegation preventing the removal of an otherwise-removable case—is the functional equivalent of amending a petition to add a non-diverse defendant, with the caveat that a knowingly false allegation necessarily constitutes bad faith whereas the post-commencement addition of a non-diverse defendant may be done in good faith. If anything, *Kalfsbeek Charter* supports a finding of bad faith.

**B.  Plaintiffs' Motion overstates the extent to which they pursued their claims against Harry's.**

Plaintiffs argue that they did not act in bad faith because they pursued their claims against Harry's by serving discovery. Mot. at 12. A plaintiff's active pursuit of a defendant is probative as to bad faith and/or intent in cases where the plaintiff voluntarily dismisses the defendant more than

---

[9] "[T]he Ninth Circuit has not set a standard for applying the bad faith exception." *McCown v. Samsung SDI Co., Ltd.*, 5:22-CV-00976-SPG-KK, 2022 WL 17077492, at *4 (C.D. Cal. Nov. 17, 2022).

[10] The Court previously declined to find bad faith in circumstances where allegations against in-state retailers were false, but *mistaken*. *See In re Roundup Products Liab. Litig. (Caranci)*, 16-MD-02741-VC, 2023 WL 3814773, at *1 (N.D. Cal. June 5, 2023). Here, by contrast, the accurate initial Petition shows that the removal-defeating allegations in the First Amended Petition were knowingly false.

a year after case commencement, and rules focusing on this inquiry developed in that context. *See Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1231, 1262–63, (D.N.M. 2014); *see also NKD Diversified Enterprises, Inc. v. First Mercury Ins. Co.*, 1:14-CV-00183-AWI, 2014 WL 1671659, at *5 (E.D. Cal. Apr. 28, 2014), *report and recommendation adopted*, 1:14-CV-00183-AWI, 2014 WL 2619599 (E.D. Cal. June 6, 2014). Where the plaintiff acted in bad faith by knowingly making false allegations against an non-diverse defendant, however it is less certain how subsequent (potentially pretextual) litigation efforts illuminate the question of whether the plaintiff "acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). That said, Plaintiffs overstate the extent to which they actively litigated against Harry's:

- While Mr. Mistich propounded discovery on Harry's, neither he nor Plaintiffs ever actually required responses to the Requests for Production or Interrogatories, even after being informed that overdue responses to these discovery request had not been served. Chernack Decl. ¶ 3.
- One specific request for production sought "any and all purchase orders for Roundup by Harry's between 1980 to today," but when given an opportunity to review analogous "paperwork . . . going back to 2015," counsel for Plaintiffs demurred, responding "No I don't need to review those PO's for post 2015." *Id.* ¶ 4.
- Neither Mr. Mistich nor Plaintiffs ever requested any depositions from Harry's or otherwise developed any case against it. *Id.* ¶ 5.

These half-hearted litigation efforts do not undermine Monsanto's contention that Plaintiffs acted in bad faith to prevent removal.

**C.    Plaintiffs claim that Monsanto should have deposed Mr. Mistich while he was alive while omitting the fact that Monsanto tried to depose Mr. Mistich.**

Plaintiffs also try to blame Monsanto for not sooner discovering the falsity of their allegation that Mr. Mistich purchased Roundup from Harry's in 2019. Specifically, they state Monsanto could have deposed Mr. Mistich, and learned the truth about Harry's, during the year following the suit's commencement. Mot. at 14. Monsanto did try to depose Monsanto, however.

- 14 -
OPPOSITION TO MOTION TO REMAND
3:16-md-02741-VC & 3:23-cv-04015-VC

This suit was filed on May 28, 2021. On February 22, 2022, Monsanto noticed Mr. Mistich's deposition for March 24, 2022—a date well within the one-year period. Upon being informed that Mr. Mistich's health prevented him from sitting for a deposition, Monsanto withdrew the notice. It never had an opportunity to depose Mr. Mistich before he died in May 2022, and Plaintiffs' counsel never took a preservation deposition to obtain Mr. Mistich's testimony. Plaintiffs' claim that Monsanto should have taken Mr. Mistich's deposition is not supported by the record.

## CONCLUSION

In light of the experience gained throughout the course of the Roundup MDL proceedings, the Court is not required to "close its eyes to reality." *Roybal*, 2021 WL 4186714, at *2. For the foregoing reasons, the Court should reject Plaintiffs' arguments and deny the Motion.

| | |
|---|---|
| DATED:  September 1, 2023 | Respectfully submitted, |
| Brian L. Stekloff (*pro hac vice*)<br>bstekloff@wilkinsonsteklof.com<br>Rakesh Kilaru (*pro hac vice*)<br>rkilaru@wilkinsonsteklof.com<br>**WILKINSON STEKLOFF LLP**<br>2001 M Street, NW, 10th Floor<br>Washington, DC  20036<br>Telephone:  (202) 847-4030<br>Facsimile:  (202) 847-4005 | */s/ Jennise W. Stubbs*<br>Jennise W. Stubbs (*pro hac vice*)<br>jstubbs@shb.com<br>Ryan S. Killian (CA Bar No. 294512)<br>rkillian@shb.com<br>**SHOOK, HARDY & BACON L.L.P.**<br>600 Travis Street, Suite 3400<br>Houston, TX 77002-2926<br>Telephone:  (713) 227-8008<br>Facsimile:  (713) 227-9508 |
| William Hoffman (*pro hac vice*)<br>william.hoffman@arnoldporter.com<br>Daniel S. Pariser (*pro hac vice*)<br>daniel.pariser@arnoldporter.com<br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br>601 Massachusetts Avenue, NW<br>Washington, DC  20001<br>Telephone:  (202) 942-5000<br>Facsimile:  (202) 942-5999 | Eric G. Lasker (*pro hac vice*)<br>elasker@hollingsworthllp.com<br>Martin C. Calhoun (*pro hac vice*)<br>mcalhoun@hollingsworthllp.com<br>**HOLLINGSWORTH LLP**<br>1350 I Street, NW<br>Washington, DC  20005<br>Telephone:  (202) 898-5800<br>Facsimile:  (202) 682-1639 |

*Attorneys for Defendant MONSANTO COMPANY*