**SHOOK, HARDY & BACON L.L.P.**
Jennise W. Stubbs
600 Travis Street, Suite 3400
Houston, TX 77002-2026
Telephone:     (713) 227-8008
Facsimile:     (713) 227-9508
Email:          jstubbs@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Mendel Brookner, et al. v. Monsanto Co.*,<br>Cause No.: 3:23-cv-04840-VC | |

### <u>MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT</u>

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiffs' Complaint ("the Complaint"), except as set forth below. As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies. Silence as to any allegations shall constitute a denial.

1.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 1 and therefore denies those allegations.

2.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 2 and therefore denies those allegations.

3.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3 and therefore denies those allegations.

4.     In response to the allegations in paragraph 4, Monsanto admits that it is a Delaware corporation with its headquarters and principal place of business in St. Louis County, Missouri and that is authorized to do business in the State of Florida.  The remaining allegations in paragraph 4 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

5.     In response to the allegations in paragraph 5, Monsanto admits that it was the entity that discovered the herbicidal properties of glyphosate and that Monsanto has manufactured Roundup®-branded products that have glyphosate as the active ingredient, but notes that Monsanto has not been the only manufacturer of glyphosate-based herbicides.

6.     In response to the allegations in paragraph 6, Monsanto admits that it has sold Roundup®-branded products in Florida.  The remaining allegations in paragraph 6 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

7.     The allegations in paragraph 7 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

8.     The allegations in paragraph 8 set forth conclusions of law for which no response is required.

9.     In response to the allegations in paragraph 9, Monsanto denies that it engaged in any tortious conduct.  The remaining allegations in paragraph 9 set forth conclusions of law for which no response is required.

10.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore denies those allegations.

11.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore denies those allegations.

12.     In response to the allegations in paragraph 12, Monsanto denies that exposure to Roundup®-branded products and glyphosate exposed plaintiffs to risk of plaintiffs' alleged cancer. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 12 regarding plaintiffs' diagnosis and therefore denies those allegations. Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

13.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 13 and therefore denies those allegations.

14.     Monsanto denies the allegations in paragraph 14.

15.     Monsanto admits the allegations in the first two sentences of paragraph 15. In response to the third sentence of paragraph 15, Monsanto admits that certain Roundup®-branded herbicides contain POEA and adjuvants and that United States Environmental Protection Agency ("EPA") has classified surfactants and adjuvants as inert. Monsanto notes that the EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.

16.     The allegations in paragraph 16 comprise attorney characterizations and are accordingly denied.  The Roundup®-branded products identified by plaintiffs have a variety of separate and distinct uses and formulations.

17.     In response to the allegations in the first sentence of paragraph 17, Monsanto admits that glyphosate is one of the world's most widely used herbicides, but notes that Monsanto has not been the only manufacturer of glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentence of paragraph 17 and therefore denies those allegations.

18.     In response to the allegations in paragraph 18, Monsanto admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly below regulatory safety limits in various locations and media.  Monsanto denies the remaining allegations in paragraph 18.

19.     Monsanto admits that it has been a producer of glyphosate-based herbicides but lacks sufficient information regarding the business of other glyphosate producers to admit or deny the allegation as written in the first sentence of paragraph 19.  In response to the allegations in the second sentence of paragraph 19, Monsanto admits that its glyphosate products have been registered in at least 130 countries and approved for use on over 100 different crops.

20.     Monsanto admits the allegations in the first sentence of paragraph 20.  Monsanto denies the allegations in the second sentence of paragraph 20 to the extent they suggest that IARC based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

21.     In response to the allegations in paragraph 21, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  Monsanto denies the remaining allegations in paragraph 21.

22.     In response to the allegations in paragraph 22, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that Monsanto has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  Monsanto also admits that the EPA repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  To the extent that paragraph 22 alleges that Monsanto has labeled glyphosate-based or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

23.     Monsanto denies the allegations in paragraph 23.

24.     In response to the allegations in paragraph 24, Monsanto admits that Roundup®-branded products are highly valued by its customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000. The remaining allegations in paragraph 24 are vague and conclusory, comprise attorney characterizations, and are accordingly denied.

1   25.   In response to the allegations in paragraph 25, Monsanto admits that following the

2   development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are

3   now widely used by farmers in the United States and worldwide. Monsanto lacks information or

4   knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph

5   25 and accordingly denies those allegations. The remaining allegations in paragraph 25 are vague

6   and conclusory and comprise attorney characterizations, and are accordingly denied.

7   26.   In response to the allegations in paragraph 26, Monsanto admits that glyphosate is one

8   of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the

9   only company that sells glyphosate or glyphosate-based herbicides. Monsanto lacks information or

10   knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph

11   26 and accordingly denies the same. The remaining allegations in paragraph 26 are vague and

12   conclusory and comprise attorney characterizations, and are accordingly denied.

13   27.   In response to the allegations in paragraph 27, Monsanto admits that IBT Laboratories

14   was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded

15   product.  Monsanto denies that EPA's regulatory approval of such product is based upon any

16   fraudulent or false IBT studies.

17   28.   Monsanto denies the allegations in paragraph 28 to the extent they suggest that EPA

18   performed an inspection of IBT Laboratories solely or specifically in connection with studies

19   conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to

20   investigate that laboratory's fraudulent and/or improper testing procedures in connection with

21   services provided to a broad number of private and governmental entities and that this inspection

22   included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide

23   manufacturers who had used IBT test results.  The audit found some toxicology studies conducted

24   with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required

25   studies in accordance with applicable EPA testing guidelines. Monsanto denies that EPA's

26   registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.

27

28

To the extent that the allegations in paragraph 28 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations also are denied.

29.     In response to the allegations in paragraph 29, Monsanto denies that Paul Wright was a Monsanto employee at the time he was employed by IBT.  In response to the remaining allegations in paragraph 29, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

30.     In response to the allegations in paragraph 30, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further admits that Monsanto was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.   To the extent that the allegations in paragraph 30 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

31.     Monsanto denies the allegations in paragraph 31.

32.     Monsanto admits the allegations in the first sentence of paragraph 32.  Monsanto denies the remaining allegations in paragraph 32.

33.     In response to the allegations in paragraph 33, Monsanto admits that in March 2015, the Joint Glyphosate Task Force issued a press release, which speaks for itself.  Monsanto denies the remaining allegations in paragraph 33.

34.     Monsanto denies the allegations in paragraph 34.

35.     In response to the allegations in paragraph 35, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products. This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto. Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer. To the extent the subparts of paragraph 35 purport to quote a document, the document speaks for itself and thus does not require

any further response. The remaining allegations in paragraph 35 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

36.     In response to the allegations in paragraph 36, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General. The assurance speaks for itself and thus does not require any further response. The remaining allegations in paragraph 36 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

37.     Monsanto denies the allegations in paragraph 37.

38.     In response the allegations in paragraph 38, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations to the extent they suggest that this ruling was in any way related to plaintiffs' claims here that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 38.

39.     In response to the allegations in paragraph 39, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 39, which are not limited as of any specified date, and accordingly denies the same.

40.     In response to the allegations in paragraph 40, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 40.

41.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 41 and therefore denies those allegations.

42.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form

a belief as to the truth of the remaining allegations in paragraph 42 and therefore denies those allegations.

43.     Monsanto denies the allegations in paragraph 43 to the extent that they suggest that IARC had previously assessed glyphosate. Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

44.     In response to the allegations in paragraph 44, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015, and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working groups are "experts." Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence. Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available. Monsanto denies the remaining allegations in paragraph 44.

45.     In response to the allegations in paragraph 45, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group. To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

46.     The allegations in paragraph 46 are vague and conclusory. To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that

- 8 -

document speak for themselves. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

47.     In response to the allegations in paragraph 47, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, the allegations in paragraph 47 are denied.

48.     Monsanto denies the allegations in paragraph 48. The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

49.     In response to the allegations in paragraph 49, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA is present or persists in human blood or urine. Monsanto denies the remaining allegations in paragraph 49.

50.     In response to the allegations in paragraph 50, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion. Monsanto denies the remaining allegations in paragraph 50.

51.     In response to the allegations in paragraph 51, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration. Regulators around the world repeatedly have concluded that glyphosate is not genotoxic. Monsanto denies the remaining allegations in paragraph 51.

52.     In response to the allegations in the first and second sentences of paragraph 52, Monsanto admits that certain scientists and certain studies have made these claims, but denies the

allegations to the extent they imply that those scientists' views and studies are valid or accurate. Monsanto denies the remaining allegations in paragraph 52.

53.     In response to the allegations in the first sentence of paragraph 53, Monsanto refers to the labels for Roundup®-branded products, which are the best evidence of their contents, and denies any allegation inconsistent with their terms.   Monsanto denies the remaining allegations in paragraph 53.

54.     In response to the allegations in paragraph 54, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers. The AHS cohort study did not find a positive association between glyphosate and any type of cancer. Monsanto denies all other allegations in paragraph 54.

55.     In response to the allegations in paragraph 55, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water Regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which should be read in context of EPA's precautionary regulatory mandate and the EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

56.     In response to the allegations in paragraph 56, Monsanto states that the referenced document speaks for itself and does not require a response. To the extent that paragraph 56 characterizes the meaning of the referenced document, Monsanto denies the remaining allegations in paragraph 56.

57.     In response to the allegations in paragraph 57, Monsanto states that the referenced document speaks for itself and does not require a response. To the extent that paragraph 57 characterizes the meaning of the referenced document, Monsanto denies the remaining allegations in paragraph 57.

58.     In response to the allegations in paragraph 58, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate.

Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal." *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

59.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 59 and therefore denies those allegations.  In response to the third sentence of paragraph 59 and the quotation therein, Monsanto admits that plaintiffs have accurately quoted from the cited document, but states that the cited document speaks for itself.  Monsanto further states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  Monsanto states that, for example:  (a) in September 2016, EPA's OPP issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing CARC, in which that committee endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3]  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:23-cv-04840-VC

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20.

The remaining allegations in paragraph 59 comprise attorney characterizations and are accordingly denied.

60.     In response to the allegations in paragraph 60, Monsanto states that the cited report speaks for itself and does not require a response.  The remaining allegations in paragraph 60 are vague, incomplete, and conclusory and/or comprise attorney characterizations – and are accordingly denied.

61.     In response to the allegations in paragraph 61, Monsanto states that the cited report speaks for itself and does not require a response.  The remaining allegations in paragraph 61 are vague, incomplete, and conclusory and/or comprise attorney characterizations – and are accordingly denied.

62.     In response to the allegations in the first sentence of paragraph 62, Monsanto admits that EPA held a FIFRA Scientific Advisory Panel ("SAP") from December 13-16, 2016.  In response to the allegations in the third sentence of paragraph 62, Monsanto states that the cited report speaks for itself and does not require a response.  The remaining allegations in paragraph 62

are vague, incomplete, and conclusory and/or comprise attorney characterizations – and are accordingly denied.

63. In response to the allegations in paragraph 63, Monsanto denies that the OPP Report is a "draft assessment." The remaining allegations in paragraph 63 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

64. In response to the allegations in paragraph 64, Monsanto admits that the final SAP meeting minutes and report were released and states that the cited documents speak for themselves and thus do not require any further response. The remaining allegations in paragraph 64 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

65. In response to the allegations in paragraph 65, Monsanto admits that certain documents were unsealed in the federal multidistrict litigation proceedings involving Roundup®-branded products. Monsanto denies the remaining allegations in paragraph 65.

66. Monsanto denies the allegations in paragraph 66.

67. The allegations in paragraph 67 take statements in the cited documents out of context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

68. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 68 regarding Jess Rowland and therefore deny those allegations. The remaining allegations in paragraph 68 take statements in the cited document out of context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

69. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 69 regarding Jess Rowland and the Agency for Toxic Substances and Diseases and therefore deny those allegations. The remaining allegations in paragraph 69 take statements in the cited document out of context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:23-cv-04840-VC

70.     The allegations in paragraph 70 take statements in the cited documents out of context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

71.     In response to the allegations in paragraph 71 Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, but deny that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 71.

72.     The allegations in paragraph 72 are vague, ambiguous, and conclusory and comprise attorney characterizations and are accordingly denied.

73.     In response to the allegations in paragraph 73, Monsanto admits that, on November 12, 2015, the European Food Safety Authority issued its Renewal Assessment Report (RAR) on glyphosate, in which it concluded that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[4]  Monsanto further admits that this conclusion affirmed a similar finding by the German Federal Institute for Risk Management (BfR).  Monsanto admits that the European scientists who reached these determinations were acting independently of Monsanto and were acting to protect the public.

74.     In response to the allegations in paragraph 74, Monsanto denies that "industry groups" were afforded any ability to review the RAR beyond that afforded to the public generally.  Monsanto otherwise admits the allegations in paragraph 74.

75.     Monsanto admits the allegations in paragraph 75.

76.     In response to the allegations in paragraph 76, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies the allegations in paragraph 76 to the extent that they purport to set forth all of the distinctions identified by EFSA between its evaluation and the evaluation of the IARC working group.  Monsanto states that in the same document cited by plaintiffs, EFSA states that, in contrast to IARC, "the EU peer review concluded

---

[4] *See* EFSA, *Glyphosate:   EFSA updates toxicological profile*, http://www.efsa.europa.eu/en /press/news/151112.

that no significant increase in tumour incidence could be observed in any of the treated groups of animals in the nine long term rat studies considered" and explains that "[a]s well as reviewing a larger number of studies [than IARC], EFSA for example considered that carcinogenic effects observed at high doses were unreliable as they could be related to general toxicity."[5]  To the extent that paragraph 76 characterizes the meaning of the cited studies, Monsanto denies the remaining allegations in paragraph 76.

77.     In response to the allegations in paragraph 77, Monsanto states that the cited document speaks for itself and does not require a response.

78.     In response to the allegations in paragraph 78, Monsanto admits that EFSA set acceptable exposure thresholds for glyphosate that are orders of magnitude higher than those which occur in the ordinary use of glyphosate-based herbicides.  Monsanto denies that these exposure thresholds are based upon any alleged risk of carcinogenicity.

79.     In response to the allegations in paragraph 79, Monsanto admits that certain individuals, including Dr. Christopher Portier, sent the letter identified in paragraph 79 (hereinafter, "the Portier letter").  Monsanto denies that Dr. Portier or the other signatories to his letter are "independent" and "renowned international experts in the field."  Monsanto states that Dr. Portier has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto. Monsanto lacks information or knowledge sufficient to form a belief as to whether the other signatories were aware, before they signed the Portier letter, that Dr. Portier was working as a retained expert for plaintiffs' counsel.  Monsanto otherwise admits that this letter urged the EU Health Commissioner to disregard the scientific findings reached by EFSA and by the BfR.

80.     In response to the allegations in paragraph 80, Monsanto admits that Dr. Portier sent the letter identified in paragraph 80.  Monsanto denies that Dr. Portier or the other signatories to his letter are "renowned international experts in the field."  Monsanto admits that certain members of the IARC working group assigned to glyphosate signed on to the Portier letter. Monsanto lacks

---

[5]    EFSA, *EFSA Explains Risk Assessment Glyphosate*, http://www.efsa.europa.eu/sites/default /files/corporate_publications/files/efsaexplainsglyphosate151112en.pdf.

1   information or knowledge sufficient to form a belief as to whether those individuals or the other

2   signatories were aware at the time that Dr. Portier was working as a retained expert for plaintiffs'

3   counsel.

4       81.     In response to the allegations in paragraph 81, Monsanto states that the cited Portier

5   letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier –

6   who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer

7   litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by

8   EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to

9   humans."[6]  To the extent that paragraph 81 characterizes the meaning of the cited document or of

10   EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 81.

11       82.     In response to the allegations in paragraph 82, Monsanto admits that IARC concluded

12   that the human epidemiologic data provides only "limited evidence of carcinogenicity," which

13   IARC defines as meaning that "chance, bias, or confounding could not be ruled out with reasonable

14   confidence."[7]  Monsanto further admits that Dr. Portier – who has been disclosed as an expert

15   witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks

16   in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that

17   "glyphosate is unlikely to pose a carcinogenic hazard to humans."[8]  In response to the remaining

18   allegations in paragraph 82, Monsanto states that the cited Portier letter speaks for itself and does

19   not require a response.   To the extent that paragraph 82 characterizes the meaning of the cited

20   document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in

21   paragraph 82.

22       83.     In response to the allegations in paragraph 83, Monsanto states that the cited Portier

23   letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier –

---

[6]  See EFSA, Glyphosate:  EFSA updates toxicological profile, http://www.efsa.europa.eu/en/press/news/151112.

[7]      http://publications.iarc.fr/_publications/media/download/4566/1f986e57ea2ddd9830fec223aeabc740d0bb2eca.pdf.

[8]  See EFSA, Glyphosate: EFSA updates toxicological profile, http://www.efsa.europa.eu/en/press/news/151112.

who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[9]  To the extent that paragraph 83 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 83.

84.    In response to the allegations in paragraph 84, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[10]  To the extent that paragraph 84 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 84.

85.    Monsanto admits the allegations in paragraph 85.

86.    Monsanto states that the term "toxic" as used in paragraph 86 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity.  Monsanto denies the allegations in paragraph 86.

87.    In response to the allegations in paragraph 87, Monsanto states that formulations vary among different Roundup®-branded herbicide products.  Monsanto admits that certain Roundup®-branded herbicides contain glyphosate and surfactants, including POEA.  Monsanto notes that the EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.

88.    Monsanto admits the allegations in paragraph 88.

---

[9]  *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu /en/press/news/151112.

[10]  *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu /en/press/news/151112.

89.     Monsanto denies the allegations in paragraph 89.

90.     Monsanto denies the allegations in paragraph 90.

91.     Monsanto denies the allegations in paragraph 91.

92.     Monsanto denies the allegations in paragraph 92.

93.     Monsanto denies the allegations in paragraph 93.

94.     Monsanto denies the allegations in paragraph 94.

95.     In response to the allegations in paragraph 95, Monsanto states that there are numerous, different lymphoma sub-types and therefore denies the allegations in paragraph 95.

96.     The allegations in the first sentence of paragraph 96 set forth conclusions of law for which no response is required.  In response to the remaining allegations in paragraph 96, Monsanto states that the referenced discovery responses speak for themselves and do not require a response.

97.     The allegations in paragraph 97 purport to summarize opinion testimony given by of one of plaintiffs' Roundup-litigation experts, which testimony speaks for itself, so no response from Monsanto is required to those allegations.

98.     Monsanto denies the allegations in paragraph 98.

99.     Monsanto states that the term "toxic" as used in paragraph 99 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity.  Monsanto notes that the EPA has determined that the surfactants used in Roundup®-branded herbicides (including POEA) do not pose an unreasonable risk to human health.

100.    Monsanto denies the allegations in the first sentence of paragraph 100. In response to the allegations in the second sentence of paragraph 100, Monsanto admits that some Roundup®-branded products have contained trace levels of formaldehyde, ethylene oxide, and 1, 4-dioxane, that are below any applicable regulatory agency limits and are below any level that would cause health effects when those products are used according to the labeling.  The remaining allegations in paragraph 100 are vague and ambiguous and comprise attorney characterizations – and are accordingly denied.

101.    Monsanto denies the allegations in paragraph 101.

102.   In response to the allegations in paragraph 102, Monsanto states that the cited study speaks for itself and does not require a response. To the extent that paragraph 102 characterizes the meaning of the cited study, Monsanto denies the allegations in paragraph 102.

103.   In response to the allegations in paragraph 103, Monsanto states that the cited study speaks for itself and does not require a response. To the extent that paragraph 103 characterizes the meaning of the cited study, Monsanto denies the allegations in paragraph 103.

104.   In response to the allegations in paragraph 104, Monsanto states that the cited study speaks for itself and does not require a response. To the extent that paragraph 104 characterizes the meaning of the cited study, Monsanto denies the allegations in paragraph 104.

105.   In response to the allegations in paragraph 105, Monsanto states that the cited study speaks for itself and does not require a response. To the extent that paragraph 105 characterizes the meaning of the cited study, Monsanto denies the allegations in paragraph 105.

106.   In response to the allegations in paragraph 106, Monsanto states that the terms "at all times" and "these studies" are vague and ambiguous, and therefore Monsanto denies the allegations in paragraph 106.

107.   In response to the allegations in paragraph 107, Monsanto denies that glyphosate or Roundup®-branded products cause cancer. The allegations in paragraph 107 take statements out of context; are vague, misleading, incomplete, and conclusory; and/or comprise attorney characterizations — and are accordingly denied.

108.   Monsanto denies the allegations in paragraph 108.

109.   Monsanto admits that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling. Monsanto denies the remaining allegations in paragraph 109.

110.   In response to the allegations in paragraph 110, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:23-cv-04840-VC

paragraph 110 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 110.

111.   In response to the allegations in paragraph 111, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 111 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 111.

112.   In response to the allegations in paragraph 112, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 112 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 112.

113.   In response to the allegations in paragraph 113, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 113 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 113.

114.   In response to the allegations in paragraph 114, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 114 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 114.

115.   In response to the allegations in paragraph 115, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 115 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 115.

116.   In response to the allegations in paragraph 116, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 116 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 116.

117.   Monsanto denies the allegations in paragraph 117.

118.   In response to the allegations in paragraph 118, Monsanto denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate. The remaining allegations in paragraph 118 consist of attorney characterizations and are accordingly denied, or comprise allegations for which Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted and therefore denies. Monsanto states that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

119.   Monsanto denies the allegations in paragraph 119.

120.   Monsanto denies the allegations in paragraph 120.

121.   Monsanto incorporates by reference its responses to paragraphs 1 through 120 in response to paragraph 121 of the Complaint.

122.   Monsanto denies the allegations in paragraph 122.

123.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 123 and therefore denies those allegations.

124.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 124 regarding the claimed use of Roundup®-branded products by plaintiffs and therefore denies those allegations. In response to the remaining allegations in paragraph 124, Monsanto admits that it has marketed and advertised Roundup®-branded products.

125.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 125 and therefore denies those allegations.

126.   The allegations in paragraph 126 set forth conclusions of law for which no response is required.

127.   Monsanto denies the allegations in paragraph 127.

128.   Monsanto denies the allegations in paragraph 128.

129.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 129 regarding plaintiffs' knowledge and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 129, including that intended use of and/or exposure to Roundup®-branded products causes any injuries.

130.   Monsanto denies the allegations in paragraph 130.

131.   Monsanto denies the allegations in paragraph 131.

132.   Monsanto denies the allegations in paragraph 132.

133.   In response to the allegations in paragraph 133, Monsanto states that the term "other applications known to Defendants" is vague and ambiguous, and therefore Monsanto denies these allegations in paragraph 133. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 133 and therefore denies those allegations.

134.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 134 regarding plaintiffs' claimed use of and/or exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 134, including that Roundup®-branded products have "dangerous characteristics" and are carcinogenic.

135.   Monsanto denies the allegations in paragraph 135.

136.   Monsanto denies the allegations in paragraph 136.

137.   Monsanto denies the allegations in paragraph 137.

In response to the "WHEREFORE" paragraph following paragraph 137, Monsanto denies that plaintiffs are entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever. The last sentence of the "WHEREFORE" paragraph

following the Complaint's paragraph 137 sets forth a conclusion of law for which no response is required.

138.   Monsanto incorporates by reference its responses to paragraphs 1 through 137 in response to paragraph 138 of the Complaint.

139.   Monsanto denies the allegations in paragraph 139.

140.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 140 regarding the claimed use of Roundup®-branded products by plaintiffs and therefore denies those allegations. In response to the remaining allegations in paragraph 140, Monsanto admits that it has marketed and advertised Roundup®-branded products.

141.   The allegations in paragraph 141 set forth conclusions of law for which no response is required.

142.   Monsanto denies the allegations in paragraph 142.

143.   Monsanto denies the allegations in paragraph 143. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

144.   Monsanto denies the allegations in paragraph 144. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

145.   Monsanto denies the allegations in paragraph 145. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

146.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 146 regarding plaintiffs' knowledge and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 146, including that intended use of and/or exposure to Roundup®-branded products causes any injuries. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

147.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 147 and therefore denies those allegations.

148.   Monsanto denies the allegations in paragraph 148. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

149.   Monsanto denies the allegations in paragraph 149. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

150.   Monsanto denies the allegations in paragraph 150.

151.   Monsanto denies the allegations in paragraph 151.

In response to the "WHEREFORE" paragraph following paragraph 151, Monsanto denies that plaintiffs are entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever. The last sentence of the "WHEREFORE" paragraph following the Complaint's paragraph 151 sets forth a conclusion of law for which no response is required.

152.   Monsanto incorporates by reference its responses to paragraphs 1 through 151 in response to paragraph 152 of the Complaint.

153.   Monsanto denies the allegations in paragraph 153.

154.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 154 and therefore denies those allegations.

155.   The allegations in paragraph 155 set forth conclusions of law for which no response is required.

156.   The allegations in paragraph 156 set forth conclusions of law for which no response is required.

157.   Monsanto denies the allegations in paragraph 157.

158.   Monsanto denies the allegations in paragraph 158.

159.   Monsanto denies the allegations in paragraph 159, including each of its subparts.

160. Monsanto denies the allegations in paragraph 160.

161. Monsanto denies the allegations in paragraph 161.

162. Monsanto denies the allegations in paragraph 162.

163. Monsanto denies the allegations in paragraph 163.

In response to the "WHEREFORE" paragraph following paragraph 163, Monsanto denies that plaintiffs are entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever. The last sentence of the "WHEREFORE" paragraph following the Complaint's paragraph 163 sets forth a conclusion of law for which no response is required.

164. Monsanto incorporates by reference its responses to paragraphs 1 through 163 in response to paragraph 164 of the Complaint.

165. Monsanto denies the allegations in paragraph 165.

166. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 166 and therefore denies those allegations

167. The allegations in paragraph 167 set forth conclusions of law for which no response is required.

168. Monsanto denies the allegations in paragraph 168.

169. Monsanto denies the allegations in paragraph 169.

170. Monsanto denies the allegations in paragraph 170, including each of its subparts.

171. Monsanto denies the allegations in paragraph 171.

172. Monsanto denies the allegations in paragraph 172.

173. Monsanto denies the allegations in paragraph 173.

In response to the "WHEREFORE" paragraph following paragraph 173, Monsanto denies that plaintiffs are entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever. The last sentence of the "WHEREFORE" paragraph following the Complaint's paragraph 173 sets forth a conclusion of law for which no response is required.

174.   Monsanto incorporates by reference its responses to paragraphs 1 through 173 in response to paragraph 174 of the Complaint.

175.   Monsanto denies the allegations in paragraph 175.

176.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 176 and therefore denies those allegations.

177.   The allegations in paragraph 177 set forth conclusions of law for which no response is required.

178.   The allegations in paragraph 178 set forth conclusions of law for which no response is required.

179.   Monsanto denies the allegations in paragraph 179.

180.   Monsanto denies the allegations in paragraph 180.

181.   Monsanto denies the allegations in paragraph 181, including each of its subparts.

182.   Monsanto denies the allegations in paragraph 182.

183.   Monsanto denies the allegations in paragraph 183.

184.   Monsanto denies the allegations in paragraph 184.

185.   Monsanto denies the allegations in paragraph 185.

In response to the "WHEREFORE" paragraph following paragraph 185, Monsanto denies that plaintiffs are entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever. The last sentence of the "WHEREFORE" paragraph following the Complaint's paragraph 185 sets forth a conclusion of law for which no response is required.

186.   Monsanto incorporates by reference its responses to paragraphs 1 through 185 in response to paragraph 186 of the Complaint.

187.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 187 and therefore denies those allegations.

188.   The allegations in paragraph 188 set forth conclusions of law for which no response is required.

189.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 189 regarding plaintiffs' claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  The allegation in paragraph 189 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.

190.   Monsanto denies the allegations in paragraph 190.

191.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 191 regarding plaintiffs' claimed use of Roundup®-branded products or plaintiffs' claimed reliance and therefore denies those allegations.  The allegation in paragraph 191 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.

192.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 192 and therefore denies those allegations.

193.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 193 regarding the claimed use of Roundup®-branded products by plaintiffs and others and therefore denies those allegations. The remaining allegations in paragraph 193 set forth conclusions of law for which no response is required.

194.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 194 regarding plaintiffs' claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. The allegation in paragraph 194 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 194.

195.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 195 regarding plaintiffs' claimed use of Roundup®-branded products or plaintiffs' claimed reliance and therefore denies those allegations. The allegation in paragraph 195 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.

1      196.   Monsanto denies that there is any risk of serious injury associated with the as-directed

2  use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks

3  information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph

4  196 regarding plaintiffs' knowledge about Roundup®-branded products and therefore denies the

5  remaining allegations in paragraph 196.

6      197.   Monsanto denies the allegations in paragraph 197.

7      198.   Monsanto denies the allegations in paragraph 198.

8      199.   Monsanto denies the allegations in paragraph 199.

9      200.   Monsanto denies the allegations in paragraph 200.

10      In response to the "WHEREFORE" paragraph following paragraph 200, Monsanto denies

11  that plaintiffs are entitled to the relief sought therein, including any judgment for any damages,

12  interest, costs, or any other relief whatsoever. The last sentence of the "WHEREFORE" paragraph

13  following the Complaint's paragraph 200 sets forth a conclusion of law for which no response is

14  required.

15      201.   Monsanto incorporates by reference its responses to paragraphs 1 through 200 in

16  response to paragraph 201 of the Complaint.

17      202.   Monsanto denies the allegations in paragraph 202.

18      203.   Monsanto denies the allegations in paragraph 203.

19      204.   Monsanto denies the allegations in paragraph 204.

20      205.   Monsanto denies the allegations in paragraph 205.

21      206.   Monsanto denies the allegations in paragraph 206.

22      In response to the "WHEREFORE" paragraph following paragraph 206, Monsanto denies

23  that plaintiffs are entitled to the relief sought therein, including any judgment for any damages,

24  interest, costs, or any other relief whatsoever. The last sentence of the "WHEREFORE" paragraph

25  following the Complaint's paragraph 206 sets forth a conclusion of law for which no response is

26  required.

27

28

207.   Monsanto incorporates by reference its responses to paragraphs 1 through 206 in response to paragraph 207 of the Complaint.

208.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 208 and therefore denies those allegations.

209.   Monsanto denies the allegations in paragraph 209.

210.   Monsanto incorporates by reference its responses to paragraphs 1 through 209 in response to paragraph 210 of the Complaint.

211.   Monsanto denies the allegations in paragraph 211.

212.   In response to the allegations in paragraph 212, Monsanto admits that plaintiffs seeks an award of punitive damages but denies liability to plaintiffs.

213.   Monsanto admits that plaintiffs seek the relief described in paragraph 213 but denies liability to plaintiffs.

WHEREFORE, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.   The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.   Plaintiffs' claims are barred in whole because plaintiffs cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.   Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiffs' alleged injuries.

4.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law.  *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

7.      Plaintiffs' claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.      Plaintiffs' claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.      Plaintiffs' claims are barred, in whole or in part, because plaintiffs' injuries, if any, were the result of conduct of plaintiffs, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiffs' pre-existing medical conditions.

11.      The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiffs' claims in whole or in part.

12.    Applicable statutes of limitations and/or repose bar plaintiffs' claims in whole or in part.

13.    Plaintiffs' misuse or abnormal use of the product or failure to follow instructions bar plaintiffs' claims in whole or in part.

14.    If plaintiffs suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiffs' alleged injuries or damages.

15.    Monsanto had no legal relationship or privity with plaintiffs and owed no duty to plaintiffs by which liability could be attributed to it.

16.    Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiffs.  If any such warranties were made, which Monsanto specifically denies, then plaintiffs failed to give notice of any breach thereof.

17.    Plaintiffs' claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18.    Plaintiffs' claims for punitive damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the California Constitution, the Florida Constitution, and/or other applicable state constitutions – and would be improper under the common law and public policies of the United States, Florida, and/or other states.

19.    Plaintiffs' claims for punitive damages are barred because plaintiffs have failed to allege conduct warranting imposition of such damages under Florida law, and/or other applicable state laws.

20.     Plaintiffs' claims for punitive damages are barred and/or limited by operation of state and/or federal law, including Fla. Stat. § 768.73.

21.     Monsanto's conduct and/or acts were not willful, wanton, malicious, reckless, fraudulent or done with a conscious disregard for the rights of plaintiffs and/or the safety of the public.  Nor do any of Monsanto's conduct and/or acts demonstrate that Monsanto acted with a high degree of moral culpability.  In fact, Monsanto exercised reasonable care at all times alleged in the Complaint, and plaintiffs have failed to clearly establish any entitlement to punitive damages based on plaintiffs' allegations.

22.     Plaintiffs' claims are barred in whole or in part by plaintiffs' contributory/comparative negligence.

23.     Plaintiffs' claims are barred in whole or in part by plaintiffs' failure to mitigate damages.

24.     Plaintiffs' claims are barred in whole or in part by the sophisticated user doctrine.

25.     If plaintiffs have been injured or damaged, no injuries or damages being admitted, such injuries or damages were not caused by a Monsanto product.

26.     Plaintiffs' claims are barred or limited to the extent that plaintiffs assert claims that are governed by the laws of a state that does not recognize, or limits, such claims.

27.     Plaintiffs' claims are barred to the extent that plaintiffs seek relief under the laws of states that do not govern plaintiffs' claims.

28.     Some or all of plaintiffs' claims should be dismissed based on the *forum non conveniens* doctrine.

29.     Monsanto did not intentionally harm plaintiffs nor did Monsanto act with a deliberate and flagrant disregard for the safety of others.  In fact, Monsanto exercised reasonable care at all times alleged in the Complaint, and plaintiffs have failed to establish by a preponderance of the evidence any entitlement to punitive damages based on their allegations.

30.     Plaintiffs' claims are barred, in whole or in part, by application of Fla. Stat. § 768.1256.

31.     To the extent that plaintiffs recovered payments for their alleged injuries from any collateral source(s) or other source(s), plaintiffs' recovery in this lawsuit, if any, shall be reduced to the extent allowed by applicable law, including as allowed for under Fla. Stat. § 768.76.

32.     In accordance with Fla. Stat. § 768.1257, plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

33.     Plaintiffs' injuries, if any, were caused, in whole or in part, by the acts or omissions of persons other than Monsanto, whether individual, corporate, associate, or otherwise, whether named or unnamed in the Complaint, and for whose conduct Monsanto is not liable.  Monsanto is not liable for damages proximately caused by non-parties, pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), including any other product used by plaintiffs that was not manufactured, sold, or distributed by Monsanto.

34.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiffs, dismissing plaintiffs' Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  September 21, 2023                Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

BY: */s/ Jennise W. Stubbs*
    Jennise W. Stubbs
    600 Travis Street, Suite 3400
    Houston, TX 77002-2926
    Telephone:   (713) 227-8008
    Facsimile:   (713) 227-9508
    Email:       jstubbs@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

## CERTIFICATE OF SERVICE

I certify that on the 21th day of September, 2023, I electronically transmitted the foregoing

**DEFENDANT MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT** to the Clerk of the

court using the ECF system for filing and transmittal, and a true and correct copy of the foregoing

document was served electronically or by another manner as authorized by FED. R. CIV. P. 5.

      */s/Jennise W. Stubbs*
      Jennise W. Stubbs

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:23-cv-04840-VC