**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER LLP**
Julie du Pont (*pro hac vice*)
(julie.dupont@arnoldporter.com)
250 West 55th Street
New York, NY 10019
Tel: 212-836-8000
Fax: 212-836-8689

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434
Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant*
*MONSANTO COMPANY*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| *Engilis v. Monsanto Co.*<br>3:19-cv-07859-VC | **DEFENDANT MONSANTO COMPANY'S POST-*DAUBERT* HEARING BRIEFING REGARDING ANDREW SCHNEIDER, M.D.** |

**INTRODUCTION**

At a *Daubert* hearing on September 20, 2023, the Court reiterated that although it was granting Plaintiff's Motion for Reconsideration of the Order Excluding the Testimony and Opinions of Dr. Andrew Schneider, it did so "only to the extent [he is] seeking to offer an opinion on specific causation;" Dr. Schneider's general causation opinions have been excluded. Hr'g Tr. at 2:21-3:9. Dr. Schneider's *Daubert* hearing testimony confirmed that his specific causation opinions also should be excluded because he has not employed a reliable methodology.

When pressed by the Court to explain the expertise that he could bring to a specific causation analysis, Dr. Schneider repeatedly referred to his purported ability to "read the literature" and "interpret the literature." *Id.* 27:1-31:21. But as the hearing made clear, Dr. Schneider's opinions have little to do with medical literature. Having been excluded as a general causation expert, Dr. Schneider does not offer any opinions about epidemiology studies. *Id.* 48:5-12; 54:10-55:2. Instead, he assumes that Roundup is a risk factor for Plaintiff's chronic lymphocytic leukemia ("CLL") based on his conclusion that Plaintiff used Roundup for more than 2 days per year or 10 lifetime days. *Id.* 15:14-16:12; 46:3-47:2. For Dr. Schneider, that conclusion is enough. His report and testimony make clear that he did not conduct a proper differential diagnosis. Indeed, he did not go through a reliable process of ruling in other risk factors and did not rule out those relevant to Plaintiff. This failure is best embodied by his treatment of Plaintiff's history of obesity. At the hearing, for the first time, he claimed that he ruled out obesity as a potential cause not based on any systematic review of the literature but based on his purported clinical experience, which he admits does not involve assessing causation or risk factors. *Id.* 38:1-19. Moreover, he points to Roundup as a substantial contributing cause while offering no valid reason for dismissing internal DNA replication errors. In the end, under Dr. Schneider's methodology, if a person uses Roundup for more than 2 days per year or 10 lifetime days, and Roundup use is the only factor identified from his list of purported "known" causes of CLL, then Roundup will always be the alleged cause. That is not a reliable or scientific approach, and Dr. Schneider's repeated invocation of his clinical experience cannot validate what is otherwise a blatantly outcome-driven approach.

# ARGUMENT

## I. Dr. Schneider's Purported Differential Diagnosis Is Flawed.

To opine on specific causation based on a differential diagnosis, an expert must perform the differential diagnosis in a reliable manner. *See, e.g., Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir. 2010). Dr. Schneider's *Daubert* hearing testimony confirms that his opinions are not based on a reliable application of the differential diagnosis methodology, but instead are premised on little more than *ipse dixit* and his purported adoption of other expert's opinions. *See* Hr'g Tr. 48:5-12.[1]

### A. Dr. Schneider Did Not Reliably Rule Out Obesity.

An expert conducting a differential diagnosis "must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures'" that are "founded on more than 'subjective beliefs or unsupported speculation.'" *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003) (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)). But that is all Dr. Schneider offers in claiming to rule out obesity as a cause of Plaintiff's CLL.

*First*, Dr. Schneider has no reliable basis for concluding in his report that Plaintiff was "negative for obesity." Hr'g Tr. 60:1-5. Dr. Schneider attempted to explain that statement by asserting that the word "obese" was not used in the medical records. *Id.* 63:12-16. But he agreed that a Body Mass Index (BMI) greater than 30 qualifies as obese, *id.* 62:7-10, and that Plaintiff's BMI was greater than 30 before and at the time of his CLL diagnosis, *id.* 63:22-64:2. Dr. Schneider then attempted to explain his failure to consider obesity by stating—without support—that what really matters is how weight is distributed, not BMI. *Id.* 64:3-6; 62:7-10. But he did nothing to assess how Plaintiff's weight was distributed—he never met or spoke with him. *Id.* 45:4-5. In fact, Dr. Schneider conceded that he "certainly can't say whether [Plaintiff is] obese or not." *Id.* 61:25-62:6.

*Second*, Dr. Schneider has no reliable basis for concluding that obesity is not a relevant risk factor. Dr. Schneider himself explained that anecdotal opinions are not evidence-based. *Id.* 32:20-21. But his testimony about whether obesity is a risk factor makes clear that is precisely the type of opinion he is offering. His description of his methodology, taken as a whole, shows that he dismisses

---

[1] Notably, Dr. Schneider previously testified at deposition that his opinion is "not in any way predicated on an opinion" of the general causation experts. *Id.* 40:21-42:6.

obesity as a risk factor based not on any systematic analysis of the relevant medical literature (which he did not discuss in his expert report), but instead based on his purported clinical experience, which he admits does not involve evaluating the causes or risk factors for CLL. *Id.* 18:1-7; 38:1-19; 57:4-8. Ultimately, Dr. Schneider's basis for excluding obesity as a risk factor appears to be that in his practice, he "see[es] fat people get CLL" and "skinny people get CLL," and that if weight was a causative factor of CLL, he would expect "all" patients to have that risk factor. *Id.* 17:12-16; 18:11-18. That explanation only underscores the outcome-driven nature of Dr. Schneider's opinions because applying that same rationale to Roundup would mean that he could not say it is a risk factor either, because not all CLL patients have a history of Roundup exposure.[2]

Nor is it appropriate for Dr. Schneider to back-fill his opinions by performing a literature search the night before the *Daubert* hearing. *Id.* 65:11-24. To the contrary, it highlights the flawed nature of his methodology, which he described as using Google searches to find articles to "bolster an opinion that I may already have." *Id.* 44:7-20. Finding articles to bolster preconceived ideas about whether a risk factor is relevant—particularly when his clinical experience does not involve assessing risk factors—is not a reliable, scientific approach. *See, e.g., Claar*, 29 F.3d at 502-03 ("Coming to a firm conclusion first and then doing research to support it is the antithesis of [the scientific] method.").

**B. Dr. Schneider Has No Reliable Basis For Ruling Out DNA Replication Errors.**

Just as he fails to meaningfully assess obesity as a possible risk factor, Dr. Schneider summarily dismisses the possibility that DNA replication errors within a cell could have caused Plaintiff's CLL because he is not aware of a mutation causing CLL that can be "isolate[d] and name[d]." Hr'g Tr. 70:17-71:3. Of course, that cursory response fails to explain how he can rule out the possibility of DNA replication errors—which he admits can occur "in any type of cell in our body, including lymphocytes" without exposure to anything external to the body. *Id.* 69:11-22.

As this Court explained in addressing the *Hardeman* specific causation experts, an expert "must have a way to differentiate Roundup users who developed NHL because they used the product

---

[2] The same is true for Dr. Schneider's observation that he has seen articles reaching contradictory conclusions on whether BMI is a risk factor. *Id.* 16:22-17:3. If the fact that articles reach contrary conclusions is sufficient to ignore a risk factor, then Roundup should also have been ruled out.

from Roundup users who would have developed NHL regardless." *In re Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956, 959 (N.D. Cal. 2019). In allowing the plaintiffs' experts to testify in *Hardeman*, this Court noted that they had relied on the plaintiffs' "admissible general causation opinions - which assert a robust connection between glyphosate and NHL," and had "relied heavily on the plaintiffs' exposure levels" and an asserted dose-response relationship. *Id.* at 960. Dr. Schneider is distinguishable from those experts in significant ways.

Most importantly, Dr. Schneider's testimony confirms that he performed no meaningful assessment of Plaintiff's exposure level beyond determining that it exceeded the 2 days per year noted in the McDuffie article and the 10 lifetime days noted in the Eriksson article. Hr'g Tr. 15:14-16:12; 46:3-47:2. For example, he testified that he did not need to calculate Plaintiff's lifetime days of exposure because he "knew it was greater than those numbers." *Id.* 46:8-11. As this Court explained in *Hardeman*, the specific causation experts there could not "testify that glyphosate is a substantial causative factor for anyone who exceeds two days per year or ten lifetime days of Roundup use, because that conclusion is based on unadjusted data." 358 F. Supp. 3d at 961. The Court continued that "[w]hile [those experts] may rely on the general causation opinions to testify that the risk of NHL increases as exposure increases, it is not scientifically sound to quantify that risk and assign it to a particular plaintiff using the unadjusted numbers from McDuffie and Eriksson." *Id.* at 961-62.[3] That is precisely what Dr. Schneider has done. He therefore had no reliable basis for including Roundup in his differential diagnosis for Plaintiff, much less for concluding that Roundup caused his CLL.

Separately, Dr. Schneider testified that NHL is "20 different diseases," agreed that it is important to look at the data specific to an NHL subtype "if the data is available," and stated that "[i]t's always better to use the best data you can use." Hr'g Tr. 35:11-16; 47:23-48:4. He also testified that he is now "adopt[ing] the opinions of the general causation experts" because his general causation opinions were excluded. *Id.* 48:5-12. Importantly, however, the three general causation expert opinions he claims to have read do not discuss any data specific to CLL, and one of those experts (Dr. Schiff) was not disclosed in this case. *Id.* 55:3-14. And when asked about literature on CLL, he

---

[3] Similarly, the odds ratio reported in Eriksson for CLL was not adjusted for other pesticides. Hr'g Tr. 49:2-50:16.

- 4 -
MONSANTO COMPANY'S POST-DAUBERT HEARING BRIEF REGARDING ANDREW SCHNEIDER, M.D.

disclaimed any reliance on that literature because he is "not allowed to be a general causation witness." *Id.* 51:21-52:6. Accordingly, under his own description of his methodology, coupled with the lack of CLL data in the general causation expert reports on which he purportedly relies, he should have ruled out Roundup because he does not (now) purport to rely on any data specific to CLL. At a minimum, he has no valid basis for ruling out DNA mutations in favor of Roundup.[4]

## II. Dr. Schneider's Opinions About Plaintiff's Secondary Cancer Are Classic *Ipse Dixit*.

Dr. Schneider's *Daubert* hearing testimony confirms that he is not offering the opinion that Roundup directly caused Plaintiff's bladder cancer or melanoma. *Id.* 72:6-13. Instead, he claims that "[b]oth are known secondary malignancies of patients who have CLL," *id.* but that conclusion was not reached through any valid methodology. For example, he admitted that he is not relying on any specific study showing a statistically significant increased risk of bladder cancer in patients with preceding CLL, but instead on his assertion that "it is well known that patients with CLL have secondary tumor malignancies." *Id.* 74:20-25. Similarly, he testified that he could not cite any literature for his opinion that patients with CLL have immune dysfunction more than patients with NHL generally at his deposition because "it's very known to all oncologists." *Id.* 73:9-21. Those opinions are classic *ipse dixit*. Nor did he evaluate other potential causes of the secondary cancers; indeed, his expert report does not discuss alternative causes at all. *See generally* ECF No. 15887 Ex. B. Yet, he testified that sun exposure is a risk factor for melanoma, and that Plaintiff's medical records noted that he had reported sunburns. *Id.* 76:8-14. But he failed to rule sunburns out, and when asked whether he knew how many sunburns Plaintiff had before submitting his expert opinion, he responded, "I still don't know." *Id.* 76:15-18.

## CONCLUSION

For the foregoing reasons and those set out in Defendant's Motion to Exclude, ECF No. 15887, the Court should exclude the specific causation opinions of Dr. Schneider.

---

[4] Nor may Dr. Schneider rely on any general causation opinions offered by any other expert whose reports he has never read. *See, e.g., Threet v. Corr. Health Care Mgmt. of Okla., Inc.*, No. 07-943, 2009 WL 3335596, at *5 (W.D. Okla. Oct. 15, 2009) (Fed. R. Evid. 703 does not allow "the wholesale adoption of another expert's opinions without attempting to assess the validity of the opinions").

DATED: September 27, 2023        Respectfully submitted,

*/s/ Julie du Pont*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of September 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                      */s/ Kathryn M. Podsiadlo*