**SCHLESINGER LAW OFFICES, P.A.**
Jeffrey L. Haberman
Sarah J. Schultz
1212 Southeast Third Avenue
Fort Lauderdale, FL 33316
Telephone: (954) 467-8800
Facsimile: (954) 320-9509
jhaberman@schlesingerlaw.com
sarah@schlesingerlaw.com

*Attorneys for Plaintiff, Peter Engilis*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No: 2741 |
| | Case No.: 3:16-md-02741-VC |
| Peter Engilis, Jr., *et al.*, | PLAINTIFFS' POST-DAUBERT HEARING BRIEF REGARDING ANDREW SCHNEIDER, M.D. |
| Plaintiff, | |
| vs. | |
| Monsanto Company, | |
| Defendant. | |
| Individual Case No.: 3:19-cv-07859-VC | |

Dr. Schneider's testimony at the hearing of September 20, 2023, made plain that he employed the same methodology in substantially the same manner as other oncologists whom the Court has held met *Daubert*'s reliability threshold on the case specific causation issue.  Dr. Schneider brings the same expertise as well.  Dr. Schneider, through reading deposition testimony and medical records, obtained Mr. Engilis' medical and social history, and his Roundup usage and exposure – none of which is contested.  Dr. Schneider systematically ruled out known risk factors of NHL.  He reliably explained why others such as obesity and random replication were ruled out or cannot be the sole cause of Mr. Engilis' NHL.   Dr. Schneider is a 30+ year-practicing oncologist who has treated and diagnosed thousands of patients with non-Hodgkin's lymphoma ("NHL") as well as the chronic lymphocytic leukemia ("CLL") subtype of NHL.  (Doc. 64, at 4:19–5:24).  As part of his board certification, Dr. Schneider learned about what causes lymphomas in the body.  *Id.* at 6:15–21.  He reliably applied his knowledge, experience, and review of the medical literature here.

Monsanto's main claim against Dr. Schneider is that he did not conduct a proper differential diagnosis, and as a result, that his methodology is not sufficiently reliable.  More specifically, Monsanto lodges two complaints as to Dr. Shneider's differential diagnosis: (1) that Dr. Schneider improperly "ruled in" glyphosate exposure; and (2) that Dr. Schneider failed to "rule out" obesity and DNA replication errors as potential causes.  (Doc. 65, at 2).  This is wrong, both factually and legally, based on the Court's prior rulings.

Significantly, this Court has already given clear parameters as to what a reliable differential diagnosis for an oncologist in the context of a Roundup case looks like.  *See In re Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956 (N.D. Cal. 2019) (finding plaintiffs' case-specific oncology experts performed a proper differential diagnosis where the experts relied on the admissible general causation expert opinions to rule in glyphosate exposure, and then ruled out other significant risk factors of NHL coupled with the plaintiff's glyphosate exposure levels); *In re Roundup Prods. Liab. Litig.*, No. 3:16-cv-06046-VC, Doc. 146 (N.D. Cal. Jan. 22, 2020) (denying motion to exclude the plaintiffs' specific causation expert where the expert performed a differential diagnosis and reviewed the

plaintiffs' medial records and deposition testimony). Because Dr. Schneider followed this same methodology, his differential diagnosis is reliable.

I. **Dr. Schneider Conducted a Reliable Differential Diagnosis.**

To conduct a reliable differential diagnosis, a physician "rules in" all potential causes of a disease, and "rules out" those for "which there is no plausible evidence of causation, and then determines *the most likely cause* among those that cannot be excluded." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1234 (9th Cir. 2017) (emphasis added). It does not require that a physician firmly rule out all other potential causes until only one remains possible as Monsanto suggests. The Ninth Circuit has also made clear that an expert physician may testify as to the cause of injury based solely on his experience and review of the medical records. *See Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1198 (9th Cir. 2014). Not only does Dr. Schneider rely on his experience, his report cites ample medical literature that supports the various risk factors he considered and ruled out. (Doc. 64, Hrg. Tr., at 7:3–10) (explaining his methodology).

A. **Dr. Schneider Appropriately "Ruled In" Plaintiff's Glyphosate Exposure.**

Monsanto's argument on whether Dr. Schneider appropriately ruled-in Roundup exposure is misplaced. The Court has already explained, "[a]t the ruling-in stage, the question is which of the competing causes are *generally* capable of causing the disease." *In re Roundup*, 358 F. Supp. 3d at 958. "And here, the Court already determined that the plaintiffs offered admissible expert opinion that glyphosate is capable of causing NHL. Thus, Monsanto's primary criticism of the ruling-in process—namely, that the specific causation experts improperly ruled in glyphosate exposure by cherry-picking favorable epidemiological studies—is off point." *Id.* at 958. Monsanto's argument here is just as "off point" as it was then. The Court has repeatedly ruled that specific causation experts "are permitted to build from the plaintiffs' admissible general causation opinions" and that "at trial, their basis for ruling in glyphosate will be the general causation opinions." *Id.* at 958–59 (further explaining that the specific causation experts "will not be repeating the analysis of the general causation experts, but rather relying on them to rule in glyphosate."). The same is true in this case. Consequently, Dr. Schneider properly and reliably "ruled in" glyphosate exposure as a potential cause of Mr. Engilis's NHL.

**B. Dr. Schneider Considered and Systemically "Ruled Out" Other Potential Risk Factors of Developing NHL.**

Relying on his clinical experience, review of Mr. Engilis' medical records, and review of Mr. Engilis' plaintiff fact sheet and deposition testimony to determine his glyphosate exposure levels, Dr. Schneider ruled out all other significant risk factors and reach the conclusion that glyphosate exposure was a substantial factor in causing his NHL. In his expert report, which also cites relevant medical literature, and at the *Daubert* hearing, Dr. Schneider ruled out associated medical conditions, other environmental exposures, and other chemical exposures.

> i.  *Dr. Schneider reliably ruled out obesity and DNA replication errors*

**Obesity.** Monsanto claims that Dr. Schneider offered no basis "in claiming to rule out obesity as a cause of Plaintiff's CLL." *Id.* at 3. Not so. Dr. Schneider testified to his extensive experience treating NHL and CLL patients, and explained that if there was the type of correlation between obesity and NHL as Monsanto suggests, he would have observed that among his own patients. (Doc. 64, Hrg. Tr. at 16:19-18:18) Dr. Schneider testified that he has, in fact, reviewed the literature "on obesity's association with NHL," and identified that "very few studies" report an association between obesity and the development of NHL. (Doc. 64, Hrg. Tr., at 57:9–18). As a result, Dr. Schneider testified that he did not conclude that obesity, or a person's body mass index (BMI), was even a risk factor for NHL in the first place. *Id.* at 64:4–6 ("I don't think, as I said before, that BMI is a risk factor."). Importantly, Dr. Schneider does not stand alone on this point. *See In re Roundup Prods. Liab. Litig.*, No. 3:16-cv-06046-VC, Doc. 2635, at 125:6–16 (N.D. Cal. Jan. 28, 2019) (where plaintiffs' case-specific oncologist, Dr. Andrei Shustov, testified: "As far as obesity goes, I did not -- I did not find compelling evidence linked to it, first of all, obesity as a strong risk factor for lymphomas; but, secondly, to me as a lymphoma physician and scientist, it is a very erroneous or up-target factor to interrogate because obesity is a reflection of most likely other factors that come with it that can cause heart disease and other disease, lung disease, and cancer including. So not having a very defined mechanistic explanation how obesity can cause lymphomas, it is a wrong factor to interrogate in the first place."). Of note, Monsanto fails to prove that obesity is of the type of risk factor that is generally accepted as causative of NHL. It would be entirely different if Dr. Schneider,

or any other specific causation expert, failed to consider a person's history of autoimmune diseases which is widely accepted as a risk factor for NHL.

***DNA Replication Errors.*** Monsanto's second criticism similarly fails as Dr. Schneider's explanation on ruling out or explaining why random DNA replication is not the sole cause In its supplemental briefing, Monsanto alleges that Dr. Schneider "summarily dismissed the possibility that DNA replication errors within a cell could have caused Plaintiff's CLL." (Doc. 65, at 4). That is plainly incorrect. At the hearing, Dr. Schneider testified:

> So, as you said, we all can get mutations, but your body can take care of mutations. Not every mutation is going to lead to a malignancy. And sometimes if there's an external factor and there's a mutation, that may promote or exacerbate or potentiate a chance of getting a malignancy . . . So as a clinical medical oncologist, for CLL, there's no known mutation, other than maybe TP53, or heavy-chain mutations. But those, by itself, don't cause CLL. They're byproducts of getting the CLL . . . It's known that patients with CLL do have mutations, as I just told you. They have TP53; they have heavy-chain mutations. But it's not these mutations that are causing CLL. It's the CLL that makes these mutations. And you can prognosticate the CLL, based upon these mutations. It is used for prognostic information. It's not a way to diagnose, and it's not the etiology of the CLL. There's a difference.

(Doc. 64, Hrg. Tr., at 70:8–71:17).

Moreover, this Court has already directly addressed the concern of whether plaintiffs' case-specific oncologists can adequately rule out DNA replication errors or mutations in Roundup cases. In *In re Roundup Prods. Liab. Litig.*, this Court explained that "[i]t is sufficient for a qualified expert, in reliance on his clinical experience, review of a plaintiffs' medical records, and evaluation of the general causation evidence, to conclude that an obvious and known risk factor is the cause of that plaintiff's disease." 358 F. Supp. 3d at 960. By additionally relying "on the plaintiffs' exposure levels in drawing their conclusions . . . consistent with Ninth Circuit caselaw, the experts provided a basis for their conclusion that these plaintiffs fall into the category of Roundup users who developed NHL." *Id.* Thus, "their core opinions – that the plaintiffs had no other significant risk factors and were exposed to enough glyphosate to conclude that it was a substantial factor in causing their NHL – are admissible." *Id.*

But even assuming *arguendo* that obesity was an undisputed risk factor for NHL and that Dr. Schneider could not categorically rule out obesity and DNA replication errors, Ninth Circuit law does not require exclusion of an expert physician because he did not categorically exclude each and every

4

PLAINTIFFS' POST-DAUBERT HEARING BRIEF REGARDING ANDREW SCHNEIDER, M.D.

potential cause. *Stambolian v. Novartis Pharma. Corp.*, 2013 WL 6345566, at *5 (C.D. Cal. Dec. 6, 2013) ("A medical expert's opinion based upon differential diagnosis normally should not be excluded because the expert has failed to rule out every possible alternative cause of a plaintiff's illness. Generally, an expert need not rule out every potential cause in order to satisfy *Daubert*, as long as the expert's testimony addresses obvious alternative causes and provides a reasonable explanation for dismissing specific alternate factors . . . Defendant's arguments require credibility determinations that go to the weight and not the admissibility of his opinions"); *see also Allen v. Am. Capital Ltd.*, 287 F. Supp. 3d 763, 791 (D. Ariz. 2017) (explaining that a differential diagnosis "necessitates that the physician rank some potential sources of the patient's condition higher than others."). So long as the expert has "provided sufficient reasoning, as described above, as to why he thought [a certain risk factor] was an unlikely source for [plaintiff's condition]," it logically "follows that [the physician] would rank [the risk factor] towards the bottom in his differential diagnosis." *Id.*

## II.     Dr. Schneider's Opinions on Plaintiff's Secondary Cancers Are Reliable.

Monsanto's argument regarding Dr. Schneider's opinions on secondary cancers is without merit. (Doc. 65, at 5). *Daubert* does not requires medical literature for each opinion to be admissible. *See Wendell*, 858 F.3d at 1237 (holding that clinical experience is a reliable basis for medical causation). Dr. Schneider testified that the literature and his experience treating CLL patients clearly shows that that having CLL predisposes a person to secondary malignancies by causing immune dsyfucntion, and that melanoma is the most common malignancy secondary to CLL/ (Doc. 64, Hrg. Tr., at 19:-23:18). Relying on his expertise and experience, he further explained that Mr. Engilis' melanoma was secondary to CLL because that "having a lung cancer or a bladder cancer does not predispose you to NHL. But, the reverse is true. Having a NHL because of the immune dysfunction predisposes you to getting a solid tumor." *Id.* at 11:6–10. In Mr. Engilis's case, Dr. Schneider explained that his opinion was reinforced by the fact that Mr. Engilis had no other risk factors for his bladder cancer. *Id.* at 23:25–24:18 (excluding the following known risk factors for bladder cancer: smoking, exposure to analine dyes, and family history of bladder cancer). Thus, based on the fact that "it is known that the immune dysfunction of CLL causes second malignancies" and Mr. Engilis's "lack of other reasonable risk factors, that his immune dysfunction from CLL caused his bladder cancer." *Id.*

For the foregoing reasons, the Court should deny Monsanto's motion, and permit the specific causation opinions of Dr. Schneider to proceed to a jury.

DATED:  October 4, 2023                    Respectfully submitted,

*/s/ Jeffrey L. Haberman*
JEFFREY L. HABERMAN (*pro hac vice*)
**SCHLESINGER LAW OFFICES, P.A.**

*Attorneys for Plaintiff, Peter Engilis*

### CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2023, I served a copy of the foregoing on the Clerk of Court by CM/ECF, which will provide automatic notification to all parties and counsel of record.

By: */s/ Jeffrey L. Haberman*
Jeffrey L. Haberman