UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
|---|---|
| | Case No. 16-md-02741-VC |
| This document relates to: *Raymond Mistich v. Monsanto Co., et al*, No. 3:23-cv-04015-VC | **ORDER DENYING MOTION TO REMAND** |
| | Re: Dkt. No. 17184 |

The plaintiffs' motion to remand is denied because Monsanto has shown both fraudulent joinder and bad faith. This ruling assumes that the reader is familiar with the facts, the applicable legal standard, and the arguments made by the parties.

Monsanto has carried its "heavy burden" of demonstrating that joinder of Harry's Hardware was fraudulent. *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). It is clear from the evidence that the plaintiffs could not possibly prevail on the claims against Harry's Hardware in New Orleans. Two of the claims are clearly nonviable: the LPLA claim and the pre-LPLA professional vendor claims.[1] The final claim is for negligence, which requires a showing that the seller knew or should have known about the issues with the product when it was sold. But the only available evidence about when Raymond Mistich bought Roundup from Harry's Hardware indicates that his last purchase from that retailer was in 1991. That year, Raymond and Janeiece moved from East New Orleans to Mandeville. In a June 2023

---

[1] The LPLA provides for liability for the "manufacturer of a product" under certain circumstances. La. R.S. § 2800.53(A). And the pre-LPLA professional vendor claim would only apply to a retailer who acts like a manufacturer in certain ways, such as through product quality control. *Nelton v. Astro-Lounger Mfg. Co., Inc*. 542 So.2d 128, 132 (La. Ct. App. 1989). The uncontested evidence shows that Harry's Hardware fits neither mold. Presumably that's why the plaintiffs provide no response regarding either of these claims—the motion to remand discusses only the negligence claim.

deposition, Janeiece said that Raymond did not drive from their home in Mandeville into New Orleans to buy Roundup, so, to the best of her knowledge, his last New Orleans purchase would have been in 1991. In a July 2023 declaration, the President of Harry's Hardware stated that the company did not own or operate any stores in or around Mandeville.[2] And there is no suggestion that Harry's Hardware had actual or constructive knowledge of the issues with Roundup in 1991 or prior. The plaintiffs' only response is that the June deposition and July declaration do not entirely settle the question of when the purchases were made. "But simply declaring that there is a factual dispute does not make it so." *In re Roundup Products Liability Litigation*, 2023 WL 5149862, at *2 (N.D. Cal. Nov. 11, 2021). Fact discovery has closed. And the plaintiffs have not offered a shred of evidence of any post-1991 purchase. Dkt. No. 17184 at 16–17.

Further, despite the fact that over a year has passed since the state court action was filed, removal was timely because the plaintiffs acted in bad faith to prevent removal. 28. U.S.C. § 1446(c)(1). The typical bad faith inquiry involves considering "whether the plaintiff engaged in strategic gamesmanship by keeping a removal-spoiling party in the case past the one-year mark." *In re Roundup Products Liability Litigation*, 2023 WL 17839995, at *3 (N.D. Cal. Aug. 30, 2022) (quotation marks omitted). The first indication of gamesmanship is especially strong: the initial complaint alleged (consistent with the actual evidence) that Raymond purchased Roundup from Harry's Hardware only in the 1980-1991 time period. Then, before any answer was filed, the complaint was amended to allege a 2019 purchase. Why 2019?  Perhaps there's a small chance that Raymond remembered, all of a sudden, that he took a long trip in 2019 back to New Orleans to make a purchase. The far more likely explanation, however, is that plaintiffs' counsel discovered that Harry's Hardware was sued for negligence in 2019, meaning it would have been on notice by 2019 (and likely not before then) of the issues with Roundup. The plaintiffs, for their part, have provided no account for the mysterious change.

The second indication of bad faith is that the plaintiffs did not meaningfully pursue their claims against Harry's Hardware. *In re Roundup Products Liability Litigation*, 2023 WL 17839995, at *3 (N.D. Cal. Aug. 30, 2022). They did initially serve Harry's Hardware with requests for admission, interrogatories, and requests for production. But when Harry's Hardware did not respond to those requests, plaintiffs never meaningfully followed up. Moreover, in

---

[2] The Notice of Removal was filed on July 21, 2023, which is less than 30 days after the declaration confirming the lack of Harry's Hardware stores in Mandeville. Thus, removal was timely under 28 U.S.C. § 1446(b)(3).

connection with one initial document request—which was perfunctory and overbroad ("any and all purchase orders for Roundup by Harry's between 1980 to today")—plaintiffs' counsel declined an opportunity to review such orders from after 2015. Finally, the plaintiffs made no attempt to depose anyone from Harry's Hardware. Dkt. No. 17251-2.[3]

It's true, as the plaintiffs assert, that there is no hard proof of intentional deception. But the circumstantial evidence of bad faith is compelling, as is the plaintiffs' failure to provide a plausible innocent explanation. And the high standard for bad faith "does not mean that the Court must close its eyes to reality—particularly given the experience the Court has gained throughout the course of this MDL." *In re Roundup Products Liability Litigation*, 2021 WL 4186714, at *2.

It is worth emphasizing, though, that this is the rare case where a defendant should be excused from the failure to remove on fraudulent joinder grounds within the one-year deadline. If a defendant has reason to suspect that joinder of a nondiverse defendant is fraudulent, it may not sit on its hands for a year and later run to federal court waving the red flag of "bad faith." And mere failure by the plaintiff to pursue discovery against the non-diverse defendant will typically not, on its own, result in denial of a remand motion. The defendant bears the responsibility to move the case along in a fashion that facilitates timely discovery of the fraudulent joinder, and failure to fulfill this responsibility can (and often will) be reason enough to remand a case removed after the one-year deadline. But in this case Monsanto cannot entirely be said to have sat on its hands,[4] and the evidence of bad faith is especially strong, so remand would not be appropriate.

**IT IS SO ORDERED.**

Dated: November 8, 2023

VINCE CHHABRIA
United States District Judge

---

[3] Monsanto filed a signed declaration from counsel describing the extent of discovery against Harry's Hardware in this matter. Despite presenting a slightly rosier picture of their efforts to pursue claims against Harry's Hardware in their motion to remand, the plaintiffs never filed a reply brief in support of the motion and provided no evidence to contradict the account offered by the declaration. The only evidence the plaintiffs present is a copy of the initial discovery requests, which is consistent with Monsanto's account. Dkt. No. 17184-2. Thus, by a preponderance of the evidence, the Court finds that Monsanto's description is accurate.

[4] For example, Monsanto noticed a deposition for Raymond that would have occurred within the one-year period, but then withdrew the notice after learning that Raymond was too ill to sit for it.