## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**In Re: ROUNDUP**
**PRODUCTS LIABILITY LITIGATION**

**MDL No. 2741**
**Case No. 16-md-02741-VC**

This document relates to:
*Caton v. Monsanto*, Case No. 3:19-cv-07675.

David Randolph Smith
DAVID RANDOLPH SMITH & ASSOCIATES
1913 21st Avenue South
Nashville, Tennessee 37212
Phone : (615) 742-1775
Fax : (615) 742-1223
Email: drs@drslawfirm.com
*Counsel for Plaintiffs*

**NOTICE OF MOTION AND
PLAINTIFFS' MOTION TO
AMEND/VACATE PRE-TRIAL ORDER 270
AND FOR RELIEF FROM JUDGMENT
PURSUANT TO FRCP 60(b)(5);
MEMORANDUM IN SUPPORT; AND
PROPOSED ORDER**

**Date: January 11, 2024, at 1:00 p.m. (Zoom)
Judge Assigned: Hon. Vince Chhabria**

**TO DEFENDANT AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that as soon as counsel may be heard, via Zoom in Courtroom 4, United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Brian and Jean Caton, plaintiffs, by and through undersigned counsel, will bring for hearing this MOTION TO AMEND/VACATE PRE-TRIAL ORDER 270 TO EXEMPT PLAINTIFFS AND MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60(b)(5) on **January 11, 2024 at 1:00 p.m**., pursuant to Local Rule 7-9, asking Court to amend PTO 270 as to Plaintiffs Brian and Jean Caton  and  set aside its May 16, 2022 Order (ECF 14883) dismissing *Caton v. Monsanto*, Case No. 3:19-cv-07675 with prejudice.

Movants' motion is based on this Notice of Motion, the accompanying Memorandum in Support, the *Declaration of David Randolph Smith,* Exhibits to the Memorandum and any additional argument and evidence this Court may require or consider.

Dated: November 16, 2023.

/s/ David Randolph Smith
David Randolph Smith
DAVID RANDOLPH SMITH & ASSOCIATES
1913 21st Avenue South
Nashville, Tennessee 37212
Phone : (615) 742-1775
Fax : (615) 742-1223
Email : drs@drslawfirm.com
*Counsel for Plaintiffs*

### PLAINTIFFS' MOTION TO AMEND/VACATE PRE-TRIAL ORDER 270 AND FOR RELIEF FROM JUDGMENT PURSUANT TO FRCP 60(b)(5)

NOW INTO COURT, come Plaintiffs Brain and Jean Caton, through the undersigned counsel, who respectfully request that this Honorable Court amend/vacate PTO 270 *as to Plaintiffs* for reasons of manifest injustice and equitable estoppel and then grant relief from judgment under Federal Rule of Civil Procedure 60(b)(5).

WHEREFORE, for the reasons set forth in the accompanying memorandum in support, including exhibits, Plaintiffs respectfully pray that this Honorable Court amend and vacate PTO 270 only as to the Caton Plaintiffs for reasons of manifest injustice and equitable estoppel and then grant relief from judgment under Federal Rule of Civil Procedure 60(b)(5) and set aside and vacate the dismissal order and reinstate Plaintiffs' case on the docket. This motion is sought so that justice may be done.

Dated: November 16, 2023.


Respectfully submitted.

*/s/ David Randolph Smith*
David Randolph Smith
DAVID RANDOLPH SMITH & ASSOCIATES
1913 21st Avenue South
Nashville, Tennessee 37212
Phone : (615) 742-1775
Fax : (615) 742-1223
Email : drs@drslawfirm.com
*Counsel for Plaintiffs*

3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**In Re: ROUNDUP**
**PRODUCTS LIABILITY LITIGATION**                    **MDL No. 2741**

This document relates to:
*Caton v. Monsanto*, Case No. 3:19-cv-07675.                    **Date: January 11, 2024, at 1:00**
**(Zoom)**

---

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND/VACATE PRE-TRIAL ORDER 270 AND FOR RELIEF FROM JUDGMENT PURSUANT TO FRCP 60(b)(5)</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………… iii

INTRODUCTION and STATEMENT OF ISSUES…………………………….. 4

FACTS  and BACKGROUND……………………………………………9

STANDARD OF REVIEW……………………………………………14

LAW AND ARGUMENT……………………………………………...15

CONCLUSION……………………………………………………22

PROPOSED ORDER……………………………………………...24

## TABLE OF AUTHORITIES

**Cases:**                                                                **Page:**

*Bamforth v. Facebook, Inc.,* No. 20-CV-09483-DMR, 2022 WL 1987858……………. 18
(N.D. Cal. June 6, 2022)

*Butner v. Neustadter,* 324 F.2d 783, 786 (9th Cir.1963)…………………………………15

*Cmty. Dental Servs. v. Tani,* 282 F.3d 1164 (9th Cir. 2002)…………………………15, 21

*Falk v. Allen,* 739 F. 2d 461, 463 (9th Cir. 1984)…………………………………………15

*Galdamez v. Potter,* 415 F.3d 1015 (9th Cir. 2005)……………………………………..15, 16

*Inland Concrete Enterprises, Inc. v. Kraft,* 318 F.R.D. 383 (C.D. Cal. 2016)……………19

*In re Far East Lines, Inc.,* 889 F.2d 242 (9th Cir.1989)…………………………………..18

*Lal v. California,* 610 F.3d 518, 526 (9th Cir. 2010)……………………………………..19

*Lemoge v. United States,* 587 F.3d 1188 (9th Cir. 2009)…………………………………18

*Life Alert Emergency Response, Inc. v. Lifewatch, Inc.,*
No. 2:08-CV-02184-CAS, 2014 WL 2115189 (C.D. Cal. May 19, 2014)………………18

*Ordaz v. Bank of Am., N.A.,* No. 214CV00564MCEKJN, 2016 WL 541456
(E.D. Cal. Feb. 11, 2016)………………………………………………………………….19

*United States v. Burton,* No. 1:85-CR-00205 LJO, 2016 WL 6522803
(E.D. Cal. Nov. 3, 2016)…………………………………………………………………..18

*Walker v. Bonta,* No. 20-CV-00031-DMS-AGS, 2023 WL 6131086
 (S.D. Cal. Sept. 19, 2023)………………………………………………………………...16


**Rules:**

Fed. R. Civ. P. 60(b)(5)…………………………………………………………..*passim*

**Commentary:**

*Monsanto Roundup Litigation Update,*
Available at: https://www.lawsuit-information-center.com/roundup-mdl-judge-question-10-billion-settlement-proposal.html..................................................................................20

## I.    **INTRODUCTION and STATEMENT OF ISSUES**

This case arises from personal injuries (Non-Hodgkin's Lymphoma) suffered by Brian Caton from his exposure to Roundup and for consortium damages on behalf of his wife, Jean Caton.

Plaintiffs' case was originally filed in the Western District of Tennessee on October 4, 2019, by the undersigned counsel. The case was subsequently transferred to this MDL and was docketed as Case Number 3:19-cv-07675. The Plaintiffs' individual case docket shows that there was little activity in the case since the case was transferred to the MDL (Monsanto filed only its Answer and disclosure statements). *Id.* The case was dismissed with prejudice on May 16, 2022, for the Plaintiffs' failure to comply with Pre-trial Order 270 which ordered certain Plaintiffs (the *Caton* case included) to show cause within 21 days why their case should not be dismissed with prejudice for failure to participate in the Special Master Program established by PTO 240.

Plaintiffs move to amend and vacate PTO 270 on the grounds of manifest injustice and equitable estoppel ask the Court to specifically exclude Plaintiffs Brian and Jean Caton. Plaintiffs then ask and move for relief from the judgment dismissing their case (MDL Order 14488) pursuant to FRCP 60(b)(5) that allows relief from a final judgment that is "it is based on an earlier judgment that has been reversed or vacated," (Emphasis supplied).

Your Honor entered PTO 240 on July 23, 2021 (MDL ECF 13323) that provided, *inter alia*, "Every current and future plaintiff in this MDL who has not already reached a settlement with Monsanto is ordered to participate in this [Special Master] program." Your Honor subsequently entered PTO 270 (ECF MDL 14488) on January 21, 2022, that ordered firms to show cause why their cases should not be dismissed for failure to participate in the Special Master's Program. The plaintiffs' case was listed as an affected case, but plaintiffs did not respond to the Court's show

cause order and the Court dismissed the plaintiffs' case on May 16, 2022, for failure to comply with PTO 270. (MDL ECF 14488).

As detailed below, plaintiffs' counsel and Monsanto's counsel were completely unaware that the case had been dismissed as plaintiffs' counsel had been assured both by the Special Master and by Monsanto's counsel that the program was voluntary and that direct negotiation with Monsanto's counsel was acceptable and agreeable to Monsanto as the plaintiffs continued to engage in direct settlement negotiations with Monsanto's for six months **after** the case had been dismissed. Plaintiffs' counsel was also completely unaware that the case had been dismissed because the ECF notifications relating to the Special Master Program were never opened as plaintiffs and Monsanto were intentionally proceeding *outside* the Special Master program. [1] Only recently (November 13, 2023) did the undersigned counsel learn/discover that the case had been dismissed by checking the individual case docket after Monsanto "went silent" and was no longer returning calls or emails regarding responding to our settlement demand. [2]

**Why did the Plaintiffs herein not respond to the show cause order (PTO 270)?** *For very good reasons* that warrant relief from judgment on the basis of manifest injustice and equitable estoppel. At the time PTO 240 was entered on July 23, 2021, Plaintiffs and Monsanto's lawyers at King & Spalding, in good faith, had been diligently corresponding and communicating in *direct* settlement correspondence and negotiations since July 2020 with a formal settlement demand and documents sent to Monsanto's lawyers in March 2021. Plaintiffs' counsel was specifically told (by the Special Master and by Monsanto's lawyers) that the Special Master Program was only an option and was "**entirely voluntary**." Thus, from July 2020 until March 2023 Monsanto and

---

[1] *See infra* page 7, numbers 4, and 5; page 8 number 8, page 14 third bullet point.

[2] *Id.*

plaintiffs, in good faith, voluntarily, and intentionally engaged in settlement negotiations with document exchange on the basis and belief that *direct* settlement negotiations were an acceptable *alternative* to the Special Master Program. Under these circumstances applicable to the Caton plaintiffs the purpose and logic of PTOs 240 and 270 was being achieved by their independent and direct settlement talks by doing what the Court ordered but doing so directly rather than with the Special Master.

PTO 270 listed specific cases that had not joined the Special Master Program and imposed a 21-day deadline to show case as to why the plaintiffs had not done so lor else the case would be dismissed with prejudice. As to the Catons, the Special Master *and* Monsanto's counsel had affirmatively stated that direct negotiations were an acceptable alternative and Monsanto continued to engage in settlement talks with plaintiffs' counsel for nearly a year after PTO 270 was entered. Dismissal on the particular and singular facts herein constitutes manifest injustice under circumstances of equitable estoppel that warrant excluding the Catons from PTO 270 and granting relief from judgment under FRCP 60(b)(5). If PTOs 270 is amended and vacated due to manifest injustice and/or equitable estoppel to exempt the plaintiffs from the dismissal sanction because they have now shown good cause as to why they did not respond, the Court should then set aside Litigation Order MDL ECF 14488 pursuant to FRCP 60(b)(5) because the dismissal order would then be based on an earlier order that has been reversed or vacated as to the Catons.

The key points supporting relief on the grounds of manifest injustice and equitable estoppel are summarized as follows:

1) Plaintiffs' counsel only received two letters from Special Master Feinberg (attached as **Exhibits 1 and 3**) and neither letter set forth any deadlines or communicated that the program was mandatory. In fact, the first letter, dated January 22, 2021, stated (in bold letters) "This Settlement Program is **entirely voluntary**." This is relevant to manifest injustice because at all times Plaintiffs' counsel believed, and was led to

believe, that the Special Master Program was voluntary and that direct negotiations with Monsanto's counsel were an acceptable alternative.

2) For one year ***prior*** to the Court's entry of PTO 240 (that was entered on July 23, 2021) Plaintiffs' counsel and Monsanto's counsel (at King & Spalding) had been (since July 2020) in direct and good faith settlement discussions in the *Caton* case (which was the only case the undersigned counsel had in the MDL). *See* e-mail correspondence thread attached as **Exhibit 2**). Further, Monsanto's counsel specifically advised Plaintiffs' counsel on January 4, 2021, that direct settlement negotiation with Monsanto's lawyers was an acceptable alternative to participation in the Special Master Program. *See* **Exhibit 2** and *Declaration of David Randolph Smith*. This is relevant to the "manifest injustice" ground because although there was a procedural/default failure to comply with PTO 270, the parties were in fact directly engaged in the very thing that PTOs 240 and 270 addressed: settlement *negotiations*. We submit it is manifestly injurious to the interests of justice to penalize plaintiffs who engaged in a good faith *direct* settlement talks with Monsanto's counsel based upon the assurances of both the Special Master and Monsanto's counsel that direct settlement talks were an acceptable alternative/substitute to the Special Master Program.

3) Even *after* the entry of PTO 240 (July 23, 2021) and PTO 270 (January 21, 2022) and until six months after the dismissal order Plaintiffs' counsel and Monsanto's lawyers continued to engage in direct settlement discussions and communications with the understanding and agreement that direct settlement negotiations were an acceptable alternative to the Special master Program. Our last communication to Monsanto's lawyers occurred in March 2023. (**Exhibit 2**). This is relevant to manifest injustice.

4) Plaintiffs' counsel did not monitor or check the MDL docket when the ECF notifications for the Court's orders regarding the Special Master's Settlement Program (PTOs 240 and 270). We were *intentionally* operating *outside* of the Special Master Program, and these orders were not seen applicable to our case. Again, it was represented by Special Master Feinberg, that the program was "**entirely voluntary**", and Monsanto's counsel had specifically previously advised (on January 4, 2021) that participation in the Special Master Program was not necessary and that direct negotiations with Monsanto were fine, especially as we had but a single case.

5) **In all candor, however, Plaintiffs' counsel admits that the failure to monitor and open these ECF notifications was delinquent and asks the Court to order sanctions against the undersigned counsel in lieu of dismissal.** *See* **discussion infra, *The Role of Plaintiffs' Counsel and Sanctions as an Alternative to Dismissal.* at pp. 20-21.**

6) The undersigned counsel received no communication, letter or notice from the Special Master, or lead counsel in the MDL, or from Monsanto's lawyers, that there were any deadlines applicable to us or any requirement to be in the Special Master

Program. To the contrary, plaintiffs' counsel was told directly that Special Master Program was voluntary and that direct negotiations were an acceptable alternative. As noted above, at no time was plaintiffs' counsel aware that PTOs 240 and 270 had any application to us because we were in direct settlement talks with Monsanto's lawyers at King & Spalding. The parties were proceeding (in direct settlement talks) in good faith and in full accordance with the purposes and spirit of the PTOs (240 and 270), yet this *unjustly* turned out to be the basis for dismissal of the Catons' case. We respectfully submit that the plaintiffs' case should not be dismissed when we were doing what the Court was ordering but only in a more direct way. This is relevant to manifest injustice.

7) Plaintiffs sent Monsanto's lawyers a settlement demand package and supporting documents and then engaged in settlement communications that continued for six months *after* the case was dismissed. This shows that both plaintiffs' counsel and Monsanto's counsel were unaware that the case had been dismissed. **(Exhibit 2)**.

8) Plaintiff continued to e-mail and call Monsanto's counsel well in to 2023 asking for a twice promised response to our settlement demand. **(Exhibit 2)**. Monsanto's lawyers, however, were now not responding at all to our emails or calls. Perplexed at this "radio silence," on November 13, 2023, Plaintiffs' counsel checked the individual case docket and discovered, *much to our shock and dismay*, that the case had been dismissed on May 16, 2022. As noted above (point 4), although Plaintiffs' counsel received ECF notifications including the notification order "dismissing cases with prejudice for failure to comply with PTO 270" Plaintiffs' counsel did not open the email containing this dismissal order (MDL ECF 14488) when came in as we were not in the Special Master Program by choice and agreement with Monsanto's counsel. This is relevant to manifest injustice.

In short, this is a case in which plaintiffs and Monsanto, in good faith, diligently corresponded and communicated in direct settlement correspondence and negotiation over a period from July 2020 to March 2023. While PTOs 240 and 270 required plaintiffs to participate in the Special Master Program, here the plaintiffs and Monsanto *equivalently complied* with the purpose and effect of the Court's Special Master Orders by direct negotiations between the parties. Given the important background facts that the plaintiffs had been told (by the Special Master and by Monsanto's lawyers) that the Special Master Program was only an option and voluntary, we ask that PTO 270 be amended to specifically exclude Plaintiffs Brian and Jean Caton and this Court's May 16, 2022, Order Dismissing Cases with Prejudice for Failure to

Comply with PTO No. 270 [Docket No. 14488] should  be set  aside as to *Caton v. Monsanto*, Case No. 3:19-cv-07675 . *See* [Proposed Order *infra* at p. 24.]

## II.    FACTS and BACKGROUND

In this case for a year prior to PTOs 240 and 270 Plaintiffs and Monsanto's attorneys  were voluntarily, knowingly, and  diligently engaging in *direct* settlement negotiations. The parties had been emailing back and forth through March 2023  in settlement communications and negotiation. Plaintiffs' counsel and Defendant Monsanto (through Monsanto's counsel):  *agreed* to settlement discussions *outside* of the Special Master program;  Monsanto *agreed* to respond  to plaintiffs' settlement demand even *after* PTO 240 and 270 and even after the case had been dismissed (a dismissal unbeknownst to both parties);  Monsanto's counsel led plaintiffs' counsel to believe the parties were properly negotiating a settlement *in an active case* separate from and *outside* of the Special Master program; and the Special Master and Monsanto's counsel affirmatively stated to plaintiffs' counsel that the program was voluntary. The factual chronology is as follows:

- On July 10, 2020, we emailed  Monsanto's counsel Lana Varney at King & Spalding regarding commencing settlement discussions, stating: "Lana: Aimee Wagstaff told me to contact you directly regarding negotiating settlement of my two Roundup cases. Brian Caton- filed Danny Stephens- tolled. We have registered both of these clients with MDL Centrality and have completed the PFS with appropriate authorizations. Would you let us know what we need to do to move forward toward resolution? **(Exhibit 2).**

- On July 12, 2020, Ms. Varney responded: "Hi David, Thanks for reaching out. Can you please send to me the PFSs for your clients? I can ask our litigation team for them, but thought you might have them at your fingertips. Once reviewed, we will contact you to discuss further. Do you have a demand letter you'd like to send along? Thanks, Lana." **(Exhibit 2).**

- On July 12, 2020 (at 6:21 p.m.)  we responded, " Thank you. We will get back to you ASAP." **(Exhibit 2).**

- On July 12, 2020 (at 7:27 p.m.) we wrote, "Lana: Attached are the fact sheets for Brian Caton and Danny Stephens. Let's discuss the fact sheets when your team has reviewed. At this point we do not have a demand but will get you one soon. David" **(Exhibit 2).**

- On September 22, 2020, we wrote, "Hello Lana: At your request, we sent you the PFSs for our two roundup clients in July. I was following up to see what the next steps are. David." **(Exhibit 2).**

- On October 28, 2020, we wrote, "Hello Lana: Do you have any updates on next steps with our Roundup cases? David." **(Exhibit 2).**

- On November 10, 2020, we wrote to Ms. Varney and to attorney Fritz Zimmer at King & Spalding, " Lana/Fritz: "I am checking in to see what the next steps are on the Roundup settlements? David." **(Exhibit 2).**

- On November 25, 2020, we wrote, " Lana/Fritz: We would like to move our two roundup cases toward resolution. Is it possible to have a call with someone on your team to discuss next steps? David." **(Exhibit 2).**

-  On November 25, 2020, Lana Varney wrote, "Hi David, Thanks for reaching out again. And may i also give thanks for your patience. My apologies for be tardy in responding; just overwhelmed with pandemic pressures. I'm looping in our partner Mel Bailey, who has graciously volunteered to take the baton from me and see if we can move forward on resolving your two cases. You should hear from Mel soon. Thanks again, Lana." **(Exhibit 2).**

- On November 25, 2020 ,we wrote back, "Thank you Lana. I look forward to hearing from Mel. David." **(Exhibit 2).**

- On December 11, 2020, we wrote to Mr. Bailey (cc'ing Ms. Varney and Mr. Zimmer): "Mel: I am checking in to see how we can move my two roundup cases toward resolution. Looking forward to hearing from you. David." **(Exhibit 2).**

- On January 4, 2021, we wrote to Mr. Bailey, "Mel: Happy New Year! I am reaching out again to see if we can get our two cases resolved. Let me know what you need from us. David." **(Exhibit 2).**

- On January 4, 2021, Mel Bailey responded, " Greetings David.  Do you have time for a call this afternoon or in the morning?  M." **(Exhibit 2).** We responded that same day, "I thought I responded.  Are you available at 3 pm central (4 pm eastern) or later today?" *Id.* Mr. Bailey then responded, " You bet. What number works best for you?" *Id.* We responded, with my cell number "615-957-0912." *Id.*

- On January 4, 2021, we had our first phone call with Monsanto's counsel Mel Bailey, and we discussed whether we should proceed with our single MDL case (Caton) in the Special Master settlement program or should we negotiate directly with Mr. Bailey, He assured us that direct negotiation would be a good approach for our one  MDL case and that he would be very pleased to work with us. My paralegal (and wife), Catherine, was on the call with me and Mr. Bailey. **(Exhibit 2).**

- After the January 4, 2021, phone call, Mr. Bailey e-mailed, "Catherine and David, thanks for taking the time to speak with me today.  I have attached an exposure affidavit for your client's execution.  Additionally, if you will take second and complete the attached Plaintiff Information Sheet, that would help me get this matter to the point of review more quickly.  Feel free to simply forward the prior information sheet that you referred to in our call, if that is easier.  I will send you a separate email including some of the criteria for evaluating the claims.  M." (**Exhibit 2**).

- A letter from Settlement Master Feinberg dated January 22, 2021 (attached as **Exhibit 1**) stated "**This settlement program is entirely voluntary."** (Emphasis in original). This letter enclosed the claim form but **said nothing about deadlines or the program being mandatory.** Nor did lead MDL counsel ever advised us in any communication that the program was no longer voluntary and never advised that PTO 270 put our case (and others) at risk for dismissal.

- Mr. Feinberg's 1/22/2021 letter was interpreted by the undersigned counsel to mean  that participation in the special master settlement program was "entirely voluntary" and that we could also pursue *direct* settlement negotiations with Monsanto (Monsanto's counsel). *Which we had been doing for over six months.*

- On March 18, 2021, Plaintiffs sent a demand by email to Monsanto's counsel Mel Bailey at King & Spalding (mbailey@kslaw.com) in the *Caton* case (filed herein as Case No. 3:19-cv-07675 ) and in another case (*Stephens*, subject to a tolling agreement).(**Exhibit 2**).

- On April 27, 2021, plaintiffs' counsel followed up with an e-mail to attorney Bailey stating "We sent you a demand to settle our two cases last month. See below. Do you have a response." (**Exhibit 2**).

- On June 21, 2021, we received a second letter from Special Master Feinberg (**Exhibit 3**) noting that he had not received the Special Claim form. Based upon Mr. Feinberg's prior letter (stating the program was "entirely voluntary") we did not submit the  claim form that we had received in January because we had *already sent a demand and settlement materials to Monsanto's counsel* on March 18, 2021**.  Nothing in the June 21, 2021, letter from Special Master Feinberg stated participation in the program was mandatory or that any sanctions would be imposed.** Accordingly, we were operating on the assumption that the program was voluntary and that our direct settlement negotiations with Monsanto were proper (in accordance with Mr. Feinberg's earlier 1/22/2021 letter).

- On July 23, 2021, this Court entered PTO 240 regarding the Settlement Program. On January 21, 2022, the Court entered PTO  270 that ordered firms to show cause why their cases should not be dismissed for failure to participate in the Special Master's Program. As noted above, plaintiffs' counsel did not open the ECF notifications as they related to the Special Master Program which we (plaintiffs' counsel  and Monsanto's attorneys) had intentionally chosen to bypass (again having been told by the Special Master that the

program was entirely voluntary and having been told Monsanto's counsel that direct negotiation for our sole case was "fine" and enrollment in the program was not necessary."

- If at any time we had been told by the Special Master, lead plaintiffs' counsel in the MDL, or by Monsanto's attorney that participation in the Special master settlement program was mandatory or required we would have participated in the program and certainly would have responded to the show cause order by explaining why we had not previously entered (because we were explicitly told it was voluntary and we were in on-going negotiations with Monsanto's counsel) and that we would promptly do so). Thus, amendment of PTO to exempt the Catons is prayed for hereon.

- *Caton* is the only case the undersigned counsel has in have in this MDL. We have one other case (*Stephens*), and it is subject to a tolling agreement and has not been filed (and thus is not in the MDL).

- I received no notice or communication of any kind from lead counsel of any potential for dismissal in connection with PTOs 240 and 270.

- Further, as shown below, we continued to correspond and negotiate settlement directly with Monsanto **after** PTOs 240 and 270 and after our case, unbeknownst to us, was dismissed. We were never told by Monsanto or lead counsel for plaintiffs in the MDL that our talks were in any way *contra* to PTO 240/270 or that we had to participate in the Special Master program to settle the Catons' case.

- On December 21, 2021, plaintiffs' counsel sent another email to attorney Bailey, stating: " We spoke earlier this year about resolving our two Roundup cases. We sent you a demand on March 18,2021 and never heard back from you. . Would you kindly respond one way or the other on this?" **(Exhibit 2)**.

- Attorney Bailey replied on December 21, 2021, stating: **"Thanks David. I will get a response by next week."** (emphasis added). (**Exhibit 2**). Note, this e-mail was well *after* PTO 240 (July 2021). We thus had no notice that we should be negotiating in the Special Master Program.

- At no time did Monsanto's counsel state or advise that we had to be in Special Master's settlement program—thus leaving us with the impression that our direct settlement approach was completely appropriate.

- On December 30, 2021, plaintiffs' counsel responded: "Thank you Mel. I look forward to hearing from you." **(Exhibit 2).**

- On January 3, 2021, plaintiffs' counsel emailed: "Mel: I thought you were going to respond by last week?" **(Exhibit 2).**

- On January 21, 2022 ,PTO 270 was entered by the Court. I received PTO 270 but not realize or recognize that the Caton plaintiffs were affected by the Order.

- On February 3, 2021, plaintiffs' counsel e-mailed: " Mel: We would like to hear back from you on resolving our roundup claims." **(Exhibit 2).**

- On April 11, 2022, plaintiffs' counsel emailed: "Mel: On 12/21/21 you e-mailed me that we would get a response to our demand on these cases in a week. We still have not heard from you. Please let me know something." **(Exhibit 2).**

- On May 16, 2022,  the Court dismissed Plaintiffs' case (*Caton v. Monsanto*) for failure to comply with PTO 270. Plaintiffs' counsel did not realize or recognize that this Order dismissed the *Caton* case and was completely unaware that the Court had dismissed the case as we were in continued settlement discussions with Monsanto's counsel and at all times believed our case was being properly negotiated with Monsanto's counsel *outside* of the Special Master Program and the Court's orders relating thereto.

- On November 30, 2022, plaintiffs' counsel emailed: "Mel: Catherine Smith in my office just left you a voicemail regarding our two Roundup cases. Please let us know the status of responding to our demand." **(Exhibit 2).**

- On November 30, 2022, Monsanto's counsel, Mr. Bailey, responded, **"Let me look into the status and I will give you a call."** (emphasis added). **(Exhibit 2).** Once again, at no time did Monsanto's counsel state or advise that we had to be in Special Master's settlement program or that our case had actually been dismissed for non-compliance with PTO 270. At all times we believed our case was active as we proceeded with direct settlement negotiations with Monsanto's settlement counsel, Mr. Bailey.

- On November 30, 2022, plaintiffs' counsel responded: "Thank you!" **(Exhibit 2).**

- On December 12, 2022, plaintiffs' counsel e-mailed Mr. Bailey: "Mel: Have you an update on the status of our two cases? Brian Caton and Danny Stephens? In your last e-mail of 11/30/22, you said you were looking into the status and would give us a call. David. 615-957-0912." **(Exhibit 2).**

- On December 19, 2022, plaintiffs'' counsel e-mailed Mr. Bailey: "Mel: Have you found out any information about the status of these cases? David." **(Exhibit 2).**

- On December 27, 2022, plaintiffs' counsel e-mailed Mr. Bailey:  "Mel: Checking in again on getting these cases wrapped up. Please give me an update. David." **(Exhibit 2).**

- On January 13, 2023,  plaintiffs' counsel e-mailed Mr. Bailey:  "Mel: Checking in again on my 2 Roundup cases. Please let me know something one way or the other so I can communicate with my clients. David." **(Exhibit 2).**

- On March 27, 2023,  plaintiffs' counsel e-mailed Mr. Bailey: Mel: "Do you have a response to our demand? David." **(Exhibit 2).**

- As our emails were not being responded to my office made phone calls  and left voice messages to Monsanto's counsel which phone calls and messages were not returned.

- Perplexed at the "radio silence" from Monsanto's attorneys  despite being "promised a call" on the status of our settlement demand, on November 13, 2023, I went on Pacer  to check on *Caton v. Monsanto*, Case No. 3:19-cv-07675 docket (as opposed to the MDL master docket) and discovered that the *Caton* case had been dismissed.

- Prior to November 13, 2023, in good faith I believed we were still waiting to hear back from Monsanto on settlement and I had no knowledge that our one case in the Roundup MDL (*Caton*) had been dismissed.

- A central purpose of MDL PTOs 240 and 270 was to prompt the parties to engage in meaningful settlement negotiations. As the e-mail thread from July 2020 onward shows, we all times were acting diligently and good faith to pursue *direct* settlement negotiations with Monsanto and were unaware of PTOs 240 and 270 and  were unaware that our single case in the MDL had been dismissed.

- Although we procedurally failed to "show cause" as required by PTO 270 in fact we had good cause to show  why we had not entered the settlement program  in that both sides were diligently involved in direct settlement talks and we had been specifically told that the program was entirely voluntary and that direct negotiations were appropriate for one single case.

In further support of this motion, I have attached my Declaration (*Declaration of David Randolph Smith*) attesting to the facts above to explain that: we were diligently pursuing settlement negotiations with Monsanto (the very purpose of PTOs 240 and 270);  were unaware that the case orders had *changed* the voluntary program to require participation in the Special Master settlement program;  and were unaware of the May 2022 dismissal order for failing to comply with PTO 270 until November 13, 2023.

## III.    STANDARD OF REVIEW

With respect to the standard for amending a pre-trial order, in *Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir. 2005) the Ninth Circuit set forth the test for amending a pre-trial order:

Galdamez had the burden of showing that an amendment to the pretrial order was necessary to prevent "manifest injustice." See Fed.R.Civ.P. 16(e); *Byrd v. Guess*, 137 F.3d 1126, 1132 (9th Cir.1998). In evaluating a motion to amend the pretrial order, a district court should consider four factors: (1) the degree of prejudice or surprise to the defendants if the order is modified; (2) the ability of the defendants to cure the prejudice; (3) any impact of modification on the orderly and efficient conduct of the trial; and (4) any willfulness or bad faith by the party seeking modification. *Id.* We review the district court's denial of the motion for abuse of discretion. Id. at 1131.

With respect to FRCP Rule 60(b), "First, the rule is remedial in nature and thus must be liberally applied. *See Falk v. Allen,* 739 F.2d 461, 463 (9th Cir.1984) (per curiam)."*Cmty. Dental Servs. v. Tani,* 282 F.3d 1164, 1169–70 (9th Cir. 2002), as amended on denial of *reh'g and reh'g en banc* (Apr. 24, 2002) *See also Falk v. Allen,* 739 F. 2d 461, 463 (9th Cir. 1984).* ("First, Rule 60(b) is meant to be remedial in nature and therefore must be liberally applied. *See Butner v. Neustadter,* 324 F.2d 783, 786 (9th Cir.1963).*"). Additionally, the entry of a judgment for failing to meet a procedural deadline (*e.g.,* a default judgment) is "appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen,* 739 F. 2d 461, 463 (9th Cir. 1984).*

## IV.   LAW AND ARGUMENT

A pre-trial order cannot be amended without the permission of the court and a showing of manifest injustice. *Galdamez v. Potter,* 415 F.3d 1015, 1020 (9th Cir. 2005).* The decision of whether or not to permit a change in a pre-trial order is within the discretion of the trial judge. *Id.* In PTOs 240 and 270  the Court ordered every plaintiff in the MDL to participate in the Special Master settlement Program and ordered dismissal for plaintiffs who did not show cause for non-compliance with the mandatory order to participate in the Special Master settlement Program. In this case, however, the Caton plaintiffs were *already* in a direct settlement negotiation with Monsanto's lawyers (and had been for six months) and were repeatedly assured that this *direct*

settlement approach was both voluntary and proper. Here the plaintiffs were at all times acting in the good faith belief that the direct settlement approach outside of the Special Master Program was entirely proper.  Dismissal of their case for failing to enter the Settlement Program where *both* plaintiffs and Monsanto were already  effectively doing what the Court ordered  is manifestly unjust under all the facts and circumstances.

Applying the four-factor test in *Galdamez* : (1) Monsanto can certainly not complain of any prejudice or surprise in allowing the Catons to proceed outside the Special Master settlement program because that is precisely what Monsanto wanted and agreed to. (2) Likewise, there is no prejudice or surprise to the Monsanto  if  the PTOs 240 and 270  orders modified to exempt the Catons because that is what  Monsanto wanted and agreed to. (3) Nor will modification have any impact on the orderly and efficient conduct of the trial as the MDL is proceeding and no transfer or trial setting has occurred. (4) Finally, there is absolutely no willfulness or bad faith by the party seeking modification. Because all of the factors for amending the pre-trial order on the basis of manifest injustice are present here, PTO 270 should be amended  and vacated as to the Caton case.

Since the dismissal order is premised on the earlier "violation" of PTO 270, if The Court amends/vacates PTO 270  to exempt the Catons on the basis of manifest injustice/equitable estoppel under the circumstances, Rule 60(b)(5) allows relief from the dismissal order because by its terms a judgment or order may be set aside if the judgment is based on a prior order or judgment that is reversed or vacated.  *See e.g., Walker v. Bonta,* No. 20-CV-00031-DMS-AGS, 2023 WL 6131086, at *4 (S.D. Cal. Sept. 19, 2023) "Rule 60(b)(5) is warranted because the Orders are based on the earlier vacated order…"

The manifest injustice circumstances in this case are that at all times the plaintiffs *and Monsanto's attorneys* thought, believed, and proceeded that they were properly proceeding with settlement negotiations *in an active case* and Monsanto's reassurances and promises induced a "false sense of security" (that our case was active and that settlement discussions were proceeding along). Monsanto's promises effectively caused the dismissal order. This is evidenced by Monsanto stating and agreeing on December 21, 2021, to "get a response to your demand by next week" (which never came) although this was five months *after* PTO 240, which, unbeknown to us, *changed* participation in the special master settlement from voluntary to mandatory. Instead of promising (a promise never kept) to respond to our demand (the December 21, 2021, e-mail from Monsanto's counsel), Monsanto arguably should have said PTO 240 (entered on July 21, 2021) required participation in the Special Master Program. Similarly, lead counsel for the plaintiffs should have advised counsel with transferred cases that the special master settlement program had *changed,* and that PTO 270 could result in dismissal. Likewise, instead of promising to look into the *status of a response to our demand* and getting back to us (again an unkept promise) (the November 30, 2022, e-mail from Monsanto's counsel that was *16 months after PTO 240* and *10 months after PTO 270)*, Monsanto should have said PTOs 240 and 270 required settlement via the Special master program.

Here, wittingly or unwittingly Monsanto "strung us along" by promising a response to our settlement demand (in December 2021) and promising to advise us of the status of a response to our demand in November 2022) (*6 months* after the case had been procedurally dismissed) despite Monsanto being aware that all cases should be in Special Master Program. These assurances from Monsanto came at a *critical* time when we could have *timely* "shown cause" under PTO 270 (entered January 2022) as to why we had not entered in the special master

program (because we were told by both the Special Master and Monsanto's counsel that the program was voluntary and we were then in direct settlement talks with Monsanto's counsel). *See Bamforth v. Facebook, Inc.,* No. 20-CV-09483-DMR, 2022 WL 1987858, at \*6 (N.D. Cal. June 6, 2022) (FRCP 60(b)(6) equitable estoppel applicable where defendant's act or omission actually and reasonably induced the plaintiff to refrain from filing a timely suit).

With respect to the requirement that the Rule 60(b)(5) motion be brought "within a reasonable time" we recognize that this motion is brought 16 months after the case was dismissed for non-compliance with PTO 270. As our e-mail thread shows we (and Monsanto) were "in the dark" as to the dismissal as *both sides* continued to correspond and engage in settlement communications by e-mail correspondence for nearly a year after the case was dismissed (our last e-mail was on March 27, 2023). Until November 13, 2023, we were completely unaware that our case had been dismissed as were in effect "waiting for Godot" —waiting for a twice *promised response* to our settlement demand in the context of a long and drawn-out MDL where we had but one case.

What constitutes reasonable time depends upon the facts of each case. *Lemoge v. United States,* 587 F.3d 1188, 1196-97 (9th Cir. 2009); *United States v. Burton,* No. 1:85-CR-00205 LJO, 2016 WL 6522803, at \*1 (E.D. Cal. Nov. 3, 2016). Whether a party acted within a reasonable time under Rule 60 "depends on the reason for failing to act sooner and whether the non-moving party has been prejudiced by the delay." *In re Far East Lines, Inc.,* 889 F.2d 242, 249 (9th Cir.1989); *Life Alert Emergency Response, Inc. v. Lifewatch, Inc.,* No. 2:08-CV-02184-CAS, 2014 WL 2115189, at \*4 (C.D. Cal. May 19, 2014). Here, Monsanto has not been prejudiced by conduct it fully participated in and Plaintiffs have acted as soon as they discovered the case had been dismissed (filing 3 days after discovery). As shown above, plaintiffs and

Monsanto were completely unaware the case had been dismissed as the parties continued to exchange settlement correspondence as late as March 2023 with Monsanto's last e-mail on November 30, 2022.

A parties *actual awareness* and the date  of discovery of the grounds for Rule 60(b) relief are determinant factors as to  whether a Rule 60(b) motion was made in a "reasonable time. In *Lal v. California,* 610 F.3d 518, 526 (9th Cir. 2010) the Ninth Circuit held that Rule 60(b)(6) relief was proper  where: "Not quite four months elapsed between **when Lal learned** on October 1, 2007 **that her case had been dismissed** and when she filed her motion for relief." (Emphasis added). *See also  Inland Concrete Enterprises, Inc. v. Kraft,* 318 F.R.D. 383, 412 (C.D. Cal. 2016) ("Whatever errors Kraft believes this Court made in its terminating-sanction opinion or any earlier ruling, he was aware of those alleged errors at the time this Court entered judgment.*"); Ordaz v. Bank of Am., N.A.,* No. 214CV00564MCEKJN, 2016 WL 541456, at *2 (E.D. Cal. Feb. 11, 2016) ("A 363-day delay would also be unreasonable **if Plaintiff's counsel previously realized that the case had been dismissed,** but delayed filing the instant Motion until the last possible minute. Since Defendants have not squarely addressed this issue, the Court will not weigh this factor in their favor.").

Here, Your Honor dismissed the case for non-compliance with PTO 270 on May 16, 2022; however,  undersigned counsel did not discover this fact until November 13, 2023 (*Declaration of David Randolph Smith*). Monsanto *also did not advise* that PTO 240 required mandatory participation in the Special Master Program for case (*see* December 21, 2021, e-mail stating: **"**Thanks David. I will get a response by next week." Nor, apparently, was Monsanto aware that the case had been dismissed for non-compliance with PTO 270 (*see* email from Bailey November 30, 2022).

There is no prejudice to Monsanto because they twice promised to respond to our demand and were engaged and on board at all times with direct settlement negotiations until they suddenly went silent. Monsanto is continuing to settle cases[3] and would suffer no prejudice to return to a litigation schedule or, more preferably, to place the *Caton* case in the Special Master's settlement program.

*Plaintiffs Have Meritorious Claims.*

We have explained the reasons for failing to participate in the Special Master Program and for not responding to PTO 270, but those facts bear no reflection to the substantive merits of the Plaintiffs' claims. Plaintiffs' claims involve Mr. Caton's development of non-Hodgkin Lymphoma, as well as evidence supporting his exposure to Roundup. Plaintiffs have evidence that exposure to Roundup causes non-Hodgkin Lymphoma. Multiple juries have found in favor of plaintiffs making similar claims against Monsanto (some in this Court). Plaintiffs have credibly stated a claim for damages against Monsanto for his exposure to Roundup and resulting non-Hodgkin's Lymphoma.

*The Role of Plaintiffs' Counsel and Sanctions as an Alternative to Dismissal.*

Your Honor, in a previous case involving a failure to comply with PTO 270 and a Rule 60(b)(1) motion filed nearly six-months after the dismissal order also at issue here , *Watson v. Monsanto*, No. 3:18-cv-02100 (ECF 21) stated: "There is no question that attorney negligence caused judgment to be entered against Watson and Smith. However, in the context of this

---

[3] *Monsanto Roundup Litigation Update,* "As of October 2023, Monsanto has reached settlement agreements in nearly 100,000 Roundup lawsuits." Available at: https://www.lawsuit-information-center.com/roundup-mdl-judge-question-10-billion-settlement-proposal.html.

massive, complicated MDL, their neglect is excusable." In addition, in *Cmty. Dental Servs. v. Tani,* 282 F.3d 1164, 1168 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 24, 2002) the Court stated:

> Under this circuit's precedent, a client is **ordinarily** chargeable with his counsel's negligent acts. Clients are "considered to have notice of all facts known to their lawyer-agent.*" Ringgold Corp. v. Worr*all, 880 F.2d 1138, 1141–42 (9th Cir.1989). Because the client is presumed to have voluntarily chosen the lawyer as his representative and agent, he ordinarily cannot later avoid accountability for negligent acts or omissions of his counsel.(emphasis added).

In all candor counsel acknowledges that he delinquently failed to open the ECF notifications. We have explained why and how this happened  as we were involved with direct settlement discussions with Monsanto's counsel and how at all times, we were led to believe the program was voluntary and that our direct negotiation was proper. Our e-mail thread shows we were being diligent in the pursuit of settlement discussions  directly with defense counsel  and were  not neglecting the case *in that regard*.  Under the circumstances of what we were told and our on-going negotiations,  we ask the Court to order  sanctions against counsel  in lieu of a dismissal for  delinquency in attention to the Court's pre-trial orders regarding the settlement program  as opposed to a dismissal based upon the negligence of counsel. As observed in  *Carter v. Albert Einstein Med. Ctr.,* 804 F.2d 805, 807 (3d Cir. 1986):

> Although the *Link* principle remains valid, see *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), we have increasingly emphasized visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault. *See Matter of MacMeekin*, 722 F.2d 32, 35 (3d Cir.1983).
>
> As we said in *Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d 863, 869 (3d Cir.1984), "[d]ismissal must be a sanction of last, not first, resort." *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339 (3d Cir.1982) followed the same theme. There we emphasized the failure of the district court to consider the imposition of some lesser sanction than dismissal with prejudice. …Consequently, we do not favor dismissal of a case when the attorney's delinquencies—not the client's—necessitate sanctions.

**CONCLUSION**

This motion rests with the sound discretion of the Court. The lengthy on-going settlement discussions and correspondence in this case both before and after PTOs 240 and 270 and the procedural/default dismissal order in the context of multiple assurances that participation in the settlement program was entirely voluntary are equitable facts that justify relief on the grounds of manifest injustice and equitable estoppel. The dismissal here was not on the merits and was solely on grounds related to MDL *procedure* and the Court's case management plan to require the parties to engage in settlement negotiations. Here the plaintiffs and Monsanto were already doing that and at all time plaintiffs acted in good faith in their direct negotiations with Monsanto's counsel and we were completely unmindful that the settlement program was no longer mandatory.

We realize our motion comes sixteen months after the dismissal but the salient and controlling facts are that the dismissal was only recently discovered and was unknown (to both plaintiffs' counsel and Monsanto's counsel) precisely because the parties were proceeding in direct settlement talks *outside* of the Special master program.

For the reasons set forth herein (and as detailed in the accompanying Exhibits to this Memorandum), Plaintiffs Brian and Jean Caton respectfully seek pray that the Court amend and vacate PTO 270 to exempt the Caton plaintiffs on the grounds of manifest injustice and equitable estoppel then pursuant to Rule 60(b)(5) set aside the dismissal order on the grounds that it is based on an amended/vacated PTO. In addition, in lieu of dismissal the Court should order

22

appropriate sanctions against the undersigned counsel for failure to adequately monitor the ECF notifications.

Dated: November 16, 2023.

Respectfully submitted.

*/s/ David Randolph Smith*
David Randolph Smith
DAVID RANDOLPH SMITH & ASSOCIATES
1913 21st Avenue South
Nashville, Tennessee 37212
Phone: (615) 742-1775
Fax: (615) 742-1223
Email: drs@drslawfirm.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2023, I electronically filed the foregoing with the Clerk of Court  by using the CM/ECF filing system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ David Randolph Smith*
David Randolph Smith

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

**In Re: ROUNDUP**
**PRODUCTS LIABILITY LITIGATION**                         **MDL No. 2741**

This document relates to:
*Caton v. Monsanto*, Case No. 3:19-cv-07675.

---

## [PROPOSED] ORDER

Based upon the oral and written argument and evidence presented in connection with the motions, the Court makes the following findings:

1. Plaintiffs' MOTION TO AMEND/VACATE PTO 270  is GRANTED. The Court's January 21, 2022,  Pre-Trial Order 270 is hereby amended to exclude *Caton v. Monsanto,* Case No. 3:19-cv-07675.

2. Plaintiffs' MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60(b)(5) is GRANTED.

3. This Court's May 16, 2022, Order Dismissing Cases with Prejudice for Failure to Comply with PTO No. 270 [Docket No. 14488] is hereby amended to exclude *Caton v. Monsanto,* Case No. 3:19-cv-07675.

4. The Clerk of the Court is **ORDERED** to re-open this case, *Caton v. Monsanto*, Case No. 3:19-cv-07675.

**IT IS SO ORDERED.**

Dated: _____

24

By: _____
   **Honorable Vince Chhabria,**
   **United States District Judge**