JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202
Tel: (704) 350-7714
Fax: (704) 350-7800

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | **MONSANTO COMPANY'S MOTION TO DISMISS** |
| Jonas Perez-Hernandez v. Monsanto Co., Case No. 3:23-cv-04946-VC | Date:   Feb. 15, 2024 |
| | Time:   10:00 a.m. |
| | Place:  San Francisco, Courtroom 4, 17th Floor |
| | Judge:  Hon. Vince G. Chhabria |

PLEASE TAKE NOTICE THAT on February 15, 2024, at 10:00 a.m., or at such other time as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, at the San Francisco Courthouse, Courtroom 4 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, defendant Monsanto Company will, and hereby does, move to dismiss Plaintiffs' Complaint with prejudice.

Monsanto Company seeks an order dismissing Plaintiffs' Complaint with prejudice under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6).  This motion is based on the accompanying memorandum of points and authorities, Monsanto Company's forthcoming reply brief, arguments of counsel, and such other matters as may be considered.

## TABLE OF CONTENTS
## Contents

Table of Contents ......................................................................................................... i

Table of Authorities ..................................................................................................... ii

Introduction ................................................................................................................. 1

Factual Background ..................................................................................................... 1

Legal Standards ........................................................................................................... 4

Argument ..................................................................................................................... 4

    I.     VENUE IS NOT PROPER IN THIS DISTRICT. ................................................ 4

        A.     Venue Is Improper Under § 391(b)(1). ........................................... 4

        B.     Venue Is Improper Under § 1391(b)(2). .......................................... 6

    II.     PLAINTIFFS LACK ARTICLE III STANDING. ................................................ 6

    III.     PLAINTIFFS HAVE NOT ADEQUATELY PLEADED EQUITABLE
        TOLLING. ........................................................................................................ 8

    IV.     PLAINTIFFS' PURPORTED MEDICAL MONITORING CLAIM
        FAILS. ............................................................................................................. 9

        A.     California Does Not Recognize a Cause of Action for Medical
            Monitoring. ..................................................................................... 10

        B.     Plaintiffs Fail fo Plead Facts that Would Permit a Medical
            Monitoring Remedy. ....................................................................... 10

    V.     PLAINTIFFS HAVE NOT STATED AN EXPRESS-WARRANTY
        CLAIM. ........................................................................................................... 12

    VI.     PLAINTIFFS HAVE NOT STATED AN IMPLIED-WARRANTY
        CLAIM. ........................................................................................................... 12

    VII.     PLAINTIFFS DID NOT PLEAD THEIR FRAUD-BASED CLAIMS
        WITH PARTICULARITY. ............................................................................. 13

    VIII.     PLAINTIFFS' DECLARATORY RELIEF CLAIM IS DUPLICATIVE
        OF THEIR OTHER CLAIMS. ....................................................................... 14

Conclusion .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011) ................................................................12

*Am. Suzuki Motor Corp. v. Super. Ct.*,
37 Cal. App. 4th 1291 (1995) ...............................................................13

*In re Animation Workers Antitrust Litig.*,
123 F. Supp. 3d 1175 (N.D. Cal. 2015) ...............................................8, 9

*Applegate v. Monsanto Co.*,
No. 3:18-cv-03363-CV, 2018 U.S. Dist. Ct. Pleadings LEXIS 28521 (N.D.
Cal. Jan. 17, 2018) ..................................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................11

*Block v. eBay, Inc.*,
747 F.3d 1135 (9th Cir. 2014) .............................................................14

*Bohren v. San Jose Police Dept.*,
2022 WL 834320 (N.D. Cal. Mar. 21, 2022)...........................................4

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
582 U.S. 255 (2017).............................................................................5

*Burr v. Sherwin Williams Co.*,
42 Cal.2d 682 (1954) ............................................................................13

*Clapper v. Amnesty Int'l*,
568 U.S. 398 (2013)..............................................................................7

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2018) .............................................................12

*Conmar Corp. v. Mitsui & Co. (USA)*,
858 F.2d 499 (9th Cir. 1988) ...............................................................9

*Corbett v. Pharmacare U.S., Inc.*,
544 F. Supp. 3d 996 (S.D. Cal. 2021)....................................................13

*Crosscode Inc. v. Sharma*,
2020 WL 1031266 (N.D. Cal. Mar. 3, 2020)...........................................6

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)........................................................................................5

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ....................................................................8, 13

*Davis v. FEC*,
    554 U.S. 724 (2008)........................................................................................7

*Dent v. Nat'l Football League*,
    2021 WL 5987260 (N.D. Cal. Dec. 17, 2021)...............................................9

*Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir. 2019) .......................................................................14

*Edelson PC v. Lira*,
    2022 WL 17404299 (N.D. Cal. Dec. 2, 2022)...............................................4

*Ford Motor Co. v. Montana Eighth Jud. Ct.*,
    592 U.S. ----, 141 S. Ct. 1017 (2021) ..........................................................5

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .......................................................................4

*Gov't Emps. Ins. Co. v. Dizol*,
    133 F.3d 1220 (9th Cir. 1998) .....................................................................15

*Jolly v. Eli Lilly & Co.*,
    44 Cal.3d 1103 (1988) ...................................................................................9

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................13, 14

*Lockheed Martin Corp. v. Super. Ct.*,
    29 Cal. 4th 1096 (2003) ...............................................................................10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................6

*Lynwood Invs. CY Ltd. v. Konovalov*,
    2022 WL 3370795 (N.D. Cal. Aug. 16, 2022) ..............................................9

*Mangindin v. Wash. Mut. Bank*,
    637 F. Supp. 2d 700 (N.D. Cal. 2009) .........................................................15

*Matic v. U.S. Nutrition, Inc.*,
    2019 WL 3084335 (C.D. Cal. Mar. 27, 2019).............................................8

*Moncada v. Allstate Ins.*,
    471 F. Supp. 2d 987 (N.D. Cal. 2006) .................................................................................12

*Murphy v. Schneider Nat'l, Inc.*,
    362 F.3d 1133 (9th Cir. 2004) .............................................................................................4

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ...............................................................................................4

*O'Connor v. Boeing N. Am., Inc.*,
    311 F.3d 1139 (9th Cir. 2022) .............................................................................................9

*Osborne v. Subaru of Am. Inc.*,
    198 Cal. App. 3d 646 (1988) ........................................................................................12, 13

*Piedmont Label Co. v. Sun Garden Packing Co.*,
    598 F.2d 491 (9th Cir. 1979) ...............................................................................................4

*Pinkert v. Schwab Charitable Fund*,
    48 F.4th 1051 (9th Cir. 2022) ..............................................................................................7

*Pitt v. Metro. Tower Life Ins.*,
    2020 WL 1557429 (N.D. Cal. Apr. 1, 2020) ......................................................................5

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) .........................................................................................7, 8, 10, 11

*Ramirez v. Monsanto Co.*,
    MDL No. 2741, No. 3:19-cv-02224 (June 24, 2020) ........................................................3

*Ramirez v. Monsanto Co.*,
    No. 3:16-02741, Dkt. No. 104 (N.D. Cal. Aug. 8, 2022) .................................................10

*Riva v. Pepsico, Inc.*,
    82 F. Supp. 3d 1045 (N.D. Cal. 2015) ...........................................................................8, 11

*Rolish v. Monsanto Co.*,
    No. 2:20-CV-01340 (C.D. Cal. Feb. 10, 2020)...................................................................3

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ...........................................................................................14

*San Diego Gas & Elec. Co. v. Super. Ct.*,
    13 Cal. 4th 893 (1996) .......................................................................................................10

*Saravia v. Sessions*,
    280 F. Supp. 3d 1168 (N.D. Cal. Nov. 20, 2017) ...............................................................6

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................6

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) ....................................................12

*T&M Solar & Air Cond., Inc. v. Lennox Int'l Inc.*,
    83 F. Supp. 3d 855 (N.D. Cal. 2015) .......................................................12

*Top Agent Network, Inc. v. Zillow, Inc.*,
    2015 WL 7709655 (N.D. Cal. Apr. 13, 2015) ..........................................15

*United States v. Washington*,
    759 F.2d 1353 (9th Cir.) .........................................................................14

*United Tactical Sys. LLC v. Real Action Paintball, Inc.*,
    108 F. Supp. 3d 733 (N.D. Cal. 2015) .......................................................6

*WildEarth Guardians v. U.S. Forest Serv.*,
    70 F.4th 1212 (9th Cir. 2023) ....................................................................6

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
    62 F.4th 517 (9th Cir. 2023) ..................................................................6, 7

*Xavier v. Philip Morris USA Inc.*,
    2010 WL 3956860 (N.D. Cal. 2010) .......................................................10

**Statutes**

28 U.S.C. § 1391(b)(1) ..................................................................................4, 5

28 U.S.C. § 1391(b)(2) .....................................................................................6

28 U.S.C. § 1391(c) ..........................................................................................5

28 U.S.C. § 1391(d) ..........................................................................................5

Cal. Bus. & Prof. Code § 17208 .......................................................................8

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................13, 14

Fed. R. Civ. P. 12(b)(3) .....................................................................................4

Fed. R. Civ. P. 12(b)(6) .....................................................................................4

U.S. Const. art. III     6

## INTRODUCTION

This Court well knows the history of the various Roundup® cases.  This case is a new attempt to recycle similar allegations into a nationwide class action.  Plaintiffs are dramatically overreaching.

They filed in the wrong venue—they do not allege that they reside nor were exposed to Roundup® products in this district.  They name Defendants over whom the Court lacks jurisdiction.  They assert claims for which there is no legal basis and for which Plaintiffs lack standing.  And somehow, Plaintiffs claim that facts their own counsel has publicly litigated for years and that have been widely discussed in the media were "concealed."  Yet despite seeking damages for personal injury, economic losses, and medical monitoring, Plaintiffs could not even be bothered to allege whether they have ever purchased any Roundup® products, the circumstances or extent of their alleged exposure, any economic losses they have suffered, or any facts suggesting that they have suffered any personal injury.  The Court should dismiss their Complaint.

## FACTUAL BACKGROUND

Monsanto Company is a Delaware corporation with its headquarters and principal place of business in Missouri.  Compl. ¶ 21.  Bayer Corporation is an Indiana corporation, with its headquarters and principal place of business in New Jersey.  *Id.* ¶ 21.  The Complaint alleges that Bayer Corp. is the "direct parent" of Monsanto (*id.*), but that allegation is not correct and without good-faith basis.  *See* Declaration of Keith Abrams ¶ 7 ("Abrams Decl.") (filed concurrently herewith).  Bayer AG has not been served,[1] but it is incorporated and has its principal place of business in Germany.  Compl. ¶ 19.

The Complaint's *only* non-conclusory factual allegations regarding Plaintiffs are that each is a California resident and was "exposed to Roundup® products over a period [of years ranging

---

[1] Plaintiffs filed a return of service for Bayer AG, which purports to evidence service via a registered agent for Bayer AG in New Jersey.  Dkt. No. 9.  But Bayer AG is a German company with no registered agent for service in the United States.  *See* Abram Decl. ¶ 5.

from 9 to 19 years depending on the Plaintiff] in San Luis Obispo, California." Compl. ¶¶ 14-18. Plaintiffs do *not* allege:

- that they have a connection with the Northern District of California (San Luis Obispo is in the Central District);

- which of the dozens of Roundup® brand products listed in the Complaint (*see id*. ¶ 22) they were allegedly exposed to;

- the nature, extent, and circumstances of their alleged exposure to Roundup® products;

- whether and to what extent they were exposed to other herbicides (including both non-glyphosate-based products and glyphosate-based products not manufactured or labeled by Defendants), pesticides, or other allegedly toxic chemicals during the same period;

- that they have been diagnosed with NHL, any other form of cancer, or any other disease or condition allegedly caused by Roundup® products;

- that any medical professional has recommended that they should be monitored for any disease or condition allegedly caused by Roundup® products;

- that they have ever purchased any Roundup® product(s) and, if so, which product(s), or when, where, or from whom they were purchased;

- which specific alleged misstatements or false advertising, if any, they allegedly saw, read, or relied on;

- what specific express warranties were allegedly made for the products they used; or

- that any of them have ever incurred any economic cost of any kind—whether medical expenses, sick leave, purchase price, or anything else—resulting from exposure to Roundup® products.

Plaintiffs allege essentially four kinds of supposed injury for which they are seeking to recover: (1) personal injury from NHL (*e.g.*, *id*. ¶¶ 9, 92, 121-22, 142-44, 152-53, 190, 192, 201, Prayer ¶¶ 2-3); (2) unspecific economic losses (*e.g.*, *id*. ¶¶ 122, 144, 162, 172, 182, 192, 201, 207, 209, Prayer ¶¶ 2-3); (3) future medical monitoring (*e.g.*, *id*. ¶¶ 122, 144, 214, Prayer ¶ 4); and (4) other prospective injuries to be addressed with injunctive relief (*e.g.*, *id*. ¶¶ 122, 144, 214, Prayer ¶ 4). But Plaintiffs allege no facts showing that *they* have suffered such injuries.

The Complaint cites several bases for its assertion that Roundup® products are carcinogenic. Importantly to Plaintiffs' claim for equitable tolling (Compl. ¶¶ 83-89), however, the facts Plaintiffs allege have not only been publicly available, but highly publicized, for many years. For example, Plaintiffs cite several studies they claim show that "glyphosate and/or

Roundup®" can cause NHL (ignoring hundreds of other studies, as well as the contrary conclusions of regulators around the world).   Compl. ¶ 39.   But the studies Plaintiffs cite have always been publicly available—printed in "published peer-reviewed studies."  *Id.* ¶ 43.   Plaintiffs also cite to the 2015 IARC monograph on glyphosate.  *Id.* ¶ 41.   The IARC monograph, however, has been publicly available since it was first published in 2015 and widely covered by major media sources.  *See, e.g.*, Declaration of Jeff Wilkerson ("Wilkerson Decl.") Exs. M (Mar. 27, 2015 *Wall Street Journal* article noting IARC's "classification last week of glyphosate—which Monsanto sells under the Roundup brand—as likely having the potential to cause cancer in humans"), O (Mar. 20, 2015 *Associated Press* article titled "Popular weed killer deemed probable carcinogen by UN").   The Complaint also relies on a handful of internal Monsanto emails that Plaintiffs allege show that Monsanto was "undermining" efforts to test glyphosate's carcinogenicity and "ghost-writing" scientific literature.  *Id.* ¶¶ 46-70.   But as this Court (and Plaintiffs' counsel) knows, the emails they cite were publicly released (including by *this Court*) and widely publicized in 2017 as part of the "Monsanto Papers" disclosure of hundreds of company documents, covered by major media outlets like the *Wall Street Journal* and the *New York Times*.[2]

More broadly, plaintiffs' attorneys (including Plaintiffs' counsel) have filed tens of thousands of cases since 2015 alleging that Roundup® products are carcinogenic, many in this highly publicized MDL established in 2016 (more than seven years ago).[3]   The complaints in those

---

[2] *See, e.g.*, Ex. A (9/16/99 e-mail from William Heydens to Mark Martens, et al. at Dkt. No. 192-7 in MDL No. 2741 (N.D. Cal. Mar. 15, 2017)); Ex. L (Mar. 15, 2017 Wall Street Journal article titled "Regulation of Monsanto's 'Roundup' Herbicide Called Into Question by Emails"); Ex. J (Aug. 1, 2017 New York Times article titled "Monsanto Emails Raise Issue of Influencing Research on Roundup Weed Killer").

[3] *See, e.g.*, Ex. Z (Complaint for Damages ¶ 2, *Rolish v. Monsanto Company*, No. 2:20-CV-01340 (C.D. Cal. Feb. 10, 2020) (Joseph Saveri Law Firm) (alleging that California and IARC "have recognized that the chemicals in Roundup® are likely to cause cancer in humans"); Ex. AA (First Amended Class Action Complaint ¶ 1, *Ramirez v. Monsanto Company*, MDL No. 2741, No. 3:19-cv-02224 (June 24, 2020) (Robert L. Lieff) (alleging that "scientific evidence" "linked exposure to Defendant's Roundup® herbicide—including its active ingredient, glyphosate, alone and/or in combination with other Roundup® ingredients—to Non-Hodgkin's Lymphoma ('NHL')").

cases often cite the same documents Plaintiffs rely on.[4]  Moreover, plaintiffs' attorneys have, in pursuit of those cases, spent hundreds of millions of dollars during that same time advertising to the public that Roundup® products are carcinogenic.[5]

## LEGAL STANDARDS

Upon a motion to dismiss for improper venue under Rule 12(b)(3), the *plaintiff* bears the burden of showing that venue is proper.  *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  Courts can consider facts outside the pleadings to determine whether venue is proper.  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court "accepts as true all well-pled factual allegations" and determines whether they allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Bohren v. San Jose Police Dept.*, 2022 WL 834320, at *1 (N.D. Cal. Mar. 21, 2022).  But courts do not "accept as true allegations that contradict matter properly subject to judicial notice" or that "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## ARGUMENT

### I.   VENUE IS NOT PROPER IN THIS DISTRICT.

#### A.   Venue Is Improper Under § 391(b)(1).

Venue is improper in this district.  For venue to be proper under § 1391(b)(1), Plaintiffs must show that (1) at least one Defendant resides in this district, and (2) all Defendants reside in the state of California.  28 U.S.C § 1391(b)(1); *Edelson PC v. Lira*, 2022 WL 17404299, at *3

---

[4] *See, e.g.*, Ex. BB (Complaint ¶¶ 18-35, *Applegate v. Monsanto Company*, No. 3:18-cv-03363-CV, 2018 U.S. Dist. Ct. Pleadings LEXIS 28521 (N.D. Cal. Jan. 17, 2018) (citing internal e-mails similar or identical to those cited by Plaintiffs)).

[5] *See, e.g.*, Ex. U (12/20/17 blog post by law firm Wisner Baum titled "50 San Francisco Roundup Lawsuits Filed Against Monsanto"); Ex. W (Oct. 10, 2019, Texans for Law Reform article titled "Seeing All Those Roundup Commercials? That's Because Lawyers Have Spent $60M on Them This Year").

(N.D. Cal. Dec. 2, 2022) ("Venue is not proper under Section 1391(b)(1) because not all Defendants reside in California.").  Plaintiffs cannot make this showing for two reasons.

*First*, Bayer Corp. does not reside in California.  Abrams Decl. ¶ 4.  A corporate defendant "resides" in a state for venue purposes in any district where it is "subject to the court's personal jurisdiction with respect to the civil action in question."  § 1391(c).  As explained in Bayer Corp.'s concurrent motion to dismiss for lack of personal jurisdiction (incorporated here by reference), Bayer Corp. is not subject to personal jurisdiction in California.  Venue under § 1391(b)(1) is thus improper.

*Second*, even if Bayer Corp. did "reside" in California, neither Monsanto nor Bayer Corp. reside in *this district*.  Per § 1391(d), in a state with multiple judicial districts (like California), a corporate defendant resides in a district where it is subject to personal jurisdiction only if "its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state."  *Pitt v. Metro. Tower Life Ins.*, 2020 WL 1557429, at *3 (N.D. Cal. Apr. 1, 2020) (quoting § 1391(d)).  There is no general personal jurisdiction over either Monsanto or Bayer Corp. in this district because neither is incorporated nor has its principal place of business in this district, and Plaintiffs do not allege facts showing that either company is "essentially at home" in this district.  *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).

Nor is there specific personal jurisdiction treating this district as a separate state because, even if Monsanto's sale and marketing of Roundup® products in this district could be imputed to Bayer Corp. (and it cannot), those contacts are not "case-linked."  *See Ford Motor Co. v. Montana Eighth Jud. Court*, 592 U.S. ----, 141 S. Ct. 1017, 1025 (2021).  That is, Plaintiffs allege no facts suggesting that *their claims* arise out of any Defendants' contacts with this district.  *See id.* (plaintiffs must show that their claims "arise out of or relate to the defendant's contacts with the forum") (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017)).  Plaintiffs do not allege they bought any Roundup® products in this district, viewed any advertising and marketing in this district, or were exposed to any Roundup® products in this district.  And

they have alleged nothing suggesting that their alleged exposure to Roundup® products in San Luis Obispo (Compl. ¶¶ 14-18) relates in any way to contacts with this district.

### B.    Venue Is Improper Under § 1391(b)(2).

Venue is proper under § 1391(b)(2) only if Plaintiffs show that a "substantial part of the events or omissions" giving rise to their claims occurred in this district.  *See Crosscode Inc. v. Sharma*, 2020 WL 1031266, at *2 (N.D. Cal. Mar. 3, 2020) (Chhabria, J.).   To make this determination, "the court first considers what acts or omissions by the defendants give rise to the plaintiffs' claims."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1189 (N.D. Cal. Nov. 20, 2017) (Chhabria, J.) (quoting *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 752 (N.D. Cal. 2015)).   The court then determines whether a substantial part of those acts took place in the forum.  *Id.*  Plaintiffs cannot show the required "substantial" events or omission in this district.

Plaintiffs allege in conclusory fashion that Defendants engaged in wrongful acts related to their use and exposure to Roundup® products in California.  Compl. ¶ 13.  But they allege no facts related to their claims that supposedly occurred in *this district*.  Rather, the primary events giving rise to Plaintiffs' claims—their alleged exposure to Roundup® products—are alleged to have taken place in San Luis Obispo.  Compl. ¶¶ 14–18.  They thus have not alleged "significant events or omissions" in this district that are "material" to their claims.  *Saravia*, 280 F. Supp. 3d at 1191.

## II.    PLAINTIFFS LACK ARTICLE III STANDING.

Article III standing requires an injury in fact, fairly traceable to the defendant's actions, and likely redressable by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Plaintiffs must establish standing "with the manner and degree of evidence required at the successive stages of the litigation."  *WildEarth Guardians v. United States Forest Serv.*, 70 F.4th 1212, 1215 (9th Cir. 2023) (quoting *Lujan*, 504 U.S. at 561).   "At the pleading stage, plaintiffs must 'clearly . . . allege facts demonstrating each element.'"  *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)) (alteration in original).  These requirements apply equally to named plaintiffs in a putative

class action, who must "show that they personally have been injured." *Winsor*, 62 F.4th at 523. And standing is not dispensed "in gross."  Plaintiffs instead must demonstrate standing for each of their claims and for "each form of relief that is sought."  *Davis v. FEC*, 554 U.S. 724, 734 (2008).

Plaintiffs here fail to allege facts showing that *they* have suffered the four injuries alleged in the Complaint.

***Personal Injuries***.  Plaintiffs appear to be asserting claims for personal injuries arising from NHL, and they also vaguely allude to other diseases allegedly caused by the products.  But Plaintiffs do not allege any facts showing that they have NHL or any other disease or condition allegedly caused by Roundup® products.  Nor do they allege any basis to conclude that any of them have any "certainly impending" diagnosis of NHL or any other relevant health condition. *See Pinkert v. Schwab Charitable Fund*, 48 F.4th 1051, 1055 (9th Cir. 2022) (failure to allege past injury of any "certainly impending" future injury undermined standing) (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013)).  Plaintiffs thus lack standing to assert personal injury.

***Economic Losses***.  The Complaint seeks damages for "economic losses," "ascertainable losses," "out-of-pocket costs," and other unspecified economic injuries, but Plaintiffs allege no facts suggesting they suffered any such injury.  They do not allege that they incurred costs of any kind associated with the use or purchase of Roundup® products.  They do not even plead that any of them have ever bought any Roundup® product.  And even if they had, they do not allege a price premium, so the mere fact of purchase would not show any injury.  They also do not allege that they incurred medical costs or loss of income.  *Cf. Winsor*, 62 F.4th at 524 (holding that plaintiffs lacked standing where they did not show that defendants' "alleged breach of fiduciary duty led to plaintiffs paying higher contributions").  They thus lack standing to assert any economic injury.

***Medical Monitoring***.  Plaintiffs also lack standing to pursue a medical-monitoring remedy because, as discussed below, they have not alleged facts showing that the need for medical monitoring is a reasonably certain consequence of their alleged exposure to Roundup®.  *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1006 (1993).  They do not allege "the significance and extent" of any Plaintiff's exposure to Roundup.  *See id.*  Nor do they do allege anything at all

about any Plaintiff's baseline risk of developing NHL or other health effects absent exposure to Roundup® products, including what other risk factors they may have.  *See id*.  Nor do they allege the "clinical value of early detection" of NHL.  *See id.*  Instead, Plaintiffs merely assert that they seek medical monitoring to "prevent or mitigate the injury otherwise resulting from Roundup exposure." Compl. ¶ 216.  Such conclusory allegations fail to establish a "credible and substantial" risk of harm sufficient to establish standing.  *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1053, 1055-64 (N.D. Cal. 2015).

>  ***Equitable Relief.***  Plaintiffs do not allege any ongoing injury that would entitle them to any other type of equitable or injunctive relief.  To the contrary, they allege that, had they known the "truth" about Roundup® products, they "could have avoided the risk of developing injuries" and "could have obtained alternative herbicides."  Compl. ¶ 143.  But they claim to know this "truth" now, so they face no future risk of continuing to apply Roundup® products.  Thus, accepting Plaintiffs' allegations, they will never "again be wronged in a similar way." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  They thus lack standing to pursue injunctive relief.  *Matic v. U.S. Nutrition, Inc.*, 2019 WL 3084335, at *8 (C.D. Cal. Mar. 27, 2019).

## III.  PLAINTIFFS HAVE NOT ADEQUATELY PLEADED EQUITABLE TOLLING.

>  Without a basis to toll the statute of limitations, many of Plaintiffs' claims are time-barred. As one example, Plaintiffs' UCL claim could not survive to the extent it is based on purchases of Roundup® products more than four years before the complaint was filed.  *See* Cal. Bus. & Prof. Code § 17208.  Plaintiffs, who allege exposure going back more than a decade, try to avoid this issue with equitable tolling, and specifically via "the discovery rule and/or the doctrine of fraudulent concealment." Compl. ¶ 89.  They claim they were "unaware, and could not reasonably know or have learned through reasonable diligence" of the risks they allege.  Compl. ¶¶ 83-89. They are wrong.

>  Plaintiffs bear the burden of both "pleading and proving" fraudulent concealment.  *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015).  The doctrine applies only when, among other things, a plaintiff lacks knowledge or *constructive* knowledge of

the underlying facts. *Lynwood Invs. CY Ltd. v. Konovalov*, 2022 WL 3370795, at \*10 (N.D. Cal. Aug. 16, 2022) (collecting cases). The "knowledge" required (actual or constructive) is only knowledge of a "fact that should excite suspicion." *Id.* ("[A]ny fact that should excite [plaintiff's] suspicion is the same as actual knowledge of his entire claim.") (quoting *Conmar Corp. v. Mitsui & Co. (USA)*, 858 F.2d 499, 502 (9th Cir. 1988)). And a plaintiff must lack that knowledge despite acting "diligently in trying to uncover the facts giving rise to [their] claim." *Animation Workers*, 123 F. Supp. 3d at 1194 (collecting cases).

Likewise, under the discovery rule, the limitations period begins to run when the plaintiff "suspects or should suspect that her injury was caused by wrongdoing." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1147-49 (9th Cir. 2022). This requires only suspicion, *not* knowledge. *Id.* (citing *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110 (1988)). And again, this does not require *actual* suspicion, but rather that, "despite *diligent* investigation of the circumstances of the injury, [plaintiff] could not have reasonably discovered facts supporting the cause of action." *Dent v. Nat'l Football League*, 2021 WL 5987260, at \*4 (N.D. Cal. Dec. 17, 2021) (emphasis added).

Plaintiffs do not and cannot possibly meet these requirements. This Court has presided over thousands upon thousands of cases alleging the same theory of carcinogenicity since 2016— so the suggestion that Plaintiffs could not have even "suspected" a basis for a claim until a few months ago (even with "diligent investigation") is not just baseless, it is almost absurd. Again, the facts Plaintiffs rely on have been publicly available and highly publicized for years. The studies Plaintiffs cite, by their own admission, were printed in publicly available journals. Compl. ¶ 43. The IARC monograph was likewise publicly released and covered heavily by the nation's largest news sources. Wilkerson Decl. Exs. M-R. The emails Plaintiffs cite were publicly released in 2017, accompanied by nationwide press. *Id.* Exs. J-L, N. And their theory of carcinogenicity has been covered by major media for nearly a decade, widely advertised by plaintiffs' lawyers (including their own counsel), and previously asserted by thousands upon thousands of other plaintiffs. *Id.* Exs. X, Y.

## IV.    PLAINTIFFS' PURPORTED MEDICAL MONITORING CLAIM FAILS.

Count XI asserts a stand-alone cause of action for medical monitoring.  Compl. ¶ 216.  But California law does not recognize such a cause of action.  And Plaintiffs do not plead facts that would permit a medical-monitoring remedy in any event.  The Court should dismiss this claim.

### A.      California Does Not Recognize a Cause of Action for Medical Monitoring.

Plaintiffs plead a standalone claim for medical monitoring.  But while California law allows recovery of medical monitoring costs, upon a proper showing, as a *remedy*, medical monitoring is *not* a "new tort."  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 974 (1993); *see also Lockheed Martin Corp. v. Super. Court*, 29 Cal. 4th 1096, 1105 (2003) (same).  Instead, it is "simply a compensable item of damage when liability is established under traditional tort theories of recovery."  *Id.*  This Court has recognized as much in a similar case.  *Ramirez v. Monsanto Co.*, No. 3:16-02741, Dkt. No. 104 (N.D. Cal. Aug. 8, 2022) (Chhabria, J.) (dismissing medical-monitoring claim because "California law does not recognize a standalone claim for medical monitoring").  And this case is materially indistinguishable.  Plaintiffs' standalone medical-monitoring claim thus "must fall."  *San Diego Gas & Elec. Co. v. Super. Ct.*, 13 Cal. 4th 893, 914 n.18 (1996); *Xavier v. Philip Morris USA Inc.*, 2010 WL 3956860, at *3 (N.D. Cal. 2010).

### B.      Plaintiffs Fail fo Plead Facts that Would Permit a Medical Monitoring Remedy.

To be entitled to a medical-monitoring remedy, a California plaintiff must show "that the need for future monitoring is a reasonably certain consequence of the plaintiff's toxic exposure and that the recommended monitoring is reasonable."  *Potter*, 6 Cal. 4th at 974.  Five enumerated factors drive this determination: (1) the significance and extent of the plaintiff's exposure to chemicals; (2) the toxicity of the chemicals; (3) the relative increase in the chance of onset of disease in the exposed plaintiff as a result of the exposure, when compared to (a) the plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of the members of the public at large of developing the disease; (4) the seriousness of the disease for which the plaintiff is at risk; and (5) the clinical value of early detection and diagnosis.  *Id.* at 1009.  Although these are ultimately evidentiary burdens, Plaintiffs must plead *facts* that, if true, could

meet these burdens.  *See, e.g.*, *Riva*, 82 F. Supp. 3d 1045, 1056-62 (dismissing medical-monitoring claim where plaintiffs had not pleaded facts addressing the first through third factors); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Here, Plaintiffs do not plead facts that address the first, third, or fifth of the *Potter* factors. They allege nothing *at all* about the nature or extent of their exposure to Roundup® products other than that it occurred over several years in San Luis Obispo.  Compl. ¶¶ 14-18.  They thus have not explained how many times they were exposed, at what levels, or made any effort to tie their levels of exposure to the levels in the studies they cite (putting aside that those studies are themselves flawed).  In fact, they do not even allege the manner or levels of exposure in the studies they cite. *See* Compl. ¶¶ 39-45.  That alone requires dismissal.  *See Riva*, 82 F. Supp. 3d at 1057-58.

Plaintiffs also have not pleaded facts regarding their risk of developing NHL (or any other relevant disease) as compared to their "chances of developing the disease had [they] not been exposed," nor as compared to "members of the public at large."  *Potter*, 6 Cal. 4th at 1009.  As to their own background risk of developing NHL, for example, Plaintiffs do not allege whether they were exposed to *non-Roundup*® glyphosate-based products or, if so, whether or how they can show that their additional exposure to Roundup®-brand products increased any risk of developing NHL.  Nor do they allege whether they were exposed to other, non-glyphosate agricultural chemicals or pesticides and, if so, how their alleged exposure to Roundup® products increased their risk of developing NHL in light of these other exposures.  Nor do they allege any basis to conclude that their exposure to Roundup® products (whatever it was and in what manner) meaningfully increased their risk of NHL as compared to "members of the public at large."  To the contrary, they have alleged that "glyphosate [is] omnipresent in the United States" and that "80% of urine samples among U.S. children and adults contain glyphosate."  Compl. ¶¶ 81-82. But if that is true, they must show that their exposure has somehow increased their risk of NHL as compared to the general public, and again, they have not described their alleged exposure *at all*.

Finally, Plaintiffs have alleged nothing at all about the clinical value of early detection and diagnosis.  While they assert that they are seeking medical monitoring to "prevent or mitigate the injury otherwise resulting from Roundup exposure," Compl. ¶ 217, they do not allege any facts showing that such medical monitoring in fact could "prevent or mitigate" any such injury.

## V.   PLAINTIFFS HAVE NOT STATED AN EXPRESS-WARRANTY CLAIM.

Plaintiffs never identify the alleged "express warranties" on which they are suing—stating only that Defendants "made several express warranties."  *See* Compl. ¶¶ 155-63.  But California law requires plaintiffs to plead "the exact terms of the warranty."  *T&M Solar & Air Cond., Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015).  Plaintiffs therefore should have pleaded "'specifics' about what the warranty statement was, and how and when it was breached." *Id.*  Because Plaintiffs have made no such allegations, their express-warranty claim fails.

Plaintiffs also do not allege that they gave pre-suit notice to Defendants of the alleged breach of express warranties, requiring dismissal.  "To avoid dismissal of a breach of contract or breach of warranty claim in California, '[a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach.'"  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (quoting *Stearns v. Select Comfort Retail Corp.*, 763 F.Supp. 2d 1128, 1142 (N.D. Cal. 2010)).  Plaintiffs do not allege in even conclusory fashion that they gave this required notice.  Compl. ¶¶ 155-63.

## VI.   PLAINTIFFS HAVE NOT STATED AN IMPLIED-WARRANTY CLAIM.

Although Plaintiffs assert that they can bring a claim for "non-privity" breach of implied warranties (Compl. ¶¶ 164-73), a California plaintiff asserting breach of implied warranty "must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2018); *Moncada v. Allstate Ins.*, 471 F. Supp. 2d 987, 998 (N.D. Cal. 2006).  A buyer and seller stand in privity if they are in adjoining links of the distribution chain. *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n. 6 (1988).  But Plaintiffs do not allege that they bought Roundup® products at all, much less that they bought them directly from Monsanto or Bayer Corp.  And "an end consumer … who buys from a retailer … is not in privity

with a manufacturer." *Osborne*, 198 Cal. App. 3d at 656 n.6; *accord Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 695 (1954).  Plaintiffs' implied warranty claim should be dismissed.

In Count VI, for "privity" breach of implied warranty, Plaintiffs appeal to an exception for "third-party beneficiaries."  Compl. ¶ 179.  But Count VI is not brought under California law and, even if it were, the third party beneficiary exception does not apply "in the context of a consumer claim against a product manufacturer."  *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1010 (S.D. Cal. 2021) (citations omitted).

In any event, Monsanto did not breach any implied warranties.  The implied warranty of merchantability does not "impose a general requirement that goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of quality" and that the products "[a]re fit for the ordinary purposes for which such goods are used."  *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1295-96 (1995).  Plaintiffs do not and cannot contest that Roundup® products are effective herbicides, which is their precise ordinary use.  Nor do or can Plaintiffs contest that Roundup® products are approved for sale and use as pesticides by both EPA and California regulators.  The products are merchantable, and Plaintiffs' implied-warranty claims must fail.

## VII.  PLAINTIFFS DID NOT PLEAD THEIR FRAUD-BASED CLAIMS WITH PARTICULARITY.

Counts VII, VIII, and IX assert claims for violating consumer protection laws, false advertising, and fraudulent concealment.  Compl. ¶¶ 184-210.  But Plaintiffs fail to "state with particularity the circumstances constituting" the alleged violations and alleged fraud.  *See* Fed. R. Civ. P. 9(b).

Rule 9(b)'s heightened pleading standard for allegations of fraud extends to consumer-protection and false-advertising claims "grounded in fraud."  *Davidson*, 889 F.3d at 964; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Plaintiffs thus had to "state with particularity" the factual bases for Counts VII, VIII, and IX.  *Compare Davidson*, 889 F.3d at 964, *with* Compl. ¶¶ 184-210.  Plaintiffs had to "'identify the who, what, when, where, and how of the

misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quoting *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)).  Plaintiffs instead make only generic allegations about unspecified "misleading," "deceptive," or "false" statements or "material" omissions.  Compl. ¶¶ 187-88, 196-97, 204.

Here, as in *Depot, Inc.*, Plaintiffs only "vaguely allege that defendants made [] misrepresentations 'in the course of marketing' [] to plaintiffs over a period a years." *Depot, Inc.*, 915 F.3d at 668; Compl. ¶¶ 77, 196 (alleging that "[f]or years," Defendants "advertis[ed] and represent[ed]—on product labels, advertisements, and warranties—that Roundup® was safe.").  But while they allege supposed "unethical practices," the content of internal emails, lobbying efforts, and participation in scientific debate, they do not specifically allege any purported false advertisement or public statement save one—that glyphosate "targets an enzyme found in plants, but not in people or pets." *Id.* ¶ 71.  And they do not allege that they even saw, much less relied on, that statement, just as they do not allege reliance on any of the unspecified statements.  *See id.* ¶¶ 71, 200, 207; *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014) (holding that the plaintiff failed to plead reliance with the requisite specificity); *Kearns*, 567 F.3d at 1126 ("Kearns also failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle.").  Indeed, Plaintiffs do not even specify which Roundup® products they used—or for what purpose—and so there is no way to even guess how they might have relied on the alleged statements.  *See* Compl. ¶¶ 14-18, 22.  Plaintiffs' Complaint lacks anything close to the "who, what, when, where, and how" required by Rule 9(b).  *Depot, Inc.*, 915 F.3d at 668.

## VIII. PLAINTIFFS' DECLARATORY RELIEF CLAIM IS DUPLICATIVE OF THEIR OTHER CLAIMS.

Declaratory relief is intended to resolve uncertainties or disputes that may result in future litigation, not to redress past wrongs.  *See United States v. Washington*, 759 F.2d 1353, 1356-57 (9th Cir.) (en banc) ("Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and

14

afford relief from the uncertainty and controversy faced by the parties.")  Declaratory relief is thus "unnecessary where an adequate remedy exists under some other cause of action." *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009); *see also Top Agent Network, Inc. v. Zillow, Inc.*, 2015 WL 7709655, at *9 (N.D. Cal. Apr. 13, 2015) (dismissing declaratory relief claim because it was "purely duplicative" of other claims).  Plaintiffs' declaratory relief cause of action should be dismissed because it is duplicative of their other causes of action.

Count X seeks declaratory relief in the form of a declaration regarding "answers to the common questions [allegedly] at the heart of this litigation."  Compl. ¶ 214.  According to Plaintiffs, these "common questions" include, for example, whether Roundup® products are unfit for their ordinary purposes, whether marketing was misleading, and whether Roundup® products are carcinogenic. *Id.* ¶ 213.  But these questions are entirely duplicative of Plaintiffs' other causes of action.  For example, Plaintiffs' implied-warranty claim would necessarily implicate whether Roundup® products are unfit for their ordinary purposes.  Likewise, all Plaintiffs' causes of action would necessarily require a determination of whether the products are carcinogenic.  In short, a determination of Plaintiffs' other causes of action would necessarily determine their rights and afford full relief (if any relief were justified).

Courts determining whether to entertain claims for declaratory relief must consider, among other factors, whether the claim will settle all aspects of the controversy or serve some other useful purpose. *Top Agent Network, Inc. v. Zillow, Inc.*, 2015 WL 7709655, at *9 (N.D. Cal. 2015); *see Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).  Here, neither is true.  The declaration Plaintiffs seek will not resolve their other claims, but resolving those claims will encompass those questions.  Plaintiffs' requested declaration would thus be both useless and duplicative, and their claim for declaratory relief should be dismissed.

## CONCLUSION

For all the above reasons, the Court should grant this motion and dismiss Plaintiffs' complaint.

Dated: December 1, 2023

By:    */s/ John J. Rosenthal*

JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202

*Counsel for Defendant*