JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202
Tel: (704) 350-7714
Fax: (704) 350-7800

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | **MONSANTO COMPANY AND BAYER CORPORATION'S MOTION TO STRIKE CLASS ALLEGATIONS** |
| *Jonas Perez-Hernandez v. Monsanto Co.,* Case No. 3:23-cv-04946-VC | Date:     Feb. 15, 2024<br>Time:     10:00 a.m.<br>Place:    San Francisco, Courtroom 4, 17th Floor<br>Judge:   Hon. Vince G. Chhabria |

PLEASE TAKE NOTICE THAT on February 15, 2024, at 10:00 a.m., or at such other time as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, at the San Francisco Courthouse, Courtroom 4 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Monsanto Company and Bayer Corporation will, and hereby do, move to strike the class allegations from Plaintiffs' Complaint.

Monsanto Company and Bayer Corporation seek an order striking the class allegations from Plaintiffs' Complaint under Federal Rule of Civil Procedure 123(d)(1)(D). This motion is based on the accompanying memorandum of points and authorities, Monsanto Company's forthcoming reply brief, arguments of counsel, and such other matters as may be considered.

## TABLE OF CONTENTS

Table of Contents ........................................................................................................................... i

Table of Authorities ..................................................................................................................... ii

Introduction ................................................................................................................................. 1

Factual Background ...................................................................................................................... 2

Legal Standards ............................................................................................................................ 4

Argument ...................................................................................................................................... 5

    I.     PLAINTIFFS' NATIONWIDE CLASS WOULD REQUIRE APPLYING THE LAW OF EVERY STATE IN THE COUNTRY. ......................................... 5

    II.    THE LAWS OF THE VARIOUS STATES MATERIALLY DIFFER. ................ 7

    III.   PLAINTIFFS COULD NEVER ESTABLISH PERSONAL JURISDICTION FOR CLAIMS UNDER OTHER STATES' LAWS. ................ 9

    IV.   PLAINTIFFS CAN NEVER MEET RULE 23(A)'S REQUIREMENTS. .......... 10

    V.    PLAINTIFFS' PROPOSED CLASS FACES INSUPERABLE ISSUES OF PREDOMINANCE AND MANAGEABILITY. ........................................... 12

    VI.   PLAINTIFFS' PROPOSED CLASS IS FATALLY OVERBROAD. ................. 15

Conclusion .................................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Almond v. Janseen Pharms., Inc.*,
  337 F.R.D. 90 (E.D. Pa. Nov. 6, 2020) ......................................................................... 9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .......................................................................... 1, 10, 11, 12

*Barnes v. Am. Tobacco Co.*,
  161 F.3d 127 (3d Cir. 1998) ..................................................................... 13

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002 ......................................................................... 1, 11

*Bristol-Myers Squibb Co. v. Super. Ct.*,
  582 U.S. 255 (2017) ..................................................................................... 9, 10

*Circle Click Media LLC v. Regus Mgmt. Grp.*,
  2015 WL 6638929 (N.D. Cal. Oct. 30, 2015) ................................................. 15

*In re Clorox Consumer Litig.*,
  301 F.R.D. 436 (N.D. Cal. 2014) ............................................................... 14

*Colman v. Theranos, Inc.*,
  325 F.R.D. 629 (N.D. Cal. 2018) ............................................................... 14

*Compaq Computer Corp. v. Lapray*,
  135 S.W.3d 657 (Tex. 2004) ..................................................................... 8

*Corcoran v. CVS Health Corp.*,
  2016 WL 4080124 (N.D. Cal. July 29, 2016) .............................................. 10

*In re Dalkon Shield IUD Prod. Liab. Litig.*,
  693 F.2d 847 (9th Cir. 1982) ..................................................................... 13

*Davencourt Homeowners Ass'n v. Davencourt*,
  221 P.3d 234 (UT 2009) ............................................................................ 8

*Effinger v. Ancient Organics LLC*,
  2023 WL 2214168 (N.D. Cal. Feb. 24, 2023) .............................................. 5

*In re Fosamax Products Liability Litigation*,
  248 F.R.D. 389 (S.D.N.Y. 2008) ............................................................... 13

*Gilmore v. Monsanto Co.*,
    2023 WL 2723334 (N.D. Cal. Mar. 31, 2023)...........................................................2, 3, 4, 15

*Gross v. Vilore Foods Co.*,
    2022 WL 1063085 (S.D. Cal. Apr. 8, 2022)...........................................................11

*Hamm v. Mercedes-Benz USA, LLC*,
    2021 WL 1238304 (N.D. Cal. Apr. 2, 2021) ...........................................................14

*Jolly v. Eli Lilly & Co.*,
    44 Cal.3d 1102 (1988) ...........................................................13

*Jones v. Micron Tech. Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ...........................................................10

*Jones v. Monsanto Co.*,
    2021 WL 2426126 (W.D. Mo. May 13, 2021), *aff'd*, 38 F.4th 693 (8th Cir.
    2022) ...........................................................2, 4, 15

*Kamm v. California City Dev. Co.*,
    509 F.2d 205 (9th Cir. 1975) ...........................................................4

*Lucas v. Breg, Inc.*,
    212 F. Supp. 3d 950 (S.D. Cal. 2016) ...........................................................14

*Marsh v. First Bank of Del.*,
    2014 WL 554553 (N.D. Cal. Feb. 7, 2014) ...........................................................1, 10, 12

*Mazur v. eBay Inc.*,
    257 F.R.D. 563 (N.D. Cal. 2009) ...........................................................15

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ...........................................................5, 6

*McKinney v. Corsair Gaming, Inc.*,
    646 F. Supp. 3d 1133 (N.D. Cal. 2022) ...........................................................4, 6, 7, 8

*Moser v. Benefytt, Inc.*,
    8 F.4th 872 (9th Cir. 2021) ...........................................................9, 10

*Osborne v. Subaru of Am., Inc.*,
    198 Cal. App. 3d 646 (1988) ...........................................................8

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ...........................................................11

*Patterson v. RW Direct, Inc.*,
    2018 WL 6106379 (N.D. Cal. Nov. 21, 2018) ...........................................................11

*Payton v. Abbott Lab'ys*,
    83 F.R.D. 382 (D. Mass. 1979)....................................................................................13

*Penikila v. Sergeant's Pet Care Prod., LLC*,
    442 F. Supp. 3d 1212 (N.D. Cal. 2020) ....................................................................4, 9

*Perez v. Metabolife Int'l, Inc.*,
    218 F.R.D. 262 (S.D. Fla. 2003)................................................................................13

*Phan v. Sargento Foods, Inc.*,
    2021 WL 2224260 (N.D. Cal. June 2, 2021)...................................................4, 6, 7

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ...............................................4, 5, 7, 14

*Sandoval v. Ali*,
    34 F. Supp. 3d 1031 (N.D. Cal. 2014) ...........................................................4

*In re SFPP Right-of-Way Claims*,
    2017 WL 2378363 (C.D. Cal. May 23, 2017) ...................................................9, 15

*Singh v. Google LLC*,
    No. 16-03734, 2022 WL 94985 (N.D. Cal. Jan. 10, 2022)....................................12

*Stromberg v. Qualcomm Inc.*,
    14 F.4th 1059 (9th Cir. 2021) ..................................................................2, 5, 6

*Sultanis v. Champion Petfoods USA Inc.*,
    2021 WL 3373934 (N.D. Cal. Aug. 3, 2021) ....................................................1

*Wallenstein v. Mondelez Int'l, Inc.*,
    2023 WL 3102555 (N.D. Cal. Apr. 25, 2023) ..........................................9, 10, 11

*Walsh v. Ford Motor Co.*,
    807 F.2d 1000 (D.C. Cir. 1986) ...................................................................8

*Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011)..................................................................15

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180, *amended* 273 F.3d 1266 (9th Cir. 2001).................................12, 13

**Statutes**

Cal. Bus. & Prof. Code § 17200 ....................................................................8

Cal. Bus. & Prof. Code § 17500 ....................................................................8

**Other Authorities**

Fed. R. Civ. P. 23(a)(2)-(4)..................................................................................1, 10

Fed. R. Civ. P. 23(b)(3)....................................................................................2, 6, 12

Fed. R. Civ. P. 23(d)(1)(D)................................................................................1, 4

## **INTRODUCTION**

Five California Plaintiffs assert eleven different causes of action on behalf of a putative, massive nationwide class of all those who have ever been exposed to Roundup® products more than twice in one year.  Plaintiffs assert claims under the laws of every state, for all varieties of Roundup® products—including consumer, professional, and agricultural products—and assert economic losses, costs for medical monitoring, and personal injury.  But these five California Plaintiffs allege no basis for concluding that they are appropriate, typical, or adequate representatives to assert claims under the laws of states to which they have no connection, for products they did not purchase, and for injuries they did not suffer.  And the legal rules governing these different states' claims materially vary, making class treatment unfeasible.  *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) (Easterbrook, J.) ("No class action is proper unless all litigants are governed by the same legal rules.")  For that reason and all those below, and under Rule 23(d)(1)(D), the Court should strike Plaintiffs' allegations about the representation of their putative class.

*First*, personal jurisdiction should be required before this case could be certified and move toward trial.  But Plaintiffs could *never* establish that this Court has personal jurisdiction over claims under other states' laws for purchases and uses of Roundup® products that occurred in other states.

*Second*, Plaintiffs could never establish—as they must under Rule 23(a)(2)-(4)— commonality or that they are adequate or typical representatives for claims under other states' laws.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997) (adequate representatives "must be part of the class").  Plaintiffs could never make this showing because:

- The law governing out-of-state claims materially differs from California law.  *See Sultanis v. Champion Petfoods USA Inc.*, 2021 WL 3373934, at *7 (N.D. Cal. Aug. 3, 2021) (dismissing class claims because there were "substantial variations" between named plaintiff's claims and "claims on behalf of unnamed plaintiffs in multiple other states where she does not reside or where she did not purchase the Products").

- Plaintiffs plead no facts suggesting that they have suffered many of the injuries they

allege.  *See, e.g.*, *Amchem*, 521 U.S. at 626 (interests of putative class members who are presently injured and those who allege "exposure-only" are "not aligned").

- Plaintiffs seek to represent a class of users of all different types of Roundup® products, which include consumer, professional, and agricultural products.  But Plaintiffs plead no facts suggesting that they are typical of all these types of users.

*Third*, Plaintiffs cannot establish predominance or manageability.  The need to apply the laws of fifty different states to ten causes of action is enough alone to reach this conclusion.  *See Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1067-68 (9th Cir. 2021) ("[T]he Rule 23(b)(3) class was erroneously certified under a faulty choice of law analysis because differences in relevant state laws swamp predominance.").    Moreover, Plaintiffs' causes of action raise numerous individualized issues, which they will never be able to prove with classwide evidence.

*Finally*, Plaintiffs' proposed class is hopelessly overbroad because it includes many individuals that are members of settlement classes that have released some of the claims Plaintiffs pursue.  *See Gilmore v. Monsanto Co.*, 2023 WL 2723334, at *5 (N.D. Cal. Mar. 31, 2023); *Jones v. Monsanto Co.*, 2021 WL 2426126, at *12 (W.D. Mo. May 13, 2021), *aff'd*, 38 F.4th 693 (8th Cir. 2022).  Plaintiffs cannot pursue economic losses on behalf of such individuals.

The Court should strike Plaintiffs' class allegations.

## FACTUAL BACKGROUND

The Complaint provides little information about Plaintiffs.  The *only* non-conclusory factual allegations are that each is a California resident and was "exposed to Roundup® products over a period [of years ranging from 9 to 19 years depending on the Plaintiff] in San Luis Obispo, California."  Compl. ¶¶ 14-18.  Plaintiffs do *not* allege:

- any connection to the other states for which they seek to be named Plaintiffs, nor that the laws of those states are materially similar to California's law;

- which of the dozens of Roundup® brand products listed in the Complaint (*see id*. ¶ 22) they were allegedly exposed to;

- they have been diagnosed with NHL, any other form of cancer, or any other disease or condition allegedly caused by Roundup® products; or

- any of them have ever incurred any economic loss of any kind resulting from exposure to Roundup® products.

Nonetheless, Plaintiffs seek to represent a nationwide class of individuals allegedly exposed to any of dozens of different Roundup® products.  *Id.* ¶¶ 90-100.  They do not limit this class to any specified time period, alleging that the statute of limitations "has been tolled" under the doctrine of fraudulent concealment.  *Id.* ¶¶ 83-89.

On behalf of this sweeping putative nationwide class, Plaintiffs allege four kinds of injury: (1) personal injury from NHL (*e.g.*, *id.* ¶¶ 9, 92, 121-22, 142-44, 152-53, 190, 192, 201, Prayer ¶¶ 2-3); (2) unspecified economic losses (*e.g.*, *id.* ¶¶ 122, 144, 162, 172, 182, 192, 201, 207, 209, Prayer ¶¶ 2-3); (3) future medical monitoring costs (*e.g.*, *id.* ¶¶ 122, 144, 214, Prayer ¶¶ 4); and (4) other prospective injuries to be addressed with injunctive relief (*e.g.*, *id.* ¶¶ 122, 144, 214, Prayer ¶¶ 4).  Plaintiffs allege no facts showing that they have *themselves* suffered such injuries.

The Roundup® products Plaintiffs seek to include within their proposed class include all glyphosate-based Roundup® formulations.  *Id.* ¶ 22.  These include consumer products marketed for home use and sold at consumer retailers ("Lawn & Garden" products); products marketed for professional use by landscapers, utility workers, golf courses, parks, and other professionals and sold by commercial distributors and specialty retail outlets ("Industrial Turf & Ornamental" or "IT&O" products); and agricultural products marketed for use by farmers and certified applicators—often in tank mixes with other herbicides or agricultural chemicals—and sold by agricultural distributors and retailers ("Agricultural" products).  *Id.*; Declaration of James Guard ("Guard Decl.") ¶¶ 6-16.  These products differ significantly in formulations, intended uses, sophistication of typical users vis-a-vis herbicide use, and likely levels and frequency of use.  *See id.*

Many members of the proposed class are members of previous settlement classes that have released many of the claims at issue.  Most recently, this Court approved a nationwide class settlement in *Gilmore*, which pursued economic losses based on a claim that Monsanto failed to warn of the alleged carcinogenic risk of Roundup® products.  2023 WL 2723334, at *5.  Under that settlement, class members—which include any purchaser during specified time periods of specified Roundup® products (including all Lawn & Garden products)—release all claims for

economic losses (as opposed to personal injuries) based on a failure to warn or otherwise "related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate . . . ."  *Gilmore*, 3:21-cv-08159-VC, Dkt. No. 94-1 Ex. 1 ¶¶ A.15, A.49, A.52, L.1.  Similarly, in 2021, a nationwide settlement was approved in *Jones* with a settlement class of all persons who, during specified time periods, purchased Roundup® products in packaging containing the statement "targets an enzyme found in plants but not in people or pets" (the "Enzyme Statement") releasing all claims "of every nature and description whatsoever (with the exception of personal injury claims)" related to the Enzyme Statement.  2021 WL 2426126, at *12; *see also Jones*, No. 4:19-cv-00102-BP, Dkt. No. 65-1, Ex. 1 ¶¶ A.11, N; Compl. ¶ 71 (listing the Enzyme Statement as a basis for Plaintiffs' claims).

## LEGAL STANDARDS

Rule 23(d)(1)(D) permits a court to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1043 (N.D. Cal. 2014) ("Class allegations can be stricken at the pleading stage.").  A motion to strike is the "proper procedural move" to ask the Court to remove class allegations doomed to fail based on the face of the complaint and the affidavits before the court.  *Penikila v. Sergeant's Pet Care Prod., LLC*, 442 F. Supp. 3d 1212, 1214 (N.D. Cal. 2020) (Chhabria, J.); *see also Kamm v. California City Dev. Co.*, 509 F.2d 205, 206 (9th Cir. 1975) (affirming order striking class allegations and dismissing class complaint because the affidavits before the district court showed that a class action would not be "superior"); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking class allegations because individualized issues of reliance precluded certification); *McKinney v. Corsair Gaming, Inc.*, 646 F. Supp. 3d 1133, 1145 (N.D. Cal. 2022) (striking class allegations because of differences in state laws).

A court should require plaintiffs to amend the pleadings to eliminate the class allegations when the allegations "are governed by different States' laws, a legal determination, and no proffered or potential factual development offers any hope of altering that conclusion."  *Phan v.*

*Sargento Foods, Inc.*, 2021 WL 2224260, at *7 (N.D. Cal. June 2, 2021).  The court should also strike class allegations encompassing members without standing.  *See Sanders*, 672 F. Supp. 2d at 991; *Effinger v. Ancient Organics LLC*, 2023 WL 2214168, at *6 (N.D. Cal. Feb. 24, 2023).

## **ARGUMENT**

### I.    **PLAINTIFFS' NATIONWIDE CLASS WOULD REQUIRE APPLYING THE LAW OF EVERY STATE IN THE COUNTRY.**

California's choice-of-law rules apply to this case.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law.").  Under those choice-of-law rules, Plaintiffs "bear[] the initial burden to show that application of California law is constitutional on the basis that California has 'significant contact or significant aggregation of contacts' to the claims of each class member.'"  *Stromberg*, 14 F.4th at 1067-68 (quoting *Mazza*, 666 F.3d at 589-90).  If Plaintiffs made that showing, Defendants would have to "demonstrate 'that foreign law, rather than California law, should apply to class claims.'"  *Id.* at 1068 (quoting *Mazza*, 666 F.3d at 590).

Plaintiffs concede that out-of-state law applies to Counts IV, V, VI, VII, and VIII.  Compl. ¶¶ 160, 170, 180, 189, 194 (preceding subtitle).  And the same is true for the remaining counts—all are based on the alleged purchase or use of Roundup® products.  Plaintiffs cannot meet their initial burden to show that applying California law nationwide is constitutional because California lacks significant contacts to the purchase and use of Roundup® products in other states.  *Mazza*, 666 F.3d 581, 589-90.  And Plaintiffs do not allege that any Defendant is a California entity or has significant operations here.  They allege only that "Defendants derive substantial revenue from goods and products used in California *and nationwide*."  Compl. ¶ 23 (emphasis added).  Nor do Plaintiffs allege that out-of-state-class users uniformly, or even typically, bought or applied Roundup® products in California.  Out-of-state claims thus do not typically involve contacts with California.

Even if Plaintiffs could establish sufficient California contacts to pass constitutional

muster, the interests of foreign states require application of their law. California law can be applied classwide only "if 'the interests of other states are not found to outweigh California's interest in having its law applied.'" *Mazza*, 666 F.3d at 590 (quoting *Wash. Mut. Bank v. Super. Ct.*, 24 Cal.4th 906, 921 (Cal. 2001)). The "three-step government interest-test" directs this inquiry. *Id.*

First, the court determines if the law of other states "is the same or different." *Id.* (quoting *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 81. (Cal. 2010)). As explained below, actual conflicts exist in the state laws applicable to Plaintiffs' claims. *See infra* Part II; *cf. Stromberg*, 14 F.4th at 1067 ("[T]he Rule 23(b)(3) class was erroneously certified under a faulty choice of law analysis because differences in relevant state laws swamp predominance.").

"Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law . . . to determine whether a true conflict exists." *Mazza*, 666 F.3d at 590 (quoting *McCann*, 48 Cal.4th at 81-82). Each of Plaintiffs' claims implicates the interests of the various states to "regulate commerce" within their borders. *See Stromberg*, 14 F.4th at 1069. The various states weigh differently how best to "[m]aximiz[e] consumer and business welfare, and acheiv[e] the correct balance for society." *Mazza*, 666 F.3d at 591-92. And "[e]very state has an interest in having its law applied to its resident claimants." *Id.* (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187, *amended* 273 F.3d 1266 (9th Cir. 2001)). Thus, every state has a paramount interest in its law applying to Plaintiffs' claims.

Third, if there is a conflict, the court determines "which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *Mazza*, 666 F.3d at 590 (quoting *McCann*, 48 Cal.4th at 82). Here, even California itself "recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.'" *Id.* at 593 (quoting *Hernandez v. Burger*, 102 Cal. App. 3d 795 (1980)). And the "place of the wrong" for Plaintiffs' claims is where each class member purchased or used the products. The predominant interest thus lies with each of the states, not California. *See id.* California's choice-of-law rules thus require the Court to apply the laws of the 50 states and the District of Columbia to Plaintiffs' claims. *See, e.g.*, *McKinney v. Corsair Gaming, Inc.*, 646 F. Supp. 3d

1133, 1145 (N.D. Cal. 2022); *Phan v. Sargento Foods, Inc.*, 2021 WL 2224260, at *9 (N.D. Cal. June 2, 2021).  As discussed below, this undermines the viability of Plaintiffs' class allegations. *See id.* *9-*10.

## II.      THE LAWS OF THE VARIOUS STATES MATERIALLY DIFFER.

There are material differences between California law and other states' laws.  Those differences are relevant to several of Defendants' arguments are addressed separately here.

***Strict Liability – Design Defect and Failure to Warn.***  There are material differences in states' laws regarding strict-liability claims.  Legal standards for identifying a defect vary widely—some states apply a risk-utility test, others a consumer expectations test, and Connecticut uses a hybrid approach.  App'x 1.[1]  Some states (*e.g.*, Delaware) do not have strict liability for products-liability actions at all.  *Id*.  Even states with otherwise similar standards differ as to whether proof of alternative design is required and how such evidence is weighed.  *See id*.  Likewise, states' failure-to-warn laws differ as to causation and the heeding presumption.  *See* App'x 2.

***Negligence/Negligent Misrepresentation.***  States' laws also vary significantly as to negligence.  Particularly relevant here, given that Plaintiffs seek economic losses, some states reject a strict application of the economic-loss doctrine, other sharply limit recovery of economic losses, and still others bar economic damages altogether.  App'x 3.  States also differ on foreseeability, with some states treating it as a key factor, some states treating it as a threshold inquiry, and some states treating it as a non-issue in the duty analysis.  *Id*.  And states differ significantly as to the application of comparative-fault or contributory-negligence principles.  *Id*. Finally, statutes of limitations—case-dispositive for many claims—widely vary.  *Id*.

***Breach of Express Warranty.***  Courts have noted material variation among states' breach-of-express-warranty laws.  *See, e.g.*, *Sanders*, 672 F. Supp. 2d at 991.  Appendix 4 demonstrates three such variations.  First, limitations periods differ by state.  App'x 4; *see also McKinney*, 646 F.Supp.3d at 1143 (noting differing statutes of limitations and striking class allegations).  Second,

---

[1] The appendices are not intended to set forth every material difference in state law.  Rather, they only illustrate certain important differences.

some states require the plaintiff to show reliance on the express warranty.  App'x 4; *see also Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 676 (Tex. 2004) (discussing differences in states' laws).  And among the states that require reliance, the circumstances of the required reliance vary.  App'x 4.  Third, pre-suit notice requirements vary by state—some states require pre-suit notice, others do not, and still others require it with certain exceptions or limitations.  *Id.*

**Breach of Implied Warranty.**  State laws regarding implied-warranty claims also materially vary.  *See, e.g.*, App'x 5; *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986) (noting variation in state implied warranty laws); *Osborne v. Subaru of Am., Inc.*, 198 Cal. App. 3d 646, 656 (1988) (same).  Privity of contract may or may not be required.  App'x 5.  Also, only in certain states do certain privity exceptions apply.  *See, e.g.*, *Davencourt Homeowners Ass'n v. Davencourt*, 221 P.3d 234, 245 (UT 2009) (stating direct relationship exception).

**Consumer Protection and False Advertising Laws.**  In most states, Plaintiffs' separate claims for consumer protection and false advertising are both governed by a single consumer-protection statute.  *But see* Cal. Bus. & Prof. Code § 17200 (consumer protection); *id.* § 17500 (false advertising).  States' requirements under those statutes vary greatly.  *McKinney*, 646 F.Supp.3d at 1143.  Four areas of divergence are notable.  First, statutes of limitations vary significantly by state.  App'x 6.  Second, some states require reliance, others do not, and still others couch reliance within causation, or require causation only for claims sounding in fraud.  *Id.* Third—and relevant here given the differing products at issue—some states limit their statutes to products or purchases for "personal, family, or household" use; other states do not; and still others require a "consumer-oriented act."  *Id.*  Fourth, California has no scienter requirement, but many other states' consumer protection statutes do require scienter.  *Id.*

**Fraudulent Concealment.**  State laws governing Plaintiffs' fraudulent concealment claim vary on at least four fronts.  First, the limitations periods vary by state.  App'x 7. Second, some states impose liability for fraudulent concealment only when there is an established duty to disclose.  *Id.*  And among those states, the circumstances under which a duty to disclose may arise vary.  *Id.* Third, some states require that the plaintiff relied on the omission, while others do not.

8

*Id.*  Fourth, the standards of proof for fraud materially vary by state.  *Id.*

**Medical Monitoring.**  State laws also differ materially as to medical monitoring.  Most notably, most states do not permit claims for medical monitoring at all absent present physical injury.  App'x 8; *Almond v. Janseen Pharms., Inc.*, 337 F.R.D. 90, 99-100 (E.D. Pa. Nov. 6, 2020) ("variation in state law alone" is sufficient to grant motion to strike nationwide medical-monitoring class that "includes class members from states that expressly prohibit no-injury medical monitoring claims").  Even states that allow "no-injury" medical monitoring differ significantly on causation requirements and have myriad other varying requirements.  *See* App'x 8.

## III.   PLAINTIFFS COULD NEVER ESTABLISH PERSONAL JURISDICTION FOR CLAIMS UNDER OTHER STATES' LAWS.

Monsanto does not contest personal jurisdiction as to Plaintiffs' *own* claims.[2]  Plaintiffs, however, seek to represent a nationwide class, primarily comprised of out-of-state individuals asserting claims under other states' laws.  Compl. ¶ 91.  And while personal jurisdiction over class members is not an available defense at the pleading stage (*Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021)),[3] striking the class allegations now is appropriate because Plaintiffs will *never* be able to establish personal jurisdiction as to out-of-state class members.  *See Penikala v. Sergeant's Pet Care Prods., LLC*, 442 F. Supp. 3d 1212, 1214 (N.D. Cal. 2020) (Chhabria, J.) (inviting motion to strike nationwide class allegations as "obviously uncertifiable").

Defendants acknowledge this Court's decision in *Wallenstein v. Mondelez Int'l, Inc.*, 2023 WL 3102555, at *1 (N.D. Cal. Apr. 25, 2023), which could be read to hold that courts need not *ever* have personal jurisdiction of out-of-state class members, even for certification.  It is not clear

---

[2] Bayer Corporation does contest personal jurisdiction, as explained in its motion to dismiss.

[3] Defendants disagree with *Moser*'s holding, which is based on an erroneous presumption that the non-party status of absent class members means that out-of-state *claims* are not before the Court. *Cf. Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 263 (2017) ("*BMS*") (personal jurisdiction is a consequence of the territorial limitations of the States' power, and a concern with "submitting to the coercive power of a State that may have little legitimate interest in the *claims* in question") (emphasis added).  But Defendants acknowledge that this Court has no power to overrule the Ninth Circuit and note their disagreement only to preserve the argument.

that is what this Court held—it said that if the case were ultimately certified for trial, "the defendant arguably has the right to see such claims adjudicated in a court where it is subject to personal jurisdiction." *Id.* And it also suggested that personal jurisdiction may be required over class members' claims when the named plaintiffs' claims are "materially distinguishable" from out-of-state class members' claims. *Id.* at 2. As discussed above, that is the case here.

But if *Wallenstein* is meant to hold categorically that Plaintiffs can obtain class certification without establishing personal jurisdiction over non-California claims, Defendants respectfully ask the Court to reconsider. Upon certification, the claims of class members are in every relevant sense before the Court for adjudication. *See Moser*, 8 F.4th at 878 ("[C]lass certification [] brings unnamed class members into the action and triggers due process limitations on a court's exercise of personal jurisdiction over their claims."). The due-process concerns identified by *BMS* would then be equally present. And Plaintiffs have not alleged any facts, and cannot, that would create the required "affiliation between the forum and the underlying controversy" for such claims. *See BMS*, 582 U.S. at 264 (reciting the "settled principles regarding specific jurisdiction").

## IV.   PLAINTIFFS CAN NEVER MEET RULE 23(A)'S REQUIREMENTS.

Certification requires findings that "questions of law or fact are common to the class," that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and that the named plaintiffs would "fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(2)-(4). A class representative thus "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Prod.*, 521 U.S. at 625-26 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Plaintiffs here will never be able to meet these requirements.

***First***, Plaintiffs cannot be typical or adequate representatives for claims under other states' laws because they lack standing for such claims. *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908-09 (N.D. Cal. 2019). Those claims "invoke different legally protected interests" than Plaintiffs' claims, and Plaintiffs could not be injured by any alleged invasion of those interests. *Id.*; *see also Corcoran v. CVS Health Corp.*, 2016 WL 4080124, at *2 (N.D. Cal. July 29,

2016) ("[N]amed plaintiffs lack standing to assert claims based on those [other] states' laws.").

*Second*, even if standing is required solely for Plaintiffs' individual claims,[4] Plaintiffs still could not establish commonality, typicality, or adequacy because other states' laws materially differ from California law.  *See, e.g.*, *Wallenstein*, 2023 WL 3102555, at *2 (named plaintiffs cannot "represent class members from other states" without a showing that "the law in those other states is materially similar"); *Gross v. Vilore Foods Co.*, 2022 WL 1063085, at *10 (S.D. Cal. Apr. 8, 2022) (named plaintiffs' California consumer protection claims could not be "typical" of claims under other states' laws that materially differed) (citing *Young v. Neurobrands, LLC*, 2020 WL 11762212, at *9 (N.D. Cal. Oct. 15, 2020)); *Bridgestone*, 288 F.3d at 1015 (no commonality "unless all litigants are governed by the same legal rules").  As explained above, there are many material differences between the states' laws for each of Plaintiffs' causes of action.  *See also* App'xs 1-8.  Plaintiffs thus will never be able to meet the typicality or commonality requirements.

*Third*, Plaintiffs are not typical or adequate because they do not allege that they suffered the same injuries as class members.  *See Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) (named plaintiffs must have the "same or similar injury" as class members, and their claims must be "reasonably coextensive").  As explained in Monsanto's concurrent motion to dismiss, for example, Plaintiffs seek damages for personal injuries, but they do not allege they have been diagnosed with NHL or otherwise suffered personal injury of any kind.  *See Amchem*, 521 U.S. at 626 (interests of putative class members who are presently injured and those who allege "exposure-only" are "not aligned").  Likewise, they seek to recover allege economic losses, but they do not allege any facts suggesting they have suffered such injuries.  And they seek medical monitoring, but they do not allege any facts showing that they are entitled to such recovery under California law (much less that they would be entitled to such recovery under the laws of all the states).

*Finally*, Plaintiffs will never be able to show they are typical or adequate representative

---

[4] Defendants acknowledge this Court has suggested as much in some prior cases.  *Patterson v. RW Direct, Inc.*, 2018 WL 6106379, at *1 (N.D. Cal. Nov. 21, 2018) (Chhabria, J.).  As Monsanto's motion to dismiss explains, Plaintiffs also lack standing even for their own claims.

for purchasers of *all* Roundup® products.   Those products have different labels, different formulations, and different marketing and advertising.   Guard Decl. ¶¶ 6-8, 9,-12, 14-16.   They are sold through different retail and distribution channels, for different uses by different kinds of users, at different rates, and in combination with different other products.   *Id*.   For example, agricultural users are typically sophisticated herbicide users, who are often applying numerous different agricultural chemicals, often in "tank mixes" with Roundup® products.   *Id.* ¶ 10.   They would likely have different levels of background knowledge, different exposure profiles (both to Roundup® products and to other agricultural chemicals), and different understanding of any alleged false advertising or public statements than, for example, "weekend warriors" using a small bottle of ready-to-use product they bought at their local hardware store.   *See Singh v. Google LLC*, No. 16-03734, 2022 WL 94985, at *7 (N.D. Cal. Jan. 10, 2022) (named plaintiff did not have a typical injury because more sophisticated advertisers would not have the same impression of alleged misrepresentations).   Plaintiffs could never show they are typical of *all* these varying types of users.

## V.   **PLAINTIFFS' PROPOSED CLASS FACES INSUPERABLE ISSUES OF PREDOMINANCE AND MANAGEABILITY.**

As explained above, state laws materially vary for each of Plaintiffs' claims.   The need to apply those differing laws by itself creates insuperable manageability issues.   *Zinser*, 253 F.3d at 1187 (affirming denial of nationwide class because "variances in state law" made proposed class unmanageable).   The court would have to, for example, reconcile varying statutes of limitations, juggle different articulations of the duty to disclose, manage conflicting notice requirements, and navigate different versions of the economic-loss doctrine.   *See supra* Part II; App'xs 1-8.   Coherent jury instructions would be impossible, and a trial entirely unmanageable.   *E.g.*, *Marsh v. First Bank of Del.*, 2014 WL 554553, at *14 (N.D. Cal. Feb. 7, 2014) (noting the "impossible task" of instructing a jury on varying states' laws).

Additionally, the proposed claims raise numerous individualized issues that would defeat predominance under Rule 23(b)(3).   The class-action device typically is not appropriate in mass-

tort cases, which tend to "present significant questions, not only of damages but of liability and defenses of liability . . . affecting the individuals in different ways." *Amchem*, 521 U.S. at 625. This is particularly true in products-liability actions where "[n]o single proximate cause applies equally to each potential class member and each defendant." *In re Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 853 (9th Cir. 1982). Indeed, the California Supreme Court has noted that mass-tort personal-injury class actions are "presumptively" inappropriate for class certification. *See Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1102, 1121-22, 1125 (1988). That holds true here—several significant individual issues would inevitably defeat predominance. To give just some non-exhaustive examples:

*Causation.* Issues of causation will be specific to each plaintiff and thus cannot be determined on a class-wide basis. Each plaintiff will have been allegedly exposed to different types of Roundup® products, with varying circumstances of use, at different time periods, and resulting in an individualized showing of alleged injury. *See, e.g.*, *Payton v. Abbott Labs.*, 83 F.R.D. 382, 389 (D. Mass. 1979) (neither causation nor damages may be determined in class proceedings). Each plaintiff will have different pre-existing conditions and exposure profiles and would presumably be affected by exposure to different types of Roundup® products in different ways—not to mention exposures to other types of products that may bear on the causation analysis. *See Zinser*, 253 F.3d at 1189 (in determining causation and damages for negligence, products liability, and medical monitoring claims, it was "inescapable that many triable individualized issues may be presented").

*Medical Monitoring*. Courts often deny certification of medical-monitoring classes based on the highly individualized nature of the required proof. *See, e.g.*, *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 146 (3d Cir. 1998) (holding that "the requirement that each class member demonstrate the need for medical monitoring preclude[d] certification" of a Pennsylvania medical-monitoring class); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 272 (S.D. Fla. 2003) (same as to a Florida medical monitoring claim). For example, in *In re Fosamax, Products Liability Litigation*, the court emphasized that "each class member must offer highly individualized proof

to establish most elements of a medical monitoring claim." 248 F.R.D. 389, 401 (S.D.N.Y. 2008). The same is true here.

*Reliance*.  Plaintiffs will have to prove individualized reliance in the majority of the states for the breach-of-express-warranty and fraudulent-concealment claims, and in many states for consumer-protection and false advertising claims.  *See, supra*, Part II; *see also* App'xs 4, 6, 7.  This would require the Court to "inquire into the specific facts surrounding each buyer's transaction," defeating predominance.  *See, e.g.*, *Sanders*, 672 F. Supp. 2d at 991; *Hamm v. Mercedes-Benz USA, LLC*, 2021 WL 1238304, at *12 (N.D. Cal. Apr. 2, 2021) ("[I]ndividual issues will predominate over common issues in determining reliance." (cleaned up)); *Colman v. Theranos, Inc.*, 325 F.R.D. 629, 647 (N.D. Cal. 2018) ("[I]ndividualized issues of reliance would predominate over common issues for Plaintiffs' five reliance-based claims.").  Here, this would include individualized issues as to which class members bought which Roundup® products, what advertisements or labels (if any) they saw, their preexisting knowledge of herbicides, and whether they were aware of allegations that Roundup® was a carcinogen, etc.  *See In re Clorox Consumer Litig.*, 301 F.R.D. 436, 444 (N.D. Cal. 2014) ("Plaintiffs do not distinguish between reliance and exposure [to advertisements], and they offer no individualized proof of either.").  The Court cannot presume away these fact-specific reliance issues.  *See Colman*, 325 F.R.D. at 642 (citing *Mazza*, 666 F.3d 581 and further cases).

*Statutes of Limitations.*  Plaintiffs seek to skirt the various statutes of limitations applicable to their and class members' claims by appealing to the doctrine of equitable tolling, asserting that they were "unaware and could not reasonably know or have learned through reasonable diligence" the basis for their claims.  Compl. ¶¶ 83-89.  This raises highly individualized issues of notice. "Under both the discovery rule and the doctrine of fraudulent concealment, the relevant inquiry is whether the plaintiff was on notice—either notice of some wrongdoing in the case of the discovery rule, or notice of the specific cause of action in the case of fraudulent concealment."  *Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 971 (S.D. Cal. 2016); *see also* Compl. ¶ 89 (expressly appealing to the discovery rule and fraudulent concealment).  "These determinations are not susceptible to

14

generalized proof." *Lucas*, 21 F. Supp. 3d at 971.  That is particularly true in this case because, as shown in Monsanto's concurrent motion to dismiss, Plaintiffs' theory of carcinogenicity, and most of the facts they allege, have long been publicly available and widely discussed in major media. Thus, "individualized proof of notice" would loom over the proceedings.  *See In re SFPP Right-of-Way Claims*, 2017 WL 2378363, at *17 (C.D. Cal. May 23, 2017).

## VI.      PLAINTIFFS' PROPOSED CLASS IS FATALLY OVERBROAD.

Plaintiffs' class as defined could never be certified because it is overbroad.  A class definition is overbroad when it includes class members who have not been harmed or who are "precluded" from bringing the proposed claims.  *See, e.g.*, *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (class could not be certified because some class members were precluded from bringing causes of action under the CLRA as they were using the relevant product "for business purposes"); *Circle Click Media LLC v. Regus Mgmt. Grp.*, 2015 WL 6638929, at *12 (N.D. Cal. Oct. 30, 2015) (class definition was overbroad because it included recipients of terms and conditions for which no liability could be established); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 483 (N.D. Cal. 2011) (rejecting class definition as overbroad where it included individuals who had already received a refund).  Here, Plaintiffs' proposed class is overbroad because, by its terms, it would include most members of the settlement classes in *Jones*, 2021 WL 2426126, at *12, and *Gilmore*, 2023 WL 2723334, at *5.  Those classes, respectively, have released all claims for economic losses based on the Enzyme Statement (cited at Compl. ¶ 24) and for economic losses based on Roundup® products' alleged carcinogenicity.  Inclusion of such individuals in Plaintiffs' case—which the Complaint repeatedly states is seeking recovery for economic losses (*e.g.*, Compl. ¶¶ 122, 144, 162, 172, 182, 192, 201, 207, 209, Prayer ¶¶ 2-3)—is improper and renders the proposed class overbroad and incapable of certification.

## CONCLUSION

For all the above reasons, the Court should grant this motion and strike Plaintiffs' class allegations.

Dated: December 1, 2023

By:    */s/ John J. Rosenthal*

JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202

*Attorneys for Defendants*