**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843 | Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 | Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, <br><br> *Angelo Bulone v. Monsanto Company*, 3:20-cv-03719-VC | MDL No. 2741 <br><br> Case No.: 3:16-md-02741-VC <br><br> **DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF DR. JAMES CLARK** <br><br> Hearing: <br> Date: March 1, 2024 <br> Time: 10:00 a.m. <br> Place: San Francisco Courthouse, Courtroom 4 – 17th Floor |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 1, 2024, at 10:00 a.m. in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Dr. James Clark. Monsanto seeks an order excluding opinions of this witness under Federal Rule of Evidence 702.

Dated: December 11, 2023                                Respectfully submitted,

                                                        /s/ *Linda C. Hsu*
                                                        Linda C. Hsu
                                                        Attorneys for Defendant Monsanto Company

**INTRODUCTION**

Plaintiff Angelo Bulone ("Plaintiff") has disclosed Dr. James Clark as an expert to perform a "toxicological assessment" and arrive at an "exposure analysis for Mr. Bulone, based on his cumulative exposure (as expressed in exposure days) to Roundup®." *See* Ex. A, 10/21/23 Clark *Bulone* Report at 3; Ex. B, Clark *Bulone* Dep. at 32:8-15. Dr. Clark's exposure days opinion, which blindly relies on Plaintiff's recollection of Roundup usage, inflated numerical values, and fundamentally flawed data points, is not scientific at all and will not assist the jury. Because Dr. Clark's opinions do not meet the requirements for expert admissibility under Federal Rule of Evidence 702, they should be excluded.

**BACKGROUND**

Plaintiff served on Monsanto the expert report of Dr. Clark,[1] an inhalation toxicologist, wherein he purported to assess Plaintiff's exposure to glyphosate-based Roundup quantified in Plaintiff's number of "exposure days." Ex. B, Clark *Bulone* Dep. at 35:13-19 ("My charge was to evaluate how he used the product and what his number of exposure days are"); *see also id.* at 56:24-57:15 ("My charge in this case was calculate the number of exposure days because exposure days is equal to usage"); Ex. A, 10/21/23 Clark *Bulone* Report at 1-26.

For his exposure opinion, Dr. Clark purported to "reconstruct[ Plaintiff's] historical doses" of glyphosate exposure by reviewing (1) Plaintiff's medical history to identify any additional exposure factors; (2) Plaintiff's claimed use of Roundup to calculate the frequency of his use and amount of his dermal absorption; and (3) the circumstances of Plaintiff's claimed Roundup use, including the duration and frequency of his use and whether he used personal protective equipment. Ex. A, 10/21/23 Clark *Bulone* Report at 3-4; *see also id.* 5-12; 14-19. Dr. Clark then calculated the

---

[1] Plaintiff initially served on Monsanto a report from Dr. Clark in this case dated September 25, 2023 that purported to opine on Plaintiff's dermal and systemic dose exposure to glyphosate in addition to quantifying Plaintiff's exposure days. *See* Ex. C, 9/25/23 Clark *Bulone* Report. On October 21, 2023, Plaintiff served on Monsanto an amended report that "simplified" Dr. Clark's opinion "by focusing only on the exposure days that Mr. Bulone had to the Roundup products" and "eliminated the discussions about dermal absorption and systemic doses." Ex. B, Clark *Bulone* Dep. at 8:4-9:13; *see also* Ex. A, 10/21/23 Clark *Bulone* Report. Dr. Clark's October 21, 2023 report contains all the opinions he intends to give at trial in this case and the bases of those opinions. Ex. B, Clark *Bulone* Dep. at 26:5-14. Dr. Clark did not assess exposure dose in this case and will not offer any such opinions at trial. Ex. B, Clark *Bulone* Dep. at 43:25-44:6.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

amount of time Plaintiff sprayed Roundup at his residence and his workplace at the Wedgefield Plantation Golf Course, and provided calculations of Plaintiff's "minimum," "mid," and "maximum" exposure durations for each location. *Id.* at 20-25. Dr. Clark explained that he "assume[d] a 50 percent reduction" and based the "midpoint" calculation "upon…50 percent of the lowest value recorded." Ex. B, Clark *Bulone* Dep. at 46:2-47:1. For the maximum value calculation, Dr. Clark "assume[d] a 25 percent increase over that midpoint." *Id.* Dr. Clark then divided each of his "minimum," "mid," and "maximum" exposure durations by eight to reach what he calls the total number of "8-hour time-weighted exposure-days" that Plaintiff sprayed Roundup. Ex. A, 10/21/23 Clark *Bulone* Report at 24-25. Dr. Clark ultimately opined that Plaintiff used glyphosate-based Roundup "for a significant amount of time" at his residence and workplace and that Plaintiff's "exposure to glyphosate was equivalent to between 42.15 to 105.41 days of spraying." *Id.* at 26; Ex. B, Clark *Bulone* Dep. at 48:3-15.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. Fed. R. Evid. 702. The proponent of the expert bears the burden of proving that the expert's proffered testimony is admissible. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). The trial judge is charged with the responsibility of acting as a gatekeeper to "ensure that any and all scientific testimony…is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Expert opinion testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010). "[A]n expert's scientific conclusions must be supported by 'good grounds for each step in the analysis,' meaning that 'any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible.'"

Case 3:16-md-02741-VC   Document 17589   Filed 12/11/23   Page 5 of 9

*Persian Gulf Inc. v. BP W. Coast Prod. LLC*, 632 F. Supp. 3d 1108, 1164–65 (S.D. Cal. 2022) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

### ARGUMENT

Dr. Clark's exposure days assessment should be excluded because it is not reliable and would not be helpful to the jury. To reach his conclusions on Plaintiff's exposure to glyphosate-based Roundup, Dr. Clark reviewed Plaintiff's deposition testimony and interviewed Plaintiff over the telephone a single time for forty minutes to determine the number of hours per day and days per week that Plaintiff claims to have sprayed Roundup. *See, e.g.*, Ex. A, 10/21/23 Clark *Bulone* Report at 2, 8, 23-24; Ex. B, Clark *Bulone* Dep. at 21:3-5; 21:21-22:12; 22:20-23; 23:23-24:2; 32:20-33:9; 33:7-11. Despite the inherent difficulties in relying exclusively on a witness's memory of spraying habits from years (or decades) ago, Dr. Clark did nothing to investigate or verify that Plaintiff's claimed exposures were reasonable, accurate, or even possible through any other source. He did not conduct any site inspection or visit the places where Plaintiff claims he sprayed Roundup. Ex. B, Clark *Bulone* Dep. at 28:8-15. Nor did he inspect or investigate any of the equipment that Plaintiff claims he used when applying Roundup. *Id.* at 28:16-19.

Dr. Clark simply assumed that Plaintiff's memory in both his deposition and interview was accurate and that his exposure stories were correct. Ex. A, 10/21/23 Clark *Bulone* Report at 1, 26 ("***Based on Mr. Bulone's testimony***, it is clear that Mr. Bulone used Roundup® herbicide formulations that contained glyphosate for a significant amount of time to control weeds at his residence on Pawleys Island and at his workplace – the Wedgefield Plantation Golf Course in Georgetown, South Carolina") (emphasis added); *id.* at 14 ("***Based on Mr. Bulone's sworn deposition testimony***, it is clear that he had a substantial duration of exposure to Roundup® over time") (emphasis added). He admitted that his analysis is "only as good as the information" provided to him in Plaintiff's testimony. Ex. B, Clark *Bulone* Dep. at 33:20-23.

To make matters worse, Dr. Clark based his opinions in part on the maximum exposure amount, meaning that if there was any discrepancy in Plaintiff's deposition testimony about the amount of time he claimed that he sprayed in a given day or in a given year, Dr. Clark included the higher number in his estimate. Ex. A, 10/21/23 Clark *Bulone* Report at 21-23 (calculating

- 3 -
MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. JAMES CLARK

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

Plaintiff's "minimum," "mid," and "maximum" exposure durations at his residence and workplace); *id.* at 24, Table 5 ("Mr. Bulone's 8-Hour Time-Weighted Roundup® Exposure-Days – Pre-Diagnosis Exposure"); *id.* at 26 ("Mr. Bulone's exposure to glyphosate was equivalent to between 42.15 to 105.41 days of spraying"). Dr. Clark concedes that his decision to use a "25 percent increase" in calculating Plaintiff's maximum exposure days is not based on any peer-reviewed articles or literature. Ex. B, Clark *Bulone* Dep. at 47:20-25. This unscientific approach resulted in rank overestimation of Plaintiff's exposure days.

Moreover, Dr. Clark has no reliable basis for converting Plaintiff's claimed exposures to the equivalent of an eight-hour workday. Ex. A, 10/21/23 Clark *Bulone* Report at 24, Table 5 ("Mr. Bulone's 8-Hour Time-Weighted Roundup® Exposure-Days – Pre-Diagnosis Exposure"); Ex. B, Clark *Bulone* Dep. at 44:13-45:8. Dr. Clark divided the amount of time Plaintiff claimed he spent spraying "by an eight-hour day to come up with the number of exposure days." *See* Ex. B, Clark *Bulone* Dep. at 42:1-8. According to Dr. Clark, this "exposure days" calculation is "consistent with the epidemiological literature related to development of cancers, and exposure days is the metric that is used"—namely McDuffie (2001) and Eriksson (2008). Ex. B, Clark *Bulone* Dep. at 56:24-57:15; Ex. A, 10/21/23 Clark *Bulone* Report at 20 n. 78 (citing McDuffie (2001) and Eriksson (2008)).

However, Dr. Clark's reliance on this cherry-picked literature is fundamentally unreliable. As this Court noted recently in ruling on Monsanto's motion to exclude certain causation experts in *Engilis v. Monsanto Co.*, No. 3:19-cv-07859-VC, an expert's "cherry-pick[ing] the findings of the epidemiological studies, reporting only certain odds ratios—those most favorable to his ultimate opinion" disqualifies his testimony. *See* Ex. D, *In re Roundup Prods. Liab. Litig.*, Pretrial Order No. 288: Order Granting Motions to Exclude Experts Charles and Schneider, MDL No. 2741, Case No. 16-md-02741-VC (N.D. Cal. Nov. 15, 2023), at 3. First, neither the McDuffie nor Eriksson data on which Dr. Clark relies concern chronic lymphocytic leukemia—the subtype of NHL with which Plaintiff is diagnosed. Second, these data points were not adjusted for the use of other pesticides, which confounds the analysis of glyphosate exposure in the epidemiological studies. Failing to account for likely confounders—*i.e.*, variables that may otherwise explain a positive

association—is a serious methodological error. *Barnes v. The Hershey Co.*, 2016 WL 192310, at *9 (N.D. Cal. Jan. 15, 2016); *see also Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 253 (6th Cir. 2001). Finally, Dr. Clark's comparison of Plaintiff's alleged "exposure hours" to alleged thresholds from these studies is unreliable because he failed to establish that Plaintiff's spraying habits were even remotely similar to the spraying habits of the professional applicators and farmers in those studies. Epidemiological studies are only valuable in an assessment of causation[2] if a plaintiff shows that he is similarly situated to the participants in those studies. Indeed, as the Texas Supreme Court aptly put it:

> To raise a fact issue on causation and thus to survive legal sufficiency review, a claimant must do more than simply introduce into evidence epidemiological studies that show a substantially elevated risk. A claimant must show that he or she is similar to those in the studies. This would include proof that the injured person was exposed to the same substance, that the exposure or dose levels were comparable to or greater than those in the studies, that the exposure occurred before the onset of injury, and that the timing of the onset of injury was consistent with that experienced by those in the study.

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997); *see also McManaway v. KBR, Inc.*, 852 F.3d 444, 453-55 (5th Cir. 2017) (citing *Havner* with approval and granting summary judgment on causation where Plaintiff did not adduce sufficient expert testimony on causation).

At bottom, Dr. Clark's exposure days assessment—which is based on simple math and speculative assumptions about Plaintiff's credibility regarding the amount of time he spent spraying Roundup—is unreliable, unscientific, and should not be the subject of expert testimony. Indeed, though he describes it as an "exposure" assessment, his exposure days assessment does not actually assess Plaintiff's exposure (*i.e.,* the amount of Roundup that came into contact with Plaintiff's skin) in any real way. Dr. Clark admitted as much in his deposition. Ex. B, Clark *Bulone* Dep. at 41:1-14 (Dr. Clark vaguely opining, "It's – my understanding is that it would – got on his body. He wasn't sure of the amounts. What he was sure of was the amount of time that he would – spent

---

[2] Although Plaintiff's counsel clarified during Dr. Clark's deposition that Dr. Clark is "not being proffered as a causation expert," Ex. B, Clark *Bulone* Dep. at 31:21-24, Dr. Clark has made clear in his testimony that he intends that Plaintiff's specific causation experts will rely on his exposure days analysis in this case. *See id.* at 34:19-35:7 (Dr. Clark remarking about "somebody who's doing specific causation, who will be reading [his] report").

spraying. And, for me, the exposure period starts with picking up the product and then starting to apply it"); *id.* at 41:16-20 ("Q. So you're unsure of the amount of Roundup that got on his body or his hands? A. That's not something that I was quantifying in this report…."). His analysis is based on the unfounded "assumption" that it did, despite the fact that he does not recall Plaintiff ever saying that he spilled Roundup on himself or got Roundup on his skin every time he used the product. *Id.* at 50:22-52:16. Instead, his exposure-days assessment is based solely on the amount of time Plaintiff claims he spent spraying Roundup. *Id.* at 41:1-14, 21-25.

The jurors in this case can easily add up the total number of hours or days they believe Plaintiff actually sprayed Roundup, based on their assessment of Plaintiff's credibility, without the assistance or spin of a so-called "expert" like Dr. Clark. *See id.* Because Dr. Clark's exposure days assessment is unreliable, unscientific, and unhelpful to the jury, it should be excluded. *See, e.g.*, *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021) (expert testimony was inadmissible where the jury was "capable of evaluating the same evidence and drawing conclusions without [the expert's] proffered testimony"); *Mesfun v. Hagos*, No. CV 03-02182 MMM(RNBX), 2005 WL 5956612, at *11 (C.D. Cal. Feb. 16, 2005) (excluding expert testimony that was speculative and "would not assist the trier of fact, as jurors are more than capable of drawing their own conclusions about the evidence presented without the benefit of [the expert's] personal interpretation of it").

## **CONCLUSION**

For the reasons set forth above, the Court should grant Monsanto's Motion to Exclude Dr. James Clark's Testimony and exclude Dr. Clark's opinions.

Dated:  December 11, 2023               Respectfully submitted,

                                        /s/ *Linda C. Hsu*
                                        Linda C. Hsu
                                        Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of December, 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Linda C. Hsu*
Linda C. Hsu
Attorneys for Defendant Monsanto Company