**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100 | Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, <br><br> *Angelo Bulone v. Monsanto Co.*, 3:20-cv-03719-VC | MDL No. 2741 <br><br> Case No: 3:16-md-02741-VC <br><br> **DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S SPECIFIC CAUSE EXPERT DR. MARC BRAUNSTEIN AND FOR SUMMARY JUDGMENT** <br><br> <u>Hearing Date:</u> <br> Date: March 1, 2024 <br> Time: 10:00 a.m. <br> Place: San Francisco Courthouse, Courtroom 4 – 17th Floor |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on March 1, 2024 at 10:00 a.m. in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Plaintiff's Specific Cause Expert Dr. Marc Braunstein and for Summary Judgment. Monsanto seeks an order under Federal Rule of Evidence 702 excluding Dr. Braunstein. And, because Dr. Braunstein is Plaintiff's only specific causation expert, Monsanto seeks summary judgment on all of Plaintiffs' claims because Plaintiff has failed to produce at least one admissible expert opinion establishing specific causation.

Dated: December 13, 2023              Respectfully submitted,

                                      */s/ Linda C. Hsu*
                                      Attorney for Defendant Monsanto Company

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

I.    Plaintiff Disclosed Dr. Braunstein As A Specific Causation Expert. ............................... 2

II.    Plaintiff Has Multiple Risk Factors Associated With NHL. ............................................ 2

III.    Dr. Braunstein Purports To Use A Differential Etiology In Forming His Specific Causation Opinions But Does Not Rule Out Five Known Risk Factors. ............................................................................................................................. 3

LEGAL STANDARD ..................................................................................................................... 5

ARGUMENT .................................................................................................................................. 6

I.    Dr. Braunstein Failed To Consider And Rule Out Known Alternative Causes Of Plaintiff's CLL. .......................................................................................................... 6

II.    Dr. Braunstein Failed to Rule Out Unknown Causes Of Plaintiff's NHL, Instead Concluding That Roundup *Must* Have Been the Cause. ..................................... 8

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aredia & Zometa Prod. Liab. Litig.*,
    483 F. App'x 182 (6th Cir. 2012) ............................................................................................. 5

*Claar v. Burlington N. R.R. Co.*,
    29 F.3d 499 (9th Cir. 1994) ...................................................................................................... 7

*Clausen v. M/V New Carissa*,
    339 F.3d 1049 (9th Cir. 2003) .......................................................................................... 3, 6, 7

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ............................................................................................................. 5, 9

*Henricksen v. ConocoPhillips Co.*,
    605 F. Supp. 2d 1142 (E.D. Wash. 2009) ................................................................................ 8

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    185 F. Supp. 3d 786 (D.S.C. 2016) .......................................................................................... 6

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*,
    892 F.3d 624 (4th Cir. 2018) ............................................................................................... 5, 8

*Poust v. Huntleigh Healthcare*,
    998 F. Supp. 478 (D.N.J. 1998) ............................................................................................... 5

*In re Roundup Prods. Liab. Litig.*,
    358 F. Supp. 3d 956 (N.D. Cal. 2019) ..................................................................................... 6

*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*,
    No. 14 C 1748, 2017 WL 1833173 (N.D. Ill. May 8, 2017) ................................................ 6, 7

*Westberry v. Gislaved Gummi AB*,
    178 F.3d 257 (4th Cir. 1999) ............................................................................................... 3, 6

**Other Authorities**

Fed. Rule Evid. 702 ............................................................................................................ 1, 5, 8, 9

Pre-Trial Order 85 ................................................................................................................. 1, 8, 9

# INTRODUCTION

Plaintiff designated Dr. Marc Braunstein as a specific causation expert. But Dr. Braunstein's opinion does not satisfy the standard under Rule 702 this Court imposed in Pre-Trial Order 85 ("PTO 85"). Dr. Braunstein's opinions fall woefully short of the standard established by the first round of experts, who this Court bluntly described to have "barely inched over the line" in opining that Roundup®-branded products ("Roundup") specifically caused the first wave of plaintiffs' non-Hodgkin's lymphoma ("NHL").

Dr. Braunstein purported to conduct a differential diagnosis that is fundamentally flawed because he failed entirely to rule out five factors that he admits could have caused, or contributed to cause, Plaintiff's Chronic Lymphocytic Leukemia ("CLL"), a subtype of NHL. Specifically, Dr. Braunstein concedes—both in his written reports and in his deposition testimony—that Plaintiff's gender, ethnicity, familial history of cancer, and geographic location are known risk factors for Plaintiff's disease. And yet, he failed entirely to consider and rule out these risk factors as the potential culprits of Plaintiff's CLL.

Similarly, Dr. Braunstein did not rule out the jet fuel and benzene to which Plaintiff was exposed while serving in the U.S. Navy. Dr. Braunstein both admits that benzene and jet fuel can cause CLL, and that *he cannot rule out* jet fuel and benzene as potential causes of Plaintiff's CLL. This alone is enough to exclude Dr. Braunstein's opinion. Dr. Braunstein has waffled back and forth about whether he can rule out Plaintiff's exposure to benzene and jet fuel—he wrote in a 2022 report that he could not, changed his mind in a 2023 report, then changed his mind again at his deposition. But Dr. Braunstein was unambiguous at his deposition, testifying *four times* that he could not rule out benzene and jet fuel.

Finally, Dr. Braunstein never considered, and therefore never ruled out, idiopathic causes, even though this Court in the past has been clear that the failure to do so renders an expert's opinion unreliable.

For these and the reasons that follow, this Court should exclude Dr. Braunstein's opinions. And, because without Dr. Braunstein Plaintiff has no specific causation testimony, this Court should grant summary judgment in favor of Monsanto.

# BACKGROUND

## I. Plaintiff Disclosed Dr. Braunstein As A Specific Causation Expert.

Dr. Braunstein is an oncologist and hematologist. *See* Hsu Decl., Ex. A, Braunstein Dep. (*Thomas*) at 32:23-24. In clinical practice, Dr. Braunstein has **never** told any patient that Roundup caused his or her NHL. *Id.* at 42:4-12. Nonetheless, he reaches that conclusion in this case. Moreover, before getting involved as a paid expert here, Dr. Braunstein had no knowledge of any possible link between glyphosate and NHL. *Id.* at 50:4-8 ("Q. Other than the reading that you've done for this case, do you have any experience, education, or expertise in the carcinogenicity of glyphosate or Roundup? A. No, sir."); *see also id* at 120:15-121:9. And Dr. Braunstein testified that "the literature is not definitive on" whether "glyphosate causes non-Hodgkin's lymphoma" and reasonable scientific minds "do" differ on that question. *Id.* at 180:2-24; 181:19-23.

## II. Plaintiff Has Multiple Risk Factors Associated With NHL.

As Monsanto explained at length in its prior motion to exclude specific causation experts (MDL ECF No. 2420), "non-Hodgkin's lymphoma" is an umbrella term used to describe more than sixty different sub-types of cancer involving lymphocytes, more commonly known as white blood cells. The various sub-types have different clinical and prognostic characteristics and may also have different risk factors and causes. However, in the vast majority of all NHL cases, the cause is unknown.

Plaintiff was diagnosed with CLL in 1994. As Dr. Braunstein notes in his report, CLL is a "type of NHL." Hsu Decl., Ex. B, Braunstein 2023 Report at 4. Plaintiff alleges that his CLL was caused by exposure to Roundup that he sprayed between 1983 and 2019. *Id*. at 3-4.

Dr. Braunstein confirmed at his deposition that "of the 13 risk factors" for CLL, Plaintiff checked the box for several of them. Hsu Decl., Ex. C, Braunstein Dep. (*Bulone*) at 50:13-16. Specifically, Dr. Braunstein confirmed that Plaintiff has the following CLL risk factors:

- Gender. *Id*. at 48:17-19 ("Q. So his gender puts him at higher risk, correct? A. Yes.").
- Ethnicity. *Id*. at 48:20-25 ("Q. So his ethnicity puts him at higher risk, correct? A. Yes. Or at least more you know, within the demographic spectrum in which CLL is more common.").
- Geographic location. *Id*. at 49:5-11 ("Q. So his geographic location puts him at a

higher risk … because your report notes that New York is one of the top three U.S. states for cases of NHL, correct?  A. Correct.  Yes.").

- Occupational exposure to jet fuel and benzene due to Plaintiff's time serving in the U.S. Navy.  *Id*. at 49:16-22.

- His family history of cancer; Plaintiff's "mother died of lung cancer, his sister had breast cancer and his paternal aunt had leukemia." *Id*. at 50:5-9; *id*. at 10-12 ("Q. So family history of cancer puts him at higher risk, correct?  A. Yes.").

### III.  Dr. Braunstein Purports To Use A Differential Etiology In Forming His Specific Causation Opinions But Does Not Rule Out Five Known Risk Factors.

Like other specific causation experts previously assessed in this MDL, Dr. Braunstein purports to reach his specific causation opinions by concluding *first* that there is a proven link between Roundup use and NHL[1], and then *second* by purporting to exclude (or rule out) any other potential causes of Plaintiff's NHL.  Hsu Decl., Ex. C, Braunstein Dep. (*Bulone*) at 47:5-7.

"[D]ifferential diagnosis," is a term courts use to describe the "scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated."  *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999)).  This process requires an expert to first "rule in" all potential causes—*i.e.*, "to compile a comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration."  *Id.*  The expert must then "rule out" the possible causes using a scientific method until only the "most likely cause" remains.  *Id.*

Here, Dr. Braunstein confirmed at his deposition that Plaintiff had five known risk factors for CLL:  gender, ethnicity, geographic location, occupational exposure to benzene and jet fuel, and family history.  Hsu Decl., Ex. C, Braunstein Dep. (*Bulone*) at 48:17-50:12.  Similarly, his latest expert report noted that "[r]ecognized risk factors for the development of NHL include … male gender, white ethnicity, … geographic location, … occupational or environmental exposures such as benzene … [and] a family history of hematologic malignancy."  Hsu Decl., Ex. B, Braunstein 2023

---

[1] Although the focus of this motion is that Dr. Braunstein did not rule out known causes of Plaintiff's CLL (or, indeed, did not even attempt to rule out known causes at all), Monsanto does not concede that Dr. Braunstein reliably ruled in Roundup as a cause, either.

Report at 5. Despite both writing in his report and confirming at his deposition that Plaintiff has all five of these risk factors for CLL, Dr. Braunstein **never even attempted to rule out four of them**: gender, ethnicity, geography, and family history. There is absolutely no indication anywhere in his report that he analyzed and excluded these four factors as potential causes of Plaintiff's CLL. Indeed, at his deposition, he confirmed that although he "attempted to rule those [factors] out," he could not "quantify the percentage of contribution that each risk factor has made to causing [Plaintiff's] CLL." Hsu Decl., Ex. C, Braunstein Dep. (*Bulone*) at 66:21, 65:21-24.

As for the fifth risk factor—exposure to benzene and jet fuel from Plaintiff's time serving in the Navy—Dr. Braunstein has taken contradictory positions. Dr. Braunstein issued his initial report in this case in August 2022. In that report, Dr. Braunstein wrote that Plaintiff's exposure to jet fuel and benzene "***cannot be ruled out as[a] contributory factor[].***" Hsu Decl., Ex. D, Braunstein 2022 Report at 12 (emphasis added). But then, in October 2023 (and just one day before his deposition in this case) Dr. Braunstein issued a new report in which he did a complete one-eighty, this time writing that Plaintiff's exposure to jet fuel and benzene has "been ruled out as contributory factors in this case." Hsu Decl., Ex. B, Braunstein 2023 Report at 11. Then, just one day later at his deposition, Dr. Braunstein changed his tune again, agreeing that "benzine exposure can not be ruled out" as a potential cause of Plaintiff's CLL. Hsu Decl., Ex. C, Braunstein Dep. (*Bulone*) at 62:7-9. Dr. Braunstein's statement at his deposition that benzene/jet fuel could not be ruled out was not an offhand remark; he reiterated **four times** at his deposition that he cannot rule out benzene/jet fuel exposure as a potential cause of Plaintiff's NHL. *Id*. at 54:9-11 ("I can't rule out entirely that benzine exposure from jet fuel could have contributed."); *id*. at 54:12-14 ("Q. So it's possible that the benzine exposure cold [sic] have contributed to Mr. Bulone's NHL?" A. It's possible."); *id*. at 61:16-22 ("A. As far as the jet fuel I think we said previously during this deposition that it can't be ruled out entirely that he was exposed to benzine which could be a contributing factor. Q. So it's your testimony here today that benzine would be a contributing factor, correct? A. In general, yes."). Accordingly, Dr. Braunstein's current opinion appears to be consistent with his 2022 written report and not his 2023 written report: Dr. Braunstein cannot rule out Plaintiff's exposure to benzene and jet fuel as a potential cause of Plaintiff's CLL.

Moreover, both Dr. Braunstein's 2022 and 2023 Reports ignore altogether the possibility that Plaintiff's CLL may have no known cause, as would be the case where CLL is caused by a yet-to-be-discovered factor or by the random mutations that inevitably occur in the process of normal cell division. Put another way, Dr. Braunstein did not rule out idiopathy as a potential cause of Plaintiff's NHL. He did not rule out idiopathy even though he agreed at his deposition that "doctors do not fully understand what causes NHL" and that he himself tells "many patients" that "we may not be able to identify the cause." Hsu Decl., Ex. C, Braunstein Dep. (*Bulone*) at 67:10-12; 71:16-17.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert may give opinion testimony only if (a) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In other words, an expert must be qualified and must offer testimony that is both relevant and reliable. *Id.*; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

In the specific causation context, Rule 702 requires experts purporting to use a differential diagnosis to carry out both aspects of that methodology—"ruling in" all possible causes and "ruling out" all but the subject cause—in a reliable fashion. To reach an admissible causation opinion through a reliable differential diagnosis, an expert must "accurately diagnose the nature of the disease, reliably rule in the possible causes of it, and reliably rule out the rejected causes." *In re Aredia & Zometa Prod. Liab. Litig.*, 483 F. App'x 182, 188 (6th Cir. 2012). Because the inherent malleability of this methodology can shroud what may be little more than subjective guesswork, the district court must "delve into the particular witness's method of performing a differential diagnosis to determine if his or her ultimate conclusions are reliable." *Poust v. Huntleigh Healthcare*, 998 F. Supp. 478, 496 (D.N.J. 1998). Courts have consistently held that expert opinions that pay lip service to this methodology but do not reliably apply it should be excluded. *See, e.g., In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 892 F.3d 624, 642–45 (4th Cir. 2018). And if Plaintiff fails to present an admissible expert opinion to establish specific causation, summary

judgment is appropriate. *In re Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956, 957 (N.D. Cal. 2019) ("To defeat Monsanto's motion for summary judgment on this issue, the plaintiffs must present at least one admissible expert opinion to support [his] specific causation argument.").

**ARGUMENT**

**I.  Dr. Braunstein Failed To Consider And Rule Out Known Alternative Causes Of Plaintiff's CLL.**

Dr. Braunstein failed entirely to address and rule out the numerous potential causes of Plaintiff's NHL other than Roundup, which is required for his opinions to be admissible. *See Clausen*, 339 F.3d at 1058 ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.") (quoting *Westberry*, 178 F.3d at 265); *see also* PTO 85 ("The next question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL, and properly ruled out factors other than glyphosate, while at the same time declining to rule out glyphosate itself."). The first step in a differential diagnosis is to "compile a comprehensive list of hypotheses that might explain" the plaintiff's injury. *See Clausen*, 339 F.3d at 1058. The Ninth Circuit instructs experts to "[i]nclud[e] even rare entities in the list [to] ensure[] that such disorders are not overlooked." *Id.* (citation and quotation marks omitted). Then, in the second step of a differential diagnosis, the expert must "rule out" each of the possible causes until only the most likely cause remains.

Dr. Braunstein did not follow this methodology. Dr. Braunstein did not bother at all to rule out Plaintiff's gender, ethnicity, geographic location, or family history of cancer—despite acknowledging that each of these are "[r]ecognized risk factors" for NHL. Hsu Decl., Ex. B, Braunstein 2023 Report at 5; *see also* Hsu Decl., Ex. C, Braunstein Dep. (*Bulone*) at 65:21-24 (Dr. Braunstein confirmed that he could not "quantify the percentage of contribution that each risk factor has made to causing [Plaintiff's] CLL"). Dr. Braunstein's failure to rule out these four factors alone makes his specific causation opinion unreliable and inadmissible. *See, e.g., In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 185 F. Supp. 3d 786, 800 (D.S.C. 2016) (excluding expert who failed to rule out numerous statistically significant risk factors, including "family history"); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, No.

1  14 C 1748, 2017 WL 1833173, at *22 (N.D. Ill. May 8, 2017) (holding that a differential diagnosis
2  was inadequate, and excluding the expert, where the expert identified "gender" and "family history"
3  as known risk factors of cardiovascular disease but failed to rule them out as potential causes of the
4  plaintiff's heart attack).

5  Dr. Braunstein also confirmed that he could not rule out a fifth factor: the jet fuel and benzene
6  that Plaintiff was exposed to during his time serving in the U.S. Navy. Dr. Braunstein could not rule
7  out benzene and jet fuel despite simultaneously conceding that they "could be a contributing factor"
8  in causing Plaintiff's CLL. Hsu Decl., Ex. C, Braunstein Dep. (*Bulone*) at 61:18-19 (Dr. Braunstein
9  testifying that "benzine …could be a contributing factor"). It is likely that Plaintiff will argue in
10 response that Dr. Braunstein actually did rule out benzene and jet fuel because he wrote in his 2023
11 report that he ruled out benzene and jet fuel. That argument is wrong. Not only did Dr. Braunstein
12 write in his 2022 report that benzene and jet fuel and benzene "**cannot be ruled out**", Hsu Decl.,
13 Ex. D, Braunstein 2022 Report at 12 (emphasis added), Dr. Braunstein's last word on this subject
14 came at his deposition, where he confirmed *four times* that he could not rule out jet fuel and benzene
15 as potential causes. Hsu Decl., Ex. C, Braunstein Dep. (*Bulone*) at 62:7-9 (agreeing that "benzine
16 exposure can not be ruled out"); *id*. at 54:9-11 ("I can't rule out entirely that benzine exposure from
17 jet fuel could have contributed."); *id*. at 54:12-14 ("Q. So it's possible that the benzine exposure cold
18 [sic] have contributed to Mr. Bulone's NHL? A. It's possible."); *id*. at 61:16-22 ("A. As far as the jet
19 fuel I think we said previously during this deposition that it can't be ruled out entirely that he was
20 exposed to benzine which could be a contributing factor. Q. So it's your testimony here today that
21 benzine would be a contributing factor, correct? A. In general, yes.").

22 Put simply: Dr. Braunstein acknowledged that Plaintiff checked the boxes for five known risk
23 factors that could have caused or contributed to have caused Plaintiff's CLL. Yet Dr. Braunstein
24 concluded that Roundup, and only Roundup, must have caused Plaintiff's CLL ***without any***
25 ***explanation of why the other five risk factors played no role***. But an expert conducting a differential
26 diagnosis "must provide reasons for rejecting alternative hypotheses 'using scientific methods and
27 procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs
28 or unsupported speculation.'" *Clausen*, 339 F.3d at 1058 (quoting *Claar v. Burlington N. R.R. Co.*,

29 F.3d 499, 502 (9th Cir. 1994)).  Dr. Braunstein did not do so, nor did he even attempt to do so.  These facts strongly suggest that Dr. Braunstein did not seriously consider that something other than Roundup could have caused Plaintiff's CLL.  Instead, he started and ended with the opinion that Roundup was the cause.  Dr. Braunstein's results-driven "always Roundup" methodology is precisely the type of unreliable approach that Rule 702 prohibits.

Indeed, taken as a whole, Dr. Braunstein's reasoning closely tracks that of the experts excluded in *Lipitor*, whose conclusions "focused almost exclusively on the fact that [the plaintiff] took the drug and later developed the disease, rather than explaining what led her to believe that it was a substantial contributing factor as compared to other possible causes."  892 F.3d at 645.  Here, as in *Lipitor*, Dr. Braunstein "dismiss[ed] other possible causes in favor of [Roundup] in a cursory fashion that appeared closer to an *ipse dixit* than a reasoned scientific analysis."  *Id.*  The Court should exclude Dr. Braunstein's opinion on that basis.

## II. Dr. Braunstein Failed to Rule Out Unknown Causes Of Plaintiff's NHL, Instead Concluding That Roundup *Must* Have Been the Cause.

Dr. Braunstein also failed to consider and rule out potential idiopathic causes of Plaintiff's CLL.  This Court has already acknowledged that because the vast majority of NHL cases have no identifiable cause, an expert's specific causation opinion is inadmissible if it fails to account for or adequately grapple with idiopathy.  *See* PTO 85 at 6.  To be admissible "***an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless***."  *Id.* (emphasis added); *see also Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1163 (E.D. Wash. 2009) (excluding an expert for "fail[ing] to adequately account for the possibility that [the plaintiff's disease] was idiopathic").

Dr. Braunstein's analysis does not meet this standard.  He is unable to offer any reliable method for placing Plaintiff in one category and not the other, and thus any testimony from Dr. Braunstein cannot possibly be helpful to a jury tasked with that very assessment.  He did not rule out idiopathy even though he agreed at his deposition that "doctors do not fully understand what causes NHL" and that he himself tells "many patients" that "we may not be able to identify the cause."  Hsu Decl., Ex. C, Braunstein Dep. (*Bulone*) at 67:10-12; 71:16-17.  Neither Dr. Braunstein's 2022 or 2023

report even considers idiopathy—indeed, neither report even contains the word "idiopathy."

Moreover, unlike prior experts, which the Ninth Circuit concluded adequately accounted for idiopathy, *see Hardeman*, 997 F.3d at 966-67, Dr. Braunstein in this case does not "rel[y] heavily on the plaintiffs' exposure levels in drawing their conclusions." PTO 85 at 6.  Dr. Braunstein did not attempt to quantify Plaintiff's exposure to Roundup, instead basing his conclusion solely on the length of time that Plaintiff used Roundup (as opposed to dermatologic exposure).  *See* Hsu Decl., Ex. C, Braunstein Dep. (*Bulone*) at 65:5-7 ("Q. And you did not calculate an internal dose of glyphosate for Mr. Bulone, did you? A. That's correct.").

Ultimately, Dr. Braunstein engages in an "always Roundup" methodology that determines Roundup to be the cause no matter the exposure.  But, as this Court made clear in discussing idiopathy, exposure alone is not enough.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Plaintiff's specific causation expert, Dr. Braunstein, on Rule 702 and *Daubert* grounds and grant summary judgment in Monsanto's favor because Plaintiffs have failed to present at least one admissible expert opinion to support specific causation in this case.

Dated:  December 13, 2023                    Respectfully submitted,

/s/ Linda C. Hsu
Attorney for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of December, 2023 a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Linda C. Hsu
Linda C. Hsu