**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843 | Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 | Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, <br><br> *Michael J. Caccia v. Monsanto Co.*, 3:20-cv-01915-VC | MDL No. 2741 <br><br> Case No: 3:16-md-02741-VC <br><br> **DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S SPECIFIC CAUSE EXPERT DR. MARC BRAUNSTEIN** <br><br> Hearing: <br> Date: March 1, 2024 <br> Time: 10:00 a.m. <br> Place: San Francisco Courthouse, Courtroom 4 – 17th Floor |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on March 1, 2024 at 10:00 a.m. in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Plaintiff's Specific Cause Expert Dr. Marc Braunstein. Monsanto seeks an order under Federal Rule of Evidence 702 excluding Dr. Braunstein.

Dated: December 13, 2023                    Respectfully submitted,


                                            */s/ Linda C. Hsu*
                                            Attorney for Defendant Monsanto Company

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 1

    I.     Plaintiff Disclosed Dr. Braunstein As A Specific Causation Expert. ....................... 1

    II.    Plaintiff Has Multiple Risk Factors Associated With NHL. ..................................... 2

    III.   Dr. Braunstein Purports To Use A Differential Etiology In Forming His Specific Causation Opinions But Does Not Rule Out Five Known Risk Factors ................ 3

LEGAL STANDARD ............................................................................................................... 5

ARGUMENT ............................................................................................................................. 6

    I.     Dr. Braunstein Failed To Consider And Rule Out Known Alternative Causes Of Plaintiff's NHL. ....................................................................................................... 6

    II.    Dr. Braunstein Failed to Reliably Rule Out Unknown Causes Of Plaintiff's NHL, Instead Concluding That Roundup *Must* Have Been the Cause. ............................ 8

CONCLUSION .......................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aredia & Zometa Prod. Liab. Litig.*,
   483 F. App'x 182 (6th Cir. 2012) ................................................................................................ 5

*Claar v. Burlington N. R.R. Co.*,
   29 F.3d 499 (9th Cir. 1994) ......................................................................................................... 8

*Clausen v. M/V New Carissa*,
   339 F.3d 1049 (9th Cir. 2003) .............................................................................................. 3, 6, 8

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ................................................................................................................ 5, 9

*Henricksen v. ConocoPhillips Co.*,
   605 F. Supp. 2d 1142 (E.D. Wash. 2009) ................................................................................... 8

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*,
   892 F.3d 624 (4th Cir. 2018) ............................................................................................... 5, 7, 8

*McClain v. Metabolife Intern., Inc.*,
   401 F.3d 1233 (11th Cir. 2005) ................................................................................................... 7

*Poust v. Huntleigh Healthcare*,
   998 F. Supp. 478 (D.N.J. 1998) .................................................................................................. 5

*In re Roundup Prods. Liab. Litig.*,
   358 F. Supp. 3d 956 (N.D. Cal. 2019) ........................................................................................ 5

*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*,
   No. 14 C 1748, 2017 WL 1833173 (N.D. Ill. May 8, 2017) .................................................. 6, 7

*Westberry v. Gislaved Gummi AB*,
   178 F.3d 257 (4th Cir. 1999) .................................................................................................. 3, 6

**Other Authorities**

Fed. Rule Evid. 702 .......................................................................................................... 1, 5, 8, 9

# INTRODUCTION

Plaintiff designated Dr. Marc Braunstein as a specific causation expert. But Dr. Braunstein's opinion does not satisfy the standard under Rule 702 this Court imposed in Pre-Trial Order 85 ("PTO 85"). Dr. Braunstein's opinions fall woefully short of the standard established by the first round of experts, who this Court bluntly described to have "barely inched over the line" in opining that Roundup®-branded products ("Roundup") specifically caused the first wave of plaintiffs' non-Hodgkin's lymphoma ("NHL").

Although Dr. Braunstein *says* that he performed a differential diagnosis in this case, he really did not do so. For one thing, he did not rule out Plaintiff's gender and ethnicity, even though he said those are risk factors. For another, he merely paid lip service to "ruling out" other known alternate causes of NHL. For example, Dr. Braunstein purported to "rule out" Plaintiff's weight as a potential cause because—according to Dr. Braunstein—Plaintiff did not technically meet the definition of "obese." But Dr. Braunstein also admitted that even "borderline obese" people have an increased risk of NHL, and Dr. Braunstein admitted that Plaintiff *was*, at times, obese. Dr. Braunstein purported to "rule out" benzene exposure as a potential cause of Plaintiff's NHL because another Plaintiff's expert, Dr. Sawyer, said Plaintiff was not exposed to enough benzene. But Dr. Braunstein admitted that he knew Plaintiff was exposed to benzene every working day of his life for over 30 years—and despite this Dr. Braunstein never bothered to take benzene into account as a potential cause.

Finally, Dr. Braunstein never considered, and therefore never ruled out, idiopathic causes, even though this Court in the past has been clear that the failure to do so renders an expert's opinion unreliable.

For these and the reasons that follow, this Court should exclude Dr. Braunstein's opinions.

# BACKGROUND

**I.     Plaintiff Disclosed Dr. Braunstein As A Specific Causation Expert.**

Dr. Braunstein is an oncologist and hematologist. Hsu Decl., Ex. A, Braunstein Dep. (*Thomas*) at 32:23-24. In clinical practice, Dr. Braunstein has *never* told any patient that Roundup caused his or her NHL. *Id.* at 42:4-12. Nonetheless, he reaches the conclusion in this case that Roundup caused Plaintiff's NHL, despite the fact that Dr. Braunstein has never even met Plaintiff.

Hsu Decl., Ex. B, Braunstein Dep. (*Caccia*) at 24:6-12.

Moreover, before getting involved as a paid expert here, Dr. Braunstein had no knowledge of any possible link between glyphosate and NHL. Hsu Decl., Ex. A, Braunstein Dep. (*Thomas*) at 50:4-8 ("Q. Other than the reading that you've done for this case, do you have any experience, education, or expertise in the carcinogenicity of glyphosate or Roundup?  A. No, sir."); *see also id* at 120:15-121:9.  And Dr. Braunstein has previously testified that "the literature is not definitive on" whether "glyphosate causes non-Hodgkin's lymphoma" and reasonable scientific minds "do" differ on that question.  *Id.* at 180:2-24; 181:19-23.

## II. Plaintiff Has Multiple Risk Factors Associated With NHL.

As Monsanto explained at length in its prior motion to exclude specific causation experts (MDL ECF No. 2420), "non-Hodgkin's lymphoma" is an umbrella term used to describe more than sixty different sub-types of cancer involving lymphocytes, more commonly known as white blood cells.  The various sub-types have different clinical and prognostic characteristics and may also have different risk factors and causes.  However, in the vast majority of all NHL cases, the cause is unknown.

Plaintiff has been diagnosed with DLCBL, a subtype of NHL.  Hsu Decl., Ex. C, Braunstein Report at 4.  Plaintiff alleges that his DLCBL was caused by exposure to Roundup.  *Id*.

At his deposition, Dr. Braunstein confirmed that the following traits are known risk factors for NHL.

- Male gender.  Hsu Decl., Ex. B, Braunstein Dep. (*Caccia*) at 40:20-22 (Dr. Braunstein confirming that "males have a higher risk of developing NHL").
- Caucasian ethnicity.  *Id*. at 40:23-41:1.
- Obesity.  *Id*. at 42:1-8.
- Diabetes.  *Id*. at. 42:9-16.
- Benzene exposure.  *Id*. at 42:17-24.

Dr. Braunstein further confirmed at his deposition that Plaintiff is a Caucasian male.  *Id*. at 43:5-7.  And Dr. Braunstein agreed that Plaintiff's "BMI at times has been over 30" which is "considered obese."  *Id*. at 43:8-15.

As for benzene exposure, Dr. Braunstein agreed that Plaintiff owned a landscaping business for more than 30 years and that Plaintiff was exposed to benzene every working day because Plaintiff's job required him to use gasoline or diesel fueled equipment (and those fuels contain benzene). *Id*. at 48:20-49:11.

Dr. Braunstein also agreed that although Plaintiff was never officially diagnosed with diabetes, Plaintiff did have "impaired fasting glucose" which is a criterion associated with diabetes and which Dr. Braunstein agreed could "cause inflammation of the body." *Id*. at 44:9-45:11.

### III. Dr. Braunstein Purports To Use A Differential Etiology In Forming His Specific Causation Opinions But Does Not Rule Out Five Known Risk Factors.

Like other specific causation experts previously assessed in this MDL, Dr. Braunstein purports to reach his specific causation opinions by concluding *first* that there is a proven link between Roundup use and NHL[1], and then *second* by purporting to exclude (or rule out) any other potential causes of Mr. Caccia's NHL. Hsu Decl., Ex. B, Braunstein Dep. (*Caccia*) at 34:13-18.

"[D]ifferential diagnosis," is a term courts use to describe the "scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999)). This process requires an expert to first "rule in" all potential causes—*i.e.*, "to compile a comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration." *Id.* The expert must then "rule out" the possible causes using a scientific method until only the "most likely cause" remains. *Id.*

Here, Dr. Braunstein did not rule out Plaintiff's gender and ethnicity, even though he wrote in his report that those are "[r]ecognized risk factors" for NHL. Hsu Decl., Ex. C, Braunstein Report at 8.

Dr. Braunstein's written report purports to rule out Plaintiff's weight, but does not actually do so. Dr. Braunstein wrote in his report that Plaintiff is only "borderline obese, indicated by a BMI of 30." Hsu Decl. Ex. C, Braunstein Report at 9. So, because Plaintiff does not meet the technical

---

[1] Although the focus of this motion is that Dr. Braunstein did not rule out known causes of Plaintiff's NHL (or, indeed, did not even attempt to rule out known causes at all), Monsanto does not concede that Dr. Braunstein reliably ruled in Roundup as a cause, either.

3
MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. BRAUNSTEIN

definition of obese, Dr. Braunstein purported to rule out Plaintiff's weight as a factor. *Id*. But at his deposition, Dr. Braunstein admitted that Plaintiff has had a BMI *over* 30 at times. Hsu Decl. Ex. B, Braunstein Dep. (*Caccia*) at 43:8-11. And, moreover, Dr. Braunstein admitted that there is nothing magical about a BMI over 30 from the standpoint of cancer risk—he testified that even people who are simply "overweight" with a BMI of "between 25 and 30 demonstrated a 7 percent greater risk of NHL" than those of normal weight. *Id*. at 36:14-22. Dr. Braunstein's purported differential diagnosis never actually ruled out plaintiff's weight because Dr. Braunstein never considered the increased risk of cancer from a BMI of between 25 and 30, and Dr. Braunstein never accounted for the fact that at times Plaintiff's BMI actually exceeded 30.

Dr. Braunstein's report never even addresses Plaintiff's 30 years of occupational benzene exposure, and Dr. Braunstein admitted that he "didn't consider [Plaintiff's benzene exposure as] a risk factor" in his analysis. Hsu Decl. Ex. B, Braunstein Dep. (*Caccia*) at 49:12-13. At deposition, Dr. Braunstein attempted to explain away this failure by passing the buck—he explained that Plaintiff's other expert, Dr. Sawyer, did not think Plaintiff's daily workday usage of benzene-containing fuels was a "significant exposure." *Id*. at 49:17-20. Dr. Braunstein confirmed that he himself did not "calculate an exposure analysis for [Plaintiff's] exposure to benzine." *Id*. at 50:11-13. He just took Dr. Sawyer at his word and on the basis of Dr. Sawyer's word, purported to "rule out" benzene.

Dr. Braunstein's report similarly never addresses Plaintiff's blood sugar. Dr. Braunstein admits that diabetes is a risk factor for NHL, but (similar to Plaintiff's weight) did not bother to take Plaintiff's blood sugar into account because Plaintiff does not technically meet the definition of a diabetic. Nonetheless, Dr. Braunstein admitted that Plaintiff has "impaired fasting glucose"—which is one of two criteria for a diagnosis of diabetes. *Id*. at 44:21-45:5. And he agreed that "if there were literature pertinent to [Plaintiff] that his degree of impaired fasting glucose could be associated with inflammation that leads to NHL" that would be "relevant to [his] opinions in this case." Id. at 45:22-46:5. But Dr. Braunstein did not attempt to make that determination.

Moreover, Dr. Braunstein ignored altogether the possibility that Plaintiff's NHL may have no known cause, as would be the case where NHL is caused by a yet-to-be-discovered factor or by the

4
MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. BRAUNSTEIN

1  random mutations that inevitably occur in the process of normal cell division. Dr. Braunstein
2  specifically admitted that he did not rule out "random or sporadic genetic mutations" as a potential
3  cause of Plaintiff's NHL. *Id*. at 66:4-7. Put another way, Dr. Braunstein did not rule out idiopathy
4  as a potential cause of Plaintiff's NHL. He did not rule out idiopathy even though he testified at his
5  deposition that "most of the time, we do not know what the cause [of NHL] is." *Id*. at 66:21-22.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert may give opinion testimony only if (a) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In other words, an expert must be qualified and must offer testimony that is both relevant and reliable. *Id*.; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

In the specific causation context, Rule 702 requires experts purporting to use a differential diagnosis to carry out both aspects of that methodology—"ruling in" all possible causes and "ruling out" all but the subject cause—in a reliable fashion. To reach an admissible causation opinion through a reliable differential diagnosis, an expert must "accurately diagnose the nature of the disease, reliably rule in the possible causes of it, and reliably rule out the rejected causes." *In re Aredia & Zometa Prod. Liab. Litig.*, 483 F. App'x 182, 188 (6th Cir. 2012). Because the inherent malleability of this methodology can shroud what may be little more than subjective guesswork, the district court must "delve into the particular witness's method of performing a differential diagnosis to determine if his or her ultimate conclusions are reliable." *Poust v. Huntleigh Healthcare*, 998 F. Supp. 478, 496 (D.N.J. 1998). Courts have consistently held that expert opinions that pay lip service to this methodology but do not reliably apply it should be excluded. *See, e.g.*, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 892 F.3d 624, 642–45 (4th Cir. 2018). And if Plaintiff fails to present an admissible expert opinion to establish specific causation, summary judgment is appropriate. *In re Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956, 957 (N.D. Cal. 2019) ("To defeat Monsanto's motion for summary judgment on this issue, the plaintiffs must present

at least one admissible expert opinion to support [his] specific causation argument.").

## ARGUMENT

**I.   Dr. Braunstein Failed To Consider And Rule Out Known Alternative Causes Of Plaintiff's NHL.**

Dr. Braunstein failed entirely to address, and rule out the numerous potential causes of Mr. Caccia's NHL other than Roundup, which is required for his opinions to be admissible. *See Clausen*, 339 F.3d at 1058 ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.") (quoting *Westberry*, 178 F.3d at 265); *see also* PTO 85 ("The next question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL, and properly ruled out factors other than glyphosate, while at the same time declining to rule out glyphosate itself."). The first step in a differential diagnosis is to "compile a comprehensive list of hypotheses that might explain" the plaintiff's injury. *See Clausen*, 339 F.3d at 1058. The Ninth Circuit instructs experts to "[i]nclud[e] even rare entities in the list [to] ensure[] that such disorders are not overlooked." *Id.* (citation and quotation marks omitted). Then, in the second step of a differential diagnosis, the expert must "rule out" each of the possible causes until only the most likely cause remains.

Dr. Braunstein did not follow this methodology. Initially, Dr. Braunstein did not bother at all to rule out Plaintiff's gender and ethnicity—despite acknowledging that each of these are "[r]ecognized risk factors" for NHL. Hsu Decl., Ex. C, Braunstein Report at 8. *See, e.g.*, *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, No. 14 C 1748, 2017 WL 1833173, at *22 (N.D. Ill. May 8, 2017) (holding that a differential diagnosis was inadequate, and excluding the expert, where the expert identified "gender" and "family history" as known risk factors of cardiovascular disease but failed to rule them out as potential causes of the plaintiff's heart attack).

And Dr. Braunstein merely paid lip service to other known potential risk factors. For example, Dr. Braunstein purported to "rule out" Plaintiff's weight as a potential cause, but did not actually do so. Dr. Braunstein narrowly focused on the technical definition of "obesity" as a BMI of 30 or above and then excluded weight as a potential cause of Plaintiff's NHL because Plaintiff's BMI was 30—

1  because Plaintiff was not technically "obese," Dr. Braunstein discounted weight altogether as a potential cause. Hsu Decl. Ex. C, Braunstein Report at 9 ("ruling out" weight as a factor because Plaintiff is only "borderline obese, indicated by a BMI of 30"). But Dr. Braunstein admitted at his deposition that even people with BMIs *lower than 30 are still at an increased risk of NHL*. Hsu Decl. Ex. B, Braunstein Dep. (*Caccia*) at 36:14-22. And, Dr. Braunstein admitted that at times Plaintiff's BMI was *above* 30. *Id*. at 43:8-11. Dr. Braunstein never explained why he did not take Plaintiff's weight into account given these concessions.

Similarly, Dr. Braunstein purported at his deposition to have excluded Plaintiff's 30 years of occupational benzene exposure by passing the buck to Dr. Sawyer. Dr. Braunstein simply took Dr. Sawyer at his word that Plaintiff's exposure was insufficient to be an alternate cause of NHL, even though Dr. Braunstein admitted at his deposition that "*if he was exposed over 30-plus years to benzine, that that could have contributed*." *Id*. at 54:13-18 (emphasis added). But Plaintiff *was* exposed to benzene every day over "30 plus years," and Dr. Braunstein knew that. *Id*. at 48:20- ("Q. Okay. Are you aware that [Plaintiff] testified that he was exposed to gasoline or diesel fuel every day as part of his work ….? A. Yes, I'm aware.").

Dr. Braunstein similarly never really ruled out Plaintiff's blood sugar. Dr. Braunstein admits that diabetes is a risk factor for NHL, but did not bother to take Plaintiff's blood sugar into account because Plaintiff does not technically meet the definition of a diabetic. Nonetheless, Dr. Braunstein admitted that Plaintiff has "impaired fasting glucose"—which is one of two criteria for a diagnosis of diabetes. *Id*. at 44:21-45:5. And he agreed that "if there were literature pertinent to [Plaintiff] that his degree of impaired fasting glucose could be associated with inflammation that leads to NHL" that would be "relevant to [his] opinions in this case." *Id*. at 45:22-46:5. But Dr. Braunstein did not even attempt to make that determination.

So, although Dr. Braunstein *says* that he "ruled out" Plaintiff's weight, benzene exposure, and blood sugar as alternative causes, he did not actually do so. And "simply calling an analysis a differential diagnosis doesn't make it so." *Lipitor*, 892 F.3d at 643; *see also McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1253 (11th Cir. 2005) ("[A]n expert does not establish the reliability of his techniques or the validity of his conclusions simply by claiming that he performed a differential

diagnosis on a patient.").

Moreover, an expert conducting a differential diagnosis "must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'" *Clausen*, 339 F.3d at 1058 (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)). Dr. Braunstein did not do so, nor did he even attempt to do so. These facts strongly suggest that Dr. Braunstein did not seriously consider that something other than Roundup could have caused Plaintiff's NHL. Instead, he started and ended with the opinion that Roundup was the cause. Dr. Braunstein's results-driven "always Roundup" methodology is precisely the type of unreliable approach that Rule 702 prohibits.

Indeed, taken as a whole, Dr. Braunstein's reasoning closely tracks that of the experts excluded in *Lipitor*, whose conclusions "focused almost exclusively on the fact that [the plaintiff] took the drug and later developed the disease, rather than explaining what led her to believe that it was a substantial contributing factor as compared to other possible causes." 892 F.3d at 645. Here, as in *Lipitor*, Dr. Braunstein "dismiss[ed] other possible causes in favor of [Roundup] in a cursory fashion that appeared closer to an *ipse dixit* than a reasoned scientific analysis." *Id.* The Court should exclude Dr. Braunstein's opinion on that basis.

**II.    Dr. Braunstein Failed to Reliably Rule Out Unknown Causes Of Plaintiff's NHL, Instead Concluding That Roundup *Must* Have Been the Cause.**

Dr. Braunstein also failed to consider and rule out potential idiopathic causes of Plaintiff's NHL. This Court has already acknowledged that because the vast majority of NHL cases have no identifiable cause, an expert's specific causation opinion is inadmissible if it fails to account for or adequately grapple with idiopathy. *See* PTO 85 at 6. To be admissible "***an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless***." *Id.* (emphasis added); *see also Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1163 (E.D. Wash. 2009) (excluding an expert for "fail[ing] to adequately account for the possibility that [the plaintiff's disease] was idiopathic").

Dr. Braunstein's analysis does not meet this standard. He is unable to offer any reliable

method for placing Plaintiff in one category and not the other, and thus any testimony from Dr. Braunstein cannot possibly be helpful to a jury tasked with that very assessment. He did not rule out idiopathy even though he agreed at his deposition that "most of the time, we do not know what the cause [of NHL] is." Hsu Decl., Ex. B, Braunstein Dep. (*Caccia*) at 66:21-22. Dr. Braunstein's report does not even consider idiopathy—indeed, it does not even contain the word "idiopathy."

Ultimately, Dr. Braunstein engages in an "always Roundup" methodology that determines Roundup to be the cause no matter the exposure. But, as this Court made clear in discussing idiopathy, exposure alone is not enough.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Plaintiff's specific causation expert, Dr. Braunstein, on Rule 702 and *Daubert* grounds.

Dated:  December 13, 2023                    Respectfully submitted,

*/s/ Linda C. Hsu*
Attorney for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of December, 2023 a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Linda C. Hsu*
Linda C. Hsu