1
2
3
4
5
6
7
8
9
10
11
12
13

**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843 | Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 | Fax: 310 -576-2200

14
15

*Attorneys for Defendant Monsanto Company*

16
17

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

18
19
20
21
22
23
24
25
26
27
28

IN RE: ROUNDUP PRODUCTS
LIABILITY LITIGATION

_____

*Brett Beckfield v. Monsanto Company*,
3:21-cv-05322-VC

MDL No. 2741

Case No.: 3:16-md-02741-VC

**DEFENDANT MONSANTO COMPANY'S
NOTICE OF MOTION AND MOTION TO
EXCLUDE TESTIMONY OF DR. KEVIN
KNOPF**

Hearing:
Date:   March 1, 2024
Time:   10:00 a.m.
Place:  San Francisco Courthouse,
        Courtroom 4 – 17th Floor

1    **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2           **PLEASE TAKE NOTICE THAT** on March 1, 2024 at 10:00 a.m. in Courtroom 4 of

3    the United States District Court, Northern District of California, located at 450 Golden Gate

4    Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company

5    ("Monsanto") will present its Motion to Exclude Testimony of Dr. Kevin Knopf.  Monsanto

6    seeks an order excluding opinions of this witness under Federal Rule of Evidence 702.

7

8    Dated:  December 13, 2023                    Respectfully submitted,

9                                                **BRYAN CAVE LEIGHTON PAISNER LLP**

10

11                                               */s/ Linda C. Hsu*
                                                 Linda C. Hsu
12                                               Attorneys for Defendant Monsanto Company

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  Introduction ................................................................................................................1

II.  Background ...............................................................................................................1

III.  Legal Standard .........................................................................................................3

IV.  Argument ..................................................................................................................4

  A.  Dr. Knopf fails to reliably "rule in" Roundup as a potential cause of Plaintiff's MCL. ...............................................................................................5

    1.  Dr. Knopf has not quantified Plaintiff's Roundup exposure. ..................5

    2.  Dr. Knopf uncritically accepts Plaintiff's general causation experts' opinions. ..................................................................................................7

    3.  Dr. Knopf's opinion is not sufficiently specific to mantle-cell lymphoma. ................................................................................................7

  B.  Dr. Knopf fails to reliably "rule out" other potential alternative causes of Plaintiff's MCL. ....................................................................................8

    1.  Dr. Knopf failed to consider Mr. Beckfield's exposure to other pesticides and herbicides. .......................................................................9

    2.  Dr. Knopf failed to provide a scientifically-valid reason to rule out those potential causes he did identify. ....................................................9

    3.  Dr. Knopf fails to reliably rule out natural cell replication errors. .........10

V.  Conclusion ..............................................................................................................12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Pa. Eng'g Corp.*,
  102 F.3d 194 (5th Cir. 1996) ...................................................................................8

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002)......................................................................................7

*Borg-Warner Corp. v. Flores*,
  232 S.W.3d 765 (Tex. 2007)......................................................................................6

*Burleson v. Tex. Dep't of Crim. Just.*,
  393 F.3d 577 (5th Cir. 2004) ...................................................................................7

*Burst v. Shell Oil Co.*,
  C.A. No. 14-109, 2015 WL 3755953 (E.D. La. June 16, 2015)...........................................8

*Clausen v. M/V NEW CARISSA*,
  339 F.3d 1049 (9th Cir. 2003) ...............................................................................3, 4, 5, 8

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007) ...................................................................................4

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993).....................................................................................................4, 8

*G v. Fay Sch., Inc.*,
  282 F. Supp. 3d 381 (D. Mass. 2017) ........................................................................11

*Glasetter v. Novartis Pharm. Corp.*,
  252 F.3d 986 (8th Cir. 2001) ...................................................................................4, 5

*Hall v. Baxter Healthcare Corp.*,
  947 F. Supp. 1387 (D. Or. 1996) ...............................................................................5

*Hall v. Conoco Inc.*,
  886 F.3d 1308 (10th Cir. 2018) ................................................................................11

*In re Lipitor Mktg., Sales Practices & Prods. Liab. Litig.*,
  892 F.3d 624 (4th Cir. 2018) ...............................................................................1, 8, 11

*Luttrell v. Novartis Pharms. Corp.*,
  894 F.Supp.2d 1324 (E.D. Wash. 2012), *aff'd*, 555 Fed. Appx. 710 (9th Cir. 2014)............4

*McClain v. Metabolife Int'l, Inc.*,
  401 F.3d 1233 (11th Cir. 2005) ................................................................................5

*Pluck v. BP Oil Pipeline Co.*,
    640 F.3d 671 (6th Cir. 2011) ................................................................................................6

*Poust v. Huntleigh Healthcare*,
    998 F. Supp. 478 (D.N.J. 1998) ...........................................................................................4

*Pritchard v. Dow Agro Sciences*,
    705 F. Supp. 2d 471 (W.D. Pa. 2010), *aff'd*, 430 Fed. App'x 102 (3rd Cir. 2011) .............11

*Westberry v. Gislaved Gummi AB*,
    178 F.3d 257 (4th Cir. 1999) ................................................................................................8

*White v. Ford Motor Co.*,
    312 F.3d 998 (9th Cir. 2002) ................................................................................................4

**Other Authorities**

Fed. R. Evid. 702 ...................................................................................................4, 10

## I.   <u>INTRODUCTION</u>

Plaintiff Brett Beckfield alleges his exposure to Roundup caused him to develop mantle cell lymphoma ("MCL"), a subtype of Non-Hodgkin's Lymphoma ("NHL").  Mr. Beckfield designated Dr. Kevin Knopf, a clinical oncologist, to opine on specific causation—specifically whether Roundup or its active ingredient, glyphosate, was a substantial factor contributing to Mr. Beckfield's development of MCL.  Ex. A, Plaintiff's Rule 26 Specific Causation Expert Disclosures, at 3–4.

Dr. Knopf's specific causation opinion is inadmissible because it is not the product of a reliable methodology.  Dr. Knopf fails to account for Mr. Beckfield's actual disease, MCL, which has distinct causes and risk factors compared to other NHL subtypes.  Dr. Knopf also fails to reliably consider and rule out potential alternative causes of Mr. Beckfield's cancer, including naturally occurring random mutations, which are widely believed to account for approximately 95% of NHL cases.  This latter failure is even more striking because Dr. Knopf acknowledges that these alternative factors *could* account for Mr. Beckfield's MCL.  Yet he excludes them without serious investigation based solely on the fact that Mr. Beckfield was exposed to Roundup.  Dr. Knopf lacks a reliable basis for his conclusion that Roundup is the most likely cause of Mr. Beckfield's MCL.

Dr. Knopf's "always Roundup" opinion is precisely the type courts reject as pure *ipse dixit*.  *See, e.g., In re Lipitor Mktg., Sales Practices & Prods. Liab. Litig.*, 892 F.3d 624, 644–45 (4th Cir. 2018) (affirming exclusion of specific causation expert who "appeared to simply conclude that 'so long as the patient took Lipitor and developed diabetes, then Lipitor was a substantial contributing factor'").  His opinions do not meet the Federal Rules of Evidence's admissibility standards and should be excluded.

## II.   <u>BACKGROUND</u>

According to Plaintiff's Specific Causation Expert Disclosures, if allowed:

Dr. Knopf will testify on issues of specific causation regarding whether exposure to glyphosate and/or glyphosate-based formulated products was a substantial factor contributing to Plaintiff developing non-Hodgkin's lymphoma, specifically Mantle Cell lymphoma.  Dr. Knopf's opinions will encompass the areas of

oncology and hematology, genotoxicity and epidemiology.  Plaintiffs hereby incorporate by reference, Dr. Knopf's expert report.

Dr. Knopf's hourly rate is $500.  Dr. Knopf has not been deposed with respect to his specific causation opinions being offered in this case.  A copy of Dr. Knopf's curriculum vitae, fee schedule and list of cases in which he has testified will be provided to counsel electronically.

Ex. A, Plaintiff's Rule 26 Disclosures, at 3–4.

Dr. Knopf is a hematologist and oncologist. Ex. B, Knopf Rpt., at 1. Dr. Knopf has been designated as an expert in multiple Roundup cases across the country.  Ex. C, 8/5/22 Knopf Dep. at 13:22–14:11; Ex. D, 10/25/22 Knopf Dep. at 96:23–97:25 (identifying other Roundup cases where Dr. Knopf has testified); Ex. E, 1/20/23 Knopf Dep. at 266:17–21 (stating he is currently working on "about 12" other Roundup cases).  Before being retained in these cases, Dr. Knopf had never conducted scientific research or published peer-reviewed articles relating to Roundup, glyphosate, or any other herbicide or pesticide.  Ex. D, 10/25/22 Knopf Dep., at 32:19–33:9.  He has never presented on Roundup and NHL.  *Id.* at 33:10–17. In clinical practice, Dr. Knopf does not consider or ask about his patients' Roundup use.  *Id.* at 18:14–20 (stating that he has not "asked his patients per se if they use Roundup" since he began working on this litigation), 18:21–19:8 (stating that he cannot recall discussing Roundup as a cause of lymphoma with patients).  Nonetheless, he reaches the conclusion that Roundup was the cause of Mr. Beckfield's MCL.

"Non-Hodgkin's lymphoma" is an umbrella term that describes many different subtypes of cancer involving the lymphocytes, a type of white blood cell.  The different subtypes of NHL can have different presentation, treatments, etiologies, and risk factors.  Ex. B, Knopf Rpt. at 7.  As Dr. Knopf acknowledges, different subtypes of NHL result from different genetic mutations that happen at different phases of lymphoma growth.  *Id.*  In 2019, Mr. Beckfield was diagnosed with MCL, a rare subtype of NHL.  *Id.* at 3; Ex. D, 10/25/22 Knopf Dep. at 71:17–72:5.  According to Dr. Knopf, MCL represents only approximately 3% of NHL cases.  Ex. D, 10/25/22 Knopf Dep. at 10:23–24; Ex. B, Knopf Rpt. at 7.

Dr. Knopf purports to engage in a differential diagnosis (also known as a "differential etiology") in reaching his specific causation opinion, which ordinarily requires an expert to

determine possible causes of a plaintiff's injury and then eliminating, or "ruling out," potential

causes to reach the most likely cause.  *See Clausen v. M/V NEW CARISSA*, 339 F.3d 1049,

1057 (9th Cir. 2003) (citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir.

1999)).

The analysis Dr. Knopf performed, however, is fundamentally different from any

differential diagnosis that courts have admitted as a reliable specific causation analysis.  In

contrast to an accepted differential diagnosis, Dr. Knopf lacks a reliable basis to "rule in"

Roundup and fails to reckon with the other possible causes of Plaintiff's MCL in a non-

conclusory manner.  He did not speak with Mr. Beckfield or his doctors in reaching his

conclusions.  Ex. D, 10/25/22 Knopf Dep., at 89:23–90:10 ("I did not interview him directly

nor speak to his physicians.").  Dr. Knopf concludes that Roundup is the most likely cause of

Plaintiff's MCL by blindly relying on the same flawed studies the general causation experts

rely on and information from Plaintiff's counsel.

After "ruling in" Roundup based on this flawed and conclusory reasoning, Dr. Knopf

then applies a results-oriented approach, which largely ignores other known NHL risk factors,

despite his acknowledgement of other potential causes of NHL.  Rather than analyzing which

of these risk factors is the most likely cause using scientific principles, Dr. Knopf rules out

every other possible cause of Plaintiff's MCL based solely on the fact that he was exposed to

Roundup.  Ex. B, Knopf Rpt., at 13–14.  As Dr. Knopf attempted to explain during his

deposition, after considering other factors, he simply concluded that Roundup was a

"substantial factor"—a descriptor he could not quantify—in causing Mr. Beckfield's NHL

without any other scientific analysis.  Ex. D, 10/25/22 Knopf Dep., at 118:9–119:17.  By Dr.

Knopf's logic, if a person is exposed to Roundup, that fact alone automatically excludes the

possibility of any other alternative cause.  This is not science and does not constitute an

admissible specific causation methodology under Ninth Circuit law.

## III.   LEGAL STANDARD

A proposed expert witness must possess "knowledge, skill, experience, training, or

education" sufficient to qualify him as an expert on the subject to which his testimony relates.

Fed. R. Evid. 702.  When an expert's field of expertise is not related to the subject on which he

seeks to offer testimony, such testimony is inadmissible.  *See White v. Ford Motor Co.*, 312

F.3d 998, 1008–09 (9th Cir. 2002).  Apart from qualifications, expert testimony must be

(1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and

(3) the result of applying those principles and methods reliably to the facts of the case.  Fed. R.

Evid. 702.  The trial judge is charged with the responsibility of acting as a gatekeeper to

"ensure that any and all scientific testimony…is not only relevant, but reliable."  *Daubert v.*

*Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  The proponent of the expert bears the

burden of proving that the expert's proffered testimony is admissible.  *See, e.g.*, *Cooper v.*

*Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

## IV.  <u>ARGUMENT</u>

Dr. Knopf's specific causation opinion is inadmissible because it is based on a results-

oriented analysis, not a reliable or principled differential diagnosis.  While a differential

diagnosis may be admissible methodology for determining the most likely cause of a

plaintiff's disease, courts exclude the opinions of experts who, like Knopf here, perform

"diagnoses that are scientifically invalid."  *Glasetter v. Novartis Pharm. Corp.*, 252 F.3d 986,

989 (8th Cir. 2001).  In the first step of a differential diagnosis, a physician compiles "a

comprehensive list" of potential causes of the plaintiff's injury (often referred to as "ruling

in").  *Clausen*, 339 F.3d at 1058.  The physician then engages "in a process of elimination,

eliminating hypotheses on the basis of a continuing examination of the evidence so as to reach

a conclusion as to the most likely cause" of the plaintiff's injury (often referred to as "ruling

out").  *Id.*

Trial courts must "delve into the particular witness's method of performing a

differential diagnosis to determine if his or her ultimate conclusions are reliable."  *Poust v.*

*Huntleigh Healthcare,* 998 F. Supp. 478, 496 (D.N.J. 1998).  For a differential diagnosis to be

reliable, "the expert must explain why alternative hypotheses as to causation are ruled out

using scientific methods and procedures.  *Luttrell v. Novartis Pharms. Corp.*, 894 F.Supp.2d

1324, 1338 (E.D. Wash. 2012), *aff'd*, 555 Fed. Appx. 710 (9th Cir. 2014).

Dr. Knopf did not perform a reliable differential diagnosis, and thus lacks a reliable basis for his conclusion that Roundup was a significant factor in causing Plaintiff's MCL.  He lacks a reliable basis to rule in Roundup and pays only lip service to alternative causes of Plaintiff's MCL before quickly dismissing them without applying any reasoning to rule them out.  He also does not consider whether Plaintiff's MCL might have been due to random replicative errors, which is by far the most common cause of all NHL diagnoses.  This scientifically invalid "methodology" dictates that Dr. Knopf's testimony must be excluded.

### A.    Dr. Knopf fails to reliably "rule in" Roundup as a potential cause of Plaintiff's MCL.

Dr. Knopf has no reliable basis to "rule in" Roundup exposure as a potential cause of Plaintiff's MCL, making his testimony inadmissible.  *Clausen*, 339 F.3d at 1057–58.  "[B]efore a competing cause should be considered relevant to a differential diagnosis, there must be adequate evidence that it *is* a cause of the disease."  National Research Council, Reference Manual on Scientific Evidence (3d ed. 2011) at 618 n.213 (citations omitted).  Put differently, the first step in a differential diagnosis is about general causation—a possible cause can only be ruled in if it is "actually…capable of causing the injury."  *Hall v. Baxter Healthcare Corp.,* 947 F. Supp. 1387, 1413 (D. Or. 1996) (quotation and emphasis omitted).  "[T]estimony that rules in a potential cause that is *not* so capable is unreliable."  *Clausen,* 339 F.3d at 1058 (citation omitted); *Glastetter*, 252 F.3d at 989 (affirming district court's exclusion of plaintiff's expert witness because data witness relied upon "[did] not demonstrate to an acceptable degree of medical certainty" that the product caused plaintiff's injury, and therefore the witness "lacked the proper basis for 'ruling in'" the product as a potential cause of plaintiff's injury).

### 1.    Dr. Knopf has not quantified Plaintiff's Roundup exposure.

Courts from around the country have ruled that assessing the amount of a substance actually absorbed into the body is critical when performing a specific causation analysis.  *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005) ("Dose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific

adverse effect."); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671 (6th Cir. 2011) (excluding an expert for failing to reliably rule in benzene exposure as a possible cause because the expert "formulated his opinion on dose without any exposure data, only having been told that [Pluck] had been 'heavily' exposed to benzene in her water"); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 770-73 (Tex. 2007) (discussing importance of dose on causation inquiry and reversing judgment in plaintiff's favor following jury trial where plaintiff did not establish sufficient dose to cause alleged injuries).

Dr. Knopf cannot reliably rule in glyphosate as a cause of Plaintiff's MCL because he has no quantitative understanding of Plaintiff's absorbed dose of glyphosate, *i.e.*, the amount of glyphosate to which Plaintiff was exposed that was actually absorbed into his skin.  He asserts "Mr. Beckfield has a very significant exposure to Roundup® as documented elsewhere…"  Ex. B, Knopf Rpt., at 14.  But Dr. Knopf made no attempt to quantify that exposure.  Ex. D, 10/25/22 Knopf Dep., at 50:14–19.  Nor is he relying on any other expert for that quantification.  *Id.* at 50:20–51:7.  Dr. Knopf does not know what dose of Roundup or glyphosate is necessary to cause NHL in humans.  *Id.* at 51:8–25.  He does not know what percentage of Roundup or glyphosate is absorbed through human skin.  *Id.* at 52:1–7 ("I would really have to look that up.").  He does not know whether the concentration of glyphosate in Roundup affects absorption.  *Id.* at 52:8–18 ("Well, since I'm under oath, I can't give you an exact answer.").  He does not even know if washing up after using glyphosate increases or decreases dermal absorption.  *Id.* at 53:2–6.  Moreover, Dr. Knopf admits that determining Plaintiff's systemic dose of Roundup requires a "multifactorial answer," including the percentage of glyphosate absorbed through the skin, the amount of Roundup he was exposed to, the period of time, the surface area of exposure, and the concentration of Roundup.  *Id.* at 53:7–23.  Dr. Knopf did not perform any calculations of those factors.  *Id.* at 53:23.

The only exposure-related information Dr. Knopf does rely on is the expert report of Dr. Vogel.  *Id.* at 53:23–25.  Dr. Vogel calculated that Plaintiff had 525 days of exposure, but did not perform any calculations concerning "the amount of Roundup contacting the skin, the

1  surface area, the rate of absorption, or the systemic dose." *Id.* at 53:23–54:13.  This lack of

2  reliable calculations is unreliable.

3            **2.      Dr. Knopf uncritically accepts Plaintiff's general causation experts'**

4            **opinions.**

5            Dr. Knopf further lacks a reliable basis to conclude that Roundup is capable of causing

6  MCL.  Dr. Knopf relies only on Plaintiff's general causation experts' opinions, which are

7  unreliable for the reasons explained in Monsanto's motion to exclude Plaintiff's general

8  causation experts. *See, e.g.*, Ex. D, 10/25/22 Knopf Dep. at 46:1–2 ("I'm not here as a general

9  causation expert."); *id.* at 48:15–16 ("I'm not an expert on general causality."); *see generally*

10  Monsanto's Motion to Exclude General Causation Experts.  For the reasons explained in

11  Monsanto's motion to exclude Plaintiffs' general causation experts, and incorporated here by

12  reference, Dr. Knopf lacks a sufficient basis to conclude that Roundup is capable of causing

13  NHL, and thus he lacks grounds to "rule in" Roundup at the first step of his analysis.

14            **3.      Dr. Knopf's opinion is not sufficiently specific to mantle-cell**

15            **lymphoma.**

16            Dr. Knopf's "ruling in" of Roundup is unreliable because he fails to account for Mr.

17  Beckfield's actual disease, MCL.  Dr. Knopf relies exclusively on generic studies about NHL,

18  not specific studies about MCL, despite acknowledging that different subtypes of NHL can

19  have different etiologies and risk factors and that MCL is rare.  Ex. B, Knopf Rpt., at 6

20  ("[MCL] is a rarer subtype of B cell NHL representing 3% of all B-cell NHL.").  Dr. Knopf

21  did not rely on any studies that show a relationship between Roundup and MCL specifically,

22  and he stated that he had to "impute" causation "in proportion to the frequency of non-

23  Hodgkin's lymphomas" because MCL is a "less common subtype."  Ex. C, 8/5/22 Knopf Dep.

24  at 115:8–20.  Dr. Knopf's failure to account for Mr. Beckfield's specific disease is grounds for

25  exclusion.  *See, e.g., Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 585-86 (5th Cir.

26  2004) (affirming exclusion of expert where "there are no epidemiological studies supporting a

27  correlation between the suggested causative agent and the type of cancer experienced by the

28  plaintiff"); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 270 (2d Cir. 2002)

1   (affirming exclusion of expert who relied on articles connecting solvent exposure to

2   "symmetrical polyneuropathy only, not . . . the asymmetrical symptoms of which [plaintiff]

3   complained"); *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 197 (5th Cir. 1996) (holding that

4   evidence suggesting a connection between ethylene oxide and lymphatic and hematopoietic

5   cancers was "not probative on the causation of brain cancer"); *Burst v. Shell Oil Co.*, C.A. No.

6   14-109, 2015 WL 3755953, at *8, *13 (E.D. La. June 16, 2015) (excluding general causation

7   opinions for lack of fit where "many of the studies on which [the proffered expert] relied did

8   not examine the risk for AML specifically, and instead examined the risk of leukemia

9   generally or other specific types of leukemia.").

10                      *                           *                           *

11        In all, the Court should exclude Dr. Knopf's specific-causation opinions because he

12   failed to reliably rule in glyphosate as a cause of Plaintiff's NHL as required by a differential

13   etiology methodology.

14        **B.    Dr. Knopf fails to reliably "rule out" other potential alternative causes of
15               Plaintiff's MCL.**

16        Dr. Knopf also fails to complete the necessary second step of the differential etiology

17   methodology: even if he had properly "ruled in" glyphosate exposure as a cause of Mr.

18   Beckfield's NHL, he did not attempt to "rule out"—or even consider—numerous potential

19   causes of Mr. Beckfield's MCL other than Roundup, which renders his opinions unreliable.

20   *See Clausen*, 339 F.3d at 1057; *Lipitor*, 892 F.3d at 645 ("*Daubert* requires more" than an

21   export "dismiss[ing] other possible causes in favor of [the product at issue] in a cursory

22   fashion."); *Westberry*, 178 F.3d at 265 ("A differential diagnosis that fails to take serious

23   account of other potential causes may be so lacking that it cannot provide a reliable basis for

24   an opinion on causation.").

25

26

27

28

1           **1.**      **Dr. Knopf failed to consider Mr. Beckfield's exposure to other pesticides and herbicides.**

2

3           Mr. Beckfield was exposed to the pesticide Atrazine, which IARC classifies as a group 2B carcinogen.  Ex. D, 10/25/22 Knopf Dep. at 136:19–137:13.  Dr. Knopf admits he did not

4

consider Plaintiff's exposure to Atrazine, a pesticide classified as a potential carcinogen:

5              Q And you don't -- you don't purport to rule out atrazine as a

6              contributing factor to Mr. Beckfield's NHL in your expert report;
            do you?

7              A I did not.

8  *Id*. at 137:14–19.

9           Mr. Beckfield was also exposed to the herbicide Lasso.  *Id*. at 138:15–23.  Dr. Knopf

10  admits that he cannot rule out Lasso as a contributing factor either:

11              Q Right. But you can't rule it out as a contributing factor; can you?

12              A I can't rule it out as a contributing factor…

13  *Id.* at 139:13–23.

14           Mr. Beckfield was also exposed to the herbicide Dual.   Dr. Knopf did not consider this

15  exposure:

16              Q …You can just tell me you didn't consider [Dual].

17              A I don't think I wrote it in my report…

18  *Id.* at 139:24–140:16.  Dr. Knopf did not rule out this exposure, or the combination of Mr.

19  Beckfield's exposure to Atrazine, Lasso, and Dual, in his analysis.  *Id*. at 140:13–141:7.

20           Dr. Knopf's failure to even consider these exposures renders his opinions unreliable.

21           **2.**      **Dr. Knopf failed to provide a scientifically-valid reason to rule out those potential causes he did identify.**

22

23           Dr. Knopf identifies 11 potential risk factors for NHL in his report.  Ex. B, Knopf Rpt.

24  at 8.  Although he rules out some that simply have no relevance to Mr. Beckfield, he does not

25  adequately analyze Mr. Beckfield's age or family history.

26       •   Age—Dr. Knopf ruled out age because Plaintiff was 56 at the time of diagnosis and

27            the median age for NHL is 60.  Ex. B, Knopf Rpt. at 8.  Dr. Knopf, however, was

28

1   unaware whether that four year difference was statistically significant.  Ex. D,

2   10/25/22 Knopf Dep. at 125:1–7.

3   • Family History—Dr. Knopf ruled out Mr. Beckfield's family history of cancer

4   because Dr. Knopf "did not think it was a substantial risk factor…but, you know, if

5   I'm going to testify, I will maybe do more epidemiologic research about that part."

6   Id. at 129:6–15.  He further admitted that if his research changed his mind, he would

7   change his opinion.  Id. at 130:3–12.  This is improper given Plaintiff was required

8   to disclose his experts' opinions earlier and may not wait until some indeterminate

9   date for an expert to complete his analysis.

10           **3.      Dr. Knopf fails to reliably rule out natural cell replication errors.**

11       Some cancers are random—the statistical outcome of billions of cell divisions over a

12   human lifetime.  Dr. Knopf admits cell replication errors naturally occur when cells divide,

13   which can lead to genetic mutations and ultimately, in some cases, cancer.  Ex. C, 8/5/22

14   Knopf Dep. at 117:15–119:10.  He also admits that some people will develop cancer without

15   any environmental input.  Ex. C, 8/5/22 Knopf Dep. at 120:10–20.  Yet, his testimony shows

16   his reasons for ruling out random mutations are circular:

17           Q…What I'm asking you to tell me is whether you believe you can
            rule out genetic mutations due to random replication errors as a
18           contributing cause of Mr. Beckfield's non-Hodgkin's lymphoma?

19           A Well, I think I can because I put more likely than not, so that
            would be 50.1%. So the alternative hypothesis of random errors
20           would have to be 49.9%.

21   In other words, Roundup is the most likely cause because Dr. Knopf has eliminated all

22   alternative potential causes.  And he eliminated all alternative potential causes because

23   Roundup is the most likely cause.  By that rationale, Dr. Knopf has no need to provide a

24   scientifically-valid reason for ruling out a potential cause, because his conclusion that

25   Roundup is the cause is also the premise he uses to rule out those alternatives.  By that

26   rationale, the differential etiology method collapses to no more than a witness's subjective

27   opinion.  But that rationale is illogical.  Dr. Knopf's "opinion does not reflect a reliable

28   application of the principles and methods to the facts of the case."  Fed. R. Ev. 702

Courts consistently exclude experts, like Dr. Knopf, who fail to provide scientifically-valid reasons to exclude idiopathic or random causes. *Hall v. Conoco Inc.*, 886 F.3d 1308, 1314 (10th Cir. 2018) (affirming exclusion of expert's differential diagnosis due to the expert's "failure to rule out idiopathic causes," a "fatal error tainting the differential diagnosis"); *G v. Fay Sch., Inc.*, 282 F. Supp. 3d 381, 391 (D. Mass. 2017) (excluding expert opinions on causation because, among other reasons, the expert "neglect[ed] to account for the possibility of an idiopathic etiology"); *Pritchard v. Dow Agro Sciences*, 705 F. Supp. 2d 471, 492 (W.D. Pa. 2010) (excluding specific causation opinion because "the presence of a known risk factor" for NHL was an insufficient basis "for ruling out idiopathic origin"), *aff'd*, 430 Fed. App'x 102 (3rd Cir. 2011).

Dr. Knopf is unable to offer any reliable method for placing Mr. Beckfield in the category of cases for which the cause of his NHL is known versus the much larger category of NHL cases where the idiopathy is unknown.

> Q…Let me ask it this way: What methodology do you believe you can employ or have you employed in this case whereby you can scientifically rule out genetic mutations due to random replication errors as a contributing cause to Mr. Beckfield's non-Hodgkin's lymphoma? What is that methodology?
>
> A I'm not sure I have a methodology to completely rule that out as a contributing factor.

Ex. D, 10/25/22 Knopf. Dep. at 143:10–17.  Dr. Knopf's lack of methodology renders his opinion unhelpful and unreliable.

Taken as a whole, Dr. Knopf's reasoning closely tracks that of the experts excluded in *Lipitor*, whose conclusions "focused almost exclusively on the fact that [the plaintiff] took the drug and later developed the disease, rather than explaining what led her to believe that it was a substantial contributing factor as compared to other possible causes."  892 F.3d at 645. Here, as in *Lipitor*, Dr. Knopf simply "dismiss[es] other possible causes in favor of [Roundup] in a cursory fashion that appeared closer to an *ipse dixit* than a reasoned scientific analysis." *Id.*  Ultimately, Dr. Knopf engages in an "always Roundup" methodology that determines Roundup to be the cause no matter the exposure.  But exposure alone is not enough, and Dr.

1   Knopf is not able to explain with any coherent scientific methodology why this is enough

2   evidence for him to conclude that Roundup is the cause of Mr. Beckfield's MCL.

3   **V.      CONCLUSION**

4          For the reasons set forth above, the Court should grant Monsanto's Motion to Exclude

5   Testimony of Dr. Kevin Knopf.

6   Dated:  December 13, 2023                  Respectfully submitted,

7                                              **BRYAN CAVE LEIGHTON PAISNER LLP**

8

9                                              */s/ Linda C. Hsu*
                                               Linda C. Hsu
10                                             Attorneys for Defendant Monsanto Company

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO EXCLUDE TESTIMONY OF KEVIN KNOPF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 13, 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system, which sent notice of the filing to all appearing parties of record.

*/s/ Linda C. Hsu*
Linda C. Hsu

CERTIFICATE OF SERVICE ISO MOTION TO EXCLUDE TESTIMONY OF KEVIN KNOPF