**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843 | Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 | Fax: 310 -576-2200

*Attorneys for Defendant Monsanto
Company*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 <br><br> Case No.: 3:16-md-02741-VC |
| *Richard Canning, et al. v. Monsanto Co.,* Case No. 3:19-cv-04230-VC | **DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD** <br><br> Hearing: <br> Date:   March 1, 2024 <br> Time:   10:00 a.m. <br> Place:   San Francisco Courthouse, <br>             Courtroom 4 – 17th Floor |

1  **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2        **PLEASE TAKE NOTICE THAT** on  March 1, 2024 at 10:00 a.m., in Courtroom 4 of

3  the United States District Court, Northern District of California, located at 450 Golden Gate

4  Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company

5  ("Monsanto") will present its Motion to Exclude Testimony of  Dr. D. Barry Boyd.  Monsanto

6  seeks an order excluding opinions of this witness under Federal Rule of Evidence 702.

7

8  Dated:  December 13, 2023            Respectfully submitted,

9                              **BRYAN CAVE LEIGHTON PAISNER LLP**

10

11                              */s/ Linda C. Hsu*
                            Linda C. Hsu

12                              Attorneys for Defendant Monsanto Company

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................1

LEGAL STANDARD....................................................................................................2

ARGUMENT .................................................................................................................3

     I.     Dr. Boyd's Specific-Causation Opinions Should be Excluded Because He Did Not Reliably Rule In Glyphosate as a Possible Cause of Mr. Canning's DLBCL. .......................................................................................................3

     II.    Dr. Boyd failed to reliably assess and "rule out" potential alternative causes of Plaintiff's NHL. ..........................................................................................7

          A.     Dr. Boyd ignores or overlooks Plaintiff's numerous risk factors. ............8

          B.     Dr. Boyd fails to account for the fact that random mutations may have caused Plaintiff's NHL. ..........................................................................12

CONCLUSION.............................................................................................................13

i

1

2

## TABLE OF AUTHORITIES

**Page(s)**

3

**Cases**

4

*In re Aredia & Zometa Prods. Liab. Litig.*,
    483 F. App'x 182 (6th Cir. 2012) ........................................................................................3

5

*Borg-Warner Corp. v. Flores*,
6    232 S.W.3d 765 (Tex. 2007).................................................................................................6

7

*Brown v. Burlington N. Santa Fe Ry. Co.*,
    765 F.3d 765 (7th Cir. 1996) ...............................................................................................3
8

9

*Chapman v. Proctor & Gamble Distrib., LLC*,
    766 F.3d 1296 (11th Cir. 2014) ...........................................................................................3

10

*Clausen v. M/V New Carissa*,
11    339 F.3d 1049 (9th Cir. 2003) .............................................................................................4

12

*Cooper v. Brown*,
    510 F.3d 870 (9th Cir. 2007) ...............................................................................................2
13

14

*Cooper v. Smith & Nephew*,
    259 F.3d 194 (4th Cir. 2001) ...............................................................................................3

15

16

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..............................................................................................................2

17

*Engilis v. Monsanto Co.*,
    No. 3:19-cv-07859-VC (N.D. Cal. Nov 15, 2023) ..............................................................5
18

19

*Guinn v. AstraZeneca Pharms. LP*,
    602 F.3d 1245 (11th Cir. 2010) .......................................................................................3, 7

20

*Hollander v. Sandoz Pharms. Corp.*,
21    289 F.3d 1193 (10th Cir. 2002) ...........................................................................................7

22

*Kilpatrick v. Breg, Inc.*,
    613 F.3d 1329 (11th Cir. 2010) ...........................................................................................3
23

24

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*,
    892 F.3d 624 (4th Cir. 2018) .................................................................................3, 6, 11, 12

25

*McClain v. Metabolife Int'l, Inc.*,
26    401 F.3d 1233 (11th Cir. 2005) ...................................................................................2, 6, 7

27

*Milward v. Rust-Oleum Corp.*,
    820 F.3d 469 (1st Cir. 2016)...........................................................................................7, 12
28

MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD

*Perry v. Novartis Pharms. Corp.*,
    564 F. Supp. 2d 452 (E.D. Pa. 2008) ...............................................................................12

*Poust v. Huntleigh Healthcare*,
    998 F. Supp. 478 (D.N.J. 1998) .........................................................................................3

*Pritchard v. Dow Agro Sciences*,
    705 F. Supp. 2d 471 (W.D. Pa. 2010), *aff'd*, 430 Fed. App'x 102 (3rd Cir. 2011) ...............12

*Robinson Twp. v. Commonwealth*,
    147 A.3d 536 (Pa. 2016) .....................................................................................................4

*In re Roundup Prods., Liab. Lit.*,
    3:16-md-02741-VC (N.D. Cal. Feb. 24, 2019).................................................................1, 6

*In re Roundup Prods., Liab. Lit.*,
    390 F. Supp. 3d 1102 (N.D. Cal. 2018) .............................................................................5

*In re: Roundup Prods. Liab. Litig.*,
    358 F. Supp. 3d 956 (N.D. Cal. 2019) ..............................................................................3

*Sardis v. Overhead Door Corp.*,
    No. 20-1411, 2021 WL 3699753 (4th Cir. 2021) ............................................................2

*Sims v. Kia Motors of Am., Inc.*,
    839 F.3d 393 (5th Cir. 2016) ............................................................................................3

*Soldo v. Sandoz Pharms. Corp.*,
    244 F. Supp. 2d 434 (W.D. Pa. 2003).............................................................................3

*Trach v. Fellin*,
    817 A.2d 1102 (Pa. Super. 2003)......................................................................................6

*White v. Ford Motor Co.*,
    312 F.3d 998 (9th Cir. 2002) ............................................................................................2

**Other Authorities**

Fed. Jud. Ctr., Reference Manual on Scientific Evidence § 549 (3d. Ed.).   ..............................4

Fed. R. Evid. 702 ..............................................................................................................2

MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD

1

### INTRODUCTION

2     Mr. Canning has designated Dr. Boyd—a clinical oncologist—to opine that exposure to

3  Roundup caused his DLBCL. However, Dr. Boyd's specific causation opinions should be

4  excluded because he did not follow the differential etiology methodology that he claims to have

5  employed in this case to reach the conclusion that Mr. Canning's NHL was caused by exposure

6  to Roundup:

7     *First*, to determine that Roundup causes NHL, as is required to "rule in" Roundup as a

8  potential cause of Mr. Canning's DLBCL, Dr. Boyd relied on a small subset of epidemiology

9  data pertaining to glyphosate-based herbicides that US EPA and numerous other public health

10 governmental organizations have determined are inadequate to show that glyphosate causes

11 NHL.  Dr. Boyd's reliance on cherry-picked epidemiological data as a substitute for dose is not

12 generally accepted or reliable and has been rejected by this Court.

13    *Second*, Dr. Boyd lacks a reliable basis to "rule out" Plaintiff's other risk factors for

14 DLBCL, including his body mass index, exposure to other chemicals from work with fertilizers,

15 nutrients, and pesticide products, a family history of cancer, age, ethnicity, and gender, as well

16 as the risk of sporadic mutations leadings to DLBCL which is widely believed to be the cause

17 of most NHL cases. In unwavering adherence to his conclusion that Roundup is always to blame

18 for every plaintiff's cancer, Dr. Boyd brushes aside or ignores Plaintiff's other risk factors,

19 without offering a principled scientific basis for doing so.

20    Under Dr. Boyd's outcome-driven "methodology," if a plaintiff in litigation was ever

21 exposed to Roundup, that fact alone automatically makes exposure a cause of their DLBCL.

22 That is not science; it is courtroom advocacy cloaked as expert opinion.  This Court has excluded

23 prior experts for exactly this reason.  *See, e.g.,* Ex. A, Pretrial Order No. 85 in *In re Roundup*

24 *Prods., Liab. Lit.*, 3:16-md-02741-VC (N.D. Cal. Feb. 24, 2019) (precluding plaintiffs' experts

25 from testifying, based on the McDuffie and Eriksson studies, that "glyphosate is a substantial

26 causative factor for anyone who exceeds two days per year or ten lifetime days of Roundup use,

27 because that conclusion is again based on unadjusted data" and holding that "it is not

28

1

MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD

1   scientifically sound to quantify [a] risk and assign it to a particular plaintiff using the unadjusted

2   numbers from McDuffie and Eriksson").

3                                            **LEGAL STANDARD**

4           A proposed expert witness must possess "knowledge, skill, experience, training, or

5   education sufficient to qualify him as an expert on the subject to which his testimony relates.

6   Fed. R. Evid. 702. When an expert's field of expertise is not related to the subject on which he

7   seeks to offer testimony, such testimony is inadmissible. *See White v. Ford Motor Co.,* 312 F.3d

8   998, 1008-09 (9th Cir. 2002). Apart from qualifications, expert testimony must be (1) based

9   upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result

10  of applying those principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The

11  trial judge is charged with the responsibility of acting as a gatekeeper to "ensure that any and all

12  scientific testimony … is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.,*

13  509 U.S. 579, 589 (1993); *see also Sardis v. Overhead Door Corp.,* No. 20-1411, 2021 WL

14  3699753, at \*7 (4th Cir. Aug. 20, 2021) (district court in wrongful death suit abused its discretion

15  when it "abandoned its gatekeeping function" by declaring reliability and relevance arguments

16  to be province of jury because they went to weight, not admissibility). Indeed, the Supreme

17  Court instructs that an expert's error-prone application of his or her methodology is inherently

18  unreliable; and reliability is within the charge of the trial court as the gatekeeper. *Daubert,* 509

19  US at 589. The proponent of the expert bears the burden of proving that the expert's proffered

20  testimony is admissible. *See, e.g., Cooper v. Brown,* 510 F.3d 870, 942 (9th Cir. 2007).

21          Here, Dr. Boyd's opinions should be excluded on the grounds that (1) they are not

22  reliable, and (2) they are not helpful to the jury because he concluded Roundup® was the cause

23  without properly ruling in Roundup® and without weighing or eliminating other risk factors in

24  any reliable manner. Rule 702 requires experts purporting to use a differential diagnosis method

25  to reach a specific causation conclusion to carry out both aspects of that methodology—"ruling

26  in" all possible causes and "ruling out" all but the subject cause—and that they do so in a reliable

27  fashion. *See McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1253 (11th Cir. 2005) ("[A]n

28  expert does not establish the reliability of his techniques or the validity of his conclusions simply

MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD

1    by claiming that he performed a differential diagnosis on a patient."); *In re Aredia & Zometa*

2    *Prods. Liab. Litig.,* 483 F. App'x 182, 188 (6th Cir. 2012) (expert offering a differential

3    diagnosis must "accurately diagnose the nature of the disease, reliably rule in the possible causes

4    of it, and reliably rule out the rejected causes"); *Soldo v. Sandoz Pharms. Corp.,* 244 F. Supp.

5    2d 434, 551 (W.D. Pa. 2003) ("[T]he mere statement by an expert that he or she applied

6    differential diagnosis in determining causation does not *ipso facto* make that application

7    scientifically reliable or admissible."). Because the inherent malleability of this methodology

8    can shroud what may be little more than subjective guesswork, the district court must "delve

9    into the particular witness's method of performing a differential diagnosis to determine if his or

10   her ultimate conclusions are reliable." *Poust v. Huntleigh Healthcare,* 998 F. Supp. 478, 496

11   (D.N.J. 1998). Courts have consistently held that expert opinions that pay lip service to this

12   methodology but do not reliably apply it should be excluded. *See, e.g., In re Lipitor,* 892 F.3d

13   at 642–45.[1]

14        If Plaintiff fails to present an admissible expert opinion to establish specific causation,

15   summary judgment is appropriate. *In re: Roundup Prods. Liab. Litig.,* 358 F. Supp. 3d 956, 957

16   (N.D. Cal. 2019) ("To defeat Monsanto's motion for summary judgment on this issue, the

17   plaintiffs must present at least one admissible expert opinion to support [his] specific causation

18   argument.").

19                              **ARGUMENT**

20   **I.    Dr. Boyd's Specific-Causation Opinions Should be Excluded Because He Did Not**

21         **Reliably Rule In Glyphosate as a Possible Cause of Mr. Canning's DLBCL.**

22        Dr. Boyd did not complete the necessary second step of the differential etiology

23   methodology[2]: he failed to reliably rule in glyphosate as a possible cause of Mr. Canning's

24

---

25   [1] *See also, e.g., Sims v. Kia Motors of Am., Inc.,* 839 F.3d 393, 401–02 (5th Cir. 2016); *Chapman v. Proctor & Gamble Distrib., LLC,* 766 F.3d 1296, 1309 (11th Cir. 2014); *Guinn v. AstraZeneca*

26   *Pharms. LP,* 602 F.3d 1245, 1253 (11th Cir. 2010); *Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1342–43 (11th Cir. 2010); *Cooper v. Smith & Nephew,* 259 F.3d 194, 200 (4th Cir. 2001); *Brown*

27   *v. Burlington N. Santa Fe Ry. Co.,* 765 F.3d 765, 773–74 (7th Cir. 1996).

     [2] Dr. Boyd testified that he performed a differential diagnosis on Mr. Canning.  *See* Ex. B, Boyd

28   (*Canning*) Dep. at 69:14-25.

---

3

1   DLBCL.   Broadly speaking, "differential diagnosis" refers to the process "whereby the

2   physician rules in or rules out various prospective causes of a patient's illness." *Robinson Twp.*

3   *v. Commonwealth*, 147 A.3d 536, 570 (Pa. 2016).   The process requires an expert to first "rule

4   in" all potential causes—i.e., "to compile a comprehensive list of hypotheses that might explain

5   the set of salient clinical findings under consideration." *Clausen v. M/V New Carissa*, 339 F.3d

6   1049, 1057 (9th Cir. 2003).   The expert must then "rule out" each possible cause using a

7   conventional scientific method until only the most likely cause remains. *Id*.   "Like any scientific

8   method" a differential diagnosis "can be performed in an unreliable manner."  Fed. Jud. Ctr.,

9   Reference Manual on Scientific Evidence § 549 (3d. Ed.).

10   Dr. Boyd cannot reliably rule in glyphosate as a cause of Mr. Canning's DLBCL because

11   he has no quantitative understanding of Mr. Canning's internal glyphosate dose, and he has

12   offered no other reliable basis to conclude that Mr. Canning's alleged Roundup exposure caused

13   his DLBCL.   In ruling in glyphosate as the cause of Mr. Canning's DLBCL, Dr. Boyd relied on

14   Dr. Herrick's calculation of Mr. Canning's total occupational and residential exposure days,

15   which was estimated to be between 169 and 656.5 8-hour exposure days (with an estimate of

16   1352 non-time-weighted Roundup exposure days). Ex. C, Boyd (*Canning*) Report at 34.[3]  Dr.

17   Boyd then compared these exposure days to cherry-picked epidemiological data[4] that he claims

18   shows a relationship between exposure days and development of NHL.   *See* Ex. B, Boyd

19   (*Canning*) Dep. at 58:3-10; 79:18-80:10.   As this Court noted recently in ruling on Monsanto's

20   [3] Dr. Boyd's "ruling in" of Roundup as a potential cause of Plaintiff's NHL relies almost entirely
21   on the "exposure days" opinions of Plaintiff's expert toxicologist, Dr. Herrick, and therefore
    should be excluded because Dr. Herrick's "exposure days" opinions are themselves unreliable.
22   *See* Monsanto's Motion to Exclude Expert Testimony of Dr. Robert Herrick, filed
    contemporaneously herewith.

23   [4] Although Dr. Boyd's report discussed a subset of "human data," "mechanistic data," and
24   "animal data" that he claims, like IARC, is sufficient to establish glyphosate is a cancer hazard
    (*see e.g.*, Ex. C, Boyd (*Canning*) Rpt. at 23-31), his opinion that Roundup caused Mr. Canning's
25   DLBCL is based primarily on three epidemiological data points reported in McDuffie 2001,
    Eriksson 2008, and Pahwa 2019.  Dr. Boyd determined data points in those studies demonstrated
26   that Roundup can cause NHL in individuals who are exposed more than 2 days per year.  *See*
    Ex. D, Boyd (*Allegrezza*) Dep. at 55:3-56:5, 91:23-92:21, 133:17-138:6, 141:6-142:12; *see also*
27   Ex. E, Boyd (*Frank*) Dep. at 125:4-126:3.  Dr. Boyd then "ruled in" Roundup as a cause of Mr.
    Canning's DLBCL because his use exceeded those number of days.  *See* Ex. B, Boyd (*Canning*)
28   Dep. at 58:3-10; 79:18-80:10.

MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD

1   motion to exclude certain causation experts in *Engilis v. Monsanto Co.*, No. 3:19-cv-07859-VC,

2   an expert's "cherry-pick[ing] the findings of the epidemiological studies, reporting only certain

3   odds ratios—those most favorable to his ultimate opinion" disqualifies his testimony.  *See* Ex.

4   F, *In re Roundup Prods. Liab. Litig.*, Pretrial Order No. 288: Order Granting Motions to Exclude

5   Experts Charles and Schneider, MDL No. 2741, Case No. 16-md-02741-VC (N.D. Cal. Nov.

6   15, 2023), at 3.

7   　　　Dr. Boyd's substitution of "exposure days" taken from a small subset of the relevant

8   epidemiology data for dose is not a reliable methodology for many reasons.

9   　　　*First*, Dr. Boyd's decision to cherry-pick just a few of the many relevant epidemiological

10   data points violates the weight of evidence of review he purports to be applying.  He simply

11   ignores extensive epidemiology data that shows no increased risk or no dose-response for NHL

12   due to glyphosate exposure that undermines his novel "exposure day" methodology.  Dr. Boyd

13   even cherry-picks "exposure" points within the limited studies that he relies on to create a dose

14   threshold.  For example, Pahwa 2019 contains three "exposure" points equally applicable to

15   Plaintiff and two of those points report no increased risk of NHL.  *See* Ex. G, Trial Tr. of Dr.

16   Dennis Weisenburger in *Gordon* at 3832:25-3838:24; *e.g.,* Trial Tr. at 3838:6-11 (in reference

17   to Pahwa (2019) which he co-authored: "Q. So of the three different tables we've looked at, two

18   of the categories related to [DLBCL] that Ms. Gordon would fit in, did not show an increased

19   risk from use of glyphosate that was statistically significant?  A. That's correct.").  Further,

20   Eriksson 2008 found *no statistically significant increased risk* of developing DLBCL—the type

21   of NHL Mr. Canning was diagnosed with—after glyphosate exposure.  *See* Ex. H, Eriksson *et.*

22   *al.*, *Pesticide exposure as risk factor for non-Hodgkin lymphoma including histopathological*

23   *subgroup analysis*, Int. J. of Cancer 123:1657:63 (2008) ("Eriksson 2008")

24   　　　*Second*, Dr. Boyd is not using the cherry-picked data in a reliable manner.  This Court

25   has rejected the very "exposure day" methodology Dr. Boyd seeks to use here, noting the

26   exposure day risk estimates from McDuffie 2001 and Eriksson 2008 do not adjust for other

27   exposures that could explain the increased risk.  *In re Roundup Prods., Liab. Lit.*, 390 F. Supp.

28   3d 1102, 1140 (N.D. Cal. 2018) ("[f]ailing to take account of likely confounders by presenting

MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD

1   and relying upon only unadjusted (or minimally adjusted) estimates is a serious methodological

2   concern."); *see also* Ex. A, Pretrial Order No. 85 in *In re Roundup Prods., Liab. Lit.*, 3:16-md-

3   02741-VC (N.D. Cal. Feb. 24, 2019) (precluding plaintiffs' experts from testifying, based on

4   the McDuffie and Eriksson studies, that "glyphosate is a substantial causative factor for anyone

5   who exceeds two days per year or ten lifetime days of Roundup use, because that conclusion is

6   again based on unadjusted data" and holding that "it is not scientifically sound to quantify [a]

7   risk and assign it to a particular plaintiff using the unadjusted numbers from McDuffie and

8   Eriksson"); *see, e.g.*, Ex. I, McDuffie, *et al.*, *Non-Hodgkin's Lymphoma and Specific Pesticide*

9   *Exposures in Men: Cross-Canada Study of Pesticides and Health*, 10 Cancer Epidemiology,

10   Biomarkers & Prevention 1155, 1156 (2001); Ex. H, Eriksson 2008.

11          *Third*, the arbitrary exposure units Dr. Boyd plucks from those studies are not being

12   tested or studied for the purposes of dose, and Dr. Boyd has not endeavored to calculate the dose

13   of Roundup to which Mr. Canning was exposed.  Ex. B, Boyd Dep. at 62:3-4 ("But I can't

14   calculate his body level, his dose."). Dose is what courts often describe as "the most important

15   factor to consider in evaluating whether an alleged exposure caused a specific adverse event."

16   *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005); *see also Trach v. Fellin*,

17   817 A.2d 1102, 1113 (Pa. Super. 2003) (principle of "dose-response" is nearly as old as the

18   pyramids).  The reason dose matters is simple: "all chemical agents are intrinsically hazardous,"

19   and "whether they cause harm is only a question of dose."  *In re Lipitor (Atorvastatin Calcium)*

20   *Mktg., Sales Practices and Prods. Liab. Litig.*, 892 F.3d 624, 639 (4th Cir. 2018); *Borg-Warner*

21   *Corp. v. Flores*, 232 S.W.3d 765, 770-73 (Tex. 2007) (discussing importance of dose on

22   causation inquiry and reversing judgment in plaintiff's favor following jury trial where plaintiff

23   did not establish sufficient dose to cause alleged injuries).  Dr. Boyd has not presented any

24   generally accepted methodology for determining that Plaintiff received a dose of Roundup that

25   could cause NHL. Indeed, he testified that he did not calculate the specific dose that Mr. Canning

26   experienced.  Ex. B, Boyd Dep. at 60:9-13. But Dr. Boyd's exposure days methodology is not a

27

28

MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD

1    substitute for dose—the most important consideration in assessing causation—and his

2    contention otherwise is without merit.[5]

3          *Fourth*, Dr. Boyd's reliance on the timing of Plaintiff's exposure to Roundup as a basis

4    to rule-in Roundup as a potential cause of Plaintiff's NHL is similarly unreliable.  At his

5    deposition, Dr. Boyd testified that "timing is critical, so there has to be enough latency to

6    explain, because tumors don't arise immediately after exposure.  Carcinogenesis is a prolonged,

7    extended period prior to the onset of the disease." *Id*. at 39:13-18.  And he concluded that based

8    on the latency, that Roundup "may have had an initiation effect on [Mr. Canning's NHL],

9    because of the long duration of exposure." *Id*. at 42:17-22.  But Dr. Boyd's reliance on this

10   temporal relationship is utterly unscientific and renders his methodology unreliable. *See*

11   *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1254 (11th Cir. 2005) ("The temporal

12   connection between exposure to chemicals and an onset of symptoms, standing alone, is entitled

13   to little weight in determining causation."); *see also Guinn v. AstraZeneca Pharms. LP*, 602

14   F.3d 1245, 1254 (11th Cir. 2010).

15   **II.    Dr. Boyd failed to reliably assess and "rule out" potential alternative causes of**

16          **Plaintiff's NHL.**

17         To reliably perform a differential diagnosis, or differential etiology, an expert must

18   conduct scientific analysis to eliminate the likely causes until the most probable one is isolated.

19   *See Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1211-12 (10th Cir. 2002) (at the second

20   step of a differential diagnosis/etiology, the expert must eliminate "all other possible cause of

21   the victims' condition . . . leaving only the toxic substance as the cause.") (quotation omitted).

22   The expert must provide reasons for rejecting the alternative hypotheses "utilizing scientifically

23   valid methods." *Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 476 (1st Cir. 2016).

24

25   [5] Dr. Boyd's failure to consider dose contradicts his own testimony. He repeatedly testified that
     factors other than mere duration of exposure are important to determine causation.  For example,

26   Dr. Boyd testified that causation of any disease from a chemical is dependent on the extent of
     exposure. *See* Ex. B, Boyd Dep. at 38:22-24; *id*. at 39:8-13.  He testified that "[t]he intensity is

27   important because minimal exposure is not going to make sense." *Id*. at 39:20-21.  But he did
     not calculate the specific dose of GBH that Mr. Canning experienced over the years (*id*. at 60:9-

28   13), and did not calculate how much Roundup penetrated Mr. Canning's skin. *Id*. at 61:12-19.

MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD

1    Dr. Boyd has not met these requirements, as he fails to provide valid reasons for "ruling

2  out" alternative hypotheses using scientifically valid methods. Instead, he casually dismisses

3  potential alternative causes without any scientific rigor to reach his preordained conclusion that

4  Roundup is always to blame for every plaintiff's NHL.

5    **A.    Dr. Boyd ignores or overlooks Plaintiff's numerous risk factors.**

6    Dr. Boyd's consideration of alternative causes is woefully inadequate and demonstrates

7  the unreliability of his opinion. Dr. Boyd ignores several plausible potential causes of Plaintiff's

8  disease that he acknowledged are risk factors for NHL. Further, Dr. Boyd cursorily dismisses

9  other potential causes based on flawed reasoning and analysis that is wholly inconsistent with

10  his approach to ruling in Roundup.

11    Most glaringly, Dr. Boyd failed to meaningfully consider Mr. Canning's exposure to

12  other chemicals and herbicides.  As evidenced by his deposition and Plaintiff Fact Sheet, Mr.

13  Canning has a long history of exposure to various chemicals throughout his entire working life.

14  For example, for forty years beginning in 1968, Mr. Canning worked at R.F. Morse and Son, a

15  company that sold herbicides such as atrazine and Caroson.  *See* Ex. J, *Canning* PFS at 2; Ex.

16  K, Canning 11/23/21 Dep. at 62:21-63:5.  He also worked in various farming operations for

17  decades (s*ee* Ex. J, *Canning* PFS at 2), and was exposed to numerous herbicides and insecticides,

18  including Casoron, Devrinol, Bravo, Sevin, and Lorsban4E.  *See* Ex. J, *Canning* PFS at 13; Ex.

19  C, Boyd Canning Report at 34.  Dr. Boyd admits that exposure to these chemicals is associated

20  with "development of multiple cancers, including NHL, both among occupational users (e.g.,

21  farm workers, pesticide applicators) and residential users."  *See* Ex. C, Boyd (*Canning*) Report

22  at 34.  However, Dr. Boyd summarily dismisses these exposures.  For example, with respect to

23  Mr. Canning's exposure to pesticides—including Bravo, Sevin, Lorsban4E—Dr. Boyd claims

24  that he ruled out pesticides as a potential cause of Mr. Canning's NHL because Mr. Canning's

25  exposure was limited due to his use of personal protective equipment and due to the method of

26  application:

27    While wearing PPE including gloves, mask, and work boots, he carried the
      insecticide, in a sealed closed container, from the tailgate of a truck and introduced
28

8

MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD

it into the irrigation pump. The irrigated vines were then not touched until thoroughly dry. These chemicals included chlorothalonil (Bravo), DiPel, diazanon, Carbaryl (Sevin), and Chlorpyrifos (Lorsban4E) pyrethroids. Given his very limited exposure to any of these agents, they did not impart increased risk of developing his lymphoma.

*See* Ex. C, Boyd (*Canning*) Report at 34.

However, Dr. Boyd did not consider the same factors in ruling-in Roundup as a cause of NHL. Rather, he testified that he did not do an exposure analysis for Mr. Canning, but instead relied on Plaintiff's exposure expert (Dr. Herrick) to do that. *See* Ex. B, Boyd (*Canning*) Dep. at 61:7-10; 82:20-23. And Dr. Herrick testified that he did not account for the dermal exposure rate when performing his Roundup exposure analysis (*see* Ex. L, Herrick (*Canning*) Dep. at 109:2-11; 173:14-19) and did not make any adjustment to his Roundup exposure estimate based on the personal protective equipment worn by Mr. Canning:

> Q.    Did you take -- when you were preparing your exposure estimates for Mr. Richard Canning, did you take into account the protective -- the personal protective equipment or clothing that he described? Did you take that into account?
>
> A.    No, I didn't.
>
> Q.    And you made no adjustments to your quantitative estimates -- I'm sorry, your numerical estimates based on his personal protective equipment, is that correct?
>
> A.    That is correct, right.
>
> Q.    Did you make any adjustments to your exposure estimates for Mr. Richard Canning based on the fact that he would take a shower or wash his hands after applying Roundup? Did you take that into account?
>
> A.    No, I didn't.

*Id*. at 196:12-197:6. Thus, in deferring to Dr. Herrick for his exposure analysis, Dr. Boyd failed to consider the same factors that he used to rule out Mr. Canning's exposure to other chemicals in his analysis ruling-in Roundup—the use of personal protective equipment and method of application.[6] This failure to use the same level of scrutiny renders Dr. Boyd's methodology unreliable.

---

[6] Dr. Herrick also failed to consider several other factors that he admitted would reduce his exposure assessment for Mr. Canning. *See* Monsanto's Motion to Exclude Dr. Herrick, filed contemporaneously herewith. Accordingly, to the extent the Court excludes Dr. Herrick's

MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD

1    Dr. Boyd also failed to meaningfully consider Mr. Canning's family history of cancer as

2    an alternative cause of his NHL.  Plaintiff has a family history of cancer, including a father who

3    has prostate cancer.  *See* Ex. B, Boyd (*Canning*) Dep. at 77:13-22. But again Dr. Boyd failed to

4    investigate further, despite admitting that a family history of cancer can be a risk factor for

5    DLBCL.  Instead, Dr. Boyd dismissed Plaintiff's father's cancer as a risk factor because he had

6    other medical issues in his family history.  *Id*. at 78:19-23 ("So if I were to say -- and he had

7    hypertension and had been on lisinopril. I would say his bigger risk is having a stroke, because

8    it's strong in the family, not lymphoma."). Dr. Boyd also testified that prostate cancer is

9    common, and that the medical and scientific communities have accepted that a family history of

10   prostate cancer did not make Mr. Canning more susceptible to developing NHL.  *Id*. at 96:8-

11   97:2. But this testimony is belied by the very literature upon which Dr. Boyd claims to rely.

12   Specifically, the McDuffie study, which Dr. Boyd cites in his report (*see* Ex. C, Boyd Report at

13   38, n. 48) found an increased risk of NHL when even one first degree relative had prior cancer.

14   Ex. M, Durrani *Barnes* Dep. at 139:24-144:17.

15       There are numerous other examples of Dr. Boyd either entirely ignoring or

16   unscientifically and unreliably discounting other potential alternative causes:

17   - Plaintiff worked at a gas station and auto repair shop from 1981-2009 (*see* Ex. J, *Canning*
18     PFS at 4, and occasionally pumped gas from around age six until he went to college.  Ex.
      K, *Canning* 11/23/21 Dep. at 241:1-242:5.  But, Dr. Boyd did not consider exposure to
19     vehicle-related chemicals, including gasoline, instead summarily stating that Mr. Canning
       "had very limited exposures" to these chemicals.  *See* Ex. C, Boyd (*Canning*) Report at
20     34.

21   - Dr. Boyd acknowledged that Plaintiff is borderline obese, with a body mass index (BMI)
       of 31. *See* Ex. B, Boyd (*Canning*) Dep. at 75:23-76:6. He admits that "obesity has been
22     associated with lymphoma and has been linked with many cancers… In observational
       studies, obesity has been associated with a graded increase in risk for both NHL and
23     Hodgkin Disease."  *See* Ex. C, Boyd (*Canning*) Report at 32. However, Dr. Boyd
       summarily ruled out obesity as a cause of Mr. Canning's NHL because "[a]ssociations
24     between obesity and cancer, including lymphoma, become increasingly evident with
       BMIs from 35 to 40 and these associations are modest at best."  *Id*. at 32.
25

26

27   _____

     opinions, it should also exclude Dr. Boyd's because Dr. Boyd's opinions rely entirely on Dr.
28   Herrick for his exposure analysis.

MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD

- Dr. Boyd testified that Plaintiff's age, male gender, and Caucasian race put him at an increased risk of developing NHL. *See* Ex. B, Boyd (*Canning*) Dep. at 71:3-72:10. Yet Dr. Boyd never attempted to rule out either of these risk factors as a cause of Plaintiff's DLBCL.

Overall, Dr. Boyd lacks any basis to conclude that Roundup is more likely to have caused Mr. Canning's DLBCL than these other risk factors. Indeed, Dr. Boyd has previously conceded that he had no means to quantitatively compare the risks posed by these factors against the one purportedly posed by Plaintiff's alleged Roundup exposure. *See* Ex. N, Boyd (*Constantine*) Dep. at 130:2-7 ("Q. And Doctor, to return to my question, though, is there any way to quantitatively compare the risks posed by the -- all the risk factors we discussed previously with the risk you believe is posed by Roundup? A. No.").

Dr. Boyd also admitted that Plaintiff may have developed DLBCL *even if he had never been exposed to Roundup*:

Q. A patient with the exact same medical history as Mr. Canning but who has never used Roundup could still be diagnosed with the exact same type of NHL that he contracted; is that right?

\*          \*          \*

A. Yeah. Possibly. But they may have other risk factors.

*See* Ex. B, Boyd (*Canning*) Dep. at 55:17-24.  *See also id*. at 82:24-83:8 (agreeing that a person with Canning's medical history could develop NHL even in the absence of exposure to Roundup).

Dr. Boyd's unscientific approach to alternative causes confirms that he intends to provide the jury with advocacy, rather than reliable scientific testimony. As the Fourth Circuit explained in *In re Lipitor*, "that Lipitor may cause an increased risk of diabetes notwithstanding certain other risk factors is insufficient to conclude that the drug was a substantial contributing factor in an individual patient. To hold otherwise would obviate the need for any specific causation evidence at all." 892 F.3d 624, 645 (4th Cir. 2018). Just like the expert excluded in *In re Lipitor*, Dr. Boyd does not offer an admissible specific causation opinion because he has no scientific grounds to conclude that Roundup is a more likely cause of Plaintiff's disease than

1   other risk factors. *See id.* (affirming exclusion of specific causation expert because his "report

2   appeared to dismiss other possible causes in favor of Lipitor in a cursory fashion that appeared

3   closer to an *ipse dixit* than a reasoned scientific analysis").

4           **B.**       **Dr. Boyd fails to account for the fact that random mutations may have caused**

5                         **Plaintiff's NHL.**

6        Just as he fails to rule out the alternative risk factors specific to Plaintiff, Dr. Boyd takes

7   an equally unscientific and dismissive approach to the idiopathic causes (including random

8   mutations) that are responsible for most NHL cases: he simply ignores the prospect. It is well-

9   accepted that "most NHL cases . . . are idiopathic, having no known cause." *Perry v. Novartis*

10  *Pharms. Corp.*, 564 F. Supp. 2d 452, 469 (E.D. Pa. 2008).

11       Dr. Boyd offers no reliable method for concluding that Plaintiff would not have

12  developed his DLBCL even if he had never used Roundup, and he has no basis to rule out

13  random genetic mutations as the cause.  Indeed, he admits that spontaneous mutations may

14  initiate cancer.  *See* Ex. B, Boyd (*Canning*) Dep. at 56:20-57:10.  And he testified that he cannot

15  rule out that Mr. Canning's NHL was caused by natural replication errors:

16            Q. All of that to say, you can't rule out that Mr. Canning's NHL was caused by

17            natural replication errors over time as he got older?

18            A. Not completely, but it's less likely here with his exposure.

19  *Id*. at 75:11-16. Indeed, Dr. Boyd has previously complimented the work of Dr. Cristian

20  Tomasetti, who concluded that "the vast majority of mutations in NHL appear to be explained

21  simply by [random] replication errors." *See* Ex. O, Feb. 12, 2021, Rpt. of Cristian Tomasetti

22  Ph.D. in *Constantine*. at 26; Ex. N, Boyd (*Constantine*) Dep. at 127:15-22.

23       Overall, Dr. Boyd has a results-oriented approach to always blame Roundup as the cause

24  of a plaintiff's NHL. The Court should exclude such an unreliable approach. *See, e.g.*, *Milward*,

25  820 F.3d at 476 (affirming exclusion of specific causation expert because she had no reliable

26  method to "'rule out' an idiopathic diagnosis," which was particularly problematic in light of

27  the "extraordinary number of idiopathic [acute promyelocytic leukemia] cases"); *Pritchard v.*

28  *Dow Agro Sciences*, 705 F. Supp. 2d 471, 492 (W.D. Pa. 2010) (excluding specific causation

1    opinion because "the presence of a known risk factor" for NHL was an insufficient basis "for

2    ruling out idiopathic origin"), *aff'd*, 430 Fed. App'x 102 (3rd Cir. 2011).

3    ## CONCLUSION

4           For these reasons, the Court should grant Monsanto's motion to exclude Plaintiff's

5    specific causation expert Dr. Boyd because his opinions are unreliable and inadmissible.

6

7    Dated:  December 13, 2023                    Respectfully submitted,

8                                                 **BRYAN CAVE LEIGHTON PAISNER LLP**

9

10                                               */s/ Linda C. Hsu*
                                                 Linda C. Hsu
                                                 Attorneys for Defendant Monsanto Company
11

12                                **CERTIFICATE OF SERVICE**

13          I HEREBY CERTIFY that on this 13th day of December 2023, a copy of the foregoing
     was filed with the Clerk of the Court through the CM/ECF system, which sent notice of the
14   filing to all appearing parties of record.

15                                               */s/ Linda C. Hsu*
                                                 Linda C. Hsu
16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD