**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843 | Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 | Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No.: 3:16-md-02741-VC |
| *Turnoff v. Monsanto Company*, 3:19-cv-03837-VC | **DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF DR. SAMUEL BERKMAN** |
| | Hearing: |
| | Date: March 1, 2024 |
| | Time: 10:00 a.m. |
| | Place: San Francisco Courthouse, Courtroom 4 – 17th Floor |

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

1   **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2          **PLEASE TAKE NOTICE THAT** on March 1, 2024, at 10:00 a.m., in Courtroom 4 of the

3   United States District Court, Northern District of California, located at 450 Golden Gate Avenue,

4   San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto")

5   will present its Motion to Exclude Testimony of Dr. Samuel Berkman.  Monsanto seeks an order

6   excluding opinions of this witness under Federal Rule of Evidence 702.

7   Dated:  December 14, 2023                    Respectfully submitted,

8

9                                        /s/ *Linda C. Hsu*
                                         Linda C. Hsu
10                                       Attorneys for Defendant Monsanto Company

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 1

LEGAL STANDARD ............................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

I.    The Court Should Exclude Dr. Berkman's General Causation Opinion. .......................... 2

    A.    Dr. Berkman Is Not Qualified To Opine On General Causation. ............................ 2

    B.    Dr. Berkman's General Causation Opinion Is Unreliable. ...................................... 4

    1.    Dr. Berkman's Opinions Merely Parrot  IARC's "Hazard Assessment," Which Does Not Ascertain Whether Glyphosate Is Likely to Cause NHL Under Real World Conditions. ....................................................................................................................... 4

    2.    Dr. Berkman Relies Exclusively on Other Experts in Opining on Epidemiological Literature and Study Results That Are Not Adjusted for the Participants' Use of Other Pesticides. ......................................................................................................................... 5

II.   The Court Should Exclude Dr. Berkman's Specific Causation Opinion. .......................... 6

    A.    Dr. Berkman Does Not Reliably Rule In Roundup as a Cause of Plaintiff's NHL. ......................................................................................................................... 7

    1.    Dr. Berkman Relies On No Data Showing Evidence of a Statistically Significant Association Between Glyphosate and Plaintiff's SMZL. ........................................................ 7

    2.    Dr. Berkman Does Not Quantify Plaintiff's Actual Glyphosate Dose. ................. 9

    3.    Dr. Berkman Does Not Reliably Evaluate Plaintiff's Actual Exposure to Glyphosate-Based Roundup. ...................................................................................................... 10

    B.    Dr. Berkman Does Not Reliably Rule Out Other Potential Causes of Plaintiff's SMZL. ......................................................................................................... 12

CONCLUSION .................................................................................................................... 15

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. SAMUEL BERKMAN

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2726

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Pennsylvania Eng'g Corp.*,
    102 F.3d 194 (5th Cir. 1996)............................................................................................... 4

*Barnes v. The Hershey Co..*,
    2016 WL 192310 (N.D. Cal. Jan. 15, 2016) ...................................................................... 6

*Black v. Food Lion, Inc.*,
    171 F.3d 308 (5th Cir. 1999).............................................................................................. 14

*Bland v. Verizon Wireless (VAW) L.L.C.*,
    538 F.3d 893 (8th Cir. 2008).............................................................................................. 14

*Borg-Warner Corp. v. Flores*,
    232 S.W. 3d 765 (Tex. 2007)............................................................................................... 9

*Clausen v. M/V NEW CARISSA*,
    339 F.3d 1049 (9th Cir. 2003)............................................................................................. 7

*Cooper v. Brown*,
    510 F.3d 870 (9th Cir. 2007)............................................................................................... 2

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ...................................................................................................... 2, 15

*Doe v. Ortho-Clinical Diagnostics, Inc.*,
    440 F. Supp. 2d 465 (M.D.N.C. 2006).............................................................................. 15

*Engilis v. Monsanto Co.*,
    No. 3:19-cv-07859-VC ........................................................................................................ 5

*Hall v. Conoco Inc.*,
    886 F.3d 1308 .................................................................................................................... 15

*Kilpatrick v. Breg, Inc.*,
    613 F.3d 1329 .................................................................................................................... 14

*Laux v. Mentor Worldwide, LLC*,
    295 F. Supp. 3d 1094 (C.D. Cal. 2017), *aff'd*, 786 F. App'x 84 (9th Cir. 2019)..................... 7

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*,
    892 F.3d 624 (4th Cir. 2018)............................................................................................... 9

*McClain v. Metabolife Int'l, Inc.*,
    401 F.3d 1233 (11th Cir. 2005)........................................................................................... 9

*Nelson v. Tenn. Gas Pipeline Co.*,
    243 f.3d 244 (6th Cir. 2001) ........................................................................... 6

*Perry v. Novartis Pharm. Corp.*,
    564 F. Supp. 2d 452 (E.D. Pa. 2008) ............................................................. 14

*Persian Gulf Inc. v. BP W. Coast Prod. LLC*,
    632 F. Supp. 3d 1108 (S.D. Cal. 2022) ........................................................... 2

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ............................ 2

*In re Roundup Prod. Liab. Litig.*,
    390 F. Supp. 3d 1102 (N.D. Cal. 2018) ....................................................... 4, 5

*In re Roundup Prods. Liab. Litig.*,
    Pretrial Order No. 288 ........................................................................ 5, 12, 13

*Stanley v. Novartis Pharm. Corp.*,
    11 F.Supp.3d 987 (C.D. Cal. 2014) ................................................................ 7

*Tamraz v. Lincoln Elec. Co.*,
    620 F.3d 665 (6th Cir. 2010) ........................................................................ 14

*Westberry v. Gislaved Gummi AB*,
    178 F.3d 257 (4th Cir. 1999) .......................................................................... 7

**Statutes**

Cal. Evid. Code § 720 ..................................................................................... 2, 3

**Other Authorities**

Federal Rule of Evidence 702 ...................................................................... 1, 2, 3

Restatement (Third) of Torts § 28 cmt 4 (2010) .............................................. 15

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. SAMUEL BERKMAN

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

## INTRODUCTION

Plaintiff William Turnoff ("Plaintiff") has disclosed hematologist Dr. Samuel Berkman to opine on whether "Roundup exposure [was] the most likely…cause of [Plaintiff's] marginal splenic zone lymphoma [("SMZL")]," a subtype of non-Hodgkin's lymphoma ("NHL"). *See* Ex. A, Berkman *Turnoff* Report at 1; Ex. B, Berkman *Turnoff* Dep. at 251:25-252:17. Dr. Berkman also purports to opine on whether glyphosate-based Roundup may cause NHL in humans. Ex. A, Berkman *Turnoff* Report at 2; Ex. B, Berkman *Turnoff* Dep. at 12:8-14. Because Dr. Berkman's opinions do not meet the requirements for expert admissibility under Federal Rule of Evidence 702, they should be excluded.

## BACKGROUND

Plaintiff served on Monsanto the expert report of Dr. Berkman, a hematologist with a thirty-year history of testifying for plaintiffs in lawsuits, to offer expert opinions that Plaintiff's exposure to glyphosate-based Roundup most likely caused his SMZL. *See* Ex. B, Berkman *Turnoff* Dep. at 39:12-18; 41:17-42:3; 46:2-50:23. Dr. Berkman drafted a report in this case, purporting to opine that it is "much more likely than not" that Plaintiff's "lymphoma is related to his prolonged extensive 20 year roundup exposure." *See* Ex. A, Berkman *Turnoff* Report at 5. To reach his opinion, Dr. Berkman reviewed Plaintiff's deposition, Plaintiff's hematologist Dr. Frederick Wittlin's deposition, and Plaintiff's medical records. *Id.* at 1. He ultimately concluded that:

> [b]ased on the extensive literature indicating a relationship of Glyphosate exposure to non-Hodgkin's lymphoma in some patients and this patient's findings of splenomegaly, thrombocytopenia, a bone marrow read out by the pathologist as consistent with a splenic marginal cell lymphoma, the presence of mutations and a consistent sizeable monoclonal B cell clone, which varies up to 50% in size, as well as the considerable length of time of his exposure to roundup and absence of any other known risk factors for lymphoma, I therefore conclude that much more likely than not his lymphoma is related to his prolonged extensive 20 year roundup exposure.

*Id.* at 5; *see also* Ex. B, Berkman *Turnoff* Dep. at 17:25-18:25.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. Fed. R. Evid. 702. The proponent of the expert bears the burden of proving that the expert's proffered testimony is admissible. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). The trial judge is charged with the responsibility of acting as a gatekeeper to "ensure that any and all scientific testimony…is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Expert opinion testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010). "[A]n expert's scientific conclusions must be supported by 'good grounds for each step in the analysis,' meaning that 'any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible.'" *Persian Gulf Inc. v. BP W. Coast Prod. LLC*, 632 F. Supp. 3d 1108, 1164–65 (S.D. Cal. 2022) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

## ARGUMENT

### I. The Court Should Exclude Dr. Berkman's General Causation Opinion.

Although Dr. Berkman's primary task in this litigation is to answer the question of whether Roundup exposure was the most likely cause of Plaintiff's NHL, he also purports to offer an opinion on general causation—*i.e.*, whether Roundup is generally capable of causing NHL in humans. Ex. A, Berkman *Turnoff* Report at 2; Ex. B, Berkman *Turnoff* Dep. at 12:8-14. Dr. Berkman's opinions on general causation should be excluded because he is not qualified to offer them and because he has not followed a valid, generally accepted methodology to reach them.

#### A. Dr. Berkman Is Not Qualified To Opine On General Causation.

Dr. Berkman lacks the qualifications necessary to render any opinion on whether glyphosate-based Roundup causes NHL generally. To be admissible, an expert's testimony must be based on his specific "knowledge, skill, experience, training, and education" that is connected to the "subject to which his testimony relates." Cal. Evid. Code § 720. Dr. Berkman admits he is

not an expert in pesticides.  Ex. B, Berkman *Turnoff* Dep. at 56:13-18.  He has never published anything related to any type of pesticide or herbicide, let alone glyphosate or Roundup. Ex. B, Berkman *Turnoff* Dep. at 106:4-20; 106:24-107:2; 107:14-17.  Dr. Berkman has also never conducted any clinical research regarding NHL generally or SMZL specifically.  Ex. B, Berkman *Turnoff* Dep. at 63:2-14; 107:3-13.

Nor does Dr. Berkman possess the requisite expertise to testify about IARC's glyphosate Monograph or any of the epidemiological literature upon which he bases his general causation opinions.  Although Dr. Berkman had never heard of IARC or read its Monograph on glyphosate before being retained as an expert by Plaintiff in this case, Ex. B, Berkman *Turnoff* Dep. at 147:23-148:12, Dr. Berkman's general causation opinions are largely based on it.  Yet, remarkably, Dr. Berkman admitted that he did not even understand that IARC performed a hazard assessment, as opposed to a risk assessment, in that Monograph.  Ex. B, Berkman *Turnoff* Dep. at 164:21-165:8; 167:25-168:11.  Moreover, IARC's hazard assessment was largely driven by toxicology and mechanistic studies, areas in which Dr. Berkman admits he has no expertise.  Ex. B, Berkman *Turnoff* Dep. at 12:22-13:4; 55:16-21; 120:4-9; 120:15-121:2; 172:11-15; 262:17-263:7.  Additionally, Dr. Berkman is not an epidemiologist.  Ex. B, Berkman *Turnoff* Dep. at 54:24-25; 173:7-23.  He admitted repeatedly during his deposition that he chose to rely on certain epidemiological literature to conclude that glyphosate causes NHL solely because Plaintiff's expert Dr. Weisenburger has relied on it.  Ex. B, Berkman *Turnoff* Dep. at 29:10-25; 203:17-24; 249:1-14.

Dr. Berkman is not qualified to provide a general causation opinion.  Therefore, the Court should not permit him simply to parrot IARC's glyphosate Monograph, especially when he has no true qualifications or experience in designing, executing, or interpreting that science.  His regurgitation of information from others without the addition of any expertise of his own does not meet the standard of Rule 702, and his opinions must be excluded.  Cal. Evid. Code § 720.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**B.    Dr. Berkman's General Causation Opinion Is Unreliable.**

Even if Dr. Berkman were qualified to provide his general causation opinions, they should still be excluded because the methodology he used for rendering any opinion that glyphosate-based Roundup causes cancer generally is unreliable.

**1.    Dr. Berkman's Opinions Merely Parrot IARC's "Hazard Assessment," Which Does Not Ascertain Whether Glyphosate Is Likely to Cause NHL Under Real World Conditions.**

Dr. Berkman largely bases his general causation opinions on the IARC Monograph on glyphosate, which constitutes a "hazard" assessment that does not ascertain whether glyphosate is likely to cause NHL under real world conditions. Ex. B, Berkman *Turnoff* Dep. at 249:15-250:13. However, his reliance on IARC cannot and does not reliably support his general causation opinions in this case.

IARC employed a "threshold of proof" that is "lower than that appropriate in tort law." *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 198 (5th Cir. 1996) (affirming exclusion of experts who employed a "weight of the evidence analysis used by organizations such as IARC in concluding [ethylene oxide] exposure causes brain cancer"). For that reason, this Court has specifically warned against experts—like Dr. Berkman here—who "largely parrot" IARC's analysis and then attempt to bootstrap a general causation opinion using IARC's conclusion:

> Throughout much of this case, the plaintiffs seem to have operated under the assumption that they can clear the general causation hurdle simply by showing that IARC's decision to designate glyphosate a probable human carcinogen is scientifically sound. Accordingly, they have put forward some expert opinions that largely parrot IARC's analysis and conclusions. But whether glyphosate is "probably carcinogenic to humans" as IARC defines that phrase is not what's directly at issue here.

*In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1113-14 (N.D. Cal. 2018) (citations omitted). IARC's conclusions fall short of the "more probable than not" causation standard relevant here, because IARC sought only to analyze whether glyphosate "is an agent that is capable of causing cancer under some circumstances." *See* Ex. C, Monograph Preamble at 2. The Monograph's Preamble explains that the Monographs "identify cancer hazards even when risks are very low at current exposure levels." *Id.*; *see also* Ex. B, Berkman *Turnoff* Dep. at 168:15-18; 172:2-10. As Dr. Berkman acknowledges, IARC could not rule out that any associations seen

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

- 4 -

between glyphosate and NHL were the result of chance, confounding, or bias.  *See* Ex. D, Monograph 112 at 78; *see also* Ex. C, Monograph Preamble at 20; Ex. B, Berkman *Turnoff* Dep. at 161:19-24.  Moreover, while Dr. Berkman agrees that human epidemiological studies are the most important to consider when answering the question of whether Roundup causes cancer,[1] Dr. Berkman concedes that IARC did *not* conclude there was sufficient evidence that glyphosate is carcinogenic in humans.  Ex. B, Berkman *Turnoff* Dep. at 157:14-22.

Dr. Berkman's opinion does not meet the standard required of Plaintiff, as he bases his opinion on a hazard assessment, concedes that the epidemiology studies are not sufficient to show a causal relationship between glyphosate and NHL, and relies on animal and mechanistic data which courts have held are not relevant to an opinion that a substance can cause a disease in humans at real would exposure levels.  Ultimately, he uses no coherent methodology at all to support his general causation opinion.  He merely parrots a seven-year-old analysis by IARC that does not fit the causation inquiry in this case.  *See In re Roundup*, 390 F. Supp. 3d at 1115-16 (expert conclusions that go no further than an IARC conclusion that a substance "probably" causes cancer does not "fit" the general causation hurdle).  Therefore, his opinion must be excluded.

**2.    Dr. Berkman Relies Exclusively on Other Experts in Opining on Epidemiological Literature and Study Results That Are Not Adjusted for the Participants' Use of Other Pesticides.**

Despite IARC's conclusion that epidemiological studies were not sufficient to establish a causal connection between glyphosate and NHL, Dr. Berkman proceeds to cherry-pick and rely on the results of epidemiological studies that support his pre-ordained conclusion.  Ex. A, Berkman *Turnoff* Report at 2.  As this Court noted recently in ruling on Monsanto's motion to exclude certain causation experts in *Engilis v. Monsanto Co.*, No. 3:19-cv-07859-VC, an expert's "cherry-pick[ing] the findings of the epidemiological studies, reporting only certain odds ratios—those most favorable to his ultimate opinion" disqualifies his testimony.  *See In re Roundup Prods. Liab. Litig.*, Pretrial Order No. 288: Order Granting Motions to Exclude Experts Charles and Schneider, MDL No. 2741, Case No. 16-md-02741-VC (N.D. Cal. Nov. 15, 2023), at 3 [Dkt. No. 17504].

---

[1] Ex. B, Berkman *Turnoff* Dep. at 163:22-164:4; 174:20-25; 175:1-4.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Making matters worse, Dr. Berkman failed to apply any reliable methodology to his analysis of this cherry-picked epidemiology data. Dr. Berkman relies on studies that fail to adjust for other confounders—namely, other pesticide use—despite no valid basis or explanation for doing so. He admits it is important to adjust for confounders in epidemiological studies "because if you don't do that, you don't know whether you've got a true cause-and-effect relationship…." Ex. B, Berkman *Turnoff* Dep. at 185:1-7. Despite Dr. Berkman's acknowledgement that it is "optimal" to adjust for other pesticides when reviewing epidemiological studies on glyphosate, Ex. B, Berkman *Turnoff* Dep. at 187:15-24, he relies almost exclusively on studies that fail to do so. *See e.g.*, Ex. B, Berkman *Turnoff* Dep. at 195:8-25 (McDuffie (2001)); 212:5-11 (Eriksson (2008)); 246:3-5 (Cocco (2013)). He further admits that when the data from the studies he relied on is adjusted for other pesticide use, the results show no statistically significant associations between glyphosate and NHL. *See e.g.*, Ex. B, Berkman *Turnoff* Dep. at 194:6-195:3 (McDuffie); Ex. B, Berkman *Turnoff* Dep. at 208:5-16; 209:1-8, 17-20 (Eriksson); Ex. B, Berkman *Turnoff* Dep. at 225:13-17 (Hardell (2002)). Tellingly, when confronted with the unreliability of the epidemiological data upon which he relies at his deposition, Dr. Berkman back-pedaled, claiming that he is "relying less on [the epidemiological literature] than [he is] on [his] experience as a clinician and evaluating this patient and all his risk factors and what he doesn't have" in reaching his opinions in this case. Ex. B, Berkman *Turnoff* Dep. at 247:10-248:8.

Failing to account for likely confounders is a serious methodological error. *Barnes v. The Hershey Co.*, 2016 WL 192310, at *9 (N.D. Cal. Jan. 15, 2016); *see also Nelson v. Tenn. Gas Pipeline Co.*, 243 f.3d 244, 253 (6th Cir. 2001). Dr. Berkman's use of unadjusted data as the basis for his opinion, where adjusted data are available, is unreliable and warrants exclusion of his general causation opinion.

**II.    The Court Should Exclude Dr. Berkman's Specific Causation Opinion.**

Dr. Berkman's opinions that Roundup more likely than not caused Plaintiff's SMZL are no more reliable and also warrant exclusion. To determine Roundup as the "most likely cause" of Plaintiff's cancer, Dr. Berkman states that he "read the literature"; considered Plaintiff's "long exposure to Roundup," including whether Plaintiff wore gloves while applying Roundup;

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

considered that Plaintiff "had mutations" in his chromosomes; and looked at Plaintiff's "family history, … exposure to infections, and other risk factors." Ex. B, Berkman *Turnoff* Dep. at 17:25-18:25; 252:18-254:18; 339:20-340:9. Dr. Berkman essentially claims he performed a differential diagnosis to reach his specific causation opinions.

A differential diagnosis is "a patient-specific process of elimination that medical practitioners use to identify the most likely cause of a set of signs and symptoms from a list of possible causes." *Stanley v. Novartis Pharm. Corp.*, 11 F.Supp.3d 987, 1000 (C.D. Cal. 2014) (citations and internal quotations omitted). "The first step in a differential diagnosis is to compile a list of potential causes of the ailment, then the expert must engage in a process of elimination to rule out those potential causes." *Laux v. Mentor Worldwide, LLC*, 295 F. Supp. 3d 1094, 1098 (C.D. Cal. 2017), *aff'd*, 786 F. App'x 84 (9th Cir. 2019). A differential diagnosis "that neglects to consider a hypothesis that might explain the clinical findings under consideration," however, is unreliable and inadmissible. *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057 (9th Cir. 2003); *see also Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999) (finding that "[a] differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation").

A. **Dr. Berkman Does Not Reliably Rule In Roundup as a Cause of Plaintiff's NHL.**

1. **Dr. Berkman Relies On No Data Showing Evidence of a Statistically Significant Association Between Glyphosate and Plaintiff's SMZL.**

Dr. Berkman's "methodology" for ruling in Roundup rests entirely on his unsupported and speculative inference that because he contends there is association between Roundup and NHL overall, there must also be an association between Roundup and Plaintiff's SMZL. Indeed, Dr. Berkman relies on the same cherry-picked, epidemiological data points for NHL overall to rule in Roundup as a cause of Plaintiff's SMZL. *See supra* at Part I, Section B.2 at 5-6; Ex. B, Berkman *Turnoff* Dep. at 17:25-18:25; 252:18-254:18. His unfounded assumption that an association between Roundup and NHL dictates that there must be an association between Roundup and Plaintiff's SMZL is not scientifically sound.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. SAMUEL BERKMAN

Dr. Berkman's "ruling in" of Roundup is further undermined by the lack of evidence of an association between glyphosate and SMZL. Dr. Berkman acknowledges that different driver mutations occur in the different subtypes of NHL, including SMZL (NOTCH mutation and 7q minus). Ex. B, Berkman *Turnoff* Dep. at 93:18-21; 94:21-95:10. However, rather than identify any scientific literature finding a link between glyphosate and Roundup and SMZL, he conceded the exact opposite—that he is aware of *no* scientific literature that has connected Roundup or glyphosate to SMZL mutations. Ex. B, Berkman *Turnoff* Dep. at 95:6-18. More importantly, Dr. Berkman testified the mutations found in Plaintiff were trisomy 13 and monozygosity 21, but he is not aware of any literature that supports the notion that those specific mutations are caused by Roundup or glyphosate. Ex. B, Berkman *Turnoff* Dep. at 283:4-13.

SMZL is a rare lymphoma, and Dr. Berkman has only treated a patient with SMZL once or twice in his career. Ex. B, Berkman *Turnoff* Dep. at 63:22-64:15; 66:8-17. He agrees that the cause of most NHL is unknown. Ex. B, Berkman *Turnoff* Dep. at 19:1-18; 68:7-20; 68:21-69:8. Nonetheless, Dr. Berkman opines that Roundup was "the major cause" of Plaintiff's SMZL, despite his admissions that:

- there is nothing unique about Plaintiff's SMZL or Plaintiff's clinical presentation, sign, or symptoms, that would help identify Roundup as its cause. Ex. B, Berkman *Turnoff* Dep. at 283:14-284:4; 285:12-15.

- there is nothing about Plaintiff's pathology, imaging studies, or lab test results that point to Roundup as the cause of his SMZL. Ex. B, Berkman *Turnoff* Dep. at 284:10-285:3; 285:23-286:8.

- there is no biomarker or pathologic marker that points to glyphosate or Roundup as a cause of Plaintiff's SMZL. Ex. B, Berkman *Turnoff* Dep. at 285:16-22.

- no medical record that Dr. Berkman reviewed stated that glyphosate or Roundup caused or contributed to cause Plaintiff's SMZL. Ex. B, Berkman *Turnoff* Dep. at 286:21-25.

- none of Plaintiff's treating physicians opined that Roundup caused or contributed to cause Plaintiff's SMZL. Ex. B, Berkman *Turnoff* Dep. at 287:1-13.

Because Dr. Berkman lacks a reliable basis for ruling in Roundup as a cause of Plaintiff's SMZL, his opinions must be excluded.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

### 2.     Dr. Berkman Does Not Quantify Plaintiff's Actual Glyphosate Dose.

Dr. Berkman's ruling in of Roundup suffers from a second flaw.  Even if Roundup could cause SMZL, he would need to determine that Plaintiff received a sufficient dose of Roundup for this to occur.  Dr. Berkman agrees that for Roundup to have any potential health effect on any person, he or she must first have an absorbed dose from applying Roundup.  Ex. B, Berkman *Turnoff* Dep. at 116:6-10.  Courts often describe dose as "the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse event"—"dose." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005). The reason dose matters is simple: "all chemical agents are intrinsically hazardous," and "whether they cause harm is only a question of dose." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 892 F.3d 624, 639 (4th Cir. 2018); *Borg-Warner Corp. v. Flores*, 232 S.W. 3d 765, 770-73 (Tex. 2007) (discussing importance of dose on causation inquiry and reversing judgment in plaintiff's favor following jury trial where plaintiff failed to establish sufficient dose to cause alleged injuries).

However, Dr. Berkman never attempted to calculate Plaintiff's average daily dose of glyphosate in this case.  Ex. B, Berkman *Turnoff* Dep. at 128:20-129:4.  Rather than provide any dose calculation of glyphosate for Plaintiff, Dr. Berkman "assumes" there was glyphosate in Plaintiff's body when he first developed SMZL, despite the fact he cannot point to any test, measurement, or medical record that shows Plaintiff had measurable glyphosate in his body.  Ex. B, Berkman *Turnoff* Dep. at 125:7-18; 126:4-127:7.  Such an "assumption" is not the product of reliable methodology.  This is especially so, given Dr. Berkman's acknowledgment that humans can be exposed to levels of glyphosate in the environment that do not lead to adverse health effects in humans.  Ex. B, Berkman *Turnoff* Dep. at 120:15-121:2.[2]

---

[2] Dr. Berkman also testified at his deposition that he "get[s] the feeling" that Plaintiff had an average daily dose of glyphosate that exceeded approved regulatory thresholds for glyphosate exposure. Ex. B, Berkman *Turnoff* Dep. at 128:1-19.  His opinion on this issue should be excluded.  Dr. Berkman agrees he is not a regulatory expert.  Ex. B, Berkman *Turnoff* Dep. at 55:22-24.  He concedes he is not familiar with the dose levels of glyphosate that are set by state, federal, and international regulators. Ex. B, Berkman *Turnoff* Dep. at 121:3-7; 129:13-130:5.  Nor did he make any effort to calculate Plaintiff's alleged dose of glyphosate in this case. Ex. B, Berkman *Turnoff* Dep. at 128:20-129:4.  Any "opinion" Dr. Berkman has about how Plaintiff's dose of glyphosate

### 3. Dr. Berkman Does Not Reliably Evaluate Plaintiff's Actual Exposure to Glyphosate-Based Roundup.

Without any data showing a statistically significant association between glyphosate and SMZL and any dose at which Plaintiff was exposed to glyphosate-based Roundup, Dr. Berkman pivots to the vagaries of "exposure" to support his opinion that Roundup was the "most likely" cause of Plaintiff's SMZL. This, too, is insufficiently reliable methodology.

Dr. Berkman has not quantified in hours or days the total amount of time Plaintiff sprayed Roundup. Ex. B, Berkman *Turnoff* Dep. at 263:8-12. Instead, he merely concludes that "[t]he amount of time [Plaintiff] was exposed to Roundup is 20 years, which is the average latency period of NHL in persons with long-term exposure to toxic chemicals and solvents. This appears to have been sufficient exposure to cause his problem." Ex. A, Berkman *Turnoff* Report at 4 (footnote omitted). His conclusion is flawed for several reasons.

**First**, Dr. Berkman contends that "sufficient exposure" to Roundup equates to twenty years of exposure, relying solely on Dr. Weisenburger's conclusion that "the average latency period of NHL in persons with long-term exposure to toxic chemicals and solvents" is twenty years. Ex. B, Berkman *Turnoff* Dep. at 263:13-264:6; 265:2-5. However, as Dr. Berkman concedes, Plaintiff was not diagnosed with SMZL until 2010, approximately ten (not twenty) years after he claims he stopped using Roundup.[3] Ex. B, Berkman *Turnoff* Dep. at 124:15-21; 264:7-11.

**Second**, Dr. Berkman's conclusions regarding the "amount of time [Plaintiff] was exposed to Roundup" are based solely on the self-reported history of Roundup exposure Plaintiff testified to in his deposition. Ex. B, Berkman *Turnoff* Dep. at 270:25-271:5; 271:15-272:3. He did not see contemporaneous documentation that would verify Plaintiff's memory of spraying Roundup. Ex. B, Berkman *Turnoff* Dep. at 273:24-274:17. Despite the inherent difficulties in relying on a

---

(which he did not calculate) compares to approved regulatory thresholds for glyphosate exposure (which he is unfamiliar with) would be purely speculative and should be excluded.

[3] When asked what role the twenty-year latency period would play in his analysis of Plaintiff's overall exposure if it were inaccurate, Dr. Berkman responded, "Well, again, you know, I mean, it depends on the dose, too. You know, if he's got a higher dose, it may be a lesser latency period." Ex. B, Berkman *Turnoff* Dep. at 264:12-10. But this does not save Dr. Berkman's conclusions, as he testified that he did not calculate Plaintiff's dose. Ex. B, Berkman *Turnoff* Dep. at 128:20-129:4; 264:21-265:1.

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. SAMUEL BERKMAN

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    witness's memory of spraying habits from years (or decades) ago, Dr. Berkman never conducted a

2    site visit of Plaintiff's property or investigated the types of weeds that can grow in North Miami

3    Beach where Plaintiff claims he applied Roundup.  Ex. B, Berkman *Turnoff* Dep. at 280:17-19;

4    280:23-281:1.

5         Dr. Berkman simply assumed that Plaintiff's memory in his deposition was accurate and

6    that his exposure stories were correct.  This unscientific approach yielded critical errors in Dr.

7    Berkman's exposure analysis, as revealed at his deposition.  For example, although Plaintiff claims

8    he used ready-to-use Roundup from 1980 until 2000, Dr. Berkman is not sure whether the ready-

9    to-use Roundup product that Plaintiff claims he used was even on the market in 1980.  Ex. B,

10   Berkman *Turnoff* Dep. at 274:23-276:3.  When confronted with a document showing that ready-to-

11   use Roundup was first accepted by the EPA in September of 1987, Ex. B, Berkman *Turnoff* Dep.

12   at 276:22-279:13, Dr. Berkman testified that he was not aware of any evidence that a ready-to-use

13   Roundup product was on the market before 1987 and acknowledged that this fact could call

14   Plaintiff's memory into question.  Ex. B, Berkman *Turnoff* Dep. at 279:14-20.  Dr. Berkman

15   acknowledged that if Plaintiff did not start using ready-to-use Roundup until 1987, instead of 1980,

16   his claimed use of Roundup would total thirteen years, rather than twenty years—further

17   undermining the very foundation of his opinion that Plaintiff had twenty years of exposure to

18   Roundup that is "sufficient," in his view, to cause Plaintiff's SMZL.  Ex. B, Berkman *Turnoff* Dep.

19   at 279:21-280:1.

20        ***Third***, Dr. Berkman suggests that his belief that Plaintiff "may have gotten [Roundup] on

21   his hands" while spraying caused him to conclude Roundup most likely caused Plaintiff's SMZL.

22   Ex. B, Berkman *Turnoff* Dep. at 339:20-340:9; *see id.* at 265:6-14.  However, as Dr. Berkman

23   acknowledges, Plaintiff testified in his deposition that he had no recollection of getting Roundup

24   on his bare skin and only sprayed a ready-to-use Roundup product rather than a product that

25   required mixing.  Ex. B, Berkman *Turnoff* Dep. at 266:6-267:2.  Dr. Berkman never interviewed

26   Plaintiff to get clarification on the amount of Roundup Plaintiff estimates he got on his skin.  Ex.

27   B, Berkman *Turnoff* Dep. at 267:25-268:2.  He simply "assume[d] that [Plaintiff] got some

28   exposure through his hands, particularly since [Plaintiff] doesn't remember" wearing gloves when

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. SAMUEL BERKMAN

spraying Roundup.  Ex. B, Berkman *Turnoff* Dep. at 269:18-270:12.  Thus, to the extent Dr. Berkman's specific causation opinion is based on the supposed amount of glyphosate-based Roundup Plaintiff got on his skin, it is contradictory of Plaintiff's sworn testimony, speculative, and unreliable.

### B.     Dr. Berkman Does Not Reliably Rule Out Other Potential Causes of Plaintiff's SMZL.

In addition to being unable to reliably rule in Roundup as a cause of Plaintiff's SMZL, Dr. Berkman fails to reliably rule out other potential causes.  Indeed, Dr. Berkman testified that he does not believe there are any "other potential cause[s]" of Plaintiff's lymphoma, Ex. B, Berkman *Turnoff* Dep. at 256:3-258:21, and was quick to dismiss the potential causes evaluated by Monsanto's expert witnesses—such as diabetes, psoriasis, obesity, and family history of cancer—as not "relevant." *Id*.

*Age:* Dr. Berkman agrees that age is a risk factor for NHL.  Ex. B, Berkman *Turnoff* Dep. at  98:21-23; 292:22-293:9.  He even admits that growing older and being sixty-one at the time of his diagnosis put Plaintiff at an increased risk for developing lymphoma, and "[i]t's possible" that Plaintiff's age may have contributed to the development of his SMZL.  Ex. B, Berkman *Turnoff* Dep. at 294:4-17.  However, he does not explain how Plaintiff's age compares to his exposure to Roundup as a risk factor for SMZL.

*Psoriasis*: Dr. Berkman agrees that Plaintiff was diagnosed with psoriasis and that published, peer-reviewed literature identifies psoriasis as a known risk factor for lymphoma.  Ex. B, Berkman *Turnoff* Dep. at 300:13-18; 301:3-9.  Dr. Berkman did not consider psoriasis as a risk factor for Plaintiff's SMZL anywhere in his report, dismissing it and saying, "I don't think that psoriasis is a big player here." Ex. B, Berkman *Turnoff* Dep. at 301:17-302:13.  He does not explain how Plaintiff's psoriasis compares to his exposure to Roundup as a risk factor for SMZL.

*Obesity:* Dr. Berkman acknowledges that Plaintiff was borderline obese before his diagnosis of SMZL.  Ex. B, Berkman *Turnoff* Dep. at 321:12-322:6.  Dr. Berkman testified that "it's possible" that being obese might increase someone's risk for NHL based on published literature.  Ex. B, Berkman *Turnoff* Dep. at 321:7-11; 327:22-328:18.  Indeed, this Court has recognized, "obesity is widely discussed as a possible risk factor for NHL." *See In re Roundup*

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*Prods. Liab. Litig.*, Pretrial Order No. 288 at 8 [Dkt. No. 17504].  But Dr. Berkman did not consider Plaintiff's obesity as a risk factor for his development of SMZL.  Ex. B, Berkman *Turnoff* Dep. at 323:2-7.  In fact, he admits he does not even analyze this risk factor in his report.  Ex. B, Berkman *Turnoff* Dep. at 323:8-10.  When asked whether he can rule out the contribution of obesity or being overweight to Plaintiff's development of NHL, Dr. Berkman responded, without explanation, "I would just give more weight to the Roundup because it's a very rare tumor and Roundup is a more unusual type of thing than obesity."  Ex. B, Berkman *Turnoff* Dep. at 328:19-329:5.  This Court recently excluded an expert's specific causation opinion where the expert's report "made no mention of a conclusion that obesity was not a serious risk factor nor of any literature that he might have relied on to reach such a conclusion."  *In re Roundup Prods. Liab. Litig.*, Pretrial Order No. 288 at 11 [Dkt. No. 17504]. Dr. Berkman's failure to explain how Plaintiff's obesity compares to his exposure to Roundup as a risk factor for SMZL warrants exclusion of his opinion.

**Family History of Cancer**:  Although Dr. Berkman acknowledged that Plaintiff's mother and brother have had cancer, Dr. Berkman characterized literature that states having one first-degree relative with any type of cancer increases a person's risk of NHL as "a fishing expedition" Ex. B, Berkman *Turnoff* Dep. at 331:5-332:4.  Dr. Berkman acknowledged he has heard of that literature, yet stated, "Well, I still would not put that as a significant factor up at the top," without any further explanation or analysis in his report.  Ex. B, Berkman *Turnoff* Dep. at 332:5-334:21. He does not explain how Plaintiff's family history of cancer compares to his exposure to Roundup as a risk factor for SMZL.

**Naturally-Occurring Mutations**:  In addition to failing to engage with Plaintiff's known alternative risk factors, Dr. Berkman simply ignores the reality that naturally-occurring genetic mutations were responsible for Plaintiff's development of SMZL. Ex. B, Berkman *Turnoff* Dep. at 339:15-19.  It is accepted that approximately 95% of NHL cases result from naturally-occurring cell replication errors that lead to genetic mutations.  *See* Ex. E, Cristian Tomasetti & Bert Vogelstein, *Variation in cancer risk among tissues can be explained by the number of stem cell divisions*, 347 (6217) SCIENCE 78, Jan. 2, 2015 ("Tomasetti 2015"); Ex. F, C. Tomasetti, L. Li, and B. Vogelstein, *Stem cell divisions, somatic mutations, cancer etiology, and cancer prevention*, 355

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

SCIENCE 6331, Mar. 24, 2017 ("Tomasetti 2017").[4]  Dr. Berkman agrees that naturally occurring mutations lead to cancer, including B-cell lymphomas.  Ex. B, Berkman *Turnoff* Dep. at 91:20-92:1; 92:21-93:5.  In fact, Dr. Berkman testified it is "impossible" to rule out random replication errors as a cause of a patient's NHL.  Ex. B, Berkman *Turnoff* Dep. at 102:14-103:4.

Dr. Berkman's methodology must consider and reliably rule out naturally-occurring mutations in order to render a specific causation opinion—a task that Dr. Berkman readily admits he cannot do.  *See, e.g., Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670-71 (6th Cir. 2010) (affirming exclusion of causation opinion where expert could not explain how he differentiated randomly-occurring Parkinson's disease from Parkinson's disease caused by an occupational exposure); Ex. B, Berkman *Turnoff* Dep. at 102:14-103:4.  He concedes that exposure to Roundup is not required to develop NHL, Ex. B, Berkman *Turnoff* Dep. at 52:11-20; 53:11-14; 77:12-15, that no medical test shows whether Plaintiff's NHL was caused by Roundup, Ex. B, Berkman *Turnoff* Dep. at 284:10-285:3; 285:16-286:8; and that there is no clinical sign or symptom that would indicate that Plaintiff's NHL was caused by Roundup. Ex. B, Berkman *Turnoff* Dep. at 283:14-284:4; 285:12-15.  Yet he ignores the generally accepted state of cancer research, which is that most lymphomas are due to natural occurring mutations that accumulate through cell division as a person ages.

As many courts have concluded, "[w]here the cause of the condition is unknown in the majority of cases, [an expert] cannot properly conclude, based upon a differential diagnosis," that the plaintiff's exposure to a substance is the cause of the plaintiff's illness. *See Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 897 (8th Cir. 2008).[5]  This rule reflects a straightforward,

---

[4] In Tomasetti 2015 and Tomasetti 2017, leading cancer researchers conducted extensive research confirming that human tissues that experience more stem cell divisions over the course of a lifetime are more likely to develop cancer than human tissues that experience fewer stem cell divisions, due to naturally-occurring errors that occur when cells divide.

[5] *See also Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 675 (6th Cir. 2010) (reversing admission of expert opinion based on differential diagnosis where unknown cause "currently accounts for the vast majority of Parkinson's Disease cases, making it impossible to ignore and difficult to rule out"); *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329 at 1343 (expert properly excluded where he could not "explain why potentially unknown…alternative causes were not ruled out"); *Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999) (reversing expert opinion on causation where "neither [the expert] nor medical science knows the exact process that results in [the disease]"); *Perry v. Novartis Pharm. Corp.*, 564 F. Supp. 2d 452, 470 (E.D. Pa. 2008) (where a condition has mostly unknown

common-sense application of *Daubert* itself—where the cause of most cases of a disease cannot be identified, an expert who claims to pinpoint one risk factor through a differential diagnosis is simply speculating. Thus, courts regularly exclude expert testimony on causation that relies on a differential diagnosis in such cases. *See, e.g.*, *Hall v. Conoco Inc.*, 886 F.3d 1308, 1315 (collecting cases).

Dr. Berkman's failure to rule out alternative causes of Plaintiff's SMZL renders his "methodology" improper and warrants exclusion of his opinion. *See Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 476 (M.D.N.C. 2006) ("[I]f other possible causes of an injury cannot be ruled out, or at least the probability of their contribution to causation minimized, then the 'more likely than not' threshold for proving causation may not be met." (citation omitted)).

\*       \*       \*       \*

Ultimately, Dr. Berkman engages in an "always Roundup" methodology that determines Roundup to be the cause of Plaintiff's SMZL.  He rules in Roundup without any epidemiology data specific to Plaintiff's SMZL and without calculating any reliable dose, and he largely ignores alternative explanations of Plaintiff's SMZL, including the most likely one of naturally-occurring mutations. Dr. Berkman testified that, in his clinical practice, he has never been able to "pin" causation on glyphosate and Roundup exposure "a hundred percent." Ex. B, Berkman *Turnoff* Dep. at 104:17-105:12; Ex. B, Berkman *Turnoff* Dep. at 105:24-106:3; 329:6-9.  Yet, that is precisely what he does in this litigation.   Dr. Berkman cannot explain with any coherent scientific methodology why he has concluded that Roundup is the cause of Plaintiff's SMZL.  His *ipse dixit* opinion should therefore be excluded.

## CONCLUSION

For the reasons set forth above, the Court should grant Monsanto's Motion to Exclude Dr. Samuel Berkman's Testimony and exclude Dr. Berkman's opinions.

causes, an "analysis beyond a differential diagnosis will likely be required" to render a reliable scientific causation opinion); *Doe Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 478 (M.D.N.C. 2006) ("[The expert] did not properly perform the differential diagnosis given his failure to consider within his analysis the high probability that an unknown genetic cause cannot be ruled out as the specific cause of Minor Child Doe's autism."); Restatement (Third) of Torts § 28 cmt 4 (2010) ("When the causes of a disease are largely unknown," a differential diagnosis "is of little assistance.").

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Dated:  December 14, 2023

Respectfully submitted,

/s/ *Linda C. Hsu*
Linda C. Hsu
Attorneys for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of December, 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Linda C. Hsu*
Linda C. Hsu
Attorneys for Defendant Monsanto Company

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. SAMUEL BERKMAN