**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843 | Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 | Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
|---|---|
| | Case No.: 3:16-md-02741-VC |
| *Ricky Beavers, Jr. v. Monsanto Company*, 3:20-cv-08799-VC | **DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF JOHN FONTAINE** |
| | Hearing:<br>Date: March 1, 2024<br>Time: 10:00 a.m.<br>Place: San Francisco Courthouse, Courtroom 4 – 17th Floor |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 1, 2024 at 10:00 a.m., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of John Fontaine. Monsanto seeks an order excluding opinions of this witness under Federal Rule of Evidence 702.

Dated:  December 14, 2023                               Respectfully submitted,

                                                                            /s/ *Linda C. Hsu*
                                                                            Linda C. Hsu
                                                                            Attorneys for Defendant Monsanto Company

**INTRODUCTION**

Plaintiff disclosed John Fontaine, a rehabilitation and vocational counselor, as an economic damages testifying expert. Mr. Fontaine's report is exceedingly narrow in scope and limited in utility. It consists merely of a recitation of publicly available statistics showing the national average lifetime income of individuals based on whether they completed high school, some college, or a bachelor's degree. Mr. Fontaine applied no methodology or analysis to that data. Instead, he deferred to Neil Bennett, who calculated the net present value of those lifetime earnings averages. The only conclusion or opinion Mr. Fontaine added to that, as summed up in his deposition testimony, is one that hardly falls outside a layperson's knowledge: "what we're seeing consistently over time is the higher education you have, the more opportunities you have, and the higher level of wages that you earn…" Ex. A, 11/16/2023 Dep. Tr. 58:13-15.

This is not admissible expert testimony in this case for at least two reasons. First, Mr. Fontaine does not, as Rule 702(a) requires, apply any "scientific, technical, or other specialized knowledge" to either the national average income data he recites or to the facts of the case. He simply states information that documentary evidence could convey. Second, he does not provide an opinion that "fits" the facts of the case, as Daubert held to be necessary to "help the trier of fact to understand the evidence or to determine a fact in issue" for purposes of Rule 702(a). Because they do not meet the admissibility requirements of Rule 702, this Court should accordingly exclude Mr. Fontaine's opinions.

**LEGAL STANDARD**

A proposed expert witness must possess "knowledge, skill, experience, training, or education" sufficient to qualify him as an expert on the subject to which his testimony relates. Fed. R. Evid. 702. When an expert's field of expertise is not related to the subject on which he seeks to offer testimony, such testimony is inadmissible. *See White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002). Apart from qualifications, expert testimony must be (1) able to "help the trier of fact to understand the evidence or to determine a fact in issue," (2) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result of applying those principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The trial judge is charged with the responsibility of acting as a gatekeeper to "ensure that any and all scientific testimony … is not only relevant, but reliable." *Daubert*

*v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The court must also assess "whether the proffered expert testimony 'fits' the facts of the case" and, if not, exclude it. *Wettlaufer v. Mt. Hood R. Co.*, 77 F.3d 491 (9th Cir. 1996). The proponent of the expert has the burden to prove that the expert's testimony is admissible. *See, e.g.*, *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

## BACKGROUND

John Fontaine is a vocational rehabilitation counselor who, from 1994 until September 2023, worked at OSC Vocational Systems in Bothell, Washington, providing vocational assessments, rehabilitation counseling, and related services, largely for federal and state agency clients. Ex. B, Fontaine Rpt. at 7-8 (CV); Ex. A, Dep. Tr. 12:23-14:19. In late 2023 he left OSC to form his own firm, Fontaine Consulting Services. Ex. A, Dep. Tr. 13:23-14:2. In his new firm, Mr. Fontaine's professional work consists of "doing essentially the same thing" as before. *Id.* 20:15-19. Mr. Fontaine is also a career litigation testifier, hired by attorneys as a testifying expert in personal injury cases. *Id.* 14:18-19. During his 30-year tenure at OSC, Mr. Fontaine testified at deposition as a hired expert witness over 100 times. Ex. A, Dep. Tr. 20:13-14. Although disclosed as an expert on "Economic Damages," Mr. Fontaine has no economics degree or financial services experience and is not a CPA. Ex. B, Fontaine Rpt. Cover Page, 7; Ex. A, Dep. Tr. 18:6-20.

Mr. Fontaine acknowledges that the scope of his disclosed opinions is "fairly limited." Ex. A, Dep. Tr. 18:13. His economic damages opinions do not include any "opinions about the amount of medical expenses plaintiff in this case has incurred," nor "medical expenses plaintiff has paid or may be obligated to pay," nor "the amount of non-medical out-of-pocket expenses incurred by the plaintiff," nor "the present value of plaintiff's future medical care," nor "hedonic" losses or "life expectancy" related damages, nor "punitive damages." *Id.* 29:15-30:21. Mr. Fontaine's assignment was a mechanical recitation of national lifetime earnings statistics: "to identify what the average wages are, based on educational attainment and then compare those wages." Ex. A, Dep. Tr. 18:15-17.

Nor does Mr. Fontaine opine on anything specific to Mr. Beavers, whose injury is the basis of the claims in dispute and whose alleged loss in earning capacity gives rise to the asserted economic damages Mr. Fontaine purports to quantify. He explained: "I haven't interviewed Mr. Beavers or [been] asked to provide any opinions specifically to him." Ex. A, Dep. Tr. 18:13-15. *See also id.* 36:21-23

("Q. Was this report in any way tailored to Ricky Beavers? A. No, no."). Mr. Fontaine does not describe his work in this case as providing expertise or specialized knowledge applied to facts of the case; rather, he says he is "providing the information regarding earnings of individuals, based on levels of education," Ex. A, Dep. Tr. 18:11-12—information that is publicly available in databases of national employment statistics. As for the calculations based on those statistics to determine their net present value—i.e., the substance of his purported opinions—Mr. Fontaine deferred to others at deposition: "when it comes to the reduction of present day value and those calculations, I defer to an economist," *id.* 32:10-12.

In this case, that economist is OSC employee Neil Bennett. It was he, not Mr. Fontaine, who applied his analysis (basic arithmetic) to the data to determine the net present value of lifetime earnings-by-education-level averages. *Id.* 35:5-8 ("The calculations, however, were done by Mr. Bennett and he would have to speak to those calculations and the present day value and any reduction or addition that he made to those numbers, based on his opinions."). Mr. Fontaine did not do any of the calculations in his report—he merely parrots Mr. Bennett's calculated values.

## ARGUMENT

The Court should exclude the proffered opinions of Mr. Fontaine on economic damages for two reasons. First, mere generic statistics on national average lifetime earnings, reduced to net present value, with no application to Mr. Beavers' experience or potential lost earnings due to his NHL, lack any "fit" whatsoever to the facts of the case. Second, given that Mr. Fontaine's report details nothing more than the calculations of Mr. Bennett on those statistics, Mr. Fontaine is nothing but a conduit, and his expert opinions and testimony should be excluded.

**I.   Mr. Fontaine's Recitation Of Generic Earnings Statistics In Net Present Value Terms Lacks Any "Fit" To Mr. Beaver's Actual, Individualized Economic Loss Claim**

In addition to reliability, Rule 702 requires that proffered expert testimony will help the trier of fact by having a "fit" to the facts and issues of the case—that is, "that the proposed expert testimony is 'relevant to the task at hand,' i.e., that it logically advances a material aspect of the proposing party's case." Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1315 (9th Cir. 1995). Mr. Fontaine's report does not disclose any opinions that meet this "fit" requirement, because nothing in the national average earning data he summarizes pertains to what lost income potential Mr. Beavers can claim.

Mr. Fontaine's opinions about average income statistics do not provide any individualized assessment of what factors, experiences, capabilities, or other characteristics of Mr. Beavers would tend to suggest that, but for his claimed injury, his income might be average, above average, or below average.  Mr. Fontaine acknowledges that there are various "factors that go into an individual's earning capacity, besides education," including "impairments," "intelligence," "an individual's environment or family situation," "someone's location or geography," and "personality traits like … having a positive attitude, being a hard worker." Ex. A, Dep. Tr. 52:7-53:16.  *See also id.* 53:17-18 ("I think those are all factors in earning capacity, yes."). But Mr. Fontaine readily admits that he did not take any of this into account to form any kind of assessment or calculation of Mr. Beaver's future earning capacity, either with or without his injury. *See id.* 37:6-11 ("Q. Did the analysis in this report take into account Mr. Beavers' age? A. … I didn't specifically adjust any of this information based on his age specifically, no."), 37:13-15 ("Q. Do you have [to] take . . . into account his particular educational history in preparing this report? A. No."), 37:16-19 ("Q. Okay. Did you have any personal information about Mr. Beavers that you used in preparing this report? A. No."). As Mr. Fontaine explained, he was not even trying to individualize his opinion: "This report, again, is based on general data available in the census and average earnings of individuals, based on levels of education, so not specific to Mr. Beavers, no." *Id*. 37:19-22. His opinions thus have no "fit" to the question the jury will have to decide as to economic damages, which is what Mr. Beavers' expected lifetime earnings are, and how much they were diminished, if at all, as a result of NHL he allegedly contracted from exposure to Roundup.

Because Mr. Fontaine's testimony does not fit that question or the facts of the case relevant to its answer, and will not be helpful to the jury in determining economic damages, it is inadmissible.

**II.    Mr. Fontaine Impermissibly Acts As A Mere Conduit Of Another Expert's Opinions**

"While it is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert, an expert cannot simply act as a 'mouthpiece' for an expert of a different specialty." *Christiansen v. Syverson*,

516 F. Supp. 3d 1151, 1156 (D. Idaho 2021).[1] But that is what Mr. Fontaine impermissibly does in his report, by simply replicating Mr. Bennett's net present value calculations without any of his own input.

At deposition, Mr. Fontaine repeatedly deferred to Mr. Bennett any questions about the actual calculations that are the only analysis in his report other than simply reciting publicly available data. Indeed, for virtually every question asked of Mr. Fontaine about the methodology of his report and how the calculations in it were done, he answered by deferring to his absent colleague. *See* Ex. A, Dep. Tr. 39:22-23 ("I deferred those [present cash value] calculations to Mr. Bennett"), 40:22-24 ("again, I did not run those numbers, so I would defer the calculations and the percentages used to Mr. Bennett"), 48:18-19 ("again, I'm going to defer this to Mr. Bennett"), 48:22-23 ("I would have to again defer that to Mr. Bennett"), 49:18-19 ("again, I would defer that to Mr. Bennett"), 51:22 ("Again, I will defer that to Mr. Bennett"). Simply put, Mr. Fontaine was unable to answer questions about the only analytical substance of his report, the net present value calculations of average lifetime earnings data. That is because they are not his analysis.

Because the only arguably "expert" work in Mr. Fontaine's report is the work of another, Mr. Fontaine serves as nothing more than a conduit for Mr. Bennett's work, parroting his calculations. The Court should accordingly exclude Mr. Fontaine's opinions as mere mouthpiece expert testimony.

## CONCLUSION

For these reasons, the Court should grant Monsanto's motion to exclude the testimony of Plaintiff's expert witness John Fontaine purporting to support Plaintiff's economic damages claim.

Dated:  December 14, 2023	Respectfully submitted,

/s/ *Linda C. Hsu*
Linda C. Hsu
Attorneys for Defendant Monsanto Company

---

[1] *See also Tokio Marine & Fire Ins. Co., Ltd. v. Norfolk & Western Ry. Co.*, No. 98–1050, 98–1077, 1999 WL 12931, *4 (4th Cir. Jan. 14, 1999) ("[O]ne expert may not give the opinion of another expert who does not testify"); *American Key Corp. v. Cole National Corp.*, 762 F.2d 1569, 1580 (11th Cir.1985) ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not"); *Cholakyan v. Mercedes-Benz*, USA, LLC, 281 F.R.D. 534, 544 (C.D. Cal. 2012) (excluding expert opinion, citing defendant's "most serious," objection, which "raise[d] the specter that [the expert] has not independently evaluated the evidence, but [was] merely parroting the opinions and conclusions of another expert whose testimony [was] shielded from cross-examination").

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of December, 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Linda C. Hsu*
Linda C. Hsu