**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 | Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br>Case No. 3:16-md-02741-VC |
| *Brett Beckfield v. Monsanto Company*, 3:21-cv-05322-VC | **MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE TESTIMONY OF KENT JAYNE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing:**<br>Date: March 1, 2024<br>Time: 10:00 a.m.<br>Place: San Francisco Courthouse, Courtroom 4 – 17th Floor |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on March 1, 2024 at 10:00 a.m. or a date/time to be determined by the Court, in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Kent Jayne. Monsanto seeks an order excluding the opinions of this witness under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Dated:  December 14, 2023            Respectfully submitted,

                                     */s/ Linda C. Hsu*
                                     Linda C. Hsu
                                     Attorney for Defendant Monsanto Company

# INTRODUCTION

Plaintiff Brett Beckfield ("Plaintiff") alleges that he experienced mantle cell lymphoma, a subset of non-Hodgkin's lymphoma ("NHL"), from exposure to Monsanto Company's ("Monsanto") Roundup®-branded glyphosate-based herbicides. *See* Compl. ¶ 14. Plaintiff retained Kent Jayne to evaluate Plaintiff's loss of earnings and earning capacity at present value and future related life care needs and costs. *See* Declaration of Linda Hsu ("Hsu Decl."), Ex. A, Kent Jayne Dec. 22, 2022 Dep. ("Jayne Dep.") at 113:7-16; 140:17-141:9. Jayne concludes that Plaintiff is "essentially incapable of substantial gainful activity at the present time" (*See* Hsu Decl., Ex. B, Jayne Report at 5; Ex. A, Jayne Dep. at 238:17-21) and incapable of earning more than $16,500 (Ex. A, Jayne Dep. at 244:4-8).

Jayne's conclusions are based on several flaws. Jayne's methodology has not been subject to peer review and is not generally accepted in the scientific community. Further, Jayne's approach is based on unsupported assumptions that (i) Plaintiff's self-reported symptoms are connected to his cancer: (ii) Plaintiff is immunocompromised; and (iii) Plaintiff has terminal cancer. Having conceded that he is not a medical doctor, does not specialize in cancer (much less NHL), and lacks expertise in treating cancer, Jayne cannot put forth these assumptions without proper foundation, which he also lacks. As set forth more fully below Jayne's opinions are irrelevant and speculative, which renders them unhelpful and highly likely to confuse the jury. Their exclusion is warranted under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

# LEGAL STANDARD

To be admissible, expert testimony must: (1) come from a witness "qualified as an expert by knowledge, skill, experience, training, or education"; (2) be derived from "scientific, technical, or other specialized knowledge"; and (3) "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Moreover, an expert's conclusions are not admissible if they are based on an

unreliable foundation or methodology. *Daubert*, 509 U.S. at 592-95. Factors to consider in evaluating reliability are (1) whether the expert's opinion is susceptible to testing and has been subjected to testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been generally accepted in the scientific community. *Id.* at 593-94.

Although "[v]ocational rehabilitation is a social science that does not exactly mirror the fundamental precepts of the so-called harder sciences," *Daubert* is still applicable to assess the reliability of the methodology and opinions offered by such experts. *Elcock v. Kmart Corp.*, 233 F.3d 734, 747 (3d Cir. 2000). "Just as a scientist would want to duplicate the outcome when evaluating a colleague's claim that he had developed a technique for cold fusion, a vocational rehabilitationist assessing [a plaintiff]'s disability determination would want to test the underlying hypotheses and review the standards controlling the technique's operation in an attempt to reproduce the results originally generated." *Id*.

## ARGUMENT

### I. Jayne's Opinions Are Not Reliable Because His Methods are Not Peer-Reviewed.

The purpose of the *Daubert* analysis is "to make sure that when scientists testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work." *Norwest Bank v. K-Mart Corp.*, No. 3:94-CV-78RM, 1997 WL 33479072, at *4 (N.D. Ind. Jan. 29, 1997) (quoting *Rosen v. Ciba–Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996)).

Thus, the methodology used to assess vocational capabilities cannot escape *Daubert*'s requirement that it be "'tested' according to scientific standards as well as 'subjected to peer review and publication.'" *Israel v. Springs Indus., Inc.*, No. 1:98-cv-05106-ENV-RML, 2007 WL 9724896, at *2 (E.D.N.Y. July 30, 2007)

(quoting *Daubert*, 509 U.S. at 591-93). Likewise, the vocational expert must use the generally accepted" methods in his field. *See Elcock*, 233 F.3d at 748.

During his deposition Jayne admitted that the two components of his purported methodology—his interview of Plaintiff and at least one of the three questionnaires he had Plaintiff complete—is not peer reviewed. Ex. A, Jayne Dep. at 193:12-16 (interview questions have not been published in a peer-review journal), *Id.* at 209:5-15 (Functional Capacity Checklist "has never been peer reviewed").[1]

**II.   Jayne's Opinions are Not Reliable Because They Are Based on A Cursory Review of Plaintiff's Background.**

**A.   Jayne's Opinion That Plaintiff Is Incapable of Substantial Gainful Activity Lacks Sufficient Support.**

In order to pass *Daubert* scrutiny, vocational experts must offer opinions "based upon a thorough examination of a [plaintiff]'s background." *Walker v. DDR Corp.*, No. 3:17-cv-01586-JMC, 2019 WL 3409724, at *7 (D.S.C. Jan. 4, 2019). Jayne's conclusion that Plaintiff is incapable of substantial gainful activity in the present fails this requirement. Jayne's testimony reveals that his opinions are based on a limited set of cherry-picked medical records provided by Plaintiff's counsel. Ex. A, Jayne Dep. at 147:11-19. He did not review medical records relevant to his analysis. For example, he did not consider the Karnofsky Performance Scale Index performed by Plaintiff's oncologist, Dr. Ehmann, who determined that Plaintiff's status was at least 90 percent. Indeed, Jayne was not even aware that this test existed until informed of it during his deposition. *Id.* at 248:2-253:20. Likewise, Jayne did not know if any of Plaintiff's doctors placed any limits on his ability to work, and did not even bother to ask Plaintiff. *Id.* at 246:12-247:2.

---

[1] Although Jayne testified that he "believe[s]" the Cognitive Symptoms Checklists are peer-reviewed, he did not designate it as such in his expert report. *See* Ex. A, Jayne Dep. at 223:1-18, Ex. B, Jayne Report at 3-4.

### B. Jayne's Opinion That Plaintiff Cannot Perform His Adjunct Professor Duties Lacks Sufficient Support.

Jayne's view that Plaintiff is unable to perform any of the duties of an adjunct professor (a job he performed remotely via video conference) is based solely on his interview with Plaintiff and Plaintiff's answers to his unproven checklists. *Id.* at 228:19-229:1. Jayne did not check any of Plaintiff's self-reported symptoms against any of his medical records, *Id.* at 195:23-196:15, and he has not seen a single medical record that shows Plaintiff's claimed symptoms are related to Plaintiff's lymphoma or any treatment he received. *Id.* at 197:16-20.

Purported testimony regarding vocational limitations is unreliable where it is based on "unsupported assumptions" rather than "reliable principles and methods." *Albert as Next Fried of Doe v. U.S. Dep't of the Army*, No. SA-17-CV-00703-JKP, 2019 WL 5783420, at *4 (W.D. Tex. Nov. 5, 2019) (vocational expert's assumption regarding plaintiff's ability to obtain a college degree was not "supported by any articulated methodology and therefore cannot be tested or reproduced"). Jayne's testimony regarding Plaintiff's ability to perform the duties of a remote adjunct professor lack support and should be excluded.

### C. Jayne's Lost Future Earnings Calculation Lacks Sufficient Support.

A "future earning loss calculation" must be supported by "an evidentiary basis with 'proper foundation and sufficient factual predicates.'" *Telmanski v. Bonefish Grill, LLC*, No. 20-5466, 2022 WL 17324544, at *3 (D.N.J. Nov. 29, 2022) (quoting *Benjamin v. Peter's Farm Condominium Owners Ass'n*, 820 F.2d 640, 643 (3d Cir. 1987)). The proponent of post-injury earning capacity must "establish[] the requisite link between [the expert]'s finding . . . and *the underlying medical records* and other facts considered." *Telmanoski*, 2022 WL 17324544, at *5 (determining future earning loss calculation reliable where vocational expert relied on objective medical records and narratives) (emphasis added). Jayne admits he only reviewed what he received, which were selected pages of a limited set of medical records provided by Plaintiff's

counsel. Ex. A, Jayne Dep. at 147:20-148:25. Notably, he did not take into account other medical records relevant to his analysis, including doctors who examined Plaintiff and "assess[ed] his performance status at least 90, if not 100 percent." *Id.* at 252:1-11. For the reasons set forth above, Jayne's lost future earnings calculation lacks sufficient support as a result of the limited scope of the medical records he reviewed.

### III. Jayne's Opinions Are Not Reliable Because His Partial Life Care Assessment Was Not Derived From Consultation With Plaintiff's Treating Physicians.

Jayne's assessment of Plaintiff's partial life care needs is based solely on his interview with Plaintiff and Plaintiff's performance on Jayne's three questionnaires, two of which are not peer-reviewed. Ex. B, Jayne Report at 2-3. This approach is unreliable as reliance on limited medical records is not sufficient. *See Norwest Bank*, 1997 WL 33479072, at *2 ("[T]he court is unaware of any instance in which a witness with no education or licensure in medicine, osteopathy, dentistry, chiropractic, or nursing has been found qualified, regardless of experience, to give an opinion on a person's medical condition and medical future based on a review of medical records and an interview with the patient and her husband."). Rather, consultation with treating physicians is required. In *Norwest Bank*, a life care planner's forecasts of present and future medical needs was not admissible where he reviewed medical records but failed to consult with treating physicians before or after devising the plan. *Id.* at *6. *See also Messina v. Ethicon, Inc.*, No. 6:20-cv-1170-PGB-LRH, 2021 WL 9031016, at *3 (M.D. Fla. Mar. 31, 2021) (denying motion to exclude opinions on continuum of care where expert "relied on [the] [p]laintiff's treating and retained physicians . . . to formulate her report and opinions concerning [the] [p]laintiff's future medical needs").

Jayne expressly stated that he did not communicate with any of Plaintiff's treating physicians. Ex. A, Jayne Dep. at 10:9-14. There is also no evidence that any of these doctors have "reviewed and approved" Jayne's expert report assessing

Plaintiff's life care needs. *Messina*, 2021 WL 9031016, at *3 (review and approval of one of the plaintiff's treating physicians supported finding that expert's approach to determining future medical needs was reliable).

In addition, the likelihood of jury confusion is high where the life care planner fails to distinguish between a "forecast" and "medical prognoses . . . that no other medical professional had made." *Norwest Bank*, 1997 WL 33479072, at *4. Here, there is a high likelihood of confusion because Jayne's opinions are based on an unsupported belief that Plaintiff's cancer is terminal. Ex. A, Jayne Dep. at 159:17-160:19. Indeed, Jayne testified that the sole basis for his view that mantle cell lymphoma is a terminal cancer is the deposition testimony of Plaintiff and Plaintiff's wife. *Id.* at 161:9-15. Tellingly, having seen nothing in Plaintiff's records that would support this view, Jayne conceded that he would defer to Plaintiff's physicians on the issue. *Id.* at 161:18-23. This factor is key to Jayne's analysis as he stated he would defer to Plaintiff's doctors on whether Plaintiff's level of employability would be affected by Plaintiff's remission status and any resulting change in symptoms. *Id.* at 164:8-165:3. Jayne does not even know the extent of Plaintiff's remission. *Id.* 168:9-15 (stating he would have to rely on Plaintiff's doctors because he does not know if Plaintiff is in complete or partial remission). The flaws of Jayne's characterization of Plaintiff's cancer prognosis is even more egregious because he conflates "terminal" with "incurable"—which he eventually admitted were not equivalent. *Id.* at 172:3-173:10. Accordingly, Jayne's opinions should be excluded because they are irrelevant and speculative, which renders them unhelpful and highly likely to confuse the jury.

///
///
///
///
///
///

# CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's Motion to Exclude Testimony of Kent Jayne.

Dated: December 14, 2023         Respectfully submitted,

                                        */s/ Linda C. Hsu*
                                        Linda C. Hsu
                                        Attorney for Defendant Monsanto Company

# CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing (NEF) to all counsel of record who are CM/ECF participants.

                                          */s/ Linda C. Hsu*
                                          Linda C. Hsu