**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 | Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| *Lois Rolish v. Monsanto Company*, 3:20-cv-01421-VC | **MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE TESTIMONY OF DR. CHRISTOPHER ROSENBAUM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing:**<br>Date:   March 1, 2024<br>Time:  10:00 a.m.<br>Place:  San Francisco Courthouse, Courtroom 4 – 17th Floor |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on March 1, 2024 at 10:00 a.m. or a date/time to be determined by the Court, in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude the Testimony of Dr. Christopher Rosenbaum. Monsanto seeks an order excluding the opinions of this witness under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Dated: December 14, 2023          Respectfully submitted,

                                  */s/ Linda C. Hsu*
                                  Linda C. Hsu
                                  Attorney for Defendant Monsanto Company

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................1

LEGAL STANDARD ..............................................................................................................2

ARGUMENT ...........................................................................................................................3

    I.    Dr. Rosenbaum Is Not Qualified To Render a Specific Causation Opinion. ...........................................................................................................3

    II.   Rosenbaum's Specific Causation Opinions Should Be Excluded ..........6

CONCLUSION ......................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Avila v. Willits Enviro. Remediation Trust*,
  633 F.3d 828 (9th Cir. 2011) ............................................................................................... 13

*Borg-Warner Corp. v. Flores*,
  232 S.W.3d 765 (Tex. 2007) ............................................................................................... 10

*Caldwell v. City of San Francisco*,
  No. 12-cv-01892-DMR, 2021 WL 1391464 (N.D. Cal. Apr. 13, 2021) ..................... 4, 5, 6

*Cholakyan v. Mercedes-Benz, USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012) ......................................................................................... 7

*Claar v. Burlington N. R. Co.*,
  29 F.3d 499 (9th Cir. 1994) .................................................................................................. 7

*Clausen v. M/V NEW CARISSA*,
  339 F.3d 1049 (9th Cir. 2003) ............................................................................................ 11

*Crescenta Valley Water Dist. v. Exxon Mobile Corp.*,
  No. CV 07-2630-JST, 2013 WL 12120533 (C.D. Cal. Mar. 14, 2013) ............................... 9

*Daubert v. Merrell Dow Pharm., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ............................................................................................ 6, 9

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) .............................................................................................. 1, 3, 7, 9

*In re Incretin-Based Therapies Prods. Liab. Litig.*,
  No. 21-55342, 2022 WL 898595 (9th Cir. Mar. 28, 2022) ................................................. 7

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................................. 9

*Laux v. Mentor Worldwide, LLC*,
  295 F. Supp. 3d 1094 (C.D. Cal. 2017) ............................................................................. 11

*Linares v. Crown Equip. Corp.*,
  No. EDCV 16-1637 ......................................................................................................... 6, 8

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*,
  892 F.3d 624 (4th Cir. 2018) .............................................................................................. 10

*Lucido v. Nestle Purina Petcare Co.*,
  217 F. Supp. 2d 1098 (N.D. Cal. 2016) ............................................................................... 3

*McClain v. Metabolife Int'l, Inc.*,
  401 F.3d 1233 (11th Cir. 2005) .......................................................................................... 10

*Melendez v. Dixon*,
  No. 3:20-cv-1023-BJD-JBT, 2023 WL 4364457 (M.D. Fla. July 6, 2023) .................................................................................................. 6

*Milward v. Rust-Oleum Corp.*,
  820 F.3d 469 (1st Cir. 2016) ............................................................. 11, 13

*Morin v. U.S.*,
  244 F. App'x 142 (9th Cir. 2007) ............................................................ 11

*Nelson v. Matrixx Initiatives, Inc.*,
  592 F. App'x 591 (9th Cir. 2015) ............................................................ 13

*Newkirk v. ConAgra Foods Inc.*,
  438 F. App'x 607 (9th Cir. 2011) ............................................................ 12

*Pampered Chef v. Alexanian*,
  804 F. Supp. 2d 765 (N.D. Ill. 2011) ....................................................... 9

*Phylpo v. BNSF Railway Co.*,
  No. 4:17-cv-566-BJ, 2019 WL 2297293 (N.D. Tex. Mar. 27, 2019) ......... 7

*Pritchard v. Dow Agro Sciences*,
  705 F. Supp. 2d 471 (W.D. Penn. 2010) ................................................ 13

*U.S. v. Nelson*,
  No. 17-cr-005333-EMC-1, 2021 WL 75757 (N.D. Cal. Jan. 8, 2021) ..... 8

*U.S. v. Valencia-Lopez*,
  971 F.3d 891 (9th Cir. 2020) ............................................................... 7, 9

*Whisnant v. U.S.*,
  274 F. App'x 536 (9th Cir. 2008) ............................................................ 12

**Other Authorities**

Fed. R. Civ. P. 702 ........................................................................................ 3, 7

Fed. R. Evid. 702 ..................................................................................... 1, 3, 7

# INTRODUCTION

Plaintiff Lois Rolish ("Plaintiff") alleges that she experienced non-Hodgkin's lymphoma ("NHL"), from exposure to Monsanto Company's ("Monsanto") Roundup®-branded glyphosate-based herbicides (hereinafter "Roundup"). *See* Compl. ¶ 1.

Plaintiff retained Dr. Christopher Rosenbaum to provide a specific causation opinion. But Dr. Rosenbaum, an emergency room physician and toxicologist, is far from an expert in cancer causation, much less glyphosate or Roundup, and his proffered opinions are inadmissible as a matter of law.

First, Dr. Rosenbaum is not qualified to offer a specific causation opinion. He has never before offered a written opinion on the cause of a person's NHL. He has no expertise whatsoever in epidemiology and admits as much in his report. Second, instead of undertaking his own analysis to reach his specific causation opinion (because he lacks the qualifications to do so), Dr. Rosenbaum merely (and improperly) parrots the opinions of a court opinion and seeks to pass its legal opinions off as his own scientific opinions, which is improper, unreliable, and will not be helpful to the jury. Third, Dr. Rosenbaum did not apply a reliable methodology to reach his opinions. Indeed, he did not apply *any* methodology, such as a differential diagnosis, thus offering *ipse dixit* opinions. He also did not consider basic information about Plaintiff's other risk factors for NHL. There is also no indication that he reviewed the relevant literature relating to Roundup and NHL—an obvious prerequisite to opining as a causation expert in this case. Any expert opinions Dr. Rosenbaum attempts to offer on causation should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

# BACKGROUND

"Non-Hodgkin's lymphoma" is an umbrella term used to describe more than sixty different sub-types of cancer involving the lymphocytes, a type of white blood cell. The various sub-types have different clinical and prognostic characteristics and

may also have different risk factors and causes. However, in the vast majority of all NHL cases, the cause is unknown. Indeed, the vast majority of cases are deemed to be spontaneous, genetic errors unrelated to any external factors.

Plaintiff was diagnosed with B-cell non-Hodgkin's lymphoma in 2005. Compl. ¶ 1; Declaration of Linda Hsu ("Hsu Decl."), Ex. A, Dr. Christopher D. Rosenbaum November 21, 2023 Dep. ("Rosenbaum Dep.") at 39:19-21. Plaintiff claims she was exposed to Roundup from 1974 to 2007 while working as a school teacher, accompanying pre-teen children on walks through Roundup-treated fields and trails. Compl. ¶¶ 1-2, 7. *See also* Hsu Decl., Ex. B, September 26, 2023 Declaration and Updated Expert Report of Dr. Christopher Rosenbaum ("Rosenbaum Report") at 3-4. She also claims exposure from her husband's work applying Roundup to school grounds, as she washed his clothes when she did the household laundry. *Id.* at 4. In addition, Plaintiff claims that she was exposed through her personal use of Roundup while gardening and doing maintenance work at her personal residences. *Id.* at 4.

However, as a result of an appalling lack of basic investigative effort, Dr. Rosenbaum is unaware of key facts about Plaintiff, which are required to offer an opinion on specific causation. First, he made no effort to quantify Plaintiff's exposure to Roundup. Second, Dr. Rosenbaum's disinterested approach to fulfilling his role as an expert in this case included his failure to perform a differential diagnosis, which would have considered Plaintiff's documented risk factors for NHL—obesity and a positive family history of cancer. In the scientific and medical communities, a differential diagnosis is a generally accepted means of determining the cause of an illness through a methodical process of "ruling in" and "ruling out" potential causes. It is the methodology that plaintiffs' experts in other Roundup trials to date have used, and although Dr. Rosenbaum claimed to have conducted a differential diagnosis, his deposition testimony reflects that he actually did not do so.

## LEGAL STANDARD

To be admissible, expert testimony must: (1) come from a witness "qualified

as an expert by knowledge, skill, experience, training, or education;" (2) be derived from "scientific, technical, or other specialized knowledge"; and (3) "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Moreover, an expert's conclusions are not admissible if they are based on an unreliable foundation or methodology. *Daubert*, 509 U.S. at 592-95. Factors to consider in evaluating reliability are (1) whether the expert's opinion is susceptible to testing and has been subjected to testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been generally accepted in the scientific community. *Id.* at 593-94.

## ARGUMENT

**I.    Dr. Rosenbaum Is Not Qualified To Render a Specific Causation Opinion.**

    **A.    Dr. Rosenbaum Is Not Qualified To Opine On Epidemiology Or Genotoxicity.**

Dr. Rosenbaum cannot opine on subjects in which he lacks sufficient "knowledge, skill, experience, training, or education." *See* Fed. R. Civ. P. 702. *See also Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 2d 1098, 1107 (N.D. Cal. 2016) (granting motion to exclude veterinary toxicologist who lacked qualifications to testify regarding testing procedures). Dr. Rosenbaum is not qualified to offer an expert opinion on specific causation in this case. In fact, he has no qualifications whatsoever that allow him to proffer a reliable causation opinion. As an emergency department physician, he does not study the *cause* of cancer and, has not studied the risk factors for NHL generally or the purported relationship between Roundup and NHL. He therefore has no basis to opine that Roundup is capable of causing cancer, let alone that it did in fact cause Plaintiff's NHL.

Dr. Rosenbaum is not an oncologist, pathologist, or epidemiologist. Hsu Decl., Ex. A, Rosenbaum Dep. at 31:15-20. He is not a cancer biologist, geneticist, or

lymphoma specialist. *Id.* at 31:21-24, 39:16-18. He does not unequivocally hold himself out as an expert in genotoxicity. *See id.* at 31:25-33:10 (when asked whether he was an expert in genotoxicity, he deflected by stating, "I believe that there are people who study and train with formal education through a much greater extent than I have trained in that subject matter"). Nor can he do so when he has never designed, conducted, or published a genotoxicity study. *Id.* at 33:11-13.

Dr. Rosenbaum is an emergency department physician who, from time to time, may treat patients that happen to have NHL. He does not formally diagnosis anyone with NHL or provide chemotherapy or radiation treatment to anyone with NHL. *Id.* at 40:18-41:10. He is not an expert in the etiology (or cause) of cancer in general and does not routinely (or at all) engage in any analysis of the cause of any specific person's cancer. *Id.* at 41:11-20. Indeed, he has never determined the cause of *anyone's* cancer. *Id.* at 41:11-14. He has never researched, published, or made any professional presentation on NHL or any NHL subtype. *Id.* at 67:16-20.

Dr. Rosenbaum lacks the required special training, education, or knowledge to offer expert testimony on either epidemiology or genotoxicity. The Court's required assessment of Dr. Rosenbaum's qualifications establishes that he is not qualified to opine on epidemiology or genotoxicity. *See Caldwell v. City of San Francisco*, No. 12-cv-01892-DMR, 2021 WL 1391464, at *3 (N.D. Cal. Apr. 13, 2021) ("In evaluating a proposed expert's qualifications, the court looks not at the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.") (citation and internal quotation marks omitted).

The Court should thus exclude his opinions relying on epidemiology or genotoxicity data.

B.   **Dr. Rosenbaum Is Not Qualified To Opine On Glyphosate Or Roundup**

Dr. Rosenbaum is not a weed scientist or expert in pesticide labeling, and he is

not an industrial hygienist *Id.* at 34:21-35:8. He does not (and cannot) hold himself out as an expert in pesticides or herbicides. When asked, he again deflected and offered a familiar response: "[T]here are people who study and work in research to a much greater extent than myself in the subject matter of herbicide and pesticide." *Id.* at 33:25-34:15.

Relatedly, he does not recall any patient consulting him regarding their exposure to glyphosate or Roundup. *Id.* at 42:10-15. Having admitted that he has never determined the cause of anyone's cancer, Dr. Rosenbaum conceded that he has never determined that glyphosate or Roundup caused anyone's cancer. *Id.* at 41:11-14, 42:16-19. He has never diagnosed anyone with Roundup-induced or glyphosate-induced NHL. *Id.* at 66:19-22. He could not recall an instance in which he documented, in any patient's medical record, that glyphosate or Roundup was the cause of that patient's NHL. *Id.* at 66:23-67:2. He does not even recall ever sharing his purported concerns about Roundup with any patient or discouraging his patients from using Roundup. *Id.* at 66:11-18.

While he teaches emergency medicine, he has never taught his medical students that Roundup causes cancer. *Id.* at 68:11-24. Despite being a member of the American College of Emergency Physicians and the American College of Medical Toxicology, Dr. Rosenbaum has never told either that they should claim that glyphosate or Roundup causes NHL. *Id.* at 70:3-17.

Likewise, he has never researched, published, or made any professional presentation on (i) glyphosate or Roundup; (ii) NHL or any NHL subtype; or (iii) glyphosate or Roundup exposure and NHL or any NHL subtype. *Id.* at 67:10-20. He has never shared his purported opinions or concerns about Roundup with any professional medical association or any other audience. *Id.* at 67:24-68:2. He has never published his purported opinions or concerns about Roundup *anywhere*. *Id.* at 67:21-23. Indeed, he has never shared them outside of the litigation context. *Id.* at 68:3-5.

The extreme disconnect between the opinions Dr. Rosenbaum purports to offer in this case and what he *actually* says and does in his clinical practice cannot be ignored. *See e.g.*, *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("The ultimate test of the integrity of [a scientific expert's] integrity is [his] readiness to publish and be damned.") (quoting Peter W. Huber, Galileo's Revenge: Junk Science in the Courtroom 209 (1991) (hereinafter *Daubert II*).

Dr. Rosenbaum's lack of expertise in glyphosate and Roundup establishes that he is unqualified to opine on these subjects. His made-for-litigation opinions should be excluded.

## II. Rosenbaum's Specific Causation Opinions Should Be Excluded

### A. Rosenbaum's Specific Causation Opinion Is Not Based on Any Reliable Methodology

#### 1. Rosenbaum Used No Discernable Methodology

Dr. Rosenbaum's specific causation opinion should also be excluded because it is not based on any reliable methodology. Incredibly, Dr. Rosenbaum performed *no* work or analysis to reach his specific causation opinion. Instead, it is based on utter results-oriented speculation that improperly parrots the conclusions of this Court's order in a different matter.

As courts have repeatedly stated that "[a]n expert may not present testimony that merely 'parrots' the opinions of others." *Linares v. Crown Equip. Corp.*, No. EDCV 16-1637 JGB (KKx), 2017 WL 10403454, at *12 (C.D. Cal. Sept. 13, 2017). *See also Melendez v. Dixon*, No. 3:20-cv-1023-BJD-JBT, 2023 WL 4364457, at *4 (M.D. Fla. July 6, 2023) ("To the extent Dr. Aufderheide simply parrots the opinion or conclusions of others who may be considered experts, his opinion is not admissible.").

Under Federal Rule of Evidence 702, an expert's testimony must be "the product of reliable principles and methods" and his opinion must "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

A trial court must make "a preliminary *assessment of whether the reasoning or methodology underlying the testimony is scientifically valid* and of whether that reasoning or methodology properly can be applied to the facts in issue." *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 501 (9th Cir. 1994) (quoting *Daubert*, 509 U.S. at 580). "This 'prerequisite to making the Rule 702 determination that an expert's methods are reliable' requires the [trial] court to 'assure that the methods are adequately explained.'" *U.S. v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020) (court "did not properly fulfill its gatekeeping role under [*Daubert*]" when it allowed testimony of expert who "never explained the methodology, if any, that he relied on" in reaching his opinions) (citation omitted). It is the burden of the offering party to "establish the reliability of the *principles and methods* employed 'to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant.'" *Id.* (emphasis added) (citation omitted). Conclusions that "cannot be fairly attributable to any scientific data-gathering or reliable methodological analysis as required by *Daubert*," are properly regarded as "the product of guesswork and assumption." *Phylpo v. BNSF Railway Co.*, No. 4:17-cv-566-BJ, 2019 WL 2297293, at *8 (N.D. Tex. Mar. 27, 2019). Indeed, without a "meaningful methodological explanation" a trial court is unable to ensure that the expert's "conclusions [are] not mere subjective beliefs or unsupported speculation." *In re Incretin-Based Therapies Prods. Liab. Litig.*, No. 21-55342, 2022 WL 898595, at *1 (9th Cir. Mar. 28, 2022) (citation omitted). An expert's failure to explain his methodology impedes his reliability. *Id.*

Further, courts cannot rely on an expert's testimony regarding his purported conclusions where such conclusions are not borne of the exercise of independent judgment. *See Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 546 (C.D. Cal. 2012) (excluding expert who reproduced wholesale another expert's work as his own). "[A]n expert may appropriately rely on the opinions of others so long as other evidence supports his opinion, and the record demonstrates that the expert conducted

an independent evaluation of that evidence." *Linares*, 2017 WL 10403454, at *12 (determining expert did not parrot another expert's opinion where that expert "conducted independent online research, located a relevant peer-reviewed and published study, and then analyzed that study"). Moreover, allowing an expert to

> "simply parrot[] another individual's out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement to assist the jury in evaluating the expert's opinion," means that "expert is, in effect, disclosing that out-of-court statement for its substantive truth," which makes that expert "little more than a backdoor conduit for an otherwise inadmissible statement."

*U.S. v. Nelson*, No. 17-cr-005333-EMC-1, 2021 WL 75757, at *16 n.14 (N.D. Cal. Jan. 8, 2021) (citation omitted).

Here, Dr. Rosenbaum used no methodology whatsoever, let alone a reliable one. Dr. Rosenbaum's opinions are drawn exclusively from this Court's 2018 Order in a *different* case. *See generally* Ex. B, Rosenbaum Report at 6-7. First, Dr. Rosenbaum's efforts to repackage the Court's 2018 Order amounts to an attempt to present the jury with inadmissible hearsay. Accordingly, his opinions should be excluded on this basis alone.

Second, although he purportedly "review[ed] . . . the evidence and materials cited in the 2018 Order," *Id.* at 6, Dr. Rosenbaum does not provide any information that explains the nature and scope of his so-called review. For example, he claims to have "review[ed] the studies cited by the Court in its July 10, 2018, Order and relied upon by each side," but he does not provide a list of these studies. Indeed, though he repeatedly states that he is "familiar with" these materials, he does not analyze them *at all*. *See generally Id.* at 6-7. Further, he offered no such analysis during his deposition. Dr. Rosenbaum's apparent intention to do so for the first time at trial, Ex. A, Rosenbaum Dep. at 112:23-113:7, would be an improper effort to belatedly offer an undisclosed opinion.

An expert may not "point[] to the sources for his opinion" without "connect[ing] [those] sources to his ultimate opinion." *Crescenta Valley Water Dist.*

8

*v. Exxon Mobile Corp.*, No. CV 07-2630-JST (ANx), 2013 WL 12120533, at *6 (C.D. Cal. Mar. 14, 2013). Lacking any reliable methodology, it is clear that Dr. Rosenbaum indiscriminately adopted this Court's legal conclusions without adding any analysis of his own. Such wholesale adoption does not amount to a methodology. Dr. Rosenbaum's lack of relevant experience coupled with this failure establishes that "'there is simply too great an analytical gap between' his experience and his conclusion." *Valencia-Lopez*, 971 F.3d at 901 (citation omitted).

Dr. Rosenbaum's "opinions" are no more than *ipse dixit* based on pure speculation. On this point, there can be no exaggeration—Dr. Rosenbaum did not analyze anything at all. Under *Daubert*, "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). A purported expert opinion that offers no analysis of its own and ignores the facts of the case is improper, irrelevant, and inadmissible. *See e.g., Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 793 (N.D. Ill. 2011) (an expert's *ipse dixits* are not enough); (*Daubert II*, 43 F.3d at 1316 ("the expert's bald assurance of validity is not enough"). Dr. Rosenbaum's fundamentally flawed approach results in the type of copy-cat opinions a trial court is charged to keep out of the courtroom. Dr. Rosenbaum's so-called opinions are patently speculative and unreliable, and should be excluded.

    **2.** **Rendering a Specific Causation Opinion in a Toxic Exposure Case without Calculating Absorbed Dose or Actual Exposure Is Not Reliable or Generally Accepted**

An assessment of dose is central when assessing causation, as acknowledged by courts around the country. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005) ("Dose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect."); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 770-73 (Tex. 2007) (discussing the importance of dose on causation inquiry and reversing judgment in the plaintiff's favor following a jury trial

where she did not establish sufficient dose to cause alleged injuries); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 892 F.3d 624, 639 (4th Cir. 2018) ("[A]ll chemical agents are intrinsically hazardous," and "whether they cause harm is only a question of dose."). Because Dr. Rosenbaum's approach ignores this pivotal concept and does not even consider the amount of Roundup to which Plaintiff was actually exposed, it is unreliable and should be excluded.

Dr. Rosenbaum admitted that for Roundup to have any potential health effect on a person, that person must first have an absorbed dose from applying Roundup (i.e., the active ingredient glyphosate must be, as Dr. Rosenbaum states, "incorporated into the body"). Ex. A, Rosenbaum Dep. at 73:5-15. He also conceded that there are dose levels of glyphosate that do not lead to any adverse health effects in humans. *Id.* at 75:19-22. But when asked, he could not provide any insight on the dose levels set by various state, federal, and international regulators. *Id.* at 75:23-76:13. And despite his awareness that the dose will indicate the potential for adverse health effects, Dr. Rosenbaum did not calculate Plaintiff's absorbed dose (i.e., did not perform a dose reconstruction). *Id.* at 73:17-22. Indeed, he has never conducted a dose reconstruction in any case. *Id.* at 73:23-25. In addition, he does not know (and therefore does not offer an opinion on) what dose of Roundup is necessary (*i.e.*, what amount of Roundup must be absorbed by the body) to be capable of causing NHL. *Id.* at 76:14-25.

The Court should reject Dr. Rosenbaum's testimony because it is unreliable and unhelpful as he utterly disregards the fundamental concepts of absorbed dose and actual exposure, thereby ignoring the very factors that bear on Plaintiff's exposure.

### 3. **Dr. Rosenbaum Failed to Conduct a Reliable Differential Diagnosis**

Dr. Rosenbaum's testimony revealed that he failed to perform a differential diagnosis and consequently, he did not (and could not) reliably exclude other potential contributing factors of Plaintiff's NHL. A differential diagnosis is a patient-specific,

"standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." *Laux v. Mentor Worldwide, LLC*, 295 F. Supp. 3d 1094, 1098 (C.D. Cal. 2017). "The first step in a differential diagnosis is to compile a list of potential causes of the ailment," and the second step is to "engage in a process of elimination to rule out those potential causes." *Id*. The offering party "must show that the steps taken" in the differential diagnosis "analysis—the 'ruling out' and the 'ruling in' of causes—were accomplished utilizing scientifically valid methods." *Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 476 (1st Cir. 2016). "A district court is justified in excluding evidence if an expert 'utterly fails . . . to offer an explanation for why the proffered alternative cause' was ruled out." *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1058 (9th Cir. 2003) (quoting *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001)). "The expert must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'" *Clausen*, 339 F.3d at 1058 (quoting *Claar*, 29 F.3d at 502).

An expert report that fails to "show whether or how" a differential diagnosis was applied justifies the conclusion that an expert's "method of reaching an opinion regarding specific causation [is] not sufficiently reliable to be admissible." *Morin v. U.S.*, 244 F. App'x 142, 144 (9th Cir. 2007). *See also Whisnant v. U.S.*, 274 F. App'x 536, 537 (9th Cir. 2008) (finding no abuse of discretion in excluding causation expert's testimony where "expert's differential diagnosis failed to account for possible alternate causes of the plaintiff's symptoms").

The record establishes definitively that Dr. Rosenbaum did not perform a proper differential diagnosis. He did not consider NHL risk factors such as Plaintiff's obesity or her positive family history of cancer. *See* Ex. B, Rosenbaum Report at 7 ("[T]he only cause that I could determine for Plaintiff's [NHL] is exposure to Glyphosate in the form of Roundup"); Ex. A, Rosenbaum Dep. at 215:9-14

(conceding that plaintiff's body weight as a risk factor was not "written in the report"); *Id.* at 217:13-20 (regarding Plaintiff's positive family history of cancer, "I neither ruled it in nor ruled it out.").

Second, when confronted at deposition about his failure to consider these factors, Dr. Rosenbaum's flippant responses go hand-in-hand with his cursory report. Regarding Plaintiff's BMI of 27.5, which is within the range for overweight individuals:

> I don't know what range she would fall into in terms of BMI over the course of the time of her life relevant to her risk and exposure, is lymphoma a single time moment with a BMI measured on a day of the week and the moment in time? I don't know how to apply that singular BMI to the data referenced in this meta-analysis.

*Id.* at 208:25-209:3, 210:15-211:6. He also did not know whether Plaintiff's weight remained relatively stable over the years. *Id.* at 211:15-19. As for Plaintiff's family history of cancer, Dr. Rosenbaum stated, "I don't understand what 'ruled out' means." *Id.* at 218:15-20.

"[S]pecific causation opinions [that] fail to consider . . . known causes" of a plaintiff's alleged condition are "not admissible to show . . . specific causation." *Newkirk v. ConAgra Foods Inc.*, 438 F. App'x 607, 609 (9th Cir. 2011). An expert report that "simply assume[s] that causation exist[s] without going through the steps in the differential diagnosis process" is not "reliable enough to support specific causation." *Avila v. Willits Enviro. Remediation Trust*, 633 F.3d 828, 838 (9th Cir. 2011).

The record establishes that Dr. Rosenbaum failed to properly eliminate known potential causes of Plaintiff's NHL, rendering his specific causation opinion mere conjecture. *Nelson v. Matrixx Initiatives, Inc.*, 592 F. App'x 591, 592 (9th Cir. 2015) ("Elimination of the potential causes must be founded on more than subjective beliefs or unsupported speculation.") (citations and internal quotation marks omitted). "[A]n expert's use" or in this case, non-use, "of differential diagnosis must . . . be evaluated in order to ensure that the methods employed are reliable." *Pritchard v. Dow Agro*

*Sciences*, 705 F. Supp. 2d 471, 490 (W.D. Penn. 2010). Dr. Rosenbaum did not perform a differential diagnosis: he (1) failed to use a scientifically valid method to rule in Roundup as a possible cause of Plaintiff's cancer, and (2) failed to rule in and to rule out other potential causes, including obesity and family history of cancer. *See Milward*, 820 F.3d at 476 (the plaintiff "must show that the steps taken as part of [the differential diagnosis]—the 'ruling out' and the 'ruling in' of causes—were accomplished utilizing scientifically valid methods"). Accordingly, Dr. Rosenbaum's specific causation opinion is speculative, unreliable, and inadmissible as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's Motion to Exclude Testimony of Dr. Christopher Rosenbaum.

Dated: December 14, 2023          Respectfully submitted,

*/s/ Linda C. Hsu*
Linda C. Hsu
Attorney for Defendant Monsanto Company

# CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing (NEF) to all counsel of record who are CM/ECF participants.

*/s/ Linda C. Hsu*
Linda C. Hsu