# EXHIBIT B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case: 3:20-CV-01421-VC |
| LOIS ROLISH, | |
| Plaintiff, | |
| v. | |
| MONSANTO COMPANY, | |
| Defendant. | |

**DECLARATION AND UPDATED EXPERT REPORT OF**

**Dr. CHRISTOPHER ROSENBAUM**

**SEPTEMBER 26, 2023**

## DECLARATION AND UPDATED EXPERT REPORT OF DR. CHRISTOPHER ROSENBAUM

I, Dr. Christopher Rosenbaum, declare as follows:

1. I am the same Dr. Christopher Rosenbaum who previously issued a declaration and expert report in this matter dated March 27, 2023. I have been retained by counsel for Plaintiff Lois Rolish in the matter of Lois Rolish v. Monsanto Company. If called upon to testify, I would and could testify competently to all such subject matter in this Declaration and Expert Report.

2. Plaintiffs' counsel has retained my services at the hourly rate of $750. I charge a daily rate of $6,000.00 for deposition testimony and $1,500 per hour for trial testimony. My compensation is not contingent on the results of my work or any outcome of the litigation.

3. My expert opinions stated in this report are my opinions and only my opinions. I have based my opinions on my background, education, training and experience and the materials that I considered and relied upon as described below.

### ASSIGNMENT

4. I have been asked to review the available medical records, deposition testimony and other materials listed herein to determine whether Plaintiff's exposure to Roundup was a substantial factor in the development of her non-Hodgkin's Lymphoma and to determine whether there is anything else in those same materials that suggests any other biological, hereditary or environmental factor has been identified that could have been a contributing factor to the Plaintiff's development of non-Hodgkin's Lymphoma.

### SUMMARY OF QUALIFICATIONS

5. I have attached a true and correct copy of my curriculum vitae. Attachment A sets forth accurate statements concerning my background, education, training, and experience concerning my expertise in Medical Toxicology. The following summarizes relevant or notable qualifications related to the opinions expressed in this Declaration and Expert Report

6. After matriculating from medical school, I completed a 3-year residency in Emergency Medicine (including being elected chief resident by my peers). I completed a 2-year fellowship in

Medical Toxicology as well as a Masters of Science in Clinical Investigation. I am board-certified in Emergency Medicine, as well as Medical Toxicology. I have continued to work as a practicing attending Emergency Medicine physician since completing residency in 2008 – and I currently practice at Newton-Wellesley Hospital as well as the VA Medical Center Emergency Department in West Roxbury, Massachusetts. I am currently the director of Medical Toxicology for Newton-Wellesley Hospital, as well as the director of Medical Education for Emergency Medicine. As a board-certified Medical Toxicologist and the director of Medical Toxicology, I am formally educated and trained in understanding and treating matters of environmental and occupational chemical exposures (i.e. Glyphosate and Glyphosate's negative health-effects). Consultations regarding chemical exposures (like Glyphosate) are part of my daily professional responsibilities, and I am on call for Medical Toxicology at Newton-Wellesley Hospital. I have studied epidemiology as necessary for my education and practice.

7. I have testified as an expert at deposition or trial on three occasions since 2019. I will supplement this report to identify those cases prior to my deposition. My publications in the last ten years are set forth in the attached curriculum vitae.

## BACKGROUND

**Plaintiff**

8. I understand that Plaintiff contends that exposure to Glyphosate in the form of Defendant's product Roundup was a factor in her development of non-Hodgkin's Lymphoma. Plaintiff states that her exposure to Roundup commenced in approximately 1974 and continued until approximately 2005. Plaintiff was diagnosed with non-Hodgkin's Lymphoma on December 31, 2005. Deposition of Lois Rolish, dated February 23, 2023, p. 49:25-50:2. She underwent eight rounds of chemotherapy. Deposition of L. Rolish, p. 174:8-14.

9. As set forth in her complaint and in the deposition testimony of Plaintiff and her husband Gregory Rolish, Plaintiff had exposure to Roundup in at least two different ways. First, she was exposed to Roundup when it was used as a pesticide at the schools in the Centralia School District

3

in Southern California, where Plaintiff worked. Deposition of L. Rolish; P. Deposition of Gregory Rolish dated February 24, 2023, p. 26; pp. 28:25-31:22; 32:16-35:14; 40:21-43:24. Plaintiff worked at these schools from approximately 1974 to 2007. Deposition of L. Rolish, pp. 69:23-70:3. During that time, Roundup was routinely applied at the schools in order to clear a track for teachers and students to use. In addition, Plaintiff's husband worked at the school district where Plaintiff worked, and as part of his job, he applied Roundup to the school grounds. I have been advised that Plaintiff would then wash the clothes that her husband had worn during the application of Roundup when she did the household laundry. This took place over a period of two years.

10.  Second, Plaintiff personally used Roundup when doing gardening and maintenance work at several of the homes that she lived in, and Roundup was kept in their home for use. Deposition of L. Rolish, p. 246:10-17 (describing use of Roundup at five residences); pp. 255:12-13, 256:10-13, 258:2-23 (describing use at Laguna Niguel property); pp. 208:15-20; 219:4-220:23 (describing use at Jutewood property); p. 230:7-22 (describing use at Camino Dorado property); Deposition of G. Rolish, pp. 108:6-109:23.

11. Plaintiff testified that at times she recalled smelling Roundup in the air, and times that she felt it on her skin. Deposition of L. Rolish, pp. 202:15-20; 262:8-13; 263:25-264:15.

**Glysophate**

12. The following general description of Glyphosate comes from the United States Court of Appeals for the Ninth Circuit's decision in *Natural Resources Council v. U.S. Environmental Protection Agency,* 38 F.4TH 34, 41 (9th Cir. 2022):

> Glyphosate is a chemical that kills a broad range of plants by inhibiting an important enzyme. EPA registered the first glyphosate product in 1974, when Monsanto, an agrochemical and agricultural biotechnology company, sought to sell the now-well-known weedkiller Roundup. During its first two decades on the market, Roundup had limited utility to farmers because it killed all vegetation in an application area. But in the mid-1990s, Monsanto developed a "Roundup Ready" crop system, selling Roundup along with seeds genetically modified to tolerate Glyphosate. The system allowed

4

farmers to apply Glyphosate over genetically modified crops, killing weeds but leaving the crops unharmed. As a result, glyphosate use skyrocketed. The nationwide acreage across which Glyphosate is currently used is roughly equivalent to three times the size of California.

Glyphosate is generally applied by being sprayed from planes, ground equipment, or handheld devices. Workers and residential users are exposed to Glyphosate when, for example, they handle the chemical during application or enter areas where it was recently sprayed. People are also exposed to Glyphosate when they eat food from crops treated with it.

Whether these exposures create health risks has become a hotly debated and litigated issue. Health concerns proliferated when the International Agency for Research on Cancer ("IARC"), a subdivision of the World Health Organization, classified Glyphosate as "probably carcinogenic to humans" in 2015. 'IARC's conclusion stemmed in part from scientific studies that found an association between glyphosate exposure and non-Hodgkin's lymphoma ("NHL"), a type of cancer that affects white blood cells.

13. I understand that the other parties in this case and the Court have spent extensive time and resources studying issues related to whether Glyphosate is believed to be linked to non-Hodgkin's Lymphoma in humans. I have received and reviewed various filings that the parties have made in the case, primarily those related to the question of expert testimony about general causation. Because I am not a lawyer, I focused on the expert reports, supporting materials and cited references and the Court's analysis of those issues.

14. I also have reviewed the Court's July 10, 2018 Order which evaluated many of these expert reports. I found the Court's analysis and evaluation of the science cited to by the parties, as well as the analysis of the expert opinions offered by the parties, to be helpful in focusing my analysis. Because the Court noted that many of the opinions offered by experts Portier, Ritz and Weinberger would be admissible, I noted the approach taken in those reports and reviewed the discussions and

5

materials which supported those opinions with particular interest.

15. The types of studies cited to by the various experts in the reports considered by the Court, in particular those cited to in the Portier, Ritz and Weinberger reports, are of a type that I am familiar with through my education and experience. I am also familiar with the Bradford Hill Criteria as described in the Court's July 10, 2018 Order for the same reason.

## OPINIONS

16. In my professional opinion, based on my experience, expertise and materials that I have considered and relied upon, (1) Glyphosate is capable of causing non-Hodgkin's Lymphoma in humans, and (2) Plaintiff' Lois Rolish's exposure to Roundup was a substantial factor in causing her non-Hodgkin's Lymphoma.

17. My opinion that Glyphosate is capable of causing non-Hodgkin's Lymphoma is based on my independent conclusion after reviewing materials cited to in the Court's July 10, 2018 Order. In particular, my review of the evidence and materials cited there, and my background, expertise and experience in Medical Toxicology, lead me to conclude that the weight of the scientific evidence supports a relationship between non-Hodgkin's Lymphoma in humans and exposure to Glyphosate. I acknowledge that there are contrary authorities as relied upon and cited to by Monsanto in the materials before the Court and in the Court's July 10, 2018 Order, as well as in some of the reports issued by Monsanto's experts in this litigation.

18. A beginning point is the IARC's classification of Glyphosate as a probable carcinogen. As the Court notes in its July 10, 2018 Order, this is just a starting point. I then go on to evaluate other research cited by the Court to look for further support. In doing so, I am familiar with the Bradford Hill Criteria, as these were a part of my studies. I have reviewed the studies cited by the Court in its July 10, 2018 Order and relied upon by each side. I am familiar with the use of case-control studies and meta-analyses as used in this case and Monsanto's criticisms of those studies as noted by the Court. I have also evaluated the Agricultural Health Study cited by Monsanto in support of its arguments. When I consider all of these materials, and based upon my experience, expertise

6

and training, it is my opinion that all of these materials support the conclusion to a reasonable degree of medical certainty that exposure to Glyphosate can cause non-Hodgkin's Lymphoma in humans.

19. I am also familiar with the rodent studies that were relied on by the parties and cited to by the Court in its July 10, 2018 Order, particularly the seven rat studies and five mouse studies. I believe that these studies can be used to support the conclusion that exposure to Glyphosate can cause cancer in rodents, and that this can then support a conclusion that Glyphosate may be tied to an increased risk of cancer in humans.

20. Finally, I am familiar with the studies cited to the Court concerning genotoxicity and oxidative stress as potential mechanisms by which Glyphosate could cause cancer.

21. When I take all of the things described above into consideration, it is my opinion, to a reasonable degree of scientific certainty, that there is a relationship between exposure to Glyphosate and the development of non-Hodgkin's Lymphoma in humans.

22. My opinion that the Plaintiff's non-Hodgkin's Lymphoma was more likely than not caused by exposure to Glyphosate in the form of Roundup is based on my review of the available medical records and evaluation of whether the exposure described by the Plaintiff was more likely than not the cause of her development of non-Hodgkin's Lymphoma in relation to any other identifiable cause.

23. In undertaking this analysis, I use the accepted methodology of differential diagnosis. This means that I try to consider all potential possible causes of Plaintiff's non-Hodgkin's Lymphoma, rule out those potential causes for which there is no indication of exposure, and then I determine whether the most likely cause can be excluded. Here, the only cause that I could determine for Plaintiff's non-Hodgkin's Lymphoma is exposure to Glyphosate in the form of Roundup. In reviewing all of the medical records and history that has been provided to me, I have not identified any other potential cause.

24. To put a finer point on it, based on my consideration of my clinical and practice experience, my review of the Plaintiff's medical records and deposition testimony, and my opinion that

Glyphosate can cause non-Hodgkin's Lymphoma in humans, it is my opinion that this Plaintiff's exposure to Glyphosate was a substantial factor in causing her non-Hodgkin's Lymphoma.

25. Plaintiff's exposure, as described above, included approximately 30 years in which she routinely worked as a schoolteacher in fields where Roundup was applied on a regular basis. Plaintiff indicates that she never wore any protective clothing during this time. Plaintiff also indicates dermal exposure when washing her husband's laundry during the time that he worked for the same school district applying Roundup to the fields, a period of approximately two years. Plaintiff also indicates that for at least eight years, she regularly used Roundup at her home. Plaintiff has testified that she recalls smelling Roundup in the air at school, and feeling it on her skin when she was applying it at home.

26. I believe these exposures to be sufficient to have been a substantial factor in causing Plaintiff's non-Hodgkin's Lymphoma.

## CONCLUSION

27. This report sets for the opinions that I intend to offer at trial. I reserve the right to supplement these opinions as appropriate and as permitted by the Court should I become aware of additional information relevant to these opinions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 26, 2023 at Newton, Massachusetts.

_____
DR. CHRISTOPHER ROSENBAUM

8