| | |
|---|---|
| **WILKINSON STEKLOFF LLP**<br>Brian L. Stekloff (*pro hac vice*)<br>(bstekloff@wilkinsonstekloff.com)<br>Rakesh Kilaru (*pro hac vice*)<br>(rkilaru@wilkinsonstekloff.com)<br>2001 M St. NW<br>10th Floor<br>Washington, DC 20036<br>Tel: 202-847-4030 | Fax: 202-847-4005<br><br>**HOLLINGSWORTH LLP**<br>Eric G. Lasker (*pro hac vice*)<br>(elasker@hollingsworthllp.com)<br>1350 I St. NW<br>Washington, DC 20005<br>Tel: 202-898-5843 | Fax: 202-682-1639 | **COVINGTON & BURLING LLP**<br>Michael X. Imbroscio (*pro hac vice*)<br>(mimbroscio@cov.com)<br>One City Center<br>850 10th St. NW<br>Washington, DC 20001<br>Tel: 202-662-6000<br><br>**BRYAN CAVE LEIGHTON PAISNER LLP**<br>K. Lee Marshall (CA Bar No. 277092)<br>(klmarshall@bclplaw.com)<br>Three Embarcadero Center, 7th Floor<br>San Francisco, CA 94111<br>Tel: 415-675-3400 | Fax: 415-675-3434<br><br>Jed P. White (CA Bar No. 232339)<br>(jed.white@bclplaw.com)<br>Linda C. Hsu (CA Bar No. 239880)<br>(linda.hsu@bclplaw.com)<br>120 Broadway, Suite 300<br>Santa Monica, CA 90401<br>Tel: 310-576-2100 | Fax: 310-576-2200 |

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>*Robert Cotter, et al. v. Monsanto Co.,*<br>Case No. 3:20-cv-03108-VC | MDL No. 2741<br><br>Case No.: 3:16-mp-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD**<br><br>Hearing:<br>Date:  March 1, 2024<br>Time:  10:00 a.m.<br>Place:  San Francisco Courthouse,<br>      Courtroom 4 – 17th Floor |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 1, 2024 at 10:00 a.m., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Dr. D. Barry Boyd. Monsanto seeks an order excluding opinions of this witness under Federal Rule of Evidence 702.

Dated:  December 14, 2023

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Linda C. Hsu*
Linda C. Hsu
Attorneys for Defendant Monsanto Company

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..........................................................................................................................1

LEGAL STANDARD....................................................................................................................2

ARGUMENT .................................................................................................................................3

    I.     Dr. Boyd's Specific-Causation Opinions Should be Excluded Because He Did Not Reliably Rule In Glyphosate as a Possible Cause of Mr. Cotter's Mantle Cell Lymphoma. ...................................................................................................................3

    II.    Dr. Boyd failed to reliably assess and "rule out" potential alternative causes of Plaintiff's NHL. ............................................................................................................6

         A.    Dr. Boyd ignores or overlooks Plaintiff's numerous risk factors. .............7

         B.    Dr. Boyd fails to account for the fact that random mutations may have caused Plaintiff's NHL. ...............................................................................11

CONCLUSION ............................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aredia & Zometa Prods. Liab. Litig.*,
　483 F. App'x 182 (6th Cir. 2012) ...................................................................................................3

*Borg-Warner Corp. v. Flores*,
　232 S.W.3d 765 (Tex. 2007)...........................................................................................................6

*Brown v. Burlington N. Santa Fe Ry. Co.*,
　765 F.3d 765 (7th Cir. 1996) ..........................................................................................................3

*Chapman v. Proctor & Gamble Distrib., LLC*,
　766 F.3d 1296 (11th Cir. 2014) ......................................................................................................3

*Clausen v. M/V New Carissa*,
　339 F.3d 1049 (9th Cir. 2003) ........................................................................................................4

*Cooper v. Brown*,
　510 F.3d 870 (9th Cir. 2007) ..........................................................................................................2

*Cooper v. Smith & Nephew*,
　259 F.3d 194 (4th Cir. 2001) ..........................................................................................................3

*Daubert v. Merrell Dow Pharms., Inc.*,
　509 U.S. 579 (1993)........................................................................................................................2

*Engilis v. Monsanto Co.*,
　No. 3:19-cv-07859-VC (N.D. Cal. Nov. 15, 2023) .........................................................................5

*Guinn v. AstraZeneca Pharms. LP*,
　602 F.3d 1245 (11th Cir. 2010) ......................................................................................................3

*Hollander v. Sandoz Pharms. Corp.*,
　289 F.3d 1193 (10th Cir. 2002) ......................................................................................................7

*Kilpatrick v. Breg, Inc.*,
　613 F.3d 1329 (11th Cir. 2010) ......................................................................................................3

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*,
　892 F.3d 624 (4th Cir. 2018) ...............................................................................................3, 6, 11

*McClain v. Metabolife Int'l, Inc.*,
　401 F.3d 1233 (11th Cir. 2005) ..................................................................................................2, 6

*Milward v. Rust-Oleum Corp.*,
　820 F.3d 469 (1st Cir. 2016)....................................................................................................7, 12

*Perry v. Novartis Pharms. Corp.*,
    564 F. Supp. 2d 452 (E.D. Pa. 2008) ............................................................................. 12

*Poust v. Huntleigh Healthcare*,
    998 F. Supp. 478 (D.N.J. 1998) ..................................................................................... 3

*Pritchard v. Dow Agro Sciences*,
    705 F. Supp. 2d 471 (W.D. Pa. 2010), *aff'd*, 430 Fed. App'x 102 (3rd Cir. 2011) ........ 2

*Robinson Twp. v. Commonwealth*,
    147 A.3d 536 (Pa. 2016) ................................................................................................ 4

*In re Roundup Prods., Liab. Lit.*,
    3:16-md-02741-VC (N.D. Cal. 2019) ......................................................................... 1, 5

*In re Roundup Prods., Liab. Lit.*,
    390 F. Supp. 3d 1102 (N.D. Cal. 2018) .......................................................................... 5

*In re: Roundup Prods. Liab. Litig.*,
    358 F. Supp. 3d 956 (N.D. Cal. 2019) ............................................................................ 3

*Sardis v. Overhead Door Corp.*,
    No. 20-1411, 2021 WL 3699753 (4th Cir. 2021) ........................................................... 2

*Sims v. Kia Motors of Am., Inc.*,
    839 F.3d 393 (5th Cir. 2016) .......................................................................................... 3

*Soldo v. Sandoz Pharms. Corp.*,
    244 F. Supp. 2d 434 (W.D. Pa. 2003) ............................................................................. 3

*Trach v. Fellin*,
    817 A.2d 1102 (Pa. Super. 2003) ................................................................................... 6

*White v. Ford Motor Co.*,
    312 F.3d 998 (9th Cir. 2002) .......................................................................................... 2

**Other Authorities**

Fed. Jud. Ctr., Reference Manual on Scientific Evidence § 549 (3d. Ed.) ............................ 4

Fed. R. Evid. 702 ................................................................................................................... 2

# INTRODUCTION

Mr. Cotter has designated Dr. Boyd—a clinical oncologist—to opine that exposure to Roundup caused his mantle cell lymphoma. However, Dr. Boyd's specific causation opinions should be excluded because he did not follow the differential etiology methodology that he claims to have employed in this case to reach the conclusion that Mr. Cotter's cancer was caused by exposure to Roundup:

***First***, to determine that Roundup causes NHL, as is required to "rule in" Roundup as a potential cause of Mr. Cotter's mantle cell lymphoma, Dr. Boyd relied on a small subset of epidemiology data pertaining to glyphosate-based herbicides that US EPA and numerous other public health governmental organizations have determined are inadequate to show that glyphosate causes NHL. Dr. Boyd's reliance on cherry-picked epidemiological data as a substitute for dose is not generally accepted or reliable and has been rejected by this Court.

***Second***, Dr. Boyd lacks a reliable basis to "rule out" Plaintiff's other risk factors for mantle cell lymphoma, including his exposure to other chemicals from work with fertilizers, nutrients, and herbicide products, a family history of cancer, age, ethnicity, gender, and geography, as well as the risk of sporadic mutations leading to mantle cell lymphoma which is widely believed to be the cause of most NHL cases. In unwavering adherence to his conclusion that Roundup is always to blame for every plaintiff's cancer, Dr. Boyd brushes aside or ignores Plaintiff's other risk factors, without offering a principled scientific basis for doing so.

Under Dr. Boyd's outcome-driven "methodology," if a plaintiff in litigation was ever exposed to Roundup, that fact alone automatically makes exposure a cause of their mantle cell lymphoma. That is not science; it is courtroom advocacy cloaked as expert opinion. This Court has excluded prior experts for exactly this reason. *See, e.g.,* Ex. A, Pretrial Order No. 85 in *In re Roundup Prods., Liab. Lit.*, 3:16-md-02741-VC (N.D. Cal. Feb. 24, 2019) (precluding plaintiffs' experts from testifying, based on the McDuffie and Eriksson studies, that "glyphosate is a substantial causative factor for anyone who exceeds two days per year or ten lifetime days of Roundup use, because that conclusion is again based on unadjusted data" and holding that "it

is not scientifically sound to quantify [a] risk and assign it to a particular plaintiff using the unadjusted numbers from McDuffie and Eriksson").

## LEGAL STANDARD

A proposed expert witness must possess "knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. Fed. R. Evid. 702. When an expert's field of expertise is not related to the subject on which he seeks to offer testimony, such testimony is inadmissible. *See White v. Ford Motor Co.,* 312 F.3d 998, 1008-09 (9th Cir. 2002). Apart from qualifications, expert testimony must be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result of applying those principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The trial judge is charged with the responsibility of acting as a gatekeeper to "ensure that any and all scientific testimony … is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993); *see also Sardis v. Overhead Door Corp.,* No. 20-1411, 2021 WL 3699753, at *7 (4th Cir. Aug. 20, 2021) (district court in wrongful death suit abused its discretion when it "abandoned its gatekeeping function" by declaring reliability and relevance arguments to be province of jury because they went to weight, not admissibility). Indeed, the Supreme Court instructs that an expert's error-prone application of his or her methodology is inherently unreliable; and reliability is within the charge of the trial court as the gatekeeper. *Daubert,* 509 US at 589. The proponent of the expert bears the burden of proving that the expert's proffered testimony is admissible. *See, e.g., Cooper v. Brown,* 510 F.3d 870, 942 (9th Cir. 2007).

Here, Dr. Boyd's opinions should be excluded on the grounds that (1) they are not reliable, and (2) they are not helpful to the jury because he concluded Roundup® was the cause without properly ruling in Roundup® and without weighing or eliminating other risk factors in any reliable manner. Rule 702 requires experts purporting to use a differential diagnosis method to reach a specific causation conclusion to carry out both aspects of that methodology—"ruling in" all possible causes and "ruling out" all but the subject cause—and that they do so in a reliable fashion. *See McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1253 (11th Cir. 2005) ("[A]n expert does not establish the reliability of his techniques or the validity of his conclusions simply

by claiming that he performed a differential diagnosis on a patient."); *In re Aredia & Zometa Prods. Liab. Litig.,* 483 F. App'x 182, 188 (6th Cir. 2012) (expert offering a differential diagnosis must "accurately diagnose the nature of the disease, reliably rule in the possible causes of it, and reliably rule out the rejected causes"); *Soldo v. Sandoz Pharms. Corp.,* 244 F. Supp. 2d 434, 551 (W.D. Pa. 2003) ("[T]he mere statement by an expert that he or she applied differential diagnosis in determining causation does not *ipso facto* make that application scientifically reliable or admissible."). Because the inherent malleability of this methodology can shroud what may be little more than subjective guesswork, the district court must "delve into the particular witness's method of performing a differential diagnosis to determine if his or her ultimate conclusions are reliable." *Poust v. Huntleigh Healthcare,* 998 F. Supp. 478, 496 (D.N.J. 1998). Courts have consistently held that expert opinions that pay lip service to this methodology but do not reliably apply it should be excluded. *See, e.g., In re Lipitor,* 892 F.3d 624, 642–45 (4th Cir. 2018).[1]

If Plaintiff fails to present an admissible expert opinion to establish specific causation, summary judgment is appropriate. *In re: Roundup Prods. Liab. Litig.,* 358 F. Supp. 3d 956, 957 (N.D. Cal. 2019) ("To defeat Monsanto's motion for summary judgment on this issue, the plaintiffs must present at least one admissible expert opinion to support [his] specific causation argument.").

**ARGUMENT**

I.  **Dr. Boyd's Specific-Causation Opinions Should be Excluded Because He Did Not Reliably Rule In Glyphosate as a Possible Cause of Mr. Cotter's Mantle Cell Lymphoma.**

Dr. Boyd did not complete the necessary second step of the differential etiology methodology[2]: he failed to reliably rule in glyphosate as a possible cause of Mr. Cotter's mantle

---

[1] *See also, e.g., Sims v. Kia Motors of Am., Inc.,* 839 F.3d 393, 401–02 (5th Cir. 2016); *Chapman v. Proctor & Gamble Distrib., LLC,* 766 F.3d 1296, 1309 (11th Cir. 2014); *Guinn v. AstraZeneca Pharms. LP,* 602 F.3d 1245, 1253 (11th Cir. 2010); *Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1342–43 (11th Cir. 2010); *Cooper v. Smith & Nephew,* 259 F.3d 194, 200 (4th Cir. 2001); *Brown v. Burlington N. Santa Fe Ry. Co.,* 765 F.3d 765, 773–74 (7th Cir. 1996).

[2] Dr. Boyd testified that he performed a differential diagnosis on Mr. Cotter. *See* Ex. B, Boyd (*Cotter*) Dep. at 80:13-19.

cell lymphoma. Broadly speaking, "differential diagnosis" refers to the process "whereby the physician rules in or rules out various prospective causes of a patient's illness." *Robinson Twp. v. Commonwealth*, 147 A.3d 536, 570 (Pa. 2016). The process requires an expert to first "rule in" all potential causes—i.e., "to compile a comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003). The expert must then "rule out" each possible cause using a conventional scientific method until only the most likely cause remains. *Id*. "Like any scientific method" a differential diagnosis "can be performed in an unreliable manner." Fed. Jud. Ctr., Reference Manual on Scientific Evidence § 549 (3d. Ed.).

Dr. Boyd cannot reliably rule in glyphosate as a cause of Mr. Cotter's mantle cell lymphoma because he has no quantitative understanding of Mr. Cotter's internal glyphosate dose, and he has offered no other reliable basis to conclude that Mr. Cotter's alleged Roundup exposure caused his mantle cell lymphoma. In ruling in glyphosate as the cause of Mr. Cotter's mantle cell lymphoma, Dr. Boyd relied on Dr. Herrick's calculation of Mr. Cotter's total occupational and residential exposure days, which was estimated to be between 485.9 and 3,320.9 8-hour exposure days (with an estimate of 4,196.5 non-time-weighted Roundup exposure days). Ex. C, Boyd (*Cotter*) Report at 24.[3] Dr. Boyd then compared these exposure days to cherry-picked epidemiological data[4] that he claims shows a relationship between exposure days and development of NHL. *See* Ex. B, Boyd (*Cotter*) Dep. at 96:11-97:21. As

---

[3] Dr. Boyd's "ruling in" of Roundup as a potential cause of Plaintiff's NHL relies almost entirely on the "exposure days" opinions of Plaintiff's expert toxicologist, Dr. Herrick, and therefore should be excluded because Dr. Herrick's "exposure days" opinions are themselves unreliable. *See* Monsanto's Motion to Exclude Expert Testimony of Dr. Robert Herrick, filed contemporaneously herewith.

[4] Although Dr. Boyd's report discussed a subset of "human data," "mechanistic data," and "animal data" that he claims, like IARC, is sufficient to establish glyphosate is a cancer hazard (*see e.g.*, Ex. C, Boyd (*Cotter*) Rpt. at 14-23), his opinion that Roundup caused Mr. Cotter's mantle cell lymphoma is based primarily on three epidemiological data points reported in McDuffie 2001, Eriksson 2008, and Pahwa 2019. Dr. Boyd determined data points in those studies demonstrated that Roundup can cause NHL in individuals who are exposed more than 2 days per year. *See* Ex. D, Boyd (*Allegrezza*) Dep. at 55:3-56:5, 91:23-92:21, 133:17-138:6, 141:6-142:12; *see also* Ex. E, Boyd (*Frank*) Dep. at 125:4-126:3. Dr. Boyd then "ruled in" Roundup as a cause of Mr. Cotter's mantle cell lymphoma because his use exceeded those number of days. *See* Ex. B, Boyd (*Cotter*) Dep. at 97:22-98:11, 105:1-18.

this Court noted recently in ruling on Monsanto's motion to exclude certain causation experts in *Engilis v. Monsanto Co.*, No. 3:19-cv-07859-VC, an expert's "cherry-pick[ing] the findings of the epidemiological studies, reporting only certain odds ratios—those most favorable to his ultimate opinion" disqualifies his testimony. *See* Ex. F, *In re Roundup Prods. Liab. Litig.*, Pretrial Order No. 288: Order Granting Motions to Exclude Experts Charles and Schneider, MDL No. 2741, Case No. 16-md-02741-VC (N.D. Cal. Nov. 15, 2023), at 3.

Dr. Boyd's substitution of "exposure days" taken from a small subset of the relevant epidemiology data for dose is not a reliable methodology for many reasons.

*First*, Dr. Boyd's decision to cherry-pick just a few of the many relevant epidemiological data points violates the weight of evidence of review he purports to be applying. He simply ignores extensive epidemiology data that shows no increased risk or no dose-response for NHL due to glyphosate exposure that undermines his novel "exposure day" methodology. Moreover, Dr. Boyd is not using the cherry-picked data in a reliable manner. This Court has rejected the very "exposure day" methodology Dr. Boyd seeks to use here, noting the exposure day risk estimates from McDuffie 2001 and Eriksson 2008 do not adjust for other exposures that could explain the increased risk. *In re Roundup Prods., Liab. Lit.*, 390 F. Supp. 3d at 1140 ("[f]ailing to take account of likely confounders by presenting and relying upon only unadjusted (or minimally adjusted) estimates is a serious methodological concern."); *see also* Ex. A, Pretrial Order No. 85 in *In re Roundup Prods., Liab. Lit.*, 3:16-md-02741-VC (N.D. Cal. Feb. 24, 2019) (precluding plaintiffs' experts from testifying, based on the McDuffie and Eriksson studies, that "glyphosate is a substantial causative factor for anyone who exceeds two days per year or ten lifetime days of Roundup use, because that conclusion is again based on unadjusted data" and holding that "it is not scientifically sound to quantify [a] risk and assign it to a particular plaintiff using the unadjusted numbers from McDuffie and Eriksson"); *see, e.g.*, Ex. I, McDuffie, *et al.*, *Non-Hodgkin's Lymphoma and Specific Pesticide Exposures in Men: Cross-Canada Study of Pesticides and Health*, 10 Cancer Epidemiology, Biomarkers & Prevention 1155, 1156 (2001); Ex. H, Eriksson 2008.

*Second*, the arbitrary exposure units Dr. Boyd plucks from those studies are not being tested or studied for the purposes of dose, and Dr. Boyd has not endeavored to calculate the dose of Roundup to which Mr. Cotter was exposed. Ex. B, Boyd (*Cotter*) Dep. at 112:22-114:1. Dose is what courts often describe as "the most important factor to consider in evaluating whether an alleged exposure caused a specific adverse event." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005); *see also Trach v. Fellin*, 817 A.2d 1102, 1113 (Pa. Super. 2003) (principle of "dose-response" is nearly as old as the pyramids). The reason dose matters is simple: "all chemical agents are intrinsically hazardous," and "whether they cause harm is only a question of dose." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 892 F.3d 624, 639 (4th Cir. 2018); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 770-73 (Tex. 2007) (discussing importance of dose on causation inquiry and reversing judgment in plaintiff's favor following jury trial where plaintiff did not establish sufficient dose to cause alleged injuries). Dr. Boyd has not presented any generally accepted methodology for determining that Plaintiff received a dose of Roundup that could cause NHL. Indeed, he testified that he did not calculate the specific dose that Mr. Cotter experienced. Ex. B, Boyd Dep. at 112:22-114:1. But Dr. Boyd's exposure days methodology is not a substitute for dose—the most important consideration in assessing causation—and his contention otherwise is without merit.[5]

II.     **Dr. Boyd failed to reliably assess and "rule out" potential alternative causes of Plaintiff's NHL.**

To reliably perform a differential diagnosis, or differential etiology, an expert must conduct scientific analysis to eliminate the likely causes until the most probable one is isolated. *See Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1211-12 (10th Cir. 2002) (at the second step of a differential diagnosis/etiology, the expert must eliminate "all other possible cause of

---

[5] Dr. Boyd's failure to consider dose contradicts his own testimony. He repeatedly testified that factors other than mere duration of exposure are important to determine causation. For example, Dr. Boyd testified that causation of any disease from a chemical is dependent on the extent of exposure. *See* Ex. B, Boyd (*Cotter*) Dep. at 96:15-98:11. He testified that he "would judge the intensity and duration of his exposure, not just the presence of having been exposed." *Id*. at 97:9-21. But he did not calculate the specific dose of GBH that Mr. Cotter experienced over the years (*id*. at 112:22-113:9, 113:22-114:1), and did not calculate how much Roundup penetrated Mr. Cotter's skin. *Id*. at 114:2-6.

the victims' condition . . . leaving only the toxic substance as the cause.") (quotation omitted). The expert must provide reasons for rejecting the alternative hypotheses "utilizing scientifically valid methods." *Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 476 (1st Cir. 2016).

Dr. Boyd has not met these requirements, as he fails to provide valid reasons for "ruling out" alternative hypotheses using scientifically valid methods. Instead, he casually dismisses potential alternative causes without any scientific rigor to reach his preordained conclusion that Roundup is always to blame for every plaintiff's NHL.

### A. Dr. Boyd ignores or overlooks Plaintiff's numerous risk factors.

Dr. Boyd's consideration of alternative causes is woefully inadequate and demonstrates the unreliability of his opinion. Dr. Boyd ignores several plausible potential causes of Plaintiff's disease that he acknowledged are risk factors for NHL. Further, Dr. Boyd cursorily dismisses other potential causes based on flawed reasoning and analysis that is wholly inconsistent with his approach to ruling in Roundup.

Most glaringly, Dr. Boyd failed to meaningfully consider Mr. Cotter's exposure to other chemicals and herbicides. As evidenced by his deposition and Plaintiff Fact Sheet, Mr. Cotter has a long history of exposure to various chemicals throughout his entire working life. For example, for nearly thirty years beginning in 1994, Mr. Cotter worked at Germinate and The Lawn Rangers, landscaping companies which used numerous herbicides and pesticides containing dicamba, MCCP, and 2,4-D. *See* Ex. J, *Cotter* PFS at 2; Ex. B, Boyd (*Cotter*) Dep. at 99:5-100:6. He also worked as a truck driver for decades. *See* Ex. G, R. Cotter Dep. at 102:13-104:24. Dr. Boyd admits that exposure to such chemicals is associated with "development of multiple cancers, including NHL, both among occupational users (e.g., farm workers, pesticide applicators) and residential users." *See* Ex. C, Boyd (*Cotter*) Report at 24; *see also* Ex. B, Boyd (*Cotter*) Dep. at 100:3-6. However, Dr. Boyd summarily dismisses these exposures. For example, with respect to Mr. Cotter's exposure to Eliminate-D, Dr. Boyd claims that he ruled out Eliminate-D as a potential cause of Mr. Cotter's NHL because Mr. Cotter used Eliminate-D less frequently and because Mr. Cotter "sprayed the Eliminate-D with a different backpack than that which he used for Roundup." Ex. C, Boyd (*Cotter*) Report at 8. Contrarily, Dr. Boyd

testified that Mr. Cotter's exposure to Eliminate-D was not a trivial amount of exposure and admitted that the active ingredients in Eliminate-D were associated with an increased risk of lymphoma. *See* Ex. B, Boyd (*Cotter*) Dep. at 99:23-100:6, 104:10-25.

Moreover, Dr. Boyd did not consider the same factors in ruling-in Roundup as a cause of NHL. Rather, he testified that he did not do an exposure analysis for Mr. Cotter, but instead relied on Plaintiff's exposure expert (Dr. Herrick) to do that. *See* Ex. B, Boyd (*Cotter*) Dep. at 105:19-22; 107:8-12. And Dr. Herrick testified that he simply assumed certain exposure inputs when conducting the exposure analysis for Mr. Cotter. (*see* Ex. K, Herrick (*Cotter*) Dep. at 113:15-116:24.

> Q. And based on that testimony, you have assumed that 30 minutes a day could mean 30 minutes per house a day, and thus you've reached a four-hour and eight-hour midpoint in high-exposure hypothetical. Is that a fair statement?
>
> A. Yeah, that's a fair statement. That's sort of how I interpreted the way this line of questioning was going, that that was his daily use on each property.
>
> Q. Again, just so the record's clear, you didn't ask him in your interview on June 10 to clarify whether he meant 30 minutes in a total day on all the places he went to versus 30 minutes per house in a day, right?
>
> A. No, I didn't ask him that.
>
> \*\*\*
>
> Q. Okay. Hypothetically, if Mr. Cotter meant that he only applied Roundup 30 minutes throughout his day on a typical day as opposed to 30 minutes per property, you would agree with me that the 1,700 – 1,700 time-weighted day figure and the 3,320 time-weighted day figure would both be gross overestimates of his time-weighted exposure days? Would you agree with that?
>
> A. They would be – Yeah they – they would be if you adjusted for spraying a shorter period of time each day, then those values would be lower.

*Id*. at 115:5-116:24. Thus, in deferring to Dr. Herrick for his exposure analysis, Dr. Boyd failed to consider Mr. Cotter's actual exposure to Roundup in calculating the exposure metrics:

> Q. How would you describe Mr. Cotter's exposure to Roundup in this matter, just generally?
>
> A. Extremely heavy.
>
> \*\*\*
>
> Q. And those calculations that you just stated, those are based on Mr. Herrick's report.

> A. Yes.
>
> \*\*\*
>
> Q. You mentioned earlier that you had not reviewed Dr. Herrick's deposition testimony, correct?
>
> A. Not the deposition, right.
>
> Q. Okay. So you're not aware that at his deposition he stated that he assumed plaintiff applied Roundup 30 minutes per property, even though it was actually 30 minutes per day? You're not aware of that testimony, are you?
>
> \*\*\*
>
> A. No, so I'd have to see that.
>
> \*\*\*
>
> Q. So is it fair to say that the sole basis for your exposure opinions and background is based on what Dr. Herrick's report states?
>
> A. Correct.
>
> Q. So if that's wrong, then your analysis would need to be adjusted as well, correct?
>
> A. We'll adjust it based on that if it's wrong, correct.

Ex. B, Boyd (*Cotter*) Dep. at 105:1-107:17.[6]

This failure to use accurate exposure metrics renders Dr. Boyd's methodology unreliable.

Dr. Boyd also failed to meaningfully consider Mr. Cotter's family history of cancer as an alternative cause of his NHL. Plaintiff had a type of skin cancer – basal cell carcinoma. Plaintiff also has a family history of cancer, including a father and brother with melanoma skin cancer, a sister with thyroid cancer, and an uncle with colon cancer. *See* Ex. B, Boyd (*Cotter*) Dep. at 81:20-82:19; 92:19-94:5. But again Dr. Boyd failed to investigate further, despite admitting that a family history of cancer can be a risk factor for mantle cell lymphoma. Instead, Dr. Boyd dismissed Plaintiff's family history of cancer as a risk factor because "[n]one of those are specifically related to risks for – as a genetic predictor of lymphomas." *Id*. at 81:20-82:19. Dr.

---

[6] Dr. Herrick also failed to consider several other factors that he admitted would reduce his exposure assessment for Mr. Cotter. *See* Monsanto's Motion to Exclude Dr. Herrick, filed contemporaneously herewith. Accordingly, to the extent the Court excludes Dr. Herrick's opinions, it should also exclude Dr. Boyd's because Dr. Boyd's opinions rely entirely on Dr. Herrick for his exposure analysis.

Boyd also testified that squamous and melanoma skin cancers are "both very sun and ultraviolet light related" and did not make Mr. Cotter more susceptible to developing NHL. *Id*. at 93:10-24. But this testimony is belied by the very literature upon which Dr. Boyd claims to rely. Specifically, the McDuffie study, which Dr. Boyd cites in his report (*see* Ex. C, Boyd Report at 17, n. 59) found an increased risk of NHL when even one first degree relative had prior cancer. Ex. L, Durrani *Barnes* Dep. at 139:24-144:17.

There are numerous other examples of Dr. Boyd either entirely ignoring or unscientifically and unreliably discounting other potential alternative causes:

- Dr. Boyd testified that Plaintiff's age, male gender, and Caucasian race put him at an increased risk of developing NHL. See Ex. B, Boyd (*Cotter*) Dep. at 84:20-91:12. Yet Dr. Boyd never attempted to rule out any of these risk factors as a cause of Plaintiff's mantle cell lymphoma.

- Plaintiff worked as a truck driver from 1974 until the early 1990's. See Ex. G, R. Cotter Dep. at 102:13-104:24. But, Dr. Boyd did not consider exposure to vehicle-related chemicals, including gasoline.

Overall, Dr. Boyd lacks any basis to conclude that Roundup is more likely to have caused Mr. Cotter's mantle cell lymphoma than these other risk factors. Indeed, Dr. Boyd has previously conceded that he had no means to quantitatively compare the risks posed by these factors against the one purportedly posed by Plaintiff's alleged Roundup exposure. *See* Ex. M, Boyd (*Constantine*) Dep. at 130:2-7 ("Q. And Doctor, to return to my question, though, is there any way to quantitatively compare the risks posed by the -- all the risk factors we discussed previously with the risk you believe is posed by Roundup? A. No.").

Dr. Boyd also admitted that Plaintiff may have developed mantle cell lymphoma *even if he had never been exposed to Roundup*:

> Q. So even if that patient does not have exposure to Roundup, you'd agree that's not an unusual age to see a lymphoma patient, correct?
>
> A. Correct.
>
> Q. So would you agree that Mr. Cotter's lymphoma could have developed simply as a result of the passing of time?
>
> A. Possible.

*See* Ex. B, Boyd (*Cotter*) Dep. at 87:14-88:1.  *See also id*. at 78:8-10 (agreeing that a person with Mr. Cotter's family history could develop NHL even in the absence of exposure to Roundup); 79:5-8 (agreeing that NHL can be caused by genetic replication errors without exposure to Roundup).

Dr. Boyd's unscientific approach to alternative causes confirms that he intends to provide the jury with advocacy, rather than reliable scientific testimony. As the Fourth Circuit explained in *In re Lipitor,* "that Lipitor may cause an increased risk of diabetes notwithstanding certain other risk factors is insufficient to conclude that the drug was a substantial contributing factor in an individual patient. To hold otherwise would obviate the need for any specific causation evidence at all." 892 F.3d 624, 645 (4th Cir. 2018). Just like the expert excluded in *In re Lipitor*, Dr. Boyd does not offer an admissible specific causation opinion because he has no scientific grounds to conclude that Roundup is a more likely cause of Plaintiff's disease than other risk factors. *See id.* (affirming exclusion of specific causation expert because his "report appeared to dismiss other possible causes in favor of Lipitor in a cursory fashion that appeared closer to an *ipse dixit* than a reasoned scientific analysis").

**B.  Dr. Boyd fails to account for the fact that random mutations may have caused Plaintiff's NHL.**

Just as he fails to rule out the alternative risk factors specific to Plaintiff, Dr. Boyd takes an equally unscientific and dismissive approach to the idiopathic causes (including random mutations) that are responsible for most NHL cases: he simply ignores the prospect. It is well-accepted that "most NHL cases . . . are idiopathic, having no known cause." *Perry v. Novartis Pharms. Corp.*, 564 F. Supp. 2d 452, 469 (E.D. Pa. 2008).

Dr. Boyd offers no reliable method for concluding that Plaintiff would not have developed his mantle cell lymphoma even if he had never used Roundup, and he has no basis to rule out random genetic mutations as the cause.  Indeed, he admits that spontaneous mutations may initiate cancer.  *See* Ex. B, Boyd (*Cotter*) Dep. at 79:9-17.  And he testified that he cannot rule out that Mr. Cotter's NHL was caused by natural replication errors:

> Q. But you cannot fully rule out that Mr. Cotter's lymphoma developed as a result – solely as a result of random mutations and the replication process without Roundup playing any role, correct?
>
> A. Correct.

*Id*. at 131:5-10. Indeed, Dr. Boyd has previously complimented the work of Dr. Cristian Tomasetti, who concluded that "the vast majority of mutations in NHL appear to be explained simply by [random] replication errors." *See* Ex. N, Feb. 12, 2021 Rpt. of Cristian Tomasetti Ph.D. in *Constantine*. at 26; Ex. M, Boyd (*Constantine*) Dep. at 127:15-22.

Overall, Dr. Boyd has a results-oriented approach to always blame Roundup as the cause of a plaintiff's NHL. The Court should exclude such an unreliable approach. *See, e.g.*, *Milward*, 820 F.3d at 476 (affirming exclusion of specific causation expert because she had no reliable method to "'rule out' an idiopathic diagnosis," which was particularly problematic in light of the "extraordinary number of idiopathic [acute promyelocytic leukemia] cases"); *Pritchard v. Dow Agro Sciences*, 705 F. Supp. 2d 471, 492 (W.D. Pa. 2010) (excluding specific causation opinion because "the presence of a known risk factor" for NHL was an insufficient basis "for ruling out idiopathic origin"), *aff'd*, 430 Fed. App'x 102 (3rd Cir. 2011).

## CONCLUSION

For these reasons, the Court should grant Monsanto's motion to exclude Plaintiff's specific causation expert Dr. Boyd because his opinions are unreliable and inadmissible.

Dated:  December 14, 2023			Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Linda C. Hsu*
Linda C. Hsu
Attorneys for Defendant Monsanto Company

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of December 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system, which sent notice of the filing to all appearing parties of record.

*/s/ Linda C. Hsu*
Linda C. Hsu