# EXHIBIT K

```
 1                  UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                         MDL NO. 2741

 4

 5         *********************************
           IN RE:  ROUNDUP PRODUCTS
 6         LIABILITY LITIGATION

 7         THIS DOCUMENTS RELATES TO:

 8         ROBERT AND DARYA COTTER
           V. MONSANTO COMPANY
 9         CASE NO. 3:20-CV-03108-VC

10
           *********************************
11

12

13
                     VIDEOTAPED DEPOSITION OF:
14
                     ROBERT F. HERRICK, SC.D.
15
                          (Taken Remotely)
16
                         7A Skinners Avenue
17
                      Marblehead, Massachusetts
18
                September 6, 2022      10:34 a.m.
19

20

21

22                       Darlene M. Coppola

23                    Registered Merit Reporter

24                   Certified Realtime Reporter
```

```
 1      APPEARANCES:

 2      Representing the Plaintiff:

 3           THORNTON LAW FIRM LLP

 4           One Lincoln Street

 5           Boston, MA 02111

 6           BY:  CHRISTIAN F. UEHLEIN, ESQUIRE

 7           T 617.720.1333

 8           E cuehlein@tenlaw.com

 9

10      Representing the Defendants:

11           HOLLINGSWORTH LLP

12           1350 I Street, NW

13           Washington, DC 20005

14           BY:  JOHN M. KALAS, ESQUIRE

15           T 202.898.5800

16           E jkalas@hollingsworthllp.com

17

18

19

20      Also Present:

21      Maddie Cowell, Videographer

22

23

24
```

```
 1      1:01.  We are off the record.

 2

 3              (Recess taken from 1:01 p.m.

 4              to 1:03 p.m.)

 5

 6                   THE VIDEOGRAPHER:  The time is

 7      1:03.  We are back on the record.

 8                   MR. KALAS:  Darlene, before we

 9      went off, there was a pending question.  Can

10      you just read that back in, please.

11

12              *(Question read.)

13

14      BY MR. KALAS:

15         Q.   That's the question, Dr. Herrick.

16         A.   Okay, sure.  Remember what he said was

17      that on days when he wasn't doing whole beds,

18      he used the hand spray bottle for about 30

19      minutes at a time, so that was 30 minutes on

20      the properties.  And if he did twelve

21      properties a day, that would put him up to 360

22      minutes of spraying time, and that's on days

23      when he wasn't doing the whole beds.

24              So that's where I came up with, you
```

```
 1      know, this kind of midpoint estimate of four
 2      hours, and then on days when he was doing
 3      whole beds, you know, I extrapolated that to,
 4      you know, more spray time at each property.
 5      And, again, for 12 or 15 properties a day,
 6      that in a sort of a worst-case situation, he
 7      was spraying for 480 minutes a day.  So that's
 8      where that's based on.
 9           Q.   Okay.  So let me make sure I
10      understand.  So you're basing that off the
11      testimony about 30 minutes a day spraying,
12      which is found at page 92, right?
13           A.   That's what he said, yes.
14           Q.   So let's go and look at that testimony
15      again.  I know we've already looked at it
16      once.
17                It says, page 92, line 13, "Okay.  I
18      know you said you sprayed weeds as you saw
19      them.  Can you at all give me a sense of about
20      how much time you spent on an average day
21      spraying Roundup versus all the other things
22      you were doing for lawn maintenance?
23                "Answer:  Yeah, in the course of the
24      day, I probably would have spent 30 minutes a
```

Robert F. Herrick, Sc.D.

```
 1      day on spray unless I was doing the whole beds

 2      at somebody's house."

 3              Did I read that correctly?

 4          A.  You did, yeah.

 5          Q.  And based on that testimony, you have

 6      assumed that 30 minutes a day could mean 30

 7      minutes per house a day, and thus you've

 8      reached a four-hour and eight-hour midpoint in

 9      high-exposure hypothetical.

10              Is that a fair statement?

11                  MR. UEHLEIN:  Objection.

12          A.  Yeah, that's a fair statement.  That's

13      sort of how I interpreted the way this line of

14      questioning was going, that that was his daily

15      use on each property.

16      BY MR. KALAS:

17          Q.  Again, just so the record's clear, you

18      didn't ask him in your interview on June 10 to

19      clarify whether he meant 30 minutes in a total

20      day on all the places he went to versus 30

21      minutes per house in a day, right?

22          A.  No, I didn't ask him that.

23          Q.  And the question and answer on

24      lines 13 to 22, they never say -- it never
```

```
 1      says there 30 minutes per house.  It says 30

 2      minutes a day, right?

 3           A.   Let's take a look at the...

 4                Right.  That's the way the question

 5      was asked.

 6           Q.   And that's the way the answer was

 7      given as well, true?

 8           A.   That was what he said in the lines

 9      that you just quoted, yeah.

10           Q.   Okay.  Hypothetically, if Mr. Cotter

11      meant that he only applied Roundup 30 minutes

12      throughout his day on a typical day as opposed

13      to 30 minutes per property, you would agree

14      with me that the 1,700 -- 1,700 time-weighted

15      day figure and the 3,320 time-weighted day

16      figure would both be gross overestimates of

17      his time-weighted exposure days?  Would you

18      agree with that?

19           A.   They would be --

20                MR. UEHLEIN:  Objection to the

21      characterization.

22           A.   Yeah, they -- they would be if you

23      adjusted for spraying a shorter period of time

24      each day, then those values would be lower.
```

```
 1                    CERTIFICATION

 2        I, DARLENE M. COPPOLA, a Notary Public, do hereby

 3   certify that ROBERT F. HERRICK, SC.D., after having

 4   satisfactorily identifying himself, appeared remotely

 5   on the 6th day of September, 2022 from Marblehead,

 6   Massachusetts, and was by me duly sworn to testify to

 7   the truth and nothing but the truth as to his

 8   knowledge touching and concerning the matters in

 9   controversy in this cause; that he was thereupon

10   examined upon his oath and said examination reduced to

11   writing by me; and that the statement is a true record

12   of the testimony given by the witness, to the best of

13   my knowledge and ability.

14        I further certify that I am not a relative or

15   employee of counsel/attorney for any of the parties,

16   nor a relative or employee of such parties, nor am I

17   financially interested in the outcome of the action.

18        WITNESS MY HAND THIS 19th day of September, 2022.

19

20

21   DARLENE M. COPPOLA            My commission expires:

22   NOTARY PUBLIC                 November 11, 2022

23   REGISTERED MERIT REPORTER

24   CERTIFIED REALTIME REPORTER
```