# EXHIBIT L

```
 1              IN THE STATE COURT OF COBB COUNTY

 2                      STATE OF GEORGIA

 3
     JOHN BARNES,                    |
 4                                   |
            Plaintiff,               |
 5                                   |
     v.                              | Civil Action No. 21-A-444
 6                                   |
     HOME DEPOT U.S.A., INC., and    |
 7   MONSANTO COMPANY,               |
                                     |
 8          Defendants.              |
     _____|
 9

10

11

12

13        Videotaped Videoconference Deposition of

14              TIMUR S. DURRANI, MD, MPH, MBA

15                 Thursday, June 29, 2023

16

17

18

19

20

21

22

23

24      REPORTED BY: Kyle Ridenour
                     RPR, CSR 14473
25
```

Exhibit L Page - 1
Golkow Litigation Services                                    Page 1

Timur S. Durrani, MD, MPH, MBA

```
 1
 2
 3
 4
 5
 6
 7                              ***
 8
 9        Videotaped videoconference deposition of
10   TIMUR S. DURRANI, MD, MPH, MBA, taken on behalf of
11   DEFENDANTS at Veritext - Oakland, 1 Kaiser Plaza,
12   Suite 250, Oakland, California, with parties
13   appearing remotely as indicated, commencing at
14   9:22 AM PDT, THURSDAY, JUNE 29, 2023, before KYLE
15   RIDENOUR, Registered Professional Reporter,
16   California Certified Shorthand Reporter #14473,
17   pursuant to notice.
18
19                              ***
20
21
22
23
24
25
```

Exhibit L Page - 2

Golkow Litigation Services                                Page 2

Timur S. Durrani, MD, MPH, MBA

```
 1                  A P P E A R A N C E S

 2

 3   For Plaintiff:

 4      ARNOLD & ITKIN LLP
        BY: NOAH WEXLER
 5      BY: BRITTANY CLARK
        6009 Memorial Drive
 6      Houston, Texas 77007
        (713) 222-3800
 7      nwexler@arnolditkin.com
        bclark@arnolditkin.com
 8

 9   For Defendant Monsanto:

10      NELSON MULLINS RILEY & SCARBOROUGH LLP
        BY: NATHAN HOFFMAN (via Zoom)
11      One Nashville Place
        150 Fourth Avenue North, Suite 1100
12      Nashville, TN 37219
        (615) 664-5308
13      nathan.hoffman@nelsonmullins.com

14
     Also present:
15
        Steve Patapoff, Videographer
16

17

18

19

20

21

22

23

24

25
```

Exhibit L Page - 3

Golkow Litigation Services                                    Page 3

```
 1   Male.  This is a non-modifiable risk factor."
 2            Do you see that?
 3      A     Yes.
 4      Q     And then the fourth bullet point:  "Ethnicity:
 5   Caucasian.  This is a non-modifiable risk factor."
 6            Do you see that?
 7      A     I do.
 8      Q     Okay.
 9            And then "Family History," you say, "Father
10   diagnosed with prostate cancer in 2020."
11            Do you see that?
12      A     I do.
13      Q     Were you aware that his brother was also
14   diagnosed with throat cancer in 2010?
15      A     Yes.  And so, you know --
16      Q     Why did you not include that in the family
17   history?
18      A     Well, it's, one, not inheritable.  Right?  The
19   general cause is, and I think of his brother's throat
20   cancer virus was HPV, right, human papilloma virus.
21   That's an infection, not an inherited risk factor, and
22   so it's not considered a risk factor for somebody who's
23   got NHL.
24      Q     According to the literature, are you aware of
25   any studies that show that even one first-degree
```

Exhibit L Page - 4

Golkow Litigation Services                                Page 139

```
 1   relative with cancer put Mr. Barnes at an increased risk
 2   for non-Hodgkin's lymphoma?
 3            MR. WEXLER:  Objection.  Form.
 4            THE WITNESS:  You know, I -- is there a study
 5   out there that shows some increased risk of -- a cancer
 6   increases the risk of non-Hodgkin's lymphoma?  There may
 7   be.  I couldn't tell you -- I wouldn't dispute that.
 8   You know, I don't have a -- I don't have a recollection
 9   of one.
10            But generally, non-Hodgkin's lymphoma is not
11   considered an inheritable trait.  It's not considered an
12   inherited cancer.
13   BY MR. HOFFMAN:
14       Q    I've put in your exhibit folder the next
15   exhibit in order.  I'm not sure what we're up to.
16            MR. HOFFMAN:  Are we up to 6 or 7?
17            MR. WEXLER:  I don't know.  5 was the updated
18   CV.
19            Did you mark anything after that?
20            MR. HOFFMAN:  I don't believe so.  This will
21   be the next one in order.
22            (Exhibit 6 was marked.)
23   BY MR. HOFFMAN:
24       Q    Do you see the McDuffie study --
25       A    Yes.
```

Exhibit L Page - 5

Golkow Litigation Services                                Page 140

```
 1      Q    -- in your folder?
 2           Can you pull that up, Doctor?
 3      A    Yes.
 4      Q    Now, this is one of the studies that you
 5  relied upon when forming your opinions in this case?
 6      A    That's right.
 7      Q    If you could turn to -- it's table 1.
 8      A    I'm there.
 9      Q    Which is on page 1157.
10           You'll see that down near the bottom --
11  actually it's all the way at the bottom in table 1,
12  these are various factors in the study that were
13  analyzed.
14           The last one is:  "Family history of cancer,
15  any first-degree relative:  Yes."
16           Do you see that?
17      A    I do.
18      Q    And that shows a odds ratio of 1.31, and it's
19  statistically significant.
20           Do you see that?
21      A    I do.
22      Q    So the McDuffie study that you relied upon
23  shows that even having one first-degree relative
24  increases in a significant way the risk for developing
25  non-Hodgkin's lymphoma; correct?
```

Exhibit L Page - 6

Golkow Litigation Services                                    Page 141

```
 1              MR. WEXLER:  Objection.  Form.
 2              THE WITNESS:  Well, that's the odds ratio.
 3   But I think we have to take into account when I'm doing
 4   this analysis, when I'm looking at this is -- well, if
 5   there's a family history of this, and I'm looking at
 6   this -- you know, I'm trying to determine if there's an
 7   exposure, the question then is:  Can I -- can I remove
 8   family and family dynamics, family interactions from an
 9   exposure?  And generally the answer is no.  Right?
10              And even if I say, "Okay.  Well, maybe they
11   don't have the same family exposure, you know, some sort
12   of same -- similar family dynamic," is there something
13   that puts them at risk in that family; right?  We often
14   deal with this in the occupational, environmental realm
15   where somebody may be more susceptible to something.
16              And so what this shows is that's not great.
17   Right?  Somebody who may be prone to cancer and then
18   gets an exposure, that just makes it worse.  It doesn't
19   make it better.  It's not like we would -- we would say,
20   "Well, you were going to get cancer anyway cause your
21   family got it."
22              The way we look at it from a health
23   perspective is if you're at increased risk for whatever
24   reason -- socioeconomic, you know, biologic, inherited,
25   all those kind of things -- the fact that you then get
```

Exhibit L Page - 7

Golkow Litigation Services                              Page 142

 1   exposure on top of it and we can demonstrate it is even

 2   more reason why we don't want these people to have these

 3   exposures.

 4   BY MR. HOFFMAN:

 5        Q    You said in your report that prostate cancer

 6   is not an identifiable risk factor for NHL; right?

 7        A    That's right.  And it's not; right?  I mean,

 8   having a family history of prostate cancer --

 9        Q    I'm sorry, Doctor.  That was the only

10   question.

11        A    I know, but I didn't finish.

12        Q    What we just saw in the McDuffie study was

13   McDuffie showed a 31 percent increased risk, and it was

14   statistically significant.

15             That was the finding; correct?

16             MR. WEXLER:  Objection.  Form.

17             THE WITNESS:  So, no.  So what this -- what

18   McDuffie says is people who have a family history -- and

19   you have to understand what family history means, right,

20   and what goes into that.  It's not purely just a

21   singular genetic aspect.  It's all the -- everything

22   that you -- that goes into family.

23             For example, there are people who have

24   families that are not biologically related, right, but

25   they all live together.  And this would show that even

Exhibit L Page - 8
Golkow Litigation Services                                    Page 143

```
 1   if you're not biologically related but you are part of a
 2   family, you have an increased risk.
 3           So the question is:  Why?  Is it -- is there a
 4   biologic component?  Sure, could be.  Is there an
 5   exposure aspect?  Is there something that you have a
 6   group of people together that puts them at an increased
 7   risk?  That's what this shows.
 8   BY MR. HOFFMAN:
 9       Q   Well, McDuffie doesn't come to that
10   conclusion, the conclusion that you just came to, does
11   it?
12           MR. WEXLER:  Objection.  Form.
13           THE WITNESS:  I don't think McDuffie addresses
14   it.  He doesn't -- he doesn't address it -- or she.
15   Yeah.  I'm just telling you how to -- how I -- how this
16   is analyzed, how it's evaluated when I do this or the --
17   you know, the methodology of how it's used.
18   BY MR. HOFFMAN:
19       Q   And you haven't conducted a study similar to
20   the McDuffie study and actually examined that particular
21   factor, have you?
22       A   So there's two parts to that.  I have not
23   conducted a study similar to McDuffie.  And I have
24   examined, as we have just described, in my evaluation,
25   in my understanding, my training, education, and
```

Exhibit L Page - 9

Golkow Litigation Services                                Page 144

```
 1              CERTIFICATE OF STENOGRAPHIC REPORTER

 2              I certify that the witness in the foregoing

 3   remote deposition, TIMUR S. DURRANI, MD, MPH, MBA, was

 4   by me duly sworn in remotely to testify in the

 5   within-entitled cause; that said deposition was taken

 6   remotely at the time therein named; that the testimony

 7   of said witness was stenographically reported by me, a

 8   duly Certified Shorthand Reporter of the State of

 9   California authorized to administer oaths and

10   affirmations, and said testimony was thereafter

11   transcribed into typewriting to the best of my ability

12   via remote teleconferencing.

13              I further certify that I am not of counsel or

14   attorney for either or any of the parties to said

15   deposition, nor in any way interested in the outcome of

16   the cause named in said deposition.

17              The dismantling, unsealing, or unbinding of

18   the original transcript will render the Reporter's

19   Certificate null and void.

20              IN WITNESS WHEREOF, I have hereunto set my

21   hand this 10th day of July, 2023.

22

23              _____

24        KYLE RIDENOUR, RPR
          Certified Shorthand Reporter
25        Certification No. 14473
```

Exhibit L Page - 10

Golkow Litigation Services                                  Page 175