| | |
|---|---|
| **WILKINSON STEKLOFF LLP**<br>Brian L. Stekloff (*pro hac vice*)<br>(bstekloff@wilkinsonstekloff.com)<br>Rakesh Kilaru (*pro hac vice*)<br>(rkilaru@wilkinsonstekloff.com)<br>2001 M St. NW<br>10th Floor<br>Washington, DC 20036<br>Tel: 202-847-4030 | Fax: 202-847-4005<br><br>**HOLLINGSWORTH LLP**<br>Eric G. Lasker (*pro hac vice*)<br>(elasker@hollingsworthllp.com)<br>1350 I St. NW<br>Washington, DC 20005<br>Tel: 202-898-5843 | Fax: 202-682-1639 | **COVINGTON & BURLING LLP**<br>Michael X. Imbroscio (*pro hac vice*)<br>(mimbroscio@cov.com)<br>One City Center<br>850 10th St. NW<br>Washington, DC 20001<br>Tel: 202-662-6000<br><br>**BRYAN CAVE LEIGHTON PAISNER LLP**<br>K. Lee Marshall (CA Bar No. 277092)<br>(klmarshall@bclplaw.com)<br>Three Embarcadero Center, 7th Floor<br>San Francisco, CA 94111<br>Tel: 415-675-3400 | Fax: 415-675-3434<br><br>Jed P. White (CA Bar No. 232339)<br>(jed.white@bclplaw.com)<br>Linda C. Hsu (CA Bar No. 239880)<br>(linda.hsu@bclplaw.com)<br>120 Broadway, Suite 300<br>Santa Monica, CA 90401<br>Tel: 310-576-2100 | Fax: 310-576-2200 |

*Attorneys for Defendant Monsanto Company*

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Angelo Bulone v. Monsanto Company*,<br>3:20-cv-03719-VC | **DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF DR. RICHARD DEGRANDCHAMP**<br><br>Hearing:<br>Date:   March 1, 2024<br>Time:  10:00 a.m.<br>Place:  San Francisco Courthouse,<br>          Courtroom 4 – 17th Floor |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 1, 2024, at 10:00 a.m. in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Dr. Richard DeGrandchamp. Monsanto seeks an order excluding opinions of this witness under Federal Rule of Evidence 702.

Dated:  December 14, 2023                    Respectfully submitted,

                                             /s/ *Linda C. Hsu*
                                             Linda C. Hsu
                                             Attorneys for Defendant Monsanto Company

# **TABLE OF CONTENTS**

Introduction ........................................................................................................................................ 1

Background ....................................................................................................................................... 2

Legal Standard .................................................................................................................................. 2

Argument ........................................................................................................................................... 3

    A.    Dr. DeGrandchamp Should Not be Permitted to Discuss or Refer to Any Inactive Ingredient or Trace Impurity in Roundup. ................................................. 3

    B.    Dr. DeGrandchamp Should Not be Permitted to Refer to, Opine On, or Interpret the Ninth Circuit Decision in *NRDC*. ......................................................... 6

    C.    Dr. DeGrandchamp's Testimony Regarding the Regulatory History of Glyphosate and the 1983 Rodent Bioassay should be Excluded. ............................ 8

    D.    Dr. DeGrandchamp's Comparison of Glyphosate to His Self-Created Novel List of The Nine "Key Hallmarks" of NHL is Unreliable. ..................................... 11

Conclusion ..................................................................................................................................... 13

BRYAN CAVE LEIGHTON PAISNER LLP
ONE METROPOLITAN SQUARE
211 NORTH BROADWAY, SUITE 3600
ST. LOUIS, MISSOURI 63102-2726

# **TABLE OF AUTHORITIES**

Page(s)

## Cases

*Aguilar v. International Longshoremen's Union Local 10*,
   966 F.2d 443 (9th Cir. 1992) ................................................................................................. 7

*Baldonado v. Wyeth*,
   No. 04 C 4312, 2012 WL 1802066 (N.D. Ill. May 17, 2012) ............................................... 10

*Cabrera v. Cordis Corp.*,
   134 F.3d 1418 (9th Cir. 1998) ............................................................................................. 12

*Cooper v. Brown*,
   510 F.3d 870 (9th Cir. 2007) ................................................................................................. 3

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .................................................................................................... 3, 9, 12

*Engilis v. Monsanto Co.*,
   No. 3:19-cv-07859-VC .......................................................................................................... 11

*In re Ethicon, Inc.*,
   2014 WL 186872 (S.D. W. Va. January 15, 2014) ............................................................... 8

*Fujifilm Corp. v. Motorola Mobility LLC*,
   No. 12-CV-03587-WHO, 2015 WL 1265009 (N.D. Cal. Mar. 19, 2015) ............................ 10

*G.F. Co. v. Pan Ocean Shipping Co., Ltd.*,
   23 F.3d 1498 (9th Cir. 1994) ................................................................................................. 7

*In re Genetically Modified Rice Litig.*,
   666 F. Supp. 2d 1004 (E.D. Mo. 2009) ............................................................................... 10

*Herrera v. Eli Lilly & Co.*,
   No. 213CV02702SVWMAN, 2015 WL 12743696 (C.D. Cal. July 31, 2015) ...................... 8

*Hexum v. Eli Lilly & Co.*,
   No. 2:13-cv-02701-SVW-MAN, 2015 WL 5008263 (C.D. Cal. Aug. 10, 2015) ................. 10

*Nat'l Ass'n of Wheat Growers v. Bonta*,
   85 F.4th 1263 (9th Cir. 2023) ................................................................................................ 6

*Nicholson v. Biomet, Inc.*,
   No. 18-CV-3057-CJW-KEM, 2020 U.S. Dist. LEXIS 249346 (N.D. Iowa Oct.
   22, 2020) ............................................................................................................................... 10

*NRDC v. U.S. EPA*,
   38 F.4th 34 (9th Cir. 2022) .................................................................................... 1, 6, 7, 13

*Persian Gulf Inc. v. BP W. Coast Prod. LLC*,
   632 F. Supp. 3d 1108 (S.D. Cal. 2022) .................................................................................. 3

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010), *as amended* (Apr. 27, 2010) .................................................. 3

*In re Rezulin Prod. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) ............................................................................. 8, 10

*In re Roundup Prods. Liab. Litig.*,
   Pretrial Order No. 288 ........................................................................................................ 11

*Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*,
   No. CV 04-10077 .................................................................................................................. 5

*United States v. Santini*,
   656 F.3d 1075 (9th Cir. 2011) .............................................................................................. 8

*Zetz v. Bos. Sci. Corp.*,
   644 F. Supp. 3d 684 (E.D. Cal. 2022) .................................................................................. 8

**Statutes**

Administrative Procedure Act ................................................................................................ 1, 2, 6

**Other Authorities**

Fed. R. Evid. 403 ........................................................................................................................ 5

Federal Rules of Evidence Rule 702 ................................................................................... 2, 3, 9

**INTRODUCTION**

Plaintiff designated Dr. Richard DeGrandchamp to offer opinions on toxicology, exposure, dermal absorption, and risk assessment. Dr. DeGrandchamp's opinions in this case should be excluded for at least four reasons.

*First*, Dr. DeGrandchamp should not be permitted to discuss or refer to any inactive ingredient or trace impurity in Roundup. Dr. DeGrandchamp has not been disclosed to offer an opinion that Plaintiff was injured by any inactive ingredient or trace impurity in Roundup. Any reference to impurities during Dr. DeGrandchamp's testimony at trial is therefore irrelevant, would not help the jury to understand the evidence or determine a fact in issue, and would lead to speculation.

*Second*, Dr. DeGrandchamp should not be permitted to discuss or refer to, much less opine on, the Ninth Circuit's opinion in *NRDC v. U.S. EPA*, 38 F.4th 34 (9th Cir. 2022). That decision applied the Administrative Procedure Act to determine that the Environmental Protection Agency ("EPA") needed to revise and better explain its analysis in the 2020 Interim Registration Decision of glyphosate. Dr. DeGrandchamp has previously proposed to interpret the Ninth Circuit's holding in *NRDC* to a Roundup jury and explain the basis and meaning of the *NRDC* decision. Dr. DeGrandchamp is a toxicologist and lacks the expertise and qualifications to testify regarding the NRDC decision. To allow Dr. DeGrandchamp to testify on the meaning of a case holding also would impermissibly infringe on the judge's role to instruct the jury on matters of law.

*Third*, Dr. DeGrandchamp should not be permitted to give a slanted account of the regulatory history of Roundup, Monsanto's corporate conduct, or Monsanto's purported state of mind. That is not proper expert testimony—it is outside of Dr. DeGrandchamp's area of expertise, not based on personal knowledge, and unfairly prejudicial.

*Fourth*, Dr. DeGrandchamp's opinion disclosed in his report in this case is not the product of reliable methodology or sufficient facts and data. As recently as March 2022, Dr. DeGrandchamp testified that he had "no supporting evidence" to conclude that Roundup caused lymphoma in people. In a dramatic shift, Dr. DeGrandchamp now claims, in his report, to have devised a novel methodology, which he claims establishes that Roundup causes lymphoma in

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. RICHARD DEGRANDCHAMP

people. This methodology has been neither peer-reviewed nor approved by other scientists, and his opinion relying on the methodology should be precluded.

## BACKGROUND

Dr. DeGrandchamp is a toxicologist with a Ph.D. from the University of Michigan, School of Public Health. Ex. A, DeGrandchamp's CV. He intends to serve as a testifying expert in this case hired through his dedicated limited partnership, Scientia Veritas, of which he has been "President and Principal Toxicologist" for 25 years. *Id.*; Ex. B, Plaintiff Bulone's Disclosure of Expert Witnesses and Declaration, dated August 22, 2022 at 5 ("Bulone Expert Disclosures"). Plaintiff designated Dr. DeGrandchamp as a testifying expert in the areas of "toxicology, exposure, dermal absorption, and risk assessment," providing expert opinions about:

- "the mechanism of absorption of glyphosate and/or glyphosate-based formulations through the skin and other exposure pathways;"
- "role of surfactants on dermal absorption;"
- "toxicology and animal studies on dermal absorption;"
- "human exposure studies and data relating to glyphosate and/or glyphosate-based formulations;" and
- "the effect of wearing personal protective equipment (PPE) on exposure levels."

Ex. B, Bulone Expert Disclosures at 5.

Dr. DeGrandchamp was not deposed in this case. But he has been deposed in other Roundup cases and has affirmed that he is qualified to provide expert testimony only on general causation, rather than whether a specific plaintiff's disease can be attributed to Roundup exposure. *See, e.g.*, Ex. C, DeGrandchamp *Allegrezza* Dep. Tr. 16:20 ("I only testify to general causation"); 30:18-19 ("I haven't expressed an opinion about the ADME."); 30:25-31:2 ("I haven't done those calculations or looked at any exposure to them per se because that gets into the realm of specific causation."). Dr. DeGrandchamp will thus not be providing any specific causation opinion at trial.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience,

training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. Fed. R. Evid. 702. The proponent of the expert bears the burden of proving that the expert's proffered testimony is admissible. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). The trial judge is charged with the responsibility of acting as a gatekeeper to "ensure that any and all scientific testimony…is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Expert opinion testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010). "[A]n expert's scientific conclusions must be supported by 'good grounds for each step in the analysis,' meaning that 'any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible.'" *Persian Gulf Inc. v. BP W. Coast Prod. LLC*, 632 F. Supp. 3d 1108, 1164–65 (S.D. Cal. 2022) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

## ARGUMENT

### A. Dr. DeGrandchamp Should Not be Permitted to Discuss or Refer to Any Inactive Ingredient or Trace Impurity in Roundup.

Dr. DeGrandchamp should not be permitted to discuss or refer to any inactive ingredient or trace impurity in Roundup. *See, e.g.*, Ex. D, *Alesi* 07/28/22 Order at 10 (in Roundup case, ruling that plaintiffs' experts were not allowed to mention any impurities by name because "[t]here was no expert testimony that any trace impurity could cause cancer"). Dr. DeGrandchamp has not offered an opinion that any plaintiff was injured by any inactive ingredient or trace impurity in Roundup. Dr. DeGrandchamp has in fact *disclaimed* any opinion as to whether inhalation or dermal absorption of trace impurities of ethylene oxide in Roundup are capable of any toxicological effects. *See* Ex. C, *Allegrezza* Dep. Tr. 30:14-19 ("Q. Have you reached an expert conclusion that ethylene oxide disassociates from the Roundup formulation in such a manner that it may be absorbed by people exposed to Roundup? A. I haven't expressed an opinion about the ADME."); 32:5-9 ("[Y]ou

haven't yet reached an expert opinion that any inhalation or dermal absorption of ethylene oxide in Roundup users will be toxicologically significant; is that fair? A. That's fair, yes.").

Dr. DeGrandchamp has similarly disavowed any expert testimony concerning asserted dioxane impurities in Roundup. Although Dr. DeGrandchamp has testified that Monsanto's 1980 "statement with regard to the hazard that dioxane posed" in Roundup was "totally without merit" because "Monsanto didn't know the concentrations at that point," he has also disclaimed any knowledge of whether or not "Monsanto actually made … measurement" or whether Monsanto had knowledge of the concentration of 1, 4-dioxane impurities in Roundup/Glyphosate prior to its November 17, 1980 letter to EPA. *See* Ex. C, *Allegrezza* Dep. Tr. 61:24-62:1 ("I do not know when Monsanto actually made those measurements. I don't know if it was before 1980 … or it was after."). He similarly has no opinion as to whether any medical studies have found a connection between 1, 4-dioxane occupational exposure and cancer. *Id.* 122:12-16. He also disclaimed any opinion connecting N-nitrosoglyphosate to carcinogenicity and thus any claimed injury in the matter. *Id.* 72:6-12 ("Q. In the Allegrezza matter …, you have not reached an opinion to a reasonable degree of toxicological certainty that N-nitrosoglyphosate is a carcinogen; true? A. … I won't be expressing [an] opinion in this litigation matter, that's correct."). The same is true of NNG, *id.* 72:13-16, and of formaldehyde, *id.* 72:17-18.

Dr. DeGrandchamp also admitted that he has no expert opinion to offer on whether impurities exist in Monsanto-produced Roundup at all, as opposed to generic glyphosate formulations made by other companies. Ex. C, *Allegrezza* Dep. 80:20-23 ("Q. For the formulation samples, is the data coming from just Monsanto products, just generic products[,] or a combination thereof?" A. … I do not know."); 81:8-11 (with respect to dioxane impurity concentrations, "Q. [Y]ou don't know if that was Roundup or a generic formulation; true? A. … Yes, I do not know…."). He disavowed any opinion about impurity issues relating to surfactants made by a third party, Solvay. *Id.* 86:7-8 ("I'm not offering the opinion on Solvay, per se. … I will not be offering any opinion on Solvay specifically."). And he disavowed any opinion about whether impurities in Monsanto-made Roundup cause cancer, except for the single study EPA requested in the early 1980s—for which he admitted he did not know what concentrations of impurities were at issue or

- 4 -
MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. RICHARD DEGRANDCHAMP

whether data about impurities came from Monsanto-made products or generic Glyphosate made by others. *Id.* 112:20-23 ("I'm not going to be offering any opinion on epidemiology of any impurity or glyphosate with the exception of the one study that we've talked about."). Asked whether he had "an expert opinion one way or another whether a regulatory agency has concluded" that 1, 4-dioxane "is associated with cancer in people," Dr. DeGrandchamp confirmed: "I have no opinion." *Id.* 112:17-113:2.

Dr. DeGrandchamp further disavowed knowledge of whether a person's exposure to 1, 4-dioxane typically comes from impurities in Roundup or any of various other sources encountered in daily life. After acknowledging that 1, 4-dioxane is present in, for example, the food additive polysorbate 80, and after confirming "[t]here are other products that have 1, 4-dioxane," Dr. DeGrandchamp confirmed he had not "been asked to do any calculations … to determine what amount of a Roundup applicator's daily 1, 4-dioxane intake would come from applying Roundup versus all these other background products." Ex. C, *Allegrezza* Dep. 116:10-15; *see also id.* 117:13-17 ("Q. You haven't done any breakdown to determine how much comes from environmental exposures outside of Roundup versus how much comes from Roundup.  A. … That's correct.").

Because Dr. DeGrandchamp has no opinions about impurities in Roundup, he should not be permitted to testify on that topic.  There is a great risk that jurors will assume that if evidence concerning impurities is presented at trial, it must be relevant to whether Roundup contributed to Plaintiff's cancer, when in fact it is not relevant and—in any event—Dr. DeGrandchamp has no competent testimony to provide on the topic.  Indeed, Dr. DeGrandchamp should not be permitted to use the words "impurities" or "contaminants," because such words could cause substantial prejudice.  The use of those words at trial would only inflame and mislead the jury to believe that Roundup is poison, when in reality chemical by-products found in Roundup are within EPA-approved levels. *See* Fed. R. Evid. 403; *Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*, No. CV 04-10077 DSF(RZX), 2007 WL 5674023, at *2 (C.D. Cal. Dec. 10, 2007) (excluding evidence relating to other FDA-approved products not at-issue in the litigation because evidence "only serve[d] to confused and inflame [the] jury").  Indeed, the Ninth Circuit's recent decision in *National Association of Wheat Growers v. Bonta* ("*NAWG*") highlights the problems with letting a

1    toxicologist like Dr. DeGrandchamp opine on these topics for which he is not qualified—the
2    testimony would lend the imprimatur of scientific authority, when in reality the vast majority of
3    qualified experts and regulatory bodies have concluded that glyphosate is not carcinogenic.  *See*
4    *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1270 (9th Cir. 2023) (holding California's
5    glyphosate warning requirement unconstitutional as an impermissible compulsion of commercial
6    speech in part because the required warning's use of the term "known" was misleading to the
7    ordinary consumer).

8    Because testimony about impurities in Roundup would not help the jury to understand the
9    evidence or determine a fact in issue, Dr. DeGrandchamp should be precluded from discussing or
10   referring to any inactive ingredient or trace impurity in Roundup.

11   **B.    Dr. DeGrandchamp Should Not be Permitted to Refer to, Opine On, or
12          Interpret the Ninth Circuit Decision in *NRDC*.**

13   In other Roundup-related trials, Dr. DeGrandchamp has repeatedly attempted to testify
14   about the Ninth Circuit's *Natural Resources* opinion, in which the panel vacated and remanded the
15   human-health portion of the EPA's 2020 Interim Registration Review Decision ("IRD") for
16   glyphosate based on the court's finding that the EPA did not properly consider certain agency
17   guidelines.  *See NRDC,* 38 F.4th at 51-52.  In particular, he has expressed his intent to testify that
18   (1) he reached the same opinion as the Ninth Circuit prior to the publication of that decision, Ex.
19   E, DeGrandchamp *Evard* Dep. at 29:5-9; (2) the Ninth Circuit's opinion "parallels" his own, *id.*
20   45:12-14; and (3) in light of the Ninth Circuit opinion, the EPA will change its decision regarding
21   glyphosate which, in turn, could influence IARC, *id.* at 69:20-23.  Dr. DeGrandchamp should be
22   precluded from offering any such testimony, both because that testimony was not disclosed in this
23   case and because it is an improper subject matter for expert testimony.

24   As an initial matter, the Ninth Circuit did not make a scientific determination.  The decision
25   did not change the EPA's scientific findings supporting its determination that glyphosate does not
26   cause cancer or the status of Roundup's registration with EPA.  Instead, the Ninth Circuit opinion
27   merely applied the legal requirements of the Administrative Procedure Act to the IRD.  *See NRDC*,
28   38 F.4th at 51-52.    The EPA has since withdrawn the IRD, which was a discretionary step in its

final registration review of glyphosate, but is still focused on its final registration decision, expected in 2026.  *See* Ex. F, September 21, 2022 EPA Memorandum, at 5.  The EPA further emphasized, contrary to Dr. DeGrandchamp's speculation in prior cases, that although the EPA will "revisit and better explain its evaluation of the carcinogenic potential of glyphosate," its "underlying scientific findings ... including ... that glyphosate is not likely to be carcinogenic to humans" were not necessarily "incorrect" and may be "used as support for a future decision following reconsideration."  *Id.* at 5-6.

No testimony Dr. DeGrandchamp might proffer on the *NRDC* decision is appropriate for any testifying litigation expert, much less for Dr. DeGrandchamp, a toxicologist who does not have a law degree and who admitted that he did not know "the basis for [the Ninth Circuit's] conclusion" or "how they arrived at that" conclusion.  *See* Ex. E, DeGrandchamp *Evard* Dep. at 32:12-19.  In fact, expert witnesses are categorically barred from opining on matters of law.  *See Aguilar v. International Longshoremen's Union Local 10*, 966 F.2d 443, 447 (9th Cir. 1992) ("[M]atters of law for the court's determination ... [a]re inappropriate subjects for expert testimony.").  Questions of law are unambiguously the domain of the trial judge, and allowing Dr. DeGrandchamp to opine on the meaning of a case holding would infringe on the judge's role.  *See, e.g.*, *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1507 n.6 (9th Cir. 1994) (striking expert affidavits that attempted to interpret legislative history and apply a statute to the particular case).  Dr. DeGrandchamp essentially proposes to interpret the Ninth Circuit's holding in *Natural Resources* and explain the basis and meaning of the decision.  Such testimony would clearly be impermissible testimony on the law.  *G.F. Co.*, 23 F.3d at 1507 n.6.[1]

---

[1] To the extent the significance of court decisions like *Natural Resources* or *NAWG* are relevant at trial, the trial courts should use their discretion to decide their admissibility based on the state of the EPA's guidance and labeling requirements at the time of trial.  And the cases can only be admitted or discussed at trial through proper channels.  Expert testimony—let alone the testimony of a toxicologist like Dr. DeGrandchamp who disclaims any expertise in the subject matter of the legal decision—is not a proper means of presenting this information to the jury.  *G.F. Co.*, 23 F.3d at 1507 n.6.

**C.     Dr. DeGrandchamp's Testimony Regarding the Regulatory History of Glyphosate and the 1983 Rodent Bioassay should be Excluded.**

Dr. DeGrandchamp should also not be permitted to testify about Monsanto's corporate conduct, Monsanto's purported state of mind, or to give a slanted account of the regulatory history of Roundup. Such testimony is not specifically disclosed in Plaintiff's expert disclosure document listing the subjects of anticipated opinions proffered by this expert. Even if it had (or if Plaintiff's counsel tries to shoehorn such topics into the categories disclosed), it should be precluded.

A ruling from the Court excluding this type of testimony is necessary. In other Roundup litigation, Dr. DeGrandchamp has attempted to opine on whether Monsanto's historic conduct with respect to Roundup was ethical. *See, e.g.*, Ex. G, DeGrandchamp *Luke* Dep., 32:6-9. As courts in other national product liability matters have concluded, this is not a proper subject for an expert opinion. *See, e.g.*, *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (expert testimony "on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise"); *In re Ethicon, Inc.*, 2014 WL 186872, at *6, *21 (S.D. W. Va. January 15, 2014) ("Ethicon's knowledge, state of mind, or other matters related to corporate conduct and ethics . . . are not appropriate subjects of expert testimony because opinions on these matters will not assist the jury."); *see also Herrera v. Eli Lilly & Co.*, No. 213CV02702SVWMAN, 2015 WL 12743696, at *4 (C.D. Cal. July 31, 2015) (excluding expert testimony on corporate bad conduct on these grounds); *Zetz v. Bos. Sci. Corp.*, 644 F. Supp. 3d 684, 703 (E.D. Cal. 2022) (same). Moreover, Dr. DeGrandchamp is a toxicologist—corporate ethics is far afield from his area of expertise. *See United States v. Santini*, 656 F.3d 1075, 1078-79 (9th Cir. 2011) (an expert in one cannot express an opinion relying on data that requires expertise in another field).[2]

The Court should also issue an order precluding Dr. DeGrandchamp from testifying—as he attempted to in another Roundup case—that "maybe there was monetary decisions that forced

---

[2]     Another court adjudicating Roundup claims excluded similar opinions for another expert on these grounds. *See* Ex. H, *Alesi* 07/22/22 Order at 18 (precluding expert from offering testimony regarding "Monsanto corporate documents" and "Monsanto's intent, motives, or state of mind, including any interpretation of documents that allegedly infer knowledge or intent").

- 8 -
MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. RICHARD DEGRANDCHAMP

[purported inadequate testing by a company like Monsanto]" and "[m]aybe they needed to make more money." Ex. E, DeGrandchamp *Evard* Dep. Tr. 65:14-18. In the matter where Dr. DeGrandchamp gave this deposition testimony, he conceded that he cannot "opine what led to [the purported inadequate testing], promising to limit his testimony to looking at "those decisions and opin[ing] about whether or not it's consistent with the generally accepted practice in the field." *Id.* at 65:20-22. He admitted he could not "crawl into [Monsanto employees'] heads and know what they were thinking," but noted it would not prevent him from "infer[ring] that they knew certain facts and they acted contrary to generally accepted practice." *Id.* 67:23-68:1; *see also* Ex. G, DeGrandchamp *Luke* Dep. Tr. 106:2-107:1. These "inferences" and beliefs are not helpful to the jury and should not be permitted. *See Daubert*, 509 U.S. at 589-90 (the word "knowledge" as used in Rule 702 means "more than subjective belief or unsupported speculation").

Next, in past Roundup litigation Dr. DeGrandchamp has also attempted to opine on the regulatory history of EPA's approval of glyphosate-based herbicides. *See* Ex. G, DeGrandchamp *Luke* Dep. 132:11-18. Dr. DeGrandchamp's testimony regarding EPA's consideration of glyphosate and early animal toxicity studies on glyphosate should be excluded because—as Dr. DeGrandchamp has made clear in past depositions—he has not performed any expert analysis of the documents and will merely narrate them. *See* Ex. I, DeGrandchamp *Alesi* Dep. 216:13-24 ("You know, there's not going to be much interpretation on my part because I think the memos are pretty self-explanatory."). In describing his methodology for this purported opinion, Dr. DeGrandchamp has characterized his methodology as a "limited assessment" and said that he "just simply went to those EPA documents" and read them to identify what the EPA concluded and what discussions surrounded the initial regulation of glyphosate. *Id*. 43:12-45:7. And despite testifying that "IARC was [his] starting point," Dr. DeGrandchamp has not looked at the animal data or epidemiology data to determine if IARC was correct in its findings. Ex. G, DeGrandchamp *Luke* Dep. at 72:6-73:18. To justify this omission, he asserts that his role is merely to opine whether EPA followed its guidelines in determining that Roundup is not carcinogenic. *See id.* However, Dr. DeGrandchamp concedes that he has never looked at the petition filed with EPA on glyphosate based herbicides, *id.* 55:3-5; he has never reviewed the underlying data submitted by Monsanto to

register glyphosate in the United States, *id.* 58:9-59:6; he is not aware of how many studies have been submitted to the EPA in support of glyphosate registration, *id.* 62:21-63:2; and he does not know the names of companies that have registered glyphosate in the United States, *id.* 65:9-13.

It is settled law that experts cannot be used as mouthpieces, elevating the prominence of certain documents by simply narrating them. *See, e.g.*, *Hexum v. Eli Lilly & Co.*, No. 2:13-cv-02701-SVW-MAN, 2015 WL 5008263, at *4 (C.D. Cal. Aug. 10, 2015) ("To the extent that [the expert] seeks merely to recount the history of [defendant's] clinical studies, marketing efforts, and publication of the [article], [the expert's] testimony is neither helpful to the trier of fact nor based on his [professional] expertise. This testimony is thus not admissible."); *Nicholson v. Biomet, Inc.*, No. 18-CV-3057-CJW-KEM, 2020 U.S. Dist. LEXIS 249346, at *22 (N.D. Iowa Oct. 22, 2020) (barring expert witness from simply reading and narrating documents); *Baldonado v. Wyeth*, No. 04 C 4312, 2012 WL 1802066, at *4 (N.D. Ill. May 17, 2012) (precluding expert from testifying to advocacy-based "narrative histories" summarizing a pharmaceutical company's promotion of drug because the testimony did not involve any "scientific, technical or other specialized knowledge"); *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d at 551 (precluding testimony that was a "narrative reciting selected regulatory events" because "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence"); *In re Genetically Modified Rice Litig.*, 666 F. Supp. 2d 1004, 1025 (E.D. Mo. 2009) ("Expert witnesses must do more than simply summarize documents with a 'tilt favoring a litigant.'").

This type of testimony, which does not require any specialized knowledge or skill, is not admissible. An expert who merely reads or summarizes documents for the jury is not providing helpful testimony because the jury is capable of reading those same documents and reaching conclusions about them on its own. *See In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d at 551 (precluding expert from reciting a history of drug's regulatory events, including summaries of meetings, labeling changes, and "approval and withdrawal decisions by regulators in the United States and abroad," because the testimony was merely a narrative "which a juror is equally capable of constructing"); *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL

1265009, at *11 (N.D. Cal. Mar. 19, 2015) (striking similar expert testimony that simply rehashes lay testimony better presented through percipient witnesses).

For these reasons, the Court should not permit Dr. DeGrandchamp to testify about Monsanto's corporate conduct, motives or intent, or to narrate Monsanto and EPA documents.

### D.   Dr. DeGrandchamp's Comparison of Glyphosate to His Self-Created Novel List of The Nine "Key Hallmarks" of NHL is Unreliable.

Dr. DeGrandchamp's opinions in recent Roundup litigation have gone through a dramatic transformation. On March 24, 2022, Dr. DeGrandchamp testified during his deposition in the *Alesi* Roundup matter that he had "no supporting evidence" to conclude that Roundup caused NHL in people. *See* Ex. I, DeGrandchamp *Alesi* Dep. at 11:9-12:10. Due to his lack of opinions, the plaintiffs ultimately withdrew Dr. DeGrandchamp as a testifying expert in that case. Later that same year, Dr. DeGrandchamp debuted a novel opinion in the report that Plaintiffs have disclosed in this case, consisting of a self-determined list of *nine* "key hallmarks" of lymphomas ("Key Hallmarks"). Ex. J, DeGrandchamp Report at 1. Dr. DeGrandchamp's opinion that glyphosate is capable of causing NHL in humans should be excluded because the cherry-picked list of "Key Hallmarks" of NHL that he has developed, and purports to rely upon now for this opinion, is neither reliable nor generally accepted within a scientific community.

In formulating his opinion, Dr. DeGrandchamp reviewed literature on the molecular etiology of lymphomas to identify the cellular mechanisms that are, in his opinion, the "key hallmarks" that cause lymphomas to develop. *See* Ex. E, DeGrandchamp *Evard* Dep. at 50:4-53:14; Ex. J, DeGrandchamp Report at 1. He then reviewed a curated and self-selected list of studies on glyphosate to determine whether glyphosate can cause any of these "Key Hallmarks" to develop. Ex. J, DeGrandchamp Report at 1. As this Court noted recently in ruling on Monsanto's motion to exclude certain causation experts in *Engilis v. Monsanto Co.*, No. 3:19-cv-07859-VC, an expert's "cherry-pick[ing] the findings of the epidemiological studies, reporting only certain odds ratios—those most favorable to his ultimate opinion" disqualifies his testimony. *See* Ex. K, *In re Roundup Prods. Liab. Litig.*, Pretrial Order No. 288: Order Granting Motions to Exclude Experts

Charles and Schneider, MDL No. 2741, Case No. 16-md-02741-VC (N.D. Cal. Nov. 15, 2023), at 3.

Additionally, this methodology lacks general acceptance in the relevant scientific community, and neither Plaintiff nor Dr. DeGrandchamp has shown otherwise, as is their burden. *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1422 (9th Cir. 1998) (affirming district court's exclusion of expert testimony where the expert tested the plaintiff's blood for silicone antibodies, there was no such generally accepted blood test, and no one else in the field had before used the test that expert used). Dr. DeGrandchamp admitted that "there is no international organization or scientific organization that has put together a list of NHL-specific molecular mechanisms ... It doesn't exist." Ex. E, DeGrandchamp *Evard* Dep. at 101:7-19; *see also id.* at 103:4-8 ("Can I point to one document that lists all of these? No, because studies don't look at all of these"). No other expert has ever relied upon Dr. DeGrandchamp's "Key Hallmarks" to determine if a substance's mechanisms cause NHL.

As underscored in *Daubert*, "submission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected." *Daubert*, 509 U.S. at 593. Here, there is no evidence that anyone in any professional or scientific community has scrutinized or accepted Dr. DeGrandchamp's novel methods. In fact, the molecular mechanisms included in Dr. DeGrandchamp's list of "Key Hallmarks" have never been subject to open and transparent peer review by any other toxicologists to establish their validity or reliability. Ex. E, DeGrandchamp *Evard* Dep. at 98:5-11; *see also id.* at 98:24-99:6 (admitting that IARC would not even consider the analysis in his report if he submitted it to the organization). Based on that alone, his testimony on the "Key Hallmarks" should be excluded. *See Cabrera*, 134 F.3d at 1422.

Apart from its lack of acceptance in the scientific community, Dr. DeGrandchamp's invented list of the "Key Hallmarks" also presents significant reliability issues. In formulating the list, Dr. DeGrandchamp artificially limited his review of relevant glyphosate studies. Specifically, Dr. DeGrandchamp did not review any of the extensive studies conducted by Monsanto revealing mechanistic data on glyphosate. Ex. E, DeGrandchamp *Evard* Dep. at 115:6-11. Dr.

DeGrandchamp explained this wholesale exclusion of Monsanto's research by saying that he would not personally trust the results of any study Monsanto conducted on glyphosate.  *See* Ex. I, DeGrandchamp *Alesi* Dep. at 155:10-14.  But his personal opinions regarding the author of a study reveal the arbitrary, unreliable nature of his methodology.  Having failed to consider relevant studies, Dr. DeGrandchamp's opinion is unreliable.

Furthermore, Dr. DeGrandchamp's own report shows the arbitrary and unscientific nature of the list of "Key Hallmarks."  For example, Dr. DeGrandchamp admitted that, at one point in his analysis, he considered a tenth hallmark but decided to exclude it from his list of "Key Hallmarks" for reasons he could not articulate.  *See* Ex. E, DeGrandchamp *Evard* Dep. at 104:25-105:11 (describing a tenth "micronuclei" hallmark); *see also id.* at 107:9-13 ("So when I put down ten, I— you know, maybe this is even a typo.  Maybe I should just have cut it down to nine.  I think what happened was I put these together, originally had another category, and just left the ten in.").

Accordingly, Dr. DeGrandchamp should not be permitted to offer an opinion that glyphosate is capable of causing NHL in humans based upon his list of "Key Hallmarks" of NHL.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court grant Monsanto's Motion to Exclude Testimony of Dr. Richard DeGrandchamp and preclude Dr. DeGrandchamp from testifying on the following topics:  (1) any inactive ingredient or trace impurity in Roundup; (2) Dr. DeGrandchamp's understanding of the Ninth Circuit opinion in *NRDC*; (3) the regulatory history of Roundup and Monsanto's corporate conduct and purported state of mind; and (4) whether Roundup causes non-Hodgkins lymphoma.

Dated:  December 14, 2023                         Respectfully submitted,

/s/ *Linda C. Hsu*
Linda C. Hsu
Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of December, 2023, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Linda C. Hsu*
Linda C. Hsu
Attorneys for Defendant Monsanto Company