# EXHIBIT H

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

FILED
07/22/22
JOAN M. GILMER
CIRCUIT CLERK
ST. LOUIS COUNTY, MO

CARL ALESI, *et al.*,            )
                                 )
    Plaintiffs,              )
                                 ) Cause No. 19SL-CC03617
v.                               )
                                 ) Division No. 1
MONSANTO COMPANY,                )
                                 ) July 22, 2022
    Defendant.               )

## ORDER CONCERNING DEFENDANT MONSANTO COMPANY'S MOTIONS TO EXCLUDE EXPERTS

Presently before the Court are Defendant Monsanto Company's ("Monsanto") six separate motions to exclude and accompanying exhibits directed at Plaintiffs' expert witnesses:

1. Monsanto's Motion to Exclude Opinions of Dr. Marc Braunstein and Suggestions in Support;
2. Monsanto's Motion to Exclude Testimony of Dr. Richard DeGrandchamp and Suggestions in Support;
3. Monsanto's Motion to Exclude Opinions of Dr. William R. Sawyer and Suggestions in Support;
4. Monsanto's Motion to Exclude Opinions of David O. Carpenter, M.D. and Suggestions in Support;
5. Monsanto's Motion to Exclude the Opinions of Dr. Joel Joseph Gagnier and Memorandum of Law in Support; and
6. Monsanto's Motion to Exclude Opinions of Charles Benbrook and Suggestions in Support.

On July 20, 2022, the Court conducted a hearing on Monsanto's motions to exclude and other dispositive motions. The Court heard arguments of counsel and reviewed the pleadings and exhibits submitted and took the motions to exclude and other dispositive motions under submission. After careful consideration of the legal briefs, exhibits, and oral arguments, the Court makes the decisions.

1

Monsanto's complaint about Dr. Gagnier's not following the Bradford Hill criteria is not a sufficient basis for a motion to exclude. As one Missouri federal court has explained:

> Although the Bradford Hill criteria may be a tool for determining whether an epidemiological study establishes causation, *see In re Neurontin,* 612 F.Supp.2d at 133, it is by no means required and "in the context of a general causation challenge, failure to satisfy the Bradford Hill criteria does not doom admission under *Daubert.*" *Id.* (citing *In re Viagra Prods. Liab. Litig.,* 572 F.Supp.2d 1071, 1081 (D.Minn.2008)). Therefore, whether [a challenged expert] did or did not use the Bradford Hill criteria will not determine the admissibility of his opinions . . . .

*In re Celexa & Lexapro Prod. Liab. Litig.*, 927 F. Supp. 2d 758, 766 (E.D. Mo. 2013).

For these reasons, the Court grants and sustains Monsanto's motion to exclude the testimony of Dr. Gagnier in part to prohibit him from offering testimony concerning the type of lymphoma which any individual plaintiff has. In all other aspects, the Court denies and overrules Monsanto's motion to exclude directed at Dr. Gagnier and orders he be permitted to testify that those exposed to glyphosate at any point in their life showed a statistically significant increased risk for NHL in general and not as to the specific cancers of Plaintiffs.

### F.  Dr. Charles Benbrook

Plaintiffs designated Dr. Benbrook, an agricultural economist, to offer opinions on several broad topics, primarily relating to the regulation and labeling of glyphosate-based herbicides ("GBH") and Monsanto's corporate conduct.

For various reasons, Monsanto argues Dr. Benbrook's opinions should be expressly limited in specific ways. Monsanto's first main argument is that Dr. Benbrook is not qualified to offer expert testimony in this case. While he has a degree in agricultural economics, he is not a scientist, a lawyer, or a pesticide regulator such as to make him an expert on Monsanto's legal, regulatory, or ethical obligations, or its compliance with U.S. Environmental Protection Agency ("EPA") registration or labeling requirements. Furthermore, Monsanto argues Dr. Benbrook lacks any

qualifications to testify about the proper interpretation of Monsanto documents or to draw inferences from those documents to opine on Monsanto's state of mind, motives, and intent.

Next, Monsanto argues Dr. Benbrook should be precluded from narrating or summarizing Monsanto's documents or offering opinions about Monsanto's intent, motives, or state of mind. According to Monsanto, an expert simply reading or summarizing documents for the jury is not providing helpful testimony because the jury is capable of reading those documents and reaching conclusions about them on its own. Relatedly, Monsanto argues Dr. Benbrook should be precluded from speculating about the EPA's motive, intent, or state of mind related to Monsanto and Roundup.

Next, Monsanto argues Dr. Benbrook's opinions about Monsanto's ethical obligations or compliance should be excluded despite his statement in his deposition that is "an expert in honesty." According to Monsanto, any claim that Monsanto violated federal law and EPA regulations is preempted as EPA itself has the sole power to determine whether its regulations are followed.

Lastly, Monsanto argues Dr. Benbrook should be precluded from testifying about what he believes Monsanto could or should have done differently, including what warnings or labeling might have been accepted by the EPA. As other courts have found, Dr. Benbrook lacks the qualifications necessary to opine about what warnings should have been included under EPA regulations or what warnings EPA may or may not have accepted. *See* Exs. 5 and 6.

Plaintiffs argue Dr. Benbrook is qualified to give expert testimony in this case. They note his prior testimony on these subjects in other Roundup litigation and before Congress as well as his work with multiple governmental entities. Specifically, Plaintiffs quote at length in their response memorandum from reports he authored as Staff Director for the U.S. House of

Representatives Subcommittee on Department Operations, Research and Foreign Agriculture ("DORFA") and later as Executive Director of the Board of Agriculture, National Research Council, for the National Academy of Science, as well as related congressional testimony. Plaintiffs further contend Dr. Benbrook's proposed testimony would assist the jury in understanding the voluminous documents that have been produced in this case.

The Court finds that Plaintiffs have met the threshold requirements under section 490.065.2, RSMo, to present Dr. Benbrook's testimony to the jury in this case. The Court acknowledges that Dr. Benbrook has been excluded from offering similar testimony numerous times by multiple courts. *See* Monsanto's Motion to Exclude Opinions of Benbrook, Exs. 2 and 4 (U.S. District Court for the Northern District of California, 2019); Ex. 3 (California Superior Court, Alameda County, 2019); Ex. 5 (California Superior Court, San Francisco County, 2018); Ex. 6 (California Superior Court, Contra Costa County, 2020).

Specifically, several courts have limited Dr. Benbrook's testimony to the general framework of the EPA regulatory decision-making process and explicitly excluded his testimony regarding topics that include the following: whether Monsanto complied with its legal obligations on registration matters; whether there was a common law standard of regulatory care or stewardship care different from the regulations themselves; whether Monsanto complied with a regulatory standard on registration matters; whether the EPA would have approved an amendment to the Roundup label; whether Monsanto misled the EPA; Monsanto's motive, intent, or state of mind; and/or the industry standard of care on warnings. *See* Exs. 3 and 5.

On the other hand, a 2020 Order by St. Louis City Circuit Judge Elizabeth B. Hogan denied Monsanto's motion to exclude Dr. Benbrook's opinions in their entirety – although Monsanto asserts here that it did not so claim. Ex. 7, Order, *Wade v. Monsanto Co.*, No. 1722-CC00370 (Mo. Cir. Ct. City of St. Louis, Jan. 21, 2020).

Dr. Benbrook has not been designated to offer expert testimony concerning whether glyphosate and Roundup cause NHL. Rather, Plaintiffs seek to offer his testimony on topics related to pesticide regulation. While his experience may be useful in helping the jury understand what EPA and other regulations say, he may not testify about whether Monsanto complied with such rules and regulations. That is solely the province of the jury. *See Bryant v. Bryan Cave LLP*, 400 S.W.3d 325, 334 (Mo. App. E.D. 2013) ("Expert testimony is properly excluded as to issues where the jury is as capable as the expert in drawing conclusions because the expert opinion would not assist the trier of fact."). Furthermore, once the jury is presented with the facts and testimony concerning alleged causal links between glyphosate and Roundup causes NHL, it will be the jury's determination whether glyphosate and Roundup causes NHL generally and Plaintiffs' NHL specifically.

For these reasons, the Court grants and sustains Monsanto's motion to exclude the testimony of Dr. Benbrook in part to prohibit him from offering testimony concerning the following topics:

- Dr. Benbrook is precluded from offering testimony regarding whether Monsanto followed EPA rules.

- Dr. Benbrook is precluded from offering testimony regarding Monsanto corporate documents.

- Dr. Benbrook is precluded from offering testimony regarding Monsanto's intent, motives, or state of mind, including any interpretation of documents that allegedly infer knowledge or intent.

- Dr. Benbrook is precluded from offering testimony regarding the EPA's intent or what it would have done.

- Dr. Benbrook is precluded form offering testimony on whether Monsanto complied with EPA rules.

- Dr. Benbrook is precluded from offering testimony on the sufficiency of Roundup's label.

In all other aspects, the Court denies and overrules Monsanto's motion to exclude directed at Dr. Benbrook. Specifically, Dr. Benbrook may testify about the following topics:

- Dr. Benbrook may testify as to what EPA regulations say.

- Dr. Benbrook may testify as to what Monsanto did as a matter of fact.

- Dr. Benbrook may testify as to the pesticide regulatory scheme and pesticide industry standards of care assuming there are recognized industry standards.

- Dr. Benbrook may testify as to what information Monsanto shared with the public.

- Dr. Benbrook may testify as to the differences between the genotoxicity datasets evaluated by EPA and IARC but may not offer his opinion that the organizations' positions are diametrically opposite.

- Dr. Benbrook may testify as to what Monsanto's corporate practices actually are, but he may not testify as to what he thinks they should be.

- Dr. Benbrook may testify about the history of Roundup.

While the Court will permit Dr. Benbrook to read what EPA rules say, he may not offer any narration or his opinion on whether Monsanto followed the EPA rules. If the Court finds this testimony has no value, it may stop Dr. Benbrook at any time.

### III.     CONCLUSION

**WHEREFORE**, for the reasons stated above, the Court make the following rulings:

1. Monsanto's Motion to Exclude the Opinions of Dr. Marc Braunstein is **DENIED AND OVERRULED**.

2. Monsanto's Motion to Exclude Testimony of Dr. Richard DeGrandchamp is **GRANTED AND SUSTAINED AS MOOT**.

3. Monsanto's Motion to Exclude Opinions of Dr. William R. Sawyer is **GRANTED AND SUSTAINED IN PART** to prohibit him from offering testimony concerning the following topics:

    - Dr. Sawyer is precluded from offering medical causation opinions at trial for any of the Plaintiffs in this case, as stipulated by Plaintiffs on page 19 of their response memorandum.

    - Dr. Sawyer is precluded from offering testimony that trace ingredients in Roundup contribute to any alleged cancer risk posed by Roundup, as stipulated by Plaintiffs on page 31 of their response memorandum.

    - Dr. Sawyer is precluded from offering testimony concerning Monsanto company documents, regulatory duties, and the sufficiency of the Roundup label.

In all other aspects, Monsanto's motion to exclude directed at Dr. Sawyer is **DENIED AND OVERRULED IN PART**. Specifically, Dr. Sawyer may testify that Plaintiffs Cox's, Gentile's, and Davis's exposure to Roundup was above the threshold values in the dose-metric studies placing them at a statistically significant increased risk of developing NHL. Furthermore, Dr. Sawyer may testify about his use of the George Study.

4. Monsanto's Motion to Exclude Opinions of David O. Carpenter, M.D. is **GRANTED AND SUSTAINED IN PART** to prohibit him from offering testimony concerning the following topics:

    - Dr. Carpenter is precluded from offering any general or specific causation testimony concerning Roundup or glyphosate and NHL.
    - Dr. Carpenter is precluded from mentioning PCBs specifically although he may testify generally concerning biological mechanisms as they relate to other chemical compounds.

    In all other aspects, Monsanto's motion to exclude directed at Dr. Carpenter is **DENIED AND OVERRULED IN PART**.

5. Monsanto's Motion to Exclude the Opinions of Dr. Joel Joseph Gagnier is **GRANTED AND SUSTAINED IN PART** to prohibit him from offering testimony concerning the type of lymphoma which any individual plaintiff has. In all other aspects, Monsanto's motion to exclude directed at Dr. Gagnier is **DENIED AND OVERRULED IN PART.** Specifically, Dr. Gagnier may testify that those exposed to glyphosate at any point in their life showed a statistically significant increased risk for NHL in general and not as to the specific cancers of Plaintiffs.

6. Monsanto's Motion to Exclude Opinions of Charles Benbrook is **GRANTED AND SUSTAINED IN PART** to exclude the testimony of Dr. Benbrook in part to prohibit him from offering testimony concerning the following topics:

- Dr. Benbrook is precluded from offering testimony regarding whether Monsanto followed EPA rules.

- Dr. Benbrook is precluded from offering testimony regarding Monsanto corporate documents.

- Dr. Benbrook is precluded from offering testimony regarding Monsanto's intent, motives, or state of mind, including any interpretation of documents that allegedly infer knowledge or intent.

- Dr. Benbrook is precluded from offering testimony regarding the EPA's intent or what it would have done.

- Dr. Benbrook is precluded form offering testimony on whether Monsanto complied with EPA rules.

- Dr. Benbrook is precluded from offering testimony on the sufficiency of Roundup's label.

In all other aspects, Monsanto's motion to exclude directed at Dr. Benbrook is **DENIED AND OVERRULED IN PART**. Specifically, Dr. Benbrook may testify about the following topics:

- Dr. Benbrook may testify as to what EPA regulations say.

- Dr. Benbrook may testify as to what Monsanto did as a matter of fact.

- Dr. Benbrook may testify as to the pesticide regulatory scheme and pesticide industry standards of care assuming there are recognized industry standards.

25

- Dr. Benbrook may testify as to what information Monsanto shared with the public.

- Dr. Benbrook may testify as to the differences between the genotoxicity datasets evaluated by EPA and IARC but may not offer his opinion that the organizations' positions are diametrically opposite.

- Dr. Benbrook may testify as to what Monsanto's corporate practices actually are, but he may not testify as to what he thinks they should be.

- Dr. Benbrook may testify about the history of Roundup.

While the Court will permit Dr. Benbrook to read what EPA rules say, he may not offer any narration or his opinion on whether Monsanto followed the EPA rules. If the Court finds this testimony has no value, it may stop Dr. Benbrook at any time.

**SO ORDERED:**

*Brian H. May #1*  July 22, 2022

_____
Hon Brian H. May
Circuit Judge, Division 1