# EXHIBIT I

```
 1            IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
                         STATE OF MISSOURI
 2
 3    CARL ALESI, et al.,      )
                               )
 4            Plaintiffs,      )
                               )
 5        vs.                  ) No. 19SL-CC03617
                               )
 6    MONSANTO COMPANY,        )
                               )
 7            Defendant.       )
 8
 9
10
11
                   Remote Videotaped Deposition of
12                    RICHARD DeGRANDCHAMP, Ph.D.
                   taken on behalf of the Defendant
13                         March 24, 2022
                            * * * * * *
14
15
16
17
18
19
20
21
22
23
24
25
```

Exhibit I Page - 1

Golkow Litigation Services                                 Page 1

Richard DeGrandchamp, Ph.D.

```
 1              IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
                         STATE OF MISSOURI
 2
 3   CARL ALESI, et al.,      )
                              )
 4            Plaintiffs,     )
                              )
 5       vs.                  ) No. 19SL-CC03617
                              )
 6   MONSANTO COMPANY,        )
                              )
 7            Defendant.      )
 8
 9              REMOTE VIDEOTAPED DEPOSITION of RICHARD
10   DeGRANDCHAMP, Ph.D., produced, sworn and examined on
11   March 24, 2022, via Zoom videoconference before Mary Joy
12   Springer, a Certified Court Reporter within and for the
13   State of Missouri, in a certain cause now pending in the
14   Circuit Court of St. Louis County, Missouri, between
15   CARL ALESI, et al., Plaintiffs, vs. MONSANTO COMPANY,
16   Defendant; on behalf of the Defendant.
17
18
19
20
21
22
23
24
25
```

Exhibit I Page - 2

Golkow Litigation Services                                    Page 4

```
 1                       APPEARANCES
 2
    For the Plaintiffs:
 3
             Gibbs C. Henderson, Esq.
 4           Fears Nachawati, PLLC
             5489 Blair Road
 5           Dallas, Texas 75231
             (214)890-0711
 6           ghenderson@fnlawfirm.com
 7
    For the Defendant:
 8
             John M. Kalas  Esq.
 9           Allison P. Hein, Esq.
             Hollingsworth LLP
10           1350 I Street, NW
             Washington, DC 20005
11           (202)898-5800
             jkalas@hollingsworthllp.com
12           ahein@hollingsworthllp.com
13
14  Videographer:
15  Darren Guastella
16
    Court Reporter:
17
    Mary Joy Springer, CSR
18  Illinois CSR #084-001247
    Missouri CCR #1487
19
20
21
22
23
24
25
```

Exhibit I Page - 3

Golkow Litigation Services                                Page 5

```
 1   Roundup?
 2       A.   I have no information.
 3       Q.   Do you have an expert opinion as to whether or
 4   not there are studies supporting the registration of
 5   glyphosate in the United States today that you believe
 6   are a product of scientific fraud?
 7       A.   I have not been asked to look at that, so I
 8   have no information.
 9       Q.   Have you read any statements in the
10   peer-reviewed literature that Monsanto has made
11   regarding glyphosate and/or Roundup that you believe are
12   untrue?
13       A.   I haven't read many comments from Monsanto,
14   but they've claimed that Roundup does not cause NHL, and
15   that's inconsistent with my overall opinion.
16       Q.   Okay.  Are you opining that Roundup causes NHL
17   within the scope of your opinions today?
18       A.   I haven't finished my analysis yet, but I'm
19   accumulating evidence that suggests that it does.
20       Q.   Okay.  Dr. DeGrandchamp, you understand
21   usually I only get to depose you once before trial;
22   right?
23       A.   Correct.
24       Q.   Okay.  Sitting here today, are you offering an
25   expert opinion that Roundup causes NHL based upon human
```

```
 1   data?
 2        A.   I haven't finished my analysis and review of
 3   the documents that we provided, so I haven't reached a
 4   conclusion yet.
 5        Q.   Okay.  And so given that you haven't reached a
 6   conclusion yet, if trial were to occur today, you would
 7   not offer an opinion that Roundup causes NHL in people;
 8   true?
 9        A.   I would have no supporting evidence to make
10   that claim, correct.
11        Q.   Okay.  And so when you stated -- let me -- let
12   me go back to the question I asked previously and ask
13   you in the context of an expert opinion.
14             Do you have an expert opinion that there are
15   statements in the peer-reviewed literature that Monsanto
16   has made regarding glyphosate that are untrue?
17        A.   I haven't reviewed any Monsanto statements to
18   any depth.  I'm generally familiar with their
19   statements, but I can't point to any that I would say
20   was disingenuous or not truthful.
21        Q.   Okay.  And likewise, are you offering an
22   expert opinion that there are statements Monsanto has
23   made to regulators regarding glyphosate and/or Roundup
24   that are untrue?
25        A.   I have no information on that topic at all.
```

Exhibit I Page - 5
Golkow Litigation Services                                Page 12

 1   kidney tumors and the presence of impurities in

 2   glyphosate-based herbicides, the fact that you will

 3   opine those impurities, at least three of them are

 4   carcinogenic in animals, and then the -- the sort of

 5   regulatory history of that 1983 study.

 6            Those -- those particular buckets we talked

 7   about, can you just describe to me your methodology that

 8   you used in reaching your expert opinions on those

 9   issues?

10       A.   For each of the three buckets?

11       Q.   Yep.

12       A.   For the EPA review, I just simply went to

13   those EPA documents.  Spent considerable amount of time

14   to put together the milestones, the sequence of events

15   that led to -- that started with the EPA first

16   concluding that glyphosate was a carcinogen in the mice

17   studies and then gradually how they changed their mind.

18            They went from demanding that -- well, maybe

19   demanding is too strong a word, but strongly

20   recommending to Monsanto that they repeat the mouse

21   studies.  Monsanto objected and then somehow that

22   request or that demand, whatever term you want to use,

23   was simply forgotten.

24            So that was -- that's the first part of my

25   opinion, just to set the stage for the early glyphosate

Exhibit I Page - 6

Golkow Litigation Services                              Page 43

 1   studies, the interaction, the discussions, the

 2   agreements, the disagreements between USEPA, especially

 3   the toxicology branch within EPA, and Monsanto. So that

 4   will cover that.

 5       Q.   All right. Let me ask a follow-up there

 6   before we move to the other two buckets. As part of

 7   that review, you determined that glyphosate was a mouse

 8   oncogene specific to kidney tumors in male mice;

 9   correct?

10       A.   The specific tumor, as I believe it was

11   characterized as a tubular adenoma.

12       Q.   Right. In the kidney area; correct?

13       A.   Yes.

14       Q.   Okay. What methodology did you employ to

15   determine, based on the evidence you reviewed, that

16   glyphosate was a carcinogen in that mouse study?

17       A.   There was no evidence presented, so I'm

18   relying solely on EPA's conclusions. I assume there

19   were documents that supported those conclusions, but I

20   was only privy to the publicly available information,

21   which is essentially in the form -- I apologize -- in

22   the form of memos.

23           So I simply describe the chronological

24   sequence of events, the discussions, the meetings,

25   again, whatever I could extract from those memos. But I

Exhibit I Page - 7

Golkow Litigation Services                              Page 44

Richard DeGrandchamp, Ph.D.

```
 1   couldn't review the primary reports because I don't have
 2   access to them, and that would provide evidence that I
 3   could independently verify whether or not USEPA was
 4   correct or not.
 5           So I was limited in my assessment.  So it's
 6   essentially just a recitation of what I found in those
 7   memos, in the EPA memos.
 8       Q.  You said that you didn't have access to the
 9   underlying data, which is why it's essentially a
10   recitation of what's in the EPA memos.
11           Do you know one way or the other whether or
12   not the entire 1983 mouse study has been produced in
13   this litigation?
14       A.  I did spend some time looking for that, but I
15   couldn't find it.  And I didn't reach out to anyone to
16   ask if those were available.  So in my search, I
17   couldn't find the supporting documents.
18       Q.  How -- I guess I don't understand the database
19   you're looking in.  Do you have a database of internal
20   Monsanto toxicology studies that you're drawing upon
21   here?
22       A.  Not for this case, no.
23       Q.  Okay.  And so you said you spent time looking
24   for it.  Where did you look for it?
25       A.  Well, I went through -- well, the sequence of
```

Exhibit I Page - 8

Golkow Litigation Services                                  Page 45

```
 1   looking at to reach your opinion on a weight of evidence
 2   evaluation?
 3       A.   It might for another company, but not for
 4   Monsanto.  I have been studying Monsanto going back to
 5   1929.  They have done some -- well, I mean, I don't want
 6   to get into specifics with regard to the PCBs.
 7       Q.   No.  I want to know what you are going to say
 8   at trial if asked that question.  So finish your answer,
 9   sir, if you intend to testify to this at trial.
10       A.   I have been asked not to testify to these
11   aspects in trial, so I'll just truncate it there.  But I
12   just wanted to stop your questioning about Monsanto's
13   internal studies.  I have reviewed Monsanto's internal
14   studies, and I do not trust the results at all.
15       Q.   Okay.  Is Monsanto the only -- now, you've
16   reviewed -- again, I understand you don't intend to talk
17   about it at trial -- but you've reviewed Monsanto's
18   internal studies as it relates to PCBs and Aroclors in
19   other litigation; right?
20       A.   Yes.
21       Q.   Okay.  And those Mon- -- in the case of PCB
22   and Aroclors, for all intents and purposes, Monsanto was
23   the only game in town; right?  They were the only ones
24   making that?
25       A.   In the United States.  There was -- of course,
```

```
 1   issue I think you talked about briefly at the beginning
 2   of the depo is the discussion about the 1983 mouse study
 3   and the kidney tumor.
 4           Can you just tell me how you'll explain the
 5   regulatory assessment of the 1983 kidney tumor to the
 6   jury?
 7       A.  I'm not quite sure the question.
 8       Q.  I guess what I'm getting at is, are you going
 9   to, like, walk through a timeline of the submission to
10   EPA and what EPA said back to the registrant, being
11   Monsanto and vice versa, or is there something else
12   you're going to tell the jury about that story?
13       A.  Again, I don't have any clear contours of my
14   testimony.  Mr. Henderson and I haven't discussed the
15   particulars.  I don't even know if I'm going to be
16   presenting that.  I mean, my major focus right now is on
17   the mechanistic issue, the key carcinogenic or key
18   characteristics of carcinogens.
19           If I'm asked to present that, what I can say
20   is I will simply, you know, perhaps use the EPA memo as
21   demonstrative, as an exhibit and simply read it.  You
22   know, there's not going to be much interpretation on my
23   part because I think the memos are pretty
24   self-explanatory.
25           But first, I don't know if I'm going to be
```

Exhibit I Page - 10
Golkow Litigation Services                                    Page 216

```
 1                  CERTIFICATE OF REPORTER
 2
    STATE OF MISSOURI    )
 3                       ) ss
    CITY OF ST. LOUIS    )
 4
 5            I, Mary Joy Springer, a Certified
 6   Shorthand Reporter and a Notary Public within and for
 7   the State of Missouri, do hereby certify that the
 8   witness whose testimony appears in the foregoing
 9   deposition was duly sworn by me; that the testimony of
10   said witness was taken by me to the best of my ability
11   and thereafter reduced to typewriting under my
12   direction; that I am neither counsel for, related to,
13   nor employed by any of the parties to the action in
14   which this deposition was taken, and further that I am
15   not a relative or employee of any attorney or counsel
16   employed by the parties thereto, nor financially or
17   otherwise interested in the outcome of the action.
18
19                         MARY JOY SPRINGER
                           Certified Shorthand Reporter
20                         Notary Public within and for
                           the State of Missouri.
21
22   My commission expires October 24, 2025.
23
24
25
```

Exhibit I Page - 11

Golkow Litigation Services                                Page 263