# EXHIBIT A

## Appendix _
## Partial List of Daubert, Sargon and Frye Rulings Regarding
## Dr. Sawyer's Testimony in Recent Monsanto Roundup Cases

**October 25, 2022**

1. [p. 1/1 as cited in Defendant's Motion to Exclude], *"Plaintiff designated Dr. William R. Sawyer as a toxicology expert. Dr. Sawyer also seeks to offer opinions on what he characterizes as ""general causation,"" on specific causation, and on a variety of other topics. Dr. Sawyer's opinions on general and specific causation should be excluded because he is not qualified to offer these opinions and he did not follow any valid methodology in reaching them. Moreover, Dr. Sawyer's opinions are based on data that is universally considered to be inadequate for scientific analysis. Further, Dr. Sawyer's opinion that minute, trace chemicals in Roundup can cause or contribute to cancer is based solely on assertions that those chemicals have been associated with cancer at much higher doses. Finally, Dr. Sawyer seeks to offer opinions regarding Monsanto company documents and regulatory duties, which are clearly beyond his area of expertise and beyond the realm of proper expert testimony."*

   "After hearing, this motion is **DENIED without prejudice**. The Defendant may lodge an objection when the relevant opinions are attempted to be elicited at trial."

   o   Timothy Constantine v. Monsanto, Superior Court Department of the Trial Court, Commonwealth of Massachusetts, Barnstable, SS, dated 10/25/22 (full text citation)

**September 13, 2022**

2. [p. 1/4] "William Sawyer, Ph.D., is a toxicologist who is currently Chief Toxicologist of Toxicology Consultants and Assessment in New York. Dr. Sawyer has more than 30 years of experience in public health and forensic toxicology, including five years of governmental service. He has published in the areas he intends to give testimony about in this case. Dr. Sawyer has conducted toxicological assessments of various substances, including pesticides, as part of his training in toxicology and in his daily work experience as a toxicologist."

   [p. 3/4] "Dr. Sawyer authored a lengthy report, considered available information that he deemed to be relevant given his training and experience, and followed the Bradford-Hill criteria in rendering his opinions in this matter. For example, Dr. Sawyer reviewed the body of science relating to glyphosate and formulated Roundup (glyphosate + surfactant), including animal studies, mechanism (cell) studies, and human epidemiological studies; Mr. Hedges' medical history, conducted an assessment of his health factors, family history, alcohol, tobacco and employment history and other personal details; he conducted an interview of Mr. Hedges concerning his Roundup application/use history, including frequency, duration, and method of spraying; he evaluated the absence of other risk factors in Phillip's medical history, and inquired about his use of any other substances that may have played a role in the development of his cancer; he considered Phillip's age,

radiological exposures, and occupational history; and then reached the conclusion that in his opinion the exposure levels that Mr. Hedges experiences were a substantial contributing factor to his cancer."

[p. 3/4] "The Court finds that **Dr. Sawyer is a qualified expert** in the areas in which his testimony will be proffered, and **his testimony will assist the jury**."

-- Judge Astrowsky

- Phillip M. Hedges v. Monsanto Co., Superior Court Of Arizona, Maricopa County, CV 2020-009313, Ruling Re: Defendant's Motion to Exclude Testimony of Dr. William Sawyer, dated 09/13/2022

**March 01, 2022**

3. [p. 1/5] "Dr. Sawyer is a toxicologist who the Plaintiff intends to call as an expert witness and provide opinions regarding Roundup being capable of causing Non-Hodgkin Lymphoma (NHL). The Defendant seeks to have his opinions excluded because he did not follow a valid methodology and that the data used is not universally considered adequate for scientific analysis. It further requests the Court exclude his opinions regarding the "George Study" and his opinions regarding other trace chemicals found in Roundup which can cause or contribute to cause NHL."

[p. 4/5] "The Court finds, based on the statute and the case law that interprets the statute, that the Plaintiff has met the threshold requirements relating to reliability to allow Dr. Sawyer to present his opinions to the jury including those relating to the "George Study" and relating to trace chemicals in Roundup. As it relates to particular Monsanto documents that the Plaintiff intends to inquire upon with Dr. Sawyer, the Court will permit him to testify relating to those documents that are within his field of expertise."

[p. 4/5] "Therefore, after full consideration of the matter, and being duly advised of the same, the Court determines that Defendant's motion **should be, and is hereby, DENIED**."

-- Charles H McKenzie, Judge

- Shelton v. Monsanto, In the Circuit Court of Jackson County, Missouri at Kansas City, Case no. 1916-CV03493, Division 13, dated March 2, 2022

**September 11, 2021**

4. [p. 6/11] "Plaintiff has proffered Dr. Sawyer, a toxicologist, to opine that glyphosate-base herbicides (GBH or Roundup) cause NHL; to explain the mechanism and rate at which GBHs are absorbed into the body; to explain the effects of not utilizing protective gear based on Monsanto's representations; and to explain that Ezra Clark was exposed to a sufficient amount of GBH to cause his NHL. As stated, "the court does not resolve scientific controversies." Rather, it conducts a "circumscribed inquiry" to "determine whether, as a matter of logic, the studies and practice of an expert in the relevant field." [Citation.] Sargon, supra, 55 Cal. 4th at 772. other information cited by experts adequately support the conclusion that the expert's general theory or technique is valid."

[Citation.] The goal of trial court gatekeeping is simply to exclude "clearly invalid and unreliable" expert opinion. [Citation.] In short, the gatekeeper's role "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

"Here, an extremely well-qualified toxicologist has opined he can extrapolate the adult studies to a case of pediatric NHL. No study or argument by defendant suggests Dr. Sawyer's resulting opinions are "clearly invalid and unreliable". Defendant's argument fails."

[p. 8/11] "**The motion is DENIED** except Dr. Sawyer cannot opine children are more sensitive or susceptible to cancer."

-- Daniel J. Buckley, Judge of the Superior Court

- o Clark v. Monsanto et al., Superior Court of the State of California for the County of Los Angeles, Court's Final Ruling And Order Re: Sargon Motions And The Motion To Bifurcate, LASC Case No: 20STCY 46616, September 7, 2021

**August 9, 2021**

5. [p. 7/41] "Dr. William Sawyer, a forensic toxicologist who had studied glyphosate since the 1990's, testified that based on his review of epidemiology data, animal data, and mechanism data, Roundup can cause non-Hodgkin's lymphoma. He testified that POEA, the toxic surfactant in Roundup products used by the Pilliods, enhances the genotoxicity of glyphosate, with the result that Roundup is about 50 times more genotoxic than glyphosate alone. He explained that the sprayers used for Roundup create an aerosol that can drift onto the skin. He also testified that POEA and glyphosate are skin irritants, and that POEA enhances the absorption of glyphosate through the skin. He testified that the Pilliods' exposure to Roundup far exceeded the level of exposure sufficient to increase their risk of contracting non-Hodgkin's lymphoma; and that their exposure was exacerbated by the fact that they did not wear gloves or other protective gear. If they had worn them when spraying, their exposure and their risk of getting non-Hodgkin's lymphoma would have been reduced. It was undisputed at trial that the Roundup label for lawn and garden products does not advise users to wear gloves when using the product."

   [p. 17/41] "We find that **substantial evidence supports the jury's verdicts**. Although the evidence was disputed, there was substantial evidence from the testimony of plaintiffs' experts on causation (Dr. Portier, Dr. Jameson, Dr. Ritz, Dr. Blair, Dr. Sawyer, Dr. Weisenburger, and Dr. Nabhan) to support the findings that **Roundup can cause non-Hodgkin's lymphoma**, and **did cause non-Hodgkin's lymphoma** in both Alberta and Alva."

   - - Court of Appeal, First District, Division 2, California, Decided Aug 9, 2021

   - o Alberta and Alva Pilliod v. Monsanto Co., No. A158228, Court of Appeal, First District, Division 2, California, 67 Cal.App.5th 591 (Cal. Ct. App. 2021) • 282 Cal. Rptr. 3d 679, Decided Aug 9, 2021

**July 20, 2020**

6. [p. 10/86] "Dr. William Sawyer, a forensic toxicologist, testified for Johnson as an expert in toxicology and forensic toxicology. He had followed peer-reviewed literature on glyphosate since the mid-1990s, and he testified that, to a reasonable degree of scientific certainty, glyphosate is a known carcinogen and Roundup products can cause non-Hodgkin's lymphoma. He also testified that the additives to glyphosate used in Roundup products increase and enhance glyphosate's carcinogenicity. As for Johnson specifically, Sawyer opined that Johnson's heavy exposure to Roundup products caused his non-Hodgkin's lymphoma. Sawyer expressed his view that Roundup products should include "proper warnings" to inform consumers "that they were dealing with a carcinogen," and that the product should be "used in a limited fashion without producing what we call aerosol, that is aerosol that drifts and gets all over the body." He believed that Roundup products could be used safely so long as they were used with appropriate warnings and proper equipment."

   [p. 32/86] "**We likewise reject Monsanto's related argument** that forensic toxicologist Sawyer's testimony was "unreliable, speculative, and legally insufficient to support a finding of causation" because he made "no attempt" to take into account that at least 80 percent of non-Hodgkin's lymphoma cases are idiopathic. Sawyer opined that exposure to Roundup products caused Johnson's non-Hodgkin's lymphoma because Johnson's "use of the product was extraordinarily heavy," and this exposure was "far more" than subjects of other studies. Sawyer was not obligated to "affirmatively negate every other possible cause" of Johnson's disease before he could opine on causation. (Cooper v. Takeda Pharmaceuticals America, Inc. (2015) 239 Cal.App.4th 555, 584 (Cooper).) "Bare conceivability of another possible cause does not defeat a claim; the relevant question is whether there is 'substantial evidence' of an alternative explanation for the disease" (id. at p. 586), and here **Monsanto does not point to any such evidence**."

   -- Court Of Appeal of the State of California, First Appellate District, Division One, 7/20/2020

   o   Johnson v. Monsanto, In the Court Of Appeal of the State of California, First Appellate District, Division One, A155940, A156706 (City and County of San Francisco Super. Ct. No. CGC-16-550128), dated 07/20/2020

**January 24, 2020**

7. [p. 20/86] "Monsanto also argues that Dr. Sawyer should not be allowed to testify about the George report. It adduces no expert testimony of its own in support of that argument. Instead, it says that EPA, IARC and BAuA all rejected its conclusions. It is true that EPA declined to use the study because (i) a small number of animals was used, (ii) all were male, and (iii) no histopathology was done. And the IARC report cited by Monsanto declined to use it for similar reasons. However plaintiff cites another IARC publication that she says cites the George report when it observes "glyphosate formulation promoted skin tumors in an initiation-promotion study in mice." Monsanto also argues that Dr. Sawyer should not be allowed to testify about the George report. It adduces no expert testimony of

its own in support of that argument. Instead, it says that EPA, IARC and BAuA all rejected its conclusions. It is true that EPA declined to use the study because (i) a small number of animals was used, (ii) all were male, and (iii) no histopathology was done. And the IARC report cited by Monsanto declined to use it for similar reasons."

[p. 20/86] "However plaintiff cites another IARC publication that she says cites the George report when it observes "[a] glyphosate formulation promoted skin tumors in an initiation-promotion study in mice." Hoke Declaration, Exhibit 7 at p.256; IARC, "Carcinogenicity of tetrachlorvinphos, parathion, malathion, diazinon, and glyphosate," "And, Monsanto is wrong about the BAuA paper. That rejected the use of the George report because it "was performed with a commercial product that most likely contains irritating co-formulants. It cannot contribute to a decision on the classification of glyphosate." The commercial product was Roundup. **Of course, Roundup is relevant.**"

[p. 21/86] "In addition, as Dr. Sawyer explains, the George study was **designed for a different purpose** than was relevant to the EPA and IARC work discussed by Monsanto. **It can be discussed here**.

-- Barry P. Goode, Judge, Superior Court

- o  Kathleen Caballero v. Monsanto, Superior Court of the State of California Contra Costa County, Case No. MSC19-01821, Order on Pretrial Matters Including Summary Judgment, Sargon Challenges, Motions In Limine, Requests For Judicial Notice, dated January 24, 2020

**January 22, 2020**

8. [Judge denied Monsanto's Motion To Exclude Testimony of Dr. Sawyer without further analysis.] "It is ordered and decreed that Defendant Monsanto Company's Motion to Exclude Testimony of Dr. William R. Sawyer is **DENIED. So ordered**:"

-- Judge Elizabeth B. Hogan, January 22, 2020

- o  Circuit Court of the City of St. Louis, State of Missouri, Case No. 1622-CC10172, 01/22/2020 (full text citation)

**January 22, 2020**

9. [p. 1/1] "The bulk of Monsanto's motions to exclude testimony from Sawyer is **moot, because the plaintiffs have clarified that Sawyer does not intend to offer many of the opinions to which Monsanto objects**. For example, the plaintiffs clarify that Sawyer will not offer an opinion on general causation, nor will he offer a differential diagnosis opinion as to any individual plaintiff."

[p. 1/1] "The plaintiffs assert that Sawyer should nonetheless be permitted to opine that a plaintiff's "exposure to Roundup was sufficient to cause NHL." Thus, this aspect of Monsanto's motions is not moot. Because Sawyer will not offer an opinion on general causation or differential diagnosis, it follows that he may not opine that a plaintiff's "exposure to Roundup was sufficient to cause NHL." On the other hand, to the extent Sawyer has offered an opinion on a particular plaintiff's level of exposure or rate of

absorption, it would be permissible for that plaintiff's counsel to ask Sawyer to assume that a particular exposure or absorption level creates an NHL risk based on other experts' testimony, **and then asked if the particular plaintiff exceeded that exposure or absorption level**. "

-- Vince Chhabria, United States District Judge

- This document relates to: ALL ACTIONS, Re: Roundup Products Liability Litigation, United States District Court, Northern District Of California, Case 3:16-md-02741-VC Document 9137, MDL No. 2741, Case No. 16-md-02741-VC Filed 01/22/20

**January 21, 2020**

10. [p. 2/5] "Dr. Sawyer is a toxicologist being offered by Plaintiffs as an expert to explain that glyphosate-based herbicides cause non- Hodgkin's lymphoma, to explain mechanism and rate at which glyphosate-based herbicides are absorbed into the body; to explain the effects of the Plaintiffs' failure to wear sufficient protective gear based on Monsanto's representations; and to explain that Plaintiffs were exposed to a sufficient amount of glyphosate-based herbicides to cause their non-Hodgkin's lymphoma. Plaintiffs do not intend to offer Dr. Sawyer to give a detailed analysis of epidemiology, to conduct a differential etiology, or to rule out other risk factors for Plaintiffs' non-Hodgkin's lymphoma. Defendant argues that Dr. Sawyer's "flawed opinions" regarding causation, the George study, and trace chemicals should be excluded."

p. 4/5] "The Court believes that Defendant's concerns about Dr. Sawyer's testimony go to the weight, and not the admissibility, of his testimony, and can be appropriately addressed on cross-examination and through Defendant's competing experts. THEREFORE, it is Ordered and Decreed that Defendant Monsanto's Motion to Exclude Testimony of Dr. William R. Sawyer is **DENIED**."

-- Judge Elizabeth B. Hogan, January 21, 2020

- Wade v. Monsanto, Missouri Circuit Court Twenty-Second Judicial Circuit (City of St. Louis), No. 1722-CCOO370, January 21, 2020