Andrés Rivero
Florida Bar No. 613819
**RIVERO MESTRE LLP**
2525 Ponce de León Blvd., Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com

*Attorney for Plaintiff Judge William C. Turnoff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*William C. Turnoff v. Monsanto Company*, Case No.: 3:19-cv-03837-VC) | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**JUDGE WILLIAM C. TURNOFF'S RESPONSE IN OPPOSITION TO MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF DR. SAMUEL A. BERKMAN**<br><br>Date:      March 1, 2024<br>Time:     10:00 A.M.<br>Location: Courtroom 4 – 17th Floor |

    Judge William C. Turnoff opposes Monsanto Company's ("Monsanto") Motion to exclude the expert testimony of Dr. Samuel Berkman, under the standards set forth in *Daubert v. Merrell Dow Pharmaceutical*, 509 U.S. 579 (1993).

JUDGE WILLIAM C. TURNOFF'S RESPONSE IN OPPOSITION TO MONSANTO
COMPANY'S MOTION TO EXCLUDE DR. WILLIAM SAWYER

**INTRODUCTION**

This is a personal injury case in which Judge Turnoff alleges that he was diagnosed with splenic marginal zone lymphoma ("SMZL"), a form of non-Hodgkin lymphoma ("NHL"), and that his use of Roundup, an herbicide manufactured by Monsanto Company, was a substantial contributing cause of his disease. See Complaint ¶¶ 88-92. Judge Turnoff has retained Dr. Samuel Berkman to testify as to general and specific causation issues. See Samuel Berkman Report (attached as Exhibit A). Dr. Berkman intends to testify on general causation and specific causation regarding whether exposure to glyphosate or glyphosate-based formulated products was a substantial factor contributing to Judge Turnoff developing a form of NHL, specifically, SMZL. Defendant, Monsanto, argues that Dr. Berkman's expert testimony should be excluded. However, Dr. Berkman (1) is a highly experienced and distinguished oncologist who is qualified to offer both general and specific causation opinions, (2) reliably "rules in" Roundup as a potential cause of Judge Turnoff's NHL, in part by relying on the opinions of Plaintiffs' general causation experts whose testimony this Court has consistently ruled is admissible, and (3) reliably rules out other potential alternative causes of Plaintiff's NHL through differential diagnosis, a widely accepted methodology. Dr. Berkman's report ("Berkman Report"), along with his C.V., is attached as Exhibit A.

**BACKGROUND**

**I.      Dr. Berkman's Qualifications**

Dr. Berkman is a clinical professor of hematology/oncology at the University of California Los Angeles. He has been a full professor since 1991. He has extensive clinical experience in dealing with non-Hodgkin's lymphoma, dating back to 1976. His National Institute

2

JUDGE WILLIAM C. TURNOFF'S RESPONSE IN OPPOSITION TO MONSANTO
COMPANY'S MOTION TO EXCLUDE DR. SAMUEL BERKMAN

of Health clinic consisted almost exclusively of non-Hodgkin's lymphoma patients. He also has extensive experience analyzing clinical trials and reviewing scientific evidence-based articles for medical journals such as the Annals of Internal Medicine, Journal of Thrombosis and Thrombolysis, and the Journal of Clinical and Applied Thrombosis/Hemostasis. This experience is especially relevant in view of the need, in this matter, for interpretation of conflicting literature on the subject of glyphosate and cancer causation. As his C.V, indicates, Dr. Berkman has also produced review articles for McMaster University's Newsletter of the International Society for Evidence-Based Health Care. In short, Dr. Berkman is a thoroughly experienced oncologist who has treated NHL patients for more than 45 years. Berkman Dep. at 10-17. In addition to his extensive academic and clinical experience with oncology, he also has extensive experience in hematology—the science of blood—and epidemiology.

## II.     Dr. Berkman's Methodology

Dr. Berkman was disclosed as an expert witness who will testify about general and specific causation in this case. Just like the opinions disclosed by the plaintiffs' general causation experts in this MDL (which the Court has repeatedly ruled are admissible), Dr. Berkman relies on several case-control studies and meta-analyses for his opinion that glyphosate, the toxic chemical in Roundup, can cause lymphoma. Berkman Report at 2. However, as Dr. Berkman also explained, although he considered these general causation experts, he is not solely reliant on them. See Exhibit B, Berkman Deposition at 9:17-19. In addition to incorporating the opinions of these qualified general causation experts, Dr. Berkman also separately considered available epidemiological literature regarding the association between glyphosate and cancer, using both his oncological expertise and his experience studying and working in the field of epidemiology.

3

JUDGE WILLIAM C. TURNOFF'S RESPONSE IN OPPOSITION TO MONSANTO
COMPANY'S MOTION TO EXCLUDE DR. SAMUEL BERKMAN

In this assessment, he observed and relied upon high-quality reports such Exposure to Glyphosate-Based Herbicides and Risk for Non-Hodgkin Lymphoma: A Meta-Analysis and Supporting Evidence by Dr. Zhang et al. and A Review and Update With Perspective of Evidence that the Herbicide Glyphosate (Roundup) is a Cause of Non-Hodgkin Lymphoma by Dr. Weisenberger. Having relied on and incorporated the general causation experts' opinions and having conducted his own review of the epidemiological literature, Dr. Berkman then applied the core of his methodology in this case: differential diagnosis.

Differential diagnosis is a widely recognized tool for arriving at the likely source of a disease or symptoms. Dr. Berkman considered the amount of time Judge Turnoff had been using Roundup and found the duration and latency indicative of his SMZL. *Id*. at 25:9-13. Based on this methodology, Dr. Berkman concluded that based on "the extended length of time of [Judge Turnoff's] exposure to Roundup and the absence of any known risk factors, I conclude that [it is] much more likely than not his lymphoma is related to his Roundup exposure." *Id*. Further, Dr. Berkman employed differential diagnosis to conclude that Roundup exposure was more likely than other risk factors to have caused Judge Turnoff's SMZL.

## LEGAL STANDARD

Under the *Daubert* standard, a witness may testify as an expert if: (1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. Id. In determining whether the Daubert requirements are fulfilled, a court considers: (1) whether the expert's theory can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate and the existence and maintenance

4

JUDGE WILLIAM C. TURNOFF'S RESPONSE IN OPPOSITION TO MONSANTO COMPANY'S MOTION TO EXCLUDE DR. SAMUEL BERKMAN

of standards controlling its operation; and (4) whether the technique has widespread acceptance within the relevant scientific community. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 580 (1993); *See also Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017). The Ninth Circuit has emphasized that a Daubert analysis should be undertaken with a "liberal thrust favoring admission." *In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prod. Liab. Litig.*, 424 F. Supp. 3d 781 (N.D. Cal. 2020)(citing *Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014)).

**ARGUMENT**

**I.     The Court Should Not Exclude Dr. Berkman's General Causation Opinion**

   **A.  Dr. Berkman is Qualified to Opine on General Causation**

Monsanto argues that "Dr. Berkman lacks the qualifications necessary to render any opinion on whether glyphosate-based Roundup causes NHL generally." Mot. at 2. Dr. Berkman formed his opinions based upon his extensive education, training, experience, knowledge, and expertise, as well as literature review and widely accepted medical and scientific principles. He reviewed extensive medical records, including pathology, operative and imaging reports relating to Judge Turnoff. He also reviewed Judge Turnoff's deposition testimony, as well as the testimony and reports of other general causation experts in this case. Despite what Monsanto claims, Dr. Berkman did not largely base his opinions on the International Agency for Research on Cancer ("IARC") or its Monograph On the Evaluation of Carcinogenic Risks to Humans: Some Organophosphate, Insecticides, and Herbicides ("IARC Monograph"), he reviewed the "robust literature going back about 20 years" that "support both sides of the argument." Monsanto claims Dr. Berkman is not qualified to opine on general causation, yet Dr. Berkman

5

JUDGE WILLIAM C. TURNOFF'S RESPONSE IN OPPOSITION TO MONSANTO
COMPANY'S MOTION TO EXCLUDE DR. SAMUEL BERKMAN

has been treating NHL patients since 1976, which is likely as long as Monsanto's own causation expert, Dr. Richard Bakst has been alive. See Exhibit C, Dr. Bakst CV. In fact, Dr. Berkman has been a full professor at the University of California Los Angeles, College of Medicine since 1991. This predates Dr. Bakst's medical degree by 17 years. *Id*. Monsanto attempts to mischaracterize Dr. Berkman's methodology and qualifications; however, he reviewed the extensive literature and has been a clinician treating lymphoma patients for a significantly longer time than an expert upon whom Monsanto happily relies.

### B. Dr. Berkman's General Causation Opinion is Reliable

Dr. Berkman relied on the same literature that the MDL general causation experts relied upon to establish the link between NHL and human exposure to glyphosate. Dr. Berkman conducted an extensive review of the scientific literature specific to glyphosate and NHL, as well as the MDL Plaintiffs' general causation expert opinions, which informed his own general causation opinion.

#### 1. Dr. Berkman's Opinion Does Not Merely Parrot the IARC Opinions

Monsanto argues "Dr. Berkman largely bases his general causation opinions on the IARC Monograph on glyphosate" and that it is an unreliable study. Mot. at 4. However, Dr. Berkman's Report relies on several major studies and meta-analyses, and cites to the Monograph only once to support the fact that "[c]hromosomal abnormalities are seen in many animals and patients exposed to Roundup." In fact, Dr. Berkman relies on a 2021 article by Dr. Weisenberger and a 2019 meta-analysis by Zhang et al. to make the same point. Neither source relies on the IARC Monograph, and the Zhang meta-analysis relied on 5 case-control studies that used the highest exposure groups and risk ratios adjusted for the use of other pesticides, which found that the

6

JUDGE WILLIAM C. TURNOFF'S RESPONSE IN OPPOSITION TO MONSANTO
COMPANY'S MOTION TO EXCLUDE DR. SAMUEL BERKMAN

overall risk of NHL was significantly increased in glyphosate exposed individuals. Berkman Report at 2. As this Court has already held, "It's enough in this litigation, at this stage, for the plaintiffs to show that glyphosate can cause NHL when people are exposed to the highest dose people might plausibly experience." *In re Roundup Prod. Liab. Litig.,* 390 F. Supp. 3d 1102, 1113 (N.D. Cal. 2018) (citing *In re Hanford Nuclear Reservation Litigation*, 292 F.3d 1124, 1133 (9th Cir. 2002). The IARC Monograph plays a small part in Dr. Berkman's general causation opinion, which is supported by several studies that are not mere "hazard" assessments.

**2.   Dr. Berkman Does Not Soley Rely on Other Experts' Opinions**

Monsanto contends that Dr. Berkman solely relies on other experts' opinions, yet when asked point blank, Dr. Berkman denied that. He said, rather, that any reference to other general causation experts were a part of his total analysis that led to his independent conclusion. Berkman Dep. at 9:17-19. In fact, during his deposition, Dr. Berkman repeatedly explained that while he reviewed Dr. Weisenberger's report, he also reviewed the references in that report, including the articles that do not support his position. Berkman Turnoff Dep. at 29:20-25, 145:2-9. Ultimately, Dr. Berkman's report cites the materials he relied upon to reach his general causation opinion. See Berkman Report at 6-9. Monsanto also argues "Dr. Berkman proceeds to cherry-pick and rely on the results of epidemiological studies that support his pre-ordained conclusion" Mot. at 5. Yet at his deposition, Dr. Berkman explained that he reviewed and considered studies not favorable to his position. Berkman Turnoff Dep. at 157:8-13, 244:4-8, 246:15-18. Further, this Court has already held that in regard to specific causation experts, this argument "is off point" and that "they are permitted to build from the plaintiffs' admissible general causation opinions. And the admissible general causation opinions grappled with the full

body of evidence." *In re Roundup Prod. Liab. Litig.*, 358 F. Supp. 3d 956, 958 (N.D. Cal. 2019). Dr. Berkman conducted his own review of the literature and studies as well as building off of the general causation experts this Court has admitted.

## II.     The Court Should Not Exclude Dr. Berkman's Specific Causation Opinion

### A.     Dr. Berkman Has Reliably "Ruled In" Roundup

Monsanto argues that Dr. Berkman should be excluded because he has made no reliable basis to "rule in" Roundup exposure as a potential cause of Judge Turnoff' SMZL. See Mot. at 7. This argument is meritless and Monsanto's three arguments in support of it are a desperate reach. First, the idea that Dr. Berkman does not rely on SMZL-specific studies is ridiculous because SMZL *is* NHL. Second, the "absorbed dose" methodology Monsanto complains Dr. Berkman neglected is not the appropriate measure of glyphosate exposure. Third, Monsanto questions the facts regarding Judge Turnoff's exposure upon which Dr. Berkman based his opinion. This is flawed because Monsanto misstates Dr. Berkman's position regarding the latency period and his role as an expert witness.

#### 1. Dr. Berkman Does Rely on Data to Conclude There Is a Significant Association Between Glyphosate and Judge Turnoff's SMZL

Monsanto argues that Dr. Berkman assumes and infers "that an association between Roundup and NHL dictates that there must be an association between Roundup and Plaintiff's SMZL" and claim his methodology "is not scientifically sound." See Mot. at 7. This is nonsense because SMZL *is* NHL, which Monsanto's own expert, Dr. Bakst acknowledges. See Dr. Richard Bakst Deposition 90:5-10, excerpt attached as Exhibit D. Monsanto does not and cannot cite any study showing that the cancer risk caused by glyphosate or Roundup is somehow

8

JUDGE WILLIAM C. TURNOFF'S RESPONSE IN OPPOSITION TO MONSANTO COMPANY'S MOTION TO EXCLUDE DR. SAMUEL BERKMAN

different for SMZL than for other types of NHL. Accordingly, Dr. Berkman cannot be faulted for relying on studies regarding NHL, a class of cancer of which SMZL is one type. If Monsanto's argument held water, then Monsanto's own experts must be precluded from testifying about any studies regarding NHL, since they would—in Monsanto's words—have relied on "the same cherry-picked, epidemiological data points for NHL overall to rule in Roundup as a cause of Plaintiff's SMZL." Mot. at 7.

### 2. Dr. Berkman Does Not Need to Quantify Plaintiff's Actual Glyphosate Dose

Monsanto argues that "Dr. Berkman never attempted to calculate Plaintiff's average daily dose of glyphosate in this case" and so his methodology is flawed. See Mot. at 9. But Monsanto's "absorbed dose" methodology, submitted a requirement that Dr. Berkman failed to satisfy is, essentially, the opposite: "absorbed dose" is a methodology that has *never* been used to assess the human cancer risks of glyphosate or Roundup. To the limited extent the Motion cites cases for the general proposition that some dose or exposure assessment is warranted in toxic torts cases, the widely recognized exposure assessment methodology for glyphosate is not Monsanto's proposed "absorbed dose" method. Instead, across the epidemiological literature regarding glyphosate and cancer—including the studies that Monsanto and its experts most frequently cite—scholars have measured glyphosate exposure in terms of exposure days, not "absorbed dose." *See In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018)(Denying Monsanto's Motion to Exclude Plaintiffs' causation experts after reviewing several epidemiological studies which all utilized exposure days and were deemed reliable). Dr. Berkman correctly observed that Judge Turnoff's exposure in terms of exposure days was substantial, once a week for over 20 years. Monsanto's sources simply do not support their own

9

JUDGE WILLIAM C. TURNOFF'S RESPONSE IN OPPOSITION TO MONSANTO
COMPANY'S MOTION TO EXCLUDE DR. SAMUEL BERKMAN

argument that an "absorbed dose" methodology is appropriate—much less required—in the glyphosate context. Ultimately, Dr. Berkman did not need to quantify Judge Turnoff's absorbed dosage and his focus on time of exposure is a reliable method.

### 3. Dr. Berkman Reliably Evaluates Judge Turnoff's Actual Exposure to Glyphosate-Based Roundup

Monsanto argues that because Dr. Berkman has not quantified Judge Turnoff's exact exposure to Roundup in hours or days and therefore, his conclusion is flawed. However, Monsanto's arguments are a series of strawmen and misstate the role of an expert witness.

*First*, Monsanto claims that Dr. Berkman's conclusion is flawed because Judge Turnoff's latency period is approximately ten years and Dr. Berkman stated "the average latency period of NHL in persons with long-term exposure to toxic chemicals and solvents" is twenty years. Berkman Dep. at 263:13-264:6; 265:2-5. Once again, Monsanto—having accused Dr. Berkman of cherry picking—resorts to cherry-picking of its own, selecting discrete and isolated quotes in order to discredit Dr. Berkman. At his deposition, Dr. Berkman explained fully that length of exposure is a major factor that determines the latency period. In Judge Turnoff's situation, "I would say 20 years of exposure would be -- 10 to 20 years 20 would be the average. But I think you could get it for less if you had higher exposure." *Id*. at 13:16-22. Clearly, 10 years is an appropriate latency period for Judge Turnoff's level of exposure.

*Second*, Monsanto makes several fact-based arguments, most notably the claim that Dr. Berkman is assuming Judge Turnoff's history of Roundup exposure because it is self-reported. But Dr. Berkman is not a fact witness. He has no obligation to question the veracity of Judge Turnoff's sworn testimony. Monsanto even tries to fault Dr. Berkman for not conducting a site inspection of Judge Turnoff's property or researching the particular weeds that grew there.

Unlike a fact witness, "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469, 592 (1993). Dr. Berkman reasonably relied on Judge Turnoff's sworn testimony and his presumptively accurate medical records in forming his conclusion.

*Third*, Monsanto bafflingly argues that because Judge Turnoff testified "he had no recollection of getting Roundup on his bare skin" Dr. Berkman cannot clarify the amount of Roundup Judge Turnoff got on his skin. Mot. at 11. More cherry picking. While Judge Turnoff could not recall a *specific* instance of him getting Roundup on his bare skin, this deposition took place more than 20 years after he stopped using Roundup. Judge Turnoff used Roundup for more than twenty years. Once again, Dr. Berkman has no obligation to verify Judge Turnoff's exposure, only to opine on whether glyphosate could have caused Judge Turnoff's SMZL based on the reported facts before him. To the extent that Monsanto's gripe is that Dr. Berkman cannot "rule in" Roundup without first concluding that Judge Turnoff was actually exposed to the product, Dr. Berkman of course is relying on Judge Turnoff' sworn testimony that he did, in fact, use Roundup. Monsanto's Motion does not squarely fault Dr. Berkman for relying on Judge Turnoff's testimony, nor can it.

**B. Monsanto's Argument that Dr. Berkman Fails Reliably to Rule Out Other Potential Alternative Causes for Judge Turnoff's NHL is Meritless**

Monsanto contends that Dr. Berkman "fails to reliably rule out other potential causes" of Judge Turnoff' NHL. See Mot. at 12. This is simply not true. Monsanto may *disagree* with Dr. Berkman's conclusions; however, it is beyond reasonable dispute that he employed a methodology—differential diagnosis—that necessarily included considering and ruling out other

11

JUDGE WILLIAM C. TURNOFF'S RESPONSE IN OPPOSITION TO MONSANTO
COMPANY'S MOTION TO EXCLUDE DR. SAMUEL BERKMAN

potential risk factors for NHL. Moreover, as courts have previously explained, "a reliable differential diagnosis need not rule out all possible alternatives." *Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245, 1253 (11th Cir. 2010); Rather, it must "consider other factors that could have been the sole cause of plaintiff's injury." *Id*; *see also See Hardeman v. Monsanto Co.*, 997 F.3d 941, 965 (9th Cir. 2021*); In re Juul Labs, Inc. Mktg., Sales Pracs. & Prod. Liab. Litig.,* No. 19-MD-02913-WHO, 2022 WL 1814440 at *n.18 (N.D. Cal. June 2, 2022); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 644 (4th Cir. 2018) (all declaring differential diagnosis a reliable methodology). This is precisely what Dr. Berkman does: "[I]n the absence of any other clerk risk factor, I am saying that more likely than not, not definitely, but more likely than not, this is the factor that caused [Judge Turnoff's] lymphoma." Berkman Dep. at 254:14-17. Here, Dr. Berkman's methodology only required him to rule out other potential risk factors as the *sole* cause of Judge Turnoff' NHL. This methodology reliably supports his conclusion that Roundup was more likely than not a contributing factor to Judge Turnoff' disease.

      Monsanto mischaracterizes Dr. Berkman's actual methodology—or, worse, disregards it—and posits, without evidence, that Dr. Berkman used a phantom "always Roundup" methodology. See Mot. at 15. This is untrue and the assertion can only be supported by misleading quotations and generic smears against Dr. Berkman. In fact, as outlined above, Dr. Berkman performed a differential diagnosis, a widely recognized method that "is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.'" *Guinn*, 602 F.3d at 1253 (citing *Westberry v. Gislaved*

*Gummi AB*, 178 F.3d 257, 262 (4th Cir.1999)). Dr. Berkman only formed his opinion after reviewing Judge Turnoff's background and medical history for all potential risk exposures including hepatitis, Kaposi sarcoma, autoimmune disease, or a family history of lymphoma. Berkman Dep. 19:2-17. He also considered environmental risk factors such as "if [Judge Turnoff] worked in a place where he could have been exposed to insecticides, herbicides, et cetera." *Id*. Dr. Berkman even considered and ruled out Judge Turnoff's pipe smoking as a potential cause of his NHL, because "pipe smoking has never been shown to be a cause of non-Hodgkin lymphoma." Berkman Dep. 257:10-15.

   Dr. Berkman then employed differential diagnosis to compare Judge Turnoff's Roundup use with the risk factors that Monsanto—along with its expert, Dr. Bakst[1]—contends are equally likely causes, including age, psoriasis, obesity, family history of cancer, and naturally-occurring mutations. At deposition, Dr. Berkman addressed each of these and his basis for concluding that Roundup use was a more likely cause than any of them. In this Circuit, "we do not require that an expert be able to identify the sole cause of a medical condition in order for his or her testimony to be reliable. It is enough that a medical condition be a substantial causative factor." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014)(holding that the district court abused its discretion in excluding expert's causation testimony when it found that testimony was unreliable largely because the expert could not determine in a patient who has multiple risk factors at one time which of those particular risk factors caused the patient's illness)).

   In regard to age, Dr. Berkman explained there are two statistical peaks for lymphoma

---

[1] See Bakst deposition, *passim*.

13

JUDGE WILLIAM C. TURNOFF'S RESPONSE IN OPPOSITION TO MONSANTO
COMPANY'S MOTION TO EXCLUDE DR. SAMUEL BERKMAN

diagnosis, patients in their 20s and 60s. Berkman Dep. 293:24-24; 294:1-14. Judge Turnoff was 61-years old at the time of his diagnosis, which is a "borderline" age to have contributed to the development of his NHL. *Id*. In regard to psoriasis, Dr. Berkman considered testing done on Judge Turnoff every three months for the last ten years which evinced none of the markers of auto-immune disease. Berkman Dep. 318:2-10. In regard to obesity, Dr. Berkman explains that after calculating Judge Turnoff's Body Mass Index, his obesity was "extremely borderline" at the time of his diagnosis and more importantly, and that obesity is common while SMZL is an exceedingly rare type of lymphoma. Thus, he concluded, it stands to reason that a more unique factor, such as Roundup use, would be a more likely cause of Judge Turnoff's NHL than common (and borderline) obesity. Berkman Dep. 329:1-18. Dr. Berkman considered "family history very strongly" which includes Judge Turnoff's brother who died of bladder cancer. Dr. Berkman explained that Judge Turnoff's brother smoked four packs of cigarettes a day, and that it would be illogical to conclude that this known cause of bladder cancer somehow suggests that Judge Turnoff has a genetic predisposition to SMZL, a completely different and rare cancer. Berkman Dep. 329:1-18. Similarly illogical is the assumption that because Judge Turnoff's mother had an unknown cancer, Judge Turnoff is genetically predisposed to very rare SMZL. Without providing any detail, Monsanto cannot fault Dr. Berkman for considering Judge Turnoff's 20 years of Roundup use as a more likely cause. Finally, although Monsanto faults Dr. Berkman for purportedly failing to consider "naturally-occurring genetic mutations," "naturally-occurring" mutations are not themselves a risk factor. Mot. at 13-14. Dr. Berkman made clear that "the majority of mutations are innocuous" and there is no evidence of any random mutation, especially in the face of Judge Turnoff's Roundup use. Berkman Dep. 84:9-12.

In short, Monsanto's purported criticisms of Dr. Berkman's methodology are largely strawmen stood up to refute an "always Roundup" methodology that Dr. Berkman did not employ. Most, if not all, of what Monsanto claims Dr. Berkman should have done, he did. Namely, he relied on the extensive literature and his years as a clinician and employed a differential diagnosis methodology, which "consider[ed] other factors that could have been the sole cause of plaintiff's injury." *Guinn*, 602 F.3d at 1253 (11th Cir. 2010).

## CONCLUSION

For these reasons, Monsanto Company's Motion to Exclude Testimony of Dr. William Sawyer should be denied.

Dated: January 5, 2023

**RIVERO MESTRE LLP**

2525 Ponce de León Blvd., Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: rkuntz@riveromestre.com

By:  /s/ *Andrés Rivero*
ANDRÉS RIVERO
Florida Bar No. 613819
ROBERT KUNTZ
Florida Bar No. 94668
JOSEPH W. DONATO
Florida Bar No. 1025371
*Counsel for Judge William C. Turnoff*

**CERTIFICATE OF SERVICE**

I certify that on January 5, 2023, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Andres Rivero*
ANDRES RIVERO
*Counsel for Judge William Turnoff*

JUDGE WILLIAM C. TURNOFF'S RESPONSE IN OPPOSITION TO MONSANTO COMPANY'S MOTION TO EXCLUDE DR. SAMUEL BERKMAN