David Bricker, Esq., State Bar No. 158896
**THORNTON LAW FIRM, LLP**
9430 W. Olympic Blvd., Suite 400
Beverly Hills, California 90212
Telephone: (310) 282-8676
Facsimile: (310) 388-5316

Evan R. Hoffman, Esq. (Pro Hac Vice)
**THORNTON LAW FIRM, LLP**
201 Columbine Street, Suite 300
Denver, Colorado 80206
Telephone: (800) 431-4600
Facsimile: (617) 720-2445

*Attorneys for Plaintiffs,*
*Richard Canning and Shirley Canning*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Richard Canning, et al. v. Monsanto Co.,*<br>Case No. 3:19-cv-04230-VC | **PLAINTIFF'S OPPOSITION TO MONSANTO'S MONSANTO COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD**<br><br>Hearing:<br>Date: March 1, 2024<br>Time: 10:00am<br>Place: San Francisco Courthouse,<br>Courtroom 4 –17th Floor |



United States District Court
Northern District of California

United States District Court
Northern District of California

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………………..1

LEGAL STANDARD…………………………………………………………………………2

ARGUMENT…………………………………………………………………………………3

I. Dr. Boyd's Opinions Are the Product of a Reliable Differential Diagnosis Methodology……………………………………………………………………..…3

a. Dr. Boyd Properly Relied on Dr. Herrick's Report as a Basis for His Opinions on the Amount of Roundup to Which Mr. Canning Was Exposed………………………4

b. Dr. Boyd Properly Considered and Properly Ruled Out "Potential" Alternative Causes of Mr. Canning's NHL……………………………………………………..……..5

i. Exposure to Other Chemicals and Herbicides…………………………..……...5

ii. Family History of Cancer…………………………………………….…..6

iii. Obesity…………………………………………………………….……..6

iv. Random Mutations…………………………………………………..……7

CONCLUSION………………………………………………………………………………8

United States District Court
Northern District of California

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*Asad v. Cont'l Airlines, Inc.*,
314 F. Supp. 2d 726 (N.D. Ohio 2004)....4

*Baker v. Dalkon Shield Claimants Trust*,
156 F.3d 248 (1st Cir. 1998)....4

*City of Pomona v. SQM N. Am. Corp.*,
750 F.3d 1036 (9th Cir. 2014)....1

*Clausen v. M/V New Carissa*,
339 F.3d 1049 (9th Cir. 2003)....4

*Hardeman v. Monsanto Co.*,
997 F. Supp. 3d 941 (9th Cir. 2021)....2

*Hoefling v. U.S. Smokeless Tobacco Co., LLC*,
576 F. Supp. 3d 262 (E.D. Pa. 2021)....4

*In re Neurontin Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. 04-cv-10981-PBS (D. Mass. Aug. 14, 2009)....3, 5

*In re Roundup Prods. Liab. Litig.*,
358 F.Supp.3d 956 (N.D. Cal. 2019)....8

*In re Roundup Prods. Liab. Litig.*,
2023 U.S. Dist. LEXIS 208059 (N.D. Cal. 2023)....2

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)....3

*Messick v. Novartis Pharms. Corp.*,
747 F.3d 1193 (9th Cir. 2014)....2, 8

*Milward v. Acuity Specialty Products Group, Inc.*,
639 F.3d 11 (1st Cir. 2011)....1

*People v. Campos*,
32 Cal. App. 4th 304 (1995)....4

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010, *as amended* (Apr. 27, 2010)....2

*Pulse Med. Instruments, Inc. v. Drug Impairment Detection Servs., LLC*,
858 F. Supp. 2d 505 (D. Md. 2012)....4

*Wendell v. GlaxoSmithKline LLC*,
858 F.3d 1227 (9th Cir. 2017)………..…………………………………………2, 3, 7

*Westberry v. Gislaved Gummi AB*,
178 F.3d 257 (4th Cir. 1999)……………………………………………………………4

**Other Authorities**

Fed. R. Evid. 702……………………………………………………………………………2

United States District Court
Northern District of California

United States District Court
Northern District of California

## INTRODUCTION

Monsanto's attempts to paint Dr. Boyd's opinions as unreliable and inadmissible are the product of their own cherry-picked, out-of-context soundbites from the deposition they conducted in this case. Even a cursory review of Dr. Boyd's deposition testimony ("Boyd Depo.")(attached hereto as Exhibit A) and the bases for his opinions as to the cause of Mr. Canning's DLBCL firmly establishes that Dr. Boyd is well qualified to offer his opinions and that he employed a time-tested and validated methodology by which to reach those opinions: a proper differential diagnosis: "Q. . . . [Y]ou conducted a differential diagnosis in this case - - which you did, correct, that differential diagnosis? A. A differential diagnostic ideology, is that – that's what you mean; right? Q. Yes, sir. . . . . A. Yes." Boyd Depo. at p.56. Furthermore, nearly every argument Monsanto makes to the contrary goes to weight and not admissibility; the former is of course not a basis to exclude the testimony of an otherwise well-qualified expert. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) ("Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge.")*; Milward v. Acuity Specialty Products Group, Inc.,* 639 F.3d 11, 22 (1st Cir. 2011) (the Court should not "[take] sides on questions that are currently the focus of extensive scientific research and debate—and on which reasonable scientists can clearly disagree.").

Dr. Barry Boyd is a board-certified medical oncologist and an Assistant Professor of Clinical Medicine (Medical Oncology) at Yale University School of Medicine. He has 38 years of hematological and oncological experience. Further, Dr. Boyd's clinical practice and academic research focus on lymphoma, and he has extensive experience treating patients with NHL. Dr. Boyd has published both books and peer-reviewed journal articles about lymphoma, and he has conducted numerous clinical trials regarding lymphoma treatment. Dr. Boyd has been rated as one of America's Best Doctors in Medical Oncology consistently from 2008 to present, and he is an Editorial Board Member for Integrative Cancer Therapies. *See* Dr. Boyd CV, attached hereto as Exhibit B.

The thrust of Monsanto's Motion to Exclude Opinions of Dr. Barry Boyd ("Monsanto

Motion") is that Dr. Boyd did not have a basis to "rule in" Roundup as a cause of Mr. Canning's DLBCL or "rule out" other risk factors for DLBCL and, therefore, Dr. Boyd's opinion that Mr. Canning's exposure to Roundup was a substantial contributing factor to his DLBCL is unreliable. This simply is not the case. The evidence is clear that Dr. Boyd addressed the "rule out" issues head on, was aware of them, and did not consider them a causative risk factor. Monsanto cannot make any argument that these details were ignored and instead continues to argue that they were not given the ***weight*** Defendants' attorneys believe they deserve. Arguments and assertions by Monsanto's attorneys do not constitute evidence, and do not trump the opinions of actual scientists at the top of their field such as Dr. Boyd whose opinions have been developed after decades of scientific training, research, and experience.

**LEGAL STANDARD**

Rule 702 requires that reliable Expert testimony assist the trier of fact in either "understand[ing] the evidence" or "determin[ing] a fact in issue," and that the expert "be sufficiently qualified to render the opinion." *Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010, *as amended (Apr. 27, 2010)*. This testimony "need only be relevant, and need not establish every element that the plaintiff must prove" to be admissible. *Id.* "The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014). The expert's opinion must also be "the product of reliable principles and methods" and reflect a "reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The court's inquiry into whether an expert's opinion is admissible is "flexible," and should be "applied with a 'liberal thrust' favoring admission." *Hardeman v. Monsanto Co.*, 997 F. Supp. 3d 941, 960 (9th Cir. 2021) *quoting Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017); *see also Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014).

In the Ninth Circuit, doctors "enjoy a wide latitude in how they practice their art when offering causation opinions." *In re Roundup Prods. Liab. Litig.*, 2023 U.S. Dist. LEXIS 208059, 19 (N.D. Cal. 2023), *citing* Pretrial Order No. 85, Dkt. No. 2799 at 5. A doctor is also not

required to "eliminate all other possible causes of a condition," and may "rely on his or her extensive clinical experience as a basis for ruling out a potential of the disease." *Wendell*, 858 F.3d at 1237.

## ARGUMENT

### I. Dr. Boyd's Opinions Are the Product of a Reliable Differential Diagnosis Methodology.

Monsanto argues that Dr. Boyd did not apply a "reliable" differential diagnosis because he did not "reliably rule in glyphosate as a possible cause of Mr. Canning's DLBCL" or "provide valid reasons for 'ruling out'" alternative possible causes (Monsanto Motion at p.3, 8); causes which Monsanto conveniently believes could also cause DLBCL.

First, as explained herein, Dr. Boyd did rule out other potential causes of Mr. Canning's DLBCL and explained how he did so at length in his deposition and report; that Monsanto does not like the answers he gave is not proper focus of a motion to exclude his testimony.

Second, nothing in the cases cited by Monsanto regarding differential diagnoses conflicts with Dr. Boyd's approach in this case. As the court in *In re Neurontin Mktg., Sales Pracs., & Prod. Liab. Litig., No. 04-cv-10981-PBS* (D. Mass. Aug. 14, 2009) made clear: "differential diagnosis is a generally accepted technique and noting that the steps taken by a doctor performing a differential diagnosis will 'vary from case to case' and that the 'core of differential diagnosis is a requirement that experts at least consider alternative causes." Indeed, in *Nuerontin*, the court discussed the plaintiff's expert, his qualifications and his assessment of potential alternative causes and found that, while the defense "pointed out some gaps and potential weaknesses in Dr. Trimble's written report, Dr. Trimble has…demonstrated that he at least considered all reasonable alternative causes and, for the most part, explained why he concluded that a given alternative cause 'was not the sole cause'…." *In re Neurontin* at 87. The court concluded that, "because Dr. Trimble is amply qualified to render an opinion on the issue…the debate is one properly hashed out through testimony at trial." *Id.,* citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999) (the jury, not the court, should be the one to "decide among the conflicting views of different experts").




United States District Court
Northern District of California

United States District Court
Northern District of California

Other courts in have reached the same result, holding that properly conducted differential diagnoses are admissible under the *Daubert* standard. *See e.g. Clausen v. M/V New Carissa*, 339 F.3d 1049 (9th Cir. 2003); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. 1999); *Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248 (1st Cir. 1998). Experts need not "address all possible causes, but '[o]bvious alternative causes need to be ruled out." *Hoefling v. U.S. Smokeless Tobacco Co., LLC*, 576 F. Supp. 3d 262, 280 (E.D. Pa. 2021). This does not mean that a medical causation expert must "perform every possible test to confirm his opinion," but the expert must "employ sufficient diagnostic techniques to have good grounds" for his conclusion. *Id.* (citations omitted). At the core of the differential diagnosis is the requirement that the expert consider alternative causes, and that is exactly what Dr. Boyd has done here.

**a. Dr. Boyd Properly Relied on Dr. Herrick's Report as a Basis for His Opinions on the Amount of Roundup to Which Mr. Canning Was Exposed.**

Monsanto argues that it was somehow inappropriate for Dr. Boyd to rely on the exposure report done by plaintiffs' exposure expert, Dr. Herrick. There is nothing improper about an expert relying on another expert's report and basing their own opinions, in part, on that report. As Dr. Boyd is not an expert on exposure to occupational hazards such as Monsanto's Roundup, it would be improper for him to step outside the scope of his expertise and render an opinion on Mr. Canning's exposure to Roundup before performing his differential diagnosis. Many courts have repeatedly held that experts may rely on each other's' opinions and reports when formulating their own testimony. *See People v. Campos*, 32 Cal. App. 4th 304, 308 (1995), ("the expert witness may state the reasons for his or her opinion, and testify that reports prepared by other experts were a basis for that opinion."); *Asad v. Cont'l Airlines, Inc*., 314 F. Supp. 2d 726, 741 (N.D. Ohio 2004) ("an expert's testimony may be formulated by the use of the facts, data and conclusions of other experts.").; *Pulse Med. Instruments, Inc. v. Drug Impairment Detection Servs., LLC*, 858 F. Supp. 2d 505, 512 (D. Md. 2012) ("Courts in this circuit and across the country have consistently held that an expert may rely on the work of others when preparing an expert report, particularly when it is the sort of work that is reasonably relied upon by experts in the relevant area of expertise")

United States District Court
Northern District of California

Based upon Dr. Herrick's expert testimony regarding Mr. Canning's potential 8-hour exposure days, Dr. Boyd proceeded to perform a differential diagnosis using Mr. Canning's time exposed to the pesticide as a basis of how much Roundup he was potentially exposed to over his years of using the product. Monsanto goes on to claim that Dr. Boyd's use of certain studies and datapoints "violates the weight of the evidence of review he purports to be applying," (Monsanto Motion at p.5), again misunderstanding that the weight that expert reports and testimony carry are to be decided by the trier of fact rather than the court, and that the proposed weight of the evidence as purported by counsel is not a primary consideration in whether that evidence should be admitted.

**b. Dr. Boyd Properly Considered and Properly Ruled Out "Potential" Alternative Causes of Mr. Canning's NHL.**

Dr. Boyd did not ignore potential causes of Mr. Canning's DLBCL and in fact performed a comprehensive differential diagnosis, discussed at length in his deposition and report which clearly establishes that he both conducted a thorough review of Plaintiff's medical and social history to determine whether there were other plausible causes of his illness. What Monsanto characterizes as Dr. Boyd "casually dismiss[ing] potential alternative causes without any scientific rigor to reach his preordained conclusion" (Monsanto Motion at p. 8) is in fact nothing more than a laundry list of Monsanto's attorneys' disagreements over Dr. Boyd's ultimate conclusion that their product more likely than not contributed to Mr. Canning's DLBCL. Dr. Boyd was required to perform a differential diagnosis, which will "vary from case to case' and [] the 'core of differential diagnosis is a requirement that experts at least consider alternative causes." *In re Neurontin*. That is precisely what Dr. Boyd did here.

**i. Exposure to Other Chemicals and Herbicides**

First, Monsanto's argument about alleged other pesticides used during his time at R.F. Morse and Son is a red herring. In order for any other pesticide allegedly used at R.F. Morse and Son to be relevant to performing a differential diagnosis, there would have to be some evidence that Mr. Canning was actually exposed in a sufficient quantity to these pesticides during his time there. As Mr. Canning also worked with several other herbicides and insecticides during his time

United States District Court
Northern District of California

working in various farming operations, namely Casoron, Devrinol, Bravo, Sevin, and Lorsban4E, Dr. Boyd addressed these in his report. *See* Boyd Report at p.34. Dr. Boyd determined that, because these chemicals were handled with proper PPE in a sealed closed container before being introduced into an irrigation pump, and that the irrigated vines were not touched until thoroughly dry, that Mr. Canning's exposure to these chemicals was extremely limited, and thus "did not impart increased risk of developing his lymphoma." *Id.* Monsanto argues that because Dr. Boyd did not discount his Roundup exposure significantly because he may have been wearing proper PPE, that his ruling out of these other pesticides renders his report entirely unreliable. *See* Monsanto Motion at p.8-9. However, this ignores the fact that the methods of application of these chemicals differ drastically. The chemicals that Dr. Boyd ruled out in his report were introduced via an irrigation pump that would disperse the chemicals to the plants directly, rather than requiring personal application by hand via a backpack sprayer, the main mode by which Mr. Canning applied Roundup for decades. *See* Boyd Report at p.19. The significant differences between the potential personal exposure of an irrigation pump and a backpack sprayer mounted on Mr. Canning's backpack cannot be understated and are certainly enough to allow Dr. Boyd to reasonably rule out these other chemicals from being likely causes of Mr. Canning's disease.

**ii. Family History of Cancer**

Second, Monsanto argues that Dr. Boyd failed to "meaningfully consider Mr. Canning's family history of cancer as an alternative cause of his NHL." Monsanto Motion at p.10. Mr. Canning's father's prostate cancer is the only known history of cancer among his first-degree relatives and is also an extremely common form of cancer in men. *See* Boyd Report at p.32. As prostate cancer is generally accepted in the medical and scientific communities as not making a person more susceptible to developing NHL and Mr. Canning's father was the only immediate family member with a history of cancer, Dr. Boyd properly ruled out Mr. Canning's father's diagnosis of prostate cancer as a contributing factor. *See* Boyd Depo. at p.96-97.

**iii. Obesity**

With regard to Mr. Canning's weight, Dr. Boyd readily acknowledged that weight was a

United States District Court
Northern District of California

risk factor for NHL (Boyd Depo. at 75). Though obesity at certain levels has been associated with lymphoma and NHL, Dr. Boyd points out that different levels of obesity are more likely than others to contribute to the development of NHL. *See* Boyd Report at p.32. Associations between obesity and lymphoma become "increasingly evident with BMIs from 35 to 40, and these associations are modest at best." *Id.* Because Mr. Canning's BMI was 31 (mildly obese), and there was no evidence that his BMI had ever gone as high as 35 in his lifetime, Dr. Boyd appropriately ruled out obesity as a likely cause of Mr. Canning's NHL in light of the other potential causes being more likely to have caused his NHL, namely Roundup. *Id.*

**iv. Random Mutations**

Lastly, Monsanto's statement that Dr. Boyd failed to account for random mutations is completely false. Dr. Boyd did indeed testify that he considered random mutations (*See* Boyd Depo. at p.83-85) and explained how it factored into his opinions. When confronted with the question of whether Mr. Canning's NHL could have been caused simply by random mutations, Dr. Boyd pointed to the oversimplification that such a question proposes, as "there is no one who exists without an environment," and that Mr. Canning's substantial exposure to Roundup, a known contributor to the development of NHL, far outweighs the notion that his NHL may have simply developed on his own. *See Id.* Dr. Boyd thus did not ignore idiopathic causes; his opinion is that in the case of Mr. Canning, there is a large and known source of exposure (Roundup) that, to the exclusion of the other risk factors he carefully identified and reviewed, was a substantial contributing factor to Mr. Canning's NHL.

Regardless, Monsanto's citations to caselaw regarding differential diagnoses and idiopathic diseases is misleading. Contrary to Monsanto's assertions, differential diagnoses are appropriate even when there is a high rate of unknown causes (idiopathic) for a disease and where the expert cannot completely rule out idiopathic causes. The fact that a cause is not identified in most cases does not mean a cause cannot be identified in any cases. As explained in *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1235 (9th Cir. 2017):

> The district court erred when it excluded Plaintiffs' experts' opinion testimony because of the high rate of idiopathic [unknown] HSTCL and the alleged inability of the experts to rule out an idiopathic origin or IBD itself. We do not require experts

> to eliminate all other possible causes of a condition for the expert's testimony to be reliable. *Messick*, 747 F.3d at 1199. It is enough that the proposed cause "be a substantial causative factor." *Id*. This is true in patients with multiple risk factors, and analogously, in cases where there is a high rate of idiopathy . . .
>
> Moreover, when an expert establishes causation based on a differential diagnosis, the expert may rely on his or her extensive clinical experience as a basis for ruling out a potential cause of the disease.

Further, Monsanto's arguments have been repeatedly rejected in Roundup-NHL litigation. As noted by Judge Smith in the *Pilliod* Roundup trial, "an expert can opine that a substance caused an injury even when idiopathic causes are responsible for most of the similar injuries." *Pilliod* Order at 6; attached hereto as Exhibit C. Judge Chabbria similarly ruled in the Roundup MDL litigation that expert testimony that "the exposure for these three plaintiffs was so significant that their NHL should not be considered idiopathic" was admissible. *In re Roundup,* 358 F.Supp.3d at 961.

Dr. Boyd performed a proper differential diagnosis—a well-established valid methodology—and determined that, in accordance with his diagnosis and years of training as a medical professional, Mr. Canning's exposure to Roundup was a substantial contributing factor to the development of his NHL subtype, DLBCL. Monsanto's arguments fail to properly attack the reliability of Dr. Boyd's, instead opting to argue over the weight of his findings and medical opinions, which they will be free to do by cross examination during trial.

## CONCLUSION

For these reasons, the Court should deny Monsanto's motion to exclude Plaintiff's expert Dr. Boyd because his opinions are reliable and admissible.



United States District Court
Northern District of California

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of January, 2024, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system, which sent notice of the filing to all appearing parties of record.

/s/ *David Bricker* .
David Bricker