# EXHIBIT B


20908354

**FILED**
ALAMEDA COUNTY

MAR 1 8 2019

CLERK OF THE SUPERIOR COURT
By_____ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

IN RE ROUNDUP PRODUCTS CASES

PILLIOD V. MONSANTO

No. JCCP 4953
RG17-862702

ORDER ON *SARGON* MOTIONS AND
MOTION FOR SUMMARY JUDGMENT IN
PILLIOD V. MONSANTO.

ORDER ON  MOTION FOR SUMMARY
JUDGMENT IN JCCP 4953


DATE  3/6/19
TIME   10:00 AM
DEPT   21

    The motions of Monsanto and Plaintiffs under Sargon to exclude expert testimony and

the motions of Monsanto for summary judgment came on for hearing on Thursday 3/6/19, in

Department 21 of this Court, the Honorable Winifred Y. Smith presiding.  Having reviewed the

papers and having heard the arguments of counsel, and good cause appearing, IT IS HEREBY

ORDERED:

1

MOTIONS REGARDING ADMISSION OF EVIDENCE

STANDARD

Plaintiffs and Defendants bring several motions to exclude expert witness testimony. The court applies the standard in *Sargon Enterprises v. University of Southern California* (2012) 55 Cal. 4th 747.

In *Sargon*, our Supreme Court provided definitive guidance to courts considering the admissibility of expert opinion evidence. "[U]nder Evidence Code sections 801, subdivision (b), and 802, the trial court acts as a gatekeeper to exclude expert opinion testimony that is (1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on which the expert relies, or (3) speculative." (*Sargon*, 55 Cal.4th at pp. 771-772.) "This means that a court may inquire into, not only the type of material on which an expert relies, but also whether that material actually supports the expert's reasoning. 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.' "

"The trial court's preliminary determination whether the expert opinion is founded on sound logic is not a decision on its persuasiveness. The court must not weigh an opinion's probative value or substitute its own opinion for the expert's opinion. Rather, the court must simply determine whether the matter relied on can provide a reasonable basis for the opinion or whether that opinion is based on a leap of logic or conjecture. The court does not resolve scientific controversies. Rather, it conducts a 'circumscribed inquiry' to 'determine whether, as a

matter of logic, the studies and other information cited by experts adequately support the conclusion that the expert's general theory or technique is valid.' [Citation.] The goal of trial court gatekeeping is simply to exclude 'clearly invalid and unreliable' expert opinion. [Citation.] In short, the gatekeeper's role 'is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.' " (*Sargon*, 55 Cal.4th at p. 772.)

CONSIDERATION OF TRIAL COURT OPINIONS

The court has considered the Order dated 5/17/18 in Johnson v. Monsanto and the Order dated 7/10/18 in the MDL.  California trial court decisions have no precedential value and are generally not the proper subject of judicial notice.  (*Shersher v. Superior Court* (2007) 154 Cal. App. 4th 1491, 1501 fn5; *TBG Ins. Servs. Corp. v. Superior Court* (2002) 96 Cal. App. 4th 443, 447 n2.)   Federal trial court decisions arguably have even less precedential value.  The court nevertheless considers the prior orders for two reasons.

First, the opinions demonstrate substantial attention.  The court can consider unpublished decisions by the courts of other jurisdictions for their persuasive value.  The court finds that the thoughtful opinions of Judges Karnow and Chhabria are illuminating and persuasive on the points discussed.  (*Brown v. Franchise Tax Bd.* (1987) 197 Cal. App. 3d 300, 306 n6.)

Second, this is a Judicial Council Coordinated Proceeding.  (CCP 404.)   One purpose of a JCCP is to avoid "the disadvantages of duplicative and inconsistent rulings." (CCP 404.1.) The *Jackson* case was not included in the JCCP and has proceeded to trial.  The Opinion is contemporaneous and concerns not only the same claims against the same defendants, it also

concern the admissibility of the same evidence.   The goal of consistency suggests that the court at least consider the opinion of a judge who recently addressed very similar issues concerning very similar facts.

The MDL is a federal proceeding and it is the federal equivalent of a JCCP.  The federal court will apply the same substantive law as the JCCP, but federal law governs the admission of evidence in the MDL cases. (*Primiano v. Cook* (9th Cir., 2010) 598 F.3d 558, 563.)  The federal standard is set out in *Daubert v. Merrell Dow Pharmaceuticals* (1993) 509 U.S. 570.  The California and federal standards are "analogous." (*Apple  Inc. v. Superior Court* (2018) 19 Cal.App.5th 1101, 1119.)  To the extent that the *Sargon* and *Daubert* standards are different in the abstract, the differences are likely obscured in practice because trial courts exercise discretion in determining the admissibility of expert testimony.  (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 154; *Primiano v. Cook* (9th Cir., 2010) 598 F.3d 558, 563.)  Like the JCCP, the MDL is established in part to avoid inconsistent rulings.   The MDL Opinion is contemporaneous and concerns not only the same claims against the same defendants, it also concern the admissibility of the same evidence.

The court considers the trial court opinions because the goal of consistency in the JCCP and the MDL suggests that the court pay greater attention to the orders of other trial courts than would otherwise be that case.   The court's consideration of the unpublished state and federal trail court opinions is based on the persuasiveness of their analysis and, where there might be close discretionary calls, the interests of consistency.  This court retains and exercises its independent judgment and discretion.

///

MOTION #1.  MOTION OF DEFENDANT MONSANTO TO EXCLUDE TESTIMONY OF

BENBROOK (RES # 2088305).

      The Motion of Defendant Monsanto to exclude testimony of Benbrook is GRANTED IN

PART.   Benbrook is offered as an expert on whether Monsanto's conduct as a pesticide

manufacturer and registrant comports with its obligations and stewardship responsibilities.

      In the Johnson order, Judge Karnow granted in part the motion to exclude the testimony

of Benbrook.  (Johnson order, pp28-31.)   The California court ordered that Benbrook could

testify on the limited issue of the general framework of the EPA regulatory decisionmaking

process."  (Johnson Order at 30:3-5.)  The California court ordered that Benbrook could not

testify on: (1) the proper interpretation of documents; (2) Monsanto's legal obligations; (3) case

specific facts via hearsay; (4) whether the EPA would have approved an amendment to the

Roundup label; (5) industry standards and stewardship obligations; (6) whether Monsanto

Mislead the EPA.  (Johnson Order at 30-31.)

      The court ORDERS that Benbrook may provide testimony that summarizes and explains

the regulatory framework for herbicide regulation, including a description of Monsanto's legal

obligations on registration matters.  The court ORDERS that Benbrook may not testify on

whether Monsanto complied with its legal obligations on registration matters.

      The court ORDERS that Benbrook may not testify on whether there was a non-regulatory

standard of care on registration matters.   Monsanto's regulatory obligation was to comply with

the regulations, so Benbrook may not testify on whether there was a common law standard of

regulatory care or stewardship care different from the regulations themselves.  (*United States v.*

*Pacific Gas and Electric Company* (ND CA 2016) 2016 WL 1640462.)

The court ORDERS that Benbrook may not testify on whether Monsanto complied with a regulatory standard on registration matters.  The court in *Adams v. U.S.* (D. Idaho 2009) 2009 WL 1085481, stated the general rule that "Experts generally are not allowed to render legal conclusions" and then noted that ""the courts seem more open to the admission of expert legal opinions where the subject is the application of some complex regulatory or legal standard to a specific factual background."  The court then permitted Benbrook to testify about "whether DuPont's conduct satisfied industry standards and any stewardship duty."  The court will follow the general rule and does not permit such testimony in this case.

*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, is distinguishable.  *Howard* held that an expert may testify to establish industry standards and compliance with industry standards.   Plaintiffs do not offer Benbrook to testify about substantive industry standards for the safety of herbicides.  Rather, Plaintiffs offer Benbrook to testify about regulatory procedure and compliance with procedures that in turn inform regulations that in turn inform the standards for the safety of herbicides.

The court ORDERS that Benbrook may not testify on whether the EPA would have approved an amendment to the Roundup label.  The court RESERVES for trial whether Benbrook may present factual testimony on the EPA's past practices in approving amendments to warning labels.

The court ORDERS that Benbrook may not testify on whether Monsanto mislead the EPA.  The court RESERVES for trial whether Benbrook may present factual testimony on Monsanto's activities that might suggest it mislead the EPA.

The court ORDERS that Benbrook may not testify on Monsanto's motive, intent, or state of mind.  (*United States v. Pacific Gas and Electric Company* (ND CA 2016) 2016 WL 1640462.)

The court ORDERS that Benbrook may not provide testimony on the industry standard of care on warnings and may not testify on whether Monsanto complied with a substantive standard of care on warnings.  Benbrook is not qualified in this area.

The court RESERVES for trial whether Benbrook may explain the context and possible meaning of regulatory and technical documents that might require expert explanation.  The court will not be inclined to permit expert testimony to explain documents that the jury should be able to understand.

MOTION #2.  MOTION OF DEFENDANT MONSANTO TO EXCLUDE TESTIMONY OF SAWYER (RES # 2088307).

The Motion of Defendant Monsanto to exclude testimony of Sawyer is GRANTED IN PART.   Sawyer is a toxicologist and is offered as an expert on general and specific causation.

In the Johnson order, Judge Karnow granted in part the motion to exclude the testimony of Sawyer.  The California court permitted Sawyer to testify on general and specific causation but ordered that Sawyer could not use the slope factor in his specific causation analysis.  (CA Opinion at 26-28.)  The California court also ordered that Sawyer could not offer an opinion that the EPA departed from its regulations,   (CA Opinion at 31.)

The court ORDERS that Sawyer may provide testimony on general causation.  Sawyer may explain and apply the Bradford-Hill analysis.  Sawyer may rely on epidemiology studies even if he is not an epidemiologist.

The court ORDERS that Sawyer may provide testimony on specific causation, including rates of absorption, the effects of protective gear, and the estimated doses received by the Pilliods.   Sawyer may rely on the POEM for the exposure analysis even if it was established for regulatory purposes and might not be optimally precise or accurate.  Sawyer may testify even if he does not analyze other potential causes of NHL.

The court ORDERS that Sawyer may not testify on Monsanto's motive, intent, or state of mind. (*United States v. Pacific Gas and Electric Company* (ND CA 2016) 2016 WL 1640462.)

The court ORDERS that Sawyer may not provide testimony on the industry standard of care on warnings and may not testify on whether Monsanto complied with a substantive standard of care on warnings.  Sawyer is not an expert on these topics.

The court RESERVES for trial whether Sawyer may explain the context and possible meaning of regulatory and technical documents that might require expert explanation.  The court will not be inclined to permit expert testimony to explain documents that the jury should be able to understand.

MOTION #3.  MOTION OF DEFENDANT MONSANTO TO EXCLUDE TESTIMONY OF NABHAN AND WEISENBURGER (Res # 2048311).

The Motion of Defendant Monsanto to exclude testimony of Nabhan and Weisenburger is DENIED.

Nabhan is an oncologist and is offered as an expert on general causation and specific causation.  In the Johnson order, Judge Karnow permitted Nabhan to testify on specific causation.  Judge Karnow permitted Nabhan to rely on information that glyphosate might cause NHL to testify that glyphosate might cause a specific subtype of NHL.   (CA Order at p22-25.)

In the MDL order, Judge Chhabria ordered that Nabhan could not testify as to general causation but that he might be permitted to testify on specific causation.   (MDL Order at p61-63.)  Nabhan testified at an Evidence Code 402 hearing on 3/6/19.

Weisenburger is a physician and pathologist.  Weisenburger is offered as an expert on general causation and specific causation.   In the MDL order, Judge Chhabria permitted Weisenburger to testify about epidemiology, about the latency issue, animal studies, mechanistic evidence, and the Bradford-Hill analysis.  (MDL Order at p52-56.)

The court ORDERS that Nabhan and Weisenburger may testify on general causation.

The court ORDERS that Nabhan and Weisenburger may testify on specific causation. Nabhan and Weisenburger used a differential diagnosis for specific causation.[1]  A differential diagnosis involves first identifying all the potential causes of an illness and then excluding the potential causes until only one or a few diagnoses are left.   Differential diagnosis is, almost by definition, not an exact analysis given that it relies on the inference that if most of the identified potential causes are not probable, then the last remaining potential cause is probable.  There are two aspects to the differential etiology analysis – the inclusion and the exclusion.

Regarding inclusion, Nabhan and Weisenburger considered several factors.

---

[1] The parties, the experts, and some of the case law refer to this as "differential diagnosis." (*Cooper v. Takeda Pharmaceuticals America, Inc.* (2015) 239 Cal.App.4th 555, 565.)  On 3/6/19, Nabhan explained that differential diagnosis is actually a method to identify (diagnose) the injury or disease whereas differential etiology analysis is a method to identify the cause of the injury or disease.   In this order, the Court will follow the parties and experts in this case (not to mention the terminology *Cooper*) and stick with "differential diagnosis." (*In re Roundup Products Liability Litgation* (N.D. Cal., 2019) 2019 WL 917058 at fn 2.)  (See also *Brown v. Burlington Northern Santa Fe Ry. Co.* (7th Cir., 2014) 765 F.3d 765, 772.)

1    Nabhan and Weisenburger considered exposure history.  The quantity and quality of

2  exposure can be recalled by the fact witnesses and there is information about the use and

3  effectiveness of protective gear.  The exposure history is relevant and can be relied on by experts.

4    Nabhan and Weisenburger considered exposure relative to epidemiological studies.  The

5  McDuffie and Erickson studies suggests a relative risk of 2.0 or greater at what the Pilliods assert

6  were their exposures. Plaintiffs note that almost all studies have a risk factor of over 1.0 and

7  suggest that if many studies show risk factors of over 1.0 that it compensates for the lack of a

8  study with a risk factor of cover 2.0.   Monsanto argues that they selectively relied on studies that

9  showed a link between glyphosate and NHL.  Monsanto also argues that they rely on

10  epidemiological studies that have a relative risk of 2.0 or less, which are not reliable.  (*Cooper*,

11  239 Cal.App.4[th] at 593 ["By demonstrating a relative risk greater than 2.0 that a product causes a

12  disease, epidemiological studies thereby become admissible to prove that the product at issue

13  was more likely than not responsible for causing a particular person's disease."].)

14    Nabhan and Weisenburger considered NHL studies that did not break down the NHL

15  diagnoses into subcategories of the disease.  In the context of general causation, *Ruff v. Ensign-*

16  *Bickford Industries, Inc.* (D. Utah  2001) 168 F.Supp.2d 1271, 1285, stated, "the Court finds that

17  plaintiffs' expert opinion need not include data showing studies of the exact subtype of plaintiffs'

18  NHL to satisfy their general causation burden."  Monsanto has not demonstrated that on the issue

19  of specific causation an expert cannot reasonably rely on general NHL data and must use NHL

20  subtype data.

21    Nabhan and Weisenburger considered that there are no biological markers that would

22  indicate that a person's NHL was caused by glyphosate.  The absence of one type of proof does

23  not preclude forming an opinion based on other types of proof.

Nabhan and Weisenburger considered the lag time between the exposure to Roundup and the NHL diagnosis.

Nabhan and Weisenburger considered the possibility of idiopathic (unknown) causes for the illness.  (CA Opinion at 24-25.)  Weisenburger has testified that the cause of NHL is unknown in 70 percent of all cases.  (DX4, Wiesenberger Depo in Adams case at 56-57 and 212.) Nabhan testified on 3/6/19 that people got NHL before glyphosate was used and that people get NHL even if they live in areas where they are not exposed to glyphosate.

In determining that glycophase is included as a possible cause of NHL, Nabhan and Weisenburger relied on information that is of the type on which experts could reasonably rely. This is a totality of circumstances analysis.  A totality of circumstances evaluation tends to suggest expert analysis is appropriate because some factors will be weaker and some stronger and a person with expertise in the field can make an expert evaluation.   The court's role is to examine whether each factor has some validity and that the expert is not stringing together five non-cumulative weak factors and reaching an unfounded or speculative conclusion.  The court finds that there is sufficient evidence for an expert to include glyphosate as a possible cause of the Pilliod's NHL.

Regarding the exclusion aspect, the central issue is whether Nabhan and Weisenburger excluded some, most, or all possible alternative causes.  Nabhan and Weisenburger are not required to exclude all possible causes of NHL.

*Cooper v. Takeda Pharmaceuticals America, Inc.* (2015) 239 Cal.App.4th 555, 580, was in the context of an order striking the testimony of an expert and entering JNOV.  *Cooper,* 239 Cal.App.4th 585-586, states, that, "California has rejected the notion that an expert must "exclude all 'possibilities' " in reaching a specific causation opinion. [Case.]  Bare conceivability

of another possible cause does not defeat a claim; the relevant question is whether there is "substantial evidence" of an alternative explanation for the disease."  *Cooper*, 239 Cal.App.4[th] at 586, states, "To be admissible, an expert physician's testimony, even in the context of the physician's performance of a differential diagnosis, need not *rule out* the applicability of all other possible causes of disease where there is no substantial evidence that other known risk factors for [the illness acted on [the plaintiff] and provided an alternative explanation for his disease."

*Cooper*, 239 Cal.App.4th 585,  later states, "That is the critical point: Takeda cannot point to any substantial evidence to indicate that another cause of bladder cancer, other than Actos[®], was ignored by Dr. Smith, such that his opinion was unreliable."  This suggests, but does not expressly hold, that if a defendant seeks to exclude a differential diagnosis, then the defendant must identify specific alternate causes of the injury that the expert failed to consider and demonstrate that the failure to consider those specific alternate causes renders the opinion unreliable.

The elephant in the exclusion of possibilities room in this case is the evidence that the cause of NHL is unknown in 70 percent of all cases.  (DX4, Wiesenberger Depo in Adams case at 56-57 and 212.)  Taking 70 percent as accurate, the differential diagnosis appears to be an assertion that if an expert can conclude that one of the causes in the knowable 30 percent likely did not cause the NHL then the person is in the balance of 70 percent and that within that 70 percent that the expert has the opinion based on the risk factors that the glyphosate more likely caused the person's NHL rather than some unknown factor.  The analysis is nuanced further if an expert can opine that Roundup was a substantial factor contributing to the development of LHL even if the expert does not opine that Roundup was the cause of the NHL.

1

2

3          The case law suggests that an expert can opine that a substance caused an injury even

4   when idiopathic causes are responsible for most of the similar injuries.

5          In *Cooper*, the trial court excluded expert testimony and the Court of Appeal stated, "the

6   trial court appeared to be speculating that some unknown exposure could be lurking in the

7   unexamined records.  But as we have said, Dr. Smith was not required to search for evidence that

8   even Takeda's counsel failed to find and present to the jury." (*Cooper*, 239 Cal.App.4th at 584.)

9   *Cooper* seems to presume that every injury has an identifiable cause and that the defendant must

10   demonstrate that an expert for plaintiff has failed to consider an identifiable cause.  *Cooper*

11   indicates that an expert can testify to specific causation and a jury can find causation even if there

12   is evidence that the injury might have had idiopathic (unknown) causes.

13          In *Wendell v. GlaxoSmithKline LLC* (9th Cir. 2017) 858 F.3d 1227, the district court

14   excluded expert testimony in part because it observed that "more than seventy percent of

15   observed HSTCL cases are idiopathic." (858 F.3d at 1233.)  The Court of Appeal reversed,

16   stating, "" the district court erred when it excluded Plaintiffs' experts' opinion testimony because

17   of the high rate of idiopathic HSTCL and the alleged inability of the experts to rule out an

18   idiopathic origin or IBD itself." (*Wendell*, 858 F.3d at 1237.)

19          *Cooper* and *Wendell* are very informative because in both cases the court of appeal

20   reversed the trial court for excluding expert testimony.  Decisions that reverse a trial court for

21   abuse of discretion provide clear guidance that is not present in cases that affirm a trial court's

22   exercise of its discretion.

23

24

25

26

In a case where the trial court was exercising its discretion, in *Harris v. Kem Corp.* (S.D. N.Y.) 1989 WL 200446 at *7-8, the court held that the plaintiff could prove causation even though "most cases of CML are idiopathic, i.e., the cause is not known."  The court permitted an expert to testify that "based on his personal knowledge of Harris as well as his knowledge of medical and scientific studies, ... that "there is a good probability, not a hundred percent, but a good probability" that, assuming exposure to benzene, Harris's leukemia was caused by that exposure to a reasonable degree of medical certainty."

Regarding the exclusion aspect, Monsanto argues that the exposure history did not adjust for confounding variables such as whether the Pilliods were exposed to other herbicides and pesticides.  Monsanto may provide evidence of alternate causation.

Regarding the exclusion aspect, Monsanto may through its expert Bello provide evidence that many of the cases of NHL have idiopathic causes.


MOTION #4.  MOTION OF PLAINTIFFS TO EXCLUDE TESTIMONY OF BELLO (RES # 2048865).

The Motion of Plaintiffs to exclude testimony of Bello is DENIED.   Bello is a hematologist/oncologist and is offered as an expert on specific causation.

Bello will testify about risk factors and possible alternate causes of NHL.  Bello has testified that the cause of Alberta Pilliod's NHL is unknown.  (Bello at 7.)  Bello's testimony is not inadmissible because she cannot identify a cause for the NHL.  Bello can testify as an expert that science cannot attribute a cause to everything, that a significant percentage of NHL is of unknown cause, and that as a result she is of the opinion that even with the Pilliods' risk factors

she does not think that it is possible to conclude that glyphosate contributed to or caused their NHL.

Testimony that NHL is frequently idiopathic is not speculative testimony about unknown potential alternate causes of NHL.  Testimony that NHL is frequently idiopathic, if based on reliable scientific and medical information, is non-speculative testimony about the current state of medical knowledge and the resulting challenges of what caused any given person's NHL. Whereas plaintiffs are offering experts on specific causation to prove that Roundup caused the Pilliods' NHL, Monsanto is offering Bello to inform the jury about the challenges of concluding that Roundup caused the Pilliods' NHL.  Monsanto is defending the claim and does not need to establish that there is an identifiable cause of the Pilliods' NHL and to identify that cause.  The information is relevant to Monsanto's defense and would assist the jury.


MOTION #5.  MOTION OF DEFENDANT MONSANTO TO EXCLUDE TESTIMONY OF PEASE (RES # 2049852).

The Motion of Defendant Monsanto to exclude testimony of Pease is GRANTED. Pease is an environmental scientist and is offered as an expert on the addition of glyphosate to the Prop 65 list.

Neither the CA order nor the MDL order addressed Pease.  In a separate order in the Johnson case, Judge Bolanos excluded Prop 65 related evidence on the basis that the addition of glyphosate to the Prop 65 list is a ministerial task and is not the result of an independent evaluation.  (DX 1, Transcript of 6/28/18 in Johnson at 1187-1188.)

The offered testimony regarding the addition of glyphosate to the Prop 65 list is arguably relevant to the claims in this case.  (Evid Code 350, 351.)  At the hearing on 3/6/19, plaintiffs

argued that the parties will be offering evidence on studies and regulatory decisions from around the world and that information on Proposition 65 is no different.

The court finds that the standards for addition to the Prop 65 list are significantly different from the standards for causation in this case. The Proposition 65 "No Significant Risk Level" (NSRL) for glyphosate is 1100 micrograms per day, which is the level where a daily intake is associated with a risk of cancer of one-in-100,000. This concerns the levels where a business must disclose a risk for purposes of public health and is significantly different from the standard for establishing general causation. Assuming the inclusion on the Prop 65 list might be a factor for general causation, it is not a factor for specific causation. The court finds that testimony on the addition of glyphosate to the Prop 65 list would likely confuse the jury. (Evid Code 352.)

MOTION #6. MOTION OF DEFENDANT MONSANTO TO EXCLUDE TESTIMONY OF MILLS (RES # 2048312).

The Motion of Defendant Monsanto to exclude testimony of Mills is DENIED.   Mills is offered as an expert on damages.

In the Johnson order, Judge Karnow granted in part the motion to exclude the testimony of Mills. The California court ordered that Mills must have a factual basis for a retirement date before calculating lost income until retirement. (CA at 32)

The court applies the same Sargon analysis to an expert on damages as the court applies to an expert on liability. The expert in Sargon was an expert on damages. That noted, "Technical arguments about the meaning and effect of expert testimony on the issue of damages are best directed to the [trier of fact]." (*Heiner v. Kmart Corp.* (2000) 84 Cal.App.4th 335, 347.) "Where the *fact* of damages is certain, the amount of damages need not be calculated with

absolute certainty. …   The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *(GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 873.)

Mills has a factual basis for the price that Alberta Pilliod might pay for the drug Revlimid, has a factual basis for estimating Alberta Pilliod's life expectancy, and can rely on medical experts if assuming that Alberta Pilliod will require Revlimid for the remainder of her life. (Nabhan testimony at 19.)  There is uncertainty in all of these factors, and Monsanto can point out the uncertainties at trial. There is, however, a factual basis for Mills to offer an opinion on damages.


MOTION #7.  MOTION OF DEFENDANT MONSANTO FOR SUMMARY JUDGMENT IN PILLIOD (RES # 2048303).

The motion of Monsanto for summary judgment in Pilliod v. Monsanto, RG17-862702, is DENIED.

The First Amended Complaint filed 10/18/18, alleges that Alva Pilliod and Alberta Pilliod developed non-Hodgkin lymphoma ("NHL") as a result of exposure to glyphosate, a chemical in Defendants' Roundup-brand herbicide.  The 1AC asserts claims for (1) strict liability- design defect, (2) strict liability – failure to warn, (3) negligence, and (4) breach of implied warranty.

The motion of Monsanto for summary adjudication of the claims for warning based on express preemption by the FIFRA is judgment is DENIED.  This is a legal issue.  The court has considered the analysis of Judge Karnow in the CA Opinion at 38-40.    The court has also

considered the analysis of Judge Chhabria in *Hardeman v. Monsanto Company* (N.D. Cal., 2016) 216 F.Supp.3d 1037.  The court finds these analyses persuasive and adopts them.

The motion of Monsanto for summary adjudication of the claims for warning based on conflict preemption by the FIFRA is judgment is DENIED.

Conflict preemption occurs when: (1) "compliance with both federal and state regulations is a physical impossibility," or (2) "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (*Seufert v. Merck Sharp & Dohme Corp.* (S.D. Cal. 2016) 187 F.Supp.3d 1163, 1168–1169.)  Impossibility preemption exists when it is impossible for a private party to comply with both state and federal law.  (*Mut Pharm. Co. v. Bartlett* (2013) 570 U.S. 472; *PLIVA, Inc. v. Mensing* (2011) 564 U.S. 604, 618.)  A defendant must present "clear evidence" that the federal regulator would not have approved a change to product or label.  (*Wyeth v. Levine* (2009) 555 U.S. 555, 571.)  A defendant can meet the "clear evidence standard at summary judgment.  (*Seufert*, supra.)

Monsanto argues that it cannot change the formulation of or the warnings on Roundup without first seeking and obtaining federal approval under FIFRA.  This fails as a matter of law.  FIFRA allows states to regulate or ban pesticides that have been federally approved. "Under [(7 USC] § 136v(a), a state agency may ban the sale of a pesticide if it finds, for instance, that one of the pesticide's label-approved uses is unsafe." (*Bates v. Dow Agrosciences LLC* (2005) 544 U.S. 431, 446.)  (See also *Ansagay v. Dow Agrosciences LLC* (D. Hawai'i., 2015) 153 F.Supp.3d 1270, 1283.)

The court finds that there are triable issues of material fact whether Monsanto is entitled to judgment on the impossibility defense.  Monsanto presents evidence that the EPA has consistently issued findings that glyphosate is not likely to be carcinogenic. (UMF 10-19.)  The

1   EPA studies were for glyphosate, not for Roundup, which includes surfactants.  There is no

2   evidence that Monsanto applied to the change the product or the label, so the trier of fact will be

3   required to infer whether the EPA would approve a change in the project label.  The combination

4   of the need to make inferences and the "clear evidence" standard precludes resolution of this

5   issue at summary adjudication.  (*In re Fosamax (Alendronate Sodium) Products Liability*

6   *Litigation* (3rd Cir., 2017) 852 F.3d 268, 299 [impossibility is a fact issue for the trier of fact].)

7

8       The motion of Monsanto for summary judgment on all claims based on causation is

9   DENIED.  The court has decided that Plaintiffs may offer expert opinions in general and specific

10  causation because the opinions rely on reasonable facts and acceptable methodologies and are

11  non-speculative.  If there is admissible expert opinion on general and specific causation, then

12  there is evidence that raises a triable issue of fact on causation that would permit a trier of fact to

13  find general and specific causation.

14

15      The motion of Monsanto for summary adjudication of the claims for warning based on

16  whether the risks were known or knowable during the relevant time period is DENIED.  "The

17  rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn

18  of a particular risk that was known or knowable in light of the generally recognized and

19  prevailing best scientific and medical knowledge available at the time of manufacture and

20  distribution." (*Valentine v. Baxter Healthcare Corp.* (1999) 68 Cal.App.4th 1467, 1484.)

21      Regarding the timing issue, the Pilliods were exposed to Roundup before 2015, so

22  plaintiffs must prove that the risk of glyphosate was known or knowable in light of the generally

23  recognized and prevailing best scientific and medical knowledge available at that time.

24

25      Regarding the standard, plaintiffs must establish that a warning was required based on the

26

best scientific and medical knowledge available before 2015.   Plaintiffs have presented evidence that raises a triable issue of fact.

The motion of Monsanto for summary adjudication of the prayer for punitive damages is DENIED.  Plaintiffs have presented evidence that might support punitive damages.


MOTION #8.  MOTION IN THE JCCP OF DEFENDANT MONSANTO ON OMNIBUS SARGON ISSUES (RES # 1974283)

The Motion of Defendant Monsanto on omnibus Sargon issues and for summary adjudication on general causation filed 10/30/18 is DENIED.

The Motion of Defendant Monsanto on omnibus Sargon issues is DENIED.  The identities of the proposed witnesses, the contours of the proposed testimony, and the available science all appear to change as the JCCP develops.  The court therefore will not make JCCP-wide orders on what evidence is excluded under *Sargon*.  As discussed earlier, the contours of the permissible evidence in each case will provide useful guidance on what evidence is excluded.

The court finds that the admissible evidence creates a triable issue of fact both on general causation and on whether any given plaintiff might be able to prove specific causation.


MOTION #9.  Motion of Plaintiffs to substitute liaison counsel. (RES # 2008573)

The Motion of Motion to substitute liaison counsel filed 10/30/18 was decided on 11/28/18.   The calendar entry for the motion is DROPPED.


Dated: March 18, 2019

Winifred Y. Smith
Judge of the Superior Court

20