David Bricker, Esq., State Bar No. 158896
**THORNTON LAW FIRM, LLP**
9430 W. Olympic Blvd., Suite 400
Beverly Hills, California 90212
Telephone:   (310) 282-8676
Facsimile:   (310) 388-5316

Evan R. Hoffman, Esq. (Pro Hac Vice)
**THORNTON LAW FIRM, LLP**
201 Columbine Street, Suite 300
Denver, Colorado 80206
Telephone:   (800) 431-4600
Facsimile:   (617) 720-2445

*Attorneys for Plaintiffs,
Richard Canning and Shirley Canning,
Gerald Nelson and Lynn Nelson, and
Robert Cotter and Darya Cotter*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Richard Canning, et al. v. Monsanto Co.,*<br>Case No. 3:19-cv-04230-VC<br><br>*Gerald Nelson, et al. v. Monsanto Co.,*<br>Case No. 3:19-cv-04576-VC<br><br>*Robert Cotter, et al. v. Monsanto Co.,*<br>Case No. 3:20-cv-03108-VC | **PLAINTIFF'S OPPOSITION TO MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF DR. ROBERT F. HERRICK**<br><br>Hearing:<br>Date:   March 1, 2024<br>Time:   10:00am<br>Place:   San Francisco Courthouse, Courtroom 4 – 17th Floor |

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………………..1

LEGAL STANDARD…………………………………………………………………………2

ARGUMENT…………………………………………………………………………………3

    I.    Dr. Herrick is qualified to review and interpret the epidemiological studies cited in his report and to apply the exposure methodology he used in calculating the plaintiffs' exposure days……………………………………………………………..…………………….3

    II.   Dr. Herrick's exposure day analysis is reliable and is the generally accepted methodology regarding glyphosate exposure via Roundup, being admitted in many, if not every Roundup trial to date...………………………………………………………………….…4

    III.  Dr. Herrick's opinions are scientifically based and require far more scientific background and knowledge than simple math…………………………………….7

CONCLUSION…………………………………………………………………………………8

ii

**PLAINTIFFS'RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. HERRICK**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Eagle Waste Indus., LLC v. St. Louis Cty., Missouri*,
    463 S.W.3d 11 (Mo. Ct. App. 2015)……………………………………………………..3, 6

*Clausen v. M/V New Carissa*,
    339 F.3d 1049 (9th Cir. 2003), as amended on denial of reh'g (Sep. 25,
    2003)…………………………………………………………………………………………..4

*Constantine v. Monsanto,*
    Civil Action No. 1972CV00277 (Mass. Sup. Ct. 2023); Endorsement on Motion to
    Exclude Expert Opinions of Dr. William Sawyer (#36.0) DENIED (Oct. 25, 2022)…….5

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)……………………………………………………………………………3

*Hardeman v. Monsanto Co.*,
    997 F. Supp. 3d 941 (9th Cir. 2021) …………………………………………………………...3

*Hardeman v. Monsanto* (*In re Roundup Prods. Liab. Litig.*),
    MDL No. 2741, 2019 U.S. Dist. LEXIS 116638 (N.D. Cal. July 12, 2019)……….……..5

*Heller v. Shaw Indus., Inc.,*
    167 F.3d 146 (3d Cir. 1999)…………………………………………………………..…..4

*In re Roundup Products Liability Litigation*,
    390 F.Supp.3d 1101 (N.D. Cal. 2018)……………………………………………………6

*Johnson v. Monsanto Co.*,
    2018 Cal. Super. LEXIS 37061 (Cal. Super. 2018)………………………………………5

*Massachusetts Gen. Life Ins. Co. v. Sellers*,
    835 S.W.2d 475 (Mo. Ct. App. 1992)……………………………………………………3, 6

*McCostlin v. Monsanto Company*,
    Cause No. 19SL-CC03421 (21st D. Mo. 2023) …………………………………………….5

*Messick v. Novartis Pharms. Corp.*,
    747 F.3d 1193 (9th Cir. 2014) ………….…………………………….………………………..3

*Pilliod v. Monsanto Co.*,
    67 Ca. App. 5th 591 (2021); Amended Pretrial Order No. 201: Order Re Motion to Exclude
    Testimony of Dr. Sawyer, Case No.: 3:16-md-02741-VC (Wave 1
    Cases)…………………………………………………………………………………….5

iii

**PLAINTIFFS' RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. HERRICK**

*Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*,
    752 F.3d 807 (9th Cir. 2014)……………………………………………………….……6

*Russel v. Call/D, LLC*,
    122 A.3d 860 (D.C. 2015)…………………………………………………….………..3

*Wendell v. GlaxoSmithKline LLC*,
    858 F.3d 1227 (9th Cir. 2017)…………………..………………………….…………..3

*Whitlock v. Pepsi Americas*,
    527 Fed.Appx. 660 (9th Cir. 2013)……………………………………………………..6

*Wright v. Willamette Indus., Inc.*,
    91 F.3d 1105 (8th Cir. 1996)……………………………………………….………….4

**Other Authorities**

Fed. R. Evid. 702……...………………………………………………………………….2

**PLAINTIFFS' RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. HERRICK**

# INTRODUCTION

Monsanto's Motion to Exclude Testimony of Dr. Herrick ("Monsanto's Motion") attempts to prevent Dr. Robert Herrick, an exceptionally highly qualified expert in the area of industrial hygiene and exposure reconstruction, from explaining to a jury a scientific staple in Roundup litigation and peer reviewed published literature alike: the quantification of exposure methodology described in literature as lifetime exposure days or exposure days. Monsanto's Motion fails to cite a single instance of this methodology being excluded (against a backdrop of inclusion in innumerable Roundup trials to date) and provides no new arguments as to why this Court should exclude such a widely used and accepted methodology in Roundup litigation. The methodology at issue has continuously been deemed relevant, reliable, and admissible by this Court and many others across the country, and Defendant Monsanto baselessly declares that Dr. Herrick is not qualified to discuss this methodology.

On the contrary, Dr. Herrick is an expert in the field of occupational exposure assessment and reconstruction. His credentials and qualifications to perform the assessment asked of him in the present case are unimpeachable. His full C.V. is attached hereto as Exhibit A. Briefly, he was a Certified Industrial Hygienist (C.I.H.) certified by American Board of Industrial Hygiene from 1980 to 2022, with a Sc.D. in Environmental Health Sciences from Harvard T.H. Chan School of Public Health, a M.S. in Environmental Science from University of Michigan, and a bachelor's degree in chemistry from College of Wooster. He is a member of the American Industrial Hygiene Association (AIHA), and the American Conference of Governmental Industrial Hygienists (ACGIH).

Dr. Herrick is a Principal Scientist at Environmental Health and Engineering, and past professional experiences include roles as Senior Lecturer and Teaching Fellow on Industrial Hygiene at Harvard School of Public Health, Instructor of Epidemiology at University of Michigan, and Industrial Hygienist for the Occupational Safety and Health Administration (OSHA). In addition to numerous other appointments and professional services, and particularly

1

**PLAINTIFFS'RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. HERRICK**

relevant to the present case, he was a member of the Review Panel for NIOSH National Exposures at Work Survey (NEWS), Member of the Study Section for NOISH RFA OH-03-003 on Childhood Agricultural Safety and Health Research, Member of the Implementation Team for Mixed Exposures (NIOSH), and a Member of the planning committee for the Tenth Surgeon General's Conference on Agricultural Safety and Health. International professional services include serving as a Member of the Planning Committee for the International Conference on Retrospective Exposure Assessment in Occupational Epidemiology, and Chair of the Organizing Committee for conference X2009: Innovation in Exposure Assessment. Dr. Herrick's CV lists more than 100 peer reviewed publications to his credit, including in the fields of environmental exposure assessment, industrial hygiene, epidemiology, and worker health and safety. *See* Exhibit A, Herrick C.V.

The Defendant's attempts to exclude Dr. Herrick's testimony consist solely of falsely attacking Dr. Herrick's ability to read and interpret scientific literature with which he is incredibly familiar and capable of utilizing properly, and attacking an established and widely accepted quantification of exposure to glyphosate through Roundup which has been used and admitted in numerous and possibly every Roundup case in the United States filed to date.

## LEGAL STANDARD

An expert witness must possess knowledge, skill, experience, training, or education that is sufficient to qualify them as an expert on the subject of their testimony. Fed. R. Evid. 702. An expert's testimony must also be based on sufficient facts or data, the product of reliable principles and methods, and the result of applying those principles and methods reliably to the facts of the case. *Id.* The trial court has the duty to ensure that scientific testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). However, the court's inquiry into whether an expert's opinion is admissible is "flexible," and should be "applied with a 'liberal thrust' favoring admission." *Hardeman v. Monsanto Co.*, 997 F. Supp. 3d 941, 960 (9th Cir. 2021) *quoting Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227,

2

**PLAINTIFFS'RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. HERRICK**

1232 (9th Cir. 2017); *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014). When challenging the admission of a plaintiff's expert evidence, defendants cannot succeed on a motion to exclude testimony by merely relying on an attorney's interpretation of the science. *See Am. Eagle Waste Indus., LLC v. St. Louis Cty., Missouri*, 463 S.W.3d 11, 26 (Mo. Ct. App. 2015) (upholding the trial court's refusal to exclude expert testimony where the defendant "did not present any evidence or expert testimony which could have challenged the reliability of the sources of Ficken's opinion."); *Massachusetts Gen. Life Ins. Co. v. Sellers*, 835 S.W.2d 475, 480 (Mo. Ct. App. 1992) (denying defendant's motion to exclude plaintiff's expert in part because the defendant relied solely on their attorney's arguments rather than introducing contrary evidence).

## ARGUMENT

I. **Dr. Herrick is qualified to review and interpret the epidemiological studies cited in his report and to apply the exposure methodology he used in calculating the plaintiffs' exposure days.**

Dr. Herrick's use of the exposure day methodology is not being offered as a causal conclusion in and of itself. Instead, he utilizes and employs the exposure methodology to calculate and quantify the exposures of the plaintiffs, which Plaintiff's causation expert, Dr. Boyd utilizes in his causation analysis. Dr. Herrick has never made the representation that he is offering an opinion in the field of epidemiology. *See* Herrick Depo. for Cotter Case at p. 22, attached hereto as Exhibit B ("Q. . . . what was the scope of issues you were asked to opine upon in this matter? A. The request was that I prepare an exposure history for Mr. Cotter"); *see also* Herrick Depo. for Canning and Nelson cases at p. 57, attached hereto as Exhibit C ("Q. Are you offering in this litigation any medical causation opinions for Plaintiff Gerald Nelon" . . . or for "Richard Canning? A. No, I'm not."). It is overly simplistic of the Defendant to argue that he must be an epidemiologist to read or utilize the exposure metrics described in epidemiology studies for exposure calculation purposes. *See Russel v. Call/D, LLC*, 122 A.3d 860 (D.C. 2015) (stating that an expert may rely on published data by another expert in the pertinent field).

3

**PLAINTIFFS'RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. HERRICK**

Ultimately, the Defendant is conflating bases of scientific methodology with opinions. Dr. Herrick uses the peer reviewed published literature cited in his reports to provide a foundation for his methodology and opinions; the conclusions of these epidemiology studies are not the substance of his opinions. *See generally* Dr. Herrick's Exposure Assessments of Mr. Canning, Mr. Cotter, and Mr. Nelson, attached hereto as Exhibits D, E, and F, respectively. Additionally, the Defendant's argument that Dr. Herrick is unqualified conflicts with their later argument that such knowledge is well within the purview of the common juror.

It is baseless to say that Dr. Herrick cannot read and understand an epidemiological study for the purpose of evaluating and applying the exposure metric utilized therein. Dr. Herrick may not hold himself out as an epidemiologist *per se*, but he works with epidemiological studies nearly every day in his professional life, has received training in epidemiology, and has taught college level courses in epidemiology. As such, he is well acquainted with this field of science and possesses more than the requisite knowledge to understand the subject matter of the cited material and apply them as foundations to his exposure methodology to calculate Plaintiffs' exposures.

II. **Dr. Herrick's exposure day analysis is reliable and is the generally accepted methodology regarding glyphosate exposure via Roundup, being admitted in many, if not every Roundup trial to date.**

The Defendant has fabricated a requirement that the Plaintiffs show a milligram per kilogram of bodyweight burden in the blood in order to prove a toxic exposure case. This is inaccurate according to both law and science, as both fields have recognized the fact that such evidence is not always available or even obtainable, and in any event, not a requirement. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1060 (9th Cir. 2003), *as amended on denial of reh'g* (Sep. 25, 2003) ("while 'precise information concerning exposure necessary to cause specific harm [is] beneficial, such evidence is not always available, or necessary, to demonstrate that a substance is toxic … and need not invariably provide the basis for an expert's opinion on causation"); *Wright v. Willamette Indus., Inc.*, (91 F.3d 1105, 1107 (8th

4

**PLAINTIFFS' RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. HERRICK**

Cir. 1996) ("We do not require a mathematically precise table equating levels of exposure with levels of harm, but there must be evidence from which a reasonable person could conclude that a defendant's emission has probably caused a particular plaintiff the kind of harm of which he or she complains..."); *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 157 (3d Cir. 1999) ("...even absent hard evidence of the level of exposure to the chemical in question, a medical expert could offer an opinion that the chemical caused plaintiff's illness").

The Defendant's contention that exposure days are an inadequate way to measure a person's exposure to glyphosate and Roundup is unsupported in law or science and ignores the leading scientific and legal positions on the matter, as this method of quantifying exposure to glyphosate through Roundup use has been admitted to this court and many others in innumerable Roundup cases to date. *See Johnson v. Monsanto Co.*, 2018 Cal. Super. LEXIS 37061, *4 (Cal. Super. 2018) ("Plaintiff also presented Dr. Sawyer to discuss Plaintiff's use of GBHs. Dr. Sawyer did not provide an exposure dose but testified that Plaintiff's days of exposure "puts him approximately in the middle of the human epidemiology studies that show human cancer. He falls in the middle of the exposure categories...." Tr. 3674:25-3675:13."); *Hardeman v. Monsanto* (*In re Roundup Prods. Liab. Litig.*), MDL No. 2741, 2019 U.S. Dist. LEXIS 116638 (N.D. Cal. July 12, 2019) *70-1 (Dr. Weisenburger's testimony admissible where he testified that Plaintiff's "...exposure levels still far exceeded the threshold used in most of the epidemiological literature, and specifically the McDuffie and Eriksson studies.); *Pilliod v. Monsanto Co.*, 67 Ca. App. 5th 591, 609 (2021); Amended Pretrial Order No. 201: Order Re Motion to Exclude Testimony of Dr. Sawyer, Case No.: 3:16-md-02741-VC (Wave 1 Cases) (allowing Dr. Sawyer to testify in 14 Wave 1 cases in this MDL, including testimony quantifying plaintiffs' exposure to Roundup utilizing exposure days.); Pretrial Order No. 260: Order Re Motions to Exclude Testimony of Dr. Sawyer, Case No.: 3:16-md-02741-VC (Wave 3 Cases) (denying motion to exclude testimony of Dr. Sawyer, reapplying the parameters set forth in Pretrial Order No. 201); *see also Constantine v. Monsanto*, Civil Action No. 1972CV00277

5

**PLAINTIFFS'RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. HERRICK**

(Mass. Sup. Ct. 2023); Endorsement on Motion to Exclude Expert Opinions of Dr. William Sawyer, #36.0 DENIED (Oct. 25, 2022) (denying Monsanto's motion to exclude the expert testimony of Dr. William Sawyer who would testify using the exposure day methodology) (attached hereto as Exhibit G); *McCostlin v. Monsanto Company*, Cause No. 19SL-CC03421 (21st D. Mo. 2023) (concluding that expert Dr. Clark may testify utilizing the same methodology and foundation as Dr. Herrick will do here).

Beyond just legal precedent approving of this method, there is widespread scientific acceptance of the exposure day methodology. The epidemiological meta-analysis on glyphosate exposure attached hereto as Exhibit H, Zhang 2019, identifies a number of epidemiological studies and notes repeatedly where exposure days are used as a metric for measuring exposure. *See* Zhang L, Rana I, Shaffer RM, Taioli E, Sheppard L, Exposure to Glyphosate-Based Herbicides and Risk for Non-Hodgkin Lymphoma: A MetaAnalysis and Supporting Evidence, Mutation Research-Reviews in Mutation Research (2019), https://doi.org/10.1016/j.mrrev.2019.02.001 ("Zhang 2019") at 25, Table 1 at 46. One example cited in this meta-analysis is the Andreotti *et al.* study, which defines "exposure level" as "calculated by multiplying lifetime exposure days by an intensity score." *Id.* at 46. It is clear that the science behind examining glyphosate exposure has kept pace with Roundup litigation in that both are widely accepting of exposure days as a proper measurement of exposure.

Additionally, the Defendant failed to introduce its own evidence to the contrary of the findings that exposure day calculations such as Dr. Herrick's are a reliable way of measuring exposure where dose is not an obtainable metric, instead relying exclusively on their attorney's arguments that dose is important. *See* Monsanto Motion at p. 8. Attorney's interpretations of an expert's testimony and opinion are not sufficient grounds for denying admission of that expert's testimony, and here the Defendant has done no more than argue that exposure days are improper, without providing scientific or legal evidence to reinforce that contention. *See Am. Eagle Waste Indus., LLC*, 463 S.2d.3d at 26; *Massachusetts Gen. Life Ins. Co.*, 835 S.W.2d at 480.

6

**PLAINTIFFS'RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. HERRICK**

The Defendant has failed to cite to any precedent, case law, or order where the exposure day quantification of exposure to Roundup has been specifically excluded, despite being advanced in hundreds, if not thousands of cases. The exposure day methodology is so ubiquitous that even Monsanto's own study, the Agricultural Health Study, uses this methodology for quantifying a person's exposure to Roundup. *See* Agricultural Health Study, attached hereto as Exhibit I. Accordingly, the Court should deny the Defendant's motion to exclude Dr. Herrick's exposure day methodology on the grounds that it is the leading method of calculating exposure to glyphosate through Roundup.

### III. Dr. Herrick's opinions are scientifically based and require far more scientific background and knowledge than simple math.

While the studies that Dr. Herrick cited in his report identify the method utilized to calculate a person's exposure, they are not a simple road map that a layperson could follow to calculate exposure with no background on the subject. An expert's testimony need not establish every element that the plaintiff must prove in order to be admissible. *See Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.* (752 F.3d 807, 816 (9th Cir. 2014); *Whitlock v. Pepsi Americas*, (527 Fed.Appx. 660, 661-62 (9th Cir. 2013) ("Because Dr. [William] Sawyer's opinion rests on a reliable foundation and is relevant to the task at hand it is admissible. Whether it proves causation is not a question of admissibility."); *In re Roundup Products Liability Litigation*, 390 F.Supp.3d 1101, 1152 (N.D. Cal. 2018) ("...opinions may be bolstered by Dr. Jameson's narrower opinions regarding glyphosate's ability to cause cancer in animals."). The final computations required by this methodology may be simple math, but the selection of a methodology that is appropriate for the facts of these cases and relatable to the causation studies that have been conducted are the work of a scientist.

Further, properly applying the exposure methodology is not merely a matter of common sense. Defendants wrongfully propose that, because simple math is used in the exposure day calculations, Dr. Herrick's testimony is entirely useless to a juror pool that, while assumingly

7

**PLAINTIFFS'RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. HERRICK**

capable of multiplication, division, and addition, has likely never encountered epidemiological studies on calculating a person's lifetime exposure to a harmful substance. As such, Dr. Herrick's testimony will undoubtedly be helpful to the jury not only in explaining the total exposure day calculations, but also in understanding the underlying principles that govern the methodology.

## CONCLUSION

The Court should deny Monsanto's motion to exclude Plaintiff's exposure expert, Dr. Herrick, because he is a qualified expert, and his opinions are reliable and admissible.

8

**PLAINTIFFS' RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. HERRICK**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of January, 2024, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system, which sent notice of the filing to all appearing parties of record.

*/s/     David Bricker     .*
David Bricker

9

**PLAINTIFFS' RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. HERRICK**