**NACHAWATI LAW GROUP**
5489 Blair Rd.
Dallas, TX 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712
Gibbs C. Henderson
Illinois Bar No.: 6314687
Texas Bar No.: 24041084
*Pro Hac Vice*
Erin M. Wood
Texas Bar No.: 24073064
*Pro Hac Vice*
ghenderson@ntrial.com
ewood@ntrial.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Angelo Bulone v. Monsanto Co.*,<br>Case No. 3:20-cv-03719 | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**PLAINTIFF'S RESPONSE TO MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S SPECIFIC CAUSE EXPERT DR. MARC BRAUNSTEIN AND FOR SUMMARY JUDGMENT**<br><br>Hearing:<br>Date: March 1, 2024<br>Time: 10:00am<br>Place: San Francisco, Courthouse<br> Courtroom 4 -17th Floor |

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

i

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND ................................................................................................................. 1

    A. Dr. Braunstein's Specific Causation Opinions ............................................................. 1

    B. Monsanto's Motion ....................................................................................................... 3

III. STANDARD OF REVIEW .................................................................................................. 3

IV. ARGUMENTS & AUTHORITIES ...................................................................................... 4

    A. Dr. Braunstein Performed a Reliable Differential Diagnosis/Etiology to Reach His Specific Causation Opinion. ............................................................................................... 4

        1. A reliable differential diagnosis does not need to rule out all causes but one. ............... 5

        2. Dr. Braunstein adequately addressed other causes. ........................................................ 6

    B. Dr. Braunstein Appropriately Ruled Out Idiopathic Causes. ............................................ 8

    C. Monsanto is Not Entitled to Summary Judgment. ............................................................ 9

V. CONCLUSION ..................................................................................................................... 9

CERTIFICATE OF SERVICE ..................................................................................................... 11

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

ii

# TABLE OF AUTHORITIES

*Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D.C. Cir. 1996) ......................................................... 8

*Clausen v. M/V New Carissa*, 339 F.3d 1049, 1055 (9th Cir. 2003) ............................................. 3, 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 599 U.S. 579 (1993) ............................................... 3

*Hardeman v. Monsanto*, 997 F.3d 941, 960 (9th Cir. 2021) .......................................................... 4, 8

*In re Fosamax Prods. Liab. Litig.*, 647 F. Supp. 2d 265, 278 (S.D.N.Y. 2009) ............................... 7

*In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Product Liability Litigation*,
    892 F.3d 624, 645 (4th Cir. 2018). ................................................................................................ 9

*In re Roundup Products Liability Litigation,* 358 F. Supp. 3d 956, 961 (N.D. Cal. 2019) ............. 9

*Mendes-Silva v. U.S.*, 980 F.2d 1482, 1487 (D.C. Cir. 1993) .......................................................... 8

*Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014) ..................... 5, 6

*Romero v. S. Schwab Co., Inc.*, Case No. 15-CV-815-GPC-MDD, 2017 ......................................... 7

*Rutenberg v. Ortho-McNeil Janssen Pharmaceuticals, Inc.*, Case No. CV 12-08344 DSF (FFMx),
    2017 WL 5634986, ....................................................................................................................... 5

*Stanley v. Novartis*, 11 F. Supp. 3d 987, 1001 (C.D. Cal. 2014) ...................................................... 7

*Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017) ..................................... 4, 8

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999) ............................................ 5

**Rules**

Federal Rule of Evidence 702 ................................................................................................... 1, 3, 4

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

iii

COMES NOW Plaintiff, by and through his undersigned counsel, and hereby files this Response to Monsanto Company's Motion to Exclude Testimony of Plaintiff's Specific Cause Expert Dr. Marc Braunstein and for Summary Judgment, and would show as follows:

## I.     INTRODUCTION

In its Motion to Exclude Testimony of Plaintiff's Specific Cause Expert Dr. Marc Braunstein and for Summary Judgment ("Defendant's Motion"), Defendant Monsanto Company ("Monsanto") argues that summary judgment should be granted due to the alleged insufficiency of Plaintiff's specific causation evidence. More specifically, Monsanto contends that the specific causation opinion of Plaintiff's expert, Dr. Marc Braunstein ("Dr. Braunstein"), should be excluded under Federal Rule of Evidence 702 ("Rule 702") because he failed to consider and adequately rule out alternative and idiopathic causes of Plaintiff Angelo Bulone's ("Mr. Bulone") non-Hodgkin's lymphoma ("NHL"). However, as Plaintiff explains *infra*, Dr. Braunstein utilized and appropriately performed a differential diagnosis, which this Court and others have held to be a reliable methodology for developing specific causation opinions. In performing that differential diagnosis, he adequately ruled out alternative and idiopathic causes to the required degree of certainty. As such, Defendant's arguments *at best* address the weight of Dr. Braunstein's opinions but not the admissibility and Defendant's Motion should be denied in its entirety.

## II.     BACKGROUND

**A.     Dr. Braunstein's Specific Causation Opinions**

Mr. Bulone was initially diagnosed with B-cell chronic lymphocytic leukemia ("CLL"), a subtype of NHL, in 1994 at the age of 52, and had recurrences of the cancer in 2011 and 2015. *See* Declaration of Gibbs C. Henderson ("Henderson Decl.") at **Exhibit A**, Report of Dr. Marc Braunstein, dated Oct. 23, 2023 ("Dr. Braunstein Report"), at 1, 3. Following a comprehensive review of both Mr. Bulone's medical records and the relevant medical and scientific literature

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

1

regarding the carcinogenicity of glyphosate and glyphosate-based herbicides, Dr. Braunstein concluded that due to the "prolonged duration of [Mr. Bulone's] exposure to Roundup prior to and during his diagnosis and relapses . . . it is possible to draw a line between his Roundup exposure and specific causation to his CLL." *Id*. at 11.

Dr. Braunstein reached this conclusion by means of a differential diagnosis, whereby various known causes are systematically "ruled in" or "ruled out." *See* Henderson Decl. at Ex. A, Dr. Braunstein Report at 11; and **Exhibit B**, Deposition Transcript of Dr. Marc Braunstein, dated Oct. 24, 2023 ("Dr. Braunstein Dep. Tr."), at 47:2-7. As outlined in his report, Dr. Braunstein was able to "rule in" Roundup as a cause of Mr. Bulone's CLL using a two-part analysis. First, Dr. Braunstein applied the widely accepted Bradford Hill criteria to conclude that Roundup can be a causal factor in the development of NHL in humans. *See* Henderson Decl. at Ex. A, Dr. Braunstein Report at 10-11 (applying the 9-part criteria). Second, Dr. Braunstein reviewed the exposure history of Mr. Bulone and the time-weighted exposure calculation of Dr. James Clark ("Dr. Clark") in order to conclude that "Mr. Bulone's prolonged exposure to Roundup over 36 years is more than the minimum exposure reported in epidemiologic studies associating GBFs to NHL." *Id*. at 10.

Dr. Braunstein also "ruled out" several factors as possible causes of Mr. Bulone's CLL:

- **Family History**: "He does not have family history suggestive of a familial pattern of CLL";
- **Jet Fuel and Smoking**: "Evidence linking **jet fuel** and **smoking** to CLL . . . is lacking, so these have been ruled out as contributory factors in this case";
- **Age**: "Mr. Bulone was diagnosed with CLL at a much younger age . . . [than] expected for NHL . . . ."

*Id*. at 6, 10 (emphasis added).

Based on this differential diagnosis, Dr. Braunstein ultimately concluded, "to a reasonable degree of medical certainty that Mr. Bulone's Roundup exposure was a significant contributory

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

2

factor to his NHL." *Id*. at 11.

**B.     Monsanto's Motion**

Defendant filed its Motion to Exclude Testimony of Plaintiff's Specific Cause Expert Dr. Marc Braunstein and for Summary Judgment ("Defendant's Motion") on December 13, 2023.  As its title suggests, Monsanto's Motion contains two parts.  First, Monsanto contends that the Court should exclude Dr. Braunstein's specific causation opinion on the grounds that, in conducting his differential diagnosis, he failed to: (a) "address and rule out the numerous potential causes of Plaintiff's NHL other than Roundup . . ."; and (b) "consider and rule out potential idiopathic causes of Plaintiff's CLL." Def.'s Mot. at 6, 8.  Second, Monsanto argues that, assuming Dr. Braunstein's testimony is excluded, it is entitled to summary judgment "because Plaintiffs have failed to present at least one admissible expert opinion to support specific causation in this case." *Id*. at 9.  For the reasons discussed below, these arguments fail, and Monsanto's Motion should be denied.

**III.     STANDARD OF REVIEW**

Mr. Bulone's case is part of the MDL alleging that the carcinogenic qualities of the glyphosate-based herbicide (GBH) Roundup cause NHL.  In this MDL, the Court has held that "for questions of federal law, such as the admissibility of expert testimony under *Daubert*, Ninth Circuit law will govern regardless of where a case originated.  Doc. 4549, Pretrial Order No. 158: *Daubert* Choice of Law, MDL No. 2741, July 10, 2019, at. 1.  Consistent with this pretrial order, Plaintiff focuses his response on relevant Ninth Circuit precedent.

In the Ninth Circuit (and throughout the federal courts), Rule 702 supplies the standard for the admissibility of scientific evidence.  *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1055 (9th Cir. 2003).  Further, in *Daubert*, the Supreme Court charged district courts with a gatekeeping role to ensure that such scientific evidence is relevant and reliable.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 599 U.S. 579 (1993).  The inquiry under Rule 702 and *Daubert* "is flexible

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

3

and should be applied with a 'liberal thrust' favoring admission." *Hardeman v. Monsanto*, 997 F.3d 941, 960 (9th Cir. 2021) (quoting *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017). Ultimately, "the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system . . . to 'attack[] shaky but admissible evidence.'" *Wendell*, 858 F.3d at 1237 (quoting *Daubert*, 509 U.S. at 596 (alteration in original)).

A key principle of Rule 702 and *Daubert* is that they were intended to relax traditional barriers to admission of expert opinion testimony. *Daubert*, 509 U.S. at 588. Courts are accordingly in agreement that Rule 702 mandates a liberal standard for the admissibility of expert testimony. As the Advisory Committee to the 2000 amendments to Rule 702 note, with apparent approval, "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee note (2000).

## IV.    ARGUMENTS & AUTHORITIES

**A.    Dr. Braunstein Performed a Reliable Differential Diagnosis/Etiology to Reach His Specific Causation Opinion.**

Dr. Braunstein used a differential diagnosis/etiology to rule in and out risk factors and to conclude that exposure to Roundup was a substantial contributing cause of Mr. Bulone's CLL. As this Court has previously noted, this is an appropriate methodology for determining specific causation:

> A differential diagnosis is simply a framework for identifying the most probable cause of a disease. [FN Omitted] *See Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1234 (9th Cir. 2017). To conduct a differential diagnosis, a physician "rules in" all potential causes of a disease, "rules out" those for "which there is no plausible evidence of causation, and then determines the most likely cause among those that cannot be excluded." *Id*. The Ninth Circuit has repeatedly approved the use of a differential diagnosis under Daubert, provided, of course, that it is applied reliably. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003).

PTO 85 at 1-2.

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

4

In its Motion, Monsanto does not challenge the general appropriateness of the differential diagnosis methodology; rather, it claims "Dr. Braunstein did not follow this methodology" because he "failed entirely to address and rule out the numerous potential causes of Plaintiff's NHL other than Roundup . . . ." Def.'s Mot. at 6. As set out below, that argument is factually and legally incorrect.

    **1.**     **<u>A reliable differential diagnosis does not need to rule out all causes but one.</u>**

First, Monsanto is simply wrong when it argues that, in order to be found reliable, an expert's differential diagnosis "must 'rule out' each of the possible causes until only the most likely cause remains." Def.'s Mot. at 6. The Ninth Circuit has explicitly stated that, "we do not require that an expert be able to identify **<u>the sole cause</u>** of a medical condition in order for his or her testimony to be reliable. It is enough that a medical condition be a **<u>substantial causative factor</u>**." *Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014) (emphasis added). Indeed, in *Messick*, the Ninth Circuit held that a "district court abused its discretion when it found [expert] testimony to be unreliable largely because [the expert] could not 'determine in a patient who has multiple risk factors at one time which of those particular risk factors [caused the plaintiff's illness]." *Messick*, 747 F.3d at 1199. *See also Rutenberg v. Ortho-McNeil Janssen Pharmaceuticals, Inc.*, Case No. CV 12-08344 DSF (FFMx), 2017 WL 5634986, at *4 (C.D. Cal. Mar. 27, 2017) (citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999)) ("The expert's opinion 'should not be excluded because he . . . failed to rule out every possible cause of a plaintiff's illness' as part of his original analysis.").

Given this precedent, there is nothing inappropriate about Dr. Braunstein's conclusion that "Mr. Bulone's Roundup exposure was **<u>a</u>** significant contributory factor to his NHL[]" rather than **<u>the</u>** sole causative factor. Henderson Decl. at Ex. A, Dr. Braunstein's Report at 11 (emphasis added). Indeed, the Ninth Circuit has "consistently recognized the difficulties in establishing certainty in the

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

5

medical sciences." *Messick*, 747 F.3d at 1198. Because of that uncertainty, the Ninth Circuit has held that requiring an expert to identify the sole cause of a medical condition would constitute "an unduly exacting standard [that] goes beyond the district court's proper gatekeeping role." *Id*.

### 2. Dr. Braunstein adequately addressed other causes.

Second, Monsanto mischaracterizes the record when it argues that Dr. Braunstein "acknowledged that Plaintiff checked the boxes for five known risk factors that could have caused or contributed to have caused Plaintiff's CLL … ***without any explanation of why [those] five factors played no role***." Def.'s Mot. at 7 (emphasis in original). Before that inaccurate contention is addressed directly, it must first be noted that, while Monsanto uses "risk factors" and "potential causes" interchangeably, Dr. Braunstein does not. Indeed, when Monsanto's counsel attempted to conflate the two terms at his deposition, Dr. Braunstein corrected her:

> Q. Do you agree that the risk factors that we discussed earlier - race, age, gender, family history, smoking[,] exposure to benzine and other factors – **could be substantial contributing factors** to Mr. Bulone's NHL?
>
> A. I mean, they **could be associated with increased risk of NHL**.

Henderson Decl. at Ex. B, Dr. Braunstein Dep. Tr. at 65:10-16 (emphasis added).

Dr. Braunstein further clarified the distinction between "risk factors" and "causative factors" in his response to a question about the potential role of Mr. Bulone's ethnicity in causing his CLL. Specifically, Dr. Braunstein explained that ethnicity is a "risk factor" only insofar as it puts Mr. Bulone more "within the demographic spectrum in which CLL is more common." *Id*. at 48:22-25.

Understanding this distinction, Monsanto is correct that Dr. Braunstein did identify, *inter alia*, family history of cancer, gender, ethnicity, geographic location and occupational exposure to benzene in jet fuel as "risk factors" for CLL potentially applicable to Mr. Bulone. *See* Def.'s Mot. at 2-3. He also clarified in his report, however, that, upon close inspection, family history was not an actual causative factor for Mr. Bulone's CLL: "He does not have family history suggestive of a

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

6

familial pattern of CLL." Henderson Decl. at Ex. A, Dr. Braunstein Report at 6 (emphasis added). As to gender, ethnicity and geographic location, while Dr. Braunstein acknowledges that males, whites and New Yorkers are at a higher risk for developing NHL, he did not agree with Monsanto's counsel's characterization of these characteristics as potentially contributing causative factors to NHL. *See* Henderson Decl. at Ex. B, Dr. Braunstein Dep. Tr. at 65:10-16. Rather, as noted above, he explained that these types of "risk factors" merely put Mr. Bulone within a demographic spectrum in which CLL is more common. *See* Henderson Decl. at Ex. A, Dr. Braunstein Dep. Tr. at 48:22-25.

In contrast to those demographic risk factors, Dr. Braunstein did identify benzene exposure from jet fuel as a risk factor that possibly "could have **contributed to** Mr. Bulone's NHL . . . ." *Id.* 53:5-7 (emphasis added). However, he clearly stated in his Report that he "ruled out" jet fuel exposures as a contributing causative factor to Mr. Bulone's CLL because "[e]vidence linking jet fuel and smoking to CLL, as Mr. Bulone had in his exposure history, is lacking . . . ." Henderson Decl. at Ex. A, Dr. Braunstein Report at 11. While Dr. Braunstein conceded at his deposition that jet fuel could not be "a hundred percent ruled out[,]" such certainty is not required of experts. "Generally, 'an expert need not rule out every potential cause in order to satisfy *Daubert*,' as long as the expert's testimony '**address[es] obvious alternative causes** and provide[s] a reasonable explanation for dismissing specific alternate factors identified by the defendant.'" *Stanley v. Novartis*, 11 F. Supp. 3d 987, 1001 (C.D. Cal. 2014) (quoting *In re Fosamax Prods. Liab. Litig.*, 647 F. Supp. 2d 265, 278 (S.D.N.Y. 2009)) (emphasis added) (alterations in original); and *Romero v. S. Schwab Co., Inc.*, Case No. 15-CV-815-GPC-MDD, 2017 WL 5494588, at *12 (S.D. Cal. Nov. 16, 2017) (stating same proposition). To the extent a party argues that a specific causation expert "did not adequately rule out additional factors, this is a credibility determination that goes to the weight and the admissibility of his opinions." *Stanley*, 11 F. Supp. 3d at 1001. In such a situation,

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

the defendant "can cross examine [the expert] regarding additional factors that he did not rule out during trial." *Id*. (citations omitted).  *See also Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D.C. Cir. 1996) (holding that, "[t]he fact that several possible causes might remain 'uneliminated' . . . only goes to the accuracy of the conclusion, not the soundness of the methodology.") (quoting *Mendes-Silva v. U.S.*, 980 F.2d 1482, 1487 (D.C. Cir. 1993)).  Thus, insofar as Monsanto believes that Dr. Braunstein did not adequately rule out jet fuel exposures in his differential diagnosis, that belief is appropriate fodder for cross-examination, not a basis for exclusion of Dr. Braunstein's opinions.

**B.     Dr. Braunstein Appropriately Ruled Out Idiopathic Causes.**

Monsanto's assertion that "Dr. Braunstein . . . failed to consider and rule out potential idiopathic causes" is inaccurate.  Def.'s Mot. at 8.  The Ninth Circuit has previously held that, even where there are "multiple risk factors" for a disease and "a high rate of idiopathy[,]" it "is enough that the proposed cause 'be a substantial causative factor.'" *Wendell*, 858 F.3d at 1237.  Monsanto is, of course, aware of this standard; indeed, in *Hardeman*, "Monsanto acknowledge[d] that an expert can rule out idiopathy by reliably concluding that the known factor (here, glyphosate) is a 'substantial cause,' which can be shown when a strong association exists between the diseases and a known risk factor." *Hardeman*, 997 F.3d 941, 966 (9th Cir. 2021) (citing *Wendell*, 858 F.3d at 1235, 1237).  That is precisely what Dr. Braunstein did here.  As noted above, Dr. Braunstein used a differential etiology to identify Roundup exposure as a "significant contributory factor" in causing Mr. Bulone's CLL, taking into account both the medical and scientific literature showing an association between Roundup exposure to NHL and the specific nature and extent of Mr. Bulone's exposure.

Given his consideration of that latter factor, it is not correct to state, as Monsanto does in its Motion, that "Dr. Braunstein engages in an 'always Roundup' methodology . . . ."  Def.'s Mot.

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

8

at 9.  This Court has previously held that it is appropriate for an expert to take into account the significance of a plaintiff's exposure to Roundup in ruling out idiopathy.  *See In re Roundup Products Liability Litigation,* 358 F. Supp. 3d 956, 961 (N.D. Cal. 2019).  Here, in reaching his specific causation opinion, Dr. Braunstein factored into his analysis the "significance" of Mr. Bulone's exposures in at least two respects: (1) that his "prolonged exposure to Roundup over 36 years is more than the minimum exposures reported in epidemiologic studies associating GBFs to NHL"; and (2) that his diagnosis of NHL was "within the latency period of 10-30 years expected for NHL following exposure to Roundup . . . ."  Henderson Decl. at Ex. A, Dr. Braunstein Report at 10-11.  Thus, contrary to Monsanto's contention, Dr. Braunstein *did* offer a reliable explanation for why Mr. Bulone's NHL should not be considered "idiopathic."  Moreover, his consideration of the "significance" of Mr. Bulone's exposure, as discussed *supra*, distinguishes Dr. Braunstein's analysis from the expert in *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Product Liability Litigation*, whose "conclusions focused almost exclusively on the fact that [the plaintiff] took the [at-issue] drug and later developed the disease . . . ."  892 F.3d 624, 645 (4th Cir. 2018).

**C.**     **Monsanto is Not Entitled to Summary Judgment.**

Monsanto's sole basis for summary judgment is its contention that "Plaintiffs have failed to present at least one admissible expert opinion to support specific causation in this case."  Def.'s Mot. at 9.  As set out above, however, Dr. Braunstein's specific causation testimony is reliable and should be admitted.  Accordingly, Monsanto's request for summary judgment should be denied.

**V.      CONCLUSION**

Based on the foregoing reasons, Plaintiff requests that the Court deny Defendant's Monsanto Company's Motion to Exclude Testimony of Plaintiff's Specific Cause Expert Dr. Marc Braunstein and for Summary Judgment.

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

9

Date:   January 8, 2024

                                                  Respectfully submitted,

                                                  **NACHAWATI LAW GROUP**

By:   */s/Gibbs C. Henderson*
      Gibbs C. Henderson
      Illinois Bar No.: 6314687
      Texas Bar No.: 24041084
      *Pro Hac Vice*
      Erin M. Wood
      Texas Bar No.: 24073064
      *Pro Hac Vice*
      **NACHAWATI LAW GROUP**
      5489 Blair Rd.
      Dallas, TX 75231
      Telephone: (214) 890-0711
      Facsimile: (214) 890-0712
      ghenderson@ntrial.com
      ewood@ntrial.com
      litigation@ntrial.com
      *Attorney for Plaintiff*

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

10

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2024, a true and correct copy of Plaintiff's Response to Monsanto's Motion to Exclude Testimony of Plaintiff's Specific Cause Expert Dr. Marc Braunstein and for Summary Judgment, was served on all counsel of record via email.

By: */s/Gibbs C. Henderson*
Attorney for Plaintiff

Pl.'s Resp. to Def.'s Mot. to Excl. Dr. Braunstein & Summ. J., Case Nos. 3:16-MD-02741 & 3:20-CV-03719

11