**NACHAWATI LAW GROUP**
Gibbs Henderson (*pro hac vice*)
ghenderson@ntrial.com
Erin M. Wood (*pro hac vice*)
ewood@ntrial.com
5489 Blair Road
Dallas, Texas 75231
Tel: 214-890-0711

*Attorneys for Plaintiff Angelo Bulone*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Angelo Bulone v. Monsanto Co.*,<br>Case No. 3:20-cv-03719 | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**PLAINTIFF'S RESPONSE TO MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF DR. JAMES CLARK**<br><br>Hearing Date: March 1, 2024<br>Time: 10:00 a.m.<br>Place: San Francisco Courthouse<br>Courtroom 4 – 17th Floor |

TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF THE FACTS ..................................................................................... 2

   A. Procedural Background ............................................................................................2

   B. Dr. Clark's Qualifications and Methodology ...........................................................2

      1. Dr. Clark's Qualifications. ................................................................................. 2

      2. Dr. Clark's Methodology. .................................................................................. 3

III. STANDARD OF REVIEW ............................................................................................. 6

IV. ARGUMENTS & AUTHORITIES ................................................................................. 7

   A. Dr. Clark's Reliance on the Sworn Deposition Testimony and Interview of Mr. Bulone is Sound and Reasonable in the field of Toxicology. ...................................................................7

   B. Dr. Clark's Exposure Calculations are Admissible Under Rule 702. ................................9

      1. Dr. Clark's Inclusion of Maximum Exposure Amount in his Exposure Calculation Range is Reasonable and Based on his Expertise. .................................................................. 9

      2. Exposure Days is a Reliable Metric and Accepted within Scientific Literature for the Measurement of Exposure to GBH. ........................................................................ 11

      3. Monsanto seeks to Impose Inapplicable Standards to Dr. Clark's Exposure Metric.... 13

      4. Dr. Clark's Calculation of Exposure Days is Specialized Knowledge and Would be Helpful to the Jury. ........................................................................................................ 14

V. CONCLUSION .............................................................................................................. 15

CERTIFICATE OF SERVICE ................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960 (9th Cir.2013)…………………14

*Bergen v. F/V St. Patrick*, 816 F.2d 1345 (9th Cir. 1987), *opinion modified on reh'g*, 866 F.2d 318 (9th Cir. 1989)……………………………………………………………………………………9

*Clausen v. M/V New Carissa*, 339 F.3d 1049 (9th Cir. 2003)……………...……………..…………6, 10

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)…………………………………………………………………………………………….....6, 7

*Hardeman v. Monsanto* (*In re Roundup Prods. Liab. Litig.*), MDL No. 2741, 2019 U.S. Dist. LEXIS 116638 (N.D. Cal. July 12, 2019)……………...………………………………………….12

*Hardeman v. Monsanto*, 997 F.3d 941 (9th Cir. 2021)………………………………………….….6

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997)…………..……..…………13, 14

*McMorrow v. Mondelez Int'l, Inc.,* No. 17-CV-2327-BAS-JLB, 2021 WL 859137, (S.D. Cal. Mar. 8, 2021)…………………………………………………………………………………...…………14

*Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 4008822 (W.D. Wash. Aug. 5, 2013)……………………………………………………………………….….……….….15

*In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018)    ………..….……..12

*Johnson v. Monsanto Co.*, 2018 Cal. Super. LEXIS 37061 (Cal. Super. 2018)………...….……12

*Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002 (S.D. Cal. 2023)……………………..8

*Pilliod v. Monsanto Co.*, 67 Ca. App. 5th 591 (2021)……………………………………………12

*San Francisco Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1085 (N.D. Cal. 2022)…………9

*Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283 (Fed. Cir. 2015))…………………….….8

*TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006 (N.D. Cal. 2013)………………10

*Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-220, 2020 WL 2543814 (C.D. Cal. Jan. 10, 2020))...8

PLAINTIFF'S RESPONSE TO MONSANTO'S MOTION TO EXCLUDE DR. J. CLARK

*Walters v. McCormick*, 122 F.3d 1172 (9th Cir. 1997)……………………………………….....10

*Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227 (9th Cir.2017)………………………...…6, 7

*WWP, Inc. v. Wounded Warriors Fam. Support, Inc.*, 628 F.3d 1032 (8th Cir. 2011)……………15

**Rules**

FED. R. EVID. 702 advisory committee note (2000)……………………………...……………..7

FED. R. EVID. 702………………………………………………………………………....1,6,7,9

FED. R. EVID. 703……………………………………………………………………….…..…8

COMES NOW Plaintiff, by and through his attorneys, and hereby files this Response in Opposition to Monsanto Company's Motion to Exclude Opinions of Dr. James J. Clark, Ph.D., and would respectfully show this Court as follows:

## I.      INTRODUCTION

Defendant Monsanto Company's ("Monsanto") Motion to Exclude the testimony of Dr. James J. Clark ("Defendant's Motion") attempts to exclude the testimony of toxicologist Dr. James Clark's ("Dr. Clark") on the basis of Federal Rule of Evidence 702 ("Rule 702").  Def.'s Mot. at 2. Monsanto claims that Dr. Clark's opinions about Plaintiff's glyphosate exposure are "not scientific at all and will not assist the jury" as they "blindly rel[y] on Plaintiff's recollection of Roundup usage, inflated numerical values, and fundamentally flawed data points."  *Id.*  Monsanto's objections to exposure days as an assessment of exposure to the glyphosate-based herbicide ("GBH") Roundup and Dr. Clark's methodology are inapposite.  Monsanto's Motion fails to cite to a single instance of this methodology being excluded and provides no new arguments as to why this Court should exclude the exposure day methodology, which has continuously been deemed relevant, reliable, and admissible by this Court and many others across the country.

Dr. Clark's exposure calculations in this case are based on his specialized knowledge as a toxicologist and will prove helpful to the jury in putting Mr. Bulone's exposure in perspective relative to accepted epidemiology regarding GBH exposure.  Additionally, Dr. Clark's reliance on Plaintiff Angelo Bulone's ("Mr. Bulone" or "Plaintiff") testimony and interview to assess exposure, is an accepted practice in the field of toxicology and should not render his opinions inadmissible.

As set out more fully below, Dr. Clark's opinions meet the reliability standard under Fed. R. Evid. 702 and should be admitted in this case.  Monsanto's motion should be denied in full and the jury should be able to consider Dr. Clark's testimony before reaching its conclusions in this case, as allowed in the past.

1
PLAINTIFF'S RESPONSE TO MONSANTO'S MOTION TO EXCLUDE DR. JAMES CLARK

## II.	STATEMENT OF THE FACTS

### A.	Procedural Background

Plaintiff identified Dr. Clark as an expert toxicologist in the instant matter and provided Defendant his report and an amended report.  *See* Declaration of Erin Wood ("Wood Decl.") at **Exhibit A**, Updated Report of Dr. J. Clark ("10.21.2023 Clark Report"), dated October 21, 2023; and **Exhibit B**, Report of Dr. J. Clark, dated September 25, 2023.  Furthermore, Plaintiff served Responses to Requests for Production and produced Dr. Clark for deposition on October 30, 2023. *See* Wood Decl. at **Exhibit C**, Plaintiff's Responses and Objections to Defendant Monsanto Company's Notice of Taking Videotaped Deposition of James Clark, Oct. 27, 2023.

On December 11, 2023, Monsanto filed Defendant's Motion.  In it, Monsanto argues that Dr. Clark should not be permitted to offer testimony on Mr. Bulone's exposure to Roundup due to Dr. Clark's reliance on Mr. Bulone's testimony, "inflated numerical values, and fundamentally flawed data points", and its argument that Dr. Clark's opinion "is not scientific at all and will not assist the jury." Def.'s Mot. at 2.  For the reasons discussed below, each of these arguments should be rejected.

### B.	Dr. Clark's Qualifications and Methodology

#### 1.	Dr. Clark's Qualifications.

Dr. Clark is an experienced toxicologist and health scientist based out of Los Angeles, California.  Wood Decl. at **Exhibit D**, Deposition Transcript of Dr. James Clark, dated October 30, 2023 ("10.30.23 Clark Dep. Tr."), 13:2-7; and **Exhibit E**, Curriculum Vitae of James J. J. Clark, Ph.D. ("Dr. Clark CV") at 1.  Dr. Clark earned a B.S. in Biophysical and Biochemical Sciences from the University of Houston, and an M.S. and Ph.D. in Environmental Health Science from the University of California at Los Angeles ("UCLA") School of Public Health.  Wood Decl. at **Exhibit F**, Deposition Transcript of Dr. James Clark, *Allegrezza v. Monsanto*, Cause No. 19SL-CC03421,

2
PLAINTIFF'S RESPONSE TO MONSANTO'S MOTION TO EXCLUDE DR. J. CLARK

dated April 13, 2023 ("4.13.23 Dr. Clark Dep. Tr."), at 36:13-22; and Ex. E, Dr. Clark CV at 1. Dr. Clark also worked at the UCLA department of pulmonology where he assisted with animal and human studies. *Id.* The human studies Dr. Clark assisted with evaluated "the effects of oxidative chemicals on the individuals." *Id*. Dr. Clark's Ph.D. "thesis was about a multimedia model looking at the risk from various media on an individual using a probabilistic method rather than a point estimate along the way." Wood Decl. at Ex. F, 4.13.23 Dr. Clark Dep. Tr. at 36:19-36:22.

While Monsanto called Dr. Clark as an "inhalation toxicologist" in its Motion, he describes himself as a general toxicologist and has been doing "exposure analysis and risk assessment since the mid-'90s." Wood Decl. at **Exhibit G,** Trial Transcript, *McCostlin v. Monsanto*, 19SL-CC03421, September 26, 2023, ("9.26.2023 McCostlin Trial Tr.") 2990:9-14. Throughout his 30-year career in environmental health science, Dr. Clark has conducted environmental modeling and human health risk assessment, including exposure assessments via dermal route of exposure, for public and private clients including the City of Santa Clarita, Covanta Energy, and Kaiser Ventures Incorporated. Wood Decl. at Ex. E, Dr. Clark CV at 1-9; *see also* Wood Decl. at Ex. G, 9.26.2023 McCostlin Trial Tr., 2942:21-24. He has also authored a number of books, book chapters, and journal and proceeding articles on exposure to chemicals in the environment. Wood Decl. at Ex. E, Dr. Clark CV at 9-12. Dr. Clark has testified regarding a plaintiff's exposure to Roundup in court previously in *McCostlin v. Monsanto Co*. 19SL-CC03421, St. Louis Co., Mo. *See generally* Wood Decl. at Ex. G, 9.26.2023 McCostlin Trial Tr., 2935:2-16.

### 2. Dr. Clark's Methodology.

In assessing Mr. Bulone's case, Dr. Clark reviewed Mr. Bulone's sworn deposition testimony, including exhibits such as his Plaintiff Fact Sheet, medical records, and photographs. *See* Wood Decl., at Ex. A, 10.30.2023 Clark Dep. Tr. at 20:6-21:8; 28:8-15; Wood Decl. at Ex. A, 10.21.2023 Clark Report at pp. 27-30; Wood Decl., at **Exhibit H**, Clark Materials Considered List

3
PLAINTIFF'S RESPONSE TO MONSANTO'S MOTION TO EXCLUDE DR. J. CLARK

("Clark MCL"); *see* Wood Decl. at **Exhibit I**, Deposition Transcript of Angelo Bulone ("Bulone Dep. Tr."), dated November 29, 2021, at 3.  Additionally, Dr. Clark conducted an interview of Mr. Bulone.  *See* Wood Decl. at Ex. D, 10.30.23 Clark Dep. Tr. at 21:3-23:22; 28:8-15; and Ex. A, 10.21.2023 Clark Report at p. 8; Wood. Decl. at **Exhibit J**, Handwritten Interview Notes ("Interview Notes").  When reviewing Mr. Bulone's case, Dr. Clark also identified potential alternative toxicological factors that are relevant to the development of Non-Hodgkin's Lymphoma ("NHL") apart from Roundup exposure, including radiological exposures, family history, pharmacological history, and smoking history.  *See* Wood Decl. at Ex. D, 10.30.2023 Clark Dep. Tr. at 34:12-35:7; and Ex. A, 10.21.2023 Clark Report at pp. 9-12.

Based on his review of the case-specific materials, as well as his review of scientific literature regarding GBH exposure, physiological considerations, and history of precipitation in the relevant geographical locations where Mr. Bulone described using Roundup, Dr. Clark calculated the total amount of exposure described by Mr. Bulone in "total hours and time weight average as days of exposure", "consistent with the metrics described in the epidemiological literature on glyphosate exposure in workers." *See* Wood Decl. at Ex. A, 10.21.2023 Clark Report at 2-3.

Mr. Bulone testified to using Roundup for a period of over 30 years, however, Dr. Clark calculated only those years of usage that occurred prior to Mr. Bulone's diagnosis with Non-Hodgkin's Lymphoma as those would be the years relevant to Plaintiff's claims of causation in this case.  *See* Wood Decl. at Ex. D, 10.30.2023 Clark Dep. Tr. at 66:21-67:22; and Ex. I, Bulone Dep. Tr., at 22:18-24:6.  As there was a discrepancy regarding the date of Mr. Bulone's NHL diagnosis, Dr. Clark used the earlier date of 1994 so as to calculate a shorter, more "conservative" period of exposure.  Wood Decl. at Ex. D, Clark Dep Tr. at 62:18-63:6; 66:21-67:22.

To calculate the range of hours of Mr. Bulone's exposure duration, Dr. Clark multiplied Mr. Bulone's described frequency of Roundup usage events by the described duration of those events

4
PLAINTIFF'S RESPONSE TO MONSANTO'S MOTION TO EXCLUDE DR. J. CLARK

for each identified subset of usage: 1) residential usage at Pawleys Island, SC, from 1983 to 1984, 2) residential usage at Pawleys Island, SC, from 1985 to 1993, 3) occupational usage at Wedgefield Plantation Golf Course from 1988 to 1991 during the growing season, and 4) occupational usage at Wedgefield Plantation Golf Course from 1988 to 1991 during the off-season. Wood Decl. at Ex. A, 10.21.2023 Clark Report at pp. 20-24, Table 5. For each of these subsets of usage, Dr. Clark provided a range of exposures which he derived "based upon [his] professional experience as a toxicologist; and, based upon the variance of usage patterns expected normally by an individual." *Id.* at p. 21. Specifically, "[t]o be conservative in [his] analysis [he] assumed the minimum amount of exposure was equal to one half (50 percent or 50%) of the lowest value reported by Mr. Bulone based upon variance of his usage practices." *Id*. at pp. 20-21. Dr. Clark's mid-value of exposure "was assumed to be the lowest value reported by Mr. Bulone." *Id*. at p. 21. In other words, if Mr. Bulone described spraying Roundup every 4-5 days, Dr. Clark assumed the lower frequency (one exposure event every 5 days). *See* Wood Decl. at Ex. A, 10.21.2023 Clark Report at p. 21. Likewise, if Mr. Bulone described spraying for 60 to 75 minutes per event, Dr. Clark assumed the lower spray duration of 60 minutes. *See id*. Dr. Clark's max-value of exposure assumed plus 25% from the lowest value reported by Mr. Bulone, again to account for variance in usage practice. *See id.*

Because Mr. Bulone testified to not spraying when it was raining, Dr. Clark reduced Mr. Bulone's exposure days based on meteorological data to account for any rain days. *See* Wood Decl. at Ex. I, Bulone Dep. Tr. at 70:7-16; *see* Wood Decl. at Ex. D, 10.30.23 Clark Dep Tr. at 8:21-9:9; *see* Wood Decl. at Ex. A, 10.21.2023 Clark Report at pp. 16-17. In an effort to be "very conservative" in his calculation, Dr. Clark assumed that if there was any precipitation reported on any part of a day, Mr. Bulone would not have sprayed. *See* Wood Decl. at Ex. D, 10.30.23 Clark Dep Tr. at 8:21-9:9.

Once the range of hours of Mr. Bulone's exposure duration was calculated for each subset

5
PLAINTIFF'S RESPONSE TO MONSANTO'S MOTION TO EXCLUDE DR. J. CLARK

of usage, Dr. Clark added up the total hours and divided them by 8-hour work days to calculate the exposure day used in relevant epidemiological studies. Wood Decl. at Ex. A, 10.21.2023 Clark Report at p. 25. Dr. Clark concluded as follows:

> 1. Based on Mr. Bulone's testimony, it is clear that he used Roundup® herbicide formulations that contained glyphosate for a significant amount of time to control weeds at his residence on Pawleys Island and at his workplace – the Wedgefield Plantation golf Course in Georgetown, South Carolina.
>
> 2. Mr. Bulone's exposure to glyphosate was equivalent to between 42.15 to 105.41 days of spraying.

*Id*. at p. 26.

### III.  STANDARD OF REVIEW

Mr. Bulone's case is part of the MDL alleging that the carcinogenic qualities of the glyphosate-based herbicide (GBH) Roundup cause NHL. In this MDL, the Court has held that "for questions of federal law, such as the admissibility of expert testimony under *Daubert*, Ninth Circuit law will govern regardless of where a case originated." Doc. 4549, Pretrial Order No. 158: *Daubert* Choice of Law, MDL No. 2741, July 10, 2019, at. 1. Consistent with this pretrial order, Plaintiff focuses his response on relevant Ninth Circuit precedent. *See id*.

In the Ninth Circuit (and throughout the federal courts), Federal Rule of Evidence 702 supplies the standard for the admissibility of scientific evidence. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1055 (9th Cir. 2003). And in *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court charged district courts with a gatekeeping role to ensure that such scientific evidence is relevant and reliable. *See id*. The inquiry under Rule 702 and *Daubert* "is flexible and should be applied with a 'liberal thrust' favoring admission." *Hardeman v. Monsanto*, 997 F.3d 941, 960 (9th Cir. 2021) *quoting Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017). Ultimately, "the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of

the adversary system . . . to 'attack[] shaky but admissible evidence.'" *Wendell*, 858 F.3d at 1237 *quoting Daubert*, 509 U.S. at 596 (alteration in original).

A key principle of Rule 702 and *Daubert* is that they were intended to relax traditional barriers to admission of expert opinion testimony. *Daubert*, 509 U.S. at 588. Courts are accordingly in agreement that Rule 702 mandates a liberal standard for the admissibility of expert testimony. As the Advisory Committee to the 2000 amendments to Rule 702 note, with apparent approval, "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee note (2000).

### IV. ARGUMENTS & AUTHORITIES

**A. Dr. Clark's Reliance on the Sworn Deposition Testimony and Interview of Mr. Bulone is Sound and Reasonable in the field of Toxicology.**

Monsanto's first criticism of Dr. Clark's exposure days opinions is that he relied on the deposition testimony and interview of Mr. Bulone. Def.'s Mot. at 13. Monsanto takes issue with the fact that "Dr. Clark simply assumed that Plaintiff's memory in both his deposition and interview was accurate and that his exposure stories were correct." Def.'s Mot. at 3. Monsanto further complains that "Dr. Clark did nothing to investigate or verify that Plaintiff's claimed exposures were reasonable, accurate, or even possible through any other source." *Id.*

These criticisms, however, are baseless. Monsanto cites to no authority that sworn deposition testimony of an eyewitness is improper data for an expert to rely on. In fact, experts for both plaintiffs and Monsanto in this litigation consistently rely upon deposition testimony in forming their opinions. *See* Wood Decl. at **Exhibit K**, Transcript of Proceedings, *Pilliod et al. v. Monsanto Company*, JCCP No. 4953, Case No RG17862702, dated April 11, 2019, 3104:1-9; 3108:2-5; 3241:3-20 (Plaintiffs' toxicology expert Dr. William Sawyer testifying he relied upon the deposition and interview of Plaintiff in assessing exposure); Wood Decl. at **Exhibit L**, Transcript of

Proceedings, *Pilliod et al. v. Monsanto Company*, JCCP No. 4953, Case No RG17862702, dated April 30, 2019, 4609:7-4610:2; 4640:14-22 (Monsanto's industrial hygienist expert Dr. Robert Phalen testifying he relied upon the deposition of Plaintiff); Wood Decl. at **Exhibit M**, Expert Report of Dr. Richard Van Etten ("Van Etten Report"), p. 39-40, 79 (Monsanto expert Dr. Richard Van Etten identifying that he relied upon the deposition of Mr. Bulone in the instant case). Monsanto's own Industrial Hygienist assessing exposure in other Roundup cases, Dr. Brentley Olive, has further confirmed that interviewing a witness "could be used to gain information" and, scientifically, had no criticism of Dr. Clark conducting an interview of a Roundup plaintiff as a part of formulating his exposure opinions in the case.  Wood Decl. at **Exhibit N**, Deposition of Dr. Brentley Olive, *McCostlin v. Monsanto*, 19SL-CC03421, June 14, 2023, at 113:14-114:14; *id*. at 125:3-14.

Federal Rule of Evidence 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

FED. R. EVID. 703.

"[C]hallenges to the factual basis of an expert's opinions 'go to the weight of the evidence, not to its admissibility.'" *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1034 (S.D. Cal. 2023) (citing *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015)). "But an argument that an expert should have addressed different evidence "at best, goes to the weight or credibility of [the expert's] analysis, not its admissibility." *Id*. at 1033 (citing *Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-220, 2020 WL 2543814, at *7 (C.D. Cal. Jan. 10, 2020)).  Furthermore, "[t]he relative weakness or strength of the factual underpinnings of the

expert's opinion goes to weight and credibility, rather than admissibility." *San Francisco Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1085, 1095–96 (N.D. Cal. 2022) (citing *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987), *opinion modified on reh'g*, 866 F.2d 318 (9th Cir. 1989)).

Monsanto has presented no evidence as to why Mr. Bulone's deposition testimony is not reliable and has failed to identify a single example of an inaccurate or unreliable statement within that testimony. Monsanto has also failed to present any argument that Mr. Bulone's deposition testimony is not sufficiently tied to the facts of the case. This Court should not entertain Monsanto's baseless conjecture that Mr. Bulone's sworn testimony is unreliable or unsuitable for Dr. Clark to consider when forming his opinions in this case.

### B. Dr. Clark's Exposure Calculations are Admissible Under Rule 702.

Monsanto criticizes Dr. Clark's Exposure Days calculations on the basis that 1) Dr. Clark "based his opinions in part on the maximum exposure amount", 2) "Dr. Clark has no reliable basis for converting Plaintiff's claimed exposures to the equivalent of an eight-hour workday," 3) "Dr. Clark's comparison of Plaintiff's alleged 'exposure hours' to alleged thresholds from these studies is unreliable because he failed to establish that Plaintiff's spraying habits were even remotely similar to the spraying habits of the professional applicators and farmers in those studies[,]" and 4) Dr. Clark's exposure days assessment is "based on simple math" that the "jurors in this case can easily add up". Def.'s Mot. at 3-6. These criticisms fail when evaluated under scrutiny, do not warrant the exclusion of Dr. Clark's exposure day calculations, and should be rejected.

#### 1. Dr. Clark's Inclusion of Maximum Exposure Amount in his Exposure Calculation Range is Reasonable and Based on his Expertise.

Monsanto's criticism of Dr. Clark's calculation of exposure days is entirely attorney argument, without any expert or professional foundation. *See* Def.'s Mot. at 3-6. Monsanto has

9
PLAINTIFF'S RESPONSE TO MONSANTO'S MOTION TO EXCLUDE DR. J. CLARK

failed to identify any scientific reasoning why it would be improper for Dr. Clark to "bas[e] his opinions in part on the maximum exposure amount" or any substantiation for its claim that Dr. Clark's "unscientific approach resulted in rank overestimation of Plaintiff's exposure days." Def.'s Mot. at 3-5.  Furthermore, Monsanto conveniently omits any mention of Dr. Clark's inclusion of a minimum exposure amount in his provided exposure range, wherein he 1) took the lowest frequency and duration described by Mr. Bulone for each subset of usage, and 2) further divided the exposure amount by half to account for any potential variance in Mr. Bulone's usage practices.  *See* § II.B.2, *supra*.  Furthermore, Dr. Clark explained at his deposition that he has based his calculation of a minimum and maximum range of exposure on his "professional judgement and experience of 30 years of doing these dose reconstructions" and that it is "a method that over time [he has] seen generally accepted" from other toxicologists."  *See* Wood Decl. at Ex. D, 10.30.2023 Dep. Tr. of Dr. Clark at 47:2-19.

Even if Dr. Clark's calculations about Plaintiff's extensive Roundup usage and exposure were inaccurate, which they are not, such inconsistencies go to the weight, rather than the admissibility, of his testimony.  *See Walters v. McCormick*, 122 F.3d 1172, 1175 (9th Cir. 1997) (inconsistencies in testimony of victim went to weight that trier of fact should accord testimony, and not its admissibility.); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1028 (N.D. Cal. 2013) (Inaccurate calculations go to weight of testimony rather than admissibility). It is well-recognized that "[w]hile 'precise information concerning the exposure necessary to cause specific harm [is] beneficial, such evidence is not always available, or necessary, to demonstrate that a substance is toxic . . . and need not invariably provide the basis for an expert's opinion on causation.'" *Clausen v. M/V NEW CARISSA,* 339 F.3d 1049, 1059 (9th Cir. 2003), *as amended on denial of reh'g* (Sept. 25, 2003)

Finally, it is worthwhile to note that Monsanto unsuccessfully moved to exclude Dr. Clark's

testimony regarding, *inter alia*, his inclusion of a maximum exposure amount when providing his calculated range in the Roundup case *McCostlin v. Monsanto* in St. Louis County, Missouri. *See* Wood Decl. at **Exhibit O**, Order Concerning Defendant Monsanto Company's Motions to Exclude Experts ("*McCostlin* Order on Monsanto's Mot to Excl. Experts"), *McCostlin v. Monsanto*, 19SL-CC03421, Sept. 5, 2023, at p. 22. In that case, the Court permitted Dr. Clark's exposure opinions, including his calculation of a maximum, and found that:

> Dr. Clark is qualified to offer opinions in this case based on his education and experience in environmental health science and academia. He used reliable methods to formulate his opinions, including his review of Mr. McCostlin's sworn deposition testimony and interview. Consequently, Dr. Clark may testify that Mr. McCostlin's exposure to Roundup was above the threshold values in the dose-metric studies but not that such dosage causes cancer.

*See id.* at p. 24.

Dr. Clark's calculation of a range of Mr. Bulone's exposure is based on his 30 years of experience as a toxicologist and history of performing dose reconstructions, including dermal dose assessments. His inclusion of a maximum within his range of calculated exposure is based on a reliable methodology, rooted in his decades of experience, and thus admissible.

### 2. Exposure Days is a Reliable Metric and Accepted within Scientific Literature for the Measurement of Exposure to GBH.

Monsanto contests Dr. Clark's selection of exposure days as the form of measurement for Mr. Bulone's exposure to Roundup. Within his report, Dr. Clark described exactly why he calculated exposure in the form of exposure-days: "[t]he methodology used to calculate Mr. Bulone's glyphosate exposures is the same as that employed within the generally accepted human epidemiological studies of glyphosate applicators, which employed ever/never-use and exposure-day metrics." *See* Wood Decl. at Ex. A, 10.21.2023 Clark Report, at p. 2.

Across the epidemiological literature regarding glyphosate and cancer—including the studies that Monsanto and its experts most frequently cite—scholars have measured GBH exposure

in terms of exposure days. *See In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018) (Denying Monsanto's Motion to Exclude Plaintiffs' causation experts after reviewing several epidemiological studies which all utilized exposure days and were deemed reliable). A key epidemiological meta-analysis of major studies reviewing GBH exposure and NHL development, Zhang 2019, identifies those studies it considered and specifically notes the use of exposure days as a metric used repeatedly. *See* Wood Decl. at **Exhibit P**, Zhang L, Rana I, Shaffer RM, Taioli E, Sheppard L., *Exposure to glyphosate-based herbicides and risk for non-Hodgkin lymphoma: A meta-analysis and supporting evidence*, Mutat Res Rev Mutat Res. 2019 Jul-Sep; 781:186-206. doi: 10.1016/j.mrrev.2019.02.001. Epub 2019 Feb 10. PMID: 31342895; PMCID: PMC6706269 ("Zhang 2019") at 25, Table 1 at 189-193. As one example, Andreotti *et al.*, has "exposure level" described as follows: "Exposed: Quartiles 1-4 calculated by multiplying **lifetime exposure days** by an intensity score." *Id.*, Table 1 at 189 (emphasis added). Monsanto's argument that Dr. Clark has relied on "cherry-picked literature" to deduce the appropriate form of measurement fails when one considers that both Dr. Clark and Monsanto's medical expert, Dr. Richard Van Etten ("Dr. Van Etten"), reviewed and considered both *Zhang* 2019 and *Andreotti et al* in their work on this case. Wood Decl. at Ex. A, 10.21.2023 Clark Report at pp. 3, 20; Wood Decl. at Ex. H, Clark MCL at pp. 1, 8; Wood Decl. at Ex. M, Van Etten Report, pp. 26-27, 35.

Furthermore, exposure days has been the selected method of measuring an individual's exposure to GBH throughout the Roundup litigation and its use has been permitted in this court and many others. *See Johnson v. Monsanto Co.*, 2018 Cal. Super. LEXIS 37061, *4 (Cal. Super. 2018); *Hardeman v. Monsanto* (*In re Roundup Prods. Liab. Litig.*), MDL No. 2741, 2019 U.S. Dist. LEXIS 116638 (N.D. Cal. July 12, 2019) *70-1; *Pilliod v. Monsanto Co.*, 67 Ca. App. 5th 591, 609 (2021); Doc. 51, Amended Pretrial Order No. 201: Order Re Motion to Exclude Testimony of Dr. Sawyer, Case No.: 3:16-md-02741-VC (Wave 1 Cases), MDL No. 2741, Jan.

22, 2020 (allowing Dr. Sawyer to testify in 14 Wave 1 cases in this MDL, including testimony quantifying plaintiffs' exposure to Roundup utilizing exposure days.); Wood Decl. at Ex. O, *McCostlin* Order on Monsanto's Mot to Excl. Experts, at p. 22-24.

Therefore, Dr. Clark's selection of exposure days as the measure of exposure for Mr. Bulone is reasonable and appropriate given the accepted science on the subject and his opinions stemming from that selection should not be excluded.

### 3. **Monsanto seeks to Impose Inapplicable Standards to Dr. Clark's Exposure Metric.**

Monsanto further argues for the imposition of the Texas causation standard, claiming Dr. Clark is required to show a similarity between the exposure of the Plaintiff and the epidemiology studies relied upon to derive the exposure assessment methodology used in determining causation. Def.'s Mot. at 5, citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997). Plaintiff disputes that the *Havner* standards apply to the instant case, where there is no evidence calling for the application of Texas law, and note that Monsanto has failed to show that the Texas causation standard imposed by *Havner* is mandatory or even persuasive authority.[1] Still, it is clear that Mr. Bulone's exposure to GBH is patently similar to those in the epidemiological studies evaluating GBH exposure: 1) Mr. Bulone's sworn testimony establishes that he undisputedly used Roundup, a GBH; and 2) the sworn testimony of Plaintiff's causation expert, Dr. Marc Braunstein, establishes that Mr. Bulone's exposure level was comparable to or greater than those observed in GBH applicators in the epidemiologic studies associating GBH usage to NHL. *See* Wood Decl. at Ex. I, Bulone Dep. Tr., at 22:18-24:6; Wood Decl. at Ex. M, Van Etten Report, p. 39-40.; *see* Wood

---

[1] Dr. Clark is not a causation expert and does not intend to offer causation opinions at trial, as made clear from his deposition and report. *See* Wood Decl. at Ex. C, Clark Dep. Tr. at 31:21-24; and Ex. A, 10.21.2023 Clark Report at p. 2.

Decl. at **Exhibit Q**, Deposition Transcript of Marc J. Braunstein, M.D., October 24, 2023 ("Braunstein Dep. Tr."), 62:10-63:9.

While Plaintiff disagrees that a showing of similarity under *Havner* is required, it is undeniable that Dr. Clark's calculations of Plaintiff's exposure to Roundup in an exposure-days format will prove useful to the jury when the *very same* form of exposure measurement is used in many of the key epidemiological studies addressing Roundup exposure. *See* Wood Decl., at Ex. P, Zhang 2019, Table 1, 46-51. Furthermore, these very epidemiological studies have been used repeatedly in prior Roundup litigation as examples of the relevant science. *Compare* Doc. 2799, Pretrial Order No. 85: Denying Monsanto's Motion for Summary Judgment on Specific Causation, MDL No. 2741, Feb. 24, 2019, at p. 3 (discussing De Roos 2003); *with* Wood Decl. at Ex. A, 10.21.2023 Clark Report, at p. 3. Therefore, Dr. Clark's opinions should not be denied on this basis.

### 4. Dr. Clark's Calculation of Exposure Days is Specialized Knowledge and Would be Helpful to the Jury.

Monsanto's argument that Dr. Clark's exposure days calculations should be excluded for being "simple math" fails. "In its role as gatekeeper, the trial court 'is not tasked with deciding whether the expert is right or wrong, just whether his [or her] testimony has substance such that it would be helpful to a jury.'" *McMorrow v. Mondelez Int'l, Inc.,* No. 17-CV-2327-BAS-JLB, 2021 WL 859137, at *2 (S.D. Cal. Mar. 8, 2021) (citing *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969-70 (9th Cir. 2013)).

Monsanto does not dispute that Dr. Clark possesses specialized knowledge regarding toxicology, specifically in assessing toxic exposure. *See generally*, Def.'s Mot. As Dr. Clark outlined in his report, he compiled Mr. Bulone's extensive Roundup exposure for four different subsets of usage, with unique frequencies and durations, and incorporating meteorological data to account for no usage during rain. Wood Decl. at Ex. A, 10.21.2023 Clark Report at pp. 20-24, Table

5. Such a detailed calculation, based on expertise, can hardly be interpreted as "simple math" for a juror. Furthermore, there is no "implicit requirement in Federal Rule of Evidence 702 that [an] expert make complicated mathematical calculations." *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 4008822, at *6 (W.D. Wash. Aug. 5, 2013) *citing WWP, Inc. v. Wounded Warriors Fam. Support, Inc.,* 628 F.3d 1032, 1040 (8th Cir. 2011) (holding that district court did not abuse its discretion in failing to exclude expert testimony that represented "an exercise in basic math using simple deductive reasoning").

Dr. Clark's testimony regarding his calculation of exposure days will be helpful information to the jury not only to quantify Mr. Bulone's exposure in a metric appropriate for the facts of the case and relevant human epidemiology, but also to explain the underlying principles regarding such an exposure analysis and their real-world implications in this case. Since Dr. Clark's exposure day calculations are rooted in reliable science, are the very same metrics used by accepted human epidemiological studies on GBH, and since those calculations will prove useful and informative to the jury, Monsanto's motion to exclude those calculations should be rejected.

## V.   CONCLUSION

As set out above, Dr. Clark is qualified to opine on toxicology, his expertise is relevant to the key issues of exposure in this matter, he relies on evidence central to this matter, and his methodology in forming his opinions is sound and reliable. Accordingly, Dr. Clark's testimony and opinions are admissible, and Defendant's Motion should be denied.

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Monsanto's Motion to Exclude or Limit the Opinion Testimony of Plaintiffs' Expert James J. Clark, Ph.D.

Date: January 8, 2023                                        Respectfully submitted,

**NACHAWATI LAW GROUP**

|   |   |
|---|---|
| By: | /s/Erin M. Wood |
|   | Gibbs C. Henderson |
|   | Illinois Bar No.: 6314687 |
|   | Texas Bar No.: 24041084 |
|   | *Pro Hac Vice* |
|   | Erin M. Wood |
|   | Texas Bar No.: 24073064 |
|   | *Pro Hac Vice* |
|   | **NACHAWATI LAW GROUP** |
|   | 5489 Blair Rd. |
|   | Dallas, TX 75231 |
|   | Telephone: (214) 890-0711 |
|   | Facsimile: (214) 890-0712 |
|   | ghenderson@ntrial.com |
|   | ewood@ntrial.com |
|   | litigation@ntrial.com |
|   | *Attorney for Plaintiff* |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2024, a true and correct copy of Plaintiff's Response to Monsanto's Motion to Exclude Testimony of Dr. James Clark, was served on all counsel of record via email.

By: /s/Erin M. Wood
Attorney for Plaintiff

16
PLAINTIFF'S RESPONSE TO MONSANTO'S MOTION TO EXCLUDE DR. J. CLARK