Steven N. Williams (SBN 175489)
**STEVEN WILLIAMS LAW, P.C.**
201 Spear Street, Suite 1100
San Francisco, CA 94105
Telephone: 415-697-1509

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No.: 3:16-md-02741-VC |
| LOIS ROLISH, | |
| Plaintiff, | **PLAINTIFF LOIS ROLISH'S OPPOSITION TO MONSANTO'S MOTION TO EXCLUDE THE TESTIMONY OF DR. CHRISTOPHER ROSENBAUM** |
| v. | |
| MONSANTO COMPANY, | |
| Defendant. | DATE: MARCH 1, 2024 |
| | TIME: 10:00 A.M. |
| 3:20-cv-01421-VC | LOCATION: COURTROOM 4, 17TH FLOOR |

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
| III. | LEGAL ARGUMENT | 7 |
| | a. Legal Standard | 7 |
| | b. Dr. Rosenbaum is Equally Qualified as Monsanto's Expert Dr. Bakst to Render a Specific Causation Opinion | 7 |
| | c. Dr. Rosenbaum's Specific Causation Opinions Should Not be Excluded | 10 |
| IV. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Cases**

*Alaska Rent-a-Car, Inc. v. Avis Budget Group, Inc.,* 738 F.3d 960 (9th Cir. 2013) . . . . . . . . . . . . 7

*Caldwell v. City of San Francisco,* No. 12-cvb-01892-DMR, 2021 WL 1391464

    (N.D. Cal. Apr. 13, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hardeman v. Monsanto Company,* 997 F.3d 941, 962 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . 7

*Lucido v. Nestle Purina Petcare Co.,* 217 F. Supp.2d 1098 (N.D. Cal. 2016) . . . . . . . . . . . . . . . . 9

*Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193 (9th Cir. 2014) . . . . . . . . . . . . . . . . . 7

*Murray v. Southern Route Maritime SA,* 870 F.3d 915 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . 7

*In re Roundup Products Liability Lit.,* 390 F. Supp. 3d 1102 (N.D. Cal. 2018) . . . . . . . . . . . . . . . 7

*Wendell v. GlaxoSmithKline LLC,* 858 F.3d 1227 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . .

**Statutes and Rules**

Federal Rule of Evidence 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ***passim***

I.     INTRODUCTION

Defendant Monsanto's motion to prevent Plaintiff Lois Rolish from presenting the testimony of Dr. Christopher Rosenbaum should be denied because Dr. Rosenbaum meets the standards governing the admission of expert testimony. Contrary to Defendant's arguments, Dr. Rosenbaum (1) is qualified to offer the opinions, (2) undertook his own analysis and does not just "parrot" other references and sources and (3) applied a reliable and accepted methodology in coming to his conclusions.

Defendant's criticisms of Dr. Rosenbaum are appropriate for cross-examination. In addition, much of what Defendant complains of concerning Dr. Rosenbaum is equally true of its own expert in this case, Dr. Richard Bakst. In all meaningful respects these two expert witnesses are equally qualified and they propose to do the same things. Both occasionally treat patients with non-Hodgkins' lymphoma. Neither does so as a regular part of their practice. Dr. Bakst spends most of his time providing radiation treatment to patients suffering from cancers related to the human papilloma virus (non-Hodgkin's lymphoma is not one of those cancers) while Dr. Rosenbaum's primary work is as an emergency room physician. Neither has written or published concerning non-Hodgkins' lymphoma. Both have reviewed the literature and reports of other experts, including other experts in this litigation, to form their general causation opinions. Neither are "weed experts" or regulatory experts.

Dr. Rosenbaum reviewed more records and documents than did Dr. Bakst in forming his specific causation opinions, and Dr. Rosenbaum interviewed Plaintiff and her husband to identify potential alternate causes of her illness. Dr. Bakst's opinions, by contrast, seem to rest on a fundamental lack of awareness of what type of non-Hodgkin's lymphoma Plaintiff had – B-cell lymphoma, follicle center origin – a readily ascertainable fact that had been testified to at a deposition taken by Defendant in this case just two weeks before Dr. Bakst issued his report.

Indeed, during his deposition Dr. Bakst was often unable to remember much, if any, basis for his opinions and instead repeatedly asserted *ipse dixit* opinions. Stripped of invective and hyperbole, Defendant's motion boils down to arguments that go to the weight that a fact-finder should give to Dr. Rosenbaum's opinions, and are not a basis for exclusion.

## II.     BACKGROUND

Plaintiff Lois Rolish filed her complaint on February 10, 2020, in the Central District of California. Declaration of Steven N. Williams submitted herewith (hereinafter "Williams Decl."), Exh. 1.  The case was subsequently transferred to MDL 2741 as case no. 20-cv-1421-VC. Plaintiff alleges that her use of and exposure to Roundup and exposure to its active ingredient glyphosate was a substantial factor in causing her b-cell non-Hodgkins lymphoma. Ms. Rolish alleges that she was exposed to Roundup in three principal ways. First, she spent years working as a teacher in Buena Vista, California, where she routinely walked on and through trails that were created through the application of Roundup on the school grounds. Second, her husband, who worked in the same school district as Plaintiff, applied Roundup to school grounds as part of his job. He did not use protective equipment and Ms. Rolish would wash his clothes after his work day. Third, she personally used Roundup at her home for gardening and weed control. Ms. Rolish was diagnosed with b-cell non-Hodgkin's lymphoma in 2005. See generally Exh. 1, Complaint; Exh. 3,[1] Rosenbaum Report; Exh. 4, Deposition testimony of Christopher Rosenbaum at 172:11 – 175:6.

Dr. Christopher Rosenbaum is the Director of Medical Toxicology at Newton-Wellesley Hospital in Newton, Massachusetts. Exh, 2, Rosenbaum C.V.  He is board certified in Medical Toxicology and Emergency Room medicine. Exh. 4, Rosenbaum Depo. at 31:11-14. Medical Toxicology "is a field of medicine dedicated to the evaluation and treatment of poisoned patients [

---

[1] This and all subsequent "Exh. __" references are to Exhibits to the Williams Decl.

] this includes adverse health effects of medications, occupational and environmental toxins, and biological agents. . . . [t]his entails expertise in many areas, such as: . . . exposure to industrial chemical products and environmental hazards such as: pesticides."[2] Dr. Rosenbaum's experience in medical toxicology goes back at least 15 years Exh. 3, Rosenbaum C.V., at 2 and continues to this day. He began studying pesticides in approximately 2008. Exh. 4, Rosenbaum Depo. at 34:17-20. He is a member of the American College of Emergency Physicians and the American College of Medical Toxicology. Exh. 4, Rosenbaum Depo. at 69:19-70:2.

Dr. Rosenbaum is a practicing physician whose primary job is treating patients in the emergency room at Newton-Wellesley Hospital in Newton, Massachusetts. Dr. Rosenbaum spends 95% of his time treating patients, and 5% or less on consulting in cases like this. Exh. 4, Rosenbaum Depo. at 24:2-8. He has treated patients with non-Hodgkin's lymphoma. Exh. 4, Rosenbaum Depo. at 38:21-39:5; 40:2-17. He describes his ordinary practice as follows:

> So I work in the emergency room. I take care of all patients, pediatric and adult. I work days, evenings, overnights, weekends, holidays. It's a full time complement of clinical work. I work more than 40, 50 hours a week in that capacity. In addition, I am on call as the director for medical toxicology for consultations for any and all toxic exposures for the hospital that I work at and service, so if anyone has a toxicity or an exposure question, they can call me at any time and I help them through that.[3]

Exh. 4, Rosenbaum Depo. at 36:18-23.

Dr. Rosenbaum interviewed Ms. Rolish and her husband. Exh. 3; Rosenbaum Report, Materials considered list, Exh. 4, Rosenbaum Depo. at 172:11 – 175:6 (reviewing potential risk factors that he discussed during interview with Ms. Rolish and considered in his analysis, including her work history, exposure history, past medical history, husband's work history, family history of cancer and whether she used tobacco or alcohol). He has reviewed all available medical

---

[2] https://www.acmt.net/about-medtox/.
[3] Indeed, Dr. Rosenbaum had worked a night shift prior to his deposition. Exh. 4, Rosenbaum Depo at 233:12-18.

3

records relating to Ms. Rolish. Exh. 3, Rosenbaum Report, materials considered list. He did PubMed and Google Scholar searches concerning the subject matters on which he is offering opinions. Exh. 4, Rosenbaum Depo. at 17:23-18:2. He has reviewed materials including all of Monsanto's Wave Six expert disclosures.  Exh. 3, Rosenbaum Report, Materials considered list. He performed a differential diagnosis as part of his analyses, considering the potential risk factors for non-Hodgkin's lymphoma that he could identify based on his review of Plaintiff's medical records and his interview with her and her husband. He intends to offer the opinions that Plaintiff's exposure to Roundup was a substantial factor in causing her non-Hodgkin's lymphoma. Exh. 3, Rosenbaum Report; Exh. 4, Rosenbaum Depo. at 78:1-5; 14-20; 112:5-14. His opinions have a reasonable basis and should not be excluded.

      Monsanto's expert Dr. Richard Bakst practices radiation oncology at Mt. Sinai hospital in New York. Exh. 8, Bakst Depo. at 8:7-13. In addition, he runs a consulting company where he offers his services as a consultant and as an expert witness. This is his third Roundup case offering testimony for Monsanto. He estimates that roughly 10% of his income comes from his consulting work, the remainder from his medical practice. Exh. 8, Bakst Depo at 64:18-23. The only writing that he claims to have done concerning the causes of non-Hodgkin's lymphoma was apparently a single case involving a patient who developed anaplastic large cell lymphoma -- a "rare type of non-Hodgkin lympoma (NHL) and one of the subtypes of T cell lymphoma"[4] -- and the potential relationship between that illness and breast-implants. Exh. 8, Bakst Depo. at 65:2-14, Exhibit b to expert report, citing 12 and 13 ("A rare case of a transgender female with breast implant-assocated anaplastic large cell lympoma treated with radiotherapy and a review of the literature.").

---

[4] https://lymphoma.org/understanding-lymphoma/aboutlymphoma/nhl/anaplastic-large-cell-lymphoma/.

4

The majority of his practice is spent treating patients who have been diagnosed with cancer by other doctors, predominantly patients suffering from cancers related to the human papilloma virus. ("I am a leading expert in HPV-related head and neck cancers . . . "). While he also states that he "subspecialize[s] in radiation treatment for lymphomas and leukemia" he does not represent that he diagnoses such cases, nor does he determine the causes of such cases. Exh. 7, Bakst CV(Exhibit B to Expert Report at pp. 1-25).

Dr. Bakst issued a report in this case dated October 24, 2023. Exh. 7, Bakst Report. Dr. Bakst's general causation opinion is that Roundup cannot cause cancer in humans. This opinion is based on his review of other people's work, not his own work, and is unshakeable no matter what any other person might think or say. Dr. Bakst offers speculative testimony concerning specific causation and various risk factors before coming to the conclusion that Plaintiff's non-Hodgkin's lymphoma was "most likely caused by random DNA replication errors." Exh. 7, Bakst Report at p. 17. Dr. Bakst's report and opinions appear to be premised on a lack of knowledge of available facts, though the vagueness of his expert disclosure and his lack of memory at deposition make it impossible to know whether his mistakes were conscious or reckless. For example, in answering the question of whether the various risk factors that he posits might have been involved in Plaintiff's cancer, Dr. Bakst testified:

> So the first thing I just wanted to say about her non-Hodgkin lymphoma was that the subtype of B-cell non-Hodgkin lymphoma was not provided, meaning it was not clear whether she had a follicular lymphoma or a diffuse large B-Cell lymphoma or a Burkitt lymphoma based on the information that I have. So I think that's important to note.

Exh. 8, Bakst Depo, 18:9-15. However, that information was readily available to Dr. Bakst from documents produced to Monsanto and had been identified as part of the materials considered by Dr. Rosenbaum in forming his opinions in this case; it had also been the topic of a deposition taken by Defendant's counsel in this case just two weeks before he issued his report. The

5

following is from the deposition of Dr. Jack Jacoub, one of Plaintiff's treating physicians, taken in this case on October 11, 2023:

> Q: And what problems were you seeing Ms. Rolish for, according to this medical record?
>
> * * * * *
>
> A: So she had a B-cell lymphoma, follicle center origin. Okay. So it wasn't large B-cell lymphoma . . .

Exh. 5, Jacoub Depo. at 72:25-73:8 (examining Exhibit 6 to his deposition, a treatment record dated January 5, 2007 and bates numbered Rolish 000911-000913 and listed as one of the documents that Dr. Rosenbaum considered in forming his opinions in this case); Exh. 6, the Exhibit 6 from Dr. Jack Jacoub's deposition referenced in the immediately preceding testimony of Dr. Jacoub; Exh. 3 at page 9 (specifying bates range of 1 – 1599 as the first of many patient medical records and related documents that Dr. Rosenbaum relied upon).

Fundamental flaws like this permeate the work of Dr. Bakst. All of his proffered causes are speculative and neither his report nor his deposition testimony provide either a firm or clear basis for his opinions (e.g., unlike Dr. Rosenbaum's specificity about what documents he reviewed, Dr. Bakst simply says "Medical Records of Lois Rolish" with no further specification; his report cherry picks certain documents to make unjustified conclusions, and at deposition he was unable to recall with specificity what records it was that he was relying on). This vagueness – and perhaps impeachment of Dr. Bakst's veracity – is exemplified by the fact that when asked who prepared his list of materials that he relied on, he first – wrongly – claimed that he prepared it, then admitted he did not know who prepared it. Exh. 8, Bakst Depo. at 19:14-22:17. It is hard to understand how anyone could offer an opinion on how cancer was caused in someone they have never met when that same person cannot even say who wrote a report that they signed.

### III. LEGAL ARGUMENT

#### a. Legal Standard

The applicable legal standard is described in *In re Roundup Products Liability Lit.,* 390 F. Supp. 3d 1102, 1112-1113 (N.D. Cal. 2018):

> The Ninth Circuit has placed great emphasis on *Daubert*'s admonition that a district court should conduct this analysis "with a 'liberal thrust' favoring admission." *Messick* [*v. Novartis Pharmaceuticals Corp.*], 747 F.3d [1193] at 1196 [9th Cir. 2014] (quoting *Daubert I,* 509 U.S. at 588, 113 S. Ct. 2786). Accordingly, the Ninth Circuit has emphasized that the gatekeeping function is meant to "screen the jury from unreliable nonsense opinions, but not to exclude opinions merely because they are impeachable." *Alaska Rent-a-Car, Inc. v. Avis Budget Group, Inc.,* 738 F.3d 960, 969 (9th Cir. 2013). That is because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attaching shaky but admissible evidence." *Daubert I,* 509 U.S. at 596, 113 S. Ct. 2786; *see, e.g., Murray v. Southern Route Maritime SA,* 870 F.3d 915, 925 (9th Cir. 2017); *Wendell v. GlaxoSmithKline LLC,* 858 F.3d 1227, 1237 (9th Cir. 2017).
>
> This is still the law.
>
> [T]he district court . . . employed the correct legal standard for reliability when it admitted Hardeman's expert testimony. For instance, the district court's slight "deference to experts" with "borderline" . . . opinions" was proper under *Daubert*: "[T]he interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system . . . to 'attack[ ] shaky but admissible evidence.'" *Wendell* [*v. GlaxoSmithKline LLC],* 858 F.3d [1227] at 1237 [9th Cir. 2017] (quoting *Daubert*, 509 U.S. at 596) (alteration in original). The Supreme Court has not directed courts to follow a different rule since it first decided *Daubert* almost 28 years ago.

*Hardeman v. Monsanto Company,* 997 F.3d 941, 962 (9th Cir. 2021).

When these standards are properly applied, the result is that Defendant's motion should be denied.

#### b. Dr. Rosenbaum is Equally Qualified as Monsanto's Expert Dr. Bakst to Render a Specific Causation Opinion

Defendant makes a straw man argument to attack Dr. Rosenbaum's qualifications to offer an opinion in this case. This attack is unfair and without basis. Dr. Rosenbaum has a long history as an expert in the field of Medical Toxicology in addition to his practice as an emergency room physician. Exh. 2, Rosenbaum C.V. The discipline of Medical Toxicology involves the analysis of

issues directly pertinent to the issues in this case, and thus Dr. Rosenbaum is qualified to offer helpful expert testimony pursuant to Rule 702. The University of California, San Francisco, one of the nation's foremost medical schools, defines Medical Toxicology as follows:

> Medical toxicology focuses on the diagnosis, management, and prevention of poisoning due to drugs, occupational and environmental toxins, and biological agents. Examples of exposures commonly evaluated by medical toxicologists include acute drug overdoses, envenomations, ingestions of food borne or plant and mushroom toxins, hazardous exposures to chemical products, and the management of drug withdrawal syndromes. Medical toxicologists practice in a variety of professional settings including the direct treatment and consultation of acutely poisoned patients in emergency departments or intensive care units, poison control center management, industry and commerce, as well as government regulatory bodies.
>
> Medical toxicology is officially recognized as a medical subspecialty by the American Board of Medical Specialties. In July of 2000, the Accreditation Council for Graduate Medical Education (ACGME) established criteria for accreditation of medical toxicology fellowships. These criteria are rigorous and attempt to establish a baseline level of consistency in training among the various training programs.[5]

In fact, Dr. Rosenbaum has more experience and qualifications to offer opinions in this case than does Monsanto's expert Dr. Bakst, who offers both general and specific causation opinions. As Dr. Bakst testified and as is shown by his C.V., Exh. 7 (Exh. B to his Expert Report at pp. 1-25), nothing in his background prior to becoming a paid expert witness for Monsanto is particularly pertinent to his opinions here, certainly no more so than Dr. Rosenbaum who at least has studied and has expertise in the field of Medical Toxicology. Beyond that distinction, their backgrounds and the work they bring to bear here are remarkably similar. They both spend most of their time treating patients, they both formed opinions on general causation by reading the opinions and works of others, and they both offer opinions on specific causation based primarily on Plaintiff's medical records. The main difference between the two is their conclusions, and this

---

[5] https://emergency.ucsf.edu/medical-toxicology-fellowship#The-Subspecialty-of-Medical-Toxicology.

is not a basis to exclude Dr. Rosenbaum under Rule 702. The case relied upon by Monsanto, *Lucido v. Nestle Purina Petcare Co.,* 217 F. Supp.2d 1098, 1107 (N.D. Cal. 2016) is inapposite because the proposed testimony in that case was clearly outside of any area of expertise that a veterinarian would have. In this case, the proposed testimony is squarely within the discipline of medical toxicology.

Monsanto complains, for example, that Dr. Rosenbaum is not a "cancer biologist, geneticist, or lymphoma specialist." First, there is no black letter rule that he must be an expert in one of these specific disciplines in order to offer helpful opinions in this case; second, neither is Monsanto's expert Dr. Bakst (nor is Dr. Bakst an epidemiologist or an expert in genotoxicity, more criticisms lobbed at Dr. Rosenbaum). Again, Monsanto cites the Court to a case that offers no guidance here. *Caldwell v. City of San Francisco,* No. 12-cvb-01892-DMR, 2021 WL 1391464 (N.D. Cal. Apr. 13, 2021) involved a case where the proposed expert relied on "minimally supported assumptions" and offered "speculative testimony." *Id.* at * 7.  That is not the case here.

Monsanto's arguments continue in a similar mode in stating that Dr. Rosenbaum should not be permitted to offer opinions because he is not a "weed scientist" or expert in "pesticide labelling," because he has not offered opinions or taught classes about Roundup and cancer, because he has not specifically consulted patients about Roundup and cancer, etc. See motion generally at pp. 4-5. But, again, nothing says that an experienced doctor with a specialization in Medical Toxicology must do those things, and Defendant's expert Dr. Bakst has not done any of those things either. The supposed "extreme disconnect" that Defendant claims exists between Dr. Rosenbaum's opinions in this case and in his practice is illusory because it is based on a false premise, i.e., that the same issues presented in this case have been presented to him in his practice. Dr. Rosenbaum has demonstrated sufficient knowledge and expertise that he can read medical and scientific literature, just like Dr. Bakst. The fact that neither of them has actually been the one to

9

diagnose a patient with non-Hodgkin's lymphoma, or to tell a patient why they developed non-Hodgkin's lymphoma, or published an article about the relationship between Roundup and non-Hodgkin's lymphoma does not, by itself, disqualify either of them from testifying in this case.

### c. Dr. Rosenbaum's Specific Causation Opinions Should Not be Excluded

Defendant is simply wrong to say that Dr. Rosenbaum used no methodology. In fact, Dr. Rosenbaum's report cites to a large amount of material including the entirety of Plaintiff's medical records and interviews with the Plaintiff and her husband. Monsanto's claim that Dr. Rosenbaum is simply "parroting" this Court's March 2018 Order is not true and is misleading. Dr. Rosenbaum did review the March 2018 Order and the reports discussed therein, and he also reviewed Monsanto's Wave 6 expert reports which came well after March of 2018 in forming his opinions. Monsanto chose not to ask him about any of that at his deposition, yet now seeks to use that omission on their part to suggest that his analysis was limited to prior events. This is simply wrong.

Monsanto's real criticism seems to be that Dr. Rosenbaum did not explain enough of his work in his report or at his deposition, but that is far different from saying that he applied no methodology or no basis for his opinions. As to the complaint about his deposition testimony, it was certainly no different from Dr. Bakst who was largely unable to speak with specificity about anything that he had relied upon in forming his sweeping opinions in this case. This common issue is not a basis for exclusion.

Defendant's arguments are particularly strident in this section of their brief, claiming that Dr. Rosenbaum "did not analyze anything at all." Motion at 9. This is unwarranted. Dr. Rosenbaum analyzed the things he described in and listed in his report and in his deposition, and he used his experience, training and expertise to offer opinions based on his analysis and review. As set forth above, defendant's expert Dr. Bakst purported to offer opinions about Plaintiff's non-

Hodgkin's lymphoma without knowing readily-knowable facts. Dr. Bakst does not even know who prepared his own report. Dr. Rosenbaum made no such errors. Defendant's attacks are unjustified.

Dr. Rosenbaum considered Plaintiff's exposures to Roundup, exposures he considered significant, and offers the opinion that this exposure created a substantial risk of Plaintiff developing non-Hodgkin's lymphoma.  See Exh.3, Rosenbaum Report; Exh. 4, Rosenbaum Depo. at 78:1-5, 14-20; 110-14-21.

Defendant continues its misleading attacks in stating "[t]he record establishes definitively that Dr. Rosenbaum did not perform a proper differential diagnosis."  Motion at 12. This is not correct. It is a disagreement about analyses and conclusions, and it is an argument that Defendant should make to the fact-finder about the weight of Dr. Rosenbaum's opinions rather than a basis to exclude those opinions altogether.

The record shows that Dr. Rosenbaum reviewed all of the available medical records, and those are specifically set forth in Dr. Rosenbaum's list of materials he considered. Unlike Dr. Bakst, he was not mistaken – or in the dark – about what type of non-Hodgkin's lymphoma Plaintiff had. He asked Plaintiff and her husband numerous things to evaluate what he believed were the important and relevant risk factors. These included her work history, exposure history, past medical history, husband's work history, family history of cancer and whether she used tobacco or alcohol. Exh. 4, Rosenbaum Depo. at 172:11 – 175:6. Contrary to the claim that Dr. Rosenbaum did not consider her positive family history of cancer, he testified to the contrary. He testified that his analysis did not appear to show any first-degree relative with a history of hematopoietic cancer, and that he considered this in his analysis. Exh. 4, Rosenbaum Depo. at 217:21-219:8; this testimony was consistent with the approach of Plaintiff's treating physician Dr. Jack Jacoub who testified that it may have been of interest had Plaintiff had any family members

11

with hematologic cancers, but that there was not such history. Exh. 5, Jacoub Depo. at 67:24-69:10. He also considered her experience as a schoolteacher and occupational exposure. Exh. 4, Rosembaum Depo at 220:5-12.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to exclude the opinions of Dr. Christopher Rosenbaum should be denied. To the extent necessary, Plaintiff requests leave to address any deficiencies that the Court may identify.

Dated:  January 8, 2024                                   Respectfully Submitted,

STEVEN WILLIAMS LAW, P.C.

By: _____
STEVEN N. WILLIAMS

Steven N. Williams (SBN 175489)
**STEVEN WILLIAMS LAW, P.C.**
201 Spear Street, Suite 11000
San Francisco, CA 94105
Telephone: 415-697-1509
swillliams@stevenwilliamslaw.com


*Attorneys for Plaintiff*

\*

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing (NEF) to all counsel of record who are CM/ECF participants.

*Steven Williams*
_____
Steven N. Williams