**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843 | Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 | Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Turnoff v. Monsanto Company*, 3:19-cv-03837-VC | **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. SAMUEL BERKMAN**<br><br>Hearing:<br>Date:   March 1, 2024<br>Time:   10:00 a.m.<br>Place:   San Francisco Courthouse, Courtroom 4 – 17th Floor |

# INTRODUCTION

Monsanto's Motion showed that the Court should exclude the general and specific causation testimony of Dr. Berkman because he is not qualified to offer such opinions and his methodology is fundamentally flawed. Plaintiff's Opposition fails to refute this showing.

Dr. Berkman candidly admitted that he is not an expert on pesticides or herbicides, let alone Roundup, and has never researched or published any literature on Roundup exposure and NHL, including SMZL—Plaintiff's subtype of NHL. He also admits he is not an expert in epidemiology—the subject area upon which his general causation opinion is largely based. Thus, by his own admissions, Dr. Berkman is not qualified to offer the opinions he seeks to offer here.

Dr. Berkman's methodology for assessing general and specific causation is also unreliable. For his general causation opinion, Dr. Berkman wholly fails to personally engage with the literature he purports to rely on. And, as argued in Monsanto's Motion, his cherry-picked literature is scientifically unreliable in and of itself because it fails to adjust for confounding variables like other pesticide use—a reality that Plaintiff's Opposition fails to confront. Although Dr. Berkman claims to have performed a differential diagnosis to arrive at his specific causation opinion, Dr. Berkman neither properly rules in Roundup nor rules out other potential causes for Plaintiff's SMZL. He identifies no scientific literature linking Roundup to SMZL, ignores the concept of dose altogether, and hinges his opinion on ambiguous "exposure" estimates derived from Plaintiff's self-reported and inconsistent deposition testimony. Critically, Dr. Berkman concludes that Roundup must have caused Plaintiff's SMZL without meaningfully explaining how or why other alternative causes—such as Plaintiff's age, psoriasis, obesity, family history of cancer, and mutations—were not the sole cause of Plaintiff's SMZL. Dr. Berkman's results-driven methodology is inherently unscientific and should be excluded as unreliable.

For these reasons, and the reasons stated in Monsanto's Motion, this Court should exclude Dr. Berkman's testimony in its entirety.

# ARGUMENT

## I. Dr. Berkman Is Not Qualified To Opine On Causation.

In response to Monsanto's argument that Dr. Berkman is not qualified to offer general causation opinions in this case, Plaintiff focuses on Dr. Berkman's general experience as an oncologist. *See* Opposition at 5-6. Plaintiff emphasizes the length of time that Dr. Berkman has been an oncologist (since 1976) and a professor at the University of California Los Angeles, College of Medicine (since 1991), while simultaneously disparaging Monsanto's causation expert's age. *Id.* But Dr. Berkman's age and number of years as a professor and oncologist does not render him automatically qualified to offer the opinions he seeks to offer in this case.

"[I]t is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the *specific issues in the case*." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (emphasis added). This case centers on Plaintiff's claim that Roundup caused his SMZL, and Plaintiff has designated Dr. Berkman to opine on general and specific causation. By focusing on the sheer length of Dr. Berkman's general medical experience, Plaintiff obscures that Dr. Berkman specifically disclaimed having expertise in the matters at issue in this case during his deposition. Dr. Berkman admitted he is not an expert in pesticides or herbicides, including Roundup, and he has never researched or published any literature on glyphosate or Roundup exposure and NHL. Ex. B, Berkman *Turnoff* Dep. at 106:4-20; 106:24-107:2; 107:14-17. Nor has he published on marginal zone lymphoma. Ex. B, Berkman *Turnoff* Dep. at 107:3-13. Plaintiff does not attempt to counter these key admissions in his Opposition, tacitly acknowledging that Dr. Berkman lacks the expertise to offer expert opinions *in this case*.

Tellingly, Plaintiff's Opposition also fails to confront Dr. Berkman's admitted lack of expertise in epidemiology, Ex. B, Berkman *Turnoff* Dep. at 54:24-25 ("Q. You're not an epidemiologist? A. No."); 173:7-23 ("Q…..I believe you agreed with me earlier that you are not an epidemiologist, correct? A. Not an epidemiologist…."), which forms the backbone of his general causation opinion. Dr. Berkman's concession that he has no expertise in epidemiology dooms his testimony. *See e.g.*, *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1116 (N.D. Cal.

2018) (human epidemiology is "central to the general causation inquiry, and where such evidence exists, it must be addressed."). Ultimately, Plaintiff advances nothing more than general vagaries that Dr. Berkman's opinions are "based upon his extensive education, training, experience, knowledge, and expertise, as well as literature review and widely accepted medical and scientific principles" and his review of Plaintiff's medical records to support his argument that Dr. Berkman is qualified to opine on causation. Opposition at 5. This is insufficient under Rule 702 to establish his qualifications to opine on causation.

**II.    Dr. Berkman's Causation Opinions Are Unreliable.**

Dr. Berkman is not only unqualified to opine on causation, but his opinions on both general and specific causation should also be excluded because they are not based on a reliable methodology.

**A.    Dr. Berkman's General Causation Opinion Is Unreliable.**

Plaintiff claims that Dr. Berkman's general causation opinion is reliable because he "relied on the same literature that the MDL general causation experts relied upon to establish the link between NHL and human exposure to glyphosate." *Id.* at 6. However, Dr. Berkman does not meaningfully engage with any of the literature he cites. Indeed, a close review of Dr. Berkman's deposition testimony reveals that he deferred almost entirely to Dr. Weisenburger in deciding what epidemiological literature to rely on for his general causation opinion in this case. Ex. B, Berkman *Turnoff* Dep. at 249:1-14 ("Well, I mean – I chose – I chose the stuff that I thought was – basically showed elevated odds ratios and I took those and I think that these cases have been written in other articles by Weisenburger has mentioned these articles. He's an authority on this. And he also feels that these articles are significant and substantial. So, I mean, I – I felt that since they were in his article, and they were quoted by Zhang, that they were worth – that they were worth putting into my report").[1]

As this Court recently held in *Engilis v. Monsanto Co.*, No. 3:19-cv-07859-VC, general

---

[1] Plaintiff makes much of a single question-and-answer exchange during Dr. Berkman's deposition wherein he generally denied "relying on any other expert for any of [his] opinions in this case" in an attempt to argue that Dr. Berkman does not solely rely on other experts for his general causation opinion. Opposition at 3, 7 (citing Berkman *Turnoff* Dep. at 9:17-19). A review of Dr. Berkman's deposition testimony in its totality reveals the opposite.

causation experts who fail to "personally engage with and evaluate the scientific literature they rely on" are properly excluded.  *See In re Roundup Prods. Liab. Litig.*, Pretrial Order No. 288: Order Granting Motions to Exclude Experts Charles and Schneider, MDL No. 2741, Case No. 16-md-02741-VC (N.D. Cal. Nov. 15, 2023), at 1 [Dkt. No. 17504].  "For an expert to express an opinion that Roundup causes NHL, that expert must have engaged with the relevant literature enough to assess whether a study is credible, to explain why they relied on one study more than another, and to articulate how they reached their conclusion in the face of conflicting evidence."  *Id.* at 5.  Although Plaintiff contends that Dr. Berkman "reviewed and considered studies not favorable to his position," Opposition at 7, Dr. Berkman's report does not describe any of these studies.  Nor does Dr. Berkman explain how or why he decided to include the studies he cites over those "not favorable to his position."  Thus, his general causation opinion must be excluded.

Plaintiff likewise provides no convincing response to Monsanto's argument that Dr. Berkman's general causation opinion is based entirely on the results of cherry-picked epidemiological studies that lack scientific soundness.  Rather than engage Monsanto's argument that none of the studies Dr. Berkman relies upon adjust for confounders in the form of other pesticide use, *see* Motion at 5-6, Plaintiff does not even attempt to address it.  Opposition at 6-8.  As argued in Monsanto's Motion, Dr. Berkman's reliance on unadjusted data is a serious methodological flaw that warrants exclusion of his opinion.  Motion at 5-6.

Plaintiff also downplays Dr. Berkman's reliance on IARC in reaching his general causation opinion, contending that Dr. Berkman "cites to the Monograph only once…" in his report and "[t]he IARC Monograph plays a small part in Dr. Berkman's general causation opinion."  Opposition at 6-7; *see also id.* at 5 ("Dr. Berkman did not largely base his opinions on the Internal Agency for Research on Cancer…or its Monograph….").  In so arguing, Plaintiff ignores Dr. Berkman's deposition testimony, wherein he explained he concluded Roundup generally causes NHL based on IARC:  "I think there's enough evidence out there that, ***as the IARC***, it's probable cause. So, I mean, that's a – ***they're a reputable organization, and they're saying that it probably causes this***."  Ex. B, Berkman *Turnoff* Dep. at 249:15-250:13 (emphasis added).  Plaintiff does not argue that IARC is a reliable basis for Dr. Berkman's general causation opinion.  His repeated attempts to

- 4 -
MONSANTO'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. SAMUEL BERKMAN

1    distance Dr. Berkman's opinions from IARC all but concede the unreliability of IARC's
2    conclusions.  *See* Opposition at 6-7.
3          Because Plaintiff does not identify any reliable basis for Dr. Berkman's general causation
4    opinion, it must be excluded.

     **B.     Dr. Berkman's Specific Causation Opinion Is Unreliable.**

6          Although Plaintiff claims that Dr. Berkman performed a differential diagnosis to reach his
7    specific causation opinion in this case, Dr. Berkman did not follow the required steps to reliably do
8    so.

     **1.     Dr. Berkman Does Not Reliably Rule In Roundup as a Cause of Plaintiff's SMZL.**

10         Plaintiff and Dr. Berkman contend that the body of literature supports an association
11   between glyphosate and NHL.  But Dr. Berkman failed to identify a single study specifically linking
12   SMZL, Plaintiff's NHL subtype, with glyphosate.  Plaintiff does not dispute that Dr. Berkman cites
13   no such study.  *Id.* at 8-9.  Instead, Plaintiff characterizes Monsanto's argument to this effect as
14   "nonsense because SMZL is NHL," *id.* at 8 (alteration omitted), and curiously argues that
15   "*Monsanto* does not and cannot cite any study showing that the cancer risk caused by glyphosate
16   or Roundup is somehow different for SMZL than for other types of NHL."  *Id.* at 8-9 (emphasis
17   added).  It is Plaintiff's burden, not Monsanto's, to demonstrate his expert's testimony is reliable
18   and admissible.  *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).  Plaintiff identifies no
19   scientific basis for Dr. Berkman to use unsupported inferences as a proxy for reliable methodology.
20   Indeed, there is none.  And Dr. Berkman's ruling in of Roundup as a cause of Plaintiff's SMZL in
21   the absence of such a study cannot be squared with his admissions that nothing about Plaintiff's
22   clinical presentation, symptoms, pathology, imaging studies, or lab test results would help identify
23   Roundup as the cause of Plaintiff's SMZL and none of Plaintiff's treating physicians or medical
24   records state that Roundup caused or contributed to cause Plaintiff's SMZL.  *See* Motion at 8.
25         Further, Plaintiff does not contest that Dr. Berkman did not calculate Plaintiff's absorbed
26   dose of glyphosate in this case.  Despite Dr. Berkman's admission that for Roundup to have any
27   potential health effect on any person, he or she must first have an absorbed dose from applying
28   Roundup, Ex. B, Berkman *Turnoff* Dep. at 116:6-10, Plaintiff argues Dr. Berkman "did not need to

1  quantify Plaintiff's actual glyphosate dose" to reliably rule in Roundup as a cause of Plaintiff's
2  SMZL because "scholars have measured glyphosate exposure in terms of exposure days, not
3  'absorbed dose.'"  Opposition at 9-10.

4        Plaintiff's argument misses the mark.  As an initial matter, Dr. Berkman does not even
5  purport to calculate Plaintiff's supposed "exposure days"—which is itself a methodology replete
6  with scientific flaws—in reaching his specific causation opinion in this case.  Instead, he vaguely
7  opines that "[t]he amount of time [Plaintiff] was exposed to Roundup" was "sufficient to cause his
8  problem."  *See* Motion at 10 (citing Ex. A, Berkman *Turnoff* Report at 4).  Regardless, Plaintiff's
9  bare assertion that Dr. Berkman did not need to calculate Plaintiff's dose lacks scientific support.
10 However measured, the amount of time a person spends using a product, in the abstract, says
11 nothing about that person's risk.  As Dr. Berkman acknowledges, for a chemical to cause cancer, it
12 must be absorbed through the skin and enter the bloodstream.  Ex. B, Berkman *Turnoff* Dep. at
13 116:6-10.

14       Plaintiff does not even address Dr. Berkman's admitted "assumption" that there was
15 glyphosate in Plaintiff's body when he first developed SMZL (Ex. B, Berkman *Turnoff* Dep. at
16 125:7-18); however, it is the antithesis of a reliable opinion on causation because it "assumes" an
17 association between cause and effect without any evidence that Plaintiff was exposed to enough of
18 the "cause" to establish the supposed "effect."  *See Claar v. Burlington N. R.R.*, 29 F.3d 499, 502-
19 03 (9th Cir. 1994) ("Coming to a firm conclusion first and then doing research to support it is the
20 antithesis of the [scientific] method.").  This approach to specific causation is especially
21 problematic given Dr. Berkman's concession that humans can be exposed to levels of glyphosate
22 in the environment that do not lead to adverse health effects.  Ex. B, Berkman *Turnoff* Dep. at
23 120:15-121:2.  Relatedly, Plaintiff does not address Monsanto's argument that Dr. Berkman should
24 be precluded from testifying that Plaintiff had an average daily dose of glyphosate that exceeded
25 the approved regulatory thresholds for glyphosate exposure.  *See* Motion at 9 n.2.  Because Dr.
26 Berkman did not calculate Plaintiff's alleged dose of glyphosate and agrees he is not a regulatory
27 expert, he must be precluded from offering any such opinions at trial.
28

Finally, Plaintiff is wrong to suggest that "Monsanto argues that because Dr. Berkman has not quantified [Plaintiff's] exact exposure to Roundup in hours or days…his conclusion is flawed." Opposition at 10.  Monsanto makes no such argument.[2]  Rather, Monsanto identifies several flaws in Dr. Berkman's ultimate conclusion that "[t]he amount of time [Plaintiff] was exposed to Roundup is 20 years, which is the average latency period of NHL in persons with long-term exposure to toxic chemicals and solvents. This appears to have been sufficient exposure to cause his problem." Ex. A, Berkman *Turnoff* Report at 4 (footnote omitted); *see also* Motion at 10-12.  Plaintiff fails to adequately respond to any of the methodological errors in Dr. Berkman's exposure analysis that Monsanto identifies in its Motion.

In an attempt to rescue Dr. Berkman's inconsistent testimony regarding what latency period of NHL is indicative of "sufficient exposure" to Roundup in Plaintiff's case, Plaintiff places significant emphasis on a single quote from Dr. Berkman's deposition wherein he equivocally testified, "I would say 20 years of exposure would be – 10 to 20 years 20 would be the average. But I think you could get it for less if you had higher exposure"—all while incorrectly accusing Monsanto of "selecting discrete and isolated quotes in order to discredit Dr. Berkman." Opposition at 10 (quoting Berkman Dep. at 13:16-22).  This testimony does not remedy the speculative and imprecise nature of Dr. Berkman's methodology regarding NHL's latency period.

Rather than confront the several inconsistencies in Plaintiff's self-reported use of Roundup, Plaintiff simply contends that "Dr. Berkman is not a fact witness" and "has no obligation to question the veracity of [Plaintiff's] sworn testimony."  Opposition at 10; *see id.* at 11 ("Once again, Dr. Berkman has no obligation to verify [Plaintiff's] exposure, only to opine on whether glyphosate could have caused [Plaintiff's] SMZL based on the reported facts before him").  Plaintiff's unwillingness to respond to the inconsistencies in Plaintiff's memory regarding whether he began using ready-to-use Roundup in 1987 or 1980 (Motion at 11), or Plaintiff's testimony regarding whether he got Roundup on his bare skin (Motion at 11-12), further solidifies the unscientific and unreliable nature of Dr. Berkman's approach to determining specific causation.

---

[2] Even if Dr. Berkman had attempted to quantify Plaintiff's exposure in hours or days, his specific causation opinion would still be unreliable for the reasons discussed *supra*.

### 2. Dr. Berkman Does Not Reliably Rule Out Other Potential Causes of Plaintiff's SMZL.

Plaintiff contends that Dr. Berkman ruled out other potential causes for Plaintiff's SMZL. Opposition at 11-15. He claims Dr. Berkman "review[ed Plaintiff's] background and medical history for all potential risk exposures including hepatitis, Kaposi sarcoma, autoimmune disease, or family history of lymphoma" and "considered environmental risk factors," such as prior workplace exposures and Plaintiff's pipe smoking. *Id.* at 13. He claims Dr. Berkman then "employed a differential diagnosis to compare [Plaintiff's] Roundup use with the risk factors that Monsanto…contends are equally likely causes, including age, psoriasis, obesity, family history of cancer, and naturally-occurring mutations." *Id.* Plaintiff conveniently side steps Dr. Berkman's clear deposition testimony that he does not believe there are any "other potential cause[s]" of Plaintiff's SMZL, Ex. B, Berkman *Turnoff* Dep. at 256:3-258:21, and that the potential risk factors identified by Monsanto's experts (such as age, psoriasis, obesity, and family history of cancer) are not "relevant." *Id.*

Plaintiff does little more than regurgitate Dr. Berkman's vague and conclusory deposition testimony that Roundup was the most important issue contributing to his SMZL to support his argument that Dr. Berkman properly ruled out these other risk factors for NHL. *Id.* at 13-14. Plaintiff contends that, "[w]ithout providing any detail, Monsanto cannot fault Dr. Berkman for considering [Plaintiff's] 20 years of Roundup use as a more likely cause." *Id.* at 14. Plaintiff fails to explain how or why Dr. Berkman ruled out these alternative risk factors as the sole cause of Plaintiff's cancer. This failure dooms Dr. Berkman's specific causation opinion.

Nor does Plaintiff address the fact that Dr. Berkman failed to rule out naturally-occurring cell replication errors as a possible (or even likely) cause of Plaintiff's SMZL. As stated in Monsanto's Motion, approximately 95% of NHL cases result from naturally-occurring cell replication errors that lead to genetic mutations. *See* Motion at 13-14 (citing Exs. E and F). Plaintiff argues that Dr. Berkman did not need to consider naturally-occurring genetic mutations in arriving at his specific causation opinion because such mutations "are not themselves a risk factor" for NHL. Opposition at 14. But Plaintiff's argument is directly contradicted by Dr. Berkman's own

1  testimony. Dr. Berkman testified that mutations to B-cells are one cause of NHLs. Ex. B, Berkman
2  *Turnoff* Dep. at 91:20-92:1 ("Q…..So NHLs are caused by mutations to B-cells, correct? A. Yes,
3  that's one cause. Q. That's one cause of non-Hodgkin's lymphoma, true? A. Yeah"); *see id.* at
4  92:21-93:5 ("Q. Okay. But as a result of – of the replication, division, and the normal functioning
5  of B-cells, B-cells can have unwanted mutations, correct? A. Yeah, they can. But, you know, so
6  can a lot of other cells, but including B-cells, yes. Q. And those unwanted mutations in B-cells can
7  lead to cancer, specifically non-Hodgkin's lymphoma, correct? A. Yes"). Plaintiff's assertion that
8  "there is no evidence of any random mutation" in Plaintiff's case is likewise belied by Dr.
9  Berkman's testimony. Indeed, Plaintiff "had mutations" in the form of trisomy 13 and
10 monozygosity 21, Ex. B, Berkman *Turnoff* Dep. at 252:18-254:18; 283:4-8; 339:20-340:9, and Dr.
11 Berkman testified he is not aware of any literature that supports the notion that those specific
12 mutations are caused by Roundup or glyphosate. Ex. B, Berkman *Turnoff* Dep. at 283:9-13. By
13 disregarding naturally-occurring genetic mutations—a well-accepted potential cause of NHL—Dr.
14 Berkman failed to conduct a proper differential diagnosis of Plaintiff's SMZL.

15 "As the court noted in *In re Paoli R.R. Yard PCB Litig.,* 35. F.3d 717, 745 (3d Cir. 1994),
16 '*any* step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. ***This***
17 ***is true whether the step completely changes a reliable methodology or merely misapplies that***
18 ***methodology.***'" Advisory Committee Comment for Fed. R. Evid. 702 (2000) (emphasis added).
19 Dr. Berkman has engaged in unreliable methodology at every step of his analysis, both in ruling in
20 Roundup and not ruling out other potential causes of Plaintiff's SMZL. His specific causation
21 testimony is the product of an unreliable methodology and must be excluded.

## CONCLUSION

23 For the reasons set forth above, the Court should grant Monsanto's Motion to Exclude
24 Testimony of Dr. Samuel Berkman and exclude Dr. Berkman's opinions.

25 Dated: January 22, 2024                              Respectfully submitted,

                                                        /s/ *Linda C. Hsu*
                                                        Linda C. Hsu
                                                        Attorneys for Defendant Monsanto Company

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of January, 2024, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Linda C. Hsu*
Linda C. Hsu
Attorneys for Defendant Monsanto Company