**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843 | Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 | Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Angelo Bulone v. Monsanto Company*, 3:20-cv-03719-VC | **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF DR. RICHARD DEGRANDCHAMP**<br><br>Hearing:<br>Date: March 1, 2024<br>Time: 10:00 a.m.<br>Place: San Francisco Courthouse, Courtroom 4 – 17th Floor |

**INTRODUCTION**

Monsanto has asked the Court to exclude Plaintiff's disclosed expert Dr. Richard DeGrandchamp from providing certain testimony at trial. As discussed below, Plaintiff's opposition concedes many of the factual points that require the Court to exclude Dr. DeGrandchamp's testimony, or else misrepresents what opinions the expert has actually disclosed in this case. The Court should exclude Dr. DeGrandchamp's testimony for the reasons Monsanto identified in its opening brief.

**ARGUMENT**

**A.   Dr. DeGrandchamp Should Be Excluded From Mentioning Inactive Ingredients or Trace Impurities in Roundup.**

Monsanto moves for a ruling excluding Dr. DeGrandchamp from discussing or referencing inactive ingredients or trace impurities in Roundup. This ruling is required for two reasons. *First*, Dr. DeGrandchamp has repeatedly admitted that he has no opinion on whether inactive ingredients or trace impurities in Roundup can contribute to cause NHL, let alone the Plaintiff's NHL in this case. *See* Monsanto Motion to Exclude Testimony of Dr. DeGrandchamp ("Motion") at 3-6. He has also disclaimed any opinion on whether trace impurities exist in Roundup at all. *Id.* at 4. Because Dr. DeGrandchamp has no opinion on whether Roundup's inactive ingredients or trace impurities can cause Plaintiff's injuries, any opinion about Roundup's inactive ingredients or trace impurities is not helpful to the jury and is not admissible. This is not controversial. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993) ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."); *O'Neill v. Sherwin-Williams Co.*, No. EDCV-08-368SGLJCRX, 2009 WL 2997026, at *2 (C.D. Cal. Sept. 9, 2009) (excluding expert's testimony on chemical agent in consumer product—*i.e.*, paint—when he did not have any opinion that specific chemical agent could substantially contribute to cause the plaintiff's injury).

*Second*, permitting Dr. DeGrandchamp to discuss Roundup's inactive ingredients and so-called trace "impurities," when they are not relevant to the conclusions he seeks to provide, violates Rule 403 because they seek only to inflame and mislead the jury into believing that Roundup is

toxic and can cause users harm. *See* Motion at 5-6 (moving for order precluding Dr. DeGrandchamp from using the words "impurities" or "contaminants" at trial); *see also Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 1:11-CV-1273 LJO BAM, 2013 WL 1982797, at *7-8 (E.D. Cal. May 13, 2013), *aff'd*, 587 F. App'x 654 (Fed. Cir. 2014) (granting motion to bar plaintiff from using term "trade secret" because the term could unfairly bias the jury against the defendant).

In response, Plaintiff distorts the opinions that Dr. DeGrandchamp has actually disclosed in this case. Plaintiff argues that the "potential for a synergistic or cumulative effect between carcinogens is referenced multiple times in Dr. DeGrandchamp's Supplemental Report," with a citation to certain pages of that supplemental report. Plaintiff's Opposition to Monsanto's Motion to Exclude Dr. DeGrandchamp ("Opp.") at 7. But the cited pages do not contain this purported opinion. Instead, in the cited pages Dr. DeGrandchamp opines only that Monsanto was warned about "potential synergistic carcinogenic effects" related to other contaminants in Roundup besides glyphosate—not that Dr. DeGrandchamp actually believes there are any that have caused Plaintiff's alleged injuries. Opp. Ex. C at 18-19, 45. As noted in Monsanto's opening motion, Dr. DeGrandchamp has disclaimed any opinion that the Plaintiff's injuries are attributable to inactive ingredients or trace impurities. Motion at 3-6.[1]

While Dr. DeGrandchamp may testify broadly that Roundup can generally cause NHL, he should be precluded from identifying the inactive ingredients or purported trace impurities in Roundup as the relevant chemical agents under Rules 702 and 403. Indeed, Dr. DeGrandchamp has disclaimed any such opinion. *See* Motion at 3-6; *O'Neill*, 2009 WL 2997026, at *2.

**B.    Dr. DeGrandchamp Should Not be Permitted to Discuss the Ninth Circuit Decision in *NRDC*.**

Plaintiff confirms in his opposition brief that Dr. DeGrandchamp seeks to offer an opinion that the Ninth Circuit's decision in *Natural Resources* reinforces his own opinion about the EPA's purported failure to assess the safety of glyphosate-based products. *See* Opp. at 8 (discussing

---

[1] Plaintiff also repeatedly cites to Dr. DeGrandchamp's testimony in another case in Missouri state court. *See* Opp. at 5-8 (citations to *Durnell* trial testimony). What a different state court permitted Dr. DeGrandchamp to say at a different trial is irrelevant. Dr. DeGrandchamp can testify to only those opinions disclosed in this case, and he has not disclosed any opinion that these inactive ingredients cause or contribute to cause NHL.

*NRDC v. U.S. EPA*, 38 F.4th 34 (9th Cir. 2022)). Plaintiff denies that this runs afoul of Ninth Circuit precedent because it does not amount to an interpretation of a legal document. *Id.* But any testimony comparing the Ninth Circuit's ruling to Dr. DeGrandchamp's general causation conclusions here would necessarily entail interpreting the Ninth Circuit's opinion—an interpretation is a prerequisite for any opinion that Dr. DeGrandchamp and the Ninth Circuit are in agreement. And the Ninth Circuit bars experts from attempting to interpret legal materials like the Ninth Circuit's opinion and applying it to a particular case. *See, e.g.*, *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1507 n.6 (9th Cir. 1994); *see also Aguilar v. International Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) ("[M]atters of law for the court's determination ... [a]re inappropriate subjects for expert testimony."). Dr. DeGrandchamp's desired testimony is thus inadmissible. That Dr. DeGrandchamp "reads judicial opinions frequently" on his own time is irrelevant. *See* Opp. at 8. Dr. DeGrandchamp is barred from telling the jury what he believes the Ninth Circuit did in *NRDC*.

Even more, Plaintiff makes no effort to argue that Dr. DeGrandchamp's desired testimony is relevant to any issue in this case. Indeed, it is not. While Dr. DeGrandchamp may wish to opine that the EPA did not follow its own guidance in determining the safety of glyphosate-based herbicides (though this opinion should be barred too for the separate reasons discussed below (*see infra* Section C)), there is no reason why that opinion needs to be boot-strapped to a discussion of the Ninth Circuit's supposedly parallel determination. The proposed testimony is instead a transparent effort to force the Ninth Circuit's decision before the jury in a manner that gives the decision the imprimatur of a scientific determination, when in reality the Ninth Circuit's ruling was based on an analysis of the Administrative Procedure Act. Thus, even if the decision were relevant to the issues in this case, introducing *NRDC* in this manner violates Rule 403. Its relevance is substantially outweighed by the tendency for it to confuse or mislead the jury, or otherwise prejudice Monsanto.[2]

---

[2] As Monsanto noted in its Motion, to the extent a decision like *NRDC* is admissible, it should be admitted through the proper channels (not under the guise of a causation expert's opinion), and only after an assessment of the state of the EPA's guidance and labeling requirements at the time of trial. *See* Motion at 7 n.1.

**C.     Dr. DeGrandchamp's Testimony Regarding the Regulatory History of Glyphosate and the 1983 Rodent Bioassay should be Excluded.**

Plaintiff concedes that Dr. DeGrandchamp will not testify about Monsanto's intent, motive, or state of mind. Opp. at 9. This position must be enforced at trial.

Plaintiff then makes the cryptic remark that Dr. DeGrandchamp plans to "cite[] relevant Monsanto internal documents that support his opinions, and his discussion of [the internal documents] will aid the jury in understanding his opinions." Opp. at 9. As Monsanto discussed in its opening brief, Dr. DeGrandchamp cannot simply narrate Monsanto's internal documents to the jury. *See* Motion at 10 (citing cases). Such testimony is not allowed because selectively introducing certain documents through expert testimony elevates the prominence of those documents, when they should—to the extent relevant at all—be introduced "through percipient witnesses and documentary evidence." *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004). Any Monsanto internal documents are relevant to Dr. DeGrandchamp's proposed testimony only to the extent that he relied upon them in formulating his general causation opinions. A generalized discussion of Monsanto's corporate documents or the EPA's regulatory history of glyphosate-based products is not relevant to the general causation opinion Dr. DeGrandchamp has disclosed. He should thus be forbidden at trial from discussing individual Monsanto or EPA documents except to the (unlikely) extent he relied upon the document in formulating his general causation opinion.

Plaintiff also admits that Dr. DeGrandchamp will attempt to offer opinions "regarding the adequacy and appropriateness of testing the EPA considered when determining Roundup's carcinogenicity." Opp. at 9. As Monsanto explained in its opening brief, Dr. DeGrandchamp readily admits he has never performed any expert analysis of the documents showing the basis for the EPA's conclusions, and will simply narrate them to the jury at trial. *See* Motion at 9 (citing Ex. I). Such testimony is not helpful to the jury and is not admissible. *See id.* at 10 (citing cases). Plaintiff's only response is that this testimony is necessary to rebut evidence that Monsanto may present on the EPA's findings. Opp. at 9. That does not alter the conclusion that Dr. DeGrandchamp cannot be used as a mouthpiece to narrate EPA documents. Even more, Dr.

1  DeGrandchamp is not disclosed as an expert on the EPA's testing and conclusions, and has no
2  knowledge of the underlying data and facts in any event. *See* Motion at 9-10. And Plaintiff's
3  argument that Dr. DeGrandchamp's testimony is necessary to rebut evidence that Plaintiff believes
4  Monsanto will introduce—before Monsanto actually asserts its defense—is not a basis for the Court
5  to admit Dr. DeGrandchamp's proffered testimony during Plaintiff's case-in-chief.

### D. Dr. DeGrandchamp's Comparison of Glyphosate to His Self-Created Novel List of The Nine "Key Hallmarks" of NHL is Unreliable.

Plaintiff's opposition confirms the unreliability of Dr. DeGrandchamp's list of nine "Key Hallmarks" of NHL. Plaintiff concedes that Dr. DeGrandchamp developed his list well after becoming engaged to testify as a plaintiff-side general causation expert in the Roundup cases. Opp. at 11 (citing Opp. Ex. G). Dr. DeGrandchamp stated at a deposition in a past Roundup case that he had not "finished [his] analysis yet" on whether Roundup can cause NHL, but that he was "accumulating evidence that suggests [Roundup causes NHL]." Opp. at 11 (quoting Opp. Ex. G). Plaintiff also concedes that months after that deposition, Dr. DeGrandchamp produced his opinion about the supposed nine key mechanisms by which lymphomas are caused—*i.e.*, the "Key Hallmarks." Opp. at 10-11. Plaintiff insists that this list is reliable because other toxicologists have produced lists of key mechanisms for other cancers (*id.* at 9-10), but concedes that no other scientists or regulatory bodies have produced such a list for lymphomas, or reviewed his list (*id.* at 13). Plaintiff's opposition relies principally on the familiar incantation that to the extent Monsanto has problems with the list Dr. DeGrandchamp has produced, that is a matter for cross-examination. *Id.* at 13.

Plaintiff's argument is at odds with the way the *Daubert* reliability standard is applied in the Ninth Circuit. Indeed, it is at odds with the way the Ninth Circuit specifically applied this standard in *Daubert* on remand. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert II*"). In *Daubert II*, the Ninth Circuit emphasized that "[o]ne very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Id.* In the

- 5 -
MONSANTO'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF
DR. RICHARD DEGRANDCHAMP

latter scenario, courts must take a more searching inquiry into the reliability of the testimony. To satisfy the reliability standard under these circumstances, the party proffering the expert testimony must show the opinion is "based on scientifically valid principles," particularly by showing "that the research and analysis supporting the proffered conclusions have been subjected to normal scientific scrutiny through peer review and publication." *Id.* at 1318. The Ninth Circuit in *Daubert II* ruled the proffered testimony inadmissible under the standard.

Here, Plaintiff readily admits that Dr. DeGrandchamp created his list of "Key Hallmarks"—and reached his general causation conclusion to begin with—after first being engaged to provide such an opinion. Opp. at 11-13. Dr. DeGrandchamp's opinion is thus subject to a particularly close scrutiny for its reliability. And Plaintiff does not provide any support for his methodology. Plaintiff insists only that his "Key Hallmarks" are reliable because other toxicologists have developed similar lists for other types of cancers. But that argument does not address the crucial question of whether *Dr. DeGrandchamp's identification of the key mechanisms for lymphomas are, in fact, reliable.* Dr. DeGrandchamp's list has not been subject to peer review or other scientific inquiry. No regulatory body has reviewed his findings or developed its own list of key mechanisms, and no other expert has purported to rely on Dr. DeGrandchamp's list of key mechanisms. Nor does Plaintiff argue that there is any set methodology used by other toxicologists to develop lists of key mechanisms for cancers that Dr. DeGrandchamp has reliably applied here.[3] There is thus no indication that Dr. DeGrandchamp's list is a reliable assessment of the key mechanisms for developing lymphomas, or a cherry-picked, self-curated list put together as a justification for the opinion that Dr. DeGrandchamp wished to reach for purposes of litigation. Similar testimony has been routinely deemed inadmissible by the Ninth Circuit. *See Daubert II*, 43 F.3d at 1317-18; *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) (expert testimony inadmissible where the expert did not "point to some objective source to show that he has followed the scientific

---

[3]  Plaintiff instead merely argues that Dr. DeGrandchamp's methodology is reliable because other toxicologists have developed peer-reviewed lists of key mechanisms for *other* cancers, and the studies that Dr. DeGrandchamp reviewed to set forth his own novel list are reliable. But again, this skirts the issue. The question is whether Dr. DeGrandchamp reliably scoured the field of study and reliably compiled his list of key mechanisms, to the exclusion of other mechanisms that might not support his ultimate conclusion. Plaintiff offers no support for a finding that this collection was reliable.

method, as it is practiced by (at least) a recognized minority of scientists in his field"); *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 606 (9th Cir. 2002) (affirming exclusion of expert who failed to show a "valid, scientific method in developing his theory," where the expert could point to only "similar but not identical" studies supporting his method). The Court should similarly exclude Dr. DeGrandchamp's testimony related to his nine "Key Hallmarks" for lymphomas.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court grant Monsanto's Motion to Exclude Testimony of Dr. Richard DeGrandchamp and preclude Dr. DeGrandchamp from testifying on the following topics: (1) any inactive ingredient or trace impurity in Roundup; (2) Dr. DeGrandchamp's understanding of the Ninth Circuit opinion in *NRDC*; (3) the regulatory history of Roundup and Monsanto's corporate conduct and purported state of mind; and (4) whether Roundup causes non-Hodgkins lymphoma.

Dated: January 22, 2024                     Respectfully submitted,

/s/ *Linda C. Hsu*
Linda C. Hsu
Attorneys for Defendant Monsanto Company

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of January, 2024, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Linda C. Hsu*
Linda C. Hsu
Attorneys for Defendant Monsanto Company