**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843 | Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100 | Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION,<br><br>*Michael J. Caccia v. Monsanto Co.*, 3:20-cv-01915-VC | MDL No. 2741<br><br>Case No: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S SPECIFIC CAUSE EXPERT DR. MARC BRAUNSTEIN**<br><br>Hearing:<br>Date:   March 1, 2024<br>Time:   10:00 a.m.<br>Place:  San Francisco Courthouse, Courtroom 4 – 17th Floor |
|---|---|

**INTRODUCTION**

In Pre-Trial Order 288 ("PTO 288"), this Court correctly observed that a "sentiment may have developed in this MDL that because some general and specific causation opinions have now been admitted, additional experts can get through the Daubert gate with a casual wave of the hand. That is wrong." *Id*. at 12. Plaintiff's Response to Monsanto's Motion to Exclude Plaintiff's specific causation expert, Dr. Braunstein, is precisely the "casual wave of the hand" against which this Court warned.

Plaintiff's Response is mostly just a recitation of legal jargon—including jargon that simply does not apply to a specific causation expert like Dr. Braunstein—designed to make it sound as though Dr. Braunstein's opinion is far more sophisticated than it really is.[1] In reality, Dr. Braunstein's opinions start and end with the conclusion that Plaintiff's non-Hodgkin's lymphoma ("NHL") must have been caused by Roundup. That is the hallmark of an unreliable opinion.

Dr. Braunstein purports to have conducted a differential diagnosis to determine the most likely cause of Plaintiff's NHL. But he did not reliably rule in Plaintiff's Roundup use as a potential cause, because he relied solely on unadjusted "exposure days" data points that this Court has already held cannot alone support a specific causation opinion. Although he purported to rule out Plaintiff's weight as a potential cause he did not do so reliably because he admitted that people in Plaintiff's weight range are at heightened risk of developing not only NHL, but Plaintiff's specific subtype of NHL—indeed, Dr. Braunstein himself testified that people in Plaintiff's weight range are even ***more likely*** than the morbidly obese to develop NHL. And because Dr. Braunstein did not reliably rule in Plaintiff's Roundup use Dr. Braunstein is not off the hook when it comes to the need to consider, and rule out, idiopathic causes of NHL, which he did not do.

For these reasons, and those that follow, this Court should grant Monsanto's motion to exclude Dr. Braunstein's opinion.

---

[1] For example, Plaintiff asserts that Dr. Braunstein "addressed and weighed each potential risk factor using a differential diagnosis approach along with applying the Bradford-Hill criteria in arriving at his opinion that [Plaintiff's] exposure to Roundup was the most likely contribution to the development of his [NHL]." Resp. at 2 (quotation marks omitted); *see also id*. at 6, 11 (quoting Dr. Braunstein's deposition testimony and Report for the proposition that he relied on the Bradford-Hill criteria to reach a specific causation opinion). But "the Bradford-Hill criteria are used to establish ***general*** causation from epidemiological studies—they are not used to establish ***specific*** causation." *In re Viagra Prod. Liab. Litig.*, 658 F. Supp. 2d 950, 958 (D. Minn. 2009) (emphasis added).

# ARGUMENT

## I. Dr. Braunstein's "Exposure Days" Approach Did Not Reliably "Rule In" Roundup.

In its Motion, Monsanto noted that Dr. Braunstein did not "reliably rule in Roundup as a cause" of Plaintiff's cancer. Mot. at 3 n.1. In his Response, Plaintiff asserts that Dr. Braunstein's purported differential diagnosis was reliable because he ruled in glyphosate as a potential cause of Plaintiff's NHL based on Plaintiff's "frequent and long standing exposure to Roundup." Resp. at 11 (quoting Hsu Decl., Ex. C, Braunstein Report at 14[2]). Specifically, Dr. Braunstein concluded that Plaintiff's "133 exposure days … is more than the minimum exposures reported in epidemiologic studies associating [Roundup exposure] to NHL." Hsu Decl. But he has no reliable basis for reaching this conclusion.

Dr. Braunstein's sole basis for concluding that Plaintiff's exposure to Roundup was enough to cause him to develop NHL (and, therefore, Dr. Braunstein's sole basis for ruling in Roundup as a potential cause of his NHL) are epidemiological studies.[3] *See* Hsu Decl. Ex. C, Braunstein Report at 12, Table 1 (listing the epidemiological case-control studies on which Dr. Braunstein relied). And only two of those studies—Eriksson and McDuffie—purport to determine *how much* Roundup exposure is required to supposedly cause cancer. *Id*. Indeed, Dr. Braunstein confirmed at his deposition that when he referred in his report to Plaintiff exceeding the "minimum exposure reported in epidemiologic studies associating [Roundup exposure] and NHL" he was referring to the "exposure days" data in the McDuffie and Eriksson studies. Hsu Supp. Decl. Ex. D, Braunstein Dep. (*Caccia*) at 56:3-19. Dr. Braunstein testified that the McDuffie study concluded that "a minimum of … two days per year" of exposure was enough to increase the risk of cancer to a statistically significant degree and the Eriksson study concluded that "a minimum of ten days or more per year" of exposure was enough to increase the risk of cancer to a statistically significant degree. *Id*. at 56:9-19.[4]

---

[2] Unless otherwise noted, exhibit citations in this reply are to the exhibits filed in support of Monsanto's original motion to exclude Dr. Braunstein.

[3] Dr. Braunstein's report contains sections describing studies about the supposed genotoxic properties of glyphosate, and certain animal and mechanistic studies on glyphosate. These studies do not address *how much* exposure to glyphosate is supposedly necessary to cause cancer in humans. *See* Hsu Decl. Ex. C, Braunstein Report at 9-11. Accordingly, these studies do not (indeed, they could not) inform Dr. Braunstein's specific causation opinion.

[4] Dr. Braunstein presumably misspoke about the Eriksson study—its focus was on *lifetime* exposure days, not *yearly* exposure days.

But this Court has already recognized that the data points from the Eriksson and McDuffie studies on which Dr. Braunstein focuses are unreliable. In Pre-Trial Order 85 ("PTO 85"), this Court specifically addressed the Eriksson and McDuffie studies' "exposure days" conclusions and noted that they "did not adjust for the use of other pesticides," and consequently, the specific causation experts who relied on the Eriksson and McDuffie studies "*may not testify that glyphosate is a substantial causative factor for anyone who exceeds two days per year or ten lifetime days of Roundup use, because that conclusion is based on unadjusted data*." PTO 85 at 8 (emphasis added).

So too here. Dr. Braunstein purports to rule in Roundup because of the number of days on which Plaintiff was exposed to Roundup. Dr. Braunstein's sole basis for concluding that Plaintiff exceeded the number of days needed to rule in Roundup is the "exposure days" data contained in the Eriksson and McDuffie studies.[5] Thus, just like the experts who were the subject of PTO 85, Dr. Braunstein should not be permitted to testify that glyphosate is a substantial causative factor for Plaintiff's NHL.

## II.     Dr. Braunstein Did Not Reliably Rule Out Plaintiff's Weight.

In its Motion, Monsanto argued that Dr. Braunstein did not reliably rule out Plaintiff's weight as a potential cause of Plaintiff's cancer. Mot. at 6-7. Specifically, Monsanto noted that Dr. Braunstein "narrowly focused on the technical definition of 'obesity' as a BMI of 30 or above and then excluded weight as a potential cause of Plaintiff's NHL because Plaintiff's BMI was 30—because Plaintiff was not technically 'obese,' Dr. Braunstein discounted weight altogether as a potential cause." *Id*. In his Response, Plaintiff argues that Dr. Braunstein reliably ruled out weight because "there exists only a possible connection with obesity and [NHL] patients with morbid obesity with body mass indices over

---

[5] In addition to Eriksson and McDuffie, Dr. Braunstein's report also discusses three now-familiar analyses: the IARC monograph, the Agricultural Health Study, and the Zhang meta-analysis. But these documents did not play (and could not have played) a role in Dr. Braunstein's "exposure days" opinion purporting to rule in Roundup. None of these analyses used an "exposure day" methodology. The IARC monograph did not examine a dose-response relationship. Dr. Braunstein admitted that the Agricultural Health Study "did not find ... an increased risk of NHL." Hsu Supp. Decl. Ex. D, Braunstein Dep. (*Caccia*) at 59:14-15. And Dr. Braunstein himself wrote that the Zhang meta-analysis did not "detect a meaningful increase in NHL or other cancers associated with glyphosate" and even indicated that the Eriksson study was somehow *more* reliable than the Zhang meta-analysis. Hsu Decl. Ex. C, Braunstein Report at 12-13 (citing FN 58, the Eriksson study). In any event, Dr. Braunstein testified explicitly at deposition that he relied on the Eriksson and McDuffie studies for purposes of ruling in Roundup.

40." Resp. at 10.  But this argument flatly contradicts Dr. Braunstein's own testimony—testimony Monsanto noted in its motion and which Plaintiff's Response ignores altogether.

Dr. Braunstein did not testify that there was only a "possible" connection between NHL and BMIs over 40.  In fact, he said the opposite.  Dr. Braunstein agreed at his deposition that "overweight subjects, who have a BMI between 25 [and] 30" demonstrated a "**greater risk** of NHL than in obese subjects."  Hsu Decl., Ex. B, Braunstein Dep. (*Caccia*) at 36:14-22.  Dr. Braunstein further agreed that there is a "statistically significant increased risk of DLCBL, specifically" for subjects who have a BMI between 25 and 30. Hsu Supp. Decl. Ex. D, Braunstein Dep. (*Caccia*) at 36:23-37:2.

So, contrary to Plaintiff's argument, Dr. Braunstein actually testified that Plaintiff's BMI of 30 placed him at an *increased* risk of NHL—and of the specific NHL subtype of DLCBL—even compared to obese people.  Plaintiff never addresses this point in his Response, even though Monsanto made this argument in its Motion.  *See* Mot. at 6-7.  Nor does Plaintiff ever address Dr. Braunstein's testimony, also noted in Monsanto's Motion, that from time-to-time Plaintiff's BMI *exceeded* 30.  *See* Mot. at 7.

Given Dr. Braunstein's actual testimony, Plaintiff is wrong that Dr. Braunstein reliably ruled out Plaintiff's weight.  To the contrary, Dr. Braunstein simply "dismiss[ed]" Plaintiff's weight "in favor of [Roundup] in a cursory fashion."  *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 892 F.3d 624, 645 (4th Cir. 2018).  Dr. Braunstein's approach was thus "closer to an ipse dixit then a reasoned scientific analysis."  *Id*.  Recently, in the *Engilis* case, this Court excluded a specific causation expert who purported to rule out the plaintiff's weight as a factor but did not do so reliably.  PTO 288 at 8-11.  The Court should do the same here.

**III.   Dr. Braunstein Did Not Consider, Let Alone Rule Out, Idiopathy (Including Naturally Occurring Mutations).**

In its Motion, Monsanto argued—consistent with case law and this Court's own PTO 85—that Dr. Braunstein failed to rule out idiopathic causes of Plaintiff's NHL.  Mot. at 8-9.  In Response, Plaintiff argues that Dr. Braunstein was not required to rule out idiopathic causes because "[e]xperts need not analyze every conceivable risk factor to satisfy *Daubert*."  Resp. at 13.

Plaintiff is incorrect.  In order to reliably rule out idiopathy, Dr. Braunstein needed to have considered naturally occurring mutations as a potential cause.  After all, as this Court correctly noted

at the December 12, 2023 *Daubert* hearing in the *Delorme-Barton* case: "[w]hat it's been up until now, is … [a] high percentage of NHL cases are idiopathic" and the role that naturally occurring mutations play as a potential cause of NHL effectively "put[s] meat on the bones" of previous understanding, "which is that such a high percentage of NHL cases are idiopathic." Hsu Supp. Decl. Ex. E, *Daubert* Hr'g Tr. at 158:17-25. Dr. Braunstein knew that naturally occurring mutations are one way to understand NHL cases previously classified as idiopathic because Monsanto disclosed in Wave VI the general causation opinions of Dr. Cristian Tomasetti, who concludes that random mutations are responsible for the vast majority of NHL cases.

But Dr. Braunstein's expert report does not even mention (let alone rule out) naturally occurring mutations as a potential cause, just as it does not even mention (let alone rule out) idiopathy more generally. And at his deposition, Dr. Braunstein confirmed explicitly that he was not "able to rule out random or sporadic genetic mutations as the cause of [Plaintiff's] NHL," even while also admitting that "mutations in our cells that are not repaired by our body's natural mechanism to repair DNA can replicate and eventually become cancerous." Hsu Supp. Decl. Ex. D, Braunstein Dep. (*Caccia*) at 66:4-7; 62:19-23.

Plaintiff relies on *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227 (9th Cir. 2017) for the proposition that Dr. Braunstein need not rule out idiopathy at all. Plaintiff is incorrect. *Wendell* held that when an expert ***reliably rules in*** one of a plaintiff's "multiple risk factors" as a "substantial causative factor" the expert need not "completely rule out" idiopathy. *Id*. at 1237. But here, by Plaintiff's own account, Plaintiff "had very few potential risk factors." Resp. at 7. And, as explained, *supra* pp. 2-3, Dr. Braunstein ***did not*** reliably rule in glyphosate as a substantial potential cause of Plaintiff's NHL because Dr. Braunstein's sole basis for ruling in glyphosate was the unreliable, unadjusted "exposure days" data points in the McDuffie and Eriksson studies. Thus, Dr. Braunstein should have at least considered idiopathy as a potential cause of Plaintiff's NHL. *Henricksen v. ConocoPhillips Co*., 605 F. Supp. 2d 1142, 1163 (E.D. Wash. 2009) (excluding an expert for "fail[ing] to adequately account for the possibility that [the plaintiff's disease] was idiopathic"). But Dr. Braunstein did not even consider idiopathy as a potential cause, let alone rule it out. Other Roundup plaintiffs' experts have recognized that a reliable differential diagnosis involves at least considering

idiopathy. *See, e.g., Hardeman v. Monsanto Co.*, 997 F.3d 941, 953 (9th Cir. 2021) ("Hardeman's experts considered various risk factors beyond Roundup exposure that could explain his disease, including … idiopathic origin."). Here, Dr. Braunstein's failure to consider idiopathic causes—including naturally occurring mutations—indicates that his methodology is fatally flawed.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Dr. Braunstein.

Dated:  January 22, 2024                         Respectfully submitted,

*/s/ Linda C. Hsu*
Attorney for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of January, 2024 a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Linda C. Hsu*
Linda C. Hsu