**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843 | Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 | Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Richard Canning, et al. v. Monsanto Co.*, Case No. 3:19-cv-04230-VC<br><br>*Gerald Nelson, et al. v. Monsanto Co.*, Case No. 3:19-cv-04576-VC<br><br>*Robert Cotter, et al. v. Monsanto Co.*, Case No. 3:20-cv-03108-VC | **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF ROBERT F. HERRICK**<br><br>Hearing:<br>Date: March 1, 2024<br>Time: 10:00 a.m.<br>Place: San Francisco Courthouse, Courtroom 4 – 17th Floor |

# INTRODUCTION

Plaintiffs' opposition brief ("Pls. Opp.") fails to address the serious issues with Dr. Herrick's methodology that are highlighted in Monsanto's Motion to Exclude Dr. Herrick ("Monsanto's Motion"). Most notably, Dr. Herrick admitted that there are several factors that would reduce a person's exposure to Roundup, but that he did not consider. These include, among other things: 1) wearing a mask; 2) personal protective equipment; 3) the method of spraying; 4) the type/concentration of Roundup; and 5) testimony from Plaintiffs that they did not get Roundup on their skin and washed after exposure. Dr. Herrick himself admitted that his exposure estimates could be higher than the actual exposure for certain Plaintiffs. Ex. A, Herrick (*Canning*) Dep. at 219:24-221:5. As one example of Dr. Herrick's flawed methodology—which fails to address confounding factors that Dr. Herrick himself admits would reduce a person's exposure—Dr. Herrick admitted that his exposure estimate for Mr. Cotter would be the same if a Plaintiff wore a water-repellant Tyvek suit while spraying Roundup:

> **Q. If Mr. Cotter were wearing a water-repellent Tyvek suit, your answer for exposure days would be the same as opposed to what he actually wore, shorts and a T-shirt, right? The exposure days would be the exposure days?**
>
> **A. That -- that would be true. You just, you know, calculate the days when he reported that he used Roundup.**
>
> Q. And if he were wearing a water-repellent Tyvek suit, as opposed to shorts and T-shirt, the amount of glyphosate that could reach his skin, because it's in a water-based solution, would likely be far lower, right?
>
> **A. I think that's -- that's a reasonable thing to say, yes.**

*See* Ex. B, Herrick (*Cotter*) Dep. at 96:1-17 (emphasis added).

Plaintiffs' opposition wholly ignores these glaring methodological errors, which render Dr. Herrick's opinions unreliable. *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1140 (N.D. Cal. 2018) ("[f]ailing to take account of likely confounders by presenting and relying upon only unadjusted (or minimally adjusted) estimates is a serious methodological concern.").

At their heart, Dr. Herrick's opinions are unreliable and unhelpful to the jury because he fails to assess dose—the actual amount of the Roundup in each Plaintiff's body. Dr. Herrick's failure to assess Plaintiffs' dose is an analytical gap that renders his methodology unreliable

under *Daubert*. For the reasons explained below as well as in Monsanto's Motion, the Court should exclude the testimony of Dr. Herrick and Defendant's Motion should be granted.

## ARGUMENT

### I.  Dr Herrick Is Not Qualified to Interpret Epidemiological Studies.

Plaintiffs concede that Dr. Herrick "may not hold himself out as an epidemiologist per se," but argue nonetheless that he is "well acquainted with the field of epidemiology by virtue of working with epidemiological studies, having received training in the field, and teaching college courses in it. Pls. Opp. at 8. Plaintiffs provide a blanket citation to Dr. Herrick's CV, which only supports the assertion that Dr. Herrick is qualified as a certified industrial hygienist. *Id.*, at 1-2. Plaintiffs fail to provide any support for how Dr. Herrick is qualified to review and interpret the epidemiological studies to apply the exposure methodology he used in calculating Plaintiffs' exposure.

Plaintiffs' reliance on *Russel v. Call/D, LLC*, 122 A.3d 860 (D.C. Apr. 15, 2015) is misguided. Plaintiffs state it is "overly simplistic of the Defendant to argue that [Dr. Herrick] must be an epidemiologist to read or utilize the exposure metrics describes in epidemiology studies for exposure calculation purposes." Pls. Opp. at 3. Plaintiffs rely on *Russel* to argue that "an expert may rely on published data by another expert in the pertinent field." *Id.* Plaintiffs, however, misinterpret and misapply *Russel*. As a preliminary matter, Russel *excluded* the opinions of the expert in question, holding that the expert (a treating pulmonologist) did not have a basis for his opinion that plaintiff's Legionnaire's disease was caused by exposure to fumes and smells in the plaintiff's apartment (as opposed to another source). *Russel*, 122 A.3d at 863. There, the trial court held that the case law recognized it is not an abuse of discretion "to allow expert testimony when the expert did not conduct independent testing" and to rely on "published data generated by another expert in the pertinent field," but nonetheless excluded the expert because his testimony regarding the source of illness was "entirely speculative." *Id.*, at 864, 870 (internal citations omitted). The appellate court affirmed the lower court's exclusion of plaintiff's expert where the expert failed to have "a basis in the scientific literature to say that the sewage-contaminated water in the basement of the apartment building was a more likely

2

source of [plaintiff's] exposure [than other sources]." *Id.*, at 870.  In contrast to Plaintiffs' reading, *Russel* does not hold that an expert relying on published data by another expert *in the pertinent field* can rely on methodology by an expert *in another field*. *Id.* Rather, *Russel* stands only for the proposition that an expert's opinions are unreliable where the expert has no discernible basis for his opinion that a toxin could be the source of a plaintiff's illness.

Here, Dr. Herrick derived his very methodology from a field that he admits he is not an expert in, which is improper.  *See*, *e.g.*, *Dura Auto. Sys. Of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) ("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty.").

**II.     Dr. Herrick's Exposure Days Methodology Is Unreliable.**

Plaintiff's Opposition does not rebut the central points in Monsanto's Motion that Dr. Herrick's methodology is flawed and unreliable. First, Dr. Herrick did not actually measure or calculate the level of Roundup that Plaintiffs allegedly absorbed through their skin, a toxicological principle known as "dose" that is foundational in evaluation of toxic exposure. Second, Dr. Herrick ignored scientifically validated methodologies in favor of his exposure-days methodology, which he himself admits is "semi-quantitative." *See* Ex. B, Herrick (*Cotter*) Dep. at 38:9-19.   Third, Dr. Herrick failed to consider factors he acknowledges would reduce actual exposure, including 1) wearing a mask; 2) personal protective equipment; 3) the method of spraying; 4) testimony that Plaintiffs' skin did not come into contact with Roundup and their practice of washing their hands after exposure; and, 5) the use of premixed Roundup concentrate. *See* Monsanto's Motion to Exclude Testimony of Robert F. Herrick ("Mot.") at 10-12.  Each argument is addressed in turn.

**A.     Dr. Herrick's Methodology Does Not Calculate Actual Exposure (Dose)**

Dr. Herrick's "exposure days" methodology—which ignores actual exposure and dose, in favor of total number of days of exposure—is not a reliable way to determine specific causation in a toxic exposure case. *See, e.g., Parkhill v. Alderman-Cave Milling & Grain Co.*, 2010-NMCA-110, 149 N.M. 140, 148, ¶¶ 37-38, 245 P.3d 585, 593 (N.M. Ct. App 2010) (excluding as unreliable causation testimony in a toxic exposure case where the expert "did not

attempt to quantify the dose of [the chemical] received by the [plaintiff]"). Indeed, Dr. Herrick essentially admits this, and testified that his exposure estimates do not relate to the actual biological level in humans. *See* Ex. A, Herrick (*Canning*) Dep. at 151:5-156:6; *id.*, at 154:20-23 ("So it doesn't really track the exposure day and the biological level. They can be quite different because the chemical doesn't really persist."); *see also* Ex. B, Herrick (*Cotter*) Dep. at 82:24-83:6 ("So, you know, you might not find that the exposure day metric relates very well to the biological level.").

Nonetheless, Plaintiffs argue that Dr. Herrick's use of exposure days, in lieu of an analysis of dose or exposure, is consistent with epidemiological literature. Pls. Opp. at 6. In support of this argument, Plaintiffs rely on a discredited study, the Zhang meta-analysis. *Id.* But the Zhang meta-analysis cited by Plaintiffs (Pls. Opp. at 6) has been sharply criticized for its faulty methodologies and flawed conclusions. *See* Ex. C, EPA, *Memorandum: Glyphosate: Epidemiology Review of Zhang et al. (2019) and Leon et al. (2019) publications for Response to Comments on the Proposed Interim Decision* (Jan. 6, 2020) at 2-13; *see also id.*, at 12 ("HED does not believe Zhang et al. (2019) used appropriate methods to perform their meta analyses."). This discredited paper cannot support Dr. Herrick's exposure day methodology.

Next, Plaintiffs argue that the "exposure day methodology is so ubiquitous that even Monsanto's own study, the Agricultural Health Study, uses this methodology for quantifying a person's exposure to Roundup." Pls. Opp. at 7. This is incorrect. In fact, the Agricultural Health Study (the "AHS Study") was far more detailed than the analysis performed by Dr. Herrick—which simply tabulated the number of days a Plaintiff claimed to use Roundup. To this end, the AHS Study employed a methodology that included several metrics that Dr. Herrick admits he did not consider, including among other things 1) whether the person mixed or applied the pesticides; 2) whether the person used personal protective equipment; and 3) the application method used by the person:

> At enrollment, applicators reported the number of years and days per year each pesticide was used, while at follow-up applicators reported the number of days each pesticide was used in the most recent year farmed. Using this information, three metrics of

> *cumulative lifetime exposure were created for each pesticide: ever/never use, lifetime days of use (days per year _number of years), and intensity-weighted lifetime days (lifetime days intensity score). The intensity score was derived from an algorithm based on literature-based measurements and information provided by the applicator, specifically whether the participant mixed or applied pesticides, repaired pesticide-related equipment, used personal protective equipment, and application method used.*

Ex. D, Andreotti *et al.*, *Glyphosate Use and Cancer Incidence in the Agricultural Health Study*, at 510. Contrary to Plaintiffs' argument, the study does not support the proposition that exposure days methodology is widely accepted.[1]

Plaintiffs incorrectly argue that Monsanto failed to cite cases excluding a methodology for failure to account for dose. Pls. Opp. at 7. Plaintiffs are incorrect. *See* Mot. at 8. In *Borg-Warner Corp. v. Flores*, the Texas Supreme Court reversed the appellate court's judgment that a person's exposure to "some" respirable asbestos fibers is sufficient to show that "a product containing asbestos was a substantial factor in causing asbestosis." 232 S.W.3d 765, 766 (Tex. 2007). There, the court stated that in asbestos cases, determining whether defendant's asbestos product was a substantial factor in bringing about plaintiff's injuries involves a dose calculation. *Id.*, at 770. The court found that "absent any evidence of dose, the jury could not evaluate the quantity of respirable asbestos to which [plaintiff] might have been exposed or whether those amounts were sufficient to cause asbestosis." *Id.*, at 771-72.

Similarly, in *Parkhill*, a toxic tort case involving alleged injury due to monensin exposure, a New Mexico appellate court excluded an expert's testimony as unreliable causation testimony where the expert "did not attempt to quantify the dose of [the chemical] received by the [plaintiff]"). 2010-NMCA-110, 149 N.M. 140, 148, ¶¶ 37-38, 245 P.3d 585, 593 (N.M. Ct. App 2010). The court noted that it was possible under the circumstances for the expert to provide

---

[1] Plaintiffs also cite this study to argue that it "defines 'exposure level' as 'calculated by multiplying lifetime exposure days by an intensity score' in order to support the argument that "the science behind examining glyphosate exposure has kept pace with Roundup litigation in that both are widely accepting of exposure days as a proper measurement of exposure." Pls. Opp. at 6. However, as discussed above, Plaintiffs fail to provide the full detail of the AHS methodology, which included an intensity score derived from measurements like whether the participants mixed or applied pesticides, repaired pesticide-related equipment, used personal protective equipment, and what application method was used.

5
REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. ROBERT F. HERRICK

a "reasonable estimate of the magnitude or concentration of monensin exposure" received by the plaintiffs because samples of the product at issue had already been tested by the Department of Agriculture. *Id.* Finding that the dosage received by plaintiffs could have been obtained in this case, the court excluded the testimony of the expert. *Id.*, at 594.[2]

Indeed, "[d]ose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect."). *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005). Dr. Herrick's failure to consider dose renders his opinion unreliable and not helpful to the jury. *Id.* (excluding opinions of pharmacologist and holding that his causation opinions, which did not consider dose, were unreliable).

### B. Dr. Herrick's Exposure-Days Methodology Ignores Scientifically-Accepted Methods of Calculating Dose.

Plaintiffs incorrectly argue that Dr. Herrick's exposure days methodology is sufficient because dose is unobtainable for the Plaintiffs. Pls. Opp. at 6. However, as explained in Monsanto's Motion, the EPA has for decades recommended a verified method to calculate dose in the absence of contemporaneous biological sampling. Ex. C, EPA, *Exposure Assessment Tools by Route – Dermal*. This methodology offers an equation to calculate internal dose to measure the amount of a substance absorbed per kilogram of body weight that provides a basis to compare human exposures with levels of toxicologic significance. *Id*. The EPA found that estimating exposure from dermal exposure (i.e. from water, sediment, outdoor soil or dust, and indoor dust that has settled on various surfaces) requires information on (1) the concentration of

---

[2] The cases cited by Plaintiffs for their statement that Dr. Herrick's "method of quantifying exposure to glyphosate through Roundup use has been admitted to this court and many others in innumerable Roundup cases to date" are distinguishable. *See* Pls. Opp. at 5. Those cases involved toxicologist/epidemiologist experts who testified that the plaintiffs' exposure exceeded a threshold number in the epidemiological literature. *Id*. Here, by contrast, Dr. Herrick offers no opinion on what dose of Roundup is necessary to be capable of causing NHL, *i.e.*, a minimum threshold. In fact, he has squarely testified that he does not know the answer to this question, because he is not a toxicologist. *See* Ex. E, Herrick (*Constantine*) Dep. at 7:24-8:24. His failure to even offer a causation opinion or establish a minimum amount of Roundup capable of causing NHL is further evidence that Dr. Herrick's opinions are not helpful to the jury (*see* Section III below) and that Dr. Herrick is not qualified to render epidemiological opinions (*see* Section I above).

the contaminant in the medium contacted; (2) the timeframe (contact frequency and duration) of the exposure; and, (3) factors that affect dermal exposure like skin surface area, dermal adherence of solids to skin, film thickness of liquids on skin, and residue transfer factors. *Id*. The EPA further provides an equation that "may be used to estimate absorbed dose per event when the inorganic contaminant contacting the skin is in the form of a liquid or aqueous mixture and the amount of the contaminant on the surface is expressed as a concentration." *Id*. To determine the absorbed dose, the EPA requires multiplying the time of contact (hours/event) by the concentration of the chemical contacting the skin (mg/cm3) and the permeability coefficient (cm/hr). *Id.*

By contrast, Dr. Herrick employed a methodology that only considered the time that each Plaintiff claims to have sprayed Roundup. This methodology did not account for any additional factors recommended by the EPA, including among other things the skin surface area available for contact, body weight, or the concentration of the Roundup mixtures used by Plaintiffs. Dr. Herrick is aware of the EPA's recommended methodology to calculate internal dose, and even agrees with the EPA's definition of internal dose. Ex. A, Herrick *Nelson* and *Canning* Dep. at 62:12-14 ("[D]ose is the portion or the characteristic of exposure that can reach a site in the body and have some effect."). However, Dr. Herrick opted against using this gold standard (and reliable) methodology utilized by the EPA and numerous studies. Instead, he used his own methodology, which he admits is only "semi-quantitative." *See* Ex. B, Herrick (*Cotter*) Dep. at 38:9-19.

Similarly, Dr. Herrick is also aware of other methods to evaluate inhalation exposure, including the Advanced Research Tool (ART methodology), which he admits would give a "more quantitative assessment" of a person's exposure. *See* Ex. A, Herrick (*Canning*) Dep. at 131:4-134:8. However, Dr. Herrick summarily dismisses this accepted methodology in favor of his own, which does not even endeavor to calculate dose. Dr. Herrick's failure to use these scientifically validated methodologies in favor of his own "semi-quantitative" methodology (*see* Ex. B, Herrick (*Cotter*) Dep. at 38:9-19) renders his opinions unreliable. They should be

excluded. *McClain*, 401 F.3d at 1242 ("Dose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect.").

### C. Dr. Herrick Did Not Account for Confounding Factors That He Admits Would Reduce Plaintiffs' Exposure.

Plaintiffs' Opposition entirely fails to address Monsanto's argument that Dr. Herrick's opinions are unreliable because Dr. Herrick failed to consider confounding variables that he himself admits would reduce his exposure estimates. These include (among other things):

- Dr. Herrick's failure to consider the Plaintiffs' personal protective equipment, including wearing masks, despite his admission that a Plaintiff's use of personal protective equipment would reduce exposure to Roundup. *See* Monsanto's Mot. at 11-12.

- Dr. Herrick's failure to consider the method of spraying, despite his admission that certain spraying methods would result in lower exposure. *Id*. at 12.

- Dr. Herrick's failure to consider Mr. Nelson's testimony that he does not recall getting Roundup on his skin because of all the precautions he took. *Id*.

- Dr. Herrick's failure to consider the Plaintiffs' use of premixed Roundup, which Dr. Herrick admits could reduce the risk of exposure to Roundup. *Id*.

Dr. Herrick's failure to take account of confounding variables that were present in this case—and that Dr. Herrick himself admits would reduce his exposure estimates for these Plaintiffs—renders his opinions unreliable. As this Court acknowledged when precluding other plaintiffs' experts from offering similar "junk science" specific causation testimony in the Roundup MDL, "[f]ailing to take account of likely confounders by presenting and relying upon only unadjusted (or minimally adjusted) estimates is a serious methodological concern." *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1140 (N.D. Cal. 2018). Dr. Herrick's opinions should be excluded. *Id*.

### III. Dr. Herrick's Opinions Are Not Scientific and Are Within the Knowledge of the Common Juror.

Plaintiffs fail to seriously address Monsanto's argument that Dr. Herrick's opinions based on his exposure-days methodology is not scientific and is, instead, within the knowledge

of the common juror. Plaintiffs fail to refute the fact that Dr. Herrick simply reviews the Plaintiffs' testimony, accepts that exposure recollection as true, and applies basic math to calculate the total number of days Plaintiffs recalled spraying or being exposed to Roundup. Plaintiffs admit that "the computations required by this methodology may be simple math," but argue that the selection of the methodology is the work of a scientist. Pls. Opp. at 7. But even if that were so, the selection of epidemiological methodology—which is the only "scientific" activity Plaintiffs point to—is outside of Dr. Herrick's expertise, as he is not an epidemiologist. *See* Ex. A, Herrick (*Canning*) Dep. at 54:1-23; 58:16-59:6.

As articulated in Monsanto's Motion, interpreting testimony and applying simple math *is* within the knowledge of the common juror. Therefore, Dr. Herrick's opinions are unhelpful to the jury and should be excluded. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005) ("Taking a simple average of 103 numbers, though technically a statistical determination, is not so complex a task that litigants need to hire experts in order to deem the evidence trustworthy. A mathematical calculation well within the ability of anyone with a grade-school education is, in our opinion, more aptly characterized as a lay opinion under Fed. R. Evid. 701."); *Ray v. AT&T Mobility LLC*, No. 2:17-CV-68 (WOB-CJS), 2020 WL 535787, at *7 (E.D. Ky. Feb. 3, 2020) ("The lay jury is endowed with the common knowledge necessary to add, divide, and multiply the figures presented by the parties without 'expert' testimony.").

## CONCLUSION

The Court should grant Monsanto's motion to exclude Plaintiff's exposure expert Robert F. Herrick because his opinions are unreliable, unhelpful to the jury, and inadmissible.

Dated: January 22, 2024                              Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Linda C. Hsu*
Linda C. Hsu
Attorneys for Defendant Monsanto Company

# CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 22nd day of January, 2024, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system, which sent notice of the filing to all appearing parties of record.

                                          */s/ Linda C. Hsu*
                                          Linda C. Hsu