**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10ᵗʰ Floor
Washington, DC 20036
Tel:  202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843 | Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100 | Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| *Brett Beckfield v. Monsanto Company,*<br>*3:21-cv-05322-VC* | **MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF CHRISTOPH F.A. VOGEL** |
| | **Hearing:**<br>Date:    March 1, 2024<br>Time:    10:00 a.m.<br>Place:   Courtroom 4 |

**INTRODUCTION**

Plaintiff's opposition brief ("Pl. Opp.") fails to address the core points and specific challenges raised in Monsanto's motion and does not remedy the methodological flaws in Dr. Vogel's opinions. Much of Plaintiff's opposition consists of large blocks of text, copied and pasted from Dr. Vogel's report with minimal context and almost no argument.  It fails to adequately address or defend Dr. Vogel's methodology relating to his selection of scientific literature and his novel assessment of causation without calculating dose. It likewise fails to adequately address Dr. Vogel's failure to consider or rule out natural causes for Plaintiff's NHL, in spite of the fact that natural genetic mutations are by far the most common cause of NHL in humans. Plaintiff's opposition also fails to show that Dr. Vogel's qualifications have any relevance to the topics or questions at issue in this case.

In an attempt to save Dr. Vogel's flawed methodology, Plaintiff's opposition argues that these challenges speak to the weight of the evidence, not whether it is admissible. *See* Pl. Opp. at 2, 7. But Plaintiff's assertion that "any challenges to [Dr. Vogel's methodological approach] should go to the weight of their opinions – not their admissibility" would have the Court entirely disregard the requirement of reliability in Federal Rule of Evidence 702. *See* Pl. Opp. at 7; Fed. R. Evid. 702.

For the reasons described in Monsanto's motion, Dr. Vogel's opinion does not "reflect[] a reliable application of the principles and methods to the facts of the case."  Fed. R. Ev. 702. Thus, his opinion is inadmissible and should be excluded.

**ARGUMENT**

**I.    Plaintiff Failed to Adequately Defend or Address Dr. Vogel's Flawed Methodology for Selecting And Applying Scientific Literature.**

Plaintiff's opposition does not rebut Monsanto's argument that Dr. Vogel's methodology for selecting and applying scientific literature is flawed and unreliable. In its motion, Monsanto described Dr. Vogel's failure to seriously consider several scientifically valid and relevant sources of data, including studies that he admits to be reliable and relevant. Defendant's Motion to Exclude Testimony of Christoph Vogel ("Def. Mot.") at 4-5. Specifically, it describes how Dr. Vogel failed

MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY
OF CHRISTOPH VOGEL

to consider the largest study he has ever heard of, which addressed the relationship between glyphosate and NHL among more than 50,000 applicators in farming and licensed pesticide application. *Id.* Just as Dr. Vogel failed to offer any explanation for his decision to disregard this comprehensive and high-quality study, Plaintiff's opposition fails to offer any explanation or argument to justify this omission. Monsanto's motion likewise describes Dr. Vogel's reliance on studies that have been extensively criticized and discredited as inadequate for scientific analysis. *Id.* at 5-6. Again, like Dr. Vogel himself, Plaintiff offers no explanation or justification for this choice, or for Dr. Vogel's methodology for deciding which science to rely on and which science to ignore.

Rather than offering *any argument at all* in support of Dr. Vogel's methodology for selecting and applying scientific literature, Plaintiff's opposition essentially offers two conclusory sentences with a block of text from Dr. Vogel's own report: "In arriving at his opinions in this matter, Dr. Vogel discussed his methodology in his expert report… Dr. Vogel's methodological approach is similar to what this Court has already approved.[1]" *See* Pl. Opp. at 6-7. With virtually no further explanation, Plaintiff ignores the substance of Monsanto's arguments on this point and asks the Court to rely on Dr. Vogel's assessment of his own work, which he declares to be "compelling" and "the best possible answer." *See id.* at 6-7.

Dr. Vogel's application of the science should only be admitted under *Daubert* if it has been generally accepted in the scientific community. *See generally Daubert,* 509 U.S. at 593-94. Plaintiff, like Dr. Vogel himself, cannot justify Dr. Vogel's decisions to omit high-quality, reliable evidence while relying on discredited junk science. Plaintiff does not argue that these decisions were based on generally accepted scientific principles because they were not. For this reason alone, Dr. Vogel's opinions should be excluded.

---

[1] Plaintiff's cite to PTO 85 is also misplaced. *See* Pl. Opp. at 7, footnote 1. It quotes the Court's holding relating to expert review of medical records and evaluation of general causation evidence—that holding does not support a cherry-picked review of scientific literature, permitting experts to arbitrarily select studies to support their conclusion.

MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY
OF CHRISTOPH VOGEL

**II.   Plaintiff Cannot Defend Dr. Vogel's Novel and Unreliable Methodology for Assessing Specific Causation, Where He Failed to Calculate Absorbed Dose or Actual Exposure.**

In its motion, Monsanto demonstrated that, as courts have held in similar cases across the country, an assessment of dose is central to an assessment of causation. Def. Mot. at 6-8. As described there, Dr. Vogel failed to calculate the amount of Roundup or glyphosate that Plaintiff absorbed (a toxicological principle known as systemic "dose") or even the amount of Roundup or glyphosate that came into contact with Plaintiff's skin ("exposure"). *Id.* In fact, Dr. Vogel himself admitted that he does not know how much glyphosate (if any) Plaintiff may have absorbed, and conceded that glyphosate on the skin would have a difficult time entering the body. *Id.* at 7.  As described in Monsanto's motion, Dr. Vogel's "exposure time" methodology—which ignores any calculation of dose, in favor of the total amount of time Plaintiff spent spraying Roundup—is not a reliable way to determine specific causation in a toxic exposure case. *Id.* at 6-8.

Aside from a block quote lifted from Dr. Vogel's report, Plaintiff essentially ignores this critique of Dr. Vogel's methodology, stating simply that "Dr. Vogel addressed absorption and exposure in his Rule 26 report as follows." Pl. Opp. at 7. Plaintiff's opposition does not address the absence of any dose calculation—the word "dose" does not even appear in the block of text pasted from Dr. Vogel's report. *Id.* at 7-8. As discussed in Monsanto's motion, courts around the country have held that an assessment of dose is central to the assessment of causation in Roundup cases. Def. Mot. at 8; *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005) ("Dose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect."); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 770-73 (Tex. 2007) (discussing the importance of dose on causation inquiry and reversing judgment in plaintiff's favor following a jury trial where plaintiff did not establish sufficient dose to cause alleged injuries); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 892 F.3d 624, 639 (4th Cir. 2018) ("all chemical agents are intrinsically hazardous," and "whether they cause harm is only a question of dose."); *Parkhill v. Alderman-Cave Milling & Grain Co.*, 2010-NMCA-110,149 N.M. 140, 148, ¶¶ 37-38, 245 P.3d 585, 593 (N.M. Ct. App 2010) (excluding as unreliable causation

MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY
OF CHRISTOPH VOGEL

testimony in a toxic exposure case where the expert "did not attempt to quantify the dose of [the chemical] received by the [plaintiff]").

Plaintiff offers no argument and no rebuttal on this point, ignoring the pivotal concept of dose altogether. As discussed in Monsanto's motion, Dr. Vogel's failure to consider dose or exposure renders his opinion unreliable and not helpful to the jury. The jury could apply his "exposure time" methodology with a calculator or a slip of scratch paper.

As other courts have held in Roundup cases around the country, dose is critical to the question of specific causation. There is no reliable or generally accepted way to assess specific causation without assessing dose. Plaintiff's failure to address this question in the opposition further demonstrates that no justification can be made for Dr. Vogel's failure to do so. The Court should reject this methodology because it is not generally accepted that a specific causation opinion in a toxic exposure case can disregard the critical concepts of absorbed dose and actual exposure in favor of a formulaic "exposure days" calculation.

III.   **Dr. Vogel Was Required to Rule Out Natural Causes of Plaintiff's NHL. Where Natural Causes are the Most Likely Potential Cause of Plaintiff's NHL.**

Rather than justifying or defending Dr. Vogel's unreliable Roundup-first methodology in establishing his specific causation opinion, Plaintiff simply argues that Dr. Vogel "need not analyze every conceivable risk factor." Pl. Opp. at 8. Plaintiff appears to argue that, because Dr. Vogel is "not a medical doctor" and he "does not make medical diagnoses," he need not justify his decision to dismiss alternative causes for Plaintiff's NHL, no matter how probable those alternative causes are. Contrary to Plaintiff's assertions, Monsanto's motion does not argue that Dr. Vogel must rule out "all potential causes" of Mr. Beckfield's NHL;[2] it properly challenges methodology, where he **disregarded highly probable alternative causes, including one that is widely believed to account for approximately 95% of NHL cases**. *See* Pl. Opp. at 9, Def. Mot. at 8. As Dr. Vogel

---

[2] Plaintiff inaccurately asserts that the "overarching theme" of Monsanto's motion is "to rehash" the question of whether Plaintiff's experts properly "ruled in" Roundup as a potential cause for Plaintiff's NHL. In truth, the fact that Dr. Vogel failed to *rule out* statistically significant alternative causes of Plaintiff's NHL is one of several discrete arguments briefed in Monsanto's motion, separate and distinct from whether Roundup has been "ruled in."

MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF CHRISTOPH VOGEL

conceded in his deposition, naturally-occurring NHL is even more likely in Mr. Beckfield's case, where **Mr. Beckfield's family history puts him at a 31% increased risk of naturally occurring NHL**. Def. Mot. at 8-9.

Dr. Vogel also offers no basis to rule out idiopathic causes (including naturally-occurring genetic mutations) as the cause of Plaintiff's NHL. As this Court has recognized, Monsanto's evidence regarding naturally-occurring genetic mutations is offered to rebut the testimony of Plaintiffs' specific causation experts who, like Dr. Vogel, simply rule-in Roundup:

> THE COURT: . . . why does Monsanto want to put this witness on at trial? The answer to me, it seems, is obvious; right? You have these specific causation experts who are doing a very sketchy job of differential diagnosis or differential etiology. And basically, what they are saying is, well, you know, there are these four risk factors for NHL, and the patient didn't have these three risk factors. The only risk factor was exposure to Roundup. Therefore, the Roundup caused the patient's NHL; right? I mean, that is -- I'm oversimplifying a little bit. I mean, they're finessing it a little bit. But effectively, that seems to be what the – that's the message from these specific causation experts.
>
> That type of testimony is obviously quite sketchy, and you know, Tomasetti's testimony helps a juror understand why the testimony of these specific causation experts is so sketchy; right?

*See* Supplemental Hsu Decl., Ex. I, 12/12/23 *Daubert* Hr.g' Tr. re: Dr. Christian Tomasetti in *Delorme-Barton* ("Tomasetti *Daubert* Hr.g'") at 157:5-22.   The Court has also recognized that evidence regarding naturally-occurring genetic mutations explains causation of NHL without regard to environmental factors:

> THE COURT: And what it's been up until now, I think, is, well, the high percentage of NHL cases are idiopathic. And that's a very abstract concept for the jurors, and you know, it's easy for the plaintiff's experts to sort of wave that away; right?
> …
> And you're putting meat on the bones of what you've said previously which is that such a high percentage of NHL cases are idiopathic.

*Id*. at 158:17-25.

> THE COURT: why isn't it very helpful for the jury to hear that X percent of -- were high -- even if there's no number attached to it -- a high percentage of the, you know, cancer and a high percentage of NHL, you know, as is -- is -- can be attributed simply to these replication errors without regard to environmental factors, and here's how it works.

162:21-163:3.

MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY
OF CHRISTOPH VOGEL

Courts consistently exclude experts, like Dr. Vogel, who fail to provide scientifically valid reasons to exclude idiopathic or naturally-occurring causes. *Hall v. Conoco Inc*., 886 F.3d 1308, 1314 (10th Cir. 2018) (affirming exclusion of expert's differential diagnosis due to the expert's "failure to rule out idiopathic causes," a "fatal error tainting the differential diagnosis"); *G v. Fay Sch., Inc.*, 282 F. Supp. 3d 381, 391 (D. Mass. 2017) (excluding expert opinions on causation because, among other reasons, the expert "neglect[ed] to account for the possibility of an idiopathic etiology"); *Pritchard v. Dow Agro Sciences*, 705 F. Supp. 2d 471, 492 (W.D. Pa. 2010) (excluding specific causation opinion because "the presence of a known risk factor" for NHL was an insufficient basis "for ruling out idiopathic origin"), aff'd, 430 Fed. App'x 102 (3rd Cir. 2011).

Although the law may not require Dr. Vogel to "eliminate all other possible causes" for Plaintiff's NHL, no reliable methodology would permit him to dismiss the overwhelmingly most likely cause of Plaintiff's NHL. Aside from purporting that Dr. Vogel "need not" address these highly likely causes, Plaintiff offers no true rebuttal to defend or explain Dr. Vogel's methodology on this point. Instead, Plaintiff states simply that "[Dr. Vogel] discussed [these causes] in his report." Pl. Opp. at 9.

As Dr. Vogel stated himself, he "ha[s] no evidence" to support his decision to disregard these statistically significant and highly probable causes of Mr. Beckfield's NHL. *See* Def. Mot. at 9. By his own admission, Dr. Vogel "cannot rule [them] out." *Id.* Dr. Vogel is required to provide scientifically valid reasons to exclude idiopathic causes for Mr. Beckfield's NHL; a passing mention of these causes in Dr. Vogel's report is not sufficient. Dr. Vogel's methodology is unreliable and his testimony on specific causation is inadmissible because he failed to rule out natural causes, where these are overwhelmingly the most likely cause of Mr. Beckfield's NHL.

## IV.   Vogel is Not Qualified to Testify on the Subject at Issue: Whether Roundup Caused Plaintiff's NHL

In an effort to show that Dr. Vogel is qualified to testify about the issue at hand, Plaintiff's opposition recites much of Dr. Vogel's CV in detail. However, Plaintiff's recitation of Dr. Vogel's accomplishments and experience demonstrates that he is not qualified to testify about the issue at

MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY
OF CHRISTOPH VOGEL

hand. Plaintiff notes that Dr. Vogel has expertise in dioxin,[3] particulate matter air pollutants, and other substances unrelated to glyphosate.

As noted in Monsanto's motion, an expert's testimony is inadmissible if his field of expertise is not related to the subject on which he seeks to offer testimony. *See White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002); *see also Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 828 (5th Cir. 1993) (affirming exclusion of experts who "stepped outside of their areas of expertise" into an area in which they had no training); *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 612–14 (7th Cir. 2002) ("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist of a different specialty.").

Plaintiff's opposition does not describe or reference any knowledge Dr. Vogel holds related to glyphosate—the chemical at issue in this case. Likewise, Plaintiff does not address or remedy Dr. Vogel's own testimony that he is not qualified to apply his knowledge of animal lymphoma to humans. *See* Def. Mot. at 3 (detailing Dr. Vogel's testimony that he "[doesn't] think you can really translate" his research to NHL in humans, and that "you would have to ask an MD" how applicable this research would be to Mr. Beckfield's NHL).

While Dr. Vogel may be qualified to opine on some scientific questions, Plaintiff can point to no expertise relating to glyphosate, and Dr. Vogel has testified that he has no expertise related to NHL in humans. Thus, he is not qualified to offer his opinion on whether Roundup causes NHL or caused Plaintiff's NHL. These questions are far outside the scope of his knowledge, skills, or expertise.

---

[3] Monsanto notes that much of Dr. Vogel's experience relates to dioxin, a well-known component of Agent Orange. If Dr. Vogel is permitted to testify, the Court should expressly prohibit him from discussing dioxin or Agent Orange in his testimony or opinions.

Courts routinely prohibit the introduction of evidence related to Agent Orange (and by extension, dioxin) in Roundup cases. *See e.g., D. Johnson v. Monsanto Co.* (San Francisco Cnty., June 20, 2018, No. CGC-16-550128) Trial Transcript at 156:12–17 (holding such evidence inadmissible because Agent Orange was manufactured by a company that no longer exists and at a time "too remote…to be relevant" today); *Caballero v. Monsanto Co.* (Cal. Super. Ct., Contra Costa Cnty., Jan. 24, 2020, Case No. MSC19-01821) Order at 59 ("Any evidence about PCBs or Agent Orange would introduce products that are remote in time, likely to stir animosity, and that have no bearing on this case").

MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY
OF CHRISTOPH VOGEL

**V.     The Court Should Exclude Dr. Vogel's Opinions on Cancer "Promotion" and on The George Study.**

Plaintiff's opposition confirms Monsanto's concern that Dr. Vogel intends to opine that Roundup is a cancer "promoter," based on a mouse study known as the George study. On this point, Plaintiff offers two sentences of argument and a three-page block of text, copied and pasted from Dr. Vogel's report. Pl. Opp. at 9-13. Aside from declaring that Dr. Vogel "properly opines" on this topic, and that Dr. Vogel relies on some additional studies alongside the George study, Plaintiff's opposition offers no justification or argument to support Dr. Vogel's reliance on this discredited study. Plaintiff likewise fails to address the fact that any opinion on glyphosate as a cancer "promoter" would be improper because it was not properly disclosed. *See* Def. Mot. at 11.

Plaintiff's low-effort attempt to preserve its opportunity to offer undisclosed testimony on this discredited and rejected theory[4] should be rejected by this court. If Dr. Vogel is allowed to testify, he should be precluded from testifying about this theory.

## CONCLUSION

For the reasons stated in Monsanto's motion and this reply, the Court should grant Monsanto's Motion to Exclude Testimony of Christoph Vogel. In the alternative, if the Court admits any portion of Dr. Vogel's testimony, it should exclude any testimony relating to glyphosate as a cancer "promoter" based on the George study.

Dated:  January 22, 2024                          Respectfully submitted,

*/s/ Linda C. Hsu*
Linda C. Hsu
Attorney for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing (NEF) to all counsel of record who are CM/ECF participants.

*/s/ Linda C. Hsu*
Linda C. Hsu

---

[4]     *See* Def. Mot. Exhibits E-G.

8