# EXHIBIT I

**Pages 1 - 165**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

```
KAREN DELORME-BARTON,           )
                                )
            Plaintiff,          )
                                )
    vs.                         )      NO. C 18-01427-VC
                                )
MONSANTO COMPANY,               )
                                )
            Defendant.          )
                                )
```

San Francisco, California
Tuesday, December 12, 2023

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:
For Plaintiffs:

        WEITZ & LUXENBERG PC
        700 Broadway
        New York, New York  10003
  BY:  **JERRY M. KRISTAL, ATTORNEY AT LAW**
        **ROBIN L. GREENWALD, ATTORNEY AT LAW**

        WAGSTAFF LAW FIRM
        940 Lincoln Street
        Denver, Colorado 80203
  BY:  **AIMEE WAGSTAFF, ATTORNEY AT LAW**

For Defendant:

        GOLDMAN, ISMAIL, TOMASELLI, BRENNAN
         & Baum LLP
        564 West Randolph Street - Suite 400
        Chicago, Illinois  60661
  BY:  **SHAYNA S. COOK, ATTORNEY AT LAW**
        **SARAH KINTER, ATTORNEY AT LAW**

(APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
            Official Reporter, CSR No. 12219

**Exhibit I Page - 1**

1  **APPEARANCES:  (CONTINUED)**

2  For Defendant:
   WILKINSON STEKLOFF LLP
3  2001 M Street NW - 10th Floor,
   Washington, D.C. 20036
4  **BY:  BRIAN L. STEKLOFF, ATTORNEY AT LAW**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Exhibit I Page - 2**

```
 1                         I N D E X

 2    Tuesday, December 12, 2023 - Volume

 3    DEFENDANTS' WITNESSES                              PAGE   VOL.

 4    TOMASETTI, CRISTIAN
      (SWORN)                                             11     0
 5    Direct Examination by Ms. Cook                      11     0
      Cross-Examination by Mr. Kristal                    84     0
 6    Redirect Examination by Ms. Cook                   147     0
      Recross-Examination by Mr. Kristal                 156     0
 7
                             E X H I B I T S
 8
      EXHIBITS                                  IDEN   EVID   VOL.
 9
       36                                              147     0
10
       37                                              147     0
11
       49                                              147     0
12
       51                                              147     0
13
       55                                              147     0
14
       101                                              68     0
15
       104                                              12     0
16
       106                                              22     0
17
       107                                              56     0
18
       111                                              68     0
19
       113                                              51     0
20
       119                                              57     0
21
```

**Exhibit I Page - 3**

1   causation or specific causation?  That's what I'm struggling
2   with a little bit.
3          Feel free to come up.
4          Because when I think about it, I think about:  Okay.
5   Well, why does Monsanto like this witness?  And why does
6   Monsanto want to put this witness on at trial?
7          The answer to me, it seems, is obvious; right?  You have
8   these specific causation experts who are doing a very sketchy
9   job of differential diagnosis or differential etiology.  And
10  basically, what they are saying is, well, you know, there are
11  these four risk factors for NHL, and the patient didn't have
12  these three risk factors.
13         The only risk factor was exposure to Roundup.  Therefore,
14  the Roundup caused the patient's NHL; right?  I mean, that
15  is -- I'm oversimplifying a little bit.  I mean, they're
16  finessing it a little bit.  But effectively, that seems to be
17  what the -- that's the message from these specific causation
18  experts.
19         That type of testimony is obviously quite sketchy, and
20  you know, Tomasetti's testimony helps a juror understand why
21  the testimony of these specific causation experts is so
22  sketchy; right?
23         But you designated him as a general causation expert, and
24  so I'm just trying to sort out in my mind, is that a problem?
25  Is it a problem that you merely designated him as a general

Exhibit I Page - 4

```
 1  causation expert as opposed to, say, a rebuttal expert on the
 2  issue of specific causation?
 3      I know there's a huge overlap between general and
 4  specific, and you can't really -- it's hard to untangle the
 5  two, but you get my question?
 6          MS. COOK:  Yes.  Absolutely.  And we designate him as
 7  a general causation expert.  He does not look at the files of
 8  the plaintiffs, and he does not talk about -- he does not give
 9  an opinion about the particular plaintiff.
10      And what our specific -- what our -- so in part, it is
11  helpful to the jury in our minds to rebut the plaintiff's
12  specific causation experts who say, "Well, if it's not HPV and
13  it's not whatever else, it must be Roundup.  We have to find
14  something.  Otherwise, why would this person have cancer?"
15          THE COURT:  Right.
16          MS. COOK:  So it's sort of setting the table --
17          THE COURT:  And what it's been up until now, I think,
18  is, well, the high percentage of NHL cases are idiopathic.  And
19  that's a very abstract concept for the jurors, and you know,
20  it's easy for the plaintiff's experts to sort of wave that
21  away; right?
22          MS. COOK:  Yes.
23          THE COURT:  And you're putting meat on the bones of
24  what you've said previously which is that such a high
25  percentage of NHL cases are idiopathic.
```

**Exhibit I Page - 5**

```
 1   attributable to the --
 2           THE COURT:  I don't know if he would say that or not,
 3   but what is your point as it relates to a motion to exclude
 4   him?
 5           MR. KRISTAL:  My point is, it's not his --
 6           THE COURT:  As it relates to the motion to exclude
 7   him, what's your point?
 8           MR. KRISTAL:  I was addressing -- I guess it's the fit
 9   analysis because the random nature and the stem cell stuff I
10   don't think really relates.  I think the nub of the matter and
11   why Monsanto calls him and why we're opposing him is
12   the 2017 percent of random mutations.
13        First of all, the jury is never asked to consider whether
14   or not the person had a proportion of random mutations.  It's
15   more the cancer cases which is the PAF Parkinson stuff.  And
16   I believe it's not reliable.
17        So it doesn't fit a question that the jury is being asked
18   to answer.  In terms of the population attributable
19   fractions -- in other words, what's the difference --
20           THE COURT:  I don't under- -- I guess I don't
21   understand your point.  I mean, why isn't it very helpful to
22   the jury to hear -- I mean, assuming -- assuming the opinion is
23   reliable, why isn't it very helpful for the jury to hear that
24   X percent of -- were high -- even if there's no number attached
25   to it -- a high percentage of the, you know, cancer and a high
```

Exhibit I Page - 6

1   percentage of NHL, you know, as is -- is -- can be attributed

2   simply to these replication errors without regard to

3   environmental factors, and here's how it works.

4           **MR. KRISTAL:**  Because that's not what Dr. Tomasetti is

5   saying, which is the whole misleading portion.  There's a

6   difference between --

7           **THE COURT:**  I mean, he just spent the day on the stand

8   saying that.

9           **MR. KRISTAL:**  No.  Maybe I -- if we had a chance,

10  perhaps, to have some supplemental briefing after the

11  transcript.

12      There's a difference between saying a certain proportion

13  of random driver gene mutations are attributable to R, which is

14  not the same as saying there's a certain proportion of random

15  mutations that are cancer case causers.

16      So one is the calculation that we just went over.  The

17  other is the population attributable fraction.  The confusion

18  between the two random driver gene mutations and the

19  attributable portion of cancer cases is what IARC was confused

20  about, Ramazzini was confused about, other scientists were

21  confused about, and I believe what an average juror, if they

22  were confused about it, they're not getting the distinction.

23      And sometimes -- I have examples -- where the question was

24  asked by the attorney, "Based on your research, what percent of

25  cancer, NHL cancer cases, are caused by environmental factors?"

Exhibit I Page - 7

1    **MS. GREENWALD:** Thank you.

2    **THE CLERK:** Court is adjourned.

3    (Proceedings adjourned at 3:47 p.m.)

4    ---o0o---

6    **CERTIFICATE OF REPORTER**

7    I certify that the foregoing is a correct transcript
8    from the record of proceedings in the above-entitled matter.

10   DATE:    Wednesday, December 20, 2023

_____
15   Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
     Official Reporter, U.S. District Court

**Exhibit I Page - 8**