# EXHIBIT O

```
                                          Pages 1 - 165

         UNITED STATES DISTRICT COURT

       NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

KAREN DELORME-BARTON,           )
                                )
          Plaintiff,            )
                                )
   vs.                          )      NO. C 18-01427-VC
                                )
MONSANTO COMPANY,               )
                                )
          Defendant.            )
                                )

                              San Francisco, California
                              Tuesday, December 12, 2023
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:
For Plaintiffs:
```
                     WEITZ & LUXENBERG PC
                     700 Broadway
                     New York, New York  10003
                BY:  JERRY M. KRISTAL, ATTORNEY AT LAW
                     ROBIN L. GREENWALD, ATTORNEY AT LAW

                     WAGSTAFF LAW FIRM
                     940 Lincoln Street
                     Denver, Colorado 80203
                BY:  AIMEE WAGSTAFF, ATTORNEY AT LAW
```

For Defendant:
```
                     GOLDMAN, ISMAIL, TOMASELLI, BRENNAN
                       & Baum LLP
                     564 West Randolph Street - Suite 400
                     Chicago, Illinois  60661
                BY:  SHAYNA S. COOK, ATTORNEY AT LAW
                     SARAH KINTER, ATTORNEY AT LAW
```

            (APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              Official Reporter, CSR No. 12219

```
 1    APPEARANCES:   (CONTINUED)

 2    For Defendant:
                              WILKINSON STEKLOFF LLP
 3                            2001 M Street NW - 10th Floor,
                              Washington, D.C. 20036
 4                    BY:     BRIAN L. STEKLOFF, ATTORNEY AT LAW

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  **Q.** Do you -- did you calculate that data for non-Hodgkin's
2  lymphoma?
3  **A.** Yes.
4  **Q.** What did you find in terms of the proportion of the
5  mutations in non-Hodgkin's lymphoma that were due to
6  environmental factors?
7  **A.** Yes.  So about 4 percent, 3.9, was the proportion
8  attributable to environmental factors, using conservative
9  estimates, by the way.
10 **Q.** And what -- go ahead.
11 **A.** And then about, you know, half a percentage point due to
12 heredity, which left the rest as attributable to just internal
13 processes.
14 **Q.** And when you made these calculations, did you rely on
15 published epidemiological data?
16 **A.** Yes.
17 **Q.** And where did you get that from?
18 **A.** Probably the most important source was a paper by Parkin.
19 This was -- there were, at that time, two largest studies in
20 the world about all cancer -- all factors, you know, associated
21 to cancer and across all cancer types.
22      Parkin was the European, the English one.  They had a bit
23 more details than the American one, so we end up using them.
24 And Cancer Research UK was another major source.
25 **Q.** Okay.  So Parkin, was that publication -- which by the

1   **THE CLERK:** Remain seated.  Come to order.  Court is
2   back in session.
3           **THE COURT:** Okay.  You can resume.
4           **MS. COOK:** Thank you, Your Honor.
5   **BY MS. COOK:**
6   **Q.** Dr. Tomasetti, we were talking about your 2017 publication
7   which concluded in part that some 95 percent or so of the
8   mutations in NHL were due to replicative errors.
9       Since 2017, have other scientists confirmed that
10  replicative errors are a major component of mutations related
11  to cancer?
12  **A.** Yes.  Many papers.  Yes.
13  **Q.** Are you aware of any major cancer organizations that have
14  also recognized that replicative errors play an important role
15  in cancer causation?
16  **A.** Yes.
17  **Q.** And I'll ask you to look at Exhibit 119.  And let us know
18  whether that is from the American Cancer Society website.
19  **A.** Yes.
20          **MS. COOK:** Your Honor, I'd offer Exhibit 119.
21          **MR. KRISTAL:** No objection, Your Honor.
22          **THE COURT:** Admitted.
23      (Defendants' Exhibit 119 received in evidence.)
24  **BY MS. COOK:**
25  **Q.** And on page 4, there's a discussion of the difference

1  causation or specific causation?  That's what I'm struggling
2  with a little bit.
3      Feel free to come up.
4      Because when I think about it, I think about:  Okay.
5  Well, why does Monsanto like this witness?  And why does
6  Monsanto want to put this witness on at trial?
7      The answer to me, it seems, is obvious; right?  You have
8  these specific causation experts who are doing a very sketchy
9  job of differential diagnosis or differential etiology.  And
10 basically, what they are saying is, well, you know, there are
11 these four risk factors for NHL, and the patient didn't have
12 these three risk factors.
13     The only risk factor was exposure to Roundup.  Therefore,
14 the Roundup caused the patient's NHL; right?  I mean, that
15 is -- I'm oversimplifying a little bit.  I mean, they're
16 finessing it a little bit.  But effectively, that seems to be
17 what the -- that's the message from these specific causation
18 experts.
19     That type of testimony is obviously quite sketchy, and
20 you know, Tomasetti's testimony helps a juror understand why
21 the testimony of these specific causation experts is so
22 sketchy; right?
23     But you designated him as a general causation expert, and
24 so I'm just trying to sort out in my mind, is that a problem?
25 Is it a problem that you merely designated him as a general

```
 1  causation expert as opposed to, say, a rebuttal expert on the
 2  issue of specific causation?
 3       I know there's a huge overlap between general and
 4  specific, and you can't really -- it's hard to untangle the
 5  two, but you get my question?
 6            MS. COOK:  Yes.  Absolutely.  And we designate him as
 7  a general causation expert.  He does not look at the files of
 8  the plaintiffs, and he does not talk about -- he does not give
 9  an opinion about the particular plaintiff.
10       And what our specific -- what our -- so in part, it is
11  helpful to the jury in our minds to rebut the plaintiff's
12  specific causation experts who say, "Well, if it's not HPV and
13  it's not whatever else, it must be Roundup.  We have to find
14  something.  Otherwise, why would this person have cancer?"
15            THE COURT:  Right.
16            MS. COOK:  So it's sort of setting the table --
17            THE COURT:  And what it's been up until now, I think,
18  is, well, the high percentage of NHL cases are idiopathic.  And
19  that's a very abstract concept for the jurors, and you know,
20  it's easy for the plaintiff's experts to sort of wave that
21  away; right?
22            MS. COOK:  Yes.
23            THE COURT:  And you're putting meat on the bones of
24  what you've said previously which is that such a high
25  percentage of NHL cases are idiopathic.
```

1  attributable to the --
2        **THE COURT:** I don't know if he would say that or not,
3  but what is your point as it relates to a motion to exclude
4  him?
5        **MR. KRISTAL:** My point is, it's not his --
6        **THE COURT:** As it relates to the motion to exclude
7  him, what's your point?
8        **MR. KRISTAL:** I was addressing -- I guess it's the fit
9  analysis because the random nature and the stem cell stuff I
10 don't think really relates. I think the nub of the matter and
11 why Monsanto calls him and why we're opposing him is
12 the 2017 percent of random mutations.
13       First of all, the jury is never asked to consider whether
14 or not the person had a proportion of random mutations. It's
15 more the cancer cases which is the PAF Parkinson stuff. And
16 I believe it's not reliable.
17       So it doesn't fit a question that the jury is being asked
18 to answer. In terms of the population attributable
19 fractions -- in other words, what's the difference --
20       **THE COURT:** I don't under- -- I guess I don't
21 understand your point. I mean, why isn't it very helpful to
22 the jury to hear -- I mean, assuming -- assuming the opinion is
23 reliable, why isn't it very helpful for the jury to hear that
24 X percent of -- were high -- even if there's no number attached
25 to it -- a high percentage of the, you know, cancer and a high

1   percentage of NHL, you know, as is -- is -- can be attributed
2   simply to these replication errors without regard to
3   environmental factors, and here's how it works.
4           **MR. KRISTAL:**  Because that's not what Dr. Tomasetti is
5   saying, which is the whole misleading portion.  There's a
6   difference between --
7           **THE COURT:**  I mean, he just spent the day on the stand
8   saying that.
9           **MR. KRISTAL:**  No.  Maybe I -- if we had a chance,
10  perhaps, to have some supplemental briefing after the
11  transcript.
12      There's a difference between saying a certain proportion
13  of random driver gene mutations are attributable to R, which is
14  not the same as saying there's a certain proportion of random
15  mutations that are cancer case causers.
16      So one is the calculation that we just went over.  The
17  other is the population attributable fraction.  The confusion
18  between the two random driver gene mutations and the
19  attributable portion of cancer cases is what IARC was confused
20  about, Ramazzini was confused about, other scientists were
21  confused about, and I believe what an average juror, if they
22  were confused about it, they're not getting the distinction.
23      And sometimes -- I have examples -- where the question was
24  asked by the attorney, "Based on your research, what percent of
25  cancer, NHL cancer cases, are caused by environmental factors?"

1          **MS. GREENWALD:**  Thank you.
2          **THE CLERK:**  Court is adjourned.
3              (Proceedings adjourned at 3:47 p.m.)
4                           ---o0o---

6                    **CERTIFICATE OF REPORTER**
7        I certify that the foregoing is a correct transcript
8   from the record of proceedings in the above-entitled matter.

10  DATE:    Wednesday, December 20, 2023

15       Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
              Official Reporter, U.S. District Court