# EXHIBIT P

```
 1                 UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3

 4   *************************

 5   IN RE:  ROUNDUP PRODUCTS      MDL No. 2741

 6   LIABILITY LITIGATION

 7   *************************    Case No.

 8   GERALD NELSON, ET AL V.       MDL No.

 9   MONSANTO COMPANY              3:16-md-02741-VC

10

11   Case No.

12   3:19-cv-04576-VC

13   *************************

14

15

16

17              REMOTE VIDEOTAPED DEPOSITION OF

18                     D. BARRY BOYD, MD

19                     December 1, 2023

20                        1:02 p.m.

21

22

23

24

25
```

```
 1                      APPEARANCES

 2

 3   MARINA BATALIAS, ESQUIRE

 4   Nelson Mullins Riley & Scarborough, LLP

 5   901 East Byrd Street, Suite 1650

 6   Richmond, VA 23219

 7   (804) 533-4614

 8   Marina.Batalias@nelsonmullins.com

 9        Counsel for Defendant

10

11   CHRISTIAN UEHLEIN, ESQUIRE

12   Thornton Law Firm, LLP

13   84 State Street, 4th Floor

14   Boston, MA 02109

15   (617) 720-1333

16   cuehlein@tenlaw.com

17        Counsel for Plaintiff

18

19   Also Present:

20   James Vonwiegen, Videographer

21

22

23

24

25
```

```
 1   NHL?
 2     A.   No.  That's based on your understanding of how to
 3   assess exposures that cause disease.  Just like in lung
 4   cancer, if somebody smoked two packs a day for 20 years,
 5   that's a likely cause of that mass.  If he's a nonsmoker,
 6   he may have a typical nonsmoking-related lung cancer.  So
 7   the x-ray does not tell you anything about what caused it.
 8   That's your history.
 9     Q.   Dr. Boyd, you can't say that Mr. Nelson would not
10   have been diagnosed with NHL had he never been exposed to
11   Roundup, can you?
12     A.   No, but the probability is that it was linked to
13   his high levels of exposure over a prolonged period of
14   time.
15     Q.   If you conducted a differential diagnosis, you
16   can't actually rule out the possibility that Mr. Nelson's
17   NHL was caused by a random mutation not influenced by any
18   chemical.  Right?
19             MR. UEHLEIN:  Objection.
20             THE WITNESS:  Again, that's a common
21   misunderstanding of random mutations.  Random mutations
22   lay the groundwork; they don't only cause a disease.  So I
23   would argue that exposures markedly increase the risk of a
24   random mutation being promoted and altered by exposures to
25   lead to a more rapid progression to a form -- to a -- you
```

 1  know, a -- an illness.  That's the Tomasetti argument

 2  about bad luck.  Not -- not good enough.

 3  BY MS. BATALIAS:

 4     Q.  Are you offering any opinions about Mr. Nelson's

 5  Roundup exposure history?

 6          MR. UEHLEIN:  Objection.

 7          THE WITNESS:  The history has been outlined

 8  already.  And certainly, his commercial exposures were

 9  significant and enough to clearly link to an association

10  with Non-Hodgkin's lymphoma.

11  BY MS. BATALIAS:

12     Q.  Right.  But you didn't calculate a specific dose

13  of glyphosate-based herbicides that Mr. Nelson experienced

14  over the years, did you?

15     A.  How do you mean, calculate?  I calculate- -- I --

16  I reviewed his exposures.  I carefully went over it.  I

17  did my own calculations up until diagnosis.  I didn't

18  measure how much glyphosate he got on his skin --

19     Q.  Right.

20     A.  -- the exact amount he received, but I do know the

21  level of exposure that is used often when we compare it to

22  the epidemiology.

23     Q.  So you have no opinion about how much glyphosate

24  may have penetrated his skin.  Correct?

25          MR. UEHLEIN:  Objection.

D. Barry Boyd, M.D.

```
 1   STATE OF CONNECTICUT

 2   HARTFORD, SS.

 3

 4            I, Esmeralda Guzman, a Certified Shorthand

 5   Reporter and Notary Public in and for the State of

 6   Connecticut, do hereby certify that the foregoing

 7   transcript of the REMOTE VIDEOTAPED DEPOSITION OF

 8   D. BARRY BOYD, MD, having previously been sworn on

 9   December 1, 2023, is true and accurate to the best of my

10   knowledge, skill, and ability.

11            I further certify that I am not a relative

12   or employee or attorney or counsel of any of the parties

13   hereto, nor am I a relative or employee of such attorney

14   or counsel; nor do I have any interest in the outcome or

15   events of this action.

16            IN WITNESS WHEREOF, I have hereunto set my hand

17   and seal this 11th day of December, 2023.

18

19

20
                                          ESMERALDA GUZMAN
21

22

23   My Commission Expires:

24   September 30, 2025

25
```

Exhibit P Page - 5