**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100 | Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S SPECIFIC CAUSE EXPERT DR. MARC BRAUNSTEIN AND FOR SUMMARY JUDGMENT**<br><br>Hearing Date:<br>Date:   March 1, 2024<br>Time:   10:00 a.m.<br>Place:  San Francisco Courthouse,<br>            Courtroom 4 – 17th Floor |
| *Angelo Bulone v. Monsanto Co.*, 3:20-cv-03719-VC | |

**INTRODUCTION**

In Pre-Trial Order 288 ("PTO 288"), this Court correctly observed that a "sentiment may have developed in this MDL that because some general and specific causation opinions have now been admitted, additional experts can get through the Daubert gate with a casual wave of the hand. That is wrong." *Id*. at 12. Plaintiff's Response to Monsanto's Motion to Exclude Plaintiff's specific causation expert, Dr. Braunstein, is precisely the "casual wave of the hand" against which this Court warned.

Dr. Braunstein purports to have conducted a differential diagnosis to determine the most likely cause of Plaintiff's NHL. But he did not reliably rule in Plaintiff's Roundup use as a potential cause, because he relied solely on unadjusted "exposure days" data points that this Court has already held cannot alone support a specific causation opinion.

Perhaps more importantly, Plaintiff's Response never addresses a key argument from Monsanto's Motion: that Dr. Braunstein's opinions are unreliable because he has taken contradictory positions on whether Plaintiff's benzene exposure was a potential cause of Plaintiff's NHL. Indeed, in his first report (issued in 2022), Dr. Braunstein wrote that he could not rule out Plaintiff's benzene exposure as a potential cause. In his second report (issued in 2023), Dr. Braunstein wrote that, actually, he could rule out Plaintiff's benzene exposure—even though he admittedly relied on ***no new information*** in his second report compared to his first. Plaintiff attempts to defend Dr. Braunstein's benzene opinion by arguing that the deficiencies in his benzene opinion bear only on his conclusions and not his methodology. But the fact that Dr. Braunstein has reached contradictory conclusions based on the same information indicates that his "methodology" is really just to arrive at Plaintiff's preferred result.

Finally, because Dr. Braunstein did not reliably rule in Plaintiff's Roundup use, Dr. Braunstein is not off the hook when it comes to the need to consider, and rule out, idiopathic causes of NHL (including naturally occurring mutations), which he did not do.

For these reasons, and those that follow, this Court should grant Monsanto's motion to exclude Dr. Braunstein's opinion.

# ARGUMENT

## I. Dr. Braunstein's "Exposure Days" Approach Did Not Reliably "Rule In" Roundup.

In its Motion, Monsanto noted that Dr. Braunstein did not "reliably rule in Roundup as a cause" of Plaintiff's cancer. Mot. at 3 n.1. In his Response, Plaintiff asserts that Dr. Braunstein's purported differential diagnosis was reliable because he ruled in glyphosate as a potential cause of Plaintiff's NHL based on the amount of time over which Plaintiff was allegedly exposed to Roundup. Specifically, Dr. Braunstein asserted that Plaintiff's "'prolonged exposure'" to Roundup "'is more than the minimum exposure reported in epidemiologic studies associating'" glyphosate and NHL. Resp. at 2 (quoting Hsu Decl., Ex. B, Braunstein 2023 Report at 10[1]). But he has no reliable basis for reaching this conclusion.

Initially, Plaintiff asserts that Dr. Braunstein arrived at this conclusion based in part on "the time-weighted exposure calculation of Dr. James Clark." Resp. at 2. But all Dr. Clark did was calculate how many days Plaintiff was exposed to Roundup.[2] Dr. Clark did ***not*** take the next step and determine whether the number of days to which Plaintiff was exposed to Roundup was enough to cause Plaintiff to develop cancer. That was Dr. Braunstein's role.

Thus, contrary to Plaintiff's insinuation, Dr. Braunstein's sole basis for concluding that Plaintiff's exposure to Roundup was enough to cause him to develop NHL (and, therefore, Dr. Braunstein's sole basis for ruling in Roundup as a potential cause of Plaintiff's NHL) are epidemiological studies.[3] *See* Hsu Decl. Ex. B, Braunstein 2023 Report at 9, Table 1 (listing the epidemiological case-control studies on which Dr. Braunstein relied). And only two of those studies—Eriksson and McDuffie—purport to determine *how much* Roundup exposure is required to supposedly cause cancer. *Id*. Dr. Braunstein confirmed at his deposition that he concluded that

---

[1] Unless otherwise noted, exhibit citations in this reply are to the exhibits filed in support of Monsanto's original motion to exclude Dr. Braunstein.

[2] Monsanto does not concede that Dr. Clark's calculations are reliable or admissible. Monsanto has separately moved to exclude Dr. Clark's opinions.

[3] Dr. Braunstein's report contains sections describing studies about the supposed genotoxic properties of glyphosate, and certain animal and mechanistic studies on glyphosate. These studies do not address *how much* exposure to glyphosate is supposedly necessary to cause cancer in humans. *See* Hsu Decl. Ex. B, Braunstein 2023 Report at 6-8. Accordingly, these studies do not (indeed, they could not) inform Dr. Braunstein's specific causation opinion.

1  Plaintiff's "Roundup exposure is more than the minimum exposure reported in epidemiologic
2  studies." Hsu Supp. Decl. Ex. E, Braunstein Dep. (*Bulone*) at 62:23-63:2.  Dr. Braunstein further
3  confirmed that the epidemiological studies he relied on for the minimum exposure days needed to
4  supposedly cause cancer was the study that concluded "a minimum of 2 days" was enough and the
5  study that concluded "a minimum of 10 days" was enough.  *Id*. at 63:5-9.  Those are the McDuffie
6  and Eriksson studies, respectively.  *See* Hsu Decl. Ex. B, Braunstein 2023 Report at 9, Table 1.

7  But this Court has already recognized that the data points from the Eriksson and McDuffie
8  studies on which Dr. Braunstein focuses are unreliable.  In Pre-Trial Order 85 ("PTO 85"), this Court
9  specifically addressed the Eriksson and McDuffie studies' "exposure days" conclusions and noted
10 that they "did not adjust for the use of other pesticides," and, consequently, the specific causation
11 experts who relied on the Eriksson and McDuffie studies "***may not testify that glyphosate is a***
12 ***substantial causative factor for anyone who exceeds two days per year or ten lifetime days of***
13 ***Roundup use, because that conclusion is based on unadjusted data***." PTO 85 at 8 (emphasis added).

14 So too here.  Dr. Braunstein purports to rule in Roundup because of the number of days on
15 which Plaintiff was exposed to Roundup.  Dr. Braunstein's sole basis for concluding that Plaintiff
16 exceeded the number of days needed to rule in Roundup is the "exposure days" data contained in the
17 Eriksson and McDuffie studies.[4]  Thus, just like the experts who were the subject of PTO 85, Dr.
18 Braunstein should not be permitted to testify that glyphosate is a substantial causative factor for
19 Plaintiff's NHL.

20 **II.    Plaintiff's Response Ignores Dr. Braunstein's Flip-Flopping On Benzene.**

21 In its Motion, Monsanto pointed out that Dr. Braunstein filed two reports in this case.  Dr.
22 Braunstein issued his first report in 2022, and issued his second report in October 2023, just one day

---

[4] In addition to Eriksson and McDuffie, Dr. Braunstein's report also discusses three now-familiar analyses: the IARC monograph, the Agricultural Health Study, and the Zhang meta-analysis. But these documents did not play (and could not have played) a role in Dr. Braunstein's "exposure days" opinion purporting to rule in Roundup. None of these other analyses used an "exposure day" methodology. The IARC monograph did not examine a dose-response relationship. Dr. Braunstein admitted that the Agricultural Health Study "did not find ... an increased risk of NHL." Hsu Supp. Decl. Ex. F, Braunstein Dep. (*Caccia*) at 59:14-15. And Dr. Braunstein himself wrote that the Zhang meta-analysis did not "detect a meaningful increase in NHL or other cancers associated with glyphosate." Hsu Decl. Ex. B, Braunstein 2023 Report at 10.

before his deposition in this case. Mot. at 7. And Monsanto pointed out that Dr. Braunstein's two reports contain completely contradictory positions on whether Dr. Braunstein actually ruled out as a potential cause of Plaintiff's NHL the benzene from jet fuel to which Plaintiff was exposed during his time serving in the U.S. Navy. *Id*. Specifically, Monsanto noted that in his 2022 report Dr. Braunstein wrote that benzene "cannot be ruled out" as a potential cause of Plaintiff's NHL, but in his 2023 report Dr. Braunstein reached exactly the opposite conclusion, writing that Plaintiff's exposure to benzene from jet fuel "has been ruled out" as a potential cause of Plaintiff's NHL. *Id*. at 4. Dr. Braunstein changed his tune in his 2023 report even though he admits that ***he did not "review any other materials" for his 2023 report compared to his 2022 report.*** Hsu Supp. Decl. Ex. E, Braunstein Dep. (*Bulone*) at 11:18-25 (emphasis added).[5]

Dr. Braunstein's flip-flopping did not stop there. As Monsanto pointed out in its motion, Dr. Braunstein changed his tune again at his deposition, testifying four different times that (consistent with his original 2022 report) he cannot rule out benzene exposure from jet fuel as a potential cause of Plaintiff's NHL. Mot. at 4.

Plaintiff's Response never addresses any of this. Plaintiff *never* explains why Dr. Braunstein's testimony is admissible even though he has reached two contradictory conclusions based on the exact same information. All Plaintiff says in Response is that Dr. Braunstein's failure to rule out Plaintiff's benzene exposure as a potential cause of his NHL is a function of weight, not admissibility, and bears on "the accuracy of [Dr. Braunstein's] conclusion, not the soundness of his methodology." Resp. at 7-8 (citation and quotation marks omitted). That is wrong. Dr. Braunstein's flip-flopping is an indication that he has no reliable methodology to begin with. Indeed, a district should exclude specific causation experts who do not "provide reasons for rejecting alternative hypotheses using scientific methods and procedures;" indeed, the "elimination of those hypotheses must be founded on more than subjective belief or unsupported speculation." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003) (cleaned up). The fact that Dr. Braunstein reached

---

[5] Dr. Braunstein confirmed that the only new addition to his 2023 report was the inclusion of Dr. Clark's exposure days calculations. Hsu Supp. Decl. Ex. E, Braunstein Dep. (*Bulone*) at 11:18-25. But Dr. Clark's report focused on Roundup exposure, not benzene exposure.

completely opposite conclusions about benzene at different points in time based on the same information strongly indicates that his methodology does not satisfy this standard.

### III.  Dr. Braunstein Did Not Consider, Let Alone Rule Out, Idiopathy (Including Naturally Occurring Mutations).

In its Motion, Monsanto argued that Dr. Braunstein failed to rule out idiopathic causes of Plaintiff's NHL. Mot. at 8-9. In Response, Plaintiff argues that Dr. Braunstein in fact did "offer a reliable explanation for why [Plaintiff's] NHL should not be considered 'idiopathic'" because Dr. Braunstein determined that Plaintiff's "prolonged exposure to Roundup … is more than the minimum exposures reported in epidemiologic studies." Resp. at 9. Plaintiff is incorrect.

Initially, in order to reliably rule out idiopathy, Dr. Braunstein needed to have considered naturally occurring mutations as a potential cause. After all, as this Court correctly noted at the December 12, 2023 *Daubert* hearing in the *Delorme-Barton* case: "[w]hat it's been up until now, is … [a] high percentage of NHL cases are idiopathic" and the role that naturally occurring mutations play as a potential cause of NHL effectively "put[s] meat on the bones" of previous understanding, "which is that such a high percentage of NHL cases are idiopathic." Hsu Supp. Decl. Ex. G, *Daubert* Hr'g Tr. at 158:17-25. Dr. Braunstein knew that naturally occurring mutations are one way to understand NHL cases previously classified as idiopathic because Monsanto disclosed in Wave VI the general causation opinions of Dr. Cristian Tomasetti, who concludes that naturally occurring mutations are responsible for the vast majority of NHL cases. But Dr. Braunstein's expert report does not even mention (let alone rule out) naturally occurring mutations as a potential cause, just as it does not even mention (let alone rule out) idiopathy more generally.

Plaintiff relies on *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227 (9th Cir. 2017). *Wendell* held that when an expert ***reliably rules in*** one of a plaintiff's "multiple risk factors" as a "substantial causative factor" the expert need not "completely rule out" idiopathy. *Id*. at 1237. But as explained, *supra* pp. 2-3, Dr. Braunstein ***did not*** reliably rule in glyphosate as a substantial potential cause of Plaintiff's NHL because Dr. Braunstein's sole basis for ruling in glyphosate was the unreliable, unadjusted "exposure days" data points in the McDuffie and Eriksson studies. Thus, Dr. Braunstein should have at least considered idiopathy as a potential cause of Plaintiff's NHL. *Henricksen v.*

*ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1163 (E.D. Wash. 2009) (excluding an expert for "fail[ing] to adequately account for the possibility that [the plaintiff's disease] was idiopathic"). But Dr. Braunstein did not even consider idiopathy as a potential cause, let alone rule it out. Here, Dr. Braunstein's failure to consider idiopathic causes—including naturally occurring mutations—indicates that his methodology is fatally flawed.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Plaintiff's specific causation expert, Dr. Braunstein, on Rule 702 and *Daubert* grounds and grant summary judgment in Monsanto's favor because Plaintiff has failed to present at least one admissible expert opinion to support specific causation in this case.

Dated: January 22, 2024                    Respectfully submitted,

                                           */s/ Linda C. Hsu*
                                           Attorney for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of January, 2024 a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                           */s/ Linda C. Hsu*
                                           Linda C. Hsu