JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202
Tel: (704) 350-7714
Fax: (704) 350-7800

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:23-cv-4946 |
| This document relates to: | **BAYER CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |
| *Jonas Perez-Hernandez v. Monsanto Co.*, Case No. 3:23-CV-04946-VC | Date: Feb. 15, 2024<br>Time: 10:00 a.m.<br>Place: San Francisco, Courtroom 4, 17th Floor<br>Judge: Hon. Vince G. Chhabria |

**INTRODUCTION**

Plaintiffs concede there is no general personal jurisdiction over Bayer Corp. And Plaintiffs' alleged case-linked contacts are contradicted by the sworn declaration of Bayer Corp.'s corporate secretary, Keith Abrams, and thus insufficient, under well-settled law, to confer specific personal jurisdiction.

There is no basis for Plaintiffs' argument that Mr. Abrams's declaration is controverted by Bayer Corp.'s prior "actions and public statements." The supposed "inconsistent" public statements are nothing more than statements on bayer.com about the broader Bayer enterprise's products and facilities. None even purport to identify the legal entities responsible for manufacturing, selling, marketing, advertising, or distributing Roundup® products. To the contrary, the website makes clear that the broader Bayer enterprise is made up of several divisions and hundreds of distinct companies. Accordingly, Mr. Abrams's declaration is the only relevant evidence of Bayer Corp.'s role in the sale of Roundup® products—or, more accurately, lack thereof. It is thus no surprise that, in cases in this MDL naming Bayer Corp., the plaintiffs have repeatedly agreed to voluntarily dismiss claims against Bayer Corp. *See, e.g.*, MDL Dkt. Nos. 2688, 6101, 14421, 15093, 15959, 16252, 17290.

The Court should also reject Plaintiffs' alternative request for jurisdictional discovery. As Plaintiffs acknowledge, they are not entitled to such discovery when they lack any more than a "hunch" that it would yield evidence supporting jurisdiction. Dkt. No. 26 ("Opp.") at 14. Here, even a "hunch" is a stretch. Plaintiffs' relevant allegations are directly contradicted by unrebutted, sworn testimony. There is no genuine factual dispute for discovery to address. And for the same reason, Plaintiffs' request for leave to amend as to Bayer Corp. should be denied as futile.

Finally, Plaintiffs' response on Bayer Corp.'s Rule 12(b)(6) arguments relies on a misstatement of their allegations. Plaintiffs claim they made allegations specifically as to Bayer Corp., but their complaint shows they in fact made those allegations as to "Defendants," "Bayer"

1

(defined to include Bayer AG), or an unnamed "subsidiary." And Plaintiffs' complaint also alleges no facts that would support their suggestion that Bayer Corp. has alter-ego liability.

# ARGUMENT

I. **PLAINTIFFS DO NOT CONTEST THERE IS NO GENERAL PERSONAL JURISDICTION.**

Plaintiffs do not address Bayer Corp.'s argument that this Court lacks general personal jurisdiction and have thus forfeited any contrary argument. *Tyler v. Travelers Com. Ins.*, 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020) ("Plaintiff concedes these arguments by failing to address them in her opposition." (collecting cases)).

II. **PLAINTIFF'S ALLEGATIONS AS TO SPECIFIC PERSONAL JURISDICTION ARE DISREGARDED IN THE FACE OF A CONTRARY DECLARATION AND THEIR "EVIDENCE" IS IRRELEVANT.**

A. **Plaintiffs' Allegations About Bayer Corp. Cannot Sustain Personal Jurisdiction Because They are Contradicted by Sworn Testimony.**

Plaintiffs begin their argument by repeating their allegations that Bayer Corp. has "persisted in designing, developing, manufacturing, testing, packaging, marketing, distributing, labeling, and/or selling Roundup," including in California.[1] Opp. 7-8. They claim these allegations "demonstrate availment." *Id.* at 8; *see also id.* at 12 (relying on these same allegations to argue for purposeful direction). But those allegations are refuted by the declaration submitted by Bayer Corp.'s corporate secretary, Mr. Abrams. Dkt. No. 20-1 ¶¶ 7-8. It is settled law—and has been for decades—that a complaint's allegations are *not* presumed true for purposes of personal jurisdiction when contradicted by affidavit. *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (citing *Data Disc., Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1284 (9th Cir. 1977)); *see also Johnson v. Charter Commc'ns, Inc.*, 2022 WL 2643980, at *4 (N.D. Cal. Jul.

---

[1] Plaintiffs also rely on allegations that Bayer Corp. derives "substantial revenue from [unspecified] goods and products used in California and nationwide." Opp. 8. But the sale of non-Roundup® "goods and products" is not related to Plaintiffs' claims, and it is thus irrelevant to the specific personal jurisdiction analysis. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State.") (emphasis added).

2

8, 2022) ("That evidence [submitted by defendant] squarely controverts Guss's allegations, meaning that she can no longer rely on the complaint to establish personal jurisdiction, but must instead submit sworn evidence of her own."). Plaintiffs' allegations thus cannot support personal jurisdiction.

### B. Plaintiffs' Attempt to Manufacture a Factual Dispute About Bayer Corp.'s Case-Linked Contacts is Baseless.

Recognizing the import of the settled law, Plaintiffs next argue that the Court should discount Mr. Abrams's declaration because it is controverted by "Bayer Corp.'s own actions and public statements." Opp. 8. Plaintiffs' supposed "evidence" does not support their argument.

First, Plaintiffs suggest that Mr. Abrams's declaration conflicts with the fact that Bayer Corp. is "registered to do business in California." Opp. 8 (citing Dkt. No. 26-2, a screenshot showing that Bayer Corp. is registered with California as an out-of-state stock corporation). There is no conflict or inconsistency there. Being registered in California is different from maintaining an office or employees in California, and certainly different from selling, marketing, advertising, distributing, or manufacturing Roundup® products in California.

Second, Plaintiffs argue that Bayer must be operating in California because a "transparency in Supply Chains Act Statement" required by California law appears on bayer.com.[2] Opp. 8 (citing Dkt. No. 26-3). That is not correct. That statement does not mention glyphosate or Roundup® products, so it is irrelevant to specific personal jurisdiction here. *See* Dkt. No. 26-3. It also does not purport to be a statement by or about Bayer Corp. specifically (it does not even mention Bayer

---

[2] Plaintiffs err in repeatedly suggesting that bayer.com is "Bayer Corp.'s website." Opp. 6, 8-10 & nn. 4-5, 9-10. Bayer.com is the website of Bayer's "global enterprise," which the website notes is made up of hundreds of separate Bayer affiliate companies. *See* "This is Bayer," online at www.bayer.com/en ("Bayer is a global enterprise . . . ."); "Subsidiary and affiliated companies," online at www.bayer.com/sites/default/files/2020-11/asm-2019-subsidiary-and-affiliated-companies-of-the-bayer-group-2018.pdf (listing hundreds of subsidiaries and affiliates "of Bayer AG and the Bayer Group"); "List of active Bayer companies with at least a share of 50%," online at www.bayer.com/sites/default/fides/GDIS_Companies_EN.pdf (listing hundreds of separate Bayer entities, including 118 in the United States). Plaintiffs' assertion that Bayer Corp. "holds the facilities and products out to the public as though they are entirely its own" (Opp. 10) is thus baseless.

3

Corp.), but a broader statement about the Bayer enterprise, expressly identified as including multiple different companies. *Id.* at 1 (noting that the statement sets forth "steps taken by Bayer AG *and its relevant affiliates* ('Bayer')") (emphasis added). Nothing in this document suggests, as Plaintiffs imply, that any action taken by Bayer AG or any of its hundreds of affiliates is an action by Bayer Corp.

Third, Plaintiffs' reliance on bayer.com's identification of "Our Locations" (Opp. 8-9 & Dkt. No. 26-5) is misplaced. This webpage purports to identify the locations of "Bayer" facilities in the United States. It does not state that those facilities are operated or owned by Bayer Corp. or its employees rather than any number of other Bayer affiliate companies.[3] *See Scanlon v. Curtis Int'l Ltd.*, 465 F. Supp. 3d 1054, 1062 (E.D. Cal. 2020) ("Plaintiff's evidence of screen images of 'Technicolor's' website purportedly showing its North American headquarters in Los Angeles and that 'Technicolor' has job postings in Los Angeles, does not attribute those activities in California to *Technicolor SA*." (cleaned up)); *BBA Aviation PLC v. Super. Ct.*, 190 Cal. App. 4th 421, 432 (2010) ("The use of 'we' or 'the Company' or 'BBA' does not prove that BBA and Ontic were a single entity in practice and does not turn a holding company into an operating company."). Plaintiffs attempt a "gotcha" by noting that bayer.com users are told to direct "queries or comments" to Bayer Corp. Opp. 9. But again, this does not contradict Mr. Abrams's declaration: Bayer Corp. is a holding company (Abrams Decl. ¶ 7), and there is no inconsistency in it receiving comments or inquiries directed to various operating affiliates.

Finally, Plaintiffs' reliance on bayer.com's "Products" page is unavailing for the same reason. Plaintiffs' own brief notes that this webpage refers to the broader "Bayer brand." Opp. 9-10; Dkt. No. 26-6. It does not suggest that Bayer Corp., rather than any other Bayer affiliate, is responsible for manufacturing, selling, distributing, marketing, advertising, or labeling Roundup® products—or any of the other referenced products. *See Perez v. Indian Harbor Ins.*, 613 F. Supp.

---

[3] Even if it were a reasonable inference that these facilities are operated by Bayer Corp. (and it is not), Plaintiffs point to no evidence that any of these facilities are involved in the sale, manufacture, marketing, distribution, or labeling of Roundup® products.

4

3d 1171, 1177 (N.D. Cal. 2020) (reference to "XL Caitlin" in insurance policy did not support personal jurisdiction over insurance company's parent and holding companies, XL America and XL Group, because "XL Caitlin is a brand name not a legal entity"); *see also id.* ("[I]nsignificant contacts, such as a trade name on a policy or correspondence, does not subject holding companies . . . to personal jurisdiction."). Mr. Abrams's unrebutted declaration shows that, in fact, Bayer Corp. does not engage in any of those activities. Abrams Decl. ¶¶ 7-8.

Plaintiffs' assertion that the bayer.com website does not affirmatively "indicate that it lists these facilities and products on behalf of any subsidiary or agent" (Opp. 10) is a *non sequitur*. The bayer.com website never claims to be solely about the products or services of Bayer Corp., but about all the different companies that are part of the broader Bayer brand. *Cf. Moody v. Charming Shoppes of Del., Inc.*, 2008 WL 2128955, at *3 (N.D. Cal. May 20, 2008) ("Generic language on [a company's] website and in its press releases simply do[es] not rise to the day-to-day control required to impute the subsidiary's contacts to the parent."). Nor can Plaintiffs point to any requirement that a website set forth the specific corporate entities responsible for any products or services.

   **C. Plaintiffs Lack Factual Support for Their Suggestion that Monsanto has Acted as Bayer's Agent.**

Plaintiffs briefly suggest that no matter whether they can establish specific personal jurisdiction based on Bayer Corp.'s own actions, they can establish specific personal jurisdiction based on Monsanto's actions. Opp. 10-11. They cite *Daimler v. Bauman AG*, 571 U.S. 117, 135 n.13 (2014), for the proposition that a corporation can "purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id.* And they say it "seems likely" that Monsanto is acting as Bayer Corp.'s agent. Opp. 10-11.

Nothing supports Plaintiffs' speculation that an agency relationship "seems likely." As the Ninth Circuit has explained, subsidiary companies are not presumed to be agents of their parent companies (much less indirect parents). *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2015). Rather, the alleged agent must "act on the principal's behalf," and "the parent

5

company must have the right to substantially control its subsidiary's activities." *Id.* (quoting Restatement (Third) of Agency § 1.01 (2006)). Plaintiffs allege no facts that would even suggest, much less plausibly show, that Monsanto has acted on Bayer Corp.'s behalf, nor that Monsanto is subject to Bayer Corp.'s substantial control. Rather, Plaintiffs assert only that "Bayer Corp. is liable for Monsanto's misconduct *as Monsanto's parent.*" Opp. 6 (emphasis added). That is insufficient. *Williams*, 851 F.3d at 1024-25; *Harris Rutsky & Co. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) ("It is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes.").

### III. PLAINTIFFS SHOULD NOT BE PERMITTED JURISDICTIONAL DISCOVERY, WHICH WOULD BE NO MORE THAN A FISHING EXPEDITION.

The Court should deny Plaintiffs' request for jurisdictional discovery. As Plaintiffs acknowledge, courts regularly deny such requests when based on "little more than a hunch" that the discovery will yield evidence suggesting jurisdiction. *E.g.*, *Johnson*, 2022 WL 2643980, at *4 (request for discovery is based on "little more than a hunch" when it is "based on bare allegations in the face of specific denials made by the defendants"); *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (affirming denial of jurisdictional discovery where the plaintiffs' claim of personal jurisdiction was "both attenuated and based on bare allegations in the face of specific denials made by the defendants"). Thus, to warrant jurisdictional discovery, a plaintiff "must offer some details in support of the assertion that discovery will establish facts showing that a defendant is subject to the court's jurisdiction." *Rivera v. Invitation Homes, Inc.*, 2020 WL 8910882, at *8 (N.D. Cal. Oct. 29, 2020).

Plaintiffs offer no such details. Instead, they state in conclusory fashion that they are seeking discovery into "their allegations and the actions and corporate separateness of the three related defendants in this action." Opp. 14. It is hard to imagine a *less* detailed request than for discovery into "corporate separateness"—except perhaps a request for discovery on a party's "allegations" or "actions." *See Perez*, 613 F. Supp. 3d at 1178-79 (denying jurisdictional discovery

6

because plaintiff had not "identified specifically what he would hope to uncover through additional jurisdictional discovery that has not already been provided . . . .").

Nor do Plaintiffs offer any reason to believe that their requested discovery would yield evidence changing the outcome. They refer again to the supposed "factual dispute" created by their clippings from the bayer.com website. Opp. 14. But as shown above, any such "dispute" is illusory—a common website does not overcome the reality of distinct corporate existence. *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1147 (S.D. Cal. 2018) ("Separate corporate entities that hold themselves out to the public via websites as a singular entity do[] not demonstrate unity of interest."); *Moody*, 2008 WL 2128955, at *3 ("Generic language on [a company's] website and in its press releases simply do[es] not rise to the day-to-day control required to impute the subsidiary's contacts to the parent."); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016) ("[C]ourts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interest required to show companies are alter egos.").

District courts rightly reject efforts to obtain jurisdictional discovery against a parent company when the plaintiff offers "no evidence suggesting that the court should disregard the corporate structure." *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 997 (C.D. Cal. 2013) (denying jurisdictional discovery against Russian parent bank when plaintiffs alleged the California contacts of its subsidiaries); *see also, e.g.*, *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 466 (N.D. Cal. 2019) (denying jurisdictional discovery because plaintiff did not make requisite showing of foreign parent's control over subsidiary with forum contacts); *Hernandez v. Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1061-62 (N.D. Cal. 2022) (denying jurisdictional discovery because plaintiff did not demonstrate how discovery might change the Court's conclusion that subsidiary's in-forum product sales could not establish personal jurisdiction against parent). Plaintiffs have no more than conclusory allegations, which Bayer Corp. has already specifically and unambiguously addressed with an unrebutted declaration. *See, e.g.*, *Barantsevich*, 954 F. Supp. at 997 ("The evidence VTB Bank proffers concerning the legal separateness of the entities

is uncontroverted."). This Court need not and should not grant them license for a fishing expedition.

## IV. PLAINTIFFS' RESPONSES TO BAYER CORP.'S OTHER ARGUMENTS ALSO FAIL.

### A. Bayer Corp. Adopts and Incorporates by Reference Monsanto's Reply in Support of its Motion to Dismiss.

Bayer Corp.'s opening brief adopted Monsanto's motion to dismiss under Rule 12(b)(1), 12(b)(3), and 12(b)(6). Plaintiffs' opposition (though wrongly suggesting that Monsanto's motion was made solely under Rule 12(b)(6)) likewise adopts Plaintiffs' opposition to that motion. Bayer Corp. now adopts and incorporates by reference Monsanto's reply.

### B. Plaintiffs Inaccurately Describe Their Allegations Against Bayer Corp. and Allege No Facts that Would Support Alter-Ego Liability.

Bayer Corp.'s opening brief showed that Plaintiffs did not make relevant, specific factual allegations as to Bayer Corp, but simply grouped Bayer Corp. together with other entities—Monsanto and Bayer AG in allegations as to "Defendants," and Bayer AG in allegations as to "Bayer." Mot. 7. In opposition, Plaintiffs point to four allegations they say defeat that argument. Opp. 5-6. They are wrong.

First, Plaintiffs' point to their allegation that Bayer Corp. uses the trademarked slogan "Science for a better life." Opp. 5 (quoting Compl. ¶ 1). That is irrelevant. It has nothing to do with allegations that Roundup® products are carcinogenic—it does not even purport to relate to Roundup® products. It is merely fluff that Plaintiffs added to the beginning of their complaint for rhetorical flair.

Next, Plaintiffs point to their allegation that "[s]ince acquiring Monsanto, Bayer AG, *along with its US subsidiary*, has persisted in designing, developing, manufacturing, testing, packaging, marketing, distributing, labeling, and/or selling Roundup despite knowing that Roundup is unsafe and causes NHL and other dangerous cancers." Opp. 5 (quoting Comp. ¶ 19). But putting aside that this allegation is contradicted by unrebutted testimony, Bayer AG has *hundreds* of United States affiliates, including Monsanto. This is not an allegation specific to Bayer Corp.

8

Plaintiffs also say they allege that "Bayer Corp. 'continue[s] to make the false and misleading assertions that Roundup can be used safely and that glyphosate does not cause cancer.'" Opp. 6 (quoting Compl. ¶ 139 & n.2). There is a reason the words "Bayer Corp." are outside of Plaintiffs' quotation marks—their allegation was made as to "Defendants," not as to Bayer Corp. specifically.

Plaintiffs last point to their allegation about a statement "Bayer" made in March 2023 regarding the research on glyphosate-based herbicides. Opp. 6 (quoting Compl. ¶ 85). But again, this allegation is not made as to Bayer Corp., but as to "Bayer," a term that Plaintiffs use to lump Bayer AG and Bayer Corp. together.

As Bayer Corp.'s opening brief showed, Plaintiffs have not made any relevant allegations specifically as to Bayer Corp. And Plaintiffs do not even address—and have thus waived any opposition to—Bayer Corp.'s argument that this is insufficient under Rule 8 or Rule 9(b), which applies to Plaintiffs' fraud-based claims in Counts VII, VIII, and IX. *See* Mot. 7-8

Finally, Plaintiffs say that Bayer Corp. is liable "for Monsanto's conduct as Monsanto's parent." Opp. 6. Yet Plaintiffs do not contest that a parent company is liable for its subsidiary's actions only when "the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." Mot. 7 (quoting *Inst. of Vet. Pathology, Inc. v. Cal. Health Labs., Inc.*, 172 Cal. Rptr. 74, 77 (Cal. Ct. App. 1981)). Plaintiffs have pleaded no facts, and cannot, showing that Bayer Corp. has or exercises such control over Monsanto.

## V.  LEAVE TO AMEND SHOULD BE DENIED AS FUTILE.

The Court should deny Plaintiffs' alternative request for leave to amend to add allegations as to Bayer Corp. because amendment would be futile. There is unrebutted evidence that this Court lacks personal jurisdiction over Bayer Corp. as to Plaintiffs' claims, and Plaintiffs do "not specify what 'additional allegations' [they] could make in favor of personal jurisdiction." *Doe v. Compania Panamena de Aviacion*, 2022 WL 1658229, at *2 (9th Cir. May 25, 2022).

9

**CONCLUSION**

For all the above reasons, and those set forth in Bayer Corp.'s opening brief, the Court should grant Bayer Corp.'s motion and dismiss Plaintiffs' Complaint.

Dated: February 2, 2024

By: /s/ John J. Rosenthal

JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202

*Counsel for Defendant*