JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202
Tel: (704) 350-7714
Fax: (704) 350-7800

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:23-cv-4946 |
| This document relates to: | **MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |
| *Jonas Perez-Hernandez v. Monsanto Co.*, Case No. 3:23-CV-04946-VC | Date:    Feb. 15, 2024<br>Time:   10:00 a.m.<br>Place:  San Francisco, Courtroom 4, 17th Floor<br>Judge:  Hon. Vince G. Chhabria |

**INTRODUCTION**

Plaintiffs' opposition confirms that venue in this Court is not proper. Plaintiffs' argument that Monsanto waived its expressly stated venue argument by declining to challenge personal jurisdiction is wrong. Personal jurisdiction focuses on statewide contacts, while "residence" under § 1391(b)(1) is district-specific. Plaintiffs neither pleaded, nor assert in their opposition brief, facts that would support finding that Monsanto or Bayer Corp. "reside" in *this district* for purposes of the venue statute. And Plaintiffs also ignore Monsanto's arguments under § 1392(b)(2).

Plaintiffs also offer no response to Monsanto's standing arguments. They concede they do not have non-Hodgkin's lymphoma ("NHL"), and thus they conceded they have not suffered personal injuries. They acknowledge they *do not* allege they bought any Roundup® product, so they also cannot have suffered any injury from such purchases. And they do not respond *at all* to Defendants' argument that they lack standing to seek injunctive relief. The *only* theory for which Plaintiffs offer any substantive defense of standing is their request for medical monitoring. But they lack standing for that remedy too, which in any event is available only as to their negligence claims.

Plaintiffs also wrongly suggest that the Court must defer any consideration of equitable tolling. Even Plaintiffs' authority recognizes that they must "plead" facts supporting equitable tolling with particularity. And Plaintiffs' obtuse argument that diligence did not require them to "comb through" court filings ignores the judicially noticeable facts. There have been *tens of thousands* of personal-injury cases covered in the country's largest news sources, public releases of the same documents Plaintiffs rely on, and widespread attorney advertising. If that is not enough to even "excite suspicion," then the diligence requirement is a dead letter.

Plaintiffs do not contest Monsanto's showing that their standalone claim for medical monitoring is not cognizable under California law, so that claim must be dismissed. They assert

they are entitled to seek a medical-monitoring *remedy*, but they do not adequately counter Monsanto's showing that they have not plausibly alleged facts that would permit such a remedy.

Finally, Plaintiffs' arguments that they have adequately pleaded their express warranty, implied warranty, fraud, false-advertising, and consumer-protection claims are wrong. But even if those arguments were correct, Plaintiffs' concession that they have not suffered any present economic or personal injury, and lack standing to seek injunctive relief, requires dismissal of those claims for lack of standing.

## ARGUMENT

**I.   MONSANTO DID NOT WAIVE ITS VENUE ARGUMENTS, AND PLAINTIFFS HAVE NOT SHOWN VENUE IS PROPER IN THIS DISTRICT.**

Plaintiffs' contention that Monsanto waived its venue argument by failing to move to dismiss for lack of personal jurisdiction is not correct. Plaintiffs conflate personal jurisdiction with "residence" under the venue statute. Dkt. No. 27 ("Opp.") at 3-4. While those issues are related, they are distinct. That is, a corporate defendant "resides" in a district for venue purposes only if "its contacts would be sufficient to subject it to personal jurisdiction *if that district were a separate state*."[1] *Pitt v. Metro. Tower Life Ins.*, 2020 WL 1557429, at *3 (N.D. Cal. Apr. 1, 2020) (quoting § 1391(d) (emphasis added)). Far from waiving that issue, Monsanto *expressly* argued that neither it nor Bayer Corp. resides *in this District* for purposes of § 1391(b)(1). If anyone has waived their argument, it is Plaintiffs—they do not even *argue* any district-specific contacts as to Monsanto.

Plaintiffs make a similar error as to Bayer Corp, who they say resides in this District for the reasons set forth in their opposition brief in response to Bayer Corp.'s motion to dismiss.

---

[1] Plaintiffs' position would have absurd procedural consequences. Personal jurisdiction, unlike venue, is assessed on a statewide basis. *Injen Tech. Co. v. Advanced Engine Mgmt., Inc.*, 270 F. Supp. 2d 1189, 1193 (S.D. Cal. 2003). There are sufficient case-linked contacts with California—but not the Northern District—to establish specific personal jurisdiction over Monsanto (not Bayer Corp.) for Plaintiffs' individual claims. But under Plaintiffs' theory, Monsanto was required to either bring a frivolous personal-jurisdiction motion or else waive its meritorious venue objection. That is hardly the law.

Opp. 4. That brief includes no *district-specific* analysis of case-linked contacts. Instead, it includes a single paragraph describing how Bayer Corp.'s supposed "California" contacts are linked to this case. Dkt. No. 26 at 12-13. Plaintiffs have thus failed to meet their burden of showing that either Monsanto or Bayer Corp. reside in *this District* under § 1391(b)(1).

Plaintiffs also do not respond to Monsanto's argument under § 1391(b)(2). *See* Mot. 6. Since Plaintiffs bear the burden on venue, their failure to respond is dispositive.[2]

## II.   PLAINTIFFS HAVE NOT SHOWN STANDING FOR ANY CLAIM.

Plaintiffs' assertion that they are suing solely on behalf of a "futures class" of individuals that have "not yet developed NHL" (Opp. 5) finds no footing in their complaint. Their pleading asserts a much broader class (Compl. ¶ 91), and repeatedly asserts that they are seeking not just a medical-monitoring remedy, but also damages for extant personal injuries (*e.g.*, *id.* ¶¶ 121-22); ascertainable economic losses (*e.g.*, *id.* ¶¶ 162, 172, 182, 192, 201, 207, 209); and prospective injunctive relief beyond medical monitoring (*e.g.*, *id.* ¶¶ 122, 144, 214, Prayer ¶ 4).

Yet Plaintiffs do not contest that: (1) they *do not* allege that they have been diagnosed with NHL or any other disease or condition allegedly caused by exposure to Roundup® products; or (2) they *do not* allege that they bought any Roundup® product.[3] They thus cannot have "personally" suffered—and have no standing to assert—the personal or economic injuries they allege. *Winsor v. Sequoia Benefits & Ins. Servs.*, 62 F.4th 517, 523 (9th Cir. 2023); *Davis v. FEC*, 554 U.S. 724, 734 (2008) (Plaintiffs must demonstrate standing for each claim and "each form of relief that is sought"). Plaintiffs also *do not* contest (and thus concede) that they lack

---

[2] Plaintiffs' request to defer ruling on venue pending jurisdictional discovery is also meritless. As discussed in Bayer Corp.'s Reply Brief, Plaintiffs are not entitled to such discovery. Moreover, Plaintiffs do not explain how discovery would affect the required district-specific inquiry. Their claims arise out of their alleged use and exposure to Roundup® products in the *Central* District of California. No discovery can change that—so this Court should either dismiss Plaintiffs' case or transfer it to the appropriate venue.

[3] Plaintiffs refer in passing to injuries resulting from Plaintiffs' "purchases of Roundup" (Opp. 6), but the complaint does not allege they specifically made such purchases. *See* Compl. ¶ 199 (alleging purchases by Plaintiffs "*and/or* the individuals or entities that employee Plaintiffs . . . *and/or* other purchasers of Roundup®") (emphases added).

3

standing for injunctive relief because, accepting their allegations as true, they will "obtain[] alternative herbicides" going forward and thus will never "again be wronged in a similar way." *See* Compl. ¶ 143; *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). These concessions alone require dismissal of all Plaintiffs' claims except Count III (negligence)—their only claim for which a medical-monitoring remedy is permitted.[4]

Plaintiffs also lack standing to seek a medical-monitoring remedy. Plaintiffs wrongly argue they need only show there is a "substantial risk" they will be diagnosed with NHL. Opp. 7 (quoting *In re Zappos.com, Inc.*, 888 F.3d 1020, 1026 (9th Cir. 2018)). In fact, Plaintiffs must show that the risk of contracting NHL—which has not "yet materialized but will [allegedly] occur in the future"—is "certainly impending." *Pinkert v. Schwab Charitable Fund*, 48 F.4th 1051, 1055 (9th Cir. 2022). Plaintiffs have not met either standard.

Plaintiffs claim a "substantial risk" of future injury because they allege that even a "one time use of glyphosate" substantially increases the risk of NHL. Opp. 6. Putting aside the implausibility of that allegation—even the *plaintiffs*' experts in personal-injury cases have opined that multiple 8-hour days of exposure are required—Plaintiffs have not alleged the nature, intensity, nor duration of the alleged "single exposure" in the studies they rely on. *See* Compl. ¶ 39. And they also have not alleged the nature, frequency, circumstances, or duration of their *own* alleged exposures. *See* Compl. ¶ 14-18. Given these omissions, their allegations cannot show they are at increased risk, much less "substantial risk," of NHL.

Plaintiffs also allege no facts showing that medical monitoring is likely to *redress* their risk, even if they had pleaded it is substantial. *See Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1052 (N.D. Cal. 2015). To the contrary, as this Court knows, the consensus is that NHL cannot

---

[4] Medical monitoring is available as a remedy only for Plaintiffs' negligence claim. *See Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 822-23 (Cal. 1993) ("in a negligence action," medical monitoring costs are "a proper item of recoverable damages" "[w]hen a defendant negligently invades [plaintiff's] interest"). Plaintiffs cite no authority for their contention that medical monitoring is available as a remedy for their strict liability claims. Opp. 10.

4

be screened for.[5]  Thus, Plaintiffs do not allege any injury that is fairly traceable to Monsanto's conduct for which medical monitoring could provide a remedy.

## III. PLAINTIFFS' OPPOSITION DOES NOT SOLVE THEIR FAILURE TO ALLEGE THE DILIGENCE REQUISITE TO EQUITABLE TOLLING.

Plaintiffs acknowledge their request for equitable tolling requires them to plead that they lacked "actual or constructive knowledge of the facts giving rise to [their] claim" and "acted diligently in trying to uncover the facts."  Opp. 8 (quoting *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015)).  And they do not contest that "any fact that should excite [plaintiff's] suspicion is the same as actual knowledge of his entire claim."  *Lynwood Invs. CY Ltd. v. Konovalov*, 2022 WL 3370795, at *10 (N.D. Cal. Aug. 16, 2022).  Instead, citing out-of-circuit authority, Plaintiffs contend that diligence does "not necessarily" require "combing court filings in potentially related cases."  Opp. 10 (quoting *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 555 (4th Cir. 2019)).

It takes no "combing" to find the *tens of thousands* of personal-injury claims that have been filed, including in this MDL.  *See, e.g.*, Wilkerson Decl. Exs. X-Z, AA.  Those cases—and related verdicts—have received extensive press coverage.  *See id.* Exs. J-L, N.  The *very same documents* that Plaintiffs rely on in their complaint were released by plaintiffs' attorneys and covered by major media.  *See, e.g., id.* Exs. A, L, J, BB.  And plaintiffs' attorneys have widely advertised Plaintiffs' theory of carcinogenicity.  *See, e.g., id.* Exs. U, W.  The notion that "diligent investigation" would not have uncovered any of these facts is fantastical.

*Edmonson*—which did not even apply California law—is materially distinguishable.  There, the Fourth Circuit noted there was "no reason to be aware of the related cases"; the relevant court filings "were unpublished and accessible only through a LexisNexis, Westlaw, or a PACER account"; there was nothing indicating that "any aspect of the [relevant prior]

---

[5] *See* American Cancer Society, *Can Non-Hodgkin Lymphoma Be Found Early?* (2018) ("[N]o screening test has been shown to lower the risk of dying from this cancer."), online at https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/detection-diagnosis-staging/detection.html

5

proceedings was publicized"; and the defendants were dismissed from the prior litigation early, which could have led the plaintiffs to "reasonably believe that [defendants] were not involved in the alleged wrongdoing." 922 F.3d at 555. All those facts are reversed here, weighing heavily in *favor* of dismissing Plaintiffs' request for equitable tolling.

Plaintiffs alternatively argue that this Court must defer consideration of equitable tolling to a later date, citing *Animation Workers*. But unlike in *Animation Workers*, Plaintiffs did not plead facts supporting fraudulent concealment. 123 F. Supp. 3d at 1194. For example, they do not show that "proof relating to the extent of the [alleged] fraudulent concealment" is "largely in the hands of [defendants]." Opp. 8 (quoting *Animation Workers*, 123 F. Supp. 3d at 1194). Rather, Plaintiffs' counsel has long been involved in Roundup® litigation and has access—as the complaint shows—to Monsanto's internal emails. It is precisely the *public* availability of the documents on which Plaintiffs rely that undermines their fraudulent-concealment theory. In short, the allegations (and judicially noticeable facts) "would not permit the plaintiff to prove that the statute was tolled," and the Ninth Circuit has affirmed dismissal of equitable tolling allegations under such circumstances. *E.g.*, *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). The Court should dismiss Plaintiffs' unsupported claim for equitable tolling. *See, e.g.*, *Lynwood Invs.*, 2022 WL 3370795, at *10 (granting motion to dismiss equitable tolling).

## IV.  PLAINTIFFS' MEDICAL-MONITORING ARGUMENTS FALL FLAT.

Plaintiffs do not address Monsanto's argument that their standalone claim for medical monitoring must be dismissed. For good reason—there is no such claim under California law. *Ramirez v. Monsanto Co.*, No. 3:16-02741, Dkt. No. 104 (N.D. Cal. Aug. 8, 2022).

Plaintiffs' argument that they have adequately pleaded facts supporting a medical-monitoring *remedy* also fails. Specifically, Plaintiffs fail to allege facts that would satisfy the first, third, or fifth *Potter* factors. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 974 (1993).

As to the first factor—the significance and extent of their exposure—Plaintiffs say they have alleged (1) that they were "repeatedly" exposed to Roundup® and (2) that "dozens" of

6

studies show that even "one-time exposure" increases the risk of developing NHL by 300%. Opp. 10. Neither is right. Plaintiffs do not allege anything about the frequency or circumstances of their exposure to Roundup® products. They say only that they were exposed over a course of years. *See* Compl. ¶¶ 14-18. And the Complaint's only reference to a 300% increase is to an unspecified "1998 study," with no facts at all about the frequency, route, dose, or intensity of exposures tested in that study, nor about the specific products tested. Compl. ¶ 39. Plaintiffs' reference to "one-time exposure" is presumably meant to refer to one (unspecified) study referenced in their Complaint about so-called "ever-use." *Id.* But again, the Complaint says *nothing* about the route, dose, or intensity of the exposures in that study, nor the specific products tested. Put simply, Plaintiffs cannot have alleged facts showing the "significance and extent" of their alleged exposures when they do not describe those exposures at all.

As to the third factor—Plaintiffs' "chances of developing the disease had they not been exposed"—Plaintiffs assert that they allege increased risks (1) as compared to "those that were not exposed [to glyphosate]," (2) as "compared to non-Roundup® glyphosate," and (3) "after adjustment to other pesticides." Opp. 11. All three assertions are flawed:

- Plaintiffs have not alleged that exposure to Roundup® products was their only exposure to glyphosate. And they allege they were exposed to glyphosate outside of the statute of limitations. So increased risk as compared to those *never* exposed to glyphosate is inapt.
- Plaintiffs' argument that studies show increased risk as compared to exposure to "non-Roundup® glyphosate" products is without basis in their complaint. To the contrary, the complaint alleges that their theory of carcinogenicity applies to "Roundup® *and other glyphosate-based herbicides*." Compl. ¶ 43 (emphasis added).
- The Complaint's only reference to "adjustment for other pesticides" is to the IARC monograph (*id.* ¶ 41), with no allegations about the circumstances, route, dose, or intensity of exposures supposedly addressed in the IARC monograph.

Finally, as to fifth factor, the "clinical value of early detection and diagnosis," Plaintiffs point to *nothing* in their complaint that addresses that factor, which is alone sufficient to reject their argument. *See* Opp. 11. Plaintiffs cite to two websites not included in their Complaint— neither supports their premise. One of the websites, in fact, says that there are "no widely recommended screening tests" for NHL because "no screening test has been shown to lower the

7

risk of dying from this cancer." American Cancer Society (2018), online at https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/detection-diagnosis-staging/detection.html. And the other—which Plaintiffs incorrectly attribute to the National Institute of Health—says nothing at all about screening for NHL. *See* Sumina Sapkota and Hira Shaikh, *Non-Hodgkin Lymphoma* (StatPearls 2023), online at https://www.ncbi.nlm.nih.gov/books/NBK559328/.

## V.     PLAINTIFFS DO NOT IDENTIFY ANY EXPRESS WARRANTY THAT MONSANTO BREACHED.

Plaintiffs say that Monsanto "does not seek dismissal of Plaintiffs' claims for breach of express warranty under the law of other states [aside from California]."[6] Opp. 11. Plaintiffs do not personally have any claims under other states' laws—those are putative *class* claims. Plaintiffs have no standing to bring claims under other states' laws on their own behalf.

Plaintiffs next say it is "untrue" that they did not allege the exact terms of the alleged warranty. Opp. 11. But they then proceed to describe Monsanto's alleged warranties only in conclusory terms. *Id.* And despite stating that the warranty must be "part of the basis of the bargain," they point to no allegation (because the Complaint has none), that they even *saw* the alleged "warranties," much less that they were "made part of the basis of the bargain."

Contrary to Plaintiffs' assertion, they were required to give pre-suit notice prior to asserting their express warranty claims. California law requires "sophisticated" consumers, such as commercial users, to give pre-suit notice to manufacturers. *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2014 WL 1048710, at *6 (N.D. Cal. Mar. 14, 2014) (applying California law). Plaintiffs say nothing about their use in the complaint, but they say in their opposition that they used Roundup® in farming operations, so they are likely licensed applicators. Opp. 1. And they premise their class allegations on representing similar commercial users. Compl. ¶ 3. They also allege that each plaintiff used Roundup® products for 9 to 19 years, giving every indication that they would "have been aware of the manufacturer's participation in the chain of events which

---

[6] Plaintiffs make the same argument as to the implied-warranty claim, and it is equally meritless. *See* Opp. 12.

8

caused" their alleged damages.  Compl. ¶¶ 14-18; *Taison*, 2014 WL 1048710, at *6.  And they do not allege that they had no direct dealings with Monsanto.  *Cf. In re Trader Joes Tuna Litig.*, 289 F. Supp. 3d 1074, 1092 (C.D. Cal. 2017) (requiring pre-suit notice to manufacturer based on consumers' direct dealings with manufacturer); *see also In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145, 1180 (C.D. Cal. 2010) (same).  Plaintiffs have not pleaded facts that would exempt them from California's pre-suit notice requirement for express-warranty claims.

## VI. PLAINTIFFS' ARGUMENTS DO NOT SUPPORT THEIR IMPLIED-WARRANTY CLAIM.

Plaintiffs' attempt to avoid the vertical-privity requirement for implied-warranty claims (Opp. 16) is also flawed.  They appeal to an exception for reliance on written labels and advertisements (Opp. 17), but they do not plead reliance.  *See* Compl. ¶¶ 164-183.  Plaintiffs also appeal to an exception for pesticides (Opp. 17), but that exception applies only in cases alleging personal injury, which Plaintiffs have not done.  *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 264-65 (D.N.J. 2011) ("[A]n exception exists for cases where foodstuffs, drugs, or pesticides have caused *personal injury*." (emphasis added)).  Plaintiffs are also wrong that the implied warranty of merchantability includes a warranty of "safety."  Rather, a plaintiff must allege a "fundamental defect that renders the product unfit for its ordinary purpose."  *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010); *see also Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303) ("The core test of merchantability is fitness for the ordinary purpose for which such goods are used." (citation omitted)).  Plaintiffs do not and cannot contest that Roundup® products are effective herbicides—their precise ordinary use.

## VII. PLAINTIFFS' UNSUPPORTED INSISTENCE THAT THEY PLEADED THEIR FRAUD-BASED CLAIMS WITH PARTICULARITY DOES NOT MAKE IT SO.

In their opposition, Plaintiffs do not identify any specific allegedly false statement on which they relied.  Opp. 14-15.  Instead, Plaintiffs fall back on the allegation that Defendants represented on "labels, advertisements, and warranties that Roundup® was safe when in fact it was not."  *Id.* (quoting Compl. ¶ 196).  The only claim Plaintiffs identify is the one Monsanto identified in its motion to dismiss: that glyphosate 'targets an enzyme found in plants, but not in

people or pets.'" Opp. 14-15. But they do not allege that any Plaintiff saw or relied on that statement. Without alleging any particular statement on which they relied—or anything else about the "who, what, where, when, and how" of the alleged fraud—Plaintiffs fail to plead their fraud claim with particularity. *E.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The Court should dismiss Plaintiffs' fraud-based claims.

### VIII. PLAINTIFFS' DECLARATORY RELIEF CLAIM IS DUPLICATIVE.

Plaintiffs argue that the declaratory relief claim is not duplicative because a judgment that Defendants are "financially responsible for providing corrective notice to the Class regarding Roundup" is different from the other causes of action. (Opp. 19). But Plaintiffs' other causes of action, if proven, would necessitate a determination regarding Defendants' financial responsibility by virtue of Plaintiffs' request for damages and other monetary relief. Moreover, as Monsanto has already shown, Plaintiffs lack standing for any injunctive relief because they have alleged that they can and will use non-glyphosate herbicide products in the future. Mot. 8. They lack standing to seek "corrective notice" of facts they already claim to know.

### IX. LEAVE TO AMEND IS NOT WARRANTED HERE AND SHOULD BE DENIED.

The Court should not grant Plaintiffs' request for leave to amend because they have not identified how they would amend to address the myriad problems with their complaint. And no amendment could cure Plaintiffs' numerous deficiencies. *See Chappel v. Lab. Corp.*, 232 F.3d 719, 725-726 (9th Cir. 2000) ("A district court acts within its discretion to deny leave to amend when amendment would be futile . . . ."). Given the prolific litigation and media surrounding these issues, "Plaintiffs have had ample notice of the issues in contention and have had plenty of opportunity to fashion the strongest complaint possible." *Riva*, 82 F. Supp. 3d at 1064. The Court should deny leave.

### CONCLUSION

For all the above reasons, as well as those in Monsanto's opening brief, the Court should dismiss Plaintiffs' complaint.

10

Dated: February 2, 2024

By: */s/ John J. Rosenthal*

JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202

*Counsel for Defendant*