Joseph R. Saveri (SBN 130064)
Christopher K. L. Young (SBN 318371)
David W. Lerch (State Bar No. 229411)
Itak K. Moradi (SBN 310537)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
　　　　cyoung@saverilawfirm.com
　　　　dlerch@saverilawfirm.com
　　　　imoradi@saverilawfirm.com

Robert L. Lieff (SBN 37568)
P.O. Box A
Rutherford, CA 94573
Telephone: (415) 250-4800
Email: rlieff@lieff.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **JONAS PEREZ-HERNANDEZ, ISABEL PAZ-HERNANDEZ, MOISES PEREZ-PAZ, ALLISON PEREZ-PAZ, and ABIGAIL PEREZ-PAZ**, individually and on behalf of all others similarly situated,<br><br>　　　　*Plaintiffs*,<br><br>　　v.<br><br>**BAYER AKTIENGESELLSCHAFT**, a German joint-stock company; **BAYER CORPORATION**, an Indiana corporation; and **MONSANTO COMPANY**, a Delaware corporation,<br><br>　　　　*Defendants*. | MDL No. 2741<br>Case No. 3:23-cv-4946-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT MONSANTO COMPANY'S MOTION TO DISMISS**<br><br>Date: February 15, 2024<br>Time: 10:00 a.m.<br>Place: San Francisco, Courtroom 4, 17th Floor<br>Judge: Hon. Vince Chhabria |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................................1

FACTS ......................................................................................................................................................1

ARGUMENT ...........................................................................................................................................3

    I.    Venue is proper in this district. ..............................................................................................3

    II.    Plaintiffs have Article III standing to assert their claims. ...................................................5

    III.    Plaintiffs adequately alleged that Monsanto fraudulently concealed the carcinogenic nature of Roundup, such that the statute of limitations is tolled. ...................8

    IV.    Plaintiffs make seek a medical monitoring remedy. ..........................................................10

    V.    Plaintiffs adequately pleaded claims for breach of express warranty. ..............................11

    VI.    Plaintiffs adequately pleaded claims for breach of implied warranty. ..............................12

    VII.    Plaintiffs' fraud-base claims are sufficiently pleaded. .........................................................14

    VIII.    Plaintiffs' declaratory judgment claim is not duplicative. ...................................................15

    IX.    In the alterantive, plaintiffs' request leave to amend. ........................................................15

CONCLUSION ......................................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*American Suzuki Motor Corp.,* 37 Cal. App. 4th at 1296 (1995) .................................................. 14

*In re Animation Workers Antitrust Litig.*,
　123 F. Supp. 3d 1175 (N.D. Cal. 2015) ........................................................................... 8, 9

*Batra v. United States Citizenship & Immigr. Servs.*,
　No. 2:21-CV-02489-SB-AFM, 2021 WL 4353112 (C.D. Cal. Aug. 2, 2021) ..................... 3, 4

*Battle v. Taylor James, LLC*,
　607 F. Supp. 3d 1025 (C.D. Cal. 2022) ......................................................................... 11, 12

*Clapper v. Amnesty International USA*,
　568 U.S. 398 (2013) ............................................................................................................. 6

*Clemens v. DaimlerChrysler Corp.*,
　534 F.3d 1017 (9th Cir. 2008) ............................................................................................ 13

*Doe v. Epic Games, Inc.*,
　435 F. Supp. 3d 1024 (N.D. Cal. 2020) ................................................................................ 3

*Edmonson v. Eagle Nat'l Bank*,
　922 F.3d 535 (4th Cir. 2019) .............................................................................................. 10

*Garcia v. Doe White Trucking Company*,
　No. 20-CV-00134-SI, 2020 WL 30617845 (N.D. Cal. June 9, 2020) .................................. 13

*Gillespie v. Prestige Royal Liquors Corp.*,
　183 F. Supp. 3d 996 (N.D. Cal. 2016) .................................................................................. 4

*Hexcel Corp. v. Ineos Polymers, Inc.*,
　681 F.3d 1055 (9th Cir. 2012) .............................................................................................. 8

*Krottner v. Starbucks Corp.*,
　628 F.3d 1139 (9th Cir. 2010) ........................................................................................... 6, 7

*Markel Am. Ins. Co. v. Pac. Asian Enters., Inc.*,
　No. C-07-5749 SC, 2008 WL 2951277 (N.D. Cal. July 28, 2008) ....................................... 4

*Minkler v. Apple, Inc.*,
　65 F. Supp. 3d 810 (N.D. Cal. 2014) .................................................................................. 12

*Petersen v. Allstate Indem. Co.*,
　281 F.R.D. 413 (C.D. Cal. 2012) ........................................................................................ 14

*Pilliod v. Monsanto Co.*,
   67 Cal. App. 5th 591 (2021) ...................................................................................................9

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965, 863 P.2d 795 (1993)........................................................................................7

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 974 (1993) ................................................................................................6, 7, 10, 11

*Riva v. Pepsico, Inc.*,
   82 F. Supp. 3d 1045 (N.D. Cal. 2015) ..................................................................................6, 7

*In re Roundup Products Liability Litigation*,
   Case 3:16-md-02741-VC, ECF No. 13090..............................................................................5

*StreamCast Networks, Inc. v. IBIS LLC*,
   No. CV05-04239MMM(EX), 2006 WL 5720345 (C.D. Cal. May 2, 2006)...........................15

*T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
   83 F. Supp. 3d 855 (N.D. Cal. 2015) .....................................................................................13

*Ward v. Certain Underwriters at Lloyd's of London*,
   No. 18-cv-07551-JCS, 2019 WL 2076991 (N.D. Cal. May 10, 2019).....................................3

*Waryck v. Thor Motor Coach Inc.*,
   No. 3:22-cv-1096-L-KSC, 2023 WL 7029208 ......................................................................15

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) ...............................................................................................6, 7

**Statutes**

28 U.S.C. § 1391...................................................................................................................3, 4, 5

28 U.S.C. § 1404(a) .......................................................................................................................5

28 U.S.C. § 1406............................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 9(b) ......................................................................................................................14

Fed. R. Civ. P. 12 ......................................................................................................................3, 4

Fed. R. Civ. P. 15 .........................................................................................................................15

Plaintiffs Jonas Perez-Hernandez, Isabel Paz-Hernandez, Moises Perez-Paz, Allison Perez-Paz, and Abigail Perez-Paz ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through undersigned class counsel, oppose Monsanto Company's ("Monsanto's") Motion to Dismiss, ECF No. 21 ("Mot.").

## INTRODUCTION

Plaintiffs have been exposed to glyphosate through Roundup products' use on a farm in California and face an increased risk of developing Non-Hodgkins Lymphoma ("NHL") as a result. Plaintiffs allege that Defendants Bayer AG, its United States-based subsidiary, Bayer Corp., and Monsanto market and sell those Roundup products in California, including in this District, and derive substantial revenues therefrom. Plaintiffs further allege that, in doing so, Defendants Bayer AG, Bayer Corp., and Monsanto Company represent that studies have proven glyphosate and Roundup products to be safe and noncarcinogenic, even though they are each aware that those studies were largely ghostwritten by Monsanto and have since been discredited or otherwise deemed invalid. Plaintiffs assert eleven causes of action against Defendants on their own behalf and on behalf of a putative class of individuals exposed to Roundup products, including for products liability design defects and failures to warn, negligent misrepresentation, breaches of express and implied warranty, violations of consumer protection and false advertising statutes, fraudulent inducement, declaratory relief, and medical monitoring. In seeking dismissal Monsanto mischaracterizes Plaintiffs' claims and misstates the law that governs them. Plaintiffs are entitled to seek redress for the risk of future harm caused by Defendants' manufacture and marketing of Roundup products, and they may seek such redress in this Court. Monsanto's motion for dismissal should be denied.

## FACTS

Plaintiffs incorporate their statement of facts included in their Opposition to Bayer Corp.'s Motion to Dismiss (ECF No. 20) filled concurrently herewith. Plaintiffs bring suit on behalf of consumers who have been exposed to Roundup ¶¶ 1, 14-18, 91 ("¶" refers to paragraph numbers in the Complaint, ECF No. 1).

Roundup derives its carcinogenicity from glyphosate, its active ingredient. Defendants have and continue to actively conceal Roundup's carcinogenic nature. ¶¶ 1-3. Defendants maintain "[t]here is an extensive body of research on glyphosate and glyphosate-based herbicides, including more than 800 scientific studies submitted to U.S. or other worldwide regulators in connection with the registration process, that confirm that glyphosate and our glyphosate-based formulated products can be used safely and do not cause cancer." ¶ 5. Many of these purportedly independent research studies were ghostwritten by Monsanto or later discredited for other reasons. Id.

Monsanto argues that Plaintiffs' have failed to allege "which of the dozens of Roundup brand products … they were allegedly exposed to," "the nature, extent, and circumstances of their alleged exposure to Roundup products," or "whether and to what extent they were exposed to other herbicides." Mot. at 8. But Plaintiffs allege that the Roundup brand products referenced in their complaint contain glyphosate, which is shown to cause increased risk of NHL and other cancers. ¶ 22. Plaintiffs allege that they were exposed to Roundup for periods ranging nine to 19 years, and that far less exposure to Roundup— including a single use—more than doubles a person's risk of developing NHL and other cancers. ¶ 39. And Plaintiffs reference research finding "that Roundup is even more toxic than its active ingredient glyphosate alone," such that Plaintiffs' increased risk is attributable to Roundup. ¶ 42. Monsanto similarly misstates that Plaintiffs failed to plead "which specific alleged misstatements or false advertising, if any, they allegedly saw, read or relied on" or "what specific express warranties were allegedly made for the products they used." Mot. at 8. But Plaintiffs allege that Defendants "maintained to the public…that glyphosate and our glyphosate-based formulated products can be used safely and do not cause cancer." ¶ 5.

Monsanto's other criticisms of Plaintiffs' allegations are misplaced. Monsanto faults Plaintiffs for failing to allege "that they have been diagnosed with NHL, any other form of cancer, or any other disease condition allegedly caused by Roundup products" nor "that any medical professional has recommended that they be monitored for any disease or condition allegedly caused by Roundup® products," (ECF No. 21

at 8), but neither is a requisite element of Plaintiffs claims. It is the demonstrable risk of developing NHL from exposure to Roundup® in the future—not a present diagnosis of cancer or prescription for monitoring—that gives rise to Plaintiffs' claims as a matter of law. For the same reasons, Monsanto's criticisms that Plaintiffs fail to allege "that they have ever purchased any Roundup® product" or that "any of them have ever incurred any economic cost of any kind…resulting from exposure to Roundup" likewise fail.

## ARGUMENT

### I. Venue is proper in this district.

Venue is proper if (1) any of the defendants reside in this District, if all defendants reside in California, or (2) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. 28 U.S.C. § 1391(b). In conducting the venue analysis, a "court need not accept the pleadings as true and may consider facts outside of the pleadings." *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1038 (N.D. Cal. 2020). A court "must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in the non-moving party's favor." *Batra v. United States Citizenship & Immigr. Servs.*, No. 2:21-CV-02489-SB-AFM, 2021 WL 4353112, at *2 (C.D. Cal. Aug. 2, 2021). If venue is improper, the court may, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* (citing 28 U.S.C. § 1406(a)).

Defendants Monsanto and Bayer Corp. reside in this District if their contacts are sufficient to subject them to personal jurisdiction if this District were a separate State, 28 U.S.C. § 1391(c)(2), while the residency of Defendant Bayer A.G., a foreign entity, "shall be disregarded in determining where [this action] may be brought." 28 U.S.C. § 1391(c)(2). Monsanto resides in this District for the simple reason that it has not moved for dismissal pursuant to Rule 12(b)(2) and any objection to personal jurisdiction in this Court is waived. *See Epic Games*, 435 F. Supp. 3d at 1039 (collecting cases); *Ward v. Certain Underwriters at Lloyd's of London*, No. 18-cv-07551-JCS, 2019 WL 2076991, at *4 (N.D. Cal. May 10,

2019) ("As far as this Court is aware, every court to consider the issue has held that personal jurisdiction even based on waiver is sufficient to establish 'residency' for the purpose of § 1391(c)(2)."); *Markel Am. Ins. Co. v. Pac. Asian Enters., Inc.*, No. C-07-5749 SC, 2008 WL 2951277, at *2 (N.D. Cal. July 28, 2008) ("[Defendants], each having brought a Rule 12 motion without challenging personal jurisdiction, have waived that defense. As each of the Defendants is subject to personal jurisdiction in this district, each is considered to reside here for the purposes of venue.") Bayer Corp. is subject to personal jurisdiction in this District for reasons set forth in Plaintiffs' opposition to Bayer Corp.'s Motion to Dismiss and, as such, it resides in this District. Because each domestic Defendant, Monsanto and Bayer Corp., resides in this District, venue is proper here.

To the extent this Court does not deny Monsanto's motion for dismissal under Rule 12(b)(3) outright, it should defer ruling on the motion pending jurisdictional discovery. *See, e.g. Gillespie v. Prestige Royal Liquors Corp.*, 183 F. Supp. 3d 996, 1003-04 (N.D. Cal. 2016) ("Because the Court has found above that jurisdictional discovery is warranted, the Court declines to reach the venue issue at this time."). Specifically, Plaintiffs should be permitted to conduct jurisdictional discovery regarding their allegations and the actions and corporate separateness of the three related defendants in this action—Bayer AG, Bayer Corp., and Monsanto—to examine the factual dispute between Plaintiffs' allegations and Bayer Corp.'s public statements on the one hand and Bayer Corp.'s self-serving declaration disavowing any California contacts or Roundup involvement on the other. See, e.g., *Gillespie*, 183 F. Supp. 3d at 1001 (reasoning that jurisdictional discovery "'should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary'" (quoting *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)).

If the Court does not defer ruling and determines that venue in this District is improper, the "interest of justice" supports transfer, rather than dismissal, of this case. *See Batra*, 2021 WL 4353112, at *4.

Defendants argue that Plaintiffs' exposure to Roundup occurred in San Luis Obispo. Mot. at 12. Defendants therefore concede that this case could have been brought in the Central District of California under 28 U.S.C. § 1391(e)(1)(B).

The "interest of justice" supports the transfer of Plaintiffs' claims to the Central District of California pursuant to 28 U.S.C. § 1406, if this Court determines that venue in this District is improper. "[C]onsiderations similar to those in the § 1404(a) 'interest of justice' analysis apply [to questions of transfer under § 1406] as well." *Id.* at *4 (citation omitted). Those considerations include (1) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Id.* The Central District of California will be familiar with California law, under which most of Plaintiffs' claims arise; Plaintiffs currently reside in the Central District, such that the pre-trial litigation, including discovery, will occur primarily in the Central District or in this neighboring District, in which the *In re Roundup Products Liability* MDL is proceeding. If this Court determines venue is improper in this District, transfer of this case to the Central District is warranted, after which the case will return to this District for pre-trial proceedings by way of the *In re Roundup Products Liability* MDL.

## II. **Plaintiffs have article III standing to assert their claims.**

Monsanto argues that Plaintiffs' claims be dismissed for want of standing but ignores Plaintiffs' injuries and misstates the nature of Plaintiffs' claims. Plaintiffs bring suit on behalf of "people who have been exposed to Roundup … but [have] not yet developed NHL," Hearing Tr., *In re Roundup Products Liability Litigation*, Case 3:16-md-02741-VC, ECF No. 13090, at 8, a so-called "futures class." It is well-settled that such future classes have Article III standing to seek redress for their claims. Simply, "[i]f a plaintiff faces a credible threat of harm, and that harm is both real and immediate, not conjectural or

hypothetical, the plaintiff has met the injury-in-fact requirement for standing under Article III." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010); *see also In re Zappos.com,Inc.*, 888 F.3d 1020, 1026 (9th Cir. 2018) (finding that *Krottner* is not irreconcilable with, and remains good law following, the Supreme Court's ruling in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013)). To defeat a motion to dismiss, a plaintiff need only show that the facts alleged, if proven, would confer standing. *Id.* at 1142.

Plaintiffs satisfy this standard for each injury by alleging that they have each been exposed to Roundup for nearly a decade or more, ¶¶ 14-18, that at all relevant times, Roundup has contained glyphosate, a carcinogen, ¶¶ 22, 24-26, and that peer-reviewed research shows exposure to glyphosate—even once—more than doubles a person's risk of developing NHL. ¶ 39 (citing *inter alia* study finding that exposure to glyphosate increases risk of NHL by 300%, study finding that one time use of glyphosate increases risk of NHL by 230%, study finding that exposure to glyphosate twice in one year increases risk of NHL by 212%, study finding that exposure to glyphosate increased risk of B-cell lymphoma by 310%). Monsanto therefore placed Plaintiffs and the Class at increased risk of contracting NHL and other cancers, ¶ 216, and Plaintiffs have sustained economic injury from their purchases of Roundup, ¶¶ 166, 199, and will likely sustain economic injury in the future, for monitoring for diagnoses of NHL and other cancers, as well as the treatment costs if Plaintiffs manifest same. ¶ 216. These injuries suffice to establish Article III standing,. *See, e.g.*, *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1060 (N.D. Cal. 2015) (collecting cases in which class action plaintiffs were permitted to pursue medical monitoring damages "involving toxic exposures or defective products which have a demonstrable risk to health").

Plaintiffs' case is reconcilable with, or readily distinguished from, *Pinkert, Potter, Pepsico* and other authority on which Monsanto relies. Monsanto cites *Pinkert* to suggest that Plaintiffs' injuries must be "certainly impending" under *Clapper*, but that is not the exclusive test for injury under Article III. In *In re Zappos.com*, the Ninth Circuit clarified that, "although the Supreme Court focused in *Clapper* on whether the injury was 'certainly impending,'" "[s]ince *Clapper*, the [Supreme] Court reemphasized that 'an

allegation of future injury may suffice if … there is a 'substantial risk that the harm will occur.'" 888 F. 3d at 1026 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Accordingly, the *Zappos* Court held that *Krottner*, under which "[i]f a plaintiff faces a credible threat of harm, … the plaintiff has met the injury-in-fact requirement for standing under Article III," remains binding on this Circuit. *Id.* at 1027. For reasons above, Plaintiffs satisfy the *Krottner* test.

In *Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 863 P.2d 795 (1993)*, the California Supreme Court enumerated five factors giving rise to a medical monitoring claim (and, in turn, standing to pursue the claim: (1) the significance and extent of the plaintiff's exposure to chemicals; (2) the toxicity of the chemicals; (3) the relative increase in the chance of onset of disease in the exposed plaintiff as a result of the exposure, when compared to (a) the plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of the members of the public at large of developing the disease; (4) the seriousness of the disease for which the plaintiff is at risk; and (5) the clinical value of early detection and diagnosis. *Potter*, 6 Cal. 4th at 974. Plaintiffs' allegations correspond to the *Potter* factors: (1) Plaintiffs were exposed to Roundup at least once; (2) Roundup is a carcinogen as set forth in the cited studies; (3) the chances of the onset of NHL more than double based solely on one exposure to Roundup; (4) NHL is a serious disease with a life expectancy of as short as five years after diagnosis, and (5) the clinical value of early detection and diagnosis is high.

*Pepsico* is distinguished on the facts. The *Pepsico* plaintiffs asserted claims for medical monitoring citing a study finding increased incidences of disease in mice. *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1049, 1058-59 (N.D. Cal. 2015). The *Pepsico* court concluded that the animal studies were insufficient to establish a similar effect in humans, such that plaintiffs' injuries were too speculative to confer standing under Article III—in part, because "the Riva Plaintiffs are not mice," there was nothing in the record to suggest that the chemical at issue caused lung cancer in humans and it only caused cancer in mice in large doses. *Id.* at 1059-60. The research cited by Plaintiffs differs in kind and scale. Plaintiffs do not rely

exclusively on animal studies; indeed the bulk of research that Plaintiffs cite is on humans. ¶¶ 39, 41. Nor does the research cited by Plaintiffs involve exposure amounts that dwarf the exposures pleaded by Plaintiffs. Plaintiffs' studies found analyzed one-time exposure, exposure twice in one year, and exposure more as low as 11 days in one year more than doubled a person's risk of developing NHL. ¶¶ 39. For these reasons, Monsanto's arguments that Plaintiffs lack standing because "Plaintiffs do not allege any facts showing that they have NHL," that Plaintiffs "do not allege that they incurred costs of any kind associated with the use or purchase of Roundup products," that "they have not alleged facts showing a need for medical monitoring" fail.

### III. Plaintiffs adequately alleged that Monsanto fraudulently concealed the carcinogenic nature of roundup, such that the statute of limitations is tolled.

"[A] statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015) (*Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir.2012)). "To plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have "actual or constructive knowledge of the facts giving rise to its claim"; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Id.* (citing *Hexcel*, 681 F.3d at 1060 and *Beneficial Standard Life Insurance Co. v. Madariaga*, 851 F.2d 271, 276 (9th Cir.1988)). Importantly, "it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly when the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators." *Id.*

The first element is easily satisfied. Defendants have taken affirmative acts to mislead Plaintiffs, beginning in the mid-1980s and to date, in "promot[ing] and fund[ing] falsified data, attack[ing] legitimate studies revealing the dangers of Roundup, mount[ing] a campaign of misinformation to delegitimize the work of scientists attempting to reveal the dangers of Roundup, and ma[king] representations suggesting

MDL No. 274
Case No. 3:23-cv-4946-VC                               8
PLAINTIFFS' OPPOSITION TO DEFENDANT MONSANTO COMPANY'S MOTION TO DISMISS

that Roundup was, and is, safer than ordinary household items (including, even, table salt). ¶ 6. Specifically, for example, following a 1983 study, Monsanto "hired a pathologist to persuade [the EPA] that … observed tumors were not related to glyphosate;" ¶ 47; in the late 1990s, Monsanto hired Dr. James Parry, to create reports to help Monsanto convince both the scientific community and consumers that glyphosate was safe, then stifled his findings to the contrary, ¶¶ 48-52; since at least the 1990s, Monsanto has engaged in a ghostwriting campaign to publish scientific research and other documents claiming that "glyphosate was not likely to be carcinogenic to humans," including a study published in 2020, later to have been identified as ghostwritten by Monsanto, ¶¶ 60-70; and, as of March 2023, Defendants continue to represent to the public that "an extensive body of research on glyphosate and [Defendants'] glyphosate-based herbicide … confirms these products can be sued safely and that glyphosate does not cause cancer." ¶ 85. Defendants' decades-long crusade to discredit the very materials that it now argues should have alerted Plaintiffs' to their claims satisfies the first element of the test for fraudulent concealment. *See, e.g. In re Animation Workers*, 123 F. Supp. 3d at 1195 ("[T]he combination of ... misleading, pretextual statements and ... affirmative efforts taken to ... otherwise keep [Defendants' misconduct] secret could support a fraudulent concealment claim if such pretextual statements were pled with particularity and if the alleged affirmative acts to conceal went beyond mere passive concealment.") (quotations omitted). Indeed, as one court has already found by clear and convincing evidence, "Monsanto made 'continuous efforts to impede, discourage, or distort the scientific inquiry about glyphosate and those actions were reprehensible and showed a conscious disregard for health.'" *Pilliod v. Monsanto Co.*, 67 Cal. App. 5th 591, 640-41 (2021).

The second and third elements, a plaintiff's constructive knowledge and diligence, "generally present[] a question for the trier of fact," and "courts have been hesitant to dismiss an otherwise fraudulent concealed … claim for failure to sufficiently allege due diligence, because questions of inquiry notice are necessarily bound up with the facts of the case." *Id.* at 1204 (citation omitted). Even so, Defendants' arguments that Plaintiffs had constructive knowledge or were on inquiry notice fail. First, Defendants argue,

without support, that because "[t]his Court has presided over thousands upon thousands of cases alleging the same theory of carcinogenicity since 2016[,] the suggestion that Plaintiffs could not have even 'suspected' a basis for a claim until a few months ago (even with 'diligent investigation') is not just baseless, it is almost absurd." Mot. at 15. But "the fraudulent concealment doctrine…does not necessarily hold individual [defendants] to the diligence standard of combing court filings in potentially related cases," and Monsanto has offered no reason, nor authority, as to why such diligence standard should apply here. *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 555 (4th Cir. 2019). Monsanto next argues that "the facts Plaintiffs rely on have been publicly available and highly publicized for years." This argument, too, fails, because Defendants have attempted to discredit those publications, beginning no later than the mid-1980s and continuing through March 2023, ghostwrting publications dressed as scientific research to undermine and confuse those publications at every step, including the IARC monograph. ¶¶ 46-74. Plaintiffs' assertion of fraudulent concealment thus tolls and statute of limitations concerns and preserves Plaintiffs' claims.

### IV. <u>Plaintiffs may seek a medical monitoring remedy.</u>

That "medical monitoring may be called for as a result of a defendant's tortious conduct, even in the absence of actual physical injury" is without controversy under California law. *Potter*, 6 Cal. 4th at 1006-07 ("[W]e conclude that a reasonably certain need for medical monitoring as an item of damage for which compensation should be allowed."). Plaintiffs have pleaded a number of standalone torts for which they can seek medical monitoring as a remedy. *See generally* Compl. (asserting *inter alia* strict liability-design defect, strict liability-failure to warn, negligence/negligent misrepresentation). Plaintiffs have satisfied the requirements of *Potter* in asserting damages for medical monitoring under these claims.

Monsanto is wrong that Plaintiffs have failed to address the "first, third, or fifth *Potter* factors." Mot. at 17. Plaintiffs pleaded that they were repeatedly exposed to Roundup and dozens of studies show, that just *one-time exposure* to Roundup increases a person's risk of developing NHL by 300%. ¶ 39. These allegations set forth the significance and extent of Plaintiffs' exposure and satisfy the first *Potter* factor.

Plaintiffs referenced dozens of scientific studies that determined exposure to Roundup increased a person's chance of developing NHL compared to those that were not exposed, compared to non-Roundup glyphosate, and "after adjustment for other pesticides." ¶ 42 ("These studies include findings that children of pesticide applicators experience higher rates of childhood cancer, that glyphosate itself is carcinogenic [and] causes NHL, and that Roundup is even more toxic than its active ingredient glyphosate alone."). These allegations satisfy the third *Potter* factor. The clinical value of early detection of NHL cannot be understated. The American Cancer Society reports that detecting NHL at its early stages is a "[g]ood prognostic factor,"[1] and the National Institutes of Health explains "[e]arly recognition and prompt therapy are critical" to prevent "[l]ife-threatening emergent complications of NHL."[2] The fifth *Potter* factor is thus satisfied. Medical monitoring is appropriate here.

V.      **Plaintiffs adequately pleaded claims for breach of express warranty.**

Monsanto seeks dismissal only of Plaintiffs' claim for breach of express warranty under California law and does not seek dismissal of Plaintiffs' claims for breach of express warranty under the laws of other states. Mot. at 18. With respect to Plaintiffs' California claim, Monsanto argues that Plaintiffs failed to plead "the exact terms of the warranty" and "allege that they gave pre-suit notice to Defendants of the alleged breach." *Id.* The former is untrue; the latter is not required by law.

"Under the California Commercial Code…any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025, 1053–54 (C.D. Cal. 2022) (citing Cal. Comm. Code § 2313(1)(a)-(b)). Plaintiffs allege that Defendants made such express warranties, in "continu[ing] to make false, misleading assertions regarding the safety of Roundup, including that the product "can be used safely and . . . glyphosate does not cause cancer." ¶¶ 5, 71-74, 86, 139 n.2. Plaintiffs allege that these warranties

---

[1] https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/detection-diagnosis-staging/factors-prognosis.html (last visited Jan. 1, 2024).
[2] https://www.ncbi.nlm.nih.gov/books/NBK559328/ (last visited Jan. 1, 2024).

are untrue, and that Monsanto has known, throughout its manufacture and marketing of Roundup that glyphosate does cause cancer, such that Roundup cannot be used safely. ¶¶ 6, 37-74. Such warranties are similar to those found actionable under California law, and they give rise to Plaintiffs' breach of express warranty claim. *See, e.g.*, *Battle*, 607 F. Supp. 3d at 1055 (denying motion to dismiss breach of express warranty claim where sunscreen was labeled as "Reef Safe" but contained ingredients that may be harmful to coral reefs). Monsanto is wrong that Plaintiffs failed to allege the exact terms of the express warranty that Defendants breached.

Monsanto is likewise wrong that Plaintiffs were required to provide Defendants with pre-suit notice under California law. While such notice is typically required for claims of breach between a seller and a buyer, no such requirement is imposed on claims between a consumer and manufacturer. *See, e.g.*, *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 817 (N.D. Cal. 2014) ("[T]imely notice of a breach of an express warranty is not required where the action is brought by 'injured consumers against manufacturers with whom they have not dealt. The purpose of this exception is to protect an unwary buyer because 'it will not occur to him to give notice to one with whom he has had no dealings.'") (citing *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 61 (1963)); *Battle*, 607 F. Supp. 3d at 1054. That is the posture of Plaintiffs here—Defendants are manufacturers of Roundup and Plaintiffs are consumers of it. Plaintiffs are not required to have provided Defendants with pre-suit notice, and Plaintiffs failure to do so does not warrant dismissal of Plaintiffs' breach of express warranty claim under California law.

## VI. Plaintiffs Adequately Pleaded Claims For Breach Of Implied Warranty.

Monsanto similarly attacks Plaintiffs' breach of implied warranty claim under California law only and does not seek dismissal of Plaintiffs' breach of implied warranty claims under the laws of other states. ECF No. 21 at 18. Monsanto bases this attack on assertions that (1) "a California plaintiff asserting breach of implied warranty must stand in vertical contractual privity with the defendant," which Plaintiffs, as "end consumer[s]" and Defendants, as manufacturers, are not, and (2) the third-party beneficiary exception to

this rule "does not apply in the context of a consumer claim against a product manufacturer." ECF No. 21 at 18-19 (citing, *e.g.*, *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1010 (S.D. Cal. 2021)). But Monsanto overlooks other exceptions to California's privity rule applicable to Plaintiffs. Exceptions to the privity requirement arise when the plaintiff relies on *wri*tten labels or advertisements of a manufacturer and in special cases involving foodstuffs, *pesticides*, pharmaceuticals, and where the end user is an employee of the purchaser. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *see also, Garcia v. Doe White Trucking Company*, No. 20-CV-00134-SI, 2020 WL 30617845, at *2 (N.D. Cal. June 9, 2020) ("[P]rivity is not required if the plaintiff relies on the written labels or advertisements of a manufacturer [or] under special circumstances involving foodstuffs, drugs, and pesticides.").

Plaintiffs fall under two of these additional exceptions. *First*, as pleaded in their Complaint, Plaintiffs relied on written labels and advertisements for Roundup by Defendants. *See, e.g.*, ¶ 71 ("Roundup products did not contain a warning label telling consumers to use protective equipment or notifying them of the cancer risks of exposure. Rather, the product label inaccurately informed consumers that Roundup "targets an enzyme found in plants, but not in people or pets."); ¶ 72 ("For years, Monsanto produced commercials that depicted people using Roundup without protective equipment."). *Second*, and separately, Roundup is a pesticide. Plaintiffs may therefore avail themselves of the exceptions to the privity rule for (1) written labels or advertisements of a manufacturer and/or (2) "special cases involving…pesticides." *Clemens*, 543 F.3d at 1023.

Monsanto's assertion that "[i]n any event, Monsanto did not breach any implied warranties," because Roundup "products are merchantable," borders the absurd. ECF No. 21 at 19. Merchantability under California law requires not only that a product be fit for its ordinary use, but also that the product can be put to such use *safely*. *See, e.g.*, *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 878 (N.D. Cal. 2015) ("[I]mplied warranty is simply a guarantee that [the product] will operate in a

safe condition and substantially free of defects.")[3] It is now well understood that Roundup cannot, in its ordinary use, be used safely; the use of Roundup causes cancer in breach of the implied warranty of merchantablity.

### VII.     Plaintiffs' fraud-base claims are sufficiently pleaded.

Monsanto argues that Plaintiffs' fraud-based claims—Counts VII, VIII, and IX—fall short of Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for failure to allege the "who, what, when, where, and how" as well as "what is false or misleading" about the statement. Motion, at 13-14. Monsanto asserts that Plaintiffs "do not specifically allege any purported false advertisement or public statement save one—that glyphosate 'targets an enzyme found in plants, but not in people or pets.'" Motion, at 14. Monsanto is wrong as a matter of fact.

Plaintiffs allege that Monsanto, Bayer AG, and Bayer Corp. marketed and sold glyphosate-containing Roundup in all its formulations despite knowing that it causes NHL and to substantially increase users' risk of contracting the disease, all without warning purchasers of the same. Plaintiffs allege that Monsanto, Bayer AG, and Bayer Corp. represented on "labels, advertisements, and warranties that Roundup was safe when in fact it was not." ¶ 196. Further, Plaintiffs allege that Monsanto, Bayer AG, and Bayer Corp. made material omissions at all times in marketing the product absent such a warning and without instructing users to employ protective equipment. ¶¶ 187, 204. Plaintiffs relied on these misstatements and omissions. ¶¶ 207-08. Plaintiffs' allegations of Monsanto, Bayer AG, and Bayer Corp.'s practices are clearly—not vaguely or ambiguously—alleged, and they satisfy Rule 9(b). *See Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 419 (C.D. Cal. 2012) (finding allegations of Allstate's general practice of representing that it will cover claims but failing ultimately to do so to satisfy Rule 9(b)). Plaintiffs adequately allege what is "false or misleading" about Defendants' omission. ¶¶ 39-41, 48-52, 53-70. Lastly, Defendants stated

---

[3] *American Suzuki Motor Corp.*, on which Monsanto relies, does not hold otherwise. In that case, the court found that the safety-related risk asserted by plaintiffs was too "speculative" to fall within the scope of the implied warranty. 37 Cal. App. 4th at 1296-97. The risk of developing NHL upon even a single use of Roundup is well established, and *Am. Suzuki Motor Corp.* is distinguished from this case.

on the Roundup product label that it "targets an enzyme found in plants, but not in people or pets." ¶ 71. Such allegations are not vague or ambiguous in the least.

## VIII. Plaintiffs' declaratory judgment claim is not duplicative.

Monsanto seeks dismissal of Plaintiffs' declaratory judgment claim on grounds that the claim is "entirely duplicative of Plaintiffs' other causes of action," while simultaneously seeking to dismiss those other claims. (ECF No. 21 at 21). But Plaintiffs' declaratory judgment claim is not eclipsed by Plaintiffs' other causes of action, as Monsanto suggests. *Cf. StreamCast Networks, Inc. v. IBIS LLC*, No. CV05-04239MMM(EX), 2006 WL 5720345, at *4 (C.D. Cal. May 2, 2006) ("If plaintiff prevails on his breach of contract claim, his remedy would be damages, not reinstatement of the preferred stock. A declaration that the rescission was invalid, however, might induce defendants to reinstate the stock voluntarily or, if necessary, support a request for injunctive relief. Defendants' motion to dismiss Count II is, therefore, denied"). Similarly, Plaintiffs claim for declaratory judgment that Defendants are financially responsible for providing corrective notice to the Class regarding Roundup is not commensurate with Plaintiffs' other claims.

## IX. In the alternative, Plaintiffs' request leave to amend.

In the event that this Court grants in whole or in part Monsanto's motion to dismiss, Plaintiffs request that this Court grant leave to amend to address any deficiencies identified in this Court's order. "Rule 15 advises leave to amend shall be freely given when justice so requires." *Waryck v. Thor Motor Coach Inc.*, No. 3:22-cv-1096-L-KSC, 2023 WL 7029208 (S.D. Cal. Oct. 25, 2023. Here, justice would require that Plaintiffs be afforded an opportunity to amend.

## CONCLUSION

For the foregoing reasons, Plaintiffs request the Court deny Monsanto's motion, or alternatively, permit Plaintiffs to conduct jurisdictional discovery and leave to amend.

Dated: January 12, 2024 　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　**JOSEPH SAVERI LAW FIRM, LLP**

　　　　　　　　　　　　　　　　　　　　By: */s/ Christopher K. L. Young*
　　　　　　　　　　　　　　　　　　　　　　　Christopher K. L. Young

　　　　　　　　　　　　　　　　　　　　Joseph R. Saveri (SBN 130064)
　　　　　　　　　　　　　　　　　　　　Christopher K. L. Young (SBN 318371)
　　　　　　　　　　　　　　　　　　　　David W. Lerch (State Bar No. 229411)
　　　　　　　　　　　　　　　　　　　　Itak K. Moradi (SBN 310537)
　　　　　　　　　　　　　　　　　　　　**JOSEPH SAVERI LAW FIRM, LLP**
　　　　　　　　　　　　　　　　　　　　601 California Street, Suite 1000
　　　　　　　　　　　　　　　　　　　　San Francisco, CA 94108
　　　　　　　　　　　　　　　　　　　　Telephone: (415) 500-6800
　　　　　　　　　　　　　　　　　　　　Facsimile: (415) 395-9940
　　　　　　　　　　　　　　　　　　　　Email: jsaveri@saverilawfirm.com
　　　　　　　　　　　　　　　　　　　　　　　　cyoung@saverilawfirm.com
　　　　　　　　　　　　　　　　　　　　　　　　dlerch@saverilawfirm.com
　　　　　　　　　　　　　　　　　　　　　　　　imoradi@saverilawfirm.com

　　　　　　　　　　　　　　　　　　　　Robert L. Lieff (SBN 37568)
　　　　　　　　　　　　　　　　　　　　P.O. Box A
　　　　　　　　　　　　　　　　　　　　Rutherford, CA 94573
　　　　　　　　　　　　　　　　　　　　Telephone: (415) 250-4800
　　　　　　　　　　　　　　　　　　　　Email: rlieff@lieff.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*