Joseph R. Saveri (SBN 130064)
Christopher K. L. Young (SBN 318371)
David W. Lerch (State Bar No. 229411)
Itak K. Moradi (SBN 310537)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
Email:            jsaveri@saverilawfirm.com
                       cyoung@saverilawfirm.com
                       dlerch@saverilawfirm.com
                       imoradi@saverilawfirm.com

Robert L. Lieff (SBN 37568)
P.O. Box A
Rutherford, CA 94573
rlieff@lieff.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **JONAS PEREZ-HERNANDEZ, ISABEL PAZ-HERNANDEZ, MOISES PEREZ-PAZ, ALLISON PEREZ-PAZ, and ABIGAIL PEREZ-PAZ**, individually and on behalf of all others similarly situated,<br><br>           *Plaintiffs*,<br><br>      v.<br><br>**BAYER AKTIENGESELLSCHAFT**, a German joint-stock company; **BAYER CORPORATION**, an Indiana corporation; and **MONSANTO COMPANY**, a Delaware corporation,<br><br>           *Defendants*. | MDL No. 2741<br>Case No. 3:23-cv-04946-VC<br><br>**PLAINTIFFS' OPPOSITION TO BAYER CORPORATION'S MOTION TO DISMISS**<br><br>Date: February 15, 2024<br>Time: 10:00 a.m.<br>Place: San Francisco, Courtroom 4, 17th Floor<br>Judge:  Hon. Vince Chhabria |

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  PLAINTIFFS' FACTUAL ALLEGATIONS ............................................................... 1

III. LAW & ARGUMENT .................................................................................................... 5

    A.    Plaintiffs' allegations sufficiently allege Bayer Corp.'s unlawful conduct. .................................................................................................................. 5

    B.    This Court has specific jurisdiction over Bayer Corp. ..................................... 6

        1.    Bayer Corp. availed itself of and directed its activities at the forum. ..................... 7

        2.    Plaintiffs' claims arise from Bayer Corp.'s contacts with the forum. ..................... 12

        3.    Exercising jurisdiction is reasonable here. ............................................. 13

    C.    Deferral of Movants' motion pending jurisdictional discovery is warranted. ................................................................................................................ 14

    D.    Plaintiffs have sufficiently stated a claim against Bayer Corp. .................... 15

    E.    If this Court grants Bayer Corp.'s motion in whole or in part, Plaintiffs should be granted leave to amend. ................................................................. 15

IV.  CONCLUSION ............................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
   11 F.4th 972 (9th Cir. 2021) ................................................................................................12

*Calder v. Jones*,
   465 U.S. 783 (1984)..............................................................................................................11

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018)....................................................................................................10

*Cohodes v. MiMedx Grp., Inc.*,
   No. 3:22-cv-00368, 2022 WL 15523079 (N.D. Cal. Oct. 27, 2022) .....................................14

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ...................................................................................6, 7, 11, 12

*Daimler AG v. Baumann*,
   571 U.S. 117 (2014)..............................................................................................................10

*Doe 1 v. GitHub, Inc.*,
   No. 22-cv-06823-JST, 2023 WL 3449131 (N.D. Cal. May 11, 2023) ...................................5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)..........................................................................................................12

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
   905 F.3d 597 (9th Cir. 2018) ............................................................................................7, 13

*Gillespie v. Prestige Royal Liquors Corp.*,
   183 F. Supp. 3d 996 (N.D. Cal. 2016) .......................................................................7, 10, 14

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*,
   170 F. Supp. 3d 1249 (C.D. Cal. 2016) ............................................................................7, 11

*Waryck v. Thor Motor Coach Inc.*,
   No. 3:22-cv-1096-L-KSC, 2023 WL 7029208 (S.D. Cal. Oct. 25, 2023) ............................15

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ..............................................................................................10

**Statutes**

California Transparency in Supply Chains Act .......................................................................8, 9

Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136....................................2, 3, 4

Transparency in Supply Chains Act ................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 12.............................................................................................................................5

Fed. R. Civ. P. 15...........................................................................................................................15

Plaintiffs Jonas Perez-Hernandez, Isabele Paz-Hernandez, Moises Perez-Paz, Allison Perez-Paz, and Abigail Perez-Paz ("Plaintiffs") file this opposition to Defendant Bayer Corporation ("Bayer Corp.")'s Motion to Dismiss ("Mot.", ECF No. 20).

## I.   INTRODUCTION

Plaintiffs have been exposed to glyphosate through Roundup products' use on a farm in California and face an increased risk of developing Non-Hodgkins Lymphoma ("NHL") as a result. Defendants Bayer AG, its United States-based subsidiary, Bayer Corp., and Monsanto Company market and sell those Roundup products in California and derive substantial revenues therefrom. Plaintiffs further allege that, in doing so, Defendants Bayer AG, Bayer Corp., and Monsanto Company represent that studies have proven glyphosate and Roundup products to be safe and noncarcinogenic, even though they are each aware that those studies were largely ghostwritten by Monsanto and have since been discredited or otherwise deemed invalid. Plaintiffs assert eleven causes of action against Defendants on their own behalf and on behalf of a putative class of individuals exposed to Roundup products, including for products liability design defects and failures to warn, negligent misrepresentation, breaches of express and implied warranty, violations of consumer protection and false advertising statutes, fraudulent inducement, declaratory relief, and medical monitoring.

Bayer Corp. feigns ignorance and confusion and seeks to avoid litigating them on the merits through a challenge to this Court's personal jurisdiction. To that end, Bayer Corp. submits a declaration that denies any and all contacts with California and ties to Roundup. Declaration of Keith R. Abrams, ECF No. 20-1 ("Abrams Decl."). But Bayer Corp.'s own public statements contradict its self-serving declaration.

## II.   PLAINTIFFS' FACTUAL ALLEGATIONS

Monsanto began its research, manufacture, and distribution of glyphosate-based herbicide "Roundup" in the 1970s. ¶ 27 ("¶" refers to paragraph numbers in the Complaint, ECF No. 1). The

original Roundup product was introduced in 1974. *Id.* Roundup is a mixture of multiple chemicals. In addition to glyphosate, it includes surfactants, which are chemicals that increase penetration of other chemicals (in this case, glyphosate) into both plant and human tissue. ¶ 28.

The manufacture, formulation, and distribution of herbicides, such as Roundup, are regulated under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136, *et seq*. ¶ 29. FIFRA requires that all pesticides be registered with the Environmental Protection Agency ("EPA") and the EPA requires a variety of tests to evaluate toxicity to people, other potential non-target organisms, and other adverse effects on the environment. ¶ 30. Registration by the EPA is not an assurance or finding of safety. *Id.* Rather, the determination the EPA makes in registering or re-registering a product is not that the product is "safe," but that use of the product in accordance with its label directions "will not generally cause unreasonable adverse effects on the environment." *Id.* FIFRA defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, considering the economic, social, and environmental costs and benefits of the use of any pesticide." ¶ 31.

FIFRA generally requires that the registrant conduct health and safety testing of pesticide products. ¶ 32. The government is not required, nor is it able, to perform product testing required of the manufacturer. *Id.* The evaluation of each pesticide product distributed, sold, or manufactured is completed at the time the product is initially registered. *Id.* In 1974, to obtain initial registration and approval to sell Roundup in the United States from the EPA, Monsanto submitted results of studies examining the effects of glyphosate on animals, including animal cancer studies. ¶ 33. These studies were subsequently deemed invalid. *Id.*

Indeed, as early as the 1980s, Monsanto was aware of glyphosate's carcinogenic properties, alone and as formulated in glyphosate-based herbicides like Roundup. ¶ 37. Glyphosate and Roundup have

long been associated by scientists and researchers with carcinogenicity and the development of NHL. ¶ 38. Numerous human and animal studies have evidenced the carcinogenicity of glyphosate and/or Roundup, including but not limited the extensive list of studies highlighted in ¶ 39.

On March 24, 2015, the United Nations' World Health Organization's ("WHO") International Agency for Research on Cancer ("IARC") identified glyphosate as "probably carcinogenic to humans." ¶ 41. It came to this conclusion following a year-long, cumulative review of human, animal, and DNA studies from publicly accessible, peer-reviewed data, and relied on the mechanistic evidence of carcinogenicity in humans and sufficient evidence of carcinogenicity in animals. *Id.* The IARC's full Monograph was published on July 29, 2015. *Id.* The IARC found an increased risk between exposure to glyphosate and NHL, as well as several subtypes of NHL, and found that the increased risk continued after adjustment for other pesticides. *Id.* It also found that glyphosate caused DNA and chromosomal damage in human cells. *Id.*

Beyond glyphosate itself being carcinogenic, there is substantial evidence dating back to at least 1991 that the surfactants in formulated glyphosate-based herbicides such as Roundup substantially increase toxicity and danger to human health by enhancing the absorption of glyphosate through human skin. ¶ 42. These studies include findings that the children of pesticide applicators experience higher rates of childhood cancer, that glyphosate itself is carcinogenic causes NHL, and that Roundup is even more toxic than its active ingredient glyphosate alone. *Id.*

Defendant Monsanto claims to review in detail "every" study published about their products and that it takes every such study "seriously." ¶ 43. Rather than addressing these numerous studies, however, Monsanto chooses to ignore or discredit them through its own ghostwritten junk science and smear campaigns against their authors or proponents. ¶¶ 46, 75-82.

Monsanto's smear campaign has paid off. When the EPA engaged in a Congressionally mandated "re-registration" process for pesticides, it concluded in reliance on Monsanto's ghostwritten or manipulated studies that "there are no risks to human health from the current registered uses of glyphosate and that glyphosate is not likely to be carcinogenic to humans." ¶ 35. The United States Court of Appeals for the Ninth Circuit has ordered the EPA to reconsider its decision regarding glyphosate after reviewing the science and determining EPA had "shirked its duties" in its review. ¶ 36. The Court found that "EPA's errors in assessing human-health risk are serious" and noted that the EPA deemed glyphosate unlikely to cause cancer despite the fact that most studies it reviewed showed glyphosate caused an increased risk of NHL. *Id.*

In June 2018, Bayer purchased Monsanto for $63 billion, despite the thousands of lawsuits then pending against Monsanto alleging that that its flagship product, Roundup, had caused the plaintiffs to develop NHL and other serious diseases. ¶¶ 3, 19. Having boasted of its thorough due diligence in acquiring Monsanto, Bayer cannot claim ignorance of Monsanto's extensive history of manipulating scientific literature on the carcinogenicity of glyphosate and Roundup to conceal their risks from the public and regulators or the many studies confirming that glyphosate and Roundup are harmful to human health. ¶ 3.

Since acquiring Monsanto, Bayer AG and its US subsidiary, Bayer Corp., which Plaintiffs allege is Monsanto's parent corporation, have persisted in designing, developing, manufacturing, testing, packaging, marketing, distributing, labeling, and/or selling Roundup despite knowing that Roundup is unsafe and causes NHL and other dangerous cancers. ¶ 19. Plaintiffs allege that Bayer Corp. "continue[s] to make the false and misleading assertions that Roundup 'can be used safely' and that 'glyphosate does not cause cancer.'" ¶ 139 n.2. Plaintiffs further allege that Monsanto, Bayer AG, and Bayer Corp. have undertaken the foregoing acts in California, thereby conducting business in California, deriving

substantial revenues in California, committing various statutory violations in California, and causing injury to Plaintiffs in California. ¶¶ 12, 23.

### III.     LAW & ARGUMENT

**A. Plaintiffs' allegations sufficiently allege Bayer Corp.'s unlawful conduct.**

Bayer Corp. complains that Plaintiffs' allegations impermissibly lump it together with Bayer AG in a manner that fails scrutiny under Federal Rule of Civil Procedure 12(b)(6). Motion at 7. Bayer Corp. boldly—and falsely—claims that the "*only* factual allegation specific to Bayer Corp." is that it is Monsanto's "direct parent." *Id.* As a result, Bayer Corp. asserts that Plaintiffs fail to notify it of "the nature of Plaintiffs' theory of liability as to Bayer Corp." such that it does not know whether it is alleged "*itself* [to have] committed illegal act[s]" or is instead allegedly liable under "some sort of alter-ego liability." *Id.* Yet, as Plaintiffs' well-pleaded complaint shows, Plaintiffs have sufficiently alleged both. *See, e.g.*, *Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2023 WL 3449131, at *9 (N.D. Cal. May 11, 2023) ("A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. [T]he short and plain statement must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." (internal quotation marks and citations omitted)).

First, Plaintiffs allege that Bayer Corp. is liable for its own misconduct, which it undertook jointly alongside Bayer AG and Monsanto. These allegations include the following:

- Bayer AG and Bayer Corp. "market their multinational corporate conglomerate with the trademarked slogan, '*Science for a **better life**.*'" ¶ 1.

- Nevertheless, "[s]ince acquiring Monsanto, Bayer AG, *along with its US subsidiary*, has persisted in designing, developing, manufacturing, testing, packaging, marketing, distributing, labeling, and/or selling Roundup despite knowing that Roundup is unsafe and causes NHL and other dangerous cancers." ¶ 19 (emphasis added).

- Further, Bayer Corp. "continue[s] to make the false and misleading assertions that Roundup 'can be used safely' and that 'glyphosate does not cause cancer.'" ¶ 139 & n.2 (citing page from Bayer Corp. website).

- "As of March 2023, Bayer continues to represent to the public that 'There is an extensive body of research on glyphosate and Bayer's glyphosate-based herbicide . . . that confirms these products can be used safely and that glyphosate does not cause cancer.'" ¶ 85; *see also id.*, ¶ 86 (repeating same assertion).[1]

Second, Plaintiffs allege that Bayer Corp. is liable for Monsanto's misconduct as Monsanto's parent. Specifically, Plaintiffs allege, "Bayer US is a wholly owned subsidiary of Bayer AG and the direct parent of Defendant Monsanto." ¶ 20. Plaintiffs further allege, "At all relevant times, Monsanto—now owned by Bayer—designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the commercial herbicide Roundup, a glyphosate-based herbicide." ¶ 26. Plaintiffs allege that this occurred in California and nationwide. ¶¶ 12, 23. Although Bayer Corp. now disputes that it is Monsanto's "direct parent," Abrams Decl ECF No. 20-1, ¶ 7, it does *not* dispute that it is *a* parent of Monsanto.

**B. This Court has specific jurisdiction over Bayer Corp.**

Because California's long-arm statute is coextensive with due process, this Court may exercise specific jurisdiction over Bayer Corp. when doing so comports with due process. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). To determine whether that is the case, courts apply a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

---

[1] Although this quote is attributed to "Bayer" rather than "Bayer Corp." in Plaintiffs' complaint, it is the same language that is quoted and attributed to Bayer Corp. elsewhere in the complaint.

*Id.* at 1076 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). Once the plaintiff satisfies the first two prongs, it is the defendant's burden "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). "Generally, '[t]he commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test].'" *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 603 (9th Cir. 2018). When the court makes determinations as to personal jurisdiction absent an evidentiary hearing and instead bases them on written materials and affidavits, "the court must resolve all factual disputes, including conflicts in affidavits, in the plaintiff's favor." *See, e.g.*, *Gillespie v. Prestige Royal Liquors Corp.*, 183 F. Supp. 3d 996, 1000-01 (N.D. Cal. 2016). Here, Plaintiffs' allegations demonstrate that this Court has jurisdiction over Bayer Corp.

**1. Bayer Corp. availed itself of and directed its activities at the forum.**

Despite Bayer Corp.'s protestations, it easily satisfies the first prong under either an "availment" or a "direction" analysis.[2]

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *See Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*, 170 F. Supp. 3d 1249, 1260 (C.D. Cal. 2016). Plaintiffs allege that Bayer Corp. "has persisted in designing, developing, manufacturing, testing, packaging, marketing, distributing, labeling, and/or selling Roundup despite knowing that Roundup is unsafe and causes NHL and other dangerous cancers" and while "continu[ing] to make the false and misleading assertions that Roundup 'can be used safely' and that 'glyphosate does not cause cancer.'" ¶¶ 19, 139 n.2. Plaintiffs allege that Bayer Corp. undertook these

---

[2] Plaintiffs' claims sound in contract and in tort, and as a result, Plaintiffs conduct both an "availment" analysis and a "direction" analysis here.

acts in California by alleging that it "has, at all times relevant, individually or through its agents, subsidiaries, and representatives engaged in business in [California]" and "marketed, advertis[ed], distributed, and/or sold products in [California]." ¶ 12. Plaintiffs further allege that Bayer Corp. "derive[s] substantial revenue from goods and products used in California and nationwide" and "expected or should have expected [its] acts to have consequences within . . . California [and] nationwide." ¶ 23. Such allegations demonstrate availment.

Bayer Corp. submits the declaration of its Head of Corporate Law and Assistant Secretary, Keith R. Abrams, to contradict Plaintiffs' allegations. According to Mr. Abrams, Bayer Corp. lacks operations in California as well as any affiliation with Roundup products. *See* Abrams Decl., ¶ 4 ("Bayer Corp. does not maintain an office or have employees in California."); *id.*, ¶ 8 ("Bayer Corp. has never researched, designed, developed, manufactured, tested, packaged, marketed, promoted, advertised, distributed, labeled, sold, or provided warnings for Roundup-brand herbicides."); *see also* Mot. at 4 n.2 ("Bayer Corp. simply has nothing to do with Roundup products . . . ."). But Bayer Corp.'s own actions and public statements—which Plaintiffs submit concurrently herewith and accompanied by their own declaration—undermine Mr. Abrams's assertions. As an initial matter, Bayer Corp. is in fact registered to do business in California,[3] and Bayer takes special care to comply with California's idiosyncratic legal requirements, such as the formulation of annual statements to ensure compliance with California's Transparency in Supply Chains Act.[4] Additionally, Bayer Corp. represents online via its "Contact Us"

---

[3] *See* Exhibit A, Declaration of Christopher Young, at Ex. 1, California Secretary of State Information on Bayer Corp.
[4] *See* Exhibit A, Declaration of Christopher Young, at Ex. 2, Bayer Corp. website homepage screenshots (linking to "Transparency in Supply Chains Act Statement (2022) at the bottom of the homepage), *available at* https://www.bayer.com/en/us/bayer-united-states-of-america; *see also* Exhibit A, Declaration of Christopher Young, at Ex. 3, Transparency in Supply Chains Act Statement (2022), *available at* https://www.bayer.com/sites/default/files/2022%20-%20MSAStatement_CA_Upload.pdf. Bayer Corp. makes the Transparency in Supply Chains Act Statement available on its website, and Bayer AG creates the statement annually on its behalf and on behalf of its "relevant affiliates." *See* https://www.bayer.com/sites/default/files/2022%20-%20MSAStatement_CA_Upload.pdf (supplying current and former versions of the statement). It is therefore apparent that Bayer AG views itself and its "relevant affiliates" as being subject to the law. Under California law, only companies meeting the following requirements are so subject: "(a) identify itself as a

page that among "Our Locations" of "over 170 facilities in the U.S." are five located in California, all but one of which is dedicated at least in part to Crop Science.[5] Further, a West Sacramento administrative and research and development facility "houses Crop Science's center of excellence," and a San Francisco research and development facility is dedicated to both its Crop Science *and* its Pharmaceuticals divisions (with the latter relating more specifically to hematology, which may include Bayer's NHL drugs).[6] In fact, *no other state* in the United States has *more* Bayer Corp. facilities,[7] which is unsurprising given California's size, population, and status as the first-ranking state for agricultural cash receipts.[8] At the bottom of the page, viewers are instructed to direct "queries or comments" to "Bayer Corporation" at its Whippany, NJ, headquarters.[9]

Bayer Corp. likewise admits on its website that it is very much involved with Roundup. Bayer Corp.'s "Products" webpage explains: "Our broad product portfolio includes many world-famous brands which have shaped the iconic Bayer brand. With our innovative products, we help to make life better. .

---

retail seller or manufacture in its tax returns; (b) satisfy the legal requirements for 'doing business' in California; and (c) have annual worldwide gross receipts exceeding $100,000,000." *See* State of California Department of Justice, "The California Transparency in Supply Chains Act," *available at* https://oag.ca.gov/SB657#:~:text=The%20law%20requires%20companies%20subject,a%20website%2C%20through%20written%20disclosures.

[5] *See* Exhibit A, Declaration of Christopher Young, at Ex. 4, Bayer Corp. website, "Contact Us" page screenshots, *available at* https://www.bayer.com/en/us/contact-us.

[6] *See id.*

[7] *See* https://www.bayer.com/en/us/contact-us (showing five facilities in California and Pennsylvania and no other state with more than five).

[8] *See, e.g.*, California Department of Food & Agriculture, CALIFORNIA AGRICULTURAL STATISTICS REVIEW (2021-2022), at 2 ("California remained the leading state in cash farm receipts in 2021 with combined commodities representing 11.8 percent of the U.S. total."), *available at* https://www.cdfa.ca.gov/Statistics/PDFs/2022_Ag_Stats_Review.pdf; California Department of Food & Agriculture, CALIFORNIA AGRICULTURAL STATISTICS REVIEW (2020-2021), at 2 ("California remained the leading state in cash farm receipts in 2020 with combined commodities representing 13.7 percent of the U.S. total."), *available at* https://www.cdfa.ca.gov/Statistics/PDFs/2021_Ag_Stats_Review.pdf; California Department of Food & Agriculture, CALIFORNIA AGRICULTURAL STATISTICS REVIEW (2019-2020), at 2 ("California remained the leading state in cash farm receipts in 2019 with combined commodities representing over 13 percent of the U.S. total."), *available at* https://www.cdfa.ca.gov/Statistics/PDFs/2020_Ag_Stats_Review.pdf; California Department of Food & Agriculture, CALIFORNIA AGRICULTURAL STATISTICS REVIEW (2018-2019), at 2 ("California remained the leading state in cash farm receipts in 2018 with combined commodities representing over 13 percent of the U.S. total."), *available at* https://www.cdfa.ca.gov/statistics/PDFs/2018-2019AgReportnass.pdf.

[9] *See* Exhibit A, Declaration of Christopher Young, at Ex. 4, Bayer Corp. website, "Contact Us" page screenshots, *available at* https://www.bayer.com/en/us/contact-us.

. . Through our products, we contribute to the health of people and plants. Explore some of the many solutions we offer."[10] It then lists both Roundup Herbicide and Roundup Ready 2 seeds among those products.[11] As on the "Contact Us" page, at the bottom of the "Bayer U.S. Products" page, it instructs those with "queries or comments" to contact "Bayer Corporation" at Bayer Corp.'s Whippany, NJ, headquarters.[12]

Nowhere on the above-referenced webpages does Bayer Corp. indicate that it lists these facilities and products on behalf of any subsidiary or agent, such as Monsanto. Instead, it holds the facilities and products out to the public as though they are entirely its own, which raises a factual dispute between Plaintiffs' allegations and supporting documentation submitted concurrently herewith and Bayer Corp.'s declaration. This dispute must be resolved in Plaintiffs' favor at this stage. *See Gillespie*, 183 F. Supp. 3d at 100-01. Yet, even if Bayer Corp. publicly paints a picture that is in fact false in this regard for whatever reason, it cannot now avoid liabilities by falling back on the corporate separateness and formalities that it has publicly obfuscated. To the contrary, agency relationships "may be relevant to the exercise of specific jurisdiction," and a "corporation can purposely avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Baumann*, 571 U.S. 117, 135 n.13 (2014); *see also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (explaining that imputing contacts to principal from agent comports with due process). This occurs where the agent "act[s] on the principal's behalf and subject to the principal's control" in the forum. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017). Bayer Corp.'s website indicates that it controls its facilities in California and Roundup—which it holds out as one of its "innovative products" or the "solutions [it] offer[s]"—more generally; to the extent those are Monsanto's facilities and

---

[10] *See* Exhibit A, Declaration of Christopher Young, at Ex. 5, Bayer Corp. website, "Bayer U.S. Products" page screenshots, *available at* https://www.bayer.com/en/us/united-states-products.
[11] *Id.*
[12] *Id.*

products, it seems likely that an agency relationship exists with respect to Monsanto's operations, which would support imputation of Monsanto's contacts with the forum to Bayer Corp.

A "direction" analysis likewise shows Plaintiffs' allegations satisfy the first prong of the due process analysis. Where a plaintiff's claims sound in tort, as Plaintiffs' claims do in part, the Ninth Circuit "typically inquire[s] whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *CollegeSource, Inc.*, 653 F.3d at 1077 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme,* 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). "The 'effects' test, which derives from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), requires that 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (cleaned up). This test applies, for example, where a defendant "distribut[es] in the forum state [its] goods originating elsewhere." *Lions Gate Entm't Inc.*, 170 F. Supp. 3d at 1260.

Here, Plaintiffs allege that Bayer Corp. marketed and sold, individually and via Monsanto as Monsanto's parent, Roundup products in California and/or with the knowledge that they would be used in California. Plaintiffs further allege that in doing so Bayer Corp. represented, individually and via Monsanto as Monsanto's parent, that those products are safe and noncarcinogenic despite knowing such statements to be untrue or failing sufficiently to consider their veracity. Plaintiffs therefore allege that Bayer Corp. committed "intentional act[s]" involving negligent misrepresentation, certain statutory violations, and fraudulent concealment. ¶¶ 12, 23.

Plaintiffs' allegations also show that Bayer Corp. expressly aimed its conduct toward California. The "express aiming" requirement is not satisfied by a plaintiff's presence in the forum alone; rather, "something more—conduct directly targeting the forum—is required to confer personal jurisdiction."

*Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) (internal quotation marks and citation omitted). A defendant's "significant focus" on the forum state in its marketing, sales, and operations satisfies this additional requirement. *See id.* (concluding that Australian beauty company defendant's advertising campaign made to the "ATTENTION [OF] USA BABES" and with emphasis on Black Friday sales, significant volume of sales in the U.S., and contract with a U.S.-based fulfilment center constituted a "significant focus" on the U.S. market constituting "something more"). Plaintiffs allege marketing activity in California, "substantial revenue" earned in California from goods and products sold there, as well as business operations in California. ¶¶ 12, 23. Though Bayer Corp.'s self-serving declaration contradicts those allegations, as stated above, Bayer Corp.'s public statements and publicly available information show that it does business in California, "focuses" on California by taking pains to comply with California disclosure laws, maintains five facilities in California (the maximum number of facilities located in any single state), and so on.

Finally, Plaintiffs suffered harm that Bayer Corp. "kn[ew was] likely to be suffered in [California]." Plaintiffs allege that Bayer Corp. "expected or should have expected their acts to have consequences" in California, which is in certain ways the country's leading agricultural state, by those who used its Roundup products. That is indeed what happened here. Plaintiffs used and were exposed to Roundup products through agricultural work, and now they face an increased risk of developing Non-Hodgkins Lymphoma. ¶¶ 1-9, 14-18.

**2. Plaintiffs' claims arise from Bayer Corp.'s contacts with the forum.**

Plaintiffs' claims unquestionably "arise[] out of or relate[] to the defendant's forum-related activities." *CollegeSource, Inc.*, 653 F.3d at 1076; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do."). Plaintiffs suffered exposure to Bayer Corp.'s Roundup products and now face an increased risk of disease. That is the

...
...

foundation of their several claims. Plaintiffs allege that Bayer Corp. marketed and sold Roundup products in California and claimed they were safe despite knowing that they were not. Plaintiffs allege Bayer Corp. undertook these acts in its own right and through its subsidiary, Monsanto. ¶¶ 1, 12, 19-20, 23, 139. Such allegations alone satisfy the first two prongs of the minimum contacts test. *See Freestream Aircraft (Bermuda) Litig.*, 905 F.3d at 603. Bayer Corp. now denies those allegations, *see* Mot. at 4-5; *see also* Abrams Decl., but Plaintiffs raise factual disputes that must be resolved in their favor. Nothing more is required at this stage.

### 3. Exercising jurisdiction is reasonable here.

Because Plaintiffs have satisfied the first two prongs of the minimum contacts test, Bayer Corp. "ha[s] the burden of presenting a 'compelling case that the presence of some other considerations would render jurisdiction [in California] unreasonable.'" *Freestream Aircraft (Bermuda) Ltd.*, 905 F.3d at 607. "To evaluate reasonableness, we use a seven-factor balancing test that weighs: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.* (citing *Paccar Intern., Inc. v. Comm. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064-65 (9th Cir. 1985)).

Bayer Corp. has not met its burden. In its motion, it states only that "it is unreasonable to exercise jurisdiction over a non-operating holding company that had no involvement with the products at issue." Mot. at 6 n.4. In this regard, Bayer Corp. falls back entirely on its declaration in support of the motion. But, as Plaintiffs have demonstrated herein, a factual dispute exists regarding Bayer Corp.'s involvement with the Roundup products whether individually or via Monsanto. This factual dispute must be resolved in Plaintiffs' favor, and Bayer Corp. has failed to many any case whatsoever—much less the

"compelling" case that is required—that this Court's exercising of jurisdiction over it would be unreasonable.

### C. Deferral of Movants' motion pending jurisdictional discovery is warranted.

To the extent this Court does not deny Movants' motion outright, it should defer ruling on the motion pending jurisdictional discovery.

Plaintiffs have alleged ample facts which demonstrate "more than a hunch' here that discovery will yield jurisdictionally relevant facts." *Cohodes v. MiMedx Grp., Inc.*, No. 3:22-cv-00368, 2022 WL 15523079, at *3 (N.D. Cal. Oct. 27, 2022) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)). Though a district court has "broad discretion to grant or deny jurisdictional discovery," where it is shown that "further discovery 'might well' have established a basis for personal jurisdiction" but was denied, the "Ninth Circuit has reversed for abuse of discretion." *Gillespie*, 183 F. Supp. 3d at 1001 (quoting *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)).

Specifically, Plaintiffs should be permitted to conduct jurisdictional discovery regarding their allegations and the actions and corporate separateness of the three related defendants in this action—Bayer AG, Bayer Corp., and Monsanto—to examine the factual dispute between Plaintiffs' allegations and Bayer Corp.'s public statements on the one hand and Bayer Corp.'s self-serving declaration disavowing any California contacts or Roundup involvement on the other. *See, e.g.*, *Gillespie*, 183 F. Supp. 3d at 1001 (reasoning that jurisdictional discovery "'should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary'" (quoting *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)).

**D. Plaintiffs have sufficiently stated a claim against Bayer Corp.**

Bayer Corp. argues that Plaintiffs' claims do not pass scrutiny under Federal Rule of Civil Procedure 12(b)(6) for the reasons articulated by Monsanto in its separately filed motion to dismiss (ECF No. 21). Bayer Corp. adopts and incorporates by reference Monsanto's arguments. In response, Plaintiffs likewise adopt and incorporate herein by reference their arguments in opposition to Monsanto's motion.

**E. If this Court grants Bayer Corp.'s motion in whole or in part, Plaintiffs should be granted leave to amend.**

In the event that this Court grants in whole or in part Bayer Corp.'s motion to dismiss, Plaintiffs request that this Court grant them leave to amend to address any deficiencies identified in this Court's order. "Rule 15 advises leave to amend shall be freely given when justice so requires." *Waryck v. Thor Motor Coach Inc.*, No. 3:22-cv-1096-L-KSC, 2023 WL 7029208 (S.D. Cal. Oct. 25, 2023) (citing Fed. R. Civ. P. 15(a)(2)). "This policy is to be applied with extreme liberality." *Id.* (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)).

Here, justice would require that Plaintiffs be afforded an opportunity to amend. Plaintiffs have made no previous amendments. Their request to amend to address any deficiencies would not be for purposes of undue delay, bad faith or dilatory motive, addressing repeated failures, and would not cause Bayer Corp. undue prejudice. Lastly, because Bayer Corp. has not raised any supposed irremediable flaws, the amendment would not be futile. Plaintiffs request for leave to amend, if triggered, should be granted.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs request the Court deny Bayer Corp.'s motion. Plaintiffs alternatively request that this Court will defer ruling on Movants' motion to permit Plaintiffs to conduct jurisdictional discovery. Lastly, if this Court determines that Plaintiffs' allegations are insufficient to support personal jurisdiction, Plaintiffs request leave to amend.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request that the Court hear oral argument on this opposition to the motion.

Dated: January 12, 2024                                    Respectfully Submitted,

**JOSEPH SAVERI LAW FIRM, LLP**

By:  */s/ Christopher K. L. Young*
           Christopher K. L. Young

Joseph R. Saveri (SBN 130064)
Christopher K. L. Young (SBN 318371)
David W. Lerch (State Bar No. 229411)
Itak K. Moradi (SBN 310537)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
           cyoung@saverilawfirm.com
           dlerch@saverilawfirm.com
           imoradi@saverilawfirm.com

Robert L. Lieff (SBN 37568)
P.O. Box A
Rutherford, CA 94573
rlieff@lieff.com

*Attorneys for Plaintiffs*