**David J. Diamond, Esq.**
**DIAMOND LAW, PLLC**
**Arizona State Bar #010842**
**1700 E. River Road, #65237**
**Tucson, AZ 85718**
**(520) 909-0909**
ddiamond@diamondlawusa.com
josborne@diamondlawusa.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Master Docket Case No. 16-md-02741-VC |
| **THIS DOCUMENT RELATES TO:** | Honorable Vince Chhabria |
| **ALL CASES** | **NOTICE OF AND OPPOSITION TO PLAINTIFFS' LEADERSHIP'S PROPOSED ALLOCATION OF COMMON BENEFIT FUNDS (Doc. 17817)** |

The Court stated in its June 22, 2021, Order (Doc. 13192 at p. 27), "it's worth reiterating that ordering a holdback does not necessarily mean that more money will be distributed to lead counsel." Nonetheless, leadership counsel proposes that all funds (including any that are left over should the Court deny the 10% leadership allocated to non-time submitting counsel) be distributed to leadership. Leadership's proposed money grab is wholly unwarranted.

Despite the Court's instructions in its Order (Doc. 13192 at p. 27), leadership's request does *not* list any hours for "lawyers who performed valuable common benefit work [that] are not part of lead counsel group . . . *whose own client's recoveries is not so great*." (Italics added). Similarly, leadership has not "made a case for additional compensation despite the money they already stand to receive." That is because the facts show that leadership did not reach a global settlement, is coy about its own massive recoveries, overstates its one bellwether trial's impact on other claimants' recoveries, and left non-

**NOTICE OF AND OPPOSITION TO PLAINTIFFS' LEADERSHIP'S PROPOSED ALLOCATION OF COMMON BENEFIT FUNDS – 3:16-md-2741**

leadership claimants to fend for themselves. In general, leadership counsel argues a reality that did not exist in this litigation.

The essence of a common *benefit* fee is grounded in the notion that MDL leadership counsel and their efforts produced a strong benefit to plaintiffs represented by non-leadership counsel, and that leadership counsel were not fairly compensated. In the instant Roundup litigation, leadership was more than fairly compensated, and their efforts did not significantly benefit non-leadership claimants.

In this MDL, Diamond Law, PLLC ("Objector"), worked up its cases, including its Wave cases (Alvarez Calderon, Hernandez, & Martino), and its remanded Wave case (Chapman) with no assistance (despite requests for it) from leadership. Objector found and retained specific causation experts, conducted discovery, completed plaintiff fact sheets, drafted and responded to dispositive pleadings, took and defended depositions all over the country, briefed and argued specific state law issues on remand, etc. As the Court may recall from the minor's settlement approval pleadings filed in the Alvarez Calderon matter, (see unredacted version of attachment 3 to Alvarez's Motion to File Under Seal, Doc. 12456), Objector's costs working up the Alvarez Calderon Wave 1 case alone ran into six figures. Objector also spent significant costs retaining experts, taking depositions, etc. in his other Wave and remand cases. It was not just leadership that accepted risk and everyone else was a "free rider." Also, as the Alvarez Calderon settlement approval pleadings show, the fees, like with Objector's other clients in this MDL, were 1/3, not 40%, of the recovery.

Moreover, leadership counsel promised that its general causation experts would be available for Objector's remanded case but as trial approached, leadership could or would not make them available – or even return calls, emails or text messages.

Additionally, Objector painstakingly negotiated its own Master Settlement Agreement for well over 300 MDL claimants with no assistance or guidance from leadership counsel. Relatedly, Objector set

**NOTICE OF AND OPPOSITION TO PLAINTIFFS' LEADERSHIP'S PROPOSED
ALLOCATION OF COMMON BENEFIT FUNDS – 3:16-md-2741**

2

up a Qualified Settlement Fund, and engaged a Claims Administrator, Epiq Global, and a Special Master, Judge Glenn Norton, retired.

In contravention of their mandates and arguably quasi-fiduciary duties owed to all MDL claimants, leadership counsel hoarded key experts and materials that were necessary to bring these cases to trial. Frankly, the best resource was US Right to Know's webpage. Most significantly, leadership did not produce a global settlement for all MDL claimants. Instead, leadership counsel's clandestine settlements of their own groups of cases created substantial obstacles, not benefits, and worked to the detriment of plaintiffs represented by Objector and other individual plaintiffs' counsel. Leadership counsel surreptitiously settling their own cases for a premium and leaving non-leadership to fend for themselves added insult to injury.

With this backdrop, it is difficult to comprehend how leadership counsel boldly declares that they provided a great benefit to claimants represented by non-leadership counsel and are therefore entitled to *all* of the common benefit fees collected.

Undersigned has participated in other MDLs. In the TRT litigation, two of undersigned's clients had bellwether trials (three bellwether trials in total as one case was retried). In these other litigations, leadership have held frequent meetings to update non-leadership on the status of the issues and the litigation, and to offer assistance (e.g., Talcum Powder, & Taxotere are two current MDLs in which this is the norm). This did not occur in this litigation. Moreover, in this litigation, liaison counsel never appeared to know the status of the pending issues, and simply referred counsel to Robin Greenwald or Aimee Wagstaff, who were difficult to reach, would not speak with each other, and typically did not respond.

The Court should not reward leadership's abandonment of plaintiffs represented by non-leadership counsel. Doing so would completely undermine the spirit of the common benefit concept. Because

**NOTICE OF AND OPPOSITION TO PLAINTIFFS' LEADERSHIP'S PROPOSED ALLOCATION OF COMMON BENEFIT FUNDS – 3:16-md-2741**

leadership's actions negatively impacted non-leadership counsel and their clients by leaving them on the outside looking in, undersigned and dozens of non-leadership counsel with Wave cases began weekly Zoom meetings to confer on MDL issues impacting them, including retaining of experts, taking and defending depositions, discovery, drafting pleadings, etc. (i.e., things that were being ignored by leadership). Leadership deigned to appear at two of the dozens of these Zoom meetings.[1]

The Court stated in its Order (Doc. 13192 at p. 27), "perhaps all or most of the money will be sent back to the people who were subject to the holdback, in which case, delay would be the only real consequence." It is respectfully posited that returning most if not all of the money to non-leadership counsel is warranted in this litigation. Leadership counsel, like in their prior common benefit pleadings, overreaches in its proposed allocation. Doing what leadership counsel requests rewards leadership counsel for *not* reaching a global settlement, cutting a deal for their own clients, looking out for their own interests, and not helping other litigants.

After but one MDL bellwether trial for Ms. Wagstaff's[2] and Ms. Moore's client, leadership essentially abdicated their duties. They stopped taking MDL depositions or doing discovery,[3] didn't preserve general causation testimony as they claimed they would, settled their own cases, left non-

---

[1]   Of note, long after promising to take preservation depositions of their general causation experts, leadership still has not made good on its promise. The only preserved deposition was taken because it benefited a leadership counsel in another litigation.

[2]   It is not clear why leadership asks that a lion's share of common benefit funds go to Wagstaff Law Firm, a separate legal entity from Andrus Wagstaff, despite Wagstaff Law Firm having performed virtually no common benefit work.

[3]   The "trial package" leadership put together has proven to be completely inadequate as evidenced by the string of ten or so consecutive plaintiff losses following the Pilliod case. It's also clear it wasn't the quality of the lawyers involved as leadership also lost a trial (*Grodon v. Monsanto* in St. Louis County) utilizing the same trial package that existed in the spring of 2019. The recent two non-MDL victories owe to non-leadership work, fresh ideas, and new strategies.

**NOTICE OF AND OPPOSITION TO PLAINTIFFS' LEADERSHIP'S PROPOSED ALLOCATION OF COMMON BENEFIT FUNDS – 3:16-md-2741**

leadership counsel to fend for themselves, misrepresented that general causation experts would be available on remand, etc. Such conduct should not be rewarded.

In conclusion, Objector supports leadership recouping its outstanding costs that actually benefited the MDL (which are difficult for undersigned to determine). In all other respects, it is respectfully requested that the Court deny leadership counsel's common benefit proposal. Instead, the Court should send the balance of the money being held back to the people subject to the holdback, many of whom, like Objector, spent significant money and time, and took on risk. Objector, like other non-leadership counsel that worked up their cases and helped each other, was not a "free rider" in this MDL.[4]

Dated February 9, 2024   Respectfully Submitted,

/s/ David J. Diamond
David J. Diamond (AZ: 010842)
DIAMOND LAW, PLLC
1700 E. River Road, #65237
Tucson, AZ 85718
Tel: (520) 909-0909
Fax: (520) 527-1074
ddiamond@diamondlawusa.com

---

[4] Should the Court decide to award more than costs to leadership, it is respectfully requested that the Court award a low single digit % of non-leadership's *fee*, not a % of the clients' total settlement to be taken from counsel's fee. For example, if a case settled for $100,000 and the attorney's fee was 1/3 of the recovery ($33,333.33), 8% of the fee would be $2,666.67, but 8% of the recovery would be $8,000 (i.e., *24%* of the attorney's fee). Using a low single digit % of the attorneys' fees, not the entire settlement, would be considerably more equitable under the facts of this MDL.

**NOTICE OF AND OPPOSITION TO PLAINTIFFS' LEADERSHIP'S PROPOSED ALLOCATION OF COMMON BENEFIT FUNDS – 3:16-md-2741**

5

# CERTIFICATE OF SERVICE

I, David J. Diamond, hereby certify that on February 9, 2024, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

/s/ David J. Diamond
David J. Diamond

---

**NOTICE OF AND OPPOSITION TO PLAINTIFFS' LEADERSHIP'S PROPOSED ALLOCATION OF COMMON BENEFIT FUNDS – 3:16-md-2741**