Lori E. Andrus (SBN 205816)
lori@andrusanderson.com
Jennie Lee Anderon (SBN 203586)
jennie@andrusanderson.com
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Tel.: (415) 986-1400
Fax: (415) 986-1474

*Attorneys for Plaintiffs*
*MDL Co-Liaison Counsel*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 16-md-02741-VC |
| This document relates to all cases. | ANDRUS ANDERSON LLP'S OBJECTION TO THE FEE COMMITTEE'S PROPOSED ALLOCATION OF COMMON BENEFIT FUNDS |

In response to the Fee Committee's Proposed Allocation of Common Benefit Funds (Docket No. 17817), the law firm of Andrus Anderson LLP ("Andrus Anderson") hereby submits its response, seeking an award equal to Andrus Anderson's lodestar of *$548,953*, for 989.3 hours of common benefit work completed as of the filing of the Application of Andrus Anderson LLP for Common Benefit Funds ("Application"), submitted to the Special Master and the Fee Committee on December 4, 2023.

As Co-Liaison Counsel, Lori E. Andrus, along with her partner, Jennie Lee Anderson,

and their associates and legal staff, fulfilled the role set for them by the Court, as directed by Co-Lead Counsel.  Their work was undertaken for the common benefit of all MDL plaintiffs and their counsel.  Andrus Anderson's work took the firm's attention away from other matters, and involved the risk that the fruits of their labor would not result in a favorable outcome.  Their work continues: Ms. Andrus is still routinely called upon by plaintiffs' lawyers from around the country (twice just this week), seeking guidance on the MDL's procedures and deadlines, and on more weighty matters, as well.

Contrary to the Fee Committee's proposal, the work that Andrus Anderson's team completed over the last six years has not been limited to "administrative tasks."  In addition to tasks specific to the role of Co-Liaison Counsel, Andrus Anderson attorneys contributed to the common benefit through substantive research and writing efforts, as discussed in the firm's Application.  These assignments included research and briefing relating to the motion to dismiss, the motion to bifurcate discovery, and post-trial motions, as examples.  Mr. Leland Belew, then a Senior Associate at Andrus Anderson, took a leading role in researching and drafting the appellate argument regarding reduction in damages in *Hardeman v. Monsanto*, and other related appellate briefing assignments, again, at the request of Co-Lead Counsel. All of this work is documented in Andrus Anderson's Application and the accompanying contemporaneously maintained time records.

Moreover, Andrus Anderson's billing rates are reasonable, and are, in fact, about 20% lower than rates approved by this Court recently.  *See In re Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 3:18-MD-02843-VC, 2023 WL 8445812 (N.D. Cal., Oct. 10, 2023) (hourly rate of $1,150 for an attorney with 24 years of experience, compared to Ms.

Andrus and Ms. Anderson's hourly rate of $900; hourly rate of $695 for an attorney with 10

years of experience compared to Mr. Belew's hourly rate of $570).[1]

      Although it is true that Andrus Anderson did not contribute as much to the general

litigation costs fund as some other firms did (via cost assessments), the only time we were

asked to do so by Co-Lead Counsel, to access common benefit resources for an individual

case, we contributed the requested amount of $100,000.  Furthermore, it is not uncommon for

Liaison Counsel to be compensated from the common benefit fund without contributing to the

general litigation costs fund.  *See, e.g., In re Vioxx Products Liability Litigation*, 802

F.Supp.2d 740, 778-79 (E.D. La. 2011) (awarding Dawn Barrios, Chair of the MDL State

Liaison Committee, $1,800,000 despite the fact that Barrios, Kingsdorf & Casteix, LLP did

not contribute cost assessments).

      As this Court is aware, one factor to take into consideration is whether the applicant's

contribution prevented them from taking other matters at the risk of being uncompensated.  *See*

*Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) (adopting the

"*Johnson* factors," including the preclusion of other employment by the attorney due to

acceptance of the case, in determining value of the common benefit award).  This risk is

particularly acute for Andrus Anderson.  Andrus Anderson's approach to mass torts is not to

take on a vast number of clients, but rather to represent a small and select group of individual

---

[1] Indeed, the Special Master firm's ***blended*** rate ($910 per hour) is more than the Andrus
Anderson's partner billing rate, and nearly double Andrus Anderson's associate billing rates.  The
Court has allocated 4% of the common benefit fund (at least $809,353.49 based on current value
of the fund) to compensate the Special Master for the work undertaken to recommend distribution
of any common benefit fees.

clients whose cases the firm is prepared to take all the way to trial.  Andrus Anderson files its cases, works them up, and litigates each one vigorously.  Given this, and the fact that Andrus Anderson is a small firm, the firm properly relied on the common benefit fee system to compensate it for the time and resources it expended for the greater good in this case.

As the Court recognized in Pre-Trial Order ("PTO") No. 236: "[l]awyers who did common benefit work … did so on the expectation that they would have the opportunity to make a case for extra compensation—beyond what they stood to receive from their own clients' recoveries." *Id.*, p. 28.  However, just because a firm contributed more money to the common benefit fund from the fees it already collected in a large number of cases (either via retainer agreements or from referral fees) does not now put those firms at the front of the line to receive common benefit money back, or ahead of firms with fewer cases seeking to be compensated in the first instance for their time.  Indeed, where common benefit payments may result in a negative multiplier for applicants, this Court (and others) have requested information about the contingency fees common benefit applicants have already recovered when evaluating the fairness of common benefit allocations.  *See* Special Master's Order Setting Process to Apply for Disbursements from the Common Benefit Fund (Docket No. 17367), p. 3.  As this Court recognized, "[p]erhaps some of the lawyers who performed valuable common benefit work are not part of the lead counsel group, and perhaps the compensation they stand to receive from their own clients' recoveries is not so great."  PTO No. 236, p. 27.  Here, compensating Andrus Anderson for its lodestar will not result in a windfall, but will instead fairly compensate the firm for work it performed for the common benefit.  By contrast, if the Fee Committee's recommendation is adopted, the firm's proposed allocation would result in a ***negative***

**multiplier of .37**, essentially penalizing the firm for completing work it was expressly asked to undertake by this Court and Co-Lead Counsel.

Finally, discounting the work of liaison counsel would also disincentivize lawyers from serving in this capacity, at the expense of the judges overseeing MDL cases and litigants who rely on their assistance.

In light of the foregoing, Andrus Anderson respectfully requests an award based on our firm's lodestar.  If multipliers are awarded, we request a commensurate multiplier.[2]


Dated: February 9, 2024                    ANDRUS ANDERSON LLP

By: _____

Lori Andrus
lori@andrusanderson.com
ANDRUS ANDERSON LLP
155 Montgomery Street
Suite 900
San Francisco, CA 94104
Tel.: (415) 986-1400
Fax: (415) 986-1474

### Certificate of Service

I certify that on February 9, 2024, I caused to be served the foregoing by filing with the Court using the CM/ECF system which sent notice to counsel of record when accepted and filed.

_____
Lori Andrus

---

[2] "Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases." *See Hopkins v. Stryker Sales Corp.*, No. 11–CV–02786–LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) (citation omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir. 2002) (finding that, in approximately 83 percent of the cases surveyed by the court, the multiplier was between 1.0 and 4.0 with a "bare majority ... 54% ... in the 1.5—3.0 range").