R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@wisnerbaum.com
**WISNER BAUM, LLP**
100 Drakes Landing Rd # 160
Greenbrae, CA 94904
Telephone:  (415) 873-4775
Facsimile:  (310) 820-7444

Michael L. Baum, Esq. (SBN: 119511)
mbaum@wisnerbaum.com
**WISNER BAUM, LLP**
11111 Santa Monica Blvd, Suite 1750
Los Angeles, CA 90025
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

*Attorneys for Objectors*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| THIS DOCUMENT RELATES TO: | Hon. Vince Chhabria |
| ALL ACTIONS | **WISNER BAUM, LLP'S OBJECTION TO THE PROPOSED ALLOCATION OF COMMON BENEFIT FUNDS PREPARED BY THE FEE COMMITTEE** |

The MDL Co-Leads moved to create the common benefit fund, without the consultation of Wisner Baum, LLP ("WB")[1] or any other firm on the Executive Committee.  Following that ruling—which ultimately was affirmed when the appeal was dismissed—when the time came to appoint members to the fee committee to make recommendations to the Special Master about allocation of the Common Benefit Fund ("CBF"), the MDL Co-Leads appointed themselves, again, without any consultation with other leadership.  Those MDL Co-Leads now recommend awarding 81% of the

---

[1] Wisner Baum, LLP acquired Baum Hedlund Aristei & Goldman, PC in 2023.  The attorneys that worked on the Roundup litigation all moved to Wisner Baum, LLP.

1    common benefit fund to themselves.

2         WB's objection raises two issues.

3         First, there is a threshold question of WB's contribution to the MDL's common benefit.  The

4    MDL Co-Leads believe WB's contribution amounts to 10% of the overall common benefit.   It is not

5    disputed that WB played an instrumental role in all phases of the litigation, from understanding and

6    developing the liability stories, to preparing experts and presenting the science to the Court, to

7    working on the *Hardeman* trial *for free*—WB received no fees from *Hardeman* despite being

8    intimately involved in the work-up (WB defended the many of the Hardeman-specific depositions

9    and case-specific experts), presentation of evidence to the jury (Mr. Wisner presented numerous

10   witnesses by deposition and Mr. Baum worked, full-time, on the trial team), and the appeal (WB

11   actively worked on the appellate briefing and mooted the arguments).  The Court is familiar with

12   WB's role in this litigation and, thus, WB will defer to the Court as to whether 10% for WB's

13   substantial role over multiple years of litigation is appropriate.

14        Second, there is a question regarding WB's failure to submit contemporaneous time records

15   of work performed in the MDL and how, if at all, that impacts WB's percentage of the common

16   benefit fund.  To be clear, in WB's application, WB offered to reconstruct timesheets for all the work

17   that was done in the MDL.  That invitation, however, was not addressed by the MDL Co-Leads.

18        MDL Co-Leads concede that there is no legal prohibition on awarding common benefit fees

19   when an applicant did not submit contemporaneous hours.  Surely, it *can* serve as a basis for denying

20   compensation, but only when there is no basis for assessing the applicant's contribution to the

21   common benefit.  For example, the MDL Co-Leads cite *In re Bextra & Celebrex Mktg. Sales*

22   *Practices & Prod. Liab. Litig.*, 386 Fed. Appx. 584, 585 (9th Cir. 2010), where the Ninth Circuit

23   affirmed denial of an applicant's requested fee because of a failure to provide billing records in a

24   timely fashion.  However, that applicant could not "identify any common-benefit work product that

25   the firm produced over the course of this litigation." *Id.*  The Court has considerable discretion in

26   deciding what makes sense in light of the specific circumstances at issue.

27        This commonsense view is reflected in the Special Master's Order Setting Process to Apply

28   for Disbursements from the Common Benefit Fund, which detailed the criteria for considering a

common benefit award:

> (1) the results obtained for a particular task,
>
> (2) the difficulty of the task performed,
>
> (3) the skill required to perform the task,
>
> (4) the time, labor and financial resources involved in the task, and
>
> (5) the contribution of the task to the advancement of the litigation.

Dkt. 17367 at Sec. IV ¶ 1. And, regarding the submission and consideration of "hours" the Special Master specifically noted that "[t]he number of hours billed may be considered, but multiplying a number of hours by an hourly rate is not the best way to assess the quality of work or the value it conferred." *Id.* This, again, makes sense. Thousands of hours working on some minor issue that did little to drive the litigation forward does not hold a candle to the intense and complex substantive work related to general causation or trial—the very issues WB was so heavily involved in litigating. Indeed, WB played a critical role in the most complex and litigious aspects of the case. Examples of that work are reflected in the WB application, which is attached to this objection as **Exhibit A**.

In lieu of fully reconstructing WB's hours, WB estimated the time its attorneys spent working on issues that supported the common benefit of the MDL. WB did not include any estimates of time spent by paralegals, document reviewers, or time spent by other attorneys in consultation—of which, all the firm's leadership actively advised. Instead, WB gave "general[] estimates off the number of hours each worked on MDL-related activities." WB Application at 2. A summary of those estimate hours is presented below:

| Attorney | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | Total |
|----------|------|------|------|------|------|------|------|-------|
| Michael Baum | 1,200 | 2,000 | 1,600 | 1800 | 800 | 250 | 5 | 7,675 |
| R. Brent Wisner | 1,750 | 2,400 | 2,500 | 2,500 | 1,450 | 250 | 175 | 11,100 |
| Pedram Esfandiary | 350 | 2,200 | 2,000 | 2,000 | 2,000 | 550 | 350 | 9,450 |
| Bijan Esfandiari | -- | 50 | -- | 300 | 50 | -- | -- | 400 |
| | | | | | | | | 28,625 |

In total, WB estimates approximately 28,625 attorney-hours spent on MDL litigation—a reflection of the fact that WB was involved with, if not leading, nearly *every* major issue the MDL court adjudicated prior to the settlements in late 2020. Indeed, during these years, WB was working

at breakneck pace on all facets of the litigation[2]—from discovery, to science, to liability, and traveling around the country (and internationally) taking and defending multi-day depositions. Moreover, Mr. Wisner was originally supposed to try the *Hardeman* case with Ms. Wagstaff, and his firm was intimately involved in the pretrial work-up of *Hardeman* between October 2018 and February, including participating and defending numerous case-specific depositions and experts, and briefing general causation.  When Mr. Wisner realized the *Hardeman* trial conflicted with the *Pilliod* trial in state court, Mr. Wisner continued to aid the *Hardeman* case, drafting and/or editing all motions *in limine* and pretrial briefing (including bifurcation), preparing experts, including the taking of a three-day trial deposition of Dr. Portier in Australia at the last minute, even though Mr. Wisner was on the eve of trial in *Pilliod*.  Indeed, beyond Mr. Wisner, Mr. Baum worked full-time, night and day, on the Hardeman trial team, providing support on anything that was needed.  This was all done without *any* compensation from *Hardeman*—it is just a reflection of WB's commitment to promoting the MDL's common benefit.

To be sure, these estimates of MDL-related work are not *exact*—but they are in-line with what is seen and/or expected of attorney billable hours at major defense firms, where (at least during the period of 2016-2019), attorneys were often expected to bill in excess of 2,700 hours.  Moreover, these rough estimates are consistent with the hours submitted by the Co-Leads, as noted in their recommendation and review of their submitted hours.  And, they are consistent with the intensity with which WB litigated these cases.

The MDL Co-Leads attack these general estimates.   Specifically, they claim that Mr. Wisner's estimated 2,500 hours in 2018 and 2019 are "dubious" because "[t]o reach 2,500 MDL-related hours, he would have had to work approximately twelve hours a day, five days a week, for fifty weeks of the year on MDL work alone" and, during those two years, Mr. Wisner tried two cases in state court.  MDL Recommendation at 9.  This argument, however, is disingenuous.  Mr. Wisner worked nearly every weekend in 2018 and 2019 as a young partner at what was then-called Baum Hedlund Aristei & Goldman, PC.  Mr.  Wisner was easily working, on average, in excess of 14 hours every day.  Indeed, frequently, Mr. Wisner would work into the early hours of the night (often all

---

[2] This is not to suggest that the MDL Co-Leads were not also working at a breakneck pace.

WISNER BAUM'S OBJECTION TO PROPOSED ALLOCATION OF COMMON BENEFIT
FUNDS; 16-MD-02741-VC

night) on important projects and issues in the litigation.  Assuming 320 workdays (45 days off), that would be 4,480 total hours of work throughout the year.  The MDL Co-Leads complain that Mr. Wisner tried two cases during that period; but those trials were six weeks.  Assuming one carves out 120 days of work (four months) to account for the time that was trial-specific[3], that still leaves 200 work days—amounting to 2,800 hours of work, of which Mr. Wisner estimates 90% was MDL or *Hardeman* related.  And, this makes sense.  Nearly all the work Mr. Wisner was doing in the California JCCP was also being done on behalf of the MDL because Monsanto insisted on discovery occurring in unison between the California JCCP and MDL.  Indeed, the California JCCP judge even sat in and participated in the MDL Daubert hearings.  And, Mr. Wisner (with Mr. Esfandiary) was tasked with running that coordinated discovery and litigation.[4]

That said, assuming *arguendo*, that 50% of WB's estimated hours are wrong, and that WB's attorneys only performed 14,312.5 hours of work in furtherance of the MDL, that would still be *more* "hours" than two of the Co-Leads (Miller Firm: 10,795.85 hours; Weitz & Luxembourg: 11,224.60 hours), who each decided they should get over twice as much of the CBF.

WB does not understand or appreciate how the MDL Co-Leads decided, without consultation, to divvy up the CBF—nor does WB understand how its contribution could be so easily discounted in light of WB's role in making this MDL a success.  WB respectfully requests that this Court

---

[3] The notion that the work in the state court trials was unrelated to the MDL is specious.  The MDL Co-Leads used the state trial's demonstratives, jury work-up and consultant, exhibit list, deposition designations, motions *in limine* drafts and oppositions, and even some PowerPoint slides.  Indeed, the MDL Co-Leads have even submitted "time" spent observing the state court trials as part of their MDL common benefit submissions.  That said, recognizing this Court's ruling about the scope of the MDL's common benefit order, WB has removed four months of work from consideration to account for the time that was clearly limited to the state court proceeding and *not* the MDL.

[4] During the first trial in *Johnson*, it became clear that the early liability depositions of Monsanto—taken by MDL leadership—failed to lay foundation for the admissibility of key documents.  WB fixed this issue for the MDL by retaking numerous depositions of Monsanto's employees—a project that was done, almost exclusively by WB's attorneys (and by an attorney at Weitz & Luxembourg)—so those documents and video testimony were available in the *Hardeman* trial and other MDL cases.

WISNER BAUM'S OBJECTION TO PROPOSED ALLOCATION OF COMMON BENEFIT FUNDS; 16-MD-02741-VC

1    reconsider the MDL Co-Leads recommendation as it relates to WB.[5]

2

3    Dated:  January 25, 2021          **WISNER BAUM LLP**

4                                      */s/ R. Brent Wisner*
                                       R. Brent Wisner, Esq.
5                                      rbwisner@wisnerbaum.com
                                       100 Drakes Landing Rd # 160
6                                      Greenbrae, CA 94904
                                       Telephone:  (415) 873-4775
7                                      Facsimile:  (310) 820-7444

8

9                                      *Counsel for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     _____

     [5] As stated in WB's original application, WB has no objection to simply returning all money in the
     CBF to the law firms that contributed to it.  Should money be distributed from the CBF, however,
     WB maintains that the current allocation is not appropriate.

---

WISNER BAUM'S OBJECTION TO PROPOSED ALLOCATION OF COMMON BENEFIT
FUNDS; 16-MD-02741-VC

**CERTIFICATE OF SERVICE**

I, R. Brent Wisner hereby certify that, on February 9, 2024, I electronically filed **WISNER BAUM, LLP'S OBJECTION TO THE PROPOSED ALLOCATION OF COMMON BENEFIT FUNDS PREPARED BY THE FEE COMMITTEE** with the Clerk for the United States District Court for the Northern District of California using CM/ECF system, which shall send electronic notification to counsel of record.

*/s/ R. Brent Wisner*
R. Brent Wisner, Esq.

# EXHIBIT A



December 5, 2023

***VIA ELECTRONIC MAIL***

RoundupCBSubmission@AndrusWagstaff.com

Robin Greenwald
Weitz & Luxenberg, PC
700 Broadway
New York, NY 10003
Tel: 212-558-5500
Fax: 212-344-5461

Aimee Wagstaff
Wagstaff Law Firm
940 Lincoln Street
Denver, CO 80203
Tel: 303-376-6360
Fax: 888-875-2889

David J. Dickens
The Miller Firm, LLC
108 Railroad Avenue
Orange, VA 22960
Tel: 540-672-4224
Fax: 540-672-3055

Re:     *Common Benefit Fee Application - Wisner Baum, LLP*

Dear Fee Committee:

  I write on behalf of a Wisner Baum, LLP ("WB") formerly Baum, Hedlund, Aristei & Goldman, PC for its fair share of the common benefit fees collected in settlements within the *In re: Roundup Products Liability Litigation*, 16-md-02741-VC (N.D. Cal.), ("MDL").

  As you know, WB's attorneys have been in this fight from the beginning, having helped form, shape, fund, litigate, and try this case alongside the MDL co-leads.  It has been a tremendous team effort; one that has seen all our lives and the lives of our clients forever changed.  Now that it has come time to distribute common benefit, WB submits this application in hopes that it receives its fair and equal share—compensation

11111 Santa Monica Boulevard, Suite 1750, Los Angeles, CA  90025

100 Drakes Landing Rd, Bldg. 100B, Suite 160, Greenbrae, CA 94904  |  2101 L Street, N.W., Suite 300, Washington, D.C. 20037

(310) 207-3233  |  wisnerbaum.com  |  (202) 466-0513



that is commensurate with the substantial contribution WB has made to the common benefit of litigants in this MDL.

## Scope of Work—Timekeeping

WB did not contemporaneously submit hours for common benefit work pursuant to PTO 12.  WB was so focused on pushing the litigation forward—putting the economic future and solvency of WB on the line—that WB did not properly submit timesheets pursuant to PTO 12.  However, considering the scope and quality of work that WB contributed to the common benefit of the MDL—a point that cannot be reasonably disputed—this should qualify as one of the "extraordinary circumstances" where strict compliance with PTO 12's timekeeping requirements, as mentioned in the SPECIAL MASTER'S ORDER SETTING PROCESS TO APPLY FOR DISBURSEMENTS FROM THE COMMON BENEFIT FUND (Dkt. 17367), should not prevent WB's participation in a fair distribution of common benefit fees collected in the MDL.  Indeed, during the course of the litigation, Plaintiffs' leadership has routinely acknowledged that timekeeping would be secondary to recognizing the substantial contribution of each firm in aiding the common interest.

If the Committee or the Special Master requires a full accounting of time, WB requests leave to reconstruct that time and submit timesheets consistent with PTO 12 out of time.  WB would request 14 days to research, reconstruct, and submit a complete accounting of time.

Please note that WB has not submitted a declaration in conjunction with this application as it is not submitting time billing.  However, undersigned counsel attests that the information contained in this letter is, to the best of my knowledge, truthful and accurate, and can provide a declaration if such a document is required or is helpful.

WB began working on the Roundup litigation in early 2016, filing one of the first cases that would become part of the MDL in March 2016.  This was before the first group meeting of the law firms at Andrus Wagstaff's office in Denver, where the genesis of the MDL occurred.  Since that filing, WB worked tirelessly to advance the common interests of the MDL through September 2021.

The following chart, for attorneys from WB that worked on the MDL, generally estimates the number of hours each worked on MDL-related activities.

| Attorney | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | Total |
|---|---|---|---|---|---|---|---|---|
| Michael Baum | 1200 | 2000 | 1600 | 1800 | 800 | 250 | 5 | 7675 |
| R. Brent Wisner | 1750 | 2400 | 2500 | 2500 | 1450 | 250 | 175 | 11100 |
| Pedram Esfandiary | 350 | 2200 | 2000 | 2000 | 2000 | 550 | 350 | 9450 |
| Bijan Esfandiari | -- | 50 | -- | 300 | 50 | -- | -- | 400 |



Page 3

These estimates include only the time spent on MDL-related work.  As the committee and the Special Master are aware, Mr. Wisner was co-lead trial counsel in the first and third Roundup cases, which both took place in state court and resulted in substantial verdicts ($289 million and $2.05 billion respectively) that put pressure on Monsanto to settle.  However, for the first trial, WB was not involved until three weeks before the trial commenced and, for the third trial, the case-specific work was not substantial.  Moreover, the lion share of the state appellate work was conducted by the Miller firm, so for WB, the vast majority of the time spent on "state court" cases was co-extensive its MDL work.  For example, when WB negotiated search terms with Monsanto and collected and reviewed documents, they were done in both the state and federal cases.  Depositions were noticed in both cases as a matter of course.  All liability and causation work—which constituted the vast majority of the common benefit work—was equally applicable to state and federal court.

*Venn Diagram of Overlapping Federal – State Court Litigaiton Work*



In addition to the time spent by attorneys at WB, there were also numerous paralegals and technical assistants that spent considerable time reviewing, organizing, and coding documents in the community database.  For example, Leemon McHenry, a College Professor, helped review and organizing thousands of documents used in deposition. At least seven different paralegals, at various points in time, worked on MDL-related activities.  WB also helped spearhead the technical requirements for the MDL.  Brian Beam, WB's full-time trial technician, oversaw and set up all the *Daubert* proceedings in the MDL.

All told, there is little doubt that WB, over the course of many years, provided substantial work in furtherance of the MDL common benefit.   And, although time was not fully kept pursuant to PTO 12, that should not preclude WB from receiving its fair share of any common benefit for the substantial work WB undisputedly provided to the MDL.

## Qualitative Contributions

WB's attorneys provided the following qualitative contributions to the MDL:

1. Moved the Judicial Pannel on Multidistrict Litigation to form a Roundup MDL and orally argued for its formation;
2. WB was appointed to the Executive Committee;

3. WB made all requested financial contributions to the MDL to help support and fund the litigation effort;
4. Significantly aided in briefing and preparation of oral argument related to:
    a. Preemption (multiple motions and several cases in other federal courts before MDL formed);
    b. Bifurcation of discovery;
    c. Discovery motions and disputes related to:
        i. Requests for production;
        ii. Interrogatories;
        iii. Monsanto witnesses for deposition;
        iv. Requests for admission;
        v. Designation of confidentiality of documents;
        vi. Privilege disputes;
    d. Implementation of various court orders related to bellwether selection, trial, and individual plaintiff-specific discovery;
    e. Implementation of the trial wave programs;
    f. *Daubert* on general causation (defensive and offensive);
    g. *Daubert* on specific causation;
    h. Motions *in limine* (drafted and argued over 10 motions related to *Hardeman*);
    i. Motions related to jury instructions (*Hardeman*);
    j. Motions for new trial (*Hardeman*);
    k. Appeal before Ninth Circuit (*Hardeman*);
5. Helped prepare for science day including preparing and rehearsing experts' presentations;
6. Helped negotiate pretrial orders related to discovery (confidentiality order, privilege order, electronically stored information (ESI) order, bifurcation order, etc.);
7. Helped negotiate search terms and document review protocols for multiple series of document requests;
8. Actively participated in the review and collection of important documents produced in discovery;
9. Functioned as state court liaison with California coordinated proceeding, leading the participation of California state court judge's participation in Dauber hearings;
10. Took the following depositions of Monsanto in the MDL:
    a. Farmer, Donna, 9/26/2018
    b. Farmer, Donn, 9/27/2018
    c. Farmer, Donna, 1/24/2019
    d. Kier, Larry, 2/5/2019
    e. Sachs, Eric, 9/18/2018
    f. Sachs, Eric, 1/22/2019

**WISNER**
**WB BAUM**
CLIENT FOCUSED. TRIAL READY. BILLIONS WON.

Page 5

    g.  Goldstein, Daniel, 11/16/2017
    h.  Goldstein, Daniel, 11/17/2017
    i.  Grant, Hugh, 2/4/2019
    j.  Koch, Michael, 1/11/2019
    k.  Manchester, Doreen, 2/8/2019
    l.  McClellan, Roger, 2/6/2019
    m.  Murphey, Samuel, 1/22/2019
    n.  Rands, Todd, 2/12/2019
    o.  Reeves, William, 1/23/2019
    p.  Reeves, William, 1/24/2019

11. Helped prepare for the depositions of many other Monsanto witnesses and participated in them as support;

12. Prepared and defended numerous expert witnesses for Plaintiff's general causation case (including presenting Dr. Portier as a trial witness in the *Hardeman* trial from Australia);

13. Helped form deposition strategies for treating doctor depositions;

14. Took and defended numerous third-party depositions in the MDL;

15. Helped prepare nearly every expert witness for *Daubert* hearing and deposition;

16. Helped develop and coordinate multiple litigation strategies in conjunction with leadership;

17. M. Baum and R. Wisner were actively involved in the *Hardeman* trial team (Mr. Baum was with the trial team, in the trenches, for the entire duration of *Hardeman* trial);

18. Actively participated and argued and numerous CMCs and other MDL-process-related hearings;

19. Actively participated in MDL-ordered settlement discussions with Special Master Feinberg and MDL leadership;

20. Actively participated and developed settlement program and allocation grid that has been used by numerous settling law firms;

21. Helped negotiate medical lien reductions for Roundup litigants with various group healthcare plans, including Medicare, in conjunction with Archer Systems, and helped work out agreements that have been extended to all other Roundup settling plaintiffs, including those in the MDL;

22. Have actively worked with ongoing litigants to access, use, and understand important documents and scientific issues;

23. Reviewed, edited, and advised on all expert reports generated in MDL for general causation and liability;

24. Located and developed numerous experts used for general causation and liability.



25. Applied the declassification process to thousands of pages of documents Monsanto designated as confidential, including multiple lengthy meet and confers with Monsanto counsel.

26. Created a searchable website and online database with all trial exhibits, transcripts, deposition transcripts played in Court, expert reports, briefing (with exhibits), Court rulings, PowerPoint presentations and trial demonstratives for the first three Roundup trials, including the federal bellwether case, available for anyone to access and use.

It is undisputed that WB was involved in all aspects of the MDL, from its inception through trial and appeal. The above is a snapshot of the substantial work that WB attorneys have undertaken, for years, in pursuit of the MDL's common benefit.

**Compensation From Prior Settlements**

WB acknowledges that it has received fees from settlements related to its clients' cases. Indeed, the same could be said for all members of the MDL leadership that have, themselves, settled substantial dockets. However, there is little doubt that WB's significant contributions to the success of this litigation has helped those that did not actively participate in the MDL push this litigation forward and has led to settlements in this MDL. To the extent that money is distributed based on common benefit in this MDL, WB deserves its fair share.

**Fee Request**

WB requests that 20% of the common benefit fund be allocated to WB for its substantial contribution to the results that benefited all MDL cases.

Sincerely,

R. Brent Wisner
WISNER BAUM LLP
rbwisner@wisnerbaum.com

CC: William A. Foster, Special Master, cbfspecialmaster@pillsburycoleman.com