UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>ALL ACTIONS | Hon. Vince Chhabria |

**FEE COMMITTEE'S REPLY TO DIAMOND LAW, PLLC'S OPPOSITION TO THE PROPOSED ALLOCATION OF COMMON BENEFIT FUNDS**

Diamond Law, PLLC ("Diamond Law) opposes the Fee Committee's proposed recommendation for the distribution of common benefit funds and, instead, submits that the held back fees should be returned to each contributing firm.[1] In support of its opposition, Diamond Law levies broad, sweeping allegations against MDL Leadership in support of its argument that non-leadership claimants were "abandoned" and Leadership provided "no assistance" to Diamond Law in the representation of its individual clients. None of these allegations stand up to scrutiny. If anything, Diamond Law's role in the MDL serves as a case study for why a common benefit distribution is appropriate.

**1. Diamond Law Directly Benefitted from the Work of Common Benefit Counsel**

Diamond Law claims that a common benefit distribution is not appropriate because it "worked up its cases, including its Wave cases (Alvarez Calderon, Hernandez & Martino), and its remanded Wave case (Chapman) **with no assistance (despite requests from it) from leadership**." Diamond Law's Opposition [ECF No. 17895] at 2. But Diamond Law did receive assistance from

---

[1] Diamond Law does support leadership recouping any outstanding costs that actually benefited the MDL. *See* Diamond Law's Notice of Opposition at page 5.

1

FEE COMMITTEE'S REPLY TO DIAMOND LAW'S OPPOSITION

leadership as evidenced by a review of the record itself. Diamond Law, like other MDL cases, relied almost exclusively on MDL Leadership for general litigation matters. For Diamond Law's Wave cases, this included, but was not limited to, the following:

1. Diamond Law did not request access to Monsanto's document production and did not search the document repository prior to the settlement of its 300 MDL claimants, instead relying on the trial exhibits identified by MDL Leadership;

2. Diamond Law did not take a single liability deposition of a current or former Monsanto employee (or request that Leadership do so) instead electing to rely on the depositions taken by MDL Leadership;

3. On September 13, 2019, MDL Leadership provided Diamond Law a copy of all MDL general causation expert reports and various case-specific expert reports that could be shared with Diamond Law's case-specific experts;

4. MDL Leadership filed general expert disclosures for all Wave 1 cases on October 4, 2019 including Alvarez Calderon. [Dkt. 6350]. On June 29, 2021, Diamond Law disclosed its case-specific experts in the *Chapman* case and incorporated the general causation opinions and expert reports served by lead counsel in connection with Waves 1, 2, and 3 [Dkt. 13228];

5. MDL Leadership deposed Monsanto's general expert witnesses for the Wave 1 cases;

6. MDL Leadership drafted oppositions to Monsanto's motions for summary judgment and Daubert motions and filed these on behalf of all Wave 1 cases on December 10, 2019, including Alvarez Calderon [Dkt. No. 8328, 8345]. This briefing was incorporated for all Wave 3 cases on October 1, 2021 [Dkt. No. 13885, 13886];

7. Diamond Law retained case-specific expert witnesses initially retained and worked up by Leadership counsel, including Dr. Sawyer and Dr. Schiff;

8. On August 22, 2022, Diamond Law reached out to MDL Leadership relating to a motion for summary judgment filed in a remanded Wave case (Chapman) and seeking assistance in answering specific questions posed by the court. MDL Leadership provided a substantive response the following day and provided Diamond Law access to two appellate briefs filed in a state court matter that directly addressed the issue.

Undoubtedly, Diamond Law retained *case-specific* experts, conducted *case-specific* discovery (including plaintiff fact sheets), responded to *case-specific* motions, and took and defended

*case-specific* depositions around the country.² The same will be true of all counsel with cases in the discovery waves. But the common benefit awards recommended by the Fee Committee are aimed at compensating counsel for services that benefited *all plaintiffs* in the MDL, including Diamond Law and their clients. For all the time and money that Diamond Law spent litigating their Alvarez Calderon Wave 1 case, those numbers would be exponentially higher if Diamond Law were required to also retain *general* experts, maintain a document database for millions of pages of Monsanto documents (and conduct a review of them), conduct *general* liability discovery, respond to *general* motions, and take and defend *general* depositions around the country.³

Diamond Law was able to resolve 300 MDL cases without having to draft and issue general discovery, brief and argue preemption and other general dispositive motions, depose a single Monsanto employee, or retain general experts in epidemiology, toxicology, pathology, and regulatory affairs.⁴ With this backdrop, it is difficult to comprehend how Diamond Law can boldly declare that it received no assistance from MDL Leadership.

2. **Common Benefit Counsel are Entitled to Compensation Even Though There Was Not a Global Settlement**

Diamond Law's "most significant[]" complaint is that "leadership did not produce a global settlement for all MDL claimants." Dkt. No. 17895; Diamond Law's Objection at 3. Courts, however,

---

²The Fee Committee never claimed that all non-leadership counsel were "free riders." There are many law firms that are willing to litigate and bring their cases to trial. But these questions are not relevant to whether a common benefit payment or distribution is relevant. Further, if those firms undertook general discovery for the benefit of all plaintiffs in this MDL, those firms were able to submit that time for consideration.
³ Diamond Law cites to the fact that its costs in Alvarez Calderon "ran into six figures." By comparison, counsel in *Hardeman* submitted costs totaling $541,031.48 [Hardeman v. Monsanto Company, Case No. 3:16-cv-00525; ECF 307-1] which was still significantly less than the $834,247.14 in submitted costs for the first Roundup trial. Hardeman, 3:16-cv-00525; Monsanto's Objection to Hardeman's Bill of Costs, ECF No. 315 at 12. Although the compensable costs that Monsanto was ultimately required to pay in these cases was significantly lower, the submitted total costs are still relevant to put Diamond Law's arguments into perspective.
⁴ To put it in perspective, Monsanto did not even offer settlement money to Mr. Hardeman after he won the first phase of his trial.

3

FEE COMMITTEE'S REPLY TO DIAMOND LAW'S OPPOSITION

routinely enforce common benefit fee awards in MDLs that do not reach global settlements or "that involve plaintiffs who settled before the global settlement was reached." *In re Cook Medical, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 365 F.Supp.3d 685, 703 (S.D.W.V. 2019). And for good reason. It would be entirely unjust to base the decision on whether to disburse common benefit funds entirely on what settlement strategy the defendants choose to implement.

In an apparent attempt to sidestep well-established precedent allowing common benefit fees despite no global settlement, Diamond Law suggests that MDL Leadership acted nefariously in settling their own MDL cases while refusing to include other MDL cases. Dkt No. 17895; Diamond Law's Objection at 3 (referring to "clandestine settlements" and leadership counsel "surreptitiously settling their own cases."). The truth, however, is that MDL Leadership *did* advocate for a global settlement, but it was Monsanto that insisted on a settlement structure of individual firm client dockets..[5] Dkt. 11784 at 18-19 (CMC Transcript 8/27/2020)(reporting to the Court that negotiations began with discussions on a structure to resolve all cases). Therefore, Special Master Feinberg worked to implement a procedure to facilitate settlement discussions for the benefit of all plaintiffs in the MDL. As Monsanto counsel reported to the Court:

> We're also aware that members of the Plaintiffs' Steering Committee have offered to help in this process, have expressed their willingness to help facilitate some of those discussions. Ms. Wagstaff has already jumped in on a couple of those discussions we're having and has been a positive force in those. And to the degree that others on this call, my colleagues, think they can be helpful, we are amenable and supportive of those efforts.

---

[5] As a practical matter, neither Lead Counsel nor any individual plaintiff's counsel can compel the defendant to negotiate 'globally' with respect to similarly-situated or all of the plaintiffs on a uniform or transparent basis or prevent a defendant from making favorable 'inventory' settlement offers to some, but not all, firms. Stephen J. Herman, *Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent,* 64 Loy. L. Rev. 1, 20 (2018); see also Lynn A. Baker & Andrew D. Bradt, Mdl Myths, 101 Tex. L. Rev. 1521, 1542 (2023)("a true global settlement of all of the claims pending in the MDL is extraordinarily rare.").

Dkt. No. 11839; CMC Transcript (9/24/20) at 6. Indeed, Mr. Diamond took advantage of the same settlement program, through Special Master Feinberg, that was available to MDL Leadership to resolve their individual cases; a program whose costs were paid for entirely by leadership counsel. Dkt. 12378; CMC transcript (12/9/2020) at 4 (Special Master Feinberg reporting that he's been in contact with David Diamond on ideas to resolve Alvarez Calderon).

The fact that MDL Leadership settled their cases is not evidence of collusion or proof that leadership abandoned non-leadership cases to look out for their own interests. It's simply an indication that defendant was only willing to enter into settlements firm by firm. *See* Lynn A. Baker & Stephen J. Herman, *Layers of Lawyers: Parsing the Complexities of Claimant Representation in Mass Tort MDLs,* 24 Lewis & Clark L. Rev. 469, 489 (2020)("the fact that the defendant settled the leadership attorney's cases via an inventory settlement may well mean that the defendant will be undertaking only inventory settlements").

## CONCLUSION

Diamond Law received millions of dollars in legal fees from the settlement of their MDL plaintiffs and docket of Roundup cases. Notwithstanding its unsupported statements to the contrary, Diamond Law relied heavily on the work product of common benefit counsel. It is highly unlikely that Diamond Law would have been able to resolve its Roundup cases if it were not for the work and success of common benefit counsel. Diamond Law has failed to offer compelling reasons why common benefit counsel should be precluded from recovering common benefit fees in this case.

Date: February 16, 2024                                       Respectfully submitted,

/s/ Robin Greenwald
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg, PC
700 Broadway

|   |   |
|---|---|
| 1 | New York, NY 10003 |
| 2 | /s/ Aimee Wagstaff |
| 3 | Aimee Wagstaff |
|   | awagstaff@wagstafflawfirm.com |
| 4 | Wagstaff Law Firm |
|   | 940 Lincoln Street |
| 5 | Denver, CO 80203 |
| 6 | /s/ David Dickens |
| 7 | David Dickens |
|   | ddickens@millerfirmllc.com |
| 8 | The Miller Firm LLC |
|   | 108 Railroad Ave |
| 9 | Orange, VA 22960 |
| 10 | *Co-Lead Counsel and Roundup Common* |
| 11 | *Benefit Fee Committee* |

FEE COMMITTEE'S REPLY TO DIAMOND LAW'S OPPOSITION

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of February 2024, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Aimee Wagstaff