**ROSSETTI & DEVOTO, P.C.**
LOUIS J. DEVOTO – NJ ATTORNEY ID – 015891993
ldevoto@rossettidevoto.com
20 Brace Road, Suite 115
Cherry Hill, NJ 08034
(856) 354-0900
Attorney for Plaintiffs Michael J. Caccia and Holly Caccia, h/w

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 <br> Case No.: 3:16-md-02741-VC |
| This document relates to: <br><br> *Michael J. Caccia and Holly Caccia v. Monsanto Co.,* <br> Case No. 3:20-cv-01915-VC | **PLAINTIFFS MICHAEL J. CACCIA AND HOLLY CACCIA'S SUR-REPLY TO DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF DR. MARC BRAUNSTEIN** <br><br> Hearing: <br> Date: March 1, 2024 • Time: 10:00a.m. <br> Place: San Francisco Courthouse <br> Courtroom 4 – 17th Floor |

I.   **ARGUMENT**

A.   **Dr. Braunstein Properly Ruled-In Roundup As A Cause of Plaintiff's NHL Based On Mr. Caccia's Significant And Longstanding Exposure**

After Plaintiffs filed their Response in Opposition to this Motion, Monsanto Company raised the issue of "exposure days" in its reply brief. In doing so, defendant Monsanto Company misrepresents the Court's ruling in PTO 85 and then uses that as a basis to argue that Dr. Braunstein failed to reliably "rule-in" Roundup as a cause of Mr. Caccia's NHL, despite his 133 exposure days. PTO 85 clearly indicates that Roundup exposure sufficient to cause cancer is a general causation question established through general causation experts upon whom specific causation experts, like Dr. Braunstein, may rely upon as a basis in forming their opinions. This is the case regardless of whether Dr. Braunstein reviewed and relied upon epidemiological studies in forming his own opinions.

Specifically, the Court in PTO 85 addressed this identical argument on exposure days made by defendant Monsanto Company:

> And here, the Court already determined that the plaintiffs offered admissible expert opinions that glyphosate is capable of causing NHL. **Thus, Monsanto's primary criticism of the ruling-in process – namely, that the specific causation experts improperly ruled in glyphosate exposure by cherry-picking favorable epidemiological studies – is off point. As this Court has previously ruled, the specific causation experts are permitted to build from the plaintiffs' admissible general causation opinions. And the admissible general causation opinions grappled with the full body of evidence. Thus, it does not matter that the specific causation experts mentioned only a subset of the epidemiological studies in their reports; at trial, their basis for ruling in glyphosate will be the general causation opinions**. This result is the byproduct of the decision to bifurcate pretrial proceedings between general and specific causation – a decision that Monsanto urged. . .
>
> **The specific causation experts cite De Roos as well, but, again, the important point is that these experts will not be repeating the analysis of the general causation experts, but rather relying on them to rule in glyphosate**. . .

It is sufficient for a qualified expert, in reliance on his clinical experience, review of a plaintiffs' medical records, and evaluation of the general causation evidence, to conclude that an "obvious and known risk factor[]" is the cause of that plaintiff's disease. See *Wendell*, 858 F.3d at 1235. Here, the specific causation experts did that. **Relying on the plaintiffs' admissible general causation opinions – which assert a robust connection between glyphosate and NHL – the experts concluded that glyphosate was a substantial factor in causing the plaintiffs' NHL.**

**Moreover, the experts relied heavily on the plaintiffs' exposure levels in drawing their conclusions. All three experts noted the plaintiffs' extensive Roundup usage, and further explained – as did the plaintiffs' general causation opinions – that both the McDuffie (2001) and Eriksson (2008) studies showed a dose-response relationship between glyphosate and NHL.** See *generally In re Roundup Products Liability Litigation*, 2018 WL 3368534, at *9-10. **Thus, consistent with Ninth Circuit caselaw, the experts provided a basis for their conclusion that these plaintiffs fall into the category of Roundup users who developed NHL.**

(See Plaintiffs Caccia's Opposition at Exhibit C, PTO 85 at pages 2-6)(emphasis added).

Dr. Braunstein will indeed rely upon general causation testimony regarding whether Roundup causes NHL in giving his specific causation opinions. He cited to these general causation experts in section 4 of his report at page 3, namely, Beate Ritz, MD, PhD; Dennis Weisenburger, MD; Alfred I. Neugut, MD, PhD: Charles W. Jameson, PhD; Christopher Portier, PhD; and Chadi Nabhan, MD, and thereafter stating "Studies of GBP in cellular and animal models, as well as in epidemiologic studies, as described above and in the general causation reports listed in section 4 demonstrate that GBP such as Roundup can cause cancer, specifically with an increased risk for NHL. . ." (See Defendant Monsanto's Motion at Exhibit C, Braunstein Report at pages 3 and 14).

In addition to relying upon general causation experts, Dr. Braunstein is relying upon plaintiff's toxicology expert Dr. Sawyer to determine and calculate Mr. Caccia's Roundup exposure and whether his exposure level was of such a statistically significant level that it exceeded the level necessary to create an increased risk for NHL.

| | |
|---|---|
| Q. | Was your -- what was your methodology for arriving at your opinion in this case? |
| A. | I used the records provided, the history, the reports of his exposure to Roundup, <u>and, ultimately, the toxicology report, you know, confirmed that he had a substantial exposure</u>. And then, the kind of differential diagnosis approach to look at the other potential contributing factors and kind of weigh the evidence of potential contributing factors. And, you know, apply the Bradford Hill criteria to --- to come to a conclusion. |

(See Defendant Monsanto's Motion at Exhibit B, Braunstein Dep. at 34:7-18.)

Solidifying this point of relying upon the exposure assessment of Dr. Sawyer, Dr. Braunstein testified as follows:

| | |
|---|---|
| Q. | Okay. So to determine if Roundup was a risk factor for Mr. Caccia, you evaluated his exposure, right? |
| A. | To the extent that it was in his -- in the available materials, and, again, <u>relying on Dr. Sawer's, you know, toxicology assessment</u>. |
| Q. | What is the calculated total exposure that Mr. Caccia had to Roundup? |
| A. | Well, in Table 25 of Dr. Sawer's report, he notes that there were a total of 133 exposure days prior to his initial NHL diagnosis, and a cumulative 133 time-waited exposure days. So that – that's what I used as a metric of his exposure. |
| Q. | Do you know how that number was calculated? |
| A. | He used an exposure day calculation, but I don't know the -- all the moving parts of that calculation. Again, I relied on his – his expertise there. |

(See DeVoto Decl., Ex. B, Dr. Braunstein Dep. at 55:9-56:2.)

Dr. Sawyer was deposed and testified as to his methodology in arriving at Mr. Caccia's exposure days. (See Plaintiffs Caccia's Opposition at Exhibit D, Deposition of Dr. Sawyer at 72:9-74:25). He further testified that he could find no other exposure in Mr. Caccia's history that created any significant statistical risk of NHL except for his exposure to Roundup. (See Plaintiffs Caccia's Opposition at Exhibit D, Deposition of Dr. Sawyer at 103:7-105:5.)

3

Specifically, with respect to his exposure days and its significance, Dr. Sawyer's opinion was clear that Mr. Caccia had significant and longstanding exposure to Roundup that exceeded the levels necessary to create an NHL risk.

> Q. All right. And I guess the point I'm driving at is that you cannot make an apple-to-apples comparison of Mr. Caccia into the Andreotti study. You couldn't place him into one of the quartiles or tertiles?
>
> A. Well, I can. I know he had 133 exposure days, which is -- if you look at Andreotti, that's in the -- I believe the highest quartile. And the poor guy was half naked. So let's put him in the high-exposed exposure group.

(See Plaintiffs Caccia's Opposition at Exhibit D, Dr. Sawyer Dep. at 100:14-24.)

> Q. Is there any way that you could give an opinion to a reasonable degree of scientific certainty that but for using Roundup, Mr. Caccia would not have developed NHL?
>
> A. Yeah, certainly there is a very highly significant, statistically significant increased risk of Mr. Caccia developing NHL from his Roundup exposures. And if he had not been exposed to Roundup, his risk level would have been much less.

(See Plaintiffs Caccia's Opposition at Exhibit D, Dr. Sawyer Dep. at 105:2-5.)

Notwithstanding, Dr. Braunstein's testimony regarding exposure was not conditioned on anyone exceeding two days per year or ten lifetime days of Roundup use. While he cited to the Eriksson and McDuffie studies, he referenced those as minimum thresholds, not as a definitive causal connection, also stating that years of exposure was important. (See DeVoto Decl., Ex. B, Dr. Braunstein Dep. at 57:3-10). As he stated in his report, "Mr. Caccia's exposure to Roundup has been substantial over a longer period of time than reported in epidemiologic studies described below." (See Defendant Monsanto's Motion at Exhibit C, Braunstein Report at page 8). He further stated "studies looking at latency between exposure of 10 years or more to glysophate have shown increased likelihood of NHL." (See Defendant Monsanto's Motion at Exhibit C, Braunstein

4

Report at pages 12-13). Finally, in his conclusion he again referenced Mr. Caccia's "prolonged duration of exposure to Roundup" and his "long-standing exposure to Roundup well over a 23 year period" as significant factors in causing or contributing to Mr. Caccia's aggressive NHL. (See Defendant Monsanto's Motion at Exhibit C, Braunstein Report at page 14).

Based on the foregoing, Dr. Braunstein has properly ruled-in Roundup as a cause of Mr. Caccia's NHL. Dr. Braunstein's specific causation opinion regarding Mr. Caccia's exposure is entirely consistent with PTO 85 and is based on his reliance of general causation reports he reviewed, Dr. Sawyer's toxicology report and opinions, as well as the totality of studies and documents he reviewed.

## II. CONCLUSION

For these reasons, this Honorable Court should deny Monsanto Company's Motion to Exclude Testimony of Marc Braunstein, M.D., together with such other relief as the Court deems just and proper.

Respectfully submitted,

Date: February 20, 2024

**ROSSETTI & DEVOTO, PC**
Louis J. DeVoto, Esquire
NJ Attorney ID – 015891993
20 Brace Road, Suite 115
Cherry Hill, New Jersey 08034
Telephone: (856) 354-0900
Facsimile: (856) 354-0920
ldevoto@rossettidevoto.com
Attorneys for Plaintiffs
Michael J. Caccia and Holly Caccia, h/w