**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| *Angelo Bulone v. Monsanto Company, 3:20-cv-03719-VC* | **DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE THE TESTIMONY OF DR. LUOPING ZHANG** |
| | Hearing: |
| | To be scheduled by the Court, if necessary. (Dkt. No. 17955.) |

Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully submits this Motion to Exclude the Testimony of Dr. Luoping Zhang, Ph.D.

## INTRODUCTION AND BACKGROUND

In the more than four decades since Roundup was first introduced, regulators around the world have repeatedly assessed the safety of glyphosate, the active ingredient in Roundup, and have consistently concluded that it does not cause cancer. This long history of safety approvals continues to this day.

Nonetheless, Plaintiff asserts that Roundup can cause non-Hodgkin's lymphoma ("NHL"). Plaintiff relies on the results-driven testimony of Dr. Luoping Zhang, Ph.D[1]. Dr. Zhang is a biochemist and a professor emeritus of toxicology at the University of California, Berkeley. She has been designated "in the areas of molecular mechanisms of chemical toxicity, molecular epidemiology and biomarkers, along with her meta-analysis on glyphosate and Non-Hodgkin Lymphoma." Ex. A, Plaintiff's Disclosure of Expert Witnesses and Declaration at 5. Plaintiff indicates Dr. Zhang will testify "as to the association between cumulative exposures to glyphosate-based herbicides and an increased risk of non-Hodgkin lymphoma in humans" and "the results of her 2019 meta-analysis." Id. at 5-6.

Based on her previous testimony and Plaintiff's Disclosure of Expert Witnesses and Declaration, Dr. Zhang seeks to offer testimony based on two papers she co-authored in 2019[2] and 2020[3] regarding exposure to glyphosate-based herbicides ("GBHs") and risk of NHL, and regarding an EPA report in 2016. However, the EPA examined her 2019 Paper and found serious methodological flaws within her meta-analysis. Dr. Zhang responded to the EPA's criticism with

---

[1] As a threshold matter, Federal Rule of Civil Procedure 26(a)(2) requires parties to disclose each of their expert witnesses and to accompany those expert disclosures with a written expert report. Because Plaintiff has not complied with Rule 26 by providing Dr. Zhang's expert report, Monsanto reserves its prior arguments that the Court should preclude Dr. Zhang from testifying at trial. Dkt. Nos. 17474, 17527, 17955. *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011).
[2] *See* Ex. B, Zhang, et. al., *Exposure to glyphosate-based herbicides and risk for non-Hodgkin lymphoma: A meta-analysis and supporting evidence* (2019) (the "2019 Paper").
[3] *See* Ex. C, Zhang, et. al., *Weeding out inaccurate information on glyphosate-based herbicides and risk of non-Hodgkin lymphoma* (2020) (the "2020 Paper").

her 2020 Paper, which conceded the extremely limited understanding of development of NHL associated with glyphosate exposure. Plainly, Dr. Zhang's opinions fail to reflect the level of scientific rigor required for admissible expert testimony under federal law, and her opinions should be excluded.

Additionally, Dr. Zhang opines only that glyphosate can cause NHL, without addressing chronic lymphocytic leukemia, Mr. Bulone's sub-type of NHL. But NHL covers or contains more than sixty (60) distinct subtypes of cancer, each of which may have a different cause. Thus, Dr. Zhang's opinions do not fit the facts of the case and should be excluded under the "fit" requirement of Federal Rule 702 and the standard established in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and its progeny. If the Court finds that Dr. Zhang's testimony is admissible despite her testimony being unreliable and not meeting *Daubert*'s "fit" requirement, then her testimony should be limited to discussion of her 2019 Paper, 2020 Paper and the 2016 EPA final report because she has not disclosed any other testimony.

## LEGAL STANDARD

Fed. R. Evid. 702 reflects the standards set out in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) for the admission of expert testimony. *Id*. Accordingly, under Rule 702, an expert who is qualified "by knowledge, skill, experience, training, or education" may testify in the form of an opinion if the proponent demonstrates to the court that it is more likely than not that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principals and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.  The trial court must act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.  Expert opinion testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), as amended (Apr. 27, 2010).  "[A]n expert's scientific conclusions must be supported by 'good grounds for each step in the analysis,' meaning that 'any step that renders the analysis unreliable under the

2

Daubert factors renders the expert's testimony inadmissible.'" *Persian Gulf Inc. v. BP W. Coast Prod. LLC*, 632 F. Supp. 3d 1108, 1164–65 (S.D. Cal. 2022) (quoting In re *Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

## ARGUMENT

### I. The Court Should Exclude Dr. Zhang's Testimony Because Her Opinions are Unreliable and Do Not Meet *Daubert*'s "Fit" Requirement.

#### A. The Court Should Exclude Dr. Zhang's Testimony Because It is Based on Debunked Science.

Dr. Zhang should be excluded in this case from offering testimony based on her research included in her 2019 Paper and 2020 Paper because it has been debunked by the EPA. In 2019, she was a co-author of a meta-analysis which purported to examine whether GBH exposure increases the risk of developing NHL. Zhang's 2019 Paper, which reported on the meta-analysis, found: "GBH exposure is associated with increased risk of NHL in humans. . . . However, given the heterogeneity between the studies included, the numerical risk estimates should be interpreted with caution." *See* Ex. B, Zhang, et. al., *Exposure to glyphosate-based herbicides and risk for non-Hodgkin lymphoma: A meta-analysis and supporting evidence* (2019) at 204. In January 2020, the EPA evaluated Zhang's 2019 meta-analysis and found serious methodological flaws therein. Specifically, the EPA found that Dr. Zhang and her co-authors did not use "appropriate methods to perform their meta-analyses" because they "did not include an ever/never estimate" and instead only compared patients with higher NHL exposure levels to those with lower NHL exposure levels. *See* Ex. D, EPA 1/6/2020 Memo. at 12-13. The EPA concluded that a properly conducted meta-analysis would have found "lower and non-statistically significant meta-estimates." *Id.* at 12. Therefore, the EPA concluded that Zhang's 2019 Paper did not change its assessment of glyphosate's carcinogenicity, and the EPA maintained its assessment that glyphosate is "not likely to be carcinogenic to humans." *Id.* at 13. In other words, the EPA found that the 2019 meta-analysis did not support general causation.

Following the EPA's criticism of the 2019 Paper, Dr. Zhang co-authored a second paper in December 2020. The 2020 Paper attempted to respond to the EPA's and other academics' criticisms of the 2019 Paper and meta-analysis, but noted that "*our current understanding of the risk of NHL*

*associated with widespread exposure to glyphosate is extremely limited.*" Ex. C, Zhang, et. al., *Weeding out inaccurate information on glyphosate-based herbicides and risk of non-Hodgkin lymphoma* (2020) at 3. (emphasis added). Because Dr. Zhang's research has been debunked, and the research on which she relies admits that her understanding of the risk of NHL associated with glyphosate exposure is limited, her opinions should be excluded as being neither relevant nor reliable.

> B.   The Court Should Exclude Dr. Zhang Because Her Testimony Does Not Meet Daubert's "Fit" Requirement.

To be admissible under *Daubert*, Dr. Zhang's opinions must be relevant or "fit" the facts of the case. *Daubert*, 509 U.S. at 592. In other words, the expert testimony must "fit" the question the jury must answer. *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (*Daubert II*), 43 F.3d 1311, 1321 n.17 (9th Cir. 1995). This bar is cleared where the evidence "logically advances a material aspect of the proposing party's case." *Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (citation omitted). Among the factors determining "fit" are (1) whether the expert's theory or method is generally accepted in the scientific community; (2) whether the expert's methodology can be or has been tested; (3) the known or potential error rate of the technique; and (4) whether the method has been subjected to peer review and publication. *Daubert II* at 1316 (citing *Daubert I*, 509 U.S. at 593-94, 113 S.Ct. 2786).

Thus, general causation testimony must address the specific injury of which the plaintiff complains. *See, e.g.*, *Hardeman v. Monsanto Company*, 997 F.3d 941 (9th Cir. 2021) ("To establish general causation . . . experts needed to show that glyphosate can cause NHL at exposure levels people realistically may have experienced."); *Hanford Nuclear Reservation Lit.,* 292 F.3d 1124 (9th Cir. 2002) (explaining that the general causation inquiry is whether exposure to the challenged substance "at the level of exposure alleged by the plaintiffs is capable of causing the alleged injuries"); *Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828 (9th Cir. 2011) ("Plaintiffs must also establish that the substance at issue was capable of causing the injury alleged (general causation) . . .")

Here, Dr. Zhang's opinions do not fit the facts of the case because her opinions do not address the specific sub-type of lymphoma that Mr. Bulone alleges he developed as a result of using Roundup. Dr. Zhang admits that her 2019 paper only provides an analysis of the alleged association between glyphosate and NHL in general and does not specifically address subtypes of NHL. *See* Ex. E, *Armstrong* Zhang Dep. (February 16, 2023) at 57:24-58:2 ("Q. With respect to glyphosate and [NHL], you've only looked at NHL overall, correct? A. Yes."); *see also id.* at 76:18-77:19 (Dr. Zhang admitting that her 2019 Paper does not specifically look at the risk of DLBCL from glyphosate exposure); *id.* at 130:23-131:16 (Dr. Zhang admitting that NHL is a diverse group of blood cancer and that her analysis did not investigate any connections between specific NHL subtypes and glyphosate). The Court should exclude her on these grounds because Dr. Zhang has no opinions regarding whether Roundup can cause the specific sub-type of NHL that Mr. Bulone claims he developed as a result of using Roundup.

## II. The Court Should Limit Dr. Zhang's Opinions to Those Related to Her 2019 Paper, 2020 Paper and the 2016 EPA Final Report Because She Has Not Disclosed Any Other Opinions.

Should the Court decline to exclude Dr. Zhang's general causation testimony in its entirety based on the arguments above, she should be limited to discussing her 2019 Paper, 2020 Paper and the 2016 EPA Final Report. As noted above, Plaintiff's expert witness disclosure did not provide specificity as to the opinions Dr. Zhang would offer at trial. *See* Ex. A, Plaintiff's Disclosure of Expert Witnesses and Declaration.

Dr. Zhang was not deposed in the instant matter, but has been deposed in other Roundup cases. When asked specifically what opinions she intended to offer at trial, Dr. Zhang testified that her opinions at trial would be limited to findings contained in her 2019 Paper:

> Q. . . . Do you have a particular assignment as part of your role as an expert in this case?
>
> A. Yes.
>
> Q. And what is that assignment?
>
> A. It's -- it's cover the human studies. That's what I --
>
> Q. Anything else?

5
DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE THE
TESTIMONY OF DR. LUOPING ZHANG

> A. I -- that's -- that's what I published, you know, our paper.
>
> Q. Okay. So my understanding is, and correct me if I'm wrong, your assignment is to cover the human studies that you've published in your paper?
>
> A. Yeah.
>
> Q. Any other studies that are part of your assignment for this case?
>
> A. I think that's the major assignment.

Ex. E, *Armstrong* Zhang Dep. (February 16, 2023) at 13:13-14:3; *see also id.* at 51:3-25 (Dr. Zhang agreeing with Plaintiffs' expert disclosure of her as offering "opinions on general causation consistent with her prior testimony in Roundup litigation"). Additionally, Dr. Zhang admits that she would be unable to tell the jury how the results of her meta-analysis would change given additional data that has been produced since the publication of her 2019 Paper since she has not conducted that analysis:

> Q. Dr. Zhang, if I understand you correctly, without doing the analysis to determine how De Roos 2022 or any other studies published since your meta-analysis would affect the results, you don't know how they would affect the results, correct?
>
> A. Exactly.
>
> Q. Okay.
>
> A. Exactly. But you also said if you include De Roos 2022, replace the Orsi 2009, then if the meta relative risk would be reduced. That's your question.
>
> Q. I'm not the expert, Dr. Zhang.
>
> A. Yes. Then you ask me.
>
> Q. Yeah.
>
> A. If yes or no, and I told you I cannot say if -- if it's going to be definitely decreased, the meta relative risk. And I gave you example from, you know, AHS cohort, right.
>
> Q. Okay. So you won't --
>
> A. Yeah.
>
> Q. You won't be able to tell the jury in this case how the results have changed since your meta-analysis without doing the analysis, correct?
>
> A. Yes. . . . That's true.

*Id.* at 98:18-99:19. In the *Armstrong* case, Dr. Zhang also agreed that she would not provide any testimony regarding specific causation in the prior matter. *Id.* at 46:7-12 ("Q. . . . [Y]our role in this

case is not to identify the specific cause in the individual, but rather, to provide the first part of that information that you said you need in order to do it, which is general causation, correct? A. I agree."). She identified no other opinions.

Here, Dr. Zhang did not produce an expert report and Plaintiff's expert disclosure did not specify Dr. Zhang's opinions, but instead only noted she would testify "in the areas of molecular mechanisms of chemical toxicity, molecular epidemiology and biomarkers, along with her meta-analysis on glyphosate and Non-Hodgkin Lymphoma."  Plaintiff indicates Dr. Zhang will testify "as to the association between cumulative exposures to glyphosate-based herbicides and an increased risk of non-Hodgkin lymphoma in humans" and "the results of her 2019 meta-analysis." Therefore, Dr. Zhang's testimony at trial should be limited to her discussion of her 2019 Paper, her 2020 Paper and the 2016 EPA Final Report.  *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 n. 5 (9th Cir.2006) (a district court does not abuse its discretion by excluding expert testimony when the expert's report was not disclosed by the scheduling deadline); *Berman v. Knife River Corp.*, 687 F. App'x 616, 617 (9th Cir. 2017) (expert opinion may be excluded at trial for including information not disclosed during fact or expert discovery).

## CONCLUSION

For the reasons set forth above, the Court should grant Monsanto's Motion to Exclude Testimony of Dr. Luoping Zhang and exclude Dr. Zhang's opinions in their entirety.

Dated:  March 6, 2024　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Linda C. Hsu*
　　　　　　　　　　　　　　　　　　　　Linda C. Hsu
　　　　　　　　　　　　　　　　　　　　Attorney for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing (NEF) to all counsel of record who are CM/ECF participants.

　　　　　　　　　　　　　　　　　　　　*/s/ Linda C. Hsu*
　　　　　　　　　　　　　　　　　　　　Linda C. Hsu