**NACHAWATI LAW GROUP**
5489 Blair Rd.
Dallas, TX 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712
Gibbs C. Henderson
Illinois Bar No.: 6314687
Texas Bar No.: 24041084
*Pro Hac Vice*
Erin M. Wood
Texas Bar No.: 24073064
*Pro Hac Vice*
ghenderson@ntrial.com
ewood@ntrial.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
|---|---|
| | Case No. 3:16-md-02741-VC |
| This document relates to: | **PLAINTIFF'S RESPONSE TO MONSANTO COMPANY'S MOTION TO EXCLUDE THE TESTIMONY OF DR. LUOPING ZHANG** |
| *Angelo Bulone v. Monsanto Co.*, Case No. 3:20-cv-03719 | |
| | Hearing: |
| | Date: _____ |
| | Time: _____, \_\_m |
| | Place: San Francisco, Courthouse Courtroom 4 -17th Floor |

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

i

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. STATEMENT OF THE FACTS ........................................................................................... 2

    A. Procedural Background ................................................................................................. 2

    B. Dr. Zhang's Qualifications and Methodology ............................................................. 4

        1. Dr. Zhang's Qualifications ..................................................................................... 4

        2. Dr. Zhang's Methodology ....................................................................................... 4

III. STANDARD OF REVIEW .................................................................................................. 6

IV. ARGUMENTS & AUTHORITIES ...................................................................................... 7

    A. Dr. Zhang's Opinions are Reliable. .............................................................................. 7

        1. Dr. Zhang's methodology was subjected to peer review. ....................................... 7

        2. Monsanto's reliability argument only challenges a small portion of Dr. Zhang's work. ................................................................................................... 7

        3. The EPA employee memo relied upon by Monsanto does not "debunk" Dr. Zhang's work. ................................................................................................... 8

    B. Dr. Zhang's Opinions Fit the Case. ............................................................................ 11

    C. Dr. Zhang's Opinions are Fully Set Out in Her Expert Report. ................................. 14

V. CONCLUSION ................................................................................................................... 15

CERTIFICATE OF SERVICE .................................................................................................. 17

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

ii

**Cases**

*Clausen v. M/V New Carissa*, 339 F.3d 1049, 1055 (9th Cir. 2003) .................................................. 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) .................... 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 599 U.S. 579 (1993) ............................................ 6

*Hardeman v. Monsanto*, 997 F.3d 941, 960 (9th Cir. 2021) ........................................................ 6

*In re Roundup Products Liability Litig.*, 390 F. Supp. 3d 1102, 1110-11 (9th Cir. 2018)
      (emphasis added) ..................................................................................................... 11

*In re Roundup Products Liability Litig.*, 390 F. Supp. 3d at 1110 (emphasis added) .................. 12

*Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d 11, 24 (1st Cir. 2011) ................... 13

*Ruff v. Ensign-Bickford Industries, Inc.*, 168 F. Supp. 2d 1271 (D. Utah 2001) .......................... 13

*United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020) ............................................ 7

*Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017) ................................... 6

**Rules**

FED. R. EVID. 702 .................................................................................................. 6, 7, 11, 12

Federal Rule of Evidence 702 ("Rule 702") .................................................................................. 1

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

iii

COMES NOW Plaintiff Angelo Bulone, by and through his undersigned counsel, and hereby files this Response to Monsanto Company's Motion to Exclude Testimony of Dr. Luoping Zhang ("Dr. Zhang"), and would show as follows:

## I.     INTRODUCTION

Defendant Monsanto Company's ("Monsanto") Motion to Exclude the Testimony of Dr. Luoping Zhang ("Motion to Exclude") asks the Court to exclude the testimony of Dr. Zhang on the basis of Federal Rule of Evidence 702 ("Rule 702"). *See* Dkt. No. 68, Monsanto Co.'s Mot. to Exclude the Testimony of Dr. Luoping Zhang, dated March 6, 2024 ("Def.'s Mot. to Exclude") at 1-2. More specifically, Monsanto argues that Dr. Zhang's testimony should be excluded on the grounds that her opinions: (1) are unreliable because they have been "debunked by the EPA"; and (2) do not "fit the facts of the case because [they] do not address the specific sub-type of lymphoma that Mr. Bulone alleges he developed as a result of using Roundup." *Id.* at 3, 5.

Alternatively, Monsanto argues that Dr. Zhang's testimony "should be limited to her discussion of her 2019 Paper, her 2020 Paper and the 2016 EPA Final Report" because "Dr. Zhang did not produce an expert report and Plaintiff's expert disclosure did not specify Dr. Zhang's opinions . . . ." *Id.* at 7.

Monsanto's arguments all fail. First, the EPA has not "debunked" Dr. Zhang's opinions, which were established as reliable through the peer review process *prior to this litigation*. Rather, a lone scientist at the EPA wrote an internal memorandum disagreeing with some of the methods utilized by Dr. Zhang in her 2019 Paper.[1] That scientist's comments about Dr. Zhang's work constitute nothing more than one side of an ongoing scientific debate that the Court has no role in

---

[1] Significantly, the EPA has offered no commentary on Dr. Zhang's 2020 and 2023 papers.

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

1

deciding under Rule 702.

Second, this Court has already addressed and rejected Monsanto's "fit" argument in this matter as well as others. To wit, this Court has already labeled Dr. Zhang's opinions of "direct relevance" to the issue of general causation in this case and, more generally, has recognized that the relevant scientific and etiologic literature examines NHL as a whole rather than by subtype. General causation experts who rely on such NHL literature have repeatedly been ruled reliable under *Daubert*.

Third, this Court has already addressed Monsanto's argument that Dr. Zhang's opinions "should be limited to discussing her 2019 Paper, 2020 Paper, and the 2016 EPA Final report"[2] in a prior ruling. Specifically, the Court held that Dr. Zhang's opinions, including those contained in a 2023 peer-reviewed article that she co-authored, were properly disclosed when it denied Monsanto's Motion to Stike Expert Report of Luoping Zhang, Ph.D. *See* Dkt. No. 58, Order Denying Monsanto's Motion to Stike Expert Report of Luoping Zhang, PH.D., dated January 9, 2024 ("Zhang Order").

For these reasons, more fully discussed below, Monsanto's Motion to Exclude is meritless and should therefore be denied.

## II.     STATEMENT OF THE FACTS

**A.     Procedural Background**

On October 18, 2023, Plaintiff identified Dr. Zhang as an expert biochemist in the instant matter and provided Defendant an affidavit ("Dr. Zhang Affidavit") containing her expert opinions. *See* **Exhibit A**, Affidavit of Dr. Luoping Zhang, dated October 18, 2023 ("10.18.23

---

[2] Def.'s Mot. to Exclude at 5.

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

2

Zhang Aff."). Plaintiff attached to the Zhang Affidavit, *inter alia*, two peer-reviewed articles co-authored by Dr. Zhang: (1) Exposure to glyphosate-based herbicides and risk for non-Hodgin Lymphoma: A meta-analysis and supporting evidence, a 2019 article that appeared in the peer-reviewed journal MUTATION RESEARCH-REVIEWS IN MUTATION RESEARCH ("2019 Paper"); and (2) Mapping the key characteristics of carcinogens and its formulations: A systematic review, a 2023 article that appeared in the peer-reviewed journal CHEMOSPHERE ("2023 Paper"). Ex. A, 10.18.23 Zhang Aff. at Exs. B and C. In the corresponding expert disclosure, Plaintiff indicated Dr. Zhang will testify "as to the association between cumulative exposures to glyphosate-based herbicides and an increased risk of non-Hodgkin lymphoma in humans." *See* **Exhibit B,** Pl.'s Disclosure of Expert Witnesses and Decl., dated Aug. 22, 2022 ("Pl.'s Expert Disclosure"), at 5.

On November 7, 2023, Monsanto filed a Motion to Strike Expert Report of Luoping Zhang, Ph.D. ("Motion to Strike"), in which it argued that "Plaintiff failed to disclose a sufficiently detailed expert report for [Dr. Zhang] regarding her causation opinions . . . ." Dkt. No. 41, Def.'s Mot. to Strike Expert Report of Luoping Zhang, Ph.D., dated Nov. 7, 2023 ("Mot. to Strike"), at 1. As noted above, this Court denied Monsanto's Motion to Strike on January 9, 2024. *See* Zhang Order.

On March 6, 2024, Monsanto filed the instant Motion to Exclude. In it, Monsanto argues that Dr. Zhang should not be allowed to testify on the topic of general causation because: (a) her research has been "debunked"; (b) "her opinions do not address the specific sub-type of lymphoma that Mr. Bulone" has been diagnosed with; and (c) certain of her opinions were not disclosed. Def.'s Mot. to Exclude at 3-5. For the reasons discussed below, each of these arguments should be rejected.

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

3

**B.      Dr. Zhang's Qualifications and Methodology**

**1.      Dr. Zhang's Qualifications.**

Dr. Zhang is a biochemist and a professor emeritus of toxicology at the University of California, Berkeley. Ex. A, 10.18.2023 Zhang Aff. at 3. She has been designated "in the areas of molecular mechanisms of chemical toxicity, molecular epidemiology and biomarkers, along with her meta-analysis on glyphosate and Non-Hodgkin Lymphoma." Ex. B, Pl.'s Expert Disclosure at 5.

Dr. Zhang earned a B.S. in Physical Chemistry from Wuhan University in Wuhan, P.R. China in 1982, a M.S. in Biochemistry from Huazhong University of Science and Technology, Wuhan, P.R. China in 1985 and a Ph.D. in Biochemical Toxicology from Simon Fraser University, Burnaby, B.C. in 1993. Ex. A, 10.18.23 Zhang Aff. at 3. Currently, Dr. Zhang is an adjunct professor at the School of Public Health, University of California. *Id.*

**2.      Dr. Zhang's Methodology.**

Dr. Zhang's Affidavit, which was attached to Plaintiff's Expert Disclosure, states as follows:

> My opinions in this matter are set out in the report, Zhang, L., et al., *"Exposure to Glyphosate Based Herbicides and Risk for Non-Hodgkin Lymphoma: A Meta-Analysis and Supporting Evidence,"* July-September 2019, Mutation Research/Reviews in Mutation Research, Volume 781, pp. 186-206, https://doi.org/10.1016/j.mrrev.2019.02.00, which is attached hereto as Exhibit B.
>
> My opinions in this matter are set out in the journal article, Rana, I., et al., "*Mapping the key characteristics of carcinogens for glyphosate and its formulations: A systematic review*," dated July 17, 2023, Chemosphere, which is attached hereto as Exhibit C.

Ex. A, 10.18.23 Zhang Aff. at 1.

These lengthy peer-reviewed papers, which were both co-authored by Dr. Zhang, contain her opinions on glyphosate and Roundup, the facts and data she relied upon to reach them, and the

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

materials used to support them.  *See id.* at Ex. B, 2019 Paper and Ex. C, 2023 Paper.

Both papers contain "Conclusions" sections summarizing their findings:

- Exhibit B to Dr. Zhang's Affidavit, for which Dr. Zhang served as the lead author, is a meta-analysis of the then-existing epidemiology examining a potential relationship between glyphosate exposure and NHL.  It contains the conclusion, "Using our *a priori* hypothesis, we report that [glyphosate-based herbicide] exposure is associated with increased risk of NHL in humans." *Id*. at Ex. B, 2019 Paper at 204.

- Exhibit C to Dr. Zhang's Affidavit, for which Dr. Zhang served as the corresponding author, is a review article on the mechanistic studies examining the effects of glyphosate *in vivo*, *ex vivo*, and *in vitro*.  It contains the conclusion, "The totality of evidence from mechanistic studies in human and animal studies suggest that glyphosate and its formulations possess several of the ten key characteristics of carcinogens (graphical abstract)." *Id*. at Ex. C, 2023 Paper at 16.

Likewise, both papers contain lengthy discussions of the methodology, facts and data upon which those conclusions are based.  *See* Ex. A, 10.18.23 Zhang Aff. at Ex. B, 2019 Paper at 186-204 and Ex. C, 2023 Paper at 1-15.  Both papers also contain a comprehensive listing of the materials Dr. Zhang and her co-authors relied upon in reaching their conclusions.  *See id.* at Ex. B, 2019 Paper at 204-206 and Ex. C, 2023 Paper at 16-19.

In 2020, ongoing scientific debate about the carcinogenicity of glyphosate prompted Dr. Zhang and two other co-authors to publish a commentary in the peer reviewed journal ENVIRONMENTAL RESEARCH entitled, *Weeding out inaccurate information on glyphosate-based herbicides and risk of non-Hodgkin lymphoma* ("2020 Paper").  *See* **Exhibit C,** Zhang, et. al., *Weeding out inaccurate information on glyphosate-based herbicides and risk of non-Hodgkin lymphoma*, ENVIRON RES. (2020) ("2020 Paper").  The stated purpose of the 2020 Paper was to scrutinize the methodology used in a meta-analysis conducted after Dr. Zhang's 2019 Paper to determine what factors contributed to that meta-analysis's finding of no association between glyphosate exposure and NHL.  *See id*. at 2.  In the 2020 Paper, Dr. Zhang and her co-authors

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

5

determined that the newer meta-analysis, conducted by Donato, *et al.*, was fundamentally flawed because, *inter alia*, none of its calculations were replicable. *See id.* at 4.

### III. STANDARD OF REVIEW

Mr. Bulone's case is part of the MDL alleging that the carcinogenic qualities of the glyphosate-based herbicide (GBH) Roundup cause NHL. In this MDL, the Court has held that "for questions of federal law, such as the admissibility of expert testimony under *Daubert*, Ninth Circuit law will govern regardless of where a case originated. Doc. 4549, Pretrial Order No. 158: *Daubert* Choice of Law, MDL No. 2741, July 10, 2019, at 1. Consistent with this pretrial order, Plaintiff focuses his response on relevant Ninth Circuit precedent.

In the Ninth Circuit (and throughout the federal courts), Rule 702 supplies the standard for the admissibility of scientific evidence. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1055 (9th Cir. 2003). Further, in *Daubert*, the Supreme Court charged district courts with a gatekeeping role to ensure that such scientific evidence is relevant and reliable. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 599 U.S. 579 (1993). The inquiry under Rule 702 and *Daubert* "is flexible and should be applied with a 'liberal thrust' favoring admission." *Hardeman v. Monsanto*, 997 F.3d 941, 960 (9th Cir. 2021) (quoting *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017)). Ultimately, "the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system . . . to 'attack[] shaky but admissible evidence.'" *Wendell*, 858 F.3d at 1237 (quoting *Daubert*, 509 U.S. at 596 (alteration in original)).

A key principle of Rule 702 and *Daubert* is that they were intended to relax traditional barriers to admission of expert opinion testimony. *Daubert*, 509 U.S. at 588. Courts are accordingly in agreement that Rule 702 mandates a liberal standard for the admissibility of expert testimony. As the Advisory Committee to the 2000 amendments to Rule 702 noted, with

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

apparent approval, "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's note (2000).

## IV.   ARGUMENTS & AUTHORITIES

**A.   Dr. Zhang's Opinions are Reliable.**

Monsanto first contends that Dr. Zhang should be "excluded from her offering testimony based on her research included in her 2019 Paper and 2020 Paper because it has been debunked by the EPA." Def.'s Mot. to Exclude at 3.  However, this argument completely ignores the fact that the reliability of Dr. Zhang's research work in the 2019 Paper has already been established by the peer review and publication process.

**1.   Dr. Zhang's methodology was subjected to peer review.**

*Daubert* identified "several reliability factors, including . . . peer review and publication . . . ." *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020) (citing *Daubert*, 509 U.S. at 592-94) .  The Ninth Circuit has since stated that, "[t]o be sure, '[o]ne means of showing [that the testimony is based on scientifically valid principles] is by proof that the research and analysis supporting the proffered conclusions have been subjected to normal scientific scrutiny through peer review and publication.'" *Wendell*, 858 F.3d at 1235 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995))  (alterations in original).  Here, of course, Plaintiff has such proof of reliability: Dr. Zhang's 2019 Paper and 2023 Paper were both subjected to the peer-review process and published in scientific journals.

**2.   Monsanto's reliability argument only challenges a small portion of Dr. Zhang's work.**

Undeterred, Monsanto misleadingly contends that the meta-analysis in Dr. Zhang's 2019 Paper was later "debunked by the EPA." Def.'s Mot. to Exclude at 3.  Even leaving aside that

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

7

the article was peer reviewed, there are multiple problems with that contention. First, the January 6, 2020 Memorandum by EPA employee David J. Miller ("Dr. Miller") (hereinafter, "2020 Miller Memo") upon which Monsanto relies obviously does not address Dr. Zhang's 2023 article, which post-dated it by three years. **Exhibit D**, Internal EPA Memorandum from D. Miller to C. Olinger, dated Jan. 6, 2020 ("2020 Miller Mem."), at 2-13. As such, this particular argument only goes to the admissibility of the opinions contained in Dr. Zhang's 2019 Paper.

Second, as to Dr. Zhang's 2019 Paper, the 2020 Miller Memo concedes that it only covers Dr. Zhang's meta-analysis of existing epidemiological studies and does *not* in any way address the portions of the 2019 Paper that review the existing animal studies and mechanistic data examining a possible relationship between GBHs and NHL. *See id*. at 2 ("This memorandum considers only the epidemiological and meta-analysis contend of the Zhang et al (2019) publication and does not review or otherwise evaluate the cited putative mechanisms."). As such, Monsanto's reliability argument only pertains to one part of Dr. Zhang's 2019 Paper.

Third, it is simply inaccurate to suggest that "the EPA" did anything vis-à-vis Dr. Zhang's report. Specifically, the document Monsanto repeatedly misrepresents as the official EPA position on Dr. Zhang's meta-analysis is nothing more than an internal memorandum authored by one EPA employee, Dr. Miller. *See id*.

3.  **The EPA employee memo relied upon by Monsanto does not "debunk" Dr. Zhang's work.**

Upon close examination, the 2020 Miller Memo does not even "debunk" the small portion of Dr. Zhang's overall opinions on glyphosate that it purports to address. In fact, the 2020 Miller Memo contains only two substantive criticisms of the methodology used by Dr. Zhang and her co-authors in the meta-analysis portion of Dr. Zhang's 2019 Paper, neither of which amounts to a wholesale repudiation of Dr. Zhang's methodology. One, Dr. Miller

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

8

contends that Dr. Zhang's meta-analysis would have produced "lower and non-statistically significant meta-estimates . . . if the Andreotti, et al. (2018) study [had been] more properly incorporated" into the meta-analysis. *Id*. at 12. That mild criticism – that the Andreotti, et al. (2018) study could have been "more properly incorporated" – offered by one scientist at the EPA falls far short of "debunking" Dr. Zhang's work. Further, this criticism fails to take into account the fact, discussed *supra*, that the manner in which Dr. Zhang incorporated Andreotti had already been subjected to the peer review process.

Two, Dr. Miller argues that Dr. Zhang's "focus[] on the results from a fixed effect meta-analyses (instead of random effects) for this kind of data [was] incorrect." Ex. D, 2020 Miller Mem. at 13. Similar to Dr. Miller's first criticism, his opinion about which set of results Dr. Zhang and her co-authors should have "focused on" – fixed effect vs. random effects – would not invalidate the entire meta-analysis contained in Dr. Zhang's 2019 Paper. Indeed, Dr. Miller concedes that, "[t]he authors did, nevertheless, perform a random effects analysis and present these results . . . ." *Id*. at 13. Given this fact, which set of results the authors chose to emphasize in the 2019 Paper is fodder for cross-examination, not a basis for exclusion. Furthermore, Dr. Miller's statement that the random effects model should have been emphasized over the full effects model is conclusory and does not directly address Dr. Zhang's stated basis for focusing on the fixed effects model, which was included in her 2020 Paper defending the methodology used in the 2019 Paper. *See* Ex. C, Zhang 2020 Paper at Table 1, n. d ("Fixed-effects model was used because between-study heterogeneity, defined as the $X^2$-test statistic for heterogeneity being greater than its degrees of freedom (number of studies minus one), was not detected.").

Ultimately, the 2020 Miller Memo merely comes to a different conclusion than Dr. Zhang's 2019 Paper regarding an active scientific debate. As such, Monsanto's request to

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

9

exclude Dr. Zhang's opinions related to the meta-analysis portion of her 2019 Paper is essentially a request that the Court decide which side of that scientific debate is correct. Def.'s Mot. to Exclude at 3. However, Rule 702 requires the Court to exercise its gate-keeping function role based on a determination of the expert's qualifications and methodologies; it does not impose upon the Court an obligation to determine which side of any legitimate scientific debate is correct or incorrect. *See* FED. R. EVID. 702. "When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." FED. R. EVID. 702 advisory committee's note (2000).

In 2023, Rule 702 was amended, and the advisory committee again underscored the fact that it is *not* the role of courts to settle scientific debates:

> It will often occur that experts come to different conclusions based on contested sets of facts. . . . "[P]roponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable... The evidentiary requirement of reliability is lower than the merits standard of correctness.'" Advisory Committee Note to the 2000 amendment to Rule 702, quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994).

FED. R. EVID. 702 advisory committee's note (2023).

The oft-cited *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 (3d Cir. 1994) likewise instructs trial courts that they have no role in settling legitimate scientific debates, explaining:

> The grounds for the expert's opinion merely have to be good, they do not have to be perfect. The judge might think that there are good grounds for an expert's conclusion even if the judge thinks that there are better grounds for some alternative conclusion, and **even if the judge thinks that a scientist's methodology has some flaws** such that if they had been corrected, the scientist would have reached a different result.

*Id*. at 744 (emphasis added).

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

10

1    Here, Dr. Zhang's 2020 Paper, discussed *supra*, acknowledges the ongoing scientific debate concerning glyphosate's carcinogenicity in its introduction, stating "[d]iffering conclusions about glyphosate's carcinogenic potential among national and international regulatory agencies have further incited controversy among stakeholders with competing interest." Ex. C, Zhang 2020 Paper at 1. This is precisely the kind of scientific debate that Rule 702 instructs courts not to decide whether one side is correct, but rather assess methodology and then permit the jury to make its own determination. *See* FED. R. EVID. 702. In the end, the mild criticisms of Dr. Zhang's meta-analysis in the 2020 Miller Memo are not a legitimate basis for the Court to preclude Dr. Zhang from testifying about the meta-analysis section of her 2019 Paper.

**B.    Dr. Zhang's Opinions Fit the Case.**

Next, Monsanto argues that "Dr. Zhang's opinions do not fit the facts of the case because her opinions do not address the specific sub-type of lymphoma that Mr. Bulone alleges he developed as a result of using Roundup." Def.'s Mot. to Exclude at 5. That argument lies in direct contradiction to this Court's previous pronouncement, in denying Monsanto's Motion to Strike, that Dr. Zhang's "academic articles treat subjects of **direct relevance to the general causation question in this case**." Zhang Order at 2 (emphasis added). Additionally, as discussed below, Monsanto's "fit" argument ignores prior holdings of this Court addressing what experts can rely upon in providing general causation opinions in this litigation.

In order to prevail in a Roundup case, this Court has recognized that a plaintiff must prove both general causation and specific causation. *In re Roundup Products Liability Litig.*, 390 F. Supp. 3d 1102, 1110-11 (9th Cir. 2018) (emphasis added) . Dr. Zhang is a general causation witness. Plaintiff's specific causation expert, Dr. Marc Braunstein, stated in his report that Mr. Bulone has chronic lymphocytic leukemia (CLL), which is a subtype of NHL. *See* **Exhibit E**, Expert Report of Dr. Marc Braunstein, dated Oct. 23, 2023, at 4.

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

This Court has defined "general causation" in this context as "whether glyphosate is capable of **causing NHL** at exposure levels humans might have experienced." *In re Roundup Products Liability Litig.*, 390 F. Supp. 3d at 1110 (emphasis added) ; *see also Hardeman*, 997 F.3d at 963 ("To establish general causation, Hardeman's experts needed to show that **glyphosate can cause NHL** at exposure levels people realistically may have experienced.") (emphasis added). That is precisely the question addressed by Dr. Zhang's 2019 Paper and 2023 Paper, as these excerpts from their conclusion sections illustrate:

- 2019 Paper: "Using our *a priori* hypothesis and including the recently updated AHS cohort in a meta-analysis for the first time, **we report that GBH exposure is associated with an increased risk of NHL in humans**. . . . The totality of the evidence from six studies of glyphosate-exposed mice support this association in humans." Ex. A, 10.18.23 Zhang Aff. at Ex. B, Zhang 2019 Paper at 204 (emphasis added).

- 2023 Paper: "The totality of evidence from mechanistic studies in human and animal studies suggest that **glyphosate and its formulations possess several of the ten key characteristics of carcinogens** . . . ." *Id.* at Ex. C, Zhang 2023 Paper at 16 (emphasis added).

The Court's prior ruling on this point reflects the fact that the medical and scientific literature examining the causative relationship between glyphosate/Roundup exposure and NHL considers NHL as a whole and is not broken down by subtype. Consistent with the state of the science, this Court has held that general causation experts can rely on the existing epidemiological literature in assessing whether glyphosate is capable of causing NHL, including, *inter alia*, many of the same epidemiological studies that were used by Dr. Zhang and her co-authors in her 2019 Paper. *See In re Roundup Products Liability Litig.*, 390 F. Supp. 3d at 1119-26 (discussing De Roos (2003), McDuffie (2001), Eriksson (2008) and De Roos (2005)). Indeed, as acknowledged in the 2020 Miller Memo, the EPA relied on the same studies as Dr. Zhang in its "evaluation of the human carcinogenic potential of glyphosate . . . ." Ex. D, 2020 Miller Mem. at 2.

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

12

This Court's position on the appropriateness of using studies examining an association between glyphosate and NHL as a whole to opine on general causation is consistent with other courts that have addressed the issue. In the Superior Court of California, for example, Judge Curtis E. Karnow ruled in a Roundup case that reliance on general NHL literature is permissible when opining about specific NHL subtypes, stating: "I reject Monsanto's argument that there is no scientific basis for Dr. Nabhan to rely on studies that apply to NHL generally in the context of mycosis fungoides. There is a scientific basis for Dr. Nabhan's opinion - mycosis fungoides is a subtype of NHL." **Exhibit F**, Order on (1) Monsanto's Omnibus Sargon Motion; (2) Monsanto's Motion for Summary Judgment; (3) Plaintiff's Omnibus Sargon Motion; (4) Plaintiff's Motion for Summary Judgment, *Johnson v. Monsanto Co., et al.*, Superior Court of California, San Francisco County, No. CGC-16-550128, at 10 (May 17, 2018).

Similarly, in *Ruff v. Ensign-Bickford Industries, Inc.*, 168 F. Supp. 2d 1271 (D. Utah 2001), the District Court of Utah refused to require the plaintiff to demonstrate that the chemicals from the defendants' explosives manufacturing plant caused the specific subtype of NHL that the plaintiffs suffered, explaining that "expert opinion need not include data showing studies of the exact subtype of plaintiffs' NHL to satisfy their general causation burden." *Id*. at 1279; *see also Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d 11, 24 (1st Cir. 2011) (holding that it was error to exclude an expert opinion that was based on epidemiology of a general category of Acute Myeloid Leukemia (AML) being caused by benzene where the injury was a rare subtype because "the rarity of [the subtype] and difficulties of data collection in the United States make it very difficult to perform an epidemiological study of the causes of APL that would yield statistically significant results.").

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

13

In sum, there is no reason for the Court to change its earlier stated finding that Dr. Zhang's opinions are of "direct relevance" to the issue of general causation. Accordingly, Monsanto's "fit" argument should be denied.

### C. Dr. Zhang's Opinions are Fully Set Out in Her Expert Report.

Alternatively, Monsanto asks the Court to "Limit Dr. Zhang's Opinions to Those Related to Her 2019 Paper, 2020 Paper and the 2016 EPA Final Report Because She Has Not Disclosed Any Other Opinions." Def.'s Mot. to Exclude at 6. Put another way, Monsanto is asking the Court to preclude Dr. Zhang from testifying concerning her 2023 Paper on the grounds it was not properly disclosed. However, the Court already resolved this issue when it denied Monsanto's Motion to Strike. *See* Zhang Order.

As the Court will recall, Monsanto filed a Motion to Strike in which it argued that Dr. Zhang's report "did not satisfy" the written report requirements and should be stricken because it "is devoid of any statement regarding her opinions (including the basis for them), the facts or data she considered in forming these unknown opinions, the exhibits (if any) that summarize or support them." Def.'s Mot. to Strike at 3, 5. The Court denied Monsanto's Motion to Strike, explaining in relevant part that "the publications incorporated by reference in the declaration set forth conclusions about the carcinogenicity of glyphosate-based herbicides and the possible mechanisms by which glyphosate-based herbicides might be implicated in lymphomagenesis . . . [and] described their methods, the data and information on which they rely . . . ." Zhang Order at 2. Given the information included in the two peer-reviewed articles authored by Dr. Zhang that were attached to Plaintiff's Expert Disclosure, the Court concluded that, "Monsanto is wrong to suggest that it fails to disclose the information required by Rule 26(a)(2)(B)." *Id.* at 3. More specifically, the Court stated that "the publications incorporated by reference in the [Plaintiff's] declaration," which included Zhang's 2023 Paper, were "enough to satisfy parts (i) and (ii) of

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

14

Rule 26(a)(2)(B)." *Id*.

Based on this language, the Court has already unambiguously ruled that Plaintiff's disclosure of Dr. Zhang, including the opinions in her 2023 Paper, was sufficient. While the Court also wrote that Monsanto "would have firm ground to seek [the] exclusion" of "opinions that are not disclosed in the articles," that would obviously not apply to Dr. Zhang's 2023 Paper, which was among the disclosed articles. *Id*.[3] Accordingly, this Court should reject Monsanto's non-disclosure argument and allow Dr. Zhang to offer the opinions in her 2023 Paper.

## V.  CONCLUSION

Based on the foregoing reasons, Plaintiff requests that the Court deny Defendant's Monsanto Company's Motion to Exclude the Testimony of Dr. Luoping Zhang.

---

[3] Defendant's references to Dr. Zhang's deposition testimony in the *Armstrong* matter are irrelevant and misleading. *See* Def.'s Mot. to Exclude at 6. That deposition took place in February of 2023, a full five months before Dr. Zhang's 2023 Paper was accepted for publication in July 2023. Of course, Dr. Zhang did not identify her 2023 Paper as an article that she would be testifying about prior to its publication during that deposition.

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

15

Dated: March 27, 2024

Respectfully submitted,

**NACHAWATI LAW GROUP**

By: <u>*/s/Gibbs C. Henderson*</u>
Gibbs C. Henderson
Illinois Bar No.: 6314687
Texas Bar No.: 24041084
*Pro Hac Vice*
Erin M. Wood
Texas Bar No.: 24073064
*Pro Hac Vice*
**NACHAWATI LAW GROUP**
5489 Blair Rd.
Dallas, TX 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712
ghenderson@ntrial.com
ewood@ntrial.com
litigation@ntrial.com
*Attorney for Plaintiff*

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2024, a true and correct copy of Plaintiff's Response to Monsanto's Motion to Exclude Testimony of Plaintiff's Specific Cause Expert Dr. Luoping Zhang and for Summary Judgment, was served on all counsel of record via email.

By: /s/Gibbs C. Henderson
Attorney for Plaintiff

Pl.'s Resp. to Def.'s Mot. to Excl. Testimony of Dr. Luoping Zhang, Case Nos. 3:16-MD-02741 & 3:20-CV-03719

17