**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| *Angelo Bulone v. Monsanto Company,*<br>*3:20-cv-03719-VC* | **DEFENDANT MONSANTO COMPANY'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF DR. LUOPING ZHANG** |

Pursuant to this Court's Order dated April 25, 2024, Defendant Monsanto Company respectfully submits this supplemental brief in support of its Motion to Exclude the Testimony of Dr. Luoping Zhang, Ph.D.  Monsanto incorporates into this supplemental brief its Motion to Exclude Dr. Zhang ("Motion").

## INTRODUCTION

To support his claim that exposure to Roundup causes non-Hodgkin's lymphoma (NHL), Plaintiff relies on a 2019 meta-analysis whose primary author was Dr. Luoping Zhang, Ph.D.  On April 24, 2024, this Court held a *Daubert* hearing to test the reliability of Dr. Zhang's opinions.

The *Daubert* hearing laid bare that Dr. Zhang's opinions do not satisfy *Daubert*, confirming her testimony should be excluded entirely.  Indeed, as the Court itself pointed out at the *Daubert* hearing, Dr. Zhang's headline opinion—that there is a 1.41 risk ratio for glyphosate exposure and NHL—"seems like junk science to me, based on what I know now." Tr. at 131.

Monsanto's *Daubert* motion focused primarily on the United States Environmental Protection Agency's criticisms of Dr. Zhang's 2019 paper—the same research paper that undergirds her opinions in this case.  As the Court noted, however, Dr. Zhang's testimony during the *Daubert* hearing also "shined a light on several other problems with Dr. Zhang's paper and the use of Dr. Zhang's paper in a trial in 2024 or 2025." Tr. at 129.  Accordingly, this Court ordered supplemental briefing on "whether it's appropriate" for the Court, in ruling on Monsanto's *Daubert* motion, "to consider the new concerns that have come to light regarding Dr. Zhang's paper and regarding Dr. Zhang's proposed testimony." Tr. at 130; *see also* Dkt. 18295 (ordering supplemental briefing for the reasons stated during the *Daubert* hearing).

Monsanto now submits this brief to address the Court's concerns.  For the reasons that follow, this Court can and should consider the deficiencies in Dr. Zhang's opinions that came to light at the *Daubert* hearing.  The Court should exclude Dr. Zhang's opinions.

**I.     This Court Would Not Abuse Its Discretion By Excluding Dr. Zhang's Testimony For The Reasons That Came To Light During The *Daubert* Hearing.**

There is no procedural barrier prohibiting this Court from excluding Dr. Zhang's opinions for the reasons that arose at the *Daubert* hearing. *Daubert* itself held that district courts have a "gatekeeping' *duty*" that requires them to "'screen[]' the proffered evidence to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Alatorre*, 222 F.3d 1098, 1100-01 (9th Cir. 2000) (emphasis added, quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1994)).

Consistent with that gatekeeping duty, federal courts have held that a "district court's *Daubert* inquiry need not take any specific form." *Miller v. Baker Implement Co.*, 439 F.3d 407, 413 (8th Cir. 2006). Indeed, even "sua sponte consideration of the admissibility of expert testimony is permissible so long as the [district] court has an adequate record on which to base its ruling." *Id.*; *see also id.* (holding that the district court did not abuse its discretion by excluding, sua sponte, and without a hearing, the opinions of an expert whose opinion was submitted after the expert deadline because the "district court had a sufficient record on which to determine" admissibility, and where "the parties had addressed the *Daubert* standards in their earlier briefs"); *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998) ("We have not required that the *Daubert* inquiry take any specific form and have, in fact, upheld a judge's *sua sponte* consideration of the admissibility of expert testimony."); *Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, 2010 WL 11575000, at * 2 (N.D. Cal. Aug. 30, 2010) ("The question of [expert] admissibility may be raised by a court sua sponte." (citing *Kirsten*)). It follows that if a district court can address the reliability of expert testimony *sua sponte*, it can also address bases of unreliability that come to light for the first time at a *Daubert* hearing. *See Seneca Ins. Co. v. Wilcock*, 2007 WL 415141 at *9 (S.D.N.Y. Feb. 5, 2007) ("We grant the [*Daubert*]

motion … in part and *on a somewhat different basis* from that pressed by plaintiff." (emphasis added)).

The critical factor, as *Miller* pointed out, is whether a district court has an "adequate record on which to base its ruling." 439 F.3d at 413. Here, that criterion is easily satisfied. By the time it rules on the admissibility of Dr. Zhang's testimony, this Court will have had the benefit of both parties' initial *Daubert* briefing and supplemental briefing. This Court will also have the benefit of Dr. Zhang's testimony from the three-hour long *Daubert* hearing at which Dr. Zhang was vigorously examined not only by the parties' counsel, but by the Court itself. In *Miller*, the circuit court concluded that briefing alone was a sufficient record for the district court to rule on the admissibility of an expert's opinions. *Id*. Accordingly, the record in this case should be more than enough for this Court to rule without abusing its discretion.

Finally, there are examples of other district court cases in which the court excluded an expert after holding a *Daubert* hearing and ordering supplemental briefing in order to have a fuller record and not confine itself to the initial briefing. *See, e.g., Williams v. Hargrove*, 2018 WL 1075041 (S.D. Miss. Feb. 28, 2018); *Scolaro v. Vons Companies, Inc.*, 2020 WL 8920999 (D. Nev. Mar. 2, 2020); *Daddio v. Nemours Foundation*, 399 Fed. App'x 711, 713 (3d Cir. 2010). The Court should do the same in this case.

II.     **Dr. Zhang's Opinions Are Unreliable And Should Be Excluded.**

To be admissible under *Daubert*, Dr. Zhang's opinions must be relevant or "fit" the facts of the case. *Daubert*, 509 U.S. at 592. This bar is cleared where the evidence "logically advances a material aspect of the proposing party's case." *Messick v. Novartis Pharmaceuticals Corp*., 747 F.3d 1193, 1196 (9th Cir. 2014) (citation omitted). Thus, general causation testimony must address the levels of exposure capable of causing the injury of which the plaintiff complains. *See, e.g.*, *Hardeman v. Monsanto Company*, 997 F.3d 941 (9th Cir. 2021) ("To establish general causation . . . experts needed to show that glyphosate can cause NHL at exposure levels people

realistically may have experienced."); *Hanford Nuclear Reservation Lit.,* 292 F.3d 1124 (9th Cir. 2002) (explaining that the general causation inquiry is whether exposure to the challenged substance "at the level of exposure alleged by the plaintiffs is capable of causing the alleged injuries"); *Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828 (9th Cir. 2011) ("Plaintiffs must also establish that the substance at issue was capable of causing the injury alleged (general causation) . . .")

Dr. Zhang should be excluded in this case because her general causation opinions are unreliable and do not "fit" the causation question posed to the jury. One of the fundamental goals of the Court's gatekeeping function is to exclude clearly invalid and unreliable expert opinion. Dr. Zhang's opinions are based on a 2019 meta-analysis she co-authored which purported to examine whether GBH exposure increases the risk of developing NHL. As this Court pointed out at the *Daubert* hearing, the meta-analysis mixed underlying studies with disparate data and methodology. *See*, Tr. at 49-50 and 80. The meta-analysis not only mixed and cherry-picked dose-response data with ever-never use data, but also data that was adjusted for other pesticides with data that was not. That is unreliable.

Dr. Zhang's testimony at the *Daubert* hearing confirmed this extensive unreliability. Among other things, her meta-analysis "mix[es] high-exposure data sets with ever-exposure datasets" which the Court correctly noted "seems like a major apples and oranges problem." Tr. at 130; *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (expert opinions should be excluded if they are "in essence an apples and oranges comparison" (internal quotation marks omitted)). Dr. Zhang admitted the studies used for the 2019 meta-analysis included only one study from a cohort group, and only three of the studies broke out a high-exposure group. Tr. at 49-50. Dr. Zhang's meta-analysis used only portions of the study group for three of the studies, and all of the study group for the other three, and the underlying studies did not all use the same methodology for determining high exposure. Tr. at 59.

At the *Daubert* hearing, when this Court pointed out these flaws and inaccuracies, Dr. Zhang was not able to articulate a reliable defense of the analysis:

> Q: What does that 1.41 number represent? Where does it come from?
>
> A: This is coming from our meta-analysis, including three studies with the high – highest exposure, original studies reported, not us, and the three without original study didn't report different exposure category. So –
>
> Q: So let me pause you there. So this is what we've been talking about; right?
>
> A. Yes.
>
> Q: For three of the studies, you use all of the subjects, not merely the high-exposure subjects?
>
> A: Yes, that's correct.
>
> Q: For three of the studies, you don't know if it's high cumulative GBH exposure. So how can you say the risk ratio of 1.41 is for people who had high cumulative GBH exposures?
>
> A: So that's all based on data availability. Okay.

Tr. at 68-69.

Dr. Zhang also admitted that the seminal conclusion in her paper regarding the 1.41 increased risk was misleading, and if all the subjects from the underlying studies had been included in the meta-analysis, the increased relative risk would drop. Tr. at 70-71, 74-75.  As a result, Dr. Zhang's opinions based on this selective data is misleading.

Another reason Dr. Zhang's methodology in the 2019 meta-analysis is unreliable is that some of the underlying studies on which she relied did not adjust for exposure to other pesticides, yet she mixed that data with certain data that did adjust for exposure to other pesticides. Tr. at 80 -81 and 93-96.  When questioned by the Court on this issue, Dr. Zhang stated:

> Q: . . .For three of the studies, it's only a portion of the individuals studied; and for the other three of the studies, it's all the people studied.

> For some of the studies, the data is adjusted for other pesticide use; and for other of the studies, it's data that is not adjusted for other pesticide use.
>
> Is that what you're saying?
>
> A: Yeah.
>
> Tr. at 81.

When discussing adjusted versus unadjusted data in this context, Dr. Zhang admitted her unreliable results-driven approach:

> Q: . . .For Table 4, if you had a choice between unadjusted data that was in the higher exposure group and adjusted data that was in a lower exposure group, you chose the unadjusted data; correct?
>
> A: Okay. In this case, yes, but for choose the exposure category, we – this is what we have to put. We have in the method, we're saying, you know, how – how we wanted to select the exposure category. I think it's not dependent on if the data is adjusted or unadjusted. That's maybe at the lower priority stated. . . . .
> So we were following our *a priori* hypothesis, which group of the data goes the highest priority for the selection of data.
> Tr. at 92.

Although Dr. Zhang attempted to rely on certain sensitivity analyses in the 2019 paper, the paper itself makes clear that the sensitivity analyses were backup analyses and not the source of the paper's key findings and conclusions. *See* Ex. B. to Motion at 13-14, 54. Indeed, when questioned on the sensitivity analyses, she was unable to articulate what studies were used for those analyses. Tr. at 98-100. For example, she did not know whether numbers from the Hardell study were used, further demonstrating the unreliability of her opinions. Tr. at 102.

Finally, Dr. Zhang also acknowledged she has not updated the 2019 paper, despite other relevant papers coming out since that time. Tr. at 104. She stated that, if she were doing the meta-analysis today, she would include new studies, which supersede many of the papers she relied on in her now out-of-date 2019 paper. (Q: . . .if you were doing your study today and going to tell the jury about what the world is like today, would use – you would have started your meta-analysis with the De Roos

2002 paper; right? A: If I – if I redid my meta-analysis for my 2019 paper now, after all this new study published, yes, I may. Tr. at 110.) This includes, but is not limited to, the Pahwa paper that pools data including McDuffie and De Roos 2003, and the De Roos 2022 paper that pools data including Orsi 2009. Dr. Zhang would therefore not be able to tell the jury what the results would be if the new data was incorporated, and her testimony would therefore not "fit" the question posed to the jury about the state of the epidemiology as it exists today. Tr. at 111.

For these reasons, Dr. Zhang's testimony at the *Daubert* hearing confirm that her 2019 meta analysis is unreliable. And because Dr. Zhang's proposed testimony is functionally coextensive with her 2019 meta-analysis, her testimony should be excluded entirely.

## CONCLUSION

For the reasons set forth above and in Monsanto's Motion, the Court should exclude Dr. Zhang's opinions in their entirety.

Dated: May 2, 2024                    Respectfully submitted,

*/s/ Linda C. Hsu*
Linda C. Hsu
Attorney for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing (NEF) to all counsel of record who are CM/ECF participants.

*/s/ Linda C. Hsu*
Linda C. Hsu