# **EXHIBIT 1**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No.: 2741<br>**Master Case No. 3:16-md-02741-VC** |
| This document relates to<br><br>*James M. Collins, as Executor of the Estate of James Collins, as Representative of the heirs-at-law of James Collins, and individually, v. Monsanto Company*<br><br>**Case No. 3:20-cv-01419-VC** | **AMENDED COMPLAINT – JURY TRIAL DEMANDED** |

Plaintiff, James M. Collins, as Executor of the Estate of James Collins, as Representative of the heirs-at-law of James Collins, and individually ("Plaintiff" or "Collins"), residing at 14 Hardy Drive, Bridgewater, New Jersey, by way of Complaint against the Defendants, says:

## PARTIES/JURISDICTION

1. This is a wrongful death and survival action pursuant to New Jersey law in relation to the death of James Collins ("Decedent") as a direct and proximate cause of defendant Monsanto Company's ("Monsanto") negligent, willful, reckless and wrongful conduct in connection with the design, development, manufacture, failure to test, packaging, promotion, marketing, advertising, distribution, labeling, and/or sale of glyphosate-based herbicide Roundup®, which, as used throughout refers to all formulations of Roundup® products.

2. Plaintiff maintains that Roundup® and/or glyphosate is defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce, and lacked proper warnings and directions as to the dangers associated with its use.

3. At all times material hereto, Collins was a resident of the State of New Jersey, residing in Bridgewater, New Jersey.

4. On or about April 11, 2024 an Executor Certificate was granted by the Surrogate's Court of Somerset County, State of New Jersey to Collins, which Certificate authorized and empowered Collins to prosecute a claim of the heirs-at-law of Decedent against Defendants.

5. As a direct and proximate result of being exposed to Roundup, Decedent developed Non-Hodgkin Lymphoma.

6. Decedent was diagnosed in New Jersey; was treated for his illness in New Jersey; and died on March 31, 2024 in New Jersey.

7. As a result of Decedent's death, Plaintiff has suffered damages as set forth herein.

8. Upon information and belief, at all times material hereto, Monsanto is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri.

9. Upon information and belief, at all times material hereto, Monsanto is authorized and licensed to conduct business in the State of New Jersey, maintains and carries on systematic and continuous contacts in New Jersey, regularly transacts business within New Jersey, and regularly avails itself of the benefits of doing business in New Jersey.

10. Upon information and belief, at all times material hereto, Monsanto was the entity that discovered the herbicidal properties of glyphosate and was the manufacturer of the product Roundup, at issue in this lawsuit.

11. Upon information and belief, at all times material hereto, Defendants John Does 1-10; were and/or are fictitiously named individuals, the identity, addresses and culpable conduct of said defendants being presently unknown. Said defendants were the distributors and/or wholesalers and/or retailers of the dangerous product causing injury to the Plaintiff, and/or were responsible for the distribution and/or wholesale and/or retail of the dangerous product causing

injury to the Plaintiff. The Plaintiff reserves the right to amend this Complaint upon obtaining knowledge of the identity, addresses and culpable conduct of said Defendants represented herein as John Does 1-10.

12. Upon information and belief, at all times material hereto, Defendants John Does 1-10 were conducting business in the State of New Jersey.

13. Upon information and belief, at all times material hereto, Defendants XYZ Corporations 1-10; were and/or are fictitiously named partnerships, professional associations and/or professional corporations (hereinafter "partnerships"), the identity, addresses and culpable conduct of said defendants being presently unknown. Said Defendants were the distributors and/or wholesalers and/or retailers of the dangerous product causing injury to the Plaintiff, and/or were responsible for the distribution and/or wholesale and/or retail of the dangerous product causing injury to the Plaintiff. The Plaintiff reserves the right to amend this Complaint upon obtaining knowledge of the identity, addresses and culpable conduct of said Defendants represented herein as XYZ Corporations 1-10.

14. Upon information and belief, at all times material hereto, Defendants XYZ Corporations 1-10 were conducting business in the State of New Jersey.

15. Upon information and belief, all Defendants acted by and through their respective agents, servants, employees, officers, directors or others, actual and/or apparent, any and all of which were then and there acting within the course and scope of their employment, duties or agency, actual and/or apparent.

16. Federal diversity jurisdiction in this Court is proper under 28 U.S.C. § 1332 because Plaintiff is a citizen of New Jersey, a different state than Monsanto's state of citizenship, and the aggregate amount in controversy exceeds $75,000, exclusive of interest and costs.

## FACTS COMMON TO ALL COUNTS

17. Plaintiff herein incorporate all previous paragraphs as though the same were set forth herein at length.

18. At all times material hereto, Monsanto was the entity that discovered the herbicidal properties of glyphosate and was the manufacturer of the product Roundup, at issue in this case.

19. At all times material hereto, Monsanto was the distributor and/or wholesaler of the product Roundup, at issue in this case.

20. Upon information and belief, Monsanto conducts activities within New Jersey; distributes its products in New Jersey; sells its products in New Jersey; delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in New Jersey; and engages in marketing of its products in New Jersey.

21. Upon information and belief, Defendants John Does 1-10 conducts activities within New Jersey; distributes its products in New Jersey; sells its products in New Jersey; delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in New Jersey; and engages in marketing of its products in New Jersey.

22. Upon information and belief, Defendants XYZ Corporations 1-10 conducts activities within New Jersey; distributes its products in New Jersey; sells its products in New Jersey; delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in New Jersey; and engages in marketing of its products in New Jersey.

23. Defendant Monsanto promoted and advertised Roundup as being harmless to humans for over thirty (30) years.

24. The active chemical in Roundup, glyphosate, is a carcinogen, and Monsanto has known this fact for decades.

25. Several countries around the world have instituted bans on the sale of Roundup and other glyphosate-containing herbicides, and more countries undoubtedly will follow suit as the dangers of the use of Roundup are more widely known.

26. Decedent was regularly exposed to Roundup for many years while using it for its intended purpose, spraying it to prevent and kill weeds at properties he owned and operated.

27. In January of 2018, Decedent was diagnosed with non-Hodgkin's lymphoma.

28. Decedent would not have used Roundup if he knew it could cause cancer.

29. Monsanto has affirmatively claimed and continues to claim that Roundup and glyphosate are safe to human users like Decedent.

30. Monsanto has denied and continued to deny the probability that Roundup and glyphosate are carcinogenic to humans and are linked to blood born cancers including non-Hodgkin's lymphoma.

31. Defendants were under a continuous duty to disclose to consumers, users and other persons coming into contact with its products, including Decedent, accurate safety information concerning its products and the risks associated with the use of and/or exposure to Roundup and glyphosate. Instead, Monsanto knowingly, affirmatively, and actively concealed safety information concerning Roundup and glyphosate and the risks associated with the use of and/or exposure to its products.

32. As a proximate result of Defendants' wrongful acts and omissions in placing its defective Roundup products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate, and in breach of its warranties, negligence and strict liability, Decedent has suffered suffer severe and permanent physical and emotional

injuries, and ultimately caused Decedent's death in March of 2024. Decedent endured the anguish of a cancer diagnosis, pain and suffering, and economic losses and special damages

33. As a result of Decedent's death, Plaintiff has suffered damages, which are continuing.

34. As a proximate result of Defendants' wrongful acts and omissions, the Decedent was required to expend diverse sums of money for medical care and attention which was administered to him in attempt to cure and/or alleviate said injuries and the disabling effects resulting there from.

35. As a proximate result of Defendants' wrongful acts and omissions, the Decedent was unable to perform his usual daily tasks including but not limited to his employment.

36. As a proximate result of Defendants' wrongful acts and omissions, the Decedent was prevented from participating in activities enjoyed by others like situated in life, all of which have prevented him from enjoying the normal fruits of his existence, both socially and economically, ultimately leading to Decedent's death in March of 2024.

## **FIRST COUNT**

37. Plaintiff herein incorporates all prior paragraphs as though the same were set forth herein at length.

38. Plaintiff brings this strict liability claim against Monsanto for defective design.

39. At all times relevant to this litigation, Monsanto engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup products, which are defective and unreasonably dangerous to consumers, including the Decedent, thereby placing Roundup products into the stream of commerce. These actions were under the ultimate control and supervision of Monsanto.

BE.15243360.1/

40. At all times relevant to this litigation, Monsanto designed, researched, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the Roundup products used by Decedent, as described above.

41. At all times relevant to this litigation, Monsanto's Roundup products were manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, and, in particular, the Decedent.

42. At all times relevant to this litigation, Monsanto's Roundup products reached the intended consumers, handlers, and users or other persons coming into contact with these products in New Jersey and throughout the United States, including the Decedent, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Monsanto.

43. Monsanto's Roundup products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Monsanto were defective in design and formulation in that, when they left the hands of Monsanto's manufacturers and/or suppliers, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

44. Monsanto's Roundup products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Monsanto were defective in design and formulation in that, when they left the hands of Monsanto's manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated with their design and formulation.

45. At all times relevant to this action, Monsanto knew or had reason to know that its Roundup products were defective and were inherently dangerous and unsafe when used in the manner instructed and provided by Monsanto.

46. Therefore, at all times relevant to this litigation, Monsanto's Roundup products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Monsanto were defective in design and formulation.

47. Monsanto knew or should have known at the time of marketing its Roundup products that exposure to Roundup and specifically, its active ingredient glyphosate, could result in cancer and other severe illnesses and injuries.

48. Monsanto could have employed safer alternative designs and formulations.

49. The Decedent was regularly exposed to Monsanto's Roundup products, as described above, without knowledge of Roundup's dangerous characteristics.

50. At all times relevant to this litigation, the Decedent used and/or was exposed to the use of Monsanto's Roundup products in an intended or reasonably foreseeable manner, i.e., as a consumer, without knowledge of Roundup's dangerous characteristics.

51. The Decedent could not reasonably have discovered the defects and risks associated with Roundup or glyphosate-containing products before or at the time of exposure due to Monsanto's suppression of scientific information linking glyphosate to cancer.

52. The harm caused by Monsanto's Roundup products far outweighed their benefit, rendering Monsanto's product dangerous to an extent beyond that which an ordinary consumer would contemplate.

53. Monsanto's defective design of its Roundup products was willful, wanton, fraudulent, malicious, and conducted with reckless disregard for the health and safety of users of the Roundup products, including Decedent.

54. Therefore, as a result of the unreasonably dangerous condition of its Roundup products, Monsanto is strictly liable to Plaintiff.

55. The defects in Monsanto's Roundup products were substantial and contributing factors in causing Decedent's injuries and death. But for Monsanto's misconduct and omissions, Decedent would not have sustained his injuries.

56. As a direct and proximate result of Monsanto placing its defective Roundup products into the stream of commerce, Decedent developed Non-Hodgkin's lymphoma, and ultimately died from the disease. As a result, Plaintiff has been damaged as set forth above.

57. Monsanto is strictly liable for its actions.

**WHEREFORE,** Plaintiff demands judgment for damages against the Defendants, together with costs, disbursements of suit and interest, attorneys' fees, punitive damages, and any other relief the Court shall deem fair and just.

## SECOND COUNT

58. Plaintiff herein incorporates all prior paragraphs as though the same were set forth herein at length.

59. Plaintiff brings this strict liability claim against Defendants for failure to warn.

60. At all times relevant to this litigation, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup products, which are defective and unreasonably dangerous to consumers, including Decedent, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup and specifically, the active ingredient glyphosate. These actions were under the ultimate control and supervision of Defendants.

61. Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce Roundup products, and in the course of same, directly advertised or marketed the products to

consumers and end users, including Decedent, and therefore had a duty to warn of the risks associated with the use of Roundup and glyphosate-containing products.

62. At all times relevant to this litigation, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure Roundup products did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendants had a continuing duty to warn Decedent of the dangers associated with Roundup use and exposure.

63. Defendants could have provided warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing products because they knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

64. At all times relevant to this litigation, Defendants failed to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of its product and to those who would foreseeably use or be harmed by Roundup, including Decedent.

65. Despite the fact that Defendants knew or should have known that Roundup posed a grave risk of harm, it failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure.

66. Defendants failed to adequately warn consumers of the risks of exposure to Roundup and wrongfully concealed information concerning the dangerous nature of Roundup.

67. At all times relevant to this litigation, Roundup reached the intended consumers, handlers, and users or other persons coming into contact with these products in New Jersey and throughout the United States, including Decedent, without substantial change in its condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

68. Decedent was exposed to Roundup as set forth above, without knowledge of its dangerous characteristics.

69. At all times relevant to this litigation, Decedent used and/or was exposed to the use of Roundup while using it for its intended or reasonably foreseeable purposes, without knowledge of its dangerous characteristics.

70. Decedent could not have reasonably discovered the defects and risks associated with Roundup prior to or at the time of Decedent's exposure. Decedent relied upon the skill, superior knowledge, and judgment of Defendants to know about and disclose serious health risks associated with using the products.

71. Defendants failure to warn includes their failure to disclose known risks associated with Roundup through other non-labeling mediums, i.e., promotion, advertisements, public service announcements, and/or public information sources. Defendants did not disclose these known risks through any medium.

72. Defendants continue to fail to adequately and accurately warn of the risks of cancer associated with the use of and exposure to Roundup and its active ingredient glyphosate.

73. As a result of the Defendants inadequate warnings, Roundup products were defective and unreasonably dangerous when they left the possession and/or control of Monsanto, were distributed, and used by Decedent as set forth above.

74. Defendants are liable to Plaintiff for injuries caused to Decedent by their negligent or willful failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of its products and the risks associated with the use of or exposure to Roundup.

67. Had Defendants provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with Roundup, Decedent could have avoided the risk of developing injuries and could have obtained or used alternative herbicides.

68. As a direct and proximate result of Defendants placing Roundup into the stream of commerce, Decedent developed Non-Hodgkin Lymphoma and sustained other losses as set forth above.

69. The Defendants are strictly liable for their actions.

**WHEREFORE,** Plaintiff demands judgment for damages against the Defendants, together with costs, disbursements of suit and interest, attorneys' fees, punitive damages, and any other relief the Court shall deem fair and just.

### THIRD COUNT

70. Plaintiff herein incorporates all prior paragraphs as though the same were set forth herein at length.

71. Defendants directly or indirectly caused Roundup to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Decedent.

72. At all times relevant to this litigation, Defendants had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Roundup, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

73. At all times relevant to this litigation, Defendants had a duty to exercise reasonable care in the marketing, advertisement, and sale of Roundup products including providing accurate, true,

and correct information concerning the risks of using Roundup and appropriate, complete, and accurate warnings concerning the potential adverse effects of exposure to Roundup.

74. At all times relevant to this litigation, Defendants knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup and specifically, the carcinogenic properties of the chemical glyphosate.

75. Accordingly, at all times relevant to this litigation, Defendants knew or, in the exercise of reasonable care, should have known that use of or exposure to Roundup products could cause or be associated with Decedent's injuries and thus, created a dangerous and unreasonable risk of injury to the users of these products, including Decedent.

76. As such, the Defendants breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of the Roundup products, knew or had reason to know of the defects inherent in the products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries.

77. As such, Defendants were negligent in producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup products.

78. Defendants knew and/or should have known that it was foreseeable consumers such as the Plaintiff would suffer injuries as a result of Defendants' failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of Roundup.

79. Decedent did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Roundup or its active ingredient glyphosate.

80. Defendants' negligence was the proximate cause of Decedent's injuries and death.

81. As a proximate result of Monsanto's negligence, as alleged herein, there was a measurable and significant interval of time during which Decedent suffered great mental anguish, other personal injury and damages, and ultimately his death.

82. As a direct and proximate result of Defendants' negligence, Decedent developed Non-Hodgkin Lymphoma and sustained other losses as set forth above.

**WHEREFORE,** Plaintiff demands judgment for damages against the Defendants, together with costs, disbursements of suit and interest, attorneys' fees, punitive damages, and any other relief the Court shall deem fair and just.

## FOURTH COUNT

84. Plaintiff herein incorporates all prior paragraphs as though the same were set forth herein at length.

85. At all times relevant to this litigation, Defendants engaged in the business of testing developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup products, which are defective and unreasonably dangerous to consumers, including the Decedent, thereby placing Roundup products into the stream of commerce.

86. At all times relevant to this litigation, Defendants impliedly warranted to its consumers including the Decedent, that Roundup products were of merchantable quality and safe and fit for the use for which they were intended; specifically, as agricultural herbicides.

87. Defendants, however, failed to disclose that Roundup has dangerous propensities when used as intended and that use of and/or exposure to Roundup and glyphosate-containing products carries an increased risk of developing severe injuries and death, including Decedent's cancer.

88. Decedent was the intended beneficiary of the implied warranties made by the Defendants.

89. At all times relevant to this litigation, Decedent was a foreseeable user of Roundup.

90. Defendants intended the Roundup products be used in the manner in which Decedent in fact used them and which Defendants impliedly warranted each product to be of merchantable quality, safe, and fit for this use.

91. In reliance upon Defendants' implied warranty, Decedent used Roundup as instructed and labeled and in the foreseeable manner intended, recommended, promoted and marketed by Defendants.

92. Defendants breached their implied warranty to the Decedent in that Roundup products were not of merchantable quality, safe, or fit for their intended use.

93. The harm caused by Roundup products far outweigh their benefit, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

94. As a direct and proximate result of Defendants' breach of implied warranty, Decedent developed Non-Hodgkin Lymphoma and sustained other losses as set forth above.

**WHEREFORE,** Plaintiff demands judgment for damages against the Defendants, together with costs, disbursements of suit and interest, attorneys' fees, punitive damages, and any other relief the Court shall deem fair and just.

### FIFTH COUNT

95. Plaintiff herein incorporates all prior paragraphs as though the same were set forth herein at length.

96. Monsanto has special knowledge skill and expertise germane to herbicides and their design, manufacture testing, and marketing.

97. At all times relevant, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup products,

which are defective and unreasonably dangerous to consumers, including Decedent, thereby placing Roundup products into the stream of commerce.

98. Defendants expressly represented and warranted to the Decedent and other consumers and users, that Roundup products were safe to human health and the environment, effective, fit, and proper for their intended use.

99. Defendants advertised, labeled, marketed, and promoted Roundup products, representing the quality to consumers and the public in such a way as to induce purchase or use, thereby making an express warranty that its Roundup products would conform to the representations.

100. Defendants' actions breached their express warranties to the Decedent.

101. Decedent justifiably and detrimentally relied on the express warranties and representations of Defendants in the purchase and use of Roundup products.

102. As a direct and proximate result of Defendants' breach of these express warranties, Decedent developed Non-Hodgkin Lymphoma and sustained other losses as set forth above.

**WHEREFORE,** Plaintiff demands judgment for damages against the Defendants, together with costs, disbursements of suit and interest, attorneys' fees, punitive damages, and any other relief the Court shall deem fair and just.

## SIXTH COUNT

103. Plaintiff repeats and realleges the allegation of prior paragraphs as if fully set forth herein.

104. Defendants were liable for their actions as set forth above. As a result the Defendants' actions, Decedent developed Non-Hodgkins Lymphoma which ultimately caused his death in March 2024.

105. At the time of Decedent's death, he was 82 years of age, having an extended life expectancy.

106. As direct and proximate result of Defendants' actions as set forth above, Decedent sustained serious personal injuries causing his death.

107. As direct and proximate result of Defendants' actions as set forth above, Plaintiff sustained pecuniary damages.

108. As direct and proximate result of Defendants' actions as set forth above, Plaintiff sustained pecuniary damages including but not limited to funeral and medical expenses.

109. As direct and proximate result of Defendants' actions as set forth above, Plaintiff sustained damages including but not limited to the loss of Decedent's assistance, care, guidance, companionship, support and counsel.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally for damages, disbursements of suit and interest, attorneys' fees, pecuniary damages, and any other relief the Court shall deem fair and just.

## SEVENTH COUNT

110. Plaintiff repeats and realleges the allegation of prior paragraphs as if fully set forth herein.

111. As a result of Defendants' actions as set forth above, Decedent developed Non-Hodgkin Lymphoma. The aforesaid injuries caused him to undergo serious and debilitating cancer treatment; caused Decedent great pain and suffering, and significantly impacted Decedent's life until the time of his death.

112. As direct and proximate result of Defendants' actions, Plaintiff is entitled to damages for Decedent's hospital and medical expenses, disability and impairment, loss of enjoyment of life, and pain and suffering which the Decedent sustained between developing Non-Hodgkin Lymphoma and the time of his death.

BE.15243360.1/

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally for damages, disbursements of suit and interest, attorneys' fees, pecuniary damages, and any other relief the Court shall deem fair and just.

## EIGHTH COUNT

113. Plaintiff herein incorporates all prior paragraphs as though the same were set forth herein at length.

114. Monsanto's conduct as alleged herein was done with oppression and malice. Monsanto was fully aware of Roundup's safety risks. Nonetheless, Monsanto deliberately crafted its label, marketing, and promotion to mislead consumers, including the Decedent.

115. This was accomplished through misleading labeling, and a comprehensive scheme of selective fraudulent research and testing, misleading advertising, and deceptive omissions as set forth herein.

116. Decedent was unable to make an informed decision about whether to purchase and use Roundup as set forth above. Monsanto's conduct was done with conscious disregard of Decedent's rights.

117. Based on the foregoing, Plaintiff requests punitive damages against Monsanto for the harms caused as set forth above.

**WHEREFORE**, Plaintiff demands judgment for damages against the Defendants, together with costs, disbursements of suit and interest, attorneys' fees, punitive damages, and any other relief the Court shall deem fair and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all the issues raised in the within pleadings.

*s/ Anthony M. Juliano*
Anthony M. Juliano, Esq.
(ajuliano@bracheichler.com)
BRACH EICHLER LLC
101 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-5700
Facsimile: (973) 618-5554
*Attorneys for Plaintiff*
