UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>*Beavers Jr. v. Monsanto Co.*, Case No. 20-cv-08799-VC<br><br>*Gonzales v. Monsanto Co.*, Case No. 20-cv-06198-VC<br><br>*Rolish v. Monsanto Co.*, Case No. 20-cv-01421-VC | **PRETRIAL ORDER NO. 292: ORDER GRANTING MOTIONS TO EXCLUDE EXPERTS ROSENBAUM, MURPHY, AND HAMID**<br><br>Re: Dkt. Nos. 17605, 17610, 17611 |

Monsanto's motion to exclude the testimony of Dr. Christopher Rosenbaum in the *Beavers* case is granted. So are Monsanto's unopposed motions to exclude Dr. Claire Murphy in the *Gonzales* case and Dr. Omid Hamid in the *Rolish* case. This order assumes a familiarity with the Court's prior orders on general and specific causation and the Ninth Circuit's opinion in *Hardeman*. *See generally, e.g., In re Roundup Products Liability Litigation*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018) (Pretrial Order No. 45, Dkt. No. 1596); *In re Roundup Products Liability Litigation*, 358 F. Supp. 3d 956 (N.D. Cal. 2019) (Pretrial Order No. 85, Dkt. No. 2799); *Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021).

I

Dr. Christopher Rosenbaum is the Attending Emergency Physician and Director of Medical Toxicology for Newton-Wellesley Hospital, as well as the Attending Emergency

Physician at the VA Medical Center in Roxbury, Massachusetts. Rosenbaum is board-certified in emergency medicine, and he has a certification in the "medical toxicology" subspeciality from the American Board of Emergency Medicine. *See* Rosenbaum CV (Dkt. No. 17739-3) at 2. He is also Assistant Clinical Professor in the Department of Emergency Medicine at Tufts University School of Medicine. *Id.*

Monsanto argues, first, that Rosenbaum is unqualified to offer specific causation testimony in this case. The Court agrees. Rosenbaum is a highly qualified emergency medicine physician, but he is not an oncologist or a pathologist, nor does he have any apparent expertise in assessing the causes of NHL or of cancer more generally. Rosenbaum does not diagnose patients with NHL as part of his regular practice—he testified that was usually done by a pathologist or an oncologist. *See* Rosenbaum Dep., Def.'s Ex. A (Dkt. No. 17611-2) at 39:6–41:14. He may treat patients with NHL who present to the emergency room with symptoms or with complications related to their treatment, but this is not really the same as practicing oncology, as Rosenbaum all but conceded in his deposition. *See id.* at 40:25–41:5 ("Q: So if I were to ask you whether you formally diagnose non-Hodgkin's lymphoma and/or treat non-Hodgkin's lymphoma with chemotherapy, radiation, that type of thing, would you agree that that's something you do not typically do? A: Correct. I would agree with that statement."). Rosenbaum is trained in medical toxicology and has published and presented in this area, but it appears that his focus has been on matters of drug use and other kinds of acute toxicity—the kind of thing that would be of interest to an emergency medicine doctor—not on the kind of long-term occupational exposure to environmental carcinogens that's alleged in this litigation. *See* Rosenbaum CV at 7–13.

It matters little, if at all, that "Dr. Rosenbaum is not a weed scientist or expert in pesticide labeling"; nor does it matter that he isn't specially trained in epidemiology, since he isn't offering a general causation opinion. Mot. at 9–10. The problem is that the plaintiff hasn't demonstrated that Rosenbaum has a kind of training or experience that would qualify him to offer a differential diagnosis in this case. To offer a competent differential diagnosis, it is necessary that the specific causation experts explain why a plaintiff developed the cancer that

they did. To do so, they have to be qualified to assess the causes of NHL. Their qualifications might involve training as an oncologist, pathologist, or another medical specialty relevant to NHL, along with clinical experience treating patients with the disease. Or, even better, their qualifications might be aimed not (or not only) at treating diseases, but at actually determining what caused them. Here, the plaintiff has not carried her burden to show that Rosenbaum is qualified in these ways. Her defense of Rosenbaum's qualifications mainly involves comparing them to the qualifications of Monsanto's specific causation expert, but that isn't how Rule 702 works—each expert is evaluated on their own merits. Rosenbaum's expert report also doesn't tend to suggest that he is qualified. The report demonstrates no knowledge of NHL or of non-glyphosate risk factors for the cancer. It doesn't even discuss NHL except in relation to glyphosate. *See generally* Rosenbaum Report, Pl.'s Ex. 3 (Dkt. No. 17739-4) at 2–8.

To be qualified, a specific causation expert in this litigation does not necessarily have to be a world-renowned hematopathologist. But the proponent of the specific causation testimony must at least demonstrate, in one way or another, that the expert is qualified to assess the causes of a particular patient's NHL. That is the essence of the testimony. The plaintiff has not shown that Rosenbaum—an emergency medicine physician with only incidental experience treating NHL—meets that standard. *See, e.g. Gunaratna v. Dennis Gross Cosmetology LLC*, No. CV-20-2311-MWF-GJSX, 2023 WL 2628620, at *10 (C.D. Cal. Mar. 15, 2023) ("Courts regularly find that an expert's qualifications in one field do not automatically translate to qualification to opine in a separate field, even if those fields are related in some general sense."); *In re Zicam Cold Remedy Marketing, Sales Practices, & Product Liability Litigation*, No. 09-MD-2096-PHX-FJM, 2011 WL 798898, at *12 (D. Ariz. Feb. 24, 2011) ("Although Rule 702, Fed. R. Evid., classifies experts broadly, at least some relevant background is required. Dr. Davis has no academic training or clinical experience in pharmaceutical efficacy.").

Second, even if Rosenbaum were qualified to perform a differential diagnosis in this case, he has not done so reliably. Although Rosenbaum's expert report uses the term "differential diagnosis" and explains what the term means, there is little to show that he actually performed

3

one. When conducting a differential diagnosis, "a physician 'rules in' all potential causes of a disease, 'rules out' those for 'which there is no plausible evidence of causation, and then determines the most likely cause among those that cannot be excluded.'" *Hardeman*, 997 F.3d at 953 (quoting *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1234 (9th Cir. 2017)).

A single paragraph of Rosenbaum's expert report contains the entirety of the relevant analysis. *See* Rosenbaum Report at 7. The paragraph states that "the only cause that I could determine for Plaintiff's [NHL] is exposure to Glyphosate." *Id.* But Rosenbaum does not actually "rule in" any possible alternative causes—he doesn't even name any. Nor does he discuss the substance of the plaintiff's medical records or cite any literature to support his conclusions about the alternative causes that he purports to have ruled out (or declined to rule in). *See* Rosenbaum Dep. at 215:9–14 (conceding that obesity is a risk factor for NHL that was not "written in the report"); *id.* at 217:13–20 (stating, in response to question about the plaintiff's family history of cancer, that he "neither ruled it in nor ruled it out"); *see also Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1198 (9th Cir. 2014) ("When an expert rules out a potential cause in the course of a differential diagnosis, the "expert must provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation.").

Nor do the materials on which Rosenbaum relied in forming his opinion suggest that it was rendered in a reliable, scientifically sound way, rather than in a purely results-oriented one. Aside from discovery material related to the plaintiff (medical records, deposition testimony, etc.), Rosenbaum appears to have examined only materials that were prepared for, or generated by, Roundup litigation. *See* Rosenbaum Report at 12–14. Rosenbaum notes that he conducted his research on glyphosate by looking to this Court's orders on general causation and, especially, the approach taken by the admissible general causation experts. *See id.* The report cites no scientific studies directly; instead, it seems to have looked at the literature as filtered through the views of current and former experts, court opinions, and even the parties' briefing. *See id.* at 13 (listing "Monsanto Company's Supplemental Memorandum of Points and Authorities Regarding

4

Andreotti, et al." among the materials considered, but not the Andreotti study itself—or any other study). The report even uses a long block quote from the Ninth Circuit's decision in *Natural Resources Defense Council v. U.S. EPA*, 38 F.4th 34 (9th Cir. 2022), to explain what glyphosate is and how it is absorbed in the body. *See* Rosenbaum Report at 4–5. Specific causation experts can rely on admissible general causation testimony to rule in glyphosate, but the fact that Rosenbaum's scientific information comes almost exclusively from litigation materials and court opinions casts doubt on his reliability.

Finally, as already noted, Rosenbaum claims to rely on his clinical experience in rendering his opinion, but his clinical experience isn't very relevant to his opinion. It's one thing for an experienced oncologist or pathologist to draw on their experience diagnosing and treating lymphomas when they conduct a differential diagnosis.[1] It's another for a doctor to claim to do so when his clinical experience has little to do with treating lymphomas, diagnosing them, or determining their causes.

## II

Monsanto also moves to exclude Dr. Claire Murphy, a specific causation expert in the *Beavers* case, and Dr. Omid Hamid, a specific causation expert in the *Gonzales* case. Neither plaintiff filed any opposition to Monsanto's motions. "The proponent of expert testimony has the burden of proving admissibility in accordance with Rule 702," so the Court will grant the motions in light of the plaintiffs' failure to respond. *San Francisco Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1085, 1091 (N.D. Cal. 2022). Murphy and Hamid are excluded.

## III

Monsanto has not filed a motion for summary judgment in any of these three cases, but it appears that summary judgment should be granted given the absence of any expert testimony on

---

[1] The Court continues to wonder about the Ninth Circuit caselaw that seems to require deferring to medical clinicians when they conduct differential etiologies—something most do not do as part of their clinical practice. See Pretrial Order No. 288 (Dkt. No. 17504) at 11 n.6; Pretrial Order No. 289 (Dkt. No. 17841) at 5 n.4. But if clinical experience is part of the reason for deference, it would at least seem to follow that the clinician's experience should be relevant to the disease whose cause he is evaluating.

specific causation. The parties should file a letter within seven days of this ruling which states whether, in light of this ruling, the Court should file a suggestion of remand or enter summary judgment for Monsanto based on the absence of expert testimony on specific causation.

**IT IS SO ORDERED.**

Dated: May 17, 2024

VINCE CHHABRIA
United States District Judge