UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
|---|---|
| | Case No. 16-md-02741-VC |
| This document relates to: | **ORDER GRANTING MOTIONS TO WITHDRAW AS ATTORNEY** |
| *Bray v. Monsanto Co.*, Case No. 19-cv-05060-VC | Re: Dkt. Nos. 18312, 18313 |
| *Holden v. Monsanto Co.*, Case No. 19-cv-05085-VC | |

On June 6, 2024, the Court held a Zoom hearing on these two motions to withdraw, which were filed by Kristy M. Arevalo of the McCune Law Group. The concerns that led the Court to hold the hearing are detailed in a prior order. *See* Dkt. No. 18478.

At the hearing, the Court heard from Arevalo about the circumstances surrounding her withdrawal from these cases, as well as about the status of other cases she is litigating in this MDL. Arevalo said that difficulties arose with the *Bray* case because her firm was unable to find a specific causation expert who was willing to opine that Roundup caused Beverly Bray's NHL. She suggested that Bray wanted to proceed anyway, and that when she was advised that it would be better to take the Special Master's settlement offer, Bray accused her attorneys of colluding with Monsanto. The withdrawal in the *Holden* case seems to have arisen from a more mundane issue: Arevalo says the plaintiff and his wife essentially refused to sit for depositions, including when they were warned that their counsel would be forced to withdraw as a result. With respect to the McCune firm's other cases, Arevalo said that she had diligently worked to procure expert

reports for them and that—aside from the *Bray* and *Holden* cases—she had recently agreed to settle her firm's entire "inventory" of Roundup cases. She denied that she has been forced to settle her cases on the cheap because the firm had taken on more clients than it could competently represent. Instead, she said that according to Monsanto, her firm had secured among the highest average per-case settlement values of any firms that reached similar "inventory"-wide settlement agreements. Arevalo stated that her clients (aside from Bray and Holden, who aren't part of the deal) have all agreed to take that settlement, at least in principle.

      The Court also ensured that the plaintiffs in the *Bray* and *Holden* actions were notified of the hearing and of their right to speak at it. Only Beverly Bray appeared. Although a bad Zoom connection prevented her from addressing the Court, she was given the opportunity to submit a letter addressing two issues: first, whether she opposed the motion to withdraw, and second, whether there was anything else she wanted the Court to know about her case. Bray's email is appended to this order as Exhibit A.

      Having considered the matter carefully, the Court grants the motions to withdraw. Ultimately, the Court does not have enough information to meaningfully assess its concerns about the McCune firm's cases. Bray's letter suggests that the firm probably did a bad job of communicating with her, but it mostly tracks with Arevalo's account of events. With the Holdens, it seems like the problem is just their unwillingness to participate in their case. With Bray, it seems like the problem started with the firm's trouble finding an expert. Then there seems to have been a breakdown in the attorney-client relationship.

      Bray clearly still wants to litigate her case, but says she is having trouble finding new counsel. Plaintiffs' lead counsel are directed to provide Bray with a copy of this order and to work with Bray to try to find someone to represent her. Lead counsel shall file a notice no later than August 1, 2024, updating the Court on the status of its efforts to find counsel for Bray. A separate order will issue in the *Holden* case (where the plaintiffs don't seem to oppose the withdrawal).

      All of that said, the Court remains concerned that some plaintiffs' firms are taking on

more MDL cases than they are capable of competently litigating, and that as a result they end up getting worse outcomes for their clients. (Indeed, plaintiffs' lead counsel agreed that this was happening with some firms.) The Court will be watching for signs of this, and it encourages lead counsel to bring any such signs to the Court's attention.

**IT IS SO ORDERED.**

Dated: June 18, 2024

                                                  VINCE CHHABRIA
                                                  United States District Judge