UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>*Beckfield v. Monsanto Co.*, Case No. 21-cv-05322-VC | **ORDER GRANTING MOTION TO EXCLUDE EXPERT CHRISTOPHER VOGEL**<br><br>Re: Dkt. Nos. 17607, 17609 |

Monsanto's motion to exclude the testimony of Dr. Christopher F. A. Vogel is granted.[1] This order assumes a familiarity with the Court's prior orders on general and specific causation and the Ninth Circuit's opinion in *Hardeman*. *See generally, e.g., In re Roundup Products Liability Litigation*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018) (Pretrial Order No. 45, Dkt. No. 1596); *In re Roundup Products Liability Litigation*, 358 F. Supp. 3d 956 (N.D. Cal. 2019) (Pretrial Order No. 85, Dkt. No. 2799); *Hardeman v. Monsanto Company*, 997 F.3d 941 (9th Cir. 2021).

In an order late last year, the Court observed that "a sentiment may have developed in this MDL that because some general and specific causation opinions have now been admitted, additional experts can get through the *Daubert* gate with a casual wave of the hand." Pretrial Order No. 288 (Dkt. No. 17504) at 12. The plaintiff's effort here seems to be the product of that

---

[1] Monsanto has also moved to exclude the testimony of Kent Jayne, an expert who opines about damages issues. This motion is denied without prejudice. The Court has previously ruled that that the admissibility of non-causation expert testimony should be decided by the transferor court after remand. *See* Pretrial Order No. 202 (Dkt. No. 9143).

sentiment. The opposition brief consists largely of lengthy block quotations from Vogel's expert report and unelaborated citations to the entirety of the Court's past *Daubert* orders. The brief simply ignores Monsanto's arguments about certain key issues. This alone is reason to exclude Vogel. But as explained below, even if the plaintiff's counsel did more than make cookie-cutter assertions in his opposition brief, the Court would grant the motion to exclude.

I

Dr. Vogel is a Research Professor in the Department of Environmental Toxicology and Center for Health and the Environment at the University of California, Davis. He holds a Ph.D. in toxicology from the Heinrich-Heine-University in Düsseldorf, Germany.

Vogel has been designated as an expert on specific causation, and he opines that Roundup caused Brett Beckfield's NHL. But Vogel also offers a comprehensive general causation analysis, and the opinion "that glyphosate is capable of causing NHL in humans." *See* Vogel Report (Dkt. No. 17609-3) at 3–10, 11. Unlike other specific causation experts (including Dr. Knopf, the plaintiff's other causation expert), Vogel does not purport to rely on the admissible general causation opinions of any other experts in this litigation, nor does he cite them in his expert report. *See generally id.* That means Vogel's specific causation opinion depends on his own general causation opinion, since that's his only basis for "ruling in" Roundup as a potential causative factor of Beckfield's cancer. *See* Pretrial Order No. 85 at 2; *see also Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057–58 (9th Cir. 2003).

It's necessary to clarify this up front because the plaintiff's response brief treats Vogel as if he were purely a specific causation expert and ignores Monsanto's arguments about the unreliability of his general causation opinion. To the extent it might *arguably* address the Monsanto's attack on the general causation opinion, the opposition brief suggests that Monsanto is improperly rehashing old arguments. *See* Opposition re: Vogel at 13 (citing Pretrial Order No. 45). But that is obviously insufficient, since each expert has to stand on their own, at least to the extent they purport to offer an independent analysis. The standards set out in Pretrial Order No. 45 certainly apply to Vogel, but it is up to the plaintiff to show that his testimony meets them.

Beckfield doesn't even attempt to do so.

At any rate, even reviewing Vogel's report and deposition testimony without any assistance from the plaintiff, he has not offered an admissible general causation opinion. To do so, an expert must offer "independent and relatively comprehensive opinions that the epidemiological and other evidence demonstrates glyphosate causes NHL in some people who are exposed to it." Pretrial Order No. 45 at 3. The admissibility of any opinion that Roundup, in general, is capable of causing NHL has always been a "very close question." *Id.* at 1. Reliably offering such an opinion requires a serious engagement with the relevant literature: general causation experts must be able to "assess whether a study is credible, to explain why they relied on one study more than another, and to articulate how they reached their conclusion in the face of conflicting evidence." Pretrial Order No. 288 at 5; *see also* Pretrial Order No. 45 at 35.

Vogel's general causation opinion does not meet this standard. The deepest problem is that neither Vogel's report nor his deposition testimony explains how he assessed the conflicting evidence in reaching his confident conclusion. For example, Vogel agreed that the Andreotti study was the largest human epidemiological study, and the only cohort study. Vogel Dep. (Dkt. 17609-2) at 204:1-205:12. He also agreed that the study doesn't support the view that glyphosate causes NHL. *Id.* at 213:17-21. But he offers no explanation for why he discounted the results of this study and instead preferred the results of certain case-control studies. Indeed, Andreotti is mentioned in only one place in his expert report, where Vogel incorrectly says that "Andreotti et al. (2018) . . . reported only a borderline statistic for the association of NHL and glyphosate."[2] Vogel Report at 4.

Vogel also acknowledged that his analysis, at least where it addressed the human epidemiological evidence, relied in large part on the McDuffie and Eriksson studies for its

---

[2] It isn't defensible to describe the Andreotti results as "borderline," when in fact the study reports statistically insignificant risk ratios between 0.83 and 0.88 at all levels of exposure that it measured. *See* Vogel Dep. at 212:15–24. Unlike past plaintiffs' experts, who have justified their decisions to give less weight to Andreotti by offering methodological critiques of the study and the way its results are reported, Vogel seems to either misread it or simply ignore it.

3

conclusion that glyphosate is carcinogenic. Vogel Dep. at 213:22–214:1. But Vogel was unable to offer any cogent account of how he had taken these studies' limitations into account. Vogel agreed that the McDuffie data was unadjusted for the use of other pesticides, and that there was a chance its results could be the product of confounding. *Id.* at 228:11–229:2. But he makes no mention of this fact in his expert report, and he did not explain why he nevertheless found the study persuasive. *See generally* Vogel Report. When questioned about the Hohenadel study—which examined the same dataset as McDuffie but attempted to control for the use of other pesticides—Vogel agreed that the results suggested that the McDuffie results were being driven by malathion, another pesticide, rather than glyphosate. Vogel Dep. 233:3–7. But he repeatedly resisted the conclusion that this undermined the McDuffie study, despite being unable to give any coherent reasons for taking this position. *See id.* at 234:3–239:7. Instead, he made unsupported suggestions about problems with the reliability of the questionnaire responses underlying the data—something which, if true, should undermine confidence in *both* studies, not just Hohenadel—and erroneously suggested that one couldn't be sure how many subjects had used which pesticides. *See id.*

Lastly, aside from McDuffie and Eriksson, Vogel's reading of the epidemiological evidence seems to be driven heavily by the Zhang meta-analysis's headline "meta-risk ratio." *See* Vogel Report at 4–5. But the Zhang meta-analysis is junk science, as the Court has recently discussed at length. *See* Pretrial Order No. 293 (Dkt. No. 18661). A reliable general causation expert cannot substitute an uncritical reliance on Zhang's meta-risk ratio for a critical engagement with the epidemiological evidence.

Similar problems affected Vogel's analysis of other portions of the literature. For example, he approached the animal study data through Dr. Portier's summary re-analysis of the animal study results rather than through the underlying studies, whose authors reached different conclusions than Portier. Vogel acknowledged the different conclusions but couldn't explain why he hadn't relied on the original studies or why he found Portier's re-analysis more persuasive. *See* Vogel Dep. at 247:11–21, 254:10–256:1. That's a mark of unreliability. *See*

4

Pretrial Order No. 288 at 3–4 ("Charles reported and relied on the results of animal studies and genotoxicity studies without reading the studies or the published papers describing those studies. He read only the summaries generated by other organizations for their reports about glyphosate. . . . Yet, despite relying entirely on their summaries of the studies, Charles reached different conclusions about what the studies mean for causation, and without ever explaining where he thinks those organizations went wrong in their reasoning.").[3]

Finally, Vogel seemed to be unfamiliar with portions of the relevant literature. Some studies, like the Crump reanalysis of the animal data or the Hohenadel study discussed above— all of which were unfavorable to the plaintiff's position—were simply omitted from his report without explanation. Others were cited or discussed in his expert report, but Vogel nevertheless struggled to recall what they said or what he thought about them. *See, e.g.*, Vogel Dep. at 162:5–23; 244:23–245:6.

In short, Vogel "did not demonstrate that he engaged in his own objective analysis of the epidemiologic literature." Pretrial Order No. 45 at 62. Instead, he seems to have "cherry-picked the findings of the epidemiology studies," in that he uncritically deemed results that supported his conclusion to be persuasive and discounted results that did not. Pretrial Order No. 288 at 2–3. In his deposition, "he was unable to explain why he selected certain data points and not others, or why the contrary data points didn't sway him," and he failed to grapple with the limitations of the studies on which he did rely heavily. *Id.* at 3. When faced with evidence that contradicted his conclusions, Vogel generally dithered or doubled down without offering any coherent reasons why he remained persuaded by his original position. All of this suggests an unreliable results-oriented approach rather than an objective analysis of the literature.

Accordingly, Vogel's opinion that glyphosate is capable of causing NHL in humans is excluded.

---

[3] At one point Vogel suggested that he had looked at some the underlying animal studies, but then he couldn't remember which, if any, he had actually reviewed, and they aren't listed as references in his expert report. *See* Vogel Dep. at 245:21–246:1; Vogel Report.

II

It follows that Vogel's specific causation opinion must also be excluded. Without being able to offer his general causation opinion, Vogel has no basis for "ruling in" Roundup as a causal factor in Beckfield's case, so he can't conclude that Roundup was what actually caused Vogel's NHL. *See Clausen*, 339 F.3d at 1057–58 ("The issue at this point in the process is which of the competing causes are generally capable of causing the patient's symptoms or mortality. Expert testimony that rules in a potential cause that is not so capable is unreliable.").

There is a second, independent reason for excluding Vogel's specific causation opinion, which is that he is unqualified to offer it. "To be qualified, a specific causation expert in this litigation does not necessarily have to be a world-renowned hematopathologist. But the proponent of the specific causation testimony must at least demonstrate, in one way or another, that the expert is qualified to assess the causes of a particular patient's NHL. That is the essence of the testimony." Pretrial Order No. 292 (Dkt. No. 18367) at 3.

The plaintiff has not shown that Vogel meets that standard. Vogel is a toxicologist whose research focuses on mechanistic toxicology, and in his research he primarily works with *in vitro* animal cells, not human cells. *See* Vogel Dep. at 40:15–24 ("[Q:] It's true you are not an oncologist, right? A: That is right. Q: And you don't treat cancer? A: I don't treat cancer. Q: You don't diagnose cancer in people? A: No. Q: You don't look at slides of cancer cells to identify what type of cancer people have? A: Not from human, but from mouse model. We have a mouse model."). When asked if lymphoma in mice was the equivalent of lymphoma in humans, Vogel said he didn't know, and that you'd have to ask an MD. *Id.* at 49:18–50:7. In short, Vogel essentially admitted that he is not an expert in assessing the causes of a human lymphomas, and that in the course of his research he always consults with oncologists or other experts when it comes to human lymphomas. *See* Vogel Dep. at 40:12–41:10; 49:7–50:15; 52:12–53:5, 69:17–24.

Vogel's testimony is excluded in its entirety.

6

## III

An admissible opinion on general causation is necessary for a plaintiff in this MDL to survive summary judgment. It appears that Beckfield's only other retained expert on causation is Dr. Kevin Knopf, who opines solely on specific causation.[4] But Beckfield's Rule 26 Disclosures say that he "incorporates by reference the general causation and other expert reports served by lead counsel in connection with Waves 1, 2, 3, and 4 and reserves the right to call the author of any such report as an expert witness at trial." Beckfield Rule 26 Disclosures at 5.

Whether Beckfield's case survives—and whether it's necessary for the Court to rule on Knopf's testimony—will depend on whether Beckfield could call an admissible general causation expert at trial on this basis. The Court hasn't confronted a situation like this before in the MDL and would like to discuss the matter with the parties. Accordingly, a CMC in this case is set for July 11 at 2 P.M. If it ends up being necessary to rule on Knopf, the Court may hold a *Daubert* hearing on him.

**IT IS SO ORDERED.**

Dated: June 20, 2024

VINCE CHHABRIA
United States District Judge

---

[4] Contrary to Beckfield's suggestion in the briefing on Knopf, Knopf does not offer an independent general causation opinion—his report expressly disavows any intention to do so. *See* Knopf Report (Dkt. No. 17600-3) at 9.