James H. Cook, (IA AT0001622; CA 131772)
JSC Legal
1205 Technology Parkway
Cedar Falls, IA 50613
319-260-4471
jcook@duttonfirm.com

*Counsel for Plaintiff*
*Brett Beckfield*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: Roundup Products Liability Litigation | MDL No. 2741 |
| **This Document Relates to:** | Case No.: 3:16-md-02741-VC |
| *Brett Beckfield v. Monsanto Company*<br>*Case No. 3:21-cv-05322* | **PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF KEVIN KNOPF, M.D., M.P.H.** |

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MONSANTO
COMPANY'S MOTION TO EXCLUDE TESTIMONY OF KEVIN KNOPF, M.D., M.P.H.

## I. INTRODUCTION

Plaintiff Brett Beckfield ("Beckfield") respectfully submits this Supplemental Memorandum in Opposition to Monsanto Company's Motion to Exclude Testimony of Kevin Knopf, M.D., M.P.H. ("Dr. Knopf"). Pursuant to the Court's instruction, Plaintiff has identified those specific areas of Dr. Knopf's testimony and the record, which show that his methodology (a) generally accounts for exposures to pesticides that can cause non-Hodgkin's Lymphoma ("NHL") and (b) properly does not rule-in Beckfield's comparatively minimal exposure to three discrete herbicides, atrazine, Dual, and Lasso, where there is no record evidence any of them is a potential cause of NHL, and where none of Defendant's experts considers them a potential cause, either. It is important in assessing the adequacy of Dr. Knopf's methodology to keep in mind the goal of Rule 702, which is to ensure, to the extent possible, that an expert's opinions are reliable. Where, as here, there is no record evidence that the pesticides in question were either potential causes of NHL, nor that Beckfield was exposed to them in any significant way, exclusion of Dr. Knopf's entire opinion because of a failure to discuss the pesticides in his report would put form over substance, as even had Dr. Knopf discussed them, they could not have resulted in any change to Dr. Knopf's opinions.

## II. DISCUSSION

### A. Dr. Knopf's Review of Beckfield's Personal and Professional History Establishes He Considered Plaintiff's Limited Exposure to Atrazine, Dual, and Lasso Herbicides and Properly Did Not Rule Them In.

As a threshold matter, it is clear that Dr. Knopf knew of Beckfield's limited exposure to herbicides other than Roundup. The record establishes that Dr. Knopf explicitly considered Beckfield's Plaintiff Fact Sheet (PFS), deposition, and medical records – all of which discuss Plaintiff's exposure to pesticides, atrazine, Dual, or Lasso. *See* Ex. 1[1], Knopf Rpt., dated Aug. 22, 2022 ("Knopf Rpt.") at 2; Ex. 2, Dep. of Kevin Knopf, M.D., M.P.H., dated Oct. 25, 2022 ("Knopf

---

[1] Ex. __ refers to exhibits to the Declaration of James Cook, dated Sept. 10, 2024, filed herewith.

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF KEVIN KNOPF, M.D., M.P.H.
1

Dep.") at 152:18-153:7, and Exhibit 7 to that deposition.[2] Further, Dr. Knopf also reviewed Monsanto's experts' reports, which discuss Beckfield's exposure to these herbicides. Ex. 2, Knopf Dep. at 109:3-17. Given Monsanto's criticism of Dr. Knopf, it is important to note that just like Dr. Knopf, *none* of Defendant's *own* experts considered Plaintiff's exposure to atrazine, Lasso, and Dual to be substantial, nor do any of them discuss or opine that such exposure is a potential cause of Beckfield's NHL. *See*, *generally*, Monsanto expert reports at Exs. 3 and 4.

For example, in defense expert Nathan Boyd, M.D.'s report, the entire description of Beckfield's exposure to atrazine, Dual, and Lasso is contained in a single short paragraph, and illuminates the dearth of evidence showing any meaningful exposure to those pesticides:

> Mr. Beckfield recalls that they applied atrazine on the family farm, **but his father handled that application** (page 74). He estimates that they would have used Atrazine every year when planting corn, but he was **uncertain of the frequency** (page 75) and **cannot remember the method of application** (page 76). They also used Lasso many times (page 76) and Dual (page 77), but **Mr. Beckfield does not remember frequency of use or method of application** for those products either (page 77).

Ex. 3, Boyd Supp. Rept. at 43 (emphasis added). This paragraph contains the only mention of these pesticides by Dr. Boyd; he never discusses them as a potential cause of Beckfield's NHL. By contrast, Dr. Boyd's description of Beckfield's extensive Roundup use alone spans seven pages and mirrors Dr. Knopf's estimate that Beckfield used Roundup for over 500 days. *Id.* at 42-49.

**B.     Dr. Knopf Generally Considers Pesticide Exposures in his Differential Etiology.**

Monsanto seizes upon Dr. Knopf's comment in his deposition that he was less familiar with the data regarding atrazine to suggest that he did not actually consider pesticide/herbicide exposures as part of his methodology. This is false. Dr. Knopf stated repeatedly in his deposition that he considers a plaintiff's exposure to pesticides/herbicides in general as a potential cause of lymphoma. *See* Ex. 2, Knopf. Dep. at 16:3-17:13; 18:14-20; 26:15-27:4; 65:7-22; 121-24-122:7,

---

[2] Whether by mistake or design, Monsanto's Counsel suggested during Dr. Knopf's deposition that his report did not reference the Plaintiff-specific materials he considered. *See* Knopf Dep. at 87:14-88:22. This suggestion is plainly inaccurate. *See* Knopf. Rpt. at 2 ("I also reviewed Mr. Beckfield's deposition, the deposition of Gloria Jean Thomas, and Plaintiff Fact Sheets.")

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MONSANTO
COMPANY'S MOTION TO EXCLUDE TESTIMONY OF KEVIN KNOPF, M.D., M.P.H.
2

1   125:22-126:11. He also affirmed his awareness of Beckfield's exposure to atrazine. *Id.* at 136:19-137:137:1, belying Monsanto's contention that he completely ignored or missed Beckfield's exposure to pesticides. The issue here is that these alternative exposures were so limited in comparison to Beckfield's Roundup use that, as Dr. Knopf testified at the hearing, he did not think that they warranted specific inclusion in his report at the time of its writing.

Comparing this with, for example, Dr. Knopf's explanation for addressing prior viral infections, is illustrative. When asked whether Beckfield had any prior viral infections, Dr. Knopf responded, "I'm sure he was exposed to many viruses in his life. I listed the three that I thought were most relevant here." Ex. 2, Knopf Dep. at133:245–135:6. Of course, Dr. Knopf did not address *all* types of infections that Beckfield experienced; he addressed only those that might possibly be associated with the development of NHL. Likewise, he solely discussed Roundup because that was the only herbicide exposure he identified which he believed was extensive enough to constitute a substantial contributing factor in causing Beckfield's NHL and which was associated with NHL.

Therein lies the crux of the matter: the record is devoid of any evidence that Beckfield's *de minimus* exposure to these other herbicides was even potentially causative. Dr. Knopf has reviewed the scientific literature on causes of NHL generally and his search did not reveal atrazine, Dual, or Lasso as potential causes. *See e.g.* Ex. 1, Knopf. Rpt. at 3. Likewise, *not one* of Monsanto's *own* experts concludes that Plaintiff's exposure to these herbicides was even potentially causative. *See* Ex. 3, Boyd Supp. Rpt., *supra*; *see also* Ex. 4, Supp. Rpt. of Timothy Fenske, M.D., dated Sept. 21, 2022, at 27 (stating, "*There are no features of the case to suggest a specific environmental or occupational exposure as the cause.*"). When the scarcity of literature linking these pesticides to NHL is combined with Beckfield's limited use, it is no surprise that Dr. Knopf did not rule-in this exposure in his report or particularly remember the details of these pesticides at his deposition. His deposition testimony does, however, state that he considered the disparity in use and its impact, and discounted the exposure as meaningful:

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MONSANTO
COMPANY'S MOTION TO EXCLUDE TESTIMONY OF KEVIN KNOPF, M.D., M.P.H.
3

> Q. But be that as it may, you don't purport to rule out Lasso herbicide as a contributing factor to Mr. Beckfield's non-Hodgkin's lymphoma in your report, do you?
>
> A. I did not do it in my report, **but I think there's a difference between 525 days [of Roundup exposure] and 12 days [of Lasso exposure]**.
>
> Q: Right. But you can't rule it out as a contributing factor; can you?
>
> A. I can't rule it out as a contributing factor, but **it doesn't change my opinion that Roundup was a substantial contributing factor.**

*Id.* at 139:12-23 (emphasis added).

**C.   Dr. Knopf's Methodology Satisfies the Strictures of *Daubert* and its Ninth Circuit Progeny.**

As this Court is well aware, an expert conducting a differential etiology must start by determining "other known and competing causes" of the illness at issue. Michael D. Green, D. Michal Freedman, and Leon Gordis, *Reference Guide on Epidemiology*, in Federal Judicial Center, *Reference Manual on Scientific Evidence,* 617 (3d ed. 2011) (*Reference Guide*); *see also Clausen v. Carissa*, 339 F. 3d 1049, 1058-60 (9th Cir. 2003); *In re Roundup Products Liab. Litig.*, 16-MD-02741-VC, 2024 WL 348811, at *6 n. 10 (N.D. Cal. Jan. 30, 2024). Thus, **"before a competing cause should be considered relevant to a differential diagnosis, there must be adequate evidence that it is a cause of the disease**." *Reference Guide* at 618 n. 213. Further, while experts should strive to include even rare causes, "[t]he Ninth Circuit does 'not require experts to eliminate all possible causes of a condition for the expert's testimony to be reliable. . . It is enough that the proposed cause 'be a substantial causative factor.'" *Zetz v. Boston Scientific Corp.*, 644 F. Supp. 3d 684, 700 (E.D. Cal. 2022) (citing *Messick v. Novartis Pharm. Corp.*, 747 F. 3d 1193, 1199 (9th Cir. 2014)); *see also, Clausen*, 339 F. 3d at 1058.[3]

An expert's testimony only falls short where the challenging party demonstrates that the expert's conclusions would have been different had he considered those facts. *See e.g. Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188-89 (9th Cir. 2002) (rejecting defendant's argument that

---

[3] In fact, a differential etiology that "rules in a potential cause that is *not* so capable is unreliable**.**" *Clausen*, 339 F. 3d at 1058.

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF KEVIN KNOPF, M.D., M.P.H.
4

1  plaintiff's expert should have been excluded based upon failure to include certain variables in his
2  regression analysis because defendant did not prove any of factors not included were important or
3  would have changed the analysis).

4      Here, Monsanto demands this Court strike Dr. Knopf's testimony in its entirety due to his
5  purported failure to consider three herbicides *for which there is no evidence in the record that they*
6  *cause NHL*.  Furthermore, Defendant is asking this Court to do so by disregarding Dr. Knopf's
7  sworn testimony that he *did* consider this information.  *See* Tr. of Evid. Hearing Proceed., dated
8  Sept. 6, 2024 at 21:1-32:24.  Plaintiff is mindful that the Court doubts the depth of Dr. Knopf's
9  evaluation in this regard, but that is an issue of credibility beyond the scope of a *Daubert* analysis.
10 *See, e.g.*, *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (describing court's task as
11 assessing whether the methodology or technique "fits" the conclusions while specifically noting
12 "the expert's credibility is for the jury").  In sum, Monsanto's argument is factually, scientifically,
13 and legally unsound and is an invitation for this Court to invade the province of the jury.  For these
14 reasons, Plaintiff respectfully submits that Monsanto's motion should be denied.

15 DATED:  September 10, 2024.         Respectfully Submitted,

/s/ *James H. Cook*
James H. Cook
JSC Legal
1205 Technology Parkway
Cedar Falls, IA 50613
Tel: 319-260-4471
Email: jcook@jsclegal.com

*Counsel for Plaintiff Brett Beckfield*


By:    /s/ *Behram V. Parekh*
Behram V. Parekh
Rueb Stoller Daniel LLP
9696 Culver Blvd., Suite 301
Culver City, CA 90232
T: 619.821.2305
Email: behram.parekh@lawrsd.com

*On behalf of Co-Lead Counsel*

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MONSANTO
COMPANY'S MOTION TO EXCLUDE TESTIMONY OF KEVIN KNOPF, M.D., M.P.H.
5


|   |   |
|---|---|
| 1 | /s/ *Robin Greenwald* |
| 2 | Robin Greenwald, Esq. |
|   | Weitz & Luxenberg P.C. |
| 3 | 700 Broadway, 5th Floor |
|   | New York, NY 10003 |
| 4 | Tel: 212-558-5864 |
|   | Email: rgreenwald@weitzlux.com |
| 5 |   |
| 6 | *Co-Lead Counsel* |

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF KEVIN KNOPF, M.D., M.P.H.

6

**CERTIFICATE OF SERVICE**

I certify that on September 10, 2024, I electronically filed the foregoing document with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

*/s/ Behram V. Parekh*

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF KEVIN KNOPF, M.D., M.P.H.

7