| | |
|---|---|
| **WILKINSON STEKLOFF LLP**<br>Brian L. Stekloff (*pro hac vice*)<br>(bstekloff@wilkinsonstekloff.com)<br>Rakesh Kilaru (*pro hac vice*)<br>(rkilaru@wilkinsonstekloff.com)<br>2001 M St. NW, 10th Floor<br>Washington, DC 20036<br>Tel: 202-847-4030 \| Fax: 202-847-4005<br><br>**HOLLINGSWORTH LLP**<br>Eric G. Lasker (*pro hac vice*)<br>(elasker@hollingsworthllp.com)<br>1350 I St. NW<br>Washington, DC 20005<br>Tel: 202-898-5843 \| Fax: 202-682-1639<br><br>*Attorneys for Defendant Monsanto Company* | **COVINGTON & BURLING LLP**<br>Michael X. Imbroscio (*pro hac vice*)<br>(mimbroscio@cov.com)<br>One City Center<br>850 10th St. NW<br>Washington, DC 20001<br>Tel: 202-662-6000<br><br>**BRYAN CAVE LEIGHTON PAISNER LLP**<br>K. Lee Marshall (CA Bar No. 277092)<br>(klmarshall@bclplaw.com)<br>Three Embarcadero Center, 7th Floor<br>San Francisco, CA 94111<br>Tel: 415-675-3400 \| Fax: 415-675-3434<br><br>Jed P. White (CA Bar No. 232339)<br>(jed.white@bclplaw.com)<br>Linda C. Hsu (CA Bar No. 239880)<br>(linda.hsu@bclplaw.com)<br>120 Broadway, Suite 300<br>Santa Monica, CA 90401<br>Tel: 310-576-2100 \| Fax: 310-576-2200 |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>*Kenneth Eilmes et al. v. Monsanto Co.*,<br>    Case No. 3:19-cv-05345-VC<br>*Garfield Gordon v. Monsanto Co.*,<br>    Case No. 3:19-cv-06423-VC<br>*Clyde Haase et al. v. Monsanto Co.*,<br>    Case No. 3:19-cv-05957-VC<br>*Neal Hayden et al. v. Monsanto Co.*,<br>    Case No. 3:19-cv-05600-VC<br>*Carol Ann Huntley v. Monsanto Co.*,<br>    Case No. 3:19-cv-06407-VC<br>*Eduino Pinheiro v. Monsanto Co.*,<br>    Case No. 3:21-cv-00041-VC<br>*Paula Pinheiro v. Monsanto Co.*,<br>    Case No. 3:20-cv-08173-VC<br>*Dean Rowland v. Monsanto Co.*<br>    Case No. 3:19-cv-05310-VC<br>*William Setzer v. Monsanto Co.*,<br>    Case No. 3:17-cv-03448-VC<br>*Robert Wistinghausen v. Monsanto Co.*,<br>    Case No. 3:20-cv-00027-VC | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF DR. KEVIN KNOPF AND FOR SUMMARY JUDGMENT; MOTION TO STRIKE DR. KNOPF'S SUPPLEMENTAL EXPERT REPORTS**<br><br>Hearing:<br>Date:   TBD (if necessary)<br>Time:  TBD<br>Place:  San Francisco Courthouse,<br>           Courtroom 4 – 17th Floor |

1

MOTION TO EXCLUDE DR. KNOPF—SUPPLEMENTAL BRIEF & MOTION TO STRIKE

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** at a date and time to be determined by the Court (if necessary) in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Strike Dr. Kevin Knopf's Supplemental Reports. Monsanto seeks an order striking the supplemental reports Dr. Knopf has submitted after the expert report deadline in this action and in violation of Federal Rules of Civil Procedure 26(a)(2)(C) and 26(e).

Dated: September 13, 2024                    Respectfully submitted,

                                                        **BRYAN CAVE LEIGHTON PAISNER LLP**

                                                        By: _/s/ Linda C. Hsu_
                                                                Linda C. Hsu
                                                    Attorneys for Defendant Monsanto Company

# TABLE OF CONTENTS

I. Introduction ..................................................................................................................1

II. Argument .....................................................................................................................1

    A. Dr. Knopf's purported exposure methodology remains unreliable. ................... 1

    B. Dr. Knopf fails to reliably "rule out" other potential alternative causes of plaintiffs' lymphomas. .......................................................................................... 2

        Kenneth Eilmes, Jr. ................................................................................................2

        Garfield Gordon .....................................................................................................5

        Caryl Ann Haase ....................................................................................................6

        Neal Allen Hayden .................................................................................................7

        Carol Ann Huntley .................................................................................................8

        Paula Pinheiro .......................................................................................................8

        Eduino Pinheiro ....................................................................................................8

        Dean Rowland .......................................................................................................9

        William Setzer .....................................................................................................10

        Robert Wistinghausen ..........................................................................................12

III. Conclusion ................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Clausen v. M/V New Carissa*,
   339 F.3d 1049 (9th Cir. 2003) ..................................................................................................2

*In re Lipitor Mktg., Sales Practices & Prods. Liab. Litig.*,
   892 F.3d 624 (4th Cir. 2018) ....................................................................................................2

*Luke v. Family Care and Urgent Med. Clinics*,
   323 Fed.Appx. 496 (9th Cir. 2009).......................................................................................3, 8

*Sherwin-Williams Co. v. JB Collision Servs., Inc.*,
   2015 WL 1119406 (S.D. Cal. Mar. 11, 2015) ..........................................................................4

*Westberry v. Gislaved Gummi AB*,
   178 F.3d 257 (4th Cir. 1999) ....................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................................................3

## I. INTRODUCTION

Monsanto moved to exclude Dr. Knopf's testimony in 16 cases on August 9, 2024 (ECF18993) and another seven cases on August 16, 2024 (ECF19048). As of August 16th, however, Monsanto had not received all the transcripts from Dr. Knopf's depositions in nine of those cases because his depositions were continued past the discovery cutoff and took place from August 10–30, 2024. *See* Declaration of Linda C. Hsu in support of Defendant Monsanto Company's Supplemental Brief Regarding Motion To Exclude Testimony Of Dr. Kevin Knopf And For Summary Judgment; Motion to Strike Dr. Knopf's Supplemental Reports ("Hsu Decl.") ¶ 2. This brief supplements Monsanto's two earlier motions with information from those depositions, and moves to strike Dr. Knopf's late supplemental reports.

## II. ARGUMENT

During the September 6, 2024 evidentiary hearing related to Monsanto's motion to exclude Dr. Knopf in the *Beckfield* matter, Dr. Knopf made much to do about how his analysis has improved with each expert report he submits. But despite any improvement, his analyses continue to be spotty and inconsistent. His depositions reveal, primarily, that Dr. Knopf has improved at making after-the-fact justifications for errors and omissions in his reports.

### A. Dr. Knopf's purported exposure methodology remains unreliable.

Monsanto preserves its arguments that Dr. Knopf's opinions should be excluded because his exposure analysis is unreliable. Dr. Knopf continues to inconsistently rule in Roundup as a potential cause of Plaintiffs' cancers based on crude estimates of the amount of days each Plaintiff self-reported using Roundup. At no point did Dr. Knopf attempt to determine either the amount of glyphosate an ordinary person, or a specific Plaintiff, would or did absorb. *See* Ex. 45 *Eilmes* Dep. at 8:13–18, 32:1–18; Ex. 46 *Gordon* Dep. at 25:9–26:9, 107:17–108:19; Ex. 47 *Haase* Dep. at 48:19–49: 25; Ex. 48 *Hayden* Dep. at 7:25–8:6; Ex. 49 *P. Pinheiro* Dep. at 17:23–18:23; Ex. 50 *E. Pinheiro* Dep. 27:4–11; Ex. 52 *Setzer* Dep. 11:13–18; Ex. 53 *Wistinghausen* Dep. 11:8–15, 32:9–17.[1]

---

[1] Exhibit Nos. 1–44 are intentionally omitted to avoid duplication with exhibits filed concurrently with Defendant Monsanto Company's Motion to Exclude the Testimony of Dr.

**B.     Dr. Knopf fails to "rule out" potential causes of Plaintiffs' lymphomas.**

Dr. Knopf consistently fails to reliably "rule out"—or even consider—potential causes of Plaintiffs' NHL. *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003); *In re Lipitor Mktg., Sales Practices & Prods. Liab. Litig.*, 892 F.3d 624, 645 (4th Cir. 2018); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999) ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.").

**Kenneth Eilmes, Jr.** was diagnosed with Follicular Lymphoma in 2019.  Ex. 31 *Eilmes* Rpt. at 7–8. Monsanto moved to exclude Dr. Knopf's testimony concerning Mr. Eilmes in compliance with the deadlines, but before receiving the transcript of his deposition. Hsu Decl. ¶ 2; *see* August 16, 2024 Motion to Exclude Knopf at ECF19048 ("8/16 Knopf MTE") at 11–12.  Dr. Knopf's deposition confirms that he failed to reliably address at least four risk factors:

1.   *Gender*—Dr. Knopf opines that men are more at risk for NHL generally, but women are more at risk for follicular lymphoma. Ex. 31 *Eilmes* Rpt. at 17 ("The risk of lymphoma is slightly higher in males than females with a relative risk of 1.2 (Cerhan). However, there is a female predominance of this subtype of NHL [follicular lymphoma] (of the thyroid)."[2]); Ex. 32 *Gordon* Rpt. at 16 ("the NHL subtype Follicular Lymphoma seems to have a female predominance compared to men.").  Yet he opines Mr. Eilmes, a man, was more at risk of follicular lymphoma because of his gender.  Ex. 31 *Eilmes* Rpt. at 32; Ex. 45 *Eilmes* Dep. at 11:24–12:2 ("Yes, he's more likely associated with male than females.  And he is male.").  This contradiction renders his opinion unreliable.

2.   *Family History*—Dr. Knopf recognizes: "There is epidemiological evidence linking a family history of NHL or myeloid leukemias with an increased risk of developing non-Hodgkin's lymphoma (Altieri)." Ex. 31 *Eilmes* Rpt. at 18; Ex. 45 *Eilmes* Dep. at 21:22–25

---

Kevin Knopf filed on August 9, 2024 at ECF18993 and Defendant Monsanto Company's Motion to Exclude the Testimony of Dr. Kevin Knopf filed on August 16, 2024 at ECF19048.

[2] Mr. Eilmes's follicular lymphoma presented in his abdomen, not his thyroid. Ex. 31 *Eilmes* Rpt. at 7–8.  Identical language appears in Dr. Knopf's report for Ms. Pinheiro, who developed DLBCL in her thyroid.  Ex. 36 *P. Pinheiro* Rpt. at 17.

("there is epidemiological literature showing an increased risk of hematologic malignancies when first-degree relatives have a hematologic malignancy."). Dr. Knopf reported: "Mr. Eilmes had a first-degree relative die of cancer (unknown type) at age 72—this played a very minor role in increasing his risk of developing NHL." Ex. 31 *Eilmes* Rpt. at 32; *see* 8/16 Knopf MTE at 12. Mr. Eilmes's records indicate that his father not only had cancer, but had multiple myeloma, a hematological malignancy. Ex. 44 *Eilmes* Rcrd. at 5. Dr. Knopf did not consider Mr. Eilmes's father's hematological malignancy in his report. Ex. 45 *Eilmes* Dep. at 21:11–13 (Q…Are you aware that Mr. Eilmes's father had multiple myeloma? A. I am now."). After learning about Mr. Eilmes's first-degree relative with myeloma during his deposition, Dr. Knopf made three after-the-fact justifications: (1) that "I don't have any history of his father," *id.* at 21:21; (2) that "the odds ratio will go up as the number of first-degree relatives go up," *id.* at 23:18–19; and (3) that the odds ratio would be higher if Mr. Eilmes and his father were diagnosed at similar ages, *id.* at 23:19–24. The first point is Dr. Knopf's fault. The second two merely describe situations where family history would be more of a risk factor. None of Dr. Knopf's arguments salvage his failure to reliably assess Mr. Eilmes's family history as part of his purported differential diagnosis.

Dr. Knopf also submitted a supplemental report after his deposition, claiming he confirmed with Mr. Eilmes that his father was diagnosed with bone cancer. Ex. 54 *Eilmes* Supp. Rpt. at 1. The supplemental report does not acknowledge the existence of, let alone seek to explain, the medical record showing his father developed multiple myeloma. *See* Ex. 44 *Eilmes* Rcrd. at 5. And Dr. Knopf's supplemental report is procedurally improper under this Court's scheduling order, because the information about Mr. Eilmes's father's medical history was available during the discovery process. *See* Fed. R. Civ. P. 26(a)(2)(C) (disclosures must be submitted "at the times and in the sequence that the court orders."); Fed. R. Civ. P. 26(e) (permitting supplementation only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"); *Luke v. Family Care and Urgent Med. Clinics*, 323 Fed.Appx. 496, 500 (9th Cir. 2009) (Rule 26(e) is not "a loophole through which a party who...wishes to revise her disclosures in light of her

opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline."); *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2015 WL 1119406, at *7 (S.D. Cal. Mar. 11, 2015) ("supplementation does not cover failures of omission because the expert did an inadequate or incomplete preparation... To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation." (internal quotations omitted)). Dr. Knopf's supplemental report should be stricken, or in the alternative, disregarded.

3.  *Tobacco Use*—Dr. Knopf failed to reliably consider Mr. Eilmes's 30-year smokeless tobacco use. *See* Ex. 31 *Eilmes* Rpt. at 33 ("Mr. Eilmes did not smoke."); Ex. 45 *Eilmes* Dep. at 13:5–14 (same); 8/16 Knopf MTE at 12 (citing Bracci & Holli, finding a 4.0 odds ratio for smokeless tobacco and NHL). Dr. Knopf considered chewing tobacco as a potential cause only after reviewing the defense expert's report. *Id.* at 16:8–16 ("When I wrote the report in June, I must have missed that he chewed tobacco or I just didn't think that there was any reason to bring it up…When I saw the defense report, I went online and maybe found some relationship. But I'm still not really believing it."). Dr. Knopf's belated and subjective incredulity is unreliable as a basis to rule out this potential cause.

4.  *Chemical Exposures*—Dr. Knopf failed to reliably consider Mr. Eilmes's nearly 30-year exposure to other pesticides, especially 2, 4-D products, which are known carcinogens. 8/16 Knopf MTE at 12; Ex. 45 *Eilmes* Dep. at 24:6–31:25. As the Court has made clear, a reliable methodology must consider exposure to other pesticides; and Dr. Knopf admitted 2, 4-D "has been in several of the studies I've reviewed as a potential causative agent for NHL." Ex. 45 *Eilmes* Dep. at 33:8–11. Dr. Knopf reported Mr. Eilmes used 2, 4-D "in very small amounts compared to his total dose of Roundup." Ex. 31 *Eilmes* Rpt. at 33; *see also* Ex. 45 *Eilmes* Dep. at 32:16–18 (testifying Mr. Eilmes used "substantially more" Roundup than 2, 4-D pesticides); *id.* at 33:2–3 ("I ran away from this [Plaintiff's deposition] thinking that he'd used less [2, 4-D products]."). In fact, Mr. Eilmes testified he used about the same amount of each kind of pesticide. Ex. 42 *Plaintiff Eilmes* Dep. at 180:4–9; 182:9–22; 184:15–20. Dr. Knopf ultimately

admitted: "I guess I might have underestimated how much 2, 4-D he used based on that one line in his deposition." *Id.* at 33:17–19.  When asked if he could rule out 2, 4-D as a potential cause of Mr. Eilmes's follicular lymphoma, he evaded:

> I don't think that causation is just one thing causing it except in physics or some other disease states.  I think causation is multifactorial.  And any one type of pesticide or herbicide that causes NHL can contribute to the probability of NHL.

*Id.* at 34:13–18; *see also id.* at 34:25–36:2 ("I actually wish I could have asked him more about how much he used it, to quantify it.").[3]

Dr. Knopf's unreliable opinions about Mr. Eilmes's gender, family history, tobacco use, and other pesticide exposures render his opinions and testimony inadmissible.

**Garfield Gordon** was diagnosed with Follicular Lymphoma in or around 2014.  Ex. 32 *Gordon* Rpt. at 6–7. Monsanto moved to exclude Dr. Knopf's testimony concerning Mr. Gordon before receiving the deposition transcript. Hsu Decl. ¶ 2; *see* August 16, 2024 Motion to Exclude Knopf at 8/16 Knopf MTE at 13.  Dr. Knopf's deposition confirms three flaws in his purported differential diagnosis:

1.   *Gender*—Like Mr. Eilmes, Dr. Knopf opines Mr. Gordon is at a greater risk of NHL because he is male, despite opining elsewhere that women are more likely to develop follicular lymphoma.  *Compare* Ex. 46 *Gordon* Dep. at 95:17–20 *with* 8/16 Knopf MTE at 11–12.

2.   *Ethnicity*—Dr. Knopf reported Mr. Gordon was Caucasian.  Ex. 32 *Gordon* Rpt. at 29; Ex. 46 *Gordon* Dep. at 95:13–20.  Mr. Gordon is African American.  *Id.* at 95:21–97:7; Ex. 55 *Gordon* Rcrd. at 1.

3.   *Family History*—Other than Dr. Knopf's apparent error in reporting Mr. Gordon's sister has Grave's disease, 8/16 Knopf MTE at 13 (citing Ex. 32 *Gordon* Rpt. at 30), he did not report any other family history of cancer, *id.*  In fact, Mr. Gordon's half-brother developed lung cancer and his mother developed colon and breast cancer.  Ex. 46 *Gordon* Dep. at 94:14–17.

---

[3] Dr. Knopf apparently confirmed Mr. Eilmes's use of 2, 4-D after the deposition in his improperly-submitted supplemental report.  Ex. 54 *Eilmes* Supp. Rpt. at 1.

Dr. Knopf has acknowledged studies linking non-hematopoeitic malignancy to NHL, but states: "this is not uniformly agreed upon in the literature (Zhu K)." Ex. 32 *Gordon* Rpt. at 16. Nevertheless, having recognized family history of cancer as a potential cause, he should have investigated.

Dr. Knopf's inconsistent, erroneous, and incomplete opinions concerning Mr. Gordon's gender, ethnicity, and family history render his opinions unreliable.

**Caryl Ann Haase** was diagnosed with Follicular Lymphoma in 2000. Ex. 33 *Haase* Rpt. at 7–8. Monsanto moved to exclude Dr. Knopf's testimony concerning Ms. Haase before receiving Dr. Knopf's deposition transcript. Hsu Decl. ¶ 2; *see* 8/16 Knopf MTE at 13–14. Dr. Knopf's deposition confirms two flaws in his analysis of potential risk factors:

1. *Gender*—Using identical language in his *Eilmes* Report, Dr. Knopf reported NHL was more common in men, but "there was a female predominance of this subtype of NHL (of the thyroid)." Ex. 33 *Haase* Rpt. at 16. Dr. Knopf reported she was diagnosed with lymphadenopathy "in her right leg right groin left neck." *Id.* at 7. In other words, even if Ms. Haase's thyroid was involved, that would make Dr. Knopf's copy-and-paste opinion only fortuitously accurate. During his deposition, he changed his opinion, testifying: "I think follicular lymphoma, particularly B-cell lymphoma, is still more common in males than females." Ex. 47 *Haase* Dep. at 67:2–4. As discussed above, this is inconsistent with his other reports. *See* 8/16 Knopf MTE at 11–12.

2. *Family History*— A family history of non-hematologic malignancies is associated with NHL. *See* Ex. 35 *Huntley* Rpt. at 18 ("There is some data linking the family history of non-hematologic malignancies to an increased risk of developing NHL—this is somewhat debatable."); Ex. 62 McDuffie 2001 at 1157 (showing OR 1.31 (1.05–1.62) for family history of cancer and NHL). Dr. Knopf reported Ms. Haase had "a family history of lung cancer, which was caused by smoking." Ex. 33 *Haase* Rpt. at 31. He discounted that as a risk factor. *Id.*; Ex. 47 *Haase* Dep. at 68:4–71:14. Yet he was unable to identify any specific facts or data to show Ms. Haase's father smoked. Ex. 47 *Haase* Dep. at 71:16–72:3 ("It was in the medical records at some point."). It appears to be pure speculation.

Dr. Knopf's inconsistent opinions about gender and his unsupported basis for discounting her family history of cancer render his opinion unreliable.

**Neal Allen Hayden** was diagnosed with Follicular Lymphoma in 2011. Ex. 34 *Hayden* Rpt. at 7. Monsanto moved to exclude Dr. Knopf's testimony concerning Mr. Gordon before receiving the deposition transcript. Hsu Decl. ¶ 2; *see* 8/16 Knopf MTE at 14. Dr. Knopf's deposition confirms four flaws in his purported differential diagnosis:

1. *Gender*—Dr. Knopf inconsistently opines whether women or men are more likely to develop follicular lymphoma. *Compare* Ex. 48 *Hayden* Dep. at 11:18–19 *with* 8/16 Knopf MTE at 14.

2. *Obesity*—Obesity is a potential risk factor for NHL. Ex. 34 *Hayden* Rpt. at 33; Ex. 48 *Hayden* Dep. at 14:21–15:1, 17:19–24 ("[Obesity is] one of the putative risk factors for NHL, yes."). Dr. Knopf calculated Mr. Hayden's Body Mass Index as 25.2 at the time of his diagnosis—overweight, but not obese. Ex. 34 *Hayden* Rpt. at 19; Ex. 48 *Hayden* Dep. at 15:7–13. In fact, Mr. Hayden's BMI was over 30 at the time of his diagnosis. *See* Ex. 43 *Hayden* Rcrd. at 3; Ex. 48 *Hayden* Dep. at 15:14–17:7 ("A. He was mildly obese.").

3. *Eczema*—Dr. Knopf admitted "there can be associations from eczema and non-Hodgkin's lymphoma. Ex. 48 *Hayden* Dep. at 21:5–6; *see* ECF18993-5 *Casale* Rpt. at 31 ("By strict definition eczema is NOT an autoimmune condition; however, some studies show an increased risk of NHL in eczema patients."). Mr. Hayden was diagnosed with eczema in 2004. Ex. 48 *Hayden* Dep. at 21:8–10. Dr. Knopf did not discuss eczema in his report.

4. *Viruses*—Viruses are a potential risk factor for NHL. Ex. 34 *Hayden* Rpt. at 18 (noting, by example, HTLV-1, HIV, and HHV-8); Ex. 48 *Hayden* Dep. at 23:13–14 ("Some viruses are associated with the development of NHL, yes."). Mr. Hayden was diagnosed with shingles (herpes zoster). Ex. 48 *Hayden* Dep. at 26:2–14. Dr. Knopf did not address Mr. Hayden's shingles in his report. At his deposition, he argued that he did not consider shingles to be associated with NHL, but was unaware of two studies showing statistically significant elevated risk ratios for shingles and NHL. *Id.* at 27:11–33:2; Ex. 57 Cartwright 1988; Ex. 58 La Vecchia 1992.

1    Dr. Knopf's inconsistent opinion about gender, error in assessing Mr. Hayden's BMI, and failure to consider his history of eczema or shingles render Dr. Knopf's opinions unreliable.

**Carol Ann Huntley** was diagnosed with Follicular Lymphoma in 2013. Ex. 35 *Huntley* Rpt. at 7; Ex. 38 *Huntley* Dep. at 10:10–15. Monsanto received her deposition transcript before its prior motion. *See* 8/16 Knopf MTE at 14–15. The same day, however, Dr. Knopf submitted a supplemental expert report. Ex. 55 *Huntley* Supp. Rpt. at 1. As with his other supplemental report, this untimely report should be stricken. *See, e.g.*, *Luke*, 323 Fed.Appx. at 500.

**Paula Pinheiro** was diagnosed with diffuse large B-cell lymphoma (DLBCL) in 2020. Ex. 36 *P. Pinheiro* Rpt. at 6–7. Monsanto moved to exclude Dr. Knopf's testimony concerning Ms. Pinheiro before receiving Dr. Knopf's deposition transcript. Hsu Decl. ¶ 2; *see* 8/16 Knopf MTE at 16. Dr. Knopf's deposition confirms he did not reliably consider Ms. Pinheiro's family history.

1.   *Family History*—Dr. Knopf reported Ms. Pinheiro had two first-degree relatives with non-hematopoietic malignancies—a father with prostate cancer and a sister with lung cancer—and that studies link non-hematopoietic malignancies in a family member to NHL. Ex. 36 *P. Pinheiro* Rpt. at 31. At deposition, Dr. Knopf acknowledged Ms. Pinheiro's medical records also showed her mother died from cancer in her 30s. Ex. 49 *P. Pinheiro* Dep. at 59:1–20. He further admitted "we don't know what kind of cancer that was." *Id.* at 60:25–61:1.

**Eduino Pinheiro** was diagnosed with follicular lymphoma and diffuse large B-cell lymphoma (DLBCL) around 2019. Ex. 37 *E. Pinheiro* Rpt. at 30; Ex. 50 *E. Pinheiro* Dep. at 37:3–38:6. Monsanto moved to exclude Dr. Knopf's testimony concerning Mr. Pinheiro before receiving Dr. Knopf's deposition transcript. Hsu Decl. ¶ 2; *see* 8/16 Knopf MTE at 16–17. Dr. Knopf's deposition confirms he unreliably ruled out Mr. Pinheiro's obesity and chemical exposures.

1.   *Obesity*—Dr. Knopf recognizes that obesity is a "potential risk factor" for NHL. Ex. 37 *E. Pinheiro* Rpt. at 32; *see also* Ex. 50 *E. Pinheiro* Dep. at 91:16–99:17; *see, e.g.*, Ex. 59 Larsson 2007 (meta-analysis linking obesity and NHL). He reported that Mr. Pinheiro was "overweight." Ex. 37 *E. Pinheiro* Rpt. at 32. At deposition, he admitted he had not calculated

Mr. Pinheiro's BMI because he did not know Mr. Pinheiro's height. Ex. 50 *P. Pinheiro* Dep. 78:17–18. Upon being presented with additional medical records, Dr. Knopf admitted: "His BMI was over 30…the BMI of 30 to 35 is commonly referred to as obese." *Id.* at 85:23–25. Dr. Knopf further admitted he did not know Mr. Pinheiro's BMI during his adolescent years, which Dr. Knopf opined was specifically associated with NHL. *Id.* at 86:17–18.

      2.    *Chemical Exposures*—Dr. Knopf reported: "Mr. Pinheiro had used insecticides, specifically to control flies on occasion – he had no exposure to other herbicides or other chemicals besides Roundup. This may be a very minor contribution to risk." Ex. 37 *E. Pinheiro* Rpt. at 32. Dr. Knopf, however, testified he was aware that Mr. Pinheiro testified he used the herbicides Farm Tek Buccaneer and Gly Star Plus. Ex. 50 *E. Pinheiro* Dep. at 101:17–21. He did not consider these exposures in his analysis.

Dr. Knopf's error in calculating Mr. Pinheiro's BMI and failure to consider his herbicide exposure render his opinions unreliable.

**Dean Rowland** was diagnosed with Diffuse Large B-Cell Lymphoma (DLBCL) in 2018. Ex. 11 *Rowland* Rpt. at 6. Monsanto moved to exclude Dr. Knopf's testimony concerning Mr. Pinheiro before receiving Dr. Knopf's deposition transcript. Hsu Decl. ¶ 2; *see* 8/16 Knopf MTE at 15–16. Dr. Knopf's deposition demonstrates additional critical flaws in his analysis of potential causes:

      1.    *Family History*—A family history of non-hematologic malignancies is associated with NHL. *See* Ex. 35 *Huntley* Rpt. at 18. Dr. Knopf is skeptical, but acknowledges the McDuffie study—which he relies on for other end points—shows an elevated risk. Ex. 51 *Rowland* Dep. at 46:21–47:16 ("If you query a bunch of medical oncologists is a family history of prostate cancer a risk factor for lymphoma, they would say no. I can't think of any medical colleagues that would say yes apart from those who may have reviewed those studies who would acknowledge there was a relative risk ratio in some of those studies."); *id.* at 49:3–53:20 (admitting McDuffie does not distinguish hematologic vs. non-hematologic cancers); Ex. 62 McDuffie 2001 at 1157 (showing OR 1.31 (1.05–1.62) for family history of cancer and NHL). Dr. Knopf reported: "Mr. Rowland had no relatives with a family history of NHL or leukemia

1  – thus his risk for developing NHL was not elevated." Ex. 11 *Rowland* Rpt. at 33. At
2  deposition, however, he acknowledged Mr. Rowland's "family had solid tumors in their family
3  history." Ex. 51 *Rowland* Dep. at 46:16–20 (Mr. Rowland's father had prostate cancer). Dr.
4  Knopf's failure to consider that risk factor makes his opinion unreliable.

5      2.  *Roundup Exposure*—Dr. Knopf admitted that use of personal protective
6  equipment (PPE) was relevant to his exposure analysis. *Id.* at 71:10–12. He did not mention
7  whether Mr. Rowland used PPE and testified that he did not believe Mr. Rowland used it. *Id.*
8  at 71:15–16 ("I don't believe he used a lot of PPE."). Dr. Knopf, however, then acknowledged
9  that Mr. Rowland testified to wearing long pants, nitrile and leather gloves, and safety glasses
10 when mixing and spraying Roundup. *Id.* at 73:7–74:12. Even though these cases have focused
11 on dermal exposure, Dr. Knopf responded: "If I were for some reason forced to spray Roundup
12 or mix it in a container, I would wear a gas mask." *Id.* at 74:15–22. That response is both
13 unscientific and prejudicial. Dr. Knopf then testified that he reported Mr. Rowland's exposure
14 was sufficient "despite using some PPE." *Id.* at 75:18–20. His report says no such thing. *See*
15 Ex. 11 *Rowland* Rpt. at 9–10.

16     Dr. Knopf's failure to address Mr. Rowland's family history of cancer and his ignorance
17 of Dr. Rowland's use of PPE render his opinions unreliable.

18     **William Setzer** was diagnosed with Diffuse Large B-Cell Lymphoma (DLBCL) in
19 2016. Ex. 12 *Setzer* Rpt. at 6. Monsanto moved to exclude Dr. Knopf's testimony concerning
20 Mr. Setzer before receiving Dr. Knopf's deposition transcript. Hsu Decl. ¶ 2; *see* August 9,
21 2024 Motion to Exclude Knopf at ECF18993 at 16. Dr. Knopf's deposition confirmed:

22     1.  *Family History*—Dr. Knopf acknowledges that a family history of non-
23 hematological malignancies is a potential risk factor for NHL, but did not report whether Mr.
24 Setzer had such a family history. Ex. 12 *Setzer* Rpt. at 35. Mr. Setzer's father had stomach
25 cancer. Ex. 52 *Setzer* Dep. at 20:23–21:21 ("Q. You didn't include that his father had stomach
26 cancer in your report, right? A. It must have been an oversight.").

27     2.  *Diabetes*—Diabetes is a potential risk factor for NHL. Ex. 12 *Setzer* Rpt. at 23.
28 Dr. Knopf testified he knew Mr. Setzer was diagnosed with diabetes. Ex. 52 *Setzer* Dep. at

28:2–5. He did not address Mr. Setzer's diabetes in his report, testifying he did not believe it was a risk factor. *Id.* at 28:11–30:2.

3. *Obesity*—Obesity is a risk factor for NHL. Ex. 12 *Setzer* Rpt. at 36; Ex. 52 *Setzer* Dep. at 30:9–22. Dr. Knopf reported Mr. Setzer had a BMI of 26.8. Ex. 12 *Setzer* Rpt. at 36. In fact, Mr. Setzer's BMI for the four years before his diagnosis was above 38. Ex. 52 *Setzer* Dep. at 32:14–16 (…given that he's obese, that's an error in my report."). Dr. Knopf did not know Mr. Setzer's weight as a young adult or in adolescence. *Id.* at 32:22–33:3.

4. *Eczema*—Dr. Knopf has acknowledged eczema is associated with NHL. *Id.* at 34:10–13. His report does not mention eczema. Dr. Knopf agreed, however, that Mr. Setzer was diagnosed with eczema in 2004. *Id.* at 34:19–36:23.

5. *Common Variable Immunodeficiency* ("CVID")—Immunodeficiency is a potential risk factor for NHL. Ex. 12 *Setzer* Rpt. at 21–22; Ex. 52 *Setzer* Dep. at 39:2–4. Dr. Knopf reported Mr. Setzer did not have any immunodeficiency. Ex. 12 *Setzer* Rpt. at 35. Mr. Setzer had CVID. Ex. 52 *Setzer* Dep. at 36:25–38:18. Dr. Knopf commented: "That's interesting," *id.* at 38:17, and "I would consider that a risk factor, but I have to review his medical record more extensively to see why that was diagnosed in 2014 and not mentioned in my review," *id.* at 40:2–5.

6. *Genetic Variants*—A compound heterozygous pathogenic variant in the ATM gene can be associated with an increased risk of lymphoma directly, or indirectly by causing immunodeficiency. Ex. 52 *Setzer* Dep. at 44:2–9. Mr. Setzer's genetic testing report found a heterozygous pathogenic variant in his ATM gene. Ex. 52 *Setzer* Dep. at 42:19–25. Dr. Knopf did not address this potential risk factor in his report. *Id.* at 44:14–16 ("No. No, I think I'll issue an addendum."). He also did not rule it out. *Id.* at 44:20–23 ("I think that's a – that's a potentially causative factor. I think that's a significant genetic finding, but I would need to think about it a little bit more."). He has not submitted a supplemental report, nor should he be permitted to do so.

Dr. Knopf's failure to reliably address six different risk factors for Mr. Setzer renders his opinions unreliable and his testimony inadmissible.

**Robert Wistinghausen** was diagnosed with chronic lymphocytic leukemia (CLL) in 2019. Ex. 16 *Wistinghausen* Rpt. at 6. Monsanto moved to exclude Dr. Knopf's testimony concerning Mr. Wistinghausen before receiving Dr. Knopf's deposition transcript. Hsu Decl. ¶ 2; *see* August 9, 2024 Motion to Exclude Knopf at ECF18993 at 19.

1. *Age*—Age is a risk factor for NHL; most NHL occurs in people over the age of 60. Ex. 16 *Wistinghausen* Rpt. at 18. Dr. Knopf reported Mr. Wistinghausen was 53 at the time of his diagnosis, "below the median age in the 60s. Thus, this demographic factor did not apply." *Id.* at 32. In fact, he was 56. Ex. 53 *Wistinghausen* Dep. at 17:3–21 ("I mistakenly wrote 53. It must have been late at night when I wrote that…he's probably around the median age, within one sigma."). Dr. Knopf did not adjust his opinion based on changing his assessment from "below the mean" to "within one sigma."

2. *Family History*—A family history of non-hematologic malignancies is associated with NHL. *See* Ex. 35 *Huntley* Rpt. at 18; Ex. 62 McDuffie 2001 at 1157 (showing OR 1.31 (1.05–1.62) for family history and NHL). Dr. Knopf reported Mr. Wistinghausen had "a family history of several malignancies including lung and possible liver cancer," Ex. 16 *Wistinghausen* Rpt. at 33, but did not state how that family history affected his analysis. In fact, Mr. Wistinghausen had four close relatives who developed cancer. *See* Ex. 53 *Wistinghausen* Dep. at 19:6–20:2. Dr. Knopf offered the following after-the fact justification for not considering Mr. Wistinghausen's family history of cancer:

> I don't know of any genetic syndromes linking solid tumors such as those to the increased risk of developing NHL. I think, having had discussions with Monsanto attorneys who've shown me some of those papers, that, if I'm writing a report now, I would acknowledge that there's a family history of non-hematologic malignancies and say that I don't think it was a contributing risk factor. But I did not at the time that this report was written. In part, because those studies are not typically discussed by oncologists, but I was made aware of them by Monsanto plaintiff – Monsanto defense attorneys, such as yourself.

*Id.* at 20:19–21:7.

3. *Personal History*—An earlier form of cancer is associated with a higher risk of later developing NHL. *Id.* at 22:7–10 ("It might be a minor one."); *id*. at 23:6–24:20

1  (acknowledging McDuffie found a statistically significant increased risk of developing NHL
2  when there's a confirmed personal history of previous cancer); Ex. 62 McDuffie 2001 at 1157
3  (showing an odds ratio of 2.43 (1.71–3.44) for "Previous Cancer"). Dr. Knopf did not report
4  that Mr. Wistinghausen developed colon cancer before his NHL diagnosis. *Id.* at 21:20–22. Dr.
5  Knopf argued he did not consider Mr. Wistinghausen's personal history because "I don't rule
6  out every single risk factor in my report." *Id.* at 17–21. But he then acknowledged: "But to
7  make the report more complete, I should have said he had a personal family -- he had a family
8  history and personal history of solid tumor malignancies." *Id.* at 22:25–23:3.

9      4.    *Other Pesticides*—Exposure to pesticides (other than Roundup) is a potential risk
10  factor for NHL. Ex. 16 *Wistinghausen* Rpt. at 21. Mr. Wistinghausen "used quite a bit of
11  insecticides throughout his lifetime," Ex. 53 *Wistinghausen* Dep. at 26:5–8, and listed 19 in his
12  fact sheet, Ex. 63 Wistinghausen PFS at 9–10. Dr. Knopf reported "I cannot eliminate these
13  other exposures as a potential additional contributing or confounding risk factors for Mr.
14  Wistinghausen developing NHL. However, none of the other exposures can be said to be so
15  significant that it would reduce or eclipse the risk presented by Roundup exposure." Ex. 16
16  *Wistinghausen* Rpt. at 35. At deposition, he argued that because exposure to other pesticides
17  creates "potential for non-differential misclassification" in epidemiological studies, he could
18  rely on those studies to conclude Roundup was "still a substantial causative element." *Id.* at
19  26:15–22. But Dr. Knopf admitted he did not investigate whether the pesticides Mr.
20  Wistinghausen used were carcinogenic; he assumed they were. *Id*. at 27:18–25. Dr. Knopf did
21  not perform any analysis of Mr. Wistinghausen's exposure to those other chemicals. *Id.* at
22  28:10–19. He did not review their active ingredients. *Id.* at 30:24–31:4. And he did not
23  calculate an internal absorbed dose of those pesticides. *Id.* at 32:9–17. He further admitted
24  Roundup was not sufficient to cause Mr. Wistinghausen's specific presentation of NHL:

> Is it your opinion that if Mr. Wistinghausen had not used insecticides at all, he would not have developed non-Hodgkin's lymphoma?
>
> A. I don't know. In that case, if he only used the Roundup, I think that he would not have developed his lymphoma at the time that he did, if at all.

*Id.* at 30:12–18. His opinion on the degree of risk from these other chemicals was wildly inconsistent and should therefore be excluded:

> Q. Would you consider Mr. Wistinghausen's insecticide use to be a minimal, moderate, or substantial risk factor for the development of his NHL?
>
> A. I'm not sure. I would not say it's minimal or none. Perhaps moderate or substantial.

*Id.* at 29:8–18.

Dr. Knopf's error in Mr. Wistinghausen's age, his failure to consider Mr. Wistinghausen's family and personal cancer history, and his inadequate analysis of Mr. Wistinghausen's extensive exposure to other chemicals render Dr. Knopf's opinions unreliable and his testimony should be excluded.

### III.  CONCLUSION

For the reasons set forth above, the Court should grant Monsanto's motion and order the exclusion of Dr. Kevin Knopf's testimony and grant summary judgment for Monsanto. In addition or in the alternative, the Court should strike Dr. Knopf's supplemental reports as untimely and unexcused.

Dated: September 13, 2024                    Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Linda C. Hsu*
         Linda C. Hsu
Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on September 13, 2024, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system, which sent notice of the filing to all appearing parties of record.

                                          */s/ Linda C. Hsu*
                                          Linda C. Hsu