JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202
Tel: (704) 350-7714
Fax: (704) 350-7800

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONAS PEREZ-HERNANDEZ, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> MONSANTO COMPANY, et al., <br><br> Defendants. | MDL No. 2741 <br> Case No. 3:24-CV-01736-VC <br><br> **MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> Date: January 9, 2025 <br> Time: 10:00 a.m. <br> Place: San Francisco, Courtroom 4, 17th Floor <br> Judge: Hon. Vince G. Chhabria |

PLEASE TAKE NOTICE THAT on January 9, 2025, at 10:00 a.m., or at such other time as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, at the San Francisco Courthouse, Courtroom 4 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Monsanto Company will, and hereby does, move to dismiss Plaintiffs' First Amended Class Action Complaint with prejudice.

Monsanto Company seeks an order dismissing Plaintiffs' Complaint with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This motion is based on the accompanying memorandum of points and authorities, Monsanto Company's forthcoming reply brief, arguments of counsel, and such other matters as may be considered.

# TABLE OF CONTENTS
## Contents

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................. ii

Introduction ......................................................................................................... 1

Background .......................................................................................................... 1

Legal Standards ................................................................................................... 3

Argument ............................................................................................................. 4

    I.      Plaintiffs lack Article III standing .......................................................... 4

    II.     The statutes of limitations bar plaintiffs' 19-year-old claims ............... 6

    III.   Plaintiffs have not plausibly pleaded entitlement to a medical monitoring remedy ................................................................................... 9

    IV.   Plaintiffs have not stated a negligence or negligent-misrepresentation claim ...................................................................................................... 11

    V.     Plaintiffs fail to allege a plausible claim under the UCL ..................... 13

    VI.   Plaintiffs' request for declaratory judgment fails to state a claim, serves no appropriate purpose, is duplicative, and seeks to circumvent Rule 9(b) ............. 13

Conclusion ......................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abuan v. Gen. Elec. Co.*,
  3 F.3d 329 (9th Cir. 1993) ................................................................................10

*Allen v. Similasan Corp.*,
  96 F. Supp. 3d 1063 (S.D. Cal. 2015).............................................................6, 8

*In re Animation Workers Antitrust Litig.*,
  123 F. Supp. 3d 1175 (N.D. Cal. 2015) ..............................................................7

*Block v. eBay, Inc.*,
  747 F.3d 1135 (9th Cir. 2014) ...........................................................................12

*Bohren v. San Jose Police Dept.*,
  2022 WL 834320 (N.D. Cal. Mar. 21, 2022)......................................................4

*Branick v. Downey Savings & Loan Ass'n*,
  39 Cal.4th 235 (2006) ........................................................................................13

*Cent. Delta Water Agency v. United States*,
  306 F.3d 938 (9th Cir. 2002) ...............................................................................5

*Conmar Corp. v. Mitsui & Co. (USA)*,
  858 F.2d 499 (9th Cir. 1988) ...............................................................................7

*Credit Suisse Secs. (USA) LLC v. Simmonds*,
  566 U.S. 221 (2012)..............................................................................................7

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
  523 F.2d 389 (6th Cir.1975) .................................................................................7

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) .............................................................................12

*Fox v. Ethicon Endo-Surgery, Inc.*,
  110 P.3d 914 (Cal. 2005) ......................................................................................6

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ..............................................................................4

*Gilliam v. Bank of Am., N.A.*,
  2018 WL 6537160 (C.D. Cal. June 22, 2018) ...................................................14

*Golden Eagle Ins. Co. v. Travelers Cos.*,
103 F.3d 750 (9th Cir. 1996), *overruled on other grounds by Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (1998) (en banc) ..........................................................................14

*In re Google Referrer Header Priv. Litig.*,
465 F. Supp. 3d 999 (N.D. Cal. 2020) ....................................................................................4

*Hamilton v. TBC Corp.*,
328 F.R.D. 359 (C.D. Cal. 2018) ...........................................................................................6

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ...............................................................................................12

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ............................................................................................................13

*Lockheed Martin Corp. v. Super. Ct.*,
29 Cal. 4th 1096 (2003) ......................................................................................................9, 11

*Mangindin v. Wash. Mut. Bank*,
637 F. Supp. 2d 700 (N.D. Cal. 2009) ..................................................................................15

*McQuillion v. Schwarzenegger*,
369 F.3d 1091 (9th Cir. 2004) ...............................................................................................14

*Nat'l Ass. of Wheat Growers v. Bonta*,
85 F.4th 1263 (9th Cir. 2023) .................................................................................................8

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ...................................................................................................4

*Neilson v. Union Bank of Cal., N.A.*,
290 F.Supp.2d 1101 (C.D. Cal. 2003) ..................................................................................12

*Norgart v. Upjohn Co.*,
981 P.2d 79 (Cal. 1999) ...........................................................................................................7

*Phillips v. Apple Inc.*,
2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ........................................................................6

*Pilliod v. Monsanto*,
No. RG17862702 (Cal. Super. Ct. 2019) ...............................................................................7

*Pirozzi v. Apple, Inc.*,
966 F. Supp. 2d 909 (N.D. Cal. 2013) ....................................................................................6

*Potter v. Firestone Tire & Rubber Co.*,
863 P.2d 795 (Cal. 1993) ..............................................................................................*passim*

*Ramirez v. Monsanto Company*,
   MDL No. 2741, No. 3:19-cv-02224 (June 24, 2020) ............................................7

*Riva v. Pepsico, Inc.*,
   82 F. Supp. 3d 1045 (N.D. Cal. 2015) ..........................................5, 9, 10

*Rolish v. Monsanto Co.*,
   No. 2:20-CV-01340 (C.D. Cal. Feb. 10, 2020)..........................................7

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
   732 F. Supp. 2d 952 (N.D. Cal. 2010) ..........................................13, 14

*In re Rubber Chemicals Antitrust Litig.*,
   504 F. Supp. 2d 777 (N.D. Cal. 2007) ..........................................3, 4

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999)..........................................4

*Skelly Oil Co. v. Phillips Petroleum Co.*,
   339 U.S. 667 (1950)..........................................14

*Top Agent Network, Inc. v. Zillow, Inc.*,
   2015 WL 7709655 (N.D. Cal. Apr. 13, 2015) ..........................................15

*United States v. Washington*,
   759 F.2d 1353 (9th Cir.) (en banc) ..........................................14

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..........................................8

*Warren v. Fox Fam. Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ..........................................5

*WildEarth Guardians v. United States Forest Serv.*,
   70 F.4th 1212 (9th Cir. 2023) ..........................................4

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
   62 F.4th 517 (9th Cir. 2023) ..........................................4

*Yetter v. Ford Motor Co.*,
   428 F. Supp. 3d at 223 ..........................................6, 8

## Other Authorities

28 U.S.C. § 2201..........................................14

Cal. Bus. & Prof. Code § 17204 ..........................................13

Cal. Bus. & Prof. Code § 17208 ..........................................6

Cal. Civ. P. Code § 335.1 ........................................................................................................6

Fed. R. Civ. P. 9(b) ......................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(1) ...........................................................................................................3

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................4

10B Wright & Miller, Federal Practice and Procedure § 2751 (4th ed. 2024) ........................................................................................................................14

## INTRODUCTION

Plaintiffs' Amended Complaint repeats allegations from other cases in this MDL that glyphosate in Roundup® products causes NHL.  Plaintiffs allege that Monsanto lied about this "fact" and that they should be appointed class representatives for a putative class of professional users of Roundup® to seek medical monitoring.  Their claims do not hold water.

When Plaintiffs were last before this Court with a similar complaint, the Court warned them that their complaint raised "a number of issues, a number of roads that seemed like they might lead to nowhere."  Feb. 15, 2024, Hr'g Tr. at 5:15-16.  Yet Plaintiffs have not addressed these issues, nor many of the other problems Monsanto previously briefed.  For example, Plaintiffs still have not alleged *their* risk of contracting NHL, the public's baseline risk, the baseline risk for agricultural workers like themselves, or how any of this is affected by Roundup® use.  Plaintiffs also fail to plausibly allege any clinically available test that could reliably indicate the presence of NHL prior to the onset of symptoms (much less NHL caused by Roundup® use), nor do they otherwise demonstrate that medical monitoring would redress their asserted harms.  Plaintiffs thus have not alleged the injury requisite to standing, nor that any such injury would be redressed by their proposed remedy.

But these are only the beginnings of Plaintiffs' issues.  They also do not allege facts that would support tolling the two- and four-year statutes of limitations applicable to their 19-year-old claims.  And, on the merits, they do not plausibly allege facts essential to awarding medical monitoring, nor the key elements of their negligent misrepresentation and UCL claims.  And their declaratory judgment claim is improperly duplicative and otherwise defective.  The Court should dismiss Plaintiffs' Amended Complaint.

## BACKGROUND

Plaintiffs' original complaint alleged ten causes of action on behalf of a purported nationwide class of anyone exposed to Roundup® products through the application of those

products twice in the same year.  D.E. 1 ¶ 91.[1]  The complaint broadly encompassed members already diagnosed with NHL, members not diagnosed with NHL but seeking medical monitoring, and members asserting economic loss.  *See, e.g.*, *id.* ¶¶ 7, 9, 91-92, 121-22, 144, 152-53, 162, 172, 182, 192, 201, 207-09, 215-17, Prayer ¶¶ 2-4.  Monsanto moved to dismiss for lack of jurisdiction and venue and for failure to state a claim.  D.E. 21.[2]  At a hearing on that motion, the Court raised several concerns about Plaintiffs' complaint.  Feb. 15, 2024, Hr'g Tr. at 5:15-16.  It noted that Plaintiffs' "standing to sue in federal court could depend in part on the degree of risk" but that Plaintiffs made no allegations regarding their degree of risk or the public's baseline risk.  Tr. 7:10-14; *see also id.* 5:25-8:17.  The Court also expressed concern that some of the studies relied on by Plaintiffs were "junk science."  *Id.* 9:24-10:4.  The Court further noted that "one of the requirements of standing is redressability" and asked whether "doctors [can] discover NHL before symptoms of NHL appear."  *Id.* 13:16-2, 16:19-22.  Plaintiffs' counsel replied, "As far as I know, Your Honor, I don't believe so."  *Id.* 16:19-22.

After the hearing, the Court transferred the case to the Central District of California.  D.E. 36.  As expected, the JPML then transferred the case back into this MDL for pretrial proceedings, and Plaintiffs filed the Amended Complaint that is the subject of this motion.  D.E. 51; D.E. 62.

The Amended Complaint narrows the scope of the case by asserting claims on behalf of a proposed California class of professional users of Roundup® who have not contracted NHL.  It

---

[1] The original complaint alleged that Roundup®'s active ingredient glyphosate "is carcinogenic and associated with an increased risk of developing NHL," and it alleged four kinds of supposed injury for which Plaintiffs were seeking to recover: (1) personal injury from NHL (*e.g.*, *id.* ¶¶ 9, 92, 121-22, 142-44, 152-53, 190, 192, 201, Prayer ¶¶ 2-3); (2) unspecific economic losses (*e.g.*, *id.* ¶¶ 122, 144, 162, 172, 182, 192, 201, 207, 209, Prayer ¶¶ 2-3); (3) future medical monitoring (*e.g.*, *id.* ¶¶ 122, 144, 214, Prayer ¶ 4); and (4) other prospective injuries to be addressed with injunctive relief (*e.g.*, *id.* ¶¶ 122, 144, 214, Prayer ¶ 4).

[2] Plaintiffs also sued two other entities, Bayer Aktiengesellschaft ("Bayer AG") and Bayer Corporation ("Bayer Corp.").  Bayer AG was not served.  Bayer Corp. joined Monsanto's motion to dismiss and moved to dismiss for lack of personal jurisdiction.  D.E. 20.  And Monsanto and Bayer Corp. moved to strike Plaintiffs' class allegations.  Plaintiffs voluntarily dismissed Bayer AG and Bayer Corp. after filing the Amended Complaint.  *See* D.E. 63; D.E. 64.

includes claims for negligence, violation of the California UCL, and declaratory relief, and it seeks medical monitoring and attorney's fees.  Am. Compl. ¶¶ 66-76, 88, 102-112, 114-20, 122-25, 127.

As in the initial complaint, Plaintiffs allege that Monsanto's Roundup® products put agricultural workers, landscapers, and groundskeepers at increased risk (though they never quantify that risk, nor the amount by which it has increased) for contracting NHL.  *Id.* ¶ 1. Plaintiffs allege that they were agricultural workers and were exposed to unspecified amounts of unspecified Roundup® products "over a period of approximately 19 years."  *Id.* ¶ 19.  They offer no more details on their exposure to Roundup®, nor as to whether they were exposed as agricultural workers to non-Roundup® pesticides known to increase the risk of NHL, nor whether they have any background risk factors for NHL.  They allege in conclusory fashion that Monsanto's false or misleading statements or omissions caused them to use Roundup® but do not allege any particular statements or omissions that they encountered or on which they relied.  *See id.* ¶¶ 82-87, 103, 107, 114, 117-18.  They do not allege their risk of contracting NHL or the public's baseline risk.  *See id.* ¶¶ 66-76.  Plaintiffs point to three possible "tests" medical monitoring could provide: physical exams, serum tests, and DNA tests.  Plaintiffs assert that serum tests could indicate a "risk of developing subtypes of NHL," and that "the mosaic loss of chromosome-Y" has been associated with glyphosate use.  *Id.* ¶¶ 72-73.  But they do not allege that the serum tests or DNA tests are clinically available.  *Id.*  And they also do not allege that physical exams, serum tests, or DNA tests could in fact detect NHL before the onset of symptoms, nor that the alleged risk factors those tests look for have been tied to Roundup® use.  *Id.* ¶¶ 72-74.

## LEGAL STANDARDS

The plaintiff bears the burden of establishing subject matter jurisdiction, including on a Rule 12(b)(1) motion.  *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 780 (N.D. Cal. 2007).  To resolve a factual attack on subject-matter jurisdiction, the court "may consider extrinsic evidence," "does not have to assume the truthfulness of the allegations," and "may resolve any factual disputes."  *Id.*  To resolve a facial attack, "the court considers whether the allegations in the complaint are sufficient on their face to invoke federal jurisdiction," applying the same

standards as it would under Rule 12(b)(6).  *In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1005 (N.D. Cal. 2020).

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court "accepts as true all well-pled factual allegations" and determines whether they allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Bohren v. San Jose Police Dept.*, 2022 WL 834320, at *1 (N.D. Cal. Mar. 21, 2022).  But courts do not "accept as true allegations that contradict matters properly subject to judicial notice" or that "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## ARGUMENT

### I.    PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs must establish standing to maintain their claims in federal court.  *WildEarth Guardians v. United States Forest Serv.*, 70 F.4th 1212, 1215 (9th Cir. 2023); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (standing requirement is "inflexible and without exception").  In a putative class action, the named plaintiffs must have standing individually. *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023).  Accordingly, Plaintiffs must clearly allege facts demonstrating that they themselves suffered an injury in fact fairly traceable to Monsanto's conduct and likely to be redressed by a favorable decision.  *Id.* at 523.  Yet Plaintiffs' Amended Complaint fails to plausibly allege injury, traceability, or redressability.

***Injury.***  As explained in Part III below, Plaintiffs do not allege facts showing that the need for medical monitoring is a "reasonably certain consequence" of their alleged exposure to Roundup®.  *See Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 824-25 (Cal. 1993) (requiring a "relative increase" in risk to establish need for medical monitoring); *see also* Tr. 6:1-2 (Plaintiffs' counsel describing injury).  At the last hearing in this case, the Court warned Plaintiffs that they did not allege their relative increase in risk, and Plaintiffs' counsel acknowledged he did not have a baseline incidence rate against which to compare his clients' risk.  Tr. 5:17-12:14.  But

Plaintiffs did not address this problem in their Amended Complaint.  They simply dropped one implausible allegation that one exposure increases risk by 230% (*see* D.E. 1 at ¶ 39), without alleging any facts about the incidence rate of NHL among the general population, among agricultural workers without exposure to Roundup®, or among agricultural workers with exposure like their own.  Indeed, although Monsanto briefed the issue previously, Plaintiffs did not even allege specific facts about the "significance and extent" of their own exposure.  *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1053 (N.D. Cal. 2015); *see also* Am. Compl. ¶¶ 19-20, 77-81 (alleging 19-year duration of exposure without describing its significance or extent).  Plaintiffs' failure to allege facts showing a "credible and substantial" increase in their risk of contracting NHL requires dismissal for lack of standing.  *Id.* (citing *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002)).

  ***Traceability.***  Plaintiffs also do not plausibly allege that their risk of contracting NHL (whatever that may be) is fairly traceable to the conduct that they have put at issue.  Plaintiffs complain that Monsanto marketed Roundup® as safe even though its active ingredient, glyphosate, can allegedly cause cancer.  *See, e.g.*, Am. Compl. ¶¶ 3-8, 103, 105, 107, 115.  But Plaintiffs do not plausibly allege facts supporting their contention that they "were forced to rely on Defendants' false representations."  *See* Am. Compl. ¶ 87.  To that end, Plaintiffs do not allege that they ever saw or otherwise encountered any false or misleading statements or omissions by Monsanto.  Plaintiffs' reliance theory—that they would not have used Roundup® had they known its risks— is contradicted by their admission that they continue to use Roundup® to this day.  Am. Compl. ¶ 80 (alleging both that "Plaintiffs' exposure is ongoing due to their occupations" and that Plaintiffs would not have used Roundup® "[h]ad Plaintiffs known"); *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (courts should not assume the truth of conclusory, contradicted allegations).  Moreover, Plaintiffs' theory is contradicted by their own citations to numerous publicly available studies, legislative actions, and court cases dating back to 1983 that they allege demonstrated glyphosate's carcinogenicity.  *Id.* ¶ 40-41; *cf., infra*, Part II (discussing publicly available bases for notice).  The failure to show that injury is traceable or

"causally linked" to Monsanto's representations requires dismissal of their claims.  *See Phillips v. Apple Inc.*, 2016 WL 1579693, at *6 (N.D. Cal. Apr. 19, 2016) (*citing, e.g.*, *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 919 (N.D. Cal. 2013)).

**Redressability.**  As discussed in Part III below, Plaintiffs do not plausibly allege that the medical monitoring they seek would redress their alleged injuries, because they do not allege that the requested tests are clinically available or capable of identifying the presence of NHL prior to the onset of symptoms.  This also defeats standing.

## II.    THE STATUTES OF LIMITATIONS BAR PLAINTIFFS' 19-YEAR-OLD CLAIMS

Plaintiffs filed their original complaint on September 26, 2023.  D.E. 1.  Their negligence claim is subject to a two-year statute of limitations, and their UCL claim is subject to a four-year statute of limitations, making September 26, 2019, the earliest possible date for accrual of any timely claim.  Cal. Civ. P. Code § 335.1 (negligence); *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 n.3 (Cal. 2005) (negligence); Cal. Bus. & Prof. Code § 17208 (UCL).  California claims accrue when the "last essential element to the cause of action" occurs.  *Hamilton v. TBC Corp.*, 328 F.R.D. 359, 381 (C.D. Cal. 2018).  Here, the injury Plaintiffs allege is not NHL itself.  Rather, their alleged injury is an increased *risk* of contracting NHL.  *See* Am. Compl. ¶¶ 80-81.  And they allege that increased risk arose upon exposure to Roundup® dating back to September 2004—*19 years* before they filed the original complaint.  *Id.* ¶¶ 19-20, 40, 78, 104, 109; D.E. 1 at ¶¶ 14-15.  Thus, their claims are time barred absent tolling.

Plaintiffs present two theories of equitable tolling: fraudulent concealment and the discovery rule.  Am. Compl. ¶¶ 82, 87.  For either theory to succeed, Plaintiffs must show that they exercised due diligence.  *Yetter v. Ford Motor Co.*, 428 F. Supp. 3d at 223 (quoting *Allen*, 96 F. Supp. 3d at 1071); *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 921 (Cal. 2005).  The statute of limitations begins to run once a plaintiff has actual *or constructive* knowledge of the facts giving rise to their claims.  *Id.* at 920; *Yetter*, 428 F. Supp. 3d at 223 (citing *Credit Suisse Secs. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012)).  And the knowledge required (actual or constructive) is only of a fact that should "excite suspicion"—"any fact that should excite [plaintiff's] suspicion

is the same as actual knowledge of his entire claim." *Conmar Corp. v. Mitsui & Co. (USA)*, 858 F.2d 499, 502 (9th Cir. 1988) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir.1975)); *accord Norgart v. Upjohn Co.*, 981 P.2d 79, 88 (Cal. 1999). To avoid the statute of limitations, a plaintiff must lack such knowledge despite acting "diligently in trying to uncover the facts giving rise to [their] claim." *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015).

Plaintiffs have not alleged such diligence. To the contrary, they allege that studies on the alleged carcinogenicity of glyphosate "became public in the 1990s." Am. Compl. ¶ 45 (citing *id.* ¶ 40). Likewise, they allege a laundry list of studies, legal changes, and court cases that were publicly known between September 2004 and September 2019. *Id.* ¶¶ 40, 42, 84. These include a 2004 De Roos study, a 2005 Peixoto study, a 2008 Eriksson study, a 2009 Benachour Study, the 2015 IARC monograph, a 2015 Dutch glyphosate ban, a 2016 Italian glyphosate ban, a 2017 VandeBerg Literature Review, 2018 and 2019 Indian glyphosate bans, a January 2019 French ban, an April 2019 French court ruling, and a 2019 American jury verdict. *Id.* ¶¶ 34-35, 40, 42, 84. The jury verdict likely refers to the highly publicized $2 billion California jury verdict in *Pilliod v. Monsanto* on May 13, 2019. No. RG17862702 (Cal. Super. Ct. 2019). Plaintiffs allege no explanation—much less a plausible one—for why diligence would have uncovered none of this.

Perhaps most notably, Plaintiffs' theory of carcinogenicity has been asserted in thousands of cases before this Court since 2016. Plaintiffs' own counsel cited the same documents on which Plaintiffs rely in public filings made years ago.[3] Cases alleging the same theory have been covered by major media for nearly a decade, advertised at unprecedented rates by plaintiffs' lawyers, and

---

[3] *See, e.g.*, D.E. 21-27 (Complaint for Damages ¶ 2, *Rolish v. Monsanto Co.*, No. 2:20-CV-01340 (C.D. Cal. Feb. 10, 2020) (Joseph Saveri Law Firm) (alleging that California and IARC "have recognized that the chemicals in Roundup® are likely to cause cancer in humans"); D.E. 21-28 (First Amended Class Action Complaint ¶ 1, *Ramirez v. Monsanto Company*, MDL No. 2741, No. 3:19-cv-02224 (June 24, 2020) (Robert L. Lieff) (alleging that "scientific evidence" "linked exposure to Defendant's Roundup® herbicide—including its active ingredient, glyphosate, alone and/or in combination with other Roundup® ingredients—to Non-Hodgkin's Lymphoma ('NHL')").

asserted by thousands of other plaintiffs. *See* Declaration of Jeff Wilkerson ¶¶ 20-34 & Exs. S-GG.[4]   The IARC monograph was likewise publicly released and covered heavily by the nation's largest news sources. *Id.* ¶¶ 14-19 & Exs. M-R.   And the emails Plaintiffs cite were publicly released in 2017, accompanied by nationwide press. *Id.* ¶¶ 2-8, 11–13 & Exs. A-G, J-L; Am. Compl ¶¶ 50, 55-56.   This wealth of publicly available information should have "excite[d] [Plaintiffs'] suspicion" long before they filed their complaint.

Plaintiffs' fraudulent-concealment theory also fails because the Amended Complaint does not "plead with particularity the facts giving rise to the" allegation of fraudulent concealment. *Yetter*, 428 F. Supp. 3d at 223 (quoting *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1071 (S.D. Cal. 2015)); *see also* Fed. R. Civ. P. 9(b).   In their fraudulent-concealment allegations, Plaintiffs identify two allegedly false statements: (1) the statement by "Bayer" that "[t]here is an extensive body of research on glyphosate and Bayer's glyphosate-based herbicide . . . that confirms these products can be used safely and that glyphosate does not cause cancer"; and (2) the statement by "Defendants" that Roundup® "can be used safely and . . . glyphosate does not cause cancer."  Am. Compl. ¶¶ 83, 84; *see also id.* ¶ 2 (defining "Bayer" to include former defendants Bayer AG and Bayer Corp.).   Plaintiffs do not allege when these statements were made or how.   They also do not allege with specificity who made the relevant statements.   And they do not allege that they encountered or relied on these statements.   These allegations fail to set out "the who, what, when, where, and how" of the alleged fraudulent concealment and thus fail to satisfy Rule 9(b)'s heightened pleading requirements.[5]   *Yetter*, 428 F. Supp. 3d at 220 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).   Having dropped their initial complaint's

---

[4] Monsanto has concurrently filed a Request for Judicial Notice of the exhibits attached to the Declaration of Jeff Wilkerson.

[5] The "how" required to plead fraud is particularly unclear in this case. *See Nat'l Ass. of Wheat Growers v. Bonta*, 85 F.4th 1263, 1278 (9th Cir. 2023) (noting that "IARC stands essentially alone in its determination that glyphosate is probably carcinogenic to humans, while EPA, OEHHA, and regulators from around the world conclude that it is not").

inadequately pleaded claim of fraud, Plaintiffs should not be permitted to plead around their obligations under Rule 9(b).

## III.   PLAINTIFFS HAVE NOT PLAUSIBLY PLEADED ENTITLEMENT TO A MEDICAL MONITORING REMEDY

Plaintiffs' request for medical monitoring can proceed only if they have plausibly alleged that "the need for future monitoring is a reasonably certain consequence of [their] toxic exposure and that the recommended monitoring is reasonable." *Potter*, 863 P.2d at 824; *see also Lockheed Martin Corp. v. Super. Ct.*, 29 Cal. 4th 1096, 1105 (2003). Five factors guide the analysis. *Riva*, 82 F. Supp. 3d at 1055 (dismissing medical-monitoring claim where plaintiffs had not pleaded facts addressing the first through third factors). Plaintiffs fail to plausibly allege the first, third, and fifth factors.

*Factor 1.* Plaintiffs do not allege facts demonstrating the "significance and extent of [their] exposure to" Roundup®. *Potter*, 863 P.2d at 824. As in their initial complaint, Plaintiffs allege only the duration of their exposure, *i.e.*, that they were "exposed to Roundup® products over a period of approximately 19 years." Am. Compl. ¶¶ 19-20; ¶¶ 77-81. They do not allege (i) how many times, (ii) at what levels, or (iii) in what manner they were exposed. For example, although they allege that "contact with Roundup" increases the risk of contracting NHL, they do not allege what type of contact would suffice or whether they came into contact with Roundup® in that manner.[6] *See id.* ¶ 85; *see also, e.g.*, *id.* ¶¶ 40, 46, 58-59. This is insufficient to justify medical monitoring. *Riva*, 82 F. Supp. 3d at 1057.

*Factor 3.* Plaintiffs allege nothing at all regarding "the relative increase in the chance of onset of disease [in Plaintiffs] as a result of the exposure." *Potter*, 863 P.2d at 824-25. As noted above, the Court specifically flagged this issue for Plaintiffs in the hearing on Monsanto's motion

---

[6] Plaintiffs also do not allege whether they were exposed to *non-Roundup*® glyphosate-based products or, if so, whether or how they can show that their exposure to Roundup®-brand products meaningfully increased any risk of NHL. Nor do they allege whether they were exposed to other, non-glyphosate agricultural chemicals or pesticides and, if so, how and to what extent their alleged exposure to Roundup® products increased their risk of NHL given these other exposures.

to dismiss the original complaint. *See, supra*, Part I (citing Tr. at 7:10-15). Despite this, Plaintiffs do not allege anything regarding their "chances of developing [NHL] had [they] not been exposed." *Potter*, 863 P.2d at 825. Nor do they allege "the chances of the members of the public at large of developing [NHL]." *Id.* Plaintiffs' failure to allege "facts regarding the 'quantitative (or even qualitative) increased risk to individuals'" dooms their bid for medical monitoring. *Riva*, 82 F. Supp. 3d at 1062 (quoting *Abuan v. Gen. Elec. Co.*, 3 F.3d 329, 335 (9th Cir. 1993)).

**Factor 5.** Plaintiffs do not plausibly allege the "clinical value of early detection and diagnosis" because they do not plausibly allege that a test exists to discover NHL prior to onset of symptoms. *Potter*, 863 P.2d at 825. Plaintiffs point to "general screenings" for lumps, pain, or other symptoms. Am. Compl. ¶ 74. These "general screenings" do not help Plaintiffs because they necessarily cannot detect NHL before the onset of symptoms.

Plaintiffs also contend that serum and genetic tests could indicate **risks** for developing NHL, but they conspicuously do not allege that the tests are clinically available or capable of detecting the presence of NHL. *Id.* ¶¶ 72-73. Plaintiffs first contend that a National Cancer Institute ("NCI") review of eight studies indicated "tests of serum for certain immune marke[r] concentrations provide robust evidence of an association between elevated immune marker concentrations and **the risk of developing** subtypes of NHL." Am. Compl. ¶ 72 (emphasis added). But they do not allege that serum tests could discover NHL, nor that confirming risk provides any clinical value. *Id.* Moreover, they do not allege that the serum tests used in the study are clinically available. *Id.* Plaintiffs also contend that "NCI investigators within the Agricultural Health Study cohort" found an association between glyphosate use and the mosaic loss of chromosome-Y. *Id.* ¶ 73. They then contend that these observed genetic changes "are early indicators of **future cancer risk**." *Id.* (emphasis added).[7] Again, Plaintiffs stop short of alleging that the genetic test would

---

[7] Plaintiffs appear to refer to a 2023 study by Vicky C. Chang and others. Vicky C. Chang, et al., *Glyphosate Use and Mosaic Loss of Chromosome Y Among Male Farmers I the Agricultural Health Study*, ENV'T HEALTH PERSPECTIVES (Dec. 2023), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10699410/. That study did *not* conclude there is a connection between the

actually detect NHL—merely that it could indicate future risk of cancer generally.  *Id.*  And they again do not allege that the genetic test is clinically available.[8]  These allegations fail to establish the possibility of early detection and diagnosis.

Additionally, the Amended Complaint does not plausibly allege the benefit of a court-ordered medical monitoring program.  Indeed, Plaintiffs allege that the Diagnostic Assistance Grant Program ("DAGP") *already exists* for workers to obtain screenings.  Am. Compl. ¶ 75.  And despite contending that the proposed class members "require more frequent screenings," Plaintiffs do not allege the frequency of DAGP screenings or the frequency of screenings that would suffice to detect NHL.  *Id.*  Plaintiffs thus leave the Court to guess how medical monitoring could "amplif[y] and augment[]" the existing DAGP.

Plaintiffs do not plausibly allege the significance and extent of their exposure to Roundup®, the relative increase in their risk of contracting NHL as a result of exposure, or the clinical value of early detection and diagnosis through the proposed tests.  They therefore have not plausibly alleged the availability of a medical-monitoring remedy.  The Court should dismiss their Amended Complaint.

## IV.   PLAINTIFFS HAVE NOT STATED A NEGLIGENCE OR NEGLIGENT-MISREPRESENTATION CLAIM

When a negligence claim seeks medical monitoring as a remedy, the *Potter* factors specify what Plaintiffs must allege to show a sufficient risk of harm under the damages element and to show causation.  *Lockheed Martin Corp. v. Super. Ct.*, 29 Cal.4th 1096, 1105 (2003).

---

mosaic loss of chromosome-Y and NHL.  *Id.*  Instead, the study noted that "[a]lthough evidence is inconclusive, [mosaic loss of chromosome-Y] has been previously associated with hematologic cancers, and more recently, with certain solid tumors, cardiovascular disease, and Alzheimer's disease."  *Id.*  The study also cautioned that "[f]uture research is needed to confirm our novel findings and to further explore specific mechanisms or bio-markers through which glyphosate exposure may contribute to mLOY, other mCAs, and cancer risk."  *Id.*

[8] Even if a Y-Chromosome test were clinically available, it would not benefit Plaintiff Isabel Paz-Hernandez or other female class members.

Because the Amended Complaint does not satisfy the first, third, and fifth *Potter* factors as explained in Part III above, it also fails to make adequate allegations of damages and causation of injury.  Moreover, as explained in Part I above, Plaintiffs have also failed to allege adequately that their exposure to Roundup® was caused by the conduct they have put at issue.  Because Plaintiffs have not adequately alleged their need for medical monitoring or causation, their negligence claim should be dismissed.

Plaintiffs' claim of negligent misrepresentation fares no better.  Negligent misrepresentation claims are grounded in fraud and thus are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Neilson v. Union Bank of Cal., N.A.,* 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.").

The Amended Complaint falls far short of alleging the "who, what, when, where, and how" of the alleged misrepresentation required by Rule 9(b).  *See Depot, Inc.*, 915 F.3d at 668.  Although Plaintiffs "vaguely allege that defendants made [] misrepresentations 'in the course of marketing' [] to plaintiffs over a period a years," they do little to allege specifics.  *Id.*  Despite alleging "false and misleading assertions," "unethical practices," and advocacy-oriented internal emails, lobbying efforts, and participation in scientific debate, they allege only a few specific purportedly false advertisements or public statements.  The two statements discussed in Plaintiffs' fraudulent-concealment allegations fail to satisfy Rule 9(b) for the reasons explained in Part II above.  And the only other specific statement Plaintiffs put at issue is that glyphosate "targets an enzyme found in plants, but not in people or pets."  Am. Compl. ¶ 58.  Plaintiffs allege that this statement is contained on product labels, but they do not allege that they even saw this statement, much less relied on it, just as they do not allege reliance on any of the unspecified statements.  *See id.* ¶¶ 58-60, 106; *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014) (holding that the plaintiff failed to plead reliance with the requisite specificity); *Kearns v. Ford. Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) ("Kearns also failed to specify which sales material he relied upon in making his

decision to buy a CPO vehicle."). This is not enough to satisfy Rule 9(b). Thus, Plaintiffs' negligent misrepresentation claims should be dismissed.

## V.   PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE CLAIM UNDER THE UCL

Plaintiffs' Amended Complaint does not allege facts sufficient to satisfy the UCL's standing requirements, which require a plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011) (emphases in original); *see also* Cal. Bus. & Prof. Code § 17204.

First, the Amended Complaint does not allege that Plaintiffs lost any money or property, much less enough to qualify as injury in fact. Plaintiffs do not allege that they purchased Roundup®, and they do not seek damages even under their negligence claim. Instead, their theory of injury remains that "the injury would be the interest in medical monitoring or other types of injury down the road." Tr. at 6:1-2. Because that is not an economic injury, Plaintiffs' UCL claim should be dismissed. *See Branick v. Downey Savings & Loan Ass'n*, 39 Cal. 4th 235, 240 (2006).

Second, the Amended Complaint does not adequately allege causation for the reasons discussed above. Plaintiffs do not allege that they heard or relied on any statements or omissions by Defendants. They contradict their own allegation that fuller knowledge would have changed their conduct by admitting that they continue to expose themselves to Roundup®. And they say nothing about the significance and extent of exposure that allegedly increases the risk of NHL or about the significance and extent of exposure that they experienced.

## VI.   PLAINTIFFS' REQUEST FOR DECLARATORY JUDGMENT FAILS TO STATE A CLAIM, SERVES NO APPROPRIATE PURPOSE, IS DUPLICATIVE, AND SEEKS TO CIRCUMVENT RULE 9(B)

Plaintiffs' declaratory judgment claim should be dismissed for multiple reasons.

*First*, declaratory judgment is "properly considered a remedy," not a cause of action. *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010). This is because the federal Declaratory Judgment Act governs the "procedural question" of "whether to

exercise federal jurisdiction" to grant declaratory judgment. *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 753 (9th Cir. 1996), overruled on other grounds by *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (1998) (en banc); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("[T]he Declaratory Judgment Act is procedural only."); 28 U.S.C. § 2201. And "declaratory relief under the Declaratory Judgment Act is not a cause of action in and of itself, but rather, a remedy." *Gilliam v. Bank of Am., N.A.*, 2018 WL 6537160, at *16 (C.D. Cal. June 22, 2018) (collecting cases). Thus, a claim for declaratory relief must be dismissed if the underlying causes of action on which it is based are dismissed. *Id.* Even if the other causes of action survive, it is still appropriate to dismiss a putative declaratory judgment cause of action to "serve the felicitous purpose of narrowing the action, by eliminating superfluous or unnecessary claims and concentrating the parties' (and the Court's) energies on the essence of the underlying dispute." *Rosenfeld*, 732 F. Supp. 2d at 975. In short, because declaratory judgment is not a cause of action, Count III's "Claim for Declaratory Relief" should be dismissed for failure to state a claim.

*Second*, "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1356-57 (9th Cir.) (en banc). The purpose of declaratory judgment is to provide prospective relief: *i.e.*, adjudication of rights and obligations in an "actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has not yet done so." 10B WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2751 (4th ed. 2024). Here, Plaintiffs allege that they have already incurred an increased risk of contracting NHL and thus are already in a position to seek coercive remedies (indeed, they seek the coercive remedy of medical monitoring). *See, e.g.*, Am. Compl. ¶¶ 78-80, 118, 127. Plaintiffs do not allege that a declaration of rights and obligations would provide them any prospective benefit. "[D]eclaratory judgment without the possibility of prospective effect would be superfluous." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095 (9th Cir. 2004).

*Third*, a district court may dismiss a claim for declaratory relief as "purely duplicative" if adjudication of other claims would resolve the questions on which declaratory relief is sought. *Top Agent Network, Inc. v. Zillow, Inc.*, 2015 WL 7709655, at *9 (N.D. Cal. Apr. 13, 2015); *see also Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action."). Plaintiffs' claim for declaratory relief should be dismissed because it is duplicative of their negligence and UCL claims. It expressly seeks "answers to the [allegedly] common questions at the heart of this litigation." Compl. ¶ 125. But adjudication of Plaintiffs' other claims will necessarily resolve any "questions at the heart of this litigation," without the need for a separate cause of action requesting that they be addressed.

*Fourth*, Plaintiffs' claim for declaratory relief asks the Court to address questions like "whether Defendants engaged in fraudulent . . . practices," which do not lie at the heart of this litigation. Am. Compl. ¶ 123(h). These questions repackage Plaintiffs' former claims that now lie outside the proper scope of this case because they are not pleaded with the specificity required by Rule 9(b), including the now-abandoned claim of fraud in Plaintiffs' original complaint. *See* D.E. 1 ¶¶ 203-10. Answering these questions in response to a claim for declaratory relief would allow an end-run around applicable pleading requirements. *See supra*, Parts II and IV.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should dismiss Plaintiffs' complaint.

Dated: September 13, 2024

By: */s/ John J. Rosenthal*

JOHN J. ROSENTHAL
Winston & Strawn LLP
jrosenthal@winston.com
1901 L Street NW
Washington, DC 20036

JEFF WILKERSON
Winston & Strawn LLP
jwilkerson@winston.com
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202

*Counsel for Defendant*

16