Elizabeth A. Fegan (CA Bar #355906)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Fl.
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Additional Counsel for
Plaintiff Aaron Sheller on Signature Page

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br>*Sheller v. Bayer AG, et al.*, Case No. 3:19-cv-07972 | **PLAINTIFF AARON SHELLER'S RESPONSE TO THE ORDER TO SHOW CAUSE WHY THE SHELLER CASE SHOULD NOT BE DISMISSED FOR FAILURE TO ADEQUATELY ALLEGE STANDING** |

**INTRODUCTION**

Plaintiff Aaron Sheller respectfully responds to the Court's September 19, 2024 Order to show cause why his lawsuit should not be dismissed for failure to adequately allege standing.

Plaintiff Sheller and the proposed class allege that they have suffered a concrete, particularized, and actual injury in fact: exposure to glyphosate caused by use of Monsanto's Roundup at levels sufficient to significantly increase their risk of non-Hodgkin's lymphoma ("NHL") relative to the general population. They seek a remedy that Indiana and other states provide for this injury: payment or reimbursement from Monsanto for the monitoring necessitated by this exposure and increased risk to detect, and through early intervention ameliorate, the consequences of NHL. These allegations suffice to satisfy every predicate and element of the negligence claims they bring and medical monitoring relief they seek, under the law of Indiana

- 1 -

Plaintiff Aaron Sheller's Response To The Order To Show Cause Why The Sheller Case Should Not Be Dismissed For Failure To Adequately Allege Standing, Case No. 3:19-cv-07972

and the other states included in the class. Plaintiff thus establishes standing under controlling Supreme Court and Ninth Circuit law.

First, Plaintiff has Article III standing because Indiana law recognizes medical monitoring relief for traditional tort claims, like negligence, even in the absence of present physical injury. Second, in the Ninth Circuit, an allegation of increased risk of injury can suffice to establish an Article III injury-in-fact where the increased risk of injury is credible and not conjectural. Moreover, the Ninth Circuit's recent decision in *Bowen v. Energizer Holdings, Inc.*, No. 23-55116, 2024 U.S. App. LEXIS 24741, *20 (9th Cir. Oct. 1, 2024), instructs that this Court should not resolve merits issues, here the quantification of risk, to resolve Article III standing at this stage.

Consistent with Supreme Court and Ninth Circuit law on standing and Indiana law regarding medical monitoring relief for traditional tort claims, Plaintiff has alleged a credible injury in fact. He has alleged that glyphosate is a probable human carcinogen, identified numerous studies which have found a connection between exposure to glyphosate and disease (including NHL), described his significant exposure to Roundup over 15 years, and alleged that this exposure has caused him to be at increased risk of disease necessitating medical monitoring. Thus, this Court should find that Plaintiff has satisfied Article III's standing requirements at this stage. Finally, the question whether Plaintiff has representative capacity to represent class members in other states should be deferred to the Court's class certification analysis under Fed. R. Civ. P. 23.

Plaintiff respectfully requests that this Court find that Plaintiff has demonstrated cause why his allegations satisfy Article III standing. Alternatively, Plaintiff requests leave to amend.

**FACTS ALLEGED**

The active ingredient in Roundup, glyphosate, is a broad-spectrum herbicide, which has been designated by the United Nations International Agency for Research on Cancer ("IARC")

as a Class 2A "probable carcinogen" based on the mechanistic evidence of carcinogenicity in humans and sufficient evidence of carcinogenicity in animals. An IARC Working Group further found an increased risk between exposure to glyphosate and NHL. *Sheller* Compl. ¶¶ 45–51. Numerous other studies have demonstrated the carcinogenicity of glyphosate and/or Roundup, as well as the serious and dangerous risks associated with the use of and exposure to Roundup including the increased risk of NHL. *Id.* ¶¶ 34–39, 70–71.[1]

A resident of Indiana, Plaintiff is a partial owner of Sheller Farms, LLC ("Farm"). As an owner who works the acreage owned by the Farm and other acreage for which the Farm is contracted to work, Plaintiff regularly participated in the spraying of 300 to 700 gallons of Roundup on approximately 1,000-3,000 acres of farmland twice per year for 15 years. *See, e.g., Sheller* Compl. ¶¶ 12-13, Ex. A. Until in or about 2018, Plaintiff only wore gloves while spraying Roundup but was not warned and did not know he should wear any other protective gear. *Id.* Plaintiff alleges that, as a direct and proximate result of being exposed to Roundup, he is at an increased risk for developing NHL and other illness. *Id.*

Plaintiff originally filed his complaint in the United States District Court for the Southern District of Indiana, and was transferred to this District by the JPML. For his Indiana state law negligence claim, Plaintiff seeks relief in the form of medical monitoring to detect any latent disease processes as early as possible. *Id.* ¶ 9.[2]

## LEGAL ARGUMENT

To maintain an action in federal court, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

---

[1] Originally filed Sept. 30, 2019, Plaintiff's Complaint could be amended to include additional evidence and studies with the Court's leave.
[2] *See* also *Sheller* Compl. ¶ 8 (defining multistate Medical Monitoring Class).

- 3 -

Plaintiff Aaron Sheller's Response To The Order To Show Cause Why The Sheller Case Should Not Be Dismissed For Failure To Adequately Allege Standing, Case No. 3:19-cv-07972

redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish injury in fact [for Article III standing], a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.

### A. Indiana law recognizes medical monitoring as a tort remedy "even if there is no evidence of a present physical injury."

Because jurisdiction in the federal courts is based on diversity of citizenship, Indiana substantive law and federal procedural law govern. *Ross Dress for Less, Inc. v. Makarios-Oregon, LLC*, 39 F.4th 1113, 1118 (9th Cir. 2022). "[F]ederal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise." *King v. Order of United Com. Travelers*, 333 U.S. 153, 158 (1948). Where a state's highest court has not addressed a question, federal courts must use "intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance to decide how the [Indiana] Supreme Court would rule." *Ross Dress for Less, Inc.*, 39 F.4th at 1118 (citing *In re Kirkland*, 915 F.2d 1236, 1238-39 (9th Cir. 1990)).

Plaintiff has alleged a common law claim for negligence under Indiana law, including the elements of duty,[3] breach,[4] and proximate cause.[5] *See Kelly v. Ind. BMV*, 234 N.E.3d 222, 227 (Ind. App. 2024). For that reason alone, Plaintiff has stated a plausible claim at this stage. Medical

---

[3] Sheller Compl., ¶¶ 89, 104 (describing duties).
[4] *Id.*, ¶¶ 5, 42, 71,105–109 (listing Defendant's breaches of duties).
[5] *Id.*, ¶¶ 9, 111–112 (describing causation between Defendant's breaches and Plaintiff's injury).

- 4 -

monitoring is the relief that Plaintiff seeks for his negligence claim. The Indiana Court of Appeals recognized that a plaintiff may obtain medical monitoring as a tort remedy even absent present physical injury. *See Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49, 54 (Ind. Ct. App. 1993) (rejecting the argument that the plaintiffs "contentions are insufficient to entitle him to damages for medical monitoring"). There is absolutely no "persuasive evidence" that the Indiana Supreme Court would "rule otherwise," making *Gray* controlling.

In *Gray*, an owner of property adjacent to a city dump filed a nuisance claim after the defendant's contractors disposed of toxic chemicals at the dump over a period of years. He alleged that his property became contaminated, which put "his health . . . at risk" and sought "medical monitoring to diagnose health problems caused by latent disease processes." *Id*. at 52. The trial court granted the defendant's motion to dismiss for failure to state a claim.

On appeal, the Indiana Court of Appeals reversed. The plaintiff argued in relevant part that, because his health was "at risk" from the toxic chemical contamination, the issue of damages had been sufficiently pled. The Court of Appeals agreed, and it emphasized whether the plaintiff was entitled to damages (*i.e*., monitoring costs), and how much, were questions of fact. *Id*. at 54.

*Gray* is consistent with Indiana law permitting a plaintiff to recover for the universe of harm proximately caused by a defendant's tortious conduct, including future medical expenses. *See, e.g., Atterholt v. Herbst*, 902 N.E.2d 220 (Ind. 2009) (plaintiff entitled to damages caused by defendant's tortious conduct); *Griffin v. Acker*, 659 N.E.2d 659 (Ind. Ct. App. 1995) (acknowledging availability of damages for future medical expenses); IND. MODEL CIV. JURY INSTR. 703 (permitting award of damages for necessary future medical care). For this reason, several federal courts have recognized that Indiana law recognizes a claim for medical monitoring damages. *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1152 (S.D. Fla. 2021); *Allgood v. GMC*, No. 1:02-cv-1077-DFH-TAB, 2005 LEXIS 43693 (S.D. Ind. Sep. 12, 2005).

- 5 -

Plaintiff Aaron Sheller's Response To The Order To Show Cause Why The Sheller Case Should Not Be Dismissed For Failure To Adequately Allege Standing, Case No. 3:19-cv-07972

Instructive is the MDL court's decision in *In re Zantac (Ranitidine) Prods. Liab. Litig.* There, plaintiffs filed a medical monitoring class action complaint alleging they used the defendant's product, which allegedly increased the plaintiffs' risk of cancer. Applying Indiana law, the *Zantac* court concluded that "the Indiana Supreme Court would recognize medical monitoring as an available remedy" in a negligence action. *Id.* at 1162, 1166. The court explained that "[a]t least one Indiana appellate court [*Gray*] and one federal district court [*Allgood*] have recognized medical monitoring as a form of damages," *id.* at 1166,[6] and recognized that "*Gray* is also consistent with Indiana caselaw permitting plaintiffs to recover for all harms proximately caused by a defendant's tortious conduct, including future medical expenses." *Id.* at 1165. Consistent with Indiana law, at this stage, Mr. Sheller's allegations are sufficient to establish a colorable "injury-in-fact."

### B. General allegations of credible injury suffice at the pleading stage to survive a challenge to Article III standing.

At the September 19, 2024 case management conference, this Court questioned whether Plaintiff needed to quantify the level of exposure or increased risk to survive an Article III standing challenge. However, at this stage, Plaintiff need only allege facts sufficient to demonstrate that the alleged increased risk of injury is credible and not conjectural, but does not need to quantify the risk which would require resolution of factual issues going to the merits. *Bowen v. Energizer Holdings, Inc.*, 2024 U.S. App. LEXIS 24741, *20 (9th Cir. Oct. 1, 2024). *See also Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) ("…a plaintiff seeking to

---

[6] *See also id.* at 1166–67 (explaining that *Allgood* contemplated medical monitoring in cases involving "a recognized tort such as nuisance," and thus *Allgood* "contemplated medical monitoring damages for torts beyond just nuisance, and negligence certainly qualifies as a recognized tort.") (internal citations omitted).

- 6 -

Plaintiff Aaron Sheller's Response To The Order To Show Cause Why The Sheller Case
Should Not Be Dismissed For Failure To Adequately Allege Standing, Case No. 3:19-cv-07972

compel funding of a medical monitoring program after exposure to toxic substances satisfies the injury-in-fact requirement if he is unable to receive medical screening.") (citing *Pritikin v. Dep't of Energy*, 254 F.3d 791, 796–97 (9th Cir. 2001)); *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 575 (6th Cir. 2005) (holding it is "unnecessary" for a plaintiff to demonstrate a quantitative increase in the risk associated with using an allegedly defective product for purposes of assessing standing because to "require a plaintiff to so clearly demonstrate [his] injury in order to confer standing is to prematurely evaluate the merits of [his] claims.").

The Ninth Circuit's recent decision in *Bowen v. Energizer Holdings, Inc.* is instructive. In *Bowen*, the Ninth Circuit reversed the district court's dismissal of the plaintiff's case for failure to establish Article III standing. The plaintiff had alleged the "Banana Boat" sunscreen she purchased contained benzene, "a carcinogen that scientists have determined can cause cancer." 2024 U.S. App. LEXIS 24741, at *3-4. The defendants mounted a factual attack to jurisdiction and filed a Rule 12(b)(1) motion, arguing that small amounts of benzene are not unsafe, and thus the plaintiff could not demonstrate an injury-in-fact. The defendants relied upon documentation from the Food and Drug Administration (FDA) in support of this contention. Relying on the guidance from the FDA, the district court dismissed the plaintiffs' case for lack of standing. In reversing the district court, the Ninth Circuit held that the district court "erred by failing to construe disputed facts" in the plaintiff's favor, and, by "prematurely resolving merits issues." *Id*. at *5.

*Bowen* involved a factual attack to jurisdiction, such that the district court was permitted to consider evidence outside the pleadings when ruling on injury-in-fact. Even in that context however, the Ninth Circuit cautioned that it is "not the district court's role to weigh evidence that implicates both jurisdictional and merits issues." *Id*. at *27. Here, on the other hand, Monsanto has *not* mounted a factual attack. Rather, the Court's Order contemplates a facial attack to

- 7 -

standing, for which the Ninth Circuit instructs that it "accepts the truth of the plaintiff's allegations" under the "familiar Rule 12(b)(6) standard," and a plaintiff "need not support [his] allegations with evidence at the pleading stage." *Id*. at n.6, n.7, 27.

The court's analysis in *Allgood v. GMC* is also instructive. In *Allgood*, Indiana property owners alleged that the defendant polluted their properties with toxic chemicals from a nearby factory. The plaintiffs filed a negligence claim, seeking an award of "the reasonable and necessary costs of medical monitoring of the Plaintiffs' health over their lifetimes" due to exposure. *Id*. at *4-5. The defendant filed a motion to dismiss, arguing medical monitoring relief was not available under Indiana law in the absence of present bodily injury. *Id*. at *5. The district court denied the motion after an extensive analysis. *See id*. at *19–23.

Relying principally on the Indiana Court of Appeals' decision in *Gray*, the *Allgood* court did not require that the plaintiffs quantify the amount by which the toxic chemicals increased their risk. Like here, the *Allgood* plaintiffs alleged that the toxic chemicals to which they were exposed were considered probable human carcinogens. *Compare Allgood* Amended Compl., ¶¶ 54-56 (Ex. B hereto), with *Sheller* Compl., ¶¶ 48-50. The *Allgood* plaintiffs further generally alleged that the exposure "pose[d] an imminent and substantial endangerment to the Plaintiffs and others who have been and continue to be exposed to PCB's[sic]." *Allgood* Amended Compl., ¶ 124. Denying the motion to dismiss, the court explained:

> For present purposes, this court must assume that plaintiffs will be able to prove that their concerns about their future health are reasonably justified. The question then would become whether they could prove that the expenses of medical monitoring are reasonably necessary and that tortious acts by General Motors were a proximate cause of those expenses.

*Allgood*, 2005 U.S. Dist. LEXIS 43693, *18. The court's analysis is applicable here where Plaintiff is at the pleading stage, expert discovery has not yet been completed in these medical

- 8 -

Plaintiff Aaron Sheller's Response To The Order To Show Cause Why The Sheller Case Should Not Be Dismissed For Failure To Adequately Allege Standing, Case No. 3:19-cv-07972

monitoring cases, and Defendant has not yet filed for summary judgment. *See Sutton*, 419 F.3d at 571 ("We find the district court incorrectly attempted to evaluate the merits of [plaintiff's] contention that he is entitled to medical monitoring costs. During the threshold standing inquiry, the district court should have accepted [plaintiff's] allegations as true and construed the complaint in [plaintiff's] favor.").[7] Consistent with Supreme Court and Ninth Circuit law on Article III standing and Indiana law on tort claims seeking medical monitoring relief specifically, Plaintiff has alleged a credible injury in fact, satisfying Article III's standing requirements.

### C. The claims of putative class members from other states should be evaluated at the class certification stage under Fed. R. Civ. P. 23

The Ninth Circuit instructs that "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (citing NEWBERG ON CLASS ACTIONS § 2:6). Thus, at this stage, the only question is whether Plaintiff Sheller has Article III standing to bring a claim on his own behalf under Indiana law. This Court will later consider whether Plaintiff has representative capacity under Fed. R. Civ. P. 23 to represent class members who are citizens of different states where each seeks the same medical monitoring relief. *See, e.g., In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-md-02966-RS, 2023 LEXIS 83876, at *38 (N.D. Cal. May 12, 2023) ("[O]n the question of standing in class actions generally, [the Ninth Circuit] has held that class plaintiffs can represent absent class members whose claims do not 'implicate a

---

[7] *Cf. Sommerville v. Union Carbide Corp.*, 2024 U.S. Dist. LEXIS 86064, *20 (S.D. W.Va. May 13, 2024) (granting defendant's summary judgment motion as to state law claim for medical monitoring after excluding the plaintiffs' expert, explaining: the "unreliable model was then used to assume that a speculative disease might someday materialize in some unknown person" and thus the plaintiff failed to "establish an imminent injury sufficient to survive a standing challenge.").

- 9 -

Plaintiff Aaron Sheller's Response To The Order To Show Cause Why The Sheller Case
Should Not Be Dismissed For Failure To Adequately Allege Standing, Case No. 3:19-cv-07972

significantly different set of concerns.'") (citing *Melendres*); see also id. at *40 ("Defendants have made no suggestion that the laws of the respective Class States differ so significantly as to prevent Class Plaintiffs from being either typical of the class members in those states or inadequate to represent them. In the absence of such a showing …, there is no Article III standing problem."); *Senne v. Kan. City Royals Baseball Corp.*, No. 14-cv-00608-JCS, 2021 LEXIS 137819, at *66 (N.D. Cal. July 23, 2021) (same); *Kutza v. Williams-Sonoma, Inc.*, No. 18-cv-03534-RS, 2018 LEXIS 192456, at *8 (N.D. Cal. Nov. 9, 2018) (same). *See also Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 93 (2d Cir. 2018) ("as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Fed. R. Civ. P. 23(b)(3), not a question of 'adjudicatory competence' under U.S. CONST. art. III.") (citations omitted); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) (explaining that whether a plaintiff could bring a putative class action on behalf of out-of-state class members "ha[d] nothing to do with standing, though it may affect whether a class should be certified"). Accordingly, Plaintiff's capacity to represent class members from other states should be evaluated during the class certification stage under Fed. R. Civ. P. 23.

## CONCLUSION

Plaintiff respectfully requests that this Court find that Plaintiff has demonstrated cause why he satisfies the standing requirements of Article III and permit his case to proceed. Alternatively, Plaintiff respectfully requests leave to file an amended complaint.

Dated: October 4, 2024

/s/ *Elizabeth A. Fegan*
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Phone: 312-741-1019
Fax: 312-264-0100
beth@feganscott.com

- 10 -

Plaintiff Aaron Sheller's Response To The Order To Show Cause Why The Sheller Case Should Not Be Dismissed For Failure To Adequately Allege Standing, Case No. 3:19-cv-07972

Kyle A. Jacobsen
FEGAN SCOTT LLC
322 North Shore Drive
Building 1B, Suite 200
Pittsburgh, PA 15212
Phone: 484-352-2318
Fax: 312-264-0100
kyle@feganscott.com

William N. Riley
Russell B. Cate
RILEYCATE, LLC
11 Municipal Drive, Suite 320
Fishers, IN 46038
Phone: (317) 588-2866
Fax: (317) 458-1875
wriley@rileycate.com
rcate@rileycate.com

*Counsel for Plaintiff Sheller*

- 11 -

Plaintiff Aaron Sheller's Response To The Order To Show Cause Why The Sheller Case Should Not Be Dismissed For Failure To Adequately Allege Standing, Case No. 3:19-cv-07972

**CERTIFICATE OF SERVICE**

I certify that, on October 4, 2024, I electronically transmitted the foregoing Plaintiff Aaron Sheller's Response to the Order to Show Cause Why the Sheller Case Should Not be Dismissed for Failure to Adequately Allege Standing to the Clerk of the court using the ECF system, which served all attorneys of record.

>*/s/ Elizabeth A. Fegan*
> Elizabeth A. Fegan