Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
Itak K. Moradi (SBN 310537)
David Lerch (SBN 229411)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:  jsaveri@saverilawfirm.com
        cyoung@saverilawfirm.com
        imoradi@saverilawfirm.com
        dlerch@saverilawfirm.com

Robert L. Lieff (SBN 37568)
P.O. Box A
Rutherford, CA 94573
Telephone: (415) 250-4800
Email:  rlieff@lieff.com

David Strouss (*pro hac vice forthcoming*)
Evan Hoffman (*pro hac vice forthcoming*)
**THORNTON LAW FIRM LLP**
84 State Street, Fourth Floor
Boston, MA 02109
Telephone: (617) 720-1333
Email:  dstrouss@tenlaw.com
        ehoffman@tenlaw.com

David Bricker (SBN 158896)
**THORNTON LAW FIRM LLP**
2121 Avenue of the Stars, Suite 800
Los Angeles, CA 90067
Telephone: (310) 282-8676
Facsimile: (310) 388-5316
Email:  dbricker@tenlaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONAS PEREZ-HERNANDEZ, ISABEL PAZ-HERNANDEZ, MOISES PEREZ-PAZ, ALLISON PEREZ-PAZ, and ABIGAIL PEREZ-PAZ, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>BAYER AKTIENGESELLSCHAFT, a German joint-stock company; BAYER CORPORATION, and Indiana corporation; and MONSANTO COMPANY, a Delaware corporation,<br><br>*Defendants*. | MDL No. 2741<br>Case No. 3:23-cv-04946<br><br>**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE AS TO STANDING**<br><br><br>Place: San Francisco, Courtroom 4, 17th Floor<br>Date: October 31, 2024<br>Time: 2:00 p.m.<br>Judge: Hon. Vince G. Chhabria |

## I.  INTRODUCTION

Plaintiffs' lawsuit seeks redress from Monsanto for their injuries resulting from exposure to the toxin glyphosate contained in Monsanto's widely marketed and sold Roundup herbicide. Plaintiffs bring claims under California law for negligence, unfair competition, and declaratory relief on behalf of a class of occupational workers, and seek relief in the form of a medical monitoring program aimed at early detection, intervention, and diagnosis of NHL, a deadly cancer linked to Roundup exposure. Plaintiffs allege Monsanto's negligence has increased their risk of future harm regardless of manifestation of current symptoms, for which medical monitoring is an appropriate remedy under settled California law. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1008-09, 863 P.2d 795, 824-25 (Cal. 1993). Because exposure to toxic substances involves latent risks, California and numerous other states recognize medical monitoring costs as compensation for exposure to toxic substances absent present physical injury; indeed, state legislatures have begun codifying this right.[1]

This Court has ordered Plaintiffs to show whether they have alleged facts sufficient to confer standing to bring this suit. Sept. 19, 2024 Hr'g Tr. at 26:8-11. As confirmed at the recent hearing, Monsanto raises a facial attack to Plaintiffs' standing, as distinguished from a factual attack.[2] *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (explaining different standards of review applicable to facial and factual standing attacks).

Plaintiffs have set forth with particularity sufficient facts to establish Article III standing, i.e., that plausibly show injury-in-fact, traceability, and redressability. As set forth in Section II.A., Plaintiffs allege facts upon which a finder of fact should rely under *Potter* to determine whether the record ultimately demonstrates, through reliable medical expert testimony, that the need for future monitoring is a reasonably certain consequence of plaintiff's toxic exposure, and

---

[1] Vermont, Minnesota, and Ohio have introduced bills to codify the right for plaintiffs without present injury to file lawsuits against chemical manufacturers for medical monitoring costs, and Vermont signed the first into law in 2022. 2022 VT S. 113 (Act 93).

[2] In its subsequent docket entry setting this OSC, the Court denied Monsanto's motion to dismiss as moot. ECF No. 19268.

that monitoring is reasonable. *Potter v. Firestone*, 6 Cal. 4th at 1009.[3] The Court has focused on the third factor under *Potter* to ask whether Plaintiffs allege and could show a relative increase in contracting NHL based on their exposure. Indeed, Plaintiffs allege a causal link between glyphosate and Roundup, and that their exposure to Roundup has relatively increased their risk.[4] While, as set forth herein, the quantification of that risk is disputed, Plaintiffs have plausibly pled—and cited reliable evidence in support which would show—the increased risk of NHL from glyphosate exposure. Facts which plausibly show credible increased risk are sufficient for standing. And, as detailed in Sections II.B. and II.C., Plaintiffs have likewise sufficiently alleged their injury is traceable to Monsanto's conduct and that the medical monitoring proposed would redress future injury by enabling early detection and diagnosis of NHL through specific tests and screening, and thereby would minimize future injuries and promote better health outcomes.

Whether a plaintiff seeking monitoring meets the *Potter* factors is a question generally reserved for the trier of fact, as competent medical testimony is required to determine "whether and to what extent a plaintiff's exposure to toxic chemicals in a given situation justifies future periodic monitoring." *Id.*[5] To the extent the Court's standing inquiry would require the consideration of evidence rather than an evaluation of Plaintiffs' allegations, Plaintiffs ask for the opportunity to develop the record through discovery and present it for adjudication to the Court.[6]

## II. STANDARD

To establish standing, a plaintiff must show it "(1) suffered injury in fact, (2) that is fairly

---

[3] Under *Potter*, in determining the reasonableness and necessity of monitoring, the following factors are relevant: (1) the significance and extent of exposure; (2) the toxicity of the chemicals; (3) the relative increase in chances of developing a disease as a result of the exposure, when compared to (a) plaintiff's chances of developing the disease had he or she not been exposed and (b) the chances that the public at large will develop the disease; (4) the seriousness of the diseases for which plaintiff is at increased risk; and (5) the clinical value of early detection and diagnosis.

[4] *See* First Amended Complaint (FAC), ECF. No. 62, MDL ECF No. 18914, ¶ 40, nn. 3, 4, 7.

[5] While this Court has extensively evaluated causation issues in the MDL, it also bears mention that, because only individuals with NHL diagnoses have conducted discovery in the MDL, the appropriateness of medical monitoring for NHL has yet to be sufficiently explored.

[6] Ordinarily, analysis of Article III standing is not intended to be duplicative of an analysis of the substantive merits of a claim. *See Husain v. Campbell Soup Co.*, No. 24-CV-01776-CRB, 2024 WL 4011959, at *3 (N.D. Cal. Sept. 2, 2024).

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992)). At the motion to dismiss phase, the standing hurdle should not be difficult for plaintiffs to overcome. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[7] It requires enough factual content that a court can draw reasonable inferences. *Id*. With respect to standing, the plaintiff's complaint must provide "general factual allegations of injury resulting from the defendant's conduct . . ." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Warth v. Seldin*, 422 U.S. 490, 518 (1975). A plaintiff, however, need not "allege all of the facts supportive of the chain of causation upon which his allegation of injury rests" because that "would return [the courts] to the unpredictable and fact-laden system of code pleading." *Am. Soc. of Travel Agents, Inc. v. Blumenthal*, 566 F.2d 145, 156 (D.C. Cir. 1977) (C.J. Bazelton dissenting). Thus, when combined, Rule 8 and Article III do not require a technical form to plead standing. A plaintiff is simply required to allege enough facts to allow a court, by making reasonable inferences, to satisfy itself that the plaintiff is entitled to judicial action and redress.

If a defendant makes a facial challenge, then a court need only "look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (emphasis in original); *see Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990). Furthermore, "courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth*, 422 U.S. at 501; *Levine v. Vilsack*, 587 F.3d 986, 997 (9th Cir. 2009). Additionally, at this stage, courts "presume[] that general allegations embrace those specific facts that are necessary to support the claim" made. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Thus, in a facial challenge, the court should fill in the gaps to find that standing exists, not

---

[7] A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must simply provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

undertake an evidentiary analysis that is not ripe.[8]

Recovery in a negligence action premised on future injury can proceed if a plaintiff pleads the need for medical monitoring is a reasonably certain consequence of the exposure and that the monitoring itself is reasonable. *See Potter*, 6 Cal. 4th at 1008–09. Relevant to that inquiry are five factors set forth by the California Supreme Court: (1) the significance and extent of the plaintiff's exposure; (2) the toxicity of the chemicals; (3) the relative increase in the plaintiff's chances of developing a disease as a result of the exposure, when compared to (a) plaintiff's chances of developing the disease had he or she not been exposed and (b) the chances that the public at large will develop the disease; (4) the seriousness of the diseases for which plaintiff is at an increased risk; and (5) the clinical value of early detection and diagnosis. *Id.*; *see* CACI No. 3903B.

### III. ARGUMENT

#### A. Plaintiffs' allegations of their increased risk for developing NHL are sufficient to establish an injury-in-fact for standing purposes.

Numerous courts around the country have long found that exposure to a toxin is sufficient to satisfy the Article III injury-in-fact requirement where there is an increased risk of a future medical condition. *See Trujillo v. Ametek, Inc.*, No. 3:15-CV-1394-GPC-BGS, 2015 WL 7313408, at *6 –7 (S.D. Cal. Nov. 18, 2015); *see also Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1052 (N.D. Cal. 2015) ("[i]ncreased risk of injury can suffice to establish an Article III injury-in-fact where the increased risk of injury is credible and not conjectural.") (citing *Cent. Delta Water*

---

[8] With a factual standing challenge, the burdens of proof and standard of review are far different. A party making a Rule 12(b)(1) factual challenge must present affidavits or evidence. *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d at 1039 n.2. And, a court "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see Warth*, 422 U.S. at 501 (plaintiff should be provided opportunity to present evidence beyond complaint to further assertions of standing).

If the Court does seek a factual showing of standing, Plaintiffs request jurisdictional discovery, which "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). "[I]f the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself" unless "the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim." *Id.* at 1121-22, 1122 n.3 (citations omitted). Then, where factual disputes are sufficiently intertwined with the merits, the Court should apply standards for summary judgment, which include opportunity to take discovery. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill Publ'g Co. v. Gen. Tel. Corp.*, 594 F.2d 730, 733-34 (9th Cir. 1979)).

*Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002)); *Carlough v. Amchem Prods., Inc.*, 834 F. Supp. 1437, 1451–52 (E.D. Pa. 1993) (citing cases holding that "exposure to a toxin constitutes injury in fact under Article III"); *Brown v. C.R. Bard, Inc.*, 942 F. Supp. 2d 549, 551 (E.D. Pa. 2013) (holding the plaintiffs suffered an injury sufficient for medical monitoring claims because they alleged future harm from risk of filter implants fracturing); *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, No. MDL 2875 (RBK/JS), 2021 WL 100204, at *12 (D.N.J. Jan. 12, 2021) (concluding the plaintiffs suffered an injury sufficient to satisfy Article III standing based on allegation of genetic and cellular damage from use of medicine containing probable carcinogens). This case is no different.

Under Ninth Circuit authority, an increased risk of injury suffices to establish an Article III injury where the increased risk is credible and not conjectural. *See Central Delta*, 306 F.3d at 950 (plaintiff need not await damage to establish harm from the violation, and evidence established that at least a material dispute existed as to whether the violation alleged would create a substantial risk of harm). A threat of harm is "credible" when the likelihood that the harm will occur is sufficiently alleged. *Cf. Montana Env'tl Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1189 (9th Cir. 2014) (complaint devoid of allegations about likelihood of future harm failed to allege actual or imminent injury); *cf. Riva*, 82 F. Supp. 3d at 1053 (dismissed because alleged increased risk of harm to develop cancer from food coloring was based solely on studies testing mice).[9]

Plaintiffs sufficiently plead an injury-in-fact that should be submitted to a trier of fact because, when taken as true, the allegations show Plaintiffs face a credible risk of NHL. *See Trujillo*, 2015 WL 7313408, at *6-7. Plaintiffs allege Monsanto manufactures and sells Roundup, which contains glyphosate as its active ingredient. FAC ¶ 23. Plaintiffs allege glyphosate entered

---

[9] Monsanto relies heavily on *Riva* by asserting Plaintiffs have not alleged a credible risk of exposure. Mot. at 5, 9, 10. In fact, *Riva* supports Plaintiffs' claims and demonstrates why Monsanto's attack fails. In *Riva*, the District Court acknowledged that a plaintiff who has not experienced symptoms of disease has Article III standing to pursue claims for future injuries where credibly alleged, but ultimately found plaintiffs' allegations were not credible because their alleged cancer risk was based solely on studies conducted on mice. 82 F. Supp.3d at 1052-1053. The plaintiffs had failed to allege a credible risk of cancer from exposure for humans. In contrast, Plaintiffs allege specific studies in support of a causal link of glyphosate and NHL in humans.

their bloodstream when they were exposed to Roundup over a substantial period. *Id.* ¶¶ 19-20. Plaintiffs allege exposure of ten or more lifetime days is a minimum threshold for meaningful injury in the form of NHL. ¶ 89. Though there is evidence to the contrary regarding the studies Plaintiffs have cited in support of the proposition that Roundup exposure quantifiably increases the risk of NHL, *see id.* ¶ 40, nn.3, 4, 7, these studies at the very least support a finding that increased exposure to glyphosate does increase the relative risk of contracting NHL and that there is qualified expert testimony upon which a finding could be based. Indeed, while this Court has specifically rejected some of those same studies as reliable for a *quantification* of the risk by which Roundup exposure causes NHL, it has also accepted them as a basis for the admissibility under Rule 702 of expert opinions that there is nevertheless "a link…between glyphosate and NHL," from which a reasonable jury "could conclude that glyphosate can cause NHL at human-relevant doses." *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1151–52 (N.D. Cal. 2018), *aff'd sub nom. Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021)).[10] These studies also tend to establish another core fact: "differentiat[ing] Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless." Pretrial Order No. 84, *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N. Cal. Feb. 24, 2019), ECF No. 2799. So too will Plaintiffs' allegations that California and the IARC have concluded glyphosate poses a significant risk to humans, *id.* ¶¶ 30-36, 43; that nations around the world and multiple U.S. cities have either restricted or banned the use of Roundup for health reasons, *id.* ¶ 42; and that the Ninth Circuit has ordered the EPA to reconsider its decision deeming glyphosate as unlikely to be carcinogenic because it found the EPA's decision was unsupported by science. That report is due in 2026. *Id.* ¶¶ 37-38.[11]

    *Trujillo* is instructive. There, the court found that plaintiffs—presently uninjured students

---

[10] *See also Bell*, 344 F. Supp. 3d at 1226 (determining that underlying support for an expert opinion deemed inadmissible in a separate case is inapposite because at motion to dismiss stage, plaintiff need only plausibly plead significant exposure to a toxin to pursue a medical monitoring claim, rather than plead facts showing a quantifiable increase in risk).

[11] Plaintiffs also allege Monsanto's history of ghostwriting now-discredited studies and undertaking massive efforts to undermine the scientific community in establishing health risks posed by Roundup. FAC ¶¶ 5, 44-57.

and teachers exposed to a toxic waste plume in the vicinity of their school—had adequately alleged an increased risk of a future medical condition under *Potter*. The plaintiffs alleged (1) that federal agencies had found human health risks from exposure to the chemicals at issue; (2) the chemicals were particularly harmful for certain populations; and (3) a quantified increase in cancer risk from exposure. *Trujillo*, at *5–7. *Trujillo* demonstrates why Monsanto cannot prevail on its facial attack by disputing the studies or quarreling whether the increased risk of disease from exposure to cancer is statistically significant or large by some measure. Indeed, the *Trujillo* court clarified that plaintiffs need not claim an increase in the risk of developing cancer as "significant" for an action to survive. *Trujillo*, at *6. Allowing for compensation of medical monitoring costs "does not require courts to speculate about the probability of future injury…[but] merely…to ascertain the probability that the far less costly remedy of medical supervision is appropriate." *Potter*, 6 Cal. 4th at 1007–08.

In addition, incurring likely costs of medical monitoring constitutes sufficient injury for standing purposes. *See Riva*, 82 F. Supp. 3d at 1053–1054 (citing *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 826 (D.C. Cir. 1984) ("an individual has an interest in avoiding expensive diagnostic examinations just as he or she has an interest in avoiding physical injury. . . .") Among other things, Plaintiffs can show they are entitled to medical monitoring by proffering expert medical testimony that they have an increased risk of disease that would warrant a reasonable physician to order monitoring. *See Day v. NLO*, 851 F. Supp. 869, 881 (S.D. Ohio 1994). Injury in the form of an increased risk which would require one to incur the cost of monitoring is sufficient. *See Friends for All Children*, 746 F.2d at 825. Plaintiffs who have been exposed to the negligent conduct of a defendant thus have standing to bring a claim to be spared the cost of future testing and diagnoses. *See Riva*, 82 F. Supp. 3d at 1053-54 ("even if there is no proof of present physical injury, when "a defendant negligently invades this interest, the injury to which is neither speculative nor resistant to proof, it is elementary that the defendant should make the plaintiff whole by paying for the examinations.") (internal citation omitted).

### B. Plaintiffs have sufficiently alleged that their injury is traceable to Monsanto's conduct.

Plaintiffs must establish a "line of causation" between defendants' action and their alleged harm that is more than "attenuated." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 757, (1984)). Allegations of causation may even be attenuated but are still sufficient where the links are "not hypothetical or tenuous" and remain "plausibi[le]." *Maya*, 658 F.3d at 1070 (quoting *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)). Plaintiffs need not allege Defendants' conduct is the proximate cause of Plaintiffs' injuries. *Maya*, 658 F.3d at 1070.

Here, the causal chain is not only plausible but difficult to refute. Monsanto discovered glyphosate as an herbicide, then manufactured, labeled, and sold it commercially under the Roundup brand. FAC ¶ 23. Despite its knowledge of extensive evidence of the dangers of glyphosate and Roundup, Monsanto never added a warning label notifying consumers or workers to use protective equipment or of the risks of exposure. *Id.* ¶¶ 44-58. Monsanto advertised Roundup as safe to use without protective equipment. *Id.* ¶ 59. Monsanto did not warn Plaintiffs, who were unaware of the risks during use. *Id.* ¶ 62, 89. Further, Plaintiffs would not have used the product in the same manner had they been informed of its risks. *Id.* ¶ 80. Now that there is such information, Plaintiffs with good reason fear that their significant exposure to Roundup is likely to result in NHL, fear that they continue to be exposed, and seek periodic diagnostic testing to encourage early detection and intervention if needed. *Id.* ¶ 67. The harm is traceable to Monsanto for the purpose of determining whether Article III jurisdiction exists.

### C. Plaintiffs have sufficiently alleged redressability through the program proposed.

A plaintiff's burden to demonstrate redressability is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997). To satisfy the redressability requirement, a plaintiff must plead facts which plausibly show that the injury suffered would likely be redressed if the court granted the relief requested. *See Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984). A plaintiff "need not demonstrate that there is a guarantee that her injuries will be redressed by a favorable decision; rather, a plaintiff need only show a substantial likelihood that the relief sought would redress the

injury." *Tucson v. City of Seattle*, 91 F.4th 1318, 1325 (9th Cir. 2024) (citing *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018)).

As noted above, Plaintiffs' injuries include the increased cost of medical monitoring required as a result of exposure to Roundup. *See infra* p.7. Plaintiffs assert injury in the form of the cost of medical care, which is "real, concrete, and redressable by a medical monitoring fund established by [this Court and which] suffices to establish plaintiffs' standing." *Bell v. 3M Co.*, 344 F. Supp. 3d at 1225.

The relief Plaintiffs seek is plausible, specific, and premised squarely on the clinical value of early detection and diagnosis that *Potter* will test. Based on their investigation, Plaintiffs have identified effective medical monitoring methods and procedures. As alleged, the medical literature supports that early detection is one of the best and sometimes only means of treating NHL, which is not typically curable in advanced stages, but early detection greatly increases chances of effective treatment and remission. FAC ¶¶ 67-68. Increased visits to a medical clinician will necessarily reduce the risk of mortality from NHL. FAC ¶¶ 67-70. Moreover, since the increased cost of medical monitoring is a redressable injury, a program under which Defendants—not Plaintiffs—bear the cost redresses that injury. *See Riva*, 82 F. Supp. 3d at 1053–54. Access to funded clinics will mean Plaintiffs can be (1) evaluated for whether they are showing symptoms of cancer and require immediate further exam and (2) tested for whether they have biological markers that indicate an increased risk of NHL and require an individualized care plan, all of which will save lives.[12] FAC ¶¶ 70-74. As Plaintiffs allege, DAGP-funded clinics currently exist in the geographic areas where most agricultural workers and landscapers work and reside, and therefore which provide existing infrastructure through which the proposed program could be administered. *Id*. ¶ 75. Plaintiffs have thus alleged facts with requisite specificity as to the availability, feasibility, and administration of specific epidemiologic testing that can detect signs

---

[12] In fact, given the fact that many of those exposed in the agricultural setting may be uninsured or underserved by the health system and medical establishment, and may not be aware of potential health problems from Roundup exposure, the efficacy of medical monitoring in this case is significantly enhanced.

and risk-factors for the development of NHL in individuals who may not present with readily observable symptoms but appear to be at increased risk of developing the disease. *Id*. These methods are over and above ordinary typical care recommended for those who have not been had minimum exposures to Roundup (defined as indicated above at ten days), as these methods will test for chromosomal changes indicating genotoxic effects and for elevated immune marker concentrations, which are early indicators of cancer risk. *Id* ¶¶ 72-73. [13] Like other cancers, early diagnosis and treatment is key to better outcomes. Access to these tests could save someone's life by leading them to an earlier diagnosis, an assessment that they need treatment, and ultimately a better prognosis and chance at survival. Thus, the injury alleged—increased risk of NHL—is clearly redressable by the medical care and program Plaintiffs have alleged.

Ultimately, medical monitoring is an equitable remedy that may be used to recover expected reasonable medical expenses in tort cases where a plaintiff who has been exposed to a harmful substance has developed symptoms due to exposure and is expected to seek related ongoing medical care as result. It is not uncommon that doctors will agree medical attention is needed but disagree on what monitoring or treatment course is best. The appropriate medical examination or tests will "naturally require expert testimony," and uncertainty as to which tests are best or when they should be administered is not cause to deny a claim for relief. *Bell*, 344 F. Supp. 3d at 1227 (citing *Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def. of the U.S.*, 548 Pa. 178, 196 (1997)).

## IV.   CONCLUSION

The Court should conclude Plaintiffs have adequately alleged standing and there is no cause to dismiss the complaint. However, should the Court conclude that the allegations in FAC alone are insufficient to establish Article III standing, Plaintiffs respectfully request that the Court either allow Plaintiffs to amend or to pursue Plaintiffs jurisdictional discovery.

Dated: October 4, 2024

Respectfully Submitted,

**JOSEPH SAVERI LAW FIRM, LLP**

By: /s/ *Joseph R. Saveri*

Joseph R. Saveri (SBN 130064)
Christopher K. L. Young (SBN 318371)
Itak K. Moradi (SBN 310537)
David W. Lerch (State Bar No. 229411)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:   jsaveri@saverilawfirm.com
         cyoung@saverilawfirm.com
         imoradi@saverilawfirm.com
         dlerch@saverilawfirm.com

Robert L. Lieff (SBN 37568)
P.O. Box A
Rutherford, CA 94573
rlieff@lieff.com

*Attorneys for Plaintiffs*