William M. Audet (SBN 117456)
Mark E. Burton, Jr. (SBN 178400)
Ling Y. Kuang (SBN 296873)
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone:    (415) 568-2555
Facsimile:    (415) 568-2556
E-mails:    waudet@audetlaw.com
            mburton@audetlaw.com
            lkuang@audetlaw.com

*Counsel for Plaintiffs Ramirez & Owens*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Roundup Products Liability Litigation* | MDL Case No. 3:16-md-02741-VC |
| **This Document Relates To:** | Case No. 3:19-cv-02224-VC |
| DOLORES RAMIREZ, as the surviving spouse and heir and DEXTER OWENS, individually and on behalf of others similarly situated,<br><br>                    Plaintiffs,<br>    v.<br><br>MONSANTO COMPANY,<br><br>                    Defendant. | ***RAMIREZ* PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE REGARDING STANDING**<br><br>Hearing:    October 31, 2024<br>Time:      2:00 p.m.<br>Location:   Zoom Virtual Hearing<br>Judge:     Honorable Vince Chhabria |

## <u>TABLE OF CONTENTS</u>

Page

I.      **INTRODUCTION**...................................................................................................... 1

II.     **LEGAL STANDARD** ............................................................................................ 1

III.    **FACTUAL ALLEGATIONS** ............................................................................... 2

IV.    **ARGUMENT** ......................................................................................................... 3

      A.    **Ramirez's Allegations Sufficiently Meet Standing Requirements** ...................... 3

      B.    **Owens' Allegations Sufficiently Meet Standing Requirements** ........................... 4

             i.    Plaintiff Owens suffered an injury-in-fact as he faces a credible threat of future harm/NHL diagnosis, and medical monitoring is appropriate now given his significant and extensive exposure to glyphosate in Roundup® products, glyphosate's toxicity, and severity of NHL. .....................................5

             ii.   Plaintiff Owens' injury can be fairly traced to Monsanto's acts or omissions, which has caused a relative increase in the risk for NHL................7

             iii.  Plaintiff Owens' injury can be redressed by this Court through medical monitoring that provides clinical value of early detection and diagnosis. ........9

V.      **CONCLUSION** ..................................................................................................... 10

## I.   <u>INTRODUCTION</u>

In response to this Court's Order to Show Cause issued on September 19, 2024 (MDL ECF No. 19268), *Ramirez* Plaintiffs respectfully submit this response concerning standing and how the allegations in the Third Amended Complaint ("TAC" or "Complaint") adequately survive a facial challenge. Plaintiff Ramirez, one of two Named Plaintiffs in the Complaint, extensively used Defendant Monsanto's Roundup® products containing glyphosate, was diagnosed subsequently with the cancer non-Hodgkin's lymphoma ("NHL") and had asserted individual claims and on behalf of a class of individuals exposed to Roundup® and diagnosed with NHL. The other Named Plaintiff Owens, however, had used Roundup® glyphosate-products but has not yet been diagnosed with NHL and now seeks individual relief and class-wide relief on behalf of a California-only Medical Monitoring Class consisting of California citizens exposed to Roundup® but not yet diagnosed with NHL.

Plaintiff Ramirez undoubtedly and easily satisfies Article III standing requirements given the allegations in the Complaint about Defendant's misconduct, his use of Defendant's Roundup® glyphosate-products and his NHL diagnosis. As Plaintiff Owens has not yet been diagnosed with NHL, the California Supreme Court articulates five factors this Court should weigh when considering the propriety of a medical monitoring remedy. As discussed below, taking as true and in the light most favorable to Plaintiffs, the allegations demonstrate all five factors tilt in Plaintiff Owens' favor and the California Medical Monitoring Class survives a facial challenge. Alternatively, Plaintiffs seek leave to amend.

## II.   <u>LEGAL STANDARD</u>

To survive a standing challenge, Plaintiffs need only allege and demonstrate: (1) an injury in fact; (2) fairly traceable to the defendant's conduct; (3) that is likely redressable by a favorable court decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992); *see also*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed. 2d 635 (2016). When Article III standing is challenged, the challenge may either be 'facial' or 'factual.' *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Here, *Ramirez* Plaintiffs readily survive a

1

*RAMIREZ* PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE REGARDING STANDING
MDL Case No. 3:16-md-02741-VC; Individual Case No. 3:19-cv-02224-VC

facial challenge where the Court must treat all well-pleaded factual allegations as true and draw all reasonable inferences from them. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack[,]" the Court must further treat these allegations and inferences and "construe[] [them] in the light most favorable to a plaintiff." *Fugazi v. Padilla*, 2020 U.S. Dist. LEXIS 202165, at \*5 (E.D. Cal. Oct. 28, 2020) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

III.   **FACTUAL ALLEGATIONS**

Plaintiff Ramirez was exposed to Defendant Monsanto's Roundup® herbicide products, specifically its active ingredient glyphosate, causing him to develop Non-Hodgkin's Lymphoma ("NHL"). *See* Third Amended Complaint ("TAC") ¶¶ 1, 2, 10, 29, 45, 81, 82, 110, 127, 134. Mr. Ramirez worked for Roto-Rooter in Salinas, California, from 1999 to 2013, where he extensively used concentrated Roundup® on the job. *Id.* at ¶ 10. In 2018, he was diagnosed with Double Expressor Large B-Cell NHL and underwent several rounds of chemotherapy treatment at Stanford University Hospital. *Id*. Mr. Ramirez alleged that Monsanto failed to warn users about the carcinogenic risks of glyphosate despite knowing or having reason to know that it was linked to NHL. *Id.* at ¶¶ 2-5, 10, 28-46, 62-66. NHL is a type of cancer that is an incredibly serious and dangerous disease with a significant risk of death. *Id.* at ¶ 182. After years of treatment, Mr. Ramirez died on January 8, 2024, due to issues associated with his NHL diagnosis. *See Ramirez* ECF No. 114 (Court granting a Motion to Substitute Plaintiff Robert Ramirez for his wife, Dolores Ramirez, on April 22, 2024).

Plaintiff Dexter Owens worked for the Fresno Unified School District in Fresno, California, where he used Roundup® to spray around the school grounds. TAC ¶ 11. After a month of spraying in 2017, he developed a rash on his left hand and sought treatment, for which he was prescribed an ointment. *Id.* Mr. Owens has not been diagnosed with NHL but alleges that he faces an increased risk of developing NHL due to his exposure to Roundup®. *Id*. He has incurred and will incur costs and other financial burdens for medically necessary diagnostic testing for the detection and/or treatment of NHL. *Id.* at ¶ 110-11. Plaintiff Owens suffered an injury in the form

2

*RAMIREZ PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE REGARDING STANDING*
MDL Case No. 3:16-md-02741-VC; Individual Case No. 3:19-cv-02224-VC

of a credible threat of future NHL diagnosis, proximately caused by Monsanto's tortious misconduct. *Id.* Plaintiff Owens has a legally protected interest in not being exposed to carcinogenic materials in Roundup®, especially at levels that can result in a significantly increased risk of developing NHL. *Id.* The need for testing and treatment arises directly from the exposure to harmful materials caused by Monsanto's acts or omissions. *Id.* at ¶ 111; *see also id.* at ¶¶ 2-5, 10, 28-46, 62-66.

## IV.   ARGUMENT

### A.   Ramirez's Allegations Sufficiently Meet Standing Requirements

Plaintiff Ramirez sufficiently alleges Article III standing. First, there is no dispute, as alleged, he had suffered a severe injury-in-fact. *See supra*, Section III.A., *see also* TAC ¶ 10 ("In 2018, Plaintiff Ramirez was diagnosed with Double Expressor Large B-Cell Non-Hodgkin's Lymphoma ["NHL"]"). The NHL cancer diagnosis is a physical personal injury with a "close relationship" to a harm or the type of harm "traditionally" recognized as providing a basis for a lawsuit in American courts. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211-12, 210 L. Ed. 2d 568 (2021). Moreover, the injury as alleged is not "conjectural or hypothetical" but "actual[,]" "concrete and particularized[.]" *Spokeo*, 578 U.S. at 339.

Second, as alleged, this injury was traceable to Defendant's acts and omissions. Plaintiff Ramirez has alleged the "long associated" relationship between "[g]lyphosate and Roundup®" products he extensively used from "1999 to 2013" and with these products' "carcinogenicity and the development of NHL." TAC ¶¶ 10, 28; *see also e.g.*, *id.* at ¶¶ 1-3, 29-46, 78-80, 98, 137. Plaintiffs also alleged that Defendant attempted to "induce Plaintiffs and members of the Class to use Roundup®" by way of misrepresentations and/or omissions. TAC ¶ 62; *see also e.g.*, *id.* at ¶¶ 64-66 [Section E. Monsanto's False Representations Regarding Safety of Roundup], ¶¶ 124, 128.

Third, a favorable court decision will provide redress. Plaintiff Ramirez and the Class are seeking compensatory, exemplary, and punitive damages and other monetary relief. *See* TAC, Prayer for Relief at ¶¶ ii-iii; *see also*, *id.* at ¶¶ 138-39, 160-61, 169. A favorable Court decision and Court award of these damages or other forms of equitable relief directly redress Plaintiff

3

*RAMIREZ* PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE REGARDING STANDING
MDL Case No. 3:16-md-02741-VC; Individual Case No. 3:19-cv-02224-VC

Ramirez's injury by providing financial compensation for his injury and related harm. *Platt v. Moore*, 15 F.4th 895, 912 (9th Cir. 2021) ("Plaintiffs would have had Article III standing to pursue *compensatory* damages") (emphasis in original). Plaintiff Ramirez's allegations provide sufficient standing to pursue the claims in the Complaint (Strict Liability—Design Defect and Failure to Warn, Negligence/Negligent Misrepresentation, and Declaratory Relief).

### B.  Owens' Allegations Sufficiently Meet Standing Requirements

Plaintiff Owens seeks to certify and represent a California medical monitoring Class (TAC ¶¶ 107-113) consisting of Californians who have "been exposed to Roundup® and have not been diagnosed with [NHL]." *Id.* As discussed below, Plaintiff Owens facially alleges sufficient facts to meet Article III standing requirements and demonstrate why all five (5) *Potter* factors, which the Court should consider when evaluating the remedy of medical monitoring in California, tilt towards Plaintiff Owens and the Class:

> **(1)** The significance and extent of the plaintiff's exposure to [glyphosate in Roundup® products];
> **(2)** The relative toxicity of [glyphosate];
> **(3)** The seriousness of the disease [NHL] for which plaintiff is at an increased risk;
> **(4)** The relative increase in the plaintiff's chances of developing [NHL] as a result of the exposure, when compared to (a) plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of members of the public at large of developing the disease; and
> **(5)** The clinical value of early detection and diagnosis.

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1006 (Cal. 1993) (citations omitted). *Potter* made clear that in California, medical monitoring as a remedy "is not contingent upon a showing of a present physical injury [or] upon proof that [an] injury is reasonably certain to occur in the future[.]" *Id.* Plaintiff Owens needs to facially allege, and has alleged, an increased risk of developing NHL due to Defendant's misconduct. *See, e.g.*, TAC ¶¶ 11, 29, 45, 81, 82, 127, 134. Medical monitoring is an appropriate remedy based upon the allegations made in the Complaint as detailed below.

   i. <u>Plaintiff Owens suffered an injury-in-fact as he faces a credible threat of future harm/NHL diagnosis, and medical monitoring is appropriate now given his significant and extensive exposure to glyphosate in Roundup® products, glyphosate's toxicity, and severity of NHL.</u>

Plaintiff Owens has suffered an injury-in-fact in support of Article III stemming from the credible threat of future harm in developing NHL. "A plaintiff threatened with future injury has standing to sue if [...] there is a substantial risk that the harm will occur." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 709 (9th Cir. 2020) (citation omitted). And "a credible threat of future harm is sufficient to establish an injury in fact." *Id.* Courts have found that plaintiffs have established Article III standing by alleging an injury based on future harm in similar circumstances as those here. *See*, *e.g.*, *Public Watchdogs v. S. Cal. Edison Co.*, 2019 U.S. Dist. LEXIS 208372, at *7-8 (S.D. Cal. Dec. 3, 2019) (concluding that plaintiffs' allegations of defendants' misconduct with the management and handling of spent nuclear waste created an imminent risk of death, injury, illness, or significant bodily harm to millions of California residents were sufficient to establish standing); *Navarro v. Exxonmobil Corp.*, 2023 U.S. Dist. LEXIS 89343, *12 (C.D. Cal. May 22, 2023) ("[A] substantially increased risk of developing cancer and other illnesses can unquestionably constitute an injury") (citation omitted).

Here, Defendant's misconduct created an imminent risk when they failed to adequately inform and warn of the serious risks associated with the use and exposure to Roundup® herbicide, including the active ingredient glyphosate, which is linked to the development of non-Hodgkin's Lymphoma ("NHL"), a type of cancer. TAC ¶¶ 1-5, 64-66. Plaintiff Owens was exposed to that risk and suffered from it. *Id*. at ¶ 11. The threat of a credible future injury upon Plaintiff Owens and the medical monitoring Class has been alleged in the operative Complaint and, therefore, sufficiently conveys Article III standing. *McGee*, 982 F.3d at 709.

Moreover, 3 of the 5 *Potters* factors that touch on the issue of injury, when considered alongside the copious allegations in the Third Amended Complaint ("TAC"), further demonstrate and weigh in favor of the propriety of a medical monitoring Class and remedy.

5

*RAMIREZ* PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE REGARDING STANDING
MDL Case No. 3:16-md-02741-VC; Individual Case No. 3:19-cv-02224-VC

***Potter* Factor 1: Significance and extent of the plaintiff's exposure to Roundup®**

Plaintiff Owens "worked for the Fresno Unified School District" where, as a part of his occupation, "sprayed Roundup® around the school grounds [and in] 2017, after a month of spraying, Plaintiff Owens developed a rash on his left hand." TAC ¶ 11. Given the size and number of facilities in the Fresno Unified School District, the fourth largest in California, it can be reasonably inferred from the allegations at this pleading stage, taken in the light most favorable to Plaintiffs, that Plaintiff Owens extensively used Roundup® as a part of his job across the school district and the usage was significant enough to develop outward symptoms such as the rash over the course of a month. TAC ¶ 11.

***Potter* Factor 2: Relative toxicity of glyphosate in Roundup®**

The TAC clearly alleges that "Roundup® and the glyphosate found within it possess carcinogenic [properties and therefore] highly toxic." TAC ¶ 180. Indeed, the toxicity of glyphosate is even *more* pronounced within Roundup® products than it would be on its own. *Id.* at ¶ 30 ("glyphosate-based formulations found in Defendants' Roundup® products are more dangerous and toxic than glyphosate alone"). The Complaint is replete with allegations concerning the danger and carcinogenic nature of Defendant's product. *See*, *e.g.*, *id.* at ¶¶ 26-39 (Evidence of Carcinogenicity in Roundup), ¶¶ 40-46 (IARC Classification of Glyphosate and Dangers Posed), ¶¶ 78-80 (California Agency Review of Glyphosate and its Dangers), ¶¶ 32-33, 43-44 (studies demonstrating danger of glyphosate). Plaintiff Owens more than sufficiently alleges the harm and danger posed by glyphosate due to Monsanto's misconduct and demonstrated the second *Potter* factor favors medical monitoring as a relief for Plaintiff Owens and the Class. *Id.* at ¶ 109.

***Potter* Factor 3: Seriousness of NHL for which plaintiff is at an increased risk**

Similar to the second *Potter* factor, the severity of NHL cannot be readily disputed and is copiously alleged in the Complaint. *See* TAC at ¶¶ 2-3, 11, 28-29, 32, 45, 58, 64, 73, 80, 82, 107-111, 124, 127, 164-68, 181-85. The seriousness and danger of NHL cannot be overstated: "NHL is a type of cancer that is an incredibly serious disease with a significant risk of death." *Id.* at ¶ 182. The third *Potter* factor tilts heavily in Plaintiff Owens' favor.

Taken all together—Plaintiff Owens has alleged that (i) he used Defendant's glyphosate-imbued Roundup® products, the significance and extent of which can be reasonably inferred, (ii) that glyphosate is a heavily toxic chemical and even more so when within Defendant's products, (iii) that NHL can develop in the future and is a highly dangerous and serious illness, and (iv) that as a result of all these factors, Plaintiff Owens now faces a credible threat of future harm sufficient to meet the injury-in-fact requirement of Article III standing.

ii. <u>Plaintiff Owens' injury can be fairly traced to Monsanto's acts or omissions, which has caused a relative increase in the risk for NHL</u>.

The traceability requirement for facial Article III standing has also been met here. To satisfy this element, "[t]he line of causation between the defendant's action and the plaintiff's harm must be more than attenuated." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013). "[P]laintiffs need not 'demonstrate that defendants' actions are the 'proximate cause' of plaintiffs' injuries.' The critical inquiry is whether the causal chain is plausible." *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1053 n.3 (N.D. Cal. 2015) (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)).

Plaintiff Owens' allegations highlight with significant detail the causal link between Defendant's affirmative misconduct and omissions that led to the injury alleged. TAC ¶¶ 28-46, 78-80 (evidence of carcinogenicity known or should have been known to Monsanto), ¶¶ 62-66 (Monsanto's misconduct including "induce[ment]" of Plaintiff Owens and the Class to use its dangerous products), ¶¶ 152, 167 (Plaintiff Owens and the Class encountering and reasonably relying upon Monsanto's expertise and representations to not provide dangerous products to them). These allegations more than demonstrate a plausible causal chain at the pleading stage.

**_Potter_ Factor 4:   Relative increase in chances of developing NHL as a result of the exposure, compared to (a) plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of the public developing the disease**

Numerous studies and related allegations in the Complaint demonstrate not only the causal link between Monsanto's misconduct and harm inflicted, but also the relative increase in risk

7

*RAMIREZ* PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE REGARDING STANDING
MDL Case No. 3:16-md-02741-VC; Individual Case No. 3:19-cv-02224-VC

towards developing NHL from exposure to glyphosate in Roundup® products. TAC ¶¶ 29, 45, 81, 82, 110, 127, 134. Many of these studies have already been examined in detail by this Court. *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1151-52 (N.D. Cal. 2018) (denying summary judgment, finding evidence presented could allow "a reasonable jury [to] conclude that glyphosate can cause NHL at human-relevant doses" and further noting the evidence at issue have identified "a few statistically significant elevated odds ratios from case-control studies and meta-analyses").

Several of the studies have been alleged in the Complaint. TAC ¶ 29. For example, one 2008 study showed "[t]he overall odds ratio for glyphosate was 2.02 (1.10, 3.71). [And] [b]reaking this down, the unadjusted results showed statistically significant associations for glyphosate and NHL for those who were exposed to glyphosate for greater than ten days — 2.36 (1.04, 5.37), versus 1.69 (0.70, 4.07) for those exposed for less than ten days." *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d at 1120. At the pleading stage, Plaintiff Owens has more than sufficiently alleged the 'relative increase' in risk for NHL from glyphosate exposure by way of demonstrably higher odds ratios. *See also*, *id*. at 1132 n.30 (rejecting Monsanto's argument for a statistically significant odds ratio of greater than 2.0 and noting controlling case law "that a relative risk of greater than 1.0 is relevant to general causation"). The studies, including the 2008 study, further contains comparisons to control groups who did not face exposure and/or the public. *Id*. at 1120 ("[t]he authors used as the control group for this part of the analysis people who were not exposed to any of the pesticides included in the study."). Thus, the allegations herein are a significant departure from the "threadbare allegations" in cases like *Riva*, which Monsanto may rely on. *Navarro*, 2023 U.S. Dist. LEXIS 89343, at *12-13 (distinguishing *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045 (N.D. Cal. 2015)).

Finally, to the extent the Court harbors concerns regarding the 'significance' or 'degree' of this demonstrated increase in risk (TAC ¶ 29), or in other words, whether the risk increased sufficiently on a quantitative level, the court in *Trujillo v. Ametek, Inc.* confronted the same issue and noted that examination of the 'significance' in risk is misplaced and further that the issue was

8

*Ramirez* Plaintiffs' Response to Order To Show Cause Regarding Standing
MDL Case No. 3:16-md-02741-VC; Individual Case No. 3:19-cv-02224-VC

more appropriate for the trier-of-fact. 2015 U.S. Dist. LEXIS 156803, at *16-20 (S.D. Cal. Nov. 18, 2015):

> [Defendant] also argues that Plaintiffs should not be entitled to pursue a damages claim for medical monitoring [...and] relies on *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045 (N.D. Cal. 2015) to support the proposition that Plaintiffs' damages claims should be dismissed for failure to plead factual content showing that there was a ***"significant" increase in their risk of developing cancer***. [Defendant's] reliance on *Riva* is misplaced. [...] The [*Riva*] district court found that the plaintiffs failed to plead factual content showing that there was a "significant" increase of developing lung cancer where studies had found clear evidence of the carcinogenic effects of 4-mel on mice, but not humans, contrasting the facts of the case with those in a number of other cases where courts upheld medical monitoring claims where the toxic exposures had a demonstrable risk to [human] health, [and] also noted as an additional deficiency that the plaintiffs had not presented "the quantitative (or even qualitative) increased risk to individuals. [...Moreover] The California Supreme Court contemplated that establishing whether the *Miranda* standard [which *Potter* is based on] is met is usually a question for the trier of fact, since "competent medical testimony" will usually be required to determine "whether and to what extent the particular plaintiff's exposure to toxic chemicals in a given situation justifies future periodic medical monitoring."

*Id.* (emphasis added) (citations omitted); *see also*, *Bowen v. Energizer Holdings, Inc.*, 2024 U.S. App. LEXIS 24741, *5 (9th Cir. Oct. 1, 2024) ("prematurely resolving merits issues"). Plaintiff Owens sufficiently alleges an injury that can be traced to Defendant's misconduct and demonstrated a credible and relative increase in risk sufficient to meet Article III standing requirements and tilt the fourth *Potter* factor in its favor.

      iii.  <u>Plaintiff Owens' injury can be redressed by this Court through medical monitoring that provides clinical value of early detection and diagnosis.</u>

Plaintiff Owens sufficiently alleges the need for and usefulness of a medical monitoring program as a form of remedy and redress. TAC ¶¶ 11, 107-111, 177-186 ("significant medical benefit in terms of increasing the likelihood of positive outcomes as a result of early detection and diagnosis of NHL"). These allegations, taken as true at this stage, demonstrate Plaintiff Owens

9

meets the Article III standing requirement of redressability and further below, pursuant to the fifth *Potter* factor, the value and health benefits of early detection.

> **_Potter_ Factor 5:   Clinical value of early detection and diagnosis**

The Third Amended Complaint clearly alleges that "monitoring and the early detection of an NHL diagnosis will greatly improve lifespan, health, and the well-being of those members in the Medical Monitoring Class." TAC ¶ 108. Case law, including the *Potter* Court itself, recognizes the general "value of early diagnosis and treatment for many cancer patients." *Potter*, 6 Cal. 4th at 1008. Aligning with the allegations in the TAC, the *Potter* Court provided examples of how "the early detection of cancer may improve the prospects for cure, treatment, prolongation of life and minimization of pain and disability." *Id.*; *compare with*, TAC ¶¶ 108, 182. At this stage, these allegations are sufficient. A "trier-of-fact" may determine, with the help of "medical testimony," what exactly and in what "given situation justifies future periodic medical monitoring." *Potter*, 6 Cal. 4th at 1009; *see also*, *Lockheed Martin Corp. v. Superior Court*, 29 Cal. 4th 1096, 1115 (Cal. 2003) ("the clinical value of early detection and diagnosis may vary significantly depending on the medical condition at issue and the individual characteristics of each class member"). Plaintiffs have shown the fifth *Potter* factor tilts in their favor when facing a facial attack on the allegations of the Complaint.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, *Ramirez* Plaintiffs have sufficiently alleged facts to meet standing requirements. Additionally, Plaintiff Owens and the California Medical Monitoring Class have alleged sufficient facts to support medical monitoring as a remedy, as California's articulation of the five *Potter* factors weigh heavily in Plaintiffs' favor. Alternatively, if the Court finds insufficient facts to support a facial challenge, Plaintiffs seek leave to amend.

Respectfully submitted,

Dated: <u>October 4, 2024</u>

/s/ *Ling Kuang*

William M. Audet (SBN 117456)
Mark E. Burton, Jr. (SBN 178400)
Ling Y. Kuang (SBN 296873)

10

*Ramirez* Plaintiffs' Response to Order To Show Cause Regarding Standing
MDL Case No. 3:16-md-02741-VC; Individual Case No. 3:19-cv-02224-VC

**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone:     (415) 568-2555
Facsimile:      (415) 568-2556
E-mails:         waudet@audetlaw.com
                       mburton@audetlaw.com
                       lkuang@audetlaw.com

*Counsel for Plaintiffs Ramirez and Owens*