UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | **ORDER DISMISSING CLASS ACTION COMPLAINTS** |
| *Ramirez v. Monsanto Co.*, Case No. 3:19-CV-02224-VC | Re: Dkt. No. 11309, 12507, 18914 |
| *Sheller v. Monsanto Co.*, Case No. 3:19-CV-07972-VC | |
| *Perez-Hernandez v. Monsanto Co.*, Case No. 3:24-CV-01736-VC | |

The complaints filed in the above-captioned cases are dismissed for failure to adequately allege Article III standing. Specifically, each complaint is deficient with respect to the "injury-in-fact" and "redressability" elements of standing.

Although the complaints contain general allegations that the plaintiffs were exposed to Roundup and that Roundup increases the risk of developing NHL, they do not give the reader any sense of the magnitude of the increase in risk. For example, imagine that a typical person has a 1-in-100 risk of developing NHL. Does exposure to Roundup increase that hypothetical risk to 1.1-in-100? 2-in-100? 5-in-100? This is not to say that a plaintiff must always allege precise numbers in a case like this. But the allegations must give the Court some meaningful understanding of the magnitude of increase in risk. *Compare Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1052–3 (N.D. Cal. 2015) *with Navarro v. ExxonMobil Corp.*, 2023 WL 7107135, at *4

(C.D. Cal. May 22, 2023) *and Trujillo v. Ametek, Inc.*, 2015 WL 7313408, at *6 (S.D. Cal. Nov. 18, 2015). Then the Court can assess whether it rises to the level of an injury-in-fact within the meaning of Article III. For example, if the plaintiffs can allege no more than an increase from 1-in-100 to 1.1-in-100, is that enough? It may well be that the plaintiffs will be able to beef up their allegations in a way that satisfies this requirement, but they have not satisfied it here.

Less clear is whether the plaintiffs will ever be able to satisfy the redressability requirement. Their current allegations certainly fail on that front. In *Sheller* and *Ramirez*, the plaintiffs barely touch on the issue—they don't come close to explaining whether medical monitoring could actually mitigate the harm from any increased risk of developing NHL. In *Perez-Hernandez*, the complaint gives lip service to the issue, but the allegations are so general as to be meaningless. Take, for example, Paragraph 68:

> Early detection necessarily allows patients to avail themselves of myriad forms of prompt and effective treatment, each of which is capable of altering the course of the illness or significantly decreasing a Class Member's risk of severe injury, e.g., by bringing cancer into remission or allowing for removal of any malignant tumors. Simply put, needed treatment can begin sooner. Early detection can provide great benefits to patients who are developing NHL by reducing the amount of chemotherapy necessary for treatment and remission.

This paragraph might as well have read, "trust us, there can be medical monitoring." But what is the monitoring? Is that monitoring capable of detecting NHL before symptoms appear? If not, then how will the medical monitoring benefit patients? The complaint in *Perez-Hernandez* does not answer any of these questions, instead speaking in vague generalities that leave the reader wondering if the allegations have simply been made up.

The plaintiffs observe that these questions—whether they have alleged an injury-in-fact and whether that injury is redressable by medical monitoring—overlap with the merits (that is, whether they have stated a claim for medical monitoring under the laws of various states). And the plaintiffs note that when issues of standing overlap with the merits, courts should generally address those issues on the merits. That is certainly true. *See, e.g.*, *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 788–9 (N.D. Cal. 2019); *see*

2

*also Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1139 (9th Cir. 2024). But thus far, it's difficult to tell how much these standing questions overlap with the merits. Sometimes, even when a plaintiff may pursue a state-law claim on the merits, they lack standing to do so in federal court. *See, e.g.*, *Olea v. Teichert Pipelines, Inc.*, 2023 WL 6237985, at *2 (N.D. Cal. Sept. 25, 2023). As applied here, one could imagine a plaintiff being able to state a claim for medical monitoring under state law, but being unable to satisfy the Article III standing requirements—either because the alleged injury is too speculative or because the connection between the injury and the requested remedy is too attenuated. And the plaintiffs have not provided enough information about the requirements for stating a claim for medical monitoring. So at least at this stage, it's appropriate to treat the questions discussed here as ones of standing. In any event, it seems doubtful that the plaintiffs have adequately pled their medical monitoring claims either.

Dismissal is with leave to amend, to the extent that the plaintiffs, consistent with their Rule 11 obligations, can adequately allege a type of medical monitoring that could reasonably be available to the plaintiffs and that would mitigate any risk created by exposure to Roundup, as compared to the regular attention someone might normally be expected to receive. Any amended complaints are due within 28 days of this ruling. If amended complaints are not filed by that deadline, dismissal is with prejudice. In the event that amended complaints are filed, Monsanto may file motions to dismiss on the issues of standing and failure to state a claim for medical monitoring 28 days thereafter. Concurrently, Monsanto is free to file a motion to deny class certification. Although early motions to deny class certification are generally disfavored, this MDL has already generated much discussion and evidence of the many obstacles that plaintiffs like these face in getting a class certified. Monsanto reserves the right, following adjudication of the above-referenced motion to dismiss and any motion to deny class certification, to file a subsequent motion to dismiss raising any additional pleading issues.

**IT IS SO ORDERED.**

Dated: November 8, 2024

_____
VINCE CHHABRIA
United States District Judge