UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | **PTO NO. 297: ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE PORTIONS OF OPINIONS BY EXPERTS BAKST, WODA, AND FLEMING** |
| *Vander Groef v. Monsanto Co.*, Case No. 3:19-cv-07858-VC | |
| *El-Hakam v. Monsanto Co.*, Case No. 3:21-cv-09937-VC | Re: Dkt. Nos. 18973, 18972, 18971 |
| *Harris v. Monsanto Co.*, Case No. 3:16-cv-05786-VC | |

In the above-captioned cases, the plaintiffs seek to exclude portions of the opinions of Monsanto experts as irrelevant. The motions are granted in part and denied in part. This ruling assumes the reader's familiarity with the facts, the applicable legal standard, the prior *Daubert* rulings in this MDL, and the arguments made by the parties. *See generally In re Roundup Products Liability Litigation*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018) (Pretrial Order No. 45, Dkt. No. 1596); *In re Roundup Products Liability Litigation*, 358 F. Supp. 3d 956 (N.D. Cal. 2019) (Pretrial Order No. 85, Dkt. No. 2799); *Hardeman v. Monsanto Company*, 997 F.3d 941 (9th Cir. 2021).[1]

As a general matter, it bears noting that these motions are focused on excluding certain facts or data addressed in the targeted expert's report, rather than broadly challenging the

---

[1] Monsanto's objections to the allegedly late-filed replies are denied.

expert's qualifications or methodology. In some instances, Monsanto seems to want to use the challenged evidence as part of the expert's causation presentation. In other instances, Monsanto seems to agree that an aspect of the expert's report or testimony is not relevant to their causation opinion but insists that it might be relevant to some other aspect of the case. In the former situation, it makes sense for this Court to rule—the issue relates to the expert's causation opinion, and the opinions of causation experts are being assessed in this MDL before cases get sent back to their home districts for trial. In the latter situation, it does not make sense to rule—whether an expert can, for example, offer testimony about an aspect of a plaintiff's medical record that's relevant to some issue other than causation is best left to the trial judge.

One other general point: the parties continue to argue that if an expert testifies that they are unable to identify a singular cause for a plaintiffs' NHL, they are in effect admitting their own inability to opine on causation. As the Court has said before, this is not true. Cancer causation is incredibly complex, and an expert will not be excluded for admitting that fact. Quite the opposite, the Court would probably exclude an expert who testified to being able to identify a single cause with 100% certainty.

With these points out of the way, each motion is addressed below.

1. Plaintiff Vander Groef's motion regarding Dr. Richard Bakst largely relates to causation. Bakst does not opine that Vander Groef's heart surgery, pulmonary hypertension, diverticulitis, or alcohol consumption caused his subtype of NHL (mantle cell lymphoma), nor that these are risk factors for NHL. But in its opposition, Monsanto tries to lump these conditions into an umbrella NHL risk factor that Bakst identifies: "conditions that result in a suppressed immune system." Neither Bakst's report nor his deposition testimony support Monsanto's attempt to retroactively broaden his opinion in that way, so Bakst may not opine that those conditions relate to causation.

As for Vander Groef's splenectomy, Bakst does opine that the spleen "performs vital immunological functions" and "the removal of the spleen increases the risk of infections." Bakst Report at 16. That seems to imply that a splenectomy could be a "condition that results in a

suppressed immune system." But that implication is not spelled out explicitly in his report, and when asked at his deposition to identify all of Vander Groef's risk factors, Bakst didn't include not having a spleen. Bakst Dep. at 46:18–47:9. He cannot now testify that it is a risk factor.

Vander Groef's splenectomy comes up in another portion of Bakst's report, where he discusses Vander Groef's death by COVID. He opines that Vander Groef's pulmonary hypertension and his lack of a spleen contributed to his death. That, of course, is not relevant to the question of whether Vander Groef's MCL was caused by his exposure to Roundup, and Bakst may not testify that it is. But Monsanto does not seem to be offering this testimony to show causation—it instead offers the testimony to rebut any suggestion that Vander Groef died of NHL. Perhaps that will become relevant, perhaps it won't. But since it's not a question of NHL causation, the trial court should decide it.

Vander Groef also seeks to preclude Dr. Bakst from testifying that his mother had breast cancer and his uncle had brain cancer. Bakst's discussion of family history goes two different ways in his report. In a general section identifying risk factors for NHL, Bakst lists "family history of lymphoma or hematological malignancies." Bakst Report at 6. And, similarly, in his critique of Vander Groef's expert's analysis, Bakst mentions the failure to consider "family history of a hematological malignancy." Bakst Report at 17. But in another section specific to Vander Groef, Bakst describes one of his risk factors as "family history of malignancy including a first-degree relative with a hematological malignancy." Bakst Report at 16. Monsanto argues this last, broader description of family history is the correct one: Bakst was opining that a family history of any type of cancer is a risk factor for NHL. But that cannot be the case because Bakst provides no support for that conclusion elsewhere in his report, nor has Monsanto produced any evidence that a family history of non-lymphoma and non-hematological cancers is a risk factor for NHL. The more palatable reading of that sentence is that it was unintentionally imprecise, and Bakst was referring to Vander Groef's father's myeloma, not his mother's and his uncle's cancer. Accordingly, Bakst may not testify that they caused or contributed to his NHL. It's worth noting that this ruling restricting Bakst's opinion should not be read as reflecting poorly on

Bakst. It should be read as reflecting poorly on Monsanto. It does not appear that Bakst intended to argue the points that Monsanto now ascribes to him, and so it seems likely that his opinion is being restricted in a way that would not be objectionable to him.

Finally, Vander Groef moves to exclude Dr. Bakst's opinion that Vander Groef's work history cannot be ruled out as a risk factor. Vander Groef argues that Bakst's opinion is not based on sufficient facts or data because he admitted at his deposition that he didn't have enough information about Vander Groef's work history to rule it out. But Vander Groef gets the evidentiary requirements of the differential diagnosis process backwards. First, an expert needs to "rule in" all potential causes of a disease, and then "rule out" those for which there is no plausible evidence of causation. *See* PTO No. 85 at 2. Here, Vander Groef doesn't challenge Bakst's assertion that non-glyphosate chemical exposures like benzene are a risk factor, which effectively rules it in. And between Bakst's report and deposition testimony, he lays out the plausible evidence of causation that precludes him from ruling it out: Vander Groef handled paints and solvents as an excavator, volunteered as a firefighter, worked as a mechanic, and worked on a farm. It's true that Bakst doesn't precisely define Vander Groef's level of exposure from those occupations, but he doesn't need to do so to reliably conclude the exposure cannot be ruled out. Bakst will not be precluded from offering that opinion.

2. El-Hakam's challenge to Dr. Bruce Woda follows a similar pattern. El-Hakam seeks to preclude Woda from testifying about his family history of non-blood cancers. As far as the Court can tell, Woda does not opine that that El-Hakam's family history of non-blood cancers is a risk factor for his sub-type of NHL (hairy cell lymphoma). That aligns with the portion of Woda's report that lists having a first degree relative with NHL as a risk, which does not describe El-Hakam. Woda Report at 7. Monsanto again attempts to retroactively broaden their expert's opinion, vaguely arguing that the other family cancers are a "relevant medical fact," and that the plaintiff can cross examine Woda on whether they are indicative of NHL risk. But neither Woda nor Monsanto has provided any support for the conclusion that a family history of non-blood cancers is a risk factor for NHL, so Woda may not opine that it is. As with Bakst, this ruling

4

restricting his testimony should not reflect poorly on him, because it does not appear that he would object to it.

El-Hakam also moves to preclude Woda from testifying about his high cholesterol, anemia, and other hospital visits. Here, again, neither the expert report nor deposition transcript contain an opinion that these conditions are risk factors for NHL. But Monsanto implies in its opposition that those conditions are relevant to a proper differential diagnosis, indicating it believes they are related to causation. That opinion is not supported by Woda's report or testimony, and Woda may not render it at trial. To the extent Monsanto intends to have Woda testify about El-Hakam's medical history for the additional purpose of showing that HCL did not cause El-Hakam's other health issues, that does not involve the causation question being addressed here: whether Roundup caused El-Hakam's cancer in the first place. So the trial court should decide whether that testimony is admissible.

3. Harris's challenge to Dr. William Fleming explicitly notes that Fleming does not connect the six facts from Harris's medical history that he seeks to exclude to his NHL. In other words, Fleming does not opine that Harris's high blood pressure, high cholesterol, chronic headaches, prostate biopsy, alcohol use, or non-melanoma skin cancer caused or contributed to his NHL. Since these facts do not relate to Fleming's causation opinion and Monsanto does not claim they do, the Court will leave it to the trial court to decide whether they are admissible for some non-causation purpose.

**IT IS SO ORDERED.**

Dated: November 18, 2024

VINCE CHHABRIA
United States District Judge

5