UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | **PRETRIAL ORDER NO. 302: ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO EXCLUDE EXPERT NICHOLS** |
| *Hayes v. Monsanto Co.*, Case No. 3:21-cv-05398-VC | |
| | Re: Dkt. Nos. 18959, 18970 |
| *Daulton v. Monsanto Co.*, Case No. 3:20-cv-08518-VC | |

The plaintiffs' motions to exclude portions of the opinion of Dr. Craig Nichols are granted in part and denied in part. This ruling assumes the reader's familiarity with the facts, the applicable legal standard, the prior *Daubert* rulings in this MDL, and the arguments made by the parties. *See generally In re Roundup Products Liability Litigation*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018) (Pretrial Order No. 45, Dkt. No. 1596); *In re Roundup Products Liability Litigation*, 358 F. Supp. 3d 956 (N.D. Cal. 2019) (Pretrial Order No. 85, Dkt. No. 2799); *Hardeman v. Monsanto Company*, 997 F.3d 941 (9th Cir. 2021).[1]

I

Neither plaintiff directly attacks the science behind Dr. Nichols' general causation opinion that glyphosate exposure does not cause NHL, or his opinion that "the vast majority of NHL cases are caused by random mutations that occur in the normal cellular DNA replication

---

[1] Monsanto's objection to Hayes' allegedly late-filed reply is denied.

process." Nichols Report (Daulton) at 24; Nichols Report (Hayes) at 22–23. These opinions are based on research by Dr. Tomasetti and Dr. Vogelstein, which the Court addressed at length in its on order on Dr. Tomasetti. *See* PTO No. 289 (Dkt. No. 17841) at 1–13. Instead, the motions include three narrower arguments relating to general causation.

First, the plaintiffs seek to exclude as irrelevant or unreliable Dr. Nichols' discussion of FDA drug approval studies and epidemiology studies. According to Monsanto, Dr. Nichols discusses FDA drug approval and epidemiology studies to highlight the limitations of the studies that the plaintiffs' experts rely on. Rebutting the plaintiffs' evidence is, of course, a relevant topic for Dr. Nichols to talk about, and discussing the limitations of epidemiology in the field of cancer causation is within that topic. And it's appropriate to illustrate the limitations of case-control epidemiological studies by comparing them to other types of studies, such as clinical studies conducted under the auspices of the FDA.

Second, Daulton asks the Court to preclude Dr. Nichols from testifying about certain criticisms of articles by Dr. Benbrook and Dr. Chang. To the extent that Dr. Nichols disclosed his criticisms of the articles at deposition or in his report, such as the small study size of Chang 2023 or the choice of studies to analyze in Benbrook 2023, that is appropriate rebuttal evidence. Daulton may explore the weaknesses of this evidence during cross examination. Dr. Nichols may not, however, spring new criticisms on Daulton at trial that he did not disclose in his report or deposition.

Third, Hayes seeks to preclude Dr. Nichols from testifying about trends of NHL cases and glyphosate use over time. The Court recently addressed similar testimony offered by Monsanto expert Dr. Grinblatt. *See* PTO 301 (Dkt. No. 19867). As with Dr. Grinblatt's opinion on this point, there is nothing inherently unreliable about pointing out the fact that NHL cases have declined as Roundup use has risen. Hayes can cross-examine Dr. Nichols and present his own expert testimony about the significance of this point, but it will not be excluded.

II

The plaintiffs make five arguments relating to specific causation. First, they both argue

that Dr. Nichols' specific causation opinion should be excluded because he believes one cannot know the cause of a particular person's NHL. The Court has considered and rejected that argument in prior orders, and it is rejected here as well. *See* PTO No. 297 (Dkt. No. 19764) at 2.

Second, and relatedly, plaintiff Hayes argues that Dr. Nichols' "random replication errors" opinion does not "fit" the facts of the case, because there is no specific evidence relating to Hayes that would support a conclusion that this was the cause of his NHL. This makes no sense. As previously explained, "Monsanto's specific causation experts can do essentially what [the plaintiff]'s specific causation experts will do: reason that (1) random replication errors are a known cause of NHL and that (2) [the plaintiff] had no exposures to other known causes of NHL, and conclude that (3) random replication errors therefore likely caused [the plaintiff]'s NHL." PTO No. 289 at 12, n10.

Third, Daulton impliedly argues that Dr. Nichols lacks qualifications to opine on specific causation because he has little professional or academic experience in cancer causation. It's true that Dr. Nichols is not an etiologist or epidemiologist. But in his report, he says he has "particular clinical and research experience with several chemotherapeutic agents felt to be genotoxic and/or inducers of oxidative stress as it relates to secondary cancer causation." And at least two of his publications seem to relate somewhat to blood cancer causation: *Hematopoietic precursor cells within the yolk sac component are the source of secondary hematopoietic malignancies in patients with mediastinal germ cell tumors*, and *Secondary leukemia associated with a conventional dose of etoposide: Review of serial germ cell tumor trials*. If either plaintiff had attacked Dr. Nichols' qualifications to opine on general causation, the Court may have required Monsanto to make a stronger showing of his etiological or epidemiological bona fides. But for the purposes of specific causation, this minimal amount of etiological experience, combined with his significant oncology experience, suffices to qualify him.

Fourth, Daulton asserts that Dr. Nichols doesn't use a specific causation methodology and in fact rejects the differential etiology approach. But Daulton doesn't cite anything showing that Dr. Nichols rejects differential etiology. Daulton may be referring to a line from Dr.

Nichols' report from the *Hayes* case, which says "Differential diagnosis is an inappropriate and unacceptable methodology in this case. There is no need for a differential diagnosis here because Ms. Hayes' diagnosis is well established." Nichols Report (Hayes) at 22. That sounds more like a perfectly understandable quibble about the word "diagnosis" rather than a rejection of differential etiology.

In fact, without saying the words "differential etiology," Dr. Nichols seems to have conducted a "ruling in" process that is very similar to what other specific causation experts have done. He identified several risk factors that could have contributed to Daulton's lymphoma, including age, gender, race, Type 2 diabetes, and random replication errors. Dr. Nichols did not "rule in" exposure to Roundup because his general causation opinion is that it is not linked with NHL. Simply relying on a general causation opinion in the specific causation stage does not undercut either opinion—if it did, every specific causation expert in this MDL would have to be excluded.[2]

Fifth, Daulton moves to preclude Nichols from testifying about some of his family medical history. The Court addressed a similar question in PTO No. 297 and grants this portion of Daulton's motion for similar reasons. Dr. Nichols does not appear to opine that Daulton's risk of NHL was increased by his son's bipolar disease and alcoholism, his mother's Alzheimer's, or his father's alcoholism myocardial infarction. Therefore, he may not do so at trial. Dr. Nichols did opine that Daulton had a family history of cancer and that may have increased his risk. But given that none of the family cancers Dr. Nichols listed were blood cancers, that is inconsistent with the portion of his opinion that listed "family history of hematopoietic malignancy" as a risk factor for NHL, without listing other cancers as risk factors. Daulton apparently has no family

---

[2] The case Daulton cites doesn't help him. There, general causation was not at issue—the court had already concluded that exposure to the chemical at the center of the litigation could cause cancer. *See In re E.I. du Pont de Nemours and Company C-8 Personal Injury Litig.*, 2020 WL 8920990, at *3–4 (S.D. Ohio Jan. 15, 2020). The problem with Dr. Nichols' testimony appears to have been, in part, that he provided no explanation for how he "ruled out" exposure to the chemical. *See id.* at *6–7. Here, he doesn't need to. In his opinion, glyphosate does not cause lymphoma, so it shouldn't be "ruled in" in the first place.

4

history of hematopoietic malignancy and Monsanto has not shown that non-blood cancers increase risk for NHL. Therefore, Dr. Nichols may not discuss Daulton's family history of non-blood cancers.

**IT IS SO ORDERED.**

Dated: December 4, 2024

_____
VINCE CHHABRIA
United States District Judge