**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843 | Fax: 202-682-1639

*Attorneys for Defendant Monsanto Company*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100 | Fax: 310-576-2200

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Johnetta Scheh, et al. v. Monsanto Company*,<br>Case No.: 3:20-cv-02427-VC | **DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF JOEL J. GAGNIER AND FOR SUMMARY JUDGMENT**<br><br>Hearing:<br>Date:    TBD (if necessary)<br>Time:    TBD<br>Place:   San Francisco Courthouse,<br>           Courtroom 4 – 17th Floor |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on a date and time to be determined (if necessary), in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Dr. Joel J. Gagnier. Monsanto seeks an order excluding opinions of Dr. Gagnier under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  Further, Plaintiffs have not disclosed any other general causation experts in their expert disclosures.  If the Court grants Monsanto's motion to exclude the testimony of Dr. Gagnier, Monsanto seeks summary judgment on all of Plaintiffs' claims because Plaintiffs have failed to produce at least one admissible expert opinion establishing general causation.

Dated:  January 21, 2025                              Respectfully submitted,


By: /s/ *Linda C. Hsu*
       Linda C. Hsu
Attorneys for Defendant Monsanto Company

DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY
OF JOEL J. GAGNIER AND FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

**A.**    Dr. Gagnier's Experience.........................................................................................2

**B.**    Dr. Gagnier's General Causation Opinion ...............................................................2

LEGAL STANDARD..............................................................................................................3

ARGUMENT ...........................................................................................................................4

**A.**    Dr. Gagnier's General Causation Opinion Is Not Based On A Scientifically
Reliable Methodology...............................................................................................4

**B.**    Summary Judgment Is Required Because Plaintiffs Do Not Have Admissible
Expert Testimony On General Causation. ................................................................6

CONCLUSION ........................................................................................................................7

DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MONSANTO'S MOTION TO EXCLUDE
TESTIMONY OF JOEL J. GAGNIER AND FOR SUMMARY JUDGMENT

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cooper v. Brown*,
   510 F.3d 870 (9th Cir. 2007)............................................................................................... 4

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ...................................................................................................... 1, 4

*In re Roundup Products Liab. Lit.*,
   390 F. Supp. 3d 1102 (N.D. Cal. 2018) ........................................................................ 4, 5

*White v. Ford Motor Co.*,
   312 F.3d 998 (9th Cir. 2002)............................................................................................... 3

**Other Authorities**

Fed. R. Evid. 702 .......................................................................................................... 3, 4

DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MONSANTO'S MOTION TO EXCLUDE
TESTIMONY OF JOEL J. GAGNIER AND FOR SUMMARY JUDGMENT

**INTRODUCTION**

Plaintiff Johnetta Scheh ("Plaintiff") designated Dr. Joel Gagnier, a clinical epidemiologist and former naturopathic doctor, to opine on the issue of whether Roundup can cause non-Hodgkin's lymphoma ("NHL") generally.[1]

Dr. Gagnier is not new to the Roundup litigation or this Court. This Court previously found in *Engilis v. Monsanto* that "after reading [Dr. Gagnier's] reports, excerpts of [his] testimony, and the parties' briefs, the Court is skeptical that [Dr. Gagnier's] opinions are reliable enough to present to a jury.  If Engilis wishes to use these witnesses at trial, *Daubert* hearings must be scheduled for this summer."  (*Engilis v. Monsanto Co.*, Case No. 19-cv-7859-VC, Dkt. No. 45 and [MDL Dkt. No.16763].)  Prior to the *Daubert* hearing, Engilis withdrew Dr. Gagnier as an expert, mooting Monsanto's motion to exclude him.  (*See* Dkt. Nos. 54 and [MDL Dkt. No.17254].)  In *Engilis*, Dr. Gagnier only offered a general causation opinion. And while Dr. Gagnier has revised his methodology to address some of the limitations identified in *Engilis* (i.e. inconsistent reported results, inclusion of multiple reviewers, and failure to conduct a causation analysis), significant problems with his methodology remain.

In this case, if permitted, Dr. Gagnier will testify that the scientific evidence available from human epidemiologic research points to an increased risk of NHL in (1) those ever exposed to glyphosate and (2) those exposed to glyphosate exposure thresholds reported in various epidemiological studies.  He bases his general causation opinion on an updated "meta-analysis" of epidemiological literature he performed.  *See generally e.g.*, Ex. A, Report of Joel J. Gagnier in *Scheh v. Monsanto Company* ("Report").[2]  Dr. Gagnier's updated meta-analysis, however, contains fundamental methodological flaws. Most critically, Dr. Gagnier chose to use *unadjusted* data in his assessment – a choice he cannot explain. Dr. Gagnier's meta-analysis has never been published, nor has it been peer-reviewed.  As such, what he describes as his meta-analysis is really nothing more than a biased, unreliable, untested, unverified, litigation exercise that fails to meet the standards for

---

[1] Dr. Gagnier confirmed in his deposition that he will not be providing any specific causation opinions in this case.  Ex. B, 1/14/2025 Deposition of Joel J. Gagnier in *Scheh v. Monsanto Co.* at 12:5-10.

[2] All exhibits are attached to the concurrently filed declaration of Linda C. Hsu.

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF JOEL J. GAGNIER AND FOR SUMMARY JUDGMENT

admissibility and must be excluded.[3]

## BACKGROUND

### A.    Dr. Gagnier's Experience

Dr. Gagnier practiced as a naturopathic doctor (ND) in Canada for approximately ten years. Naturopathic medicine, per Dr. Gagnier, is primary care including things like clinical nutrition, botanical medicine, and acupuncture. *See* Ex. C, 03/28/2022 Deposition of Joel J. Gagnier in *Alesi* ("*Alesi* Dep.") at 15:1-18. In 2018, Dr. Gagnier stopped practicing naturopathy, discontinued paying his dues, and his Canadian naturopathy license was revoked. *Id.* at 213:7-24. Since 2010, Dr. Gagnier has served as an Associate Professor at the University of Michigan in the Departments of Orthopedic Surgery and Epidemiology. Ex. D, (Gagnier CV).  Within his capacity as an epidemiologist, almost all of his publications have involved orthopedics. Ex. C, *Alesi* Dep. at 18:3-6; 19:1-10.

Before his retention as an expert in Roundup litigation, Dr. Gagnier had no experience or expertise in the relationship between glyphosate and NHL. *Id.* at 71:8-14.  He has never designed, conducted, or published a cohort study in which the primary health outcome was any type of cancer. *Id.* at 20:20-24.  And despite that his opinions are based on his own "meta-analysis," Dr. Gagnier has never published a meta-analysis or systematic review of literature looking at the association between any exposure and NHL or any type of cancer. *Id.* at 21:1-9; 21:20-22:1; *see also* Ex. B, 1/14/2025 Deposition of Joel J. Gagnier in *Scheh v. Monsanto Co.* at 41:20-42:9. Dr. Gagnier admits that everything he knows about the scientific literature and clinical research in the area of glyphosate's relationship with NHL he learned as part of his work as an expert in litigation. *Id.* at 71:15-22.

### B.    Dr. Gagnier's General Causation Opinion

Dr. Gagnier's reports explain that, to reach his opinion on general causation, he "collected, reviewed, assessed and provided a scientific opinion on the human clinical epidemiologic research evidence regarding the relationship between exposure to glyphosate-based herbicides and the risk of non-Hodgkin lymphoma (NHL) including its various sub-types." Ex. A, Report at 4.  He describes his "methodology" as (a) evaluating the literature, (b) selecting the studies he deemed appropriate, and (c)

---

[3] As a general causation expert offering opinions regarding the same literature review amongst multiple cases, Dr. Gagnier's testimony regarding his opinions in prior cases against Monsanto Company are authoritative in this case.

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF JOEL J. GAGNIER AND FOR SUMMARY JUDGMENT

including only the studies he deemed appropriate in his meta-analysis. *See generally* Ex. A, Report. He then reports the results of the meta-analysis that he conducted.

When assessing the reliability of study results, scientists must consider the effect of so-called "confounding" variables. Here, exposure to pesticides[4] other than glyphosate is a confounder in many of the studies Dr. Gagnier relies on, as those studies investigated the association of a variety of pesticides with NHL and asked participants to report all of the pesticides to which they were exposed. *See, e.g.*, Ex. E, McDuffie, *et al.*, *Non-Hodgkin's Lymphoma and Specific Pesticide Exposures in Men: Cross-Canada Study of Pesticides and Health*, 10 Cancer Epidemiology, Biomarkers & Prevention 1155, 1156 (2001). Without adjusting for confounders, like other pesticides to which participants were exposed, any association found in these studies cannot reliably be attributed to glyphosate as opposed to the other pesticides in the study. Despite acknowledging, and agreeing with this concept, *see* Ex. F, *Ferro* Dep. at 81:14-20; 86:20-87:13; inexplicably, Dr. Gagnier did not adjust for confounders when conducting his analysis here. *See id* 192:17-23, 232:2-5.

Ultimately, Dr. Gagnier concluded that the results of his meta-analysis suggest: (a) an increased risk of 18-24%—that is, an *association*—for NHL in anyone ever exposed to glyphosate at any point in their life; and (b) an increased risk of 33-47% for NHL generically in those exposed to glyphosate at various exposure thresholds reported in various individual studies. Ex. A, Report at 60. Dr. Gagnier next purported to perform a Bradford Hill Causality Assessment concluding the evidence supports a cause-effect association of glyphosate and NHL. *Id.* at 60-61.

## **LEGAL STANDARD**

A proposed expert witness must possess "knowledge, skill, experience, training, or education" sufficient to qualify him as an expert on the subject to which his testimony relates. Fed. R. Evid. 702. When an expert's field of expertise is not related to the subject on which he seeks to offer testimony, such testimony is inadmissible. *See White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002). Apart from qualifications, expert testimony must be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result of applying those principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The trial judge is charged with the responsibility

---

[4] Pesticides include, among other things, herbicides, insecticides, rodenticides, and fungicides.

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF JOEL J. GAGNIER AND FOR SUMMARY JUDGMENT

of acting as a gatekeeper to "ensure that any and all scientific testimony … is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The proponent of the expert bears the burden of proving that the expert's proffered testimony is admissible. *See, e.g.*, *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

## ARGUMENT

### A.    Dr. Gagnier's General Causation Opinion IS Not BASED ON a Scientifically Reliable Methodology.

Dr. Gagnier's general causation opinion should be excluded because it is not the product of a reliable methodology. Dr. Gagnier failed to abide by basic analytical principles he admits are appropriate. An expert's failure to follow his own methodological tenets renders any opinions reached unreliable and inadmissible. *See* Fed. R. Evid. 702. Dr. Gagnier has conceded numerous limitations of his purported methodology stemming from failure to abide by proper analytical principles. Most significantly, Dr. Gagnier's use of data unadjusted for other pesticides render his conclusion unreliable. This Court has already excluded testimony from certain epidemiologists as unreliable on this precise basis. *See In re Roundup Products Liab. Lit.,* 390 F. Supp. 3d 1102, 1140 (N.D. Cal. 2018) (excluding epidemiologist Dr. Ritz's testimony based upon her use of data unadjusted for other pesticides, when adjusted data is available). The Court should do the same here.

*First*, Dr. Gagnier failed to use data adjusted for other pesticides, despite acknowledging that such adjustment is necessary and appropriate here. Dr. Gagnier testified that "the reason you adjust for important confounders is so that you don't confuse a relationship between the outcome you're actually interested in and the exposure you're actually interested in with some other variable." Ex. F, *Ferro* Dep. at 81:14-20; 86:20-87:13. When analyzing whether glyphosate can cause NHL, Dr. Gagnier testified that there is good reason to adjust for exposure to other pesticides:

> Q.    Controlling for other pesticides tries to tease out the risk for one product as opposed to whether multiple products combined could be influencing the result, true?
> A.    Yeah.
> Q.    Controlling for other pesticides when you can is a good thing to do, right?
> A.    Yes, if you have reason to suspect that it is a confounder.
> Q.    Controlling helps you tease out if the observed effect is due to glyphosate or to something else, correct?
> A.    Yes.

- 4 -

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF JOEL J. GAGNIER AND FOR SUMMARY JUDGMENT

*Id.* at 134:7-18.

Despite these admissions about the importance of adjusting for confounding variables, Dr. Gagnier used unadjusted data in his meta-analysis. For instance, Dr. Gagnier conceded that every meta-analysis he conducted used odds ratios from Pahwa (2019) and Eriksson (2008) that were not adjusted for other pesticides, despite that adjusted data was available. *Id.* at 192:17-23, 232:2-5.

Even more, Dr. Gagnier has no valid justification for using unadjusted data rather than adjusted data. Indeed, he inexplicably testified that he could not recall why he decided to use unadjusted data. *Id*. at 232:19-233:15. But the reason is clear: if Dr. Gagnier had adjusted for other pesticides, the underlying data would not support Dr. Gagnier's preordained conclusions. Dr. Gagnier admits as much. He acknowledges that his meta-analysis odds ratio would have been lower if he had used the most adjusted odds ratios from Pahwa (2019) or Eriksson (2008) instead of the unadjusted data. *Id.* at 193:5-17. And he agreed that had he used the adjusted data, his meta-analysis odds ratio "quite possibly" would not have been statistically significant. *Id.* at 265:2-9. Indeed, Dr. Gagnier could not confirm that *any* analysis he conducted would have been statistically significant had he used *any* odds ratio from Pahwa (2019) that was adjusted for other pesticides. *Id.* at 265:10-20.

Dr. Gagnier's failure to use adjusted data is a fatal flaw in his analysis because it manipulates the results of his meta-analysis, providing him an unreliable basis to opine that the odds ratios are statistically significant. As this Court has previously held, "exclusive consideration of numbers unadjusted for other pesticides, when adjusted numbers are available, would be disqualifying. Failing to take account of likely confounders by presenting and relying upon only unadjusted (or minimally adjusted) estimates is a serious methodological concern." *In re Roundup Products Liab. Lit.,* 390 F. Supp. 3d at 1140 (citing *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 244, 253 (6th Cir. 2001))). This flaw undermines Dr. Gagnier's entire analysis because a statistically significant odds ratio is an indication of an association between the groups being compared (here, those exposed to glyphosate and those never exposed), whereas an odds ratio that is not statistically significant would indicate there is no difference between the groups. By failing to adjust the data for other pesticides, Dr. Gagnier's meta-analysis could find an association between glyphosate and NHL where none actually exists. Dr. Gagnier's general causation opinion based on his meta-analysis using unadjusted data is not reliable

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF JOEL J. GAGNIER AND FOR SUMMARY JUDGMENT

and should be excluded.

*Second*, Dr. Gagnier testified that certain other procedures are important for a study to be meaningful and effective, yet he admitted he did not follow these procedures in his own meta-analysis. For example, Dr. Gagnier emphasized that it is important to have a written protocol laying out the planned analyses before conducting them so "you don't manipulate your analyses in the process by view of the data." Ex. F, *Ferro* Dep. at 57:10-58:6. But Dr. Gagnier's meta-analysis does precisely what he testified it should not do: Dr. Gagnier did not specify ahead of time whether he would use days/years, number of years, or lifetime days for his highest exposure meta-analysis. *Id.* at 35:25-36:3.

*Third,* Dr. Gagnier cherry-picked unpublished data points in order to reach his desired outcome. Dr. Gagnier testified that before constructing a meta-analysis, a researcher should justify the choice of data so that "estimates aren't cherry-picked." *Id.* at 58:13-20; 111:14-112:10. But Dr. Gagnier failed to justify the data he chose to input into his meta-analysis—choices that no author of any *published* meta-analysis has endorsed.  For instance, Dr. Gagnier admitted that he was not aware of a single published meta-analysis of Roundup and NHL that used the odds ratio he selected from Pahwa (2019):

> Q.     Your ever/never meta-analysis uses numbers from Pahwa (2019) that nobody who has published meta-analyses of Roundup and NHL used, true?
> A.     None of these that we're looking at.
> Q.     Are you aware of any other published meta-analyses that you did not include in your report in your review?
> A.     I'm not aware of any additional ones.

*Id.* at 323:3-10.  In other words, Dr. Gagnier cherry-picked convenient data that would support his pre-ordained conclusions, making unjustified analytical choices along the way that no published meta-analysis supports. These flaws render Dr. Gagnier's opinions unreliable.

**B.**     **<u>Summary judgment is required because plaintiffs do not have admissible expert testimony on general causation.</u>**

Plaintiffs have failed to present at least one admissible expert opinion to support general causation in this case.  In prior cases where this Court has determined that a plaintiff's general causation case hinged on inadmissible expert opinion, it has granted summary judgment for Monsanto on that basis. *See, e.g.*, Dkt. 18659 at 2 ("[W]ithout Zhang, Bulone has no admissible general causation

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF JOEL J. GAGNIER AND FOR SUMMARY JUDGMENT

opinion, so Monsanto is entitled to summary judgment."). The Court should do the same here upon excluding Dr. Gagnier's general causation opinion.

## CONCLUSION

For the reasons set forth above, the Court should grant Monsanto's Motion to Exclude Testimony of Dr. Joel J. Gagnier. Because Plaintiffs have not disclosed any other general causation experts in their expert disclosures, the Court should grant summary judgment on all of Plaintiffs' claims because Plaintiffs have failed to produce at least one admissible expert opinion establishing general causation.

Dated:  January 21, 2025                          Respectfully submitted,


By:  /s/ *Linda C. Hsu*
         Linda C. Hsu
         Attorneys for Defendant Monsanto Company


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of January, 2025, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Linda C. Hsu*
Linda C. Hsu

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF JOEL J. GAGNIER AND FOR SUMMARY JUDGMENT