**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843 | Fax: 202-682-1639

*Attorneys for Defendant Monsanto Company*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 | Fax: 310-576-2200

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*ALL ACTIONS* | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S RESPONSE TO PLAINTIFF COUNSEL'S REQUEST FOR SANCTIONS**<br><br>Hearing:<br>Date: March 4, 2025<br>Time: 10:00 A.M.<br>Place: Courtroom 04, 17th Floor<br>Judge Vince Chhabria |

## INTRODUCTION

On January 29, 2024, Plaintiffs' counsel Aimee Wagstaff filed a response to Special Master William A. Foster's Report and Recommendation Regarding the Distribution of Common Benefit Funds. *See* Dkt. 20153. In her filing, Ms. Wagstaff requests that Monsanto be sanctioned because she and other Plaintiffs' attorneys—and not Monsanto—deposited holdback funds into the common benefit fund (CBF) for this MDL.[1] Despite this extreme request for sanctions, Ms. Wagstaff does not claim that the CBF is underfunded, or that Monsanto ever withheld an agreed-upon settlement payment. Nor does Ms. Wagstaff mention that the well-established, longstanding practice in the Roundup litigation has been for Plaintiffs' firms to deposit holdback funds into the CBF—a practice with which Ms. Wagstaff has never previously taken issue, and in fact has explicitly agreed to in myriad settlement agreements. Worse still, Ms. Wagstaff fails to disclose that the order she identifies as obligating Monsanto to deposit holdback funds was superseded by a subsequent order of this Court, which makes clear that Plaintiffs' attorneys are the ones who must deposit holdback funds into the CBF.

For these reasons and those that follow, this Court should reject Ms. Wagstaff's suggestion that Monsanto be sanctioned.

## BACKGROUND

A brief recap of the history of the settlement process in the Roundup litigation and this Court's orders related to that process may provide context.

In 2017, this Court entered Pretrial Order No. 12 (PTO 12), which established that there would be a CBF for this MDL. *See* Dkt 161. Among other things, PTO 12 required the MDL Plaintiffs' Leadership (which included Ms. Wagstaff) to establish a fund, name a fund administrator, and create a log of "Participating Cases" that are subject to PTO 12 every 30 days. *Id*. at 2-5. PTO 12 left certain issues concerning the CBF unanswered: for example, PTO 12 did not establish what percentage of recovered funds would be paid into the CBF. *Id*. at 5 ("The

---

[1] The other co-lead counsel or MDL plaintiffs, Ms. Greenwald and Mr. Dickens, filed a separate response to the Special Master's Report, which similarly accuses Monsanto of "noncompliance" because it "has not policed MDL settlements to ensure that the holdback is made…" *See* Dkt. 20150 at 29. That accusation is unfounded for all the reasons explained herein.

common benefit assessment percentage will be determined in a subsequent order of this Court."). Importantly, PTO 12 also provided that "[t]he Court may further modify this order." *Id*. at 1.

By 2020, Monsanto was negotiating large-volume settlements with plaintiffs' firms on a firm-by-firm basis. That included settlements with the MDL Plaintiffs' Leadership firms, including Ms. Wagstaff's firm. These settlements generally were, as Special Master Foster correctly recognized, "group settlements that include[d] MDL cases, state court cases, and unfiled cases." Dkt. 20028 at 14.

With respect to these early settlements, Monsanto could not feasibly deposit holdback funds into the CBF because among other issues, PTO 12—at the time the only existing guidance related to the CBF—did not specify the holdback amount. Additionally, Plaintiffs' Leadership had not maintained and shared with Monsanto a list of Participating Cases. However, Monsanto recognized the importance of protecting the CBF. Accordingly, to allow for settlements to be made during this time of uncertainty regarding the scope and amount of the CBF holdback, Monsanto and the MDL Plaintiffs' Leadership firms agreed that Plaintiffs' counsel—not Monsanto—would hold back the relevant funds. Specifically, the parties agreed that Monsanto would fund the gross amount of the settlement, and when details about the scope and percentage of the CBF were settled by "a subsequent order of this Court," Dkt. 161 at 5, Plaintiffs' firms could pay the funds into the CBF. The Master Settlement Agreements and the individual claimant releases both memorialized this protocol, whereby claimants' counsel bore the responsibility to hold back common benefit funds.[2] To be clear: starting in 2020, Plaintiffs' firms, including Ms. Wagstaff's, *agreed* that Monsanto did not have the responsibility to withhold and deposit holdback funds into the CBF.

In 2021, this Court issued Pretrial Order No. 236, the order Ms. Wagstaff now claims Monsanto violated. In PTO 236, this Court set the holdback percentage at 8%. *In re Roundup Prods. Liab. Litig*., 544 F. Supp. 3d 950, 973 (N.D. Cal. 2021). When this Court issued PTO

---

[2] For confidentiality reasons, Monsanto has not attached an example of the Master Settlement Agreements or releases. Monsanto will provide copies to the Court for *in camera* review if the Court requests it.

- 2 -
OPPOSITION TO PLAINTIFF'S COUNSEL'S REQUEST FOR SANCTIONS

236, Monsanto had already reached settlements in approximately 50,000 cases, including significant settlements with all of the Plaintiffs' Leadership Firms, including Ms. Wagstaff's. Those settlement agreements all included the provision described above: Plaintiffs' firms agreed that they—not Monsanto—would deposit holdback funds into the CBF. Ms. Wagstaff's firm, in particular, agreed to this protocol for thousands of settled cases.

Moreover, although PTO 236 stated that "Monsanto must hold back 8% of the gross amount of any recovery it pays an MDL plaintiff and place that money into the common benefit fund," *In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d at 973, that language was clarified by a later order of this Court, Pretrial Order No. 287 (PTO 287), which this Court issued in October 2023. *See* Dkt. 17366. PTO 287 states that "*all attorneys representing **plaintiffs** in this MDL are required to hold back 8% of the gross amount of any recovery received through settlement or judgment and deposit this amount*" into the CBF. *Id.* at 1 (emphases added). This language reflects what had been reality for years: that holdback funds were deposited by Plaintiffs' counsel, not Monsanto. This language, moreover, is consistent with PTO 12, which envisioned that the procedure with respect to the CBF would evolve over time. *See* Dkt 161 at 1 ("The Court may further modify this order.").

Ms. Wagstaff seizes on a single line from the Special Master's Report as the entire basis for suggesting that Monsanto be sanctioned. Specifically, Ms. Wagstaff cites the Report's statement that Monsanto has "in large part … not complied" with PTO 236 because it has not been depositing the holdback funds into the CBF. Dkt. 20153 at 3 (citing Dkt. 20028 at 25). Respectfully, however, in making this statement the Report overlooked PTO 287's language clarifying that Plaintiffs' firms—not Monsanto—were to deposit the holdback funds. And the established practice in the litigation detailed above was that Plaintiffs' firms would deposit holdback funds.

**ARGUMENT**

The facts described above make clear why Ms. Wagstaff's request for sanctions is without merit and should be denied.

1     *First*, Ms. Wagstaff makes no mention of the most recent PTO on this topic, PTO 287, which states that it is Plaintiffs' counsel—not Monsanto—who bears the burden to deposit CBF funds. Instead, Ms. Wagstaff cites to a much older order—PTO 236—that was modified by PTO 287.

    *Second*, the alleged violation that Ms. Wagstaff identifies is non-substantive. Ms. Wagstaff does not claim that Monsanto ever failed to pay out a settlement. Nor does Ms. Wagstaff claim that the CBF is underfunded as a result of the procedure implemented by the parties—because it is not.

    *Third*, Ms. Wagstaff's argument ignores the history set forth above: that as early as 2020, the parties had agreed that Plaintiffs' counsel, not Monsanto, would deposit holdback funds. Ms. Wagstaff herself agreed to this arrangement for thousands of cases over several years without complaint. Each settlement agreement, moreover, made provisions to preserve the MDL common benefit assessment.

    *Fourth*, Ms. Wagstaff cites no legal authority at all in support of her sanctions request. Perhaps that is because there is no legal authority that would support a sanctions award against Monsanto under these facts. "When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order; or (2) bad faith." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). Ms. Wagstaff can make no credible argument that Monsanto willfully violated any court order, since the very course of conduct she claims is sanctionable—Plaintiffs' firms depositing the holdback funds instead of Monsanto—is one she herself agreed to and is consistent with PTO 287. On these facts, there is no basis to conclude that Monsanto's conduct constituted bad faith.

///
///
///
///
///

# CONCLUSION

This Court should deny Ms. Wagstaff's request for sanctions.

Dated:  February 6, 2025                     Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**


By: /s/ Linda C. Hsu
       Linda C. Hsu
Attorney for Defendant Monsanto Company

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of February 2025, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

By: /s/ Linda C. Hsu
       Linda C. Hsu
Attorney for Defendant Monsanto Company