# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>*CARL AGOSTA v. MONSANTO COMPANY*<br><br>3:21-cv-06562-VC | **NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION PURSUANT TO CIV. L.R. 7-9; MEMORANDUM OF POINTS AND AUTHORITIES; GREENWALD DECL. & EXS. "1–11"** |

**TO THE CLERK OF THIS COURT AND ALL PARTIES OF RECORD:**

| | |
|---|---|
| Date: | TBD |
| Time: | TBD |
| Courtroom: | **Courtroom 4** |
| **Judge Assigned:** | **Vince Chhabria** |

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, as soon as counsel may be heard, telephonically or in person in Courtroom 4, United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94102, as the Judge determines, Plaintiffs' Co-Lead Counsel will bring on for hearing their motion, pursuant to Civ L.R. 7-9, for leave to file a motion asking this Court to reconsider its February 24, 2025 Pretrial Order No. 310 [ECF No. 20285] granting Monsanto Company's motion to exclude the opinions of Plaintiff's specific causation expert, Dr. Kothari, in *Agosta v. Monsanto Co.*, No. 3:21-cv-06562-VC.

Plaintiffs' Co-Lead Counsel's motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Greenwald Declaration and accompanying Exhibits attached hereto, and any additional argument and evidence this Court may consider.

DATED: February 28, 2025

                                                      Respectfully submitted,

                                                      **WEITZ & LUXENBERG, P.C.**

By:   */s/ Robin L. Greenwald*
        Robin Greenwald
        **WEITZ & LUXENBERG, PC**
        700 Broadway
        New York, NY 10003
        Telephone: 212-558-5500
        rgreenwald@weitzlux.com

        */s/ David Dickens*
        David Dickens
        **THE MILLER FIRM LLC**
        108 Railroad Ave
        Orange, VA 22960
        Telephone: 540-672-4224
        ddickens@millerfirmllc.com

        *Co-Lead Counsel for Plaintiffs*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

LEGAL STANDARD ..................................................................................................................... 3

ARGUMENT ................................................................................................................................... 4

    I.    PTO 310 – Which Would Require Plaintiffs' Experts to Adopt Dr. Tomasetti's Theories – Violates *Daubert* Caselaw Holding that an Expert's Disagreement with an Opposing Expert Is Not Grounds for Exclusion. ........................................................................................................ 4

    II.   PTO 310 Is Contrary to This Court's Prior Order (PTO 289), Monsanto's Own Experts' Causation Methodology, and Dr. Tomasetti's Theories. ............................................................ 7

    III.  PTO 310 Contradicts Ninth Circuit Caselaw Which Holds that an Expert Is Not Required to Rule Out Idiopathy Where the Expert Identifies a Known Environmental Cause. .............. 11

CONCLUSION ............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                         **Page(s)**

*City of Pomona v. SQM N. Am. Corp.*,
750 F.3d 1036 (9th Cir. 2014) ................................................... 6

*Ellis v. MLI Transport, LLC*,
No. 8:13CV273, 2015 WL 1034641 (D. Neb. Mar. 10, 2015) ........................... 6

*GED Integrated Solutions, Inc. v. Durotech Intern, Inc.*,
No. 5:06CV1327, 2009 WL 233872 (N.D. Ohio Jan. 30, 2009) ......................... 7

*Hardeman v. Monsanto Co.*,
997 F.3d 941, 960 (9th Cir. 2021) ........................................... 13–14

*In re Roundup Prods. Liab. Litig.*,
713 F. Supp. 3d 681 (N.D. Cal. 2024) ........................................... 2

*In re Roundup Prods. Liab. Litig.*,
358 F. Supp. 3d 956 (N.D. Cal. 2019) ....................................... 12–13

*Mariano v. City of Las Vegas*,
No. 2:18-cv-01911, 2023 WL 9119811 (D. Nev. Sept. 21, 2023) ....................... 6

*Oliver v. City & Cnty. of San Francisco*,
No. C 07-2560 JL, 2009 WL 10736489 (N.D. Cal. Mar. 23, 2009) ..................... 3

*Wendell v. GlaxoSmithKline LLC*,
858 F.3d 1227 (9th Cir. 2017) ............................................. 11–12

**Local Rules**

Civ. L.R. 7-9 ............................................................ 1, 3

    Civ. L.R. 7-9(a) ...................................................... 3
    Civ. L.R. 7-9(b) ...................................................... 4
        Civ. L.R. 7-9(b)(3) ............................................... 1, 4
    Civ. L.R. 7-9(c) ...................................................... 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs' Co-Lead Counsel respectfully seek leave from this Court, on behalf of Plaintiff Carl Agosta and all plaintiffs in the Roundup multi-district litigation ("MDL"), to file a motion for reconsideration of this Court's Pretrial Order No. 310 ("PTO 310") granting Monsanto Company's ("Monsanto") motion to exclude the opinions of Plaintiff's specific causation expert, Dr. Shalin Kothari. *See* PTO 310, *Agosta v. Monsanto Co.*, No. 3:21-cv-06562-VC (N.D. Cal. Feb. 24, 2025), Greenwald Decl. **Exhibit 1.**[1] PTO 310 represents "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civ. L.R. 7-9(b)(3). This is so for three reasons.

*First*, PTO 310 would require plaintiffs' experts who disagree with Dr. Tomasetti's theories about random mutations – such as Dr. Kothari – to nonetheless apply Dr. Tomasetti's theories as part of their causation methodology. But that requires experts to opine contrary to their scientific

---

[1] As this Court recognized in the MDL *Daubert* hearing of Dr. Tomasetti, "a decision to exclude a specific causation expert in one individual case could have significant ramifications for the MDL." Tomasetti *Daubert* Hr'g, *Delorme-Barton v. Monsanto Co.*, No. C 18-01427-VC (N.D. Cal. Dec. 12, 2023), Greenwald Decl. **Exhibit 2**, at 6:21–7:12. Thus, this Court suggested that there would be certain *Daubert* motions involving plaintiffs' experts in cases handled by non-Co-Lead Counsel in which "we would all agree [Plaintiffs' Co-Lead Counsel] should be involved in." *Id.* And this Court stated that where "a ruling in a particular case [is] going to have a ripple effect throughout the MDL," then Plaintiffs' Co-Lead Counsel "need to be involved on some level at least." *See id.* at 8:14–9:21 (this Court also stating that "if there's a motion to exclude a specific causation expert, I guess I want to hear at least something from you about whether you think you should be involved and how."). Plaintiffs' Co-Lead Counsel are also granted broad authority under this Court's Pretrial Order 4 ("PTO 4") regarding Plaintiffs' Leadership Structure to, *inter alia*, "coordinate the work of all plaintiffs' counsel, and perform such other duties as the co-lead counsel deem necessary, in order to advance the litigation[.]" PTO 4, *In Re Roundup Prods. Liab. Litig.*, No. 16-md-02741-VC (N.D. Cal. Dec. 7, 2016), Greenwald Decl. **Exhibit 3**, at 3. Accordingly, Plaintiffs' Co-Lead Counsel respectfully submit this motion on behalf of Plaintiff Agosta and all plaintiffs in the MDL because PTO 310 excluding Dr. Kothari based on his purported "failure to provide a scientifically reasonable basis for why he did not consider random mutations as a potential cause" of Plaintiff Agosta's NHL will have a serious ripple effect across *not only* cases in the MDL, but could also impact Roundup cases in state courts nationwide. *See* PTO 310, Greenwald Decl. Ex. 1, at 2.

1

beliefs and violates well-established *Daubert* jurisprudence preventing an expert's exclusion simply because that expert disagrees with an opposing expert.

***Second***, even if plaintiffs' experts in the Roundup litigation were inclined to apply Dr. Tomasetti's theories as part of their causation methodology, Dr. Tomasetti's theories (and this Court's Pretrial Order 289 ("PTO 289"))[2], by Dr. Tomasetti's own admission, do not require evaluating the role of random mutations as part of a causation analysis ***if there is the presence of exposure to a known environmental carcinogen.*** Indeed, this Court found Dr. Tomasetti's theory that "there is a very substantial chance that a given case of NHL was the result of random replication errors" only applies "***in the absence of exposure to a proven environmental or lifestyle carcinogen***[.]" PTO 289, *Delorme-Barton v. Monsanto Co.*, No. 18-cv-01427-VC (N.D. Cal. Jan. 30, 2024), Greenwald Decl. **Exhibit 4**, at 13 (emphasis added); *see also* Tomasetti MDL Report, Greenwald Decl. **Exhibit 5**, at 12 ("***In the absence of an exposure to a proven cancer-causing E or H factor*** it is reasonable to attribute a given cancer to R." (emphasis added)). Plaintiffs' experts – including Dr. Kothari – conclude that glyphosate/Roundup exposure *is* a proven environmental carcinogen; thus, applying Dr. Tomasetti's own theories and this Court's prior ruling, they would not, and should not, need to consider random mutations as a potential cause.

***Third***, under Ninth Circuit caselaw, in order to pass *Daubert*, experts are not required to rule out idiopathy (here, random mutations) where they identify an environmental exposure that is a substantial cause. Thus, PTO 310 contradicts Ninth Circuit precedent by requiring experts, such as Dr. Kothari, to address idiopathy/random mutations even in the face of an environmental risk factor, such as glyphosate/Roundup exposure.

---

[2] PTO 289 denied, *inter alia*, Plaintiff Karen Delorme-Barton's motion to exclude the testimony of Dr. Tomasetti. (The parallel reporter citation for PTO 289 is *In re Roundup Prods. Liab. Litig.*, 713 F. Supp. 3d 681 (N.D. Cal. 2024).)

2

In sum, PTO 310 is contrary to Dr. Tomasetti's own "bad luck" theory, this Court's prior rulings, and *Daubert* jurisprudence. It threatens to cause ripple effects on many MDL Roundup cases and will likely bleed into other courts as Monsanto uses it to try to strike other plaintiffs' specific causation experts for not "ruling in" and "ruling out" random mutations as a potential cause of Roundup plaintiffs' NHL. Simply put, application of such a legal standard is scientifically illogical as random mutations are not "risk factors," but rather occur in all people throughout their lifetimes; if a plaintiff has exposure to an external risk factor that causes NHL, random mutations are irrelevant to causation. Accordingly, Plaintiffs' Co-Lead Counsel respectfully request the Court to reconsider its order or, at the very least, to order oral argument to address the PTO 310 ruling.

## LEGAL STANDARD

In the Northern District of California, motions for reconsideration are governed by Civil Local Rule 7-9, which provides, in relevant part:

> (a) Leave of Court Requirement. Before the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may make a motion before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order on any ground set forth in Civil L.R. 7-9(b). No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion.

Civ. L.R. 7-9(a). Civil Local Rule 7-9 applies only to interlocutory orders and permits any party to seek leave to file a motion for reconsideration at any time before the entry of a final judgment. *See Oliver v. City & Cnty. of San Francisco*, No. C 07-2460 JL, 2009 WL 10736489, at *1 (N.D. Cal. Mar. 23, 2009). To obtain leave, the moving party must specifically show one of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

3

> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b). This rule further bars the party bringing the motion from repeating "any oral or written argument" that such party made "in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Civ. L.R. 7-9(c). As Civil Rule 7-9(b)(3) applies to this Court's PTO 310, Plaintiffs' Co-Lead Counsel, on behalf of Plaintiff Agosta and all plaintiffs in the MDL, should be granted leave to file a motion for reconsideration of that order.

## ARGUMENT

I. **PTO 310 – Which Would Require Plaintiffs' Experts to Adopt Dr. Tomasetti's Theories – Violates *Daubert* Caselaw Holding that an Expert's Disagreement with an Opposing Expert Is Not Grounds for Exclusion.**

On its face, PTO 310 would require ***all*** of plaintiffs' specific causation experts – even those experts, like Dr. Kothari, who disagree with Dr. Tomasetti's theories – to nonetheless accept Dr. Tomasetti's theory about the contribution of random mutations to cancer development and then explain away (or "rule out") random mutations as the cause of a plaintiff's cancer. But Dr. Tomasetti's random-mutations theory is not a *sine qua non* of cancer causation analysis. Indeed, many scientists – including Dr. Kothari – dispute Dr. Tomasetti's theories about random mutations and their application to NHL development in cases of glyphosate/Roundup exposure.

Dr. Tomasetti's theories are premised on the idea that naturally-occurring or random ***mutations*** are the cause of most cases of NHL. But in Dr. Kothari's deposition, he questioned this mutations-centered view of NHL development:

> Q. And so is it always going to be a possibility whenever an individual has non-Hodgkin's lymphoma that it was a random mutation?

4

> A. Again, I don't think we have identified any mutations in Mr. Agosta's case. It is not clear that non-Hodgkin's lymphomas are caused by mutations. So I don't know how to answer in like a yes or no.

Kothari Dep. Tr., *Agosta v. Monsanto Co.*, No. 3:21-cv-06562-VC (S.D. Cal. July 24, 2024), Greenwald Decl. **Exhibit 6**, at 149:17–25.

Contrary to the Court's characterization of Dr. Kothari's deposition testimony in PTO 310, Dr. Kothari's "substantive response" to Dr. Tomasetti's theory went far beyond "a critique of the study design." *See* PTO 310, Greenwald Decl. Ex. 1 at 2. Dr. Kothari disputed whether the mutations-centered approach to NHL development that underlies Dr. Tomasetti's theories is even accurate, possible, or scientifically appropriate. Moreover, Dr. Kothari explained in his deposition his disagreement with the statement that the majority of cancer is due to "bad luck" or "random mutations," explaining how "back in the day we did not know that HPV can lead to certain cancers . . . somebody could have called it bad luck until it was identified." Kothari *Agosta* Dep. Tr., Greenwald Decl. Ex. 6 at 156:4–14. In other words, Dr. Kothari disagrees with the default assumption in Dr. Tomasetti's research that those mutations not attributable to environmental ("E") or hereditable ("H") factors must be due to random replication errors ("R" factors), and he instead posits that what Dr. Tomasetti is attributing to R may very well be not-yet-known E causes of cancer.

Moreover, Dr. Kothari's criticism of Dr. Tomasetti's failure to include glyphosate exposure as a known causative factor for NHL can hardly be characterized as a mere "critique of the study design." *See* PTO 310, Greenwald Decl. Ex. 1 at 2. PTO 310 states that this critique by Dr. Kothari "seems to misunderstand Tomasetti's work, which compared the effects of gene replication errors against environmental and lifestyle factors that were known carcinogens." *Id.* (citing to PTO No.

289, Greenwald Decl. Ex. 4 at 8).[3] But Dr. Kothari's critique about Dr. Tomasetti's failure to include glyphosate as a risk factor for NHL is **expressly addressed** in this Court's PTO 289, which states that Dr. Tomasetti himself admitted "that if new environmental causes of NHL were discovered," *e.g.*, as the evidence for glyphosate strengthens over time, "it was true that [Tomasetti's] calculation of the proportion of mutations attributable to R would correspondingly decrease." *See* PTO 289, Greenwald Decl. Ex. 4 at 8–9. In other words, PTO 310 faults Dr. Kothari for critiquing Dr. Tomasetti's failure to include glyphosate as a known cause of NHL, despite this Court's PTO 289 identifying that same critique as a "limitation[]" of Dr. Tomasetti's theories. Surely, Dr. Kothari's testimony should not be excluded when his testimony comports with this Court's prior orders.

      Finally, this Court should not require that plaintiffs' experts, such as Dr. Kothari, accept scientific theories with which they do not agree. And Dr. Tomasetti's theories are just that: theories. Theories can be disproven. It is inappropriate under *Daubert* to exclude an expert's opinion – such as Dr. Kothari's opinion here – simply because that expert disagrees with an expert on the opposing side. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) ("Where two credible experts disagree, it is the job of the fact finder, not the trial court, to determine which source is more credible and reliable."); *see also Mariano v. City of Las Vegas*, No. 2:18-cv-01911, 2023 WL 9119811, at *5 n.4 (D. Nev. Sept. 21, 2023) ("[T]he fact that one expert disagrees with another is not a basis to exclude an opinion under *Daubert*."); *Ellis v. MLI Transport, LLC*, No. 8:13CV273, 2015 WL 1034641, at *4 (D. Neb. Mar. 10, 2015) ("Simply because each expert

---

[3] The Court's criticism of Dr. Kothari is inaccurate because, in his deposition, Dr. Kothari was only being questioned about Dr. Tomasetti's 2015 paper, *not* Dr. Tomasetti's 2017 paper. Dr. Tomasetti has agreed that his 2015 paper is a "[d]ifferent analysis" than the one in his 2017 paper, which provided Dr. Tomasetti's calculation that 95% of the mutations in NHL are attributable to random replication error. *See* Tomasetti *Daubert* Hr'g Tr., Greenwald Decl. Ex. 2 at 144:22–145:21.

6

disagrees with the other's conclusions and criticizes the other's reconstruction methods does not render the methodology fallible."); *GED Integrated Solutions, Inc. v. Durotech Intern, Inc.*, No. 5:06CV1327, 2009 WL 233872, at *5 (N.D. Ohio Jan. 30, 2009) ("[T]he simple fact that one expert disagrees with another is insufficient basis for this Court to exclude evidence.").

II. **PTO 310 Is Contrary to This Court's Prior Order (PTO 289), Monsanto's Own Experts' Causation Methodology, and Dr. Tomasetti's Theories.**

      Even if an expert, such as Dr. Kothari, were to accept Dr. Tomasetti's theories as sound science, application of those theories in cases where the expert concludes glyphosate/Roundup exposure is a known environmental cause of NHL would necessarily eliminate the need to consider random mutations as a potential cause. This is supported by PTO 289, Monsanto's own specific causation experts' causation methodology, and Dr. Tomasetti himself.

      *First*, in PTO 289, this Court held that "Tomasetti's 95% figure *can* reliably be used to show that, ***in the absence of exposure to a proven environmental or lifestyle carcinogen***, there is a very substantial chance that a given case of NHL was the result of random replication errors." PTO 289, Greenwald Decl. Ex. 4 at 13 (first emphasis in original; second emphasis added). This Court also found in PTO 289 that "[t]here are, to be sure, limitations on what Tomasetti's theory can say," including that "[i]t would [] be impermissible for Tomasetti to say that, *even if glyphosate were a proven cause of NHL*, there would be a 95% chance that a given case of NHL were the result of random replication errors, *despite any exposure to glyphosate*." *Id.* at 12 (emphasis in original). Indeed, this Court indicated that such a "statement would be inconsistent both with his testimony at the *Daubert* hearing and without any evident foundation in his published research." *Id.* (citing Tomasetti MDL Report, Greenwald Decl. Ex. 5 at 12 ("*In the absence of an exposure to a proven cancer-causing E or H factor* it is reasonable to attribute a given cancer to R." (emphasis added))). In other words, under Dr. Tomasetti's theories and this Court's prior order, an expert only

7

moves to considering random replication errors as a potential cause of a Plaintiff's NHL *where there is an <u>absence</u> of exposure to a proven environmental carcinogen.*

But Dr. Kothari was clear in his report and deposition that, in his opinion, glyphosate/Roundup exposure is a known and proven environmental carcinogen:

> Q. . . . Would you agree that whether glyphosate or Roundup causes non-Hodgkin's lymphoma is a debated issue in the medical community?
>
> A. I don't think it's debated, at least not in the world that I live in . . . Because there is in my opinion substantial evidence.
>
> . . .
>
> Q. . . . Do you think an intellectually honest Doctor could review all the same literature that you reviewed and come to the conclusion that they don't think there is enough evidence to say that Roundup in general causes non-Hodgkin's lymphoma?
>
> A. I don't think they should. They should come to a different conclusion.

Kothari *Agosta* Dep. Tr., Greenwald Decl. Ex. 6 at 151:24–152:25; *see also* Kothari Specific Causation Expert Rpt., *Agosta v. Monsanto Co.*, Greenwald Decl. **Exhibit 7**, at 9–11 (discussing, at length, current scientific evidence supporting glyphosate/Roundup exposure as a cause of NHL). Accordingly, in Mr. Agosta's case, we are in the ***presence, not the absence***, of exposure to a proven environmental carcinogen (i.e., glyphosate/Roundup).

Applying Dr. Tomasetti's theories and PTO 289 to the facts of the present case, Dr. Kothari was ***not required*** to consider random replication errors as a potential cause of Mr. Agosta's NHL because random replication errors are only considered when there is an ***absence*** of exposure to a proven carcinogen. Random mutations are not something that get "ruled in" and then "ruled out" as part of a differential etiology. Because Dr. Kothari considers glyphosate/Roundup exposure to be a known carcinogen, Dr. Tomasetti's theories do not trigger that next step addressing random mutations. Consider the following illustrative flow-chart:

8



*Second*, this is the same approach to Dr. Tomasetti's theory that Monsanto's own experts take in the Roundup litigation. Take, for example, Dr. Bello, one of Monsanto's specific causation expert oncologists in the Roundup litigation, who testified at her deposition as follows in a remanded MDL case, *Delorme-Barton v. Monsanto Co.*:

> Q. All right. In your report, you say that where, as in Ms. Delorme-Barton's case, ***you cannot identify a specific external exposure or risk factor that actually caused a case of non-Hodgkin's lymphoma, then the default assumption is that replication errors are the most likely cause***; right?
>
> A. ***Yes.*** In most people we don't have an external source of their mutation, so replication or naturally occurring mutations are the most likely the cause.

Bello Dep. Tr., *Delorme-Barton v. Monsanto Co.*, No. 1:18-cv-01215 (N.D. Ill. Dec. 12, 2024), Greenwald Decl. **Exhibit 8**, at 49:19–50:4 (emphasis added).

*Third*, Dr. Tomasetti's own deposition testimony confirms that he agrees that in the presence of an E factor, random mutations are not relevant:

9

> The – so ***let's say that if there are three driver mutations or five driver mutations that are required for a person***, for in a tissue and in a cell to – ***to get cancer***, to full-blown cancer, and ***if any of them, it's been caused by an environmental factor***, an environmental exposure, then from an epidemiological perspective by the finish of that cancer can be, it's – ***it's 100 percent attributable*** to that exposure, ***to that environmental exposure***.

Tomasetti Dep. Tr., *Neal v. Monsanto Co.*, No. 1722-CC10773 (Mo. Cir. Ct. Jan. 4, 2022), Greenwald Decl. **Exhibit 9**, at 32:1–9 (emphasis added). In other words, under Dr. Tomasetti's theory, and his testimony explaining his theory, if there are multiple mutations required for a case of NHL to develop, and *just one* of those mutations is caused by an environmental factor, Dr. Tomasetti would conclude that case of NHL is 100% attributable to that environmental exposure. Thus, where a plaintiff's expert opines – as Dr. Kothari does for Plaintiff Agosta – that glyphosate/Roundup exposure was an environmental cause of the plaintiff's NHL, random mutations do not need to be ruled out under Dr. Tomasetti's theory. So long as just one of the mutations in the plaintiff's NHL is caused by that environmental exposure – here, glyphosate/Roundup – then that case of NHL is 100% attributable to the environmental exposure (i.e., glyphosate/Roundup). Accordingly, it would be methodologically unsound for a plaintiff's experts to "consider [whether] random mutations [are] a potential cause" of a plaintiff's NHL (as PTO 310 requires) when the expert determines a known cause – i.e., glyphosate/Roundup. And it would be consistent with Dr. Tomasetti's own theories that random mutations would not be relevant to a differential etiology where an environmental exposure is at play.[4]

---

[4] Dr. Kothari explained in his deposition in another Roundup case why it would not make sense to consider random mutations as a potential cause where there is evidence of an environmental exposure. *See* Kothari Dep. Tr., *Willstead v. Monsanto Co.*, No. 2021 L000806 (Ill. Cir. Ct. Nov. 18, 2024), Greenwald Decl. **Exhibit 10**, at 134:9–19 ("Q. As part of your differential etiology in Mr. Willstead's case, did you consider random mutations? A. I thought that we covered that in the – in prior thing. I think random mutations are something that it is difficult to just point to it when there is an overwhelming reason for Mr. Willstead to develop non-Hodgkin lymphoma. So like ***there is no need to go to a place where there is no data, no evidence while we know for sure that Roundup causes non-Hodgkin lymphoma***." (emphasis added)).

10

### III. PTO 310 Contradicts Ninth Circuit Caselaw Which Holds that an Expert Is Not Required to Rule Out Idiopathy Where the Expert Identifies a Known Environmental Cause.

Finally, random mutations are not like other potential causes of a cancer that can be "ruled in" or "ruled out." They are a default when no other cause is apparent. And yet, PTO 310 requires treating random mutations, or idiopathy, as another risk factor to be ruled in and ruled out as part of a cancer causation analysis. But Ninth Circuit caselaw is clear that so long as an expert merely *considers* idiopathy – but nonetheless assumes in the face of "known risk factors . . . that those risk factors were the cause" of the disease – that expert should not be excluded. *See Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1235–37 (9th Cir. 2017) ("The district court abused its discretion by excluding Dr. Shustov's and Dr. Weisenburger's testimony because they could not completely rule out the possibility that Maxx's HSTCL was idiopathic.").

In *Wendell v. GlaxoSmithKline LLC*, the Ninth Circuit held that the district court "improperly required more" than what is required of experts under *Daubert* when it excluded Dr. Weisenburger's testimony:

> [Dr. Weisenburger] stated that ***he considered that Maxx's HSTCL might have been idiopathic***, and that ***although he was not entirely able to rule that possibility out, '[w]hen you have a patient with obvious and known risk factors, you tend to assume that those risk factors were the cause.'*** He did not base that assumption on pure conjecture. As he discussed throughout his deposition testimony and in his expert report, the literature shows that patients exposed to 6-MP and anti-TNF drugs are at an increased risk for HSTCL. Dr. Weisenburger also weighed other risk factors, including Maxx's sex and age, and determined that those were 'weak risk factors, whereas, the disease he had, particularly in the setting of the drugs he received would be considered very strong risk factors.'

*Id.* at 1235 (emphasis added). As this Court recognized in its PTO 289, Dr. Tomasetti's random-mutations theory is an explanation for, and therefore synonymous with, idiopathic causes of cancer. *See* PTO 289, Greenwald Decl. Ex. 4 at 2; *see also* Monsanto's Motion to Exclude Testimony of Dr. Kothari, *Agosta v. Monsanto Co.*, 3:21-cv-0652-VC (N.D. Cal. Aug. 8, 2024), Greenwald Decl.

11

**Exhibit 11**, 8 n.4 (Monsanto stating: "Since *Hardeman II* was decided, Dr. Tomasetti's work has established what the Court then referred to as 'idiopathic' NHL is actually caused by naturally occurring genetic mutations."). And as explained in *Wendell*, experts in the Ninth Circuit need only consider – but need not rule out completely – idiopathy in the presence of known risk factors. Dr. Kothari's testimony shows that he *considered* random mutations:

> Q. Well, I guess the question becomes are you able to – I guess you testified a minute ago you can't rule it in or rule it out.
>
> A. Correct. That is as far as I can go on this.
>
> Q. Yeah. And did you – as you were doing your differential etiology did you consider random mutations at all?
>
> A. As a thought, yes. Yeah.

Kothari *Agosta* Dep. Tr., Greenwald Decl. Ex. 6 at 150:1–9. In accord with Ninth Circuit caselaw, Dr. Kothari was not required to rule out idiopathy, or random mutations, because in his opinion, glyphosate/Roundup exposure is an established risk factor for NHL development.

In fact, Dr. Kothari's opinions in the *Agosta* case are akin to the opinions of Plaintiffs' experts in *Hardeman*, *Gebeyehou*, and *Stevick* – in which this Court found the specific causation experts' opinions to be admissible. *See generally In re Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956 (N.D. Cal. 2019). This Court stated the "question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL," and that "[t]he biggest concern, which affects all three plaintiffs, is how the experts account for idiopathy – that is, the possibility that a plaintiff's NHL is attributable to an unknown cause." *Id.* at 959. This Court explained that to answer that question, "an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless," and that an expert (like Dr. Kothari) may "[r]ely[] on the plaintiffs' admissible general causation opinions – which assert a robust connection between glyphosate and NHL" and "rel[y] heavily on plaintiffs'

12

exposure levels in drawing their conclusions." *See id.* at 959–60. According to this Court, "consistent with Ninth Circuit caselaw," an expert who does so has "provided a basis for their conclusion that these plaintiffs fall into the category of Roundup users who developed NHL" based on their Roundup use and not idiopathy. *See id.* at 960.

Dr. Kothari did exactly that in Plaintiff Agosta's case. In his report, Dr. Kothari provides an "Analysis of the Causal Link between Mr. Agosta's Lymphoma and Roundup Exposure" in which he details the scientific data that generally supports Roundup as a cause of NHL, *see* Kothari Rpt., Greenwald Decl. Ex. 7 at 9–11, and he provided a "Special exposure history" detailing how often Plaintiff Agosta used Roundup, *see id.* at 5. Under the "Conclusions" section of his report, he stated: "Mr. Agosta's exposure to glyphosate has both the manner and magnitude that align with cases documented in epidemiological literature where an association and causation between non-Hodgkin lymphoma (NHL) and glyphosate have been established." *Id.* at 11. Thus, in the absence of any other risk factors, Dr. Kothari – consistent with this Court's prior ruling on what is required for a specific causation expert – placed Plaintiff Agosta in the "category of people whose NHL was caused by glyphosate," as opposed to idiopathy. *See In re Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d at 959.

What's more, the Ninth Circuit affirmed this Court's decision denying Monsanto's *Daubert* motion and finding that the Plaintiffs' specific causation experts followed proper methodology in reaching their opinions that Mr. Hardeman's exposure to Roundup was a substantial contributing cause of his NHL, even though they did not "rule out" idiopathy/random mutations. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021) ("We hold that the district court ultimately applied the correct legal standard under *Daubert* and did not abuse its discretion by admitting Hardeman's general and specific causation expert testimony."). **Most critically**, the Ninth Circuit

addressed Monsanto's argument that the plaintiff "failed to adequately rule out idiopathy, considering that 70% or more of NHL cases have unknown causes" – the precise argument that Monsanto made here against Dr. Kothari. *See id.* at 966. And the Ninth Circuit stated explicitly:

> ***Monsanto acknowledges that an expert can rule out idiopathy by reliably concluding that the known factor (here, glyphosate) is a 'substantial cause,' which can be shown when a strong association exists between the disease and that known risk factor.***

*Id.* (emphasis added). Despite this directive from the Ninth Circuit – in a Roundup case, no less – that a specific causation expert necessarily rules out idiopathy/random mutations by virtue of reliably ruling in glyphosate, this Court now departs from its own and Ninth Circuit precedent by requiring Dr. Kothari in PTO 310 to "provide a scientifically reasonable basis for why he did not consider random mutations as a potential cause[.]" *See* PTO 310, Greenwald Decl. Ex. 1 at 2. **But Dr. Kothari – consistent with Ninth Circuit precedent – ruled out idiopathy/random mutations by reliably ruling in glyphosate/Roundup.** So long as this Court agrees that Dr. Kothari reliably ruled in Roundup (which he did), then this Court cannot exclude his opinions for failing to rule out idiopathy: those are two sides of the same coin.

Accordingly, this Court should reconsider PTO 310 because it is contrary to its own precedent and binding Ninth Circuit caselaw.

## CONCLUSION

Plaintiffs' Co-Lead Counsel, on behalf of Plaintiff Agosta and all plaintiffs in the MDL, respectfully request the Court to reconsider, or at the very least to order oral argument on, PTO 310 excluding the opinions of Plaintiff's specific causation expert, Dr. Kothari, for his purported failure to consider random mutations as a potential cause of Plaintiff's NHL.

14

DATED: February 28, 2025              Respectfully submitted,

                **WEITZ & LUXENBERG, P.C.**

           By: */s/ Robin L. Greenwald*
              Robin Greenwald
              **WEITZ & LUXENBERG, PC**
              700 Broadway
              New York, NY 10003
              Telephone: 212-558-5500
              rgreenwald@weitzlux.com

              */s/ David Dickens*
              David Dickens
              **THE MILLER FIRM LLC**
              108 Railroad Ave
              Orange, VA 22960
              Telephone: 540-672-4224
              ddickens@millerfirmllc.com

              *Co-Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Robin Greenwald, hereby certify that on Friday, February 28, 2025, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Robin Greenwald*
Robin Greenwald
