UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br>*ALL CASES* | **PRETRIAL ORDER NO. 312: ORDER REGARDING DISTRIBUTION OF COMMON BENEFIT FUNDS** |

    The Court has concluded that the money contained in the common benefit fund should be distributed to the seven firms identified by the Fee Committee as deserving of compensation for their common benefit work. In addition, the estimated amount of money that's expected to be deposited in the common benefit fund from the roughly 1,600 additional cases that have settled and the roughly 1,000 cases that remain in negotiation should almost certainly be distributed to the firms that have done, and will continue to do, common benefit work.

    As discussed more fully at the March 4 hearing, the work performed by these firms conferred a significant benefit on all the plaintiffs in this MDL. Given the difficulty of that work, the amount of time spent doing it on a compressed schedule, the high quality of the work, and the risk that the seven firms undertook, those firms are entitled to compensation beyond what they received through their own clients' recoveries.

    To be sure, the degree to which MDL plaintiffs benefitted from the work performed by the seven firms in this MDL, as compared to the work of these seven firms or other lawyers outside the MDL, is impossible to measure with any precision. It's also true that some federal

MDL plaintiffs benefitted from the work of these firms more than others, which means there's a degree of unfairness involved in imposing an eight percent holdback on everyone. Finally, it's true that many plaintiffs outside this MDL benefitted from the common benefit work performed by the lawyers in this MDL, and those plaintiffs can't be taxed because the Court lacks jurisdiction over them. *See In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950, 963 (N.D. Cal. 2021). But redistributing attorneys' fees—particularly in the context of a federal MDL—is far from an exact science. As the discussion at the hearing showed, if you tweak a result for one party or one group to make it more fair for them, you've inevitably made it less fair for another party or another group. Moreover, adjudicating the appropriate holdback for each MDL plaintiff (or for each MDL lawyer) is not feasible from an administrative standpoint.

But the fact that there's no ideal solution does not mean that courts shouldn't make their best effort to find the "least worst" solution—one that strives to provide fair compensation for those who do common benefit work without taxing the recoveries of the remaining plaintiffs too harshly (while at the same time not unduly rewarding the remaining plaintiffs for sitting on the sidelines). In this case, the "least worst" solution is achieved by distributing the $24.2 million currently in the fund to the seven firms in short order.

The new money that comes in from the roughly 2,600 additional cases mentioned above will be held in the fund until the close of the MDL, at which point firms that have performed common benefit work can submit a further application. The parties appear to anticipate that the MDL will wrap up some time in the next 1-5 years, although it is the JPML that will make that ultimate determination. Although the Court cannot be certain that this new money will be redistributed to the attorneys who performed common benefit work, it seems almost certain that such a redistribution will be warranted. The Court will separately issue an order to show cause requiring the plaintiffs in the remaining settled cases to pay their money into the fund, and Monsanto will be responsible for communicating this order to counsel, following up with them, and keeping track of which firms have paid and which have failed to pay.

Finally, the Court tentatively agrees with the allocation formula for the existing $24.2

million proposed by the Fee Committee, subject to two small exceptions: First, the Court tentatively believes Andrus Anderson should receive two percent rather than one percent, in recognition of the challenges associated with being liaison counsel in such a complex matter, as discussed in the Andrus Anderson brief. Second, the Court tentatively believes Moore Law Group should receive eight percent rather than six percent, in recognition of the work performed in connection with Special Master Feinberg's settlement program. The Court tentatively believes that this additional three percent should be deducted from Wisner Baum's share because of the billing problems described in the Fee Committee's recommendation.

Any further objections to this tentative ruling regarding the Fee Committee's recommended allocation and the Court's proposed changes to it are due within 7 days of this order. Also within 7 days, the Fee Committee should submit a proposed order awarding the allocation discussed here.

**IT IS SO ORDERED.**

Dated: March 13, 2025

_____
VINCE CHHABRIA
United States District Judge