UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
|---|---|
| This document relates to:<br>*SEE ATTACHMENT* | **PRETRIAL ORDER NO. 333: ORDER REGARDING MONSANTO'S MOTION FOR RECONSIDERATION OF PRETRIAL ORDER NOS. 313, 317, 319, 324, AND 326**<br>Re: Dkt. No. 20450 |

  Monsanto's Motion for Reconsideration of Pretrial Order Nos. 313, 317, 319, 324, and 326 is granted. On reconsideration, Monsanto's underlying motions to exclude are granted in part and denied in part. This ruling assumes the reader's familiarity with the facts, the applicable legal standard, the prior Daubert rulings in this MDL, and the arguments made by the parties. S*ee generally In re Roundup Products Liability Litigation*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018) (Pretrial Order No. 45, Dkt. No. 1596); *In re Roundup Products Liability Litigation*, 358 F. Supp. 3d 956 (N.D. Cal. 2019) (Pretrial Order No. 85, Dkt. No. 2799); *Hardeman v. Monsanto Company*, 997 F.3d 941 (9th Cir. 2021).

  Monsanto is correct that some of the Court's recent Daubert rulings have wrongly shifted the burden from the plaintiffs to Monsanto. *See* Mot. (Dkt. No. 20450) at 2-6; *see also Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("It is the proponent of the expert who has the burden of proving admissibility."); Fed. R. Evid. 702. Particularly, the Court erred in asserting that Monsanto was required to "present[] and discuss[] the [expert's] deposition testimony thoroughly, or . . . conduct[] a deposition in which the expert

received an opportunity to discuss any potential flaws in their analysis" in order to prevail on its motions to exclude. Pretrial Order No. 317 (Dkt. No. 20370) at 4.

Federal Rule of Civil Procedure 26(e)(2)(B) requires that an expert report contain "a *complete statement* of all opinions the witness will express and the basis for them" (emphasis added). "[W]hen a party fails to provide information required by Rule 26, such party 'is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1143 (9th Cir. 2025) (quoting Fed. R. Civ. P. 37(c)(1)). The Ninth Circuit recently affirmed the primacy of the expert report to a proper Daubert analysis in *Engilis v. Monsanto Co.*, holding that "what matters" in evaluating Monsanto's motions to exclude "is the evidence [the expert] actually considered and the conclusions he actually drew from that evidence in the process of forming his opinion *as disclosed in the expert report*." 2025 WL 2315898, at *8 (9th Cir. Aug. 12, 2025) (emphasis added). Therefore, as the party moving to exclude, Monsanto only needs to identify substantial flaws within the confines of a plaintiff's expert's report. *See Leibfried v. Caterpillar, Inc.*, 2023 WL 4080660, at *3 (E.D. Wis. 2023) ("The opponent has no obligation to remedy deficits in an expert's report and probe omitted elements through a deposition."). The burden is then on the plaintiff as the proponent of the expert witness to present evidence refuting Monsanto's critiques to establish admissibility.

Monsanto goes one step further, asserting that "it is questionable whether deposition testimony is ever sufficient to rehabilitate the opinions of any expert who has submitted an inadequate report under Federal Rule of Civil Procedure 26." Mot. at 2 n.2. In support of its argument, Monsanto points to *Asetek Danmark A/S v. CMI USA, Inc.*, in which Judge Tigar held that "subsequently given deposition testimony is not a substitution for adequate disclosure in the expert's original report." *Id.* (quoting 2014 WL 6997670, at *1 n.1 (N.D. Cal. 2014)). But while it may not serve as a "substitute," deposition testimony (as well as testimony from a Daubert hearing) can still be used by a plaintiff to explain aspects of an expert's opinion that might otherwise appear vague or confusing on the face of the report. "A minor flaw in an expert's

2

reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002); *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994) ("The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions."). Relatedly, an expert's failure to predict and consider every conceivable criticism of their opinion will not automatically result in exclusion. Thus, Monsanto cannot simply levy a barrage of superficial critiques against an expert's report and expect to prevail, but instead must identify material deficiencies in the expert's methodology that would undermine the reliability of their opinions.  For example, if an expert completely omitted any discussion of an important risk factor such as obesity in their report as a potential alternative causation factor, or if the expert's discussion of that factor was obviously inadequate, a plaintiff could not cure that deficiency with deposition testimony. But if a report's discussion of obesity is more cursory or opaque than it ought to be, or if a report neglects to discuss a far less serious risk factor, that generally should not be a basis for exclusion—an expert could elaborate during a deposition.

      Thus, reconsidering the Daubert rulings at issue here (and going forward), the Court will first assess whether Monsanto has identified flaws in the expert's report that raise legitimate questions about admissibility. If so, the Court will decide whether the report is so flawed as to require exclusion without further inquiry. But if exclusion is not warranted from the face of the report—if the report simply contains gaps or inadequately supported assertions that could potentially be addressed with context and elaboration—the Court will review any relevant testimony from the expert submitted by the parties to determine whether it renders the opinion admissible.[1] To the extent the report gives rise to real questions about the reliability of the

---

[1] In cases where Monsanto has taken an expert's deposition, the Court will typically only consider the relevant testimony from the deposition transcript in determining admissibility. The time for an expert to address any serious questions about a report is in the deposition, not in a subsequently filed declaration. But if an expert's deposition is not taken, and if that expert's report is not so flawed so as to require exclusion on its face, then the Court would consider a declaration submitted by the expert in opposition to the Daubert motion.

opinion, the burden is on the plaintiff, not Monsanto, to adduce testimony that satisfies Daubert. If the plaintiff fails to carry this burden, the opinion will simply be excluded—the plaintiff cannot count on a Daubert hearing to take another crack at filling in gaps or otherwise supplementing a potentially suspect opinion set forth in an expert report. In the context of a mass tort MDL with thousands of plaintiffs, it is simply impossible to hold Daubert hearings as matter of default—the MDL, not to mention the remainder of the Court's docket—would become paralyzed. By the same token, if the plaintiff satisfies their burden by pointing to deposition testimony, the opinion will be deemed admissible—Monsanto cannot count on a Daubert hearing to take another crack at showing why an opinion that seems reliable based on the combination of the report and testimony offered by the plaintiff is, in fact, inadmissible. Only in rare cases will the Court order a Daubert hearing—typically in situations where the Court finds admissibility to be a close question after reviewing the report and any testimony submitted by the parties.

Applying this framework, the Court rules as follows on reconsideration:

**1. Martyn Smith (Pretrial Order No. 313)**

Monsanto's motion to exclude Dr. Martyn Smith as a general causation expert is granted. For a general causation expert to survive a motion to exclude, "that expert must have engaged with the relevant literature enough to assess whether a study is credible, to explain why they relied on one study more than another, and to articulate how they reached their conclusion in the face of conflicting evidence." Pretrial Order No. 288 (Dkt. No. 17504) at 5. Smith's report lacks this rigor.

Smith does acknowledge that evidence of a causal relationship between glyphosate exposure and NHL "is not entirely consistent, as there are a limited number of studies and there are methodological issues in many of the studies." Smith Report (Dkt. No. 18985-3) at 31. But because Smith did not meaningfully engage with the specific methodological shortcomings in several of the key studies he relies upon in his report, his testimony is inadmissible. For example, regarding Pahwa (2019), Smith cherry picks favorable findings without acknowledging that the relationship between glyphosate and NHL found in that study was no longer statistically

significant when adjusted for the use of other pesticides, or that a consistent pattern was not discernable across different exposure metrics.[2] *See* Smith Report at 24-25; Reply ISO Mot. to Exclude Smith (Dkt. No. 19528) at 5-6. And regarding Andreotti (2018) and De Roos (2022), Smith does not offer satisfactory reasoning for ignoring those studies' contrary findings, instead pointing only to undefined "major flaws" in those studies as well as the discredited Zhang (2019) study. *See* Mot. at 12; Reply ISO Motion to Exclude Smith at 4-5; Pretrial Order No. 293 (Dkt. No. 18661) at 1 ("Zhang's meta-analysis is junk science.").

None of the excerpts of Smith's deposition transcripts cited by the parties in their briefing add context that might rectify Smith's failure to adequately grapple with the relevant literature in his report. Smith confirmed in his deposition that he "[hadn't] paid serious attention" to criticisms of Andreotti's research nor Andreotti's response, Smith Dep. Tr. 45:14-22, and that Pahwa yielded "inconsistent" results, *id.* at 72:6-13. There is a strong argument that Smith's report is so flawed on its face as to require exclusion of his opinion without reference to his deposition testimony. But in any event, the burden was on the plaintiff to show that Smith's opinion is admissible, and he has not pointed to any deposition testimony from Smith that could fill the holes in the report.

### 2. Mark Levin (Pretrial Order No. 317)

Monsanto's motion to exclude Dr. Mark Levin as a general causation and specific causation expert is granted. Regarding general causation, Levin is (at best) underqualified to serve as an epidemiological expert in this litigation. *See* Mot. to Exclude Levin (Dkt. No. 18974) at 7-8. This dearth of expertise shines through in his reports' flimsy examination of the relevant literature. Levin places the Zhang (2019) study, *see* Fleischhauer Report (Dkt. No. 18974-7) at 7, and the IARC (2015) monograph, *see id.* at 8, 11-12, at the center of his analysis. While some

---

[2] The plaintiffs argue in their opposition that exclusion is inappropriate on these grounds because the statement from Smith's report regarding the association with glyphosate and the DLBCL sub-type is a near-direct quotation from the abstract in Pahwa. *See* Smith Opp'n (Dkt. No. 20518) at 11. But Smith does not provide any justification in his report for why he excluded the very next sentence of the abstract, which explains that consistent patterns across different metrics were not observed. *See* Reply to Motion to Exclude Smith at 6.

reliance on these sources by an expert may be tolerable, they act as the linchpin of Levin's general causation testimony. When given the opportunity to discuss these sources in greater detail at his deposition, and perhaps address their flaws, Levin instead affirmed his uncritical reliance upon them. *See* Mot. to Exclude Levin at 8-9 (excerpting portions of deposition testimony regarding Zhang and IARC). Furthermore, Levin fails to meaningfully engage with the rest of the literature in his reports, ignoring the limitations of key studies like McDuffie (2001) and Eriksson (2008), as well as the contrary findings of studies like Andreotti (2018). While individual experts may differ in how they interpret specific studies, they all have an obligation to explain their reasoning beyond a passing, conclusory statement. Levin failed to meet that bar.

Accordingly, Monsanto's motion is also granted as to Dr. Levin's specific causation testimony in *Hayes* and *Fleischhauer*. "Without being able to offer his general causation opinion, [Levin] has no basis for 'ruling in' Roundup as a causal factor in [plaintiffs'] case, so he can't conclude that Roundup was what caused [plaintiffs'] NHL." Order Granting Mot. to Exclude Expert Chris Vogel (Dkt. No. 18662) at 6. An expert offering both a general causation and specific causation opinion may still testify to the latter even if the former has been excluded, so long as they have directly incorporated the admissible general causation opinions of other experts into their report. *See, e.g.*, Pretrial Order No. 290 (Dkt. No. 18320) at 6 (holding that the plaintiffs' "specific causation experts . . . can rule in glyphosate by incorporating the admissible general causation opinions" of other experts); Pretrial Order No. 323 (Dkt. No. 20400) at 2 (finding that expert's "ruling in" process did not warrant exclusion because they "appropriately relie[d] on the admissible general causation opinions of other experts"). But because Dr. Levin does not explicitly reference his reliance on any other general causation reports, his specific causation opinions cannot be rescued.

      **3. Kristan Aronson (Pretrial Order No. 319)**

Monsanto's motion to exclude Dr. Kristan Aronson as a general causation expert is denied. This is a close call; Aronson's report focuses heavily on studies that failed to adjust their results for exposure to other pesticides like Eriksson (2008) and McDuffie (2001). As explained

6

in Pretrial Order No. 319, "Aronson's report gave a highly suspect explanation for how the confounding effect of other pesticides could be excluded, essentially saying that some studies showed no evidence of confounding, and many studies still reported elevated odds ratios after adjusting, even though some of them were not statistically significant." Dkt. No. 20386 at 3. Particularly egregious is Aronson's failure to include anything more than a cursory mention of Hohenadel (2011), see Aronson Report (Dkt. No. 20234-2) at 78), which analyzed the McDuffie data and found that "for glyphosate only, there was no association with NHL" and that a statistically significant association only existed in the context of joint exposure with malathion, Omnibus Mot. to Exclude (Dkt. No. 18987) at 9.

In the future, a report along these lines may well support exclusion of the expert opinion without reference to deposition testimony. But to avoid unfairly moving the goal line back on the plaintiffs in the context of this motion for reconsideration, Aronson's deposition testimony will be considered. The portions of Aronson's deposition that were included in the plaintiffs' opposition suggest that Aronson closely reviewed both the McDuffie and Hohenadel studies and concluded that the latter shows an interaction between multiple pesticides, rather than a confounding relationship. See Aronson Opp'n (Dkt. No. 20521) at 5-7. Whether Aronson's reading of these studies is correct is a question to be decided at trial, but her testimony does demonstrate that she sufficiently engaged with the studies and had articulable justifications for her conclusions. And while Aronson's testimony regarding Eriksson is not equally thorough, a subpar review of one study within the wider body of literature is not enough to warrant exclusion on its own.

### 4. Kevin Knopf (Pretrial Order No. 324)

Pretrial Order No. 324 addressed the admissibility of Dr. Kevin Knopf's specific causation opinions in several individual member cases.

Monsanto's motion to exclude Knopf's opinion in *Gordon* is denied. The factual errors in Knopf's report are undoubtedly sloppy and indicative of his generally haphazard expert work in this MDL. But none of the problems in Knopf's report raised by Monsanto, including the

7

omission of Gordon's brother's non-hematological cancer diagnosis, are sufficient to warrant exclusion. *See* Order re: Booth Mot. for Reconsideration (Dkt. No. 20641) at 1 ("Booth's family history of [non-hematological cancer] is not enough, on its own, to exclude Knopf's opinion.").

Monsanto's motion to exclude Knopf's opinion in *Haase* is also denied. Again, an expert failing to address a plaintiff's family history of non-hematological cancer is not enough on its own to require exclusion. And contrary to Monsanto's argument, there is no inherent inconsistency between Knopf's statements that women are more likely to develop the specific NHL subtype Follicular Lymphoma while men are more likely to develop NHL generally.

Monsanto's motion to exclude Knopf's opinion in *Huntley* is denied for similar reasons. Besides the issues related to Huntley's family history of non-hematological cancer and demographic factors raised by Monsanto, the plaintiff's opposition effectively explains how Knopf could reasonably conclude based on the contradictory documents in the record that Huntley had never smoked. *See* Knopf Opp'n (Dkt. No. 19426) at 12. Therefore, the Court cannot say that Knopf's omission of smoking as potential alternative cause from his report was inappropriate.

Monsanto's motion to exclude Knopf's opinion in *Paula Pinheiro* is granted. Monsanto appropriately identified Knopf's failure to meaningfully address Pinheiro's morbid obesity and Type 2 diabetes in his report, something Knopf has consistently struggled with in this litigation. Even if the shoddy work regarding Pinheiro's weight were not enough on its face to exclude, the plaintiff offered no deposition testimony that meaningfully address the concerns with Knopf's report.

### 5. Solomon Hamburg (Pretrial Order No. 326)

Monsanto's motion to exclude Dr. Solomon Hamburg's specific causation opinion in *Levy* is granted. Hamburg's report lacks any meaningful evaluation of the potential alternative risk factors raised by Monsanto's motion to exclude. *See* Mot. to Exclude Hamburg (Dkt. No. 20080) at 2-3. His passing, incurious discussion of Levy's previous diagnosis of thyroid cancer is especially damaging. Indeed, Hamburg fails to provide any justification for why he rules out that

cancer history as a potential alternative cause. *See* Hamburg Report (Dkt. No. 20231-3) at 8. Again, going forward the Court will exclude opinions like this based on the report alone. Here, exclusion is required because of the flaws in the report and the failure of the plaintiffs to point to deposition testimony that meaningfully addresses them. *See* Hamburg Dep. (Dkt. No. 20231-4) at 60:12-61:10, 114:4-9.

**IT IS SO ORDERED.**

Dated: September 30, 2025

VINCE CHHABRIA
United States District Judge

## ATTACHMENT

| No. | Case Name | Case No. |
|---|---|---|
| 1. | Belfleur, Jean | 20-cv-00621 |
| 2. | Berenfeld, Sharon | 18-cv-01428 |
| 3. | Daulton, Renee Theresa | 20-cv-08518 |
| 4. | Drons, Robert | 20-cv-08167 |
| 5. | El-Hakam, Bakri | 21-cv-09937 |
| 6. | Fleischhauer, Dieter | 21-cv-05971 |
| 7. | Fox, Susan | 20-cv-08847 |
| 8. | Glassman, Philip | 20-cv-00024 |
| 9. | Gordon, Garfield | 19-cv-06423 |
| 10. | Haase, Caryl Ann | 19-cv-05957 |
| 11. | Harris, Douglas | 16-cv-05786 |
| 12. | Hayes, Robin | 21-cv-05398 |
| 13. | Holmes, Christopher | 20-cv-03363 |
| 14. | Huntley, Carol | 19-cv-06407 |
| 15. | Kay, Linda | 21-cv-00175 |
| 16. | McDermott, Michael | 20-cv-07219 |
| 17. | Penalver, Jorge | 20-cv-08801 |
| 18. | Pinheiro, Paula | 20-cv-08173 |
| 19. | Proctor, Mark | 21-cv-00172 |
| 20. | Romano, Nathan P. | 20-cv-06194 |
| 21. | Rubin, Joel | 20-cv-05870 |
| 22. | Skonicki, Barbara | 20-cv-08053 |
| 23. | Sullivan, Patrick | 22-cv-00092 |
| 24. | Tudal, Steven | 20-cv-05871 |
| 25. | Vander Groef, Chris | 19-cv-07858 |
| 26. | Levy, Robert | 21-cv-07643 |