Robin L. Greenwald (*pro hac vice*)
Robert J. Quigley (CA Bar No. 302879)
Chantal Khalil Levy (*pro hac vice*)
Emma Dietz (*pro hac vice*)
Alicia Butler (*pro hac vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
rquigley@weitzlux.com
ckhalil@weitzlux.com
edietz@weitzlux.com
abutler@weitzlux.com

David J. Dickens (*pro hac vice*)
**THE MILLER FIRM LLC**
108 Railroad Avenue
Orange, VA 22960
Telephone: 540-672-4224
ddickens@millerfirmllc.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>This document relates to:<br><br>ALL ACTIONS<br><br>_____<br><br>*Jones v. Monsanto Co.,*<br>3:26-cv-01455<br><br>*Schramm v. Monsanto Co.*,<br>3:26-cv-01461<br><br>[As to Argument Part III] | MDL No. 2741<br><br>Case No. 16-md-02741-VC<br><br><br>**JOINT MOTION OF MDL CO-LEAD COUNSEL AND WAVE 10 PLAINTIFFS JONES AND SCHRAMM FOR INJUNCTIVE RELIEF OR, IN THE ALTERNATIVE, DECLARATORY RELIEF RELATED TO PROPOSED NATIONAL ROUNDUP SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on Thursday, April 30, 2026 at 10:00 a.m., or as soon the matter may be heard, in the courtroom of the Honorable Vince Chhabria, Courtroom 4, 17th Floor, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Joseph Jones and Glenn Schramm and MDL Co-Lead Counsel will and hereby do move, pursuant to the All Writs Act, 28 U.S.C. § 1651, the Declaratory Judgment Act, 28 U.S.C. § 2201, Fed. R. Civ. P. 57 and 65, and N.D. Cal. Civ. L. R. 7-1 and 65-2, for injunctive or, in the alternative, declaratory relief as to certain features of a proposed class action settlement that was granted preliminary approval on March 4, 2026 by the 22nd Judicial Circuit Court for the City of St. Louis, State of Missouri in the matter of *King v. Monsanto Co.*, No. 2622-CC00325.

The Motion is supported by the following memorandum of points and authorities, the accompanying declaration of Robin Greenwald and exhibits thereto, the previous filings and orders in this case, the advocacy of counsel, and other such matters as the Court may consider.

Plaintiffs have filed concurrently herewith an administrative motion to shorten time pursuant to N.D. Cal. Civ. L.R. 6-3, because they are requesting a hearing sooner than 35 days from now due to the timing constraints of this matter. Absent action by this Court, the rights and obligations of certain MDL plaintiffs are at risk of being affected significantly by proceedings in the *King* case, which purports to set an opt-out deadline of June 4, 2026.

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether injunctive relief, declaratory relief, or both are warranted to protect people who (i) have filed lawsuits remanded from this Court to federal transferor courts prior to February 17, 2026, or (ii) had filed cases before February 17 in other fora, which were or

will be transferred to and/or consolidated into the MDL, from being involuntarily deemed class members in a proposed nationwide Roundup class action refiled in state court.

2. Whether injunctive relief, declaratory relief, or both are warranted to protect people with Roundup claims that have been or may be brought in federal court from the oppressive and unconstitutional requirements that the Missouri state class action settlement purports to require as conditions of opting out of the class action, so that this Court can shelter these people and their claims from improper interference.

DATED: April 8, 2026

Respectfully Submitted,

/s/ *Robin L. Greenwald*
Robin L. Greenwald (*pro hac vice*)
Robert J. Quigley (CA # 302879)
Chantal Khalil Levy (*pro hac vice*)
Emma Dietz (*pro hac vice*)
Alicia Butler (*pro hac vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
rquigley@weitzlux.com
ckhalil@weitzlux.com
edietz@weitzlux.com
abutler@weitzlux.com

*Co-Lead Counsel and Attorneys for Plaintiffs Jones and Schramm*

/s/ *David J. Dickens*
David J. Dickens (pro hac vice)
**THE MILLER FIRM LLC**
108 Railroad Avenue
Orange, VA 22960
Telephone: 540-672-4224
ddickens@millerfirmllc.com

*Co-Lead Counsel*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

SUMMARY OF THE RELIEF SOUGHT BY PLAINTIFFS ............................... 9

SOURCE OF AUTHORITY AND LEGAL STANDARD ................................... 11

    I.    This Court's Authority to Grant Relief Under the All Writs Act ........................... 11

    II.    Standard For Issuance of Injunctive Relief .............................................. 12

    III.    Standard for Issuance of Declaratory Relief ........................................... 13

ARGUMENT .......................................................................................................... 13

    I.    Plaintiffs Are Empowered to Seek the Requested Relief. ..................................... 13

    II.    Relief Is Necessary to Protect People Whose Federal Cases Have Left or Will Enter the MDL from Being Deemed Class Members. ........................................... 14

    III.    Relief Is Necessary to Protect Federal Roundup Litigants from Unconstitutional and Onerous Opt-Out Procedures That Could Trap Them in a Class They Wish to Leave .................................................................................................. 16

        A.  The Right to Opt Out of a Class Is Required by Constitutional Due Process ... 16

        B.  The Opt-Out Requirements Impose Unreasonable Burdens on Class Members, Lack Basic Due Process Protections, and Interfere with This Court's Jurisdiction. .................................................................................... 17

        C.  Plaintiffs' Request for Relief ......................................................... 22

        D.  The Traditional Requirements for Injunctive Relief Are Satisfied ................... 24

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*All. for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) .......................................................................................... 13

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ....................................................................................................... 1, 5

*AmerisourceBergen Corp. v. Roden,*
495 F.3d 1143 (9th Cir. 2007) .......................................................................................... 13

*Arizona Dream Act Coalition v. Brewer,*
757 F.3d 1053 (9th Cir. 2014) .......................................................................................... 24

*Atl. Coast Line R. Co. v. Locomotive Eng'rs,*
398 U.S. 281 (1970) ............................................................................................. 11, 14, 22

*Bates v. Dow Agrosciences, LLC,*
544 U.S. 431 (2005) ........................................................................................................... 7

*Carroll Shelby Licensing, Inc. v. Halicki,*
138 F. 4th 1178 (9th Cir. 2025) ................................................................................... 13, 24

*Council on Social Work Educ., Inc. v. Texas Instruments Inc.,*
105 F.R.D. 68 (N.D. Tex. 1985) ....................................................................................... 17

*Donovan v. City of Dallas,*
377 U.S. 408 (1964) .......................................................................................................... 10

*Heckman v. Live Nation, Entm't, Inc.,*
120 F.4th 670 (9th Cir. 2024) ........................................................................................... 20

*In re Baldwin-United Corp.,*
770 F.2d 328 (2d Cir. 1985) ............................................................................................. 15

*In re Columbia/HCA Healthcare Corp., Billing Practices Litig.,*
93 F. Supp. 2d 876 (M.D. Tenn. 2000) ............................................................................. 12

*In re Diet Drugs,*
282 F.3d 220 (3d Cir. 2002) ............................................................................................. 15

*In re Four Seasons Securities Laws Litig.,*
493 F.2d 1288 (10th Cir. 1974) ........................................................................................ 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  37 F. Supp. 3d 1102 (N.D. Cal. 2014)....................................................................... 16

*In re: Roundup Prods. Liab. Litig.*,
  No. 16-md-02741-VC (N.D. Cal. Jul. 6, 2020) ........................................................... 8

*King v. Monsanto Co.*,
  No. 2622-CC00325 (Mo. Cir. Ct. City of St. Louis Feb. 17, 2026)............................... 3

*Malliotakis v. Williams*,
  607 U.S. __, 146 S. Ct. 809 (2026)............................................................................. 11

*Nagrete v. Allianz Life Ins. Co. of N. Am.*,
  523 F.3d 1091 (9th Cir. 2008) .................................................................................... 12

*Philips Petroleum, Inc. v. Shutts*,
  472 U.S. 797 (1985) .................................................................................................... 16

*Plummer v. Chemical Bank*,
  668 F.2d 654 (2d Cir. 1982) ................................................................................. 16, 20

*Sierra Club v. US Army Corps of Engineers*,
  645 F. 3d 978 (8th Cir. 2011) ..................................................................................... 24

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) ...................................................................................... 20

*State ex rel. Monsanto Co. v. Mullen*,
  672 S.W.3d 235 (Mo. banc 2023) ................................................................................ 3

*Stephenson v. Dow Chemical Co.*,
  273 F. 3d 249 (2d Cir. 2001), *aff'd in relevant part by an equally divided Court*,
  539 U.S. 111 (2003) .................................................................................................... 11

*United States v. New York Telephone*,
  434 U.S. 159 (1977) .................................................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................................................... 16

*Winkler v. Eli Lilly & Co.*,
  101 F.3d 1196 (7th Cir. 1996)................................................................................ 12, 24

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ........................................................................................................ 13

**Statutes**

28 U.S.C. § 1407(a) .............................................................................................................. 15
28 U.S.C. § 2201 ................................................................................................................... 13
28 U.S.C. § 2283 ................................................................................................................... 12
28 U.S.C. 1651(a) ................................................................................................................. 11

**Rules**

Fed. R. Civ. P. 65(d)(2) ....................................................................................................... 13
Fed. R. Civ. P. 23 ................................................................................................................. 16
Mo. Sup. Ct. R. 52.08(b)(3) ................................................................................................ 16

## INTRODUCTION

MDL Co-Lead Counsel and Wave 10 Plaintiffs Joseph Jones and Glenn Schramm (collectively, "Plaintiffs") seek expedited relief from a proposed nationwide Roundup class action settlement that was filed in Missouri state court on February 17, 2026, and preliminarily approved on March 4, 2026. *King v. Monsanto Co.*, No. 2622-CC00325 (Cir. Ct. City of St. Louis, Mo.) (the "*King* Proposed Settlement"); *see* Greenwald Decl. Exs. A–C. Monsanto and the lawyers behind *King* have proclaimed it to be a fair and comprehensive resolution that cures the defects that caused this Court to reject a previous Roundup class settlement in 2021. Instead of returning to this Court, with ten years' experience presiding over the Roundup litigation, this group filed instead for approval of a nationwide class settlement in Missouri state court. That court rubber-stamped the settlement almost immediately, and deprived putative class members an opportunity to be heard. Plaintiffs' counsel exhausted requests for relief all the way up to the Missouri Supreme Court.

The new proposed settlement does not cure the defining defects of the old one, but doubles down. It adds to misleading and unclear class notice a suite of oppressive features designed to turn the screws on plaintiffs, compromise their lawyers, and trap people in the "class" who do not want to be a part of it, or do not know that they could be. *See* Greenwald Decl., Ex. C. The law does not permit, and the public should not need to fear, this abuse of the class action form, aided by state court forum-shopping, to try to extinguish serious, standalone cases about personal injury and death. The Supreme Court's *Amchem* decision aimed to curtail similar abuses.[1] If this settlement holds up as it is, it will set back the clock to the days before *Amchem*, and set back the legal profession.

Plaintiffs don't presume to ask this Court to fix all of that.

---

[1] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *see also* Morris A. Ratner, *Class Conflicts*, 92 Wash. L. Rev. 785, 799–803 (2017); *Feasting While the Widow Weeps: Georgine v. Amchem Products Inc.*, Susan P. Koniak, 80 Cornell L. Rev. 1045 (1995).

Plaintiffs seek relief from features of the *King* Proposed Settlement that encroach upon this Court's jurisdiction over federal Roundup cases, and that require prompt intervention before the settlement's opt-out deadline of June 4, 2026.[2] The problems are, first, an ambiguous and overbroad class definition that, on Monsanto and Class Counsel's reading, would wrongly encompass people whose federal cases arguably were not "pending in the MDL" on February 17, 2026; and, second, oppressive opt-out procedures that threaten to extinguish the federal Roundup lawsuits of cancer patients and their family members who are deemed to be members of a class certified by a state court in St. Louis last month. This Court has clear authority to grant relief from these invasions of its jurisdiction, and to protect the procedural and constitutional rights of federal Roundup plaintiffs.

The *King* Proposed Settlement would also treat Subclass 2, the "futures" class, in many of the same troubling ways that led this Court to reject the 2021 settlement.[3] Cosmetic changes aside, this is still a case involving a large, diffuse, and in many regards transient population, and a disease with long latency and diagnostic challenges. Plaintiffs' counsel have determined that, on this Motion, they cannot carry the dual standards of representing present and futures plaintiffs, both to avoid potential client conflicts and based on the language of the Pretrial Order appointing MDL leadership (PTO 4). This Court has broad discretion to appoint a special master or member of leadership to consider these important futures issues affecting the rights of millions of people nationwide.

**FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiffs' law firms behind the *King* Proposed Settlement ("Class Counsel") sought and obtained preliminary approval fifteen days after the case was filed. They and Monsanto pushed for

---

[2] This Motion does not waive any further challenges to the *King* Proposed Settlement. Plaintiffs reserve all rights to seek further relief from the settlement's class definition, form and dissemination of notice, notice period, deadlines, and substantive terms, among other things.

[3] *See* Pretrial Order No. 235 (PTO 235), Dkt. 13115 (May 26, 2021). Unless otherwise stated, docket citations refer to *In re Roundup Prods. Liab. Litig.*, No. 16-md-02741-VC (N.D. Cal.).

this expedited schedule even though the settlement was supposedly negotiated over nearly two years, and despite the objection of putative class members who attempted to intervene in the case requesting more time and the opportunity to be heard. There was no public hearing, though a non-public one, without notice, took place the day the case was filed.

On February 17, 2026, Class Counsel filed a putative class action petition and settlement approval motion in Missouri state court, in the 22nd Judicial Circuit Court for the City of St. Louis. *King v. Monsanto Co.*, No. 2622-CC00325 (Mo. Cir. Ct. City of St. Louis Feb. 17, 2026). Before February 17, these law firms had not played significant roles in the Roundup litigation (with some playing no role at all).[4] And the bulk of this litigation in Missouri state courts has been the *21st* Judicial Circuit Court for the *County* of St. Louis, located in Clayton, Missouri—a seemingly small distinction to outsiders, but a world of a difference to Missouri lawyers. Monsanto had heretofore fought to keep Roundup cases out of the St. Louis City courts, even taking a venue fight to the Missouri Supreme Court over this issue, and winning.[5] In St. Louis County, over a dozen Judges manage tens of thousands of Roundup cases across their collective dockets. In the City, the Roundup case volume is a fraction of the County's following Monsanto's venue win, and new cases are assigned as a matter of course to a single, known Judge.[6]

Class Counsel's February 17 filings consisted of the class action petition; a 94-page "Unopposed Motion for Entry of the Preliminary Approval Order and Suggestions in Support"; the proposed Master Settlement Agreement and nine exhibits thereto, including the proposed class

---

[4] The plaintiffs' law firms behind the settlement are Seeger Weiss LLP, Motley Rice LLC, Waters Kraus Paul & Siegel, The Holland Law Firm, Ketchmark & McCreight, and Williams Hart Boundas. None of these firms have played a significant role in the Roundup MDL, nor did they consult MDL leadership regarding the settlement.

[5] *See State ex rel. Monsanto Co. v. Mullen*, 672 S.W.3d 235 (Mo. banc 2023).

[6] The proposed class notice in the settlement approval motion identified that Judge by name even before he was formally assigned. Greenwald Decl., Ex. C at internal Ex. 1.E, p.5.

notice and a 22-page proposed preliminary approval order; and four supporting declarations, accompanied by another ten exhibits in all. The settlement agreement contains 144 defined terms and is more than 90 pages long without exhibits. The case-initiating filings total 620 pages.

These 620 pages propose an unprecedented and deeply concerning plan to settle the Roundup litigation as a nationwide class action composed of both present and future plaintiffs. The plan seeks to rope in tens of thousands of Roundup victims who already *have* lawyers, and in many instances have mature lawsuits well into pretrial development and some with looming trial dates, as well as countless millions of people who are not yet sick. Greenwald Decl., Ex. C, § 2.1. Then, after binding millions of individuals countrywide, the settlement deploys draconian opt-out procedures to make it very difficult, and for some impossible, to leave, especially for people unrepresented by counsel. The settlement even lets Monsanto and Class Counsel "challenge" opt-outs, with no apparent way for the would-be opt-out to respond to that challenge, nor any timetable to resolve any alleged deficiency. *Id.* § 12.2(f) (discussed at length in Argument Part III, *infra*).

Even more troubling is the largely illusory compensation offer. The settlement permits payments over a period of 17 to 21 years. Recoveries are neither adequately inflation-adjusted nor subject to meaningful lien protection.[7] The "tier average" award for the highest tier of residential claimant—someone who was diagnosed with an aggressive NHL before age 60—is $40,000, from which attorneys' fees, litigation costs, and medical and other liens are deducted. Greenwald Decl.,

---

[7] The settlement documents state that awards can be adjusted upwards annually for inflation, beginning five years after the Effective Date, up to 2.5 percent per year. *See* Greenwald Decl., Ex. C, at 40 n.1. This implies that, for five years, there is no protection against inflation, even though, in recent years, inflation has clocked in at roughly 4.2% per year.

Ex. C, § 6.6.[8] The settlement that the Supreme Court determined violated claimants' rights in *Amchem* valued cancer claims at between $20,000 and $200,000—and that was in 1997 dollars.[9]

Monsanto is to allocate limited funds each year for paying class members, and if others with higher priority in the payment "waterfall" exhaust those funds in a given year, lower-priority class members must wait a year, or years, to recover. *Id.* § 6.11. Medical liens for aggressive lymphoma treatment can be hundreds of thousands of dollars, but the settlement terms related to relief from liens are hazy and inadequate. A "Healthcare Compliance Administrator" is directed to try to negotiate with disclosed private and public insurance providers to work out a cap, but nothing has been negotiated in advance and there is no guarantee of any insurance relief. *Id.* § 18. Settlement award payouts will also be delayed until lien repayments are resolved. *See* Greenwald Decl., Ex. C, § 18. The main attention to liens protects *Monsanto* from lien liability. *Id.* § 3.1(d)–(e). In exchange for all of this, claimants release not only Monsanto, but also Bayer AG and a vast swathe of affiliates and third parties, many of whom do not even sell Roundup. *Id.* §§ 1.1(100), 3.1.[10] The settlement

---

[8] Certain "occupational claimants" are eligible for higher payments of as much as $165,000, but are subject to stringent documentation requirements that many occupational Roundup users will never be able to satisfy, as any lawyer who has litigated Roundup cases would know. Greenwald Decl., Ex. C, § 6.3(a)(xvi). If they do not have the required documentation, occupational Roundup users are deemed residential claimants. *Id.* § 6.6(c). Bayer has stated that the "vast majority of claims in the Roundup litigation have come from residential [lawn and garden] users." Bayer Global, *Managing the Roundup Litigation*, https://www.bayer.com/en/managing-the-roundup-litigation (last visited Apr. 8, 2026).

[9] *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 604 (1997). In inflation-adjusted dollars, $200,000 in 1997 is more than twice that today. The settlement also makes sure that no one can ever seek medical monitoring as those claims are released, *see* Greenwald Decl., Ex. C, §§ 1.1(107), 3.1(a), but provides no value for medical monitoring. Roughly half of states permit this remedy, and they have received significant support in the Restatement (Third) of Torts.

[10] The settlement also does not require Monsanto to warn that glyphosate-based Roundup (which it continues to sell) causes cancer, or even that some scientific bodies believe it does.

also sought to stay all Roundup litigation in the state of Missouri, a feature that a leading treatise recognizes as a major "red flag" for "collusive" litigation behavior.[11]

The settlement would incentivize attorneys to encourage client participation through concerning attorneys' fee provisions that could compromise the independent judgment of lawyers as they advise clients on whether to opt out of the class. *Id.* §§ 15.1–15.9.[12]  Non-class counsel are eligible to apply for a share of the likely multi-hundred-million-dollar fee award, but only if they certify in writing that they "believe the Settlement Agreement to be fair and will make or ha[ve] made best efforts to recommend the Settlement Agreement to [their] clients," *id.* § 15.6, regardless of their clients' needs and desires or the strength of their cases. Lawyers are also ineligible to receive these fees if they represent more than 25 opt-outs,[13] or if they provide expert reports or work product to lawyers still suing Monsanto. *Id.* § 15.7(c). While relief to many class members is highly deferred, attorneys' fee payments are heavily frontloaded. *Id.* § 15.5. Even as some class members might have to wait up to 21 years for payment, Class Counsel will be moving for attorneys' fees by May 7, 2026, before the opt-out period is complete, and before any hearing on class certification is gaveled to order. Greenwald Decl., Ex. A, at 20.

Class Counsel's moving papers and proposed class notice did not address these concerns. They contended that this discounted and deferred payment scheme would be sensible because the Supreme Court might decide the *Durnell* case in Monsanto's favor, and because Monsanto is at risk

---

[11] 4 Newberg and Rubenstein on Class Actions § 13:19 (6th ed.) (stating that "the presence of such a provision in a preliminary approval order is evidence that the parties are settling the present case precisely to enjoin collateral litigation, a practice that raises a red flag about whether the present settlement is a collusive suit aimed at foreclosing a stronger suit in the collateral forum").

[12] *See*, *e.g.*, Model Rules of Pro. Conduct r. 2.1 & cmt. 1 (Am. Bar. Ass'n 2002); Howard M. Erichson & Benjamin C. Zipursky, *Consent Versus Closure*, 96 Cornell L. Rev. 265, 283 (2011) (stating that "mandatory-recommendation provision[s] run[] afoul of the lawyer's obligation to give a client independent and loyal advice").

[13] An attorney who represents fewer than 25 opt-outs is eligible for these fees only if the clients "elect[ed] to Opt Out despite the attorney's recommendation." Greenwald Decl., Ex. C, § 15.7(a).

of going bankrupt. But, in addition to overstating the possible impact of *Durnell* on the Roundup litigation,[14] they did not build into the settlement any protections to keep Monsanto from walking away if it gets a favorable result at the Supreme Court—something Bayer's CEO has insinuated that the company may well do.[15] And they did not adequately substantiate the claim that Monsanto was at risk of going bankrupt, something it has threatened time and again throughout the Roundup litigation. If this unsupported threat of bankruptcy turns out to be a serious one, however, this would mean that the nearly 4,000 cases now pending in the MDL lack any insolvency protection, such as an escrow fund. Monsanto has not disclosed these supposedly material financial developments to this Court, nor have Monsanto or Class Counsel shared this information with Plaintiffs' counsel despite repeated requests. *See* Greenwald Decl., ¶ 18.

The proposed settlement thus presented a number of difficult issues to consider deeply. To counsel's knowledge, the *King* Proposed Settlement would also be the only state court nationwide mass tort class action settlement in at least the past quarter century.

And yet it was on February 17, 2026, the same day the case was filed, that the St. Louis City Court appears to have held the only hearing in this case, where it considered preliminary approval. No hearing was publicly noticed, and it appears only Monsanto and Class Counsel were present.

---

[14] The Supreme Court's grant of certiorari in *Durnell* (No. 24-1068) is limited only to the issue of whether certain "label-based failure-to-warn" claims are preempted by FIFRA. 607 U.S. (Jan. 16, 2026), available at https://www.supremecourt.gov/orders/courtorders/011626zr_3f14.pdf. Even if Monsanto prevails, this would not preempt the other claims that Roundup plaintiffs frequently assert, such as design defect, breach of warranty, fraud, and negligent testing and design. *See Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 444 (2005) (stating that "claims for defective design, defective manufacture, negligent testing, and breach of express warranty are not pre-empted" under FIFRA, because they do not relate to "labeling or packaging").

[15] *See* SeekingAlpha, *Bayer Aktiengesellschaft (BAYRY) Discusses Roundup Class Settlement Agreement and Implications for U.S. Glyphosate Litigation Transcript* (Feb. 17. 2026), available at https://seekingalpha.com/article/4871121-bayer-aktiengesellschaft-bayry-discusses-roundup-class-settlement-agreement-and-implications (last visited Apr. 8, 2026) (stating that a favorable decision in *Durnell* could "help limit the future costs beyond what we've projected").

Greenwald Decl., Ex. B, at 1–2. Co-Lead Counsel have diligently requested from the St. Louis City Court any transcript of this February 17 preliminary approval hearing; none has been provided and so it is doubtful one even exists. *See* Greenwald Decl., ¶ 13.

On February 24, 2026, not knowing that this preliminary approval hearing had already taken place, a group of Missouri state court plaintiffs jointly represented by 14 law firms with nearly 20,000 Roundup clients sought to intervene in the then-putative class action proceedings. This February 24 filing raised questions concerning, inter alia, the capacious class definition, the restrictive and confusing opt-out provisions, disabling intra-class conflicts, and the seeming unfeasibility of furnishing constitutionally adequate notice, particularly to a futures class this diffuse and diverse.[16] Given these concerns, plaintiffs asked the Court not to grant preliminary approval until these concerns could be considered. *See* Greenwald Decl., ¶ 14.

The state court did not pause the rushed preliminary approval, nor did it allow concerned proposed class members or attorneys to be heard. On March 4, 2026, the St. Louis City Court certified the proposed class for settlement purposes and granted preliminary approval. There was no further hearing, and no explanation of its decision beyond the three-page memorandum issued on that date, which incorrectly stated that intervenors' concerns could be addressed by way of later "objection[s]." Greenwald Decl., Ex. B at 3. The court entered essentially unchanged the proposed order requested by the parties on February 17. Proposed intervenors sought relief at the Missouri Court of Appeals the following day, on March 5, 2026, when class notice was to begin. Their writ was summarily denied on March 6. That same day, they sought writ relief at the Missouri Supreme

---

[16] The filing noted that this Court had illustrated the level of rigor required at the preliminary approval stage under both Rule 23 and its Missouri counterpart when considering a proposed Roundup settlement in the MDL, stating that it "appreciates the widespread interest in the settlement agreement, and agrees that it should not grant preliminary approval before fully considering the views of any potential class members who oppose it." *See* PTO 214, Dkt. 11182, *In re: Roundup Prods. Liab. Litig.*, No. 16-md-02741-VC (N.D. Cal. Jul. 6, 2020).

Court. That writ was summarily denied on March 9. *See* Greenwald Decl., ¶ 16. In court filings dated March 10, March 18, and March 25, 2026, Plaintiffs' counsel have notified the St. Louis City Court of ongoing issues related to the settlement, including deficiencies in notice available on the settlement administration website, as well as the lack of information available to plaintiffs and their counsel concerning bankruptcy risk and medical lien protections. Greenwald Decl., ¶ 17.

On March 26, 2026, Plaintiffs' counsel filed a notice with the St. Louis City Court requesting clarification regarding which federal MDL litigants the proposed settlement purported to treat as class members. Greenwald Decl., ¶ 6 & Ex. D. Plaintiffs' counsel requested that Monsanto and Class Counsel provide their views by April 1, 2026. *Id.* The Court has not taken action on that notice. On April 8, 2026, less than an hour after Plaintiffs' counsel requested Monsanto's position on a shortened briefing and hearing schedule for this Motion, Monsanto and Class Counsel emailed Plaintiffs' counsel a letter stating, for the first time, their position that "The Settlement Class includes: (i) those plaintiffs whose cases were transferred out of the MDL prior to February 17, 2026, and (ii) those plaintiffs (if any) whose cases were transferred into or first filed in the MDL after February 17, 2026." Greenwald Decl., ¶ 7 & Ex. E. To Plaintiffs' counsel's knowledge, Monsanto and Class Counsel have not notified these federal plaintiffs that they may be class members.

## SUMMARY OF THE RELIEF SOUGHT BY PLAINTIFFS

While the *King* Proposed Settlement and the process leading to its adoption raise many serious concerns, Plaintiffs come to this Court to seek expedited relief as to a narrow set of issues.[17] Plaintiffs seek relief from features of the *King* Proposed Settlement that interfere directly with this proceeding and federal Roundup lawsuits that are or have been a part of the MDL. These issues

---

[17] Plaintiffs reserve all rights to seek such further relief as may be appropriate, and are prepared to address any other issues on which the Court may request additional briefing or argument.

urgently require resolution well before the close of the opt-out period, currently scheduled for June 4, 2026, and fall squarely within this Court's power to grant relief.

First, Plaintiffs seek declaratory or injunctive relief confirming that certain federal Roundup litigants cannot be deemed class members at all. The settlement excludes from the proposed class "any Person who, as of the Settlement Date [2/17/2026], has a claim pending in *In re Roundup Products Liability Litigation,* MDL No. 2741 (N.D. Cal.)." Greenwald Decl., Ex. A at 4. Monsanto and Class Counsel have taken the position that the *King* Proposed Settlement intends to include in the class people whose cases were remanded from the MDL to their federal transferor courts prior to February 17, and those whose cases were filed by February 17 in other courts and did or will later be consolidated in the MDL. They took this position for the first time on April 8th, in correspondence to Plaintiffs' counsel, but they have not informed putative class members. Plaintiffs submit that these federal litigants cannot properly be swept into a class certified by a state court just last month.[18]

Second, whether these federal plaintiffs are deemed to be in or out of the class, the preliminary approval order explicitly includes in the class people whose lawsuits were not pending in the MDL as of February 17, 2026, including the Wave 10 Plaintiffs who have joined this Motion. To exit the class, these and possibly other federal MDL litigants would purportedly be required to comply with onerous, unfair, and, indeed, unconstitutional opt-out procedures specified by the preliminary approval order. And as discussed in Section III.B, Monsanto and Class Counsel have taken the position that even people who try to opt out of the class cannot do so of their own accord.

---

[18] The preliminary approval order also purports to stay "All Roundup Lawsuits and Related-Party Lawsuits Brought by Settlement Class Member Parties in any court of the State of Missouri," with no distinction between state versus federal cases. Greenwald Decl., Ex. A at 17. State courts are "completely without power" to stay federal litigation. *Donovan v. City of Dallas*, 377 U.S. 408, 413 (1964). Plaintiffs are unaware of any live controversies over this issue, though over 900 cases within the MDL came from Missouri federal court. This Court has jurisdiction to enjoin Monsanto from invoking this stay order against federal cases, should Monsanto attempt to do so.

But neither the St. Louis City Court nor Monsanto have any such authority to curtail federal lawsuits in this way. And this Court has full authority to enjoin Monsanto and those acting in concert with it, including Class Counsel and the Settlement Administrator, from abusing or permitting abuses of the opt-out process to trap litigants who do not want to be part of the class.[19]

Plaintiffs set forth the grounds for this requested belief below. Plaintiffs also observe that this Court would be well within its authority to require Monsanto, and Class Counsel firms with cases in the MDL, to provide, among other things, a complete and public accounting of the February 17, 2026, hearing and all prior and subsequent communications with the St. Louis City Court, details of the notice and opt-out programs, as well as any financial analysis and documentation bearing on the threat of a Monsanto bankruptcy alluded to in that proceeding.

## SOURCE OF AUTHORITY AND LEGAL STANDARD

### I.    This Court's Authority to Grant Relief Under the All Writs Act

Federal courts have broad authority to provide relief from state court proceedings under the All Writs Act when this is "necessary or appropriate in aid of [their] jurisdiction." 28 U.S.C. § 1651(a); *see United States v. New York Telephone*, 434 U.S. 159, 172–73 (1977). "That requirement is met when a stay is 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Malliotakis v. Williams*, 607 U.S. __, 146 S. Ct. 809, 811 (2026) (Alito, J., concurring in grant of stay) (quoting *Atl. Coast Line R. Co. v. Locomotive Eng'rs*, 398 U.S. 281, 295 (1970)). "[T]he existence of advanced federal in personam jurisdiction may, in some

---

[19] As noted above, Plaintiffs' counsel do not purport to represent the futures plaintiffs on this Motion. They observe that, if they are not reformed, issues arising from the defective and misleading class notice and problematic implementation of notice procedures are likely to be raised by plaintiffs who seek to file their claims in federal court in the future, as infamously happened in the Agent Orange litigation. *See Stephenson v. Dow Chemical Co.*, 273 F. 3d 249, 260 (2d Cir. 2001), *aff'd in relevant part by an equally divided Court*, 539 U.S. 111 (2003).

instances, permit an injunction in aid of jurisdiction," as has "often arisen in multidistrict litigation (MDL) cases," without running afoul of the Anti-Injunction Act, 28 U.S.C. § 2283.[20] *Nagrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1102 & n.16 (9th Cir. 2008); Fed. Judicial Ctr., Manual for Complex Litigation (Fourth) § 21.15, at 265 n.808 (2004) (collecting federal appellate authority approving of MDL injunctions concerning disruptive state actions).

Thus, "courts with jurisdiction over complex multidistrict litigation" may appropriately issue orders under the All Writs Act binding parties to state court proceedings "to protect the integrity of their rulings, including pre-trial rulings." *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1203 (7th Cir. 1996); *see In re Columbia/HCA Healthcare Corp., Billing Practices Litig.*, 93 F. Supp. 2d 876, 879–81 (M.D. Tenn. 2000). Relief of this kind may be particularly appropriate as against "[l]itigants who engage in forum-shopping, or otherwise take advantage of our dual court system for the specific purpose of evading the authority of a federal court," because "although an injunction is extraordinary relief, where such abuses exist, failure to issue an injunction may create the very 'needless friction between state and federal courts' which the Anti-Injunction Act was designed to prevent." *Winkler*, 101 F. 3d at 1203 (citation omitted).

## II.     Standard For Issuance of Injunctive Relief

The Ninth Circuit has suggested, without fully deciding, that the traditional framework for seeking injunctions applies to relief under the All Writs Act.[21] Under this framework, an injunction may issue where the movant demonstrates: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555

---

[20] "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

[21] *See Nagrete*, 523 F.3d at 1096 n.4.

U.S. 7, 20 (2008); *see All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (describing related "sliding scale" approach). An injunction may properly bind parties as well as their officers, agents, employees, and other persons in active concert or participation with these people or entities. Fed. R. Civ. P. 65(d)(2).[22]

## III.    Standard for Issuance of Declaratory Relief

In the alternative, Plaintiffs request declaratory relief concerning the ambiguous reach of the class definition. The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to "declare the rights and other legal relations of any interested party seeking such declaration." "Declaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Carroll Shelby Licensing, Inc. v. Halicki*, 138 F. 4th 1178, 1189 (9th Cir. 2025) (internal citation omitted).[23]

## ARGUMENT

## I.    Plaintiffs Are Empowered to Seek the Requested Relief.

This Motion is jointly brought by the Wave 10 Plaintiffs (as to Part III, *infra*) and MDL Co-Lead Counsel (as to all Parts), who are proper parties to seek the requested relief.

Wave 10 Plaintiffs Jones and Schramm filed individual personal injury lawsuits in this MDL after February 17, 2026. The *King* Proposed Settlement seeks to deem these federal plaintiffs to be class members subject to the purported nationwide jurisdiction asserted by the St. Louis City Court. Absent relief from this Court, to preserve their federal claims, these Plaintiffs would be required to

---

[22] Though "preliminary" in the sense that the opt-out deadline has not yet passed, Plaintiffs believe the court has sufficient information before it to grant injunctive relief on a permanent basis.

[23] The Ninth Circuit has questioned whether the Anti-Injunction Act, which by its "plain language" "speaks *only* to actual injunctions," poses any obstacle to declaratory relief from state court orders. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1152-53 & n.16 (9th Cir. 2007).

proceed through the onerous and risky opt-out procedure set by the preliminary approval order. This infringes Wave 10 Plaintiffs' right to seek relief before this Court and trammels this Court's jurisdiction over the litigants that appear before it. *Atl. Coast Line R. Co.*, 398 U.S. at 295.

Co-Lead Counsel were appointed by this Court to protect and advance the rights of all plaintiffs who have or will pursue relief for Roundup-related injuries in this MDL. *See* PTO 4, Dkt. 62 (describing duties and authority of Co-Lead Counsel). Co-Lead Counsel accordingly request relief on behalf of all plaintiffs in the Roundup MDL.

## II.     Relief Is Necessary to Protect People Whose Federal Cases Have Left or Will Enter the MDL from Being Deemed Class Members.

The preliminary approval order drafted by Monsanto and Class Counsel, adopted by the Missouri court, excludes from the *King* class definition "any Person who, as of the Settlement Date, has a claim pending in *In re Roundup Products Liability Litigation,* MDL No. 2741 (N.D. Cal.)." Greenwald Decl., Ex. A at 4.[24] As written, it is at best ambiguous how the *King* Proposed Settlement would classify federal Roundup litigants whose cases were remanded from this MDL, or those whose cases arrived in the MDL after the "Settlement Date" of February 17. As noted, less than an hour after Plaintiffs' counsel requested Monsanto's position on a shortened briefing and hearing schedule for this Motion, Monsanto and Class Counsel for the first time took the position that "The Settlement Class includes: (i) those plaintiffs whose cases were transferred out of the MDL prior to February 17, 2026, and (ii) those plaintiffs (if any) whose cases were transferred into or first filed in the MDL after February 17, 2026." Greenwald Decl., Ex. E. Monsanto's position would overextend the jurisdiction of the City of St. Louis Court, to the detriment of federal Roundup litigants.

---

[24] Though poorly defined, this limitation appears to recognize the obvious encroachment on this Court's jurisdiction that the *King* Proposed Settlement represents.

-14-

Mot. For Relief from State Class Action  –  *In re Roundup Products Liab. Litig.*, No. 16-md-02741-VC

This Court typically remands cases to their transferor courts after they have been pending for years, and after completion of pretrial proceedings that include outcome-determinative rulings on the admissibility and sufficiency of the plaintiffs' evidence of specific causation. *See*, *e.g.*, Conditional Remand Order, Dkt. 21849, at 1 (N.D. Cal. Feb. 20, 2026); *see also* 28 U.S.C. § 1407(a). It is implausible that most or any these cancer victims or their family members, who have longstanding attorney-client relationships and approaching trials, will suddenly want to drop out to take the lowball offers—likely less than the expenses they have already incurred in marshalling the requisite proof of causation—that would be forced on them by operation of the proposed class settlement. Both these plaintiffs, and those who have filed cases that have made or will eventually make their way to the MDL after February 17, have interests in pursuing their claims in the federal forum. These litigants and their attorneys may not recognize they need to take action to opt out, because the ambiguous class notice (assuming they even receive it) does not clearly indicate that they are deemed members of the proposed class. Greenwald Decl., Ex. C, at internal Ex. 1.E, p.7.

This Court can and should resolve this tension by declaring that people whose cases are subject to remand orders are not class members. A state class action may not take such a "preemptive strike" against advanced federal Roundup litigation by threatening to extinguish these cases if the people bringing them do not take difficult and risky steps authored by a party-adversary. *See In re Diet Drugs*, 282 F.3d 220, 237–38 (3d Cir. 2002). The *King* Proposed Settlement would interfere directly with the federal court's management and disposition of those cases following developed MDL pretrial proceedings supervised by this Court. *See In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) ("[T]he need to enjoin conflicting state proceedings arises . . . where it is intolerable to have conflicting orders from different courts.'") (citation omitted). Deeming these remanded plaintiffs to be outside of the class, or enjoining Monsanto and other parties described in

Rule 65(d)(2) from taking a contrary position, also would be in the public interest and create no prejudice. Should these remanded plaintiffs wish to "opt in" to the class, the proposed settlement already provides a mechanism for them to do so. Greenwald Decl., Ex. A at 4. That is very different from being forced to join a state class against their expectations.

### III. Relief Is Necessary to Protect Federal Roundup Litigants from Unconstitutional and Onerous Opt-Out Procedures That Could Trap Them in a Class They Wish to Leave.

#### A. The Right to Opt Out of a Class Is Required by Constitutional Due Process.

The right to easily opt out of a class action settlement is a constitutional requirement. "[D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Philips Petroleum, Inc. v. Shutts*, 472 U.S. 797, 812 (1985); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011) ("In the context of a class action predominantly for money damages we have held that absence of notice and opt out violates due process."). Federal Rule of Civil Procedure 23, and the Rule 23-based Missouri rule under which the class here was certified, Mo. Sup. Ct. R. 52.08, thus require that a trial court send notice to class members informing them "that the court will exclude from the class any member who requests exclusion" and specifying "the time and manner for requesting exclusion."

The due process baseline to exit a class action is to express a "reasonable indication of a desire to opt out." *Plummer v. Chemical Bank*, 668 F.2d 654, 657 n.2 (2d Cir. 1982). Courts may adopt opt-out procedures for the purpose of identifying who is and is not in the class and to ascertain the intent of potential class members to participate in a class action.[25] This is why it is standard and

---

[25] *See, e.g.*, *In re Four Seasons Securities Laws Litig.*, 493 F.2d 1288, 1291 (10th Cir. 1974) ("A reasonable indication of a desire to opt out ought to be sufficient."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 37 F. Supp. 3d 1102, 1106 (N.D. Cal. 2014) (agreeing that "'reasonable indication' of. . . intent to opt out" is "generally sufficient" and adding that "[c]ourts may permit 'considerable flexibility' in determining whether an opt-out attempt was sufficient.") (citations omitted).

well-recognized in this District and elsewhere to opt out by way of a simple letter identifying the party opting out and expressing their desire to be excluded from the class.[26] Oppressive opt-out requirements that are not really about gauging the desire of the individual to opt out of the class are "perverse, unsound and perhaps unconstitutional." *Council on Social Work Educ., Inc. v. Texas Instruments Inc.*, 105 F.R.D. 68, 71–72 (N.D. Tex. 1985).

**B. The Opt-Out Requirements Impose Unreasonable Burdens on Class Members, Lack Basic Due Process Protections, and Interfere with This Court's Jurisdiction.**

Monsanto and Class Counsel have devised an opt-out scheme that is designed to oppress, discourage, and invalidate opt-outs, and is only tangentially related to assessing the desires of class members or verifying their class membership. First, each person wishing to opt out must submit a written request to a settlement administrator containing eleven components, which get worse and worse after the first five:[27] an opt-out must also provide: (vi) "a copy of his or her identification issued by any Governmental Authority or other bona fide identification" [i.e., a photo ID], (vii) "the dated Personal Signature of the Settlement Class Member seeking to exclude himself or herself from the Settlement Class"—though "Personal Signature" is not defined in the approval order, the long-form settlement agreement incorporated thereby defines it to mean an actual "wet ink" physical signature, which cannot be executed on the opt-out's behalf; (viii) a disclosure certifying whether they have entered a tolling agreement with Monsanto, (ix) a disclosure certifying whether they have filed a Roundup-related lawsuit, (x) a disclosure certifying whether they have retained legal counsel, and if so, the retained attorney's name and law firm; and (xi) "a declaration with the Personal

---

[26] N.D. Cal., Procedural Guidance for Class Action Settlements, Preliminary Approval, subsection (2), available at https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements (last accessed April 8, 2026); *See also* Fed. Judicial Ctr., Manual for Complex Litigation (Fourth) § 21.32, at 298 ("The opt-out procedure should be simple . . . .").

[27] The first five opt-out requirements are (i) name, (ii) address, (iii) telephone number, (iv) email address, and (v) date of birth.

MOT. FOR RELIEF FROM STATE CLASS ACTION – *IN RE ROUNDUP PRODUCTS LIAB. LITIG.*, NO. 16-md-02741-VC

Signature [again, that's wet ink] of the Settlement Class Member attesting to Exposure to Roundup

Products, and if the Settlement Class Member is a member of Subclass 1, attesting to a Qualifying

Diagnosis and the date such diagnosis was made." Greenwald Decl., Ex. A at 10–11.[28]

This final item is particularly unwarranted. Monsanto is directly contacting litigation

adversaries represented by counsel and requiring them to produce signed testimonial evidence

bearing on ultimate issues in their cases, and if this evidence is deemed unsatisfactory, their cases

risk being thrown out altogether.[29] Even something like the "date such diagnosis was made" can be

complicated in cases involving latent diseases and medical histories that may span decades. In this

and other regards, the opt-out process (which purports to bind all future MDL plaintiffs as well)

encroaches upon this Court's pretrial discovery orders, under which Monsanto has no right to obtain

this information (in sworn or unsworn form) except through disclosure of the Plaintiff's Fact Sheet

and ensuing plaintiff-specific depositions. *See* Pretrial Order No. 49, Dkt. 1776.

The opt-out procedures also require attorneys for class members to submit opt out requests

one at a time, with wet-ink "Personal Signature[s]" for each client. Greenwald Decl., Ex. A at 12.

They state that no "'mass,' 'class,' 'group,' or otherwise combined Opt Out shall be valid," and one

class member cannot submit an opt out on behalf of another class member or a derivative claimant

---

[28] The definition of "Personal Signature" includes an ambiguous statement that "[f]or avoidance of doubt, a Personal Signature . . . cannot be signed by an . . . entity involved in representing a Settlement Class Member, even if pursuant to a power of attorney." Greenwald Decl., Ex. C, § 1.1(87). This language could create grounds for Monsanto to contest an opt out signed by a putative class member's legally-authorized representative such as a spouse or unmarried partner holding a valid power of attorney. This interferes with arrangements commonly made by people who are very ill to designate someone else to handle their financial or legal affairs.

[29] Absent class members who want to remain adverse to Monsanto in litigation are thus encouraged to make disclosures to Monsanto (potentially under penalty of perjury) about their exposure to Roundup and the date of their diagnosis – key facts that plaintiffs ordinarily disclose only with the assistance of counsel after a review of relevant records and a thorough discussion of relevant potential exposure situations that a layperson might not initially think about. These disclosures may then be used against the opt-out litigants for impeachment purposes, or worse.

(as in the case of two spouses, or a parent and child). *Id.* at 12. Monsanto and Class Counsel have not provided class members with what they would deem to be a compliant opt-out form, leaving them mystified about how to navigate these processes.[30] People must navigate this maze and make these highly personal decisions in an extremely short time-frame in order to preserve claims with potential settlement values that exceed the values here by as much as 10- or 100-fold or more.[31]

People who want to be excluded from the settlement to save their valuable legal rights can only *hope* that their self-prepared submissions are unassailably worded and comport with the settlement administrator's interpretation of what is required. After a timely opt-out request is submitted, Monsanto and Class Counsel both have a right to challenge it "pursuant to Section 12.2(f) of the Settlement Agreement." Greenwald Decl., Ex. A at 12. But they can take their time: challenges are due "no later than seven days ***following*** the close of the Opt Out Period," *id.* (emphasis added), meaning that people trying to leave the class would likely find their rights and status ambiguous until after the opt-out period is over, and they have no recourse against an adverse decision. Such challenges are subject to unspecified procedures to be devised by the Settlement Administrator, which, like Monsanto and Class Counsel, may have built-in financial incentives that are less about protecting the opt-outs' expressed wishes and more about protecting the settlement and associated

---

[30] And while Monsanto has created obstacles between represented people and their lawyers, at least they have lawyers. How could an unrepresented person (often, a seriously ill or recovering cancer patient) possibly do all of this without risking the forfeiture of their rights?

[31] This does not even scratch the surface of whether it is credible that members of the extremely broad futures class would take the time and submit the sensitive personal data (including signatures and identification) needed to opt out, particularly in light of the deceptive and confusing class notice. One expects – and Monsanto no doubt hopes – that the futures opt-opt rate will be minimal. And the futures class may number in the hundreds of millions. It includes people who merely "purchased or paid for" Roundup products, "saw the application" of Roundup, or "otherwise had reason to know of their exposure." Greenwald Decl., Ex. A at 3. It is well documented that over 80% of Americans have glyphosate in their bodies, who arguably would be class members by virtue of "otherwise having reason to know of their exposure." *See* Maria Ospina et al., *Exposure to Glyphosate in the United States: Data from the 2013–2014 National Health and Nutrition Examination Survey*, 167 Env't Int'l 107620 (2022), https://doi.org/10.1016/j.envint.2022.107620.

fees, which by its terms, which are partially sealed and confidential, could fall apart if too many people opt out. *Id.* Ex. C, §§ 12.2–12.5 (referencing Confidential Exhibit I).

The procedures for confirming the validity of opt-outs also do not so much as wave a hand at due process. A person trying to escape the settlement has no right to notice of the challenge, no right to be heard in response to the challenge, no opportunity to cure an alleged deficiency, and no right to appeal should the opt out be deemed invalid. Nor does the process provide any remedy for putative class members who fail to submit timely or valid opt out requests through excusable neglect—a protection commonly afforded to persons affected by such settlements.[32]

In short, the opt out process here does not simply ascertain whether class members have reasonably indicated that they wish to withdraw from the class. *Plummer*, 668 F.2d at 657  n.2. Rather, the *King* Proposed Settlement imposes a process so difficult that people will not leave—even when they want to—and so complicated and full of traps so that people who want and try to leave may be ensnared. It is rife with opportunities for unreviewable abuse and undue influence by Monsanto and those acting in concert with it, who have every incentive to challenge every single opt-out.[33] It is unconscionable and untenable to impose these sham procedures on people who already have existing federal lawsuits (or lawsuits anywhere) and competent counsel.

Plaintiffs' concerns are grounded not only in the terms of the *King* Proposed Settlement, but in advocacy positions taken by Monsanto and Class Counsel. In a Missouri state court case that had

---

[32] *See, e.g.*, *Silber v. Mabon*, 18 F.3d 1449, 1455 (9th Cir. 1994) (remanding to permit district court to determine whether late opt-out had excusable basis for neglect).

[33] Though it is laundered in the form of a state court order (all but approved the day it was filed), the settlement more closely resembles the kinds of one-sided and unconscionable commercial agreements that the Ninth Circuit has repeatedly set aside, while chastising businesses and their lawyers for imposing them on the public. *See, e.g.*, *Heckman v. Live Nation, Entm't, Inc.*, 120 F.4th 670, 685 (9th Cir. 2024) (invalidating arbitration agreement that "provide[d] to defendants many of the protections and advantages of a class action, but provide[d] to non-bellwether plaintiffs virtually none of its protections and advantages").

a jury trial set in early April 2026, the plaintiffs submitted all of the required opt-out materials both to the settlement administrator and on the court docket, yet Monsanto and Class Counsel both filed briefs in the state court proceeding arguing that the plaintiffs had not validly opted out. According to Monsanto, "no Opt Out will become effective until June 2026," after the administrator provides a list of valid opt-outs and Monsanto and class counsel exhaust their rights to challenge their validity. Greenwald Decl., Ex. F, at 5 & n.3. According to Class Counsel (who sought to intervene in this case, despite having no legitimate interest in it), "[p]roceeding to trial now would require this Court to assume the validity of opt-outs that have not yet been determined to be effective, which would vest these Plaintiffs with legal rights that they may or may not ultimately have." Greenwald Decl., Ex. G, at 4. But absent class members already have vested rights in their claims that are protected under the Due Process Clause, as well as applicable class action procedural rules that must comport with due process. Their litigation opponents and conflicted class-action lawyers should not be empowered to void those rights merely by agreeing amongst themselves to do so.

An opt-out process that prevents a plaintiff in an existing lawsuit from freely deciding to opt out of a class, and prevents a court from accepting that plaintiff's request to withdraw from the class without further approval from the plaintiff's litigation adversary, with no right to cure, is flagrantly unconstitutional. The Supreme Court found state court class actions a constitutionally permissible means of binding a nationwide class of absent plaintiffs only where the plaintiffs were "provided at least with an opportunity to 'opt out' of the class, and if [they] take[] advantage of that opportunity [they are] removed from the litigation entirely." *Shutts*, 472 U.S. at 810–11. Monsanto's perversion of the class action from a tool for aggregating small-dollar claims into one for catching and killing perfectly healthy and self-sufficient lawsuits cannot stand.

This Court need not decide the precise contours of the constitutional questions presented by the *King* Proposed Settlement's opt out procedures, however, because it can provide relief through its authority to protect federal cases before it. The opt-out procedures as applied to federal Roundup cases unquestionably would "so interfer[e] with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R. Co.*, 398 U.S. at 295. This Court can exercise its power to manage the pre-trial proceedings in this MDL, to the degree the procedures of the *King* Proposed Settlement go beyond what is required to determine whether class members with federal cases have reasonably indicated their desire to opt out of (or stay in) the St. Louis City class action.

### C. Plaintiffs' Request for Relief

Plaintiffs accordingly ask the Court to enter an order to protect the rights of Roundup litigants as well as the Court's own jurisdiction over the pre-trial litigation of claims transferred to, filed in, and remanded from this proceeding. Plaintiffs request the following relief from current and possible future proceedings related to the *King* Proposed Settlement:

*First*, the Court should declare that *all* plaintiffs who had already filed federal Roundup lawsuits, and Roundup lawsuits removed by Monsanto to federal court, by the time the proposed settlement was preliminarily approved (including plaintiffs whose claims have been remanded to their home courts) shall be deemed to have "opted out" of the settlement, but (like the plaintiffs currently in this MDL) may still "*opt in*" to the settlement upon request *if* they wish to participate, consistent with the Settlement Agreement.

*Second*, Monsanto and Class Counsel should be enjoined from "challenging" opt-outs, or directing the Settlement Administrator to invalidate them. The potential for bad-faith and unreviewable challenges is too great, and the challenge right is unnecessary to assess intent.

*Third*, if the Court does not enjoin Monsanto and Class Counsel from challenging opt-outs, the Settlement Administrator should be ordered to publish the unspecified "procedures" that it follows "to receive information and evaluate such challenges" as may be brought. Ex. C, § 12(f). It should also be ordered to periodically report to this Court its compliance with this Court's orders.

*Fourth*, Monsanto, Class Counsel, and the Settlement Administrator should be enjoined from challenging or rejecting any opt out submission on any basis other than that it fails to express the individual party's desire to withdraw from the settlement or does not adequately identify the individual party opting out by stating the person's (1) name, (2) date of birth, (3) Social Security Number or in the alternative, Driver's License Number or other government-approved identification number, and (4) counsel's contact information (if represented) or claimant's home address, phone number, and email address (if not represented).[34] Additionally, any plaintiff who personally or through their counsel of record files a declaration in pending federal litigation stating that they are opting out of the settlement should be conclusively deemed to have opted out.

*Fifth*, Monsanto, Class Counsel, and the Settlement Administrator should be enjoined from directly or indirectly communicating with all absent class members known to be represented by counsel, since any requisite notices or other communications about their claims should be delivered to these litigants via their counsel of record.[35]

---

[34] Thus, opt-outs should not be invalidated based on technical noncompliance with such provisions as the wet signature requirement, the mass opt-out prohibition, failure to provide scanned copies of government identification, or failure to provide the certifications and declarations described in the settlement agreement.

[35] If this necessitates revisions of the notice process in the state court class settlement proceeding, the onus rests on Monsanto and class counsel to request changes that allow them to (attempt to) provide adequate notice to the proposed settlement class, while respecting the existing attorney-client relationships they have sought to disrupt.

### D.  The Traditional Requirements for Injunctive Relief Are Satisfied.

Plaintiffs are likely to succeed on the merits of their requests for relief, as set forth above. The *King* Proposed Settlement terms at issue would interfere significantly with federal Roundup plaintiffs' rights as well as this Court's jurisdiction. The foregoing discussion also establishes that, if relief is not granted, the rights and interests of federal Roundup plaintiffs, as well as the Court's jurisdiction, would be irreparably harmed by this unwarranted interference. Absent relief, the state court-ordered 'opt-out' procedure could be weaponized as a tool for extinguishing viable federal lawsuits, on grounds and through procedures wholly unrelated to ascertaining plaintiffs' intent.[36]

The balance of equities weighs in favor of granting relief. Monsanto has no valid equitable interest in trapping people in a class that they wish to exit. Its interest in globally resolving its tort liability cannot outweigh the fundamental requirement that all affected class members receive due process protections. Nor can Monsanto rely on the costs associated with the hastily approved notice plan, where it chose to proceed despite having been placed on notice of these concerns through motions to intervene in the state-court settlement proceeding. *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F. 3d 978 (8th Cir. 2011) (harm that is "self inflicted" is entitled to less weight). And where a challenged practice is likely unconstitutional, the balance of equities favors injunctive relief still further. *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

The public interest weighs in favor of granting relief. This settlement threatens to close the courthouse doors to victims of dangerous products who suffered and suffer grave personal injury and/or death. Letting stand this abuse of the class action form, opt-out procedure, and state court forum-shopping would encourage countless imitators. *See Winkler*, 101 F.3d at 1203 ("where such

---

[36] Alternatively, the foregoing discussion establishes that a court declaration would resolve the legal relations at issue, and afford relief from the uncertainty, insecurity, and controversy described, by clarifying who is and is not in the class, and what procedures they must follow to avoid risking forfeiture of their federal cases. *Carroll Shelby Licensing, Inc.*, 138 F. 4th at 1189.

abuses exist, failure to issue an injunction may create . . . needless friction between state and federal courts") (internal quotation omitted). This would be a path for opportunist attorneys, who are strangers to litigation they did not develop, as well as corporate wrongdoers, seeking to stop the bleeding following numerous large plaintiffs' jury verdicts and hundreds of thousands of cases, to work out backroom class settlements that benefit only themselves at the expense of the class. Once attorneys' fees (mostly at the 40% rate by contract), litigation costs, and liens are deducted from the paltry values offered, it is possible, if not likely, the plaintiff victims may get nothing. More broadly, the settlement raises serious questions about the sanctity of the attorney-client relationship, given the settlement's incentives for attorneys to encourage their clients' participation in exchange for fees. The public interest is also ill-served by the breathtakingly broad class definition, which includes most Americans, and is designed to trap anyone who could sue Monsanto now or in the future. And this settlement, unlike the rejected 2021 settlement, does not even require Monsanto to notify future users of Roundup—either through labeling, the Bayer website, or advertising—that the International Agency for Research on Cancer and other scientific bodies conclude that Roundup is carcinogenic.

In sum, Plaintiffs request relief from this Court to protect their due process interests and other rights from a brazen effort to abuse legal process and our federal system.

## CONCLUSION

For the foregoing reasons, the Motion should be granted in its entirety. The Court should enter an appropriate order confirming that people with remanded federal cases are not part of the proposed class, and providing the relief requested in Section III.C above. Plaintiffs request a status conference to discuss issues related to the *King* Proposed Settlement, including the possible appointment of MDL counsel for the futures class and whether additional financial protections are needed for MDL litigants in light of Monsanto's claims of bankruptcy or insolvency risk.

-26-

DATED: April 8, 2026

Respectfully Submitted,

/s/ *Robin L. Greenwald*
Robin L. Greenwald (*pro hac vice*)
Robert J. Quigley (CA # 302879)
Chantal Khalil Levy (*pro hac vice*)
Emma Dietz (*pro hac vice*)
Alicia Butler (*pro hac vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
rquigley@weitzlux.com
ckhalil@weitzlux.com
edietz@weitzlux.com
abutler@weitzlux.com

*Co-Lead Counsel and Attorneys for Plaintiffs Jones and Schramm*

/s/ *David J. Dickens*
David J. Dickens (pro hac vice)
**THE MILLER FIRM LLC**
108 Railroad Avenue
Orange, VA 22960
Telephone: 540-672-4224
ddickens@millerfirmllc.com

*Co-Lead Counsel*

MOT. FOR RELIEF FROM STATE CLASS ACTION – *IN RE ROUNDUP PRODUCTS LIAB. LITIG.*, NO. 16-md-02741-VC