Gerson H. Smoger
**SMOGER & ASSOCIATES**
7080 Norfolk Street
Berkeley, CA 94705
510-531-4529
smogerlaw@gmail.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | |
| ALL ACTIONS | **BRIEF OF DEAN ERWIN CHEMERINSKY AND ANNE BLOOM AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF OR DECLARATORY RELIEF RELATED TO PROPOSED NATIONAL ROUNDUP SETTLEMENT** |
| *Jones v. Monsanto Co.,* 3:26-cv-01455 | |
| *Schramm v. Monsanto Co.,* 3:26-cv-01461 | Hearing Date: April 30, 2026 |
| | Hearing Time: 10:00 a.m. |

**TABLE OF CONTENTS**

INTEREST OF *AMICI CURIAE* ................................................................................................ 1

INTRODUCTION AND BACKGROUND ................................................................................ 2

ARGUMENT ............................................................................................................................. 3

    I.    We Address This Court Because, Either Now or Later, This Court Will Be Required to Rule on Implicated Rule 23 and Due Process Issues ......................................................... 3

    II.    The Settlement Violates Due Process as It Does Not Provide the Constitutionally Required Notice Due Process Demands ............................................................................. 6

    III.    "Futures" Plaintiffs Should Not Be Deemed Bound by the Settlement Because They Were Not Adequately Represented by a Settlement That Requires Them to Relinquish Their Punitive Damages Claims Without Any Corresponding Compensation ................ 10

CONCLUSION ......................................................................................................................... 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................... 7, 8

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) ...................................................................................................... 12

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................................................................... 9, 10

*In re Simon II Litig.*,
  407 F.3d 125 (2d Cir. 2005) .......................................................................................... 11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ........................................................................................................ 10

*Philip Morris USA v. Williams*,
  549 U.S. 346 (2007) ........................................................................................................ 11

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) .......................................................................................................... 4

*Plummer v. Chemical Bank*,
  668 F.2d 654 (2d Cir. 1982) ........................................................................................... 10

*Stephenson v. Dow Chemical Co.*,
  273 F.3d 249 (2d Cir. 2001), *aff'd in relevant part by an equally divided court*,
  539 U.S. 111 (2003) .................................................................................................. 4, 6, 7

**Statutes**

Mo. Ann. Stat. § 506.500 ....................................................................................................... 4

## INTEREST OF *AMICI CURIAE*[1]

*Amicus* **Dean Erwin Chemerinsky** is the Jesse H. Choper Distinguished Professor of Law and Dean at the University of California, Berkeley, where he teaches Constitutional Law and Federal Courts. He is the author of *Federal Jurisdiction* (Aspen Law & Business 7th ed. 2016), a one-volume treatise on the jurisdiction of the federal courts, as well as several books on constitutional law.

*Amicus* **Anne Bloom** is the Executive Director of the Civil Justice Research Initiative at Berkeley Law. She teaches and writes on civil procedure, complex litigation, and torts.

*Amici* have spent their careers in the preservation of the civil justice system, including the correct application of Rule 23, and making sure that Constitutional due process is a required element of civil practice.   It is our understanding that it is in these areas that this Court has asked for *amici* to weigh in regarding the proposed nationwide class action settlement of Roundup claims in *King v. Monsanto Co.*,[2] which is pending in the Circuit Court for the City of St. Louis. We appreciate that opportunity and would like to voice our concerns with that settlement on grounds of non-compliance with class action rules designed to protect class members.

---

[1] *Amici* certify that no person or entity, other than amici curiae and their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief, in whole or in part

[2] *King v. Monsanto Co.*, No. 2622-CC00325 (Cir. Ct. City of St. Louis, Mo. Mar. 4, 2026) (Preliminary Approval Order and Memorandum), Declaration of Robin L. Greenwald in Support of Mot. for Injunctive and/or Declaratory Relief (Greenwald Decl.), Exs. A & B, Dkt. 21962-2, 21962-3.

## INTRODUCTION AND BACKGROUND

To begin, the class definition for the "Settlement Class" is extremely broad, likely encompassing more than half of the United States population – hundreds of millions of people:

> (a) "Settlement Class" means those U.S. Persons who, prior to the Settlement Date, have been Exposed to one or more Roundup Product and who (i) Applied any Roundup Products; (ii) purchased or paid for any Roundup Products or for the Application of any Roundup Products; (iii) *participated in, directed, or saw the Application of any Roundup products*; or (iv) otherwise had reason to know of their exposure. The Settlement Claimants also includes Derivative Claimants of the foregoing individuals.

*King* Settlement Agreement, Greenwald Decl., Ex. C, Dkt. 21962-4, § 2.1(a) (emphasis supplied). This exposure includes dermal, inhalation, and ingestion. *Id.* at §1.1(50). The settlement class is then divided into two subclasses, with the membership in "Subclass 2," or the "futures" class, being "Settlement Class Members who have not been diagnosed with NHL as of the Preliminary Approval Date, and their Derivative Claimants." *Id.* § 2.2(b).

The *King* settlement therefore attempts to bind members of Subclass 2, including tens and probably hundreds of millions of individuals who have no present injury. Consider these examples of the breadth of this Subclass:  1)  an organic farmer works downwind from an industrial farm where Roundup is used; 2) a toddler daughter of a migrant farmworker whose father comes home with his clothes covered in Roundup from his work during the day; 3) a mother playing with her kids in her backyard who sees her neighbor using Roundup on his yard; or 4) a person whose only exposure to Roundup is eating food that contains glyphosate – the vast majority of food sold in the US contains glyphosate.[3] These countless millions of Subclass 2 members have a theoretical, and

---

[3] Carey Gillam, *'Disturbing': weedkiller ingredient tied to cancer found in 80% of US urine samples*, The Guardian (July 9, 2022), https://www.theguardian.com/us-news/2022/jul/09/weedkiller-glyphosate-cdc-study-urine-samples. A person who knew of the

illusory, right to opt out of a class action that they likely do not even know is pending, from a Subclass they likely do not know they are a part of, conditioned on them submitting personally intrusive paperwork (including a copy of their photo IDs) by June 4, 2026.

When a class is this amorphous, it is virtually certain to include (and terminate the rights of) a large number of people who do not even know they were exposed, certainly do not know the extent of their exposure and, by Subclass 2's definition, were unaware of any injury (because they had none) at the time they were required to opt out. Yet, beyond this, the putative settlement attempts to do something no other mass settlement for personal injuries has ever done – bind tens and possibly hundreds of thousands of individuals who have no present injury and then continue to expose them to the very product that has caused grievous injuries to their neighbors and people across the country, because pursuant to the settlement that product will remain on the market.

## ARGUMENT

I.   **We Address This Court Because, Either Now or Later, This Court Will Be Required to Rule on Implicated Rule 23 and Due Process Issues.**

Our first concern is why this proposed nationwide settlement was filed in in a state Circuit Court in St. Louis rather than in this MDL court, particularly given that this Court has presided over the nationwide litigation for a decade. In their papers filed in Missouri this  does not appear to have been explained  nor is it explained why the St. Louis City Circuit Court is being asked to approve a nationwide class settlement which includes the exclusion of "any person who, as of the Settlement Date, has a claim pending in … [the MDL]."

Putative Class Counsel seems not to have considered the fact that if the settlement is given

---

widespread use of glyphosate in farming and food production could arguably also have "reason to know of their Exposure," as required to be a settlement class member. Greenwald Decl., Ex. C, Dkt. 21962-4, § 2.1(a).

approval, this Court—and likely others around the country—will inevitably be asked to evaluate each of the necessary requirements articulated by the U. S. Supreme Court in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) (*Shutts*), *i.e.*, whether the class settlement provided Constitutionally adequate notice, putative class members with an opportunity to be heard, a Constitutionally adequate opportunity to opt out of the class, and adequate representation. 472 U.S. at 812–14. This is because, while putative Class Counsel and Defendant cite *Shutts* as the sole support for a state court to repackage a rejected federal nationwide class settlement of personal injury claims, they ignore its main holding.  A non-presiding  court is required to deny a collateral attack on a settlement and give *res judicata* effect to later efforts to bind people deemed class members only when required procedural safeguards have been built into the settlement and honored. Given the existence of this MDL, many future collateral attacks on the class settlement by non-Missouri state plaintiffs will likely be filed in state or Federal court by Subclass 2 members after they are diagnosed with NHL.  The majority of these will make their way to this transferee MDL court which will then require this Court to evaluate these collateral attacks. In doing so, this Court will inevitably be asked to evaluate the four factors articulated by *Shutts* in order to determine whether *res judicata* should be applied.[4]

For instance, the Second Circuit addressed the factors to consider as part of the *res judicata* evaluation of a class settlement in *Stephenson v. Dow Chemical Co.*, 273 F.3d 249, 251 (2d Cir. 2001), *aff'd in relevant part by an equally divided court*, 539 U.S. 111 (2003) (per curiam). In that

---

[4] Note that the only other clearly identified basis provided for the St. Louis City Circuit Court's jurisdiction is the Missouri Long-Arm Act, Mo. Ann. Stat. § 506.500. *See* Proposed Settlement Agreement, Greenwald Decl., Ex. C, internal Ex. 1.H, Dkt. 21962-4, at 8. But this is inapplicable as the statute states that it does not apply to jurisdiction over plaintiffs: "Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

4

case, two veterans commenced separate state-law actions based on allegations that they were exposed to Agent Orange during the Vietnam War, both of whom filed cases long after a broad settlement agreement was reached in a Rule 23(b)(3) class action based on "virtually identical" allegations. *Id.* at 251–52, 255–56. That agreement purported to resolve the claims of individuals who had been exposed to Agent Orange but had not yet manifested injuries. *Id.* at 252. The veterans were exposed to Agent Orange but developed cancer over a decade after the settlement of Agent Orange claims was finalized. Nevertheless, their cases were filed in Louisiana and New Jersey as collateral attacks on the Agent Orange settlement after which both cases were transferred by the Judicial Panel on Multidistrict Litigation to the MDL court in the Eastern District of New York where the class action settlement had been adjudicated. *See id.* at 256.

Although the Second Circuit concluded that the two veterans, Stephenson and Isaacson, fit within the broad definition of the settlement class membership, the court granted their collateral attack and concluded that res judicata would not apply, meaning they were still free to pursue their cases:[5]

> Second, the propriety of a collateral attack such as this is amply supported by precedent. In *Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940), the Supreme Court entertained a collateral attack on an Illinois state court class action judgment that purported to bind the plaintiffs. The Court held that class action judgments can only bind absent class members where "the interests of those not joined are of the same class as the interests of those who are, and where it is considered that the latter fairly represent the former in the prosecution of the litigation." *Id.* at 41, 61 S. Ct. 115; *cf. Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 805, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) ("[I]t is true that a court adjudicating a dispute may not be able to predetermine the res judicata effect of its own judgment."). Additionally, we have previously stated that a "[j]udgment in a class action is not secure from collateral attack unless the absentees were adequately and vigorously represented." *Van Gemert v. Boeing Co.,* 590 F.2d 433, 440 n. 15 (2d Cir.1978); *aff'd* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).

---

[5] Note that counsel for *amici* argued this case in the Second Circuit and at the U.S. Supreme Court.

Allowing plaintiffs' suit would be consistent with many other circuit decisions recognizing the ability of later plaintiffs to attack the adequacy of representation in an earlier class action. For example, the Fifth Circuit holds:

> To answer the question whether the class representative adequately represented the class so that the judgment in the class suit will bind the absent members of the class requires a two-pronged inquiry: (1) Did the trial court in the first suit correctly determine, initially, that the representative would adequately represent the class? and (2) Does it appear, after the termination of the suit, that the class representative adequately protected the interest of the class? The first question involves us in a *collateral review* of the ... [trial] court's determination to permit the suit to proceed as a class action with [the named plaintiff] as the representative, while the second involves a review of the class representative's conduct of the entire suit — an inquiry which is not required to be made by the trial court but which is appropriate in a collateral attack on the judgment....

*Gonzales v. Cassidy,* 474 F.2d 67, 72 (5th Cir.1973); *see also Williams v. Gen. Elec. Capital Auto Lease, Inc.,* 159 F.3d 266 (7th Cir.1998) (addressing due process considerations of prior class action settlement on collateral attack); *Twigg v. Sears, Roebuck & Co.,* 153 F.3d 1222, 1226 (11th Cir.1998) ("Before the bar of claim preclusion may be applied to the claim of an absent class member, it must be demonstrated that invocation of the bar is consistent with due process, and an absent class member may collaterally attack the prior judgment on the ground that to apply claim preclusion would deny him due process."); *Crawford v. Honig,* 37 F.3d 485, 488 (9th Cir.1994) (finding that when absent class members were not adequately represented in a post-settlement modification of a class-wide injunction, "res judicata did not bar them from collaterally attacking the [modification] proceedings") (citation omitted).

*Stephenson*, 273 F.3d at 258–59. The conclusion here is, regardless of whether the Missouri Circuit Court approves the settlement, there will almost certainly be future plaintiffs who collaterally attack the settlement and that attack is likely to be in this federal Court or transferred to this Court. As a result, this Court will then be faced with the same questions as to collateral review that the *Stephenson* court faced.

## II.    The Settlement Violates Due Process as It Does Not Provide the Constitutionally Required Notice Due Process Demands.

At bottom, this settlement constitutes an effort to do something the Supreme Court warned

6

against almost thirty years ago – bind a huge, amorphous class of absent plaintiffs whose only present connection to the matter is that they were exposed (even unknowingly) to a toxic product. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 628 (1997). The parallels between *Amchem* and this case are striking. *Amchem* involved a proposed global settlement seeking to resolve both current and future asbestos-related claims. 521 U.S. at 597. There, like here, the courts faced what was described as a "flood of lawsuits" when the "exposure inflicted upon millions of Americans … began to take [its] toll." *Id.* at 598 (quoting Report of The Judicial Conference *Ad Hoc* Committee on Asbestos Litigation 2-3 (Mar. 1991)). Furthermore, asbestos-related diseases, just like NHL here, have a "latency period," such that "a continuing stream of claims c[ould] be expected," and the "final toll of … related injuries [wa]s unknown." *Id.*

There, like here, seeking to terminate individual rights of an exposure-only plaintiff based on a class-action notice is difficult if not impossible to do. As this Court observed when it rejected the prior attempted Roundup class action settlement, it is extremely difficult if not impossible to provide adequate "class notice that is mostly by advertisement for a massive, diffuse, and largely transient population of people who have not gotten sick and may not even know of their exposure, and therefore have no immediate interest in putting considerable effort into educating themselves on an exceedingly complex settlement agreement." PTO 235, Dkt. 13115, at 5. In *Stephenson*, although the Second Circuit relied on other parts of Rule 23 to hold that the plaintiffs were not bound by the prior settlement, the Court of Appeals also believed that the plaintiffs "likely received inadequate notice" of the class action settlement because "*Amchem* indicates that effective notice could likely not ever be given to exposure-only class members." 273 F.3d at 261 n.8, referring to Justice Ginsburg's opinion that: "The Court recognizes, however, the gravity of the question whether class-action notice sufficient under the Constitution and Rule 23 could ever be given to

legions so unselfconscious and amorphous as the class certified by the District Court." *Amchem* at 628.

There are many reasons for this. First, it is not fair to assume that someone without a present injury would even attend to the kind of notice that a class action typically provides, which is something *Amchem* itself recognized. Then, again recognized by *Amchem*, even if one assumes that the best notice imaginable actually reaches each class member, it is still unreasonable to assume that each class member who does not yet have a diagnosed injury will be able to make an intelligent decision whether to preserve or give up their rights rather than defaulting into doing nothing at all. *Amchem*, 521 U.S. at 628 ("Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to … opt out."); PTO 235, Dkt. 13115, at 5. Finally, the fact that Roundup is continuing to be sold on the market would decrease the likelihood that anyone without NHL would consider the settlement something to act on for the future or that Roundup is sufficiently dangerous to be worth the time and effort to opt out (especially given the onerous and personally intrusive opt-out provisions of this settlement) even if they somehow did see the notice.

Second, let's assume something that is patently implausible – that every class member receives a notice but, by definition, none of these class members have NHL. Can they be in the position to evaluate whether to participate in the class in the same manner that current claimants can? Clearly, the seriousness of their disease (and there are many forms of NHL with different severities) would affect whether they would accept the provided compensation, but they cannot know that key fact at the time when they are obligated to make an opt-out decision that will deprive them of the right to pursue a punitive damages recovery. To know how valuable a claim for punitive damages might be, class members would have to know how serious their illness would

be, which of course they cannot know when they are not yet sick.  Third, all of this assumes that many members of the amorphous class will actually be able to comprehend the settlement notice and that it will be seen and understood by members of Subclass 2. But this seems unlikely.  For instance, migrant farmers are a huge part of the exposure-only class. Many do not speak English, some cannot read, while others are their children or other exposed minors without manifested NHL. How could they possibly be aware of the settlement and then opt out?  How could the many minors that also seem to be included in Subclass 2 be required to opt out?

Further, Subclass 2 also extinguishes the rights of all derivative claimants – described as "spouses, parents, children, or any other individuals who properly under applicable state law have or assert a right to maintain a Roundup Claim … independently or derivatively by reason of their relationship with a Settlement Class Member, including a deceased Settlement Class Member." Greenwald Decl., Ex. C, Dkt. 21962-4, § 1.1(38). But they have no ability to opt out or even persuade others to do so. Spouses may not have married yet; children may be unborn. Without a present, legally cognizable relationship with a Class Member, they cannot even influence the person who does have the power to opt out now and determine the future of their claims. As a result, they are just another group of potential claimants engulfed by the settlement, along with its punitive damages waiver.

Finally, even after going through the exercise of determining to opt out, this settlement adds one more hurdle to this process by making it arduous, particularly for futures, to go through the gauntlet of requirements in order to exercise their due process rights. "Notice and an opportunity to be heard [are] fundamental requisites of the constitutional guarantee of procedural due process." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974). To satisfy due process, "notice must be 'reasonably calculated, under all circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections.'" *Id*. (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). But, under the terms of this settlement, it is clearly impossible for many class members to have this opportunity. *Plummer v. Chemical Bank*, 668 F.2d 654, 657 n. 2 (2d Cir. 1982) (class members must be provided an opportunity to express a "reasonable indication of a desire to opt out").

Instead of attempting to avail Class Members of a meaningful right to opt out, the opt-out conditions of this settlement, described in detail by Article XII of the Settlement Agreement and criticized in MDL Co-Lead Counsel's motion, are draconian. Any reasonable review of the settlement's multi-step and personally intrusive opt-out process, particularly considering the future claimants in Subclass 2, leads to the conclusion that few if any will run this gauntlet by June 4, 2026 when they have no present injury, do not know if they ever will have a compensable injury, and might not even know the severity of their exposure to Roundup, or, as in the class definition here, whether they were even "Exposed," which they must attest to in order to opt out.

**III.    "Futures" Plaintiffs Should Not Be Deemed Bound by the Settlement Because They Were Not Adequately Represented by a Settlement That Requires Them to Relinquish Their Punitive Damages Claims Without Any Corresponding Compensation.**

Putative class counsel and Defendant state that Claimants are adequately represented because they will be permitted to "opt out at the back end" – Settlement Agreement, Proposed Final Order and Judgment, Greenwald Decl., Ex. C, internal Ex. 1.H, Dkt. 21962-4, at ¶ 18 – thus retaining their right to bring suit for compensatory damages after being diagnosed with NHL. Still, all "exiting class members," as the settlement describes Class 2 members exercising this back end opt-out right, permanently lose their right to sue for punitive damages. But this Court has already rejected a  prior attempt to extinguish these same rights of post-settlement NHL claimants to pursue punitive damage recoveries: "This means, the attorneys imply, that relinquishing the ability to seek

punitive damages at trial is no big deal. Surely counsel must know that this misses the most important issue, which is that class members, by waiving punitive damages, would be greatly diminishing the future *settlement value* of their claims." Pretrial Order No. 235: Denying the Motion for Preliminary Approval, Dkt. 13115 (N.D. Cal. May 26, 2021).  As this Court has already concluded, a settlement that purports to extinguish class members' rights in this way raises serious questions about the adequacy of the settlement.

Indeed, this settlement offers class members even less than the settlement this Court rejected in 2021.In the 2021 proposed class settlement agreement, "future" class members were offered a medical monitoring program in exchange for extinguishing their rights. The *King* Proposed Settlement does not even offer that or seemingly anything else in exchange for the diminution of the future settlement value of their claims. Indeed, in requiring the waiver of all rights to punitive damages against Monsanto on behalf of the members of Subclass 2, the settlement proponents make no effort whatsoever to account for the value of the claim which the class is giving up. *See In re Simon II Litig.*, 407 F.3d 125, 127–28 (2d Cir. 2005) (where the Second Circuit vacated the settlement class because no attempt was made to value what class members were giving up). Here, future class members are getting nothing in exchange for giving up their right to sue for punitive damages.[6]

As this Court has noted, future opt-outs *have* punitive damages claims that have been very successful for Roundup plaintiffs in the past. Punitive damages should "properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *Philip Morris USA v. Williams*, 549 U.S. 346, 352 (2007); *BMW of N. Am., Inc. v. Gore*, 517 U.S.

---

[6] Additionally, future class members (like present class members) would be releasing dozens of corporate affiliates and other entities that they never sued. Greenwald Decl., Ex. C, Dkt. 21962-4, §§ 1.1(100)–(101), 3.1.

11

559, 568 (1996). To date, multiple juries have awarded significant punitive damages against Defendant for its conduct, finding that Monsanto's malicious misconduct regarding Roundup warranted such punishment and deterrence. *See* PTO No. 160 Granting in Part and Denying in Part Monsanto's Motion for Judgment as a Matter of Law on Punitive Damages; Denying Monsanto's Motion for a New Trial on Compensatory Damages, Dkt. 4576 (N.D. Cal. Jul. 15, 2019), at 4–5 (finding that an award of punitive damages in the *Hardeman* trial was reasonable "because the evidence easily supported a conclusion that Monsanto was more concerned with tamping down safety inquiries and manipulating public opinion than it was with ensuring its product is safe").

Further, to date nothing indicates that exposure to compensatory liability has "deterred" Monsanto from continuing the misconduct creating that liability. To the contrary, despite prior verdicts adjudging Roundup as the cause of victims' cancers, Monsanto has continued manufacturing and selling Roundup with glyphosate, and it still does not in any way inform users that Roundup exposure causes cancer. And now, Monsanto's attempt to enter into this settlement while continuing its sales unabated constitutes a mere cost of doing business while being protected from even "unknown" conduct worthy of punishment. Far from being deterred, Monsanto enters into this "settlement" as a path to *continue* its malicious conduct, gutting the value of claims against it by people it may even continue to injure in the future.

In fact, exposure-only class members are better off with no settlement at all. They are well protected  if by their right (and strong incentive) they find their own attorney and prosecute their high-value claims after they get sick, particularly given that they do not hold the type of low-value claims that are more efficiently prosecuted through aggregation. When they are diagnosed with NHL in the future, they will also be armed with evolving science developed in the interim which is increasingly confirming the carcinogenicity of Roundup. Finally, unlike in typical consumer

12

class actions, these "future" plaintiffs are not at risk of losing their claims entirely due to a statute of limitations defense, because they have not yet manifested an injury.

## CONCLUSION

The proposed *King* class settlement is non-compliant with class action rules designed to protect class members, and violative of the U.S Constitution.

*Amici* believe that this Court should grant the injunctive and/or declaratory relief that movants requested, while also considering the issues we raise as part of this Court's decade-long management of the MDL and oversight particularly of those "future" class members designated to be part of Subclass 2.

Dated: April 16, 2026                        Respectfully submitted,

                                             /s/ *Gerson H. Smoger*
                                             Gerson H. Smoger
                                             **SMOGER & ASSOCIATES**
                                             7080 Norfolk
                                             Berkeley, CA 94705
                                             510-531-4529
                                             smogerlaw@gmail.com

                                             *Counsel for Amici Curiae*

13

## CERTIFICATE OF SERVICE

I hereby certify that service of this document was accomplished pursuant to the Court's electronic filing procedures by filing this document through the ECF system.

/s/ *Leslie A. Brueckner*
Leslie A. Brueckner

14