Corrie Yackulic (WA Bar No. 16063)
CORRIE YACKULIC LAW FIRM, PLLC
110 Prefontaine Place S. Ste. 304
Seattle, WA 98104
Telephone: 206-787-1915
corrie@cjylaw.com
*Counsel for Amici Curiae*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| This document relates to: | Case No. 16- md-02741-VC |
| ALL ACTIONS | BRIEF OF AMICI CURIAE CONSUMER AND CLASS ACTI\|ON LAW SCHOLARS IN SUPPORT OF MDL CO-LEAD PLAINTIFFS' JOINT MOTION FOR INJUNCTIVE RELIEF OR DECLARATORY RELIEF RELATED TO PROPOSED NATIONAL ROUNDUP SETTLEMENT |
| Jones v. Monsanto Co., 3:26-cv-01455 | |
| Schramm v. Monsanto Co., 3:26-cv-01461 [As to Argument Part III] | Hearing Date: April 30, 2026 Hearing Time: 10:00 a.m. |

## TABLE OF CONTENTS

I.      INTEREST OF AMICI CURIAE..............................................................................1

II.     SUMMARY OF THE ARGUMENT ....................................................................2

III.    ARGUMENT.........................................................................................................3

      A. Notices incorporated in solicitations to settle which seriously misrepresent settlement imperatives deprive plaintiffs of due process rights and produce voidable agreements...................................................................................................3

      B. Where terms of a proposed settlement are structured to reward attorneys who discourage opting out of settlements, injunctive or declaratory relief is warranted.....................................................................................................................5

      C. Procedures which enable defendants to inhibit opt-outs are unfair to plaintiffs and undermine access to federal court...........................................................................7

      D. Unreasonable caps on the recovery of damages and bars to punitive damages warrant injunctive or declaratory relief.....................................................................9

IV.     CONCLUSION...................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*AmChem Products, Inc. v. Windsor*, 117 S.Ct. 2231 (1997) ........................................................ 10

*Amos v. Monsanto Co.*, 20SL-CC-03676 (Mo. Cir. Ct. Jan. 30, 2026) ........................................ 4

*Bates v. Dow Agrosciences*, LLC, 544 U.S. 431, 444 (2005)...................................................... 4

*Devlin* v. *Scardelletti*, 536 U.S. 1, 122 S.Ct. 2005 (2002)......................................................... 7

*Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021)........................................................ 10

*Hardeman v. Monsanto Co.*, No. 3:16-cv-00525 (N.D. Cal.)....................................................... 4

*In re Roundup Products Liability Litigation*, MDL No. 2741, 541 F.Supp.3d 1004 (2021).... 4, 10

*Johnson v. Monsanto Co.*, CGC-16-550128 (Super. Ct. Ca., San Francisco Cnty.) ..................... 4

Jordan v. Knafel, 378 Ill. App. 3d 219, 880 N.E.2d 1061, 1069, 317 Ill. Dec. 69 (Ill. App. 1st
    Dist. 2007).............................................................................................................................. 5

*King v. Monsanto Co.*, No. 2622-CC00325 (Cir. Ct. City of St. Louis, Mo.)....................... passim

*Monsanto Co. v. Durnell*, 2026 U.S. LEXIS 703 ................................................................... 3, 4

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 2974 (1985) ........................... 7

*Pilliod v. Monsanto Co.*, No. RG-17-862702 (Super. Ct. Ca., Alameda Cnty.)............................ 4

**Rules**

F.R.C.P. 23.............................................................................................................................. 5, 11

Model Rules of Professional Responsibility § 1.7........................................................................ 7

Model Rules of Professional Responsibility § 5.6........................................................................ 7

**Treatises**

Elizabeth Chamblee Burch and Abbe R. Gluck, Plaintiffs' Process: Civil Procedure, MDL, and a
    Day in Court, 42 Rev. Litig. 225 (2023)................................................................................ 9

Elizabeth Chamblee Burch, Diversity in MDL Leadership: A Field Guide, 89 UMKC L. Rev.
    841 (2021)............................................................................................................................... 8

Elizabeth Chamblee Burch, Monopolies in Multidistrict Litigation, 70 *Vanderbilt Law Review* 67
    (2017)....................................................................................................................................... 6

Howard M. Erichson & Ethan J. Lieb, Class Action Settlements as Contracts?, 102 N.C. L. REV.
    73 (2023)................................................................................................................................. 5

Sandra R. Bullington, 1 Business Torts § 9.07 (2026) ................................................................. 5

Silber, Ayers, and Scullion, The New Jersey Consumer Fraud Act (2026) ............................. 5

## I.   INTEREST OF AMICI CURIAE

Amicus Norman I. Silber is the Andrew M. Boas and Mark L. Claster Professor of Civil Procedure at Hofstra University.  He is the author of NEW JERSEY CONSUMER FRAUD ACT: PRACTICE AND PROCEDURE (LexisNexis, 2026) (with Christopher Ayers and Jennifer Scullion). For fifteen years he served as a director of Consumers Union, the publisher of *Consumer Reports* magazine.  He is a past chair of the Association of the Bar of the City of New York Consumer Affairs Committee and a past director of the American Council on Consumer Interests. He has written and taught consumer law at Hofstra, Yale and Columbia, and his articles have appeared in leading journals.[1]

Amicus Myriam Gilles is the Catharine Waugh McCulloch Professor of Law at Northwestern Pritzker School of Law.  She has written and taught extensively on class actions, multidistrict litigation, mandatory arbitration, and access to justice.

Amicus Jeff Sovern is the Michael Millemann Professor of Consumer Law at the University of Maryland School of Law, and teaches Civil Procedure, Consumer Protection, and Payment Systems.  He is the author of CONSUMER LAW: CASES AND MATERIALS (5th ed. 2020) (with Dee Pridgen & Christopher L. Peterson) and CONSUMER LAW: SELECTED CONSUMER STATUTES (2019 ed.) (with Dee Pridgen & Christopher L. Peterson), and of many articles in the field of consumer law; he is co-editor of the *Consumer Law & Policy* blog.  He is a fellow of the American College of Consumer Financial Services Lawyers.

Amici are concerned that without the relief requested by applicants in the Joint Motion, cancer victims pursuing remedies in this Multi-District Litigation and victims who might otherwise

---

[1] Professor Silber's wife is a non-Hodgkin lymphoma survivor who could be affected by the litigation.

AMICUS BRIEF OF CLASS ACTION LAW SCHOLARS – IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION NO. 16-MD-02741-VC
PAGE-1

seek redress in future multi-district and class litigation of all sorts will suffer serious harm from (1) defective class notices; (2) attorneys with perverse incentives to advise clients to participate in the proposed settlement notwithstanding unfavorable terms; (3) unfair procedural terms allowing defendants to exert control over who is able to litigate and who cannot litigate through the MDL; and (4) unreasonable caps on the recovery of damages and barriers to punitive damages for future parties who are yet to manifest injuries.

## II.   SUMMARY OF THE ARGUMENT

Lawyers representing thousands of cancer victims have spent years litigating their clients' claims against Monsanto in the Multi-District Litigation in this Court.  Approximately 4,500 cases are currently pending in this MDL.[2]  A self-selected group of plaintiff's lawyers privately negotiated a nationwide class action settlement with Monsanto and its German parent, Bayer, outside the MDL process, bypassing other attorneys representing plaintiffs with active cases in the MDL.  The motion for preliminary approval of the proposed nationwide class action settlement was filed in Missouri state court on February 17, 2026, and was granted preliminary approval less than two weeks later, on March 4, 2026, as *King v. Monsanto Co*., No. 2622-CC00325 (Cir. Ct. City of St. Louis, Mo.) ("*King* Proposed Settlement").  The Missouri court gave consideration to a large volume of material in a very short time and did not allow disinterested counsel to intervene during those two weeks.  There were no adversarial challenges — plaintiffs' counsel supporting the settlement filed the motion, and all counsel of record supported approval.  Approval came notwithstanding that the notices encouraging settlement contain serious misrepresentations; that the terms of the proposed settlement are structured to discourage plaintiff's attorneys from advising

---

[2] MDL Statistics Report - Distribution of Pending MDL Dockets by Actions Pending (1/5/26) https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Actions_Pending-January-5-2026.pdf

AMICUS BRIEF OF CLASS ACTION LAW SCHOLARS – IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION NO. 16-MD-02741-VC
PAGE-2

against accepting the proposed settlement; and that the procedures established permit defendants to inhibit opt-outs and unreasonably cap the recovery of punitive damages. Absent injunctive or declaratory action by this Court, the rights and obligations of certain plaintiffs with claims pending in the MDL are at risk of being affected adversely by the proceedings in the *King* case, which purports to set an opt-out deadline of June 4, 2026.

## III.    ARGUMENT

### A. Notices incorporated in solicitations to settle which seriously misrepresent settlement imperatives deprive plaintiffs of due process rights and produce voidable agreements.

The *King* Settlement Notice preliminarily approved by the Missouri court justifies the tight opt-opt out deadline by reference to a presumed imperative: it indicates that the injury lawsuits against Monsanto are on the verge of being "wiped out" by the pending Supreme Court case, *Monsanto Co. v. Durnell*,[3] which could decide that FIFRA, a federal pesticide registration statute, preempts state law actions based on the duty of sellers to warn of risks.[4] The Settlement Notice effectively warns claimants to accept "half a loaf" rather than none, declaring that "Class Counsel and the Class Representatives recommend this settlement because of several major risks that could result in [a class member] getting zero money if the lawsuits continue[.]" It goes on, stating that the Supreme Court could decide in *Monsanto Co. v. Durnell*, No. 24-1068, "that federal law prevents (preempts) most of these lawsuits entirely because the EPA has approved Roundup's labels."[5]

---

[3] *Monsanto Co. v. Durnell*, 2026 U.S. LEXIS 703.
[4] *See* proposed Notice to class members, *King* Proposed Settlement Agreement, including the proposed Notice to class members (Exhibit 1.E to the Agreement), is filed in this Court as Exhibit C to the Declaration of Robin Greenwald in Support of Joint Motion of MDL Co-Lead Counsel and Wave 10 Plaintiffs, Dkt. 21962-1 (Greenwald Decl.) and 21962-4 (Ex. C to Greenwald Decl.) (Apr. 8, 2026). The Notice to class members, Ex. 1.3 to the Agreement, is at p. 164 of 234. The cited text, above, is at p. 169 of 234.
[5] *See id.* (Ex. 1.E to *King* Proposed Settlement Agreement).

AMICUS BRIEF OF CLASS ACTION LAW SCHOLARS – IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION NO. 16-MD-02741-VC
PAGE-3

This rationalization is a misleading scare tactic.  Even a Supreme Court decision in Monsanto's favor will leave in place other causes of action asserted by Roundup plaintiffs.[6]  The question presented in *Durnell* addresses only label-based failure-to-warn claims and does not affect non-label-based failure-to-warn claims, or design defect, negligence, or breach of warranty claims.[7] The Supreme Court in 2005 expressly held that design defect, defective manufacture, negligent testing, and breach of express warranty claims are not pre-empted by FIFRA.  Missouri courts themselves have already rejected Monsanto's stay motions premised on the grant of certiorari in *Durnell* as being "without merit."[8]  Furthermore, when presented with a similar proposed settlement class in 2021, this Court observed that the motion for preliminary approval contained no meaningful analysis of the litigation risks class members would face absent a settlement.[9]  The proposed Class Notice in *King* does not explain why claims based on other theories will fail in the absence of failure to warn claims.[10]

Principles enshrined in class action law and contract law dictate that the misrepresentations of fact and unfounded assertions contained in the notices undermine any presumption of enforceability which would attach to an otherwise enforceable class settlement.  First, a notice that misrepresents material facts about the value of claims does not constitute adequate notice under

---

[6] *See, e.g.*, *Johnson v. Monsanto Co.*, CGC-16-550128 (Super. Ct. Ca., San Francisco Cnty.) (fraudulent testing and failure to warn); *Hardeman v. Monsanto Co*., No. 3:16-cv-00525 (N.D. Cal.); *Pilliod v. Monsanto Co*., No. RG-17-862702 (Super. Ct. Ca., Alameda Cnty.) (design defect and failure to warn).

[7] *See* the Supreme Court's Certiorari List, Durnell ("The petition . . . is limited to the following Question: Whether the Federal Insecticide, Fungicide, and Rodenticide Act preempts a label-based failure to warn claim where EPA has not required the warning."); *Bates v. Dow Agrosciences*, LLC, 544 U.S. 431, 444 (2005).

[8] *Amos v. Monsanto Co*., 20SL-CC-03676 (Mo. Cir. Ct. Jan. 30, 2026).

[9] *In re Roundup Products Liability Litigation*, MDL No. 2741, 541 F.Supp.3d 1004 (2021).

[10] *See* Footnote 4, *supra* (proposed Class Notice, Ex. 1.E to *King* Proposed Settlement).

AMICUS BRIEF OF CLASS ACTION LAW SCHOLARS – IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION NO. 16-MD-02741-VC
PAGE-4

Rule 23 of the Federal Rules of Civil Procedure.[11]  Second, class action settlement agreements are contracts, and in most jurisdictions, agreements induced by misrepresentation are voidable by the injured party.[12]

The June 4, 2026 opt-out deadline, furthermore, prevents cure of these misrepresentations. Given the deadline, individual recission actions are unrealistic.  The absence of an effective remedy at law and the necessity to undo the settlement due to the absence of an adequate remedy provides an adequate basis for this MDL court to intervene; this court possesses inherent supervisory authority over proceedings that affect its jurisdiction.

The Court accordingly should grant the injunctive relief requested by the petitioners or declare that decisions to join the settlement induced by the Proposed *King* Settlement Notice may be deemed voidable, and that the Court itself may, as part of the MDL process, evaluate the facts and circumstances surrounding the plaintiffs' decisions and the deadlines established to determine whether they effectively preclude litigation.

**B. Where terms of a proposed settlement are structured to reward attorneys who discourage opting out of settlements, injunctive or declaratory relief is warranted.**

Three sub-sections in Section 15 ("Attorneys' Fees") of the Proposed *King* Settlement[13] substantially and improperly steer plaintiffs' attorneys toward recommending the Settlement and discouraging opt-outs notwithstanding their clients' best interests.

---

[11] *See* F.R.C.P. 23(c)(2)(B) and 23(e) (notice must provide accurate, clear, and concise information to enable class members to make informed decisions about opting out or objecting).

[12]  Howard M. Erichson & Ethan J. Lieb, Class Action Settlements as Contracts?, 102 N.C. L. REV. 73 (2023); Jordan v. Knafel, 378 Ill. App. 3d 219, 880 N.E.2d 1061, 1069, 317 Ill. Dec. 69 (Ill. App. 1st Dist. 2007) (fraud in the inducement of a contract is a defense that renders the contract voidable at the election of the injured party); Sandra R. Bullington, 1 BUSINESS TORTS § 9.07 (2026); *see also* Silber, Ayers, and Scullion, THE NEW JERSEY CONSUMER FRAUD ACT (2026).

[13] *See* Footnote 4 *supra*.  The Settlement Agreement is filed in this Court as Ex. C to the Greenwald Dec., Dkt. 21962-1 (Decl.); Dkt. 21962-4 (Settlement Agreement). Section 15 of the Agreement is at pp. 67-70 of 234.

Section 15.4 ("Allocation and Reporting")[14] instructs the court to give "significant weight" to the extent the attorney has "caused a detriment to the Settlement Class by continuing to represent or participate in the representation of Opt Outs."  An attorney who represents more than 25 opt-outs is categorically ineligible for any fee allocation.  Read alongside Section 15.7, discussed below, this means that attorneys are subjected by the Proposed *King* Settlement not only to the "carrot" of fee eligibility but the "stick" of reputational and judicial sanction for representing non-settling clients.

Section 15.6 ("Eligibility")[15] of the Proposed *King* Settlement states that no attorney — including class counsel — may receive any allocation of fees unless they represent in writing that they "believe the Settlement Agreement to be fair" and have made or will make "best efforts to recommend" it to their clients.  An attorney who honestly believes the settlement is inadvisable for a particular client faces an unpalatable choice: recommend it and get paid or advise against it and forfeit fees entirely.  This inverts the standard contingent fee model where attorney recovery rises alongside client recovery.[16]

Section 15.7 ("Certification")[17] provides that in any fee distribution an attorney must certify that they have "no present intent to represent or participate in any representation outside of the framework of this Settlement" with respect to Roundup claims — including representation of opt-outs.  The only exception is up to 25 "pre-existing clients" who opt out over the attorney's recommendation.  An attorney who represents even 26 opt-outs loses all fees — creating an overwhelming financial incentive to abandon non-settling clients.  Section 15.7(c) obligates

---

[14] *Id.*, at p. 68 of 234.

[15] *Id.* at p. 69 of 234.

[16] *See generally* Elizabeth Chamblee Burch, Monopolies in Multidistrict Litigation, 70 *Vanderbilt Law Review* 67 (2017).

[17] Proposed *King* Settlement at p. 69 of 234.

attorneys to certify that they have not and will not share expert reports or litigation work product with counsel representing opt-outs or excluded plaintiffs.

Collectively, the settlement agreement provisions concerning fees align the interest of attorneys advising plaintiffs with the interest of the defendants promoting the proposed settlement and reduce the prospects for a fairer settlement within the MDL process.  The Court accordingly should protect its jurisdiction by enjoining Monsanto from enforcing Sections 15.4, 15.6, and 15.7 as conditions of fee eligibility pending a fairness hearing, or a declaration that those provisions are unenforceable because they are contrary to attorney's professional duties under the Rules of Professional Conduct.[18]

### C. Procedures which enable defendants to inhibit opt-outs are unfair to plaintiffs and undermine access to federal court.

The law insists that plaintiffs be allowed to opt out of class action litigation, but the Proposed *King* Settlement creates a procedural gauntlet which must be overcome in order to opt-out.[19]  Among the extraordinary obstacles is a feature providing that after a putative class member has exercised his or her right to opt-out, Monsanto and Class Counsel can "challenge" any and all submissions without notice to the putative class member or the right to cure defects.[20]

At least as objectionable as the challenge provision is the "clawback" provision.  Under Section 5.1, once there are more than 650 opt-outs, Monsanto receives "Payment Credits" — dollar-for-dollar reductions in the settlement fund — for each opt-out who files suit.  If an opt-

---

[18] *See* Model Rules of Professional Responsibility (MRPC) §§ 5.6 (a)(2) (personal conflict of interest); 1.7 (restrictions on right to practice as part of settlement).

[19] *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 2974 (1985) (opt-out right is constitutionally grounded); *Devlin* v. *Scardelletti*, 536 U.S. 1, 122 S.Ct. 2005 (2002) (opt-out rights can't be impaired by settlement terms).

[20] Proposed *King* Settlement, §12.2 (Ex. C to Greenwald Dec., Dkt. 21962-4), at pp. 62-63 of 234.

out's case enters active discovery, the credit doubles (Section 5.1(d)); if the case progresses to within 90 days of trial, the credit increases to six times the base amount (Section 5.1(e)).[21]

Similarly, Section 5.2 awards Monsanto a credit of 1.25 times the rejected award for any Award Rejection beyond the first 500, rising to 3.75 times if the rejector's case reaches trial. Up to $400 million can be deducted, and as more plaintiffs opt-out, less will be available to the settlement class. Under this arrangement, every person who exercises the right to opt out takes money from remaining class members. The six-fold credit for cases approaching trial, furthermore, means that a lawyer who takes an opt-out client to trial isn't just giving up fees —she is draining the fund for the rest of the class. Pressure against trying cases consequently will be applied by other lawyers who rely on the fund for compensation.[22]

In addition to a provision allowing the defendants to abandon the deal if too few plaintiffs participate, the payment credit provisions continuously drain the settlement fund as class members exercise their legal rights. Every opt-out who pursues litigation — which is supposed to be their unimpeded right — financially penalizes the class members who remain. This creates structural pressure on class counsel to discourage opt-outs and award rejections, aligning lead lawyers' financial interests (they get paid from what remains in the fund) with Monsanto's interest in closure. Finally, Section 12.5 adds a conventional walkaway right: Monsanto may terminate the entire agreement in its sole discretion before the fairness hearing if it is dissatisfied with the opt-out count — with a threshold that is apparently stated in confidential Exhibit I.[23]

---

[21] *Id.*, §5, at pp. 32-34 of 234.
[22] *See generally* Elizabeth Chamblee Burch, Diversity in MDL Leadership: A Field Guide, 89 UMKC L. Rev. 841 (2021), Part III (discussion of structuring settlements to benefit insiders).
[23] Proposed *King* Settlement Agreement, §12.5 (Ex. C to Greenwald Dec., Dkt. 21962-4), at pp.64-65 of 234.

AMICUS BRIEF OF CLASS ACTION LAW SCHOLARS – IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION NO. 16-MD-02741-VC
PAGE-8

The Court should not tolerate an arrangement under which each individual's exercise of their due process right is detrimental to the class and to the collection of attorney fees, and for a simple reason: the obvious effect of the arrangement will be to obstruct individuals in the exercise of their constitutionally-protected opt-out rights.

The Proposed *King* Settlement's design aligns the interest of attorneys advising plaintiffs with the interest of the defendants. The prospects for a fairer settlement within the MDL process are correspondingly diminished. In light of the counseling bias induced by these provisions, the Court should protect its jurisdiction by enjoining enforcement of the challenge, clawback, and walkaway provisions pending a fairness hearing or, in the alternative, declare that those provisions are unenforceable as against the plaintiffs' constitutionally protected opt-out rights. [24] The Court should evaluate the facts and circumstances under which plaintiffs join the settlement and settlement deadlines to determine whether they effectively preclude litigation within the MDL process.

**D. Unreasonable caps on the recovery of damages and bars to punitive damages warrant injunctive or declaratory relief.**

What happens to people who used Roundup but have not yet been diagnosed and therefore have no immediate reason to pay attention to a medical settlement? Subclass 2 members (the undiagnosed) must opt out before they know they have been harmed. The FAQ notice tellingly leads with benefits for people already diagnosed with NHL.[25] An undiagnosed Roundup user who sees the notice, decides it is not relevant to them, and ignores it will be bound by the settlement — including the punitive damages waiver — if they later develop NHL.

---

[24] *See generally* Elizabeth Chamblee Burch and Abbe R. Gluck, Plaintiffs' Process: Civil Procedure, MDL, and a Day in Court, 42 Rev. Litig. 225 (2023),
[25] Proposed *King* Settlement Agreement, §11.1–11.3 (Ex. C to Greenwald Dec., Dkt. 21962-4), at pp. 61-62 of 234, and Ex. 1.E thereto. p. 165 of 234.

The Missouri court's approval (¶¶ 8-10 of the Preliminary Approval Order[26]) simply asserts adequacy without grappling with this problem by requiring separate representation for differently situated subclasses when interests diverge.[27]  Named plaintiffs are incapable of waiving punitive damages on behalf of absent class members whose claims have not yet accrued.[28]

This Court, evaluating a previous proposed Roundup class settlement, identified the blanket waiver of punitive damages as an unreasonable sacrifice for class members who have not yet been diagnosed with non-Hodgkin lymphoma.[29]  This is a deficiency that has grown ever more severe as Monsanto has continued to sell Roundup without a meaningful safety warning, and punitive damages awards in cases at trial have been substantial.  One award cited provided $20 million in punitive damages on approximately $5.3 million in compensatory damages, a nearly 4:1 ratio, confirmed as constitutional by the Ninth Circuit.[30]

The *King* Proposed Settlement only partially addresses the concern about the sacrifice of damages by future victims.  Subclass 2 members (those not yet diagnosed with NHL) who opt out of the claims program and file suit retain compensatory damages claims but still permanently waive punitive damages under Section 31 of the settlement notice.  Members who become "Exiting Class Members" and receive a payment date but never receive payment before the fund runs out are to receive $500 and the right to sue for compensatory damages but also are permanently denied the right to seek punitive damages.  This Court's previously expressed concern applies with full force to the *King* Proposed Settlement: what is essentially a shut-out is an unjustifiable benefit passing from unfortunately undiagnosed victims to a solvent, continuing wrongdoer.

---

[26] Ex. A to Greenwald Dec., Dkt. 21962-2 (Preliminary Approval Order in *King*, Mar. 4, 2026).

[27] *See AmChem Products, Inc. v. Windsor*, 117 S.Ct. 2231 (1997).

[28] *Id*.

[29] *In re Roundup Products Liability Litigation*, 541 F. Supp. 3d 1004 (N.D. Cal. 2021) (Dkt. 12531).

[30] *Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021).

## IV.   CONCLUSION

Notices incorporated in the Proposed *King* Settlement seriously misrepresent settlement imperatives, violating Rule 23 and producing voidable agreements to join the class.  The Court accordingly should grant the injunctive or declaratory relief requested by the petitioners deciding that as part of the MDL process it will evaluate the facts and circumstances of agreements to settle to determine whether they preclude litigation effectively.

The Settlement Proposal is structured to reward attorneys who discourage opting out of settlements, reducing the prospects for a fairer settlement within the MDL process.  The Court accordingly should protect its jurisdiction by enjoining Monsanto from enforcing Section 15.4, 15.6, and 15.7 as conditions of fee eligibility pending a fairness hearing or by declaring that those provisions are unenforceable because they run contrary to attorneys' professional duties under the Rules of Professional Conduct.

The procedures embodied in the Settlement Proposal enable defendants to inhibit opt-outs, are unfair to plaintiffs, and undermine access to federal court. The Court accordingly should protect its jurisdiction by enjoining enforcement of the knockout, clawback, and walkaway provisions pending a fairness hearing, or in the alternative, declare those provisions unenforceable as against the plaintiffs' constitutionally protected opt-out rights.

Unreasonable caps on the recovery of damages and bars to future claimants' ability to seek punitive damages, furthermore, warrant injunctive or declaratory relief to satisfy fundamental concerns of fairness to parties who were inadequately represented by class representatives at the time of the approval of the settlement.

Finally, permitting the unmodified proposed settlement to procced would incentivize the continuing commercialization of poisonous products subsequent to the settlement.  If this court

AMICUS BRIEF OF CLASS ACTION LAW SCHOLARS – IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION NO. 16-MD-02741-VC
PAGE-11

abides the Proposed *King* Settlement without taking injunctive or declaratory action, the well-developed jurisprudence of other toxic-tort multi-district litigation is likely to be circumvented in future cases, supplanting well-reasoned precedent and specialized federal courts.

Dated: April 16, 2026                    Respectfully submitted,

*/s/ Corrie J. Yackulic*
Corrie J. Yackulic
Corrie Yackulic Law Firm PLLC
110 Prefontaine Place S. Ste. 304
Seattle, WA 98104
Tel. 206-787-1915
corrie@cjylaw.com
*Counsel for Amici Curiae*[31]

---

[31] Amici curiae are the sole authors of this brief. Counsel for amici discloses that she is counsel for other Plaintiffs in Roundup litigation, including in this MDL. No person or entity, including amici curiae and their Counsel, made a monetary contribution to the preparation or submission of the brief.

AMICUS BRIEF OF CLASS ACTION LAW SCHOLARS – IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION NO. 16-MD-02741-VC
PAGE-12