David F. Engstrom (SBN 314688)
Phillip R. Malone (SBN 163969)
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 721-5859
Facsimile: (650) 725-0253
dfengstrom@law.stanford.edu
pmalone@law.stanford.edu

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 2741 |
| | Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO: | **BRIEF OF PROFESSOR DAVID FREEMAN ENGSTROM AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF OR DECLARATORY RELIEF RELATED TO PROPOSED NATIONAL ROUNDUP SETTLEMENT** |
| Jones v. Monsanto Co., 3:26-cv-01455 | |
| Schramm v. Monsanto Co., 3:26-cv-01461 | Hearing Date: April 30, 2026 |
| | Hearing Time: 10:00 a.m. |

Case No. 3:16-md-02741

Brief of Professor David Freeman Engstrom as Amicus Curiae

**INTEREST OF AMICUS CURIAE**

Professor David Freeman Engstrom is the LSVF Professor of Law and Co-Director of the Deborah L. Rhode Center on the Legal Profession at Stanford Law School.[1] He teaches and writes on civil procedure and complex litigation, among other topics. He has spent much of his career working to improve the workings of the civil justice system, including ensuring that civil practice comports with Constitutional due process and Rule 23.

**INTRODUCTION**

Amicus writes in response to this Court's direction in its April 10, 2026, Order (Dkt. 21963) requesting argument, including amicus briefing, on what action, if any, the Court might take in response to the class action settlement in *King v. Monsanto Co.*, No. 2622-CC00325 (Mo. Cir. Ct. Feb. 17, 2026) ("Missouri Settlement").

Amicus submits this brief to address two related issues that may prove helpful to the Court. *First*, Amicus writes to draw attention to the similarities between the Missouri Settlement and the proposed class settlement that this Court rightly rejected in 2021 ("2021 Settlement Proposal") and, further, to note that the Missouri Settlement is no less intolerable as a matter of due process. *Second*, and relatedly, Amicus writes to urge this Court, consistent with the April 8, 2026 filing by MDL Co-Lead Counsel and Wave 10 Plaintiffs Jones and Schramm (Dkt. 21962), to use its authority under the All Writs Act to protect against encroachments on its jurisdiction. At the least, this Court should appoint counsel or a special master to ensure full ventilation of the rights and interests of the futures plaintiffs as defined in the Missouri Settlement who, upon falling ill and filing suit, would otherwise come within the MDL over which this Court presides.

---

[1] Professor Engstrom makes this submission as an amicus curiae and was not compensated for its preparation. However, he previously represented, and was compensated by, objectors to the 2021 Settlement Proposal. *See* Dkts. 12677 & 13026. In addition, he was previously compensated for consulting services by Roundup MDL Leadership relating to proceedings before the Missouri state courts.

2

## I.    *Plus Ça Change*: The Missouri Settlement and the 2021 Settlement That This Court Rightly Rejected

Evoking a John Grisham novel, the sequence of events that produced the Missouri Settlement may in time prove to be a hinge moment in the history of the class action: a cherry-picked jurisdiction that was previously anathema to the defendant; non-publicized and lightning-fast preliminary approval hearings; a you-can-just-object-later approach (even as a large-scale notice program was set into motion) that could not be more different from this Court's careful up-front vetting of the 2021 Settlement Proposal; and rapid-fire, summary decisions up the appellate ladder. An observer with any notion of the usual, slow-and-steady cadence of litigation of this magnitude and complexity would be forgiven for thinking that the fix was in on the Missouri Settlement from the start.

But that's only background. The more immediate concern is that the Missouri Settlement—and, in particular, the "futures class" that is Subclass 2—is intolerable as a matter of due process. In that regard, it is little different from the 2021 Settlement Proposal that this Court found "clearly unreasonable" (Dkt. 12531).

To begin, the notice program laid out in Article XI of the Missouri Settlement, like the 2021 Settlement Proposal, plainly fails under bedrock principles of due process. Nearly thirty years ago, the U.S. Supreme Court in *Amchem* warned against precisely what the Missouri Settlement purports to do: bind a huge, sprawling, and hard-to-identify class, a large portion of whom are exposure-only plaintiffs who have not yet manifested any cognizable physical injuries. In particular, the Supreme Court expressed concern about "whether class action notice sufficient under the Constitution and Rule 23 could ever be given to legions so *unselfconscious and amorphous*" as exposure-only plaintiffs. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 628 (1997) (emphasis added).

The Missouri Settlement embodies the Supreme Court's constitutional and Rule 23 concerns. As a practical matter, futures class members will be bound to the settlement because they lack any realistic incentive to consume the complex information needed to make an informed decision about this deal—forged in a jurisdiction they've never visited, before a judge they've never met, for a disease they don't yet have, from their exposure to a chemical they probably can't pronounce. *See Amchem*, 521 U.S. at 628 ("Even if they fully appreciate the significance of class notice, those without current

3

afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out."); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 633–634 (3d Cir. 1996) (doubting the adequacy of the notice because it will not lead to a "reasoned decision").

Running through the case law since *Amchem* set forth these principles is a straightforward legal proposition: Grave constitutional doubt hovers over any effort to bind absent, future-injury class members to a class settlement unless one of two special conditions obtains. First, a court might permit a settlement to bind absent, exposure-only class members if the class is especially discrete, identifiable, or otherwise cohesive—such that class counsel can furnish some measure of individualized notice to absent class members. The best example is the *NFL Concussion* case and its readily identifiable, cohesive, and, indeed, even close-knit, community of plaintiffs. *See In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 385 (E.D. Pa. 2015). More of a stretch, but still qualifying in the eyes of some, is *Diet Drugs*, with a plaintiff class made up largely of middle-class female dieters, each of whom had been prescribed the medication, yielding a paper trail of scripts and, where it did not, a mostly educated and eminently reachable plaintiff group. *See In re Diet Drugs*, Nos. 1203 & 99-20593, 2000 WL 1222042, at *36 –39 (E.D. Pa. Aug. 28, 2000). Second, a special condition might exist if class members enjoy a fully unfettered back-end opportunity to opt out. *See generally* Dkt. 13026 (elaborating these principles).

The Missouri Settlement, however, certainly doesn't satisfy the first condition. The futures class members are the very picture of a sprawling, undefined, and incohesive group.

Nor does the Missouri Settlement satisfy the second condition. Of particular concern is the back-end opt-out provision in Section 8.2 of the Missouri Settlement, which permits a class member who did not opt out at the front-end to exit the class, but at a steep price: the waiver of punitive damages. That waiver undermines the only settlement leverage that a Roundup user now suffering from NHL can bring to the settlement table. Worse, the payment priority rules for awards means that many plaintiffs will simply be out of luck. For class members whose NHL diagnoses come after the end of the payment period, there will be nothing from which to opt out. Only a hobbled tort action, which no plaintiffs' attorney would seriously entertain, will remain.

4

To be sure, certain details of the settlement are different this time round. The Missouri Settlement avoids one obvious defect that marred the 2021 Settlement Proposal. Gone is the baffling Science Panel that didn't do any actual science. Other details of the Missouri Settlement, however, are demonstrably worse than its 2021 cousin. Among other infirmities, the Notice Program, attached to the Missouri Settlement as Exhibit 1.E, ¶ 7, at 6, misrepresents the potential implications of *Monsanto Co. v. Durnell*, 2026 WL 120678 (U.S. 2026), soon to be argued before the United States Supreme Court, suggesting that the case could "decide that federal law prevents (preempts) most of these lawsuits entirely because the EPA has approved Roundup's labels. If this happens, most claims would be dismissed."[2]

However one views these differences, the overall result is the same: Like the rejected 2021 Settlement Proposal, the Missouri Settlement, if finally approved, would be a historic outlier: a unique, and uniquely flawed, settlement with no analog in the annals of mass torts. No previous class settlement has released the unmanifested personal injury claims of an unselfconscious and amorphous population whose exposures to a dangerous product are continuing to occur. And no other class settlement has released punitive damages claims relating to a dangerous product that is still on the market.

---

[2] This assertion is false. In reality, a finding by the U.S. Supreme Court that the Federal Insecticide, Fungicide, and Rodenticide Act pre-empts failure-to-warn claims against Monsanto would still leave negligence, design defect, negligent misrepresentation, fraud, and appropriate warranty claims. *Cf.* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.12, at 249 (stating that, when providing notice, the party seeking class certification "may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class"). Further, if one cedes his or her right to sue based on the receipt of false information, that's a due process problem. *See* 1 MCLAUGHLIN ON CLASS ACTIONS § 5:78 (22nd ed. 2025) ("Due process requires that the right to opt out is an individual one which must knowingly be exercised on a class-member-by-class-member basis."). Finally, these *Durnell*-related concerns have implications well beyond the futures class. The notice program for the Missouri Settlement will be extensive, and its misrepresentations about *Durnell* will be indiscriminately broadcast to the world and could cause real mischief with attorney-client relationships and would-be filers. This Court has inherent authority to protect the due process rights of litigants within the MDL to ensure that they are not induced to cede their rights based on the provision of materially false information, even if that information has been blessed by a Missouri judge. *See Belt v. Emcare*, Inc., 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003) ("Courts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit.").

5

## II. This Court Should, at the Least, Appoint Counsel or a Special Master to Protect the Interests of the Futures Class

Given the compressed timeframe for this filing, issues regarding the All Writs Act or other authority this Court might invoke to protect against encroachment on its jurisdiction must be left to other briefing, including Co-Lead MDL Counsel and the Wave 10 Plaintiffs. For now, the urgent course of action for this Court to take is to appoint, without delay, counsel or a special master to provide argument to the Court regarding those individuals who are simultaneously encompassed by the Missouri Settlement's futures class and also could potentially file cases that would come within the Roundup Products Liability Litigation MDL. There is real urgency here, for the ranks of individuals exposed to Roundup prior to the February 17, 2026 date of the Missouri Settlement who are subsequently diagnosed with NHL will only grow with time.

## III. Conclusion

For all these reasons, Amicus fully supports the suggestion by Co-Lead MDL Counsel and the Wave 10 Plaintiffs that this Court appoint counsel or a special master to ensure full consideration of the futures issues affecting thousands and potentially millions of people nationwide.

Dated: April 16, 2026

Respectfully submitted,

 */s/ Phillip R. Malone*
Phillip R. Malone
David F. Engstrom
559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 725-6369
pmalone@law.stanford.edu

6

## CERTIFICATE OF SERVICE

I hereby certify that service of this document was accomplished pursuant to the Court's electronic filing procedures by filing this document through the ECF system.


*/s/ Phillip R. Malone*
Phillip R. Malone

Brief of Professor David Freeman Engstrom as Amicus Curiae        Case No. 3:16-md-02741