Robin L. Greenwald (*pro hac vice*)
Robert J. Quigley (CA Bar No. 302879)
Chantal Khalil Levy (*pro hac vice*)
Emma Dietz (*pro hac vice*)
Alicia Butler (*pro hac vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
rquigley@weitzlux.com
ckhalil@weitzlux.com
edietz@weitzlux.com
abutler@weitzlux.com

David J. Dickens (*pro hac vice*)
**THE MILLER FIRM LLC**
108 Railroad Avenue
Orange, VA 22960
Telephone: 540-672-4224
ddickens@millerfirmllc.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | |
| ALL ACTIONS | **REPLY BRIEF OF MDL CO-LEAD COUNSEL AND WAVE 10 PLAINTIFFS JONES AND SCHRAMM IN FURTHER SUPPORT OF MOTION FOR INJUNCTIVE RELIEF OR, IN THE ALTERNATIVE, DECLARATORY RELIEF RELATED TO PROPOSED NATIONAL ROUNDUP SETTLEMENT** |
| *Jones v. Monsanto Co.,* 3:26-cv-01455 | |
| *Schramm v. Monsanto Co.,* 3:26-cv-01461 | |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 3

    I.    Plaintiffs and Amici Have Blown the Whistle on Deep Flaws in the Settlement, but the Motion Seeks Narrow Relief from Its Opt-Out Provisions Specifically .... 3

    II.    The Narrow Relief Plaintiffs Request Is Well Within This Court's Authority Over Cases and Parties Before It ...................................................................................... 5

    III.    The Court Has Jurisdiction to Protect Remanded Cases ........................................ 7

    IV.    The Anti-Injunction Act Does Not Bar the Relief Sought by Plaintiffs ................. 8

        A.    The AIA Does Not Apply Because Plaintiffs Are "Strangers" to the *King* Case. ...................................................................................................................... 8

        B.    If the AIA Applies, It Allows Relief from Interference with the Court's Jurisdiction ...................................................................................................... 9

        C.    The AIA Does Not Constrain Some or All Requested Declaratory Relief..... 11

    V.    Plaintiffs Have Shown That the Requested Relief Is Warranted .......................... 12

    VI.    Proponents Are Subject to the Court's Supervisory Authority............................. 15

CONCLUSION................................................................................................................ 15

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*AmerisourceBergen Corp. v. Roden*,
495 F.3d 1143 (9th Cir. 2007) ................................................................................................... 11

*Atl. Coast Line R. Co. v. Locomotive Eng'rs*,
398 U.S. 281 (1970) ................................................................................................................... 9

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ................................................................................................................... 15

*H.J. Heinz Co.* v. *Owens*,
189 F.2d 505 (9th Cir. 1951) ................................................................................................... 11

*Hanlon v. Chrysler Corp.*,
150 F. 3d 1011 (9th Cir. 1998) ................................................................................................... 9

*Imperial Cnty. v. Munoz*,
449 U.S. 54 (1980) ................................................................................................................. 2, 8

*In re Bard IVC Filters Prod. Liab. Litig.*,
81 F.4th 897 (9th Cir. 2023) .................................................................................................. 6, 8

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
134 F.3d 133 (3d Cir. 1998) ................................................................................................... 10

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006) ................................................................................................... 7

*In re Roundup Prods. Liab. Litig.*,
544 F. Supp. 3d 950 (N.D. Cal. 2021) ....................................................................................... 6

*Jorgensen v. Cassiday*,
320 F.3d 906 (9th Cir. 2003) ..................................................................................................... 7

*Malliotakis v. Williams*,
607 U.S. __, 146 S. Ct. 809 (2026) ............................................................................................ 9

*Melendres v. Skinner*,
113 F.4th 1126 (9th Cir. 2024) .................................................................................................. 6

*Monster Beverage Corp.* v. *Herrera*,
650 F. App'x 344 (9th Cir. 2016) ............................................................................................ 11

*Munoz v. County of Imperial*,
  667 F.2d 811 (9th Cir. 1982) ................................................................................................ 8

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  523 F.3d 1091 (9th Cir. 2008) ......................................................................................... 6, 10

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................................................. 9

*Prudential Real Estate Affs., Inc. v. PPR Realty, Inc.*,
  204 F.3d 867 (9th Cir. 2000) ................................................................................................ 8

*Winkler v. Eli Lilly & Co.*,
  101 F.3d 1196 (7th Cir. 1996) ......................................................................................... 7, 10

**Statutes**

28 U.S.C. § 1407 ...................................................................................................... 6, 7, 15

28 U.S.C. § 1651 ......................................................................................................... 6, 15

28 U.S.C. § 2201 ............................................................................................................ 6

28 U.S.C. § 2283 ............................................................................................................ 8

**Other Authorities**

Manual for Complex Litigation (Fourth) (2004) ........................................................................ 15

MDL Co-Lead Counsel and Wave 10 Plaintiffs Joseph Jones and Glenn Schramm (collectively, "Plaintiffs") respectfully submit this reply brief in further support of their Motion for Injunctive or Declaratory Relief Related to the Proposed National Roundup Settlement ("Mot."). This brief is accompanied by the supporting declarations of Robin L. Greenwald ("Greenwald Decl.") and Professor Judith Resnik ("Resnik Decl.") and exhibits thereto.

## INTRODUCTION

Plaintiffs' Motion seeks narrow, protective relief from the severely deficient opt-out procedures of a proposed class action settlement filed in Missouri state court in the matter of *King v. Monsanto Co.*,[1] which threaten to extinguish federal Roundup lawsuits without due process.[2]

The Opposition jointly filed by Monsanto and Class Counsel ("Proponents"), Dkt. 21985, does not refute or even address the core problem from which Plaintiffs seek relief. The *King* proposed settlement would include in the class people with lawyers and existing cases, including some federal lawsuits in or formerly in the MDL. To opt out, these people must submit eleven items, many of which are not only unrelated to identity or a desire to opt out, but are unclear in what is required to comply. *See* Mot. at 17–20. There is no right to cure deficiencies, though Proponents appear to have belatedly adopted insufficient and non-binding curing procedures. *See infra* Section V. And Proponents have consistently taken the position—including as recently as this week—that opt-out requests do not vest until after the deadline to opt out has passed, subject to a further, unreviewable challenge by Proponents themselves. Greenwald Decl., ¶ 9 & Ex. E; *see* Mot. at 20–21. These procedures fly in the face of basic due process rights guaranteed to plaintiffs before this Court, remanded from this Court, and who will be before this Court.

---

[1] No. 2622-CC00325 (Mo. Cir. Ct. City of St. Louis Feb. 17, 2026).

[2] Amici raise due process, fairness, and other important issues that they ask the Court to review. Co-Lead Counsel agree with all their concerns and that this Court has authority to address them.

The right to opt out protects plaintiffs from flawed settlements. As presently written, this settlement is not favorable for many federal (and state) court plaintiffs. *See* Mot. at 2–9. The opt-out provisions are designed and destined to trap people in a settlement they seek to exit (or might not know they need to exit and are trapped in by default).  Fundamentally, if the settlement was as good as they claim, Monsanto and Class Counsel would not have designed an opt-out program so intentionally onerous and difficult to get right, with no right to correct before the deadline to opt out.

The potential for abuse is obvious. Rejecting an opt-out snuffs out a viable lawsuit, liquidating Monsanto's damages to orders of magnitude less than the exposure it could face at trial. Under the terms of the settlement, an undisclosed number of opt-outs could cause the deal to fall apart. *See* Mot. at 19–20. One hopes that everyone will do the right thing. Perhaps the actions that Plaintiffs have taken will nudge them in that direction. But this is a situation that urgently calls for this Court's oversight, before and not after this opt-out process has concluded.

Proponents claim this Court lacks power to grant relief, which they say would amount to federal interference with a state proceeding, prohibited by the Anti-Injunction Act and otherwise. Opp. at 7–18. This is wrong: it is the state court that has, with Proponents' encouragement, interfered with these existing federal proceedings, rather than the reverse, possibly overstepping its jurisdiction. *See* Resnik Decl. ¶¶ 32–36. This Court has statutory and inherent authority to protect federal cases in and remanded from the MDL. *See infra* Parts II–III. The Anti-Injunction Act is inapplicable because Plaintiffs are "strangers" to the *King* proceeding. *See Imperial Cnty. v. Munoz*, 449 U.S. 54, 59–60 (1980). Even if it applied, Plaintiffs seek narrow relief from an interference with their rights and this Court's jurisdiction that the Anti-Injunction Act does not bar. *See infra* Part IV. The Court also has authority to require Proponents to address still-unanswered questions regarding the *King* proceedings, the threat of a Monsanto bankruptcy, and the treatment of futures plaintiffs.

## **ARGUMENT**

**I.**      **Plaintiffs and Amici Have Blown the Whistle on Deep Flaws in the Settlement, but the Motion Seeks Narrow Relief from Its Opt-Out Provisions Specifically.**

Co-Lead Counsel filed the first Roundup case in 2015 in federal court. For ten years, we have worked diligently to uphold our responsibilities to this MDL. We were instrumental in discovery and the *Daubert* rulings that resulted in the successes of Roundup trials and settlements and that made this class action substantively possible. And while it is accurate that most cases are now in state courts, that has never, and does not today, alter Co-Lead Counsel's responsibilities to this Court and the attorneys representing Roundup clients in this MDL. Continuing through today, Co-Lead Counsel assist MDL counsel firms with questions regarding MDL rules and procedures, as well as providing assistance in preparing their cases in the wave process and, in recent days, responding to attorneys seeking advice about the *King* class settlement, including the opt-out rules.

Proponents nonetheless accuse Co-Lead Counsel of engaging in a "baseless smear campaign" for raising concerns about the proposed settlement, and falsely insinuate that they have done so merely for counsel's personal gain, as something akin to 'professional objectors' who seek to hold a class settlement hostage to extract a lucrative side deal. Opp. at 24–25. Co-Lead Counsel's legitimate concerns leap from the plain language of the proposed settlement and the history of its adoption, see Mot. at 2–9, which Proponents conspicuously fail to address. Contrary to Proponents' public position, to the extent Monsanto appears to have bought silence from some law firms by extending more favorable terms than they would receive through the *King* settlement, that shows not the reasonableness of the settlement, but rather, its unreasonableness and unfairness.[3]

---

[3] The Opposition trumpets the support of the Wagstaff Firm, formerly the third Co-Lead Counsel, as evidencing "broad-based support among the firms handling a large majority of the Roundup litigation." Opp. at 4–5. That firm was a part of the group that raised serious concerns about the proposed settlement in the Missouri proceedings. *See* Greenwald Decl. i/s/o Mot., ¶ 14. The firm then reversed course and said it would be pushing its clients to remain in the class resolution, without

Co-Lead Counsel seek relief from certain oppressive and unconstitutional features of the settlement that impact past, present, and future MDL plaintiffs, because this Court appointed them as Leadership to advocate for all MDL plaintiffs. The Amici whose participation the Court has invited raise a number of significant additional concerns surrounding the *King* settlement, including: (i) the lack of adequate notice or protections for people who may develop cancer in the future caused by Roundup exposure, (ii) misleading class notice, (iii) attorney's fee terms that reward attorneys who pressure clients not to opt out, and (iv) lack of transparency surrounding the threat of a Monsanto bankruptcy used to justify the proposed settlement value.[4]

The relief sought in the Motion is narrow, but important: ensuring that people who want to opt out of the settlement can do so, and creating such safeguards as are necessary for this purpose.[5] Monsanto and the settlement administrator continue, as recently as this week, to take the position that the validity of an opt-out cannot possibly be ascertained until after the opt-out period has closed, subject to further challenges by Monsanto and Class Counsel and with no opportunity to cure any purported deficiency or appeal after the opt-out deadline. *See* Greenwald Decl. Ex. B & E. This scheme threatens to trap the unwary (and even those who believe they got it right). That must change.

Undoubtedly, lawyers and clients—whom the Opposition treats like so many feudal serfs, pledged to follow the direction of their possibly conflicted law firm-lords[6]—should be free to disagree with Co-Lead Counsel's assessment of the *King* settlement, or to conclude that the benefits

---

any changes being made to the settlement. Seeger Decl., Dkt. 21986, Ex. 5. And this is just one of several firms who have had a similar, unexplained change of position.

[4] *See*, *e.g.*, FarmSTAND Amicus Br., Dkt. 21974; Chemerinsky and Bloom Amicus Br., Dkt. 21976; Consumer and Class Action Law Scholar Amicus Br., Dkt. 21977; Class Member Fred Birner Amicus Br., Dkt. 21978; Engstrom Amicus Br., Dkt. 21979.

[5] Plaintiffs reserve all rights to seek such further relief as may be warranted.

[6] Some of these firms may have literally pledged fealty to the *King* settlement, or may plan to do so as a condition of receiving attorney's fees. Mot. at 6; Scholars' Amicus Br., Dkt. 21977, at 5–7.

outweigh the problems. What cannot be permitted is a scheme that encourages disregarding or pretextually rejecting opt-outs without protections or recourse. Mot. at 17–22.

Plaintiffs have suggested a menu of forms of relief intended to achieve this goal. Mot. at 22–23. These include converting federal plaintiffs from "opt out" to "opt in" class members; barring Proponents' challenges to opt-outs; supervising the settlement administrator; prohibiting the invalidation of opt-outs based on purported technical errors; and requiring that communications be routed through counsel. *Id.* Plaintiffs are open to such other solutions as the Court may direct. Ideally, the parties could agree to a binding, on-the-record resolution by consent. That has not happened yet.

Proponents warn that granting any relief whatsoever threatens to "jeopardize [the] settlement," Opp. at 1, 25, and allude to provisions that they say will leave the settlement intact so long as "no court tries to change the Settlement's terms." *Id.* at 3 (citing Settlement Agreement §§ 21.1, 27.12).[7] These provisions allow, but do not require, Proponents, "in their individual discretion exercised in good faith," to terminate the agreement if a court modifies it, "unless such modifications are acceptable to the Parties in their individual discretion." *Id.* § 21.1. It is unclear why protecting opt-outs—who have a constitutional due process right to exit a settlement they do not want to be a part of, *see* Mot. at 16–17—should be so materially unacceptable as to jeopardize the settlement.

## II.    The Narrow Relief Plaintiffs Request Is Well Within This Court's Authority Over Cases and Parties Before It.

Proponents fundamentally misconstrue Plaintiffs' request as one that asks the Court to "assume plenary authority over the Settlement, to issue orders changing its terms, and to dictate to the Missouri Court how to implement and review it." Opp. at 7. This is backwards: it is the *King*

---

[7] Proponents also disclose that "Monsanto will be bound by the terms of the Settlement regardless of what the Supreme Court may decide in *Durnell*." Opp. at 3. Plaintiffs welcome this binding judicial admission, which goes farther than Monsanto or Bayer have in any past public statement of which counsel is aware, including in the settlement notice. *See* Mot. at 7 & n.15.

court that adopted wholesale an order, drafted by Monsanto and Class Counsel, which would interfere with federal cases. It is within this Court's purview to take action to protect federal Roundup cases that are currently in, have issued from, or will be in, the MDL, and the Court's own jurisdiction, from such interference. Plaintiffs are not asking this Court to "solve every problem or imperfection imaginable relating to mass tort litigation," Opp. at 8 (quoting *In re Roundup Prods. Liab. Litig.,* 544 F. Supp. 3d 950, 963, 968 (N.D. Cal. 2021)), or to supervise the *King* court, but rather to exercise its authority over cases and parties before it. *See* 28 U.S.C. §§ 1407, 1651, 2201.

Federal courts' "inherent power is codified in the All Writs Act, 28 U.S.C. § 1651(a), which provides that '[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *Melendres v. Skinner*, 113 F.4th 1126, 1132–33 (9th Cir. 2024) (cleaned up); *see Forbes Media LLC v. United States*, 61 F.4th 1072, 1074 (9th Cir. 2023) (the All Writs Act empowers courts to "issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders [they have] previously issued") (citing *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977)); Resnik Decl. ¶¶ 41–44 (discussing All Writs Act authority).

Relief from deficient opt-out procedures would at once protect federal litigants while upholding this Court's jurisdiction and prior orders. Mot. at 21. Any injunction would run not against the *King* court, but against Monsanto and those acting in concert with it. *Id.* at 11–12. And declaratory relief concerning the rights or classification of federal plaintiffs, or the process due to opt-outs, would be even more confined than a formal injunction. *See infra* Section IV.C. The Court has expansive "authority to regulate the conduct of the MDL parties and MDL counsel," which extends outside the formal bounds of the MDL "even where such regulation affects the interests of others." *In re Bard IVC Filters Prod. Liab. Litig.*, 81 F.4th 897, 907 (9th Cir. 2023) (citation omitted).

This Court can properly exercise this authority to protect federal cases.[8]

## III.   The Court Has Jurisdiction to Protect Remanded Cases.

For the same reasons, the relief the Motion seeks as to cases remanded from the MDL is within this Court's authority. Plaintiffs are not asking the Court to conduct "further proceedings" of the kind that a remand order returns to a transferee court. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006); 28 U.S.C. § 1407(a). Rather, they are asking the Court to exercise its ongoing statutory and "equitable power, after remand, to interpret the scope and protect the integrity of orders it issued while in charge of the consolidated lawsuits." *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 n.5 (7th Cir. 1996). Plaintiffs do not believe that the Court, in its orders remanding for trial mature federal cases that have withstood summary judgment and specific causation challenges, intended for those cases to be sent into a surprise state-court settlement class from which failing to exit has summary judgment-like dispositive effect, exiting is hard and lacks basic due process protections, and Monsanto can challenge opt-outs with no right to cure.

The simplest way to effect both the intent of the remand orders and the likely intent of federal plaintiffs whose cases have made it that far, particularly given the ambiguous language of the *King* settlement,[9] is to deem the remanded federal cases "opt-ins" similar to cases within the MDL, eligible to participate in the class action if they act affirmatively. *See* Mot. at 14–15. At a minimum, remanded plaintiffs should receive the same opt-out protections that this Motion seeks. None of these

---

[8] Proponents request that a bond be posted pending appeal if relief is granted. Opp. at 25 n.11. "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Proponents would not suffer cognizable "harm" if they are required to lawfully honor opt-outs. To the extent the Court agrees, any bond should be de minimis.

[9] Proponents state that they have taken corrective action and now intend to provide individualized notice to federal plaintiffs whose classification Plaintiffs aver is unclear, whom Proponents now claim have always been unambiguously a part of the settlement class. Opp. at 19–20.

fixes would require conducting ongoing proceedings, but could be accomplished by regulating the conduct of MDL parties and counsel, *Bard*, 81 F.4th at 907, issuing declaratory relief, or both.

**IV.      The Anti-Injunction Act Does Not Bar the Relief Sought by Plaintiffs.**

Proponents argue that the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283, bars this Court from providing the relief requested by Plaintiffs. Opp. at 11–18. This is wrong for three reasons, explained below. Given the questions of judicial authority raised, Plaintiffs also provide the supporting declaration of Professor Judith Resnik on the role of federal judges in MDLs, on the interplay of the statutes at issue, and the Supreme Court's current approach to their application.

**A.  The AIA Does Not Apply Because Plaintiffs Are "Strangers" to the *King* Case.**

Though this dispute would fall within recognized exceptions to the AIA if it applied, *see infra* Section IV.B, the AIA does not apply to challenges by "strangers to the state court proceeding," who "may seek an injunction in federal court to stay the state court proceedings." *Munoz v. County of Imperial*, 667 F.2d 811, 814, 814–16 (9th Cir. 1982). The Supreme Court recognized the "strangers" exception in that case's predecessor, *Imperial Cnty. v. Munoz*, 449 U.S. 54 (1980). "Strangers" are "person[s] neither party nor privy to litigation in state courts [who are] not bound by litigation in the state court." *Munoz*, 667 F.2d at 814–15; *id.* at 815 ("Non-parties that do not control litigation are strangers"). The "strangers" exception to the AIA has "continued vitality." *Prudential Real Estate Affs., Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000); *see* Resnik Decl. ¶¶ 50-52 (describing this exception's history and background).

Plaintiffs—and certainly Co-Lead Counsel in their capacity to advocate for MDL plaintiffs—are "strangers" to the *King* litigation. Plaintiffs are not parties, privies to, or bound by the *King* litigation for purposes of the "strangers" exception. They did not control the state court proceeding nor were they part of the negotiations leading to the class settlement. MDL plaintiffs and the individual plaintiffs bringing this motion had no relation to the state proceedings, and when counsel

representing them sought to intervene in the state court proceedings prior to preliminary approval, they were not permitted to participate. Plaintiffs seek to protect the right to opt out of the settlement which, if exercised, "remove[s] opt-outs from the litigation entirely." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810–11 (1985). And Co-Lead Counsel not only seek to protect those interests, but also represent the interests of MDL plaintiffs who by the express terms of the settlement are *excluded* from the proposed class, making their "stranger" status even more clear-cut. This is before even getting to the serious adequacy-of-representation problems noted by Amici, which would undercut *King*'s efforts to bind anyone.[10] Because Plaintiffs are strangers to the *King* case, the AIA does not constrain the relief they may seek or that this Court may grant from the *King* proceedings.

### B. If the AIA Applies, It Allows Relief from Interference with the Court's Jurisdiction.

Even if the AIA applies in some respects, it does not preclude this Court from taking action "necessary to prevent a state court from so interfering with [its] consideration or disposition of a case as to seriously impair [its] flexibility and authority to decide that case." *Malliotakis v. Williams*, 607 U.S. __, 146 S. Ct. 809, 811 (2026) (Alito, J., concurring in grant of stay) (quoting *Atl. Coast Line R. Co. v. Locomotive Eng'rs*, 398 U.S. 281, 295 (1970)). "Although comity requires federal courts to exercise extreme caution in interfering with state litigation, federal courts have the power to do so when their jurisdiction is threatened." *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1025 (9th Cir. 1998). A state court order that could potentially extinguish federal litigation presents an interference that the AIA allows this Court to limit, by protecting the right to opt out of the *King* settlement.

Proponents argue that this AIA exception, sometimes called the "necessary in aid of jurisdiction" exception, is inapplicable because it "generally" applies *in rem* proceedings. Opp. at 12. But the Ninth Circuit recognizes that "the existence of advanced federal in personam litigation

---

[10] Chemerinsky and Bloom Amicus Br., Dkt. 21976, at 5–6, 10–12.

may, in some instances, permit an injunction in aid of jurisdiction," as "has often arisen in multidistrict litigation (MDL) cases." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1102 & n.16 (9th Cir. 2008); *see* Resnik Decl. ¶ 46 (noting that "the Court's case law has made plain that, in appropriate instances, what have been categorized as 'in personam' lawsuits can also be subject to injunctions").[11] Similarly, in *Winkler* v. *Eli Lilly & Co.*, 101 F.3d 1196, 1206 (7th Cir. 1996), the Seventh Circuit held that "the Anti-Injunction Act does not bar courts with jurisdiction over complex multidistrict litigation from issuing injunctions to protect the integrity of their rulings." The mature phase of the Roundup MDL, the nascency of the *King* case, and the unprecedented interference it would effect, all weigh in favor of granting the constitutionally protective relief Plaintiffs seek.

Proponents misplace their heavy reliance on the *General Motors* case, 134 F.3d 133 (3d Cir. 1998). Opp. at 10, 13–14. In that case—a typical consumer automotive class action raising none of the serious constitutional and futures concerns raised by this case—the Third Circuit held that a federal court could not enjoin a (pre-CAFA) state court class action settlement in which final judgment had been entered, the terms of which were "little changed" from those of a proposed federal settlement previously rejected by the Third Circuit. 134 F.3d at 137, 144–45. The Third Circuit found that the appellants failed to show the "interference or impairment" with federal proceedings needed to overcome the AIA. *Id.* Here, Plaintiffs are not seeking a full-stop injunction of the *King* proceedings, but rather narrow opt-out relief tailored to protect federal cases from interference.

Proponents also argue that many cases finding that the AIA did not apply involved federal settlements infringed by state cases, which this case does not, and note that in *Winkler* and *Negrete*

---

[11] Proponents coyly use a heavily ellipsed quote from the textbook of one of Plaintiffs' Amici to suggest that the in-aid-of-jurisdiction exception is limited to real property cases. Opp. at 13. This attempted 'gotcha' does not help Proponents' cause: as one of their ellipses omits, "nor, of course, may the state court stay the federal proceedings." Erwin Chemerinsky, *Federal Jurisdiction*, 734–35 (9th ed. 2025). Here, it is the federal court that had jurisdiction first rather than the reverse.

(not an MDL case), the AIA ultimately barred relief. Opp. at 15. These superficial distinctions do not speak to the Court's authority to grant relief in the case before it, given the context-dependent nature of relief under the All Writs Act and the AIA's restrictions. Resnik Decl. ¶¶ 45–49.

This is an unusual case not quite on all fours with any other. But that is because Proponents have instigated such an unprecedented infringement on federal litigants' rights, not because the relief Plaintiffs seek is unavailable. Proponents have jammed through preliminary approval of a nationwide personal injury class action sweeping in and interfering with federal cases, even though the authority of the state court they urged to do so was and remains highly dubious. Resnik Decl., ¶¶ 32–36. The AIA does not prevent this Court from granting relief from this interference.

### C.  The AIA Does Not Constrain Some or All Requested Declaratory Relief.

The AIA is even less of a constraint upon Plaintiffs' alternative request for declaratory relief. "[T]he plain language of § 2283 speaks *only* to actual injunctions," and says nothing about declaratory relief, which was not an available legal remedy in 1793, when the AIA was first enacted. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1152–53 (9th Cir. 2007); Resnik Decl., ¶¶ 45–46, 54–56. Proponents rely on some earlier Ninth Circuit case law and a more recent unpublished memorandum disposition for the proposition that the AIA "prohibits declaratory relief where it would bar the equivalent injunction."[12] The *AmerisourceBergen* court questioned without deciding whether the AIA "still applies to certain requests for declaratory relief" following the development of the *Younger* doctrine, 495 F.3d at 1153 n.16, and this older case law may lack force given the prevalence now of more text-focused methods of statutory interpretation. Resnik Decl., ¶¶ 57–61.

The Court does not need to resolve this debate to grant at least some of the relief that Plaintiffs request, however. A declaration or indicative ruling that plaintiffs who have sufficiently

---

[12] Opp. at 17 (citing *H.J. Heinz Co.* v. *Owens*, 189 F.2d 505, 508 (9th Cir. 1951); *Monster Beverage Corp.* v. *Herrera*, 650 F. App'x 344, 346 (9th Cir. 2016) (mem. disp.).

expressed their intent to exit the *King* Settlement are deemed to have opted out of it, and/or are not subject to its release and covenant-not-to-sue provisions, would not require Monsanto or its agents to take or refrain from action. The Court can also exercise its supervisory authority over Monsanto and the Settlement Administrator that is neither injunctive nor declaratory in nature and on which the AIA has no bearing. *See infra* Part VI. And if the Court concludes that injunctive relief is unavailable or unwarranted, declaratory relief could help address the core problems Plaintiffs raise.

## V.    <u>Plaintiffs Have Shown That the Requested Relief Is Warranted.</u>

Proponents claim that the problems from which Plaintiffs seek relief are not really problems at all, rendering court intervention unnecessary, because would-be class members can "simply" or "easily opt out of the Missouri settlement." Opp. at 9, 11. By way of example, they claim that Plaintiffs' counsel "has had no difficulty opting out *dozens* of plaintiffs already." *Id.* at 10.[13] Monsanto told a different story in Missouri court papers filed ***the day after the Opposition***. Monsanto argued that trial in a case originally filed nine years ago and previously set for May 2026 should be indefinitely stayed, because, Monsanto claimed, opt-out forms filed by those plaintiffs over a month ago "have not become effective," and that "the earliest any Opt Out . . . will become effective is mid-June [after the opt-out deadline] if no challenge is made." Greenwald Decl., Ex. E at 5–6.

Proponents contend the opt-out requirements are reasonable because they include components that courts, including this Court, have required in other cases, such as wet ink signatures and information "to confirm [plaintiffs'] identity and class membership." Opp. at 20–23. Plaintiffs

---

[13] Respondents highlight that a couple of Weitz & Luxenberg's clients supplemented opt-out requests as evidence of fairness. Opp. at 23. The opposite is true. Those plaintiffs did not receive notices of deficiencies from the Settlement Administrator; rather, Weitz & Luxenberg attorneys noticed that the Settlement Administrator changed the opt-out requirements for Representative Claimants on the settlement website *weeks* into the opt-out period, and counsel supplemented the plaintiffs' opt-out submissions to ensure compliance. Greenwald Decl., ¶ 6–7. Despite counsel's requests, the Settlement Administrator has refused to confirm the validity of any of counsel's clients' opt-outs, including opt-outs submitted well over a month ago. *Id.* ¶ 5.

stand on their previous advocacy explaining why, cumulatively, the multitude of opt-out requirements and the scheme of which they are a part unreasonably burden the right to opt out. *See* Mot. at 17–21. Plaintiffs are aware of no other cases whose opt-out scheme comes remotely close to the *King* settlement's oppressive combination of:[14] (i) sweeping people with attorneys and existing lawsuits into the class; (ii) imposing requirements as burdensome, and in some cases subjective, as these; (iii) lacking any required deficiency notice or right to cure; (iv) deeming opt-outs non-final until after the deadline has passed; and (v) offering challenge rights to the settlement's proponents, again with no apparent notice or right to cure.[15] These terms are far afield of reason or due process.

Though Proponents characterize the concerns of Plaintiffs' counsel as bad-faith ax-grinding, numerous law firms have reached out to the MDL Leadership seeking guidance regarding the *King* settlement's opt-out requirements since preliminary approval, as recently as this week. Greenwald Decl. ¶ 2. Given that attorneys involved in Roundup litigation have legitimate questions about how to navigate the opt-out process, *id.* ¶¶ 2, 4, it is unclear how Respondents anticipate that non-lawyers without representation will be able to comply with the Settlement's requirements.

Proponents also assert that, in practice, "individuals who submit incomplete or deficient opt-out requests are sent courtesy deficiency notices and given an opportunity to cure their incomplete requests." Opp. at 23. Thus far, however, the Settlement Administrator has been reticent when asked to explain how it will apply the opt-out requirements, has not sent a single "courtesy" deficiency

---

[14] Plaintiffs' counsel have reviewed numerous major class action settlements in drawing this conclusion, including the attempted Roundup MDL settlements; the *Gilmore* Roundup consumer settlement approved by this Court; the BP Deepwater Horizon economic loss and medical benefits settlements; the NFL concussion settlement; the *Diet Drugs* settlement; the Volkswagen diesel settlement; the payment card fee and merchant discount antitrust litigation; the Facebook biometric privacy settlement; and major data breach cases involving Equifax, T-Mobile, and Capital One.

[15] This is before even getting to the facts that (vi) this is seemingly the first nationwide state court personal injury class action settlement in at least 20 years, since *Amchem* and CAFA; and (vii) this settlement thinly repackages a twice-rejected proposed federal settlement of the same claims.

notice to Co-Lead Counsel, and has refused to confirm the validity or effectiveness of representative opt-out requests submitted over a month ago. Greenwald Decl., ¶ 5 & Ex. B; *see* Mot. at 20–21. Neither the settlement nor prior versions of the opt-out instructions displayed to class members— which have undergone several unannounced substantive revisions before the current iteration proffered as an exhibit to Class Counsel's declaration[16]—contemplate a protocol to cure opt-out requests deemed deficient following a challenge by Monsanto and/or Class Counsel.  The opt-out instructions were only revised after undersigned counsel and others alerted the *King* court of serious due process concerns regarding the opt-out process.

The recent revisions proffered by Proponents still lack due process protections. They state that the Settlement Administrator "may" send a notice to the individual who submitted a deficient opt-out "as a courtesy," and emphasize that a deficiency notice is "not required by the Court's Order," that "[t]he lack of a Deficiency Notice does not mean your Opt Out Request is fully compliant with the requirements," and that even correcting every deficiency identified in such a notice will not  ensure the opt-out is deemed valid. Seeger Decl., Dkt. 21986-9, Ex. 9 at 5. This voluntary, discretionary, and "if I feel like it" process is wholly insufficient to protect class members' due process and statutory rights to choose whether they will participate in the settlement, particularly given the subjective and uncertain nature of some requirements. In any event, the settlement purports to allow Monsanto and Class Counsel to challenge an opt-out until seven days *after* the deadline, regardless of when the opt-out was submitted,[17] and so even these optional and discretionary notices, the lack of which means nothing, cannot protect opt-outs from later-claimed deficiencies.

Fairness and due process demand more, and at a minimum meaningful and mandatory protections of the right to opt out, particularly for federal plaintiffs who have been swept into a

---

[16] *See* Greenwald Decl. ¶ 6–7 & Ex. D (redline comparing March 9 vs. April 22 opt-out instructions).
[17] Settlement Agreement at § 12.2(f)–(h).

national state court settlement of dubious scope and validity. The late-adopted, discretionary, and loophole-prone procedures now in place are insufficient, and Court intervention is necessary.

## VI. Proponents Are Subject to the Court's Supervisory Authority.

The Motion notes that the Court has ample supervisory authority to require Proponents to provide additional information about, among other things, the troublingly closed-off and unrecorded proceedings leading up to preliminary approval in the *King* case, as well as the threat of a Monsanto bankruptcy used as a central justification for the settlement.[18] Amici reiterate these points, and also note the lack of protection for futures plaintiffs, whom Co-Lead Counsel do not here represent.[19]

Proponents express indignation at what they characterize as "attacking the Missouri judiciary," Opp. at 24, but do defend or explain the highly irregular proceedings leading to preliminary certification, the observation of which is not a personal attack. Proponents likewise express indignation that futures issues have been raised, and tout the "extensive experience" of futures counsel, *id.* at 5 n.4, but do not defend or explain any of the concerns raised by Amici, which echo concerns previously raised by this Court. The Opposition is totally silent about any bankruptcy risk. The Court can and should require more.

### CONCLUSION

For the foregoing reasons, the Motion should be granted in its entirety.

DATED: April 24, 2026

Respectfully Submitted,

/s/ *Robin L. Greenwald*
Robin L. Greenwald (*pro hac vice*)
Robert J. Quigley (CA # 302879)
Chantal Khalil Levy (*pro hac vice*)
Emma Dietz (*pro hac vice*)

---

[18] Mot. at 7, 11, 25; *see*, *e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); 28 U.S.C. §§ 1407, 1651; Manual for Complex Litigation (Fourth) § 10.13 at 12–13 (2004).
[19] Certain Amici counsel plan to be present at the hearing on April 30, 2026 and are prepared to address these issues if the Court wishes.

Alicia Butler (*pro hac vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
rquigley@weitzlux.com
ckhalil@weitzlux.com
edietz@weitzlux.com
abutler@weitzlux.com

*Co-Lead Counsel and Attorneys for Plaintiffs Jones and Schramm*

/s/ *David J. Dickens*
David J. Dickens (pro hac vice)
**THE MILLER FIRM LLC**
108 Railroad Avenue
Orange, VA 22960
Telephone: 540-672-4224
ddickens@millerfirmllc.com

*Co-Lead Counsel*

-16-