**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843 | Fax: 202-682-1639

*Attorneys for Defendant Monsanto
Company*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100 | Fax: 310-576-2200

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| *Benito Ornelas Gonzalez v. Monsanto Company,*<br>*3:20-cv-06198-VC* | **MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF BENITO ORNELAS GONZALEZ'S MOTION FOR LEAVE TO AMEND EXPERT DISCLOSURES** |

# TABLE OF CONTENTS

**Page**

I.      **INTRODUCTION** ..................................................................................................... 1

II.     **PROCEDURAL BACKGROUND** ..................................................................... 2

III.    **LEGAL ARGUMENT** ....................................................................................... 3

       A.      Plaintiff's Motion Is Procedurally Improper .............................................. 3

       B.      Plaintiff Has Not Demonstrated the Diligence Required to Show Good Cause ......................................................................................................... 3

       C.      Plaintiff's Substitution Cannot Be Characterized as a Permissible Supplement .................................................................................................. 4

       D.      Plaintiff Offers No Proposed Expert Report to Evaluate .......................... 6

       E.      Exclusion Is Proper under Rule 37(c)(1) ................................................... 7

             1.      Late Substitution Would Cause Substantial Surprise and Prejudice ............. 7

             2.      Late Substitution Would Result in Disruption that Prejudices Monsanto's Right to a Prompt Resolution and Undermines the Purposes of the MDL ................................................................... 8

             3.      Plaintiff's Failure to Seek Substitution Sooner Was in Bad Faith .............. 11

       F.      The Court Should Enter Summary Judgment to Stop Indefinite Delay .................. 11

IV.    **CONCLUSION** ............................................................................................... 12

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF GONZALEZ'S MOTION FOR LEAVE TO AMEND EXPERT DISCLOSURES

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Carter v. Finely Hosp.*,
    2003 WL 22232844 (N.D. Ill. Sept. 22, 2003)..............................................................................5

*Coleman v. Quaker Oats Co.*,
    232 F.3d 1271 (9th Cir. 2000)..........................................................................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1995)..............................................................................2, 8, 10, 11

*Engilis v. Monsanto Co.*,
    Case No. 19-cv-7859-VC, Dkt. No. 45, Order on Monsanto's Motions to
    Exclude Expert Testimony and Setting Case Management Conference (Jun. 1,
    2023)....................................................................................................................6

*Gelboim v. Bank of Am. Corp.*,
    574 U.S. 405 (2015) ......................................................................................10

*Goodman v. Staples The Off. Superstore, LLC*,
    644 F.3d 817 (9th Cir. 2011)............................................................................9

*Hard Surface Solutions, Inc. v. Sherwin-Williams Co.*,
    271 F.R.D. 612 (N.D. Ill. 2010) ......................................................................8

*Hill v. Porter Memorial Hosp.*,
    90 F.3d 220 (7th Cir. 1996)..............................................................................9

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 1992).....................................................................1, 3, 4

*LaFlamboy v. Landek*,
    2009 WL 10695380 (N.D. Ill. Sept. 3, 2009).............................................8, 10

*Lanard Toys Ltd. v. Novelty, Inc.*,
    375 F. App'x 705 (9th Cir. 2010)......................................................................7

*Lindner v. Meadow Gold Dairies, Inc.*,
    249 F.R.D. 625 (D. Haw. 2008) ......................................................................5

*Luke v. Fam. Care & Urgent Med. Clinics*,
    323 F. App'x 496 (9th Cir. 2009)......................................................................5

*Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*,
    2008 WL 4601038 (N.D. Cal. Oct. 15, 2008).................................................5

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF GONZALEZ'S MOTION FOR LEAVE TO AMEND
EXPERT DISCLOSURES

*In re Nuvaring Prods. Liab. Litig.*,
    2009 WL 4825170 (E.D. Mo. Dec. 11, 2009)..........................................................................10

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006)...................................................................................................9

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
    507 U.S. 380 (1993) ..................................................................................................................4

*Plumley v. Mockett*,
    836 F. Supp. 2d 1053 (C.D. Cal. 2010)....................................................................................5

*Rolandson v. Ethicon, Inc.*,
    2020 WL 2086279 (D. Minn. Apr. 30, 2020) ..........................................................................9

*Vill. of Sauk Vill. v. Roadway Express, Inc.*,
    2017 WL 378424 (N.D. Ill. Jan. 25, 2017) .............................................................................5

*Wong v. Regents of Univ. of California*,
    410 F.3d 1052 (9th Cir. 2005)..................................................................................................9

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001)..................................................................................................7

**Statutes**

28 U.S.C. § 1407 ..........................................................................................................................10

**Rules**

Fed. R. Civ. P. 16(b)......................................................................................................................1

Fed. R. Civ. P. 16(b)(4)..............................................................................................................3, 4

Fed. R. Civ. P. 26 .......................................................................................................................4, 9

Fed. R. Civ. P. 26(a).......................................................................................................................4

Fed. R. Civ. P. 26(a)(2) ..............................................................................................................5, 9

Fed. R. Civ. P. 26(a)(2)(B)......................................................................................................1, 2, 6

Fed. R. Civ. P. 26(e)...............................................................................................................1, 4, 5, 6

Fed. R. Civ. P. 26(e)(1) .................................................................................................................4

Fed. R. Civ. P. 37(c)(1) ...........................................................................................................2, 7, 8

Fed. R. Evid. 702.......................................................................................................................2, 11

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF GONZALEZ'S MOTION FOR LEAVE TO AMEND EXPERT DISCLOSURES

Local Rule 7-2 ..................................................................................................................................... 1, 3

Local Rule 7-9 ......................................................................................................................................... 3

**Other Authorities**

Manual for Complex Litigation § 20.131 (4th ed. 2004) ............................................................. 10

## I.   <u>INTRODUCTION</u>

Plaintiff Benito Ornelas Gonzalez asks this Court to grant him yet another chance to establish specific causation, despite the close of expert discovery over two and a half years ago, after this Court has twice excluded his causation expert, Dr. Omid Hamid, and invited the parties to address whether summary judgment should be entered. The Court should decline. Plaintiff's Motion fails at every level: it is procedurally deficient, substantively meritless, and would inflict substantial prejudice on Monsanto and the MDL.

As a threshold matter, Plaintiff's Motion is procedurally improper. Plaintiff noticed the Motion for hearing on just thirteen days' notice, less than half the thirty-five days required by Local Rule 7-2. This deficiency alone warrants denial.

On the merits, Plaintiff cannot satisfy the good cause standard required under Rule 16(b) to modify this Court's scheduling order. Plaintiff cannot recharacterize his wholesale substitution of one expert for another as a permissible "supplement" under Rule 26(e). Rule 26(e) permits a party to update an existing disclosure; it does not authorize the replacement of an excluded expert with an entirely new witness whose report has not even been drafted.

Additionally, by Plaintiff's own admission, he identified his proposed replacement expert, Dr. Brandon Gagnier, within two weeks of this Court's September 19, 2024 order excluding Dr. Hamid. Yet Plaintiff waited approximately eighteen months, until March 2026, to retain Dr. Gagnier and offers no explanation for this extraordinary delay. The substitution of counsel does not justify delaying this case further and giving Plaintiff another bite at the apple. Under *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992), that failure of diligence alone ends the inquiry. Making matters worse, Plaintiff asks the Court to authorize a new expert disclosure without providing a copy of the disclosure itself because no Rule 26(a)(2)(B) report has been prepared. Plaintiff offers only counsel's unsworn preview of what the report might eventually contain. The Court is thus asked to grant relief on speculation that a yet-to-be-written report will somehow cure the deficiencies that led to Dr. Hamid's exclusion. The Court should decline Plaintiff's request for a blank check "do-over" after the Court already excluded his expert.

1

Independent of the good cause analysis, exclusion is warranted under Rule 37(c)(1). Every factor the Ninth Circuit considers—surprise, prejudice, disruption to the litigation, and the non-disclosing party's bad faith—weighs decisively against Plaintiff. Granting the Motion would force Monsanto to relitigate specific causation from scratch: reviewing a new report, deposing a new expert, preparing a new rebuttal, and potentially briefing yet another *Daubert* motion, all in a case that has been pending for over six years. Rather than permitting Plaintiff to treat expert exclusion orders as mere speed bumps on the road to trial, this Court should deny Plaintiff's request and resolve the summary judgment question that has remained pending since September 2024.

## II.      PROCEDURAL BACKGROUND

This case was assigned to Wave 6C and is subject to this Court's November 3, 2022 Scheduling Order, as amended by the August 30, 2023 Scheduling Order. (MDL Dkt. Nos. 15506, 17234.) Pursuant to the Scheduling Order, Plaintiff's expert report was due by August 25, 2023 and expert discovery closed on October 25, 2023. (MDL Dkt. No. 15506 at 11.)

Plaintiff served the Rule 26(a)(2)(B) report of Dr. Hamid on Monsanto on August 25, 2023. Dr. Hamid was deposed on September 22, 2023. On December 14, 2023, Monsanto timely filed a motion to exclude Plaintiff's causation expert, Dr. Omid Hamid, under Rule 702 and PTO 45. (MDL Dkt. No. 17610, *Case No. 3:20-cv-06198-VC*, Dkt. No. 11.) Plaintiff did not oppose Monsanto's motion, and, on May 17, 2024, the Court granted Monsanto's motion in light of Plaintiff's failure to respond. (MDL Dkt. No. 18367, PTO 292 at 5.) The order ended with the observation that "it appears that summary judgment should be granted given the absence of any expert testimony on specific causation" and invited the parties to file a letter within seven days stating whether the Court should enter summary judgment for Monsanto based on the absence of expert testimony on specific causation or remand the case. (*Id.* at 5-6.)

On May 24, 2024, Monsanto timely submitted a letter asking for entry of summary judgment. (MDL Dkt. No. 18417.) Almost a month later, on June 20, 2024, Plaintiff submitted a letter in which he claimed that he was not aware of Monsanto's motion or this Court's ruling. (MDL Dkt. 18663.) In response, the Court set a case management conference for July 11, 2024 to discuss how to proceed. (MDL Dkt. No. 18761, *Case No. 3:20-cv-06198-VC*, Dkt. No. 17.) In a Joint Status Report dated

2

July 15, 2024, Monsanto agreed to allow Plaintiff to file a late opposition to the motion to exclude Dr. Hamid. (MDL Dkt. No. 18811, *Case No. 3:20-cv-06198-VC*, Dkt. No. 22 at 8.) Plaintiff filed his opposition on August 14, 2024. On September 19, 2024, after full briefing, this Court again granted Monsanto's motion to exclude the testimony of Dr. Hamid. (MDL Dkt. 19271, PTO 294.) This Court again invited the parties to submit letters regarding entry of summary judgment or remand. (*Id*. at 4.)

Monsanto submitted its letter on September 24, 2024, requesting summary judgment. (MDL Dkt. No. 19285, *Case No. 3:20-cv-06198-VC*, Dkt. No. 30.) Plaintiff filed his letter on September 25, 2024, requesting the Court to reconsider[1] its September 19, 2024 ruling. (*Case No. 3:20-cv-06198-VC*, Dkt. No. 31.) Contrary to Plaintiff's assertion in his Motion, his letter did <u>not</u> request permission to retain a new expert, and there are no grounds to do so. (Motion, p. 6:10-11.) The question of summary judgment remains pending before the Court.

## III.   LEGAL ARGUMENT

### A.   Plaintiff's Motion Is Procedurally Improper

Local Rule 7-2 provides that "all motions must be filed, served and noticed in writing on the motion calendar of the assigned Judge for hearing not less than 35 days after filing of the motion." Plaintiff failed to comply with this requirement. Plaintiff filed and served the instant Motion on May 1, 2026, with a caption setting a hearing on May 14, 2026—a mere thirteen days' notice, less than half of the thirty-five days required by the Local Rules. This procedural deficiency alone warrants denial of the Motion. At a minimum, Plaintiff's disregard of the applicable briefing schedule has prejudiced Monsanto by compressing the time available to prepare and file its opposition.

### B.   Plaintiff Has Not Demonstrated the Diligence Required to Show Good Cause

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Plaintiff acknowledges that under *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992), the primary consideration in determining good cause for modification of a scheduling order under Rule 16(b)(4) is the diligence

---

[1] Plaintiff's request for reconsideration did not comply with Local Rule 7-9 or identify any of the three permitted grounds for reconsideration.

3

of the moving party, and "[i]f that party was not diligent, the inquiry should end." *Id*. Where, as here, the moving party cannot demonstrate diligence, the Court need not consider any other factor, including the absence of prejudice or the existence of a meritorious claim. *See id.; see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 2000) (affirming denial of motion to amend where movant failed to show diligence).

Plaintiff's own Motion lays bare his lack of diligence. The Motion reveals a nineteen-month gap between PTO 294 entered on September 19, 2024, which excluded the testimony of Plaintiff's specific causation expert, and the filing of this Motion on May 1, 2026. More damning still, Plaintiff admits that he identified Dr. Gagnier as a potential substitute "within two weeks of PTO 294" (i.e., by early October 2024). [Motion, p. 9:13-14.] Yet Plaintiff inexplicably waited approximately eighteen months, until "on or about March 26, 2026," to retain Dr. Gagnier. [*Id*.]

Plaintiff argues that the State Bar's discipline of prior counsel and the substitution of new counsel constitute "changed circumstances" justifying relief. However, parties are generally "held accountable for the acts and omissions of their chosen counsel." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993). Mere attorney negligence does not ordinarily constitute good cause. Even if prior counsel was deficient, the 18-month gap between identifying Dr. Gagnier and retaining him suggests a lack of diligence.

Plaintiff offers no explanation for what occurred during this eighteen-month period. That silence is fatal to Plaintiff's claim of diligence. A party who identifies a potential expert in October 2024 but takes no action to retain him until March 2026 has not been diligent by any measure. This unexplained and inexcusable delay is precisely the kind of dilatory conduct that *Johnson* holds forecloses modification of a scheduling order. The inquiry should end here.

**C.      Plaintiff's Substitution Cannot Be Characterized as a Permissible Supplement**

Plaintiff cites the ongoing duty in Federal Rule of Civil Procedure 26(e) to supplement Rule 26 disclosures, but this argument fundamentally misconstrues the nature and scope of Rule 26(e). Rule 26(e) permits supplementation of a disclosure under Rule 26(a) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). By its plain terms, the rule contemplates updating an existing disclosure, not

4

replacing one expert with an entirely different expert who holds different qualifications, reviewed different materials, and will render different opinions. What Plaintiff proposes is not supplementation in any recognized sense of the word; it is wholesale substitution. Plaintiff does not seek to correct or complete Dr. Hamid's report—he seeks to discard it entirely and replace it with a report from a different expert, Dr. Gagnier. There was nothing erroneous or incomplete in Plaintiff's earlier Rule 26(a)(2) disclosures that supplementation could cure. Rather, this Court found Dr. Hamid's testimony inadmissible. Plaintiff's request to substitute experts cannot be characterized as a permissible "supplement" of Plaintiff's original 26(a)(2) expert disclosure.

Courts have uniformly rejected attempts to use Rule 26(e) as a vehicle for introducing new expert opinions—let alone entirely new experts—after disclosure deadlines have passed. As the Ninth Circuit explained, "Rule 26(e) creates a 'duty to supplement,' not a right. Nor does Rule 26(e) create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009); *see also Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (Supplementary disclosures "do not permit a party to introduce new opinions after the disclosure deadline under the guise of a 'supplement.'"); *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, 2008 WL 4601038, at *1 (N.D. Cal. Oct. 15, 2008) ("A party may not rely on Rule 26(e)(1) as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report."); *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 640 (D. Haw. 2008) (Rule 26(e) "does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the 'supplement' label."); *Vill. of Sauk Vill. v. Roadway Express, Inc.*, 2017 WL 378424, at *2 (N.D. Ill. Jan. 25, 2017) ("[T]he duty to supplement an expert opinion [under Rule 26(e)(2)] cannot 'be used as a vehicle to disclose entirely new expert opinions after the deadline established by the court under Rule 26(a)(2)(c).'"); *Carter v. Finely Hosp.*, 2003 WL 22232844, at *2 (N.D. Ill. Sept. 22, 2003) ("It is disingenuous to argue that the duty to supplement under Rule 26(e)(1) can be used as a vehicle to disclose entirely new expert opinions after the deadline established by the court under Rule 26(a)(2)(C).").

5

If Rule 26(e) does not permit a party to supplement its own expert's report with new opinions after the deadline, *a fortiori* it cannot authorize the substitution of an entirely different expert whose report has not even been written. Plaintiff's reliance on Rule 26(e) is misplaced and should be rejected.

### D.    Plaintiff Offers No Proposed Expert Report to Evaluate

Plaintiff's Motion concedes that Dr. Gagnier's Rule 26(a)(2)(B) report has not yet been prepared. Instead, the Motion promises only that the report will be "completed within two weeks from the time this Honorable Court grants Plaintiff leave" and will be attached to a "subsequent filing." [Motion, pp. 4:15-16, 9:14-15.] In other words, Plaintiff asks this Court to grant leave to amend his expert disclosures without providing the very disclosure the Court is being asked to permit. The detailed preview of the report's anticipated contents set forth in the Motion is nothing more than attorney argument and advocacy. It is not expert testimony, it is not sworn, and it carries none of the indicia of reliability that Rule 26(a)(2)(B) requires. The Court has no basis to credit counsel's representations about what an as-yet-unwritten report will ultimately contain. Granting leave under these circumstances would require the Court to speculate that the proposed report will cure the deficiencies identified in PTO 294, the very deficiencies that led this Court to exclude Dr. Hamid's testimony on two separate occasions. Moreover, without a proposed report before it, neither Monsanto nor this Court can meaningfully evaluate the qualifications, methodology, or reliability of Dr. Gagnier's anticipated opinions, rendering any assessment of the Motion's merits impossible.[2]  Plaintiff's request is, in effect, a demand for a blank check: permission to disclose another expert now, with the substance of that expert's opinions to be revealed at some unspecified later date. The Court should decline the invitation.

---

[2] This Court has already issued a prior ruling questioning the reliability of Dr. Gagnier's opinions. *See Engilis v. Monsanto Co.*, Case No. 19-cv-7859-VC, Dkt. No. 45, Order on Monsanto's Motions to Exclude Expert Testimony and Setting Case Management Conference (Jun. 1, 2023) ("[T]he Court is skeptical that [Dr. Gagnier's] opinions are reliable enough to present to a jury. If Engilis wishes to use these witnesses at trial, *Daubert* hearings must be scheduled for this summer.").

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF GONZALEZ'S MOTION FOR LEAVE TO AMEND EXPERT DISCLOSURES

### E.    Exclusion Is Proper under Rule 37(c)(1)

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). This rule is "self-executing" and "automatic," requiring exclusion unless the non-disclosing party can demonstrate substantial justification or harmlessness. *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). District courts have "particularly wide latitude" to issue sanctions under Rule 37(c)(1). *Id.* As the party facing exclusion of its untimely substitute expert disclosure, Plaintiff bears the burden of proving that the failure was substantially justified or harmless. *Id.* at 1107. Plaintiff cannot carry this burden. His proposed disclosure comes more than two and a half years after the close of expert discovery, more than nineteen months after this Court excluded his only causation expert, and without even a completed expert report in hand.

In evaluating whether late disclosure is substantially justified or harmless, the Ninth Circuit considers the factors articulated in *Lanard Toys Ltd. v. Novelty, Inc.,* 375 F. App'x 705, 713 (9th Cir. 2010). Every one of these factors weighs decisively against Plaintiff:

### 1.    Late Substitution Would Cause Substantial Surprise and Prejudice

Plaintiff misrepresents the record by claiming the issue of expert substitution was raised in Plaintiff's September 25, 2024 letter. [Motion, p. 9: 3-4.] It was not. (*See Case No. 3:20-cv-06198-VC*, Dkt. No. 31.) A review of that letter reveals that at no point does Plaintiff propose retaining a replacement expert, seek leave to designate a new expert, or request additional time to secure alternative expert testimony. Plaintiff's mischaracterization of his own filing underscores the weakness of his position. Monsanto had no reason to anticipate, and could not reasonably have anticipated that Plaintiff would wait nineteen months after exclusion, then file a motion seeking to substitute an entirely new expert without attaching any report. The element of surprise is compounded by the fact that Monsanto has been awaiting entry of summary judgment since September 2024, reasonably relying on this Court's exclusion rulings and the absence of any admissible causation testimony. Allowing Plaintiff to disclose new experts at this stage is tantamount to requiring Monsanto to aim at a moving target.

Despite Plaintiff's assertion of no prejudice, the surprise here cannot be cured without inflicting the very prejudice that Rule 37(c)(1) is designed to prevent: forcing Monsanto to relitigate specific causation from scratch against a new, previously undisclosed expert. If the Court were to grant Plaintiff's Motion, Monsanto would be compelled to incur the expense of (1) reviewing and analyzing an entirely new expert report on specific causation; (2) deposing a new expert; (3) preparing and filing a new *Daubert* motion, and (4) retaining an expert to prepare an updated rebuttal report—effectively relitigating the issue of specific causation from scratch, after having already prevailed twice on this very issue. This is precisely the type of prejudice that courts have recognized warrants exclusion. *See Hard Surface Solutions, Inc. v. Sherwin-Williams Co.*, 271 F.R.D. 612, 617 (N.D. Ill. 2010) ("Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen or to extend discovery."); *LaFlamboy v. Landek*, 2009 WL 10695380, at \*4 (N.D. Ill. Sept. 3, 2009) (excluding untimely expert report where "Defendants expended time and effort briefing their motion to exclude, and now, facing the new 2009 Reports, Defendants would be forced to consider new information that apparently was not produced during discovery. . . obtain a rebuttal opinion, and possibly offer their rebuttal witness(es) for deposition by Plaintiff's counsel."). The prejudice here is even more acute because Monsanto has already expended significant resources briefing and winning two successive motions to exclude Dr. Hamid's testimony—resources that would be entirely wasted if Plaintiff is permitted to simply swap in a replacement expert and start the process anew.

**2. Late Substitution Would Result in Disruption that Prejudices Monsanto's Right to a Prompt Resolution and Undermines the Purposes of the MDL**

Although Monsanto is currently awaiting entry of summary judgment, the disruption that would result from granting Plaintiff's Motion is substantial and far-reaching. Permitting a new expert disclosure at this stage would effectively reset the litigation clock: the Court would need to reopen expert discovery that closed over two and a half years ago, the parties would need to schedule and conduct a new expert deposition, Monsanto would need to retain its rebuttal expert to prepare an entirely new report, and the Court would in all likelihood be called upon to adjudicate yet another *Daubert* motion—the third in this case. This cascading sequence of proceedings would further delay

8

resolution of a case that has been pending for over six years, in which this Court has twice signaled that summary judgment should be entered, and in which Plaintiff has yet to produce a single admissible opinion on specific causation.

The Federal Rules impose expert disclosure deadlines precisely to prevent the kind of prejudice Plaintiff's Motion would inflict. "[P]arties must make these expert disclosures at the times and in the sequence that the court orders" *Goodman v. Staples The Off. Superstore, LLC,* 644 F.3d 817, 827 (9th Cir. 2011). The Advisory Committee notes underscore that Rule 26(a)(2) requires disclosure of expert testimony "sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26(a)(2), adv. comm. notes (1993). These deadlines are not aspirational—they are structural safeguards. "Adhering to established deadlines is essential if all parties are to have a fair opportunity to present their positions." *Hill v. Porter Memorial Hosp.*, 90 F.3d 220, 224 (7th Cir. 1996) (affirming district court's striking of late expert reports). And the Ninth Circuit has made clear that when a plaintiff is "permitted to disregard the deadline for identifying expert witnesses, the rest of the schedule laid out by the court months in advance, and understood by the parties, would have to have been altered as well. Disruption to the schedule of the court and other parties in that manner is not harmless." *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005) (affirming district court's refusal to  permit plaintiff to supplement his disclosure with additional expert witnesses). Plaintiff's attempt to introduce a new causation expert at this juncture is fundamentally incompatible with the purposes of Rule 26.

The need for strict adherence to scheduling orders is particularly acute in the MDL context. Expert discovery in this case closed on October 25, 2023, over two and a half years ago. In an MDL, "the district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial" and "[c]ase management orders are the engine that drives disposition on the merits." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 460 F.3d 1217, 1232 (9th Cir. 2006). Failure to comply with such orders "adversely affects the public interest, as well as the parties' private interest, in expeditious resolution of litigation." *Id*. at 1252; *see also Rolandson v. Ethicon, Inc*., 2020 WL 2086279, at *10 (D. Minn.

9

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF GONZALEZ'S MOTION FOR LEAVE TO AMEND EXPERT DISCLOSURES

Apr. 30, 2020) (granting motion to strike disclosure of new experts made after deadlines set in MDL and noting "[t]he benefit of an MDL depends upon strict enforcement of deadlines and orders, lest the ostensible efficiency of the process be lost."). This case has been pending since 2020, expert discovery closed over two and a half years ago, and Monsanto has a compelling interest in the finality that this Court's rulings warrant. *See LaFlamboy v. Landek*, 2009 WL 10695380, at *4 (N.D. Ill. Sept. 3, 2009) ("In addition to the added expense, Plaintiff's actions have delayed this case and prejudiced Defendants' attempts to obtain a prompt resolution."). Plaintiff offers no case-specific justification for his belated request, only the transparent desire to evade the consequences of this Court's prior rulings by substituting a new expert for the one this Court has already excluded. Granting such relief would not merely disrupt this case; it would divert judicial and party resources from the hundreds of other cases in this litigation and send a signal that MDL scheduling and pretrial orders may be disregarded with impunity.

Allowing Plaintiff to substitute experts at this late stage would impair the efficiencies of the MDL process and further undermine the very purpose of the MDL, which exists to "promote the just and efficient conduct of [] actions" through "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407. The Supreme Court has emphasized that the "aims" of Section 1407 are to "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (2015) (quoting Manual for Complex Litigation § 20.131, p. 220 (4th ed. 2004)); *see also In re Nuvaring Prods. Liab. Litig.*, 2009 WL 4825170, at *1 (E.D. Mo. Dec. 11, 2009) ("the primary purpose behind assigning multidistrict litigation to a transferee court is to promote efficiency through the coordination of discovery"). Every one of these objectives would be undermined if Plaintiff were permitted to circumvent the MDL's scheduling and pretrial orders by substituting a new, previously undisclosed expert after the Court has twice excluded his original expert. Such a result would render the MDL's pretrial proceedings a nullity, reward the very inefficiency that the MDL process is designed to prevent, and establish a precedent that any plaintiff whose expert is excluded under *Daubert* may simply designate a replacement and force the process to begin anew.

10

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF GONZALEZ'S MOTION FOR LEAVE TO AMEND EXPERT DISCLOSURES

### 3. Plaintiff's Failure to Seek Substitution Sooner Was in Bad Faith

While Plaintiff frames the original Hamid disclosure as a good-faith effort, this Court already found that report was "not science," consisting of fewer than 140 words and seven "cautiously caveated sentences" that failed to meet even the most basic requirements of Rule 702. (MDL Dkt. 19271, PTO 294.) The inadequacy of that report, combined with prior counsel's failure to even respond to Monsanto's motion to exclude until months after it was filed, reflects, at a minimum, a persistent pattern of neglect and indifference to this Court's deadlines that should not be rewarded.

Granting Plaintiff's Motion would establish a troubling precedent: that a plaintiff whose causation expert has been excluded under *Daubert*—not once, but twice—may simply designate a replacement expert and force the defendant to relitigate the same issue indefinitely. Such a result would eviscerate the purpose of *Daubert* gatekeeping and render expert exclusion orders meaningless. Granting leave to amend would unfairly benefit Plaintiff with a third opportunity to develop his case and prejudice Monsanto. There are presently no grounds to deny summary judgment in this case. The fact that the Court has not yet formally entered summary judgment does not entitle Plaintiff to an unlimited number of attempts to manufacture admissible expert testimony. Allowing serial expert substitution after exclusion creates a "do-over" that rewards inadequate initial disclosures and incentivizes gamesmanship.

### F. The Court Should Enter Summary Judgment to Stop Indefinite Delay

Rather than granting Plaintiff yet another opportunity to manufacture admissible expert testimony, this Court should resolve the pending summary judgment question that has remained open since September 2024. Following this Court's second exclusion of Dr. Hamid's testimony in PTO 294, the Court expressly invited the parties to address whether summary judgment should be entered. Monsanto timely submitted its letter requesting summary judgment on September 24, 2024. Over nineteen months have passed without resolution and Plaintiff has failed to produce a single admissible opinion on specific causation. It is well established that a plaintiff alleging injury from toxic exposure must present admissible expert testimony on specific causation to survive summary judgment. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (on remand, affirming exclusion and granting summary judgment where plaintiff lacked admissible

11

expert testimony on causation). Plaintiff cannot meet this burden. His original expert has been excluded twice, and he cannot propose a substitute who has not produced, and may never produce, an admissible report. The present Motion is nothing more than an attempt to forestall the inevitable entry of judgment by perpetually extending a case that should have concluded long ago. The Court should deny Plaintiff's Motion and enter summary judgment in Monsanto's favor.

## IV.    CONCLUSION

For the foregoing reasons, Monsanto respectfully requests that the Court deny Plaintiff's Motion for Leave to Amend his Expert Disclosures and grant summary judgment in favor of Monsanto.

Dated:  May 14, 2026                                 Respectfully submitted,


*/s/ Linda C. Hsu*
Linda C. Hsu
Attorney for Defendant Monsanto Company


## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing (NEF) to all counsel of record who are CM/ECF participants.

*/s/ Linda C. Hsu*
Linda C. Hsu

12
MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF GONZALEZ'S MOTION FOR LEAVE TO AMEND EXPERT DISCLOSURES