Robin L. Greenwald (*pro hac vice*)
Robert J. Quigley (CA Bar No. 302879)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
rquigley@weitzlux.com

David J. Dickens (*pro hac vice*)
**THE MILLER FIRM LLC**
108 Railroad Avenue
Orange, VA 22960
Telephone: 540-672-4224
ddickens@millerfirmllc.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | |
| *In re Subpoena for Documents to Sheet Metal Workers' National Pension Fund*, Case No. 26-mc-80155-VC | **SUPPLEMENTAL BRIEF OF CO-LEAD COUNSEL IN FURTHER OPPOSITION TO BAYER AG's MOTION TO QUASH SUBPOENA PURSUANT TO RULE 45(D)(3)** |

Weitz & Luxenberg and the Miller Firm in their roles as Co-Lead Counsel in MDL No. 2741 respectfully submit this supplemental brief in opposition to Bayer AG's Motion to Quash Subpoena Pursuant to Rule 45(d)(3) ("Mot."), as directed by this Court's order dated June 4, 2026, Dkt. 15.[1]

**PRELIMINARY STATEMENT**

For the past year, Co-Lead Counsel have pursued a trove of documents of obvious relevance to the Roundup litigation, bearing on what Bayer AG knew, investigated, and said to investors about the potential harms and legal risk related to Roundup, before and after Bayer acquired Monsanto in 2018. The potential importance of these documents has only grown, as Bayer and Monsanto, trying to sell an unprecedented and deeply flawed class action settlement to class members and the public, have insinuated that Monsanto is at risk of insolvency. Were that so, the claims against its solvent, directly and vicariously liable owner would matter even more to ensure that victims are made whole.

Bayer has already collected, translated, reviewed, and produced the documents at issue to Sheet Metal Workers' National Pension Fund ("SMW Fund") in a now-settled lawsuit in this District concerning Bayer's alleged securities law violations arising from the Monsanto acquisition. After Bayer refused to produce the documents to Co-Lead Counsel, they subpoenaed them from SMW Fund, as expressly authorized by a court order entered in the securities case. All that remains to be done is for SMW Fund to re-produce the Bayer documents to Co-Lead Counsel, at no burden or expense to Bayer. Yet Bayer has sought by its Motion to block SMW Fund from producing *any* of the subpoenaed documents—not only the small subset that it claims are privileged—and Bayer has refused to negotiate what it claims are concerns that the subpoena is supposedly overbroad in certain immaterial and nonprejudicial respects.

---

[1] Unless otherwise indicated, docket citations refer to the docket in Case No. 26-mc-80155-VC.

-1-

SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO QUASH SUBPOENA
*IN RE: SUBPOENA FOR DOCUMENTS TO SHEET METAL WORKERS' NATIONAL PENSION FUND*, CASE NO: 26-MC-80155-VC

A year later, enough is enough. This Court should put an end to Bayer's stalling and direct SMW Fund promptly to produce the vast majority of the documents responsive to the subpoena. As for the small number of documents over which Bayer asserts privilege, the Court may order their production now because Bayer has waived its claims of privilege by using them as a sword and a shield in the securities case. Should the Court review some of these documents in camera, this should not delay production of the remainder.

**FACTUAL AND PROCEDURAL BACKGROUND**[2]

**A. Bayer Acquires Monsanto and Inserts Itself into the Roundup Litigation.**

As this Court is aware, Bayer AG completed its acquisition of Monsanto in June 2018, just months before the *Johnson* trial in San Francisco Superior Court would yield the first of many jury verdicts holding Monsanto accountable for causing Roundup users to develop NHL.[3] The *Hardeman* trial before this Court followed soon after in early 2019, and *Pilliod* not long after that.[4]

Since acquiring Monsanto, Bayer has not merely been a passive owner as it relates to the Roundup litigation and controversy, but it has actively inserted itself into the fray. The CEO of Bayer has stated that addressing Roundup litigation is one of his top "strategic priorities" for Bayer as a whole.[5] Bayer has engaged in an extensive public relations campaign to discredit Roundup litigation

---

[2] Co-Lead Counsel refer the Court to the more detailed factual and procedural background in their initial opposition brief filed with the Western District of Virginia and transmitted to this Court. Dkt. 9.

[3] Bayer Global, *Bayer Closes Monsanto Acquisition* (June 7, 2018), https://www.bayer.com/media/en-us/bayer-closes-monsanto-acquisition/; Vanessa Romo, *Jury Awards Terminally Ill Man $289 Million in Lawsuit Against Monsanto*, NPR (Aug. 10, 2018), https://www.npr.org/2018/08/10/637722786/jury-awards-terminally-ill-man-289-million-in-lawsuit-against-monsanto.

[4] *See generally Hardeman v. Monsanto Co.*, 997 F.3d 941, 971–72 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2834 (2022); *Pilliod v. Monsanto Co.*, 67 Cal. App. 5th 591 (2021).

[5] Jennifer Marston, *'Glyphosate is safe': Facing tens of thousands of lawsuits, Bayer names ongoing Roundup-related litigation a top priority*, AFN (Mar. 5, 2024),

and call into question adverse jury verdicts and judicial decisions, and has asserted that Bayer itself "stand[s] fully behind the safety of glyphosate."[6] Bayer has also aggressively lobbied federal and state lawmakers to pass legislation with the aim of granting Bayer and Monsanto unprecedented immunity from lawsuits involving Roundup and other herbicides.[7] Most recently, Bayer has vocally and actively promoted a proposed class action settlement of the Roundup litigation, whose serious flaws Co-Lead Counsel has raised with this Court and as counsel to objectors in the class action.[8] In connection with that proposed settlement, Monsanto and Bayer touted a *Wall Street Journal* report from last year stating that "Bayer ha[d] engaged restructuring advisers" and was considering causing Monsanto to file for bankruptcy in order to limit its exposure to liability from the Roundup litigation.[9]

Though Bayer has been at the periphery of the Roundup MDL since it acquired Monsanto in 2018, it has never formally been a party to this MDL or participated in MDL discovery. This has been so for reasons of MDL history and logistics that are not set in stone. The early MDL cases were brought by people whose Roundup exposure and injury preceded Bayer's involvement with the

---

https://agfundernews.com/glyphosate-is-safe-facing-tens-of-thousands-of-lawsuits-bayer-names-ongoing-roundup-related-litigation-a-top-priority.

[6] Bayer Global, *Managing the Roundup Litigation*, https://www.bayer.com/en/managing-the-roundup-litigation (last visited June 17, 2026).

[7] *See* Colleen Kottke, *Pesticide Manufacturers Ask Lawmakers for Immunity from Lawsuits by Sick Farmers*, USA Today (July 22, 2025), https://www.usatoday.com/story/news/2025/07/22/should-lawmakers-protect-pesticide-makers-from-from-lawsuits-by-sick-farmers/85324182007/. As a result of Bayer's lobbying, two states, North Dakota and Georgia, have enacted legislation that purports to extend immunity of this kind to pesticide manufacturers.

[8] Bayer Global, *Monsanto Announces Roundup™ Class Settlement Agreement to Resolve Current and Future Claims* (Feb. 17, 2026), https://www.bayer.com/media/en-us/monsanto-announces-roundup-class-settlement-agreement-to-resolve-current-and-future-claims/; *see* Joint Mot. of MDL Co-Lead Counsel and Wave 10 Plaintiffs for Injunctive or Declaratory Relief Related to Proposed National Roundup Settlement, *In re Roundup Prods. Liab. Litig.*, Case No. 3:16-md-02741-VC, Dkt. 21962 (N.D. Cal. Apr. 8, 2026).

[9] Andrew Scurria, Patrick Thomas, & Alexander Gladstone, *Bayer Seeks New Roundup Settlement While Exploring Monsanto Bankruptcy*, Wall St. Journal (May 15, 2025), https://www.wsj.com/articles/bayer-seeks-new-roundup-settlement-while-exploring-monsanto-bankruptcy-35bf28de (May 15, 2025).

SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO QUASH SUBPOENA
*IN RE: SUBPOENA FOR DOCUMENTS TO SHEET METAL WORKERS' NATIONAL PENSION FUND*, CASE NO: 26-MC-80155-VC

company, and Bayer has become a more active participant in Monsanto's business since it first

acquired it. Bayer is also located overseas, which, as this subpoena dispute illustrates, presents

certain challenges to bringing it into U.S. lawsuits in which it does not wish to participate.[10] Were

Bayer and Monsanto to follow through on their threat to bankrupt Monsanto in order to prevent its

victims from recovering, this would only heighten the urgency of holding Bayer itself accountable.

### B. The Securities Case Reveals Relevant Discovery into Bayer's Roundup-Related Knowledge and Actions.

The discovery that is the subject of this dispute was initially produced in a securities fraud

class action lawsuit before Chief Judge Seeborg. *Sheet Metal Workers Nat'l Pension Fund v. Bayer

AG*, No. 20-cv-04737-RS (N.D. Cal.). In that case, investors alleged that Bayer had made misleading

statements and omissions "concerning [its] due diligence efforts prior to the Monsanto acquisition,"

relating specifically to "Monsanto's litigation risks, and [that Bayer] had reviewed non-public

information to inform that review." *Id.* Dkt. 90.[11]

In April of 2025, the parties to the securities litigation sought preliminary approval of a

proposed class action settlement. Dkt. 9, Ex. A, at 6. The preliminary approval papers revealed that

Bayer and its witnesses had produced documents and testimony that were relevant to the Roundup

MDL and appeared novel, given that Bayer "did not produce discovery in the consolidated MDL

proceedings and ha[d] largely avoided participation in the non-MDL [Roundup] cases." *Id.* at 2–3,

14. Bayer declined to produce these documents in response to Co-Lead Counsel's request, leading

to motion practice in the *Sheet Metal Workers* case seeking modification of the protective order

---

[10] In the *Sheet Metal Workers* proceeding, Chief Judge Seeborg rightly rejected Bayer's argument that Co-Lead Counsel had waived the right to seek discovery from Bayer by not doing so earlier in the litigation. Dkt. 9, Ex. A at 9–10.

[11] Chief Judge Seeborg did not permit the investors to move forward with securities claims concerning Monsanto's science-based trial defenses in the Roundup litigation. *Sheet Metal Workers Nat'l Pension Fund v. Bayer AG*, No. 20-cv-04737-RS, Dkt. 122 (N.D. Cal.).

pursuant to which that discovery had been produced. In August 2025, Chief Judge Seeborg granted in relevant part Co-Lead Counsel's request to modify the protective order. *Id.* at 11–14. On November 17, 2025, he entered an order making clear that Co-Lead Counsel could pursue the discovery materials from the plaintiffs in the securities case, after Bayer once again stated that it would not accept service of a subpoena through its U.S. counsel. Dkt. 9, Ex. B at 1–2, Ex. C. at 3.

### C. The Subpoena Dispute.

On November 18, 2025, Co-Lead Counsel promptly served a subpoena on SMW Fund seeking the reproduction of the materials produced by Bayer in the *Sheet Metal Workers* case. Dkt. 1, Ex. 1. On January 5, 2026, Bayer moved to quash the subpoena in its entirety in the Western District of Virginia. Dkt. 1.[12] After the matter was fully briefed, Judge Yoon of that District sua sponte ordered it transferred to this Court, reasoning that the parties agreed that certain privilege questions should in any event be decided in the Northern District of California, and the dispute implicates aspects of the Roundup MDL. Dkt. 11 at 4–5.

### ARGUMENT

Bayer would be neither prejudiced nor unduly burdened if SMW Fund complies with a subpoena seeking documents that Bayer has already produced in a Northern District of California case about its Roundup-related liability. Fed. R. Civ. P. 45(d)(3)(A)(iv). As Co-Lead Counsel have explained at length in their briefing before the Western District of Virginia, which has been transmitted to this Court and which Co-Lead Counsel reincorporate here, *see* Dkt. 9, these materials are relevant to claims and defenses in the Roundup MDL, and bear on Monsanto's (and potentially Bayer's) liability. *See id.* at 8–12. To the extent the subpoena may be read to encompass some small

---

[12] The subpoena sought production of the materials in Orange, Virginia, which is within 100 miles of SMW Fund's offices in Falls Church, Virginia. Dkt. 1, Ex. 1 at 2.

number of purely securities-related documents that do not concern Roundup, this is only because Bayer has refused to produce the documents itself or negotiate a modification of the subpoena to address its supposed concerns. The appropriate remedy, if any, would be excise those documents from the production, not to quash the subpoena altogether.

In the Western District of Virginia proceedings, the parties agreed that the privilege dispute over certain due diligence-related materials should be raised in the first instance in this MDL. *See* Dkt. 9 at 18–19. Now that the case has returned here, the Court should find that Bayer has waived privilege when it chose to proceed with an "advice of counsel" affirmative defense in the securities litigation. *Id.* at 20; *Bittaker v. Woodford*, 331 F.3d 715, 721 (9th Cir. 2003) (en banc).

## I.    The Subpoena Seeks Discovery Proportional to the Needs of this MDL, and Bayer Fails to Show Grounds for Quashing It.

The discovery that Bayer produced in the *Sheet Metal Workers* case is plainly relevant to the claims and defenses at issue in the Roundup MDL. What Monsanto told Bayer about its Roundup problem before and after the merger, and what Bayer ascertained for itself, bear on Monsanto's, and Bayer's, knowledge, motive, breach of duty, and eligibility for punitive damages.

Bayer does not seriously dispute this. Instead, it contends that the subpoena is too broad, because it seeks re-production of some documents that are not relevant to the MDL. Mot., Dkt. 1 at 11–13. Bayer does not explain what these supposedly irrelevant documents are. At most, its submission suggests that certain documents related to the pricing of American Depository Receipts may bear only on securities-law related issues as opposed to Roundup-related ones. *See* Opp., Dkt. 9 at 17. Although Bayer would not be prejudiced by the re-production of these documents, Co-Lead Counsel does not particularly want them and would be willing to modify the subpoena to forgo any truly irrelevant documents—an offer that Bayer refused soon after the subpoena was served.

But Bayer claims that it is impossible to excise irrelevant documents from the production, and any production at all would require "Bayer to retain counsel to unearth and re-review over 200,000 pages of documents originally produced years ago." Reply, Dkt. 10, at 4–5. This is simply not credible. Even if Bayer will not just produce the documents itself and insists on leaving SMW Fund as the go-between, it could provide the Bates ranges and other information about the putatively excluded documents to SMW Fund, as Co-Lead Counsel have proposed previously. Dkt. 9 at 18. Bayer's unwillingness to accede to any production of even the most obviously relevant and nonprivileged documents confirms that its objections are only intended to delay. In that, at least, it has succeeded for several months, but this should end here.

The merits of Co-Lead Counsel's position have only grown since this dispute began, as Bayer has put Monsanto's solvency at issue in news reporting, court filings, and class action notices (supposedly) disseminated to hundreds of thousands of people. *See generally* Fed. R. Civ. P. 26(b) (describing proportionality principles for setting the bounds of discovery). If Monsanto cannot or will not pay its victims, it becomes more important that Bayer not escape liability just because it is an ocean away. And to the extent Ninth Circuit law applies, following the transfer of this action, to issues previously briefed under Fourth Circuit law,[13] *see* Opp., Dkt. 9, at 8–17, the result remains the same. *See* Opp., Dkt. 9, at 8–17. "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries. . . . Thus, a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Apple Inc. v. 1000 Van Ness LP*, No. 26-MC-80021-ASK, 2026 WL 948599, at *1 (N.D. Cal. Apr. 8, 2026) (quoting *Gonzales v. Google,*

---

[13] *See In re (Subpoenas Served on E. Mark) Braden*, 344 F. Supp. 3d 83, 93 (D.D.C. 2018) (citing *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987)).

*Inc.*, 234 F.R.D. 674, 679–80 (N.D. Cal. 2006)) (cleaned up). And here, as in the Fourth Circuit, the appropriate remedy for supposed overbreadth of an otherwise proper subpoena is to narrow it, not to quash it outright. *See id.* at *2 (finding that requested documents were directly relevant to claims in litigation, and narrowing certain requests after finding them to be "overbroad").[14] The usual source of hardship or undue burden—the cost and time of collecting and reviewing documents anew—is totally absent here, since the documents have already been gathered in the *Sheet Metal Workers* litigation and the subpoena seeks only their reproduction, subject to the safeguards of protective orders entered in this MDL as well as the *Sheet Metal Workers* case. The Court should deny the Motion to the extent it contests the production of nonprivileged documents and information.

## II.    Bayer Has Waived Any Privilege Over Due Diligence-Related Documents Through Its Conduct in the Securities Case.

Bayer has asserted privilege over documents that it characterizes as "memoranda, presentations, and legal analysis prepared by the Bayer lawyers who performed pre-merger diligence on the Roundup litigation." Mot., Dkt. 1 at 6–7. These were ordered produced in the *Sheet Metal Workers* case over Bayer's objections, after Magistrate Judge Kim applied the doctrine of implied waiver and found that Bayer's use of "privilege as both a sword and a shield" was improper and had the effect of waiving any claim of privilege it had over those documents. Dkt. 9, Ex. D at 3–4 (citing *Bittaker*, 331 F.3d at 718–19). Bayer's waiver of privilege in that action should carry over to this one.

---

[14] *See also Gonzales*, 234 F.R.D. at 680, 688; *Green v. Baca*, 219 F.R.D. 485, 490 (C.D. Cal. 2003) ("It is within the discretion of a court ruling on a motion to compel to narrow the requests rather than sustain the responding party's objections to them in toto. In doing so, the court effectively sustains an objection that the requests are vague, ambiguous or overbroad in part, and overrules it in part.") (collecting cases).

Importantly, implied waiver of this kind follows from the party's deliberate choice to put their attorney's performance at issue, which it need not do. "[T]he holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition." *Bittaker*, 331 F.3d at 721. Bayer relies on a distinguishable line of cases, including the Ninth Circuit's decisions in *de la Jara* and *Pacific Pictures*, where parties were forced to turn over putatively privileged documents in response to government process, and privilege was later found to be intact. Mot., Dkt. 1, at 18–19. But that is not what happened here. Bayer chose to persist in its advice of counsel-like defense even after the discovery dispute arose in the *Sheet Metal Workers* case, and so it waived any privilege over the due diligence materials.

It is true that, under the implied waiver doctrine, "if a party complies with the court's conditions and turns over privileged materials, it is entitled to rely on the contours of the waiver the court imposes." *Bittaker*, 331 F.3d at 721. Here, this would mean that the "Attorneys' Eyes Only" designation imposed by Judge Kim on certain documents should carry over as a condition of their use in the Roundup MDL, to which Co-Lead Counsel would not object. *Bittaker* itself found that, in a death penalty habeas case, a petitioner who brought an ineffective assistance of counsel claim did not waive "the attorney-client privilege[] for all time and all purposes," 331 F.3d at 717, 724–25, a sensible result that later case law has noted was informed by the fairness and process interests at stake in a death penalty habeas case. *Lambright v. Ryan*, 698 F.3d 808, 818–19 (9th Cir. 2012). It does not follow from this that a well-represented corporate litigant can strategically renounce privilege only to revive it later. To hold otherwise would encourage weaponizing privilege claims.

Bayer also argues that these materials are privileged because they are subject to work product protection. Mot., Dkt. 1 at 18–19. But the Ninth Circuit has recognized that parties may impliedly waive work product protection in some instances. *See United States v. Sanmina Corp.*, 968 F.3d

1107, 1126 (9th Cir. 2020) (finding implied waiver of factual portions of attorney memoranda). And to the extent in camera review may be required to determine how best to tailor the precise "contours of the waiver the [*Sheet Metal Workers*] court impose[d]," however, *see Bittaker*, 331 F.3d at 721, this also does not mean that all subpoena compliance must come to a standstill. Rather, SMW Fund should be directed to produce promptly the documents over which Bayer has no colorable claims of privilege.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Opposition, Dkt. 9, the Motion should be denied in its entirety. Co-Lead Counsel respectfully requests that the Court enter an appropriate order directing SMW Fund to produce responsive documents within seven days of entry.

DATED: June 18, 2026

Respectfully Submitted,

/s/ *Robin L. Greenwald*
Robin L. Greenwald (*pro hac vice*)
Robert J. Quigley (CA # 302879)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
rquigley@weitzlux.com

/s/ *David J. Dickens*
David J. Dickens (*pro hac vice*)
**THE MILLER FIRM LLC**
108 Railroad Avenue
Orange, VA 22960
Telephone: 540-672-4224
ddickens@millerfirmllc.com

*Co-Lead Counsel*

SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO QUASH SUBPOENA
*IN RE: SUBPOENA FOR DOCUMENTS TO SHEET METAL WORKERS' NATIONAL PENSION FUND*, CASE NO: 26-MC-80155-VC