**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case Nos.: 3:16-md-02741-VC |
| This document relates to: | **JOINT CASE MANAGEMENT STATEMENT** |
| ALL ACTIONS | |

Pursuant to the Court's July 6, 2026 Order, ECF No. 22228, the Parties submit the below responses:

## I.     PLAINTIFFS' STATEMENT

### A.  Claims in Pending MDL Cases.

There are approximately 184 cases currently pending in the MDL. Co-lead counsel reviewed every complaint to respond to the Court's first question.[1] The cases span state law claims across 34 states.  Every case alleges at least one cause of action in addition to label-based failure to warn. The vast majority of the complaints – well over 90% – specifically allege design defect and negligence claims.  Many of the cases also allege warranty claims as well as state-specific claims, such as claims under state consumer protection statutes.  None of these claims are label-based warning claims; all of them survive *Durnell*'s label-based failure to warn preemption decision and are expressly permitted under *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431 (2005).

---

[1] Monsanto's counsel extended the courtesy of providing the pleadings to co-lead counsel.

Attached as Exhibit 1 is a chart of the pending cases and the causes of action alleged other than failure to warn.[2] We also note that many of the complaints allege warning claims that are not label-based, such as deceptive marketing, promotion, and advertising claims. Plaintiffs believe these survive the *Durnell* ruling, but this submission does not address them because such an analysis requires individualized review and argument regarding each complaint that is beyond the scope of this submission.

Despite the above, co-lead counsel respectfully request that the Court allow attorneys with pending cases to have an opportunity to amend their complaint to clarify the causes of action alleged in the operative complaint and add additional factual allegations supporting their claims. This would ensure that there is no confusion regarding the basis for each plaintiff's non-label-based failure to warn claims. We propose that the Court allow 45 days for such amendments. Otherwise, Plaintiffs should inform Monsanto within 45 days which causes of action in their currently filed complaint they will not pursue in light of *Durnell*. If attorneys decide not to amend their complaint(s), Plaintiffs submit that *Durnell* should not give Monsanto an opportunity to supplement previously filed Daubert motions or motions for summary judgment; the non-label failure to warn claims pre-existed *Durnell* and Monsanto's time to seek summary judgment on those claims has passed.

### B.  State law claims may be pursued post-*Durnell*.

That design defect claims are not preempted is beyond dispute because Monsanto's own counsel confirmed to the Supreme Court that they are not. At the *Durnell* oral argument, Justice

---

[2] Co-lead counsel made best efforts to summarize all the causes of action in each of the complaints, but did not have time to confirm accuracy with individual counsel given the time constraints.

JOINT CASE MANAGEMENT STATEMENT
16-MD-02741-VC

Coney-Barrett asked Monsanto's counsel directly whether design defect claims are preempted. He agreed they are not. In his response, he distinguished medical device jurisprudence, stating that there is "an important difference from this context [FIFRA] and the medical device amendments context, which is, although they're worded similarly, the preemption clause in the medical device amendments sweeps in design defect claims. And, here, it's really just on the labeling." *Monsanto Co. v. Durnell*, No. 24-1068, Transcript of Oral Argument, April 27, 2026, at 31-32, *available at* https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-1068_fcgj.pdf. The Deputy Solicitor General agreed with Monsanto's counsel, further noting that such claims survive as "*Bates* itself recognizes." *Id.* at 50.

Nothing in *Durnell* overturns *Bates*. *Durnell* narrowly held that a plaintiff's "failure-to-warn claim under Missouri tort law" conflicted with FIFRA's clause preempting "state-law labeling requirement that differs from the federal labeling requirements imposed under FIFRA." *Id.* at *7. Moreover, *Durnell* repeatedly **reaffirms** that *Bates* remains good law. *E.g.*, *Monsanto Co. v. Durnell*, No. 24-1068, 2026 WL 1825691, at *1, *3, *6 (U.S. June 25, 2026). These opinions, which must be read together, confirm that, while label-based failure to warn claims are preempted, claims that do not implicate the label are not, as Monsanto itself confirmed at argument. *Durnell* left untouched *Bates*' determination that "[r]ules that require manufacturers to design reasonably safe products to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for 'labeling or packaging.'" *Bates*, 544 U.S. at 444 (holding that "petitioners' claims for defective design, defective manufacture, negligent testing, and breach of express warranty are not pre-empted" by FIFRA). And, whether a claim implicates labeling or packaging requirements depends on the "***elements*** of

3

the common-law duty at issue." *Id.* at 445 (emphasis added). Notably, it does **not** depend on whether "whether a jury verdict will prompt the manufacturer to take any particular action." *Id.* (emphasis added).

To the extent Monsanto now contends that *all* claims are preempted, regardless of whether they implicate the label, it is judicially estopped from doing so. Parties are judicially estopped from asserting an argument when (1) the positions taken are clearly inconsistent; (2) the inconsistent party achieved success in the prior proceeding; and (3) allowing the inconsistency to stand in the present proceeding would permit an unfair advantage. *New Hampshire v. Maine,* 532 U.S. 742, 750–51 (2001). The purpose underlying judicial estoppel is "'to protect the integrity of the judicial process [by] prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Id*. at 749-50 (citations omitted). All three parts of this test are met here. It would be inconsistent for Monsanto to argue that design defect or negligence claims that are based on facts other than the product's label are preempted; its counsel and the United States gave the opposite answer to direct questions at oral argument. The other two factors are obviously met as well. Judicial estoppel prevents Monsanto from arguing in this Court that non-label-based claims for design defect, negligence, or other state law claims are preempted.

Monsanto nevertheless has intoned that all of plaintiffs' claims are merely disguised failure-to-warn claims. But the argument cannot be reconciled with *Bates*, which explains, *inter alia*, that nothing in the preemption provision displaces the duty to "design reasonably safe products." And a claim cannot be a disguised failure to warn claim if it does not include as an

element a discrete "dut[y]" mandating a particular "standard for a product's labeling." *Durnell*,

2026 WL 1825691, at *6 (quoting *Bates*, 544 U.S. at 446).[3]

---

[3] Monsanto identifies four of the 184 cases currently pending in the MDL as examples for their preposterous, not to mention bad faith, proposition that "all claims asserted by Plaintiffs in this MDL are preempted by federal law, pursuant to the United State Supreme Court in *Durnell*". Their examples are as absurd as their position. As to *Mee v. Monsanto*, No. 20-31, the complaint includes 213 paragraphs, the vast majority of which do not directly address or implicate label-based failure to warn. A cursory review of the complaint shows that there are several causes of action, supported by numerous allegations throughout the complaint, that *Durnell* does not preempt as they have nothing to do with the product label, including the first cause of action for negligence (such as "failing to test Roundup and/or failing to adequately, sufficiently and properly test Roundup", ¶ 134(b) and "negligently representing that Roundup was safe for its intended purpose and/or that Roundup was safer than ordinary and common items such as table salt, when, in fact, it was unsafe", ¶ 134(j)), and the second cause of action for design defect (alleging Roundup is defectively designed because "Defendant did not sufficiently test, investigate or study its Roundup products", ¶ 148(d) and "Defendant did not conduct adequate post-marketing surveillance of its Roundup products", ¶ 148(g). There are numerous other examples of non-label-based failure to warn allegations in the *Mee* complaint, and Monsanto's one sound bite from a 40-page complaint proves nothing. Monsanto's cherry-picked quotations from *Menarchem* are likewise unavailing. Although there are references to labeling within the negligence cause of action, those are a narrow subset of the over two dozen independent grounds the plaintiff alleges in support of his claim. *See, e.g.*, Complaint, *Menarchem v. Monsanto*, No. 26-5216 (Apr. 23, 2026), at ¶¶ 135-137 (describing, *inter alia*, Monsanto's failure to conduct adequate testing of Roundup and its failure to disclose Roundup's dangerous propensities in marketing and advertising). Monsanto also conveniently fails to mention the *Menarchem* plaintiff's other causes of action, namely, design defect, breach of implied warranty, and breach of express warranty, none of which hinge on labeling. *Id.* at ¶¶ 143-164, 186-215. Similarly, the plaintiff in *Burton v. Monsanto* pleads numerous grounds for relief, and separate causes of action, that have nothing to do with inadequate warnings in the Roundup label. *See, e.g.,* Complaint, *Burton v. Monsanto*, No. 24-03223, at ¶¶ 174 (setting forth defects in design and the availability of safer alternatives), 222 (identifying negligent conduct such as failure to test), & 252(a) (identifying "advertising and marketing materials" as sources of express warranty that Roundup was safe for its intended use). The same is true of *Faschingbauer v. Monsanto*, No. 17-3202; even within the express warranty claim, the quoted portion is just a subset of the factual allegations that support the claim (also discusses marketing, advertising, public representations and concealments about product quality and safety). Yet Monsanto selects *one* paragraph at the end of the complaint which includes the word "label" in Count 5 (implied warranty of merchantability), even though the cause of action

5

There is rich body of relevant pre-*Bates* caselaw which generally holds that failure-to-warn claims are preempted but "which allows for negligence or strict products liability claims as long as they are not based on inadequacies in the product's labeling or packaging." *Kawamata Farms, Inc. v. United Agri Products,* 86 Hawai'i 214, 235, 948 P.2d 1055, 1076 (1997) (collecting cases). For example, a "claim based on negligent or inadequate testing will not be considered a disguised label-based challenge if adequate testing would have caused the manufacturer to alter the product itself." *Wright v. Am. Cyanamid Co.*, 599 N.W.2d 668, 673 (Iowa 1999); *Romah v. Hygienic Sanitation Co.*, 705 A.2d 841, 855 (Pa. Super. Ct. 1997) (claim not preempted where "adequate testing and proper design would have caused Dow to alter the product itself so it would be safe.").

Similarly, under California law, a pesticide design defect claim is not preempted where "due to the content and properties of the products, they cannot safely be used in the home. Period." *Arnold v. Dow Chem. Co.*, 91 Cal.App.4th 698, 716 (2001). Under Indiana law, "a product liability claim premised on a design defect under Indiana's Product Liability Act focuses on the dangerous propensities of a product due to its inherent properties and is not predicated on the adequacy of warnings on a product's labeling or packaging." *Dow Chem. Co. v. Ebling*, 723 N.E.2d 881, 900–01 (Ind. Ct. App. 2000).  That a design defect claim can survive the absence of a label-based failure to warn claim in a Roundup case was recently tested in a Missouri state court trial. In that case, the court dismissed the failure to warn claim before trial because the plaintiff allegedly did not

---

includes over a dozen allegations, including that Monsanto  "engaged in the business of testing, developing, designing, formulating, manufacturing, marketing, selling, distributing, and  promoting its Roundup® products, which are defective and unreasonably dangerous to users and consumers, including Plaintiff, thereby placing Roundup® products into the stream of commerce," and that such products were under the "ultimate control of and supervision of the Defendant." *Id.* at ¶¶ 198-200.

JOINT CASE MANAGEMENT STATEMENT
16-MD-02741-VC

read the label, but nevertheless held that, even absent a failure-to-warn claim, there is sufficient evidence of a design defect to proceed to trial because "Monsanto's alternative Roundup formulations without glyphosate or surfactant make this an issue for the jury determination." *Grantges v. Monsanto,* Order re: Summary Judgment, Case No. 20SL-CC02256, Cir. Ct. St. Louis Cty. (May 4, 2025), at 17 (Exhibit 2). Monsanto concedes that its new non-glyphosate Roundup formulation contains active ingredients that "have been used safely and effectively in many different weed-control products from a variety of companies for decades."[4]

Plaintiffs in the MDL routinely plead claims, such as negligent failure to test, non-label-based failure to warn claims, and design defect claims. These are beyond *Durnell*'s reach.[5] Indeed, of the Roundup trials that have gone to verdict and decided in plaintiffs' favor, the *majority* have found for plaintiffs on design defect and negligence (in addition to failure to warn[6]).

---

[4] Bayer Global, *Statement on RoundUp Active Ingredient Safety*. Archived version of webpage https://www.bayer.com/en/roundup-ingredient-safety, dated Oct. 22, 2024, is attached as Exhibit 3.

[5] While the Court in *Hardeman* did not allow the jury to decide the design defect claim, that decision appears to be based on the evidence the parties presented at trial, which is only a **fraction** of the evidence developed in this litigation as of today. For example, there is expert evidence not presented in *Hardeman* that the use of POEA as a surfactant "enhances the genotoxicity of glyphosate, with the result that Roundup is about 50 times more genotoxic than glyphosate alone" and "enhances the absorption of glyphosate through the skin." *Pilliod v. Monsanto Co.*, 67 Cal. App. 5th 591, 609, (Cal. Ct. App. 2021). The POEA surfactant used in U.S. products is in fact "banned in Europe, where a less toxic surfactant is used." *Id.* at 603.

[6] There are also other claims untouched by *Durnell*, such as, for example, negligent failure to test. Monsanto admits that it has never tested the formulated Roundup product that plaintiffs used and still use today; that admission supports negligence claims as well as design defect claims under many state laws. Moreover, as this Court heard at the *Hardeman* trial, there is evidence beyond Monsanto's admission, including Monsanto's failure to test the formulated product after world-renowned genotoxicologist Dr. Parry informed Monsanto that its formulated product is

7

Because many of the state-law claims in the MDL are unaffected by *Durnell*, Monsanto's suggested four-stage process for plaintiffs to "explain whether they believe their cases should continue to be litigated in light of *Durnell*" is unnecessary and wasteful of Court and party resources. In particular, Monsanto's request that plaintiffs' counsel submit three-page statements stating which claims can proceed in light of *Durnell* and articulating the basis for their position would improperly shift the burden onto plaintiffs to justify their own pleadings. If Monsanto believes any non-label-based failure-to-warn claims are preempted following *Durnell*, it carries the burden of proof to demonstrate why that is. Plaintiffs should, however, be given the opportunity to dismiss label-based failure to warn claims, or to narrow these claims as explained above: for example, by disclaiming a label-based theory or allegations, while proceeding with other, non-preempted theories.

## C. Differences in State Laws Favor Deference to the Transferor Court on State-Specific Claims such as Design Defect.

Design defect claims are state-law specific. As courts note, "jurisdictions have articulated diverse formulas on the subject of design defect." *Tincher v. Omega Flex, Inc.*, 628 Pa. 296, 363, 104 A.3d 328, 368 (2014). Differences include, but are not limited to, availability of the consumer expectation, the risk-utility test, the requirement to establish a reasonable alternative design and whether another pesticide or chemical constitutes a reasonable alternative, application of a state's Product Liability Acts, exceptions to product liability acts (such as the environmental torts in New

---

genotoxic and that additional testing is critical to protect the health of product users, as well as Monsanto's Roundup product steward Dr. Donna Farmers' emails that her colleagues cannot state publicly that Roundup is safe to use because Monsanto has never tested the formulated product for carcinogenicity.  Plaintiffs in the MDL have routinely pleaded and continue to plead non-label-based negligence and design defect claims.

JOINT CASE MANAGEMENT STATEMENT
16-MD-02741-VC

Jersey) and more. *See M. McWilliams & M. Smith*, "An Overview of the Legal Standard Regarding Product Liability Design Defect Claims and a Fifty State Survey on the Applicable Law in Each Jurisdiction," 82 Def. Couns. J. 80, 83 (2015) ("[a] survey of the fifty states reveals no consensus with respect to application of either the consumer expectations test or the risk-utility test"). Indeed, in the states that have adopted it, the risk/utility analysis presents an issue of fact for the jury to determine. *See, e.g., Tincher v. Omega Flex, Inc.*, 628 Pa. 296, 428 (2014); *see also, e.g., Barclay v. Techno-Design, Inc.*, 10 N.Y.S.3d 665, 668 (2015); *Pitts v. Genie Indus., Inc.*, 921 N.W.2d 597, 609 (Neb. 2019).

Thus, given the variances state-by-state, Plaintiffs respectfully submit that issues of specific state law claims are best decided by the transferor courts on remand that likely will be familiar with the state law. This is underscored by the fact that individual plaintiffs' facts may also be relevant to many of these claims, and, for some state law claims, additional case specific expert testimony might be desired or necessary to prove these state law claims. This individualized, plaintiff-specific case development is best undertaken in the transferor court when the case is assigned a trial date.

### D. <u>Pending Summary Judgment Motions on Causation Grounds Should Proceed As Usual.</u>

As a preliminary matter, and as set forth above and in the previous case management statement, nothing in *Durnell* precludes cases in the MDL from proceeding. The only impact of *Durnell* on the currently pending cases is that the Plaintiffs cannot pursue their label-based failure to warn claim, assuming that claim is pleaded in their complaint (which appears to be the case in nearly all cases). Thus, as to the pending Daubert and summary judgment motions, Plaintiffs submit that they should proceed as scheduled without supplementation. Supplementation would

only be appropriate if the Court agrees with the suggestion in section I above and allows plaintiffs to amend their complaints in light of *Durnell*. In that event, Plaintiffs submit that Monsanto would be entitled to supplement their summary judgment motion to address amended claims and/or newly added claims. Otherwise, in the absence of an amendment to the complaint, Daubert and summary judgment motions on causation grounds should proceed as they have in the past. Issues of causation are not impacted by the *Durnell* preemption ruling, and because our review of the current complaints before this Court show that they all contain claims besides label-based failure to warn claims, the Court should proceed with ruling on pending motions in accord with its schedule.

### E.      *Durnell* Has No Impact on the Continuation of this MDL.

Defendant argued in the initial joint CMC statement that this Court should close the MDL, and in the subsequent Order the Court stated that it will defer to the JPML. Plaintiffs wish to inform the Court why the MDL should continue.

First, in light of the *King* proposed class action settlement, which the state court has scheduled for a final approval hearing on August 19, 2026, plaintiffs who are diagnosed with NHL in the future as a result of their Roundup exposure will likely file their cases in federal court; Missouri courts, if the class is certified and upheld on appeal, will likely no longer be a venue for future Roundup cases, substantially increasing federal court filings. The class settlement, if approved, will give rise to a number of Constitutional issues for which consistency of rulings is important and that will benefit from this Court's extensive expertise overseeing the litigation. It would be inefficient and an unnecessary burden on courts across the country if future filings were not centralized in this MDL.

JOINT CASE MANAGEMENT STATEMENT
16-MD-02741-VC

Second, in light of *Durnell*, it is likely that additional discovery of Defendant will be necessary to focus on the non-label-based claims. It makes sense that such discovery should be undertaken in the MDL and shared with MDL counsel.

Finally, this Court has not addressed individualized claims, or the sufficiency of the failure to warn claim, in the individual cases it reviews prior to deciding remand. The Court's analysis has instead centered on specific causation; *i.e.*, whether plaintiffs have submitted sufficient facts of exposure and scientific support to establish that exposure to Roundup is a substantial contributing factor of their non-Hodgkin's lymphoma. That inquiry remains the same post-*Durnell*. Indeed, prior to *Durnell*, the specific claims at issue did not impact the Court's analysis since the causation analysis was the same for all claims, regardless of the theory of liability prior to deciding remand.

## II.    MONSANTO'S STATEMENT

As the Court knows, Monsanto's position is that all claims asserted by the plaintiffs in this MDL are preempted by federal law, pursuant to the United States Supreme Court in *Durnell*. Plaintiffs' lengthy submission on the merits of the preemption issue appears to bottom out on the untenable principle that as long as a claim is titled something other than "failure to warn," it falls outside the scope of *Durnell*. That is nonsensical. *Durnell* confirms that a claim's substance, not what a plaintiff happens to call it, controls. FIFRA's Uniformity provision preempts "*any state tort claim* that would require a pesticide manufacturer to use a label" other than "the EPA-approved label." *Monsanto v. Durnell*, 2026 WL 1825691, at *10 (U.S. June 25, 2026) (emphasis added). That conclusion builds on prior precedent, which had recognized that a claim is subject to express preemption under FIFRA if it "set[s] a standard for a product's labeling that the . . . label is alleged to have violated" such as "by containing false statements and inadequate

11

warnings." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 446 (2005).  Indeed, *Bates* held that disguised "failure-to-warn claims," *id.*, which had been pled as "claims for negligent testing and defective design and manufacture," *id.* at 457 (Thomas, J., concurring in part), qualified as "requirements for labeling," within the meaning of FIFRA's express preemption provision.  7 U.S.C. § 136v(b).  The point also follows from baseline principles of preemption analysis, which look to the substance of the claim asserted, not the labeling of it.  *See Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979) (when conducting a preemption analysis, the court "is not bound by the name, description or characterization given it by the legislature or the courts of the State, but will determine for itself the practical impact of the law") (internal quotations and brackets omitted).  These authorities leave no doubt that *any* claim that would require Monsanto to warn that Roundup causes cancer is preempted, and those are the only types of claims that have been developed in the long history of this MDL.

The Court is also already aware that Monsanto's view is that this MDL should be terminated, because the failure-to-warn claims it was formed to address are now preempted by federal law.  Plaintiffs curiously argue for the MDL to continue to exist, but for issues of pre-emption to be decided by transferor courts upon remand.  That is likewise nonsensical; MDLs are not convened solely to address issues Plaintiffs would like to have centralized.  To the extent Plaintiffs believe that preemption should be reserved for remand, that is just further support for Monsanto's position that this MDL is no longer warranted.  In any event, as the Court stated in its most recent Order, this is an issue for the JPML to decide.

Recognizing Plaintiffs disagree on these points and that ultimate resolution of the issue remains to be determined, Monsanto provides the following answers to the Court's questions in the event the MDL is not closed:

1. **Going by wave, which of the pending cases purport to assert claims for anything other than failure to warn, and which do not? For this exercise, the case should be listed as asserting a claim for something other than failure to warn even if Monsanto takes the view that the claim is really a failure to warn claim in disguise.**

Every pending case in the MDL includes at least one count that is not expressly titled failure-to-warn, and thus every pending case potentially *purports* to assert a claim(s) for something other than failure-to-warn.  For example, the vast majority of pending cases include claims labeled as design defect, negligence, breach of warranty, negligent misrepresentation, and/or fraud.  For the most part, however, these claims largely describe an alleged failure to warn as the sole or significant basis of those claims. The following is a list of examples of such claims:

- "Defendant marketed and promoted a product in such a manner so as to make it inherently defective as the product downplayed its suspected, probable, and established health risks inherent with its normal, intended use." *Mee v. Monsanto Co.*, No. 3:20-cv-01237, Defective Design (Complaint at ¶ 155).

- "Negligently failing to adequately and correctly warn the Plaintiff, the public, the medical and agricultural professions, and the EPA of the dangers of Roundup." *Menarchem v. Monsanto Co.*, Case No. 3:26-cv-05216, Negligence (Complaint at ¶ 135(f)).

- "But Defendant Monsanto failed to disclose that Roundup has dangerous propensities when used as intended and that use of and/or exposure to Roundup and glyphosate-containing products carries an increased risk of developing severe injuries, including Plaintiff's injuries." *Burton v. Monsanto Co.*, No. 3:24-cv-03223, Implied Warranty (Complaint at ¶ 265).

- "Defendant breached these warranties because, among other things, its Roundup® products were defective, dangerous, unfit for use, did not contain labels representing the true and adequate nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose." *Faschingbauer v. Monsanto Co.*, No. 3:17-cv-00223, Express Warranty (Complaint at ¶ 189).

    **2. Regarding Monsanto's suggestion that the MDL be closed, the Court will of course defer to the JPML. But in the meantime, the parties should be prepared to plow ahead. It appears that the next step will involve determining whether any state law claims may be pursued in the wake of *Durnell*. What process do the parties propose using to make that determination?**

Should the MDL proceed, Monsanto agrees that the next step will involve determining whether any state law claims may be pursued in the wake of *Durnell*. Ultimately, that determination needs to be made for all of the cases pending in the MDL. But the parties and Court will benefit from initially evaluating these issues in cases with developed records. To that end, Monsanto suggests that any process contemplated by the Court should start with the pending Wave 7-9 cases where fact and expert discovery has been completed, and where the Court has not already granted *Daubert* motions or motions for summary judgment.

In those cases, Monsanto suggests the following process, under which Plaintiffs' counsel (who drafted the operative complaints in each case in this MDL) first explain whether they believe their cases should continue to be litigated in light of *Durnell*, and Monsanto then files summary judgment motions as appropriate:

| | |
|---|---|
| **August 7, 2026:** | Each Plaintiff's counsel in the MDL submits, in each case in which they are counsel of record, a statement, no more than 3 pages in length, stating (1) which claims, if any, can proceed in light of *Durnell*; (2) articulating, for each claim identified in (1), the basis for their position; and (3) averring that they have discussed with their client the option of revisiting participation in the Feinberg mediation program. |
| **Oct. 25, 2026:** | As to any claims that Plaintiffs identify should survive, Monsanto files renewed summary judgment motions on the issue of federal preemption (including whether there is sufficient evidence in the case to make out any alleged surviving claim), and renewed *Daubert* motions, as applicable, for any expert opinion evidence identified by Plaintiffs. |
| **Nov. 13, 2026:** | Plaintiffs file oppositions to Monsanto's renewed summary judgment and renewed *Daubert* motions. |
| **Dec. 11, 2026:** | Monsanto files reply briefs. |

During the pendency of the foregoing process, Monsanto suggests that the Court stay discovery and all further proceedings in Wave 10 cases, and wait to set a schedule on Wave 11.

Plaintiffs appear to suggest a different process in which (1) all plaintiffs in the MDL should be allowed to amend their complaints, regardless of how long their cases have been pending, and (2) unless a plaintiff chooses to amend, Monsanto cannot invoke *Durnell*, which clearly changed the governing law that applies in this case.  As to the first point, the Federal Rules provide for windows in which amendments are to be allowed as of right, *see* Fed. R. Civ. P. 15.  Monsanto does not oppose amendments from plaintiffs still within those windows.  But otherwise, amendments are improper.  The preemption issue has been well known since the start of this litigation, and plaintiffs should be held to the pleading choices they have made.  As to the second point, it flouts the Supreme Court's ruling in *Durnell* to suggest that no new motions for summary judgment can be filed based on *Durnell* in existing cases.  That would effectively nullify *Durnell*. It would also be patently unfair to Monsanto, given that it has not fully briefed preemption at summary judgment in several recent cases in this MDL in reliance on the Court's repeated instructions to not raise issues that have already been decided.  *See, e.g.*, ECF No. 20025 (Order re: Wave 8 *Daubert* motions); ECF No. 18320 (PTO 209) at 7 n.4.

3. **Is it possible that the answer to the above question will vary depending on the law of a particular state?** ***See*, *e.g.*, PTO 159 (discussing the "amoeba-like quality" of design defect claims under California law).  If so, how should the process for deciding whether any state law claims may go forward account for differences in state law?**

Plaintiffs appear to take the position that answers to the above questions may vary depending on the law of a particular state.  Monsanto's suggested process above would account for any relevant differences in state law as part of summary judgment briefing.

JOINT CASE MANAGEMENT STATEMENT
16-MD-02741-VC

**4. What should the Court do with the pending *Daubert* motions or motions for summary judgment on causation grounds? Should they be denied without prejudice to re-raising them, if necessary, after sorting out whether any cases can proceed in the wake of *Durnell*?**

Monsanto agrees that pending *Daubert* motions and summary judgment motions on causation grounds may be denied without prejudice while Plaintiffs identify the claims they believe should proceed and while the Court considers Monsanto's renewed summary judgment and *Daubert* briefing in light of *Durnell*. Plaintiffs' suggestion that "[i]ssues of causation are not impacted by the *Durnell* preemption ruling" is incorrect; as just one example, a plaintiff raising a design defect claim must come forward with evidence linking the claimed design defect to the alleged injury. *E.g.* Tex. Civ. Prac. & Remedies Code § 82.005 ("'[S]afer alternative design' means a product design other than the one actually used that in reasonable probability . . . *would have prevented* or significantly reduced the risk of *the claimant's personal injury*.") (emphasis added); N.C. Gen. Stat. § 99B-6(a)(1) (Plaintiff must show manufacturer "failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that *would have prevented* or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product.") (emphasis added); La. Rev. Stat. 9:2800.56 (A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control . . . [t]here existed an alternative design for the product *that was capable of preventing the claimant's damage*.") (emphasis added). A plaintiff's failure to provide such evidence (assuming *arguendo* that a claim could be stated for design defect on the record in these cases) would be an independent ground for summary judgment on causation.

JOINT CASE MANAGEMENT STATEMENT
16-MD-02741-VC

DATED:  July 8, 2026                         Respectfully submitted,

                                             /s/ Robin Greenwald
                                             Robin Greenwald (*pro hac vice*)
                                             Robert J. Quigley (CA Bar No. 302879)
                                             Weitz & Luxenberg, PC
                                             700 Broadway
                                             New York, NY 10003
                                             Tel: 212-558-5500
                                             rgreenwald@weitzlux.com
                                             rquigley@weitzlux.com

                                             /s/ David Dickens
                                             David Dickens (*pro hac vice*)
                                             The Miller Firm LLC
                                             108 Railroad Ave
                                             Orange, VA 22960
                                             Tel: 540-672-4244
                                             ddickens@millerfirmllc.com

                                             *Attorneys for Plaintiffs*

                                             /s/ Brian L. Stekloff
                                             Brian L. Stekloff (pro hac vice)
                                             (bstekloff@wilkinsonstekloff.com)
                                              Rakesh Kilaru (pro hac vice)
                                             (rkilaru@wilkinsonstekloff.com)
                                             WILKINSON STEKLOFF LLP
                                             2001 M St. NW, 10th Floor
                                             Washington, DC 20036
                                             Tel: 202-847-4030
                                             Fax: 202-847-4005

                                             *Attorneys for Defendant*
                                             *MONSANTO COMPANY*

JOINT CASE MANAGEMENT STATEMENT
16-MD-02741-VC