**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case Nos.: 3:16-md-02741-VC |
| This document relates to: | **SUPPLEMENTAL BRIEF AND PROPOSED SCHEDULE** |
| ALL ACTIONS | |

Pursuant to the Court's direction at the July 9, 2026 Case Management Conference, *see* Minute Entry, ECF No. 22246, the parties respectfully submit their supplemental briefs and proposed schedule:

## I.      PLAINTIFFS' STATEMENT

After conferring with counsel for many of the affected MDL plaintiffs, Plaintiffs' Co-Lead Counsel have identified a number of concerns about, and considerations impacting, the Court's tentative plan for how to address issues presented by the change in law under *Durnell*. Plaintiffs will first identify these concerns and considerations, and then propose a course of action to address them fairly and efficiently:

*First,* many of the plaintiffs in pending Wave 9 (and earlier waves) filed their cases more than 7 years ago and most if not all have pending dispositive motions on specific causation that were fully briefed last fall. To completely re-do their summary judgment practice before this MDL (by wave and/or state) will not only result in further delay but will also create the potential for considerable additional expenditure of time and effort revisiting issues covered by the original summary judgment briefing.

***Second,*** the contemplated one-sided modification of the pre-trial schedule for Wave 9[1] and (and earlier wave cases) to permit *Monsanto* to add new grounds for summary judgment that it knew of but chose not to raise by the dispositive motion deadline, without giving the individual *plaintiffs* a corresponding opportunity to amend their pleadings and/or designate additional expert testimony in light of the ruling in *Durnell*, would be patently prejudicial and unfair to these plaintiffs. Thus, if the Court proceeds with the tentative plan discussed last week, Co-Lead Counsel anticipate that some of the individual Wave 9 plaintiffs (as well as earlier waves cases) will move separately for leave to amend and/or to supplement their disclosures, to present their individual and fact-specific circumstances showing good cause for modification of the Court's schedule, and to preserve an adequate record for appeal in the event their claims are dismissed or substantially limited.

***Third***, Monsanto's argument that all of the plaintiffs' other claims amount to a "failure to warn claim in disguise," and that Monsanto believes they are therefore preempted following *Durnell*, requires pre-trial resolution—either by this Court or by transferor courts—in the interests of judicial economy. Under *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431 (2005), "[t]he proper inquiry calls for an examination of the elements of the common-law duty at issue." *Id.* at 445. Thus, as the Court acknowledged at the July 9th hearing, design defect and other non-label-based failure to warn claims are not one size fits all: they require, of necessity, a complaint-by-complaint determination in each individual case, and in many instances an individual choice-of-law determination. Summary judgment briefing may then require a further analysis of the factual record developed in each case in light of Monsanto's anticipated preemption arguments.

---

[1] There may be earlier wave cases that have unresolved dispositive motions, and they should be treated the same as Wave 9 cases.

JOINT SUPPLEMENTAL BRIEF AND PROPOSED SCHEDULE
16-MD-02741-VC

Monsanto's counsel agreed that each case must be evaluated individually. Transcript of July 9, 2026, Case Management Conference at 33:6–9 (Exhibit 1). This is not the job for an MDL court. What's more, a large number of transferor courts and state courts are already faced with briefing surrounding *Durnell* and will make their own rulings on these kinds of state-law and fact-specific issues, regardless of how this Court proceeds with the Wave 9 cases.[2]

*Fourth*, to the extent that the parties' past practices after remand from this MDL will inform this Court's views on how to appropriately manage these cases in light of *Durnell*, it is essential that the Court operate from a correct understanding. While the MDL has been instrumental in getting cases ready for trial by deciding critical causation issues common to all Roundup claims, both parties have commonly engaged in subsequent fact discovery, amended and supplemental expert disclosures, and additional substantive briefing following remand. *See*, *e.g.*, Stipulation to Extend Deadlines for Wave 7–8 Fact Witness Depositions, ECF No. 17575 at 1 ("in the interest of efficiency . . . the parties agree that all fact witness depositions must be completed within 30 days after remand or 30 days before trial, whichever date is later") (Exhibit 2); *see also* Initial Status Report for Reassigned Cases in remanded matter *Karen Delorme-Barton v. Monsanto*, 1:18-cv-01215 (N.D. Illinois June 3, 2024) (ECF No. 17) (Exhibit 3):

> Discovery was conducted as part of the multi-district litigation (In re Roundup Products Liability Litigation in the Northern District of California) and is largely

---

[2] For example, earlier this week, two courts in California granted Monsanto's motions to continue upcoming Roundup trials to allow the parties to engage in dispositive motions practice that raises *Durnell*. *See* Exhibit 4 (July 7, 2026, Order, *Steinmuller v. Monsanto Co.*, No. 25CV00168 (Superior Court of California, County of Santa Cruz) (continuing August 17, 2026, trial to December 21, 2026)); Exhibit 5 (July 7, 2026, Order, *House v. Monsanto Co.*, No. 25CV01717 (Superior Court of California, County of Sonoma) (continuing August 21, 2026, trial to January 8, 2027)). Today, the transferor court in Idaho issued an order continuing the August trial to January to give the parties and the court sufficient time to identify which causes of action survive *Durnell*. *See* Exhibit 6 (July 16, 2026, Memorandum Decision and Order, *Hoge v. Monsanto Co.*, Case No. 4:25-cv-00277-DCN).

complete. Such discovery includes document discovery, fact witness depositions, and expert witness depositions. However, the parties stipulated that certain discovery would be completed after remand. Defendant anticipates the need to depose additional fact witnesses, potentially including, but not limited to, Plaintiff's ex-husband, other relatives, and additional treating physicians. There will also likely be discovery related to updated financial information. **The parties also anticipate exchange of additional expert disclosures, which will likely necessitate additional expert depositions.** The parties hope to reach agreement with respect to a document authenticity stipulation.

(Emphasis added). Monsanto itself has regularly designated additional expert testimony after remand, even on issues for which this Court has routinely entertained motion practice. For example, in three cases remanded to the District of Massachusetts in late February 2026,[3] Monsanto served amended expert disclosures, including an entire new case-specific causation expert, three months after remand. In short, it is neither unreasonable nor inconsistent with prior practice in this litigation to permit plaintiffs an opportunity to supplement their expert disclosures in light of the change in governing law.[4] What's more, transferor courts have the capacity to

---

[3] *Tudal v. Monsanto Co.*, No. 26-cv-11182 (D. Mass.); *McDermott v. Monsanto Co.*, No. 26-cv-11183 (D. Mass.); *Sullivan v. Monsanto Co.*, No. 26-cv-11184 (D. Mass.) *Accord El-Hakam v. Monsanto Co.*, No. 4:26-cv-00468 (S.D. Tx. July 15, 2026), ECF No. 80 (permitting supplemental expert witness designations post-remand); *Vosper v. Monsanto Co.*, No. 19-cv-03921 (E.D. Pa. Feb. 2, 2026), ECF No. 17 (permitting supplemental fact discovery and additional and expert reports); *Delorme-Barton v. Monsanto Co.*, 1:18-cv-01215 (N.D. Ill. June 3, 2024), ECF No. 17 (same); *Huntley v. Monsanto Co.*, No. 3:19-05805-BHS (W.D. Wash. June 24, 2026), ECF No. 15 (same); *Groef v. Monsanto Co.*, No. 2:19-cv-19588-ES-MAH (D.N.J. Mar. 3, 2026), ECF No. 15 (same); *Harris v. Monsanto Co.*, No. 3:25-cv-02095-DWD (S.D. Ill. Feb. 26, 2026), ECF No. 89 (same); *Romano v. Monsanto Co.*, No. 1:20-cv-00198-TSK (N.D. W. Va. May 6, 2026), ECF No. 39 (same). MDL Co-Lead Counsel will provide the Court with additional examples of case management orders from courts permitting supplemental expert designations for both parties upon remand at the Court's request.

[4] The Court suggested that plaintiffs should have known once the Third Circuit decided *Schaffner* that the Supreme Court would accept certiorari in a not-yet even tried case (*Durnell*) and decide that FIFRA preempts label-based failure to warn claims. Plaintiffs respectfully disagree. When the Third Circuit decided *Schaffner*, it was the only court that had ruled in Monsanto's favor on preemption, and Monsanto did not seek *certiorari*. This Court, the Ninth Circuit, the Eleventh Circuit, and numerous state courts in Missouri and across the country had reached the contrary conclusion: FIFRA does not preempt failure to warn claims. And the only time the Supreme Court addressed Roundup and FIFRA preemption was in *Hardeman*, where the Supreme Court denied

4

manage and handle these issues, which makes sense given the amount of time that the litigation has been pending and the parties' past practices after remand.

In view of these concerns and considerations, Plaintiffs recommend that the Court proceed as follows:[5]

1. After this Court's decision on the pending causation motions, the Court should remand Wave 9 cases. If the Court rejects that proposal, then the Court should give a 30-day period for plaintiffs to amend their complaint and seek whatever other individualized relief they deem necessary. If the Court permits additional dispositive motion practice for Wave 9 cases, those motions should be *limited* to supplemental summary judgment motions by Monsanto in support of Monsanto's now-relevant position that a given plaintiffs' claims amount to nothing more than label-based failure to warn claims[6] and/or "disguised failure to warn" claims preempted under *Durnell*. Monsanto should ***not*** be allowed to supplement their motions to argue that, ***based on the record***, Plaintiff cannot prove a design defect claim, negligence claim, or any other non-label-based failure to warn claim since nothing

hearing the case. On this set of facts, it is unfair to conclude that plaintiffs' attorneys who did not conform their complaint, discovery, or proof in anticipation of a Supreme Court reversal should suffer dismissal of their case post-*Durnell*. *See* Exhibit 1 at 36:19–25 to 37:1–16; 45:13–25 to 46:1. Particularly given the existing practice of further fact and expert development following remand, and Monsanto's strategic choice not to move for summary judgment on their claims, Plaintiffs' counsel who opted not to spend money on retaining experts for this purpose may have reasonably sought to conserve client resources, without facing case-dispositive consequences if the law later changed. As to the operative complaints in the older wave cases—cases that were filed many years ago and likely well before *Schaffner* was even appealed—they may not have taken into consideration *Durnell* preemption issues.

[5] As to Monsanto's continued insistence that the MDL should be disbanded, Plaintiffs suggest that the Court order Monsanto to seek appropriate relief before the JPML in the next 14 days to determine the JPML's position regarding the continuation of the MDL post-*Durnell* before this Court expends the extraordinary time and resources Monsanto's submission demands.

[6] Co-Lead Counsel assume that individual plaintiffs will explicitly withdraw or stipulate to dismissal of their preempted *label-based* failure to warn claims.

in the *Durnell* decision would have changed Monsanto's ability to make that motion prior to the dispositive motion deadline. Monsanto had full knowledge that the plaintiff had pleaded a design defect and other non-label-based causes of action before *Durnell;* accordingly, if Monsanto believed that the plaintiff couldn't produce sufficient evidence to prove those claims, it should have raised that in its initial summary judgment motion.

2. Due to the state-law-specific and fact-specific nature of the rulings on the design defect and other non-label based failure to warn claims, Wave 9 cases (and earlier wave cases) should be remanded to their transferor courts for resolution once the Court has ruled on the original causation-related summary judgment motion and briefing on any supplemental pre-emption-based motion is complete. Remand for resolution will allow transferor courts to decide state law issues with which they are more familiar, as is already occurring now with remanded Roundup cases across the country. If the Court rejects this approach and determines it should individually resolve these issues in each of the 184 pending Wave 9 (and earlier wave) cases, Plaintiffs propose that the Court prioritize states based on volume of cases currently pending, with individual cases initially filed in Florida to be addressed first on a rolling basis, case-by-case.

3. Wave 10 should be given until August 17 to amend their complaints, if they so choose. Alternatively, the Court should allow individual plaintiffs two weeks to file motions addressing the Court's tentative views regarding Monsanto's summary judgment motions and asserting grounds for good cause to modify the pre-trial schedule to permit amendment of pleadings and/or supplemental expert disclosures.

4. For wave cases with ongoing discovery, as well as wave cases where discovery has not yet commenced, plaintiffs should be given 30 days to amend their complaints.

JOINT SUPPLEMENTAL BRIEF AND PROPOSED SCHEDULE
16-MD-02741-VC

5. The Court should promptly remand all pending cases in which this Court has already decided dispositive causation motions. Monsanto's Exhibit A, Table 3. The parties can work together to provide the Court a list of any additional cases in this category.

## II.    MONSANTO'S STATEMENT

As previously explained, Monsanto maintains that the essence of plaintiffs' claims in this MDL boil down to a complaint that Monsanto failed to warn about a risk of cancer, and thus are preempted by federal law under *Durnell*.  The Supreme Court's decision in *Durnell* confirms that a claim's substance, not what a plaintiff happens to call it, controls.  FIFRA's Uniformity provision preempts "*any state tort claim* that would require a pesticide manufacturer to use a label" other than "the EPA-approved label." *Monsanto v. Durnell*, 2026 WL 1825691, at \*10 (U.S. June 25, 2026) (emphasis added).  As such, Monsanto's view remains that this MDL should be terminated because the failure-to-warn claims it was formed to address are now preempted by federal law.

Should the MDL proceed, however, Monsanto proposes the following process.  First, the Court should dismiss with prejudice each of the cases listed in Table 1 of Exhibit A because the Court has previously excluded plaintiffs' causation expert(s).  Without proof of causation, these plaintiffs cannot maintain a claim against Monsanto, and the application of *Durnell* is unnecessary to terminate these cases.

Second, and consistent with the Court's tentative ruling, Monsanto should be allowed to file new summary judgment and *Daubert* motions in all cases where the discovery record is closed. These cases fall into two groups—"remand ready" cases that would have been sent back to transferor courts prior to *Durnell* (12 in total; Table 3 in Exhibit A), and "motions pending" cases where the Court has not yet ruled on Monsanto's motions (24 in total; Table 2 in Exhibit A).

JOINT SUPPLEMENTAL BRIEF AND PROPOSED SCHEDULE
16-MD-02741-VC

Rather than trying to brief 36 cases simultaneously, Monsanto submits that this briefing should take place in two waves. The initial wave should consist of (1) all "remand ready" cases and (2) any "motions pending" cases that appear to be governed by the same state laws as the "remand ready" pool. This first wave would consist of 19 cases—the "remand ready" cases and the following cases from Table 2 of Exhibit A: Nos. 6, 10, 12, 13, 17, 22, and 24. Monsanto proposes the following schedule with respect to these cases:

**Sept. 1, 2026:**   Monsanto files renewed summary judgment motions and renewed *Daubert* motions, as applicable, for any expert opinion evidence identified by Plaintiffs.

**Oct. 1, 2026:**   Plaintiffs file oppositions to Monsanto's renewed summary judgment and renewed *Daubert* motions.

**Nov. 2, 2026:**   Monsanto files reply briefs.

For the remaining "motion pending" cases involving states not implicated in the "remand ready" cases, Monsanto proposes that it file its summary judgment motions on December 2, 2026.

Third, with respect to cases in which discovery has not yet begun, Monsanto respectfully disagrees with the Court's tentative inclination to allow all plaintiffs leave to amend their complaints. The Federal Rules provide for windows in which amendments are to be allowed as of right, *see* Fed. R. Civ. P. 15. Monsanto does not oppose amendments from plaintiffs still within those windows. But otherwise, allowing amendment would improperly permit plaintiffs to fundamentally alter their complaints well after the period the rules would otherwise allow when all involved knew preemption was a lurking issue that could eliminate their claims. That plaintiffs decided to forgo amendment in the hope that the preemption issue would not materialize is not a proper basis to allow late amendment. Indeed, the preemption issue has been well known since the start of this litigation, and plaintiffs should be held to the pleading choices they have made. As the Court observed, plaintiffs had reason to be aware of the possibility of *Durnell* no later than

August 15, 2024, when the Third Circuit created a circuit split over the preemption issue. *See Schaffner v. Monsanto Corp.*, 113 F.4th 364 (3rd Cir. 2024). Plaintiffs that chose not to do so should not be rewarded for their failure to develop alternative theories of liability, to the extent any could exist. But if the Court is inclined to allow these plaintiffs to amend, Monsanto proposes that this group of plaintiffs be given 21 days from the entry of the Court's forthcoming order to file their amended complaints. Monsanto should then be given 28 days to respond to plaintiffs' amended pleadings, given the volume of other briefing contemplated in this filing.

Finally, Monsanto respectfully suggests that the Court stay discovery and all further proceedings in Wave 10 cases and wait to set a schedule, including for discovery, on Wave 11 cases. Further discovery in this MDL, if any, should be carefully circumscribed by the Court's guidance on what, if any, claims can proceed after *Durnell*, rather than allowing plaintiffs to effectively start discovery anew. Plaintiffs' recent discovery conduct confirms the wisdom of this approach. For example, on July 13, 2026, following the recent Case Management Conference, Plaintiffs served a broad set of 16 interrogatories seeking sales and profits and net worth financial data from 2001 to present and 32 requests for production related to post-2025 activities. *See* Ex. B (interrogatories); Ex. C (document requests). It makes little sense to allow Plaintiffs to use this MDL to seek further burdensome discovery against Monsanto when it is far from clear that any of Plaintiffs' claims can continue as a matter of law. Indeed, if Monsanto is correct about *Durnell*'s scope, plaintiffs would not be permitted to serve *any* additional discovery because they will no longer have any viable claims to assert against Monsanto in this MDL. A stay thus avoids needless work and burden, and potential motion practice on discovery disputes, while the parties receive valuable guidance about the future of this proceeding based on the contemplated renewed motions for summary judgment and challenges to amended pleadings.

JOINT SUPPLEMENTAL BRIEF AND PROPOSED SCHEDULE
16-MD-02741-VC

DATED: July 16, 2026                    Respectfully submitted,

/s/ Robin Greenwald
Robin Greenwald (*pro hac vice*)
Robert J. Quigley (CA Bar No. 302879)
Weitz & Luxenberg, PC
700 Broadway
New York, NY 10003
Tel: 212-558-5500
rgreenwald@weitzlux.com
rquigley@weitzlux.com

/s/ David Dickens
David Dickens (*pro hac vice*)
The Miller Firm LLC
108 Railroad Ave
Orange, VA 22960
Tel: 540-672-4244
ddickens@millerfirmllc.com

*Attorneys for Plaintiffs*

/s/ Brian L. Stekloff
Brian L. Stekloff (pro hac vice)
(bstekloff@wilkinsonstekloff.com)
 Rakesh Kilaru (pro hac vice)
(rkilaru@wilkinsonstekloff.com)
WILKINSON STEKLOFF LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

*Attorneys for Defendant*
*MONSANTO COMPANY*

JOINT SUPPLEMENTAL BRIEF AND PROPOSED SCHEDULE
16-MD-02741-VC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of July 2026, a copy of the foregoing was filed with the Clerk of the Court through CM/ ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Robin Greenwald*

JOINT SUPPLEMENTAL BRIEF AND PROPOSED SCHEDULE
16-MD-02741-VC