# Exhibit A

BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| *In re: Roundup Products Liability Litigation* | MDL No. 2741 |
| This Motion Relates To: *the 168 cases listed on the attached Schedule of Actions, Ex. 17.* | |

**MONSANTO COMPANY'S AMENDED MOTION TO IMMEDIATELY CEASE TRANSFER OF NEW TAG-ALONG CASES INTO MDL, AND TO TERMINATE MDL UPON TRANSFEREE COURT'S DECISION REGARDING IMPACT OF *DURNELL***

Almost ten years ago, this Panel centralized into an MDL 21 pending actions and 16 potential tag-along actions that alleged "that Roundup, a widely used glyphosate-based herbicide manufactured by Monsanto Company, can cause non-Hodgkin's lymphoma and that Monsanto failed to warn" of that alleged risk. *In re: Roundup Prods. Liab. Litig.*, 214 F. Supp. 3d 1346, 1347 (2016). Now, the United States Supreme Court has held that such a claim "is expressly preempted." *Monsanto Co. v. Durnell*, 609 U.S. ----, 2026 WL 1825691, at *9 (June 25, 2026). The MDL has accordingly nearly run its course. Common discovery has been massive and long-since substantially complete; the bellwether trial took place seven years ago; and the MDL Court has been routinely remanding any cases that have otherwise survived case-specific expert and case-specific summary judgment thresholds.

On July 30, 2026, the MDL Court issued a scheduling order that set a briefing schedule to resolve the impact of *Durnell* on any "remand ready" cases and certain other cases governed by the same state laws to be completed by October 23, 2026, with a hearing on November 16, 2026. *See* Ex. 1, Order re Case Schedule (July 30, 2026) (Dkt. 22,402) ("July Scheduling Order"). For other cases where discovery is complete the MDL Court set a summary judgment schedule

1

culminating in a hearing on February 1, 2027. *Id.* at 2. The MDL Court is well-positioned to resolve the impact of *Durnell* on that initial set of cases, and its rulings could provide important guidance for future cases and remand courts.

However, continuing the MDL after that time would transform the MDL into something not recognizable as a centralized proceeding for Roundup failure-to-warn claims: an indefinite forum for deciding, case-by-case and state law by state law, whether individual plaintiffs have pled and adduced evidence to support theories that are not ultimately grounded in an alleged failure to warn or otherwise preempted. Such a proceeding would promote neither "the convenience of parties and witnesses" nor "the just and efficient conduct of" any new cases that might be transferred to the MDL. 28 U.S.C. § 1407. Accordingly, the Panel should cease transferring new cases to the MDL, while maintaining the MDL long enough for the MDL Court to resolve the impact of *Durnell* on the currently pending cases set for summary judgment hearings on November 16, 2026 and February 1, 2027. After that, the MDL should be terminated.

## BACKGROUND

In October 2016, the Panel created the MDL to centralize 21 actions and 16 potential tag-alongs alleging that Roundup "can cause non-Hodgkin's Lymphoma and that Monsanto failed to warn consumers and regulators about the alleged risks of Roundup." *In re: Roundup*, 214 F. Supp. 3d at 1347. At the time, the Panel acknowledged there might be some "plaintiff-specific questions," but determined that "all the actions entail an overarching query" and those case-specific questions could be addressed upon "remand of the actions to their transferor courts." *Id.* at 1347–48. It concluded that centralization was appropriate to "eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion practice); and conserve the resources of the parties, their counsel, and the judiciary." *Id.* at 1348.

2

In the years that followed, the MDL swelled, containing at one point over 5,000 pending cases. The parties conducted extensive common discovery, litigated the admissibility of expert evidence under rule 702, and in 2019 completed a bellwether trial in one of the original 21 failure-to-warn cases, *Hardeman v. Monsanto Co*. *See* 997 F.3d 941 (9th Cir. 2021) (affirming verdict) (abrogated by *Durnell*). All told, the MDL Court issued more than 300 pretrial orders addressing all aspects of the litigation.

By winnowing out unsupported cases, encouraging settlement, and operating a mediation program, the MDL was an effective tool to resolve Roundup cases. For example, in September 2020, there were 1,954 active cases in the MDL—plus many more inactive cases. Ex. 2, Jt. Case Mgmt. Statement & Lit. Plan 1, *In re Roundup Prods. Liab. Litig.*, No. 16-MD-2741 (Sept. 17, 2020) (Dkt. 11,787).[1] In September 2022, there were approximately 770 active cases in the MDL. Ex. 3, Jt. Case Mgmt. Statement 1, 12, *In re Roundup Prods. Liab. Litig.*, No. 16-MD-2741 (Sept. 1, 2022) (Dkt. 15,403).[2] As of July 8, 2026, only 184 active cases remain. Ex. 4, Jt. Case Mgmt. Statement 1, *In re Roundup Prods. Liab. Litig.*, No. 16-MD-2741 (July 8, 2026) (Dkt. 22,244). As of today, only 168 active cases remain. Ex. 17, Schedule of Actions. The inflow of new cases into the MDL also has slowed dramatically. For example, in 2019 alone, over 2,300 cases were filed directly in the MDL court or transferred to it by this Panel. In 2023 that number was 195, in 2024 it was 297, and in 2025 it was 222.

Over the past several years, Missouri has become the epicenter of the overwhelming majority of Roundup litigation. Currently, many tens of thousands of Roundup plaintiffs have cases pending in the Missouri state courts. In February 2026 Monsanto and a group of plaintiffs'

---

[1] A further 1,750 cases were settled or otherwise resolved.

[2] By Monsanto's count, there were 775 active cases. Lead Plaintiffs' counsel reported 765 active cases.

counsel announced a proposed nationwide class settlement filed in the Circuit Court of the City of St. Louis, Missouri. The court granted preliminary approval of the settlement in March and it continues to progress through final approval proceedings. If approved, the class settlement, combined with *Durnell*, will substantially end the litigation.

Given its dwindling active docket, the completion of common discovery, and the shift in focus to plaintiff-specific litigation, the MDL Court has repeatedly acknowledged that it may be appropriate for the MDL to wind down. In July 2024, the parties jointly proposed "the MDL begin the winding down process" by no longer accepting new cases. Ex. 5, Jt. Status Rep. 2–3, *In re Roundup Prods. Liab. Litig.*, No. 16-MD-2741 (July 15, 2024) (Dkt. 18811). The MDL Court acknowledged "there could be a benefit to" such a process. Ex. 6, Tr. of Hrg. 15:20, *In re Roundup Prods. Liab. Litig.*, No. 16-MD-2741 (July 18, 2024). At the same time, the MDL Court deferred any decision as to whether the MDL should wind down to the Panel: "the judges on the panel sort of understand all these MDLs and how the system works, and maybe they're the people to ask whether the MDL should continue." *Id.* at 27:16–23.

Likewise, during a March 2025 hearing addressing common benefit fund, the MDL Court suggested a distribution might take place "at the end of the MDL, which I presume won't be that long?" Ex. 7, Tr. of Hrg. 70:1–5, *In re Roundup Prods. Liab. Litig.*, No. 16-MD-2741 (Mar. 4, 2025). And in a later order, the MDL Court noted that "[t]he parties appear to anticipate that the MDL will wrap up some time in the next 1-5 years . . . ." Ex. 8, Pretrial Order No. 312: Order Regarding Distribution of Common Benefit Funds 2, *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741 (Mar. 13, 2025) (Dkt. 20,336). But the MDL Court also observed—as it had before— that "it is the JPML that will make that ultimate determination." *Id.* at 2.

On June 25, 2026, the United States Supreme Court decided *Monsanto Co. v. Durnell*. 2026 WL 1825691. *Durnell* held that "a "failure-to-warn claim" alleging Roundup causes cancer "is expressly preempted." *Id.* at *9. As is "any state tort claim that would require a pesticide manufacturer to use a label" other than "the EPA-approved label." *Id.* at *10. *Durnell* also confirmed that "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition" EPA approved. *Id.* at *4 n.1 (quoting 7 U.S.C. § 136j(a)(1)(C)). And FIFRA prohibits a manufacturer from making "any claims" about a pesticide that "differ" from those EPA approved. *Id.* (quoting 7 U.S.C. § 136j(a)(1)(B)).

Following *Durnell*, the parties submitted statements in the MDL addressing the impact of the Supreme Court's decision. Monsanto's position was that, in light of *Durnell* and for the other reasons explained herein, "the MDL [should] be closed." *See* Ex. 9, Jt. Case Mgmt. Statement 4, *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741 (June 30, 2026) (Dkt. 22,226). The MDL Court responded by taking no position on "Monsanto's suggestion that the MDL be closed" other than to note it would "of course defer to the JPML" and directing the parties to submit supplemental statements addressing questions including:

- "Which pending cases purport to assert claims for anything other than failure to warn, and which do not?"

- "What process do the parties propose using to" "determin[e] whether any state law claims may be pursued in the wake of *Durnell*"?

- "[H]ow should the process for deciding whether any state law claims may go forward account for differences in state law?"

Ex. 10, Order on Jt. Case Mgmt. Statement 1–2, *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741 (July 6, 2026) (Dkt. 22,228).

In response, Plaintiffs stated that of 184 complaints in active cases, *all* purported to allege claims other than failure-to-warn; the complaints arose under the laws of 34 states; and that determining which claims might proceed would require "individualized, plaintiff-specific case development." Ex. 4, Jt. Case Mgmt. Statement 1, 9, *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741 (July 8, 2026) (Dkt. 22,244). Plaintiffs also took the position that "given the variance state-by-state . . . specific state law claims are best decided by the transferor courts" which "likely will be familiar with the [relevant] state law." *Id.* at 9.

On July 30, 2026, the MDL Court issued a scheduling order establishing a process for addressing the remaining cases in light of *Durnell*. Ex. 1, July Scheduling Order. The court directed the parties to confer regarding the cases identified as "remand ready" and certain related cases to determine whether any plaintiffs contend that they possess a non-preempted claim. *Id.* For plaintiffs who do not assert such a claim, the parties must submit proposed judgments dismissing those actions. *Id.* For plaintiffs who continue to contend they possess a non-preempted claim, Monsanto may file supplemental motions for summary judgment addressing preemption and whether any such claims are supported by evidence in the record, with briefing and hearings to follow under a case-management schedule extending into early 2027. *Id.* The court also established separate procedures for other pending cases and directed that discovery continue only in a limited subset of actions. *Id.* The Court's order is consistent with the principal remaining work of the MDL being to provide guidance on the impact of *Durnell* and determine whether any plaintiff can proceed on a non-preempted claim supported by record evidence, after which little, if any, basis for continued centralized proceedings will remain.

## ARGUMENT

The MDL statute and the Panel's rules confirm that it is the Panel that decides whether cases should be centralized in an MDL: "When civil actions involving one or more common

questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings . . . *by the judicial panel on multidistrict litigation*." 28 U.S.C. § 1407(a) (emphasis added). And it is the Panel that has final authority to remand actions to their transferor courts. *See id.* (actions "shall be remanded *by the panel*" (emphasis added)); J.P.M.L. Rule 10.1(b) ("The Panel may remand an action . . . upon . . . the Panel's own initiative . . . [or] motion of any party."). Here, the Panel should (1) cease transferring new cases to the MDL and (2) terminate the MDL after the Court resolves the impact of *Durnell* on the cases set for hearing in November 2026 and February 2027 because, given recent developments, continued consolidation will no longer promote "convenience of parties and witnesses" or "the just and efficient conduct" of the litigation. 28 U.S.C. § 1407.

Here, the limited continuation of the MDL to resolve the impact of *Durnell* on the cases scheduled for summary judgment hearings in November 2026 and February 2027 would further the purposes of Section 1407. After nearly a decade of overseeing this litigation, the MDL Court has developed familiarity with the discovery record, the history of the parties' claims and defenses, the Court's prior evidentiary and dispositive rulings, and the procedural posture of those cases. The July 30, 2026 scheduling order establishes an orderly process for determining whether those plaintiffs possess non-preempted claims and, if so, whether those claims are supported by evidence in the record. And transferor courts could benefit from the MDL Court's guidance on the scope and application of *Durnell*, while being best equipped to navigate the heterodox state laws implicated by individual plaintiffs for the remaining cases. Accordingly, the convenience of the parties and the just and efficient conduct of the litigation are best served by permitting the MDL Court to continue the pending *Durnell*-related proceedings for the cases scheduled for hearings in

November 2026 and February 2027 before the MDL is terminated and any remaining actions are remanded.

By contrast, continued transfer of new cases to the MDL would not advance the purposes of Section 1407. *See, e.g.*, Ex. 11, *In re National Prescription Opiate Litigation*, MDL No. 2804, Order Denying Transfer & Vacating Conditional Transfer Order, at 1 (J.P.M.L. Apr. 8, 2022) ("The relative merits of transferring new tag-along actions to an MDL can change over time as the transferee court completes its primary tasks, and at a certain point the 'benefits of transfer should not be assumed to continue.'") (quoting *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 659 F. Supp. 2d 1371, 1372 (J.P.M.L. 2009)). "The principal remaining issues after *Durnell* concern the application of particular state-law theories to individual plaintiffs and case-specific records. As the MDL Court and Plaintiffs themselves have recognized, those questions may turn on differences in state law and require individualized analysis. Ex. 4, Jt. Case Mgmt. Statement 1, 9, *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741 (July 8, 2026) (Dkt. 22,244). Allowing new cases to continue entering the MDL would therefore risk transforming MDL No. 2741 into an indefinite vehicle for conducting state-by-state and plaintiff-by-plaintiff merits determinations, rather than a proceeding focused on resolving common issues efficiently through centralized management.

After the MDL Court resolves the impact of *Durnell* on the initial set of cases, there will be no basis to continue a centralized proceeding. Indeed, the litigation has otherwise matured beyond the reasons that initially justified consolidation. The Panel created the Roundup MDL to "eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion practice); and conserve the resources of the parties, their counsel, and the judiciary." *In re:* Roundup, 214 F. Supp. 3d at 1348. Common discovery was

completed years ago. *See, e.g.*, Ex. 12, Pretrial Order No. 54: Upcoming Deadlines 1, *In re Roundup Prods. Liab. Litig.*, No. 16-MD-2741 (November 1, 2018) (Dkt. 2124) ("As stated at the end of the hearing, discovery on Monsanto will close on December 20, 2018."). The MDL Court also long ago completed its sole bellwether trial—during which it issued a wide range of pretrial and evidentiary rulings (including more than 300 pretrial orders) that may provide guidance to other courts. *See Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021) (affirming verdict), *abrogated Monsanto Co. v. Durnell*, 609 U.S. ----. And discovery and motion practice in any new cases transferred to the MDL would be overwhelmingly plaintiff- and state-law-claim specific in a manner that does not befit centralization. *See, e.g.*, *Engilis v. Monsanto Co.*, 151 F.4th 1040 (9th Cir. 2025) (affirming grant of summary judgment based on exclusion of plaintiff's specific causation expert who failed to "adequately support[] his assertion that [the plaintiff] was not obese" in rendering specific causation opinion).

Recognizing that shift in the character of this specific litigation, other coordinated Roundup proceedings have concluded even before *Durnell* further undercut the basis for centralization. In California, for example, the judge presiding over a JCCP proceeding consolidating Roundup cases across California courts terminated the proceeding nearly five years ago because it had largely "served its purpose of managing common historical discovery," "resolv[ed] key legal issues, address[ed] common evidentiary issues, and provid[ed] a template for counsel and for trial courts to litigate cases in the future." Ex. 13, Order at 1:17-2:13, *In re Roundup Prods. Cases*, No. JCCP 4953, (Cal., Alameda County, Aug. 23, 2021). Accordingly, it was "appropriate to remand and transfer all the cases in the JCCP to the appropriate jurisdictions" and "terminate the JCCP." *Id.* at 2:11–13. The court acknowledged that "cases alleging injury from Roundup" could "continue

to be filed," but reasoned that considering the progress that had been made in the JCCP, those cases would be effectively managed "in the counties where they are filed." *Id.* at 1:20–23.

Under similar circumstances, this Panel and other MDL courts have initiated the process of winding down MDLs. For example, in the *Dalkon Shield* litigation, the Panel ceased transferring new actions into an MDL because the transferee judge had made significant progress, and "common discovery proceedings [were] near an end in the transferee district." *In re A.H. Robins Co., Inc. Dalkon Shield IUD Prod. Liab. Litig.*, 570 F. Supp. 1480, 1482 (J.P.M.L. 1983). Given the mature stage of that MDL, the Panel concluded "transfer of additional cases to the MDL "would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of the litigation." *Id.* at 1481. In the four decades since *Dalkon Shield*, the Panel has repeatedly recognized that centralization should end when, due to the passage of time or intervening events, an MDL ceases to address common issues and instead becomes a forum for plaintiff-specific litigation. *See, e.g.*, *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, MDL No. 2244, Dkt. 2672 (J.P.M.L. June 1, 2022) (suspending transfer of additional actions because, among other things, "[c]ommon discovery has been completed"); *In re Convergent Telephone Cons. Protection Act Litig.*, MDL No. 2478, Dkt. 296 (J.P.M.L. May 31, 2017) (same where remaining discovery was likely to be "overwhelmingly plaintiff- and case-specific").

As another MDL judge recently recognized, the termination of an MDL does not unwind the progress made by the MDL. The MDL court's prior rulings, the existing discovery record, and appellate decisions remain available to "provide . . . guidance on the factual and legal issues in this litigation" when future cases arise. *In re E. I. Du Pont de Nemours & Co. Personal Injury Litig.*, 2025 WL 474225, No. 13-md-2433 (S.D. Ohio Feb, 12, 2025). The same is true of the transferor

courts here, including having the MDL Court's guidance on the impact of *Durnell* on the initial set of cases. But where the remaining issues would not benefit from centralization, termination is warranted.

*Durnell* itself confirms the MDL has limited further value. Here, the passage of time has not merely eroded the bases supporting centralization. Instead, further proceedings by the MDL Court beyond providing guidance on the scope of *Durnell* would inject the MDL Court into arguments that Plaintiffs have made clear they intend to pursue state-by-state and case-by-case. Although in Monsanto's view those arguments all fail and no claim in this litigation survives *Durnell*, the analysis is more appropriately handled by transferor courts who are more familiar with relevant state law. Monsanto understands Plaintiffs agree with that principle (even if not the remedy of terminating the MDL). Lead Plaintiffs' counsel informed the MDL Court that determining the scope of potentially available claims under the laws of 50 states "is not the job for an MDL court." Ex. 14, Jt. Suppl. Br. & Proposed Schedule 4, *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741 (July 16, 2026) (Dkt. 22,308). Instead, Plaintiffs have argued those issues "are best decided by the transferor courts" which "likely will be familiar with the [relevant] state law." Ex. 4, Jt. Case Mgmt. Statement 1, 9, *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741 (July 8, 2026) (Dkt. 22,244). And individual plaintiffs have highlighted MDL cases that arise under especially heterodox state laws, which transferor courts are significantly better situated to address. Ex. 15, Statement of Pls. Golling & Hendrickson in Response to Minute Entry, *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741 (July 16, 2026) (Dkt. 22,304) (discussing Washington Products Liability Act). For its part, Monsanto has joined the view that the "legal analysis" regarding the impact of *Durnell* on each case "should be done on a complaint-by-complaint, state-by-state basis"—even though the outcome of that legal analysis will be the same across various

11

state-law claims.  Ex. 16, Tr. of Hr'g 33:6–9, *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741 (July 9, 2026).  And the MDL Court has not suggested otherwise.  Instead, it has acknowledged that the process of evaluating *Durnell*'s impact may involve "differences in state law."  Ex. 10, Order on Jt. Case Mgmt. Statement 1–2, *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741 (July 6, 2026) (Dkt. 22,228).

Resolving those variable state-law disputes is not among the reasons the Panel centralized these actions.  On the contrary, the Panel determined consolidation was warranted for actions alleging "Monsanto *failed to warn* consumers and regulators about the alleged risks of Roundup," *in re: Roundup*, 214 F. Supp. 3d at 1347 (emphasis added)—a theory *Durnell* holds is preempted. 2026 WL 1825691, at *9 ("Durnell's failure-to-warn claim is expressly preempted.").  Although Monsanto and the Plaintiffs differ as to whether there is any other viable, non-preempted theory in this litigation, the parties agree that the required analysis will involve proceeding case-by-case and state-by-state.  One MDL court has suggested broad remand for precisely that reason.  *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Pracs. Litig.*, 840 F. Supp. 2d 1193, 1200 (D. Minn. 2012) (determining remand of remaining cases in MDL was appropriate due to the presence of "many state-law issues unique to each case").

Although in the context of individual actions the "the Panel is reluctant to order a remand absent the suggestion of the transferee judge," J.P.M.L. R. 10.3(a), the transferee judge has repeatedly made his view clear:  "the judges on the panel . . . they're the people to ask whether the MDL should continue."  Ex. 6, Tr. of Hrg. 27:16–23, *In re Roundup Prods. Liab. Litig.*, No. 16-MD-2741 (July 18, 2024); *see also, e.g.*, Ex. 7, Tr. of Hrg. 59:20–23, *In re Roundup Prods. Liab. Litig.*, No. 16-MD-2741 (Mar. 4, 2025) ("[Y]ou all are welcome to go to the JPML and ask to shut down the MDL . . . it's not really my decision.").  And in response to Monsanto's June 30

12

suggestion that the MDL be closed in light of *Durnell*, the MDL Court explained that it would "defer to the JPML." Ex. 10, Order on Jt. Case Mgmt. Statement 1, *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741 (July 6, 2026) (Dkt. 22,228). As a practical matter, the decision therefore falls to the Panel.

## CONCLUSION

For the foregoing reasons, continuing MDL no. 2741 following resolution of the impact of *Durnell* on the currently pending cases would serve neither "the convenience of parties and witnesses" nor "the just and efficient conduct of" cases. Accordingly, the Panel should cease transferring new cases to the MDL now and should terminate the MDL after the MDL Court resolves the impact of *Durnell* on the cases currently scheduled for hearings on motions for summary judgment on November 16, 2026 and February 1, 2027. 28 U.S.C. § 1407.

DATED: August 5, 2026

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

BY: */s/ Jennise W. Stubbs*
    Jennise W. Stubbs
    600 Travis Street, Suite 3400
    Houston, TX 77002-2926
    Telephone:  (713) 227-8008
    Facsimile:  (713) 227-9508
    Email:      jstubbs@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*