**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843 | Fax: 202-682-1639

Attorneys for Defendant Monsanto Company

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 | Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 | Fax: 310 -576-2200

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION

This document relates to:

*Berenfeld v. Monsanto Co.*
Case No. 18-cv-01428-VC

*Brookner v. Monsanto Co.*
Case No. 23-cv-04840-VC

*Gebo v. Monsanto Co.*
Case No. 17-cv-00168-VC

*Glassman v. Monsanto Co.*
Case No. 20-cv-00024-VC

*Gomez v. Monsanto Co.*
Case No. 24-cv-03495-VC

*Holmes v. Monsanto Co.*
Case No. 20-cv-03363-VC

*Jackson v. Monsanto Co.*
Case No. 23-cv-01572-VC

*Levy v. Monsanto Co.*
Case No. 21-cv-07643-VC

MDL No. 2741

Case No: 3:16-md-02741-VC

**DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT IN THE "CATEGORY 1" CASES GOVERNED BY FLORIDA LAW**

[Filed concurrently with Declaration of Linda C. Hsu]

Hearing Date: November 16, 2026
Time: 1:00 p.m.
Courtroom: 4

*Proctor v. Monsanto Co.*
Case No. 21-cv-00172-VC

*Schrag v. Monsanto Co.*
Case No. 22-cv-08888-VC

*Villalobos v. Monsanto Co.*
Case No. 24-cv-01407-VC

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 16, 2026 at 1:00 p.m., in Courtroom 4 of the U.S. District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Supplemental Motion for Summary Judgment in the "Category 1" Cases Governed by Florida Law. Monsanto seeks summary judgment on all of Plaintiffs' claims because their claims cannot survive the United States Supreme Court's recent decision in *Monsanto Co. v. Durnell*, 146 S. Ct. 2001 (2026). Any failure-to-warn theory is now indisputably preempted. And neither Florida law nor the evidentiary record any of the Plaintiffs have assembled allows any workaround. The Court should grant summary judgment in full to Monsanto in each case.

Dated: September 1, 2026

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Linda C. Hsu*
Linda C. Hsu
*Counsel for Defendant Monsanto Company*

## TABLE OF CONTENTS


I. INTRODUCTION ....... 1

II. BACKGROUND ....... 4

A. Congress Charged EPA With Comprehensive Regulatory Authority Over Pesticides. ....... 4

B. EPA Has Long Concluded Roundup Does Not Cause Cancer and Approved It for Sale. ....... 5

C. Plaintiffs Sue Monsanto Alleging Roundup Caused Their Cancer. ....... 5

a. The Berenfeld, Glassman, Holmes, Levy, and Proctor Plaintiffs ....... 5

b. The Brookner Plaintiffs ....... 6

c. The Gebo/Dietrich Plaintiffs ....... 6

d. The Gomez Plaintiffs ....... 7

e. Plaintiff Jackson ....... 7

f. Plaintiff Schrag ....... 7

g. Plaintiff Villalobos ....... 8

III. LEGAL STANDARD ....... 8

IV. ARGUMENT ....... 8

A. Plaintiffs Have No Claims That Survive Durnell. ....... 9

1. *Durnell* Establishes That FIFRA Expressly Preempts Any Claim Predicated On A Failure-to-Warn. ....... 9

2. All of Plaintiffs' Causes of Action Are Predicated On Failure-To-Warn Allegations And Are Therefore Expressly Preempted, As Held in *Durnell*. ....... 12

3. Plaintiffs Have Not Adduced Sufficient Evidence to Support Any Other Cause of Action Under Florida Law. ....... 17

a. Plaintiffs Cannot Avoid *Durnell* By Pivoting To A Design Defect Theory. ....... 18

i. To The Extent Plaintiffs Allege A Consumer Expectations Design Defect Claim, It Is A Preempted Failure-to-Warn Claim. ....... 18

ii. Plaintiffs Lack Evidence Establishing A Feasible Alternative Design For Roundup Would Have Avoided Their Injuries. ....... 19

iii. *Durnell* Confirms That FIFRA Impliedly Preempts Any Claim That Would Require Monsanto To Reformulate Roundup. ....... 22

b. Plaintiffs' Other Causes of Action Fail For The Same Reasons. ....... 24

CONCLUSION ....... 25

## TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 8

*Aubin v. Union Carbide Corp.*,
177 So. 3d 489 (Fla. 2015) .......... *passim*

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) .......... 10

*Beale v. Biomet, Inc*,
492 F. Supp. 2d 1360 (S.D. Fla. 2007) .......... 25

*Cates v. Zeltiq Aesthetics, Inc.*,
535 F. Supp. 3d 1222 (M.D. Fla. 2021) .......... 24

*Cates v. Zeltiq Aesthetics, Inc.*,
73 F.4th 1342 (11th Cir. 2023) .......... 2, 24

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 8, 22

*Chemical Name: Glyphosate*,
EPA, https://perma.cc/N8KY-7KJ5 .......... 5

*Cont. Baking Co. v. Vincent*,
634 So. 2d 242 (Fla. 5th DCA 1994) .......... 20

*Crawford v. ITW Food Equip. Grp., LLC*,
2018 WL 3599212 (M.D. Fla. Apr. 19, 2018) .......... 20

*Dye v. Covidien LP*,
470 F. Supp. 3d 1329 (S.D. Fla. 2020) .......... 24

*Geier v. Am. Honda Motor Co., Inc.*,
529 U.S. 861 (2000) .......... 9, 23

*Gouveia v. Phillips*,
823 So. 2d 215 (Fla. 4th DCA 2002) .......... 21

*Guinn v. AstraZeneca Pharms. LP*,
602 F.3d 1245 (11th Cir. 2010) .......... 21

*Hardeman v. Monsanto Co.*,
997 F.3d 941 (9th Cir. 2021) .......... 23

*Hardeman v. Monsanto Co.*,
No. 16-cv-00525-VC (Mar. 27, 2019) (ECF 288) .................................................... 17, 19, 23

*Hughes v. Oklahoma*,
441 U.S. 322 (1979) ........................................................................................................ 10

*Kaufman v. Pfizer Pharm., Inc.*,
No. 02-22692, 2010 WL 9438673 (S.D. Fla. Nov. 23, 2010)................................................ 20

*Kordel v. United States*,
335 U.S. 345 (1948) ........................................................................................................ 10

*Kurns v. R.R. Friction Prods. Corp.*,
565 U.S. 625 (2012) .......................................................................................................... 9

*Lowe v. Sporicidin Int'l*,
47 F.3d 124 (4th Cir. 1995)............................................................................................... 11

*McClain v. Metabolife Int'l, Inc.*,
401 F.3d 1233 (11th Cir. 2005)........................................................................................... 21

*Monsanto Co. v. Durnell*,
146 S. Ct. 2001 (2026) ............................................................................................ *passim*

*Monsanto Co. v. Durnell*,
No. 24-1068, 2025 WL 1665996 (U.S. June 8, 2025) .......................................................... 18

*Mut. Pharm. Co., Inc. v. Bartlett*,
570 U.S. 472 (2013).................................................................................................. *passim*

*Nunez v. Coloplast Corp.*,
461 F. Supp. 3d 1260 (S.D. Fla. 2020) ................................................................................ 24

*Papas v. Upjohn Co.*,
985 F.2d 516 (11th Cir. 1993)........................................................................... 11, 16, 20

*Papike v. Tambrands Inc.*,
107 F.3d 737 (9th Cir. 1997)............................................................................................... 18

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
457 F.3d 963 (9th Cir. 2006)............................................................................................... 19

*Pierre v. Intuitive Surgical, Inc.*,
476 F. Supp. 3d 1260 (S.D. Fla. 2020) ................................................................................ 25

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011).......................................................................................... 3, 23, 24

*R.J. Reynolds Tobacco Company v. Nelson*,
353 So.3d 87 (Fla. Dist. Ct. App. 2022) ............................................................ 19, 20, 22

*In re Roger Antkiewicz & Pest Elim. Prods. of Am., Inc.*,
8 E.A.D. 218, 1999 WL 362852 (EAB 1999)....................11

*In re Roundup Prods. Liab. Litig.*,
364 F. Supp. 3d 1085 (N.D. Cal. 2019)....................23

*In re Roundup Prods. Liab. Litig.*,
No. 16-md-2741, 2019 WL 3219360 (N.D. Cal. July 12, 2019)....................17, 19

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984)....................4

*Small v. Amgen, Inc.*,
2 F. Supp. 3d 1292 (M.D. Fla. 2014)....................25

*Sunbeam Television Corp. v. Mitzel*,
83 So. 3d 865 (Fla. 3d DCA 2012)....................19

*Suzuki Motor Corp. v. Winckler*,
434 So. 3d 104 (Fla. Dist. Ct. App. 2026)....................2

*Taylor AG Industries v. Pure-Gro*,
54 F.3d 555 (9th Cir. 1995)....................16, 20

*Trejo v. Johnson & Johnson*,
13 Cal.App.5th 110 (2017)....................24

*Tsavaris v. Pfizer, Inc.*,
No. 1:15-CV-21826-KMM, 2016 WL 375008 (S.D. Fla. Feb. 1, 2016)....................20

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
435 F.3d 989 (9th Cir. 2006)....................19

*West v. Caterpillar Tractor Co., Inc.*
336 So. 2d 80 (Fla. 1976)....................20

*Yates v. Orther-McNeil-Janssen Pharms., Inc.*,
808 F.3d 281 (6th Cir. 2015)....................24

*Yousefzadeh v. Johnson & Johnson Consumer Inc.*,
No. 24-3296, 2026 WL 2192415 (2d Cir. July 30, 2026)....................11

**Statutes**

7 U.S.C. §§ 136 *et seq*....................4, 8

7 U.S.C. § 136(p)(2)....................10

7 U.S.C. § 136a(1)(D)....................4

7 U.S.C. § 136a(a)....................4

7 U.S.C. § 136j(a)(1)(B) .......... 11

7 U.S.C. § 136j(a)(1)(E) .......... 15, 16

7 U.S.C. § 136*l* .......... 5

7 U.S.C. § 136v(a) .......... 23

7 U.S.C. § 136v(b) .......... 4, 9, 10, 11

21 U.S.C. § 321(m) .......... 10

**Other Authorities**

40 C.F.R. §§ 152.3, 152.112(e) .......... 4

40 C.F.R. § 152.44 .......... 22

40 C.F.R. § 152.44(a) .......... 2, 4

40 C.F.R. § 168.22(a) .......... 11

Fed. R. Civ. P. 56 .......... 8

Restatement (Second) of Torts § 402A, cmt. j (1962) .......... 10, 19

## I. INTRODUCTION

The Berenfeld, Brookner, Gebo/Dietrich, Glassman, Gomez, Holmes, Jackson, Levy, Proctor, Schrag, and Villalobos plaintiffs (collectively the "Plaintiffs") pled Florida state claims, all alleging in substance that glyphosate—the active ingredient in Roundup® ("Roundup")[1]—caused their cancers. Their claims cannot survive the United States Supreme Court's recent decision in *Monsanto Co. v. Durnell*, 146 S. Ct. 2001 (2026). Any failure-to-warn theory is now indisputably preempted, as some Plaintiffs recognize. And neither Florida law nor the evidentiary record any of the Plaintiffs have assembled allows any workaround. The Court should grant summary judgment in full to Monsanto in each case.

In *Durnell*, the Supreme Court held that any "failure-to-warn claim" alleging Roundup causes cancer "is expressly preempted" by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). *Id.* at 2012. The "heart of" such a claim, the Court determined, "is that Monsanto should have included a cancer warning on its Roundup labels." *Id.* at 2010. But EPA has long concluded "that glyphosate is not likely to cause cancer in humans" and "has not required glyphosate-based pesticides like Roundup to include a cancer warning on their labels." *Id.* at 2009. To the contrary, "federal law requires Monsanto to sell Roundup with the label that EPA approved," which is "a label without a cancer warning." *Id.* at 2011. Thus, federal law "expressly preempts *any state tort claim* that would require a pesticide manufacturer to use a label" that differs from "the EPA-approved label." *Id.* at 2014 (emphasis added).

Each of these Plaintiffs brought a failure-to-warn case. All their claims restate, in various language but without substantive difference, that Monsanto should have warned of Roundup's purported cancer risk. Plaintiffs' express failure-to-warn claims are plainly foreclosed. Their other claims, which aren't fundamentally different, share the same problem.

First, the design defect claims are predicated on a defective warning, such as that Monsanto had "knowledge of the safety problems associated with Roundup® and glyphosate-containing products, and suppressed this knowledge from the general public," and made "conscious decisions"

[1] "Roundup" is the trade/brand name under which multiple/varying products are sold, but for purposes of this motion we will refer to the formulations to which Plaintiffs were exposed as "Roundup."

to not "warn or inform the unsuspecting public." Berenfeld Compl. (Berenfeld Dkt. 1) ¶¶ 137(f), 146. The design defect claims of five of the eleven Plaintiffs so allege verbatim, and the design defect claims of the other six are likewise premised on failure-to-warn allegations, such as that Monsanto knew "at the time of marketing its Roundup products that exposure to Roundup and specifically, its active ingredient glyphosate, could result in cancer," and that Plaintiffs "could not have reasonably discovered" that alleged information. Gebo/Dietrich First Amended Compl. (Gebo/Dietrich Dkt. 1) ¶¶ 234(f), 236.

Pleading aside, the *evidence* Plaintiffs have advanced in these cases—which focuses exclusively on Monsanto's alleged failure to warn—cannot support any other theory under Florida law. Plaintiffs cannot salvage their cases by pointing to their design defect claims. To succeed on a design-defect claim under Florida law, a "plaintiff must show" a product had a "defective design [that] made the product unreasonably dangerous." *Suzuki Motor Corp. v. Winckler*, 434 So. 3d 104, 109 (Fla. Dist. Ct. App. 2026) (citation modified). The "default" test for proving that a design is "unreasonably dangerous" under Florida law is the consumer expectations test. *Cates v. Zeltiq Aesthetics, Inc.*, 73 F.4th 1342, 1351 (11th Cir. 2023). A design defect claim premised on consumer expectations is, however, in substance a failure-to-warn claim—the way that ordinary consumers form expectations about complex chemical products is from reading their labels. *See* Part IV(A)(3)(a)(i), *infra*.

Florida law also permits a plaintiff to prove a design defect by putting forward expert evidence establishing that a feasible alternative design would have averted the plaintiff's injuries. *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 511 (Fla. 2015). But Plaintiffs have neither pled the existence of an alternative design for Roundup nor identified any evidence—expert or otherwise—capable of meeting that burden under Florida law.

Even setting aside Plaintiffs' lack of proof that Monsanto could or should have reformulated Roundup to adopt an alternative design, that claim still faces a preemption problem. Although the Supreme Court's focus in *Durnell* was express preemption and the labeling requirements that flow from registration under FIFRA, the Court clearly stated that registration carries "other consequences," including that "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition

described at registration." 146 S. Ct. at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(C)). The same regulation on which *Durnell* based its conclusion that "federal law requires Monsanto to sell Roundup with the label that EPA approved," 146 S. Ct. at 2011, applies equally to a pesticide's composition, *see* 40 C.F.R. § 152.44(a). That means it would be unlawful for Monsanto to sell Roundup with a changed formulation without first obtaining EPA's approval. As the Supreme Court's impossibility preemption cases make clear, when a regulated party cannot comply with a state-law duty absent prior agency approval, the state-law duty is conflict preempted as a matter of impossibility. *Mut. Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 483–84 (2013) ("redesign" of drug "was not possible" where, if manufacturer were "to change the composition of its [drug], the altered chemical would be a new drug that would require its own NDA"); *see also PLIVA, Inc. v. Mensing*, 564 U.S. 604, 620 (2011) ("The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it."). Because Monsanto could not unilaterally comply with a state-law duty to redesign and sell (an alternative) Roundup, it is preempted.

The remainder of these Plaintiffs' causes of action are either derivative of, or premised on, the same allegations undergirding their failure-to-warn and design defect claims. Without exception, each Plaintiff's negligence claim says Monsanto breached a duty to provide "accurate, true, and correct information concerning the risks of using Roundup® and appropriate, complete, and accurate warnings," and "[f]ail[ed] to warn Plaintiffs … that the product's risk of harm was unreasonable." *See, e.g.*, Glassman Compl. (Glassman Dkt. 1) ¶¶ 172, 178(h). The same is true of each Plaintiff's claims pled as fraud, misrepresentation or suppression, such as allegations that Monsanto "concealed, suppressed, or omitted material, adverse information regarding the safety of Roundup," and "concealed adverse information including the risk …." *See, e.g.*, Holmes Compl. (Holmes Dkt. 1) ¶¶ 185, 189. Three Plaintiffs assert implied warranty claims, and each is premised on alleged failure-to-warn allegations that, for example, "Monsanto failed to disclose that its Roundup and glyphosate-containing products have dangerous propensities." Brookner Compl. (Brookner Dkt. 1) ¶ 190. The same is also true of the few other claims certain Plaintiffs have asserted. All of Plaintiffs' additional claims are predicated on, or derivative of, their failure to warn or design defect claims, and therefore fail for the same reasons as those underlying claims.

Plaintiffs cannot substantiate any claim that would not be preempted under *Durnell*. Summary judgment should therefore be granted in full to Monsanto.

## II. BACKGROUND

### A. Congress Charged EPA With Comprehensive Regulatory Authority Over Pesticides.

FIFRA is "a comprehensive regulatory statute" through which Congress charged EPA with regulating all aspects of pesticides. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 991 (1984); *see* 7 U.S.C. §§ 136 *et seq*. FIFRA contains an express preemption provision, titled "Uniformity" by Congress, that preempts "any" state-law "requirements for labeling or packaging in addition to or different from those required under" FIFRA. 7 U.S.C. § 136v(b). That clause protects "EPA's comprehensive and exclusive authority in registering pesticides and approving labels." *Durnell*, 146 S. Ct. at 2008.

Before any pesticide may be sold in the United States, it must first be approved by EPA. 7 U.S.C. § 136a(a). By law, EPA cannot register a pesticide unless it "conclude[s] that the pesticide will not generally cause unreasonable adverse effects on human health." *Durnell*, 146 S. Ct. at 2006 (citations omitted). In making this determination, EPA considers "the complete formula of the pesticide," including both active and inert ingredients. 7 U.S.C. § 136a(1)(D); *see also* 40 C.F.R. §§ 152.3, 152.112(e). EPA must also determine that the pesticide's "labeling complies with FIFRA's many specific requirements," *Durnell*, 146 S. Ct. at 2014 (citations omitted), including that the "label includes all warnings necessary and adequate to protect human health," *id.* at 2007. Any precautionary or human hazard labeling—such as a cancer warning—must be reviewed and approved by EPA. *Id.* at 2006. Once EPA approves a pesticide's label, any human health warnings or cautionary statements on the label can only be changed with the agency's approval. *Id.* at 2010 & n.5; *see also* 40 C.F.R. §§ 152.44(a); 156.70(c). Accordingly, "[a]fter EPA approves a pesticide's label at registration, manufacturers are legally required to use that label." *Durnell*, 146 S. Ct. at 2010.

The Supreme Court has explained that EPA's approval of a pesticide has other consequences as well. One "consequence[]" of Roundup's "[r]egistration" is that manufacturers and sellers are prohibited from making "any claims" regarding Roundup that "substantially differ from" those approved by EPA during registration. *Id.* at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(B)). Further,

once EPA registers a pesticide, "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition described at registration." *Id.* (quoting 7 U.S.C. § 136j(a)(1)(C)); *see also* 40 C.F.R. § 152.44(a) ("[A]ny modification in the composition . . . of a registered product must be submitted with an application for amended registration."). A person who violates any one of these obligations is subject to civil and criminal penalties. 7 U.S.C. § 136*l*.

**B. EPA Has Long Concluded Roundup Does Not Cause Cancer and Approved It for Sale.**

EPA first approved glyphosate-based herbicides ("GBHs") for sale in 1974. *Durnell*, 146 S. Ct. at 2008. Since then, Monsanto has manufactured and sold a variety of GBHs, including many under the brand name Roundup. For more than three decades, "EPA has repeatedly re-evaluated glyphosate and has repeatedly concluded that glyphosate is not likely to cause cancer." *Id*. In 1991, for example, "EPA classified glyphosate as unlikely to cause cancer in humans," and in "1993, EPA reiterated that conclusion and reregistered glyphosate products without a cancer warning." *Id.* "In 2017 and 2019, after the International Agency for Research on Cancer classified glyphosate as a probable carcinogen, EPA re-examined the issue but still adhered to its longstanding position on glyphosate"—namely, that it does not cause cancer. *Id*. at 2008–09.

In line with its scientific determination that glyphosate does not cause cancer, EPA has repeatedly approved Monsanto's Roundup labels, which do not contain a cancer warning. *Id*. And EPA continues to register glyphosate-based pesticide formulations and approve glyphosate product labels—all without cancer warnings. *See Chemical Name: Glyphosate*, EPA, https://perma.cc/N8KY-7KJ5.

**C. Plaintiffs Sue Monsanto Alleging Roundup Caused Their Cancer.**

**a. The Berenfeld, Glassman, Holmes, Levy, and Proctor Plaintiffs**

The Berenfeld, Glassman, Holmes, Levy, and Proctor Plaintiffs filed suit in the Southern District of Florida, and bring four nearly identical Florida state-law claims against Monsanto:

- Count I for "Strict Liability (Design Defect)." Berenfeld Compl. (Berenfeld Dkt. 1) ¶¶ 129-147; Glassman Compl. (Glassman Dkt. 1) ¶¶ 130-148; Holmes Compl. (Holmes Dkt. 1) ¶¶ 129-147; Levy Compl. (Levy Dkt. 1) ¶¶ 130-148; Proctor Compl. (Proctor Dkt. 1) ¶¶ 130-148.

- Count II for "Strict Liability (Failure to Warn)." Berenfeld Compl. ¶¶ 148-168; Glassman Compl. ¶¶ 149-168; Holmes Compl. ¶¶ 148-168; Levy Compl. ¶¶ 149-169; Proctor Compl. ¶¶ 149-169.
- Count III for "Negligence." Berenfeld Compl. ¶¶ 169-183; Glassman Compl. ¶¶ 169-183; Holmes Compl. ¶¶ 169-183; Levy Compl. ¶¶ 169-183; Proctor Compl. ¶¶ 169-183.
- Count IV for "Fraud, Misrepresentation, and Suppression." Berenfeld Compl. ¶¶ 184-193, 189; Glassman Compl. ¶¶ 184-193; Holmes Compl. ¶¶ 184-193; Levy Compl. ¶¶ 183-193; Proctor Compl. ¶¶ 184-193.

**b. The Brookner Plaintiffs**

The Brookner Plaintiffs filed suit in the Southern District of Florida, and bring eight Florida state-law claims against Monsanto:

- Count I for "Strict Liability Design Defect." Brookner Compl. (Brookner Dkt. 1) ¶¶ 121-137.
- Count II for "Strict Liability Failure to Warn." *Id.* ¶¶ 137-151.
- Count III for "Negligence." *Id.* ¶¶ 152-162.
- Count IV for "Negligent Design." *Id.* ¶¶ 164-173.
- Count V for "Negligent Marketing." *Id.* ¶¶ 174-185.
- Count VI for "Breach of Implied Warranty." *Id.* ¶¶ 186-200.
- Count VII for alleged "Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") § 501.201, et seq." *Id.* ¶¶ 201-206.
- Count VIII—Plaintiff Pamela Brookner's claim for "Loss of Consortium." *Id.* ¶¶ 207-209.

**c. The Gebo/Dietrich Plaintiffs**

The Gebo/Dietrich Plaintiffs filed suit in the Middle District of Florida, and their operative First Amended Complaint ("FAC") alleges four Florida state-law claims against Monsanto:

- Count I for "Negligence." Gebo/Dietrich FAC (Gebo/Dietrich Dkt. 22) ¶¶ 183-203.
- Count II for "Negligence/Wrongful Death." *Id.* ¶¶ 204-226.
- Count III for "Strict Liability (Design Defect)." *Id.* ¶¶ 227-246.
- Count IV for "Strict Liability (Failure to Warn)." *Id.* ¶¶ 247-273.

**d. The Gomez Plaintiffs**

The Gomez Plaintiffs initially filed suit in the Circuit Court of the 17th Judicial District in and for Broward County, Florida, and bring five Florida state-law claims against Monsanto:

- Count I for "Negligent Design." Gomez Compl. (Gomez Dkt. 1) ¶¶ 39-47.
- Count II for "Negligent Failure to Warn." *Id.* ¶¶ 48-55.
- Count III for "Strict Liability (Design Defect)." *Id.* ¶¶ 56-64.
- Count IV for "Strict Liability (Failure to Warn)." *Id.* ¶¶ 65-72.
- Count V for "Negligence of Margate Blvd. Hardware Store, Inc.," which is not asserted against Monsanto. *Id.* pg. 16.
- Count VI—Plaintiff Maritza Cosano-Gomez's "Loss of Consortium" claim. *Id.* ¶¶ 83.

**e. Plaintiff Jackson**

Plaintiff Jackson filed suit in the Middle District of Florida, and her operative First Amended Complaint ("FAC") brings five Florida state-law claims against Monsanto:

- Count I for "Negligence." Jackson FAC (Jackson Dkt. 7) ¶¶ 134-147.
- Count II for "Strict Products Liability (Design Defect)." *Id.* ¶¶ 148-172.
- Count III for "Strict Products Liability (Failure to Warn)." *Id.* ¶¶ 173-197.
- Count IV for "Breach of Implied Warranties." *Id.* ¶¶ 198-210.
- Count V for "Breach of Express Warranty." *Id.* ¶¶ 211-231.

**f. Plaintiff Schrag**

Plaintiff Schrag initially filed suit in the Circuit Court of the 11th Judicial District in and for Miami-Dade County, Florida, and brings four Florida state-law claims against Monsanto:

- Count I for "Strict Products Liability." Schrag Compl. (Schrag Dkt. 1) ¶¶ 133-142.
- Count II for "Negligence." *Id.* ¶¶ 143-150.
- Count III for "Fraudulent Misrepresentation." *Id.* ¶¶ 151-163.
- Count IV for "Negligent Misrepresentation." *Id.* ¶¶ 164-178.
- Counts V, VI, and VII are not alleged against Monsanto. *Id.* ¶¶ 179-202.

**g. Plaintiff Villalobos**

Plaintiff Villalobos initially filed suit in the Circuit Court of the 12th Judicial District in and for Collier County, Florida, and brings five Florida state-law claims against Monsanto:

- Count I for "Negligence." Villalobos Compl. (Villalobos Dkt. 1) ¶¶ 63-78.
- Count II for "Strict Products Liability-Design Defect." *Id.* ¶¶ 79-100.
- Count III for "Strict Products Liability-Failure to Warn." *Id.* ¶¶ 101-120.
- Count IV for "Breach of Implied Warranties." *Id.* ¶¶ 121-130.
- Count V for "Successor Liability." *Id.* ¶¶ 131-137.

In response to this Court's June 30, 2026 Order (Dkt. No. 22402), Monsanto conferred with each Plaintiffs' counsel. Plaintiffs' respective positions regarding voluntarily dismissing some or all of their claims are identified in Part IV(A)(2), *supra*.

## III. LEGAL STANDARD

A court "shall grant" summary judgment when the movant establishes that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. ARGUMENT

The Supreme Court's decision in *Durnell* establishes that federal law—the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 *et seq.*—preempts all of Plaintiffs' claims against Monsanto. And any workaround Plaintiffs might seek to employ neither escapes preemption nor is triable on the evidentiary record Plaintiffs have assembled.

**A. Plaintiffs Have No Claims That Survive Durnell.**

Preemption of state law "occurs through the direct operation of the Supremacy Clause" of the United States Constitution, *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630 (2012) (quotation marks omitted), so "state laws that conflict with federal law are without effect," *Bartlett*, 570 U.S. at 479–80 (quotation marks omitted). Congress may expressly preempt state law by passing a preemption provision in a statute, *see, e.g., Kurns*, 565 U.S. at 630, and federal law may additionally impliedly preempt state law where there is a conflict between the two, *see, e.g.*, *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 869 (2000). The presence of an "express pre-emption provision[] does not bar the ordinary working of conflict pre-emption principles." *Id.*

**1. *Durnell* Establishes That FIFRA Expressly Preempts Any Claim Predicated On A Failure-to-Warn.**

To achieve national "uniformity" in pesticide labeling, Congress expressly preempted state laws that "impose . . . any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." 7 U.S.C. § 136v(b). That express preemption provision protects "EPA's comprehensive and exclusive authority in registering pesticides and approving labels." *Durnell*, 146 S. Ct. at 2008.

In *Durnell*, the Supreme Court held that a "failure-to-warn claim" alleging Roundup causes cancer "is expressly preempted." *Id.* at 2012. The "heart of" such a claim, the Court concluded, "is that Monsanto should have included a cancer warning on its Roundup labels." *Id.* at 2010. But "in accordance with EPA's view that glyphosate is not likely to cause cancer in humans"—a conclusion EPA has held across "more than three decades"—"EPA has not required glyphosate-based pesticides like Roundup to include a cancer warning on their labels." *Id.* at 2009. A failure-to-warn claim therefore imposes a state-law requirement "in addition to or different from those required under [FIFRA]," and triggers express preemption. 7 U.S.C. § 136v(b).

*Durnell* also confirms that a claim's substance, not what a plaintiff happens to call it, controls. FIFRA's Uniformity provision preempts "*any state tort claim* that would require a pesticide manufacturer to use a label" other than "the EPA-approved label." *Durnell*, 146 S. Ct. at 2014 (emphasis added). That conclusion builds on prior precedent, which had recognized that a claim is

subject to express preemption under FIFRA if it "set[s] a standard for a product's labeling that the . . . label is alleged to have violated" such as "by containing false statements and inadequate warnings." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 446 (2005). Indeed, *Bates* held that disguised "failure-to-warn claims," *id.*, which had been pled as "claims for negligent testing and defective design and manufacture," *id.* at 457 (Thomas, J., concurring in part), qualified as "requirements for labeling," within the meaning of FIFRA's express preemption provision. 7 U.S.C. § 136v(b). And the Supreme Court had previously explained that when conducting a federal preemption analysis, a court "is not bound by [t]he name, description or characterization given it by the legislature or the courts of the State, but will determine for itself the practical impact of the law." *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979) (citation modified). Together, these precedents leave no doubt that *any* claim that would purport to require Monsanto to warn that Roundup causes cancer is preempted.

*Durnell*'s categorical conclusion that failure to warn claims are preempted aligns with foundational products liability law, according to which a manufacturer discharges its duty to warn by giving an adequate "warning[] *on the container*." Restatement (Second) of Torts § 402A, cmt. j (1962) (emphasis added); *see also*, *e.g.*, *Aubin*, 177 So.3d at 515 (explaining that a manufacturer cannot discharge a warning duty by issuing a warning they may have "reason to expect, or at least suspect . . . will fail to reach" end users). So, to avoid failure-to-warn liability, a manufacturer must change the label. That is why the label is the "heart" of a failure-to-warn claim, *Durnell*, 146 S. Ct. at 2010, and why such a claim necessarily imposes a "requirement[] for labeling," 7 U.S.C. § 136v(b), and is therefore preempted. Moreover, "labeling" is a broad term of art under FIFRA. It includes not only the label itself, but "all other written, printed, or graphic matter . . . accompanying the pesticide . . . at any time." 7 U.S.C. § 136(p)(2). Interpreting a similarly worded statutory definition, the U.S. Supreme Court has held that "the phrase 'accompanying such article' is not restricted to labels that are on or in the article o[r] package" containing it. *Kordel v. United States*, 335 U.S. 345, 349 (1948) (materials distributed separately from drugs are labeling "accompanying" drugs) (interpreting 21 U.S.C. § 321(m)). Given this authoritative construction of the term "accompanying," the term "labeling" as defined by FIFRA "clearly embraces advertising." *Id.* at 349-50.

The Eleventh Circuit has explained that plaintiffs cannot rely on advertising to evade express preemption under 7 U.S.C. § 136v(b) because "any claims that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging." *Papas v. Upjohn Co.*, 985 F.2d 516, 519 (11th Cir. 1993).

Finally, in addition to express preemption, a failure-to-warn-by-advertising claim is barred by impossibility preemption. "When federal law forbids an action that state law requires, the state law is without effect." *Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472, 486 (2013). And *Durnell* confirms that as a "consequence" of Roundup's registration, "FIFRA prohibits" Monsanto from making "any claims" regarding Roundup that "substantially differ from" those approved by EPA. *Durnell*, 146 S. Ct. at n.1 (quoting 7 U.S.C. § 136j(a)(1)(B)). That prohibition specifically applies to "advertisements in any advertising medium to which pesticide users or the general public have access." 40 C.F.R. § 168.22(a).

As both EPA enforcers and federal courts agree, the reach of § 136j(a)(1)(B) extends to "warnings." *In re Roger Antkiewicz & Pest Elim. Prods. of Am., Inc.*, 8 E.A.D. 218, 1999 WL 362852, at *13 (EAB 1999); *see also Lowe v. Sporicidin Int'l*, 47 F.3d 124, 130 (4th Cir. 1995). EPA has approved no claim that Roundup causes cancer—it has instead repeatedly concluded the opposite. *Durnell*, 146 S. Ct. at 2007–9. Monsanto therefore could not "claim" that Roundup causes cancer "in any advertising medium" without violating federal law. 40 C.F.R. § 168.22(a). State law therefore may not impose a duty to do so.

Any claim premised on an alleged state-law duty to conduct off-label advertising that contradicts the EPA approved label would "create an end-run around federal labeling regulations by essentially forcing" Monsanto to add language to its advertisements "in precisely the opposite way" that EPA requires. *Yousefzadeh v. Johnson & Johnson Consumer Inc.*, No. 24-3296, 2026 WL 2192415, at *12 (2d Cir. July 30, 2026). "Such additional forced advertising disclosures would clearly conflict" with FIFRA's labeling requirements and are preempted. *Id.*; *see also id.* n.16 (explaining that the conclusion that the FDCA preempts failure-to-disclose claims—"even claims

regarding 'off-label statements'"—"mirrors" the approach taken by courts "in addressing the scope of FIFRA's near-identical preemption provision").

### 2. All of Plaintiffs' Causes of Action Are Predicated On Failure-To-Warn Allegations And Are Therefore Expressly Preempted, As Held in *Durnell*.

Plaintiffs' claims—although couched in various Florida "state tort duties"—all boil down to the preempted theory that Monsanto is liable for failing to include a cancer warning on Roundup's label. *Durnell*, 146 S.Ct. 2001 at 2008 ("as this Court's precedents make clear and as the parties agree, state tort duties constitute state labeling requirements."). Plaintiffs' allegations confirm this.

The Complaints by the ***Berenfeld, Glassman, Holmes, Levy***, and ***Proctor*** plaintiffs are nearly identical, and each of their causes of action is premised on failure-to-warn allegations:

- Count I for "Strict Liability (Design Defect)" fails to identify any design defect or alternative formulation and instead alleges Monsanto acted "with knowledge of the safety problems associated with Roundup® … and suppressed this knowledge from the general public," that "[a]t the time of marketing … Roundup® was defective in that exposure to Roundup® and specifically, its active ingredient glyphosate, could result in cancer," and made "conscious decisions" to not "warn or inform the unsuspecting public." Berenfeld Compl. ¶¶ 137(f), 146; Glassman Compl. ¶¶ 138(f), 147 (same); Holmes Compl. ¶¶ 137(f), 146 (same); Levy Compl. ¶¶ 138(f), 147 (same); Proctor Compl. ¶¶ 138(f), 147 (same).

- Count II for "Strict Liability (Failure to Warn)" alleges Roundup products are "defective and unreasonably dangerous to consumers, including Plaintiffs, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup®," and that Monsanto "failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure." Berenfeld Compl. ¶¶ 150, 155; Glassman Compl. ¶¶ 151, 156 (same); Holmes Compl. ¶¶ 150, 155 (same); Levy Compl. ¶¶ 151, 156 (same); Proctor Compl. ¶¶ 151, 156 (same).[2]

- Count III for "Negligence" alleges "Monsanto's duty of care … included providing accurate, true, and correct information concerning the risks of using Roundup® and appropriate, complete, and accurate warnings," and "[f]ail[ed] to warn Plaintiffs … that the product's risk of harm was unreasonable." Berenfeld Compl. ¶¶ 172, 178(h); Glassman Compl. ¶¶ 172, 178(h) (same); Holmes Compl. ¶¶ 172, 178(h) (same); Levy Compl. ¶¶ 172, 178(h) (same); Proctor Compl. ¶¶ 172, 178(h) (same).

- Count IV for "Fraud, Misrepresentation, and Suppression," alleges Monsanto "concealed, suppressed, or omitted material, adverse information regarding the safety of Roundup," and "concealed adverse information including the risk of non-Hodgkin lymphoma." Berenfeld

[2] During the meet and confer, Jeffrey Haberman, counsel for plaintiffs Berenfeld, Glassman, Holmes, Levy, and Proctor, acknowledged that their failure-to-warn causes of action are preempted.

Compl. ¶¶ 185, 189; Glassman Compl. ¶¶ 185, 189 (same); Holmes Compl. ¶¶ 185, 189 (same); Levy Compl. ¶¶ 185, 189 (same); Proctor Compl. ¶¶ 185, 189 (same).

Similarly, all of the ***Brookner*** Plaintiffs' causes of action are premised on failure-to-warn allegations:

- Count I for "Strict Liability Design Defect" fails to identify any design defect or alternative formulation and instead alleges Monsanto "knew, or should have known, of the unreasonable risks of harm associated with the use of and/or exposure to Roundup," and that "[t]he dangers of Roundup were unknown to the ordinary consumer …. Plaintiffs did not know of these dangers. And if they would have known, these dangers would have been unacceptable to them." Brookner Compl. ¶¶ 129, 131.

- Count II for "Strict Liability Failure to Warn" alleges Monsanto "failed to exercise reasonable care to warn of the danger," and that the "minimal warnings disseminated with Roundup and glyphosate-containing products were inadequate and failed to communicate the carcinogenic dangers …." *Id.* ¶¶ 143, 144.

- Count III for "Negligence" alleges Monsanto "had a duty to provide true and accurate information and warnings concerning the risks of using Roundup," and "[fail[ed] to disclose the risk of serious harm associated with use of and exposures to Roundup and glyphosate-containing products." *Id*. ¶¶ 156, 159(f).

- Count IV for "Negligent Design" alleges Monsanto "knew, or in the exercise of reasonable care, should have known that consumers and users of Roundup were unaware of the carcinogenic risks associated with exposures." *Id.* ¶ 169.

- Count V for "Negligent Marketing" alleges Monsanto breached "a duty to provide true and accurate information and warnings concerning the risks of using Roundup." *Id.* ¶ 178.

- Count VI for "Implied Warranty" alleges "Monsanto failed to disclose that its Roundup … products have dangerous propensities" including that they "carr[y] an increased risk of developing severe injuries, including Plaintiff's NHL." *Id.* ¶ 190.

- Count VII for alleged violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") alleges "concealment of the dangers of Roundup described above." *Id.* ¶ 205.

- Count VIII—Plaintiff Pamela Brookner's claim for "Loss of Consortium"—is wholly derivative of the prior claims. *Id.* ¶ 207.[3]

Each cause of action in the ***Gebo/Dietrich*** operative FAC is also premised on failure-to-warn allegations:

[3] During the meet and confer, Matt Leckman, counsel for Plaintiff Brookner, stated that Plaintiff Brookner has remaining non-preempted claims and does not agree to dismissal.

- Count I for "Negligence" alleges Monsanto "[f]ail[ed] to warn Plaintiff … that the product's risk of harm was unreasonable," and that "[a]s a proximate result of Defendant's … placing its defective Roundup® products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate and/or Roundup®, Mr. Gebo developed NHL." Gebo/Dietrich FAC ¶¶ 195(i), 202.

- Count II for "Negligence/Wrongful Death" alleges Monsanto acted negligently by "[f]ailing to warn Plaintiff … that the product's risk of harm was unreasonable." *Id.* ¶ 216(i).

- Count III for "Strict Liability (Design Defect)" fails to identify any design defect or alternative formulation and instead alleges Monsanto knew "at the time of marketing its Roundup® products that exposure to Roundup® … could result in cancer," and Plaintiff "could not have reasonably discovered" that alleged information. *Id.* ¶¶ 234(f), 236.

- Count IV for "Strict Liability (Failure to Warn)" alleges that "[d]espite the fact that Defendant knew or should have known that Roundup® products posed a grave risk of harm, it failed to warn of the dangerous risks associated with their use." *Id.* ¶¶ 248, 254.[4]

All of the ***Gomez*** Plaintiffs' causes of action are also premised on failure-to-warn allegations:

- Count I for "Negligent Design" alleges Monsanto "[f]ail[ed] to warn of the risk of serious harm and death associated with human use of the product," and "failed to prevent or adequately warn of these risks." Gomez Compl. ¶ 44, 45(b).

- Count II for "Negligent Failure to Warn" alleges Monsanto "breached its duty of care by failing to wa[rn] RICHARD GOMEZ of the risk of getting cancer from exposure to Roundup." *Id.* ¶ 53.

- Count III for "Strict Liability (Design Defect)" fails to identify any design defect or alternative formulation and instead alleges "Roundup was defective in design in that … it can cause cancer" and that Mr. Gomez was "exposed to Roundup without knowledge of its carcinogenicity." *Id.* ¶¶ 59, 60.

- Count IV for "Strict Liability (Failure to Warn)" alleges Roundup "was unreasonably dangerous to consumers, including Plaintiff … because Roundup does not contain warnings concerning the carcinogenicity of Roundup …." *Id.* ¶ 67.[5]

- Count V for "Negligence of Margate Blvd. Hardware Store, Inc." is not asserted against Monsanto but is squarely predicated on failure to warn allegations. *Id.* pg. 16, ¶¶ 77, 80.

- Count VI—Plaintiff Maritza Cosano-Gomez's "Loss of Consortium" claim—is wholly derivative of the prior claims. *See id.* ¶ 83.

---

[4] During the meet and confer, Greg Stamatopoulos, counsel for the Gebo/Dietrich Plaintiffs, stated that they will not dismiss any claim, but will not proceed on a label-based failure to warn theory.

[5] During the meet and confer, Daniel Di Matteo, counsel for the Gomez Plaintiffs, stated they will voluntarily dismiss Counts II ("Negligent Failure to Warn") and IV ("Strict Liability (Failure to Warn)").

All of Plaintiff ***Jackson***'s causes of action in her operative FAC are premised on failure-to-warn allegations:

- Count I for "Negligence" alleges Monsanto "[n]egligently fail[ed] to adequately and correctly warn … of the dangers of Roundup," "[f]ail[ed] to provide adequate cautions and warnings," "[f]ailed to accompany its product with proper and/or accurate warnings" and "[f]ailed to warn Decedent…." Jackson FAC ¶¶ 137(f), 137(h), 140(b), 140(e).

- Count II for "Strict Products Liability (Design Defect)" fails to identify any design defect or alternative formulation and instead alleges Monsanto "marketed and promoted a product in such a manner so as to make it inherently defective as the product downplayed its suspected, probable, and established health risks," and that Plaintiff was exposed to Roundup "without knowledge of Roundup's dangerous characteristics." *Id.* ¶¶ 156, 161.

- Count III for "Strict Products Liability (Failure to Warn)" alleges Monsanto "failed to warn of the … side effects associated with Roundup, namely its carcinogenic properties," and violated 7 U.S.C. § 136j(a)(1)(E) because "Roundup did not contain a warning or caution statement…." *Id.* ¶¶ 178, 184.

- Count IV for "Breach of Implied Warranties" alleges Monsanto made representations "that Roundup was safe" which were allegedly "false, misleading, and inaccurate in that Roundup was unsafe." *Id.* ¶ 202.

- Count V for "Breach of Express Warranty" alleges Monsanto represented that Roundup "did not produce dangerous side effects … [and] that the side effects it did produce were accurately reflected in the warnings." *Id.* ¶¶ 218, 220.[6]

All of Plaintiff ***Schrag's*** causes of action are also premised on failure-to-warn allegations:

- Count I for "Strict Products Liability" alleges Monsanto "failed to provide adequate warnings or instructions concerning the dangerous characteristics of Roundup," and "failed to give appropriate warnings about other risks …." Schrag Compl. ¶¶ 136(l), (n).

- Count II for "Negligence" alleges "Monsanto's duty of care included providing accurate, true, and correct warnings concerning the potential adverse effects of exposure," and breached that duty "[b]y failing to give appropriate warnings." *Id.* ¶¶ 146, 147(h).

- Count III for "Fraudulent Misrepresentation" alleges "Monsanto had a duty to disclose material information about the serious health effects of its products … [and] intentionally failed to disclose this information." *Id.* ¶ 154.

- Count IV for "Negligent Misrepresentation" alleges "Monsanto had a duty to disclose material information about the serious health effects of its products …. [and] negligently failed to disclose this information." *Id.* ¶ 167.

[6] During the meet and confer, Robby Bell, counsel for Plaintiff Jackson, stated only that they would "be opposing/responding to any *Durnell* motions that are filed by Monsanto."

- Counts V, VI, and VII are not alleged against Monsanto, but are premised allegations of "fail[ure] to provide warnings …" *Id.* ¶¶ 183(b), 191(b), 199(b).

Finally, all of Plaintiff ***Villalobos's*** claims are premised on failure-to-warn allegations:

- Count I for "Negligence" alleges that Monsanto was negligent in "[f]ailing to warn Plaintiff … that the product's risk of harm was unreasonable," by "[f]ailing to disclose … that use of and exposure to Roundup presented severe risks of cancer," and by selling the product without "adequate warnings." Villalobos Compl. ¶¶ 73(g), 73(h), 78.

- Count II for "Strict Products Liability, Design Defect" fails to identify any design defect or alternative formulation and instead alleges Monsanto "marketed and promoted a product in such a manner so as to make it inherently defective as the product downplayed its suspected, probable, and established health risks …." *Id.* ¶ 92.

- Count III for "Strict Products Liability, Failure to Warn" alleges Roundup "was not accompanied by proper warnings" and failed to "contain a warning or caution statement, which was necessary and, if complied with, was adequate to protect health those exposed in violation of 7 U.S.C. § 136j(a)(1)(E)." *Id.* ¶¶ 105, 106.

- Count IV for "Breach of Implied Warranties" alleges Monsanto "represented and warranted … that Roundup was safe" and that these "representations and warranties were false, misleading, and inaccurate in that Roundup was unsafe." *Id.* ¶¶ 124, 125.

- Count V is merely a "Successor Liability" claim. *Id.* ¶¶ 131–137.

Every one of these Plaintiffs' causes of action, then, either expressly or "essentially boils down to a claim that the Manufacturers' product labels, which have been approved by the EPA in accordance with FIFRA, inadequately warned [Plaintiffs] of the hazards associated with" Roundup. *Taylor AG Industries v. Pure-Gro,* 54 F.3d 555, 560 (9th Cir. 1995). They are, therefore, preempted as a matter of law under FIFRA and *Durnell,* and summary judgment should be granted in full for that reason alone. *See id.* at 560; *see also, e.g.*, *Papas,* 985 F.2d at 519 (FIFRA preemption extends to any state-law claims that "necessarily imply that the labeling and packaging failed to warn the user").[7]

---

[7] To the extent the Brookner, Gomez, Jackson, Levy or Schrag Plaintiffs attempt to oppose based on arguments premised on off-label advertising, in addition to being preempted as discussed in Part IV(A)(1), *supra*, they all expressly conceded in deposition that they did not view any advertising that led them to purchase or use Roundup. *See* Hsu Decl. Ex. 34 (Brookner Depo) at 167:14-20 ("To be honest with you, I don't recall."), Ex. 35 (Gomez Depo) at 137:18-25 ("Q. Do you recall any specific Roundup advertisements? A. No."); Ex. 36 (Jackson Depo) at 152:20-24 (only saw one ad on TV, and that was "after all this was filed," not before); Ex. 37 (Levy Depo) at 75-77 (cannot recall "any content from the advertisement at all."); Ex. 38 (Schrag Depo) at 75:11-15 ("Lately I have seen some things in the media, but at the time that you're referring to, no, I hadn't.").

**3. Plaintiffs Have Not Adduced Sufficient Evidence to Support Any Other Cause of Action Under Florida Law.**

Plaintiffs' problems extend further than pleading—they have an evidence problem. Similar to other plaintiffs in this MDL, Plaintiffs have not developed evidence capable of supporting any theory other than failure to warn.

This Court's decision in *Hardeman* is instructive. Although *Hardeman* involved putative California-law claims for strict-liability failure-to-warn, negligence, and design defect, Monsanto's alleged negligence was "not using reasonable care to warn about Roundup's NHL risk." Verdict Form, *Hardeman v. Monsanto Co.*, No. 16-cv-00525-VC (Mar. 27, 2019) (ECF 288). And after analyzing the issue at length, this Court also explained that the only "design defect" the evidence could sustain was that Roundup had been "sold *without a warning*." *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741, 2019 WL 3219360, at *3 (N.D. Cal. July 12, 2019) (emphasis added). When "the defect [is] the absence of a warning," this Court correctly observed, "the design defect claim [] merge[s] into the failure-to-warn claim." *Id.* at *2. So, notwithstanding the various ways that Mr. Hardeman styled the tort duties he pled, his whole case boiled down to three different ways of claiming that Monsanto should have warned him of Roundup's purported cancer risk.

Even if any of Plaintiffs' claims survived preemption, they would still fail for lack of evidence. As this Court has assessed, for cases in which discovery is complete, "in most instances and perhaps in all instances, the plaintiffs didn't really bother to develop a robust record in support of a state law claim that wouldn't be preempted under *Durnell*, to the extent that one exists." Tr. of Hr'g at 24:19–22 (July 9, 2026). In these cases, that assessment has proved correct.

The evidence the Plaintiffs have assembled goes no further than a failure to warn claim. Thus, regardless of whatever label Plaintiffs may have attached to their respective causes of action, their lack of evidence is dispositive. *See* Part IV(3)(A)(ii), *infra*. And even if Florida law allowed failure to warn theories to undergird claims other than those expressly denominated as failure to warn claims, they are preempted. After all, *Durnell* held that, as a matter of law, "[f]ailure-to-warn claims . . . are premised on common-law rules that qualify as labeling requirements." 146 S. Ct. at 2010 (citation omitted). The Court did not say "some failure-to-warn claims." It did not suggest—despite the

*Durnell* plaintiff's considerable efforts to argue otherwise—that there could be a residual, non-preempted component of a failure-to-warn claim. *See* Resp't.'s Br. in Opp'n, *Monsanto Co. v. Durnell*, No. 24-1068, 2025 WL 1665996 (U.S. June 8, 2025). *Durnell* addressed failure-to-warn claims as a whole and held they are preempted. That is enough to end these Plaintiffs' cases.

**a. Plaintiffs Cannot Avoid *Durnell* By Pivoting To A Design Defect Theory.**

To prevail on a design defect cause of action under Florida law, a plaintiff must establish that the product had a defective design through either the consumer expectations test, or under the risk utility test by putting forward expert evidence that a feasible alternative design would have averted his or her injuries. *Aubin*, 177 So. 3d at 511. Plaintiffs herein cannot establish either.

**i. To The Extent Plaintiffs Allege A Consumer Expectations Design Defect Claim, It Is A Preempted Failure-to-Warn Claim.**

Plaintiffs assert conclusory consumer expectation allegations that all boil down to a claim that Monsanto failed to warn of Roundup's alleged carcinogenicity, such as that "[t]he dangers of Roundup were unknown to the ordinary consumer …. Plaintiffs did not know of these dangers. And if they would have known, these dangers would have been unacceptable to them." Brookner Compl. ¶¶ 129, 131; *see also*, *e.g.*, Berenfeld Compl. ¶ 134; Gebo/Dietrich FAC ¶ 232; Glassman Compl. ¶ 135; Gomez Compl. ¶¶ 60-62; Holmes Compl. ¶ 134; Jackson FAC ¶ 153; Levy Compl. ¶ 135; Proctor Compl. ¶ 135; Schrag Compl. ¶ 136; Villalobos Compl. ¶ 84.

To prevail under the consumer expectations test, a plaintiff must "demonstrate that the product did not perform as safely as an ordinary consumer would expect." *Aubin*, 177 So. 3d at 504 (citation omitted). The test "focuses on the expectations that a manufacturer creates," based on the premise that "a manufacturer plays a pivotal role in crafting the image of a product and establishing the consumers' expectations for that product." *Id.* at 511. To the extent ordinary consumers hold reasonable safety expectations about complex, scientific products like synthetic chemical herbicides, those expectations come from *reading the label*. *See Papike v. Tambrands Inc.*, 107 F.3d 737, 743 (9th Cir. 1997) (rejecting proposition "that a consumer is entitled to expect a product to perform more safely than its government-mandated warnings indicate").

That is why, as a matter of law, a "product bearing [] a warning, which is safe for use if it is followed, is not in defective condition" under the consumer expectations test. Restatement (Second) of Torts § 402A cmt. j (1962) (emphasis added). A claim asserting that Monsanto is liable because a reasonable consumer would not expect Roundup to have a cancer risk is nothing more than an oblique way of asserting that Monsanto should have given a cancer warning. That is precisely what this Court concluded addressing the consumer expectations claim in *Hardeman*. *In re Roundup*, 2019 WL 3219360, at *2. All of these Plaintiff's design defect claims premised on the consumer expectations test are, therefore, preempted under FIFRA and foreclosed by *Durnell*. 146 S. Ct. at 2012.

**ii. Plaintiffs Lack Evidence Establishing A Feasible Alternative Design For Roundup Would Have Avoided Their Injuries.**

While the consumer expectation test is the default method of proving the existence of a design defect under Florida law, a Florida plaintiff may also do so through the risk utility test by proving that "the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design . . . and the omission of the alternative design renders the product not reasonably safe." *Aubin*, 177 So. 3d at 505 (quoting Restatement (Third) of Torts: Products Liability § 2 (1998); *see also Aubin*, 177 So.3d at 513 ("The causation prong, under both the Second Restatement and the Third Restatement, simply applies the general rules of causation, requiring the plaintiff to show that the defect caused the injury or harm alleged.") The critical requirements are that a plaintiff must prove the existence of a feasible alternative design that would not have caused their injuries. *See R.J. Reynolds Tobacco Company v. Nelson,* 353 So.3d 87, 93 (Fla. Dist. Ct. App. 2022) (quoting *Aubin*, 177 So. 3d at 513).

Consistent with their top-to-bottom failure-to-warn theory of these cases, Plaintiffs have not alleged any facts identifying a feasible alternative Roundup design, and, therefore, cannot advance one now, as "summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 992 (9th Cir. 2006) (quotation marks omitted); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (new "specific factual allegations" cannot "be presented for the first time in [] opposition to summary judgment.") Florida law is the same. *See, e.g., Sunbeam Television Corp. v. Mitzel*, 83 So. 3d 865, 875 (Fla. 3d

DCA 2012) ("a defendant cannot be found liable under a theory that was not specifically pled" (citation omitted)); *Cont. Baking Co. v. Vincent*, 634 So. 2d 242, 244 (Fla. 5th DCA 1994).

None of the Complaints by the Plaintiffs herein identify any alternative chemical design for Roundup. At best, some of them assert that the design defect is that Roundup and "specifically, its active ingredient glyphosate, could result in cancer," because Plaintiff was "without knowledge" of that alleged fact. Berenfeld Compl. ¶¶ 137(f), 146. That is, however, a preempted failure to warn claim premised on an alleged state-law duty. *See Durnell*, 146 S. Ct. at 2014; *see also*, *e.g.*, *Taylor AG Industries*, 54 F.3d at 560-61; *Papas*, 985 F.2d at 519.

As no Plaintiff herein has alleged facts identifying any alternative chemical design for Roundup that would have avoided their injuries, all of their claims premised on Roundup's design or formulation fail as a matter of law. *See*, *e.g.*, *Tsavaris v. Pfizer, Inc.*, No. 1:15-CV-21826-KMM, 2016 WL 375008 (S.D. Fla. Feb. 1, 2016) (design defect claim under risk utility theory fails as a matter of law where complaint fails to identify a safer, feasible alternative design); *Kaufman v. Pfizer Pharm., Inc.*, No. 02-22692, 2010 WL 9438673, at *5 (S.D. Fla. Nov. 23, 2010) (plaintiff "does not identify potential defects in each of the drugs that could have caused her cancer; she merely alleges that the drugs are 'defective.'").

Even if any Plaintiff herein had pled facts identifying an alternative chemical design for Roundup that would not have caused their injuries, they have no evidence to substantiate it. No Plaintiff herein has disclosed evidence, expert or otherwise, of any feasible alternative design for Roundup that would not have caused their injuries. *See R.J. Reynolds Tobacco Company*, 353 So.3d at 93; *Aubin*, 177 So. 3d at 513); *West v. Caterpillar Tractor Co., Inc*. 336 So. 2d 80, 87 (Fla. 1976) (plaintiff must prove "the existence of the proximate causal connection between such condition and the user's injuries or damages.") For those reasons alone, Monsanto is entitled to summary judgment on Plaintiffs' design defect claims.

Proving the existence of a feasible safer alternative design of a chemical herbicide alleged to have carcinogenic characteristics requires expert testimony. *See Crawford v. ITW Food Equip. Grp., LLC*, 2018 WL 3599212, at *10 (M.D. Fla. Apr. 19, 2018) ("Regardless of whether the Court applies the consumer expectations test or risk utility theory, a design defect claim 'must be proven by expert

testimony.'") (quoting *Cooper v. Old Williamsburg Candle Corp.* (M.D. Fla. 2009) 653 F.Supp.2d 1220, 1225); *see also*, *e.g.*, *Gouveia v. Phillips*, 823 So. 2d 215, 227 (Fla. 4th DCA 2002) (expert testimony required to establish complicated causation issues); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005) ("This type of proof requires expert testimony"); *Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245 (11th Cir. 2010).

Plaintiffs have disclosed no expert that will opine that there was a specific alternative design that was feasible and within the state-of-the art, when Plaintiffs used Roundup, that would not have impaired Roundup's usefulness and did not pose other risks of its own. Nor, critically, has any Plaintiff herein disclosed any expert that will opine that Roundup could have been redesigned in a specific manner that would not have caused their respective injuries.

The only case-specific experts disclosed by the Berenfeld, Glassman, Holmes, Levy, and Proctor Plaintiffs are Frank LoVecchio, DO, MPH, FACEP and Solomon I. Hamburg, MD, Ph.D. *See* Declaration of Linda Hsu ("Hsu Decl.") at Exs. 1, 4, 6, 8, 9. On March 28, 2025, this Court excluded Hamburg's opinions in Berenfeld, Proctor and Holmes. Pretrial Order No. 322, Dkt. 20398 at pgs. 3-6. In any event, neither LoVecchio, nor Hamburg, offer any opinion that there was a feasible alternative Roundup formulation that would not have caused any of these Plaintiffs' respective injuries. *See* Hsu Decl. at Exs. 12-13, 17-18, 23-24, 26-29.

The only case-specific expert disclosed by the Brookner, Jackson and Villalobos Plaintiffs is Robert M. Conry, M.D. *See* Hsu Decl., at Exs. 2, 7, 11. Dr. Conry, however, offers no opinion on the design of Roundup at all, let alone that there was a safer, feasible and reasonable alternative Roundup formulation that would not have caused those Plaintiffs' respective injuries. *See id.* at Exs. 14, 25, 33.

The only case-specific experts disclosed by the Gomez Plaintiffs are Robert M. Conry, M.D., William R. Sawyer, Ph.D. and Charles Benbrook, PHD. *See* Hsu Decl., at Ex. 5. None of them, however, offer any opinion that there was a feasible alternative Roundup formulation that would not have caused those Plaintiffs' respective injuries. *See id.* at Exs. 19-22. Dr. Benbrook's report does identify an "alternate surfactant" "reformulation" that he claims Monsanto could have implemented. *Id.* at Ex. 19 at pgs. 146-147. However, neither he, nor any other of the Gomez Plaintiffs' experts,

offer an opinion that connects Dr. Benbrook's proposed alternate-formulation to Mr. Gomez specifically or opines that using that alternate formulation would not have caused Mr. Gomez's particular injuries. *See id.*; *see also*, *generally*, Hsu Decl., at Exs. 19-22.

The only case-specific experts disclosed by Plaintiff Schrag are Robert M. Conry, M.D., William R. Sawyer, Ph.D. and John A. Swiger, Ph.D. *See* Hsu Decl., at Ex. 10. None of them, however, offer any opinion that there was a feasible alternative Roundup formulation that would not have caused Plaintiff Schrag's injuries. *See id*. at Exs. 30-32.

The only case-specific causation expert disclosed by the Gebo/Dietrich Plaintiffs is Dr. Kevin Knopf, MD, MPH. *See* Hsu Decl., at Ex. 3. He does not offer any opinion that there was a feasible alternative Roundup formulation that would not have caused those Plaintiffs' respective injuries. *See id*. at Exs. 15.

As the Berenfeld, Brookner, Gebo/Dietrich, Glassman, Gomez, Holmes, Jackson, Levy, Proctor, Schrag, and Villalobos Plaintiffs have no expert that will testify that there was a feasible alternative chemical design for Roundup, their design defect claims fail on the evidence. *See, e.g. R.J. Reynolds Tobacco Company*, 353 So.3d at 93; *Aubin*, 177 So. 3d at 513; *Celotex Corp.*, 477 U.S. at 322. And as *no Plaintiff* herein has an expert that will opine that using any feasible alternative chemical design for Roundup would have avoided their respective injuries, *all of Plaintiffs'* design defect claims fail for lack of sufficient evidence. *See id*. Summary judgment should be granted.

**iii. *Durnell* Confirms That FIFRA Impliedly Preempts Any Claim That Would Require Monsanto To Reformulate Roundup.**

Evidentiary failures aside, any theory that would have required Monsanto to use an alternative design is also preempted as a matter of impossibility. *Durnell* establishes that a "consequence[]" of Roundup's "[r]egistration" is that "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition described at registration." *Durnell*, 146 S. Ct. at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(C)). And the same federal regulation that *Durnell* concluded to mean "federal law requires Monsanto to sell Roundup with the label that EPA approved" also applies to Roundup's composition. *Id.* at 2011; *see* 40 C.F.R. § 152.44 ("[A]ny modification in the composition, labeling, or packaging of a registered product must be submitted with an application for amended registration."). Under

*Durnell*'s reasoning, then, just as federal law "require[s] a manufacturer to use the EPA-approved label and prohibit[s] the manufacturer from unilaterally changing the label," *Durnell*, 146 S. Ct. at 2014, federal law requires Monsanto to use the EPA approved formulation and prohibits Monsanto from unilaterally changing the formulation.

Under bedrock implied preemption principles, a state-law duty to do what federal law prohibits Monsanto from doing unilaterally—change Roundup's formulation without EPA approval—is preempted as a matter of impossibility. *See Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 486 (2013) ("When federal law forbids an action that state law requires, the state law is without effect.") (citation omitted). As the Supreme Court has explained, "[t]he question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." *PLIVA*, 564 U.S. at 620 (emphasis added). Before *Durnell*, the Ninth Circuit followed that basic approach to conflict preemption under FIFRA in *Hardeman*, explaining that conflict preemption asks whether a regulated party "'can act sufficiently independently under federal law'" to comply with putative state-law duties. *Hardeman v. Monsanto Co.*, 997 F.3d 941, 959 (9th Cir. 2021) (quoting *PLIVA*, 564 U.S. at 623). It merely misapplied that framework based on an understanding of FIFRA's regulatory regime that the Supreme Court has since corrected. *Compare id.* at 960 (concluding that because "EPA has allowed pesticide manufacturers to add cancer warnings to labels through the notification process without prior approval, it is not impossible for Monsanto to add a cancer warning to Roundup's label."), *with Durnell*, 146 S. Ct. at 2014 ("EPA regulations promulgated under FIFRA *require* a manufacturer to use the EPA-approved label and prohibit the manufacturer from unilaterally changing the label without EPA's approval." (emphasis original)).[8]

In the pharmaceutical context, the Supreme Court has held that "redesign" is "not possible" as a matter of federal law where the manufacturer "cannot legally make [the drug] in another

[8] In an earlier opinion—predating both *Durnell* and *Hardeman*—this Court suggested that implied preemption was unavailable under FIFRA. *In re Roundup Prods. Liab. Litig.*, 364 F. Supp. 3d 1085, 1088 (N.D. Cal. 2019). Neither the Ninth Circuit in *Hardeman*, nor the majority, dissent, or Solicitor General in *Durnell* endorsed that view. As the Supreme Court has explained, the existence of "express pre-emption provision[] does not bar the ordinary working of conflict pre-emption principles." *Geier*, 529 U.S. at 869. Consistent with that principle, FIFRA makes clear that States do not have the authority to require manufacturers to do what is "prohibited by" FIFRA. 7 U.S.C. § 136v(a).

composition" without receiving approval for such a new drug from the FDA. *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 484 (2013); *see also id*. at 490 ("hold[ing]" that "state law design-defect claims" are preempted when they require a manufacturer to "alter[] [a drug's] composition," but federal law "prohibit[s] manufacturers from unilaterally altering drug composition"); *see also, e.g., Yates v. Orther-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 298 (6th Cir. 2015) (concluding design-defect claim against brand-name drug manufacturers "clearly preempted" under *Bartlett*); *Trejo v. Johnson & Johnson*, 13 Cal.App.5th 110, 147 (2017) (similar). *Durnell* establishes that this is exactly the situation facing Monsanto. Since federal law prohibited Monsanto from marketing a version of Roundup with a different composition without prior EPA approval, Monsanto could not "independently do" what Plaintiffs allege state law requires of it. *PLIVA*, 564 U.S. at 620. Any claim attacking Roundup's design or formulation, is therefore barred by impossibility preemption.

**b. Plaintiffs' Other Causes of Action Fail For The Same Reasons.**

Where a plaintiff's underlying claims for failure to warn or design defect fail as a matter of law or for lack of evidence, and where, as here, a plaintiff has also repurposed, or otherwise re-packaged, those claims under other labels—such as claims for ordinary negligence, negligence/wrongful death or negligence/design defect, fraud, intentional or negligent misrepresentation, concealment or non-disclosure, or breach of express or implied warranty, loss of consortium, or violation of the FDUTPA—those repurposed or differently labeled claims also fail for the same reasons as the underlying claims. For example, in *Cates v. Zeltiq Aesthetics, Inc.*, 535 F. Supp. 3d 1222, 1231 (M.D. Fla. 2021), the plaintiff's underlying failure to warn claim failed, and the court held that no matter how the plaintiff "dressed them up," the counts for general negligence, negligent misrepresentation, and fraud were simply repurposed failure to warn claims. As the underlying failure to warn claim failed, any claims predicated on, derived from, or that restated, those underlying failure to warn allegations, necessarily failed as well. The Eleventh Circuit affirmed. *Cates v. Zeltiq Aesthetics, Inc.*, 73 F.4th 1342 (11th Cir. 2023). These principles are uncontroversial, and the Florida cases applying them are legion.[9]

[9] *See, e.g., Nunez v. Coloplast Corp.*, 461 F. Supp. 3d 1260, 1267 (S.D. Fla. 2020) (holding all fraud and warranty claims were mere repackaging of the failure-to-warn claims, and therefore fell with

*(Footnote continued)*

As explained in Parts IV(A)(1)-(2), *supra*, every one of these Plaintiffs' claims are either expressly, or boil down to, a failure to warn claim, and are therefore expressly preempted under FIFRA and *Durnell*.

And, as explained in Parts IV(A)(3)(a)(i)-(iii), *supra*, Plaintiffs' other causes of action are likewise preempted and, even if not preempted, fail for lack of sufficient evidence.

The Court should, therefore, grant summary judgment in full to Monsanto as to each Plaintiff herein.

## CONCLUSION

Summary judgment should be granted in full to Monsanto in all of these Florida law cases.

Dated: September 1, 2026

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Linda C. Hsu*
Linda C. Hsu
*Counsel for Defendant Monsanto Company*

---

them); *Dye v. Covidien LP*, 470 F. Supp. 3d 1329, 1342 (S.D. Fla. 2020) (negligence claim for alleged "inadequate testing and studying" was subsumed within, and failed with, underlying failure to warn claim); *Small v. Amgen, Inc.*, 2 F. Supp. 3d 1292 (M.D. Fla. 2014) (same); *Beale v. Biomet, Inc*,, 492 F. Supp. 2d 1360, 1374 (S.D. Fla. 2007) (negligence/gross negligence, FDUTPA, and negligent misrepresentation); *Pierre v. Intuitive Surgical, Inc.*, 476 F. Supp. 3d 1260, 1280 (S.D. Fla. 2020) ("Because all other causes of action fail, Intuitive claims Jacques' loss of consortium claim must also fail. The Court agrees.").