**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**SHOOK, HARDY & BACON LLP**
Anthony R. Martinez (*pro hac vice*)
(amartinez@shb.com)
2555 Grand Blvd
Kansas City, MO 64108
Tel: (816) 474-6550 ext. 2001| Fax: 816.421.5547

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Gordon v. Monsanto Co.*<br>3:19-cv-06423-VC | **DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**<br><br>**<u>Hearing:</u>**<br>Date: November 16, 2026<br>Time: 1:00 PM<br>Place: San Francisco Courthouse, Courtroom 3 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 16, 2026, at 1:00pm, in Courtroom 3 of the U.S. District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Supplemental Motion for Summary Judgment. Monsanto seeks an order granting summary judgment in its favor on all claims brought by Plaintiff Garfield Gordon, which are preempted by federal law and unsupported by substantial evidence.

Dated: September 2, 2026

Respectfully submitted,

**SHOOK, HARDY & BACON, LLP**

By: *_/s/ Anthony R. Martinez_*
Anthony R. Martinez
*Counsel for Defendant Monsanto Company*

**TABLE OF CONTENTS**

Background ........ 3

A. Congress Charged EPA With Comprehensive Regulatory Authority Over Pesticides........ 3

B. EPA Has Long Concluded Roundup Does Not Cause Cancer And Approved It For Sale........ 4

C. Plaintiff Sues Monsanto, Alleging Roundup Caused His Cancer........ 4

Legal Standard ........ 5

Argument ........ 5

I. Plaintiff Has No Claims That Survive Durnell. ........ 5

A. *Durnell* Establishes That FIFRA Expressly Preempts Any Claim Predicated On A Failure-to-Warn. ........ 6

B. Plaintiff Cannot Avoid *Durnell* By Pivoting To A Design Defect Theory. ........ 8

II. Plaintiff Cannot Substantiate Any Other Claim Under Arizona Law........ 14

Conclusion ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..... 5

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) ..... 6, 7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..... 5

*Cloud v. Pfizer Inc.*,
198 F. Supp. 2d 1118 (D. Ariz. 2001) ..... 12

*Dart v. Wiebe Mfg., Inc.*
709 P.2d 876, 879 (Ariz. 1985) ..... 9

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000) ..... 6

*Golonka v. Gen. Motors Corp.*,
65 P.3d 956 (Ariz. App. 2003) ..... 14

*Gomulka v. Yavapai Mach. & Auto Parts, Inc.*,
745 P.2d 986 (Ariz. Ct. App. 1987) ..... 10

*Hughes v. Oklahoma*,
441 U.S. 322 (1979) ..... 7

*Kurns v. R.R. Friction Prods. Corp.*,
565 U.S. 625 (2012) ..... 5, 6

*Matson v. Naifeh*,
595 P.2d 38 (Ariz. 1979) ..... 12

*Maywald v. Toyota Motor Corp.*,
591 P.3d 886 (Ariz. 2026) ..... *passim*

*Maywald v. Toyota Motor Corp.*,
No. 1 CA-CV 23-0723, 2024 WL 5165445 (Ariz. App. Dec. 19, 2024), *rev'd on other grounds*, 591 P.3d 886 (2026) ..... 10

*Monsanto Co. v. Durnell*,
146 S. Ct. 2001 (2026) ..... *passim*

*Mut. Pharm. Co. v. Bartlett*,
570 U.S. 472 (2013) ..... *passim*

*Papike v. Tambrands Inc.*,
107 F.3d 737 (9th Cir. 1997) ....................10

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011).................... 2, 13, 14

*Robertson v. Sixpence Inns of Am., Inc.*,
789 P.2d 1040 (Ariz. 1990)....................12

*In re Roundup Prods. Liab. Litig.*,
No. 16-md-2741, 2019 WL 3219360 (N.D. Cal. July 12, 2019) ....................8, 10

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984)....................3

*Trejo v. Johnson & Johnson*,
13 Cal.App.5th 110 (2017) ....................14

*Yates v. Orther-McNeil-Janssen Pharms., Inc.*,
808 F.3d 281 (6th Cir. 2015) ....................14

**Statutes & Regulations**

7 U.S.C.

§ 136a(a) ....................3

§ 136a(a)(1)(D) ....................3

§ 136j(a)(1)(B) ....................3

§ 136j(a)(1)(C) ....................2, 4, 13

§ 136*l* ....................4

§ 136v(b)....................3, 6, 7

40 C.F.R.

§ 152.3....................3

§ 152.44....................2, 3, 4, 13

§ 152.112(e) ....................3

**Other Authorities**

Fed. R. Civ. P. 56....................5

Restatement (Second) of Torts § 402A cmt. j (1962)....................10

## INTRODUCTION

Plaintiff Garfield Gordon pled three Arizona law claims, all alleging in substance that glyphosate—the active ingredient in Roundup—caused his cancer and Monsanto is liable for failing to warn of that risk. Those claims cannot survive the United States Supreme Court's recent decision in *Monsanto Co. v. Durnell*, 146 S. Ct. 2001 (2026). Any failure-to-warn theory is now indisputably preempted. And neither Arizona law nor the evidentiary record Plaintiff has assembled allows any workaround. The Court should grant summary judgment in full to Monsanto.

In *Durnell*, the Supreme Court held that any "failure-to-warn claim" alleging Roundup causes cancer "is expressly preempted" by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). *Id.* at 2012. The "heart of" such a claim, the Court determined, "is that Monsanto should have included a cancer warning on its Roundup labels." *Id.* at 2010. But EPA has long concluded "that glyphosate is not likely to cause cancer in humans" and "has not required glyphosate-based pesticides like Roundup to include a cancer warning on their labels." *Id.* at 2009. To the contrary, "federal law requires Monsanto to sell Roundup with the label that EPA approved," which is "the label without a cancer warning." *Id.* at 2011. Thus, federal law "expressly preempts *any state tort claim* that would require a pesticide manufacturer to use a label" that differs from "the EPA-approved label." *Id.* at 2014 (emphasis added).

Plaintiff Gordon pled three tort claims, all restating in different terms that Monsanto should have warned of Roundup's purported cancer risk. Plaintiff's overt failure-to-warn claim is plainly foreclosed by *Durnell*—as he concedes. Plaintiff's negligence claim says Monsanto breached a duty "to provide accurate, true, and correct information concerning the risks of using Roundup" to Roundup users. Compl. ¶ 73. And Plaintiff's design defect claim alleges that Roundup was, as "labeled . . . dangerous to an extent beyond that which an ordinary consumer would contemplate." *Id.* ¶ 47. These are all failure-to-warn claims and are preempted.

Plaintiff cannot salvage this case by arguing his design defect theory would impose liability for Roundup's formulation, rather than a lack of warning. To prove a design defect independent of any warning, Plaintiff would need evidence addressing a host of factors he has ignored in this case—including how Monsanto could have reformulated Roundup to prevent his cancer without impairing

the utility of Roundup. *Maywald v. Toyota Motor Corp.*, 591 P.3d 886, 892 n.1 (Ariz. 2026). And Arizona law requires Plaintiff to make that complex, technical showing through expert evidence. Plaintiff, whose evidence is focused entirely on a failure-to-warn theory, has not pointed to any evidence, expert or otherwise, capable of meeting that burden under Arizona law.

Even setting aside Plaintiff's lack of proof that Monsanto could or should have reformulated Roundup to adopt an alternative design, that claim still faces a preemption problem. Although the Supreme Court's principal focus in *Durnell* was express preemption and the labeling requirements that flow from registration under FIFRA, the Court was careful to point out that registration carries "other consequences," including that "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition described at registration." 146 S. Ct. at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(C)). The same regulation on which *Durnell* based its conclusion that "federal law requires Monsanto to sell Roundup with the label that EPA approved," 146 S. Ct. at 2011, applies equally to a pesticide's composition, *see* 40 C.F.R. § 152.44(a). That means it would be unlawful for Monsanto to sell Roundup with a changed formulation without first obtaining EPA's approval. As the Supreme Court's impossibility preemption cases make clear, when a regulated party cannot comply with a state-law duty absent prior agency approval, the state-law duty is preempted as a matter of impossibility. *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 483–84 (2013) ("redesign" of drug "was not possible" where, if manufacturer were "to change the composition of its [drug], the altered chemical would be a new drug that would require its own NDA"); *see also PLIVA, Inc. v. Mensing*, 564 U.S. 604, 620 (2011) ("The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it."). Because Monsanto could not unilaterally comply with a state-law duty to redesign Roundup, it is preempted.

Plaintiff cannot substantiate any claim that would not be preempted under *Durnell*. Summary judgment should therefore be granted in full to Monsanto.

## BACKGROUND

### A. Congress Charged EPA With Comprehensive Regulatory Authority Over Pesticides.

FIFRA is "a comprehensive regulatory statute" through which Congress charged EPA with regulating all aspects of pesticides. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 991 (1984); *see* 7 U.S.C. §§ 136 *et seq*. FIFRA contains an express preemption provision, titled "Uniformity" by Congress, that preempts "any" state-law "requirements for labeling or packaging in addition to or different from those required under" FIFRA. 7 U.S.C. § 136v(b). That clause protects "EPA's comprehensive and exclusive authority in registering pesticides and approving labels." *Durnell,* 146 S. Ct. at 2008.

Before any pesticide may be sold in the United States, it must first be approved by EPA. 7 U.S.C. § 136a(a). By law, EPA cannot register a pesticide unless it "conclude[s] that the pesticide will not generally cause unreasonable adverse effects on human health." *Durnell*, 146 S. Ct. at 2006 (citations omitted). In making this determination, EPA considers "the complete formula of the pesticide," including both active and inert ingredients. 7 U.S.C. § 136a(1)(D); *see also* 40 C.F.R. §§ 152.3, 152.112(e). EPA must also determine that the pesticide's "labeling complies with FIFRA's many specific requirements," *Durnell*, 146 S. Ct. at 2014 (citations omitted), including that the "label includes all warnings necessary and adequate to protect human health," *id.* at 2007.

Any precautionary or human hazard labeling—such as a cancer warning—must be reviewed and approved by EPA. *Id.* at 2006. Once EPA approves a pesticide's label, any human health warnings or cautionary statements on the label can only be changed with the agency's approval. *Id.* at 2010 & n.5; *see also* 40 C.F.R. §§ 152.44(a); 156.70(c). Accordingly, "[a]fter EPA approves a pesticide's label at registration, manufacturers are legally required to use that label." *Durnell*, 146 S. Ct. at 2010.

The Supreme Court has explained that EPA's approval of a pesticide has other consequences as well. One "consequence[]" of Roundup's "[r]egistration" is that manufacturers and sellers are prohibited from making "any claims" regarding Roundup that "substantially differ from" those approved by EPA during registration. *Id.* at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(B)). Further,

once EPA registers a pesticide, "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition described at registration." *Id.* (quoting 7 U.S.C. § 136j(a)(1)(C)); *see also* 40 C.F.R. § 152.44(a) ("[A]ny modification in the composition . . . of a registered product must be submitted with an application for amended registration."). A person who violates any one of these obligations is subject to civil and criminal penalties. 7 U.S.C. § 136*l*.

### B. EPA Has Long Concluded Roundup Does Not Cause Cancer And Approved It For Sale.

EPA first approved glyphosate-based herbicides ("GBHs") for sale in 1974. *Durnell*, 146 S. Ct. at 2008. Since then, Monsanto has manufactured and sold a variety of GBHs, including many under the brand name Roundup. For more than three decades, "EPA has repeatedly re-evaluated glyphosate and has repeatedly concluded that glyphosate is not likely to cause cancer." *Id*. In 1991, for example, "EPA classified glyphosate as unlikely to cause cancer in humans," and in "1993, EPA reiterated that conclusion and reregistered glyphosate products without a cancer warning." *Id.* "In 2017 and 2019, after the International Agency for Research on Cancer classified glyphosate as a probable carcinogen, EPA re-examined the issue but still adhered to its longstanding position on glyphosate"—namely, that it does not cause cancer. *Id*. at 2008–09. And EPA's view is widely shared by expert, scientific agencies: "[M]any other regulatory bodies around the world . . . have likewise concluded that glyphosate is not carcinogenic, including regulators in Canada, Australia, Japan, and the European Union." *Id.* at 2009.

In line with its scientific determination that glyphosate does not cause cancer, EPA has repeatedly approved Monsanto's Roundup labels, which do not contain a cancer warning. *Id*. And EPA continues to register glyphosate-based pesticide formulations and approve glyphosate product labels—all without cancer warnings. *See Chemical Name: Glyphosate*, EPA, https://perma.cc/N8KY-7KJ5.

### C. Plaintiff Sues Monsanto, Alleging Roundup Caused His Cancer.

Plaintiff Garfield Gordon testified that he used Roundup at a residence in Arizona from 2005 to 2016. Ex. 1, Gordon Dep. Tr. 39:6–40:17; 43:13–16; 108:25–109:8. Plaintiff also testified that he believed Roundup was applied to baseball fields where he played during high school and middle

school. Ex. 1, Gordon Dep. Tr. 87:19–90:2; 95:3–19. In 2014, Plaintiff was diagnosed with follicular lymphoma. Ex. 1, Gordon Dep. Tr. 58:7–13. Fortunately, Plaintiff's treatments have been effective and during his deposition he testified that is now "cancer-free." Ex. 1, Gordon Dep. Tr. 58:14–15.

Plaintiff brings three Arizona law claims against Monsanto: Design Defect (Count I), Compl. ¶¶ 43–55; Failure to Warn (Count II), *id.* ¶¶ 56–69; Negligence (Count III), *id.* ¶¶ 70–77.[1]

In response to this Court's June 30, 2026 Order, Monsanto conferred with counsel for Plaintiff. Plaintiff contends that his design defect (Count I) and negligence (Count III) claims are not preempted by *Durnell*.[2]

## LEGAL STANDARD

A court "shall grant" summary judgment when the movant establishes that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ARGUMENT

The Supreme Court's decision in *Durnell* establishes that federal law—the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 *et seq.*—preempts all of Plaintiff's claims against Monsanto. And any workaround Plaintiff might seek to employ neither escapes preemption nor is triable on the evidentiary record Plaintiff has assembled.

### I. Plaintiff Has No Claims That Survive Durnell.

Preemption of state law "occurs through the direct operation of the Supremacy Clause" of the United States Constitution, *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630 (2012)

---

[1] The parties previously stipulated that the law of Arizona governs this case. MDL Doc. 19762.

[2] Plaintiff also contends that Monsanto is "barred by the doctrine of judicial estoppel from raising preemption as a defense to non-label based failure to warn claims."

(quotation marks omitted), so "state laws that conflict with federal law are without effect," *Bartlett*, 570 U.S. at 479–80 (quotation marks omitted). Congress may expressly preempt state law by passing a preemption provision in a statute, *see, e.g., Kurns*, 565 U.S. at 630, and federal law may additionally impliedly preempt state law where there is a conflict between the two, *see, e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000). The presence of an "express pre-emption provision[] does not bar the ordinary working of conflict pre-emption principles." *Id.*

### A. *Durnell* Establishes That FIFRA Expressly Preempts Any Claim Predicated On A Failure-to-Warn.

To achieve national "uniformity" in pesticide labeling, Congress expressly preempted state laws that "impose . . . any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." 7 U.S.C. § 136v(b). That express preemption provision protects "EPA's comprehensive and exclusive authority in registering pesticides and approving labels." *Durnell*, 146 S. Ct. at 2008.

In *Durnell*, the Supreme Court held that a "failure-to-warn claim" alleging Roundup causes cancer "is expressly preempted." *Id.* at 2012. The "heart of" such a claim, the Court concluded, "is that Monsanto should have included a cancer warning on its Roundup labels." *Id.* at 2010. But "in accordance with EPA's view that glyphosate is not likely to cause cancer in humans"—a conclusion EPA has held across "more than three decades"—"EPA has not required glyphosate-based pesticides like Roundup to include a cancer warning on their labels." *Id.* at 2009. A failure-to-warn claim therefore imposes a state-law requirement "in addition to or different from those required under [FIFRA]," and triggers express preemption. 7 U.S.C. § 136v(b).

*Durnell* also confirms that a claim's substance, not what a plaintiff happens to call it, controls. FIFRA's Uniformity provision preempts "*any state tort claim* that would require a pesticide manufacturer to use a label" other than "the EPA-approved label." *Durnell*, 146 S. Ct. at 2014 (emphasis added). That conclusion builds on prior precedent, which had recognized that a claim is subject to express preemption under FIFRA if it "set[s] a standard for a product's labeling that the . . . label is alleged to have violated" such as "by containing false statements and inadequate warnings." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 446 (2005). Indeed, *Bates* held that

disguised "failure-to-warn claims," *id.*, which had been pled as "claims for negligent testing and defective design and manufacture," *id.* at 457 (Thomas, J., concurring in part), qualified as "requirements for labeling," within the meaning of FIFRA's express preemption provision. 7 U.S.C. § 136v(b). And the Supreme Court had previously explained that when conducting a federal preemption analysis, a court "is not bound by the name, description or characterization given it by the legislature or the courts of the State, but will determine for itself the practical impact of the law." *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979) (citation modified). Together, these precedents leave no doubt that *any* claim that would purport to require Monsanto to warn that Roundup causes cancer is preempted.

Plaintiff's two remaining claims—although couched in different tort duties—all boil down to the preempted theory that Monsanto is liable for failing to include a cancer warning on Roundup's label. Plaintiff's allegations, conclusory as they are, confirm as much. Plaintiff's **Design Defect** claim (Count I) alleges that Roundup was, as "labeled . . . dangerous to an extent beyond that which an ordinary consumer would contemplate" and Plaintiff lacked "knowledge of [Roundup's] dangerous characteristics." Compl. ¶¶ 47, 51. Plaintiff's **Negligence** claim (Count III) alleges that Monsanto had a duty to "to provide accurate, true, and correct information concerning the risks of using Roundup," "should have known that Gordon was unaware of the risks and the magnitude of the risks associated with the use of Roundup," and breached its duty by failing to "adequately warm of these risks." *Id.* ¶¶ 73, 75, 76.

Plaintiff's problems extend further than pleading—he has an evidence problem. Similar to other plaintiffs in this MDL, Plaintiff has not developed evidence capable of supporting any theory other than failure to warn. And Plaintiff's failure-to-warn theories are now indisputably preempted.

This Court's decision in *Hardeman* is instructive. Although *Hardeman* involved putative California-law claims for strict-liability failure-to-warn, negligence, and design defect (same as Counts I–III of Plaintiff's Complaint), Monsanto's alleged negligence was "not using reasonable care to warn about Roundup's NHL risk." Verdict Form, *Hardeman v. Monsanto Co.*, No. 16-cv-00525-VC (Mar. 27, 2019) (ECF 288). And after analyzing the issue at length, this Court also explained that the only "design defect" the evidence could sustain was that Roundup had been "sold

without a warning." *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741, 2019 WL 3219360, at *3 (N.D. Cal. July 12, 2019). When "the defect [is] the absence of a warning," this Court correctly observed, "the design defect claim [] merge[s] into the failure-to-warn claim." *Id.* at *2. So, notwithstanding the various ways that Mr. Hardeman styled the tort duties he pled, his whole case boiled down to three different ways of claiming that Monsanto should have warned him of Roundup's purported cancer risk. It is now established that such a claim is preempted.

Plaintiff has correctly abandoned his strict-liability failure-to-warn claim. But as to Plaintiff's design defect and negligence claims, the evidence goes no further than a failure-to-warn theory, which is preempted under *Durnell*. *Durnell* establishes that all failure-to-warn claims are preempted, holding that "[f]ailure-to-warn claims . . . are premised on common-law rules that qualify as labeling requirements." 146 S. Ct. at 2010 (citation omitted). The Court did not say "some failure-to-warn claims." It did not suggest—despite the *Durnell* plaintiff's considerable efforts to argue otherwise—that there could be a residual, non-preempted component of a failure-to-warn claim. *See* Resp't.'s Br. in Opp'n, *Monsanto Co. v. Durnell*, No. 24-1068, 2025 WL 1665996 (U.S. June 8, 2025). It addressed failure-to-warn claims as a whole and held they are preempted. That is enough to end this case.

**B. Plaintiff Cannot Avoid *Durnell* By Pivoting To A Design Defect Theory.**

Plaintiff cannot save this case by arguing that his claims would impose liability for Roundup's formulation or design, rather than a lack of warning. Under Arizona law, a plaintiff asserting a design defect claim "must prove both that the product was defective and that the defect rendered it unreasonably dangerous." *Maywald v. Toyota Motor Corp*., 591 P.3d 886, 890 (Ariz. 2026) (*Maywald II*). As Arizona's highest court has recently explained, "the unreasonable danger element prevents strict liability from transforming into absolute liability," while "the threshold requirement of defectiveness serves to curtail liability when a product that is fit for its purpose causes an injury simply because its normal use poses inherent risks." *Id.* at 892. A "defect . . . is a condition or characteristic of the product not reasonably contemplated by the ordinary consumer that renders the product unsafe for its intended use." *Id.* at 893. To show that a defect renders a product

unreasonably dangerous, however, a Plaintiff must additionally satisfy either a further "consumer expectation test" or "risk/benefit analysis." *Id.*

Plaintiff cannot satisfy either test. Arizona law does not apply the consumer expectations test to claims like Plaintiff's, where no manufacturing defect is alleged. And in any event, as in *Hardeman*, Plaintiff's consumer expectations theory is simply restating a preempted failure-to-warn claim. If Plaintiff's theory is that, under the risk-utility test, state law required Monsanto to alter some challenged aspect of Roundup's design, Plaintiff has not provided evidence capable of satisfying that test. If the challenged aspect of Roundup's design is the lack of cancer warning, Plaintiff's theory is expressly preempted by FIFRA's uniformity provision. And if it is Roundup's formulation, that theory is also preempted as a matter of impossibility, for reasons that are confirmed by *Durnell*.

(a) A Consumer Expectations Theory Is Both Inapplicable And Preempted.

"Under the 'consumer expectation test,'" a plaintiff must prove the "product 'failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner.'" *Id.* at 893 (quoting *Dart v. Wiebe Mfg., Inc.*, 709 P.2d 876, 879 (Ariz. 1985)). Arizona courts have viewed that standard as apt "in the manufacturing defect setting," where a product is alleged to have deviated from other units in the same product line, and thus from a consumer's reasonable expectations about how the product should work. *Dart*, 709 P.2d at 878. In contrast, however, Arizona's highest court has explained that in most cases "the consumer expectation test fails to provide an adequate legal standard in design defect cases." *Id.* That test "provides no resolution for those cases in which the consumer would not know what to expect, because he would have no idea how safe the product could be made." *Id.* at 879. Equally, that court has cautioned, applying a consumer expectations standard in design defect cases risks imposition of "absolute liability," which Arizona does not recognize. *Id.* For that reason, "when the consumer expectation test cannot feasibly be applied in a design defect case, courts should instead employ the risk/benefit analysis to determine whether the defect renders the product unreasonably dangerous." *Maywald II*, 591 P.3d at 893.

Under Arizona law, the consumer expectations test is inapplicable to a design defect case premised not on a manufacturing defect, but on the alleged long-term carcinogenicity of a formulated herbicide, as designed. When a consumer "has no knowledge of the properties of" a product that are allegedly dangerous or "has no idea about how a product could be designed to minimize the risk of" that danger, the consumer expectations test does not apply. *Gomulka v. Yavapai Mach. & Auto Parts, Inc.*, 745 P.2d 986, 990 (Ariz. Ct. App. 1987) (where ordinary consumer would lack knowledge of the dangers of gasoline fumes, consumer expectations test would not apply to steam cleaner that sparked such fumes causing explosion). An ordinary consumer does not have reasonable expectations about how herbicides "could be designed to minimize [] risk." *Id.*; *see also, e.g.*, *Maywald v. Toyota Motor Corp.*, No. 1 CA-CV 23-0723, 2024 WL 5165445, at *2 (Ariz. App. Dec. 19, 2024), *rev'd on other grounds*, 591 P.3d 886 (2026) (consumer expectations test did not apply to claim that vehicle was unreasonably dangerous due to non-inclusion of lane departure warning technology).

If, however, the consumer expectations test did apply under Arizona law, it would amount to a preempted failure-to-warn claim in disguise. To the extent ordinary consumers hold reasonable safety expectations about federally regulated, scientific products like synthetic chemical herbicides, those expectations come from *reading the approved label*. *See Papike v. Tambrands Inc.*, 107 F.3d 737, 743 (9th Cir. 1997) (rejecting proposition "that a consumer is entitled to expect a product to perform more safely than its government-mandated warnings indicate" and concluding when medical device's "warnings met the federal requirements" a "design defect claim therefore fails the 'consumer expectation' test"). And a manufacturer satisfies their duty in a consumer expectations case by issuing a label warning. That is why, as a matter of law, a "product bearing [] a warning, which is safe for use if it is followed, is not in defective condition" under the consumer expectations test. Restatement (Second) of Torts § 402A cmt. j (1962). And a claim that Monsanto is liable because a reasonable consumer would not expect Roundup to have a cancer risk is just an oblique way of asserting that Monsanto should have given a cancer warning. That is precisely what this Court concluded addressing the consumer expectations claim in *Hardeman*. *In re Roundup*, 2019 WL 3219360, at *2. Such a claim is foreclosed by *Durnell*. 146 S. Ct. at 2012.

(b) Plaintiff Lacks Evidence Sufficient To Prevail Under A Risk Utility Theory.

Evidentiary Under Arizona law, a risk-utility analysis is the appropriate test for determining whether Roundup was unreasonably dangerous. To prevail under that theory, a plaintiff must show that "when considering certain relevant factors," "the benefits of the challenged design [fail to] outweigh the risk of danger inherent in the design." *Maywald II*, 591 P.3d at 895 (citation omitted and alterations adopted). Arizona's highest court has set forth seven, non-exhaustive factors governing the risk-utility analysis:

(1) The usefulness and desirability of the product,

(2) the availability of other and safer products to meet the same need,

(3) the likelihood of injury and its probable seriousness,

(4) the obviousness of the danger,

(5) common knowledge and normal public expectation of the danger (particularly for established products),

(6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and

(7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.

*Id.* at 893 n.1. In addition, Arizona law provides that the plaintiff bears the burden of proving "the defect proximately caused the plaintiff's injuries." *Id*. at 892.

Plaintiff has not adduced evidence that some specific aspect of Roundup's design fails under that test. As the Supreme Court has explained analyzing a similar risk-utility framework "[i]n the drug context, either increasing the 'usefulness' of a product or reducing its 'risk of danger' would require redesigning the drug." *Mut. Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 483 (2013). And the remaining factors the Arizona Supreme Court has recognized as relevant to a risk utility inquiry bear on the warnings that accompany Roundup. Put another way, for Monsanto to satisfy its duties if held liable under a multi-factor risk-utility analysis, it would either be required to redesign Roundup, or to issue a cancer warning. *See id.* at 484 ("Given the impossibility of redesigning sulindac, the only way for Mutual to ameliorate the drug's risk-utility' profile—and thus to escape liability—was to strengthen the presence and efficacy of sulindac's warning in such a way that the warning avoided

an unreasonable risk of harm from hidden dangers or from foreseeable uses." (citations omitted)). A warning-based theory is preempted. And Plaintiff has presented no evidence—expert or otherwise—that could substantiate a claim based on a duty to redesign Roundup's formulation.

Plaintiff's complaint does not identify any manner in which Monsanto should allegedly have reformulated Roundup. *See* Compl. ¶¶ 43–55. It does not disclose with specificity the "defect" challenged. Plaintiff has disclosed no expert who will offer an opinion that Roundup could have been redesigned in a specific manner to avoid his cancer. Nor has he disclosed any expert who will testify regarding how, "without seriously impairing the usefulness of the product or making it unduly expensive" Monsanto allegedly could have "eliminate[d] the danger" Plaintiff alleges—the carcinogenicity of glyphosate-containing herbicides. *Maywald II*, 591 P.3d at 892 n.1.

Under Arizona law, expert testimony is the only permissible way to make that type of showing. Expert testimony is required "if [the] area of testimony is outside the common knowledge of laymen." *Cloud v. Pfizer Inc.*, 198 F. Supp. 2d 1118, 1139 (D. Ariz. 2001) (citing *Matson v. Naifeh*, 595 P.2d 38, 40 (Ariz. 1979)). A theory of liability centered on the allegedly carcinogenic qualities of a synthetic chemical herbicide, the features of alternatives to that herbicide, the tradeoffs involved in herbicide design, and their causal connection to an individual's injuries is plainly "outside the common knowledge of laymen." *Id*. The expert record in this case is closed and leaves no way for Plaintiff to meet his burden.

On top of that—and dispositive on its own—Plaintiff has not drawn a causal connection between Monsanto's failure to redesign Roundup and his injuries. Plaintiff bears the burden of proving a specific defect in Roundup "proximately caused [his] injuries," *Maywald II*, 591 P.3d at 892, which means proving that but for that defect, Plaintiff's cancer would have been avoided, *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (Ariz. 1990) (proximate cause "unvaryingly define[d]" as one "without which the injury would not have occurred"). Plaintiff disclosed one specific causation expert—Dr. Kevin Knopf. Ex. 2, Plaintiff's June 7, 2024 Expert Disclosure at 3. Dr. Knopf's "conclusion" is only that Plaintiff's "exposure to Roundup was a substantial factor in causing his Follicular NHL." Ex. 3, Knopf Gordon Rep't at 33. Likewise, the opinion of Plaintiff's disclosed general causation expert, Dr. Kristan Aronson, is that "glyphosate

and glyphosate-based formulations cause and contribute to cause non-Hodgkin lymphoma." Ex. 4, Aronson Gordon Rep't 90. No expert in this case has evaluated any theory that Monsanto could have redesigned Roundup to avoid Plaintiff's cancer, discussed its trade-offs, or otherwise addressed the factors Arizona law requires. Plaintiff's design defect claim therefore fails.

(c) *Durnell* Confirms That FIFRA Impliedly Preempts Any Claim That Would Require Monsanto To Reformulate Roundup.

Evidentiary failures aside, any theory that would have required Monsanto to redesign Roundup is also preempted as a matter of impossibility. *Durnell* establishes that "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition described at registration." *Durnell*, 146 S. Ct. at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(C)). And the same federal regulation that *Durnell* concluded to mean "federal law requires Monsanto to sell Roundup with the label that EPA approved" also applies to Roundup's composition. *Id.* at 2011; *see* 40 C.F.R. § 152.44 ("[A]ny modification in the composition, labeling, or packaging of a registered product must be submitted with an application for amended registration."). Under *Durnell*'s reasoning, then, just as federal law "require[s] a manufacturer to use the EPA-approved label and prohibit[s] the manufacturer from unilaterally changing the label," *Durnell*, 146 S. Ct. at 2014, federal law requires Monsanto to use the EPA approved formulation and prohibits Monsanto from unilaterally changing the formulation.

Under bedrock implied preemption principles, a state-law duty to do what federal law prohibits Monsanto from doing unilaterally—change Roundup's formulation—is preempted as a matter of impossibility. *See Bartlett,* 570 U.S. at 486 ("When federal law forbids an action that state law requires, the state law is without effect." (citation omitted)). As the Supreme Court has explained, "[t]he question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." *PLIVA*, 564 U.S. at 620 .

In the pharmaceutical context, the Supreme Court has held that "redesign" is "not possible" as a matter of federal law where the manufacturer "cannot legally make [the drug] in another composition" without receiving approval for such a new drug from the FDA. *Bartlett*, 570 U.S. at 484; *see also id*. at 490 ("hold[ing]" that "state law design-defect claims" are preempted when they require a manufacturer to "alter[] [a drug's] composition," but federal law "prohibit[s] manufacturers

from unilaterally altering drug composition"); *see also, e.g.*, *Yates v. Orther-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 298 (6th Cir. 2015) (concluding design-defect claim against brand-name drug manufacturers "clearly preempted" under *Bartlett*); *Trejo v. Johnson & Johnson*, 13 Cal.App.5th 110, 147 (2017) (similar). *Durnell* establishes that this is exactly the situation facing Monsanto. Since federal law prohibited Monsanto from marketing a version of Roundup with a different composition without prior EPA approval, Monsanto could not "independently do" what Plaintiff alleges state law to require. *PLIVA*, 564 U.S. at 620. Any claim alleging Monsanto had a duty to redesign Roundup is therefore barred by impossibility preemption.

### II. Plaintiff Cannot Substantiate Any Other Claim Under Arizona Law.

Apart from his design defect claim, Plaintiff pleads only negligence. The core of his negligence claim is that Monsanto failed to warn of Roundup's alleged carcinogenicity. As discussed above, that theory is preempted—along with the standalone failure to warn claim Plaintiff has already conceded. *Durnell*, 146 S. Ct. at 2012. And under Arizona law, a plaintiff who cannot prove a strict-liability design defect claim necessarily cannot prove one sounding in negligence. Indeed, Arizona courts have held that when a jury has "rejected [a] strict liability design claim," it would be "inconsistent for the jury to" find the manufacturer "at fault for negligent design." *Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 964 (Ariz. App. 2003), *disapproved of on other grounds by Maywald*, 591 P.3d 886. On its face, Plaintiff's complaint goes further. Plaintiff alleges in seven boilerplate paragraphs that Monsanto breached duties to "sell a product that was not unreasonably dangerous" and to "prevent, or adequately warn of the[] risks"—i.e. negligent design and negligent failure to warn. Compl. ¶¶ 72, 76.

## CONCLUSION

Summary judgment should be granted in full to Monsanto.

Dated: September 2, 2026

Respectfully submitted,

By: */s/ Anthony R. Martinez*
Anthony R. Martinez
Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 2, 2026, the foregoing document was filed and served on all counsel of record via the Court's CM/ECF system.

*/s/ Anthony R. Martinez*
*Anthony R. Martinez*