**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**SHOOK, HARDY & BACON LLP**
Anthony R. Martinez (*pro hac vice*)
(amartinez@shb.com)
2555 Grand Blvd
Kansas City, MO 64108
Tel: 816-474-6550 | Fax: 816-421-5547

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION,

This document relates to:

*Green v. Monsanto Co.*,
Case No. 3:23-cv-05878-VC

*King v. Monsanto Co.*,
Case No.: 3:21-cv-09294-VC

*Moreland v. Monsanto Co.*,
Case No. 3:20-cv-03069-VC

MDL No. 2741

Case No. 3:16-md-02741-VC

**DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

**Hearing:**
Date: November 16, 2026
Time: 1:00 PM
Place: San Francisco Courthouse, Courtroom 3

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 16, 2026, at 1:00pm, in Courtroom 3 of the U.S. District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Supplemental Motion for Summary Judgment. Monsanto seeks an order granting summary judgment in its favor on all claims brought by Plaintiffs Kari Green, Arthur King, and Emory Moreland, Jr., which are preempted by federal law and unsupported by substantial evidence.

Dated: September 2, 2026

Respectfully submitted,

**SHOOK, HARDY & BACON, LLP**

By: */s/ Anthony R. Martinez*
Anthony R. Martinez
*Counsel for Defendant Monsanto Company*

**TABLE OF CONTENTS**


Background ..... 3

A. Congress Charged EPA With Comprehensive Regulatory Authority Over Pesticides. ..... 3

B. EPA Has Long Concluded Roundup Does Not Cause Cancer And Approved It For Sale. ..... 4

C. Plaintiffs Sue Monsanto, Alleging Roundup Caused Their Cancer. ..... 5

Legal Standard ..... 7

Argument ..... 7

I. Plaintiffs Have No Claims That Survive Durnell. ..... 7

A. *Durnell* Establishes That FIFRA Expressly Preempts Any Claim Predicated On A Failure-to-Warn. ..... 7

B. Plaintiffs Cannot Avoid *Durnell* By Pivoting To A Design Defect Theory. ..... 13

II. Plaintiffs Lacks Evidence To Substantiate Any Other Claim Under Georgia Law. ..... 18

A. Plaintiff Moreland Has Identified No Evidence Supporting His Fraud Claim. ..... 18

B. Plaintiffs Green and Moreland Cannot Substantiate Any Breach Of Implied Warranty Independent Of A Design Or Warning Claim. ..... 19

Conclusion ..... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ... 7

*Banks v. ICI Ams., Inc.*,
450 S.E.2d 671 (Ga. 1994) ... *passim*

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) ... 8, 11

*Bowden v. Med. Ctr., Inc.*,
845 S.E.2d 555 (Ga. 2020) ... 18

*Bryant v. BGHA, Inc.*,
9 F. Supp. 3d 1374 (M.D. Ga. 2014) ... 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ... 7

*Cochran v. Brinkmann Corp.*,
381 F.App'x 968 (11th Cir. 2010) ... 14

*Cochran v. Brinkmann Corp.*,
No. 1:08-CV-1790-WSD, 2009 WL 4823854 (N.D. Ga. Dec. 9, 2009) ... 14

*Cowart v. Widener*,
697 S.E.2d 779 (Ga. 2010) ... 15

*Ga. Dep't of Transp. v. Owens*,
766 S.E.2d 569 (Ga. App. 2014) ... 15

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000) ... 7

*Gill v. Blue Bird Body Co.*,
147 F.App'x 807 (11th Cir. 2005) ... 19

*Hardeman v. Monsanto Co.*,
997 F.3d 941 (9th Cir. 2021) ... 19

*Hardeman v. Monsanto Co.*,
No. 16-cv-00525-VC (Mar. 27, 2019) (ECF 288) ... 10, 16

*Hughes v. Oklahoma*,
441 U.S. 322 (1979) ... 8

*Jones v. Amazing Prods., Inc.*,
231 F. Supp. 2d 1228 (N.D. Ga. 2002) ........ 16

*Jones v. NordicTrack, Inc.*,
550 S.E.2d 101 ........ 13

*Kordel v. United States*,
335 U.S. 345 (1948) ........ 11

*Kurns v. R.R. Friction Prods. Corp.*,
565 U.S. 625 (2012) ........ 7

*Lowe v. Sporicidin Int'l*,
47 F.3d 124 (4th Cir. 1995) ........ 12

*Monsanto Co. v. Durnell*,
146 S. Ct. 2001 (2026) ........ *passim*

*Mut. Pharm. Co. v. Bartlett*,
570 U.S. 472 (2013) ........ 3, 7, 12, 17

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011) ........ 3, 17

*Priester v. Turner*,
896 S.E.2d 710 (Ga. App. 2023) ........ 6

*ReMax N. Atlanta v. Clark*,
537 S.E.2d 138 (Ga. App. 2000) ........ 19

*In re Roger Antkiewicz & Pest Elim. Prods. of Am., Inc.*,
8 E.A.D. 218, 1999 WL 362852 (EAB 1999) ........ 12

*In re Roundup Prods. Liab. Litig.*,
No. 16-md-2741, 2019 WL 3219360 (N.D. Cal. July 12, 2019) ........ 10, 16

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984) ........ 3

*Thornton v. E.I. Du Pont De Nemours & Co.*,
22 F.3d 284 (11th Cir. 1994) ........ 11

*Trejo v. Johnson & Johnson*,
13 Cal.App.5th 110 (2017) ........ 17

*Webb v. Rushing*,
391 S.E.2d 709 (Ga. App. 1990) ........ 19

*Yates v. Orther-McNeil-Janssen Pharms., Inc.*,
808 F.3d 281 (6th Cir. 2015) ........ 17

*Yousefzadeh v. Johnson & Johnson Consumer Inc.*,
184 F.4th 130 (2d Cir. 2026) ....................11, 12

**Statutes**

7 U.S.C.

§ 136 *et seq.* ....................3, 7

§ 136(p)(2) ....................11

§ 136a(1)(D)....................4

§ 136a(a) ....................3

§ 136j(a)(1)(B) ....................4, 12

§ 136j(a)(1)(C) ....................2, 4, 17

§ 136*l* ....................4

§ 136v(b)....................3, 8, 11

O.C.G.A.

§ 11-2-314....................19

§ 51-1-11(b) ....................19

§ 51-1-11(b)(1)....................15

§ 51–1–11....................20

40 C.F.R.

§ 152.3....................4

§ 152.112(e) ....................4

§ 152.44....................17

§ 152.44(a) ....................2, 4

§ 156.70(c) ....................4

§ 168.22(a) ....................12

**Other Authorities**

Fed. R. Civ. P. 56....................7, 14

Restatement (Second) of Torts § 402A, cmt. j (1962)....................11

## INTRODUCTION

Plaintiffs Kari Green, Arthur King, and Emory Moreland, Jr., pled five Georgia claims between them, all alleging in substance that glyphosate—the active ingredient in Roundup—caused their cancers and Monsanto is liable for failing to warn of that risk. Those claims cannot survive the United States Supreme Court's recent decision in *Monsanto Co. v. Durnell*, 146 S. Ct. 2001 (2026). Any failure-to-warn theory is now indisputably preempted, as Plaintiffs Green and King appear to recognize. And neither Georgia law nor the evidentiary record Plaintiffs have assembled allows any workaround. The Court should grant summary judgment in full to Monsanto.

In *Durnell*, the Supreme Court held that any "failure-to-warn claim" alleging Roundup causes cancer "is expressly preempted" by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). *Id.* at 2012. The "heart of" such a claim, the Court determined, "is that Monsanto should have included a cancer warning on its Roundup labels." *Id.* at 2010. But EPA has long concluded "that glyphosate is not likely to cause cancer in humans" and "has not required glyphosate-based pesticides like Roundup to include a cancer warning on their labels." *Id.* at 2009. To the contrary, "federal law requires Monsanto to sell Roundup with the label that EPA approved," which is "the label without a cancer warning." *Id.* at 2011. Thus, federal law "expressly preempts *any state tort claim* that would require a pesticide manufacturer to use a label" that differs from "the EPA-approved label." *Id.* at 2014 (emphasis added).

Plaintiffs brought failure-to-warn cases. Between the three of them, they pled five Georgia law tort claims, all restating in different terms that Monsanto should have warned of Roundup's purported cancer risk. Plaintiffs' overt failure-to-warn claims are plainly foreclosed. Their other claims share the same fundamental problem. Plaintiffs' negligence claims say Monsanto breached a duty to "provide adequate cautions and warnings to protect the health of users." *E.g.* King Compl. ¶ 117(g). Their design defect claims are based on an allegation that Roundup was "dangerous to an extent beyond that which an ordinary consumer would anticipate" and Plaintiffs lacked "knowledge of Roundup's dangerous characteristics." *E.g.* King Compl. ¶¶ 131(a), 133. Plaintiff Moreland's fraud claim alleges Monsanto "failed to disclose" that "glyphosate and its major metabolite . . . could cause cancer." Moreland Compl. ¶ 171. And Plaintiffs Green and Moreland's alleged implied

warranty claims based on the theory that Monsanto "failed to disclose that Roundup has dangerous propensities when used as intended." Moreland Compl. ¶ 181; *accord* Green Compl. ¶ 122.

Pleadings aside, the *evidence* Plaintiffs have advanced in these cases—which focuses exclusively on Monsanto's alleged failure to warn—cannot support any other theory under Georgia law. Although he alleges a fraud claim, Plaintiff Moreland has no evidence of any false representation by Monsanto that could make his claim about anything other than an alleged failure to warn. And neither Plaintiff Moreland nor Plaintiff Green has any evidence that the Roundup they used failed to work or suffered a malfunction that could support an independent implied warranty claim—on the contrary, both testified Roundup was extremely effective at killing weeds.

Nor can Plaintiffs salvage this case by pointing to their design defect claims. In Georgia, the "risk-utility analysis" of the Third Restatement governs design defect claims, whether sounding in negligence or strict liability. *Banks v. ICI Ams., Inc.*, 450 S.E.2d 671, 673 (Ga. 1994). And "the heart of design defect cases" is "the reasonableness of choosing from among various alternative product designs." *Id.* at 674 (citation omitted). So, excepting extreme circumstances not present here, Georgia law requires a plaintiff to show a manufacturer failed to adopt a safer alternative design for their product. And in cases like these—involving complex scientific and technical questions of causation and herbicidal design—Georgia law requires plaintiffs to make those showings through expert testimony. Plaintiffs have neither pled the existence of an alternative design for Roundup nor pointed to any evidence, expert or otherwise, capable of meeting that burden under Georgia law.

Even setting aside Plaintiffs' lack of proof that Monsanto could or should have reformulated Roundup to adopt an alternative design, that claim still faces a preemption problem. Although the Supreme Court's principal focus in *Durnell* was express preemption and the labeling requirements that flow from registration under FIFRA, the Court was careful to point out that registration carries "other consequences," including that "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition described at registration." 146 S. Ct. at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(C)). The same regulation on which *Durnell* based its conclusion that "federal law requires Monsanto to sell Roundup with the label that EPA approved," 146 S. Ct. at 2011, applies equally to a pesticide's composition, *see* 40 C.F.R. § 152.44(a). That means it would be unlawful

for Monsanto to sell Roundup with a changed formulation without first obtaining EPA's approval. As the Supreme Court's impossibility preemption cases make clear, when a regulated party cannot comply with a state-law duty absent prior agency approval, the state-law duty is preempted as a matter of impossibility. *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 483–84 (2013) ("redesign" of drug "was not possible" where, if manufacturer were "to change the composition of its [drug], the altered chemical would be a new drug that would require its own NDA"); *see also PLIVA, Inc. v. Mensing*, 564 U.S. 604, 620 (2011) ("The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it."). Because Monsanto could not unilaterally comply with a state-law duty to redesign Roundup, it is preempted.

Plaintiffs cannot substantiate any claim that would not be preempted under *Durnell*. Summary judgment should therefore be granted in full to Monsanto.

Plaintiff Green's claims fail for an additional reason: as Monsanto's prior, unresolved motion for summary judgment set forth, she has timely disclosed no case-specific expert. *See* MDL Doc. 20948. In the absence of expert evidence that Roundup caused her late husband's NHL, Plaintiff Green's case cannot proceed.

## BACKGROUND

### A. Congress Charged EPA With Comprehensive Regulatory Authority Over Pesticides.

FIFRA is "a comprehensive regulatory statute" through which Congress charged EPA with regulating all aspects of pesticides. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 991 (1984); *see* 7 U.S.C. §§ 136 *et seq*. FIFRA contains an express preemption provision, titled "Uniformity" by Congress, that preempts "any" state-law "requirements for labeling or packaging in addition to or different from those required under" FIFRA. 7 U.S.C. § 136v(b). That clause protects "EPA's comprehensive and exclusive authority in registering pesticides and approving labels." *Durnell,* 146 S. Ct. at 2008.

Before any pesticide may be sold in the United States, it must first be approved by EPA. 7 U.S.C. § 136a(a). By law, EPA cannot register a pesticide unless it "conclude[s] that the pesticide will not generally cause unreasonable adverse effects on human health." *Durnell*, 146 S. Ct. at 2006

(citations omitted). In making this determination, EPA considers "the complete formula of the pesticide," including both active and inert ingredients. 7 U.S.C. § 136a(1)(D); *see also* 40 C.F.R. §§ 152.3, 152.112(e). EPA must also determine that the pesticide's "labeling complies with FIFRA's many specific requirements," *Durnell*, 146 S. Ct. at 2014 (citations omitted), including that the "label includes all warnings necessary and adequate to protect human health," *id.* at 2007.

Any precautionary or human hazard labeling—such as a cancer warning—must be reviewed and approved by EPA. *Id.* at 2006. Once EPA approves a pesticide's label, any human health warnings or cautionary statements on the label can only be changed with the agency's approval. *Id.* at 2010 & n.5; *see also* 40 C.F.R. §§ 152.44(a); 156.70(c). Accordingly, "[a]fter EPA approves a pesticide's label at registration, manufacturers are legally required to use that label." *Durnell*, 146 S. Ct. at 2010.

The Supreme Court has explained that EPA's approval of a pesticide has other consequences as well. One "consequence[]" of Roundup's "[r]egistration" is that manufacturers and sellers are prohibited from making "any claims" regarding Roundup that "substantially differ from" those approved by EPA during registration. *Id.* at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(B)). Further, once EPA registers a pesticide, "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition described at registration." *Id.* (quoting 7 U.S.C. § 136j(a)(1)(C)); *see also* 40 C.F.R. § 152.44(a) ("[A]ny modification in the composition . . . of a registered product must be submitted with an application for amended registration."). A person who violates any one of these obligations is subject to civil and criminal penalties. 7 U.S.C. § 136*l*.

**B. EPA Has Long Concluded Roundup Does Not Cause Cancer And Approved It For Sale.**

EPA first approved glyphosate-based herbicides ("GBHs") for sale in 1974. *Durnell*, 146 S. Ct. at 2008. Since then, Monsanto has manufactured and sold a variety of GBHs, including many under the brand name Roundup. For more than three decades, "EPA has repeatedly re-evaluated glyphosate and has repeatedly concluded that glyphosate is not likely to cause cancer." *Id*. In 1991, for example, "EPA classified glyphosate as unlikely to cause cancer in humans," and in "1993, EPA reiterated that conclusion and reregistered glyphosate products without a cancer warning." *Id.* "In

2017 and 2019, after the International Agency for Research on Cancer classified glyphosate as a probable carcinogen, EPA re-examined the issue but still adhered to its longstanding position on glyphosate"—namely, that it does not cause cancer. *Id.* at 2008–09. And EPA's view is widely shared by expert, scientific agencies: "[M]any other regulatory bodies around the world . . . have likewise concluded that glyphosate is not carcinogenic, including regulators in Canada, Australia, Japan, and the European Union." *Id.* at 2009.

In line with its scientific determination that glyphosate does not cause cancer, EPA has repeatedly approved Monsanto's Roundup labels, which do not contain a cancer warning. *Id.* And EPA continues to register glyphosate-based pesticide formulations and approve glyphosate product labels—all without cancer warnings. *See Chemical Name: Glyphosate*, EPA, https://perma.cc/N8KY-7KJ5.

**C. Plaintiffs Sue Monsanto, Alleging Roundup Caused Their Cancer.**

(a) Plaintiff Green

Plaintiff Kari Green testified that her husband Brian Green, used Roundup on a regular basis at their home in Georgia from 1991 to approximately 2018. Ex. 1., Green Dep. 58:7–11, 59:4–60:7. In 2020, Mr. Green was diagnosed with NHL. Ex. 1., Green Dep. 92:25–93:6. Unfortunately, Mr. Green passed away in 2021. Ex. 1 Green Dep. 7:8–11.

Plaintiff Green brings a wrongful death action against Monsanto. Although the Complaint does not specifically identify counts, the Complaint appears to plead four theories: (1) Design Defect, Green Compl. ¶¶ 66–82; (2) Failure to Warn, *id.* ¶¶ 83–103; (3) Negligence, *id.* ¶¶ 103–18; and (4) Breach of Implied Warranty, *id.* ¶¶ 119–33.[1]

In response to this Court's June 30, 2026 Order, Monsanto conferred with counsel for Plaintiff Green. Plaintiff Green contends that her claims for design defect, negligence, and implied warranty are not preempted. She accordingly no longer pursues her failure-to-warn claim.

---

[1] Monsanto and Plaintiff Green previously stipulated that Georgia law governs her claims. MDL Doc. 21057.

(b) Plaintiff King

Plaintiff Arthur King testified that he used Roundup between 2010 and 2020 in connection with lawn care business he operated in Georgia as well as at home. Ex. 2, King Dep. Tr. 35:1–37:24; 38:19–39:4; 130:23–133:7, 139:8–20. In 2019, he was diagnosed with NHL. Ex. 2, King Dep. Tr. 180:15:–181:7. Fortunately, Plaintiff King's treatment has been effective, and during his deposition Plaintiff King testified he was in remission. Ex. 2, King Dep. Tr. 154:17–25.

Plaintiff King brings four Georgia law claims against Monsanto: Negligence (Count I), King Compl. ¶¶ 114–24; Design Defect (Count II), *id.* ¶¶ 125–46; Failure to Warn (Count III), *id.* ¶¶ 147–67; and Breach of Implied Warranties (Count IV), *id.* ¶¶ 168–77.[2]

In response to this Court's June 30, 2026 Order, Monsanto conferred with Counsel for Plaintiff King. Plaintiff King contends that he has non-preempted claims for negligence and design defect.[3]

(c) Plaintiff Moreland

Plaintiff Emory Moreland, Jr. testified that he used various Roundup products from 1988 to 2019 at family homes in Georgia. Ex. 3, Moreland Dep. Tr. 25:17–26:10, 109:24–111:11. In 2017, Plaintiff Moreland began experiencing symptoms, and in 2019 he was diagnosed with NHL. Ex. 3, Moreland Dep. Tr. 140:19–23, 143:11–13.

Plaintiff Moreland brings five Georgia law claims against Monsanto: Design Defect (Count I), Moreland Compl. ¶¶ 106–29; Failure to Warn (Count II), *id.* ¶¶ 130–53; Negligence and Negligence Per Se (Count III), *id.* ¶¶ 154–68; Fraud (Count IV), *id.* ¶¶ 169–77; and Breach of Implied Warranties (Count V), *id.* ¶¶ 178–90.[4]

---

[2] Monsanto and Plaintiff King previously stipulated that Georgia law governs his claims. MDL Doc. 21051.

[3] In addition, Plaintiff King's wife, Veronique brings a Loss of Consortium claim (Count V), which Plaintiff King contends is not preempted. King Compl. ¶¶ 178–80. In Georgia, when both spouses sue an alleged tortfeasor in a single action, a judgment against the injured spouse necessarily precludes recovery on the other spouse's loss of consortium claim." *Priester v. Turner*, 896 S.E.2d 710, 711 (Ga. App. 2023). Ms. King's loss of consortium claim therefore depends on whether Plaintiff King may successfully maintain a non-preempted claim and Monsanto does not separately address this claim.

[4] Monsanto and Plaintiff Moreland previously stipulated that Georgia law governs his claims. MDL Doc. 19699.

In response to this Court's June 30, 2026 Order, Monsanto conferred with Counsel for Plaintiff Moreland. Plaintiff Moreland contends that he has non-preempted claims on all five counts, including "failure to warn (excluding label)."

**LEGAL STANDARD**

A court "shall grant" summary judgment when the movant establishes that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**ARGUMENT**

The Supreme Court's decision in *Durnell* establishes that federal law—the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 *et seq.*—preempts all of Plaintiffs' claims against Monsanto. And any workaround Plaintiffs might seek to employ neither escapes preemption nor is triable on the evidentiary record Plaintiffs have assembled.

**I. Plaintiffs Have No Claims That Survive Durnell.**

Preemption of state law "occurs through the direct operation of the Supremacy Clause" of the United States Constitution, *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630 (2012) (quotation marks omitted), so "state laws that conflict with federal law are without effect," *Bartlett*, 570 U.S. at 479–80 (quotation marks omitted). Congress may expressly preempt state law by passing a preemption provision in a statute, *see, e.g., Kurns*, 565 U.S. at 630, and federal law may additionally impliedly preempt state law where there is a conflict between the two, *see, e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000). The presence of an "express pre-emption provision[] does not bar the ordinary working of conflict pre-emption principles." *Id.*

**A. *Durnell* Establishes That FIFRA Expressly Preempts Any Claim Predicated On A Failure-to-Warn.**

To achieve national "uniformity" in pesticide labeling, Congress expressly preempted state laws that "impose . . . any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." 7 U.S.C. § 136v(b). That express preemption provision protects "EPA's comprehensive and exclusive authority in registering pesticides and approving labels." *Durnell*, 146 S. Ct. at 2008.

In *Durnell*, the Supreme Court held that a "failure-to-warn claim" alleging Roundup causes cancer "is expressly preempted." *Id.* at 2012. The "heart of" such a claim, the Court concluded, "is that Monsanto should have included a cancer warning on its Roundup labels." *Id.* at 2010. But "in accordance with EPA's view that glyphosate is not likely to cause cancer in humans"—a conclusion EPA has held across "more than three decades"—"EPA has not required glyphosate-based pesticides like Roundup to include a cancer warning on their labels." *Id.* at 2009. A failure-to-warn claim therefore imposes a state-law requirement "in addition to or different from those required under [FIFRA]," and triggers express preemption. 7 U.S.C. § 136v(b).

*Durnell* also confirms that a claim's substance, not what a plaintiff happens to call it, controls. FIFRA's Uniformity provision preempts "*any state tort claim* that would require a pesticide manufacturer to use a label" other than "the EPA-approved label." *Durnell*, 146 S. Ct. at 2014 (emphasis added). That conclusion builds on prior precedent, which had recognized that a claim is subject to express preemption under FIFRA if it "set[s] a standard for a product's labeling that the . . . label is alleged to have violated" such as "by containing false statements and inadequate warnings." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 446 (2005). Indeed, *Bates* held that disguised "failure-to-warn claims," *id.*, which had been pled as "claims for negligent testing and defective design and manufacture," *id.* at 457 (Thomas, J., concurring in part), qualified as "requirements for labeling," within the meaning of FIFRA's express preemption provision. 7 U.S.C. § 136v(b). And the Supreme Court had previously explained that when conducting a federal preemption analysis, a court "is not bound by the name, description or characterization given it by the legislature or the courts of the State, but will determine for itself the practical impact of the law." *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979) (citation modified). Together, these precedents leave

no doubt that *any* claim that would purport to require Monsanto to warn that Roundup causes cancer is preempted.

Plaintiffs' claims—although couched in various Georgia tort duties—all boil down to the preempted theory that Monsanto is liable for failing to include a cancer warning on Roundup's label. Plaintiffs' allegations confirm as much:

- Plaintiffs' **Negligence** claims allege that Monsanto is liable for "failing to adequately and correctly warn . . . of the dangers of Roundup" and for "[f]ailing to provide adequate cautions and warnings to protect the health of [Roundup] users." King Compl. ¶¶ 117(f), (g); *see also* Moreland Compl. ¶ 164(g) (negligent for "[f]ailing to disclose to Plaintiff, users/consumers, and the general public that use of and exposure to Roundup presented severe risks of cancer"); Green Compl. ¶ 113(g) (same).

- Plaintiffs' **Design Defect** claims allege that Roundup is defective because Roundup was "dangerous to an extent beyond that which an ordinary consumer would anticipate" and Plaintiffs lacked "knowledge of Roundup's dangerous characteristics." *E.g.* King Compl. ¶¶ 131(a), 133; *accord* Green Compl. ¶¶ 70, 74; Moreland Compl. ¶¶ 120, 122.

- Plaintiff Moreland's **Failure-to-Warn** claim alleges that "Monsanto failed to warn consumers, including the Plaintiff, that Roundup is carcinogenic" and "failed to include a warning regarding known carcinogenic properties of a pesticide, which constitutes misbranding under [FIFRA]." Moreland Compl. ¶ 139.[5]

- Plaintiffs Moreland and Green's **Implied Warranty** claims allege that Monsanto is liable because it "failed to disclose that Roundup has dangerous propensities when used as intended and that use of and/or exposure to Roundup and glyphosate-containing products carries an increased risk of developing . . . cancer." Moreland Compl. ¶ 181; *accord* Green. Compl. ¶ 122.[6]

- Plaintiff Moreland's **Fraud** claim alleges that Monsanto "Monsanto defrauded . . . Plaintiff in particular by misrepresenting the true safety of Roundup and by failing to disclose known risks of cancer." Moreland Compl. ¶ 170.[7]

Plaintiffs' problems extend further than pleading—they have an evidence problem. Similar to other Plaintiffs in this MDL, Plaintiffs Green, King, and Moreland have not developed evidence

---

[5] Plaintiffs Green and King correctly no longer pursue their failure-to-warn claims.
[6] Plaintiff King no longer pursues his implied warranty claim.
[7] Only Plaintiff Moreland pled a fraud claim.

capable of supporting any theory other than failure to warn. And their failure-to-warn theory is now indisputably preempted.

This Court's decision in *Hardeman* is instructive. Although *Hardeman* involved putative California-law claims for strict-liability failure-to-warn, negligence, and design defect (same as three counts of Plaintiffs' Complaints), Monsanto's alleged negligence was "not using reasonable care to warn about Roundup's NHL risk." Verdict Form, *Hardeman v. Monsanto Co.*, No. 16-cv-00525-VC (Mar. 27, 2019) (ECF 288). And after analyzing the issue at length, this Court also explained that the only "design defect" the evidence could sustain was that Roundup had been "sold without a warning." *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741, 2019 WL 3219360, at *3 (N.D. Cal. July 12, 2019) (emphasis added). When "the defect [is] the absence of a warning," this Court correctly observed, "the design defect claim [] merge[s] into the failure-to-warn claim." *Id.* at *2. So, notwithstanding the various ways that Mr. Hardeman styled the tort duties he pled, his whole case boiled down to three different ways of claiming that Monsanto should have warned him of Roundup's purported cancer risk. It is now established that such a claim is preempted.

These cases are no different. They involve three of the same claims as *Hardeman*. And as to all of Plaintiffs' claims, the evidence they have assembled goes no further than a failure to warn theory. For all of Plaintiffs' purported non-warning claims, that means they lack sufficient evidence to proceed under Georgia law. *See infra*. And to the extent that Georgia allows their warning theories to proceed under other causes of action, they are preempted. After all, *Durnell* establishes that all failure-to-warn claims are preempted. It held that, as a matter of law, "[f]ailure-to-warn claims . . . are premised on common-law rules that qualify as labeling requirements." 146 S. Ct. at 2010 (citation omitted). The Court did not say "some failure-to-warn claims." It did not suggest—despite the *Durnell* plaintiff's considerable efforts to argue otherwise—that there could be a residual, non-preempted component of a failure-to-warn claim. *See* Resp't.'s Br. in Opp'n, *Monsanto Co. v. Durnell*, No. 24-1068, 2025 WL 1665996 (U.S. June 8, 2025). It addressed failure-to-warn claims as a whole and held they are preempted. That is enough to end this case.

Faced with *Durnell*, Plaintiffs Green and King have not contended their failure-to-warn claims survive preemption—and with good reason. Plaintiff Moreland, however, contends he may

still advance a claim for "failure to warn (excluding label)." It is unclear what "excluding label" theory Plaintiff Moreland means to advance. But under *Durnell* (and *Bates*) it fails out of the gate. Addressing a strict-liability failure to warn claim, *Durnell* concluded in categorical terms that "[f]ailure-to-warn claims . . . are premised on common-law rules that qualify as labeling requirements." 146 S. Ct. at 2010 (citation omitted). And *Bates* said the same of "negligent-failure-to-warn claims." 544 U.S. at 446.

That categorical conclusion aligns with foundational products liability law, according to which a manufacturer discharges its duty to warn by giving an adequate "warning[] *on the container*." Restatement (Second) of Torts § 402A, cmt. j (1962) (emphasis added). Indeed, if a manufacturer had a duty to warn and attempted to do so through channels other than the label, it would be happenstance whether anyone saw the warning and the manufacturer would still face liability. *Thornton v. E.I. Du Pont De Nemours & Co*., 22 F.3d 284, 289 (11th Cir. 1994) (explaining that under Georgia law, a manufacturer may be liable not only for "failing to provide an adequate warning" but also for "failing to adequately communicate the warning to the ultimate user"). To avoid failure-to-warn liability, a manufacturer *must* change the label. That is why the label is the "heart" of a failure-to-warn claim, *Durnell*, 146 S. Ct. at 2010, and why such a claim necessarily imposes a "requirement[] for labeling," 7 U.S.C. § 136v(b), and is therefore preempted.

Plaintiff Moreland's "excluding label" contention also disregards that "labeling" is a broad term of art under FIFRA. It includes not only the label itself, but "all other written, printed, or graphic matter . . . accompanying the pesticide . . . at any time." 7 U.S.C. § 136(p)(2). If Monsanto issued a point-of-sale warning "accompanying" Roundup, it would be labeling. And advertising "accompanies" a pesticide and thus constitutes "labeling" if it is a "supplement to the label." *Kordel v. United States*, 335 U.S. 345, 348 (1948). If an advertisement were the place Monsanto provided warnings to users, it would serve as a supplement to the label. As the Second Circuit has recently observed, plaintiffs may not make an end run around federal labeling requirements by requiring regulated parties to make "forced advertising disclosures" that are "precisely the opposite" of how they must label their products. *Yousefzadeh v. Johnson & Johnson Consumer Inc.*, 184 F.4th 130, 151 (2d Cir. 2026). In concluding such a theory was expressly preempted under a preemption

provision *Durnell* described as "similar or identical" to FIFRA's uniformity clause, 146 S. Ct. at 2013, the Second Circuit noted that its "approach mirrors one the Fourth, Fifth, Seventh, Ninth, and Eleventh Circuits have taken in addressing the scope of FIFRA's near-identical preemption provision." *Yousefzadeh*, 184 F.4th at 151 n.16. Any other approach would be inconsistent with "EPA's comprehensive and exclusive authority in registering pesticides and approving labels." *Durnell*, 146 S. Ct. at 2008.

In addition to failing under express preemption, a theory that Monsanto had to contradict the EPA-approved label for Roundup and claim elsewhere that Roundup causes cancer is barred by impossibility preemption. "When federal law forbids an action that state law requires, the state law is without effect." *Bartlett*, 570 U.S. at 486. And *Durnell* confirms that as a "consequence" of Roundup's registration, "FIFRA prohibits" Monsanto from making "any claims" regarding Roundup that "substantially differ from" those approved by EPA. *Durnell*, 146 S. Ct, at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(B)). That prohibition specifically applies to "advertisements in any advertising medium to which pesticide users or the general public have access." 40 C.F.R. § 168.22(a). And it applies not only to "statements of efficacy" but also to "warnings." *In re Roger Antkiewicz & Pest Elim. Prods. of Am., Inc.*, 8 E.A.D. 218, 1999 WL 362852, at *13 (EAB 1999); *see also Lowe v. Sporicidin Int'l*, 47 F.3d 124, 130 (4th Cir. 1995). EPA has approved no claim that Roundup causes cancer. Monsanto therefore could not "claim" that Roundup causes cancer "in any advertising medium" without violating federal law. 40 C.F.R. § 168.22(a). Georgia law therefore may not impose a duty to do so.

In all events, the facts of Plaintiff Moreland's case confirm that his warning claim is about the label. Plaintiff Moreland testified that he "read the label" for Roundup on "[t]he first purchase" and looked for "any health warnings." Ex. 3, Moreland Dep. Tr. 64:23–65:7. And he re-read "several different labels." Ex. 3, Moreland Dep. Tr. 66:24–67:2. In contrast, Plaintiff Moreland testified that he saw "a commercial" for Roundup "one time" and that he did not recall when. Ex. 3, Moreland Dep. Tr. 48:18–49:9 ("Q. Do you recall when you saw that ad? A. No, I can't really put a year or a date on it, month or nothing."). Plaintiff Moreland testified to no other ways in which

he received information from Monsanto. So a jury would have to engage in speculation to find any alleged failure to warn other than by the label proximately caused Plaintiff Moreland's injuries.

**B. Plaintiffs Cannot Avoid *Durnell* By Pivoting To A Design Defect Theory.**

Plaintiffs cannot save these cases by arguing that their claims would impose liability for Roundup's formulation or design, rather than a lack of warning. Georgia has adopted the "risk-utility" framework of the Third Restatement for design defect claims, under which "the heart of design defect cases" is "the reasonableness of choosing from among various alternative product designs." *Banks*, 450 S.E.2d at 673–74 (citation omitted); *see id.* at 674 ("[W]e hereby adopt the risk-utility analysis."). The manufacturer breaches a tort duty by unreasonably failing to adopt a safer design.[8] Such a theory fails on the evidence. Plaintiffs have not identified—much less substantiated through expert evidence—a safer alternative design for Roundup that would have avoided their injuries. That theory is also preempted. If Plaintiffs propose that Roundup should have been "redesigned" to bear a cancer warning, their claims are expressly preempted by FIFRA's Uniformity provision. *See supra*. If their theory is that Monsanto should have altered Roundup's formulation, that theory is preempted as a matter of impossibility for reasons that are confirmed by *Durnell*.

(a) Plaintiffs Lack Evidence Of A Feasible Alternative Design For Roundup, Which Is The "Heart" Of A Design Defect Claim Under Georgia Law.

Recognizing that "it is only at their most extreme that design defect cases reflect the position that a product is simply so dangerous that it should not have been made available at all," Georgia courts have generally understood the existence of a feasible alternative design to be the "heart" of a design defect claim. *Banks*, 450 S.E.2d at 674; *see also, e.g.*, *Jones v. NordicTrack, Inc.*, 550 S.E.2d 101, 103 (design defect analysis focuses on "whether the defendant failed to adopt a reasonable alternative design which would have reduced the foreseeable risks of harm presented by the

[8] Georgia law "has long applied negligence principles in making the determination whether a product was defectively designed," and *Banks* adopted a risk utility analysis for both negligent and strict liability claims of design defect. *Banks*, 450 S.E.2d at 674; *see id.* at 672. To the extent Plaintiffs argue their negligence claims are for negligent design, rather than negligent failure to warn, they fail for the same reasons as Plaintiffs strict liability claims.

product"). Georgia's highest court has set forth non-exhaustive "[a]lternative safe design factors," which "include:"

- "the feasibility of an alternative design;"
- "the availability of an effective substitute for the product which meets the same need but is safer;"
- "the financial cost of the improved design; and"
- "the adverse effects from the alternative."

*Banks*, 450 S.E.2d at 675 n.6.

1. Plaintiffs have presented no evidence—expert or otherwise—of any specific "alternative design" for Roundup. Their complaints do not identify such a design. *See* Green Compl. ¶¶ 66–82; King Compl. ¶¶ 125–146; Moreland Compl. ¶¶ 106–29. And, critically, Plaintiffs have disclosed no expert who will offer an opinion that Roundup could have been redesigned in a specific manner to avoid their cancers. Nor have they disclosed an expert who will offer an opinion that a specific alternative design was feasible, met the same needs as Roundup, was cost effective, and did not create adverse effects of its own. *Banks*, 450 S.E.2d at 675 n.6; *cf., e.g.*, *Bryant v. BGHA, Inc.*, 9 F. Supp. 3d 1374, 1394 (M.D. Ga. 2014) (plaintiff offered two experts who testified that hunting ladder's protrusions and lack of handrails were the specific cause of Plaintiff's injuries, had no design benefits, and were easily replaced with existing design features that would have prevented the injury). Because Plaintiffs lack competent evidence of a specific alternative design satisfying those factors, Monsanto is entitled to summary judgment. *See, e.g.*, *Cochran v. Brinkmann Corp.*, 381 F.App'x 968, 969 (11th Cir. 2010) (applying Georgia law and concluding summary judgment warranted because exclusion of proffered experts meant plaintiffs had "no admissible evidence of alternative safer designs for the [product] in this litigation"); Fed. R. Civ. P. 56(a).

Under Georgia law, expert testimony is the only permissible way to make that showing: "It is axiomatic that expert testimony is generally required to demonstrate that alternative safer designs exist." *Cochran v. Brinkmann Corp.*, No. 1:08-CV-1790-WSD, 2009 WL 4823854, at *5 (N.D. Ga. Dec. 9, 2009). And these cases in particular present a theory of liability centered on the allegedly carcinogenic qualities of a synthetic chemical herbicide, the features of alternatives to that herbicide,

the tradeoffs involved in herbicide design, and their causal connection to an individual's injuries, which plainly "is beyond common knowledge and experience." *Cowart v. Widener*, 697 S.E.2d 779, 785 (Ga. 2010). But Plaintiffs have not offered alternative design experts. The expert record in these cases leaves no way for Plaintiffs to meet their burden.

On top of that—and dispositive on its own—Plaintiffs have not drawn a causal connection between Monsanto's failure to adopt a specific alternative and their individual injuries. Plaintiffs bear the burden of proving Monsanto's failure to comply with a duty to redesign Roundup "is the proximate cause of the injury sustained," O.C.G.A. § 51-1-11(b)(1), which means proving had Monsanto adopted their proposed design, their cancers would have been avoided. *See Ga. Dep't of Transp. v. Owens*, 766 S.E.2d 569, 577 (Ga. App. 2014) (proximate cause one "without which the event would not have occurred" (citation omitted)). Plaintiff Green has disclosed **no case specific experts** and her claim fails for that reason alone. *See* MDL Doc. 20948. The only specific causation expert Plaintiff King disclosed is Dr. Robert Conry.[9] The conclusion contained in Dr. Conry's report is that Plaintiff King's "use of Roundup both occupationally and personally over a period of 10 years preceding his NHL diagnosis was a substantial contributing factor to his development of NHL, more likely than not." Ex. 4, Conry King Rpt at 38. The only specific causation expert Plaintiff Moreland disclosed is Dr. Kevin Knopf.[10] The conclusion contained in Dr. Knopf's report is that Plaintiff "Moreland's exposure to Roundup was a substantial factor in causing his Diffuse Large B-Cell NHL." Ex. 5, Knopf Moreland Rpt at 36. No specific causation expert has opined that had Plaintiffs utilized a specific safer, feasible, and reasonable alternative design, they would not have developed NHL. Their design defect claims therefore fail on the evidence.[11]

---

[9] Plaintiff King also disclosed Dr. William Saywer and Dr. Charles Benbrook as case-specific experts, but they have not offered opinions whether Roundup or any other substance caused Plaintiff King's cancer specifically.

[10] Plaintiff Moreland also disclosed Mr. Stephen Petty, who has not offered an opinion whether Roundup or any other substance caused Plaintiff Moreland's cancer specifically.

[11] Both experts make passing reference to the surfactant "POEA." Ex. 4, Conry King Rpt at 11 n.7; *see* Ex. 5, Knopf Moreland Rpt at 23. Neither expert offers any opinion that the presence of POEA specifically caused Plaintiff King or Plaintiff Moreland's cancer or that a Roundup formulation containing a different surfactant identified by Plaintiffs' experts would have prevented their cancers.

2. Plaintiffs cannot avoid that outcome by arguing that this is the rare, "extreme" case where "a product is simply so dangerous that it should not have been made available at all." *Banks*, 450 S.E.2d at 674. That would be an extraordinary conclusion to reach—as another court has concluded—with respect to a product EPA has approved and "repeatedly concluded" for decades is "not likely to cause cancer," along with every other worldwide regulator. *Durnell*, 146 S. Ct. at 2005; *see Jones v. Amazing Prods., Inc.*, 231 F. Supp. 2d 1228, 1251 (N.D. Ga. 2002) (given "the finding of a national safety regulatory agency that a given product is not too hazardous for public use . . . the product would not trigger the 'extreme case' characterization that the Georgia Supreme Court articulated, whatever definition it may someday apply to that label"). And it would contradict the reality that farmers frequently use Roundup and find it extraordinarily useful. *See, e.g.*, Br. of Nat'l Agric. Ass'ns as Amici Curiae, *Monsanto Co. v. Durnell*, No. 24-1068, 2026 WL 673949 (Mar. 2, 2026).

The Court need look no further than its posttrial ruling in *Hardeman*, which evaluated—and rejected—a claim that Roundup was defective because it was so dangerous "should not have been sold for residential use regardless of whether there was a warning." *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741, 2019 WL 3219360, at *3 (N.D. Cal. July 12, 2019). The Court saw "no evidence that Roundup is inherently defective regardless of whether accompanied by a warning," "no expert testimony that Roundup could not be used safely with the proper precautions," and "no argument . . . that Roundup simply shouldn't be on the shelves for residential use." *Id.* And it remarked that "no colorable argument could be made in this regard, at least based on the evidence at trial and the evidence the Court has reviewed in this case over the past several years." *Id.* Unsurprisingly, Plaintiffs here have developed no evidence to plug those holes.

(b) *Durnell* Confirms That FIFRA Impliedly Preempts Any Claim That Would Require Monsanto To Reformulate Roundup.

Evidentiary failures aside, any theory that would have required Monsanto to redesign Roundup is also preempted as a matter of impossibility. *Durnell* establishes that a "consequence[]" of Roundup's "[r]egistration" is that "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition described at registration." *Durnell*, 146 S. Ct. at 2007 n.1 (quoting 7 U.S.C.

§ 136j(a)(1)(C)). And the same federal regulation that *Durnell* concluded to mean "federal law requires Monsanto to sell Roundup with the label that EPA approved" also applies to Roundup's composition. *Id.* at 2011; *see* 40 C.F.R. § 152.44 ("[A]ny modification in the composition, labeling, or packaging of a registered product must be submitted with an application for amended registration."). Under *Durnell*'s reasoning, then, just as federal law "require[s] a manufacturer to use the EPA-approved label and prohibit[s] the manufacturer from unilaterally changing the label," *Durnell*, 146 S. Ct. at 2014, federal law requires Monsanto to use the EPA approved formulation and prohibits Monsanto from unilaterally changing the formulation.

Under bedrock implied preemption principles, a state-law duty to do what federal law prohibits Monsanto from doing unilaterally—change Roundup's formulation—is preempted as a matter of impossibility. *See Mut. Pharm. Co. v. Bartlett,* 570 U.S. 472, 486 (2013) ("When federal law forbids an action that state law requires, the state law is without effect.") (citation omitted). As the Supreme Court has explained, "[t]he question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." *PLIVA*, 564 U.S. at 620 (emphasis added).

In the pharmaceutical context, the Supreme Court has held that "redesign" is "not possible" as a matter of federal law where the manufacturer "cannot legally make [the drug] in another composition" without receiving approval for such a new drug from the FDA. *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 484 (2013); *see also id*. at 490 ("hold[ing]" that "state law design-defect claims" are preempted when they require a manufacturer to "alter[] [a drug's] composition," but federal law "prohibit[s] manufacturers from unilaterally altering drug composition"); *see also, e.g.*, *Yates v. Orther-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 298 (6th Cir. 2015) (concluding design-defect claim against brand-name drug manufacturers "clearly preempted" under *Bartlett*); *Trejo v. Johnson & Johnson*, 13 Cal.App.5th 110, 147 (2017) (similar). *Durnell* establishes that this is exactly the situation facing Monsanto. Since federal law prohibited Monsanto from marketing a version of Roundup with a different composition without prior EPA approval, Monsanto could not "independently do" what Plaintiffs allege state law requires of it. *PLIVA*, 564 U.S. at 620. Any claim attacking Roundup's "composition" is therefore barred by impossibility preemption.

### II. Plaintiffs Lacks Evidence To Substantiate Any Other Claim Under Georgia Law.

Even if any of Plaintiffs' remaining claims survived preemption, they would still fail for insufficient evidence. As this Court has assessed, for cases in which discovery is complete, "in most instances and perhaps in all instances, the plaintiffs didn't really bother to develop a robust record in support of a state law claim that wouldn't be preempted under *Durnell*, to the extent that one exists." Ex. 6, Tr. of Hr'g at 24:19–22, *In re Roundup Prods. Liab. Litig.*, No. 16-MD-02741-VC (July 9, 2026). In these cases, that assessment has proved correct.

#### A. Plaintiff Moreland Has Identified No Evidence Supporting His Fraud Claim.

Count IV of Plaintiff Moreland's complaint alleges a claim for fraud, which he contends he can maintain even following *Durnell*. Moreland Compl. ¶¶ 169–177. Under Georgia law, "fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Bowden v. Med. Ctr., Inc.*, 845 S.E.2d 555, 564 n.10 (Ga. 2020) (citation omitted).

Plaintiff Moreland's evidence cannot meet that cause of action. He has no evidence of any "false representation by [Monsanto]" on which he relied. In his deposition, Plaintiff Moreland testified that he saw "a commercial" for Roundup "one time" and that he did not recall when. Ex. 3, Moreland Dep. Tr. 48:18–49:9 ("Q. Do you recall when you saw that ad? A. No, I can't really put a year or a date on it, month or nothing."). All that he remembered about the "one" commercial he saw was that "they just sprayed a weed and it just shriveled up." Ex. 3, Moreland Dep. Tr. 49:3–4. Not only was that ad not false (Plaintiff Moreland testified he "stuck with" Roundup because it "seemed to work"), but Plaintiff Moreland did not rely on it: the reason he "decide[d] to buy Roundup" was his "father [had] used Roundup before" so Plaintiff Moreland "decided to buy some." Ex. 3, Moreland Dep. Tr. 49:10–20. Plaintiff Moreland "never talked with anybody from Monsanto," and the only other "advertisements" he saw about Roundup were "legal advertisements . . . on TV." Ex. 3, Moreland Dep. Tr. 158:25–159:3, 163:15–18.

That shortcoming defeats Plaintiff Moreland's fraud claim: if he cannot show a false representation by [Monsanto]" on which he relied, he has not satisfied the elements. *Bowden v. Med. Ctr., Inc.*, 845 S.E.2d at 564 n.10. To be sure, in extremely limited circumstances not applicable

here, Georgia law permits a plaintiff to pursue a fraud claim based on an "omission of a material fact." *ReMax N. Atlanta v. Clark*, 537 S.E.2d 138, 142 (Ga. App. 2000).[12] But if that is Plaintiff Moreland's claim, it is just a preempted failure-to-warn claim by another name.

**B. Plaintiffs Green and Moreland Cannot Substantiate Any Breach Of Implied Warranty Independent Of A Design Or Warning Claim.**

Plaintiffs Green and Moreland each invoke in cursory allegations breaches of an implied warranty that Roundup was "of merchantable quality and safe and fit for [] use . . . as [an] herbicide[.]" Moreland Compl. ¶ 180; *see* Green Compl. ¶¶ 121. Plaintiffs' overriding complaint is that Roundup allegedly is carcinogenic. No triable version of that theory is cognizable through implied warranty.

In Georgia, maintaining a claim for a breach of the warranty of merchantability, O.C.G.A. § 11-2-314, requires a Plaintiff to show they are in privity with the seller against whom they seek to enforce the warranty, *see, e.g.*, *Gill v. Blue Bird Body Co.*, 147 F.App'x 807, 809–810 (11th Cir. 2005) ("Georgia courts have repeatedly held that where a plaintiff lacks contractual privity with a manufacturer, he cannot bring an implied warranty claim against that manufacturer."). Neither Plaintiff Moreland nor Plaintiff Green is in privity with Monsanto. Plaintiff Moreland purchased Roundup from hardware stores Ex. 3, Moreland Dep. Tr. 52:21–53:2. Before filing this lawsuit, Plaintiff Moreland had never even "heard of Monsanto." Ex. 3, Moreland Dep. Tr. 159:7–9. Plaintiff Green's husband also purchased Roundup from hardware stores. Ex. 1, Green Dep. Tr. 48:24–49:4.

Georgia recognizes a limited exception to this requirement of privity: O.C.G.A. § 51-1-11(b) provides that "irrespective of privity," a "manufacturer . . . shall be liable in tort" to a person "who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained." But that exception is nothing more than the statutory basis for strict

[12] For example, "the allegedly defrauded party must prove that the alleged defrauder had actual, not merely constructive, knowledge of the fact concealed" and a duty to disclose that fact. *Remax*, 537 S.E.2d at 142. For purposes of that requirement, actual knowledge cannot be inferred from surrounding circumstances. *See Webb v. Rushing*, 391 S.E.2d 709, 711 (Ga. App. 1990). And there is "no evidence" "Monsanto knew Roundup in fact caused cancer." *Hardeman v. Monsanto Co.*, 997 F.3d at 973 (9th Cir. 2021).

product liability in Georgia. *See Banks*, 450 S.E.2d at 672 ("OCGA § 51–1–11 imposes strict liability for defective products"). And Georgia does not recognize additional theories of product liability. *See id.* ("There are three general categories of product defects: manufacturing defects, design defects, and marketing/packaging defects.").[13] In the absence of privity with Monsanto, Plaintiffs Green and Moreland have no implied warranty claim that is not merely cumulative of their strict liability claims, which fail for the reasons discussed above.

## **CONCLUSION**

Summary judgment should be granted in full to Monsanto.

[13] Plaintiff Green conceded her failure-to-warn claim and neither Plaintiff Green nor Plaintiff Moreland has pled a manufacturing defect claim.

Dated: September 2, 2026

Respectfully submitted,

By: */s/ Anthony R. Martinez*
Anthony R. Martinez
Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September w, 2026, the foregoing document was filed and served on all counsel of record via the Court's CM/ECF system.

*/s/ Anthony R. Martinez*
Anthony R. Martinez