**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**SHOOK, HARDY & BACON LLP**
Anthony R. Martinez (*pro hac vice*)
(amartinez@shb.com)
2555 Grand Blvd
Kansas City, MO 64108
Tel: (816) 474-6550 | Fax: 816.421.5547

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Shedd v. Monsanto Co.*<br>Case No. 3:20-cv-03833 | **DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing:**<br>Date: November 16, 2026<br>Time: 1:00 PM<br>Place: San Francisco Courthouse, Courtroom 3 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 16, 2026, at 1:00pm, in Courtroom 3 of the U.S. District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Supplemental Motion for Summary Judgment. Monsanto seeks an order granting summary judgment in its favor on all claims brought by Plaintiff Ray Shedd, Jr., which are preempted by federal law and unsupported by substantial evidence.

Dated: September 2, 2026

Respectfully submitted,

**SHOOK, HARDY & BACON, LLP**

By: *<u>/s/ Anthony R. Martinez</u>*
Anthony R. Martinez
*Counsel for Defendant Monsanto Company*

**TABLE OF CONTENTS**


Background ..... 3

A. Congress Charged EPA With Comprehensive Regulatory Authority Over Pesticides. ..... 3

B. EPA Has Long Concluded Roundup Does Not Cause Cancer And Approved It For Sale. ..... 4

C. Plaintiff Sues Monsanto, Alleging Roundup Caused His Cancer. ..... 5

Legal Standard ..... 5

Argument ..... 5

I. Plaintiff Has No Claims That Survive Durnell. ..... 6

A. *Durnell* Establishes That FIFRA Expressly Preempts Any Claim Predicated On A Failure-to-Warn. ..... 6

B. Plaintiff Cannot Avoid *Durnell* By Pivoting To A Design Defect Theory. ..... 9

II. Plaintiff Cannot Substantiate Any Other Claim Under Mississippi Law. ..... 13

A. Plaintiff Lacks Evidence In Support Of His Express Warranty Claim. ..... 13

B. The Mississippi Product Liability Act Abrogates Plaintiff's Negligence And Implied Warranty Theories. ..... 14

Conclusion ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .....5

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) .....7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .....5

*Denham v. Holmes ex rel. Holmes*,
60 So. 3d 773 (Miss. 2011) .....10, 11

*Elliott v. El Paso Corp.*,
181 So. 3d 263 (Miss. 2015) .....1, 9, 10, 14

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000) .....6

*Hardeman v. Monsanto Co.*,
No. 16-cv-00525-VC (Mar. 27, 2019) (ECF 288) .....8

*Hughes v. Oklahoma*,
441 U.S. 322 (1979) .....7

*Knoth v. Apollo Endosurgery US, Inc.*,
425 F. Supp. 3d 678 (S.D. Miss. 2019) .....14

*Kurns v. R.R. Friction Prods. Corp.*,
565 U.S. 625 (2012) .....6

*McGilberry v. SVP Sewing Brands, LLC*,
--- So.3d ----, 2026 WL 2320425 (Miss. Ct. App. Aug. 11, 2026) .....14

*McSwain v. Sunrise Med., Inc.*,
689 F. Supp. 2d 835 (S.D. Miss. 2010) .....13

*Monsanto Co. v. Durnell*,
146 S. Ct. 2001 (2026) ..... *passim*

*Monsanto Co. v. Durnell*,
No. 24-1068, 2025 WL 1665996 (U.S. June 8, 2025) .....8

*Mut. Pharm. Co. v. Bartlett*,
570 U.S. 472 (2013) .....2, 6, 12

*Nelson v. C.R. Bard, Inc.*,
553 F.Supp.3d 343 (S.D. Miss.), *aff'd* 44 F.4th 277 .......... 10, 11, 14

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011) .......... 3, 12

*In re Roundup Prods. Liab. Litig.*,
No. 16-md-2741, 2019 WL 3219360 (N.D. Cal. July 12, 2019) .......... 8

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984) .......... 3

*Trejo v. Johnson & Johnson*,
13 Cal.App.5th 110 (2017) .......... 12

*Williams v. Bennett*,
921 So. 2d 1269 (Miss. 2006) .......... 10, 11

*Yates v. Orther-McNeil-Janssen Pharms., Inc.*,
808 F.3d 281 (6th Cir. 2015) .......... 12

**Statutes & Regulations**

7 U.S.C.

§ 136 *et seq.* .......... 3, 5

§ 136a(1)(D) .......... 3

§ 136a(a) .......... 3

§ 136j(a)(1)(B) .......... 4

§ 136j(a)(1)(C) .......... 2, 4, 12

§ 136*l* .......... 4

§ 136v(b) .......... 3, 6, 7

Miss. Code

§ 11-1-63(a) .......... 14

§ 11-1-63(a)(i)(2) .......... 9

§ 11-1-63(a)(i)(3) .......... 9

§ 11-1-63(f)(2) .......... 9

2014 Miss. Laws Ch. 383 § 1 .......... 14

40 C.F.R.

§ 152.112(e) ....................3

§ 152.44....................2, 3, 4, 12

§ 152.3....................3

§ 156.70(c) ....................3

**Other Authorities**

Fed. R. Civ. P. 56....................5

Fed. R. Civ. P. 56(a) ....................10

## INTRODUCTION

Plaintiff Ray Shedd, Jr. pled five Mississippi law claims, all alleging in substance that glyphosate—the active ingredient in Roundup—caused his cancer and Monsanto is liable for failing to warn of that risk. Those claims cannot survive the United States Supreme Court's recent decision in *Monsanto Co. v. Durnell*, 146 S. Ct. 2001 (2026). Any failure-to-warn theory is now indisputably preempted. And neither Mississippi law nor the evidentiary record Plaintiff has assembled allows any workaround. The Court should grant summary judgment in full to Monsanto.

In *Durnell*, the Supreme Court held that any "failure-to-warn claim" alleging Roundup causes cancer "is expressly preempted" by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). *Id.* at 2012. The "heart of" such a claim, the Court determined, "is that Monsanto should have included a cancer warning on its Roundup labels." *Id.* at 2010. But EPA has long concluded "that glyphosate is not likely to cause cancer in humans" and "has not required glyphosate-based pesticides like Roundup to include a cancer warning on their labels." *Id.* at 2009. To the contrary, "federal law requires Monsanto to sell Roundup with the label that EPA approved," which is "the label without a cancer warning." *Id.* at 2011. Thus, federal law "expressly preempts *any state tort claim* that would require a pesticide manufacturer to use a label" that differs from "the EPA-approved label." *Id.* at 2014 (emphasis added).

Mississippi's legislature has determined that there shall be four theories of product liability, which are defined by statute: manufacturing defect, design defect, failure to warn, and breach of express warranty. Miss. Code. § 11-1-63. This statutory scheme—the Mississippi Products Liability Act (MPLA)—"provides the exclusive remedy for products-liability claims" in Mississippi. *Elliott v. El Paso Corp.*, 181 So. 3d 263, 268 (Miss. 2015). Notwithstanding that exclusive statutory scheme, Plaintiff Shedd pled five tort claims, all restating in different terms that Monsanto should have warned of Roundup's purported cancer risk. Plaintiff's overt failure-to-warn claim is plainly foreclosed by *Durnell*. Plaintiff's negligence claim says Monsanto breached a duty to "to provide adequate instructions, guidelines, and safety precautions" to Roundup users. Compl. ¶ 144(f). Plaintiff's design defect claim alleges that Roundup was, as "labeled . . . dangerous to an extent beyond that which an ordinary consumer would contemplate." *Id.* ¶¶ 86. Plaintiff's implied

warranty claim alleges Monsanto "failed to disclose that Roundup has dangerous propensities when used as intended." *Id.* ¶ 155. And his express warranty claim is based on the theory that Monsanto had a duty to "[d]isclose adverse material facts, such as the true risks associated with use of Roundup." *Id.* ¶ 167(c). Those are failure-to-warn claims and they are preempted.

That problem aside, Mississippi law does not recognize Plaintiff's negligence and implied warranty claims as independent claims in this product liability action. His express warranty claim is unsupported by any evidence of any express warranty by Monsanto. And Plaintiff cannot salvage this case by pointing to his design defect theory. The only way a plaintiff can prove a design a defect under the MPLA is by demonstrating that, at the time he used Roundup, Monsanto unreasonably failed to adopt a "feasible design alternative" that "would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers." Miss. Code. § 11-1-63(f)(ii). Plaintiff, whose evidence is focused entirely on a failure-to-warn theory, has neither pled the existence of an alternative design for Roundup nor pointed to any evidence, expert or otherwise, capable of meeting that burden under Mississippi law.

Even setting aside that Plaintiff lacks proof that Monsanto could or should have reformulated Roundup to adopt an alternative design, that claim still faces a preemption problem. Although the Supreme Court's principal focus in *Durnell* was express preemption and the labeling requirements that flow from registration under FIFRA, the Court was careful to point out that registration carries "other consequences," including that "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition described at registration." 146 S. Ct. at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(C)). The same regulation on which *Durnell* based its conclusion that "federal law requires Monsanto to sell Roundup with the label that EPA approved," 146 S. Ct. at 2011, applies equally to a pesticide's composition, *see* 40 C.F.R. § 152.44(a). That means it would be unlawful for Monsanto to sell Roundup with a changed formulation without first obtaining EPA's approval. As the Supreme Court's impossibility preemption cases make clear, when a regulated party cannot comply with a state-law duty absent prior agency approval, the state-law duty is preempted as a matter of impossibility. *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 483–84 (2013) ("redesign" of drug "was not possible" where, if manufacturer were "to change the composition of its [drug], the

altered chemical would be a new drug that would require its own NDA"); *see also PLIVA, Inc. v. Mensing*, 564 U.S. 604, 620 (2011) ("The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it."). Because Monsanto could not unilaterally comply with a state-law duty to redesign Roundup, it is preempted.

Plaintiff cannot substantiate any claim that would not be preempted under *Durnell*. Summary judgment should therefore be granted in full to Monsanto.

## BACKGROUND

### A. Congress Charged EPA With Comprehensive Regulatory Authority Over Pesticides.

FIFRA is "a comprehensive regulatory statute" through which Congress charged EPA with regulating all aspects of pesticides. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 991 (1984); *see* 7 U.S.C. §§ 136 *et seq*. FIFRA contains an express preemption provision, titled "Uniformity" by Congress, that preempts "any" state-law "requirements for labeling or packaging in addition to or different from those required under" FIFRA. 7 U.S.C. § 136v(b). That clause protects "EPA's comprehensive and exclusive authority in registering pesticides and approving labels." *Durnell,* 146 S. Ct. at 2008.

Before any pesticide may be sold in the United States, it must first be approved by EPA. 7 U.S.C. § 136a(a). By law, EPA cannot register a pesticide unless it "conclude[s] that the pesticide will not generally cause unreasonable adverse effects on human health." *Durnell*, 146 S. Ct. at 2006 (citations omitted). In making this determination, EPA considers "the complete formula of the pesticide," including both active and inert ingredients. 7 U.S.C. § 136a(1)(D); *see also* 40 C.F.R. §§ 152.3, 152.112(e). EPA must also determine that the pesticide's "labeling complies with FIFRA's many specific requirements," *Durnell*, 146 S. Ct. at 2014 (citations omitted), including that the "label includes all warnings necessary and adequate to protect human health," *id.* at 2007.

Any precautionary or human hazard labeling—such as a cancer warning—must be reviewed and approved by EPA. *Id.* at 2006. Once EPA approves a pesticide's label, any human health warnings or cautionary statements on the label can only be changed with the agency's approval. *Id.* at 2010 & n.5; *see also* 40 C.F.R. §§ 152.44(a); 156.70(c). Accordingly, "[a]fter EPA approves a

pesticide's label at registration, manufacturers are legally required to use that label." *Durnell*, 146 S. Ct. at 2010.

The Supreme Court has explained that EPA's approval of a pesticide has other consequences as well. One "consequence[]" of Roundup's "[r]egistration" is that manufacturers and sellers are prohibited from making "any claims" regarding Roundup that "substantially differ from" those approved by EPA during registration. *Id.* at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(B)). Further, once EPA registers a pesticide, "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition described at registration." *Id.* (quoting 7 U.S.C. § 136j(a)(1)(C)); *see also* 40 C.F.R. § 152.44(a) ("[A]ny modification in the composition . . . of a registered product must be submitted with an application for amended registration."). A person who violates any one of these obligations is subject to civil and criminal penalties. 7 U.S.C. § 136*l*.

### B. EPA Has Long Concluded Roundup Does Not Cause Cancer And Approved It For Sale.

EPA first approved glyphosate-based herbicides ("GBHs") for sale in 1974. *Durnell*, 146 S. Ct. at 2008. Since then, Monsanto has manufactured and sold a variety of GBHs, including many under the brand name Roundup. For more than three decades, "EPA has repeatedly re-evaluated glyphosate and has repeatedly concluded that glyphosate is not likely to cause cancer." *Id*. In 1991, for example, "EPA classified glyphosate as unlikely to cause cancer in humans," and in "1993, EPA reiterated that conclusion and reregistered glyphosate products without a cancer warning." *Id.* "In 2017 and 2019, after the International Agency for Research on Cancer classified glyphosate as a probable carcinogen, EPA re-examined the issue but still adhered to its longstanding position on glyphosate"—namely, that it does not cause cancer. *Id*. at 2008–09. And EPA's view is widely shared by expert, scientific agencies: "[M]any other regulatory bodies around the world . . . have likewise concluded that glyphosate is not carcinogenic, including regulators in Canada, Australia, Japan, and the European Union." *Id.* at 2009.

In line with its scientific determination that glyphosate does not cause cancer, EPA has repeatedly approved Monsanto's Roundup labels, which do not contain a cancer warning. *Id*. And EPA continues to register glyphosate-based pesticide formulations and approve glyphosate product

labels—all without cancer warnings. *See Chemical Name: Glyphosate*, EPA, https://perma.cc/N8KY-7KJ5.

**C. Plaintiff Sues Monsanto, Alleging Roundup Caused His Cancer.**

Plaintiff Ray Shedd, Jr. testified that he used Roundup in Mississippi from approximately 1980 until 2018. Ex. 1, Shedd Dep. Tr. 25:16, 47:11–13, 50:19–20. In 2018, Plaintiff was diagnosed with NHL. Ex. 1, Shedd Dep. Tr. 134:10–135:8, 137:7–8. Fortunately, Plaintiff's treatments have been effective and during his deposition he testified that he has been in remission since 2021. Ex. 1, Shedd Dep. Tr. 109:22–25, 94:24.

Plaintiff brings five Mississippi law claims against Monsanto: Design Defect (Count I), Compl. ¶¶ 81–110; Failure to Warn (Count II), *id.* ¶¶ 111–133; Negligence (Count III), *id.* ¶¶ 134–151; Breach of Implied Warranties (Count IV), *id.* ¶¶ 152–165; and Breach of Express Warranties (Count V), *id.* ¶¶ 166–175.

In response to this Court's June 30, 2026 Order, Monsanto conferred with counsel for Plaintiff. Plaintiff contends that the complaint contains causes of action "not impacted" by *Durnell*, "including but not limited to" design defect and negligence. Plaintiff also contends that all counts plead "bases outside labeling."

## LEGAL STANDARD

A court "shall grant" summary judgment when the movant establishes that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ARGUMENT

The Supreme Court's decision in *Durnell* establishes that federal law—the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 *et seq.*—preempts all of

Plaintiff's claims against Monsanto. And any workaround Plaintiff might seek to employ neither escapes preemption nor is triable on the evidentiary record Plaintiff has assembled.

## I. Plaintiff Has No Claims That Survive Durnell.

Preemption of state law "occurs through the direct operation of the Supremacy Clause" of the United States Constitution, *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630 (2012) (quotation marks omitted), so "state laws that conflict with federal law are without effect," *Bartlett*, 570 U.S. at 479–80 (quotation marks omitted). Congress may expressly preempt state law by passing a preemption provision in a statute, *see, e.g., Kurns*, 565 U.S. at 630, and federal law may additionally impliedly preempt state law where there is a conflict between the two, *see, e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000). The presence of an "express pre-emption provision[] does not bar the ordinary working of conflict pre-emption principles." *Id.*

### A. *Durnell* Establishes That FIFRA Expressly Preempts Any Claim Predicated On A Failure-to-Warn.

To achieve national "uniformity" in pesticide labeling, Congress expressly preempted state laws that "impose . . . any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." 7 U.S.C. § 136v(b). That express preemption provision protects "EPA's comprehensive and exclusive authority in registering pesticides and approving labels." *Durnell*, 146 S. Ct. at 2008.

In *Durnell*, the Supreme Court held that a "failure-to-warn claim" alleging Roundup causes cancer "is expressly preempted." *Id.* at 2012. The "heart of" such a claim, the Court concluded, "is that Monsanto should have included a cancer warning on its Roundup labels." *Id.* at 2010. But "in accordance with EPA's view that glyphosate is not likely to cause cancer in humans"—a conclusion EPA has held across "more than three decades"—"EPA has not required glyphosate-based pesticides like Roundup to include a cancer warning on their labels." *Id.* at 2009. A failure-to-warn claim therefore imposes a state-law requirement "in addition to or different from those required under [FIFRA]," and triggers express preemption. 7 U.S.C. § 136v(b).

*Durnell* also confirms that a claim's substance, not what a plaintiff happens to call it, controls. FIFRA's Uniformity provision preempts "*any state tort claim* that would require a pesticide

manufacturer to use a label" other than "the EPA-approved label." *Durnell*, 146 S. Ct. at 2014 (emphasis added). That conclusion builds on prior precedent, which had recognized that a claim is subject to express preemption under FIFRA if it "set[s] a standard for a product's labeling that the . . . label is alleged to have violated" such as "by containing false statements and inadequate warnings." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 446 (2005). Indeed, *Bates* held that disguised "failure-to-warn claims," *id.*, which had been pled as "claims for negligent testing and defective design and manufacture," *id.* at 457 (Thomas, J., concurring in part), qualified as "requirements for labeling," within the meaning of FIFRA's express preemption provision. 7 U.S.C. § 136v(b). And the Supreme Court had previously explained that when conducting a federal preemption analysis, a court "is not bound by the name, description or characterization given it by the legislature or the courts of the State, but will determine for itself the practical impact of the law." *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979) (citation modified). Together, these precedents leave no doubt that *any* claim that would purport to require Monsanto to warn that Roundup causes cancer is preempted.

Plaintiff's claims—although couched in various Mississippi tort duties—all boil down to the preempted theory that Monsanto is liable for failing to include a cancer warning on Roundup's label. Plaintiff's allegations confirm as much:

- Plaintiff's **Design Defect** claim (Count I) alleges that Roundup was, as "labeled . . . dangerous to an extent beyond that which an ordinary consumer would contemplate" and Plaintiff lacked "knowledge of Roundup's dangerous characteristics." Compl ¶¶ 86, 98.

- Plaintiff's **Failure-to-Warn** claim (Count II) alleges that Monsanto is liable because "[a]t the time of manufacture" it "could have provided [] warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing products" but instead "failed to adequately warn . . . reasonably foreseeable users, of the risks of exposure to its product." *Id.* ¶¶ 116, 119.

- Plaintiff's **Negligence** claim (Count III) alleges that Monsanto breached a tort duty by "[f]ailing to disclose to Plaintiff, users/consumers, and the general public that use of and exposure to Roundup presented severe risks of cancer," and "[f]ailing to provide adequate instructions, guidelines, and safety precautions." *Id.* ¶¶ 144(f), (g).

- Plaintiff's **Implied Warranty** claim (Count IV) alleges Monsanto "failed to disclose that Roundup has dangerous propensities when used as intended and that

use of and/or exposure to Roundup and glyphosate-containing products carries an increased risk of developing . . . cancer." *Id.* ¶ 155.

- Plaintiff's **Express Warranty** claim (Count V) alleges that Monsanto had duties to "[w]arn of dangerous . . . side effect" and "[d]isclose adverse material facts, such as the true risks associate with use of Roundup and glyphosate-containing products." *Id.* ¶¶ 167(b), (c).

Plaintiff's problems extend further than pleading—he has an evidence problem. Similar to other plaintiffs in this MDL, Plaintiff has not developed evidence capable of supporting any theory other than failure to warn. And Plaintiff's failure-to-warn theory is now indisputably preempted.

This Court's decision in *Hardeman* is instructive. Although *Hardeman* involved putative California-law claims for strict-liability failure-to-warn, negligence, and design defect (same as Count I–III of Plaintiff's Complaint), Monsanto's alleged negligence was "not using reasonable care to warn about Roundup's NHL risk." Verdict Form, *Hardeman v. Monsanto Co.*, No. 16-cv-00525-VC (Mar. 27, 2019) (ECF 288). And after analyzing the issue at length, this Court also explained that the only "design defect" the evidence could sustain was that Roundup had been "sold without a warning." *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741, 2019 WL 3219360, at *3 (N.D. Cal. July 12, 2019) (emphasis added). When "the defect [is] the absence of a warning," this Court correctly observed, "the design defect claim [] merge[s] into the failure-to-warn claim." *Id.* at *2. So, notwithstanding the various ways that Mr. Hardeman styled the tort duties he pled, his whole case boiled down to three different ways of claiming that Monsanto should have warned him of Roundup's purported cancer risk. It is now established that such a claim is preempted.

This case is no different. Plaintiff alleges three of the same claims as the plaintiff in *Hardeman* (Counts I–III). And as to all of Plaintiff's claims, the evidence goes no further than a failure to warn theory. So, Plaintiff's claims are preempted under *Durnell*, which held that, as a matter of law, "[f]ailure-to-warn claims . . . are premised on common-law rules that qualify as labeling requirements." 146 S. Ct. at 2010 (citation omitted). The Court did not say "some failure-to-warn claims." It did not suggest—despite the *Durnell* plaintiff's considerable efforts to argue otherwise—that there could be a residual, non-preempted component of a failure-to-warn claim. *See* Resp't.'s Br. in Opp'n, *Monsanto Co. v. Durnell*, No. 24-1068, 2025 WL 1665996 (U.S. June 8,

2025). It addressed failure-to-warn claims as a whole and held they are preempted.[1] That is enough to end this case.

### B. Plaintiff Cannot Avoid *Durnell* By Pivoting To A Design Defect Theory.

Plaintiff cannot save this case by arguing that his claims would impose liability for Roundup's formulation or design, rather than a lack of warning. Under Mississippi law, a manufacturer "shall not be liable" for a product allegedly "designed in a defective manner" unless the plaintiff demonstrates—among other things—"there existed a feasible design alternative that would have to a reasonable probability prevented the harm." Miss. Code §§ 11-1-63(a), (a)(i)(3), (f)(2). The manufacturer breaches a tort duty by unreasonably failing to adopt the safer design. Such a theory fails on the evidence. Plaintiff has not identified—much less substantiated through expert evidence—a safer alternative design for Roundup that would have avoided his cancer. Even more, that theory is preempted. If Plaintiff proposes that Roundup should have been "redesigned" to bear a cancer warning, that theory is expressly preempted by FIFRA's Uniformity provision. *See supra*. If Plaintiff's theory is that Monsanto should have altered Roundup's formulation, that theory is preempted as a matter of impossibility for reasons that are confirmed by *Durnell*.

#### (a) Plaintiff Lacks Evidence Of A Feasible Alternative Design For Roundup, Which Mississippi Law Requires To Sustain Any Claim Alleging Design Defect.

The Under Mississippi Products Liability Act, a manufacturer "shall not be liable" for a product allegedly "designed in a defective manner" unless the plaintiff makes a series of showings under the statute. Miss. Code §§ 11-1-63(a), (a)(i)(3). To prevail, the plaintiff must show that "the product was designed in a defective manner, that the defective condition rendered the product unreasonably dangerous to the user or consumer, and that the defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought." *Elliott v.*

[1] Plaintiff has not specifically argued that his failure-to-warn claim survives *Durnell*, but indicated his view that he had "pled bases other than the label" for all of his claims. Even if *Durnell*'s holding that failure-to-warn claims alleging Roundup causes cancer are preempted were anything other than pellucid, it is unclear what theory Plaintiff could mean to advance under the MPLA. That statute—which sets forth the exclusive bases for product liability under Mississippi law—creates a duty to sell a product that "contain[s] adequate warnings or instructions" "at the time the product left the control of the manufacturer." Miss. Code. § 11-1-63(a)(i)(2).

*El Paso Corp.*, 181 So.3d 263, 271 (Miss. 2015) (citation modified). "Additionally, a plaintiff making a design-defect claim must prove by the preponderance of the evidence the existence of a feasible design alternative." *Id.* at 272. The MPLA defines a feasible alternative design as "a design that"—"at the time the product left the control of the manufacturer"—"would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers." Miss. Code. § 11-1-63(f)(ii). A plaintiff also bears the burden of showing the manufacturer's failure to adopt an alternative "proximately caused" their injuries. *Id.* § 11-1-63(a)(iii). Unless a plaintiff makes this showing, their "design-defect claims fail as a matter of law." *Elliott*, 181 So.3d at 272.

Plaintiff has presented no evidence—expert or otherwise—of any specific "alternative design" for Roundup. His complaint does not identify such a design. *See* Compl. ¶¶ 81–110. And, critically, Plaintiff has disclosed no expert who will offer an opinion that, at the relevant time, Roundup could have been redesigned in a specific manner to avoid his cancer. Nor has he disclosed an expert who will offer an opinion that a specific alternative design was feasible, met the same needs as Roundup, was cost effective, and did not create adverse effects of its own. Miss. Code. § 11-1-63(f)(ii). As Mississippi's highest court has explained, "the mere mention of a design alternative" is insufficient to carry this detailed burden. *Williams v. Bennett*, 921 So. 2d 1269, 1275 (Miss. 2006). Because Plaintiff lacks competent evidence of a specific alternative design satisfying those factors, Monsanto is entitled to summary judgment. *See, e.g.*, *Nelson v. C.R. Bard, Inc.*, 553 F.Supp.3d 343, 360 (S.D. Miss.) (granting summary judgment where alternative evidence did "not satisfy Plaintiffs' burden under Mississippi law to show that these design elements would have, to a reasonable probability, prevented the harm without impairing the utility, usefulness, practicality, or desirability" of the product"), *aff'd* 44 F.4th 277; Fed. R. Civ. P. 56(a).

Under Mississippi law, expert testimony is the only permissible way to make the required showings: "Expert testimony is required unless the matter in issue is within the common knowledge of laymen." *Denham v. Holmes ex rel. Holmes*, 60 So. 3d 773, 789 (Miss. 2011) (citation omitted). A theory of liability centered on the allegedly carcinogenic qualities of a synthetic chemical herbicide, the features of alternatives to that herbicide, the tradeoffs involved in herbicide design,

and their causal connection to an individual's injuries, is plainly not "within the common knowledge of laymen." *Id.* That is why Mississippi Courts frequently grant judgment defendants when a Plaintiff fails to offer expert testimony sufficient to meet all aspects of an alternative design theory. *See Williams*, 921 So.2d at 1275–77 (collecting and approving of examples). Plaintiff has not offered alternative design experts. The expert record in this case leaves no way for Plaintiff to meet his burden.

On top of that—and dispositive on its own—Plaintiff has not drawn a causal connection between Monsanto's failure to adopt a specific alternative and his injuries. Plaintiff bears the burden of proving Monsanto's failure to comply with a duty to redesign Roundup "was a proximate cause" of Plaintiff's injuries, *id.* § 11-1-63(a)(iii), which means proving had Monsanto adopted their proposed design, their cancers would have been avoided. *See Nelson*, 553 F. Supp. 3d at 360 ("[I]t is Plaintiffs' burden to show that a feasible design alternative would have to a reasonable probability prevented the harm. Simply reducing the risk is not preventing it."). Plaintiff disclosed one specific causation expert—Dr. Robert Conry. Ex. 2, Plaintiff's October 11, 2024 Expert Disclosure at 2–5.[2] Dr. Conry's opinion is only that Plaintiff's "use of Roundup beginning at age 9 and continuing until his NHL diagnosis at age 47 was the most likely cause and a substantial contributing factor to his development of NHL." Ex. 3, Conry Shedd Rpt. at 31. No case-specific expert has offered an opinion on Roundup's design at all, much less evaluated any proposed alternative design for Roundup and opined that had Plaintiff utilized that specific alternative design, he would not have developed NHL. Plaintiff's design defect claim therefore fails on the evidence.

(b) *Durnell* Confirms That FIFRA Impliedly Preempts Any Claim That Would Require Monsanto To Reformulate Roundup.

Evidentiary failures aside, any theory that would have required Monsanto to redesign Roundup is also preempted as a matter of impossibility. *Durnell* establishes that a "consequence[]" of Roundup's "[r]egistration" is that "FIFRA prohibits selling a pesticide if its 'composition' differs

[2] Plaintiff also disclosed his treating physician, Dr. Stephanie Elkins, as a case-specific expert. She is not a retained expert offering a report and has been designated to testify only regarding Plaintiff's diagnosis and treatment.

from the composition described at registration." *Durnell*, 146 S. Ct. at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(C)). And the same federal regulation that *Durnell* concluded to mean "federal law requires Monsanto to sell Roundup with the label that EPA approved" also applies to Roundup's composition. *Id.* at 2011; *see* 40 C.F.R. § 152.44 ("[A]ny modification in the composition, labeling, or packaging of a registered product must be submitted with an application for amended registration."). Under *Durnell*'s reasoning, then, just as federal law "require[s] a manufacturer to use the EPA-approved label and prohibit[s] the manufacturer from unilaterally changing the label," *Durnell*, 146 S. Ct. at 2014, federal law requires Monsanto to use the EPA approved formulation and prohibits Monsanto from unilaterally changing the formulation.

Under bedrock implied preemption principles, a state-law duty to do what federal law prohibits Monsanto from doing unilaterally—change Roundup's formulation—is preempted as a matter of impossibility. *See Mut. Pharm. Co. v. Bartlett,* 570 U.S. 472, 486 (2013) ("When federal law forbids an action that state law requires, the state law is without effect.") (citation omitted). As the Supreme Court has explained, "[t]he question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." *PLIVA*, 564 U.S. at 620.

In the pharmaceutical context, the Supreme Court has held that "redesign" is "not possible" as a matter of federal law where the manufacturer "cannot legally make [the drug] in another composition" without receiving approval for such a new drug from the FDA. *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 484 (2013); *see also id*. at 490 ("hold[ing]" that "state law design-defect claims" are preempted when they require a manufacturer to "alter[] [a drug's] composition," but federal law "prohibit[s] manufacturers from unilaterally altering drug composition"); *see also, e.g.*, *Yates v. Orther-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 298 (6th Cir. 2015) (concluding design-defect claim against brand-name drug manufacturers "clearly preempted" under *Bartlett*) *Trejo v. Johnson & Johnson*, 13 Cal.App.5th 110, 147 (2017) (similar). *Durnell* establishes that this is exactly the situation facing Monsanto. Since federal law prohibited Monsanto from marketing a version of Roundup with a different composition without prior EPA approval, Monsanto could not "independently do" what Plaintiff alleges state law requires of it. *PLIVA*, 564 U.S. at 620. Any

claim alleging Monsanto had a duty to redesign Roundup is therefore barred by impossibility preemption.

**II. Plaintiff Cannot Substantiate Any Other Claim Under Mississippi Law.**

The MPLA recognizes only two theories other than failure to warn or design defect: express warranty, Miss. Code. § 11-1-63(A)(i)(4), and manufacturing defect, *id.* § 11-1-63(A)(i)(4). Plaintiff cannot substantiate an express warranty claim because he has identified no affirmative, false statement by Monsanto on which he relied. And his negligence and implied warranty claims are not recognized as independent theories under the MPLA.

**A. Plaintiff Lacks Evidence In Support Of His Express Warranty Claim.**

To prove an express warranty claim under the MPLA, a plaintiff bears the burden of showing the "product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product," rendering the product "unreasonably dangerous" and "proximately caus[ing]" his injuries. Miss. Code. § 11-1-63(A)(i)(4), (ii), (iii). Plaintiff cannot meet that burden because he has identified no false "express factual representations" by Monsanto that led him "to use" Roundup.

To the contrary, Plaintiff testified that he "elect[ed] to use the product," *id.*, because as a child his grandfather instructed him to use, and he continued to use the product because it was what his "grandfather used" and it "worked." Ex. 1, Shedd Dep. Tr. 48:19–24; *see id.* at 47:11–51:1. He testified that he had "never seen . . . a Roundup commercial"—other than lawyer advertising. Ex. 1, Shedd Dep. Tr. 48:18. He never "spoke[] to anybody who works for" Monsanto. Ex. 1, Shedd Dep. Tr. 81:9–11. And he has identified no other statement he saw attributable to Monsanto he alleges to be false.

Because Plaintiff "has not presented any evidence that [Monsanto] made an express representation to him about" Roundup, nor "any evidence that [he] relied on any information from" Monsanto, summary judgment is warranted on this claim. *McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 848 (S.D. Miss. 2010).

### B. The Mississippi Product Liability Act Abrogates Plaintiff's Negligence And Implied Warranty Theories.

Plaintiff cannot succeed on a claim for failure-to-warn, design defect, or express warranty. And he alleges no claim for manufacturing defect. The MPLA permits Plaintiff to proceed on no other theory, so his negligence (Count III) and implied warranty (Count IV) theories fail. The statute provides that a "in any action for damages caused by a product . . . except for commercial damage to the product itself . . . [t]he manufacturer, designer or seller of the product shall not be liable if the claimant does not prove" one of the theories enumerated in the act. Miss. Code. § 11-1-63(a); *see also id.* § 11-1-63(a)(i)(1) (manufacturing defect); *id.* § 11-1-63(a)(i)(2) (failure to warn); *id.* § 11-1-63(a)(i)(3) (design defect); *id.* § 11-1-63(a)(i)(4) (express warranty). Monsanto is a manufacturer and this case is an "action for damages caused by a product." And, as Mississippi's intermediate appellate court has recently explained, "[a]ll products liability claims in this State are governed by the MPLA." *McGilberry v. SVP Sewing Brands, LLC*, --- So.3d ----, 2026 WL 2320425, at *3 (Miss. Ct. App. Aug. 11, 2026).

When the MPLA applies, it supplies "the exclusive remedy." *Elliott* 181 So. 3d at 268 (Miss. 2015). And Mississippi's legislature specifically amended the MPLA to specify that its reach extends to "any action based on a theory of strict liability in tort, *negligence, or breach of implied warranty*." 2014 Miss. Laws Ch. 383 § 1 (emphasis added) (codified at Miss. Code § 11-1-63(a)). In light of that clear, statutory rule, there is no colorable argument that Plaintiff can assert a negligence or implied warranty claim independent of his claims under the MPLA for failure to warn, design defect, and express warranty. Judgment on these claims should therefore be granted to Monsanto. *See, e.g.*, *Knoth v. Apollo Endosurgery US, Inc.*, 425 F. Supp. 3d 678, 688 (S.D. Miss. 2019) (to the extent negligence claim was "duplicative" of MPLA theory, it would be dismissed as duplicative and to the extent negligence claim "attempt[ed] to impose liability on other ground" it would be dismissed for failing to state claim"); *Nelson*, 553 F. Supp. 3d at 349 (Because all other claims were outside scope of "the MPLA, the Court [would] address only the remaining failure to warn and design defect claims").

## **CONCLUSION**

Summary judgment should be granted in full to Monsanto.

Dated: September 2, 2026

Respectfully submitted,

By: */s/ Anthony R. Martinez*
Anthony R. Martinez
Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 2, 2026, the foregoing document was filed and served on all counsel of record via the Court's CM/ECF system.

*/s/ Anthony R. Martinez*
*Anthony R. Martinez*