**A WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**SHOOK, HARDY & BACON LLP**
Anthony R. Martinez (*pro hac vice*)
(amartinez@shb.com)
2555 Grand Blvd
Kansas City, MO 64108
Tel: 816-474-6550 | Fax: 816-421-5547

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Abel v. Monsanto Co.*<br>3:21-cv-7124-VC | **DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing:**<br>Date: November 16, 2026<br>Time: 1:00 PM<br>Place: San Francisco Courthouse, Courtroom 3 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 16, 2026, at 1:00pm, in Courtroom 3 of the U.S. District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Supplemental Motion for Summary Judgment. Monsanto seeks an order granting summary judgment in its favor on all claims brought by Plaintiff Augustus Abel, which are preempted by federal law and unsupported by substantial evidence.

Dated: September 2, 2026

Respectfully submitted,

**SHOOK, HARDY & BACON, LLP**

By: */s/ Anthony R. Martinez*
Anthony R. Martinez
*Counsel for Defendant Monsanto Company*

## TABLE OF CONTENTS


Background ..... 3

A. Congress Charged EPA With Comprehensive Regulatory Authority Over Pesticides. ..... 3

B. EPA Has Long Concluded Roundup Does Not Cause Cancer And Approved It For Sale. ..... 4

C. Plaintiff Sues Monsanto, Alleging Roundup Caused Decedent's Cancer. ..... 5

Legal Standard ..... 5

Argument ..... 6

I. Plaintiff Has No Claims That Survive Durnell. ..... 6

A. *Durnell* Establishes That FIFRA Expressly Preempts Any Claim Predicated On A Failure-to-Warn. ..... 6

B. Plaintiff Cannot Avoid *Durnell* By Pivoting To A Design Defect Theory. ..... 9

II. Plaintiff Cannot Substantiate Any Other Claim Under Ohio Law. ..... 13

Conclusion ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Yamaha Motor Corp., U.S.A.*,
17 N.E.3d 654 (Ohio App. 2014)....11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....5

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005)....7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....5

*Curl v. Volkswagen of Am., Inc.*,
871 N.E.2d 1141 (Ohio 2007)....14

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000)....6

*Hardeman v. Monsanto Co.*,
No. 16-cv-00525-VC (Mar. 27, 2019)....8

*Huffman v. Electrolux Home Prods., Inc.*,
129 F. Supp. 3d 529 (N.D. Ohio 2015)....11

*Hughes v. Oklahoma*,
441 U.S. 322 (1979)....7

*Jacobs v. E.I. du Pont de Nemours & Co.*,
67 F.3d 1219 (6th Cir.1995)....10

*Kelley v. Insys Therapeutics, Inc.*,
No. 3:18CV1774, 2019 WL 329600 (N.D. Ohio Jan. 25, 2019)....14

*Kurns v. R.R. Friction Prods. Corp.*,
565 U.S. 625 (2012)....6

*Lasley v. Nguyen*,
876 N.E.2d 1274 (Ohio App. 2007)....11

*Makoski v. Zimmer Holdings, Inc.*,
538 F. Supp. 3d 757 (N.D. Ohio 2021)....14

*McCarthy v. Lee*,
230 N.E.3d 1131 (Ohio 2023)....5

*McConnell v. KLS Martin LP*,
560 F. Supp. 3d 1084 (N.D. Ohio 2021)....13

*McGrath v. Gen. Motors Corp.*,
26 F. App'x 506 (6th Cir. 2002)....10

*McManus v. Smith & Nephew, Inc.*,
No. 3:19-cv-066, 2020 WL 127702 (S.D. Ohio Jan. 10, 2020)....13

*Monsanto Co. v. Durnell*,
146 S. Ct. 2001 (2026).... *passim*

*Mut. Pharm. Co. v. Bartlett*,
570 U.S. 472 (2013)....2, 6, 12

*Newell Rubbermaid, Inc. v. Raymond Corp.*,
676 F.3d 521 (6th Cir. 2012)....10

*Parker v. ACE Hardware Corp.*,
104 N.E.3d 298 (Ohio App. 2018)....13

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011)....3, 12

*In re Roundup Prods. Liab. Litig.*,
No. 16-md-2741, 2019 WL 3219360 (N.D. Cal. July 12, 2019)....8

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984)....3

*Trejo v. Johnson & Johnson*,
13 Cal.App.5th 110 (2017)....12

*Williams v. Chrysler First Fin. Servs. Co.*,
97 N.E.3d 1123 (Ohio App. 2017)....11

*Yates v. Orther-McNeil-Janssen Pharms., Inc.*,
808 F.3d 281 (6th Cir. 2015)....12

*Zang v. Cones*,
34 N.E.3d 955 (Ohio App. 2015)....10

**Statutes & Regulations**

7 U.S.C.

§ 136 *et seq.*....3, 6

§ 136a(1)(D)....3

§ 136a(a)....3

§ 136j(a)(1)(B) ....................................................................................................4

§ 136j(a)(1)(C) ....................................................................................................2, 4, 12

§ 136*l* ....................................................................................................4

§ 136v(b) ....................................................................................................3, 6, 7

Ohio Rev. Code.

§ 1345.12 ....................................................................................................14

§ 2307.71(B) ....................................................................................................1, 13

§ 2307.72(A)(2) ....................................................................................................10, 11

§ 2307.73(A) ....................................................................................................1, 9, 13

§ 2307.74 ....................................................................................................13

§ 2307.75 .................................................................................................... *passim*

§ 2307.76 ....................................................................................................13

§ 2307.77 ....................................................................................................13

40 C.F.R.

§ 152.3 ....................................................................................................3

§ 152.112(e) ....................................................................................................3

§ 152.44 ....................................................................................................12

§ 152.44(a) ....................................................................................................2, 3, 4

§ 156.70(c) ....................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 56 ....................................................................................................5, 10

## INTRODUCTION

Plaintiff Augustus Abel pled five Ohio law claims, all alleging in substance that glyphosate—the active ingredient in Roundup—caused Decedent Sandra Abel's cancer and Monsanto is liable for failing to warn of that risk. Those claims cannot survive the United States Supreme Court's recent decision in *Monsanto Co. v. Durnell*, 146 S. Ct. 2001 (2026). Any failure-to-warn theory is now indisputably preempted. And neither Ohio law nor the evidentiary record Plaintiff has assembled allows any workaround. The Court should grant summary judgment in full to Monsanto.

In *Durnell*, the Supreme Court held that any "failure-to-warn claim" alleging Roundup causes cancer "is expressly preempted" by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). *Id.* at 2012. The "heart of" such a claim, the Court determined, "is that Monsanto should have included a cancer warning on its Roundup labels." *Id.* at 2010. But EPA has long concluded "that glyphosate is not likely to cause cancer in humans" and "has not required glyphosate-based pesticides like Roundup to include a cancer warning on their labels." *Id.* at 2009. To the contrary, "federal law requires Monsanto to sell Roundup with the label that EPA approved," which is "the label without a cancer warning." *Id.* at 2011. Thus, federal law "expressly preempts *any state tort claim* that would require a pesticide manufacturer to use a label" that differs from "the EPA-approved label." *Id.* at 2014 (emphasis added).

Ohio's legislature has determined that there shall be four theories of product liability, which are defined by statute: manufacturing defect, design defect, failure to warn, and breach of express warranty. Ohio Rev. Code § 2307.73(A)(1). This statutory scheme—the Ohio Products Liability Act—is "intended to abrogate all common law product liability claims or causes of action." *Id.* § 2307.71(B). Notwithstanding, Plaintiff pled five tort claims, all restating in different terms that Monsanto should have warned of Roundup's purported cancer risk. Plaintiff's overt failure-to-warn claim is plainly foreclosed by *Durnell*. Plaintiff's negligence claim says Monsanto breached a duty to "adequately and correctly warn the Plaintiff . . . of the dangers of Roundup." Compl. ¶ 164(f). Plaintiff's design defect claim alleges that Roundup "was more dangerous than an ordinary consumer would expect" and Monsanto "downplayed its suspected, probable, and established health risks." *Id.* ¶¶ 180, 189. Plaintiff's implied warranty claim alleges Monsanto "represented . . . that Roundup

was safe and of merchantable quality." *Id.* ¶ 226. And his consumer protection claim is based on the theory that Monsanto can be held liable for "failing to disclose the serious and dangerous injuries related to the use of Roundup." *Id.* ¶ 240.

Ohio law does not recognize Plaintiff's negligence, implied warranty, and consumer protection claims as independent claims. And Plaintiff cannot salvage this case by pointing to his design defect theory. The only way a plaintiff can prove a design defect under the Ohio Product Liability Act is by showing "a practical and technically feasible alternative design or formulation . . . that would have prevented the harm for which the claimant seeks to recover." Ohio Rev. Code. § 2307.75(F). And in cases like this one—involving complex scientific and technical questions of causation and herbicidal design—Ohio law requires plaintiffs to make those showings through expert testimony. Plaintiff, whose evidence is focused entirely on failure-to-warn theories, has neither pled the existence of an alternative design for Roundup nor pointed to any evidence, expert or otherwise, capable of meeting that burden under Ohio law.

Even setting aside Plaintiff's complete dearth of proof that Monsanto could or should have reformulated Roundup to adopt an alternative design, that claim still faces a preemption problem. Although the Supreme Court's principal focus in *Durnell* was express preemption and the labeling requirements that flow from registration under FIFRA, the Court was careful to point out that registration carries "other consequences," including that "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition described at registration." 146 S. Ct. at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(C)). The same regulation on which *Durnell* based its conclusion that "federal law requires Monsanto to sell Roundup with the label that EPA approved," 146 S. Ct. at 2011, applies equally to a pesticide's composition, *see* 40 C.F.R. § 152.44(a). That means it would be unlawful for Monsanto to sell Roundup with a changed formulation without first obtaining EPA's approval. As the Supreme Court's impossibility preemption cases make clear, when a regulated party cannot comply with a state-law duty absent prior agency approval, the state-law duty is preempted as a matter of impossibility. *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 483–84 (2013) ("redesign" of drug "was not possible" where, if manufacturer were "to change the composition of its [drug], the altered chemical would be a new drug that would require its own NDA"); *see also*

*PLIVA, Inc. v. Mensing*, 564 U.S. 604, 620 (2011) ("The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it."). Because Monsanto could not unilaterally comply with a state-law duty to redesign Roundup, it is preempted.

Plaintiff cannot substantiate any claim that would not be preempted under *Durnell*. Summary judgment should therefore be granted in full to Monsanto.

## BACKGROUND

### A. Congress Charged EPA With Comprehensive Regulatory Authority Over Pesticides.

FIFRA is "a comprehensive regulatory statute" through which Congress charged EPA with regulating all aspects of pesticides. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 991 (1984); *see* 7 U.S.C. §§ 136 *et seq*. FIFRA contains an express preemption provision, titled "Uniformity" by Congress, that preempts "any" state-law "requirements for labeling or packaging in addition to or different from those required under" FIFRA. 7 U.S.C. § 136v(b). That clause protects "EPA's comprehensive and exclusive authority in registering pesticides and approving labels." *Durnell,* 146 S. Ct. at 2008.

Before any pesticide may be sold in the United States, it must first be approved by EPA. 7 U.S.C. § 136a(a). By law, EPA cannot register a pesticide unless it "conclude[s] that the pesticide will not generally cause unreasonable adverse effects on human health." *Durnell*, 146 S. Ct. at 2006 (citations omitted). In making this determination, EPA considers "the complete formula of the pesticide," including both active and inert ingredients. 7 U.S.C. § 136a(1)(D); *see also* 40 C.F.R. §§ 152.3, 152.112(e). EPA must also determine that the pesticide's "labeling complies with FIFRA's many specific requirements," *Durnell*, 146 S. Ct. at 2014 (citations omitted), including that the "label includes all warnings necessary and adequate to protect human health," *id.* at 2007.

Any precautionary or human hazard labeling—such as a cancer warning—must be reviewed and approved by EPA. *Id.* at 2006. Once EPA approves a pesticide's label, any human health warnings or cautionary statements on the label can only be changed with the agency's approval. *Id.* at 2010 & n.5; *see also* 40 C.F.R. §§ 152.44(a); 156.70(c). Accordingly, "[a]fter EPA approves a

pesticide's label at registration, manufacturers are legally required to use that label." *Durnell*, 146 S. Ct. at 2010.

The Supreme Court has explained that EPA's approval of a pesticide has other consequences as well. One "consequence[]" of Roundup's "[r]egistration" is that manufacturers and sellers are prohibited from making "any claims" regarding Roundup that "substantially differ from" those approved by EPA during registration. *Id.* at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(B)). Further, once EPA registers a pesticide, "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition described at registration." *Id.* (quoting 7 U.S.C. § 136j(a)(1)(C)); *see also* 40 C.F.R. § 152.44(a) ("[A]ny modification in the composition . . . of a registered product must be submitted with an application for amended registration."). A person who violates any one of these obligations is subject to civil and criminal penalties. 7 U.S.C. § 136*l*.

### B. EPA Has Long Concluded Roundup Does Not Cause Cancer And Approved It For Sale.

EPA first approved glyphosate-based herbicides ("GBHs") for sale in 1974. *Durnell*, 146 S. Ct. at 2008. Since then, Monsanto has manufactured and sold a variety of GBHs, including many under the brand name Roundup. For more than three decades, "EPA has repeatedly re-evaluated glyphosate and has repeatedly concluded that glyphosate is not likely to cause cancer." *Id*. In 1991, for example, "EPA classified glyphosate as unlikely to cause cancer in humans," and in "1993, EPA reiterated that conclusion and reregistered glyphosate products without a cancer warning." *Id.* "In 2017 and 2019, after the International Agency for Research on Cancer classified glyphosate as a probable carcinogen, EPA re-examined the issue but still adhered to its longstanding position on glyphosate"—namely, that it does not cause cancer. *Id*. at 2008–09. And EPA's view is widely shared by expert, scientific agencies: "[M]any other regulatory bodies around the world . . . have likewise concluded that glyphosate is not carcinogenic, including regulators in Canada, Australia, Japan, and the European Union." *Id.* at 2009.

In line with its scientific determination that glyphosate does not cause cancer, EPA has repeatedly approved Monsanto's Roundup labels, which do not contain a cancer warning. *Id*. And EPA continues to register glyphosate-based pesticide formulations and approve glyphosate product

labels—all without cancer warnings. *See Chemical Name: Glyphosate*, EPA, https://perma.cc/N8KY-7KJ5.

**C. Plaintiff Sues Monsanto, Alleging Roundup Caused Decedent's Cancer.**

Plaintiff Augustus Abel testified that Decedent Sandra Abel used Roundup at two residence in Ohio from approximately 1995 until 2018. Ex. 1, Abel Dep. Tr. 66:6–67:1, 72:24–73:2, 85:1–87:2. In 2020, Mrs. Abel was diagnosed with NHL. Ex. 1, Abel Dep. Tr. 127:3–17. Unfortunately, Mrs. Abel passed away in 2021. Ex. 1, Abel Dep. Tr. 30:6–7.

Plaintiff brings five Ohio law claims against Monsanto: Negligence (Count I), Compl. ¶¶ 161–174; Design Defect (Count II), *id.* ¶¶ 175–199; Failure to Warn (Count III), *id.* ¶¶ 200–221; Breach of Implied Warranties (Count IV), *id.* ¶¶ 222–233; and Violation of the Ohio Consumer Sales Practices Act (Count V), *id.* ¶¶ 234–243.[1]

In response to this Court's June 30, 2026 Order, Monsanto conferred with counsel for Plaintiff Abel. Plaintiff Abel concedes that "label-based claims are not actionable under *Durnell*" but contends, without identifying those claims, that he has claims that are not preempted.

## LEGAL STANDARD

A court "shall grant" summary judgment when the movant establishes that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[1] The Complaint also contains a claim for loss of consortium. Compl. ¶¶ 244–47. In Ohio, "a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury." *McCarthy v. Lee*, 230 N.E.3d 1131, 1135 (Ohio 2023). It follows that "when a principal claim fails for substantive reasons, the derivative loss-of-consortium claim fails as well." *Id.* Monsanto therefore does not separately address this claim, which fails alongside Plaintiff's principal claims.

**ARGUMENT**

The Supreme Court's decision in *Durnell* establishes that federal law—the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 *et seq*.—preempts all of Plaintiff's claims against Monsanto. And any workaround Plaintiff might seek to employ neither escapes preemption nor is triable on the evidentiary record Plaintiff has assembled.

**I. Plaintiff Has No Claims That Survive Durnell.**

Preemption of state law "occurs through the direct operation of the Supremacy Clause" of the United States Constitution, *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630 (2012) (quotation marks omitted), so "state laws that conflict with federal law are without effect," *Bartlett*, 570 U.S. at 479–80 (quotation marks omitted). Congress may expressly preempt state law by passing a preemption provision in a statute, *see, e.g., Kurns*, 565 U.S. at 630, and federal law may additionally impliedly preempt state law where there is a conflict between the two, *see, e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000). The presence of an "express pre-emption provision[] does not bar the ordinary working of conflict pre-emption principles." *Id.*

**A. *Durnell* Establishes That FIFRA Expressly Preempts Any Claim Predicated On A Failure-to-Warn.**

To achieve national "uniformity" in pesticide labeling, Congress expressly preempted state laws that "impose . . . any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." 7 U.S.C. § 136v(b). That express preemption provision protects "EPA's comprehensive and exclusive authority in registering pesticides and approving labels." *Durnell*, 146 S. Ct. at 2008.

In *Durnell*, the Supreme Court held that a "failure-to-warn claim" alleging Roundup causes cancer "is expressly preempted." *Id.* at 2012. The "heart of" such a claim, the Court concluded, "is that Monsanto should have included a cancer warning on its Roundup labels." *Id.* at 2010. But "in accordance with EPA's view that glyphosate is not likely to cause cancer in humans"—a conclusion EPA has held across "more than three decades"—"EPA has not required glyphosate-based pesticides like Roundup to include a cancer warning on their labels." *Id.* at 2009. A failure-to-warn claim

therefore imposes a state-law requirement "in addition to or different from those required under [FIFRA]," and triggers express preemption. 7 U.S.C. § 136v(b).

*Durnell* also confirms that a claim's substance, not what a plaintiff happens to call it, controls. FIFRA's Uniformity provision preempts "*any state tort claim* that would require a pesticide manufacturer to use a label" other than "the EPA-approved label." *Durnell*, 146 S. Ct. at 2014 (emphasis added). That conclusion builds on prior precedent, which had recognized that a claim is subject to express preemption under FIFRA if it "set[s] a standard for a product's labeling that the . . . label is alleged to have violated" such as "by containing false statements and inadequate warnings." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 446 (2005). Indeed, *Bates* held that disguised "failure-to-warn claims," *id.*, which had been pled as "claims for negligent testing and defective design and manufacture," *id.* at 457 (Thomas, J., concurring in part), qualified as "requirements for labeling," within the meaning of FIFRA's express preemption provision. 7 U.S.C. § 136v(b). And the Supreme Court had previously explained that when conducting a federal preemption analysis, a court "is not bound by the name, description or characterization given it by the legislature or the courts of the State, but will determine for itself the practical impact of the law." *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979) (citation modified). Together, these precedents leave no doubt that *any* claim that would purport to require Monsanto to warn that Roundup causes cancer is preempted.

Plaintiff's claims—although couched in various Ohio tort duties—all boil down to the preempted theory that Monsanto is liable for failing to include a cancer warning on Roundup's label. Plaintiff's allegations confirm as much:

- Plaintiff's **Negligence** claim alleges that Monsanto is liable for "[f]ailing to provide adequate cautions and warnings to protect the health of [Roundup] users" and "negligently selling Roundup with a false and misleading label." Compl. ¶¶ 164(h), (r).
- Plaintiff's **Design Defect** claim alleges that Roundup "was more dangerous than an ordinary consumer would expect" and Monsanto "downplayed its suspected, probable, and established health risks." *Id.* ¶¶ 180, 189.
- Plaintiff's **Failure-to-Warn** claim alleges that Monsanto is liable because "[a]t the time of manufacture" it "could have provided [] warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing

products" but instead "Roundup did not contain a warning or caution statement . . . in violation of [FIFRA]." *Id.* ¶¶ 203, 205.

- Plaintiff's **Implied Warranty** claim alleges Monsanto "impliedly represented . . . that Roundup was safe and of merchantable quality" and that was "misleading[] and inaccurate in that Roundup was unsafe." *Id.* ¶ 226, 227.
- Plaintiff's **Ohio Consumer Sales Practices Act** claim alleges that Monsanto is liable for "omissions of material fact in connection with the marketing, promotion, and sale of Roundup" including "failing to disclose the serious and dangerous injuries related to the use of Roundup." *Id.* ¶¶ 239, 240."

Plaintiff's problems extend further than failures of pleading—he has an evidence problem. Similar to other plaintiffs in this MDL, Plaintiff has not developed evidence capable of supporting any theory other than failure to warn. And Plaintiff's failure-to-warn theories are now indisputably preempted.

This Court's decision in *Hardeman* is instructive. Although *Hardeman* involved putative California-law claims for strict-liability failure-to-warn, negligence, and design defect (same as Count I–III of Plaintiff's Complaint), Monsanto's alleged negligence was "not using reasonable care to warn about Roundup's NHL risk." Verdict Form, *Hardeman v. Monsanto Co.*, No. 16-cv-00525-VC (Mar. 27, 2019) (ECF 288). And after analyzing the issue at length, this Court also explained that the only "design defect" the evidence could sustain was that Roundup had been "sold without a warning." *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741, 2019 WL 3219360, at *3 (N.D. Cal. July 12, 2019) (emphasis added). When "the defect [is] the absence of a warning," this Court correctly observed, "the design defect claim [] merge[s] into the failure-to-warn claim." *Id.* at *2. So, notwithstanding the various ways that Mr. Hardeman styled the tort duties he pled, his whole case boiled down to three different ways of claiming that Monsanto should have warned him of Roundup's purported cancer risk. It is now established that such a claim is preempted.

This case is no different. Plaintiff alleges three of the same claims as the plaintiff in *Hardeman* (Counts I–III). And as to all of Plaintiff's claims, the evidence goes no further than a failure to warn theory. So Plaintiff's claims are preempted. After all, *Durnell* establishes that all failure-to-warn claims are preempted. It held that, as a matter of law, "[f]ailure-to-warn claims . . . are premised on common-law rules that qualify as labeling requirements." 146 S. Ct. at 2010 (citation omitted). The Court did not say "some failure-to-warn claims." It did not suggest—despite

the *Durnell* plaintiff's considerable efforts to argue otherwise—that there could be a residual, non-preempted component of a failure-to-warn claim. *See* Resp't.'s Br. in Opp'n, *Monsanto Co. v. Durnell*, No. 24-1068, 2025 WL 1665996 (U.S. June 8, 2025). It addressed failure-to-warn claims as a whole and held they are preempted. That is enough to end this case.

**B. Plaintiff Cannot Avoid *Durnell* By Pivoting To A Design Defect Theory.**

Plaintiff cannot save this case by arguing that his claims would impose liability for Roundup's formulation or design, rather than a lack of warning. Under Ohio law, a manufacturer is "only" liable for a product's "design or formulation" if the plaintiff demonstrates—among other things—"a practical and technically feasible alternative design or formulation . . . that would have prevented the harm for which the claimant seeks to recover." Ohio Rev. Code. §§ 2307.73(A), 2307.75(F). The manufacturer breaches a tort duty by unreasonably failing to adopt the safer design. Such a theory fails on the evidence. Plaintiff has not identified—much less substantiated through expert evidence—a safer alternative design for Roundup that would have avoided Decedent's injuries. That theory is also preempted. If Plaintiff proposes that Roundup should have been "redesigned" to bear a cancer warning, that theory is expressly preempted by FIFRA's Uniformity provision. *See supra*. If Plaintiff's theory is that Monsanto should have altered Roundup's formulation, that theory is preempted as a matter of impossibility for reasons that are confirmed by *Durnell*.

(a) Plaintiff Lacks Evidence Of A Feasible Alternative Design For Roundup, Which Ohio Law Requires To Sustain Any Claim Alleging Design Defect.

The Ohio Products Liability Act provides the "only" theories on which a manufacturer can be held liable in a product liability action. Ohio Rev. Code. § 2307.73(A). One of those theories is that the product was "defective in design or formulation as described in section 2307.75." *Id.* § 2307.73(A)(1). Under that section, "a product is defective in design or formulation if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation . . . exceeded the benefits associated with that design or formulation." *Id.* § 2307.75(A). The statute sets for various factors that guide that inquiry. In addition, the inquiry is "Subject to division[] . . . (F)," which provides that:

A product is not defective in design or formulation if, at the time the product left the control of its manufacturer, a practical and technically feasible alternative design or formulation was not available that would have prevented the harm for which the claimant seeks to recover compensatory damages without substantially impairing the usefulness or intended purpose of the product. *Id.* § 2307.75(F). The Plaintiff bears the burden of showing that Division (F) does not apply and "a manufacturer is not liable for a statutory design defect claim brought pursuant to O.R.C. § 2307.75 unless the plaintiff presents proof of an alternative feasible design." *McGrath v. Gen. Motors Corp.*, 26 F. App'x 506, 510 (6th Cir. 2002); *accord, e.g.*, *Jacobs v. E.I. du Pont de Nemours & Co*., 67 F.3d 1219, 1242 (6th Cir.1995); *Zang v. Cones*, 34 N.E.3d 955, 961 (Ohio App. 2015). To discharge their burden proving a safer alternative design, a plaintiff must adduce "evidence about the feasibility of the proposed alternative design," and "explain how its proposed alternative design" would prevent their harm without "impairing" the product. *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 534 (6th Cir. 2012); Ohio Rev. Code. § 2307.75(F). A plaintiff also bears the burden of showing the manufacturer's failure to adopt an alternative "was a proximate cause" of their injuries. Ohio Rev. Code. § 2307.72(A)(2).

Plaintiff has presented no evidence—expert or otherwise—of any specific "alternative design" for Roundup. His complaint does not identify such a design. *See* Compl. ¶¶ 175–199. And, critically, Plaintiff has disclosed no expert who will offer an opinion that Roundup could have been redesigned in a specific manner to avoid Decedent's cancer. Nor has he disclosed an expert who will offer an opinion that a specific alternative design was feasible, met the same needs as Roundup, was cost effective, and did not create adverse effects of its own. Ohio Rev. Code § 2307.75(F). Because Plaintiff lacks competent evidence of a specific alternative design satisfying those factors, Monsanto is entitled to summary judgment. *See Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 534 (6th Cir. 2012) (noting "the record lacks any evidence about the feasibility of the proposed alternative design" and determining that failure "alone is sufficient to warrant summary judgment"); Fed. R. Civ. P. 56(a).

Under Ohio law, expert testimony is the only permissible way to make the required showings: "in all but the most 'simple' of cases," '"expert witnesses for the plaintiff must establish . . . that

there was a practical and technically feasible alternative design.'" *Huffman v. Electrolux Home Prods., Inc.*, 129 F. Supp. 3d 529, 541 (N.D. Ohio 2015) (quoting *Adkins v. Yamaha Motor Corp., U.S.A.*, 17 N.E.3d 654, 661 & n. 2 (Ohio App. 2014)). This is far from "the most simple of cases." It presents a theory of liability centered on the allegedly carcinogenic qualities of a synthetic chemical herbicide, the features of alternatives to that herbicide, the tradeoffs involved in herbicide design, and their causal connection to an individual's injuries, which plainly "is not within the knowledge of lay witnesses or members of the jury." *Lasley v. Nguyen*, 876 N.E.2d 1274, 1278 (Ohio App. 2007). But Plaintiff has not offered alternative design experts. The expert record in this case leaves no way for Plaintiff to meet his burden.

On top of that—and dispositive on its own—Plaintiff has not drawn a causal connection between Monsanto's failure to adopt a specific alternative and Decedent's injuries. Plaintiff bears the burden of proving Monsanto's failure to comply with a duty to redesign Roundup "was a proximate cause" of Decedent's injuries, Ohio Rev. Code. § 2307.72(A)(2), which means proving had Monsanto adopted their proposed design, their cancers would have been avoided. *See Williams v. Chrysler First Fin. Servs. Co.*, 97 N.E.3d 1123, 1128 (Ohio App. 2017) (proximate cause of an event one "without which the event would not have occurred"). Plaintiff disclosed two case-specific experts—Dr. Sol Bobst and Dr. Khaleel Ashraf. Ex. 2, Plaintiff's June 7, 2024 Expert Disclosure at 4. Dr. Bobst's opinion is only that "glyphosate poses a cancer hazard in humans" and Decedent's "lifetime cumulative exposure exceeded what would have been considered a safe amount of glyphosate exposure." Ex. 3, Bobst Rpt. at 11. Dr. Ashraf's opinion is that "use of Roundup was more likely than not a substantial cause of her development and diagnosis of NHL." Ex. 4, Ashraf Rpt. at 27. No case-specific expert has evaluated any proposed alternative design for Roundup and opined that had Decedent utilized that specific alternative design, she would not have developed NHL. Plaintiff's design defect claim therefore fails on the evidence.

(b) *Durnell* Confirms That FIFRA Impliedly Preempts Any Claim That Would Require Monsanto To Reformulate Roundup.

Evidentiary failures aside, any theory that would have required Monsanto to redesign Roundup is also preempted as a matter of impossibility. *Durnell* establishes that a "consequence[]"

of Roundup's "[r]egistration" is that "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition described at registration." *Durnell*, 146 S. Ct. at 2007 n.1 (quoting 7 U.S.C. § 136j(a)(1)(C)). And the same federal regulation that *Durnell* concluded to mean "federal law requires Monsanto to sell Roundup with the label that EPA approved" also applies to Roundup's composition. *Id.* at 2011; *see* 40 C.F.R. § 152.44 ("[A]ny modification in the composition, labeling, or packaging of a registered product must be submitted with an application for amended registration."). Under *Durnell*'s reasoning, then, just as federal law "require[s] a manufacturer to use the EPA-approved label and prohibit[s] the manufacturer from unilaterally changing the label," *Durnell*, 146 S. Ct. at 2014, federal law requires Monsanto to use the EPA approved formulation and prohibits Monsanto from unilaterally changing the formulation.

Under bedrock implied preemption principles, a state-law duty to do what federal law prohibits Monsanto from doing unilaterally—change Roundup's formulation—is preempted as a matter of impossibility. *See Mut. Pharm. Co. v. Bartlett,* 570 U.S. 472, 486 (2013) ("When federal law forbids an action that state law requires, the state law is without effect.") (citation omitted). As the Supreme Court has explained, "[t]he question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." *PLIVA*, 564 U.S. at 620.

In the pharmaceutical context, the Supreme Court has held that "redesign" is "not possible" as a matter of federal law where the manufacturer "cannot legally make [the drug] in another composition" without receiving approval for such a new drug from the FDA. *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 484 (2013); *see also id*. at 490 ("hold[ing]" that "state law design-defect claims" are preempted when they require a manufacturer to "alter[] [a drug's] composition," but federal law "prohibit[s] manufacturers from unilaterally altering drug composition"); *see also, e.g.*, *Yates v. Orther-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 298 (6th Cir. 2015) (concluding design-defect claim against brand-name drug manufacturers "clearly preempted" under *Bartlett*) *Trejo v. Johnson & Johnson*, 13 Cal.App.5th 110, 147 (2017) (similar). *Durnell* establishes that this is exactly the situation facing Monsanto. Since federal law prohibited Monsanto from marketing a version of Roundup with a different composition without prior EPA approval, Monsanto could not "independently do" what Plaintiff alleges state law requires of it. *PLIVA*, 564 U.S. at 620. Any

claim attacking Roundup's "design or formulation," Ohio Rev. Code. § 2307.75(A), is therefore barred by impossibility preemption.

### II. Plaintiff Cannot Substantiate Any Other Claim Under Ohio Law.

The Ohio Products Liability Act does not permit Plaintiff to proceed on any other theory. The statute provides that a "manufacturer is subject to liability for compensatory damages based on a product liability claim *only* if the claimant establishes" one of the theories enumerated in the act. Ohio Rev. Code. § 2307.73(A)(1); *see also id.* § 2307.74 (manufacturing defect); *id.* § 2307.75 (design defect); *id.* § 2307.76 (failure to warn); *id.* § 2307.77 (express warranty). This case involves a "product liability claim," which the statute broadly defines as "a claim or cause of action" to recover "damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of" a laundry list of product defects. *Id.* § 2307.71(A)(13). The act is "intended to abrogate all common law product liability claims or causes of action." *Id.* § 2307.71(B). Applying the plain text of the statute, "courts routinely dismiss 'non-statutory product-liability claims brought under Ohio law.'" *McConnell v. KLS Martin LP*, 560 F. Supp. 3d 1084, 1092 (N.D. Ohio 2021) (citing *McManus v. Smith & Nephew, Inc.*, No. 3:19-cv-066, 2020 WL 127702, at *2 (S.D. Ohio Jan. 10, 2020) (collecting examples)).

Plaintiff's negligence claim is a common law claim based on allegations that Monsanto sold "a defective product" and "[a]ccordingly, the Ohio Products Liability Act abrogates the negligence claim." *Id.*; *see also, e.g.*, *Parker v. ACE Hardware Corp.*, 104 N.E.3d 298, (Ohio App. 2018) (claims for "negligence, negligent failure to warn, and negligent misrepresentation . . . are product liability claims" governed by OPLA). That same is true of Plaintiff's implied warranty claim, which alleges that Monsanto "breached" an implied warranty that Roundup was "safe and fit for its intended use" because Roundup was "defective, unsafe" and "caused Plaintiff to develop NHL." Compl. ¶¶ 229–232. "[A]s a matter of law, the Ohio Products Liability Act preempts implied warranty claims brought in tort," like Plaintiff's. *McConnell*, 560 F. Supp. 3d at 1092. And Plaintiff may not assert any implied warranty claim not sounding in tort against Monsanto because "Ohio continues to require privity as to contract claims," meaning parties "may assert a contract claim for

breach of implied warranty of merchantability . . . only against parties with whom they are in privity of contract." *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007). Plaintiff is not in privity with Monsanto. Plaintiff and Decedent purchased the Roundup Decedent used from various hardware and garden stores—not Monsanto. *See* Ex. 1, Abel Dep. Tr. 67:16–68:8; 76:18–20; 85:3–13.

Although not a "common law" claim, Plaintiff's Consumer Sales Practices Act claim fails for the same fundamental reason: the Ohio Products Liability Act is the exclusive remedy for product-liability personal injury claims like Plaintiff's. Ohio's legislature enacted the Consumer Sales Practices Act in order to provide redress for "economic harm to consumers." *Kelley v. Insys Therapeutics, Inc.*, No. 3:18CV1774, 2019 WL 329600, at *7 (N.D. Ohio Jan. 25, 2019) (citation omitted). Consistent with that limited scope, "the Consumer Sales Practices Act specifically excludes claims for personal injury." *Makoski v. Zimmer Holdings, Inc.*, 538 F. Supp. 3d 757, 763 (N.D. Ohio 2021). The statute's text provides that it "do[es] not apply to . . . [c]laims for personal injury or death." Ohio Rev. Code. § 1345.12. And when a personal injury attempts to state product liability claim under the statute, 'the Ohio Product Liability Act preempts [the] claims." *Makoski*, 538 F. Supp. 3d at 763.

At bottom, Plaintiff pleads only two theories recognized by Ohio law: first, that Monsanto is liable for failing to warn of Roundup's alleged carcinogenicity, and second that Monsanto should have adopted an alternative design for Roundup. Both claims are preempted and Plaintiff has developed no evidence sufficient to prove a design defect under Ohio law.

**CONCLUSION**

Summary judgment should be granted in full to Monsanto.

Dated: September 2, 2026

Respectfully submitted,

By: */s/ Anthony R. Martinez*
Anthony R. Martinez
Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 2, 2026, the foregoing document was filed and served on all counsel of record via the Court's CM/ECF system.

*/s/ Anthony R. Martinez*
*Anthony R. Martinez*