**SIMON GREENSTONE PANATIER, PC**
Shreedhar R. Patel (CA SBN #347278)
Charles E. Soechting, Jr. (TX SBN #24044333)
901 Main Street, Suite 5900
Dallas, TX 75202
Tel: (214) 276-7680
Fax: (214) 276-7699
spatel@sgptrial.com
csoechting@sgptrial.com

**WARD BLACK LAW**
Janet Ward Black (SC SBN#12869)
208 West Wendover Avenue
Greensboro, NC 27401
Tel: (336) 333-2244
jwblack@wardblacklaw.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION.<br><br>This document relates to:<br><br>*Howell v. Monsanto Co.*,<br>Case No.: 3:20-cv-07322-VC | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MONSANTO COMPANY'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**<br><br>Date: November 16, 2026<br>Time: 1:00 p.m.<br>Crtm: San Francisco Courthouse, Courtroom 3 |

# TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 1

A. Glyphosate-Based Roundup. .......... 1

B. Monsanto Promoted Roundup as Safe. ........**Error! Bookmark not defined.**

C. Howell's Use of Roundup and Resulting Cancer. .......... 6

LEGAL STANDARD .......... 7

ARGUMENT ..........**Error! Bookmark not defined.**

I. Plaintiff's Claims Are Not Expressly or Impliedly Preempted by FIFRA .......... 8

A. Durnell Preempted Only Label-Based Failure-to-Warn Claims. .........**Error! Bookmark not defined.**

B. FIFRA Does Not Expressly Preempt Plaintiff's Claims.**Error! Bookmark not defined.**

C. FIFRA Does Not Impliedly Preempt Plaintiff's Claims.**Error! Bookmark not defined.**

II. Monsanto Is Not Entitled To Judgment As a Matter of Law on Plaintiff's Design Defect Claim. .......... 17

A. Evidence of a Safer Alternative Design Is Not Required Under North Carolina Law. .......... 18

B. Plaintiff's Evidence Demonstrates the Existence of a Safer, Practical, Feasible and Reasonable Alternative. ..........**Error! Bookmark not defined.**

III. Plaintiff's Claims for Negligent Misrepresentation/Fraud and Implied Warranty Are Not Preempted and Survive Under North Carolina Law. .......... 22

A. Negligent Misrepresentation and/or Fraud...**Error! Bookmark not defined.**

B. Breach of Implied Warranty..........**Error! Bookmark not defined.**

CONCLUSION ..........**Error! Bookmark not defined.**

## TABLE OF AUTHORITIES

**Cases**

*Ambat v. City & County of San Francisco*, 757 F.3d 1017 (9th Cir. 2014) .... 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .... 7,8

*Anderson v. Monsanto Co.*, 719 S.W.3d 755 (Mo. Ct. App. 2025) .... 15

*Ansagay v. Dow Agrosciences LLC*, 153 F. Supp. 3d 1270 (D. Haw. 2015) .... 16

*Ascot Corp., LLC v. I&R Waterproofing, Inc.*, 286 N.C. App. 470 (2022) .... 24

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005) .... *in passim*

*Bluitt v. Wake Forest Univ. Baptist Med. Ctr.*, 259 N.C. App. 1 (2018) .... 19

*Burrell v. Bayer Corp.*, 918 F.3d 372 (4th Cir. 2019) .... 8

*Carson v. Monsanto Co.*, 72 F.4th 1261 (11th Cir. 2023) .... 10

*Covert v. Stryker Corp.*, No. 1:08CV447, 2009 U.S. Dist. LEXIS 68962 (M.D.N.C. Aug. 5, 2009) .... 8

*DeWitt v. Eveready Battery Co.*, 550 S.E.2d 511 (2001) .... 17, 19, 24

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119 (9th Cir. 2014) .... 8

*Giglio v. Monsanto Co.*, No. 15cv2279 BTM(NLS), 2016 U.S. Dist. LEXIS 57504 (S.D. Cal. Apr. 29, 2016) .... 13

*Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185 (1976) .... 23

*Hardeman v. Monsanto (In re Roundup Prods. Liab. Litig.)*, 2019 U.S. Dist. LEXIS 116638 (N.D. Cal. July 12, 2019) .... 15

## TABLE OF AUTHORITIES

**Cases**

*Higgins v. Monsanto Co.*, 862 F. Supp. 751 (N.D.N.Y. 1994) .......... 13

*Hogarty v. Orgill, Inc.*, 2026 U.S. Dist. LEXIS 124372 (M.D. Fla. June 5, 2026) .......... 13

*Holyfield v. Chevron U.S.A., Inc.*, 533 F. Supp. 3d 726 (E.D. Mo. 2021) .......... 16

*Indian Brand Farms, Inc. v. Novartis Crop Protection Inc.*, 617 F.3d 207 (3d Cir. 2010) .......... 22

*In re Roundup Prods. Liab. Litig.*, 364 F. Supp. 3d 1085 (N.D. Cal. 2019) .......... 15, 16

*Lescs v. William R. Hughes, Inc.*, 1999 U.S. App. LEXIS 475 (4th Cir. Jan. 14, 1999) .......... 12

*Lowe v. Sporicidin Int'l*, 47 F.3d 124 (4th Cir. 1995) .......... 12

*Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299 (2019) .......... 8

*Monsanto Co. v. Durnell*, 223 L.Ed.2d 553 (U.S. 2026) .......... 11

*Monsanto Co. v. Durnell*, 146 S. Ct. 2001 (2026) .......... *in passim*

*Nat. Res. Def. Council v. EPA*, 38 F.4th 34 (9th Cir. 2022) .......... 2

*N.Y. State Pesticide Coal., Inc. v. Jorling*, 874 F.2d 115 (2d Cir. 1989) .......... 22

*Pa. Nat'l Mut. Cas. Ins. Co. v. STIHL Inc.*, 2023 U.S. Dist. LEXIS 136364 (E.D.N.C. Aug. 4, 2023) .......... 18

*Pilliod v. Monsanto Co.*, 67 Cal. App. 5th 591 (2021) .......... 5, 15, 16

*Red Hill Hosiery Mill, Inc. v. Magnetek, Inc.*, 138 N.C. App. 70 (2000) .......... 20

# TABLE OF AUTHORITIES

**Cases**

*Sheppard v. Monsanto Co.*,
2016 U.S. Dist. LEXIS 84348 (D. Haw. June 29, 2016) ..... 13

*Smith v. Am. Honda Motor Co.*,
2016 U.S. Dist. LEXIS 45100 (M.D.N.C. Apr. 4, 2016) ..... 20

*Sparks v. Oxy-Health, LLC*,
134 F. Supp. 3d 961 (E.D.N.C. 2015) ..... 19

*Spittler v. Look Sports, Inc.*,
859 F.2d 924 (9th Cir. 1988) ..... 22

*Walls v. Ford Motor Co.*,
2022 U.S. Dist. LEXIS 33778 (M.D.N.C. Feb. 25, 2022) ..... 18

*Weeks v. Home Depot U.S.A.*,
2020 U.S. Dist. LEXIS 188369 (C.D. Cal. Sep. 18, 2020) ..... 16

*Worm v. Am. Cyanamid Co.*,
5 F.3d 744 (4th Cir. 1993) ..... 12

*Winebarger v. Bos. Sci. Corp. (In re Bos. Sci. Corp.)*,
2015 U.S. Dist. LEXIS 42625 (S.D. W. Va. Apr. 1, 2015) ..... 22

*Zetwick v. Cnty. of Yolo*,
850 F.3d 436 (9th Cir. 2017) ..... 8

# TABLE OF AUTHORITIES

**Statutes & Regulations**

Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA):

7 U.S.C. § 136 *et seq.* ........ *in passim*

7 U.S.C. § 136(p)(2) ........ 10

7 U.S.C. § 136v(a) ........ 9, 11, 16, 17

7 U.S.C. § 136v(b) ........ 9, 11

N.C. Gen. Stat. § 99B-5 ........ 24

N.C. Gen. Stat. § 99B-6(a) ........ 17, 18, 19

N.C. Gen. Stat. § 99B-6(a)(2) ........ 18, 19

N.C. Gen. Stat. § 99B-6(b) ........ 19

N.C. Gen. Stat. § 25-2-314(1) ........ 24

N.C. Gen. Stat. § 25-2-314(2)(c) ........ 24

**Other Authorities**

Fed. R. Civ. P. 56(a) ........ 7

## INTRODUCTION[1]

This suit arises from Decedent Tony Howell's ("Plaintiff" or "Howell")[2] exposure to the herbicide Roundup, which was designed, manufactured, and distributed by Defendant Monsanto Company ("Defendant" or "Monsanto"). In *Durnell*, the Supreme Court recently held that the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") preempts state-law failure-to-warn claims against Monsanto for its failure to add a cancer warning to Roundup's EPA-approved and mandated label. *Monsanto Co. v. Durnell*, 146 S. Ct. 2001 (2026). Pursuant to this decision, Monsanto cannot be sued for failing to change the Roundup label. However, as set forth below, the remainder of Howell's non-label-based allegations and causes of action are not preempted under *Durnell,* and Monsanto is not entitled to summary judgment on those claims.

## BACKGROUND[3]

### A. Glyphosate-Based Roundup.

Roundup is not glyphosate alone. Its various formulations combine glyphosate with other ingredients, such as surfactants, in differing amounts. **Ex. 9**, *Barnes* Trial Transcript at 2580:15-18. Despite decades[4] of selling those formulated products—and extensive litigation alleging that Roundup causes cancer—Monsanto has never tested *formulated* Roundup itself for carcinogenicity. **Ex. 10**, *McKivison* Trial Transcript at 78:21-25. In 2003, Dr. Donna Farmer, Monsanto's Toxicology Programs manager, wrote in an e-mail to colleagues that "you cannot say that Roundup is not a carcinogen . . . we have not done the necessary testing on the formulation to make that

---

[1] Plaintiff adopts and incorporates herein Plaintiffs' Omnibus Statement of Material Facts in Opposition to Monsanto's Post-Durnell Motions for Summary Judgement, filed simultaneously with this Response.

[2] Following Howell's death, his wife Alice S. Ford was appointed as executor of his estate and substituted as the plaintiff in this action. For purposes of continuity, Tony Howell is referred to as "Plaintiff" herein.

[3] Unless otherwise noted, all exhibits are attached to the concurrently-filed Declaration of Shreedhar Patel.

[4] **Ex. 11**, Roundup 1974 Patent.

statement." **Ex 14**, Nov. 22, 2003 Farmer Email.[5] Meeting minutes of Monsanto's Chemical Stewardship Workgroup in 1999 reflect that Monsanto knew that if it wanted to make toxicological safety claims on formulated Roundup, it "must have the data for the formulated product—not just one of the ingredients." **Ex. 15**, Chemical Stewardship Workgroup Minutes at 2.

The EPA likewise has *never* evaluated the Roundup formulation, *never* found that the Roundup formulation was safe, and *never* found that the Roundup formulation does not cause cancer. *See Nat. Res. Def. Council v. EPA*, 38 F.4th 34, 41 n.2 (9th Cir. 2022).

Independent scientists, however, have studied the Roundup formulation and concluded that it was dangerous. *See, e.g.,* **Ex. 42**, Mae-Wan Ho & Joe Cummins, *Glyphosate Toxic & Roundup Worse*, INST. OF SCIENCE IN SOC'Y (July 3, 2005) ("Roundup is always more toxic than its active ingredient, glyphosate; at least by two-fold. The effect increased with time, and was obtained with concentrations of Roundup 10 times lower than agricultural use.")*; see also* Robin Mesnage et al., *Potential Toxic Effects of Glyphosate and its Commercial Formulations Below Regulatory Limits,* 84 FOOD & CHEM. TOXICOLOGY 133, 135 (2015) ("Glyphosate is never used without its adjuvants, which allow and enhance its herbicidal activity by promoting its toxicity."); Inna Székács et al., *Environmental and Toxicological Impacts of Glyphosate with its Formulating Adjuvant*, 8 INT'L J. AGRIC. & BIOL. ENG. 207, 211 (2014) ("The toxic effect of POEA and Roundup was seen as rapidly as in 10 minutes, followed for up to 24 hours, while glyphosate did not cause statistically significant difference in average cell area compared to the control.").

Meanwhile, Monsanto worked to foster a public perception of safety in glyphosate-based products, including by ghost-writing an influential study published in 2000. **Ex. 43**, May 11-12,

---

[5] Dr. Farmer was not just speculating that the safety profile of the formulated product *might* be different from glyphosate alone—she knew of scientific evidence that it was. In April 2002, Dr. Farmer flagged for her Monsanto colleagues a published study showing that the active ingredient and the finished formulation produced different effects, and she questioned whether the co-formulants might be responsible. **Ex. 21**, April 2002 Monsanto Email Chain. In response, Dr. William Heydens stated that Monsanto was "in fairly good shape with glyphosate but exposed with respect to surfactants," noting that the same trend appeared across multiple studies: glyphosate itself seemed acceptable, whereas the formulated product—which combined glyphosate with a surfactant—was associated with the observed harm. He also remarked: "A few years ago we narrowly avoided a problem regarding mutagenicity during the EU review." *Id.*

2000 Monsanto Email Chain.); *See* Naomi Oreskes & Alexander A. Kaurov, *The Afterlife of a Ghost-Written Paper: How Corporate Authorship Shaped Two Decades of Glyphosate Safety Discourse*, 171 ENVT. SCI. & POL'Y, No. 104160 (2025) (discussing Gary M. Williams et al., *Safety Evaluation and Risk Assessment of the Herbicide Roundup and Its Active Ingredient, Glyphosate, for Humans*, 31 REG. TOXICOLOGY & PHARM. 117 (2000), *retracted by* 165 REG. TOXICOLOGY & PHARM., No. 106006 (2026)); *see also* Sean Rossman, *Emails Show Monsanto Tried to 'Ghostwrite' Research*, USA TODAY (Mar. 16, 2017).

Monsanto executive Annette Kirk testified that Monsanto knew and understood the toxicity of POEA surfactants, and that Monsanto decided to retain POEA in its Roundup formulations. **Ex. 12**, Aug. 17, 2023, Kirk Dep. at 35:25–36:05; 210:07–211:02; 259:05–07, 09; 276:22–277:01; 277:07–08, 11. Kirk noted that POEA surfactants were in "[a]ll of the lawn and garden" product lines; she admitted that POEA surfactants were "not biologically inert;" that it was an intentional choice by Monsanto to include POEAs in the final product, and she had no explanation for why Monsanto never took them out despite POEA being banned in other countries. *Id.* at 217:06–217:17, 259:05–12; 259:21–260:04; 276:22–277:11; 303:05–14.

Despite this, Monsanto possessed an alternative design and formulation that was both feasible and available that it refused to release. **Ex. 16**, Feb. 7, 2024. Farmer Tr. Testimony (*Cloud*) at 38:19–40:1; **Ex. 17**, Email re Potential Glyphosate Alternatives. As Dr. Richard P. Garnett, chair of Monsanto Europe's Glyphosate task force put it: "Anyway, there are non-hazardous formulations so why sell a hazardous one?" **Ex. 13**, Garnett Email.

Not only do these admissions show that Monsanto was aware its formulation was "hazardous," they also show Monsanto knew there were safer alternatives available to it for years.

Finally, in 2021, Monsanto's parent company, Bayer CropScience (which had acquired Monsanto in 2018), announced that it would discontinue its glyphosate-based products for the residential market. **Ex. 18**, *Hoffman v. Monsanto*, RFA 7. Since around 2023, Monsanto has used a different formulation for all U.S. lawn-and-garden products. *Id.* More specifically, Monsanto began selling Roundup in an alternative formulation, which now includes triclopyr, diquat dibromide, and fluazifop-P-butyl as the product's primary ingredients. Those ingredients have replaced the

glyphosate-based formulation of Roundup that caused Tony Howell's non-Hodgkins lymphoma. **Ex. 19**, *Grantges v. Monsanto*, Trial Tr., May 29, 2025, at 2784:12—2812:19; and 2891:10—2898:17.) *See also* **Ex. 20**, Donna Farmer Trial Test. Tr. 36-53, *Cloud*, No. N21C-08-279 (Feb. 7, 2024); **Ex. 22**, Email from P. Ratliff to D. Farmer (May 23 2017, 2:01 PM), MONGLY10813107-08; **Ex. 16**, Email from P. Ratliff to J. Rejda-Heath (June 9, 2017), MONGLY11134994-96; **Ex. 23**, Email from D. Wright to J. Hughes (June 4, 2019, 6:44 PM), MONGLY16047868-71; **Ex. 24**, EPA, Fluazifop-P-butyl Interim Registration Review Decision (Sept. 2020), at 5; **Ex. 25**, EPA, Diquat Interim Registration Review Decision (December 2019), at 4; Ex. 26, EPA, R.E.D. Facts Triclopyr at 1 (Oct. 1998); **Ex. 27**, Donna Farmer Trial Test., *Womack v. Monsanto Co*., No. 01642, Philadelphia Ct. of Common Pleas (Nov. 7, 2024) at 66:13-67:7; **Ex. 37**, Bayer Statement on Safety of new formula; **Ex. 31**, Patent on New Formualation.

Monsanto's chief Roundup toxicologist, Dr. Farmer, has repeatedly conceded the feasibility of chemical alternatives to glyphosate under cross examination at trial. For example, in *Grantges*, Dr. Farmer testified that: (1) non-glyphosate alternatives have long been registered with the EPA and available to Monsanto, *see* **Ex. 19**, at 2792:3–2795:5; (2) Monsanto's non-glyphosate ingredients are safe and effective, *see id.* at 2795:11–2796:23; (3) unlike glyphosate, Monsanto's non-glyphosate ingredients are not known to be carcinogenic ("cancer causing"), *see id.* at 2796:24—2797:4; and (4) non-glyphosate options were financially feasible, *see id.* at 2897:5-10. This clear evidence of a safer alternative design for Roundup explains why the *Grantges* trial court denied summary judgment *and* directed verdict motions targeting the design defect claim. **Ex. 28**, *Grantges*, Order on Summary Judgment, May 4, 2025 at *17; Ex. 29, *Grantges*, Order on Directed Verdict, June 12, 2025.

### B. Monsanto Promoted Roundup as Safe.

Monsanto worked for decades to create a public perception that glyphosate-based Roundup was safe, including to Howell, but also agreed using it should not cause cancer. As Monsanto's own toxicologist testified:

> Q: Getting rid of the weeds in your driveway or your lawn is not worth getting cancer. That's an easy one, right, sir?

A: Oh, yeah, I would agree.

**Ex. 10**, *McKivison* Trial Transcript at 48:21-49:1. Dr. Donna Farmer also acknowledged as much. When asked whether consumers should expect to use Roundup without getting cancer, she responded, "Yes, they should not worry about getting cancer, no." **Ex. 9**, *Barnes* Trial Transcript at 2567:8-19; 2580:9-2581:2.

But, even so, apart from everyday experience with the product, there are plenty of sources that would lead consumers to believe that Roundup does not cause cancer. Monsanto frequently made marketing claims that Roundup was safe, "practically nontoxic" and as harmless as products like table salt despite no valid cancer studies to support continued sale of Roundup. **Ex. 44**, Aug. 25, 1978 Letter; **Ex. 45**, AG Discontinuation Order; **Ex. 30**, Internal Farmer email. A consumer could open a newspaper and see senior Monsanto executives touting that "[g]lyphosate is the safest herbicide that has ever been invented…there is no medical or scientific evidence whatsoever that links the exposure of glyphosate to cancer," **Ex. 52**, October 24, 2017, The Guardian article, or see or hear Monsanto's CEO Hugh Grant on NPR tell them that "Roundup is not a carcinogen," **Ex. 53**, Mar. 31, 2016 NPR article. Or see an article on CBS News's website with Donna Farmer assuring them, "I can tell you glyphosate is safe." **Ex. 54**, June 29, 2016 CBS News article.

Monsanto made efforts to ghostwrite articles and its "aggressive attempt to discredit IARC." Monsanto spent millions – "somewhere near 35 to $40 million" – on single public relations agency, FleishmanHillard, Inc., to influence public opinion related to Roundup in the wake of the IARC Monograph. **Ex. 50**, FleishmanHillard Dep. at 77:06-13.

Monsanto's approach was to promote glyphosate-based Roundup as safe. When a new epidemiological study came out in the 2000s showing that exposure to glyphosate can more than double the risk of developing non-Hodgkin's lymphoma, Monsanto's response was "how do we combat this?" **Ex. 55**, Farmer Email. From these "efforts to manipulate scientific discourse," the "jury could infer not only that the potential cancer risk associated with glyphosate and Roundup was known or knowable… but also that ***Monsanto labored for decades to suppress knowledge of the risk***." *Pilliod v. Monsanto Co*., 67 Cal. App. 5th 591, 623 (2021) (emphasis added).

Monsanto's own witness, James Guard, who was primarily responsible for all marketing

claims made throughout the United States, admitted in his deposition that Monsanto's advertisements depicted users wearing short sleeves and short pants. **Ex. 33**, Sept. 13, 2018, Guard Dep. at 6, 41–42, 108–109, 128, 158–159, 260; Sept. 14, 2018, Guard Dep. at 405–409. None of Monsanto's advertisements warned consumers to wear protective equipment, such as chemical resistant gloves or long pants. *Id.*[6] Monsanto pushed out talking points urging its spokespersons to vouch for the safety of not only glyphosate generally but the Roundup formulation in particular. **Ex. 36**, Guard Dep. Ex. 32. Critically, Monsanto's advertisements provided no indication of the information known to Monsanto, nor to the broader scientific concerns, over Roundup's cancer risk and safety profile. *Id.* ("[I]t's the totality of evidence from all scientific literature that provides regulators with complete confidence in the safety of Roundup."). Monsanto negligently made misrepresentations about the safety of glyphosate-based Roundup to the public at large, including Decedent Tony Howell.

### C. Howell's Use of Roundup and Resulting Cancer.

Tony Howell mixed and sprayed Roundup from approximately 2001 to 2018 to manage the brush around his property located in Hickory, North Carolina. **Ex. 1**, Howell Trial Dep. at 52:8-11; 58:3-6. After many years of Roundup use, Howell was diagnosed with Non-Hodgkins Lymphoma (NHL) in April 2009. *Id.* at 51:8-10; **Ex. 2**, Howell Disc. Dep. at 92:6-15; **Ex. 3**, Alice Ford Dep. at 77:6-16; **Ex. 7**, Dr. Orlowski Dep. at 21:18-21; **Ex. 4**, Dr. Conry Dep. at 102:3-5. Howell received

---

[6] In 1996, Monsanto was charged with disseminating false and misleading advertisements and was forced to "immediately cease and desist" from distributing their false and misleading advertisement that represented (falsely) that "glyphosate-containing pesticide products . . . are safe, non-toxic, harmless or free from risk." *Id.*; *see also* **Ex. 34**, Guard Dep. Ex. 19 at 9; **Ex. 35**, Guard. Dep. Ex. 29; **Ex. 36**, Guard Dep. Ex. 32. Moreover, Dr. William Reeves, Monsanto's lead regulatory toxicologist, has repeatedly testified on Monsanto's behalf regarding marketing and advertisements developed and disseminated to promote Roundup to consumers. Dr. Reeves acknowledged that the advertisements conveyed none of the internal concerns Monsanto was confronting, such as significant questions within the scientific literature concerning Roundup's genotoxicity. Instead, Monsanto's advertisements depicted individuals using Roundup in shorts, without gloves, masks, or any type of PPE at all. Dr. Reeves agreed that a consumer viewing Monsanto's advertisements would have the impression that Roundup was safe to use. **Ex. 40**, Monsanto Commercial; **Ex. 38**, Jan. 10, 2024, Reeves Tr. Testimony, at 64:12–15; 65:03–11; 66:03–06, 66:12–67:19; **Ex. 41**, Monsanto Commercial 2; **Ex. 39** , Jan. 11, 2024, Reeves Tr. Testimony, at 45:01–02; 45:05–17; 45:21–46:03; 46:07–46:16; 46:18–25.

CHOP chemotherapy and his NHL went into remission later that year. **Ex. 7**, Orlowski Dep. at 27:17-25; 29:12-14; **Ex. 3**, Alice Ford Dep. at 82:1-14.

Howell continued to spray the "poison" as he called it for almost a decade after his NHL diagnosis and treatment. **Ex. 1**, Howell Trial Dep. at 62:7-14; **Ex. 2**, Howell Disc. Dep. at 159:6-9. This is because Howell was led to believe that Roundup was safe for humans. **Ex. 1**, Howell Trial Dep. at 49:14-20; 53:3-5; 53:17-22; 60:18-19; 61:2-6. Howell testified that had he known that glyphosate-based Roundup was dangerous as designed he would not have used it. **Ex. 1**, Howell Trial Dep. at 62:20-22.

Howell filed this lawsuit in 2020, alleging causes of action for negligence, design defect, breach of implied warranty, negligent misrepresentation and/or fraud, none of which are strictly based on the label.[7] *See* Dkt. 1 at ¶¶ 144-146, 159, 200 and 211. Indeed, the Complaint begins, "[t]his is an action for damages suffered by Plaintiff as a direct and proximate result of Defendant's negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the herbicide Roundup, containing the active ingredient glyphosate." Dkt. 1 at ¶ 1. These causes of action are predicated on the fact that glyphosate-based Roundup caused Howell's NHL.

In 2022, Howell was diagnosed with myelodysplasia syndrome ("MDS") caused by the CHOP chemotherapy he underwent for his NHL. **Ex. 1**, Howell Trial Dep. at 63:17-22; **Ex. 7**, Orlowski Dep. at 39:4-16; **Ex. 4**, Conry Dep. at 102:3-5; 117:7-20; **Ex. 5**, Expert Report of Dr. Conry. He ultimately died from the disease on June 18, 2022. **Ex. 4**, Conry Dep. at 117:7-20; **Ex. 51,** Letter of Dr. Orlowsky; **Ex. 7**, Orlowsky Dep. at 36:15-39:11; **Ex. 8**, Certificate of Death.

## LEGAL STANDARD

Since summary judgment is a "drastic device" that cuts off a party's right to present their case to a jury, the moving party "bears the heavy burden of showing that there are no genuine issues of material fact" entitling them to judgment as a matter of law. *Ambat v. City & County of San*

---

[7] Howell also alleged a claim for failure to warn. Following the Supreme Court's ruling in *Durnell*, Plaintiff is no longer pursuing a label-based failure to warn claim.

*Francisco*, 757 F.3d 1017, 1031 (9th Cir. 2014); *see also* Fed. R. Civ. P. 56(a). To defeat the motion, the non-movant must only "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "The proper question for the district court is whether, viewing the facts in the non-moving party's favor, summary judgment for the moving party is appropriate." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017); *see also*, *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). Where (as in most cases) the standard of proof at trial is a mere preponderance, the opposing party's evidence need only be such that "a fair-minded jury could return a verdict for the [opposing party] on the evidence presented." *Anderson,* 477 U.S. at 252. In its role, the court may not "weigh" the evidence or determine its credibility for that is the function of the jury. *Id*. at 249-255. Summary judgment "is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'" *Fresno Motors,* 771 F.3d at 1125 (internal citation omitted).

Preemption is an affirmative defense; Monsanto bears the burden of pleading and proving that FIFRA preempts Plaintiff's claims. *Burrell v. Bayer Corp.*, 918 F.3d 372, 382 n.3 (4th Cir. 2019) ("It is well established, of course, that preemption is an affirmative defense. The burden of establishing preemption, in other words, is on the defendant"); *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 314 (2019) ("in order to succeed with [preemption] defense the manufacturer must show" elements of the defense). Defendant must overcome a "strong presumption" against preemption by showing Congress clearly and unmistakably intended to supersede state law. *Covert v. Stryker Corp.*, No. 1:08CV447, 2009 U.S. Dist. LEXIS 68962, at *32 (M.D.N.C. Aug. 5, 2009).

## ARGUMENT

### I. Plaintiff's Claims Are Not Expressly or Impliedly Preempted by FIFRA.

Monsanto contends that all of Plaintiff's claims are preempted under FIFRA following the Supreme Court's recent decision in *Durnell*. Specifically, Monsanto argues that (1) FIFRA expressly preempts Plaintiff's claims because they are all based on a failure to warn; and (2) FIFRA impliedly preempts any claim that would require Monsanto to reformulate Roundup. While the label-based failure-to-warn claims are preempted following *Durnell*, Plaintiff asserts numerous

other claims that are *not* based on Monsanto's failure to warn on its Roundup labels, including negligence, design defect, breach of implied warranty, and negligent misrepresentation/fraud, as well as failure-to-warn claims not based on the Roundup label.[8] Indeed, Plaintiff's Complaint addresses the inherently and unreasonably dangerous design of Roundup, Monsanto's knowledge of the design defect, Monsanto's negligence, and Monsanto's misdeeds and affirmative misstatements extending well beyond the label approved by the FDA. Because there is no basis to bar Plaintiff's claims that are not based solely on Roundup's label, Defendant's Motion should be denied.

### A. *Durnell* Preempted Only Label-Based Failure-to-Warn Claims.

Prior to FIFRA, "the States provided the primary and possibly the exclusive source of regulatory control over the distribution of poisonous substances." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 437 (2005). FIFRA's predecessor introduced a federal role in pesticide regulation, but both it and FIFRA initially related only to "licensing and labeling." *Id*. "In 1972, Congress passed and President Nixon signed the Federal Environmental Pesticide Control Act" and "'transformed' FIFRA 'into a comprehensive regulatory statute,' and placed the newly created Environmental Protection Agency in charge of pesticide registration and labeling." *Durnell*, 146 S.Ct. at 2006 (quoting *Bates*, 544 U.S. at 437). However, Congress explicitly preserved "the States' continuing role in pesticide regulation." *Bates*, at 438-39. Indeed, 7 U.S.C. § 136v(a) states that:

> (a) **In general.** A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this Act [7 USCS §§ 136 et seq.].

Notably, in the next paragraph, Congress expressly preempt label-based claims:

> (b) **Uniformity.** Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this Act [7 USCS §§ 136 et seq.].

7 U.S.C. § 136v(b). Taken together, these two provisions permit States to impose any restriction on

---

[8] For clarity, Plaintiff will not challenge the Roundup label under the rubric of any cause of action.

the sale or use of pesticides *except* requirements for "labeling or packaging."[9]

The Supreme Court has repeatedly affirmed the narrow scope of FIFRA preemption, explaining that a State may "ban the sale of a pesticide if it finds, for instance, that one of the pesticide's label-approved uses is unsafe." *Bates*, 544 U.S. at 446; *Durnell*, 146 S.Ct. at 2008, n.2. In *Bates v. Dow Agrosciences LLC*, the Court considered whether claims for design defect, negligent design, warranty and other traditional torts were preempted by FIFRA. *Bates*, 544 U.S. at 436. The Fifth Circuit had taken an expansive view, holding that design defect and negligent design claims were "disguised" failure to warn claims because, if successful, the resulting reformulation would force defendant to change the label. *Id.* The Supreme Court rejected that reasoning, developing a two-step test to evaluate whether a state law fell within FIFRA's preemption provision: "First, [the state law or regulation] must be a requirement *'for labeling or packaging*'; rules governing the design of a product, for example, are not pre-empted. Second, it must impose a labeling or packaging requirement that is *'in addition to or different from*' those required under this subchapter." *Bates*, 544 U.S. at 444 (emphasis in original). "Rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market their products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for 'labeling or packaging'" and are not preempted. *Id*. at 444.

The Supreme Court's recent opinion in *Durnell* does not disturb *Bates*. *Durnell*, 146 S. Ct. at 2011. Unlike *Bates*, which involved design, testing, warranty, and other claims, *Durnell* involved only a "state tort claim [that] would require Monsanto to add a cancer warning to Roundup's label."[10] *Id*. at 2006. Indeed, the Supreme Court repeatedly and unambiguously made clear that

---

[9] FIFRA defines "labeling" to mean only the "labels" or "written, printed, or graphic matter" that is "accompanying the pesticide" or "to which reference is made on the label or in literature accompanying the pesticide or device." 7 U.S.C. § 136(p)(2).

[10] Notably, in setting up the circuit split that was *Durnell's* springboard, Monsanto strategically placed only the failure-to-warn issue before appellate courts, going so far as to pay a plaintiff $100,000 on the condition that he prosecute an appeal of the trial court's dismissal of his failure-to-warn claim. *E.g., Carson v. Monsanto Co.,* 72 F.4th 1261, 1270 (11th Cir. 2023) (Wilson, (footnote continued)

*Durnell* addresses *only* a label-based failure-to-warn claim.[11] *See id.* at 2010 ("The question, then, is whether the Missouri failure-to-warn claim – which would require a cancer warning on the Roundup label – would impose a labeling requirement that is 'in addition to or different from' federal labeling requirements 'under' FIFRA"); *see also id.* at 2006 ("Durnell brought a failure-to-warn tort suit in Missouri state court against Monsanto for not including a cancer warning on Roundup's label"), 2010 ("the heart of Durnell's failure-to-warn claim under Missouri tort law is that Monsanto should have included a cancer warning on its Roundup labels"), 2011 ("Durnell's state tort claim … would require Monsanto to add a cancer warning to its labels"), 2014 (Durnell "faults Monsanto for *not using* a label different from the EPA-approved label"). Indeed, the Court expressly limited the grant of certiorari to "[w]hether the Federal Insecticide, Fungicide, and Rodenticide Act preempts a *label-based failure-to-warn claim* where EPA has not required the warning." *Monsanto Co. v. Durnell*, 223 L.Ed.2d 553 (U.S. 2026) (emphasis added).

The Supreme Court held that Durnell's label-based failure-to-warn tort claim was expressly preempted because FIFRA "prohibits States from imposing any pesticide labeling requirements that are 'in addition to or different from' the federal labeling requirements 'under' FIFRA." *Durnell,* 146 S. Ct. at 2006 (quoting 7 U.S.C. 136v(b)). In doing so, the Court considered Congressional intent to maintain "an efficient nationwide market" by ensuring "uniformity" and granting manufacturers "the ability to sell a product throughout the country with a single label." *Id*. at 2012. Notably, the Court clarified that the uniformity proviso *only applies to the label* and that states retain the power to regulate: "States remain free to 'regulate the sale or use of any federally registered pesticide.' [7 U.S.C.] § 136v(a). For example, a State could outright ban a pesticide within its borders." *Id*. at

J., dissenting) (where Carson sued under failure to warn, design defect, and other theories, and failure to warn was dismissed on preemption grounds, Monsanto engineered an appeal on this issue, as the dissent described: "The agreement required—not merely permitted—Carson to file a notice of appeal challenging the district court's preemption decision. It required—not merely permitted—Carson to fully prosecute this appeal or face forfeiture of nearly the entire $100,000 payment.").

[11] The underlying reason for this is *Durnell* could not have decided anything other than product defect – failure to warn because the jury only returned a verdict in favor of Plaintiff for product defect- failure to warn. *See* **Ex. 56**, Durnell Final Judgment.

2008, n.2. Indeed, during the oral argument, when asked by Justice Coney-Barrett whether FIFRA preempts design defect claims, Monsanto's counsel conceded that "[t]hey're only preempted if they are disguised as failure-to-warn claims," distinguishing medical device jurisprudence because "although they're worded similarly, the preemption clause in the medical device amendments sweeps in design defect claims. And, here, it's really just on the labeling." **Ex. 46**, *Monsanto Co. v. Durnell*, No. 24-1068, Transcript of Oral Argument, April 27, 2026, at 31-32. The Deputy Solicitor General agreed with Monsanto's counsel, further noting that such claims survive as "*Bates* itself recognizes." *Id*. at 50.

Pre-*Bates* and *Durnell*, the Fourth Circuit also held that FIFRA has limited preemptive scope. *Worm v. Am. Cyanamid Co.*, 5 F.3d 744, 745 (4th Cir. 1993). "[T]he Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq*., does not, expressly or by implication, preempt the field of pesticide regulation or a more narrowly defined field, but it does preempt conflicting state law causes of action that impose a duty to provide a warning in addition to or different from federally established labeling requirements." *Id.*; *Lescs v. William R. Hughes, Inc.*, No. 97-2278, 1999 U.S. App. LEXIS 475, at *20-22 (4th Cir. Jan. 14, 1999) ("the statutory language clearly implements the narrow purpose of Congress to effect uniform labeling and packaging of pesticides"). Consistent with the Supreme Court's subsequent holding in *Durnell*, the Fourth Circuit held that claims are preempted only if they are based upon EPA-approved labeling language. *Lowe v. Sporicidin Int'l*, 47 F.3d 124, 129 (4th Cir. 1995) ("[i]n FIFRA, Congress has expressly preempted the states from imposing 'requirements for labeling or packaging in addition to or different from those required under this subchapter,' and has *not* expressly preempted the states from imposing other kinds of requirements" (emphasis in original)). State law claims for negligent testing, formulation, and manufacture are not preempted. *Worm v. American Cyanamid Co.*, 5 F.3d 744, 749 (4th Cir. 1993); *Lescs*, 1999 U.S. App. LEXIS 475, at *22-23 ("Claims that relate to a product defect such as 'negligent testing, manufacturing, and formulating' or that were based upon a state law allowing a claim for the breach of a FIFRA-created duty, however, generally are not preempted").

Other courts have similarly held that *only* label-based failure to warn claims are preempted

by FIFRA—both before and after *Durnell*. *See* **Ex. 47**, *Rubin v. Monsanto Co.,* Transcript of Status Conference (D. Mass. July 29, 2026), at 4:4-9 ("I believe that *Durnell* left open other state law claims, such as other types of product defect and consumer claims that are not based on warning theories like design defect claims and possibly a non-label failure to warn claim that rests on the allegation that Monsanto could have warned outside the product labeling"); **Ex. 48**, *Shull v. Monsanto Co.,* Order Denying Summary Judgment (Mo. Cir. August 31, 2026) ("it would be an unwarranted expansion of [the Supreme Court's] holding [in *Durnell*] to extend it to design defect and negligence claims that were not before the Court"); **Ex. 49**, *Alison v. Monsanto Co.,* Order Concerning Motion for Summary Judgment (Mo. Cir. Sept. 9, 2026), at 15-16 (denying summary judgment on negligence and design defect because "Plaintiff has pleaded and seeks to present evidence to the jury that Monsanto did or failed to do more than use an adequate label"); **Ex. 28**, *Grantges v. Monsanto Co.,* Order on Summary Judgment (Cir. Mo. May 4, 2025), at *17 (denying summary judgment on plaintiff's design defect claim and finding Monsanto's alternative Roundup formulation without glyphosate or surfactant was sufficient evidence of an safer available alternative); **Ex. 32**, Memorandum Decision and Order, Hoge v. Monsanto Co., Case No. 4:25-cv-00277-DCN, at *4 n.5 (D. Idaho June 1, 2026) ("the Supreme Court has already held that claims . . . based on design and manufacturing, negligent testing, and other warranties 'do not qualify as requirements for "labeling or packaging"' and so cannot be preempted by FIFRA") (citing Bates, 544 U.S. at 444); *Hogarty v. Orgill, Inc.,* No. 5:25-cv-122-KKM-PRL, 2026 U.S. Dist. LEXIS 124372, at *27 (M.D. Fla. June 5, 2026) (denying Monsanto's motion to dismiss design defect and manufacturing defect claims); *Sheppard v. Monsanto Co.,* No. 16-00043 JMS-RLP, 2016 U.S. Dist. LEXIS 84348, at *27-33 (D. Haw. June 29, 2016) (denying 12(b)(6) motion related to "non-warnings-based" claims, including for design defect); *Giglio v. Monsanto Co.,* No. 15cv2279 BTM(NLS), 2016 U.S. Dist. LEXIS 57504, at *9-11 (S.D. Cal. Apr. 29, 2016) (denying motion to dismiss "non-warnings design defect claims"); *Higgins v. Monsanto Co*., 862 F. Supp. 751, 759-60 (N.D.N.Y. 1994) (collecting cases holding that "because Plaintiff's claims of strict liability are based on design defect and not on inadequate labeling, they are not preempted by FIFRA").

Monsanto is not effectively immune from all product liability claims involving Roundup.

Neither FIFRA nor the EPA's specific determination that cancer warnings are not required for glyphosate-based pesticide labels protect Monsanto for its culpability for formulating its herbicide so as to cause cancer. The *Durnell* opinion makes clear that plaintiffs are only barred from suing Monsanto on the theory that the label should have read differently. Plaintiff's other pleaded claims that do not address what the Roundup label did or did not say are *not* barred.

**B. FIFRA Does Not Expressly Preempt Plaintiff's Claims.**

As the *Bates* Court made clear, state laws or regulations that do not impose a labeling or packaging requirement—like those governing the design of product—are not preempted. *Bates*, 544 U.S. at 444. Plaintiff asserts claims unrelated to the warning on the Roundup label, including negligence, design defect, implied warranty, and negligent misrepresentation/fraud. *See Bates*, 544 U.S. at 444-45. Yet Monsanto brushes over these claims, contending that Plaintiff's claims are all expressly preempted under FIFRA because they "all boil down to the preempted theory that Monsanto is liable for failing to include a cancer warning on Roundup's label." Mot. at 8. This assertion badly misrepresents Plaintiff's claims and is based on unsupported assertions and cherry-picked quotes from Plaintiff's Original Complaint. Plaintiff's failure to warn claim is different from the design defect claim. A claim that a product should have been labeled with a warning that it causes cancer is different from a claim that the product caused cancer. Following *Durnell*, Plaintiff is pursuing only the latter.

Plaintiff has pleaded and seeks to present evidence to the jury that Monsanto did or failed to do more than use an adequate warning label. He brought multiple non- failure-to-warn claims like negligence, design defect, breach of implied warranty, and negligent misrepresentation/fraud, all of which are based on allegations unrelated to the Roundup label or packaging.[12] For example, in support of the negligence claim, Plaintiff asserts Monsanto was negligent in, among other things, failing to adequately test Roundup and its ingredients and designing, manufacturing, producing and formulating an unreasonably dangerous product. *See, e.g.,* Dkt. 1, at ¶¶ 59, 144-145, 146(a)-(e) and

[12] Plaintiff addresses the breach of implied warranty and negligent misrepresentation/fraud claims *infra*.

(l)-(m), 149(a), (f) and (g), 150. Likewise, Plaintiff has asserted a design defect claim based on allegations that Roundup posed a grave risk of cancer when used in a reasonably anticipated manner, and was inherently and unreasonably dangerous to an extent beyond what an ordinary consumer would anticipate. *See, e.g., id*. at ¶¶ 155-166, 168-170. Plaintiff's failure-to-warn claim goes beyond the label and packaging, including, for example, allegations regarding Monsanto's marketing and promotion of the product.[13] *See, e.g., id.* at ¶¶ 40-43, 91-93, 97-98, 185-188, 192-93. Monsanto is not effectively immune from all of Plaintiff's claims because the claims are not inextricably tied to FIFRA's labeling and warning requirements.

Lacking any statutory support or precedent for its position that no products liability theory survives *Durnell*, Monsanto quotes the Court's denial of Monsanto's post-verdict motions in *Hardeman*, claiming that "the evidence" can only sustain a design defect claim premised on a labeling theory. But the ruling is inapposite and taken out of context. The Court acknowledged that "Hardeman presented no evidence that Roundup is inherently defective regardless of whether accompanied by a warning," but in doing so, it was merely commenting on the evidence presented by that plaintiff to a jury at trial nearly 7 years ago. *Hardeman v. Monsanto (In re Roundup Prods. Liab. Litig.)*, No. MDL No. 2741, 2019 U.S. Dist. LEXIS 116638, at *75 (N.D. Cal. July 12, 2019). The scope of evidence presented and argument made at trial reflects trial strategy as much as it does the scope of available evidence. Plaintiff should not be judged based on the Court's observation of what another plaintiff elected to present at trial years ago based on then-available evidence. Indeed, Roundup victims have, and continue to, litigate claims other than failure to warn against Monsanto. *See, e.g., Pilliod v. Monsanto Co.,* 67 Cal.App.5th 591 (2021), *abrogated as to failure to warn by Durnell* (jury awarded substantial damages based on both design defect and failure to warn); *Anderson v. Monsanto Co.,* 719 S.W.3d 755, 793 (Mo. Ct. App. 2025), *vacated and remanded for*

[13] *Durnell* applies only to *label-based* failure to warn claims, not to failure to warn claims based on other kinds of communications often seen and relied upon by consumers such as billboards, commercials, or newspaper advertisements. Plaintiff brings such claims in this case and contends that communication of the risks of Roundup use through these other media and channels would have avoided the harm to Mr. Howell.

*consideration in light of Durnell* (jury awarded damages on *inter alia* strict liability design defect claim that Roundup was unreasonably dangerous when used as reasonably anticipated); **Ex. 28,** *Grantges v. Monsanto Co.,* Order on Summary Judgment (Cir. Mo. May 4, 2025), at *17 (denying summary judgment on plaintiff's design defect claim and finding Monsanto's alternative Roundup formulation without glyphosate or surfactant was sufficient evidence of an safer available alternative).

**C. FIFRA Does Not Impliedly Preempt Plaintiff's Claims.**

Contrary to Monsanto's assertion, *Durnell* has nothing to do with implied preemption. The Supreme Court specifically held that it "need not consider" the argument because the claim was expressly preempted. *Durnell*, 146 S. Ct. at n. 7. Nevertheless, Monsanto contends that *Durnell* confirms that any theory that would have required it to use an alternative design is preempted as a "matter of impossibility." Mot. at 14. The argument cannot be reconciled with the plain text of FIFRA or *Bates*, both of which expressly limit preemption to label-based failure to warn claims. Indeed, Monsanto has been making the same implied preemption argument for the better part of a decade, but not one court has adopted it, and this Court has explicitly rejected it. *See In re Roundup Prods. Liab. Litig.*, 364 F. Supp. 3d 1085, 1087 (N.D. Cal. 2019) ("Monsanto's implied preemption theory is difficult—if not impossible—to square with *Bates*"). *See also Holyfield v. Chevron U.S.A., Inc.*, 533 F. Supp. 3d 726, 736 (E.D. Mo. 2021) ("While numerous courts have considered the question, this Court is not aware of any precedent dismissing claims based on a theory of implied preemption under FIFRA"); *Pilliod*, 67 Cal. App. 5th at 679 ("[W]e are not aware of any published opinion by any court—state or federal—that adopts Monsanto's positions with respect to impossibility preemption."); *Ansagay v. Dow Agrosciences LLC,* 153 F. Supp. 3d 1270, 1281-82 (D. Haw. 2015) ("the *Bates* Court rejected impossibility preemption sub silentio. It makes no sense to think otherwise.").

Like when it first made this argument to this Court in 2019, Monsanto relies upon FDCA

cases to contend that it is prohibited from changing the EPA-approved formulation of Roundup.[14] *In re Roundup Prods. Liab. Litig.*, 364 F. Supp. 3d at 1087. But the FDCA is not analogous to FIFRA. Under the FDCA, once a drug is approved, federal law does ***not*** allow states to ban FDA-approved drugs. *Id.* at 1088 ("nothing in the FDCA allows a state to ban a drug"). Conversely, FIFRA delegates tremendous power to states to regulate the sale or use of any registered pesticide, including the right to regulate or ban a registered pesticide outright. *Id*. at 1088 (citing 7 U.S.C. § 136v(a) and *Bates*, 544 U.S. at 446 (noting that "a state agency may ban the sale of a pesticide if it finds, for instance, that one of the pesticide's label-approved uses is unsafe")). Since FIFRA authorizes states to ban the sale of pesticides they find unsafe, a state law requirement that compensates individuals who used unsafe pesticides or stops sales completely cannot be preempted provided it does not impose a requirement for labeling or packaging. *See Bates*, 544 U.S. at 446; *Weeks v. Home Depot U.S.A.* 2020 U.S. Dist. LEXIS 188369, at *19 (C.D. Cal. Sep. 18, 2020) (explaining if a state "can stop defendant or manufacturers from selling Roundup entirely, then it seems inconsistent to conclude that the statute implicitly - but not expressly - preempts a state law requirement that stops short of banning the product.") Yet, under Monsanto's theory that *any* restriction on its right to sell a pesticide as formulated is tantamount to a requirement that it sell a different formulation, a state could *not* ban the sale of a pesticide over safety concerns since that would, per Monsanto, require a change in formulation. Both *Durnell* and *Bates* explicitly reject that interpretation. *See Bates*, 544 U.S. at 446 ("Under §136v(a), a state agency may ban the sale of a pesticide if it finds, for instance, that one of the pesticide's label-approved uses is unsafe"); *Durnell*, 146 S.Ct. at 2008, n.2. Monsanto offers no reason to depart from these holdings.

## II. Monsanto Is Not Entitled To Judgment As a Matter of Law on Plaintiff's Design Defect Claim.

Monsanto next asserts that Plaintiff cannot "save" the case by arguing it is liable based on Roundup's defective formulation or design, rather than a lack of warning. Specifically, Monsanto

---

[14] Notably, Monsanto itself has demonstrated in recent years that a manufacturer may change the composition of its product, having phased out residential Roundup products that contain glyphosate. *See Durnell*, at 2009 n.4.

contends that North Carolina law requires that Plaintiff show a feasible alternative design for Roundup through expert testimony, but he has failed to do so. Contrary to Monsanto's assertions, however, expert evidence of feasible, safer alternative designs is not required under North Carolina law. Plaintiff presents admissible evidence on safer alternative herbicide formulations.

### A. Evidence of a Safer Alternative Design Is Not Required Under North Carolina Law.

Pursuant to N.C. Gen. Stat. § 99B-6(a), a defendant is liable for its defective design or formulation if the plaintiff shows that it "acted unreasonably in designing or formulating the product" and "that this conduct was a proximate cause of the harm for which damages are sought." N.C. Gen. Stat. § 99B-6(a); *DeWitt v. Eveready Battery Co.*, 550 S.E.2d 511, 518 (2001), *aff'd,* 565 S.E.2d 140 (2002). In addition, the plaintiff must prove **one** of the following:

> (1) At the time the product left the control of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product [or]
>
> (2) At the time the product left the control of the manufacturer, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.

N.C. Gen. Stat. § 99B-6(a). Thus, Plaintiff can prove a design defect claim without evidence of a safer alternative design if he can show that the design was so unreasonable that a reasonable person with knowledge of the relevant facts would not use it.

Monsanto argues that Plaintiff cannot invoke the exception under N.C. Gen. Stat. 99B-6(a)(2) for when "the design or formulation of the product was so unreasonable that" no one would use it, asserting that it is unaware of any case where the provision has been successfully invoked, relying on a reporter's note in the 1998 Restatement reporter's note that North Carolina courts have not found that the design or formulation of a product was so unreasonable that no one would use it. Mot. at 15. Nearly 30 years later, the note is no longer true. For example, in *Pa. Nat'l Mut. Cas. Ins. Co. v. STIHL Inc.*, the Eastern District found that "a hedge trimmer designed with defects that cause it to catch fire during ordinary use is plausibly designed so unreasonably that no reasonable person

would use it." *Pa. Nat'l Mut. Cas. Ins. Co. v. STIHL Inc.*, No. 7:23-CV-00018-M, 2023 U.S. Dist. LEXIS 136364, at *15-16 (E.D.N.C. Aug. 4, 2023). *See also Walls v. Ford Motor Co.*, No. 1:20-CV-98, 2022 U.S. Dist. LEXIS 33778, at *44-45 (M.D.N.C. Feb. 25, 2022) (denying summary judgment on defective design claim where there was no feasible alternative design but Plaintiff argued that asbestos-containing products were so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of the design).

Likewise, since most consumers do not expect household products to cause cancer, a jury could find that Roundup formulated with glyphosate and POEAs was so unreasonably designed that a reasonable person would not use it. As described *supra*, a Monsanto toxicologist admitted that getting rid of weeds in the driveway is not worth getting cancer; another testified that consumers should be able to use Roundup without worrying about getting cancer from the use of Roundup. Monsanto's own toxicologists admit that a reasonable person would not use a pesticide that causes cancer, like glyphosate-based Roundup, on their residential lawns.

Because a jury could reasonably find that the cancer-causing design of Roundup was so unreasonable that no reasonable person would use it, summary judgment should not be granted on Plaintiff's design defect claim regardless of any evidence of a feasible alternative design.

**B. Plaintiff's Evidence Demonstrates the Existence of a Safer, Practical, Feasible and Reasonable Alternative**

Monsanto argues that Plaintiff has no evidence of an alternative design for Roundup, suggesting that expert testimony is "the only permissible way" to prove an alternative design is safer, practical, and feasible. However, Monsanto cites no authority that support its proposition.

Rather, Monsanto points to a single case, *Bluitt v. Wake Forest Univ. Baptist Med. Ctr.,* to support its assertion that North Carolina law requires expert testimony to show an alternative design was cost-effective, feasible, would not have impaired Roundup's usefulness, and would not have posed other risks of its own. But the case does not involve a design defect claim or considerations of a safer alternative design. Rather, there, the plaintiff asserted a medical malpractice claim, claiming that the defendants negligently burned her back while performing a cardiac ablation. 259 N.C. App. 1, 6 (2018). The court held that because cardiac ablation is a complex medical procedure

outside the common knowledge, experience and sense of a layperson, the plaintiff would not be able to show that the injury was of a type not typically occurring in the absence of some negligence by a defendant without the use of expert testimony. *Id*. at 7. Here, there is no similar complexity requiring expert testimony. A layperson can consider whether a pesticide without a carcinogen is a safer alternative to a pesticide with a carcinogen.

The two other cases cited by Monsanto are equally unhelpful. Expert testimony was proffered but deemed insufficient in both, but neither holds that expert testimony is required to prove the existence of a safer, feasible alternative design. *See Sparks v. Oxy-Health, LLC*, 134 F. Supp. 3d 961, 987-88 (E.D.N.C. 2015); *DeWitt v. Eveready Battery Co.*, 144 N.C. App. at 155-56. Rather than requiring expert testimony, N.C. Gen. Stat. § 99B-6(b) identifies seven non-exclusive factors to be considered in analyzing the reasonableness of the defendant's conduct. *Smith*, 2016 U.S. Dist. LEXIS 45100, at *14. "A plaintiff is not required to present evidence on all of these factors in order to meet his burden of proving a defective design claim, as some of these factors may not be relevant to a particular plaintiff's claim." *DeWitt v. Eveready Battery Co.*, 144 N.C. App. at 155; *see also Smith*, 2016 U.S. Dist. LEXIS 45100, at *14.

Expert testimony regarding a safer, feasible design alternative may be relevant but is not required. Indeed, "[i]t does not appear that North Carolina courts require expert testimony to prove defective design." *Smith v. Am. Honda Motor Co.*, No. 1:14-CV-943, 2016 U.S. Dist. LEXIS 45100, at *13 (M.D.N.C. Apr. 4, 2016). Even the fact of a product defect does not require expert testimony in all cases, but may be inferred from the products failure: "in a products liability action, based on tort or warranty, a product defect may be inferred from evidence of the product's malfunction, if there is evidence the product had been put to its ordinary use." *Red Hill Hosiery Mill, Inc. v. Magnetek, Inc.*, 138 N.C. App. 70, 76-77, 530 S.E.2d 321, 326-27 (2000).[15]

---

[15] In *Sparks*, the district court explained that a plaintiff may prove a product was defective at the time it left control of the defendant "either by direct evidence, such as expert testimony, or by relying on the inference of negligence that arises upon a showing that the product malfunctioned after it was put to ordinary use," along with direct evidence that the defect was a result of defendant's negligence. 134 F. Supp. 3d at 986.

Here, the jury can reasonably find that an alternative formulation of Roundup that does not contain the carcinogenic glyphosate—*a formulation which Monsanto now manufactures and sells under the Roundup label*—is a safer, feasible, practical design. As set forth *supra* and in Plaintiffs' Omnibus Statement of Material Facts in Opposition to Monsanto's Post-*Durnell* Motions for Summary Judgment, adopted and incorporated herein, Plaintiff's evidence demonstrates that, by 1998, Monsanto knew its Roundup formulation was toxic and developed alternative and safer formulations of Roundup for agricultural use in Europe without the presence of POEA surfactant that, when combined with glyphosate, was associated with increased harm; Monsanto did not similarly reformulate its U.S. products despite the alternative surfactant having long been approved by the EPA for use in pesticides in the United States. Indeed, Monsanto kept selling the product in the United States despite not having done the necessary testing to say Roundup is not a carcinogen. Monsanto's own chair of the Europe's Glyphosate task force, Dr. Richard Garnett, pointed out the unreasonableness of its decision not to adopt a safer alternative formulation, asking "there are non-hazardous formulations so why sell a hazardous one?"

Finally, in 2017, Monsanto began marketing and selling a non-glyphosate formulation of Roundup for lawns, and in 2021, it announced it was replacing its glyphosate-based products for the residential market with new glyphosate-free formulations. Since 2023, Monsanto has manufactured and sold alternative, non-glyphosate formulations of all U.S. lawn-and-garden products, replacing the glyphosate-based formulation that caused Mr. Howell's non-Hodgkins lymphoma. According to Monsanto's chief Roundup toxicologist, Dr. Farmer, non-glyphosate alternatives are safe and effective and have long been registered with the EPA and available to Monsanto. *See supra.*

The record shows that Mr. Howell used concentrated glyphosate-based Roundup over 200 times spanning over 400 hours spent directly mixing and spraying, with dermal exposure almost every time, and that his extensive exposure to glyphosate-based Roundup was a substantial contributing factor to his development of NHL in 2009.[16] **Ex. 5**, Conry Rpt. at pp. 19-20, 30. In

---

[16] The Court has held that the expert testimony of Plaintiff's general causation experts, Dr.
(footnote continued)

2019, Mr. Howell developed MDS as a consequence of the chemotherapy he received to treat his NHL; he died as a result of his MDS in 2022. *Id*. at 26

Alternative formulations of Roundup without the carcinogens and with the same utility and economic feasibility were possible at the time of Howell's exposure, and have, in fact, been implemented by Monsanto illustrating their feasibility and reasonableness. The glyphosate-free Roundup alternative formulations are safer as they do not contain the carcinogen. Plaintiff's evidence, viewed in the light most favorable, is sufficient to raise a fact issue regarding the design defect claims, including that there was a safer, feasible alternative design.[17] *See* **Ex. 49,** *Alison v. Monsanto Co.,* Order Concerning Motion for Summary Judgment (Mo. Cir. Sept. 9, 2026), at 16 ("Monsanto's alternative Roundup formulations without glyphosate make this an issue for the jury's determination"); *see also Winebarger v. Bos. Sci. Corp. (In re Bos. Sci. Corp.)*, No. MDL No. 2326, 2015 U.S. Dist. LEXIS 42625, at *15-16 (S.D. W. Va. Apr. 1, 2015) (finding that a reasonable juror could determine the defendant failed to adopt a reasonable alternative design without expert testimony based on a letter to defendant indicating a different mesh prototype was offered two years prior to the plaintiff's surgery, a memo demonstrating that defendant knew of the benefits of the lighter mesh, and an email reflecting expectation that less mesh leads to less inflammation and better outcomes).

### III. Plaintiff's Claims for Negligent Misrepresentation/Fraud and Implied Warranty Are Not Preempted and Survive Under North Carolina Law.

As discussed *supra*, only failure-to-warn claims based on the Roundup labeling/packaging are preempted under *Durnell.* Like his design defect claim, Howell's non-warnings-based claims for

---

Portier, Dr. Ritz, Dr. Weisenburger, and Dr. Jameson, is admissible and sufficient to raise a genuine dispute of material fact that glyphosate can cause NHL. *See* Case 3:16-md-02741-VC, Doc. No. 1596, Pretrial Order No. 45: Summary Judgment and Daubert Motions (July 10, 2018); Case 3:20-cv-07322-VC, Doc. No. 19, Order Denying Certain Wave 8 Motions to Exclude (February 10, 2025) (denying Daubert motions filed for preservation purposes against Plaintiff's specific causation expert, Conry, and all four Wave 8 general causation experts, Portier, Ritz, Weisenburger and Jameson). Additionally, Dr. Conry filed a supplemental report that demonstrates that as Roundup use increased, so too did NHL diagnoses. **Ex. 6.**

[17] To the extent the Court is persuaded that expert testimony is required, Plaintiff requests leave to disclose an additional expert who could offer additional testimony and expert opinion regarding the unreasonably dangerous nature of Roundup.

negligent misrepresentation and/or fraud (Fifth Cause of Action) and implied warranty (Fourth Cause of Action) also remain viable. *See* Dkt. 1 at ¶¶197-218. FIFRA does not regulate marketing of covered products as a matter of federal law. *See Indian Brand Farms, Inc. v. Novartis Crop Protection Inc.*, 617 F.3d 207, 210 (3d Cir. 2010) ("We conclude that because Plaintiffs' negligent misrepresentation/fraud and [state-law consumer fraud] claims are based on alleged misrepresentations in [defendant's] marketing brochure, and that brochure does not qualify as 'labeling' under FIFRA, those claims are not preempted.").[18] Thus FIFRA's preemption of label-based failure to warn claims does not immunize Monsanto from liability for any and all marketing practices. *See id.* Monsanto's duties in marketing Roundup and ensuring it was selling a non-defective product are all independent of federal labeling requirements, and Plaintiff has produced evidence demonstrating genuine issues of fact exist for trial on each of his remaining claims.

**A. Negligent Misrepresentation and/or Fraud**

Plaintiff has provided sufficient evidence to overcome summary judgment on his fifth cause of action for negligent misrepresentation and/or fraud based on Monsanto's marketing scheme. The evidence shows Monsanto knew about genotoxicity concerns and adverse findings in the scientific literature, yet its marketing conveyed a materially different message to consumers, including Tony Howell who justifiably relied on those representations to his detriment.

As noted *supra*, Monsanto has a long history of not only falsely advertising Roundup as "safe", but also of going to additional lengths to describe it as a "non-toxic" and even "biodegradable" product. Additionally, Monsanto's failure to disclose relevant safety information or even the simple fact that it had never tested Roundup to see if it was capable of causing cancer is also tortious. *See Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198 (1976) ("[I]t is well settled that where there is a duty to speak the concealment of a material fact is equivalent to fraudulent

---

[18] *See also N.Y. State Pesticide Coal., Inc. v. Jorling*, 874 F.2d 115, 118-19 (2d Cir. 1989) (reasoning the definition of "label" and "labeling" in FIFRA does not include a state's "notification requirements such as cover sheets, signs, and newspaper advertisements"); *Spittler v. Look Sports, Inc.*, 859 F.2d 924 (9th Cir. 1988) (unpublished) (finding the defendant's advertisements relevant to the consumer expectations test).

misrepresentation.") None of the advertisements even alluded to Monsanto's internal knowledge and concerns over Roundup's potential to cause cancer. Instead, Defendant's advertisements depicted end-users wearing short sleeves and short pants instead of advising consumers to wear protective clothing and masks while using Roundup. Such representations and omissions were clearly false and misleading, intentional, and used in marketing and other solicitation-type documents with the intent to deceive consumers like Howell.

Although Monsanto asserts there is no evidence that Howell ever saw any of its advertising (Dkt. 22 at 16), there is no evidence that he did not and Howell confirmed in his deposition that he had been led to believe that Roundup was safe for humans. A jury could reasonably conclude that Howell's reliance was justified, particularly given that there were no indicia of unreliability. And Monsanto's misrepresentations and omissions caused Howell's harm as the record establishes that information about the real risks of using Roundup would have impacted whether Howell purchased and used the product. Based on the evidence presented, Plaintiff has met his burden on each element of his claim for negligent misrepresentation and/or fraud and Monsanto is not entitled to summary judgment.

**B. Breach of Implied Warranty.**

Finally, contrary to Monsanto's assertion, Plaintiff's claim for breach of implied warranty does not fail. To establish a breach of implied warranty, a plaintiff must show the following elements: "(1) that the goods bought and sold were subject to an implied warranty of merchantability, (2) that the goods did not comply with the warranty in that the goods were defective at the time of sale, (3) that plaintiff's injury was due to the defective nature of the goods, and (4) that damages were suffered as a result." *Ascot Corp., LLC v. I&R Waterproofing, Inc.*, 286 N.C. App. 470, 479 (2022) (quoting *DeWitt v. Eveready Batter Co.*, 355 N.C. at 683).

A manufacturer breaches the implied warranty of merchantability when its product is unsafe for foreseeable uses. *See* N.C. Gen. Stat. § 25-2-314(1), (2)(c). Plaintiff was not required, as Monsanto asserts, to allege "that Roundup was not 'fit' for killing weeds…because it was not effective." Dkt. 22 at 18. Plaintiff is not suing Monsanto because Roundup did not work as a weed killer, but because it was an unsafe product that caused his cancer and resulting damages. The

implied warranty claim here alleges that Monsanto "knew of Roundup's intended use and impliedly warranted the product to be of merchantable quality and safe and fit for this use." Dkt. 1 at ¶199. Howell used Roundup for its ordinary purpose believing it was safe for humans. Monsanto made numerous representations in the media that Roundup was "safe" as discussed above. Among other things, Monsanto represented that there is "no evidence that glyphosate… causes cancer, even at very high doses" and that Roundup is "safer than table salt" and "practically nontoxic" at the time Howell was using the Roundup. Dkt. 1 at ¶¶40, 132 (emphasis omitted); **Ex. 44**, Aug. 25, 1978 Letter; **Ex. 45**, AG Discontinuation Order. Monsanto warranted and sold Roundup as safe for its foreseeable uses when it was not.

As demonstrated *supra*, Roundup was defective in that Plaintiff has made a valid claim for design defect under N.C. Gen. Stat. § 99B-5. Further, because Howell's injury was a caused by that defect and he suffered damages as a result, Plaintiff has met his burden on his implied warranty claim.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant Monsanto Company's Supplemental Motion for Summary Judgment

Respectfully submitted,

*/s/ Shreedhar R. Patel* .

Shreedhar R. Patel (CA SBN #347278)
SIMON GREENSTONE PANATIER, PC
901 Main Street, Suite 5900
Dallas, TX 75202
Tel: (214) 276-7680
Fax: (214) 276-7699
spatel@sgptrial.com

Audrey Snyder (NC SBN #52476)
WARD BLACK LAW
208 West Wendover Avenue
Greensboro, NC 27401
Tel: (336) 333-2244
asnyder@wardblacklaw.com

*Attorney for Plaintiffs Alice S. Ford, individually, and on behalf of the Estate of Tony Howell*

## PROOF OF SERVICE

I declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California. I am over eighteen years of age and not a party to the within action; my business address is 3760 Kilroy Airport Way, Suite 680, Long Beach, California 90806.

On the date set forth below, I served the foregoing document(s) described as:

- **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MONSANTO COMPANY'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

On all interested parties in this action by placing a true copy thereof enclosed in a sealed envelope(s) addressed and sent as follows:

**PER CM-ECF SERVICE LIST**

**[XX] BY ELECTRONIC SERVICE:** I certify that a copy of the document was filed and served on the CM/ECF system for the same day delivery to the offices of the addressee(s) on the CM/ECF Service List.

**[X] (FEDERAL)**: I declare under penalty of perjury, under the laws of the United States of America that the above is true and correct.

Executed this September 28, 2026 at Long Beach, California.

____________________________
Claudia Cortes