**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISCTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>Kari Dagny Louise Green, individually and<br>on behalf of Estate of Brian Leroy Green v.<br>Monsanto Company,<br>Case No. 3:23-cv-05878-VC | <u>Hearing:</u><br>Date: November 16, 2026<br>Time: 1:00 PM<br>Place: San Francisco Courthouse<br>Courtroom 3 |

**<u>PLAINTIFFS' BRIEF IN OPPOSITION TO MONSANTO COMPANY'S SUPPPLEMENTAL MOTION FOR SUMMARY JUDGMENT</u>**

## <u>INTRODUCTION</u>

Plaintiffs Kari Green, in her capacity individually and on behalf of the Estate of Brian Leroy Green filed this action because Defendant's Roundup® product causes cancer and Brian Green's death was caused by Defendant's defective product. Defendant's motion should be denied because Defendant's liability in this case is not solely based on a preempted failure to warn theory about labeling, but Plaintiffs' other theories of liability in Georgia law for defective design, negligence and breach of warranty survive *Darnell*. A jury should decide material factual issues in this case.

## STATEMENT OF FACTS

Brian Green died after being diagnosed with Non-Hodgkins Lymphoma by Andrew Thomas Johnson, M.D. in June 2020. Records of Brian Green's diagnosis and treatment produced to Defendant establish these facts. Included in the records is the Death Certificate regarding Brian Green. The **immediate cause** of death found on the Death Certificate, entered by Jaideep Patel, MD, is Lymphoma, with no other cause identified. Jaideep Patel, MD stated to the best of that medical doctor's knowledge Brian Green's death occurred at the time, date and place stated **due to** the cause stated on the certificate - Lymphoma. Mr. Green's medical records and history have been produced in the discovery process and through disclosures. Mr. Green's surviving spouse, Kari Green, has provided deposition testimony, which explained his exposure to Roundup, good health history before his NHL diagnosis and absence of long-term exposure to other toxins.

Importantly, testimony and admissions by Monsanto representatives in court proceedings about Roundup® raise questions of fact about the product, its design and lack of testing and other factors preclude summary judgment in Defendant's favor.

Roundup® is the brand-name for Defendant's glyphosate-based herbicides that are used to kill weeds on gardens, lawns, and around homes. *See Darnell*, 146 S. Ct. at 2008. Roundup® has glyphosate and other ingredient, such as surfactants,

in various quantities. See Declaration of David Wool ("Wool Decl.") (Barnes trial transcript at 2580:15-18; Plaintiffs' Omnibus Statement of Material Facts[1] ("PSMF") ¶¶ 50-51. Monsanto has never tested *formulated* Roundup® for carcinogenicity, despite decades of selling those products. See Exh. 2 to Wool Decl. (McKivison trial transcript) at 78:21-25. Numerous studies establish that glyphosate is a carcinogen that can also "produce DNA double strand breaks and resulting translocations commonly associated with NHL. *See* Monsanto Ex. 25 at 11-18.

Defendant has used extensive efforts to manipulate public opinion about the safety of Roundup®. *See In re Roundup Prods. Liab. Litig*. 364 F. Supp. 3d at 1089. Much of the evidence, including Monsanto's ghostwriting of articles and its aggressive attempt to discredit the 2015 IARC decision is well known to the Court. PTO 159 at 6; see also PMSF ¶¶ 64-70, 104-118. As long ago as the 1990s, Monsanto retained a public relations firm to "neutralize attacks on Roundup" by "utilizing leading environmental and toxicological experts to combat attacks…and to reinforce the benefits of Roundup herbicide to the media." Ex. 10 to Wool Decl. From these efforts to manipulate scientific discourse, the jury could infer not only that the potential cancer risk associated with glyphosate and Roundup® were known or knowable, but also that Defendant labored for decades to suppress the

[1] Plaintiffs incorporate by reference the Omnibus Statement of Material Facts filed by MLD leadership herein.

knowledge of the risk. *See Pilliod v. Monsanto Co.*, 67 Cal App. 591, 623 (2021).

**ARGUMENT AND CITATION OF AUTHORITY**

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56) (quotation marks omitted). A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court ... is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Allen*, 121 F.3d at 646 (citation omitted). The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id*. After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts

indicating summary judgment is improper because a material issue of fact does exist. *Id*.

Preemption is an affirmative defense for which the defendant bears the burden of pleading and proving. *See Dilts v. Penske Logistics, LLC*, 769 F. 2d 637, 641 (9th Cir. 2014).

While States may not impose "any requirements for labeling or packaging in addition to or different from those required" by EPA, states remain free to regulate the sale or use of pesticides more stringently than EPA does. 7 U.S.C. § 136v(a), (b). This freedom to restrict the sale or use of pesticides includes the imposition of state tort liability under theories such as design defect, negligent design, negligent failure to test, breach of warranty, and deceptive advertising or marketing conduct independent of the product's labeling or packaging. *See Monsanto Co. v. Durnell*, 609 U.S. ---, 2026 WL 1825691 (2026) (holding that FIFRA preempts only "label-based" failure to warn claims); *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 444 (2005). What is clear is FIFRA did not preempt claims against a manufacturer for, inter alia, defective design, negligent testing, and breach of express warranty because "[r]ules that require manufacturers to design reasonably safe products…plainly do not qualify as requirements for 'labeling or packaging.'" *Id.*

EPA's approval of a pesticide *label* does not reflect any determination on the part of EPA that the pesticide will be efficacious. Safety claims that would impose

*labeling* requirements "in addition to" or "different from" those required under FIFRA are preempted. Efficacy claims and other state law claims are not preempted.

In Georgia law, there are three general categories of product defects: manufacturing defects, design defects and marketing/packaging defects. *See Banks v. ICI Americas, Inc.*, 264 Ga. 732, 450 S.E.2d 671 (1994); *Maynard v. Snapchat, Inc.*, 313 Ga. 533, 870 S.E.2d 739 (2022). There are several ways a product can be "defective," including being defectively designed. *Maynard*, 313 Ga. at 536. Under Georgia's decisional law, when designing a product, a manufacturer has a duty to exercise reasonable care in "selecting from among alternative designs" to "reduce the reasonably foreseeable risks of harm presented by a product." *Id.* Because a manufacturer may owe a design duty under Georgia's product-liability statute or under its decisional law, a plaintiff injured by a defectively designed product can pursue a claim against a manufacturer under either a statutory strict-liability theory or a decisional-law negligence theory or both. *Id.* When a plaintiff alleges that a manufacturer defectively designed a product, the same test is used to assess breach of the manufacturer's design duty – that is, "whether a product was defective" for purposes of a strict-liability claim or "whether the manufacturer's conduct was reasonable" for purposes of a negligence claim. *Maynard,* 313 Ga. at 537, 870 S.E.2d at 746. Under either theory of recovery, the factfinder performs a "risk-

utility analysis," assessing "the reasonableness of choosing from among various alternative product designs" by asking whether "the risk of harm outweighs the utility of a particular design" to determine whether "the product is not as safe as it should be." *Id.*

Evidence of alternative produce designs with respect to Roundup® is in the record. By 1998, Monsanto had already developed alternative formulations of Roundup® for agricultural use in Europe that did not contain the POEA surfactant that has been shown to produce increased genotoxicity in laboratory studies. Monsanto had brought some of these to market by at least 1999. Although the category of surfactant used in these products has long been approved by EPA for use in pesticides in the United States, Monsanto did not reformulate its Roundup® products sold in the United States to remove POEA. PSMF ¶ 122, Exhibit 124, Email from Farmer to self, dated June 3, 1999, re: Mutagenicity Addendum, MONGLY01825671–72. In 2016 the European Union recommended that its member states ban the use of Roundup® formulated with POEA. Monsanto has thereafter sold Roundup® formulated with a non-POEA surfactant in Europe for agricultural and non-agricultural uses. Even after the European ban on POEA-containing Roundup®, however, Monsanto did not make those changes to the formulations sold in the United States. PSMF ¶ 122, Exhibit 125, European Commission Glyphosate Fact Sheet (Jun. 29, 2016).

By at least 2017, Monsanto was exploring how to reformulate Roundup® to use the ingredients in its new, glyphosate-free formulation. PSMF, ¶ 124, Exhibit 126, Email from Ratliff to Schweitzer dated May 22, 2017, re: Status on Replacement AI's, MONGLY08888015–17. In 2022, Monsanto **ceased** or **phased-out** selling glyphosate-based Roundup® in the United States for residential lawn & garden use, obtained the necessary EPA registration, and began marketing its new glyphosate-free Roundup® in its place. PSMF, ¶ 125, Exhibit 127, Trial Tr., Grantges v. Monsanto, No. 20SL-CC02256 (Mo. Cir. May 29, 2025) ("Farmer Grantges Trial Testimony") at 2784:12–2812:19; and 2891:10–2898:17; see also *Durnell v. Monsanto Co.*, 609 U.S. ---, 2026 WL 1825691, at *6, n.4 ("Monsanto has phased out residential products that contain glyphosate"). The active ingredients Monsanto ultimately chose (triclopyr, diquat dibromide, and fluazifop-P-butyl, and optionally, Imazapic-ammonium) had already been registered by EPA for use in pesticides in the United States for **decades** and had long been available to Monsanto. PSMF, ¶ 126, Ex. 127, Farmer Grantges Trial Testimony, at 2792:3—2795:5; Exhibit 128.

The ingredients in Monsanto's new glyphosate-free Roundup® lawn and garden formulation are safe and effective and are not known to cause cancer. PSMF, ¶ 127, Ex. 127, Farmer Grantges Trial Testimony at 2785:23–2786:3; 2795:11–2796:23, 2796:24–2797:4; Exhibit 132, Trial Tr., Cloud v. Monsanto Co.,

No. 21C-08-279 (De. Super. Feb. 7, 2024) ("Farmer Cloud Trial Testimony") at 47:2–48:13, 50:16–51:15, and 53:2–13; Exhibit 133, Herbicidal Compositions Comprising Fluazifop, Triclopyr and Diquat, U.S. Patent Application No. 17/903255, dated Sept. 6, 2022, ¶¶ 0009, 0014 (claiming the new formulation "ha[s] the desired properties and provides the desired weed killing effects [and] early visual symptomology" to "permit effective control of unwanted plants (weeds) in the field of plant protection and environmental health, in particular without the necessity to use glyphosate."). Exhibit 134, Bayer Global, Statement on Roundup Active Ingredient Safety, Oct. 22, 2024 ("The active ingredients (fluazifop-p-butyl, triclopyr TEA salt, diquat dibromide and imazapic ammonium) in the new Roundup Lawn & Garden products have been used effectively and safely in a variety of different weed-control products for decades.").

Monsanto's glyphosate-free Roundup formulation is also financially feasible. PSMF, ¶ 128. Ex. 127, Farmer Grantges Trial Testimony at 2897:5-10. Indeed, sales revenue for residential Roundup® remained steady after the change in formulation. See, e.g., Exhibit 135, Bayer Annual Report 2023, at 83 (reporting that while sales revenue for the Crop Science division had declined somewhat since 2022, this was "mainly due to lower prices for our glyphosate-based products as a result of reduced prices for generics.").

Plaintiffs show this Court that material issues of fact preclude summary

judgment for Monsanto. In the alternative, Plaintiffs respectfully urge this Court to enter and order reopening discovery for limited purposes to permit Plaintiffs to submit more specific expert reports or to dismiss this action without prejudice to the re-filing of the same within 180 days of the dismissal.

## CONCLUSION

For the foregoing reasons, Plaintiffs ask this Court to deny Monsanto's supplemental motion for summary judgment and to grant Plaintiffs relief by reopening discovery for limited purposes to permit Plaintiffs to submit more specific expert reports or to dismiss this action without prejudice to the re-filing of the same within 180 of the dismissal.

Respectfully submitted this 28th day of September 2025.

POOLE HUFFMAN, LLC

*<u>/s/ John Calhoun Harris, Jr.</u>*
John Calhoun Harris, Jr.
Georgia Bar No. 330522
1990 Lakeside Pkwy
Suite 300
Tucker, Georgia 30084
(404) 373-4008
Facsimile: 888-709-5723
cal@poolehuffman.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I, John Calhoun Harris, Jr. hereby certify that on September 28, 2025, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

This 28th day of September 2026.

POOLE HUFFMAN, LLC

*/s/ John Calhoun Harris, Jr.*
John Calhoun Harris, Jr.
Georgia Bar No. 330520
*Attorney for Plaintiffs*

1990 Lakeside Pkwy
Suite 300
Tucker, GA 30084
(404) 373-4008
cal@poolehuffman.com