# Exhibit A

Robin Greenwald
Robert J. Quigley (SBN 302879)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: (212) 558-5500
rgreenwald@weitzlux.com
rquigley@weitzlux.com
Co-Lead Counsel

David J. Dickens
The Miller Firm LLC
108 Railroad Avenue
Orange, VA 22960
540-672-4224 – Telephone
540-672-3055 – Fax
ddickens@millerfirmllc.com
Co-Lead Counsel

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-02741-VC<br><br>MDL No. 2741 |
| This document relates to:<br><br>*All Category One cases* | **CO-LEAD COUNSEL'S OMNIBUS OPPOSITION TO DEFENDANT MONSANTO COMPANY'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT ON THE SCOPE OF *DURNELL***<br><br>Hearing Date: November 16, 2026<br>Time: 1:00 p.m. PT<br>Place: Courtroom 3, 450 Golden Gate Ave., 17th Floor, San Francisco, CA 94102 |

## TABLE OF CONTENTS

INTRODUCTION ..... 1

PRELIMINARY STATEMENT ..... 3

ARGUMENT ..... 3

I. Background on Federal Preemption and FIFRA. ..... 4

A. The Framework for Evaluating Federal Preemption Defenses. ..... 4

B. FIFRA Expressly Preserves States' Historic Powers Alongside a Requirement for Uniform Labeling. ..... 5

II. *Durnell* Reaffirmed *Bates*'s Holding That FIFRA Does Not Preempt Claims, Like Plaintiffs', That Assert Common-Law Duties Not Based on Labeling or Packaging. ..... 7

III. Monsanto Does Not Meet Its "Demanding" Burden to Show Implied Impossibility Preemption of Plaintiffs' Claims. ..... 8

A. Plaintiffs' Design Defect Claims Are Not Impliedly Preempted. ..... 9

B. Plaintiffs' Non-Label-Based Warning Claims Are Not Expressly or Impliedly Preempted. ..... 12

IV. There Can Be No Implied Impossibility Preemption Where Monsanto Did the Very Thing It Calls "Impossible"—Reformulated Roundup, with EPA Approval. ..... 15

CONCLUSION ..... 16

**TABLE OF AUTHORITIES**

**Cases**

*Alison v. Monsanto Co.*,
No. 20SL-CC02828 (St. Louis Cnty. Cir. Ct., Mo. Sept. 9, 2026) ........ 4
*Ansagay v. Dow Agrosciences LLC*,
153 F. Supp. 3d 1270, 1277 (D. Haw. 2015) ........ 14, 15
*Aretino v. Monsanto Co.*,
No. 20SL-CC03676 (St. Louis Cnty. Cir. Ct., Mo. Sept. 9, 2026) ........ 4
*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) ........ 10, 11, 17
*Bylsma v. R.C. Willey*,
2017 UT 85, ¶ 26, 416 P.3d 595, 605 (Utah Dec. 1, 2017) ........ 12
*Chamber of Commerce v. Whiting*,
563 U.S. 582, 607 (2011) ........ 13
*Cipollone v. Liggett Group, Inc.*,
505 U.S. 504 (1992) ........ 10, 16
*Erie R. Co. v. Tompkins,*
304 U.S. 64 (1938) ........ 14
*Gade v. National Solid Wastes Management Assn.*,
505 U.S. 88 (1992) ........ 13
*Hamilton v. Motor Coach Indus., Inc.*,
569 S.W.2d 571 (Tex. Civ. App. 1978) ........ 12
*Holyfield v. Chevron U.S.A., Inc.*,
533 F. Supp. 3d 726 (E.D. Mo. 2021) ........ 15
*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
474 F. Supp. 3d 1231 (N.D. Fla. 2020) ........ 16
*In re Roundup Prods. Liab. Litig.*,
364 F. Supp. 3d 1085 (N.D. Cal. 2019) ........ 9, 14
*In the Matter of: Liphatech, Inc.*,
No. FIFRA-05-2010-0016, 2014 WL 1012749, (E.P.A. Mar. 12, 2014) ........ 17
*Merck Sharp & Dohme Corp. v. Albrecht*,
587 U.S. 299 (2019) ........ 7, 8, 13, 15
*Monsanto Co. v. Durnell,*
146 S. Ct. 2001 (2026) ........ passim
*Monsanto Co. v. Durnell*,
— S.Ct. —, 2026 WL 120678 (Mem), 22 L.Ed.2d 553 (Jan. 16, 2026) (No. 24-1068) ........ 4
*Mut. Pharm. Co. v. Bartlett,*
570 U.S. 472 (2014) ........ 7, 9, 13, 14

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011) .................... 7, 8, 12, 15
*Puerto Rico v. Franklin Cal. Tax-Free Trust*,
579 U.S. 115 (2016) .................... 7
*Quinn v. Gen. Elec. Co.*,
356 A.3d 2 (Md. 2026) .................... 12
*Shull v. Monsanto Co.*,
No. 25BA-CV4355, 2026 WL 2742795 (Mo. Cir. Aug. 31, 2026) .................... 4, 15
*Sternhagen v. Dow Co.*,
935 P.2d 1139 (Mont. 1997) .................... 12
*Wisconsin Pub. Intervenor v. Mortier*,
501 U.S. 597 (1991) .................... 8, 13
*Wyeth v. Levine*,
555 U.S. 555 (2009) .................... 7, 8, 12
*Yousefzadeh v. Johnson & Johnson Consumer Inc.*,
184 F.4th 130 (2d Cir. 2026) .................... 17

**Statutes**

7 U.S.C. § 136 .................... passim

**Other Authorities**

U.S. Const. Art. VI, cl. 2 .................... 7

**Rules**

54 Fed. Reg. 1122 (Jan. 11, 1989) .................... 17

**Regulations**

40 C.F.R. § 156.10 .................... 18
40 C.F.R. § 168.22 .................... 16, 17

## INTRODUCTION

In *Monsanto Co. v. Durnell*, the Supreme Court carefully held that label-based failure-to-warn claims are expressly preempted by FIFRA because they impose labeling requirements "in addition to" or "different from" those imposed under the statute. 146 S. Ct. 2001, 2006 (2026).[1] Monsanto now claims that the Supreme Court *actually* held that the Roundup litigation is over, with every state-law claim under the sun displaced by federal law. Nothing in *Durnell* says or even intimates that Monsanto's sweeping overreach is correct. That is for good reason. The very section of FIFRA that contains the label-based express preemption clause also codifies an express *non*-preemption clause that authorizes states to impose stringent regulations that go well beyond federal requirements. 7 U.S.C. § 136v(a). FIFRA cannot preempt design defect, negligence, and non-label-based failure-to-warn claims, among others, when Congress expressly authorized states to exercise their "authority" over those causes of action. *See Id.* Congress chose very different statutory text for generic pharmaceuticals, and the court cannot create similar preemption across dissimilar laws.

It should therefore come as no surprise that every Roundup court to have ruled on Monsanto's audacious distortion of *Durnell* has flatly rejected Monsanto's argument. *See, e.g.*, *Shull v. Monsanto Co.*, No. 25BA-CV4355, 2026 WL 2742795, at *2 (Mo. Cir. Aug. 31, 2026); Order Concerning Defendant's Amended Motion for Summary Judgment, *Aretino v. Monsanto Co.*, No. 20SL-CC03676 (St. Louis Cnty. Cir. Ct., Mo. Sept. 9, 2026) (Greenwald Decl., Ex. 1); Order Concerning Defendant's Amended Motion for Summary Judgment, *Alison v. Monsanto Co.*, No. 20SL-CC02828 (St. Louis Cnty. Cir. Ct., Mo. Sept. 9, 2026) (Greenwald Decl., Ex. 2).

---

[1] In granting certiorari, the Supreme Court narrowed Monsanto's proposed question presented to whether FIFRA (the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et seq.*) preempted a label-based failure-to-warn claim where the EPA has not required the warning. Opinion Granting Petition for Writ of Certiorari, *Monsanto Co. v. Durnell*, — S.Ct. —, 2026 WL 120678 (Mem), 22 L.Ed.2d 553 (Jan. 16, 2026) (No. 24-1068).

Plaintiffs' claims are also supported by sufficient evidence. Facts that are common to all Plaintiffs are included in the Omnibus Statement of Material Fact filed in support of all Category 1 cases. Dkt. 22675. First, Plaintiffs provide sufficient evidence that Roundup failed to perform as safely as an ordinary consumer would expect when it is used in a foreseeable way. The evidence also establishes a feasible alternative design. The evidence is not theoretical either: there is an actual alternative Roundup designed product that Monsanto has been selling for several years under the same brand name and for the same purpose, and it is not known to cause cancer. OSMF ¶¶ 122–128. This evidence alone raises a genuine issue of material fact defeating summary judgment on numerous claims at issue, before even reaching the individual case-specific evidence set forth in plaintiffs' opposition briefing.

Second, Plaintiffs provides sufficient evidence for their negligence claims. Under most state laws, manufacturers have a duty to use reasonable care to avoid exposing users of their products to an unreasonable risk of injury. Monsanto breached this duty by failing to conduct sufficient studies on Roundup products, violating various industry standards of conduct, withholding findings from the EPA, and ignoring evidence that indicated that their products could cause serious bodily harm. *See generally* OSMF ¶¶ 11–63, 71–78, 129–33. This breach led to Plaintiffs' non-Hodgkin's lymphoma diagnoses.

Third, Plaintiffs' non-label-based failure-to-warn claims are supported by evidence. In addition to making oral representations to certain individuals and distributing technical bulletins, fact sheets, and "Q&A" materials in person and online to "educate" customers, Monsanto airs commercials regularly that show Roundup users dressed in shorts, t-shirts and no gloves, which lures users to believe they can use Roundup indiscriminately without causing themselves injury. OSMF ¶¶ 11, 25, 30, 34, 49, 51–55, 62–63, 77–78. By 2015, Monsanto's marketing effectively

ensured that "the safety of residential Roundup is not a top-of-mind concern for today's consumer"– and even agricultural users routinely failed to take simple safety measures that would have reduced their own (and their children's) exposure. OSMF ¶¶ 93–96, 110.

Based on the above facts, and the facts of the individual Plaintiffs in Category 1 cases as set forth in their individual briefs, the Court should deny Defendant's supplemental summary judgment motion in its entirety and allow Plaintiffs' claims to proceed to trial.

## **PRELIMINARY STATEMENT**

At the September 22, 2026 case management conference, the Court strongly encouraged co-lead counsel to participate in the briefing of all Category 1 cases, which number nineteen cases.[2] Because co-lead counsel does not know the individual facts defeating summary judgment of each of the nineteen cases, and in an effort to best follow the Court's directive, co-lead counsel submits this omnibus legal brief setting forth the reasons why Monsanto's argument that non-label-based warning claims do not survive *Durnell* lacks merit.[3] There are several justiciable post-*Durnell* causes of action that Plaintiffs can and should be permitted to pursue.

## **ARGUMENT**

FIFRA expressly *authorizes* every remaining claim in Plaintiffs' cases. Where Congress unambiguously delegates "authority [to the] states" to "regulate the sale or use" of Roundup, wielding that delegated power cannot possibly conflict—impliedly or otherwise—with federal law.

---

[2] In discussing the upcoming briefing on summary judgment motions and motions to discuss, the Court stated that "the ideal scenario . . . would be representing the plaintiffs in all of these summary judgment motions and all of these motions to dismiss. . . ." Tr. of Sept. 22, 2026 Hearing at 13. The Court continued by suggesting that co-lead counsel file consolidated briefs.

[3] Co-Lead Counsel's pending administrative motion, Dkt. 22666, requested leave of Court to file additional omnibus briefing on behalf of all plaintiffs by Oct. 19, 2026. Though Co-Lead Counsel is submitting this brief today, the deadline for opposition briefing generally, additional time would be required to research state-specific claims and preemption arguments.

7 U.S.C. § 136v(a). Label-based failure-to-warn claims are preempted because Congress said so. 7 U.S.C. § 136v(b); *see also Durnell,* 146 S. Ct. at 2012. Design defect, negligence, and non-label-based failure-to-warn claims are not preempted because Congress enacted an "express non-preemption clause" that permits those state regulations with pellucid clarity. *Mut. Pharm. Co. v. Bartlett,* 570 U.S. 472, 493 (2014). Nothing in *Durnell* alters this conclusion. To the contrary, the decision reinforces it. Plaintiffs' claims should proceed.

## I. <u>Background on Federal Preemption and FIFRA.</u>

### A. The Framework for Evaluating Federal Preemption Defenses.

The Supremacy Clause provides that federal law made "in Pursuance" of the Constitution "shall be the supreme Law of the Land . . . any thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. To determine whether state law is "contrary" to federal law, courts deploy the ordinary tools of statutory construction. When a federal statute "contains an express pre-emption clause," courts are directed to "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 579 U.S. 115, 125 (2016) (citations omitted).

Even without express language displacing state law, it must give way if "it is impossible for a private party to comply with both state and federal requirements." *PLIVA, Inc. v. Mensing,* 564 U.S. 604, 617–18 (2011) (cleaned up). So-called implied impossibility preemption "is a demanding defense." *Wyeth v. Levine*, 555 U.S. 555, 573 (2009). The mere "possibility of impossibility [is] not enough." *Mensing*, 564 U.S. at 624 n.8. And because the Supremacy Clause "grants supreme status only to laws of the United States," only federal agency action carrying the force of law can create federal duties that conflict with state law. *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 315 (2019); *id.* at 321 (Thomas, J., concurring) (agency "musings" and

"hypothetical future" agency action are not "preemptive laws under the Supremacy Clause."). An implied impossibility preemption defense can succeed only if, after a detailed comparison of the duties arising under federal and state law, *Mensing*, 564 U.S. at 611, the court finds that there is an "actual conflict between state and federal law such that it [is] impossible to comply with both." *Albrecht*, 587 U.S. at 315. There is a presumption against implied preemption, so any doubts about whether defendant has shouldered its "heavy burden" are resolved in favor of preserving state authority. *See Wyeth*, 555 U.S. at 565.

### B. FIFRA Expressly Preserves States' Historic Powers Alongside a Requirement for Uniform Labeling.

Nothing in FIFRA affirmatively authorizes the sale of any pesticide. The effect of registration is to lift a federal prohibition on sales. *Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 613–14 (1991) (FIFRA "certainly does not equate registration and labeling requirements with a general approval to apply pesticides throughout the Nation"); 7 U.S.C. § 136j(a)(1)(A) (forbidding the sale of an unregistered pesticide). So even in the face of congressional silence, states would remain free—without any federal conflict—to safeguard public health by enacting more stringent requirements on pesticide sales or uses than those imposed by EPA during the registration process.

But FIFRA is not silent. In a section of the statute captioned "Authority of States,"[4] Congress expressly empowered states to "regulate the sale or use of any federally registered pesticide" so long as the "regulation does not permit any sale or use prohibited by this subchapter." 7 U.S.C. § 136v(a). The *only* category of regulation where a state may not insist on requirements

[4] The caption of section 136v reads, "Authority of the States." *See Durnell*, 146 S. Ct. at 2010 (finding "Uniformity" caption of section 136v(b) to be a "textually stated objective" relevant in construing the purpose of FIFRA's preemption clause).

"in addition to or different from" those imposed at registration are ones "for labeling or packaging." 7 U.S.C. § 136v(b). The statutory text of 7 U.S.C. § 136v is unequivocal. Congress enacted an "express non-preemption clause," *Bartlett*, 570 U.S. at 493, that authorizes states to impose non-label-based requirements for "*any* federally registered pesticide" so long as those requirements are *more* restrictive than those required by federal law. 7 U.S.C. § 136v(a) (emphasis added). These state-retained powers include the greatest power of all: a flat-out ban on the sale of a *registered* pesticide a state believes is dangerous, even if EPA has repeatedly concluded it is safe. *See Durnell* 146 S. Ct. at 2008, n.2. As this Court held earlier in this litigation, this power to ban pesticides gives states significant authority that has nothing to do with labeling: "if California can stop Monsanto from selling Roundup entirely, surely it can impose state-law duties that might require Monsanto to seek EPA approval before selling an altered version of Roundup in California. By contrast, nothing in the FDCA [the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*] allows a state to ban a drug." *In re Roundup Prods. Liab. Litig.*, 364 F. Supp. 3d 1085, 1088 (N.D. Cal. 2019).

States can require more than FIFRA does except in one narrow category: a pesticide's labeling or packaging. 7 U.S.C. § 136v(b). Because valid EPA regulations that carry the force of law forbid a manufacturer from departing from the label approved during the registration process, a state duty to change the warning label would be "in addition to or different from" the requirements under FIFRA. *Durnell*, 146 S. Ct. at 2014 (citing 40 C.F.R. §§ 152.44(a), 156.70(c)). This narrow express preemption clause does not touch Plaintiffs' remaining claims.

## II. *Durnell* Reaffirmed *Bates*'s Holding That FIFRA Does Not Preempt Claims, Like Plaintiffs', That Assert Common-Law Duties Not Based on Labeling or Packaging.

If the text of FIFRA were not clear enough, the Supreme Court's decision in *Bates v. Dow Agrosciences LLC* confirms Congress's unambiguous intentions. 544 U.S. 431 (2005). In *Bates,* the Court stated that determining whether a state tort imposes a requirement bearing on labeling or packaging "calls for an examination of the elements of the common-law duty at issue." *Id.* at 445 (citing *Cipollone v. Liggett Group, Inc*., 505 U.S. 504 (1992) (plurality opinion)). *Bates* stated that "rules governing the design of a product, for example, are not preempted," and further explained:

> Rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for "labeling or packaging." None of these common-law rules requires that manufacturers label or package their products in any particular way. Thus, petitioners' claims for defective design, defective manufacture, negligent testing, and breach of express warranty are not pre-empted.

*Id.* at 444.

*Bates* went on to reject the argument that, because the threat of liability for a non-label-based claim would lead a manufacturer to change its label, such claims should also be deemed requirements for labeling or packaging. Mere "speculation as to whether a jury verdict will prompt the manufacturer to take any particular action" is not a cognizable labeling "requirement" for purposes of section 136v(b). *Id.* at 445. *Durnell* did not depart from this framework. It reaffirmed

that under *Bates*, some "state tort duties constitute state labeling requirements" to the extent they "set the standard for a product's labeling." 146 S. Ct. at 2010 (citing *Bates*, 544 U.S. at 443–44).[5]

Plaintiffs' causes of action for negligence, design defect, and non-label-based failure to warn, among others, do not seek to enforce common-law duties that involve the contents of Roundup's labeling or packaging.[6] These claims are instead based on "[r]ules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments." 544 U.S. at 444. Thus, following *Durnell*, federal preemption does not diminish Monsanto's non-label-based duties to plaintiffs either to stop selling Roundup or to make a safer Roundup product.

### III. **Monsanto Does Not Meet Its "Demanding" Burden to Show Implied Impossibility Preemption of Plaintiffs' Claims.**

Plaintiffs' design defect and non-label-based claims impose more stringent requirements than EPA on "the sale or use of any registered pesticide," wielding the precise "authority of states" that Congress codified. 7 U.S.C. § 136v(a). Monsanto's response is remarkable. It claims that

---

[5] At oral argument, Monsanto's counsel and the United States agreed that design defect claims, for example, are not preempted by FIFRA. Tr. of Oral Arg., No. 24-1068 (Apr. 27, 2026), 31–32, available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-1068_fcgj.pdf (statement of Monsanto's counsel that "design defect claims are not preempted" unless they are "disguised failure-to-warn claims"); *id.* at 50–51 (statement of Principal Deputy Solicitor General that a "design defect claim that is not masquerading as a failure-to-warn claim is permissible under *Bates* for the reasons Mr. Clement said and the reasons that *Bates* itself recognizes").

[6] Other non-preempted, non-label-based causes of action include fraud, fraudulent misrepresentation, negligent misrepresentation, and breach of express or implied warranty. Applicable state law authorizes plaintiffs to pursue these claims without reference to any duty under state law that amounts to a labeling or packaging requirement, as further explained in the individual briefs of plaintiffs pursuing these claims. In light of *Durnell*, Plaintiffs recognize that they cannot move forward with their cause of action for label-based failure to warn.

Congress *impliedly* forbade states from doing what FIFRA *expressly* authorizes. That argument fails as a matter of law and logic. Where federal law unambiguously *authorizes* state regulations, federal law cannot simultaneously make it *impossible* to comply with them.

**A. Plaintiffs' Design Defect Claims Are Not Impliedly Preempted.**

Impossibility preemption requires comparing state and federal duties. *Mensing*, 564 U.S. at 611. Monsanto begins its argument by attacking a strawman, pretending that the duty imposed by state design-defect law is to "do what federal law prohibits Monsanto from doing unilaterally—change Roundup's formulation." *See, e.g.*, Defendant Monsanto Company's Notice of Motion and Supp. Motion for Summary Judgment in the "Category 1" Cases Governed by Florida Law at 23, *In re Roundup Prods. Liab. Litig.* No. 22524 (N.D. Cal. 2026) [hereinafter Supp. Florida MSJ].. For over 60 years, that has not been the relevant state-law duty. To the contrary, the state-law duty at issue in a design defect claim is "the duty of the seller . . . to refrain from placing a product into the stream of trade in an unreasonably dangerous, defective condition. Or put another way, the seller is under a duty not to market a product which subjects the consumer or user or someone in the vicinity of its use to an unreasonable risk of harm." *Hamilton v. Motor Coach Indus., Inc.*, 569 S.W.2d 571, 575 (Tex. Civ. App. 1978).[7] State law insists that a manufacturer not sell a defectively designed pesticide. Period. That is precisely the sort of more restrictive regulation on the "sale or use" of Roundup that Congress authorized. 7 U.S.C. § 136v(a). *Durnell* expressly reaffirms what

[7] *See also Bylsma v. R.C. Willey*, 2017 UT 85, ¶ 26, 416 P.3d 595, 605 (Utah Dec. 1, 2017) ("The seller's duty is not to sell a defective product—there is no analysis of due care or preventative measures"); *Sternhagen v. Dow Co.*, 935 P.2d 1139, 1146 (Mont. 1997), *reconsideration denied* (May 26, 2026) ("a seller [manufacturer] has a duty to prevent the release of any product in a defective condition unreasonably dangerous" into the market); *Quinn v. Gen. Elec. Co.*, 356 A.3d 2, 24 (Md. 2026) (explaining that a design defect claim "is predicated on the understanding that a manufacturer of an unreasonably dangerous product should be responsible for harm caused to those it is reasonably foreseeable will come into contact with its product.").

FIFRA's text plainly says. 146 S. Ct. at 2008 n.2 (a state has the authority to "out-right ban a pesticide within its borders.").

Monsanto cannot possibly carry its "demanding" burden to show that it was impossible to comply with this congressionally authorized state-law duty. *Wyeth*, 555 U.S. at 573. State law says do not sell Roundup if it meets the state definition of a defective product. Federal law says Roundup may be sold, not that it must be. *Mortier,* 501 U.S. at 613–14. Though state law may *differ* in some respects from federal law, differences only matter for purposes of the narrow, inapplicable express preemption clause. They have no bearing on the analysis for *impossibility,* where state law routinely imposes duties that are more onerous than federal obligations. *See Albrecht*, 587 U.S. at 607 ("[W]e have refused to find clear evidence of such impossibility where the laws of one sovereign permit an activity that the laws of the other sovereign restrict or even prohibit."); *Chamber of Commerce v. Whiting*, 563 U.S. 582, 607 (2011) (citing *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 111 (1992) (Kennedy, J., concurring)) ("Implied preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives'; such an endeavor 'would undercut the principle that it is Congress rather than the courts that preempts state law.'"). Those principles would apply even *absent* the express authority conferred by 7 U.S.C. § 136v(a). It follows *a fortiori* that where Congress *expressly authorized* states to go beyond FIFRA's requirements, FIFRA does not *impliedly* preempt those more stringent state obligations.

Nothing in *Bartlett* is to the contrary. *Cf.* Supp. Florida MSJ at 23–24. There, the Supreme Court found that federal law prohibited unilateral changes to the labeling of generic drugs, and the state-law duty would have required unilateral changes to drug labeling. *Bartlett*, 570 U.S. at 409. The Court rejected a "stop-selling" remedy under state law where this was a proposed *workaround*

to the state duty to change the generic drug label, which the generic drug manufacturers could not unilaterally do. *Id.* But the *core duty* imposed by state design-defect law is to not sell an unreasonably dangerous pesticide. This is not some backup-plan or workaround of the *real* duty to change Roundup's formulation. It is the *actual* state-law duty, which this Court must accept as the states articulate it under principles of federalism. *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938).

Regardless, FIFRA contains the very "express non-preemption clause" the Supreme Court found lacking in *Bartlett.* 570 U.S. at 492. For generic drugs, the Court was forced to "divine Congress' will from the duties" the Food, Drug, and Cosmetic Act imposed. *Id.* at 493; *See In re Roundup Prods. Liab. Litig.*, 364 F. Supp. 3d at 1088 ("nothing in the FDCA allows a state to ban a drug," in contrast with FIFRA). No such divination is required under FIFRA. Congress could not have been clearer that states retain authority to go beyond FIFRA to protect public health. 7 U.S.C. § 136v(a). This Court need only enforce FIFRA according to its plain terms.

A Hawaii district court considered, and rejected, similar defense arguments in *Ansagay v. Dow Agrosciences LLC*, 153 F. Supp. 3d 1270, 1277 (D. Haw. 2015). The defendant argued under *Bartlett* and *Mensing* that state-law tort claims pertaining to the plaintiff's deceased spouse's exposure to a pesticide containing chlorpyrifos were preempted because it would be impossible to comply with both FIFRA and the state-law duties that the plaintiff sought to impose. The *Ansagay* court recognized that FIFRA "contemplates that each state will regulate pesticide sales and use within its borders and authorizes such action." 153 F. Supp. 3d at 1283. This allowance for states to ban or restrict the use of EPA-approved pesticides "clearly undercuts" the defendant's "sweeping contention that any state law that impedes [the defendant's] ability to sell its registered product runs afoul of FIFRA." *Id.*

Other courts agree. Rejecting Monsanto's same implied preemption arguments post-*Durnell,* a Missouri court recently summed up the limits of *Durnell's* holding:

> [T]he *Durnell* Court's holding that FIFRA's labeling requirements expressly preempt a failure to warn claim that requires a manufacturer to use a label other than the EPA-approved label does not, in turn, lead to the conclusion that design defect and negligence claims are impliedly preempted. Under FIFRA, a manufacturer can change the composition of a product. FIFRA prescribes a procedure for, and not a per se prohibition on, changing a product's composition.

*Shull v. Monsanto Co.,* No. 25BA-CV4355, 2026 WL 2742795, at *2 (Mo. Cir. Aug. 31, 2026); *see also, Holyfield v. Chevron U.S.A., Inc.,* 533 F. Supp. 3d 726, 736 (E.D. Mo. 2021) ("Looking at the plain text of FIFRA, this Court sees no language indicating that design defect claims are expressly or impliedly preempted ... [I]t is apparent that the statutory scheme established by Congress permits state law liability even for pesticides registered by the EPA, including those that cannot be redesigned."); *Ansagay*, 153 F. Supp. 3d at 1281.

The Supreme Court has cautioned courts not to "distort the Supremacy Clause in order to create similar pre-emption across a dissimilar statutory scheme." *Mensing*, 564 U.S. at 626. This Court should decline Monsanto's invitation to do so here.[8]

**B. Plaintiffs' Non-Label-Based Warning Claims Are Not Expressly or Impliedly Preempted.**

---

[8] Nor can Monsanto establish impossibility by pointing to the fact that some states require evidence of a feasible alternative design to prove a design defect claim. Whether a feasible alternative design exists, and whether that design must be approved by a regulator, does not control the scope of the state duty. The duty is not to implement the alternative design. It is to *not sell* the defective design, and the design is defective in some states because an alternative was available. Whether that alternative could have been achieved quickly, cheaply, or expensively and after much regulatory back and forth is entirely irrelevant to the duty design defect law imposes. The hypothetical EPA response to some alternative design Monsanto did not submit is not a "law" of the United States with preemptive force. *Albrecht*, 587 U.S. at 315.

Monsanto's Roundup advertisements, which many of the Plaintiffs saw, conveyed the false and misleading message that Roundup was perfectly safe for use without any protective clothing or concern about dermal exposure. Such advertisements are not "labeling or packaging" that is the subject of FIFRA's express preemption provision, nor would it have been impossible for Monsanto to provide adequate warnings to consumers while complying with federal law.

Many states' laws simply require that an adequate warning concerning a dangerous product be provided. They say nothing about the warning needing to appear on the label, which is the only medium that FIFRA places off-limits. 7 U.S.C. § 136v(b); *Durnell,* 146 S. Ct. at 2012. A duty to warn consumers of harm by means other than pesticide labeling cannot be a duty that "constitute[s a] state labeling requirement[]" of the kind that *Durnell* found was preempted in that case. *Id.* at 2010; *see Cipollone*, 505 U.S. at 528–29 (plurality opinion) (fraud claims based on advertising misrepresentations were not preempted by federal tobacco regulations because they were predicated "on a more general obligation—the duty not to deceive").[9]

Monsanto contends that its advertisements are either "labeling" to the extent they "accompany[] the pesticide," Supp. Florida MSJ at 10 (quoting 7 U.S.C. § 136(p)(2)), or it would be impossible to truthfully warn consumers because to "contradict the EPA-approved label for Roundup and claim elsewhere that Roundup causes cancer is barred by impossibility preemption." *Id* at 12 (citing 40 C.F.R. § 168.22(a)). Neither contention holds water.

[9] *Cf. In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 474 F. Supp. 3d 1231, 1259 (N.D. Fla. 2020) (rejecting defense argument that there were "significant conflicts in failure-to-warn cases" involving earplug safety warnings where there was "no evidence—none—that the Army prohibited" warnings from being given, which could have been accomplished by placing warnings on the boxes in which the earplugs were shipped as well as on individual blister packs).

Monsanto's argument that advertisements are somehow a form of "labeling" is contravened by the plain language of FIFRA and by Monsanto's own conduct. FIFRA defines "labeling" as "all labels and all other written, printed, or graphic matter [] accompanying the pesticide or device at any time." 7 U.S.C. § 136(p)(2).[10] "Pesticide" and "device" are defined by reference to the physical "substance or mixture of substances" and the "instrument or contrivance" used to kill weeds, among other things, not the intangible brand advertised in a commercial. 7 U.S.C. § 136(h), (u). To read "accompanying" to mean anything other than the physical label affixed to this physical product or written materials that are inside of the packaging defies the plain text. Monsanto does not really believe its own argument, as it has never submitted each and every advertisement it disseminates to the EPA for its prior approval as forms of "labeling." Lest the company is violating FIFRA countless times per day, its argument is made for litigation only.

Monsanto's impossibility argument fares no better. Unlike the FDCA, the statute at issue in the *Yousefzadeh* case on which Monsanto relies,[11] FIFRA does not treat advertising about a pesticide as labeling. The regulatory provision that Monsanto cites, 40 C.F.R. § 168.22(a), was promulgated as part of an EPA interpretative statement intended to offer guidance to industry on agency enforcement priorities. 54 Fed. Reg. 1122 (Jan. 11, 1989), *available at* https://archives.federalregister.gov/issue_slice/1989/1/11/1116-1134.pdf. EPA's final interpretative rule made clear that "FIFRA does not grant EPA plenary authority to regulate advertising as such," and that EPA merely sought to "state clearly its position with regard to claims

[10] The definition also includes such matters "to which reference is made on the label or in literature accompanying the pesticide or device," excluding certain official publications. 7 U.S.C. § 136(p)(2)

[11] *See* Supp. Florida MSJ at 11 (citing *Yousefzadeh v. Johnson & Johnson Consumer Inc.*, 184 F.4th 130, 151 (2d Cir. 2026)).

in advertising that are made 'to induce the * * * sale and use' of a pesticide and that therefore are a part of the distribution or sale of the pesticide." *Id.* at 1124. In other words, this staff interpretation provides further confirmation that advertisements are *not* labels for FIFRA purposes. Accordingly, EPA administrative pronouncements have consistently rejected the argument that advertisements should be deemed a form of labeling. *In the Matter of: Liphatech, Inc., Respondent*, 2014 WL 1012749, at *20 (E.P.A. Mar. 12, 2014); *see also Bates*, 544 U.S. at 444 n.17 ("To the extent that petitioners' warranty and fraud claims are based on oral representations made by Dow's agents, they fall outside the text of § 136v(b) for an independent reason. . . . any requirement that applied to a sales agent's *oral* representations would not be a requirement for "labeling or packaging").

Even if some ads were somehow deemed "labels," this would not help Monsanto's cause, because EPA deems it per se misleading to make safety claims of any kind on a pesticide's labeling. *See* 40 C.F.R. § 156.10(a)(5)(ix) (it is "false or misleading" to make "[c]laims as to the safety of the pesticide or its ingredients"). Either way, FIFRA does not preempt states from using their well-established police powers to require adequate off-label warnings. Monsanto comes nowhere near the demanding showing required to support an implied impossibility preemption defense.[12]

## IV. <u>There Can Be No Implied Impossibility Preemption Where Monsanto Did the Very Thing It Calls "Impossible"—Reformulated Roundup, with EPA Approval.</u>

Monsanto's argument that it cannot reformulate Roundup without EPA's permission, *e.g.*, Supp. Florida MSJ at 24, elides over the fact that Monsanto did, in fact, receive EPA permission

[12] Plaintiffs are in good company. The United States, which backed Monsanto in *Durnell*, agrees. It expressly told the Court it should remand so the state court could consider any non-label-based warning theories that Durnell had adequately preserved. *See* Brief for the United States as Amicus Curiae Supporting Petitioner at 17, *Monsanto Co. v. Durnell*, 146 S. Ct. 2001 (2026) (No. 24-1068) ("To the extent respondent now contends (Br. In Opp. 17–23; Supp. Br. 2–6, 11–12) that his claim involves advertising, manufacturing, or the failure to alert the EPA, those case-specific issues are outside the question presented but may be addressed on remand (if preserved).").

to reformulate a glyphosate-free version of Roundup—a fact that the Supreme Court took under advisement in *Durnell* itself. 146 S. Ct. at 2009 n.4 ("Monsanto has phased out residential Roundup products that contain glyphosate."). In 2022, Monsanto ceased or phased out selling glyphosate-based Roundup in the United States for residential lawn and garden use, obtained the necessary EPA registration, and began marketing its new glyphosate-free Roundup in its place. OSMF ¶ 125. Monsanto cannot make out a viable impossibility defense when the action it complains of is not only possible, but is something it has already done.

## CONCLUSION

For the foregoing reasons, Co-Lead Counsel respectfully requests that the Court deny Defendant's supplemental summary judgment motions.

Dated September 28, 2026

Respectfully submitted,

By: /s/ Robin Greenwald
Robin Greenwald
Robert J. Quigley (SBN 302879)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: (212) 558-5500
rgreenwald@weitzlux.com
rquigley@weitzlux.com

/s/ David J. Dickens
David J. Dickens
The Miller Firm LLC
108 Railroad Avenue
Orange, VA 22960
540-672-4224 – Telephone
540-672-3055 – Fax
ddickens@millerfirmllc.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Monday, September 28, 2026, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Robin Greenwald*