Robin Greenwald (*pro hac vice*)
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
rgreenwald@weitzlux.com
Co-Lead Counsel

David J. Dickens (*pro hac vice*)
**THE MILLER FIRM LLC**
108 Railroad Avenue
Orange, VA 22960
Telephone: 540-672-4224
ddickens@millerfirmllc.com
Co-Lead Counsel

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Emory Moreland v. Monsanto Co.*<br>3:20-cv-03069 | MDL NO. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT MONSANTO COMPANY'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

**INTRODUCTION** ........ 1

STATEMENT OF FACTS ........ 1

LEGAL STANDARD ........ 3

ARGUMENT ........ 3

I. Background on Federal Preemption and FIFRA. ........ 4

A. The Framework for Evaluating Federal Preemption Defenses. ........ 4

B. FIFRA Expressly Preserves States' Historic Powers Alongside a Requirement For Uniform Labeling. ........ 5

II. *Durnell* Reaffirmed Bates's Holding That FIFRA Does Not Preempt Claims, Like Plaintiff's, That Assert Common-Law Duties Not Based on Labeling or Packaging. ... 6

III. Monsanto Does Not Meet Its "Demanding" Burden to Show Implied Impossibility Preemption of Plaintiff's Claims. ........ 8

A. Plaintiff's Design Defect Claim Is Not Impliedly Preempted. ........ 8

B. Plaintiff's Non-Label-Based Warning Claims Are Not Expressly or Impliedly Preempted. ........ 12

IV. There Can Be No Implied Impossibility Preemption Where Monsanto Did the Very Thing It Calls "Impossible"—Reformulated Roundup, with EPA Approval. ........ 15

V. Plaintiff Moreland's Remaining Claims Are Not All "Disguised Failure-to Warn Claims." ........ 15

A. Monsanto Is Not Entitled to Summary Judgment on Plaintiff's Design Defect Claim. 18

B. Plaintiff Moreland's Negligence Claim Is Not Preempted by Durnell. ........ 20

VI. Like Plaintiff's Non-Label-Based Warning Claims, Plaintiff's Fraud And Breach of Implied Warranty Claims Remain Viable After Durnell. ........ 21

VII. In the Alternative, Plaintiff Moreland Should Be Permitted to Amend His Pleadings and Supplement Discovery in this Case in Light of Durnell's Intervening Change of Law. ........ 23

CONCLUSION ........ 25

**TABLE OF AUTHORITIES**

**Pages**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ... 6
*Ansagay v. Dow Agrosciences LLC*,
153 F. Supp. 3d 1270 (D. Haw. 2015) ... 13, 14
*Banks v. ICI Americas, Inc.*,
450 S.E.2d 671 (Ga. 1994) ... 21, 22, 23
*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) ... 9, 10, 17, 20
*Bowden v. Med. Ctr., Inc.*,
845 S.E.2d 555 (Ga. 2020) ... 24
*Brosseau v. Haugen*
543 U.S. 194 (2004) ... 6
*Bylsma v. R.C. Willey*,
416 P.3d 595 (Utah Dec. 1, 2017) ... 11
*Chamber of Commerce v. Whiting*,
563 U.S. 582 (2011) ... 12
*Chrysler Corp. v. Batten*,
450 S.E.2d 208 (1994) ... 23, 24
*Cipollone v. Liggett Group, Inc.*,
505 U.S. 504 (1992) ... 9, 15
*Cochran v. Brinkmann Corp.,*
No. 1:08-CV-1790-WSD, 2009 WL 4823854 (N.D. Ga. Dec. 9, 2009) ... 22
*Cochran v. The Brinkmann Corp.,*
381 F. App'x 968 (11th Cir. 2010) ... 22, 23
*Cryer v. Idaho Dep't of Lab.*,
No. 1:16-cv-00526-BLW, 2018 WL 3636529 (D. Idaho July 30, 2018) ... 27
*Dean v. Toyota Indus. Equip. Mfg., Inc.*,
540 S.E.2d 233 (Ga. App. 2000) ... 22
*Del Rio v. Virgin Am., Inc.,*
No. CV 18-1063-GW(SKX), 2019 WL 210957 (C.D. Cal. Jan. 3, 2019) ... 27
*Doe I v. Nestle USA, Inc.,*
766 F.3d 1013 (9th Cir. 2014) ... 27
*Elder v. Reliance Worldwide Corp.,*
563 F. Supp. 3d 1221 (N.D. Ga. 2021) ... 25
*Erie R. Co. v. Tompkins,*
304 U.S. 64 (1938) ... 13
*Gade v. National Solid Wastes Management Assn.*,
505 U.S. 88 (1992) ... 12
*Hamilton v. Motor Coach Indus., Inc.*,
569 S.W.2d 571 (Tex. Civ. App. 1978) ... 11, 20

*Holyfield v. Chevron U.S.A., Inc.*,
533 F. Supp. 3d 726 (E.D. Mo. 2021)........................................................................ 14
*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
474 F. Supp. 3d 1231 (N.D. Fla. 2020)...................................................................... 15
*In re Roundup Prods. Liab. Litig.*,
364 F. Supp. 3d 1085 (N.D. Cal. 2019) ........................................................... 9, 13, 26
*In the Matter of: Liphatech, Inc., Respondent*,
2014 WL 1012749 (E.P.A. Mar. 12, 2014) ................................................................ 17
*Jones v. Cranman's Sporting Goods*,
237 S.E.2d 402 (Ga. App. 1977)................................................................................ 25
*Lee v. Mylan Inc.*,
806 F. Supp. 2d 1320 (M.D. Ga. 2011) ..................................................................... 25
*Merck Sharp & Dohme Corp. v. Albrecht*,
587 U.S. 299 (2019)........................................................................................... 7, 12, 15
*Monsanto Co. v. Durnell*,
146 S. Ct. 2001 (2026)................................................................................................ 3, 4
*Monsanto Co. v. Durnell*,
No. 24-1068, 2026 WL 120678 (U.S. Jan. 16, 2026) ............................................... 27
*Mut. Pharm. Co. v. Bartlett*,
570 U.S. 472 (2014)............................................................................................. 6, 8, 13
*People for Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.*,
No. 8:16-CV-2899-T-36AAS, 2018 WL 2715460 (M.D. Fla. June 6, 2018) ......................... 27
*Persinger v. Step By Step Infant Dev. Ctr.*,
560 S.E.2d 333 (Ga. App. 2002)................................................................................ 22
*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011)........................................................................................... 7, 11, 14
*Puerto Rico v. Franklin Cal. Tax-Free Trust*,
579 U.S. 115 (2016)...................................................................................................... 7
*Quinn v. Gen. Elec. Co.*,
356 A.3d 2 (Md. 2026) ............................................................................................... 11
*S K Hand Tool Corp. v. Lowman*,
479 S.E.2d 103 (Ga. App.1996).................................................................................. 22
*Sternhagen v. Dow Co.*,
935 P.2d 1139 (Mont. 1997) ....................................................................................... 11
*Velez v. Foresters Life Ins. & Annuity Co.*,
No. 2:22-CV-08932-ODW(MBKX), 2025 WL 3691474 (C.D. Cal. Dec. 11, 2025) ............. 27
*Wilson Foods Corp. v. Turner*,
460 S.E.2d 532 (Ga. App. 1995).......................................................................... 21, 23
*Wisconsin Pub. Intervenor v. Mortier*,
501 U.S. 597 (1991)................................................................................................ 7, 12
*Woodall v. Orkin Exterminating Co.*,
332 S.E.2d 173 (1985) ................................................................................................ 25
*Wyeth v. Levine*,
555 U.S. 555 (2009)................................................................................................ 7, 12

*Yousefzadeh v. Johnson & Johnson Consumer Inc.*,
184 F.4th 130 (2d Cir. 2026) ........ 16
*Zetwick v. Cnty. of Yolo,*
850 F.3d 436 (9th Cir. 2017) ........ 6

**Other Authorities**

U.S. Const. Art. VI, cl. 2 ........ 6

**Rules**

54 Fed. Reg. 1122 (Jan. 11, 1989) ........ 16

Fed. R. Civ. P. 15 ........ 27

Fed. R. Civ. P. 16 ........ 27

Fed. R. Civ. P. 56 ........ 5, 24

**Regulations**

40 C.F.R. § 156.10 ........ 17

40 C.F.R. § 168.22 ........ 16

## INTRODUCTION

On June 25, 2026, the Supreme Court issued its opinion in *Monsanto Co. v. Durnell*, 146 S. Ct. 2001 (2026), and held that the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) expressly preempts a state-law failure-to-warn claim that "would require Monsanto to add a cancer warning to Roundup's label" where EPA has not required it. *Id.* at 2006. The holding is limited to express preemption of *label-based failure to warn claims*.

Mr. Moreland, however, brings other claims, including design defect, negligence, and other non-label-based claims. Monsanto now argues that these claims also are preempted under *Durnell*—that no state cause of action can survive the *Durnell* decision.

Every remaining claim in Mr. Moreland's case is expressly *authorized* under FIFRA. There is no "implied preemption" under FIFRA, and state law claims can stem from duties that have nothing to do with product labels. States retain tremendous power to regulate and even ban the sale of a registered pesticide if a state believes it is dangerous—even if EPA repeatedly fails to require a warning. The *Durnell* decision reinforces—not diminishes—that power. *See Durnell* at 2008 n.2.

Monsanto skews the holding of *Durnell* and asks this Court to use it to slam closed the courthouse door to plaintiffs who have suffered devastating injuries as a result of Monsanto's decision to keep its cancer-causing product on the market. Monsanto's motion should be denied in its entirety.

## STATEMENT OF FACTS

Plaintiff incorporates by reference as if fully stated herein Co-Lead Counsel's Omnibus Statement of Material Facts (OMSF), which was filed contemporaneously herewith.

Plaintiff Emory Moreland, Jr. filed this lawsuit in the Southern District of Georgia on March 9, 2020. ECF No. 1, Complaint, *Moreland v. Monsanto Co*., Member Case No. 20-cv-

03069-VC ("Moreland Complaint"). Mr. Moreland, before his untimely death, was an African American[1] man who sprayed Roundup extensively at four locations in Georgia across three decades before being diagnosed with Diffuse Large B-Cell Lymphoma (DLBCL), a subtype of non-Hodgkins's lymphoma (NHL) in 2019. Greenwald Decl., Exhibit 1, Emory Moreland Dep. Tr., *Emory Moreland v. Monsanto Co.*, Member Case No. 3:20-cv-03069-VC (N.D. Cal. July 11, 2024), ("Moreland Dep.), at 71:24–72:12; 74:22–75:5; 76:17–23; 110:15–18; Moreland Compl. at ¶¶ 91–93. He first used Roundup in the 1990s to clear weeds at his personal residence. Moreland Dep. at 67:10–20. He then began to help other family members with their yards, including the homes of his mother, father, and mother-in-law, where he also used Roundup. In the case of his father, Mr. Moreland began landscaping his home when his father went blind in 2000 and continued for ten years. *Id.* at 70:9–24. Mr. Moreland's wife, Yvonne, testified that she recalls Mr. Moreland spraying at their home and at each of the family-owned properties; she explained that because their parents were aging they could no longer tend their own yards. Greenwald Decl., Exhibit 2, Yvonne Moreland Dep. Tr., *Emory Moreland v. Monsanto Co.*, Member Case No. 3:20-cv-03069-VC (N.D. Cal. July 11, 2024), ("Yvonne Moreland Dep."), at 27:6–29:8. Mr. Moreland sprayed Roundup at these properties year-round. Moreland Dep. at 68:14–23. Both Mr. Moreland and his wife testified that they saw Monsanto's Roundup commercials on television. *Id.* at 48:18–49:20; Yvonne Moreland Dep. at 50:6–14. Throughout the time Mr. Moreland used Roundup, these commercials portrayed residential users like Mr. Moreland casually spraying Roundup bare-

[1] "Caucasians are slightly more likely to develop NHL than Asian Americans or African Americans." ECF No. 20227-2, Expert Report of Kevin Knopf, M.D., M.P.H. in Support of Specific Causation at 18.

handed, in short sleeves and sometimes shorts, and around children. OMSF, at ¶¶ 11, 49, 51–55, 63, 77–78.

Mr. Moreland's case is among the cases this Court has classified as "remand ready." ECF No. 20416, Pretrial Order No. 325. This Court also granted Mr. Moreland's motion in part to exclude Monsanto's expert Walter Longo. ECF No. 20418, Pretrial Order No. 327.

## LEGAL STANDARD

Granting summary judgment is an extraordinary remedy that is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) Courts "are required to view all facts and draw all reasonable inferences in favor of the nonmoving party." *Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004). "This ... is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) quoting *Anderson,* 477 U.S. at 249.

## ARGUMENT

FIFRA expressly *authorizes* every remaining claim in Mr. Moreland's case. Where Congress unambiguously delegates "authority [to the] states" to "regulate the sale or use" of Roundup, wielding that delegated power cannot possibly conflict—impliedly or otherwise—with federal law. 7 U.S.C. § 136v(a). Label-based failure-to-warn claims are preempted because Congress said so. 7 U.S.C. § 136v(b); *see also Durnell,* 146 S. Ct. at 2012. Design defect, negligence, and non-label-based failure-to-warn claims are not preempted because Congress

enacted an "express non-preemption clause" that permits those state regulations with pellucid clarity. *Mut. Pharm. Co. v. Bartlett,* 570 U.S. 472, 493 (2014)Nothing in *Durnell* alters this conclusion. To the contrary, the decision reinforces it. Plaintiff's claims should proceed.

## I. Background on Federal Preemption and FIFRA.

### A. The Framework for Evaluating Federal Preemption Defenses.

The Supremacy Clause provides that federal law made "in Pursuance" of the Constitution "shall be the supreme Law of the Land . . . any thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. To determine whether state law is "contrary" to federal law, courts deploy the ordinary tools of statutory construction. When a federal statute "contains an express pre-emption clause," courts are directed to "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 579 U.S. 115, 125 (2016) (citations omitted).

Even without express language displacing state law, it must give way if "it is impossible for a private party to comply with both state and federal requirements." *PLIVA, Inc. v. Mensing,* 564 U.S. 604, 617–18 (2011) (cleaned up). So-called implied impossibility preemption "is a demanding defense." *Wyeth v. Levine*, 555 U.S. 555, 573 (2009). The mere "possibility of impossibility [is] not enough." *Mensing*, 564 U.S. at 624 n.8. And because the Supremacy Clause "grants supreme status only to laws of the United States," only federal agency action carrying the force of law can create federal duties that conflict with state law. *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 315 (2019); *id.* at 321 (Thomas, J., concurring) (agency "musings" and "hypothetical future" agency action are not "preemptive laws under the Supremacy Clause."). An implied impossibility preemption defense can succeed only if, after a detailed comparison of the duties arising under federal and state law, *Mensing*, 564 U.S. at 611, the court finds that there is

an "actual conflict between state and federal law such that it [is] impossible to comply with both." *Albrecht*, 587 U.S. at 315. There is a presumption against implied preemption, so any doubts about whether defendant has shouldered its "heavy burden" are resolved in favor of preserving state authority. *See Wyeth*, 555 U.S. at 565.

### B. FIFRA Expressly Preserves States' Historic Powers Alongside a Requirement For Uniform Labeling.

Nothing in FIFRA affirmatively authorizes the sale of any pesticide. The effect of registration is to lift a federal prohibition on sales. *Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 613–14 (1991) (FIFRA "certainly does not equate registration and labeling requirements with a general approval to apply pesticides throughout the Nation"); 7 U.S.C. § 136j(a)(1)(A) (forbidding the sale of an unregistered pesticide). So even in the face of congressional silence, states would remain free—without any federal conflict—to safeguard public health by enacting more stringent requirements on pesticide sales or uses than those imposed by EPA during the registration process.

But FIFRA is not silent. In a section of the statute captioned "Authority of States,"[2] Congress expressly empowered states to "regulate the sale or use of any federally registered pesticide" so long as the "regulation does not permit any sale or use prohibited by this subchapter." 7 U.S.C. § 136v(a). The *only* category of regulation where a state may not insist on requirements "in addition to or different from" those imposed at registration are ones "for labeling or packaging." 7 U.S.C. § 136v(b). The statutory text of 7 U.S.C. § 136v is unequivocal. Congress enacted an "express non-preemption clause," *Bartlett*, 570 U.S. at 493, that authorizes states to

[2] The caption of section 136v reads, "Authority of the States." *See Durnell*, 146 S. Ct. at 2010 (finding "Uniformity" caption of section 136v(b) to be a "textually stated objective" relevant in construing the purpose of FIFRA's preemption clause).

impose non-label-based requirements for "*any* federally registered pesticide" so long as those requirements are *more* restrictive than those required by federal law. 7 U.S.C. § 136v(a) (emphasis added). These state-retained powers include the greatest power of all: a flat-out ban on the sale of a *registered* pesticide a state believes is dangerous, even if EPA has repeatedly concluded it is safe. *See Durnell* 146 S. Ct. at 2008, n.2. As this Court held earlier in this litigation, this power to ban pesticides gives states significant authority that has nothing to do with labeling: "if California can stop Monsanto from selling Roundup entirely, surely it can impose state-law duties that might require Monsanto to seek EPA approval before selling an altered version of Roundup in California. By contrast, nothing in the FDCA [the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*] allows a state to ban a drug." *In re Roundup Prods. Liab. Litig.*, 364 F. Supp. 3d 1085, 1088 (N.D. Cal. 2019).

States can require more than FIFRA does except in one narrow category: a pesticide's labeling or packaging. 7 U.S.C. § 136v(b). Because valid EPA regulations that carry the force of law forbid a manufacturer from departing from the label approved during the registration process, a state duty to change the warning label would be "in addition to or different from" the requirements under FIFRA. *Durnell*, 146 S. Ct. at 2014 (citing 40 C.F.R. §§ 152.44(a), 156.70(c)). This narrow express preemption clause does not touch Plaintiff's remaining claims.

## II. <u>*Durnell* Reaffirmed Bates's Holding That FIFRA Does Not Preempt Claims, Like Plaintiff's, That Assert Common-Law Duties Not Based on Labeling or Packaging.</u>

If the text of FIFRA were not clear enough, the Supreme Court's decision in *Bates v. Dow Agrosciences LLC* confirms Congress's unambiguous intentions. 544 U.S. 431 (2005). In *Bates,* the Court stated that determining whether a state tort imposes a requirement bearing on labeling or packaging "calls for an examination of the elements of the common-law duty at issue." *Id.* at 445 (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) (plurality opinion)). *Bates* stated

that "rules governing the design of a product, for example, are not preempted," and further explained:

> Rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for "labeling or packaging." None of these common-law rules requires that manufacturers label or package their products in any particular way. Thus, petitioners' claims for defective design, defective manufacture, negligent testing, and breach of express warranty are not pre-empted.

*Id.* at 444.

*Bates* went on to reject the argument that, because the threat of liability for a non-label-based claim would lead a manufacturer to change its label, such claims should also be deemed requirements for labeling or packaging. Mere "speculation as to whether a jury verdict will prompt the manufacturer to take any particular action" is not a cognizable labeling "requirement" for purposes of section 136v(b). *Id.* at 445. *Durnell* did not depart from this framework. It reaffirmed that under *Bates*, some "state tort duties constitute state labeling requirements" to the extent they "set the standard for a product's labeling." 146 S. Ct. at 2010 (citing *Bates*, 544 U.S. at 443–44).[3]

Plaintiff's causes of action for negligence, design defect, and non-label-based failure to warn, among others, do not seek to enforce common-law duties that involve the contents of Roundup's labeling or packaging.[4] These claims are instead based on "[r]ules that require

---

[3] At oral argument, Monsanto's counsel and the United States agreed that design defect claims, for example, are not preempted by FIFRA. Tr. of Oral Arg., No. 24-1068 (Apr. 27, 2026), 31–32, available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-1068_fcgj.pdf (statement of Monsanto's counsel that "design defect claims are not preempted" unless they are "disguised failure-to-warn claims"); *id.* at 50–51 (statement of Principal Deputy Solicitor General that a "design defect claim that is not masquerading as a failure-to-warn claim is permissible under *Bates* for the reasons Mr. Clement said and the reasons that *Bates* itself recognizes").

[4] Other non-preempted, non-label-based causes of action include fraud, fraudulent misrepresentation, negligent misrepresentation, and breach of express or implied warranty.

manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments." 544 U.S. at 444. Thus, following *Durnell*, federal preemption does not diminish Monsanto's non-label-based duties to plaintiffs either to stop selling Roundup or to make a safer Roundup product.

## III. <u>Monsanto Does Not Meet Its "Demanding" Burden to Show Implied Impossibility Preemption of Plaintiff's Claims.</u>

Plaintiff's design defect and non-label-based claims impose more stringent requirements than EPA on "the sale or use of any registered pesticide," wielding the precise "authority of states" that Congress codified. 7 U.S.C. § 136v(a). Monsanto's response is remarkable. It claims that Congress *impliedly* forbade states from doing what FIFRA *expressly* authorizes. That argument fails as a matter of law and logic. Where federal law unambiguously *authorizes* state regulations, federal law cannot simultaneously make it *impossible* to comply with them.

### A. Plaintiff's Design Defect Claim Is Not Impliedly Preempted.

Impossibility preemption requires comparing state and federal duties. *Mensing*, 564 U.S. at 611. Monsanto begins its argument by attacking a strawman, pretending that the duty imposed by state design-defect law is to "do what federal law prohibits Monsanto from doing unilaterally—change Roundup's formulation." *See*, *e.g.*, Mot. at 17. For over 60 years, that has not been the relevant state-law duty. To the contrary, the state-law duty at issue in a design defect claim is "the duty of the seller . . . to refrain from placing a product into the stream of trade in an unreasonably dangerous, defective condition. Or put another way, the seller is under a duty not to market a

---

Applicable state law authorizes plaintiffs to pursue these claims without reference to any duty under state law that amounts to a labeling or packaging requirement, as further explained in the individual briefs of plaintiffs pursuing these claims. In light of *Durnell*, Plaintiff recognizes that he cannot move forward with his cause of action for label-based failure to warn.

product which subjects the consumer or user or someone in the vicinity of its use to an unreasonable risk of harm." *Hamilton v. Motor Coach Indus., Inc.*, 569 S.W.2d 571, 575 (Tex. Civ. App. 1978).[5] State law insists that a manufacturer not sell a defectively designed pesticide. Period. That is precisely the sort of more restrictive regulation on the "sale or use" of Roundup that Congress authorized. 7 U.S.C. § 136v(a). *Durnell* expressly reaffirms what FIFRA's text plainly says. 146 S. Ct. at 2008 n.2 (a state has the authority to "out-right ban a pesticide within its borders.").

Monsanto cannot possibly carry its "demanding" burden to show that it was impossible to comply with this congressionally authorized state-law duty. *Wyeth*, 555 U.S. at 573. State law says do not sell Roundup if it meets the state definition of a defective product. Federal law says Roundup may be sold, not that it must be. *Mortier,* 501 U.S. at 613–14. Though state law may *differ* in some respects from federal law, differences only matter for purposes of the narrow, inapplicable express preemption clause. They have no bearing on the analysis for *impossibility,* where state law routinely imposes duties that are more onerous than federal obligations. *See Albrecht*, 587 U.S. at 607 ("[W]e have refused to find clear evidence of such impossibility where the laws of one sovereign permit an activity that the laws of the other sovereign restrict or even prohibit."); *Chamber of Commerce v. Whiting*, 563 U.S. 582, 607 (2011) (citing *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 111 (1992) (Kennedy, J., concurring)) ("Implied

[5] *See also Bylsma v. R.C. Willey*, 2017 UT 85, ¶ 26, 416 P.3d 595, 605 (Utah Dec. 1, 2017) ("The seller's duty is not to sell a defective product—there is no analysis of due care or preventative measures"); *Sternhagen v. Dow Co.*, 935 P.2d 1139, 1146 (Mont. 1997), *reconsideration denied* (May 26, 2026) ("a seller [manufacturer] has a duty to prevent the release of any product in a defective condition unreasonably dangerous" into the market); *Quinn v. Gen. Elec. Co.*, 356 A.3d 2, 24 (Md. 2026) (explaining that a design defect claim "is predicated on the understanding that a manufacturer of an unreasonably dangerous product should be responsible for harm caused to those it is reasonably foreseeable will come into contact with its product.").

preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives'; such an endeavor 'would undercut the principle that it is Congress rather than the courts that preempts state law.'"). Those principles would apply even *absent* the express authority conferred by 7 U.S.C. § 136v(a). It follows *a fortiori* that where Congress *expressly authorized* states to go beyond FIFRA's requirements, FIFRA does not *impliedly* preempt those more stringent state obligations.

Nothing in *Bartlett* is to the contrary. *Cf.* Mot. at 17. There, the Supreme Court found that federal law prohibited unilateral changes to the labeling of generic drugs, and the state-law duty would have required unilateral changes to drug labeling. *Bartlett*, 570 U.S. at 409. The Court rejected a "stop-selling" remedy under state law where this was a proposed *workaround* to the state duty to change the generic drug label, which the generic drug manufacturers could not unilaterally do. *Id.* But the *core duty* imposed by state design-defect law is to not sell an unreasonably dangerous pesticide. This is not some backup-plan or workaround of the *real* duty to change Roundup's formulation. It is the *actual* state-law duty, which this Court must accept as the states articulate it under principles of federalism. *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938).

Regardless, FIFRA contains the very "express non-preemption clause" the Supreme Court found lacking in *Bartlett.* 570 U.S. at 492. For generic drugs, the Court was forced to "divine Congress' will from the duties" the Food, Drug, and Cosmetic Act imposed. *Id.* at 493; *See In re Roundup Prods. Liab. Litig.*, 364 F. Supp. 3d at 1088 ("nothing in the FDCA allows a state to ban a drug," in contrast with FIFRA). No such divination is required under FIFRA. Congress could not have been clearer that states retain authority to go beyond FIFRA to protect public health. 7 U.S.C. § 136v(a). This Court need only enforce FIFRA according to its plain terms.

A Hawaii district court considered, and rejected, similar defense arguments in *Ansagay v. Dow Agrosciences LLC*, 153 F. Supp. 3d 1270, 1277 (D. Haw. 2015). The defendant argued under *Bartlett* and *Mensing* that state-law tort claims pertaining to the plaintiff's deceased spouse's exposure to a pesticide containing chlorpyrifos were preempted because it would be impossible to comply with both FIFRA and the state-law duties that the plaintiff sought to impose. The *Ansagay* court recognized that FIFRA "contemplates that each state will regulate pesticide sales and use within its borders and authorizes such action." 153 F. Supp. 3d at 1283. This allowance for states to ban or restrict the use of EPA-approved pesticides "clearly undercuts" the defendant's "sweeping contention that any state law that impedes [the defendant's] ability to sell its registered product runs afoul of FIFRA." *Id*.

Other courts agree. Rejecting Monsanto's same implied preemption arguments post-*Durnell*, a Missouri court recently summed up the limits of *Durnell's* holding:

> [T]he *Durnell* Court's holding that FIFRA's labeling requirements expressly preempt a failure to warn claim that requires a manufacturer to use a label other than the EPA-approved label does not, in turn, lead to the conclusion that design defect and negligence claims are impliedly preempted. Under FIFRA, a manufacturer can change the composition of a product. FIFRA prescribes a procedure for, and not a per se prohibition on, changing a product's composition.

*Shull v. Monsanto Co.*, No. 25BA-CV4355, 2026 WL 2742795, at *2 (Mo. Cir. Aug. 31, 2026); *see also Holyfield v. Chevron U.S.A., Inc.*, 533 F. Supp. 3d 726, 736 (E.D. Mo. 2021) ("Looking at the plain text of FIFRA, this Court sees no language indicating that design defect claims are expressly or impliedly preempted . . . [I]t is apparent that the statutory scheme established by Congress permits state law liability even for pesticides registered by the EPA, including those that cannot be redesigned."); *Ansagay*, 153 F. Supp. 3d at 1281.

The Supreme Court has cautioned courts not to "distort the Supremacy Clause in order to create similar pre-emption across a dissimilar statutory scheme." *Mensing*, 564 U.S. at 626. This Court should decline Monsanto's invitation to do so here.[6]

**B. Plaintiff's Non-Label-Based Warning Claims Are Not Expressly or Impliedly Preempted.**

Monsanto's Roundup advertisements, which Mr. Moreland saw, conveyed the false and misleading message that Roundup was perfectly safe for use without any protective clothing or concern about dermal exposure. Such advertisements are not "labeling or packaging" that is the subject of FIFRA's express preemption provision, nor would it have been impossible for Monsanto to provide adequate warnings to consumers while complying with federal law.

Many state laws, including Georgia, simply require that an adequate warning concerning a dangerous product be provided. They say nothing about the warning needing to appear on the label, which is the only medium that FIFRA places off-limits. 7 U.S.C. § 136v(b); *Durnell,* 146 S. Ct. at 2012. A duty to warn consumers of harm by means other than pesticide labeling cannot be a duty that "constitute[s a] state labeling requirement[]" of the kind that *Durnell* found was preempted in that case. *Id.* at 2010; *see Cipollone*, 505 U.S. at 528–29 (plurality opinion) (fraud claims based

[6] Nor can Monsanto establish impossibility by pointing to the fact that some states require evidence of a feasible alternative design to prove a design defect claim. Whether a feasible alternative design exists, and whether that design must be approved by a regulator, does not control the scope of the state duty. The duty is not to implement the alternative design. It is to *not sell* the defective design, and the design is defective in some states because an alternative was available. Whether that alternative could have been achieved quickly, cheaply, or expensively and after much regulatory back and forth is entirely irrelevant to the duty design defect law imposes. The hypothetical EPA response to some alternative design Monsanto did not submit is not a "law" of the United States with preemptive force. *Albrecht*, 587 U.S. at 315.

on advertising misrepresentations were not preempted by federal tobacco regulations because they were predicated "on a more general obligation – the duty not to deceive").[7]

Monsanto contends that its advertisements are either "labeling" to the extent they "accompany[] the pesticide," Mot. at 11 (quoting 7 U.S.C. § 136(p)(2)), or it would be impossible to truthfully warn consumers because to "contradict the EPA-approved label for Roundup and claim elsewhere that Roundup causes cancer is barred by impossibility preemption." Mot. at 12 (citing 40 C.F.R. § 168.22 (a)). Neither contention holds water.

Monsanto's argument that advertisements are somehow a form of "labeling" is contravened by the plain language of FIFRA and by Monsanto's own conduct. FIFRA defines labels as "all labels and all other written, printed, or graphic matter [] accompanying the pesticide or device at any time." 7 U.S.C. § 136 (p)(2).[8] "Pesticide" and "device" are defined by reference to the physical "substance or mixture of substances" and the "instrument or contrivance" used to kill weeds, among other things, not the intangible brand advertised in a commercial. 7 U.S.C. § 136(h), (u). To read "accompanying" to mean anything other than the physical label affixed to this physical product or written materials that are inside of the packaging defies the plain text. Monsanto does not really believe its own argument, as it has never submitted each and every advertisement it disseminates to the EPA for its prior approval as forms of "labeling." Lest the company is violating FIFRA countless times per day, its argument is made for litigation only.

---

[7] *Cf. In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 474 F. Supp. 3d 1231, 1259 (N.D. Fla. 2020) (rejecting defense argument that there were "significant conflicts in failure-to-warn cases" involving earplug safety warnings where there was "no evidence—none—that the Army prohibited" warnings from being given, which could have been accomplished by placing warnings on the boxes in which the earplugs were shipped as well as on individual blister packs).

[8] The definition also includes such matters "to which reference is made on the label or in literature accompanying the pesticide or device," excluding certain official publications. 7 U.S.C. § 136(p)(2).

Monsanto's impossibility argument fares no better. Unlike the FDCA, the statute at issue in the *Yousefzadeh* case on which Monsanto relies,[9] FIFRA does not treat advertising about a pesticide as labeling. The regulatory provision that Monsanto cites, 40 C.F.R. § 168.22, was promulgated as part of an EPA interpretative statement intended to offer guidance to industry on agency enforcement priorities. 54 Fed. Reg. 1122 (Jan. 11, 1989), *available at* https://archives.federalregister.gov/issue_slice/1989/1/11/1116-1134.pdf. EPA's final interpretative rule made clear that "FIFRA does not grant EPA plenary authority to regulate advertising as such," and that EPA merely sought to "state clearly its position with regard to claims in advertising that are made 'to induce the * * * sale and use' of a pesticide and that therefore are a part of the distribution or sale of the pesticide." *Id.* at 1124. In other words, this staff interpretation provides further confirmation that advertisements are *not* labels for FIFRA purposes. Consistent with this, EPA administrative pronouncements have consistently rejected the argument that advertisements should be deemed a form of labeling. *In the Matter of: Liphatech, Inc., Respondent*, 2014 WL 1012749, at *20 (E.P.A. Mar. 12, 2014); *see also Bates*, 544 U.S. at 444 n.17 ("To the extent that petitioners' warranty and fraud claims are based on oral representations made by Dow's agents, they fall outside the text of § 136v(b) for an independent reason. . . . any requirement that applied to a sales agent's *oral* representations would not be a requirement for "labeling or packaging").

Even if some ads were somehow deemed "labels," this would not help Monsanto's cause, because EPA deems it per se misleading to make safety claims of any kind on a pesticide's labeling. *See* 40 C.F.R. § 156.10 (a)(5)(ix) (it is "false or misleading" to make "[c]laims as to the

[9] *See* Mot. at 11 (citing *Yousefzadeh v. Johnson & Johnson Consumer Inc.*, 184 F.4th 130, 151 (2d Cir. 2026)).

safety of the pesticide or its ingredients"). Either way, FIFRA does not preempt states from using their well-established police powers to require adequate off-label warnings. Monsanto comes nowhere near the demanding showing required to support an implied impossibility preemption defense.[10]

## IV. <u>There Can Be No Implied Impossibility Preemption Where Monsanto Did the Very Thing It Calls "Impossible"—Reformulated Roundup, with EPA Approval.</u>

Monsanto's argument that it cannot reformulate Roundup without EPA's permission, *e.g.*, Mot. at 17, elides over the fact that Monsanto did, in fact, receive EPA permission to reformulate a glyphosate-free version of Roundup—a fact that the Supreme Court took under advisement in *Durnell* itself. 146 S. Ct. at 2009 n.4 ("Monsanto has phased out residential Roundup products that contain glyphosate."). In 2022, Monsanto ceased or phased out selling glyphosate-based Roundup in the United States for residential lawn and garden use, obtained the necessary EPA registration, and began marketing its new glyphosate-free Roundup in its place. OMSF ¶ 162. Monsanto cannot make out a viable impossibility defense when the action it complains of is not only possible, but is something it has already done.

## V. <u>Plaintiff Moreland's Remaining Claims Are Not All "Disguised Failure-to Warn Claims."</u>

Because Monsanto cannot meet its burden of establishing implied preemption, Monsanto resorts to arguing that "Plaintiff[']s claims—although couched in various Georgia tort duties—all boil down to the preempted theory that Monsanto is liable for failing to include a cancer warning

---

[10] Plaintiff is in good company. The United States, which backed Monsanto in *Durnell*, agrees. It expressly told the Court it should remand so the state court could consider any non-label-based warning theories that Durnell had adequately preserved. *See* Brief for the United States as Amicus Curiae Supporting Petitioner at 17, *Monsanto Co. v. Durnell*, 146 S. Ct. 2001 (2026) (No. 24-1068) ("To the extent respondent now contends (Br. In Opp. 17–23; Supp. Br. 2–6, 11–12) that his claim involves advertising, manufacturing, or the failure to alert the EPA, those case-specific issues are outside the question presented but may be addressed on remand (if preserved).").

on Roundup's label." Mot. at 9. Monsanto pulls a selection of allegations from Plaintiff's complaint—that Plaintiff was not permitted to amend to conform with *Durnell*—but it ignores countless examples, even from a legacy complaint, that override their cherry-picked phrases, such as:

- Plaintiff's **negligence claim** alleges that "Monsanto breached its duty of care and failed to exercise ordinary care in the *design, research, development, manufacture, testing, marketing, warning, supply, promotion, advertisement, packaging, sale, and distribution* of Roundup products, in that Monsanto *manufactured and produced defective herbicides containing the chemical glyphosate,* knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and *failed to prevent* or adequately warn of these risk and injuries." Moreland Compl. ¶ 161 (Count III) (emphasis added).

  Plaintiff's **design defect claim** alleges that Monsanto's Roundup products "were defective in design and formulation" and "were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner." *Id.* ¶ 114 (Count I).

- Plaintiff's **failure to warn claim** alleges that "failure to warn *is not limited to the information contained on Roundup's labeling"* and that "Monsanto was able, in accord with federal law, to comply with Georgia law by disclosing the known risks associated with Roundup through other non-labeling mediums, i.e., promotion, advertisements, public service announcements, and/or public information sources" but did not. *Id.* ¶ 147 (Count II).

- Plaintiff's **fraud claim** alleges that the misrepresentations *and/or material omissions* "that form the basis of this fraud claim are not limited to statements made on the Roundup labeling, as defined under federal law, but also involve Monsanto's representations and omissions made as part of its promotion and marketing of Roundup, including on the Internet, television, in print advertisements, etc." and that "[n]othing prevented Monsanto from disclosing the truth about the risks associated with Roundup in its promotional efforts outside of the labeling context, using the forms of media and promotion Monsanto traditionally uses to promote the product's efficacy and benefits." *Id.* ¶ 174 (Count IV).

- Plaintiff's **breach of implied warranty claim** alleges that Monsanto "breached its implied warranty to the Plaintiff in that its Roundup products were not of merchantable quality, safe, or fit for their intended use, or adequately tested" and in reliance of that warranty, Plaintiff used Roundup in the foreseeable manner "intended, recommended, promoted and marketed by Monsanto." *Id.* ¶¶ 186, 188 (Count V).

Plaintiffs' MDL Omnibus Statement of Material Facts describes evidence developed in the MDL showing decades of tortious conduct by Monsanto above and beyond its labeling requirements, including that:

- Monsanto sold Roundup products from 1974 through 1990 and never tested the formulated product for carcinogenicity tests, OMSF ¶¶ 11–46, even knowing that the POEA surfactant used in formulated Roundup could damage genetic material in cells, OMSF ¶¶ 47–48, 98–103.
- Animal feeding studies published in 2012 and 2025 show that Monsanto could have conducted long-term animal studies on the formulated product even before it put Roundup on the market, and that if it had done so, those studies would have revealed the product's carcinogenic hazard. OMSF ¶¶ 99, 120–21.
- Monsanto's Roundup advertising contains misleading claims, showing users wearing no dermal protection (shorts, t-shirts, no gloves), leading consumers to have a false sense of safety while using Roundup. OMSF ¶¶ 11, 25, 34, 51–55, 62–63, 77–78.
- Safer alternative designs were feasible and available. OMSF ¶¶ 71, 122–128.
- Monsanto violated industry standards, particularly with its failure to test the formulated product for carcinogenicity. OMSF ¶¶ 129–132.

Monsanto asks this Court not only to ignore the holding of *Bates* but also that duties arising under state law include *the duty not to sell defectively designed products*. *See Bates*, 544 U.S. at 444 ("Rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for 'labeling or packaging.'); *see*, *e.g.*, *Hamilton*, 569 S.W.2d at 575 ("The duty of the seller … is to refrain from placing a product into the stream of trade in an unreasonably or dangerous, defective condition."). Monsanto cannot refute this argument because *Bartlett* is inapposite.

### A. Monsanto Is Not Entitled to Summary Judgment on Plaintiff's Design Defect Claim.

Georgia follows the third restatement and has adopted the risk-utility analysis for determining design defect. The standard balances the risks inherent in the product's design against its utility. The Georgia Supreme Court, in applying the test, explains that "[o]ne factor consistently recognized as integral to the assessment of the utility of a design is the availability of alternative designs, in that the existence and feasibility of a safer and equally efficacious design diminishes the justification for using a challenged design.... [T]he reasonableness of choosing from among various alternative product designs and adopting the safest one if it is feasible is considered the 'heart' of design defect cases." *Wilson Foods Corp. v. Turner*, 460 S.E.2d 532, 536 (Ga. App. 1995) quoting *Banks v. ICI Americas, Inc.,* 450 S.E.2d 671, 674 (Ga. 1994).

Applying this test to the facts of this case readily defeats Monsanto's renewed motion for summary judgment. The record evidence establishes there is not only a theoretical alternative design—there is an actual one—and Monsanto has been selling that newly designed Roundup for several years under the same brand name and for the same purposes, and it is not believed to cause cancer. OMSF at ¶¶ 125–128. This evidence alone raises a genuine issue of material fact defeating summary judgement.

The evidentiary record shows that by 2017, Monsanto was taking steps to reformulate Roundup® to use active ingredients other than glyphosate. *Id.* at ¶ 124. In 2022, Monsanto phased out selling Roundup containing glyphosate for residential lawn and garden use, obtained the necessary EPA registration for its new glyphosate-free Roundup, and began marketing its reformulated Roundup. *Id.* at ¶ 125. The active ingredients Monsanto used for the reformulation (triclopyr, diquat dibromide, and fluazifop-P-butyl, and optionally, Imazapic-ammonium) had been registered by EPA for use in pesticides in the United States ***for decades*** and had long been

known by and available to Monsanto. *Id.* at ¶ 126. The ingredients in Monsanto's new reformulated Roundup lawn are said to be safe and effective and are not known to cause cancer ("the new formulation "ha[s] the desired properties and provides the desired weed killing effects [and] early visual symptomology" to "permit effective control of unwanted plants (weeds) in the field of plant protection and environmental health, in particular without the necessity to use glyphosate."). *Id.* at ¶ 127. The reformulated Roundup is also financially sound; sales revenue for residential Roundup® remain steady after the change in formulation. *Id.* at ¶ 128.

Monsanto is simply wrong that it is entitled to summary judgment because Plaintiff has not designated an "alternative design" expert. Mot. at 14-15. In support of its argument, Monsanto cites cases in which the plaintiff did not offer admissible expert testimony *or any other admissible evidence* in support of their claim. *See*, *e.g.*, *Cochran v. Brinkmann Corp.*, No. 1:08-CV-1790-WSD, 2009 WL 4823854, at *3 (N.D. Ga. Dec. 9, 2009), *aff'd sub nom*. *Cochran v. The Brinkmann Corp.*, 381 F. App'x 968 (11th Cir. 2010) (granting summary judgment because plaintiffs failed to present *any* admissible evidence that the turkey fryer at issue was defectively designed). Although experts can offer opinions on the risk-analysis factors, in general, weighing the risk-utility analysis is left to the jury. *See*, *e.g.*, *S K Hand Tool Corp. v. Lowman*, 479 S.E.2d 103, 106 (Ga. App.1996) ("In a case alleging strict liability, the questions for jury resolution therefore are whether a product was defective, and if so, whether the defect was the proximate cause of a plaintiff's injury."); *Dean v. Toyota Indus. Equip. Mfg., Inc.*, 540 S.E.2d 233, 236 (Ga. App. 2000) (summary judgment generally improper where any factor is disputed). [11] Expert testimony is not required to prove

---

[11] In footnote 8 of its brief, pg. 13, Monsanto suggests that Georgia has adopted "a risk utility analysis" for negligence claims and cites *Banks* for this proposition. *Banks* does not say this and, in fact, affirms that they are two separate claims: "While we recognize that the determination of whether a product was defective (involving the reasonableness of a manufacturer's design decisions), which is a basic inquiry for strict liability purposes, generally will overlap the

design defect in Georgia. *See Cochran*, 2009 WL 4823854, at *5 (plaintiff must offer reliable, admissible expert testimony "or *other evidence* of an alternative safer design") (emphasis added). Here, the jury will have before it evidence of an *actual* alternative design already on the market. *See Wilson Foods Corp.*, 460 S.E.2d at 536 ("the existence … of a safer and equally efficacious design diminishes the justification for using a challenged design").

As the moving party, Monsanto does not meet its burden to show there is no genuine issue of material fact as to a design defect claim under Georgia law; summary judgment should be denied.

### B. Plaintiff Moreland's Negligence Claim Is Not Preempted by Durnell.

In its brief, Monsanto barely addresses Plaintiff's negligence claim under Georgia law and for good reason. Under Georgia law, negligence "based on the sale of a defective product" and negligence "based on the failure to warn of danger arising from the use of that product" are distinct and "different duties that devolve upon manufacturers." *Batten*, 264 Ga. at 724. Breach of these separate duties "gives rise to separate and distinct claims." *Id.* "While a factual overlap between these claims is possible, in that some products are defective solely due to an inadequate or absent warning … the claims are not necessarily coextensive." *Id.* citing *Banks v. ICI Americas,* 264 Ga.

---

determination of whether the manufacturer's conduct was reasonable, which is a basic inquiry for negligence purposes, we cannot agree that the use of negligence principles to determine whether the design of a product was 'defective' necessarily obliterates under every conceivable factual scenario … between negligence and strict liability theories of liability. … Hence, we see no reason to conclude definitively that the two theories merge in design defect cases." *Banks,* 450 S.E.2d at 674 fn. 3. The elements of a negligence claim are: (1) the existence of a legal duty, (2) breach of this duty, (3) an injury, and (4) a causal connection between the breach and the injury. *Persinger v. Step By Step Infant Dev. Ctr.,* 560 S.E.2d 333, 335 (Ga. App. 2002). In Georgia, there exists a duty for manufacturers "to exercise reasonable care in manufacturing its product so as to make products that are reasonably safe for intended or foreseeable uses." *Chrysler Corp. v. Batten*, 264 Ga. 723, 724, 450 S.E.2d 208, 211 (1994). Regardless, neither Plaintiff's negligence nor strict liability claims "fail" for the reasons Monsanto gives.

732, 450 S.E.2d 671 (1994) (design defect claim viable although failure to warn claim preempted by federal law). And here, the negligence claims do not overlap with the label-based warning claims. In other words, under Georgia law, "a manufacturer has a duty to exercise reasonable care in manufacturing its product so as to make products that are reasonably safe for intended or foreseeable uses" that is separate and apart from a duty to warn. *Batten,* 264 Ga. at 724.

Mr. Moreland alleges negligence based on the sale of Monsanto's defective product. Monsanto fails to show that this claim is preempted under *Durnell,* nor does it even attempt to show that there is no genuine disputes as to the material facts that support this claim. Because Monsanto has not met its burden under Rule 56, summary judgment as to Plaintiff's negligence claim should be denied. Fed. R. Civ. P. 56(a).

## VI. Like Plaintiff's Non-Label-Based Warning Claims, Plaintiff's Fraud And Breach of Implied Warranty Claims Remain Viable After Durnell.

Plaintiff's fraud and breach of implied warranty claims remain viable after *Durnell* for the same reasons as his non-label-based warnings claims: Product labels are not the only source of information. Plaintiff was exposed to Monsanto's advertisements, which conveyed the false and misleading message that Roundup was safe for use without any protective clothing or care to keep Roundup from getting on your skin. OMSF at ¶¶ 11, 49, 51–55, 63, 77–78; Greenwald Decl., Ex. 1, Moreland Dep. at 48:18–49:9; Ex. 2, Yvonne Moreland Dep. at 50:6–14. Advertisements are not "labeling or packaging" that is the subject of FIRFA's preemption provision. They can mislead consumers that Roundup is so safe it can get all over your skin without harming you, and they can operate as an implied warranty of merchantability and fitness for a particular purpose.

Under Georgia law, fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from action, justifiable reliance by a plaintiff, and damage to plaintiff. *Bowden v. Med. Ctr., Inc.,* 845 S.E.2d 555, 564 n. 10 (Ga. 2020) (citation

omitted). "Concealment of material facts" also "may amount to fraud ... where the concealment is of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover." *Woodall v. Orkin Exterminating Co.,* 175 Ga. App. 83, 84, 332 S.E.2d 173, 174 (1985) (citations omitted).

As for breach of implied warranty claims, "[t]he implied warranty of merchantability can be breached when, although capable of performing its ordinary function, a product nonetheless fails in a significant way to perform as a reasonable consumer would expect." *Elder v. Reliance Worldwide Corp.,* 563 F. Supp. 3d 1221, 1239 (N.D. Ga. 2021). Here, the failure is that Roundup causes cancer, and consumers would not have expected a product found in hardware and box stores are cancer causing. What's more, Georgia courts recognize an exception to the general rule that a plaintiff cannot prevail on breach of warranty claims against a manufacturer when the product was purchased from a retailer due to a lack of privity: If the manufacturer expressly warrants to the ultimate consumer that the product will perform in a certain way or that it meets particular standards, privity with that ultimate consumer is deemed to exist. *Lee v. Mylan Inc.,* 806 F. Supp. 2d 1320, 1326 (M.D. Ga. 2011) citing *Jones v. Cranman's Sporting Goods*, 237 S.E.2d 402, 405 (Ga. App. 1977). Once privity is established, a plaintiff may bring claims for breach of the implied warranties of merchantability and fitness for a particular purpose. *Jones,* 142 Ga.App. at 842, 237 S.E.2d at 406 (reversing summary judgment on implied warranty claim because privity existed and implied warranties were not expressly excluded).

As set forth herein and in the Omnibus Statement of Material Facts, the facts of this case defeat Monsanto's motion for summary judgment on Plaintiff's fraud and implied warranty claims. As early as May 1982, Monsanto publicly distributed a "Roundup® Herbicide Q&A" claiming that "[g]lyphosate did not cause cancer, tumors . . . or mutations in the animal studies specifically

designed to assess the potential for these effects," which constitutes an express warranty. OMSF ¶ 30. Monsanto made this representation even though it knew that its only rodent studies relating to the carcinogenicity of glyphosate were fraudulent and invalidated by EPA. *Id.* at ¶¶ 22-23. Monsanto has an extensive history of running television ads that lure consumers into believing Roundup is perfectly safe and can be used without any precautions, such as showing people in their yards casually spraying roundup in shorts and short-sleeve shirts with bare hands. *Id.* at ¶¶ 11, 49-53, 63, 78. These representations constitute an implied warranty. Monsanto's public display of Roundup's alleged safety led the New York Attorney General, in 1996, to file a lawsuit against Monsanto for its false and misleading advertising of Roundup to New York consumers. *Id.*, at ¶ 54. This didn't stop Monsanto: 27 years later Monsanto was still misleading New York consumers and the New York Attorney General sued Monsanto again. *Id.* This fact alone defeats any argument that Monsanto is not aware of the nature of its advertising. Similar to the consumers in New York, Mr. Moreland recalled seeing a "funny" commercial where a weed was sprayed "and it just shriveled up, like, instantly," just as depicted in Monsanto's humorous 2002 "Talking Weeds" commercial. Greenwald Decl., Ex. 1, Moreland Dep. at 48:18-49:20; OMSF Ex. 11, MONGLY10528556, Roundup Fast Act Foam Commercial dated May 2, 2002.

## VII. In the Alternative, Plaintiff Moreland Should Be Permitted to Amend His Pleadings and Supplement Discovery in this Case in Light of Durnell's Intervening Change of Law.

The *Durnell* decision has changed the landscape of this litigation but not the operative theory and facts: exposure to Monsanto's Roundup herbicide causes people like Mr. Moreland to develop NHL. In light of this intervening change of law, Plaintiff should have been permitted to amend his complaint and supplement discovery and his expert disclosures. Prior to *Durnell*, other courts—including this Court in this MDL—had concluded that state failure-to-warn claims were not preempted by FIFRA. *See, e.g., In re Roundup Products Liability Litigation,* 364 F. Supp. 3d

at 1088. Plaintiff "could not have known about the content" of the *Durnell* opinion until June 25, 2026. *People for Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.,* No. 8:16-CV-2899-T-36AAS, 2018 WL 2715460, at *4 (M.D. Fla. June 6, 2018). And Plaintiff could not have anticipated that Monsanto would argue, as it does here, that *Durnell* preempts all of Plaintiff's claims—particularly when Monsanto's counsel argued the opposite and certiorari was granted on the limited question of whether FIFRA "preempts a ***label-based*** failure-to-warn claim where EPA has not required the warning." *Monsanto Co. v. Durnell,* No. 24-1068, 2026 WL 120678, at *1 (U.S. Jan. 16, 2026).

District courts find good cause to amend scheduling orders and allow plaintiffs to amend their pleadings when there is an intervening change in controlling law. *See*, *e.g., Doe I v. Nestle USA, Inc.,* 766 F.3d 1013, 1028-29 (9th Cir. 2014) ("It is common practice to allow plaintiffs to amend their pleadings to accommodate changes in the law, unless it is clear that amendment would be futile."). The Federal Rules of Civil Procedure provide that a court should freely grant leave to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), and that a judge may amend a Case Management and Scheduling Order "for good cause." Fed. R. Civ. P. 16(b)(4). Courts routinely find good cause where a party moves to amend promptly after a material change in controlling law. *Velez v. Foresters Life Ins. & Annuity Co.,* No. 2:22-CV-08932-ODW(MBKX), 2025 WL 3691474, at *4 (C.D. Cal. Dec. 11, 2025) citing *Del Rio v. Virgin Am., Inc.,* No. CV 18-1063-GW(SKX), 2019 WL 210957, at *3 (C.D. Cal. Jan. 3, 2019) ("Rule 16(b) clearly contemplates that changes in law or newly discovered evidence may justify later amendments to a complaint." (quoting *Cryer v. Idaho Dep't of Lab.*, No. 1:16-cv-00526-BLW, 2018 WL 3636529, at *2 (D. Idaho July 30, 2018))).

## CONCLUSION

For the foregoing reasons, Plaintiff Moreland respectfully requests that the Court deny Monsanto's motion for summary judgment in all respects.

DATED: September 28, 2026

Respectfully Submitted,

/s/ Robin L. Greenwald
Robin L. Greenwald (*pro hac vice*)
**WEITZ & LUXENBERG, P.C.**
700 Broadway, Fifth Floor
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
Co-Lead Counsel

/s/ David J. Dickens
David J. Dickens (pro hac vice)
**THE MILLER FIRM LLC**
108 Railroad Avenue
Orange, VA 22960
Telephone: 540-672-4224
ddickens@millerfirmllc.com
Co-Lead Counsel

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on Monday, September 28, 2026, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Robin Greenwald*