**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

*Attorneys for Defendant Monsanto Company*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 Fax: 310-576-2200

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*All Category One Cases* | **DEFENDANT MONSANTO COMPANY'S OMNIBUS REPLY IN SUPPORT OF ITS SUPPLEMENTAL MOTIONS FOR SUMMARY JUDGMENT**<br><br>**<u>Hearing:</u>**<br>Date: November 16, 2026<br>Time: 1:00 PM<br>Place: San Francisco Courthouse, Courtroom 3 |

**TABLE OF CONTENTS**

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. Plaintiffs' Claims Uniformly Fail on the Evidence. ..... 3

II. Plaintiffs' Claims Are Preempted. ..... 4

A. Plaintiffs Misapply Preemption Principles. ..... 4

B. Plaintiffs' Warn-by-Advertising Theory Is Preempted. ..... 6

C. Any Claim that Would Require Monsanto to Reformulate Roundup Is Preempted as a Matter of Impossibility. ..... 8

CONCLUSION ..... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Banks v. ICI Americas, Inc.*,
450 S.E.2d 671 (Ga. 1994)....10

*Bartlett. Mut. Pharm. Co., Inc. v. Bartlett*,
570 U.S. 472 (2013)....2, 8, 9, 10, 11

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005)....1, 2, 5, 6, 11

*Brinkley v. Pfizer, Inc.*,
772 F.3d 1133 (8th Cir. 2014)....10

*Caterpillar, Inc. v. Shears*,
911 S.W.2d 379 (Tex. 1995)....3, 9

*Commonwealth Of Puerto Rico v. Franklin California Tax-free Tr.*,
579 U.S. 115 (2016)....4

*Cutter v. Wilkinson*,
544 U.S. 709 (2005)....5

*Dow Agrosciences LLC v. Bates*,
332 F.3d 323 (5th Cir. 2003)....5

*Florida Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963)....11

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000)....2, 11

*Gustavsen v. Alcon Lab'ys, Inc.*,
903 F.3d 1 (1st Cir. 2018)....9

*Lorillard v. Pons*,
434 U.S. 575 (1978)....7

*Merck Sharp & Dohme Corp v. Albrecht*,
587 U.S. 299 (2019)....5

*Monsanto Co. v. Durnell*,
609 U.S. 371 (2026).... *passim*

*Nesselrode v. Executive Beechcraft, Inc.*,
707 S. W. 2d 371 (Mo. 1986)....6

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011)....4, 5, 6, 10

*Schaffner v. Monsanto Corp.*,
113 F.4th 364 (3d Cir. 2024) ....................11

*Shull v. Monsanto Co.*,
No. 25BA-CV4355, 2026 WL 2742795 (Mo. Cir. Ct. of Boone Cnty., Aug. 31, 2026) ....................9

*Strayhorn v. Wyeth Pharms., Inc.*,
737 F.3d 378 (6th Cir. 2013) ....................8

*Wisc. Pub. Intervenor v. Mortier*,
501 U.S. 597 (1991)....................2

*Wyeth v. Levine*,
555 U.S. 555 (2009)....................5

*Yates v. Ortho-McNeil-Janssen Pharms., Inc.*,
808 F.3d 281 (6th Cir. 2015) ....................10

**Statutes**

7 U.S.C. § 136(p)(2) ....................3, 7

7 U.S.C. § 136j....................8, 11

7 U.S.C. § 136v....................1, 2, 5 11

21 U.S.C. § 321(m)....................7

21 U.S.C. § 355(a) ....................11

Miss. Code § 11-1-63(a)(1)(2)....................6

**Other Authorities**

40 C.F.R. § 152.44(a)....................2, 8, 9

40 C.F.R. § 168.22(a)....................8

# INTRODUCTION

As the briefing in individual cases makes clear, summary judgment will be compelled on plaintiffs' claims in this MDL due to failures of the evidence. Having pursued preempted failure-to-warn theories throughout discovery, plaintiffs lack the evidence they would need to support other claims. Plaintiffs lack expert testimony necessary to support an alternative design theory, and they have no evidence that the alternative design they typically point to—a totally different herbicide that Monsanto marketed under the Roundup trade name starting around 2022[1]—was available or technologically and economically feasible at the time of their Roundup use, often decades before. Nor do they grapple with the fact that state tort law cannot be used to eliminate whole categories of products from the market, as that function is reserved for legislatures, not juries. The necessity of evidence to support alternative design theories was clear from the outset, and plaintiffs chose, perhaps due to its futility, not to develop it. Summary judgment appropriately—necessarily—must follow. While the theories articulated in the present cases present serious preemption issues, the Court does not necessarily need to reach them, because Plaintiffs have not backed up their theories with sufficient evidence.

But preemption remains an obstacle to plaintiffs' claims, and one they cannot overcome through semantics or statutory decoys. Plaintiffs' opposition is based on a single flawed premise: that unless a plaintiff deems her own claims "label-based failure-to-warn," there can never, under any circumstances, be preemption under FIFRA. Opp'n at 1. That cannot be correct. *Durnell* itself holds that "*any state tort claim*" that would require Monsanto to warn of Roundup's alleged carcinogenicity is preempted, irrespective of whether the plaintiff employs the words negligence or design defect. *Monsanto Co. v. Durnell*, 609 U.S. 371, 390 (2026) (emphasis added). And *Bates* assessed "disguised" failure-to-warn claims and concluded they are subject to express preemption.

[1] Plaintiffs' statement of fact ¶ 125 claims that Roundup began marketing this formulation in 2022, citing testimony from Dr. Farmer. But the cited testimony nowhere contains that claim. In reality Monsanto did not announce the referenced formulation until 2023, but for purposes of these replies Monsanto uses the 2022 date Plaintiffs allege because the difference is not material to their claims.

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 444 (2005); *id.* at 457 (Thomas, J., concurring in part).

The centerpiece of Plaintiff's argument is 7 U.S.C. § 136v(a), which they say means states may always impose rules, even those "different from" federal law, so long as those rules are not "for labeling or packaging." Opp'n 5–6. But that is not what FIFRA says, nor is it how the Supreme Court has interpreted similar provisions. What the provision says is that states "may regulate the sale or use of any federally registered pesticide or device in the State, *but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter*." 7 U.S.C. § 136v(a) (emphasis added). The Supreme Court has said that provision is "is merely declaratory of the authority that the States retained after FIFRA," *Bates*, 544 U.S. at 446 n.20, and suggested that in the event of "actual conflict . . . between FIFRA and" state law, the doctrine of "impossibility" would still apply. *Wisc. Pub. Intervenor v. Mortier*, 501 U.S. 597, 614 (1991). That suggestion reflects not only the plain text of § 136v(a), which clearly does not envision allowing states to require what FIFRA prohibits, but also a straightforward rule the Supreme Court has applied to other statutes containing similar clauses: a "saving clause (like [an] express pre-emption provision) does not bar the ordinary working of conflict pre-emption principles." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000).

With Plaintiffs' reliance on § 136v(a) disposed of, little remains of their opposition. *Durnell* clarified that FIFRA and FIFRA regulations including 40 C.F.R. § 152.44(a) prohibited Monsanto from changing Roundup's EPA-approved label and required Monsanto to sell Roundup with the label EPA approved. 609 U.S. at 391. And Plaintiffs do not really dispute that FIFRA imposes the same requirement with respect to Roundup's formulation. To the contrary, they admit that 40 C.F.R. § 152.44(a) is "valid" and "carr[ies] the force of law," which they view as necessary to trigger impossibility preemption. Opp'n at 6. They also admit that the regulation "forbid[s] a manufacturer from departing from the label approved during the registration process." Opp'n at 6. And they do not dispute that it applies equally to a pesticide's approved composition. Plaintiffs' attempts to invoke a stop-selling rationale are clearly at odds with the Supreme Court's decision in *Bartlett*. *Mut. Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 488 (2013) ("We reject this 'stop-selling' rationale

as incompatible with our pre-emption jurisprudence."). Those attempts also do not accurately reflect the state law duties at issue in these cases, which reflect the majority rule that the "law of products liability demands that manufacturers and distributors take feasible steps to make their products reasonably safe," such as adopting safer available alternative designs; it does not impose blanket product bans so as to "eliminate whole categories of useful products from the market." *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 385 (Tex. 1995).

Plaintiffs' cursory treatment of their so-called "non-label" warning claims is no more persuasive. To start, warn-by-advertisement is not a duty recognized by any state law at issue here. The relevant duty is to give warnings that are likely to reach end users because they "accompany[]" products. 7 U.S.C. § 136(p)(2) (material "accompanying" pesticides is labeling). Plaintiffs' blank-slate interpretation of the term "labeling" under FIFRA ignores the Supreme Court's construction of an identical provision in the FDCA to include advertising when it serves the function of labeling by instructing users about the product, which is exactly what a cancer warning would do. And Plaintiffs' only response to Monsanto's independent impossibility argument—that FIFRA prohibited Monsanto from airing advertisements contradicting the EPA-approved label—is to repeat the misguided argument that advertising is not labeling. But it does not matter for impossibility preemption whether the advertisement is a label. All that matters is that federal law prohibited Monsanto from including a cancer warning in its advertisements that EPA did not approve for its labels.

At bottom, Plaintiffs' claims fail on the evidence and under state law, and summary judgment is warranted in each case on that basis alone. The Court thus need not reach preemption issues, but in all events Plaintiffs' state-law claims that would require Monsanto either to warn that Roundup causes cancer or to reformulate Roundup are preempted. The Court should grant summary judgment to Monsanto on all category one cases.

## ARGUMENT

### I. Plaintiffs' Claims Uniformly Fail on the Evidence.

Reflecting that Plaintiffs worked up and litigated their cases on a core failure to warn theory, Plaintiffs across the board lack evidence to substantiate any claim that is not at heart a failure to

warn claim. That was an informed litigation decision: some plaintiffs had early success litigating failure to warn theories, and this Court had held that failure to warn claims were not preempted. It also likely carried meaningful benefits, including permitting plaintiffs to focus their case and not expend resources developing experts and evidence to support other theories—such as design defect—that were ultimately tangential to the case they intended to present to juries. But it also has meaningful consequences: having developed evidence only to support a failure to warn case, Plaintiffs simply lack the evidence necessary to substantiate any other theory of liability. That is particularly true in the case of design defect, the theory to which Plaintiffs most centrally pivot. Although the contours of state law vary, all require an expert to link the purported design defect to the cause of Plaintiffs' injury. Yet Plaintiffs here lack *any* expert testimony to support a design defect, let alone expert testimony that would support specific causation. The record is likewise barren of facts to support the other claims various Plaintiffs raise, whether it is "non-label" advertising, fraud, or warranties.

Accordingly, although the parties' briefing raises important legal questions regarding the scope of federal preemption, *all* of Plaintiffs claims at issue here can be resolved on threshold evidentiary shortcomings.

## II. Plaintiffs' Claims Are Preempted.

The Supreme Court's decision in *Durnell* establishes that FIFRA preempts all of Plaintiffs' claims against Monsanto. Under *Durnell*, state law may not require Monsanto to warn that Roundup allegedly causes cancer. And as a matter of impossibility, state law may not require Monsanto to alter Roundup's design. No plaintiff has come forward with evidence to support a claim that would not impose either of those requirements.

### A. Plaintiffs Misapply Preemption Principles.

Plaintiffs purport to offer the Court "Background on Federal Preemption and FIFRA," but they misstate preemption principles and conflate distinct forms of preemption.

Plaintiffs' lengthy invocation of a "heavy," "demanding" burden to show impossibility, Opp'n 4,5, makes no difference in this case. As to Monsanto's express preemption arguments, courts "do not invoke any presumption against pre-emption." *Commonwealth Of Puerto Rico v. Franklin*

*California Tax-free Tr.*, 579 U.S. 115, 125 (2016). And as to impossibility, the Supreme Court has already laid down the key principle: "[w]hen the ordinary meaning of federal law blocks a private party from independently accomplishing what state law requires, that party has established pre-emption." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 623 (2011). Plaintiffs argue otherwise only by citing cases that did not implicate this principle. The cases on which Plaintiffs rely, *Wyeth v. Levine*, 555 U.S. 555 (2009), and *Merck Sharp & Dohme Corp v. Albrecht*, 587 U.S. 299 (2019), both involved scenarios where the manufacturer *did not* need prior agency approval to issue a warning that was allegedly necessary under state law. The manufacturer thus shouldered a burden to show the agency would have exercised discretionary power to later reject the warning, which the Supreme Court characterized as demanding. Here, the Court need only decide whether the "ordinary meaning of federal law blocks" Monsanto from doing what state law allegedly requires without EPA's prior approval. And no presumption guides that inquiry either way. *See PLIVA*, 564 U.S. at 623 ("courts should not strain to find ways to reconcile federal law with seemingly conflicting state law").

Plaintiffs' expansive reading of *Bates* equally conflates forms of preemption and misreads the history of that case. *Bates* was an express preemption case, which concluded that certain claims were "not pre-empted" because they did not impose labeling or packaging requirements within the meaning of FIFRA's express preemption provision. *Bates*, 544 U.S. at 444. The majority in *Bates* nowhere addressed impossibility preemption. *See* 544 U.S. at 431–54. That was in keeping with the Supreme Court's typical practice, because the Fifth Circuit decision it reviewed turned solely on express preemption. *See Dow Agrosciences LLC v. Bates*, 332 F.3d 323, 329 (5th Cir. 2003); *see also, e.g.*, *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005) (declining to consider alternative basis for affirmance where court of appeals did not reach argument because "we are a court of review, not of first view"). Nor did *Bates* reject the notion that a claim pled as something other than failure-to-warn can amount to an expressly preempted failure-to-warn claim. In fact, *Bates* held that disguised "failure-to-warn claims," 544 U.S. at 446, although pled as "claims for negligent testing and defective design and manufacture," *id*. at 457 (Thomas, J., concurring in part), qualified as "requirements for labeling," within the meaning of FIFRA's express preemption provision, 7 U.S.C. § 136v(b). The *Bates* petitioners had pled no failure-to-warn claim. *See* Jt. App. 183a–193a, *Bates*

*v. Dow Agrosciences*, No. 03-388, 2004 WL 2356383, at *183–193 (U.S. Sept. 13, 2004) (reproducing operative counterclaim). So, had the majority in *Bates* in fact rejected the premise that "claims for . . . defective design" may sometimes qualify as disguised failure-to-warn claims, there would have been nothing to remand to the Fifth Circuit. *But see Bates*, 544 U.S. at 453 ("remand[ing]" case "to the Court of Appeals" to "decide[] whether [FIFRA] pre-empts petitioners' fraud and failure-to-warn claims"). That analysis accords with *Durnell*: FIFRA expressly preempts "*any state tort claim* that would require a pesticide manufacturer to use a label" other than "the EPA-approved label." *Durnell*, 609 U.S. at 390–91 (emphasis added).

FIFRA thus expressly preempts any tort claim that amounts to a failure-to-warn claim, however pled. And it preempts as a matter of impossibility any tort claim that "requires" Monsanto to take steps "federal law blocks [Monsanto] from independently accomplishing." *PLIVA*, 564 U.S. at 623.

**B. Plaintiffs' Warn-by-Advertising Theory Is Preempted.**

Notwithstanding *Durnell*'s holding that a "failure-to-warn claim" alleging Roundup causes cancer "is expressly preempted," 609 U.S. at 388, Plaintiffs maintain that that they can pursue failure-to-warn claims based on "Monsanto's Roundup advertisements." Opp'n at 13. Plaintiffs are incorrect. As *Durnell*, building on prior precedent, concluded, "[f]ailure-to-warn claims . . . 'are premised on common-law rules that qualify' as labeling requirements" under FIFRA. 609 U.S. at 383 (quoting *Bates*, 541 U.S. at 446). *Durnell* did not qualify that holding by saying "some" or "certain" failure-to-warn claims.

*Durnell*'s holding aligns with foundational tort principles. Although Plaintiffs assert (without citation) that "[m]any states' laws" are agnostic as to whether a warning appears on the label, Opp'n at 13, the prevailing common-law rule is that a manufacturer has a duty "to give directions or warning[] *on the container*." Restatement (Second) of Torts (1965) § 402A, cmt. j; *see also id.* ("product *bearing* such a warning" not defective); *Nesselrode v. Executive Beechcraft, Inc.*, 707 S. W. 2d 371, 382 (Mo. 1986) ("determinative issue in a products liability failure to warn case is . . . the information *accompanying* the product") (all emphases added). States that have legislated duties to warn underscore that dominant approach. *See, e.g.*, Miss. Code § 11-1-63(a)(1)(2) (manufacturer

"shall not be liable" in failure-to-warn unless plaintiff shows product "failed to *contain* adequate warnings or instructions."). That rule reflects common sense: a manufacturer's duty to warn runs not to those who happen to view its advertising, but rather those who use its products. As Monsanto has pointed out in individual cases, many plaintiffs saw no Roundup advertising at all.

Plaintiffs' next line of defense is a cramped reading of FIFRA's statutory definition of "labeling" that ignores on-point Supreme Court precedent. Under FIFRA, "labeling" includes not only printed labels, but also other materials "accompanying the pesticide or device at any time." 7 U.S.C. § 136(p)(2). Although Plaintiffs may think "accompanying" is limited to "the physical label affixed to this physical product or written materials that are inside of the packaging," Opp'n at 14, the United States Supreme Court says otherwise. In *Kordel v. United States*, the Court analyzed an identical definition of labeling, 21 U.S.C. § 321(m), and rejected an identical argument. The defendant in *Kordel* had sold both "health food products" and "circulars or pamphlets" making allegedly false claims about the efficacy of the products. 335 U.S. 345, 346 (1948). The defendant argued he could not be guilty of misbranding based on "false or misleading" "labeling" where the circulars had been "displayed in stores," "shipped separately from the [products] and at separate times," or "sold independently of the" products. *Id.* at 346–47. Rejecting that argument, the Supreme Court reasoned that "[o]ne article or thing is accompanied by another when it supplements or explains it"—with "[n]o physical attachment . . . necessary." *Id.* at 350. Nor did the Court accept an argument that the circulars were not labeling because they were "advertising." *Id.* at 351. Instead, because the "advertising" was the only place "the purchaser [was] advised how to use" the products, it "perform[ed] the function of labeling" and so qualified as labeling under the statute. *Id.* at 348, 351. When Congress amended FIFRA after creation of the EPA through the Federal Environmental Pesticide Control Act of 1972, it did not disturb the relevant language of FIFRA's definition of "labeling." Pub. L. 92-516 at § 2(p)(2). Congress is presumed to have known and incorporated the interpretive gloss the Court gave that statutory language in 1948. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.") (citations omitted).

If Monsanto did not include a cancer warning on Roundup's label, but created advertisements that warned of Roundup's alleged carcinogenicity or instructed users to take precautions not mentioned on the label, those advertisements would "perform[] the function of labeling" and thus accompany Roundup. *Kordel*, 335 U.S. at 351; *see also* Reply Ex. 1, EPA, Label Review Manual 1-2 (Dec. 2024) (noting the purpose of pesticide labeling is to "provide critical information about how to safely and legally handle and apply pesticides"). The Sixth Circuit has adopted exactly that approach in rejecting purportedly "non-label" warning claims against generic drug manufacturers. *Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 394 (6th Cir. 2013).[2]

Express preemption aside, FIFRA still "prohibits" Monsanto from making "'any claims'" that "'substantially differ'" from those EPA has approved, *Durnell*, 609 U.S. at 378 n.1 (quoting 7 U.S.C. § 136j(a)(1)(B)), including "in any advertising medium to which pesticide users or the general public have access," 40 C.F.R. § 168.22(a). So Monsanto could not "claim[]" in its advertisements that Roundup causes cancer when EPA has concluded the opposite. Plaintiffs' opposition does not deny the substance of that prohibition. It instead conflates express and impossibility preemption by merely repeating arguments that advertising and labeling are distinct. Opp'n at 14–15. But the relevant prohibition—on making unapproved claims—is not limited to labeling, even setting aside the breadth of that statutory term. It applies to "any claims" made in connection with a pesticide's "distribution or sale." 7 U.S.C. § 136j(a)(1)(B). No plausible reading of that provision's plain text excludes Roundup advertising. And "[w]hen federal law forbids an action that state law requires, the state law is without effect." *Bartlett*, 570 U.S. at 486 (citation omitted).

### C. Any Claim that Would Require Monsanto to Reformulate Roundup Is Preempted as a Matter of Impossibility.

Plaintiffs do not deny that under 7 U.S.C. § 136j(a)(1)(C) and 40 C.F.R. § 152.44(a), Monsanto was prohibited from changing Roundup's approved formulation without first obtaining

---

[2] *Kordel*'s reasoning also disposes of Plaintiffs' argument that on Monsanto's view "each and every advertisement" is FIFRA labeling. Opp'n at 14. Whether a particular advertisement is "labeling" depends on the function it performs.

EPA's prior approval. For good reason. *Durnell* addressed § 136j(a)(1)(C) and explained that it "prohibits selling a pesticide if its composition differs from the composition" EPA approved. 609 U.S. at 378 n.1. *Durnell* also carefully analyzed 40 C.F.R. § 152.44(a), which applies without distinction to both pesticide "labeling" *and* "composition" and held that the regulation both "require[s] a manufacturer to use the EPA-approved label and prohibit[s] the manufacturer from unilaterally changing the label." *Id.* at 391. Indeed, Plaintiffs now say § 152.44(a) is a "valid EPA regulation[] that carr[ies] the force of law" and "forbid[s] a manufacturer from departing from the label approved during the registration process." Opp'n at 6. Just as federal law forbids Monsanto from departing from the EPA-approved label, it forbids Monsanto from departing from the EPA-approved composition.[3]

Plaintiffs cannot deny the basic rule of impossibility preemption—that state law may not require Monsanto to take action that federal law forbids. *Bartlett*, 570 U.S. at 486. So they resort to misstating the duties imposed by state-law design defect claims and overstating differences between FIFRA and the FDCA.

On state law, they assess the relevant duty "at far too high a level of generality," *Durnell*, 609 U.S. at 388, by framing it only as a duty not to sell defective products, Opp'n at 9. That is not a fair formulation of state law (and perhaps why their lead case is a half-century old and from an intermediate court). *See Hamilton Motor Coach Indus., Inc.*, 569 S.W.2d 571 (Tex. App. 1978).

---

[3] Plaintiffs quote, without endorsing, an ill-reasoned passage from a Missouri trial court order deeming it significant that 40 C.F.R. § 152.44(a) "prescribes a procedure for, and not a per se prohibition on, changing a product's composition." Opp'n at 12 (quoting *Shull v. Monsanto Co.*, No. 25BA-CV4355, 2026 WL 2742795, at *2 (Mo. Cir. Ct. of Boone Cnty., Aug. 31, 2026). *Shull*'s characterization of § 152.44(a) is inconsistent with Plaintiffs' own description of it as a "prohibition" (at 6), and with the Supreme Court's in *Durnell*. 609 U.S. at 391. In all events, the existence of a procedure for changing a product's composition does not somehow distinguish FIFRA from the FDCA. In *Bartlett*, the Supreme Court explained that "redesign was not possible" because "were [the manufacturer] to change the composition of its [drug], the altered chemical would be a new drug that would require its own NDA to be marketed in interstate commerce." 570 U.S. at 483–84. What mattered in *Bartlett* was not the existence of a process, but that the manufacturer was prohibited from changing its drug without first successfully undergoing that process and obtaining FDA's approval for the change. *Accord, e.g.*, *Gustavsen v. Alcon Lab'ys, Inc.*, 903 F.3d 1, 9 (1st Cir. 2018) ("If a private party . . . cannot comply with state law without first obtaining the approval of a federal regulatory agency, then the application of that law to that private party is preempted.").

Rather than "eliminate whole categories of useful products from the market," the "law of products liability demands that manufacturers and distributors take feasible steps to make their products reasonably safe," such as accompanying their products with necessary warnings or adopting safer available alternative designs. *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 385 (Tex. 1995); *see also, e.g.*, *Banks v. ICI Americas, Inc.*, 450 S.E.2d 671, 674 (Ga. 1994) ("choosing from among various alternative product designs and adopting the safest one if it is feasible is considered the 'heart' of design defect cases"); *Yates v. Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 297 (6th Cir. 2015) (noting "purpose of" design defect claim under New York law is to assess "whether the risk of injury might have been reduced or avoided if the manufacturer had used a feasible alternative design").

Plaintiffs' inaccurate framing of the relevant duty is particularly stark in states—like several in the motions pending before the Court—that require a plaintiff pursuing a design defect claim to prove the availability of a reasonable alternative design. In those jurisdictions, the duty imposed by state law design defect claims is by definition a duty to adopt an alternative formulation—something federal law does not permit manufacturers to do unilaterally.

Nor is Plaintiffs' sky-high level of generality an escape hatch from preemption more broadly. A plaintiff could just as easily frame a strict-liability failure-to-warn claim as imposing a duty not to sell a defective product—as the respondent in *Durnell* attempted. *See* Br. of Resp't 3, 12, *Monsanto Co. v. Durnell*, No. 24-1068 (U.S. Mar. 25, 2026) (arguing Missouri law imposes a "duty . . . not to introduce into commerce an unreasonably dangerous product" rather than "a duty to change a pesticide label"). That did not stop the Supreme Court from concluding that Missouri law "would require a cancer warning on the Roundup label" and finding preemption on that basis. *Durnell*, 609 U.S. 383. What matters is the reason state law deems a product defective. And the Supreme Court has repeatedly confronted—and repeatedly rejected—attempts to reframe state-law product liability duties as imposing "stop-selling" duties. *Bartlett*, 570 U.S. at 488 ("We reject this 'stop-selling'

rationale as incompatible with our pre-emption jurisprudence."); *see also id.* at 489 & n.5 (discussing *PLIVA*).[4]

Plaintiffs next say that nothing in federal law required Monsanto to sell Roundup. Opp'n at 10. ("Federal law says Roundup may be sold, not that it must be."). It is unclear what point Plaintiffs mean to make, unless it is just repeating their stop-selling theory. Federal law no more requires avocado growers, motor vehicle manufacturers, or drug makers to enter the market and sell their products, but that does not make impossibility preemption inapplicable. *See Bartlett*, 572 U.S. at 488; *Geier v Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 143 (1963).

Nor are Plaintiffs correct that 7 U.S.C. § 136v(a) distinguishes FIFRA from "every instance in which the [Supreme] Court has found impossibility pre-emption." *Bartlett*, 570 U.S. at 488. That provision allows a state to "regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation *does not permit any sale or use prohibited by this subchapter*." 7 U.S.C. § 136v(a) (emphasis added). So, for example, "a state agency" could refuse to license and thus "ban the sale of a pesticide if . . . one of the pesticide's label-approved uses is unsafe." *Bates*, 544 U.S. at 446. It could not, however, impose a tort duty that would penalize the manufacturer for not engaging in activity "prohibited by" FIFRA. Plain text aside, the Supreme Court has explained that a preemption "saving clause" does not spare from implied preemption "state-law tort actions that conflict with federal regulations." *Geier*, 529 U.S. at 869. After all, Congress should not lightly be presumed to authorize a scenario where "state law could impose legal duties that would conflict directly with federal regulatory mandates." *Id.* at 871; U.S. Const. Art. VI cl. 2 ("[T]he Laws of the United States . . . . shall be the supreme Law of the Land . . . any thing in the Constitution or Laws of any State to the Contrary notwithstanding."). FIFRA is no exception:

---

[4] Plaintiffs' mystifying suggestion (Opp'n at 10–11) that a state-law design defect duty is distinguishable from the state law duty at issue in *Bartlett* fails for an obvious reason: the preempted duty in *Bartlett* was a "New Hampshire design-defect claim." 570 U.S. at 475. And *Bartlett* did not turn on the intricacies on the relevant duty, but rather the fact that to avoid liability the manufacturer would have had to either redesign or strengthen the warning associated with its drug, neither of which the manufacturer could do unilaterally "without violating the restrictions of the FDCA." *Brinkley v. Pfizer, Inc.*, 772 F.3d 1133, 1140 (8th Cir. 2014) (citation omitted).

"§ 136v(a) is merely declaratory" and its text does not authorize states to require anything FIFRA prohibits. *Bates*, 544 U.S. at 446 n.20 (2005) (citation omitted). Monsanto could not independently sell Roundup with a different composition from the one EPA approved, so such sales would be "prohibited by [FIFRA]," 7 U.S.C. § 136v(a), leaving Plaintiffs' theory within "the ordinary working of conflict pre-emption principles," *Geier*, 529 U.S. at 869.[5]

**CONCLUSION**

Summary judgment should be granted in full to Monsanto.

[5] In passing, Plaintiffs cite this Court's earlier observation that "nothing in the FDCA allows a state to ban a drug." Opp'n at 11. Subsequent refinement of the issues in this litigation has revealed numerous "crucial similarit[ies] between the two regulatory schemes." *Schaffner v. Monsanto Corp.*, 113 F.4th 364, 389 n.14 (3d Cir. 2024); *see also Durnell*, 609 U.S. at 387, 389, 392–93 (rejecting attempts to distinguish FIFRA and the FDCA). Neither statute confers an affirmative right to sell a product. Instead, like FIFRA, the FDCA prohibits selling unapproved new drugs. *Compare* 7 U.S.C. § 136j(a)(1)(A) (unlawful to sell unregistered pesticide) *with* 21 U.S.C. § 355(a) (unlawful to sell unapproved new drug). Nor was any right to sell approved drugs relevant to *Bartlett*'s rejection of a stop-selling theory. *Bartlett* made clear that a "stop-selling" theory would conflict with "*every instance* in which the Court has found impossibility pre-emption." 570 U.S. at 488 (emphasis supplied). That includes "subject matter . . . within the scope of state superintendence." *Florida Lime*, 373 U.S. at 144. So, for example, state law would be preempted if "federal orders forbade the picking and marketing of any avocado testing more than 7% oil," while state law "excluded from the State any avocado measuring less than 8% oil content." *Id.* at 143. That is true even though no federal statute confers an affirmative right to sell avocados, or says a state cannot ban them.

DATED: October 23, 2026

By: */s/ Anthony R. Martinez*
Anthony R. Martinez
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
amartinez@shb.com

*Attorney for Defendant*
*MONSANTO COMPANY*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 23, 2026, the foregoing document was filed and served on all counsel of record via the Court's CM/ECF system.

*/s/ Anthony R. Martinez*
Anthony R. Martinez