**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

*Attorneys for Defendant Monsanto Company*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 Fax: 310-576-2200

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Green v. Monsanto Co.*,<br>Case No. 3:23-cv-05878-VC<br><br>*Moreland v. Monsanto Co.*,<br>Case No. 3:20-cv-03069-VC | **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**<br><br>**<u>Hearing:</u>**<br>Date: November 16, 2026<br>Time: 1:00 PM<br>Place: San Francisco Courthouse, Courtroom 3 |

## TABLE OF CONTENTS


Introduction ..... 1

Argument ..... 2

I. Plaintiff Green's Claims Fail Because She Has No Specific Causation Expert. ..... 2

II. Plaintiffs' Design Defect Claims Fail. ..... 2

A. Plaintiffs Lack Evidence to Prove a Design Defect Claim. ..... 2

B. Plaintiffs' Design Defect Claims Are Preempted as a Matter of Impossibility. ..... 5

III. Plaintiff Moreland Cannot Sustain A Warn-By-Advertising Theory. ..... 5

IV. Plaintiff Moreland Has Identified No Evidence Supporting His Fraud Claim. ..... 6

V. Plaintiff Moreland Has No Viable Negligence Claim Independent of His Design Defect and Warnings-Based Theories. ..... 7

VI. Plaintiffs Green and Moreland Cannot Substantiate Any Breach Of Implied Warranty Independent Of A Design Or Warning Claim. ..... 7

Conclusion ..... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*, No. 22 C 00232, 2025 WL 1282749 (N.D. Ill. May 2, 2025) ....5

*Barko Response Team, Inc. v. Sudduth*, 795 S.E.2d 198 (Ga. 2016)....3

*Bowden v. Med. Ctr., Inc.*, 845 S.E.2d 555 (Ga. 2020)....6

*Brockert v. Wyeth Pharms., Inc.*, 287 S.W.3d 760 (Tex. Ct. App. 2009) ....5

*Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717 (E.D. Pa. 2014) ....5

*Caterpillar, Inc. v. Shears*, 911 S.W.2d 379 (Tex. 1995)....5

*Celotex Corp. v. Cattrett*, 477 U.S. 317 (1986)....6

*Cochran v. Brinkmann Corp.*, 381 F.App'x 968 (11th Cir. 2010) ....2

*Cochran v. Brinkmann Corp.*, No. 1:08–cv–1790–WSD, 2009 WL 4823854 (N.D. Ga. Dec. 9, 2009) ....2, 3

*Cowart v. Widener*, 697 S.E.2d 779 (Ga. 2010)....3

*Karekezi v. Pinnacle Sys., Inc.*, 885 S.E.2d 235 (Ga. App. 2023)....6

*Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472 (2013)....5

*Nixon v. Pierce Cnty. Sch. Dist.*, 746 S.E.2d 745 (Ga. Ct. App. 2013)....2

*Sheffield v. Darby*, 535 S.E.2d 776 (Ga. App. 2000)....8

*Snow's Laundry & Dry Cleaning Co. v. Georgia Power Co.*, 6 S.E.2d 159 (Ga. App. 1939)....8

*Thornton v. E.I. Du Pont De Nemours & Co.*,
22 F.3d 284 (11th Cir. 1994) ....................6

**Statutes**

O.C.G.A. § 11-2-313(1) ....................8

O.C.G.A. § 51-1-11(b) ....................7

**INTRODUCTION**[1]

Plaintiffs' oppositions demonstrate that none of their claims survive *Durnell*.

Both Plaintiffs incorrectly argue that they can support design defect claims while conceding they have no expert testimony on alternative design generally, much less connecting any purported design defect to Plaintiffs' injuries specifically. Georgia law requires proof of a reasonable alternative design that would have prevented plaintiff's injuries, and it further requires expert testimony to support such a design where the product is beyond the lay understanding of jurors. Plaintiffs have neither. Indeed, Plaintiff Green has **no specific causation expert at all**—a fatal deficiency identified by Monsanto's motion to which Plaintiff's opposition offers no response.

Nor do Plaintiffs' oppositions supply the missing evidence. Plaintiff Green points to Roundup formulations sold in Europe without POEA, but offers no evidence that Mr. Green used a POEA-containing formulation, no expert testimony that POEA caused his cancer, and no expert opinion that Roundup without POEA would have prevented his illness. Plaintiff Moreland fares no better. Both he and Plaintiff Green's observation that beginning in 2022 Monsanto marketed other herbicides under the Roundup trade name that do not contain glyphosate—after Mr. Green had passed away and years after Mr. Mooreland stopped using Roundup—is not sufficient alternative design evidence under Georgia law. Plaintiffs make no effort to show such a design was feasible or practical to implement during the relevant time, nor does either have an expert who could testify that such a design would have prevented Plaintiffs' injuries. Further, a theory that Monsanto should have replaced glyphosate with a different product rather than redesigning it is the sort of categorial liability theory that Georgia's imposition of an alternative design requirement exists to prevent.

Plaintiff Green's entire opposition is devoted to design defect, tacitly conceding that her other theories fail. And Plaintiff Mooreland's remaining arguments cannot save his claims. His opposition does not identify any evidence that he relied on a specific false statement by Monsanto, as Georgia law requires for fraud. Nor can he establish causation for his warn-by-advertising theory. Plaintiff Moreland testified that he saw a Roundup commercial only once, does not recall when he saw it,

[1] Plaintiff Arthur King voluntarily dismissed his case following Monsanto's opening motion. This reply accordingly only addresses Plaintiffs Green and Mooreland.

and did not rely on it in deciding to purchase Roundup. By contrast, he testified that he read the product label and looked for health warnings. The record therefore forecloses any effort to recast this case as one about advertising rather than labeling—an argument that would in any event be preempted. Plaintiffs likewise fail to identify any viable breach-of-warranty theory. Neither Plaintiff disputes the absence of privity with Monsanto, and neither identifies a warranty claim that survives independently of their design and warning-based allegations.

Because Plaintiffs cannot substantiate a non-preempted claim under Georgia law, summary judgment should be granted in full to Monsanto.

## ARGUMENT

### I. Plaintiff Green's Claims Fail Because She Has No Specific Causation Expert.

Monsanto's motion explained that Plaintiff Green failed to timely disclose any specific causation expert. *See* Mot. at 3; MDL Doc. 20948. Plaintiff's opposition fails to offer any response to that deficiency. Accordingly, all of Plaintiff Green's claims fail for this independent reason. *See, e.g.*, *Nixon v. Pierce Cnty. Sch. Dist.*, 746 S.E.2d 745, 748 (Ga. Ct. App. 2013) ("[E]ven in simple negligence cases, plaintiffs must come forward with expert evidence in order to survive a defense motion for summary judgment 'when medical questions relating to causation are involved.'").

### II. Plaintiffs' Design Defect Claims Fail.

Georgia law makes clear that to establish a design defect a plaintiff must prove a reasonable alternative design that would have prevented their injuries, and that at least in the case of products—like Roundup—beyond the lay understanding of juries, such an alternative design must be proved through expert testimony. Plaintiffs admit that they have no such expert testimony, and their efforts to identify alternative designs in the record untethered from the required expert testimony fail on both the evidence and the law.

#### A. Plaintiffs Lack Evidence to Prove a Design Defect Claim.

Plaintiffs correctly concede that Georgia law requires proof of a reasonable alternative design to succeed on a design defect claim. Green Opp'n at 6-7; Mooreland Opp'n at 18. Plaintiff Green also does not contest that "[i]t is axiomatic that expert testimony is generally required to demonstrate that alternative safer designs exist." *Cochran v. Brinkmann Corp.*, No. 1:08–cv–1790–WSD, 2009

WL 4823854, at *5 (N.D. Ga. Dec. 9, 2009). Green Opp'n at 6-7; *see also, e.g.*, *Cochran v. Brinkmann Corp.*, 381 F.App'x 968, 969 (11th Cir. 2010) (applying Georgia law and concluding summary judgment warranted because exclusion of proffered experts meant plaintiffs had "no admissible evidence of alternative safer designs for the [product] in this litigation"). In contrast, Plaintiff Mooreland's surprising contention that expert testimony is not required to establish an alternative design in a case, like this one, involving a formulated chemical product has no support in the law. *See* Mooreland Opp'n at 19. Like virtually every other jurisdiction with an alternative design requirement, Georgia requires expert testimony to prove the availability of an alternative design where the issue "is beyond common knowledge and experience." *Cowart v. Widener*, 697 S.E.2d 779, 785 (Ga. 2010). Here, the issues implicated by an alternative design analysis—whether a formulation of Roundup used by Plaintiffs causes NHL, whether a different formulation would eliminate that risk, whether alternative formulations would remain equally effective, and whether any proposed alternative would have prevented Plaintiff's cancer—are all matters far beyond a lay juror's common experience. Under Georgia law, those issues require expert proof. *Id.*; *see also, e.g.*, *Barko Response Team, Inc. v. Sudduth*, 795 S.E.2d 198, 201 (Ga. 2016) (trial court erred in denying defendant's motion for summary judgment where plaintiff lacked expert testimony on complex medical causation).

Reflecting that Plaintiffs litigated their cases under a core failure to warn theory from the beginning, Plaintiffs do not even purport to have an expert who offers an opinion on an alternative design for Roundup—let alone testimony purporting to establish that an available alternative design for Roundup would have prevented Plaintiffs' injuries. But that is precisely what Georgia law requires. *See, e.g.*, *Cochran*, 2009 WL 4823854 at *5. That undisputed evidentiary gap is fatal to Plaintiffs' design defect claims.

Tacitly conceding they lack the expert testimony Georgia law requires, Plaintiffs instead pivot to arguing that record evidence untethered from any expert opinion can support their design defect claims. Plaintiffs are wrong.

*First*, Plaintiff Green (but not Plaintiff Mooreland) argues that she can satisfy the alternative design requirement by pointing to "non-POEA formulations" of Roundup Monsanto sold in Europe.

Green Opp'n at 7. Plaintiff's evidence plainly cannot support this theory: Plaintiff does not offer any proof that decedent used Roundup containing POEA, or that decedent's cancer would have been prevented using Roundup without POEA. Most critically, Plaintiff Green does not have *any* specific causation expert, let alone one who purports to connect POEA specifically to decedent's cancer.

*Second*, both Plaintiffs argue they can point to a "glyphosate-free formulation" containing "triclopyr, diquat dibromide, and fluazifop-P-butyl, and optionally, Imazapic-ammonium." Green Opp'n at 8; Mooreland Opp'n at 18-19, because Monsanto obtained approval to begin marketing such a formulation under the Roundup trade name in 2022—a year after Mr. Green passed away in 2021, and three years after Mr. Moreland stopped using Roundup in 2019. *See* Mot. at 5–6. Plaintiffs make no effort to show—as they would need to here—that Monsanto could have developed and marketed the relevant formulation more than a decade before it was developed and approved. And the evidence Plaintiffs' leadership relies on instead undercuts that conclusion. *See, e.g.*, Omnibus Ex. 133 at 1 (2022 patent application stating that: "Up to now, however, typical satisfactory herbicide products for such weed control are based on glyphosate or dicamba."); Omnibus Ex. 127 at 2892:15–16 ("There is many, many steps that go into getting a new formulation to market."). Dr. Farmer, for her part, testified that "there is no alternative glyphosate," which, unlike other ingredients "acts on all plants." Omnibus Ex. 127 at 2804:18–21. That testimony further underscores the difference between active ingredients being separately available as a general matter, as opposed to being formulated together, years later, into a new product. Nor do Plaintiffs offer evidence comparing glyphosate-based herbicides and their proposed alternative. Instead, they rely on citations to Monsanto's position that all Roundup-branded herbicides—both those containing glyphosate and its new formulations—are safe and effective. *See* Green Opp'n at 8 (citing Dr. Farmer's testimony); Mooreland Opp'n at 19 (same). Plaintiffs cannot parlay that uniform position into evidence that the post-2022 formulation is a safer alternative to glyphosate-based Roundup that was available when Mr. Green or Mr. Mooreland used Roundup and would have prevented their injuries. To make that showing, Plaintiffs were required to proffer a competent expert to testify that if Plaintiffs had used a specific, available-at-the-time proposed alternative, they would not have developed NHL. There is no dispute they have not done so.

Finally, as states that impose alternative design requirements recognize, "it is a basic matter of tort principles that an alternative design must not be an altogether essentially different product." *In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*, No. 22 C 00232, 2025 WL 1282749, at *6 (N.D. Ill. May 2, 2025). An alternative may be essentially different "even when the other product has the same general purpose." *Brockert v. Wyeth Pharms., Inc.*, 287 S.W.3d 760, 770 (Tex. Ct. App. 2009). The purpose of that rule is to ensure that the "law of products liability" does not perform the essentially legislative function of "eliminat[ing] whole categories of useful products from the market." *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 385 (Tex. 1995). Applying that principle, courts regularly hold that different active ingredients are not alternatives as a matter of law. *E.g. Brockert*, 287 S.W.3d at 770 (estrogen alone not alternative to combination of estrogen and progestin); *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 484 (2013) (drug consisting of single active ingredient incapable of redesign); *Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 722 (E.D. Pa. 2014) ("acetaminophen is not an alternative to ibuprofen") (citation omitted)). Plaintiffs' theory is not that a glyphosate-based herbicide should be redesigned, but that it should be replaced with different herbicides. *Cf. Brown*, 64 F. Supp. 3d at 722 (in contrast to acetaminophen, "Dexibuprofen," which is "a different form of ibuprofen" was potential alternative design.") That is a theory state law does not recognize. Many different products may be marketed under a single trade name such as "Roundup," but the defining feature of a glyphosate-based herbicide remains *glyphosate*, and for product liability purposes a product without glyphosate is a different product altogether, not an alternative design.

**B. Plaintiffs' Design Defect Claims Are Preempted as a Matter of Impossibility.**

Plaintiff Green offers no separate response on the issue of impossibility preemption. And Plaintiff Mooreland's opposition arguing against impossibility preemption restates the arguments made by leadership. *See* Mooreland Opp'n at 8-12. Monsanto accordingly refers the Court to its response to the omnibus opposition.

**III. Plaintiff Moreland Cannot Sustain A Warn-By-Advertising Theory.**

Plaintiff Moreland's arguments for why he can purportedly maintain a warn-by-advertising claim find no support in the record or Georgia law. Nor do they overcome preemption.

As Monsanto's motion pointed out in detail, Plaintiff Moreland testified that he saw "a commercial" for Roundup "one time" and that he neither recalled when he saw the commercial nor relied on the commercial in choosing to purchase Roundup. Mot. at 12. In contrast, Plaintiff Moreland "read the label" for Roundup on "[t]he first purchase" and looked for "any health warnings." *Id.* Plaintiff Moreland does not dispute that account, nor even offer argument on causation. But "proximate causation is a necessary element of a failure to warn claim," which Plaintiff Moreland must prove. *Karekezi v. Pinnacle Sys., Inc.*, 885 S.E.2d 235, 240 (Ga. App. 2023). He cannot do so based on that limited testimony. And he has not attempted to show otherwise in his opposition.

Despite Monsanto's argument that Plaintiff Moreland's warn-by-advertisement theory is inconsistent with Georgia law, Mot. at 11, Plaintiff Moreland's opposition cites no case in which a Georgia court held that a manufacturer has a duty to warn in its advertising rather than on its products. The Court should not infer such a novel duty sitting in diversity. Under Georgia law a manufacturer cannot discharge its warning duty by giving a warning that is unlikely to "adequately communicate the warning to the ultimate user." *Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F.3d 284, 289 (11th Cir. 1994). The record in this case underscores why: advertising reaches a random subset of the broader public at random times. But the duty to warn runs to users, which is why a manufacturer must provide a warning with the product.

On top of all that, a duty for Monsanto to warn of Roundup's purported carcinogenicity in advertising is still preempted. Plaintiff Moreland makes no counterarguments other than those contained in leadership's omnibus opposition and Monsanto refers the Court to its omnibus reply.

**IV. Plaintiff Moreland Has Identified No Evidence Supporting His Fraud Claim.**

Plaintiff Moreland's opposition fails to come forward with "specific facts showing that there is a genuine issue for trial" on his fraud claim. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986) Plaintiff does not dispute the element under Georgia law, "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Bowden v. Med. Ctr., Inc.*, 845 S.E.2d 555, 564 n.10 (Ga. 2020) (citation omitted).

Rather than attempt to draw a connection between any specific, allegedly false statement by Monsanto and Plaintiff Moreland's Roundup use—as the element of reliance requires—Plaintiff Moreland's opposition merely recites a laundry list of statements he never personally saw and alleges are not accurate. That does not carry his summary judgment burden. And although Plaintiff Moreland points to the limited "concealment" theory of fraud under Georgia law, his opposition fails to dispute Monsanto's arguments that such a fraud-by-omission claim is merely a preempted failure-to-warn theory *and* that he cannot make the heightened actual knowledge showing Georgia requires to sustain a fraud-by-omission claim. Mot. at 19 n.12.

## V. Plaintiff Moreland Has No Viable Negligence Claim Independent of His Design Defect and Warnings-Based Theories.

Plaintiff Moreland briefly argues that "here, the negligence claims do not overlap with label-based warning claims" and that "Mr. Moreland alleges negligence based on the sale of Monsanto's defective product." Moreland Opp'n at 21. But beyond that bare assertion Plaintiff does not articulate how his purported negligence claim differs from his design defect or failure to warn theories. Plaintiff offers no explanation because there is none. Plaintiff himself identifies only two negligence-based theories: "sale of a defective product," and "failure to warn of the danger arising from the use of that product." *Id.* at 20. Plaintiff disclaims the latter, which would indisputably be preempted, and the only other theory of product defect Plaintiff has identified is defective design. *See, e.g., id.* at 18-20. Plaintiff accordingly has no viable negligence claim separate from his theory of design defect, which fails for the reasons identified in Monsanto's opening motion and herein.

## VI. Plaintiffs Green and Moreland Cannot Substantiate Any Breach Of Implied Warranty Independent Of A Design Or Warning Claim.

Neither Plaintiff Green nor Plaintiff Moreland denies that Georgia law imposes a privity requirement in implied warranty cases, or that the statutory exception—O.C.G.A. § 51-1-11(b)—is coextensive with strict liability in Georgia, such that any claim that meets the exception is merely cumulative of their failure-to-warn and design defect claims.

Plaintiff Green does not offer any further argument on this claim, confirming it fails alongside her design defect claim.[2] Plaintiff Moreland's invocation of an express warranty privity

[2] Plaintiff Green conceded her failure-to-warn claim.

theory is meritless, as he himself seems to recognize. *See* Moreland Opp'n at 22. Plaintiff Moreland does not plead an express warranty claim. And he does not specifically identify any warranty *between him* and Monsanto. The only statement he says constitutes an express warranty—a 1982 "Q & A"—is one he does not contend that he saw and relied on. And his references to seeing a "funny" commercial that did not influence his decision to purchase Roundup in which "a weed was sprayed" and "shriveled" do not establish privity. Under Georgia law, an express warranty arises only from an "affirmation of fact or promise" or a specific "description of the goods" that "is made part of the basis of the bargain." O.C.G.A. § 11-2-313(1). To qualify as express warranties, statements "must be positive and unequivocal"—not "vague," "ambiguous," or "indefinite." *Snow's Laundry & Dry Cleaning Co. v. Georgia Power Co.*, 6 S.E.2d 159, 160 (Ga. App. 1939). Plaintiff Moreland identifies no specific, unambiguous warranty in the ad. And generalized expressions of quality common in sales and advertising are not express warranties. *Sheffield v. Darby*, 535 S.E.2d 776, 779 (Ga. App. 2000) (collecting examples).

## **CONCLUSION**[3]

Summary judgment should be granted in full to Monsanto.

---

[3] Both Plaintiffs ask the Court for permission, in the alternative, to disclose new experts and/or to amend their complaint. There is no good cause to grant such a request, and it should be denied. *See, e.g.*, Reply Ex. 1, Transcript of July 9, 2026 CMC at 39:17-24 ("What's the point of the MDL? The point of the MDL is to get the cases trial ready and send them back for trial . . . I can't image anybody contemplated, like, adding a design defect expert when none was presented before the discovery cutoff in the MDL."); 37:13-16 ("it seems like it would be very unfair to the defendant to make them go back and relitigate the case again when it's the plaintiffs' fault for not anticipating a need to build a record on claims that wouldn't be preempted").

DATED: October 23, 2026

By: /s/ Anthony R. Martinez
Anthony R. Martinez
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
amartinez@shb.com

*Attorney for Defendant*
*MONSANTO COMPANY*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 23, 2026, the foregoing document was filed and served on all counsel of record via the Court's CM/ECF system.

*/s/ Anthony R. Martinez*
*Anthony R. Martinez*