**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

*Attorneys for Defendant Monsanto Company*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 Fax: 310-576-2200

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION,

This document relates to:

*Shedd v. Monsanto Co.*
Case No. 3:20-cv-03833

MDL No. 2741

Case No. 3:16-md-02741-VC

**DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

**Hearing:**
Date: November 16, 2026
Time: 1:00 PM
Place: San Francisco Courthouse, Courtroom 3

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Plaintiff's Design Defect Claim Fails. ........ 2

A. Plaintiff Cannot Prove an MPLA Design Defect Claim. ........ 2

B. Plaintiff's MPLA Design Defect Claim Is Preempted as a Matter of Impossibility. ........ 5

II. Plaintiff Comes Forward with No Evidence to Substantiate His Express Warranty Claim. ........ 6

III. Plaintiff Concedes His Failure-To-Warn Claim and Admits the MPLA Abrogates His Negligence and Implied Warranty Claims. ........ 7

CONCLUSION ........ 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brockert v. Wyeth Pharms., Inc.*,
287 S.W.3d 760 (Texas Ct. App. 2009)....................4

*Brown v. Johnson & Johnson*,
64 F. Supp. 3d 717 (E.D. Pa. 2014)....................4

*Denham v. Holmes ex rel. Holmes*,
60 So. 3d 773 (Miss. 2011)....................3

*Gustavsen v. Alcon Lab'ys, Inc.*,
903 F.3d 1 (1st Cir. 2018)....................5

*Guy v. Crown Equipment Corp*,
394 F.3d 320 (5th Cir. 2004)....................2

*Ignacuinos v. Boehringer Ingelheim Pharms., Inc.*,
8 F.4th 98 (2d Cir. 2021)....................5

*McIntosh v. Nissan N. Am., Inc.*,
No. 3:07CV60 DPJ–LRA, 2008 WL 4793743 (S.D. Miss. Oct. 28, 2008)....................2

*McSwain v. Sunrise Med., Inc.*,
689 F. Supp. 2d 835 (S.D. Miss. 2010)....................7

*Mealer v. 3M Co.*,
No. 2013-027-CV03, 2015 WL 9692735 (Miss. Cir. Ct. Mar. 28, 2015)....................4

*Mut. Pharm. Co., Inc. v. Bartlett*,
570 U.S. 472 (2013)....................1, 4, 5

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011)....................5, 6

*Shull v. Monsanto Co.*,
No. 25BA-CV4355, 2026 WL 2742795 (Mo. Cir. Ct. of Boone Cnty., Aug. 31, 2026)....................6

*Trejo v. Johnson & Johnson*,
13 Cal. App. 5th 110 (2017)....................5

*Williams v. Bennett*,
921 So. 2d 1269 (Miss. 2006)....................2, 4

*Wyeth v. Levine*,
555 U.S. 555 (2009)....................5

*Yates v. Ortho-McNeil-Janssen Pharms., Inc.*,
808 F.3d 281 (6th Cir. 2015) ....................5

**Statutes**

7 U.S.C. § 136j(a)(1)(C) ....................1, 5

Miss. Code § 11-1-63....................7

**Other Authorities**

40 C.F.R. § 152.44(a)....................1, 5, 6

**INTRODUCTION**

Plaintiff Ray Shedd, Jr. brought five Mississippi law claims against Monsanto: failure to warn, design defect, negligence, breach of express warranty, and breach of implied warranty. Plaintiff's opposition does not mention his failure-to-warn claim, which he thus rightly concedes. Nor does Plaintiff dispute that the Mississippi Product Liability Act (MPLA) abrogates his negligence and implied warranty claims—he only maintains that the corresponding "allegations support Plaintiff's MPLA design-defect claim." Opp'n at 16. Plaintiff comes forward with no evidence that he personally saw and relied on any express warranty by Monsanto regarding Roundup. That leaves Plaintiff to defend one theory—design defect—and it cannot save this case.

Plaintiff's design defect "theory is that Monsanto should have," in his own words, "marketed a safer Roundup formulation." Opp'n at 14. That is the theory the MPLA requires him to advance: under Mississippi law, a manufacturer "shall not be liable" for an allegedly defective design unless the plaintiff proves, among other things, that "at the time the product left the control of the manufacturer" "there existed a feasible design alternative." Miss. Code. § 11-1-63(f). But Plaintiff's opposition fails to come forward with competent evidence satisfying that burden. Plaintiff admits that he has no expert offering an alternative design opinion. And he is incorrect that Mississippi law allows him to proceed without one. Further, the "alternative design" that he does offer—Roundup without glyphosate—does not qualify as an alternative under the MPLA. Plaintiff does not even argue that glyphosate-free Roundup was feasible and available at the time of his exposure. Even if he could, for purposes of Mississippi law, herbicides with different active ingredients and different modes of action are different products, not alternative designs.

Plaintiff's own characterization of his claim also confirms impossibility preemption applies. Monsanto was prohibited from "market[ing] a" different, allegedly "safer Roundup formulation," Opp'n at 14, without EPA's prior approval. *Durnell*, 609 U.S. at 378 n.1; 7 U.S.C. § 136j(a)(1)(C); 40 C.F.R. § 152.44(a). So Mississippi law could not require Monsanto so do so. *Mut. Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 486 (2013) ("When federal law forbids an action that state law requires, the state law is without effect."). And Plaintiff's limited efforts to reject the application of that rule to this case are meritless.

Summary judgment should be granted in full to Monsanto.

## ARGUMENT

### I. Plaintiff's Design Defect Claim Fails.

Plaintiff's opposition confirms the numerous reasons his MPLA design defect claim fails. Plaintiff has no expert who will offer an opinion that Roundup could have been redesigned when he used it; the non-expert evidence he offers is woefully incomplete; and the alternative he identifies—Roundup without glyphosate—is not one Mississippi law recognizes. All that aside, Plaintiff's opposition underscores the reason impossibility preemption applies: the relevant duty Plaintiff alleges under Mississippi law is to market Roundup with a different formulation, which Monsanto could not do unilaterally as a matter of federal law.

#### A. Plaintiff Cannot Prove an MPLA Design Defect Claim.

As Monsanto's motion pointed out, and Plaintiff does not dispute, Plaintiff has not offered any expert witness to testify regarding any allegedly safer design for Roundup. Plaintiff's observation that Mississippi law does not impose a "categorical" or "per se" requirement of expert testimony in "every" design defect case, Opp'n at 10, 12, is unaccompanied by any citation to a single MPLA case in which a court held such testimony was not required. Nor could that generic observation do anything to establish why *this case*, involving the alleged carcinogenicity of formulated, chemical herbicides, would qualify for an exception to the rule that "expert testimony is generally necessary to prove a product was defective *at least* as to design. *McIntosh v. Nissan N. Am., Inc.*, No. 3:07CV60 DPJ–LRA, 2008 WL 4793743, at *3 (S.D. Miss. Oct. 28, 2008) (emphasis added). That is why it is "[f]atal to" the usual MPLA design defect case when the plaintiff's "expert tenders no proof of a feasible design alternative that could have, to a reasonable probability, prevented the harm." *Williams v. Bennett*, 921 So. 2d 1269, 1277 (Miss. 2006).[1] As for this case,

---

[1] Plaintiff relies on *Guy v. Crown Equipment Corp*, which observed that there is no *per se* requirement in the MPLA itself that a design defect claim be based on an expert opinion. 394 F.3d 320, 331 (5th Cir. 2004). But *Guy* expressly did not decide whether expert testimony was necessary in the case before it. *Id*. And *Guy* lacked the benefit of the Mississippi Supreme Court's later decision in *Williams v. Bennett*, which spoke approvingly of numerous decisions granting summary judgment where plaintiff experts did not provide adequate opinions regarding feasible alternative designs. 921 So. 2d at 1275–77.

Monsanto's motion pointed out and Plaintiff does not contest that Mississippi requires expert testimony "unless the matter in issue is within the common knowledge of laymen." *Denham v. Holmes ex rel. Holmes*, 60 So. 3d 773, 789 (Miss. 2011) (citation omitted). And whether between 1980 and 2018 there "existed" a feasible alternative design for Roundup that "would have to a reasonable probability prevented [Plaintiff's NHL] without impairing the utility, usefulness, practicality or desirability of [Roundup] to users or consumers" is not within common knowledge. Miss. Code. § 11-1-63(f)(ii).[2]

But even assuming counterfactually that Mississippi law would permit plaintiff to present an alternative design theory without a corresponding expert, Plaintiff's theory—that Mississippi law required Monsanto to sell Roundup without glyphosate—would fail. To start, Plaintiff puts forward no evidence that the alternative on which he relies, a "2022 glyphosate-free product," Opp'n at 9, "existed" from 1980 to 2018, when Plaintiff says he used Roundup. Miss. Code. § 11-1-63(f)(ii). Three of the four active ingredients Plaintiff says Monsanto should have employed were not in use in 1980, and two—Plaintiff admits—did not gain EPA approval until decades later. *See* Opp'n at 9 n.5. And the evidence on which Plaintiff relies undercuts the notion that the formulation Monsanto began marketing after 2022 could feasibly have been made available sooner. *See, e.g.*, Omnibus Ex. 133 at 1 (2022 patent application stating that: "Up to now, however, typical satisfactory herbicide products for such weed control are based on glyphosate or dicamba."); Omnibus Ex. 127 at 2892:15–16 ("There is many, many steps that go into getting a new formulation to market.").[3]

---

[2] Recognizing that Mississippi law is not consistent with his argument that he can present his design defect claim without corresponding expert testimony, Plaintiff says in a footnote "[o]ut of an abundance of caution" that he should be granted leave to "designate a design defect expert." Opp'n at 10 n.6. Monsanto opposes that request. This Court correctly explained in July that "it would be very unfair to the defendant to make them go back and relitigate the case again when it's the plaintiffs' fault for not anticipating a need to build a record" on their claims. Reply Ex. 1, Tr. of July 9 Hr'g at 37:12–16. Plaintiff filed his Complaint in May 2020. Expert discovery closed in this matter on December 13, 2024. MDL Doc. 18850 at 2 (Wave 8B schedule), 7 (identifying this case as a Wave 8B case). And throughout all that time, Mississippi law clearly required Plaintiff to develop evidence of a feasible alternative design if he wished to pursue his statutory design defect claim.

[3] Plaintiff has not pursued a theory that a dicamba-based herbicide is an alternative to glyphosate-based Roundup.

As to safety, and effectiveness, Plaintiff relies on testimony by a Monsanto employee—Donna Farmer—agreeing that new Roundup formulations are safe and effective when used in accordance with the EPA-approved label. *See* Opp'n at 5. Monsanto of course agrees that the new formulations it sells are safe and effective for their labeled uses. But the same is true of glyphosate-based Roundup, and Dr. Farmer did not testify otherwise. Plaintiff—who bears the burden of proof—cannot spin a narrow point of agreement into detailed proof that glyphosate-free herbicides are safer than glyphosate, equally effective, and lack drawbacks of their own, all without offering any actual *evidence* comparing these herbicides. As the Mississippi Supreme Court has explained, "the mere mention of a design alternative" does not satisfy the MPLA if the Plaintiff fails to provide a "basis of comparison" sufficiently detailed to "guide" the trier of fact in addressing the statutory MPLA inquiry into availability, causation, "utility, usefulness, practicality [and] desirability." Miss. Code. § 11-1-63(f)(ii); *Williams*, 921 So. 2d at 1275, 1277.

Nor does Mississippi law recognize Plaintiff's proposed alternative. Mississippi follows the majority rule that "[a] plaintiff cannot demonstrate the existence of a safer alternative design by pointing to a substantially different product, even when the other product has the same general purpose as the allegedly defective product." *Mealer v. 3M Co.*, No. 2013-027-CV03, 2015 WL 9692735, at *4 (Miss. Cir. Ct. Mar. 28, 2015) (citing *Brockert v. Wyeth Pharms., Inc.*, 287 S.W.3d 760, 770 (Texas Ct. App. 2009)). In doing so, Mississippi has embraced the principle that product liability does not authorize juries to perform the essentially legislative function of "eliminat[ing] whole categories of useful products from the market." *Id.* Courts that follow that rule frequently hold that products with different active ingredients are not alternatives to one another for purposes of a design defect claim. *E.g. Brockert*, 287 S.W.3d at 770 (drug consisting of estrogen not alternative combination drug of estrogen and progestin); *Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 722 (E.D. Pa. 2014) ("acetaminophen is not an alternative to ibuprofen"); *Bartlett*, 570 U.S. at 484 (because drug consisted of single active ingredient, it was "incapable of being redesigned").[4] Whether a product is an alternative design or an altogether different product does not

[4] Plaintiff briefly refers to "Roundup formulations . . . without POEA." Opp'n at 4. But Plaintiff does not meaningfully pursue this theory and does not develop any argument or evidence that

turn on what name the product is marketed under. Many different products may be marketed under a single trade name such as "Roundup," but the defining feature of a glyphosate-based herbicide remains *glyphosate*, and for product liability purposes a product without glyphosate is a different product altogether, not an alternative design.

**B. Plaintiff's MPLA Design Defect Claim Is Preempted as a Matter of Impossibility.**

Plaintiff admits that under the MPLA, the relevant duty alleged by his design defect claim is one to "market[] a safer Roundup formulation." Opp'n at 14. He also admits that under FIFRA Monsanto was prohibited from marketing Roundup with an unapproved composition, 7 U.S.C. § 136j(a)(1)(C), or changing the approved composition without obtaining a new registration. 40 C.F.R. § 152.44(a); Opp'n at 14. But he resists the application of impossibility preemption by arguing Monsanto "had a duty to pursue and market a safer design through the available regulatory process." Opp'n at 15. And he says the existence of such a pathway distinguishes the Supreme Court's decisions in *Bartlett* and *PLIVA*.

Plaintiff is incorrect. As the Supreme Court observed in *Bartlett*, there was a regulatory pathway available for the manufacturer to redesign its drug: it could have "change[d] the composition of its" drug if it first obtained an approved "NDA to be marketed in interstate commerce." 570 U.S. at 484. The rule is not that it must be literally impossible for a manufacturer to obtain such approval, but instead that "[i]f a private party . . . cannot comply with state law without first obtaining the approval of a federal regulatory agency, then the application of that law to that private party is preempted." *Gustavsen v. Alcon Lab'ys, Inc.*, 903 F.3d 1, 9 (1st Cir. 2018). That is why copious authority recognizes that a state-law duty to change a drug's design or labeling is preempted if the change would require prior FDA approval—whether the drug generic, brand-name, or over-the-counter. *Id.*; *see also, e.g., Yates v. Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 298 (6th Cir. 2015); *Trejo v. Johnson & Johnson*, 13 Cal. App. 5th 110, 154 (2017); *Ignacuinos v.*

---

Roundup "without POEA" "would have to a reasonable probability prevented" Plaintiff's NHL as the MPLA requires. Miss. Code. § 11-1-63(f)(ii). Indeed, he nowhere claims that Roundup without POEA is not carcinogenic, which would conflict with the theory the plaintiff bar has advanced in this litigation—that glyphosate is carcinogenic.

*Boehringer Ingelheim Pharms., Inc.*, 8 F.4th 98, 101–05 (2d Cir. 2021); *cf. Wyeth v. Levine*, 555 U.S. 555, 573 (2009) (no preemption where manufacturer could *unilaterally* strengthen label warnings under applicable FDA regulation).

Plaintiff's view of 40 C.F.R. § 152.44(a) as little more than a pathway to amend a pesticide's composition, and the Missouri trial court order it relied on, is also inconsistent with *Durnell*. *See Shull v. Monsanto Co.*, No. 25BA-CV4355, 2026 WL 2742795, at *2 (Mo. Cir. Ct. of Boone Cnty., Aug. 31, 2026). *Durnell* carefully analyzed 40 C.F.R. § 152.44(a), which applies without distinction to both pesticide "labeling" *and* "composition" and held that the regulation not only "require[s] a manufacturer to use the EPA-approved label" but also "prohibit[s] the manufacturer from unilaterally changing the label." *Id.* at 391. That interpretation of the regulation formed a crucial part of the Supreme Court's reasoning that a claim alleging Monsanto should have changed Roundup's label was inconsistent with federal law. *See id.* at 385 (federal duty to "sell Roundup with the label that EPA approved" "different from" duty to "add a cancer warning"). So 40 C.F.R. § 152.44(a) equally imposes a federal duty to "sell Roundup with the composition that EPA approved." And the "only action [Monsanto] could independently take"—asking EPA's permission to alter Roundup—"is not a matter of state-law concern." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 624 (2011).

Plaintiff's last line of defense—a short argument that "Monsanto's impossibility argument presents fact questions"—is just incorrect. Opp'n at 15. "When the ordinary meaning of federal law blocks a private party from independently accomplishing what state law requires, that party has established pre-emption." *PLIVA*, 564 U.S. at 623.

## II. Plaintiff Comes Forward with No Evidence to Substantiate His Express Warranty Claim.

Plaintiff's opposition does not dispute that to prove his express warranty claim, Mississippi law requires him to show an affirmative representation of fact by Monsanto on which he "justifiably relied in electing to use the product." Miss. Code. § 11-1-63(a)(i)(4); Opp'n at 18. The opposition admits that Plaintiff saw no Roundup advertising and concedes this is "relevant" to reliance. Opp'n at 19. And the opposition fails to mention—and therefore fails to dispute—Monsanto's argument

that Plaintiff "elect[ed] to use" Roundup because his grandfather had used Roundup and it worked, as well as Monsanto's argument that Plaintiff lacks evidence Monsanto made any express representation about Roundup *to him*. Mot. at 13 Those evidentiary failures require summary judgment for Monsanto on this claim.

Plaintiff's undeveloped references to "marketplace representations" do not alter that outcome. Opp'n at 19. Plaintiff does not identify what representations specifically he believes qualified as warranties under the statute. But even setting that failing aside, both the MPLA's requirement of reliance, Miss. Code. § 11-1-63(a)(i)(4), and its more general requirement of proximate causation, *id.* § 11-1-63(a)(iii), require Plaintiff to link the relevant representation to his own, personal use of Roundup. Without showing that he saw and relied on a particular Monsanto representation, Plaintiff does not satisfy that element of his express warranty claim. *See, e.g.*, *McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 848 (S.D. Miss. 2010) (summary judgment warranted on MPLA express warranty claim because plaintiff had "not presented any evidence that [manufacturer] made an express representation *to him*").

### III. Plaintiff Concedes His Failure-To-Warn Claim and Admits the MPLA Abrogates His Negligence and Implied Warranty Claims.

Plaintiff offers no argument that his MPLA failure-to-warn claim may proceed following *Durnell* and thus concedes this claim.[5] Consistent with Mississippi law, Plaintiff also agrees that "the MPLA is the exclusive remedy for product-liability claims" and "governs his claims for "negligence[] or breach of implied warranty." Opp'n at 15. But he resists summary judgment on the theory that although they are not claims recognized by the statute, the MPLA nevertheless "channels negligence and implied-warranty" allegations and evidence into his remaining statutory theories—namely, design defect and express warranty. Opp'n at 18. But the statute explicitly

[5] Plaintiffs' leadership has argued that individual plaintiffs may be able to maintain failure-to-warn claims premised on Monsanto's advertising of Roundup. Plaintiff has not raised that argument here—and for good reason. Plaintiff's own testimony was that he did not see any Roundup advertising, which his opposition admits. Opp'n at 19. And under the MPLA, the relevant state law duty concerns whether a product "failed to *contain* adequate warnings"—not a manufacturer's advertising. Miss. Code § 11-1-63(a)(i)(2). Such a claim is also preempted, as more fully set forth in Monsanto's briefing in those cases where plaintiffs have advanced a warn-by-advertisement theory.

overrides "any action based on a theory of . . . negligence of implied warranty." Miss. Code § 11-1-63. Summary judgment on these claims is therefore required.

**CONCLUSION**

Summary judgment should be granted in full to Monsanto.

DATED: October 23, 2026

By: */s/ Anthony R. Martinez*

Anthony R. Martinez
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
amartinez@shb.com

*Attorney for Defendant*
*MONSANTO COMPANY*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 23, 2026, the foregoing document was filed and served on all counsel of record via the Court's CM/ECF system.

*/s/ Anthony R. Martinez*
*Anthony R. Martinez*