**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

*Attorneys for Defendant Monsanto Company*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 Fax: 310-576-2200

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Howell v. Monsanto Co., Case No. 3:20-cv-07322-VC*<br><br>*Reid v. Monsanto Co., Case No. 3:22-cv-04080-VC* | **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing:**<br>Date: November 16, 2026<br>Time: 1:00 PM<br>Place: San Francisco Courthouse, Courtroom 3 |

## TABLE OF CONTENTS

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. Plaintiffs' Design Defect Claims Fail on the Evidence and Are Preempted. ..... 2

A. Plaintiffs Were Required to Prove a Feasible Alternative Design. ..... 2

B. Plaintiffs Lack Competent Evidence of a Feasible Alternative Design. ..... 4

C. *Durnell* Confirms that FIFRA Impliedly Preempts Any Claim that Would Require Monsanto to Reformulate Roundup. ..... 6

II. Plaintiffs Lack Evidence to Substantiate Any Other Claim Under North Carolina Law. ..... 7

A. Plaintiff Howell Has Identified No Evidence Supporting His Fraud/Misrepresentation Claim. ..... 8

B. Plaintiff Reid Has Identified No Evidence Supporting His Express Warranty Claim. ..... 9

C. Plaintiffs Cannot Substantiate Any Breach of Implied Warranty Because They Used Roundup for Its Ordinary Purpose, and It Was Effective. ..... 9

D. Plaintiffs' References to Additional Negligence Theories Are Unavailing. ..... 10

III. Plaintiffs Cannot Sustain Failure-To-Warn Claims Following *Durnell*. ..... 10

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asby v. Medtronic*,
673 F. Supp. 3d 787 (E.D.N.C. 2023) ... 3

*Bluitt v. Wake Forest Univ. Baptist Med. Ctr.*,
814 S.E.2d 477 (N.C. App. 2018) ... 4

*Branham v. Ford Motor Co.*,
701 S.E.2d 5 (S.C. 2010) ... 10

*Brockert v. Wyeth Pharms., Inc.*,
287 S.W.3d 760 (Tex. Ct. App. 2009) ... 5, 6

*Brown v. Johnson & Johnson*,
64 F. Supp. 3d 717 (E.D. Pa. 2014) ... 6

*Carlson v. Bos. Sci. Corp.*,
856 F.3d 320 (4th Cir. 2017) ... 11

*Carmen v. San Francisco Unified Sch. Dist.*,
237 F.3d 1026 (9th Cir. 2001) ... 9

*Caterpillar, Inc. v. Shears*,
911 S.W.2d 379 (Tex. 1995) ... 6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ... 8

*DeWitt v. Eveready Battery Co.*,
550 S.E.2d 511 (N.C. App. 2001) ... 3, 11

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000) ... 7

*Gustavsen v. Alcon Lab'ys, Inc.*,
903 F.3d 1 (1st Cir. 2018) ... 7

*Jones v. Amazing Prods., Inc.*,
231 F. Supp. 2d 1228 (N.D. Ga. 2002) ... 3

*Mutual Pharm. Co., Inc. v. Bartlett*,
570 U.S. 472 (2013) ... 6

*Pa. Nat'l Mut. Cas. Ins. Co. v. STIHL Inc.*,
No. 7:23-CV-00018-M, 2023 WL 5029142 (E.D.N.C. Aug. 7, 2023) ... 4

*Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*,
530 S.E.2d 321 (N.C. App. 2000) ........ 5

*Walls v. Ford Motor Co.*,
No. 1:20-CV-98, 2022 WL 588901 (M.D.N.C. Feb. 25, 2022) ........ 4

**Statutes**

7 U.S.C. § 136v ........ 7

N.C. Gen. Stat. 99B-5 ........ 11

N.C. Gen. Stat. § 99B-1.1 ........ 3, 5

N.C. Gen. Stat. § 99B-6 ........ *passim*

**Other Authorities**

40 C.F.R. § 152.44(a) ........ 6

## INTRODUCTION

Plaintiffs' oppositions are built around a single false premise: that they have a record to support any theory of liability other than preempted failure-to-warn claims under North Carolina law. They do not. Except in rare cases of exceptional danger, a plaintiff alleging a design defect claim under North Carolina law must prove that the manufacturer "unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design" that would have averted their injuries. N.C. Gen. Stat. § 99B-6(a)(1). When an issue is technically complex or outside the comprehension of lay jurors, North Carolina requires proof by expert testimony—a principle of law Plaintiffs do not dispute. Because Plaintiffs have neither lay nor expert evidence of an alternative design for Roundup that satisfies the numerous requirements of North Carolina law, they are forced to make the implausible argument that a widely used, government-approved herbicide is so manifestly unreasonable that no person would use it. The Court rejected a less extreme design defect theory in *Hardeman* and Plaintiffs make no effort to show they have any proof Mr. Hardeman lacked. Plaintiffs' argument that a lay jury can assess the utility, safety, feasibility, and comparative qualities of different chemical herbicidal designs without expert evidence does not pass the test of common sense. And the lay evidence Plaintiffs provide does not make the detailed showing North Carolina law requires.

All that aside, a state-law claim alleging that Monsanto is liable because it "unreasonably failed to adopt a" different "formulation" for Roundup is preempted as a matter of impossibility. In light of *Durnell*'s detailed analysis of FIFRA's regulatory scheme, Plaintiffs do not deny that Monsanto was unable to reformulate Roundup without EPA's prior approval. And given the express recognition by North Carolina's legislature that the design defect duty is a duty to use a different formulation, Plaintiffs' appeals to state authority to "ban" pesticides are beside the point. North Carolina does not remove products from the market through its product liability law; it instead holds manufacturers liable for failing to adopt safer alternative designs. In this way, design defect liability under North Carolina law would require Monsanto to do what federal law prohibited: selling an unapproved formulation of Roundup.

With regard to their other state law claims, neither Plaintiff Howell nor Plaintiff Reid has come forward with any evidence that they personally saw any alleged false statement by Monsanto. So their fraud/misrepresentation and express warranty claims fail. Plaintiffs do not dispute that their implied warranty claims merely restate their design defect claims. And under North Carolina law, Plaintiffs' negligence theories in this case are limited to design defect and failure-to-warn.

Last, Plaintiffs' references to so-called "non-label," advertising-based warning theories are meritless. That is why Plaintiff Howell *conceded* his failure-to-claim during the meet-and-confer process. Although such claims fail in every case because they are preempted, the record offers a simple additional reason: neither Plaintiff Howell nor Plaintiff Reid ever saw Monsanto advertising. Nor do Plaintiffs offer any reason to believe North Carolina law recognizes a duty to warn-by-advertisement.

## ARGUMENT

### I. Plaintiffs' Design Defect Claims Fail on the Evidence and Are Preempted.

North Carolina's legislature has decided that a manufacturer shall be liable for a design defect if a plaintiff shows the manufacturer "unreasonably failed to adopt" an alternative design for its product. Except under circumstances plainly inapplicable here, the plaintiff must show the alternative was "safer, practical, feasible, and otherwise reasonable," that at the time of sale it "could then have been reasonably adopted," and that it "would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product." N.C. Gen. Stat. § 99B-6(a)(1). Plaintiffs' oppositions fail to make a submissible case on that theory. And the duty that theory would impose—reformulate Roundup—conflicts with federal law.

#### A. Plaintiffs Were Required to Prove a Feasible Alternative Design.

Lacking competent evidence of an alternative design for Roundup, Plaintiffs deny the necessity of such evidence and zero in on N.C. Gen. Stat. § 99B-6(a)(2), which allows a Plaintiff to bypass the requirement of an alternative design by instead showing that "the design or formulation of the product was *so unreasonable* that" no one would use it. *Id.* (emphasis added). Despite invoking that demanding exception—available only in "very rare instances," Restatement (Third) of

Torts: Prod. Liab. § 2 reporter's note to cmt. d (1998)—Plaintiffs make no effort to prove it. As Monsanto's summary judgment motion pointed out, this Court concluded that there was insufficient evidence to proceed on a similar (and if anything less challenging) theory in its posttrial rulings in *Hardeman*. *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741, 2019 WL 3219360, at *3 (N.D. Cal. July 12, 2019). Plaintiffs fail to identify any evidence that they will present that Mr. Hardeman did not. *See* Howell Opp'n at 19; Reid Opp'n at 19. They instead conflate § 99B-6(a)(2)—a rigorous statutory exemption—with the ordinary consumer expectations test. *See* Howell Opp'n at 19 (arguing this exception is satisfied because "most consumers do not expect household products to cause cancer"); Reid Opp'n at 18 (arguing this exception means that "North Carolina law recognizes a *consumer expectations* test").

The Court should reject that gambit. Plaintiffs' theory that § 99B-6(a)(2) amounts to a consumer expectations test would contravene North Carolina's rejection of strict liability. N.C. Gen. Stat. § 99B-1.1 ("There shall be no strict liability in tort in product liability actions."). It cannot be reconciled with the statute's use of the emphatic term "*so unreasonable*." *Id.* § 99B-6(a)(2) (emphasis added). And it would certainly come as a surprise to North Carolina courts and litigants, which often presume the necessity of evidence of a feasible alternative design even where a consumer would not expect the alleged design defect. *E.g.*, *DeWitt v. Eveready Battery Co.*, 550 S.E.2d 511, 513–14, 519 (N.C. App. 2001) (summary judgment properly granted on design defect claim although plaintiff testified he "did not know" new battery could leak burning acid); *Asby v. Medtronic*, 673 F. Supp. 3d 787, 793 (E.D.N.C. 2023) (dismissing design defect claim where complaint failed to plausibly allege safer, feasible alternative design). Section 99B-6(a)(2) tracks the practice of other jurisdictions that recognize an alternative design requirement in design defect cases while permitting only a demanding exception for rare cases involving manifestly unreasonable designs. *See, e.g.*, Restatement (Third) of Torts: Products Liability (1998) § 2 & cmt. d (generally imposing design defect liability only when "omission of [an] alternative design renders the product not reasonably safe" but recognizing possibility of exception for product with "egregiously unacceptable quality[ies]" and "negligible social utility" rendering it "manifestly unreasonable" in design). That test is not met by widely used, federally approved products. *See, e.g*, *Jones v. Amazing*

*Prods., Inc.*, 231 F. Supp. 2d 1228, 1251 (N.D. Ga. 2002) (applying Georgia law and concluding that given "the finding of a national safety regulatory agency that a given product is not too hazardous for public use . . . the product would not trigger the 'extreme case'" exception to alternative design requirement).[1]

**B. Plaintiffs Lack Competent Evidence of a Feasible Alternative Design.**

Because they have no design defect expert, Plaintiffs say they do not need one. But North Carolina requires expert testimony when issues are "outside of common knowledge, experience, and sense of a layperson." *Bluitt v. Wake Forest Univ. Baptist Med. Ctr.*, 814 S.E.2d 477, 481 (N.C. App. 2018). Plaintiffs instead assert that this case involves no "complexity requiring expert testimony." Reid Opp'n at 20; Howell Opp'n at 20.

Plaintiffs' threadbare discussion of their putative alternative design evidence fails to satisfy their summary judgment burden in light of North Carolina's detailed requirements for alternative designs. In passing, Plaintiffs suggest that a jury could hold Monsanto liable because "by 1998" it sold glyphosate formulations "without the presence of POEA surfactant." Howell Opp'n at 21; *see* Reid Opp'n at 21. But a jury would obviously need expert assistance to decide whether an alleged failure to formulate Roundup with some other surfactant would have avoided Plaintiffs' cancers. And as Monsanto pointed out—to no dispute—Plaintiffs have no expert who will so testify. Plaintiffs' undeveloped references to "non-glyphosate" Roundup marketed "since 2023" invite yet further complexities calling for expert testimony. Howell Opp'n at 21; Reid Opp'n at 21–22. Plaintiff Howell says he began using Roundup in 2001 and was diagnosed with NHL in 2009.

[1] The two unpublished diversity cases that Plaintiffs' cite are inapposite. In the first, the court found on limited analysis that it could not dismiss a claim of manifestly unreasonable design at the pleading stage for a hedge trimmer that allegedly burst into flames during normal use. *Pa. Nat'l Mut. Cas. Ins. Co. v. STIHL Inc.*, No. 7:23-CV-00018-M, 2023 WL 5029142, at *5 (E.D.N.C. Aug. 7, 2023). The second case involved asbestos, and only passing analysis of § 99B-6(a)(2) in an opinion evaluating numerous complex motions in a multi-party case. *Walls v. Ford Motor Co.*, 2022 WL 588901, at *13 (M.D.N.C. Feb. 25, 2022). *Walls* was also inconsistent with the North Carolina Products Liability Act because it incorrectly and inexplicably equated a showing that a "manufacturer acted unreasonably" under § 99B-6(a) with a showing that a product's design is "so unreasonable" under § 99B-6(a)(2), notwithstanding the statute's clear instruction that a showing under §§ 99B-6(a)(1) or 99B-6(a)(2) is in addition to an initial showing of general unreasonableness.

Howell Opp'n at 6. Plaintiff Reid says he began using Roundup in 1976 and was diagnosed with NHL in 2016. Reid Opp'n at 6. Plaintiffs' make no effort to show that it was "practical" and "feasible," "[a]t the time" they purchased Roundup, N.C. Gen. Stat. § 99B-6(a)(2), to market their proposed alternative. On the contrary, Plaintiffs' own evidence reports that "[u]p to [2022] . . . typical satisfactory herbicide products for such weed control [were] based on glyphosate or dicamba." Omnibus Ex. 133 at 1. And there are "many, many steps that go into getting a new [pesticide] formulation to market." Omnibus Ex. 127 at 2892:15–16. At the time Plaintiff Reid testified he began using Roundup, only one of the four active ingredients in the formulation Plaintiffs identify was even registered. *See* Omnibus SOMF ¶ 126. Yet Plaintiffs would have a jury assume that Monsanto could have marketed that formulation decades sooner than it did without any specialized assistance (and indeed without lay evidence either) that such an undertaking was economical and within the state of the art. *See* N.C. Gen. Stat. § 99B-6(a)(1) (Plaintiffs' bear burden of proving that, at time of sale, "alternative" "could then have been reasonably adopted"). Plaintiffs all but ignore the problem of specific causation, which undeniably requires expert testimony. They offer no expert to opine that had they instead used the 2023 formulation, their cancers would have been prevented. Nor do they make any attempt to directly compare glyphosate-based herbicides and their proposed alternative, apart from observing that "glyphosate-free" formulations "do not contain the" alleged "carcinogen"—glyphosate.[2] Howell Opp'n at 22; Reid Opp'n at 22.

Plaintiffs' reliance on "glyphosate-free" formulations creates yet another problem for their case: herbicides containing different active ingredients do not qualify as alternative designs, but rather different products. *See* Omnibus Ex. 127 at 2804:18–21 (Dr. Farmer testifying that "there is no alternative glyphosate," which, unlike other active ingredients "acts on all plants."). That remains true "even when the other product" containing a different active ingredient "has the same general purpose." *Brockert v. Wyeth Pharms., Inc.*, 287 S.W.3d 760, 770 (Tex. Ct. App. 2009). Indeed,

---

[2] Plaintiffs' citations to cases observing that evidence of a product malfunction during ordinary use may in some circumstances establish a manufacturing defect does not help them. *E.g. Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 530 S.E.2d 321, 328 (N.C. App. 2000). Under North Carolina law, a plaintiff must separately come forward with direct evidence of the unreasonableness of the manufacturer's conduct designing a product because North Carolina rejects strict liability based on a product defect alone. *See id.*; *see also* N.C. Gen. Stat. § 99B-1.1.

courts regularly hold that different active ingredients are not alternatives as a matter of law. *E.g. Brockert*, 287 S.W.3d at 770 (estrogen alone not alternative to combination of estrogen and progestin); *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 484 (2013) (drug consisting of single active ingredient incapable of redesign); *Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 722 (E.D. Pa. 2014) ("acetaminophen is not an alternative to ibuprofen") (citation omitted)). And whether a product is an alternative design or an altogether different product does not depend on the name under which it is marketed. Many different products may be marketed under a single trade name such as "Roundup," but the defining feature of a glyphosate-based herbicide remains *glyphosate*. For product liability purposes, a product without glyphosate is a different product altogether, not an alternative design.

The structure of the North Carolina Products Liability Act reinforces the distinction between alternative designs and altogether different products, which exists to ensure that product liability law does not authorize juries to perform the essentially legislative function of "eliminat[ing] whole categories of useful products from the market." *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 385 (Tex. 1995). That is why North Carolina law reserves design defect liability in the absence of an alternative design for extraordinary cases, unlike this one, involving manifestly unreasonable products. *See* N.C. Gen. Stat. § 99B-6(a)(2). Plaintiffs cannot skirt that framework by pointing to altogether different herbicides rather than identifying an alternative design for the herbicide they used.

### C. *Durnell* Confirms that FIFRA Impliedly Preempts Any Claim that Would Require Monsanto to Reformulate Roundup.

In their short oppositions to Monsanto's implied preemption arguments, Plaintiffs conflate express preemption with impossibility preemption and recycle flawed arguments from leadership's omnibus opposition.

Plaintiffs' assertion that *Durnell* "has nothing to do with implied preemption," Howell Opp'n at 16; Reid Opp'n at 15, overlooks *Durnell*'s actual reasoning. *Durnell* observed that "FIFRA prohibits selling a pesticide if its 'composition' differs from the composition" EPA approved. 609 U.S. at 378 n.1. *Durnell* also carefully analyzed 40 C.F.R. § 152.44(a), which it found to both

"require a manufacturer to use the EPA-approved label and prohibit the manufacturer from unilaterally changing the label without EPA's approval." *Id.* at 391 (emphasis omitted). That regulation governs both pesticide "labeling" and "composition," so *Durnell* also establishes that Monsanto was required to sell Roundup with the composition EPA approved and prohibited from changing that composition unilaterally. Far from having "nothing to do" with impossibility preemption, *Durnell* shows that holding Monsanto liable for "fail[ing] to adopt" an "alternative design or formulation" for Roundup, N.C. Gen. Stat. § 99B-6(a)(1), would run headlong into the basic rule of impossibility preemption: when "a private party . . . cannot comply with state law without first obtaining the approval of a federal regulatory agency, then the application of that law to that private party is preempted." *Gustavsen v. Alcon Lab'ys, Inc.*, 903 F.3d 1, 9 (1st Cir. 2018).

Plaintiffs' references to *Bates*, which held that the fraud and failure-to-warn claims in that case were "requirements for labeling or packaging" subject to express preemption under FIFRA, 7 U.S.C. § 136v(b), and their overly narrow argument that FIFRA's express preemption provision is limited to "label-based failure to warn claims," Howell Opp'n at 16; Reid Opp'n at 16, shed no light on Monsanto's independent impossibility preemption argument. As the Supreme Court has explained, the presence of an "express pre-emption provision[] does not bar the ordinary working of conflict preemption principles." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000).

Plaintiffs' various attempts to invoke 7 U.S.C. § 136v(a) add nothing to what leadership has argued. That provision does not permit a state to require Monsanto to do what federal law prohibits. But that is what Plaintiffs' design defect claims would do.

## II. Plaintiffs Lack Evidence to Substantiate Any Other Claim Under North Carolina Law.

Plaintiffs' oppositions confirm that they cannot substantiate any other claim. Plaintiff Howell makes no effort to identify any evidence that he personally saw and relied on any false representation by Monsanto, as necessary to substantiate his "Fraud/Misrepresentation" claim. And Plaintiff Reid points to no evidence of any specific express warranty by Monsanto. As for their implied warranty claims, Plaintiffs concede they depend on a showing of design defect and so fail alongside their design defect claims.

### A. Plaintiff Howell Has Identified No Evidence Supporting His Fraud/Misrepresentation Claim.

Monsanto's summary judgment motion explained—without dispute from Plaintiff Howell—that North Carolina law requires Plaintiff Howell to prove he relied on a "false representation . . . of a material fact" or "false information" supplied to him by Monsanto to maintain his fraud/misrepresentation claim. Mot. at 15–16. And it "point[ed] out" the "absence of evidence" that Plaintiff Howell had seen or relied on any false statement by Monsanto, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), including specifically the lack of evidence that Plaintiff Howell ever saw any Monsanto advertising, Mot. at 16.

Plaintiff Howell's opposition flips the federal summary judgment standard on its head and fails to establish any genuine dispute of material fact. Plaintiff Howell appears to base his fraud/misrepresentation claim on allegedly deceptive Roundup advertising. *See* Howell Opp'n at 23–24. But, as Plaintiff Howell acknowledges, "there is no evidence that Howell ever saw any [Roundup] advertising;" he responds only that "there is no evidence that he did not" see advertising. Howell Opp'n at 24. Monsanto is under no burden to disprove the elements of Plaintiff Howell's claims. *Celotex*, 477 U.S. at 323. Because Plaintiff Howell bears the burden of proof at trial, once Monsanto pointed out the absence of evidence on an element of his claims, he was required to come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 324. He has not. Plaintiff Howell only says that he has deposition testimony stating "that he had been led to believe that Roundup was safe for humans." Howell Opp'n at 24. But that is neither an accurate representation of the cited testimony, nor a sufficient basis to sustain his claim.[3] Although counsel several times asked Plaintiff Howell if he was "led to believe that Roundup was safe," without specifying by what or whom, Plaintiff Howell never answered that question. Howell Opp'n Ex. 1 at 49:14–17; 53:17–22. He instead testified that he believed Roundup was safe because Monsanto sold it and nobody warned him otherwise. Howell Opp'n Ex. 1 at 60:6–19. Because Plaintiff Howell

[3] Although Plaintiff Howell cites no evidence in the argument portion of his opposition, the background cites to several snippets of deposition testimony for the same proposition. Howell Opp'n at 7. Monsanto addresses that cited testimony.

presented no evidence he encountered any false representation by Monsanto (much less any representation at all), his misrepresentation claim fails.

### B. Plaintiff Reid Has Identified No Evidence Supporting His Express Warranty Claim.

As Monsanto's summary judgment motion explained, North Carolina law requires Plaintiff Reid to come forward with evidence of a false "affirmation of fact or promise" by Monsanto that he relied on in purchasing Roundup in order to sustain an express warranty claim. Mot. at 16. Monsanto's motion both cited record evidence demonstrating Plaintiff Reid had neither seen nor relied on any such misrepresentation—including because Plaintiff Reid testified affirmatively that he never saw any Roundup advertising—and noted the absence of evidence to support Plaintiff Reid's express warranty claim.

In response, Plaintiff Reid cites no specific evidence showing he saw and relied on any particular representation by Monsanto. He simply asserts such evidence exists and purports to "incorporate[] all record evidence in his case." Reid Opp'n at 24 n.29. That response does not meet Plaintiff Reid's burden, which is not to avert generally to the record but to identify "specific facts" creating a dispute of material fact and to "set [them] out in the opposition papers." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030–31 (9th Cir. 2001). Because Plaintiff Reid failed to create any dispute of material fact that he saw and relied on false, affirmative misrepresentations by Monsanto, summary judgment should be granted to Monsanto on Plaintiff Reid's express warranty claim.

### C. Plaintiffs Cannot Substantiate Any Breach of Implied Warranty Because They Used Roundup for Its Ordinary Purpose, and It Was Effective.

Plaintiffs' nearly identical oppositions largely ignore Monsanto's implied warranty arguments. Neither Plaintiff Reid nor Plaintiff Howell responds to Monsanto's argument that they cannot invoke any implied warranty of particular use, but each plaintiff effectively concedes this claim by arguing they "used Roundup for its ordinary purpose." Howell Opp'n at 25; Reid Opp'n at 25. Nor does either Plaintiff contend that Roundup did not work or had a manufacturing defect, as Monsanto argued would be necessary to state an implied warranty claim independent of their

product liability theories. *See* Howell Opp'n at 24 ("Plaintiff is not suing Monsanto because Roundup did not work as a weed killer"); Reid Opp'n at 25 (same). Instead—conceding Monsanto's argument that, under North Carolina law, Monsanto may be held liable for Roundup's formulation only if they prove a failure-to-warn or design defect—each Plaintiff says Monsanto breached an implied warranty of merchantability *because* "Plaintiff has made a valid claim for design defect." Howell Opp'n at 25; Reid Opp'n at 25. For the reasons set forth above, and in Monsanto's motion, Plaintiffs cannot maintain a design defect claim, and their implied warranty claims therefore also fail.

**D. Plaintiffs' References to Additional Negligence Theories Are Unavailing.**

With limited argument, Plaintiffs say they have non-preempted claims based on Monsanto's alleged negligence in "failing to adequately test" Roundup and "manufacturing . . . an unreasonably dangerous product." Reid Opp'n at 14; Howell Opp'n at 14. But North Carolina law has codified the negligence claims in product liability cases and provides that "[n]o manufacturer . . . shall be held liable" based on "inadequate warning" or "inadequate design or formulation" except as set forth in the North Carolina Products Liability Act. N.C. Gen. Stat. §§ 99-B5, 99-B6. Whatever relevance allegations regarding testing may or may not have to proving such a claim, they do not allow Plaintiffs to circumvent the statutory framework. As South Carolina's highest court has aptly explained, "if a product is not in a defective condition unreasonably dangerous to the user, an alleged failure to test cannot be the proximate cause of an injury," which is why such a theory ultimately would hold Monsanto liable "based on" either failure to warn, design defect, or manufacturing defect. *Branham v. Ford Motor Co.*, 701 S.E.2d 5, 9 (S.C. 2010). Plaintiffs have made no effort to show that a manufacturing defect was the cause of their injuries, which would contradict their theory that Roundup's active ingredient—glyphosate—caused their illnesses. So their negligence theory necessarily depends on a showing of failure-to-warn or design defect that is both preempted and unsupported by the evidence.

**III. Plaintiffs Cannot Sustain Failure-To-Warn Claims Following *Durnell*.**

Plaintiffs concede that their "label-based" failure-to-warn claims are expressly preempted under *Durnell*. Their passing references to so-called "non-label" warning theories based on

"advertising" have no foundation in the record, no foundation in North Carolina law, and in all events are preempted. Howell Opp'n at 15 n.13; Reid Opp'n at 14 n.16. To start, Plaintiff Howell conceded his failure-to-warn claim during the meet-and-confer process this Court directed, and he cannot back out of that concession now. Reply Ex. 1, Howell Meet and Confer Response E-Mail. That concession aside, neither Plaintiffs Howell nor Reid has evidence that could support such a claim: as Monsanto's motion pointed out to no dispute, there is no evidence Plaintiff Howell ever saw Monsanto advertising, and Plaintiff Reid testified that he *never saw* any Roundup advertising. Plaintiffs cannot show that Monsanto's alleged failure to warn in advertisements they never saw "was a proximate cause of" their cancers, as North Carolina law requires in any failure-to-warn claim. N.C. Gen. Stat. 99B-5(a); *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 324 (4th Cir. 2017) (affirming summary judgment where plaintiff provided no evidence they had seen allegedly inadequate warning).

Even looking past that factual problem, Plaintiffs cite no case in which a North Carolina court has recognized a warn-by-advertisement duty. Nor do Plaintiffs offer any reason for this Court sitting in diversity to infer such a novel duty under North Carolina law. When a plaintiff alleges that a manufacturer sold a dangerous product and knew or should have known of the danger, North Carolina law inquires into whether "the product, without an adequate warning or instruction, created an unreasonably dangerous condition." N.C. Gen. Stat. 99B-5(a)(1). That focus on the condition of the product is why the law imposes a duty on the manufacturer "to give directions or warning, on the container" in the ordinary case. Restatement (Second) of Torts (1965) § 402A cmt. j. If a manufacturer warned only through advertising, the warning may reach only a random subset of potential users—as the record in this case shows. Such a warning would thus be "inadequate" to discharge the manufacturer's duty to warn. *E.g.*, *Dewitt*, 550 S.E.2d at 517 (plaintiff argued warning was insufficiently "prominent" and "conspicuous").[4]

---

[4] Under limited circumstances North Carolina recognizes a post-sale duty to warn when a manufacturer is unaware of a product's danger at the time of sale but later becomes aware of that danger. N.C. Gen. Stat. § 99B-5(a)(2). Plaintiffs have neither pled nor invoked that theory. *See* Howell Compl. ¶ 179 (alleging that "[a]t the time of manufacture, Defendant could have provided the warnings or instructions regarding the full and complete risks of Roundup and glyphosate-

Setting aside the failures of this theory on the evidence and under state law, Plaintiffs develop no specific argument why a warn-by-advertisement duty would not be preempted, as Monsanto has set out more fully it the omnibus briefing.

**CONCLUSION**

Summary judgment should be granted in full to Monsanto.

---

containing products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products"); Reid Compl. ¶ 167 (same).

DATED: October 23, 2026

By: */s/ Anthony R. Martinez*
Anthony R. Martinez
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
amartinez@shb.com

*Attorney for Defendant*
*MONSANTO COMPANY*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 23, 2026, the foregoing document was filed and served on all counsel of record via the Court's CM/ECF system.

*/s/ Anthony R. Martinez*
*Anthony R. Martinez*