**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Abel v. Monsanto Co.*<br>3:21-cv-7124-VC | **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**<br><br>**<u>Hearing:</u>**<br>Date: November 16, 2026<br>Time: 1:00 PM<br>Place: San Francisco Courthouse, Courtroom 3 |

**TABLE OF CONTENTS**


INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Plaintiff's Design Defect Claim Fails. ........ 2

A. Plaintiff Lacks Evidence to Prove an OPLA Design Defect Claim. ........ 3

B. Plaintiff's OPLA Design Defect Claim Is Preempted as a Matter of Impossibility. ........ 6

II. Plaintiff Cannot Bring A Failure-To-Warn Claim Following *Durnell*. ........ 7

III. Ohio Law Bars Plaintiff's Claims for Negligence, Implied Warranty, and Violations of Ohio's Consumer Sales Practices Act. ........ 8

CONCLUSION ........ 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*, No. 22 C 00232, 2025 WL 1282749 (N.D. Ill. May 2, 2025) ....................5

*Adkins v. Yamaha Motor Corp., U.S.A.*, 17 N.E.3d 654 (Ohio App. 2014)....................3

*Bouher v. Aramark Servs., Inc.*, 910 N.E.2d 40 (Ohio Ct. App. 2009)....................7

*Brockert v. Wyeth Pharms., Inc.*, 287 S.W.3d 760 (Tex. Ct. App. 2009)....................5

*Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717 (E.D. Pa. 2014)....................6

*Carrel v. Allied Products Corp.*, 677 N.E.2d 795 (Ohio 1997)....................9

*Caterpillar, Inc. v. Shears*, 911 S.W.2d 379 (Tex. 1995)....................5

*Freas v. Prater Constr. Corp.*, 573 N.E.2d 27 (Ohio 1991)....................7

*Gustavsen v. Alcon Lab'ys, Inc.*, 903 F.3d 1 (1st Cir. 2018)....................2

*Holyfield v. Chevron U.S.A., Inc.*, 533 F. Supp. 3d 726 (E.D. Mo.)....................6, 7

*Huffman v. Electrolux Home Prods., Inc.*, 129 F. Supp. 3d 529 (N.D. Ohio 2015)....................3

*Linert v. Foutz*, 75 N.E.3d 1218 (Ohio 2016)....................8

*McConnell v. Cosco, Inc.*, 238 F. Supp. 2d 970 (S.D. Ohio 2003) ....................7

*McConnell v. KLS Martin LP*, 560 F. Supp. 3d 1084 (N.D. Ohio 2021)....................8, 9

*Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472 (2013)....................5

*In re Nat'l Prescription Opiate Litig.*,
265 N.E.3d 1 (Ohio 2024)....9

*White v. Depuy, Inc.*,
718 N.E.2d 450 (Ohio Ct. App. 1998)....8

*Wyeth v. Levine*,
555 U.S. 555 (2009)....6

**Statutes**

7 U.S.C. 136a....6

7 U.S.C. § 136v....8

21 U.S.C. § 355....6

Ohio Rev. Code § 1345.12....9

Ohio Rev. Code § 2307.71....9

Ohio Rev. Code § 2307.73....4

Ohio Rev. Code § 2307.75....1, 2, 3, 4

**INTRODUCTION**

Although Plaintiff Augustus Abel pled five Ohio law claims against Monsanto, the Ohio Products Liability Act (OPLA) is his exclusive remedy and recognizes only two of his claims: failure-to-warn and design defect. His opposition demonstrates that neither claim survives *Durnell*.

Plaintiff's opposition all but admits that Ohio law required him to produce an expert to testify that there was a safer alternative design for Roundup, and that he has no such expert. Plaintiff agrees that the design issue in this case is "technically complex" and that Ohio law generally requires expert testimony in design defect cases. Opp'n at 24 His attempts to skirt that requirement by emphasizing consumer expectations run headlong into the OPLA, which long ago eliminated any standalone consumer expectations theory in favor of a multifactor risk-utility analysis combined with the further statutory requirement of proving an alternative design. Because Plaintiff lacks an expert who will address the risk-utility factors or opine that a feasible alternative design for Roundup existed when Decedent used it—2004—and would have prevented her illness, summary judgment is required on his OPLA design defect claim.

Even setting aside Plaintiff's expert problem, his brief references to Roundup without POEA and herbicides containing different active ingredients do not satisfy his alternative design burden under the OPLA. Plaintiff makes no argument and has no evidence that using Roundup without POEA "would have avoided" Decedent's illness, as the OPLA requires. Ohio Rev. Code § 2307.75(F). And the observation that beginning in 2022—almost 20 years after Decedent began using Roundup, and years after she stopped—Monsanto marketed other herbicides under the Roundup trade name that do not contain glyphosate is not on its own sufficient alternative design evidence under Ohio law. Plaintiff makes no effort to show it was feasible or practical to implement that design in 2004. Plaintiff offers no testimony comparing the post-2022 formulations with glyphosate herbicides and concluding they are safer. And a theory that Monsanto should have replaced glyphosate with a different product rather than redesigning it is the sort of categorial liability theory that Ohio's imposition of a statutory alternative design requirement exists to prevent.

Nor does Plaintiff's opposition offer any good reason why his design defect claim is not subject to impossibility preemption. Plaintiff's limited briefing on this point does not deny that

federal law prohibited Monsanto from changing Roundup's formulation without EPA's prior approval, or that such a prohibition would be sufficient to trigger impossibility preemption under precedents construing the FDCA. Plaintiff merely draws artificial distinctions between those statutes. But the basic rule of impossibility preemption is clear: "If a private party . . . cannot comply with state law without first obtaining the approval of a federal regulatory agency, then the application of that law to that private party is preempted." *Gustavsen v. Alcon Lab'ys, Inc.*, 903 F.3d 1, 9 (1st Cir. 2018).

As for Plaintiff's failure-to-warn claim, his opposition both "concedes that a pure cancer-warning, failure-to-warn theory is expressly preempted by *Durnell*," Opp'n at 7, and defends, in conclusory terms, a theory that Monsanto should have warned of Roundup's alleged carcinogenicity in "advertising and marketing." Opp'n 31. Even giving Plaintiff the benefit of the doubt, his opposition develops no argument why a warn-by-advertising theory is not preempted. It is, for the reasons Monsanto articulates in other briefs, including its response to leadership's omnibus opposition. Nor does the OPLA impose a warn-by-advertising duty on Monsanto. Under Ohio law, Monsanto's duty with respect to an allegedly necessary warning was to deliver that warning to Roundup users with the product—not to run commercials reaching a random subset of the TV-viewing public.

Summary judgment should be granted in full to Monsanto.

## ARGUMENT

### I. Plaintiff's Design Defect Claim Fails.

The Ohio Products Liability Act sets forth the only way a plaintiff may establish liability for design defect under Ohio law: a risk-utility balancing test involving 8 non-exclusive factors plus a freestanding requirement that the Plaintiff prove the manufacturer failed to adopt a feasible, safer, alternative design that would have reduced their injuries. Ohio Rev. Code § 2307.75. The manufacturer's design defect duty is breached only when a product's risks outweigh its benefits and the manufacturer could have prevented the Plaintiff's harm by redesigning the challenged product. Plaintiff cannot prove that theory. And because Plaintiff's design defect theory is premised on

Monsanto's alleged state-law obligation to do something federal law prohibits Monsanto from doing unilaterally—redesigning Roundup—impossibility preemption applies.

**A. Plaintiff Lacks Evidence to Prove an OPLA Design Defect Claim.**

Plaintiff effectively admits that his design defect claim fails on the evidence. As Monsanto's motion pointed out, under Ohio law, "in all but the most 'simple' of cases," '"expert witnesses for the plaintiff must establish . . . that there was a practical and technically feasible alternative design.'" *Huffman v. Electrolux Home Prods., Inc.*, 129 F. Supp. 3d 529, 541 (N.D. Ohio 2015) (quoting *Adkins v. Yamaha Motor Corp., U.S.A.*, 17 N.E.3d 654, 661 & n. 2 (Ohio App. 2014)). Plaintiff does not contend that he has any such expert. And he accurately admits that an alleged "chemical carcinogen and its reformulation are technically complex," such that this cannot be one of those simple cases. Opp'n at 24; *see also id.* ("Plaintiff acknowledges candidly that a risk-benefit theory generally requires expert testimony . . . .").

Plaintiff's primary defense to his lack of expert testimony of an alternative design is to emphasize a different aspect of a design defect claim—a "consumer-expectation factor" under the OPLA. Opp'n at 24; *see* Ohio Rev. Code § 2307.75(B)(5) (listing "extent to which that design or formulation is more dangerous than a reasonably [sic] prudent consumer would expect" as one of eight non-exclusive statutory factors for risk-utility analysis). Plaintiff overstates the importance of that factor, going so far as to call it "independently sufficient" to establish a defect. Opp'n at 22.[1] It may once have been, but in 2004 Ohio's legislature amended the OPLA to make consumer expectations a single factor within the statutory risk-utility analysis rather than a separate theory of liability. 2004 Ohio Laws 144 (S.B. 80) (codified at Ohio Rev. Code § 2307.75). That change also disposes of Plaintiff's citations to pre-2004 case law. A risk-utility analysis with its corresponding requirement of expert testimony is thus the only way for Plaintiff to prove his design defect claim under Ohio law. And the requirement that Plaintiff demonstrate a feasible alternative design is *in addition to* that analysis, as Plaintiff later appears to concede. *Compare* Ohio Rev. Code

[1] Of course, as Monsanto has explained at length elsewhere, if Plaintiff's theory really is that all he must show to hold Monsanto liable for selling Roundup is that Decedent did not expect Roundup to cause her NHL, that is just a preempted failure-to-warn theory.

§ 2307.75(B) (risk-utility factors) *with id.* § 2307.75(F) (alternative design requirement); *see* Opp'n at 23 (noting that "a product is not defective in design" unless plaintiff meets "burden of showing a feasible alternative").

Even setting aside that Plaintiff lacks the required expert testimony, the two "alternatives" to which he refers do not satisfy his burden under Ohio law. As Monsanto's motion laid out without dispute from Plaintiff, he must show that "at the time" Monsanto supplied Roundup used by Decedent (2004–2020), there was a "practical and technically feasible alternative" that "would have prevented" Decedent's illness without "impairing the usefulness or intended purpose of the product" and that Monsanto's failure to adopt that alternative proximately caused Decedent's illness. Ohio Rev. Code §§ 2307.75(F), 2307.73(A)(2).

Plaintiff first says he can satisfy this requirement by pointing to "non-POEA formulations" of Roundup Monsanto sold in Europe. Opp'n at 24. But Plaintiff barely develops this theory, which his causation evidence cannot support: Plaintiff never contends that had Decedent used Roundup without POEA her illness "would have [been] prevented," which would be inconsistent with the theory Plaintiff's experts have advanced in this litigation—that *glyphosate* caused Decedent's NHL. Ohio Rev. Code § 2307.75(F); *see* Opp'n at 15 (arguing there is sufficient evidence of specific causation because plaintiff's specific causation experts opine Decedent's "glyphosate exposure" exceeded "a safe amount"). Indeed, neither of Plaintiff's case-specific experts even mentions POEA, or some alternative to it, in their reports. *See generally* Pl.'s Exs. 2, 3.

Plaintiff next says he can point to a "non-glyphosate Roundup formulation" containing "Triclopyr TEA salt, Diquat Dibromide, Fluazifop-P-butyl, and Imazapic-ammonium," Opp'n at 24, based on the leadership's observation that Monsanto obtained approval to begin marketing such a formulation under the Roundup trade name in 2022—after Decedent stopped using Roundup, became ill, and passed away. *See* Omnibus SOMF ¶ 125. Apart from pointing out that the various active ingredients existed by 1996, Plaintiff makes no effort to show that Monsanto could have marketed the relevant formulation *in 2004*, 18 years before it was developed and approved. And the evidence plaintiffs' leadership relies on instead undercuts that conclusion. *See, e.g.*, Omnibus Ex. 133 at 1 (2022 patent application stating that: "Up to now, however, typical satisfactory herbicide

products for such weed control are based on glyphosate or dicamba."); Omnibus Ex. 127 at 2892:15–16 ("There is many, many steps that go into getting a new formulation to market.").[2] Dr. Farmer, for her part, testified that "there is no alternative glyphosate," which, unlike other ingredients "acts on all plants." Omnibus Ex. 127 at 2804:18–21. That testimony further underscores the difference between active ingredients being separately available as a general matter, as opposed to being formulated together, years later, into a new product. Nor does Plaintiff offer evidence comparing glyphosate-based herbicides and his proposed alternative. Plaintiff instead relies on leadership's citations to Monsanto's position that all Roundup-branded herbicides—both those containing glyphosate and its new formulations—are safe and effective. *See, e.g.*, Omnibus Ex. 134 at 3 (discussing safety of "All Roundup weed-control products . . . including" "new" formulations). Plaintiff cannot parlay that uniform position into evidence that the post-2022 formulation is a safer alternative to glyphosate-based Roundup that was available when Decedent used Roundup from 1995 to 2004 and would have prevented Decedent's injuries. To make that showing, Plaintiff was required to proffer a competent expert to testify that if Decedent had used a specific, available-at-the-time proposed alternative, she would not have developed NHL.

Last, as states that impose alternative design requirements recognize, "it is a basic matter of tort principles that an alternative design must not be an altogether essentially different product." *In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*, No. 22 C 00232, 2025 WL 1282749, at *6 (N.D. Ill. May 2, 2025). An alternative may be essentially different "even when the other product has the same general purpose." *Brockert v. Wyeth Pharms., Inc.*, 287 S.W.3d 760, 770 (Tex. Ct. App. 2009). The purpose of that rule is to ensure that the "law of products liability" does not perform the essentially legislative function of "eliminat[ing] whole categories of useful products from the market." *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 385 (Tex. 1995). Applying that principle, courts regularly hold that different active ingredients are not alternatives as a matter of law. *E.g. Brockert*, 287 S.W.3d at 770 (estrogen alone not alternative to combination of estrogen and progestin); *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 484 (2013) (drug consisting of

Commented [MQ1]: Unfortunately no on-point Ohio law here.

[2] Plaintiffs have not proposed dicamba-based herbicides as an alternative design to glyphosate-based herbicides.

single active ingredient incapable of redesign); *Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 722 (E.D. Pa. 2014) ("acetaminophen is not an alternative to ibuprofen") (citation omitted)). Plaintiff's theory is not that glyphosate should be redesigned, but that it should be replaced with different herbicides. *Cf. Brown*, 64 F. Supp. 3d at 722 (in contrast to acetaminophen, "Dexibuprofen," which is "a different form of ibuprofen" was potential alternative design.") That is a theory state law does not recognize. Whether a product is an alternative design or an altogether different product does not turn on what name the product is marketed under. Many different products may be marketed under a single trade name such as "Roundup," but the defining feature of a glyphosate-based herbicide remains *glyphosate*, and for product liability purposes a product without glyphosate is a different product altogether, not an alternative design.

### B. Plaintiff's OPLA Design Defect Claim Is Preempted as a Matter of Impossibility.

Plaintiff opposes impossibility preemption not based on any argument that Monsanto was free to reformulate Roundup, but based on the assertion that "drug cases do not transfer to FIFRA." Opp'n. at 20. According to Plaintiff, that is because a "brand-name drug manufacturer holds a federal right to market its product" while a FIFRA registration is a "revocable license." Opp'n at 20. That distinction is not correct. Regulatory approval under both FIFRA and the FDCA operates in the same manner: both laws prohibit marketing unapproved products. 21 U.S.C. § 355(a) ("No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) or (j) is effective with respect to such drug."); 7 U.S.C. 136a(a) ("[N]o person in any State may distribute or sell to any person any pesticide that is not registered under this subchapter."). Premarket approval under the FDCA is revocable. *Durnell*, 609 U.S. at 393. And the FDCA contains no provision expressly conferring a right to sell approved products. *See Wyeth v. Levine*, 555 U.S. 555, 573–74 (2009) (rejecting argument that "[o]nce the FDA has approved a drug[]" states may not deem the drug to violate state product-liability law).

Plaintiff also points to a district court's pre-*Durnell* decision in *Holyfield v. Chevron U.S.A., Inc.*, 533 F. Supp. 3d 726 (E.D. Mo.), which he deems "authoritative." Opp'n at 21. *Holyfield*, like

the decisions *Durnell* overruled, looked to 7 U.S.C. § 136a(f)(2) to distinguish preemption under FIFRA from the FDCA. 533 F. Supp. 3d at 736. And *Holyfield* did not specifically mention or address the argument Monsanto raises here: that because, as *Durnell* confirms, FIFRA and binding EPA regulations prohibited Monsanto from changing Roundup's composition without prior EPA approval, a duty to do so is preempted as a matter of impossibility.

Plaintiff's short opposition on this point otherwise merely restates stop-selling arguments made by leadership, and Monsanto refers the Court to its response to the omnibus opposition.

## II. Plaintiff Cannot Bring A Failure-To-Warn Claim Following *Durnell*.

Plaintiffs' opposition begins by "conced[ing] that a pure cancer-warning, failure-to-warn theory is expressly preempted by *Durnell*," Opp'n at 7, and goes on to refer to "preemption of the failure-to-warn claim." Opp'n at 32. But in a few terse paragraphs at the conclusion of the opposition, Plaintiff instead says his "failure-to-warn claims based on . . . Monsanto's advertising and marketing of Roundup" are not preempted. Opp'n at 31. Plaintiff makes no argument for why that should be in light of *Durnell*'s holding that a "failure-to-warn claim" alleging Roundup causes cancer "is expressly preempted." 609 U.S. at 388. Monsanto therefore refers the Court to its briefing in response to the leadership's omnibus opposition and in those cases where plaintiffs have offered arguments specific to such claims.

Plaintiff's undeveloped description of his claims, however, obscures an additional problem. Under Ohio law, a manufacturer's duty is to provide an adequate warning, which is a warning that that product users are likely to see. *See McConnell v. Cosco, Inc.*, 238 F. Supp. 2d 970, 979 (S.D. Ohio 2003) (warning inadequate where placement made it unlikely that highchair user would see it). Conversely, a manufacturer that issues an adequate warning accompanying its product is not liable merely because a Plaintiff alleges it should also warn by other channels. *Freas v. Prater Constr. Corp.*, 573 N.E.2d 27, 31 (Ohio 1991) (adequate warning in product manual defeated duty to give additional warnings elsewhere); *Bouher v. Aramark Servs., Inc.*, 910 N.E.2d 40, 45 (Ohio Ct. App. 2009) (heat warning placed on spigot of hot water dispenser adequate as a matter of law). Against that background, it comes as no surprise that Plaintiff does not identify any Ohio case concluding that a manufacturer had a duty to warn by advertising: If Monsanto issued a warning in its

advertisements but not on Roundup's label, a plaintiff would have no difficulty arguing that Monsanto had not satisfied its duty under Ohio law. The relevant state-law duty is therefore a preempted "requirement for labeling," 7 U.S.C. § 136v(b), even under Plaintiff's cramped reading of *Durnell*.[3]

### III. Ohio Law Bars Plaintiff's Claims for Negligence, Implied Warranty, and Violations of Ohio's Consumer Sales Practices Act.

Plaintiff accurately "concedes" that his negligence claim "is abrogated" by the OPLA. Opp'n at 31. He merely disputes what that means, saying "the underlying negligent-design and negligent-testing conduct" remains relevant to his "statutory design-defect claim's risk-benefit analysis." *Id.* Monsanto has already explained why Plaintiff's design defect claim fails. He cannot avoid summary judgment on that claim by pointing to an abrogated negligence claim. And summary judgment is also warranted on that abrogated claim.

Plaintiff says he can maintain his implied warranty claim only by confusing warranty claims that sound in tort from those that sound in contract. As Monsanto's motion pointed out—without objection from Plaintiff—when an implied warranty claim sounds in contract, it requires proof of privity, and Plaintiff is not in privity with Monsanto. Plaintiff's parry is that his implied warranty claim sounds only in tort. Opp'n at 33. But that response only establishes his claim is abrogated by the OPLA: "as a matter of law, the Ohio Products Liability Act preempts implied warranty claims brought in tort." *McConnell v. KLS Martin LP*, 560 F. Supp. 3d 1084, 1092 (N.D. Ohio 2021). Plaintiff's citation to *White v. Depuy, Inc.* does not establish otherwise. 718 N.E.2d 450 (Ohio Ct. App. 1998). *White* based its conclusion that implied warranty tort claims survive the OPLA on the

[3] Despite Plaintiff's passing reference to a post-marketing duty to warn, Ohio's Supreme Court has explained that such a duty arises under a single, narrow scenario: when a manufacturer "gain[s] knowledge of the likelihood of a risk of harm after the sale of the" allegedly injury-causing unit of the product and a "warning could not be given at the point of sale because a manufacturer would not have knowledge to give it" at that earlier time. *Linert v. Foutz*, 75 N.E.3d 1218, 1226–27 (Ohio 2016) (citation omitted). Plaintiff has not alleged that theory. *See* Compl. ¶ 203 ("At the time of manufacturer, Monsanto could have provided warnings . . . because it knew or should have known of the unreasonable risks of harm associated with" Roundup). And it is difficult to conceive how he would prove it in this case. Under *Linert*, a plaintiff must show that between when the manufacturer sold the allegedly defective product unit to the user and when it caused the user's injury, new information gave rise to a warning duty that did not previously exist. *Id.* at 1227.

Ohio Supreme Court's decision in *Carrel v. Allied Products Corp.* that the OPLA did not "supersede the common law." 677 N.E.2d 795, 799 (Ohio 1997). Ohio's legislature rejected *Carrel* by revising the OPLA in 2004 to provide that it is "intended to abrogate all common law product liability claims or causes of action." 2004 Ohio Laws 144 (S.B. 80) (codified as Ohio Rev. Code § 2307.71(B)); *see also, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 265 N.E.3d 1, 4 (Ohio 2024) (noting this amendment "supersede[d]" *Carrel*). Since that time, "courts routinely dismiss "non-statutory product-liability claims brought under Ohio law." *McConnell*, 560 F. Supp. 3d at 1092.

Plaintiff does not defend his Consumer Sales Practices Act (CSPA) claim apart from saying that "even if the Ohio Consumer Protection Act does not provide for personal injury"—which it does not—"the Abels remain free to bring such a claim based in Monsanto's wrongful marketing and selling of Roundup." Opp'n at 34. It is not clear what that means, and Plaintiff has neither developed any argument nor pointed to any facts that would put Monsanto on notice of Plaintiff's position. Plaintiff does not dispute Monsanto's argument that this is an action "for product-liability personal injury claims." Mot. at 14. The statute's text provides that it "do[es] not apply to . . . [c]laims for personal injury or death." Ohio Rev. Code. § 1345.12. So it does not apply to this case.

**<u>CONCLUSION</u>**

Summary judgment should be granted in full to Monsanto.

DATED: October 23, 2026

By: */s/ Anthony R. Martinez*

Anthony R. Martinez
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
amartinez@shb.com

*Attorney for Defendant*
*MONSANTO COMPANY*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 23, 2026, the foregoing document was filed and served on all counsel of record via the Court's CM/ECF system.

*/s/ Anthony R. Martinez*
*Anthony R. Martinez*