**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030 | Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

*Attorneys for Defendant Monsanto Company*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400 Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100 Fax: 310-576-2200

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION,

This document relates to:

*All Category One Cases*

MDL No. 2741

Case No. 3:16-md-02741-VC

**DEFENDANT MONSANTO COMPANY'S RESPONSE TO BRIEF OF THE AMERICAN ASSOCIATION FOR JUSTICE AND OTHERS AS AMICI CURIAE**

**<u>Hearing:</u>**
Date: November 16, 2026
Time: 1:00 PM
Place: San Francisco Courthouse, Courtroom 3

Plaintiffs' amici have nothing to offer that is relevant to the issues before the Court. Their brief instead goes to great lengths to explain that state law tort claims can be pleaded without using the word "label." But plaintiffs' amici fail to confront the reality of these cases or their posture: at the *summary judgment* stage, no plaintiff has come forward with *evidence* sufficient to prove a claim that would not impose liability for Monsanto's failure to warn of Roundup's purported carcinogenicity. So, none of these cases withstand *Durnell*. Their analysis falls short in other ways too. Although amici acknowledge that "federal preemption exists when conflicts arise between federal and state law," Am. Br. 8, they opt to ignore conflict preemption, which dooms any claim alleging that Monsanto was required to alter Roundup's formulation. *See* MDL Doc. 22735 at 8–12. Amici ground their express preemption analysis in claims state law does not recognize—like purported "negligent testing" claims. *E.g.*, Am. Br. 15–18. Their references to "efficacy-based" warning claims are beside the point; no plaintiffs are suing Monsanto because Roundup did not kill weeds. Am. Br. 9–12. And amici expend considerable energy discussing theories no plaintiff has been able to support with evidence, like design-defect claims targeting Roundup's formulation. Am. Br. 18–23. To their credit, amici do not join those plaintiffs who say that, *Durnell* notwithstanding, they may advance failure-to-warn theories. *E.g.*, MDL Doc. 22683 at 12–15. But plaintiffs in this litigation have not developed a record in support of any other theory. Amici's arguments thus do not save any plaintiff's case, and summary judgment should therefore be granted in full to Monsanto.

***Arguments disconnected from the actual litigation.*** The bulk of amici's brief is devoted to listing various state-law pleading theories and declaring that they "do not require additional or different labeling." Am. Br. 12 (capitalization altered); *see also id.* at 12–25.[1] That approach suffers from a host of problems. At the outset, it frames the preemption inquiry "at far too high a level of generality" by failing to engage with the theories plaintiffs have actually advanced in these cases. *Monsanto Co. v. Durnell*, 609 U.S. 371, 388. Amici's discussion of the implied warranty of merchantability is instructive. Amici say that because the warranty "requires that the goods 'are fit for the ordinary purposes for which such goods are used' . . . it imposes no labeling requirement[.]"

[1] Monsanto does not address amici's references to Arizona law because the sole category 1 case involving Arizona law—*Gordon v. Monsanto Co.*, No. 19-cv-06423—has been dismissed. MDL Doc. 22550 (stipulation of dismissal).

Am. Br. 24 (quoting U.C.C. § 2-314(2)(c)). But—in those few jurisdictions not at issue here that authorize implied warranty of merchantability claims as a supplement to strict products liability—it is no secret that "a product unaccompanied by an adequate warning" may be deemed on that basis "not 'fit for the ordinary purposes for which'" it is used. *Duford v. Sears, Roebuck & Co.*, 833 F.2d 407, 412 (1st Cir. 1987) (applying New Hampshire law). If a jury imposed liability against Monsanto on the theory that Roundup was "unaccompanied by an adequate warning," *id.*, the implied warranty claim "would require Monsanto to add a cancer warning to Roundup's label," so it would be expressly preempted. *Durnell*, 609 U.S. at 377; *see id* at 390 (FIFRA preempts "any state tort claim that would require" Monsanto to use a warning label other than the one EPA approved).

Where amici do attempt to identify state-law theories they say plaintiffs can pursue, they rely on theories plaintiffs have not pursued and that the relevant state law does not recognize.

***Far-fetched negligence theories.*** Amici's discussion of various negligence theories underscores the disconnect between their brief and these cases. Unlike certain plaintiffs, amici acknowledge that where "failure to warn is" "the basis of the negligence claim," Am. Br. 13, the claim is subject to preemption. But amici try to concoct other state-law bases for liability, referencing, for example, a Florida law claim for negligent misrepresentation that *no plaintiff* still advances, and a negligent testing theory that—as Monsanto has explained—*Florida law does not recognize* and is otherwise preempted. *See Adams v. G.D. Searle & Co.*, 576 So. 2d 728, 730–31 (Fla. Dist. Ct. App. 1991); MDL Doc. 22736 at 18–19.[2] Their discussion of negligent "manufacturing defects" under Georgia law, Am. Br. 15, ignores that *no Georgia plaintiff* advances a manufacturing defect theory—and for good reason: plaintiffs would have to prove that Roundup caused their injuries because it was not "manufactured in accordance with the design," which they have not and cannot do. *Banks v. ICI Americas, Inc.*, 450 S.E.2d 671, 673 (Ga. 1994). And their analysis of North Carolina law suffers from a similar flaw: although a seller's negligent "inspection of the product" coupled with proof of a *manufacturing defect* may in theory support a negligence

[2] Although Plaintiff Schrag pled a claim for negligent misrepresentation, he has abandoned that theory following *Durnell*. See MDL Doc. 22671 at 5.

claim, *Goodman v. Wenco Foods, Inc.*, 423 S.E.2d 444, 457 (N.C. 1992), the North Carolina Products Liability Act provides the exclusive way to bring a claim that would impose liability for Roundup's warnings or formulation, and a manufacturer's allegedly negligent "testing" practices is not one of those ways. *See* N.C. Gen. Stat. §§ 99B-5(a), 99B-6(a). As for Mississippi and Ohio, amici gloss over the problem that neither recognizes product liability negligence claims, which are abrogated by those states' respective products liability statutes. *See* MDL Doc. 22525 at 14 (discussing Mississippi law); MDL Doc. 22530 at 13 (discussing Ohio law).[3]

***Express warranty theories lacking any evidence.*** Amici's vague reference to express warranty theories, Am. Br. 23–24, fails to grapple with the fact that Monsanto made no warranties that plaintiffs relied upon. So whatever amici have to say about express warranties in the abstract, it makes no difference because the vast majority of plaintiffs have not pled express warranty claims and no plaintiff has identified any false specific affirmation by Monsanto on which they detrimentally relied, as would be necessary to support such a claim.[4] That problem aside, when a plaintiff's warranty claims boil down to an assertion that Monsanto "concealed . . . the true dangers" of Roundup, *e.g.*, Jackson Compl. ¶¶ 218, 221, the claim transparently "would require Monsanto to place a cancer warning on Roundup's label," and is therefore expressly preempted. *Durnell*, 609 U.S. at 387.

***Implied warranty theories without state law support.*** As to implied warranty of merchantability theories, Amici again ignore that in the no-privity products liability context such claims are abrogated and thus unavailable under Mississippi and Ohio law. *See* MDL Doc. 22525 at 14 (Mississippi law); MDL Doc. 22530 at 13–14 (Ohio law). Under Georgia and North Carolina law, no-privity implied warranty claims require plaintiffs to prove either a design defect or failure

---

[3] Amici's observation (at 16, 18) that provisions of these statutes other than their liability provisions mention "testing" does not establish that Mississippi or Ohio law recognizes a negligent testing claim. On the contrary, it underscores that any purported "testing" claim is a products liability claim subject to the exclusivity provisions contained in those states' respective products liability statutes. *See* Miss. Code § 11-1-63(a); Ohio Rev. Code § 2307.71(B).

[4] Of the category 1 cases that remain pending, only 3 involve plaintiffs who say they can maintain express warranty claims: *Shedd v. Monsanto Co.*, No. 20-cv-03833 (Mississippi law); *Reid v. Monsanto Co.*, No. 3:22-cv-04080 (North Carolina law); *Jackson v. Monsanto Co.*, No. 23-cv-01572 (Florida law).

to warn, which they cannot do given *Durnell* and the summary judgment record. *See* MDL Doc. 22523 at 19–20 (Georgia law); MDL Doc. 22529 at 17–19 (North Carolina law). And only one Florida plaintiff still asserts an implied warranty claim, which as a matter of Florida law is no more than another way of stating a strict liability claim that is preempted and fails on the record. *Kramer v. Piper Aircraft Corp.*, 520 So.2d 37, 39 (Fla. 1988) (holding that "strict liability in tort" replaced "no-privity, breach of implied warranty" claims).

***Unworkable design-defect theories.*** Amici defend plaintiffs' design-defect claims only by arguing the relevant state laws "do not require additional or different labeling" and are therefore not expressly preempted. Am. Br. 18 (capitalization altered). That characterization of their claims is false under Florida law, where, as Monsanto has pointed out, "the design defect claim [] merge[s] into the failure-to-warn claim" because it is based on consumer expectations that are themselves formed through reading the label. *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741, 2019 WL 3219360, at *2 (N.D. Cal. July 12, 2019); *see* MDL Doc. 22736 at 6–10. Such a theory is preempted because its "heart" is that Monsanto should have warned consumers of Roundup's purported carcinogenicity. *Durnell*, 609 U.S. at 383. And as amici recognize, "a failure-to-warn claim disguised as a design-defect claim" would, "consistent with *Durnell*," trigger express preemption. Am. Br. 23. To be sure, the laws of Georgia, North Carolina, Mississippi, and Ohio frame a design-defect claim around a duty to adopt a safer alternative design rather than a user's knowledge about the product. But the presence or absence of warnings is not, as amici themselves acknowledge, irrelevant to that duty. Am. Br. 22 (admitting some aspects of Ohio design-defect claim "overlap with warnings" because they involve "awareness of the consumer."); *see also, e.g.*, N.C. Gen. Stat. § 99B-6(b)(2) ("warnings" factor for determining reasonableness of manufacturer's failure to adopt alternative design). In all events, plaintiffs' claims that state law required Monsanto to alter Roundup's approved design are both preempted as a matter of impossibility, *see* MDL Doc. 22735 at 8–12, and cannot be proved on the summary judgment record, *see, e.g.*, MDL Doc. 22738 at 2–5. Amici do not mention these problems, which render their discussion of express preemption of design-defect theories academic.

Because plaintiffs cannot sustain—and amici cannot salvage—any claim that would not be preempted, summary judgment should be granted in full to Monsanto.

Dated: November 5, 2026

Respectfully submitted,

By: */s/ Anthony R. Martinez*
Anthony R. Martinez
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547

*Attorney for Defendant*
MONSANTO COMPANY

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 5, 2026, the foregoing document was filed and served on all counsel of record via the Court's CM/ECF system.

*/s/ Anthony R. Martinez*
Anthony R. Martinez