UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No. 16-md-02741-VC |
| | **TENTATIVE VIEWS ON MOTIONS FOR SUMMARY JUDGMENT** |
| This document relates to:<br><br>ALL CATEGORY 1 CASES | Dkts. 22521, 22523, 22524, 22525, 22529, 22530 |

The following are the Court's tentative views going into Monday's hearing:

1. The plaintiffs argue that they can continue to assert state law failure-to-warn claims based on Monsanto's failure to discuss the risks of using Roundup in its advertising and in oral presentations, even if the company doesn't disclose those same risks on the label. That appears to be a made-up tort. If the plaintiffs have any authority for the proposition that a state law failure-to-warn claim could require a warning in advertising but not on the label, they should be prepared to cite it at the hearing.

2. Even if there were such a thing as a claim for "failure to warn in advertising but not on the label," it appears that such a claim would be preempted by FIFRA. Although the Court is skeptical of Monsanto's express preemption argument (because much advertising does not "accompany the pesticide" under any ordinary understanding of that phrase), most circuits, including the Ninth, appear to have reached a contrary conclusion, stating that FIFRA preempts—at a minimum—advertising-based claims where the advertising simply repeats information contained in the label. *See Taylor AG Industries v. Pure-Gro*, 54 F.3d 555, 561 (9th

Cir. 1995); *Lowe v. Sporicidin International*, 47 F.3d 124, 130 (4th Cir. 1995); *Andrus v. AgrEvo USA Co.*, 178 F.3d 395, 399–400 (5th Cir. 1999); *Kuiper v. American Cyanamid Co.*, 131 F.3d 656, 662–63 (7th Cir. 1997); *Papas v. Upjohn Co.*, 985 F.2d 516, 519 (11th Cir. 1993). *But see Indian Brand Farms, Inc. v. Novartis Crop Protection Inc.*, 617 F.3d 207, 216–18 (3rd Cir. 2010).[1] And even if the case law did not require the Court to accept Monsanto's express preemption argument, the company's conflict preemption argument appears correct (because the company could not realistically comply with FIFRA's regulatory regime while warning of a cancer risk in advertising or oral presentations but not on the label).

3. For similar reasons, it's difficult to understand how a claim for breach of warranty or fraud could avoid preemption.

4. The most difficult questions are whether design defect claims could ever avoid FIFRA preemption, and if so, whether the plaintiffs in this round have presented enough evidence to get past summary judgment on any such claim. Although everything in this order is tentative, the parties should plan to spend the bulk of the hearing on this issue.

a. Preemption may depend on whether the plaintiff is proceeding under the consumer expectations test or the risk-utility test. It's difficult to imagine that a design defect claim against Monsanto based on the consumer expectations test would not be preempted. Presumably, a warning identifying the cancer risk and explaining how to mitigate that risk would foreclose any claim that Roundup is defective under the consumer expectations test. And because warnings are within the federal purview, this type of claim appears to be preempted. It appears, however, that the risk-utility test applies to the Florida plaintiffs' claims.

b. For a design defect claim based on the risk-utility test, the matter is more complicated. The Supreme Court cases relating to this issue are confusing and

[1] The Court is assuming that it will apply the law of the Ninth Circuit on this federal question, as it did with respect to *Daubert* at the general causation stage, but the parties should be prepared to address that issue.

contain seemingly contradictory language. It seems that there could be two possible interpretations of *Bates*, *Bartlett*, *Durnell*, and the other cases. First, the rule could be that any claim based on a defect that could be cured by a warning on the label is preempted by FIFRA, meaning that the only type of claim to avoid preemption would be one involving a defect that could only be cured by reformulating the product (or taking the product off the market). Second, the rule could be that any claim based on a defect that could be cured only by a warning label would be preempted, meaning that a claim based on a defect that could be cured either by a warning label or a reformulation, at the company's option, would avoid preemption.

c. Under the more expansive understanding of FIFRA preemption, it's difficult to imagine any plaintiff prevailing on the merits of any design defect claim based on the risk-utility test, because the alleged defect could readily be cured with a warning. Under the less expansive understanding of FIFRA preemption, perhaps a plaintiff could theoretically prevail on the merits, although it's not clear that any plaintiff in this round of summary judgment motions could do so. The plaintiffs from states that require expert testimony in support of a design defect claim would lose based on the failure to produce any.[2] The plaintiffs from states that don't require expert testimony would still need to present evidence from which a reasonable jury could find in their favor under the risk-utility text, and it's not clear that they have done so. The answer may depend on whether the applicable state has burden-shifting. For example, it appears that in California, when a

[2] The plaintiffs argue that they could still come forward with an expert after remand, and therefore they should not be penalized for failing to produce one here. That argument makes no sense. It has been clear throughout this MDL that a case will not be remanded unless the plaintiff defeats summary judgment. If a state requires expert testimony to support a design defect claim, obviously expert testimony must be produced to defeat summary judgment. A plaintiff can't defeat a summary judgment motion by saying, "don't worry, we'll develop the evidence later." The fact that some judges, after remand, happen to have allowed the parties to add or substitute experts, or conduct additional discovery, does not change that reality.

plaintiff is proceeding on a risk-utility theory, the plaintiff need only present evidence that they were harmed by the product, and then the defendant must come forward with evidence relating to the feasibility of the alternative design, the disadvantages of the alternative design, etc. If a plaintiff is from a state where the burden shifts in this fashion (and if the state does not require the plaintiff to present an expert), then it appears that the plaintiff can defeat summary judgment so long as they've presented sufficient evidence of causation. But if a plaintiff is from a state where the burden remains with the plaintiff to present evidence on all issues relating to the risk-utility test, then the mere fact that Monsanto has now put a non-glyphosate version of Roundup on the market may not be enough to defeat summary judgment.

d. One final point on design defect claims. The Court is skeptical of Monsanto's argument that conflict preemption applies because the company would not be able to independently comply with a state law duty to reformulate a product given the need under FIFRA to obtain federal approval of the new product. If this argument were correct, it seems like there could never be a design defect claim against a pesticide manufacturer. And that would seem to contradict *Bates*. In reality, it's not clear how much is truly left of Bates following cases like *Bartlett* and *Durnell*. But the *Durnell* Court purported to leave *Bates* undisturbed. Anyway, the issue is worth discussing at the hearing given *Mensing* and some of the language in *Bartlett*.

5. It appears that a negligence claim could proceed to the extent that a design defect claim could proceed, but no further.

6. Some plaintiffs have requested leave to amend their complaints to the extent they have not adequately alleged a non-preempted claim. For reasons the Court has already given in prior orders and in prior case management conferences, that request will almost certainly be denied. Once a circuit split developed on the question of whether FIFRA preempts

failure-to-warn claims (and arguably even before the split), it was obvious that the preemption question would end up being decided by the Supreme Court. It was the responsibility of the plaintiffs (or, more to the point, their lawyers) to attempt to present other types of state law claims that might survive federal preemption. The fact that *Durnell* was only decided a few months ago does not excuse their failure to do so.

**IT IS SO ORDERED.**

Dated: November 14, 2026

VINCE CHHABRIA
United States District Judge